# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

January 21, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL; *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL

Dear Judge Liman:

      We write on behalf of Plaintiff Blake Lively in the matter of *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL (the "Lively Case"), and Defendants Blake Lively and Ryan Reynolds in the matter of *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL (the "Wayfarer Case") (together, the "Lively-Reynolds Parties").

      On December 20, 2024, Ms. Lively filed an administrative Complaint with the California Civil Rights Department (the "CRD Complaint"), a requisite step in exhausting her administrative remedies prior to filing suit. Immediately thereafter, through counsel, Ms. Lively provided the named Defendants (the "Wayfarer Parties") a copy of Ms. Lively's CRD Complaint. At the same time, Ms. Lively also issued the Wayfarer Parties a cease-and-desist letter (the "First Cease and Desist") demanding that they immediately cease and desist all unlawful conduct toward the Lively-Reynolds Parties and their affiliates, including their harassing and retaliatory media and online campaign against Ms. Lively. *See* Ex. A at 4. Immediately thereafter, and virtually every day since, Mr. Freedman has given television interviews, appeared on podcasts, issued inflammatory written statements, and leaked information (including, remarkably, documents as banal as document preservation demands to third parties) to the Hollywood press and tabloid media. Those statements not only continue the campaign of retaliation that was the subject of Ms. Lively's First Cease and Desist, but they contain numerous *new* false statements about Ms. Lively and others. A list of public statements issued by Mr. Freedman, which is surely incomplete, is attached as Ex. B.

      On December 23, 2024, in light of repeated instances of Mr. Freedman making unprofessional and false statements about Ms. Lively and the litigation she had commenced, Ms. Lively sent a second cease-and-desist letter (the "Second Cease and Desist"), this time directly to Mr. Freedman attached hereto as Ex. C. The Second Cease and Desist directly addressed Mr. Freedman's ethical obligations, notified Mr. Freedman (as well as the Managing Partner of Mr. Freedman's law firm) that he had defamed and engaged in further unlawful retaliation against Ms.

Lively, and demanded that he immediately cease and desist from making further defamatory, and retaliatory, statements relating to Ms. Lively. *Id.* The Second Cease and Desist lays out Mr. Freedman's false assertions and the evidence contradicting them, as well as the text of the applicable California Rule of Professional Conduct 4.1. *Id.* The Second Cease and Desist further explained that Mr. Freedman's statements, issued as part of an all-out media blitz to anyone willing to listen, were unprotected by the litigation privilege. *Id.*[1]

Since the Wayfarer Parties and Mr. Freedman received the cease-and-desist letters, they have continued their harassing and retaliatory media campaign, with almost daily media statements or other releases to the press. Earlier today, the Wayfarer Parties leaked a video to the media that they have asserted is designed to refute the allegations made in the Lively Case,[2] even though those allegations are now before this Court in not one but two federal complaints. They have further indicated that they intend to create a website to increase publicity around the exhibits filed in the Wayfarer Case.[3] In one of today's multiple statements, they stated that the website will contain "all correspondences as well as relevant videos that quash her claims."[4] As counsel for Ms. Lively has made clear, these releases only reinforce the claims Ms. Lively advanced in her original complaint, and continue to advance the campaign of retaliation alleged therein. But there is a more fundamental problem with Mr. Freedman's litigation-via-press-statement strategy.

As Ms. Lively's counsel have attempted, repeatedly, to caution Mr. Freedman, federal litigation must be conducted *in court* and according to the relevant rules of professional conduct. Wayfarer's counsel have already been warned that Mr. Freedman's initial media blitz back in December violated various California state rules. His most recent statements, coming as they do on the heels of his having filed a federal complaint in this Court, plainly violate Rule 3.6 of the New York Rules of Professional Conduct, which prevents "[a] lawyer who is participating in . . . a civil matter" from "mak[ing] an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." N.Y. Rules of Pro. Conduct 3.6(a). Here, Mr. Freedman is a lawyer participating in a civil matter before this Court, yet he continues to make regular statements covered by Rule 3.6. His conduct threatens to, and will, materially prejudice both the Lively Case and the Wayfarer Case by tainting the jury pool, because his statements are deliberately aimed at undermining the "character, credibility, [and] reputation" of numerous relevant parties, *id.* 3.6(b)[1], and likewise includes "information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial,"

---

[1] *Accord GeigTech East Bay LLC v. Lutron Electronics Co.*, 2019 WL 1768965, at *5 (S.D.N.Y. Apr. 4, 2019) (litigation privilege does not permit party "to take advantage of the privilege by instituting a judicial proceeding alleging false and defamatory charges only to then issue a press release publicizing those defamatory allegations").

[2] *See* Ruth Styles, *Exclusive Who's lying, Blake Lively or Justin Baldoni? Shocking It Ends With Us clip reveals the truth about abuse claims*, DailyMail.com (Jan. 21, 2025), https://www.dailymail.co.uk/tvshowbiz/article-14308745/Blake-Lively-Justin-Baldoni-bombshell-clip-reveals-truth-abusee.html?ns_mchannel=rss&ns_campaign=1490&ito=social-twitter_dailymailus.

