# **EXHIBIT C**

**manatt**

**Esra A. Hudson**
Manatt, Phelps & Phillips, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Direct Dial: (310) 312-4381
ehudson@manatt.com

**WILLKIE FARR & GALLAGHER LLP**

**Michael J. Gottlieb**
Willkie Farr & Gallagher, LLP
1875 K Street NW
Washington, D.C. 20006
Direct Dial: (202) 744-0858
mgottlieb@willkie.com

December 23, 2024

**VIA EMAIL**

Bryan Freedman
Liner Freedman Taitelman + Cooley LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067

       **RE: Cease and Desist Demand**

Dear Mr. Freedman:

     As you know, we represent Blake Lively, Ryan Reynolds, and their related entities, including but not limited to Betty Buzz, LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions (collectively, the "Lively-Reynolds Parties") with respect to a dispute between the Lively-Reynolds Parties and Wayfarer Studios LLC ("Wayfarer"), its co-founders Justin Baldoni ("Baldoni") and Steve Sarowitz ("Sarowitz"), CEO Jamey Heath ("Heath"), and their related companies, affiliates, associates, or agents (collectively, the "Wayfarer Parties"), as well as Melissa Nathan, The Agency Group PR LLC, Jed Avery Wallace, Street Relations, Inc., Jennifer Abel, and RWA Communications LLC (collectively, the "Wayfarer Associates") (the Wayfarer Parties and the Wayfarer Associates shall be collectively referred to as "you" or "your").

     **This letter serves to remind you of your ethical obligations, notify you that you have defamed and engaged in further unlawful retaliation against Ms. Lively, and to demand that you immediately cease and desist from making further defamatory, and retaliatory, statements relating to Ms. Lively.**

     Lawyers are not publicity agents. We are required to follow a different set of professional standards than publicists and crisis managers. One of those standards is the prohibition against knowingly making factual misrepresentations, *even when doing so would help defend or promote our clients' interests*. As the California Rules of Professional Conduct mandate: "a lawyer shall not knowingly:[] (a) make a false statement of material fact or law to a third person…" CA ST RPC Rule 4.1. "A lawyer is required to be truthful when dealing with others on a client's behalf. . . . A misrepresentation can occur if the lawyer incorporates or affirms the truth of a statement of another, person[] that the lawyer knows[] is false." On December 21, 2024, you issued a public statement to the press (hereinafter: "Statement"), contemporaneously with a leaked version of Ms.

**manatt**                                                **WILLKIE FARR & GALLAGHER** LLP

Cease and Desist Demand
December 23, 2024
Page 2

Lively's Complaint (which at that point had not been publicly disclosed). Apart from constituting further retaliation and defamation *per se,* your Statement violated Rule 4.1 in multiple respects.

For starters, your Statement falsely asserts that "there were **no** proactive measures taken **with media or otherwise,**" that the "representatives of Wayfarer Studios still **did nothing proactive nor retaliated**, and **only responded to incoming media inquiries** to ensure balanced and factual reporting and monitored social activity." These claims are false. As you know, Wayfarer Studios' team deployed *numerous* "proactive measures" with traditional and social media, and did much of that work *before* Wayfarer had ever received "incoming media inquiries."

For example, on August 1, 2024, before the Film premiered, and well before Wayfarer had received "incoming media inquiries" to which to respond, Ms. Abel wrote to Mr. Heath that she had "fully briefed" a "friend of 12+ years who writes for people magazine, Fox News, in touch, [and] us weekly," and that her "friend" was "armed and ready to take this story of Blake weaponizing feminism to any of her outlets the minute we give her the green light. She hates Blake, has heard this story before, and will do anything for us." This "proactive measure" was designed to harm Ms. Lively's reputation, in clear violation of the language of the anti-retaliation clause in Ms. Lively's rider among other things, and took place before any receipt of "media inquiries."

> From: Jennifer Abel (owner)
> To: Jamey Heath
> To:
>
> Thanks for the call. Confidentially I'm out to dinner with a friend of 12+ years who writes for people magazine, Fox News, in touch, us weekly, and she is fully briefed of the situation and is armed and ready to take this story of Blake weaponizing feminism to any of her outlets the minute we give her the green light. She hates Blake, has heard this story before, and will do anything for us. Just fyi :)
> Priority: Normal
>
> 01/08/2024 03:03:58(UTC+0)

A few days later, on August 4, 2024, again prior to the Film's premier, Ms. Nathan wrote to Ms. Abel that she had been in touch with her "friend" – an editor at the Daily Mail – who Ms. Nathan reported was "ready when we are." As with the outreach described above, this *proactive* media engagement occurred prior to the alleged "incoming media inquiries" that later arrived.

