Docusign Envelope ID: A2889457-86BE-4D40-A92C-B9A84FF2B38C

CAUSE NO. 2025-

25-0200-DCF

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| BLAKE LIVELY, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | ___ JUDICIAL DISTRICT |
| REQUESTING DEPOSITION OF: | § | |
| JED WALLACE. | § | |
| | § | |
| | § | HAYS COUNTY, TEXAS |
| | § | |
| | § | |

## BLAKE LIVELY'S VERIFIED PETITION FOR RULE 202 DEPOSITION

Petitioner Blake Lively ("Petitioner" or "Ms. Lively") requests an order authorized under Texas Rule of Civil Procedure 202 to take a pre-suit deposition of Jed Wallace ("Respondent" or "Mr. Wallace"), for which Petitioner respectfully shows as follows:

### FACTUAL BACKGROUND

**A.      The Respondent Jed Wallace**

1.       Respondent Mr. Jed Wallace is an independent contractor based in Dripping Springs, Texas, whose company, Street Relations, Inc. ("Street Relations") provides crisis management and intervention services to high-profile and high-net worth clients, including by contracting with other public relations and brand management firms to perform discrete work that facilitates larger public relations strategies.

2.       On information and belief, Mr. Wallace has described himself as a "hired gun" and claimed a "proprietary formula for defining artists and trends."

3.       On information and belief, Mr. Wallace specializes in executing confidential and "untraceable" campaigns across various social media platforms (including TikTok, Instagram,

Reddit, and X) to shape public perception of his clients and their adversaries and to perpetuate those perceptions by, among other things, creating social media accounts with inauthentic users.

4.      On information and belief, Mr. Wallace's clients have included a number of prominent companies and individuals.

**B.      The Film and Negative Sentiment against Ms. Lively**

5.      Ms. Lively co-starred in the 2024 hit film, *It Ends With Us* (the "Film"), directed by Justin Baldoni, who co-starred in the Film, and produced by Mr. Baldoni's production studio, Wayfarer Studios, LLC ("Wayfarer").  Leading up to and throughout the production of the Film, which began on or about May 18, 2023, Ms. Lively and others on set were subjected to a pattern of unprofessional and sexually harassing behavior by Mr. Baldoni and Jamey Heath, Wayfarer's Chief Executive Officer.

6.      Though numerous human resources complaints were raised regarding Mr. Baldoni's and Mr. Heath's behavior, Wayfarer failed to conduct an investigation or to otherwise adequately address concerns or voluntarily implement protections for Ms. Lively or other cast and crew on set.

7.      At the conclusion of the guild strikes that had disrupted production, Ms. Lively negotiated a contractual rider (the "Rider"), ensuring certain on-set and external protections for herself and the rest of the cast and crew prior to returning to set.  The Rider included a provision prohibiting "retaliation of any kind" against Ms. Lively. *See* Ex. A, ¶ 10. The Rider specifically prohibited any disparagement, marginalization, or other negative behavior, either on set or otherwise, including post-production. *Id*.

8.      Filming resumed in January 2024 and production wrapped the following month, in February 2024.

9. Starting on the day the Film was released in August 2024, Ms. Lively suddenly became the focus of vitriol and negative commentary on social media and in the press.

10. Ms. Lively later learned that the negative public sentiment that was suddenly unleashed against her was the direct and intended result of an intentionally seeded "social manipulation," "social media mitigation," "social combat," and public relations scheme that was planned, implemented and funded by Mr. Baldoni, Mr. Heath, Mr. Steve Sarowitz (Wayfarer's co-founder), and Wayfarer as unlawful retaliation against Ms. Lively for raising concerns about harassing conduct on-set and in violation of multiple contractual agreements, including the Rider's non-disparagement provision.

## C. The Retaliation Campaign

11. On July 31, 2024, following the recommendation of their publicist, Jennifer Abel, Wayfarer and Mr. Baldoni retained a crisis communications specialist named Melissa Nathan, and her company, The Agency Group PR LLC ("TAG"). Ms. Nathan delivered a proposal to Mr. Baldoni and Mr. Heath to develop a social media communications plan, which included "[a] website (to discuss), full reddit, full social account take downs, full social crisis team on hand for anything – engage with audiences in the right way, start threads of theories (discuss) this is the way to be fully 100% protected." Ms. Nathan also proposed the "creation of social fan engagement to go back and forth with any negative accounts, helping to change [sic] narrative and stay on track." Per Ms. Nathan, "All of this will be most importantly untraceable." As Ms. Abel described it, the plan was to engage in "social media mitigation and proactive fan posting to counter the negative" as well as "social manipulation."

