# manatt

Esra Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4381
ehudson@manatt.com

February 15, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

> **Re:** *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL; *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL

Dear Judge Liman:

    We write in response to the Wayfarer Parties' letter motion regarding subpoenas that Ms. Lively and Mr. Reynolds (the "Lively/Reynolds Parties") served to certain phone carriers, AT&T, Verizon, and T-Mobile, earlier this week (the "Subpoenas"). *See* Dkt. No. 75. The Wayfarer Parties have failed to meaningfully meet and confer regarding their objections before seeking intervention from the Court and completely misrepresent the subpoenas that have been served. The Wayfarer Parties' request to quash the subpoenas accordingly should be denied.

    The Wayfarer Parties have sued Ms. Livley for a preposterous sum of $400,000,000 for claiming (based on the Wayfarer Parties' own communications) that a retaliatory campaign existed, yet now appear to fear having third parties turn over the actual evidence that would document the who, what, when, where, and why of that campaign. On February 12, 2025, the Lively/Reynolds Parties issued Notices of the Subpoenas to the aforementioned carriers, seeking ***non-content records*** (that is, numerical logs) related to fifteen specific individuals. *See* Dkt. No. Dkt. Nos. 79-81 (subpoenas). Each individual is either a party to this action (or the related matter of *Jones v. Abel*, Case No. 24-CV-10049) or is an agent/employee of a party who appears (based on evidence discovered in this case) to have a direct connection to the underlying issues. The requests are tailored to the time during which evidence shows each individual may have been involved in acts giving rise to Ms. Lively's claims. Such information is not only relevant, but essential, to unearth the network of individuals involved in the alleged retaliation scheme against Ms. Lively.

# manatt

Hon. Judge Lewis Liman
February 15, 2025
Page 2

Despite their representations, the Wayfarer Parties have failed to meet and confer in good faith prior to bringing their motion. The Lively/Reynolds parties respectfully request that the Court deny the Wayfarer Parties' request based on their failure to meet and confer in good faith alone.

It is clear that the Wayfarer Parties had their letter motion prepared before even meeting and conferring, and they intended to file it regardless of what happened during the meet and confer. On February 14, 2025 at 4:00 p.m., counsel for the parties participated in a telephonic conference regarding the Wayfarer Parties' objections that the Subpoenas seek substantive communications (which they do not), are overbroad, and implicate third-party privacy issues.[1] The Lively/Reynolds Parties repeatedly clarified that the Subpoenas seek only non-content data (such as call logs) and that nothing in the subpoena could fairly be construed as seeking from third parties any substantive communications. Further, the Lively/Reynolds Parties requested legal authority to support the Wayfarer Parties' position regarding their objections including their standing to make such objections on behalf of third parties. The Lively/Reynolds Parties additionally offered a number of suggestions to narrow the scope of the requests, including supplementing the Subpoenas to clarify the "non-content" nature of the requests, to narrow the applicable timeframes, and to limit or withdraw the request for cell site location. Counsel for the Wayfarer Parties refused to entertain any proposal, instead demanding that the Subpoenas be immediately withdrawn in their entirety.

The call ended at 4:31 p.m. Exactly thirty minutes later, at 5:01 p.m., counsel for the Lively/Reynolds Parties emailed opposing counsel, reiterating the request for legal authority to support the Wayfarer Parties' position and agreed, as officers of the Court, not to access or review any produced materials until the parties completed the meet and confer process. *See* Exhibit A.[2] Counsel for the Wayfarer Parties did not respond, instead filing their pre-drafted letter motion. Dkt. No. 75. At 6:33 p.m., the Wayfarer Parties provided notice, for the first time, that they had already served objections to the Subpoenas on the carriers, which of course obviated any risk that the carriers would produce documents in advance of the compliance date or over the holiday weekend (which fabricated "risk" was the entire justification for burdening the Court with this premature letter request rather than continuing the meet and confer process). *See* Exhibit B.

