# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BLAKE LIVELY,

                        Plaintiff,

     v.

WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual, JED WALLACE, an individual, and STREET RELATIONS INC., a California Corporation,

                        Defendants.

No. 1:24-cv-10049-LJL
(Consolidated with 1:25-cv-00449-LJL)
rel. 1:25-cv-00779-LJL

WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, and JENNIFER ABEL, an individual, and STEVE SAROWITZ, an individual,

                        Plaintiffs,

     v.

BLAKE LIVELY, an individual, RYAN REYNOLDS, an individual, LESLIE SLOANE, an individual, VISION PR, INC., a New York Corporation, and THE NEW YORK TIMES COMPANY, a New York Corporation,

                        Defendants.

**<u>VISION PR, INC. AND LESLIE SLOANE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT, FOR ATTORNEYS' FEES AND COSTS, AND TO STRIKE EXHIBIT A</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

LEGAL STANDARD .............................................................................................. 5

ARGUMENT ........................................................................................................... 5

    I.     The Amended Complaint Must Be Dismissed Due To Impermissible Group Pleading ................................................................................................. 5

    II.    The Amended Complaint Fails To State A Claim For Civil Extortion. ................ 7

    III.   The Amended Complaint Fails To State A Claim For Defamation ...................... 9

        A.    Ms. Sloane's Alleged Statements Do Not Concern Six Of The Seven Wayfarer Parties ....................................................................................... 10

        B.    Ms. Sloane's Alleged Statements Are Inactionable Opinion, Or, In The Alternative, Are Substantially True ..................................................... 11

            i.   Ms. Sloane's Alleged Statements Are Inactionable Opinion ....... 11

            ii.  In The Alternative, Ms. Sloane's Alleged Statements Are Substantially True ........................................................................ 14

        C.    The Alleged Statements Concerning "Sexual Assault" Are Insufficiently Specific. ........................................................................... 16

        D.    The Wayfarer Parties Fail to Allege Actual Malice ................................. 17

        E.    The Wayfarer Parties Fail to Allege Special Damages ............................. 19

    IV.   The Amended Complaint Fails To State A Claim For False Light. .................... 20

    V.    Ms. Sloane And Vision PR, Inc. Are Entitled To Attorneys' Fees and Costs ...... 21

    VI.   The Court Should Strike Exhibit A To The Amended Complaint. ..................... 23

CONCLUSION ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. Solar Power, Inc.*,
   2018 WL 1626162 (S.D.N.Y. Mar. 30, 2018) ......................................................................... 12

*Agnant v. Shakur*,
   30 F. Supp. 2d 420 (S.D.N.Y. 1998) ..................................................................................... 19

*Ahmad v. Experian Info. Sols., Inc.*,
   2023 WL 8650192 (S.D.N.Y. Dec. 14, 2023) ....................................................................... 24

*Aisenson v. Am. Broad. Co.*,
   220 Cal. App. 3d 146 (Cal. Ct. App. 1990) .......................................................................... 21

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 327 (S.D.N.Y. 2010) ..................................................................................... 7

*Ann-Margret v. High Soc. Mag., Inc.*,
   498 F. Supp. 401 (S.D.N.Y. 1980) ....................................................................................... 17

*Arista Records v. Sanchez*,
   2006 WL 5908359 (C.D. Cal. Mar. 1, 2006) ....................................................................... 8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 5

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ................................................................................................ 6

*Barber v. Premo*,
   2021 WL 6622496 (N.Y. Sup. Ct. Sept. 29, 2021) ............................................................... 13

*BCRE 230 Riverside LLC v. Fuchs*,
   59 A.D.3d 282 (1st Dep't 2009) ........................................................................................... 16

*Bell Atlantic Corp v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 5

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021) ..................................................................................... 7

*Bernstein v. New York City Dep't of Educ.*,
   2021 WL 4429318 (S.D.N.Y. Sept. 27, 2021) ..................................................................... 25

*Berwick v. New World Network Int'l, Ltd.*,
   2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ........................................................................ 20

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015) ................................................................................................. 18

*Bloom v. A360 Media LLC*,
   735 F. Supp. 3d 466 (S.D.N.Y. 2024) ................................................................................... 18

*Bobulinski v. Tarlov*,
   2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ........................................................... 19, 22, 23

*Brady v. NYP Holdings, Inc.*,
2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) .............................................. 11, 20

*Brahmana v. Lembo*,
2010 WL 965296 (N.D. Cal. Mar. 17, 2010) ................................................... 21

*Brahms v. Carver*,
33 F. Supp. 3d 192 (E.D.N.Y. 2014) ............................................................. 12

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ................................................ 18

*Cardone v. Empire Blue Cross & Blue Shield*,
884 F. Supp. 838 (S.D.N.Y. 1995) .......................................................... 11, 20

*Caro Cap., LLC v. Koch*,
2021 WL 1595843 (S.D.N.Y. Apr. 23, 2021) ........................................... 12, 14

*Chau v. Lewis*,
771 F.3d 118 (2d Cir. 2014) ......................................................................... 11

*Chevron Corp. v. Donziger*,
2013 WL 3879702 (S.D.N.Y. July 29, 2013) ................................................... 8

*Chord Assocs., LLC v. Protech 2003-D, LLC*,
2010 WL 3780380 (E.D.N.Y. Sept. 21, 2010) .............................................. 21

*Chung v. Better Health Plan*,
1997 WL 379706 (S.D.N.Y. July 9, 1997) ..................................................... 14

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) .......................................................... 22

*Cooper v. Templeton*,
629 F. Supp. 3d 223 (S.D.N.Y. 2022) .......................................................... 11

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
551 F. Supp. 3d 320 (S.D.N.Y. 2021) ....................................................... 6, 15

*Deaton v. Napoli*,
2019 WL 4736722 (E.D.N.Y. Sept. 27, 2019) .............................................. 21

*DeIuliis v. Engel*,
2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ............................................... 20

*Delaney v. HC2, Inc.*,
2025 WL 27484 (S.D.N.Y. Jan. 3, 2025) ...................................................... 24

*Dooner v. Keefe, Bruyette & Woods, Inc.*,
2003 WL 135706 (S.D.N.Y. Jan. 17, 2003) .................................................. 20

*Drug Rsch. Corp. v. Curtis Publ'g Co.*,
166 N.E.2d 319 (1960) ................................................................................. 20

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .............................................. 16

*Gurtler v. Union Parts Mfg. Co.*,
    285 A.D. 643 (1st Dep't 1955) ........................................................................... 20

*Hammer v. Amazon.com*,
    392 F. Supp. 2d 423 (E.D.N.Y. 2005) ............................................................... 11

*Hengjun Chao v. Mount Sinai Hosp.*,
    476 F. App'x 892 (2d Cir. 2012) ......................................................................... 8

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018) ............................................................... 18

*Intermarketing Media, LLC v. Barlow*,
    2021 WL 5990190 (C.D. Cal. May 4, 2021) ....................................................... 9

*Jackson v. Mayweather*,
    10 Cal. App. 5th 1240 (Cal. Ct. App. 2017) ..................................................... 21

*Jacob v. Lorenz*,
    626 F. Supp. 3d 672 (S.D.N.Y. 2022) ............................................................... 10

*Kall v. Peekskill City Sch. Dist.*,
    2020 WL 2555256 (S.D.N.Y. May 19, 2020) ..................................................... 17

*Kerns v. Ishida*,
    208 A.D.3d 1102 (1st Dep't 2022) ..................................................................... 12

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ............................................................................... 10

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ............................................................................... 10

*Kling v. World Health Org.*,
    532 F. Supp. 3d 141 (S.D.N.Y. 2021) ............................................................... 25

