UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLAKE LIVELY,                                      x
                                                   :
                          Plaintiff,               :     Case: 1:24-cv-10049-LJL
                                                   :     (Consolidated for pretrial purposes
          - against -                              :     with  1:25-cv-00449-LJL)
                                                   :     rel. 1:25-cv-00779-LJL
WAYFARER STUDIOS LLC, a Delaware                   :
Limited  Liability Company, JUSTIN                 :
BALDONI, an individual, JAMEY HEATH, an            :
individual, STEVE  SAROWITZ, an individual,        :
IT ENDS WITH US MOVIE LLC, a California            :
Limited Liability Company, MELISSA                 :
NATHAN, an individual, THE  AGENCY                 :
GROUP PR LLC, a Delaware Limited Liability         :
Company, JENNIFER ABEL, an individual,             :
                                                   :
                          Defendant.               :
                                                   x
_____         x
WAYFARER STUDIOS LLC, a Delaware                         **MEMORANDUM OF LAW**
Limited  Liability Company, JUSTIN                       **IN SUPPORT OF MOTION BY**
BALDONI, an individual, JAMEY HEATH, an                  **THE NEW YORK TIMES**
individual, IT ENDS WITH US MOVIE LLC, a           :     **COMPANY  TO DISMISS**
California Limited Liability Company,               :     **PLAINTIFFS' FIRST AMENDED**
MELISSA NATHAN, an individual, JENNIFER             :     **COMPLAINT**
ABEL, an individual, and STEVE SAROWITZ,            :
an individual,                                     :
                                                   :
                          Plaintiffs,              :
                                                   :
          - against -                              :
                                                   :
BLAKE LIVELY, an individual, RYAN                   :
REYNOLDS, an individual, LESLIE SLOANE,             :
an individual, VISION PR, INC., a New York         :
corporation, and THE NEW YORK TIMES                :
COMPANY, a New York corporation,                   :
                                                   :
                          Defendants.              x

Katherine M. Bolger
Sam F. Cate-Gumpert (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:   (212) 489-8230

*Attorneys for Defendant The New York Times Company*

## TABLE OF CONTENTS

**Page**

I.    BACKGROUND ........................................................................................................ 2

    A.    The Parties .................................................................................................... 2

    B.    The Article .................................................................................................... 3

    C.    The Procedural History ................................................................................ 4

II.   ARGUMENT ............................................................................................................ 5

    A.    New York Law Applies to the Wayfarer Parties' Claims ............................ 6

    B.    The Wayfarer Parties Rely on Impermissible Group Pleading .................... 8

    C.    The Wayfarer Parties' Defamation Claim Fails ........................................... 9

        1.    The Fair Report Privilege Applies to *The Times*'s Publications .............. 10

            a.    The Article and Video Meet Both Requirements of the Fair Report Privilege .................................................................. 11

            b.    The Wayfarer Parties' Arguments to the Contrary are Wrong ..... 16

        2.    The "Smear Campaign" Phrase is Protected Opinion ............................. 19

        3.    The Wayfarer Parties Have Not Plausibly Alleged that *The Times* Published the Article with Actual Malice ................................................... 20

        4.    The False Light Claim Fails ................................................................... 22

        5.    The Wayfarer Parties' Tag-Along Claims Fail ........................................ 23

            a.    The Promissory Fraud Claim Fails .............................................. 23

            b.    The Breach of Contract Claim Fails ............................................ 24

III.  CONCLUSION ........................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)..........................................................................6

*Ali v. Fed. Ins. Co.*,
  719 F.3d 83 (2d Cir. 2013)......................................................................................7

*Anderson v. Stanco Sports Library, Inc.*,
  542 F.2d 638 (4th Cir. 1976) ...................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................5

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) .................................................................................8

*Baiqiao Tang v. Wengui Guo*,
  2019 WL 6169940 (S.D.N.Y. Nov. 20, 2019) ..........................................................6

*Beary v. W. Publ'g Co.*,
  763 F.2d 66 (2d Cir. 1985).....................................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................5

*Berdeaux v. OnCoin LTd.*,
  562 F. Supp. 3d 379 (S.D.N.Y. 2021).......................................................................9

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015)...........................................................................5, 14, 21

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................................10, 18

*Bobulinski v. Tarlov*,
  2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) .......................................................6, 21

*Brady v. NYP Holdings, Inc.*,
  2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) ........................................................16, 18

*BYD Co. Ltd. v. VICE Media LLC*,
  No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022)..........................................21, 22

ii

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)................................................................................................3

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)..............................................................................................19

*Church of Scientology Int'l v. Time Warner, Inc.*,
   806 F. Supp. 1157 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238
   F.3d 168 (2d Cir. 2001)....................................................................................................10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 22 (2d. Cir. 2009)..............................................................................................23

*Coleman v. Grand*,
   523 F. Supp. 3d 244 (E.D.N.Y. 2021) ..............................................................................20

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n
   of Am.*, 2022 WL 1013982 (2d Cir. Apr. 5, 2022)........................................................6, 15

*D'Annunzio v. Ayken, Inc.*,
   876 F. Supp. 2d 211 (E.D.N.Y. 2012) ..............................................................................11

*Davis v. Costa-Gavras*,
   580 F. Supp. 1082 (S.D.N.Y. 1984)...................................................................................7

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013)..............................................................................................22

*Dorsey v. National Enquirer*,
   973 F.2d 1431 (9th Cir. 1992) .................................................................................7, 13, 18

*Fine v. ESPN, Inc.*,
   11 F. Supp. 3d 209 (N.D.N.Y. 2014)............................................................................12, 14

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ..........................................................................................23

*Friedman v. Bloomberg L.P.*,
   884 F.3d 83 (2d Cir. 2017)................................................................................................17

*Fuji Photo Film U.S.A. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009).........................................................................11, 12

*Gertz v. Welch*,
   418 U.S. 323 (1974)..........................................................................................................20

*Glantz v. Cook United, Inc.*,
499 F. Supp. 710 (E.D.N.Y. 1979) ....................................................................18

*Globaltex Group, Ltd. V. Trends Sportswear, Ltd.*,
2009 WL 1270002 (E.D.N.Y. 2009)...................................................................23

*Greenbelt Pub. Assn. v. Bresler*,
398 U.S. 6 (1970).......................................................................................19, 20

*Gubarev v. Buzzfeed, Inc.*,
340 F. Supp. 3d 1304 (S.D. Fla. 2018) ..........................................................11, 13

*Henry v. Fox News Network LLC*,
629 F. Supp. 3d 136 (S.D.N.Y. 2022)................................................................22

*Idema v. Wager*,
120 F. Supp. 2d 361 (S.D.N.Y. 2000).................................................................11

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*,
363 F.3d 137 (2d Cir. 2004)...............................................................................7

*Jacob v. Lorenz*,
626 F. Supp. 3d 672 (S.D.N.Y. 2022)........................................................7, 8, 13

*Jeanty v. City of Utica*,
2017 WL 6408878 (N.D.N.Y. Aug. 18, 2017) ................................................11, 17

*Kinsey v. New York Times*,
991 F.30 171, 176 (2d Cir. 2021)......................................................7, 8, 10, 14

*Komatsu v. City of New York*,
2021 WL 3038498 (S.D.N.Y. July 16, 2021) ......................................................9

*Lan Sang v. Ming Hai*,
951 F. Supp. 2d 504 (S.D.N.Y. 2013)............................................................10, 18

*Lee v. Bankers Tr. Co.*,
166 F.3d 540 (2d Cir. 1999)..............................................................................6

*Matthews v. Malkus*,
377 F. Supp. 2d 350 (S.D.N.Y. 2005)...............................................................22

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020)...............................................................21

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
861 F. Supp. 2d 344 (S.D.N.Y. 2012)...............................................................24

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964), *aff'd in Counterman v. Colorado*, 600 U.S. 66 (2023) ..................21, 22

*Rodriguez v. Trs. of Columbia Univ. in the City of N.Y.*,
  2006 WL 2521323 (S.D.N.Y. Aug. 30, 2006) .........................................................................9

*St. Amant v. Thompson*,
  390 U.S. 727 (1968).............................................................................................................21

*Sweigert v. Goodman*,
  2021 WL 1578097 (S.D.N.Y. Apr. 22, 2021).......................................................................20

