## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>            Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual,<br><br>            Defendants. | Civ. Action No. 1:24-cv-10049-LJL (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) rel. 1:25-cv-00779-LJL |
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, JENNIFER ABEL, an individual, and STEVE SAROWITZ, an individual,<br><br>            Plaintiffs,<br><br>v.<br><br>BLAKE LIVELY, an individual, RYAN REYNOLDS, an individual, LESLIE SLOANE, an individual, VISION PR, INC., a New York corporation, and THE NEW YORK TIMES COMPANY, a New York corporation,<br><br>            Defendants. | |

## CONSOLIDATED PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CONSOLIDATED DEFENDANTS VISION PR, INC. AND LESLIE SLOANE'S MOTION TO DISMISS THE AMENDED COMPLAINT, FOR ATTORNEYS' FEES AND COSTS, AND TO STRIKE EXHIBIT A

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

II.    LEGAL STANDARD .................................................................................. 5

III.   FACTUAL BACKGROUND ....................................................................... 6

   A.    The FAC Gives Adequate Notice to the Sloane Parties Under Rule 8 ......................... 10

   B.    California Law, Not New York Law, Applies to the Wayfarer Parties' Claims Against
   the Sloane Parties ..................................................................................... 13

   C.    The FAC States a Claim for Defamation Against the Sloane Parties .......................... 18

      1.    The Sloane Parties Made Defamatory Statements "Of and Concerning" the Wayfarer
      Parties .................................................................................................. 19

      2.    The Sloane Parties' Statements Are Not Inactionable Opinion ................................ 22

      3.    The Sloane Parties' Statements Are Not Substantially True ................................... 27

      4.    The Alleged Statements Concerning "Sexual Assault" Are Sufficiently Specific..... 28

      5.    The Wayfarer Parties Need Not Plead Special Damages Because the Sloane Parties'
      Statements Are Defamatory Per Se ................................................................. 30

      6.    The Wayfarer Parties Have Pleaded Actual Malice ........................................... 32

   D.    The Wayfarer Parties Have Adequately Pleaded a Claim for Civil Extortion .............. 35

   E.    The Wayfarer Parties Have Adequately Pleaded a Claim for False Light Invasion of
   Privacy ................................................................................................... 36

   F.    Even If the Motion Were Granted Without Leave to Amend, Attorneys' Fees Are Not
   Available to the Sloane Parties Under Second Circuit Law ...................................... 39

   G.    The Motion to Strike Should Be Denied, or, at Most, Granted with Leave to Amend.. 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
   96 F. Supp. 3d 182 (S.D.N.Y. 2015)................................................................15

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)..........................................................16, 17

*Algarin v. Town of Wallkill*,
   421 F.3d 137 (2d Cir. 2005)..........................................................................22

*Matter of Allstate Ins. Co.* (*Stolarz*),
   81 N.Y.2d 219 (1993).....................................................................................13

*Andresen v. Diorio*,
   349 F.3d 8 (1st Cir. 2003).............................................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5

*Atuahene v. City of Hartford*,
   10 F. App'x. 33, 2021 WL 604902 (2d Cir. 2021)......................................12

*Baker v. L.A. Herald Examiner*,
   42 Cal. 3d 254 (1986)...................................................................................23

*Ball v. Taylor*,
   416 F.3d 915 (8th Cir. 2005) (per curiam)...................................................22

*Barnes-Hind, Inc. v. Superior Court*,
   181 Cal. App. 3d 377 (1986) ..................................................................26, 31

*Bartholomew v. YouTube, LLC*,
   17 Cal. App. 5th 121 (2017) .........................................................................30

*BCRE 230 Riverside LLC v. Fuchs*,
   59 A.D.3d 282 (1st Dep't 2009) ..................................................................29

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................5, 40

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021)..........................................................12

*Berwick v. New World Network Intern., Ltd.*,
   No. 06 CIV. 2641 JGK, 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007)......................37

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)..................................................................................32

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................29

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013).....................................................................33

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033 (1986) ...........................................................................................20

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993)....................................................................................13

*Bobulinski v. Tarlov*,
    No. 24-CV-2349 (JPO), 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ................42

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003)......................................................................................31

*Brady v. NYP Holdings, Inc.*,
    No. 21-CV-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) (Liman,
    J.)........................................................................................................................41, 42

*Brady v. Ottaway Newspapers, Inc.*,
    445 N.Y.S.2d 786 (2d Dep't 1981)............................................................22, 41, 42

*Brahmana v. Lembo*,
    No. C-09-00106 RMW, 2010 WL 965296 (N.D. Cal. Mar. 17, 2010) ..................39

*Bryan v. Richardson*,
    87 N.Y.2d 46 (1995) ...............................................................................................24

*Bryks v. Canadian Broad. Corp.*,
    928 F. Supp. 381 (S.D.N.Y. 1996)..........................................................................16

*Buckley v. Little*,
    539 F.2d 882 (2d Cir. 1976)....................................................................................25

*Burton v. Label, LLC*,
    344 F. Supp. 3d 680 (S.D.N.Y. 2018).....................................................................28

*Campanelli v. Regents of Univ. of Cal.*,
    44 Cal. App. 4th 572 (1996) ...................................................................................27

*Canosa v. Ziff*,
    No. 18-CV-4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ..............................11

*Caro Capital, LLC v. Koch*,
    2021 WL 1595843 (S.D.N.Y. Apr. 23, 2021)..........................................................28

*Carroll v. Trump*,
    590 F. Supp. 3d 575 (S.D.N.Y. 2022)............................................................................41

*Celle v. Filipino Reporter Enters.*,
    209 F.3d 163 (2d Cir. 2000)......................................................................................24

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014)......................................................................................24

*Chord Assocs., LLC v. Protech 2003-D, LLC*,
    No. 07-CV-5138 JFB AKT, 2010 WL 3780380 (E.D.N.Y. Sept. 21, 2010).........................37

*Church of Scientology of California v. Flynn*,
    744 F.2d 694 (9th Cir. 1984) ................................................................................22, 29

*Church of Scientology Int'l v. Time Warner, Inc.*,
    806 F.Supp. 1157 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l
    v. Behar*, 238 F.3d 168 (2d Cir. 2001) ......................................................................34

*Coleman v. Grand*,
    523 F. Supp. 3d 244 (E.D.N.Y. 2021) .......................................................................34

*Condit v. Dunne*,
    316 F. Supp. 2d 344 (S.D.N.Y. 2004)..............................................................13, 15, 16

*Contento v. Mitchell*,
    28 Cal. App. 3d 356 (1972) .....................................................................................18

*Ctr. For Med. Progress v. Planned Parenthood Fed'n of Am.*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021).......................................................................19

*D.A.R.E. America v. Rolling Stone Magazine*,
    101 F. Supp. 2d 1270 (C.D. Cal. 2000) .....................................................................27

*Daytree at Cortland Square, Inc. v. Walsh*,
    332 F. Supp. 3d 610 (E.D.N.Y. 2018) .......................................................................21

*De Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845 (2018) ....................................................................................14

*Deaton v. Napoli*,
    No. 17CV4592RRMGRB, 2019 WL 4736722 (E.D.N.Y. Sept. 27, 2019)..........................37

*DeIuliis v. Engel*,
    2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021)..............................................14, 15, 37

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337, *aff'd*, 337 Fed. Appx. 94 (2d Cir. 2009) ................................21

*Eisenberg v. Alameda Newspapers*,
    74 Cal. App. 4th 1359 (1999) ..............................................................................38, 39

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017)................................................................................................21

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...........................................................................................................10

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
    2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .................................................................29

*Fairfield v. American Photocopy etc. Co.*,
    138 Cal. App. 2d 82 (1955) .............................................................................................38

*Flamm v. Am. Ass'n of Univ. Women*,
    201 F.3d 144 (2d Cir. 2000).............................................................................................24

*Flatley v. Mauro*,
    39 Cal. 4th 299 (2006) ...............................................................................................35, 36

*Fleckenstein v. Friedman*,
    266 N.Y. 19 (1934) ..........................................................................................................28

*Freeman v. Mills*,
    97 Cal. App. 2d 161 (1950) .............................................................................................30

*Friedl v. City of New York*,
    210 F.3d 79 (2d Cir. 2000)...............................................................................................13

*Fuhrman v. California Satellite Sys.*,
    179 Cal. App. 3d 408 (1986) ...........................................................................................14

*GetFugu, Inc. v. Patton Boggs LLP*,
    220 Cal. App. 4th 141 (2013) ..........................................................................................27

*Gilbert v. Seton Hall Univ.*,
    332 F.3d 105 (2d Cir. 2003).............................................................................................13

*Greene v. Paramount Pictures Corp.*,
    138 F. Supp. 3d 226 (E.D.N.Y. 2015) .............................................................................21

*Gross v. N.Y. Times*,
    82 N.Y.2d 146 (1993) ......................................................................................................24

*Harte-Hanks Communications. Inc. v. Connaughton*,
    491 U.S. 657 (1989)..........................................................................................................33

*Hisamatsu v. Niroula*,
    2009 WL 4456392 (N.D. Cal. Oct. 22, 2009)...................................................................15

*Hogan v. Weymouth*,
    No. CV 19-2306-MWF, 2020 WL 8028111 (C.D. Cal. Nov. 13, 2020)........................38, 39

*Hogan v. Weymouth*,
　No. CV192306MWFAFMX, 2019 WL 11055032 (C.D. Cal. Aug. 19, 2019) ......................39

*Horton v. Greenwich Hosp.*,
　No. 12-CV-4436, 2014 WL 956468 (S.D.N.Y. Mar. 10, 2014) ...............................................14

*In re Invs. Funding Corp. of New York Sec. Litig.*,
　100 F.R.D. 64 (S.D.N.Y. 1983) .....................................................................................6, 17, 39

*Jackson v. Mayweather*,
　10 Cal. App. 5th 1240 (2017) ........................................................................................20, 28

*Jensen v. Hewlett-Packard Co.*,
　14 Cal. App. 4th 958 (1993) ......................................................................................................22

*Jones v. Dollar Tree Stores, Inc.*,
　No. CV 21-7441 PA, 2021 WL 6496822 (C.D. Cal. Nov. 4, 2021) ................................38, 39

*Kesner v. Buhl*,
　590 F. Supp. 3d 680 (S.D.N.Y. 2022), *aff'd sub nom. Kesner v. Dow Jones &*
　*Co., Inc.*, No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023) .........................................41

*Kesner v. Dow Jones & Co., Inc.*,
　515 F. Supp. 3d 149 (S.D.N.Y. 2021) ........................................................................................13

*Kevin Zhang Inc. v. Rozsa*,
　No. 2:20-CV-6247-SVW, 2021 WL 1570837 (C.D. Cal. Jan. 27, 2021) .........................38, 39

*Kirch v. Liberty Media Corp.*,
　449 F.3d 388 (2d Cir. 2006) .......................................................................................................21

*Klaxon Co. v. Stentor Elect. Mfg. Co.*,
　313 U.S. 487 (1941) ...................................................................................................................13

*Koch v. Christie's Int'l PLC*,
　699 F.3d 141 (2d Cir. 2012) .........................................................................................................5

*Korkala v. W.W. Norton & Co.*,
　618 F. Supp. 152 (S.D.N.Y. 1985) ............................................................................................28

*La Liberte v. Reid*,
　966 F.3d 79 (2d Cir. 2020) ...........................................................................................40, 41, 42

*La Luna Enters., Inc. v. CBS Corp.*,
　74 F. Supp. 2d 384 (S.D.N.Y. 1999) ....................................................................................17, 37

