**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY, | |
| Plaintiff, | |
| v. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al., | |
| Defendants. | |
| WAYFARER STUDIOS LLC, et al., | |
| Plaintiffs, | |
| v. | No. 25-cv-449 (LJL) (member case) |
| BLAKE LIVELY, et al., | |
| Defendants. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RYAN REYNOLDS'**</u>
<u>**MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Ryan Reynolds*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.      THE CLAIMS AGAINST MR. REYNOLDS FAIL UNDER BOTH NEW YORK AND CALIFORNIA LAW ................................................................................... 5

II.     THE COURT SHOULD DISMISS ALL OF THE SIX CAUSES OF ACTION AS TO MR. REYNOLDS WITH PREJUDICE. ...................................................... 6

     A.     The FAC Fails To State A Claim For Defamation Against Mr. Reynolds. ............ 6

          1.     The Wayfarer Complaint Does Not Sufficiently Identify Any Defamatory Statements Published By Mr. Reynolds. ...................... 7

          2.     The "Predator Statements" Are Not Defamatory Because They Are Constitutionally Protected Opinion .................................................. 9

     B.     The Wayfarer Complaint Fails To State A Claim Of False Light. ....................... 18

     C.     The Wayfarer Complaint Fails To State A Claim For Civil Extortion. ................ 19

     D.     The Intentional Interference Claims Must Be Dismissed. ................................... 20

          1.     The Tortious Interference Claims Are Duplicative of the Defamation Claim .................................................................................... 20

          2.     The FAC Fails to State a Claim for Intentional Interference with Contract. ................................................................................................ 20

          3.     The FAC Fails to State a Claim for Intentional Interference with Prospective Economic Advantage. ...................................................... 22

          4.     The FAC Fails To State A Claim For Negligent Interference. ......................... 23

          5.     The FAC Fails to Allege Proximate Cause. ...................................... 23

          6.     The Wayfarer Parties Have Failed to Allege any Damages. ........................... 24

     E.     The Wayfarer Complaint Fails To Allege Conspiracy Liability. ........................ 25

III.    THE COURT SHOULD AWARD MR. REYNOLDS ATTORNEY'S FEES PURSUANT TO NEW YORK'S ANTI-SLAPP LAW. ............................................... 27

IV.    THE COURT SHOULD STRIKE EXHIBIT A TO THE WAYFARER COMPLAINT OR, AT A MINIMUM, DISREGARD IT ........................................... 29

CONCLUSION .................................................................................................................. 29

## **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975)....................................................................................................28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................24

*Atl. Int'l Movers, LLC v. Ocean World Lines, Inc.*,
    914 F. Supp. 2d 267 (E.D.N.Y. 2012) .....................................................................26

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................................12

*Bank of New York Mellon v. DeSelms*,
    No. 18-CV-1044-PSG, 2019 WL 8198310 (C.D. Cal. Mar. 25, 2019) ............19, 20

*Bernard v. Care Design N.Y.*,
    No. 20-CV-1527 (LJL), 2022 WL 4484556 (S.D.N.Y. Sept. 27, 2022) ..............7, 9

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)......................................................................12

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)................................................................16, 17

*Bobulinski v. Tarlov*,
    No. 24-CV-2349 (JPO), 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ...........27, 28

*Brady v. NYP Holdings, Inc.*,
    No. 21-CV-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) .......10, 11, 18, 28

*Brimelow v. New York Times Co.*,
    No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)......................................17

*Brooks v. Physicians Clinical Lab'y, Inc.*,
    No. 99-cv-21550-WBS, 2000 WL 336546 (E.D. Cal. Mar. 20, 2000)....................18

*Cambridge Cap. LLC v. Ruby Has LLC*,
    565 F. Supp. 3d 420 (S.D.N.Y. 2021)......................................................................22

*Caro Cap., LLC v. Koch*,
    No. 20-CV-6153 (LJL), 2021 WL 1595843 (S.D.N.Y. Apr. 23, 2021) ..................14

*Carpenter v. Thrifty Auto Sales*,
    No. 09-CV-02233 (DMG), 2010 WL 11595928 (C.D. Cal. July 30, 2010)............25

*Carvel Corp. v. Noonan*,
　818 N.E.2d 1100 (N.Y. 2004) ................................................................................23

*Casmento v. Volmar Constr., Inc.*,
　No. 20-CV-944 (LJL), 2022 WL 17666390 (S.D.N.Y. Dec. 14, 2022) ................................29

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
　364 F. Supp. 3d 253 (S.D.N.Y.) ...........................................................................15

*Coleman v. Grand*,
　523 F. Supp. 3d 244 (E.D.N.Y. 2021) ....................................................................28

*Collins v. Travers Fine Jewels Inc.*,
　No. 16-CV-03780 (SN), 2017 WL 1184305 (S.D.N.Y. Mar. 29, 2017) .....................7, 15, 16

*Comfort Inn Oceanside v. Hertz Corp.*,
　No. 11-CV-1534 (JG) (JMA), 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) ........................24

*Cortes v. Twenty-First Century Fox Am., Inc.*,
　285 F. Supp. 3d 629 (S.D.N.Y. 2018) ....................................................................25

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
　551 F. Supp. 3d 320 (S.D.N.Y. 2021) ....................................................................12

*Dellaportas v. Shahin*,
　No. 24-CV-0793 (VM), 2024 WL 3729183 (S.D.N.Y. Aug. 7, 2024) ...............................20

*Douglas v. Huffman*,
　No. 2:16-CV-02953-TLN-AC, 2017 WL 2535387 (E.D. Cal. June 12, 2017) ........................7

*Ecogensus LLC v. Pacella*,
　No. 20-CV-3629 (VSB), 2022 WL 874727 (S.D.N.Y. Mar. 24, 2022) ...............................19

*Elias v. Spotify USA Inc.*,
　No. CV 20-8530-JFW (ASX), 2020 WL 11884714 (C.D. Cal. Nov. 24, 2020) .......................9

*Elliot v. Donegan*,
　469 F. Supp. 3d 40 (E.D.N.Y. 2020) ......................................................................15

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
　No. 19-CV-10769 (LJL), 2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) ..........................7, 12

*Fellows v. Nat'l Enquirer, Inc.*,
　42 Cal. 3d 234 (1986) ......................................................................................19

*Fieger v. Pitney Bowes Credit Corp.*,
　251 F.3d 386 (2d Cir. 2001) ...............................................................................18

*Friedman v. Coldwater Creek, Inc.*,
    551 F. Supp. 2d 164 (S.D.N.Y. 2008)....................................................................................23

*Fuhrman v. Cal. Satellite Sys.*,
    179 Cal. App. 3d 408 (1986) .............................................................................................19

*Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*,
    95 Cal. App. 4th 1249 (Cal. Ct. App. 2002) ......................................................................22

*Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA*,
    698 F. Supp. 3d 663 (S.D.N.Y. 2023)...........................................................................20, 21

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..............................................................................................................9

*Gilani v. Teneo, Inc.*,
    No. 20-CV-1785 (CS), 2022 WL 4593040 (S.D.N.Y. Sept. 30, 2022)................................29

*Greer v. Fox Corp.*,
    No. 20-CV-5484-LTS-SDA, 2022 WL 4093155 (S.D.N.Y. Sept. 7, 2022)............................9

*Guccione v. Hustler Mag., Inc.*,
    800 F.2d 298 (2d Cir. 1986)................................................................................................14

*Guzik v. King*,
    No. A115625, 2009 WL 497663 (Cal. App. Ct. Feb. 26, 2009)..........................................10

*Henry v. Fox News Network LLC*,
    629 F. Supp. 3d 136 (S.D.N.Y. 2022)................................................................................21

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ................................................................................................9

*Higgins v. 120 Riverside Boulevard at Trump Place Condo.*,
    No. 21-CV-4203 (LJL), 2022 WL 3920044 (S.D.N.Y. Aug. 31, 2022)................................10

*Intermarketing Media, LLC v. Barlow*,
    No. 8:20-CV-00889, 2021 WL 5990190 (C.D. Cal. May 4, 2021) .......................................19

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    470 P.3d 571 (Cal. 2020) ....................................................................................................20

*Jiajia Luo v. Sogou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020)...................................................................................5

*Kapellas v. Kofman*,
    1 Cal. 3d 20 (1969) .............................................................................................................19

*Kashef v. BNP Paribas SA*,
    442 F. Supp. 3d 809 (S.D.N.Y. 2020) ........................................................................... 6

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ................................................................................... 18, 21

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018) ......................................................................... 23

