UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Blake Lively, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 1:24-cv-10049-LJL |
| | § | (Consolidated with 1:25-cv-00449-LJL) |
| Wayfarer Studios LLC, a Delaware Limited | § | **JURY TRIAL DEMANDED** |
| Liability Company; Justin Baldoni, an indi- | § | **ORAL ARGUMENT REQUESTED** |
| vidual; Steve Sarowitz, an individual; It | § | |
| Ends With Us Movie LLC, a California | § | |
| Limited Liability Company; Melissa Na- | § | |
| than, an individual; The Agency Group PR | § | |
| LLC, a Delaware Limited Liability Com- | § | |
| pany; Jennifer Abel, an individual; Jed Wal- | § | |
| lace, an individual; and Street Relations, | § | |
| Inc., a California (sic) Corporation | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTIONS TO DISMISS OR, IN THE
ALTERNATIVE, MOTION TO SEVER AND TO TRANSFER VENUE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

BACKGROUND ...................................................................................................... 1

    I.    Allegations in the AC Regarding Personal Jurisdiction ......................... 2

        A.    The Relevant Parties ....................................................................... 2

        B.    Alleged Jurisdictional Facts ........................................................... 3

        C.    Other Evidence Relevant to Personal Jurisdiction ........................ 4

PROCEDURAL HISTORY ...................................................................................... 6

LEGAL STANDARD ............................................................................................... 6

DISCUSSION .......................................................................................................... 7

    I.    Specific Jurisdiction .............................................................................. 7

    II.    General Jurisdiction .............................................................................. 9

    III.    Conspiracy Jurisdiction ...................................................................... 10

    IV.    Due Process ......................................................................................... 12

    V.    Venue .................................................................................................. 12

    VI.    Transfer Venue .................................................................................... 14

    VII.    Failure to State a Claim ...................................................................... 16

        A.    False Light .................................................................................... 16

        B.    Intentional Infliction of Emotional Distress ................................ 17

        C.    Aiding and Abetting Harassment and Retaliation Under California Law ............. 18

        D.    Without an underlying tort, there is no civil conspiracy. ............ 19

    VIII.    Conclusion ......................................................................................... 19

CERTIFICATE OF COMPLIANCE ...................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abadi v. Am. Airlines, Inc.*,
    No. 23-CV-4033 (LJL), 2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) ...................................2

*Alexander & Alexander Inc. v. Fritzen*,
    68 N.Y.2d 968 (1986) ...................................................................................................... 12, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................................16

*Aybar v. Aybar*,
    177 N.E.3d 1257 (2021) ...........................................................................................................10

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999).........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................................16

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997).............................................................................................................8

*Blanco v. Success Acad. Charter Sch., Inc.*,
    722 F.Supp.3d 187 (S.D.N.Y. 2024) .......................................................................................18

*BNSF Ry. Co. v. Tyrrell*,
    581 U.S. 402 (2017).....................................................................................................................10

*Brady v. NYP Holdings, Inc.*,
    No. 21-CV-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022)....................................17

*Cain v. Hearst Corp.*,
    878 S.W.2d 577 (Tex. 1994).....................................................................................................17

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) ........................................................................................................11

*Convergen Energy LLC v. Brooks*,
    2020 WL 5549039 (S.D.N.Y., Sept. 16, 2020) ........................................................................1

*Costanza v. Seinfeld,*
    181 Misc.2d 562 (Sup. Ct. N.Y. Cty. 1999), *aff'd as modified*, 279 A.D.2d 255
    (2001) ...................................................................................................................... 17

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.,*
    No. 23-CV-7106 (LJL), 2024 WL 1533189 (S.D.N.Y. Apr. 8, 2024) ......................... 8

*Creative Photographers, Inc. v. Televisa, S.A.B.,*
    No. 23-cv-7106 (LJL), 2025 WL 388401  (S.D.N.Y., Feb. 4, 2025) ................................. 1, 6, 7

*D.H. Blair & Co., Inc. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) ................................................................................. 7, 14

*Diaz-Roa v. Hermes L., P.C.,*
    No. 24-CV-2105 (LJL), ---F.Supp.3d ---, 2024 WL 4866450 (S.D.N.Y. Nov.
    21, 2024) ............................................................................................................ 9, 14

*DiStefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001) ......................................................................................... 6

*Edwardo v. Roman Cath. Bishop of Providence,*
    66 F.4th 69 (2d Cir. 2023) .......................................................................................... 8

*Everything Yogurt Brands, LLC v. Bianco,*
    No. 23-CV-01161 (LJL), 2024 WL 3497757 (S.D.N.Y. July 22, 2024) ....................... 8

*Fisk v. Letterman,*
    424 F.Supp.2d 670 (S.D.N.Y. 2006) ................................................................... 12, 19

*FrontPoint Asian Event Driven Fund, L.P. V. Citibank, N.A.,*
    No. 16 Civ. 5263 (AKH), 2017 WL 3600425 (S.D.N.Y., Aug. 18, 2017) .................... 11

*Gmurzynska v. Hutton,*
    257 F.Supp.2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) .................. 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) ................................................................................................. 10

*Grupo Dataflux v. Atlas Glob. Grp., L.P.,*
    541 U.S. 567 (2004) .................................................................................................... 2

*Henry v. Fox News Network LLC,*
    629 F.Supp.3d 136 (S.D.N.Y. 2022) ......................................................................... 17

*Hustler Mag. v. Falwell,*
    485 U.S. 46 (1988) .................................................................................................... 17

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ................................................................................................7

