UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BLAKE LIVELY,<br><br>　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual,<br><br>　　　　　　　　Defendant. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Case: 1:24-cv-10049-LJL<br>(Consolidated for pretrial purposes with 1:25-cv-00449-LJL)<br>rel. 1:25-cv-00779-LJL |
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, JENNIFER ABEL, an individual, and STEVE SAROWITZ, an individual,<br><br>　　　　　　　　Plaintiffs,<br><br>　　- against -<br><br>BLAKE LIVELY, an individual, RYAN REYNOLDS, an individual, LESLIE SLOANE, an individual, VISION PR, INC., a New York corporation, and THE NEW YORK TIMES COMPANY, a New York corporation,<br><br>　　　　　　　　Defendants. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION BY THE NEW YORK TIMES COMPANY TO DISMISS CONSOLIDATED PLAINTIFFS' <u>FIRST AMENDED COMPLAINT</u>** |

Katherine M. Bolger
Sam F. Cate-Gumpert (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:   (212) 489-8230

*Attorneys for Defendant The New York Times Company*

# TABLE OF CONTENTS

**Page**

I. ARGUMENT ................................................................................................................. 1

    A. New York Law Applies to Plaintiffs' Claims ............................................................ 1

    B. Plaintiffs' Defamation Claim Fails ............................................................................ 2

        1. The Article and Video are Absolutely Privileged ..................................... 2

        2. The "Smear Campaign" Phrase is Protected Opinion ............................... 6

        3. Plaintiffs Have Not Plausibly Alleged Actual Malice .............................. 7

    C. The False Light Claim Fails ....................................................................................... 8

    D. The Tag-Along Claims Fail ....................................................................................... 9

    E. Plaintiffs Should Not Be Permitted a Fourth Amendment ....................................... 9

II. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ..............................6

*Atuahene v. City of Hartford*,
    10 F. App'x. 33 (2d Cir. 2001) ................................................................................................10

*Beary v. W. Publ'g Co.*,
    763 F.2d 66 (2d Cir. 1985)........................................................................................................5

*Brady v. NYP Holdings, Inc.*,
    2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) ......................................................................6, 10

*Carroll v. Trump*,
    664 F. Supp. 3d 550 (S.D.N.Y. 2023).......................................................................................4

*Cassava Scis., Inc. v. Bredt*,
    2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ..........................................................................8

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168 (2d Cir. 2001)......................................................................................................8

*Conti v. Doe*,
    535 F. Supp. 3d 257 (S.D.N.Y. 2021).......................................................................................6

*Crane v. Arizona Repub.*,
    972 F. 2d. 1511 (9th Cir. 1992) .............................................................................................4, 5

*Cummings v. City of New York*,
    2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) .............................................................................6

*Globaltex Grp., Ltd. v. Trends Sportswear, Ltd.*,
    2009 WL 1270002 (E.D.N.Y. May 6, 2009) ............................................................................9

*Goldberg v. TeachBK, Inc.*,
    2025 WL 296143 (N.D. Cal. Jan. 24, 2025) .............................................................................5

*Greenbelt Pub. Assn. v. Bresler*,
    398 U.S. 6 (1970)......................................................................................................................7

*Harvey v. Cable News Network, Inc.*,
    520 F. Supp. 3d 693 (D. Md. 2021)..........................................................................................7

*Heitkoetter v. Domm*,
    2024 WL 325134 (E.D. Cal. Jan. 29, 2024) ................................................................5

*Idema v. Wager*,
    120 F. Supp. 2d 361 (S.D.N.Y. 2000), *aff'd,* 29 F. App'x 676 (2d Cir. 2002) ...........5

*Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004) ......................................................................................2

*Jacob v. Lorenz*,
    626 F. Supp. 3d 672 (S.D.N.Y. 2022) ....................................................................2, 4

*Jones v. Inner City Press*,
    2024 WL 4403746 (C.D. Cal. Aug. 7, 2024) .............................................................6

*Kinsey v. New York Times Co.*,
    2020 WL 1435141 (S.D.N.Y. Mar. 23, 2020), *aff'd*, 991 F.3d 171 (2d Cir. 2021) ....3

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ......................................................................................2

