### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual,<br><br>      Defendants. | Civ. Action No. 1:24-cv-10049-LJL (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) rel. 1:25-cv-00779-LJL |
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, JENNIFER ABEL, an individual, and STEVE SAROWITZ, an individual,<br><br>      Plaintiffs,<br><br>v.<br><br>BLAKE LIVELY, an individual, RYAN REYNOLDS, an individual, LESLIE SLOANE, an individual, VISION PR, INC., a New York corporation, and THE NEW YORK TIMES COMPANY, a New York corporation,<br><br>      Defendants. | |

### CONSOLIDATED PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CONSOLIDATED DEFENDANT RYAN REYNOLDS' MOTION TO DISMISS THE AMENDED COMPLAINT, FOR ATTORNEYS' FEES AND COSTS, AND TO STRIKE EXHIBIT A

# <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD AND FACTUAL BACKGROUND ................................ 2

III.  ARGUMENT ....................................................................................................... 2

A.   The FAC Gives Adequate Notice to Reynolds Under Rule 8 ........................... 2

B.   California Law Applies to the Wayfarer Parties' Claims Against Reynolds..................... 3

C.   The FAC States a Claim for Defamation Against Reynolds ............................. 5

    1. The FAC Sufficiently Identifies Reynolds' Defamatory Statements "Of and
      Concerning" Baldoni and the Other Wayfarer Parties ...................................... 5

    2. Reynolds' Defamatory Statements Are Not Unactionable Opinion .............................. 8

    3. Reynolds' Defamatory Statements Are Not Substantially True ................................... 11

    4. The Wayfarer Parties Need Not Plead Special Damages Because Reynolds'
      Statements  Are Defamatory Per Se ................................................................. 13

    5. The Wayfarer Parties Have Pleaded Actual Malice ........................................ 15

D.   The Wayfarer Parties Have Adequately Pleaded a Claim for Civil Extortion ................. 17

E.   The FAC Pleads a Claim for False Light Invasion of Privacy ......................... 18

F.   The FAC Adequately Pleads Tortious Interference Claims Against Reynolds ............... 20

    1. California's Tortious Interference Law Applies ............................................... 21

    2. Tortious Interference Is a Tort Independent From Defamation ................................... 21

    3. The FAC States a Claim for Intentional Interference with Contract ........................... 22

    4. Even If WME's Contracts With Wayfarer Parties Were Terminable at Will,
      They Were Undisputedly Disrupted................................................................. 24

    5. Alternatively, the FAC States a Claim for Intentional Interference with
      Prospective Economic Advantage ................................................................... 25

    6. Alternatively, the FAC States a Claim for Negligent Interference with
      Prospective Economic Advantage ................................................................... 26

G.   Reynolds Is Liable for His Direct Actions as Well as by Conspiracy ......................... 27

H.   Attorneys' Fees Are Not Available to Reynolds Under Second Circuit Law ............. 28

I.    The Motion to Strike Should Be Denied, or Granted with Leave to Amend.................... 30

IV.  CONCLUSION............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
    96 F. Supp. 3d 182 (S.D.N.Y. 2015).....................................................................21

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013).....................................................................4

*Albertini v. Schaefer*,
    97 Cal. App. 3d 822 (1979) ..................................................................................14

*Algarin v. Town of Wallkill*,
    421 F.3d 137 (2d Cir. 2005)...................................................................................8

*Amaranth LLC v. J.P. Morgan Chase & Co.*,
    71 A.D.3d 40 (1st Dept. 2009)..............................................................................24

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ............................................................................................27

*Axia Fin., LLC v. Mason McDuffie Mortg. Co.*,
    2023 WL 7280443 (N.D. Cal. Sept. 20, 2023) ....................................................26

*Baker v. L.A. Herald Examiner*,
    42 Cal. 3d 254 (1986) .........................................................................................8, 9

*Ball v. Taylor*,
    416 F.3d 915 (8th Cir. 2005) (per curiam)............................................................8

*Barnes-Hind, Inc. v. Superior Court*,
    181 Cal. App. 3d 377 (1986) ................................................................................14

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441, 445 (S.D.N.Y. 2012) ...........................................................6

*Biro v. Conde Nast*,
    807 F. 3d 541 (2d Cir. 2015)................................................................................15

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................................................15

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033 (1986) ..........................................................................................7

*Bobulinski v. Tarlov*,
    2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) .....................................................30

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003)..................................................................................14

*Brady v. NYP Holdings, Inc.*,
  2022 WL 992631 (S.D.N.Y. 2022)................................................................10, 29, 30

*Brewer v. Menno Haven, Inc.*,
  2006 WL 2382232 (M.D. Pa. 2006) .........................................................................10

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ................................................................................................9

*Brooks v. Physicians Clinical Laboratory, Inc.*,
  2000 WL 336546 (E.D. Cal. 2000)...........................................................................18

*Bryks v. Canadian Broad. Corp.*,
  928 F. Supp. 381 (S.D.N.Y. 1996)..............................................................................4

*Burton v. Label, LLC*,
  344 F. Supp. 3d 680 (S.D.N.Y. 2018).........................................................................6

*Caro Capital, LLC v. Koch*,
  2021 WL 1595843 (S.D.N.Y. 2021)..........................................................................11

*Carroll v. Trump*,
  590 F. Supp. 3d 575 (S.D.N.Y. 2022)........................................................................29

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ...............................................................................................24

*Carvel Corp. v. Noonan*,
  350 F.3d 6 (2d. Cir. 2003) .......................................................................................26

*Celle v. Filipino Reporter Enters.*,
  209 F.3d 163 (2d Cir. 2000).......................................................................................9

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014).......................................................................................9

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  364 F. Supp. 3d 253 (S.D.N.Y. 2019), *aff'd,* 788 F. App'x 85 (2d Cir. 2019) ...............12

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001).....................................................................................16

*Coleman v. Grand*,
  523 F. Supp. 3d 244 (E.D.N.Y. 2021) .......................................................................17

*Condit v. Dunne*,
  316 F. Supp. 2d 344 (S.D.N.Y. 2004).................................................................3, 4, 13

*Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*,
    377 F. Supp. 3d 16 (D.D.C. 2019) ...................................................................10

*Contento v. Mitchell*,
    28 Cal. App. 3d 356 (1972) ......................................................................5, 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ..............................................................................13

*Cosmonova. LLC v. BioFilm, Inc.*,
    2025 WL 319249 (S.D. Cal. 2025) ....................................................................22

*Cumis Ins. Soc., Inc. v. Citibank N.A.*,
    921 F. Supp. 1100 (S.D.N.Y. 1996) ..................................................................12

*D.A.R.E. America v. Rolling Stone Magazine*,
    101 F. Supp. 2d 1270 (C.D. Cal. 2000) ...........................................................11

*De Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845 (2018) ...............................................................................3

*DeIuliis v. Engel*,
    2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ...............................................3, 4

*Della Panna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal.4th 376 (1995) ........................................................................................25

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337, *aff'd*, 337 Fed. Appx. 94 (2d Cir. 2009) .................................7

*Eads v. Marks*,
    39 Cal. 2d 807 (1952) ........................................................................................27

*Eisenberg v. Alameda Newspapers*,
    74 Cal. App. 4th 1359 (1999) ...........................................................................19

*Elias v. Spotify USA Inc.*,
    2020 WL 11884714 (C.D. Cal. 2020) ..................................................................7

*Elliott v. Donegan*,
    469 F. Supp. 3d 40 (E.D.N.Y. 2020) ................................................................13

*Fairfield v. American Photocopy etc. Co.*,
    138 Cal. App. 2d 82 (1955) ...............................................................................19

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
    52 F. Supp. 3d 625 (S.D.N.Y. 2014) ............................................................21, 22

*Flamm v. Am. Ass'n of Univ. Women*,
    201 F.3d 144 (2d Cir. 2000) ................................................................................9

*Fleckenstein v. Friedman*,
  266 N.Y. 19 (1934) ...................................................................................................11

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
  848 F.2d 24 (2d Cir. 1988) ........................................................................................13

*Garland Connect, LLC v. Wells Fargo Bank*,
  2023 WL 5523936 (Cal. Ct. App. Aug. 28, 2023) ....................................................24

*Gilbert v. Seton Hall Univ.*,
  332 F.3d 105 (2d Cir. 2003) .........................................................................................3

*Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*,
  2022 WL 815795 (2d Cir. Mar. 18, 2022) .................................................................22

*Greene v. Paramount Pictures Corp.*,
  138 F. Supp. 3d 226 (E.D.N.Y. 2015) ..........................................................................7

*Gross v. N.Y. Times*,
  82 N.Y.2d 146 (1993) ...................................................................................................9

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (1980) .................................................................................................24

*Guzik v. King*,
  2009 WL 497664 (Cal. Ct. App. 2009) ......................................................................10

*Hasbro, Inc. v. Sweetpea Ent., Inc.*,
  2014 WL 12586021 (C.D. Cal. Feb. 25, 2014) ..........................................................23

*Higgins v. 120 Riverside Boulevard at Trump Place Condo.*,
  2022 WL 3920044 (S.D.N.Y. 2022) ...........................................................................10

