## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BLAKE LIVELY,

                    Plaintiff,

v.                                                    No. 24-cv-10049 (LJL) (lead case)

WAYFARER STUDIOS LLC, et al.,

                    Defendants.

WAYFARER STUDIOS LLC, et al.,

                    Plaintiffs,

v.                                                    No. 25-cv-449 (LJL) (member case)

BLAKE LIVELY, et al.,

                    Defendants.

### REPLY IN SUPPORT OF DEFENDANT RYAN REYNOLDS' MOTION TO DISMISS THE AMENDED COMPLAINT

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Ryan Reynolds*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    THE FAC FAILS TO STATE A DEFAMATION CLAIM. ........................................ 2

    A.    The Claim is Meritless Under New York or California Law.................................. 2

    B.    The FAC Fails to Adequately Identify Any Defamatory Statements. ..................... 3

    C.    Mr. Reynolds' Statements Are Not "Of and Concerning" Six of the Seven Wayfarer Parties.................................................................................................. 4

    D.    The Predator Statements Are Unactionable Opinion.............................................. 4

    E.    The Opposition Confirms the Conclusion that the Alleged Defamatory Statements Are Substantially True............................................................................ 5

    F.    The FAC Fails to Allege Actual Malice. ................................................................. 6

II.    THE FAC FAILS TO STATE A FALSE LIGHT CLAIM. .......................................... 6

III.    THE CIVIL EXTORTION CLAIM AND TORTIOUS INTERFERENCE CLAIMS MUST BE DISMISSED AS TO MR. REYNOLDS. ..................................................... 7

    A.    The FAC Fails to Allege Damages and Proximate Causation, Which Is Fatal to Both the Tortious Interference and Civil Extortion Claims........................ 7

    B.    The Civil Extortion Claim Must Be Dismissed. ..................................................... 8

    C.    The Tortious Interference Claims Must Be Dismissed.......................................... 10

    D.    The FAC Fails To Allege Conspiracy Liability..................................................... 13

IV.    MR. REYNOLDS IS ENTITLED TO ATTORNEY'S FEES. .................................. 13

V.    LEAVE TO AMEND SHOULD BE DENIED. ......................................................... 15

CONCLUSION............................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014)...................................................................14

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) .........................................................................13

*Arikat v. JP Morgan Chase & Co.*,
    430 F. Supp. 2d 1013 (N.D. Cal. 2006) ...................................................3

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)......................................................4

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)......................................................6

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033 (1986) .......................................................................4

*Bobulinski v. Tarlov*,
    2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ...................................13, 14

*Burton v. Label, LLC*,
    344 F. Supp. 3d 680 (S.D.N.Y. 2018)......................................................3

*Cheng v. Neumann*,
    106 F.4th 19 (1st Cir. 2024)...................................................................14

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
    2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)............................................8

*Collins v. Travers Fine Jewels Inc.*,
    2017 WL 1184305 (S.D.N.Y. Mar. 29, 2017) ...........................................3

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................4

*Elias v. Spotify USA Inc.*,
    2020 WL 11884714 (C.D. Cal. Nov. 24, 2020)..........................................3

*Eviyaoglu Tekstil A.S. v. Turko Textile LLC*,
    2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) ...........................................3

*F.A.A. v. Cooper*,
    566 U.S. 284 (2012).............................................................................8

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
   52 F. Supp. 3d 625 (S.D.N.Y. 2014)...................................................................15

*Fuhrman v. California Satellite Sys.*,
   179 Cal. App. 3d 408 (1986) .........................................................................9

*Fuhrman. V.S. v. Muhammad*,
   595 F.3d 426 (2d Cir. 2010)..........................................................................9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   407 F. Supp. 3d 212 (S.D.N.Y. 2019)...............................................................9

*Heitkoetter v. Domm*,
   2023 WL 2563647 (E.D. Cal. Mar. 17, 2023) .........................................................7

*Isaly v. Garde*,
   213 N.Y.S.3d 852 (Sup. Ct. N.Y. County 2024) ....................................................14

*Kashef v. BNP Paribas SA*,
   442 F. Supp. 3d 809 (S.D.N.Y. 2020)................................................................9

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020)..........................................................................14

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
   729 F. App'x 528 (9th Cir. 2018) ..................................................................11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   739 F.3d 45 (2d Cir. 2013)...........................................................................3

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
   2021 WL 2037552 (S.D.N.Y. May 21, 2021) .......................................................10

*Marsh v. Anesthesia Servs. Med. Grp.*,
   200 Cal. App. 4th 480 (2011) ......................................................................12

*Monex Deposit Co. v. Gilliam*,
   666 F. Supp. 2d 1135 (C.D. Cal. 2009) .............................................................10

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   2013 WL 2151478 (C.D. Cal. Mar. 4, 2013).........................................................8

*Okun v. Superior Court*,
   29 Cal. 3d 442 (1981) ..............................................................................4

