## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, | |
| Plaintiff, | |
| v. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al., | |
| Defendants. | |
| WAYFARER STUDIOS LLC, et al., | |
| Plaintiffs, | |
| v. | No. 25-cv-449 (LJL) (member case) |
| BLAKE LIVELY, et al., | |
| Defendants. | |

### REPLY IN SUPPORT OF DEFENDANT BLAKE LIVELY'S MOTION TO DISMISS THE AMENDED COMPLAINT

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Blake Lively*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.     THE WAYFARER PARTIES' DESPERATE ATTEMPT TO REFRAME THE DEFAMATION CLAIM FAILS TO SAVE IT ................................................. 3

     A.    The Opposition Fails To Show That Ms. Lively is Independently Liable for Defamation For Her Own Alleged Statements ................................. 3

         1.    The Wayfarer Parties Fail to Identify a Specific Defamatory Statement Made by Ms. Lively and Ignore the Single Publication Act ................................................................................................ 3

         2.    The Wayfarer Parties Cannot Evade The Privileges ............................... 5

         3.    Ms. Lively is Not Liable for Statements that She Did Not Make ............ 8

             i.    Ms. Lively is Not Liable for Her Husband's Alleged Statements ................................................................................... 8

             ii.    Ms. Lively is Not Liable for the Alleged Sloane Statement ........ 10

     B.    The Wayfarer Parties Concede That All Causes of Action with their Gravamen in Defamation Fail ........................................................... 11

     C.    The Wayfarer Parties Still Fail to Plead The Basic Elements of Extortion ......... 11

     D.    The Wayfarer Parties' Admissions Doom The Breach of Covenant Claim ........ 13

     E.    Each of the Wayfarer Parties' Interference Claims Fails .................................... 13

     F.    The FAC Does Not Plead The Existence of a Conspiracy ................................. 14

II.    THE WAYFARER PARTIES' ATTACKS ON SECTION 47.1 FAIL ......................... 14

CONCLUSION……………………………………………………………………………..16

## TABLE OF AUTHORITIES

**Page**

### CASES

*Abir Cohen Treyzon Salo, LLP v. Lahiji,*
40 Cal. App. 5th 882 (2019) ....................................................................................10

*Abraham v. Lancaster Cmty. Hosp.*,
217 Cal. App. 3d 796 (1990) ......................................................................................5

*Action Apartment Assn., Inc. v. City of Santa Monica,*
41 Cal. 4th 1232 (2007) .............................................................................................6

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014)......................................................................................15

*BE & K Const. Co. v. N.L.R.B.*,
536 U.S. 516 (2002).................................................................................................15

*Blatty v. New York Times Co.*,
42 Cal. 3d 1033 (1986) ..............................................................................................4

*Bloom v. AllianceBernstein L.P.*,
725 F. Supp. 3d 325 (S.D.N.Y., 2024)...................................................5, 7, 8, 11

*Bobulinski v. Tarlov*,
2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) .........................................................14

*Bond v. Lilly*,
2024 WL 4879324 (Cal. Ct. App. Nov. 25, 2024)..............................................5, 6

*Burrill v. Nair*,
217 Cal. App. 4th 357 (2013) .....................................................................................8

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*,
387 F.Supp.2d 1084 (N.D. Cal. 2005) ......................................................................12

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000).........................................................................................2

*D.A.R.E Am. v. Rolling Stone Mag.*,
101 F. Supp. 2d 1270 (C.D. Cal. 2000) ...................................................................10

*Doe v. Mahboubi-Fardi*,
2024 WL 2206640 (C.D. Cal. Jan. 2, 2024) ............................................................12

*Dufresne v. Elite Ins. Co.*,
26 Cal. App. 3d 916 (1972) ......................................................................................11

*Flores v. Evergreen at San Diego, LLC*,
148 Cal. App. 4th 581 (2007) .....................................................................................9

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) .....................................................................................4

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Fuhrman v. Cal. Satellite Sys.*,
179 Cal. App. 3d 408 (1986) ................................................12

*Hagendorf v. Brown*,
699 F.2d 478 (9th Cir.), *amended*, 707 F.2d 1018 (9th Cir. 1983) ............................................6

*Hirschfeld v. Spanakos*,
104 F.3d 16 (2d Cir. 1997)..................................................15

*Jordan v. Chase Manhattan Bank*,
91 F.Supp.3d 491 (S.D.N.Y. 2015) ........................................13

*Makaeff v. Trump Univ., LLC*,
26 F. Supp. 3d 1002 (S.D. Cal. 2014)..........................................8

*Matson v. Dvorak*,
40 Cal. App. 4th 539 (1995) ...........................................9, 10

*Med. Marijuana, Inc. v. ProjectCBD.com*,
46 Cal. App. 5th 869 (2020) ..........................................3, 5

*Monex Deposit Co. v. Gilliam*,
666 F. Supp. 2d 1135 (C.D. Cal. 2009) .......................................12

*Moore v. Hagerty Ins. Agency*,
LLC, 2020 WL 7053262 (N.D. Cal. May 1, 2020) ........................................9, 10

