

Sigrid S. McCawley
Telephone: 954-356-0011
Email: smccawley@bsfllp.com

April 11, 2025

**VIA ECF**
The Honorable Lewis J. Liman
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

Re:    ***Lively et al. v. Wayfarer Studios LLC et al***, No. 24 Civ. 10049 (LJL)
       **[rel. No. 24 Civ. 779]**

Dear Judge Liman:

We represent Leslie Sloane and Vision PR, Inc. (the "Sloane Parties") in the above captioned action. We write in opposition to the Wayfarer Parties' request for an extension of time to respond to interrogatories and move to amend their pleadings. ECF No. 168 ("Letter"). The Wayfarer Parties do not even *attempt* to set forth "good cause" for their requests, as is required by Rules 16(b)(4) and 6(b), and Your Honor's Individual Rule 3.A. *See Arriola v. 658-660 Amsterdam Corp.*, 2025 WL 239110, at *2 (S.D.N.Y. Jan. 16, 2025) ("[B]oth Rules 6(b) and 16(b) require a demonstration of 'good cause.'"). Indeed, no good cause exists.

I.    **The Wayfarer Parties' Request to Extend the Deadline to Respond to Interrogatories Should Be Denied.**

Ms. Sloane and her company, Vision PR Inc., each served eight identical interrogatory requests on the Wayfarer Parties. *See* Exhibits A & B. These requests seek basic information about the Wayfarer Parties' allegations, which would be quite simple to provide if the Wayfarer Parties actually had a Rule 11 basis for their claims. The Wayfarer Parties have repeatedly grandstanded in the press that they have "receipts" to back up their allegations, and that they want to try this case as quickly as possible. But now that they are faced with a rapidly approaching deadline to furnish a good faith basis for their claims, they can't even answer a few basic questions.

For instance, the Wayfarer Parties are purportedly incapable of providing information like (i) the defamatory statements they are suing Ms. Sloane for (ROG 4); (ii) the stories that she allegedly planted (ROG 5); (iii) who they say she spoke to about the Wayfarer Parties (ROG 3); and (iv) any quantification of damages that are attributable to Ms. Sloane by virtue of apparently private conversations she had regarding Baldoni that were never published (ROG 8).

In requesting an extension of their deadline to respond, the Wayfarer Parties argue only that they face an "excessive number of discovery demands" to which they "have been diligently preparing responses." Letter at 1. These bare assertions come nowhere close to the "good cause" standard required by this Court. *Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020) (Liman, J.). The Wayfarer Parties do not—because they cannot— identify "circumstances that were not foreseen" at the time the deadline was set, nor do they specify why they could not have "reasonably [met] the scheduled deadlines," "why the requested time (and not some lesser time) is necessary," how additional time will "contribute to 'the just, speedy, and inexpensive determination' of the matter," or "any prejudice [they] would suffer if a modification is not made." *Id.* As the Wayfarer Parties themselves have argued, if their position is

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

**BSF** BOIES
SCHILLER
FLEXNER

simply (and implausibly) that the Sloane Parties' interrogatories "exceed the scope of discovery permitted by Rule 26(b)(1) . . . then the [Wayfarer] Parties can assert such an objection in formal responses thereto and the parties will meet and confer about the demands in compliance with Your Honor's Individual Practices." ECF 135 at 2; *see also* ECF 156 at 1.[1]

The Wayfarer Parties ignore the *Furry Puppet* standard completely, even though Your Honor's Individual Rule 3.A specifically instructs litigants to "consult" that case for a "description of the 'good cause' standard." In fact, the Wayfarer Parties make a strikingly similar argument to the one that was rejected in *Furry Puppet*, arguing, without more, that they have been working "diligently" to prepare interrogatory responses yet inexplicably need more time. Letter at 1; *see Furry Puppet*, 2020 WL 4978080, at *2 (rejecting "conclusory" argument that the "parties have diligently participated in the discovery process"). The Wayfarer Parties make no effort whatsoever to satisfy the "good cause" standard, and their request should be denied on this basis alone. *Id.*

The Wayfarer Parties' inability to respond to eight simple interrogatories is obvious: they do not have a shred of evidence against the Sloane Parties, and there was never a factual basis for their invented storyline. Indeed, the Sloane Parties had *zero involvement* in the New York Times article that the Wayfarer Parties have called the "the genesis of this entire action." ECF No. 121 at 17. As demonstrated by the Wayfarer Parties' own submissions, all Ms. Sloane did was respond to a press inquiry about a story that *Baldoni's team planted* days (if not weeks) earlier.[2] Ms. Sloane's complete lack of involvement in the press coverage is unsurprising given that she did not even know about Baldoni's harassment of Ms. Lively as it happened. *See* ECF No. 84 ¶ 280.

The Wayfarer Parties have kept the Sloane Parties in this highly publicized, damaging litigation for five months based on nothing more than misinformed conjecture, bluffing and blustering that they have more information about the things the Sloane Parties supposedly did, but never disclosing or describing what evidence they have. The Wayfarer Parties can no longer rely solely on the misrepresentations in their pleadings; it is time they support their claims in discovery.

