# manatt

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

May 9, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 1620
New York, NY 10007

Re: *Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049-LJL [rel. No. 1:25-cv-00449]

Dear Judge Liman:

On behalf of Blake Lively, we write pursuant to Rules 1.C and 4.C of Your Honor's Individual Practices to respectfully request an order compelling Defendants Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC ("IEWU"), Melissa Nathan, The Agency Group PR LLC ("TAG"), and Jennifer Abel (collectively, the "Wayfarer Parties") to produce documents in response to eight Requests for Production (the "Financial RFPs")[1] seeking materials relevant to their collective and specific demand for **at least $400 million** in damages against Ms. Lively.[2] Prior to filing this motion, counsel for Ms. Lively met and conferred with counsel for the Wayfarer Parties, but the Wayfarer Parties have refused to produce the documents requested in the Financial RFPs, committing only to "produce non-privileged documents concerning their damages," rather than comply with the RFPs actually served. To make matters worse, the Wayfarer Parties refuse to divulge even the most basic information relating to their collection efforts (which apparently are *still* underway) and have left Ms. Lively completely in the dark with respect to what documents and information may be in their possession.

But the Wayfarer Parties are not permitted to hide the ball like this and they do not get to choose what documents are, and are not, relevant to their own $400 million damages claim. The Financial RFPs seek documents that are plainly relevant and within the scope of Rule 26. The Wayfarer Parties must produce those documents, and given their refusals thus far, the Court should compel them to do so.

I.  **Background.**

The Wayfarer Parties have claimed that, by making public allegations of sexual harassment and retaliation, Ms. Lively "destroyed [their] personal and professional reputations and livelihood" – claiming harm to their businesses, to their reputations, and even to the blockbuster film, *It Ends With Us* (the "Film"). The Wayfarer Parties have described their damages in dire and astronomically high terms,

---

[1] Specifically, the Financial RFPs at issue in this motion are RFPs Nos. 46 and 47 as to Abel and Nathan; Nos. 49 and 50 as to TAG; Nos. 58 and 59 as to Baldoni, Heath, and Sarowitz; and Nos. 73 and 74 as to Wayfarer and IEWU. True and correct copies of the Wayfarer Parties' responses and objections are attached hereto as **Exhibits A-H**. Because these responses were designated Confidential, these exhibits will be submitted under seal.

[2] TAG is the only Wayfarer Party not named as a plaintiff in the Wayfarer action; however, given that Nathan claims harm to her business and profession, she therefore implicates TAG (a business that Nathan launched) and necessitates TAG's financial information.

Hon. Lewis J. Liman
May 9, 2025
Page 2

alleging that Ms. Lively's public disclosures have "cost" them "their film, their reputations, their *future prospects*, even their talent agency." FAC. ¶¶ 299, 336 ("Baldoni, Heath, Nathan, Abel, and Sarowitz sustained *harm*, including *to their business and professions*, as well as their reputations.") (emphasis added). These allegations are collective as to all of the Wayfarer Parties, including Jennifer Abel and Melissa Nathan—the PR specialists—even though the Film is not "theirs." All of the Wayfarer Parties claim to have suffered similar financial harm and collectively seek in excess of $400 million.

The Financial RFPs seek standard financial information from the Wayfarer Parties that is commonly exchanged in litigation. For each of the natural parties (Baldoni, Heath, Sarowitz, Nathan, and Abel), Ms. Lively seeks (i) "financial statements, assets, liabilities, and tax returns"; and (ii) documents reflecting any "liquidation of assets" relating to the Film or the pending actions.[3] For the three corporate parties (Wayfarer, IEWU, and TAG),[4] Ms. Lively requests (i) "[t]ax returns, financial statements, and year-end balance statements" and (ii) documents reflecting "gross income, net income, and expenditures." The Financial RFPs are narrowly targeted to seek only such documents as could be relevant to the damages they allege.

## II. The Wayfarer Parties Must Produce Their Financial Information.

The Wayfarer Parties have placed their respective financial conditions squarely at issue. This, of course, necessitates production of documents showing the Wayfarer Parties' financial condition, including the specific documents requested in the Financial RFPs, to demonstrate their alleged harm to the tune of nine-figures. Yet, each of them has so far refused to produce specific financial records that would be relevant to whether that alleged harm actually occurred. But having invoked the jurisdiction of this Court, the Wayfarer Parties must now produce evidence relevant to their claims.

The Financial RFPs are tied directly to the Wayfarer Parties' highly specific demand for $400 million in damages, which they claim is based upon, among other things, lost profits and reputational harm. Much of the Wayfarer Parties' case centers on the notion that (i) Ms. Lively defamed them by alleging that she was sexually harassed and then subjected to a nefarious retaliatory astroturfing campaign designed to "destroy" and "bury" her credibility and reputation, and (ii) they were each harmed when, according to their conflicting theories, Ms. Lively either used the sexual harassment allegations, or used her "power," to take "creative control" of the Film. As such, obtaining the Wayfarer Parties' financial records is critical because, by all accounts, the Film was a box office success—a fact that the Wayfarer Parties cannot dispute. *See* FAC, Ex. A, at 134 (describing the Film as a "box office success"). In fact, recognizing the success of the Film, Mr. Baldoni anticipated that there would be "a lot of buzz [around] how much money the movie made." *Id.* He was right. By the end of August 2024, total gross profits for the Film had already exceeded $350 million and, at present, net profits are projected to eclipse $200 million.[5]

---

[3] These requests are RFP Nos. 46 and 47 (Nathan and Abel) and Nos. 58 and 59 (Baldoni, Heath, and Sarowitz). *See* Exs. A-E.

