# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACK LIVELY, | |
| Plaintiff, | |
| v. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al., | |
| Defendants. | |
| WAYFARER STUDIOS LLC, et al., | |
| Plaintiffs, | |
| v. | No. 25-cv-449 (LJL) (member case) |
| BLAKE LIVELY, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF BLAKE LIVELY'S MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS STEVE SAROWITZ, JAMEY HEATH, MELISSA NATHAN, JENNIFER ABEL, IT ENDS WITH US MOVIE LLC, AND THEIR COUNSEL

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC  20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Blake Lively*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD............................................................................................................ 5

ARGUMENT ........................................................................................................................ 6

I.      THE CIVIL EXTORTION CLAIMS BROUGHT BY MR. SAROWITZ, MS.
        NATHAN, MS. ABEL AND IEWU LLC AGAINST MS. LIVELY ARE
        LEGALLY UNREASONABLE AND FACTUALLY BASELESS. ................................ 6

II.     THE INTERFERENCE CLAIMS BROUGHT BY MR. SAROWITZ, MS.
        NATHAN, MS. ABEL, MR. HEATH, AND IEWU LLC AGAINST MS.
        LIVELY ARE LEGALLY UNREASONABLE AND FACTUALLY
        BASELESS. ......................................................................................................... 11

III.    THE IMPLIED COVENANT CLAIMS BROUGHT BY MR. SAROWITZ, MS.
        NATHAN, MS. ABEL, AND MR. HEATH AGAINST MS. LIVELY ARE
        LEGALLY UNREASONABLE AND FACTUALLY BASELESS. ............................. 13

IV.     THE RULE 11 PLAINTIFFS' BASELESS CLAIMS WERE BROUGHT FOR
        THE IMPROPER PURPOSE OF HARASSING MS. LIVELY, CAUSING
        DELAY AND INCREASING THE COST OF LITIGATION ..................................... 14

V.      THE COURT SHOULD IMPOSE SANCTIONS ON PLAINTIFFS' COUNSEL,
        MR. SAROWITZ, MS. NATHAN, MS. ABEL, MR. HEATH, AND IEWU LLC. ...... 17

        A.      The Court Should Order Plaintiffs' Counsel and the Rule 11 Plaintiffs
                Jointly and Severally Liable for Reasonable Attorneys' Fees and Costs to
                Ms. Lively. ...................................................................................................... 17

                1.      The Court should order Mr. Freedman, Mr. Schuster, Liner
                        Freedman, and Meister Seelig jointly and severally liable to pay
                        Ms. Lively for all imposed sanctions. ....................................................... 18

                2.      The Rule 11 Plaintiffs should be held jointly and severally liable
                        with Plaintiffs' Counsel for all imposed sanctions. ................................... 19

                3.      Sanctions imposed upon Plaintiffs' Counsel and the Rule 11
                        Plaintiffs should be substantial to sufficiently deter similar
                        abhorrent conduct in the future. ............................................................. 20

        B.      The Court Should Impose Additional Sanctions, Including a Penalty or
                Reprimand on Plaintiffs' Counsel. ...................................................................... 22

CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
  2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022)....................................................................5, 6

*Ammann v. Sharestates, Inc.*,
  2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024) .........................................................................18

*An v. Despins*,
  2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023)......................................................................18, 19

*Azuike v. BNY Mellon*,
  962 F. Supp. 2d 591 (S.D.N.Y. 2013)......................................................................................6

*Cameau v. Nat'l Recovery Agency, Inc.*,
  2018 WL 4522104 (E.D.N.Y. Aug. 6, 2018).............................................................17, 18, 19

*Camp Summit of Summitville, Inc. v. Visinski*,
  2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)..........................................................................12

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
  2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) ........................................................................9, 13

*Citicorp Int'l Trading Co. v. W. Oil & Ref. Co.*,
  1991 WL 4502 (S.D.N.Y. Jan. 16, 1991) ................................................................................12

*Coeur, Inc. v. Wygal*,
  2021 WL 4225657 (W.D.N.Y. Sept. 16, 2021) ......................................................................10

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)..................................................................................................................5

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith*,
  2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003)......................................................................23

*EMI Ltd. v. Bennett*,
  738 F.2d 994 (9th Cir. 1984) ..................................................................................................10

*EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*,
  2021 WL 964943 (S.D.N.Y. Mar. 15, 2021) .......................................................................9, 10

*Feinberg v. Katz*,
  2002 WL 1751135 (S.D.N.Y. July 26, 2002) .........................................................................10

*Galonsky v. Williams*,
  1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ..........................................................................16

*Glob. Med. Sols., Ltd v. Simon*,
  2013 WL 12065418 (C.D. Cal. Sept. 24, 2013) .....................................................................10

*Goel v. Coal. Am. Holding Co.*,
  2013 WL 12122302 (C.D. Cal. Feb. 26, 2013)........................................................................13

*Goldman v. Barrett*,
  2019 WL 4572725 (S.D.N.Y. Sept. 20, 2019).........................................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Goldman v. Barrett*,
　825 Fed. App'x. 35 (2d Cir. 2020)...................................................................6, 9

*Gong v. Sarnoff*,
　2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023)...............................5, 6, 16, 19, 21, 23

*Int'l Techs. Mktg., Inc. v. Cognyte Techs. Israel Ltd.*,
　2022 WL 11280876 (S.D.N.Y Oct. 19, 2022).........................................................19

*Katzman v. Victoria's Secret Catalogue*,
　167 F.R.D. 649 (S.D.N.Y. 1996).....................................................................9, 13

*Kensington Intern. Ltd. v. Republic of Congo*,
　2007 WL 2456993 (S.D.N.Y. Aug. 24, 2007)........................................................23

*Khadavi v. Stalgi, Inc.*,
　2012 WL 929099 (C.D. Cal. 2021)........................................................................7

*Kropelnicki v. Siegel*,
　290 F.3d 118 (2d Cir. 2002)..................................................................................6

*Kyros L. P.C. v. World Wrestling Ent., Inc.*,
　78 F.4th 532 (2d Cir. 2023) ..................................................................................21

*Levine v. F.D.IC*
　2 F.3d 476 (2d Cir. 1993)......................................................................................6

*Link Motion Inc. v. DLA Piper LLP (US)*,
　2024 WL 964596 (S.D.N.Y. Mar. 6, 2024) ...........................................................21

*Mata v. Avianca, Inc.*,
　678 F. Supp. 3d 443 (S.D.N.Y. 2023)..............................................................18, 23

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*,
　638 F. Supp. 3d 333 (S.D.N.Y. 2022)....................................................................22

*Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*,
　114 F.R.D. 684 (S.D.N.Y. 1987) ..........................................................................13

*O'Malley v. New York City Transit Authority*,
　896 F.2d 704 (2d Cir. 1990)..................................................................................17

*Pineda v. Howard*,
　2010 WL 11595769 (C.D. Cal. Aug. 26, 2010).......................................................12

*Polo Fashions, Inc. v. Fashion Assoc., Inc.*,
　1986 WL 1176 (S.D.N.Y. Jan 22, 1986) ................................................................13

