# EXHIBIT A

**manatt**

**Esra A. Hudson**
Manatt, Phelps & Phillips, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Direct Dial: (310) 312-4381
ehudson@manatt.com

**WILLKIE FARR & GALLAGHER** LLP

**Michael J. Gottlieb**
Willkie Farr & Gallagher, LLP
1875 K Street NW
Washington, D.C. 20006
Direct Dial: (202) 744-0858
mgottlieb@willkie.com

April 23, 2025

**VIA EMAIL**

Bryan Freedman
Liner Freedman Taitelman + Cooley LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067

Mitchell Schuster
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, NY 10017

**Re:** *Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049-LJL; *Wayfarer Studios LLC, et al. v. Lively, et al.*, No. 1:25-cv-00449-LJL

Dear Mr. Freedman and Mr. Schuster:

On behalf of our client Blake Lively, we write to address the frivolous claims asserted by Plaintiff Jennifer Abel against Ms. Lively, which violate Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). In accordance with Rule 11, enclosed please find a copy of Ms. Lively's proposed motion, which we intend to file as to you, your law firms, and Abel, if Abel does not withdraw the following claims: (1) Civil Extortion (ECF No. 50 (the "FAC") ¶¶ 316-23 ("Extortion Claim")); (2) Intentional Interference with Contractual Relations (*id.* ¶¶ 347-55); (3) Intentional Interference with Prospective Economic Advantage (*id.* ¶¶ 356-65); (4) Negligent Interference with Prospective Economic Advantage (*id.* ¶¶ 366-74) (together with (2) and (3), the "Interference Claims")); (5) Breach of the Implied Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 340-46 ("Implied Covenant Claim")); (6) Defamation (*id.* ¶¶ 324-31 ("Defamation Claim")); and (7) False Light Invasion of Privacy (*id.* ¶¶ 332–339 ("False Light Claim")).

As you know, Rule 11 imposes a duty upon counsel to ensure any pleading or motion presented to the Court is not "frivolous, legally unreasonable, or factually without foundation," and "is not being presented for any improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *Gong v. Sarnoff*, 2023 WL 5372473, *7–8 (S.D.N.Y. Aug. 22, 2023) (Liman, J.) (citations omitted); *see* Fed. R. Civ. P. 11(b). A violation of this duty may subject both the party and the filing attorney to sanctions. *See id* at *7; Fed. R. Civ. P. 11(c)(1), (5). For the reasons discussed herein, Abel's Extortion, Interference, Implied Covenant, Defamation and False Light

April 23, 2025
Page 2

Claims are "so destined to fail based on the facts and existing precedent" that no reasonable attorney could believe they were well-grounded. *O'Malley v. N.Y. City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990); *Goldman v. Barrett*, 825 Fed. App'x. 35, 37 (2d Cir. 2020). Indeed, as described herein, Abel's claims are so baseless that the "only plausible conclusion to be drawn" is that you brought them for the "improper purpose" of harass[ing]" Ms. Lively, causing "unnecessary delay," and "needlessly increas[ing] the cost of litigation," all of which is prohibited by Rule 11(b)(1). *See China AI Cap. Ltd. on behalf of Link Motion Inc. v. DLA Piper LLP (US)*, 2024 WL 964596, at *5, *13 (S.D.N.Y. Mar. 6, 2024) (quoting Fed. R. Civ. P. 11(b)(1)). If you do not withdraw the aforementioned claims within Rule 11(c)(1)(A)'s 21-day safe harbor period, ***we will seek sanctions against you, your law firms, and your client***. Any such sanctions would be in addition to and independent of any costs, attorney's fees, or damages that Ms. Lively is otherwise entitled to under applicable law.

I.     **Abel's Extortion, Interference, Implied Covenant, Defamation, and False Light Claims against Ms. Lively are Frivolous.**

A. <u>**Abel's Extortion Claim is Legally Unreasonable and Factually Baseless.**</u>

Abel cannot support an Extortion Claim against Ms. Lively because she makes no factual allegations that Ms. Lively threatened or demanded anything from her, nor can she.

