# manatt

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

May 19, 2025

**VIA ECF**
The Honorable Lewis J. Liman
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 1620
New York, NY 10007

Re:   *Lively v. Wayfarer Studios LLC, et al.*, **No. 1:24-cv-10049-LJL [rel. No. 1:25-cv-00449]**

Dear Judge Liman:

Pursuant to Rules 1.C and 4.C of the Court's Individual Rules and Practices, Blake Lively respectfully submits this letter motion to compel Wayfarer Studios LLC ("Wayfarer Studios") and It Ends With Us Movie LLC ("IEWU," and together, "Wayfarer") to produce materials responsive to Ms. Lively's Fourth Set of Requests for Production (the "Requests"), which seek documents and witness recordings concerning Wayfarer's purported "neutral" workplace investigation into Ms. Lively's sexual harassment and retaliation claims (the "Investigation"). Wayfarer is withholding such documents and recordings, claiming (at least for now) attorney-client privilege and work product.

This so-called "Investigation" is a disingenuous charade. Wayfarer failed (although it was legally required) to investigate Ms. Lively's concerns when she first raised them in May 2023. Had it done so, Ms. Lively would have participated in such an investigation, and it would have substantiated the sexual harassment she suffered while on the set of the film *It Ends With Us* (the "Film"), which included (among other things) Mr. Baldoni's unsolicited discussions about his addiction to pornography and sex life, and his improvised intimacy scenes without Ms. Lively's consent. If her complaints were promptly investigated, as the law requires, she may also have been spared the retaliatory smear campaign by Wayfarer and its Co-Defendants. Instead, Wayfarer waited years, until late ***January 2025***, to initiate this Investigation. By that time, Wayfarer had already forcefully publicly denied Ms. Lively's allegations and sued her and several others for $400 million for making the very same allegations that are now the subject of this "neutral" investigation (*for a workplace that no longer exists*, the Film set).[1] What's more, by January, its counsel had repeatedly called Ms. Lively a liar in widely-circulated media interviews.

Under the guise of the Investigation's "neutrality," Wayfarer is conducting one-sided interviews of unsuspecting third parties—potentially tainting the ongoing litigation while reserving for itself the option of whether it will release its findings or bury them behind a cloak of attorney-client privilege. Meanwhile, the Investigation has dragged on for nearly five months, conveniently providing a pretextual basis for Wayfarer to refuse to produce otherwise patently discoverable information.

Particularly given Wayfarer's publicly stated, forgone conclusion that Ms. Lively's allegations are not true, Wayfarer is not permitted to wield the attorney-client privilege as a sword and a shield—invoking the privilege ***for now*** but insisting that it ***may*** waive it later at some unknown future date (presumably if, and only if, the Investigation yields a result Wayfarer likes, which it will no doubt publicly release with much fanfare). The motive is clear: Wayfarer hopes to conduct shadow fact

---

[1] During the parties' conferral, Wayfarer's counsel, Bryan Freedman, (incorrectly) asserted that its obligation to investigate or take corrective action was mooted by the Parties' execution of the Return to Production Protections document in January 2024. Setting aside the legal fallacy, Mr. Freedman's position is a death knell for any argument that this is a legitimate, neutral workplace investigation consistent with Wayfarer's legal obligations. According to Mr. Freedman, there is no such obligation.

Hon. Lewis J. Liman
May 19, 2025
Page 2

discovery under the pretext of an attorney investigation to prevent Ms. Lively from obtaining critical information until it is too late. Wayfarer's refusal to confirm its position on the attorney-client privilege is improper. Moreover, regardless of whether Wayfarer intends to rely on the Investigation at trial, its choice to initiate the Investigation in the middle of contentious litigation, years after the events at issue first arose, means that it must disclose the underlying materials now, during discovery.[2]

