# EXHIBIT 1

Blake Lively Letter,

dated February 14, 2025

# manatt

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

February 14, 2025

**VIA ELECTRONIC MAIL**



Raines Feldman Littrell LLP

Adam Investigations Counsel

Re:   Blake Lively adv. Wayfarer Studios, LLC

Dear Ms. ▮ and Ms. ▮ :

    On behalf of our client Blake Lively, I write to respond to your letter of January 31, 2025 and to follow up on our conversation of February 12, 2025. In your letter, you state that Wayfarer Studios, LLC ("Wayfarer") has retained your firm "to conduct a neutral, third-party investigation of Blake Lively's complaint for sexual harassment, retaliation, failure to investigate, prevent and/or remedy harassment, and aiding and abetting harassment." You ask to interview Ms. Lively to fulfill Wayfarer's legal "mandate" to investigate.

    With respect, we find this years-too-late request baffling and must decline it. As you note in your letter and confirmed on our call, employers have a legal mandate to investigate complaints of harassment. *See Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004) ("the duty to investigate is an affirmative obligation"). A failure to investigate is itself unlawful. *See* Cal. Gov. Code § 12940(k); *Alaniz v. Robert M. Peppercorn, M.D.*, Inc., No. 205CV2576MCE-DAD, 2007 WL 1299804, at *8 (E.D. Cal. May 3, 2007) ("California courts have recognized a separate cause of action against an employer for failure to investigate . . . under section 12940(k)").

    However, the law mandates not just any investigation, but one that is prompt, thorough, and effective. Wayfarer's proposed investigation is clearly none of these.

February 14, 2025
Page 2

*First*, the fact that your firm has only been retained now—nearly *two years* after Ms. Lively first raised her harassment complaints in May 2023—makes a mockery of the law's requirement of a "prompt" investigation. *See Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001) ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified," finding promptness where investigation initiated within three days of the complaint).

As the EEOC has noted, even a two-month delay in investigating fails to meet the statutory requirement of a "prompt" investigation. *See EEOC Enforcement Guidance on Harassment in the Workplace*, § IV(C)(3)(ii)(b)(a)(2004) ("an employer that waits two months to open an investigation, absent any mitigating facts, very likely has not acted promptly"). When we spoke, you had no explanation for Wayfarer's nearly two-year delay, and indeed you stated that this delay was one of the issues you were going to investigate. The fact that Wayfarer has only now decided to investigate Ms. Lively's claims irrefutably proves it has violated its obligations under California, federal, and other applicable law to take prompt action when presented with a harassment complaint.

*Second*, an investigation must be thorough. *See id.* (an investigation must be "sufficiently thorough to arrive at a reasonably fair estimate of truth" and "seek information about the conduct from all parties involved"). As you know, the misconduct Wayfarer now claims it wants to "investigate" is the subject of multiple federal lawsuits involving multiple parties and dozens of witnesses nationwide, very few of whom are current Wayfarer employees. Any thorough investigation must entail speaking to all of these witnesses and reviewing any relevant documents and information they possess. However, when we spoke, you acknowledged you have no authority to compel anyone to speak to you and that you would be relying on Wayfarer, led by the very people who are the accused parties, to provide you documents and to set the "scope" and budget of the investigation.

Further, Ms. Lively alleged that the retaliation campaign perpetrated by Wayfarer and others against her was designed to be "untraceable." But you could not explain how you would be able to investigate these allegations given the limits placed on your authority, including a lack of subpoena or other discovery power. Needless to say, an investigation that relies on the accused to set its scope and budget, and provide self-serving documents and witnesses is not one designed to get to the truth.

*Third*, an investigation must be effective, *i.e.*, designed to lead to remedial action to stop the harassment. *See Bradley v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1612, 1631 (Cal. Ct. App. 2008). You told me your role would be one of "fact gathering" and that you are not charged by Wayfarer to make any recommendations or suggest corrective action. As a matter of law, this is not an "effective" investigation. *See id.* (employer's investigation was inadequate where it was merely "a fact-finding undertaking" with "[n]o component . . . designed to protect [the complainant] from harassment").

On our call, you acknowledged that "if these incidents occurred as alleged there are significant problems within the organization that they will have to contend with." We of course agree. But rather than recommend remedial action, you told me that any report you might issue at the conclusion of your

manatt

February 14, 2025
Page 3

investigation (which could be oral or written, at Wayfarer's discretion) would leave it up to Wayfarer (or its lawyers) to decide what to do. Further, you told me that it would be up to Wayfarer whether to release any report or to bury it under a claim of attorney-client privilege.

Wayfarer and its counsel[1] have spent the past few months in the press calling Ms. Lively a liar; stating there was never any retaliation; and claiming that she has invented her claims of sexual harassment out of a malicious intent to harm them. Indeed, just a few weeks before you sent your letter, Wayfarer and its principals filed a nine-figure lawsuit against Ms. Lively and her husband asserting that the very claims Wayfarer now would have you investigate are false, defamatory, even extortionate. Moreover, from the moment they understood that Ms. Lively complained, Ms. Lively has alleged that Wayfarer and its principals have been on a stated mission to "bury" and "destroy" her and those who defended her.

Against this backdrop, it is clear that Wayfarer's belated investigation is a sham designed not to get at the truth, but to obscure it. Perhaps if Wayfarer had complied with the law and retained your firm to investigate Ms. Lively's claims when she first raised them in May 2023, she would have agreed to participate and the parties would not be in litigation today.

Unfortunately, Wayfarer ignored its obligation and has repeatedly doubled, tripled and quadrupled down on its conduct. Accordingly, Ms. Lively declines your firm's request for an interview, and she will instead continue to rely on the legal process to resolve her claims.

Very truly yours,

Esra A. Hudson

cc.   Stephanie Roeser, Manatt, Phelps & Phillips, LLP
      Michael Gottlieb, Willkie, Farr & Gallagher, LLP
      Kristin Bender, Willkie, Farr & Gallagher, LLP

---

[1] On the issue of Wayfarer's counsel, you stated that any represented party would be permitted to have counsel present during their interviews with you. We note that all of the material Wayfarer party witnesses are represented by Bryan Freedman, who has repeatedly publicly attacked Ms. Lively as a liar, including but not limited to calling her "heinously selfish," and has scoffed at her sexual harassment claims, saying they "exploit actual victims of real harassment" and are "completely false, outrageous and intentionally salacious." No interview in which Mr. Freedman is present could be "neutral."