## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, | |
| Plaintiff, | |
| v. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al., | |
| Defendants. | |
| WAYFARER STUDIOS LLC, et al., | |
| Plaintiffs, | |
| v. | No. 25-cv-449 (LJL) (member case) |
| BLAKE LIVELY, et al., | |
| Defendants. | |

### MEMORANDUM OF LAW IN SUPPORT OF RYAN REYNOLDS'S MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS STEVE SAROWITZ, JAMEY HEATH, MELISSA NATHAN, JENNIFER ABEL, IT ENDS WITH US MOVIE LLC, AND THEIR COUNSEL

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Ryan Reynolds*

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ................................................................................................................4

LEGAL STANDARD .........................................................................................................6

ARGUMENT .....................................................................................................................7

I.      The Civil Extortion Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel and
        IEWU LLC against Mr. Reynolds are Legally Unreasonable and Factually
        Baseless..............................................................................................................7

II.     The Defamation Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr.
        Heath, and IEWU LLC against Mr. Reynolds are Legally Unreasonable and
        Factually Baseless.............................................................................................11

III.    The Interference Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr.
        Heath, and IEWU LLC against Mr. Reynolds are Legally Unreasonable and
        Factually Baseless.............................................................................................14

IV.     The Rule 11 Plaintiffs' Baseless Claims Were Brought for the Improper Purpose
        of Harassing Mr. Reynolds, Causing Delay and Increasing the Cost of Litigation.
        ..........................................................................................................................16

V.      The Court Should Impose Sanctions on Plaintiffs' Counsel, Mr. Sarowitz, Ms.
        Nathan, Ms. Abel, Mr. Heath, and IEWU LLC..................................................19

    1.  The Court should order Plaintiffs' Counsel and the Rule 11 Plaintiffs liable for
        reasonable attorneys' fees and costs to Mr. Reynolds. .........................................19

    2.  The Court should order Mr. Freedman, Mr. Schuster, Liner Freedman, and Meister
        Seelig jointly and severally liable to Mr. Reynolds for all imposed sanctions......20

    3.  The Rule 11 Plaintiffs should be held jointly and severally liable with Plaintiffs'
        Counsel for all imposed sanctions. .......................................................................21

    4.  Sanctions imposed upon Plaintiffs' Counsel and the Rule 11 Plaintiffs should be
        substantial to sufficiently deter similar abhorrent conduct in the future. .............22

    5.  The Court should impose additional sanctions, including a penalty or reprimand on
        Plaintiffs' Counsel. .............................................................................................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
  2022 WL 4234552 (S.D.N.Y. Sept. 14, 2022) (Liman, J.)...................................................6, 7

*Ammann v. Sharestates, Inc.*,
  2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024).........................................................................20

*An v. Despins*,
  2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023).....................................................................20, 21

*Cameau v. Nat'l Recovery Agency, Inc.*,
  2018 WL 4522104 (E.D.N.Y. Aug. 6, 2018), *report and recommendation
  adopted*, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018)...............................................19, 20, 21

*Camp Summit of Summitville, Inc. v. Visinski*,
  2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)..........................................................................14

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
  2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) .......................................................................9, 16

*Citicorp Int'l Trading Co. v. W. Oil & Ref. Co.*,
  1991 WL 4502 (S.D.N.Y. Jan. 16, 1991) ...............................................................................15

*Coeur, Inc. v. Wygal*,
  2021 WL 4225657 (W.D.N.Y. Sept. 16, 2021) .......................................................................11

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith*,
  2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003).......................................................................25

*EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*,
  2021 WL 964943 (S.D.N.Y. Mar. 15, 2021) (Liman, J.), *aff'd*, 2022 WL
  3904541 (2d Cir. Aug. 31, 2022).............................................................................................10

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
  2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .........................................................................13

*Feinberg v. Katz*,
  2002 WL 1751135 (S.D.N.Y. July 26, 2002) ..........................................................................10

*Galonsky v. Williams*,
  1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ...........................................................................18

*Goldman v. Barrett*,
  2019 WL 4572725 (S.D.N.Y. Sept. 20, 2019).........................................................................19

*Goldman v. Barrett*,
    825 F. App'x 35 (2d Cir. 2020) ..................................................................7, 9

*Gong v. Sarnoff*,
    2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023) .......................................... *passim*

*Jones v. Niagara Frontier Transp. Auth. (NFTA)*,
    836 F.2d 731 (2d Cir. 1987)........................................................................10

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd sub nom.* 13 F.3d 1229 (2d Cir. 1997) .................9, 16

*Kensington Intern. Ltd. v. Republic of Congo*,
    2007 WL 2456993 (S.D.N.Y. Aug. 24, 2007)........................................................24

*Kyros L. P.C. v. World Wrestling Ent., Inc.*,
    78 F.4th 532 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822, 218 L. Ed. 2d 31
    (2024) ..........................................................................................23

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993)............................................................................7

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023)...........................................................20, 25

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*,
    638 F. Supp. 3d 333 (S.D.N.Y. 2022)..............................................................24

*Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*,
    114 F.R.D. 684 (S.D.N.Y. 1987) ...................................................................15

*O'Malley v. New York City Transit Authority*,
    896 F.2d 704 (2d Cir. 1990)........................................................................19

*Polo Fashions, Inc. v. Fashion Assoc., Inc.*,
    1986 WL 1176 (S.D.N.Y. Jan 22, 1986) ...........................................................16

*Refac Int'l, Ltd. v. Hitachi Ltd.*,
    141 F.R.D. 281 (C.D. Cal. 1991)....................................................................23

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014).................................................................15

*S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*,
    2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) .......................................................18

*Sovereign Asset Mgmt., Inc. v. Health Net Life Ins. Co.*,
    2019 WL 4640397 (C.D. Cal. Sept. 10, 2019) ....................................................15

*Stargaze Mgmt., LLC v. George Smith Partners, Inc.*,
2015 WL 12656918 (C.D. Cal. Oct. 9, 2015) ..........................................................6

*Taupita Inv., Ltd. v. Benny Ping Wing Leung*,
2017 WL 3600422 (S.D.N.Y. Aug. 17, 2017) .......................................................15

*Trump v. Clinton*,
653 F. Supp. 3d 1198 (S.D. Fla. 2023), *appeal dismissed*, 2023 WL 3477967
(11th Cir. Apr. 6, 2023) ........................................................................................23

*Trustees of Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds
v. Elite Terrazzo Flooring, Inc.*,
2022 WL 2466847 (E.D.N.Y. Apr. 14, 2022) ......................................................20

*Universitas Educ., LLC v. Nova Grp., Inc.*,
2016 WL 2944646 (S.D.N.Y. Mar. 31, 2016), *report and recommendation
adopted*, 2016 WL 2889054 (S.D.N.Y. May 16, 2016).........................................21

*Watkins v. Smith*,
2013 WL 655085 (S.D.N.Y. Feb. 22, 2013), *aff'd*, 561 F. App'x 46 (2d Cir.
2014) ......................................................................................................................9

*Weddington v. Sentry Indus., Inc.*,
2020 WL 264431 (S.D.N.Y. Jan. 17, 2020) .................................................24, 25

**Other Authorities**

Fed. R. Civ. P. 11(b) ...........................................................................................20, 21

Fed. R. Civ. P. 11(b)(2).......................................................................................13, 21

Fed. R. Civ. P. 11(c)(2).............................................................................................5

Defendant Ryan Reynolds brings this Motion for Sanctions ("Motion"), pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), requesting the Court to impose monetary sanctions against Plaintiffs Steve Sarowitz, Jamey Heath, Melissa Nathan, Jennifer Abel, and It Ends With Us Movie LLC ("IEWU LLC," together with Sarowitz, Heath, Nathan, and Abel, the "Rule 11 Plaintiffs"), their attorneys Bryan Freedman and Mitchell Schuster, and their attorneys' respective law firms Liner Freedman Taitelman + Cooley LLP ("Liner Freedman") and Meister Seelig & Fein PLLC ("Meister Seelig," together with Mr. Freedman, Mr. Schuster, and Liner Freedman, "Counsel" or "Plaintiffs' Counsel").

