

Sigrid S. McCawley
Telephone: 954-356-0011
Email: smccawley@bsfllp.com

May 21, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

   Re: *Lively et al. v. Wayfarer Studios LLC et al.*, No. 24 Civ. 10049 (LJL)
     [rel. No. 25 Civ. 779]

Dear Judge Liman:

  On behalf of Leslie Sloane and Vision PR, Inc. (the "Sloane Parties"), we write pursuant to Individual Rule 4.C to request that the Court compel third party James Vituscka to produce documents responsive to the Sloane Parties' Subpoena Requests for Production Nos. 5, 6, 7, and 13. We conferred in good faith with Vituscka's counsel but were unable to reach resolution.

  Vituscka's documents concerning this dispute, including his text messages with the Wayfarer Parties and their counsel that are quoted directly in the case's operative pleadings, are plainly relevant and discoverable.

  **I.** **The Discovery Sought Is Central to This Case.**

  Vituscka is a reporter for the Daily Mail who worked hand-in-hand with the Wayfarer Parties to drag Ms. Sloane into this litigation. The thrust of the Wayfarer Parties' claims against Ms. Sloane is that she allegedly told Vituscka "that Blake was 'sexually assaulted.'" ECF No. 50 ¶ 193. But the Wayfarer Parties' own pleadings indicate that "sexual[] assault[]" were Vituscka's chosen words—not words that Ms. Sloane ever uttered. The Amended Complaint does not allege what specific words *Ms. Sloane* may have said, when she said them, or in what context. Instead, it includes a screenshot of an undated text message between Vituscka and Melissa Nathan, which was purportedly exchanged "[f]ollowing the release of Lively's administrative complaint on December 20, 2024." *Id.* In the texts, *Vituscka*—not Ms. Sloane—writes, "now she's saying that Blake was sexually assaulted." *Id.*

  As explained in the Sloane Parties' motion to dismiss, the phrase "sexually assaulted" appears to be Vituscka's own characterization of details included in "Lively's administrative complaint," and not any words Ms. Sloane ever said. ECF No. 87 at 4. Indeed, the screenshot embeds an image of Vituscka's August 8, 2024 conversation with Ms. Sloane and then states that Ms. Sloane did not mention any allegations of sexual assault. **This is of course consistent with the fact that no one (including the Daily Mail) has ever published an article accusing Baldoni of sexual assault in connection with this dispute**. The Wayfarer Parties themselves further confirmed that Ms. Sloane never accused Baldoni of sexual assault in their complaint in their prior action against the New York Times, which included a screenshot of another text chain where Vituscka told Melissa Nathan and Bryan Freedman that he "had many conversations with [Ms. Sloane] about Blake and **never once did she say anything about sexual assault**." *See* ECF No. 190-3 at 16 (emphasis added).

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



Despite a complete lack of Rule 11 support for the allegation that Ms. Sloane accused Baldoni of "sexual assault" (or made any other allegedly defamatory statements concerning the Wayfarer Parties), the Wayfarer Parties have sued the Sloane Parties for defamation and related claims based solely on their misreading of Vituscka's text. Vituscka's documents and testimony, however, will clarify that any use of the phrase "sexual assault" was his words and not Ms. Sloane's, and will end the frivolous claims the Sloane Parties have been forced to defend for half a year.

## II.     The Reporter's Privilege Does Not Apply.

Vituscka invoked the "reporter's privilege" as grounds to refuse to comply with the Sloane Parties' document requests. *See* Exhibit A. This objection is without merit because (1) Vituscka waived the privilege; (2) even if he didn't waive it, the material sought is not "newsgathering" material, so the privilege doesn't apply; and (3) even if the privilege did apply, it is overcome here.

### A.   The Privilege Was Waived.

Vituscka waived the reporter's privilege by voluntarily disclosing information about Ms. Sloane to the Wayfarer Parties and their counsel. N.Y. Civ. Rights Law § 79–h(g). The reporter's privilege "cannot be used as a shield to protect that which has already been exposed to view." *People v. Wolf*, 39 A.D.2d 864, 864 (1st Dep't 1972); *see, e.g.*, *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 857 (N.Y. Sup. Ct. 2006). Moreover, to the extent Vituscka is invoking the privilege to protect the Wayfarer Parties, they waived it by excerpting their conversations with Vituscka in their publicly accessible complaints. *Andrews v. Andreoli*, 92 Misc. 2d 410, 420 (N.Y. Sup. Ct. 1977).

### B.   The Material Sought Is Not "Newsgathering" Material Covered by the Privilege.

Regardless of waiver, the Court should compel Vituscka to produce documents and communications in response to Request Nos. 5–7 and 13 to the extent those requests seek material concerning Vituscka furnishing information *to* the Wayfarer Parties and their counsel for purposes of litigation, rather than seeking information *from* the Wayfarer Parties and their counsel for purposes of reporting the news.[1] In other words, the reporter's privilege does not apply to Vituscka's conversations with Nathan and Freedman to the extent he was supplying them with information to be included in a complaint, rather than gathering information from them to be included in an article. *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 145 (2d Cir. 1987) (affirming holding that reporter's privilege did not apply where, "at the time [the reporter] directed that the information be gathered, [she] did not intend to use the reports to disseminate information to the public" and was instead intending to help a person standing trial).[2] Of course,

---

[1] Request No. 5 seeks "All Communications with Melissa Nathan, including but not limited to the full Communication that is excerpted at paragraph 193 in the Amended Complaint." Request No. 6 seeks "All Documents and Communications Concerning your statement, 'she's saying that Blake was sexually assaulted,' as set forth in paragraph 193 in the Amended Complaint." Request No. 7 seeks "All Communications with any of the Wayfarer Parties Concerning the Film, the Lively-Reynolds Parties, the Sloane Parties, Baldoni, the allegations in the Above-captioned matter, and/or any press stories or social media related to the same." Request No. 13 seeks "All Documents and Communications Concerning the Wayfarer Parties' efforts to gather or convey information or material about the Lively-Reynolds Parties and/or the Sloane Parties."

