UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

BLAKE LIVELY,                                               :

                    Plaintiff,               :

v.                                                          :

WAYFARER STUDIOS LLC, JUSTIN BALDONI,    :
JAMEY HEATH, STEVE SAROWITZ, IT ENDS       :
WITH US MOVIE LLC, MELISSA NATHAN, THE    :
AGENCY GROUP PR LLC, and JENNIFER ABEL,   :

                Defendants.           :

-------------------------------------------------------------------- x

JENNIFER ABEL,                                             :

                Third-Party Plaintiff,   :

v.                                                          :

JONESWORKS LLC,                                           :

                Third-Party Defendant.   :

-------------------------------------------------------------------- x

WAYFARER STUDIOS LLC,                                     :
JUSTIN BALDONI, JAMEY HEATH, IT ENDS WITH   :
US MOVIE LLC, MELISSA NATHAN, JENNIFER      :
ABEL, and STEVE SAROWITZ,                                  :

                Plaintiffs,             :

v.                                                          :

BLAKE LIVELY, RYAN REYNOLDS, LESLIE        :
SLOANE, VISION PR, INC., and THE NEW YORK   :
TIMES COMPANY,                                            :

                Defendants.           :

-------------------------------------------------------------------- x

Civ. Action No. 1:24-cv-10049-LJL
(Consolidated for pretrial purposes
with 1:25-cv-00449-LJL)
rel. 1:25-cv-00449-LJL

**JENNIFER ABEL'S
MEMORANDUM OF LAW IN
OPPOSITION TO JONESWORKS
LLC'S MOTION TO DISMISS THE
THIRD-PARTY COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 3

    A.  Abel's Employment Agreements With Jonesworks ................................................. 3

    B.  Abel's Tenure at Jonesworks ................................................................................. 4

    C.  Lively Sues Abel for Acts Taken in the Discharge of Abel's Duties ...................... 5

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ..................................................................................................................... 7

    I.    The Court Should Disregard Jonesworks' Improper Factual Allegations .............. 7

    II.    Abel Has Adequately Pleaded a Claim for Statutory Indemnification ................... 9

        A.  The 2021 Employment Agreement is Null and Void ....................................... 9

        B.  Even If the 2021 Employment Agreement Were Not Null and Void,
            Its Choice of Law Clause Would Not Reach California Statutory Claims ..... 13

    III.    Abel Has Adequately Pleaded a Claim for Implied/Common Law
         Indemnification ................................................................................................... 16

        A.  A Contractual Indemnification Clause Does Not Preclude Common Law
            Indemnification ............................................................................................. 16

        B.  Abel Has Sufficiently Alleged that Her Actions Were Within the
            Scope of Her Employment and in Furtherance of Jonesworks' Business ...... 17

    IV.    Abel Has Adequately Pleaded a Claim for Contribution ..................................... 22

CONCLUSION .................................................................................................................. 24

## <u>**TABLE OF AUTHORITIES**</u>

**<u>Cases</u>**                                                                                                     **Page(s)**

*Admiral Oriental Line v. U.S.*,
    86 F.2d 201 (2d Cir. 1936) ......................................................................................... 17

*Aetna Cas. & Sur. Co. v. Lumbermens Mut. Cas. Co.*,
    136 A.D.2d 246 (4th Dept. 1988) *lv. denied* 73 N.Y.2d 701 (1988) ....................... 17

*American Home Assur. Co. v. Nausch, Hogan & Murray, Inc.*,
    71 A.D.3d 550 (1st Dept. 2010) ................................................................................ 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 7

*Au New Haven, LLC v. YKK Corp.*,
    210 F.Supp.3d 549 (S.D.N.Y. 2016) ......................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 7

*Boatman v. County of Onondaga*,
    229 A.D.3d 1214 (4th Dept. 2024) ...................................................................... 21, 22

*Bracero v. State of New York*,
    81 Misc.3d 1214(A), 2023 N.Y. Slip Op. 51336 (U) (N.Y. Ct. Cl. 2023) .......... 21, 22

*Burnett v. Physicians' Online, Inc.*,
    1997 WL 470136 (S.D.N.Y. Aug. 15, 1997) ............................................................ 15

*B–S Steel of Kansas, Inc. v. Texas Indus., Inc.*,
    439 F.3d 653 (10th Cir. 2006) ................................................................................... 11

*Casey ex rel. Casey v. Ryder Truck Rental, Inc.*,
    2005 WL 1150228 (E.D.N.Y. May 16, 2005) ..................................................... 17, 21

*Clark v. Hanley*,
    89 F.4th 78 (2d Cir. 2023) ........................................................................................... 7

*Danner-Cantalino v. City of New York*,
    85 A.D.3d 709 (2d Dept. 2011) .......................................................................... 21, 22

*Dewitt v. Pizzagalli Const. Co.*,
    183 A.D.2d 991 (3d Dept. 1992) ............................................................................... 16

*Doctor's Assocs., Inc. v. Alemayehu*,
   934 F.3d 245 (2d Cir. 2019) ................................................................... 10

*EMA Fin., LLC v. NFusz, Inc.*,
   444 F.Supp.3d 530 (S.D.N.Y. 2020) ...................................................... 14

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
   2022 WL 1997207 (S.D.N.Y. June 6, 2022) .......................................... 14

*Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc.*,
   495 F.3d 1078 (9th Cir. 2007) ............................................................... 10

*Gomez v. Preferred Rentals*,
   1997 WL 749389 (S.D.N.Y. Dec. 3, 1997) ........................................... 17

*Hawthorne v. South Bronx Cmty. Corp.*,
   78 N.Y.2d 433 (1991) ..................................................................... 16, 17

*Hunt v. Werner Spitz Const. Co.*,
   152 A.D.2d 936 (4th Dept. 1989) .......................................................... 16

*In re Platinum-Beechwood Litig.*,
   427 F.Supp.3d 395 (S.D.N.Y. 2019) ........................................................ 8

*Knipe v. Skinner*,
   999 F.2d 708 (2d Cir. 1993) ................................................................. 10

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) ................................................................... 7

