**manatt**

**Esra A. Hudson**
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

June 6, 2025

**VIA ECF**
The Honorable Lewis J. Liman
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 1620
New York, NY 10007

Re:   *Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049-LJL [rel. No. 1:25-cv-00449]

Dear Judge Liman:

On behalf of Blake Lively and Ryan Reynolds (collectively, the "Lively-Reynolds Parties"), we write pursuant to Rules 1.C and 4.C of Your Honor's Individual Practices to respectfully request an order compelling Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC ("IEWU"), Melissa Nathan, The Agency Group PR LLC ("TAG"), and Jennifer Abel (collectively, the "Wayfarer Parties") to respond to certain interrogatories propounded by the Lively-Reynolds Parties. The Interrogatories at issue seek basic information regarding the identity of potential witnesses and documents relevant to the litigation.[1]  *See* Local Civil Rule 33.3(a).

Despite receiving these interrogatories almost ***three months ago*** (March 14, 2025), the Wayfarer Parties have not provided a substantive response to almost any request. Instead, they have spent months trying to re-write and narrow the Interrogatories to improperly limit the scope of highly relevant information that is uniquely within their possession, custody, and control. *See* **Ex. A**. It is respectfully submitted that this gamesmanship must be put to an end and the Wayfarer Parties be ordered, <u>within five days of the Court's ruling of this Motion</u>, to provide responses to the Interrogatories identified below.[2]

**I.   The Wayfarer Parties Should Identify the Email Accounts Provided to Third Parties.**

As modified, the Lively-Reynolds Parties request each Wayfarer Party to "Identify any email account from May 1, 2024 to date, in which any third party, including but not limited to Content Creators or the media, had access for the purpose of communicating information of any kind, including messaging, talking points, guidelines, scripts, or other information, regarding Ms. Lively, Mr. Reynolds, the Digital Campaign, the CRD Complaint, or the Actions." **Ex. A** at 6.  As counsel explained on several occasions, the Lively-Reynolds Parties believe that the Wayfarer Parties have engaged in covert tactics to communicate with third parties in a manner to avoid leaving a paper trail—such as by placing information in a "draft" folder or other email repository, and providing a third party with viewing access

---

[1] For the Court's convenience the interrogatories in dispute are identified in **Appendix A** to this letter brief.  Based on their confidential designation, the Wayfarer Parties' responses and objections to the Lively-Parties' Interrogatories are being filed under seal as Exhibits B-M.  Prior to filing this Motion, the parties conferred in good faith but have reached an impasse.

[2] Even when they agree, the Wayfarer Parties inexplicably delay in providing responses. Although they finally agreed on May 21 to provide responses to some of the Interrogatories, they refused to produce the responses on June 6 as requested and instead unilaterally elected to delay another *10 days days*.

Hon. Lewis J. Liman
June 6, 2025
Page 2

to the folder or email, which enables the third party to view the information without leaving a digital trace. ***The Wayfarer Parties have never denied that they have engaged in clandestine communications.***

Despite this, the Wayfarer Parties refuse to provide any response by disingenuously claiming that the concept of "access" is vague and ambiguous. *See Arias-Zeballos v. Tan*, 2007 WL 1599150, at *2 (S.D.N.Y. May 31, 2007) (overruling vague and undue burden objections where the defendant failed to carry its burden demonstrating same); *Freeman v. Giuliani*, 2024 WL 5135913, at *2 (S.D.N.Y. Dec. 17, 2024) (Liman, J.) ("The burden is on the objecting party to show that the interrogatory is improper."). Instead, they have proposed to limit this request to only circumstances in which "login credentials" were provided to a third party. This improperly narrows the scope of the request and would exclude circumstances in which, for example, a third party gained access to an email account without using "login credentials," such as through a screen share or some other means that are not known to the Lively-Reynolds Party, but which the Wayfarer Partes alone would know. The Wayfarer Parties are well-aware of the purpose of this request, yet continue to plead ignorance about what the basic English word "access" means, in an effort to justify withholding plainly relevant information.

