# manatt

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

June 9, 2025

**VIA ECF**
The Honorable Lewis J. Liman
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 1620
New York, NY 10007

Re:   *Lively v. Wayfarer Studios LLC, et al.*, **No. 1:24-cv-10049-LJL [rel. No. 1:25-cv-00449]**

Dear Judge Liman:

Ms. Lively respectfully submits this letter in opposition to Jed Wallace and Street Relations' (the "Wallace Parties") letter-motion to stay discovery. Dkt. No. 287. The Wallace Parties have failed to establish good cause under Fed. R. Civ. P. 16(b) and 26(c). In an effort to meet that burden, the Wallace Parties inflate the probability of success on their Motion to Dismiss, dramatically downplay their role in the "social manipulation" campaign at the center of this litigation, and ignore that *their own lawsuit* against Ms. Lively in Texas (the "Texas Action,") puts the truth of her allegations against them directly at issue—accusing Ms. Lively of defamation based on statements made in her complaint before the California Civil Rights Department ("CRD Complaint"), and thereby implicating facts identical to those in question here and which will inevitably be subject to discovery, whether in this venue or another.

The Wallace Parties' portrayal of themselves as peripheral figures in this action—just a small business and its owner from rural Texas—directly contradicts Ms. Lively's Amended Complaint ("FAC") and contemporaneous documents. As alleged in the FAC, in August 2024, after Ms. Lively and others raised concerns about sexual harassment and other misconduct on the set of *It Ends With Us*, the Wayfarer Parties[1] retained the Wallace Parties to design and implement a "social manipulation" campaign to destroy Ms. Lively's reputation, to discredit her in the event she spoke out about her experiences on set, and to conceal their misconduct. *See* Dkt. No. 84 ¶¶ 24–45. As alleged, the Wallace Parties were not minor players in this scheme, and they did not act on the sidelines. Instead, they coordinated directly with the Wayfarer Parties to conduct what was internally described as a "social combat plan" and to deploy a digital army to flood social media with targeted messaging designed to "bury" Ms. Lively and promote Baldoni. *See id.* ¶¶ 34–45, 194–97, 215–60.

Evidence already obtained through the limited discovery produced thus far suggests that the Wallace Parties knew that Ms. Lively had raised concerns about sexual harassment and other misconduct on set, *see* **Exhibit A**, and, as of August 9, 2024, described themselves as actively working on the project, with Mr. Wallace expressing his excitement about making significant progress, *see* **Exhibit B**. As a result of that work, in internal communications, the Wayfarer Parties credited the Wallace Parties with causing a "shift on social" by "shift[ing] the narrative towards shining a spotlight on [Ms. Lively]." *Id.* ¶ 245-52. Indeed, the Wallace Defendants' efforts were so successful that Nathan commented that the "majority of socials are so pro Justin and I don't even agree with half of them [sic] lol." *Id.* ¶ 247. In

---

[1] The "Wayfarer Parties" is defined herein to include Defendants Wayfarer Studios LLC "Wayfarer," Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Jennifer Abel, Melissa Nathan, and The Agency Group PR LLC ("TAG").

Hon. Lewis J. Liman
June 9, 2025
Page 2

other words, the Wallace Parties were not peripheral at all—but rather were architects and executers of the retaliation campaign at the heart of this dispute. That Ms. Lively asserts only two causes of action against them or that the Wallace Parties themselves assert no affirmative claims in this action is of no moment. They are central figures in this case, and discovery must move forward as to each of them. Indeed, staying discovery would only delay uncovering the full extent of the Wallace Parties' involvement and the retaliation campaign.

