

Maxwell Breed
Partner

Direct Tel: (212) 326-0113
mbreed@pryorcashman.com

June 18, 2025

BY ECF
Hon. Lewis L. Liman
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    **Lively v. Wayfarer Studios LLC, et al., No. 1:24-cv-10049-LJL**

Dear Judge Liman:

    For nonparties Katherine Case and Breanna Butler Koslow, we respectfully respond, as directed (Dkt. 323), to plaintiff Blake Lively's letter motion (Dkt. 321) to compel compliance with two subpoenas duces tecum (Dkt. 322-1 & 322-2) by June 27, 2025.

    ***Introduction.*** Lively's letter—submitted by an attorney who did not participate in the meet-and-confer process—misstates what occurred and elides that Lively's counsel, presumably aware of the overbroad and disproportionate nature of their requests, agreed to significantly limit the subpoenas and to bear certain collection and processing costs. This concedes that the subpoenas are subject to quashing or limitation, at least to comport with counsel's agreements. In no event can the admittedly objectionable subpoenas be enforced, in their current form or on an accelerated timetable, against two nonparties, as Lively demands. Her motion should be denied.

    ***Background.*** Ms. Case is a former, and Ms. Butler Koslow a current, employee of The Agency Group PR LLC (Dkt. 221, p.1). Neither features in the operative complaint (Dkt. 84). Nor, as Lively's counsel admits (Dkt. 321, p. 1), have their communications with parties or their principals appeared in party productions. The reason: our clients were but party employees during the few weeks of events at issue here.

    Amid this context, after agreeing to accept service of the subpoenas (Ex. 1), we timely responded on March 17, 2025 (Dkt. 322-4 & 322-5). Our responses and objections were not "boilerplate" as claimed (Dkt. 321, n. 3), but drew from the fact that, for each of the requests, Lively (whose subpoena practice has been called into question [Dkt. 204]), had not narrowly tailored any of her requests, but had broadly demanded "All Documents" from "May 1, 2024, to the present" even though, for instance, multiple requests overlapped party requests and imposed disproportionate burdens on nonparties.

    We met and conferred with Lively's counsel during several calls and over email (Dkt. 322-3). After the first conferral on March 25, Lively's counsel offered that request 1 be limited to



Hon. Lewis J. Liman
June 18, 2025
Page 2 of 3

exclude individual parties, requests 2 and 4 be revised from "with or concerning" to "concerning, and requests 5 through 7 be specifically limited (Breed Dec., Ex. 1). Our next conferral resulted in further agreed limitations that were memorialized in an April 18, 2025 email (id., Ex. 2). During the next conferral on May 5, we proposed that search and collection for the narrowed subpoenas be an attorney-guided self-search, to mitigate the burden of imposing device-imaging costs on nonparties (id., Exs. 3 & 4). Lively's counsel then proposed, on May 20, to provide a vendor for device imaging and collection (id., Ex. 5).

That proposal led to another conferral on May 29, during which Lively's counsel identified two "gating issues": the time-period for the collection and whether group texts including parties need be reviewed and produced. Lively's counsel memorialized that conferral in a May 30 email, demanding that certain actions be completed less than a week later, even though scheduling had not been discussed (id., Ex. 6). We responded the next business day (June 2), noting both our general agreement with the process and that the meet-and-confer duration had been a function of the subpoenas' acknowledged objectionability, schedule coordination, and gaps in Lively's counsel's responses (id., Ex. 7). Declining a planned call, Lively's counsel, on June 3, disavowed their "gating issues" and set another unilateral "compliance" deadline (id., Ex. 8). We responded that day, advising that custodial interviews had occurred or were to occur (both have), offering to compromise the collection time-period at July 1, 2024 through December 21, 2024, declining to review party group texts, and asserting willingness to memorialize all agreements, conduct a vendor call within days, and then collect, review, and produce (id., at Ex. 9). Lively's counsel did not respond, instead submitting their letter motion nine days later (Dkt. 321 & 322). We oppose.

