UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Brett Douglas McDowell,<br><br>                    Movant,<br><br>v.<br><br>Lively v. Wayfarer Studios LLC, et al., | Case No. 1:24-cv-10049 |

**NOTICE OF PROCEDURAL PRESERVATION REGARDING CONFLICTS OF INTEREST, SYMBOLIC RETALIATION, AND DELAY IN FILING**

To the Honorable Court:

I, Brett Douglas McDowell, respectfully submit this filing as a pro se movant with a Rule 24 motion to intervene currently pending on the docket.

This filing is submitted in support of that motion, to preserve the procedural record and provide supplemental context concerning conflicts of interest, reputational harm, and delayed communications that directly impact my protectable interests. I respectfully request that the Court consider this submission in evaluating the necessity and scope of intervention.

As background, I have received reports that Mr. Bryan Freedman, counsel of record for Defendants, was contacted by Alison Lovelady at the request of Eiko Ishiwata, an attorney with ties to Time's Up, in relation to concerns now raised before the Court that predate Mr. Baldoni's involvement in the symbolic retaliation issues involving Dogpool and Nicepool, and that also

involve prior matters related to Mr. Reynolds, Mr. McElhenney, and their professional associates. This context underscores the relevance of institutional and narrative entanglements raised in my filings. My spouse, Eiko Ishiwata, was among the signatories of the August 2021 open letter titled "Enough is Enough: An Open Letter from Survivors to Time's Up," which criticized systemic failures by the organization, including those related to retaliation and exclusion.

The issues raised in my filings, particularly those involving symbolic retaliation, cultural appropriation, and reputational targeting through the narrative pairing of Dogpool and Nicepool, remain unaddressed in the Second Amended Complaint, which was not filed by the stated deadline. Prior public statements by Mr. Freedman's office had indicated such a filing was forthcoming.

In addition, I wish to note the following:

- Mr. Freedman's simultaneous or recent representation of Beau DeMayo and FKA Twigs, whose former relationship with Robert Pattinson (a known associate of Nick Frenkel, central to my filings), creates potential material overlap and perceived conflicts.
- Mr. Freedman's high-profile representation of Chris Cuomo—whom he has publicly described as a "trusted friend and mentor"—in litigation stemming from Cuomo's termination for actions related to the Andrew Cuomo sexual harassment scandal places him in direct proximity to the public fallout that contributed to the collapse of Time's Up. My spouse, Eiko Ishiwata, was directly engaged in that reckoning as a signatory of the August 2021 open letter criticizing Time's Up's systemic failures in addressing retaliation and exclusion.

- Mr. Freedman's public remarks criticizing reporting as "skewed" in connection with the Lively litigation further reflect on narrative control strategies and selective disclosure of communications that materially exclude symbolic and reputational issues detailed in my docketed submissions.
- Mr. Freedman's representation of Gabrielle Union, Megyn Kelly, and others in disputes concerning organizational backlash and systemic discrimination underscores a pattern that raises legitimate concern about institutional entanglements relevant to these proceedings.

Taken together, these facts support the need for additional transparency and clarification. It is unclear whether the omission of the Second Amended Complaint reflects strategic legal discretion, concern over reputational implications, or another matter requiring disclosure.

At this point, given Mr. Freedman's silence and the procedural posture of this case, I no longer believe leniency is warranted. Rather, his pattern of non-responsiveness, selective representation, and overlapping entanglements reinforces the urgent need to preserve my right to discovery access through limited intervention under Rule 24. This is especially critical in light of the issues documented in unsealed discovery, which suggest symbolic targeting and reputational harm.

For example, unsealed discovery requests filed as Document 326-1 on June 13, 2025, include communications with the cast and crew, production and costume teams, composers, and individuals such as Taylor Swift, Shawn Levy, Bradley Cooper, and Peter Greenstein — as well as agencies including Vision PR and Sloane. These categories directly overlap with my Rule 24 interests, particularly in light of symbolic and reputational targeting already documented. Furthermore, the conspicuous absence of Hugh Jackman — despite his direct personal and

professional relationship with Mr. Reynolds, and the extensive symbolic overlap outlined in my filings — raises further concern. Given Jackman's central role in the relevant media narratives and his prominence in the Dogpool-Nicepool framing, his omission from the discovery categories is both procedurally suspect and substantively significant. Notably, while the Dogpool-Nicepool narrative pairing, as substantiated in my prior filings and Shawn Levy are referenced in the unsealed discovery, the documentation does not meaningfully address the symbolic targeting aspects central to my filings. This limited framing, despite the evident relevance of the pairing and Mr. Levy's role, reinforces the need for independent oversight. The unsealing of these materials on June 23, 2025, further supports the timeliness and necessity of intervention. This pattern of omission and selective framing, coupled with the failure to file the Second Amended Complaint, raises the reasonable concern that material facts relevant to symbolic targeting have been withheld or deprioritized — potentially affecting the integrity of these proceedings.

Moreover, the continued appearance of Nicepool in discovery materials — even after Judge Liman's dismissal of the defamation claims — demonstrates that symbolic and reputational issues remain active and unresolved. This not only reinforces my standing under Rule 24, but also highlights the risk that materials directly impacting my rights may be introduced or resolved without my knowledge or participation. The current lack of good faith access to such materials raises serious procedural concerns and further supports my need for timely intervention to protect a direct and legally cognizable interest.

It is further noted that, based on public reporting and procedural patterns, the absence of Ms. Blake Lively at her scheduled deposition may have contributed to this delay. If this is in fact the reason for the failure to file the Second Amended Complaint, such strategic silence—absent

clarification—only heightens the procedural ambiguity affecting all parties, including intervenors with overlapping interests.

