# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

**VIA ECF**

July 2, 2025

Hon. Lewis J. Liman
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Liman:

      Plaintiff Blake Lively respectfully submits this letter in response to the Court's Order at Dkt. No. 379. The Amended Complaint identifies numerous specific co-conspirators who committed overt acts in furtherance of Defendants' conspiracy while physically located in New York. "As just a few examples," the Amended Complaint alleges that Defendants Baldoni, Heath, and Wayfarer heard from Ms. Lively in person in New York about the very complaints that prompted their retaliation campaign; that those Defendants engaged Jonesworks, a non-party co-conspirator with a physical presence (and a principal place of business) in New York; that Melissa Nathan lived in and "conducted business" in New York "during a portion of the relevant period,"; and that Sarowitz announced the conspiracy's plan to ruin the lives of Ms. Lively and her family at the Film's New York premiere. Am. Compl. ¶ 73.[1] The Amended Complaint also alleges that Nathan (among other co-conspirators) furthered the conspiracy by "communicating with (or causing content to be provided to) journalists, content creators, and media entities based in New York, including at least one journalist at the New York Post and another at the New York Times," one of whom was Nathan's sister. *Id.* ¶¶ 73, 240. Given that Nathan lived in New York during a portion of the relevant period, it is reasonable to infer that Nathan conducted much of that activity—each instance of which would constitute an overt act[2]—while physically present in New York.

      Those New York contacts are easily attributed to the Wallace Defendants for purposes of a motion-to-dismiss stage personal jurisdiction analysis. The Amended Complaint alleges that Nathan and TAG "had a relationship with Mr. Wallace that preceded this litigation," and that "Ms. Nathan worked with Mr. Wallace on previous matters and TAG retained him to work with them on behalf of Defendant Wayfarer and Mr. Baldoni." Am. Compl. ¶ 222. It is reasonable to infer that Wallace *knew* that Nathan resided in New York (or at least, that she had resided there during a portion of her participation in the conspiracy). That is sufficient to attribute Nathan and TAG's New York-based acts to the Wallace Defendants under both New York and federal law. New York's "broad approach to agency" attributes long-arm statute contacts to co-conspirators when "a) the defendant had an awareness of the effects in New York of [the conspiracy's] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *FAT Brands Inc. v. Ramjeet*, 75 F.4th 118, 126, 128 (2d Cir. 2023) (cleaned up). The Wallace Defendants have never contested the first two elements, nor could they, because the Amended Complaint alleges that (1) the

---

[1] Am. Compl. ¶ 62 (Nathan "lived in Brooklyn" during a "portion of the relevant period"); *see* Dkt. No. 153, ¶ 62 (Nathan admitting this allegation).

[2] In this context as in others, the "an overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 271 (2d Cir. 2023) (cleaned up).

Wallace Defendants knew that their co-conspirators included New York-based individuals and entities who were taking steps in New York to retaliate against Ms. Lively and portray her in a false light, and (2) that the Wallace Defendants were paid for it. Am. Compl. ¶¶ 63, 214, 222, 225–26. "The third requirement—that the New York-based co-conspirators acted at the direction or under the control of the out-of-state defendant—may be satisfied by an allegation that the out-of-state defendant was aware of the torts being committed by co-conspirators in New York." *FAT Brands*, 75 F.4th at 127 (cleaned up). "In other words, New York courts do not mandate a showing of control or direction to establish conspiracy-based personal jurisdiction," *Berkshire Bank v. Lloyds Banking Grp. plc*, 2022 WL 569819, at *3 (2d Cir. Feb. 25, 2022) (summary order), and this element is satisfied even where the out-of-state defendant acts at the direction of an in-state co-conspirator, *see Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 8 (1st Dep't 2013). Here, as in *FAT Brands*, Ms. Lively "alleges more than knowledge," she alleges that the Wallace Defendants "participated directly in the scheme being executed by, among others, New York-based co-conspirators." 75 F.4th at 127. The Court therefore must "easily infer that they were aware of the torts being committed in New York." *Id.*

To be clear, however, conspiracy jurisdiction over the Wallace Defendants is also proper under § 302(a)(1) of the New York long-arm statute, something the Wallace Parties never challenged in their opening brief. Although the Wallace Defendants challenged the application of the long-arm statute to their own *individual* activities, Dkt. No. 142, at 13-15, the Wallace Defendants *nowhere* challenged the sufficiency of *other* co-conspirator's jurisdictional contacts under *any* provision of the New York long-arm statute, Dkt. 161, at 15-17. Nor did the Wallace Parties challenge the *attribution* of their co-conspirators' conceded contacts to themselves under the cases they later cited in reply. *Compare* Dkt. No. 142 at 13-18, *with* Dkt. No. 170, at 9-10. The Wallace Defendants' silence as to their co-conspirators' contacts was enough to establish statutory long-arm jurisdiction over them. *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023) (attributing contacts to an out-of-state co-conspirator where "[n]o party disputes" the sufficiency of the in-state co-conspirator's contacts).

In any event, the co-conspirators had extensive suit-related (a)(1) contacts with New York that must be attributed to the Wallace Defendants. "Section 302(a)(1) is a single act statute, meaning that, proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful." *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 2024 WL 1533189, at *6 (S.D.N.Y. Apr. 8, 2024) (cleaned up); *see id.* (equating "transacted business" under (a)(1) with purposeful availment). *Supra* at 1. Each of those contacts must be attributed to the Wallace Defendants under both the long-arm statute and federal due process priniples. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 125 (2d Cir. 2021) (engaging in a conspiracy with co-conspirators "based in" a jurisdiction renders "overt acts taken by" such co-conspirators foreseeable); *Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc.*, 2024 WL 989841, at *9 (S.D.N.Y. Mar. 7, 2024) ("By joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York[,] the defendant purposely availed himself of the privilege of conducting activities within New York.") (cleaned up).[3]

---

[3] Any defects as to the allegations of personal jurisdiction with respect to the Wallace Parties would be curable by amendment based upon materials obtained in discovery, including from Mr. Wallace. Those additional allegations would relate to the nature and timing of the Wallace Defendants' retention, information shared with the Wallace Defendants, and the nature and timing of the co-conspirators activities in New York (including Ms. Nathan's maintenance of a residence in New York).

2

3

Respectfully submitted,

s/ Michael J. Gottlieb

*Counsel for Blake Lively*

3