**WILLKIE FARR & GALLAGHER** LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

July 3, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049 (LJL)

Dear Judge Liman:

  Plaintiff Blake Lively respectfully submits this letter in opposition to Street Relations Inc.'s motion for a protective order against disclosure of its "client base" (the "Client Information") during its deposition. ECF No. 380 (the "Motion"). Street argues that it should not be required to disclose the Client Information because "[s]haring these identities would be harmful and an undue burden" on grounds of confidentiality, sensitivity, and relevance. Motion at 1. But the Client Information is highly relevant to Ms. Lively's claims, and Street has not shown good cause for restricting discovery when the existing Protective Order would sufficiently protect its confidentiality.

  ***Street's client base is relevant to Ms. Lively's claims.*** Ms. Lively brought claims against Street for aiding the "social manipulation" campaign against her in retaliation for raising complaints of sexual harassment. As detailed in Ms. Lively's Amended Complaint, Mr. Jed Wallace (as Street's only officer and director, ECF No. 142-1 ¶ 12) specializes in executing confidential and "untraceable" campaigns on social media platforms to shape public perception of his clients and their adversaries. ECF No. 84 ¶¶ 218–20. Mr. Wallace is alleged to have previously worked with Defendants TAG and Melissa Nathan—a relationship TAG admitted in connection with Ms. Lively's initial complaint. *Id.* ¶¶ 221–22; ECF No. 37 ¶ 156 ("[The Agency Group] admits that Jed Wallace had worked on previous matters with Ms. Nathan, and was retained by TAG on behalf of Wayfarer and Mr. Baldoni."). Along with Mr. Wallace, Street is alleged to have been a key part of the "social manipulation" conspiracy to "bury" Ms. Lively and advance a negative narrative by seeding and manipulating content on social media and internet chat forums like Reddit, TikTok, and Instagram. ECF No. 84 ¶¶ 34, 205–06, 223–24; *see* Motion at 1 (admitting "specialized crisis response coordination").

  The Client Information is relevant to Ms. Lively's ability to understand and prove the nature and extent of the social media tactics used in the retaliatory and conspiratorial scheme against her. Learning the identities of Street's clients for the limited time period of January 1, 2023, to the present, will, for example, allow Ms. Lively to evaluate those clients' online profiles and identify digital patterns aligning with those deployed by the Wayfarer Parties in their "untraceable" campaign against her. By way of example, preliminary public digital assessments report strong indicators of

inauthenticity in connection with the online narratives regarding Ms. Lively in August 2024.[1] Because tracing those back to the originator is difficult, the ability to identify certain social media users/accounts that did not just participate in this campaign, but also participated in other campaigns for Street's clients (and the ability to identify commonalities among these campaigns) would allow identification of inauthenticity as to Ms. Lively attributable to the Defendants. Among other things, that information would be highly relevant circumstantial evidence of what the Wallace Parties did in *this* case, as well as highly relevant circumstantial evidence of what the other Wayfarer Parties—who were familiar with Street and Wallace's work—sought to achieve by retaining them. Merely identifying Street's "clients by category," as Street proposes, would be insufficient to meet this objective. Motion at 2. Likewise, knowing what services Street provides to specific clients in partnership with other defendants, like Ms. Nathan (or their counsel, like Mr. Freedman), will assist Ms. Lively in discovery as to her civil conspiracy claims. All this satisfies the "extremely permissive" deposition-discovery regime applicable here. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (discovery through deposition can be taken "regarding *any* matter, not privileged, that is relevant to the claim or defense of *any* party") (emphasis in original) (quoting Fed. R. Civ. P. 26(b)(1)); *Lynch v. City of New York*, 2021 WL 5140728, at *4 (S.D.N.Y. Nov. 4, 2021).[2]

Street's principal argument is to *again* cite Mr. Wallace's own self-serving testimony disputing his participation in the conspiracy: as at the motion-to-dismiss stage, he asks Ms. Lively and the Court to trust his word that he didn't do what the Amended Complaint alleges. Ultimately, it will be up to a jury, not the Wallace Parties, to decide whether to believe Mr. Wallace's self-serving testimony in light of all the evidence. But by putting his credibility in issue in this discovery dispute Street has only *confirmed* the relevance of the requested discovery, because the Client Information would assist Ms. Lively's efforts to test Street's assertions, and Mr. Wallace's credibility.

***Street has not established good cause.*** Street's objections do not satisfy its burden to demonstrate good cause for a protective order. *See Rekor Sys., Inc. v. Loughlin*, 2022 WL 488941, at *1 (S.D.N.Y. Feb. 17, 2022) (Liman, J.); *Oakley v. MSG Networks, Inc.*, 2024 WL 4859024, at *4 (S.D.N.Y. Nov. 21, 2024). Street claims that sharing the identities of its clients "would be harmful and an undue burden" because Street's services are "highly sensitive and confidential." Motion at 1. But Street has agreed to provide the requested testimony on its *services*, and it has not shown any particularized facts demonstrating harm from disclosure of *clients* to Ms. Lively in this limited context. *See, e.g.*, *Pflanzer v. Abrahamson*, 2021 WL 9566841, at *2 (E.D.N.Y. Sept. 30, 2021); *Rekor Sys., Inc.*, 2022 WL 488941, at *1; *Oakley*, 2024 WL 4859024, at *4 (protective order not justified by "stereotyped and conclusory" statements). Further, although Street asserts that it "agrees to confidentiality" with its clients, Motion at 1, private confidentiality agreements do not preclude

---

[1] *See, e.g.*, Steve Rose, *'It's the misogyny slop ecosystem!' How Candace Owens and the American right declared war on Blake Lively*, The Guardian (May 6, 2025), https://www.theguardian.com/film/2025/may/06/misogyny-slop-it-ends-with-us-america-rightwing-blake-lively-justin-baldoni (indicating social media data analyst estimation that "more than 80% of pro-Justin Baldoni posts are inorganic").

