# JACKSON WALKER LLP

Charles L. Babcock
(713) 752-4210 (Direct Dial)
cbabcock@jw.com

**VIA ECF Including Service to All Parties**          July 7, 2025

The Honorable Lewis J. Liman
United States Courthouse
500 Pearl Street, New York, NY 1007-1312

   Re: *Lively v. Wayfarer Studios LLC, et al.*, Case No. 1:24-cv-10049-LJL

Dear Judge Liman,

  Jed Wallace ("Wallace") and Street Relations, Inc.("Street") (Collectively "Defendants") respond to Plaintiff's ("Lively" or "Plaintiff") letter, Docket (Dkt. 383) as follows:

  **Legal Standard:** Under N.Y. CPLR § 302(a)(2), a proponent must "allege first that the defendant was part of a conspiracy involving overt acts in New York . . . in which Defendants joined and participated." A proponent must further establish three additional requirements: "awareness, benefit, and direction or control." *Fat Brands Inc. v. Ramjeet,* 75 F.4th 118, 127 (2d Cir. 2023).

  **No Plausible Claim Defendants Joined and Participated in the Conspiracy:** Wallace, the sole employee of Street, denied that he participated in a conspiracy and testified that he had "no knowledge of it." (Dkt. 141-1 §31).[1] All but one of the New York "acts" Lively alleges occurred before "early August" 2024 when the Defendants, according to Lively, joined the conspiracy. The other "act" concerns alleged press contacts by Nathan, but Lively does not indicate when her New York conspiracy acts, if any, occurred, and Wallace has testified that he always dealt with her in California and knew she represented a California client. As in *P & L Dev., LLC v. Gerber Prods. Co.,* 715 F. Supp. 3d 435, 455 (E.D.N.Y. 2024):"Mere speculation and conjecture do not suffice to assert conspiracy jurisdiction . . . . [Defendant's] declarations add support to the conclusion that [Plaintiff's] understanding has no factual basis." There is no allegation that the Defendants knew about these prior New York events, knowledge of which they deny. (Dkt. 141-1 at ⁋29 (no contact with *New York Post* or *Times*); ⁋31. *See Dixon v. Mack,* 507 F. Supp. 345, 352 (S.D.N.Y. 1980) (Defendant must be alleged to join the conspiracy "with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York" for the statute to apply and satisfy due process).

  **The New York Meeting Where Baldoni and Heath "Heard" her Complaints:** This meeting is alleged to have occurred "on January 4, 2024" (Dkt. 84, ⁋73) which was over eight months before the Defendants' first alleged involvement in early August 2024. *Id.* at ⁋216. There is no allegation that Defendants knew about it. There is not, nor could there be, a plausible allegation, that Baldoni, Heath (or Wayfarer) were committing an overt act in furtherance of any conspiracy while listening to Lively's complaints which is all that is alleged. *Freeman v. HSBC Holdings* PLC, 57 F.4th 66, 81–82 (S.D.N.Y 2023) (explaining that the overt act must further the conspiracy and be done pursuant to a common scheme).

  **Jonesworks', an Alleged Co-Conspirator, Contract:** There is no pleading (Amended Complaint or Response to the Motion to Dismiss) that alleges that Jonesworks was a co-conspirator. Lively's letter alleges this for the first time. The implausibility of Jonesworks acting as a conspirator is patent because of the Jonesworks and Wayfarer litigation, as the Court knows. We ask the Court to take notice of the Wayfarer/Jonesworks agreement in Case No. 1:25-cv-00779-LJL. The contract Lively references commenced on May 7, 2020, over four years prior to the Defendants' alleged involvement—and the contract was performed for a California client (Wayfarer) in Los Angeles, not New York.[2] *See In re Brookfield Infrastructure Partners L.P.*, No. 24-mc-533 (LJL), 2025 WL 1503942, at *15 (S.D.N.Y. May 27, 2025)("[W]hile Cahill may be located in New York, the individuals who actually conducted the due diligence were employed by individuals employed outside of the United States . . . ."). There is no allegation that the Defendants knew about the contract or had anything to do with its performance.

---

[1] All page cites are to the ECF cite.
[2] The contract is in the record at Dkt. 51-1 in Case No. 1:25-cv-00779-LJL. "For almost four years, Jonesworks' work for Wayfarer and Baldoni was managed by Jennifer Abel ('Abel') out of the Jonesworks Los Angeles office." Case No. 1:25-cv-00779-LJL, Dkt. 51,⁋27; Dkt. 1-1, ⁋19 (Jonesworks admits Abel is a California resident); Dkt. 54, p. 11 (Jonesworks admits Abel was "its point person on the Wayfarer account").

