**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY, | Civ. Action No. 1:24-cv-10049-LJL |
| Plaintiff, | (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) |
| v. | rel. 1:25-cv-00779-LJL |
| WAYFARER STUDIOS LLC, et al. | **OPPOSITION TO VISION PR, INC. AND LESLIE SLOANE'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| Defendants. | |

**OPPOSITION TO VISION PR, INC. AND LESLIE SLOANE'S
MOTION FOR ATTORNEYS' FEES AND COSTS**

434759.1

# **Table of Contents**

Page

I.   INTRODUCTION .................................................................................................7

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................8

III. SLOANE CANNOT RECOVER FEES BECAUSE SHE HAS NOT FILED AN
     AFFIRMATIVE PLEADING AS REQUIRED BY § 70-a.....................................9

IV.  STATE ANTI-SLAPP LAWS DO NOT APPLY IN FEDERAL COURT ............................10

     A.   California Law Applies.................................................................... 10

          1.   New York and California Law Conflict in Ways that Potentially Affect the
               Outcome of a Defamation Action. ............................................ 10

          2.   The State of Plaintiffs' Domicile Dictates that California Law Be Applied. .......... 11

          3.   California Has a Significantly Greater Interest Because Its Citizens Suffered Harm
               in California. ..................................................................... 13

     B.   New York's Anti-SLAPP Statute, Section 70-a, Conflicts with Multiple Federal Rules
          of Civil Procedure. ......................................................................... 14

          1.   Section 70-a Conflicts with Rules 12 and 56 of the Federal Rules of Civil
               Procedure. ......................................................................... 14

          2.   Section 70-a Conflicts with Rule 11. ........................................ 18

     C.   A 12(b)(6) Dismissal Does Not Equate to a Finding That a Claim is "Wholly Without a
          Substantial Basis in Fact and Law." ............................................. 19

 V.  SLOANE'S REQUEST FOR INHERENT POWERS SANCTIONS SHOULD BE DENIED
     ...........................................................................................................21

VI.  CONCLUSION......................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
  96 F. Supp. 3d 182 (S.D.N.Y. 2015)........................................................................11

*Adelson v. Harris*,
  774 F.3d 803 (2d Cir. 2014)...................................................................................17

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) .................... *passim*

*Alyeska Pipeline Service Co. v. Wilderness Society*,
  421 U.S. 240 (1975)................................................................................................21

*Amaprop Ltd. v. Indiabulls Financial Services Ltd.*,
  2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) .......................................................26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................15, 17

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. Nov. 26, 2024).................................................17, 19

*Brady v. NYP Holdings, Inc.*,
  No. 21-CV-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022)...............7, 18, 19

*Bryks v. Canadian Broad. Corp.*,
  928 F. Supp. 381 (S.D.N.Y. 1996) .......................................................................12

*Carroll v. Trump*,
  590 F. Supp. 3d 575 (S.D.N.Y. 2022)....................................................................16

*CDC Newburgh Inc. v. STM Bags, LLC*,
  692 F. Supp. 3d 205 (S.D.N.Y. 2023)....................................................................16

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..................................................................................................22

*Chinese Americans C.R. Coal., Inc. v. Trump*,
  No. 21-CV-4548 (JGK), 2022 WL 1443387 (S.D.N.Y. May 6, 2022) ..............9, 10

*Condit v. Dunne*,
  317 F. Supp. 2d 344 (S.D.N.Y. 2004)....................................................................11

*Coritsidis v. Khal Bnei Torah of Mount Ivy*,
  No. 22-CV-10502 (CS), 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024)........................16

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned
    Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr.
    5, 2022) ........................................................................................................................9, 10

*De Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845 (2018) ("California false light claim) ...................................11

*DeIuliis v. Engel*,
    2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ("New York does not recognize
    the tort of false light invasion of privacy.") .........................................................11

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*,
    782 F.2d 329 (2d Cir. 1986) ...................................................................................22

*Editor's Pick Luxury LLC v. Red Points Sols. SL*,
    2023 WL 6385993 (S.D.N.Y. Sept. 29, 2023) .......................................................16

*Egiazaryan v. Zalmayev*,
    No. 11 Civ. 2670(PKC)(GWG), 2013 WL 6486258 (SD.N.Y. Dec. 11, 2013) ....21

*Eisemann v. Greene*,
    204 F.3d 393 (2d Cir. 2000).....................................................................................27

*Enmon v. Prospect Cap. Corp.*,
    675 F.3d 138 (2d Cir. 2012).....................................................................................22

*Exec. Park Partners LLC v. Benicci Inc.*,
    2023 WL 3739093 (S.D.N.Y. May 31, 2023) .......................................................16

*Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*,
    313 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2004) .....................................................20

*Gilbert v. Seton Hall Univ.*,
    332 F.3d 105 (2d Cir. 2003).....................................................................................10

*Harris v. Am. Acct. Ass'n*,
    2023 WL 2803770, at *3 (2d Cir. Apr. 6, 2023), *cert. denied*, 144 S. Ct. 565
    (2024)........................................................................................................................19

*Hong v. Mommy's Jamaican Market Corp.*,
    20-cv-9612 (LJL) 2024 WL 3824394 (S.D.N.Y. Aug. 14, 2024) ....................22, 26

*Horton v. Greenwich Hosp.*,
    No. 12-CV-4436, 2014 WL 956468 (S.D.N.Y. Mar. 10, 2014) .............................11

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
    991 F.3d 361 (2d Cir. 2021).....................................................................................22

*Ji Li v. New Ichiro Sushi, Inc.*,
　　2020 WL 2094095 (S.D.N.Y. Apr. 30, 2020)........................................................26

*Kaufman v. Equifax Information Services, LLC*,
　　2019 WL 3997461 (S.D.N.Y. Aug. 22, 2019)......................................................26

