UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLAKE LIVELY,

Plaintiff,

v.

WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual, JED WALLACE, an individual, and STREET RELATIONS INC., a California Corporation,

Defendants.

No. 1:24-cv-10049-LJL
(Consolidated with 1:25-cv-00449-LJL)
rel. 1:25-cv-00779-LJL

WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, JENNIFER ABEL, an individual, and STEVE SAROWITZ, an individual,

Plaintiffs,

v.

BLAKE LIVELY, an individual, RYAN REYNOLDS, an individual, LESLIE SLOANE, an individual, VISION PR, INC., a New York Corporation, and THE NEW YORK TIMES COMPANY, a New York Corporation,

Defendants.

**VISION PR, INC. AND LESLIE SLOANE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

I. The Court Should Award the Sloane Parties Attorneys' Fees and Costs Pursuant to New York's Anti-SLAPP Statute. ........................................................................................ 1

A. New York Law Applies Here. .................................................................... 1

B. The Sloane Parties May Pursue Fees by Motion. .................................................. 3

C. The Anti-SLAPP Statute's Fee-Shifting Provision Applies in Federal Court. ....... 4

D. New York's Anti-SLAPP Law Is Satisfied Here. .................................................. 6

II. In The Alternative, the Court Should Award the Sloane Parties Attorneys' Fees and Costs Pursuant to its Inherent Powers. ......................................................................... 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014) ........ 6

*Belya v. Kapral*,
2025 WL 963111 (S.D.N.Y. Mar. 31, 2025) ........ 3

*Benlevi v. Rukaj*,
84 Misc. 3d 806 (N.Y. Civ. Ct. 2024) ........ 4

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024) ........ passim

*Breuer v. Jim's Concrete of Brevard, Inc.*,
538 U.S. 691 (2003) ........ 3

*Cheng v. Neumann*,
106 F.4th 19 (1st Cir. 2024) ........ 5

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
2024 WL 4265646 (S.D.N.Y. Sept. 23, 2024) ........ 10

*DeIuliis v. Engel*,
2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ........ 3

*Duffy v. Godfread*,
2013 WL 4401390 (N.D. Ill. Aug. 14, 2013) ........ 2

*Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*,
313 F. Supp. 2d 339 (S.D.N.Y. 2004) ........ 8

*Goldman v. Reddington*,
2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ........ 5

*Heilbut v. Cassava Scis., Inc.*,
2025 WL 919654 (S.D.N.Y. Mar. 26, 2025) ........ 5, 6, 7

*Howard Univ. v. Borders*,
2022 WL 3568477 (S.D.N.Y. Aug. 17, 2022) ........ 2

*Huebner v. Midland Credit Mgmt., Inc.*,
897 F.3d 42 (2d Cir. 2018) ........ 10

*In re AppHarvest Sec. Litig.*,
684 F. Supp. 3d 201 (S.D.N.Y. 2023) ........ 3

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
991 F.3d 361(2d Cir. 2021) ........ 9, 10

*Intercon Sols., Inc. v. Basel Action Network*,
969 F. Supp. 2d 1026 (N.D. Ill. 2013) ........ 1

*Isaly v. Garde*,
83 Misc. 3d 379 (N.Y. Sup. Ct. 2024) ........ 3, 4

*Jacob v. Lorenz*,
626 F. Supp. 3d 672 (S.D.N.Y. 2022) ..... 3

*Kaufman v. Equifax Info. Servs., LLC*,
2019 WL 3997461 (E.D.N.Y. Aug. 22, 2019) ..... 10

*Kinsey v. N.Y. Times Co.*,
991 F.3d 171 (2d Cir. 2021) ..... 3

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ..... 4

*LaNasa v. Stiene*,
731 F. Supp. 3d 403 (E.D.N.Y. 2024) ..... 5

*Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*,
42 F.4th 67 (2d Cir. 2022) ..... 5

*Prospect Cap. Corp. v. Enmon*,
2010 WL 907956 (S.D.N.Y. Mar. 9, 2010) ..... 9, 10

*Rabin v. Dow Jones & Co., Inc.*,
2015 WL 14077369 (S.D.N.Y. July 30, 2015) ..... 9

