July 18, 2025

Re: Case No: 1:24-cv-10049 Lively v Wayfarer

Dear Judge Liman,

Of note, there are no non-party rules for submission in the court's Individual Practices to refer to when filing with the court.

While the court is holding us non-parties to the standard of parties by quoting case law intended for parties in its order, namely:

*(See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008) ("The people have a right to know who is using their courts." (citation omitted)).*

We object to this citation because we are not Plaintiffs, nor are we defendants in this case. We are non-parties that have received subpoenas sent to a third party that did not go through the appropriate process to be obtained and had they, they would not have met the standard to have been approved. *(Highfields Capital Mgmt., L.P. v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005).* The court in Highfields recognized that the First Amendment protects the right to anonymous speech, particularly online, and that unmasking an anonymous speaker through discovery can chill free expression. It therefore adopted a two-step test for when a party seeks to unmask an anonymous defendant:

1. Plaintiff must provide a prima facie case before the court by presenting sufficient evidence to establish an essential element of their claim, just as they would need to survive a motion for summary judgment.
2. If a prima facie case is made, the court must balance the strength of the case and the necessity of the disclosure against the speaker's First Amendment interest in maintaining anonymity.

I was not afforded this standard. Subpoenas were issued from this court, not only failing to meet this standard, but failing to meet any standard. There is no evidence or sound legal basis whatsoever to have issued this subpoena in the first place. Our objections have been clearly noted in our Motions to Quash that so far have not been allowed into the docket. All we need from this court is a stamp. Once we receive this, we can forward it to the third party that was subpoenaed for our information. This court's demand for our unmasking goes against our First Amendment rights. We would not be in this position if the court had not allowed such a wayward subpoena in the first place and yet the court demands our unmasking in a case that the entire world is watching. How dare this court!

*"When word spreads that people who have committed no wrongdoing can have their identities disclosed through civil discovery... this kind of chill can be fatal to the use of the Internet as a vehicle for free expression."*
— *Highfields*, 385 F. Supp. 2d at 980.

There are many cases supporting my stance in my position as a non-party whose information has been subpoenaed to a third party. These are the cases that apply to me. *(Music Grp. Macao Commercial Offshore Ltd. v. Does, 82 F. Supp. 3d 979 (N.D. Cal. 2015)* Where the court reaffirmed the Highfields two-step test, requiring plaintiffs to show a "real evidentiary basis" for alleged wrongful conduct before proceeding to balance First Amendment interests. *(Smythe v. Doe, No. 15-mc-80292, 2016 WL 452756 (N.D. Cal. Jan. 5, 2016)* Where the court denied unmasking where the plaintiff failed to present sufficient evidence satisfying the first Highfields prong, thus not proceeding to the balancing test. *In re PGS Home Co. Ltd., No. 19-mc-80139 (N.D. Cal. Nov. 25, 2019)* In a §1782 foreign-discovery context, the court cited Highfields to emphasize that allegations and speculation without evidentiary support are insufficient. (*Fodor v. Doe, 3:10-CV-0798-RCJ (D. Nev.)* The court applied Highfields' balancing test and found that Doe did not present sufficient evidence to overcome the strong First Amendment interest in anonymity. *(Signature Mgmt. Team LLC v. Doe, 2017 WL 1881016 (6th Cir.)* Where the Sixth Circuit applied Highfields-style balancing and denied unmasking where harm to anonymous speech outweighed plaintiff's interests.

Even more compelling: *(Sony Music Entertainment Inc. v. Does 1–40, 326 F. Supp. 2d 556* **_(S.D.N.Y. 2004)_** In this case, Sony filed suit against dozens of allegedly infringing users on peer-to-peer (P2P) networks. To identify the alleged infringers, Sony sought to subpoena internet service providers to reveal subscriber identities. The court adopted a **multi-factor test**—similar in structure and underlying purpose to the Highfields standard—for evaluating whether to allow the disclosure of anonymous speakers. Sony's test went beyond the Highfields standard requiring the requesting party to demonstrate:

1. **A prima facie claim** of copyright infringement (e.g. actual evidence beyond speculation);
2. That the subpoena is **sufficiently specific** to identify only the alleged infringers;
3. That there is **no alternative means** to obtain the information;
4. A **central need** for the information to advance the plaintiff's claim;
5. A consideration of the anonymous speaker's **expectation of privacy** and First Amendment interest.

The subpoena issued from this court for my information fails at every level of this test established **in this very court.** The law recognizes that in order to request this information, a subpoena is needed yet this court demands I readily supply it as if this subpoena has already been granted. It has not, it should not be, and it should not have even been issued. The error lies with this court but demands I bear the burden for its mistake.

Your responses, aside from telling us you will not entertain an anonymous filing, have given little information to go on to respond to a subpoena that issued under the authority of your court. For example, three of us have submitted; two Motions to Quash, one Letter of Intent, yet the court did not clarify which one(s) needed "deanonymized." Kindly address us by the names on the wayward subpoena so we know which submission(s) need altered as our time to respond is running short.

Because we are at the mercy of this court in spite of how much we object to the way in which we have been brought into it, I have resubmitted mine on July 17, 2025, including my name, position with the company that has been wrongly subpoenaed, address, and telephone number. Do you require more than this? If so, I need further clarification.

An additional purpose of this letter is to inform the court that multiple non-parties who were served this ill-gotten subpoena, are filing a complaint today with the California State Bar against Esra Hudson, the attorney who signed it without the appropriate requirements of presenting a prima facie showing before the court, passing the two prong standard of Highfields required to unmask our First Amendment protected rights to publish anonymously on the Internet, and without domesticating it to the appropriate court in Sacramento, CA where Google is located. The contents of the complaint are found in **Exhibit A**.

On what legal basis were these subpoenas issued out of this court? Was ANY evidence at all presented to validate them or is Ms. Lively free to submit just any subpoena to anyone that is not her fan?

Ms. Lively has been gratuitously allowed to extend her witch hunt for discovery, in which she has no evidence to support, and has amended this same subpoena to add members of X on July 17, 2025. Accordingly, more complaints and Motions to Quash will follow. The information she seeks is easily obtainable from the actual parties to this case who have the privilege of being legally represented when dealing with overbroad, inappropriate subpoenas.

At this time, we are drafting a complaint against the court as well.

Regards,

Ni Cai

Manager of Kassidy O'Connell, LLC
Subpoenaed as non-party @kassidyoc


Based on the sound arguments in this letter, I strongly express my wish for my name to be redacted before being filed or supplied to the Lively parties but if the court will only publish or "entertain" my correspondence by unmasking me against my First Amendment right, I have no other option at this time other than to put the Lively parties and this court on notice that I reserve the right to take action for this treatment by them in the future.

# Exhibit A

(The contents of the complaint we're drafting against attorney Esra Hudson to the State Bar of California)

We are filing this complaint against attorney Esra Hudson for issuing an improper subpoena targeting anonymous non-party individuals in a manner that appears intended to chill speech, delay discovery, and misuse the legal process. Her actions violated multiple California Rules of Professional Conduct and disregarded constitutional protections under the First Amendment.

## Facts

1. Ms. Hudson issued a non-party subpoena through a New York court seeking to unmask anonymous YouTubers and other online speakers. The subpoena demanded highly sensitive data — including banking information, IP addresses, and physical locations — without any supporting factual evidence connecting us to the underlying litigation.

2. The subpoena was issued without a court order, violating the First Amendment protections governing anonymous online speech. Under the standard articulated in Highfields Capital Mgmt., L.P. v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005), a party seeking to unmask anonymous speakers must first make a prima facie case for its claims, followed by a balancing test to weigh the alleged harm against the speaker's right to remain anonymous.

   Highfields warns that:
   "When word spreads that people who have committed no wrongdoing can have their identities disclosed through civil discovery... this kind of chill can be fatal to the use of the Internet as a vehicle for free expression." (Id. at 980)

   Ms. Hudson bypassed these constitutional safeguards entirely — there was no judicial oversight or prima facie showing. The subpoena was issued in the Southern District of New York, without jurisdiction over the affected parties or the corporation on which it was served – Google, LLC. It was never domesticated to California, where the subpoenaed corporation resides.

3. The subpoena compels anonymous parties to submit motions requiring identifying information such as names, addresses, and phone numbers to a foreign jurisdiction (New York) to defend their anonymity — despite the subpoena being unlawfully obtained and procedurally defective. This effectively unmasks and punishes those individuals for asserting their constitutional rights.

4. Ms. Hudson's office denied issuing the subpoena on three separate occasions, then later claimed they were unsure via her reception who states they were operating under her specific instructions. We have an attorney's statement and a recorded phone call documenting this contradiction, which raises serious concerns under the rules of professional honesty and truthfulness.

5. The subpoena appears intended not to uncover relevant evidence, but to:
   - Delay her client's deposition and discovery obligations,
   - Chill online speech that is critical of her client, and

- Impose needless cost, legal risk, and emotional distress on non-parties who were not involved in the litigation.

## Violations of California Rules of Professional Conduct

### Rule 3.1 – Meritorious Claims and Contentions

The subpoena was issued without any factual or legal foundation and made invasive demands of uninvolved parties. The request lacked a good-faith basis and violated the standard requiring attorneys to avoid frivolous or baseless legal actions.

### Rule 4.1 – Truthfulness in Statements to Others

Ms. Hudson's office made false and misleading statements regarding the issuance of the subpoena. Her representatives denied it was issued, then later admitted uncertainty — despite the fact that it had already been served. Such conduct reflects a lack of candor and violates Rule 4.1.

### Rule 8.4 – Misconduct

Ms. Hudson's conduct — using a subpoena as a tool to harass anonymous individuals and delay litigation — constitutes dishonesty, abuse of legal process, and interference with protected rights, all of which qualify as misconduct under Rule 8.4(c).

