UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: SUBPOENAS TO GOOGLE for Information from Content Creators 1-16,**<br>Non-Party Movants.<br><br>Served in the matter of<br>Case Nos: 1:24-cv-10049-LJL; 1:25-cv-00449-LJL<br><br>**Blake Lively**<br><br>Petitioners<br><br>V<br><br>**Wayfarer Studios LLC, et al.,**<br>Defendants. | MOTION TO QUASH SUBPOENA<br>Google Internal Reference #100884180<br><br>Served by:<br><br>Esra Hudson<br><br>Manatt Phelps & Phillips, LLP<br><br><br>On behalf of:<br><br>Blake Lively |

PLEASE TAKE NOTICE that Non-Party Movant YouTube account, McKenzie Folks @Existingtothrive, hereby moves this Court to

accept this pro se Motion to Quash pursuant to Federal Rules of Civil Procedure § 45(d)(3) and 45(c)(2), to quash or revoke the subpoena issued to Google LLC, dated July 3, 2025, Internal Reference #100884180, seeking personally identifiable information and private data associated with Movant's YouTube account.

I. INTRODUCTION

This motion seeks to protect Movant's constitutional right to freedom of speech. The subpoena demands personal identifiable information – including name, address, IP address, IP history, and financial data – without establishing that the content posted by @existingtothrive is actionable or relevant to the underlying litigation. Granting such a

subpoena without a compelling evidentiary basis would go against the Movant's right to protected online speech and violate the first amendment.

## II. BACKGROUND

Movant is listed as No. 16 @existingtothrive, an independent online commentator who has posted videos online discussing the widely published case Lively v Wayfarer Studios LLC, 1:24-cv-10049, (S.D.N.Y). It is crucial to note that everything discussed in the Movant's videos are cited and from published articles that are readily available to the public. It is also important to note that the case Lively v Wayfarer Studios LLC, 1:24-cv-10049, (S.D.N.Y) is not the only topic the Movant covers on social media platforms.

On July 10th 2025, Movant became aware that Plaintiff served a subpoena to Google LLC d/b/a YouTube, demanding the disclosure of sensitive information for McKenzie Folks, @existingtothrive. Movant requested a copy of the subpoena from Google and Esra Hudson on July 10th 2025 via email. The morning of July 11th Movant called Esra Hudson's office and left a voicemail requesting confirmation of the legitimacy of the subpoena and a copy of it. It was not until July 14th 2025 that the Movant received a copy of the subpoena from Google at 12:56 pm and Manatt, Phelps & Phillips, LLP at 3:53pm. (Exhibit A)

The subpoena seeks Movant's (a) name, (b) email address(es), (c) phone number(s),(d) physical address, ( e ) backup/recover email address or phone number, (f) subscriber registration information, (g) length of service (including start date) and any premium services utilized, (h) means and source of payment for such services (including any credit card or bank account number, or public blockchain data any addresses), (i) login internet protocol (IP) address used for initial registration, (j) IP address used from May 1, 2024 to the present, with dates and session times, and (k) video upload IP address. This request is overbroad, invasive, and not narrowly tailored to any legitimate legal interest. (Exhibit B)

## III. LEGAL STANDARD

A. Under Rule 45(d)(3)(A), a court must quash or modify a subpoena that:

(iii) Requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) Subjects a person to undue burden.

The First Amendment protects the right to anonymous speech, especially on matters of public concern. See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995); Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088 (W.D. Wash. 2001); Sony Music Entm't Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).

B. Rule 45(c)(2) states regarding the place of issue: "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person"

C. New York Times Co. v. Sullivan, 376 U.S. 254 (1964) states that the first amendment protects speech against public figures and the court should not be used to intimidate critics.

