Lauren Neidigh
2285 Kingsley Ave Suite A #1104
(904-269-3324)
Non-party Movant in Pro Se

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLAKE LIVELY,

               Plaintiff,

     v.

WAYFARER STUDIOS LLC, et al.,

               Defendant.

Case No.: 1:24-cv-10049-LJL

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY LAUREN NEIDIGH'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

     PLEASE TAKE NOTICE that Non-Party Lauren Neidigh ("Movant") respectfully submits this Memorandum of Law in support of her Motion to Quash the Subpoena issued by Plaintiff Blake Lively to Google LLC commanding the production of certain documents (the "Subpoena"). The Subpoena dated July 3, 2025, internal reference #100884180, seeks personally identifiable information and private data associated with Movant's YouTube account @LethalLauren904. Additionally, Movant respectfully seeks issuance of a protective order barring further abusive discovery by Ms. Lively without prior court approval.

1

## I. INTRODUCTION

This Motion to Quash the Subpoena refers to the Subpoena served on Google LLC seeking private information and data of 16 YouTube creators under the premise that they are engaged in a "smear campaign" against Plaintiff Blake Lively at the behest of the Wayfarer parties. **Exhibit A** The Subpoena targets creators who have expressed unfavorable opinions about Ms. Lively online. The Subpoena is not supported by any evidence. It serves to intimidate, harass, chill constitutionally protected free speech, and threaten the safety and privacy of non-parties who are not involved in this litigation.

Ms. Lively has offered no reasonable explanation for why she believes Movant's criticism of her is inorganic. Counsel has been uncooperative or unresponsive upon Movant's attempts to meet and confer. Ms. Lively's counsel would only state that "Ms. Lively brings claims against the Wayfarer Parties in part on the basis that they engaged in a digital media 'smear campaign' by planting negative stories about her in the press after she reported sexual harassment on the film *It Ends With Us*. Ms. Lively has issued subpoenas seeking information about accounts that posted such information, or otherwise engaged with that content, to determine whether the Wayfarer Parties played any role in its dissemination." **Exhibit C**

Movant attempted to confer to determine how her personal information and private data could possibly fit into Ms. Lively's "smear campaign" apologue given that Movant did not even begin discussing Ms. Lively's case until after

the lawsuits were filed, and Movant's coverage of the case relies upon publicly available court filings or public information that has already been disseminated by legacy media outlets. Ms. Lively's counsel ceased responding upon requests for further explanation. Thus, the Subpoena appears nonsensical. For example, it is unclear how Movant's backup email addresses and login history could have contributed to Ms. Lively's turmoil over the public's negative response to her decision to hawk alcohol and hair care products while promoting a film about domestic violence. There is no reasonable connection between Movant's login history, the Wayfarer parties, and Ms. Lively's public relations plight.

Ms. Lively is unable to explain why Movant's private personal information and data are relevant to the litigation at hand. This attempted excavation of private information and data and refusal to cooperate in meet and confer efforts is an abuse of the federal government as a mechanism to confuse, embarrass, and punish lawful expression of unfavorable opinions of Ms. Lively by private citizens who cannot afford to hire counsel to entertain Ms. Lively's wild theories about an "untraceable smear campaign." It is undeniable that Ms. Lively's own words and actions influenced Movant's negative opinion of her as this is well-documented through Movant's YouTube coverage that Ms. Lively is apparently already aware of. The Wayfarer parties had no hand in influencing this opinion as they never attempted to contact or persuade Movant to speak unfavorably of Ms. Lively. Movant's subjective, personal belief that Ms. Lively has made false allegations against Defendant Justin Baldoni has only been reinforced by the fact that Ms. Lively has now also brought false allegations of "smear campaign" involvement against Movant and several other content creators and/or social media users across various social media platforms,

including a YouTube channel that had just one subscriber at the time the Subpoena was served.

Despite her insistence that there is an "untraceable smear campaign," Ms. Lively never seems to any difficulty at all identifying and targeting those whom she believes to be the perpetrators of this phantom campaign. Ms. Lively's unwillingness to accept that the public's criticism of her is genuine has now gone so far as to become a public safety hazard. It is a threat to the general public's privacy and constitutionally protected free speech so long as she is allowed to pass out subpoenas for the private information and data of whomever displeases her. Should the public engage in lawful speech that is unfavorable of Ms. Lively, she may continue to attempt to use her counsel's subpoena power to force the public into time consuming, distressing, and unaffordable litigation to defend their own reasonable expectations of privacy. This desperate attempt to penalize Movant and other citizens for their lawful speech should be hindered by the court, as it is a fruitless and meddlesome inquisition and an embarrassing misuse of the justice system.

## II. FACTUAL BACKGROUND

Movant is #5 of 16 independent online commentators identified in the Subpoena. Movant purchases federal court filings from the PACER website and lawfully analyzes these court filings and publicly available material related to this high-profile litigation. On or about July 10, 2025, Movant received notification from Google that her identifying information, including names, emails, addresses, IP logs, payment data, and other personal information, was

sought via the Subpoena in this action. The Subpoena, issued by Ms. Lively's counsel, Esra Hudson, requests the following from Google:

A. **Names, addresses, email accounts, and phone numbers including backups.** Despite heavy implications by Ms. Lively's counsel, Movant was not contacted by The Agency Group (TAG) or any of the Wayfarer parties to smear Ms. Lively "at their behest."[1] **Exhibit B** If Ms. Lively wishes to collect information on journalists or social media users who have communicated with the Wayfarer parties, this information should be requested directly from the Wayfarer parties rather than a witch hunt for every account on social media that may have engaged in commentary about Ms. Lively that she does not like.

B. **IP addresses, login histories, and geolocation data.** Ms. Lively has not explained, nor is it easily apparent, why Movant's locations have any bearing on this litigation. Despite traversing multiple states and continents since beginning her YouTube coverage of this litigation, Movant's unfavorable opinions of Ms. Lively and expressions thereof have remained the same. Ms. Lively has further not explained why she is seeking this information from as far back as May 2024 when Movant did not begin speaking about this topic until January 3, 2025, after Ms. Lively's lawsuit was filed. Movant can assure Ms. Lively that she was quite busy working multiple jobs while also attending online classes from

---

[1] In her July 18, 2025, Motion to Compel, Ms. Lively and her counsel, Esra Hudson, accuse the users whose information was sought by the subpoenas of being named by TAG in their interrogatory responses as those who "apparently acted at the behest of" the Wayfarer parties. This was an intentionally misleading and false allegation.

May 2024 to January 2025 and was not doing anything that would be relevant to Ms. Lively's litigation.

C. **YouTube and Google Pay account information, including payment sources.** YouTube neither directly pays their creators, nor do they use Google Pay. No third party has access to add additional money to a YouTuber's monthly pay. Movant is paid by AdSense according to ads run on Movant's YouTube channel. Furthermore, Ms. Lively herself makes a compelling argument that individuals have a constitutional right to privacy regarding their financial information. In her response to the Wayfarer Parties' Motion to Compel Ms. Lively to disclose her own financial information, in litigation she elected to initiate and seek damages, she states, "This argument falls woefully short of overcoming the general rule against seeking party assets and financial information and Ms. Lively's constitutional right to privacy of the same."[2] Ms. Lively appears to recognize the basic elements of privacy rights that individuals are entitled to, despite her attempts to pierce the privacy rights that others are equally entitled to.

