July 27, 2025

VIA E-mail

The Honorable Lewis J. Liman
United States District Court, Southern District of New York
500 Pearl Streete
New York, New York 10007

Re: Lively v. Wayfarer Studios LLC et al., No. 24-cv-10049

Dear Judge Liman:

I respectfully submit this letter, pursuant to Your Honor's Individual Practices in Civil Cases Sections 1 and 2, to request leave to file a Motion for a Protective Order and for sanctions under FRCP 26(c) and the Court's inherent authority, against Ms. Lively, Ms. Lively's counsel, Esra Hudson, and her law firm Manatt, Phelps and Phillips for reasons detailed in this letter and its accompanying motion.

On July 3, 2025, counsel for Ms. Lively, Esra Hudson, improperly issued a single subpoena directed at 43[1] content creators on social media, many of which did not operate under their proper names, often referred to in these situations as anonymous "Doe" individuals. These 43 separate and distinct individuals were not served separately, but from one sort of "bulk" subpoena, as if the court were a Costco. This wholesale, warehouse style subpoena is even more shocking because it was served on at least three separate and distinct social media platforms and was not served all at once but rather over the course of several weeks, with different requests for each platform.

The subpoena lacked the procedural clarity required by FRCP 45(a)(1)(A)(iii), which mandates that a subpoena must be directed to an individual, named recipient. "*command **each person** to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things **in that person's** possession, custody, or control; or permit the inspection of premises*" By serving a single subpoena across different platforms and targeting dozens of unnamed individuals, the issuing party bypassed both the letter and spirit of the procedural rules.

These subpoenas were not only procedurally defective, issued in bad faith, which is a clear Abuse of Process, but also constituted an attempt to harass, intimidate, and unmask anonymous speakers without court approval or any showing of relevance or necessity. Several recipients filed motions to quash citing legal deficiencies under Rule 45, relevance, undue burden, and First Amendment concerns, which must be overcome before an anonymous user of the Internet is allowed to be unmasked (Sony Music Entertainment Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).

Rather than respond substantively, counsel for Ms. Lively strategically withdrew the subpoena after it became evident that the Motions to Quash filed by myself and other subpoenaed non-parties were meritorious. The timing strongly suggests that the withdrawal was designed to evade judicial scrutiny, review and prevent an adverse ruling from appearing on the record. Courts have repeatedly criticized this type of conduct.

---

[1]In her request to the Court for an extension of discovery, Ms. Lively related that she had submitted 60 subpoenas and needed to serve more so it remains to be seen how many more she has served or intends to serve still yet.

In addition to asking the court to withdraw the subpoena on behalf of those listed in dkt 496, she dares to strategically request *"that the Court deny the Third-Parties' Motions to Quash as moot."* Should the Court indulge this request, it would be an excellent strategy indeed, for not only would it spare her judicial review of our Motions to Quash, but as a denial of our motions, it would also appear on the court record as a ruling in her favor. More importantly, it leaves her legally questionable subpoena intact to continue to wreak havoc on other content creators already named by it and any additional CCs Ms. Lively intends to use this "buy one, get 59 free" subpoena that she informed the court she needed to extend the discovery schedule in order to continue plucking names to reuse it on, seemingly at whim, with no evidence or proper procedure behind it.

In another strategic move, Ms. Lively's counsel brings to her letter mentions of Mr. Fritz's latest filing with no relevance to Movant's situation whatsoever. Movant was not subpoenaed because of Mr. Fritz or anyone related to the Wayfarer party. Ms. Lively, to date, has failed to inform the receivers or the Court on what legal basis Movant and the other receiver's names were chosen to receive this questionable subpoena. She was caught in her lies to the public and to His Honor, when she reacted to dkt 444 and 445 by stating that our names were chosen to be subpoenaed by Ms. Lively because we were on a list provided by TAG in their interrogatories and that the criticisms being brought to Ms. Lively because of this subpoena were unfair and of Wayfarer's doing. She lied again stating that because of Wayfarer's counsel keeping the list improperly designated as AEO, Ms. Lively was being unfairly targeted and could not produce the list to defend her erroneous subpoena.

