**\*\*REDACTED VERSION - PUBLICLY FILED PURSUANT TO MOTION TO SEAL\*\***

*Filed Pursuant to Motion to Proceed Anonymously and for Protective Order*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE: SUBPOENAS TO TIKTOK FOR INFORMATION FROM**
**SOCIAL MEDIA CONTENT CREATORS 1–7,**

**Case Nos. 1:24-cv-10049-LJL; 1:25-cv-00449-LJL**

**MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

**BY NON-PARTY MOVANTS JANE DOE 1 AND JANE DOE 2**
**ACTING ON BEHALF OF @POP.DIARIES**

# MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c), non-party movants Jane Doe 1 and Jane Doe 2 (collectively, "Movants"), by and through this pro se motion, respectfully request that this Court:

1. Quash the subpoena issued by Plaintiff Blake Lively to TikTok Inc. dated July 3, 2025;

2. Grant leave for Movants to proceed under pseudonyms;

3. Issue a protective order prohibiting disclosure of Movants' identities absent a showing of good cause and leave of court. Movants are private individuals who participated in lawful online conversation. The Constitution does not permit the unmasking of critics simply because they voiced unpopular opinions about a public figure.

# I. INTRODUCTION

Plaintiff's subpoena to TikTok, filed at Dkt. 459-2 on July 21, 2025, seeks identifying information and metadata for the TikTok account @pop.diaries, among others. Movants are the creators behind Pop.Diaries, a TikTok account and registered partnership that covers pop culture commentary. On July 22, 2025, Movants learned through public social media discourse, not formal service, that Plaintiff Blake Lively had issued a subpoena to TikTok Inc. seeking not just names or usernames, but a wide array of personal and invasive data for Pop.Diaries, as shown in the subpoena attached as Exhibit A.

This motion seeks to protect Movants' constitutional right to anonymous speech under the First Amendment, as well as their right to be free from invasive and unjustified discovery as non-parties. The subpoena issued to TikTok seeks identifying details, such as names and contact information, alongside highly sensitive private data including IP logs, SIM card metadata, payment methods, and device-level access records. Yet Plaintiff has offered no evidence that the content posted by @pop.diaries was unlawful, coordinated, or even relevant to the underlying claims. Allowing access to such data absent a compelling and narrowly tailored justification would violate core constitutional protections and chill lawful online expression. Permitting such disclosure absent a compelling evidentiary showing would infringe upon the Movant's right to anonymous and protected online expression, in violation of the First Amendment.

Movants submit this Motion to Quash on the grounds that:

(a) the subpoena is overbroad and unduly burdensome;

(b) it seeks information protected by the First Amendment and fails the *Sony Music* balancing test;

(c) it was issued without prior notice, in violation of Rule 45(a)(4);

(d) it seeks identifying information prohibited from disclosure under the Stored Communications Act, 18 U.S.C. § 2702;

(e) it violates New York's anti-SLAPP statute, which bars discovery aimed at chilling speech on matters of public concern absent a substantial evidentiary showing; and

(f) disclosure would cause irreparable harm, including doxxing, reputational damage, and safety risks to Movants and their families.

## II. BACKGROUND

Movants are listed as No. 5 on the subpoena, associated with the TikTok account @pop.diaries. The account was co-founded on December 15, 2024 by Movants as a personal, creative outlet to share commentary on pop culture, entertainment news, and trending internet moments. The idea originated during a private phone conversation in November, where Movants, both working full time, discussed starting a pop culture page as a fun creative outlet outside of work. This was followed by a text exchange on November 30, 2024, in which they brainstormed potential account names and agreed the goal was to "just have fun with it" and treat it "like a fun project and not work." Approximately two weeks later, they officially created the account. These messages are included in Exhibit G.

In those early planning conversations, just one day after the TikTok account was made, Movants discussed video ideas, including a first post about Selena Gomez and Justin Bieber, reflecting the kind of editorial brainstorming typical of online content creators. Their initial uploads, one about pop culture throwbacks (Exhibit G1) and another about casting in the *Wicked* movie (Exhibit G2), were posted that day but later deleted after they did not perform well, consistent with how creators experiment with formats and topics.

Movants then paused activity for the Holidays and resumed posting in January 2025, again with content developed independently. Shortly after, Movants began experimenting with videos about Baldoni and Lively, based on trending topics and audience interest. As emphasized in text messages sent after creating the account, their intent was to "just see what takes off" (Exhibit G3), not because they were compensated or directed, but because they were exploring cultural trends as part of their creative project. There was no outside prompting, payment, or collaboration. Both Movants have submitted sworn declarations (Exhibit D) affirming they were never affiliated with, paid by, or instructed by Wayfarer Studios, The Agency Group (TAG), Justin Baldoni, or any related entity.

As with other trending pop culture moments, Movants engaged with this topic through editorial commentary and occasional satire, aiming to entertain while exploring how public figures, media narratives, and promotional strategies intersect with broader cultural discourse.

For both Movants, however, *It Ends with Us* and its subject matter held personal resonance. Jane Doe 1 was personally disappointed by the film's rollout as someone who had previously appreciated the book's sensitive depiction of such issues. Jane Doe 2, whose close friends and family have been affected by domestic violence, felt similarly invested in the way the film's press tour was handled. These personal perspectives shaped by real-life experiences and values fueled their passion to share their commentary and shared opinions circulating widely across social media and news outlets.

The content posted by Pop.Diaries on TikTok is entirely based on publicly available information, including press tour footage, social media posts, news coverage, and promotional material. Movants added their own editorial opinions and reactions to such material for entertainment purposes. The account's growth and content have been entirely organic.

