**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY,<br><br>               Plaintiff,<br><br>     v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>               Defendants. | No. 24-cv-10049-LJL (lead case)<br>No. 25-cv-449 (LJL) (member case) |
| JENNIFER ABEL,<br><br>               Third-Party Plaintiff,<br><br>     v.<br><br>JONESWORKS LLC,<br><br>               Third-Party Defendant. | |
| WAYFARER STUDIOS LLC, et al.,<br><br>               Consolidated Plaintiffs,<br><br>     v.<br><br>BLAKE LIVELY, et al.,<br><br>               Consolidated Defendants. | |

**OMNIBUS BRIEF IN SUPPORT OF PLAINTIFF BLAKE LIVELY'S**
**MOTIONS TO COMPEL**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.    Ms. Lively Issues RFPs, In Response to Which The Wayfarer Defendants Agree—But Largely Fail—to Produce Responsive Documents. ...........................................................2

    B.    The Wayfarer Defendants Untimely Produce Their Privilege Log. .................................3

LEGAL STANDARD ...........................................................................................................4

ARGUMENT .......................................................................................................................4

    I.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE ALL MATERIALS IN THEIR AMENDED COMPLAINT. ..................4

    II.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE MATERIALS FROM SIGNAL. ..............................................................5

    III.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE ALL RESPONSIVE MATERIALS AFTER DECEMBER 2024............6

    IV.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE ALL NON-PRIVILEGED MATERIALS WITH MR. FREEDMAN. ....7

    V.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE DOCUMENT NO. 310 ON THEIR OMNIBUS PRIVILEGE LOG.......8

    VI.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE THEIR AGENTS' RESPONSIVE COMMUNICATIONS.................11

    VII.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE THEIR RESPONSIVE PHONE RECORDS. ......................................13

    VIII.    THE COURT SHOULD COMPEL EACH OF THE WAYFARER DEFENDANTS TO REMEDY DEFICIENCIES IN THEIR PRODUCTION TO DATE.................14

        1.    Defendant Sarowitz.....................................................................................14

        2.    Defendant Baldoni. ....................................................................................15

        3.    Defendant Wayfarer....................................................................................16

        4.    Defendant Heath. .......................................................................................19

        5.    Defendant Abel ..........................................................................................21

        6.    Defendants TAG and Nathan......................................................................23

    VII.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO ADDRESS IMPROPER REDACTIONS UNDER THE ESI PROTOCOL. ...........24

    VIII.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE THE SEARCH TERMS AND PARAMETERS THAT WERE USED TO PERFORM THEIR DOCUMENT COLLECTIONS AND REVIEW...............24

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*,
    171 F. Supp. 3d 136 (S.D.N.Y. 2016) ...................................................................................10

*Brunckhorst v. Bischoff*,
    2022 WL 18358990 (S.D.N.Y. Dec. 28, 2022) ......................................................................14

*Caputi v. Topper Realty Corp.*,
    2015 WL 893663 (E.D.N.Y. Feb. 25, 2015) ...........................................................................14

*Cleary v. Kaleida Health*,
    2024 WL 4901952 (W.D.N.Y. Nov. 27, 2024) ........................................................................7

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*,
    2006 WL 8446725 (D. Conn. June 12, 2006) .........................................................................25

*Eletson Holdings Inc. v. Levona Holdings Ltd.*,
    2025 WL 1335511 (S.D.N.Y. May 7, 2025) (Liman, J.) .........................................................13

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*,
    284 F.R.D. 132 (S.D.N.Y. 2012) .............................................................................................9

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
    2011 WL 1642381 (S.D.N.Y. Apr. 26, 2011) ..........................................................................7

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
    2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003) .....................................................................11

*Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*,
    318 F.R.D. 28 (S.D.N.Y. 2016) .............................................................................................25

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    2013 WL 238176 (S.D.N.Y. Jan. 18, 2013) .......................................................................9, 10

*SEC v. Rayat*,
    2023 WL 4706074 (S.D.N.Y. July 24, 2023) (Liman, J.) ........................................................9

*Serin v. N. Leasing Sys., Inc.*,
    2010 WL 6501659 (S.D.N.Y. Apr. 16, 2010) ..........................................................................7

*Smith v. Pergola 36 LLC*,
    2022 WL 17832506 (S.D.N.Y. Dec. 21, 2022) .....................................................................8, 9

*Tower 570 Co. LP v. Affiliated FM Ins. Co.*,
    2021 WL 1222438 (S.D.N.Y. Apr. 1, 2021) .........................................................................8, 9

*Universal Standard Inc. v. Target Corp.*,
  331 F.R.D. 80 (S.D.N.Y. 2019) ...................................................................................11

*In re Welspun Litig.*,
  2018 WL 4693587 (S.D.N.Y. Sept. 21, 2018) ...............................................................8

*Williams v. Fed. Gov't of Nigeria*,
  2024 WL 5247931 (S.D.N.Y. Dec. 30, 2024) (Liman, J.) ...............................................4

**Other Authorities**

Fed. R. Civ. P. 34(a)(1) ...................................................................................................13

Fed. R. Civ. P. 26 .............................................................................................................4

Fed. R. Civ. P. 37 ...........................................................................................................17

Pursuant to the Court's Amended Case Management and Scheduling Order, dated July 15, 2025 (ECF No. 425), Plaintiff Blake Lively respectfully moves to compel discovery against Defendants Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC ("IEWU"), Melissa Nathan, The Agency Group PR LLC ("TAG"), and Jennifer Abel (collectively, the "Wayfarer Defendants"), as described further below.[1]

## **INTRODUCTION**

Ms. Lively brings this Motion to remedy substantial deficiencies plaguing the Wayfarer Defendants' document productions. While the Wayfarer Defendants claim to have completed their productions, the gaps are glaring: *inter alia*, they (i) failed to produce all materials included in their now-dismissed complaint; (ii) have not produced a single document from Signal (an ephemeral messaging platform that all Wayfarer Defendants have admitted they use); (iii) unilaterally restricted the responsive time period to end as of December 20, 2024 (thereby failing to produce a single post-December document, other than financial documents, despite this Court previously acknowledging the ongoing nature of Ms. Lively's allegations); (iv) withheld non-privileged communications with counsel as well their counsel's communications with third parties (despite the Court acknowledging that such documents would be in their possession, custody or control); and (v) failed to produce any phone billing records, though explicitly agreeing to do so. For his part, Defendant Sarowitz produced a total of 26 documents, while other Wayfarer Defendants failed to produce many of the text chains excerpted in Ms. Lively's complaints.

