# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

August 8, 2025

**VIA ECF**

Hon. Lewis J. Liman
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     *Lively v. Wayfarer Studios, LLC, et al.*, No. 24-cv-10049 (LJL)

Dear Judge Liman:

    Pursuant to Federal Rule of Civil Procedure 45(d)-(e) and Rules 1(C) and 4(C) of the Court's Individual Rules, Plaintiff Blake Lively respectfully moves to compel non-party Katherine Case to produce documents improperly withheld on privilege grounds, or alternatively for the Court to conduct an *in camera* review to determine appropriate application of the privilege.

    **Factual Background.** On July 16, 2025, after this Court granted Ms. Lively's motion to compel, Ms. Case and Ms. Koslow transmitted an initial production in response to Ms. Lively's subpoenas. Declaration of Stephanie Roeser ("Roeser Decl."), ¶ 3. Upon initial review, Ms. Lively's counsel discovered that the production included communications copying certain Wayfarer counsel, ceased review out of an abundance of caution, and informed counsel for Case/Koslow and all Defendants. Roeser Decl., ¶ 3. Counsel for Case/Koslow thereafter "clawed back" hundreds of documents, asserting that they were "inadvertently produced." *Id.*, ¶ 4. Case/Koslow made a re-production on July 19, 2025. *Id.*, ¶ 5. Ms. Case and Ms. Koslow also produced "privilege logs" with 209 and 494 documents, respectively, from August 2024 to March 2025. Most of the withheld documents involve certain of the Wayfarer Parties, their counsel, and other third parties, including Jed Wallace, whom the Wayfarer Defendants have credited with "shifting" the conversation about Ms. Lively in August 2024. *Id.*, ¶ 8; Exs. D and E. The Wayfarer Defendants did not serve their own privilege log with respect to the Case/Koslow productions, instead adopting those provided by Ms. Case and Ms. Koslow, respectively. *Id.*, ¶ 9.

    The Case/Koslow productions and privilege logs fail to carry the burden to justify the asserted privileges. *Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022). For example, while Liner Freedman Taitelman & Cooley, LLC ("LFTC") repeatedly represented to this Court that they were not retained until *December 2024*, Ms. Koslow's privilege log identifies a category of *241 documents* from August 14, 2024 to January 14, 2025 with LFTC related to "confidential legal strategy discussions and draft materials prepared in anticipation of asserting counterclaims." Roeser Decl., Ex. H. Yet, Ms. Lively made no claims until December 20, 2024, and the Wayfarer Defendants and Mr. Wallace did not become aware of the *New York Times* article that was the subject of *their* affirmative claims until December 20, 2024.

**The TAG employees' presence on the communications in Category #2 defeats the asserted privileges.** Under federal law, "a party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Smith*, 2022 WL 17832506, at *7 (cleaned up). Category #2 lists 138 "[t]ext messages and attachments" from December 28, 2024 to January 8, 2025 purportedly related to "[c]onfidential legal strategy discussions and draft materials prepared in anticipation of asserting counterclaims." Ex. D. But the documents include, among others, TAG employees Case/Koslow and Carolina Hurley—who are not parties to the litigation and whose presence may constitute a waiver. *See Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015) (collecting cases). The Court cannot assume that all of these participants' communications were privileged regardless of their contents. *See, e.g., Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 2013 WL 238176, at *3 (S.D.N.Y. Jan. 18, 2013) (Nathan, J.) ("The Court is not willing to assume that every document exchanged between [two parties] is privileged."). Indeed, that any of these employees were "in a position to act or rely on" legal advice is specious at best.[1] In fact, other than Defendants Nathan and Abel—both PR professionals—*none of the LFTC represented defendants were even on* these communications, raising a question whether the TAG employees were there to facilitate the representation of the Defendants at all, as opposed to conducting PR strategy.

Moreover, *Ms. Case was not even an employee of TAG* by "sometime in December," and certainly not later than December 31, 2024. (ECF No. 381, at 17:22-24). Communications between a company's attorneys and a former employee are not necessarily privileged, including where, as may be the case here, the communications are between counsel "and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness' testimony." *Bellridge Cap., LP v. EVmo, Inc.*, 2022 WL 17490961, at *4 (S.D.N.Y. Dec. 6, 2022) (cleaned up). Instead, the privilege may attach where the "'nature and purpose' was for the corporation's counsel to learn facts related to a legal action that the former employee was aware of as a result of his or her employment." *Id. In camera* review is necessary to determine whether Ms. Case's post-employment communications are protected.

