# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

August 8, 2025

**VIA ECF**

Hon. Lewis J. Liman
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *Lively v. Wayfarer Studios, LLC, et al.*, No. 24-cv-10049 (LJL)

Dear Judge Liman:

Pursuant to Fed. R. Civ. P. 45(d)-(e) and Rules 1(C) and 4(C) of the Court's Individual Rules, Blake Lively respectfully moves to compel Breanna Butler Koslow to produce documents improperly withheld on privilege grounds. As set forth in the contemporaneously filed letter-motion to compel production of documents withheld by Katherine Case ("Case MTC"), and the accompanying Declaration of Stephanie Roeser ("Roeser Decl."), Ms. Koslow has withheld from production nearly 500 records dated between August 2024 and March 2025, the vast majority of which appear to be between and among certain of the Wayfarer Parties and/or their counsel, as well as Jed Wallace.[1] (*See* Case MTC at 1.) Ms. Koslow and the Wayfarer Parties have failed to satisfy their burden to substantiate the asserted privileges. *Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022) (cleaned up). Ms. Lively therefore requests that the Court compel production of the documents at issue or, alternatively, conduct an *in camera* review to determine appropriate application of the privilege, if any.

**The presence of third parties on both categories defeats the asserted privileges.** Category #1 on Ms. Koslow's privilege log includes 253 records consisting of text messages supposedly concerning "communication among aligned parties concerning overall litigation strategy and case coordination," dated between January 15 and March 4, 2025. But the messages copied Jed Wallace, TAG employee Ms. Koslow, and Wayfarer employees Mitz Toskovic, Ahmed Musiol Kolacek, and Tera McMaster (Hanks). Category #2 includes 241 records supposedly concerning "[c]onfidential legal strategy discussions and draft materials prepared in anticipation of asserting counterclaims,"[2] spanning **August 14, 2024** to January 14, 2025, and listing (among other participants) Ms. Koslow, Mr. Wallace, Ms. Case, Carolina Hurley, and "Rosa," who is apparently Roza Kalantari of The Skyline Agency LLC. In addition to the numerous other problems discussed below, the presence of various employees of the

---

[1] Ms. Lively's counsel conferred with Ms. Koslow's counsel, who have stood on their assertions of privilege, and with counsel for the Wayfarer Defendants, who have adopted the privilege log as their own. *See* Roeser Decl. ¶ 9.
[2] Notwithstanding this description, the initial version of this privilege log included within this category the text communication with a certain content-creator coordinating her public statements favoring the Wayfarer Defendants' version of events. The inclusion of communications whose subject was patently *not* eligible for privilege within this category—something Ms. Koslow only corrected based on the *identity* of one of the participants (and not the subject matter of the communication) after Ms. Lively's counsel's inquiries—raises serious questions about the actual subject of the communications withheld under this August 14, 2024-January 14, 2025 date range, in addition to the other defects in the privilege claim discussed herein.

defendant entities waives attorney-client privilege to the extent the communications did not involve advice that they were "in a position to act or rely on," something that the privilege log does not explain. *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015); *see* ECF No. 585 ("Case MTC"), at 2. Category #2, which includes Ms. Case, also covers the period during which Ms. Case was no longer an employee of TAG. *Id.*

**Roza Kalantari's Presence on the Communications Defeats Attorney-Client Privilege, as does Jed Wallace's, Melissa Nathan's, Carolina Hurley's, and Jen Abel's for Communications Prior to December 21, 2024**. Jed Wallace, Melissa Nathan, and Jen Abel appear on the communications listed in both categories, but for the reasons explained in the motion to compel regarding Ms. Case's privilege assertions and the motion to compel regarding the Wayfarer Defendants' privilege assertions, Mr. Wallace cannot claim either a joint-client or common-interest privilege with the Wayfarer Defendants prior to December 21, 2024. Case MTC at 2-3; ECF No. 553, at 8-11. And unlike Ms. Abel and Ms. Nathan, any common-interest claim relating to Mr. Wallace prior to December 21, 2024 must still fail at least because Mr. Wallace had no attorney involved in the communications. Case MTC at 2. But the pre-December 21, 2024 communications involving Mr. Wallace, Ms. Nathan, and Ms. Abel cannot *possibly* be protected by the common-interest doctrine because they lack (and no party has explained) any common legal interest between Mr. Wallace and the Wayfarer Defendants, or among Ms. Nathan, Ms. Abel, TAG, and the other Wayfarer Defendants, prior to that date. ECF No. 553, at 9-10. Importantly, to claim any common interest privilege those parties would have to have shown an agreement to pursue a joint *legal* strategy relating to a common *legal* interest: the fact that Mr. Wallace (and Ms. Nathan and Ms. Abel) were working with the Wayfarer Defendants in a manner that ultimately *generated* legal liability for them all is not enough. Stated differently, the common-interest privilege is not a co-conspirator privilege, and it does not protect joint tortfeasors' communications unless and until they agree to pursue a common *legal* strategy and seek *legal* advice from counsel for that purpose.

