Hon. Lewis. J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007
28ᵗʰ July 2025



**Re: _Lively v. Wayfarer Studios LLC et al., No. 24-cv-10049 (LJL)_**

Dear Judge Liman,

    I am writing to formally address the pending motion to quash filed on 21ˢᵗ July 2025 (dkt 472, **Exhibit A**). As of today, I am aware that counsel for Ms. Lively have withdrawn the subpoena served on X Corp to obtain my data and have written to the court to notify them and request that the motion be _"denied as moot"_ (dkt 496). I wish to formally object to Ms. Lively's attempt to render the motion as moot.

    As your honour is aware, my motion to quash Ms. Lively's improper subpoena to X Corp for my personal information also included a request for a Protective Order to prevent Ms. Lively from making any further attempts to harass me in this manner, mere months after proclaiming to continue standing up for any third party who is unjustly harassed. It also requested sanctions for filing a subpoena without any basis or offer of proof for doing so.

    Ms. Lively served these subpoenas as is now attempting to walk it back by withdrawing them as if they never happened. That cannot be allowed to happen. The unwarranted backlash I received from this because of Ms. Lively's actions, along with the stress and time consumed in being forced to address this issue which has effectively wasted both my time and the courts time. This is sanctionable behaviour.

    There have several events in recent weeks where Ms. Lively appears to have weaponised subpoenas to either harass and intimidate her critics or manipulate the PR narrative. On 1ˢᵗ July 2025, TMZ published a story that Ms. Lively had issued subpoenas for Andy Signore, Candace Owens and Mario Lavandeira (AKA Perez Hilton). The story was

published before any of the people ever received their notice of said subpoenas.

Around 9th July 2025, it became apparent that Ms. Lively had issued subpoenas (dated 3rd July 2025) to Google for the data of 16 content creators. On 18th July 2025, Ms. Lively filed a motion seeking to compel TAG PR LLC to des-designate confidential and AEO to their second supplemental responses and objections to her first set of interrogatories (dkt 449). In that motion, Ms. Lively stated, *"For example, **if** Ms. Lively issues subpoenas related to individuals identified in TAG's Interrogatory Responses to marshal evidence about their involvement in the "smear campaign," she will be hindered in her ability to meet and confer or respond to questions, and will be unable to explain to such subpoenaed parties that the discovery directed towards them is based in part on the fact that TAG identified them.* Not long after that, content creators affected by the Google and X Corp were subjected to harassment and false information that they were on a list, provided by TAG and accused of lying about their lack of involvement. This persisted until the interrogatory responses and objections were unsealed on 22nd July 2025 (dkt 344-1), proving that I certainly was not on any list provided by TAG.

When I filed my motion, I emailed a copy to Ms. Hudson. I received an email later that day to accept service and offer to discuss my motion. I was offered a Zoom meeting or to correspond via email. A Zoom meeting was arranged for Friday 25th July at 9AM PST, however my disabled daughter was unwell and admitted to hospital as a result, I had to cancel a few hours beforehand (**Exhibit B**). I suggested that the attorneys could use their now free time to respond to two simple questions I had in writing (an option which had been offered to me at the same time as the Zoom):

1. What is the basis for these subpoenas to Google, X and TikTok?
2. What are the reasons my name is on there?

I never received a response to my questions and the next communication I received was to notify me that the subpoena had been withdrawn with no explanation for the sudden change of direction (**Exhibit C**).

The letter to deny the motion as moot filed by Ms. Hudson soon followed and I was deeply concerned to see yet more misrepresentation, in addition to what I had already

highlighted in my motion. Ms. Hudson's letter refers specifically to five content creators, including myself. She suggests that her office has met and conferred with me, however this did not happen as I had to cancel and my email with questions remains unanswered.

In the middle of her letter regarding *us* content creators and the motions to quash *we* filed, Ms. Hudson clarifies who coined the term *"untraceable"* digital campaign. It is not clear whether her comments are directed at us but as one of the content creators the letter is referring to, I am happy to respond to help clear up any confusion. Whilst I appreciate that the coin was termed by Melissa Nathan in one of the messages obtain by the Vanzan sham subpoena, this fact had long been forgotten due to Ms. Lively referencing the term on a loop in nearly every filing, on every docket related to this action, across multiple jurisdictions. Speaking for myself, I simply assumed that Ms. Lively had taken *"authorship"* of the term. I thank counsel for affirming its true origins.

