

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569 Tel: 212-421-4100 Fax: 212-326-0806 pryorcashman.com

**Maxwell Breed**
Partner

Direct Tel: (212) 326-0113
mbreed@pryorcashman.com

August 12, 2025

**BY ECF**
Hon. Lewis J. Liman
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: *Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049-LJL**

Dear Judge Liman:

Nonparties Katherine Case and Breanna Butler Koslow respectfully oppose the letter motions to compel the production of privileged materials filed by Ms. Lively (Dkts. 585, 586).

Ms. Lively—a public figure of substantial means—demands privileged attorney-client and work-product communications hoping to come up with evidence of a nonexistent (and ultimately nonactionable) "smear campaign" that Ms. Lively claims, without support, Ms. Case and Ms. Butler Koslow are shielding under claims of privilege.

Counsel for Ms. Lively should be aware, even from our nonparty productions, that our clients were not involved in any "smear campaign" and that the few materials withheld are privileged. Ms. Lively's counsel did not meet and confer with us on many items raised in their papers. Had they, their false assumptions would have been corrected. To that end, we will be providing an expanded privilege log in coming days.[1] As this docket needs no more vitriol or hyperbole, we respectfully correct the factual record below:

## I. Background

Heeding this Court's June 24 order, we coordinated with Ms. Lively's team to collect materials responsive to her document subpoenas. We established search terms, trained a review team, and reviewed. Despite the delay in Ms. Lively's deposition (the professed basis for expedited review), we made the vast majority of our production on July 16, 2025. Ms. Lively's counsel then identified potentially privileged communications and inquired whether their production had been intentional. We investigated, clawed back certain materials, and re-produced on July 19, 2025.

Although "hundreds" of *records* were clawed back, that figure is knowingly misleading as it includes artifacts embedded in text chains.[2] Fewer than 75 text "conversations"—each a 24-hour period of messages containing a hit on a search term—were clawed back. After the claw back, we

[1] The Wayfarer Parties seek to review communications with overlapping claims of privilege. We will therefore confer with them regarding their claims of privilege as we finalize our revised privilege log.

[2] Having used the same vendor as Ms. Lively, when we met and conferred on this issue, Ms. Lively's counsel represented that they understood this fact and that there were not, in fact "hundreds" of documents clawed back.



met and conferred with counsel *once*, on July 18, about privilege. We explained the inadvertent production, provided grounds for asserting privilege, justified use of a categorical log, and discussed a single participant in a single withheld communication.[3]

We also discussed the waiver doctrine and shared our positions that (1) the common interest exception to waiver applied, given that the employees, TAG, and Mr. Baldoni shared a common legal interest in defending themselves, including from Ms. Lively's unfounded claims about a "smear campaign" against her; and (2) the communications were protected by overlapping claims of privilege, as both individual employees and the employer entity received legal guidance. Ms. Lively's counsel never stated, either then or after, that any privilege assertion was contested.

## II. Argument

**Ms. Lively Misstates the Law on Privilege.** Ms. Lively suggests that privilege cannot attach to the challenged communications because they occurred before the retention of certain attorneys. This ignores well-established precedent holding that parties may seek and receive legal advice in anticipation of litigation before formal retention and that such communications are privileged if made in furtherance of legal advice. *See, e.g.*, *Benedict, on Behalf of Duke & Benedict, Inc. v. Amaducci*, No. 92 CIV. 5239 (KMW), 1995 WL 23555, at *1 (S.D.N.Y. Jan. 20, 1995). Regardless, as will be made clear through our revised privilege log, no communications with outside counsel occurred before retention. Apart from two communications between Ms. Case and her father, the first withheld communications are from December 21, 2024.