[3] *See* Rovelyn Barba, *Justin Baldoni's Team Reportedly Created a Website That Will Include Alleged Original Text Messages*, ENSTARZ (Jan. 21, 2025), https://www.enstarz.com/articles/238635/20250120/justin-baldonis-team-reportedly-created-website-that-will-include-alleged-original-text-messages.htm.

[4] *See* Jack Smart, *Justin Baldoni Plans to Launch Website 'Containing All Correspondence' with Blake Lively to 'Quash Her* Claims*'*, People.com (Jan. 21, 2025), https://people.com/justin-baldoni-launch-website-correspondence-blake-lively-8777985.

thereby creating a substantial risk of prejudice not just for Ms. Lively, but for numerous other parties in the matters, *id.* 3.6(b)[5].[5]

Mr. Freedman's conduct is by design, not by accident, and this Court should consider carefully his history of litigating matters in the press when evaluating his request to be admitted *pro hac vice*, filed earlier today. *See* Wayfarer Case Docket, 1:25-cv-00449-LJL, ECF No. 23. It is worth asking whether Wayfarer's lawyers have any intention of abiding by Rule 3.6, or whether they intend to continue selectively releasing evidence, without context or an opportunity to be questioned on that evidence, in the public domain at the same time they purport to litigate this matter in court. Rule 3.6, of course, requires parties to decide whether they want a jury of their peers to decide their claims, or whether they prefer to let the court of public opinion do so—doing both at once creates an impermissible risk of interfering with the judicial process, and it is not tolerated under New York law or the law of any other relevant jurisdiction.[6]

The Court may exercise control over its docket and the litigants before it to avoid improper conduct by counsel, and it should do so here. *See Hice v. Lemon*, 2022 WL 601054, at *2 (E.D.N.Y. Feb. 23, 2022) (following Plaintiff's media engagements and pretrial publicity, adopting Rule 3.6 "as an order of the Court applicable to all counsel of record" and noting that any violation of Rule 3.6 should be punished under Rule 16(f) of the Federal Rules of Civil Procedure or through other monetary sanctions). The Lively-Reynolds Parties intend to seek an appropriate protective order to govern further proceedings in this case, but given the imminent harm caused by Mr. Freedman's misleading and selective statements and leaks, we respectfully request that this Court schedule a hearing as soon as possible to address the appropriate conduct of counsel moving forward in these two related matters.

---

[5] Although Rule 3.6(d) permits attorneys to make statements that would protect a client from "the substantial prejudicial effect of recent publicity *not initiated by the lawyer or the lawyer's client*," (emphasis added) this is inapplicable to Mr. Freedman's statements. Virtually none of Mr. Freedman's statements at issue were made in response to recent publicity initiated by others. Instead, his statements perpetuate the narrative he and his clients have advanced in the media to compensate for the insufficiency of their claims, and in furtherance of the smear campaign that is the subject of Ms. Lively's pleadings. Nor has Mr. Freedman limited his statements to "such information as is necessary to mitigate the recent adverse publicity." *Id.* Now that litigation has been initiated, the selective leaking of discovery materials is not a "responsive statement"—it is instead an effort to taint the jury pool and is prohibited by Rule 3.6.

[6] Wayfarer's counsel have attempted to justify their media campaign by noting that, after they received the First Cease and Desist, they were contacted by *The New York Times* with a request for comment on a story regarding the CRD Complaint. Even accepting this as true, though, would not authorize Wayfarer's counsel to continue to seek to influence the outcome of the judicial proceedings currently pending before this Court (neither of which had been filed at the time of the First Cease and Desist). In any event, on information and belief, counsel for the Wayfarer Parties voluntarily provided the CRD Complaint to the press *before* publication of *The New York Times* article, accompanied by Mr. Freedman's bombastic press statement and other details. *See Statement to the New York Times from Bryan Freedman, attorney for Justin Baldoni, Wayfarer Studios and all its representatives*, The New York Times (Dec. 21, 2024), https://www.nytimes.com/interactive/2024/12/21/us/statement-to-the-new-york-times.html. Despite this sequence of events, the Wayfarer Parties and others have initiated litigation against *The New York Times* for defamation in the amount of $250 million, while separately suing the Lively-Reynolds Parties and others here for $400 million, while Mr. Freedman continues to threaten in the media to sue "into oblivion" a vague group of unnamed "others," (*See* James Hibberd, *Justin Baldoni's Publicist Breaks Silence, Defends Leaked Texts About Blake Lively*, The Hollywood Reporter (Dec. 23, 2024), https://www.hollywoodreporter.com/movies/movie-news/justin-baldoni-blake-lively-jennifer-abel-leaked-texts-1236093044/) all raising the question whether he is willfully seeking to intimidate witnesses from coming forward or otherwise chilling lawful participation in the legal process.

Respectfully submitted,

s/ *Michael J. Gottlieb*_____

WILLKIE FARR & GALLAGHER LLP

Michael J. Gottlieb
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

MANATT, PHELPS & PHILLIPS, LLP

Esra A. Hudson (*pro hac vice forthcoming*)
Stephanie A. Roeser (*pro hac vice forthcoming*)
Catherine Rose Noble (*pro hac vice forthcoming*)
2049 Century Park East, Suite 1700
Los Angeles, California  90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com
cnoble@manatt.com

*Attorneys for Blake Lively and Ryan Reynolds*