> From: Melissa Nathan
> To: Jennifer Abel (owner)
>
> Am I already off the records Spoke to the editor Daily Mail because she's my friend.
> Priority: Normal
>
> 04/08/2024 21:40:22(UTC+0)

manatt                                    WILLKIE FARR & GALLAGHER LLP

Cease and Desist Demand
December 23, 2024
Page 3



As you know, the next day after this, Mr. Baldoni sent a screenshot of an article accusing a prominent female celebrity of "bullying," and told Ms. Abel "this is what we would need," to which Ms. Abel responded in the affirmative and mentioned her plans to work with Ms. Nathan on "social and digital" media platforms to accomplish Mr. Baldoni's objective.



Of course, as you know, Ms. Nathan's written plan expressly discussed engaging in *proactive* rather than *reactive* media techniques—including, critically, "full social account take downs," "starting threads of theories," and "creation of social fan engagement."

manatt

WILLKIE FARR & GALLAGHER LLP

Cease and Desist Demand
December 23, 2024
Page 4

> From: Melissa Nathan
> To: Jennifer Abel (owner)
>
> Hi Jamey, Jen
>
> So incredibly glad that the press went so well today and from what I know, Justin felt incredibly supported. He is lucky to have you all.
>
> We took the day today to do some research and get digital quotes in from the two teams we use that get the best results.
>
> As you are both aware, we are in a predicament that we just do not know the outcome of right now.
>
> Saying that, full transparency is key here, we have seen the most innocuous issues turn giant due to socials or the hugest crisis have no effects on social whatsoever- you just cannot tell at this stage. But, BL does have some of the TS fanbase so we will be taking it extremely seriously.
>
> We also understand audience is not solely JB fanbase but, the studio so it is covering all bases time.
>
> Quote one: $175k - this will be for a 3-4 month period and includes: website ( to discuss) full reddit, full social account take downs, full social crisis team on hand for anything - engage with audiences in the right way, start threads of theories ( to discuss) this is the way to be fully 100%protected.
>
> Quote two $25k per month - min 3 months as it needs to seed same as above - this will be for creation of social fan engagement to go back and forth with any negative accounts, helping to change narrative and stay on track.
>
> All of this will be most importantly untraceable.
>
> There is a lot more to both of these quotes but, easier to discuss via phone in terms of capabilities and what I have personally experienced in and out of crisis scenarios.
>
> Either way, I do feel it is better to be safe but - I do realize costs are something I am sure you did not count on when you took on this project nor, this situation.
>
> Let me know when you would like to discuss more - around on PT tomorrow.
>
> M
> Priority: Normal
>
> 06/08/2024 03:43:49(UTC+0)

Your Statement misleadingly characterizes these kinds of communications as "just internal scenario planning and private correspondence to strategize," but the implication of that claim—that *none* of these plans and strategies were ever implemented—is demonstrably false. Instead, your clients retained a "digital team," including Mr. Wallace, to engage in "social manipulation," and "social media mitigation and proactive fan posting." On August 7, 2024, Ms. Abel wrote to Ms. Nathan about "need[ing] to put the social media combat plan…into motion, to which Ms. Nathan agreed, "so do I."

manatt                                          WILLKIE FARR & GALLAGHER LLP

Cease and Desist Demand
December 23, 2024
Page 5



Emails suggest that your clients met with Mr. Wallace the very next day, on August 8, 2024. In an email to Ms. Nathan and Mr. Wallace, Ms. Abel wrote: "TAG team, is this something you can bring them up to speed on so they can hit the ground running?"