12.     In the weeks and months that followed—with the direction and approval of Wayfarer, Mr. Heath, and Mr. Baldoni—the team engaged in a sophisticated, coordinated, and well-financed retaliation plan.

13.     The retaliation campaign relied on more than just publicists and crisis managers spinning stories.  They also retained subcontractors, including Mr. Wallace, who weaponized a digital army around the country, including in New York and Los Angeles, to create, seed, manipulate, and advance disparaging content that appeared to be authentic on social media platforms and internet chat forums.

14.     The Baldoni-Wayfarer team would then feed pieces of this manufactured content to unwitting reporters, making content go viral in order to influence public opinion.  To safeguard against the risk of Ms. Lively ever revealing the truth about Mr. Baldoni, the Baldoni-Wayfarer team created, planted, amplified, and boosted content designed to eviscerate Ms. Lively's credibility.  They engaged in the same techniques to bolster Mr. Baldoni's credibility and suppress negative content about him.

15.     On information and belief, TAG engaged Mr. Wallace to assist them in their unlawful, retaliatory "social combat" campaign on behalf of Wayfarer and Mr. Baldoni against Ms. Lively by implementing the "social manipulation" campaign across various social media platforms including Instagram, Reddit, and TikTok.

16.     On information and belief, in August 2024, in the lead-up to the Film's premiere and in the weeks that followed, Mr. Wallace worked remotely from Dripping Springs, Texas, at the direction of Ms. Nathan, TAG, and Ms. Abel on behalf of Wayfarer and Mr. Baldoni, to undermine the credibility of and retaliate against Ms. Lively through this "social manipulation" campaign.

17.     For instance, on August 7, 2024, Ms. Abel inquired about the cost of "social media mitigation and proactive fan posting to counter the negative" press surrounding Mr. Baldoni and whether what she had "discussed with [Ms. Nathan] earlier regarding social manipulation (from the separate team based in Hawaii…)" was included in that fee.  On information and belief, the referenced "team based in Hawaii" worked with Mr. Wallace and/or at his direction.

18.     On August 9, 2024, the day the Film premiered, Ms. Abel and Ms. Nathan flagged social media accounts questioning Mr. Baldoni's conduct on the set of the Film to Mr. Wallace, directing Mr. Wallace to take "serious action on the social side" in response.

19.     Later that same day, Mr. Wallace conveyed to Ms. Nathan that "we are crushing it on Reddit" with respect to their efforts on behalf of Wayfarer, Mr. Baldoni, and Mr. Heath.

20.     On August 10, 2024, Ms. Nathan acknowledged that "socials are really really ramping up…."  Ms. Nathan credited the change "largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan," instead of Mr. Baldoni.



From:
To:          Jennifer Abel (owner)
Hi team — so far, extremely limited pickup on Daily Mail or Page Six. We'll continue to keep an eye out and send pieces as needed, but so far it's been steady coverage on pure speculation. We've also started to see a shift on social, due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan. Again we'll continue to send links and screenshots but wanted to send an update in the meantime.
Priority: Normal
10/08/2024 16:35:40(UTC+0)

21.     In the days that followed, Ms. Nathan and Ms. Abel discussed specific social media posts for Mr. Wallace and his team to "amplify" or "boost."  For instance, on August 10, 2024, Ms. Abel sent a TikTok post of Mr. Baldoni and Ms. Lively appearing to laugh together, and wrote "[w]ould be great for the digital team to boost this in any way possible…"

Docusign Envelope ID: A2889457-86BE-4D40-A92C-B9A84FF2B38C

22.     A few days later, on August 14, 2024, Ms. Abel stated, "I'll have our digital side boost this [TikTok] in the am." In the referenced TikTok, an individual who Ms. Lively has never met responds to social media that Mr. Baldoni "made [Ms. Lively] uncomfortable and sad," calling it "all nonsense."