The Court should also deny the Wayfarer Parties' request because the Subpoenas seek directly relevant non-content records that are proportional to the needs of the case, and no legitimate privilege concerns exist.

First, the Subpoenas request records that are relevant and proportional to the needs of the case. SDNY Case. The records bear directly on Ms. Lively's claims that the Wayfarer Parties

---

[1] In the same discussion, counsel for the Wayfarer Parties, indicated their intention not to seek any Protective Order in this matter.
[2] The emails in Exhibits A and B are in Pacific Time.

# manatt

Hon. Judge Lewis Liman
February 15, 2025
Page 3

coordinated a retaliatory campaign against her for raising concerns about misconduct on the set of the Film. The requested records will provide objective evidence on, *inter alia*: (1) when and how the defendants and witnesses learned about Ms. Lively's harassment allegations; and (2) whether, when, and with whom the Wayfarer Parties coordinated efforts to discredit Ms. Lively through the press and social media. The requests are also tailored to key individuals and relevant time periods, may resolve core factual disputes, and are proportional. For example, the requests associated with crisis communications individuals, who appear to have started their work on behalf of Baldoni and Wayfarer in 2024, are limited in time, to a matter of months. *See* Dkt. Nos. 79-81.

Second, the Wayfarer Parties misrepresent both the nature and the scope of the Subpoenas, inaccurately stating that they seek "spousal communications, medical information, attorney-client communications," among other things, that could infringe on privilege. Even a cursory review of the subpoenas, however, shows why those claims are false. Instead, as counsel for the parties expressly discussed during the telephonic meet and confer, the requests do not seek the *content* of any communication—only call, text, and data logs. The Lively-Reynolds parties have not sought (and do not seek here) anything other than non-content records as permitted by law. The Wayfarer Parties have cited no authority, from any court in any jurisdiction, to suggest that such subpoenas would be improper. The Wayfarer Parties' privilege arguments are misplaced. Courts routinely hold that this type of information is not protected by the attorney-client privilege. *See In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 304 (S.D.N.Y. 1982) ("questions designed to elicit the existence or identity of documents or the parties to a communication do not call for protected information"); *see also Montauk U.S.A., LLC v. 148 S. Emerson Assocs., LLC*, 2019 WL 254039, at *3 (E.D.N.Y. Jan. 17, 2019). Spousal privilege similarly protects only the content of confidential marital communications. The Wayfarer Parties have not identified any reason why the records at issue would implicate medical privacy concerns.

Third, the Wayfarer Parties' assertion of third parties' "privacy concerns" is similarly unavailing. The Wayfarer Parties offer no authority supporting their standing to raise such objections, and they have "no proprietary interest in the internal communications of the nonparties" and parties' "general desire to thwart disclosure of information by a non-party is simply not an interest sufficient to create standing." *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012); *Oakley v. MSG Networks, Inc.*, 2024 WL 5056111, at *3 (S.D.N.Y. Dec. 10, 2024) (denying motion to quash for lack of standing). In any event, no legitimate privacy interest regarding the numbers dialed on a phone justifies blocking this discovery, especially where, as here, the records confirm only if and when conversations took place. *See Ugorji v. Dep't of the Env't Prot. of the State of New Jersey*, 2011 WL 13140574, at *2 (D.N.J. Oct. 27, 2011); *see also Smith v. Maryland*, 442 U.S. 735, 742 (1979) (no legitimate expectation of privacy regarding the numbers he dialed on his phone). And, of course, if the Wayfarer Parties have concerns regarding third party privacy, one wonders why they have declined to move expeditiously to put a Protective Order in place.

# manatt

Hon. Judge Lewis Liman
February 15, 2025
Page 4

      For these reasons, the Lively/Reynold Parties respectfully request that the Court deny the Wayfarer Parties' motion and allow discovery to proceed.

                                      Sincerely,

                                      */s/ Esra Hudson*

                                      Esra Hudson

Enclosures