*Lesesne v. Brimecome*,
    918 F. Supp. 2d 221 (S.D.N.Y. 2013) ................................................................. 8

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) ......................................................................................... 20

*Maule v. NYM Corp.*,
    54 N.Y.2d 880 (1981) ......................................................................................... 17

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ......................................................... 17, 18

*Miller v. James*,
    2024 WL 4333197 (N.D.N.Y. Sept. 27, 2024) ......................................... 12, 13, 20

*Morrison v. Scotia Capital (USA) Inc.*,
    2023 WL 8307930 (S.D.N.Y. Dec 1, 2023) ....................................................... 15

*Morse v. Weingarten*,
    777 F. Supp. 312 (S.D.N.Y. 1991) ....................................................................... 3

*Murphy v. Kozlowska*,
   217 A.D.3d 455 (1st Dep't 2023) ........................................................................ 7

*Nunez v. A-T Fin. Info. Inc.*,
   957 F. Supp. 438 (S.D.N.Y. 1997) ..................................................................... 20

*O'Brien v. Alexander*,
   898 F. Supp. 162 (S.D.N.Y. 1995) ..................................................................... 17

*People v. Sene*,
   66 A.D.3d 427 (1st Dep't 1999) ......................................................................... 15

*Petrello v. White*,
   2018 WL 4344955 (E.D.N.Y. Sept. 11, 2018) ............................................. 24, 25

*Prince v. Intercept*,
   634 F. Supp. 114 (S.D.N.Y. 2022) ......................................................... 10, 17, 19

*Rapaport v. Barstool Sports Inc.*,
   2024 WL 88636 (2d Cir. Jan. 9, 2024) ......................................................... 11, 12

*Reeves v. Associated Newspapers, Ltd.*,
   218 N.Y.S.3d 19 (1st Dep't 2024) ..................................................................... 22

*Rosa v. Eaton*,
   2024 WL 3161853 (S.D.N.Y. June 25, 2024) .................................................... 13

*Rosenberg v. Home Box Office, Inc.*,
   2006 WL 5436822 (N.Y. Sup. Ct. Jan. 30, 2006) ............................................... 6

*Salahuddin v. Cuomo*,
   861 F.2d 40 (2d Cir. 1988) ........................................................................... 23, 24

*Samzelius v. Bank of Am.*,
   2012 WL 12949683 (N.D. Cal. Oct. 9, 2012) ...................................................... 8

*Sarver v. Hurt Locker LLC*,
   2011 WL 11574477 (C.D. Cal. Oct. 13, 2011) .................................................. 21

*Shak v. Krum*,
   2018 WL 5831319 (S.D.N.Y. Nov. 6, 2018) ....................................................... 7

*Smith v. Hogan*,
   794 F.3d 249 (2d Cir. 2015) .............................................................................. 24

*Soter Techs., LLC v. IP Video Corp.*,
   523 F. Supp. 3d 389 (S.D.N.Y. 2021) ............................................................... 19

*Springer v. Almontaser*,
   75 A.D.3d 539 (2nd Dep't 2010) ....................................................................... 14

*Tagliaferri v. Szulik*,
   2015 WL 5918204 (S.D.N.Y. Oct. 9, 2015) ...................................................... 17

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010) ......................................................... 10, 19

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
   2017 WL 2627912 (S.D.N.Y. June 16, 2017) ...................................................................... 6

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
   612 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................................................................. 7

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
   28 N.Y.3d 82 (2016) ........................................................................................................ 11

*Townsend v. McDonnell*,
   2019 WL 7882085 (C.D. Cal. Dec. 12, 2019) .................................................................. 21

*Trump v. Trump*,
   79 Misc. 3d 866 (N.Y. Sup. Ct. 2023) .............................................................................. 22

*Watson v. NY Doe 1*,
   2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023)....................................................................... 22

*Wilson v. Tarricone*,
   2013 WL 12084504 (S.D.N.Y. Sept. 26, 2013).................................................................. 20

*Zaret v. Bonsey*,
   2023 WL 6317956 (S.D.N.Y. Sept. 28, 2023)................................................................... 19

**Other Authorities**

Columbia Health, *What Is Sexual Assault?*, https://tinyurl.com/4jz2t7mx (Oct. 25, 2023) ......... 13

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York AntiSLAPP Scheme
   in Federal Court*, 2 J. Free Speech L. 573, 599–614 (2023) ..................................................... 23

**Rules**

Cal. Penal Code § 518.................................................................................................................. 8

Fed. R. Civ. P. 10(c) .................................................................................................................. 24

Fed. R. Civ. P. 12(f).................................................................................................................... 24

Fed. R. Civ. P. 8(a)(2)................................................................................................................ 23

N.Y. Civ. Rights Law § 70-a(1)(a) ............................................................................................ 22

N.Y. Civ. Rights Law § 76-a ..................................................................................................... 22

Consolidated Defendants Leslie Sloane and Vision PR, Inc. respectfully submit this memorandum of law in support of their Motion to Dismiss the Amended Complaint for failure to state a claim, for attorneys' fees and costs, and to Strike Exhibit A of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f), and New York's anti-SLAPP law.

## PRELIMINARY STATEMENT

Justin Baldoni has spent years profiting off the feminist and #MeToo movements, peddling books, podcasts, TED Talks, and more using slogans about believing survivors, ending victim blaming, and promoting informed consent. His conduct in this dispute is therefore sheer hypocrisy, beginning with his egregious sexual harassment of multiple employees, and continuing with his ongoing campaign to discredit and blame his victims and punish anyone who speaks out against him. The Wayfarer Parties'[1] allegations about Blake Lively boil down to: she was too ambitious, too outspoken, and she should have accepted Baldoni's bizarre and abusive practices without complaint—no matter how uncomfortable they made her and other women on set.

As alleged in Ms. Lively's complaint, Baldoni invaded her trailer while she was undressed, improvised kissing scenes without her consent, and repeatedly crossed professional boundaries by showing her a video of a naked woman, discussing his pornography addiction, and discussing his past sex life, including instances when he did not "always listen when [women] said no." Unfortunately, Ms. Lively was not Baldoni's only victim.

Baldoni does not deny the lion's share of misconduct for which he is accused. Instead, he tries to contextualize his behavior and suggest that Ms. Lively asked for it.[2] When Ms. Lively

---

[1] Initially capitalized terms not defined herein shall have the same meaning as in the Amended Complaint. ECF No. 50 ("Amended Complaint" or "AC").

[2] For instance, Baldoni responds to Ms. Lively's allegation that Baldoni and Heath "invaded" her "trailer uninvited while she was undressed, including when she was breastfeeding her infant child," ECF No. 84 ¶ 105, by publishing a text message where Ms. Lively "invited Baldoni to her trailer

bravely spoke up about Baldoni's predatory behavior, he and his team used every weapon in their arsenal to blame, embarrass, and silence her, going so far as to hire a crisis PR manager who promised to "**bury**" Ms. Lively and "**destroy**" her life.[3]

Baldoni also trivializes this dispute about sexual harassment and retaliation by trying to recharacterize it as a mere battle for creative control of the movie, *It Ends With Us*. Baldoni's allegations about the creative issues are irrelevant and tellingly sexist. Because Ms. Lively—an executive producer on the film—dared to offer input on the script, wardrobe, and editing, Baldoni blasts her as "tyrannical" and "aggressive," among other coded terms.