*Test Masters Educ. Servs., Inc v. NYP Holdings*,
  603 F. Supp. 2d 584 588-89 (S.D.N.Y. 2009) ................................................................11, 12

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
  2017 WL 2627912 (S.D.N.Y. June 16, 2017) ........................................................................8

*Thomas v. City of New York*,
  2018 WL 5791965 (E.D.N.Y. Nov. 5, 2018)...................................................................10, 12

*Wayfarer Studios LLC et al v. Lively et al.*,
  Case No. 1:25-cv-00449-LJL (S.D.N.Y) ...............................................................................5

*Zappin v. NYP Holdings, Inc.*,
  2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d Cir. 2019) ........10, 18

**State Cases**

*Alf v. Buffalo News, Inc.*,
  21 N.Y.3d 988 (2013) .........................................................................................................15

*Blatty v. New York Times*,
  42 Cal. 3d 1033 (1986) .......................................................................................................23

*Branca v. Mayesh*,
  101 A.D.2d 872 (2d Dep't 1984), *aff'd*, 63 N.Y.2d 994 (1984) .............................................12

*Braun v. Chron. Publ'g Co.*,
  52 Cal. App. 4th 1036 (1997) ..........................................................................................7, 12

*Carver v. Bonds*,
  135 Cal. App. 4th 328 (2005) ..............................................................................................12

*Cholowsky v. Civiletti*,
  69 A.D.3d 110 (2009) ..........................................................................................................17

*Costanza v. Seinfeld*,
  181 Misc. 2d 562 (Sup. Ct. N.Y. Cty. 1999), *aff'd as modified*, 279 A.D.2d 255 (2001) .......22

v

*Dong v. Board of Trustees*,
    191 Cal. App. 3d 1572 (1987) .........................................................................................19

*Fellows v. National Enquirer, Inc.*,
    42 Cal. 3d 234 (1986) ....................................................................................................23

*Freeze Right Refrigeration v. City of New York*,
    101 A.D. 2d 175 (1st Dept 1984).............................................................................13, 17

*Fridman v. Buzzfeed, Inc.*,
    2021 WL 1040531 (Sup. Ct. N.Y. Cty. Mar. 11, 2021) ...........................................13

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007) ..........................................................................................23

*Grab v. Poughkeepsie Newspapers, Inc.*,
    91 Misc. 2d 1003 (Sup. Ct. Dutchess Cty. 1977) .................................................13

*Green v. Cortez*,
    151 Cal. App. 3d 1068 (1984) .......................................................................................18

*Gurda v. Orange Cnty. Publ'ns*,
    81 A.D.2d 120 (2d Dep't 1981) *aff'd*, 29 F. App'x 676 (2d Cir. 2002)...................11

*Hagberg v. California Federal Bank*,
    32 Cal.4th 350 (2004) ....................................................................................................12

*Healthsmart Pacific, Inc. v. Kabateck*,
    7 Cal. App. 5th 416 (2016) ............................................................................................14

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*,
    49 N.Y.2d 63 (1979) ......................................................................................................15

*Howard v. Oakland Tribune*,
    199 Cal.App.3d 1124 (1988) ...........................................................................................7

*Huggins v. Moore*,
    94 N.Y.2d 296 (1999) ....................................................................................................20

*Icahn v. Raynor*,
    32 Misc. 3d 1224(A), (Sup. Ct. N.Y. Cty. 2011)................................................12, 13

*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*,
    247 Cal. App. 4th 87 (2016) ..........................................................................................11

*Jennings v. Telegram-Tribune Co.*,
    164 Cal. App. 3d 119 (1985) .........................................................................................11

vi

*Keogh v. New York Herald Tribune, Inc.*,
   51 Misc.2d 888 (Sup. Ct. N.Y. Cty. 1966) ........................................................13

*Kilgore v. Younger*,
   30 Cal. 3d 770 (1982) .....................................................................................11

*Lacher v. Engel*,
   33 A.D.3d 10 (1st Dep't 2006) ........................................................................14

*McClatchy Newspapers, Inc. v. Superior Court*,
   189 Cal. App. 3d 961 (1987) ....................................................................17, 18

*Missakian v. Amusement Indus., Inc.*,
   69 Cal. App. 5th 630 (2021) ...........................................................................23

*Padula v. Lilarn Props. Corp.*,
   84 N.Y..2d 519, 521 (1994) ...............................................................................6

*Patel v. Cable News Network, Inc.*,
   83 Va. App. 387 (2025) ..................................................................................22

*Pease v. Tel. Pub. Co.*,
   121 N.H. 62 (1981) .........................................................................................19

*Penaherra v. N.Y. Times Co.*,
   2013 WL 4013487 (Sup. Ct. N.Y. Cty. Aug. 8, 2013) .....................................12

*Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*,
   52 Cal. 4th 1171 (2011) ..................................................................................24

*Rojo v. Kliger*,
   52 Cal. 3d 65 (1990) .......................................................................................13

*Selleck v. Globe Int'l, Inc.*,
   166 Cal.App.3d 1123 (1985) ...........................................................................23

*Simpson v. The Village Voice, Inc.*,
   2007 WL 2815376 (Sup. Ct. N.Y. Cty. Aug. 07, 2007) ...................................12

*Sipple v. Found. for Nat'l Progress*,
   71 Cal. App. 4th 226 (1999) ......................................................................12, 15

*Wayfarer Studios LLC, et al. v. The New York Times Company*,
   Los Angeles Superior Court No. 24STCV34662 .................................................4

**State Statutes**

Cal. Civil Code § 47(d)..........................................................................................7

Cal. Gov't Code § 12930(f)(1)................................................................................13

N.Y. Civ. Rights Law
    § 74.............................................................................................. *passim*
    § 76-a ...................................................................................................20

**Rules**

Fed. R. Civ. P.
    8..........................................................................................................2, 8, 9
    8(a) .........................................................................................................1
    12(b)(6) ...........................................................................................1, 5, 25
    12(f)........................................................................................................1

**Constitutional Provisions**

U.S. Const., amend. I ...........................................................................................5

**Other Authorities**

"The 2018 Pulitzer Prize Winner in Public Service," The Pulitzer Prizes,
    https://www.pulitzer.org/winners/new-york-times-reporting-led-jodi-kantor-and-megan-
    twohey-and-new-yorker-reporting-ronan ...............................................................3

Anna Kutz, "Justin Baldoni's lawyer admonishes NYT over Blake Lively article," Yahoo! News
    (Jan. 6, 2025), https://www.yahoo.com/news/justin-baldoni-lawyer-admonishes-nyt-
    030921580.html ..........................................................................................4

"Blake Lively Sues Justin Baldoni for Sexual Harassment ... Claims of Wild Behavior on Set,"
    TMZ (Dec. 21, 2024 4:54 AM PT), https://www.tmz.com/2024/12/21/blake-lively-sues-
    justin-baldoni-sexual-harassment-retaliation-on-it-ends-with-us-set/ ...................................16

Tatiana Siegel, "Justin Baldoni Files $250 Million Lawsuit Against New York Times Over Blake
    Lively Story: It Relied on Her 'Self-Serving Narrative' (EXCLUSIVE)," Variety (Dec. 31,
    2024), https://variety.com/2024/film/news/justin-baldoni-sues-new-york-times-blake-lively-
    allegations-story-1236263099/ ............................................................................4

4918-1523-9970v.1 0034735-000142

Consolidated Defendant The New York Times Company ("*The Times*") submits this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the First Amended Complaint of Consolidated Plaintiffs Wayfarer Studios, LLC, Justin Baldoni, Jamey Heath, It Ends With Us Movie, LLC, Melissa Nathan, Jennifer Abel and Steve Sarowitz (the "Wayfarer Parties" or "Plaintiffs").[1]

## PRELIMINARY STATEMENT

Over the course of their 224-page First Amended Complaint ("FAC") (plus an added 168-page timeline), the Wayfarer Parties breathlessly tell their side of an ongoing Hollywood drama involving actors Blake Lively ("Lively") and Justin Baldoni ("Baldoni"), the stars of the film "It Ends With Us." The FAC has, to some extent, achieved its obvious purpose; the Wayfarer Parties' story has been reported by countless news outlets during the last few weeks. What the FAC has not done, however, is plead a viable claim against *The Times*.