*Lee v. Bankers Trust Co.*,
　166 F.3d 540 (2d Cir. 1999) .......................................................................................................16

*Leeper v. Beltrami*,
　53 Cal. 2d 195 (1959) ................................................................................................................15

*Lluberes v. Uncommon Productions, LLC,*
   663 F.3d 6 (1st Cir. 2011) ............................................................................................34

*Maheu v. Hughes Tool Co.,*
   569 F.2d 459 (9th Cir. 1977) .......................................................................................27

*Manchanda v. Navient Student Loans,*
   No. 19-CV-5121, 2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020)................................10

*Maran v. Legal Aid Society,*
   605 F. Supp. 3d 547 (S.D.N.Y. 2022)........................................................................41

*Minnelli v. Soumayah,*
   41 A.D.3d 388 (2007) .................................................................................................14

*Mobile Data Shred, Inc. v. United Bank of Switzerland,*
   No. 99 CIV. 10315 SAS, 2000 WL 351516 (S.D.N.Y. Apr. 5, 2000) ..................... 29

*Monex Deposit Co. v. Gilliam,*
   666 F. Supp. 2d 1135 (C.D. Cal. 2009) .....................................................................36

*Moyer v. Amador Valley Joint Union High School District,*
   225 Cal. App. 3d 720 (1990) ......................................................................................23

*Muzikowski v. Paramount Pictures Corp.,*
   322 F.3d 918 (7th Cir. 2003) ......................................................................................29

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,*
   551 F. Supp. 3d 408 (S.D.N.Y. 2021).........................................................................41

*Neal v. Asta Funding, Inc.,*
   No. 13 CV 2176 VB, 2014 WL 3887760 (S.D.N.Y. June 17, 2014) .......................29

*Okun v. Superior Court,*
   29 Cal. 3d 442 (1981) ..........................................................................................23, 29

*OneWest Bank N.A. v. Lehman Bros. Holding Inc.,*
   No. 14-CV-8916, 2015 WL 1808947 (S.D.N.Y. Apr. 20, 2015) ............................11

*Overhill Farms, Inc. v. Lopez,*
   190 Cal. App. 4th 1248 (2010) ...................................................................................23

*Overstock.com, Inc. v. Gradient Analytics, Inc.,*
   151 Cal. App. 4th 688 (2007) .....................................................................................30

*Palin v. N.Y. Times Co.,*
   940 F.3d 804 (2d Cir. 2019).......................................................................................19

*People v. Hopkins,*
   105 Cal. App. 2d 708 (1951) ......................................................................................36

*People v. Umana,*
  138 Cal. App. 4th 625 (2006) .......................................................................................36

*Press v. Primavera,*
  685 F. Supp. 3d 216 (S.D.N.Y. 2023)............................................................................13

*Price v. Operating Engineers Local Union No. 3,*
  195 Cal. App. 4th 962 (2011) .......................................................................................38

*Prince v. Intercept,*
  No. 21-CV-10075 (LAP), 2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022).................................41

*RCI Hosp. Holdings, Inc. v. White,*
  220 A.D.3d 430 (2023) ................................................................................................19

*Reader's Digest Ass'n v. Superior Court,*
  37 Cal. 3d 244 (1984).............................................................................................32, 34

*Restis v. Am. Coal. Against Nuclear Iran, Inc.,*
  53 F. Supp. 3d 705 (S.D.N.Y. 2014)..........................................................................19, 24

*Rinaldi v. Holt, Rinehart & Winston, Inc.,*
  42 N.Y.2d 369 (1977)..............................................................................................31, 32

*Salahuddin v. Cuomo,*
  861 F.2d 40 (2d Cir. 1988)..........................................................................................10

*Savage v. Pacific Gas & Electric Co.,*
  21 Cal. App. 4th 434 (1993) .......................................................................................22

*Schessler v. Keck,*
  125 Cal. App. 2d 827 (1959) .......................................................................................29

*Seelig v. Infinity Broad. Corp.,*
  97 Cal. App. 4th 798 (2002) .......................................................................................23

*Semple v. Andrews,*
  27 Cal. App. 2d, 228, 233 (1938) ...............................................................................29

*Silberg v. Anderson,*
  50 Cal. 3d 205, 786 P.2d 365 (1990) ...........................................................................15

*Skidmore v. Regents of Univ. of California,*
  No. 20-CV-06415-BLF, 2021 WL 843195 (N.D. Cal. Mar. 5, 2021)....................................39

*Slaughter v. Friedman,*
  32 Cal. 3d 149 (1982) ................................................................................................23

*Smith v. Maldonado,*
  72 Cal. App. 4th 637 (1999) .......................................................................................18

*Steinhilber v. Alphone*,
    68 N.Y.2d 283 (1986) .......................................................................................................24

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ...........................................................................................22

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ..........................................................................................................10

*Sydney v. MacFadden Newspaper Pub. Corp.*,
    242 N.Y. 208 (1926) .........................................................................................................31

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)..............................................................................................27

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
    No. 16-CV-8722 (PKC), 2017 WL 2627912 (S.D.N.Y. June 16, 2017)...............................12

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
    15 N.Y.S.3d 36 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82 (2016) .................................................22

*Treppel v. Biovail Corp.*,
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)...........................................................................19

*Vaad Hakashrus Crown Heights Inc. v. Braun*,
    No. 15-CV-5857, 2017 WL 10180422 (E.D.N.Y. Jan. 12, 2017) ..........................................10

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
    No. 13-CV-7639, 2015 WL 4040882 (S.D.N.Y. July 2, 2015)..............................................11

*Weller v. Am. Broadcasting Companies, Inc.*,
    232 Cal. App. 3d 991 (1991) ...........................................................................................23

*Woodham v. Allen*,
    130 Cal. 194 (1900) ........................................................................................................15

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)...............................................................................................10

*ZL Technologies, Inc. v. Does 1-7*,
    13 Cal. App. 5th 603 (2017) ............................................................................................23

**Statutes**

Cal. Civ. Code § 44 ..................................................................................................................18

Cal. Civ. Code § 45 ..................................................................................................................18

Cal. Civ. Code § 45a .................................................................................................................30

Cal. Civ. Code § 48a .................................................................................................................18

Cal. Civ. Proc. Code § 425.16(b)(3) ............................................................................40

Cal. Pen. Code § 519 ....................................................................................................35

Federal Rule of Civil Procedure 8 ...............................................................10, 12, 29, 30

Federal Rule of Civil Procedure 11 .........................................................................41, 42

Federal Rule of Civil Procedure 12(b)(6) ...............................................................*passim*

Federal Rule of Civil Procedure 15 .........................................................................*passim*

Federal Rule of Civil Procedure 56 ........................................................................40, 41

NY Civil Rights Law § 74 ............................................................................................19

NY CPLR 3016 ............................................................................................................29

NY CPLR 3211 ............................................................................................................41

**Other Authorities**

Restatement (Second) of Conflict of Laws § 150(3) (1971)........................................16

Consolidated Plaintiffs Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), It Ends With Us Movie LLC ("IEWU"), Melissa Nathan ("Nathan"), Jennifer Abel ("Abel"), and Steve Sarowitz ("Sarowitz") (collectively, the "Wayfarer Parties") respectfully submit this memorandum of law in opposition to Consolidated Defendants Leslie Sloane ("Sloane") and Vision PR, Inc.'s ("Vision") (collectively, the "Sloane Parties") motion to dismiss the Amended Complaint for failure to state a claim, for attorneys' fees and costs, and to strike Exhibit A of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f), and New York's anti-SLAPP law (the "Motion").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

As alleged in the Wayfarer Parties' First Amended Complaint, the Sloane Parties played an active and integral role in a conspiracy to inflict harm on the Wayfarer Parties. The conspirators first aimed to win Plaintiff Blake Lively ("Lively") total control over the film *It Ends With Us* (the "Film") by means of extortionate threats to go public with her baseless claims of sexual harassment. That effort wholly succeeded. Having seized complete creative control over the Film and its marketing, Lively had only herself—and her publicist, Leslie Sloane, and Sloane's company, Vision PR, Inc.—to blame when her disastrously tone-deaf marketing efforts for the Film plowed her public reputation straight into the ground. In a desperate effort to salvage Lively's reputation and to escape her wrath, the Sloane Parties conspired with Lively and Consolidated Defendants Ryan Reynolds ("Reynolds") and The New York Times Company ("New York Times") to make scapegoats of the Wayfarer Parties for Lively's woes. On information and belief, the Sloane Parties worked for months to drop breadcrumbs and hints of sinister allegations to the public while secretly feeding defamatory falsehoods to any reporter who would listen, including Megan Twohey of the New York Times. As a direct result of the actions of the Sloane Parties and

1

their co-conspirators, the Wayfarer Parties have been damaged beyond measure: Their reputations are destroyed, their businesses lie in tatters, and their own Film was taken from them. These are the facts underpinning the Wayfarer Parties' allegations against the Sloane Parties, and this is what the evidence will prove at trial. The Motion should be denied in its entirety or, in the alternative, the Court should grant the Wayfarer Parties leave to amend[1] their First Amended Complaint and allow them to move forward with holding the Sloane Parties to account for their part in Lively's malicious and calculated scheme.

Lively chose New York as the forum in which to bring her evidence-free claims against the Wayfarer Parties. Although none of them are New Yorkers, the Wayfarer Parties stood ready to defend themselves in any forum and accordingly brought their own claims in this Court. But because the Wayfarer Parties suffered their damages in California, where nearly all of them make their personal and professional homes,[2] they are entitled to bring their claims under the laws of California, which has a manifest interest in protecting its citizens from defamation and other harms. Yet the Sloane Parties insist that merely because they as defendants have chosen to make their homes in New York, they are entitled to the full weight and protection of New York's laws, regardless of the fact that they reached out across the country to inflict grave and insidious harm on the Wayfarer Parties in California. California law should apply to remedy the wrongs suffered in California by California residents and their associates.

The Sloane Parties complain that they are unable to distinguish the allegations against them from those brought against other parties, arguing that the Wayfarer Parties engaged in

---

[1] Because the Wayfarer Parties have already once amended their complaint pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, it is the Wayfarer Parties' understanding that they do not have the option to amend as of right pursuant to Rule 15(a)(1)(B). Out of an abundance of caution, therefore, the Wayfarer Parties oppose the Motion and the relief sought therein and urge that, if the Motion is not denied outright, it be granted only with leave to amend.

[2] Steve Sarowitz, the lone exception, is a citizen of Illinois, but he is a party to this action solely by virtue of his ties to the California-based Wayfarer Parties. As argued herein, the Court can and should apply California law to all the Wayfarer Parties' claims; certainly, the Sloane Parties make no argument that Illinois law should apply.

"impermissible group pleading." Of course, it is premature at this stage to require the Wayfarer Parties to specify the precise acts taken by the Sloane Parties in connection with their conspiratorial scheme. A jury will determine the truth based on the evidence. But until then, the Wayfarer Parties have done more than enough to make their allegations against the Sloane Parties clear and can easily amend their pleading to add further details based on what they have already learned.

Under either California or New York law, the Wayfarer Parties have stated a claim for defamation against the Sloane Parties. The First Amended Complaint adequately pleads that the Sloane Parties made defamatory statements "of and concerning" each of the Wayfarer Parties, either individually and/or as members of a small and readily identifiable group. Those statements are not inactionable opinion because they are falsifiable; to the extent they contain opinion, that opinion implies the existence of unstated but false and defamatory facts. Nor can the statements be held to be substantially true on the face of the pleadings, because the pleadings set forth a sequence of events entirely inconsistent with the false statements made by the Sloane Parties. The Sloane Parties' false claims of sexual assault are sufficiently specific to constitute defamation, and the Wayfarer Parties need not plead special damages because those statements and others are defamatory per se. Finally, the Wayfarer Parties pleaded facts sufficient to allege that the Sloane Parties had the requisite state of mind to defame, even under the challenging "actual malice" standard needed to defame Baldoni, a public figure.