*Lombard v. Econ. Dev. Admin. of Puerto Rico*,
    No. 94-CV-1050, 1995 WL 447651 (S.D.N.Y. July 27, 1995) ...................................... 5

*Manolis v. Brecher*,
    No. 11 CV-2750 (RMB) (HBP), 2012 WL 527450 (S.D.N.Y. Feb. 16, 2012) ............. 25

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) ......................................................................... 25

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
    No. 06-CV7541 (PJH), 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) .......................... 25

*Oram v. SoulCycle LLC*,
    979 F. Supp. 2d 498 (S.D.N.Y. 2013) ......................................................................... 29

*Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007) .................................................................... 21, 22

*Penrose Hill, Ltd. v. Mabray*,
    479 F. Supp. 3d 840 (N.D. Cal. 2020) ......................................................................... 16

*Pride Techs., LLC v. Khublall*,
    No. 21-2225, 2022 WL 17587755 (2d Cir. Dec. 13, 2022) .......................................... 24

*Reeves v. Associated Newspapers, Ltd.*,
    218 N.Y.S.3d 19 (App. Div. 1st Dep't 2024) ............................................................... 27

*In re Refco Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ......................................................................... 26

*Renxiong Huang v. Minghui.org*,
    No. 17-cv-5582 (ER), 2019 WL 2525416 (S.D.N.Y. June 19, 2019) ........................... 18

*Republican Nat'l Comm. v. Google, LLC*,
    No. 2:22-cv-01904-DJC-JDP, 2024 WL 3595538 (E.D. Cal. Jul. 31, 2024) ............... 25

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ....................................................................... 17

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
No. 17-CV-02824-JST, 2023 WL 3568077 (N.D. Cal. Apr. 21, 2023) ..................................15

*Rosa v. Eaton*,
No. 23 CIV. 6087 (DEH), 2024 WL 3161853 (S.D.N.Y. June 25, 2024)....................9, 10, 11

*Silva v. Hearst Corp.*,
No. 97-cv-4142, 1997 WL 33798080 (C.D. Cal. Aug. 22, 1997) ..........................................19

*Soter Techs., LLC v. IP Video Corp.*,
523 F. Supp. 3d 389 (S.D.N.Y. 2021)...................................................................................16

*Sotheby's, Inc. v. Stone*,
388 F. Supp. 3d 265 (S.D.N.Y. 2019).....................................................................................24

*Star Funding, Inc. v. Vault Mins., LLC*,
No. 15-CV-03026 (GBD), 2016 WL 10952230 (S.D.N.Y. Sept. 2, 2016) ............................27

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
374 F.3d 158 (2d Cir. 2004)....................................................................................................24

*SVGRP LLC v. Sowell Fin. Servs., LLC*,
No. 5:16-CV-07302-HRL, 2017 WL 1383735 (N.D. Cal. Apr. 18, 2017)...............................7

*Tagliaferri v. Szulik*,
No. 15 CIV. 2685 (LGS), 2016 WL 3023327 (S.D.N.Y. May 25, 2016) ...............................10

*Tannerite Sports, LLC v. NBCUniversal News Grp., a Division of NBCUniversal
Media, LLC*, 864 F.3d 236 (2d Cir. 2017) ........................................................................11, 12

*Toretto v. Donnelley Fin. Sols., Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022)....................................................................................5, 6

*Tull v. Higgins*,
Case No. 21-cv-01566, 2021 WL 6116971 (N.D. Cal. Dec. 27, 2021)...................................17

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
455 F. App'x 102 (2d Cir. 2012) .............................................................................................24

*Wade Park Land Holdings, LLC v. Kalikow*,
589 F. Supp. 3d 335 (S.D.N.Y. 2022).....................................................................................23

*Wade Park Land Holdings, LLC v. Kalikow*,
No. 21-CV-1657 (LJL), 2023 WL 2614243 (S.D.N.Y. Mar. 23, 2023)..................................29

*Watson v. NY Doe 1*,
No. 19-CV-533 (JGK), 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023)......................................28

*Weber v. Multimedia Ent., Inc.*,
    No. 97 CIV. 0682 (JGK), 2000 WL 526726 (S.D.N.Y. May 2, 2000)....................................14

*Wexler v. Allegion (UK) Ltd.*,
    374 F. Supp. 3d 302 (S.D.N.Y. 2019)...................................................................................10

*Yukos Capital S.A.R.L v. Feldman*,
    No. 15-cv-4964 (LAK), 2016 WL 183360 (S.D.N.Y. Jan. 11, 2016) .......................................8

**Statutes**

Cal. Code. Civ. P. § 340(c) ...............................................................................................8

N.Y. C.P.L.R. § 215(3) ......................................................................................................8

N.Y. Civ. Rights L. § 70-a(1) .....................................................................................27, 28

N.Y. Exec. L. § 297(10).....................................................................................................29

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................5

Fed. R. Civ. P. 12(f) ..........................................................................................................29

Fed. R. Civ. P. 54(d)(2).......................................................................................................29

# INTRODUCTION[1]

Blake Lively sued Jamey Heath, Justin Baldoni, It Ends With Us Movie LLC, Jennifer Abel, Melissa Nathan, Wayfarer Studios LLC, and Steve Sarowitz (the "Wayfarer Parties") after they collectively launched a retaliatory "social manipulation" campaign to "destroy" and "bury" her because she privately spoke up about sexual harassment and inappropriate conduct that she and others experienced on the set of the film *It Ends With Us* (the "Film"). So what does Ryan Reynolds have to do with that, legally speaking, other than being a supportive spouse who has witnessed firsthand the emotional, reputational, and financial devastation Ms. Lively has suffered? ***Nothing.*** Mr. Reynolds is a defendant in this action for one reason, and one reason only: because billionaire Plaintiff Steve Sarowitz promised to spend up to $100 million to "ruin" Ms. Lively and Mr. Reynolds. The First Amended Complaint (ECF No. 50[2] ("FAC" or "Wayfarer Complaint")) that Sarowitz and his co-Plaintiffs filed seeks to fulfill that promise by polluting this Court's docket with hundreds of paragraphs of clickbait, designed for an audience other than this Court, with virtually no bearing on cognizable legal claims.

The Wayfarer Parties have described the FAC as their (most recent) attempt to put "***all*** the evidence before the Court—and the public." ¶ 19 (emphasis in original). That is a damning concession given the lack of ***any actual evidence*** supporting any legally cognizable claim against Mr. Reynolds. The Wayfarer Parties' so-called "receipts" include annotated excerpts—***many*** with heavy redactions made by some unidentified person—of emails, text messages, videos, and photographs, such as large colored photographs comparing Mr. Reynolds' long hair style in a

---

[1] Pursuant to Paragraph 2(I) of the Court's Individual Rules, the parties have agreed to the following page limitations for the briefing on this motion: 30 pages each for the briefs in support of and in opposition to the motion, and 15 pages for the reply brief.

[2] Unless otherwise indicated, ECF citations refer to the docket in No. 24-cv-10049, and pincites refer to the ECF pagination rather than the internal PDF pagination. All allegations referencing paragraph numbers (¶) are to the FAC unless indicated otherwise.

movie with Mr. Baldoni's long hair style at some point in his real life. But the FAC is a pleading, not a gossip rag, and these so-called "receipts" fail to establish the requisite elements of *a single one* of the many causes of action alleged against Mr. Reynolds.

The Wayfarer Parties attempt (but fail) to assert six causes of action as to Mr. Reynolds. Each fails to plead facts sufficient to establish a *prima facie* case as a matter of law. For example, the Plaintiffs **collectively** assert a claim for defamation ***without pleading a single complete statement, or identifying the time or place of such statement, nor can they because no such defamatory statement exists***. Further, the entirety of Plaintiffs' defamation claim appears to be based on two times that Mr. Reynolds allegedly called Mr. Baldoni a "predator." But, the FAC alleges *no plausible facts* that suggest Mr. Reynolds *did not believe this comment to be true*; instead, the relevant FAC allegations suggest that Mr. Reynolds genuinely, perhaps passionately, believes that Mr. Baldoni's behavior *is* reflective of a "predator." Even if the FAC plausibly alleged that Mr. Reynolds called Mr. Baldoni a "predator" while believing the opposite, which it does not, the law establishes that calling someone a "predator" amounts to constitutionally protected opinion. And the FAC's thin-skinned outrage over a movie character, the satirical "woke" Nicepool, does not even pretend to be tied to any actual legal claims—instead, it falls into the FAC's general allegation of "hurt feelings" (¶ 329), which in reality is nothing more than a desperate effort to advance the same curated "bully" image that the Wayfarer Parties created and disseminated in the retaliation campaign they launched against Ms. Lively in August of 2024.