*Johnson v. Bearfoot Companies, LLC*,
 No. 02-23-00366-CV, 2024 WL 2202033 (Tex. App.-Fort Worth May 16,
 2024, no pet.) ........................................................................................................17

*Keeton v. Hustler Mag., Inc.*,
 465 U.S. 770 (1984) ..............................................................................................11

*Kinsey v. New York Times Co.*,
 991 F.3d 171 (2d Cir. 2021) ............................................................................3, 16

*Lee v. Bankers Tr. Co.*,
 166 F.3d 540 (2d Cir. 1999) ..................................................................................16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
 673 F.3d 50 (2d Cir. 2012) ................................................................................7, 12

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011) ................................................................................................16

*Matthews v. Malkus*,
 377 F.Supp.2d 350 (S.D.N.Y. 2005) ....................................................................17

*Megna v. Biocomp Labs. Inc.*,
 166 F.Supp 3d 493 (S.D.N.Y. 2016) ......................................................................7

*Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd.*,
 No. 20-CV-7397 (LJL), 2024 WL 3498180 (S.D.N.Y. July 22, 2024) ..................6

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
 599 F.3d 102 (2d Cir. 2010) ..................................................................................14

*P.C. v. Driscoll*,
 No. 24-CV-2496 (LJL), 2025 WL 104522 (S.D.N.Y. Jan. 15, 2025) ..............1, 13

*Padula v. Lilarn Props. Corp.*,
 84 N.Y.2d 519 (1994) ............................................................................................16

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
 946 N.E.2d 159 (N.Y. 2011) ..................................................................................8

*Raymond Loubier Irrevocable Tr. v. Loubier*,
 858 F.3d 719 (2d Cir. 2017) ....................................................................................2

*Smith v. BP Lubricants USA Inc.*,
    64 Cal.App.5th 138 (2021) ................................................................18

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ...........................................................6, 8

*Texas v. Florida*,
    306 U.S. 398 (1939) ..........................................................................13

*Triano v. Gannett Satellite Info. Network, Inc.*,
    Nos. 09–CV–2497 (KMK), 09–CV–2533 (KMK), 2010 WL 3932334
    (S.D.N.Y. Sept. 29, 2010) ................................................................17

**Statutes**

28 U.S.C. § 124(d)(1) ...............................................................................1

28 U.S.C. § 1404(a) ................................................................................14

28 U.S.C. § 1406(a) ................................................................................14

NY CPLR § 301 ....................................................................................7, 9

NY CPLR § 302 ...............................................................................7, 8, 9

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTIONS TO DISMISS OR, IN THE
## ALTERNATIVE, MOTION TO SEVER AND TO TRANSFER VENUE

Jed Wallace ("Wallace") and Street Relations, Inc. ("Street") (collectively "Defend-ants") move to dismiss the claims of Blake Lively ("Lively" or "Plaintiff") brought against them for the first time[1] in her Amended Complaint ("AC," Dkt. 84) (February 18, 2025) for (i) lack of personal jurisdiction, (ii) improper venue, and (iii) failure to state a claim. In the alternative, De-fendants move to sever the claims against them and to transfer venue to the United States District Court for the Western District of Texas where a previously-filed case involving the same parties and allegations is pending and where Lively's claims could have been brought.[2] *Jed Wallace and Street Relations, Inc. v. Blake Lively,* 1:25-cv-00163 (Dkt. No. 1) (W.D. Tex., February 4, 2025) ("First Filed Case").

### BACKGROUND

The rules regarding motions to dismiss are familiar, and for failure to state a claim the Court is limited to reviewing and assuming to be true "the well-pleaded allegations of the [AC] as sup-plemented by any documents incorporated by reference." *Creative Photographers, Inc. v. Televisa, S.A.B.*, 23-cv-7106 (LJL), 2025 WL 388401, *1 (S.D.N.Y., Feb. 4, 2025) ("*Televisa*"). For the personal jurisdiction and venue motions the Court is not so limited "but may also consider any affidavits, declarations, or exhibits submitted by the parties." *Id.* at *2. *See P.C. v. Driscoll,* No. 24-CV-2496 (LJL), 2025 WL 104522, *4 (S.D.N.Y. Jan. 15, 2025) ("*Driscoll*") ("A court applies the

---

[1] Neither Wallace nor Street were sued in the original complaint. *See generally* Dkt. No. 1.

[2] Lively previously sued Wallace in a Texas state court within the Austin Division of the United States District Court for the Western District of Texas (28 U.S.C. § 124(d)(1)) making virtually identical allegations to those she asserts here. Lively nonsuited that case without prejudice on Feb-ruary 4, 2025. *In re Blake Lively, Petitioner , Requesting Deposition of Jed Wallace ,* Cause No. 25-0200-DCF in the District Court for Hays County, Texas (January 21, 2025) ("Texas Case"). We ask the Court to take judicial notice of the First Filed and Texas Cases. *See Convergen Energy LLC v. Brooks,* 2020 WL 5549039, at *6 n.2 (S.D.N.Y., Sept. 16, 2020)("The Court may take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties.").

same standard of review in Rule 12(b)(3) dismissals as Rule 12 (b)(2) dismissals for lack of jurisdiction."). Attached as Exhibit A is Mr. Wallace's Declaration. We turn first to the 12(b)(2) motion to dismiss for lack of personal jurisdiction.