*Komatsu v. City of New York*,
    2021 WL 3038498 (S.D.N.Y. July 16, 2021) ..........................................................10

*Mandel v. Hafermann*,
    503 F. Supp. 3d 946 (N.D. Cal. 2020) .......................................................................6

*Millennium Health, LLC v. EmblemHealth, Inc.*,
    240 F. Supp. 3d 276 (S.D.N.Y. 2017) .......................................................................9

*Nunes v. NBCUniversal Media, LLC*,
    643 F. Supp. 3d 403 (S.D.N.Y. 2022) .......................................................................4

*Nunes v. WP Co. LLC*,
    513 F. Supp. 3d 1 (D.D.C. 2020), *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022) ...............8

*PI, Inc. v. Quality Prods., Inc.*,
    907 F. Supp. 752 (S.D.N.Y. 1995) ............................................................................9

*Tacopina v. O'Keeffe*,
    2015 WL 5178405 (S.D.N.Y. Sept. 4, 2015) .............................................................5

*Treppel v. Biovail Corp.*,
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ...........................................................7

**State Cases**

*Baker v. Los Angeles Herald Exam'r*,
    42 Cal. 3d 254 (1986) ................................................................................................6

iii

*Camassar v. Day Publ'g Co.*,
  2015 WL 6761619 (Conn. Super. Ct. Oct. 9, 2015) ............................................................... 7

*Colt v. Freedom Comm'r*,
  109 Cal. App. 4th 1551 (2003) ............................................................................................. 5

*Conklin v. Laxen*,
  180 A.D.3d 1358 (4th Dep't 2020) ....................................................................................... 6

*Ferlauto v. Hamsher*,
  74 Cal. App. 4th 1394 (1999) ............................................................................................... 6

*Greenberg v. Spitzer*,
  155 A.D.3d 27 (2d Dep't 2017) ............................................................................................ 5

*Gross v. New York Times Co.*,
  82 N.Y.2d 146 (1993) ........................................................................................................... 6

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*,
  49 N.Y.2d 63 (1979) ............................................................................................................. 3

*Napoli v. New York Post*,
  2016 WL 6639053 (Sup. Ct. N.Y. Cty. Nov. 04, 2016), *aff'd*, 175 A.D.3d 433 (1st Dep't 2019) .................................................................................................................................. 5

*Okun v. Superior Ct.*,
  29 Cal. 3d 442 (1981) ........................................................................................................... 6

*Pease v. Tel. Pub. Co.*,
  121 N.H. 62 (1981) ............................................................................................................... 7

*SentosaCare LLC v. Lehman*,
  58 Misc. 3d 1216(A) (Sup. Ct. Kings Cty. 2018) ................................................................. 4

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004) ............................................................................................... 5

**State Statutes**

N.Y. Civil Rights Law 74 ............................................................................................................. 1

**Constitutional Provisions**

U.S. Constitution, amendment IV ................................................................................................ 9

**Other Authorities**

"How the New York Times Colluded with Blake Lively, According to Justin Baldoni Lawyer Bryan Freedman" The Megyn Kelly Show (Jan. 7, 2025), https://www.youtube.com/watch?v=XIfFOdAk02U at 2:28 (last visited Mar. 21, 2025) ........3

The New York Times Company ("*The Times*") respectfully submits this reply memorandum of law in further support of its motion to dismiss (Dkt. No. 105) ("MTD") the Consolidated Plaintiffs' ("Plaintiffs") First Amended Complaint (Dkt. No. 50) ("FAC").

It is easy to overlook, in all of Plaintiffs' bombast and spinning of conspiracy theories, that only a single statement is at issue: that Plaintiffs "orchestrated a smear campaign against Lively." FAC ¶ 267. As *The Times* has made clear, however, this statement is absolutely privileged as a fair report under N.Y. Civ Rights Law 74. MTD at 10-19. And even if that were not so, Plaintiffs have not come close to adequately alleging that the statement was a knowing falsehood under the actual malice standard or shown why the characterization is not a non-actionable opinion.