*Hisamatsu v. Niroula*,
  2009 WL 4456392 (N.D. Cal. 2009) .............................................................................3

*Hogan v. Weymouth*,
  2019 WL 11055032 (C.D. Cal. 2019) .........................................................................19

*Hogan v. Weymouth*,
  2020 WL 8028111 (C.D. Cal. 2020) ...........................................................................19

*Horton v. Greenwich Hosp.*,
  2014 WL 956468 (S.D.N.Y. 2014) ...............................................................................3

*HV Assocs. v. PNC Bank, N.A.*,
  2020 WL 5819559 (S.D.N.Y. Sept. 30, 2020) ...........................................................21

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir.1995) (per curiam) .......................................................................13

*In re Invs. Funding Corp. of New York Sec. Litig.*,
100 F.R.D. 64 (S.D.N.Y. 1983) ...................................................................5, 20

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) ........................................................................23, 24, 25

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) .......................................................................................27

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240 (2017) ..........................................................................11

*Jensen v. Hewlett-Packard Co.*,
14 Cal. App. 4th 958 (1993) ..............................................................................8

*Jones v. Dollar Tree Stores, Inc.*,
2021 WL 6496822 (C.D. Cal. 2021)...............................................................19

*Kesner v. Dow Jones & Co., Inc.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021) ...............................................................3

*Khadavi v. Stalgi, Inc.*,
2021 WL 929099 (C.D. Cal. 2021)...................................................................17

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)................................................................................7

*Klaxon Co. v. Stentor Elect. Mfg. Co.*,
313 U.S. 487 (1941)............................................................................................3

*Korkala v. W.W. Norton & Co.*,
618 F. Supp. 152 (S.D.N.Y. 1985)....................................................................11

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)...................................................................28, 29, 30

*La Luna Enters., Inc. v. CBS Corp.*,
74 F. Supp. 2d 384 (S.D.N.Y. 1999).................................................................5

*Lee v. Bankers Tr. Co.*,
166 F.3d 540 (2d Cir. 1999)...............................................................................4

*Leeper v. Beltrami*,
53 Cal. 2d 195 (1959) .........................................................................................3

*Let Voters Decide, LLC v. Comm. for Recall of Dist. Att'y George Gascon*,
2022 WL 18278611 (C.D. Cal. 2022)...............................................................17

*Liberman v. Gelstein*,
80 N.Y.2d 429 (1992) .......................................................................................14

*Lluberes v. Uncommon Productions, LLC*,
   663 F.3d 6 (1st Cir. 2011) ................................................................................17

*LoanStreet, Inc. v. Troia*,
   2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023) ....................................................30

*Madanes v. Madanes*,
   981 F. Supp. 241 (S.D.N.Y. 1997) ..................................................................27

*Maheu v. Hughes Tool Co.*,
   569 F.2d 459 (9th Cir. 1977) ...........................................................................11

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
   271 F.3d 825 (9th Cir. 2001) ...........................................................................26

*Marsh v. Anesthesia Services Med. Grp.*,
   200 Cal.App.4th 480 (2011) .............................................................................22

*Minnelli v. Soumayah*,
   41 A.D.3d 388 (2007) .........................................................................................3

*Monex Deposit Co. v. Gilliam*,
   666 F. Supp. 2d 1135 (C.D. Cal. 2009) ...........................................................18

*Moyer v. Amador Valley Joint Union High School District*,
   225 Cal. App. 3d 720 (1990) .............................................................................8

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
   551 F. Supp. 3d 408 (S.D.N.Y. 2021) .............................................................29

*Okun v. Superior Court*,
   29 Cal. 3d 442 (1981) ...........................................................................6, 8, 20

*Palin v. N.Y. Times Co.*,
   940 F. 3d 804 (2d Cir. 2019) .............................................................................5

*Panah v. State of California Dep't of Corr. & Rehab.*,
   2015 WL 4274207 (N.D. Cal. July 14, 2015) .................................................28

*Partridge v. State*,
   173 A.D.3d 86 (3rd Dep't 2019) ......................................................................10

*Press v. Primavera*,
   685 F. Supp. 3d 216 (S.D.N.Y. 2023) ...............................................................3

*Price v. Operating Engineers Local Union No. 3*,
   195 Cal. App. 4th 962 (2011) ..........................................................................18

*Quelimane Co., Inc. v. Stewart Title Guaranty Co.*,
   19 Cal. 4th 26 (1998) .......................................................................................23

*Reader's Digest Ass'n v. Superior Court,*
    37 Cal. 3d 244 (1984) ..................................................................................15, 17

*Red Apple Media, Inc. v. Batchelor,*
    729 F. Supp. 3d 350 (S.D.N.Y. 2024).........................................................24, 25

*Restis v. Am. Coal. Against Nuclear Iran, Inc.,*
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)...............................................................5, 10

*Rosa v. Eaton,*
    2024 WL 3161853 (S.D.N.Y. 2024)...................................................................10

*Savage v. Pacific Gas & Electric Co.,*
    21 Cal. App. 4th 434 (1993) ................................................................................8

*Schessler v. Keck,*
    125 Cal. App. 2d 827 (1959) ..........................................................................6, 20

*Seelig v. Infinity Broad. Corp.,*
    97 Cal. App. 4th 798 (2002) ................................................................................8

*Semple v. Andrews,*
    27 Cal. App. 2d, 228, 233 (1938) ........................................................................6

*Skidmore v. Regents of Univ. of California,*
    2021 WL 843195 (N.D. Cal. Mar. 5, 2021)......................................................19

*Sky Billards, Inc. v. WolVol, Inc.,*
    2016 WL 7479426 (C.D. Cal. Feb. 22, 2016)...................................................27

*Slaughter v. Friedman,*
    32 Cal. 3d 149 (1982) ..........................................................................................8

*Steinhilber v. Alphone,*
    68 N.Y.2d 283 (1986) ..........................................................................................9

*Summit Bank v. Rogers,*
    206 Cal. App. 4th 669 (2012) ..............................................................................8

*Swartwood v. Fodness,*
    2018 WL 6596281 (Minn. Ct. App. 2018) .......................................................10

*Sydney v. MacFadden Newspaper Pub. Corp.,*
    242 N.Y. 208 (1926) ..........................................................................................14

*Tagliaferri v. Szulik,*
    2016 WL 3023327 (S.D.N.Y. 2016).................................................................10

*TaiMed Biologics, Inc. v. Numoda Corp.,*
    2011 WL 1630041 (N.D. Cal. 2011). Civil .....................................................17

*Treppel v. Biovail Corp.*,
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)...................................................................5

*Weller v. American Broadcasting Companies, Inc.*,
    232 Cal. App. 3d 991 (1991) ...............................................................................................8

*Wexler v. Allegion (UK) Ltd.*,
    374 F. Supp.3d 302 (S.D.N.Y. 2019)..................................................................................10

*Youst v. Longo*,
    43 Cal. 3d 64 (1987) ...........................................................................................................26

*Yow v. National Enquirer, Inc.*,
    550 F. Supp. 2d 1179 (E.D. Cal. 2008)..............................................................................14

*ZL Techs., Inc. v. Does 1-7*,
    13 Cal. App. 5th 603 (2017) .................................................................................................9

**Statutes**

Fed. R. Civ. P. 10......................................................................................................................2

Fed. R. Civ. P. 11....................................................................................................................29

Fed. R. Civ. P. 12 ............................................................................................................*passim*

Fed. R. Civ. P. 15..............................................................................................................5, 20

Fed. R. Civ. P. 56....................................................................................................12, 13, 28

Cal. Civ. Code § 45..................................................................................................................5

Cal. Civ. Code § 45a................................................................................................................5

Cal. Civ. Code § 46......................................................................................................5, 13, 14

N.Y. C.P.L.R. 3211.................................................................................................................29

N.Y. Civil Rights Law § 70-a .....................................................................................28, 29, 30

**Other Authorities**

Restatement (Second) of Torts (1979) .................................................................................23

Consolidated Plaintiffs Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), It Ends With Us Movie LLC ("IEWU"), Melissa Nathan ("Nathan"), Jennifer Abel ("Abel"), and Steve Sarowitz ("Sarowitz") (collectively, the "Wayfarer Parties") respectfully submit this memorandum of law in opposition to Consolidated Defendant Ryan Reynolds' ("Reynolds") motion to dismiss the Amended Complaint for failure to state a claim, for attorneys' fees and costs, and to strike Exhibit A of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f), and New York's anti-SLAPP law (the "Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

"*I've realized that I'm too big to fail at this point, so I just crush my enemies and drink their blood.*"[1] – Ryan Reynolds, July 12, 2024

Reynolds pretends that the Wayfarer Parties' First Amended Complaint (the "FAC") fails to set forth any basis for his liability and that he merely acted as a supportive spouse. Not so. The FAC specifically alleges ample facts to support the Wayfarer Parties' claims against him, based on both his direct actions and his liability as a co-conspirator. The Motion fails to show the Wayfarer Parties fell short of their pleading burden under Rule 12(b)(6) and the *Twombly*/*Iqbal* standard. California law applies to each of the Wayfarer Parties' claims, but under the law of either New York or California, the Wayfarer Parties have pleaded defamation and tortious interference claims against Reynolds sufficient to defeat dismissal. This is particularly true where, as here, Reynolds has superior knowledge of the facts underlying the Wayfarer Parties'

---

[1] Catherine Shoard, *'His skincare regime alone would bankrupt you': Ryan Reynolds and Hugh Jackman bring banter and bromance to London*, The Guardian (July 12, 2024), https://www.theguardian.com/film/article/2024/jul/12/his-skincare-regime-alone-would-bankrupt-you-ryan-reynolds-and-hugh-jackman-bring-banter-and-bromance-to-london.

claims, given the early stage of discovery. In the alternative, any defects or inartful pleading in the FAC can be remedied by amendment, which is freely allowed, and the Wayfarer Parties have gained additional information to plead further facts to support each of their claims against Reynolds, as well as the need to apply California law. Furthermore, the Wayfarer Parties can amend their complaint to more fully incorporate the allegations of Exhibit A into the body of the complaint, mooting the motion to strike. Finally, even in the extremely unlikely event that the Court determines dismissal without leave to amend is appropriate, Reynolds is unable to recover his attorneys' fees, as neither California nor New York's anti-SLAPP laws apply here.