*Panah v. State of California Dep't of Corr. & Rehab.*,
   2015 WL 4274207 (N.D. Cal. July 14, 2015)........................................................13

*Partridge v. State*,
    173 A.D.3d 86 (3rd Dep't 2019)...........................................................................5

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998)...........................................................................................8

*Reeves v. Associated Newspapers, Ltd.*,
    232 A.D.3d 10 (1st Dep't 2024).........................................................................15

*Republican Nat'l Comm. v. Google LLC*,
    742 F. Supp. 3d 1099 (E.D. Cal. 2024).............................................................12

*Richards v. Warner Music Grp.*,
    2024 WL 4307994 (S.D.N.Y. Sept. 26, 2024)....................................................8

*Rosa v. Eaton*,
    2024 WL 3161853 (S.D.N.Y. June 25, 2024) .....................................................5

*Schessler v. Keck*,
    125 Cal. App. 2d 827 (1959) ...............................................................................4

*Semple v. Andrews*,
    27 Cal. App. 2d 228 (1938) .................................................................................4

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.R.L.*,
    957 F. Supp. 2d 1189 (S.D. Cal. 2013)...............................................................8

*Sotheby's, Inc. v. Stone*,
    388 F. Supp. 3d 265 (S.D.N.Y. 2019).................................................................8

*Talkdesk, Inc. v. Pham*,
    2024 WL 4866690 (C.D. Cal. Aug. 9, 2024)....................................................10

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
    28 N.Y.3d 82 (2016) ............................................................................................4

*Tull v. Higgins*,
    2021 WL 6116971 (N.D. Cal. Dec. 27, 2021)....................................................6

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*,
    2022 WL 20184651 (N.D. Cal. July 7, 2022)......................................................8

*In re WorldCom, Inc. Sec. Litig.*,
    303 F. Supp. 2d 385 (S.D.N.Y. 2004)...............................................................15

*Wyatt v. Wilson Sporting Goods Co.*,
    2016 WL 10749160 (N.D. Cal. June 29, 2016) ................................................11

*Yang v. Yang*,
    2019 WL 8640452 (Cal. Super. Ct. May 31, 2019)................................................................10

*Zottola v. Eisai Inc.*,
    564 F. Supp. 3d 302 (S.D.N.Y. 2021).......................................................................................15

# INTRODUCTION[1]

The Wayfarer Parties' Opposition ("Opposition" or "Opp.") confirms the central thesis of Mr. Reynolds' Motion to Dismiss: the FAC is a meritless list of grievances and hurt feelings designed to retaliate against Blake Lively for raising sexual harassment and retaliation claims. The Opposition is riddled with fatal concessions. As one example, despite the FAC's preposterous $400 million damages claim, the Opposition concedes that the FAC in fact alleges *no* actual monetary harm whatsoever, instead relying exclusively on a defamation *per se* theory that, even if it were valid (which it is not), fails to allege cognizable damages for *any* of the FAC's other claims. In addition, the Opposition concedes the FAC does not allege proximate causation—another fatal omission.

The Opposition reveals something much worse than the FAC's failure to state *valid* claims against Mr. Reynolds—stunningly, it confirms that only three of the Wayfarer Parties (Mr. Baldoni, Mr. Heath, and Wayfarer Studios LLC) have articulated *any* legal claim against Mr. Reynolds at all. As detailed further below, the sole alleged defamatory statements concern *only* Mr. Baldoni, *infra* at 4; the only alleged conduct as to extortion was directed (at most) at Wayfarer Studios, Mr. Baldoni and Mr. Heath, *infra* at 9 n.11; and the only parties even arguably in a contractual relationship with WME were Wayfarer Studios and Baldoni, *infra* at 11 n.13. But, disregarding their Rule 11 obligations, *every* Wayfarer Party asserted *each* claim against Mr. Reynolds, meaning that ***every Wayfarer Party*** (other than Mr. Baldoni) brought a federal lawsuit alleging at least one cause of action ***that they know they had no legal basis to assert***. None of Mr. Sarowitz, Ms. Nathan, Ms. Abel, IEWUM, or TAG ***has a single cause of action against Mr.***

---

[1] Except for internal cross-references within this document, pincites to refer to ECF pagination, and capitalized terms mean the same as in Mr. Reynolds' Motion to Dismiss, ECF No. 133 ("MTD").

*Reynolds* that they even arguably possess.[2] All of those "claims" should be dismissed, and Mr. Reynolds should be awarded his attorney's fees and costs under applicable New York law.

## ARGUMENT

### I.    THE FAC FAILS TO STATE A DEFAMATION CLAIM.

#### A.    The Claim is Meritless Under New York or California Law.

All of the claims against Mr. Reynolds must be dismissed regardless of which state's law applies, rendering a choice of law analysis unnecessary. But to the extent such an analysis is required, New York law applies to each claim asserted against Mr. Reynolds. The Wayfarer Parties concede this (via silence) as to all but the defamation claim: as they acknowledge, the analysis must be conducted separately for each individual claim, but they respond to Mr. Reynolds' choice-of-law arguments only with respect to the defamation claim. Opp. at 14-15.