*Nat'l Jewish Democratic Council v. Adelson*,
417 F. Supp. 3d 416 (S.D.N.Y. 2019)..................................15

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) ........................................14

*Peacock v. Suffolk Bus Corp.*,
100 F. Supp. 3d 225 (E.D.N.Y. 2015) .......................................4

*People v. Navarro*,
7 Cal. 3d 248 (1972) .......................................................15

*Primetime 24 Joint Venture v. Nat'l Broad., Co., Inc.*,
219 F.3d 92 (2d Cir. 2000)..................................................15

*Roberts v. McAfee, Inc.*,
660 F.3d 1156 (9th Cir. 2011) .............................................12

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014).................................5, 11

*Sanchez v. Am. Media, Inc.*,
2020 WL 8816343 (C.D. Cal. Dec. 29, 2020) ........................................10

*Scheidler v. Nat'l Org. of Women, Inc.*,
537 U.S. 393 (2003).........................................................13

# TABLE OF AUTHORITIES
(continued)

**Page**

*TaiMed Biologics, Inc. v. Numoda Corp.*,
2011 WL 1630041 (N.D. Cal. Apr. 29, 2011) .........................................................................12

*Talkdesk, Inc. v. Pham*,
2024 WL 4866690 (C.D. Cal. Aug. 9, 2024) ...........................................................................12

*Thai v. Cayre Grp., Ltd.*,
726 F. Supp. 2d 323 (S.D.N.Y. 2010) .......................................................................................4

*Valentine v. Plum Healthcare Group, LLC*,
37 Cal. App. 5th 1076 (2019) ....................................................................................................9

*West v. Solar Mosaic LLC*,
105 Cal. App. 5th 985 (2024) ..................................................................................................11

*Wyatt v. Wilson Sporting Goods Co.*,
2016 WL 10749160 (N.D. Cal. June 29, 2016) .......................................................................13

*Yang v. Yang*,
2019 WL 8640452 (Cal. Super. Ct. May 31, 2019) .................................................................12

*Zottola v. Eisai Inc.*,
564 F.Supp.3d 302 (S.D.N.Y. 2021) .........................................................................................2

## STATUTES

Cal. Civ. Code § 47.1 ...................................................................................................2, 7, 14, 15

Cal. Code Regs. tit. 2, § 10005 ...........................................................................................................7

Cal. Gov't Code § 12965(b) ..............................................................................................................7

## RULES

Fed. R. Civ. P. 9(b) ...........................................................................................................................12

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................4

## INTRODUCTION

The Wayfarer Parties have tied themselves in knots trying to state a defamation claim against Ms. Lively that is not barred by the statute of limitations or wholly contained within her Legal Complaints, **which they concede cannot form the basis of any actionable claims**. ECF No. 83 ("Opp") at 21. They have been entirely unsuccessful. As a result, the Wayfarer Parties have hit the do-over button again, reinventing their FAC to apply **only** to alleged statements "from July-December 2024," *before* Ms. Lively filed her CRD Complaint. *Id.* at 20. If true, then the elaborate tale the Wayfarer Parties tell in their 391+ paragraph FAC is largely irrelevant because, according to them, **nothing that happened before July 2024, including the production and the cut of the Film, is part of their defamation case**. They have essentially admitted that their $400 million lawsuit was a PR stunt.

The Wayfarer Parties do not appear to understand the implications of their own concessions—remarkably, the Opposition continues to rely upon allegations they claim are not part of the case. The Opposition's discussion on "actual malice," for example, is based entirely on the FAC's effort to "dismantle, point by point, the insinuations in the [November 2023] 17-point list," (Opp. at 26), as well as the FAC's tired narrative that Ms. Lively "fabricated, materially mischaracterized, or grossly exaggerated all of the allegations she made in her CRD Complaint and federal lawsuit." *id*. But because the Wayfarer Parties argue that that they are not relying upon: (1) any alleged statements prior to *July 2024* (which would *exclude* the 17-point list), or (2) the Legal Complaints (which they agree are privileged), neither of these can support the element of "actual malice." Moreover, the Wayfarer Parties once again focus on Baldoni's insistence that *he* believes *he* acted appropriately, rather than point to any facts indicating that *Ms. Lively subjectively doubted* the truth of her alleged statements (whatever they are), and they ignore the plethora of

evidence in their own pleading that demonstrates her unwavering good faith. Unable to identify any actionable statements by Ms. Lively, they argue she is liable for things her husband allegedly said. In 2025, wives are not responsible for their husband's words; it is incredible that Baldoni, a person who calls himself a "feminist," would take such a position.

Realizing that a loss of the defamation claim subjects them to attorneys' fees, treble damages, and punitive damages under Section 47.1, they attack that provision on "constitutional" grounds, which is an attack on all victims of sexual harassment and assault. Fortunately, the Wayfarer Parties' effort to invalidate California's duly enacted legislation is frivolous—the First Amendment empowers legislatures to protect victims' First Amendment rights via fee-shifting rules designed to deter retaliatory litigation.