## II.    The Wayfarer Parties' Request to Extend the Deadline to Amend the Pleadings and Add Parties Should Be Denied.

The Wayfarer Parties' request to extend the deadline to amend the pleadings is likewise unsupported and without merit. Once again, the Wayfarer Parties' request should be denied because they do not even *attempt* to set forth good cause in support of their request. *See, e.g., Garcia v. Lewis Tree Serv., Inc.*, 2022 WL 4363787, at *3 (W.D.N.Y. Sept. 21, 2022) (denying motion to extend deadline to amend for lack of good cause); *Bizouati v. City of New York*, 2008 WL 753886, at *2 (E.D.N.Y. Mar. 19, 2008) (same).[3]

---

[1] Ironically, the Wayfarer Parties opposed the Sloane Parties' request to stay discovery and served over 370 requests for production of documents and 18 interrogatories on the Sloane Parties, *see* ECF Nos. 129, 135, but they are now effectively requesting a stay of discovery as to interrogatory requests.

[2] As the Wayfarer Parties' own submissions reveal, Baldoni's PR team began plotting against Ms. Lively as of at least July 31, 2024, and by August 4 his publicist Jennifer Abel wrote that she wanted to "plant stories this week of how horrible Blake is to work with." Melissa Nathan, who Baldoni hired as a crisis management expert on the promise that she "can bury anyone," responded that she had "already off the record[] Spoke to the editor of the Daily Mail." ECF No. 50-1 at 112. Ms. Sloane, by contrast, is not alleged to have spoken to the press until four days later, on August 8, 2024, when she responded to a Daily Mail reporter's inquiry. *See* AC ¶ 190.

[3] The April 18 deadline is already well beyond the presumptive deadline for motions to amend pleadings, which is "thirty (30) days following the initial pretrial conference" absent "exceptional circumstances." ECF No. 58 ¶ 4.



Instead, the Wayfarer Parties argue only that "it is unlikely that the Court will rule on all four pending motions to dismiss by April 18, 2025," and they would like "guidance from the Court" before deciding whether to move to amend. Letter at 2. But it is well-settled that parties are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007). A party "cannot wait to 'see how he would fare on [a] prior motion to dismiss' before seeking leave to amend based on facts that were available before the motion was decided," which is precisely what the Wayfarer Parties seek to do here. *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607 F. Supp. 2d 600, 603 (S.D.N.Y. 2009).[4]

In any event, the Wayfarer Parties already have "ample notice of defects in their complaint," *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005), since they have the benefit of *four* motions to dismiss that carefully detail the defects in the operative pleading, *see* ECF Nos. 87, 106, 133, 145. The initial and Amended Complaints are facially deficient in ways that should have been obvious to the Wayfarer Parties' counsel since they initiated their lawsuit three months ago.

The Wayfarer Parties have repeatedly represented—both in their filings and in the press— that they have "obtained additional information about the Sloane Parties' activities" that they will add to "their amended pleading." ECF No. 121 at 8.[5] If the Wayfarer Parties truly have additional relevant information, it is entirely unclear why they are unable to amend their pleading by their April 18 deadline. The far more plausible explanation for the Wayfarer Parties' request is that they have no evidence to support their claims against the Sloane Parties, and they are requesting an extension because they hope something useful will turn up during discovery. Unfortunately for the Wayfarer Parties, discovery will only confirm that their claims are meritless.

*     *     *

The Sloane Parties have suffered significant distress and economic loss from being wrongfully dragged into this litigation. For months, they have been attacked online based on lies the Wayfarer Parties have spread about them publicly (and not just in their filings.) The Sloane Parties are entitled to the information that the Wayfarer Parties contend support their claims. If the Wayfarer Parties do not have that information—as the Sloane Parties have suspected all along— they should be forced to make that admission in discovery without delay.

Respectfully Submitted,

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley

---

[4] *See, e.g., Oscar v. BMW of N. Am., LLC*, 2011 WL 6399505, at *3 (S.D.N.Y. Dec. 20, 2011) ("[T]he Rule 16(b) diligence requirement requires a party to do more than 'wait and see' whether a Court will alert to that deficiency."); *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *5 (S.D.N.Y. Dec. 4, 2009) (rejecting argument that plaintiffs "should have yet another bite at the apple after having had the additional benefit of the Court's explication of the shortcomings of the complaint"); *Masters v. Wilhelmina Model Agency, Inc.*, 2003 WL 1990262, at *4 (S.D.N.Y. Apr. 29, 2003) ("[P]leading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges.").

[5] In fact, the Wayfarer Parties' counsel told the New York Times as early as December 21, 2024, that they had supposedly discovered additional information about the Sloane Parties "plant[ing] negatively and completely fabricated and false stories with the media . . ." *See* https://www.nytimes.com/interactive/2024/12/21/us/statement-to-the-new-york-times.html. To date, none of that information has been produced in discovery, or appears anywhere in the original Complaint, the Amended Complaint, or even in the improper Exhibit A attached thereto.