[4] These requests are RFP Nos. 49 and 50 (TAG), and 73 and 74 (Wayfarer and IEWU). *See* Exs. F-G.

[5] IMBD, *It Ends with Us*, available at https://www.imdb.com/title/tt10655524/; *see also* Anthony D'Allessandro, *'It Ends With Us' Is No. 6 On 2024's Most Valuable Blockbuster List*, Deadline (Apr. 25, 2025) ("The net profit here after $153M in worldwide expenses is a robust $207M"), available at https://deadline.com/2025/04/it-ends-with-us-movie-profit-1236377074/.

Despite this, the Wayfarer Parties have alleged, in contradictory terms, some unclear financial loss, including "lost profits," related to the Film, but refuse to produce the requested documents bearing on that loss. Instead, in response to each Request, the Wayfarer Parties asserted kitchen-sink objections as to burden, attorney-client privilege (but not tax privilege), confidentiality, and even relevance.[6] During the parties' meet and confer, however, the Wayfarer Parties did not articulate any basis for any of those objections, and instead took the vague position that they were withholding documents responsive to these demands solely based on "scope." They could not and did not articulate how these requests were overbroad (because they are not), or offer any method for narrowing the "scope" of the requests that would satisfy them. Instead, the Wayfarer Parties indicated that they would "produce non-privileged documents concerning their damages," which their counsel admittedly could not and did not identify.[7] This is entirely improper. The Wayfarer Parties must produce documents responsive to the Financial RFPs actually served, not their own self-serving conception of what documents they wish to use in support of their damages claim. The Wayfarer Parties—including those with no apparent financial stake whatsoever in the Film (*i.e.*, Abel and Nathan)—cannot claim "lost profits" and unidentified financial loss and then refuse to produce the very documents that would demonstrate or (more likely) disprove such loss.

To the contrary, the Wayfarer Parties have put their respective financial conditions front and center and have made their financial records relevant to this matter, including by claiming (among other things) lost profit damages. *See Linea Pelle, Inc. v. Omega Fashions Ltd.*, 1997 WL 13267, at *1 (S.D.N.Y. Jan. 15, 1997) ("[F]inancial statements are relevant to any claim for lost profits."); *Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*, 2002 WL 1808419, at *7 (S.D.N.Y. Aug. 7, 2002) (document request seeking "financial statements . . . is clearly relevant to a determination of damages"). Where, as here, the Wayfarer Parties are asserting damages based on a purported diminution in business value and profits, a party's "complete financial information is therefore relevant," which, naturally, includes the production of tax records. *One Source Env't, LLC v. M+W Zander, Inc.*, 2014 WL 5090855, at *6 (D. Vt. Oct. 9, 2014). Cases from this Circuit are legion on this score. *See id.*; *see also Sullivan v. Aircraft Servs. Grp., Inc.*, 2021 WL 11703007, at *3 (E.D.N.Y. Nov. 29, 2021) (compelling the production of "relevant financial information" and tax returns); *Libaire v. Kaplan,* 760 F. Supp. 2d 288, 294 (E.D.N.Y. 2011) ("[t]ax returns are considered relevant to the subject matter of an action when a party's income may be used to calculate damages").

Simply put, the law does not permit what the Wayfarer Parties seek to do here: claim financial harm but then refuse to turn over specifically requested financial records in favor of some unstated alternative set of documents they subjectively deem sufficient to demonstrate "damages." *See M.E. Fields v. General Motors Corp.*, 1996 WL 14040, at *4 (N.D. Ill. Jan. 14, 1996) ("It would be somewhat inequitable for plaintiffs, who filed this action claiming financial damages, to later fail to provide the very financial information necessary to suitably demonstrate either the extent of their financial injury or mitigation of that injury"). On the contrary, Ms. Lively is entitled to receive all relevant financial information to disprove the Wayfarer Parties' damages and expose their lawsuit and its frivolity.

---

[6] In light of the protective order, the Wayfarer Parties cannot reasonably withhold documents based on confidentiality.

[7] A true and correct copy of the parties' subsequent conferral discussions is attached hereto as **Exhibit I**.

Hon. Lewis J. Liman
May 9, 2025
Page 4

                          Respectfully submitted,

                          /s/ Esra A. Hudson

| WILLKIE FARR & GALLAGHER LLP | MANATT, PHELPS & PHILLIPS, LLP |
|---|---|
| Michael J. Gottlieb | Esra A. Hudson (admitted *pro hac* vice) |
| Kristin E. Bender | Stephanie A. Roeser (admitted *pro hac* vice) |
| Meryl Governski (admitted *pro hac vice*) | 2049 Century Park East, Suite 1700 |
| 1875 K Street NW | Los Angeles, CA 90067 |
| Washington, DC 20006 | (310) 312-4000 |
| (202) 303-1000 | ehudson@manatt.com |
| mgottlieb@willkie.com | sroeser@manatt.com |
| kbender@willkie.com | |
| mgovernski@willkie.com | Matthew F. Bruno |
| | 7 Times Sq. |
| Aaron E. Nathan | New York, NY 10036 |
| 787 7th Avenue | (212) 790-4500 |
| New York, NY 10019 | mbruno@manatt.com |
| (212) 728-8000 | |
| anathan@willkie.com | |

                          *Attorneys for Blake Lively*