*Proskauer Rose, LLP v. Blix Street Records, Inc.*,
　384 F. App'x 622 (9th Cir. 2010) ........................................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Refac Int'l, Ltd. v. Hitachi Ltd.*,
    141 F.R.D. 281 (C.D. Cal. 1991) ........................................................................................22

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014) ............................................................................11, 12

*S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*,
    2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) .....................................................................16

*Semi-Materials Co. v. SunPods, Inc.*,
    2012 WL 3962487 (N.D. Cal. Sept. 10, 2012) .................................................................12

*Shell Petroleum, N.V. v. Graves*,
    709 F.2d 593 (9th Cir. 1983) ..............................................................................................9

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979) ..............................................................................................9

*Sovereign Asset Mgmt., Inc. v. Health Net Life Ins. Co.*,
    2019 WL 4640397 (C.D. Cal. Sept. 10, 2019) ................................................................12

*Stargaze Mgmt., LLC v. George Smith Partners, Inc.*,
    2015 WL 12656918 (C.D. Cal. Oct. 9, 2015) ....................................................................6

*Trump v. Clinton*,
    653 F. Supp. 3d 1198 (S.D. Fla. 2023) .............................................................................22

*Trustees of Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds v. Elite*
    *Terrazzo Flooring, Inc.*,
    2022 WL 2466847 (E.D.N.Y. Apr. 14, 2022) ..................................................................19

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2016 WL 2944646 (S.D.N.Y. Mar. 31, 2016) ..................................................................19

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    784 F.3d 99 (2d Cir. 2015)................................................................................................23

*Watkins v. Smith*,
    2013 WL 655085 (S.D.N.Y. Feb. 22, 2013)......................................................................8

*Wechsler v. Hunt Health Sys., Ltd.*,
    216 F. Supp. 2d 347 (S.D.N.Y. 2002)................................................................................6

*Weddington v. Sentry Indus., Inc.*,
    2020 WL 264431 (S.D.N.Y. Jan. 17, 2020) ...............................................................22, 23

*Wyatt v. Wilson Sporting Goods Co.*,
    2016 WL 10749160 (N.D. Cal. June 29, 2016) ...............................................................12

## TABLE OF AUTHORITIES
(continued)

Page(s)

### RULES

Fed. R. Civ. P. 11 ................................................................................................................ *passim*

N.Y. R. Prof. Cond. 3.6.................................................................................................... 16

Defendant Blake Lively brings this Motion for Sanctions ("Motion"), pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), requesting the Court to impose monetary sanctions against Plaintiffs Steve Sarowitz, Jamey Heath, Melissa Nathan, Jennifer Abel, and It Ends With Us Movie LLC ("IEWU LLC," together with Sarowitz, Heath, Nathan, and Abel, the "Rule 11 Plaintiffs"), their attorneys Bryan Freedman and Mitchell Schuster, and their attorneys' respective law firms, Liner Freedman Taitelman + Cooley LLP ("Liner Freedman") and Meister Seelig & Fein PLLC ("Meister Seelig," together with Mr. Freedman, Mr. Schuster, and Liner Freedman, "Counsel" or "Plaintiffs' Counsel").

## INTRODUCTION

The Rule 11 Plaintiffs and Counsel have asserted in the Amended Complaint (ECF No. 50, "FAC") claims against Ms. Lively that have no reasonable basis in law or fact and clearly were brought for an improper purpose. Rule 11 exists to discourage precisely these types of claims because federal courts are venues for the adjudication of justice, not playgrounds for retribution or public relations. Every lawyer certifies under Rule 11 that the pleadings they file with the court are not "frivolous, legally unreasonable, or factually without foundation," and are "not being presented for any improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Failing to meet these standards subjects both lawyers *and their clients* to sanctions. The Rule 11 Plaintiffs and their Counsel have violated Rule 11 in every respect.

As to an **improper purpose**, that the FAC was filed principally as a vehicle to seed harassing media narratives against Ms. Lively is obvious. The examples are legion – from its legally meaningless 178-page "Exhibit A," to Counsel's ghoulish taunt that Ms. Lively should testify *about her degrading experience of sexual harassment* at Madison Square Garden before

20,000 spectators and streamed for the world[1], to using the Court's docket to level baseless allegations of extortion and spoliation of evidence against Ms. Lively and her counsel. ECF No. 218.

As to the FAC's ***legal and factual basis, there is none***. The Rule 11 Plaintiffs assert claims for breach and interference with contracts to which they are not a party and for extortion related to a Film in which they have no contractual or other right. In its whopping 224 pages, the FAC contains ***nothing*** connecting any of the Rule 11 Plaintiffs to these claims against Ms. Lively. Specifically: (1) Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC each sued Ms. Lively for extortion, but the FAC contains ***no facts*** that Ms. Lively made ***any*** extortionate threats against ***any*** of them, ***or deprived them of anything*** at all as a result; (2) Mr. Heath, Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC each sued Ms. Lively for interference with a contract and prospective economic advantage related to talent agency William Morris Endeavor ("WME"), with which they had ***no contractual or economic relationship*** at all, much less one that Ms. Lively unlawfully interfered with; and (3) Mr. Heath, Mr. Sarowitz, Ms. Nathan, and Ms. Abel each sued Ms. Lively for breach of the covenant of good faith and fair dealing, but the FAC contains ***no facts*** that any of them were parties to the actor agreement that claim is based on.

The Rule 11 Plaintiffs and Counsel have ***had ample notice*** that their conduct was sanctionable. Ms. Lively has repeatedly explained the glaring and fundamental defects in these claims both in her Motion to Dismiss and, twenty-one days ago, in safe harbor letters addressed individually to each of the Rule 11 Plaintiffs and Counsel. *See* Exs. A-E. The Rule 11 Plaintiffs could have sought leave to amend their claims after receiving multiple motions to dismiss and the

---

[1] *Baldoni Lawyer to Blake Lively: Let's Live-Stream Your Testimony At MSG!* TMZ (May 8, 2025), available at https://www.tmz.com/2025/05/08/justin-baldoni-lawyer-challenges-blake-lively-live-stream-msg/

safe harbor letters, but expressly declined to do so—even though the Court reminded them on April 11 that they were on notice of the asserted flaws in the FAC, and invited them to seek leave to amend.[2] ECF No. 175. Instead, the Rule 11 Plaintiffs expressly declined the Court's invitation and have opted to wait to see how the Court rules and *then* try to amend their pleadings for "good cause," a tactic that courts in this Circuit heavily disfavor.[3] ECF No. 178. The Federal Rules do not afford the Rule 11 Plaintiffs and Counsel the luxury of "waiting and seeing" what happens with *patently baseless claims*. It is their responsibility in the first instance *not to file them,* or, when they are shown in clear terms why their claims are fatally flawed, to dismiss them, or move to amend, not shift the burden to the Court to sort it out for them.