Abel's Extortion Claim, and related request for punitive and exemplary damages, asserts that Ms. Lively "made threats to the Wayfarer Parties" that "included demands that money, property, services, or other sources of value be conferred upon [Ms. Lively] without consideration or contractual entitlement thereto." FAC ¶¶ 317-18; ECF No. 162 ("Abel Opp.") at 33 (quoting *Khadavi v. Stalgi, Inc.*, 2021 WL 929099, at *6 (C.D. Cal. 2021) (conceding claim requires establishing "the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear[.]")). In support of this claim, Abel identifies two acts, neither of which has anything to do with her. In her Opposition, Ms. Abel claims that Ms. Lively supposedly "demanded that the Wayfarer Parties issue a humiliating and false statement taking blame for Ms. Lively's press woes." Abel Opp. at 32 (citing FAC ¶¶ 16, 250-56). Specifically, the FAC alleges that: "The executive communicated the demand from Ms. Lively and Mr. Reynolds that ***Wayfarer, Heath and Baldoni*** make a public apology ***that day*** and that, if they failed to do so, the 'gloves would come off.'" FAC ¶ 250 (emphasis added). The FAC goes on to suggest Mr. Reynolds and Ms. Lively "demanded that ***Wayfarer*** put out a statement 'accepting blame' for the problems during filming, with an express threat that they themselves would attack Wayfarer in the press if Wayfarer refused." *Id.* ¶¶ 253-54 (emphasis added). In other words, the only threats or demands at issue were allegedly made to Baldoni, Wayfarer, and Heath. FAC ¶¶ 250, 253-54. The same is true with respect to the second purported extortionate act identified by Abel: that Ms. Lively purportedly demanded that Baldoni, Heath, and Wayfarer submit letters to the PGA in support of her certification for the *p.g.a.* mark, which Baldoni and Heath ultimately did. Abel Opp. at 32-33 (citing FAC ¶¶ 152-58; *see also* FAC Ex. A at 92).

Despite making these allegations on behalf of the "Wayfarer Parties," the FAC itself confirms that no "demands," "threats," or "coercive" behavior were directed toward Abel at all. *See* FAC at ¶¶ 16, 152-58, 250-56 (identifying purported threats made to Baldoni, Heath, and Wayfarer). It is undisputed that Abel, a PR specialist, (*id.* ¶ 197), is not an owner, executive, or employee of Wayfarer

April 23, 2025
Page 3

and had no role in connection with the production of *It Ends With Us* (the "Film") or with any accreditation associated with the Film.  The timing of these purported demands—made in the summer of 2024—underscores the absurdity of Ms. Abel's claim here, since, at that time, Ms. Lively had no reason to know who she even was.  Under the FAC's allegations, the alleged civil extortion **has nothing to do with Abel**, nor could any amendment cure this deficiency to state the Extortion Claim against Ms. Lively in good faith.

Utterly lacking any basis in fact or law, Abel's Extortion Claim is unwarranted, frivolous, and sanctionable under Rule 11.  *See Watkins v. Smith*, 2013 WL 655085, at *4 (S.D.N.Y. Feb. 22, 2013), *aff'd*, 561 F. App'x 46 (2d Cir. 2014) (granting sanctions against plaintiff's counsel or decision to defendants "who had no involvement in the underlying events that gave rise to the plaintiff's suit"); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd sub nom.* 13 F.3d 1229 (2d Cir. 1997) ("As even a cursory examination of the requirements for bringing suit … would have revealed the impossibility of the claim's success"); *Charles Equip. Energy Sys.*, *LLC v. INNIO Waukesha Gas Engines, Inc.*, 2023 WL 2346337, at *5-8 (S.D.N.Y. Mar. 3, 2023) (sanctions appropriate where plaintiff "failed to identify a single statement or action by the Defendants on which Plaintiff could have reasonably relied" for claim).

> B. **Abel's Interference and Implied Covenant Claims are Legally Unreasonable and Factually Baseless.**

Abel's Interference and Implied Covenant Claims are equally untenable because Abel pleads no facts to suggest Ms. Lively interfered with any of her contracts or business relationships.  Abel brings three Interference Claims against Ms. Lively: (i) Intentional Interference with Contractual Relations (FAC ¶¶ 347-55); (ii) Intentional Interference with Prospective Economic Advantage (*id.* ¶¶ 356-65); and (iii) Negligent Interference with Prospective Economic Advantage (*id.* ¶¶ 366-74), seeking punitive and exemplary damages against Ms. Lively in connection with the intentional torts.  These claims rest exclusively on purported contractual or economic relationships ***between Wayfarer and WME*** and ***between Baldoni and WME***. *See id.* ¶¶ 348, 357, 367; Abel Opp. at 27 ("The FAC pleads a claim against Lively for tortious interference with Wayfarer's and Baldoni's relationships with WME"); *see also* FAC ¶¶ 16, 162, 349-50, 357.  Similarly, Abel advances a Breach of Implied Covenant Claim against Ms. Lively, which purportedly arises from an actor agreement between Ms. Lively and Wayfarer, pursuant to which Ms. Lively would take the lead role as Lily Bloom.  *See* Abel Opp. at 41; *see also* FAC ¶ 27.