Since late January, the Investigators (Raines Feldman Littrell LLP and Adam Investigations Counsel) have contacted potential witnesses and, in doing so, represented that they are conducting a "neutral," "fact finding" investigation. **Exs. 1-2**. Upon discovering this, Ms. Lively immediately raised concerns directly to the Investigators and to Wayfarer about the Investigation proceeding in parallel with discovery in this action, its purported "neutrality" given Wayfarer's publicly stated position, and the *risk of confusing or tainting witnesses*, among other issues. **Ex. 3**. In March, given these concerns, Ms. Lively requested that, to ensure transparency, the Investigators make several disclosures to witnesses (including disclosing at the outset that they were retained by Wayfarer, which, alone, would control the Investigation Materials). **Ex. 4**. Both Wayfarer and its Investigators have refused to share any details about the Investigation (i.e., *who* has been contacted, *what* topics have been discussed, and *when* the Investigation will conclude). They have also refused to confirm what disclosures are being provided to witnesses or to share with Ms. Lively any materials created or obtained, *including their audio recordings of witness interviews*. On March 31, 2025, Ms. Lively served the Requests, seeking: (1) all documents and communications concerning the Investigation; (2) all notes, recordings, and interview memoranda; (3) documents identifying each person contacted or interviewed; and (4) all communications between the Investigators and any person concerning the Investigation (the "Investigation Materials").

On April 30, 2025, Wayfarer responded with boilerplate objections, invoking attorney-client privilege and work-product protection. *See* **Exs. 5-6**. While initially claiming they would produce "relevant, non-privileged documents" within their "possession, custody, or control," during the parties' conferral, Wayfarer's counsel represented that they did not "have" the Investigation Materials. When asked whether Wayfarer intends to assert the attorney-client privilege, counsel responded that they "assume so," but were not "sure" if Wayfarer would rely on the Investigation Materials at trial, since the Investigation is "ongoing." Meanwhile, the Investigators have refused to produce anything in response to subpoenas issued to them, absent a privilege waiver from Wayfarer or a court order. They have also failed to provide a corresponding privilege log (or to even confirm that they would do so).

The Investigation Materials are highly relevant, are necessary for Ms. Lively and the Court to ensure that witness engagement has been proper, and have been put at issue by Wayfarer. They must be produced. <u>First</u>, Wayfarer is not permitted to assert blanket objections and categorically withhold documents on attorney-client privilege or work-product grounds without identifying the specific materials being withheld and establishing a factual basis for the asserted protection. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 512287, at *5 (S.D.N.Y. Sept. 9, 1996); *see also Williams v. Fed. Gov't of Nigeria*, 2024 WL 5315307, at *2 (S.D.N.Y. Dec. 2, 2024) (Liman, J.).[3]

---

[2] Ms. Lively certifies that the Parties conferred on the issues raised in this letter pursuant to Individual Rule 4.C. To date, Defendants have not produced any documents in this case, while Ms. Lively has produced thousands of pages.

[3] Wayfarer's other objections, including burden and privacy similarly fail. Wayfarer's vague references to third-party privacy or reputational concerns do not justify withholding responsive materials, particularly where a protective order is in place. *See Block v. Quest Diagnostics, Inc.*, 2024 WL 5411306, at *9 (C.D. Cal. Nov. 13, 2024) (rejecting privacy objection given protective order); *Sasikumar v. Brooklyn Hosp. Ctr.*, 2011 WL 1642585, at *2 n.3 (E.D.N.Y. May 2, 2011) (same). Finally, Wayfarer appears to be withholding documents based on an "investigators privilege," which does not exist.

Hon. Lewis J. Liman
May 19, 2025
Page 3

*Second,* Wayfarer has not come close to meeting its burden to show that the attorney-client privilege or work-product protection applies to the Investigation Materials. Wayfarer has failed to explain why or how witness interview notes, interview recordings, or communications with third party witnesses are privileged. And it has not even confirmed that the Investigators are rendering legal advice, rather than simply conducting a "neutral" fact-finding investigation, as they have repeatedly suggested. *Robinson v. De Niro*, 2022 WL 704922, at *10 (S.D.N.Y. Mar. 9, 2022). Wayfarer cannot manufacture protection by re-routing an otherwise discoverable factual inquiry through attorneys. *See Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 109 (S.D.N.Y. 2007).