## INTRODUCTION

Counsel for the Wayfarer Parties and five of their clients—Steve Sarowitz, Jamey Heath, Melissa Nathan, Jennifer Abel, and It Ends With Us Movie LLC—filed an Amended Complaint (ECF No. 50, "FAC") asserting claims for civil extortion, defamation, and tortious interference against Mr. Reynolds that *do not and cannot exist*. Mr. Reynolds provided the Rule 11 Plaintiffs and their counsel an opportunity to save face, explaining these claims' glaring and fundamental defects and urging that they be withdrawn more than 21 days ago. Unfortunately, the Rule 11 Plaintiffs and their counsel unequivocally refused to do so, offering no response on these defects except to argue that these issues are appropriately resolved by motion to dismiss and may later be supported by discovery. But these claims' fundamental failings are not about the parties' dispute as to the legal arguments relating to their claims, or the facts, or even that all of their claims are weak and meritless (which, they are). Rather, it is about the fact that Mr. Sarowitz, Mr. Heath, Ms. Nathan, Ms. Abel, and IEWU LLC, assisted by their attorneys, have knowingly brought claims for civil extortion, defamation, and tortious interference without any possible non-frivolous basis for doing so. It is perhaps unsurprising that the Rule 11 Plaintiffs have resorted to patently baseless claims against Mr. Reynolds—after all, at least one of the Rule 11 Plaintiffs (Mr. Sarowitz)

1

pledged to spend $100 million to ruin Mr. Reynolds and his family, and Mr. Sarowitz's counsel declared his intent to sue Mr. Reynolds' wife, Blake Lively, "into oblivion." Even a cursory review of the claims that the Rule 11 Plaintiffs refuse to abandon reveals their true (and improper) purpose: to harass, annoy, and punish Mr. Reynolds while whipping up a public spectacle designed to distract from the emptiness of their claims against him. In sum, it is plain that Mr. Sarowitz, Ms. Nathan, Mr. Heath, Ms. Abel, and IEWU LLC, and their counsel, have violated Rule 11.

Federal Rule of Civil Procedure 11 imposes a duty on counsel to ensure any pleading or motion presented to the Court is not "frivolous, legally unreasonable, or factually without foundation," and "is not being presented for any improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Despite this well-known standard, in their FAC, the Rule 11 Plaintiffs asserted claims for civil extortion against Mr. Reynolds even though they allege and admit that the only purported "demand" Mr. Reynolds made was with respect to "***Wayfarer, Heath, and Baldoni.***" By the Rule 11 Plaintiffs' own recitation of the facts, Mr. Reynolds never made any threat or demand as to Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC—indeed, the FAC does not even suggest Mr. Reynolds ever knew these parties existed, let alone communicated with or directed any extortive message toward them.

The Rule 11 Plaintiffs' defamation claims against Mr. Reynolds are likewise frivolous. The Rule 11 Plaintiffs are only able to identify two statements that they can even claim Mr. Reynolds made, but they concede that each of those statements are exclusively about ***Baldoni***. To remedy this obvious shortcoming, the Rule 11 Plaintiffs rest their entire defamation claim against Mr. Reynolds on unidentified statements that they imagine and theorize—but certainly do not ***allege based on any factual allegations***—that he might have made to third parties and The New York Times. But beyond a bald assertion that Mr. Reynolds had a direct role in such conduct, ECF No.

160 at 6, the Rule 11 Plaintiffs do not actually make a specific factual allegation about what Mr. Reynolds did or said, nor do they even identify a *theory* (though that alone would be insufficient) of how Mr. Reynolds defamed *any* of the Rule 11 Plaintiffs individually. Their refusal to withdraw their baseless claims, including with respect to defamation, Ex. F, confirms that the entirety of their claims rely upon a hope and prayer that discovery will somehow transform their frivolous claims into to non-frivolous ones. *See* Ex. F. But sue first, investigate later, is the precise opposite of what Rule 11 requires.

The same is true for the Rule 11 Plaintiffs' tortious interference claims, in which the Rule 11 Plaintiffs assert that Mr. Reynolds interfered with their contracts or business relationships. According to the Rule 11 Plaintiffs' own pleadings and arguments, the only contract or business relationship ostensibly interfered with was the one between ***Wayfarer and Baldoni***, on the one hand, and ***William Morris Endeavor*** ("WME") on the other. The FAC contains no allegation, nor could it, that Mr. Reynolds took any action to harm a contract or business relationship enjoyed by the Rule 11 Plaintiffs, as would be necessary to establish even the most basic elements of these claims.

The Rule 11 Plaintiffs and their counsel did not lodge frivolous claims against Mr. Reynolds by accident. They have had nearly six months to consider and investigate these claims, and have been on notice of the deficiency of their claims for much of that time. The Rule 11 Plaintiffs' lawyer, Mr. Freedman, has used the press to attack Mr. Reynolds at every turn consistent with his apparent approach to lawyering, which he has described as ensuring that those he views as opponents of his clients will "get what you get."[1] Indeed, as demonstrated in Ms. Lively's

---

[1] *See* Gary Baum, *The Street-Fighting Lawyer Who's Become Hollywood's Dark Knight*, The Hollywood Reporter (June 12, 2024), https://www.hollywoodreporter.com/business/business-news/entertainment-lawyer-bryan-freedman-hollywood-dark-knight-1235919993/.

Amended Complaint in this matter, Mr. Freedman has personally participated in the retaliation campaign against her, including personally delivering numerous defamatory statements about Ms. Lively and her family. *See* ECF No. 223 at 14–16. The Rule 11 Plaintiffs' refusal to withdraw or otherwise address these baseless claims raised during the Rule 11 safe-harbor period makes plain that they and their counsel are acting with the "improper purpose" of harassing Mr. Reynolds, causing unnecessary delay, and increasing the cost of litigation.

In light of these substantial Rule 11 violations, the Court should impose sanctions. The first and most appropriate sanction is an award of attorneys' fees incurred by Mr. Reynolds in connection with his defense of the frivolous claims, as well as in the preparation of the instant Motion. Pursuant to Rule 11(c)(1), this sanction should be imposed against Plaintiffs' Counsel and the Rule 11 Plaintiffs. Further, in light of the pattern of improper and harassing behavior in which Mr. Freedman has already engaged in this matter, ECF Nos. 218, 220, the Court may also wish to consider whether additional sanctions are appropriate as to Plaintiffs' Counsel.