[2] *See also, e.g.*, *In re Fitch, Inc.*, 330 F.3d 104, 110 (2d Cir. 2003) (denying invocation of New York's Shield Law where information-disseminating activity was "not . . . based on a judgment about newsworthiness"); *Fowler v. Vary*, 2022 WL 3211638, at *13 (S.D.N.Y. Aug. 9, 2022) (privilege did not apply to communications with reporter that were "wholly unrelated to newsgathering").

the reporter's privilege does not apply to all of Vituscka's conversations simply because he happens to be a journalist. It certainly does not apply to his statements pictured in the Amended Complaint, *see, e.g.*, ECF No. 50 ¶ 193, which have never appeared in a Daily Mail article, and instead appear only in the pleadings against the Sloane Parties.

### C. In the Alternative, The Qualified Privilege Is Overcome Here.

Even if the reporter's privilege did apply (it does not), it is overcome where, as here, the information sought is nonconfidential[3] and is (1) "highly material and relevant," (2) "critical or necessary to the maintenance" of the claim or defense, and (3) "not obtainable from any alternative source." N.Y. Civ. Rights Law § 79–h(c).

*First*, the material sought is not merely relevant—it is central. As explained above, the only basis for the Wayfarer Parties' claims against the Sloane Parties is Vituscka's statements. *See In re Waldholz*, 1996 WL 389261, at *3 (S.D.N.Y. July 11, 1996) (information concerning statement "highly material" where plaintiffs "predicate[d] defendants' liability in part" on that statement). In discovery, the Wayfarer Parties have not produced a single document connecting Ms. Sloane with any allegedly defamatory statements concerning "sexual assault" or Baldoni being a "sexual predator," nor have they identified a single person who she allegedly made those statements to. *See* ECF No. 190. The statements the Wayfarer Parties attribute to Vituscka in their complaints are therefore the sole basis for their claims against the Sloane Parties. Vituscka's documents are therefore "highly material."

*Second*, given the centrality of Vituscka's representations, the Sloane Parties cannot meaningfully defend themselves without the discovery necessary to understand his statements. *See Waldholz*, 1996 WL 389261, at *4 (declining to quash subpoena where discovery would "very significantly undermin[e]" or "very significantly bolster[]" claim or defense); *see also In re Ramaekers*, 33 F. Supp. 2d 312, 316 (S.D.N.Y. 1999); *Don King Productions, Inc. v. Douglas*, 131 F.R.D. 421, 425 (S.D.N.Y. 1990).

*Third*, the material sought is not "reasonably obtainable from other available sources" because only Vituscka has access to the full scope of information necessary to clarify or contextualize his statements. *In re Chevron Corp.*, 709 F. Supp. 2d at 298; *see also Waldholz*, 1996 WL 389261, at *4. For example, even if Nathan or Freedman somehow knew what Vituscka meant when he said, "now she's saying that Blake was sexually assaulted," ECF No. 50 ¶ 193, their testimony would be wholly speculative. Moreover, they are "in an adversarial position" to the Sloane Parties and therefore cannot serve as a "reliable source" for the information sought. *In re Sullivan*, 167 Misc. 2d 534, 541 (N.Y. Sup. Ct. 1995) (denying motion to quash subpoena).[4]

---

[3] "It is the journalist's burden to demonstrate that the material" sought "is confidential." *In re Chevron Corp.*, 709 F. Supp. 2d 283, 294 (S.D.N.Y. 2010). Here, the information sought is nonconfidential because unlike an anonymous source, it was not "divulged under [a] cloak of confidentiality." *In re Pennzoil Co.*, 108 A.D.2d 666, 666 (1st Dep't 1985); *see Fowler*, 2022 WL 3211638, at *410. Quite the opposite, excerpts of the relevant conversations have been published in multiple publicly accessible complaints. *See, e.g.*, ECF No. 50 ¶ 193; ECF No. 190-3 ¶ 15.

[4] Vituscka is scheduled to sit for deposition on June 4. To the extent Vituscka intends to invoke the reporter's privilege in an effort to resist that subpoena, it is likewise inapplicable in the testimonial context and Vituscka's testimony is critical to the Sloane Parties' ability to defend against the defamation claim. *See, e.g.*, *Sloargen Elec. Motor Car Corp. v. Am. Motors Corp.*, 506 F. Supp. 546, 551 (N.D.N.Y. 1981) ("[New York's Shield Law] is not applicable where the journalist is called upon, as other citizens, to testify with respect to personal observations."); *In re Ziegler*, 550 F. Supp. 530, 532 (W.D.N.Y. 1982).

Respectfully Submitted,

/s/ *Sigrid S. McCawley*
Sigrid S. McCawley
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 356-0011
smccawley@bsfllp.com

Andrew Villacastin
Lindsey Ruff
Rachael Schafer
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
avillacastin@bsfllp.com
lruff@bsfllp.com
rschafer@bsfllp.com

*Attorneys for Leslie Sloane and Vision PR, Inc.*