*Mayagüez S.A. v. Citigroup, Inc.*,
   2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018).......................................... 14

*Ministers & Missionaries Benefit Board v. Snow*,
   26 N.Y.3d 466 (2015)........................................................................... 12

*O'Dowd v. American Sur. Co. of N.Y.*,
   3 N.Y.2d 347 (1957)............................................................................. 17

*Pearson v. Gesner*,
   125 F.4th 400 (2d Cir. 2025) .................................................................. 7

*Rice v. Scudder Kemper Investments, Inc.*,
   2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003) *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 Fed.Appx. 147 (2d Cir. 2006) ........................................................ 15

*Ruradan Corp. v. City of New York*,
    2023 WL 2632185 (S.D.N.Y. Mar. 24, 2023).................................................................. 10

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ............................................................................................ 10

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
    263 F.3d 26 (2d Cir. 2001) .............................................................................................. 11

*Stevens & Company LLC v. Espat*,
    2025 WL 950989 (S.D.N.Y. Mar. 28, 2025).................................................. 11, 12, 13, 14, 15

*Trans–Tec Asia v. M/V Harmony Container*,
    518 F.3d 1120 (9th Cir. 2008) ........................................................................................ 11

*United States v. Moseley*,
    980 F.3d 9 (2d Cir. 2020) .......................................................................................... 12, 14

*Warman v. Am. Nat'l Standards Inst.*,
    2016 WL 3676681 (S.D.N.Y. July 6, 2016)..................................................................... 15

*Zurich Ins. Co. v. Lumbermen's Cas. Co.*,
    233 A.D.2d 186 (1st Dept. 1996) .................................................................................... 16

## **Statutes**

California Labor Code § 2802 ...................................................................................... 9, 13, 14

California Labor Code § 2804 ...................................................................................... 9, 10, 11

## **Rules**

CPLR Section 1401.......................................................................................................... 22

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 1, 7

## **Other Authorities**

2A N.Y. Jur.2d Agency § 225......................................................................................... 17

Restatement (Second) of Contracts §§ 7, 163.................................................................. 10

Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1:20, at 50
(4th ed.1990) ............................................................................................................. 12

Third-Party Plaintiff Jennifer Abel ("Abel") respectfully submits this memorandum of law in opposition to Third-Party Defendant Jonesworks LLC's motion to dismiss the Amended Third-Party Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").[1]

## **INTRODUCTION**

Unable to counter Abel's well-pleaded allegations, *which must be deemed true and which are entitled to all reasonable inferences*, Jonesworks improperly inserts its own so-called factual allegations into the Motion, sometimes mischaracterizing Abel's allegations, sometimes citing the pleadings of *other* parties (such as Lively), and sometimes citing *nothing*.

Substantively, Jonesworks erroneously argues that the 2021 Employment Agreement itself precludes the First Cause of Action for statutory indemnification under the California Labor Code. However, under the law of California, where Abel was employed, the 2021 Employment Agreement is null and void because it contains a clause contrary to the California Labor Code. In turn, there is no contract that bars her claim for statutory indemnification. In the alternative, and even assuming the 2021 Employment Agreement is not null and void, its choice of law clause does not extend to Abel's First Cause of Action for statutory indemnification under the California Labor Code. By its own terms, the choice of law clause is applicable only to the Agreement "and the performance of the Parties' obligations hereunder" (*i.e.*, under the Agreement) and therefore does not reach the performance of Jonesworks' non-contractual obligations such as those under California statutory laws regarding indemnification.

---

[1] Abel and the other consolidated plaintiffs Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), It Ends With Us Movie LLC ("IEWU"), Melissa Nathan ("Nathan"), and Steve Sarowitz ("Sarowitz") are collectively referred to herein as the "Wayfarer Parties".

With respect to the Second Cause of Action for common law indemnification, Jonesworks' argument is devoid of any legal basis. Although Jonesworks contends, without any legal authority, that the indemnification clause in the Employment Agreement somehow supersedes Abel's common law indemnification rights, the well-settled New York law is that a contractual indemnification clause *does not* preclude a claim for common law indemnification. As for Jonesworks' alternative argument that the Third-Party Complaint fails to adequately allege a common law indemnification claim, the pleading sufficiently alleges that the conduct about which Blake Lively complains consists of *regular public relations activities* by Abel on behalf of Wayfarer and Baldoni, during the time that they were *clients of Jonesworks* (a public relations firm) and undertaken at *the direction of Jonesworks*. Those facts must be accepted as true.

Similarly, in support of the Third Cause of Action for contribution, the Third-Party Complaint contains multiple and detailed allegations that Jonesworks was ultimately responsible for any public relations actions that (purportedly) damaged Lively. Those facts, too, must be accepted as true.

The Motion should be denied in its entirety for these reasons, which are more fully discussed below.

## FACTUAL BACKGROUND

### A.    Abel's Employment Agreements With Jonesworks

Jonesworks is a well-known New York-based public relations firm founded by Stephanie Jones, who serves as its CEO. (Dkt. 187, ¶ 9). On or about July 9, 2020, Abel was hired by Jonesworks as Vice President. Her mandate was to oversee Jonesworks' talent department and grow its nascent Los Angeles office, which at the time had only four employees. (*Id.* ¶ 16).

In connection with and as a condition of her employment, Abel signed a so-called Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement (the "2020 Employment Agreement"). (*Id.* ¶ 17). The 2020 Employment Agreement provided that Abel was an "at-will" employee whose employment was "exclusive" to Jonesworks during the period of her employment. (*Id.* ¶ 18). Section 13 of the 2020 Employment Agreement provides that "[it] has been made and shall be interpreted in accordance with the laws of the State of California without regard to conflicts of law principles." (*Id.* ¶ 19).

On or about November 22, 2021, Jonesworks required Abel to enter into a modified employment agreement (the "2021 Employment Agreement") changing her employment from at-will to a contractual term, adjusting her title and compensation, and subjecting her to a variety of novel restrictions intended to deter her from leaving Jonesworks and inhibiting her ability to remain in her chosen field if she were to do so. (*Id.* ¶ 20).