## II.     The Wayfarer Parties Should Identify the Reporters They Have Communicated With.

Each of the Wayfarer Parties are requested to "Identify all reporters and news or media outlets of any kind with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, or the Lively/Reynolds Companies." To narrow the scope, the Lively-Reynolds parties agreed to limit the date range from June 15, 2024 to the present for all parties. *See* **Ex. A** at 5. The relevance of the information sought is not in dispute, particularly since Ms. Lively alleges that in mid-June 2024, Mr. Baldoni took to the offensive in response to her complaints of his on-set misconduct, putting the retaliatory smear campaign in motion, which (to this day) involves the pervasive use of "friendly media sources to ferret their narrative into the public." *See* Am. Compl., ¶¶ 188, 296-97, 302. Ms. Lively alleges that the Wayfarer Parties have weaponized the media as part of the retaliatory smear campaign against her—she is the subject of a sea of media stories and it is essential to her claims to learn which reporters the Wayfarer Parties were interacting with in order to understand which stories the Wayfarer Parties may have, among other things, influenced or seeded. Having these names in advance of depositions is also essential to focus lines of questioning

In their latest response, the Wayfarer Parties seek to narrow this request to (i) a discrete subset of topics; (ii) a six-month window (June 15, 2024-December 21, 2024); and (iii) "individual reporters only where reasonably known or ascertainable." **Ex. A.** at 5.[3] Each of these proposals is inappropriate. On the subset, they would exclude any communications with the media about Ms. Lively, Mr. Reynolds or their companies *unless* those communications fell within a topic that the Wayfarer Parties in their sole discretion deem to be sufficiently connected to claims or defenses in the case. But Ms. Lively's Complaint alleges a secret, untraceable "smear" campaign, and it cannot be left to the alleged perpetrators of that campaign to exercise topic-based discretion. The Lively-Reynolds Parties have offered to accept a list or reporters/media *by topic*, but do not agree that the Wayfarer Parties may in their sole discretion exclude certain reporters altogether because they believe that certain

---

[3] Specifically, the Wayfarer Parties propose limiting this request to "communications relating to the claims and defenses in this action, including the CRD Complaint, the alleged 'smear campaign,'" and public statements "concerning the parties in the context of the underlying allegations." **Ex. A.** at 5.

Hon. Lewis J. Liman
June 6, 2025
Page 3

communications about Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, or the Lively/Reynolds Companies are somehow irrelevant, which is not a basis for withholding this information. *Johnson v. J. Walter Thompson U.S.A., LLC*, 2017 WL 3055098, at *3 (S.D.N.Y. July 18, 2017) ("In order to justify withholding relevant information, the party resisting discovery must show "good cause."); *Freeman*, 2024 WL 5135913, at *3-4 (accord). As drafted, the Interrogatory provides a clear, objective, standard for the Wayfarer Parties to identify the responsive individuals.

Second, because the Wayfarer Parties' retaliatory smear campaign is alleged to be ongoing, the Wayfarer Parties' attempt to cabin their response to just a short window ending when Ms. Lively filed her CRD Complaint is wholly improper. *See* Am. Compl., ¶¶ 296-97, 302. Indeed, Ms. Lively has sued the Wayfarer Parties for defamation based primarily on statements made *after* December 21, 2024. *Id.*, ¶¶ 294-300.

Finally, the Wayfarer Parties' attempt to limit their response to those individuals that are "reasonably known or ascertainable" makes no sense. Surely, the Wayfarer Parties know who they spoke to and when—and those individuals must be identified. *See* Local Civil Rule 33.3(a); *Ferguson v. Ferrante*, 2014 WL 1327968, at *2 (S.D.N.Y. Apr. 3, 2014).

### III. The Wayfarer Parties Should Identify the Content Creators They Communicated With.

With the exception of IEWU, each of the Wayfarer Parties are asked to "Identify all Content Creators with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present." As modified, the Lively-Reynolds Parties proposed defining the term "Content Creators" to mean: "any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates." **Ex. A.** at 7-8. Again, the Wayfarer Parties do not (and cannot) dispute the relevance of this request—a key aspect of Ms. Lively's case centers on the retaliatory *social media campaign* that began in Summer of 2024, in which the Wayfarer Parties weaponized social media—with the help of Content Creators—and created and disseminated "content designed to eviscerate Ms. Lively's credibility." Am. Compl., ¶ 38, *id.* ¶¶ 31-47 (describing the Wayfarer Parties' retaliatory social media campaign). As such, the identity of these Content Creators is clearly necessary and tied to Ms. Lively's claims, must be provided. *See Ferguson*, 2014 WL 1327968, at *2.