**The Motion to Dismiss Does Not Raise Substantial Grounds for Dismissal**. Courts in this District routinely deny discovery stays where a motion to dismiss is pending. "A motion to dismiss does not automatically stay discovery," and "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Hong Leong Fin. Ltd. (Sing.) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citation omitted). That is especially true where, as here, the motion raises fact-bound personal jurisdiction and venue disputes—not a facial legal deficiency. The Wallace Parties do not challenge the legal sufficiency of the conspiracy allegations or the New York contacts of their co-conspirators; they argue only that Wallace was not involved. *See* Dkt. No. 142, at 11-12. But a defendant cannot defeat personal jurisdiction merely by asserting that they were not involved in a conspiracy (contrary to the complaint's well-pled allegations). Mr. Wallace's self-serving declaration does not warrant dismissal or a stay. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013); *Alwand Vahan Jewelry, Ltd. v. Lustour, Inc.*, 2021 WL 3604517, at *4 (S.D.N.Y. Aug. 13, 2021). As set forth in Ms. Lively's opposition, the Wallace Parties' motion to dismiss will fail. *See* Dkt. 161.

In fact, even in cases where "strong arguments exist on both sides," courts in this District routinely deny requests to stay discovery. *Guiffre v. Maxwell*, 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016); *see also P.C. v. Driscoll*, 2024 WL 3606511, at *1 (S.D.N.Y. July 30, 2024) (Liman, J.); *Robbins v. Candy Digital Inc.*, 2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024) (Liman, J.). That principle applies with even greater force here, where the dismissal arguments are weak. The presumption in this District is that discovery proceeds despite a pending motion to dismiss, and the Wallace Parties have failed to overcome that presumption. *See Driscoll*, 2024 WL 3606511, at *1; *Robbins*, 2024 WL 2221362, at *1.

**The Wallace Parties' Burden Arguments Are Overstated and Misplaced**. The Wallace Parties' burden arguments similarly fail. <u>First</u>, as detailed above, the Wallace Parties are not "ancillary" to this dispute. They are at the heart of it. This is further evidenced by the requests that Ms. Lively has propounded to them, seeking, for example, information and materials regarding (a) the Wallace Parties' business and capability; (b) the Wallace Parties' knowledge of on-set behavior and complaints about the same; (c) the intricacies of the "untraceable" retaliation campaign, including what it entailed, how it was implemented (including regarding through what digital channels), who the Wallace Parties worked with, and how it was financed, among other things); and (d) the veracity of Mr. Wallace's representations in the declaration he submitted in support of his Motion to Dismiss. This discovery against the Wallace Parties is inevitable. Their conduct—designing and executing an untraceable digital campaign against Ms. Lively—is central to the case and will be a key focus of discovery. This information is unquestionably essential to the action, and, as such, any nominal burden imposed on the Wallace Parties by having to respond to discovery and to sit for depositions is outweighed by the potential prejudice in depriving Ms. Lively of this information. If the Court grants the Wallace Parties' motion to dismiss, Ms. Lively will simply serve them with subpoenas for the same documents and testimony. Staying discovery now would delay the inevitable, impede the "just" and "speedy" imperatives set forth in Fed. R. Civ. P. 1, and potentially deny Ms. Lively timely access to information she needs to pursue appropriate

Hon. Lewis J. Liman
June 9, 2025
Page 3

discovery from additional sources known to the Wallace Parties. *Cambridge Cap. LLC v. Ruby Has LLC*, 2021 WL 2413320, at *3 (S.D.N.Y. June 10, 2021) (Liman, J.); *Idle Media, Inc. v. Create Music Grp., Inc.*, 2024 WL 2946248, at *2 (S.D.N.Y. June 11, 2024); *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 79 (E.D.N.Y. 2006).

<u>Second</u>, thanks to the Wallace Parties' own actions, discovery against the Wallace Parties will proceed regardless of venue. In their Texas Action, the Wallace Parties assert the same defamation allegations against Ms. Lively as the Wayfarer Parties did here—claiming, for example, that Ms. Lively defamed the Wallace Parties by identifying them in her CRD Complaint and, allegedly, falsely accusing them of engaging in the retaliation campaign. By asserting those claims, the Wallace Parties have placed the truth of Ms. Lively's allegations directly at issue. In other words, the Wallace Parties' *own position* is that discovery should proceed on the very same facts and circumstances subject to discovery in this action. A stay would not advance the ends of justice where, as here, any discovery produced could be used in other proceedings if the case were dismissed. *See Friedman as Tr. of Ellett Bros., LLC v. Nexien, Inc.*, 2021 WL 5910763, at *7 (E.D.N.Y. Nov. 9, 2021).