**The Court Should Deny Lively's Motion.** What is deemphasized or omitted is dispositive. As emails confirm (Dkt. 322-3; Breed Dec., Exs. 1–9), agreements had been reached to limit the subpoenas and to shift electronic collection costs, with the only outstanding issues being collection time-period and whether party group texts should be searched.[1] Refusing to engage on these final issues, especially after acknowledging the subpoenas' objectionability, should not be considered good-faith engagement in the meet-and-confer process. This lapsed good faith requires denial of the motion. *Vaigasi v. Solow Mgmt. Corp.*, No. 11CIV5088RMBHBP, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016). Lively's counsel concedes this—as they made no effort to meet and confer after we proposed a compromise on the collection date range and exclusion of party group texts (Dkt. 321, p. 1–2)—itself a violation of Rule 1(C) of the Court's Individual Practices. That, too, justifies the motion's denial. *Walsh v. Caliber Home Loans, Inc.*, No. 19-CV-08966 (PMH), 2021 WL 124684, at *1 (S.D.N.Y. Jan. 13, 2021).

Lively's agreement to limit the subpoenas and provide a collection vendor acknowledges that the subpoenas are not enforceable as propounded. Nonparties should not be subject to the same burdens as party witnesses. *E.g., Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 CIV. 1608

---

[1] Those two issues could easily have been compromised, as we would have agreed to: (a) split the difference for the initial collection date at June 1, 2025, leaving the closing date at December 21, 2025 (as we understand that date had already been agreed for party collections); and (b) collect group texts involving parties to the consolidated action with Lively reserving the right to reassert the request for those texts if warranted following the close of party discovery.



Hon. Lewis J. Liman
June 18, 2025
Page 3 of 3

RJH JCF, 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010). Requests for production of nonparties must be, among other things, narrowly tailored and proportionate to the both the needs of the subpoenaing party and the imposition on the recipient. *Breaking Media, Inc. v. Jowers*, No. 21 MISC. 194 (KPF), 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021); *UMB Bank, N.A. v. Sanofi*, No. 15CIV8725GBDRWL, 2017 WL 6398628, at *1 (S.D.N.Y. Nov. 22, 2017). Courts thus routinely quash or limit nonparty subpoenas that are overbroad or impose an undue burden.[2] Because Lively's subpoenas here are neither narrowly tailored nor proportionate (with her counsel merely speculating about whether probative information might be had), and are thus quashable or limitable, Lively's motion should be denied.

Lively also should be bound by her counsel's agreements concerning the subpoenas. Hence, were compliance to be ordered, any compliance order should include the limitations and mitigations already offered and agreed during the meet-and-confer process. *E.g.*, *Hallmark Licensing LLC v. Dickens Inc.*, No. 17CV2149SJFAYS, 2018 WL 6573435, at *3–4 (E.D.N.Y. Dec. 13, 2018). The only issues in dispute are (a) the time-period for collection, (b) whether group text messages including parties need be reviewed and produced, and (c) the deadline for production. To protect our nonparty clients, we respectfully submit that the period should be July 1, 2024 through December 21, 2024 (roughly a month before TAG's involvement through Lively's first complaint), group texts featuring parties should not be reviewed or produced unless a need has been established after party productions, and Ms. Case and Ms. Butler Koslow should have at least 21 days to produce responsive documents following the proper delimitation of the concededly objectionable subpoenas (the demanded June 27 production date now being impossible as well as overly burdensome). These reasonable limitations, along with those to which Lively has already agreed, would ensure that Ms. Case and Ms. Butler Koslow are not forced to bear further undue costs or privacy invasions, while also providing Lively with any potentially relevant documentation in their possession.

In closing, we respectfully request that Lively's motion be denied or, if granted, limited as agreed and as appropriate, as set forth above. We thank the Court for the time and consideration, even as Lively's letter motion ought not have been made at all.

Respectfully,

Maxwell Breed

cc:     Counsel of Record (by ECF)

---

[2] *See, e.g.*, *Girard St. Inv. Holdings LLC v. Petroleos De Venezuela, S.A.*, No. 23-CV-10772 (JSR), 2024 WL 4837277, at *1 (S.D.N.Y. Nov. 20, 2024) (granting nonparties' motion to quash where the document requests were "patently overbroad" and the requested materials could be obtained from the defendant or co-defendant); *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12CV5067JFKJLC, 2017 WL 4676806, at *19 (S.D.N.Y. Oct. 17, 2017); *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *4 (S.D.N.Y. Jan. 25, 2016).