Moreover, as a putative intervenor with a direct and protectable interest in the reputational and symbolic matters already at issue in discovery, I assert that I should be granted access to those existing discovery materials before any settlement is finalized. Denial of this opportunity would risk procedural unfairness and erode the integrity of the fact-finding process. See *Wolpe v. Poretsky*, 144 F.2d 505, 508 (D.C. Cir. 1944) ("The purpose of intervention is to prevent a multiplicity of suits where common questions of law or fact are involved."); see also *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 466 (S.D.N.Y. 2000) (noting that intervention may be warranted to allow access to discovery that affects reputational and property interests).

Furthermore, Perez Hilton — a known client of Mr. Freedman — was among the first to publicly reference the missed June 23, 2025, filing deadline[1], but has expressed that he will not report further on materials directly related to the symbolic and reputational concerns I have raised (see EXHIBIT A). Similarly, none of Mr. Freedman's other media- or influencer-affiliated clients have acknowledged or addressed these overlapping matters.

This pattern is not without precedent. During Britney Spears' conservatorship crisis, Mr. Freedman simultaneously represented individuals in proximity to her management (including Larry Rudolph) while also representing media figures like Mr. Hilton, whose coverage significantly contributed to reputational harm. In fact this is highlighted on Mr Freedman's firms

---

[1] Based on the available data, Perez Hilton's post at 04:07 UTC on June 24, 2025 (10:07 PM MDT on June 23, 2025), appears to be one of the first, if not the first, public reports linking Justin Baldoni's failure to file the Second Amended Complaint by the June 23 deadline to a voluntary decision to drop all his claims against Blake Lively. The timing—shortly after the deadline passed—and the lack of earlier reports from other major outlets or X users on this specific development support this observation. The post is available at:
https://x.com/PerezHilton/status/1937361861340737731?t=dRDjoJXdBeQCDsb1SSj5PQ&s=19

website[2]. These overlapping relationships underscore the appearance of reputational management and selective silence — particularly when public narratives implicate Mr. Freedman's clients — and further support my argument for intervention under Rule 24.

Absent clarification, this selective silence may give the appearance of reputational management or narrative suppression intended to shield particular parties or storylines — potentially at the expense of, and/or involving, Mr. Baldoni and Wayfarer Studios. This pattern reinforces my argument under Rule 24 that I have a direct and protectable interest in reputational matters that are not adequately represented — and may, in fact, be subject to ongoing exclusion or suppression within the current proceedings.

Should any discovery reveal that reputational management strategies — including payments to influencers, PR consultants, or media intermediaries — were undertaken in ways that obscured, dismissed, or discredited symbolic concerns like those raised in my filings, this would further substantiate my interest in intervention. Where public narrative control is weaponized against individuals raising protected speech or reputational harm, such activity creates a material overlap with my filings and may reflect reputational retaliation rather than neutral storytelling or business practice.

Absent transparency, the failure to file introduces avoidable uncertainty, placing pro se parties like myself in the position of having to interpret strategic silence in a vacuum—something that undermines the integrity of these proceedings and risks further procedural inequity.

I respectfully notify the Court that I have already sent correspondence to Mr. Freedman seeking clarification on his position regarding Ms. Lovelady. It is my position that he is, or ought to be,

---

[2] https://lftcllp.com/lawyers/bryan-j-freedman/

aware of the implications outlined above. As of this filing, no response has been received. This delay in communication is impeding my ability to finalize and submit my addendum, which is due this evening. Accordingly, I respectfully request that the Court consider granting a brief procedural extension and directing Mr. Freedman to provide a timely response or statement of position, so that the record may be completed with the transparency and fairness this matter requires.

*I respectfully reserve the right to submit further briefing or evidence on this issue, should counsel's silence persist or new developments arise that materially impact the fairness of these proceedings.*

Because I have demonstrated a direct and protectable interest, the risk of impairment absent access to discovery, and a lack of adequate representation, I respectfully assert that intervention under Rule 24(a)(2) is warranted to preserve my rights and ensure procedural fairness.

**Exhibits**

In support of this notice, I respectfully attach the following materials:

- **Exhibit A** – Screenshot of Perez Hilton's June 24, 2025 post, which appears to be the first public report linking Mr. Baldoni's failure to file the Second Amended Complaint to the voluntary dismissal of claims against Ms. Lively. The timing and singularity of this report support concerns of reputational narrative management relevant to my Rule 24 motion.
    - Notably, Mr. Hilton — a client of Mr. Freedman has indicated he would not report on me or my filings, despite developments of public interest and symbolic relevance. The timing and singularity of this report support concerns of

   reputational narrative management and selective silence relevant to my Rule 24 motion.

- **Exhibit B** – Public record of my spouse Eiko Ishiwata's signature on the August 2021 open letter titled "Enough is Enough: An Open Letter from Survivors to Time's Up." This exhibit is directly relevant to institutional and reputational entanglements involving Mr. Cuomo, Time's Up, and Mr. Freedman's prior representations.

- **Exhibit C** – A record of relevant communications between Eiko Ishiwata and Alison Lovelady, as well as correspondence sent to Mr. Bryan Freedman. This includes notice of overlapping issues and demonstrates reasonable efforts to resolve or clarify matters now before the Court.

These exhibits are submitted in support of the procedural and factual assertions made above and are intended to aid the Court in its evaluation of the outstanding issues relating to discovery access, transparency, and fair representation under Rule 24.

Respectfully submitted,

**/s/ Brett Douglas McDowell**
Brett Douglas McDowell (Pro Se)
legal@redriver-rebellion.ca
+1 (204) 202-5904

 Dated: June 24, 2025