[2] *See also Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 2010 WL 5158183, at *3 (S.D.N.Y. Dec. 9, 2010) (denying motion for a protective order to prevent a deposition "[g]iven the broad scope of discovery in federal [] litigation"); *Martinez v. N.Y. Police Dep't*, 2021 WL 4206944, at *1 (S.D.N.Y. Aug. 9, 2021) (affirming order allowing Rule 30(b)(6) deposition to proceed "considering the extremely broad standard for discoverable evidence and [plaintiff's] need for the evidence").

discovery in federal litigation. *Doe v. Benjamin Zarenski M.D., P.C.*, 2022 WL 2966041, at *10 (S.D.N.Y. July 27, 2022) (collecting cases); *Hoffman v. Sbarro, Inc.*, 1997 WL 736703, at *1 (S.D.N.Y. Nov. 26, 1997). Indeed, there is no privilege for information merely because it is subject to some sort of confidentiality agreement. *Kingsway Fin. Servs. Inc. v. Pricewaterhouse-Coopers LLP*, 2007 WL 473726, at *3 (S.D.N.Y. Feb. 14, 2007). Accordingly, Street has not demonstrated a particularized harm or undue burden that overcomes Ms. Lively's need for this relevant information.

Courts regularly allow for discovery of parties' client lists and customer-base information when such information is relevant—as it is here—and the party opposing the discovery has not demonstrated substantial harm from such information being revealed. *See, e.g.*, *Luc Vets Diamant v. Akush*, 2006 WL 258293, at *2 (S.D.N.Y. Feb. 3, 2006) (ordering defendant to provide deposition testimony about the identities of his customers); *ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug & Carpet Cleaning*, 2009 WL 105503, at *4 (S.D.N.Y. Jan. 14, 2009) (ordering production of customer list despite this information being confidential); *Edmondson v. RCI Hosp. Holdings, Inc.*, 2018 WL 2768643, at *3 (S.D.N.Y. June 8, 2018) (ordering defendants to produce customer lists, particularly because plaintiffs were not competitors); *Barkley v. Olympia Mortg. Co.*, 2007 WL 656250, at *19–20 (E.D.N.Y. Feb. 27, 2007) (ordering third-parties to produce loan schedules revealing customer names despite privacy interests); *LaPlante v. Estano*, 228 F.R.D. 115, 117 (D. Conn. 2005) (requiring party "to answer questions about his dealings with his other clients" despite privacy concerns).[3] In the same way, disclosure of this relevant information is appropriate here because Ms. Lively is not a competitor of Street and she has no use for the Client Information outside of this litigation. *Edmondson*, 2018 WL 2768643, at *3. Nor does Ms. Lively seek to use the client-base information to "annoy, embarrass, or oppress" Street. *Sacerdote v. Cammack LaRhette Advisors*, 2025 WL 893720, at *4 (S.D.N.Y. Mar. 24, 2025).

***The existing Protective Order provides sufficient protection.*** Finally, Street's concerns related to the confidential and private nature of its clients are adequately addressed by the existing Protective Order. *See* ECF No. 125. Street can invoke the Protective Order to designate testimony about the Client Information as "Confidential" to prevent any public disclosure. *Id.* at 3–4. Or, Street can invoke the "Attorney's Eyes Only" ("AEO") designation for any testimony consisting of *inter alia* "[t]rade secrets; confidential business plans, marketing plans, and strategies for clients other than the parties in this litigation [and] confidential business projects or leads on projects for clients other than the parties in this litigation" *Id.* at 2. Street's assertion that an AEO designation will not be sufficient because any unspecified disclosure will harm Street and its clients based on future discovery by Ms. Lively from these clients is conclusory and speculative. *See* Motion at 2. Such discovery could proceed only if it, too, were relevant to Ms. Lively's claims, something that no party can prejudge before the Client Information is disclosed, and would likewise be afforded the protections of this case's substantially enhanced Protective Order. *See Lively v. Wayfarer Studios LLC*, 2025 WL 815364, at *3 (S.D.N.Y. Mar. 13, 2025) (suggesting "client list[s]" may be disclosed on an AEO basis); *ABC Rug & Carpet Cleaning Serv. Inc.*, 2009 WL 105503, at *3–4.

---

[3] *See also Wealthy Inc. v. Cornelia*, 2022 WL 5110620, at *6–7 (D. Nev. Oct. 4, 2022) (allowing deposition questioning about customer names and services purchased "to test Plaintiffs' claim for damages" and "'explore' unidentified 'other areas' for which the client information is allegedly the foundation"); *Barger v. First Data Corp.*, 2018 WL 6591883, at *9 (N.D. Ala. Dec. 14, 2018).

- 4 -

                Respectfully submitted,

                /s/ *Michael J. Gottlieb*

                Michael J. Gottlieb
                Kristin E. Bender
                Willkie Farr & Gallagher LLP
                1875 K Street NW
                Washington, DC 20006
                (202) 303-1000
                mgottlieb@willkie.com
                kbender@willkie.com

                Aaron E. Nathan
                Willkie Farr & Gallagher LLP
                787 Seventh Avenue
                New York, NY 10019
                (212) 728-8000
                anathan@willkie.com

                Meryl C. Governski *(pro hac vice)*
                Dunn Isaacson Rhee LLP
                401 Ninth Street, NW
                Washington, DC 20004
                (202) 240-2900
                mgovernski@dirllp.com

                *Attorneys for Blake Lively*