The Honorable Lewis J. Liman
July 7, 2025
Page 2

**Nathan's Alleged New York Activity:** This conclusory allegation fails to define "the portion" or the "relevant time" Nathan was in New York, nor does it allege what business she conducted or what "overt act" she committed from New York. Wallace denied that Defendants conducted any business with Nathan in New York and testified that he knew she was in California and representing Wayfarer "which [he] knew and know[s] to be based in California." Dkt. 141-1, ¶28. It is hardly "reasonable to infer" as the Lively Letter argues, that Wallace *knew* that Nathan resided in New York and was engaged in tortious conduct there when he denies such knowledge. He likewise denies any contact with or knowledge of contact with media in New York.

**Sarowitz Alleged Announcement:** These comments pre-dated the Defendants' involvement in the controversy, and we have discussed the implausibility of this alleged contact at pages 10-11 of the Reply Brief.

**Awareness, Benefit and Direction or Control:** The three additional *Fat Brands* requirements based on N.Y. CPLR § 302(a)(2):

**Awareness:** There is no plausible allegation that Defendants knew of these New York contacts, they have denied it, and Lively herself speculates *only* that "Wallace *knew* that Nathan resided in New York" (emphasis in original) which, apparently, she doesn't (at least not full time or in a jurisdictional sense). Lively's letter does not even speculate that Wallace knew about the other New York contacts. She lists five paragraphs from the Amended Complaint to support the claim that "Defendants knew that their co-conspirators included New York based individuals and entities who were taking steps in New York to retaliate against Lively" but none stand for this proposition and, in fact, contradict it: Dkt. 84, ¶63 ("TAG . . . [has] its principal place of business in Santa Monica, California" and "no members of TAG are citizens of New York"); ¶¶213–14 (quoting Nathan's explanation of pricing "quotes"—for ***TAG's*** (not Defendants')—"crisis mitigation services"); ¶222 (alleging TAG and Nathan had a relationship with Wallace and worked with him on previous matters); ¶¶225–26 (alleging that, on August 8, 2024, "the TAG team met [doesn't say where but it was either Texas or California based on Lively's Texas pleading and Wallace's declaration] with Mr. Wallace . . . to 'bring them up to speed . . . .'"). None of this shows awareness of the New York contacts and Wallace has denied such awareness.

**Benefit:** It would be plausible to allege (although Lively does not) that Wallace was paid for his "limited work related to Justin Baldoni [which] concluded in early November 2024." Dkt. 141-1, ¶26.

**Direction or Control:** There is no allegation that Defendants directed or controlled the alleged conspiracy. And it would be implausible to think that a vendor (Street)—joining after the alleged aims of the conspiracy had largely, if not completely, been met—on a three-month contract could do so.

**The § 302(a)(1) Argument:** Lively adds an argument that has never been pleaded or referenced in her response to the motion to dismiss, is outside the scope of the Court's order and is without precedent. *See Doe v. Gov't of the U.S. Virgin Islands,* 771 F. Supp. 3d 379, 390 (S.D.N.Y. 2025) ("This Court, like another court in this circuit, could not find a single New York state-court decision recognizing conspiracy jurisdiction under § 302(a)(1).").

**§ 302(a)(2) Exempts Defamation:** After the briefing on this motion closed, the Plaintiff abandoned one of her three claims against Defendants—leaving only false light and "aiding and abetting harassment . . . to discredit and 'bury' Ms. Lively." Dkt. 84, ¶¶411, 448. Both sound in defamation which is exempted under § 302(a)(2). In the unlikely event the Court does not grant their motion to dismiss, Defendants seek leave to raise the statutory exemption.[3]

                                        Respectfully submitted,

                                        *s/ Charles L. Babcock*
                                        Counsel for Jed Wallace and Street Relations, Inc.

---

[3] Lively asserted three claims against the Defendants. After briefing concluded, she abandoned one (Intentional Infliction of Emotional Distress (Dkt. 335)), leaving only defamation-like claims (Dkt. 84 ¶¶411, 448). This provides another basis to reject jurisdiction. *See Jolivet v. Crocker*, 859 F. Supp. 62, 65 (E.D.N.Y. 1994) (Conspiracy jurisdiction statute "cannot serve to supply a basis for personal jurisdiction" when claims are based on defamatory publications. "To rule otherwise would provide a facile means for plaintiffs whose claims arise in an employment context to evade the statutory defamation exception . . . . 'Plaintiffs' attempt to convert the alleged tort from defamation to something else must be rejected as spurious.'") (citation omitted); *Reich v. Lopez,* 38 F. Supp. 3d 436, 458–59 (S.D.N.Y. 2014) (Rejecting application of § 302(a)(2) to claims for tortious interference, trade libel and injurious falsehood because "plaintiff's claims do indeed sound in defamation of character".)