*Kesner v. Dow Jones & Co., Inc.*,
　　515 F. Supp. 3d 149 (S.D.N.Y. 2021)..................................................................10

*Kessner v. Buhl*,
　　590 F. Supp. 3d 680 (S.D.N.Y. 2022)..................................................................16

*La Liberte v. Reid*,
　　966 F.3d 79 (2d Cir. 2020).......................................................................... *passim*

*La Luna Enters., Inc. v. CBS Corp.*,
　　74 F. Supp. 2d 384 (S.D.N.Y. 1999)....................................................................13

*LaNasa v. Stiene*,
　　731 F. Supp. 3d 403 (E.D.N.Y. 2024) .........................................................9, 14, 15

*Lee v. Bankers Trust Co.*,
　　166 F.3d 540 (2d Cir. 1999)..........................................................................11, 12

*Lexjac, LLC v. Beckerman*,
　　No. 07-CV-4614 (JS)(ARL), 2008 WL 11313761, at *13 (E.D.N.Y. Sept. 30,
　　2008) ....................................................................................................................20

*Liebowitz v. Bandshell Artist Mgmt.*,
　　6 F.4th 267 (2d Cir. 2021) ..................................................................................26

*Lindell v. Mail Media Inc.*,
　　575 F. Supp. 3d 479 (S.D.N.Y. 2021)....................................................................9

*LoanStreet, Inc. v. Troia*,
　　No. 21 CIV. 6166 (NRB), 2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023) ...............14

*Lohnn v. Int'l Bus. Machs. Corp.*,
　　No. 21-CV-6379 (LJL), 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) .........................19

*Margolies v. Rudolph*,
　　No. 21-CV-2447-SJB, 2023 WL 6151514, at *11 (E.D.N.Y. Sept. 20, 2023).........20

*Max v. Lissner*,
　　No. 22-CV-5070 (VEC), 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ............10, 16

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Syst. Design, Inc.*,
　　551 F. Supp. 3d 408 (S.D.N.Y. 2021)...................................................................15

5

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2023) ................................................................16

*Reichmann v. Neumann*,
    553 F. Supp. 2d 307 (S.D.N.Y. 2008) ....................................................23, 25, 26

*Unlimited Cellular, Inc. v. Red Points Solutions SL*,
    677 F. Supp. 3d 186 (S.D.N.Y. 2023) ................................................................15

*Waite v. Gonzalez*,
    No. 21- CV-2506 (PKC), 2023 WL 2742296 (E.D.N.Y. Mar. 31, 2023) ............16

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009).........................................................................21, 22

**Statutes**

Civil Code § 47.1 ........................................................................................................13

Nev. Rev. Stat. §§ 41.660, 41.670 ..............................................................................17

New York Civil Rights Law § 70-a ................................................................... *passim*

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1337.2 (4th ed.
    2021) ..................................................................................................................19

Fed. R. Civ. P. 11 ..................................................................................................18, 19

Fed. R. Civ. P. 12 ......................................................................................... *passim*

Fed. R. Civ. P. 56(a) .............................................................................................15, 17

## I.    **INTRODUCTION**

Former Consolidated Defendants Leslie Sloane and Vision PR, Inc.'s ("Sloane") invoke New York's anti-SLAPP statute, New York Civil Rights Law § 70-a ("§ 70-a") and the Court's inherent power to award attorney's fees allegedly expended to defend now-dismissed defamation claims brought by Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), It Ends With Us Movie LLC ("IEWU"), Melissa Nathan ("Nathan"), Jennifer Abel ("Abel"), and Steve Sarowitz ("Sarowitz") (collectively, the "Wayfarer Parties").

There are a myriad of reasons why Sloane's motion should be denied.  First, a motion after a Rule 12(b)(6) dismissal is not the proper procedure to seek fees under § 70-a.  On its face, § 70-a applies only to an "action, claim, cross claim, or counterclaim."  The overwhelming majority of courts in this district interpret this language as requiring parties seeking anti-SLAPP damages must bring an affirmative claim for relief under § 70-a, not proceed by a motion after dismissal. Sloane did not bring a counter claim for relief under New York's anti-SLAPP statute.  For this reason alone, Sloane's Motion must be denied.

Second, even assuming a motion is a proper procedural mechanism to seek fees and costs under § 70-a, the majority of Second Circuit and district courts hold that state Anti-SLAPP motions do not apply in federal actions.  The rational for this rule is that State anti-SLAPP states conflict with Federal Rules of Civil Procedure 12, 56 and 11 as they address the same questions.  This Circuit has held that California's anti-SLAPP statute does not apply to federal courts sitting in diversity jurisdiction.  The Second Circuit has not spoken on whether New York's anti-SLAPP provision applied in federal court although the majority of cases in this district, including *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022), hold to the contrary.  Sloane has not provided any reason why the Court should depart from its findings in *Brady*.

Finally, Sloane falls back on the Court's inherent power as a basis for fee shifting.  Sloane, however, has not met her burden to show the egregious conduct, including bad faith, necessary to warrant sanctions under the Court's inherent power.  A dismissal under Rule 12(b)(6) for failure to plausibly plead a claim does not equate to the egregious, bad faith conduct warranting sanctions under the Court's inherent power.  For these reasons, as elaborated below, Sloane's motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from allegations by Blake Lively that she was sexually harassed by Justin Baldoni and others on the set of the film "It Ends With Us."  First Amended Complaint ¶¶ 23, 27.  Consolidated Plaintiffs' First Amended Complaint alleged that in the summer of 2024, Vision PR and its principal, Leslie Sloane  worked with Lively to spread false and defamatory allegations about Baldoni and other Wayfarer Parties to the press, including the New York Times, as part of Lively's scheme to wrest creative control of the film from Baldoni, its star and director. Am. Compl. ¶¶ 187, 195-221, 238.  The scheme to develop a false narrative through news article and video scheme unfurled, culminating in Lively's filing of complaint with the California Civil Rights Department.  Am. Compl. ¶¶ 256-273.