*Reichmann v. Neumann*,
553 F. Supp. 2d 307 (S.D.N.Y. 2008) ..... 9

*Sharif v. Sharif*,
2010 WL 3341562 (E.D. Mich. Aug. 24, 2010) ..... 2

*Smallwood v. Gallardo*,
275 U.S. 56 (1927) ..... 3

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
2021 WL 12101061 (S.D.N.Y. Sept. 28, 2021) ..... 5

*Tantaros v. Fox News Network, LLC*,
12 F.4th 135 (2d Cir. 2021) ..... 4

*Whitehurst v. 230 Fifth, Inc.*,
998 F. Supp. 2d 233 (S.D.N.Y. 2014) ..... 2

**Statutes**

N.Y. Civ. Rights Law § 70-a ..... 3, 5

**Other Authorities**

Sponsor Mem. of Sen. Holyman (July 22, 2020),
https://www.nysenate.gov/legislation/bills/2019/S52 ..... 4

The Wayfarer Parties' baseless claims were filed solely to inflame the public and censor Ms. Sloane, chill her protected First Amendment speech, and inflict significant emotional, reputational, and professional damage to her and her company. Their lawsuit is therefore a textbook example of a "strategic lawsuit against public participation" against a New York citizen for conduct taking place in New York that New York's anti-SLAPP statute is meant to address.

The Wayfarer Parties' opposition brief offers nothing that would suggest that they had a good-faith basis for filing this devastating lawsuit against the Sloane Parties. After months of vaguely referencing "receipts" they had (but never showed or described) and bragging to the press that they had Ms. Sloane "dead in the water," their July 7 filing points to no documents or testimony that demonstrate they ever had a substantial basis in law or fact for the claims and defamatory accusations they publicly leveled against her. Instead, the Wayfarer Parties' opposition hides behind procedural arguments in an attempt to escape the consequences of their misconduct. Each is unavailing and should be rejected.

## ARGUMENT

### I. The Court Should Award the Sloane Parties Attorneys' Fees and Costs Pursuant to New York's Anti-SLAPP Statute.

#### A. New York Law Applies Here.

The Wayfarer Parties do not dispute that their "claims against the Sloane Parties were based on Ms. Sloane's alleged involvement in the New York Times article . . . and Ms. Sloane's conversations (while she was in New York) with New York-based journalists." ECF. No. 371 ("Mot.") at 10. New York's Anti-SLAPP statute therefore applies without needing to resolve a choice-of-law dispute concerning the already-dismissed claims. *See Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (holding that "the plaintiff's defamation claims and defendant's anti-SLAPP defenses need not be

governed by the same state's laws" and noting that "courts have found the place where the allegedly tortious speech took place and the domicile of the speaker central to the choice-of-law analysis"); *Duffy v. Godfread*, 2013 WL 4401390, at *4 (N.D. Ill. Aug. 14, 2013); *Sharif v. Sharif*, 2010 WL 3341562, at *4 (E.D. Mich. Aug. 24, 2010).

The Wayfarer Parties' choice-of-law arguments regarding defamation are nonetheless meritless. The Wayfarer Parties argue California law applies merely because six of them "are residents of California or have their principal place of business there." ECF No. 392 ("Opp.") at 12. But the Wayfarer Parties do not offer any evidence whatsoever in support of their assertions that they "suffered injury to their reputations in California" and suffered "economic losses . . . in California." *Id*. at 13. To the contrary, the Wayfarer Parties chose to file their affirmative claims in a New York federal court, and themselves alleged that they suffered "injury . . . within [New York]." AC ¶ 314.[1] While their opposition conveniently ignores these facts, the Wayfarer Parties are "bound" by the consequences of that "judicial admission[]." *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); *see also Howard Univ. v. Borders*, 2022 WL 3568477, at *6 (S.D.N.Y. Aug. 17, 2022) (Liman, J.) ("A party's assertion of fact in a pleading is a judicial admission . . . and [the court] will not permit [plaintiff] to contradict them.") (internal quotations and citations omitted).[2]

Even if the Wayfarer Parties did adequately demonstrate they suffered injury in California,

---

[1] The Wayfarer Parties' assertion that they "had little choice but to file their affirmative claims in New York," Opp. at 12, makes little sense given that they did not raise their claims as counterclaims but instead filed a separate civil action prior to even answering Ms. Lively's lawsuit.