### Rule 8.4.1 – Conduct That Violates Legal Rights

By targeting anonymous speakers without due process and in violation of First Amendment principles, Ms. Hudson infringed upon protected constitutional rights, thereby violating Rule 8.4.1, which prohibits conduct that unlawfully discriminates against or denies individuals the protection of legal rights.

## Persuasive Authority – ABA Model Rules of Professional Conduct

### ABA Rule 4.4(a) – Respect for Rights of Third Persons

A lawyer shall not use legal means that have no substantial purpose other than to embarrass, delay, or burden a third person, or to obtain evidence in violation of their rights.

Ms. Hudson's subpoena had no substantial litigation purpose. It was issued solely to pressure and chill critics through the threat of exposure and court involvement as the question of whether or not these non-parties had contact or received compensation from Wayfarer is a question that should be compelled through the Wayfarer parties rather than this archaic witch hunt style of lawyering.

### ABA Rule 3.2 – Expediting Litigation

Attorneys must make reasonable efforts to expedite litigation consistent with their client's interests.

Instead of moving the case forward, the subpoena appears intended to delay proceedings, specifically her client's deposition and discovery responsibilities, while simultaneously punishing critical online voices.

## Harm and Impact

The subpoena caused severe emotional distress, fear of exposure, and financial harm to the targeted anonymous speakers and their loved ones. It forced uninvolved individuals to engage attorneys to defend their basic right to free speech and anonymity. The process lacked basic procedural fairness, and the legal system was exploited to retaliate against criticism and avoid discovery obligations.

## Relief Requested

I respectfully request that the State Bar of California investigate this matter as a violation of the Rules of Professional Conduct and the ethical obligations that govern all members of the California Bar. The misuse of a legal process to delay litigation, intimidate critics, and obtain improper discovery from non-parties is serious misconduct that undermines both legal ethics and constitutional protections.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: SUBPOENAS TO GOOGLE for Information from YouTube and TikTok Content Creators 1-16,** Non-Party Movants. | **MOTION TO QUASH SUBPOENA** Google Internal Reference #100884180 |
| Served in the matter of Case Nos: 1:24-cv-10049-LJL; 1:25-cv-00449-LJL | Served by: |
| **Blake Lively** Petitioners | Esra Hudson Manatt Phelps & Phillips, LLP |
| V | On behalf of: |
| **Wayfarer Studios LLC, et al.,** Defendants. | Blake Lively |

PLEASE TAKE NOTICE that Non-Party Movant YouTube account, @Kassidyoc, hereby moves this Court to accept this pro se Motion to Quash pursuant to Federal Rules of Civil Procedure § 45(d)(3) and 45(c)(2), to quash or revoke the subpoena issued to Google LLC, dated July 3, 2025, Internal Reference #100884180, seeking personally identifiable information and private data associated with Movant's YouTube account.

I am filing this motion pro se while preparing to sign counsel for this matter because there are conflicting dates to respond and I want to ensure there is some sort of response on file before the deadline that appears on the subpoena, which is July 16, 2025. I have very little information on this subpoena (some accounts have not yet received a copy even at this late moment), and because counsel named as the serving party of this mysterious subpoena has been extremely evasive and uncooperative in addressing our questions and concerns as this document will show.

Google has given us a respond date of July 31, 2025, but their subpoena request is due on July 16, 2025. **Exhibit A** For reasons that will be revealed in this document, I am in fear that tactics may have been employed to cause confusion and/or delay so that I will miss my chance to file on time. Google asked for an official, court stamped filing to be forwarded to their legal department to begin steps to quash their subpoena for my information. That is why I am filing this today ahead of being joined by my counsel. I feel I need an official record of my response and intent.

Additionally, I wish to have this letter filed to make the court aware of the types of abusive, sweeping subpoenas being served by Blake Lively at this point in discovery since she stated in dkt 410 that she has served 60 third party

subpoenas and intends to file several more motions for alternative service subpoenas – the same as these that have been served to Movant. This is nothing but an unfounded fishing expedition. **Exhibit B**

## I. INTRODUCTION

This Motion to Quash Subpoena refers to a subpoena served on Google LLC seeking the unmasking of sixteen mostly anonymous YouTube and TikTok creators under the premise that we are engaged in a smear campaign against Plaintiff Blake Lively. **Exhibit C** The subpoena is unsupported by evidence, chilling of constitutionally protected speech, and endangers the safety and privacy of non-parties uninvolved in the litigation.

Ms. Lively, who still cannot accept that the criticism against her online is completely organic and of her own making, has made yet another move guaranteed to make matters far worse for her reputation by lashing out at content creators on social media. She has apparently failed to sufficiently prove her case of retaliation and with deadlines for discovery looming, has engaged in a last-ditch effort to bring a fishing expedition in the hopes of just maybe finding a connection between any Wayfarer party, including counsel, and some of the negative online reports. She is barking up the wrong tree.

## II. FACTUAL BACKGROUND

Movant is #12 of 16 independent online commentators who lawfully analyze court filings and publicly available material related to high-profile litigation. Movant, like all the others listed in the subpoena, does not have **any** affiliation or communication with the Defendants, Defendants' counsel, or anyone related to Defendants, in this matter. On or about July 10, 2025, Movants received notification from Google that their identifying information, including names, emails, addresses, IP logs, payment data, and other personal information, was sought via subpoena in this action. Since that date, other creators are still receiving their initial notifications. At present, I only know of 8 out of the 16 listed in the subpoena. Not all of us have received a copy of the actual subpoena. I fear many will not have the chance to fight this subpoena due to not receiving notification.

The subpoena, issued by Plaintiff's counsel, Esra Hudson, requests the following from Google:

    A. **Names, addresses, email accounts, and phone numbers including backups**. (Any information Plaintiff wishes to collect regarding Wayfarer and communications with the media should be requested directly from Wayfarer instead of chasing down every account on social media that may have made negative remarks about Ms. Lively).

    B. **IP addresses, login histories, and geolocation data**. (Plaintiff has not explained, nor is it easily apparent why Movant's locations have any bearing on this litigation. Plaintiff has further not explained why they want this

information going back to May 2024 when Movant did not begin speaking about this topic until February 3, 2025, over a month after the lawsuit was filed). Furthermore, Ms. Lively herself makes a compelling argument that individuals have a constitutional right to privacy regarding their financial information. In her response to the Wayfarer Parties motion to compel her to disclose her own financial information, in litigation she elected to initiate and seek damages, where she states, "This argument falls woefully short of overcoming the general rule against seeking party assets and financial information and Ms. Lively's constitutional right to privacy of the same". Ms. Lively appears to recognize the basic elements of privacy rights that individuals are entitled to, despite her attempts to pierce the rights others are equally entitled to.

C. **YouTube and Google Pay account information, including payment sources**. (YouTube neither directly pays their creators, nor do they use Google Pay. No third party has access to add additional money to a YouTuber's monthly pay. We are paid by AdSense according to ads run on our channel. Ironically enough, Mint Mobile often runs ads on my channel featuring their spokesperson, Ryan Reynolds, so if I've been paid directly or indirectly by anyone involved in this case, it's former party, Ryan Reynolds).

D. **Bank account and credit card information**. (One finds themselves astonished at what could possibly be gained by accessing credit card information as everyone understands, or should understand, that credit cards are used for purchases and not for payments. Plaintiff claims to be looking for signs that I as a creator am somehow being paid by someone outside of AdSense to create my content. I am not. This request for Movant's financial records is overwhelmingly invasive. I restate that any information Plaintiff wishes to collect regarding Wayfarer and communications or payments with media and social media should be requested directly from Wayfarer instead of chasing down every account that may have made negative remarks about Ms. Lively and demanding I show my, and anyone whom I share a bank account with, private financial information). I fail to see why information such as bank numbers would be required for any other purpose than to issue a further subpoena to the financial institutions with whom I conduct my business, in order to obtain fuller financial records which have no relevance to Ms. Lively's claims and are grossly intrusive.

E. **Subscriber registration data, premium services, and account usage history** (it is unclear what this entails as far as my subscriber registration data or what premium services have to do with any part of this litigation. This request needs clarification if the Court, as it usually does, grants her this invasive subpoena. Does this mean channels I subscribe to or channels that subscribe to mine? Is it premium services I subscribe to or premium services used to

subscribe to me? And finally, what IS a YouTube premium service? We cannot control, nor is it an easy task to keep track of who subscribes to our channels. I restate that if Ms. Lively wishes to know if a member of the Wayfarer party or counsel subscribe to my channel, this question should be directed to Wayfarer and not to me. I firmly object to my channel being used as a means to investigate people who subscribe to me so that Ms. Lively can add more innocent people to her desperate and paranoid list of possible culprits in an imaginary smear campaign.

F.   **These requests are overly broad, highly intrusive, and completely without merit.** Plaintiff cannot offer any single piece of evidence to explain or support these requests. The only reason Movant is being pursued in this manner is because I do not speak favorably about Ms. Lively, her husband (who was originally a named Defendant in the case, but has since been dismissed leaving us to also wonder why his name appears on the subpoena as a party **Exhibit D**) or her legal team that is seen as abrasive, mean spirited, repetitive, and unprofessionally careless of any party's personal information outside of their client's.

G.   **Google lacks my consent to share my personal information under § 2702(b)(3) of the Stored Communications Act.**

Section 2702(b)(3) of the SCA creates an exception based on lawful consent that applies to civil discovery. The SCA authorizes an ECS or RCS provider to divulge the contents of communications when "lawful consent" has been given to do so.

Google does not have my lawful consent to disclose any of my personal information. J.T. Shannon Lumber Co. v. Gilco Lumber Inc., No. 2:07-cv-119, 2008 WL 3833216 (N.D. Miss. Aug. 14, 2008), reconsideration denied, 2008 WL 4755370, at *1 (N.D. Miss. Oct. 29, 2008). The plaintiff sought all e-mails in the three individual defendants' personal Microsoft, Yahoo!, and Google accounts. The court found the "statutory language [] clear and unambiguous" and ruled that a Rule 45 subpoena does not constitute an exception to the SCA allowing an ECS provider to divulge the contents of communications. Id. at *1–*2.