## IV. ARGUMENT

### A. The Subpoena Violates Movant's First Amendment Right to Free Speech

Movant has not engaged in any defamatory or illegal conduct. The subpoena appears to be aimed at identifying critics or speakers in a high-profile entertainment dispute. Compelled identification in this context constitutes retaliation against protected speech, absent a threshold showing of actionable wrongdoing. The Supreme Court determined during New York Times Co. v. Sullivan, 376 U.S. 254 (1964) commentary on public issues should be uninhibited, robust and wide-open. It was said that vehement criticism and even mistakes were part of the price for freedom in a democratic society. In order to protect open discourse, the Court made it clear that a public official suing for damages had to prove the existence of actual malice by convincing clarity. Thus, Ms. Lively would need to prove with strong evidence of any connection to her claims of a "smear campaign" **before** gaining access to private information of the Movant. Content creators have a right to discuss and question her claims in an ongoing public

case. The subpoena issued by Ms. Lively to those covering a public lawsuit appears to be an attempt to intimidate and silence criticism.

**B. The Subpoena is Overbroad and Invasive**

The request for all subscriber information from May 1, 2024, to the present – including IP addresses, payment data, and recovery accounts – exceeds any reasonable scope and imposes an undue burden on both the user and YouTube. It is evident that Ms. Lively lacks evidence of any smear campaign and is now engaging in a broad fishing expedition. It is fair to say the request is irrelevant, disproportionate, and designed to be an intimidation tactic. The Movant at the time of receiving the subpoena notice from Google, had **one subscriber** on YouTube. (Exhibit C) This proves the complete disproportion of Ms. Lively's fishing expedition. It suggests that Plaintiff is not pursuing legitimate evidence, but rather attempting to identify and intimidate critics. The subpoena issued by Plaintiff reflects a speculative fishing expedition rather than a targeted search for evidence. The lack of any factual basis for such invasive requests strongly suggests that the so-called smear campaign' alleged by Plaintiff has no foundation in reality.

**C. Plaintiff has not demonstrated that disclosure is necessary**

The Plaintiff has not proven actual malice to demonstrate the necessity for this subpoena. When it comes to Movant's first amendment rights, Ms. Lively needs clear evidence justifying her infringement on Movant's rights to post commentary on a legal case initially made public by Ms. Lively's team. Negative commentary or opinions regarding Ms. Lively or Lively v Wayfarer Studios LLC, 1:24-cv-10049, (S.D.N.Y) does not constitute sufficient evidence that Movant had any involvement in a smear campaign. Considering the Movant was not monetized on YouTube prior to receiving the subpoena further demonstrates how unnecessary this subpoena is. The Plaintiff has provided no evidence that Movant's speech is defamatory, unlawful, or even relevant to the core claims in the underlying litigation. The subpoena fails to articulate why unmasking an anonymous content creator – who has merely commented on publicly available information – is necessary to advance Plaintiff's claims. Courts have consistently held that when discovery requests target anonymous speakers, the Plaintiff must meet a heightened

evidentiary standard. See Sony Music Entm't Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), which requires that plaintiffs make a concrete showing of actionable speech before compelling disclosure. Plaintiff has made no such showing here.

**D. Irreparable and substantial harm**

Given the broad scope of the requested information within the subpoena, most of which is private information, has the potential to substantially harm the Movant due to privacy and safety concerns. Ms. Lively is a high-profile actress with over forty million followers on her social media. The power dynamic between the Movant and Plaintiff is substantial. Considering how publicized Ms. Lively's case has been, it is in the best interest of the Movant to not disclose highly sensitive information to protect against the Movant being doxed. Ms. Lively has already put the Movant's safety at risk by making claims that "content creators who have been the subject of discovery have already painted Ms. Lively as the aggressor in this lawsuit and have drawn a false equivalency between her discovery efforts and the Wayfarer Parties' alleged smear campaign." (Exhibit D) Ms. Lively is using the legal system to allude that the Movant is harming the plaintiff, again without any evidence. These comments made by Ms. Lively's counsel motivate retaliation from Ms. Lively's fanbase. It is hyperbolic to assume that a small creator like the Movant would have any effect on Ms. Lively or her safety. However, it is not only realistic but expected to be the complete opposite for the Movant.