D. **Bank account and credit card information.** It is bemusing to imagine that Ms. Lively sincerely believes Movant's credit card information would be relevant to the claims in this litigation. Credit cards are used for purchases and not for payments. Ms. Lively's counsel has refused to offer any details to explain why they seek this information despite multiple attempts to discuss the issue. **Exhibit C** Movant gathers from

---

[2] See Dkt. No. 421

the limited available information that Ms. Lively believes Movant is being paid by someone outside of AdSense to create content about Ms. Lively. The opposite is true. Movant pays for the official court filings from the PACER website with her own money and provides commentary on these filings on her YouTube channel of her own accord. It costs Movant money to make her own content. This request for Movant's financial records is highly invasive, unfounded, and inappropriate. Ms. Lively should request information on any communications or payments between the Wayfarer parties and the media or social media users directly from the Wayfarer parties themselves. Ms. Lively should not be given free rein to invade and extract the private financial information of those who speak unfavorably of her online. She has no business obtaining the private financial information of Movant or other non-parties with whom Movant shares a bank account.  Movant fails to see why information such as bank account numbers would be required for any other purpose than to issue a further subpoena to the financial institutions with whom Movant conducts her business, to obtain fuller financial records which have no relevance to Ms. Lively's claims and are grossly intrusive. There is no reasonable explanation or evidence to show that Movant's financial information would be relevant to Ms. Lively's litigation.

E. **Subscriber registration data, premium services, and account usage history**. It remains unclear what this entails as far as Movant's subscriber registration data or what premium services have to do with any part of this litigation. This request needs clarification, however, as noted above, Ms. Lively's counsel was uncooperative with the meet and confer

process during which Movant would have sought to discuss this issue further. It cannot be determined with certainty whether Ms. Lively is seeking the information and data solely of the Movant or if she also seeks the data of users who subscribe to Movant's YouTube channel. While it would usually seem commonsense that someone would not seek the data of everyone subscribed to non-party Movant's YouTube channel, this is no longer a commonsense determination given Ms. Lively's increasingly unreasonable demands to invade the privacy of others. Ms. Lively has no reasonable basis to obtain Movant's data to further a paranoid investigation into others who speak unfavorably of her online or subscribe to channels that do so.

Ms. Lively's overbearing requests for Movant's private information and data are overly broad, highly intrusive, and completely without merit. Ms. Lively cannot offer any evidence to explain or support these requests. The only reasonable explanation for Ms. Lively's pursuit of Movant's private information in this manner is because Movant speaks unfavorably of Ms. Lively and favorably of Mr. Baldoni online. Movant formed her own opinions and has not acted at the behest of any of the Wayfarer parties, or the Lively parties for that matter.

Ms. Lively has been misleading in her representations of social media users' involvement with the Wayfarer parties. On July 18, 2025, counsel for Ms. Lively, despite refusing to answer questions or clarify the reasoning behind the information sought from Google, submitted a Motion to Compel in which she heavily implied Movant was among a list of creators working "at the behest" of the Wayfarer parties via TAG as part of the alleged "smear campaign." Ms. Lively's counsel represented to the court and the public through creative wording that

Movant and others targeted by the Subpoena were named by TAG in their June 25, 2025 interrogatory responses that were designated attorneys' eyes only. **Exhibit B** This is patently false as Movant has never spoken to anyone from TAG, and the Wayfarer parties confirmed that just one of the 43 users targeted by subpoenas to Google, X, and TikTok (the "Social Media Subpoenas") appeared in TAG's interrogatory responses. Furthermore, the context in which that user appeared was misrepresented.[3] Ms. Lively's Motion was a manipulative public relations tool which served only to traduce Movant and the other social media users who have been targeted by the Social Media Subpoenas. Ms. Lively's weaponization of the legal system will continue to serve to harass, intimidate, and potentially bankrupt non-parties who are completely irrelevant to this litigation if Ms. Lively's overly broad, invasive discovery requests are not hindered by this court.

## III. LEGAL STANDARD

**A.** Federal Rule of Civil Procedure 45(d)(3)(A) requires a court to quash or modify a subpoena that:

(i) requires disclosure of privileged or other protected matter, or
(ii) subjects a person to undue burden.

The Subpoena in this matter violates both provisions. It seeks disclosure of personal, sensitive, and protected information from a non-party speaker engaged in expressive activity on matters of public concern. Disclosure of this kind of private data such as financial information, IP logs, and account identifiers raises serious

---

[3] See Dkt. No. 460

concerns under the First Amendment and imposes a substantial and unjustified burden.

**B.** Federal Rule of Civil Procedure 45(c)(2)(A) provides that a subpoena may command the production of documents, electronically stored information, or tangible things only at a location "within 100 miles of where the person resides, is employed, or regularly transacts business in person." The Subpoena served in this matter fails to comply with this geographic limitation as Google is in California.

**C.** Under 18 U.S.C. § 2702(b)(3) of the Stored Communications Act ("SCA"), a provider of electronic communication services or remote computing services may disclose the contents of communications only if the disclosure is authorized by the "lawful consent" of the originator, addressee, or intended recipient. Google does not have lawful consent to disclose any of Movant's personal information or communication content. Because the Subpoena seeks disclosure of information protected under the SCA and no valid exception applies, including the lawful consent exception under § 2702(b)(3), the requested disclosure would violate federal law.

## IV. ARGUMENT

### A. The Subpoena Violates the First Amendment

The Subpoena should be quashed on First Amendment grounds because it seeks to compel the disclosure of highly personal and sensitive information such as financial account data, location-based IP logs, and contact information from a non-party speaker engaged in public commentary. Even though Movant is not

anonymous, the First Amendment still prohibits government-compelled disclosures that would chill protected speech or participation in public discourse. In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), the Supreme Court held that requiring individuals to reveal their identities in connection with political speech imposes an unconstitutional burden on expression, explaining that "[a]nonymity is a shield from the tyranny of the majority." *Id.* at 357. The Court emphasized that compelled disclosure deters individuals from speaking freely, especially where the speech involves commentary on controversial or sensitive issues.

This principle was extended to non-anonymous speakers in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), where the Ninth Circuit quashed a discovery subpoena seeking internal communications from identified individuals and advocacy groups involved in a public ballot campaign. The court held that compelled disclosure of such expressive material, even when the individuals were not anonymous, posed a serious risk of chilling political speech and participation, particularly in future advocacy. It concluded that "[t]he freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment," and that subpoenas touching on those rights must be subject to stringent scrutiny. *Id.* at 1152.

Here, Ms. Lively's subpoena seeks to compel disclosure of personal and technical data linked to Movant's expressive conduct without a compelling justification or narrow tailoring. The chilling effect is substantial and constitutionally impermissible. Under *McIntyre* and *Perry*, the First Amendment protects against such burdens on public participation and free expression.