On the contrary, Ms. Lively's claims made **us** a target because her claims were believed by her supporters who quickly targeted us repeatedly quoting these lies and putting blemishes on our reputations. We were unable to defend ourselves against these lies because people put faith in legal documents filed in this court, as the public **should** be able to do. In this case, it was us, not this court's docket that held the truth and had Wayfarer not voluntarily stepped forward, stripped their AEO designation, and revealed the list to the public, our reputations would still be in question.

These circumstances make the second paragraph and image found on page one of dkt 496 especially distasteful as after such treatment, she continues to try to put forth accusations on the very document meant to release us from this subpoena.

In her continued lies to the public and His Honor, she begins a sentence with "Based on the Third Parties' representations made in meet and confers," leading you all to believe that she met and conferred with us. She did not. Although attempts were made to do so, Ms. Hudson informed those she intended to meet with that there would be upwards of 4 attorneys included in a Zoom call, outrageous as none of these receivers were legally represented, and that they would not be allowed to record the meeting in any way or have anyone else present for it. None of the receivers felt safe to speak with her under those conditions. The intimidation was keenly felt.

Ms. Hudson's misrepresentations to the public and His Honor continue when she states, *"there is no further information required from the Subpoenas as to these specific Third-Parties at this time."* Making this statement after the statement that she had met and conferred with us leaves the implication that she in fact received information from these imaginary meet and confers as she deceptively uses the words *"no further information."* It cannot be denied that in order for there to be further information, some information had to have been provided. Since these meet and confers did not take place, this simply could not have happened and did not happen.

Page two of dkt 496 does not get any better as it continues to imply there was a link between us and Wayfarer in this mythological smear campaign when she states, *"Ms. Lively's Subpoenas were one part of the discovery process aimed at gathering information to link the Wayfarer Parties' activities to sources through YouTube and X content creator accounts."* Which is an extraordinary claim since there is absolutely no link between our channels and the Wayfarer parties. Instead of these insinuations, it would have been much more helpful for her to have supplied the Court with the slightest hint as to why the names on this "bulk" subpoena were chosen or even the tiniest drop of the legal reasoning behind it, but no, she simply requests the Court to brush it away as if it never happened.

The lie is repeated that *"Ms. Lively's counsel has met and conferred with various individuals whose account information is the subject of the Subpoenas, including the Third-Parties who have filed Motions to Quash…"* when she well knows these meet and confers did not take place and then asks the Court to deny them as moot, something we object to for the reasons stated herein.

In her footnote she mentions Movant's asking the Court to revoke the subpoena as a whole, not just for Movant but for all involved and states case law informing the Court Movant does not have the power to request this on behalf of anyone else. However, the reasons Movant has stated and continues to state that make the subpoena invalid are not specific to a certain group of receivers. If the subpoena fails based on procedure, rules and standards, it fails completely as a legal document and becomes invalid for all. This is the basis on which Movant made this request to the Court.

In the following motion, Movant intends to request:

1. A protective order prohibiting Plaintiff's counsel from attempting to reissue this abusive subpoena to me on any platform I am on or the issuance of any such subpoenas to anonymous or Doe individuals without prior court approval, as is procedurally proper with Doe type subpoenas.
2. A formal finding by the court that the original subpoena was issued in bad faith and constituted abuse of process.
3. Sanctions in the form of punitive damages, to discourage Plaintiff's counsel from victimizing others in the future as Movant has been. This Motion to Quash was filed pro se and no attorney fees were incurred. It did, however, take many hours of research and writing over many days and nights, interfering with time that could have been spent creating content, leading to a loss of income. The threats of unmasking given my specific circumstances brought a great deal of anxiety and stress over the real fear of being found and victimized again, reigniting PTSD from a long-term stalking situation that required an extensive period of treatment. This intrusive subpoena, issued outside of the legal standards, has led to a resumption of therapy which I had been able to go a long time without after previous successful treatment.

Respectfully submitted Pro Se,

*/s/ Jane Doe*

Subpoenaed Non-Party @kassidyoc[2]

July 27, 2025

---

[2] Movant signs as Jane Doe pursuant to Motion for Leave to Proceed Anonymously in this Court filed on July 25, 2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Blake Lively
          (Plaintiff)
   v.