On July 3, 2025, Plaintiff issued a subpoena to TikTok Inc. requesting identifying information for a number of content creators, including the Pop.Diaries account. However, Movants were never formally notified of this subpoena by TikTok, Plaintiff's counsel, or the Court. In fact, Movants only became aware of the existence of the subpoena on July 22, 2025, after it became public knowledge on July 21, when the subpoena was filed on the court docket and began circulating on social media. By that time, the compliance deadline had already passed, and Movants had been effectively robbed of their right to

object before disclosure, in direct violation of Rule 45(a)(4), which requires advance notice to affected individuals. To date, neither TikTok nor Plaintiff has provided Movants with a copy of the subpoena, further compounding the denial of due process.

The subpoena seeks to unmask Movants by compelling disclosure of their names, IP history, SIM card data, payment methods, and other private account details, all in the context of a highly public and emotionally charged legal battle. Movants are not parties to this case, yet face the risk of retaliation, harassment, and doxxing if their identities are exposed without judicial oversight.

Movants made multiple good faith attempts to contact TikTok for clarification regarding the subpoena and to inquire about the status of their private information. These efforts included sending emails to three separate addresses listed for inquiries on July 22, 2025, all of which were returned as undeliverable. In addition, on July 24, 2025, Movants submitted support requests through TikTok's official website and received a single acknowledgment from TikTok U.S. Data Security Inc. (USDS), the company's Project Texas entity responsible for safeguarding U.S. user data. However, this response provided no answers to Movants' specific inquiries, nor any guidance on how to contest the subpoena or protect their account information.

In their communication to TikTok USDS, Movants expressly did not consent to the disclosure of any personal or account-related information. TikTok has not indicated that it will withhold disclosure absent court intervention, further heightening the urgency of Movants' request for protective relief.

Additionally, Movants attempted to contact Plaintiff's counsel, Esra Hudson of Manatt, Phelps & Phillips LLP, via email at EHudson@manatt.com to request a copy of the subpoena and to seek clarification regarding the basis for the request. At the time of this filing, no substantive response has been received. These efforts were made in good faith and demonstrate Movants' intent to resolve the issue transparently while preserving their legal rights.

Despite proactively reaching out to both TikTok and Plaintiff's counsel to clarify whether their account was implicated, no meaningful response has been received as of this filing. This lack of transparency and notice materially prejudices Movants' ability to protect their constitutional and statutory rights.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A) requires a court to quash or modify a subpoena that:

1. Fails to allow a reasonable time to comply;

2. Requires disclosure of privileged or otherwise protected matter; or

3. Subjects a person to undue burden.

Additionally, under Rule 26(c), courts may issue protective orders to protect a party or non-party from "annoyance, embarrassment, oppression, or undue burden or expense."

The First Amendment protects the right to speak anonymously, particularly when commenting on matters of public concern. See *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) ("Anonymity is a shield from the tyranny of the majority."); *Doe v. 2TheMart.com*, Inc., 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) ("The First Amendment protects the right to anonymous speech.").

Courts in the Second Circuit apply a multi-factor balancing test when determining whether to enforce a subpoena that would unmask anonymous online speakers. See *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004). Under this test, the court considers:

- (1) whether the plaintiff has made a concrete showing of a prima facie claim of actionable harm;

- (2) the specificity of the discovery request;

- (3) the absence of alternative means to obtain the information;

- (4) the central need for the information to advance the claim; and

- (5) the expectation of privacy held by the anonymous speaker.

Where a subpoena fails to satisfy these criteria, particularly when it would chill speech or burden a speaker not formally accused of wrongdoing, courts routinely quash the subpoena or permit the anonymous party to proceed under seal. See *Art of Living Found. v. Does 1–10*, 2011 WL 5444622, at *5 (N.D. Cal. Nov. 9, 2011) (quashing subpoena and preserving anonymity of online speakers); *In re Rule 45 Subpoena Issued to Twitter, Inc.*, 2023 WL 2996686 (N.D. Cal. Mar. 28, 2023).

## IV. ARGUMENT

### A. The Subpoena Seeks Protected Speech

Movants created and posted their videos in good faith, drawing solely from publicly available material. These videos constitute lawful commentary and cultural critique, falling squarely within the protections of the First Amendment.

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court affirmed that commentary on public issues must remain "uninhibited, robust, and wide-open," recognizing that even vehement criticism and factual errors are inherent in the exercise of free speech in a democratic society. To safeguard this principle, the Court held that a public official seeking damages must establish "actual malice" with convincing clarity. Even if Plaintiff disagrees with the tone or substance of Movants' posts, commentary based on publicly available material, even if critical, informal, or speculative, is not actionable unless it contains a knowingly false statement of fact made with actual malice. In addition to covering newsworthy developments surrounding *It Ends With Us*, Pop.Diaries created entertainment-driven content that included coverage of pop culture news, as well as humorous takes and speculative commentary on trending topics. The posts at issue reflected Movants' editorial opinions on a highly public controversy involving a prominent figure and fall squarely within the First Amendment's protection of anonymous speech on matters of public concern.

The subpoena appears to be an attempt to suppress lawful criticism and chill public discourse, rather than a legitimate effort to pursue actionable defamation. While Plaintiff's legal team now attempts to characterize Pop.Diaries as part of a coordinated effort, the account has always been focused on covering pop culture, celebrity trends, and viral discourse across the entertainment landscape. Commentary on the *It Ends With Us* press tour was consistent with this broader mission and reflected widespread, organic public reactions that Movants simply participated in, not orchestrated.