---

[1] On August 1, 2025, the parties jointly stipulated, and the Court ordered, to file these Motions to Compel on August 4. ECF Nos. 548, 529. Ms. Lively excludes Defendants Jed Wallace and Street Relations, Inc. ("Street") from this Motion because the time to confer on their responses and objections to Ms. Lively's served discovery and their deficient productions was cut short given their dismissal. Ms. Lively filed an amended complaint re-adding them and will move to compel them (if necessary) by August 22, 2025.

Moreover, where the Wayfarer Defendants *did* produce responsive documents, inconsistencies across party and third-party productions evidence that those productions are incomplete. Indeed, documents obtained from third parties—including regarding complaints about conduct on the set of the Film—suggest that the Wayfarer Defendants have either grossly neglected their discovery obligations (failing to properly search for and review documents), willfully withheld responsive and material information, or spoliated critical evidence. Whatever the reason, Ms. Lively is entitled to relief, and, to that end, Ms. Lively hereby respectfully requests that the Court issue an order compelling the Wayfarer Defendants to comply with their discovery obligations, as detailed below.

## **BACKGROUND**

**A.** **Ms. Lively Issues RFPs, In Response to Which The Wayfarer Defendants Agree— But Largely Fail—to Produce Responsive Documents.**

On February 20, 2025, Ms. Lively served each Wayfarer Defendant with her first set of requests for production ("RFPs"). Ex. 1.[2] The Wayfarer Defendants served their responses and objections on March 24, 2025, stating in response to nearly half of the RFPs that that they were "willing to meet and confer. . . ." Ex. 2. For those RFPs the Wayfarer Defendants did agree to produce documents in response to, it was only for what they deemed "sufficient to satisfy th[e] Request." *Id.* At Ms. Lively's insistence, following an April 24, 2025 conferral, the Wayfarer Defendants agreed to, among other things, (i) "conduct a reasonable search for and produce relevant, non-privileged documents," rather than just those "sufficient to satisfy" the RFPs, and (ii) "conduct a reasonable search for and produce relevant, non-privileged documents responsive" to each of the RFPs on which they agreed to meet and confer. Ex. 3 at 3.

---

[2] Cites to "Ex." refer to the exhibits attached to the Declaration of Kristin Bender ("Bender Decl."), filed contemporaneously herewith. Pincite references cite the ECF-stamped page number.

On March 3, 2025, March 26, 2025, and March 31, 2025, Ms. Lively served her second, third, and fourth sets of RFPs. The Wayfarer Defendants served responses on April 2, 2025, April 25, 2025, and April 30, 2025, respectively, responding that they would produce responsive documents, offering to meet and confer, or stating that responsive documents did not exist. Exs. 4, 5, 6. The Parties completed document productions on Friday, July 25, 2025. While Ms. Lively undertook a fulsome search and complete production, the Wayfarer Defendants' productions were blatantly lacking. On July 29, Ms. Lively served deficiency letters to each Defendant addressing, among other things, (i) the absence of any responsive communications after December 2024; (ii) gaps in their productions; and (iii) improper redactions, inconsistent with the agreed to redaction method set forth in the Joint Stipulation on the Protocol for Discovery of Electronically-Stored Information and Hard Copy Documents (ECF No. 212, "ESI Stipulation"). Ex. 7. The Parties met and conferred the next day. Ex. 8 at 3. Counsel for the Wayfarer Defendants, however, was not prepared to discuss their clients' collection efforts, the many identified deficiencies in the productions, or the identified redaction issues, and conditioned exchange of search terms on Ms. Lively doing the same, despite not identifying a single deficiency in Ms. Lively's production. *Id.* at 2.

**B.**    **The Wayfarer Defendants Untimely Produce Their Privilege Log.**

Pursuant to the ESI Stipulation, the parties were to exchange privilege logs "no later than three (3) weeks after the deadline for substantial completion of document productions," which the Parties agreed to extend to July 28, 2025. ESI Stipulation § IV(7)(a)(ii). At the Wayfarer Defendants' request, the Parties agreed to a further extension to July 29 at 5:00 p.m. (ET) Ex. 9 at 2. Consistent with that agreement, Ms. Lively timely served her privilege log; the Wayfarer Defendants did not, instead producing it the following day at 2:07 a.m. (ET). Exs. 10, 11. Despite

Ms. Lively's subsequent request that the Wayfarer Defendants be prepared to discuss their privilege log on the July 30 conferral, they were not.

## **LEGAL STANDARD**

"The Federal Rules of Civil Procedure provide for broad discovery of information for the purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." ECF No. 357 at 2. "Under Federal Rule of Civil Procedure 26, [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id*. (quoting Fed. R. Civ. P. 26(b)(1)) (cleaned up); *see also Williams v. Fed. Gov't of Nigeria*, 2024 WL 5247931, at *2 (S.D.N.Y. Dec. 30, 2024) (Liman, J.) (cleaned up) ("Parties are entitled to discovery of documents in the possession, custody or control of other parties, . . . so long as they are relevant to any party's claim or defense."). "Once the party seeking discovery has demonstrated relevance, the party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules, the discovery sought is overly broad, burdensome or oppressive." *Id*. (cleaned up).

## **ARGUMENT**

## I. **THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE ALL MATERIALS IN THEIR AMENDED COMPLAINT.**

Despite agreeing to produce all documents and communications referenced and/or supporting their now-dismissed First Amended Complaint ("FAC") and Exhibit A thereto,[3] the Wayfarer Defendants have failed to do so. Though those pleadings have been dismissed, the documents contained therein—many of which are annotated, excerpted, and redacted—remain discoverable in connection with the claims and defenses in this case. Among other problems, the Wayfarer Defendants have not produced at least twenty-five documents or communications

---

[3] *See* Ex. 4 at 13, 36-37, 58-59, 80-81, 102-03, 124-25, 147-48, and 169-70.

referenced in the FAC.[4]  The Wayfarer Defendants plainly possess the complete and unredacted

materials *referenced and cited <u>in their own prior Complaint</u>*, and they should be compelled to

immediately produce those documents or, if these documents have been destroyed, confirm so in

writing.