**Mr. Wallace's presence on the communications in Category #2 effects a waiver.** As with the TAG employees, Mr. Wallace's presence on texts since August 2024 may defeat the attorney-client privilege. There is no evidence that Mr. Wallace was represented by an attorney in connection with these matters between August 2024 and December 20, 2024, much less that there had been a "joint defense effort or strategy . . . decided upon and undertaken by the parties *and their respective counsel*." *Smith*, 2022 WL 17832506, at *7 (cleaned up) (emphasis added). At a minimum, the common-interest doctrine cannot protect communications made *to* Mr. Wallace, because the doctrine permits the absence of an attorney only for the "communicating party . . . when the communication is made to the other party's attorney under a common-interest agreement." *United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) (cleaned up). Even then, the communications would need to have been made for the purpose of obtaining legal advice from a lawyer relating to a common legal interest. *Id.* Nor can the disclosures to Mr. Wallace be justified on the grounds that he "performed functions essential to enable counsel . . . to provide [their clients] with legal advice." *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 146 (S.D.N.Y. 2016). No showing has been made that he did. To the contrary, Mr. Wallace swore on March 18, 2024 that he concluded work "related to Justin Baldoni" in "early November 2024,"

---

[1] Wayfarer Studios has in-house counsel, Imene Meziane, Esq., but she was not copied on the communications at issue.

ECF No. 142-1, at ¶ 26. Even during that period, Mr. Wallace swore that his "limited job was to conduct analysis of the media climates," and "[m]ost times," provided feedback in the "form of informal comments that [he] made to Ms. Nathan," a PR professional and not a lawyer. ECF No. 142-1, at ¶ 25. Wallace did not mention any role in providing legal advice at any time, much less an "essential" role.

**Ms. Case's work-product assertion fails.** The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." No. 25-mc-289, ECF No. 35, at 15 (cleaned up). Its purpose is "to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000); *see Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019) (noting that "many cases have rejected work product protection for material relating to public relations activities," and collecting cases). The presence of numerous participants not represented by LFTC, including Ms. Case, Ms. Koslow, Ms. Hurley, and Mr. Wallace—all PR professionals—indicates that the conversations were directed not at the conduct of *litigation*, but of other extrajudicial media strategies. It is thus impossible to assess the work-product claim regarding these communications without understanding their "specific content." Koslow MTC at 3.

**Ms. Case's communications with her father must be reviewed in camera.** Ms. Case claims attorney-client privilege over 71 responsive records consisting of messages between her and her father, who is an attorney, on the assertion that they "concern[] legal advice sought and received regarding the general management and direction of the litigation." Ex. D. But Ms. Case is not a party to any litigation, and curiously, the messages date back to ***August 23, 2024***, during the height of the retaliation campaign, months before any litigation, and at which time even LFTC admits they were not engaged. The only plausible reason for Ms. Case to have sought legal advice at that time is if she believed that her actions might have exposed her to liability. And conversations with her father about other topics—including possible liability of *others*—would not be privileged just because he happens to be an attorney.

**The Court should review the disputed communications in camera.** Given the foregoing, if the Court has any concern that some of the logged materials may be privileged, the Court should undertake an *in camera* review to assess determine whether the privilege properly applies. *See, e.g.*, *Spencer-Smith*, 2024 WL 4416581, at *6. At minimum, there is no discernable basis to have withheld ***all of the messages at issue in their entirety***, as opposed to redactions that the Court would need to consider in context. *See Bennett v. Cuomo*, 2023 WL 7624669, at *1 (S.D.N.Y. Nov. 14, 2023) (the party claiming privilege "bears the burden to demonstrate that the Privileges apply on a document-by-document basis and cannot satisfy that burden based on blanket or conclusory assertions"); *Spencer-Smith*, 2024 WL 4416581, at *6 n.4. *In camera* review is not only warranted, it is *necessary* for the Court even to consider upholding these assertions.[2]

---

[2] Ms. Case's counsel have insisted that their privilege log is sufficient under *Rekor Systems, Inc. v. Loughlin*, 2021 WL 5450366 (S.D.N.Y. Nov. 22, 2021), as facilitating "an intelligent determination about the validity of the assertion of the privilege," 2021 WL 5450366, at *1, and the Wayfarer Parties have adopted Ms. Case's privilege log. Roeser Decl. ¶ 9; Ex. G. Ms. Case and the Wayfarer Parties should be held to that position to the extent their logs fail to substantiate the asserted privileges (which they do several times over). Should any party provide additional explanations for their privilege claims in opposition, Ms. Lively intends to seek leave to file a reply.

Respectfully submitted,

s/ Michael J. Gottlieb

Michael J. Gottlieb
Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (*pro hac vice*)
Stephanie A. Roeser (*pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California  90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips, LLP
7 Times Sq
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (*pro hac vice*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com
*Attorneys for Blake Lively*