Further, the waiver effectuated by Ms. Kalantari and Mr. Wallace's presence on the communications cannot be saved on the grounds that their role was essential to the provision of legal advice to the Wayfarer Parties. Ms. Lively has explained as much with respect to Mr. Wallace in her motion to compel Ms. Case's withheld documents. Case MTC at 2-3. As for Ms. Kalantari, the Skyline Parties' own privilege log characterizes her role as "building" a "website," and Ms. Lively understands from the documents produced by Skyline that they were responsible for setting up thelawsuitinfo dot com, which the Wayfarer Defendants have used to publish cherry-picked materials to the public. Roeser Decl. Ex. D. As is well established, "[a] media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003). Even assuming that Skyline's website-building services qualified as "public relations," disclosure of attorney-client privileged material to a PR consultant waives the attorney-client privilege unless the PR consultant "performed functions essential to enable counsel . . . to provide [their clients] with legal advice." *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 146 (S.D.N.Y. 2016). No party has made any showing, much less carried their burden to demonstrate, that this standard is satisfied as to any communications on the privilege log. Even if there were any doubt, *in camera* review would be the only way to assess the claims. Case MTC at 3.

Indeed, this case illustrates the importance of the "narrow" construction of the attorney-client privilege, particularly when parties seek to protect their communications with PR professionals or other similar actors "in derogation of the search for truth." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (cleaned up). As alleged in the complaint, the Wayfarer Parties collaborated with their counsel and social media consultants to execute their "untraceable" retaliatory scheme. ECF No. 521 at ¶¶ 29, 49, 303. As alleged, part of that strategy appears to have been to cloak the scheme in the attorney-client privilege or work-product protection by including counsel on text threads with PR and digital experts. The predominant purpose of those communications was not *legal* advice, but executing the tortious conduct challenged in this case. Sharing attorney-client privileged communications "with a third party who was not necessary to the rendering of legal advice waives privilege," because the privilege operates as a narrow "derogation" of the search for truth only to protect confidential communications with counsel for the purpose of obtaining legal advice. *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *9 (S.D.N.Y. Oct. 4, 2024). Expanding the definition of those "necessary" to the provision of legal advice or permitting blanket privilege assertions of privilege over communications with PR professionals like those asserted here would distort the privilege beyond that "narrow" exception. And, to the extent any of the materials withheld were otherwise protected work product, the fact that these communications go to the heart of the retaliatory scheme alleged in the complaint demonstrate the "substantial need" and hardship necessary to overcome any work-product privilege as well. *Infra* at 3.

**The Work-Product Assertion Fails, or at Minimum Requires In Camera Review.** For the same reasons explained in the Case motion to compel, the work-product assertion must fail. Case MTC at 3. The presence of numerous participants not represented by LFTC, including Ms. Case, Ms. Koslow, Ms. Hurley, and Mr. Wallace—all PR professionals—indicates that the conversations were directed not at the conduct of *litigation*, but of other extrajudicial media strategies. Indeed, the date range in Category #2 stretches back to August 14, 2024, when Ms. Lively alleges the Wayfarer Defendants were in the thick of a *public-relations* campaign, rather than a legal one. Of course, lawyers may perform more than one task for a client, but "only that work and those communications that are generated 'because of' litigation or the anticipation of litigation," are entitled to protection. *Spencer-Smith*, 2024 WL 4416581, at *7. Ultimately, "it is the specific content of the text messages—rather than their date, form, author, or recipient—that is critical to the question of whether such messages are protected under the work product doctrine." *Id.* at *9. It is the Wayfarer Defendants burden to show that their attorneys' communications with numerous PR professionals constituted bona fide work product, in the sense of reflecting "lawyer's legal strategy" worthy of protection "to enhance and not to impede the adversarial process and the truth-finding function of trial." *Id.* at *8. They have failed to do so. Indeed, it is thus impossible to assess the work-product claim regarding these communications without understanding their "specific content." *Id.*

Finally, and for the same reasons stated in the motion to compel Ms. Case's production, the Koslow Privilege Log should be treated as the final word on these privilege assertions—and it fails to carry the requisite burden. Case MTC at 3. And to the extent there is any doubt, *in camera* review would be the only way to evaluate them. *Id.* Should any party provide additional explanations for their privilege claims in opposition to this motion, Ms. Lively intends to seek leave to file a reply.

Respectfully submitted,

s/ Michael J. Gottlieb

Michael J. Gottlieb
Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (*pro hac vice*)
Stephanie A. Roeser (*pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips, LLP
7 Times Sq
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (*pro hac vice*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com
*Attorneys for Blake Lively*