Ms. Lively concludes her response to the motions to quash by making a misleading statement, claiming to have met and conferred with me. The email in Exhibit B shows that was arranged but cancelled due to an emergency but the alternative communication method (which was previously offered to me) was ignored and no attempt was made to offer an alternative time. Ms. Hudson does not state that meet and confer was attempted, she states it took place as a fact. Meet and confers took place with content creators who were **not** referred to in her letter - a detail Ms. Hudson has neglected to make clear.

Ms Lively also states in her letter, *"Based on the ThirdParties' representations made in meet and confers, public statements, and/or information provided in their moving papers, there is no further information required from the Subpoenas as to these specific Third-Parties **at this time**. Ms. Lively has therefore withdrawn the Subpoenas as to them."*. This statement gives the false impression that the subpoena for my data was withdrawn because I (and the other content creators) gave Ms. Lively information. I certainly did not as there was nothing to give. The voluntary contact I made to Wayfarer counsel, was my own choice, without prompt, request, payment/incentive and received no response. Therefore, it does not come close to being described as a

smear campaign. The insertion of "at this time" suggests that the door is being left open to attempt this again in future, alternative account or myself personally and this is exactly what I sought a Protective Order to avoid. I emailed to clarify and was advised, "The subpoena has been withdrawn in its entirety **as to your account**. Confirmed that we do not intend to **renew this** subpoena **as to your account**." (**Exhibit D**). The wording is vague and offers no assurances that I will not be dragged through this farce again in the future.

The fact that Ms. Lively served a multitude of subpoenas that appear to be procedurally flawed, hinted at bad faith. She has now withdrawn the ones that that have been challenged with no explanation or apology. She has not attempted to explain to me, **or the court**, why she embarked upon this disastrous course of action, and she cannot, because it is inexplicable. There was no basis other than to annoy, harass and inconvenience predominantly female content creators who do not rush to adulate her. All this action has done is expose the basis for Ms. Lively's decision to serve supoenas on content creators selected at random – her amour propre.

There is an abundance of case law which confirm that improper and bad faith subpoenas issued under FRCP 45. Clearly, subpoenas are being issued with no genuine purpose than to serve as a PR prop and claim a false narrative that I gave information and was part of a smear campaign. I've already referred to three subpoenas where the notice was provided by a TMZ leak and the entire contents of Vanzan ended up in the New York Times. I am not here to be used as a PR spin to cure Ms. Lively's disastrous image woes.

I respectfully request the following relief from the court:

1. Enter a protective order barring a reissue of any subpoena for my data on any platform, to anonymous or non-party individuals without court leave.
2. Award punitive damages as a sanction for abuse of process.
3. Grant any other relief the Court deems just and proper.

Respectfully submitted

Leanne Newton

# Exhibit A

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: SUBPOENAS TO X Corp for Information from** **X Content Creators 1-20,** Non-party Movant Leanne Newton | **MOTION TO QUASH SUBPOENA** Served to X Corp |
| Served in the matter of Case Nos: 1:24-cv-10049-LJL; 1:25-cv-00449-LJL | Served by: |
| **Blake Lively** Petitioners | Esra Hudson Manatt Phelps & Phillips, LLP |
| | On behalf of: |
| V | Blake Lively |
| **Wayfarer Studios LLC, et al.,** | |

PLEASE TAKE NOTICE that non-party Movant Leanne Newton, hereby moves this

Court to accept this pro se Motion to Quash pursuant to Federal Rules of Civil Procedure § 45(d)(3) and 45(c)(2), to quash or revoke the subpoena issued to X Corp, dated 3rd July 2025, seeking personally identifiable information and private data associated with my X account @kiarajade2001 or YouTube channel @leannenewton1572. Esra Hudson, counsel for the party who served this subpoena has erroneously misspelt the account username "@kiarajade200" – omitting the "1" at the end. For clarity, the account @kiarajade200 does not exist but when it is searched for, the only account suggested is mine – see **Exhibit A.**