**Ms. Lively Misstates the Law on Waiver.** Ms. Lively contends that privilege was waived by the inclusion of TAG employees and third parties, such as Jed Wallace. But privilege is not waived by the presence of (1) individuals who share a common legal interest in the advice rendered, or (2) individuals whose involvement is reasonably necessary to obtain or act upon legal advice. *See* *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (no waiver when communications are engaged in a "common legal enterprise" with the holder of the privilege). TAG, its employees, and others involved in the PR representation of the Wayfarer parties, were entitled to coordinate with counsel and to pursue a unified legal strategy. Crisis PR professionals routinely coordinate with legal counsel on both PR **and** legal matters. None of the individuals listed by Ms. Lively were outsiders; all were instead integral to the common legal strategy. No waiver of attorney client privilege was effected as a result. *Id.*

Ms. Lively relies on *Haugh v. Schroder Inv. Mgmt. N. Am. Inc* (S.D.N.Y. 2003) to suggest that communications with PR professionals are not privileged. But her reliance is misplaced because the communications in question were not mere transmittals of information as a part of a PR campaign, but related to a common legal interest. 2003 WL 21998674, at *3 (noting that there was no legal character to the communications in question). The parties to the challenged communications—particularly in the wake of Ms. Lively's action—shared a common legal interest: vindicating themselves and prevailing in this suit. *See Schaeffler*, 806 F.3d at 41 (noting that a common legal interest existed because the parties to the communications "had a strong common interest in the outcome of [the] legal encounter"). The cases cited by Ms. Lively do not involve situations where agents were sued along with their clients and are therefore inapposite.

---

[3]. Following Ms. Lively's inquiry, we re-reviewed the **one** communication at issue. Upon further review and additional factual inquiry, we determined that, although the communication involved counsel and opened with "ATTORNEY CLIENT PRIVILEGED," common interest privilege did not apply and we and produced that communication.

**Inclusion of Former Employees Does Not Work a Waiver.** Ms. Lively's assertion that privilege was waived when Ms. Case left TAG is incorrect. Courts recognize that communications with former employees remain privileged if made to assist counsel in gathering facts or formulating legal strategy related to the former employee's work. *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005) ("Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment."); *Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001). The content and purpose of the communications, not employment status, governs privilege. And, correcting a prior mistaken understanding on our part, Ms. Case's last day at TAG was January 24, 2025.

**Work Product Doctrine Squarely Applies.** Plaintiff dismisses the applicability of the work product doctrine by characterizing the challenged communications as mere "PR strategy." But work product protection extends to all materials prepared in anticipation of litigation by or for a party. *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *Schaeffer*, 806 F.3d at 43–44. The withheld materials—which include drafts of the counterclaims filed in this action—fall squarely within this protection.

**Communications between Ms. Case and Her Father Are Privileged.** Plaintiff demands production of messages between Ms. Case and her father, a litigator at Dykema Gossett PLLC, suggesting that such communications could only be privileged if Ms. Case were a party to litigation or was concerned about potential liability. But the communications involve Ms. Case receiving legal advice from her father and retained counsel, having retained his firm as of August 28, 2024. Seeking guidance on how best to conduct herself was an exercise in prudence, and any insinuation to the contrary is scurrilous.

***In Camera* Review Is Not Warranted.** *In camera* review is reserved for situations involving credible bases to question privilege claims predicated on non-privileged evidence. *Micillo v. Liddle & Robinson LLP*, No. 15-CV-6141 (JMF), 2016 WL 2997507, at *6 (S.D.N.Y. May 23, 2016) (collecting cases). Ms. Lively offers no evidence in support of *in camera* review—only speculation and rhetoric. Absent specific and substantiated evidence of improper withholding, *in camera* review should be denied.

**Ms. Lively's Motion Is Improper.** Ms. Lively's motion imposes additional burden on two nonparties, who are not celebrities, public figures, or high net worth individuals. Evidently, Ms. Lively hopes that she will find in Ms. Case's and Ms. Butler Koslow's privileged communications what she did not find in their productions. Based on our review of the materials produced, the productions demonstrate that there was no malign, covert effort to "smear" Ms. Lively. The many produced messages show that the PR plan was reactive, not proactive, and that "bots" were never used. The communications show that negative content posted by content creators was organic—driven by Ms. Lively's own actions, like her wardrobe choices and liquor promotion. As perhaps exacerbated by her counsel's aggressiveness—negative internet perception has been *public* discourse about a *public* figure, not the product of a conspiracy.

## III. Conclusion

The motions to compel should be denied. The communications at issue are privileged and no waiver of that privilege was effected. Ms. Lively's request for in camera review is unsupported and should be denied. We thank the Court for its patience and consideration.



Hon. Lewis J. Liman
August 11, 2025
Page 4 of 4

                                                             Respectfully submitted,

                                                             Maxwell Breed

cc.       Counsel of Record (by ECF)