**manatt**                                                                                                          **WILLKIE FARR & GALLAGHER** LLP

Cease and Desist Demand
December 23, 2024
Page 6

Further, in an email titled "Social / Digital Mitigation / Remediation," your clients confirmed their earlier discussions in writing. Specifically, Ms. Abel confirmed discussing "social media mitigation and proactive fan posting to counter the narrative" as well as "social manipulation (from the separate team based in Hawaii…)."

| Timestamp: 07/08/2024 19:06:38(UTC+0) From: Jennifer Abel To: Jamey Heath To: Melissa Nathan Direction: Outgoing | Subject: Re: Social / Digital Mitigation / Remediation Body: Email header: Body file: mes-127.eml | Status: Sent Account: Snippet: Thanks Katie—just for clarity so we understand. Does this cover your initial fee + what we discussed in terms of social media mitigation and proactive fan posting to counter the narrative, or is this in ADDITION to the 15K previously agreed upon fee for TAG and does NOT include what we discussed with MN earlier regarding social manipulation (from the separate team based in Hawaii…). In short, is the total fee incurred by Wayfarer 30K, or is there more required to ensure we are properly prote Priority: Normal MD5: 450b8a635e28d823c4130b26f805acb9 Source file: EXTRACTION_FFS.zip/root/private/var/mobile/Library/Mail/Envelope Index : 0x2C7F607 (Table: messages, mailboxes, Size: 137003008 bytes) EXTRACTION_FFS.zip/root/private/var/mobile/Library/Mail/Protected Index : 0x10324E (Table: addresses, summaries, Size: 79876096 bytes) |

On August 10, 2024, your clients messaged each other about the results the plan, and Mr. Wallace's work in particular, had yielded—noting "a shift on social, *due largely to [Mr. Wallace] and his team's efforts to shift the narrative…*."



From:
To: Jennifer Abel (owner)

Hi team — so far, extremely limited pickup on Daily Mail or Page Six. We'll continue to keep an eye out and send pieces as needed, but so far it's been steady coverage on pure speculation. We've also started to see a shift on social, due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan. Again we'll continue to send links and screenshots but wanted to send an update in the meantime.

Priority: Normal

10/08/2024 16:35:40(UTC+0)

**manatt**                                    **WILLKIE FARR & GALLAGHER**LLP

Cease and Desist Demand
December 23, 2024
Page 7

      In the days that followed, your clients regularly discussed "amplifying," "boosting," "engagement in the comments," and flagging to Mr. Wallace online content that favored Mr. Baldoni and disfavored Ms. Lively. For example, with knowledge that the marketing of the Film was expressly following Sony's Marketing Plan, which Mr. Baldoni himself had followed prior to August of 2024, the Wayfarer team targeted and then amplified TikTok videos that mistakenly blamed Ms. Lively, rather than the Marketing Plan, for not speaking about domestic violence in the press surrounding the release of the Film (while separately, and misleadingly, portraying Mr. Baldoni as the only one concerned with domestic violence). *See* Complaint ¶¶ 78-88, 150. These were precisely the services contemplated in the quote that Ms. Nathan had circulated on August 6.

      On August 18, 2024, Ms. Nathan described the work of Mr. Wallace and his team as "**doing** something very specific in terms of what they do" and confirmed that Mr. Wallace and Mr. Heath had "connected on this" the day before. Ms. Nathan made clear that Mr. Wallace's team did not use "bots" because "bots look fake to anyone," and "[a]ny digital team these days is far more intelligent to utilise something so obvious." This is fully consistent with Ms. Nathan's description, in an earlier message, that the digital team's efforts to change the narrative would be "untraceable."

> From: Melissa Nathan
> To: Jennifer Abel (owner)
>
> I can fully fully confirm we do not have bots . This is not also what we do- bots look fake to anyone.
>
> The other team is doing something very specific in terms of what they do. I know Jamey &Jed connected on this.
>
> Bots and fan accounts also run pretty organically by now with all the AI platforms and Google Analytics itself - there is no bot army that's a myth these days.
>
> Any digital team these days is far more intelligent to utilise something so obvious.
>
> Priority: Normal
>
> 18/08/2024 22:06:43(UTC+0)

      Worse, you have been aware of your clients' campaign against Ms. Lively since it began. ***We understand Wayfarer (and perhaps others) retained you at the same time that this retaliatory campaign was launched, and that you have been planning your response to Ms. Lively's claims since that time***.  Thus, the falsity of your Statement was not only knowing, it was almost certainly premeditated.