23.     On August 18, 2024, Mr. Baldoni circulated a TikTok video in which the poster repeated a misleading narrative that Ms. Lively did not speak about domestic violence in any press interviews. A member of Ms. Nathan's team responded that she would "let digital know."

24.     Ms. Nathan and Ms. Abel also discussed working with Mr. Wallace and his "digital team" to suppress certain narratives and posts on social media. For example, the same day, Ms. Abel flagged to TAG that "this girl is claiming that [Mr. Baldoni] invited her up to his hotel room years ago," to which the TAG team replied, "[l]et us chat to Jed on this."

25.     On information and belief, Mr. Wallace was in regular contact with not only Ms. Nathan, but also other executives of Wayfarer. For example, on August 18, 2024, Ms. Nathan texted Ms. Abel that, as opposed to using "bots," "[t]he other team is doing something very specific in terms of what they do. I know Jamey &Jed [*sic*] connected on this."

**D.      Ms. Lively Files Complaint in New York Federal Court**

26.     On December 31, 2024, Ms. Lively filed a complaint in the United States District Court for the Southern District of New York. *See Lively v. Wayfarer Studios LLC, et al.*, 24-cv-10049, ECF No. 1 ("Retaliation Complaint"). The Retaliation Complaint reflects causes of action for sexual harassment, retaliation, and related claims.

27.     The defendants in that case include Wayfarer, Mr. Baldoni, Mr. Heath, Mr. Sarowitz, It Ends With Us Movie LLC, Ms. Nathan, TAG, and Ms. Abel (the "Retaliation Defendants").

28.     The Retaliation Defendants are represented by Bryan Freedman, an entertainment lawyer and co-founder of Liner Freedman Taitelman + Cooley LLP, who also serves as counsel for Mr. Wallace and Street Relations in litigation.  Mr. Freedman was brought in by the Retaliation Defendants during their strategic manipulation smear of Ms. Lively in August 2024, and he since has served as a central figure in their active media campaign, speaking publicly and negatively on numerous occasions regarding Ms. Lively and her allegations, and issuing repeated threats to sue.

29.     Mr. Wallace and his attorney, Mr. Freedman, also have a close personal relationship, emphasizing the unmistakable connection among Mr. Wallace, Mr. Freedman, and the Retaliation Defendants.  In an August 13, 2024 text, Ms. Nathan inquired about whether she should create a Signal thread between herself, Ms. Abel, and Mr. Wallace "in case you need [Mr. Wallace] to connect you to [Mr. Freedman] *because they're very close*." (emphasis added).

> From:          Melissa Nathan
> To:            Jennifer Abel (owner)
> Can I start a Signal thread with you, me and Jed
> Just in case you need him to connect you to Bryan because they're very close
> Priority: Normal
>                                              13/08/2024 03:42:47(UTC+0)

30.     Mr. Wallace was not named as a defendant in the Lively Complaint.  Petitioner now seeks an order from this Court "authorizing the taking of a deposition [] to investigate" Petitioner's "potential claim[s]" against him.  *See* Tex. R. Civ. P. 202.l(b).

31.     Despite evidence acknowledging that Mr. Wallace and others conducted an extensive—and largely successful—campaign to disparage, retaliate against, and damage Petitioner, Mr. Freedman now claims that no digital manipulation campaign was carried out.[1]  He

---

[1] *See, e.g.*, *Statement to the New York Times from Bryan Freedman, attorney for Justin Baldoni, Wayfarer Studios and all its representatives*, NEW YORK TIMES (Dec. 21, 2024),

further has threatened to file suit against anyone who pursues a lawsuit against his clients, including Mr. Wallace, based on such allegations,[2] which include the allegations set forth in the Lively Complaint. Accordingly, a Rule 202 deposition would serve the interests of justice by allowing Petitioner to investigate the scope of Mr. Wallace's conduct, as described herein, and to reduce the risk of inviting frivolous lawsuits by Mr. Freedman.

## PARTIES AND DEPONENTS

32. Blake Lively is an individual domiciled and residing in New York, New York. Petitioner can be served with pleadings and other papers in this proceeding through her counsel of record.

33. Jed Wallace is an individual domiciled and residing in Dripping Springs, Texas. Mr. Wallace may be served wherever he or she may be found.