The Wayfarer Parties dragged Leslie Sloane and Vision PR, Inc. into the instant litigation as a smoke and mirrors exercise to distract from their own sexual harassment and systematic retaliation. But the Wayfarer Parties never had a Rule 11 basis for accusing Ms. Sloane or her company of propagating "malicious stories" or a "smear campaign" about the Wayfarer Parties. Other than one New York Times article that they cannot plausibly connect to Ms. Sloane or her company in any way, the Wayfarer Parties do not identify a single "malicious story" that is part of their invented "smear campaign." By the Wayfarer Parties' own allegations, all Ms. Sloane did was respond to a press inquiry about a story that *Baldoni's team* seemingly planted. The Amended Complaint does not—and cannot—identify anything Ms. Sloane did that comes anywhere close to the damning communications between Baldoni and his own publicists concerning an explicit

---

to rehearse while pumping breast milk." AC ¶ 58. But as Baldoni has preached, consent is specific and reversible, *see* https://tinyurl.com/4dbya7jp, and an invitation to enter Ms. Lively's trailer on one occasion is not an open invitation to enter her trailer whenever he pleased. Further, a true "advocate for postpartum mothers" would know there is a radical difference between pumping and breastfeeding. Ms. Lively's text message does not undermine her credible allegations in the least.
[3] In his TED Talk, Baldoni presciently asks, "Are you confident enough to listen to the women in your life, to hear their ideas and their solutions, to hold their anguish, and actually believe them, **even if what they're saying is against you?**" *See* https://tinyurl.com/442djjfp at 13:30. Clearly, Baldoni's response to his own question is a resounding "no."

campaign to "destroy" and "bury" the woman employee who accused him of sexual harassment.

The Wayfarer Parties accuse Ms. Sloane and Vision PR, Inc. of extortion but do not (and cannot) identify where or how the alleged extortion occurred, or how Ms. Sloane or Vision PR, Inc. received anything of value because of that extortion. They also assert claims for defamation without complying with the basic requirement of identifying or describing the statements they allege are defamatory. Because the Amended Complaint's scattershot allegations fail to adequately plead claims for civil extortion, defamation, and false light, Ms. Sloane and Vision PR, Inc. respectfully request that the Court dismiss the Amended Complaint with prejudice and award attorneys' fees and costs under New York's anti-SLAPP law.

## FACTUAL BACKGROUND

Ms. Sloane is the owner of Vision PR, Inc., and the renowned, long-time publicist of numerous celebrities including Ms. Lively and Ryan Reynolds. She has a decades'-long reputation for professionalism and trustworthiness, and the Wayfarer Parties' baseless claims against her have caused her irreparable professional damage and emotional harm. Ms. Sloane has never "leak[ed] sensitive stories to provoke public controversy" on behalf of any of her clients, and the Wayfarer Parties' attempt to characterize Vision PR, Inc. as a "Harvey Weinstein-backed PR firm" is intentionally misleading. AC ¶ 187 & n.24.[4] Vision PR, Inc. is entirely unaffiliated with Weinstein, and any stories that the Wayfarer Parties have planted or encouraged claiming that Ms. Sloane ever worked with Weinstein to attack or discredit his victims are baseless.

The Wayfarer Parties claim that Ms. Sloane initiated the public relations war between the parties and orchestrated a "smear campaign" against Baldoni, but the Amended Complaint does

---

[4] This allegation is meant solely to harm Ms. Sloane and "inflame the reader." *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991).

not allege any facts to support these inflammatory accusations. Their own submissions in fact prove the opposite. *Baldoni*'s PR team began plotting against Ms. Lively as of at least July 31, 2024, and by August 4 his publicist Jennifer Abel wrote that she wanted to "plant pieces this week of how horrible Blake is to work with." Melissa Nathan, who Baldoni hired as a crisis management expert on the promise that she "can bury anyone," responded that she had "already off the record[] Spoke to the editor [of] [the] Daily Mail." ECF No. 50-1 at 112. Ms. Sloane, by contrast, is not alleged to have spoken to the press until four days later, on August 8, 2024, when she responded to a Daily Mail reporter's inquiry. *See* AC ¶ 190. In other words, by the Amended Complaint's own allegations, Ms. Sloane did not speak to the press about Baldoni until August 8, when she responded to a press inquiry about a story that Baldoni's team planted days (if not weeks) earlier.

The Wayfarer Parties' claims against Ms. Sloane and Vision PR, Inc. appear to arise out of the statements that Ms. Sloane allegedly made to the Daily Mail Reporter ("the Reporter") that she spoke to on August 8. According to the Amended Complaint, the Reporter asked to speak with Ms. Sloane "regarding prob[lem]s on the set involving [Blake Lively] and Justin Baldoni and the fallout over that with Blake being labeled difficult and a power struggle existing," and Ms. Sloane responded, "That is 1000 percent untrue" and "Your info is totally off[.]" *Id.* ¶ 189. Ms. Sloane further stated, "The whole cast doesn't like Justin nothing to [sic] do with Blake" and "I'm telling you she's a liar. They are panicking as the whole cast hates him[.]" *Id.* ¶ 190.

The Amended Complaint also includes a screenshot of text messages between Nathan and the Reporter, which were purportedly exchanged "[f]ollowing the release of Lively's administrative complaint on December 20, 2024." *Id.* ¶ 193. In the texts, the Reporter writes,

> She said the whole cast [hates] Justin this has nothing to do with Blake and now she's saying that Blake was sexually assaulted. Why wouldn't she say anything about that then?

*Id.* Ms. Sloane did not write the words appearing in these messages, and the Amended Complaint

does not allege otherwise. Despite including multiple screenshots of text messages written by Ms. Sloane, the Amended Complaint includes no messages where Ms. Sloane writes that "Blake was sexually assaulted" or uses similar language.

While the Amended Complaint fails to provide the requisite context for any statements allegedly attributable to Ms. Sloane, the only plausible reading of this conversation (which did not include Ms. Sloane) is that the Reporter read the December 20 administrative complaint and was himself characterizing those allegations as Ms. Lively being "sexually assaulted."

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions are not entitled to any assumption of truth, nor are mere recitals of the elements of a cause of action. *Id.* When the claims in a complaint have not crossed the line from "conceivable to plausible," the complaint must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT[5]

The Wayfarer Parties assert claims for extortion, defamation, and false light invasion of privacy against Ms. Sloane and Vision PR, Inc. Each fails for multiple, independent reasons.

### I.    The Amended Complaint Must Be Dismissed Due To Impermissible Group Pleading.

As a threshold matter, the Amended Complaint should be dismissed because it is replete with "impermissible group pleading," in that it "generally attribute[s] misconduct to the 'Defendants' collectively," while failing to "differentiate between the [multiple] defendants."

---

[5] Ms. Sloane and Vision PR., Inc. incorporate by reference arguments made by Ms. Lively, Mr. Reynolds, and the New York Times Company to the extent applicable here.

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017). Each cause of action is asserted by the "Wayfarer Parties," collectively, against the "Lively Parties," collectively. AC ¶¶ 316–39. For example, the defamation claim is asserted against all five "Lively Parties" but does not identify the defamatory statements, much less which "Lively Part[y]" said them. Ms. Sloane cannot be held liable for defamation for statements made by Ms. Lively or Mr. Reynolds (and vice versa). Nor can she be held liable for an allegedly defamatory article published by the New York Times where she did not even serve as a source. *See Rosenberg v. Home Box Office, Inc.*, 2006 WL 5436822, at *8 (N.Y. Sup. Ct. Jan. 30, 2006) ("[U]nder New York law, defendants are not responsible for statements attributable to a newspaper reporter, that they themselves did not write or publish.").[6]

The Amended Complaint also lacks a basic mapping of which Wayfarer Party (as a plaintiff) is asserting claims against each of the "Lively Parties." An explanation for the basis of each party's claims is required here as it cannot be that each plaintiff has good faith claims against each defendant. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal of complaint due to impermissible group pleading). For instance, there is no viable defamation claim that the "Wayfarer Parties" can assert against Ms. Sloane because Ms. Sloane is not alleged to have made a single statement—let alone a defamatory statement—regarding anyone other than Baldoni. Similarly, the Wayfarer Parties cannot assert an extortion claim against each of the "Lively Parties" when Ms. Sloane is not alleged to have received anything of value from any of the Wayfarer Parties, and she did not communicate with anyone other than Nathan. The Amended Complaint must therefore be dismissed. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d

---

[6] In any event, any statements concerning Ms. Lively's complaint, including but not limited to the New York Times article, are privileged under New York Civil Rights Law § 74. *See, e.g.*, *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 331 (S.D.N.Y. 2021).