Plaintiffs' claims arise from an article titled "'We Can Bury Anyone': Inside a Hollywood Smear Machine," published on December 21, 2024 (the "Article") and a related video (the "Video"). Both reported on a sexual harassment and workplace retaliation complaint Lively filed with the California Civil Rights Department against some of the Plaintiffs. That complaint included text messages between Baldoni, his publicist Jennifer Abel ("Abel"), and Melissa Nathan ("Nathan"), a so-called "crisis PR" specialist who told Abel that "we can bury anyone" (the "CRD Complaint").

Notwithstanding the sound and fury of the FAC, Plaintiffs' attempt to assert claims against *The Times*—for defamation, false light, promissory fraud, and breach of implied-in-fact contract—fail as a matter of law. The bulk of the Wayfarer Parties' FAC must be dismissed because it is an

---

[1] In addition, *The Times* joins in the motion made by defendants Vision PR, Inc., and Leslie Sloane to strike Exhibit A to the FAC under Rule 12(f), on the grounds that Exhibit A violates Rule 8(a). *See* Dkt. No. 87 at 23-25.

impermissible group pleading under Rule 8 of the Federal Rules of Civil Procedure.  In addition, the defamation claim fails because the sole allegedly defamatory statement the Wayfarer Parties manage to identify as actually having been published by *The Times*—that they "orchestrated a smear campaign" against Lively in retaliation for her complaining about sexual harassment—is unquestionably and absolutely privileged pursuant with NY Civ. Rights Law, § 74.  In any event, the defamation claim is insufficient as a matter of law because the challenged statement is protected opinion and because the Wayfarer Parties plead nothing but conclusory allegations regarding *The Times*'s purported actual malice.

Plaintiffs' remaining claims fare no better.  The false light claim fails because New York law applies to this action and New York does not recognize the tort of false light.  And the tag-along promissory fraud and brxeach of implied-in-fact contract claims fail because the documents incorporated by reference into the FAC demonstrate, among other things, that to the extent *The Times* made any "promise" to Plaintiffs, that promise was kept.

While the Wayfarer Parties will doubtlessly continue their efforts to litigate this case against Lively in the court of public opinion, their legal claims against *The Times* have no place in this court of law.  The FAC should be dismissed.

## I.     BACKGROUND

### A.     The Parties

Baldoni is a Los Angeles-based actor.  FAC ¶ 301.  Most recently, Baldoni directed and starred in "It Ends With Us" (the "Film") alongside Lively, a well-known, New York-based actor who is married to the actor Ryan Reynolds ("Reynolds"), a defendant in this action.  *Id.* ¶ 307-08.  Jamey Heath ("Heath") is the CEO of Wayfarer LLC ("Wayfarer"), a company that co-financed the Film.  *Id.* ¶ 302.  Steve Sarowitz ("Sarowitz") is the co-chairman of Wayfarer.  FAC Ex. A at 27.  It Ends With Us Movie LLC is a company related to the Film.  Abel is a publicist and

2

represented Wayfarer while employed at the firm Jonesworks.  FAC ¶ 224.  Nathan operates The Agency Group PR LLC, a crisis public relations firm, and was engaged by Abel, at Baldoni's direction, to provide services in conjunction with the Film.  FAC Ex. A at 102.

*The Times* is a newspaper and media company headquartered in New York, where all the relevant reporting and editing was done.  FAC ¶ 311.

### B. The Article

On December 21, 2024 at 10:11 A.M. ET, *The Times* published the Article.  *See* Declaration of Katherine M. Bolger ("Bolger Decl.") Ex. 1.  Explicitly relying on and citing to the CRD Complaint and the text messages, emails, and other documents included therein, the Article reports on Lively's allegations of misconduct by Baldoni and Heath, Baldoni's subsequent engagement of Nathan, and Nathan's attempts to "tarnish" Lively's reputation at Baldoni's behest. *Id.*  The Article is accompanied by the Video, which features one of the Article's writers, Megan Twohey, summarizing the Article and noting that it was based directly on the CRD Complaint. FAC ¶ 266; Bolger Decl. Ex. 2 ("Video").

Prior to publication, at 6:46 P.M. PT, on Friday, December 20, 2024, Ms. Twohey, a Pulitzer Prize-winning journalist,[2] engaged in routine newsgathering practices by contacting Baldoni and the other subjects of her reporting to seek comment on the allegations made in the CRD Complaint.[3]  *See* FAC Ex. A at 157-60; Bolger Decl. Exs. 4-9.  Ms. Twohey's emails included an extensive list of the allegations cited in the Article, sought comment on them, and asked each

---

[2] *See* "The 2018 Pulitzer Prize Winner in Public Service," The Pulitzer Prizes, https://www.pulitzer.org/winners/new-york-times-reporting-led-jodi-kantor-and-megan-twohey-and-new-yorker-reporting-ronan..

[3] The communications between *The Times*, on the one hand, and the Wayfarer Parties, on the other, are incorporated by reference at ¶¶ 375-83 of the Complaint, which quotes extensively from the emails.  *See* FAC Ex. A at 158-60. This Court may, therefore, consider those communications in deciding this motion to dismiss.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (a court may consider "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

person to notify her of any inaccuracies or other information they thought *The Times* should know. Bolger Decl. Exs. 3-9.  The emails also invited each party to talk to *The Times* on the record.  *Id.* They concluded that a response was needed by 12 P.M. ET the next day.  *Id.* The emails made no representations whatsoever about when *The Times* would publish the Article.  *Id.*  Approximately two hours later, Abel sent Ms. Twohey a 307-word denial of all allegations, attributed to Bryan Freedman, counsel for the Wayfarer Parties.  Bolger Decl. Ex. 4.  Ms. Twohey followed up to clarify that the response was on behalf of Abel, Nathan, Heath, Sarowitz, in addition to Baldoni and Wayfarer, which Abel confirmed.  *Id.*  Neither Abel nor anyone else requested any additional information from *The Times* or more time to respond.  Bolger Decl. Exs. 3-9.  No representative of the Wayfarer Parties reached out to *The Times* after Abel's last email at 11:54 P.M.

The Article was published at 10:11 am on December 21, 2025, quoting extensively from the Wayfarer Parties' response and linking to the full response.  *Id.*  The Video also includes the Wayfarer Parties' denial.  Video at 3:57.

### C.    The Procedural History

On December 31, 2024, the Wayfarer Parties filed suit against *The Times* in California state court, for defamation and false light invasion of privacy arising out of the publication of the Article. *See Wayfarer Studios LLC, et al. v. The New York Times Company*, Los Angeles Superior Court No. 24STCV34662.  That complaint was well publicized—counsel for the Wayfarer Parties gave several interviews about its contents[4]—but it was never served.  On December 31, 2024, Lively filed suit against the Wayfarer Parties in this Court.  Dkt. No. 1.  The Wayfarer Parties countersued

---

[4] *E.g.*, Tatiana Siegel, "Justin Baldoni Files $250 Million Lawsuit Against New York Times Over Blake Lively Story: It Relied on Her 'Self-Serving Narrative' (EXCLUSIVE)," Variety (Dec. 31, 2024), https://variety.com/2024/film/news/justin-baldoni-sues-new-york-times-blake-lively-allegations-story-1236263099/; Anna Kutz, "Justin Baldoni's lawyer admonishes NYT over Blake Lively article," Yahoo! News (Jan. 6, 2025), https://www.yahoo.com/news/justin-baldoni-lawyer-admonishes-nyt-030921580.html.

on January 16, 2025.  *See Wayfarer Studios LLC et al v. Lively et al.*, Case No. 1:25-cv-00449-LJL (S.D.N.Y), Dkt. No. 1.

Two weeks later, on January 31, the Wayfarer Parties amended their complaint in this Court to name *The Times* as a defendant, ultimately dismissing the previously filed California lawsuit.  In the FAC, the Wayfarer Parties assert claims for defamation and false light invasion of privacy against *The Times*, as well as claims for promissory fraud and breach of implied-in-fact contract.  Dkt. No. 50.  *The Times* was served on February 7, 2025, and this motion follows.

## II.     ARGUMENT

Throughout their blunderbuss complaint, the Wayfarer Parties seek to drag *The Times* into their larger feud with Lively.  But the only thing *The Times* is, in fact, alleged to have done is engage in newsgathering and publishing an Article and Video about the Wayfarer/Lively dispute.  The Wayfarer Parties have failed to allege a claim against *The Times*, and this Court should, therefore, dismiss the FAC as alleged against it pursuant to Rule 12(b)(6).  To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted).  That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Biro v. Condé Nast,* 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal marks omitted).  The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully" and may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

In addition, courts in the Southern District have recognized that "[b]ecause a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the

pleading stage." *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320,

326 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL

1013982 (2d Cir. Apr. 5, 2022) (quoting *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y.