The Motion falls short with respect to the Wayfarer Parties' claim for false light invasion of privacy as well. The Sloane Parties' primary argument—that New York law, which does not recognize false light claims, must apply—fails for the same reasons that California law must govern the Wayfarer Parties' defamation claim: Having made their personal and professional homes in California and having suffered considerable harm there, the Wayfarer Parties are entitled to the protection of California's laws. The Wayfarer Parties' claim for false light invasion of

privacy satisfies the *Twombly/Iqbal* standard for specificity and plausibility of pleading. The Wayfarer Parties have done more than enough to give the Sloane Parties adequate notice of the allegations against them, and the claims are amply supported by plausible factual allegations sufficient to state a claim for false light. But if the Court determines that further factual allegations are necessary to satisfy the pleading requirements, the Wayfarer Parties stand ready to supply them by amending their complaint.

The Motion again misses the mark when it comes to attacking the Wayfarer Parties' claim for civil extortion. Again, the Sloane Parties insist that New York law, which does not recognize a claim for civil extortion, must apply, an argument that once again fails. The Sloane Parties claim that the Wayfarer Parties fail to allege that the Sloane Parties received anything of value as part of their extortionate conspiracy, but this is not a necessary element of a claim for civil extortion under California law. Furthermore, the Sloane Parties err in arguing that they can be held liable for civil extortion only if they themselves directly used "force or threats" to obtain property from the Wayfarer Parties. Like all torts, civil extortion may be pleaded on a theory of liability by conspiracy, as the Wayfarer Parties have done. By pleading that Lively, Reynolds, and the Sloane Parties acted in concert to extort the Wayfarer Parties, the First Amended Complaint sets forth allegations sufficient to survive a motion to dismiss the claim for civil extortion.

Even if the Motion is granted, it should be granted only with leave to amend. Federal courts apply an extremely liberal policy in favor of amendment under Rule 15 of the Federal Rules of Civil Procedure. The Wayfarer Parties have already learned substantial additional information since filing the First Amended Complaint that would enable them to plead further facts in support of their claims, based on their own investigation and on facts drawn to their attention by concerned citizens from around the country and beyond. Should the Court not be inclined to deny the Motion in its entirety, the Court should grant leave to amend so that this action can be decided on its merits

at trial. As part of that amendment, the Wayfarer Parties would endeavor to judiciously incorporate the fulsome chronological account and evidence set forth in Exhibit A to their First Amended Complaint into the body of the complaint itself, to minimize the burden facing the Sloane Parties as they attempt to counter the admittedly daunting mountain of evidence against the defendants.

Finally, even though the Motion should be denied, or at most granted only with leave to amend, under **_no circumstances_** are attorneys' fees or costs available to the Sloane Parties. Courts of the Second Circuit and of this District are nearly unanimous in holding that the state anti-SLAPP laws of California and New York, which may allow recovery of attorneys' fees, are entirely inapplicable in the federal courts because they conflict with the standards of Rules 11, 12, and 56 of the Federal Rules of Civil Procedure.

In short, the Motion should be denied; in the alternative, the Court should grant the Wayfarer Parties leave to amend their complaint because any defects in the First Amended Complaint are easily cured based on the facts now available to the Wayfarer Parties.

## II.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Courts apply an "extremely liberal standard" for amending pursuant to Federal Rule of Civil Procedure 15(a)(2). *See* Fed. R. Civ. P.

15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. 64, 65 (S.D.N.Y. 1983) (describing Rule 15 as embracing an "extremely liberal standard" with respect to amendment).

## III.    FACTUAL BACKGROUND

Justin Baldoni is a well-known actor and film director who co-founded Wayfarer in 2019. First Amended Complaint ("FAC") ¶ 20. Wayfarer acquired the film rights to Colleen Hoover's novel "It Ends With Us" in 2019. FAC ¶ 22. The book explores themes of domestic violence and generational patterns of abuse. FAC ¶ 22. Soon after, Wayfarer partnered with Sony Pictures Entertainment to co-finance and distribute the Film. FAC ¶ 24. Baldoni took on the role of director as well as male lead character Ryle. FAC ¶ 23. On or about December 31, 2022, Blake Lively agreed to take on the lead role of Lily Bloom. FAC ¶ 27. She was granted an executive producer credit, but Wayfarer neither requested nor required that Lively contribute to the Film in any capacity other than as an actor and executive producer (a vanity credit with no direct responsibilities). *Id.* It initially appeared that Baldoni and Lively would have a productive working relationship, as they collaborated closely in the early days of the production. *E.g.*, FAC ¶¶ 28-30. However, Lively soon began intruding into the production process in ways well beyond the scope of her contractual entitlements. FAC ¶ 31. She took over her character's wardrobe and exploded the budget for the role, for example. FAC ¶ 32. She also insisted on taking over writing multiple key scenes for the Film, resorting to calling in her famous husband and friend as reinforcements when her script rewrites were not received as enthusiastically as she hoped. *E.g.*, FAC ¶¶ 39-42. She began altering the script daily. *E.g.*, FAC ¶ 43. Pre-production and the first phase of filming were tenuous, with the Wayfarer Parties tiptoeing around Lively to avoid incurring the wrath of Lively and Reynolds, resulting in delays and significant financial losses in a delicately scheduled production. *E.g.*, FAC ¶¶ 46-50. At one point, Lively issued an ultimatum that if Baldoni could

not get on board with her work methods, he may have to recast her role. FAC ¶ 51. Still, Lively reflected a casual, frank manner on the set, for example, inviting Baldoni to join her in her trailer while expressing breast milk and using terms, such as "sexy," that she later castigated others for using. *E.g.*, FAC ¶¶ 55-62.

In May 2023, while filming was underway, the Writers Guild of America ("WGA") went on strike, followed shortly thereafter by the SAG-AFTRA strike in July 2023, which caused a hiatus in production pending resolution of the strikes. FAC ¶¶ 63-65. As Baldoni began editing the footage already shot during the strike break, Lively began insisting on access to the dailies. FAC ¶¶ 66-72.

The WGA strike ended in September 2023, and the SAG-AFTRA strike ended on November 9, 2023. FAC ¶ 73. The same day the SAG-AFTRA strike ended, Lively's lawyer sent an unexpected and confusing 17-point list of non-negotiable demands that must be met before Lively would return to work, apparently drafted for the purpose of falsely insinuating that Baldoni, Wayfarer CEO Jamey Heath, and others had engaged in sexually inappropriate conduct during filming—an entirely false claim. FAC ¶ 75. While the Wayfarer Parties disputed (and still dispute) that Lively's demands had any legitimate predicate, they nevertheless found the requests largely unobjectionable and frequently consistent with existing practices. *E.g.*, FAC ¶¶ 76-122. The discussions over Lively's terms for returning to production culminated in an "all-hands" meeting on January 4, 2024, at Reynolds and Lively's apartment, where Lively made additional false and unfounded accusations and where Reynolds aggressively berated Baldoni for his purported transgressions, an event that left all the attendees from Wayfarer and Sony shaken and disturbed. FAC ¶¶ 127-131. As Lively admits, however, filming proceeded thereafter uneventfully through the second phase of production, without any further purported incidents of which Lively could complain. FAC ¶ 132. However, Lively seized on the opportunity to use her new ammunition—a

carefully constructed paper trail of false insinuations and claims—to complete her forceful takeover of the Film from Baldoni, based on the implicit and ever-present threat that she must have her way or she would ruin the Wayfarer Parties. FAC ¶ 133. Gradually but in the end completely, Lively took over the editing of the Film, ultimately extorting Sony and Wayfarer into releasing *her* cut despite its poorer performance with audience tests. FAC ¶¶ 134-146. She also dictated the Film's marketing, erasing Baldoni from promotional material and driving the lighthearted, frothy campaign for the Film while peddling her own products—a decision that proved disastrous for her later on. FAC ¶¶ 147-149. She continued to insist on greater credit for the Film, demanding that Wayfarer support her request for the coveted p.g.a. mark despite not having earned that credit, which denotes a producer who performed the majority of producing work on a motion picture. FAC ¶¶ 152-157.

As the premiere of the Film approached in the Summer of 2024, Lively told Sony that she and the rest of the cast would not participate in any marketing or promotion of the Film alongside Baldoni, deliberately creating the false impression that Baldoni had committed some serious offense. FAC ¶¶ 158-161. On information and belief, Sloane was throughout this time working to spread false and defamatory allegations against the Wayfarer Parties to members of the press, both defaming the Wayfarer Parties and serving as the muscle behind Lively's coercive threats. FAC ¶ 187. Upon information and belief, this began well before the backlash against Lively for her wrongheaded marketing efforts for the Film (not to mention the self-promotion of her own alcohol and hair care brands). FAC ¶¶ 178-187. The FAC details the information known to the Wayfarer Parties at the time of filing about the Sloane Parties' activities to defame and extort them (*see, e.g.*, FAC ¶¶ 188-194, 233); since filing the First Amended Complaint, the Wayfarer Parties have obtained additional information about the Sloane Parties' activities during this time and will, if granted leave to amend, add those allegations in their amended pleading.

As Wayfarer and Baldoni drifted away from their increasingly erratic publicist, Stephanie Jones ("Jones") of Jonesworks LLC ("Jonesworks"), Jones reacted with vitriol. She seized the phone of departing publicist Jennifer Abel, who was serving as Jonesworks' assigned point person for the Wayfarer account, mined it for what she believed to be damning information, and immediately turned over that information to the Sloane Parties. FAC ¶¶ 195-221, 238. The same *day*, Sloane called Melissa Nathan and told her that Sloane had seen Nathan's texts to Abel and that Nathan should expect to be sued. FAC ¶ 238.

Now armed with Abel's private text messages and communications, Lively and the Sloane Parties worked hand-in-glove with the New York Times to concoct a story that would explain Lively's downfall by casting the blame on the Wayfarer Parties. FAC ¶ 246. After the Wayfarer Parties finally stood up to Lively and Reynolds and refused to accede to their final demand that the Wayfarer Parties put out a false and humiliating statement admitting blame and wrongdoing, the gloves finally came off. FAC ¶¶ 250-256. The Wayfarer Parties allege that the Sloane Parties colluded with Lively, Reynolds, and the New York Times over a period of months to develop a false and defamatory news article and video in conjunction with Lively's unfounded sham complaint filed with the California Civil Rights Department. FAC ¶¶ 256-273. As a direct result, the Wayfarer Parties have suffered untold harm. FAC ¶ 299.

## IV.    <u>ARGUMENT</u>

The Motion fails entirely because it cannot show that the Wayfarer Parties failed to meet their pleading burden under Rule 12(b)(6) and the *Twombly*/*Iqbal* standard. California law should apply to each of the Wayfarer Parties' claims, allowing the claims for false light invasion of privacy and civil extortion to proceed, but under the law of either New York or California, the Wayfarer Parties have pleaded a defamation claim against the Sloane Parties sufficient to withstand a motion for dismissal. In the alternative, any defects or inartful pleading in the FAC

can easily be remedied by amendment, which is liberally permitted, and the Wayfarer Parties have gathered additional information sufficient to plead further specific facts to support each of their claims against the Sloane Parties, as well as the necessity of applying California law to those claims. Furthermore, the Wayfarer Parties can easily amend their complaint to more fully incorporate the allegations of Exhibit A into the body of the complaint, mooting the motion to strike. Finally, even in the extremely unlikely event that the Court determines dismissal without leave to amend is appropriate, the Sloane Parties are unable to recover their attorneys' fees or costs, as neither California's nor New York's anti-SLAPP laws can apply in the Second Circuit.