All the other claims fail for similar reasons. The Wayfarer Parties say that Mr. Reynolds extorted them, but fail to allege that he received any money or property. They claim he interfered with a contract without identifying what that contract is, what provisions were allegedly breached, or even which of them were parties to it. They assert $400 million in damages without explaining

anything about who suffered that loss, in what proportion, as a result of which claims, or what proximately caused such losses. The FAC is long on hyperbole, prose, and "claims," but devoid of any facts necessary to state ones recognized by law. It is, in essence, a burn book filled with grievances attempting to shame Mr. Reynolds for being the kind of man who is "confident enough to listen" to the woman in his life and to hold her "anguish and actually" stand with her.[3] The FAC is, in sum, a textbook retaliatory SLAPP suit, and it should be dismissed with prejudice.

## **BACKGROUND**

The Wayfarer Parties have asserted a grab-bag of claims against Mr. Reynolds in their FAC, including: (1) Civil Extortion (¶¶ 316-23 ("Extortion Claim")); (2) Defamation (¶¶ 324-31 ("Defamation Claim")); (3) False Light Invasion of Privacy (¶¶ 332-39 ("False Light Claim")); (4) Intentional Interference with Contractual Relations (¶¶ 347-55); (5) Intentional Interference with Prospective Economic Advantage (¶¶ 356-65) ((4) and (5) together, "Intentional Interference Claims"); and (6) Negligent Interference with Prospective Economic Advantage (¶¶ 366-74 ("Negligent Interference Claim")). The Wayfarer Parties claim that they have suffered no "less than $400,000,000" in compensatory damages, plus "mental pain and anguish and severe and serious emotional distress," not to mention "hurt feelings" (¶ 329), for which they posit they deserve additional compensation. FAC Prayer for Relief.

Despite its length, the FAC alleges only a few, isolated acts by Mr. Reynolds. With respect to the Defamation Claim, the FAC does not plead a single complete statement published by Mr. Reynolds. The only hint about the purported statements that are alleged to form the basis of the defamation claim is the following assertion in ¶ 325:

---

[3] Justin Baldoni, Why I'm Done Trying to be "Man Enough," TED, at 13:20 (Nov. 2017), https://www.ted.com/talks/justin_baldoni_why_i_m_done_trying_to_be_man_enough?subtitle=en.

> The Lively Parties made one or more statements to persons other than the Wayfarer Parties, including without limitation to the *New York Times*, to the effect that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively and others, and that the Wayfarer Parties retaliated against Lively and others for reporting the alleged sexual misconduct including by propagating false and misleading narratives about Lively for the purpose of damaging her image and reputation.

Only two allegations in the FAC even generously match that description with respect to statements purportedly published by Mr. Reynolds:

- "Her publicist, Leslie Sloane ('Sloane'), went so far as to propagate malicious stories *portraying Baldoni as a sexual predator (a term Lively's husband, Ryan Reynolds, also used to describe Baldoni when he called Baldoni's own agent)*" (¶ 8) ("Agent Statement").

- "Baldoni later received word that, during the premiere of his movie *Deadpool & Wolverine, Reynolds approached Baldoni's agency, namely, an executive at WME, and expressed his deep disdain for Baldoni, suggesting the agency was working with a 'sexual predator'* (a phrase that uncoincidentally later appeared in the press) and, at a later date, demanded that the agent 'drop' Baldoni" (¶ 162) ("Executive Statement")

(all emphases added) (together, the "Predator Statements").

Apart from those two statements, the totality of the FAC's allegations against Mr. Reynolds are that Mr. Reynolds: (1) demanded that the Wayfarer Parties "publicly apologize for so-called mistakes during production" of the Film (¶¶ 16, 250); (2) was present during a meeting at the apartment that he shares with Ms. Lively at which he "praise[d]" Ms. Lively's version of a scene in Mr. Baldoni's presence (¶ 41); (3) allegedly contributed some writing of his own to the script (¶ 44); (4) admonished Mr. Baldoni for asking about Ms. Lively's weight and demanded that a scene be removed from the film (¶ 49); (5) attended a meeting with Ms. Lively to address her allegations of sexual harassment on set and demanded that Mr. Baldoni apologize for his conduct (¶¶ 128-29); (6) unfollowed Mr. Baldoni on social media (¶ 158); and (7) included the "Nicepool" character in *Deadpool and Wolverine* that the FAC alleges was meant to satirize Mr. Baldoni's persona as a "woke" feminist (¶ 164).

4

## LEGAL STANDARD

"In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 405 (S.D.N.Y. 2020) (cleaned up). However, "[t]his requirement 'is inapplicable to legal conclusions,'" and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint must offer more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement' in order to survive dismissal." *Id.* at 405-06 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## ARGUMENT

### I.    THE CLAIMS AGAINST MR. REYNOLDS FAIL UNDER BOTH NEW YORK AND CALIFORNIA LAW.

While the Wayfarer Parties appear to agree with Ms. Lively that California law applies to the allegations in the case *she filed* (FAC at 211 n.27), that does not answer what law applies to the Wayfarer Parties' claims against Mr. Reynolds. The choice of law may vary by defendant, and also by specific claim even against the same party. *See, e.g.*, *Lombard v. Econ. Dev. Admin. of Puerto Rico*, No. 94-CV-1050, 1995 WL 447651, at *4 (S.D.N.Y. July 27, 1995) ("Under both California and New York conflicts rules, a different determination properly is made for each defendant and each claim"). To the extent that there is no conflict between California and New York law with respect to the Wayfarer Parties' claims against Mr. Reynolds, the Court "may simply apply New York law." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 586 (S.D.N.Y. 2022). To the extent there *is* a conflict—as there may be with respect to the Extortion, False Light, and Negligent Interference Claims—New York law applies to the claims against Mr.

5

Reynolds, because New York is "the jurisdiction having the greatest interest" in those claims given the way the Wayfarer Parties pled the claims against him in the FAC. *Id.* at 589. The FAC's allegations as to Mr. Reynolds focus solely on conduct that occurred in New York while he resided in that state. *See id*. (New York's "interest analysis" focuses on parties' domiciles and the locus of the tort and applies New York law when complaint contains "no factual allegations linking" conduct "with any other state"); ¶¶ 127-129 (meeting at New York apartment); ¶ 162 (conversation with WME executive at premiere in New York City); ¶ 308 (Mr. Reynolds' residence). Where, as here, Mr. Reynolds' alleged torts are "conduct-regulating" rather than "loss-allocating," "the law of the state where the conduct occurred will typically apply." *Kashef v. BNP Paribas SA*, 442 F. Supp. 3d 809, 822 (S.D.N.Y. 2020) (citation omitted). Further, unlike Ms. Lively, Mr. Reynolds was never an employee of Wayfarer Studios, nor did Mr. Reynolds ever have (unlike Ms. Lively) any contractual relationship with the Wayfarer Parties (and therefore no contractual choice-of-law provision to apply). As set forth below, however, each of the claims fail under both New York and California law, and therefore the FAC should be dismissed with prejudice against Mr. Reynolds.

## II.   THE COURT SHOULD DISMISS ALL OF THE SIX CAUSES OF ACTION AS TO MR. REYNOLDS WITH PREJUDICE.

### A.  The FAC Fails To State A Claim For Defamation Against Mr. Reynolds.

The Defamation Claim fails as a matter of law. It is fatally deficient because the FAC does not identify a single allegedly defamatory statement published by Mr. Reynolds,[4] including either of the Predator Statements. *Infra* § II(A)(1). Moreover, to state a claim for slander, a plaintiff must plead "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker,

---

[4] Mr. Reynolds joins the argument in the Sloane and NYT MTDs that the FAC must be dismissed for impermissible group pleading. ECF No. 87 at 12-14; ECF No. 106 at 17-18.

(vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege."
*Bernard v. Care Design N.Y.*, No. 20-CV-1527 (LJL), 2022 WL 4484556, at *14 (S.D.N.Y. Sept.
27, 2022) (cleaned up); *accord SVGRP LLC v. Sowell Fin. Servs., LLC*, No. 5:16-CV-07302-HRL,
2017 WL 1383735, at *4 (N.D. Cal. Apr. 18, 2017).[5] The FAC fails to plead the claim in virtually
every respect.