## I.    Allegations in the AC Regarding Personal Jurisdiction

### A.    The Relevant Parties

The Plaintiff, who "resides in New York, New York," is "an actress and entrepreneur who co-starred and served as executive producer for" the Film, *It Ends With Us*. ("Film") AC ¶¶1, 56. She claims to have been sexually harassed by certain defendants and thereafter "was unlawfully retaliated against for coming forward and reporting sexual harassment that occurred against her and others on the set of (the Film)." *Id.* ¶1. She alleges only three causes of action against Wallace and Street: (i) Aiding and Abetting Harassment and Retaliation in violation of California law *Id.* ¶¶408–415; (ii) Intentional Infliction of Emotional Distress *Id.* ¶¶434–439; and (iii) False Light Invasion of Privacy also under California law (New York and Texas do not recognize this cause of action) *Id.* ¶¶447–453. The 15th Cause of Action (conspiracy), which includes Wallace and Street, is not a cognizable claim under California, Texas or New York law. *See Abadi v. Am. Airlines, Inc.*, No. 23-CV-4033 (LJL), 2024 WL 1346437, at *53 n.57 (S.D.N.Y. Mar. 29, 2024) ("[C]ivil conspiracy … claim fails because each of New York, New Jersey, California, and Texas does not recognize civil conspiracy as an independent tort, and thus a cause of action alleging conspiracy to commit a tort stands or falls with a sufficiently-stated underlying tort.").

Street is a Texas corporation, it was a Texas corporation on the date it was sued, and its principal place of business has been in Texas since 2021. *See* Wallace Decl. ¶9, [3] It helps clients "navigate real-life human crisis, threats, traumas and mental health concerns." AC ¶66. "Wallace is an individual who resides in Dripping Springs, Texas," is "a self-employed PR Consultant who

---

[3] A party's legal status is measured as of the date it is sued. "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004); *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 723 n.2 (2d Cir. 2017).

offers crisis mitigation services" and is the "President, Director and Secretary of Street." *Id.* ¶65 Lively notes that Wallace has "no online presence (and) does not appear to have any public profiles on Facebook, Instagram, X or LinkedIn. *Id.* ¶219.

The other defendants are alleged to be residents of California (Wayfarer, Balboni, Heath, It Ends With Us Movie LLC, Nathan,[4] The Agency Group PR LLC and Abel) or Illinois (Sarowitz). *Id.* ¶¶57–64.

###    B.    Alleged Jurisdictional Facts

Lively alleges "on information and belief" that Wallace was hired in early August 2024 "to design and implement (the other Defendants') 'social combat' plan (and he) specializes in executing confidential and 'untraceable' campaigns across various social media platforms (including Tik-Tok, Instagram, Reddit and X) to shape public perception of his clients and their adversaries and to perpetuate those perceptions." *Id.* ¶¶216, 218. There is no allegation that any of this activity took place in or was directed at New York, and Lively has judicially admitted that Wallace worked "remotely" from home in Texas. *See* Exhibit 1 to the Wallace Decl. Indeed, Wallace denies that he engaged in this conduct at all. Wallace Decl. ¶¶17–31.

"On information and belief" the AC alleges that Wallace and Street were "to weaponize a digital army around the country, including New York and Los Angeles to create, seed, manipulate and advance disparaging content that appeared to be authentic on social media platforms and internet chat forums…." *Id.* ¶223. Wallace is also said, "on information and belief," "to transact and solicit business within the State (of New York)." *Id.* ¶72. It is alleged that communications were had with "at least one journalist at the *New York Post* and another at the *New York Times*" although the AC does not specifically claim that the communications were with Wallace. *Id.* ¶73. In any event, he denies communicating with the *Post* or the *Times*; that he transacts or solicits business in New York or that he was asked to or did weaponize a digital army across the country and/or

---

[4] Nathan is also alleged to be a resident of Brooklyn, New York "during a portion of the relevant period." AC ¶62.

targeted New York and Los Angeles. He never published, directly or indirectly, any information or content concerning Plaintiff, and his assignment was to monitor and analyze the media climates regarding the Film, Lively, and Baldoni, and his communications in that regard were with residents of California, not New York. *See* Wallace Decl. ¶¶17–31.

### C.   Other Evidence Relevant to Personal Jurisdiction

On January 21, 2025, Lively sued Wallace in Texas but ultimately non-suited the case on February 4, 2025, claiming that, the day before (February 3) at a pre-trial conference in *this* case, "counsel for Wayfarer, who is also counsel for Mr. Wallace, took the position" that "the underlying disputed issue in (the Texas Case) being (sic) raised and litigated in SDNY." True and correct copies of this Petition and the Motion to Non-Suit are attached to the Wallace Declaration as Exhibits 1 and 2. The statement to the Texas court is false. First, the undersigned was and is Wallace's counsel in this case and the Texas case, a fact that was known to Lively's Texas counsel on the day she made made the above representation to the Texas judge. Second, the undersigned did not appear at the February 3 hearing for the simple reason that Wallace had not yet been sued in this case and therefore could not have made and did not make the representation attributed to him by Lively's Texas counsel. Third, Wallace was not mentioned at the February 3 hearing and there was no representation by Wayfarer's counsel (or anyone else) that claims against him could or should be litigated in SDNY. We ask the Court to take judicial notice of the transcript of the February 3, 2025 hearing.

The Texas Case Petition alleges, just as she does in this case, that Lively and others on the set of the Film were "subject to a pattern of unprofessional and sexually harassing behavior," Texas Case ¶5, and thereafter she was subjected to a "retaliation plan." *Id.* ¶12. The allegations in the Texas Case regarding Wallace are repeated almost word-for word in this case. *Compare, e.g.,* Texas Case ¶13 ("Wallace … weaponized a digital army around the country including in New York and Los Angeles …") with this case, AC ¶38 ("Wallace …weaponized a digital army around the country from New York to Los Angeles …"); Texas Case ¶15 ("TAG engaged Wallace to assist

them in their unlawful, retaliatory 'social combat' campaign…") with this case, AC ¶216 ("TAG engaged Mr. Jed Wallace … to design and implement their 'social combat' plan.")