But the broader stakes are worth remembering. *The Times* did what a news organization should do: it reported on serious allegations of wrongdoing. It did so by covering accurately and fairly Blake Lively's complaint filed with a California state agency and by—not surprisingly for conscientious journalists—doing supplemental reporting on the allegations and reaching out to Plaintiffs and publishing their response. Were Plaintiffs to succeed in their misguided effort to recast acts of journalism as civil wrongs, the losers would be the public, which depends on the press to do research and to report on government proceedings and to cover controversies of legitimate public interest. That of course is why the law broadly protects the press from the kinds of misconceived legal attacks that Plaintiffs make here in the hope of silencing voices they would prefer not to hear.

## I. ARGUMENT

### A. New York Law Applies to Plaintiffs' Claims

Plaintiffs spend pages of their Opposition explaining why California law applies to this

1

matter.¹  Dkt. No. 127 ("Opp.") at 7-11.  *The Times* believes that dismissal is appropriate under either state's law, but the weight of the relevant authority (which Plaintiffs make little effort to distinguish) makes clear that New York law applies here.  *See Kinsey v. New York Times Co.*, 991 F.3d 171, 18 (2d Cir. 2021); *Jacob v. Lorenz,* 626 F. Supp. 3d 672, 684-85 (S.D.N.Y. 2022).

Plaintiffs claim that California law must apply because the Article is about residents of "Hollywood."  That is the same argument that was rejected in *Jacob*.  *See Jacob,* 626 F. Supp. 3d at 679-84 (arguing that California law applied because rise of the influencer industry, was based in L.A.).  The court properly saw that, because *The Times* is a New York paper and its journalists need to know what privileges will protect them at the time they are deciding whether to publish, New York applies.  *Id.* at 686.

Plaintiffs also argue that, unlike the plaintiff in *Jacob*, they never affirmatively alleged that the reporting "emanated" from New York. Opp. at 9-10.  That is false.  They allege that *The Times* and Lively worked "hand-in-glove" to publicize Lively's allegations.  *E.g.*, FAC ¶¶ 14, 17, 246.  Plaintiff also alleges that both *The Times* and Lively are located in New York.  FAC ¶¶ 307, 311.  In short, New York law applies.

> **B.** **Plaintiffs' Defamation Claim Fails**
>
> **1.** **The Article and Video are Absolutely Privileged**

*The Times*, working from Ms. Lively's complaint, reported that Plaintiffs "orchestrated a smear campaign against Lively" (FAC ¶ 267).  That is the sole statement at issue, and it is absolutely privileged as a fair report of the CRD Complaint.  MTD at 10-19.

Plaintiffs cannot save their case by cherry-picking phrases from the Article and the Video

---

¹ Plaintiffs do not dispute that there is no conflict between the California and New York fair report privileges.  The Court therefore should apply New York's privilege, even if it holds that California law otherwise applies.  *See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004); MTD at 7 n.7 (citing same).

to construct an argument that *The Times* affirmed as true the allegations in the CRD Complaint and therefore lost the protection of the fair report privilege. Opp. at 14-15. Plaintiffs' insistence that one or two phrases in the Video—for instance, Ms. Twohey's statement that text messages show "what really happened"—somehow vitiates the privilege ignores how the law actually operates: "a fair report analysis requires the court read the challenged statements in the context of the entire statement or publication as a whole." *Kinsey v. New York Times Co.,* 2020 WL 1435141, at *6 (S.D.N.Y. Mar. 23, 2020) (citation omitted), *aff'd*, 991 F.3d 171 (2d Cir. 2021). In fact, the New York Court of Appeals has been unequivocal that the "the language used [] should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979). The Court is to look to the Article and Video as a whole. Both parts of The Times's publication repeatedly inform the reader that *The Times* is reporting on the CRD Complaint: the Video is framed with the introduction "in a legal complaint Lively filed on Friday," the Article and the Video refer to the CRD Complaint six times, uses the words "allegations" and "claims" eleven times, links to the CRD Complaint embedded in the Article and, and includes Plaintiffs' vehement denial. Taken as a whole, any reasonable reader would understand *The Times* to be reporting on the allegations in the CRD Complaint, not offering them as fact. *See* MTD at 14-16.[2]

Moreover, the "what really happened" phrase in fact references the same texts that appear in the CRD Complaint. As Plaintiffs themselves note, the fair report analysis looks to whether the gist or sting of the reported facts "produce[] a different effect on the reader' than would" the CRD

---

[2] In fact, Plaintiffs must know this because their counsel has repeatedly affirmed, vouched for, and adopted his clients' allegations, presenting as fact that *The Times* engaged in wrongdoing and falsely claiming that *The Times* had a hand in actually drafting the CRD Complaint. *E.g.,* "How the New York Times Colluded with Blake Lively, According to Justin Baldoni Lawyer Bryan Freedman" The Megyn Kelly Show (Jan. 7, 2025), https://www.youtube.com/watch?v=XJfFOdAk02U at 2:28 (last visited Mar. 21, 2025).