In short, the Motion should be denied; in the alternative, the Court should grant the Wayfarer Parties leave to amend their complaint because any defects in the First Amended Complaint are easily cured based on the facts now known to the Wayfarer Parties.

## II.    LEGAL STANDARD AND FACTUAL BACKGROUND

Pursuant to Federal Rule of Civil Procedure 10(c), the Wayfarer Parties incorporate by reference their allegations in the First Amended Complaint ("FAC") (Dkt. No. 50) and their recitations of legal standards and factual backgrounds in their oppositions to the Rule 12(b)(6) motions of Consolidated Defendants Leslie Sloane and Vision PR, Inc. (together, the "Sloane Parties") (Dkt. No. 121) and The New York Times Company ("NYT") (Dkt. No. 127).

## III.    ARGUMENT

### A.    The FAC Gives Adequate Notice to Reynolds Under Rule 8

Reynolds incorporates by reference the arguments made by other parties that the FAC contains impermissible group pleading. Mot. at 6 n.4. In response, the Wayfarer Parties incorporate their responsive arguments from their oppositions to the motions to dismiss of the Sloane Parties and the NYT and reiterate that any defect can easily be cured by amendment.

**B.    California Law Applies to the Wayfarer Parties' Claims Against Reynolds**

The choice of law rules of New York, the forum state, apply. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003); *see also Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023). The first step is to determine whether the laws of New York and California conflict. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021); *see also Condit v. Dunne*, 316 F. Supp. 2d 344, 352 (S.D.N.Y. 2004). "An actual conflict exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *Horton v. Greenwich Hosp.*, 2014 WL 956468, at *2 n.1 (S.D.N.Y. 2014).

The laws of New York and California conflict as to each of the Wayfarer Parties' claims against Reynolds for defamation, false light invasion of privacy[2], tortious interference, and civil extortion. As to false light and civil extortion, the conflict between the two states' laws is total: California recognizes the claims, while New York does not. *Compare De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) ("A 'false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy[.]") *with DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021) ("New York does not recognize the tort of false light invasion of privacy.") (quoting *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735717, at *13 (S.D.N.Y. 2018)); *compare Minnelli v. Soumayah*, 41 A.D.3d 388, 389 (2007) ("[E]xtortion and attempted extortion . . . do not imply a private right of action.") (citations omitted), *with Leeper v. Beltrami*, 53 Cal. 2d 195, 202-03 (1959); *Hisamatsu v. Niroula*, 2009 WL 4456392, at *5 (N.D. Cal. 2009) ("California has long recognized . . . civil extortion.").

---

[2] The claim for false light invasion of privacy is personal to and brought by only Baldoni, Heath, Nathan, Abel, and Sarowitz, not by Wayfarer Studios LLC or It Ends With Us Movie LLC. For simplicity's sake, this opposition refers to the claims collectively as being brought by the Wayfarer Parties.

The laws of New York and California also conflict with respect to defamation. *E.g.*, "California extends no greater protection to opinions than does the United States Constitution," while "New York law, by contrast, in excess of the United States Constitution, provides for absolute protection of opinions." *Condit*, 317 F. Supp. 2d at 352 (citations and quotes omitted).

As New York and California laws conflict, the Court must determine which law to apply to each claim. *DeIuliis*, 2021 WL 4443145, at *4 ("New York follows the doctrine of dépeçage, under which the choice-of-law analysis is conducted separately for each individual claim.").

"Under New York choice-of-law rules in defamation cases, 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (quoting *Reeves v. American Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)); *see also Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996) (collecting cases). "Although the preference for the plaintiff's domicile is not conclusive, 'the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Lee*, 166 F.3d at 545 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). The interest of a state in a defamation action is "significant and incontrovertible" where the plaintiffs are citizens of that state and live and conduct their business there. *Adelson v. Harris*, 973 F. Supp. 2d 467, 477-78 (S.D.N.Y. 2013). Though New York may have some interest in this action because Reynolds resides in New York, California has a much more significant interest because nearly all of the plaintiffs[3] are residents of California or have their principal place of business there; the two corporate plaintiffs (Wayfarer Studios LLC and It Ends With Us Movie LLC) are both

---

[3] The only plaintiff who is not a resident of California is Steve Sarowitz, who resides in Illinois. No party has to date advanced an argument that the law of Illinois should apply to any claim in this action. Moreover, Sarowitz's connection to this action is through his ties to Wayfarer, which is located in California.

incorporated and/or have their principal place of business in California; the plaintiffs suffered injury to their reputations in California[4]; and the economic losses to the plaintiffs were felt in California. *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999). In addition, the underlying NYT article, which is in many respects the genesis of this entire action, is purportedly based on reporting relating to Lively's complaint filed with *California's* Civil Rights Department, which asserts claims for violation of *California's* law. FAC ¶¶ 4, 262.

### C.    The FAC States a Claim for Defamation Against Reynolds

Where defamation is clear on its face, it is defamation per se, and damage is presumed. *Contento v. Mitchell*, 28 Cal. App. 3d 356, 358 (1972) ("[I]n an action for damages [from] language defamatory per se, damage to the plaintiff's reputation is conclusively presumed[.]")

To plead defamation, a plaintiff must allege: "(1) a written [or oral] defamatory statement of [fact] concerning the plaintiff; (2) publication to a third party; (3) fault [(either negligence or actual malice, depending on the status of the libeled party)]; (4) falsity of the defamatory statement; and (5) special damages or per se actionability.*" Palin v. N.Y. Times Co.*, 940 F. 3d 804, 809 (2d Cir. 2019); *see also* Cal. Civ. Code §§ 45, 45a, 46. At the pleading stage, falsity of the alleged statements is presumed. *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005). The court "must decide [only] whether the statements alleged to have caused plaintiff injury are reasonably susceptible to the defamatory meaning imputed to them." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 718 (S.D.N.Y. 2014).

### 1.    The FAC Sufficiently Identifies Reynolds' Defamatory Statements "Of

---

[4] The FAC alleges that the Wayfarer Parties also suffered injury in New York as well as in California, which is a true statement though the bulk of the harms were felt in California. To the extent that additional allegations are necessary to cure any inartful pleading as to the primary location of the harms, the Court should grant leave to amend pursuant to the "extremely liberal standard" of Federal Rule of Civil Procedure 15(a)(2). Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires. *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. 64, 65 (S.D.N.Y. 1983) (describing Rule 15 as embracing an "extremely liberal standard" with respect to amendment).

and Concerning" Baldoni and the Other Wayfarer Parties

Reynolds' contention that the FAC fails to identify defamatory statements he made fails on its face. The Federal Rules require "that each pleading be specific enough to afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself." *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 699 (S.D.N.Y. 2018) (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 445 (S.D.N.Y. 2012)). Reynolds must have "confused the rules of pleading with the rules of evidence." *Semple v. Andrews*, 27 Cal. App. 2d, 228, 233 (1938) (distinguishing standard to plead defamation from what a plaintiff must prove at trial); *Schessler v. Keck*, 125 Cal. App. 2d 827, 835-36 (1959) (statements made "at various times and places and to various persons" suffice to state claim). "[L]ess particularity is required in the allegations of the complaint where . . . the adverse party has a knowledge of the facts superior to the party pleading them." *Id.*; *Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981).

The FAC alleges that, at least twice, Reynolds stated to WME executives—Baldoni's and Wayfarer's talent agency—that Baldoni is a sexual predator and that, by implication, WME was in business with a sexual predator. FAC ¶¶ 8, 162. The first statement was on July 15, 2024, when Reynolds contacted Baldoni's agent, Danny Greenberg, for the purpose of making these defamatory statements. FAC Ex. A at 99. On the call, Reynolds referred to Baldoni as a "deranged predator" and warned Greenberg that Baldoni should not attend the Film's premiere the next month because "no one wants him there." *Id.* The second statement was on July 22, 2024, at the *Deadpool & Wolverine* premiere, when Reynolds told a senior WME executive that by representing Baldoni, WME was doing business with a "sexual predator." FAC Ex. A at 100. As alleged, Reynolds was pressuring (and later demanded) WME to cut ties with Baldoni.