With respect to the defamation claim, the presumption that "the state of the plaintiff's domicile will *usually* have the most significant relationship to the case," *id.* at 15 (emphasis added), does not apply here because *all* of the relevant conduct occurred in New York. The Wayfarer Parties concede that the *only statements* of Mr. Reynolds alleged in their First Amended Complaint were the Predator Statements, *id.* at 17, which the FAC claims were uttered in New York. FAC ¶¶ 8, 162.[3] And the FAC expressly alleges that the Wayfarer Parties' injuries were experienced in New York. FAC ¶ 314. Even if some portion of the alleged injury occurred elsewhere, where the alleged conduct and alleged injury take place in different jurisdictions, "it is *the place of the allegedly wrongful conduct* that generally has superior interests in protecting the reasonable

---

[2] This is true regardless of any so-called conspiracy theory, because the Wayfarer Parties continue to insist that they have brought these claims against Mr. Reynolds "based on his own direct acts." Opp. at 39.
[3] The opposition brief claims that Mr. Reynolds allegedly a statement to Danny Greenberg on a phone call. Opp. at 17. But the FAC does not mention any such call (or even mention Mr. Greenberg at all). And even the cited portion of the "narrative" in Exhibit A fails to mention 1) Mr. Greenberg's name, or 2) *where Mr. Greenberg was located during the phone call).* ECF No. 50-1, at 99. The Wayfarer Parties do not allege the location of any alleged, unspecified statements made by Mr. Reynolds to the *New York Times* (both New York residents).

expectations of the parties who relied on [the laws of that place] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50-51 (2d Cir. 2013) (emphasis added) (cleaned up).  New York law thus applies to the defamation claim.

### B.    The FAC Fails to Adequately Identify Any Defamatory Statements.

The Wayfarer Parties confirm that the FAC identifies only the two Predator Statements as the basis for their defamation claims as to Baldoni. *See* Opp. at 17 (citing FAC ¶¶ 8, 162). While concluding these allegations are "sufficiently specific" to identify the statements, they exclusively rely on the supplemental "allegations" embodied in their Exhibit A in support of this proposition. *Id.* But Exhibit A is not part of the FAC and, whether struck or not, cannot be properly considered in assessing the sufficiency of the Wayfarer Parties' defamation claims. MTD at 37. The FAC does not sufficiently identify what Mr. Reynolds said, when he said it, or to whom he said it, which is fatal to the defamation claims. *See* MTD at 12.[4]

Beyond the Predator Statements, the Wayfarer Parties argue that the FAC sufficiently pleads that Mr. Reynolds defamed them by working "in concert with Lively and the Sloane Parties" through "statements to third parties, including at least to the NYT." Opp. at 18. Despite the Wayfarer Parties' claim that these statements "were widely disseminated," the FAC does not plead a single actual statement or any details about any such statements. *See id.* Such vague allegations fail to state a claim.[5]

---

[4] *See also Collins v. Travers Fine Jewels Inc.*, 2017 WL 1184305, at *2 (S.D.N.Y. Mar. 29, 2017); *Elias v. Spotify USA Inc.*, 2020 WL 11884714, at *3 (C.D. Cal. Nov. 24, 2020). Even in Exhibit A, the Wayfarer Parties do not identify the date of the alleged defamatory statement, but only that on July 15, 2024, "Wayfarer [was] informed that Reynolds contacted Baldoni's personal agent at WME." ECF No. 50-1 at 99.

[5] *Eviyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020) (Liman, J.); *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006) (defamation allegations "insufficient in that they are ascribed to defendants collectively"). Unlike the FAC, all of the cases cited by the Wayfarer Parties specifically identified the statements or substance forming the basis of the defamation alleged there. *See Burton v. Label, LLC*, 344 F. Supp. 3d 680, 699 (S.D.N.Y. 2018) (complaint specifically alleged defendant "incorrectly but

3

**C.    Mr. Reynolds' Statements Are Not "Of and Concerning" Six of the Seven Wayfarer Parties.**

The Wayfarer Parties concede that the Predator Statements relate only to Baldoni, meaning that these alleged falsehood were not "of and concerning" them. Opp. at 25; MTD at 25 (citing cases). While the Wayfarer Parties also contend that Mr. Reynolds' other unidentified statements to unidentified third parties were "about the other Wayfarer Parties," this singular allegation fails to satisfy the standard that they concede applies. *See* Opp. at 18 (citing *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1043 (1986) (defamatory statements must be "of and concerning" the individual, either by name, or by "clear implication")). Their attempt to meet this requirement through a "small group exception" fails because even this requires allegations about a defined group. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 87 (2016) ("particular, specifically-defined group"); *see also Blatty*, 42 Cal. 3d at 1043. Here, there is no such allegation and this failure mandates dismissal as to all Wayfarer Parties but Baldoni.