In addition, the Opposition fails to address the many other defects that require dismissal with prejudice. The Wayfarer Parties: (1) fail to allege specific monetary harm, (2) do not dispute that each claim is rooted in defamation (thus all fail), (3) ignore California authority upending their extortion claim, (4) improperly plead new facts in the Opposition to cure the obvious defects in their breach of covenant claim (which still fails), and (5) fail to articulate the key elements of both tortious interference (including a duty of care supporting negligence) and conspiracy (the critical "meeting of the minds"). Last but not least, the Opposition ignores that the scattershot group pleading does not allege *any facts at all* related to most of the Plaintiffs, yet asserts all these claims on behalf of them all collectively.[1] This meritless FAC is a classic case of retaliatory litigation, cannot be saved by amendment,[2] and should be dismissed with prejudice.

---

[1] The Opposition concedes by silence that the following do not apply to certain parties: Civil Extortion (no allegations as to Abel, Nathan, or Sarowitz); Breach of the Implied Covenant (no allegations as to Baldoni, Heath, Sarowitz, Nathan or Abel); Tortious Interference Claims (no allegations as to Heath, Sarowitz, Abel, Nathan, or IEWU LLC).

[2] The Wayfarer Parties' request for leave to amend should be denied because they fail to attach a proposed amended pleading as required. *See Zottola v. Eisai Inc.*, 564 F.Supp.3d 302, 319 (S.D.N.Y. 2021) (request to amend "contained solely in [] opposition memorandum, is procedurally defective."). Indeed, as discussed below, a "better pleading" is futile, which for this additional reason should be denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## ARGUMENT

I. **THE WAYFARER PARTIES' DESPERATE ATTEMPT TO REFRAME THE DEFAMATION CLAIM FAILS TO SAVE IT.**

In their new telling of the case, the Wayfarer Parties now state that, rather than the FAC boiling down to "two categories of publications" (as they urged in their oppositions to the Sloane Parties' and *The Times*' Motions), they seek to hold Ms. Lively liable for *three publications*, two of which do not even involve her: (1) Mr. Reynolds' supposed comment to WME that Baldoni is a "sexual predator" (the "Predator Statements"); (2) the Sloane Parties' alleged statements that Baldoni "sexually assaulted" Ms. Lively (the "Sloane Statement")[3]; and (3) Ms. Lively, Mr. Reynolds' and the Sloane Parties' alleged *unidentified* statements to third parties, including *The Times* and other outlets*,* "to the effect that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively and others and retaliated against Lively[.]"(the "Media Statements"). Opp. at 16-17. None of these is sufficient.

A. **The Opposition Fails To Show That Ms. Lively is Independently Liable for Defamation For Her Own Alleged Statements.**

1. **The Wayfarer Parties Fail to Identify a Specific Defamatory Statement Made by Ms. Lively and Ignore the Single Publication Act.**

The closest the Wayfarer Parties come to a "specific statement" is arguing that Ms. Lively "falsely claimed" to *The Times* or other media outlets that: (1) the Wayfarer Parties had engaged in "an insidious PR sabotage operation deployed as revenge for sexual harassment complaints. . .'" and (2) the Protections for Return to Production were "proof positive that sexual harassment was endemic on the Film's set." Opp. at 19-20. Each purported "statement" is insufficient.

The Protections for Return to Production (the "Protections"). The FAC does not allege that

---

[3] The assertion that Ms. Sloane made statements "in response to media inquiries," without any specifics, Opp. at 16, cannot support defamation. *See Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 894 (2020).

Ms. Lively told *The Times*, prior to filing her CRD Complaint, that the Protections were "proof" she had been harassed, which is fatal to this new theory.[4] And even if it did, such a statement would not be defamatory.[5] A statement regarding what a document supposedly *proves* is unactionable opinion. *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 386 (2004). Also, *The Times* Publications themselves make only passing references to the Protections[6]—they do not state or even suggest that the Protections "prove" harassment occurred on set. *See, e.g.*, ECF No. 107-1. Instead, the only publication that plausibly suggests the Protections prove harassment is the CRD Complaint, which the Wayfarer Parties *concede* is both privileged (FAC, ¶¶ 4, 269) and *not* a basis for their defamation claim. Opp. at 21.

Moreover, the Single Publication Act bars any claim based on Ms. Lively's alleged statements relating to the Protections, no matter to whom or in what forum she made them, because they were first published *before January 17, 2024*. *See* ECF No. 145 ("MTD") at 21-23. The FAC is explicit that, as of 2023, Wayfarer found the "stunning list" of Protections "unsettling," believed it misrepresented "set culture," attempted to "revise" it, and concluded that it "had been drafted for the apparent purpose of insinuating or outright claiming that Baldoni, Heath, and others had engaged in sexually inappropriate conduct during filming." FAC, ¶¶ 75-76. In fact, in arguing malice, the Opposition identifies eight bullet points that track the Protections. *See* Opp. at 26-27.