Given the foregoing, Rule 11 sanctions are more than warranted here. The first and most appropriate sanction is an award of attorneys' fees incurred by Ms. Lively in connection with her defense of the frivolous claims, as well as in the preparation of the instant Motion. Pursuant to Rule 11(c)(1), this sanction is appropriately imposed against Mr. Freedman, Mr. Schuster, their respective firms, and the Rule 11 Plaintiffs. In light of the egregious circumstances presented here—and the Court's recent admonishment to Plaintiffs' Counsel that their conduct in this forum may be sanctionable, ECF No. 220, the Court may also wish to consider whether additional sanctions are appropriate as to Plaintiffs' Counsel.

## BACKGROUND

On January 31, 2025, barely two weeks after filing an initial Complaint and eleven weeks before the deadline to file a motion to amend, (ECF No. 58), Plaintiffs Justin Baldoni, Wayfarer

---

[2] This was actually the second time the Court addressed the pleadings, noting at the February 3 Trial Setting Conference that Exhibit A did not appear to be proper and was likely subject to being stricken. ECF No. 63 at 35:3-36:9.

[3] *See, e.g.*, *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("[w]hen the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion [to deny leave to amend] more exactingly.").

Studios, LLC, and the Rule 11 Plaintiffs (together, the "Wayfarer Parties") filed a First Amended Complaint asserting nine causes of action against Blake Lively, Ryan Reynolds, Leslie Sloane, Vision PR, Inc., and The New York Times Company. FAC at 211–22. The FAC also attached a 168-page "timeline" telling the Wayfarer Parties' version of events through a lengthy narrative— a document that this Court expressed doubts as being an appropriate pleading. ECF No. 50-1; 63 at 35:3-36:9. Bryan Freedman and Mitchell Schuster both signed the FAC on behalf of their respective firms, Liner Freedman and Meister Seelig. FAC at 224.

The FAC asserted seven causes of action against Ms. Lively. Every Wayfarer Party asserted a claim for (1) Civil Extortion (FAC ¶¶ 316-23 ("Extortion Claim")); (2) Intentional Interference with Contractual Relations (*id.* ¶¶ 347-55); (3) Intentional Interference with Prospective Economic Advantage (*id.* ¶¶ 356-65); (4) Negligent Interference with Prospective Economic Advantage (*id.* ¶¶ 366-74) (together with (2) and (3), the "Interference Claims")); (5) Breach of the Implied Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 340-46 ("Implied Covenant Claim")); and (6) Defamation (*id.* ¶¶ 324-31 ("Defamation Claim")).  Mr. Baldoni, Mr. Heath, Ms. Nathan, Ms. Abel, and Mr. Sarowitz also brought a claim for False Light Invasion of Privacy (*id.* ¶¶ 332–39). With one exception—the False Light claim—each cause of action was asserted by *all* of the Wayfarer Parties against Ms. Lively, including the Rule 11 Plaintiffs.

On March 20, 2025, Ms. Lively filed a motion to dismiss the FAC as to the seven claims brought against her.  ECF No. 145 ("Lively MTD"). On April 3, 2025, the Wayfarer Parties jointly filed their Opposition to the Lively MTD. ECF No. 162 ("Opposition" or "Opp.").

On April 23, 2025, pursuant to Rule 11(c), Ms. Lively served each of the Rule 11 Plaintiffs and Plaintiff's Counsel, with letters ("Safe Harbor Letters") demanding that, among other things: (i) Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC withdraw their Civil Extortion Claims;

(ii) all Rule 11 Plaintiffs withdraw their Interference Claims; and (iii) Mr. Sarowitz, Ms. Nathan, Ms. Abel, and Mr. Heath withdraw their Implied Covenant Claim.[4] The Safe Harbor Letters indicated that if the Rule 11 Plaintiffs, through their Counsel, failed to withdraw these claims within the 21-day safe-harbor period prescribed by Rule 11, Ms. Lively would seek sanctions from the Court. *See* Exs. A-E; Fed. R. Civ. P. 11(c)(2). The Rule 11 Parties have refused to take any action to address the many flaws and deficiencies identified in the Safe Harbor Letters. Instead, in a May 13, 2025 response, they advised that they were standing by every word of their faulty and frivolous pleadings.

## LEGAL STANDARD

"Rule 11 requires an attorney to certify that (1) a pleading or motion 'is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;' (2) 'the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;' and (3) 'the factual contentions have evidentiary support or, if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Gong v. Sarnoff*, 2023 WL 5372473, at *7 (S.D.N.Y. Aug. 22, 2023) (quoting Fed. R. Civ. P. 11(b)). "The Supreme Court has stated that 'the central purpose of Rule 11 is to deter baseless filings in district court' and thus 'streamline the administration and procedure of the federal courts.'" *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *3 (S.D.N.Y. Sept. 14, 2022) (Liman, J.) (quoting *Cooter & Gell v. Hartmarx*

---

[4] The Safe Harbor Letters are attached hereto as Exhibits A-E to the declaration of Esra A. Hudson, dated May 19, 2025. The Safe Harbor Letters, which were served on the Rule 11 Plaintiffs and their Counsel via email as well as certified mail, included demands that additional baseless claims also be withdrawn. *See* Exs. A-E. For the purpose of this Motion, Ms. Lively limits her request for sanctions to only the most striking examples of frivolity—the Extortion, Inference, and Implied Covenant Claims.

*Corp.*, 496 U.S. 384, 393 (1990)); *see also Stargaze Mgmt., LLC v. George Smith Partners, Inc.*, 2015 WL 12656918, at *1 (C.D. Cal. Oct. 9, 2015) (citation omitted).

"[A]n attorney may not transcend the facts of a given case," and counsel may not "concoct[] facts that [are] not well grounded." *Levine v. F.D.IC.*, 2 F.3d 476, 479 (2d Cir. 1993). "An attorney who files a paper that no competent attorney could believe, after reasonable inquiry, is well-grounded in fact violates Rule 11." *Goldman v. Barrett*, 825 Fed. App'x. 35, 37 (2d Cir. 2020) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)). "[T]he standard for triggering [sanctions] under Rule 11 is objective reasonableness," and is "not based on the subjective beliefs of the person making the statement." *Gong*, 2023 WL 5372473 at *8 (cleaned up). "Thus, an attorney files a pleading or motion in violation of Rule 11 if it is 'frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith.'" *Id.* (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002)). The Rule is "implicated where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless." *(RC) 2 Pharma Connect*, 2022 WL 4234552, at *3 (quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013) (cleaned up)).

## ARGUMENT

**I.    The Civil Extortion Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel and IEWU LLC against Ms. Lively are Legally Unreasonable and Factually Baseless.**

The Extortion Claims brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC against Ms. Lively have no factual or legal basis, and the Wayfarer Parties have not even attempted to assert one. The Extortion Claims are not supported by a single allegation that Ms. Lively took *any* action with respect to Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC, much less that she threatened or demanded anything from them. When these defects were raised in the Lively MTD,

the Rule 11 Plaintiffs had no response and, incredibly, have since suggested that they would uncover facts regarding the fictional extortion against these parties in discovery. *See* Ex. F.  It is difficult to conceive of a more blatant example of utter frivolity than the notion that one would have to conduct discovery to even articulate how one was extorted by the person one is suing. That should have been the first clue that asserting the claim was sanctionable. If the threat cannot be stated, it did not happen.