The FAC's allegations that Ms. Lively interfered with ***Wayfarer's and Baldoni's*** contractual or economic relationships with WME do not, and cannot, provide any reasonable basis for Abel to assert Interference Claims against anyone. *See* Abel Opp. at 38 (acknowledging interference claims require establishing the "existence of a valid contract between the plaintiff and a third party"). Abel cannot contrive a non-existent relationship between herself as a PR representative of Wayfarer and Baldoni, on the one hand, and their talent agency, on the other.  The same is true with respect to the Implied Covenant Claim, which Abel's Opposition makes clear focuses on a contractual relationship between Ms. Lively and Wayfarer to which Abel was not a party.  Abel Opp. at 41

April 23, 2025
Page 4

As to Abel's claim for Intentional Interference with Contractual Relations, "[o]ne can hardly imagine a more frivolous claim than that of breach of a contract between parties who never met, much less negotiated to the point of mutual assent. No reasonably competent attorney could have believed that the facts available … made out a contract claim by plaintiffs …" *Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 114 F.R.D. 684, 691 (S.D.N.Y. 1987); *see also McGough v. Wells Fargo Bank, N.A.*, 2012 WL 6019108, at *5-6 (N.D. Cal. Dec. 3, 2012) (attorney violated Rule 11 where, among other things, contract-based claims were asserted against the wrong parties). The same holds true for her remaining Interference Claims. *See Polo Fashions, Inc. v. Fashion Assocs., Inc.*, 1986 WL 1176 (S.D.N.Y. Jan. 22, 1986) (awarding sanctions for frivolous suit not properly alleging tortious interference with economic advantage). Abel's Interference and Implied Covenant Claims against Ms. Lively are objectively baseless. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. at 660; *Charles Equip. Energy Sys., LLC*, 2023 WL 2346337, at *5-8.

### C. Abel's Defamation and False Light Claims are Legally Unreasonable and Factually Baseless.

Abel has alleged no false statements made by Ms. Lively concerning Abel, without which her defamation claim is frivolous. "To state a defamation claim, the statement on 'which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way.'" *Mahoney v. Meta Platforms, Inc.*, 2025 WL 563459, at *2 (N.D. Cal. Feb. 20, 2025) (quoting *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986)). Nowhere in the 391-paragraph FAC does Abel identify a single statement, or the substance of a single statement, made by Ms. Lively concerning Abel.

In her Opposition, Abel identifies three "publications" that she seeks to hold Ms. Lively liable for defamation, none of which involve Abel: (i) Mr. Reynolds' supposed comment to WME that Baldoni is a "sexual predator"; (ii) the Sloane Parties' alleged statements that Baldoni "sexually assaulted" Ms. Lively; and (iii) unidentified statements to third parties in response to "media inquiries," including the *New York Times* and other outlets, "to the effect that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively and others and retaliated against Lively[.]" Abel Opp. at 7, 16-18 (citing FAC ¶¶ 8, 162, 189-90, 193, 273-74, 276, 282, 325).

It is both undeniable and conceded that the first two categories—statements to WME or other third parties describing Baldoni as a "sexual predator" and statements concerning Baldoni's sexual assault of Ms. Lively—relate to Baldoni as an individual, and in no way concern Abel. *See* FAC ¶¶ 8; 162; Abel Opp. at 16-17. A defamation claim brought by Abel on this basis would be frivolous. As to the third category, the allegations as to statements that the "Wayfarer Parties engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively" have no connection to Abel. *See* FAC ¶¶ 327, 325. Abel has further failed to identify in any way, let alone allege with specificity, *any* actual statements Ms. Lively allegedly made about her on this topic (or any other) to the *New York Times* or other unspecified third parties. To assert this claim, Abel must have a good faith basis to believe that Ms. Lively made *false statements* to the *New York Times* or other news outlets that Abel propagated a misleading narrative about Ms. Lively. With no third parties beyond the *New York Times* even identified, it is clear that Abel lacks a good-faith basis for such allegations. *See Rashdan v. Geissberger,* 2011 WL 197957, at *9 (N.D. Cal. Jan. 14, 2011) ("It is axiomatic that a plaintiff cannot