*Third*, Wayfarer waived any applicable attorney-client privilege or work-product protection by, among other things, placing the adequacy of the Investigation at issue vis-à-vis its thirteenth affirmative defense (that it "appropriately, completely, and fully performed and discharged" its legal obligations). *See* ECF Nos. 148, ¶ 495; 149 ¶ 495. *See Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 462 (S.D.N.Y. 2019); *Worthington v. Endee*, 177 F.R.D. 113, 117 (N.D.N.Y. 1998); *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1103 (D.N.J. 1996); *see also Wellpoint Health Networks, Inc. v. Superior Ct.*, 59 Cal. App. 4th 110, 126-29 (1997) ("If a defendant hopes to prevail by showing it investigated and took action appropriate to the findings… it cannot stand on the attorney-client privilege."). The adequacy of Wayfarer's response to Ms. Lively's workplace sexual harassment complaint is a central issue in this case, and is the entire basis of her sixth cause of action. ECF No. 84, p. 46-48, 127-125; FAC ¶¶ 131-139, 401-47; and Ex. E.[4] And the Investigation Materials are unquestionably within Wayfarer's possession, custody, or control—Wayfarer hired the Investigators and its relationship with them gives Wayfarer the legal right to access the Investigation file. *See Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *5 (S.D.N.Y. May 23, 2016) (collecting cases).

*Finally*, allowing Wayfarer to withhold the materials on the basis that the Investigation is "ongoing" or "privileged," while reserving the right to produce later (if deemed favorable) is highly prejudicial to Ms. Lively given the posture of this case. It deprives her of the ability to test the scope, credibility, or timing of the Investigation, much less obtain the fact witness information the Investigators have been collecting over the last five months, which Wayfarer *may use now*. Wayfarer should not be allowed to conceal critical evidence during discovery, only to weaponize it later at trial. *See McGowan v. JPMorgan Chase Bank*, N.A., 2020 WL 1974109, at *8 (S.D.N.Y. Apr. 24, 2020) (requiring defendant "to state now whether it intends to offer evidence of the nature of the investigation as any part of the defense of this action." (citing *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 522 (S.D.N.Y. 2002)). Fact discovery closes August 14, 2025, with substantial completion of document productions due by July 1, 2025, and as such, the time for Wayfarer to produce documents is now. *See* ECF No. 58.

For the foregoing reasons, Ms. Lively respectfully requests that the Court compel Wayfarer to produce all responsive documents immediately, including all witness recordings.

---

[4] Among other things, Ms. Lively claims that Wayfarer failed to conduct a *prompt* or adequate investigation into claims of sexual harassment during the making of the Film—a core obligation under both Title VII and California's Fair Employment and Housing Act ("FEHA"). *See, e.g.*, *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001).

Hon. Lewis J. Liman
May 19, 2025
Page 4

Respectfully submitted,

/s/ Esra A. Hudson

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP<br>Michael J. Gottlieb<br>Kristin E. Bender<br>Meryl Governski (admitted *pro hac vice*)<br>1875 K Street NW<br>Washington, DC 20006<br>(202) 303-1000<br>mgottlieb@willkie.com<br>kbender@willkie.com<br>mgovernski@willkie.com<br><br>Aaron E. Nathan<br>787 7th Avenue<br>New York, NY 10019<br>(212) 728-8000<br>anathan@willkie.com | MANATT, PHELPS & PHILLIPS, LLP<br>Esra A. Hudson (admitted *pro hac* vice)<br>Stephanie A. Roeser (admitted *pro hac v*ice)<br>2049 Century Park East, Suite 1700<br>Los Angeles, CA 90067<br>(310) 312-4000<br>ehudson@manatt.com<br>sroeser@manatt.com<br><br>Matthew F. Bruno<br>7 Times Sq.<br>New York, NY 10036<br>(212) 790-4500<br>mbruno@manatt.com |

*Attorneys for Blake Lively*