## BACKGROUND

On January 31, 2025, barely two weeks after filing an initial Complaint and eleven weeks before the deadline to file a motion to amend (ECF No. 58), Plaintiffs Justin Baldoni, Wayfarer Studios, LLC, and the Rule 11 Plaintiffs (together, the "Wayfarer Parties") filed a First Amended Complaint asserting nine causes of action against Blake Lively, Ryan Reynolds, Leslie Sloane, Vision PR, Inc., and The New York Times Company. FAC at 211–22. The FAC also attached, but did not sufficiently incorporate, a 168-page "timeline" telling the Wayfarer Parties' version of events through a lengthy narrative. ECF No. 50-1. Bryan Freedman and Mitchell Schuster signed the FAC on behalf of their respective firms, Liner Freedman and Meister Seelig. FAC at 224.

The FAC asserted six causes of action against Mr. Reynolds. Every Wayfarer Party asserted a claim for (1) Civil Extortion (FAC ¶¶ 316–323) ("Extortion Claims"); (2) Defamation

4

(*id.* ¶¶ 324–31) ("Defamation Claims"); (3) Intentional Interference with Contractual Relations (*id.* ¶¶ 347–55); (4) Intentional Interference with Prospective Economic Advantage (*id.* ¶¶ 356–65); and (5) Negligent Interference with Prospective Economic Advantage (*id.* ¶¶ 366–74) (together with (3) and (4), the "Interference Claims"). Mr. Baldoni, Mr. Heath, Ms. Nathan, Ms. Abel, and Mr. Sarowitz also brought a claim for False Light Invasion of Privacy (*id.* ¶¶ 332–39). With one exception—the False Light claim—each cause of action was asserted by *all* of the Wayfarer Parties, including the Rule 11 Plaintiffs.

On March 18, 2025, Mr. Reynolds filed a motion to dismiss the FAC as to the six claims brought against him. ECF No. 133 ("Reynolds MTD"). On April 1, 2025, the Wayfarer Parties jointly filed their Opposition to the Reynolds MTD. ECF No. 160 ("Opposition" or "Opp.").

On April 22, 2025, pursuant to Rule 11(c), Mr. Reynolds served each of the Rule 11 Plaintiffs and Plaintiffs' Counsel with letters ("Safe Harbor Letters") demanding, among other things, that Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC withdraw their Civil Extortion Claims, and that the Rule 11 Plaintiffs withdraw their Defamation and Interference Claims.[2] The Safe Harbor Letters indicated that if the Rule 11 Plaintiffs, through their Counsel, failed to withdraw these claims within the 21-day safe-harbor period prescribed by Rule 11, Mr. Reynolds would seek sanctions from the Court. *See* Exs. A-E; Fed. R. Civ. P. 11(c)(2).

On May 13, 2025—the final day of the safe-harbor period—a partner from Liner Freedman, who has not appeared in this action, issued a letter to the undersigned counsel on behalf

---

[2] The Safe Harbor Letters are attached hereto as Exhibits A through E. The Safe Harbor Letters, which were served on the Rule 11 Plaintiffs and their Counsel via email, included demands that additional baseless claims also be withdrawn. *See* Exs. A-E. For the purpose of this Motion, Mr. Reynolds limits his request for sanctions to only the most egregious examples—the Extortion, Defamation, and Inference Claims. Mr. Reynolds also does not here seek Rule 11 sanctions with respect to any theory of derivative liability in connection with alleged defamation conspiracy, although he has argued that such a theory must be dismissed as deficiently pleaded under Rule 12(b)(6). *See* ECF Nos. 132-33, 166. This filing primarily references New York federal case law in light of Mr. Reynolds's position that New York law applies to the claims brought against him. *See* Reynolds MTD at 5–6.

of the Rule 11 Plaintiffs (Ex. F, "Letter Response"). In their Letter Response, the Rule 11 Plaintiffs set forth no facts in support of their frivolous claims; instead, they assert that "group pleading" is the alleged "pleading defect" in dispute and that "if the Court deems this definitional issue to be a pleading defect, it is easily curable by amendment," without any insight into how they could cure such a deficiency besides withdrawing the claims. Letter Response at 2. The Letter Response claimed that the Rule 11 Plaintiffs have a "good-faith belief" that further discovery will "uncover additional evidence to support the claims of all Wayfarer Plaintiffs"—while failing to state what that evidence could possibly be or why this case would uniquely allow for frivolous claims to be brought on a groundless prospect that they could later be legitimized—and therefore claimed that Mr. Reynolds's Safe Harbor Letter and this Motion are "premature." *Id*.

## LEGAL STANDARD

"Rule 11 requires an attorney to certify that (1) a pleading or motion 'is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;' (2) 'the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;' and (3) 'the factual contentions have evidentiary support or, if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Gong v. Sarnoff*, 2023 WL 5372473, at *7 (S.D.N.Y. Aug. 22, 2023) (quoting Fed. R. Civ. P. 11(b)). "The Supreme Court has stated that 'the central purpose of Rule 11 is to deter baseless filings in district court' and thus 'streamline the administration and procedure of the federal courts.'" *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *3 (S.D.N.Y. Sept. 14, 2022) (Liman, J.) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)); *see also Stargaze Mgmt., LLC v. George Smith Partners, Inc.*, 2015 WL 12656918, at *1 (C.D. Cal. Oct. 9, 2015) (citation omitted).

"[A]n attorney may not transcend the facts of a given case," and counsel may not "concoct[] 'facts' that [are] not well grounded." *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993). "An attorney who files a paper that no competent attorney could believe, after reasonable inquiry, is well-grounded in fact violates Rule 11." *Goldman v. Barrett*, 825 F. App'x 35, 37 (2d Cir. 2020) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)). "[T]he standard for triggering [sanctions] under Rule 11 is objective reasonableness," and is "not based on the subjective beliefs of the person making the statement." *Gong*, 2023 WL 5372473, at *8 (cleaned up). "Thus, an attorney files a pleading or motion in violation of Rule 11 if it is 'frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith.'" *Id.* (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002)). The Rule is "implicated where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless." *(RC) 2 Pharma Connect*, 2022 WL 4234552, at *3 (quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013) (cleaned up)).

## ARGUMENT

### I.  The Civil Extortion Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel and IEWU LLC against Mr. Reynolds are Legally Unreasonable and Factually Baseless.

The Extortion Claims brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC against Mr. Reynolds have no factual or legal basis, and the Wayfarer Parties have not even attempted to assert one. The Extortion Claims are not supported by a single allegation that Mr. Reynolds took *any* action with respect to Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC, much less that he threatened or demanded anything from them. When these defects were raised in the Reynolds MTD, the Wayfarer Parties had no response. In their Letter Response, the Rule 11 Plaintiffs still provided no tangible facts to support their claims and instead, incredibly, suggested

that they would uncover the facts regarding the fictional extortion against these parties in discovery. Letter Response at 2. It is difficult to conceive a more blatant example of utter frivolity than the notion that one would need to conduct discovery to even articulate how one was extorted.