Section 10.1 of the 2021 Employment Agreement provides:

> Except to the extent caused by Employee or resulting from a breach of this Agreement by Employee, Company shall indemnify and hold harmless Employee from and against any and all liability, claims, costs, damages, and expenses (including reasonable outside attorneys' fees and court costs) arising out of or in connection with any breach by the Company of the terms of this Agreement or any warranties and representations made herein.

(*Id.* ¶ 21).

Section 11.7 of the 2021 Employment Agreement provides: "This Agreement and the performance of the Parties' obligations hereunder will be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles." (*Id.* ¶ 22).

At all times during Abel's employment at Jonesworks, Abel was a resident of the County of Los Angeles, State of California; was based out of Jonesworks' Los Angeles office, and performed the overwhelming majority of her work within the State of California. Abel has lived and worked in California for the entirety of her adult life. Since graduating from college, Abel has maintained virtually no connection to the State of New York. She has not lived there, maintained a residence there, performed any significant amount of work there, or even travelled there more than a handful of times. She was, at all times, a California resident and California employee entitled to the protections of the laws of the State of California. Apart from infrequent business travel, Abel performed no work for Jonesworks in the State of New York. (*Id.* ¶ 24).

B.    **Abel's Tenure at Jonesworks**

Abel performed all of her obligations under the 2020 Employment Agreement and the 2021 Employment Agreement. (*Id.* ¶ 25). For almost four years, Abel largely managed Jonesworks' work for Wayfarer Studios and Justin Baldoni out of its Los Angeles office. Over time, Abel developed a close and trusting relationship with Baldoni, Wayfarer CEO Jamey Heath, and the rest of the Wayfarer team, particularly as their strategic communications needs became ever more complex in relation to *It Ends With Us* (the "Film"). (*Id.* ¶ 26). At all times during Wayfarer's four-year engagement with Jonesworks, Abel was the point person on the account. (*Id.* ¶ 27).

On or about July 10, 2024, Abel notified Jones of her departure from Jonesworks. Abel later confirmed her earlier decision to resign on July 26, 2024, and communicated her intention to

start her own business. Abel offered a six-week transition period, with an end date of August 23, 2024. (*Id.* ¶ 28). On August 21, 2024, Jonesworks terminated Abel. (*Id.* ¶ 29).

      **C.**    **<u>Lively Sues Abel for Acts Taken in the Discharge of Abel's Duties</u>**

On February 18, 2025, Lively filed an Amended Complaint in which she asserted claims against Abel for: (a) aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act; (b) intentional infliction of emotional distress; (c) false light invasion of privacy; and (d) civil conspiracy (collectively, "Plaintiff's Claims"). (*Id.* ¶ 31).

The conduct alleged by Lively to have been committed by Abel and to have caused harm to Lively consists of public relations activities on behalf of Wayfarer and Baldoni during the time period when they were clients of Jonesworks. To the extent any such conduct by Abel was undertaken as alleged (which Abel disputes), it was undertaken in obedience to Jonesworks' directions. (*Id.* ¶ 32). For example, Lively alleges that Heath and Baldoni "in their own capacities and as representatives of Wayfarer … were directly engaged, via contract … with Jonesworks … which engagement gave rise to the retaliation campaign at issue," and "Ms. Abel worked as an employee of Jonesworks, which position directly gave rise to the retaliation campaign at issue." (*Id.* ¶ 33).

Although Abel disputes the truth of Lively's allegations, insofar as they purport to allege conduct by Abel causing harm to Lively, the substance of the allegations of Lively appear to be: Abel participated in a coordinated "astroturfing" campaign to discredit and "bury" Plaintiff (Seventh Cause of Action, ¶ 411), Abel solicited, developed, implemented, and/or promoted "a covert multi-tiered press and digital plan" to harm Lively and discourage her from making publicly statements harmful to Wayfarer and Baldoni, among others, (Tenth Cause of Action, ¶ 435), Abel publicly disclosed information concerning Lively's marketing decisions, moral character, private

life, and family which showed Lively in a false light, (Twelfth Cause of Action, ¶ 448), and Abel conspired with others to commit these acts. (Fifteenth Cause of Action, ¶ 481). (*Id.* ¶ 34).

Lively's allegations against Abel (the veracity of which Abel disputes) are of conduct and communications directed at the press and the public to garner good publicity and to eliminate or minimize bad publicity for the clients Wayfarer and Baldoni—activities which are the very essence of the public relations profession. (*Id.* ¶ 35).

Jonesworks and Jones gave Abel directions to carry out the duties of a competent public relations professional on behalf of clients Wayfarer, Heath, and Baldoni, including but not limited to, garnering good publicity and eliminating or minimizing bad publicity for them and their Film. (*Id.* ¶ 36). In addition, Jones personally interfered with Abel's competent handling of her duties, including by attempting to insert herself with poorly-timed negative communications to the press and public that were discovered by Lively's own publicist, Leslie Sloane. Jones' blunders clumsily disrupted a putative truce with Sloane by communicating negatively with the media about Lively, exacerbating negative press and public attention on Lively by adding fuel to negative stories of a feud with Lively. Jones' incompetent handling of communications with the press only caused negative stories to circulate further and attract greater attention. (*Id.* ¶ 37).

Abel was named as a defendant in Lively's pleadings only because of, and in direct consequence of, Abel's discharge of her duties as a competent public relations professional employed by Jonesworks. (*Id.* ¶ 38). Abel was named as a defendant in Lively's pleadings only because of, and in direct consequence of, Abel's obedience to the directions of Jonesworks. (*Id.* ¶ 39).

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## **ARGUMENT**

### I.    **The Court Should Disregard Jonesworks' Improper Factual Allegations**

When deciding a motion under Rule 12(b)(6), courts may review "only a narrow universe of materials, which includes facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, ... matters of which judicial notice may be taken, as well as document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (internal quotation omitted). "Generally, in determining whether a complaint states a claim, the court is required to make the assessment based solely on the allegations in the complaint, without considering extraneous facts and materials . . . [E]xtraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint." *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025).