Yet the Wayfarer Parties have repeatedly insisted on arbitrarily limiting the term "Content Creators" to only those individuals with "at least 10,000 followers or subscribers on any single platform" and exclude "niche" individuals "whose platforms are unrelated to the subject matter of this litigation." **Ex. A** at 7. Now, they propose an entirely new term altogether that is limited to individuals that "create or disseminate *original content*" and who were "engaged by any Wayfarer Party in connection with messaging, promotion, or reputational management concerning the subject matter of this litigation." *Id.* Like their other proposals, this, too, places too fine a point and appears designed to intentionally exclude certain individuals from being identified. As parties deeply entrenched in the entertainment and public relation industries, the concept of a "Content Creator" should not be this difficult for the Wayfarer Parties to grasp and it should not require a motion for the Wayfarer Parties to produce this basic information, which can and should be promptly produced.

Hon. Lewis J. Liman
June 6, 2025
Page 4

                    Respectfully submitted,

                    /s/ Esra A. Hudson

| WILLKIE FARR & GALLAGHER LLP | MANATT, PHELPS & PHILLIPS, LLP |
|---|---|
| Michael J. Gottlieb | Esra A. Hudson (admitted *pro hac* vice) |
| Kristin E. Bender | Stephanie A. Roeser (admitted *pro hac* vice) |
| Meryl Governski (admitted *pro hac vice*) | 2049 Century Park East, Suite 1700 |
| 1875 K Street NW | Los Angeles, CA 90067 |
| Washington, DC 20006 | (310) 312-4000 |
| (202) 303-1000 | ehudson@manatt.com |
| mgottlieb@willkie.com | sroeser@manatt.com |
| kbender@willkie.com | |
| mgovernski@willkie.com | Matthew F. Bruno |
| | 7 Times Sq. |
| Aaron E. Nathan | New York, NY 10036 |
| 787 7th Avenue | (212) 790-4500 |
| New York, NY 10019 | mbruno@manatt.com |
| (212) 728-8000 | |
| anathan@willkie.com | |

*Attorneys for Blake Lively and Ryan Reynolds*

# APPENDIX A

| Control Number | Interrogatory | IEWU ROG No. | Baldoni ROG No. | J. Abel ROG No. | J. Heath ROG No. | M. Nathan ROG No. | S. Sarowitz ROG No. | The Agency Group ROG No. | Wayfarer ROG No. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Identify any email account from May 1, 2024 to date, in which any third party, including but not limited to Content Creators or the media, had access for the purpose of communicating information of any kind, including messaging, talking points, guidelines, scripts, or other information, regarding Ms. Lively, Mr. Reynolds, the Digital Campaign, the CRD Complaint, or the Actions. | N/A | Reynolds Interrog. No. 3 | Reynolds Interrog. No. 2 | Reynolds Interrog. No. 3 | Reynolds Interrog. No. 2 | Reynolds Interrog. No. 3 | Lively Interrog. No. 3 | Reynolds Interrog. No. 3 |
| 2 | Identify all reporters and news or media outlets of any kind with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, or the Lively/Reynolds Companies.<br><br>(The Lively-Reynolds Parties agreed to limit the date range from June 15, 2024 to the Present for all parties.) | Lively Interrog. No. 1 | Lively Interrog. No. 1 | N/A | Lively Interrog. No. 1 | N/A | Lively Interrog. No. 1 | Lively Interrog. No. 6 | Lively Interrog. No. 1 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3 | Identify all Content Creators with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present.<br><br>(As modified, the Lively-Reynolds Parties proposed defining the term "Content Creators" to mean: "any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates.") | N/A | Reynolds Interrog. No. 6 | Reynolds Interrog. No. 4 | Reynolds Interrog. No. 5 | Reynolds Interrog. No. 4 | Reynolds Interrog. No. 4 | Lively Interrog. No. 5 | Reynolds Interrog. No. 5 |