<u>Third</u>, a stay is not the appropriate mechanism to address concerns about either the breadth of discovery requests or confidentiality concerns. As to the former, if the Wallace Parties believe that certain discovery requests or deposition topics are overbroad, their remedy is a motion for a protective order—not a blanket stay. *See* Dkt. No. 156 (Memo Endorsement); *Cambridge Cap.*, 2021 WL 2413320, at *3. And the Wallace Parties' purported confidentiality concerns can be addressed by the protective order already in place. Put simply, the Wallace Parties cannot pick and choose which discovery they will engage in and then run to the Court claiming undue burden. *See Hicksville Water Dist. v. Jerry Spiegel Assocs., Inc.*, 2022 WL 4072683, at *4 (E.D.N.Y. Sept. 2, 2022).

<u>Fourth</u>, the Wallace Parties' complaint that "dozens of depositions" would be unduly burdensome mischaracterizes the effect of the stay. Of course, a stay of discovery is not tantamount to a dismissal. Even if the Court does impose a stay (which it should not), the Wallace Parties will still be defendants to this action and, thus, not relieved of the need to attend or participate in depositions (though, of course, they may choose to do so). In any event, Ms. Lively has already proposed remote appearances to limit any burden to the Wallace Parties implicated by out-of-state depositions.

**Ms. Lively Will Be Prejudiced by a Stay**. Perhaps most importantly, Ms. Lively will be irreparably prejudiced in her ability to mount her case and defend the claims against her if a stay is imposed. The deadline for the parties to complete substantial document productions is July 1, 2025, and fact discovery closes on August 14, 2025. *See* Dkt. No. 58. Staying discovery against the Wallace Parties now would also impair Ms. Lively's ability to meet the Court's deadlines. The prejudice is especially acute here because Wallace's conduct may unlock a new frontier of discovery into the retaliatory digital media campaign. As detailed above and in Ms. Lively's Amended Complaint, internal communications show that the Wallace Parties' work caused a "visible shift" on social media against Ms. Lively and caused millions of viewers to unknowingly consume manipulated content generated by the Wallace Parties' digital team. Only the Wallace Parties can speak to the methods they and their team used and the extent of the manipulation. Staying discovery now would unfairly compromise Ms. Lively's ability to both prosecute her affirmative claims and defend herself against the defamation claims.

For the foregoing reasons, Ms. Lively respectfully requests that the Court deny the Wallace Parties' motion for a stay.

Hon. Lewis J. Liman
June 9, 2025
Page 4

                                            Respectfully submitted,

                                            /s/ Esra A. Hudson

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP<br>Michael J. Gottlieb<br>Kristin E. Bender<br>Meryl Governski (admitted *pro hac vice*)<br>1875 K Street NW<br>Washington, DC 20006<br>(202) 303-1000<br>mgottlieb@willkie.com<br>kbender@willkie.com<br>mgovernski@willkie.com<br><br>Aaron E. Nathan<br>787 7th Avenue<br>New York, NY 10019<br>(212) 728-8000<br>anathan@willkie.com | MANATT, PHELPS & PHILLIPS, LLP<br>Esra A. Hudson (admitted *pro hac* vice)<br>Stephanie A. Roeser (admitted *pro hac v*ice)<br>2049 Century Park East, Suite 1700<br>Los Angeles, CA 90067<br>(310) 312-4000<br>ehudson@manatt.com<br>sroeser@manatt.com<br><br>Matthew F. Bruno<br>7 Times Sq.<br>New York, NY 10036<br>(212) 790-4500<br>mbruno@manatt.com<br><br>*Attorneys for Blake Lively* |