On June 9, 2025, the Court granted Sloane's Rule 12(b)(6) motion to dismiss the defamation claims against her, finding that the Wayfarer Parties had failed to plausibly plead their defamation claim or that Sloane "did any more than repeat Lively's version of events, which [she] had no reason to doubt" and California's fair reporting privilege would have applied to the extent the claims involved the disclosure of Lively's CRD complaint to the New York Times.  Dkt 296, pp. 80, 82.  As part of her motion to dismiss, Sloane requested an award of fees and costs.  The Court denied the request for fees without prejudice to a future request under § 70-a.

8

434759.1

**III.    SLOANE CANNOT RECOVER FEES BECAUSE SHE HAS NOT FILED AN
AFFIRMATIVE PLEADING AS REQUIRED BY § 70-a**

A claim for attorney's fees, and costs pursuant to § 70-a, must be brought not by way of
motion, but as an "action, claim, cross claim, or counterclaim" for damages under § 70-a.  N.Y.
Civ. Rights Law § 70-a; *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 416-17 (E.D.N.Y. 2024) (denying
request for costs and attorney's fees where the defendants failed to "'maintain[ed] an action, claim,
[crossclaim,] or counterclaim' which is necessary to obtain a costs or fee award under the statute");
*Chinese Americans C.R. Coal., Inc. v. Trump*, No. 21-CV-4548 (JGK), 2022 WL 1443387, at *6
(S.D.N.Y. May 6, 2022) (denying motion under § 70-a "[b]ecause the defendant has not brought
a separate action for fees or filed a 'claim, cross claim or counterclaim' in this action" and instead
"simply assert[ed] a request as part of a motion to dismiss"); *Lindell v. Mail Media Inc.*, 575 F.
Supp. 3d 479, 489 (S.D.N.Y. 2021) (denying motion for anti-SLAPP fees because the defendant
"never asserted a standalone counterclaim for attorney's fees."); *Ctr. for Med. Progress v. Planned
Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 333 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v.
Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022)
("The [New York ant-SLAPP] statute requires that *a pleading* of some sort be filed in order to
collect attorney's fees; even a cross-motion for fees would appear to be inadequate under Section
70-a." (emphasis in original)).  Sloane's motion ignores the statutory pleading requirement
necessary to recover fees under § 70-a and assumes that a motion is sufficient vehicle to seek costs
and fees under § 70-a.  Sloane overlooks the key reason why this relief must be requested through
a pleading.  A separate pleading is required because a party seeking relief under § 70-a must assert
"***factual allegations*** from which the Court can ***plausibly*** infer that [the plaintiff] has violated New
York's anti-SLAPP law by bringing a defamation claim that lacks a substantial basis in fact and

law." *Max v. Lissner*, No. 22-CV-5070 (VEC), 2023 WL 2346365, at *10 (S.D.N.Y. Mar. 3, 2023).

In sum, because the Amended Complaint was dismissed before Sloane asserted any affirmative claim, "per the terms of the New York law," Sloane "must file a separate lawsuit in order to recover any attorneys' fees." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 333; *see also Chinese Americans C.R. Coal., Inc.*, 2022 WL 1443387, at *6.

Sloane has not done so, but seek this relief by way of motion, after a 12(b)(6) dismissal. For this reason alone, Sloane's Motion should be denied.

## IV.    STATE ANTI-SLAPP LAWS DO NOT APPLY IN FEDERAL COURT

The Second Circuit in *La Liberte v. Reid* held that California's anti-SLAPP statute does not apply in federal courts. 966 F.3d 79, 87-89 (2d Cir. 2020). The Second Circuit has not decided whether § 70-a applies in federal court. However, most district courts, including this Court, have applied *La Liberte*'s reasoning to conclude that the answer is "no." The first question then is whether California or New York law applies.

### A.    California Law Applies

In deciding Sloane's motion to dismiss, the Court applied California law. The Court, however, invited the parties to address choice of law issues. Dkt. 296, pp. -41, 131. "In diversity cases, federal courts apply the choice of law rules of the forum state[.]" *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003).

### 1.    New York and California Law Conflict in Ways that Potentially Affect the Outcome of a Defamation Action.

The first step in a New York conflict of laws analysis is to determine whether there exists a conflict between the laws of New York and California. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021). "An actual conflict exists where the applicable law from

each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *Horton v. Greenwich Hosp.*, No. 12-CV-4436, 2014 WL 956468, at *2 n.1 (S.D.N.Y. Mar. 10, 2014). The choice of law must be analyzed individually as to each claim. *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) ("Under New York Law, the choice of law analysis is generally done separately for each claim and defense, under a doctrine called *dépeçage*.)

There are also important differences between the laws of New York and California with respect to the Wayfarer Parties' dismissed defamation claims. For instance, "California extends no greater protection to opinions than does the United States Constitution," while "New York law, by contrast, in excess of the United States Constitution, 'provides for absolute protection of opinions.'" *Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004) (citing *Weller v. Am. Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 1006 (1991) and quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir. 2000)).

California also recognizes a false light claim – a species of defamation -- while New York does not. *Compare De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) ("California false light claim) *with DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021) ("New York does not recognize the tort of false light invasion of privacy.") (quoting *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17 Civ. 75688 (PGG), 2018 WL 4735717, at *13 (S.D.N.Y. Sept. 29, 2018)). The conflict between the laws of California and New York renders a choice-of-law analysis necessary.