[2] The Wayfarer Parties also argue that Ms. Lively filed "a complaint with California's Civil Rights Department," is pursuing claims against the Wayfarer Parties under California law, and is party to a contract which has a "California choice of law provision." Opp. at 12–13. It is entirely unclear why the Sloane Parties should not get the benefit of their home state's law due to unrelated conduct by Ms. Lively.

they do not even *attempt* to dispute the Sloane Parties' arguments that all other relevant factors dictate that New York law should apply. *See* Mot. at 11–12 (explaining that Ms. Sloane's alleged statements all emanated from New York; the activities to which the allegedly defamatory statements refer took place in New York; and New York has a stronger interest in protecting the First Amendment rights of its citizens). By failing to address these arguments, the Wayfarer Parties concede them. *See, e.g.*, *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 255 (S.D.N.Y. 2023) (Liman, J.) ("Plaintiff's 'silence concedes the point.'") (collecting cases).

These critical concessions are more than sufficient for the Court to conclude that New York law governs. *See, e.g.*, *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176–78 (2d Cir. 2021) (applying New York law to defamation claim where plaintiff was domiciled out of state); *Belya v. Kapral*, 2025 WL 963111, at *4 (S.D.N.Y. Mar. 31, 2025); *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 685–86 (S.D.N.Y. 2022); *DeIuliis v. Engel*, 2021 WL 4443145, at *10 (S.D.N.Y. Sept. 27, 2021).

### B. The Sloane Parties May Pursue Fees by Motion.

The Wayfarer Parties next argue that a "motion after a Rule 12(b)(6) dismissal is not the proper procedure to seek fees under § 70-a." Opp. at 7. But nothing in the anti-SLAPP statute's text "precludes awarding fees by motion rather than a pleaded claim." *Isaly v. Garde*, 83 Misc. 3d 379, 390 (N.Y. Sup. Ct. 2024). To the contrary, the anti-SLAPP statute provides that a fee applicant "may *maintain* an action, claim, cross claim or counterclaim" to recover attorneys' fees and costs. N.Y. Civ. Rights Law § 70-a (emphasis added). "'[M]aintain[ing] an action' includes defendants' continuing to litigate in an original action filed against them." *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 188 (S.D.N.Y. 2024). As the U.S. Supreme Court has explained, "'[t]o maintain an action' may mean 'to continue' to litigate, as opposed to 'commence' an action." *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003); *see also Smallwood v. Gallardo*, 275 U.S. 56, 61 (1927) ("To maintain a suit is to uphold, continue on foot and keep from collapse a suit already

begun."). The Wayfarer Parties' construction of the statute renders the term "maintain" superfluous and is therefore untenable. *See Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 142–43 (2d Cir. 2021).

The Wayfarer Parties' construction also undercuts the very purpose of the statute, which is to *reduce* costs incurred by defendants whose free speech rights have been attacked. *See* Sponsor Mem. of Sen. Holyman (July 22, 2020), https://www.nysenate.gov/legislation/bills/2019/S52; *see also Benlevi v. Rukaj*, 84 Misc. 3d 806, 808 (N.Y. Civ. Ct. 2024) ("[T]he very purpose of anti-SLAPP laws is to reduce trials of SLAPPs."). Forcing a prevailing defendant to commence an entirely new lawsuit to recover her attorneys' fees and costs "would put an additional onus on defendants in SLAPP suits," *Bobulinski*, 758 F. Supp. 3d at 188–89, undermining the legislature's "clear intent" to permit defendants to "halt SLAPP claims and recover attorney's fees and costs without the burden of . . . protracted litigation." *Isaly*, 83 Misc. 3d at 389.[3]

**C. The Anti-SLAPP Statute's Fee-Shifting Provision Applies in Federal Court.**

The Wayfarer Parties' argument that New York's anti-SLAPP law conflicts with federal procedural rules is likewise unavailing. As an initial matter, the Wayfarer Parties' reliance on *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) is misplaced because that case addresses California's anti-SLAPP statute, which, unlike New York's anti-SLAPP law, ties entitlement to fees to a "special motion to strike"—a "specific state procedural mechanism" for dismissal that is already answered differently by Rules 12 and 56. *Bobulinski*, 758 F. Supp. 3d at 183–84 (distinguishing *La Liberte*).

[3] Consistent with the plain text and purpose of the anti-SLAPP statute, the First Department has repeatedly determined that "fees and costs could be sought by motion rather than a counterclaim or standalone pleading." *See Isaly*, 83 Misc. 3d at 388–89 (citing *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022); *Golan v. Daily News, L.P.*, 214 A.D.3d 558, 559 (1st Dep't 2023)).