Movant uses a pseudonym for personal safety, having previously experienced stalking, sexual assault, and credible threats. Plaintiffs' counsel has an established history in this case of improper (completely absent) redaction in filings and have exposed the home addresses of every Wayfarer defendant. This led to death threats to all the defendants, several of which are women, threats of kidnap and harm to a wife and daughter not affiliated with the lawsuit, an act of arson where the arsonist is currently in jail, and the disclosure of two separate medical conditions,

further heightening the risk of exposure and harm to any person's information presented to this lawsuit. Movant has no evidence whatsoever that any personal information retrieved in any way by Ms. Lively and her counsel would be kept confidential as they have failed time and again to redact sensitive information. Ms. Lively throws tantrums about her own privacy and safety on a regular basis but does not afford these rights to anyone else. In spite of the instances mentioned in this paragraph, the public has not seen a single instance where the Court has given Plaintiff or Plaintiff's counsel the slightest discipline or warning as a result of their professional incompetence in this regard.

In an effort to stall and confuse Movants in the limited time we have to file a Motion to Quash this subpoena, attorney Esra Hudson apparently instructed the receptionists at her law office, Manatt Phelps & Phillips, LLP, to avoid the truth when asked about the authenticity of these subpoenas. One Movant's attorney was told three times that the subpoenas are fake. On another recorded phone call transcribed here as **Exhibit E**, one YouTuber was told that Esra instructed her to say "We don't know. We're trying to work it out," if asked about them. Movants have been left with little time to respond before the deadline given Google. Out of an abundance of caution, I am adhering to the date of July 16, 2025.

## III. LEGAL STANDARD

A. Under Rule 45(d)(3)(A), a court must quash or modify a subpoena that:

   1. Requires disclosure of privileged or other protected matter,

   2. Subjects a person to undue burden.

   The First Amendment protects the right to anonymous speech, especially on matters of public concern. See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995); Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088 (W.D. Wash. 2001); Sony Music Entm't Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).

B. Rule 45(c)(2) states regarding the place of issue: "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person"

   Third party to this case, Stephanie Jones of Jonseworks, is currently being legally challenged in her efforts to unmask the identities of unknown accounts and accessing online account information of former employees in

multiple districts of California where she has subpoenaed multiple entities such as Meta, Pinterest, and WhatsApp.

**Exhibit F**.

## IV. ARGUMENT

### A. The Subpoena Violates the First Amendment

The right to speak or publish anonymously, especially on matters of public concern, is firmly protected under the First Amendment and the US Supreme Court has ruled on this. In ***McIntyre v. Ohio Elections Commission***, 514 U.S. 334 (1995), after pointing to famous author Mark Twain and others who published under pseudonyms, Justice John Paul Stevens stated: "**freedom to publish anonymously extends beyond the literary realm**". He continued saying that though curiosity may cause some to wonder about one's identity, "decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or **merely by a desire to preserve as much of one's privacy as possible**" and "the identity of the speaker is no different from other components of the document's content that the author is free to include or exclude". As the Court stated: "Anonymity is a shield from the tyranny of the majority... It thus exemplifies the purpose behind the Bill of Rights and of the First Amendment in particular: to protect unpopular individuals from retaliation." (Id. at 357) A favorite Justice, Ginsberg not only concurred, but made a comment in her statement correcting one Justice who dissented. The two dissents were based on a political aspect, not on anonymity itself. (Emphasis added)

Movant is engaging in lawful commentary on a high-profile lawsuit — a matter of public concern. She is not a party to the case and has no affiliation with any party. The subpoena seeks to unmask an anonymous speaker engaged in this lawful commentary. Plaintiffs have not provided evidence of wrongdoing, much less satisfied the burden for disclosure, merely because Movant expresses a perspective disfavored by the Plaintiff. Disclosure in this context would **chill lawful expression**, in violation of *McIntyre*.

### B. Plaintiff Failed to Obtain a Court Order Before Attempting to Unmask Anonymous Accounts

Movant objects to the subpoena to the extent it seeks information about an anonymous YouTube user without first obtaining an appropriate court order as required by the First Amendment. See Smythe v. Does 1-10, No. 15-mc-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) (denying the motion to enforce a subpoena against Twitter where movant failed to overcome user's First Amendment right to anonymous speech). Before a subpoena can be issued to a service provider like Meta for information regarding the identity of an anonymous internet user,

the party seeking the information must first "persuade" the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." Music Grp. Macao Commercial Offshore Ltd. v. Does, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing Highfields Capital Mgmt., L.P. v. Doe, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)); Mirza v. Yelp, Inc., No. 21-MC-621, 2021 WL 3772039, at *1-2 (S.D.N.Y. Aug. 25, 2021).[1]

The Highfields standard is regularly applied, especially in California, where the subpoena was served, regarding the unmasking of accounts on social media. Courts apply strict scrutiny in these cases, requiring plaintiffs to show:

1.  A valid legal claim,

2.  A strong factual basis connecting the speaker to alleged harm,

3.  Necessity of the information sought.

None of these criteria have been met.

While attorneys affiliated with Manatt Phelps & Phillips, LLP, may be accustomed to filing sham Doe lawsuits as they have done in this case to access the entire contents of Defendant Jennifer Abel's phone (possibly committing federal and state crimes), where they slip in, file a bogus complaint with pretend causes of action using a client's shell company, serve an underhanded subpoena to whitewash information they may already have in hand, avoid assignment of a judge to avoid the necessary **prima facie** showing (as outlined in the cases cited above on this page), and quietly withdraw the sham lawsuit with no member of the court ever knowing it existed, the rest of civilization understands **that is not the way we do things**. Every person being served a subpoena has the right to be notified, legally represented, and protected, either by counsel in a standard lawsuit, or by a presiding judge who has heard the pleadings and determined the legal necessity of said subpoena in a Doe situation, so that Does have legal representation to protect their rights.

I have concerns that not all content creators will have the chance to defend themselves since there is no complete list available for whom Ms. Lively has requested this overbroad, intrusive information from. I request the court see that all Doe type subpoenas served without **court order** from the appropriate District Court, be **revoked**

---

[1] To the extent you seek information about an anonymous non-party witness, you must establish (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source. *See In re Pinterest, Inc.,* 671 F. Supp. 3d 1022, 1025 (N.D. Cal. 2023).

and any future subpoenas of this type be **properly** filed by Ms. Lively being required to present her **prima facie** case to the **appropriate** District Court for a court ordered subpoena to protect the First Amendment rights of everyone involved. This has not been done in my case so far.

### C. The Subpoena Appears to Have Been Served by the Wrong Court

I initially attempted to file this motion in the Federal Court in Sacramento where Google is located but was informed that my subpoena was not issued from their district and that the issuing court was SDNY. In accordance with the Uniform Interstate Deposition and Discovery Act (UIDDA), and FRCP § 45(c)(2), subpoenas served outside of 100 miles of the issuing court must be issued in the court district of the entity being served. I have included a screenshot of the easy-to-follow instructions on how to properly domesticate a New York subpoena to serve an entity in California. **Exhibit G** I object to an out of district subpoena being served to collect my personal information.

### D. The Subpoena Is Overbroad and Unduly Burdensome

The demand for extensive personal data—including banking information and geolocation—goes far beyond what is relevant or necessary. It sweeps in private data of not only non-parties, but even more distant such as spouses and family members of non-parties who are included in joint bank accounts, live at the same address, share the same phone number, email address, credit card, YouTube account, or use the same IP address. Movant is not a party to this action and should not be forced to bear the burden of compliance, much less have her loved ones exposed to the dangers every member of the Wayfarer party has so far been subjected to as a direct consequence of the Court continually allowing Plaintiff's counsel's lack of basic, proper redacting.

### E. Disclosure Would Cause Irreparable Harm

Movant has faced serious safety threats in the past. Her stalker, to this date, has not been identified. Disclosure of her identity to a party with a record of data mishandling poses an unacceptable risk of physical harm and doxxing. The chilling effect on protected speech is profound.

Additionally, the court's indulgence of Ms. Lively's outrageous request would set a dangerous precedent destroying the first basic right of citizens of this country: Their First Amendment Right of Free Speech.

Ms. Lively and her same law firm, Manatt Phelps & Phillips, LLP, have already set one dangerous precedent in the course of this lawsuit, namely, the Vanzan sham lawsuit (described on the previous page) where Ms. Lively obtained the **entirety** of the very basis of her retaliation claims spelled out in her CRD complaint, the New York Times article, and subsequent lawsuit. In spite of the New York standard for filing a Doe lawsuit outlined in Sandals Resorts International Limited v Google Inc. (2011) Supreme Court, Appellate Division, First Department, New York, which states: "where a petitioner demonstrates that [it] has a meritorious cause of action and that the information sought is material and necessary to the actionable wrong" (see Bishop v. Stevenson Commons Assoc., L.P., 74 A.D.3d 640, 641, 905 N.Y.S.2d 29 [2010], lv. denied 16 N.Y.3d 702, 917 N.Y.S.2d 108, 942 N.E.2d 319 [2011] ). In this case, the court ruled: "The petition fails to demonstrate that Sandals has a meritorious cause of action." Adding, *"As the email at issue does not contain assertions of objective fact with regard to Sandals, the email cannot form the predicate for a defamation claim based on the first criterion stated above. Furthermore, as Sandals offers no evidence of the harm the account holder's email has caused it, Sandals has failed to prove the fourth element of defamation cited above. Therefore, **Google shall not disclose the requested information relating to the account holder. Accordingly, it is hereby ADJUDGED that the petition is denied and this proceeding is dismissed."** (Emphasis added)

It appears there could be no retaliation claims without the ill-gotten information obtained by the VanZan sham lawsuit, yet this case continues in the court that now baselessly seeks my and 15 others' private information. Ms. Lively must not be allowed to collect such sensitive information to use in a harmful and scheming way once again. Ms. Lively and her law firm simply cannot be continually allowed to misuse the courts of New York as a revenge machine or a witch hunt against those who speak their opinions about her conduct as a public figure and a party to a public judicial proceeding (the reporting of which is fiercely protected in the state of New York), as we've seen with former Defendant, the New York Times, who was granted a stay of discovery, never having to produce a single document before their ultimate dismissal though their article and video contained information entirely from the Vanzan sham subpoena, began being written months before any judicial proceeding was ever filed in court, and even admitted that it came from "thousands of pages of emails and texts" and not a judicial proceeding. I address this court with nothing like those claims being brought against me. My information is sought with no claim whatsoever. My and the other 15 subpoenaed parties' information is being sought because Ms. Lively has been

allowed to make unfounded claims over and over, striking out at whoever she wants to, using the courts of New York to do so.