The First Amendment protects the right to speak anonymously, particularly on matters of public concern. Without a showing of actual malice or compelling need, disclosure would create a chilling effect – not only on Movant but on all creators and commentators participating in public discourse. Courts in this district and beyond require plaintiffs to make a prima facie showing that the anonymous speech in question is both actionable and relevant before identity may be compelled. The Plaintiff has not offered any such showing. Movant's content is based solely on publicly available documents. Mere criticism – however pointed – does not constitute defamation or warrant a sweeping request for sensitive identifying information. Absent clear evidence of wrongdoing, compelling disclosure in this context would undermine First Amendment protections and set a dangerous precedent for targeting online speakers.

V. CONCLUSION

      For the reasons stated above, Movant respectfully requests that the Court:

1. Quash the subpoena to Google LLC d/b/a YouTube regarding @existingtothrive
2. A protective order under Rule 26 ( c) barring Plaintiff from further abusive discovery without prior court approval
3. Sanctions against Plaintiff under Rule 45(d)(1) for issuing an overbroad and harassing subpoena that appears designed to chill First Amendment-protected speech rather than obtain discoverable information. Further sanctions under Rule 11( c) for filings made to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
4. Movant respectfully requests reimbursement of reasonable costs associated with responding to and litigating this motion, as permitted by Rule 45 (d)(1), due to the oppressive and unjustified nature of the subpoena.
5. Grant such other relief as the Court deems just and proper

Movant declares, under penalty of perjury, that they have not been compensated or directed by any party related to Lively v Wayfarer Studios LLC, 1:24-cv-10049, (S.D.N.Y).


Respectfully submitted,

McKenzie Folks @existingtothrive    x /signature/

Pro Se Movant

15050 W 138th St PO Box 2673

Olathe, KS 66063

913-782-3423

# EXHIBIT A





# EXHIBIT B

**REQUEST FOR PRODUCTION NO. 16:**

All subscriber information, for the username @existingtothrive associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

# EXHIBIT C



# EXHIBIT D

Hon. Lewis J. Liman
July 18, 2025
Page 2

Companies (as defined in the Interrogatories). Specifically, Interrogatory No. 5 asked TAG to: "Identify all Content Creators with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present." On June 18, 2025, Ms. Lively propounded similar interrogatories on Heath, Baldoni, In Ends With Us Movie LLC, Abel, Wayfarer, Sarowitz, and Nathan, and those responses are due on July 18, 2025.

After TAG was ordered to respond to the Interrogatories (*see* Dkt. No. 355), TAG supplemented its responses, identifying a number of individuals who have spoken publicly about Ms. Lively and this lawsuit, apparently at the behest of TAG and the other Wayfarer Defendants. *See* Roeser Decl., Ex. 1. Despite the factual nature of this information, TAG unilaterally designated its responses as confidential and "Attorneys' Eyes Only," thus obscuring TAG as the source of this information, and allowing the Wayfarer Defendants to once again recast Ms. Lively as the aggressor in pursuing subsequent discovery (which is exactly what has transpired).[3]

During meet and confer discussions, TAG's counsel primarily claimed that its Interrogatory Responses constituted "trade secrets," which if disclosed, could somehow harm TAG's business. *See* Roeser Decl. at ¶ 4. Not so. The Protective Order limits confidentiality and AEO designations to "nonpublic material the public disclosure of which…will cause harm to the business, commercial, financial, or personal interests of the producing person and/or a third party to whom a duty of confidentiality is owed." Dkt. No. 125 at 3, ¶ 2. The Protective Order further limits AEO designations to "Confidential Discovery Material of such a highly confidential and personal, sensitive, or proprietary nature that the revelation of such is highly likely to cause a significant competitive, business, commercial, financial, or privacy injury to the producing party." *Id.* at 2, ¶ 1. And while "trade secrets" can be designated as confidential and AEO, those protections are diminished for confidential strategies and other information *related to the parties to this litigation*. *See id.* at 2, ¶ 1(a). TAG's counsel has provided *no* facts to support their assertion that the identity of third parties could somehow constitute "trade secrets," nor can they explain how this information could be so sensitive as to cause harm to TAG—especially where many of these individuals have already spoken publicly about Ms. Lively and this case. Indeed, the information TAG has designated as confidential and AEO all relates to TAG's work for the Wayfarer Parties themselves. TAG's confidential and AEO designations are therefore plainly improper, and the Court should order TAG to de-designate them.