**B.  The Subpoena Appears to Have Been Served by the Wrong Court**

In accordance with the Uniform Interstate Deposition and Discovery Act (UIDDA), and FRCP § 45(c)(2), subpoenas served outside of 100 miles of the issuing court must be issued in the court district of the entity being served. Google is in California. Movant objects to an out-of-district subpoena being served to collect her personal information.

**C.  The Subpoena Is Overbroad and Unduly Burdensome**

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires courts to quash a subpoena that "subjects a person to undue burden." This protection applies particularly to non-parties, who are not participants in the litigation and should not be forced to bear burdens that the parties themselves would not be required to shoulder. The breadth and invasiveness of Ms. Lively's Subpoena amplifies the burden it imposes. It seeks a sweeping range of personal data from a non-party, including name, addresses, phone numbers, financial account data, IP logs, and login metadata over a multi-month period without narrowing the request to any specific content or showing any specific reasoning for seeking this information. These overly broad demands are precisely the kind of discovery that courts routinely find unduly burdensome.

Courts in this Circuit have consistently emphasized that "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). In *O'Gorman v. Mercer Kitchen, LLC*, No. 1:20-cv-

01404 (S.D.N.Y. Apr. 7, 2021), Judge Lewis J. Liman granted a motion to quash a subpoena served on a non-party, holding that where the requesting party fails to show a specific and narrow need, and the request imposes "an unwarranted burden on a non-party," the subpoena must be quashed. The court emphasized the importance of protecting non-parties from fishing expeditions and overreaching requests. Ms. Lively's Subpoena imposes an undue burden, lacks narrow tailoring, and seeks highly sensitive information from a non-party without sufficient justification.

**D. Disclosure Would Cause Irreparable Harm**

The Subpoena should also be quashed on the grounds that it threatens to cause irreparable harm to a non-party. The requested records include full name, contact information, physical address, financial account identifiers, IP address logs, and session metadata, the forced disclosure of which would expose the Movant to reputational, financial, and potentially physical harm.

The Subpoena threatens to cause irreparable harm to a non-party by compelling the disclosure of sensitive personal data tied to expressive activity. Courts have long held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Compelling disclosure of private financial, location, or identifying data from a non-party speaker creates a significant risk of retaliation, reputational damage, and chilling of protected expression. These are injuries that cannot be remedied once the information is disclosed. Because this harm is both immediate and non-compensable, and because Ms. Lively's Subpoena

lacks sufficient justification, it should be quashed to prevent irreparable injury.

### E. Google lacks Movant's consent to share my personal information under § 2702(b)(3) of the Stored Communications Act.

Google does not have Movant's lawful consent to disclose any of Movant's personal information. In *J.T. Shannon Lumber Co. v. Gilco Lumber Inc.*, No. 2:07-cv-119, 2008 WL 3833216 (N.D. Miss. Aug. 14, 2008), reconsideration denied, 2008 WL 4755370 (N.D. Miss. Oct. 29, 2008), the court addressed a subpoena seeking the contents of emails from defendants' personal Microsoft, Yahoo!, and Google accounts. The court held that the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., prohibits providers of electronic communication services from disclosing the contents of users' stored communications in response to a civil subpoena. The court found the statutory language "clear and unambiguous," and ruled that a Rule 45 subpoena is not a valid exception to the SCA's privacy protections. *Id.* at *2*.

### F. Alternative Mechanisms Exist

Here, Ms. Lively could have sought relevant evidence, though none exists, through direct discovery from the named parties. Instead, the Subpoena broadly demands sensitive financial and location data from a non-party speaker, without first pursuing alternative channels. Because less intrusive means are available and the Subpoena fails the proportionality standard of Rule 26(b), it should be quashed under Rule 45(d)(3)(A)(iv).

Movant is willing to cooperate with the Court through less invasive means, such as submission of sworn affidavits for ex parte (excluding members of Lively's counsel), in camera review before the court with no unredacted copies made available to any member of Blake Lively's counsel, parties, or any public filing on the docket. There is no justification for the sweeping, public disclosure Ms. Lively seeks.

## V. REQUEST FOR PROTECTIVE ORDER

In addition to quashing Ms. Lively's Subpoena to Google, Movant requests that the Court enter a protective order under Federal Rule of Civil Procedure 26(c), prohibiting Ms. Lively from issuing any further subpoenas or discovery requests directed at Movant, other non-parties, or related private information without prior leave of Court. Rule 26(c) authorizes the Court to enter an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Subpoena in this matter is overbroad, invasive, and constitutionally problematic as it is seeking sensitive financial and location data from a non-party speaker in connection with expressive activity protected by the First Amendment.

The use of civil discovery to compel such disclosure without adequate justification or tailoring suggests an abusive strategy with a chilling effect on public speech. To prevent future misuse of the discovery process and to safeguard the privacy and expressive rights of Movant and other non-parties, the Court should require Ms. Lively to seek advance judicial approval before pursuing any further similar discovery efforts.

## VI. REQUEST FOR SANCTIONS

The Court should impose sanctions under Federal Rule of Civil Procedure 45(d)(1), Rule 26(g), and its inherent authority, because the Subpoena served by Ms. Lively is overbroad, intrusive, and imposes an undue burden on a non-party. The Subpoena seeks sensitive and private information without any apparent justification or narrowing. Rule 45(d)(1) requires that parties take reasonable steps to avoid imposing undue burdens or expenses on non-parties. Ms. Lively failed to meet this obligation.

In addition, Rule 26(g) authorizes sanctions where a discovery request is issued without substantial justification or in a manner that is unreasonably cumulative, duplicative, or unduly burdensome. The breadth and nature of this Subpoena, particularly as it targets constitutionally protected expressive activity, strongly suggest that it may have been issued in bad faith or for an improper purpose.

Movant is currently proceeding pro se but respectfully requests that the Court award all reasonable expenses incurred in responding to the Subpoena and in preparing this motion, including attorney's fees should Movant retain legal counsel. The Court also has inherent authority to address abuse of the judicial process and should consider appropriate sanctions to deter further misuse of discovery tools in this case.

## VII. CONCLUSION

Ms. Lively's Subpoena to Google fails on multiple grounds. It is shockingly invasive and overly broad while lacking any reasonable basis for seeking the private data and personal information of Movant and other non-parties. There is no evidence to suggest that Movant has engaged in a "smear campaign" at the behest of the Wayfarer parties, despite Ms. Lively's misguided notion.

Ms. Lively's abusive Subpoena is particularly concerning considering her own recent comments. Propounding herself an advocate for women and girls' safety, she stated "I see so many women around, afraid to speak, especially right now, afraid to share their experiences. And fear is by design. It's what keeps us silent."[4] Ms. Lively's attempts to chill free speech through these intimidating Subpoenas is troubling in this context. As a survivor of abuse who understands the paralyzing fear that can come from traumatic experiences and make it feel impossible to speak up, Movant is concerned about the precedent that could be set if Ms. Lively's attempts to scare and silence dozens of women on social media are allowed to continue. The right to free expression extends to all women, even to those who say things we do not like, and even to those who do not like us. Hurt feelings are not a valid legal basis to infringe upon the rights of others.