Wayfarer
          (Defendants)

Case No. 1:24-cv-10049

## POST-WITHDRAWAL MOTION FOR PROTECTIVE ORDER AND SANCTIONS DUE TO ABUSE OF PROCESS IN BAD FAITH ISSUANCE OF SUBPOENA AND STRATEGIC WITHDRAWAL

Pursuant to FRCP 26(c) and the Court's inherent authority to deter abuse of judicial process, Movant, appearing pro se, respectfully moves the Court for a Protective Order barring further misuse of subpoena power and also sanctions, including punitive damages, against Ms. Lively, her counsel, and counsel's law firm for improper issuance of a bad faith, "bulk" subpoena and strategic withdrawal of subpoenas served on 43 content creators (many of which operate without their proper names, thereby Does), spanning three separate and distinct platforms, on different dates with some issued weeks apart, requesting different and distinct information, and served via these social media platforms.

## I. BACKGROUND

Beginning on July 3, 2025, Plaintiff's Counsel, Esra Hudson, issued and attempted to serve one subpoena to cover over 40 mostly anonymous individuals via social media platforms, seeking broad and undefined categories of information. This subpoena amounted to a baseless fishing expedition as a last-ditch, desperate effort to find some scrap of evidence to support the alleged "smear campaign" that appears to only exist in Plaintiff's imagination.

After several recipients filed Motions to Quash detailing the subpoena's astonishing overbreadth, lack of relevance, procedural defects, and improper purpose, Plaintiff's Counsel, Esra Hudson, strategically withdrew the subpoena, specifying it was withdrawn only on behalf of those who had filed these motions, but should stay intact for all others, in an obvious attempt to block judicial review and any ruling the Court would issue based upon the legal applications outlined in these Motions to Quash. In short, it is a continuation of Plaintiff's counsel's abuse of the issuance and application of subpoena power that began long before this lawsuit, when Counsel's law firm issued a sham subpoena on behalf of Ms. Lively, using a shell company that now names Ms. Lively's husband, Ryan Reynolds, as CEO, (which makes it even more of a mystery how such a company could file a lawsuit related to Wayfarer parties), issued a Doe type subpoena under the guise of "breach of contract" to be served on up to 10 Does, but was only served upon Stephanie Jones of Jonesworks, Jennifer Abel's former employer, and served only to capture from Ms. Jones, the contents of Ms. Abel's phone that she had obtained under questionable circumstances that are now being investigated in this lawsuit. Ms. Lively and her counsel make a mockery of the legal process, the court under which they secretly filed the Vanzan sham lawsuit and now attempt to do the same to this esteemed federal court.

It's interesting to note that when a similar situation regarding an out of jurisdiction subpoena was issued to Taylor Swift, via a docket in its proper jurisdiction in DC, Plaintiff's Counsel had plenty to say about it, even feeling the need to bring it to this Court's docket, as well as making multiple statements to mainstream media.

The Court's quick and decisive action to strike a filing from its docket as "irrelevant to any issue before this court" when it pertained to that out of district subpoena should be repeated in the case of this out of district subpoena. The Court was so determined to keep filings regarding the out of district Taylor Swift subpoena from its docket, it saw fit to swiftly and sternly further strike an additional document from the docket sua sponte, or without a request being made by either party.

The withdrawal of this subpoena as it pertains to these 5 receivers occurred only after it became evident that the subpoenas could not survive judicial scrutiny under Rule 45, First Amendment protections for anonymous speech, relevant case law, and standards (specifically, the Nixon Standard).

This conduct has created prejudice and harm, including: chilling anonymous, protected expression; coercive impact on non-parties; and denial of judicial determination on the abusive use of process.

## II. LEGAL STANDARD

A. A party may move for a Protective order under Rule 26(c) to shield themselves or others from: *"...annoyance, embarrassment, oppression, or undue burden or expense."* FRCP. 26(c)(1). Courts have inherent authority to sanction litigation misconduct, including bad-faith issuance of subpoenas and manipulation of procedure to avoid accountability. **Chambers v. NASCO, Inc**., 501 U.S. 32, 45 (1991): *"[C]ourts may fashion an appropriate sanction for conduct which abuses the judicial process.*" The Supreme Court confirmed that federal courts possess inherent authority to issue sanctions for conduct that abuses the judicial process, even when such conduct may not violate an explicit rule. This power includes imposing sanctions for bad-faith misuse of discovery tools, such as subpoenas, where a party engages in tactics that are coercive, oppressive, or designed to harass or obstruct. The Court held: *"A court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."* And further: *"The inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct, because these rules are not substitutes for the inherent power."* This means a court may go beyond Rule 11, Rule 26, or Rule 45 and use its inherent authority to prevent abuse of process where a party misuses judicial tools to: Harass third parties, intimidate or retaliate against opponents, circumvent proper procedure, or withdraw problematic filings to avoid court scrutiny.