The First Amendment does not permit litigants to use subpoenas as a backdoor means to silence critics, especially when those critics are private citizens engaged in constitutionally protected speech.

Plaintiff has not made a prima facie showing of actionable harm, nor has she demonstrated that the information sought is necessary to advance her claims. Courts have long recognized that anonymous speech on matters of public concern is protected by the First Amendment. When a litigant seeks to unmask anonymous speakers, particularly non-parties, courts apply heightened scrutiny to ensure that compelled disclosure is not used as a tool to chill protected expression. See *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Doe v. 2TheMart.com, Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001). In *Mobilisa, Inc. v. Doe*, 170 P.3d 712 (Ariz. Ct. App. 2007), the court adopted a rigorous standard requiring plaintiffs to show a legitimate, good faith basis for unmasking an anonymous speaker, and to balance that request against the speaker's First Amendment rights. This protection is even stronger where the speech concerns a public figure and is based on publicly available material, as it is here. Without a concrete and compelling evidentiary basis, the First Amendment prohibits disclosure of Movants' identities.

**A.1. The Subpoena Violates New York's Anti-SLAPP Law**

New York's anti-SLAPP statute, Civil Rights Law §§76-a and 70-a, as amended in 2020, provides broad protections against legal tactics that chill speech on matters of public interest. The law applies to "any communication in a place open to the public or a public forum in connection with an issue of public interest," which includes social media commentary on high-profile litigation and celebrity conduct.

Plaintiff's subpoena seeks to unmask anonymous speakers based solely on their participation in an online discourse regarding *It Ends With Us* and related public behavior by Ms. Lively, a matter that generated widespread criticism, memes, and press coverage. Movants' content falls squarely within the statute's definition of protected expression.

Under CPLR §3211(g), courts must dismiss or quash actions or discovery requests "based upon the exercise of the right of free speech" unless the plaintiff can show a "substantial basis in law." No such showing exists here. Movants' commentary was lawful, opinion-based, and drawn from publicly available material. In the absence of any plausible legal claim, Plaintiff's attempt to unmask Movants appears retaliatory and risks chilling lawful, protected speech. Accordingly, the subpoena should be quashed under the New York anti-SLAPP statute.

**B. Movants Were Not Properly Served or Notified**

TikTok never provided Movants with formal notice or an opportunity to object to the subpoena, as required under Rule 45(a)(4). Neither Plaintiff nor the Court gave any advance warning. Movants only discovered the subpoena on July 22, 2025, after it had already come due, through posts by other users on TikTok.

Although the subpoena is dated July 3, 2025, with a compliance deadline of July 16, it was not filed on the public docket until July 21. By that point, the return date had already passed. As a result, Movants' opportunity to object was bypassed entirely, in violation of Rule 45(a)(4), which mandates notice to affected non-parties before compliance.

Despite this disadvantage, Movants acted promptly. Yet, the burden on Movants has been substantial. Both are non-party individuals with full-time jobs who were given no notice and no opportunity to object before the subpoena's return date. Over the course of several days, Movants worked late nights to research, draft, and file their motions without legal assistance. As of the date of this filing, Jane Doe 1 is also managing the aftermath of a recent car accident, which has added additional emotional and logistical strain at a time when this response is due. While Movants do not claim a direct causal link, it bears noting that the stress and disruption caused by being improperly subpoenaed—compounded by the time-sensitive nature of responding as private individuals—has significantly burdened their ability to navigate this process. This underscores the precise kind of undue burden Rule 45(d)(3) is meant to prevent. Movants

respectfully reserve the right to seek appropriate relief under Rule 45(d)(1), including attorneys' fees and sanctions, should the Court find such measures warranted.

The sequence of events does not appear accidental. Plaintiff issued subpoenas seeking sensitive identifying information, failed to notify Movants, and delayed filing until after the deadline for compliance. The result, and likely the intent, was to reveal the identities of anonymous critics before they could assert their rights. These circumstances raise serious concerns about whether Movants were deliberately denied a meaningful opportunity to object[1].

Rule 45(d)(3) requires courts to quash subpoenas that impose undue burden or violate procedural protections. Movants bring this motion at the earliest possible time after learning of the subpoena. They should not be penalized for Plaintiff's failure to provide proper notice.

The subpoena seeks broad categories of highly personal data, even if no justification for such intrusive discovery has been offered. The pattern suggests an attempt to quietly obtain identifying information while avoiding both scrutiny and adversarial testing. This conduct threatens protected speech and reflects an improper use of the discovery process.

While Pop.Diaries is an anonymous account, Plaintiff had multiple available avenues to attempt contact before issuing the subpoena, including TikTok's comment section, direct messaging features on social media, or through TikTok's Creator Marketplace or brand outreach tools. Movants also sent Plaintiff's legal team a direct email inquiry but received no response. The failure to provide any form of notice, despite accessible channels, undermines Plaintiff's procedural obligations and reinforces the conclusion that the subpoena was issued in bad faith.

Movants now seek emergency relief without knowing whether TikTok has already disclosed their information. That uncertainty increases the harm and makes prompt judicial intervention essential.

## C. The Subpoena Is Overbroad and Unduly Burdensome

The subpoena issued to TikTok is impermissibly overbroad, seeking a sweeping array of private data regarding the Pop.Diaries account, far beyond what is necessary, relevant, or proportionate to any legitimate discovery objective. Request for Production No. 5 demands, among other things: Movants' full legal names, registered email addresses, phone numbers, physical addresses, SIM card details, IP logs dating back over a year, payment sources (including credit

---

[1] Plaintiff's legal team has previously faced allegations of issuing subpoenas without notice to obtain private data later used in separate litigation. See Stephanie Jones and Jonesworks v. Jennifer Abel, No. 1:25-cv-00779 (S.D.N.Y. 2025), ECF No. 69 (motion to compel describing a "sham" subpoena issued to a third party to access a former employee's personal data). Movants include this not to litigate that matter or raise speculations, but to note a pattern of discovery tactics that bear resemblance to the conduct at issue here.

card and bank account information), backup recovery contacts, login metadata, and even blockchain activity.