## II.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE MATERIALS FROM SIGNAL.

There is no dispute that the Wayfarer Defendants communicated about topics relevant to

this dispute on the ephemeral messaging platform Signal. Every single one of the individual

Wayfarer Defendants, plus TAG, ███████████ in response to the following interrogatory:

> Identify all messaging platforms, including but not limited to ephemeral messaging
> platforms, that You have used to communicate with any Person concerning Ms.
> Lively, Mr. Reynolds, the Digital Campaign, or the Actions. For purposes of this
> Interrogatory, the relevant time period shall be January 1, 2024 through the present.[5]

In addition, Abel, Nathan, and TAG all have all ████████████ to communicate

████████████████████████████████████████████████

█████████████████████████[6]  In fact, in response to an interrogatory

asking for the identification of all individuals with whom it communicated via Signal, Defendant

Street declared that "█████████████████████████████████

█████████████████████." Ex. 15 at 6. It is apparent from productions received

from third parties, the Wayfarer Defendants used Signal to discuss relevant topics, including

during the August time period and the pendency of this action. Exs. 16 (August 8, 2024 Signal

---

[4] *See* FAC, ¶¶ 23, 30, 42, 45, 56-58, 71, 107, 141, 145-148, 151, 159, 183, 184, 189, 190, 193, 213, 228, 282, 296, and at least sixty documents or communications that are referenced in "Exhibit A" to the FAC, *see* FAC, Ex. A, at pp. 1-3, 5-6, 10-16, 19, 23-24, 29-30, 40, 78-90, 93-102, 105-108, 113-115, 128-138, 145, 146, 148, 149, 151, 152, 156-160, 162-166.
[5] Ex. 62 at  48-49, 83 (Nathan and TAG identifying "Email, iMessage, *and Signal*"); 2-3, 31-32, 67-68 (same as to Heath, Baldoni, and Sarowitz); and 101-02 (identifying "Signal, iMessage, email, WhatsApp").
[6] Ex. 12 at 12-13 (Abel); Ex. 13 at 13 (Nathan); Ex. 14 at 12 (TAG).

chat between ███████████████████ ); 17 (December 21, 2024 Signal chat between ██████████████████ ); 18 (January 25, 2025 Signal chat ██████████████ ).

Accordingly, Signal communications concerning Ms. Lively, Mr. Reynolds, the Digital Campaign, or the Actions are responsive to Ms. Lively's served RFPs.[7] To date, no Wayfarer Defendant has produced any Signal materials, notwithstanding that each had an obligation to preserve all relevant materials since at least November 2023 (in the case of Wayfarer, IEWU, Baldoni, Health and Sarowitz), when Ms. Lively put them on notice about her claims of sexual harassment and they reasonably should have anticipated litigation. ECF No. 1, at ¶ 4.[8] Nathan, Abel, and TAG should have, and, in fact did, anticipate litigation no later than August 12, 2024.[9] The Court should compel the Wayfarer Defendants to produce all relevant and responsive Signal communications or, alternatively, order them to show why they have not and are unable to do so.

### III.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE ALL RESPONSIVE MATERIALS AFTER DECEMBER 2024.

The Wayfarer Defendants have not produced a single document or communication created after December 2024, relying (improperly) on the same December 20, 2024 cut-off date that the Court previously rejected. Indeed, in their opposition to Ms. Lively's prior motion to compel responses to certain interrogatories, the Wayfarer Defendants objected to the scope of the interrogatories "to the present." ECF No. 353. In granting Ms. Lively's motion on this score, the

---

[7] *See, e.g.*, Ex. 1 at 23-24, 49-50, and 205-06.

[8] The November 2023 date is also consistent with the position advanced by Harco National Insurance Company in its lawsuit against Wayfarer and others that they were on notice of potential legal claims as of that time period. *See, e.g.*, Complaint at ¶¶ 5-6, 23-24, 26, 63-69, *Harco Nat'l Ins. Co. v. Wayfarer Studios LLC et al.*, No. 1:25-cv-05949 (SDNY July, 21, 2025), ECF No. 1.

[9] Exs. 20 at 4-5 (August 12, 2024, Nathan texts with Abel about retaining Freedman, and writes "████████████████ "); 21 at 3 (August 15, 2024, Nathan texts with Abel and Baldoni, "████████████ "). At a minimum, all Wayfarer Defendants knew of their preservation obligations as of December 20, 2024, when Ms. Lively served their counsel with a preservation letter (ECF No. 17-1, at 3). Still, no defendant has produced a single communication since that date. (*Infra* at Part III).

Court accepted that timeframe given Ms. Lively's allegations that the smear campaign is ongoing.[10] Given the Court's prior order, and given that compelled productions from third parties confirm that responsive materials exist after December 20, 2024,[11] the Wayfarer Defendants should be compelled to produce such responsive materials. *See Serin v. N. Leasing Sys., Inc.*, 2010 WL 6501659, at *2 (S.D.N.Y. Apr. 16, 2010) (compelling production of documents requested "to the present" due to allegation of "open-ended pattern of [] activity.").[12] To the extent that the Wayfarer Defendants intend to withhold materials from December 20, 2024 to present, the Court should compel them to produce a privilege log accounting for such withholding.[13]

## IV.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE ALL NON-PRIVILEGED MATERIALS WITH MR. FREEDMAN.

The Wayfarer Defendants' privilege log also confirms that they have either failed to preserve, failed to produce, or failed to log relevant, responsive communications with Bryan Freedman. Based on third-party productions and privilege logs that Ms. Lively has received, it is clear that the Wayfarer Defendants had extensive additional communications with Mr. Freedman as early as August 2024, which according to their representations to this Court, is prior to their retention of Mr. Freedman.[14] Ms. Koslow served a privilege log listing "text messages and attachments" spanning August 14, 2024 through January 14, 2025, and listing (among others)

---

[10] ECF No. 355, at 4 (emphasis added). ("These objections do not provide a basis to deny the motion. . . . And although [the Amended Complaint] cites certain specific statements made by Defendants' lawyer, it also states that Defendants themselves continued to be involved after December 21, 2024, framing the campaign as a continuation of events prior to the CRD complaint. *Id.* ¶¶ 296–299 ('As before, Defendants have directly engaged with media platforms . . . .'). ***The Wayfarer Parties' engagement with media outlets after the release of the CRD complaint is relevant to the truth or falsity of these allegations,*** and the Wayfarer Parties have not raised any other objections.").

[11] Ex. 18 at 2 (January 25, 2025 Signal chat); BBKOSLOW-000001684 (group communication involving Liner, Wallace, Nathan, Baldoni, and others dated February 22-23, 2025).

[12] *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 1642381, at *2 (S.D.N.Y. Apr. 26, 2011) (compelling production of documents where "defendants have improperly withheld all documents created after the commencement of this litigation"); *Cleary v. Kaleida Health*, 2024 WL 4901952, at *11 (W.D.N.Y. Nov. 27, 2024) (compelling production of all responsive non-privileged documents created after the commencement of litigation).

[13] If the Court grants this request, Ms. Lively reserves the right to seek relief relating to the insufficiency of the forthcoming production and/or privilege log.

[14] *See* Exs. 20 at 4, 6; 22 at 4; 23 at 7.