I am filing this motion pro se to ensure there is a response from myself on file before the deadline we have been advised of 31st July 2025. I have very little information regarding this subpoena (some accounts have not yet received a copy even at this late stage, including myself). Ms. Hudson, thus far, failed to return my telephone calls or respond to my emails. I have found her office to be evasive and uncooperative in addressing my questions and concerns, an issue other subpoenaed non-parties have also experienced. Even when subpoenaed non-parties have demonstrated the difficulties they have experienced, the interaction has been misrepresented to the court (dkt 449). On 18th July 2025, Ms. Hudson filed a letter to the court stating, *"One subpoenaed content creator even went so far as to record a call with a receptionist from Ms. Lively's attorney's office without express consent and then posted the recording on YouTube"*. Ms. Hudson then proceeded to include a link to the content creator's show where he was recording his call with a receptionist from her law firm. The video very clearly showed that the content creator had notified the receptionist that the call was being recorded at the start of it and the receptionist had *chosen* to continue the call under those circumstances. She then suggested in a footnote that the content creator had committed a crime, which is not true.

The response deadline in the X Corp subpoena is due on July 16 2025, however notice was not sent until 17th July 2025. I am aware that the deadline for compliance with the Google subpoenas has been extended to 31st July 2025 and assume that courtesy has also been extended to include X Corp. I am concerned that tactics may have been employed to cause confusion

and/or delay so that I will miss my chance to file on time given the treatment of another nonparty subpoena that was not issued as part this lawsuit but has material relevance to it.

As I am a British citizen and resident, I will be making my arguments based on both

British and American laws to ensure all potential bases are covered.

## I. INTRODUCTION

This Motion to Quash refers to a subpoena served on X Corp, which is seeking the private and personal information of twenty X creators under the premise that we are engaged in a smear campaign against Plaintiff Blake Lively. The subpoena is unsupported by any evidence of good faith basis and not a single solitary offer of proof exists to insinuate any connection between the subpoenaed content creators and any party who is the subject of the underlying case. Further, such inquiries should be made directly to the parties of the underlying case, to obtain connections to third parties. It is monstrously inefficient to seek connections to the Wayfarer Parties through selecting third parties at random for what amounts to a digital strip search. It also has the effect of chilling freedom of speech and expression, both of which are protected under the Constitution of the United States of America. If that wasn't already enough, I believe that a request of this nature compromises the safety and privacy of non-parties who never intended, or foresaw, that they would be pulled into this litigation.

I create content on various social media platforms and

report on the publicly available legal filings in this case, and the various related lawsuits and motions filed across multiple jurisdictions. In many of my YouTube videos, I have openly shared my own experience of

domestic abuse and the years long criminal proceedings that followed, along with the effect of all that on myself and my family. Like many others, I was hopeful of the positive impact that the movie 'It Ends With Us' would have on bringing awareness to the serious issues of domestic abuse and sexual violence and aid women to recognize the signs of an abusive relationship. I hoped that the partnership with a charity such as No More would provide desperately needed resources to anyone affected who was seeking help and advice. I had seen
Justin Baldoni's previous work which had centred on sensitive topics, including Cystic Fibrosis, and I was optimistic that he would do justice to the subject matter of the film.

When the promotion was underway, it was clear that it was lacking any messaging about domestic violence. Mr. Baldoni was the only cast member who was vocal about domestic violence and infact, on the occasions Ms. Lively was asked a question about domestic abuse or how people could share their experiences with her, she scoffed, laughed and answered with an inappropriate joke. The rest of the promotion fared no better with cross-promotions of hair care products and alcohol (which was completely at odds with the intended supportive messaging surrounding domestic violence) and name-dropping her famous friends, along with their clothing brands and songs. There was further controversy when Brandon Sklenar filmed a junket with Ryan Reynolds, who portrayed a *"jealous husband"*, Hugh Jackman portraying a *"jealous best friend"* and Mr. Reynolds' mother portraying a *"jealous mother-inlaw"*, whilst simultaneously fixating on a close-up image of Mr. Sklenar's (clothed) posterior. Like many people, I was horrified that not only was the important message intended to raise

awareness of domestic abuse being erased, but that the people in charge of the marketing and promotion were mocking it and even imitating some of the behaviors that are commonly

associated with domestic abuse." Then we were all told to *"grab your friends and wear your florals"* when we go to see the movie. Ms. Lively also claimed that the movie *"is not about domestic violence""*even though the book's author (Colleen Hoover) has expressly stated that it was written based on the abuse her own mother had endured. It became evident that Ms. Lively and Mr. Reynolds had hijacked the promotion of a movie that was intended to benefit vulnerable people and used it promote themselves and their businesses, whilst excluding the one person who was sticking to the intended message, and they appear to be confused as to why it did not make them look good.