       And your statement is particularly egregious given your friendship with Mr. Wallace, who you know is not in the business of "reactive" press engagement. Indeed, it seems that you are "very close" with Mr. Wallace, which suggests that discovery will reveal your knowledge of his

**manatt**                                                **WILLKIE FARR & GALLAGHER LLP**

Cease and Desist Demand
December 23, 2024
Page 8

*proactive* social media influence work on behalf of Wayfarer since (at latest) August 2024. You are therefore not just potentially liable for defamation, but in Ms. Lively's existing complaint, you are a fact witness likely in possession of documents and information relevant to the retaliation campaign alleged therein. Further, to the extent (as suggested in the message below) that you have been communicating with Mr. Wallace and other members of the Wayfarer team via Signal (or other ephemeral messaging platforms), you are hereby on notice that you are legally obligated to preserve those communications.[1]

> From: Melissa Nathan
> To: Jennifer Abel (owner)
> Can I start a Signal thread with you, me and Jed
> Just in case you need him to connect you to Bryan because they're very close
> Priority: Normal
> 13/08/2024 03:42:47(UTC+0)

Your Statement constitutes defamation *per se*. Relying upon the false factual allegations above, you (falsely) allege that the Complaint Ms. Lively filed with the California Civil Rights Department is "completely false," that the allegations contained in that complaint are "categorically false," and that Ms. Lively filed the Complaint "with an intent to publicly hurt and rehash a narrative in the media." The necessary implication of your Statement, therefore, is that Ms. Lively has made knowingly false factual allegations in a verified pleading to a state administrative agency, which (if true) would be a crime under California state law. That is *per se* defamatory, and the fact that you are a lawyer purporting to defend your client in public does not immunize you from defamation liability. *See Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2022 WL 16551323 (D.D.C. Oct. 31, 2022) (lawyer's false factual statements, made in public, even though purportedly on behalf of a client, can constitute defamation *per se*). Because you made these false statements in a functional press release to media outlets around the world, which you released alongside a leaked version of the Complaint which had not yet been publicly disclosed, you have forfeited any privilege from suit under California law, *see Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1138 (1996) (holding that the litigation privilege does not extend to "litigating in the press" because doing so risks "poisoning of jury pools and bringing disrepute upon both the judiciary and the bar"); *Paglia & Associates Construction, Inc. v. Hamilton*, 98 Cal. App. 5th 318, 322 (2023); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 (2013) (same).

---

[1] Communications related to your role in the retaliatory scheme, if any, would not be protected by the attorney-client privilege, which does not protect communications that are not in furtherance of rendering legal advice, among other things. *See, e.g., Montebello Rose Co. v. Agricultural Labor Relations Bd.*, 119 Cal. App. 3d. 1, 32 (1981)

manatt                                      WILLKIE FARR & GALLAGHER LLP

Cease and Desist Demand
December 23, 2024
Page 9

**We accordingly demand that you cease and desist from further defamation of our client, and that you take steps to preserve all of your communications relating to your Statement, including, without limitation, all documents, electronically stored information, and metadata in your possession, custody, or control that relate to, or reasonably calculated to lead to the discovery of evidence related to this Matter in any way.** As you know, State and federal law obligates you to comply with this demand to preserve evidence. *See Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47 (2020); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (2003). This includes the duty to immediately direct all of your employees, agents, and representatives to safeguard relevant records and to create mechanisms for collecting the preserved records so that they might be searched. *See VOOM HD Holdings LLC v. EchoStar Satellite LLC*, 93 A.D.3d 33 (2012). Failure to immediately cease and desist all such unlawful conduct, and to comply with this preservation notice may trigger significant legal consequences and a host of damages, including but not limited to economic and non-economic damages, punitive damages, attorneys' fees and costs.

Respectfully,

/s/ Esra. A Hudson                          /s/ Michael J. Gottlieb
Esra A. Hudson                              Michael J. Gottlieb
Manatt, Phelps & Phillips, LLP              WILLKIE FARR & GALLAGHER LLP
2049 Century Park East, Suite 1700          1875 K Street NW
Los Angeles, CA 90067                       Washington, DC 20006
(310) 312-4381                              (202) 303-1000
ehudson@manatt.com                          mgottlieb@willkie.com


cc:     Stephanie Roeser, Manatt, Phelps & Phillips LLP

**manatt**

WILLKIE FARR & GALLAGHER LLP

Cease and Desist Demand
December 23, 2024
Page 10

Kristin Bender, Willkie, Farr & Gallagher, LLP