## JURISDICTION AND VENUE

34. This Court has personal jurisdiction over Mr. Wallace because he is domiciled in Dripping Springs, Texas, which is within Hays County, Texas.

---

https://www.nytimes.com/interactive/2024/12/21/us/statement-to-the-new-york-times.html ("The representatives of Wayfarer Studios still did nothing proactive nor retaliated …"); *id.* ("[] there were no proactive measures taken with media or otherwise []"); *see also Liz Kreutz, Saba Hamedy & Kalhan, Rosenblatt, Justin Baldoni's Attorney Blasts New York Times Story about Blake Lively 'Smear Campaign' Story*, NBC, at $1:38 - 1:43$ (Jan. 3, 2025, 12:46 PM), https://www.nbcnews.com/pop-culture/pop-culture-news/justin-baldonis-attorney-blasts-new-york-times-blake-lively-story-rcna186064 (Q: "Was there a coordinated smear campaign to bring down Blake Lively?" Freedman: "One hundred percent, no.").

[2] *See, e.g.*, James Hibberd, *Justin Baldoni's Publicist Breaks Silence, Defends Leaked Texts About Blake Lively*, The Hollywood Reporter (Dec. 23, 2024), https://www.hollywoodreporter.com/movies/movie-news/justin-baldoni-blake-lively-jennifer-abel-leaked-texts-1236093044/ ("[] anyone actively involved in any possible connection with this abhorrent conduct will be sued into oblivion."); *see also Wayfarer Studios LLC, et al., v. The New York Times Co.*, 24STCV34662 (L.A. Super. Ct., filed Dec. 31, 2024) at ¶ 30 ("This lawsuit seeks to hold the Times accountable for its role in this defamation campaign, but Plaintiffs are not done. There are other bad actors involved, and make no mistake–this will not be the last lawsuit."); *see also Liz Kreutz, Saba Hamedy & Kalhan, Rosenblatt, Justin Baldoni's Attorney Blasts New York Times Story about Blake Lively 'Smear Campaign' Story*, NBC, at $1:03 - 1:06$ (Jan. 3, 2025, 12:46 PM), https://www.nbcnews.com/pop-culture/pop-culture-news/justin-baldonis-attorney-blasts-new-york-times-blake-lively-story-rcna186064 (Q: "Do you plan to sue Blake Lively?" Freedman: "Absolutely." Q: "You will?" Freedman: "Yes.").

35.     This Court has jurisdiction over this matter because a substantial part of the events giving rise to the claims that Petitioner seeks to investigate—specifically, Mr. Wallace's work on the "social manipulation" campaign—occurred in Hays County and are thus within the jurisdictional limits of this Court.

36.     Venue is proper in Hays County pursuant to Texas Civil Practice and Remedies Code §§ 15.002(a)(1) and (3) and Texas Rule of Civil Procedure 202.2 because a substantial part of the underlying events that would give rise to the claims being investigated occurred in Hays County and Mr. Wallace resides in Hays County.

## NATURE OF POTENTIAL CLAIMS AND REQUEST TO DEPOSE

**A.     Petitioner seeks to investigate potential claims against Respondent.**

37.     Petitioner brings this action for a discrete and specific purpose: to investigate the nature and scope of Mr. Wallace's work implementing the "social manipulation" campaign engineered by Wayfarer, Mr. Sarowitz, Mr. Baldoni, Mr. Heath and their multiple public relations teams working to disparage Petitioner.  Petitioner requires this information in order to better understand the manner in which the unlawful conduct, including retaliation, was carried out.

38.     Based on the facts set forth above, which include: (i) a contractual Rider that prevented any retaliation of any kind, including disparagement, against Petitioner; (ii) the breach of that Rider by employees and agents of Wayfarer through a surreptitious social media and press campaign; (iii) the acknowledgement by Wayfarer's employees and agents that Mr. Wallace assisted in breaching the Rider and orchestrating a widespread campaign to damage Petitioner's reputation; and (iv) that Mr. Wallace's efforts had, in fact, succeeded in "shift[ing] the narrative towards shining a spotlight on Blake and Ryan" and damaging Petitioner's reputation, Petitioner seeks to investigate potential tortious claims against Mr. Wallace, including, but not limited to: (i) tortious interference with contract (including non-disparagement provision), and (ii) intentional

infliction of emotional distress. Petitioner requires additional information to determine whether she may pursue those claims, and any additional potential claims, against Mr. Wallace.