379, 397 (S.D.N.Y. 2021) (dismissing complaint that was "riddled with instances of improper group pleading, in which they refer to actions taken by 'the Scott Group Defendants'").

## II.    The Amended Complaint Fails To State A Claim For Civil Extortion.

The civil extortion claim fails for several reasons. First, civil extortion is not a cognizable claim under New York law, which clearly applies to the claims against Ms. Sloane and Vision PR, Inc. *See Shak v. Krum*, 2018 WL 5831319, at *5 (S.D.N.Y. Nov. 6, 2018) (dismissing civil extortion claim because it is not a cause of action under New York law); *Murphy v. Kozlowska*, 217 A.D.3d 455, 456 (1st Dep't 2023) (same). Without any analysis whatsoever, the Wayfarer Parties "assert their claims under" California law, merely because "Lively has contended that California law applies" as to her own affirmative claims. AC at 211 & n.27.

Ms. Sloane and Vision PR, Inc. do not stipulate to the application of California law as to the claims leveled against them, however, and to determine what law applies, New York courts conduct an "interest analysis" and apply the law of the state having the greatest interest in the litigation. Here, New York has the greatest interest in the dispute. The Lively Parties are all domiciled in New York, AC ¶¶ 307–11, and the Wayfarer Parties concede that all relevant conduct occurred in New York, *see id.* ¶¶ 41, 44, 67, 314, and that they allegedly suffered harm "within" New York, *id.* ¶ 314. Accordingly, New York law applies. *See, e.g.*, *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 340–41 (S.D.N.Y. 2010) (applying New York law to tort claim even though plaintiff was domiciled out of state); *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 283–84 (S.D.N.Y. 2009) (same).

Second, even if New York were to recognize a civil cause of action for extortion, it must be dismissed as impermissibly duplicative of the defamation claim. The Wayfarer Parties do not allege that Ms. Sloane engaged in any wrongful conduct beyond making a handful of statements that the Wayfarer Parties claim are defamatory. *See* AC ¶¶ 189–93. Their claim therefore sounds

in defamation, and the Wayfarer Parties may not circumvent defamation defenses by styling their claim as some alternative tort. *See Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (affirming dismissal of tort claims as duplicative of defamation claim where the underlying factual allegations were "virtually identical" and alleged underlying harms "all 'flow[ed] from the effect on his reputation caused by [] allegedly defamatory statements"); *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 225 (S.D.N.Y. 2013) ("There are a plethora of cases in which courts have found that claims brought under the guise of other causes of action actually sound in defamation, even if the plaintiff alleged economic harm.") (collecting cases).

Third, the extortion claim fails "regardless of whether the issue is controlled by the law of California or New York" because there are federal courts in California which "indicate that no such cause of action is available under California law" and the "California Supreme Court has not yet determined the issue." *Chevron Corp. v. Donziger*, 2013 WL 3879702, at *1 (S.D.N.Y. July 29, 2013); *see Samzelius v. Bank of Am.*, 2012 WL 12949683, at *9 (N.D. Cal. Oct. 9, 2012) (holding that extortion is only a "criminal offense" and not a "private right of action"); *Arista Records v. Sanchez*, 2006 WL 5908359, at *2 (C.D. Cal. Mar. 1, 2006) (same); *see also Bank of New York Mellon v. DeSelms*, 2019 WL 8198310, at *4 (C.D. Cal. Mar. 25, 2019) (noting courts are "divided over whether California recognizes a civil cause of action for extortion").

Fourth, even if the Court were to determine that California law applies and follow decisions recognizing a claim for civil extortion under California law, the Wayfarer Parties fail to allege the essential elements of that claim. Extortion refers to (1) "the obtaining of property . . . from another, with his . . . consent," (2) "induced by a wrongful use of force or fear, or under color of official right." Cal. Penal Code § 518. "Because extortion is in substance a fraud claim, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b)." *Intermarketing*

*Media, LLC v. Barlow*, 2021 WL 5990190, at *13 (C.D. Cal. May 4, 2021). "To satisfy this standard, plaintiffs must allege 'the who, what, when, where, and how of the misconduct charged.'" *Id.* Here, neither element of an extortion claim is alleged, much less with particularity.

The Wayfarer Parties do not—and cannot—allege that Ms. Sloane or Vision PR, Inc., "obtain[ed]" any "property" from them. *See, e.g.*, *DeSelms*, 2019 WL 8198310, at *4 ("Even assuming for the sake of argument that a civil cause of action for extortion exists, [plaintiff's] complaint fails . . . because it does not allege that [defendant] actually obtained property from her."); *Arista*, 2006 WL 5908359, at *2 (dismissing extortion claim where "Defendant has not alleged that any property was taken from her").

Nor do the Wayfarer Parties allege that Ms. Sloane used "force or threats" to obtain anything from them. *Doe v. Mahboubi-Fardi*, 2024 WL 2206640, at *13 (C.D. Cal. Jan. 2, 2024); *see Arista*, 2006 WL 5908359, at *2 (dismissing extortion claim where counterclaimant did not allege "wrongful use of force, violence, or fear" and instead "merely allege[d] that Plaintiffs informed her of their intent to file the present action, filed the present action, and offered to settle it"). In fact, the Amended Complaint does not allege that Ms. Sloane so much as spoke to six of the seven Wayfarer Parties (Baldoni, Wayfarer Studios LLC, Jamey Heath, It Ends With Us Movie LLC, Abel, and Steve Sarowitz), and in her limited communications with Nathan, Ms. Sloane is not alleged to have said anything improper, let alone threatening. *See* AC ¶¶ 188, 191.[7]

For the foregoing reasons, the Court should dismiss the civil extortion claims.

### III.    The Amended Complaint Fails To State A Claim For Defamation.

The Wayfarer Parties' defamation claim fails on multiple grounds. As a threshold issue, the Amended Complaint does not (and cannot) allege that Ms. Sloane made a single statement

---

[7] Ms. Sloane also cannot be held liable for anything another person did as California law requires a "direct" use of "force or fear against" the plaintiffs. *Mahboubi-Fardi*, 2024 WL 2206640, at *13.

concerning six of the seven Wayfarer Parties. Further, all three statements—that "[t]he whole cast doesn't like Justin," "the whole cast hates him," and "Blake was sexually assaulted"—cannot give rise to a defamation claim because they are (1) inactionable opinion or, in the alternative, substantially true; (2) not alleged to have been made with actual malice; and (3) not alleged to have given rise to special damages. The statement that "Blake was sexually assaulted" cannot give rise to a defamation claim for the additional reasons that this statement is not attributable to Ms. Sloane, and the circumstances of this statement are not alleged with the requisite specificity.[8]

### A. Ms. Sloane's Alleged Statements Do Not Concern Six of the Seven Wayfarer Parties.

As a threshold matter, the Wayfarer Parties' defamation claim must be dismissed to the extent it is asserted by Wayfarer Studios LLC, Heath, It Ends With Us Movie LLC, Nathan, Abel, and Sarowitz. It is axiomatic that to state a claim for defamation, the allegedly defamatory statement must be "of and concerning the [defamation] plaintiff." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). Whether a plaintiff has adequately alleged that the defamatory statements are "of and concerning" him may be properly considered on a Rule 12(b)(6) motion. *See Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010).