2013)); *see also Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638, 641 (4th Cir. 1976)

("[P]rolonging a meritless case ... could result in further chilling of First Amendment rights.").

    **A.**    **New York Law Applies to the Wayfarer Parties' Claims**

New York law applies to the Wayfarer Parties' claims against *The Times*.[5]  While *The*

*Times* believes the outcome of this motion would be the same under either jurisdiction's law, the

laws of California and New York conflict in two relevant ways: over the recognition of the false

light tort and the contours of the Anti-SLAPP statute.[6]  *See Bobulinski v. Tarlov*, 2024 WL

4893277, at *13 (S.D.N.Y. Nov. 26, 2024) (noting that California and New York's respective Anti-

SLAPP statutes impose different pleading burdens on plaintiffs); *Baiqiao Tang v. Wengui Guo*,

2019 WL 6169940, at *6 (S.D.N.Y. Nov. 20, 2019) (noting that California, unlike New York,

recognizes the tort of false light).  Pursuant to New York choice-of-law rules, which are applicable

in this Court, the conflicts analysis is dictated by New York law.

New York applies the law of the state with the most significant interest in the litigation.

*See Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citing *Padula v. Lilarn Props. Corp.*,

84 N.Y..2d 519, 521 (1994)).  In multi-state defamation actions, New York courts emphasize that

"as the national center of the publishing industry, [New York] has a significant interest in assuring

that the risks and liabilities flowing from publishing … will be uniform. Publishers, authors, and

film makers consciously attempt to mold their conduct to legal norms, with the expectation that

---

[5] In their motion to dismiss, Vision PR and Leslie Sloane also argue that New York law applies.  *See* Dkt. No. 87 at 7.

[6] Throughout this motion, *The Times* has included cites to California law to demonstrate that, no matter which state's law applies, Plaintiffs' claims fail.

the legal consequences of their conduct will be predictable. Their justified expectation that their conduct will be judged by the rules of jurisdictions in which they carry on their activities merits protection." *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 685 (S.D.N.Y. 2022) (quoting *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984)). *See also Kinsey v. New York Times*, 991 F.30 171, 176 (2d Cir. 2021). For that reason, courts in this district have routinely applied New York law to defamation cases involving New York publications.

*Jacob*, a defamation case also involving *The Times*, is one such example. There, the court found that while the plaintiffs were domiciled in Nevada and suffered the greatest injury in California—and even though one of the defendants, a reporter for *The Times*, resided in California for at least some of the time she was reporting and writing the article at issue—these factors were outweighed by the fact that *The Times* was domiciled in New York, the statements "emanated" from New York, plaintiff had filed suit in New York, and New York had "strong policy interests in regulating the conduct of its citizens and its media." *Jacob*, 626 F. Supp. 3d at 685 (quoting *Kinsey*, 991 F.3d at 178). *Kinsey* is directly on point as to one of the issues raised by this motion. There, the Circuit applied New York's fair report privilege in a libel claim brought by a Maryland resident because New York's interest in regulating its media outweighed Maryland's "interest in protecting its citizens from defamatory conduct."[7] *Kinsey*, 991 F.3d at 178.

---

[7] However, the Court need not conduct a choice-of-law analysis as to privilege because the applicable statutes of the relevant jurisdictions are not in conflict. *See Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 n.12 (2d Cir. 2013) (citing *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004)). Like New York (*The Times*'s domicile), California (Plaintiff's domicile) recognizes a fair report privilege that applies to reports of official proceedings and provides an absolute privilege against defamation claims. *See* Cal. Civil Code §47(d); *Howard v. Oakland Tribune*, 199 Cal.App.3d 1124, 1128 (1988) (state administrative agency investigation was official proceeding under California privilege); *Dorsey v. National Enquirer*, 973 F.2d 1431, 1437 (9th Cir. 1992) (California privilege shielded article about confidential family court matter); *Braun v. Chron. Publ'g Co.*, 52 Cal. App. 4th 1036, 1050 (1997) (California privilege applied even though state auditor report on which challenged article was based was sealed); *see also infra* at 10-19 (discussing scope of New York's privilege). Given the absence of a conflict, New York law should govern. *See Int'l Bus. Machines Corp.*, 363 F.3d at 143 ("In the absence of substantive difference, … a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

7

This case has even stronger connections to New York than *Jacob* did. The Wayfarer Parties allege that *The Times* is a New York corporation with its principal place of business in New York, where Lively (and Reynolds) allegedly also reside. FAC ¶¶ 307-308, 311. The Wayfarer Parties allege that Lively and *The Times* "[w]ork[ed] hand-in-glove," *id.* ¶ 246, and that she provided *The Times* with the CRD Complaint "long before filing it." *Id.* ¶ 275; *see also id.* at 86 (asserting that Lively "circulated [the CRD Complaint] to [*The Times*] ... weeks before filing" it). In other words, the Wayfarer Parties allege that the Article is based on information provided in New York by individuals residing in New York to reporters in New York. And there is no question that Article emanated from New York as well, or that *The Times*'s principal place of business is in New York. Moreover, the Wayfarer Parties, like the plaintiffs in *Jacob* and *Kinsey*, acknowledged New York's interest in this case by choosing to drop the California state court action and bring their lawsuit in this district. For all these reasons, New York law applies.

### B. The Wayfarer Parties Rely on Impermissible Group Pleading

First, Plaintiffs' FAC fails to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it is made up almost entirely of impermissible group pleading that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,* 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) (a complaint that "generally attribute[s] misconduct to the 'Defendants' collectively" and fails to "differentiate between the [multiple] defendants" is subject to dismissal). In fact, this Court need look no further than the very first paragraph of the FAC to reach this conclusion; there, the Wayfarer Parties define the "Lively Parties" to include *The Times* and then, for the next 224 pages, allege that all Lively Parties were acting in concert together, including committing acts that predate the publication of the Article. *E.g.*, FAC ¶¶ 14, 197. This form of pleading is clearly

8

impermissible under Rule 8. *See*, *e.g.*, *Berdeaux v. OnCoin LTd.*, 562 F. Supp. 3d 379, 397 (S.D.N.Y. 2021) (complaint dismissed because it was "riddled with instances of improper group pleading, in which they refer to actions taken by 'the Scott Group Defendants.'"); *see generally Komatsu v. City of New York*, 2021 WL 3038498, at *5 (S.D.N.Y. July 16, 2021) (Rule 8 prohibits "the sort of pleading that leaves the defendant 'forced to select the relevant material from a mass of verbiage'") (quoting *Rodriguez v. Trs. of Columbia Univ. in the City of N.Y.*, 2006 WL 2521323, at *3 (S.D.N.Y. Aug. 30, 2006)).

In fact, in this way, the Wayfarer Parties' FAC is like that in *Komatsu,* which the court dismissed in part because the complaints' length and "tangents" "make it difficult to understand exactly how the facts alleged provide a basis for Plaintiff's claims—or which facts support which allegations—causing significant prejudice to Defendants who must sift through hundreds of pages ... to fully ascertain the nature of the charges against them." *Komatsu*, 2021 WL 3038498, at *5. Here, as there, *The Times* must parse the Wayfarer Parties' extensive verbiage, much of which does not relate to *The Times* at all, to discern their claims. *See, e.g.,* FAC ¶ 162 (asserting "Lively, her team, and *The Times* worked in concert to cherry-pick, deliberately misconstrue, splice, and alter private communications to manufacture a self-serving and factually baseless narrative" and providing only examples from the CRD Complaint). This vague, convoluted pleading, which fails to properly allege what *The Times* actually said, whether it was false, and whether it was published with actual malice, is impermissible under Rule 8. It is all the more unacceptable because Plaintiffs have already amended their allegations against *The Times* and, therefore, had the opportunity to fix their pleading problem. For this reason, dismissal with prejudice is appropriate.