### A.     The FAC Gives Adequate Notice to the Sloane Parties Under Rule 8

The Sloane Parties first argue that the FAC should be dismissed because it does not satisfy the minimum pleading requirements of Federal Rule of Civil Procedure 8 due to impermissible group pleading. *See* Defs.' Br. at 5-7. That argument is unavailing. Rule 8 imposes a "lenient standard" for pleading. *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). Under Rule 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the [pleading] need only give the defendant fair notice of what the [] claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

To the extent that minimum requirement is met, the Second Circuit has noted that "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants." *Wynder*, 360 F.3d at 80. That is, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29, 2020); *see Vaad Hakashrus Crown Heights Inc. v. Braun*, No.

15-CV-5857, 2017 WL 10180422, at *5 (E.D.N.Y. Jan. 12, 2017) (same); *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (same). The question is ultimately whether the complaint gives each party "notice of the substance of the claims against [her]." *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14-CV-8916, 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015); *see Canosa v. Ziff*, No. 18-CV-4115, 2019 WL 498865, at *10 (S.D.N.Y. Jan. 28, 2019).

The FAC gives the Sloane Parties adequate notice. The FAC alleges the existence of a conspiracy between the Sloane Parties, Lively, and Reynolds to seed a false and defamatory narrative concerning the Wayfarer Parties to various media outlets, including without limitation the Daily Mail and the New York Times. In doing so, the Sloane Parties (and the Lively Parties and the New York Times) made a series of defamatory statements. These fall into two principal categories:

- Allegations that certain of the Wayfarer Parties, specifically Justin Baldoni and Jamey Heath, engaged in sexual misconduct towards Blake Lively; and

- Allegations that the Wayfarer Parties orchestrated a retaliatory "smear campaign" to damage Lively's image and reputation after she reported their purported misconduct.

As alleged in the FAC and discussed herein, those allegations are false, and the Sloane Parties knew they were false. To the extent the Sloane Parties are grouped throughout the FAC with the Lively Parties, that is because they are co-conspirators who engaged in the alleged campaign of defamation collectively. The precise contours of the conspiracy will come into focus through discovery. At this early juncture (and with some notable exceptions), the Wayfarer Parties simply have no way of knowing exactly who took what steps as part of the conspiracy. But the Wayfarer Parties know and allege that Sloane made statements to reporters referring to Baldoni as a sexual

11

predator and accusing him of sexual assault. FAC ¶¶ 282, 193. In addition, Sloane seeded false information about Baldoni to the Daily Mail in an effort to divert negative attention from Lively. FAC ¶¶ 190-193.[3]

The cases cited by the Sloane Parties are either entirely inapplicable or materially distinguishable. In *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021), the question before the court was whether the allegations were specific enough to establish personal jurisdiction over each of the defendants, not whether the pleading requirements of Rule 8(a) were satisfied. The Sloane Parties do not contest personal jurisdiction, which is governed by an entirely different and far more fact-intensive legal standard. *Id.* In *Berdeaux*, the lumping together of the defendants prevented an individualized analysis of whether the court could properly assert personal jurisdiction over each of them individually. While the court also dismissed the case on Rule 12(b)(6) grounds, it was for failure to meet the heightened pleading standard for aiding and abetting and commercial bad faith—not failure to satisfy Rule 8. *Id.* at 412-19. *TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, No. 16-CV-8722 (PKC), 2017 WL 2627912, at *1 (S.D.N.Y. June 16, 2017) is an unpublished case that concerns two motions for entry of default judgment. In that case, the plaintiff had completely failed to differentiate between the defendants and did not attribute specific conduct to *any* of them individually. *Id.* at *3*; *see also Atuahene v. City of Hartford*, 10 F. App'x. 33, 2021 WL 604902, at *34 (2d Cir. 2021) (affirming dismissal of complaint that did not differentiate at all between defendants or identify any factual basis for claims after multiple amendments). To the extent there is a lack of differentiation in the FAC, it does not rise nearly to that extreme.

---

[3] The Wayfarer Parties have since obtained additional information specific to the allegations against Sloane that they would add if the Motion were to be granted with leave to amend.

If the Court finds merit in the Sloane Parties' group pleading argument, it should note that the Wayfarer Parties intend to move for leave to amend their pleading. The Wayfarer Parties' underlying allegations and claims are well grounded in fact and law, and defects of this kind are readily curable to the extent they exist. Under Rule 15 of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In interpreting Rule 15(a), the Second Circuit has explained that "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.")

## B. California Law, Not New York Law, Applies to the Wayfarer Parties' Claims Against the Sloane Parties

The Sloane Parties claim that New York law, not California law, should apply to this case. But the weight of authority clearly demonstrates that the appropriate law to apply in this case is the law of California.

"In diversity cases, federal courts apply the choice of law rules of the forum state[.]" *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003); *see also Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023). The choice of law rules of New York therefore apply to this case. *Press*, 685 F. Supp. 3d at 225. The first step in that analysis is to determine whether there exists a conflict between the laws of New York and California. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021); *see also Condit v. Dunne*, 316 F. Supp. 2d 344, 352 (S.D.N.Y. 2004) ("The first inquiry under New York's choice of law analysis is whether there is an actual conflict of laws.") (quotation omitted); *Matter of Allstate Ins. Co.* (*Stolarz*), 81 N.Y.2d 219, 223 (1993) ("The first step in any

13

case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.") "An actual conflict exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *Horton v. Greenwich Hosp.*, No. 12-CV-4436, 2014 WL 956468, at *2 n.1 (S.D.N.Y. Mar. 10, 2014).

Here, there exist substantive conflicts between the laws of New York and California as to each of the Wayfarer Parties' claims against the Sloane Parties for defamation, false light invasion of privacy[4], and civil extortion. As to false light invasion of privacy, the conflict between the two states' laws is total: California recognizes the claim, while New York does not. *Compare De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) ("A 'false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such.") *with DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021) ("New York does not recognize the tort of false light invasion of privacy.") (quoting *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17 Civ. 75688 (PGG), 2018 WL 4735717, at *13 (S.D.N.Y. Sept. 29, 2018)). The same is true for the civil extortion claim; again, California recognizes the claim, while New York does not. *Compare Minnelli v. Soumayah*, 41 A.D.3d 388, 389 (2007) ("[E]xtortion and attempted extortion are criminal offenses that do not imply a private right of action. Moreover, although extortionate behavior, coercion and duress may be elements of a cause of action for tortious interference with contract or unjust enrichment, at common law there was never a private cause of action for extortion.") (citations omitted), *with Fuhrman v. California Satellite Sys.*, 179 Cal. App. 3d 408, 426 (1986) ("[D]efendants contend 'extortion' is only a crime and cannot form the basis for a civil action in tort. We disagree. However denominated (e.g.,

---

[4] The claim for false light invasion of privacy is personal to and brought by only Baldoni, Heath, Nathan, Abel, and Sarowitz, not by Wayfarer Studios LLC or It Ends With Us Movie LLC. For simplicity's sake, this opposition refers to the claims collectively as being brought by the Wayfarer Parties.

extortion, menace, duress), our Supreme Court has recognized a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution.") (citations omitted), *disapproved of on other grounds by Silberg v. Anderson*, 50 Cal. 3d 205, 786 P.2d 365 (1990); *see also Leeper v. Beltrami*, 53 Cal. 2d 195, 202-03 (1959); *Woodham v. Allen*, 130 Cal. 194, 198-99 (1900); *Hisamatsu v. Niroula*, 2009 WL 4456392, at *5 (N.D. Cal. Oct. 22, 2009) ("California has long recognized a claim of 'civil extortion.'") Clearly, there is a total conflict between the laws of California and New York when it comes to these two claims, rendering a choice-of-law analysis necessary.

There are also important differences between the laws of New York and California with respect to the Wayfarer Parties' defamation claim against the Sloane Parties. For example, "California extends no greater protection to opinions than does the United States Constitution," while "New York law, by contrast, in excess of the United States Constitution, provides for absolute protection of opinions." *Condit*, 317 F. Supp. 2d at 352 (citing *Weller v. Am. Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 1006 (1991) and quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir. 2000)).

Because there exists a substantive conflict between the laws of New York and California as to the Wayfarer Parties' claims for defamation, false light, and civil extortion, the Court must analyze whether to apply New York or California law to those claims. The choice of law must be analyzed individually as to each claim. *DeIuliis*, 2021 WL 4443145, at *4 ("New York follows the doctrine of dépeçage, under which the choice-of-law analysis is conducted separately for each individual claim."); *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) ("Under New York Law, the choice of law analysis is generally done separately for each claim and defense, under a doctrine called dépeçage. Under that doctrine, the rules of one legal system are applied to regulate certain issues arising from

a given transaction or occurrence, while those of another system regulate the other issues. In other words, the dépeçage doctrine recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense.") (quotations and citations omitted).

"In defamation cases, 'New York applies the law of the state with the most significant interest in the litigation.'" *Condit*, 317 F. Supp. 2d at 352 (quoting *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999)). "Under New York choice-of-law rules in defamation cases, 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." *Lee*, 166 F.3d at 545 (quoting *Reeves v. American Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)); *see also Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996) (collecting cases); Restatement (Second) of Conflict of Laws § 150(3) (1971) ("[T]he state of most significant relationship will usually be the state where the corporation . . . had its principal place of business . . . ."). "Although the preference for the plaintiff's domicile is not conclusive, 'the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Lee*, 166 F.3d at 545 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). The interest of a state in a defamation action is "significant and incontrovertible" where the plaintiffs are citizens of that state and live and conduct their business there. *Adelson v. Harris*, 973 F. Supp. 2d 467, 477-78 (S.D.N.Y. 2013). Though New York may have some interest in the Wayfarer Parties' defamation claim against the Sloane Parties because the Sloane Parties are residents of New York, California has a much more significant interest because nearly all of the plaintiffs[5] are residents of California or have their principal place of business there; the two corporate plaintiffs (Wayfarer Studios LLC and It Ends With Us Movie

---

[5] The only plaintiff who is not a resident of California is Steve Sarowitz, who resides in Illinois. No party has to date advanced an argument that the law of Illinois should apply to any claim in this action. Moreover, Sarowitz's connection to this action is through his ties to Wayfarer, which is located in California.

LLC) are both incorporated and/or have their principal place of business in California; the plaintiffs suffered injury to their reputations in California[6]; and the economic losses to the plaintiffs were all felt in California. *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999). Moreover, it was entirely foreseeable to the Sloane Parties that the harm of their wrongful and defamatory actions would be felt primarily in California, therefore rendering it inherently just that the Sloane Parties' conduct should be regulated pursuant to the laws of California, particularly given that the bulk of the defamatory acts were conducted, and the defamatory statements were published, primarily via the Internet. *Adelson*, 973 F. Supp. 2d at 480-81 ("'Although communities in the United States with little or no internet usage still exist, in general, it is quite foreseeable that the brunt of the reputational harm that results from internet-based defamation is most likely to be felt in the forum where the defamed individual lives, works, and maintains social relationships.'") (quoting *Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1073 (D. Ariz. 2010)). Here, each of the Wayfarer Parties "lives, works, and[/or] maintains social relationships" in California, and the law of California should therefore apply.