   1.  <u>The Wayfarer Complaint Does Not Sufficiently Identify Any Defamatory Statements
       Published By Mr. Reynolds.</u>

   The Court should dismiss the Defamation Claim as to Mr. Reynolds because the FAC does
not include allegations "specific enough to afford" him "'sufficient notice of the communications
complained of to enable him to defend himself.'" *Collins v. Travers Fine Jewels Inc.*, No. 16-CV-
03780 (SN), 2017 WL 1184305, at *2 (S.D.N.Y. Mar. 29, 2017); *see Evliyaoglu Tekstil A.S. v.
Turko Textile LLC*, No. 19-CV-10769 (LJL), 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020)
("A long line of cases in this District holds that a defamation claim 'is only sufficient if it
adequately identifies 'the purported communication, and an indication of who made the
communication, when it was made, and to whom it was communicated.'"" (citing cases).[6] As this
Court has noted, "it is only by pleading the substance of the purported communication that a
defendant can challenge and, upon a motion, the court can determine the essential elements of a
defamation claim under New York law, including: whether the statement was false; whether it was
capable of defamatory meaning; and whether it was 'of and concerning' the plaintiff[.]" *Evliyaoglu
Tekstil A*, 2020 WL 7774377, at *3 (internal citations omitted) (dismissing defamation
counterclaim).

---

[5] The Court must analyze the "defamation" claim under the rubric of slander because the FAC
alleges only oral statements as to Mr. Reynolds. *Bernard v. Care Design N.Y.*, No. 20-cv-1527
(LJL), 2022 WL 4484556, at *14 (S.D.N.Y. Sept. 27, 2022).
[6] *Accord Douglas v. Huffman*, No. 2:16-CV-02953-TLN-AC, 2017 WL 2535387, at *2 (E.D. Cal.
June 12, 2017), *report and recommendation adopted*, 2017 WL 3282857 (E.D. Cal. Aug. 2, 2017).

The FAC fails to sufficiently plead the substance of the Predator Statements, which are the only ones relevant to the Defamation Claim as to Mr. Reynolds. As to the Agent Statement, the FAC does not plead what Mr. Reynolds said, when he said it, or any of the context surrounding the conversation during which he purportedly uttered the Agent Statement. *See* ¶ 8 (stating only that Mr. Reynolds "used" the term "sexual predator" to "describe" Mr. Baldoni during a phone call with Mr. Baldoni's agent). The absence of these details makes it impossible, for example, to determine whether this statement falls within the applicable one-year statute of limitations (under both New York and California law) for defamation.[7] The sole allegation as to the Executive Statement provides only slightly more detail, namely that Mr. Reynolds and an unnamed executive at WME had a conversation during a movie premiere about Mr. Reynolds' "deep disdain for Baldoni, suggesting the agency was working with a 'sexual predator.'" ¶ 162. The FAC does not allege what precise term Mr. Reynolds used in this alleged ***suggestion***, the sentence in which he allegedly suggested it, or any information about the context of the conversations (other than that one of them was about how much Mr. Reynolds dislikes him for having sexually harassed his wife). Such barebones pleadings fail to satisfy Rule 8 and warrant dismissal of a slander claim. *Yukos Capital S.A.R.L v. Feldman*, No. 15-cv-4964 (LAK), 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) (dismissal for failing "adequately to identify the makers of the alleged statements or either the time when or the third parties to whom the allegedly defamatory statements allegedly were published"); *see also Greer v. Fox Corp.*, No. 20-CV-5484-LTS-SDA, 2022 WL 4093155, at *7 (S.D.N.Y. Sept. 7, 2022) (dismissal with prejudice for "nebulous" claim of defamation

---

[7] One thing that *is* clear is that any defamation liability must be premised on statements made on or after January 17, 2024. Under both New York and California law, the statute of limitations for a defamation claim is one year. Cal. Code. Civ. P. § 340(c); N.Y. C.P.L.R. § 215(3); *see* No. 25-cv-449, ECF No. 1 (initial complaint filed January 16, 2025).

"wholly lacking in specificity"); *Elias v. Spotify USA Inc.*, No. CV 20-8530-JFW (ASX), 2020 WL 11884714, at *3 (C.D. Cal. Nov. 24, 2020) (dismissal without leave to amend where Plaintiff "fails to specifically allege the time, place, speaker, or listener for each allegedly defamatory statement").

> 2. The "Predator Statements" Are Not Defamatory Because They Are Constitutionally Protected Opinion.

> > *i.    The Predator Statements are unactionable opinion.*

"As a threshold matter, because there is 'no such thing as a false idea,' *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974), '***courts must distinguish between statements of fact, which may be defamatory, and expressions of opinion, which are not defamatory***; instead, [opinions] receive absolute protection under the New York Constitution.'" *Rosa v. Eaton*, No. 23 CIV. 6087 (DEH), 2024 WL 3161853, at *3 (S.D.N.Y. June 25, 2024)(emphasis added).[8] The Predator Statements constitute "unactionable opinion because [they] '[have] no precise meaning, [are] not capable of being objectively characterized as true or false, and [are] merely a general reflection of the speaker's viewpoint.'" *Bernard*, 2022 WL 4484556, at *14 (cleaned up).[9] As another court in this District has explained, "courts have recognized that ***words like*** 'scum,' '***predators***,' 'greedy crooks' and 'criminals preying on [street art] culture' ***are vague, imprecise statements of hyperbole considered nonactionable opinion***." *Rosa*, 2024 WL 3161853, at *3 (citing cases)

---

[8] *Accord Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1158 (9th Cir. 2021) (affirming dismissal with prejudice where a "reasonable viewer would understand [Defendant's] statement as colorful commentary").

[9] "To determine whether a statement is a fact or an opinion," courts will "generally consider" three factors: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] readers or listeners that what is being read or heard is likely to be opinion, not fact." *Rosa*, 2024 WL 3161853, at *3; *accord Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021).

(emphasis added). "***Use of colorful language such as 'predator,'*** 'victimized,' or 'face of evil' ***are not actionable in and of themselves***." *Tagliaferri v. Szulik,* No. 15 CIV. 2685 (LGS), 2016 WL 3023327, at *2 (S.D.N.Y. May 25, 2016)(emphasis added); *accord Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 312 (S.D.N.Y. 2019) (calling people "predators" is "rhetorical hyperbole"); *Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, No. 21-CV-4203 (LJL), 2022 WL 3920044, at *31 (S.D.N.Y. Aug. 31, 2022) (calling someone "crazy" is a "hyperbolic expression of opinion"); *Guzik v. King*, No. A115625, 2009 WL 497663, at *4-5 (Cal. App. Ct. Feb. 26, 2009) (calling someone "evil," an "animal," or "shameless" is hyperbole). While Mr. Baldoni "may not appreciate being called" a predator, those hurt feelings do not give rise to legal claims, because name-calling "does not reflect a fact but a non-verifiable view." *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631, at *7 (S.D.N.Y. Mar. 31, 2022) (dismissing defamation claim relating to statement calling plaintiff a "gadfly"); *see Higgins*, 2022 WL 3920044, at *31 ("'Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable.'"). These First Amendment principles ought to be obvious to—and even celebrated by—a group of litigants who have spent most of the past few months calling Mr. Reynolds and his wife "bullies" and "liars." *See, e.g.*, ECF No. 17-2; ECF No. 84 (Lively First Amended Complaint, ¶ 464).

The FAC fails to plead any facts indicating that Mr. Reynolds' statements "could be reasonably understood to have been 'an assertion of fact' capable of being proven false rather than a 'pure opinion' that is not actionable under the laws of New York." *Higgins*, 2022 WL 3920044, at *31. While the FAC fails to provide sufficient details about the Predator Statements (which alone is grounds for dismissal, *supra* at § II(A)(1)), the limited context it does provide militates in favor of a finding that they are assertions of opinion. The FAC alleges that Mr. Reynolds made the

Predator Statements during a phone conversation with Mr. Baldoni's agent, and at a movie premiere during a conversation with a WME executive during which Mr. Reynolds was expressing "his deep disdain" for Mr. Baldoni, which is ***utterly fatal under the opinion doctrine***, because it is plainly "reflective" of Mr. Reynolds' unabashed negative ***opinion*** of Mr. Baldoni's character. *Rosa*, 2024 WL 3161853, at *4. Mr. Reynolds has a First Amendment right to hold Mr. Baldoni— or any man who Mr. Reynolds believes sexually harassed his wife—in "deep disdain." And the FAC does not allege any plausible facts that would remotely suggest, let alone establish, that anyone interpreted Mr. Reynolds' statements as reflecting anything other than his genuinely held belief about Mr. Baldoni's character. The Court should dismiss the defamation claim as to Mr. Reynolds with prejudice because the Predator Statements are expressions of opinion that deserve "absolute protection" by law. *Rosa*, 2024 WL 3161853, at *3; *Brady,* 2022 WL 992631, at *7.