The Texas case also contains Lively's sworn judicial admissions that (i) "Wallace worked remotely from Dripping Springs, Texas …" ¶16; (ii) "a substantial part of the events giving rise to the claims that (Lively) seeks to investigate—specifically, Mr. Wallace's work on the "social manipulation" campaign—occurred in Hays County (Texas)" ¶35; and (iii) "a substantial part of the underlying events that would give rise to the claims (against Wallace) being investigated occurred in Hays County and Mr. Wallace resides in Hays County" ¶36.

The First Filed Case was commenced in Austin federal court on February 4, 2025, shortly after the Texas Case was non-suited. A true and correct copy of that pleading is attached to the Wallace Declaration as Exhibit 3. Lively's responsive pleading is due April 4, 2025. *See* Exhibit 4 to Wallace Declaration (email confirmation from her Texas counsel).

The First Filed Case asserted claims for Declaratory Judgment and Defamation, the latter occasioned, in part, by Lively's publication of allegations that Wallace and Street had sexually harassed her on the Film set, naming them as Respondents in a "Complaint of Employment Discrimination" filed with the California Civil Rights Department ("CRD Complaint") and "leaked to the press," as Plaintiff admits AC ¶¶294–95. The CRD Complaint is attached to the Wallace Declaration as Exhibit 5, and the Pleading attached to the CRD Complaint and made a part of it is attached as Exhibit 6. These allegations are demonstrably false as neither Wallace nor Street had anything to do with the movie's production and were certainly not on the Film's set. Wallace Decl. ¶27; *see also id.* ¶¶6, 16, 20.

Wallace attended college at Fordham University, and moved back home to Pennsylvania in late 1991. Since then, Wallace can only recall having visited the State of New York on four occasions: 2007, 2008, 2009, and 2024. Wallace Decl. ¶¶5, 6. Wallace conducted no business on any of those four trips. *Id.* ¶6 Wallace does not own, use, or possess any real property situated within New York. *Id.* ¶7. Wallace has been the sole owner and President of Street Relations, Inc. since its formation. *Id.* ¶8. Street Relations, Inc. was incorporated in Texas at the time it was joined as a

defendant in this case and Texas continues to be its state of incorporation and its principal place of business. *Id.* ¶9. It has no registered agent in New York, no property in New York, and no bank account in New York. *Id.* ¶11.

### PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on December 31, 2024. Dkt. No. 1. Plaintiff filed her amended Complaint ("AC") on February 18, 2025, adding Wallace and Street as defendants. Summons was issued to Wallace and Street on February 24, 2025, Dkt. No. 94, and was served February 26, 2025, on the undersigned counsel who accepted it that day. Wallace and Street have timely filed their motions to dismiss.

### LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) ("*Carozzi*") (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that jurisdiction is proper." *Televisa* at *3. The allegations in the complaint are taken as true to the extent they are uncontroverted by the defendants' affidavits. *Id.* However, allegations made on "information and belief," as here, are entitled to little weight. *See, e.g.*, *Multi Access Ltd. v. Guangzhou Baiyunshan Pharm. Holdings Co., Ltd.*, No. 20-CV-7397 (LJL), 2024 WL 3498180, *4 (S.D.N.Y. July 22, 2024) ("Conclusory allegations based only on information and belief are not sufficient to provide such factual support.").

If the affidavits conflict, the Court "construe[s] the pleadings and affidavits in the light most favorable to" plaintiffs, *Carozzi* at 84, but the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quotations omitted). "[C]onclusory allegations are not enough to establish personal jurisdiction." *Televisa* at 16

(quoting *Gmurzynska v. Hutton*, 257 F.Supp.2d 621, 625 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004)); *accord Megna v. Biocomp Labs. Inc.*, 166 F.Supp 3d 493, 496–97 (S.D.N.Y. 2016).

## DISCUSSION

Defendants should be dismissed because Plaintiff has failed to establish that the Court may exercise personal jurisdiction over them. In cases like this one "federal courts are to apply the personal jurisdiction rules of the forum state, provided those rules are consistent with the requirements of Due Process." *Televisa* at *6 (federal question jurisdiction); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)("In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state."). In New York there are two ways to exercise jurisdiction over a non-resident: General jurisdiction pursuant to N.Y. CPLR § 301 and specific jurisdiction pursuant to N.Y. CPLR § 302. In this case Plaintiff relies on both. *See* AC ¶¶70, 72.

## I.    Specific Jurisdiction

"The New York long-arm statute does not extend in all respects to the constitutional limits established by *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir. 2012) ("*Licci*"). So in determining specific personal jurisdiction over a non-domiciliary, New York courts engage in a two-step analysis. *See id.*; *Televisa* at *6. The first step is the application of New York's long-arm statute. If the exercise of personal jurisdiction is deemed appropriate pursuant to the long-arm statute, the second step is to determine whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. Plaintiff satisfies neither step in this case.

The New York long-arm statute provides four ways to gain specific personal jurisdiction over a defendant. None apply.