Complaint. *See* Opp. at 14 (quoting *Crane v. Arizona Repub.,* 972 F. 2d. 1511, 1519 (9th Cir. 1992); *see Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 417 (S.D.N.Y. 2022) (privilege applies so long as "the report accurately capture[s] the 'gist'" of the official proceeding). The gist of the CRD Complaint is that Baldoni, Nathan, and Abel used social and traditional media to destroy Lively's reputation—that is, that they engaged in a "smear campaign." *E.g.*, MTD Ex. 3 ("CRD Complaint") ¶¶ 11, 13-14, 89, 90, 107(a)-(b), 120, 122, 137, 142, 167-69. That is the gist of the Article and Video, too, and as a result, they are fully privileged.

For what it's worth, the only texts or other information included in the Article that do not appear in the CRD Complaint *undercut*—rather than endorse—Lively's allegations, and create no liability for *The Times*. *See Jacob*, 626 F. Supp. 3d at 690 (statements in otherwise privileged article that were not fair reports were nonetheless non-actionable because they lacked defamatory meaning); *SentosaCare LLC v. Lehman*, 58 Misc. 3d 1216(A), at *7 (Sup. Ct. Kings Cty. 2018) (privilege applied to article that combined reporting on proceeding with "other information," because that other information did not "constitute libel"). For example, the Article describes how text messages show Baldoni "vacillate[d] ... about the tactics being deployed" and was concerned that Abel and Nathan were aggressively attacking Lively using bots, which Abel and Nathan denied doing. MTD Ex. 1 ("Article") at 11. The Article also notes that Lively "told people she worked with that [Baldoni and Heath's] behavior had improved [after] new protections" were put in place. *Id.* at 5. And it includes Plaintiffs' beliefs that Baldoni, Nathan, and Abel suspected that "Lively was using her own public relations team to create bad press about" Baldoni. *Id.* at 11. Far from ratifying the CRD Complaint, the allegedly unprivileged material published in the Article casts Plaintiffs in a *better* light than allegations in the CRD Complaint.[3]

---

[3] The cases Plaintiffs cite do not change this conclusion. *See Carroll v. Trump,* 664 F. Supp. 3d 550, 558-60 (S.D.N.Y. 2023) (noting that "[n]othing about the content or context of [the challenged] statement made it a 'report' of a judicial

4

More fundamentally, Plaintiffs' attempt to extract one sentence from the Video and make it some kind of "gotcha" moment finds no support in the law. "The purpose of providing immunity to fair and true reports of judicial [and official] proceedings is ... to encourage the dissemination of information ... serv[ing] the public interest" *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985) (citation omitted). For that reason, the privilege is broadly construed, not analyzed by microscopic word-by-word parsing. *See Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (section 74 enacted as a "broad protection on the press' right to report" because "[c]onstant punishment resulting from defamation suits ... would stifle ... an active, thriving, and untrammeled press, which is an indispensable component of any free and democratic society") (citations and internal quotations marks omitted), *aff'd,* 29 F. App'x 676 (2d Cir. 2002). No reasonable reader or viewer could miss the fact that *The Times* was reporting on the CRD Complaint.