These allegations are more than sufficiently specific, identifying the speaker, the listeners, and why, where and when the statements were made. Given this specificity, it is

6

unclear why Reynolds cites cases involving allegations so threadbare as to omit the "time, place, speaker, or listener." *Elias v. Spotify USA Inc.*, 2020 WL 11884714, at *3 (C.D. Cal. 2020).

As to the other Wayfarer Parties, the FAC alleges that Reynolds worked in concert with Lively and the Sloane Parties to publicly and falsely smear them. Reynolds and his co-conspirators made statements to third parties, including at least to the NYT, that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexual misconduct toward Lively and retaliated against her for reporting the alleged misconduct, including by spreading lies to damage Lively's image. FAC ¶¶ 273-274, 325. Reynolds, with Lively and the Sloane Parties, told the NYT "a false and damning story about an insidious PR sabotage operation deployed as revenge for sexual harassment complaints, [knowing] that the newspaper would publish[.]" FAC ¶ 273.

A statement underlying a defamation claim must "specifically refer to, or be 'of and concerning,' the plaintiff." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1043 (1986) (statements must be "of and concerning" the individual, either by name, or by "clear implication"); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398–99 (2d Cir. 2006) (allegedly defamatory statements must be "of and concerning" the plaintiff (applying New York law)). There is no question that requirement is satisfied. As alleged, all the Wayfarer Parties have become figures of infamy because of Reynolds' statements, which were widely disseminated and understood to refer to them. FAC ¶¶ 1-5. Furthermore, the "of and concerning" requirement is an issue of fact for the jury to decide, and the court may dismiss an action only where the statement is "incapable of supporting a jury's finding" that it refers to the plaintiff. *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 234 (E.D.N.Y. 2015). This is not a case in which a jury would be *incapable* of finding that the statements at issue refer to each of the Wayfarer Parties. Any doubts raise a question for the jury, not a question of law for the Court. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343, *aff'd,* 337 Fed. Appx. 94 (2d Cir. 2009) (jury

generally decides whether defamatory statement is "of and concerning" plaintiff).

The Wayfarer Parties' allegations also implicate the "small group exception" of the "group defamation doctrine." "[A]n individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about the group, by showing that he is a member of the group." *Id.*; *see also Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005); *Ball v. Taylor*, 416 F.3d 915 (8th Cir. 2005) (per curiam) (finding exception applied where statement defamed about 100 people). Here, there are seven Wayfarer Parties— well below the ceiling of the small group exception—and Reynolds defamed them all.

## 2. Reynolds' Defamatory Statements Are Not Unactionable Opinion

Under California law, to constitute defamation, the offensive publication must state facts, rather than opinion. *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695-96 (2012). A statement is defamatory only if capable of being proved true or false. *See Savage v. Pacific Gas & Electric Co.*, 21 Cal. App. 4th 434, 445 (1993); *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 970-71 (1993). "Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot reasonably be interpreted as stating actual facts about an individual." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809 (2002).

But a statement of opinion is actionable if implicitly based on undisclosed facts. *Weller v. American Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 999 (1991); *Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 266 (1986); *Okun v. Superior Court*, 29 Cal. 3d 442, 451-52 (1981). Whether the statement is fact or opinion is for the jury to weigh. *Slaughter v. Friedman*, 32 Cal. 3d 149, 154 (1982). Here, the question is whether a fact finder could conclude the published statements imply a provably false fact. *Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 724 (1990). The court applies a "totality of the circumstances" test in which the court reviews the "language of the statement" and "the context

8

in which the statement was made[.]" *Baker*, 42 Cal. 3d at 260-61. "[I]f a statement is 'factually specific,' 'earnest,' or 'serious' in tone, or the speaker 'represents himself as unbiased,' 'having specialized' or 'first-hand experience,' or 'havi[ing] personally witnessed . . . abhorrent behavior', this may signal [that there is a factual basis for the accusations.]" *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (citations omitted).

Courts applying New York law generally consider "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true …; and (3) whether . . . the full context of the communication in which the statement appears [is] such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (quotations and citations omitted); *accord Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178-79 (2d Cir. 2000). New York courts focus on the "overall context in which the complained-of assertions were made." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000). "Context" includes not only "the immediate context in which the disputed words appear," but also "the larger context in which the statements were published." *Brian*, 87 N.Y.2d at 51; *see also Steinhilber v. Alphone*, 68 N.Y.2d 283, 293 (1986) (examining first "the content of the whole communication as well as its tone and its apparent purpose."). If a statement contains opinion, the court must then examine "whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). "The actionable element of a 'mixed opinion' … is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Steinhilber*, 68 N.Y.2d at 290. "The dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts[.]" *Gross v. N.Y. Times*, 82 N.Y.2d 146, 152 (1993) (alteration adopted) (quotation marks

and citation omitted); *Restis*, F. Supp. 3d at 719.

Reynolds' attempt to recast his statements as "opinion" is belied by context. These statements were statements that at least implied undisclosed facts.[5] All are susceptible to a defamatory meaning, namely that Baldoni had committed egregious sexual offenses that warrant the label of "sexual predator." *See, e.g.*, *Partridge v. State*, 173 A.D.3d 86, 97-98 (3rd Dep't 2019) (being wrongfully branded as a "sexual predator" is defamatory as "one of the most 'loathsome labels' in society."); *Swartwood v. Fodness*, 2018 WL 6596281, at *2 (Minn. Ct. App. 2018) (reversing order granting motion to dismiss based on allegations that defendant called plaintiff a "sexual predator" to members of the women's tennis team); *Brewer v. Menno Haven, Inc.*, 2006 WL 2382232, at *5 (M.D. Pa. 2006) (denying motion to dismiss defamation claim based on statement that plaintiff was fired for being a sexual predator); *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 29 (D.D.C. 2019) (denying motion to dismiss claim based on statement plaintiff was "sexual predator")

Context also matters. Reynolds made the statements to key WME figures in an effort to force WME drop Baldoni. FAC ¶ 162. Reynolds' argument that his "deep disdain" for Baldoni precludes a defamatory meaning to his words is illogical. *See* Mot. at 11. That "deep disdain[,]"

---

[5] The case law cited by Reynolds, all of which is flatly inapposite, demonstrates the importance of viewing statements in their proper context. In *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp.3d 302, 307 (S.D.N.Y. 2019), for instance, the statement at issue referred to counterclaimants as "predators bent on achieving their growth ambitions in a press release about the litigation. The question before the court was not whether the use of the term "predator" was actionable opinion but whether it accurately characterized the allegations in the lawsuit for the purposes of the fair reporting privilege. *Id.* at 312. In *Tagliaferri v. Szulik*, 2016 WL 3023327, at *2-3 (S.D.N.Y. 2016), the statements at issue described the plaintiff as a "predator" and the "face of evil" in generic terms, which is not true here given Reynolds' deliberate use of the modifier "sexual," the narrow set of events Reynolds purported to be referring to, and his target audience. *Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, 2022 WL 3920044, at *31 (S.D.N.Y. 2022) likewise involved a generic use of the term "crazy" without any indication it was intended as a statement of fact. *Id. Guzik v. King*, 2009 WL 497664, at *4 (Cal. Ct. App. 2009), which is unpublished and noncitable under California law, similarly involved the use of "hyperbole[,]" which, in context, clearly was intended as opinion rather than fact. *Brady v. NYP Holdings, Inc.*, No. 21-CV3482 (LJL), 2022 WL 992631, at *7 (S.D.N.Y. 2022) involved the use of the term "gadfly." That is altogether different than telling Baldoni's talent agency, as fact, that Baldoni is a "sexual predator." Context also distinguishes Reynolds' statements from the statements in *Rosa v. Eaton*, 2024 WL 3161853, at *4 (S.D.N.Y. 2024), which the court noted were posted on Instagram, which is "informal, unedited, and [a forum] for stating opinions."

10

which Reynolds seems to view as exculpatory, supports an inference of actual malice.

### 3. Reynolds' Defamatory Statements Are Not Substantially True

Reynolds argues the defamation claim fails because his alleged statements are substantially true. Mot. at 11-15. But truth is a question of fact for the jury. *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465-66 (9th Cir. 1977) (concluding there was a jury question as to whether defamatory utterances were substantially true); *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1288 (C.D. Cal. 2000) (holding that "substantial truth is a jury question" so long as "substantial truth is not evident to the court"). The only exception—when "substantial truth is . . . evident to the court"—is not the case here. *D.A.R.E. America*, 101 F. Supp. 2d at 1288. Taking the allegations in the FAC as true (as the Court must on this motion), the Court cannot conclude *as a matter of law* that (i) Baldoni is a sexual predator or (ii) the Wayfarer Parties "smeared" Lively to retaliate for her disclosure of supposed misconduct. These propositions are expressly denied in the FAC, with proof. Reynolds' statements "have a different effect on the mind of the reader [or listener] from that which the pleaded truth would have produced." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1262-63 (2017), as modified (Apr. 19, 2017); *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934); *cf. Caro Capital, LLC v. Koch*, 2021 WL 1595843, at *11 (S.D.N.Y. 2021). This case is not one of "slight inaccuracies of expression." *Korkala v. W.W. Norton & Co.*, 618 F. Supp. 152, 155 (S.D.N.Y. 1985).