**D.    The Predator Statements Are Unactionable Opinion.**

The Predator Statements constitute protected opinion under the governing law in this Circuit. *See* MTD at 17-19 (citing cases). The Wayfarer Parties argue that "context" demonstrates that the Predator Statements "implied undisclosed facts," and were made "in an effort to force WME [to] drop Baldoni." Opp. at 21. But neither the Opposition nor the FAC identifies which "undisclosed facts" may have been implied. Instead, the FAC's allegation of Mr. Reynolds'

---

falsely told Gilmartin that [plaintiff] had emailed a Label check to ADP and had also submitted documents with Label's bank account numbers to ADP"); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 449, 457 (S.D.N.Y. 2012) (concerning "approximately two dozen different passages … in a 16,000–word article"); *Semple v. Andrews*, 27 Cal. App. 2d 228, 230 (1938) (identifying quoted statement given to newspaper reporter); *Schessler v. Keck*, 125 Cal. App. 2d 827, 830 (1959) (identifying substance of allegedly defamatory statements "that the plaintiff was being treated for syphilis in the office of Dr. Wood, and that the plaintiff should not be employed as a cook"); *Okun v. Superior Court*, 29 Cal. 3d 442, 448-459 (1981) (identifying articles and statements providing basis for allegations).

purported "disdain" for Mr. Baldoni demonstrates that his impassioned comments were "likely to be opinion, not fact." *Rosa v. Eaton*, 2024 WL 3161853, at *3 (S.D.N.Y. June 25, 2024); *see* MTD at 17-19 (citing cases).[6]

### E.    The Opposition Confirms the Conclusion that the Alleged Defamatory Statements Are Substantially True.

The Wayfarer Parties claim that "the Court cannot conclude *as a matter of law*" that "Baldoni is a sexual predator," but the substantial truth doctrine does not require the Court to make any such determination. *See* MTD at 19-23. Instead, dismissal is warranted where, as here, the allegedly false statements "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id*. The Wayfarer Parties do not address the cases holding (and therefore concede) that the Court can take judicial notice of Mr. Baldoni's public statements, and otherwise offer no basis for the Court to conclude that those statements (*i.e.*, the "pleaded truth") would have a different impact on a listener than the allegedly false ones (*i.e.*, that Mr. Baldoni has acted in a "predatory" manner). *Compare* Opp. at 22, *with* MTD at 19-23.[7] Likewise, to the extent the Court finds that the Wayfarer Parties otherwise sufficiently alleged some unidentified statements to the *New York Times* and unnamed third parties, there would be no "different effect" on the reader between Mr. Baldoni's own statements and those unspecified statements. *See* ECF No. 145 at 13-14; FAC ¶ 162.

---

[6] Notably, none of the cases that the Wayfarer Parties cite support of the "defamatory meaning" of the Predator Statements, and the one case from an applicable jurisdiction relates to defamation in connection with a press conference by state police about individuals arrested for child pornography. *See* Opp. at 21; *Partridge v. State*, 173 A.D.3d 86 (3rd Dep't 2019). Further, the Wayfarer Parties do not address whether any statements Mr. Reynolds purportedly made to the *New York Times* or other third parties are opinion. *See* Opp. at 19-22.
[7] While the Wayfarer Parties assert that the substantial truth argument relies on "extrinsic evidence" that the Court cannot consider without converting to summary judgment, they ignore that courts can and do take judicial notice of a defendant's own public statements in resolving motions to dismiss. MTD at 22-23; Opp. at 22; FAC ¶¶ 95, 100.

F.    **The FAC Fails to Allege Actual Malice.**

To show actual malice, the Wayfarer Parties rely heavily on allegations relating to Mr. Reynolds' putative motive in coercing or marginalizing some of the Wayfarer Parties to "instill terror" and "accumulate power." Opp. at 26. But allegations of motive do not suffice to demonstrate actual malice. MTD 24-25; *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013), *Tull v. Higgins*, 2021 WL 6116971, at *10 (N.D. Cal. Dec. 27, 2021).

The Wayfarer Parties also argue that Mr. Reynolds "got hold of communications between the Wayfarer Parties from Stephanie Jones that disproved the claim the Wayfarer parties had orchestrated a smear campaign," Opp. at 27, but that claim is nonsensical. For starters, the FAC does not allege anywhere that Mr. Reynolds had access to any such materials "at the time" his alleged statements were made, and in any event the conclusory assertion that those materials "disproved" any smear campaign is directly contradicted by the communications. *Supra* at 3; FAC ¶ 162. Although the Wayfarer Parties argue that Mr. Reynolds' actual malice is established by the "inherent[] improbab[ility]" of an "untraceable" campaign, they have admitted to just such a campaign in their own words. Opp. at 27; ECF Nos. 147, 150, 152-54 ¶ 214. Thus, the only reasonable conclusion is that Mr. Reynolds would have believed in the existence of a "'smear campaign." *See* MTD at 24-25.