Rather than confront the Single Publication Act, the Wayfarer Parties ignore it. They assert

---

[4] Instead, the FAC states that "[t]he Article refers to" the Protections and that Ms. Lively *later* claimed, presumably to the CRD, that the letter proved sexual harassment had occurred. FAC ¶ 270. The Wayfarer Parties cannot use their Opposition to rewrite the FAC. *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("[A] plaintiff 'cannot amend [his] complaint by asserting new facts or theories . . . in opposition to [a] motion to dismiss.'").

[5] Amendment cannot cure this flaw for the additional reason that the Protections are not "of or concerning" three of the seven plaintiffs (Sarowitz, Abel, and Nathan). *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 (1986) ("To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society"). *See Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (whether defamatory statements are "of and concerning" defendants may be considered on a Rule 12(b)(6) motion).

[6] The Article states only: "In a side letter to Ms. Lively's contract, signed by Mr. Heath, the studio also agreed not to retaliate against the actress." ECF No. 107-1 at 3.

the earliest statements at issue were made in or after July 2024, *id.* at 20, but do not identify what Ms. Lively supposedly said, when she said it, or to whom, utterly failing to establish the necessary element of specificity. *See Med. Marijuana, Inc.*, 46 Cal. App. 5th at 894 (which the Opposition ignores). They do not even attempt to explain how Ms. Lively's "insinuations" in November 2023 differ from the supposed 2024 statements at all, much less how the latter are timely. *See* Opp. at 25-26. By failing to address that issue, the Wayfarer Parties abandon any argument to the contrary. *See Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 347 (S.D.N.Y., 2024) (granting motion to dismiss where opposition did not address arguments in the motion); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) (accord).

The "False and Insidious" Story. The allegation that before filing the CRD Complaint, Ms. Lively told *The Times* a "false story" that the Wayfarer Parties retaliated against her similarly fails. *See* Opp. at 19-20. The Wayfarer Parties do not identify any "statements" at all—much less statements either specific enough to enable Ms. Lively to defend herself, or ones that are not wholly contained within the Legal Complaints and therefore privileged. *See infra*, at 6.

**2.    The Wayfarer Parties Cannot Evade The Privileges.**

The Opposition fails to rebut the application of the fair report, litigation, and sexual harassment privileges, all of which bar the defamation claims.

Fair Report Privilege. The Wayfarer Parties rest their challenge to the fair report privilege on timing—insisting that Ms. Lively "secret[ly] collaborat[ed]" with *The Times* for months before filing the CRD Complaint, attempting to distinguish between two levels of statements (Ms. Lively to *The Times* and *The Times* to the public). Opp. at 28-29. But discussing legal claims with a news outlet before filing them does not vitiate the privilege. *Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 822 (1990); *Bond v. Lilly*, 2024 WL 4879324, at *5 (Cal. Ct. App. Nov. 25, 2024) ("we do not believe the timing is or should be dispositive so long as they were fair and true

reports of the allegations in the filed complaint."). Indeed, "[t]o subject people to liability for fair and true reports to the media just because they were made in anticipation of a lawsuit that was actually filed, rather than after it was filed, would frustrate [the] purpose" of the privilege. *Bond*, 2024 WL 4879324, at *6. The Opposition ignores this point, made first in the Motion, and cites no contrary authority.

Regardless of when or how information was communicated to *The Times*, *The Times* ***Publications*** are confined to a report of the CRD Complaint (allegedly "lifting it nearly verbatim"). FAC, ¶¶ 259, 261-62; ECF Nos. 106, 158. And Ms. Lively's alleged statements regarding the Protections and the "sabotage operation" are inextricably linked to the gravamen of her filed legal claims. FAC, ¶¶ 262, 270, 273. As such, the Wayfarer Parties fail to identify what harm, if any, Ms. Lively's identical alleged pre-filing statements to *The Times* caused. Instead, the Wayfarer Parties have been crystal clear that the Article is "the genesis of the entire action," ECF No. 70 at 28, and that their supposed $400,000,000 in damages stems directly from what *The Times* **actually published** *after* Ms. Lively filed, which falls squarely within the protections of the fair report privilege.

The Litigation Privilege. Because the Wayfarer Parties fail to identify a single statement by Ms. Lively outside the Legal Complaints, the litigation privilege bars the defamation claim. *See Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007); *Hagendorf v. Brown*, 699 F.2d 478, 481 (9th Cir.), *amended*, 707 F.2d 1018 (9th Cir. 1983). The Wayfarer Parties' baffling argument that Ms. Lively did not "seriously consider" litigation because she "waited" to file suit *for eleven days* after receiving a right-to-sue notice is meritless. *See* Opp. at 22. In any event, Ms. Lively was not required to request the CRD investigate her claims or to simultaneously file civil litigation (she had an <u>*entire year*</u> to do so). *See* Cal. Gov't Code §

12965(b); Cal. Code Regs. tit. 2, § 10005. Further, the Wayfarer Parties concede (by silence) that the litigation privilege would apply to the CRD Complaint *even if Ms. Lively never filed civil litigation.*

Sexual Harassment Privilege. The Wayfarer Parties accept (by their silence) that Ms. Lively's statements constitute "communication[s]. . . regarding an incident of sexual assault, harassment, or discrimination," (Cal. Civ. Code § 47.1), that Section 47.1 protects Ms. Lively's statements to *anyone*, and that Ms. Lively need not have actually complained for the privilege to attach. Opp. at 27; *see also Bloom*, 725 F. Supp. 3d at 347. They advance two challenges: that Ms. Lively made her statements without "a reasonable basis" and with malice. *Id. at* 23-27. Both fail.