The Extortion Claims and the related requests for punitive and exemplary damages assert that Ms. Lively "made threats to the Wayfarer Parties" that "included demands that money, property, services, or other sources of value be conferred upon [Ms. Lively] without consideration or contractual entitlement thereto." FAC ¶¶ 317-18; Opp. at 33 (quoting *Khadavi v. Stalgi, Inc.*, 2012 WL 929099, at *6 (C.D. Cal. 2021) (recognizing that claim for extortion requires establishing "the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear[.]")). In support of these claims, the FAC identifies just two incidents, neither of which involve any threats or demands directed toward Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC at all.

For example, in their Opposition, the Wayfarer Parties claim that Ms. Lively supposedly "demanded that the Wayfarer Parties issue a humiliating and false statement taking blame for Ms. Lively's press woes," Opp. at 32 (citing FAC ¶¶ 16, 250-56), but as their own complaint demonstrates, this purported demand has ***nothing*** to do with any of Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC:

> On August 12, 2024, . . . [t]he [talent agency] executive communicated the demand from Lively and Reynolds that ***Wayfarer, Heath, and Baldoni*** make a public apology ***that day*** and that, if they failed to do so, the "gloves would come off."
>
> [. . .]

The next day, on August 13, 2024, Abel and Heath had another call with talent agency executives. During this call, one executive told Heath that the agency had spoken to Lively and Reynolds by phone . . . [and] they told Heath that Lively and Reynolds had demanded that ***Wayfarer*** put out a statement "accepting blame" for the problems during filming, with an express threat that they themselves would attack ***Wayfarer*** in the press if ***Wayfarer*** refused.

The executives told Heath and Abel that Reynolds and Lively dictated a statement that they required ***Wayfarer*** to put out, calling *It Ends With Us* a "troubled" production and forcing ***Wayfarer*** to take "accountability" for the problems in the production. ***Wayfarer, Baldoni, and Heath*** would have to acknowledge and own their "mistakes" and "own" all negativity aimed at Reynolds and Lively.

FAC ¶¶ 250-54 (emphasis added).

The same is true with respect to the second purported extortionate act identified by the Wayfarer Parties: that Ms. Lively purportedly demanded that Mr. Baldoni, Mr. Heath, and Wayfarer submit letters to the PGA in support of her certification for the p.g.a. mark, which Mr. Baldoni and Mr. Heath ultimately did. Opp. at 32-33 (citing FAC ¶¶ 152-58; *see also* FAC Ex. A at 92). Simply put, the only threats or demands the FAC (wrongly) alleges that Ms. Lively made were to Mr. Baldoni, Mr. Heath and Wayfarer—*and none of the others*. FAC ¶¶ 16, 250–256.

To be clear, Ms. Lively's purported demands that Mr. Baldoni, Mr. Heath and Wayfarer issue an apology or submit letters in support of her p.g.a. mark are themselves *not extortion*, and would still subject the claim to dismissal pursuant to the Lively MTD no matter who brought them. But these allegations have ***nothing to do with*** Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC, who sued her for extortion anyway. Confirming this, neither the Wayfarer Parties' exhaustive 168-page Exhibit A "timeline" nor their opposition to the Lively MTD assert *any* factual basis that any of them reasonably possess, *nor could ever reasonably possess*, a civil-extortion claim against Ms. Lively. *See Watkins v. Smith*, 2013 WL 655085, at *3-4, 11 (S.D.N.Y. Feb. 22, 2013), *aff'd*, 561 F. App'x 46 (2d Cir. 2014) (granting sanctions against plaintiff's counsel for decision to sue defendants "who had no involvement in the underlying events that gave rise to the plaintiff's suit");

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660-61 (S.D.N.Y. 1996), *aff'd sub nom.* 13 F.3d 1229 (2d Cir. 1997) ("As even a cursory examination of the requirements for bringing suit . . . would have revealed the impossibility of the claim's success, Plaintiff's filing . . . constitutes a Rule 11 violation."); *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, 2023 WL 2346337, at \*5–8 (S.D.N.Y. Mar. 3, 2023) (sanctions appropriate where plaintiff "failed to identify a single statement or action by the Defendants on which Plaintiff could have reasonably relied" for claim).

"[N]o competent attorney could believe, after reasonable inquiry," that these allegations support the Extortion Claims brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC. *See Goldman*, 825 Fed. App'x. at 37. Ms. Abel and Ms. Nathan are public relations professionals who are not alleged to be (and are simply not) the owners, executives, or employees of Wayfarer and had no role in connection with the production of *It Ends With Us* (the "Film"). As to Mr. Sarowitz, the FAC includes no allegations regarding his relationship to Mr. Baldoni, Mr. Heath, or Wayfarer,[5] but even if it did, no such relationship alone could provide a basis for the Extortion Claim. *See EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*, 2021 WL 964943, at \*19 (S.D.N.Y. Mar. 15, 2021) (Liman, J.), *aff'd*, 2022 WL 3904541 (2d Cir. Aug. 31, 2022) ("Plaintiffs cannot seek damages on behalf of related [] entities. A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined."); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir. 1979) (president and sole shareholder of California corporation lacked standing to pursue claims for injuries to corporation); *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must . . . be injured directly and independently

---

[5] The only allegation regarding Mr. Sarowitz included in the FAC referenced in his Extortion Claim is that Mr. Sarowitz is "an individual residing in the County of Lake, Illinois." FAC ¶ 306.

of the corporation."); *EMI Ltd. v. Bennett*, 738 F.2d 994, 997 (9th Cir. 1984) ("[A] shareholder does not have standing to redress an injury to the corporation in which it holds stock."); *see also Proskauer Rose, LLP v. Blix Street Records, Inc.*, 384 F. App'x 622, 624 (9th Cir. 2010) (affirming dismissal of sole shareholder for lack of standing "to complain of injury to the corporation").

The same is true for IEWU LLC. The FAC includes no allegations suggesting a relationship between IEWU LLC and Mr. Baldoni, Mr. Heath or Wayfarer, and even if the FAC did so (it doesn't) that would not justify a civil extortion claim brought by IEWU LLC itself against Ms. Lively. *See EVIP Canada, Inc.,* 2021 WL 964943, at *19; *EMI Ltd.*, 738 F.2d at 998-99 (dismissing a parent's corporation's claim because the parent's alleged injury was a violation of its subsidiary rights, not its own); *Glob. Med. Sols., Ltd v. Simon*, 2013 WL 12065418, at *13 (C.D. Cal. Sept. 24, 2013) ("[P]arent corporation does not have standing to assert legal rights that belong to its subsidiaries."); *see also Feinberg v. Katz*, 2002 WL 1751135, at *6 (S.D.N.Y. July 26, 2002) (parent company cannot bring claims to recover for damages incurred by its subsidiary, noting that "[n]umerous courts have dismissed claims brought by corporations when the claims actually belong to a subsidiary or an affiliated corporation."); *Coeur, Inc. v. Wygal*, 2021 WL 4225657, at *4 (W.D.N.Y. Sept. 16, 2021) ("[A] subsidiary generally lacks standing to sue on behalf of its parent corporation.").