- 4 -

April 23, 2025
Page 5

predicate a defamation claim on what may have been said as opposed to what was actually said."); *see also Goldman*, 825 F. App'x at 35 ("speculation that conversations may have taken place ... provides no support for allegations as to the content of those conversations.") (cleaned up).  Nor has Abel identified any actual (or even theoretical) statements made by Ms. Lively to the *New York Times*.  And, as to the *New York Times* article itself (for which Ms. Lively would not be liable), the Court has indicated such a "strong showing" that the defamation claim against them will be dismissed that discovery is presently stayed against them.  ECF No. 118 at 2.  Regardless, every mention of Abel in the *New York Times* article either describes: (1) her background in connection with Ms. Lively's legal complaint with the California Civil Rights Department or her professional relationship with Wayfarer, or (2) references her in connection with direct quotes from her own correspondence. *See e.g.*, ECF No. 107-1.[1]

Finally, and most fatal of all, any statements that Ms. Lively made to anyone about sexual harassment or retaliation are privileged under a combination of the litigation, fair report and sexual harassment privilege under California Civil Code Section 47.1. Abel makes zero allegations as to any actual malice by Ms. Lively to her, nor could she, because Ms. Lively did not even know she existed outside of her text messages and emails.

II. **Abel's Frivolous Claims Were Brought For the Improper Purpose of Harassing Ms. Lively, Causing Delay, and Increasing the Cost of Litigation.**

From its inception, this matter has been plagued by retaliatory conduct. Abel's admissions reveal that she engaged in a public relations strategy targeted at "refuting any of the [sexual harassment] claims" Ms. Lively made and "posting to counter [Ms. Lively's] narrative." *See* ECF No. 154 ¶¶ 190, 224.  On top of that, Abel made a public Facebook post on December 23, 2024, in which she *admitted* that there was a social combat plan, and that she "flagged accounts that we needed to monitor, worked with a social team to help us stay on top of the narrative so we could act quickly if needed, and . . . sophomorically reveled and again, joked, privately to each other about the internet's feedback . . ." about Ms. Lively. Abel asked on Facebook "Now what kind of a woman would work against another woman who was a victim of all the things being claimed?" admitting that she knew the details of Ms. Lively's allegations, yet appointed *herself* the arbiter of the truth *and worked against Ms. Lively nonetheless*. Abel did so even though she also admitted in that post that "[i]t's not my position to say or speculate what [Ms. Lively] was feeling in these moments that she claims, and I would never slam a woman for speaking her truth." Yet that is exactly what Abel did – she not only "slammed" Ms. Lively, but she sued her for $400 million, even after she publicly declared that Ms. Lively had merely spoken "her truth." On the matter of truth, it is notable that, while Abel tried to suggest on Facebook that she believed Baldoni was a good guy, not capable of the behavior he was accused of, the very next day, on December 24, 2024, her texts were revealed in *Jones, et al. v. Abel, et al.*, in which she confessed that she found him to be pompous, cringy, needing to be humbled, and agreed that "Blake was probably grossed out too" by Baldoni.

---

[1] For these same reasons, Abel's False Light Claim is also baseless. Abel has not identified a single false statements or distortion of a factual statement *made by Ms. Lively* that placed Abel before the public in a false light. *See* Abel Opp. at 18-19; FAC ¶¶ 162, 274-82.

April 23, 2025
Page 6

And against that backdrop, in the case of Mr. Freedman, you have been aware of, involved in, and/or have facilitated this course of conduct since your engagement no later than August 13, 2024. In the case of Mr. Schuster, you have been aware of, involved in, and/or have facilitated this course of conduct, including in the filing of the Amended Complaint and its baseless claims, as well as the public relations strategy surrounding the litigation, since no later than your appearance on the docket on January 22, 2025. ECF No. 22.