The Extortion Claims and the related requests for punitive and exemplary damages assert that Mr. Reynolds "made threats to the Wayfarer Parties" that "included demands that money, property, services, or other sources of value be conferred upon [Mr. Reynolds] without consideration or contractual entitlement thereto." FAC ¶¶ 317–18; Opp. at 17 (quoting *Khadavi v. Stalgi, Inc.*, 2012 WL 929099, at *6 (C.D. Cal. 2021) (recognizing that claim for extortion requires establishing "the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear")). In support of these claims, the FAC alleges a single incident, which does not involve any threats or demands directed toward Mr. Sarowitz, Ms. Nathan, Ms. Abel, and IEWU LLC:

> On August 12, 2024, . . . [t]he [talent agency] executive communicated the demand from Lively and Reynolds that ***Wayfarer, Heath, and Baldoni*** make a public apology ***that day*** and that, if they failed to do so, the "gloves would come off."
>
> [. . .]
>
> The next day, on August 13, 2024, Abel and Heath had another call with talent agency executives. During this call, one executive told Heath that the agency had spoken to Lively and Reynolds by phone . . . [and] they told Heath that Lively and Reynolds had demanded that ***Wayfarer*** put out a statement "accepting blame" for the problems during filming, with an express threat that they themselves would attack ***Wayfarer*** in the press if ***Wayfarer*** refused.
>
> The executives told Heath and Abel that Reynolds and Lively dictated a statement that they required ***Wayfarer*** to put out, calling *It Ends With Us* a "troubled" production and forcing ***Wayfarer*** to take "accountability" for the problems in the production. ***Wayfarer, Baldoni, and Heath*** would have to acknowledge and own their "mistakes" and "own" all negativity aimed at Reynolds and Lively.

FAC ¶¶ 250–54 (emphasis added); *see also* Opp. at 18 (citing FAC ¶¶ 250–56). Simply put, the only threats or demands the FAC (wrongly) alleges Mr. Reynolds made were to Mr. Baldoni, Wayfarer, and Mr. Heath—and none of the others. FAC ¶¶ 250–56.

To be clear, Mr. Reynolds's purported demand that Mr. Baldoni, Mr. Heath, and Wayfarer issue an apology is itself not extortion and is subject to dismissal pursuant to the Reynolds MTD. But it has ***nothing to do with*** Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC, who sued him for extortion anyway. Confirming this, neither the Wayfarer Parties' exhaustive 168-page Exhibit A "timeline" nor their opposition to the Reynolds MTD assert *any* factual basis that any of them possess, ***nor could ever reasonably possess***, a civil extortion claim against Mr. Reynolds. *See Watkins v. Smith*, 2013 WL 655085, at *3–4, *11 (S.D.N.Y. Feb. 22, 2013), *aff'd*, 561 F. App'x 46 (2d Cir. 2014) (granting sanctions against plaintiff's counsel for decision to sue defendants "who had no involvement in the underlying events that gave rise to the plaintiff's suit"); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd sub nom.* 13 F.3d 1229 (2d Cir. 1997) ("As even a cursory examination of the requirements for bringing suit . . . would have revealed the impossibility of the claim's success, Plaintiff's filing . . . constitutes a Rule 11 violation."); *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, 2023 WL 2346337, at *5–8 (S.D.N.Y. Mar. 3, 2023) (sanctions appropriate where plaintiff "failed to identify a single statement or action by the Defendants on which Plaintiff could have reasonably relied" for claim).

"[N]o competent attorney could believe, after reasonable inquiry," that these allegations support the Extortion Claims brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, or IEWU LLC. *See Goldman*, 825 F. App'x at 37. Ms. Abel and Ms. Nathan are public relations professionals who are not alleged to be, nor are they, owners, executives, or employees of Wayfarer and had no role

in connection with the production of *It Ends With Us* (the "Film"). As to Mr. Sarowitz, the FAC includes no allegations regarding his relationship to Mr. Baldoni, Mr. Heath, or Wayfarer,[3] but even if it did, no such relationship alone could provide a basis for the Extortion Claim. *See Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987) (plaintiff president and sole shareholder of corporation lacked standing to allege claims involving injuries to corporation because "[t]here were no allegations that defendants had taken any actions against [plaintiff] in his individual capacity."); *Feinberg v. Katz*, 2002 WL 1751135, at *7 (S.D.N.Y. July 26, 2002) ("[T]he fact that an individual closely affiliated with a corporation such as a principal shareholder or even a sole shareholder, is incidentally injured by an injury to the corporation does not confer standing on the individual to sue on the basis of either that indirect injury or the direct injury to the corporation.") (internal quotation marks and citations omitted).

The same is true for IEWU LLC. The FAC includes no allegations suggesting a relationship between IEWU LLC and Mr. Baldoni, Mr. Heath, or Wayfarer, and even if the FAC did so, or if one existed, that would not justify a civil extortion claim brought by IEWU LLC itself against Mr. Reynolds. *See EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*, 2021 WL 964943, at *19 (S.D.N.Y. Mar. 15, 2021) (Liman, J.), *aff'd*, 2022 WL 3904541 (2d Cir. Aug. 31, 2022) ("Plaintiffs cannot seek damages on behalf of related [] entities. A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined.") (cleaned up); *see also Feinberg*, 2002 WL 1751135, at *6 (parent company cannot bring claims to recover for damages incurred by its subsidiary, noting that "[n]umerous courts have dismissed claims brought by corporations when the claims actually belong to a subsidiary or an

---

[3] The only allegation regarding Mr. Sarowitz included in the FAC referenced in his Extortion Claim is that Mr. Sarowitz is "an individual residing in the County of Lake, Illinois." FAC ¶ 306.

affiliated corporation"); *Coeur, Inc. v. Wygal*, 2021 WL 4225657, at *4 (W.D.N.Y. Sept. 16, 2021) ("[A] subsidiary generally lacks standing to sue on behalf of its parent corporation.").

By collectively suing Mr. Reynolds for civil extortion without alleging facts supporting extortion as to *each* of them, Mr. Sarowitz, Ms. Nathan, Ms. Abel and IEWU LLC have brought frivolous, baseless claims against him. Because Plaintiffs' Counsel also refused to move to amend or otherwise dismiss those claims when the defects were brought to their attention, they violated Rule 11 and sanctions should be imposed on them and the Rule 11 Plaintiffs.

## II.    **The Defamation Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr. Heath, and IEWU LLC against Mr. Reynolds are Legally Unreasonable and Factually Baseless.**

The Rule 11 Plaintiffs' Defamation Claims against Mr. Reynolds are likewise sanctionable. The Rule 11 Plaintiffs have brought utterly frivolous Defamation Claims against Mr. Reynolds for making specific defamatory statements that they have now conceded do not concern (and therefore do not defame) them. Notwithstanding this concession, the Rule 11 Plaintiffs have refused to withdraw or abandon their frivolous claims. Further, while they have posited that Mr. Reynolds defamed them through unspecified defamatory statements to third parties, that theory (even on its own terms) is plainly barred by settled law (that the Rule 11 Plaintiffs do not challenge or seek to extend) in this Circuit for pleading defamation claims.