Jonesworks improperly cites Lively's Amended Complaint to introduce alleged "facts" in support of the Motion. However, when determining whether allegations in a third-party complaint can withstand a motion to dismiss, the defendant/third-party plaintiff is not deemed to have admitted the allegations in the main action's complaint. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 461 (S.D.N.Y. 2019). To the contrary, the allegations of the initial/underlying pleading are "irrelevant." *Id.* Nonetheless, the Motion improperly cites Lively's Amended Complaint *fourteen* times. (Dkt. 211, p. 7, 10, 24). None of Lively's allegations can be considered on this Motion.

Furthermore, Jonesworks routinely cites Abel's Amended Answer to Lively's Amended Complaint and to Abel's Amended Answer to Jonesworks' Complaint. (Dkt. 211, p. 2, 3, 5, 7, 8, 21). Even assuming the Court takes judicial notice of Abel's other pleadings, the Court should not consider the spliced and/or cherry-picked communications that Jonesworks attempts to spin into factual allegations. For instance, citing to paragraphs 76 – 86 of Abel's Amended Answer to Jonesworks' Complaint and pasting *parts* of what are alleged to be text messages into the Motion, Jonesworks misrepresents to the Court that Abel "admits" that she actively worked to undermine Jonesworks' reputation. (Dkt. 211, p. 3). A basic review of Abel's Amended Answer shows that, in response to paragraphs 76 – 86, Abel either *denied* the allegation and/or merely admitted to sending the referenced communication and *denied that Jonesworks' pleading had accurately characterized the communication*. (25-cv-00779, Dkt. 50, ¶¶ 76 – 86). As another example of Jonesworks' deceptive conduct, citing to paragraph 33 of Abel's Amended Answer to Lively's Amended Complaint, Jonesworks claims that Abel developed and executed "a smear campaign to 'bury' and 'destroy' Lively." (Dkt. 211, p. 8). In truth, paragraph 33 merely admits that Abel sent a communication "and specifically denies that the communications and their context are

characterized accurately in the Complaint" of Lively. (Dkt. 187, ¶ 33). In sum, the Court should reject Jonesworks' effort to mischaracterize Abel's factual allegations.

II.     **Abel Has Adequately Pleaded a Claim for Statutory Indemnification**

A.     **The 2021 Employment Agreement is Null and Void**

Abel was a California employee of Jonesworks beginning in 2020, even prior to being forced to sign any agreement containing any reference to New York law. (Dkt. 187, ¶¶ 16-19). Abel's 2020 Employment Agreement was governed by California law. (*Id.* ¶ 19). California has a statute to protect California employees, which unambiguously requires that "[a]n employer **shall indemnify** his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]" Cal. Lab. Code § 2802(a) (emphasis added).

In 2020, as a California employee subject to statutory protection requiring her employer to indemnify her, Abel could not waive this right to indemnification, even if her employer tried to force her to do so. The California statute provides, "[a]ny contract or agreement express or implied, made by any employee to waive the benefits of this article or any part thereof, **is null and void** …." Cal. Lab. Code. § 2804 (emphasis added).

Thus, in 2021, when Abel was required by Jonesworks to sign the 2021 Employment Agreement containing an indemnification clause contrary to California Labor Code § 2802, she did not suddenly lose the protection of that statute which she previously enjoyed. Nor could she agree to waive them. It was impossible to make any such agreement, under the law in effect in the place where she was employed. For that reason, there was no 2021 contract ever formed between Abel and Jonesworks, because the 2021 Employment Agreement was null and void by operation of California Labor Code § 2804.

Under basic principles of contract law, a "void contract is not a contract at all." *Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc.*, 495 F.3d 1078, 1081 (9th Cir. 2007) (internal quotation marks omitted) (citing Restatement (Second) of Contracts §§ 7, 163 cmt. a); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("An agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all."). Therefore, the 2021 Employment Agreement is no basis for a defense to the statutory indemnification claim made by Abel against Jonesworks here, because it is not a contract at all.

Jonesworks fails to address the point that under California Labor Code § 2804 the 2021 Employment Agreement was null and void, even though that is expressly alleged. (Dkt. 187 ¶ 23) ("As set forth herein, pursuant to California Labor Code § 2804, the 2021 Employment Agreement is null and void."); (*id.* ¶ 49) ("The 2021 Employment Agreement was a contract or agreement made by an employee to waive the benefits of Article 2 of the California Labor Code or a part thereof, and is null and void."). *See* Dkt. 211, at 11-16 (never addressing whether the 2021 Employment Agreement is null and void).[2]

Instead, Jonesworks tries to conflate the issue of whether any contract was formed with the separate issues of validity or scope of a particular provision within the contract. But Second Circuit precedent holds that these issues are distinct; and moreover, the issue of contract formation is analytically prior to whether a particular clause within the contract may be valid and enforceable. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d at 251 (noting that the distinction between questions of formation and questions of validity "accords with basic principles of contract law"); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve

---

[2] Having failed to argue the point in its moving brief, Jonesworks may not do so for the first time on reply. *Ruradan Corp. v. City of New York*, No. 22-CV-03074 (LJL), 2023 WL 2632185, at *5 (S.D.N.Y. Mar. 24, 2023) (Liman, J.) (refusing to consider new assertion by defendant on reply because, "[a]rguments may not be made for the first time in a reply brief.") (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)).

the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *see also Trans–Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract."); *B–S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 661 n.9 (10th Cir. 2006) (referring to "the logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid"). Logically, there must actually be a contract in existence in order for questions of validity of a particular provision within it to arise. If the contract itself is null and void, and therefore not a contract at all, then there is no occasion to consider its choice of law clause.