       2.      <u>The State of Plaintiffs' Domicile Dictates that California Law Be Applied.</u>

The next question is where the plaintiffs reside. "Under New York choice-of-law rules in defamation cases, 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." *Lee v. Bankers Trust Co.*, 166 F.3d

540, 545 (2d Cir. 1999) (quoting *Reeves v. American Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)); *see also Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996) (collecting cases). "Although the preference for the plaintiff's domicile is not conclusive, 'the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Lee*, 166 F.3d at 545 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). A states interest in a defamation action is "significant and incontrovertible" where the plaintiffs are citizens of that state and live and conduct their business there. *Adelson v. Harris*, 973 F. Supp. 2d 467, 477-78 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

California has a significantly greater interest because the Wayfarer Parties are the plaintiffs in the defamation claim against Sloane. All but one of the Wayfarer Parties are residents of California or have their principal place of business there;[1] the two corporate plaintiffs (Wayfarer Studios LLC and It Ends With Us Movie LLC) are both incorporated and/or have their principal place of business in California. This consolidated action was commenced by Lively, a citizen of New York, in New York. The defamation claim against Sloane is inextricably linked to Lively's sexual harassment claims and both sets of claims turn on whether Lively's claims of harassment are true. Hence, the Wayfarer Parties had little choice but to file their affirmative claims in New York.

Although she chose New York as the forum for her lawsuit, Lively fired the first salvo by filing a complaint with California's Civil Rights Department, which purported to assert claims for violation of **California's** Fair Employment and Housing Act and Labor Code. Am. Compl. ¶¶ 4, 262. Lively continues to insist that California law applies to her employment related, sexual harassment claims against Baldoni and the other Wayfarer Parties. Lively's loan out agreement

---

[1] The only plaintiff who is not a resident of California is Steve Sarowitz, who resides in Illinois. Sarowitz's connection to this action is through his ties to Wayfarer, which is located in California.

which governed her acting services on the Film includes a California choice of law provision and Lively seeks the benefit of California's Civil Code § 47.1 which provides protections for victims of sexual harassment.  Lively and the other parties cannot have it both ways by seeking the protections of California law and simultaneously invoking New York when it suits their purpose.

       3.     <u>California Has a Significantly Greater Interest Because Its Citizens Suffered Harm in California.</u>

The Wayfarer Parties, and each of them, suffered injury to their reputations in California; and the economic losses to the plaintiffs were all felt in California.  *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999).  Not only are all but one Wayfarer Party citizens of California, California is the hub of the film industry in which the Wayfarer fate is determined by agents, studios and managers who are located in California.  Thus, the reputational harm from the alleged defamation from the dissemination of Lively's false sexual harassment allegations have all but destroyed the ability of Baldoni and Wayfarer Parties to find employment in their chosen professions.

Moreover, it was foreseeable to Sloane that the harm of her actions would be felt primarily in California.  *See Adelson*, 973 F. Supp. 2d at 480-81 ("'Although communities in the United States with little or no internet usage still exist, in general, it is quite foreseeable that the brunt of the reputational harm that results from internet-based defamation is most likely to be felt in the forum where the defamed individual lives, works, and maintains social relationships.'") (quoting *Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1073 (D. Ariz. 2010)).  Here, each of the Wayfarer Parties "lives, works, and[/or] maintains social relationships" in California, and the law of California should therefore apply.

In short, the laws of California should govern the evaluation of the Wayfarer Parties' claims for harm suffered in California by the Wayfarer Parties, who all live, work, and/or do business in

California, as the result of conduct aimed at California.  The Second Circuit holds that California's anti-SLAPP statute does not apply in federal court and thus Sloane's fee motion should be denied.  However, even assuming New York law applies, Sloane's fee request fails.

**B.    New York's Anti-SLAPP Statute, Section 70-a, Conflicts with Multiple Federal Rules of Civil Procedure.**

To determine whether a state statute may be applied in a federal court sitting in diversity, "[t]he test is whether 'a Federal Rule of Civil Procedure 'answer[s] the same question'" as the state law.  *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1335 (D.C. Cir. 2015)).  If so, the federal rule governs, unless it violates the Rules Enabling Act.  *Id.*; *accord LoanStreet, Inc. v. Troia*, No. 21 CIV. 6166 (NRB), 2023 WL 5836237, at *6 (S.D.N.Y. Sept. 8, 2023) ("[W]hen a Federal Rule of Civil Procedure answers the same question as a state law, the Federal Rule governs in federal court, unless the rule at issue violates the Rules Enabling Act.") (quotations and citation omitted).

1.    Section 70-a Conflicts with Rules 12 and 56 of the Federal Rules of Civil Procedure.

In *La Liberte v. Reid*, 966 F.3d at 87, the Second Circuit applied this principle and held that California's anti-SLAPP law does not apply in federal court because it conflicts with Rules 12 and 56 of the Federal Rules of Civil Procedure.  The *LaNasa* Court explained that the same logic should apply to the New York anti-SLAPP law "because the anti-SLAPP statute makes costs and fees available only when the court dismisses an action based on *the statute's* dismissal provision and does not purport to make them available to parties who obtain a Rule 12(b)(6) dismissal, a federal court also cannot grant costs or fees under New York's anti-SLAPP law." *LaNasa v. Stiene*, 731 F. Supp. 3d at 417.

The pleading burden under Rule 12(b)(6) is to allege "enough facts to state a claim to relief that is plausible on its face" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and it "does not impose a probability requirement at the pleading stage." *Id.* at 556. "California's anti-SLAPP statute, however, 'abrogates that entitlement . . . by requiring the plaintiff to establish that success is not merely plausible but probable.'" *La Liberte*, 966 F.3d at 87 (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1353 (11th Cir. 2018)).