The New York anti-SLAPP statute, by contrast, does no such thing. *Id.* at 184. The Wayfarer Parties argue that, like the California statute, the New York anti-SLAPP statute "makes costs and fees available only when the court dismisses an action based on *the statute's* dismissal provision." Opp. at 14 (quoting *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 417 (E.D.N.Y. 2024)). Not so. While the New York statute provides that dismissal pursuant to the CPLR is one way of demonstrating entitlement to attorneys' fees and costs, it is "not the only way." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 12101061, at *6 (S.D.N.Y. Sept. 28, 2021).

Indeed, the statute provides that attorneys' fees "shall be recovered upon a demonstration, ***including*** an adjudication pursuant to [CPLR 3211(g)] or [CPLR 3212(h)], that the [SLAPP suit] was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1) (emphasis added). The word "including" confirms that the statute's reference to the CPLR is illustrative, not exhaustive. *See Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 76 (2d Cir. 2022). An "anti-SLAPP litigant may obtain costs and attorney's fees *without* using [the CPLR's] procedures." *Goldman v. Reddington*, 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) (emphasis in original); *see Cheng v. Neumann*, 106 F.4th 19, 24 n.2 (1st Cir. 2024) ("[S]ection 70-a does not condition an award of attorneys' fees solely upon prevailing under the procedural provisions of New York's anti-SLAPP statute, as opposed to under federal law.").

In any event, the Wayfarer Parties' invocation of Rules 12 and 56 is a red herring. The Sloane Parties "are not relying on the New York anti-SLAPP regime's expedited motion-to-dismiss or summary-judgment mechanisms." *Heilbut v. Cassava Scis., Inc.*, 2025 WL 919654, at *9 (S.D.N.Y. Mar. 26, 2025). They need not do so, since the Wayfarer Parties' claims were already dismissed pursuant to Rule 12(b)(6). Instead, the Sloane Parties invoke only the fee-shifting

provision, which has nothing to do with the standard of disposing of claims at the pleading stage or summary judgment. Under these circumstances, the anti-SLAPP statute "is doing no procedural work; it is merely defining the substantive standard for entitlement to attorney's fees." *Bobulinski*, 758 F. Supp. 3d at 186.[4]

The Wayfarer Parties and the cases they cite rely on an "overly broad reading of *La Liberte* and fail to adequately take account of the Second Circuit's *Adelson* decision and New York appellate court decisions specifically applying Section 70-a(1)'s fee-shifting provision." *See Bobulinski*, 758 F. Supp. 3d at 189 n.24.[5] Notably, the Wayfarer Parties make no effort to refute the Sloane Parties' arguments that (1) courts consistently conclude that fee-shifting provisions are substantive and apply in federal court, Mot. at 18–19; (2) section 70-a does not conflict with Rule 11 because it provides a substantive right in a narrow class of cases, rather than a procedural sanction in all federal litigation, *id.* at 19–21; and (3) applying § 70-a in federal court furthers the twin aims of *Erie*—avoiding forum shopping and the inequitable administration of the law, *id.* at 21–22.

**D. New York's Anti-SLAPP Law Is Satisfied Here.**

The Sloane Parties are entitled to recover their attorneys' fees and costs under New York's anti-SLAPP statute. The Wayfarer Parties do not dispute (and therefore concede) that Ms. Sloane's statements were made in connection with an issue of public interest. *See* Mot. at 13–15. Instead,

---

[4] *Bobulinski* is the first case to tackle all the issues discussed herein in detail, and its reasoning has been followed by other courts. *See Heilbut*, 2025 WL 919654, at *9–11. In fact, the Wayfarer Parties do not (and cannot) cite a single case post-dating *Bobulinski* that declines to follow it.

[5] In *Adelson v. Harris*, the Second Circuit reasoned that the mandatory fee shifting provision in Nevada's anti-SLAPP statute would apply in the district court because it "(1) would apply in state court had suit been filed there; (2) is substantive within the meaning of *Erie,* since it is consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity; and (3) does not squarely conflict with a valid federal rule." 774 F.3d 803, 809 (2d Cir. 2014). The Wayfarer Parties do not (and cannot) identify any differences between New York and Nevada's anti-SLAPP statutes that would render that reasoning inapplicable here.

they argue only that the 12(b)(6) dismissal of their claims is not alone sufficient to satisfy the "substantial basis" standard of the anti-SLAPP statute. *See* Opp. at 19–21. As a threshold matter, the Wayfarer Parties fail to address intervening cases in this circuit that contradict their position. *See, e.g.*, *Heilbut*, 2025 WL 919654, at *11 (finding plaintiffs lawsuit "lacked a substantial basis in fact and law" where complaint "was dismissed for failure to state a claim"); *Bobulinski*, 758 F. Supp. 3d at 184–85 (awarding attorney's fees upon a Rule 12(b)(6) dismissal).