She proclaims herself to be the "voice of women" and vowed to not stop speaking for us, while simultaneously causing lasting harm to woman after woman with her counsel and the Court's assistance. I, as most of her victims, have done nothing wrong and do not deserve to be unconstitutionally stripped of my rights to suit her whims.

**F. Alternative Mechanisms Exist**

Movant is willing to cooperate with the Court through less invasive means, such as submission of sworn affidavits to confirm lack of affiliation and communication with Defendants for ex parte (excluding members of Lively's counsel), in camera review, before the court with no unredacted copies made available to any member of Blake Lively's counsel, parties, or any public filing on the docket. I will submit to a polygraph test on this subject, paid for by Ms. Lively. There is no justification for the sweeping, public disclosure Plaintiffs seek.

**V. CONCLUSION**

This subpoena fails on multiple grounds. It is breathtakingly overbroad and invasive, putting not only myself as a non-party to this case at risk, but also my loved ones who share bank accounts, credit cards, physical addresses, IP addresses, YouTube viewing, phone numbers, etc. It is baseless since there is not one shred of evidence that I am or have ever been paid by any of the Wayfarer parties or their counsel, or anyone affiliated with them. There is no evidence because it did not happen. It is merely a paranoid fantasy of a person who cannot grasp that people do not approve of her actions. This is yet another misstep that will bring even more criticism to her already shattered public image.

It fails because it appears to have been issued by the wrong court and without the required court order. It seeks to unmask my First Amendment Right of anonymous publishing. It fails because this is information that should be retrieved from the parties to this case. It fails because there are other remedies available. It fails because it could cause me irreparable harm.

Movant respectfully requests that the Court:

1.  Revoke this and all non-party subpoenas served on Internet providers, phone providers, social media and streaming sites, such as YouTube, IG, TikTok, X, Reddit, etc. that have not been properly presented to a court and had a prima

facie showing that led to a court order permitting the subpoena to be served (noting that an out of district subpoena must also pass inspection in the district it will ultimately be served in).

2. Alternatively, quash the subpoena served on Google LLC for Movant, #12 and all others 1-16.

3. Alternatively, allow for lesser invasive mechanisms as suggested in this motion.

4. Alternatively, narrow the scope and require protective measures,

5. Grant such further relief as the Court deems just and proper, including but not limited to sanctions for attorney's fees and costs to cover this completely unnecessary and violating subpoena served without court order, cause or reasonable explanation. It has already consumed days of time in an effort to determine its validity, especially after being lied to by the serving law firm when called upon to authenticate. This experience caused and will continue to cause much emotional distress due to the fears surrounding the overly broad nature of the requests put upon Movant and my loved ones from the moment I learned of the subpoena until the matter will be put to rest and I know I am safe.

Respectfully submitted,

*Ni Cai*  ⬅ **PLEASE REDACT BEFORE FILING**

Ni Cai  ⬅ **PLEASE REDACT BEFORE FILING**

Manager of Kassidy O'Connell, LLC

# Exhibit A

(The e-mail that accompanied my copy of the subpoena that was finally delivered to me at 2:23 PM, July 14, 2025)



google-legal-support@google.com
to me ▾

2:23 PM (7 hours ago)    ☆    ☺    ↩    ⋮

Hello,

Please see the attached subpoena.

Google may produce information related to your Google account in response to this subpoena unless you email a file-stamped copy of a motion to quash to google-legal-support@google.com by 10 a.m. Pacific Time on July 31, 2025.

To the extent you object to the subpoena, you should seek relief from the court directly. We require a file-stamped objection or Motion to Quash because we need verification that this document has been filed in a court of law and is awaiting judicial review. Google is not in a position to provide you with legal advice. If you have other questions regarding the notice, we encourage you to contact your attorney.

...

**One attachment** · Scanned by Gmail ⓘ

Subpoena_Redac...

13

# Exhibit B

(Ms. Lively's dkt 410 page 3 stating her intentions to serve more such subpoenas)

8.      The same evening, counsel for the Wayfarer Parties at Liner Freedman responded, with Mr. Freedman copied, "We do not represent these individuals and therefore have no authority to accept service on their behaves." *Id.*

9.      Ms. Lively has provided notice of more than 60 third-party document subpoenas to date. Further, Ms. Lively intends to file motions for alternative service for several third parties in the near future.

10.      A true and correct copy of an email chain ending on July 10, 2025 between counsel for Ms. Lively and the Wayfarer Parties, is attached hereto as **Exhibit A** (excerpted).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 11, 2025                            s/ *Kristin E. Bender*
                                                                   _____

                                                                   WILLKIE FARR & GALLAGHER LLP
                                                                   Kristin E. Bender
                                                                   1875 K Street NW
                                                                   Washington, DC 20006
                                                                   (202) 303-1000
                                                                   kbender@willkie.com

                                                                   *Counsel for Blake Lively*

# Exhibit C

(A copy of my subpoena finally received on July 15, 2025 at 2:23 PM)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| Blake Lively, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:24-cv-10049; 1:25-cv-00449 |
| Wayfarer Studios LLC, et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Google, LLC, d/b/a Youtube, c/o 1505 Corporation CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Manatt Phelps & Phillips, LLP 1215 K Street, Suite 1900 Sacramento, California 95814 | Date and Time: 07/16/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/03/2025

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Esra Hudson |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Blake Lively** , who issues or requests this subpoena, are:

Esra Hudson, 2049 Century Park East, Ste 1700, Los Angeles, CA 90067; ehudson@manatt.com; (310) 312-4000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:24-cv-10049; 1:25-cv-00449

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*:

on *(date)*

☐ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                          ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                     for travel and $                     for services, for a total of $        0.00     .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Attachment A

## DEFINITIONS

1. The Uniform Definitions in Discovery Requests that are set forth in Local Civil Rule 26.3 are hereby incorporated by reference.

2. "Consolidated Action" means and collectively refers to the following cases entitled: (a) *Lively v. Wayfarer Studios LLC et al.*, U.S. District Court for the Southern District of New York (Case No. 1:24-cv-10049-LJL); and (b) *Wayfarer Studios LLC et al. v. Lively et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00449-LJL).

3. "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written.

4. "Affiliate" means any and all entities that are wholly owned and/or controlled (directly or indirectly) by, or under common control by an identified individual or entity, including any corporate parent, subsidiaries, or affiliates, and each of their respective officers, directors, employees, or partners.

5. The terms "all," "any," and "each" shall each be construed as encompassing any and all. *See* Local Civil Rule 26.3.

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. *See* Local Civil Rule 26.3.

7. "Abel" refers to Jennifer Abel, who is a party to the Action.

8. "Baldoni" refers to Justin Baldoni, who currently serves as the co-founder and co-chairman of Wayfarer Studios LLC and is a party to the Action.

9. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Civil Rule 26.3.

1

10.     "Lively Complaint" means the operative complaint filed by Blake Lively in *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. No. 1, the amended complaint, Dkt. No. 84, and any amended complaints filed by Blake Lively in the proceeding.

11.     The "CRD Complaint" means the operative administrative complaint filed by Blake Lively with the California Civil Rights Department on December 20, 2024.

12.     "Concerning" means relating to, referring to, describing, evidencing, or constituting. *See* Local Civil Rule 26.3.

13.     "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. *See* Local Civil Rule 26.3.

14.     The "Film" means the movie "It Ends with Us," co-starring Blake Lively and Justin Baldoni, as described in the Lively Complaint.

15.     "Bryan Freedman" refers to counsel for the Wayfarer Defendants in the Action, as well as his past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

16.     "Heath" refers to Jamey Heath who currently serves as the CEO of Wayfarer Studios LLC and is a party to the Action.

17.     "Including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

18.     "IEWU LLC" shall refer to Defendant It Ends With Us Movie LLC, which is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

19.    "Jonesworks" shall refer to the entity Joneworks LLC, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Stephanie Jones.

20.    "Jonesworks Complaint" means the operative complaint filed by Stephanie Jones and Jonesworks LLC in *Jones v. Jennifer Abel et al.* and removed to the United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779, Dkt. No. 1, and any amended complaints filed by Stephanie Jones and/or Jonesworks LLC in the proceeding.

21.    "Liner Freedman Taitelman + Cooley" refers to the law firm serving as counsel for the Wayfarer Defendants in the Action as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

22.    "Lively/Reynolds Companies" shall refer to Ms. Lively and Mr. Reynolds's affiliated entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

23.    "Ms. Lively" shall refer to Blake Lively, who is a party to this Action.

24.    "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to this Action.

25.    "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in Lively the Complaint.

26.    "Nathan" shall refer to Melissa Nathan, who is a party to the Action.

3

27.     The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. *See* Local Civil Rule 26.3.

28.     "Payment" is defined as any transfer or commitment for future transfer of anything of value, including the exchange of funds (whether in dollars, foreign currency, or any form of electronic or cryptocurrency), cash, securities, loans, reimbursements, refunds, accounting corrections, retainers, goods, services, or otherwise.