Moreover, these mis-designations are having very real impacts. For example, if Ms. Lively issues subpoenas related to individuals identified in TAG's Interrogatory Responses to marshal evidence about their involvement in the "smear campaign," she will be hindered in her ability to meet and confer or respond to questions, and will be unable to explain to such subpoenaed parties that the discovery directed towards them is based in part on the fact that TAG identified them. Content creators who have been the subject of discovery have already painted Ms. Lively as the

---

[3] This is particularly ironic given that TAG's counsel initially resisted including an AEO designation in the Protective Order at all, citing concerns that the designation might be overused. *See* Dkt. 124 at 10 (noting that the Wayfarer Parties "express[ed] concerns that the AEO provision will be overused and that the party opposing such designation will be required to consistently bear the burden of having information de-designated, instead of the party seeking designation being required to support it in the first instance.").

- 2 -

Hon. Lewis J. Liman
July 18, 2025
Page 3

aggressor in this lawsuit and have drawn a false equivalency between her discovery efforts and the Wayfarer Parties' alleged smear campaign. One subpoenaed content creator even went so far as to *record a call with a receptionist from Ms. Lively's attorney's office without express consent and then posted the recording on YouTube*.[4] *See* Popcorned Planet, *ITS REAL!? We Called Blake Lively's Lawyers - THEY LIED TO US!?*, YouTube (July 11, 2025), https://www.youtube.com/watch?app=desktop&v=Rzen-Sa8e40&feature=youtu.be. This content creator further used the recording to make false, inflammatory remarks about Ms. Lively and her counsel, and is seeking to fundraise based on the recording and his remarks. *See id.* The bottom line is that the concern about being hamstrung in being able to tie her discovery to the Wayfarer Parties' discovery responses further exacerbates public backlash against Ms. Lively, which she should not have to endure when there is no conceivable privacy interest that TAG and others are protecting.

History is now at risk of repeating itself. Because of TAG's mis-designated Interrogatory Responses, Ms. Lively is yet again being forced to battle an "untraceable" campaign, unable to defend herself against misinformation online. While TAG may have been able to obscure its contacts in connection with the initial "smear campaign," it cannot do so here. For these reasons, Ms. Lively asks the Court to compel TAG to de-designate its Interrogatory Responses as confidential and "Attorney's Eyes Only" under the parties' Protective Order, and make clear that any similar confidential and AEO designations the other Wayfarer Parties may seek to use in connection with the interrogatory responses due on July 18, 2025 would likewise be improper.

Respectfully submitted,

/s/ Esra A. Hudson

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP | MANATT, PHELPS & PHILLIPS, LLP |
| Michael J. Gottlieb | Esra A. Hudson (admitted *pro hac* vice) |
| Kristin E. Bender | Stephanie A. Roeser (admitted *pro hac* vice) |
| 1875 K Street NW | 2049 Century Park East, Suite 1700 |
| Washington, DC 20006 | Los Angeles, CA 90067 |
| (202) 303-1000 | (310) 312-4000 |
| mgottlieb@willkie.com | ehudson@manatt.com |
| kbender@willkie.com | sroeser@manatt.com |
| mgovernski@willkie.com | |
| | Matthew F. Bruno |
| Aaron E. Nathan | 7 Times Sq. |
| 787 7th Avenue | New York, NY 10036 |
| New York, NY 10019 | (212) 790-4500 |
| (212) 728-8000 | mbruno@manatt.com |
| anathan@willkie.com | |

---

[4] Recording "confidential communications" without the consent of all parties is a crime in California, where the receptionist is based. Cal. Pen. Code § 632.

- 3 -