Movant objects to Ms. Lively's attempts to obtain her private data and personally identifying information as it is intrusive and useless to Ms. Lively's litigation. If Ms. Lively insists upon questioning Movant's nonexistent involvement in a "smear campaign," and can somehow manage to come up with a valid reason to continue involving Movant in these affairs, then Ms. Lively is free

---

[4] `https://www.nbc.com/nbc-insider/blake-lively-addresses-justin-baldoni-legal-battle`

to have Movant deposed under oath to confirm that Ms. Lively is wrong.

**Movant respectfully requests that the Court:**

1. Revoke Ms. Lively's Subpoena served upon Google LLC and all non-party subpoenas served on internet providers, phone providers, and social media sites such as YouTube, Meta, TikTok, X, Reddit, etc. that have not been properly presented to a court and had a prima facie showing that led to a court order permitting the subpoena to be served (noting that an out of district subpoena must also pass inspection in the district it will ultimately be served in).

2. Alternatively, quash the subpoena served on Google LLC for Movant, #5 and all others 1-16.

3. Alternatively, allow for lesser invasive mechanisms as suggested in this motion.

4. Alternatively, narrow the scope and require protective measures,

5. Grant such further relief as the Court deems just and proper, including but not limited to sanctions for attorney's fees and costs to cover this completely unnecessary and violating subpoena served without cause or reasonable explanation.

Dated July 25, 2025

Signature: _____

By: Lauren Neidigh
2285 Kingsley Ave Suite A #1104
(904-269-3324)
LNeidigh2011@gmail.com

# EXHIBIT A

(A copy of the Subpoena served upon Google LLC by Esra Hudson of Manatt Phelps & Phillips, LLP on behalf of Plaintiff Blake Lively on July 3, 2025)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| Blake Lively, et al. | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 1:24-cv-10049; 1:25-cv-00449 |
| | ) | |
| Wayfarer Studios LLC, et al. | ) | |
| _Defendant_ | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Google, LLC, d/b/a Youtube, c/o 1505 Corporation CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA 95833

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Manatt Phelps & Phillips, LLP<br>1215 K Street, Suite 1900<br>Sacramento, California 95814 | Date and Time:<br><br>07/16/2025 5:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/032025

| _CLERK OF COURT_ | OR | |
|---|---|---|
| _____ | | /s/ Esra Hudson |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_    Blake Lively
_____ , who issues or requests this subpoena, are:

Esra Hudson, 2049 Century Park East, Ste 1700, Los Angeles, CA 90067; ehudson@manatt.com; (310) 312-4000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:24-cv-10049; 1:25-cv-00449

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____     on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment A**

## DEFINITIONS

1.      The Uniform Definitions in Discovery Requests that are set forth in Local Civil Rule 26.3 are hereby incorporated by reference.

2.      "Consolidated Action" means and collectively refers to the following cases entitled (a) *Lively v. Wayfarer Studios LLC et al.*, U.S. District Court for the Southern District of New York (Case No. 1:24-cv-10049-LJL); and (b) *Wayfarer Studios LLC et al. v. Lively et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00449-LJL).

3.      "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written.

4.      "Affiliate" means any and all entities that are wholly owned and/or controlled (directly or indirectly) by, or under common control by an identified individual or entity, including any corporate parent, subsidiaries, or affiliates, and each of their respective officers, directors, employees, or partners.

5.      The terms "all," "any," and "each" shall each be construed as encompassing any and all. *See* Local Civil Rule 26.3.

6.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. *See* Local Civil Rule 26.3.

7.      "Abel" refers to Jennifer Abel, who is a party to the Action.

8.      "Baldoni" refers to Justin Baldoni, who currently serves as the co-founder and co-chairman of Wayfarer Studios LLC and is a party to the Action.

9.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Civil Rule 26.3.

10.    "Lively Complaint" means the operative complaint filed by Blake Lively in *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. No. 1, the amended complaint, Dkt. No. 84, and any amended complaints filed by Blake Lively in the proceeding.

11.    The "CRD Complaint" means the operative administrative complaint filed by Blake Lively with the California Civil Rights Department on December 20, 2024.

12.    "Concerning" means relating to, referring to, describing, evidencing, or constituting. *See* Local Civil Rule 26.3.

13.    "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. *See* Local Civil Rule 26.3.

14.    The "Film" means the movie "It Ends with Us," co-starring Blake Lively and Justin Baldoni, as described in the Lively Complaint.

15.    "Bryan Freedman" refers to counsel for the Wayfarer Defendants in the Action, as well as his past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

16.    "Heath" refers to Jamey Heath who currently serves as the CEO of Wayfarer Studios LLC and is a party to the Action.

17.    "Including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

18.    "IEWU LLC" shall refer to Defendant It Ends With Us Movie LLC, which is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

19.     "Jonesworks" shall refer to the entity Joneworks LLC, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Stephanie Jones.

20.     "Jonesworks Complaint" means the operative complaint filed by Stephanie Jones and Jonesworks LLC in *Jones v. Jennifer Abel et al.* and removed to the United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), Dkt. No. 1, and any amended complaints filed by Stephanie Jones and/or Jonesworks LLC in the proceeding.

21.     "Liner Freedman Taitelman + Cooley" refers to the law firm serving as counsel for the Wayfarer Defendants in the Action as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

22.     "Lively/Reynolds Companies" shall refer to Ms. Lively and Mr. Reynolds's affiliated entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

23.     "Ms. Lively" shall refer to Blake Lively, who is a party to this Action.

24.     "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to this Action.

25.     "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in Lively the Complaint.

26.     "Nathan" shall refer to Melissa Nathan, who is a party to the Action.

27.     The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. *See* Local Civil Rule 26.3.

28.     "Payment" is defined as any transfer or commitment for future transfer of anything of value, including the exchange of funds (whether in dollars, foreign currency, or any form of electronic or cryptocurrency), cash, securities, loans, reimbursements, refunds, accounting corrections, retainers, goods, services, or otherwise.

29.     "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or associate. *See* Local Civil Rule 26.3.

30.     "Protections for Return to Production Agreement" means the contract executed in November 2023 concerning appropriate behavior during filming and production of the Film, as described in the Lively Complaint.

31.     "Digital Campaign" refers to efforts of the Wayfarer Defendants and/or any affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, the Wayfarer Defendants, the Film, or the Actions on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Lively Complaint.

32.     "Relating to" or "Relate to" means, without limitation, assessing, comprising, constituting, concerning, referring to, containing, describing, discussing, embodying, evidencing,

identifying, pertaining to, reflecting, stating, supporting, or tending to support or refute, or referring in any other way, directly or indirectly, in whole or in part, to the subject matter specified.