In **Reyes v. City of New York**, No. 00-CIV-2300, 2000 WL 1528239 (S.D.N.Y. Oct. 16, 2000), the Southern District of New York addressed the misuse of subpoenas as an improper litigation tactic. The court held that Rule 45 subpoenas may not be used to harass, intimidate, or pressure individuals, especially where there is no legitimate evidentiary purpose. In *Reyes*, the court emphasized: *"Subpoenas issued for the purpose of intimidation or harassment, or that seek irrelevant information, are an abuse of process"* Further, *"Rule 45 was not intended as a vehicle for oppression or tactics that chill participation in judicial proceedings."* The court strongly condemned the attempt to misuse discovery power and reminded litigants that Rule 45 must be used in good faith and with procedural propriety.

In **East Point Sys., Inc. v. Maxim**, No. 3:13-cv-00215, 2015 WL 791008 (D. Conn. Feb. 24, 2015), the U.S. District Court for the District of Connecticut (within the Second Circuit) held that issuing subpoenas without proper notice and overbroad in scope, constitutes misuse of Rule 45 and may be grounds for sanctions under Rule 45(d)(1). The court found that the subpoenas were not issued to obtain admissible evidence but were instead *"a means of harassment and a litigation tactic."* The court stated, *"Serving a subpoena without notice and for an improper purpose is sanctionable under Rule 45(d)(1)."* The court also reaffirmed that, *"The subpoena power is not a license to intimidate or to obtain irrelevant or confidential information for strategic leverage."* The court granted sanctions and emphasized that litigants who weaponize Rule 45 to pressure or punish individuals, particularly when the discovery sought is overbroad, irrelevant, or served without procedural compliance, violate both the spirit and letter of the Federal Rules.

B. It is well-established that subpoenas issued under Rule 45 must be directed to a single individual or entity. Courts have routinely held that the aggregation of multiple recipients under one subpoena, especially, when unnamed or anonymous, renders the subpoena unenforceable.

   1. **In re Subpoena to Cisco Sys., Inc.**, 2021 WL 1193000, at *2 (N.D. Cal. Mar. 30, 2021); The court struck a subpoena that named multiple parties and failed to comply with specificity and personal service rules, stating: *"Each subpoena must be individually addressed and cannot aggregate multiple individuals or entities. Rule 45 does not permit generalized discovery instruments."*
   2. **Malibu Media, LLC v. Does 1–10,** 2012 WL 3104887, at *3 (C.D. Cal. July 30, 2012); *"A subpoena may only be issued to a specific, identified recipient and must meet procedural requirements... It is improper to issue a single subpoena to compel information on multiple third parties."* This is especially relevant in Doe/unmasking cases. Courts rejected bulk subpoenas even when IP addresses were listed.
   3. **Mann v. Univ. of Cincinnati**, 152 F.R.D. 119, 123 (S.D. Ohio 1993). *"It is axiomatic that a subpoena must be directed at a specific individual or entity... Otherwise, enforcement would be impossible and due process compromised."* This case is widely cited in procedural abuse cases.

## III. ARGUMENT

A. The Subpoena Was Issued in Bad Faith. The record supports the inference that the subpoena was:

   1. Overbroad, lacking specificity, and invasive.
   2. Issued outside this Court's jurisdiction.
   3. Directed at anonymous nonparties without court leave.
   4. Lacked sound legal basis for issuance.
   5. Served via improper channels (social media) also without court leave.
   6. Over 40 content creators were served from one "bulk" subpoena with different dates, requests, and on different platforms.