To reiterate, movants are not parties to this case. They are independent content creators who engaged in protected commentary about a widely publicized film and its press tour, using only public material and expressing opinions that were already prevalent in the public sphere as documented in the screenshots attached as Exhibit C. These screenshots reflect content posted by Pop.Diaries in the context of a larger public discourse, positioned alongside TikToks made by unrelated creators addressing the same topics. This visual context demonstrates that Movants were part of an organic, widespread reaction and not any coordinated effort or campaign. There has been no showing that Movants received any compensation, acted in coordination with any litigant.

Without narrowing or substantiation, the subpoena reads less like a discovery request and more like a digital dragnet in an attempt to intimidate, chill speech, and punish online criticism. Courts routinely reject such overbroad subpoenas, especially when directed at non-parties exercising First Amendment rights. See *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).

Disclosure of expansive personal and financial data would expose Movants, and potentially individuals connected to them, to reputational harm, targeted harassment, and real-world risk. As non-parties, Movants should not be subjected to invasive discovery absent a compelling showing of both relevance and necessity. Plaintiff has made neither.

Moreover, recent filings confirm that Pop.Diaries was not identified in any of the Interrogatory Responses submitted by the Wayfarer Parties. In a sworn declaration dated July 21, 2025, Wayfarer's counsel, Kevin Fritz, stated:

> "The Social Media Subpoenas seek all account information, including phone number and financial information, for specific 'Content Creators,' only one of which is listed in the Interrogatory Responses." (Dkt. 459, ⁋ 9; see Exhibit E.)

That individual is understood to be Andy Signore of Popcorned Planet, as shown in Exhibit I. This aligns with the Wayfarer Parties' July 25, 2025, Supplemental Response to Interrogatory No. 6, which identifies Mr. Signore as a content creator contacted in relation to "the Lawsuits, Blake Lively, Ryan Reynolds, or any of the allegations." Neither Pop.Diaries nor Movants were named, referenced, or implicated in those responses.

According to Plaintiff's own discovery definitions, a "Content Creator" includes only those who generated or influenced social media content "at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates." Movants do not meet that definition. They were not identified

in any verified interrogatory response, nor has any evidence linked them to TAG, Wayfarer, or their affiliates.

Nonetheless, Plaintiff issued subpoenas to TikTok, YouTube, and X Corp. seeking to unmask at least 43 creators, including Pop.Diaries. This broad list of unrelated and unaffiliated individuals appears to be justified solely by the "Content Creator" label, stretched well beyond its defined meaning. Plaintiff's reliance on that definition, untethered from the evidentiary record, reveals an attempt to convert an internal discovery term into a basis for mass unmasking. This overreach is particularly troubling given the nature and scope of the subpoenas. The dramatic disconnect between Plaintiff's minimal evidentiary showing and the volume of creators targeted suggests these subpoenas were not designed to obtain relevant discovery, but rather to chill criticism, intimidate anonymous speakers, and retaliate against public commentary.

Courts routinely reject such overbroad efforts to pierce anonymity, especially where there is no concrete showing of unlawful conduct, coordination, or harm. This Court should do the same.

In addition, Plaintiff has already withdrawn subpoenas served on other content creators (including Lauren Neidigh, Ashley Briana Eve, McKenzie Folks, and Kassidy O'Connell) who submitted motions to quash, including individuals who did not submit sworn declarations. See Dkt. 496. Movants, by contrast, have provided sworn declarations under penalty of perjury, unequivocally denying any coordination or compensation by Wayfarer Studios, The Agency Group (TAG), or their affiliates. If Plaintiff had credible evidence linking Movants to any wrongful conduct, she would not abandon subpoenas against others with less evidentiary rebuttal while continuing to pursue this one. The selective withdrawals reflect not a principled discovery effort, but a pattern of retreat when challenged. That conduct further confirms that these subpoenas are not supported by a good-faith evidentiary basis, and this one should likewise be quashed.

**D. Disclosure Would Cause Irreparable Harm**

Movants operate anonymously to protect their own safety and the privacy of their families. Given the high-profile nature of the underlying litigation and the toxic online response to this case, public exposure would likely lead to harassment or doxxing. This is precisely the type of harm the Court in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005), sought to prevent.

Before Plaintiff may compel TikTok to disclose identifying information about anonymous users like Movants, she must first persuade the Court that there is a legitimate evidentiary basis for believing that Movants engaged in wrongful conduct causing real harm. Courts in this Circuit apply the multi-factor test set out in *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), which requires a concrete showing of actionable harm and a balancing of First Amendment rights. No such showing has been made here. There is no allegation of defamation,

harassment, or illegality, only that Movants engaged in public commentary protected by the First Amendment. Absent a compelling evidentiary basis, disclosure must be denied.