Freedman, Nathan, Abel, Wallace, Case, Carolina Hurley, Roza Kalantari, Jared Freedman, Spencer Freedman, Mitra Ahouraian, Miles Cooley, Jason Sunshine, and Summer Benson. Ex. 24 at 1-2. Ms. Koslow's privilege log describes the subject matter of these text messages as "Confidential legal strategy discussions and draft materials prepared in anticipation of asserting counterclaims." *Id.* Despite failing to assert privilege as to communications, the Wayfarer Defendants have not produced them, and the Court should compel them.

## V.   THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE DOCUMENT NO. 310 ON THEIR OMNIBUS PRIVILEGE LOG.

The Wayfarer Defendants' omnibus Privilege Log lists a single communication including their now-counsel: a September 16, 2024 text message chain among Abel, Baldoni, Heath, Freedman, Hanks, Nathan, and Jed Wallace withheld as a "Communication relating to potential engagement of outside counsel," under a claim of "Attorney-Client" privilege. Ex. 25 at 50. That privilege assertion fails. Even assuming that each of the non-lawyer participants in that communication reasonably believed they were consulting with Mr. Freedman for the purpose obtaining legal advice, the communications were not *confidential*—for the simple reason that each of the non-lawyer participants was communicating on a thread with others who did not share any common legal interest.

Under federal law, "a party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022) (cleaned up). "[T]he privilege requires more than merely copying a lawyer as one addressee on a chain of emails." *In re Welspun Litig.*, 2018 WL 4693587, at *3 (S.D.N.Y. Sept. 21, 2018); *see Tower 570 Co.*, 2021 WL 1222438, at *2 (collecting cases). Instead, the privilege "attaches only 'if the predominant

purpose of the communication is to render or solicit legal advice.'" *Tower 570 Co. LP v. Affiliated FM Ins. Co.*, 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021) (cleaned up). "The burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *Smith*, 2022 WL 17832506, at *7 (cleaned up).

Here, even if a prospective attorney-client relationship existed among Mr. Freedman and any individual or sub-group on that communication, it was not privileged because it was not made confidentially within a co-client relationship, or was waived through disclosure to a third party that did not share a common legal interest. A "co-client relationship," or here, an asserted prospective co-client relationship, "is limited by 'the extent of the legal matter of common interest.'" *SEC v. Rayat*, 2023 WL 4706074, at *3 (S.D.N.Y. July 24, 2023) (Liman, J.) (cleaned up). Parties claiming attorney-client privilege on the basis of such a relationship "must show not only that [they] shared a common attorney, but also that they shared a common legal interest . . . pursuant to which they retained that common attorney." *Id.* (cleaned up). Thus, even if they participated in a joint consultation with Mr. Freedman, *and even if they were all clients of Mr. Freedman*, the communications on Priv. No. 310 are privileged only to the extent that they relate to a "common legal interest" shared by all (prospective) client participants. Here, aside from Baldoni, Heath, Sarowitz, Wayfarer Studios, and IEWU LLC—who were on notice of potential liability arising from the events surrounding the Film and production—none of the non-attorney participants have substantiated an assertion of a common legal interest relating to those events.

A common legal interest "must be identical, not similar, and be legal, not solely commercial and the parties must have come to an agreement embodying a cooperative and common enterprise toward an identical legal strategy." *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 2013 WL 238176, at *2 (S.D.N.Y. Jan. 18, 2013); *see Fireman's Fund Ins. Co. v.*

*Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (same). The Wayfarer Defendants have provided no reason to believe—nor satisfied their burden to prove—that ***as of September 16, 2024,*** Wallace, Nathan, and Abel had any "identical" legal interest, much less a similar one, relating to the events that had transpired on the set of the Film. And they have not detailed any other common legal interest that could qualify them to be co-clients, entitled to share a claim of attorney-client privilege. To the extent they did make such a claim, *in camera* review of the withheld documents would be the only way to evaluate it.[15]

Nor can the attorney-client privilege claim be justified on the ground that the presence of Ms. Abel, Ms. Nathan, or Mr. Wallace was "essential to enable counsel . . . to provide [the Wayfarer Defendants] with legal advice," as would have to be the case for any claim of attorney-client privilege to survive. *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 146–47 (S.D.N.Y. 2016).  Wallace has sworn under oath that his role in connection with the work he did "related to Mr. Baldoni" was "to read, analyze, and assess all forms of media and trends taking place with respect to various issues." ECF No. 142-1, at ¶ 24. According to Wallace's sworn declaration: "my limited job was to conduct analysis of the media climates. . . . Most times, my feedback took the form of informal comments that I made to Ms. Nathan." *Id*. ¶ 25. Wallace made no mention  of any role in assisting in support of legal counsel when describing his "limited job" during the period when the September 16, 2024 communication was made. *Id.* And his usual practice of providing "informal comments" to Nathan, a PR professional, is inconsistent with a function "essential to enable counsel" to provide the Wayfarer Defendants with legal advice. Similarly, there is no showing that Nathan and Abel performed any such function themselves. To the contrary, it was *Nathan and Abel* who encouraged Baldoni to

---

[15] By the same token, the common-interest doctrine would not save these communications from waiver through their disclosure to the differently-situated parties on the text chain. *See Mitsui*, 2013 WL 238176, at *2.

retain Freedman in August 2024. *See* Ex. 20. Nathan and Abel's presence on these communications served the Wayfarer Defendants' media strategy, and destroyed any claim of attorney-client privilege just as much as the presence of Mr. Wallace. *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) ("A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice.").[16]

## VI.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE THEIR AGENTS' RESPONSIVE COMMUNICATIONS.

Ms. Lively has served multiple sets of written discovery on the individual Wayfarer Defendants defining "You" to include "anyone else acting or purporting to act on [their] behalf and anyone on whose behalf [they are] acting." (*See, e.g.*, Ex. 1 at 10, 67, 93, 117, 141.) For example, she served interrogatories and RFPs asking for all documents and communications involving "You" with Sony, WME, media outlets, public relations or crisis management firms, and Content Creators.[17] Each of the individual Wayfarer Defendants in their responses and objections objected to the definition of You and stated that they would "construe the terms 'You,' 'Your,' and 'Yours' to mean [the named Defendant]."[18]

With respect to the corporate defendants (TAG, Wayfarer, IEWU), counsel in April 2025 conferred on *inter alia* the definition of "You" and the Wayfarer Defendants' counsel confirmed

---

[16] *See also Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 92 (S.D.N.Y. 2019) ("There is no evidence that the purpose of the communications with BrandLink was to assist counsel in engaging in a legal task as opposed to allowing Universal Standard to make a decision about the nature of publicity that should be sought.").