Ms. Lively, who still cannot accept that the criticism against her online is entirely organic and of her own making, has made yet another move guaranteed to make matters far worse for her reputation by lashing out at content creators on social media. She appears to have failed to sufficiently prove her case of retaliation and with deadlines for discovery fast approaching, seems to be making a desperate attempt to circumvent the rights and privacy of others in the hopes of finding a connection between any Wayfarer party, or their counsel, and some of the negative online reports. She has resorted to throwing metaphorical spaghetti at the wall and seeing what sticks.

## II. FACTUAL BACKGROUND

I am #10 of 20 independent online commentators who lawfully comment on court filings and publicly available material related to high-profile litigation. I do not have **any** affiliation with the Defendants, Defendants' counsel, or anyone related to Defendants, in this matter. On 18ᵗʰ July 2025, I received notification from another subpoenaed X user to say that they believed I was on the subpoena and that my identifying information, including names, emails, addresses, IP logs, payment data, and other personal information was being sought. Not all of us have received a copy of the actual subpoena (including myself) and I have concerns that many people affected will not have the chance to defend their rights

against this subpoena due to not receiving notification.

The subpoena, issued by Plaintiff's counsel, Esra Hudson, requests the following from X Corp:

1. **Names, addresses, email accounts, and phone numbers including backups**

Any information Plaintiff wishes to collect regarding Wayfarer and communications with the media should be requested directly from Wayfarer instead of by searching through information obtained from the data controllers of random selection of accounts on social media that may have made negative remarks about Ms. Lively.

2. **IP addresses, login histories, and geolocation data**

Plaintiff has not explained, nor is it readily apparent, why my location has any bearing on this litigation. I reside in the United Kingdom, thousands of miles away from any of the Parties which should be the sum totality of the relevance of my location. Plaintiff has further not explained why they want this information going back to May 2024 when I did not begin

speaking about this topic until January 2025, following the New York Times "'We Can Bury Anyone': Inside a Hollywood Smear Machine" article was released. Prior to this, I had knowledge of Justin Baldoni through his acting roles. I was not aware any other Wayfarer Party (or their counsel). I was only aware of Ms. Lively as the wife of Ryan Reynolds, not for any of her own accomplishments. Furthermore, Ms. Lively, herself, makes a compelling argument that I have a constitutional right to privacy regarding my financial information. In her response to the Wayfarer Parties motion to compel her to disclose her own financial information (dkt 421), in this litigation which she elected to initiate and seek damages, she states, *"This argument falls woefully short of overcoming the general rule against seeking party assets and financial information and Ms. Lively's constitutional right to privacy of the same"*. Ms. Lively appears to recognize the basic elements of privacy rights that individuals are entitled to, despite her attempts to pierce mine (and several others).

### 3. X account information, including payment sources.

No third party has access to add additional money to an X creator's. Until a few days before day the X Corp subpoena was noticed, I was not monetized on any platform, and I am not monetized on X or any other platform.

### 4. Bank account and credit card information

I am interested to know what could possibly be gained by accessing my bank account and credit card information. Plaintiff claims to be looking for signs that as a content creator, I am allegedly being paid by someone outside of AdSense (on my YouTube account) to create my content favorably to Wayfarer/negatively to Ms. Lively and Mr. Reynolds. This request for my financial records is overwhelmingly invasive. I restate that any information Plaintiff wishes to

collect regarding Wayfarer and communications or payments with media and social media should be requested directly from Wayfarer instead of chasing down every account that may have made negative remarks about Ms. Lively and demanding I show my private financial information (along with anyone whom I share a bank account with). I fail to see why information such as bank numbers would be required for any other purpose than to issue a further subpoena to the financial institutions with whom I conduct my business, to obtain fuller financial records which, have no relevance to Ms. Lively's claims and are grossly intrusive. Furthermore, this information would be futile to Ms. Lively as I am a British citizen and resident and a subpoena served on me personally would be unenforceable without going through difficult channels.

### 5. Back up recovery details, premium services, and account usage history

It is unclear what my back up recovery details or premium services have to do with any part of this litigation. This request needs clarification if the Court grants her this invasive subpoena.