**B.      The benefit of Petitioner's pre-suit discovery outweighs the burden or expense.**

39.      Rule 202 permits a party to investigate potential claims via pre-suit depositions. Rule 202 functions "in aid of a suit which is anticipated [and] ancillary to the anticipated suit*." In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (citation omitted) (per curiam).  Depositions under Rule 202 "are governed by the rules applicable to depositions of non-parties in a pending suit [Rule 199.2(b)(5) and] [t]he scope of discovery in depositions authorized by this rule is the same as if the anticipated suit or potential claim had been filed." Tex. R. Civ. P. 202.5.

40.      Petitioner seeks Mr. Wallace's deposition for the precise reasons contemplated by Rule 202: to understand and evaluate potential claims.  Specifically, Petitioner seeks an oral deposition of Mr. Wallace to investigate evidence of the scope, extent, and substance of Mr. Wallace's work undertaken at the direction of Ms. Nathan and/or TAG, or others, on behalf of Mr. Baldoni, Mr. Heath, Mr. Sarowitz, and Wayfarer, including with respect to conduct performed on social media platforms including Instagram, Reddit, and TikTok, and across digital platforms.

41.      Specifically, Petitioner seeks testimony regarding Mr. Wallace's awareness of the Rider that Petitioner entered into with Wayfarer, including the provision that prohibited any disparagement or other negative behavior aimed at Petitioner in retaliation for Petitioner exercising her legally protected right to speak up about the misconduct of Mr. Baldoni, Mr. Heath and Wayfarer.

42.      Petitioner additionally seeks testimony from Mr. Wallace regarding his knowledge of the underlying purpose of the work performed in connection with this engagement, particularly regarding the conduct by Respondent and any agents to manipulate social media sites, the tabloid

media, and other coverage in favor of Mr. Baldoni and against Petitioner, to retaliate against and disparage Petitioner, and to undermine and breach Petitioner's contracts with Wayfarer and It Ends With Us Movie LLC.

43. Petitioner also seeks information regarding the nature and breadth of Mr. Wallace's work to disparage Petitioner, in order to better understand the totality of his efforts and to evaluate the damage to Petitioner from his actions.

44. A court must order a requested Rule 202 deposition if it finds that the likely benefit of allowing the petitioner to investigate a potential claim by taking the deposition, outweighs the burden or expense of the procedure. Tex. R. Civ. P. 202.4(a)(2).

45. Because Petitioner seeks only this limited testimony from Mr. Wallace, the benefit of allowing Petitioner to take the requested deposition outweighs any associated burden or expense to Mr. Wallace. Specifically, the burden or expense of allowing the requested Rule 202 deposition to take place is low, as Petitioner's counsel will work with counsel for Mr. Wallace to schedule the depositions at a mutually convenient time and place. In addition, Petitioner will conduct the requested Rule 202 deposition within the time limitations of Tex. R. Civ. P. 199.5(c).

46. The likely benefit for Petitioner and the justice system is substantial. First, Petitioner's investigation of the potential claims will ensure that any suit filed by Petitioner is supported by competent witness testimony and evidence. Tex. Civ. Prac. & Rem. Code § 9.011; Tex. R. Civ. P. 13.

47. Here, the limited Rule 202 deposition Petitioner proposes is the most efficient method for Petitioner to discover information regarding Respondent's role in the unlawful harm suffered by Petitioner. Based on the information already available to Petitioner, Mr. Wallace

performed work for or alongside, and was privy to, plans and communications with these individuals and entities, many of which are obscured and hidden from Petitioner.

48.     The critical evidence relevant to Petitioner's potential claims, the specifics of the conduct by Mr. Wallace in connection with his work on behalf of Mr. Baldoni, Mr. Heath, Mr. Sarowitz, and Wayfarer, in coordination with Ms. Nathan, TAG, and Ms. Abel, and the identities of other potential defendants, is not otherwise available to Petitioner.  Without this information, Petitioner may be unable to pursue all claims against all liable individuals and companies.