Here, the Wayfarer Parties do not even *attempt* to allege a single statement by Ms. Sloane that is "of and concerning" six of the seven Wayfarer Parties, and instead allege that Ms. Sloane made a handful of statements concerning only Baldoni. *See* AC ¶¶ 189–93. Accordingly, the Wayfarer Parties' defamation claim must be dismissed to the extent it is asserted by anyone other

---

[8] New York law applies to the defamation claim because the alleged harm was suffered in New York, AC ¶ 314, the statements emanated from New York, *id.* ¶¶ 309–10, the conduct to which the alleged defamatory statements refer all took place in New York, *see id.* ¶¶ 41, 44, 67, and New York has "strong policy interests in regulating the conduct of its citizens and its media," *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 685 (S.D.N.Y. 2022). *See also Kinsey v. New York Times Co.*, 991 F.3d 171, 176–78 (2d Cir. 2021) (applying New York law to defamation claim where plaintiff was domiciled out of state); *Prince v. Intercept*, 634 F. Supp. 114, 133–34 (S.D.N.Y. 2022) (same).

than Baldoni. *See Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 87 (2016) (statements that a strip club was a mafia enterprise were not "of and concerning" individuals associated with the club); *Cardone v. Empire Blue Cross & Blue Shield*, 884 F. Supp. 838, 847–48 (S.D.N.Y. 1995) (statements defaming company were not "of and concerning" its CEO).

### B. Ms. Sloane's Alleged Statements Are Inactionable Opinion, Or, In The Alternative, Are Substantially True.

#### i. Ms. Sloane's Alleged Statements Are Inactionable Opinion.

The Wayfarer Parties' defamation claim also fails because Ms. Sloane's statements reflect inactionable opinion. "[O]nly factual statements are actionable as defamation." *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014). "Defendants cannot be liable 'for simply expressing their opinion . . . no matter how unreasonable, extreme or erroneous these opinions might be.'" *Cooper v. Templeton*, 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022).

To determine whether a statement is one of actionable fact or inactionable opinion, courts consider "(1) whether the challenged statements have a precise and readily understood meaning; (2) whether the statements are susceptible of being proven false; and (3) whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact." *Hammer v. Amazon.com*, 392 F. Supp. 2d 423, 431 (E.D.N.Y. 2005). This inquiry is "a question of law." *Rapaport v. Barstool Sports Inc.*, 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024).

Ms. Sloane's alleged statements that "[t]he whole cast doesn't like Justin" and "the whole cast hates him" are clearly statements of opinion. *See* AC ¶ 190. Because these hyperbolic, personal sentiments are not susceptible to being proven true or false, they cannot be subject to a claim for defamation. *See, e.g.*, *Brady v. NYP Holdings, Inc.*, 2022 WL 992631, at *7 (S.D.N.Y. Mar. 31, 2022) (Liman, J.) (holding the term "gadfly" is inactionable opinion because "it is an expression of one's view of another" and "[a]nnoyance is, to some extent, in the eye of the

beholder"); *Caro Cap., LLC v. Koch*, 2021 WL 1595843, at *11 (S.D.N.Y. Apr. 23, 2021) (Liman, J.) (holding characterization of activities as "incessant malevolence" was "perhaps extravagant" but an "expression of opinion, and therefore not actionable"); *Adler v. Solar Power, Inc.*, 2018 WL 1626162, at *10 (S.D.N.Y. Mar. 30, 2018) (characterizing someone "as a bad person is a statement of opinion"); *Kerns v. Ishida*, 208 A.D.3d 1102, 1103 (1st Dep't 2022) (statements that plaintiff "acts like a psychotic nutcase" and was "extremely unprofessional" had a "loose, figurative, or hyperbolic tone" and were "grounded in opinion") (cleaned up).

The statement "Blake was sexually assaulted," AC ¶ 193, likewise amounts to inactionable opinion given the context in which it was made. As noted above, the Amended Complaint does not allege what specific words Ms. Sloane may have said to the Reporter, what date the conversation occurred, or in what context the allegedly defamatory statement was made. To the extent the Wayfarer Parties rely entirely on the image capture re-produced at the end of paragraph 193, the phrase "sexually assaulted" appears to be the Reporter's characterization of details included in "Lively's administrative complaint," and not any words Ms. Sloane ever said. Even if Ms. Sloane did use those or similar words, however, where a statement does "not appear to be based on any undisclosed facts," but rather, offers the speaker's "perception of the facts laid out in" a public "complaint," the statement amounts to inactionable opinion. *Miller v. James*, 2024 WL 4333197, at *12 (N.D.N.Y. Sept. 27, 2024); *see Rapaport*, 2024 WL 88636, at *4 (affirming holding that statements calling plaintiff a "stalker" who "has committed domestic abuse" were inactionable opinion because "[a] reasonable viewer would understand [the speaker's] comments to be conveying his (erroneous) understanding of the charges described in [an] article that was simultaneously presented to the audience"); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (finding a statement was inactionable opinion where it was clear that the speaker's view that

the plaintiff was a "thief" and "counterfeiter" was based on "two news articles").

Even assuming Ms. Sloane used that phrase outside the context of discussing Lively's publicly available administrative complaint (and was not merely summarizing what she read or what others told her), the term "sexual assault" is insufficiently precise and means different things to different people. *See Barber v. Premo*, 2021 WL 6622496, at *9 (N.Y. Sup. Ct. Sept. 29, 2021) (holding the term "assaulted" is "susceptible to a wide range of meanings"); Columbia Health, *What Is Sexual Assault?*, https://tinyurl.com/4jz2t7mx (Oct. 25, 2023) ("Sexual assault can encompass a multitude of forms such as nonconsensual kissing, groping, and/or penetration."). "Courts have been hesitant to apply one definition of a word when there is a colloquial meaning, even if there is also a specific legal or political definition." *Miller*, 2024 WL 4333197, at *11 (finding the word "terrorist" to be a statement of opinion, even when uttered by Attorney General during a press conference, because "the Court is not persuaded that Defendant intended to use the specific, legal definition" and therefore, "is not convinced that the language at issue has a precise meaning that is readily understood").

Because the texts between Nathan and the Reporter do not discuss any specific conduct by Baldoni or refer to any specific definition of the phrase "sexual assault" as used by the Reporter, the phrase has no "precise meaning that is readily understood." *Id.* In a similar case, *Barber v. Premo*, a New York Supreme Court held that a statement that the plaintiff "assaulted many ppl" was inactionable opinion because "there is no precise, readily understood meaning of what [the speaker] may have meant by the use of the term, and it appears on its face to be a hyperbolic phrase, and thus not defamatory." 2021 WL 6622496, at *10; *see also Rosa v. Eaton*, 2024 WL 3161853, at *3 (S.D.N.Y. June 25, 2024) ("[C]ourts have recognized that words" like "predators" and "criminals" are "vague, imprecise statements of hyperbole considered nonactionable

13

opinion."); *Springer v. Almontaser*, 75 A.D.3d 539, 541 (2nd Dep't 2010) ("The defendant's statement that she was stalked and harassed was not an actionable statement of objective fact because it did not have a precise, readily understood meaning.").