### C.    The Wayfarer Parties' Defamation Claim Fails

The only exception to the Wayfarer Parties' scattershot pleading comes at page 166 of the FAC, where they seem, finally, to land on the claim that *The Times* defamed them in the Video,

which stated "the men [Baldoni and Heath] … hired a crisis PR manager [Nathan] who orchestrated a smear campaign against Lively." FAC ¶ 267. That is the *only* allegedly defamatory statement made by *The Times* that is identified in the FAC, and it is, therefore, the *only* statement at issue in their defamation action. The Wayfarer Parties' claim based on this one statement, however, must be dismissed.

### 1.    The Fair Report Privilege Applies to *The Times*'s Publications

The claim must first be dismissed because the statement is absolutely privileged by the New York fair report privilege.[8] N.Y. Civ. Rights Law § 74. New York's fair report privilege protects any "fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law § 74. There are two requirements for the privilege to apply. First, the report must give a substantially accurate account of a judicial or official document. Second, the report must attribute its allegations to that document. When those two conditions are met, the report's publisher cannot be held liable as a matter of law. *See Zappin v. NYP Holdings, Inc.*, 2018 WL 1474414, at *6 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d Cir. 2019); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520 (S.D.N.Y. 2013) (the fair report privilege is "absolute."), (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)). For that reason, courts in this Circuit routinely dismiss claims at the pleading stage upon finding that the privilege applies. *E.g.*, *Zappin,* 2018 WL 1474414 at *6-9; *Kinsey,* 991 F.3d at 180; *Lan Sang*, 951 F. Supp. 2d at 520-22; *Thomas v. City of New York*, 2018 WL 5791965, at *10 (E.D.N.Y. Nov. 5,

---

[8] The defamation claim also fails as to It Ends With Us Movie LLC and Sarowitz for the additional reason that the Wayfarer Parties fail to allege, as they must, that the allegedly defamatory statements in the Article or the Video are of and concerning them. *See Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1164 (S.D.N.Y. 1992) (dismissing complaint that failed to allege that plaintiff was subject of allegedly defamatory statement), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001). The Article does not discuss It Ends With Us Movie LLC at all, and mentions Sarowitz as a defendant in Lively's suit and as the financial backer of Wayfarer; *The Times* does not report that he had any role in Baldoni's purported retaliation against Lively or in Nathan and Abel's actions. Article at 3; *see* CRD Complaint ¶¶ 8, 25, 167, 169. The defamation claim must, therefore, be dismissed as to It Ends With Us Movie LLC and Sarowitz.

2018); *Test Masters Educ. Servs., Inc v. NYP Holdings*, 603 F. Supp. 2d 584 588-89 (S.D.N.Y.

2009); *Jeanty v. City of Utica*, 2017 WL 6408878, at *20 (N.D.N.Y. Aug. 18, 2017); *Fuji Photo

Film U.S.A.  v. McNulty*, 669 F. Supp. 2d 405, 415 (S.D.N.Y. 2009); *D'Annunzio v. Ayken, Inc.*,

876 F. Supp. 2d 211, 220 (E.D.N.Y. 2012).[9]

The privilege was established "to implement the public policy in favor of encouraging

publication and dissemination of judicial decisions and proceedings as being in the public interest."

*Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985).  "It exists to protect the media while they

gather the information needed for the public to exercise effective oversight of the government ...

even when they report on official action that the government would like to keep secret."  *Gubarev

v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (applying New York privilege law

to classified report of a government proceeding); *see also Idema v. Wager*, 120 F. Supp. 2d 361,

365 (S.D.N.Y. 2000) (privilege helps avoid stifling "an active, thriving, and untrammeled press"

that requires "broad protection" to freely on official proceedings) (quoting *Gurda v. Orange Cnty.

Publ'ns*, 81 A.D.2d 120, 131 (2d Dep't 1981) (Mollen, J., concurring in part, dissenting in part)),

*aff'd*, 29 F. App'x 676 (2d Cir. 2002).   Here, there is no question the privilege applies to *The

Times*' reporting about the CRD Complaint and bars the Wayfarer Parties' claim.

### a.    The Article and Video Meet Both Requirements of the Fair Report Privilege

*First*, as even Plaintiffs seem to concede (*see* FAC ¶¶ 4, 131, 262, 269), the CRD Complaint

is precisely the type of official proceeding at the heart of the fair report privilege.  "New York

---

[9] *Accord J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 99 (2016) ("appellate courts
have not been reluctant to decide the ... privilege applies as a matter of law when the undisputed facts are insufficient
to support a judgment for the plaintiff."); *Kilgore v. Younger*, 30 Cal. 3d 770, 777 (1982) (affirming order sustaining
defendant newspapers' early dismissal on grounds that articles were fair reports of a public meeting); *Jennings v.
Telegram-Tribune Co.*, 164 Cal. App. 3d 119, 122, (1985) (California privilege applied as matter of law to newspaper
article describing misdemeanor conviction for failing to file income tax returns as "tax fraud" and "tax evasion").

courts have broadly construed the meaning of an official proceeding," *Penaherra v. N.Y. Times Co.*, 2013 WL 4013487, at *11 (Sup. Ct. N.Y. Cty. Aug. 8, 2013); *see also Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 214 (N.D.N.Y. 2014) ("New York courts have broadly interpreted the meaning of an official proceeding as used in Section 74").  And it indisputably applies to legal filings, including complaints.  *See Fuji Photo Film*, 669 F. Supp. 2d at 415 (privilege applied to statements recounting contents of legal complaint); *Thomas*, 2018 WL 5791965 at *10 (report applied articles "accurately summariz[ing] the ... criminal complaint"); *Branca v. Mayesh*, 101 A.D.2d 872, 873 (2d Dep't 1984) ("Section 74 protection extends ... to any pleading made within the course of the proceeding"), *aff'd*, 63 N.Y.2d 994 (1984).[10]

Actions and documents involving administrative agencies are "official proceedings" protected by the fair report privilege.  *See Test Masters Educ. Servs.*, 603 F. Supp. 2d at 588 ("an administrative agency investigation into activities within its purview is an 'official proceeding'" and reporting on same qualifies for privilege); *Simpson v. The Village Voice, Inc.*, 2007 WL 2815376, at *12-13 (Sup. Ct. N.Y. Cty. Aug. 07, 2007) (privilege applied to report on documents coming from New York's Office of Preservation Services); *Icahn v. Raynor*, 32 Misc. 3d 1224(A), at *6 (Sup. Ct. N.Y. Cty. 2011) ("[A]bsolute privilege applies even in quasi-judicial hearings and administrative hearings, and the privilege 'attaches not only to the hearing stage, but to every step of the proceeding.'").[11]

---

[10] *Accord Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 240 (1999) (courts construe California's fair report privilege "broadly," resolving close questions in favor of protecting speech); *Carver v. Bonds*, 135 Cal. App. 4th 328, 350 (2005) (holding that "communications intended to instigate governmental investigations into wrongdoing" were protected as "official proceedings"); *Hagberg v. California Federal Bank*, 32 Cal.4th 350, 363 (2004) (California privilege "applies to complaints to government agencies requesting that the agency investigate or remedy wrongdoing.").

[11] *Accord Carver*, 135 Cal. App. 4th at 344-45 (California privilege protected article on medical board records); *Braun*, 52 Cal.App.4th at 1051 (finding newspaper article reporting state auditor's investigation reported on public official proceeding).

And so too are documents related to non-public official proceedings.  *See*, *e.g., Freeze Right Refrigeration v. City of New York*, 101 A.D. 2d 175, 182 (1ˢᵗ Dept 1984) (applying privilege to report of investigation by N.Y. City Department of Consumer affairs);  *Gubarev.*, 340 F. Supp. 3d at 1317; *see also Fridman v. Buzzfeed, Inc.*, 2021 WL 1040531, at *6 (Sup. Ct. N.Y. Cty. Mar. 11, 2021) (stating that New York's privilege serves the "public interest [in] the dissemination of information[ by] provid[ing] broad protection to news accounts of official proceedings, including not only judicial and legislative proceedings, but also ... classified proceedings") (internal quotation marks and citation omitted*); Keogh v. New York Herald Tribune, Inc.*, 51 Misc.2d 888, 891-92 (Sup. Ct. N.Y. Cty. 1966) (applying the privilege to reports of confidential grand jury proceedings); *Grab v. Poughkeepsie Newspapers, Inc.*, 91 Misc. 2d 1003, 1004 (Sup. Ct. Dutchess Cty. 1977) (applying privilege to coverage of confidential youth offender proceedings).[12]

Here, the allegedly defamatory statement in the Article reports on allegations that were included in a filing before the California Civil Rights Department ("CRD").  The CRD is the administrative agency responsible for "receiv[ing], investigat[ing], [...] and prosecut[ing] complaints alleging [unlawful] practices" in the workplace (Cal. Gov't Code § 12930(f)(1)) and from whom a filer must obtain a "right-to-sue" notice in order to initiate her own lawsuit.  *See Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990) (stating that "a right-to-sue letter is a prerequisite to judicial action" related to employment-related complaints).  Reporting on a complaint filed with such an administrative agency falls squarely within the bounds of the privilege.  *See Icahn*, 32 Misc. 3d 1224(A), at *6.  In fact, a court in this District recently found that a complaint filed in a similar California agency proceeding was an official proceeding for the purposed of Section 74. *See Jacob*, 626 F. Supp. 3d at 688 n. 11 (report about complaint filed with California Labor

---

[12] *Accord Dorsey*, 973 F.2d at 1437.