In addition, the underlying New York Times article, which is in many respects the genesis of this entire action, is purportedly based on reporting relating to Lively's complaint filed with *California's* Civil Rights Department, which purported to assert claims for violation of *California's* Fair Employment and Housing Act and Labor Code. FAC ¶¶ 4, 262. The Sloane Parties also gloss over the undeniable fact that the Film's production, the purported site of the majority of Lively's unfounded allegations, took place not in New York, but in *New Jersey.* FAC,

---

[6] The First Amended Complaint alleges that the Wayfarer Parties also suffered injury in New York as well as in their home state of California, which is a true statement notwithstanding the fact that the bulk of the harms were felt in California. To the extent that additional allegations are necessary to cure any inartful pleading as to the primary location of the harms, the Court should grant leave to amend pursuant to the "extremely liberal standard" of Federal Rule of Civil Procedure 15(a)(2). Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. at 65 (describing Rule 15 as embracing an "extremely liberal standard" with respect to amendment).

Ex. A, at 51. Yet the Sloane Parties have not proposed that *New Jersey* law should apply to this action.

In short, the laws of California can and should supply a remedy for the harms felt primarily in California by plaintiffs, who all live, work, and/or do business in California, as the result of conduct aimed at California.

**C.    The FAC States a Claim for Defamation Against the Sloane Parties**

Regardless of which state's law applies, the Wayfarer Parties have pled a legally sufficient defamation claim against the Sloane Parties.

Under California law, "[d]efamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). Defamation may consist of either libel or slander. Cal. Civ. Code § 44. Libel, which is at issue here, is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Where the defamation is clear without the need for any explanation, it is considered defamation per se, and damages are presumed. *Contento v. Mitchell*, 28 Cal. App. 3d 356, 358 (1972) ("[I]n an action for damages based on language defamatory per se, damage to the plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages.") Where the defamation is not per se, and some explanation is needed to show why the statement was defamatory, the plaintiff is required to allege and prove that he or she suffered special damages, such as harm to reputation, shame, or economic damages. Cal. Civ. Code §§ 45, 48a.

To state a claim for libel per se under New York law, a plaintiff must allege: "(1) a written defamatory statement of [fact] concerning the plaintiff; (2) publication to a third party; (3) fault [(either negligence or actual malice, depending on the status of the libeled party)]; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). At the pleading stage, the falsity of the alleged defamatory statements is presumed. *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005). The court "must decide [only] whether the statement alleged to have caused plaintiff injury are reasonably susceptible to the defamatory meaning imputed to them." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 718 (S.D.N.Y. 2014) (quotations omitted). There is no question that, under the laws of both California and New York, the Wayfarer Parties state a plausible claim for defamation per se.[7]

### 1. The Sloane Parties Made Defamatory Statements "Of and Concerning" the Wayfarer Parties

As to Baldoni, the FAC alleges that the Sloane Parties made one or more statements to third parties, including without limitation to the New York Times and other news outlets, to the effect that Baldoni is a "sexual predator" who sexually assaulted Lively (FAC ¶¶ 8, 193, 282), and that Baldoni "retaliated against Lively and others for reporting the alleged sexual misconduct including by propagating false and misleading narratives about Lively for the purpose of damaging her image and reputation." FAC ¶ 325. The FAC alleges that the Sloane Parties made further false statements in response to media inquiries concerning Lively's wrongful accumulation of power

---

[7] The Sloane Parties' attempt to invoke the fair report privilege under New York Civil Rights Law § 74 is unavailing. The purpose of Section 74 is to "avoid stifling 'an active, thriving, and untrammeled press' and to ensure that the press receive 'broad protection.'" *Ctr. For Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 331 (S.D.N.Y. 2021) (quoting *Idema v. Wagner*, 120 F. Supp. 3d 361, 365 (S.D.N.Y. 2000) (citation omitted), *aff'd*, 29 F. App'x 676 (2d Cir. 2002)). Not only are the Sloane Parties not members of the press, the FAC alleges that they were responsible for feeding the defamatory information at issue to the press. Furthermore, "the statute may not be invoked where a party maliciously institutes a judicial proceeding alleging false and defamatory charges as a vehicle to publish and disseminate those charges[.]" *RCI Hosp. Holdings, Inc. v. White*, 220 A.D.3d 430, 430 (2023) (citing *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969)).

over the production, the means by which she did so (i.e., false accusations of sexual misconduct), and the resulting turmoil. Specifically, the Sloane Parties stated to the Daily Mail, among others, that reports of a power struggle on set were: "1000 percent untrue"; "Your info is totally off"; "You have it all wrong"; "Your reporters are so wrong". FAC ¶¶ 189-190. Instead, the Sloane Parties seeded false information to cast Baldoni, rather than Lively, in a false light: "The whole cast doesn't like Justin nothing [to] do with Blake"; "They [the Wayfarer Parties] are panicking as the whole cast hates him [Baldoni]". FAC ¶ 190.

As to the other Wayfarer Parties, the FAC alleges that the Sloane Parties made one or more statements to third parties, including without limitation to the New York Times and other news outlets, to the effect that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively and others and retaliated against Lively for reporting the alleged sexual misconduct, including by propagating false and misleading narratives about Lively for the purpose of damaging her image and reputation. FAC ¶¶ 273-274, 276, 325. As alleged in the FAC, the Sloane Parties told the New York Times "a false and damning story about an insidious PR sabotage operation deployed as revenge for sexual harassment complaints, with the knowledge and intent that the newspaper would publish the false story[.]" FAC ¶ 273; *id.* ¶ 276 (the Sloane Parties propounded a false "smear campaign" narrative designed to destroy the Wayfarer Parties).

The Sloane Parties contend that the FAC fails to allege that the Sloane Parties made defamatory statements "of and concerning" the Wayfarer Parties other than Baldoni. A statement upon which a defamation claim is based must "specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1043 (1986) (contested statements must be "of and concerning" the individual, either by name (*i.e.*, referring personally to the individual), or by "clear implication"); *see also Jackson v. Mayweather*, 10 Cal. App. 5th

1240, 1259 (2017) ("The defamatory statement must specifically refer to, or be 'of [or] concerning,' the plaintiff.") (internal citations omitted). The same is true under New York law. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398–99 (2d Cir. 2006) (allegedly defamatory statements must be "of and concerning" the plaintiff); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104-05 (2d Cir. 2017) ("It is not necessary that the world should understand the libel; it is sufficient if those who know the plaintiff can make out that she is the person meant.") (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)); *see also Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 629 (E.D.N.Y. 2018) (noting that courts in the Second Circuit require a "reasonable connection" between the plaintiff and the libel) (internal quotation marks and citation omitted).

There is no question that requirement is satisfied here. As alleged in the FAC, all of the Wayfarer Parties (including those without a public profile) have become figures of infamy and derision as a result of the Sloane Parties' defamatory statements, which were widely disseminated and universally understood to refer to them. FAC ¶¶ 1-5. Furthermore, the "of and concerning" requirement is generally an issue of fact for the jury to decide, and the court may properly dismiss an action only where the libelous statement is "incapable of supporting a jury's finding" that it refers to the plaintiff. *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 234 (E.D.N.Y. 2015) (quoting *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F.Supp. 1157, 1160 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001)). This is not a situation in which a jury would be *incapable* of finding that the statements at issue refer to each of the Wayfarer Parties. Any doubts raise a question of fact for the jury and not a question of law for the Court. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343, *aff'd,* 337 Fed. Appx. 94 (2d Cir. 2009) (jury generally decides whether defamatory statement is "of and concerning" plaintiff).

21

And the Wayfarer Parties' allegations implicate the "small group exception" of the "group libel doctrine." Under the group libel doctrine, typically "a statement made about an organization is not understood to refer to any of its individual members unless that person is distinguished from other members of the group." *Three Amigos SJL Rest., Inc. v. CBS News Inc.,* 15 N.Y.S.3d 36, 41 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82 (2016). But where a statement defames all members of a small group, the "reference to the individual plaintiff reasonably follows from the statement." *Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 790 (2d Dep't 1981). Accordingly, "an individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about the group, by showing that he is a member of the group." *Id.*; *see also Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005); *Church of Scientology of California v. Flynn*, 744 F.2d 694, 697 n.5 (9th Cir. 1984); *Ball v. Taylor*, 416 F.3d 915 (8th Cir. 2005) (per curiam) (finding small group exception applied where statement defamed approximately one-hundred individuals). Here, there are seven members of the Wayfarer Parties—well below the ceiling of the group libel doctrine—and the Sloane Parties' statements defamed all of them.

### 2.    The Sloane Parties' Statements Are Not Inactionable Opinion

The Sloane Parties further contend that the defamatory statements attributed to them constitute inactionable opinion. Defs.' Br. at 7-14. They are wrong.

Under California law, in order to constitute actionable defamation, the offensive publication must consist of statements of fact, rather than opinion. *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695-96 (2012). A statement can be defamatory only if it is capable of being proved as true or false. *See Savage v. Pacific Gas & Electric Co*., 21 Cal. App. 4th 434, 445 (1993); *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970-71 (1993). "Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot

22

reasonably be interpreted as stating actual facts about an individual. Thus, rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and language used in a loose, figurative sense have all been accorded constitutional protection." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809–10 (2002).

But apparent expressions of opinion often imply an assertion of fact and are therefore actionable. *Weller v. American Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 999 (1991). Thus, a statement in the form of an opinion may be actionable if it is implied that it is based on some undisclosed defamatory facts. *Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 266 (1986); *Okun v. Superior Court*, 29 Cal. 3d 442, 451-52 (1981). The issue of whether the statement is fact or opinion is one for the jury. *Slaughter v. Friedman*, 32 Cal. 3d 149, 154 (1982). As for the court, the dispositive question is whether a reasonable fact finder could conclude that the published statements imply a provably false assertion of fact. *Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 724 (1990).

To answer that question, the court applies a "totality of the circumstances" test pursuant to which the court reviews the "language of the statement" and "the context in which the statement was made[.]" *Baker*, 42 Cal. 3d at 260-61. "[I]f a statement is 'factually specific,' 'earnest,' or 'serious' in tone, or the speaker 'represents himself as unbiased,' 'having specialized' or 'first-hand experience,' or 'havi[ing] personally witnessed . . . abhorrent behavior', this may signal [that there is a factual basis for the accusations and render the statement actionable.]" *ZL Technologies, Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (internal citations omitted). "Whether a challenged statement declares or implies a provable false assertion of fact is a question of law for the court to decide . . . unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood." *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1261 (2010) (internal citations omitted).

Courts applying New York law generally consider "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Bryan v. Richardson*, 87 N.Y.2d 46, 51 (1995) (internal quotation marks and citations omitted); *accord Celle*, 209 F.3d at 178-79. The analysis is not rigid; "[a] court must have the flexibility to consider the relevant factors and to accord each the degree of importance which the specific circumstances warrant." *Steinhilber v. Alphone*, 68 N.Y.2d 283, 291-92 (1986). "[T]he Court of Appeals in New York has consistently focused its analysis on the overall context in which the complained-of assertions were made." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000). "Context" includes not only "the immediate context in which the disputed words appear," but also the larger context in which the statements were published, including the nature of the particular forum." *Brian*, 87 N.Y.2d at 51.

If a statement is found to contain opinion, that is not the end of the inquiry. The court must then examine "whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). "The actionable element of a 'mixed opinion' is not the false opinion itself—it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Steinhilber*, 68 N.Y.2d at 290. Ultimately, "[t]he dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts about the plaintiff." *Gross v. N.Y. Times*, 82 N.Y.2d 146, 152 (1993) (alteration adopted) (internal quotation marks and citation omitted); *Restis*, F. Supp. 3d at

719 ("At bottom, the inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff.")