> ii.    *If the Predator Statements are not opinion, they are substantially true.*

Even if the Predator Statements were verifiable as fact, they are not actionable as defamation because they are substantially true. The Second Circuit has held that whether statements are substantially true is appropriate for resolution in a motion to dismiss: "Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp., a Division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017). A "statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Tannerite Sports*, 864 F.3d at 242-43 ("'When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been

done.'"). It "is not necessary to demonstrate complete accuracy to defeat a charge of libel" and all that is necessary is to demonstrate that "the gist or substance of the challenged statements be true." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012).

The FAC includes numerous references to conduct that a reasonable observer could well consider predatory.[10] In particular, the FAC relies on Mr. Baldoni's books *Boys Will Be Human* and *Man Enough*, and his podcast *Man Enough*, even going so far as to declare that "[a]nyone who knows" Baldoni "would have knowledge of" the contents of Mr. Baldoni's books. ¶ 100; *see* ¶ 95 (relying on statements made on Mr. Baldoni's podcast); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (in ruling on a motion to dismiss, a court may consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325 (S.D.N.Y. 2021) ("The court may consider the full text of documents that are cited in, incorporated by reference in, or 'integral' to the complaint.").

Those materials, with which "[a]nyone who knows" about Mr. Baldoni would be familiar, include numerous admissions to behavior that could reasonably be described as "predatory." *See, e.g.*, Jane Randel, *Boys Will Be Human | A Talk on Healthy Masculinity with Justin Baldoni*, YOUTUBE (Mar. 7, 2023), (saying that "I'm sure I have crossed boundaries and lines in my teens and twenties not even thinking about it simply because of the porn I was consuming")[11]; The Man

---

[10] ¶¶ 38 (admitting to relaying "distributor's concerns and the widespread social media criticism" about Ms. Lively's appearance); 88 (admitting to suggesting Ms. Lively's character "orgasm during the scene"); 94 (admitting to telling Ms. Lively that the "'onesie'" she was wearing underneath her jacket was "'sexy'"); 119 (admitting to casting his friend as the obstetrician in the birth scene where he would be in "close proximity to her nearly nude genitalia"); FAC, Ex. A at 253 (admitted to asking Mr. Heath to show Ms. Lively "his wife's post-home-birth video"); 253 (no denial of biting and sucking of lip when script only states "kissing" scene).

[11] https://www.youtube.com/watch?v=t48m6Ee9G18.

Enough Podcast, *Jaime Camil: Changing the Narrative*, YOUTUBE, at 38:42-38:52, (Mar. 14, 2022)[12] ("I grew up and I had an addiction to porn. I was introduced to porn at 10 years old, formed these neuropathways in my brain, and it caused me to see the world very differently."); A Life of Greatness, *Justin Baldoni: The Power of Being Enough*, APPLE PODCASTS, at 45:45-46:16 (July 26, 2021)[13] ("And for me, um, you know, it was really tricky because I believe that there's a link between rape culture and porn culture. . . . I'm not calling out the porn industry. I'm calling out my relation to it. . . . But I do believe that especially the porn that young boys are watching is very violent. And ***because we never. . . no one ever sits us down and teaches us about consent. We learn it through porn***.")[14]; The Man Enough Podcast, *Joy DeGruy: Access to Respect,* YOUTUBE, at 28:50-29:04 (Oct. 25, 2021) ("You, right, as a black man or you as a woman, have had to put up with a lot of shit from people that look like me and/or from me your entire life. And again, it could be laundry or it could be microaggressions for ***racism or sexism, whatever it is. I've done all of them***."); JUSTIN BALDONI, MAN ENOUGH: UNDEFINING MY MASCULINITY 253-54 (2021)("***I wanted, as a man, to 'claim' her publicly, as on some level I knew it would make me feel more like a man. . . .***" (emphasis added)).[15]

---

[12] https://www.youtube.com/watch?v=f43NklgCKgs.

[13] https://podcasts.apple.com/us/podcast/justin-baldoni-the-power-of-being-enough/id1457268944?i=1000530093620.

[14] https://www.youtube.com/watch?v=TWAYsJg4ldE.

[15] *See also* The Man Enough Podcast, *Jason Wilson: Teaching Our Boys to Feel*, YOUTUBE, at 1:07:19-1:07:30 (Dec. 6, 2021), https://www.youtube.com/watch?v=DWwr_iLzSrQ ("***We talk about who we're hooking up with, right?***. And oftentimes as Tony Porter says, and from a call to men, he talks about ***the language that we use, right? It's actually violent. Did you smash that***?"); JUSTIN BALDONI, MAN ENOUGH: UNDEFINING MY MASCULINITY xiii (2021), ("I needed this book as the eighteen-year-old freshman in college who ***felt the need to prove his masculinity by hooking up with as many girls as he could, without any*** regard for their feelings or attachments in the process" and "as thirty-one year old" who "had ***not treated women with the respect he knows they deserved, both socially and romantically***." (emphasis added)).

While it is unclear what "predator" means to an average listener, it is quite clear that there is no discernible distinction between the gist of Mr. Reynolds' purported statements and the very behavior to which Mr. Baldoni has repeatedly confessed in public appearances, including that he spent years of his life mistreating women, which he attributes to a *lengthy* addiction to pornography, as well as openly describing his distorted conception of "consent" in sexual relationships. Were this case to go to trial, it would be Mr. Baldoni's burden to prove the factual falsity of the supposed allegation that he is a "predator," but the law offers no principled basis for a jury to distinguish that label from Mr. Baldoni's descriptions of his own behavior. *See Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 302–03 (2d Cir. 1986) (finding substantial truth where an article called plaintiff an "adulterer" because an "average reader would understand that term to include" the admitted truth that he was "a man who unabashedly committed adultery for thirteen of the last seventeen years and whose adulterous behavior ended only because his wife ultimately divorced him"); *Caro Cap., LLC v. Koch*, No. 20-CV-6153 (LJL), 2021 WL 1595843, at *11 (S.D.N.Y. Apr. 23, 2021) (statement substantially true where its "thrust" was the same as the admitted truth); *Weber v. Multimedia Ent., Inc.*, No. 97 CIV. 0682 (JGK), 2000 WL 526726, at *10 (S.D.N.Y. May 2, 2000) (finding statement describing plaintiff as "a physically abusive drug addict" was substantially true given Plaintiffs' own admissions about physical abuse).

It would be perverse to permit Mr. Baldoni to build an entire brand—complete with a podcast, Ted Talk, and books—off of his confessions of repeatedly mistreating women, only to turn around and sue Mr. Reynolds for $400 million for simply pointing out ***in private*** what Mr. Baldoni has bragged about in public. In light of Mr. Baldoni's own public admissions—of which the Court can take judicial notice. *see Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 263 (S.D.N.Y.) (taking judicial notice of defendant's own statements made

in public interview); *Elliot v. Donegan*, 469 F. Supp. 3d 40, 47 n.2 (E.D.N.Y. 2020) (taking judicial notice of excerpts of books and articles written by plaintiff prior to alleged defamation, attached to defendant's declaration "due to their references to 'rape, sexual assault, consent, and other Me Too-related issues . . .'")—the substantial truth doctrine requires dismissal of Mr. Baldoni's defamation claims as to Mr. Reynolds.

*iii.*        *The FAC fails to plead special damages.*

Dismissal of the defamation claim is warranted because the FAC does not allege defamation per se (*see* ¶¶ 324-31), but nonetheless fails to "fully and accurately" plead special damages "with sufficient particularity to identify actual losses." *Collins*, 2017 WL 1184305, at \*3 (defamation claimant must "allege either special damages or defamation per se"); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2023 WL 3568077, at \*8 (N.D. Cal. Apr. 21, 2023) (under California law, a plaintiff may only prevail "if the publication is libelous on its face or if special damages have been proven"). "***This particularity requirement is strictly applied***, as defamation claims will be dismissed for failure to allege special damages with the requisite degree of specificity." *Collins*, 2017 WL 1184305, at \*3 (emphasis added). Far from "fully and accurately" identifying any harm that flowed "directly from the injury to reputation caused by" the Predator Statements, the FAC generally claims *at least* $400,000,000 in compensatory damages without explaining what amount, if any, of that astronomical sum allegedly was suffered by Mr. Baldoni (versus *any* of the other Wayfarer Parties), or otherwise caused by the Predator Statements. *Compare id.*; *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021) (finding failure to sufficiently plead special damages where complaint "has neither pled its damages with particularity, nor plausibly alleged a causal connection between the alleged statements and a lost sale"), *with* FAC Prayer for Relief ("compensatory damages including consequential damages, lost wages, earnings, and all other sums of money, together with interest

on those amounts, in an amount to be proven at trial but in no event less than $400,000,000"). The Court should "strictly apply" the particularity requirement and dismiss the Defamation Claim for "failure to allege special damages with the requisite degree of specificity." *Collins*, 2017 WL 1184305, at *3.