First, neither Wallace nor Street "transact[] any business within the state or contracts anywhere to supply goods or services in the state," from which the causes of action arise. *See* N.Y. CPLR § 302(a)(1). A foreign party "transacts business" in New York when, looking at the totality of the circumstances, he "purposefully avails [himself] of the privilege of conducting activities

within [New York], thus invoking the benefits and protections of its laws." *Everything Yogurt Brands, LLC v. Bianco*, No. 23-CV-01161 (LJL), 2024 WL 3497757, *5 (S.D.N.Y. July 22, 2024). "There are no allegations, for example, that [Wallace and/or Street] came to New York to" do any of the activities alleged against them. *See id.* at *6; *see also* Wallace Decl. ¶¶13–14, 16 (swearing Wallace did none of his work in New York) and Plaintiff has judicially admitted that Wallace "worked remotely from Dripping Springs, Texas...." Texas Case ¶16.

Second, Wallace and Street were not "within the state" for any of the conduct alleged in the Amended Complaint. The Second Circuit has held that Section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *accord Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 75 (2d Cir. 2023); *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, No. 23-CV-7106 (LJL), 2024 WL 1533189, at *9 (S.D.N.Y. Apr. 8, 2024). As Lively has previously alleged under oath, in the Texas Case ¶36 ("a substantial part of the underlying events that would give rise to the claims being investigated occurred in Hays County"), and Wallace swears, *see, e.g.,* Wallace Decl. ¶16, his actions took place in Texas, not New York.

Third, specific jurisdiction is not proper under § 302(a)(3)(ii). To establish jurisdiction under CPLR § 302(a)(3)(ii), Plaintiff must allege that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 162 (N.Y. 2011); *see also Creative Photographers,* 2024 WL 1533189, at *10. Beyond the barebones, conclusory allegations, Lively does not even allege (4) and (5) as to Wallace and Street. *See* AC ¶72 (conclusory § 302 allegation stringing elements together); *see also In re Terrorist Attacks*, 714 F.3d at 673 (the Court need not "accept as true a legal conclusion couched as a factual allegation").

The only concrete allegation connecting Wallace and Street with New York is a group allegation with other Defendants, that "Ms. Nathan, Mr. Abel, Mr. Wallace, and Street targeted New York by, among other things, communicating with (or causing content to be provided to) journalists, content creators, and media entities based in New York, including at least one journalist at the *New York Post* and another at the *New York Times*." *See* AC ¶73. That allegation is unequivocally controverted by Wallace and Street because:

- Neither Wallace nor Street communicated or caused content to be provided to journalists, content creators, or media entities in New York, Wallace Decl. ¶¶16–19;

- In fact, Wallace's role was not to post anything on the internet, and he even advised the Wayfarer team that there was nothing for them to do, Wallace Decl. ¶¶17–26;

- Wallace did not speak to a journalist at the *New York Post* or at the *New York Times*, Wallace Decl. ¶29.

Lively's allegations are nothing more than conclusory allegations based on information and belief regarding Wallace and Street. *See, e.g.,* AC ¶72.

Fourth, § 302(a)(3)(i) "replac[es] the fourth and fifth elements" of § 302(a)(3)(ii) with its own about regularly conducting business in New York. *Diaz-Roa v. Hermes L., P.C.*, No. 24-CV-2105 (LJL), ---F.Supp.3d ---, 2024 WL 4866450, at *8 (S.D.N.Y. Nov. 21, 2024). But again, beyond a conclusory allegation, Lively does not allege any facts supporting that Wallace "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered" in New York and there are none. *See* § 302(a)(3)(i).

None of the four New York long-arm statute tests are met.

## II.    General Jurisdiction

There is no general jurisdiction over Wallace or Street. Plaintiff's sole allegation regarding general jurisdiction reference §301 N.Y. CPLR (the general jurisdiction section), and concludes: "all Defendants systematically and continuously conduct and solicit business within New York and have availed themselves of the privileges of conducting business in the State of New York." AC ¶70.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)(cite omitted); *see also BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (holding that it would be "exceptional case" for corporation to be "at home" outside of place of incorporation and principal place of business); *Aybar v. Aybar*, 177 N.E.3d 1257, 1265, 1265 n.6 (2021) (noting the change in Supreme Court precedent on jurisdiction affects its interpretation of Section 301).

Wallace is domiciled in Texas. Wallace Decl. ¶3; *cf. also* AC ¶65. There is no general personal jurisdiction over Wallace. *See Goodyear*, 564 U.S. at 924. Street is incorporated in Texas and its principal place of business is Texas. Wallace Decl. ¶9. Lively does not allege any facts making this an "exceptional case" excusing her from the "at home" rule that a corporation's general jurisdiction as limited to its place of incorporation or principal place of business. *See, e.g.*, *BNSF*, 581 U.S. at 413.

### III.     Conspiracy Jurisdiction

In a single paragraph Plaintiff alleges, without specifically mentioning Wallace or Street, that "this Court may exercise personal jurisdiction over Defendants because, as further alleged herein, Defendants each participated in a civil conspiracy and, on numerous occasions, individual co-conspirators engaged in overt acts in furtherance of that conspiracy that had sufficient contacts with New York to subject that co-conspirator to jurisdiction in New York." AC ¶71. Plaintiff then provides "just a few examples," (AC ¶73), which lists New York activities such as a January 4, 2024, meeting which, if it occurred, is months prior to when Plaintiff says Wallace and Street were first involved in this matter (August 2024). *Id.* ¶216. All of the other examples relate to other defendants with the exception of the group allegation which Wallace and Street have denied.

Plaintiff's 15th Cause of Action (Conspiracy) consists of four one sentence paragraphs which make no additional factual assertion. Although Conspiracy Jurisdiction exists, "[F]ederal courts have been increasingly reluctant to extend this theory of jurisdiction beyond the context of

New York's long-arm statute." *See FrontPoint Asian Event Driven Fund, L.P. V. Citibank, N.A.,* 2017 WL 3600425, *8 (S.D.N.Y., Aug. 18, 2017) (internal quote omitted). As we have seen, the New York long arm statute does not apply.