Finally, little needs to be said about Plaintiffs' theorizing that *The Times*'s reporting was a conspiracy or collusion with Lively that defeats the privilege. Opp. at 2, 6. They are wrong. Courts consistently have held that the activity alleged in the FAC—receiving the CRD Complaint and communicating with Lively prior to filing—does not vitiate the privilege. *See Napoli v. New York Post*, 2016 WL 6639053, at *1 (Sup. Ct. N.Y. Cty. Nov. 04, 2016) (privilege applied where plaintiffs "alleged ... that [affiant] was in contact with defendants prior to filing the papers"), *aff'd*, 175 A.D.3d 433, 434 (1st Dep't 2019); *Tacopina v. O'Keeffe*, 2015 WL 5178405, at *1-2

---

proceeding."); *Greenberg v. Spitzer,* 155 A.D.3d 27, 49-50 (2d Dep't 2017) (challenged statement was "intertwined with allegedly defamatory remarks about Greenberg having engaged in fraud"); *Crane,* 972 F. 2d.,1519-20 (privilege applied despite newspaper's "independent characterization" of official documents); *Colt v. Freedom Comm'r*, 109 Cal. App. 4th 1551, 1560 (2003) (articles were privileged as fair reports because they "fairly describe the gist of plaintiffs' misconduct"); *Goldberg v. TeachBK, Inc.*, 2025 WL 296143, at *14 (N.D. Cal. Jan. 24, 2025) (statements that were unrelated to subject or content of official proceeding fell outside the privilege); *Heitkoetter v. Domm*, 2024 WL 325134, at *11 (E.D. Cal. Jan. 29, 2024) (California privilege did not protect portions of news report that allegedly affirmed defamatory sting of material unrelated to court filing subject to privilege); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 901 (2004) (California privilege did not protect commentary that mischaracterized the import of the state agency investigation it described). *See* Opp. at 13-15 (citing same).

(S.D.N.Y. Sept. 4, 2015) (privilege applied where defendant newspaper and its reporter "cultivated [a] relationship" with attorney who filed lawsuit and received a copy of the declaration from attorney prior to its filing); *Brady v. NYP Holdings, Inc.*, 2022 WL 992631, at *6 (S.D.N.Y. Mar. 31, 2022); MTD at 16. That *The Times* purportedly gathered information from Lively does not preclude it from invoking the privilege. The FAC should be dismissed with prejudice.[4]

### 2. The "Smear Campaign" Phrase is Protected Opinion

The phrase "smear campaign" is also non-actionable because it is constitutionally protected opinion based on disclosed facts—specifically, the contents of the text messages quoted in the CRD Complaint in which Plaintiffs discuss their desire to "bury" Lively. *See, e.g., Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017). Plaintiffs' arguments to the contrary are all unavailing.[5]

First, Plaintiffs argue that, because the Article and Video reference the text messages *The Times* reviewed in the course of its reporting, the "smear campaign" phrase implies the existence of undisclosed facts. Opp. at 16-17. But *The Times did* disclose the facts supporting the "smear campaign" conclusion—the Article and Video quote from or summarize those very text messages from the CRD Complaint, which support the conclusion that Plaintiffs sought to and did harm Lively's reputation using social and traditional media.[6] MTD at 19-20.

---

[4] Plaintiffs cite a trio of cases to argue that they should be permitted to amend, but they are inapposite. In *Cummings v. City of New York*, 2020 WL 882335, at *27 (S.D.N.Y. Feb. 24, 2020), unlike here, the plaintiff had not yet amended her complaint. And *Jones v. Inner City Press*, 2024 WL 4403746, at *5 (C.D. Cal. Aug. 7, 2024) and *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 968-69 (N.D. Cal. 2020) are non-binding cases from California; moreover, *Jones* involved a pro se plaintiff. *See Jones*, 2024 WL 4403746, at *5; Opp. at 25 n.28 (citing same).

[5] Plaintiffs assert that whether a statement is opinion or fact is question for the jury. Opp. at 16. To the contrary: in both California and New York, courts make that initial determination. *E.g., Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993) .

[6] The cases cite by Plaintiffs do not help them. *See Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 267 (1986) (statement was non-actionable because it "did not imply the existence of any undisclosed facts"); *Okun v. Superior Ct.*, 29 Cal. 3d 442, 452 (1981) (same); *Conklin v. Laxen*, 180 A.D.3d 1358, 1361 (4th Dep't 2020) (fact issue existed over whether statement was based on facts "unknown to those reading it or hearing"); *Conti v. Doe*, 535 F. Supp. 3d

Plaintiffs also claim that "smear campaign" is "inherently factual" (Opp. at 17), but courts have repeatedly held the opposite. *See Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 718 (D. Md. 2021) (accusation of "'smear campaign' ... is a protected statement of opinion—not a provably false assertion of fact"); *Camassar v. Day Publ'g Co.*, 2015 WL 6761619, at *4 (Conn. Super. Ct. Oct. 9, 2015) ("smear campaign" held to be non-actionable opinion); *Pease v. Tel. Pub. Co.*, 121 N.H. 62, 65 (1981) ("journalistic smear" was "was no more than rhetorical hyperbole, a vigorous epithet") (citing *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 14 (1970)).