Reynolds first argues that the FAC alleges facts that a "reasonable observer could well consider predatory." Mot. at 12. He next argues that a review of extrinsic evidence—specifically Baldoni's book, podcast and YouTube appearances—are a factual basis for his assertions. *Id.*

Reynolds' first argument collapses upon any scrutiny of the FAC. Reynolds points to (i) a conversation Baldoni had with Lively, at Sony's direction, about her wardrobe choices (FAC ¶¶ 34-38); (ii) a suggestion from the Film's intimacy coordinator, relayed to Lively by Baldoni (as

Lively would not meet her), about the mechanics of a particular intimate scene (FAC ¶¶ 87-88); (iii) calling a costume "sexy" (FAC ¶ 94); (iv) hiring a Shakespearean-trained actor with an MFA in acting to play a doctor (FAC ¶¶ 83-84, 119-120); (v) Jamey Heath (not Baldoni) showing Lively, in preparation for a birth scene, a single clip from a home-birth video depicting Heath's newborn son (FAC ¶ 101); and (vi) Baldoni's purported failure to deny "biting and sucking of [Lively's] lip" (FAC ¶¶ 91-92). Even construed in the most uncharitable light (which would be inappropriate here), these "admissions" do not show Baldoni is a "sexual predator."

Reynolds' second argument is barred as it requires the Court to consider extrinsic evidence not properly before it on a Rule 12(b)(6) motion. To "prove" that Baldoni is a "sexual predator," Reynolds draws on excerpts from Baldoni's book, YouTube videos, and podcast episodes—none of which are in the FAC. Mot. at 12-13. Reynolds' statements to WME executives did not refer to Baldoni's past statements. FAC ¶¶ 8, 16, 162. As alleged in the FAC, Reynolds was referring to what purportedly happened on the set of *It Ends With Us*. *Id.* Reynolds' continued effort to smear Baldoni is irrelevant given that "submission of evidence is not proper on a motion to dismiss because it is only the sufficiency of the pleadings that are at issue." *Cumis Ins. Soc., Inc. v. Citibank N.A.*, 921 F. Supp. 1100, 1104 (S.D.N.Y. 1996).[6] On a Rule 12(b)(6) motion, "[if] matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). There are a few narrow exceptions, including for written instruments attached as exhibits to a pleading, and courts will sometimes consider documents that a plaintiff

---

[6] Reynolds' citation to *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 261 (S.D.N.Y. 2019), *aff'd*, 788 F. App'x 85 (2d Cir. 2019), which involved a discussion of judicial notice in the context of a motion for preliminary injunction—an evidentiary motion—is entirely inapposite for purposes of a Rule 12(b)(6) motion, which tests only the sufficiency of the pleadings and not the weight of the evidence.

"had either in its possession or had knowledge of and upon which they relied in bringing suit . . . [that] were integral to its complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). But the extrinsic evidence Reynolds relies on was not incorporated into the FAC or "integral" to it. The defamation claim against Reynolds has nothing to do with Baldoni's book or the other extrinsic materials Reynolds raises. Reynolds' request is thus distinct from submissions by past defamation defendants of the defamatory material even when such materials were not directly incorporated into the pleadings. *See, e.g., Condit*, 317 F. Supp. 2d at 357-58 (considering, on a Rule 12(b)(6) motion, records of allegedly slanderous material quoted from and referenced in the plaintiff's complaint). The FAC does not "rely heavily upon [the] terms and effect" of the materials submitted by Reynolds. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam). Here, the Court "may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56[.]" *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).[7]

### 4.  The Wayfarer Parties Need Not Plead Special Damages Because Reynolds' Statements Are Defamatory Per Se

Reynolds also argues that the Wayfarer Parties' defamation claim fails for failure to plead special damages. Mot. at 15-16. But plaintiffs need not plead such damages where the statements are defamatory per se. With such statements, "damage to plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages." *Contento v. Mitchell*, 28 Cal. App. 3d 356, 358 (1972). Under California law, "[w]ords which fall within the purview of Civil Code section 46 . . . constitute slander per se . . . with the effect that the utterance of such

---

[7] Reynolds misconstrues the court's consideration of the plaintiff's extrinsic writings in *Elliott v. Donegan*, 469 F. Supp. 3d 40, 45 n.2 (E.D.N.Y. 2020). In *Elliott*, the court took judicial notice of such materials solely for the purpose of a "public figure" analysis. *Id.* Here, by contrast, Reynolds urges the Court to consider extrinsic materials to make a factual determination of truth and falsity properly reserved for a jury.

words is actionable without proof of special damage." *Albertini v. Schaefer*, 97 Cal. App. 3d 822, 829 (1979). "Corporate reputation is also protected by Civil Code section 46." *Id.* at 830.

Under New York law, a statement is "actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Sydney v. MacFadden Newspaper Pub. Corp.*, 242 N.Y. 208, 211–12 (1926). As to slander, New York law recognizes four statement categories as per se actionable including those "charging plaintiff with a serious crime; [and] that tend to injure another in his or her trade, business or profession." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)

As to the statements concerning Baldoni being a "sexual predator," there is no question these are defamatory per se. "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385 (1986). Reynolds' statements about Baldoni being a "sexual predator" is tantamount to a charge of serious criminality. *See* FAC ¶ 8 ("Modern society justly reviles sexual harassers and abusers[.]")

Reynolds' statements about the other Wayfarer Parties are also defamatory per se. The crux of the accusations is that the Wayfarer Parties engaged in and/or condoned sexual misconduct and took revenge on the victim of such misconduct. These allegations "tend to expose [the Wayfarer Parties] to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of [them] in the minds of right-thinking persons." *Sydney*, 242 N.Y. at 211-12; *see also Yow v. National Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008) (a statement is defamatory per se if it "exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.") As to IEWU and Wayfarer, it is well settled that a statement that "impugns the basic integrity of a business" is per se defamatory. *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003). On the face of

these allegations, the pleading of special damages is unnecessary.[8]

### 5.  The Wayfarer Parties Have Pleaded Actual Malice

Under the Constitution, a public figure pleading defamation must prove by clear and convincing evidence that the statement was made with "actual malice," *i.e.*, "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 256 (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964)); *see also Biro v. Conde Nast*, 807 F. 3d 541, 544 (2d Cir. 2015).

Reynolds was intimately involved in and integral to Lively's "concerted campaign of extortion to extract concessions and creative control over the Film." FAC ¶ 130. Reynolds and Lively exploited Lively's false insinuations to coerce the Wayfarer Parties to cede to them power and authority to which they were not entitled. *See, e.g.,* FAC ¶¶ 9, 140, 143, 162. Reynolds was also directly involved in the marginalization of Baldoni from the rest of the cast and exclusion from the premiere. FAC ¶¶ 166-67. Having yielded (under duress) to their coercion, Wayfarer finally resisted the Lively/Reynolds demand that they "take the fall for Lively's disastrous promotional campaign[.]" FAC ¶ 256. Then Reynolds and Lively pushed falsehoods from production with a lie combined with an "untraceable" smear campaign to the NYT. *Id.*

Reynolds and Lively, along with the Sloane Parties, engaged in a coordinated effort to exaggerate benign interactions in service of a false narrative that Lively had been sexually harassed. FAC ¶ 17. They did so to instill terror in the Wayfarer Parties and leverage it to accumulate power. FAC ¶¶ 17, 175-78; *see Biro v. Conde Nast*, 963 F. Supp. 2d 255, 277 (S.D.N.Y. 2013) (citing *Kipper v. NYP Holdings Co., Inc.*, 12 N.Y.3d 348, 355 n.4 (2009)) (motive to defame plaintiff is probative of actual malice). This accumulation of power depended

---

[8] In the event the Court determines that any of the foregoing are not, in fact, defamatory per se, the Wayfarer Parties respectfully request the opportunity to amend their pleading so as to allege special damages.

upon the ability to conjure and exploit ruinous allegations. FAC ¶ 296. The allegations were never true, and Reynolds knew full well or did not care whether they were true. FAC ¶¶ 8, 17, 328. Reynolds' insistence he believed his words—although not alleged in the FAC and thus not properly before the Court—is an argument that he committed extortion, not defamation.[9]

Reynolds also knew that the "smear campaign" narrative was false or acted with reckless disregard for its truth. Along with his co-conspirators, Reynolds got hold of communications between the Wayfarer Parties from Stephanie Jones that disproved the claim the Wayfarer Parties had orchestrated a smear campaign. FAC ¶¶ 272-78, 283-87. Given that they had these materials, Reynolds, Lively, and the Sloane Parties either knew that the narrative they later publicized was false or, at best, disregarded evidence. It also would have been clear to Reynolds—who owns a marketing company—that the cause of Lively's bad press was her decision to hawk liquor and hair care products while promoting a film about domestic violence. FAC ¶¶ 179-87, 279. The notion that the backlash was caused by an "untraceable" smear campaign is "so inherently improbable that only a reckless person would have put [the claim] in circulation." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). There were "obvious reasons to doubt the veracity" of these statements, which Reynolds disregarded. *Id.* The FAC alleges sufficient facts to infer actual malice.