II.    **THE FAC FAILS TO STATE A FALSE LIGHT CLAIM.**

New York law applies to the false-light claim against Mr. Reynolds. As discussed above, the alleged slander—the "predator" statement—was made and published entirely in New York, by a New York resident. *Supra* at 3; FAC ¶¶ 8, 162. In those circumstances, New York has the greatest interest in regulating the in-state conduct of its resident. MTD at 13-14. And, under New York law, there is no such thing as a false light claim. Even if California law were to apply, however, the false light claim against Mr. Reynolds must be dismissed as duplicative. While conceding that

6

a false light claim is duplicative when based on the "same single statement" as a defamation claim, the Wayfarer Parties assert that *this* false light claim is based on other allegations. Opp. at 29 (citing FAC ¶¶ 162, 274-82). But the cited paragraphs illustrate that the FAC alleges *no* facts with respect to Mr. Reynolds aside from the allegedly defamatory statement attributed to him: Paragraph 162 mentions the "predator" statement (the precise statement on which the defamation claim is based), and then details allegedly distorted text-messages from a legal complaint that *Ms. Lively* prepared and filed. FAC ¶ 162. Paragraphs 274-282 similarly discuss excerpted text messages in "Lively's CRD complaint," and do not mention Mr. Reynolds at all. *Id.* ¶¶ 274-82. The Opposition thus confirms that the false light claim as to Mr. Reynolds is based on *exactly* the same statement that supports the defamation claim, and therefore must be dismissed as duplicative. MTD at 26; *see Heitkoetter v. Domm*, 2023 WL 2563647, at *2 (E.D. Cal. Mar. 17, 2023) (collecting cases and dismissing a false light claim because "the opposition brief only confirms that the false light claims and the defamation claims involve precisely the same facts").[8]

## III.  THE CIVIL EXTORTION CLAIM AND TORTIOUS INTERFERENCE CLAIMS MUST BE DISMISSED AS TO MR. REYNOLDS.

### A.  The FAC Fails to Allege Damages and Proximate Causation, Which Is Fatal to Both the Tortious Interference and Civil Extortion Claims.

The Wayfarer Parties do not dispute that they have failed to allege *any* damages arising from Mr. Reynolds' conduct. *Compare* MTD at 32-33, *with* Opp. at 31-39. Indeed, although Mr. Reynolds raised this issue in his motion to dismiss, the Wayfarer Parties' simply ignore it; their entire discussion of damages is contained in their discussion of a defamation *per se* theory premised on the notion that they have not (and need not) allege "special damages"—*i.e.*, pecuniary

---

[8] Even the Wayfarer Parties concede that their false light claim, at best, "stands or falls based on "whether it meets the same requirements as the defamation cause of action." Opp. at 30 (cleaned up). This one falls, for the same reasons as the defamation claim, *supra* at 2-6.

harm. Opp. at 24-26 & n.8; *see F.A.A. v. Cooper*, 566 U.S. 284, 295 (2012) ("'Special damages' are limited to actual pecuniary loss."). The Wayfarer Parties' "failure to address [the] issue in response to a Rule 12(b)(6) motion amounts to a concession or waiver of the argument." *Richards v. Warner Music Grp.*, 2024 WL 4307994, at *4 (S.D.N.Y. Sept. 26, 2024) (cleaned up); *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (collecting cases for the same proposition). Similarly, the Wayfarer Parties concede that they have failed to allege that any conduct of Mr. Reynolds *proximately caused* any damages. *Compare* MTD at 31-32, *with* Opp. at 31-39. The words "proximate cause" do not even appear in their opposition brief—another concession warranting dismissal of the tortious interference and civil extortion claims. *See* Opp.

These concessions are fatal to the tortious-interference claims under both California and New York law, obviating the need for further analysis. Indeed, as the Wayfarer Parties' own case confirms, liability for tortious interference with contract is limited to "pecuniary loss." Opp. at 34; *see Quelimane Co., Inc. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 n.15 (1998).[9]

## B. The Civil Extortion Claim Must Be Dismissed.

The Wayfarer Parties assert that California law applies to the civil extortion claim. Opp. at 28-29. But despite conceding that "the choice-of-law analysis is conducted separately for each individual claim," they do not analyze choice-of-law with respect to the civil extortion claim, resting solely on authorities limited to the defamation context. *See generally id.*; *supra* at 2-3. The

---

[9] *See, e.g.*, *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, 2022 WL 20184651, at *7 (N.D. Cal. July 7, 2022) (allegations were "too conclusory and speculative to show that [the plaintiff] has suffered economic damage").; *Seoul Laser Dieboard Sys. Co. v. Serviform, S.R.L.*, 957 F. Supp. 2d 1189, 1201 (S.D. Cal. 2013) ("Conclusory assertions . . . that Plaintiff was damaged as a result do not suffice."); *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013) (dismissing where the complaint contains only "conclusory allegations" of "resulting damage"); *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 276 (S.D.N.Y. 2019) (dismissing tortious interference claim where the plaintiff "merely allude[d] to her damages in a conclusory fashion" such as by asserting that she "suffered damages in an amount to be determined at trial").