**First**, the FAC itself shows Ms. Lively had a reasonable basis to complain about sexual harassment and retaliation, which is all that is required. *See* MTD at 13, 32 (describing FAC's admissions of sexually harassing incidents while on set); *see also* FAC, ¶ 162, 282 (text from Nathan, "you know we can bury anyone," reports of "HR complaints," among others). The Wayfarer Parties' quibbling with Ms. Lively's characterization of the events (that they admit occurred and she raised in real time) does not undermine her reasonable basis. *See* Opp. at 26-27. Nor does the Wayfarer Parties' narrative that Ms. Lively allegedly "insert[ed] herself into the production process," *id.* at 24-26, which concerns statements they admit do not support liability, *id.* at 20, and that are, nonetheless, irrelevant to Ms. Lively's harassment concerns. The same analysis applies to statements concerning the Protections and the "insinuations" therein, which are time-barred. *See supra*, at 5.

**Second**, the parties agree that the actual malice standard requires an allegation that Ms.

Lively made knowingly false statements or acted with reckless disregard of the truth.[7] *See* MTD at 30; Opp. at 29-30. The Wayfarer Parties are unable to defend the FAC against this standard, and fall back to the same strategy that plagues the FAC: generally referring to Ms. Lively's "accusations" (without identifying any specific one) and flatly concluding they are all "false," without explanation. Opp. at 30-31. But that fails to establish malice.[8] *Makaeff v. Trump Univ.*, LLC, 26 F. Supp. 3d 1002, 1010 (S.D. Cal. 2014) (rejecting fabrication argument where defendant's statements were based on "personal experiences" and "interactions"). Indeed, the Wayfarer Parties agree that Ms. Lively's allegations "describ[e] her own purported experiences," Opp. at 31, and have conceded (via silence) that Baldoni and Nathan stated in writing that Ms. Lively "***genuinely believes she's right and that all of this is unjust***." ECF No. 50-1 at 155 (emphasis added). As for retaliation, they claim that their texts disprove a "smear campaign" and that Ms. Lively's own alleged "malice" is established by the "inherent[] improbab[ility]" of an "untraceable" campaign. Opp. at 31. But the plain language of those communications, *in their own words*, contradicts such arguments. *See* Opp. at 32; ECF Nos. 147, 148, 149, 150, 152-54, ¶ 214 (texts about "untraceable" digital services). The only reasonable conclusion is Ms. Lively wholeheartedly believed in the existence of a "'smear campaign." MTD at 30-32.

### 3.    Ms. Lively is Not Liable for Statements that She Did Not Make.

#### i.    *Ms. Lively is Not Liable for Her Husband's Alleged Statements.*

In another stunning example of Baldoni's faux feminism he argues that a wife should be liable for her husband's statements. Fortunately, that is not the law today. To begin with, Ms.

---

[7] The Opposition asserts that "actual malice" does not apply because six of seven Wayfarer Parties are not public figures; but ignores that the same standard applies to private figures where matters of "public concern" are at issue. *See* MTD at 30. Their silence concedes the argument. *Bloom*, 725 F. Supp. 3d at 347.

[8] Even the Wayfarer Parties' own cases support this point. *See* Opp. at 30; *see also Burrill v. Nair*, 217 Cal. App. 4th 357, 394 (2013), *disapproved of by Baral v. Schnitt*, 1 Cal. 5th 376 (2016) ("false statements that have some element of truth to them are logically less susceptible" to finding that they were made with actual malice).

Lively cannot be liable for statements made by Mr. Reynolds that, as a matter of law, are inactionable.[9] *Moore v. Hagerty Ins. Agency*, LLC, 2020 WL 7053262, at *7 (N.D. Cal. May 1, 2020) ("There is no basis for vicarious liability if there is no underlying liability in the first place."). Even if the Predator Statements (or any others) were defamatory, the FAC fails to plausibly allege that Ms. Lively played a "responsible part" in their publication. It is also devoid of allegations that Mr. Reynolds acted as Ms. Lively's agent. The Wayfarer Parties argue that Mr. Reynolds "represented" Ms. Lively "in dealings with WME and others and act[ed] as her 'representative' in dealings with Wayfarer and Sony." Opp. at. 14. But they ignore their own pleadings, acknowledging that Mr. Reynolds has his own relationship with WME, FAC, ¶ 16, and his own reasons for communicating with it. That he is alleged to have spoken to WME is not sufficient to infer he acted as Ms. Lively's agent in doing so, and the Wayfarer Parties have cited *no authority* to that effect. They also fail to explain how Mr. Reynolds attending a single meeting with Ms. Lively, for support, creates an agency relationship for all other purposes. The law is clear that agency "cannot be implied from the marriage relationship alone." *Valentine v. Plum Healthcare Group, LLC*, 37 Cal. App. 5th 1076, 1089 (2019) (internal citations omitted); *Flores v. Evergreen at San Diego, LLC*, 148 Cal. App. 4th 581, 589 (2007) (accord).