By collectively suing Ms. Lively for civil extortion without alleging facts supporting extortion as to *each* of them, Mr. Sarowitz, Ms. Nathan, Ms. Abel and IEWU LLC have brought frivolous, baseless claims against her. Because Plaintiffs' Counsel also refused to move to amend or otherwise dismiss those claims when the defects were brought to their attention, they violated Rule 11 and sanctions should be imposed on them and the Rule 11 Plaintiffs.

## II.    The Interference Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr. Heath, and IEWU LLC against Ms. Lively are Legally Unreasonable and Factually Baseless.

None of the Rule 11 Plaintiffs can reasonably assert a claim for interference with a contract or relationship that they never even had. This is precisely what they have attempted to do. Indeed, the FAC pleads no facts and lacks any legal ground to suggest Ms. Lively interfered with any of the Rule 11 Plaintiffs' contracts or business relationships. Instead, the Rule 11 Plaintiffs bring three Interference Claims against Ms. Lively, based exclusively on purported relationships *between other parties—Wayfarer and WME* and *between Mr. Baldoni and WME*. *See* FAC ¶¶ 348, 357, 367; Opp. at 36 ("The FAC pleads a claim against Lively for tortious interference with *Wayfarer's and Baldoni's* relationships with WME[.]") (emphasis added). This was made abundantly clear in the Wayfarer Parties' Opposition to the Livley MTD, which clarifies that while the FAC imprecisely pleads that the "Wayfarer Parties" had a contract and business relationship with WME, (*see* FAC ¶¶ 348, 357), the purported interfering acts were intended to "induce[] WME to cease working with *Wayfarer or Baldoni*." Opp. at 39 (emphasis added); *see also* FAC ¶¶ 16, 162, 349-50, 357.

The FAC's allegations that Ms. Lively interfered with Wayfarer's and Mr. Baldoni's WME relationship does not provide a reasonable basis for the Rule 11 Plaintiffs to assert tortious interference claims of their own. *See* Opp. at 37-38 (acknowledging interference claims require establishing the "existence of a valid contract between the plaintiff and a third party"). Of course, the existence of a relationship is a core element of a claim that such relationship has been unlawfully interfered with. *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726–28 (S.D.N.Y. 2014) (dismissing tortious interference with contract and prospective economic advantage claims because "[c]ourts in this Circuit have consistently denied tortious interference with contract claims where the plaintiff was neither a party to, nor an

intended third-party beneficiary of, the contract in question."); *see also Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at \*13–14 (S.D.N.Y. Apr. 16, 2007). But there are no facts to support any contention that any of the Rule 11 Plaintiffs were parties to a contractual or economic relationship with WME, nor any facts to suggest Ms. Lively interfered with any such relationships between the Rule 11 Plaintiffs and any other third parties.

As for Mr. Sarowitz, Mr. Heath, and IEWU LLC specifically, even if they added facts to plead more specific roles that more clearly connected them to *Wayfarer's relationship as an alleged client of WME* (such as executives, financiers or affiliates of Wayfarer), which they did not do, that *still* would not give them any legal or factual basis to sue Ms. Lively in the Interference Claims. *See Citicorp Int'l Trading Co. v. W. Oil & Ref. Co.*, 1991 WL 4502, at \*5 (S.D.N.Y. Jan. 16, 1991) ("[B]oth the law of this Circuit and that of California is that a shareholder lacks standing to sue on the basis of an injury to his corporation."); *see also Sovereign Asset Mgmt., Inc. v. Health Net Life Ins. Co.*, 2019 WL 4640397, at \*4 (C.D. Cal. Sept. 10, 2019) (dismissing interference claim when party "[wa]s a legal stranger to the contract and business relations that were allegedly interfered with"); *Wyatt v. Wilson Sporting Goods Co.*, 2016 WL 10749160, at \*3 (N.D. Cal. June 29, 2016) (dismissing tortious interference with prospective economic advantage claim because plaintiff failed to allege an economic relationship); *Pineda v. Howard*, 2010 WL 11595769, at \*3 (C.D. Cal. Aug. 26, 2010) ("Without being party to the contract that was allegedly interfered with, [Plaintiff] also cannot pursue his intentional interference with contractual relations claim."); *Semi-Materials Co. v. SunPods, Inc.*, 2012 WL 3962487, at \*5 (N.D. Cal. Sept. 10, 2012) ("Nowhere in the Complaint does Plaintiff identify the economic relationship between itself and some third party with which it alleges interference."); *see also Restis,* 53 F. Supp. 3d at 726–28 (dismissing tortious interference with contract and prospective economic advantage claims

because "[c]ourts in this Circuit have consistently denied tortious interference with contract claims where the plaintiff was neither a party to, nor an intended third-party beneficiary of, the contract in question.").

Without any facts or law to support their most fundamental elements as to any of the Rule 11 Plaintiffs, the Interference Claims are utterly frivolous as to all of them. *See Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 114 F.R.D. 684, 691 (S.D.N.Y. 1987) ("One can hardly imagine a more frivolous claim than that of breach of contract between parties who never met, much less negotiated to the point of mutual assent. No reasonably competent attorney could have believed that the facts available . . . made out a contract claim by plaintiffs."); *Polo Fashions, Inc. v. Fashion Assoc., Inc.* 1986 WL 1176 at *4 (S.D.N.Y. Jan 22, 1986) (awarding sanctions for frivolous suit not properly alleging tortious interference with economic advantage); *Katzman*, 167 F.R.D. at 660; *see Charles Equip. Energy Sys., LLC*, 2023 WL 2346337, at *5-8; *see also Goel v. Coal. Am. Holding Co.*, 2013 WL 12122302, at *8-10 (C.D. Cal. Feb. 26, 2013) (finding a Rule 11 violation because no contract existed and Plaintiff's counsel "did not conduct a reasonable inquiry into the breach of contract claim before filing").

Because they collectively sued Ms. Lively for the Interference Claims without any factual basis and also refused to move to amend or otherwise dismiss those claims when the defects were brought to their attention, Plaintiffs' Counsel violated Rule 11 Plaintiffs and, along with the Rule 11 Plaintiffs, should be sanctioned.

## III. The Implied Covenant Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, and Mr. Heath against Ms. Lively are Legally Unreasonable and Factually Baseless.

Like the Interference Claims, the Implied Covenant Claims advanced by Mr. Sarowitz, Ms. Nathan, Ms. Abel and Mr. Heath is equally frivolous. According to their Complaint and their Opposition to the Lively MTD, the Implied Covenant Claim arises from an actor agreement

between *Ms. Lively and Wayfarer*, pursuant to which Ms. Lively would take the lead role as Lily Bloom. *See* Opp. at 41; *see also* FAC ¶ 27. And, like the Interference Claims, there is ***no*** conceivable contractual relationship between any of Mr. Sarowitz, Ms. Nathan, Ms. Abel, or Mr. Heath, on the one hand, and Ms. Lively on the other. Accordingly, given that the basic elements necessary to establish the Implied Covenant claim have never existed, for each of them to nevertheless assert the same is frivolous, triggering the consequences of Rule 11.