Further, as to Mr. Freedman, as counsel for Abel and the other Wayfarer Parties, you have orchestrated "flood the zone" tactics designed to confuse and mislead the public regarding the nature of this litigation, **as well as made statements taking aim at Ms. Lively**, including by asserting:

- "Lively's recent motion to dismiss herself from the self-concocted disaster she initiated is one of the most abhorrent examples of abusing our legal system. Stringent rules are put into place to protect the innocent and allow individuals to rightfully defend themselves. Laws are not meant to be twisted and curated by privileged elites to fit their own personal agenda. As we said yesterday in response to Mr. Reynolds's same cowardly measures, we will continue to hold Ms. Lively accountable for her actions of pure malice which include falsely accusing my clients of harassment and retaliation. Ms. Lively's fantastical claims will be swiftly debunked as discovery moves forward, easily disproved with actual, evidentiary proof."[2]

- "It is shameful that Ms. Lively and her representatives would make such serious and categorically false accusations against Mr. Baldoni, Wayfarer Studios and its representatives, as yet another desperate attempt to 'fix' her negative reputation which was garnered from her own remarks and actions during the campaign for the film[.]"[3]

- "It is painfully ironic that Blake Lively is accusing Justin Baldoni of weaponizing the media when her own team orchestrated this vicious attack by sending The New York Times grossly edited documents prior to even filing the complaint. We are releasing all of the evidence which will show a pattern of bullying and threats to take over the movie. None of this will come as a surprise because consistent with her past behavior Blake Lively used other people to communicate those threats and bully her way to get whatever she wanted. We have all the receipts and more."[4]

- "The irony is not lost on anyone that Ms. Lively is so petrified of the truth that she has moved to gag it. The immense power that she wielded in Hollywood built on pure fear for her husband and their powerful friends came to an end the moment Ms. Lively

---

[2] *Justin Baldoni's Lawyer Fires Back at Blake Lively's Motion to Dismiss*, TMZ (Mar. 21, 2025), https://www.tmz.com/2025/03/20/justin-baldoni-lawyer-fires-back-blake-lively-motion-to-dismiss/.

[3] *Statement to the New York Times from Bryan Freedman, attorney for Justin Baldoni, Wayfarer Studios and all its representatives*, The New York Times (Dec. 21, 2024), https://www.nytimes.com/interactive/2024/12/21/us/statement-to-the-new-york-times.html.

[4] Jen Juneau & Elizabeth Rosner, *Justin Baldoni's Lawyer Vows to Release 'Evidence' of Blake Lively's 'Pattern of Bullying': 'We Have the Receipts'*, People (Jan. 7, 2025), https://www.yahoo.com/entertainment/justin-baldonis-lawyer-vows-release-173959183.html?fr=sycsrp_catchall&guccounter=1.

    planned a mass distribution of a disturbingly false and well calculated hit piece in the New York Times. Ms. Lively did this with the sole intent to ruin the lives of innocent individuals, and then went the extra mile to place blame on a fictitious smear campaign, all because she quite simply could not accept that the public had organically seen through her facade. When you accuse innocent individuals of something so disturbing as sexual harassment without thinking of the destruction it would cause to not only them, but the entire domestic violence community, this is where accountability for such mean spirited actions must be taken."[5]

- "Blake isn't just hurting Baldoni by accusing him of sexual harassment when he never did anything wrong ... she's also devastating the entirety of the domestic violence community by lodging the allegations."[6]

The "only plausible conclusion to be drawn" from all of this conduct is that you are acting with the improper purpose of "harass[ing]" Ms. Lively, "causing delay," and "needlessly increas[ing] the cost of litigation" in direct violation of Rule 11(b)(1). *DLA Piper LLP (US)*, 2024 WL 964596, at *5 (quoting Fed. R. Civ. P. 11(b)(1)).[7] Such conduct is willfully improper and warrants sanctions under Rule 11(b)(1). *See Gong*, 2023 WL 5372473, at *13 ("[A] court may infer an improper purpose if, in light of Plaintiff's conduct during and outside of litigation, a complaint is baseless as to suggest that there is an ulterior motive behind the lawsuit."); *S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014) (holding that "[t]he deficiency of [plaintiff's] claim, coupled with its behavior" in litigation "gives rise to an inference of improper purpose"); *Galonsky v. Williams*, 1997 WL 759445, at *6 (S.D.N.Y. Dec. 10, 1997) ("[T]he overall circumstances of this case indicate that [counsel] filed these baseless claims as part of a public relations campaign to embarrass the defendants and thereby coerce a settlement.").