The core of the Rule 11 Plaintiffs' pleaded defamation claims against Mr. Reynolds turn entirely on Mr. Reynolds's alleged statements to WME that *Baldoni* is a sexual predator. But, as even a cursory review of these statements reveal, they have *nothing to do with any of the Rule 11 Plaintiffs*:

- "Her publicist, Leslie Sloane ('Sloane'), went so far as to propagate malicious stories portraying *Baldoni* as a sexual predator (a term Lively's husband, Ryan Reynolds, also used to describe Baldoni when he called Baldoni's own agent)." FAC ¶ 8 (emphasis added).

- "Baldoni later received word that, during the premiere of his movie *Deadpool & Wolverine*, Reynolds approached Baldoni's agency, namely, an executive at WME, and expressed his deep disdain for **Baldoni**, suggesting the agency was working with a 'sexual predator' (a phrase that uncoincidentally later appeared in the press) and, at a later date, demanded that the agent 'drop' Baldoni." *Id.* ¶ 162 (emphasis added).

Critically, the Rule 11 Plaintiffs have conceded that these statements relate to Baldoni as an individual, and in no way concern them. *See* Opp. at 6–7. One would think, given this concession, that the Rule 11 Plaintiffs would agree to withdraw or abandon their Defamation Claims based on those statements—yet they continue to refuse to do so. *See* Letter Response. This is not, incidentally, a mere disagreement about the sufficiency of "group pleading"—it is, instead, the only factual basis in the Amended Complaint that *any* of the Wayfarer Parties (not just the Rule 11 Plaintiffs) have identified as a basis for a defamation claim as to Mr. Reynolds. The fact that the Rule 11 Plaintiffs concede that these statements do not concern them by itself warrants sanctions.

The only other factual basis that the Rule 11 Plaintiffs have claimed justifies their Defamation Claims as to Mr. Reynolds is legally improper under settled precedent in this Circuit, and in any event is frivolous. The Rule 11 Plaintiffs broadly assert (without any specific factual support) that Mr. Reynolds is directly liable for making defamatory statements to third parties including The New York Times. *See* FAC ¶¶ 273-74, 325; Opp. at 7 ("**Reynolds**, with Lively and the Sloane Parties, **told the NYT 'a false and damning story** about an insidious PR sabotage operation deployed as revenge for sexual harassment complaints, [knowing] that the newspaper would publish[.]'" (quoting FAC ¶ 273)) (emphasis added).[4] But the Rule 11 Plaintiffs have never articulated any basis capable of alleging defamation as required by settled law—namely, what Mr.

---

[4] As stated *supra* 5 n.2, Mr. Reynolds's Rule 11 Motion does not seek sanctions with respect to any derivative liability in connection with alleged defamation conspiracy, instead leaving that theory for dismissal as deficiently pleaded under Rule 12(b)(6). *See* ECF Nos. 132-33, 166.

Reynolds is alleged to have said, when, and to whom. *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020). Worse, they do not even appear to have tried to do so. Despite their sweeping and fantastical pleadings, the Rule 11 Plaintiffs do not identify a single third party to whom Mr. Reynolds made allegedly defamatory statements other than The New York Times. And as to that publication, the Rule 11 Plaintiffs have refused to allege even one actual, or even any hypothesized, statement made by Mr. Reynolds. Any non-frivolous defamation claim against Mr. Reynolds would have included factual allegations as to what Mr. Reynolds purportedly told The New York Times, but no such allegations are to be found in the Amended Complaint.

Plaintiffs' Counsel have refused to withdraw their claims based on their supposition that "reasonable investigation and discovery will uncover additional evidence," Letter Response at 2, but that is the opposite of what Rule 11 requires. Rule 11 prohibits unspecified claims brought on baseless and grasping hunches. *See Gong*, 2023 WL 5372473, at *7–8. Instead, the Federal Rules demand that attorneys investigate the factual and legal basis for claims *before* filing lawsuits—and while Mr. Freedman and his co-counsel may wish otherwise, that requirement applies even to those he has promised to sue "into oblivion." *See* ECF 84 ¶ 51. In any event, the Defamation Claims against Mr. Reynolds here are so utterly lacking in content that any belated promise to perform further investigation is both empty and at odds with the Federal Rules. *See* Fed. R. Civ. P. 11(b)(3) (representations to the court require factual contentions be "specifically so identified" as requiring investigation or discovery). The Rule 11 Plaintiffs' Defamation Claims as to Mr. Reynolds were plainly intended to harass, burden, and retaliate against him, all while delaying and increasing the cost of litigation. As such, these Defamation Claims violate Rule 11, and warrant sanctions.

**III.    The Interference Claims Brought by Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr. Heath, and IEWU LLC against Mr. Reynolds are Legally Unreasonable and Factually Baseless.**

None of the Rule 11 Plaintiffs can reasonably assert a claim for interference with a contract or relationship that they never even had. This is precisely what they have attempted to do. Indeed, the FAC pleads no facts and lacks any legal ground to suggest Mr. Reynolds interfered with any of the Rule 11 Plaintiffs' contracts or business relationships. Instead, the Rule 11 Plaintiffs bring three Interference Claims against Mr. Reynolds based exclusively on purported relationships ***between other parties—Wayfarer and WME*** and ***between Baldoni and WME***. *See id.* ¶¶ 348, 357, 367; Opp. at 20 ("The FAC pleads a claim against Reynolds for his tortious interference with ***Wayfarer's and Baldoni's*** relationships with WME[.]") (emphasis added). This was made abundantly clear in the Opposition, which clarifies that while the FAC imprecisely pleads that the "Wayfarer Parties" had a contract and business relationship with WME, FAC ¶¶ 348, 357 367, "the FAC clearly identifies ***Baldoni and Wayfarer*** as the Wayfarer Parties who were represented by WME." Opp. at 23–24 (emphasis added); *see also* FAC ¶¶ 16, 162, 349–50, 357.

The FAC's allegations that Mr. Reynolds interfered with Wayfarer's and Baldoni's WME relationship does not provide a reasonable basis for the Rule 11 Plaintiffs to assert tortious interference claims of their own. *See* Opp. at 22 (acknowledging interference claims require establishing the "existence of a valid contract between the plaintiff and a third party"). Of course, the existence of a relationship is a core element of a claim that such relationship has been unlawfully interfered with. *Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at *13–14 (S.D.N.Y. Apr. 16, 2007). But there are no facts to support any contention that any of the Rule 11 Plaintiffs were parties to a contractual or economic relationship with WME, nor any facts to suggest Mr. Reynolds interfered with any such relationships between the Rule 11 Plaintiffs and any other third parties.

As for Mr. Sarowitz, Mr. Heath, and IEWU LLC specifically, even if they added facts to plead more specific roles that more clearly connected them to *Wayfarer's relationship as an alleged client of WME*, such as executives, financiers, or affiliates of Wayfarer, which they did not do, that *still* would not give them any legal or factual basis to sue Mr. Reynolds in the Interference Claims. *See Citicorp Int'l Trading Co. v. W. Oil & Ref. Co.*, 1991 WL 4502, at *5 (S.D.N.Y. Jan. 16, 1991) ("[B]oth the law of this Circuit and that of California is that a shareholder lacks standing to sue on the basis of an injury to his corporation.") (cleaned up); *Taupita Inv., Ltd. v. Benny Ping Wing Leung*, 2017 WL 3600422, at *10–12 (S.D.N.Y. Aug. 17, 2017) (Defendants subsidiary and president/director of corporation are not parties to corporation's contracts and cannot bring third-party claims for breach of contract and inducing or causing breach of contract, even where president signed the contracts on behalf of the corporation); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726–28 (S.D.N.Y. 2014) (dismissing tortious interference with contract and prospective economic advantage claims because "[c]ourts in this Circuit have consistently denied tortious interference with contract claims where the plaintiff was neither a party to, nor an intended third-party beneficiary of, the contract in question"); *see also Sovereign Asset Mgmt., Inc. v. Health Net Life Ins. Co.*, 2019 WL 4640397, at *4 (C.D. Cal. Sept. 10, 2019) (dismissing interference claim where party was "a legal stranger to the contract and business relations that were allegedly interfered with" (internal quotation marks and citation omitted)).