Jonesworks therefore begs the question when it argues that under this Court's reasoning in *Stevens & Company LLC v. Espat*, 24-cv-5223, 2025 WL 950989 (S.D.N.Y. Mar. 28, 2025), the choice of New York law clause in the 2021 Employment Agreement is enforceable and does not violate New York public policy. *First*, there was no dispute in *Stevens & Co.* as to the very existence of a contract. Here, there is. In *Stevens & Co.*, the defendant himself asserted a breach of contract counterclaim, and merely attacked the enforceability of the contract's choice of law and venue provisions. *Id.* at *11. Abel has not asserted any claim under the 2021 Employment Agreement and pleads that it was null and void. *Second*, *Stevens & Co.* dealt with a different California statute, Labor Code Section 925, which operates differently, by rendering certain objectionable provisions within a contract voidable "at the request of the employee." *Id.* at *9. That is distinct from Labor Code Section 2804, which makes the "contract or agreement, express or implied … null and void." Cal. Lab. Code. § 2804. *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) ("A void contract is one that produces no legal

obligation ... Unlike a void contract, a voidable contract is an agreement that '[u]nless rescinded ... imposes on the parties the same obligations as if it were not voidable.'") (quoting Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1:20, at 50 (4th ed.1990)). *Third*, in *Stevens & Co.* dismissal of the plaintiff's California statutory causes of action, including under the Labor Code, was *denied*, because even if the contract contained a valid New York choice of law clause, "[t]he agreement between the parties does not reach these claims." *Stevens & Co.*, 2025 WL 950989 at *10.

Accordingly, contrary to Jonesworks' arguments, *Stevens & Co.* is no barrier to Abel's claim for statutory indemnification. Nor are *Ministers & Missionaries Benefit Board v. Snow*, 26 N.Y.3d 466 (2015), or *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020), the two authorities which this Court attempted to harmonize in *Stevens & Co.* Both are clearly distinguishable. The parties in *Ministers & Missionaries* did not dispute whether they had an agreement in the form of the retirement and death benefit plans at issue, only whether the references to the "laws of … New York" included a statutory choice of law directive. 26 N.Y.3d at 470 ("Thus, the parties here agree that, pursuant to the choice-of-law provisions in the MMBB plans, the contracts will be governed only by New York's substantive law, not by New York's common-law conflict-of-laws rules."). There was no question as to whether the plans were "null and void." And in *Moseley*, although grounds may have existed for the borrower victims of the criminal lending scheme to dispute whether their loan agreements were null and void, the posture of the case made it unnecessary for them to do so. *See, e.g.*, 980 F.3d at 16, n.5.

Here, far from being the cleverest out-of-state employer to ever discover a legal loophole stripping all California employees of their statutory rights, Jonesworks was exactly the type of employer the statute was intended to stop and was attempting to do exactly what Labor Code

Section 2802 prohibits. Jonesworks could require a California employee to waive the protection of Labor Code Section 2802 in an employment contract by inserting a New York choice of law clause any more than a foreign employer could require an American employee located in America to waive the Thirteenth Amendment of the Constitution by inserting a North Korean choice of law clause in a contract for slavery. In either case, the contract is null and void – it is no contract at all.

**B.    Even If the 2021 Employment Agreement Were Not Null and Void, Its Choice of Law Clause Would Not Reach California Statutory Claims**

But even if the 2021 Employment Agreement were not null and void, the scope of its choice of law clause does not reach Abel's California statutory cause of action for indemnification, which arises under Labor Code Section 2802. The choice of law clause, by its own terms, would apply only to "This Agreement and the performance of the Parties' obligations **hereunder** …." (Dkt. 187, ¶ 22 (emphasis added). "Hereunder" means "under this agreement*." Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 555 (S.D.N.Y. 2016). ("'Hereunder' means 'under this,' 'under this written statement,' 'under this agreement,' or 'in accordance with the terms of this document.'") (quoting Webster's Third New International Dictionary 1059 (1993)). Thus, the narrow scope would not reach the performance of Jonesworks' non-contractual obligations, including its obligations under California statutory law to indemnify an employee*. See Stevens & Co.*, 2025 WL 950989 at *10 ("[t]he agreement between the parties does not reach these claims," including employment-related claims under California Labor Code's minimum wage provisions, anti-retaliation, and accurate wage statement requirements).

Jonesworks misleadingly omits the key word "hereunder" in its quotation of the choice of law clause in its argument concerning the clause's scope, resulting in the wildly overbroad mischaracterization that the clause applies to "the performance of the Parties' obligations." (Dkt. 211, p. 14) (lack of ellipsis indicating omission in original). Jonesworks then argues, based on this

misleading elision which changes the meaning of the quote, that the clause is broad in scope and covers anything relating to Abel's employment. (*Id.*, at 14-15). In fact, the clause is narrowly restricted only to "[t]his Agreement and the performance of the Parties' obligations hereunder …." (Dkt. 187, ¶ 22).

While it is true that Abel seeks indemnification for losses she incurred in the discharge of her duties in employment, Jonesworks' obligation arises from statute, not from the 2021 Employment Agreement. *See* Cal. Lab. Code § 2802 ("An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]"). It is simply specious to argue, as Jonesworks does, that because indemnification is in some way related to employment, it therefore must be "covered by the New York choice-of-law clause." (Dkt. 211, p. 15). *See Stevens & Co.*, 2025 WL 950989 at *10 (declining to dismiss California labor and employment statutory claims based on a narrow New York choice of law provision in an employment contract).

It is also contrary to New York law. "New York courts typically apply the law selected in contractual choice-of-law clauses only to causes of action sounding in contract unless 'the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties.'" *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 20-cv-5120 (LJL), 2022 WL 1997207, at *16 (S.D.N.Y. June 6, 2022) (quoting *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020)). Extra-contractual claims will not fall within the scope of a narrow choice-of-law provision "even where the rights at issue are closely related to contractual rights and obligations." *Mayagüez S.A. v. Citigroup, Inc.*, 16 Civ. 6788 (PGG), 2018 WL 1587597, at *7 (S.D.N.Y. Mar. 28, 2018).