Similarly, Rule 56 of the Federal Rules of Civil Procedure permits summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where Rule 56 allows a plaintiff to proceed to trial by identifying *any* genuine dispute of material fact, California's anti-SLAPP statute "nullif[ies] that entitlement by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor." *La Liberte*, 966 F.3d at 88 (quoting *Carbone*, 910 F.3d at 1353). Accordingly, California's anti-SLAPP statute cannot apply in federal court. *Id.* at 88.

A majority of courts in this district have adopted the *La Liberte* analysis to find that like its California sister, § 70-a does not apply in federal court. *See, e.g. Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Syst. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("[B]ecause Federal Rules of Civil Procedure 12 and 56 answer the same question as New York's anti-SLAPP provision [...] § 70-a of New York's anti-SLAPP law is inapplicable in federal court."); *Unlimited Cellular, Inc. v. Red Points Solutions SL*, 677 F. Supp. 3d 186, 204 (S.D.N.Y. 2023) (denying fee-shifting counterclaim and finding § 70-a not applicable in federal court); *LaNasa*, 731 F. Supp. 3d at 416-17 (court declined to apply New York's anti-SLAPP law to dismiss the action or award fees, agreeing "with the emerging consensus in this circuit that a federal court may not dismiss an action under New York's anti-SLAPP law because the "substantial basis" standard in its dismissal

provision conflicts with Federal Rules of Civil Procedure 12 and 56); *Lissner*, 2023 WL 2346365 at *8 ("Because [§ 70-a(1)(a)'s] heightened pleading standards run counter to the federal rules, they cannot be invoked procedurally in federal court."); *Prince v. Intercept*, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2023) (denying a motion for attorney's fees because "[t]he Court agrees with its colleagues that § 70-a's standard conflicts with the standards under Federal Rules 12 and 56"); *Coritsidis v. Khal Bnei Torah of Mount Ivy*, No. 22-CV-10502 (CS), 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024) (denying request for attorney's fees under the statute due to the "substantial basis" standard conflicting with Rules 12 and 56); *Editor's Pick Luxury LLC v. Red Points Sols. SL*, 2023 WL 6385993, at *6 (S.D.N.Y. Sept. 29, 2023) (same); *Exec. Park Partners LLC v. Benicci Inc.*, 2023 WL 3739093, at *1 (S.D.N.Y. May 31, 2023) (same); *Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022) (same); *Waite v. Gonzalez*, No. 21- CV-2506 (PKC), 2023 WL 2742296, at *12 (E.D.N.Y. Mar. 31, 2023) (collecting cases and reserving judgment but noting "[t]he Court is dubious as to whether New York's anti-SLAPP law applies in federal court."); *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 223 (S.D.N.Y. 2023) (finding an anti-SLAPP law claim to conflict with Rules 12 and 56); *Kessner v. Buhl*, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022) ("[G]ranting relief under [N.Y. Civ. Rights Law] § 70-a would require the Court to apply a state procedural standard that conflicts with the Federal Rules of Civil Procedure").

In sum, the majority of courts in this district hold that § 70-a does not apply in federal court because it imposes a higher burden than Rules 12(b)(6) and 56 by imposing a heightened burden on a plaintiff for an award of attorney's fees "upon a demonstration including an adjudication pursuant to [the New York civil practice rules for motions to dismiss and summary judgment] that the action [...] was commenced or continued ***without a substantial*** basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing

law." This standard differs from Rule 12(b)(6) which calls for dismissal of claims which "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12; *see also Twombly*, 550 U.S. at 552, pleading burden is to allege "enough facts to state a claim to relief that is plausible on its face."). Rule 56(a) permits summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Ignoring the weight of an emerging consensus, Sloane relies on *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. Nov. 26, 2024), which found that § 70-a is applicable in federal court. *Bobulinski* reached this conclusion by "distinguish[ing] between the 'substantial basis' standard as a procedural mechanism for dismissal [...] and the 'substantial basis' standard as a substantive standard for entitlement to attorney's fees[.]" *See Bobulinski*, 758 F. Supp. 3d at 189 n.24. Nowhere in § 70-a does that procedural-versus-substantive distinction exist. Indeed, § 70-a provides that: "[C]osts and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules, that the action involving public petition and participation was commenced or continued without a substantial bas*is* in fact and law..."

*Bobulinski* relied on *Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014). In *Adelson*, the Second Circuit found that Nevada's anti-SLAPP statute applied in Federal Court because that statute is "substantive within the meaning of *Erie*" and "does not squarely conflict with a valid federal rule." *Adelson*, 774 F.3d at 809 (emphasis added). *Adelson* did not address § 70-a, but a Nevada statute that does not § 70-a conflict with Rule 12 and provide for the court to award costs and attorney's fees "to the person against whom the action was brought" if the defendant prevails on a motion to dismiss and the state Attorney General supports the defendant in that motion. Nev. Rev. Stat. §§ 41.660, 41.670. Notably, in *Adelson*, 774 F.3d at 809, the Second Circuit found that

Nevada's anti-SLAPP statute did not conflict with § 70-a because it did not impose a heightened pleading standard. *Adelson* is inapposite as it did not address a disparity between the anti-SLAPP statute and Rule 12(b)(6)'s pleading requirements much less the disparity between § 70-a and Rule 12.

        2.    <u>Section 70-a Conflicts with Rule 11.</u>

Other courts have analyzed New York's anti-SLAPP law's fee-shifting provision as a sanction that conflicts with Rule 11 of the Federal Rules of Civil Procedure. *See. e.g.*, *Brady v. NYP Holdings, Inc.*, 2022 WL 992631, at *11. In *Brady,* this Court considered whether § 70-a applies in federal court. Agreeing with the majority of courts in the Second Circuit, the Court applied *La Liberte* to find that § 70-a "addresses the same question as Rule 11 of the Federal Rules of Civil Procedure" and thus, denied the defendant's motion for fees under New York's anti-SLAPP statute. Rule 11 and § 70-a not only provide the same answer to the same question but share an identical goal: deterring lawsuits that are factually or legally baseless.