Regardless, assuming *arguendo* that a 12(b)(6) dismissal is not enough to show a lack of "substantial basis," the Wayfarer Parties' argument still fails because they do not even attempt to articulate a "substantial basis" in support of their claims. For instance, among other fundamental legal deficiencies, the Wayfarer Parties wholly fail to explain why they forced the Sloane Parties to defend claims brought by all seven Wayfarer Parties, even though she was not alleged to have made a single statement—let alone a defamatory statement—concerning six of them. *See* Order at 92 n.47 ("The other Wayfarer Parties cannot recover for [the alleged defamatory] statements under any standard.").

Nor have they offered a shred of factual support for their invented storyline. For instance, there is zero evidence connecting the Sloane Parties to the New York Times article, which is unsurprising given that—as repeatedly explained—the Sloane Parties had nothing to do with it.

As another example, contrary to the Wayfarer Parties' key allegation that Ms. Sloane told Daily Mail reporter James Vituscka "that Blake was 'sexually assaulted,'" AC ¶ 193, Vituscka unequivocally testified that "Ms. Sloane never told [him] that Ms. Lively was sexually harassed or sexually assaulted by Justin Baldoni or anyone else." ECF No. 286-1 ¶ 5. The Wayfarer Parties never had a good faith basis for their allegation that Ms. Sloane accused Baldoni of sexual assault. No media outlet—including the Daily Mail—ever reported that Ms. Lively was sexually assaulted.

The text message the Wayfarer Parties relied on as their sole support for that allegation was ambiguous at best, *see* Order at 93 n.48, and they had access to information squarely contradicting their proffered interpretation of it. *See, e.g.*, ECF No. 190-3 at 16 (confirming that Vituscka told Melissa Nathan and Bryan Freedman that he "**never once did [Ms. Sloane] say anything about sexual assault**") (emphasis added).[6] At a minimum, the Wayfarer Parties should have conducted a cursory investigation into the meaning of Vituscka's text before relying on it as the sole basis for their highly publicized, highly damaging lawsuit. Shockingly, the Wayfarer Parties do not dispute that they did not do so. ECF No. 286-1 ¶ 6 ("The Wayfarer Parties and their counsel did not consult me about what I meant by my use of the term 'sexually assaulted.'").[7]

In short, even if the "substantial basis" standard were heightened in some way, the Wayfarer Parties do not (and cannot) make any attempt to satisfy it. This case is therefore readily distinguishable from those cited by the Wayfarer Parties, where courts expressly found that notwithstanding dismissal, the plaintiff's claims were supported by "facts" and "a cognizable legal theory." *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339, 344–

[6] Contrary to the Wayfarer Parties' arguments, Mr. Vituscka did not "change his story." Opp. at 24. He never expressly claimed that Ms. Sloane accused Baldoni of sexual assault, and in fact repeatedly said the exact opposite.

[7] Confronted with James Vituscka's sworn declaration, the Wayfarer Parties weakly assert that his "recent disavowal of his prior statements is not credible," effectively accusing him of having committed perjury. Opp. at 24. The Wayfarer Parties did not, however, provide declarations from the two people Vituscka communicated with (Melissa Nathan or Bryan Freedman), publish or otherwise furnish their communications with him (which the Wayfarer Parties inexplicably withheld from the Sloane Parties during discovery), or explain how Vituscka's specific and sworn-to statements were incorrect. It is beyond dispute that the Wayfarer Parties were in direct communication with Vituscka at all relevant times and could have verified allegations attributable to him with little difficulty. *See* Ex. A (Dec. 23, 2024, email chain between Vituscka, Nathan, and Freedman inviting Vituscka to "Feel free to come for request for comment here"). They instead chose not to undertake any investigation whatsoever into what were clearly false allegations they intentionally included in highly publicized court documents.