29.     "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or associate. *See* Local Civil Rule 26.3.

30.     "Protections for Return to Production Agreement" means the contract executed in November 2023 concerning appropriate behavior during filming and production of the Film, as described in the Lively Complaint.

31.     "Digital Campaign" refers to efforts of the Wayfarer Defendants and/or any affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, the Wayfarer Defendants, the Film, or the Actions on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Lively Complaint.

32.     "Relating to" or "Relate to" means, without limitation, assessing, comprising, constituting, concerning, referring to, containing, describing, discussing, embodying, evidencing,

4

identifying, pertaining to, reflecting, stating, supporting, or tending to support or refute, or referring in any other way, directly or indirectly, in whole or in part, to the subject matter specified.

33.     "Social Media" means any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to:

    a.    Social Networking Platforms – Facebook, Instagram, Twitter (X), LinkedIn, TikTok, Snapchat, Reddit, and similar platforms.

    b.    Content Sharing & Video Platforms – YouTube, Vimeo, Twitch, Rumble, or similar services where videos, reels, or live content can be uploaded or streamed.

    c.    Email, Messaging Applications & Direct Communication Platforms – Including, but not limited to, Gmail, Outlook, WhatsApp, Telegram, Signal, Discord, Slack, Facebook Messenger, Instagram DMs, Twitter DMs, or any private messaging feature within a social media platform.

    d.    Blogging & Forum Sites – Medium, Substack, WordPress, 4chan, 8kun, or any other user-generated content site where written materials are published.

    e.    Influencer & Review-Based Platforms – Yelp, Glassdoor, Trustpilot, Google Reviews, Patreon, or any website where reputational impact can be influenced.

    f.    Advertising & Promotional Services – Paid sponsorships, influencer partnerships, promoted posts, advertisements, bots, or algorithm-driven visibility campaigns.

g.  Automated or Third-Party Content Management Tools – Hootsuite, Buffer, Sprout Social, or any platform used to schedule, automate, or track social media activity.

h.  Any Other Online Presence – Any additional websites, forums, private groups, or digital spaces where content related to Plaintiff was discussed, posted, or promoted.

i.  Without limiting the foregoing in any manner, and by way of example only, this definition includes: all original posts, reposts, shares, likes, comments, hashtags, memes, images, videos, stories, threads, and reactions; all drafts, deleted posts, or unpublished content related to Plaintiff; all engagement metrics, analytics, reports, or logs reflecting interactions with content; and all metadata, timestamps, IP addresses, geolocation data, or user activity logs related to content.

34.  "Content Creator" shall refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates.

35.  "Sony" shall refer to Sony Pictures Entertainment, and its past or present officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

36.  "Sarowitz" shall refer to Steve Sarowitz, who is a party to the Action.

37.  "Street Relations" shall refer to the entity Street Relations, Inc., who is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Jed Wallace.

38.    "TAG" shall refer to The Agency Group PR LLC, which is a party to the Action, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

39.    "Vision PR Parties" refers to Defendants Leslie Sloane and Vision PR, Inc., in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL.

40.    "Wallace" shall refer to Jed Wallace, who is a party to the Action.

41.    "Wayfarer" shall refer to Defendant Wayfarer Studios LLC, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

42.    "Wayfarer SDNY Complaint" shall refer to the Complaint, Dkt. No. 1, the First Amended Complaint, Dkt. No. 50, and any other amended complaints filed by Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends with Us Movie LLC, Melissa Nathan, and Jennifer Abel in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL, as consolidated.

43.    "Wayfarer New York Times Action" shall refer to the lawsuit entitled *Wayfarer Studios LLC et al. v. The New York Times Company*, No. 24STCV34662, filed in the Superior Court of California, County of Los Angeles.

44.    "Wayfarer Defendants" shall refer, individually and collectively, to Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, Wallace, and Street Relations.

45.    "WME" shall refer to William Morris Endeavor Entertainment Agency, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

46.    "You," "Your," or "Yours" refers to Google LLC, D/B/A Youtube, and any of its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, assigns, or any related entity.

## INSTRUCTIONS

1.      In addition to the specific instructions below, these Requests incorporate by reference the instructions set forth in Rule 45 of the Federal Rules of Civil Procedure.

2.      In responding to these Requests, You shall make a diligent search and produce the responsive Documents that are (i) in Your possession, custody, or control, or (ii) in the possession, custody, or control of any of Your agents, employees, attorneys, accountants, or other representatives or anyone acting on Your behalf, or under Your direction or control, or (iii) otherwise available to You. A Document shall be deemed within Your control if You have the right to secure the document or a copy of the Document from another Person having possession, custody, or control of the Document.

3.      Unless otherwise specified, each Request concerns the time period from May 1, 2024 through the present.

4.      In construing these Requests, You should give effect to the Definitions set forth above. Undefined words and terms shall be given their common meaning. If You are unsure of the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response.

5.      If You do not clearly understand, or have any questions about the definitions or instructions for any Request, please promptly contact counsel for Ms. Lively for clarification.

6.      These Requests should be construed as broadly as possible with all doubts resolved in favor of production. If you believe a Request is ambiguous, use the broadest reasonable interpretation as permitted under the Federal Rules of Civil Procedure and state the nature of the perceived ambiguity and the interpretation used to resolve it. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive. Except as specifically provided in these Requests, words imparting

8

the singular shall include plural, and vice versa, where appropriate. Except as specifically provided in these Requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate. For any hard copy production all documents produced shall be produced as kept in the ordinary course, including identification of the applicable file folder and source. The original of each document requested shall be produced, or an identical copy of each document, imprinted with a Bates identification number. Documents attached to other documents or materials shall not be separated. Documents not otherwise responsive to these requests shall be produced if such documents are attached to documents called for by the Requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials, or mention, discuss, refer to, or explain the documents that are called for by the Requests.

8.      For any hard copy production, identical copies of a document need not be produced. Any copy of a document that varies from the original, whether by reason of handwritten or other notation or any omission, or metadata associated with a file, shall constitute a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control.

9.      If an objection is made to any portion of any Request, (a) state with specificity the objection and legal basis for such objection; (b) state whether any responsive materials are being withheld on the basis of that objection; and (c) answer all remaining portions of the Request to which an objection is not asserted.

10.     If any responsive document is withheld in whole or in part under a claim of privilege or other ground, as to each such document, identify the privilege or other ground being

asserted and provide the following information in sufficient detail to permit the Court to evaluate Your claim:

     a.    date, author, addressees, Persons carbon copied or blind carbon copied, including the relationship of those Persons to You or the author of the document;

     b.    brief description sufficient to identify the type, subject matter, and purpose of the document;

     c.    all Persons to whom the document's contents have been disclosed;

     d.    the party who is asserting the privilege;

     e.    the nature of the privilege, immunity or protection asserted, the Person(s);

     f.    asserting the privilege, immunity or protection, and/or the specific reason why the Document is not being produced; and

     g.    the same information referenced in 10(a)-(f) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production.

11.    If a portion of any responsive document is withheld under a claim of privilege or other ground, any non-privileged portion of the document must be produced with the withheld portion redacted, with the redaction language indicating that the information is being withheld for privilege.

12.    If any responsive document was, but no longer is, in Your possession, custody, or control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of; and (e) in each instance identify the contents,

author(s), date-prepared or received, name and address of its current or last known custodian, and the date and circumstances surrounding such disposition.

13.    To the extent that the native formats for transactional or other data responsive to these Requests are not compatible with Microsoft Office products (e.g., Microsoft Excel, Microsoft Word, Microsoft Access, etc.), the data shall be produced in a usable format. If You need assistance in determining what constitutes a usable format, You shall promptly contact Ms. Lively's counsel.

14.    These Requests are continuing in nature and all documents coming into Your possession, custody or control which would have been produced had they been available earlier shall be produced forthwith.

15.    Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## PRODUCTION OF ESI

1.    Format: ESI should be produced in load-ready standard format, including single-page, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format. If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of sent email messages should include the BCC line.

2.    Format – Native Files: Spreadsheets (e.g., Excel, Lotus, Google Sheets, CSV) and Media files (e.g., .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format, except where such files are redacted. For Google Documents, production of an export in

11

a comparable format will constitute native production (*e.g.*, Google Sheets Document exported in Microsoft Excel format). A TIFF placeholder endorsed with the corresponding Bates number and confidentiality designation (if any) shall be produced for all ESI produced in Native Format.

3.      Word documents and PowerPoint Documents shall be produced in both native and TIFF format, with track changes and speaker notes imaged.

4.      De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication should be done across the entire collection (global de-duplication) and the ALL CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that Document. Should the ALL CUSTODIAN or FILEPATH metadata fields produced become outdated due to processing of additional data or production of documents of additional custodians, an overlay file providing all the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

5.      Technology-Assisted Review/Analytics: Predictive coding/technology-assisted review shall not be used for the purpose of culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies. Before threading is used to reduce the volume of emails to review, the producing party shall reach out to Ms. Lively's counsel

12

to ensure the process being utilized by the vendor is industry standard. If it is agreed that threading may be used to reduce the volume of documents to produce, the producing party shall produce the Inclusive emails, defined as those emails within an email thread containing all unique content as determined by commonly accepted analytics tools. An additional metadata field containing the *Thread ID* shall be produced so that Inclusive emails can be reviewed together. The requesting party may request the production of a lesser-included email or emails, and any such reasonable request(s) shall not be refused where the Document is available in the producing party's Document collection.

6.    Metadata: Metadata produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildID(s), AllCustodian, FilePath, Subject, From, To, CC, BCC, DateSent, TimeSent, DateReceived, TimeReceived, FileType (*e.g.*, Email, Attachment, Loose File, Hard Copy), FileName, Author, DateCreated, DateModified, MD5 Hash (or SHA-1, whichever is used for deduplication), File Size, FileExtension, DocLink, and TextPath.