33.    "Social Media" means any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to:

    a.    Social Networking Platforms – Facebook, Instagram, Twitter (X), LinkedIn, TikTok, Snapchat, Reddit, and similar platforms.

    b.    Content Sharing & Video Platforms – YouTube, Vimeo, Twitch, Rumble, or similar services where videos, reels, or live content can be uploaded or streamed.

    c.    Email, Messaging Applications & Direct Communication Platforms – Including, but not limited to, Gmail, Outlook, WhatsApp, Telegram, Signal, Discord, Slack, Facebook Messenger, Instagram DMs, Twitter DMs, or any private messaging feature within a social media platform.

    d.    Blogging & Forum Sites – Medium, Substack, WordPress, 4chan, 8kun, or any other user-generated content site where written materials are published.

    e.    Influencer & Review-Based Platforms – Yelp, Glassdoor, Trustpilot, Google Reviews, Patreon, or any website where reputational impact can be influenced.

    f.    Advertising & Promotional Services – Paid sponsorships, influencer partnerships, promoted posts, advertisements, bots, or algorithm-driven visibility campaigns.

g.     Automated or Third-Party Content Management Tools – Hootsuite, Buffer, Sprout Social, or any platform used to schedule, automate, or track social media activity.

h.     Any Other Online Presence – Any additional websites, forums, private groups, or digital spaces where content related to Plaintiff was discussed, posted, or promoted.

i.     Without limiting the foregoing in any manner, and by way of example only, this definition includes: all original posts, reposts, shares, likes, comments, hashtags, memes, images, videos, stories, threads, and reactions; all drafts, deleted posts, or unpublished content related to Plaintiff; all engagement metrics, analytics, reports, or logs reflecting interactions with content; and all metadata, timestamps, IP addresses, geolocation data, or user activity logs related to content.

34.    "Content Creator" shall refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates.

35.    "Sony" shall refer to Sony Pictures Entertainment, and its past or present officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

36.    "Sarowitz" shall refer to Steve Sarowitz, who is a party to the Action.

37.    "Street Relations" shall refer to the entity Street Relations, Inc., who is a party to this Action, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Jed Wallace.

38.     "TAG" shall refer to The Agency Group PR LLC, which is a party to the Action, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

39.     "Vision PR Parties" refers to Defendants Leslie Sloane and Vision PR, Inc., in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL.

40.     "Wallace" shall refer to Jed Wallace, who is a party to the Action.

41.     "Wayfarer" shall refer to Defendant Wayfarer Studios LLC, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

42.     "Wayfarer SDNY Complaint" shall refer to the Complaint, Dkt. No. 1, the First Amended Complaint, Dkt. No. 50, and any other amended complaints filed by Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends with Us Movie LLC, Melissa Nathan, and Jennifer Abel in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL, as consolidated.

43.     "Wayfarer New York Times Action" shall refer to the lawsuit entitled *Wayfarer Studios LLC et al. v. The New York Times Company*, No. 24STCV34662, filed in the Superior Court of California, County of Los Angeles.

44.     "Wayfarer Defendants" shall refer, individually and collectively, to Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, Wallace, and Street Relations.

45.     "WME" shall refer to William Morris Endeavor Entertainment Agency, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

46.     "You," "Your," or "Yours" refers to Google LLC, D/B/A Youtube, and any of its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, assigns, or any related entity.

## INSTRUCTIONS

1.      In addition to the specific instructions below, these Requests incorporate by reference the instructions set forth in Rule 45 of the Federal Rules of Civil Procedure.

2.      In responding to these Requests, You shall make a diligent search and produce all responsive Documents that are (i) in Your possession, custody, or control, or (ii) in the possession, custody, or control of any of Your agents, employees, attorneys, accountants, or other representatives or anyone acting on Your behalf, or under Your direction or control, or (iii) otherwise available to You. A Document shall be deemed within Your control if You have the right to secure the document or a copy of the Document from another Person having possession, custody, or control of the Document.

3.      Unless otherwise specified, each Request concerns the time period from May 1, 2024 through the present.

4.      In construing these Requests, You should give effect to the Definitions set forth above. Undefined words and terms shall be given their common meaning. If You are unsure of the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response.

5.      If You do not clearly understand, or have any questions about the definitions or instructions for any Request, please promptly contact counsel for Ms. Lively for clarification.

6.      These Requests should be construed as broadly as possible with all doubts resolved in favor of production. If you believe a Request is ambiguous, use the broadest reasonable interpretation as permitted under the Federal Rules of Civil Procedure and state the nature of the perceived ambiguity and the interpretation used to resolve it. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive. Except as specifically provided in these Requests, words imparting

the singular shall include plural, and vice versa, where appropriate. Except as specifically provided in these Requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate.

7.      For any hard copy production, all documents produced shall be produced as kept in the ordinary course, including identification of the applicable file folder and source. The original of each document requested shall be produced, or an identical copy of each document, imprinted with a Bates identification number. Documents attached to other documents or materials shall not be separated. Documents not otherwise responsive to these requests shall be produced if such documents are attached to documents called for by the Requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials, or mention, discuss, refer to, or explain the documents that are called for by the Requests.

8.      For any hard copy production, identical copies of a document need not be produced. Any copy of a document that varies from the original, whether by reason of handwritten or other notation or any omission, or metadata associated with a file, shall constitute a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control.

9.      If an objection is made to any portion of any Request, (a) state with specificity the objection and legal basis for such objection; (b) state whether any responsive materials are being withheld on the basis of that objection; and (c) answer all remaining portions of the Request to which an objection is not asserted.

10.     If any responsive document is withheld in whole or in part under a claim of privilege or other ground, as to each such document, identify the privilege or other ground being

asserted and provide the following information in sufficient detail to permit the Court to evaluate Your claim:

a.    date, author, addressees, Persons carbon copied or blind carbon copied, including the relationship of those Persons to You or the author of the document;

b.    brief description sufficient to identify the type, subject matter, and purpose of the document;

c.    all Persons to whom the document's contents have been disclosed;

d.    the party who is asserting the privilege;

e.    the nature of the privilege, immunity or protection asserted, the Person(s);

f.    asserting the privilege, immunity or protection, and/or the specific reason why the Document is not being produced; and

g.    the same information referenced in 10(a)-(f) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production.

11.    If a portion of any responsive document is withheld under a claim of privilege or other ground, any non-privileged portion of the document must be produced with the withheld portion redacted, with the redaction language indicating that the information is being withheld for privilege.

12.    If any responsive document was, but no longer is, in Your possession, custody, or control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of; and (e) in each instance identify the contents,

author(s), date prepared or received, name and address of its current or last known custodian, and the date and circumstances surrounding such disposition.

13.    To the extent that the native format for transactional or other data responsive to these Requests is not compatible with Microsoft Office products (*e.g.*, Microsoft Excel, Microsoft Word, Microsoft Access, etc.), the data shall be produced in a usable format. If You need assistance in determining what constitutes a usable format, You shall promptly contact Ms. Lively's counsel.

14.    These Requests are continuing in nature and all documents coming into Your possession, custody or control which would have been produced had they been available earlier shall be produced forthwith.