B. The subpoena was issued as a fishing expedition. This violates Rule 45(d), and more broadly, the Nixon standard (418 U.S. at 699–700). In United States v. Nixon, 418 U.S. 683 (1974), where the Supreme Court set forth the foundational standard governing the issuance and enforcement of subpoenas, particularly those seeking documents or testimony from third parties. Though the Nixon case involved a criminal subpoena, courts across circuits have consistently applied it to

civil cases outlining an impermissible fishing expedition or undue burden. The Court held that: *"The subpoena must be: (1) relevant; (2) admissible; and (3) specific. The application must be made in good faith and not intended as a general 'fishing expedition.'"* **United States v. Nixon, 418 U.S. at 699–700.** This three-part test demands that the party issuing the subpoena demonstrate:

1. The materials sought are evidentiary and relevant to the case.
2. That the evidence is not otherwise procurable through less burdensome means.
3. That the subpoena describes the evidence with sufficient specificity to avoid imposing an undue burden or producing irrelevant material.

Courts routinely apply the Nixon standard to civil Rule 45 subpoenas to prevent misuse of the discovery process, including when subpoenas are: Overly broad or vague; not tailored to any specific claim or defense; used to intimidate or unmask anonymous parties; or issued in bad faith without a legitimate evidentiary goal.

Federal courts, including those within the Second Circuit, have confirmed that Nixon's standards are not limited to criminal cases. See:

1. **In re Subpoena to Loeb & Loeb LLP**, No. 19 Misc. 241 (PAE), 2019 WL 2428704, at *3 (S.D.N.Y. June 11, 2019): *"The Court must enforce the Nixon standard against overly broad civil subpoenas. Relevance, specificity, and necessity remain threshold requirements."*
2. **Concord Boat Corp. v. Brunswick Corp**., 169 F.R.D. 44, 49 (S.D.N.Y. 1996): *"Subpoenas that fail to specify the subject matter with precision violate both Rule 45 and the standards of Nixon."*
3. **Anwar v. Fairfield Greenwich Ltd**., 297 F.R.D. 223, 226 (S.D.N.Y. 2013): *"Rule 45 subpoenas must be narrowly tailored. They must avoid undue burden and conform to the standard articulated in United States v. Nixon."*

Thus, courts have not only upheld Nixon as binding precedent on discovery scope, but also emphasized that a party's failure to meet all three prongs renders a subpoena facially invalid and subject to quashing or sanctions under Rule 45(d).

C. In this case, the subpoena at issue fails every element of the Nixon test:

1. It is not specific. It is directed at 43 individuals, most of which are known by platform pseudonyms, without tailored requests.
2. It is not shown to be relevant. No factual nexus or evidentiary purpose is articulated.
3. It was issued as part of an apparent fishing expedition, and strategically withdrawn when challenged.
   Accordingly, under United States v. Nixon, and consistent with Rule 45(d)(3)(A), the subpoena should be declared an abuse of process and a protective order granted to prohibit further improper issuance.

D. Strategic withdrawal shows conscious and deliberate avoidance of accountability. Opposing counsel did not withdraw the subpoena until facing detailed legal objections and still has not withdrawn it from the remaining subjects it was issued to who have not yet filed Motions to Quash either out of fear, lack of knowledge or ability of how to do so, or possibly have not yet

discovered the subpoena due to notice going to spam, or having lost access to an old email. This strategic withdrawal:

1. Avoids adverse judicial precedent.
2. Prevents a court order that might restrict future conduct.
3. Evades responsibility for the intimidation and burden already inflicted.

Courts have sanctioned parties for this tactic, recognizing it as manipulative and obstructive of judicial function.

## IV. RELIEF REQUESTED

Movant respectfully requests that the Court:

1. Enter a protective order barring a reissue of this subpoena upon Movant on any platform and to bar any further subpoenas to anonymous or nonparty individuals without court leave.
2. Award punitive damages as a sanction for abuse of process.
3. Enter a formal finding on the record that the subpoena was withdrawn in the face of meritorious legal challenges to protect the record from manipulation; and
4. Grant any other relief the Court deems just and proper.

Respectfully submitted Pro Se,

*/s/ Jane Doe*

Subpoenaed Non-Party @kassidyoc

July 27, 2025

---

[2] Movant signs as Jane Doe pursuant to Motion for Leave to Proceed Anonymously in this Court filed on July 25, 2025