**E. Movants' Right to Anonymity Outweighs Any Prejudice to Plaintiff**

Plaintiff Blake Lively has repeatedly emphasized the critical importance of protecting the privacy of non-public individuals and third parties in this litigation as evidenced in Plaintiff's own motion to seal, attached as Exhibit B, where she emphasizes the importance of shielding non-parties from unwanted exposure due to privacy and safety concerns. In her June 24, 2025, letter motion to continue sealing Exhibit C of her Initial Disclosures, Plaintiff's counsel explicitly argued that:

> *"Courts in this Circuit routinely seal documents to protect third parties' sensitive confidential information… the privacy interests of innocent third parties… should weigh heavily in a court's balancing equation."* (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

Lively's own filing further warned that:

> *"The release of their names in the public may increase the risk of exposure to harassment in the press and/or social media… The release of contact information for high-profile individuals additionally poses security and privacy risks."*

Movants respectfully submit that these exact concerns apply here, perhaps even more urgently. Unlike the parties identified in Plaintiff's sealed disclosures, Movants are not involved in this litigation at all. They are anonymous online commentators with no professional or personal connection to any party. Yet Plaintiff now seeks to publicly unmask Movants, obtain their IP addresses, contact details, and possibly financial data without any showing of necessity, actionable conduct, or wrongdoing.

While Plaintiff is a high-profile actress with access to professional security and media counsel, Movants are private individuals with no such protections. Any exposure of their identities would immediately place us and their families at risk of doxxing, harassment, and harm.

Unlike Ms. Lively, who commands a platform of over 40 million followers and has access to publicists, attorneys, and physical security, Movants operate a small TikTok account with no comparable resources or protection. Thus, the Movants' anonymity is a safety necessity.

To protect herself and her affiliates, Plaintiff argues for redactions and court-sealed exhibits. Yet when it comes to TikTok creators she disagrees with, she demands unredacted identity exposure while offering no concrete evidence of harm. This contradictory use of the legal system

undermines the very privacy arguments she invoked on June 24, and reveals the subpoena as retaliatory, not evidentiary.

As small independent content creators, Movants lack the institutional resources, legal representation, and public relations infrastructure available to Plaintiff. The legal process alone imposes a substantial burden, financially and emotionally, on Movants, who are being forced to defend their right to speak anonymously on matters of public concern. Rule 26(c) exists precisely for this reason: to shield non-parties from oppressive discovery that would otherwise discourage or silence protected speech.

## F. The Stored Communications Act Bars TikTok From Disclosing Movants' Data Absent Lawful Consent or a Valid Court Order

The SCA draws a critical distinction between basic subscriber metadata and more sensitive categories of information, such as IP logs, SIM card data, payment methods, and communications. These are governed by stricter protections and may not be disclosed in response to a civil subpoena alone.

While TikTok's Privacy Policy states that it may respond to subpoenas or legal process, such disclosures remain governed by federal law, including the SCA. Courts have consistently held that civil Rule 45 subpoenas do not meet the SCA's threshold for disclosure of protected user data. See *J.T. Shannon Lumber Co. v. Gilco Lumber Inc.*, 2008 WL 3833216, at *1–2 (N.D. Miss. Aug. 14, 2008).

Movants have never consented to the disclosure of their information, and it appears Plaintiff has not obtained a court order that satisfies the SCA's statutory requirements. Accordingly, TikTok is legally barred from releasing Movants' identifying or sensitive metadata, even if it were otherwise inclined to comply.

This further highlights the improper scope of the subpoena and reinforces the need for judicial intervention to prevent unlawful disclosure. The subpoena demands highly sensitive information without satisfying the legal prerequisites of either Rule 45 or the SCA. Unless and until Plaintiff obtains a valid court order under the SCA, disclosure of such data would be unlawful.

Moreover, TikTok has not confirmed whether Movants' information has already been produced or withheld. That uncertainty heightens the importance of the SCA's protections and reinforces the urgency of judicial relief. This Court should make clear that no identifying or sensitive information may be disclosed absent a valid court order that complies with the SCA.

## G. There Is No Factual Basis for Plaintiff's Claim of a Coordinated Smear Campaign

Movants respectfully assert that the subpoena issued by Ms. Lively lacks any evidentiary basis and appears to be driven not by actionable defamation but by a fundamental

mischaracterization of widespread public discourse. In the New York Times article (*'We Can Bury Anyone': Inside a Hollywood Smear Machine*) that was published in collaboration with Ms. Lively, the article refers to a "smear campaign" without providing any substantiated evidence that the criticism she has received was coordinated or malicious, as described in the New York Times article attached as Exhibit F, which lacks any substantiated evidence of coordination or misconduct by Movants. Rather, the online response reflects the public's organic reaction to her conduct, particularly in connection with her role in the film *It Ends With Us* and the associated promotional efforts.

Among the concerns widely voiced by the public, including Movants, was Plaintiff's decision to promote her alcohol brand, Betty Booze, in connection with a film centered on domestic violence. Particularly alarming to many was the launch of a cocktail named "Ryle You Wait," a reference to *Ryle Kincaid*, the film's abusive male lead (see Exhibit J). This branding choice struck many, including survivors and advocates, as insensitive and inappropriate.

The connection between alcohol and domestic violence is well documented. According to the U.S. Department of Justice's Office of Justice Programs, "[e]vidence suggests that alcohol use increases the occurrence and severity of domestic violence," in part because it "impair[s] self-control" and "reduc[es] the ability to resolve conflicts nonviolently."[2] In light of this, the promotion of alcohol, especially under a name evoking the abuser, was viewed by many as trivializing the very trauma the film that is produced by Blake Lively claims to address.

Additional backlash stemmed from Plaintiff's focus on fashion (e.g., urging viewers to "wear your florals" to screenings) and the coincidental launch of her personal haircare line, Blake Brown, during the film's press tour. These actions, reasonably perceived as tone-deaf or opportunistic, sparked legitimate and widespread public discussion. Movants, like countless others, exercised their First Amendment rights to participate in that discourse, using publicly available information and commentary to criticize the cultural messaging around the film's rollout.