[17] *See, e.g.*, "Identify all Content Creators with whom *You* have communicated in any manner, concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign from May 1, 2024 to present". Ex. 26 at 13, 27, 42 (emphasis added); "All Documents and Communications between *You*, or anyone on Your behalf, and any public relations, crisis management, or Social Media firms concerning the Film, Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, or the Actions." Ex. 1 at 21, 78, 152 (emphasis added).

[18] Ex. 2 at 6, 69, 144, 218, 319, 380, 454, 521.

that they would interpret "You" as the SDNY local rules define the terms "plaintiff" and "defendant" to "mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." Ex. 3 at 2. In other words, they would not interpret "You" to include "anyone else acting or purporting to act on its behalf or anyone on whose behalf it is acting." The Wayfarer Defendants appear to have stood on those objections because Ms. Lively has been unable to identify any produced communications sent on behalf of any of the Wayfarer Defendants, including by their counsel to third parties, when there is reason to believe they exist. Meanwhile, third parties have produced materials indicating such communications exist, (Exs. 24 at 2-3; 27 at 3), and the content providers have discussed receiving information from the Wayfarer Defendants' counsel.[19]

The Wayfarer Defendants have known that Ms. Lively would expect to receive such materials since December 20, 2024, when Ms. Lively sent her initial preservation demand letters. In a second letter, on December 23, 2024, Ms. Lively reiterated that demand to counsel, making crystal clear that she believed Mr. Freedman had defamed and engaged in unlawful retaliation

---

[19]     *See,* *e.g.,* Perez Hilton, (@PerezHiltonOnReddit), Reddit, https://www.reddit.com/r/teamjustinbaldoni/comments/1ll7har/exclusive_major_victory_for_justin_baldoni/ ("The link is in my video. Team Baldoni confirmed to me."); *Justin Baldoni Claims No Signs of Sexual Harassment Here!!! Raw 'It Ends With Us' Scene,* TMZ (Jan. 21, 2025, 10:16 AM), https://www.tmz.com/2025/01/21/justin-baldoni-it-ends-with-us-raw-footage-dance-scene-no-sexual-harassment-blake-lively/ ("Baldoni's team dropped nearly 10 minutes of unedited footage -- including one scene where Justin and Blake are slow dancing."); Andy Signore (@andysignore), X (Jan. 21, 2025, 12:20 PM), https://x.com/andysignore/status/1881768808861598176 ("EXCLUSIVE! We just got ahold of 10 MINUTES of 'It Ends With Us' On-Set Footage from Justin Baldoni's legal counsel that PROVES Blake Lively was NOT being honest in her lawsuit... Read the accusation below, then click the next tweet to watch what really happened."); Jack Smart, *Justin Baldoni Plans to Launch Website 'Containing All Correspondence' with Blake Lively to 'Quash Her Claims',* People (Jan. 21, 2025, 3:50 PM), https://people.com/justin-baldoni-launch-website-correspondence-blake-lively-8777985 ("Justin Baldoni's team say they have plans to launch a website to bolster his accusations against Blake Lively concerning behind-the-scenes conflict on *It Ends With Us.*"); Entertainment Tonight, *It Ends With Us Legal Battle: Justin Baldoni Releases Raw Footage of Blake Lively on Set,* YouTube (Jan. 21, 2025), https://www.youtube.com/watch?v=Iz_aU4QJOOE&t=2s ("Justin Baldoni's lawyer, Bryan Freedman, shares new video of the director working with Blake Lively on set of the film at the center of the actors' he said, she said legal battle.").

against her, and that his conduct had amounted to public relations work rather than that of an attorney. (*See* ECF No. 17-3 at 1 ("Lawyers are not publicity agents….").) The Court should compel the Wayfarer Defendants to ask their counsel for the client file and any written communications to a Content Creator or to a journalist made on behalf of the Wayfarer Defendants or within the scope of the representation (ECF No. 540 at 11-12 (citing Tr. 52:12)), and to produce all responsive materials that they did not yet collect, search or produce pursuant to their objections to the term "You." Fed. R. Civ. P. 34(a)(1) (requiring production of documents "in the responding party's possession, custody, or control"); *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1335511, at *2 (S.D.N.Y. May 7, 2025) (Liman, J.) ("concept of control has been construed broadly" and materials are "considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party…").

## VII.    THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE THEIR RESPONSIVE PHONE RECORDS.

In seeking relevant phone information, such as "phone billing records,"[20] Ms. Lively seeks relevant non-content information that is limited exclusively in time, from May 1, 2024 to the present (i.e., when the retaliatory campaign is alleged to start to unfold and is continuing) (*see* ECF No. 521, ¶ 185) and is designed to understand the network of individuals who participated in the retaliatory campaign or pattern of interactions among key witnesses to the claims and defenses. Phone records are critical to uncover, *inter alia*, the "team" and "platform-specific specialists" to whom the Wayfarer Defendants and the Wallace Parties have repeatedly referred, and those who continue to be deployed in connection with the smear campaign through the present.[21] In light of

---

[20] *See* Ex. 4 at 11-13 (Abel RFP Nos. 49-50), 35-36 (Baldoni RFP No. 62), 57-58 (Heath RFP No. 60), 79-80 (IEWU RFP No. 90), 100-02 (Nathan RFP No. 48-49), 123-24 (Sarowitz RFP No. 60), 144-47 (TAG RFP Nos. 54-55), 168-69 (Wayfarer RFP No. 90).
[21] *See, e.g.*, Exs. 28 at 3, 4; Ex. 29 at 2.

the Wayfarer Defendants' agreement (but failure) to produce this information, and its patent relevance to Ms. Lively's claims, the Court should compel the production of the same. *See Brunckhorst v. Bischoff*, 2022 WL 18358990, at *2 (S.D.N.Y. Dec. 28, 2022) (granting motion to compel documents sufficient to show the date, time, duration, and incoming and outgoing phone numbers); *see also Caputi v. Topper Realty Corp.*, 2015 WL 893663, at *5 (E.D.N.Y. Feb. 25, 2015).

## VIII.  THE COURT SHOULD COMPEL EACH OF THE WAYFARER DEFENDANTS TO REMEDY DEFICIENCIES IN THEIR PRODUCTION TO DATE.

As discussed in detail below, each Wayfarer Defendants' production suffers from clear gaps and deficiencies. Ms. Lively respectfully submits that each Wayfarer Defendant should be compelled to cure the deficiencies identified as to them and, to the extent no such documents exist within each Wayfarer Defendants' possession, custody, or control, they should be compelled to explain to the Court why they are unable to do so.