Given Mr. Reynolds was dismissed as a party on 9th June, I finding it concerning that he is referred to as "a party in this action" within the definitions of a subpoena dated 3rd July 2025 (**Exhibit B**) This seems at odds with the courts order dated 18th June 2025 and as far as the content creators are aware, Mr. Reynolds is not alleging any untraceable "retaliation campaign" for raising allegations of sexual harassment. I find this heightens my concerns that this is a fishing expedition, intended to cause intimidation and harassment.

I have been left with little time to respond before the deadline. Out of an abundance of caution, I am adhering to the date of 31st July 2025, regardless of the original typo error in my name.

## III. LEGAL STANDARD

A. The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial

Matters (UK LAW).

B. UK GDPR and the Data Protection Act 2018 (DPA) (UK LAW).

C. Article 8 European Convention on Human Rights (ECHR) and Human Rights Act 1998 (UK LAW).

D. Under Rule 45(d)(3)(A), a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter or subjects a person to undue burden (US LAW).

E. Rule 45(c)(2) states regarding the place of issue: "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person" (US LAW).

F. Section 2702(b)(3) of the Stored Communications Act authorizes an ECS or RCS provider to divulge the contents of communications when "lawful consent" has been given to do so (US LAW).

## IV. ARGUMENT

### 1. UK LAW

I am a British citizen and resident, as such American courts have no jurisdiction over me or my data.

**Once a subpoena leaves its jurisdiction, it becomes nothing more than a wish list.**

My starting point is that, in U.S litigation it is considerably difficult to obtain documents and testimony from non-parties in the United Kingdom than it is from U.S citizens.

### A. <u>Hague Convention and Evidence (Proceedings in Other Jurisdictions) Act 1975 (EPOJA)</u>

To be entitled to examine or obtain documents from a non-party in the UK, U.S litigants must first submit a letter of request (*letter rogatory*) to the UK Central Authority, who then forward it on to the Senior Master of the High Court. The request must show that a non-party's evidence is sufficiently relevant to a material issue in the action. The British court must also be satisfied that the party seeking the discovery of the non-party could not obtain the information elsewhere, that it would be unfair to require a party to proceed to trial without this information, and that the non-party discovery will not lead to undue delay or unreasonable expense. Ms. Lively's counsel has not followed any of these steps. They have instead chosen to send out a series of broad and improper subpoenas to tech companies and cross their fingers in the hope that some companies may fall for it. They have effectively abused their subpoena power to create what can only be described as *spam* subpoenas.

The English courts have frequently interpreted the EPOJA 1975 to apply to narrow requests and are increasingly denying overly broad requests which could be construed as *"fishing expeditions"*.

### B. <u>UK General Data Protection Regulation (GDPR) and the Data Protection Act 2018 (DPA)</u>

The territorial scope of the GDPR would apply, namely because although X Corp isn't established in the UK, it offers goods or services to people in the UK or monitors the

behaviour of people in the UK. The UK GDPR applies to processing related to that targeting activity. X Corp is certified under the UK Extension to the EU-U.S. Data Privacy Framework (DPF). Their certification became active on 4th April 2024 and will be valid until 3rd April 2026[20].

Under the DPF, the U.S. company must have a **lawful basis** for processing and disclosing the data—such as consent, legal obligation, or legitimate interest. Furthermore, disclosure in response to a U.S. subpoena may not qualify unless it aligns with UK GDPR exceptions or is approved by a UK court. As a U.S entity, X Corp **cannot simply release UK citizen data** to third parties (including courts or law enforcement) without ensuring GDPR compliance.

Under DPA 2018 and UK GDPR, personal data can only be disclosed if there's a lawful basis—such as consent, legal obligation under UK law, or vital interest. A U.S. subpoena **does not qualify** as a lawful basis unless validated by a UK court.

C. **Article 8 European Convention on Human Rights (ECHR) and Human Rights Act 1998 (UK)**

Article 8 guarantees the right to respect for private and family life, home, and correspondence. When a U.S. subpoena seeks data about a UK citizen, especially from a UKbased entity or under UK jurisdiction, Article 8 becomes a key barrier unless:

1. The request is <u>lawful</u>, <u>necessary</u>, and <u>proportionate</u>

2. It's processed through UK legal channels, such as the Hague Evidence Convention

3. The UK court determines that the disclosure does not violate privacy rights

A UK company or data processor may refuse to comply with a U.S. subpoena if doing so would breach Article 8 protections. Even if the data is held by a U.S. company, UK GDPR and the Data Protection Act 2018 still apply where the data concerns UK citizens, which I am.