49.     Second, the investigation may help to avoid unnecessary litigation. There is a heightened risk of inviting frivolous lawsuits in this case, where Mr. Wallace's attorney, Mr. Freedman, has repeatedly threatened to file suit against anyone who might bring claims against his clients based on the allegations in the Lively Complaint.  This is particularly relevant in light of the likelihood that Mr. Freedman's threats to sue are backed by another Retaliation Defendant, Mr. Sarowitz, who previously divulged at the Film's New York premiere on August 5, 2024, that he was prepared to spend $100 million to ruin the lives of Ms. Lively and her family.  Throughout 2024, Mr. Sarowitz, the founder and an active director of Paylocity Holding Corp. ("Paylocity"), an HR and payroll company, sold a significant amount of Paylocity stock, valued at nearly $100 million.  Therefore, allowing Petitioner to make an informed decision about any future legal action through a presuit deposition is likely to achieve the goals of reducing or eliminating frivolous litigation and promoting judicial economy that Rule 202 is intended to achieve.

50.     For the reasons set forth above, Petitioner avers that the likely benefit of allowing Petitioner to take Mr. Wallace's deposition to investigate her potential claims outweighs the burden or expense of the procedure and should thus be granted.

## AUTHORITY FOR DEPOSITION

51.     Tex. R. Civ. P. 202 enables a person to "petition the court for an order authorizing the taking of a deposition … to investigate a potential claim or suit." Tex. R. Civ. P. 202.1(b).  A court must order a requested deposition if it finds that the likely benefit of allowing the petitioner to take the deposition to investigate a potential claim outweighs the burden or expense of the procedure.  Tex. R. Civ. P. 202.4(a)(2).

## PRAYER FOR RELIEF

52.     Pursuant to Tex. R. Civ. P. 190.4, Petitioner requests that discovery be conducted under a Level 3 discovery control plan.

53.     Petitioner respectfully requests that the Court issue an order setting a date for hearing on this Petition with at least fifteen days' notice, and after that hearing, issue an order:

a.      requiring Mr. Wallace to testify by oral deposition related to the matters described herein; and

b.      for all other relief at law or in equity, to which Petitioner may be shown to be justly entitled.

January 21, 2025                              Respectfully submitted,

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
HAYNES BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone:    (512) 867-8400
Telecopier:    (512) 867-8470

Michael J. Gottlieb
mgottlieb@willkie.com
Kristin E. Bender
kbender@willkie.com
WILLKIE FARR & GALLAGHER LLP

- 13 -

Docusign Envelope ID: A2889457-86BE-4D40-A92C-B9A84FF2B38C

1875 K Street NW
Washington, DC 20006
Telephone: (202) 303-1000

Esra A. Hudson
Stephanie A. Roeser
Catherine Rose Noble
MANATT, PHELPS, & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California  90067
(310) 312-4000
Email: ehudson@manatt.com
sroeser@manatt.com
cnoble@manatt.com

**ATTORNEYS FOR PETITIONER
BLAKE LIVELY**

CAUSE NO. 2025-

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| BLAKE LIVELY, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | ___ JUDICIAL DISTRICT |
| REQUESTING DEPOSITION OF: | § | |
| JED WALLACE. | § | |
| | § | |
| | § | HAYS COUNTY, TEXAS |
| | § | |
| | § | |

## **VERIFICATION**

1.      My name is Blake Lively. I am over the age of eighteen and my business address is c/o Manatt, Phelps & Phillips LLP, 2049 Century Park East, Suite 1700, Los Angeles, CA 90067.

2.      I have read the above and foregoing Rule 202 Petition. Based on my personal knowledge, the factual information contained therein is true and correct.

3.      I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2025.

DocuSigned by:

_____

290359148C184D8...

Blake Lively

# EXHIBIT A

As of November 15, 2023

Blakel, Inc.
f/s/o Blake Lively
c/o WME Entertainment
9601 Wilshire Blvd., 3rd Floor
Beverly Hills, CA 90210
Attn: Warren Zavala
e-Mail: ███████████████

Copy to:
Sloane Offer Weber and Dern LLP
10100 Santa Monica Blvd., Suite 750
Los Angeles, CA 90067
Attn: David Weber and Lindsey Strasberg
e-Mail: ███████████████

REFERENCE IS MADE to that certain actor agreement ("**Agreement**"), dated as of **May 5, 2023** between IT ENDS WITH US MOVIE, LLC ("**Company**") and BLAKEL, INC. ("**Lender**") for the acting and related services of Blake Lively ("**Artist**") in connection with the motion picture currently entitled "IT ENDS WITH US" ("**Picture**").