### ii. In The Alternative, Ms. Sloane's Alleged Statements Are Substantially True.

In the alternative, to the extent the Court finds that any of Ms. Sloane's alleged statements are statements of fact, rather than statements of opinion, the Wayfarer Parties' defamation claim still fails because those facts are substantially true, which is all that the law requires. *See, e.g.*, *Chung v. Better Health Plan*, 1997 WL 379706, at *2–3 (S.D.N.Y. July 9, 1997). A statement is "substantially true" when it has the same "gist or sting" as the truth, or when, even "though technically false," it "conveyed the same effect as the literal truth." *Id*. (citation omitted); *see Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245–50 (2d Cir. 2017) (noting "a plaintiff must plead facts demonstrating" lack of "substantial truth" to "survive a motion to dismiss" and affirming dismissal of defamation claim where statements were at least substantially true); *Caro Cap., LLC*, 2021 WL 1595843, at *11 (Liman, J.) (statement that individual "commit[ed] felonies that led to his imprisonment" was substantially true even though his sentence was reduced to "time served"); *Chung*, 1997 WL 379706, at *3 (statement that plaintiff had a "sexual harassment lawsuit pending" was substantially true even though he had only filed EEOC charge).

Here, the Wayfarer Parties do not deny the truth of Ms. Sloane's alleged statements that "[t]he whole cast doesn't like Justin" and "[t]he whole cast hates him." *See* AC ¶ 190. Quite the opposite, the Wayfarer Parties specifically allege that the cast "side[d]" with Ms. Lively, "oust[ed]," "shun[ned]," and "ic[ed] out" Baldoni, and even "refused to attend [the premiere] if Baldoni was present." AC ¶¶ 6, 149, 159, 166, 175.

Nor do the Wayfarer Parties meaningfully deny the truth of the underlying facts for the alleged statement that "Blake was sexually assaulted." For instance, Ms. Lively alleges that Baldoni engaged in sexual contact without her consent, including by "bit[ing] and suck[ing]" on her "lower lip during a scene in which he improvised numerous kisses on each take." ECF No. 84 ¶ 80. The Wayfarer Parties do not expressly deny this conduct, and merely argue that Baldoni did not need Ms. Lively's "permission" to "improvis[e]" because he was purportedly "in character" and this behavior was apparently acceptable on the show "Jane the Virgin." AC ¶ 91. But whether Baldoni believes sexual contact without "permission" is appropriate in the workplace has no bearing on whether Ms. Lively consented to his unscripted advances, which she did not.

As noted above, it is implausible that the speaker (whether Ms. Sloane or the Reporter) intended to convey a specific or legal meaning for the phrase "sexual assault." But if he or she did, Baldoni's unwanted sexual contacts likely fall within New York courts' definition of sexual assault such that the characterization of Lively's allegation is substantially true. *See Morrison v. Scotia Capital (USA) Inc.*, 2023 WL 8307930, at *2–3 (S.D.N.Y. Dec 1, 2023) (collecting cases and finding that allegations that co-worker caressed plaintiff's foot and hugged her from behind were sufficient to allege "forcible touching," which is one of "certain sexual assault claims" covered by the Adult Survivors Act); *People v. Sene*, 66 A.D.3d 427, 427 (1st Dep't 1999) (upholding conviction for sexual abuse "premised on nonconsensual contact between defendant's mouth and the victim's neck").

Therefore, the Wayfarer Parties' defamation claim must be dismissed because all of Ms. Sloane's alleged statements are inactionable opinion, or statements of fact that are substantially true. *See, e.g.*, *Ctr. for Med. Progress*, 551 F. Supp. 3d at 331 ("Plaintiffs here cannot cherry-pick one of several definitions of a word, take the word entirely out of context, and claim that such

15

definition precludes a finding that the Challenged Statements were substantially accurate.").

### C. The Alleged Statements Concerning "Sexual Assault" Are Insufficiently Specific.

The Wayfarer Parties' claim for defamation, to the extent based on paragraph 193's allegations concerning "sexual assault," should be dismissed for the additional reason that it is inadequately pleaded. Paragraph 193 of the Amended Complaint alleges that "Sloane escalated the false narrative by telling the reporter that Blake was 'sexually assaulted.'" As between Ms. Sloane and the Reporter, however, there is no image capture or representation as to what specific and allegedly defamatory words Ms. Sloane said, or when. Instead, the Amended Complaint merely re-produces an image of an undated conversation between that Reporter and Nathan that includes the words "and now she's saying that Blake was sexually assaulted." AC ¶ 193. The image of that Reporter's text conversation with Nathan (taken some time after December 20) embeds an image of his August 8, 2024, conversation with Ms. Sloane and then describes the fact that Ms. Sloane did *not* mention any allegations of sexual assault during their August 2024 conversation.

To state a claim for defamation, purportedly defamatory statements must be identified with "specificity." *Tannerite*, 864 F.3d at 251. Specifically, a defamation claim must identify "the purported communication" as well as "who made the communication, when it was made, and to whom it was communicated." *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020) (Liman, J.) (dismissing defamation claim for lack of specificity). Because it is entirely unclear whether the Reporter is purporting to quote Ms. Sloane, or if he is paraphrasing or offering his own interpretation of different words that she used, or if the "she" to whom the Reporter is referring is Ms. Sloane at all, the Wayfarer Parties fail to allege "with particularity the alleged falsehood uttered," *BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283 (1st Dep't 2009), much less "the time, place and manner of the [allegedly] false statement,"

16

*Tagliaferri v. Szulik*, 2015 WL 5918204, at *4 (S.D.N.Y. Oct. 9, 2015). Their defamation claim therefore fails for lack of specificity. *See Kall v. Peekskill City Sch. Dist.*, 2020 WL 2555256, at *9 (S.D.N.Y. May 19, 2020) ("Although Plaintiff has alleged, in broad strokes, to whom the statements were made (unidentified [] employees), how they were communicated (verbally), and when (within a 25-day period), this does not suffice to meet the particularity requirement."); *O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) (dismissing defamation claim where complaint "fails to allege which false statements were uttered by whom").

### D.  The Wayfarer Parties Fail to Allege Actual Malice.

The defamation claim also fails because Baldoni is a public figure who must "plausibly allege that [Ms. Sloane] made the statements with actual malice," and the Wayfarer Parties fail to do so for any statement. *Prince*, 634 F. Supp. 3d at 134.

"Individuals who have 'assumed roles of especial prominence in the affairs of society' and who have 'invite[d] attention and comment' are generally considered public figures." *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (internal citation omitted). As he admits in the Amended Complaint, Baldoni was the "costar" and "director" of *It Ends With Us*, which was "one of the year's biggest movies"; he is the "co-found[er]" of Wayfarer and has "produc[ed] and direct[ed]" multiple films that were meant to "have a positive impact on the world"; he "played the lead's love interest in television's *Jane the Virgin* for 5 years"; he has a "podcast" and has written multiple "books"; and the list goes on. AC ¶¶ 9, 20–21, 91, 95, 100. These allegations are more than sufficient to plead Baldoni into public figure status. *See Maule v. NYM Corp.*, 54 N.Y.2d 880, 881–82 (1981) (holding plaintiff was public figure based on his "candid admissions" that "he was one of the best known writers at *Sports Illustrated*"); *see also, e.g.*, *Ann-Margret v. High Soc. Mag., Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980) ("There is little doubt that the plaintiff, who has starred in numerous movies and television programs over the last

17

decade or so, is, as the term has come to be understood, a 'public figure.'").