Commission was absolutely privileged). Indeed, the Wayfarer Parties effectively concede that the privilege applies to a complaint filed with the CRD in their FAC. FAC ¶¶ 4, 269.

*Next*, the Article and the Video attribute the allegedly defamatory material to the official proceeding. For the privilege to apply, "the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on a proceeding." *Fine*, 11 F. Supp. 3d at 216; *see, e.g.*, *Kinsey*, 991 F.3d at 179 (privilege applied in part because *The Times* "notes that it is reporting on a specific court proceeding and that seven declarations were filed in that proceeding"). "Quotations from, and summaries of, documents or other material that the report indicates are part of a proceeding are indisputably statements 'of' that proceeding." *Fine*, 11 F. Supp. 3d at 216-17 (collecting cases); *see also Biro*, 883 F. Supp. 2d at 478 ("Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within section 74's privilege.") (quoting *Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006)) (internal marks omitted).[13]

There is no real dispute that the Article reports on the CRD Complaint. The Article consistently uses language like "according to a legal complaint" and "it [the CRD Complaint] claims" to describe Lively's allegations about the Wayfarer Parties. *Compare, e.g.*, Article at 2 *with* Bolger Decl. Ex. 3 (CRD Complaint) ¶ 8. And the Article quotes extensively from texts and emails between Baldoni, Heath, Nathan, and Abel that are reproduced in CRD Complaint. *Compare, e.g.*, Article at 7 (quoting Abel stating "I think you guys need to be tough and show the strength of what you guys can do in these scenarios. He [Baldoni] wants to feel like she can be buried.") *with* CRD Complaint ¶ 13 (same). Plaintiff concedes as much. *See* FAC ¶ 262. In fact,

---

[13] *Accord Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal. App. 5th 416, 434 (2016) (to determine if California privilege applies, courts look to "whether the average [reader] of the media report would understand the… statements as communications about the … complaint").

not only do the Article and Video reference the CRD Complaint multiple times, but the Article links to a full copy of the filing. No ordinary viewer or reader could fail to understand that the Article and Video reported on the CRD Complaint.

*Finally*, the Article and Video fairly reported on the CRD Complaint. In keeping with the policy of giving Section 74 a "liberal interpretation," courts deem a report "fair and true" so long as "the substance of the article [is a] substantially accurate" of the official proceeding. *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979) (internal marks omitted); *Alf v. Buffalo News, Inc.*, 21 N.Y.3d 988, 990 (2013) (statements at issue need be only a "substantially accurate" description of the proceeding); *Ctr. for Med. Progress*, 551 F. Supp. 3d at 330-31 (report that plaintiffs engaged in a "false smear campaign" was "substantially accurate" account of charges in criminal case). "When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision. This is so because a newspaper article is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author." *Holy Spirit*, 49 N.Y.2d at 68.[14]

Here, it cannot be disputed that the Article and Video accurately summarize the CRD Complaint in regard to the sole defamatory statement alleged by Plaintiffs—that they engaged in a smear campaign. The Article and Video summarize the filing's allegation that Baldoni engaged Nathan and Abel to tarnish Lively's reputation in retaliation for complaining about Baldoni and Heath's purported misconduct. Article at 2-3, 6-8; Video at 1:22; *see* CRD Complaint ¶¶ 167-71. The term "smear campaign," though not used in the CRD Complaint, is a fair and accurate shorthand way to summarize the main thrust of the allegations supporting the allegations of

---

[14] *Accord Sipple*, 71 Cal. App. 4th at 244 (a report is absolutely protected by California privilege if it captures "the substance, the gist, [or] the sting" of the court record or proceeding).

retaliation.  *E.g.* CRD Complaint ¶ 8 (alleging that "Mr. Baldoni and his Wayfarer associates embarked on a sophisticated press and digital plan in retaliation for Ms. Lively exercising her legally-protected right to speak up about their misconduct on the set."); *see also id.* ¶¶ 17-18, 24, 109-174.  The Article and Video even provided a fair and accurate summary of the allegations from Lively that Plaintiffs do not identify as defamatory: Lively's allegations of sexual harassment made in the filing, including claims that Baldoni engaged in unwanted improvised kissing of Lively while on set and Heath watched Lively breastfeed her child even after being asked to stop.   Article at 2, 5; Video at 0:41; *see* CRD Complaint ¶¶ 31, 48.   The Wayfarer Parties' defamation claim is, thus, easily dismissed as a fair report of the CRD Complaint.

### b.    The Wayfarer Parties' Arguments to the Contrary are Wrong

In a half-hearted attempt to defeat the privilege, Plaintiffs gesture at three arguments to claim that the Article is "unprivileged" (FAC ¶ 4).  All fail.

First, the Wayfarer Parties contend that *The Times*, colluding with Lively, was given her CRD Complaint prior to filing.  Even were that so, receiving an advance copy of an official document before filing does not vitiate the privilege.[15]  As this Court has held, "even if [a journalist is] passed a copy of the complaint by [the filing party], ... that would not prevent [the journalist] from reporting on [the] complaint or deprive her fair and accurate report of the benefit of the absolute privilege accorded it by New York law."  *Brady v. NYP Holdings, Inc.*, 2022 WL 992631, at *6 (S.D.N.Y. Mar. 31, 2022) (J. Liman). The Wayfarer Parties' claim that *The Times* interviewed Lively before the publication of the Article and Video similarly does not change the outcome.  *See*

---

[15] Tellingly, *The Times* was *not* the first news outlet to report on the CRD Complaint.  *See* "Blake Lively Sues Justin Baldoni for Sexual Harassment ... Claims of Wild Behavior on Set," TMZ (Dec. 21, 2024 4:54 AM PT), https://www.tmz.com/2024/12/21/blake-lively-sues-justin-baldoni-sexual-harassment-retaliation-on-it-ends-with-us-set/; *see also* Dkt. No. 84 at 50 (alleging that Plaintiffs "leaked the [CRD C]omplaint to certain hand-selected publications to get ahead of it").

*Freeze Right*, 101 A.D.2d at 182 (privilege attached to article by *The Times* even though it was "being advised as to the pendency, progress and findings of the investigation ... prior to [report of government investigation's] public release" and even though reporter had limited participation in investigation).[16]  Interviewing a source before publication is not collusion, it is newsgathering.[17] And New York courts have held that "once it is established that the publication is reporting on a [covered] proceeding, how a reporter gathers his information concerning [that] proceeding is immaterial." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2009)  (internal quotation and citation omitted); *see also Friedman v. Bloomberg L.P.*, 884 F.3d 83, 94 n.7 (2d Cir. 2017) (plaintiff was not entitled to discovery as to source of defendant media organization's reporting in light of defendant's fair and accurate reporting on legal complaint).[18]

Second, the Wayfarer Parties hint that they believe the Article and Video are not privileged because *The Times* "ma[de] little or no attempt to investigate the veracity Lively's allegations." FAC ¶ 272.  That is not so, but the argument exhibits a fundamental misunderstanding of the privilege and its purpose.  The point of the privilege is that journalists should be free to accurately inform the public about official proceedings without having to fact-check them.  *See Freeze Right*, 101 A.D.2d at 183 (emphasizing that Section 74 "was designed ... to relieve [a publisher] of any duty to expose ... error[s] through its own investigation"); *Jeanty*, 2017 WL 6408878, at *19 (under the privilege, journalists are "not required to fact-check allegations, only to provide a fair and true

---

[16] As perhaps could be predicted because the Wayfarer Parties' allegations rely solely on "Internet sleuths," the allegations regarding the metadata associated with the Article and Video (*e.g.*, FAC ¶¶ 267, 268) are simply wrong.