Here, the alleged statements are either direct statements of fact or statements that imply the existence of undisclosed facts. All are susceptible to a defamatory meaning. Notwithstanding the Sloane Parties' bizarre argument to the contrary, it is clearly a statement of fact to accuse someone of having committed sexual assault. *Buckley v. Little*, 539 F.2d 882, 894 (2d Cir. 1976) (sexual assault accusation "readily perceivable as allegations of fact susceptible to proof or disproof of falsity"). The statement referring to Baldoni as a "sexual predator" also cannot reasonably be construed as an expression of pure opinion; at a minimum, it implies a (provably false) assertion of fact and lends itself to a defamatory meaning. As alleged in the FAC, it was intended to convey that Baldoni had committed sexual assault.

The Sloane Parties' other statements about Baldoni are similarly libelous. *See* FAC ¶¶ 189-190. Publishing the statements to a reporter that "[t]he whole cast doesn't like Justin nothing [to] do with Blake" and "[t]hey [the Wayfarer Parties] are panicking as the whole cast hates him" were clearly and inarguably intended to convey undisclosed facts of a defamatory nature. FAC ¶ 190. As alleged in the FAC, it is false that any issues between Baldoni and the cast, especially in relation to the promotion of the Film, had nothing to do with Lively. FAC ¶¶ 146, 159-160. A reasonable reader would—and the Daily Mail reporter did—interpret Sloane's statements to mean that Baldoni had engaged in misconduct or had otherwise, through his own actions, caused them to turn against him. But that is neither what happened nor what is alleged in the FAC.

Indeed, the Wayfarer Parties allege that "Lively induced the other cast members to shun Baldoni, in an early attempt to give fans the impression that Baldoni had committed an egregious sin, something so egregious that no one wanted to even take photos with him or have him around." FAC ¶ 159. Prior to Lively's inducements, these same cast members "showered" "warm praise

and appreciation" on Baldoni. *Id.* One female cast member, prior to Lively's inducements, "exchanged grateful texts with Baldoni during and after her filming stint, which included a number of scenes involving intimacy[.]" *Id.* That actress "worked with Baldoni when Lively was ***not*** on the set; it was not until [she] spent substantial time with Lively during film promotions that [she] felt compelled to shun Baldoni in repudiation of her warm words." *Id.* ¶ 160.

The Sloane Parties' statements about the rest of the Wayfarer Parties are likewise false statements of fact. Specifically, the Sloane Parties made statements that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively and others and orchestrated a "smear campaign" in retaliation for Lively's purportedly protected disclosure of such conduct. FAC ¶¶ 14-15, 17, 272. The allegations in the FAC are unequivocal. None of the Wayfarer Parties engaged in any kind of misconduct towards Lively, the Wayfarer Parties did not permit or fail to prevent such misconduct, and the Wayfarer Parties did not orchestrate a "smear campaign" in retaliation for Lively's purported disclosures. As alleged in the FAC, the tidal wave of negative publicity that Lively confronted in August 2024 was the unsurprising result of tone-deaf marketing, off-putting public appearances, and the excavation by Internet sleuths of unflattering prior interviews. FAC ¶¶ 8, 10, 178-185, 279, 280-281. The Sloane Parties' statements imply that the Wayfarer Parties engaged in grossly immoral conduct to cover up even more grossly immoral conduct, and such statements resulted in the destruction of their reputations and careers, among other cataclysmic consequences. The statements cannot be—and were not—construed as mere statements of opinion or of hyperbole. They were statements of fact, and they were false. And if a court concludes that the statement could be reasonably construed as either fact or opinion, the issue should be resolved by a jury. *Good Government Group of Seal Beach, Inc. v. Superior* Court, 22 Cal. 3d 672, 680 (1978). In either event, the Motion should be denied in this respect.

### 3.    The Sloane Parties' Statements Are Not Substantially True

The Sloane Parties also urge the Court to dismiss the Wayfarer Parties' defamation claim on the grounds that the alleged statements are substantially true. Defs.' Br. at 14. It is, of course, axiomatic that "[t]ruth . . . is an absolute defense to any libel action." *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 581-582 (1996). "California law permits the defense of substantial truth and would absolve a defendant even if she cannot 'justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details . . . Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 154 (2013) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991)). The same is true under New York law. *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245-50 (2d Cir. 2017).

However, truth is a question of fact for the jury. *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465-66 (9th Cir. 1977) (concluding, in a defamation action, that there was a jury question as to whether allegedly defamatory utterances were substantially true); *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1288 (C.D. Cal. 2000) (holding that "substantial truth is a jury question" so long as "substantial truth is not evident to the court"). The only exception—when "substantial truth is . . . evident to the court"—is not remotely the case here. *D.A.R.E. America*, 101 F. Supp. 2d at 1288. Taking the allegations in the FAC as true (as the Court must on a Rule 12(b)(6) motion), the Court simply cannot conclude as a matter of law that (i) Baldoni sexually assaulted Lively; (ii) Baldoni is a sexual predator; (iii) Lively had "nothing to do" with the cast's alienation from Baldoni during the promotion of the Film; (iv) the Wayfarer Parties orchestrated a "smear campaign" in retaliation for Lively's purported disclosure that she had been sexually harassed.

All of these propositions are expressly denied by the Wayfarer Parties in the FAC, and there is extensive elaboration on the bases for their denials. The Sloane Parties' statements clearly "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Jackson*, 10 Cal. App. 5th at 1262-1263; *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934) ("a statement is only substantially true if the statement would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced."); *cf. Caro Capaital, LLC v. Koch*, 2021 WL 1595843, at *11 (S.D.N.Y. Apr. 23, 2021) (substantial truth in reference to felon's prison sentence when 78-month sentence ultimately reduced to time-served). However, this case does not present a question of "slight inaccuracies of expression" but rather of fundamentally different realities. *Korkala v. W.W. Norton & Co.*, 618 F. Supp. 152, 155 (S.D.N.Y. 1985). While the Sloane Parties appeal to Lively's allegations in her pleading, those allegations are not properly before the Court on this Motion. The Wayfarer Parties adamantly deny the veracity of the Sloane Parties' accusations in their FAC not on technical or marginal grounds but rather as flatly false. The Court is in no position to rule that the statements are substantially true based on the Wayfarer Parties' pleadings; a jury must ultimately decide truth or falsity.

### 4.    The Alleged Statements Concerning "Sexual Assault" Are Sufficiently Specific

The Sloane Parties also contend that the statements concerning "sexual assault" are insufficiently specific to defend against. Defs.' Br. at 16-17. That is in spite of the fact that, in the same Motion, they also contend that the statements are inactionable opinion and/or substantially true. Defs.' Br. at 11-16. The Federal Rules require "that each pleading be specific enough to afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself." *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 699 (S.D.N.Y. 2018) (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 445 (S.D.N.Y. 2012)). The defamation case cited by the Sloane Parties and dismissed by this honorable Court involved allegations so threadbare as to be irrelevant here.

*See Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *1 (S.D.N.Y. Dec. 30, 2020) (defamation counterclaim dismissed where pleadings consisted of general allegation that counterclaim-defendant threatened to make false statements about counterclaimant and allegation on information and belief that he did so). The Sloane Parties appear to have "confused the rules of pleading with the rules of evidence." *Semple v. Andrews*, 27 Cal. App. 2d, 228, 233 (1938) (distinguishing what a plaintiff must assert to plead a cause of action for defamation from what a plaintiff must prove at trial); *Schessler v. Keck*, 125 Cal. App. 2d 827, 835-36 (1959) (statements allegedly made "at various times and places and to various persons" sufficient to state a claim for defamation). As the court explained, "less particularity is required in the allegations of the complaint where, from the nature of the matters alleged, the adverse party has a knowledge of the facts superior to the party pleading them." *Id.*; *Okun*, 29 Cal. 3d at 458. That is clearly the case here.

The Sloane Parties also appear to confuse the applicable pleading standard. A plaintiff asserting a state-law defamation claim in federal court need only satisfy Rule 8; a state's heightened pleading requirement, such New York's, does not apply. *See Church of Scientology*, 744 F.2d at 696 n.2; *see also Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir. 2003); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925-26 (7th Cir. 2003). Thus, the Sloane Parties' citation to *BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 283 (1st Dep't 2009) is entirely inapposite because it pertains to CPLR 3016, which imposes a heightened pleading requirement that does not exist for defamation claims under the Federal Rules. *See Biro*, 883 F. Supp. 2d at 456 (defamation claims in federal court are "subject to the liberal pleading standards of Fed. R. Civ. P. 8" rather than the "particularized pleading requirements set forth in [CPLR 3016(a)]"); *see also Neal v. Asta Funding, Inc.*, No. 13 CV 2176 VB, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014); *Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 CIV. 10315 SAS, 2000 WL 351516, at *6

(S.D.N.Y. Apr. 5, 2000). The Wayfarer Parties have met their pleading burden under Rule 8 even

as the contours of the conspiracy will further come into focus through discovery.

><ins>5.</ins>    **The Wayfarer Parties Need Not Plead Special Damages Because the Sloane Parties' Statements Are Defamatory Per Se**

The Sloane Parties' argument that the Wayfarer Parties' defamation claim fails for failure

to plead special damages is unavailing because plaintiffs need not plead such damages where, as

here, the alleged statements are libelous per se. California law recognize two types of libel: libel

per se and libel per quod. *See Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 121, 1226 (2017).

A statement constitutes libel per se when it "is defamatory of the plaintiff without the necessity of

explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a;

*accord Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (2007).

> The distinction has been described as follows: "If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all. If such a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense, then (under section 45a and the cases ... which have construed it) there is a libel per se. But if the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then (under the same authorities) the libel cannot be libel per se but will be libel per quod.

*Bartholemew*, 17 Cal. App. 5th at 1226-27 (quoting *Barnes-Hind, Inc. v. Superior Court*, 181 Cal.

App. 3d 377, 386-87 (1986)). Whether a publication is libelous on its face is a question of law.

*Freeman v. Mills*, 97 Cal. App. 2d 161, 165-66 (1950). "[T]he publication is to be measured not

so much by its effect when subjected to the critical analysis of a mind trained in the law, but by

the natural and probable effect upon the mind of the average reader. A defendant is liable for what

is insinuated, as well as for what is stated explicitly." *Bartholemew*, 17 Cal. App. 5th at 1227

(citing *MacLeod v. Tribune Publishing Co.*, 52 Cal. 2d 536, 547-48 (1959)).

The same is true under New York law. A statement is "actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Sydney v. MacFadden Newspaper Pub. Corp.*, 242 N.Y. 208, 211–12 (1926); *accord Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (no need for plaintiff to allege special damages when statement is defamatory per se).

All of the Sloane Parties' alleged statements are defamatory per se. As to the statements concerning Baldoni being a "sexual predator" who committed "sexual assault," there is no question these are defamatory per se. "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind*, 181 Cal. App. 3d at 385. Sexual assault is obviously a crime, and referring to someone as a sexual predator is intended to—and does—convey an impression of criminality and malice. *See* FAC ¶ 8 ("Modern society justly reviles sexual harassers and abusers, and Lively [and her co-conspirators] knew full well that making those allegations would be a career death sentence for the Wayfarer Parties[.]") The statements concerning the rest of the cast "hating" Baldoni conveys an impression of some undisclosed "egregious sin, something so egregious that no one wanted to even take photos with him or have him around." FAC ¶ 159.