        *iv.*      *The FAC fails to plead facts demonstrating actual malice.*

As a public figure, Mr. Baldoni must plead facts demonstrating that Mr. Reynolds uttered the Predator Statements with actual malice, in other words, that Mr. Reynolds "in fact entertained serious doubts as to the truth of his publication." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) and 622 F. App'x 67 (2d Cir. 2015) ("In order to prevail on a defamation claim against a public figure, a plaintiff must demonstrate by clear and convincing evidence that the defendant acted with 'actual malice.'"); *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 856 (N.D. Cal. 2020) ("If the plaintiff is a public figure, then he must prove that the defendant acted with 'actual malice.'"). The FAC's conclusory assertion that the "Lively Parties" (defined to include Mr. Reynolds) "knew the statements were false, or had serious doubts about the truth of the statements" (¶ 328) is a threadbare recitation of the legal element that is insufficient to sustain the law's "heavy burden" on defamation plaintiffs. *See Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021); *Biro*, 963 F. Supp. 2d at 279–80 ("pleading 'actual-malice buzzwords" is simply not enough to nudge a case into discovery'"); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (holding that "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient to support a cause of action."). Nor do claims of animus, like Mr. Reynolds' "deep disdain" for and rage and wrath directed at Mr. Baldoni (¶¶ 49, 128-29, 162), sufficiently plead actual malice. *See Biro*, 963 F. Supp. 2d at 276 ("actual malice does not simply connote ill will or spite"); *Tull v. Higgins*, Case No. 21-cv-01566, 2021

WL 6116971, at *10 (N.D. Cal. Dec. 27, 2021) ("Actual malice 'has nothing to do with bad motive or ill will,' and 'may not be inferred alone from evidence of personal spite, ill will or intention to injure on the part of the writer'").

It would be inconsistent with the FAC to find that Mr. Reynolds uttered the Predator Statements with actual malice—indeed, there is not a single plausible factual allegation from which a jury could conclude that Mr. Reynolds ***does not believe Mr. Baldoni to be a "predator."*** To the contrary, the FAC alleges that Mr. Reynolds took steps consistent with believing his wife's allegations—including demanding an apology from Mr. Baldoni (¶¶ 128-29) and "mocking" Mr. Baldoni's "woke" feminist façade in *Deadpool and Wolverine* (¶ 164)—not to mention Mr. Baldoni's own public admissions about his past conduct. The "deep disdain" that the FAC alleges Mr. Reynolds feels towards Mr. Baldoni concedes that Mr. Reynolds subjectively believes what he said about Mr. Baldoni, and thus defeats a finding of actual malice.

> v.    The Predator Statements are not "of and concerning" any
> Wayfarer Plaintiff Other than Mr. Baldoni.

The Predator Statements refer solely to Mr. Baldoni and not any of the six other Wayfarer Parties. To the extent that the FAC intends to assert the Defamation Claim on behalf of any defendant other than Mr. Baldoni, it requires dismissal because the Predator Statements are not "of and concerning" any of them. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("A false disparaging statement about IBM, for example, would not, we think, ordinarily be a defamatory statement 'of and concerning' all of IBM's suppliers, employees and dealers, however much they may be injured as a result."); *Renxiong Huang v. Minghui.org*, No. 17-cv-5582 (ER), 2019 WL 2525416, at *4 (S.D.N.Y. June 19, 2019) (dismissal required when plaintiff fails to meet burden showing statement was of and concerning him and burden "is not a light one").

**B.  The Wayfarer Complaint Fails To State A Claim Of False Light.**

The FAC fails to state a claim of false light as a matter of law under either New York or California law.[16] "There is no tort of false light invasion of privacy under New York law," and the Court need not engage in any further analysis in order to dismiss such a claim. *See Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631, at *8 (S.D.N.Y. Mar. 31, 2022).

While California law recognizes claims of false light, dismissal also is required when, as here, the "claim for false light invasion of privacy is duplicative of" a defamation claim. *Brooks v. Physicians Clinical Lab'y, Inc.*, No. 99-cv-21550-WBS, 2000 WL 336546, at *3 (E.D. Cal. Mar. 20, 2000). While the FAC's False Light Claim suffers from the same fatal lack of specificity described above (*supra* at § II(A)(1)) (which alone requires dismissal), it also fails because it appears to rely entirely on the alleged public disclosure of information on which the Defamation Claim is based. *Compare* ¶ 325, *with* ¶ 333. Finally, even if all of that were not dispositive, the False Light Claim fails as a matter of law for all the same reasons the Defamation Claim cannot survive dismissal. *See Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, 251 (1986) (sufficiently pleading false light requires "pleading and proof of special damages"); *Kapellas v. Kofman*, 1 Cal. 3d 20, 35 n. 16 (1969) (where a false light claim is "in substance equivalent to [a] libel claim, [it] should meet the same requirements of the libel claim on all aspects of the case, including proof of malice"); *Silva v. Hearst Corp.*, No. 97-cv-4142, 1997 WL 33798080, at *3 (C.D. Cal. Aug. 22, 1997) ("Expressions of opinion are constitutionally privileged and cannot form the basis of a false-

---

[16] There is a conflict between New York and California law as to false light because, as discussed herein, the former does not recognize such a cause of action. The Court need not engage in a choice-of-law analysis, however, because the outcome under either jurisdiction's law is the same, i.e., dismissal of the claim. *See, e.g.*, *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). However, to the extent the Court sees a need to engage in a choice-of-law analysis, New York law applies to this claim for the reasons discussed *supra* at § I.

light claim."). Whether applying New York or California law, the Court should dismiss the FAC's False Light Claim.

### C.  The Wayfarer Complaint Fails To State A Claim For Civil Extortion.

The civil extortion claim against Mr. Reynolds must be dismissed because "New York law does not recognize extortion as a tort or as any 'private right of action.'" *Ecogensus LLC v. Pacella*, No. 20-CV-3629 (VSB), 2022 WL 874727, at *6 (S.D.N.Y. Mar. 24, 2022) (collecting cases). Similarly, although California *federal* courts "have divided over whether California recognizes a civil cause of action for extortion," *Bank of New York Mellon v. DeSelms*, No. 18-CV-1044-PSG, 2019 WL 8198310, at *4 (C.D. Cal. Mar. 25, 2019), the most that California's state courts have recognized under the heading of civil "extortion" is "a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution," where "the threat of prosecution [is] made with the knowledge of the falsity of the claim." *Fuhrman v. Cal. Satellite Sys.*, 179 Cal. App. 3d 408, 426 (1986). Because that cause of action is a "form of fraud," *id.*, it must be pleaded with particularity under Rule 9(b). *Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889, 2021 WL 5990190, at *13 (C.D. Cal. May 4, 2021). The FAC is devoid of any allegations—much less particularized allegations—that Mr. Reynolds obtained any money or property from any of the Wayfarer Defendants, or made any "wrongful threat" of "prosecution," much less with "knowledge of the falsity of the claim." And the same is true using the borrowed elements of criminal extortion; the FAC fails to allege that Mr. Reynolds either (1) obtained any "property or consideration" from any Wayfarer Defendant (because, of course, he did not), or (2) did so through a "wrongful use of force or fear." *Bank of New York Mellon*, 2019 WL 8198310, at *4 (quoting Cal. Penal Code § 518(a)).

### D. The Intentional Interference Claims Must Be Dismissed.

#### 1. The Tortious Interference Claims Are Duplicative of the Defamation Claim

As an initial matter, each of the tortious interference claims must also be dismissed as duplicative of the defamation claim. "New York law considers claims sounding in tort to be defamation claims where those causes of action seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation." *Dellaportas v. Shahin*, No. 24-CV-0793 (VM), 2024 WL 3729183, at *8 (S.D.N.Y. Aug. 7, 2024) (cleaned up) (collecting cases). Whether Mr. Reynolds' alleged statements to WME are actionable in light of their claimed effect on Mr. Baldoni's reputation must fall, as well, under the pleading requirements for defamation. Nonetheless, each claim fails on its own terms as well.

#### 2. The FAC Fails to State a Claim for Intentional Interference with Contract.

Whether under New York or California law, intentional interference with contractual relations requires that the plaintiff allege: (1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of said contract, (3) defendant's intentional procurement of the third party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting from the breach. *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA*, 698 F. Supp. 3d 663, 683 (S.D.N.Y. 2023); *see Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 575 (Cal. 2020) (same).