To allege a conspiracy theory of jurisdiction, "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). While evaluating these factors, the Court must keep in mind "that due process demands that courts assess '[e]ach defendant's contacts ... individually,'" *see id.* at 84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)), even if in-forum acts by a co-conspirator can be imputed to another co-conspirator, *see id.* at 87.

Because Wallace did not "participate[] in [a] conspiracy" to commit tortious conduct or unlawful acts against Lively—negating element 2—there is no personal jurisdiction. Lively never connects the dots in her conspiracy allegations to her factual allegations, *see* AC ¶¶479–82. But Lively alleges a "retaliatory scheme to silence her, and others, from speaking out about the hostile environment*," id.* ¶55, and that Wallace and Street engaged in a "retaliation scheme against Ms. Lively … relying on direct and constant media engagement, the seeding of content on traditional and social media platforms, the boosting of content (sometimes the very content that TAG and its affiliates had seeded), the suppressing of negative content about Mr. Baldoni, and the amplifying of negative content about Ms. Lively (including through engagement via comments on social media)," *id.* ¶230.

If that conspiracy exists, which Wallace doubts, he has no knowledge of it because he was not involved. *See* Wallace Decl. ¶31. Again, Wallace's involvement was to mere passive observation and analysis of the media environment. *Id.* ¶¶16–25, 30. After that observation period, Wallace's recommendation was that there was no public relations damage control to do. *Id.* ¶25. Wallace's assessment, instead, was that people organically supported Baldoni and disliked Lively for

her tone-deaf promotion of the Film. *Id.* Wallace had no desire to nor did he damage Lively or her reputation, nor did he act on the imagined desire with anyone. *See Id.* ¶31.

Further, a civil conspiracy requires an underlying tortious act. *Fisk v. Letterman*, 424 F.Supp.2d 670, 677 (S.D.N.Y. 2006) ("New York law only recognizes an action for civil conspiracy if it is connected to a separate underlying tort.") (citing *Alexander & Alexander Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)). For the reasons below, Lively fails to state a claim that Wallace or Street Relation engaged in any tort.

## IV.    Due Process

Even if Defendants' activities subject them to jurisdiction under the New York long-arm statute (and they do not) the Court must still determine whether "the exercise of jurisdiction would comport with the Due Process Clause." *Licci* at 60. This analysis proceeds in two steps, first whether given the totality of the circumstances that is, the quality and quantity of the defendant's contacts, due process is satisfied and second, whether the assertion of jurisdiction would satisfy fair play and substantial justice. *Id.*

There is literally nothing in the AC that supports the notion, fundamental to due process, that Defendants availed themselves of the privilege of doing business in New York. And when considering fairness and substantial justice the Court should keep in mind that Lively sued Wallace first—in Texas. She claims in this case that he violated *California* law (false light and aiding and abetting discrimination) and, if California law applies, it is not New York that has the most significant relationship to Wallace's and Street's conduct. Furthermore, there is already a forum—Texas—previously invoked by Lively which awaits her potential compulsory counterclaim. (First Filed Case).

## V.    Venue

The Court's analysis of the Amended Complaint is the same under the rule governing dismissal for improper venue as it was for personal jurisdiction and requires a two-step process. First, the Court should identify the nature of the claims and acts or omissions that Plaintiff alleges gives

rise to those claims. Second, the Court should determine whether a substantial part of those acts or omissions occurred in the district where the case was filed. *Driscoll* at *5. "The Plaintiff bears the burden of showing … that venue is proper for *each claim* against *such defendant*." *Driscoll* at *6 (emphasis added).

Here, two of the three substantive claims are expressly based on *California* substantive law and, under the recognized choice of law analysis applicable to this case, for California law to apply then a substantial amount of the events must have taken place there, not New York. In fact, as we have explained, all of the events regarding Wallace and Street occurred in Texas as Plaintiff has admitted. And, of course, as we have pointed out before, and will again, neither New York nor Texas recognize one of Plaintiff's claims—false light.

We also note that Plaintiff's reliance on § 1391(c) for Wallace is misplaced. Plaintiff admits that Wallace, a natural person, is a resident of the judicial district in which he is domiciled, which is the Western District of Texas. *See* Wallace Decl. ¶¶3 ,4. That also makes him a Texas domiciliary and resident, for purposes of venue, which rules out Wallace from being a resident of New York. *See Texas v. Florida*, 306 U.S. 398, 429 (1939) ("[A] person must have one domicile, and can have only one, is an historic rule of the common law[.]").

So, the "plaintiff bears the burden of showing that venue is proper once an objection is raised, and it must show that venue is proper for *each claim* against *each defendant*." *Driscoll*, at *6 (emphasis added).

Just like for personal jurisdiction, Lively makes little effort connecting Wallace to New York. Indeed, Lively alleged under penalty of perjury in Texas that venue is proper in the Hays County, Texas, a county in the Western District of Texas, "because a substantial part of the underlying events that would give rise to the claims being investigated occurred in Hays County". Ex. 1 (Rule 202 Petition) ¶36. And she was right. Wallace's conduct was in Texas and decidedly not in New York. Wallace's earliest involvement with his limited role with *It Ends With Us* and Wayfarer was August 2024. Wallace Decl. ¶16. Wallace was the only employee of Street that engaged in that limited role. *Id.* None of that work was in New York. *Id.*

Lively's only allegation connecting Wallace to New York is the group allegation with other Defendants, that "Mr. Wallace, and Street Relations Inc. targeted New York by, among other things, communicating with (or causing content to be provided to) journalists, content creators, and media entities based in New York, including at least one journalist at the *New York Post* and another at the *New York Times*." *See* AC ¶73. That allegation is unequivocally false as to Wallace and Street who did not communicate or cause content to be provided to any journalists, content creators, or media entities anywhere, let alone New York. *See* Wallace Decl. ¶¶16, 29.