Nor does the language of the Article and Video accuse them of "misconduct 'on a scale larger' than that at issue in CRD Complaint" by characterizing the Abel/Nathan operation as a "smear machine." Opp. at 17 (quoting *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *10 (S.D.N.Y. Aug. 30, 2005)). The CRD Complaint describes how Nathan was hired to quickly deploy time-tested tactics and tools—and support staff, like Jed Wallace— to change the narrative to benefit Baldoni and harm Lively. Phrases like "smear machine" or "smear campaign" aptly, and correctly, characterize the 'scale' of the misconduct those allegations support.

### 3. Plaintiffs Have Not Plausibly Alleged Actual Malice

What is so notable about Plaintiffs' attempts to say that they adequately pleaded actual malice is the jarring lack of reference to any actual factual allegation in the FAC. That is not surprising. The FAC offers only boilerplate allegations and does not identify facts in *The Times's* possession that should have caused the reporters to doubt the "smear campaign" allegation. MTD at 21-22. To the contrary: the CRD Complaint contains text after text—to and from Plaintiffs themselves—that establish that Baldoni wanted Lively to be "buried" and that Nathan acknowledged that "we can bury anyone" (CRD Complaint ¶¶ 13-14); that Baldoni wanted to use

---

257, 269 (S.D.N.Y. 2021) (statement that plaintiff was "caught 'red handed' engaging in misconduct" was actionable because defendant "never disclosed what ... [the plaintiff was caught] doing").

Lively's words against her (*id.* ¶ 169); or that Wallace and his team, hired by Nathan, were successful in "shift[ing] the impressions towards shining a spotlight on [Lively]" (*id.* ¶¶ 19, 142); *see* MTD at 19-22.  Plaintiffs do not challenge their authenticity.  These texts gave *The Times* reason to believe there was a smear campaign and no basis for doubting the truth of saying so.

Next, Plaintiffs argue that Lively's allegation that Plaintiffs waged a smear campaign against her is so improbable that it is evidence of actual malice.  Opp. at 21 (citing *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)). This claim is baseless.  There were no improbable allegations here—the text messages reproduced in the CRD Complaint support the existence of a smear campaign.  CRD Complaint ¶¶ 13-14, 19-23, 120-121, 132-136, 141-42.

Finally, Plaintiffs assert that *The Times*'s multiple requests for comment are somehow evidence of ill will (*see* Opp. at 22 and n.22), but this is absurd, particularly given that Plaintiffs gave a comment to *The Times* that it published in full.  *See Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 8 (D.D.C. 2020), *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022).  Plaintiffs have not plausibly alleged actual malice.[7]

### C.  The False Light Claim Fails

New York law does not recognize the false light tort, and because this case is governed by New York law, Plaintiffs' false light claim fails.  But even if California law did apply, false light claims are defeated by the same defenses that apply to a defamation claim that is based, as here, on the same publication.  MTD at 23 n. 22.  Therefore, because the Video and Article are privileged, contain non-actionable opinion and because the FAC fails to plausibly allege actual malice, Plaintiffs' false light claim should be dismissed with prejudice.

---

[7] Plaintiffs cite *Cassava Scis., Inc. v. Bredt,* 2024 WL 1347362, at *29 (S.D.N.Y. Mar. 28, 2024) for the proposition that they be allowed to replead actual malice, but there the pleading issue involved conclusory allegations. *Id.* at *25-28.  Here, by contrast, the text messages establishing the truth of the "smear campaign" phrase—which are contained in the FAC, CRD Complaint, and the Article—preclude a finding of actual malice.