Finally, while the FAC satisfies the Wayfarer Parties' pleading burden under an actual malice standard, it is important to note that six of the seven Wayfarer Parties are not public figures (i.e., Heath, Sarowitz, Abel, Nathan, IEWU, and Wayfarer). "[T]he mere involvement of a person in a matter which the media deem to be of interest to the public does not, in and of

---

[9] Again, Reynolds' "deep disdain" for Baldoni does not imply he did not act with actual malice even if allegations of ill will are insufficient to raise the inference. Evidence of Reynolds' ill will is probative of his mindset.

itself, require that such a person become a public figure for the purpose of a subsequent libel action." *Reader's Digest*, 37 Cal. 3d at 254 (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 453-454 (1976)); *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6, 18-19 (1st Cir. 2011) (defending oneself publicly does not forfeit status as private figure); *Coleman v. Grand*, 523 F. Supp. 3d 244, 255-57 (E.D.N.Y. 2021) (same). Because the FAC satisfies the burden of actual malice as to all the Wayfarer Parties, it is unnecessary to analyze the lesser standards.

###    D.    The Wayfarer Parties Have Adequately Pleaded a Claim for Civil Extortion

As set forth above, *supra* Section III.B, the proper law to apply in this case generally is the law of California. As Reynolds concedes, California recognizes a claim for civil extortion. Reynolds claims the tort is limited only to extorting money through threats of prosecution but points to no authority that California courts so limit the claim. Under California law, "the exact contours of this common law tort are not so strictly defined." *TaiMed Biologics, Inc. v. Numoda Corp.*, 2011 WL 1630041, at *5 (N.D. Cal. 2011). Civil extortion claims are based on the law of criminal extortion. *See, e.g.*, *Khadavi v. Stalgi, Inc.*, 2021 WL 929099, at *6 (C.D. Cal. 2021). Courts applying California law hold a civil extortion claim will *not* lie only where obtaining money was the aim, to the exclusion of "other consideration." *Khadavi*, 2021 WL 929099, at *6 ("Extortion is the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear[.]") (quoting Cal. Penal Code § 518). Nor must a threat threaten prosecution to be actionable. *Let Voters Decide, LLC v. Comm. for Recall of Dist. Att'y George Gascon*, 2022 WL 18278611, at *4 (C.D. Cal. 2022) ("Extortion is the threat to accuse another of a crime or 'expose, or impute to him ... any deformity, disgrace or crime' . . . [T]he Court is unaware of any case holding that there must be a threat of litigation in order to state a plausible claim for civil extortion under *Twombly* and *Iqbal*.") (quoting *Flatley v. Mauro*, 39 Cal. 4th 299, 332 n.16 (2006)). Reynolds further claims that he cannot have engaged

in extortion because he did not obtain property from the Wayfarer Parties by means of threats. But California law "proscribes extortion notwithstanding that the defendant ultimately obtained no money or property by means of his extortionate threats." *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. 2009). Here, the Wayfarer Parties have alleged facts sufficient to state a claim for civil extortion based at least on the demand by Reynolds and Lively that the Wayfarer Parties issue a self-destructive statement taking blame for Lively's press woes or else "the gloves would come off" and they "would attack Wayfarer in the press." FAC ¶¶ 250-256. The FAC thus alleges that Reynolds (and Lively) expressly demanded "consideration" and, if the Wayfarer Parties refused, threatened their "business or property interests." *Monex Deposit Co.*, 666 F. Supp. 2d at 1136 (C.D. Cal. 2009) (quoting *Leeper*, 53 Cal. 2d at 203). To the extent that the Wayfarer Parties' factual allegations do not suffice, the Court should grant leave to amend.

### E.    The FAC Pleads a Claim for False Light Invasion of Privacy

For all the reasons set forth above, *supra* Section III.B, the law of California must apply to the Wayfarer Parties' claim for false light invasion of privacy. Under California law, the false light claim is not duplicative of the defamation claim. The sole case that Reynolds cites for this proposition is inapposite. In *Brooks v. Physicians Clinical Laboratory, Inc.*, 2000 WL 336546 (E.D. Cal. 2000), the court noted that the defamation and false light claims were based on the *same single statement*. *Id.* at 4 ("Both the false light claim and the libel claim are based on the same alleged defamatory statement.") Here, by contrast, the Wayfarer Parties allege not only that Reynolds conspired to defame them by means of false and harmful statements, but also that Reynolds and others conspired to place the Wayfarer Parties in a false light by means of false statements *and* distorting factual statements beyond recognition into falsehoods. *E.g.*, FAC ¶¶ 162, 274-82. California law has long recognized that the torts of false light and defamation are distinct claims with related, but separate, elements. *See, e.g.*, *Price v. Operating Engineers Local*

*Union No. 3*, 195 Cal. App. 4th 962, 970 (2011) ("False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed."); *see also Fairfield v. American Photocopy etc. Co.*, 138 Cal. App. 2d 82, 86-87 (1955). California courts do not dismiss false light claims as merely duplicative of defamation claims, but determine whether a false light claim "stands or falls" based on "whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers*, 74 Cal. App. 4th 1359, 1385 (1999); *see also Jones v. Dollar Tree Stores, Inc.*, 2021 WL 6496822, at *5 (C.D. Cal. 2021) ("The Court finds that Plaintiff's false light claim survives the pleading stage because it is based on the same statements as the defamation claim, which claim is supported by sufficient factual allegations.") (applying California law); *Hogan v. Weymouth*, 2020 WL 8028111, at *11 (C.D. Cal. 2020) (denying motion to dismiss false light claim based on same allegations as defamation). Any overlap in the claims for false light and defamation is not a reason to dismiss the false light claim; it just means the claims will likely rise or fall together before the jury. *See Eisenberg*, 74 Cal. App. 4th at 1385; *Jones*, 2021 WL 6496822, at *5.

To the extent that there exist any defects in the Wayfarer Parties' false light claim, the defects can readily be cured by amendment. Courts applying California law readily grant leave to amend claims for false light. *See, e.g.*, *Skidmore v. Regents of Univ. of California*, 2021 WL 843195, at *2 (N.D. Cal. Mar. 5, 2021) (granting leave to amend false light claim even in the face of California's stringent anti-SLAPP law); *Hogan v. Weymouth*, 2019 WL 11055032, at *5 (C.D. Cal. 2019) (granting leave to amend false light claim). Of course, because the actions of Reynolds and his co-conspirators were carefully concealed, "[l]ess particularity is required when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice

19

of the issues sufficient to enable preparation of a defense." *Okun*, 29 Cal. 3d at 458; *see also Schessler*, 125 Cal. App. 2d at 835-36. Consistent with Rule 15(a)(2), the Court should grant leave to amend to the extent it is not inclined to deny the Motion in its entirety. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. at 65 (Rule 15 has an "extremely liberal standard" on amendment).

### F.    The FAC Adequately Pleads Tortious Interference Claims Against Reynolds

The FAC pleads a claim against Reynolds for his tortious interference with Wayfarer's and Baldoni's relationships with WME, a preeminent talent agency which represented Reynolds, Lively, Wayfarer, and Baldoni. FAC ¶ 16. The FAC alleges that Reynolds "approached Baldoni's agency, namely, an executive at WME, and expressed his deep disdain for Baldoni, suggesting the agency was working with a 'sexual predator' (a phrase that uncoincidentally later appeared in the press) and, at a later date, demanded that the agent 'drop' Baldoni." FAC ¶ 162. The FAC further alleges that Reynolds (and Lively), who are "two of the most powerful stars in the world," (FAC ¶ 18), "demanded through their talent agency, which also represented Wayfarer and Baldoni, that the Wayfarer Parties *publicly apologize* for so-called 'mistakes' during production . . . or else the 'gloves would come off.'" FAC ¶ 16. When those coercive demands were refused, the FAC alleges that "the gloves came off," (FAC ¶ 256), and Reynolds (with Lively and Sloane) defamed Baldoni and Wayfarer to destroy their reputations and livelihoods. FAC ¶ 17. Finally, the FAC alleges Reynolds's threats and demands "induc[ed] WME to cease performing under its contract with the Wayfarer Parties." FAC ¶ 350. Because talent agents are typically paid by commission as a percentage of their clients' earnings, it can be fairly inferred from these allegations that WME would fear its own economic harm from attacks on Baldoni and Wayfarer, and would be coerced to "drop" Baldoni and Wayfarer to maintain

more profitable relationships with much bigger stars such as Reynolds and Lively, who would generate larger commissions.