Wayfarer Parties effectively concede (via silence) that New York law applies to the civil extortion claim because civil extortion is a conduct-regulating tort that must be governed by "the law of the state where the conduct occurred." *Kashef v. BNP Paribas SA*, 442 F. Supp. 3d 809, 817-18 (S.D.N.Y. 2020). This independently warrants dismissal. MTD at 27.

Even under California law, the claim for civil extortion warrants dismissal. *Id.* The Wayfarer Parties assert that Mr. Reynolds "points to no authority that California courts . . . limit the claim" but fail to address Mr. Reynolds' discussion of *Fuhrman v. California Satellite Sys.*, 179 Cal. App. 3d 408 (1986), which expressly does so. Opp. at 28; *see* MTD at 27. Instead, the Wayfarer Parties continue to rely on a small handful of federal cases, without reference to *state*-court decisions (or even engaging with the federal cases that disagree with their position).[10]

Regardless, the Wayfarer Parties also decline to defend their allegations of "civil extortion" as compliant with Rule 9(b), as they must be to survive dismissal. MTD at 27. Nor do the Wayfarer Parties explain how this claim could survive their general failure to allege any damages, let alone a deprivation of "money obtained" by Mr. Reynolds or any of his co-defendants from any of the Wayfarer Parties. *Id.* Each of these omissions amounts to a concession that is independently fatal to the Wayfarer Parties' civil extortion claim. Even if it were permissible to plead extortion while admitting there was no loss of money or property, it is axiomatic that there could not be a civil cause of action to recover *no damages at all*.[11]

---

[10] As "the decision of an 'intermediate appellate state court,'" *Fuhrman* "is 'datum for ascertaining state law which is **not to be disregarded** by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)) (emphasis added). "There is no such evidence here" that the California Supreme Court would not follow *Fuhrman*; thus, this Court is "bound to apply the law" of California as interpreted by *Fuhrman*. *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).

[11] The Wayfarer Parties concede that their allegations of civil extortion concern, at most, "Wayfarer, Baldoni, and Heath." FAC ¶ 250; Opp. at 29. With respect to the other plaintiffs who have asserted a civil extortion claim—IEWUM, TAG, Nathan, Abel, and Sarowitz—they do not even try to defend the existence of a cognizable claim.

The Wayfarer Parties rely on cherry-picked language from *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. 2009), in which there *was* a demand for money, to argue that "California law 'proscribes extortion notwithstanding that the defendant ultimately obtained no money or property by means of his extortionate threats.'" *Id.* But *Monex* has been repeatedly criticized[12] and lends no support to the Wayfarer Parties here, where there was concededly *no* demand for "money or property," just a request for a public apology. Opp. at 29 (citing and quoting FAC ¶¶ 250-56); *see Monex*, 666 F. Supp. 2d at 1136.

### C.    The Tortious Interference Claims Must Be Dismissed.

Contrary to the Wayfarer Parties' assertions that California law should apply to the tortious interference claims (which purport to rely on allegations about "where the contracts or prospective relationships existed" that do not actually appear in the FAC), Opp. at 32, New York law would apply to the tortious interference claims because all of the relevant conduct occurred in New York, and "New York has a greater interest in regulating business conduct within its borders." *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, 2021 WL 2037552, at *3 (S.D.N.Y. May 21, 2021). Regardless, the tortious interference claims must fail under either state's law.

As an initial matter, the Wayfarer Parties do not dispute that they have failed to allege damages, which is fatal to their tortious interference claims. MTD at 32-33; *see generally* Opp. Similarly, the Wayfarer Parties concede (again, via failure to respond) that they have failed to allege any conduct by Mr. Reynolds that proximately caused any damages. *Compare* MTD at 31-32, *with* Opp. at 31-39; *see supra* at 8. Both concessions are fatal under New York or California law.

---

[12] A "chorus of authorities" had declined to follow *Monex*'s reasoning as misstating California law. *Talkdesk, Inc. v. Pham*, 2024 WL 4866690, at *7 (C.D. Cal. Aug. 9, 2024); *see Yang v. Yang*, 2019 WL 8640452, at *3 (Cal. Super. Ct. May 31, 2019) ("to the extent the court in *Monex* concluded a claim for duress or extortion had been stated in the absence of an allegation of accession to the demand, its decision was contrary to California law.").