Further, while insisting that Ms. Lively "ratified" and made the Predator Statements "her own," Opp. at 17-19, the Opposition does not allege *how* she did so, that she knew about or approved them in advance, or was otherwise involved in the publication.[10] *See Matson v. Dvorak*, 40 Cal. App. 4th 539, 549 (1995) (no "responsible part" where defendants did not participate in

---

[9] Ms. Lively joins and incorporates the Sloane Parties' and Mr. Reynolds' submissions. ECF Nos. 126, 166. Claims that either spoke to press pre-filing are unactionable and Ms. Lively played no responsible part. *Infra*, at 3-10.

[10] Stretching the FAC to the point of absurdity, the Wayfarer Parties also suggest that Ms. Lively referring to Mr. Reynolds as "one of her dragons" in a single text in April 2023, somehow evidences an agency relationship. *See* Opp. at 37 (quoting FAC, ¶ 42).

preparing the defamatory matter, know its falsity, or know of its contents before); *see also Sanchez v. Am. Media, Inc.*, 2020 WL 8816343, at *5 (C.D. Cal. Dec. 29, 2020) (granting motion to dismiss based on "general allegations" that "exercises managerial control"); *Abir Cohen Treyzon Salo, LLP v. Lahiji*, 40 Cal. App. 5th 882, 892 (2019) (rejecting proposition that awareness of another's tortious conduct makes someone "responsible" it).

> ii.      *Ms. Lively is Not Liable for the Alleged Sloane Statement.*

Because the FAC fails to plausibly allege that the Sloane Statement is actionable, it cannot support derivative defamation liability as to Ms. Lively. *Moore*, LLC, 2020 WL 7053262, at *7. Even if the Sloane Statements were defamatory, the FAC fails to establish that Ms. Lively would be liable for them. The Wayfarer Parties improperly rely on the respondeat superior doctrine, which requires an employee-employer relationship that does not exist here. *D.A.R.E Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1279 (C.D. Cal. 2000). The FAC includes no facts to suggest that Ms. Sloane was Ms. Lively's *employee*; it alleges only that she was Ms. Lively's "publicist" and goes on to acknowledge that Ms. Sloane is affiliated with a separate PR company, Vision PR (which represents Ms. Lively and Mr. Reynolds, among others). FAC, ¶¶ 8, 14, 15, 187, 282. This, alone, undermines the doctrine's application.

The FAC also fails to assert factual allegations that Ms. Lively "played a responsible part" or otherwise ratified the Sloane Statement. The FAC does not even allege that Ms. Lively knew about it—much less that she drafted, approved, or authorized it. *See Matson*, 40 Cal. App. 4th at 549 (1995); *Sanchez*, 2020 WL 8816343, at *5. Instead, the FAC, (wrongly) credits Ms. Sloane as having "devised and executed a smear campaign of her own against Baldoni," FAC, ¶ 187, which (if true) would mean she was not acting under Ms. Lively's direction. This, in turn, dooms any idea of ratification (and conspiracy). Realizing this, the Wayfarer Parties instead argue that Ms. Lively should have terminated Ms. Sloane for making statements that Ms. Lively did not (and still

does not) even know she made. Opp. at 19. That is not enough. *See West v. Solar Mosaic LLC*,

105 Cal. App. 5th 985, 994 (2024) (employer must "be apprised of all the facts" to "have ratified

the unauthorized acts"); *Dufresne v. Elite Ins. Co.*, 26 Cal. App. 3d 916, 926 (1972).[11]

### B.    The Wayfarer Parties Concede That All Causes of Action with their Gravamen in Defamation Fail.

The Opposition does not address, and thus accepts, that all claims sounding in

defamation—whether labeled false light, extortion, breach of covenant or tortious interference—

cannot survive as a matter of law. *See* MTD at 33. These alternative theories of recovery are

irrelevant and cannot subvert First Amendment protections by artful pleading.[12] Citing no

authority, the Wayfarer Parties attempt to distinguish the false light claim, arguing that "[u]nder

California law, the false light claim is not duplicative of the defamation claim." Opp. at 25. That

is fundamentally incorrect. *See* MTD at 33 (collecting cases dismissing false light as duplicative

of defamation). Because the Wayfarer Parties fail to show how their false light claim is distinct

from defamation, and ignore Ms. Lively's authority, it must be dismissed.