## IV.    The Rule 11 Plaintiffs' Baseless Claims Were Brought for the Improper Purpose of Harassing Ms. Lively, Causing Delay and Increasing the Cost of Litigation

From the inception of this matter, Plaintiffs' Counsel have repeatedly carried out aggressive and offensive "flood the zone" tactics designed to confuse and mislead the public regarding the nature of this litigation. Just last week, Plaintiffs' Counsel—specifically, Mr. Freedman—filed two letters and an affidavit so inflammatory and improper that they were stricken from the record. *See* ECF No. 220. But this is not the first time that Mr. Freedman has publicly attacked Ms. Lively and her counsel. On the contrary, he has repeatedly used the press to target Ms. Lively, including by asserting:

- "Lively's recent motion to dismiss herself from the self-concocted disaster she initiated is one of the most abhorrent examples of abusing our legal system. Stringent rules are put into place to protect the innocent and allow individuals to rightfully defend themselves. Laws are not meant to be twisted and curated by privileged elites to fit their own personal agenda. As we said yesterday in response to Mr. Reynolds's same cowardly measures, we will continue to hold Ms. Lively accountable for her actions of pure malice which include falsely accusing my clients of harassment and retaliation. Ms. Lively's fantastical claims will be swiftly debunked as discovery moves forward, easily disproved with actual, evidentiary proof."[6]

- "It is shameful that Ms. Lively and her representatives would make such serious and categorically false accusations against Mr. Baldoni, Wayfarer Studios and its representatives, as yet another desperate attempt to 'fix' her negative reputation

---

[6] *Justin Baldoni's Lawyer Fires Back at Blake Lively's Motion to Dismiss*, TMZ (Mar. 21, 2025), https://www.tmz.com/2025/03/20/justin-baldoni-lawyer-fires-back-blake-lively-motion-to-dismiss/.

which was garnered from her own remarks and actions during the campaign for the film[.]"[7]

- "It is painfully ironic that Blake Lively is accusing Justin Baldoni of weaponizing the media when her own team orchestrated this vicious attack by sending The New York Times grossly edited documents prior to even filing the complaint. We are releasing all of the evidence which will show a pattern of bullying and threats to take over the movie. None of this will come as a surprise because consistent with her past behavior Blake Lively used other people to communicate those threats and bully her way to get whatever she wanted. We have all the receipts and more."[8]

- "The irony is not lost on anyone that Ms. Lively is so petrified of the truth that she has moved to gag it. The immense power that she wielded in Hollywood built on pure fear for her husband and their powerful friends came to an end the moment Ms. Lively planned a mass distribution of a disturbingly false and well calculated hit piece in the New York Times. Ms. Lively did this with the sole intent to ruin the lives of innocent individuals, and then went the extra mile to place blame on a fictitious smear campaign, all because she quite simply could not accept that the public had organically seen through her facade. When you accuse innocent individuals of something so disturbing as sexual harassment without thinking of the destruction it would cause to not only them, but the entire domestic violence community, this is where accountability for such mean spirited actions must be taken."[9]

- "Blake isn't just hurting Baldoni by accusing him of sexual harassment when he never did anything wrong ... she's also devastating the entirety of the domestic violence community by lodging the allegations."[10]

Mr. Freedman's media statements have continued to take a decidedly darker turn. On May 8, Mr. Freedman **suggested that he would take Ms. Lively's deposition at Madison Square Garden, charge tickets for admission to attend, and livestream the testimony for the world to watch**.[11]

---

[7] Statement to the New York Times from Bryan Freedman, attorney for Justin Baldoni, Wayfarer Studios and all its representatives, The New York Times (Dec. 21, 2024), https://www.nytimes.com/interactive/2024/12/21/us/statement-to-the-new-york-times.html.

[8] Jen Juneau & Elizabeth Rosner, *Justin Baldoni's Lawyer Vows to Release 'Evidence' of Blake Lively's 'Pattern of Bullying': 'We Have the Receipts'*, People (Jan. 7, 2025), https://www.yahoo.com/entertainment/justin-baldonis-lawyer-vows-release-173959183.html?fr=sycsrp_catchall&guccounter=1.

[9] *Justin Baldoni's lawyer says he won't be 'bullied' into silence by 'petrified' Blake Lively, Ryan Reynolds after gag order request*, Page Six (Jan. 25, 2025), https://pagesix.com/2025/01/25/celebrity-news/justin-baldonis-lawyer-says-he-wont-bebullied-into-silence-by-petrified-blake-lively-ryan-reynolds-after-gag-order-request/.

[10] *Justin Baldoni's Lawyer: Blake's A Scared Bully, And She Won't Silence Us . . . We Want The Truth Public!!!*, TMZ (Jan. 25, 2025), https://www.tmz.com/2025/01/25/justin-baldoni-not-bullied-into-silence-blakelivelylawyer-says/#continued.

[11] Elizabeth Rosner, *Justin Baldoni's Lawyer Wants to Sell Tickets to Blake Lively's Deposition for This Reason (Exclusive)*, People (May 8, 2025) ("Since Ms. Lively is open to testifying, let's make it count," Baldoni's attorney

And, as set forth above, just last week Mr. Freedman filed with the court two letters and an affidavit, including an accusation that Ms. Lively's has engaged in unlawful conduct, as tools to create a press uproar,[12] so inflammatory that they were struck from the record. ECF No. 220.

From the outset of this litigation, Ms. Lively has expressed concerns regarding statements made by Mr. Freedman and his firm relating to the present litigation—including a website that Mr. Freedman planned to launch to release "full unedited WhatsApp, text and email exchanges between Lively and Baldoni." *See* ECF Nos. 17, 38, 43. Despite the Court's express ruling that counsel comply with Rule 3.6 of the New York Rules of Professional Conduct, ECF No. 57, Mr. Freedman's misconduct continues—as evidenced by his recent behavior. *See* ECF No. 220.

These public attacks, combined with the Rule 11 Plaintiffs filing numerous claims against Ms. Lively without any basis in law or fact, is willfully improper and warrants sanctions under Rule 11(b)(1). *See Gong*, 2023 WL 5372473, at *13 ("[A] court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit.") (internal quotation marks and citation omitted); *S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014) (holding that "[t]he deficiency of [plaintiff's] claim, coupled with its behavior" in litigation "gives rise to an inference of improper purpose"); *Galonsky v. Williams*, 1997 WL 759445, at *6 (S.D.N.Y. Dec. 10, 1997) ("[T]he overall circumstances of this case indicate that

---

Bryan Freedman tells PEOPLE. "Hold the deposition at MSG, sell tickets or stream it, and donate every dollar to organizations helping victims of domestic abuse."), available at https://people.com/justin-baldoni-lawyer-wants-sell-tickets-blake-lively-deposition-exclusive-11731182

[12] Winston Cho, *Blake Lively's Lawyers Are Extorting Taylor Swift, Justin Baldoni Claims*, The Hollywood Reporter (May 14, 2025), available at https://www.hollywoodreporter.com/news/general-news/blake-livelys-lawyers-extorting-taylor-swift-justin-baldoni-claims-1236217199/; Whitney Vasquez, *Blake Lively's lawyer accused of threatening to release Taylor Swift texts in 'It Ends With Us' legal war — attorneys trade allegations*, New York Post (May 14, 2025), available at https://nypost.com/2025/05/14/entertainment/blake-livelys-lawyer-allegedly-threatened-to-leak-taylor-swift-texts/; Benjamin VanHoose, *Blake Lively Threatened to Leak Taylor Swift Texts If Singer Didn't Publicly Support Her, Claim Justin Baldoni's Lawyers*, People (May 14, 2025), available at https://people.com/blake-lively-threatened-taylor-swift-support-justin-baldoni-claims-11733062.