***

    We intend to seek monetary sanctions against you, your law firms, and Abel for the costs and attorneys' fees incurred in responding to these frivolous claims, in preparing these Rule 11 materials, and in any other expenses and interest directly resulting from these violations. *See Goldman v. Barrett*, 2019 WL 4572725, at *4 (S.D.N.Y. Sept. 20, 2019) (quoting Fed. R. Civ. P. 11(c)(4)); Fed. R. Civ. P. 11(c); *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 271 (S.D.N.Y. 2010). Pursuant to Rule 11(c)(1)(A), by service of this letter and the accompanying motion, you have 21 days to withdraw the aforementioned claims against Ms. Lively. Should you not withdraw

---

[5] *Justin Baldoni's lawyer says he won't be 'bullied' into silence by 'petrified' Blake Lively, Ryan Reynolds after gag order request*, Page Six (Jan. 25, 2025), https://pagesix.com/2025/01/25/celebrity-news/justin-baldonis-lawyer-says-he-wont-be-bullied-into-silence-by-petrified-blake-lively-ryan-reynolds-after-gag-order-request/.

[6] *Justin Baldoni's Lawyer: Blake's A Scared Bully, And She Won't Silence Us . . . We Want The Truth Public!!!*, TMZ (Jan. 25, 2025), https://www.tmz.com/2025/01/25/justin-baldoni-not-bullied-into-silence-blakelively-lawyer-says/#continued.

[7] We are concerned that you are doing so in an attempt to bolster your own career and reputation at Ms. Lively' expense. Debusmann Jr., Bernd, *Who is Bryan Freedman, the lawyer said to represent Don Lemon and Tucker Carlson?*, BBC (Apr. 27, 2023) ("What I realized is that if I wanted to be an entertainment lawyer, I had to sue entertainers. No one would hire you until you built a reputation. . . . So I started to focus on going after entertainers, and defeating established entertainment litigators . . . in things that were high profile so that someone would write something about it.").

April 23, 2025
Page 8

those claims within 21 days, we will file the attached motion for sanctions, along with an affidavit and a memorandum of law.

          Respectfully,

/s/ Esra A. Hudson

**MANATT, PHELPS & PHILLIPS, LLP**
Esra A. Hudson (admitted *pro hac vice*)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com

/s/ Michael J. Gottlieb

**WILLKIE FARR & GALLAGHER LLP**
Michael J. Gottlieb
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com

cc:    Meryl Governski, Willkie, Farr & Gallagher, LLP
       Kristin Bender, Willkie, Farr & Gallagher, LLP
       Aaron Nathan, Willkie, Farr & Gallagher, LLP
       Stephanie Roeser, Manatt, Phelps & Phillips LLP
       Matthew F. Bruno, Manatt, Phelps & Phillips LLP

Enclosure.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                       Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>                       Defendants. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al.,<br><br>                       Plaintiffs,<br><br>v.<br><br>BLAKE LIVELY, et al.,<br><br>                       Defendants. | No. 25-cv-449 (LJL) (member case) |

### NOTICE OF CONSOLIDATED DEFENDANT LIVELY'S MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFF JENNIFER ABEL AND HER COUNSEL

      Consolidated Defendant Blake Lively hereby moves pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") for sanctions against Consolidated Plaintiff Jennifer Abel, Bryan Freedman, Mitchell Schuster, Liner Freedman Taitelman + Cooley, and Meister Seelig & Fein PLLC.  Ms. Lively respectfully submits that the Court should impose monetary sanctions against Abel and her counsel as a consequence of their filing the following seven causes of action against Ms. Lively:  (1) Civil Extortion (First Cause of Action); (2) Defamation (Second Cause of Action); (3) False Light Invasion of Privacy (Third Cause of Action); (4) Breach of the Implied Covenant of Good Faith and Fair Dealing (Fourth Cause of Action); (5) Intentional Interference with Contractual Relations (Fifth Cause of Action); (6) Intentional Interference with Prospective Economic Advantage (Sixth Cause of Action); and (7) Negligent Interference with Prospective

Economic Advantage (Seventh Cause of Action). Each of these causes of action are unwarranted by existing law, and lack any factual contentions of evidentiary support, in violation of Rule 11(b)(2) and (b)(3). Instead, these causes of action have been brought for the "improper purpose" of "harass[ing]" Ms. Lively, "caus[ing] unnecessary delay," and "needlessly increase[ing] the cost of litigation," in violation of Rule 11(b)(1).

For these reasons, and those set forth in more detail in the accompanying memorandum of law, the Court should impose monetary sanctions on Abel and her counsel to deter this kind of egregious willful misconduct in the future.

Respectfully submitted,

Dated: May 15, 2025

/s/ Esra A. Hudson

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
Meryl Governski (admitted *pro hac vice*)
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron Nathan
787 7th Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac* vice)
Stephanie A. Roeser (admitted *pro hac v*ice)
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

*Attorneys for Blake Lively*