Without any facts or law to support their most fundamental elements as to any of the Rule 11 Plaintiffs, the Interference Claims are utterly frivolous as to all of them. *See Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 114 F.R.D. 684, 691 (S.D.N.Y. 1987) ("One can hardly imagine a more frivolous claim than that of breach of contract between parties who never met,

much less negotiated to the point of mutual assent. No reasonably competent attorney could have believed that the facts available . . . made out a contract claim by plaintiffs."); *Polo Fashions, Inc. v. Fashion Assoc., Inc.*, 1986 WL 1176 (S.D.N.Y. Jan 22, 1986) (awarding sanctions for frivolous suit not properly alleging tortious interference with economic advantage); *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660–61 (S.D.N.Y. 1996), *aff'd sub nom.* 13 F.3d 1229 (2d Cir. 1997); *Charles Equip. Energy Sys., LLC*, 2023 WL 2346337, at *5–8 (S.D.N.Y. Mar. 3, 2023).

Because they collectively sued Mr. Reynolds for the Interference Claims without any factual basis and also refused to move to amend or otherwise dismiss those claims when the defects were brought to their attention, Plaintiffs' Counsel violated Rule 11 and, along with the Rule 11 Plaintiffs, should be sanctioned.

## IV.   **The Rule 11 Plaintiffs' Baseless Claims Were Brought for the Improper Purpose of Harassing Mr. Reynolds, Causing Delay and Increasing the Cost of Litigation.**

From the inception of this matter, Plaintiffs' Counsel have repeatedly carried out aggressive and offensive "flood the zone" tactics designed to confuse and mislead the public regarding the nature of this litigation. Just this past week, Plaintiffs' Counsel—specifically Mr. Freedman—filed two letters and an affidavit so inflammatory and improper that they were stricken from the record. *See* ECF No. 220. But this is not the first time that Mr. Freedman has publicly attacked Mr. Reynolds and his counsel. On the contrary, he has repeatedly used the press to target Mr. Reynolds, including by asserting:

- That Mr. Reynolds is "arrogantly asking to be dismissed from the case despite his publicly documented involvement extending far beyond just being a 'supportive spouse.'" And that "[a]fter lighting a match, Mr. Reynolds now seeks to run from the flames. It won't work. . . . Mr. Reynolds can appear on as many sketch shows

as he wants and feebly try to make light of his current situation, but we will not stop until he is held accountable for his actions."[5]

- "Ryan's involvement is very well documented and we continue to discover more intentional misconduct. Was Disney actually complicit in Ryan using shareholder revenues to further a personal grudge? I would be surprised to learn that this type of corporate waste would not lead to much more exposure for those that have been complicit in affecting shareholder revenue."[6]

- "What I make of that [Nicepool scene in *Deadpool v. Wolverine*] is that if your wife is sexually harassed, you don't make fun of Justin Baldoni. There's no question it relates to Justin. I mean, anybody can watch that, the hair bun. . . . If somebody is seriously sexually harassed, you don't make fun of it; it's a serious issue."[7]

- As to Mr. Reynolds's appearance on Saturday Night Live, "I'm unaware of anybody, frankly, whose wife has been sexually harassed and has made jokes about that type of situation. . . . I can't think of anyone who's done anything like that. So it surprised me."[8]

- "The immense power that [Lively] wielded in Hollywood **built on pure fear of her husband** and their powerful friends came to an end the moment Ms. Lively planned a mass distribution of a disturbingly false and well calculated hit piece in the New York Times."[9]

While Mr. Freedman's current media blitz against Mr. Reynolds has been extensive, the Rule 11 Plaintiffs' plan to harass and injure Mr. Reynolds began months before this litigation. As early as August 15, 2024—shortly after the Film's premiere—Mr. Sarowitz suggested to Ms.

---

[5] Tommy McArdle, *Justin Baldoni's Lawyer Accuses Ryan Reynolds of Trying to 'Run from the Flames' in Asking to Be Dismissed from Lawsuit*, PEOPLE (Mar. 19, 2025, 4:56 PM), https://people.com/justin-baldoni-lawyer-ryan-reynolds-run-from-the-flames-legal-battle-11699794; BreAnna Bell, *Justin Baldoni's attorney blasts Ryan Reynolds for filing to dismiss lawsuit: He's trying to 'run from the flames,'* Page Six (Mar. 19, 2025, 11:09 PM), https://pagesix.com/2025/03/19/celebrity-news/justin-baldonis-attorney-blasts-ryan-reynolds-for-filing-to-dismiss-lawsuit/.
[6] Elizabeth Rosner, *Blake Lively's Lawyer Speaks Out in First Interview, Reveals Actress Will Testify in Justin Baldoni Trial*, People (May 8, 2025), https://people.com/blake-lively-lawyer-speaks-out-actress-testify-justin-baldoni-trial-exclusive-11729937.
[7] The Megyn Kelly Show, https://www.msn.com/en-us/movies/news/justin-baldoni-s-lawyer-says-ryan-reynolds-based-deadpool-wolverine-role-on-actor-no-question/ar-BB1r7whe?ocid=winp2fptaskbarhover.
[8] James Hibberd, *Justin Baldoni's Lawyer Criticizes Ryan Reynolds' 'SNL' Joke Mocking Blake Lively Feud*, The Hollywood Reporter (Feb. 18, 2025, 12:45 PM), https://www.hollywoodreporter.com/news/general-news/justin-bladonis-lawyer-criticizes-ryan-reynolds-snl-joke/.
[9] BreAnna Bell, *Justin Baldoni's lawyer says he won't be 'bullied' into silence by 'petrified' Blake Lively, Ryan Reynolds after gag order request*, Page Six (Jan. 25, 2025, 4:45 PM), https://pagesix.com/2025/01/25/celebrity-news/justin-baldonis-lawyer-says-he-wont-be-bullied-into-silence-by-petrified-blake-lively-ryan-reynolds-after-gag-order-request/ (emphasis added).

Nathan and Ms. Abel that they work to "flip[] the narrative" about Mr. Reynolds in the media to portray him as anti-feminist. ECF No. 84 ¶ 276. Mr. Baldoni agreed that this would be an "easy flip" and Ms. Nathan confirmed she was already working toward achieving this goal. *Id.* ¶ 277. Mr. Sarowitz has further made comments to third parties about his willingness to "go after" Mr. Reynolds and his wife "[i]f they ever get [him] to that point." *Id.* ¶ 27.