14

None of the authorities cited by Jonesworks held that a claim arising under statute and relating to employment therefore falls within the scope of a choice of law clause narrowly limited to an employment agreement. (Dkt. 211, p. 15). Indeed, the only case cited by Jonesworks which addressed statutory claims at all is *Stevens & Co.*, the decision cited in Jonesworks' memorandum more than any other. But in that case, this Court expressly *rejected* the position Jonesworks takes here, instead holding that California statutory claims are *outside* the scope of the contract's choice of law clause, a fact Jonesworks conspicuously neglects to mention. *See Stevens & Co.*, 2025 WL 950989 at \*10 ("[t]he agreement between the parties does not reach these claims."). Other authority from this district is in accord. *See, e.g.*, *Warman v. Am. Nat'l Standards Inst.*, No. 15-CV-5486 (RA), 2016 WL 3676681, at \*3 (S.D.N.Y. July 6, 2016) (holding plaintiff cannot state a claim under NYLL on the basis of a choice of law clause which provides, "[t]his Agreement shall be governed by the laws of the State of New York, exclusive of New York's conflict of interest rules"); *Rice v. Scudder Kemper Investments, Inc.*, No. 01-CV-7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003), *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 Fed.Appx. 147 (2d Cir. 2006) (clause providing "[t]he validity, interpretation, construction, and performance of this Agreement shall be governed by the law of the state of New York," held too narrow to include plaintiff's New York Human Rights Law claim); *Burnett v. Physicians' Online, Inc.*, No. 94-CV-2731 TPG, 1997 WL 470136, at \*12 (S.D.N.Y. Aug. 15, 1997) (clause providing, "[t]his Agreement shall be governed and construed in accordance with the law of the State of New York," does not bar claim for gender discrimination under California statutory law).

Accordingly, even assuming arguendo the applicability of the 2021 Employment Agreement's choice of New York law clause, notwithstanding Jonesworks' misleading quotation

thereof, Abel's cause of action for statutory indemnification still falls outside the scope of the clause and should not be dismissed.

## III.    Abel Has Adequately Pleaded a Claim for Implied/Common Law Indemnification

In its Motion, Jonesworks erroneously argues that: (1) the indemnification clause in Abel's Employment Agreement supersedes her claim for common law indemnification; and (2) Abel failed to state a claim for common law indemnification. (Dkt. 211, p. 16). Both arguments should be rejected.

### A.    A Contractual Indemnification Clause Does Not Preclude Common Law Indemnification

Jonesworks contends that the indemnification clause in the Employment Agreement somehow supersedes her common law indemnification rights. (Dkt. 211, p. 16 – 17). However, Jonesworks does not cite *any* legal authority for that proposition. Instead, Jonesworks merely cites New York cases standing for the unremarkable proposition that contracts should be enforced.

The New York Court of Appeals has held that "[p]lacing an indemnity provision in the contract did not alter [the] common-law duty, for the mere existence of an indemnity provision does not indicate an intent to replace common-law liability with contractual liability." *Hawthorne v. South Bronx Cmty. Corp.*, 78 N.Y.2d 433, 437 (1991); *see also Zurich Ins. Co. v. Lumbermen's Cas. Co.*, 233 A.D.2d 186, 187 (1st Dep't 1996) ("Contractual and common-law indemnity may coexist…."); *Dewitt v. Pizzagalli Const. Co.*, 183 A.D.2d 991, 992 (3d Dep't 1992) (affirming summary judgment on claims for common law and contractual indemnity); *Hunt v. Werner Spitz Const. Co.,* 152 A.D.2d 936 (4th Dep't 1989) (holding that lower court "erred in determining that the contractual indemnification claim supersedes the common-law claims").

"Nothing in [a contractual indemnification] clause is inconsistent with [an indemnitee's] right to common-law indemnity and there is no reason why the right to common-law indemnity

and contractual indemnity should not coexist." *Aetna Cas. & Sur. Co. v. Lumbermens Mut. Cas. Co.,* 136 A.D.2d 246, 248 (4th Dep't 1988), *lv. denied* 73 N.Y.2d 701, 535 N.Y.S.2d 595, 532 N.E.2d 101 (1988). The existence of a contract of indemnity "does not preclude the existence also of a common-law right to indemnity." (*Id.*) (*citing O'Dowd v. American Sur. Co. of N.Y.,* 3 N.Y.2d 347, 353 (1957).

Federal courts interpreting New York law have also held that a contractual indemnification clause does not preclude common law indemnification. *See, e.g.*, *Gomez v. Preferred Rentals*, No. 96 Civ. 2725(LAP), 1997 WL 749389, at *10 n. 11 (S.D.N.Y. Dec. 3, 1997) ("My ruling that 6–32 Associates is entitled to common law indemnification does not preclude a finding that Baron is also obligated to indemnify 6–32 Associates pursuant to the terms of the lease.") (citing *Hawthorne*, 78 N.Y.2d 433); *Casey ex rel. Casey v. Ryder Truck Rental, Inc.*, No. 00-cv-2856, 2005 WL 1150228, at *21 (E.D.N.Y. May 16, 2005) ("the fact that the parties entered into a contractual indemnification provision does not abrogate any responsibility that Atkinson may have under New York common law to indemnify Ryder….") (citing *Hawthorne*, 78 N.Y.2d 433).

In sum, it is black-letter New York law that a contractual indemnification clause *does not* preclude a claim for common law indemnification. In turn, the Court should reject Jonesworks' argument that the Employment Agreement's contractual indemnification precludes the Second Cause of Action for common law indemnification.

**B.    Abel Has Sufficiently Alleged that Her Actions Were Within the Scope of Her Employment and in Furtherance of Jonesworks' Business**

"It is the general rule that an agent is entitled to reimbursement for payments made from the agent's own funds for necessary expenses incurred within the agent's authority in order to consummate that which they are employed or directed to do by the principal." 2A N.Y. Jur.2d Agency § 225 (citing New York law). "An agent, compelled to defend a baseless suit, grounded

upon acts performed in his principal's business, may recover from the principal the expenses of his defense." *Admiral Oriental Line v. U.S.*, 86 F.2d 201, 202 (2d Cir. 1936) (citing New York law).