This Court explained that Rule 11 differs from § 70-a in several respects. The anti-SLAPP provision provides for sanctions in a broader range of cases than Rule 11 and is intended to deter more lawsuits. Rule 11 is addressed to "claims, defenses, and other legal [that] are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Brady*, 2022 WL 992631, at *11. In contrast, § 70-a is triggered on a showing that a covered action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." *Id*. The procedural mechanisms are also different. Unlike § 70-a, Rule 11 requires that the adverse party has been given "notice and a reasonable opportunity to respond" by "withdraw[ing] or correct[ing] the challenged paper without adverse consequences," mooting the question of sanctions. *Id*. (citing 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. &

Proc. § 1337.2 (4th ed. 2021).  Finally, Rule 11 sanctions are permissive.  Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction...." (emphasis added); 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1332 (4th ed. 2021) (noting the most recent 1993 amendment to Rule 11 "left the decision-making power in the district court's hands").  Under the anti-SLAPP provision, sanctions are mandatory.

In a cursory, three-sentence footnote, *Bobulinski* explained that *Brady* was apparently wrongly decided because § 70-a, unlike Rule 11, is "substantive" in nature and does not operate as a "sanction."  *Bobulinski*, 758 F. Supp. 3d at 189, n.24.  In short, the Motion seeks relief that most courts of this District hold to be unavailable as a matter of law.  The Court should follow its reasoning in *Brady* and decline to follow *Bobulinski*.  "[T]he decisions of district courts, even those located within the same district, are not binding on other district courts[.]" *Lohnn v. Int'l Bus. Machs. Corp.*, No. 21-CV-6379 (LJL), 2022 WL 36420, at *9, n.2 (S.D.N.Y. Jan. 4, 2022).

### C.    A 12(b)(6) Dismissal Does Not Equate to a Finding That a Claim is "Wholly Without a Substantial Basis in Fact and Law."

Sloane next argues that a 12(b)(6) dismissal is tantamount to a finding that the dismissed claim is wholly without a substantial basis in fact and law.  As explained above, a majority of courts in this district hold that the standard for dismissal under Rule 12(b)(6) is different from the "substantial basis in fact and law" standard for sanctions under § 70-a.

In *Harris v. Am. Acct. Ass'n*, the Second Circuit considered whether an award of attorney's fees under § 70-a was mandatory after the defendant obtained a dismissal of an action brought under New York's unfair competition law (which is also subject to New York's anti-SLAPP statute).  2023 WL 2803770, at *3 (2d Cir. Apr. 6, 2023), *cert. denied*, 144 S. Ct. 565 (2024).  The *Harris* Court acknowledged that *La Liberte* controls the inquiry as to whether § 70-a applies in federal court.  *Id*.  Therefore, while upholding the dismissal of the plaintiff's complaint pursuant

to Rule 12(b)(6), the Second Circuit reversed the District Court's finding that the defendant was also entitled to fees under § 70-a.  *Id.*  The Second Circuit explained that it was "not persuaded" that the action was "wholly 'without a substantial basis in fact and law' and incapable of being 'supported by a substantial argument for extension, modification or reversal of existing law,' as [§ 70-a(1)(a)] requires."  *Id.*

Several New York federal district courts have followed *Harris'* logic and found that, even if the anti-SLAPP statute applies, a dismissal under Rule 12 does not translate to a finding that the complaint was without a "substantial basis in fact and law."  For instance, in *Margolies v. Rudolph*, despite dismissing the plaintiff's defamation claim pursuant to Rule 12(b)(6), the court, citing *Harris*, found "'[e]ven assuming without deciding that [§ 70-a(1)(a)] applies in a diversity suit in federal court,' the Court concludes 'that the standard set by the statute for an award of attorney's fees and costs has not been met.'"  No. 21-CV-2447-SJB, 2023 WL 6151514, at *11 (E.D.N.Y. Sept. 20, 2023).  The *Margolies* court reached its decision because dismissal under Rule 12(b)(6) applies a standard "distinct from" the substantial basis standard articulated by § 70-a and therefore, compliance with the latter standard could not be inferred based on a failure to meet the former standard.  *Id.*

In *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, the court granted dismissal under Rule 12, but still found that the "suit was commenced under a cognizable legal theory and it presented facts that tended to show some of [the defendant's] statements were misleading."  313 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2004).  The court found that while plaintiff's argument was "unpersuasive, it [was] not frivolous" and declined to award fees under § 70-a.  *Id.*  Finally, in *Lexjac, LLC v. Beckerman*, the court declined to award anti-SLAPP fees, finding that, despite granting dismissal, plaintiffs had "supported their claims with cognizable legal theories, and have presented sufficient facts to show that their claims are not frivolous." No. 07-CV-4614

20

(JS)(ARL), 2008 WL 11313761, at *13 (E.D.N.Y. Sept. 30, 2008); *see also Egiazaryan v. Zalmayev*, No. 11 Civ. 2670(PKC)(GWG), 2013 WL 6486258, at *7-8, *14 (SD.N.Y. Dec. 11, 2013) (recommending dismissal under Rule 12 but noting that necessarily means the "substantial basis" standard "was never applied" and that dismissal "resulted only from an exhaustive analysis of the complex legal doctrines that characterize New York's law of defamation" and therefore "there was a legitimate basis for the suit").

In short, contrary to Sloane's sweeping assertion, even if § 70-a applied in federal court, dismissal under Rule 12(b)(6) would not trigger an automatic award of attorney's fees. Further, as explained in Section V, below, Sloane has not met her burden to show that the claims against her lacked a substantial basis in fact or law.