45 (S.D.N.Y. 2004). Unlike those cases, here, the Wayfarer Parties' claims are utterly meritless.

## II. In The Alternative, the Court Should Award the Sloane Parties Attorneys' Fees and Costs Pursuant to its Inherent Powers.

In the alternative, the Sloane Parties respectfully request that the Court award them their attorneys' fees and costs pursuant to its inherent powers.[8]

While the Wayfarer Parties conclusorily argue that their conduct was not sufficiently "egregious" to warrant sanctions, Opp. at 8, they do not even *attempt* to dispute that they "prosecute[d] a knowingly frivolous claim," *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021), including because they pursued claims by all seven Wayfarer Parties, even though Ms. Sloane did not make a single statement concerning six of them. *See Prospect Cap. Corp. v. Enmon*, 2010 WL 907956, at *4 (S.D.N.Y. Mar. 9, 2010) (awarding sanctions including because plaintiff "did not prevail on a single claim").

Nor do they dispute that they "failed to conduct a good faith investigation" into the allegations in their complaint, *Rabin v. Dow Jones & Co., Inc.*, 2015 WL 14077369, at *2–4 (S.D.N.Y. July 30, 2015), including because they did not bother to ask Mr. Vituscka what he meant by his use of the term "sexually assaulted," *see* ECF No. 286-1 ¶ 6, even in the face of a legion of evidence contradicting the Wayfarer Parties' deliberate misreading of his text. *See, e.g.*, *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 319–20 (S.D.N.Y. 2008) (awarding sanctions where attorneys failed to make reasonable "investigations and turned a blind eye to the inconvenient facts and documents").[9]

---

[8] The Wayfarer Parties argue that "the Court only invited Sloane to renew her original request for fees and costs, which was limited to § 70-a," Opp. at 21, but a party need not be "invited" to pursue sanctions, which courts are empowered to enter any time, including *sua sponte*. *See, e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 462 (S.D.N.Y. 2023).

[9] The Wayfarer Parties attempt to distinguish *Reichmann*, but like the plaintiff there, their allegations were "constantly changing," 553 F. Supp. 2d at 319—so much so that during a meet

The Wayfarer Parties also do not dispute that they made knowing "misrepresentations" in their filings and in the press, *Int'l Techs.*, 991 F.3d at 368–69, including concerning their purported "receipts" against Ms. Sloane, and her purported connection to Harvey Weinstein, *see* Mot. at 4–5 & n.2, solely to inflame the public and inflict harm. *See Prospect Cap.*, 2010 WL 907956, at *5 ("Misrepresentations, coupled with frivolous litigation, establish clear evidence of bad faith.").

Nor do they dispute that, as discussed above, the Wayfarer Parties have zero evidentiary support for their factual allegations, which have been swiftly debunked. *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2024 WL 4265646, at *5 (S.D.N.Y. Sept. 23, 2024) (awarding sanctions where plaintiff continued to pursue claims after receiving notice through a "motion to dismiss" that "allegations central to those claims were false").

Strikingly, the Wayfarer Parties "have still not provided any explanation for their conduct or expressed any contrition for wasting [the Sloane Parties'] time and money on this case." *Kaufman v. Equifax Info. Servs., LLC*, 2019 WL 3997461, at *3 (E.D.N.Y. Aug. 22, 2019). Under these circumstances, the Court is "well within its discretion to sanction" the Wayfarer Parties. *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 57 (2d Cir. 2018).

## CONCLUSION

The Sloane Parties respectfully request that the Court hold that the Sloane Parties are entitled to attorneys' fees and costs pursuant to either New York's anti-SLAPP law and/or the Court's inherent powers and set a briefing schedule to determine the reasonable amount of fees to which the Sloane Parties are entitled.

---

and confer, the Wayfarer Parties' counsel refused to even confirm whether they were still alleging Ms. Sloane ever said the words "sexual predator" or "sexual assault" in reference to Baldoni. ECF No. 190 at 2 n.5.

Dated: July 14, 2025

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

*/s/ Sigrid S. McCawley*

Sigrid S. McCawley
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: (954) 356-0011
smccawley@bsfllp.com

Andrew Villacastin
Lindsey Ruff
Rachael Schafer
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
avillacastin@bsfllp.com
lruff@bsfllp.com
rschafer@bsfllp.com

*Attorneys for Leslie Sloane and Vision PR, Inc.*