7.    Message Metadata: In addition to the fields listed in Section 6 above, Metadata for text and chat messages produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: Message Thread ID, Message Participants, Message From, Message To, Message DateTime Sent, Message Application Name (*e.g.*, Signal, WhatsApp, etc.)., Message Deleted, Message Deleted on, Message Deleted By, Message Edited, Message Edited On, Message Edited By.

8.    Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any information to be redacted on the basis of

13

privilege. The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent email.

9.      Compressed File Types: Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

10.     Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

11.     Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit productions via SFTP. If that is not possible, parties should discuss with counsel for Ms. Lively and transmit the encryption key or password to the receiving party, or by phone call or text message, contemporaneously with sending the encrypted media.

12.     Redactions: If excels are to be redacted, redactions must be applied natively. If other Documents that the parties have agreed to produce only in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## DOCUMENTS TO BE PRODUCED

### REQUEST FOR PRODUCTION NO. 1:

All subscriber information, for the username ███████ associated with Youtube and Google Pay including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

### REQUEST FOR PRODUCTION NO. 2:

All subscriber information, for the username ███████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

15

## REQUEST FOR PRODUCTION NO. 3:

All subscriber information, for the username [REDACTED] associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

## REQUEST FOR PRODUCTION NO. 4:

All subscriber information, for the username [REDACTED] associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

16

## REQUEST FOR PRODUCTION NO. 5:

All subscriber information, for the username ▓▓▓▓▓▓▓ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

## REQUEST FOR PRODUCTION NO. 6:

All subscriber information, for the username ▓▓▓▓▓▓▓ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

## REQUEST FOR PRODUCTION NO. 7:

17

All subscriber information, for the username ████ █ █████ e associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

### REQUEST FOR PRODUCTION NO. 8:

All subscriber information, for the username ██████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP. addresses.

### REQUEST FOR PRODUCTION NO. 9:

All subscriber information, for the username (██████████ associated with Youtube and GooglePay, including but not limited to: (a) the first and last name; (b) registered email addresses; (c) phone number(s); (d) physical address; (e) backup/recovery email address or

phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 10:**

All subscriber information, for the username ███████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 11:**

All subscriber information, for the username ███████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service

(including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 12:**

All subscriber information, for the username @KassidyOC associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 13:**

All subscriber information, for the username ▉▉▉▉▉ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; d) physical address; (e) backup/recovery email address or phone number;

20

f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

### REQUEST FOR PRODUCTION NO. 14:

All subscriber information, for the username [redacted] associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

### REQUEST FOR PRODUCTION NO. 15:

All subscriber information, for the username [redacted] associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment

21

for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 16:**

All subscriber information, for the username ▮▮▮▮▮▮▮▮▮▮ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

# Exhibit D

(Listing Ryan Reynolds as a party though he was dismissed from the lawsuit)

19.    "Jonesworks" shall refer to the entity Joneworks LLC, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Stephanie Jones.

20.    "Jonesworks Complaint" means the operative complaint filed by Stephanie Jones and Jonesworks LLC in *Jones v. Jennifer Abel et al.* and removed to the United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), Dkt. No. 1, and any amended complaints filed by Stephanie Jones and/or Jonesworks LLC in the proceeding.

21.    "Liner Freedman Taitelman + Cooley" refers to the law firm serving as counsel for the Wayfarer Defendants in the Action as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

22.    "Lively/Reynolds Companies" shall refer to Ms. Lively and Mr. Reynolds's affiliated entities including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

23.    "Ms. Lively" shall refer to Blake Lively, who is a party to this Action.

24.    "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to this Action.

25.    "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in Lively the Complaint.

26.    "Nathan" shall refer to Melissa Nathan, who is a party to the Action.

3

# Exhibit E

(Transcript from Andy Signore's phone call to Manatt Phelps & Phillips, LLP)

https://youtu.be/Rzen-Sa8e40?feature=shared

Reception:      At the moment we're still trying to figure it out what's been going on because we've been getting a bunch of calls all morning, um, we're not like too sure to be honest with you, like I just, I just do reception.

Um, I'm not too sure. I don't believe so, but I don't like...

Andy:           No, yeah, I don't want you to speak out of turn if you're not sure. My attorney had called earlier and spoke to someone who said that they weren't real. I just want to make sure they're positive because I obviously don't want to miss a legal notice. You know what I mean? And Google's not able to confirm it either. It's all very strange to me. Is there someone you can help me sort of escalate that? It's been a day now I want to ensure that I get it, you know?

Reception:      Honestly, yeah, I we're just told to take a message until everything, um, was figured out, um, Esra personally told us to take messages so we're trying to figure out what's going on so I'm not too sure to be honest.

Andy:           So, she's unaware herself?

Reception:      Yeah, we're all trying to figure out something. We're all trying to figure it out.

Andy:              You're trying to figure out whether you subpoenaed Google?
                   You don't even know?


Reception:         No, I'm just reception, sir.


Andy:              But you said Esra said to take the message?


Reception:         We've been getting these calls all day and I don't know.

# Exhibit F

(File from Jones v Meta Opposing her Motion to Compel)

1    PERKINS COIE LLP
     Julie E. Schwartz, Bar No. 260624
2    JSchwartz@perkinscoie.com
     1301 Second Avenue, Suite 4200
3    Seattle, Washington 98101-3804
     Telephone: +1.206.359.8000
4    Facsimile: +1.206.359.9000

5    Alfredo Alan Garza, Bar No. 348511
     AGarza@perkinscoie.com
6    405 Colorado Street, Suite 1700
     Austin, Texas 78701
7    Telephone: +1.737.256.6100
     Facsimile: +1.737.256.6300

8
     *Attorneys for Meta Platforms, Inc.*
9

10              **UNITED STATES DISTRICT COURT**
11            **NORTHERN DISTRICT OF CALIFORNIA**
                  **SAN FRANCISCO DIVISION**
12

13   *IN RE: SUBPOENAS TO META*          Case No. 3:25-mc-80165-TSH
     *PLATFORMS, INC. AND PINTEREST,*
14   *INC.*                              **META PLATFORMS, INC.'S**
                                         **OPPOSITION TO MOTION TO**
     Served in case: *Jones, et al. v. Abel, et al.*,   **COMPEL**
15   S.D.N.Y. 1:25-cv-00779-UA,
                                         Date:    TBD
16                                       Time:    TBD
                                         Judge:   Hon. Thomas S. Hixson
17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 1

III.  ARGUMENT ...................................................................................................... 2

     A.    The First Amendment protects anonymous speech on the internet. ...................... 2

     B.    Petitioners are limited purpose public figures who have failed to make a prima facie showing that the allegedly defamatory statements were made with actual malice. ..................................... 6

IV.   CONCLUSION .................................................................................................. 9

META'S OPPOSITION TO MOTION TO COMPEL

# TABLE OF AUTHORITIES

Page(s)

CASES

*Art of Living Found. v. Does 1-10,*
   No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011).....................3

*Biro v. Conde Nast,*
   807 F.3d 541 (2d Cir. 2015) .....................................................................................6

*Biro v. Conde Nast,*
   963 F. Supp. 2d 255 (S.D.N.Y. 2013).............................................................6, 7, 8

*Blossoms & Blooms, Inc. v. Doe,*
   No. 22-1557-KSM, 2022 WL 3030788 (E.D. Pa. July 29, 2022)............................8

*Castro v. Doe,*
   No. 23-MC-80198-TSH, 2023 WL 9232964 (N.D. Cal. Oct. 12, 2023) ........2, 3, 5, 8

*Chevron Corp. v. Donziger,*
   No. 12-MC-80237 CRB, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ..................4

*Highfields Capital Mgmt., L.P. v. Doe,*
   385 F. Supp. 2d 969 (N.D. Cal. 2005)......................................................................3

*In re Anonymous Online Speakers,*
   661 F.3d 1168 (9th Cir. 2011).................................................................................4

*In re DMCA § 512(h) Subpoena to Twitter, Inc.,*
   608 F. Supp. 3d 868 (N.D. Cal. 2022)......................................................................3

*In re Subpoena to: Reddit, Inc.,*
   24-mc-80005, 2024 WL 477519 (N.D. Cal. Feb. 7, 2024).......................................3

*Music Group Macao Commer. Offshore Ltd. v. Does,*
   82 F. Supp. 3d 979 (N.D. Cal. 2015)........................................................................3

*Smythe v. Does 1-10,*
   No. CV 15-4801-R, 2015 WL 12819173 (C.D. Cal. Sept. 25, 2015)........................5

*The London v. Does 1-4,*
   279 F. App'x 513 (9th Cir. 2008) .........................................................................3, 4

*United States v. Meta Platforms, Inc.,*
   No. 23-MC-80249-PHK, 2023 WL 8438579 (N.D. Cal. Dec. 5, 2023) ....................4

STATUTES

28 U.S.C. § 1782.............................................................................................................3, 4

OTHER AUTHORITIES

First Amendment .................................................................................................... passim

META'S OPPOSITION TO MOTION TO COMPEL

# TABLE OF AUTHORITIES (*Continued*)

**Page(s)**

https://www.facebook.com/people/Stephanie-Jones/61559205100286/ ........................2

Megan Twohey, Mike McIntire and Julie Tate, '*We Can Bury Anyone':*
*Inside a Hollywood Smear Machine*, N.Y. TIMES, Dec. 22, 2024,
available at
https://www.nytimes.com/2024/12/21/business/media/blake-lively-
justin-baldoni-it-ends-with-us.html ..........................................................................1

Perez Hilton, *Blake Lively Or Justin Baldoni? Whose Side Is The*
*Internet On?* (Jan. 3, 2025), https://perezhilton.com/internet-
reactions-blake-lively-justin-baldoni-it-ends-with-us-legal-drama/ ........................7

www.stephaniejonesleaks.com ........................................................................................2

www.stephaniejoneslies.com ...........................................................................................2

META'S OPPOSITION TO MOTION TO COMPEL

## I.    INTRODUCTION

This matter arises from the very public dispute between actors Justin Baldoni and Blake Lively, the stars of the 2024 film *It Ends With Us*. Petitioners Stephanie Jones and Jonesworks LLC (Petitioners) are the former public relations representatives for Mr. Baldoni who are currently suing Mr. Baldoni and others in the Southern District of New York for alleged misconduct stemming from the Baldoni-Lively dispute. As part of that litigation, Petitioners issued a subpoena to nonparty Meta Platforms, Inc. (Meta) for identifying information regarding the administrator of a Facebook page that has allegedly defamed Petitioners. Meta objected to the subpoena on First Amendment grounds, and Petitioners now move to compel Meta's compliance.