15.    Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## PRODUCTION OF ESI

1.    Format: ESI should be produced in load-ready standard format, including single-page, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, and Documents with tracked changes reflected in the metadata, which should be produced in native format. If an original Document contains color, the Document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of sent email messages should include the BCC line.

2.    Format – Native Files: Spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, CSV) and Media files (*e.g.*, .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format, except where such files are redacted. For Google Documents, production of an export in

11

a comparable format will constitute native production (*e.g.*, Google Sheets Document exported in Microsoft Excel format). A TIFF placeholder endorsed with the corresponding Bates number and confidentiality designation (if any) shall be produced for all ESI produced in Native Format.

3.      Word Documents and PowerPoint Documents shall be produced in both native and TIFF format, with track changes and speaker notes imaged.

4.      De-Duplication: Each party shall remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication should be done across the entire collection (global de-duplication) and the ALL CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that Document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that Document. Should the ALL CUSTODIAN or FILEPATH metadata fields produced become outdated due to processing of additional data or production of documents of additional custodians, an overlay file providing all the custodians and file paths for the affected Documents should be produced prior to substantial completion of the Document production.

5.      Technology-Assisted Review/Analytics: Predictive coding/technology-assisted review shall not be used for the purpose of culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding an agreeable protocol for the use of such technologies. Before threading is used to reduce the volume of emails to review, the producing party shall reach out to Ms. Lively's counsel

to ensure the process being utilized by the vendor is industry standard. If it is agreed that threading may be used to reduce the volume of documents to produce, the producing party shall produce the Inclusive emails, defined as those emails within an email thread containing all unique content as determined by commonly accepted analytics tools. An additional metadata field containing the *Thread ID* shall be produced so that Inclusive emails can be reviewed together. The requesting party may request the production of a lesser-included email or emails, and any such reasonable request(s) shall not be refused where the Document is available in the producing party's Document collection.

6.      Metadata: Metadata produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: BegBates, EndBates, AttachRange, BegAttach, EndAttach, ParentID, ChildID(s), AllCustodian, FilePath, Subject, From, To, CC, BCC, DateSent, TimeSent, DateReceived, TimeReceived, FileType (*e.g.*, Email, Attachment, Loose File, Hard Copy), FileName, Author, DateCreated, DateModified, MD5 Hash (or SHA-1, whichever is used for deduplication), File Size, FileExtension, DocLink, and TextPath.

7.      Message Metadata: In addition to the fields listed in Section 6 above, Metadata for text and chat messages produced will include the following fields of information, to the extent such information exists and can be readily provided through reasonable efforts: Message Thread ID, Message Participants, Message From, Message To, Message DateTime Sent, Message Application Name (*e.g.*, Signal, WhatsApp, etc.)., Message Deleted, Message Deleted on, Message Deleted By, Message Edited, Message Edited On, Message Edited By.

8.      Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any information to be redacted on the basis of

privilege. The parties should meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent email.

9.  Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted.

10.  Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

11.  Encryption: To maximize the security of information in transit, any media on which Documents are produced may be encrypted. In such cases, the producing party shall transmit productions via SFTP. If that is not possible, parties should discuss with counsel for Ms. Lively and transmit the encryption key or password to the receiving party, or by phone call or text message, contemporaneously with sending the encrypted media.

12.  Redactions: If excels are to be redacted, redactions must be applied natively. If other Documents that the parties have agreed to produce only in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## DOCUMENTS TO BE PRODUCED

**REQUEST FOR PRODUCTION NO. 1:**

All subscriber information, for the username ███████, associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 2:**

All subscriber information, for the username ██████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 3:**

All subscriber information, for the username ███████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 4:**

All subscriber information, for the username ███████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 5:**

All subscriber information, for the username @LethalLauren904 associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 6:**

All subscriber information, for the username ███████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 7:**

All subscriber information, for the username ████████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 8:**

All subscriber information, for the username ████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 9:**

All subscriber information, for the username ████████████ associated with Youtube and GooglePay, including but not limited to: (a) the first and last name; (b) registered email addresses; (c) phone number(s); (d) physical address; (e) backup/recovery email address or

phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 10:**

All subscriber information, for the username ███████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 11:**

All subscriber information, for the username ███████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service

(including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 12:**

All subscriber information, for the username ███████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 13:**

All subscriber information, for the username ███████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; d) physical address; (e) backup/recovery email address or phone number;

20

f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 14:**

All subscriber information, for the username ████████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 15:**

All subscriber information, for the username ████████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment

for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

**REQUEST FOR PRODUCTION NO. 16:**

All subscriber information, for the username ███████████ associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

# EXHIBIT B

(Copy of Letter Motion to Compel Defendant The Agency Group PR LLC to de-
designate as confidential and Attorneys' Eyes Only The Agency Group's June 25, 2025
Second Supplemental Responses and Objections to Ms. Lively's First Set of
Interrogatories, filed by Esra Hudson on behalf of Plaintiff Blake Lively)

# manatt

**Esra A. Hudson**
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

July 18, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Lively v. Wayfarer Studios LLC et al.*, No. 24-cv-10049 (LJL)

Dear Judge Liman:

      Plaintiff Blake Lively ("Plaintiff") writes to respectfully request that the Court compel[1] Defendant The Agency Group PR LLC ("TAG"), Defendant Melissa Nathan's self-proclaimed "reputation management" company, to de-designate as confidential and Attorneys' Eyes Only ("AEO") TAG's June 25, 2025 Second Supplemental Responses and Objections to Ms. Lively's First Set of Interrogatories (the "Interrogatories," and TAG's responses, the "Interrogatory Responses"). The Interrogatory Responses identify individuals and media outlets with whom TAG communicated about Ms. Lively and topics related to this lawsuit. This information does not constitute "trade secrets" under the parties' Protective Order (*see* Dkt. No. 125), as TAG claims, and the designations are thus improper. The Court should not permit TAG to manipulate the discovery process to perpetuate the same harms that got it sued in the first place.

      A core component of Ms. Lively's claims center on the Defendants and Cross-Complainants Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), It Ends With Us Movie LLC, Melissa Nathan ("Nathan"), TAG, Jennifer Abel ("Abel"), and Steve Sarowitz ("Sarowitz," and collectively with Wayfarer, Baldoni, Heath, It Ends With Us Movie LLC, Nathan, TAG, Abel, the "Wayfarer Parties") digital media "smear campaign," which sought to manipulate the media landscape using "untraceable" sources to paint Ms. Lively as the *aggressor*, instead of the victim. *See, e.g.*, Dkt. No. 84 at ¶¶ 29-45, 303. Seemingly unable to abandon this playbook,[2] TAG's Interrogatory Responses yet again attempt to bend reality to the Wayfarer Parties' ends.

      On March 14, 2025, Ms. Lively propounded the Interrogatories on TAG seeking the identities of online personalities, or "content creators," and others with whom TAG communicated about Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, or the Lively/Reynolds

---

[1] Ms. Lively brings this letter-motion pursuant to the March 13, 2025 Protective Order. *See* Dkt. No. 125 at 5, ¶ 9 (addressing disputes in accordance with ¶ 1(C) of Court's Individual Practices in Civil Cases); Court's Individual Practices in Civil Cases, ¶ 1(C) ("Motions…to compel discovery…may be made by letter-motion.").