Ms. Lively's apparent inability to differentiate between coordinated defamation and spontaneous public criticism does not justify breaching the constitutional protections afforded to anonymous speakers. Allowing subpoenas to proceed under such vague and unsupported claims would set a dangerous precedent for silencing dissent and stifling open dialogue on matters of public concern.

Contrary to Plaintiff's claim that a coordinated "smear campaign" targeting her began in mid-2024, Pop.Diaries did not even exist at that time. Movants launched the account on or around December 15, 2024, as a general-interest pop culture commentary page. At the time of its creation, the account had only 1 follower and no external affiliations as

---

[2] U.S. Department of Justice, Office of Justice Programs, The Role of Alcohol in Intimate Partner Violence (June 2020), available at: https://www.ojp.gov/pdffiles1/nij/254549.pdf

supported by platform analytics included in Exhibit H, showing that the account had no public presence or following during the time Plaintiff claims the "smear campaign" began. The Pop.Diaries account launch occurred just six days before the New York Times article that first framed certain online commentary as a "smear campaign" was published, and long after the initial backlash to *It Ends with Us* began trending organically on TikTok and other platforms. However, Pop.Diaries did not begin creating content relating to It Ends With Us until January 4, 2025, amid heightened public attention. Movants' commentary merely joined, not originated, a widespread, viral conversation already well underway in mainstream and social media.

The opinions expressed through Pop.Diaries reflected Movants' subjective and good-faith belief that Ms. Lively's conduct during the press tour was out of step with the subject matter of the film, and a personal yet widely held view that Ms. Lively has made false allegations against Justin Baldoni.

That belief has only been reinforced by Plaintiff's latest filings, which suggest Movants and numerous other creators orchestrated a coordinated "smear campaign," despite there being no trace of such coordination, and despite the inclusion of content creators with virtually no platform at all. If this supposed "untraceable" campaign is as amorphous as claimed, it is telling that Ms. Lively has had no difficulty identifying and subpoenaing individuals whose speech she finds objectionable.

This pattern reflects a broader contradiction: although Plaintiff produced and starred in a film about domestic violence, she largely did not use her public platform during the press tour to uplift survivor voices, who are disproportionately women, and has now instead pursued legal action against individuals engaging in public commentary about the film. During the film's promotional campaign in mid-2024, Plaintiff made limited effort to center survivor-informed perspectives, despite the story's themes and its relevance to women's lived experiences. Now, in 2025, she has instead turned to legal action targeting individuals who engaged in public commentary, many of whom are women themselves. Notably, Plaintiff also subpoenaed at least one content creator who appeared to identify as a domestic violence survivor in a public TikTok post, as shown in Exhibit K.

To further support these uncontested facts, Movants have each submitted sworn declarations under penalty of perjury, confirming that they acted independently, were not compensated by, and had no affiliation with Wayfarer Studios, The Agency Group (TAG),  or Justin Baldoni. These verified statements reinforce the absence of any factual or legal grounds to compel disclosure of their identities.

See Exhibit D, which contains the sworn declarations of Jane Doe 1 and Jane Doe 2 submitted in support of this motion.

## V. RELIEF REQUESTED

Movants respectfully request that this Court:

1. Quash the subpoena issued by Plaintiff to TikTok Inc. related to Pop.Diaries;

2. Permit Movants to proceed under pseudonyms (Jane Does 1 and 2) throughout this motion and any related proceedings;

3. Issue a protective order barring disclosure of Movants' identities or private account data;

4. Permit filing of unredacted identifying information under seal;

5. Movants respectfully reserve the right to seek appropriate relief under Rule 45(d)(1), including costs, attorneys' fees, or sanctions, should the Court find such measures warranted;

6. Grant such other and further relief as the Court deems just and proper.

Movants do not seek relief on behalf of others and have limited this Motion to their own rights and interests. However, to the extent Plaintiff suggests that withdrawal of the subpoena renders this Motion moot, Movants respectfully disagree. The subpoena has already imposed significant burden, and TikTok has not confirmed whether any data has been disclosed. Ruling this motion moot without addressing those unresolved harms would deprive Movants of a meaningful opportunity to be heard. Movants should not be denied judicial protection merely because Plaintiff withdrew the subpoena after initiating intrusive discovery. Moreover, Movants' requests for a protective order, sealing, and anonymity remain live, justiciable, and in need of judicial resolution.

Movants therefore respectfully request that the Court not deem this Motion moot. Alternatively, if the Court finds that the Motion to Quash is procedurally moot due to Plaintiff's withdrawal, Movants ask that the Court clarify that no ruling is made against the merits of their arguments, and that their related requests for protective relief remain pending and require adjudication.

For the foregoing reasons, Movants respectfully request that the Court quash the subpoena issued to TikTok Inc., permit Movants to proceed anonymously, and issue a protective order prohibiting disclosure of Movants' identities or private data absent a compelling showing and leave of court.

Respectfully submitted,
/s/ **Jane Doe 1**
/s/ **Jane Doe 2**
 Dated: [July 27, 2025]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE: SUBPOENAS TO TIKTOK FOR INFORMATION FROM

SOCIAL MEDIA CONTENT CREATORS 1–7

Case Nos. 1:24-cv-10049-LJL; 1:25-cv-00449-LJL

**\*\*[PROPOSED] ORDER GRANTING MOTION TO QUASH\*\***

Upon consideration of the Motion to Quash and for Protective Order filed by non-party Movants Jane Doe 1 and Jane Doe 2, it is hereby ORDERED that the motion is GRANTED.