### 1.    Defendant Sarowitz.

After admitting that he used "Email, Imessage and Signal" to communicate about "Ms. Lively, Mr. Reynolds, the Digital Campaign, or the Actions," (Ex. 62 at 14), Sarowitz produced only ***26 documents***. All 26 documents are emails on which Sarowitz was merely copied —meaning ***Sarowitz has not produced a single word he uttered***. Further, none of these 26 emails concern Ms. Lively's allegations, on-set conduct, HR complaints, the hiring of Street Relations, TAG, the Digital Campaign, or Sarowitz's role as executive producer of the Film.

Given Sarowitz's pledge to spend $100 million to destroy Ms. Lively and Mr. Reynolds, it is not plausible that Sarowitz had no communications with, at a minimum, Baldoni and Heath. As the financier of Wayfarer, it strains credulity that Sarowitz does not have communications considering, or approving, the hiring of TAG and/or Street Relations. Even the limited document

productions made by other Wayfarer Defendants confirm that responsive communications were not included in Sarowitz's productions,[22] and even his Paylocity email account, which Sarowitz apparently did not actively use, contains 13 communications relating to the Film, including journalist inquiries, and pitches from the Wayfarer team regarding potential projects.[23]

## 2. Defendant Baldoni.

Baldoni has not produced any documents responsive to many of the 151 RFPs for which he agreed to produce. Among these, Baldoni has failed to produce all documents and communications regarding Ms. Lively's Return to Production list (Ex. 5 at 180-81) and the January 4, 2024 meeting (Exs. 2 at 104-05 (RFP No. 31); 5 at 192-93 (RFP No. 111)), each of which feature in Ms. Lively's Complaint. ECF No. 521 ¶¶ 16-21, 145-56. Similarly, Baldoni has failed to produce all documents regarding Ms. Lively between any Wayfarer Defendant and others, as well as communications regarding complaints made in connection with Ms. Lively, and inappropriate conduct related to the Film. Exs. 1 at 15, 17, 18; 5 at 157-58. Baldoni also agreed, but failed, to produce all documents and communications concerning the use of Social Media bots, trolls, troll farms, paid or incentivized accounts, or seeding, amplifying, boosting, or planting content (Ex. 2 at 261-62 (RFP No. 39)). Mr. Baldoni's production deficiencies are evident given that other productions contain specific responsive documents that his production does not, but should.[24]

---

[22] *Compare* Ex. 31 *with* Ex. 1 at 15 (RFP No. 5 (requesting "All Documents and Communications concerning Ms. Lively between [Sarowitz] and any Wayfarer Defendant")); Ex. 34 at 2.

[23] (*See, e.g.*, Ex. 32; 33.)

[24] Ex. 35 (On January 2, 2024: "███████████████████████                         ███"). *See* Exs. 36 at 2(January 5, 2024 text message from Baldoni, writing: ███████████████████                            ███████

███████        "); 37 at 2 (January 4, 2024 text message from Baldoni, stating: █████████

████ ); 38 at 2 (text from Nathan to Baldoni, confirming that "somone trolling Blake" was "NOT anyone from [Baldoni's] team."); 39 at 5 (Nathan and Baldoni regarding plan ███████████ ).

Additionally, Baldoni agreed to produce all documents and communications with, and concerning services provided by Nathan (i.e., Ex. 2 at 87-89, 91-94, 113-16). It is implausible that he has done so. Despite TAG's engagement through, at least, December 2024, (*see* Ex. 30 at 4-5), Baldoni has not produced any text communications with Nathan after September 6, 2024. These glaring issues illustrate that Baldoni has either withheld or failed to preserve relevant communications with his crisis team.

### 3. Defendant Wayfarer.

Wayfarer's document production does not include documents responsive to almost 70 requests to which it previously agreed to produce and is separately deficient as to another approximately 25 requests. With respect to the almost 70 requests to which Wayfarer has failed produce any responsive documents, many of these documents should be readily within Wayfarer's possession, custody, and control, including: (i) documents and communications between Wayfarer, on the one hand, and Street Relations or Jed Wallace, on the other (Ex. 2 at 543-46); (ii) documents concerning any discrimination or retaliation related to the Film, including any human resource violations or complaints (*id.* at 548-50); (iii) documents concerning any prior complaints of misconduct, discrimination, harassment or retaliation (*id.* at 551, 594-98, 600-02); (iv) any documents submitted to or received by the Equal Employment Opportunity Commission ("EEOC") or the California Civil Rights Division ("CRD") (*id.* at 585-86); (v) personnel files for Ms. Lively, Mr. Baldoni, and Mr. Heath (*id.* at 591-92); and (vi) all documents and communications concerning the Digital Campaign (*id.* at 533-34, 563-65, 577-82; Ex. 4 at 168-71, 173-74).

Wayfarer cannot be heard to claim these documents do not exist or are not otherwise within its possession, since documents responsive to these requests appear in other party productions. For instance, Street Relation's limited 37-document production includes documents demonstrating that

Wayfarer paid for Street Relations' "Digital Consulting Strategy and Services,"[25] and spoke directly with Jed Wallace. Yet, none of these appear in Wayfarer's production. Similarly, other parties produced correspondence from the CRD regarding Ms. Lively's CRD Complaint, which Wayfarer has failed to also produce. Exs. 44 at 2-6; 45 at 2-6. And, despite identifying Content Creators that Wayfarer communicated with "concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign," not a single responsive document has been produced. Given that Wayfarer possesses these documents, it should be compelled to produce them immediately.

Wayfarer's document production remains incomplete for additional reasons. **First**, Wayfarer agreed to produce all documents and communications that concern the Film and the Return to Production list (*see, e.g.*, Ex. 1 at 196, 201; Ex. 4 at 169; Ex. 5 at 542)—yet, many of these appear to be completely missing from Wayfarer's production. Despite it being a focal point of the case and Wayfarer being a direct recipient, Wayfarer has not produced the "Protections for Return to Work" document or internal communications relating to the same. Indeed, between November 9, 2023 (when Wayfarer received the "Protections for Return to Work" document) and January 4, 2024 (when the "all hands" meeting with Wayfarer, Sony, and Ms. Lively took place), Wayfarer produced less than 500 communications on the topic—which (given the events) is inconceivable.[26] Either Wayfarer failed to produce these documents, and should be compelled to produce them, or Wayfarer failed to preserve them, in violation of Rule 37 of the Federal Rules of Civil Procedure.

---

[25] (*See* Exs. 40-43.)

[26] This does not even take into account the fact that Wayfarer failed to produce many of the emails identified in Exhibit A to *its own complaint*. (*See* ECF No. 50-1, at 51-53, 58, 59.)