Most of these issues have already been addressed throughout this motion under UK law too, but for the sake of completeness, I will address the effect of US law on them. I have engaged in lawful commentary on a high-profile lawsuit — a matter of public concern. I am not a party to the case and have no affiliation with any party. Plaintiffs have not provided evidence of wrongdoing, much less satisfied the burden for disclosure, merely because I express a perspective disfavored by the Plaintiff. Disclosure in this context would **chill lawful expression**.

### D. <u>Rule 45(d)(3)(A)</u>

The demand for extensive personal data—including banking information and

geolocation—goes far beyond what is relevant or necessary. It has the potential for inclusion of private data of not only non-parties, but also the spouses and family members of non-parties who are included in joint bank accounts, live at the same address, share the same phone number, email address, credit card, social media accounts, or use the same IP address. I am not a party to this action and should not be forced to bear the burden of compliance, much less my loved ones. Plaintiff cannot offer one single piece of evidence to explain or support these requests.

The only reason I am being pursued in this manner is because I do not speak favorably about Ms. Lively, her husband, or her legal team that is seen as abrasive, mean spirited, and unprofessionally careless of any party's personal information, including their own client's.

### E. <u>Rule 45(c)(2)</u>

In accordance with the Uniform Interstate Deposition and Discovery Act (UIDDA), and FRCP § 45(c)(2), subpoenas served outside of 100 miles of the issuing court must be issued in the court district of the entity being served. X Corp is based in Texas and Ireland. I live in the UK[23]. It's fair to say that the locations of both X Corp and myself exceed the limit of 100 miles under FRCP § 45(c)(2), by a factor of 18 at minimum. Furthermore, as a UK citizen, X Corp in Ireland would be the data controller for my account but Plaintiff has served a

subpoena for my information to the X Corp in Texas.

## F. § 2702(b)(3) of the Stored Communications Act

Section 2702(b)(3) of the SCA creates an exception based on lawful consent that applies to civil discovery. The SCA authorizes an ECS or RCS provider to divulge the contents of communications when "lawful consent" has been given to do so. X Corp does not have my lawful consent to disclose any of my personal information. *J.T. Shannon Lumber Co. v. Gilco Lumber Inc.,* No. 2:07-cv-119, 2008 WL 3833216 (N.D. Miss. Aug. 14, 2008), reconsideration denied, 2008 WL 4755370, at *1 (N.D. Miss. Oct. 29, 2008). The plaintiff sought all e-mails in the three individual defendants' personal Microsoft, Yahoo!, and Google accounts. The court found the *"statutory language [] clear and unambiguous"* and ruled that a Rule 45 subpoena does not constitute an exception to the SCA allowing an ECS provider to divulge the contents of communications. Id. at *1–*2.

## G. Plaintiff Failed to Obtain a Court Order Before Attempting to Unmask

### Anonymous Accounts

I object to the subpoena to the extent it seeks information about many anonymous YouTube and X users without first obtaining an appropriate court order as required by the First Amendment. See *Smythe v. Does 1-10,* No. 15-mc-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) (denying the motion to enforce a subpoena against Twitter where movant failed to overcome user's First Amendment right to anonymous speech). Before a subpoena can be issued to a service provider like Meta for information regarding the identity of an anonymous internet user, the party seeking the information must first *"persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." Music Grp. Macao Commercial Offshore Ltd. v. Does,* 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Capital Mgmt., L.P. v. Doe,* 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)); *Mirza v. Yelp, Inc.,* No. 21-MC-621, 2021 WL 3772039, at *1-2 (S.D.N.Y. Aug. 25, 2021).

While attorneys affiliated with Manatt Phelps & Phillips, LLP, may be accustomed to filing sham Doe lawsuits as they have done in this case to access the entire contents of Defendant
Jennifer Abel's phone in which they filed a fabricated complaint with false causes of action using  Mr. Reynolds' shell company, in order serve a discrete subpoena to seemingly legitimize information they may already have been in possession of. Once the Vanzan lawsuit had served its purpose, it was quietly withdrawn without any Wayfarer Party (or their counsel) being aware that it existed. This is not the way to litigate fairly. Every person being served a subpoena has the right to be notified, legally represented, and protected, either by counsel in a standard lawsuit, or by a presiding judge who has heard the pleadings and determined the legal necessity of said subpoena in a Doe situation, so that Does have legal representation to protect their rights.