WHEREAS, the parties wish to confirm the conditions under which Lender has agreed to cause Artist to render acting services on the Picture following the break in production of the Picture related to the 2023 WGA and SAG-AFTRA labor strikes.

NOW THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, Company agrees to the following additional terms and conditions in connection with Artist's services and use of Artist's results and proceeds in the Picture which shall be deemed incorporated into the Agreement.

1. An intimacy coordinator must be present at all times when Artist is on set.

2. With respect to Artist, any and all rehearsal, filming, reviewing of video playback or dailies and/or any other interaction with any scene involving simulated sex, nudity and/or partial nudity shall be restricted to those persons with essential business reasons for being present ("Essential Personnel") as approved by Artist and Todd Black as further described in the nudity rider attached as Schedule I hereto ("Nudity Rider").

3. There is to be no spontaneous improvising of any scenes involving intimate/sexual physical touching, simulated sex, or nudity with respect to Artist. Scenes involving Artist that involves kissing, depictions of sexual intercourse, or any other intimate/sexual physical touching must be contained in the screenplay (i.e., the most up to date draft approved by Artist in writing), choreographed in advance in the presence of the intimacy coordinator, and may only proceed as choreographed with the consent of all participants in advance.

4. Physical touching and/or comments on Artist's physical appearance must only be done/made in connection with the character and scene work, not as to Artist personally. Except as written into the screenplay or as strictly required in connection with make-up or costume preparation, there is to be no physical touching (including hugging) of Artist, her on-set personnel and/or her employees.

5. There are to be no discussions with Artist of personal experiences with sex or nudity, including as it relates to conduct with spouses or others.

6.      No one will enter, attempt to enter, interrupt, pressure, or request entrance to Artist's trailer while she is in a state of undress for any reason.

7.      There shall be no rehearsal or filming of Artist (including Artist's approved body double) of any nudity, partial nudity and/or simulated sex except as expressly permitted in accordance with the Nudity Rider. Any such footage of Artist (or Artist's body double) previously shot without the Nudity Rider in place may not be used without Artist's and her legal representatives' prior, written consent.

8.      Artist may have a representative of her choosing present with her on set for the remainder of the rehearsal and shooting days, including while on a closed set.

9.      If Artist is exposed to COVID-19, she must be provided notice as soon as possible after Wayfarer or any producer or production executive becomes aware of such exposure.

10.     There shall be no retaliation of any kind against Artist for raising concerns about the conduct described in this letter or for these requirements.  Any changes in attitude, sarcasm, marginalization or other negative behavior, either on set or otherwise, including during publicity and promotional work, as a result of these requests is retaliatory and unacceptable, and will be met with immediate action.

11.     Except as otherwise agreed by Artist, while Artist is on set, Sony must have a mutually-approved representative (Ange Giannetti is hereby approved) on set for the remainder of the rehearsal and shooting days, including on a closed set, to actively supervise the production, including monitoring the safety of the cast and crew, ensuring compliance with the schedule and overseeing logistics, problem solving and creative issues.

12.     Wayfarer will engage an additional, experienced A-level producer, approved by Artist (Todd Black is hereby approved) (the "Approved Producer"), to actively supervise the production, including monitoring the safety of the cast and crew, ensuring compliance with the schedule and overseeing logistics, problem solving and creative issues provided that Company shall have the right to approve the agreement with the Approved Producer.

13.     Wayfarer must empower any existing third party producer with appropriate and customary authority to actively supervise the production, including monitoring the safety of the cast and crew, ensuring compliance with the schedule and overseeing logistics, problem solving and creative issues.