Baldoni is therefore required to plead actual malice to state a claim for defamation. *See, e.g.*, *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017). That is, Baldoni must allege that Ms. Sloane made her alleged statements with knowledge of their falsity or reckless disregard for their truth. *Id.* The actual malice standard focuses on whether the speaker "entertain[ed] 'subjective doubts about the truth of the publication.'" *Bloom v. A360 Media LLC*, 735 F. Supp. 3d 466, 472 (S.D.N.Y. 2024). The Court may resolve the issue of actual malice as a matter of law at the pleading stage. *See, e.g.*, *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming dismissal of defamation claim where plaintiff's allegations "fall short of raising a plausible inference of actual malice").

The Wayfarer Parties fail to meet the "high bar" to allege actual malice here. *McDougal*, 489 F. Supp. 3d at 185. The Amended Complaint is devoid of *any* factual allegations that Ms. Sloane knew or should have known that her alleged statements were false. Ms. Sloane was not a first-hand witness of any activities taking place on set and, given Ms. Sloane's longstanding relationship with Ms. Lively, "it is no surprise that she credited [Ms. Lively's] story." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (dismissing defamation claim for failure to plead actual malice and noting defendant's reliance on co-defendant's "version of the events" was reasonable given their relationship). The Wayfarer Parties' conclusory allegation that "the Lively Parties knew the statements were false, or had serious doubts about the truth of the statements," AC ¶ 328, is insufficient to plead that Ms. Sloane's specific statements were made with malice, *see McDougal*, 489 F. Supp. 3d at 185, particularly considering that by the Wayfarer Parties' own allegations, Ms. Sloane's statements were substantially true.

The Amended Complaint contains no allegations sufficient to allege that Ms. Sloane

subjectively harbored doubts as to the veracity of her statements, much less "nonconclusory facts that support the proposition that [Ms. Sloane] knew that [she] was reporting falsities." *Bobulinski v. Tarlov*, 2024 WL 4893277, at *8 (S.D.N.Y. Nov. 26, 2024) (internal citation omitted). Like most individuals accused of sexual harassment, it is no surprise that Baldoni has made every effort to confuse the facts and blame the victim. But his predictable denials, "however vehement," are "insufficient to support a plausible claim of actual malice." *Prince*, 634 F. Supp. 3d at 141.

### E.  The Wayfarer Parties Fail to Allege Special Damages.

The defamation claim also fails because the Wayfarer Parties fail to allege special damages—that is, "the loss of something having economic or pecuniary value, which must flow directly from the injury to reputation caused by the defamation." *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998). "To satisfy the special damages requirement, a [defamation] plaintiff must set forth an itemized account of his losses; round figures, general allegations of a dollar amount or boilerplate allegations of some impairment to business reputation are insufficient." *Id.*; *see Zaret v. Bonsey*, 2023 WL 6317956, at *3 (S.D.N.Y. Sept. 28, 2023). These pleading requirements are "strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai*, 726 F. Supp. 2d at 330.

Here, the Wayfarer Parties make zero effort to plead special damages. Instead, they offer boilerplate allegations of harm to "the Wayfarer Parties' property, business, trade, profession, and/or occupation" in an amount no "less than $400,000,000." AC ¶ 329; *id.* at 222 ¶ 1. This is a textbook example of nonspecific conclusory allegations that do not quantify plaintiffs' harm "with sufficient particularity to identify actual losses," and thus "do[] not come close to meeting the New York standard" for pleading special damages. *Thai*, 726 F. Supp. 2d at 330, 336; *see Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021) (Liman, J.) ("Pleading damages of 'at least $1990,' with no further explanation, falls short of the [particularity] requirement.").

The unsupported $400,000,000 figure only confirms the deficiencies in the Amended Complaint. "Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages" and such figures are insufficient to plead special damages for a claim for defamation. *Drug Rsch. Corp. v. Curtis Publ'g Co.*, 166 N.E.2d 319, 322 (1960); *see Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997) ("[R]ound figures or a general allegation of a dollar amount as special damages will not suffice."); *Dooner v. Keefe, Bruyette & Woods, Inc.*, 2003 WL 135706, at *5 (S.D.N.Y. Jan. 17, 2003) ("[P]leading damages in the round amounts of $2 million and punitive damages of $5 million are inconsistent with a claim of 'special damages.'").[9]

## IV. The Amended Complaint Fails To State A Claim For False Light.

The Wayfarer Parties' false light claim also fails. As a threshold matter, false light is not a cognizable claim under New York law. *See, e.g.*, *Cardone*, 884 F. Supp. at 848. It must be dismissed on these grounds alone. *Brady*, 2022 WL 992631, at *8 (Liman, J.) ("There is no tort of false light invasion of privacy under New York law.").[10]

Second, the false light claim is impermissibly duplicative of the defamation claim. The

---

[9] To the extent the Wayfarer Parties argue that they are asserting claims of defamation per se, Ms. Sloane's alleged statements that "[t]he whole cast doesn't like Justin" and "the whole cast hates him" do not qualify, since they convey only "a more general reflection upon the plaintiff's character or qualities." *Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992). In other words, to be defamatory per se, the statement "must have referred to a plaintiff in [his] professional role; [and] it is insufficient that the statement allegedly tends to harm plaintiff in [his] professional pursuits." *Wilson v. Tarricone*, 2013 WL 12084504, at *4 (S.D.N.Y. Sept. 26, 2013); *accord Gurtler v. Union Parts Mfg. Co.*, 285 A.D. 643, 646 (1st Dep't 1955). Likewise, the Reporter's alleged statement that "Blake was sexually assaulted" is insufficiently precise to charge Baldoni with the commission of a serious crime so as to state a claim for defamation per se. *See, e.g.*, *Miller*, 2024 WL 4333197, at *13.

[10] New York law applies to the false light claim for all the same reasons it applies to the extortion claim. *See DeIuliis v. Engel*, 2021 WL 4443145, at *9–*10 (S.D.N.Y. Sept. 27, 2021) (applying New York law to false light claim even though plaintiff was domiciled out of state); *Berwick v. New World Network Int'l, Ltd.*, 2007 WL 949767, at *7–8 (S.D.N.Y. Mar. 28, 2007) (same).

false light claim is based on the same alleged conduct and same alleged harms underlying the defamation claim, *see* AC ¶¶ 189–90, so it "must be dismissed as duplicative." *Deaton v. Napoli*, 2019 WL 4736722, at *9 (E.D.N.Y. Sept. 27, 2019); *see also Chord Assocs., LLC v. Protech 2003-D, LLC*, 2010 WL 3780380, at *1 (E.D.N.Y. Sept. 21, 2010) ("Conde's claim for 'false light invasion of privacy' fails because no such common-law claim exists under New York law, and, additionally, any such claim would be duplicative of Conde's defamation claim.").

Third, the false light claim fails for all the same reasons that the defamation claim fails. *See, e.g.*, *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (Cal. Ct. App. 2017), *as modified* (Apr. 19, 2017) ("[W]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action."); *Townsend v. McDonnell*, 2019 WL 7882085, at *10 (C.D. Cal. Dec. 12, 2019) (same).

Fourth, the false light claim fails because the Wayfarer Parties fail to allege that Ms. Sloane made any statements concerning them that would be "highly offensive to a reasonable person," which is an essential element of that claim. *Brahmana v. Lembo*, 2010 WL 965296, at *4 (N.D. Cal. Mar. 17, 2010) (dismissing false light claim for failure to meet "highly offensive to a reasonable person" standard). "[C]ourts have narrowly construed the 'highly offensive' standard." *Id.* "Fair but unflattering depictions are not actionable." *Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at *10 (C.D. Cal. Oct. 13, 2011) (citing *Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d 146, 161 (Cal. Ct. App. 1990)). Ms. Sloane made no statements concerning six of the seven Wayfarer Parties, and her statements regarding Baldoni were made in good faith and are substantially true. Accordingly, the Wayfarer Parties fail to satisfy the "highly offensive" element.