[17] *Accord McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 971 (1987) (alleged conspiracy on part of publisher and reporters to introduce allegedly defamatory material into judicial proceedings did not vitiate statute granting media absolute privilege to report testimony and other evidence in libel action).

[18] Nor would any such rule make sense—surely the Wayfarer Parties do not want to disincentivize reporters asking questions.

report of them.").[19]  The public has an interest in learning about a filing—true or false, misguided or well-considered—that is made to a public agency.    Accordingly, "all that matters for the application of [the privilege] is that the Article is a substantially accurate rendering of what was said," even if the pleading is incorrect.  *Zappin*, 2018 WL 1474414, at *7; *Glantz v. Cook United, Inc.*, 499 F. Supp. 710, 715 (E.D.N.Y. 1979) ("[E]ncompassed within the privilege is the right to publish a 'fair and true' report which contains information that is 'false' as a matter of fact."); *Biro*, 883 F. Supp. 2d at 479 (argument "that the plaintiffs in the original suits were incorrect in their allegations ... is not sufficient to defeat the fair and true report privilege").  Because the Article indisputably correctly reports the contents of the CRD Complaint, the Article is privileged.

        *Finally,* the Wayfarer Parties' claim that the Article and the Video should have included the reasons why Nathan was hired to "bury" Lively.  Once again, Plaintiffs exhibit a deep misunderstanding of the privilege.  While *The Times* sought and published the Wayfarer Parties' response to the complaint as a matter of long-standing *Times* policy, the privilege itself imposes no obligation on a publisher to tell both sides of a story.  *See Brady,* 2022 WL 992631 at *5 ("There is no obligation for a report to tell all sides of a story to be substantially accurate.") (quoting *Zappin*, 2018 WL 1474414, at *8); *Biro*, 883 F. Supp. 2d at 478.  *Lan Sang*, 951 F. Supp. 2d at 521; *accord Biro*, 883 F. Supp. 2d at 478.  The obligation is to report fairly and accurately on what is actually in the public filing.  Nothing more.  Nonetheless, *The Times* went above and beyond this requirement and did reach out to Plaintiffs.  The Article not only includes the Wayfarer Parties' strident denials but also links to their statement in full.  *See* Article at 2.  The Wayfarer Parties

---

[19] *Accord McClatchy Newspapers, Inc.*, 189 Cal. App. 3d at 974 (California privilege applies without regard to the truth or falsity of the underlying information; even if "the media publish an accurate report of a statement they know to be false, the protective cloak of [the privilege] remains intact"); *Green v. Cortez*, 151 Cal. App. 3d 1068, 1074 (1984) ("the question of malice does not affect the determination of privilege"); *Dorsey*, 973 F.2d at 1436 (California privilege "does not require the reporter to resolve the merits of the charges, nor does it require that he present [plaintiff's] version of the facts.").

18

may have wanted the Article to tell a different story, but that desire does not transmute absolutely privileged reporting into actionable defamation.

Despite the Wayfarer Parties' hundreds of pages of screengrabs, outrage, and rhetoric, this is a very simple case: the Article is absolutely privileged as a fair report, and the Wayfarer Parties' defamation claim fails.

## 2.    The "Smear Campaign" Phrase is Protected Opinion

Even if the fair report privilege did not apply, Plaintiffs' defamation claim would still be subject to dismissal because the challenged phrase is a constitutionally protected statement of opinion. "Smear campaign" is "no more than rhetorical hyperbole" that lacks any precise meaning. *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 14 (1970). And where, as here, such a colorfully expressed judgement is based on disclosed facts, that judgment is not actionable. *See Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) (a "statement of opinion which is accompanied by a recitation of the facts upon which it is based ... is not actionable"); *e.g.*, *Pease v. Tel. Pub. Co.*, 121 N.H. 62, 66 (1981) (letter asserting that plaintiff's article was "journalistic smear" was protected opinion because "anybody ... could have reviewed [cited facts in letter] in order to determine whether they agree with [the author's] opinion that the series constituted a smear campaign.").[20]

Here, the Article lays out in great detail the factual bases for its conclusion that Plaintiffs engaged in a "smear campaign" against Lively. The Article cites texts and documents establishing that, for instance, Baldoni wanted a "plan" to combat steps taken by Lively (Article at 4); that he was unhappy with the initial proposal provided by Nathan and Abel (*id.* at 7); that Baldoni wanted to "feel like she [Lively] can be buried" (*id.* at 2); that Nathan acknowledged that "we can bury anyone" and did not want to send Baldoni "the work we will or could do because that could get us

---

[20] *Accord Dong v. Board of Trustees*, 191 Cal. App. 3d 1572, 1586 (1987) ("[w]here the facts supporting a statement are disclosed, courts have found such statements to be nonactionable opinion").

4918-1523-9970v.1 0034735-000142

in a lot of trouble" (*id.* at 2, 7); that Abel considered "plant[ing] pieces ... of how horrible [Lively] is to work with" and that Nathan had talked to a journalist receptive to such stories (*id.* at 9); that Baldoni proposed "flipping the narrative" on Lively and Reynolds by "using their own words against them" (*id.* at 11); that Nathan and Abel retained an individual named Jed Wallace to "'boost' and 'amplify' online content that was favorable to Mr. Baldoni or critical of Ms. Lively," that Nathan was told that her team was "start[ing] to see shift on social, due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan," and that negative social impressions of Lively subsequently increased (*id* at 2, 3, 10; *see also* CRD Complaint ¶¶ 19, 142); and that Nathan bragged to Abel that "ALL press is overwhelming Weve [sic] confused people So much mixed messaging" (Article at 9). The purportedly "omitted" context flagged in Plaintiffs (*e.g.*, FAC ¶ 278) merely establishes that Nathan had a reputation for being able to plant negative stories; it does not undercut these facts, which support the conclusion that the Wayfarer Parties planned for and executed a "smear campaign" against Lively.

The "smear campaign" phrase is constitutionally protected opinion based on disclosed facts, and the Wayfarer Parties' defamation claim fails for this independent reason.

### 3. The Wayfarer Parties Have Not Plausibly Alleged that *The Times* Published the Article with Actual Malice

The Wayfarer Parties' claims also should be dismissed because they have failed to plead actual malice, which is required by New York's Anti-SLAPP Law, N.Y. Civil Rights Law § 76-a,[21] and because Baldoni is a public figure. *See Gertz v. Welch*, 418 U.S. 323 (1974). At the

---

[21] The New York anti-SLAPP statute applies to this litigation because *The Times*'s conduct relates to free speech in connection with a public interest. N.Y. Civil Rights Law § 76-a. *See, e.g., Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (holding that Section 76-a applies to federal courts); *Sweigert v. Goodman*, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021) (same). In particular, under New York law, the "public interest" must be "broadly construed." *Huggins v. Moore*, 94 N.Y.2d 296, 303 (1999) ("Absent clear abuse, the courts will not second-guess editorial decisions as to what constitutes matters of genuine public concern."). Public interest is unquestionably implicated by this public and highly acrimonious dispute between Baldoni and Lively, both well-known actors, that played out across social media and in the news media. *See generally* FAC.

pleading stage, the "actual malice" standard requires plaintiffs to sufficiently allege that a statement was published with knowledge that it was false or that the publisher "entertained serious doubts" about whether it was true. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), *aff'd in Counterman v. Colorado*, 600 U.S. 66 (2023). Courts in this jurisdiction routinely dismiss defamation claims for failure to plead actual malice. *E.g., Biro*, 807 F.3d at 546 (affirming dismissal for failure to plead actual malice), *BYD Co. Ltd. v. VICE Media LLC*, No. 21-1097, 2022 WL 598973, at *3 (2d Cir. Mar. 1, 2022) (same); *Bobulinski*, 2024 WL 4893277 at *8 (dismissing claim for failure to plead actual malice). The Wayfarer Parties have failed to meet this high burden in two ways.

First, to allege actual malice, a plaintiff "must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro*, 807 F.3d at 546. Allegations of actual malice that are no more than "pure speculation" and are "supported not by facts but by only conclusory statements" are insufficient. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) (dismissing defamation claim because the plaintiff's allegations of personal bias were insufficient to show actual malice).