With respect to the other Wayfarer Parties, there is similarly no question that the statements at issue are defamatory per se. The crux of the accusations is that the Wayfarer Parties engaged in and/or condoned sexual misconduct and took revenge on the victim of such misconduct through a scorched earth public relations vendetta. These allegations "tend to expose [the Wayfarer Parties] to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of [them] in the minds of right-thinking persons, and to deprive [them] of friendly intercourse in society." *Sydney*, 242 at 211-12. As to IEWU and Wayfarer, it is well settled that a statement that "impugns the basic integrity of a business" is per se defamatory. *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see*

*also Rinaldi*, 42 N.Y.2d at 379 (falsely referring to a judge as incompetent and corrupt where there are "strong undertones of illegality" subjects him to disgrace and contempt and is, therefore, defamatory per se). Those are exceedingly serious accusations that tend to subject—and already have subjected—the Wayfarer Parties to reputational collapse and public derision. On the face of these allegations, the pleading of special damages is unnecessary.[8]

### 6. The Wayfarer Parties Have Pleaded Actual Malice

The Sloane Parties further contend that the Wayfarer Parties' defamation claim fails for failure to plead the requisite state of mind. Defs.' Br. at 17-18. Specifically, they argue that Baldoni is a public figure and thus cannot state a claim for defamation without plausibly alleging that the Sloane Parties made the alleged statements with actual malice. This argument fails for two reasons. First, as to Baldoni, the Wayfarer Parties have unequivocally pled facts sufficient to infer actual malice. Second, the other Wayfarer Parties are not public figures, and therefore pleading actual malice is not required to state a claim for defamation. For the purposes of this Motion alone, the Wayfarer Parties presume the application of the actual malice standard and submit its pleading burden has been satisfied.

As a matter of constitutional law, if the person defamed is a public figure, he must prove by clear and convincing evidence that the statement at issue was made with "actual malice," *i.e.*, "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 256 (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964)); *see also Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). The Supreme Court has explained that, while "the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition . . . the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious

---

[8] In the event the Court determines that any of the foregoing are not, in fact, defamatory per se, the Wayfarer Parties respectfully request the opportunity to amend their pleading so as to allege special damages.

doubts as to the truth of his publication." *Harte-Hanks Communications. Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

The FAC is replete with allegations that the Sloane Parties made the alleged defamatory statements with knowledge of their falsity or reckless disregard for their truth or falsity. *See, e.g.*, FAC ¶¶ 3-4, 6-8, 14-15, 17, 162, 187-194, 244, 246-247, 259-260, 263, 270-287, 296-298. The Sloane Parties knew that Baldoni had not sexually assaulted Lively because Lively herself did not allege that Baldoni sexually assaulted her. Indeed, in her communications with the Daily Mail reporter in August 2024, Sloane affirmed (falsely, in fact) that the issues on set had "nothing" to do with Lively. If Sloane believed that Baldoni had sexually assaulted Lively, that obviously would not be the case. The Wayfarer Parties allege that the Sloane Parties and their co-conspirators exaggerated benign interactions on set to concoct a false narrative that Lively had been sexually harassed. FAC ¶ 17. They did so, per the FAC, so that Lively could instill terror in the Wayfarer Parties and leverage it to accumulate power over the production. FAC ¶¶ 17, 175-178; *see Biro v. Conde Nast*, 963 F. Supp. 2d 255, 277 (S.D.N.Y. 2013) (citing *Kipper v. NYP Holdings Co., Inc.*, 12 N.Y.3d 348, 355 n.4 (2009)) (motive to defame plaintiff is probative of actual malice). This accumulation of power—akin to a hostile takeover—depended upon the ability to conjure ruinous allegations. FAC ¶ 296. They were never true, and the Sloane Parties knew full well they were never true. FAC ¶¶ 8, 17, 328. The depravity of their plan, which the FAC alleges they carried out, clearly constitutes actual malice.

Moreover, the Sloane Parties admittedly had in their possession materials which prove the falsity of their assertions concerning a "smear campaign." FAC ¶¶ 272-78, 283-87. Indeed, the day of Abel's termination (August 21, 2024), Sloane called Nathan and gloated that she had Nathan's communications with Abel. FAC ¶¶ 14, 238. If that were so, Sloane would clearly have known that the narrative advanced by the Lively Parties and Sloane Parties was false. Specifically, the

Wayfarer Parties had not engaged in a "smear campaign" or done any of the acts attributed to them by the Sloane Parties. FAC ¶¶ 274-78. By way of example, while the Sloane Parties provided the New York Times with text messages concerning purported allegations of sexual misconduct, she and her co-conspirators apparently omitted the subsequent message that the allegations *were not true*. FAC ¶ 162. And as for the "untraceable" smear campaign, it would have been clear to the Sloane Parties—public relations professionals—that the cause of Lively's bad press was her decision to hawk liquor and hair care products while promoting a film about domestic violence. FAC ¶¶ 179-87, 279. The notion that the backlash was actually caused by an "untraceable" smear campaign is "so inherently improbable that only a reckless person would have put [the claim] in circulation." *Church of Scientology Int'l*, 238 F.3d at 174 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). There were "obvious reasons to doubt the veracity" of these statements, which the Sloane Parties disregarded. *Id.* Taken as a whole, the FAC alleges sufficient facts to infer actual malice on the part of the Sloane Parties and the other defendants.

Finally, while the FAC satisfies the Wayfarer Parties' pleading burden under an actual malice standard, it is important to note that six of the seven Wayfarer Parties are almost certainly not public figures (i.e., Heath, Sarowitz, Abel, Nathan, IEWU, and Wayfarer). "[T]he mere involvement of a person in a matter which the media deem to be of interest to the public does not, in and of itself, require that such a person become a public figure for the purpose of a subsequent libel action." *Reader's Digest*, 37 Cal. 3d at 254 (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 453-454 (1976)); *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6, 18-19 (1st Cir. 2011) (defending oneself publicly does not forfeit status as private figure); *Coleman v. Grand*, 523 F. Supp. 3d 244, 255-57 (E.D.N.Y. 2021) (same). In any event, because the FAC satisfies the much higher burden of pleading actual malice as to all of the Wayfarer Parties, it is unnecessary to separately analyze the lesser standards.

### D.    The Wayfarer Parties Have Adequately Pleaded a Claim for Civil Extortion

As set forth above, *supra* Section IV.B, the proper law to apply in this case generally is the law of California. Here, the harm was particularly felt in the state of California, which is where nearly all of the Wayfarer Parties are domiciled and where the international film industry is focused. Under that law, the Wayfarer Parties have plainly stated a claim for civil extortion against the Sloane Parties.

The Sloane Parties attempt to argue that the extortion claim is duplicative of the defamation claim because the threats by which the Wayfarer Parties were extorted involved spreading lies that the Wayfarer Parties engaged in sexual misconduct. Defs.' Br. at 7-8. But the very criminal statute on which California's civil claim for extortion is based specifies that "[f]ear, such as will constitute extortion, may be induced by a threat of any of the following: . . . 2. To accuse the individual threatened, or a relative of his or her[s], or a member of his or her family, of a crime. 3. To expose, or to impute to him, her, or them a deformity, disgrace, or crime. 4. To expose a secret affecting him, her, or them." Cal. Pen. Code § 519. Notably, extortion lies whether these statements, which facially resemble the grounds for a defamation claim, are false *or true*. *Flatley v. Mauro*, 39 Cal. 4th 299, 330 (2006) ("Whether Flatley in fact committed any violations of these various laws [as threatened to be revealed by extorter] is irrelevant.") Furthermore, a claim for extortion does not require that the threat actually be carried out but only that the threat be made. *Id.* In other words, the facts sufficient to state a claim for extortion—such as an unconsummated threat to accuse a person of wrongdoing, whether true or false—are in some ways the inverse of a claim for defamation, which requires the actual (not merely threatened) disclosure of factually false accusations. These diametrically opposed elements cannot logically give rise to duplicative claims.

The Sloane Parties further claim that they cannot have engaged in extortion because they did not obtain property from the Wayfarer Parties by means of threats. This is false. California law

"proscribes extortion notwithstanding that the defendant ultimately obtained no money or property by means of his extortionate threats." *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. 2009).

To the extent that the Court determines that the Wayfarer Parties' factual allegations do not satisfy the *Twombly*/*Iqbal* pleading standard, the Wayfarer Parties are armed with additional facts that they will set forth should the Court grant them leave to amend. As an example, the Wayfarer Parties are reliably informed and believe that the Sloane Parties deliberately carried out the very threats that Lively used to extort control of the Film. Upon information and belief, the Sloane Parties widely disseminated false allegations that the Wayfarer Parties had engaged in or covered up sexual misconduct, just as Lively threatened she would do. Actually carrying out an extortionate threat does not eliminate liability for extortion. *Flatley*, 39 Cal. 4th at 331-32; *People v. Umana*, 138 Cal. App. 4th 625, 640 (2006) ("Although [Cal. Penal Code] section 519, subdivision 2, speaks in terms of *accusing* the [extortion] victim of a crime, there is no reasonable basis for drawing a distinction between the initial accusation of a crime and continued pursuit of a criminal charge."). The Wayfarer Parties are reliably informed that these communications began well before the premiere of the Film and the sudden downturn of Lively's public perception, and allege that the Sloane Parties did so in order to keep the Wayfarer Parties in line by instilling fear of Lively's threatened retribution. Under California law, a threat of harm by third parties constitutes extortion. *People v. Hopkins*, 105 Cal. App. 2d 708, 710 (1951). By playing the role of the "heavy" and carrying out Lively's extortionate threats, the Sloane Parties took an inexcusable part in Lively's scheme, and are therefore liable for civil extortion by conspiracy. The First Amended Complaint states a claim for civil extortion against the Sloane Parties, and the Motion should be denied or at most granted with leave to amend.

### E.    The Wayfarer Parties Have Adequately Pleaded a Claim for False Light Invasion of Privacy

For all the reasons set forth above, *supra* Section IV.B, the law of California must apply to the Wayfarer Parties' claim for false light invasion of privacy. While the Sloane Parties argue that courts of this district have applied New York law to false light claims brought in New York, those cases are distinguishable. In *DeIuliis v. Engel*, the plaintiff freely chose New York as the forum, whereas here, the Wayfarer Parties were made defendants in Lively's action before they filed their claims in the same court. *DeIuliis*, 2021 WL 4443145, at *10 ("[P]laintiff chose to sue in New York because of defendants' contacts with New York . . . ."). Similarly, in *Berwick v. New World Network Intern., Ltd.*, No. 06 CIV. 2641 JGK, 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007), "[t]he plaintiffs' relevant business dealings were in New York." *Berwick*, 2007 WL 949767, at *7-8. Here, unlike in *DeIuliis* and *Berwick*, the only substantial tie to New York that is before the Court is the fact that the Sloane Parties reside in New York. That is insufficient to overcome California's strong interest in this action, given that six of the seven Wayfarer Parties reside in California (and the seventh is a resident of Illinois, not New York, who is linked to this action through his interest in Wayfarer); that the corporate entity plaintiffs are incorporated and/or have their principal place of business in California; and that the Wayfarer Parties suffered the reputational harms and economic losses at issue primarily within the state of California. *La Luna Enters., Inc.*, 74 F. Supp. 2d at 389.