To survive a motion to dismiss, a plaintiff must specifically plead the existence of a valid contract and "must identify what provisions of the contract were breached as a result of the acts at issue." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 152 (S.D.N.Y. 2022). Furthermore, because a claim for tortious interference requires a showing of breach, contracts that are terminable at will generally cannot provide the basis for such a claim. *Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) (dismissing claim where allegations left

open possibility that contract was terminable at will). A plaintiff must also plead "specific allegations of the defendant's knowledge of the contract, including some knowledge of the terms and conditions[.]" *Generation Next Fashions Ltd.*, 698 F. Supp. 3d at 683.

The FAC fails each of these requirements. The sole contract alleged in the complaint is a "contract between the Wayfarer Parties and William Morris Endeavor ("WME")." ¶ 348. But the FAC does not allege any details about the contract, including which parties it allegedly bound (surely *not* all seven "Wayfarer Parties" were parties to it), what the contract's terms were, or what provisions were allegedly breached. Strikingly, throughout the entire FAC, there is not *a single allegation* that **WME** breached its contract with any Wayfarer Party, much less a description or quotation of a contractual term allegedly breached. *See, e.g.*, *Henry*, 629 F. Supp. 3d at 152 (S.D.N.Y. 2022) (dismissing tortious interference claim where "no facts present in the complaint to support an inference that [the plaintiff's] termination constituted a breach of any contract").

Instead, the Wayfarer Parties allege solely that, "upon information and belief," Ms. Lively and Mr. Reynolds "induc[ed] WME to cease performing under its contract." ¶ 350. But the cessation of performance is not the same thing as a breach of contract, and the Wayfarer Parties— who have alleged the existence of this contract and are presumably in possession of its full terms— have utterly failed (after multiple tries, hundreds of pages, more media interviews than can be counted, and a publicly-launched website) to identify **any actual contractual provisions that they claim WME breached when it allegedly ceased performance**. *See, e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (the allegation that a party "walked away" from a project or "decided not to proceed with the project . . . does not amount to an allegation that [the party] violated the terms of a contract"); *Orange Cnty. Choppers, Inc.*, 497 F. Supp. 2d at 562 ("Conspicuously missing, however, is whether [the third party] actually breached the contract with

[the plaintiff]. . . . [the plaintiff's] allegations are deficient as a matter of law because they leave open the possibility that [the third party] lawfully terminated the contract or that the contract was terminable at will.").

3. The FAC Fails to State a Claim for Intentional Interference with Prospective Economic Advantage.

In the absence of an allegation that a specific contract was actually breached, the FAC must satisfy the more stringent requirements for a claim of intentional interference with prospective economic advantage. It does not. To state such a claim, a plaintiff must allege: (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 472 (S.D.N.Y. 2021).[17] Once again, the sole economic relationship alleged in the FAC is between "the Wayfarer Parties and WME," ¶ 357, without specification as to **which** of the Wayfarer Parties had such a relationship.

The FAC *does not even attempt* to allege that Mr. Reynolds acted "**solely** out of malice," as is required to survive a motion to dismiss. ¶¶ 356-65. But the FAC itself asserts that Ms. Lively and Mr. Reynolds were motivated at least in part by a desire to "seize control" over a film production. ¶ 6. Taking that allegation as true (as the Court must at this stage, whether or not it *is* true), such a motive—akin to "normal economic self-interest"—"is inconsistent with the sole purpose of inflicting intentional harm" and insufficient to state a claim for tortious interference with prospective economic advantage. *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 389 (S.D.N.Y. 2022).

---

[17] California law is in accord. *See, e.g.*, *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1256 (Cal. Ct. App. 2002); *see also id.* (requiring an allegation of "'conduct that was wrongful *by some legal measure other than the fact of interference itself*'").

Nor does the FAC allege that Mr. Reynolds employed any "wrongful means." To satisfy that element, "as a general rule, the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004). But there is nothing in the FAC that amounts to an allegation of "wrongful means." At most, the FAC alleges that Mr. Reynolds approached an executive at WME and "suggest[ed] the agency was working with a 'sexual predator'… and, at a later date, demanded the agent 'drop' Baldoni." (¶¶ 8, 162). But "[s]harp language," such as insulting a defendant by calling them a "thief" and "scumbag" is not "wrongful" or "culpable conduct" sufficient to qualify as "wrongful means." *Wade Park*, 589 F. Supp. 3d at 391. And "pleading the presence of false statements alone is not enough to support a claim for tortious interference." *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008). The FAC lacks a single allegation suggesting, let alone establishing (if taken as true), that Mr. Reynold's alleged "demand" was ***anything*** other than an expression of sincerely held beliefs, which are neither criminal nor tortious under the First Amendment. *Supra* § II(A)(2)(iv).

### 4. The FAC Fails To State A Claim For Negligent Interference.

The Negligent Interference Claim must be dismissed because there is no claim for negligent interference with prospective economic advantage under New York law. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 643 (S.D.N.Y. 2018). And even under California law, a negligent-interference claim is cognizable only where the defendant owes the plaintiff a duty of care, which the FAC does not allege. *UMG Recordings, Inc.* v. Global Eagle Ent., Inc., 117 F. Supp. 3d 1092, 1118 n.57 (C.D. Cal. 2015).

### 5. The FAC Fails to Allege Proximate Cause.

Each of the tortious interference claims must also fail because the FAC does not allege that Mr. Reynolds' alleged conduct "*proximate[ly] cause[d]*" WME to cease performance. *Pride*

*Techs., LLC v. Khublall*, No. 21-2225, 2022 WL 17587755 (2d Cir. Dec. 13, 2022). The FAC is silent as to how Mr. Reynolds—someone who does not own or control WME—could plausibly cause WME to cease performing its contract with Baldoni. *See, e.g., State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004) (a party cannot "prevail on their tortious interference [claim] unless they 'demonstrate . . . that the wrongful acts were the *proximate cause* of the rejection of the [] proposed contractual relations'"); *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 107 (2d Cir. 2012) (tortious interference claim failed where there was "no allegation that [defendant's] conduct . . . proximately caused [third party] to sever its business relationship with [plaintiff]").

6.  <u>The Wayfarer Parties Have Failed to Allege any Damages.</u>

Finally, and regardless of the theory under which their claims are brought, the Wayfarer Parties have failed to sufficiently allege damages. "[M]erely allud[ing] to . . . damages in a conclusory fashion" does not suffice. *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 276 (S.D.N.Y. 2019). The FAC repeatedly asserts that the Wayfarer Parties "were harmed," ¶ 352, and prays for a damage award of at least $400 million, FAC p. 222, but *nowhere* explains how, or how much, any of the Wayfarer Parties were actually damaged by any of the alleged conduct in the complaint. "An allegation that a claimant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG) (JMA), 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011) (cleaned up); *see also Republican Nat'l Comm. v. Google, LLC*, No. 2:22-cv-01904-DJC-JDP, 2024 WL 3595538, at *13 (E.D. Cal. Jul. 31, 2024) (in the context of tortious interference with prospective economic advantage, California courts "require[] specific facts to show that a benefit was almost certain"). The FAC has nothing more than a bare assertion that the Wayfarer Parties were "harmed" and an

unexplained demand for $400 million—but that is not enough to state a claim. *Republican Nat'l Comm.*, 2024 WL 3595538, at *13.

### E. The Wayfarer Complaint Fails To Allege Conspiracy Liability.

Having failed to allege any plausible claim based on Mr. Reynolds conduct, the FAC attempts to hold him liable on a conspiracy theory. That attempt fails. Under both California and New York law, a civil conspiracy theory requires that a plaintiff allege "(1) an agreement to participate in an unlawful act or a lawful act in an unlawful means; (2) an overt act performed in furtherance of the scheme; and (3) an injury caused by the overt act." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001); *see Carpenter v. Thrifty Auto Sales*, No. 09-CV-02233 (DMG) (DTBx), 2010 WL 11595928, at *5 (C.D. Cal. July 30, 2010). Conclusory allegations do not suffice; "to survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." *Manolis v. Brecher*, No. 11 CV-2750 (RMB) (HBP), 2012 WL 527450, at *5 (S.D.N.Y. Feb. 16, 2012) (cleaned up).[18]

Here, the FAC pleads no specific facts indicating the necessary agreement among any parties, any overt acts done in furtherance of such an agreement, and (as discussed *supra* § III (D)(6)), any damages. Even under the liberal pleading standards of Rule 8, a complaint must do more than assert that defendants agreed to commit a tort. *See In re Refco Inc. Sec. Litig.*, 826 F.