Lively has no basis to assert proper venue over Wallace in the District.

## VI.    Transfer Venue

A district court may exercise its discretion to transfer venue "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) or simply "in the interest of justice" transfer the case to any district "in which it could have been brought" without specific regard to convenience. 28 U.S.C. § 1406(a). Among the factors to be considered in determining whether to grant a motion to transfer venue for convenience "are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Gottdiener*, 462 F.3d at 106–07 (internal quotation marks and alteration omitted); *see also New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

### *The plaintiff's choice of forum*

The first-filed rule puts a large thumb on the scale in favor of transfer. The first-filed rule states that, in determining the proper venue, "[w]here there are two competing lawsuits, the first suit should have priority." *Gottdiener*, 462 F.3d at 106; *see also Diaz-Roa v. Hermes L., P.C., No. 24-CV-2105 (LJL)*, 2024 WL 4866450, at *28 (S.D.N.Y. Nov. 21, 2024) ("It is well established the existence of a related action pending in the transferee court weighs heavily towards transfer."). Wallace filed his claims for Defamation and Declaratory Judgment against Lively on February 4,

2025. Original Complaint, Dkt. 1, *Wallace et al. v. Lively*, Case 1:25-cv-00163 (W.D. Tex.). Lively did not add Wallace until two weeks later. *Compare* AC ¶¶65–66 (including Wallace and Street as parties) *with generally*, Dkt. 1 (Lively's original complaint not naming either).

*Witnesses and documents*

Many of the witnesses reside in California and Texas rather than located in the District. *See* AC ¶¶57–66

*The convenience of parties*

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████

Further, travel-to-and from New York would be hard financially on Wallace in two ways. Not only would consistent travel to-and-from New York be a major expense for him, it would also disrupt his ability to make a living, as he does most of his work in Texas. Wallace Decl. ¶35.

*Locus of operative facts*

As explained above, the locus of operative facts—at least as to Wallace and Street —are in Texas, where he observed social media posts and other forms of media. The remaining conduct, as Lively alleges it, seems to have taken place other than in New York. *See, e.g.*, AC ¶¶38 (Texas), 224 (Hawaiʻi), 294 (California) .

*The relative means of the parties*

Wallace perceives his financial resources to pale in comparison to Lively and her husband. Wallace Decl. ¶36.

\* \* \*

In sum, the weight of these factors, in particular the first-filed rule, weighs in favor of transfer of Lively's claims against Wallace and Street to Texas.

### VII.   Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

### A.  False Light

Under New York choice-of-law principles, either New York or Texas law applies to Lively's false light claim. *See, e.g.*, *Kinsey v. New York Times Co.*, 991 F.3d 171, 177–78 (2d Cir. 2021) (considering primarily defamation plaintiff's domicile—here, New York—and "where the statements emanated,"—here, allegedly Texas). Under Lively's theory of venue and personal jurisdiction, New York is the epicenter of this case. If the Court is reaching the merits, it is necessarily accepting Plaintiff's theory that New York has the most significant relationship to the claims and certainly to the exclusion of California where no conduct is alleged to have taken place. New York applies the law of the state with the most significant interest in the litigation. *See Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citing *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994)).

If New York law applies, Lively's claim for False Light must be dismissed because "[t]here is no tort of false light invasion of privacy under New York law." *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631, at *8 (S.D.N.Y. Mar. 31, 2022) (dismissing claim citing *Triano v. Gannett Satellite Information Network, Inc.*, 2010 WL 3932334, at *4 (S.D.N.Y. Sept. 29, 2010)); *see also Matthews v. Malkus*, 377 F.Supp.2d 350, 358 (S.D.N.Y. 2005) ("Under New York law, invasion of privacy based on publicity which placed [a plaintiff] in false light is not a cognizable claim"); *see also Costanza v. Seinfeld*, 181 Misc.2d 562, 564 (Sup. Ct. N.Y. Cty. 1999) (noting that "New York law does not and never has allowed a common law claim for invasion of privacy"), *aff'd as modified*, 279 A.D.2d 255 (2001); *Henry v. Fox News Network LLC*, 629 F.Supp.3d 136, 151 (S.D.N.Y. 2022) ("New York does not recognize a separate cause of action for false light/invasion of privacy").

The result is the same under Texas law. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) ("We reject the false light invasion of privacy tort[.]"); *see also Johnson v. Bearfoot Companies, LLC*, No. 02-23-00366-CV, 2024 WL 2202033, at *6 (Tex. App.—Fort Worth May 16, 2024, no pet.) ("[T]he Texas Supreme Court [has] expressly declined to recognize false-light invasion-of-privacy claims based on the publication of false statements about the plaintiff.").