### D.     The Tag-Along Claims Fail

Plaintiffs' ham-fisted attempt to salvage their tag-along promissory fraud and implied-in-fact contract claims also fails.  As an initial matter, the emails submitted by *The Times* in support of its opening are properly incorporated into the Complaint because Plaintiffs specifically quoted and referred to them in the FAC.  *See* FAC ¶ 376 (asserting that Ms. Twohey "emailed [Plaintiffs]" on December 20, 2024); FAC Ex. A at 158-60.  *E.g., Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 283-84 (S.D.N.Y. 2017).

More damningly, Plaintiffs continue to grossly misrepresent what Ms. Twohey offered: a deadline for response, which Plaintiffs provided, not a promise[8] to hold off publication until noon in exchange for a response.  Because both claims depend on that mischaracterization, both fail.

And the promissory fraud separately fails because, for all of Plaintiffs' allegations of purported "scrambling," they do not allege in their FAC that they ever intended to provide anything beyond their initial response—nor could they, since the correspondence is devoid of any request for more time.  The promissory fraud and contract claims should be dismissed with prejudice.

### E.     Plaintiffs Should Not Be Permitted a Fourth Amendment

In the most remarkable display of hubris, Plaintiffs ask this Court, if it dismisses the FAC, to allow them to amend.  But Plaintiffs have now had *three* bites at the apple, once in California and twice here.  And yet the FAC still contains, for example, Rule 8-barred group pleading that does not sufficiently differentiate between the conduct of each of the Consolidated Defendants.[9]

---

[8] Plaintiffs assert that that their promissory fraud claim is not duplicative of their contract claim because the FAC alleges that *The Times* and Lively conspired.  Opp. at 24.  But the inquiry looks to the specific facts underlying the two claims; in this case, the offer by *The Times* to wait until noon for a response.  *See PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 761 (S.D.N.Y. 1995.  Allegations of collusion are immaterial.  *Id.* at 762 (promissory fraud ill-pleaded because the subject promise was to perform the defendant's contractual obligations).  *Globaltex Grp., Ltd. v. Trends Sportswear, Ltd.*, 2009 WL 1270002, at *6 (E.D.N.Y. May 6, 2009), does not help.  *Id.* (plaintiff stated a claim for promissory fraud by alleging a collateral "false promise for payment" separate from contractual obligation).

[9] In this way, Plaintiffs are analogous to the plaintiff in *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001), who also amended multiple times.  Plaintiffs also assert that they, as in *Komatsu v. City of New York*, 2021 WL

MTD at 8-10. The Federal Rules' treatment of amendments is liberal, not laissez-faire.

That is particularly so here because amendment would be futile—no amendment can change the fact that the Article and Video are privileged, that "smear campaign" is a statement of opinion, that the false light claim fails because it does not exist under New York law, or that the quasi-contract claims are based on gross misrepresentations of the emails. *See Brady*, 2022 WL 992631, at *6, 11 (dismissing complaint with prejudice where challenged statements were fair reports or protected opinion, and because false light claim was not viable under New York law) (Liman, J.). In short, not only did Plaintiffs wait too long to amend, they also can do nothing to save their claims.

## II.    CONCLUSION

For all the reasons set forth above and in *The Times*'s opening, *The Times* respectfully requests that the Court dismiss the FAC with prejudice under Rule 12(b)(6) and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        March 21, 2025

>                               Respectfully submitted,
>
>                               DAVIS WRIGHT TREMAINE LLP
>
>                               By: */s/ Katherine M. Bolger*
>
>                               Katherine M. Bolger
>                               Sam F. Cate Gumpert (admitted *pro hac vice*)
>                               DAVIS WRIGHT TREMAINE LLP
>                               1251 Avenue of the Americas, 21st Floor
>                               New York, New York 10020
>                               Telephone:    (212) 489-8230
>
>                               *Attorneys for Defendant The New York Times Company*

---

3038498, at *5 (S.D.N.Y. July 16, 2021), should be permitted to amend. Opp. at 7 n. 3. But that plaintiff was pro se; Plaintiffs are represented by sophisticated counsel who should have filed a properly differentiated pleading.

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 2,795 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
March 21, 2025

By: */s/ Katherine M. Bolger*

Katherine M. Bolger
Sam F. Cate Gumpert (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230

*Attorneys for Defendant The New York Times Company*