While it is true, as discussed below, that proper categorization of the tortious interference claim may depend on fact issues that cannot yet be resolved without discovery, this does not warrant dismissal with prejudice. Pleading in the alternative is well-established practice, particularly where relevant facts may exist which are not readily ascertainable by plaintiffs. Moreover, the Court has discretion to dismiss without prejudice and with leave to replead.

### 1. California's Tortious Interference Law Applies

Reynolds suggests that New York choice of law principles dictate application of New York law to the tortious interference claim, because that is where the tort occurred. Mot. at 6. Reynolds, a New York resident, makes the unsworn claim in briefing that he was physically present in New York when he made all of the alleged statements to WME. *See id.* But this argument incorrectly presumes that the place where defendant's conduct occurred necessarily defines the place where tortious interference occurs. Under New York law, that does not follow. *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 217 (S.D.N.Y. 2015). Courts applying New York choice of law principles look to the plaintiff's location, *HV Assocs. v. PNC Bank, N.A.*, 2020 WL 5819559, at *6 (S.D.N.Y. Sept. 30, 2020), or to the place where the contracts or prospective relationships existed. *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 636 (S.D.N.Y. 2014). The Wayfarer Parties' contract with WME was based in California, as were the prospective economic advantages they reasonably anticipated from the contracts with WME. California has the greater interest; to the extent a conflict exists, California law applies.

### 2. Tortious Interference Is a Tort Independent From Defamation

Reynolds contends that under New York law, tortious interference is duplicative of

defamation "where the entire injury complained of by plaintiff flows from the effect on his reputation." Mot. at 20 (quoting *Dellaportas v. Shahin*, No. 24-CV-0793 (VM), 2024 WL 3729183, at *8 (S.D.N.Y. Aug. 7, 2024)). *First*, Reynolds ignores the fact that courts applying California law do not treat such claims as duplicative and, indeed, routinely recognize defamation as an "independently wrongful act" in claims for intentional interference with prospective economic advantage. *See, e.g.*, *Marsh v. Anesthesia Services Med. Grp.*, 200 Cal.App.4th 480, 505 (2011). *Second*, where a plaintiff "plausibly alleges that its economic harm was not directly and solely caused by generalized damage to reputation," *Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, No. 21-674, 2022 WL 815795, at *3 (2d Cir. Mar. 18, 2022), courts applying New York law will let defamation and tortious interference claims to coexist. *Id.* ("[A] claim does not sound in defamation rather than tortious interference merely because the complaint contains allegations of defamation.") (citations omitted).

### 3. The FAC States a Claim for Intentional Interference with Contract

Under California law, "[t]ortious interference with contractual relations requires (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Cosmonova. LLC v. BioFilm, Inc.*, 2025 WL 319249 at *1 (S.D. Cal. 2025). The third and fourth elements, which refer to "disruption of the contractual relationship," as well as breach, create an actual conflict between California and New York law, because in New York law, only "actual breach" suffices. *See First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 635 (S.D.N.Y. 2014) ("[T]here is an actual conflict between New York law and California law. In California, but not New York, a plaintiff can state this cause of action in the absence of an actual breach of contract.").

Despite citing to *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020), which refers to "actual breach *or disruption* of the contractual relationship," *id.* at 1141 (emphasis added), Reynolds claims that the elements under California and New York law are the "same." Mot. at 20. Reynolds then materially relies on this misleading misstatement of the law to argue (without citation to authority), "cessation of performance is not the same thing as a breach of contract." Mot. at 21. But causing a third-party to cease performance **is** the same thing as disruption of a contractual relationship, which meets the California standard. *See Quelimane Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 56 n.15 (1998) ("One who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing *or otherwise causing the third person not to perform* the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the *failure of the third person to perform* the contract.") (emphasis added) (quoting Restatement (Second) of Torts, § 766 (1979)).

Reynolds' other arguments—that the specific details of the contracts with WME are not sufficiently described, and that Reynolds' knowledge of those contracts is alleged only in general terms, (FAC ¶ 349)—are easily curable issues which the Wayfarer Parties should be permitted to address by repleading.[10] Reynolds himself is alleged to be a client of WME, (FAC ¶ 16), and the context of an industry in which WME represents many prominent film actors and directors on identical or nearly identical terms, by procuring engagements for them and receiving commissions as a percentage of earnings, give rise to the inference that Reynolds, one of the most successful actors, understands the contractual terms by which talent agencies, and specifically WME, are bound. Further, contrary to Reynolds's disingenuous argument, the FAC

---

[10] Under California law, a contract need not be in writing in order to be valid and enforceable. *Hasbro, Inc. v. Sweetpea Ent., Inc.*, No. CV-133406, 2014 WL 12586021, at *7 (C.D. Cal. Feb. 25, 2014)

clearly identifies Baldoni and Wayfarer as the Wayfarer Parties who were represented by WME. FAC ¶ 16 ("…their talent agency, which also represented Wayfarer and Baldoni[.]")

### 4. Even If WME's Contracts With Wayfarer Parties Were Terminable at Will, They Were Undisputedly Disrupted

In *Ixchel Pharma,* the California Supreme Court held that to state a claim for tortious interference with a contract terminable at will, a plaintiff must plead an independently wrongful act. 9 Cal. 5th at 1148 (holding that "to state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act"). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Ixchel Pharma,* 9 Cal.5th at 1142.[11] The FAC clearly alleges an independently wrongful act by Reynolds. Courts applying California law recognize that defamation is a sufficient independent wrongful act. *Garland Connect, LLC v. Wells Fargo Bank*, No. B316135, 2023 WL 5523936, at *15 (Cal. Ct. App. Aug. 28, 2023) ("If adequately alleged, defamation may constitute an independently wrongful act on which an interference claim can be based.").[12]

Reynolds attempts to downplay his defamatory statements that Baldoni was a "sexual predator," and that WME was "working with a sexual predator," as merely insulting, and therefore not "wrongful means." Mot. at 23. As discussed above, his statements plainly were defamation *per se*. Reynolds also ignores the threats made to WME that "the gloves would come

---

[11] New York law similarly treats tortious interference with contracts terminable at will as tortious interference with prospective contractual relations. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191-92 (1980); *Red Apple Media, Inc. v. Batchelor*, 729 F. Supp. 3d 350, 377 (S.D.N.Y. 2024)

[12] New York courts also recognize that "[d]efamation is a predicate wrongful act for a tortious interference claim." *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dept. 2009). Further, "misrepresentation" is among the wrongful means recognized by New York as tortious interference with prospective contractual relations. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980) ("Wrongful means" include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract."); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004) ("Carvel did not drive the franchisees' customers away by physical violence, or lure them by fraud or misrepresentation, or harass them with meritless litigation.").

off" if the Wayfarer Parties did not take the blame for the blunders of Reynolds and Lively—threats they carried out by defaming WME's clients, harming the Wayfarer Parties and WME.

### 5. Alternatively, the FAC States a Claim for Intentional Interference with Prospective Economic Advantage

Per *Ixchel Pharma*, under California law, the elements of intentional interference with an at-will contract are effectively equivalent to intentional interference with prospective economic advantage, which also requires a plaintiff to plead "conduct that was wrongful by some legal measure other than the fact of interference itself." *See Della Panna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995). The purpose of this requirement was to eliminate claims for interference where a defendant's acts were privileged as economically self-interested competition. *Id.* at 378. Accordingly, since *Ixchel Pharma*, the pleading standard is the same for intentional interference with an at-will contract and for intentional interference with prospective economic advantage. *Ixchel Pharma*, 9 Cal. 5th at 1147.[13]

As set forth above, the Wayfarer Parties have pled an intentional interference with contractual relations claim, even if their contracts with WME were terminable at will, because Reynolds's defamation and threats wrongfully induced WME to drop them. However, in the alternative, the Wayfarer Parties' tortious interference cause of action may be deemed intentional interference with prospective economic advantage, because their relationship with WME "probably would have resulted in an economic benefit to the Wayfarer Parties." FAC ¶ 357.

To show an economic relationship, "the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's

---

[13] New York law also recognizes equivalent pleading standards for tortious interference with at-will contracts and with prospective economic advantage. *Red Apple Media*, 729 F. Supp. 3d at 377 ("While it is incorrect to say that a contract that is terminable at will can never form the basis for a tortious interference claim, New York courts have treated such a claim as akin to one for tortious interference with prospective economic advantage and [require alleging] the breach was induced through wrongful means[.]").

interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987). Here, the allegations give rise to an inference that WME was engaged in procuring engagements for the Wayfarer Parties which were reasonably probable to benefit them economically. Indeed, discovery is likely to show that there were specific interested counterparties inquiring with WME to engage the Wayfarer Parties.