The FAC also fails to allege the remaining elements of any tortious interference claim. The Wayfarer Parties concede that these claims depend exclusively on the allegation that Mr. Reynolds "expressed his deep disdain for Baldoni" to a WME executive, referred to Baldoni as a "sexual predator," demanded that the agent "drop Baldoni," and demanded an apology for misconduct on the set of the Film. Opp. at 31 (quoting FAC ¶¶ 18, 162). This, the Wayfarer Parties contend, "induc[ed] WME to cease performing under its contract with the Wayfarer Parties." *Id.* ¶ 350.[13]

Those bare allegations are insufficient. As for intentional interference, regardless of which state's law applies, there is no dispute that the FAC does *not* "set forth the essential terms of a contract, written, oral or implied." *Wyatt v. Wilson Sporting Goods Co.*, 2016 WL 10749160, at *2 (N.D. Cal. June 29, 2016). Even under California law, it is impossible to know whether the contractual relationship was "disrupted" through a cessation of performance without knowing what contractual duty WME ceased performing. And, moreover, the absence of any allegation that the contract was *not* "at-will" means that this claim must be dismissed under New York law or, if California law applies, must satisfy the elements of intentional interference with *prospective* economic advantage—as the Wayfarer Parties concede. Opp. at 36; *see* MTD at 28-29; *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 532 (9th Cir. 2018) (prospective-economic-advantage elements apply where the plaintiff "did not plausibly allege that its relationship with its clients was other than at will").

The FAC does *not* allege the independent elements of intentional interference with economic advantage. Indeed, the FAC does not allege a *single* economic relationship lost because of the alleged "interference" with the WME relationship. In their Opposition, the Wayfarer Parties

---

[13] Despite this general reference to the "Wayfarer Parties," the Wayfarer Parties also admit that, at most, the only parties to any contract with WME were "Baldoni and Wayfarer." Opp. at 34-35 (citing FAC ¶ 16). That concession establishes that each other plaintiff's claim for *any* species of tortious interference is frivolous.

assure the Court that "discovery is likely to show that there were specific interested counterparties inquiring with WME to engage the Wayfarer Parties," Opp. at 37, but that is their *pleading* burden, not a set of facts that they are entitled to wait for discovery to allege, *see, e.g.*, *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1122 (E.D. Cal. 2024) (a plaintiff must plausibly allege "a *particular* relationship or opportunity with which the defendant's conduct is alleged to have interfered" and "*specific* facts to show that a benefit was almost certain") (emphasis added) (cleaned up). Nor does the FAC allege an independently wrongful act, as required to state a claim for interference with prospective economic advantage. Opp. at 36. Even if defamatory statements could serve as such an independently wrongful act, here, the statement at issue is not tortious (and therefore not wrongful) for the reasons stated above. *Supra* at 2-6. Moreover, by seeking to recover for that statement in defamation *and* tortious-interference, the Wayfarer Parties *are* seeking a double-recovery that renders the intentional-interference claim duplicative. MTD at 28.[14]

Finally, with respect to negligent interference (which does not exist in New York), the Wayfarer Parties expressly concede that "California law *does* require a plaintiff to plead a duty of care" and that "**the FAC does not directly address this legal issue**." Opp. at 37-38 (emphasis added). The Wayfarer Parties speculate that a contract between Mr. Reynolds' company and an unspecified Wayfarer party "may" have created such a duty, Opp. at 38, but refuse to say anything about this contract (which they presumably possess) beyond their abstract speculation. This concession, alone, warrants dismissal with prejudice.

---

[14] The sole case that the Wayfarer Parties cite to defend the practice of bringing defamation claims and intentional-interference claims arising from the same facts under California law, *Marsh*, did *not* actually approve of that practice; there was no defamation claim at issue. *See Marsh v. Anesthesia Servs. Med. Grp.*, 200 Cal. App. 4th 480 (2011).

### D.       The FAC Fails To Allege Conspiracy Liability.

The Wayfarer Parties do not dispute that all of their conspiracy allegations are made "on information and belief," or that such allegations are insufficient to allege conspiracy liability. MTD at 33-35. Instead, they simply assert that they have "pleaded ample allegations in connection with each cause of action against Reynolds to support the existence of a conspiracy at the pleading stage." Opp. at 39. But they mention *only one* such allegation, namely "that Reynolds and Lively made a joint threat to 'attack' the Wayfarer Parties in the press," paraphrasing paragraphs in the FAC that allege that the Wayfarer Parties *were informed* (and presumably believe) that Mr. Reynolds and Ms. Lively had requested a public apology for misconduct on the set of the Film. *Id.* (quoting FAC ¶¶ 250-56). Even taken as true, that allegation of joint action (a request for an apology) is not suggestive of any agreement to do anything unlawful, or a "common plan or design" to perpetrate a tort. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994); *Panah v. State of California Dep't of Corr. & Rehab.*, 2015 WL 4274207, at *4 (N.D. Cal. July 14, 2015) (under California law, "civil conspiracy claims are subject to a heightened pleading standard, demanding that a plaintiff allege specific facts 'containing evidence of unlawful intent, or face dismissal of the claim.'"). And even if it were, it relates *only* to the civil extortion claim—as to which the FAC alleges no damages—not to "each cause of action." Opp. at 39.