### C.    The Wayfarer Parties Still Fail to Plead The Basic Elements of Extortion.

In the Opposition, the Wayfarer Parties identify just two "acts" they claim support civil

extortion. Opp. at 32-33. ***First***, they cite an unknown "executive's" comment that Ms. Lively

allegedly demanded an apology from "Wayfarer, Heath and Baldoni" or the "gloves would come

off." *Id.* at 32 (citing FAC, ¶¶ 16, 250-56). They do not explain how this amounts to a "wrongful

threat." Nor can they since the Wayfarer Parties acknowledge that the alleged requested apology

was prompted by Ms. Lively's belief that "Wayfarer, Baldoni and Heath were waging a shadow

---

[11] The Wayfarer Parties concede that they do not plead special damages and assert only defamation per se. *See* Opp. at 12-13; *Bloom*, 725 F. Supp. 3d at 347; *Romeo & Juliette*, 2014 WL 4723299, at *7.

[12] For example, the Wayfarer Parties cannot get around the Single Publication Act by shoe-horning Ms. Lively's statements about sexual harassment during production into an extortion claim. *See* MTD at 21-33, 33.

campaign against her." FAC, ¶ 251. ***Second***, the Wayfarer Parties' complaint that Ms. Lively allegedly demanded a letter of support for a *p.g.a.* mark, Opp. at 32-33 (citing FAC, ¶¶ 152-58), is undermined by their own admission that "***[they] were [not] literally forced to acquiesce***," which the Opposition completely ignores. These two isolated acts fall woefully short of actions that constitute extortion. *See, e.g., Doe v. Mahboubi-Fardi*, 2024 WL 2206640, at *12-13 (C.D. Cal. Jan. 2, 2024) ("extortion requires an act of 'duress.'").[13] Recognizing this, and that the FAC fails Rule 9(b), they argue that the "exact contours" of civil extortion are ill-defined. Opp. at 35-34. But this ignores the seminal *California* case on point, holding that extortion requires a *wrongful threat*. *See Fuhrman v. Cal. Satellite Sys.*, 179 Cal. App. 3d 408, 426 (1986).

Worse yet, the Wayfarer Parties concede that Ms. Lively did not acquire money or property through her purported wrongful "threats." Opp. at 32-34. To save face, they selectively quote from *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. 2009), and incorrectly claim that acquiring property or money is not required to sustain a claim for civil extortion. *Id.* at 25. But *Monex*'s ruling on this score is flawed (as recognized by a "chorus of authorities" that have flatly declined to follow its reasoning).[14] *See Talkdesk, Inc. v. Pham*, 2024 WL 4866690, at *7 (C.D. Cal. Aug. 9, 2024) (collecting cases); *see also Yang v. Yang*, 2019 WL 8640452, at *3 (Cal. Super. Ct. May 31, 2019) (same).[15] Even still, the Wayfarer Parties do not cite a single case sustaining an extortion claim where a demand for money or property was ***not*** made, much less where no money or property was received. Instead, each of their own cases had a demand for money or property,

---

[13] The Wayfarer Parties do not address cases cited in the Ms. Lively' motion, establishing that extortion requires (i) wrongful acts or threats and (ii) the deprivation and acquisition of property. MTD at 34-37.

[14] The Wayfarer Parties also cite *TaiMed Biologics, Inc. v. Numoda Corp.*, 2011 WL 1630041 (N.D. Cal. Apr. 29, 2011), which "relied upon *Monex* and parroted its reason" and is, therefore, flawed for the same reasons articulated by the "chorus of authorities" that have declined to follow *Monex*. *See Yang v. Yang*, 2019 WL 8640452, at *2 n.2 (Cal. Super. Ct. May 31, 2019) (declining to follow *TaiMed* as "unpersuasive").

[15] The Court may properly consider unpublished California court decisions "as a possible reflection of California law." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011); *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F.Supp.2d 1084, 1103 n.7 (N.D. Cal. 2005) (accord).

*including Monex* (which involved a $20 million demand). ***Third***, the Wayfarer Parties do not even attempt to defend their failure to plead damages in connection with this claim, *see* MTD at 37-38, which should be treated as a concession. It follows, because the Wayfarer Parties do not (and cannot) claim they were deprived of any property, dismissal with prejudice is warranted. *See Scheidler v. Nat'l Org. of Women, Inc.*, 537 U.S. 393, 404 (2003).

### D.    <u>The Wayfarer Parties' Admissions Doom The Breach of Covenant Claim.</u>

Recognizing the fatal defects of their breach of covenant claim, the Wayfarer Parties resort to asking the Court to consider new facts in their Opposition, *i.e.,* that Ms. Lively's contract granted her the "right to consult and approve on certain aspects of the Film's production and marketing" and to terminate her performance under "extremely narrow (and inapplicable) circumstances." Opp. at 41. But a "[c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." *Jordan v. Chase Manhattan Bank*, 91 F.Supp.3d 491, 500 (S.D.N.Y. 2015). Even these new allegations fail to support the claim: (i) Ms. Lively was contractually entitled to participate in the Film's production; (ii) no "specific contractual provision was frustrated," MTD at 38; (iii) no damages are alleged, *id.* at 40, and (iv) no parties to the contract are identified. These defects doom the implied covenant claim, which cannot be cured by amendment.