[counsel] filed these baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement.").

## V. The Court Should Impose Sanctions on Plaintiffs' Counsel, Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr. Heath, and IEWU LLC.

Where, as here, an attorney signs their name to an action that "was destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law" sanctions are appropriate. *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir. 1990). "The purpose of the imposition of sanctions . . . is deterrence"; therefore the sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Goldman v. Barrett*, 2019 WL 4572725, at *4 (S.D.N.Y. Sept. 20, 2019) (quoting Fed. R. Civ. P. 11(c)(4)). For the reasons discussed herein, the Rule 11 Plaintiffs and Plaintiffs' Counsel should be jointly and severally liable for an award of reasonable attorneys' fees and costs to be paid to Ms. Lively in connection with this motion and related work.  Further, the Court should consider additional sanctions, including a penalty to be paid to the Court, and/or a reprimand of Plaintiffs' Counsel for the burden they have placed on the Court as a result of their filing frivolous and harassing litigation.

### A. The Court Should Order Plaintiffs' Counsel and the Rule 11 Plaintiffs Jointly and Severally Liable for Reasonable Attorneys' Fees and Costs to Ms. Lively.

Attorneys' fees are appropriate sanctions in this case because Plaintiffs' Counsel and the Rule 11 Plaintiffs filed frivolous Extortion, Tortious Interference, and Implied Covenant Claims with an improper purpose, and did not withdraw them despite the Safe Harbor Letters demonstrating their baselessness. "Although the purpose of sanctions is deterrence, and not reimbursement, sanctions may include an order directing payment to the movant of part of all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Cameau*

*v. Nat'l Recovery Agency, Inc.*, 2018 WL 4522104, at *8 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) (cleaned up). Indeed, "[i]t is well settled that Rule 11 empowers judges with discretion to award that portion of a defendant's attorney's fees thought reasonable to serve the sanctioning purpose of the Rule." *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *11 (E.D.N.Y. Mar. 21, 2024) (quoting *An v. Despins*, 2023 WL 4931832, at *7 (S.D.N.Y. Aug. 2, 2023)). "[A]warding attorneys' fees as a sanction is particularly appropriate for improper purpose violations," and where, like here, parties "fail[] to respond to the Safe Harbor Letter, which resulted in the filing of this motion and would otherwise have been unnecessary." *Ammann*, 2024 WL 1956237, at *11; *see also Despins*, 2023 WL 4931832, at *6-8 (awarding attorneys' fees for improper purpose violation where "even a cursory inquiry would have shown" the claim was meritless); *Cameau*, 2018 WL 4853050, at *3 (failure to respond to safe harbor notice warranted award of expenses and fees that could have been avoided).

      1.    <u>The Court should order Mr. Freedman, Mr. Schuster, Liner Freedman, and Meister Seelig jointly and severally liable to pay Ms. Lively for all imposed sanctions.</u>

Under Rule 11(c), once a court determines that a party or counsel violated Rule 11(b), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*; *see also Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 449 (S.D.N.Y. 2023) ("Because the Court finds no exceptional circumstances, sanctions will be jointly imposed on" the signing attorney's law firm). "Thus, where attorneys have engaged in sanctionable conduct by violating Rule 11(b), courts have 'mandated' that law firms 'shall be held jointly responsible for their respective attorneys' violations.'" *Trustees of Mosaic and Terrazzo Welfare, Pension,*

*Annuity, and Vacation Funds v. Elite Terrazzo Flooring, Inc.*, 2022 WL 2466847, at *2 (E.D.N.Y. Apr. 14, 2022) (collecting cases). For the reasons discussed above, *supra* at 6-17, Mr. Freedman and Mr. Schuster have violated Rule 11(b) and, therefore, Ms. Lively seeks sanctions not only against them, but also their respective law firms.

> 2.    The Rule 11 Plaintiffs should be held jointly and severally liable with Plaintiffs' Counsel for all imposed sanctions.

Because Plaintiffs' Counsel has violated Rules 11(b)(1) and (b)(3) by filing factually baseless claims for a harassing and improper purpose, the Rule 11 Plaintiffs should also be sanctioned pursuant to Rule 11(c)(1).[13] "[T]here is no question that once a court finds that Rule 11(b) has been violated by an attorney or unrepresented party, sanctions may be awarded against any 'attorney, law firm, ***or party*** that violated the rule or is responsible for the violation.'" *Gong*, 2023 WL 5372473, at *7  (quoting *Int'l Techs. Mktg., Inc. v. Cognyte Techs. Israel Ltd.*, 2022 WL 11280876, (S.D.N.Y Oct. 19, 2022) at *12) (emphasis added) "Rule 11(c)(5) presents the only limitation on a court's ability to impose sanctions on represented parties: A court is prohibited from imposing monetary sanctions on a represented party for making frivolous legal arguments in violation of Rule 11(b)(2)."). *Gong*, 2023 WL 5372473, at *7; *see, e.g.*, *Despins*, 2023 WL 4931832, at *8 (imposing fee award "jointly and severally upon Plaintiffs and Plaintiffs' counsel"); *Cameau*, 2018 WL 4522104, at *8 ("[T]he appropriate sanction is requiring Plaintiff [ ] and his counsel, jointly and severally, to reimburse the Defendant for its reasonable attorney's fees and expenses associated with briefing the motion for summary judgment and the Rule 11 motion.").

---

[13] To be sure, Plaintiffs' Counsel also violated 11(b)(2) by asserting frivolous legal arguments.  While Rule 11(c)(5)(A) limits the imposition of monetary sanctions against represented parties in connection with these violations, these circumstances do not limit the imposition of sanctions in connection with Plaintiffs' Counsel's violations under 11(b)(1) and (b)(3), and Ms. Lively has not included this violation as a basis for monetary sanctions against the Rule 11 Plaintiffs. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 WL 2944646, at *2, n.1 (S.D.N.Y. Mar. 31, 2016), *report and recommendation adopted*, 2016 WL 2889054 (S.D.N.Y. May 16, 2016) (imposing sanctions on party in connection with Rule 11(b)(1) and (b)(3) violations, but not the 11(b)(2) violations).

3.    <u>Sanctions imposed upon Plaintiffs' Counsel and the Rule 11 Plaintiffs should be substantial to sufficiently deter similar abhorrent conduct in the future</u>.

The 1993 Advisory Committee Note to Rule 11 sets forth the following factors "that may be considered by the court when deciding . . . what sanctions are appropriate in the given circumstances:"

> [1] [w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern of activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation; [5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [9] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P 11, Advisory Comm. Note to 1993 Amendments.