From the outset of this litigation, Mr. Reynolds has expressed concerns regarding statements made by Mr. Freedman and his firm relating to the present litigation—including a website that Mr. Freedman planned to launch to release "full unedited WhatsApp, text and email exchanges between Lively and Baldoni." *See* ECF Nos. 17, 38, 43. Despite the Court's express ruling that counsel comply with Rule 3.6 of the New York Rules of Professional Conduct, ECF No. 57, Mr. Freedman's misconduct continues—as evidenced by his recent behavior. *See* ECF No. 220.

These public attacks, combined with the Rule 11 Plaintiffs' filing numerous claims against Mr. Reynolds without any basis in law or fact, is willfully improper and warrants sanctions under Rule 11(b)(1). *See Gong*, 2023 WL 5372473, at *13 ("[A] court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit.") (internal quotation marks and citation omitted); *S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014) (holding that "[t]he deficiency of [plaintiff's] claim, coupled with its behavior" in litigation "gives rise to an inference of improper purpose"); *Galonsky v. Williams*, 1997 WL 759445, at *6 (S.D.N.Y. Dec. 10, 1997) ("[T]he overall circumstances of this case indicate that [counsel] filed these baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement.").

**V.      The Court Should Impose Sanctions on Plaintiffs' Counsel, Mr. Sarowitz, Ms. Nathan, Ms. Abel, Mr. Heath, and IEWU LLC.**

Where, as here, an attorney signs their name to an action that "was destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law," sanctions are appropriate. *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir. 1990). "The purpose of the imposition of sanctions . . . is deterrence"; therefore the sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Goldman v. Barrett*, 2019 WL 4572725, at *4 (S.D.N.Y. Sept. 20, 2019) (quoting Fed. R. Civ. P. 11(c)(4)). For the reasons discussed herein, the Rule 11 Plaintiffs and Plaintiffs' Counsel should be jointly and severally liable for an award of reasonable attorneys' fees and costs to be paid to Mr. Reynolds in connection with this Motion and related work. Further, the Court should consider additional sanctions, including a penalty to be paid to the Court, and/or a reprimand of Plaintiffs' Counsel for the burden they have placed on the Court as a result of their filing frivolous and harassing litigation.

1.      The Court should order Plaintiffs' Counsel and the Rule 11 Plaintiffs liable for reasonable attorneys' fees and costs to Mr. Reynolds.

Attorneys' fees are appropriate sanctions in this case because Plaintiffs' Counsel and the Rule 11 Plaintiffs filed frivolous Extortion, Defamation, and Interference Claims with an improper purpose, and did not withdraw them despite the Safe Harbor Letters demonstrating their baselessness. "Although the purpose of sanctions is deterrence, and not reimbursement, sanctions may include an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Cameau v. Nat'l Recovery Agency, Inc.*, 2018 WL 4522104, at *8 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) (cleaned up). Indeed, "[i]t is well settled that Rule 11 empowers judges with discretion to award that portion of a defendant's attorney's fees thought

19

reasonable to serve the sanctioning purpose of the Rule." *Ammann v. Sharestates, Inc.*, 2024 WL 1956237, at *11 (E.D.N.Y. Mar. 21, 2024) (quoting *An v. Despins*, 2023 WL 4931832, at *7 (S.D.N.Y. Aug. 2, 2023)). "[A]warding attorneys' fees as a sanction is particularly appropriate for improper purpose violations," and where, like here, parties "fail[] to respond to the Safe Harbor Letter, which resulted in the filing of this Motion and would otherwise have been unnecessary." *Id.* at *4, *11; *see also Despins*, 2023 WL 4931832, at *6–8 (awarding attorneys' fees for improper purpose violation where "even a cursory inquiry would have shown" the claim was meritless); *Cameau*, 2018 WL 4853050, at *3 (failure to respond to safe harbor notice warranted award of expenses and fees that could have been avoided).

      2.   <u>The Court should order Mr. Freedman, Mr. Schuster, Liner Freedman, and Meister Seelig jointly and severally liable to Mr. Reynolds for all imposed sanctions.</u>

Under Rule 11(c), once a court determines that a party or counsel violated Rule 11(b), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*; *see also Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 449 (S.D.N.Y. 2023) ("Because the Court finds no exceptional circumstances, sanctions will be jointly imposed on" the signing attorney's law firm.). "Thus, where attorneys have engaged in sanctionable conduct by violating Rule 11(b), courts have 'mandated' that law firms 'shall be held jointly responsible for their respective attorneys' violations.'" *Trustees of Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds v. Elite Terrazzo Flooring, Inc.*, 2022 WL 2466847, at *2 (E.D.N.Y. Apr. 14, 2022) (collecting cases). For the reasons discussed above, *supra* 6–14, Mr. Freedman and

Mr. Schuster have violated Rule 11(b) and, therefore, Mr. Reynolds seeks sanctions not only against them, but also their respective law firms.

        3.    <u>The Rule 11 Plaintiffs should be held jointly and severally liable with Plaintiffs' Counsel for all imposed sanctions.</u>

Because Plaintiffs' Counsel has violated Rules 11(b)(1) and (b)(3) by filing factually baseless claims for a harassing and improper purpose, the Rule 11 Plaintiffs should also be sanctioned pursuant to Rule 11(c)(1).[10] "[T]here is no question that once a court finds that Rule 11(b) has been violated by an attorney or unrepresented party, sanctions may be awarded against any 'attorney, law firm, ***or party*** that violated the rule or is responsible for the violation.'" *Gong*, 2023 WL 5372473, at *7 (quoting *Int'l Techs. Mktg., Inc.*, 2022 WL 11280876, at *12) (emphasis added); *see id.* ("Rule 11(c)(5) presents the only limitation on a court's ability to impose sanctions on represented parties: A court is prohibited from imposing monetary sanctions on a represented party for making frivolous legal arguments in violation of Rule 11(b)(2)."). *See, e.g.*, *Despins*, 2023 WL 4931832, at *8 (imposing fee award "jointly and severally upon Plaintiffs and Plaintiffs' counsel"); *Cameau*, 2018 WL 4522104, at *8 ("[T]he appropriate sanction is requiring Plaintiff [ ] and his counsel, jointly and severally, to reimburse the Defendant for its reasonable attorney's fees and expenses associated with briefing the motion for summary judgment and the Rule 11 motion.").

---

[10] To be sure, Plaintiffs' Counsel also violated Rule 11(b)(2) by asserting frivolous legal arguments. While Rule 11(c)(5)(A) limits the imposition of monetary sanctions against represented parties in connection with these violations, these circumstances do not limit the imposition of sanctions in connection with Plaintiffs' Counsel's violations under 11(b)(1) and (b)(3), and Mr. Reynolds has not included this violation as a basis for monetary sanctions against the Rule 11 Plaintiffs. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 WL 2944646, at *2 n.1 (S.D.N.Y. Mar. 31, 2016), *report and recommendation adopted*, 2016 WL 2889054 (S.D.N.Y. May 16, 2016) (imposing sanctions on party in connection with Rules 11(b)(1) and (b)(3) violations, but not the 11(b)(2) violations).

    4.    <u>Sanctions imposed upon Plaintiffs' Counsel and the Rule 11 Plaintiffs should be substantial to sufficiently deter similar abhorrent conduct in the future</u>.