Here, the Third-Party Complaint alleges that Jonesworks is a public relations firm, that Abel was employed by Jonesworks as a Vice President and that, in such capacity and for almost four years, Abel managed Jonesworks' public relations work for its clients, Wayfarer and Baldoni. (Dkt. 187, ¶¶ 9, 16, 26 – 27). Abel's duties at Jonesworks included providing strategic communication services to Wayfarer and Baldoni in connection with *It Ends With Us* (the "Film"). (*Id.* ¶ 26). The Third-Party Complaint further alleges that ***Jonesworks and its owner Stephanie Jones*** "***gave Abel directions*** to carry out the duties of a competent public relations professional on behalf of the clients, Wayfarer, Heath, and Baldoni, including but not limited to, ***garnering good publicity and eliminating or minimizing bad publicity for them and their Film***." (*Id.* ¶ 36) (emphasis added).

The Third-Party Complaint also alleges that Lively's claims against Abel are grounded upon acts that Abel performed in furtherance of Jonesworks' business and that Abel was employed and *directed*, by Jonesworks and Stephanie Jones, to do. Specifically, Abel's pleadings allege: "The conduct alleged by [Lively] to have been committed by Abel and to have caused harm to [Lively] consists of ***public relations activities on behalf of Wayfarer and Baldoni*** during the time period when they were ***clients of Jonesworks***. To the extent any such conduct by Abel was undertaken as alleged (which Abel disputes), ***it was undertaken in obedience to Jonesworks' directions***." (*Id.* ¶ 32) (emphasis added). Indeed, the Third-Party Complaint alleges that, according to Lively's own pleadings, Abel's position "as an employee of Jonesworks … ***directly gave rise***" to the so-called "retaliatory campaign" of public relations activities against Lively (which Abel disputes). (*Id.* ¶ 34) (emphasis added). The Third-Party Complaint alleges that Lively's "allegations against Abel

(the veracity of which Abel disputes) are ***of conduct*** and communications directed at the press and the public to garner good publicity and to eliminate or minimize bad publicity ***for the clients Wayfarer and Baldoni—activities which are the very essence of the public relations profession***. (*Id.* ¶ 35) (emphasis added).

Notably, not only does the Third-Party Complaint allege that Stephanie Jones directed Abel to perform any (purported) public relations activities that are the subject of Lively's claims, but the Third-Party Complaint also alleges that Jonesworks' owner Stephanie Jones *participated* in any such activities. (*Id.* ¶ 37). Specifically, the Third-Party Complaint alleges that ***Stephanie Jones'*** public relations blunders and "incompetent handling of communications with the press only ***caused negative stories [concerning Lively] to circulate further and attract greater attention***." (*Id.* ¶ 37) (emphasis added). Hence, the Court should not give weight to Jonesworks' improper factual allegation that Abel went "rogue." (Dkt. 211, p. 22).

The Third-Party Complaint alleges that Abel was named as a defendant by Lively "only because of, and in direct consequence of, Abel's discharge of her duties as a competent public relations professional employed by Jonesworks", that Abel acted within the scope of her authority, that Jonesworks profited and was enriched by the fees paid by Wayfarer and Baldoni for public relations services, that Jonesworks directed Abel to carry out the alleged public relations activities that are the basis for Lively's claims, and that Abel "was not at fault and bore no responsibility" for Lively's claims. (*Id.* ¶¶ 38 – 39, 53 – 61). Therefore, the Third-Party Complaint alleges enough facts to state a claim for common law indemnification that is plausible on its face, which is sufficient to survive a Rule 12(b)(6) motion.

To distract the Court from Abel's well-pleaded allegations in the Third-Party Complaint, Jonesworks cites Abel's pleadings in the related case of *Jones v. Abel* (25-cv-00779) (the "Jones

Case") and then *mischaracterizes* the nature of the allegations therein. Citing to paragraphs 75 – 82 of Abel's Amended Counterclaims in the Jones Case ("Am. Counterclaims"), Jonesworks incorrectly contends that Abel coordinated an "unsanctioned smear campaign" for Wayfarer and Baldoni against Lively in purported "defiance" of Stephanie Jones's instructions. (Dkt. 211, p. 19). In truth, Abel alleges in the Jones Case that: (a) Stephanie Jones "participat[ed] in meetings, calls and written correspondence" related to the public relations crisis involving Baldoni and Lively (Am. Counterclaims ¶ 74); (b) Jones "was copied on virtually all communications during this period and was privy to Wayfarer's predicament and its chosen strategy of non-confrontation" (*id.* ¶ 79); (c) Jones admitted that she was "deeply involved in strategy, planning, account management and high level PR and media comms" in August 2024 (*id.)*; (d) Jones would have been contemporaneously aware of any "smear campaign" against Lively if it existed; and (e) in contravention of Wayfarer's instruction to *not* speak with the press about Lively, *Jones* spoke with the Daily Mail and "sparked a chain of unfortunately developments" from a public relations perspective and *concerning Lively*. (*Id.* ¶¶ 80 – 84). Hence, the Amended Counterclaims in the Jones Case allege that Jones sanctioned and participated in any public relations "campaign" at issue in Lively's pleadings, and did not "reject" it as Jonesworks now contends. (Dkt. 211, p. 20).

Jonesworks' contention that the alleged public relations campaign at issue in Lively's claims represents a "significant departure" from Abel's normal duties and were "beyond the scope of her employment" (*id.*) is refuted by the Third-Party Complaint's allegations, which the Court *must assume are true*. As detailed above, the pleading alleges that: (a) Jonesworks is a public relations firm; (b) Wayfarer and Baldoni were clients thereof; (c) Abel was employed by Jonesworks to provide public relations services (including to Wayfarer and Baldoni); (d) any public relations services provided by Abel to Wayfarer and Baldoni that are the subject of Lively's claims

were performed "to garner good publicity and to eliminate or minimize bad publicity for the clients Wayfarer and Baldoni – activities which are the very essence of the public relations profession"; and (e) Jonesworks and Jones *directed* the public relations activities at issue. (Dkt. 187, ¶¶ 9, 16, 26, 32, 35 – 36). Stated differently, the Third-Party Complaint sufficiently alleges that the conduct in which Abel allegedly engaged *were* her normal duties and within the scope of her employment.