## V.      SLOANE'S REQUEST FOR INHERENT POWERS SANCTIONS SHOULD BE DENIED

Sloane suggests that "in the alternative," the Court should award Sloane her attorneys' fees "pursuant to its inherent powers." Mtn., p. 22. First, in its Order, the Court only invited Sloane to renew her original request for fees and costs, which was limited to § 70-a. Dkt. 296, p. 131; Dkt. 87, pp. 21-22. Second, the Court has the inherent power to impose *sanctions* for bad faith conduct. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). The Court's inherent powers do not extend to awarding attorneys' fees to "make a prevailing party whole." Mtn. p. 22. Further, Sloane's Notice of Motion makes no mention of any request to impose sanctions. Dkt. 370.

As a general matter, "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). There are exceptions and federal courts are vested with the power to sanction an attorney or a party pursuant to their inherent power to manage their own

affairs. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This power includes the ability "to fashion an appropriate sanction for conduct which abuses the judicial process," *Id.* at 44-45, such as the assessment of attorneys' fees against "a party [that] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" *Id.* at 45-46 (internal quotation marks). Importantly, however, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. A district court may appropriately exercise these powers, when, for example, "[a] party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement[.]" *Id.* at 33.

Courts use their inherent powers sparingly and only in the most egregious circumstances, where the moving party shows by clear and convincing evidence that the party to be sanctioned acted fraudulently or in bad faith by bringing a frivolous claim for no proper purpose. In the Second Circuit, before a district court can impose sanctions using its inherent powers, it must make two findings: (1) that the challenged claim was without a colorable basis, and (2) that the claim was brought in bad faith. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021). A claim is without a colorable basis when it "lacks any legal or factual basis." *Wolters Kluwer Fin. Servs., Inc.*, 564 F.3d at 114. As for the latter, bad faith may be inferred when an action is "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). Both findings must be supported "by a high degree of specificity in the factual findings." *Id.* (quoting *Wolters Kluwer*, 564 F.3d at 114). Further, "[b]ad faith must be shown by clear and convincing evidence." *Hong v. Mommy's Jamaican Market Corp.*, 20-cv-9612 (LJL) 2024 WL 3824394, at *12 (S.D.N.Y. Aug. 14, 2024) (citing *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 281 (2d Cir. 2021)); *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (explaining the heavy burden as a function of the Second Circuit's concern

22

that "fear of an award of attorneys' fees against them" could "deter persons with colorable claims from pursuing those claims").

Neither element is met here, much less with the requisite specificity or evidentiary support. The Court has made no such determination but found only that the Wayfarer parties failed to state a claim under Rule 12(b)(6).[2]  First, as noted above, a dismissal under Rule 12(b)(b)(6) is not tantamount to a finding that a claim is wholly without a substantial basis in fact or law.  Thus, notwithstanding their dismissal, the Wayfarer Parties' claims against Sloane were colorable because the claims had "some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."  *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 320 (S.D.N.Y. 2008) (internal citation omitted; emphasis in original).  The question is whether "a reasonable attorney or reasonable plaintiff 'could have concluded that facts supporting the claim *might be established*, not whether such facts *had been established*.'"  *Id.* (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999).

The Wayfarer Parties' defamation claim against Sloane was two-fold: first, that Lively, Sloane, and Reynolds worked together to spread a false narrative about them to the *New York Times* to the effect that they "engaged in sexually inappropriate conduct towards Lively and retaliated against her for reporting the misconduct by engaging in a campaign to ruin her reputation"; and second, that Sloane individually made false statements to other press outlets that Baldoni had committed sexual misconduct.  Dkt. 296 at pp. 46, 79 (citing Am. Compl. ¶¶ 8, 162, 193, 273, 325).

The Court did not dismiss these claims because they were "without a colorable basis" but because the Wayfarer Parties failed to adequately plead Sloane's involvement in Lively's

---

[2] The Wayfarer Parties recite the Court's findings throughout this opposition for purposes only of opposing the Motion, and not by way of concession or as waiver of any remedy, all of which are respectfully reserved.

provision of the draft CRD Complaint to the *New York Times* or that Sloane individually, in making statements to a Daily Mail reporter that Baldoni "sexually assaulted" Lively, Am. Compl. ¶ 193, "did any more than repeat Lively's version of events, which [she] had no reason to doubt." Dkt. 296 at pp. 80, 82. As to the former, the Court found that Sloane's participation, if any, would have been protected by the fair report privilege. *Id*. at p. 82.

Sloane points to a declaration submitted by the Daily Mail reporter disavowing that Sloane had made such a statement, Mot. at 29 (citing Dkt. 286-1). The reporter, James Vituscka, had previously stated exactly the opposite. In the messages, Vituscka was explaining how, during the Summer of 2024, Sloane had been telling him that there were issues on set because "everybody hates Justin" but had not asserted, or even insinuated, that Baldoni had engaged in sexual misconduct towards Lively. Am. Compl. ¶ 193. Indeed, Sloane had specifically told him that it [the tensions on set] "ha[d] nothing to do with Blake[.]" *Id.*

By contrast, after the publication of the *Times* article, Vituscka noted that "[Sloane is now] saying that Blake was sexually assaulted." *Id.* Vituscka noted the sharp discrepancy in Sloane's story and wondered aloud why she would not have said anything back then. *Id.* , Vituscka's recent disavowal of his prior statements is not credible. Vituscka now claims that he "meant to say, 'sexually harassed'" and was referring to the allegations in Lively's CRD Complaint and "not in reference to any conversation I had with Leslie Sloane." Dkt. 286-1, ¶¶ 3, 4. Whatever meant to say, his statements were not ambiguous, his explanation does not make sense and at the time their Complaint was filed, the Wayfarer Parties had every right to rely on the statement – they were not required to have a crystal ball to predict that Vituscka would change his story. Therefore, the inclusion of Vituscka's statement in the Amended Complaint was neither knowingly false nor a function of any failure of diligence on the part of the Wayfarer Parties. The reason for the claim's failure was, instead, a failure to adequately plead the requisite state of fault. *Id.* at pp. 91, 93-94.