The Court should deny Petitioners' motion because they have failed to carry their burden to overcome the Facebook user's First Amendment right to engage in anonymous speech. When a litigant subpoenas a service provider like Meta for an anonymous user's identifying information, the First Amendment requires the requesting party to demonstrate a prima facie case on the merits of their underlying claim. Petitioners claim the discovery sought by the subpoena is necessary for their defamation claim, but Petitioners are limited purpose public figures who must sufficiently allege any defamatory statements were made with actual malice. Petitioners, however, do not address the actual malice standard at all in their motion to compel. Accordingly, Petitioners have failed to carry their burden under the First Amendment and Meta respectfully requests that the Court deny their motion to compel.

## II.    BACKGROUND

The Baldoni-Lively dispute has attracted a great deal of public attention. *See, e.g.*, Megan Twohey, Mike McIntire and Julie Tate, '*We Can Bury Anyone': Inside a Hollywood Smear Machine*, N.Y. TIMES, Dec. 22, 2024, available at

-1-

https://www.nytimes.com/2024/12/21/business/media/blake-lively-justin-baldoni-it-ends-with-us.html. Petitioners' Complaint stems from that dispute and was filed in New York against Mr. Baldoni and others on December 24, 2024. *See* ECF No. 1-2.[1] The Complaint alleges, among other things, that certain defendants used the Baldoni-Lively dispute to attack Petitioners' reputation and steal their business. *Id.* ¶¶ 46-106. As relevant to the pending motion to compel, Petitioners' Complaint alleges that certain John Doe defendants created two websites (www.stephaniejonesleaks.com and www.stephaniejoneslies.com) and unidentified social media accounts that promoted those websites as part of a conspiracy to defame Petitioners. *Id.* ¶¶ 23, 92-93.

In an apparent effort to learn who was behind one of the unidentified social media accounts mentioned in their Complaint, Petitioners issued a subpoena to Meta for "[a]ll basic user information regarding the Facebook account at https://www.facebook.com/people/Stephanie-Jones/61559205100286/ including the user's name, physical address, phone number, e-mail address, and account login and usage history (including IP addresses and user location data)." ECF No. 1-3.

Meta objected to the subpoena on First Amendment grounds, *see* ECF No. 1-4, and Petitioners now move to compel Meta's compliance with the subpoena.

## III.    ARGUMENT

**A.    The First Amendment protects anonymous speech on the internet.**

Petitioners assert that "[t]he Ninth Circuit has repeatedly held that the First Amendment does not protect subscriber information from discovery." ECF No. 1 at 11. Not so. As this Court has held, "[t]he First Amendment protects the rights of individuals to speak anonymously" and "[t]he Ninth Circuit recognizes that the decision to remain anonymous extends to anonymous speech made on the internet."

---

[1] The defendants removed the Complaint from state court to the U.S. District Court for the Southern District of New York on January 27, 2025. *See* ECF No. 1 in S.D.N.Y Case No. 1:25-cv-00779.

META'S OPPOSITION TO MOTION TO COMPEL

*Castro v. Doe*, No. 23-MC-80198-TSH, 2023 WL 9232964, at *3 (N.D. Cal. Oct. 12, 2023) (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("[O]nline speech stands on the same footing as other speech – there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.") (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)). Accordingly, an anonymous internet user's subscriber information is presumptively protected by the First Amendment and "[w]hen third-party providers such as [Meta] receive subpoenas to produce identifying information of posters of anonymous speech, courts apply the appropriate First Amendment standard to ensure that a person's right to anonymous speech is protected." *Castro*, 2023 WL 9232964, at *3 (collecting cases).

"Operationally, the inquiry consists of two steps." *Id.* (quoting *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022)). "First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest at stake." *Castro*, 2023 WL 9232964, at *3 (quoting I*n re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876). While this Court has allowed discovery of subscriber information over a First Amendment objection in some circumstances, it has also denied requests for subscriber information on First Amendment grounds on many occasions. S*ee, e.g., In re Subpoena to: Reddit, Inc.*, 24-mc-80005, 2024 WL 477519, at *5 (N.D. Cal. Feb. 7, 2024) (denying motion to compel Reddit to produce subscriber information); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 883 (denying motion to compel Twitter to produce subscriber information); *Music Group Macao Commer. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (denying motion to compel Glassdoor to produce subscriber information); *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *1 (N.D. Cal. Nov. 9, 2011)

1  (denying motion to compel Google and Automattic to produce subscriber

2  information); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 971 (N.D.

3  Cal. 2005) (granting motion to quash subpoena for Yahoo! subscriber information).

4        Petitioners ignore those cases, while citing a series of cases that are factually

5  inapposite and do not support the incorrect suggestion that subscriber information is

6  wholly unprotected by the First Amendment. *The London v. Does 1-4* case that

7  Petitioners rely upon involved an application under 28 U.S.C. § 1782 for discovery

8  regarding certain email accounts for use in a divorce in St. Martin. 279 F. App'x 513,

9  514 (9th Cir. 2008). The Ninth Circuit allowed that discovery because "Appellants

10  cite[d] no authority for the proposition that the First Amendment bars release of

11  identifying data for email accounts used to solicit sex partners on the Internet." *Id.*

12  at 515. Those facts in an overseas divorce case are a far cry from the facts of this

13  case, and in any event, the Ninth Circuit panel in *London v. Does 1-4* did not suggest

14  that the First Amendment leaves anonymous internet users' subscriber information

15  wholly unprotected.

16        The *United States v. Meta Platforms, Inc.* case that Petitioners cite also

17  involved a § 1782 application, this time for discovery regarding certain Instagram

18  accounts for use in a civil case in South Korea. No. 23-MC-80249-PHK, 2023 WL

19  8438579, at *1 (N.D. Cal. Dec. 5, 2023). The court noted that "United States citizens,

20  whether inside or outside of United States territory, possess First Amendment

21  rights," while "[f]oreign citizens who are outside United States territory, by contrast,

22  do not possess any rights under the United States Constitution, including under the

23  First Amendment." *Id.* at *6. Because there was "nothing in the present record

24  indicating the unidentified defendant(s) in the underlying Korean civil action are

25  entitled to First Amendment protections," the court permitted the discovery. *Id.*

26  That case has no bearing on this matter, which involves a U.S. civil proceeding

27  among U.S. residents.

28

1    Petitioners also cite *Chevron Corp. v. Donziger*, which sought discovery
2    regarding certain email accounts, and is a case where this Court discussed the Ninth
3    Circuit's opinion finding that the First Amendment presumptively protects
4    subscriber information. No. 12–MC–80237 CRB, 2013 WL 4536808, at *6 (N.D. Cal.
5    Aug. 22, 2013) (discussing *In re Anonymous Online Speakers*, 661 F.3d at 1177). In
6    *Chevron*, the court ultimately rejected the First Amendment objections because the
7    subpoenas at issue were "not seeking to link the identity of the email subscribers
8    with the receipt of particular statements" nor did the movants "satisfactorily show[]
9    that their actions were anonymous." 2013 WL 4536808 at *7-*8. Those facts are the
10   polar opposite of this case, where Petitioners are trying to link the Facebook user to
11   allegedly defamatory statements and the user is indisputably anonymous.

12   Finally, the *Smythe v. Does 1-10* case that Petitioners cite involved allegations
13   that unknown internet users were engaged in "cyber harassment and cyberstalking"
14   of the plaintiff as well as the use of "hacked passwords to access and control
15   [plaintiff's] website and email accounts." No. CV 15-4801-R, 2015 WL 12819173, at
16   *1 (C.D. Cal. Sept. 25, 2015). While the court acknowledged "the First Amendment
17   provides some rights regarding anonymity," it permitted the plaintiff to obtain the
18   requested subscriber information because "[a]n assertion of anonymity for fear of
19   being connected to potentially illegal action is unpersuasive." *Id*. at *2. Nothing in
20   *Smythe* supports Petitioners' claim that subscriber information is per se unprotected
21   by the First Amendment, nor do that case's allegations of serious criminal acts by
22   the anonymous users provide this Court with any relevant factual precedent for how
23   to resolve a subpoena like the one issued to Meta involving allegations of civil
24   defamation.

25   In sum, the subscriber information at issue here is presumptively protected by
26   the First Amendment and the Court must assess whether Petitioners have
27   demonstrated a prima facie case on the merits of their defamation claim before

28

-5-

1  compelling Meta to comply with the subpoena. *See Castro*, 2023 WL 9232964, at *3.

2  For the reasons below, Meta respectfully submits that Petitioners have failed to

3  carry their burden.

4  **B.  Petitioners are limited purpose public figures who have failed to

5  make a prima facie showing that the allegedly defamatory statements
   were made with actual malice.**

6      Petitioners claim to have made a prima facie showing of their defamation

7  claims, but nowhere in Petitioners' motion do they address the actual malice

8  standard that applies to defamation claims brought by limited purpose public

9  figures. Meta submits that is fatal to their motion because Petitioners are limited

10  purpose public figures with respect to the Baldoni-Lively dispute.