[2] As *Amici* in this case have noted, the Wayfarer Defendants have employed tactics frequently relied upon by individuals accused of sexual misconduct to recast the abused as the abuser. *See* Dkt. No. 242-1 at 6 (explaining that the accused "deny the abuse, attack their victims' credibility, and cast themselves as the real 'victim'—a tactic psychologists term 'DARVO' or 'Deny, Attack, Reverse Victim and Offender[.]'"). The Court has not ruled on *Amici*'s request for leave to file their *Amicus* briefs.

Hon. Lewis J. Liman
July 18, 2025
Page 2

Companies (as defined in the Interrogatories). Specifically, Interrogatory No. 5 asked TAG to: "Identify all Content Creators with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present." On June 18, 2025, Ms. Lively propounded similar interrogatories on Heath, Baldoni, In Ends With Us Movie LLC, Abel, Wayfarer, Sarowitz, and Nathan, and those responses are due on July 18, 2025.

After TAG was ordered to respond to the Interrogatories (*see* Dkt. No. 355), TAG supplemented its responses, identifying a number of individuals who have spoken publicly about Ms. Lively and this lawsuit, apparently at the behest of TAG and the other Wayfarer Defendants. *See* Roeser Decl., Ex. 1. Despite the factual nature of this information, TAG unilaterally designated its responses as confidential and "Attorneys' Eyes Only," thus obscuring TAG as the source of this information, and allowing the Wayfarer Defendants to once again recast Ms. Lively as the aggressor in pursuing subsequent discovery (which is exactly what has transpired).[3]

During meet and confer discussions, TAG's counsel primarily claimed that its Interrogatory Responses constituted "trade secrets," which if disclosed, could somehow harm TAG's business. *See* Roeser Decl. at ¶ 4. Not so. The Protective Order limits confidentiality and AEO designations to "nonpublic material the public disclosure of which…will cause harm to the business, commercial, financial, or personal interests of the producing person and/or a third party to whom a duty of confidentiality is owed." Dkt. No. 125 at 3, ¶ 2. The Protective Order further limits AEO designations to "Confidential Discovery Material of such a highly confidential and personal, sensitive, or proprietary nature that the revelation of such is highly likely to cause a significant competitive, business, commercial, financial, or privacy injury to the producing party." *Id*. at 2, ¶ 1. And while "trade secrets" can be designated as confidential and AEO, those protections are diminished for confidential strategies and other information ***related to the parties to this litigation***. *See id*. at 2, ¶ 1(a). TAG's counsel has provided ***no*** facts to support their assertion that the identity of third parties could somehow constitute "trade secrets," nor can they explain how this information could be so sensitive as to cause harm to TAG—especially where many of these individuals have already spoken publicly about Ms. Lively and this case. Indeed, the information TAG has designated as confidential and AEO all relates to TAG's work for the Wayfarer Parties themselves. TAG's confidential and AEO designations are therefore plainly improper, and the Court should order TAG to de-designate them.

Moreover, these mis-designations are having very real impacts. For example, if Ms. Lively issues subpoenas related to individuals identified in TAG's Interrogatory Responses to marshal evidence about their involvement in the "smear campaign," she will be hindered in her ability to meet and confer or respond to questions, and will be unable to explain to such subpoenaed parties that the discovery directed towards them is based in part on the fact that TAG identified them. Content creators who have been the subject of discovery have already painted Ms. Lively as the

---

[3] This is particularly ironic given that TAG's counsel initially resisted including an AEO designation in the Protective Order at all, citing concerns that the designation might be overused. *See* Dkt. 124 at 10 (noting that the Wayfarer Parties "express[ed] concerns that the AEO provision will be overused and that the party opposing such designation will be required to consistently bear the burden of having information de-designated, instead of the party seeking designation being required to support it in the first instance.").

Hon. Lewis J. Liman
July 18, 2025
Page 3

the aggressor in this lawsuit and have drawn a false equivalency between her discovery efforts and the Wayfarer Parties' alleged smear campaign. One subpoenaed content creator even went so far as to **record a call with a receptionist from Ms. Lively's attorney's office without express consent and then posted the recording on YouTube.**[4] *See* Popcorned Planet, *ITS REAL!? We Called Blake Lively's Lawyers - THEY LIED TO US!?*, YouTube (July 11, 2025), https://www.youtube.com/watch?app=desktop&v=Rzen-Sa8e40&feature=youtu.be. This content creator further used the recording to make false, inflammatory remarks about Ms. Lively and her counsel, and is seeking to fundraise based on the recording and his remarks. *See id*. The bottom line is that the concern about being hamstrung in being able to tie her discovery to the Wayfarer Parties' discovery responses further exacerbates public backlash against Ms. Lively, which she should not have to endure when there is no conceivable privacy interest that TAG and others are protecting.

History is now at risk of repeating itself. Because of TAG's mis-designated Interrogatory Responses, Ms. Lively is yet again being forced to battle an "untraceable" campaign, unable to defend herself against misinformation online. While TAG may have been able to obscure its contacts in connection with the initial "smear campaign," it cannot do so here. For these reasons, Ms. Lively asks the Court to compel TAG to de-designate its Interrogatory Responses as confidential and "Attorney's Eyes Only" under the parties' Protective Order, and make clear that any similar confidential and AEO designations the other Wayfarer Parties may seek to use in connection with the interrogatory responses due on July 18, 2025 would likewise be improper.

Respectfully submitted,

/s/ Esra A. Hudson

<table>
<tr><td>

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
787 7th Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

</td><td>

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac* vice)
Stephanie A. Roeser (admitted *pro hac v*ice)
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

</td></tr>
</table>

---

[4] Recording "confidential communications" without the consent of all parties is a crime in California, where the receptionist is based. Cal. Pen. Code § 632.

- 3 -

Hon. Lewis J. Liman
July 18, 2025
Page 4

DUNN ISAACSON RHEE LLP
Meryl C. Governski (admitted *pro hac vice*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

*Attorneys for Blake Lively*

# EXHIBIT C

(Email correspondence with attorneys for Manatt Phelps & Phillips, LLP)

 Gmail

**Lauren Neidigh <lneidigh2011@gmail.com>**

## Google notice of subpoena

**Lauren Neidigh** <lneidigh2011@gmail.com>                                                    Thu, Jul 10, 2025 at 5:14 PM
To: EHudson@manatt.com

Ms. Hudson,

My name is Lauren Neidigh. I received a notice from google that they received a subpoena for information related to my google account. You were listed as the attorney. What kind of information are you seeking?

Lauren

 Gmail

**Lauren Neidigh <lneidigh2011@gmail.com>**

---

## Follow up on subpoena

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                          Sun, Jul 13, 2025 at 2:42 PM
To: EHudson@manatt.com

Ms. Hudson,

I'm writing to follow up regarding a notification I received from Google informing me that you have served them with a subpoena seeking information related to my Google account. There has been some confusion around the legitimacy of the notification, but representatives for Google say it is legitimate. I would like to confirm with you. Did you serve Google with a subpoena seeking information related to my account @LethalLauren904?