1. The subpoena issued by Plaintiff Blake Lively to TikTok Inc. dated July 3, 2025, is hereby QUASHED;

2. Movants may proceed under pseudonyms as Jane Doe 1 and Jane Doe 2;

3. TikTok Inc. is prohibited from disclosing Movants' identifying or account information absent leave of Court;

4. Unredacted materials filed in connection with this Motion shall remain sealed.

SO ORDERED:

_____

Hon. Lewis J. Liman

United States District Judge

Dated: _____, 2025

# EXHIBIT A

## Subpoena issued to TikTok Inc. on July 3, 2025

**REQUEST FOR PRODUCTION NO. 5:**

All subscriber information, for the username ==pop.diaries==, including but not limited to: (a) the first and last name; (b) registered email address; (c) phone number(s); (d) physical address; (e) language; (f) social media account information; (g) location data, including Internet Protocol (IP) addresses and/or SIM card information; (h) user generated content and associated meta data; (i) user's phone and social network contacts, including the user name, name, phone numbers, and email addresses of existing users of your platform; (j) backup/recovery email address or phone number; (k) length of service (including start date) and any premium services utilized; (l) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); and (m) Login IP addresses used from May 1, 2024 to the present, with dates and session times.

**REQUEST FOR PRODUCTION NO. 6:**

# EXHIBIT B

## Plaintiff's June 24, 2025, Motion to Seal

Courts in this Circuit routinely seal documents to protect third parties' sensitive confidential information. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (when determining whether to seal documents, "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation") (quoting *Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990)). Ms. Lively's Initial Disclosures contain the names and contact information for dozens of individuals who have not been subjected to discovery in this action, and who likewise may lack any substantial involvement in this litigation. For the listed individuals who are not public figures—such as members of the Film's crew—the release of their names in the public may increase the risk of exposure to harassment in the press and/or social media, which closely follow and report on this action. The release of contact information for high-profile individuals additionally poses security and privacy risks.

The Court has previously recognized the uniquely public and media-driven nature of this case. *See* ECF No. 122 at 21:7–21, 54:20–21 ("This is a case as to which there has been a lot of public attention."); ECF No. 124 at 6 ("The details of this case have been closely followed in the media."). Under these circumstances, any limited legitimate interest the public may have in this discovery document is heavily outweighed by the countervailing interest in protecting the privacy interests of third parties. Indeed, this Court has explained that the sealing of "personally identifiable information

BRUSSELS    CHICAGO    DALLAS    FRANKFURT    HOUSTON    LONDON    LOS ANGELES    MILAN
MUNICH    NEW YORK    PALO ALTO    PARIS    ROME    SAN FRANCISCO    WASHINGTON

of third parties" is appropriate, particularly in "motions for discovery"—which "are 'ancillary to the court's core role in adjudicating a case'" so "the weight of the presumption of public access to these documents is low." *See Adstra, LLC v. Kinesso, LLC*, 2025 WL 1002253, at *3 (S.D.N.Y. Mar. 31, 2025) (Liman, J.) (quoting *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019)); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (recognizing the countervailing factor of privacy interests).

For these reasons, Ms. Lively respectfully requests ECF No. 350-4 remain under seal. The Wayfarer Parties have advised that they take no position on this motion.

# EXHIBIT C

## Screenshots showing Pop.Diaries content in public discourse

 











# EXHIBIT D

## Sworn Declarations of Jane Doe 1 and Jane Doe 2

**Declaration of Jane Doe 1**

**REDACTED DECLARATION OF JANE DOE 1**
*In Support of Motion to Quash Subpoena to TikTok Inc.*

I, Jane Doe 1, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am one of the individuals behind the TikTok account @pop.diaries, and I make this declaration in support of the Motion to Quash the subpoena issued by Plaintiff Blake Lively to TikTok Inc. on or around July 3, 2025, which seeks identifying and sensitive personal information associated with the Pop.Diaries account.

2. I have never communicated with, been paid by, or coordinated with Wayfarer Studios, The Agency Group (TAG), Justin Baldoni, or any of their agents, representatives, or affiliates.

3. The Pop.Diaries account was created independently in December 2024 by myself and Jane Doe 2. We started the account as a creative outlet to share commentary on pop culture and trending news. The idea originated in a private phone conversation and casual text exchange between the two of us.

4. Our content has always been based solely on public information, including news articles, interviews, press footage, and social media posts. All posts reflect our personal viewpoints and were not made in collaboration with or on behalf of any third party.

5. I am seriously concerned that if my identity is revealed, I may face harassment, reputational harm, and professional consequences. I respectfully request that the Court protect my anonymity and quash the subpoena.

Executed on: July 27, 2025
/s/ Jane Doe 1
Pro Se Movant

**Declaration of Jane Doe 2**

**REDACTED DECLARATION OF JANE DOE 2**
*In Support of Motion to Quash Subpoena to TikTok Inc.*

I, Jane Doe 2, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am one of the individuals behind the TikTok account @pop.diaries, and I make this declaration in support of the Motion to Quash the subpoena issued by Plaintiff Blake Lively to TikTok Inc. on or around July 3, 2025, which seeks identifying and sensitive personal information associated with the Pop.Diaries account.

2. I have never communicated with, been paid by, or coordinated with Wayfarer Studios, The Agency Group (TAG), Justin Baldoni, or any of their agents, representatives, or affiliates.

3. The Pop.Diaries account was created independently in December 2024 by myself and Jane Doe 1. We started the account as a creative outlet to share commentary on pop culture and trending news. The idea originated in a private phone conversation and casual text exchange between the two of us.