***Second***, Wayfarer also agreed to produce all documents and communications concerning services performed by TAG, Abel, and Jonesworks, as well as documents and communications concerning Wayfarer's engagement with any other public relations or crisis management firms and efforts to influence the public perception of the Wayfarer Defendants (i.e., Ex. 2 at 539, 542, 565-66, 569-70, 574-82). On this score, Wayfarer's production only includes (i) text messages with Defendant Abel, discussing press opportunities, interviews, and Baldoni's dresswear; (ii) daily "press recaps"; (iii) general marketing plans; and (iv) TAG's engagement letter. None of what has been produced satisfies Ms. Lively's requests that seek communications relating to the retaliatory smear campaign. Given that TAG, Abel, and Nathan have been involved in Wayfarer's PR crisis mitigation, internal communications regarding the same should be produced.

***Third***, Wayfarer's production of documents concerning complaints of harassment and workplace misconduct related to the Film remains woefully incomplete. Ex. 1 at 546-48, 550-51. Almost *no documents* in Wayfarer's production relates to Ms. Lively's (or others') complaints. And, in response to Wayfarer RFP No. 80 (*id.* at 211) (requesting documents concerning any harassment, discrimination, or retaliation trainings), Wayfarer produced a single document that contains text messages in which Wayfarer's President asks for the "name/contact of the company we used for sexual harassment training videos," (*see* Ex. 46 at 2)—no other responsive documents appear to have been produced. But based on other third-party productions, Wayfarer received similar questions (and even a complaint) about harassment from others almost a year earlier. *See* Exs. 47-49. Wayfarer did not produce these emails, on which it was copied.

**Fourth**, Wayfarer agreed to produce Film footage (See Ex. 2 at 558-59, Wayfarer RFP No. 33) in a reasonably usable form consistent with the ESI Stipulation. Wayfarer instead produced 100 terabytes of raw, disaggregated film footage that separates video from its attendant audio.[27]

**Finally**, Wayfarer agreed to produce its personnel policies and procedures, which would include, among other things, employment manuals and human resources policies, as well as insurance materials. *See* Ex. 1 at 208; Ex. 5 at 572. Wayfarer produced only its employee handbook and irrelevant safety bulletins and notices, along with a single insurance policy, despite that more are known to exist. *See supra* n.8.

### 4.    Defendant Heath.

Heath has failed to produce entire categories of documents that are plainly responsive to Ms. Lively's requests. Other productions demonstrate that Heath received these documents directly, making his failure to produce them inexcusable. For example, communications produced by Street Relations show that Heath personally participated in the initial retention of Wallace and his firm.[28] These documents confirm Heath's direct involvement in retaining Wallace, but not one was produced by Heath. A third-party production also confirms that ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██. *See* Ex. 48. This message is responsive to Heath RFP Nos. 22, 23, and 24, but has not been produced (nor any other responsive documents). *See* Ex. 1 at 75.

Heath has failed to produce other documents that are plainly in his possession. For example, Heath showed Ms. Lively and her assistant a video of his wife giving birth (*See* SAC, ¶ 90), yet

---

[27] Any representation that such format is the sole format in Wayfarer's possession lack credibility as Wayfarer's own counsel released footage of a dance montage from the Film to press with the sound and video synced. Ms. Lively thus respectfully requests that the Court order Wayfarer to produce all footage in a reasonably usable format.

[28]  *See* Exs. 29; 41; 50-52.

that video—responsive to Heath RFP Nos. 2 and 108—was not produced. Heath has also failed to produce the Writers Guild of America ("WGA") waiver referenced on page 41 of Exhibit A to the FAC, which is responsive to Heath RFP Nos. 61 and 98. *See* ECF No. 50-1, at 41; *see also* Ex. 4 at 58; Ex. 5 at 273. Taken together, these examples confirm that Heath has withheld entire categories of relevant documents central to Ms. Lively's claims.

Even among the documents Heath has produced, glaring omissions show that his productions are incomplete. For example, Heath produced a text exchange with Baldoni ███████ ████████████████████████████████████████████████████████████" yet no other messages about this subject matter were produced. (*See* Ex. 53.) This gap is striking given that Heath's production shows frequent updates about on-set developments.

Heath's production deficiencies are as pronounced with respect to the retaliatory smear campaign. While Heath produced a text exchange with Jones and Abel, in which he acknowledged that "██████████████████████████████████████████████████████████ ████████████████████████████████" (*see* Ex. 54) no other documents or communications leading to Nathan's retention or launching a crisis response were produced. Similarly, Heath produced a text stating he had "████████████████████████" that was ███████████████ ██████" (*see* Ex. 55 at 4), but has not produced a single financial record reflecting that expenditure or communications regarding the implementation of their "████████" plan, as required in response to Heath RFP Nos. 8, 20, 38, 40-42, 45, 46, 47, 48 51, 52, 53, 54, and 56.[29]

---

[29] Heath also did not produce the very messages quoted in the FAC, including the message in which Nathan described the campaign as "untraceable." (*See* SAC, ¶ 214(b).) This communication was sent directly to Heath and is indisputably responsive to Heath RFP No. 61, among others. In a similar vein, Heath has also not produced several documents cited by the Wayfarer Parties in their Amended Complaint. (*See* FAC, ¶ 148; ECF No. 50-1, at 86–87.)

5.    **Defendant Abel**

Despite agreeing to produce documents within her possession, custody, and control, Abel has not produced any documents responsive to many of the RFPs propounded to her. Among these, RFP No. 9 seeks "All Documents and Communications concerning the Actions between You and any Wayfarer Defendant, Sony, WME, Jonesworks, any media outlet of any kind, any Social Media accounts or influencers or other individuals who maintain a public online presence, or any cast or crew members of the Film, and any directors, officers, employees, agents, or contractors thereof." (Ex. 1 at 99.) Ms. Lively therefore respectfully requests that this Court compel Abel to produce all documents responsive to RFP No. 9, including but not limited to those responsive materials appearing in other productions that she failed to produce.