I have concerns that not all content creators will have the chance to defend themselves since there is no complete list available for whom Ms. Lively has requested this overbroad, intrusive information from. I request the court see that all Doe type subpoenas served without court order from the appropriate District Court, be revoked and any future subpoenas of this type be properly filed by Ms. Lively being required to present her prima facie case to the appropriate District Court for a court ordered subpoena to protect the First Amendment rights of everyone involved. This has not been done in my case so far.

In accordance with the Uniform Interstate Deposition and Discovery Act (UIDDA), and FRCP § 45(c)(2), subpoenas served outside of 100 miles of the issuing court must be issued in the court district of the entity being served.

## H. Disclosure Would Cause Irreparable Harm

I am concerned about the possibility of myself or my loved ones being exposed to the same harm that came to the

Wayfarer parties. Safety and privacy are of the utmost importance. The chilling effect on protected speech and protected privacy due to the concerns that come with private information being exposed, is profound.

Ms. Lively and her same law firm, Manatt Phelps & Phillips, LLP, have already set one dangerous precedent during this lawsuit, namely, the Vanzan sham lawsuit where Ms. Lively obtained the entire basis of her retaliation claims spelled out in her CRD complaint, the New York Times article, and subsequent lawsuit. Despite the New York standard for filing a Doe lawsuit outlined in *Sandals Resorts International Limited v Google Inc.*, which states: *"where a petitioner demonstrates that [it] has a meritorious cause of action and that the information sought is material and necessary to the actionable wrong"* (*see Bishop v. Stevenson*).

In this case, the court ruled: *"The petition fails to demonstrate that Sandals has a meritorious cause of action."* Adding, *"As the email at issue does not contain assertions of objective fact regarding Sandals, the email cannot form the predicate for a defamation claim based on the first criterion stated above. Furthermore, as Sandals offers no evidence of the harm the account holder's email has caused it, Sandals has failed to prove the fourth element of defamation cited above. "Therefore, Google shall not disclose the requested information relating to the account holder. Accordingly, it is hereby ADJUDGED that the petition is denied, and this proceeding is dismissed."* (Emphasis added)

It appears there could be no retaliation claims without the ill-gotten information obtained by the Vanzan sham subpoena which appears to be an abuse of process. Yet this case continues and now baselessly seeks my, and 19 others', private information. Ms. Lively must not be allowed to collect such sensitive information to use in a harmful way again. The article written by former Defendant New York Times, appears to have begun being written months before any judicial proceeding was ever filed in court, and states that information it relied upon came from *"thousands of pages of emails and texts"* which we now know were produced by the Vanzan

sham subpoena. Ms. Lively and her law firm cannot be allowed to misuse the courts of New York as a witch hunt against those who speak their opinions about her conduct as a public figure and a party to a public judicial proceeding.

I have never been contacted by any Wayfarer Party or their counsel. However, I am not going to mislead the court and claim I've never contacted Wayfarer counsel. I have freely disclosed that I have sent information that I believed to be important to some of Wayfarer's counsel via their publicly available email addresses, including the metadata discovery details in footnote 17, and the video of YouTuber Colonel Kurtz playing an uncovered recording of WME CEO Ari Emmanuel admitting that he had terminated Justin Baldoni's contract with WME because Of Blake Lively and Ryan Reynolds[30]. I was never asked to do anything on behalf of any party, I have not been paid by any party and the communications I did send of my own volition to Wayfarer counsel, received no response. It remains unclear by what stretch

of the imagination Ms. Lively believes that I am part of some secret plot to smear her when I have been open about what I have sent to Wayfarer counsel. Furthermore, Ms. Lively cannot attempt to obtain these communications from me as I am under the UK jurisdiction.

Ms. Lively proclaims herself to be the *"voice of women"* and vowed to not stop speaking for us, while simultaneously causing lasting harm to woman after woman. I have not engaged in any alleged *"smear campaign"*, nor has Ms. Lively offered a modicum of evidence to support her belief to the contrary. I should not have to endure this abusive and harassing attempt to violate my privacy rights, as well as my right to comment on a public lawsuit.