14.     Wayfarer will engage an A-list stunt double, approved by Artist (Lauren Shaw approved as stunt double), to rehearse and perform any scenes involving the character "Lily" that depicts rape or any act of sexual violence.  Artist will only perform close-up work or other pre-approved shots for such scenes.  In addition, Wayfarer to engage Artist-approved body doubles for both characters (i.e., "Lily" and "Ryle") for all simulated sex scenes (Cole Mason approved as body double for "Ryle"). Wayfarer will use reasonable good faith commercial efforts to engage the same Artist-approved individual as Artist's body double and stunt double.

15.     Any rehearsal or shooting involving Artist, or any other performer depicting the character of "Lily," that involves nudity (including partial nudity) or simulated sex must be conducted strictly in accordance with the Nudity Rider and must adhere to the final, Artist-approved script. For the avoidance of doubt, there will be no use of footage in the Picture

that depicts any underage character or underage actor engaged in sexual intercourse or any form of penetration.

16.    Any and all day players that participate in any way in scenes with Artist involving nudity, partial nudity and/or simulated sex must be engaged through customary industry talent agencies and not through personal connections of the director and/or producer.

17.    At Artist's election, an all-hands, in-person meeting before production resumes which will include the director, the existing producers, the Sony representative, the Approved Producer, Artist and Artist's designated representatives to confirm and approve a plan for implementation of the above that will be adhered to for the physical and emotional safety of Artist, her employees and all the cast and crew moving forward.

In the event of any conflict between the terms and conditions of the Agreement and the terms and conditions of this side letter agreement, the terms and conditions of this side letter agreement shall control.

ACKNOWLEDGED, AGREED TO & ACCEPTED

**IT ENDS WITH US MOVIE LLC**

By: _____

Name:    Jamey Heath

Its:    President

**BLAKEL, INC.**

By: _____

Name:    Blake Lively

Its:    Authorized Signatory

DocuSign Envelope ID: 6539DC18-33E6-4808-8788-A040AC923718

Schedule I

Nudity Rider

Doc ID: a03c41e174de32bb29130ca60a9b87e28b02e70e


| | |
|---|---|
| **Title** | Protection Side Letter / Lively / It Ends With Us |
| **File name** | Lively - It Ends ... ------ (002).pdf |
| **Document ID** | a03c41e174de32bb29130ca60a9b87e28b02e70e |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **01 / 19 / 2024**<br>05:03:35 UTC | Sent for signature to Jamey Heath<br>███████████████ ) from ███████████████<br>IP: 172.251.165.158 |
| VIEWED | **01 / 19 / 2024**<br>05:04:39 UTC | Viewed by Jamey Heath ( ███████████████ )<br>IP: 209.220.51.62 |
| SIGNED | **01 / 19 / 2024**<br>05:05:00 UTC | Signed by Jamey Heath ( ███████████████ )<br>IP: 209.220.51.62 |
| COMPLETED | **01 / 19 / 2024**<br>05:05:00 UTC | The document has been completed. |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Carey Wallick on behalf of Laura Prather
Bar No. 16234200
carey.wallick@haynesboone.com
Envelope ID: 96446822
Filing Code Description: Petition
Filing Description: Blake Lively's Verified Petition for Rule 202 Deposition
Status as of 1/22/2025 10:40 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laura Prather | | laura.prather@haynesboone.com | 1/21/2025 4:46:03 PM | SENT |
| Michael Gottlieb | | mgottlieb@willkie.com | 1/21/2025 4:46:03 PM | SENT |
| Kristin Bender | | kbender@willkie.com | 1/21/2025 4:46:03 PM | SENT |
| Esra Hudson | | ehudson@manatt.com | 1/21/2025 4:46:03 PM | SENT |
| Stephanie Roeser | | sroeser@manatt.com | 1/21/2025 4:46:03 PM | SENT |
| Catherine Noble | | cnoble@manatt.com | 1/21/2025 4:46:03 PM | SENT |
| Hannah Keck | | hannah.keck@haynesboone.com | 1/21/2025 4:46:03 PM | SENT |
| Reid Pillifant | | Reid.Pillifant@haynesboone.com | 1/21/2025 4:46:03 PM | SENT |
| Carey Wallick | | carey.wallick@haynesboone.com | 1/21/2025 4:46:03 PM | SENT |
| Lori Mitchell | | Lori.Mitchell@haynesboone.com | 1/21/2025 4:46:03 PM | SENT |