## V.    Ms. Sloane And Vision PR, Inc. Are Entitled To Attorneys' Fees And Costs.

Upon dismissal of the Amended Complaint, the Court should award fees and costs under

New York's anti-SLAPP law. The statute applies to claims that, as here, are based upon any "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a; *see, e.g., Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 25 (1st Dep't 2024) ("The 2020 amendments expanded the scope of anti-SLAPP protection.").

The term "public interest" is broadly defined as "any subject other than a purely private matter," N.Y. Civ. Rights Law § 76-a(1)(d), and courts routinely conclude that statements regarding alleged sexual misconduct concern the public interest. *See, e.g., Watson v. NY Doe 1*, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) ("[C]ourts have found 'Facebook and LinkedIn posts accusing [an individual] of sexual assault' to be 'communications concern[ing] an issue of public interest.'"); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) ("[T]he Court finds that sexual impropriety and power dynamics in the music industry . . . were indisputably an issue of public interest."). Statements regarding "prominent" figures like Baldoni also concern the public interest. *Coleman*, 523 F. Supp. 3d at 360.

Under the anti-SLAPP law, fee shifting awards are mandatory, not discretionary, where, as here, a lawsuit "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a). Because the Wayfarer Parties' claims all fail as a matter of law, Ms. Sloane and Vision PR, Inc. are entitled to recover the attorneys' fees and costs that they incurred defending against the Wayfarer Parties' baseless claims. *See, e.g., Bobulinski*, 2024 WL 4893277, at *16 (granting request for attorney's fees upon a Rule 12(b)(6) dismissal and noting the "demand for attorney's fees in the present action is thus sufficient to trigger Section 70-a(1), and she need not file a separate action or counterclaim"); *Trump v. Trump*, 79 Misc. 3d 866, 887 (N.Y. Sup. Ct. 2023) ("[D]ue to dismissal of the claims asserted against [them, the defendants] are entitled to

recover their costs and attorneys' fees.").[11]

## VI.    The Court Should Strike Exhibit A To The Amended Complaint.

As previewed at the February 3, 2025, hearing, the Court should strike Exhibit A to the Amended Complaint pursuant to Rule 12(f). The Wayfarer Parties filed as an attachment to the Amended Complaint a 168-page, single-spaced document that purports to be a "timeline" providing "a summarized account of the sequence of key events." ECF No. 50-1 at 1. Exhibit A is an unsigned, one-sided factual narrative containing selective excerpts of emails and text messages with numerous redactions and alterations, including text, underlining, and other annotations. *See, e.g.*, *id*. at 4 (redacting email addresses, identity of signatory, and large block of text); *id*. at 17 (adding text describing sender and red underlining). *id*. at 110 (adding red arrows and text). Exhibit A should be stricken as it violates both the letter and spirit of the Federal Rules.

Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "principal function" of this Rule is "to give the adverse party fair notice of the claim" while avoiding placing an "unjustified burden on the court and the party who must respond." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). "[C]onsistent with 'Rule 8(a)'s requirement of a short and plain statement,'" courts may

---

[11] Ms. Sloane and Vision PR, Inc. do not invoke the anti-SLAPP law's procedural protections, and instead invoke only the fees provision, which is substantive. *See Bobulinski*, 2024 WL 4893277, at *12 ("The Second Circuit has consistently held that provisions for attorney's fees are a substantive, not procedural, right.") (collecting cases). As Judge Oetken cogently explained in a recent opinion, the fee provision does not conflict with the Federal Rules of Civil Procedure and thus applies in federal court because entitlement to fees is not tied to a "specific state procedural mechanism," and instead "follows from the failure to state a claim as a matter of New York law." *Id.* at *13. Holding otherwise would lead to "inequitable" outcomes, invite forum-shopping, and override "the New York legislature's interest in protecting the robust free speech rights of New Yorkers beyond that of the federal First Amendment protections." *Id.* at *14. *See, e.g.*, Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York AntiSLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 599–614 (2023) (distinguishing contrary cases and analyzing in detail why the statute's fee provision applies in federal court).

23

not properly consider for their truth statements contained in exhibits attached to pleadings. *Delaney v. HC2, Inc.*, 2025 WL 27484, at *1 n.1 (S.D.N.Y. Jan. 3, 2025) (Liman, J.) (collecting cases). While Rule 10(c) provides that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), "a personal, narrative summary" of experiences and events "does not satisfy the definition of 'written instrument,'" *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015). Rule 10 protects a defendant's entitlement "to know the allegations against it, and to have those allegations framed in separate paragraphs, 'with sufficient clarity to allow the defendant to frame a responsive pleading.'" *Ahmad v. Experian Info. Sols., Inc.*, 2023 WL 8650192, at *5 (S.D.N.Y. Dec. 14, 2023) (Liman, J.) (citation omitted).

Rule 12(f) authorizes courts to strike "any redundant, immaterial, impertinent or scandalous matter" from any pleading. *See* Fed. R. Civ. P. 12(f). "When a complaint does not comply with the requirement that it be short and plain, the court has the power, . . . to strike any portions that are redundant or immaterial." *Salahuddin*, 861 F.2d at 42. A court may also strike information that is "immaterial and irrelevant" such that it has "no real bearing on the case" before it. *Petrello v. White*, 2018 WL 4344955, at *7–*8 (E.D.N.Y. Sept. 11, 2018).

As the Court noted at a February 3, 2024, hearing, Exhibit A is "almost exactly" the type of document that "the Federal Rules are designed to prevent." It violates Rule 8 because it is neither "short" nor "plain," it does not provide "fair notice" of claims, and it places an "unjustified burden" on the Court and the parties. *Salahuddin*, 861 F.2d at 42; *accord Delaney*, 2025 WL 27484, at *1 n.1. Exhibit A also violates Rule 10(a) because it is not a "written instrument," but a "personal, narrative summary" that fails to provide a mechanism for framing a responsive pleading. *Hogan*, 794 F.3d at 255; *Ahmad*, 2023 WL 8650192, at *5; *see also* Feb. 3, 2025, Hr'g Tr. at 36:3–6 ("[T]he law of the circuit is pretty clear that you can't just attach a factual narrative" because

24

"there's no mechanism for responding to the factual narrative that's attached."). In addition, because the Court cannot properly consider the information contained in Exhibit A in evaluating the instant motion, it is irrelevant and has "no real bearing on the case" before it. *Petrello*, 2018 WL 4344955 at *7–*8.

## **CONCLUSION**

For the foregoing reasons, Leslie Sloane and Vision PR, Inc. respectfully request that the Court dismiss the claims against them with prejudice,[12] award them their attorneys' fees and costs under New York's anti-SLAPP law, and strike Exhibit A to the Amended Complaint.

Dated: February 20, 2025

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 356-0011
smccawley@bsfllp.com

---

[12] Dismissal with prejudice is appropriate because "the flaws in [the] pleading are incurable." *See Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (citation omitted). No amendment could cure the fundamental defects in the Amended Complaint, including that extortion and false light are not cognizable claims, and all of Ms. Sloane's statements are inactionable opinion and/or substantially true. The Wayfarer Parties have already had the opportunity to amend their pleading and nothing suggests "that a valid claim might be stated if given a second chance." *Bernstein v. New York City Dep't of Educ.*, 2021 WL 4429318, at *13 n.4 (S.D.N.Y. Sept. 27, 2021) (Liman, J.).

Andrew Villacastin
Lindsey Ruff
Rachael Schafer
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
avillacastin@bsfllp.com
lruff@bsfllp.com
rschafer@bsfllp.com

*Attorneys for Leslie Sloane and Vision PR, Inc.*