Here, all the Wayfarer Parties offer are actual malice buzzwords—*i.e.,* they plead the actual malice standard itself, without any supporting facts. *See* FAC ¶ 328 ("the Lively Parties knew the statements were false, or had serious doubts about the truth of the statements."). This allegation is plainly insufficient. That is especially so when *The Times* could see in Lively's CRD Complaint an astonishing array of actual evidence of a smear campaign that would have led any reasonable reader to conclude that the allegation was true. At the same time, in responding to *The Times*'s pre-publication request for comment, Plaintiffs' counsel failed to address that evidence or provide

counter-evidence—in effect, leaving Lively's evidence as the only evidence from which *The Times* would form a belief about the accuracy of the allegations.

Second, in a case against a news organization, "the state of mind required for actual malice would have to be brought home to the persons in the … organization having responsibility for the publication." *Sullivan*, 376 U.S. at 287 (emphasis added); *see also Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (same); *Patel v. Cable News Network, Inc.*, 83 Va. App. 387, 412 (2025) (affirming dismissal of plaintiff's claims where plaintiff failed to "'bring home' actual malice to the minds of specific persons at" the defendant media company). Even if it could be argued that the Wayfarer Parties have plausibly alleged that *The Times as an organization* acted with actual malice, the Wayfarer Parties have failed to plead any facts that could impute knowledge of falsity or subjective doubt of truth to anyone at *The Times* responsible for the Article. *See BYD Co. Ltd.,* 531 F. Supp. 3d at 826 (plaintiff failed to plausibly plead actual malice where it failed to home allegations of subjective knowledge of falsity). The absence of such allegations further dooms the Wayfarer Parties' defamation claim.

### 4.    The False Light Claim Fails

The Wayfarer Parties' claim  for false light invasion of privacy, asserted under California law, also fails. *See* FAC ¶¶ 332-39. As discussed above, *see supra* at 6-8, New York law applies to the Wayfarer Parties' claims. But New York law does not recognize the tort of false light. *See Matthews v. Malkus*, 377 F. Supp. 2d 350, 358 (S.D.N.Y. 2005) ("Under New York law, invasion of privacy based on publicity which placed [a plaintiff] in false light is not a cognizable claim"); *see also Costanza v. Seinfeld*, 181 Misc. 2d 562, 564 (Sup. Ct. N.Y. Cty. 1999) (noting that "New York law does not and never has allowed a common law claim for invasion of privacy"), *aff'd as modified*, 279 A.D.2d 255 (2001); *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151

22

(S.D.N.Y. 2022) ("New York does not recognize a separate cause of action for false light/invasion of privacy"). The Wayfarer Parties' false light must, therefore, be dismissed.[22]

### 5.    The Wayfarer Parties' Tag-Along Claims Fail

Aware that they have no claim against *The Times* based on the publication of the Article and Video, the Wayfarer Parties assert tag-along claims for promissory fraud and breach of implied-in-fact contract. These claims also fail as a matter of law.

### a.    The Promissory Fraud Claim Fails

To allege a claim for promissory fraud, the Wayfarer Parties must show "(1) that there was a material, false representation; (2) made with knowledge of its falsity; (3) an intent to defraud; (4) that plaintiff reasonably relied upon; (5) causing the plaintiff damages." *See Globaltex Group, Ltd. V. Trends Sportswear, Ltd.*, 2009 WL 1270002, at *6 (E.D.N.Y. 2009) (*citing Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 22 (2d. Cir. 2009)).[23]

But, "where a fraud claim arises out of the same facts as plaintiffs breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises ... in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *See Globaltex,* 2009 WL 1270002, at *6. Here, the Wayfarer Parties' promissory fraud and contract claims are premised on the same facts: *The Times*'s alleged

---

[22] Even if California law did apply, Plaintiffs' false light claim would fail. Under California law, the same constitutional and statutory protections that bar a defamation claim—including the fair report privilege—apply equally to all derivative claims based on the same alleged "injurious falsehood," such as false light. *Blatty v. New York Times*, 42 Cal. 3d 1033, 1043 (1986); *see Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002) (noting that, in California, false light requires reputational harm); *Selleck v. Globe Int'l, Inc.*, 166 Cal.App.3d 1123, 1133 (1985) ("[a]n action for ... false light ... is in substance equivalent to a libel claim"). Therefore, "the collapse of [a] defamation claim spells the demise of all other causes of action ... which allegedly arise from the same publications." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 34 (2007); *accord Fellows v. National Enquirer, Inc.*, 42 Cal. 3d 234, 242 (1986) (derivative false light claim "is in substance equivalent to the ... libel claim, and should meet the same requirements ... on all aspects of the case"). Because Plaintiffs' defamation claim fails even if California law applies, *see supra* at ns. 9-14, 17, 19, and because the false light claim is independently barred by California's fair report privilege, their false light claim must be dismissed.

[23] *Accord Missakian v. Amusement Indus., Inc.*, 69 Cal. App. 5th 630, 654 (2021).

promise to hold off publication until noon on December 21 and their alleged decision to break that agreement and publish early. Compare FAC ¶¶ 375-83 with ¶¶ 384-91. As such, the Wayfarer Parties' promissory fraud claim must be dismissed. And even if that were not so, Plaintiffs fail to show they had any intention of doing anything in the two hours between the publication and deadline for comment. There was, in other words, no reliance on *The Times*'s setting of the noon deadline and no materiality to that representation. It had no effect, fraudulently or otherwise.

### b.     The Breach of Contract Claim Fails

The Wayfarer Parties claim for breach of implied-in-fact contract (*id.* ¶¶ 384-91) also fails. In New York, a breach of implied-in-fact contract requires that a plaintiff allege "the existence of a contract, the plaintiffs' performance under the contract, the defendants' breach of that contract, and resulting damages." *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012).[24]

Here, the Wayfarer Parties claim that *The Times* broke its agreement to forebear from publishing the Article until noon on December 21. FAC ¶ 380. But the actual correspondence between the parties contradicts these ill-formed allegations. On the day before the Article was published, Ms. Twohey of *The Times* emailed Jennifer Abel offering "until noon [the next day] ... to respond to the allegations, provide additional relevant information, and correct inaccuracies." FAC ¶¶ 386. That same evening, Abel replied to Ms. Twohey's questions and represented that the response was on behalf of Baldoni, Heath, Sarowitz, Nathan and herself (the "Response"). Bolger Decl. Ex. 4. Importantly, Abel did not indicate any desire to provide more information. *The Times* then quoted extensively from the Response in the Article and the Video, and the Article links to it in full. In short, *The Times* did what it told Abel it would do—provide the Wayfarer Parties the

---

[24] *Accord Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011).

opportunity to respond to the allegations. There is no breach of any agreement. If anything, the Wayfarer Parties' confusion about what *The Times* had proposed shows that there was never the requisite meeting of the minds for the establishing of any sort of contract.

In the FAC, the Wayfarer Parties suggest that *The Times* somehow promised to wait until noon to publish the story. But that promise is nowhere seen or implied in the correspondence. And it is belied by the fact that the Wayfarer Parties provided a Response in that time frame, did not indicate any intention to provide additional information, did not ask for more time, and most notably, said nothing to *The Times* between Abel's email at 11:54 P.M. on December 20 sand the publication of the Article at 10:11 A.M. on December 21. The contract claim fails.

### III.    CONCLUSION

The Wayfarer Parties' FAC tells a one-sided tale that has garnered plenty of headlines. But *The Times* does not belong in this dispute. For the foregoing reasons, the FAC should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) as alleged against *The Times*.


Dated: New York, New York
      February 28, 2025

                Respectfully submitted,

                DAVIS WRIGHT TREMAINE LLP

                By: */s/ Katherine M. Bolger*

                Katherine M. Bolger
                Sam F. Cate Gumpert (admitted *pro hac vice*)
                DAVIS WRIGHT TREMAINE LLP
                1251 Avenue of the Americas, 21st Floor
                New York, New York 10020
                Telephone:    (212) 489-8230

                *Attorneys for Defendant The New York Times Company*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS</u>

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 7,524 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       February 28, 2025

By: */s/ Katherine M. Bolger*

Katherine M. Bolger
Sam F. Cate Gumpert (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230

*Attorneys for Defendant The New York Times Company*