Under California law, the false light claim is not duplicative of the defamation claim. The cases that the Sloane Parties cite for this proposition are inapposite. First, *Deaton v. Napoli*, No. 17CV4592RRMGRB, 2019 WL 4736722, at *9 (E.D.N.Y. Sept. 27, 2019), does not even *mention* false light claims, but instead addresses the overlap between tortious interference and defamation. Furthermore, *Chord Assocs., LLC v. Protech 2003-D, LLC*, No. 07-CV-5138 JFB AKT, 2010 WL 3780380, at *4 (E.D.N.Y. Sept. 21, 2010), does not address *California*'s law on false light claims, but merely dismisses the claim as unavailable under New York law, adding in dicta that the same

allegations underpin both the claims for false light and defamation asserted in that case. California law, by contrast, has long recognized that the torts of false light and defamation are distinct claims with related, but separate, elements. *See, e.g.*, *Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011) ("False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the alsity of the publicized matter and the false light in which the plaintiff would be placed."); *see also Fairfield v. American Photocopy etc. Co.*, 138 Cal. App. 2d 82, 86-87 (1955) ("The right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation."). Furthermore, California courts do not dismiss false light claims as duplicative of defamation claims, but determine whether a false light claim "stands or falls" based on "whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers*, 74 Cal. App. 4th 1359, 1385 (1999); *see also Jones v. Dollar Tree Stores, Inc.*, No. CV 21-7441 PA (PVCX), 2021 WL 6496822, at *5 (C.D. Cal. Nov. 4, 2021) ("The Court finds that Plaintiff's false light claim survives the pleading stage because it is based on the same statements as the defamation claim, which claim is supported by sufficient factual allegations.") (applying California law and citing *Eisenberg*, 74 Cal. App. 4th at 1385); *Kevin Zhang Inc. v. Rozsa*, No. 2:20-CV-6247-SVW, 2021 WL 1570837, at *6 n.4 (C.D. Cal. Jan. 27, 2021) (same); *Hogan v. Weymouth*, No. CV 19-2306-MWF (AFMX), 2020 WL 8028111, at *11 (C.D. Cal. Nov. 13, 2020) (denying motion to dismiss false light claim based on same allegations as defamation claim and citing *Mayweather*, 10 Cal. App. 5th at 1264). Any overlap in the allegations underlying the claims for false light and defamation is not, as the Sloane Parties urge, a reason to dismiss the false light claim as "duplicative"; rather, it simply means that the two claims will likely rise or fall

together. *See Eisenberg*, 74 Cal. App. 4th at 1385; *Jones*, 2021 WL 6496822, at *5; *Kevin Zhang Inc.*, 2021 WL 1570837, at *6; *Hogan*, 2020 WL 8028111, at *11.

As with the defamation claim, to the extent that there exist any defects in the Wayfarer Parties' allegations as to the nature of the statements made by the Sloane Parties to others, the defects can readily be cured by amendment. Courts applying California law readily grant leave to amend claims for false light. *See, e.g.*, *Skidmore v. Regents of Univ. of California*, No. 20-CV-06415-BLF, 2021 WL 843195, at *2 (N.D. Cal. Mar. 5, 2021) (granting leave to amend false light claim even in the face of California's stringent anti-SLAPP law); *Hogan v. Weymouth*, No. CV192306MWFAFMX, 2019 WL 11055032, at *5 (C.D. Cal. Aug. 19, 2019) (granting leave to amend false light claim); *Brahmana v. Lembo*, No. C-09-00106 RMW, 2010 WL 965296, at *4 (N.D. Cal. Mar. 17, 2010) (same). For example, the Wayfarer Parties are reliably informed and believe, and based thereon can allege, that the Sloane Parties engaged in a protracted campaign by which they contacted multiple reporters, including but not only at The New York Times, to spread highly offensive falsehoods and misleading information relating not just to Baldoni, but to each of the Wayfarer Parties, and that they did so in conspiracy with each of the other defendants. Of course, because the Sloane Parties' conspiracy was secretive and carefully concealed, the evidence must necessarily emerge through the discovery process, which the Wayfarer Parties have already begun. In the meantime, and consistent with Rule 15(a)(2)'s "extremely liberal standard" for amendments, the Court should grant leave to amend to the extent it is not inclined to deny the Motion in its entirety. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. at 65 (describing Rule 15 as embracing an "extremely liberal standard" with respect to amendment).

### F.    Even If the Motion Were Granted Without Leave to Amend, Attorneys' Fees Are Not Available to the Sloane Parties Under Second Circuit Law

As set forth above, the Court should deny the Motion in its entirety, or, in the alternative, grant the Wayfarer Parties leave to amend their complaint. But even in the extremely unlikely event that the Court grants the Motion its entirety *without* leave to amend, the Sloane Parties still would not be entitled to any recovery of attorneys' fees in connection with their Motion, because the Second Circuit does not permit the application of state anti-SLAPP laws when they conflict with the Federal Rules of Civil Procedure.

As an initial matter, the Second Circuit has squarely held that California's anti-SLAPP law is inapplicable in federal court because it conflicts with Rules 12 and 56 of the Federal Rules of Civil Procedure. *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020). A state law conflicts with the Federal Rules of Civil Procedure when it "answers the same question" as one of the federal Rules. *Id.* (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015)). California's anti-SLAPP statute creates a special motion to strike that requires outright dismissal unless the plaintiff can "establish[ ] a probability that he or she will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(3). "The statute thus 'establishes the circumstances under which a court must dismiss a plaintiff's claim before trial,' a question that is already answered (differently) by Federal Rules 12 and 56." *La Liberte*, 966 F.3d at 87 (quoting *Abbas*, 783 F.3d at 1333-34). The pleading burden under Rule 12(b)(6) is to allege "enough facts to state a claim to relief that is plausible on its face" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and it "does not impose a probability requirement at the pleading stage." *Id.* at 556. "California's anti-SLAPP statute, however, 'abrogates that entitlement . . . by requiring the plaintiff to establish that success is not merely plausible but probable.'" *La Liberte*, 966 F.3d at 87 (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1353 (11th Cir. 2018)). Similarly, Rule 56 of the Federal Rules of Civil Procedure permits summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Where Rule 56 allows a plaintiff to proceed to trial by identifying *any* genuine dispute of material fact, California's anti-SLAPP statute "nullif[ies] that entitlement by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor." *La Liberte*, 966 F.3d at 88 (quoting *Carbone*, 910 F.3d at 1353). Accordingly, as the Second Circuit has expressly held, California's anti-SLAPP statute cannot apply in federal court. *Id.* at 88.

The Second Circuit has not yet directly addressed the question of whether New York's anti-SLAPP law applies in federal court. Still, federal district courts in the Second Circuit, including courts in this district, overwhelmingly agree that the holding of *La Liberte* similarly precludes the application in federal court of New York's anti-SLAPP law, which, like California's, creates a special procedure mechanism (N.Y. C.P.L.R. § 3211(g), (h)) through which defendants can invoke the anti-SLAPP law in a motion to dismiss. *See, e.g.*, *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure."); *Carroll v. Trump*, 590 F. Supp. 3d 575, 583-85 (S.D.N.Y. 2022); *Maran v. Legal Aid Society*, 605 F. Supp. 3d 547, 567 n.11 (S.D.N.Y. 2022); *Prince v. Intercept*, No. 21-CV-10075 (LAP), 2022 WL 5243417, at *18 (S.D.N.Y. Oct. 6, 2022); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 702 (S.D.N.Y. 2022), *aff'd sub nom. Kesner v. Dow Jones & Co., Inc.*, No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023).

Other courts, such as this honorable Court, have analyzed the New York anti-SLAPP law's fee-shifting provision as a sanction that conflicts with Rule 11 of the Federal Rules of Civil Procedure. *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) (Liman, J.). As noted in *Brady*, "Rule 11 permits a court to impose sanctions only after the adverse party has been given notice and a reasonable opportunity to respond. . . . [New

York's] anti-SLAPP provision has no such requirement. A party may seek sanctions without providing any advance notice to the adverse party." *Id.* at *11. Furthermore, "under Rule 11, sanctions are permissive," while "[u]nder the anti-SLAPP provision . . . sanctions are mandatory." *Id.*

The sole federal decision on which the Sloane Parties can rely in support of their argument for an award of attorneys' fees in the event of dismissal without leave to amend is *Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277, at *11-14 (S.D.N.Y. Nov. 26, 2024). In *Bobulinski*, Judge Oetken found that the defendant's entitlement to an award of attorney's fees under New York's anti-SLAPP law is substantive and not procedural, and therefore held that applying the state law in federal court would in that respect be consistent with *La Liberte*. Importantly, however, Judge Oetken's ruling acknowledges that his decision in *Bobulinski* conflicts with the decisions of other judges in the Southern District of New York that have found that the New York anti-SLAPP law's fee-shifting provision does not apply in federal court, including this Court's holding in *Brady*. *Bobulinski*, 2024 WL 4893277, at *17 n.24.

In short, it is settled law in the Second Circuit that California's anti-SLAPP statute is inapplicable in federal court, and while the Second Circuit has not yet expressly taken up the same question as to New York's anti-SLAPP law, virtually all of the courts in the Southern District of New York that have done so have found that *La Liberte* applies with equal force to bar the application of that law in federal court because it imposes a burden on plaintiffs that is inconsistent with the Federal Rules of Civil Procedure.

### G. The Motion to Strike Should Be Denied, or, at Most, Granted with Leave to Amend

The timeline contained in Exhibit A was attached to the First Amended Complaint in an effort to provide a complete and chronological account of the facts underpinning the Wayfarer Parties' claims and to incorporate as much evidence as was then known in support of those claims.

Nevertheless, the Wayfarer Parties acknowledge that the mountain of evidence in support of their claims must seem overwhelming to the Sloane Parties. Should the Court grant the motion to strike with leave to amend, the Wayfarer Parties will undertake to judiciously incorporate the allegations and evidence from Exhibit A into the body of the complaint, in the hope that the Sloane Parties will then find it less burdensome to mount a defense to the Wayfarer Parties' allegations—if they can.

## V.    <u>CONCLUSION</u>

For all the reasons set forth herein and to be presented at oral argument should the Court order it, the Wayfarer Parties respectfully urge that the Court deny the Motion in its entirety. In the alternative, should the Court be inclined to grant the Motion in whole or in part, the Wayfarer Parties respectfully request that they be granted leave to amend their complaint as stated herein.[9]


Dated:  March 6, 2025
        New York, NY

Respectfully submitted,

**MEISTER SEELIG & FEIN PLLC**


By:____*/s/ Mitchell Schuster*_____
        Mitchell Schuster
        Kevin Fritz
        125 Park Avenue, 7th Floor
        New York, NY 10017
        Tel: (212) 655-3500
        Email: ms@msf-law.com
                kaf@msf-law.com

---

[9] Defendant The New York Times has filed a simultaneously pending motion to dismiss (Dkt. No. 105), and there remains a possibility that Lively and/or Reynolds may yet move to dismiss. Without conceding the merits of this Motion or any other pending or potential motion to dismiss, the Wayfarer Parties propose that the Court set a deadline for amending the complaint that falls after all pending or potential motions to dismiss are decided, to allow the Wayfarer Parties to correct any identified defects at once and to avoid burdening the Court's docket with seriatim amendments.

Dated:  March 6, 2025
         Los Angeles, CA

**LINER FREEDMAN TAITELMAN
+ COOLEY**

By:_____*/s/ Bryan Freedman*_____
         Bryan J. Freedman*
         Miles M. Cooley*
         Theresa M Troupson*
         Summer Benson*
         Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
         mcooley@lftcllp.com
         ttroupson@lftcllp.com
         sbenson@lftcllp.com
         jsunshine@lftcllp.com

*\* admitted pro hac vice*