---

[18] Because civil conspiracy is not an independent tort, and only a theory of vicarious liability, any conspiracy theory must fail to the extent that the underlying tort claims also fail. As explained *supra* and in the other motions to dismiss, that is the case here. *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y. 2018) (collecting cases); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. 06-CV7541 (PJH), 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) ("[C]ivil conspiracy allegations must be separately pled as to each of the substantive causes of action."); *id.* ("Each member of the alleged conspiracy must be legally capable of committing the underlying tort—that is, each member must owe a duty to the plaintiff that is recognized by law and must be potentially subject to liability for breach of that duty—and must intend the success of the purpose of the conspiracy.").

Supp. 2d 478, 540 (S.D.N.Y. 2011) ("If all that is required is a broad assertion that 'the defendants agreed,' then any kind of particularity requirement, even the lesser requirement of Rule 8, is essentially thrown out the window."). But that is all the FAC can muster. *See Atl. Int'l Movers, LLC v. Ocean World Lines, Inc.*, 914 F. Supp. 2d 267, 280 (E.D.N.Y. 2012) ("the complaint must provide [] 'some factual basis supporting a meeting of the minds . . . to achieve the unlawful end.'. . . Plaintiff's complaint largely fails to attribute specific actions to any of the parties and makes no specific allegations supporting the existence of an agreement between them. Without such a factual basis, plaintiff's conclusory allegation is insufficient to support a claim of conspiracy.").

Read individually or as a whole, the FAC's allegations that Mr. Reynolds participated in a conspiracy to engage in tortious conduct against any of the Wayfarer Plaintiffs are utterly conclusory. They amount to bare assertions, *see* ¶ 17 (asserting that Ms. Lively "working with her husband" "conspired" to harm the Wayfarer Parties by advancing a narrative in the press); unsupported speculation, *see* ¶ 130 (alleging that Mr. Reynolds "apparently joined" a "campaign to extract concessions and creative control over the Film" by January 4, 2024); and pure boilerplate, *see, e.g.*, ¶ 322 (reciting elements of civil conspiracy liability).

Appearing to recognize this deficiency, the Wayfarer Parties confine each of their allegations of conspiracy to "information and belief." ¶¶ 322 (civil extortion), 330 (defamation), 338 (false light), 354 (intentional interference with contractual relations), 364 (intentional interference with prospective economic advantage). But that only confirms that the Wayfarer Plaintiffs' conspiracy allegations fall short, because "claims made solely on information and belief are insufficient to sustain a conspiracy theory." *Star Funding, Inc. v. Vault Mins., LLC*, No. 15-CV-03026 (GBD), 2016 WL 10952230, at *4 (S.D.N.Y. Sept. 2, 2016). There is accordingly no

basis to hold Mr. Reynolds liable on a civil conspiracy theory for any of the conduct alleged in the FAC.

## III.    THE COURT SHOULD AWARD MR. REYNOLDS ATTORNEY'S FEES PURSUANT TO NEW YORK'S ANTI-SLAPP LAW.

Mr. Reynolds is entitled to attorney's fees under the substantive fee-shifting provision of New York's Anti-SLAPP statute, N.Y. Civil Rights Law § 70-a(1), which applies to the FAC's allegations against Mr. Reynolds for similar reasons to those articulated in the Sloane and NYT MTDs, both of which Mr. Reynolds joins and incorporate by reference. ECF Nos. 87 at 28-29, 106 at 29 n.21; *Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277, at *12-16 (S.D.N.Y. Nov. 26, 2024) (holding that Section 70-a applies in federal court because it creates a substantive cause of action for attorney's fees). Section 70-a mandates a fee award in Mr. Reynolds' favor because, as discussed above, the FAC asserts causes of action against him based on communications and conduct in furtherance of "an issue of public interest," namely, Mr. Baldoni's and Mr. Heath's harassing workplace conduct and the subsequent retaliation, and cannot survive a motion to dismiss for failure to state a claim. *See Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 27 (App. Div. 1st Dep't 2024) (an issue of public interest is "any subject other than a purely private matter" and "shall be broadly construed to embrace matters of political, social, or other concern to the community"); *see Watson v. NY Doe 1*, No. 19-CV-533 (JGK), 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) (statements about sexual assault and harassment); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) (statements about "sexual impropriety and power dynamics in the music industry").

Although this Court reached a seemingly different conclusion in *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022), Mr. Reynolds respectfully submits that the reasoning of *Bobulinski*, rather than *Brady*, should control here for

three reasons. First, in *Brady*, the defendant requested anti-SLAPP fees in a single footnote that did not analyze whether § 70-a(1) applies in federal court, and the Court accordingly did not have an opportunity to confront the arguments presented here or discussed in *Bobulinski*. Motion to Dismiss at 17 n.6, *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (S.D.N.Y. June 1, 2021), ECF No. 18. Second, *Brady* was decided before the New York cases confirmed that § 70-a(1) makes attorney's fees available not as a "sanction," but wherever a SLAPP claim is dismissed for failure to state a claim. *See Bobulinski*, 2024 WL 4893277, at *13 (collecting cases). As interpreted by the New York courts, § 70-a(1) is not a sanction but an exception to the American rule applicable to a class of cases defined by state law. For that reason, *Brady*'s reasoning—that Federal Rule 11 answers the question covered by § 70-a(1)—has been overtaken by intervening New York law. Third, and finally, it is well settled that state fee-shifting statutes are substantive laws that must apply in diversity cases. *See Bobulinski*, 2024 WL 4893277, at *12; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("state law denying the right to attorney's fees or a giving a right thereto, which reflects a substantial policy of the state, should be followed" in diversity cases). Just as the presence of Rule 11 would not be an obstacle to a prevailing-party fee award where authorized by state or federal statute, *see, e.g.*, *Casmento v. Volmar Constr., Inc.*, No. 20-CV-944 (LJL), 2022 WL 17666390, at *2 (S.D.N.Y. Dec. 14, 2022) (awarding fees under N.Y. Exec. L. § 297(10) to a "prevailing or substantially prevailing party"); *Gilani v. Teneo, Inc.*, No. 20-CV-1785 (CS), 2022 WL 4593040, at *2 (S.D.N.Y. Sept. 30, 2022) (applying the same provision's "frivolous" standard to a defendant's fee claim); *see also* Fed. R. Civ. P. 54(d)(2), it is no obstacle to an award mandated by § 70a-(1).

## IV.    THE COURT SHOULD STRIKE EXHIBIT A TO THE WAYFARER COMPLAINT OR, AT A MINIMUM, DISREGARD IT.

Mr. Reynolds joins the argument in the Sloane MTD moving the Court to strike the FAC's "Exhibit A" pursuant to Rule 12(f). ECF No. 87 at 30-32; *see* ECF No. 50-1 at 1 ("Exhibit A"). As this Court has recognized, permitting a "party to satisfy its pleading requirements by attaching documents other than instruments to the complaint would do considerable damage to Rule 8(a)'s notice requirement" including by requiring a defendant "to hunt around in voluminous materials to figure out what the plaintiff alleges is relevant and supports its claims and what is extraneous." *Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657 (LJL), 2023 WL 2614243, at *11 (S.D.N.Y. Mar. 23, 2023) (cleaned up). Even if the Court does not strike Exhibit A, it cannot properly consider it to evaluate whether the FAC sufficiently states a claim. *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013).

## CONCLUSION

All claims against Mr. Reynolds should be dismissed with prejudice and without leave to amend, and the Court should award Mr. Reynolds his costs, including attorney's fees, incurred as a result of the Consolidated Action.

Respectfully submitted,

Dated: March 18, 2025                    /s/ Michael J. Gottlieb


Esra A. Hudson (admitted *pro hac vice*)        Michael J. Gottlieb
Stephanie A. Roeser (admitted *pro hac vice*)    Kristin E. Bender
Manatt, Phelps & Phillips LLP                   Meryl C. Governski (admitted *pro hac vice*)
2049 Century Park East, Suite 1700              Willkie Farr & Gallagher LLP
Los Angeles, California  90067                  1875 K Street NW
(310) 312-4000                                  Washington, DC  20006
ehudson@manatt.com                              (202) 303-1000
sroeser@manatt.com                              mgottlieb@willkie.com
                                                kbender@willkie.com
Matthew F. Bruno                                mgovernski@willkie.com
Manatt, Phelps & Phillips LLP
7 Times Square                                  Aaron E. Nathan
New York, NY  10036                             Willkie Farr & Gallagher LLP
(212) 790-4525                                  787 Seventh Avenue
mbruno@manatt.com                               New York, NY  10019
                                                (212) 728-8904
                                                anathan@willkie.com


*Attorneys for Ryan Reynolds*