### B.    Intentional Infliction of Emotional Distress

Lively concedes that she "is a public figure." AC ¶461. As such, she must satisfy the constitutionally required "actual malice" standard as an element of her claim. *Hustler Magazine v. Falwell,* 485 U.S. 46, 53 (1988). "Actual malice" means that "a public figure … may not recover for the tort of intentional infliction of emotional distress … without showing in addition that the publication contains a false statement of fact which is made with 'actual malice,' *i.e.*, with knowledge that the statement was false … or that it was made with reckless disregard as to whether or not it was true." *Id.*

There is no pleading that Wallace or Street made any particular false statement but only that "Defendants," without distinguishing among them, "publicly disclosed information or material regarding Plaintiff's marketing decisions, moral character, private life, and family which showed Ms. Lively in a false light." AC ¶448. As to "actual malice" she pleads only that the undifferentiated "Defendants knew the public disclosures would create a false impression about Ms. Lively or acted with reckless disregard for the truth." *Id.* ¶450.[5]

In addition to failing to plausibly allege "actual malice," the conduct at issue, whatever it is, cannot possibly satisfy the "outrageousness" element; that is, the conduct must be "extreme, outrageous, and beyond the bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Blanco v. Success Acad. Charter School, Inc.,* 722 F.Supp.3d 187, 217 (S.D.N.Y. 2024). As this Court explained, "IIED is a highly disfavored [tort] under New York law." *Id.* Whether the conduct alleged may be reasonably regarded as sufficiently extreme or outrageous "is a matter for the court to determine in the first instance." *Id.*

Even if Plaintiff's allegations against Wallace and Street are plausible (and they are not) it is hard to imagine how a public relations point/counterpoint between two actors (three if you count Plaintiff's husband) could rise to a cognizable IIED claim. This one does not, even giving Plaintiff's deficient pleading all benefits of doubt.

### C.    Aiding and Abetting Harassment and Retaliation Under California Law

The final claim, against Wallace and Street is aiding and abetting harassment and retaliation under a California employment rights statute. But aiding and abetting under California law requires that Wallace and Street knew that others' conduct violated the California employment statute, the Fair Employment and Housing Act. *See, e.g.*, *Smith v. BP Lubricants USA Inc.*, 64 Cal.App.5th 138, 146 (2021). The first mention of the FEHA is not until the cause of action is alleged, and only

---

[5] Earlier, Plaintiff alleges that one of the Defendants' attorneys published statements "with actual malice" claiming that "Defendants know that the core narrative advance by Mr. Freedman—that Ms. Lively fabricated made-up sexual harassment claims to seize control of the Film—is false." AC ¶¶300–301.

includes the conclusory allegation that Wallace and Street "knew their actions constituted unlawful violation of the FEHA." AC ¶413. Lively never alleges any concrete allegations about how or why Wallace or Street knew that the FEHA existed, let alone that anyone's conduct violated it in this case. *See generally* AC ¶413.

Furthermore, the harassment is alleged to have occurred during the production of the Film, long before Wallace and Street were allegedly involved in August 2024 in this matter. And the so-called retaliation is addressed in a part of a single sentence which alleges that Wallace and Street "aided and abetted the discriminatory conduct … including, but not limited to by participating in the above-described coordinated "astroturfing" campaign to discredit and "bury" Ms. Lively. AC ¶411.

That claim, with the other two claims, should be dismissed for failure to state a claim.

### D. Without an underlying tort, there is no civil conspiracy.

"New York law only recognizes an action for civil conspiracy if it is connected to a separate underlying tort." *Fisk*, 424 F.Supp.2d at 677 (citing *Alexander & Alexander Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)). For the reasons above, Lively fails to state a claim that Wallace or Street Relation engaged in any tort, so the civil conspiracy claim against Wallace and Street should be dismissed.

### VIII.   Conclusion

As the Court has surely noticed, this case attracts significant publicity even as, perhaps, events of more consequence take place around the world. But this particular circus doesn't need any more rings. The claims against Wallace and Street should be dismissed either on the merits or for lack of jurisdiction or improper venue or, in the alternative, the claims severed and transferred. After all, Lively has already indicated a willingness to do battle (and play[6]) in Texas. So Texas

---

[6] *See, e.g.,* Sonia Horon, *Blake Lively gives bizarre response to the chaotic SXSW premiere of Another Simple Favor*, Daily Mail https://www.dailymail.co.uk/tvshowbiz/article-14488651/blake-lively-response-sxsw-premiere-simple-favor.html, (Mar. 12 2025); Blake Lively, *Final Austin Roundup*,

would be a logical spot for hostilities to continue unless, of course, the Court dismisses her claims on the merits with prejudice in which case, as Movants, It Ends With Us.

Dated: March 19, 2025                          Respectfully submitted,

                                               JACKSON WALKER LLP

                                               S/ *Charles L. Babcock*
                                               Charles L. Babcock
                                               SDNY #5451117
                                               Joel R. Glover
                                               SDNY #5697487
                                               JACKSON WALKER LLP
                                               1401 McKinney, Suite 1900
                                               Houston, TX 77010
                                               (713) 752-4200
                                               cbabcock@jw.com
                                               jglover@jw.com

                                               **ATTORNEYS FOR DEFENDANTS
                                               JED WALLACE, AN INDIVIDUAL AND
                                               STREET RELATIONS, INC.**

---

Instagram, https://www.instagram.com/blakelively/p/DHFlbnRAgQS/?img_index=1 (March 12, 2025).

**CERTIFICATE OF COMPLIANCE**

This memorandum of law complies with S.D.N.Y. Local Civil Rule 7.1, because it meets the formatting requirements, including being 12-point type or larger, with one-inch margins, and the body text is exactly double-spaced. This memorandum also has 6,622 words in the body, according to Microsoft Word 365's word count feature, meaning it does not exceed 8,750 words. This memorandum of law complies with Judge Liman's individual practices because it is fewer than 25 pages, and other parties in this case have agreed to a limit fewer than 30 pages for memoranda of law in support and in opposition.

S/ *Charles L. Babcock*
Charles L. Babcock