Reynolds attempts to invoke the privilege of economic self-interest, an exception to international interference with prospective economic advantage, by suggesting that his alleged motive to "seize control" of the film production proves he did not act "solely out of malice." Mot. at 22. But that phrase, which reads in its entirety "the defendant acted solely out of malice, **or used dishonest, unfair, or improper means**," is not a requirement of California law. *See Carvel Corp. v. Noonan*, 350 F.3d 6, 18 (2d. Cir. 2003) (intent does not matter) (emphasis added); *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 835 (9th Cir. 2001) (suggesting "motive is entirely irrelevant to the tort"). Reynolds does not claim he and Baldoni were actors competing for a role, and that his conduct was intended to cause WME to procure the opportunity for him instead of Baldoni. His defamatory statements and threats were intended to accomplish what they in fact did accomplish, that WME would "drop" the Wayfarer Parties from representation.

> ### 6.    Alternatively, the FAC States a Claim for Negligent Interference with Prospective Economic Advantage

As a further alternative, to the extent that Reynolds's intent was not sufficiently alleged, the cause of action for negligent interference with prospective economic advantage survives under California law. California law does require a plaintiff to plead a duty of care. See *Axia Fin., LLC v. Mason McDuffie Mortg. Co.*, 2023 WL 7280443, at *10 (N.D. Cal. Sept. 20, 2023) ("The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care.").

However, although the FAC does not directly address this legal issue, there are facts pled which may give rise to a duty of care, such as the fact that Reynolds's promotion company, Maximum Effort, was hired to promote the Film. FAC, Ex. A at 87, 94-96; *see also Sky Billards, Inc. v. WolVol, Inc.*, 2016 WL 7479426, at *5 (C.D. Cal. Feb. 22, 2016) ("In determining whether the relationship between a plaintiff and a defendant gives rise to a duty of care, courts look to whether the defendant had 'entered into any relationships or undertaken any activity where negligence on his part was reasonably likely to affect plaintiff adversely.'") (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 358-49 (1997)). As an agent, Reynolds may be under a duty not to recklessly damage the Film's director, lead actor, and studio in the eyes of the public or their talent agency. Under California law, "[a] duty of care may arise through statute or by contract … [or] may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979); *Eads v. Marks*, 39 Cal. 2d 807, 812 (1952) ("[T]he agreement between plaintiffs and defendant created a duty of care.") Because a duty of care may arise here, at a minimum the Wayfarer Parties should be permitted an opportunity to replead the existence of a duty of care.

## G.    Reynolds Is Liable for His Direct Actions as Well as by Conspiracy

The Wayfarer Parties have not brought a standalone claim for civil conspiracy, as conspiracy is instead a legal theory by which parties may be made jointly liable for an underlying wrong. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.") The burden of proving—let alone pleading—tort liability on a theory of conspiracy is not high. *Madanes v. Madanes*, 981 F. Supp. 241, 259

27

(S.D.N.Y. 1997) ("[I]t is axiomatic that the proof required to show that a defendant knowingly associated with an existing conspiracy need not be overwhelming . . . Indeed, participation in the conspiracy can be shown entirely through circumstantial evidence.") (quotation omitted).

The Wayfarer Parties have pleaded ample allegations in connection with each cause of action against Reynolds to support the existence of a conspiracy at the pleading stage. For example, the FAC alleges that Reynolds and Lively made a joint threat to "attack" the Wayfarer Parties in the press unless they immediately issued a self-immolating press statement. FAC ¶¶ 250-56. The Wayfarer Parties have also pleaded facts that establish each claim against Reynolds based on his own direct acts. Finally, even if there exist some technical defects in the conspiracy allegations, the Wayfarer Parties should be granted leave to amend. *Panah v. State of California Dep't of Corr. & Rehab.*, 2015 WL 4274207, at *5 (N.D. Cal. July 14, 2015) (where "deficiency [in conspiracy allegations] could feasibly be cured through amendment, the Court will dismiss the civil conspiracy claims . . . with leave to amend").

### H.    Attorneys' Fees Are Not Available to Reynolds Under Second Circuit Law

Even if the Court grants the Motion in its entirety *without* leave to amend, Reynolds still would not be entitled to recover attorneys' fees, because the Second Circuit does not permit the application of state anti-SLAPP laws that conflict with the Federal Rules of Civil Procedure.[14]

Reynolds does not argue for the application of California's anti-SLAPP law, which, as the Second Circuit has held, is inapplicable in federal court because it conflicts with Rules 12 and 56 of the Federal Rules of Civil Procedure. *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020). The Second Circuit has not yet directly addressed the question of whether New York's anti-SLAPP law applies in federal court. Still, federal district courts in the Second Circuit,

---

[14] Reynolds' argument for an award of attorney's fees on the Motion fails for an independent reason: He has not brought an "action, claim, counterclaim, or cross claim to recover damages" per N.Y. Civ. Rights Law § 70-a.

including courts in this district, overwhelmingly agree that the holding of *La Liberte* precludes the application in federal court of New York's anti-SLAPP law, which, like California's, creates a special procedure mechanism (N.Y. C.P.L.R. § 3211(g), (h)) through which defendants can invoke the anti-SLAPP law in a motion to dismiss. *See, e.g.*, *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure."); *Carroll v. Trump*, 590 F. Supp. 3d 575, 583-85 (S.D.N.Y. 2022). Similarly, New York Civil Rights Law § 70-a(1), which would shift the burden of proof and fees to unsuccessful defamation plaintiffs under New York law, does not apply because it imposes a sanction that conflicts with Rule 11 of the Federal Rules of Civil Procedure. *Brady v. NYP Holdings, Inc.*, 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) (Liman, J.). As noted in *Brady*, "Rule 11 permits a court to impose sanctions only after the adverse party has been given notice and a reasonable opportunity to respond [and] to withdraw or correct the challenged paper . . . [New York's] anti-SLAPP provision has no such requirement. A party may seek sanctions without providing any advance notice to the adverse party." *Id.* at *11. Furthermore, "under Rule 11, sanctions are permissive," while "[u]nder the anti-SLAPP provision . . . sanctions are mandatory." *Id.* Notably, although Reynolds argues that the fee-shifting provision of section 70-a(1) is not a sanction at all, the standard for avoiding *permissive* sanctions under Rule 11 (requiring only a "nonfrivolous" claim) is lower than the standard for imposing a *mandatory* award of attorney's fees under section 70-a(1) (requiring a "substantial basis in fact and law" to escape award of attorney's fees). *Id.* In effect, Reynolds asks the Court to create a rule that would *automatically* sanction *any* plaintiff whose nonfrivolous defamation claims failed on a Rule 12(b)(6) motion, a mandatory sanction entirely inconsistent with Rule 11.

The sole federal decision on which Reynolds relies in support of his argument for an

award of attorneys' fees in the event of dismissal without leave to amend is *Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277, at *11-14 (S.D.N.Y. Nov. 26, 2024). In *Bobulinski*, Judge Oetken found that the defendant's entitlement to an award of attorney's fees under New York's anti-SLAPP law is substantive and not procedural, and therefore held that applying the state law in federal court would in that respect be consistent with *La Liberte*. Importantly, however, Judge Oetken's ruling acknowledges that his decision in *Bobulinski* conflicts with the decisions of other judges in the Southern District of New York that have found that the New York anti-SLAPP law's fee-shifting provision does not apply in federal court, including this Court's holding in *Brady*. *Bobulinski*, 2024 WL 4893277, at *17 n.24.

In short, while the Second Circuit has not yet expressly addressed the applicability of New York's anti-SLAPP fee-shifting provision in federal court, virtually all of the courts in the Southern District of New York that have done so have found that *La Liberte* applies to bar the application of that law in federal court because it imposes a burden on plaintiffs that is inconsistent with the Federal Rules of Civil Procedure. *See Brady*, 2022 WL 992631 at *11; *see also LoanStreet, Inc. v. Troia*, 2023 WL 5836237, at *6 (S.D.N.Y. Sept. 8, 2023) ("[T]he decisions holding that § 70-a is inapplicable in federal court are not 'aberrant,' but rather reflect the majority view—and the more recent trend—among district courts in this Circuit.".).

**I.      The Motion to Strike Should Be Denied, or Granted with Leave to Amend**

The Wayfarer Parties incorporate by reference their arguments relating to the motion to strike Exhibit A to the FAC from their prior briefing. (Dkt. Nos. 121, 127.)

**IV.    <u>CONCLUSION</u>**

The Wayfarer Parties respectfully urge that the Court deny the Motion in its entirety. In the alternative, should the Court be inclined to grant the Motion in whole or in part, the Wayfarer Parties respectfully request that they be granted leave to amend their complaint.

Dated:  April 1, 2025
        New York, NY

Respectfully submitted,

**MEISTER SEELIG & FEIN PLLC**


By:____/s/ Mitchell Schuster_____
        Mitchell Schuster
        Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
        kaf@msf-law.com


Dated:  April 1, 2025
        Los Angeles, CA

**LINER FREEDMAN TAITELMAN
        + COOLEY**


By:_____/s/ Bryan Freedman_____
        Bryan J. Freedman (*pro hac vice*)
        Miles M. Cooley (*pro hac vice*)
        Theresa M Troupson (*pro hac vice*)
        Summer Benson (*pro hac vice*)
        Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
        mcooley@lftcllp.com
        ttroupson@lftcllp.com
        sbenson@lftcllp.com
        jsunshine@lftcllp.com