## IV.      MR. REYNOLDS IS ENTITLED TO ATTORNEY'S FEES.

The Wayfarer Parties do not dispute that New York law applies to Mr. Reynolds' entitlement to anti-SLAPP attorney's fees, *see* Opp. at 39-41, but instead incorrectly claim that Section 70-a(1)'s fee-shifting provision does not apply in federal court.[15] The Wayfarer Parties

---

[15] The Opposition is wrong to assert, Opp. at 39 n.14, that Mr. Reynolds would have to bring a separate "action, claim, counterclaim, or cross claim" to recover fees under Section 70-a(1). New York courts have held that Section 70-a(1) permits fees to be sought via motion in the underlying SLAPP action, and a fee applicant therefore "need not file a separate action or counterclaim." *Bobulinski*, 2024 WL 4893277, at *16 (explaining that under the text of Section 70-a(1), "maintaining an action includes defendants' continuing to litigate in an original action filed against them")

concede that the Second Circuit "has not directly addressed the question of whether New York's anti-SLAPP law applies in federal court," but urge this Court to follow *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020). But *La Liberte* itself perfectly illustrates the relevant distinction: there, the Second Circuit reasoned that "California's anti-SLAPP statute . . . awards attorneys' fees *only* to a prevailing defendant on *a special motion to strike*," and "does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)." *Id.* at 88-89. By contrast, "section 70-a does not condition an award of attorneys' fees solely upon prevailing under the procedural provisions of New York's anti-SLAPP statute, as opposed to under federal law." *Cheng v. Neumann*, 106 F.4th 19, 24 n.2 (1st Cir. 2024). Thus, "the New York anti-SLAPP law does not have the feature of California's law that *the La Liberte* court considered fatal to its application in federal court: a provision tying fee-shifting to a specific state procedural mechanism." *Bobulinski v. Tarlov*, 2024 WL 4893277, at *13 (S.D.N.Y. Nov. 26, 2024). In *this* scenario, applying "mandatory fee shifting" in federal court is "unproblematic." *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014).

The Wayfarer Parties insist that enforcing New York's fee-shifting provision would "would *automatically* sanction *any* plaintiff whose nonfrivolous defamation claims failed on a Rule 12(b)(6) motion." Opp. at 40.[16] But that does not accurately describe the consequence of shifting fees under Section 70-a(1)—it would apply not to "*any* plaintiff" who files a "nonfrivolous" defamation claim, but *every* plaintiff who files a *SLAPP* claim and cannot *even survive the 12(b)(6) standard.* And while "loser-pays" regimes may be rare in the United States,

---

(cleaned up); *see Isaly v. Garde*, 213 N.Y.S.3d 852, 860 (Sup. Ct. N.Y. County 2024) (summarizing First Department cases approving of Section 70-a(1) fees being sought by motion).

[16] Even the Wayfarer Parties concern for "nonfrivolous" claims does not apply to the bulk of the claims in this case, as numerous plaintiffs have brought claims against Mr. Reynolds and Ms. Lively that they indisputably do not possess—and which are therefore indisputably frivolous. *Supra* at 1.

New York law is designed "to deter 'strategic lawsuits against public participation' and thereby protect the free exercise of speech, petition and association," *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 12 (1st Dep't 2024), including by requiring SLAPP plaintiffs to bear the cost of meritless claims like those found in the FAC.

## V.    LEAVE TO AMEND SHOULD BE DENIED.

The Wayfarer Parties chose to amend as of right before seeing any party's motion to dismiss, and now that the defects in their claims have been pointed out, they repeatedly fall back on a request for leave to amend yet another time. *See* Opp. at 13, 16 n.4, 26 n.8, 29, 30-31, 39, 41. But the Wayfarer Parties have not moved for leave to amend or complied with Local Rule 15.1(a), rendering their "bare request to amend . . . in a brief . . . improper." *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 319 (S.D.N.Y. 2021). In any event, their request is meritless because a "plaintiff must . . . provide some indication of the substance of the contemplated amendment before a court could entertain the request," and nowhere do the Wayfarer Parties say what facts they could allege to cure the defects in the FAC or why they could not have alleged those facts in either of their two prior complaints. *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 642 (S.D.N.Y. 2014). "In the absence of any identification of how a further amendment would improve upon the [c]omplaint, leave to amend must be denied as futile." *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004).

## <u>CONCLUSION</u>

All claims against Mr. Reynolds should be dismissed with prejudice and without leave to amend, and the Court should award Mr. Reynolds his costs, including attorney's fees.

Respectfully submitted,

Dated: April 8, 2025

/s/ Michael J. Gottlieb

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Ryan Reynolds*