### E.    <u>Each of the Wayfarer Parties' Interference Claims Fails.</u>

Each tortious interference claim must be dismissed. ***First***, the Wayfarer Parties do not identify a specific contract with WME, speculating instead that Ms. Lively, as a WME client, has knowledge of such a contract. *See* Opp. at 36. That, however, fails to meet the Wayfarer Parties' obligation to plead a specific contract and its terms. *See Wyatt v. Wilson Sporting Goods Co.*, 2016 WL 10749160, at *2 (N.D. Cal. June 29, 2016). The Wayfarer Parties are also silent on their failure to allege if, how, or when Ms. Lively interfered with the phantom contract. MTD at 39-40. Of course, they turn to the conclusion that she is somehow responsible for Mr. Reynolds' comments,

*see* Opp. at 39, and thereby fail the pleading standard, *see* MTD at 39-40. ***Second***, the Wayfarer Parties admit that defamation is disguised beneath their economic relationship claim. *See* Opp. at 39 (arguing "[Ms.] Lively is at least vicariously liable for defamation"). But neither Ms. Lively's, Mr. Reynolds', nor the Sloane Parties' statements are actionable. *Supra*, at 8-11. That aside, the FAC does not allege how these purported statements disrupted the WME relationship, an essential element of the claim. *See* MTD at 40-41. ***Third***, buried in a footnote, the Wayfarer Parties acknowledge that a duty of care is required for negligent interference, which they admit "the FAC does not directly address." Opp. at 40 n.9. The negligent interference claim should therefore be dismissed. ***Finally***, the Wayfarer Parties do not address their repeated failure to plead actual, quantifiable, damages, so dismissal of each interference claims is warranted. MTD at 41-42.

### F.    The FAC Does Not Plead The Existence of a Conspiracy.

A meeting of the minds to commit a wrongful act is essential to pleading the existence of a conspiracy. *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 836 (N.D. Cal. 2014). The Wayfarer Parties fail to do so; instead, citing irrelevant allegations about a meeting that *did not involve any of the alleged co-conspirators*. Opp. at 40-41 (citing FAC, ¶¶ 250-56). But that meeting has no bearing on whether (i) a conspiracy was formed or (ii) that Ms. Lively and the other purported co-conspirators understood there to be a conspiracy to harm the Wayfarer Parties.

## II.    THE WAYFARER PARTIES' ATTACKS ON SECTION 47.1 FAIL.

After years of promoting themselves as supporters of women and victims of abuse, Baldoni, Sarowitz, and Heath attack a California statute that was drafted specifically to protect victims from abusers who weaponize defamation law. Opp. at 42-44. Contrary to their self-serving contention, Section 47.1 is not a procedural statute; it is a substantive privilege against liability, with a fee-shifting and damages provision attached—both textbook examples of substantive California law that applies in federal diversity actions. *Bobulinski v. Tarlov*, 2024 WL 4893277,

at *12 (S.D.N.Y. Nov. 26, 2024) (holding "that provisions for attorney's fees are a substantive, not procedural, right.") (collecting cases); *see Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (finding "unproblematic" Nevada anti-SLAPP's mandatory fee-shifting provision).

The Wayfarer Parties' *Noerr-Pennington* challenge is likewise without merit. A court in this District rejected a similar challenge, noting the Supreme Court's "caution" that "the *PRE* standard is a 'doctrine of antitrust law' and that its holding is firmly grounded in the 'text' of the Sherman Act and the 'context' of antitrust liability." *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 430 (S.D.N.Y. 2019) (internal citations omitted). As in *Adelson*, "[t]his admonition against mission creep applies here in full." *Id.* The Second Circuit has not decided whether *Noerr-Pennington* even "extends to non-commercial litigation," *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997), and even if it did, it would not extend to Section 47.1, which *itself exists to protect First Amendment protected conduct*. Any risk that Section 47.1's treble damages provision would chill petitioning activity in the form of defamation suits is outweighed by the risk—recognized by the California legislature—that meritless defamation suits would chill reports about sexual harassment. Further, even if *Noerr-Pennington* applied to Section 47.1, based on the deficiencies identified above, the Wayfarer Parties' case would fall under the "sham exception." *See, e.g.*, *Primetime 24 Joint Venture v. Nat'l Broad., Co., Inc.*, 219 F.3d 92, 99-101 (2d Cir. 2000).

Finally, if *Noerr-Pennington* bars Section 47.1 treble damages (which it does not), such a bar would not preclude the independent fee-shifting remedy. *Noerr-Pennington* does not apply to fee-shifting provisions. *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 537 (2002). Considering California's presumption of severability and the "history and purposes of the legislation," it is evident that the California legislature would have enacted the fee-shifting provision alone. *People v. Navarro*, 7 Cal. 3d 248, 261 (1972).

- 15 -

## CONCLUSION

All claims against Ms. Lively should be dismissed with prejudice and without leave to amend, and the Court should award Ms. Lively all requested relief.

Respectfully submitted,

Dated: April 10, 2025

/s/ Esra A. Hudson

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com
kbender@wilkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@wilkie.com

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

*Attorneys for Blake Lively*