Mr. Freedman advertises himself as a litigator with over 20 years' experience and as "one of the most powerful – and most feared people in the media industry."[14]  Mr. Schuster is a "seasoned litigator" with 30 years of experience and serves as his firm's chair of the litigation department.[15]  Each of their firms is well-resourced and regularly practices in litigation. Nevertheless, in this action, Mr. Freedman and Mr. Schuster signed their names to an Amended Complaint containing numerous frivolous claims against Ms. Lively, all while targeting her in the media.  As discussed above, Mr. Freedman's pattern of behavior of filing baseless claims in courts to bolster his accompanying media campaign leads to only one "plausible conclusion:" Plaintiffs' Counsel acted willfully with the intent of harassing Ms. Lively, causing unnecessary delay, and increasing the cost of litigation. *Supra* at 14-17; *China AI Cap. Ltd. on behalf of Link Motion Inc.*

---

[14] Liner Freedman Taitelman + Cooley LLP, Bryan Freedman Biography Page, https://lftcllp.com/lawyers/bryan-j-freedman/.
[15] Meister Seelig & Fein, Mitchell Schuster Biography Page, https://meisterseelig.com/people/mitchell-schuster/.

*v. DLA Piper LLP (US)*, 2024 WL 964596, at *15 (S.D.N.Y. Mar. 6, 2024); *Gong*, 2023 WL 5372473, at *13.

Plaintiffs' Counsel's inclusion of the Rule 11 Plaintiffs' frivolous claims has also infected large portions of their pleadings by intermingling the Rule 11 Plaintiffs' baseless claims with other Wayfarer Parties' in an attempt to disguise them.[16] Moreover, despite ample warning of the deficiencies of the Extortion, Interference, and Implied Covenant Claims (as well as improper group pleading) in Lively's MTD and Safe Harbor Letters, Plaintiffs' Counsel has had the opportunity but refused to withdraw these causes of action. Beyond intentionally injuring Ms. Lively's reputation and career, Plaintiffs' Counsels' and the Rule 11 Plaintiffs' have—by including such frivolous claims—required Ms. Lively to exhaust significant and unnecessary resources to analyze and challenge these additional claims. They have thereby further compounded the cost and burden of defending this action, including by forcing Ms. Lively to incur the expense to prepare her MTD, the Safe Harbor Letters, and the instant Motion.

Under these circumstances, the imposition of meaningful monetary sanctions may be the only way to deter Plaintiffs' Counsel and the Rule 11 Plaintiffs from continuing to unlawfully harass Ms. Lively with baseless accusations and statements to the press. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 541-43 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822, 218 L. Ed. 2d 31 (2024) (affirming district court's imposition of $312,143.55 sanctions on attorney for "numerous allegations" that "a reasonable attorney would know are "inaccurate, irrelevant, or frivolous."); *see also Trump v. Clinton*, 653 F. Supp. 3d 1198, 1210, 1233 n.38 (S.D. Fla. 2023), *appeal dismissed*, 2023 WL 3477967 (11th Cir. Apr. 6, 2023) (imposing sanctions of $937,989.39

---

[16] Plaintiffs' Counsel plainly understands that claims may only be asserted on behalf of those who have good reason to do so. In contrast to all of the other claims in the FAC, Plaintiffs' Counsel brought False Light Claims on behalf of only the individual defendants (not the entity defendants).  *See* FAC at 214.

on plaintiff and lead counsel where lawsuit was "completely frivolous, both factually and legally," adding that "[s]anctions must never be hollow gestures: their bite must be real."); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287, 291 (C.D. Cal. 1991) (ordering $1,446,511.49 in sanctions against plaintiff for Rule 11 violation where plaintiff failed to "make 'reasonable inquiry' to determine that its complaint was well grounded in fact.").

As an illustration of the Rule 11 Parties' financial resources, Mr. Sarowitz has pledged his intention to "spend $100 million to ruin the lives" of Ms. Lively and her family. Given those intentions, which there is every reason to believe has evolved into a bottomless bank account funding the Rule 11 Plaintiffs' instant litigation, the imposition of material monetary sanctions becomes critical. For these reasons, Ms. Lively seeks sanctions in the amount of attorneys' fees and costs incurred in defending against the Rule 11 Plaintiffs' baseless claims, including the preparation of the Safe Harbor Letters and the instant motion, to be imposed jointly and severally among Plaintiffs' Counsel and the Rule 11 Plaintiffs. *See, e.g.*, *McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 341 (S.D.N.Y. 2022) ("[P]ayment to Defendants is appropriate because they bore the cost both of opposing Plaintiffs' motion and filing this motion for sanctions."); *Weddington v. Sentry Indus., Inc.*, 2020 WL 264431, at *9 (S.D.N.Y. Jan. 17, 2020) (imposing sanction in amount of attorneys' fees incurred responding to the frivolous argument "in her answering brief and submission, and in making the submission and appearance in connection with the sanctions issue").

### B.    The Court Should Impose Additional Sanctions, Including a Penalty or Reprimand on Plaintiffs' Counsel.

Finally, in addition to monetary sanctions (or, as an alternative, in the event the Court disagrees monetary sanctions are warranted), the Court should issue Plaintiffs' Counsel a formal reprimand for the filing of baseless claims as a means of harassing Ms. Lively and gaining favor

in the court of public opinion. *See, e.g.*, *Kensington Intern. Ltd. v. Republic of Congo*, 2007 WL 2456993, at *10 (S.D.N.Y. Aug. 24, 2007) (formal reprimand to all attorneys at Cleary Gottlieb Steen & Hamilton LLP that "civil litigation can be high stakes, zealously litigated, aggressively fought, ***and*** civil."); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith*, 2003 WL 22227956, at *14 (S.D.N.Y. Sept. 26, 2003) (admonishing counsel "to carefully research the legal bases underlying claims"). "The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; [or] referring the matter to disciplinary authorities[.]" *Mata*, 678 F. Supp. 3d at 465. Specifically, "[a]n attorney may be required to pay a fine, or, in the words of Rule 11, a 'penalty' to advance the interests of deterrence and not as punishment or compensation." *Id.* at 466 (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103–04 (2d Cir. 2015)). Courts impose penalties on attorneys—to be paid directly to the Court—because of "the burden that litigating" sanctionable claims "place[s] on the Court and its personnel and to deter . . . such frivolous and harassing litigation in the future." *Gong*, 2023 WL 5372473, at *16; *see also Weddington*, 2020 WL 264431, at *9 (imposing penalty in addition to attorneys' fees to "vindicate the harm to the judicial system"). Here, in addition to the attorney's fees discussed above, the Court should consider whether such additional sanctions are appropriate.

## CONCLUSION

The motion should be granted, and the Court should award the costs, including attorneys' fees, incurred in responding to the Amended Complaint and in bringing this motion, and additional sanctions as this Court deems appropriate.

Respectfully submitted,

Dated: May 19, 2025

/s/ Esra A. Hudson

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
Meryl Governski (admitted *pro hac vice*)
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron Nathan
787 7th Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac* vice)
Stephanie A. Roeser (admitted *pro hac v*ice)
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

*Attorneys for Blake Lively*

- 24 -