The 1993 Advisory Committee Note to Rule 11 sets forth the following factors "that may be considered by the court when deciding . . . what sanctions are appropriate in the given circumstances":

> [1] [w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern of activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation; [5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [9] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11, Advisory Comm. Note to 1993 Amendments.

Mr. Freedman advertises himself as a litigator with over 20 years' experience and as "one of the most powerful—and most feared—people in the media industry."[11] Mr. Schuster is a "seasoned litigator" with 30 years of experience and serves as his firm's chair of the litigation department.[12] Each of their firms is well-resourced and regularly practices in litigation. Nevertheless, in this action, Mr. Freedman and Mr. Schuster signed their names to an Amended Complaint containing numerous frivolous claims against Mr. Reynolds, all while targeting him in the media. As discussed above, Mr. Freedman's pattern of behavior of filing baseless claims in courts to bolster his accompanying media campaign leads to only one "plausible conclusion": Plaintiffs' Counsel acted willfully with the intent of harassing Mr. Reynolds, causing unnecessary delay, and increasing the cost of litigation. *Supra* 14; *DLA Piper LLP (US)*, 2024 WL 964596, at

---

[11] Bryan Freedman, https://lftcllp.com/lawyers/bryan-j-freedman/.
[12] Mitchell Schuster, https://meisterseelig.com/people/mitchell-schuster/.

*15; *Gong*, 2023 WL 5372473, at *13. Plaintiffs' Counsel's inclusion of the Rule 11 Plaintiffs' frivolous claims has also infected large portions of their pleadings by intermingling the Rule 11 Plaintiffs' baseless claims with other Wayfarer Parties' in an attempt to disguise them.[13] Moreover, despite ample warning of the deficiencies of the Extortion, Defamation, and Interference Claims (as well as improper group pleading) in Mr. Reynolds's MTD and Safe Harbor Letters, Plaintiffs' Counsel has had the opportunity but refused to withdraw these causes of action. Beyond intentionally injuring Mr. Reynolds's reputation and career, Plaintiffs' Counsel and the Rule 11 Plaintiffs have—by including such frivolous claims—required Mr. Reynolds to exhaust significant and unnecessary resources to analyze and challenge these additional claims. They have thereby further compounded the cost and burden of defending this action, including by forcing Mr. Reynolds to incur the expense to prepare his MTD, the Safe Harbor Letters, and the instant Motion.

Under these circumstances, the imposition of meaningful monetary sanctions may be the only way to deter Plaintiffs' Counsel and the Rule 11 Plaintiffs from continuing to unlawfully harass Mr. Reynolds with baseless accusations and statements to the press. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 541 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822, 218 L. Ed. 2d 31 (2024) (affirming district court's imposition of $312,143.55 sanctions on attorney for "numerous allegations" that "a reasonable attorney would know are inaccurate, irrelevant, or frivolous"); *see also Trump v. Clinton*, 653 F. Supp. 3d 1198, 1210, 1233 n.38 (S.D. Fla. 2023), *appeal dismissed*, 2023 WL 3477967 (11th Cir. Apr. 6, 2023) (imposing sanctions of $937,989.39 on plaintiff and lead counsel where lawsuit was "completely frivolous, both factually and legally," adding that "[s]anctions must never be hollow gestures: their bite must be real."); *Refac Int'l, Ltd.*

---

[13] Plaintiffs' Counsel was well aware how to bring claims on behalf of only certain parties. In contrast to all of the other claims in the FAC, Plaintiffs' Counsel brought False Light Claims on behalf of only the individual defendants (not the entity defendants). *See* FAC at 214.

*v. Hitachi Ltd.*, 141 F.R.D. 281, 287, 291 (C.D. Cal. 1991) (ordering $1,446,511.49 in sanctions against plaintiff for Rule 11 violation where plaintiff failed to "make 'reasonable inquiry' to determine that its complaint was well grounded in fact").

As an illustration of the Rule 11 Plaintiffs' financial resources, Mr. Sarowitz has pledged his intention to "spend $100 million to ruin the lives" of Mr. Reynolds and his family. Given those intentions, which there is every reason to believe have evolved into a bottomless bank account funding the Rule 11 Plaintiffs' instant litigation, the imposition of material monetary sanctions becomes critical. For these reasons, Mr. Reynolds seeks sanctions in the amount of attorneys' fees and costs incurred in defending against the Rule 11 Plaintiffs' baseless claims, including the preparation of the Safe Harbor Letters and the instant Motion, to be imposed jointly and severally among Plaintiffs' Counsel and the Rule 11 Plaintiffs. *See, e.g.*, *McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 341 (S.D.N.Y. 2022) ("payment to Defendants is appropriate because they bore the cost both of opposing Plaintiffs' motion and filing this motion for sanctions"); *Weddington v. Sentry Indus., Inc.*, 2020 WL 264431, at *9 (S.D.N.Y. Jan. 17, 2020) (imposing sanction in amount of attorneys' fees incurred responding to the frivolous argument "in her answering brief and submission, and in making the submission and appearance in connection with the sanctions issue").

5. <u>The Court should impose additional sanctions, including a penalty or reprimand on Plaintiffs' Counsel</u>.

Finally, in addition to monetary sanctions (or, as an alternative, in the event the Court disagrees monetary sanctions are warranted), the Court should issue Plaintiffs' Counsel a formal reprimand for the filing of baseless claims as a means of harassing Mr. Reynolds and gaining favor in the court of public opinion. *See, e.g.*, *Kensington Intern. Ltd. v. Republic of Congo*, 2007 WL 2456993, at *10 (S.D.N.Y. Aug. 24, 2007) (formal reprimand to all attorneys at Cleary Gottlieb

Steen & Hamilton LLP that "civil litigation can be high stakes, zealously litigated, aggressively fought, ***and*** civil."); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith*, 2003 WL 22227956, at *14 (S.D.N.Y. Sept. 26, 2003) (admonishing counsel "to carefully research the legal bases underlying claims"). "The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; [or] referring the matter to disciplinary authorities." *Mata*, 678 F. Supp. 3d at 465. Specifically, "[a]n attorney may be required to pay a fine, or, in the words of Rule 11, a 'penalty' to advance the interests of deterrence and not as punishment or compensation." *Id.* at 466 (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103–04 (2d Cir. 2015)). Courts impose penalties on attorneys—to be paid directly to the Court—because of "the burden that litigating" sanctionable claims "place[s] on the Court and its personnel and to deter . . . such frivolous and harassing litigation in the future." *Gong*, 2023 WL 5372473, at *16; *see also Weddington*, 2020 WL 264431, at *9 (imposing penalty in addition to attorneys' fees to "vindicate the harm to the judicial system"). Here, in addition to the attorneys' fees discussed above, the Court should consider whether such additional sanctions are appropriate.

<u>**CONCLUSION**</u>

The motion should be granted, and the Court should award the costs, including attorneys' fees incurred in responding to the Amended Complaint and in bringing this Motion, and additional sanctions as this Court deems appropriate.

Respectfully submitted,

Dated: May 20, 2025

/s/ *Michael J. Gottlieb*

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
Meryl Governski (admitted *pro hac vice*)
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron Nathan
787 7th Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

*Attorneys for Ryan Reynolds*