As for Jonesworks' contention that "Abel cannot plead innocence or mistake" (Dkt. 211, p. 22 – 23), that is a red herring. Abel does not allege that she made an error in judgment or mistake, but rather that she carried out her public relationship duties as she was employed and directed to do by Jonesworks, as described above.

The cases relied upon by Jonesworks are easily distinguished. In *Boatman v. County of Onondaga*, 229 A.D.3d 1214 (4th Dep't 2024), a plaintiff who was sexually abused by a probation officer employed by the County sought to hold the County vicariously liable, and the Fourth Department granted the County's motion to dismiss, finding that no reasonable factfinder could conclude that sexual abuse constituted action taken with the scope of the probation officer's employment. *Id.* at 1216. As for *Bracero v. State of New York*, 81 Misc.3d 1214(A), 2023 N.Y. Slip Op. 51336 (U) (N.Y. Ct. Cl. 2023), the Court of Claims granted the State *summary judgment* on an inmate's attempt to hold it vicariously liable for an assault committed by a corrections officer, holding that "the brutal beating cannot be characterized as an irregular performance of duty or mere disregard of instructions" but rather that the "vicious attack upon claimant was a significant departure from the normal methods of performance of the duties of a corrections officer, as a matter of law, and that [the correction officer's] conduct was completely divorced from the interests of his employer." *Id.* at *6. In *Danner-Cantalino v. City of New York*, 85 A.D.3d 709 (2d Dep't 2011), the plaintiff and a New York City police officer were "involved in a longstanding personal dispute"

and the plaintiff's arrest and prosecution "were precipitated by an altercation between them that occurred while" the policer officer "was off duty." *Id.* at 709. The plaintiff sued the police officer for malicious prosecution, and the police officer filed a third-party complaint against his employer, the City of New York, seeking indemnification under New York's General Municipal Law (which is applicable to City employees). *Id.* The third-party complaint was *not* dismissed on a motion to dismiss, but rather on *summary judgment*, after the Second Department held that no triable issue of fact existed as to whether the officer's conduct was unrelated to her employment or her official duties. *Id.*

Here, the Third-Party Complaint sufficiently alleges that the conduct about which Lively complains to have been committed by Abel consists of *regular public relations activities* on behalf of Wayfarer and Baldoni, during the time that they were *clients of Jonesworks* (a public relations firm) and undertaken at *the direction of Jonesworks*. (Dkt. 32). That is unquestionably different from a parole officer sexually abusing a former inmate (as was the case in *Boatman*), a corrections officer brutally assaulting an inmate (as was the case in *Bracero*), and from a police officer settling a personal dispute by causing her adversary to be improperly arrested and prosecuted (as was the situation in *Danner-Cantalino*). And, for good measure, *Bracero* and *Danner-Cantalino* were decided on summary judgment and not a motion to dismiss.

## IV.    <u>Abel Has Adequately Pleaded a Claim for Contribution</u>

A claim for contribution is available under CPLR Section 1401 where "two or more persons ... are subject to liability for damages for the same personal injury, injury to property or wrongful death…." (CPLR § 1401; *see American Home Assur. Co. v. Nausch, Hogan & Murray, Inc.*, 71 A.D.3d 550, 552 (1st Dep't 2010).

Jonesworks incorrectly argues that "Abel's vague allegations fail to establish any plausible cause of action that Lively would have against Jonesworks, let alone one that contributed to the 'same injury' underlying Lively's complaint." (Dkt. 211, p. 24). However, Abel's allegations are anything but "vague."  In over a dozen detailed paragraphs, the Third-Party Complaint explains that: (a) Lively's claims against Abel (for aiding and abetting harassment and retaliation, intentional infliction of emotional distress, false light invasion and civil conspiracy) all arise out a so-called public relations "campaign" against Lively; (b) Jonesworks directed Abel to provide public relations services to Wayfarer and Baldoni, including in a fashion that garnered good publicity  and eliminated/minimized bad publicity for them and the Film; and (c) based upon the foregoing, Jonesworks contributed to the same alleged injuries about which Lively complains. (Dkt. 211, ¶¶ 25 – 40, 57 – 61, 65).

Next, Jonesworks inaccurately contends that "Abel does not make a single allegation regarding how Jonesworks was allegedly involved in any of these actions or purportedly contributed to, let alone caused, the harms to Lively associated with them." (Dkt. 211, p. 24). Again, the Third-Party Complaint contains *multiple* allegations that Jonesworks was ultimately responsible for any public relations actions that (purportedly) damaged Lively. (Dkt. 187, ¶¶ 35 – 37). In fact, the pleading alleges that Jonesworks' owner Stephanie Jones:

> *personally interfered* with Abel's competent handling of her duties, including by attempting to insert herself *with poorly-timed negative communications to the press and public* that were discovered by [Lively's] own publicist, Leslie Sloane. *Jones' blunders clumsily disrupted a putative truce* with Sloane by communicating negatively with the media about [Lively], exacerbating negative press and public attention on [Lively] by adding fuel to negative stories of a feud with [Lively]. Jones' incompetent handling of communications with the press only caused negative stories to circulate further and attract greater attention.

(*Id.* ¶ 37) (emphasis added). Therefore, Abel has stated a claim for contribution.

## CONCLUSION

For all the reasons set forth herein and to be presented at oral argument should the Court order it, Abel respectfully requests that the Court deny the Motion in its entirety.


Dated: May 27, 2025
       New York, NY

Respectfully submitted,

**MEISTER SEELIG & FEIN PLLC**

By: _/s/ Mitchell Schuster_
      Mitchell Schuster
      Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
       kaf@msf-law.com


Dated: May 27, 2025
       Los Angeles, CA

**LINER FREEDMAN TAITELMAN**
    **+ COOLEY**

By: _/s/ Bryan Freedman_
      Bryan J. Freedman (*pro hac vice*)
      Miles M. Cooley (*pro hac vice*)
      Theresa M Troupson (*pro hac vice*)
      Summer Benson (*pro hac vice*)
      Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
      mcooley@lftcllp.com
      ttroupson@lftcllp.com
      sbenson@lftcllp.com
      jsunshine@lftcllp.com