Specifically, the Court found that the Amended Complaint lacked sufficient allegations to support the inference that Sloane would have known or recklessly failed to know that her statements were false, *id.* at pp. 93-94, chiefly because "[t]here is no allegation that she was present when any contact between Lively and Baldoni occurred." *Id.* at p. 94. The Wayfarer Parties' failure to meet the high bar of establishing actual malice is not evidence that their claims lacked a colorable basis. Indeed, there is significant circumstantial evidence that Sloane *did* know Lively's allegations of sexual misconduct were untrue given her failure to mention them when disparaging Baldoni to reporters in the summer of 2024 (long after the incidents were alleged to have taken place). Am. Compl. ¶¶ 187-192.

Nor is there any evidence that the Wayfarer Parties asserted their defamation claims in bad faith. Sloane argues that the Wayfarer Parties sued her "to distract from their own misconduct and silence Ms. Sloane" and that their lawsuit was a "mere publicity stunt." Mot. at 29, 30. Sloane, of course, offers no support for these theories. The Wayfarer Parties filed suit in the aftermath of a coordinated "hit" orchestrated by Sloane in concert with Lively, Reynolds, and *The New York Times*. Am. Compl. ¶¶ 1-4, 16-19, 261-263. The individual Wayfarer Parties watched as their reputations, careers, and future prospects disintegrated into dust and as the viability of their studio. *Id.* at ¶¶ 296-299. Most importantly, the Wayfarer Parties' abrupt reputational, social, and economic collapse was premised on a series of accusations that the Wayfarer Parties will show as false at trial in the Lively action. Indeed, the falsity or Lively's claims is the Wayfarer Parties' core defense and nothing in the Court's Order dismissing the Wayfarer Parties' defamation claim impairs that defense. *Id.* ¶¶ 325-331.

These circumstances are in stark contrast to the cases Sloane cites. In *Reichmann*, the Court exercised it inherent sanctions power where a plaintiff and his attorneys maintained a lawsuit for two years while constantly changing their story in fundamental ways, failing to investigate

"obvious and accumulating clues to the truth[,]" and refusing to acknowledge indisputable dispositive facts. *Reichmann*, 553 F. Supp. 2d at 321-26. In contrast, the Wayfarer Parties' defamation claim was dismissed early in the litigation under Rule 12(b)(6) for failure to state a plausible claim – not for failure to state a colorable claim, much less on a finding of bad faith. The claim and dismissal involved a heightened fault standard for public figures and the complex interplay of various legal privileges – not a longstanding failure investigate, recognize the truth or ignore dispositive facts. Discovery had barely commenced and not a single deposition was taken prior to the Order. This is a far cry from the egregious circumstances in Reichmann and other courts have exercised their inherent sanctions power.

The most cursory review of the cases cited by Sloane shows that they involve egregious conduct that is not present here. In *Hong*, the defendant's counsel pursued claims that were "known to be untrue" and made numerous "flat-out misstatements of fact" to the Court. *Hong*, 2024 WL 3824394, at *14; *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 285 (2d Cir. 2021) (affirming award of attorneys' fees pursuant to district court's inherent powers where offending party violated multiple court orders and lied to the court); *Ji Li v. New Ichiro Sushi, Inc.*, 2020 WL 2094095, at *10-11 (S.D.N.Y. Apr. 30, 2020) (plaintiff's counsel pressed forward with factually meritless claims even after evidence adduced at trial definitively disproved them); *Kaufman v. Equifax Information Services, LLC*, 2019 WL 3997461, at *2-3 (S.D.N.Y. Aug. 22, 2019) (issuing sanctions under statutory authority, rather than inherent powers, where claims were maintained in the face of definitive documentary proof of their falsity and following admonitions by the court to dismiss them and plaintiff's failure to appear at hearing to defend his conduct); *Amaprop Ltd. v. Indiabulls Financial Services Ltd.*, 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (sanctioning litigants for repeated misstatements to the court and presentation of bad faith arguments based on misleadingly redacted documents).

26

The Wayfarer Parties are aware of no authority supporting the imposition of inherent power sanctions against a litigant or its counsel as a consequence of failing to state a claim. Where such sanctions have been issued and upheld, the conduct at issue invariably involves an element of bad faith that is missing in this case. Absent a finding of bad faith, there is no basis for imposing inherent power sanctions. *See Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (rejecting district court's conflation of meritlessness and bad faith and reversing imposition of inherent power sanctions). In short, Sloane's request for sanctions pursuant to the Court's inherent power should be denied.

## VI.    CONCLUSION

For the reasons set forth above, the Wayfarer Parties respectfully request that the Court enter an order denying Sloan's motion in its entirety.

Respectfully submitted,

Dated:  July 7, 2025
   Los Angeles, CA

**LINER FREEDMAN TAITELMAN + COOLEY**

By:  ___/s/ Ellyn S. Garofalo_____
   Bryan J. Freedman (*pro hac vice*)
   Ellyn S. Garofalo (*pro hac vice*)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Telephone: (310) 201-0005
Email: bfreedman@lftcllp.com
   egarofalo@lftcllp.com

Dated: July 7, 2025
   New York, NY

**MEISTER SEELIG & FEIN PLLC**

By:  ___/s/ Mitchell Schuster_____
   Mitchell Schuster
   Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Email: ms@msf-law.com

27

kaf@msf-law.com

434759.1