11      In the Second Circuit, where Petitioners' underlying case is pending,[2]

12  "[l]imited-purpose public figures who seek damages for defamatory statements must

13  show that the statements were made with 'actual malice'—that is, with knowledge

14  that the statements were false or with reckless disregard as to their falsity." *Biro v.*

15  *Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). "Whether or not a person or an

16  organization is a public figure is a question of law for the court to decide." *Biro v.*

17  *Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013). "[O]nce a plaintiff is deemed

18  a limited purpose public figure, courts allow the heightened protections to sweep

19  broadly, covering all statements by defendants that are not wholly unrelated to the

20  controversy." *Id*. at 271 (cleaned up).

21      The Second Circuit's test for determining whether Petitioners are limited

22  purpose public figures requires an assessment of whether Petitioners have:

23          (1) successfully invited public attention to [their] views in
24          an effort to influence others prior to the incident that is
           the subject of litigation; (2) voluntarily injected
25          [themselves] into a public controversy related to the
           subject of the litigation; (3) assumed a position of
26

27  _____
   [2] The governing law in the court where the underlying case is pending controls the
28  prima facie claim analysis. *See, e.g.*, Castro, 2023 WL 9232964, at *3 (analyzing
   Texas law to determine "whether plaintiff has a viable defamation claim.").

1

2

> prominence in the public controversy; and (4) maintained
> regular and continuing access to the media.

3

4

5

*Biro*, 963 F. Supp. 2d at 270 (quoting *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136–37 (2d Cir. 1984)). Petitioners satisfy all four elements of this test with respect to the Baldoni-Lively dispute, as detailed below.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Regarding the first element, Petitioners have successfully invited public attention to their views in an effort to influence others by dint of their asserted status as "internationally recognized public-relations and strategic-communications" experts with "a roster of prominent corporate, entertainment, and sports clients[.]" ECF No. 1-16 at ¶¶ 1-2 (Declaration of Stephanie Jones). The Counterclaim-Plaintiffs in the underlying suit further allege that one of the Petitioners is half of a "bona fide Hollywood power couple" by virtue of her marriage to a prominent talent agent. ECF No. 1-9 at ¶ 12 (Counterclaims of Jennifer Abel); *see also* ECF No. 1-12 at ¶ 12 (Counterclaims of Wayfarer Studios LLC). Together, these admissions and allegations establish that Petitioners have invited public attention to their views on public-relations and strategic-communications in the entertainment industry prior to the Baldoni-Lively dispute. *See Biro*, 963 F. Supp. 2d at 271 (plaintiff's proclamations that he was a "leading authority" in his field were sufficient to establish he had invited public attention to his views).

20

21

22

As for the second and third elements, Petitioners have voluntarily injected themselves into the Baldoni-Lively dispute and assumed a position of prominence in it. This is evidenced by an email purportedly sent by Petitioners claiming,

23

24

25

26

27

> I have been deeply involved in strategy, planning, account management and high level PR and media comms as well as crisis until you asked me to stop communicating on behalf of Justin and Wayfarer on 8/9/24 and allow only Jennifer, Matthew and team to handle. I've been on set during shoots and have had numerous calls weekly with my team and yours as well as many with Justin, particularly regarding Blake, often at 11 pm, 1am ET

28

-7-

(New York). My commitment spans not only the past eight years but also the last four since you joined.

*See* ECF No. 1-12 at ¶ 48 (Counterclaims of Wayfarer Studios LLC); ECF No. 1-9 at ¶ 79 (Counterclaims of Jennifer Abel).[3]  The Counterclaim-Plaintiffs further allege that Petitioners injected themselves into the Baldoni-Lively dispute and assumed a position of prominence in it by:

- making a "desperate attempt to re-insert [themselves in the Baldoni-Lively dispute] and contact[ing] a Daily Mail reporter about a story they had published about Baldoni and Lively," ECF No. 1-9 at ¶ 81 (Counterclaims of Jennifer Abel); *see also* ECF No. 1-12 at ¶ 40 (Counterclaims of Wayfarer Studios LLC);

- "advocating for a more aggressive public relations strategy" by "promot[ing] positive narratives that media outlets cannot ignore" and "mobiliz[ing] a robust network of supporters and third-party advocates," ECF No. 1-12 at ¶¶ 45-46 (Counterclaims of Wayfarer Studios LLC); and

- providing one of the Counterclaim-Plaintiff's private communications to Ms. Lively and others. *See* ECF No. 1-9 at ¶¶ 90-91 (Counterclaims of Jennifer Abel).

Finally, as public-relations and strategic-communications experts in the entertainment industry, Petitioners necessarily maintain regular and continuing access to the media in satisfaction of the fourth element. *See Biro*, 963 F. Supp. 2d at 275 (finding that plaintiff "enjoys significantly greater access to the channels of effective communication than the average private person, and hence has a more realistic opportunity to counteract false statements th[a]n private individuals normally enjoy.") (cleaned up). Indeed, this appears to be true even as to this specific

---

[3] The Baldoni-Lively dispute has generated strongly held views among the public and thus qualifies as a public controversy for purposes of this analysis. *See Biro*, 963 F. Supp. 2d at 272 ("A public controversy is simply any topic upon which sizeable segments of society have different, strongly held views, even if the topic does not involve political debate or criticism of public officials.") (cleaned up); *see also* Perez Hilton, *Blake Lively Or Justin Baldoni? Whose Side Is The Internet On?*, PEREZHILTON.COM (Jan. 3, 2025), https://perezhilton.com/internet-reactions-blake-lively-justin-baldoni-it-ends-with-us-legal-drama/ ("From the looks of it, folks have very strong opinions — on both sides.").

META'S OPPOSITION TO MOTION TO COMPEL

1  dispute. *See* ECF No. 1-12 at ¶ 48 (Counterclaims of Wayfarer Studios LLC) (quoting
2  Petitioners as claiming to "have been deeply involved in . . . high level PR and media
3  comms"). Petitioners therefore qualify as limited purpose public figures with respect
4  to the Baldoni-Lively dispute.

5      As limited purpose public figures, Petitioners bear the "onerous task" of
6  alleging that the anonymous Facebook user made their statements with actual
7  malice supported by "factual allegations" sufficient to establish the user's state of
8  mind. *Biro*, 963 F. Supp. 2d at 278. Conclusory allegations that amount to "a mere
9  recitation of the legal standard" do not suffice. *Id.* at 280 (citation omitted). But
10 Petitioners' motion to compel does not address the actual malice standard at all or
11 Petitioners' status as limited purpose public figures, let alone factual allegations to
12 meet such standard. Accordingly, Petitioners have failed to make a prima facie
13 showing of their defamation claims and their motion to compel should be denied.
14 *Compare Blossoms & Blooms, Inc. v. Doe*, No. 22-1557-KSM, 2022 WL 3030788 at *5
15 (E.D. Pa. July 29, 2022) (denying a motion for leave to issue a subpoena for a
16 Facebook user's subscriber information where plaintiffs failed to establish actual
17 malice because they "offered no evidence that the statements were made with a
18 'reckless disregard' for the truth."), with *Castro*, 2023 WL 9232964, at *5 (granting a
19 motion to compel compliance with a subpoena for subscriber information because
20 "falsely accusing someone who is running for President of being under federal
21 criminal indictment and lying about his military service, while using unreliable
22 sources and entertaining serious doubts about the truthfulness of the statements, is
23 enough to satisfy the actual malice standard.").

24                          **IV.    CONCLUSION**

25      For the reasons stated, the Court should deny Petitioners' Motion to Compel.

26

27

28

Dated: July 9, 2025

**PERKINS COIE LLP**


By: */s/ Julie E. Schwartz*
    Julie E. Schwartz, Bar No. 260624

*Attorneys for Meta Platforms, Inc.*

# Exhibit G

(Instructions for domesticating a New York subpoena to California)



Trying to serve a New York subpoena on a person or business in California? Learn how to properly domesticate a subpoena under the Uniform Interstate Depositions and Discovery Act (UIDDA), avoid delays, and complete service legally.

## Why Domestication Is Required

When you need documents, testimony, or records from someone located in California for a case pending in New York, you can't simply serve them with a New York subpoena. California law requires that the subpoena be domesticated—meaning issued and re-filed through the California court system—before it can be legally served.

Fortunately, both New York and California have adopted the Uniform Interstate Depositions and Discovery Act (UIDDA), which streamlines the domestication process between states.

## Step-by-Step Guide to Domesticate a NY Subpoena in California

Here's how to domesticate a subpoena issued in New York for service in California:

### 1. Prepare the Required Documents

To domesticate the subpoena, you'll need the following:

- A copy of the original subpoena issued by the New York court.
- A completed **Application for Discovery Subpoena (SUBP-030)** form.
- A completed California subpoena form appropriate for your request:
  - [SUBP-035] – Deposition Subpoena for Personal Appearance
  - [SUBP-040] – Deposition Subpoena for Production of Business Records
  - [SUBP-045] – Deposition Subpoena for Personal Appearance and Production of Documents

Ensure the subpoena is filled out but not yet signed. The court clerk will sign and issue it after review.

### 2. File the Documents in the Correct California County

File your documents in the **Superior Court of the county where the person or business to be served is located**. No formal motion or local attorney is needed under UIDDA.

Some counties allow in-person filing, others allow eFiling, and a few require wet signatures. Always check local court rules before filing.

## Categories

- Subpoena Domestication (66)
- UIDDA-States (47)
- Guides and Resources (46)
- Small Claims (31)
- E-Filing (29)
- subponea (18)
- Service of Process (18)
- Subpoenas (16)

## Recent Posts

- California Bank Levy Process: Enforcing Your Judgment
- How to Domesticate an Out-of-State Subpoena in Arkansas
- How to Domesticate an Out-of-State Subpoena in Arizona