Lauren Neidigh

 Gmail

**Lauren Neidigh <lneidigh2011@gmail.com>**

## Lively v. Wayfarer Studios et al.

**Manatt Information** <info@manatt.com>                                      Mon, Jul 14, 2025 at 4:53 PM
To: "lneidigh2011@gmail.com" <lneidigh2011@gmail.com>

We understand that Google may have provided you notice of Ms. Lively's subpoena to Google (the "Subpoena") for certain information relating to account @LethalLauren904.  The Subpoena (redacted to reflect this account) is attached as confirmation. Please note that the Subpoena seeks subscriber information and does not seek content such as emails, messages, or related information. If you are seeking clarification on the deadline for any action, you should confer with Google.


Regards,

Manatt, Phelps & Phillips, LLP

---

📄 **Lively Subpoena to Google dba Youtube - LethalLauren904.pdf**
895K

 Gmail

**Lauren Neidigh <lneidigh2011@gmail.com>**

---

### Lively v. Wayfarer Studios et al.

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                                        Tue, Jul 15, 2025 at 7:31 PM
To: Manatt Information <info@manatt.com>
Cc: EHudson@manatt.com

I intend to file a motion to quash in this matter. The deadline I have been given is 7/31. I will be representing myself.

I have some questions for you. On what grounds are you seeking this information? I would like an offer of proof as to what exactly you are seeking and why. How is this relevant to the litigation at hand?

Lauren Neidigh

[Quoted text hidden]

 **Gmail**

Lauren Neidigh <lneidigh2011@gmail.com>

---

## Lively v. Wayfarer Studios et al.

---

**Moses, Sarah** <SMoses@manatt.com>                                      Tue, Jul 15, 2025 at 7:57 PM
To: "lneidigh2011@gmail.com" <lneidigh2011@gmail.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>

Lauren,


We received your message below. We are happy to discuss at your convenience.



**Sarah Moses**

Partner

———————————

**Manatt, Phelps & Phillips,** LLP

2049 Century Park East
Suite 1700

Los Angeles, CA 90067

**D** (310) 312-4128 **F** (310) 312-4224

SMoses@manatt.com



**manatt.com**

---

**From:** Lauren Neidigh <lneidigh2011@gmail.com>
**Sent:** Tuesday, July 15, 2025 7:31 PM
**To:** Manatt Information <info@manatt.com>
**Cc:** Hudson, Esra <EHudson@manatt.com>
**Subject:** Re: Lively v. Wayfarer Studios et al.

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

[Quoted text hidden]

 **Gmail**

Lauren Neidigh <lneidigh2011@gmail.com>

---

## Lively v. Wayfarer Studios et al.

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                                    Tue, Jul 15, 2025 at 7:59 PM
To: "Moses, Sarah" <SMoses@manatt.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>

Hi Sarah. Thank you. Do you have any availability in the late afternoon tomorrow or Thursday?

[Quoted text hidden]



**Lauren Neidigh <lneidigh2011@gmail.com>**

---

## Lively v. Wayfarer Studios et al.

---

**Moses, Sarah** <SMoses@manatt.com>                                     Tue, Jul 15, 2025 at 8:00 PM
To: Lauren Neidigh <lneidigh2011@gmail.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>

What time zone are you in?

**Sarah Moses**

Partner

---

**Manatt, Phelps & Phillips,** LLP

2049 Century Park East
Suite 1700

Los Angeles, CA 90067

**D** (310) 312-4128 **F** (310) 312-4224

SMoses@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

[Quoted text hidden]

 Gmail

Lauren Neidigh <lneidigh2011@gmail.com>

---

## Lively v. Wayfarer Studios et al.

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                                    Tue, Jul 15, 2025 at 10:52 PM
To: "Moses, Sarah" <SMoses@manatt.com>

Sorry for the delay. I was on a flight. I'm in EST.

[Quoted text hidden]



**Lauren Neidigh <lneidigh2011@gmail.com>**

---

## Lively v. Wayfarer Studios et al.

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                    Wed, Jul 16, 2025 at 11:50 AM
To: "Moses, Sarah" <SMoses@manatt.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>

Hi,

I just wanted to follow up with you on this. I am in eastern time and will be available later today or tomorrow.

Lauren
[Quoted text hidden]



**Lauren Neidigh <lneidigh2011@gmail.com>**

---

## Lively v. Wayfarer Studios et al.

---

**Moses, Sarah** <SMoses@manatt.com>                    Wed, Jul 16, 2025 at 10:36 PM
To: Lauren Neidigh <lneidigh2011@gmail.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>, "Bender, Kristin" <kbender@willkie.com>

Hi Lauren,


To provide additional context, Ms. Lively brings claims against the Wayfarer Parties in part on the basis that they engaged in a digital media "smear campaign" by planting negative stories about her in the press after she reported sexual harassment on the film *It Ends With Us*. Ms. Lively has issued subpoenas seeking information about accounts that posted such information, or otherwise engaged with that content, to determine whether the Wayfarer Parties played any role in its dissemination.


Please let me know if you have any additional questions.

[Quoted text hidden]



**Lauren Neidigh** <lneidigh2011@gmail.com>

---

## Lively v. Wayfarer Studios et al.

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                    Wed, Jul 16, 2025 at 11:58 PM
To: "Moses, Sarah" <SMoses@manatt.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>, "Bender, Kristin" <kbender@willkie.com>

Hi Sarah,

I did not cover this lawsuit or your client at all on my channel until after the official court documents came out. The only reason I did so was because I was a fan of your client's work and was therefore interested in her lawsuit. On my own, I came to the conclusion that I do not find Ms. Lively's version of events to be credible. The vast majority of what I cover on YouTube is the public court documents. I often read them aloud and share my thoughts in real time. Otherwise, I am primarily reading public information from popular news outlets. This is well documented. Why was my account chosen? What do you intend to do with my credit card or bank account information? How are my IP addresses relevant to your litigation? That information is very private and I do not feel you have reasonable grounds to access it.

Lauren Neidigh
[Quoted text hidden]



Lauren Neidigh <lneidigh2011@gmail.com>

---

## Lively v. Wayfarer Studios et al.

---

**Lauren Neidigh** <lneidigh2011@gmail.com>                          Mon, Jul 21, 2025 at 7:57 PM
To: "Moses, Sarah" <SMoses@manatt.com>
Cc: "Hudson, Esra" <EHudson@manatt.com>, "Armani, Sareen" <SArmani@manatt.com>, "Climaco, Katelyn"
<KClimaco@manatt.com>, "Roeser, Stephanie" <SRoeser@manatt.com>, "Bender, Kristin" <kbender@willkie.com>

Hi,

I would like to follow up on some of my questions that still have not been addressed. Why was my account chosen? What do you intend to do with my credit card or bank account information? How are my IP addresses relevant to your litigation? That information is very private and I do not feel you have reasonable grounds to access it.

Lauren
[Quoted text hidden]