4. Our content has always been based solely on public information, including news articles, interviews, press footage, and social media posts. All posts reflect our personal viewpoints and were not made in collaboration with or on behalf of any third party.

5. I am seriously concerned that if my identity is revealed, I may face harassment, reputational harm, and professional consequences. I respectfully request that the Court protect my anonymity and quash the subpoena.

Executed on: July 27, 2025
/s/ Jane Doe 2
Pro Se Movant

# EXHIBIT E

## (Dkt. 459) regarding subpoena scope

9.      The Interrogatory Responses list only a few "Content Creators" (the remainder of the identified individuals are affiliated with mainstream media). (Dkt. 451-1, p. 12 – 14). The Social Media Subpoenas seek all account information, including phone number and financial information, for specific "Content Creators" *only one of which is listed in the Interrogatory Responses.* In other words, neither TAG, nor its owner Melissa Nathan, nor the Interrogatory Responses are the reason for the recent "public backlash against Ms. Lively" (Dkt. 449, p. 3), the cause of which appears to be the overbreadth of her Social Media Subpoenas.[2] (Dkt. 444).

# EXHIBIT F

**New York Times article "We Can Bury Anyone"**

# *'We Can Bury Anyone': Inside a Hollywood Smear Machine*

Private messages detail an alleged campaign to tarnish Blake Lively after she accused Justin Baldoni of misconduct on the set of "It Ends With Us."

There have long been figures behind the scenes shaping public opinion about celebrities — through gossip columns, tabloids and strategic interviews. The documents show an additional playbook for waging a largely undetectable smear campaign in the digital era. While the film, about domestic violence, was a box office hit — making nearly $350 million worldwide — online criticism of the actress skyrocketed.

By **Megan Twohey**, **Mike McIntire** and **Julie Tate**

Published Dec. 21, 2024    Updated Dec. 22, 2024

Leer en español

# EXHIBIT G

### Text exchange between Movants brainstorming Pop.Diaries

Also I'm gonna have a 10 hour car ride tomorrow so I can work on content 👀

Omg I'll let you know if I have any ideas. I left my laptop charger in ▓▓▓▓ 😥 but I should be able to use my phone.

Oh nooo! We can brainstorm name ideas

Yes let's!!!!!!! First couple months we obvi have to focus on growing it so let's just have fun with it!! 💕 need to treat it like a fun project and not work. Which will be easy because it's us doing it together haha

Yes agreed!!! And we can probably change name and such later lol we just have to pick something so we can get her going and growing 💅💅💅

Sun, Dec 1 at 5:31 PM

Temporary names:
PopPulse
PinkMedia
PopDiaries
RadPop
Idk I'm bad at these 😭 we can just pick one this week and start making stuff haha

I like PopDiaries or what do you think about using "girlhood"?

GirlhoodDiaries (it's taken tho 🙃)
GirlhoodCulture
GirlhoodTakes

I'm not a big fan of girlhood but we can run with it for now, it might grow on me tbh haha

Hahaha nooo we can do something else!

Sun, Dec 15 at 6:38 PM

Making the TikTok eek!!! Here's the gmail info to save! I made a "folder" in my Bitwarden to keep this stuff separate. There's no way to have a shared Bitwarden without paying for it 🥲

# Exhibit G1

## Screenshot of planning Selena/JB video



# Exhibit G2

**Screenshot of the pop-culture throwbacks and Wicked video preview**





# Exhibit G3

**Screenshot of the "just post post post" / goal of going viral conversation**

Not even going to have the goal of going viral rn, just going to make it a goal to have fun with it and consistently upload then see where it goes lol

Exactly hahaha just post post post and see what takes off lmao

# EXHIBIT H

**Platform analytics showing Pop.Diaries follower count at launch**



# EXHIBIT I

## Interrogatory Response identifying Andy Signore as sole "Content Creator"

**INTERROGATORY NO. 5, AS INSTRUCTED BY THE COURT:**

Identify all Content Creators with whom You have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present.

**RESPONSE TO INTERROGATORY NO. 5, AS INSTRUCTED BY THE COURT:**

Responding Party incorporates by reference its general objections as if fully set forth in response to this Interrogatory. Responding Party objects to this Interrogatory to the extent it is not proportional to the needs of the case or relevant to the claim or defense of any party. Responding Party further objects to this Interrogatory on the grounds that it is overbroad. Responding Party further objects to this Interrogatory on the grounds that it is vague as to "communicated." Responding Party further objects to this Interrogatory on the grounds that it assumes the existence of a purported Digital Campaign. Responding Party further objects to this Interrogatory to the extent that it exceeds the scope of Local Civil Rule 33.3(a).

Subject to and without waiving the foregoing objections, Responding Party responds:

**ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER**

BILLY BUSH

ANDY SIGNORE ("Popcorned Planet")

CANDACE OWENS

PEREZ HILTON

**INTERROGATORY NO. 6, AS INSTRUCTED BY THE COURT:**

# EXHIBIT J

**Screenshots of "Ryle You Wait" alcohol branding and marketing posts**



# EXHIBIT K

**Screenshot of Public TikTok Post by Subpoenaed Content Creator**



*Note: This TikTok was publicly posted by one of the subpoenaed TikTok content creators and appears to reference the film It Ends With Us in connection with personal experiences of abuse. Movants include this screenshot solely to demonstrate the expressive and emotional nature of the discourse surrounding the film's release, and to illustrate the type of speech being targeted by Plaintiff's subpoenas. The username has been blurred in this redacted version out of respect for the creator's privacy.*