Abel has also failed to produce materials related to concerns about misconduct on the set of the Film, which she agreed to do. Ms. Lively's Request Nos. 16–20 seek, among other things, documents and communications concerning any actual, alleged, or suspected harassment, discrimination, retaliation, or any other misconduct related to the Film. (Ex. 1 at 100-101). Though Abel represented Mr. Baldoni during production and received a copy of Ms. Lively's Return to Production Protections as of November 11, 2023, she failed to produce communications related either to Ms. Lively's expressed concerns or others. For example, Abel has not produced documents or communications regarding conversations with her clients and/or other cast and crew members concerning these issues. This failure belies reason considering exchanges to/from Abel produced by others in this litigation, including without limitation: (a) a January 13, 2024 text with an unidentified individual, suggesting Ms. Lively filed a "cease and desist" against Baldoni (*Jones et al. v. Abel et al.*, No. 25-cv-779 (S.D.N.Y. Jan. 27, 2025) ECF No. 1-1 at 29) [Jonesworks Compl., ¶ 66); (b) a July 31, 2024 email with other Wayfarer Defendants reflecting that a "████████ ██████████████████████████████████████████████████████████ (*see* Exs. 56; 57),

███████████████████████████████████; and (c) August 2024 texts ███████████

█████████████████████████████████████████████████████," (Ex. 59).

At bottom, it appears Abel was not only well-aware of concerns about misconduct on set but openly communicated about them. Those communications must be produced.

Abel also agreed, but failed, to produce all documents and communications related to the Digital Campaign, which are undeniably relevant to Ms. Lively's claims.

**_First_**, Abel agreed to produce documents and communications with Content Creators "concerning Ms. Lively, Mr. Reynolds, the CRD Complaint, the Actions, the Lively/Reynolds Companies, or the Digital Campaign." (Ex. 6 at 47-52). But, despite confirmation that she had responsive communications with at least Sage Steele (Exs. 24; 27 58), Abel has not produced a single responsive document or communication. Similarly, while Abel admits to directly engaging with various reporters, she has largely failed to produce those substantive documents and communications.

**_Second_**, despite coordinating and participating in the retaliatory smear campaign, few responsive documents have been produced. Among other things, Abel has failed to produce communications related to the Digital Campaign and efforts to influence press narratives around Ms. Lively, the Wayfarer Defendants, the Film, and the Action, including communications and documents concerning (1) efforts to seed, influence, manipulate, boost, amplify, or engage with Social Media (Ex. 1 at 102), including the solicitation of social media content (*id.* at 105), the use of bots, trolls, or troll farms (*id.* at 102), and the engagement of the Wallace Defendants (Ex. 1 at 100), (2) strategy and planning documents (i.e. *id.* at 105), (3) related payments and agreements (i.e., *id.* at 100; Ex. 6 at 47-51), (4) draft social media posts, comments, etc. (i.e. *id.* at 102), (5)

press statements about the Action (i.e., *id.* at 105), (6) metadata for social media content (RFP No. 44), and (7) phone records (i.e., Ex. 4 at 11).

**Finally**, Abel failed to produce communications concerning efforts to gather information about Ms. Lively. Ex. 1 at 101.

### 6.    Defendants TAG and Nathan.

Despite agreeing to produce responsive documents within their possession, custody, or control, TAG and Nathan withheld core categories of materials directly relevant to Ms. Lively's claims. For example, the TAG Defendants have produced only minimal documents ████████

████████████████████████████████████████████    ███████

███████████████████████████████████. *See* Ex. 60; Ex. 1 at 174-175. Neither of the TAG Defendants produced any documents establishing how or when they learned of these complaints or what information they obtained. It flies in the face of reason that the TAG Defendants would have no documents reflecting the source or substance of these complaints, when they were retained to manage the crisis Baldoni feared would erupt if they went the public. Their engagement was premised on shaping public narratives about these same complaints, yet the foundational documents are missing.

What's more, despite proposing the retention of the Wallace Defendants in connection with the Digital Campaign, the TAG Defendants produced limited, if any, documents or communications with or about them. The TAG Defendants also failed to produce all text messages specifically cited in the Wayfarer Defendants' Amended Complaint, including messages quoted verbatim that are central to their narrative about Ms. Lively. (FAC, ¶¶ 193, 282, 296; ECF No. 50-1, at 130-33, 151-152.) That these messages are described in public pleadings but absent from the TAG Defendants' production underscores the deficiencies in their search and collection efforts.

## VII.   THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO ADDRESS IMPROPER REDACTIONS UNDER THE ESI PROTOCOL.

Under Section 4 of the ESI Stipulation, the Parties expressly agreed to indicate the basis for redactions—such that the face of the document would make clear the basis of the redaction (i.e., "Redacted - Privileged" or "Redacted - NR"). The Wayfarer Defendants have failed to comply with this requirement. Nathan's production, for instance, is riddled with improper redactions, all of which fail to indicate the basis for withholding information. As a few examples:

- Text message thread among ███████████████████████████████████████████████████████████████." (Ex. 60);
- Text message thread between ████████████████████████████ (Ex. 61).

These are three of more than 50 documents with improper redactions in Nathan's production alone. In addition to these, the Wayfarer Defendants have produced almost 650 documents with redactions—none of which indicate the basis for the redactions made. This is at odds with the ESI Protocol and the Wayfarer Defendants should be compelled to remove these improper redactions.[30]

## VIII.  THE COURT SHOULD COMPEL THE WAYFARER DEFENDANTS TO PRODUCE THE SEARCH TERMS AND PARAMETERS THAT WERE USED TO PERFORM THEIR DOCUMENT COLLECTIONS AND REVIEW

In light of the many deficiencies to the Wayfarer Defendants' document productions, as described above, the Wayfarer Defendants should be compelled to provide Ms. Lively with information relating to their collection efforts, including: (i) the names of all custodians whose files were collected (for Wayfarer and TAG); (ii) the repositories that were collected from; and (iii) the search terms and date range(s) (if any) that were applied. Given the Wayfarer Defendants' representation that they would "conduct a reasonable search" to identify and produce documents responsive to Ms. Lively's Requests, they have made this information squarely necessary for Ms.

---

[30] To aid the Court in evaluating these redactions, Ms. Lively can provide the same to the Court for *in camera* review.

Lively to assess the "reasonable[ness]" of their search and collection efforts. *See CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 2006 WL 8446725, at *2 (D. Conn. June 12, 2006) (directing defendant "to disclose the search terms used in searching its databases for responsive documents"); *see also Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 43 (S.D.N.Y. 2016). Ms. Lively respectfully requests the Wayfarer Defendants be compelled to provide Ms. Lively with this information so that she may assess the degree to which the Wayfarer Defendants have failed to conduct a reasonable document collection, search, and production.

## **CONCLUSION**

For the above reasons, Ms. Lively respectfully requests that her motions to compel be granted in their entirety.

Dated: August 4, 2025

/s/ *Michael J. Gottlieb*
WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron Nathan
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips, LLP
7 Times Sq
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (*pro hac vice*)
401 9th Street NW
Washington, DC 20004
(202) 240-2927
mgovernski@dirllp.com

*Attorneys for Plaintiff Blake Lively*