## V. CONCLUSION

This subpoena fails on multiple grounds. Aside from the obvious jurisdictional defects which Ms. Lively cannot overcome, it is breathtakingly overbroad and invasive, putting not only myself as a non-party to this case at risk, but also my loved ones who share bank accounts, credit cards, physical

addresses, IP addresses, phone numbers, etc. It is baseless since there is not one shred of evidence that I am or have ever been paid by any of the Wayfarer parties or their counsel, or anyone affiliated with them. The evidence does not exist because it did not happen. This is yet another misstep that will bring even more criticism to her already shattered public image.

## VI. RELIEF REQUESTED

I respectfully request that the Court:

1. Revoke this and all non-party subpoenas served on Internet providers, phone providers, social media and streaming sites, such as Google, YouTube, IG, TikTok, X, Reddit, etc. that have not been properly presented to a court and had a prima facie showing that led to a court order permitting the subpoena to be served (noting that an out of district subpoena must also pass inspection in the district it will ultimately be served in).

2. Alternatively, quash the subpoena served on X Corp for Movant, #10 and all others 1-

   20.

3. Alternatively, quash the subpoena for Movant #10 as I am beyond reach and the subpoena does not adhere to proper protocols for foreign citizens.

4. Alternatively, accept a declaration from Movant to confirm they did not participate in any smear campaign or create content on behalf of any of the Wayfarer Parties (or their counsel).

5. Grant a Protective Order pursuant to Rule 26(5)(C).

6. Grant such further relief as the Court deems just and proper, including but not limited to sanctions for costs to cover this completely unnecessary and violating subpoena served without court order, cause or reasonable explanation. It has already consumed days of time to determine its validity.

Respectfully submitted,

Leanne Newton

# Exhibit B

Lively v Wayfarer Studios LLC etc al 1:24-cv-10049 LJL



# Exhibit C

**manatt**

Ezra A Hudson
Manatt, Phelps & Phillips LLP
Direct Dial: (310) 312-4361
ehudson@manatt.com

July 29, 2025

**VIA EMAIL**
X Corp
c/o CT Corporation System
330 N. Brand Blvd, Suite 700
Glendale, California 91203
legalnotices@x.com

Re:    Lively v. Wayfarer Studios LLC et al. (24-CV-10049)
       Notice of Partial Withdrawal of Subpoena

Dear Custodian of Records:

We represent Plaintiff Blake Lively in the above-referenced matter. On July 3, 2025, we served a subpoena duces tecum on X. A copy is enclosed for reference. In that matter, the subpoena in. Please be advised that Ms. Lively is withdrawing Request No. 10, which sought certain information related to the account @kjsnajade2001. You are not required to produce any documents or information responsive to Request No. 10.

All other requests in the Subpoena remain in full force and effect, and your compliance obligations with respect to those requests are unchanged.

Please feel free to contact me with any questions.

Sincerely,

Ezra A Hudson

Enclosure

Manatt, Phelps & Phillips LLP   2049 Century Park East, Suite 1700, Los Angeles, California 90067   Tel: 310.312.4000 Fax: 310.312.4224

# Exhibit D



**Lively v. Wayfarer Studios et al (24-CV-10049) - Notice of Partial Withdrawal of Subpoena**

Climaco, Katelyn <KClimaco@manatt.com>                                    Sat, 26 Jul 2025 at 21:10

The subpoena has been withdrawn in its entirety as to your account. Confirmed that we do not intend to renew this subpoena as to your account.

Katelyn Climaco

**Following my attempt to email this document on 28th July, I was advised today that there was an unspecified issue with the electronic submission and I should submit via post**

RECEIVED
AUG 0 6 2025
PRO SE OFFICE

USM4P
SDNY



**E**

## USPS PRIORITY MAIL EXPRESS

PRIORITY MAIL
EXPRESS
U.S. POSTAGE PAID
Shippo
USPS Ship

Ship Date: 08/04/25
Weight: 6 oz

**RDC 07**

LARA HART
17518 SPICEWOOD SPRINGS LN
SPRING TX 77379

SIGNATURE WAIVED

UNITED STATES COURTHOUSE
US COURTHOUSE PRO SE INTAKE UNIT
500 PEARL ST
NEW YORK NY 10007-1316



USM4P
SDNY

