UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| | | |
|---|---|---|
| Blake Lively, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 1:24-cv-10049-LJL |
| | § | (Consolidated with 1:25-cv-00449-LJL) |
| Wayfarer Studios LLC, a Delaware Limited | § | **JURY TRIAL DEMANDED** |
| Liability Company; Justin Baldoni, an indi- | § | **ORAL ARGUMENT REQUESTED** |
| vidual; Steve Sarowitz, an individual; It | § | |
| Ends With Us Movie LLC, a California | § | |
| Limited Liability Company; Melissa Na- | § | |
| than, an individual; The Agency Group PR | § | |
| LLC, a Delaware Limited Liability Com- | § | |
| pany; Jennifer Abel, an individual; Jed Wal- | § | |
| lace, an individual; and Street Relations, | § | |
| Inc., a Texas Corporation | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OF LAW IN SUPPORT OF WALLACE
DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF BLAKE LIVELY'S SECOND
AMENDED COMPLAINT OR, ALTERNATIVELY, SEVER AND TRANSFER**

# TABLE OF CONTENTS

Page

I.   Introduction ...................................................................................................................1

II.  The Court's Opinion and Order Dismissing the Wallace Defendants ...............................3

III. The Defamation Exception of C.P.L.R. 302(a)(2) and (a)(3) ..........................................3

IV.  Section 302 (a)(1) Has Never Been Applied to These Facts ...........................................5

V.   The "New" Allegations Do Not Support Jurisdiction—Even If 302(a)(2) and
     (a)(3) Apply...............................................................................................................6

VI.  Argument ....................................................................................................................10

     A.   The Court Does Not Have Jurisdiction Over the Wallace Defendants..................10

          1.   None of Lively's allegations show New York overt acts connected to
               the conspiracy or Wallace's awareness of either the acts or their
               existence in New York. ......................................................................... 15

          2.   If Lively has made a prima facie case, the Court should hold an
               evidentiary hearing to test that prima facie case. ..................................... 20

     B.   Venue is Not Proper in this District. ................................................................... 21

     C.   Lively Fails to State a Claim Against the Wallace Defendants. ............................. 22

          1.   False Light.......................................................................................... 22

          2.   FEHA Aiding and Abetting ...................................................................25

          3.   Civil Conspiracy.................................................................................. 28

VII. Conclusion ................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrington v. New York Times*,
55 N.Y.2d 433 (N.Y. 1982) ............................................................................................4

*Bangladesh Bank v. Rizal Com. Banking Corp.*,
226 A.D.3d 60 (1st Dep't 2024) ...................................................................................15

*Bensusan Rest. Corp. v. King*,
937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 25 (2d Cir. 1997) ......................12

*Berdeaux v. OneCoin Ltd.*,
561 F.Supp.3d 379 (S.D.N.Y. 2021).......................................................................14, 15

*Berkshire Bank v. Lloyds Banking Grp. PLC*,
No. 20-1987-cv, 2022 WL 569819 (2d Cir. Feb. 25, 2022) ..........................14, 15, 20

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007).......................................................................11, 12, 13, 15

*In re Brookfield Infrastructure Partners L.P.*,
No. 24-MC-533 (LJL), 2025 WL 1503942 (S.D.N.Y. May 27, 2025)...................11, 18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................11, 13

*Cain v. Hearst Corp.*,
878 S.W.2d 577 (Tex. 1994)...........................................................................................4

*Calder v. Jones*,
465 U.S. 783 (1984)........................................................................................................11

*Cantor Fitzgerald, L.P. v. Peaslee*,
88 F.3d 152 (2d Cir. 1996).........................................................................................3, 4

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018).......................................................................10, 11, 12, 13, 20

*D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
78 N.E.3d 1172 (N.Y. 2017).........................................................................................13

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010)...........................................................................17

*Doe v. Gov't of the U.S. Virgin Islands*,
    771 F. Supp. 379 (S.D.N.Y. 2025) .................................................................................6

*Donini Int'l, S.p.A. v. Satec (USA) LLC*,
    No. 03-cv-9471 (CSH), 2004 WL 1574645 (S.D.N.Y. July 13, 2004) ...................................4

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013).................................................................................20, 21

*DuPont v. New Jersey State Police*,
    No. 08 Civ. 10220 (DLC), 2009 WL 2486052 (S.D.N.Y. August 14, 2009)............................4

*Ehrenfeld v. Bin Mahfouz*,
    881 N.E.2d 830 (N.Y. 2007).................................................................................13

*Fat Brands Inc. v. Ramjeet*,
    75 F.4th 118 (2d Cir. 2023) .......................................................................7, 14, 15

*Fischbarg v. Doucet*,
    880 N.E.2d 22 (N.Y. 2007).................................................................................13

*ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.*,
    775 F. Supp. 650 (S.D.N.Y. 1991) ........................................................................10

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)..........................................................................................12

*Keeton v. Hustler Mag., Inc.*,
    465 U.S. 770 (1984)..........................................................................................11

*Kernan v. Kurz-Hastings, Inc.*,
    175 F.3d 236 (2d Cir. 1999)................................................................................10

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
    34 A.D.3d 433 (2d Dep't 2006) ...........................................................................16

*Lawati v. Montague Morgan Slade Ltd.*,
    961 N.Y.S.2d 5 (1st Dep't 2013) ...................................................................14, 15

*Lehigh Val. Indus., Inc. v. Birenbaum*,
    527 F.2d 87 (2d Cir. 1975)..................................................................................10

*Licci v. Lebanese Canadian Bank*,
    984 N.E.2d 893 (N.Y. 2012).................................................................................14

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)................................................................................11

*Mount Whitney Invs., LLLP v. Goldman Morgenstern & Partners Consulting, LLC*,
    No. 15 Civ. 4479 (ER), 2017 WL 1102669 (S.D.N.Y. Mar. 23, 2017)....................................5

*Nursan Metalurji Endustrisi A.S. v. M/V TORM GERTRUD*,
    No. 07 CV 7687(GBD), 2009 WL 536059 (S.D.N.Y. Feb. 27, 2009) ....................................19

*Parke-Bernet Galleries, Inc. v. Franklyn*,
    256 N.E.2d 506 (N.Y. 1970)...................................................................................................13

*Paterno v. Laser Spine Inst.*,
    23 N.E.3d 988 (N.Y. 2014)....................................................................................................13

*Przewozman v. Charity*,
    2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023)........................................................................14

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014)........................................................................................4

*Schwab Short-Term Bond Market Fund v. Lloyd's Banking Grp. PLC ("Schwab II)"*,
    22 F.4th 103 (2d Cir. 2021) ...................................................................................................20

*Shamoun v. Mushlin*,
    No. 12 Civ. 3541 (AJN), 2014 WL 12776779 (S.D.N.Y. Mar. 26, 2014) ..............................5

*Suber v. VVP Servs, LLC*,
    No. 20-cv-08177 (AJN), 2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ...............................14

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)...................................................................................12, 18, 19

*United States v. Besneli*,
    2018 WL 443747 (S.D.N.Y. Jan. 16, 2018) ..........................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014).........................................................................................................11, 18

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...............................................................................................................20

*Yak v. BiggerPockets, L.L.C.*,
    No. 20-3498, 2022 WL 67740 (2d Cir. Jan. 7, 2022) .......................................................10, 11

**Statutes**

Lanham Act...........................................................................................................................................4

TEX. CIV. PRAC. & REM. CODE § 132.001(d).....................................................................................7

**Other Authorities**

C.P.L.R. 301...................................................................................................................................3

C.P.L.R. 302(a)(1) ..............................................................................................................5, 12, 13

C.P.L.R. 302(a)(2) ......................................................................................................................2, 3

C.P.L.R. 302(a)(3) ..............................................................................................................2, 3, 13

Jed Wallace ("Wallace") and Street Relations, Inc. ("Street") (collectively "Wallace Defendants") move to dismiss Blake Lively's ("Lively" or "Plaintiff") two causes of action against them in the Second Amended Complaint (Dkt. 520) ("SAC") or, in the alternative, request that the claims be severed and transferred to the United States District Court for the Western District of Texas where a previously filed case involving the same parties is pending and where Lively's claims could have been brought. *Jed Wallace and Street Relations, Inc. v. Blake Lively*, No. 1:25-cv-00163 (Dkt. 1) (W.D. Tex. Feb. 4, 2025) ("First Filed Case").[1]

The Wallace Defendants reassert all the grounds, points and authorities contained in their prior motion to dismiss (Dkt. 139) and memorandum of law (Dkt. 141) and incorporate them into this motion and memorandum by reference, as if repeated verbatim. In addition, the Wallace Defendants re-attach and incorporate herein Exhibit A—the Declaration of Wallace, individually and on behalf of Street, and the exhibits thereto—previously submitted with their prior motion to dismiss and memorandum.

## I.    Introduction

The Court dismissed Lively's first amended complaint against the Wallace Defendants for failure to make a prima facie showing of jurisdiction but gave her a second bite at keeping them in the Big Apple so long as she did so "by July 30, 2025, limited to the existing claims alleged against the Wallace Defendants." (Dkt. 426 at 37). The Plaintiff did so (just barely, at 11:57 pm on July 30) by filing the SAC where she again asserted two of her prior claims:[2] (i) "Aiding and Abetting Harassment and Retaliation," based on California law, for allegedly "participating in the

---

[1] The sole claim in Texas, the First Filed Case, is for defamation. (Amended Complaint in the First Filed Case, Dkt. 21).

[2] Lively had previously dropped her claim against the Wallace Defendants for Intentional Infliction of Emotional Distress. (Dkt. 335).

above-described coordinated 'astroturfing' campaign to discredit and 'bury' Ms. Lively'[3]" (SAC ¶ 411) which, as she testified, damaged her "reputationally"[4] and (ii) "False Light Invasion of Privacy," said to derive from the California Constitution, for "publicly disclos[ing] information or material regarding Plaintiff's marketing decisions, moral character, private life, and family, which showed Ms. Lively in a false light . . . that made Ms. Lively the object of scorn, pity, ridicule, humiliation, and other suffering . . . [and] [a]s a direct and proximate result of the said publicity and false and misleading disclosures, Ms. Lively sustained harm including to . . . her reputation." *(Id.* ¶¶ 435–36, 438).[5]

Both claims "sound in defamation" and are thus exempted from the reach of C.P.L.R. 302(a)(2) and (3) of the New York long arm statute ("Statute"). Section 302 (a)(1), also relied upon by Plaintiff, has never been applied in these circumstances. Even if one or more of the sub-sections apply, the Plaintiff has still not made a prima facie showing of jurisdiction because her "new" allegations are either (i) merely rewording of her old assertions, (ii) conclusory or (iii) fail to meet the requirements of the Statute or due process. *Compare* SAC ¶ 62 (alleging Ms. Nathan lived in New York) *with* Dkt. 84 ("FAC") ¶ 62 (same); SAC ¶¶ 293b, 293c, 293d, 293e, 293f, 293g, 293h, 293i, 293j, 293k (alleging Jed's involvement—while based in Texas—in August 2024) *with* FAC ¶¶ 215, 216, 217, 218, 223, 224, 226, 227, 237, 248, 249, 250 (same).

---

[3] Lively's complaint defines "astroturfing" as "the practice of publishing opinions or comments on the internet, in the media, etc. that appear to come from ordinary members of the public but actually come from a particular company or political group." (SAC ¶ 30). She testified that, when she alleges the Defendants meant to "bury her," she means "reputationally." (Ex. B, Lively Dep. Tr., 266:8–267:9).

[4] Excerpts from the deposition of Lively are attached hereto and incorporated herein as Exhibit B.

[5] The Court's July 16, 2025 opinion and order noted the defamation-like nature of the allegations: "Lively alleges that . . . Wayfarer and Baldoni shifted to a publicity strategy that involved purposely harming her reputation" (Dkt. 426 at 7) through an "alleged negative publicity campaign against Lively [which] largely took place outside New York." (*Id.* at 19).

## II.    The Court's Opinion and Order Dismissing the Wallace Defendants

The Court's thorough 38-page opinion assumed "the truth of the well-pleaded allegations of Lively's Amended Complaint" but granted the motion because "the few alleged actions targeting New York were taken by others, and there are no allegations suggesting the Wallace Defendants were aware of them." (Dkt. 426 at 2, 19). In addition, the Court found that Lively "does not argue that the Wallace Defendants themselves had contacts with New York that would satisfy C.P.L.R. 301 or 302. . . . Nor could she." (*Id.* at 22) In light of this, the Court concluded that Lively had to either bring her claims elsewhere or amend. (*Id.* at 37).

## III.    The Defamation Exception of C.P.L.R. 302(a)(2) and (a)(3)

Neither 302(a)(2) or (a)(3) apply here because they both contain an exception "as to a cause of action for defamation of character." This exception applies not only to express claims of defamation but also causes of action that "sound in defamation." *See Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 157 (2d Cir. 1996) ("*Cantor*") ("All of Plaintiff's claims are based upon [the] alleged defamatory statements. Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation.").

The effort to evade the defamation exception is patent here because Lively *does* allege a claim for defamation but only against Wayfarer, Baldoni and Heath and *not* the Wallace Defendants. (SAC ¶¶ 447–65). Yet the speech she complains of in her Defamation (and other) claim(s) overlaps with her two causes of action against the Wallace Defendants. *Compare id.* ¶¶ 450, 462 (Defamation allegation of "false statements of fact and false statements that conveyed a false meaning" which "damaged Ms. Lively's reputation") *with id.* ¶¶ 438, 411 (False Light and FEHA Aiding and Abetting allegations against the Wallace Defendants for "false and misleading disclosures [as a result of which] Ms. Lively sustained harm, including to her business and profession,

as well as her reputation" and "participating in the above-described coordinated 'astroturfing' campaign to discredit and 'bury' Ms. Lively," as she said, "reputationally." (Ex. B, Lively Dep. Tr., 266:8–267:9).

Both of the claims against the Wallace Defendants "sound in defamation" and the Court must therefore disregard the labels the Plaintiff has attached to them. *See Cantor* at 157; *Reich v. Lopez,* 38 F. Supp. 3d 436, 458 (S.D.N.Y. 2014) (tortious interference with prospective economic advantage, trade libel and injurious falsehood" subject to the defamation exception of sections 302(a)(2) and 302(a)(3) because the entire complaint sounded in defamation."). The exception has been applied to both state tort claims and federal statutory claims. *See DuPont v. New Jersey State Police*, No. 08 Civ. 10220 (DLC), 2009 WL 2486052, at *9 (S.D.N.Y. August 14, 2009) ("The defamation exception . . . applies to allegations that in fact sound in defamation, not just allegations that explicitly bear a defamation label."); *Donini Int'l, S.p.A. v. Satec (USA) LLC*, No. 03-cv-9471 (CSH), 2004 WL 1574645, at *4 n.3 (S.D.N.Y. July 13, 2004) (applying the defamation exception to Lanham Act claim).

Of course, one of the claims against the Wallace Defendants—false light—has been rejected in both New York and Texas because it duplicates defamation. As the Texas Supreme Court held, "[t]oday, we join those jurisdictions that do not recognize the false light invasion of privacy action" because "it largely duplicates other rights of recovery, particularly defamation." *Cain v. Hearst Corp.,* 878 S.W.2d 577, 579 (Tex. 1994) (citing, among other decisions, *Arrington v. New York Times,* 55 N.Y.2d 433, 434 (N.Y. 1982)). Lively's remaining claim for "aiding and abetting harassment and retaliation in violation of the FEHA" is based on allegedly false speech by "Jed Wallace, who weaponized a digital army . . . to create, seed, promote, and engage with content that

appeared to be authentic on social media platforms and internet chat forums" which was designed to "discredit and 'bury' Ms. Lively." (SAC ¶¶ 38, 411).

These two claims join a long list of causes of actions dismissed in the face of creative Plaintiffs seeking to mask their claims as something other than defamation in the hopes of obtaining jurisdiction. *See Shamoun v. Mushlin*, No. 12 Civ. 3541 (AJN), 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014) (extending defamation exception of 302(a)(2) and 302(a)(3) to claims for intentional infliction of emotional distress, outrageous conduct, defamation per se, and false light); *Mount Whitney Invs., LLLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (extending defamation exception to causes of action for libel, slander, injurious falsehood, tortious interference with contract, and tortious interference with business relations/economic advantage).

## IV.    Section 302 (a)(1) Has Never Been Applied to These Facts

The Court addressed Plaintiff's argument that 302(a)(1) confers jurisdiction here but refused to adopt "a categorical rule that conspiracy jurisdiction can never be based on 301(a)(1) contacts because Lively's Amended Complaint fails for other reasons." (Dkt. 426 n.11). Those fatal flaws have not been cured. There remains inadequate pleading that the Wallace Defendants' "agents" transact business in the state or contract anywhere to supply goods or services in the state. C.P.L.R. 302(a)(1).

This is not a case where the Wallace Defendants were manufacturing defective widgets in New Jersey[6] and selling them into New York. As the Court found, the alleged campaign to damage Lively's reputation occurred largely outside New York (those continue to be the allegations) and

---

[6] The set of the Film "*It Ends With Us*"—where the alleged harassment took place—was in New Jersey, surprisingly based on the California claims. (Ex. B, Lively Dep. Tr., 261:7–262:11).

there is no non-conclusory allegation that the Wallace Defendants knew about the New York contacts (still true). As two federal judges have said: "This Court, like another court in this circuit, could not find a single New York state-court decision recognizing conspiracy jurisdiction under § 302(a)(1)." *Doe v. Gov't of the U.S. Virgin Islands,* 771 F. Supp. 379, 390 (S.D.N.Y. 2025).

## V.    The "New" Allegations Do Not Support Jurisdiction—Even If 302(a)(2) and (a)(3) Apply

Most of Lively's attempted new allegations are found in paragraph 293 of the SAC. For the Court's reference, we attach as Exhibit C red-lined excerpts of the SAC where new language has been added or amended. It is apparent that much of this new evidence is *about* Wallace (SAC ¶ 293b, Case: "Is Jed (Wallace) doing anything on Justin?" Nathan: "Not yet. They've not signed him on.")—but not to or from him.

Some of the "new" evidence deceptively suggests that action in furtherance of the "conspiracy" took place in New York. For example, "Mr. Baldoni and members of the Wayfarer team were in New York . . . preparing to attend the New York premiere the next day." (*Id.* ¶ 239a). The very next sentence says that Melissa Nathan "emailed Jed Wallace at his Street Relations email address"—falsely implying that she was in New York that day as a member of the "Wayfarer team" (although she is described elsewhere in the SAC as a member of the TAG team (*e.g.*, *id.* ¶¶ 228, 245, 267)). But there is no allegation that Nathan was a member of the Wayfarer team that day or that she was in New York. In fact, **she was not.** (Ex. D, Nathan Decl. ¶ 8).

Plaintiff now says that not only was Nathan in Brooklyn during the "relevant time" but that she had an apartment there. (SAC ¶ 62). We demur, so what? As the Court noted in dismissing the FAC, the SAC "does not specify 'the relevant period' or, more importantly, any actions Nathan took in New York in furtherance of the conspiracy." (Dkt. 426 at 29). Plaintiff attempts to cure

that defect by clever pleading implying, but never actually alleging, that she was in New York for the premiere when she was not. (Ex. D, Nathan Decl. ¶ 8).

Furthermore, Lively's theory that everyone (at least Wallace) knows she lives in New York is belied by her Texas lawsuit (referenced in SAC ¶ 150) where she swore that her address was in Los Angeles. (Ex. A-1 at 15). It is a Texas requirement that sworn pleadings must disclose the declarant's address. *See* Tex. Civ. Prac. and Rem. Code § 132.001(d). And the events of harassment, if they even occurred, took place in New Jersey, not New York.

Lively relies on area codes and email time stamps in an attempt to show that Wallace and Street were aware of overt acts in New York, as required to impute those acts to Wallace and Street. (*See* Dkt. 426 at 24–25 (citing *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 126 (2d Cir. 2023)). These supposed overt acts—emails that someone is flying somewhere and attending the premiere—do not add up to actions taken in furtherance of the conspiracy that would qualify under 302(a). Nor do area codes and Eastern time zone emails tag Wallace and Street with awareness that any alleged acts were undertaken in New York. As Wallace explained, he thought the other Defendants were working in California while he worked in Texas. (Ex. A, Wallace Decl. ¶¶ 9, 12, 16, 25, 28). The Court can take notice that cell phone numbers—including the area codes within them—travel with the people tied to them.[7] And emails purporting to display an Eastern time zone (a time zone encompassing part or all of 23 states in the United States)[8] time stamp do not reflect any association with New York specifically. For cell phone area codes specifically, it is conclusory

---

[7] *See* Meredith Dost and Kyley McGeeney, *Moving Without Changing Your Cellphone Number: A Predicament for Pollsters*, PEW RESEARCH CENTER (Aug. 1, 2016), https://www.pewresearch.org/methods/2016/08/01/moving-with-out-changing-your-cellphone-number-a-predicament-for-pollsters/ (last visited Aug. 11, 2025) (estimating that, as of 2016, "10% of U.S. adults have a cellphone number that doesn't match the state where they actually live.").

[8] Wikipedia, *Eastern Time Zone*, https://en.wikipedia.org/wiki/Eastern_Time_Zone (last visited Aug. 11, 2025).

speculation that the owner did not get a mobile number at some point in their lives (college perhaps) and maintain that number rather than obtaining a new one upon graduation and/or relocation to a different state.

Lively alleges this Court may exercise personal jurisdiction over the Wallace Defendants under a direct application of 302(a)(3) because the Wallace Defendants derive, as required by this section, substantial revenue from interstate commerce—including at least some of the revenues earned by Wallace and Street, his closely held S corporation, for the acts complained of in this action. (SAC ¶ 72). For 302(a)(3)(ii)'s interstate commerce element, Lively points to Wallace and Street receiving $90,000 in revenue wired to their Texas-based branch of JP Morgan Chase Bank, N.A., by Wayfarer Studios, a California entity, pursuant to an engagement through TAG, a California entity, all while Wallace was based in Texas. (*Id.*). This hardly establishes the "substantial" revenue requirement from New York contacts. All of the alleged co-conspirators—including the one who issued the check (in California) and received it (in Texas)—are alleged to be outside New York. They would have to be, otherwise the court would not have diversity jurisdiction as the SAC alleges. (SAC ¶ 69 ("no defendant is a citizen of the same State as Plaintiff (New York)")).

Lively alleges it is "public knowledge that Ms. Lively resides in New York." (SAC ¶ 293l). Lively pleads the argumentative conclusion that Wallace "understands that Ms. Lively resides in New York and was engaged in promoting the Film in New York, because Mr. Wallace has sworn under penalty of perjury that he was [] engaged in 'passive observation and analysis of the social media environment as it pertained to *It Ends With Us*.'" (*Id.* ¶ 293l (quoting Dkt. 142-1 ¶ 30)). Lively then points out two Instagram posts. One with the caption "Blue jean baby. N.Y. lady."— ostensibly a reference to Tiny Dancer lyrics by Elton John—while tagging the Film's Instagram and referencing "AUG 9th" (SAC ¶ 293l) in reference to the Film's premiere (which was not only

in New York but across the United States). (Ex. B, Lively Dep. Tr., 275:11–18). The film premiered in New York three days earlier. (*Id.* at 274:13–275:10). The other post has the caption "Thank you to having me . . . on Kelly and Mark." (SAC ¶ 293l). The SAC—not the post—informs us that this is a "reference to having just taped an interview on Live with Kelly and Mark, an ABC talk show that tapes in New York City." (*Id.* ¶ 293l). Of course, **if** Wallace knew that Lively was on Kelly and Mark and **if** he knew that the daytime show "tapes" in New York and **if** he knew what date the show taped and **if** that date lined up with some conspiratorial act and **if** Wallace knew about that act, Plaintiff may have made a small point. But all the **ifs** add up to speculation and a conclusory allegation.

On top of the two Instagram posts, Lively points to two tabloid articles about the interior design of her apartment. (*Id.* ¶ 293l). Lively argues that the Court should infer "Anyone engaged in 'passive observation and analysis of the social media environment as it pertained to It Ends With Us' would have been aware of these posts, and hence of Ms. Lively and her family's residence in New York." (*Id.*). This is again speculation and conclusory.

We must specifically comment on ¶ 294f where it is alleged that Heath (California) and Wallace (Texas) began exchanging text messages on August 10 and where reference is made to a late night call "[s]hortly after midnight on August 11." (SAC ¶ 294h). No reference is made to New York and, in fact, the allegation cuts against a New York contact because it notes that Heath concluded the exchange "with a winky-face emoji." (*Id.*). The Wallace Defendants' lead counsel is a sixth generation New Yorker (b. Brooklyn) and we can say that no self-respecting New Yorker has ever used a "winky-face emoji." And, of course, Heath is from California where winky-face emojis are used excessively. 😊

## VI.    Argument

This Court should dismiss Lively's claims against the Wallace Defendants as it did before. We will not repeat the law of personal jurisdiction so well covered in the Court's Order and Opinion. (Dkt. 426).

### A.    The Court Does Not Have Jurisdiction Over the Wallace Defendants.

Lively's theory has longarm statute and due process problems by merely pleading foreseeability and not targeting. *See ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.*, 775 F. Supp. 650, 656 (S.D.N.Y. 1991) (collecting cases that 302(a)(3) requires more than foreseeing injury in plaintiff's forum state); *see also Charles Schwab Corp. v. Bank of Am. Corp.* ("*Schwab I*"), 883 F.3d 68, 87 (2d Cir. 2018) (due process).

"New York law is clear that where a plaintiff claims to have been injured by a tortious interference with its business, indirect financial loss resulting from the fact that the injured person resides or is domiciled in New York will not support jurisdiction under section 302(a)(3)." *ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.*, 775 F. Supp. 650, 656 (S.D.N.Y. 1991) (collecting cases). This has long been the rule in the Second Circuit. *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975) ("We have held that section 302(a)(3) is not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here."). And the Circuit continues to stand by this interpretation of 302(a)(3). *Yak v. BiggerPockets, L.L.C.*, No. 20-3498, 2022 WL 67740, at *2 (2d Cir. Jan. 7, 2022).

Lively herself alleges New York was not the target of the supposed disparagement campaign, rather the focus was "specific platforms" like "Reddit, TikTok, and Instagram." (SAC ¶ 223). *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (explaining that "New York courts have asserted that the simple likelihood . . . that a defendant's product will find its way

into New York does not satisfy" the test for foreseeability of harm) (cleaned up)); *Yak*, 2022 WL 67740, at *2 (Plaintiff's "residence in New York and Defendants-Appellees' operation in all 50 states are insufficient to establish foreseeability of harm in New York."). Lively does not and cannot allege that Wallace targeted New York in her supposed internet-wide campaign, so that fails the longarm statute's test.

On top of the longarm statute, Lively needed to satisfy due process. Due process requires more than mere foreseeability. *See Schwab I*, 883 F.3d at 87 ("The 'foreseeability of causing injury in another State,' however, will not suffice.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "Specific personal jurisdiction 'must arise out of contacts that the 'defendant *himself*' creates with the forum, and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there.'" *In re Brookfield Infrastructure Partners L.P.*, No. 24-MC-533 (LJL), 2025 WL 1503942, at *16 (S.D.N.Y. May 27, 2025) (quoting *Walden v. Fiore*, 571 U.S. 277, 277 (2014)). And there is no unique rule for defamation-style cases that changes the result here for the Wallace Defendants, for "[t]he mere fact that they c[ould] "foresee" that the [internet posts] w[ould] be circulated and have an effect in [New York] is not sufficient for an assertion of jurisdiction." *Calder v. Jones*, 465 U.S. 783, 789 (1984).[9] Rather, there must be something more, such as "continuously and deliberately exploit[ing] the New [York] market" by physical circulation of magazines. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984); *see also Walden*, 571 U.S. at 285 (noting that *Keeton* addresses a defendant's "physical entry" into the forum).

---

[9] Even under the most expansive "effects test" cases, the exercise of personal jurisdiction may be constitutionally permissible only if the "defendant expressly aimed its conduct at the forum." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) (citing *Calder*, 465 U.S. at 789). And even under the "effects test," Wallace and Street "must [have] 'reasonably anticipate[d] being haled into court there' to answer for the truth of the statements made in their article." *Best Van Lines*, 490 F.3d at 243 (quoting *Calder*, 465 U.S. at 789–90).

Even giving ample credit to Lively's innuendo, Wallace "like numerous others, simply created [internet content] and permitted anyone who could find it to access it. Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997). In Lively's SAC, "[t]here is in fact no suggestion that [Wallace] has any presence of any kind in New York other than the Web site that can be accessed worldwide." *Id.*[10] *See also Schwab I*, 883 F.3d at 88 (Even if conduct "were aimed at the United States as a whole, it would not necessarily follow that such actions were aimed at" New York.) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011)); *Nicastro*, 564 U.S., at 884 (explaining that "[i]f the defendant is a domestic domiciliary, the courts of its home State are available and can exercise general jurisdiction.").

Lively does not even plead that Wallace targeted New York. Lively *argues* that Wallace "understands that Ms. Lively resides in New York and was engaged in promoting the Film in New York, because Mr. Wallace has sworn under penalty of perjury that he was [] engaged in 'passive observation and analysis of the social media environment as it pertained to *It Ends With Us*.'" SAC ¶2931 (quoting Dkt. 142-1 ¶30). But the Second Circuit has explained to "not draw argumentative inferences in the plaintiff's favor, nor . . . accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (cites and quotes omitted). Lively's factual allegations fall short.

---

[10] To the extent Lively argues about the extent of interactivity, the Second Circuit "thinks that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York—that is, whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007). Lively does not assert any direct jurisdiction under Section 302(a)(1) because she has no allegations that her causes of action against Wallace and Street arise out of any transactions that they have had in New York. *See generally* SAC; *see also Best Van Lines*, 490 F.3d at 246 (describing C.P.L.R. 302(a)(1)'s requirements.).

Even granting Lively these pleading gymnastics, she still lands short of allegations sufficient to support due-process-satisfying personal jurisdiction. In *Schwab I*, the plaintiffs made the same argument that Lively does here: "defendants surely knew that the brunt of th[e] injury would be felt by" Lively in New York. 883 F.3d at 87. But the Second Circuit recognized that a claim of "[m]ere foreseeability" and "[t]he 'foreseeability of causing injury in another State,' however, will not suffice." *Schwab I*, 883 F.3d at 87 (quoting *Burger King*, 471 U.S. at 474).

Lively does not make a prima facie case of direct personal jurisdiction under C.P.L.R. 302(a)(3) that would comport with due process.

C.P.L.R. 302(a)(1) provides jurisdiction over a non-domiciliary who "transacts any business within the state," and permits jurisdiction over a defendant who never physically enters the state but "'project[s] himself [or herself]' into this state to engage in a 'sustained and substantial transaction of business.'" *Fischbarg v. Doucet*, 880 N.E.2d 22, 27–28 (N.Y. 2007) (quoting *Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506, 508 (N.Y. 1970)). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines*, 490 F.3d at 246. "'The overriding criterion necessary to establish a transaction of business' within the meaning of C.P.L.R. 302(a)(1) [is that] a non-domiciliary must commit an act by which it 'purposefully avails itself of the privilege of conducting activities within [New York].'" *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 993 (N.Y. 2014) (quoting *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007)). For a cause of action to arise from the transaction of business, there must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *D & R Glob. Selections, S.L. v.*

*Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012)).

New York courts have never recognized a conspiracy-based theory of jurisdiction under 302(a)(1). *See United States v. Besneli*, 2018 WL 443747, at *5 (S.D.N.Y. Jan. 16, 2018); *Prze-wozman v. Charity*, 2023 WL 2562537, at *16 (E.D.N.Y. Mar. 17, 2023) ("[T]he court is unable to find any New York case relying on a co-conspirator theory to establish personal jurisdiction under section 302(a)(1)."). The New York and Second Circuit cases recognizing conspiracy juris-diction under the C.P.L.R. have involved the imputation of acts which took place physically within New York and conferred jurisdiction under 302(a)(2). *See Fat Brands*, 75 F.4th at 126 (meeting in New York in furtherance of "New York-based fraud"); *Berkshire Bank v. Lloyds Banking Grp. PLC*, No. 20-1987-cv, 2022 WL 569819, at *1 (2d Cir. Feb. 25, 2022) (actions taken by executives at banks in New York); *Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 7 (1st Dep't 2013) (co-conspirator "predominantly existed in New York and committed the torts underpinning the conspiracy there"). Based on the lack of authority recognizing co-conspirator jurisdiction under 302(a)(1), "numerous district courts sitting in New York have held that Section 302(a)(1) of New York's long-arm statute . . . does not provide for co-conspirator jurisdiction." *Przewozman*, 2023 WL 2562537, at *16; *see Gov't of United States Virgin Islands*, 771 F.Supp.3d at 391 ("With no cases or authorities of any kind recognizing conspiracy jurisdiction in this context, and no con-vincing argument for expansion of the doctrine, plaintiffs will have to establish jurisdiction under § 302(a)(1) the old-fashioned way."); *Suber v. VVP Servs, LLC*, No. 20-cv-08177 (AJN), 2021 WL 4429237, at *6 (S.D.N.Y. Sept. 27, 2021); *Berdeaux v. OneCoin Ltd.*, 561 F.Supp.3d 379, 400–01 (S.D.N.Y. 2021).

Even assuming that an overt act has been taken by an alleged co-conspirator[11] in New York, Lively must show that the act can be imputed to the defendant. Such imputation requires that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *Id.* (quoting *Berkshire Bank*, 2022 WL 569819, at *3). The Second Circuit has held that "[t]he third requirement—that the New York-based co-conspirators acted at the direction or under the control of the out-of-state defendant—may be satisfied by an allegation that the out-of-state defendant was 'aware of the torts being committed by' co-conspirators in New York." *Fat Brands*, 75 F.4th at 127 (quoting *Berkshire Bank*, 2022 WL 569819, at *3).[12]

> ### 1. None of Lively's allegations show New York overt acts connected to the conspiracy or Wallace's awareness of either the acts or their existence in New York.

Lively has failed to allege any overt acts that satisfy either 302(a)(1) or (a)(2) that also show that Wallace was aware of those overt acts' connections to New York.

**Paragraph 293a** – Only has a shoe-horned reference to New York about Mr. Baldoni and other Wayfarer-related people—who?—doing New York press appearances and attending the

---

[11] The Court should also be mindful in applying any overt acts taken under 302(a)(1) for conspiracy jurisdiction. And the Second Circuit does not "understand New York courts to teach that the 'gap' created by the defamation exceptions in sections 302(a)(2) and (3), *see Ingraham,* [687 N.E.2d at 1294–95,] is eliminated by the 'transact[ing] business' analysis [in 302(a)(1)]. Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute. New York courts do not interpret "transact[ing] business" to include mere defamatory utterances sent into the state." *Best Van Lines*, 490 F.3d at 248.

[12] Wallace and Street recognize that this Court views itself bound by the Second Circuit prediction that New York Court of Appeals would follow *Lawati* in holding that the control prong "may be satisfied by an allegation that the out-of-state defendant was 'aware of the torts being committed by' co-conspirators in New York." *Fat Brands*, 75 F.4th at 127 (quoting *Berkshire Bank*, 2022 WL 569819, at *3). *See* Dkt. 426 at 26. Wallace and Street continue to raise this argument to preserve it for the Second Circuit to reconsider its review of New York intermediate court of appeals precedent and make its prediction, in light of *Bangladesh Bank v. Rizal Com. Banking Corp.*, 226 A.D.3d 60, 79 (1st Dep't 2024) and the cases it cites.

New York Film premiere. Lively does not explain what this has to do with any overt act to push forward the conspiracy or whether Wallace and Street knew anything about it. Indeed, Lively has never explained how the film premiere itself is part of the already extremely nebulous conspiracy.

**Paragraph 293b** – Nathan texted with two other TAG employees, who had "No clue" whether "Jed [was] officially on the Justin stuff." Nathan squelched the speculation from the TAG employee who had "no clue": "They've not signed him on." Wallace was not privy to this text chain.

**Paragraph 293c** – Wallace received an email from a TAG employee introducing him to Jennifer Abel. There's nothing connecting this allegation to New York. The allegation does not allege Wallace saw this email nor that he responded to it.

**Paragraph 293d** – Abel responded "I'm so sorry I'm in morning press from 630am on, and we head straight to Chicago." There is no allegation Wallace knew Abel was allegedly in New York at the time of that email for the premiere of the Film. Lively argues Wallace was supposed to know this because the time stamp on the email from Case "showed that she had received it in a time zone one hour ahead of Mr. Wallace's location in Texas." Even making the leap that Wallace would have noticed this, and ignoring that Lively did not allege that he did, Lively does not explain how a time zone that contains the whole Eastern Seaboard and seventeen states screamed New York specifically. In any event, such a communication—an innocuous email—would be a de minimis contact that would be insufficient to establish jurisdiction, even if Wallace knew about it. *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433, 434 (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts constituting the transacting of business . . . were merely attempts to contact the plaintiff."). "When contacts with New York have been found sufficient to support

personal jurisdiction, a defendant 'on his own initiative . . . project[ed] himself' into New York." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010). Nor does Lively explain how the conspiracy was advanced by this passing email that supposedly originated from New York.

**Paragraph 293e** – Lively alleges that "Instagram, TikTok, and YouTube have offices in New York. Reddit and X also have employees based in New York." She does not allege that Wallace knew that at any point. But even assuming he did, what does it prove? Is Lively suggesting New York now has jurisdiction over everyone who has used Instagram, TikTok, YouTube, Reddit, and X? The import is not clear from the allegation. But at least this allegation is factual.

**Paragraph 293f** – Wallace was introduced to Jamey Heath via email. Street Relations was paid $30,000 from a California account. There's no connection to New York in this allegation.

**Paragraph 293g** – Wallace finally sends his first email in all these exchanges. This one is to Jamey Heath in California. There is no mention of New York. With Wallace's first action at all in these (mostly) chronological allegations—sending an email—there is yet to have been an allegation that Wallace knew anything occurred in or related to New York.

**Paragraph 293h** – Wallace (Texas) now texts with Jamey Heath (California).

**Paragraph 293i** – This paragraph has text messages by people who are not Wallace. There's no mention of New York.

**Paragraph 293j** – This paragraph includes more allegations about messages that Lively still fails to allege Wallace knew about, Wallace was privy to, or otherwise any connection to New York.

**Paragraph 293k** - This paragraph includes more allegations about messages that Lively still fails to allege Wallace knew about, Wallace was privy to, or otherwise any connection to New York.

**Paragraph 293l** – Finally, Lively makes an allegation about Wallace that tries to establish awareness of anything related to New York. Lively argues, more than alleges, that "Mr. Wallace certainly understands that Ms. Lively resides in New York and was engaged in promoting the Film in New York" because the "social media environment was rife with posts demonstrating Ms. Lively's connections to . . . New York[.]." This is just the type of allegation that the Second Circuit has warned district courts against "draw[ing] argumentative inferences in the plaintiff's favor, [and] no[t] . . . accept[ing] as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (cites and quotes omitted). To back up this legal conclusion of awareness, Lively points to two Instagram posts. On top of the two Instagram posts, Lively points to two tabloid articles about the interior design of her New York apartment. Again, these are only *Lively*'s contacts with the forum, not any co-conspirator's contacts that can be imputed to Wallace. *See In re Brookfield Infrastructure Partners L.P.*, 2025 WL 1503942, at *16 (quoting *Walden*, 571 U.S. at 277) ("personal jurisdiction 'must arise out of contacts that the 'defendant *himself*' creates with the forum, and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there.'").

**Paragraph 293m** – Baldoni posted on Instagram that he was going to the Film's premiere in New York—five days before Wallace started working on the Wayfarer matter. (SAC ¶293b). Lively does not allege that Wallace saw this post, instead making the same argumentative conclusion this Court can disregard that Wallace "would have been aware of that post." *See In re Terrorist*

*Attacks*, 714 F.3d at 673. Lively also does not connect how her co-star posting about attending the Film's premiere is an overt act that furthered any conspiracy of disparaging Lively.

In the same paragraph, as a non-sequitur, Lively alleges "Wallace was also aware of his co-conspirators' residence in New York, including because he participated in several text message or Signal chains with other phone numbers having New York-based area codes." Again, this is a legal conclusion masquerading as a factual allegation. *Id*. Even if Wallace had noticed the area codes, and, as a Texas resident, knew which area codes belong to New York, it's not clear how that shows awareness of any overt act taking place or connected to New York. *See, e.g.*, *Nursan Metalurji Endustrisi A.S. v. M/V TORM GERTRUD*, No. 07 CV 7687(GBD), 2009 WL 536059, at *2 (S.D.N.Y. Feb. 27, 2009) (rejecting a New York area code as one of many facts in support of a basis for personal jurisdiction because "[p]ersonal jurisdiction will not lie for any company that simply seeks the assistance of New York firms on an isolated or intermittent basis."). For example, one lawyer for Wallace has an Alaska area code and another has an Indiana area code, despite being Texas lawyers and residents.

**Paragraph 293n** – Lively makes more allegations about messages between others, and she does not say that Wallace actually did (or knew about) what these unspecified "conversations" suggest he needed to do, much less that he was involved in the alleged New York activities. There is no reason to credit these argumentative allegations or the "other documents" that she fails to identify or link to New York. *In re Terrorist Attacks*, 714 F.3d at 673.

Other than these newly added allegations (which in many instances simply repackage old insufficient claims), all that Lively has left are the same allegations that were insufficient the first time around. *See* Dkt. 426 at 24–35. And the new allegations, as the Wallace Defendants have shown, don't add anything. This lack of control or awareness is fatal under the Due Process Clause

just as it is under the longarm statute. *See Berkshire Bank*, 2022 WL 569819, at *3 ("Although the long-arm statute and the Due Process Clause are not technically coextensive, the New York requirements (benefit, knowledge, some control) are consonant with . . . due process." (quoting *Schwab I*, 883 U.S. at 85)). A defendant cannot "reasonably anticipate being haled into court" as a result of contacts that are unknown to him. *Schwab Short-Term Bond Market Fund v. Lloyd's Banking Grp. PLC ("Schwab II")*, 22 F.4th 103, 125 (2d Cir. 2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Lively has not shown a prima facie case of a conspiracy theory of jurisdiction that survives under the longarm statute or due process. This Court should dismiss her claims.

### 2.    If Lively has made a prima facie case, the Court should hold an evidentiary hearing to test that prima facie case.

Lively hasn't pleaded much about Wallace's connections or awareness of overt acts related to New York. But Wallace, of course, has contested many of these allegations with a sworn declaration. (*See generally* Ex. A, Wallace Decl.). Wallace still maintains that he did not post, like, boost, or ask anyone else to do so. (*Id.* ¶¶ 16–31). Whatever Lively says about TAG, Nathan, or Abel, what she does *not* say is that Wallace made any particular post, liked or otherwise "boosted" any story or post, or really explain how Wallace joined in on the alleged conspiracy to "destroy" her. That is because, if it happened—which Wallace cannot deny it did because he was not there, but again he doubts (*id.* ¶ 31)—it did not involve Wallace. As Wallace explained in detail, his recommendation was to do nothing on social media because Baldoni was already organically "crushing it on Reddit." (*Id.* ¶ 25). And Wallace knew of nothing happening in New York, because he thought everyone was in California. (*Id.* ¶¶ 16, 25, 28).

Wallace recognizes this Court cannot resolve contested jurisdictional facts without an evidentiary hearing. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013)

("[I]n the absence of an evidentiary hearing, it was error for the district court to resolve that factual dispute[.]"). But because Wallace has disputed the jurisdictional facts, the Court should hold a hearing, where Lively must prove by the preponderance of the evidence those jurisdictional facts. *Id.* at 85 ("If the defendant contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence.").

Such a hearing should not be required because Lively has failed to show a prima facie case for jurisdiction. But if there is a discrete fact about awareness for the Court to resolve, Wallace is prepared to testify at an evidentiary hearing about those facts.

### B.    Venue is Not Proper in this District.

With respect to their motion to dismiss under Rule 12(b)(3) or, alternatively, to transfer, under 28 U.S.C. §§1404(a) and 1406(a), the Wallace Defendants reassert the arguments and authorities contained in their prior motion to dismiss (Dkt. 139) and memorandum of law (Dkt. 141) and incorporate them by reference, as if repeated verbatim. The Court's analysis of the Second Amended Complaint is the same under 28 U.S.C. § 1391(b) as it is for personal jurisdiction and requires a two-step process. *P.C. v. Driscoll*, No. 24-CV-2496 (LJL), 2025 WL 104522, at *5 (S.D.N.Y. Jan. 15, 2025). First, the Court should identify the nature of the claims and acts or omissions that Plaintiff alleges give rise to those claims. *Id.* Second, the Court should determine whether a substantial part of those acts or omissions occurred in the district where the case was filed. *Id.* Importantly, "[t]he Plaintiff bears the burden of showing . . . that venue is proper for *each claim* against *each defendant*." *Id.* at *6 (emphasis added); *see also Slobig v. Gannuscia*, No. 16-CV-3783 (NSR), 2018 WL 1305459, at *3 (S.D.N.Y. Mar. 9, 2018) (holding that "the acts of Defendants, not the activities of or harm to Plaintiff, determine where venue properly lies" (citation omitted)). For venue to be proper in a district, "*significant events* or omissions *material* to the

plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Driscoll*, 2025 WL 104522, at *5 (emphasis in original) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

Just like her jurisdictional allegations, Lively makes little effort connecting Wallace and Street to New York—and certainly falls far short of her affirmative burden to show "venue is proper for each claim against each defendant." *Driscoll*, 2025 WL 104522, at *6. Lively has no basis to assert and has not carried her burden to show proper venue over Wallace or Street in this District, and her claims against them should be dismissed or, alternatively, severed and transferred to the United States District Court for the Western District of Texas in favor of the First Filed Case.

### C.    Lively Fails to State a Claim Against the Wallace Defendants.

Even if this court has personal jurisdiction over Wallace and Street and venue is proper, it should still dismiss Lively's claims against the Wallace Defendants. Lively's false light claim should be considered under Texas or New York law, which do not recognize a tort for false light. But even still, under California law, Lively's claim fails. Lively's false light claim is the equivalent of libel. And under California law, she must meet the elements for libel. She meets none. Lively's FEHA aiding and abetting claim similarly fails whether Texas, New York, or even California law applies.

#### 1.    False Light

New York applies the law of the state with the most significant interest in the litigation. *See Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citing *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994)). The New York choice-of-analysis considers "where the plaintiff suffered the greatest injury," usually the Plaintiff's domicile, and "where the statements [allegedly] emanated and were broadcast." *Kinsey v. New York Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021).

That is either New York or Texas, respectively. If New York law applies, Lively's claim for False Light must be dismissed because "[t]here is no tort of false light invasion of privacy under New York law." *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482 (LJL), 2022 WL 992631, at *8 (S.D.N.Y. Mar. 31, 2022) (Liman, J.) (dismissing claim, citing *Triano v. Gannett Satellite Information Network, Inc.*, 2010 WL 3932334, at *4 (S.D.N.Y. Sept. 29, 2010)); *see also Matthews v. Malkus*, 377 F.Supp.2d 350, 358 (S.D.N.Y. 2005) ("Under New York law, invasion of privacy based on publicity which placed [a plaintiff] in false light is not a cognizable claim"); *Costanza v. Seinfeld*, 181 Misc.2d 562, 564 (Sup. Ct. N.Y. Cty. 1999) (noting that "New York law does not and never has allowed a common law claim for invasion of privacy"), *aff'd as modified*, 279 A.D.2d 255 (2001); *Henry v. Fox News Network LLC*, 629 F.Supp.3d 136, 151 (S.D.N.Y. 2022) ("New York does not recognize a separate cause of action for false light/invasion of privacy").

The result is the same under Texas law. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) ("We reject the false light invasion of privacy tort[.]"); *see also Johnson v. Bearfoot Companies, LLC*, No. 02-23-00366-CV, 2024 WL 2202033, at *6 (Tex. App.—Fort Worth May 16, 2024, no pet.) ("[T]he Texas Supreme Court [has] expressly declined to recognize false-light invasion-of-privacy claims based on the publication of false statements about the plaintiff.").

But if California law applies, Lively still loses. California law recognizes a false light claim for "an invasion of privacy by publicity that places the plaintiff in a false light in the public eye." *Fellows v. Nat'l Enquirer, Inc.*, 721 P.2d 97, 99 (Cal. 1986). The false light must be "highly offensive to a reasonable person." *Id.*; *see Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 256 (Cal. Ct. App. 2017). In addition, the defendant must "kn[o]w or act[ ] in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Id.* (quoting *Price v. Operating Eng'rs Loc. Union No. 3*, 125 Cal.Rptr.3d 220, 225 (Cal. Ct. App. 2011)).

When "[a] 'false light' cause of action is in substance equivalent to a libel claim, [it] should meet the same requirements of the libel claim." *Jackson*, 217 Cal. Rptr. 3d at 256 (quoting *Med. Marijuana, Inc. v. ProjectCBD.com*, 212 Cal. Rptr. 3d 45, 55 (Cal. Ct. App. 2016), *as modified on denial of reh'g* (Dec. 19, 2016)); *see Fellows*, 721 P.2d at 106–08 (reasoning that restrictions on defamation claims should also apply to false light claims based on defamatory language).

Here, Lively does not allege really any elements of defamation. Under California law, "[t]he tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (citation and internal quotation marks omitted).

Lively does not identify a single (a) publication attributable to Wallace or Street, let alone one that is (b) false or (c) capable of defamatory meaning. *See generally* SAC. And months after asserting claims against the Wallace Defendants, Lively *still cannot* identify any such publication. (Ex. B, Lively Dep. Tr., 251:10–253:8). Wallace and Street, therefore, cannot explain how the non-specified publications are (d) privileged.

These flaws are fatal independent of the fact that "California defamation law incorporates, as it must, speech protections required by the First Amendment to the United States Constitution." *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 1637019, at *31 (S.D.N.Y. June 9, 2025). Lively concedes that she "is a public figure." (SAC ¶ 448). As a public figure, Lively must allege and eventually prove "actual malice." *See, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 76 (2023). This "actual malice" standard is an element of her claim even if not strictly one for defamation. *See, e.g.*, *Hustler Magazine v. Falwell*, 485 U.S. 46, 53 (1988). Because she has not identified any statement, let alone one that is provably false, she also certainly has not specifically alleged enough to show that Wallace or Street published any provably false statement with

"knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

Lively's False Light claim fails no matter what law applies. The claim flunks the First Amendment as much as it does *Iqbal/Twombly*.

### 2.    FEHA Aiding and Abetting

Even if California law applies, Lively's flimsy allegations do not overcome the presumption against the extraterritorial application of FEHA. *Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 793 (N.D. Cal. 2025) ("Failure to adequately plead grounds for the extraterritorial application of state law constitutes a failure to state a claim on the merits[.]"). Nor does she sufficiently allege the Wallace Defendants' knowledge of any particular acts of harassment or retaliation, much less that the Wallace Defendants' "knew the employer's conduct violated FEHA." *Smith v. BP Lubricants USA Inc.*, 278 Cal.Rptr.3d 587, 594 (Cal. Ct. App. 2021).

California courts presume that the California legislature "did not intend to give its statutes any extraterritorial effect" unless "such intention is clearly expressed or reasonably . . . inferred" from the statute's text, its purpose, or legislative history. *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 162 P. 93, 94 (1916). FEHA contains no such clear evidence of intent and instead reflects the opposite intention. *See Campbell v. Arco Marine, Inc.*, 50 Cal.Rptr.2d 626, 632–33 (Cal. Ct. App. 1996) (analyzing the legislative history of FEHA, including "the Legislature specifically stat[ing]: 'This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of *the people of this state*.'") (quoting 1959 version of current Cal. Gov't Code §12920).

Consistent with this clear statutory intent, "the majority of courts in California and other jurisdictions have found that the extraterritorial application of FEHA is determined by the situs of

both [(1)] employment and [(2)] the material elements of the cause of action, as opposed to resi-dence of the employee or the employer." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017) (collecting cases). In an extrater-ritoriality analysis, the situs of employment consists of the employee's "principal place of work," the employee's "definite base of operations," or the "location where the employee's work holds a substantial connection to." *Hill*, 773 F. Supp. 3d at 793. Lively does not allege *any* employment activities in California. And, in her deposition, she explained that apart from "a couple days . . . at the end," the movie was filmed and produced in New Jersey. (Ex. B, Lively Dep. Tr., 261:7–262:11). Otherwise, Lively alleges: an "all-hands" meeting with Wayfarer and Sony in New York (SAC ¶ 19); the film's August 6, 2024 premiere in New York (SAC ¶ 26); and her residence and engagement in promoting the film in New York (SAC ¶ 293l). These allegations (or lack thereof) fall far short of that required to satisfy the "employment" prong of the extraterritoriality analysis. *See Civello v. Equinix Inc.*, No. CV-25-01028-PHX-KML, 2025 WL 1898208, at * (D. Ariz. July 9, 2025) (dismissing plaintiff's FEHA claims where plaintiff did "not plausibly argue the situs of her employment was in California. In fact, she [did] not allege she ever worked in California."); *Russo*, 135 F. Supp. 3d at 1094 ("[B]ecause Plaintiff's performance of the vast majority of her employment duties was outside of California, Plaintiff's [FEHA] causes of action each fail as a matter of law based on the lack of extraterritorial jurisdiction of California state employment laws."); *Hill*, 773 F. Supp. 3d at 794 ("Even viewing the FAC in the light most favorable to Plain-tiff . . . he lived and worked in Maryland rather than California. The situs of Plaintiff Hill's em-ployment was Maryland.").

Lively's allegations equally fail the second prong—considering the location of the material elements of the cause of action. "To determine where the material elements of the cause of action

occurred, the court looks at 'the location of the alleged proscribed conduct.'" *Civello*, 2025 WL 1898208, at *3 (quoting *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 778 (N.D. Ill. 2020)). Lively alleges the Wallace Defendants aided and abetted the alleged harassment and retaliation of Defendants It Ends With Us Movie LLC, Wayfarer, Baldoni, and Heath. (SAC ¶ 411). Lively's retaliation and harassment allegations against those Defendants are premised on: "harassing and other unlawful conduct . . . which occurred through the Film's production" ***in New Jersey*** (SAC ¶ 389; Ex. B, Lively Dep. Tr., 261:7–262:11) and which Lively complained of to Wayfarer, Baldoni, Heath, and others in an "all-hands" meeting ***in New York*** (SAC ¶¶ 19, 389), and a subsequent alleged "coordinated campaign to cast Ms. Lively in a false light during the publicity and promotion of the Film and thereafter"—which publicity and promotion, by Lively's own allegations— occurred ***in New York*** (SAC ¶¶ 26, 293l). In other words, Lively has not sufficiently linked the alleged conduct to California and her FEHA claim against the Wallace defendants must be dismissed. *See Elzeftawy v. Pernix Grp., Inc.*, No. 1:18-CV-06971, 2021 WL 4264276, at *6 (N.D. Ill. Sept. 20, 2021) (dismissing FEHA claims because "[t]he relevant conduct for purposes of this analysis is the conduct that creates liability" and "[a]ll of the relevant conduct took place outside of California.").

Finally, "[o]f course, a defendant can only aid and abet another's tort if the defendant knows what 'that tort' is. As the Supreme Court put it in *Lomita,* the defendant must have acted to aid the primary tortfeasor 'with knowledge of the object to be attained.'" *Casey v. U.S. Bank Nat. Assn.*, 26 Cal. Rptr.3d 401, 406–07 (Cal Ct. App. 2005). Indeed, a person is liable under FEHA for aiding and abetting only if: (1) the employer subjected the plaintiff to the complained-of conduct under FEHA, (2) the defendant "knew that [employer's] conduct violated FEHA," and (3) defendant "gave [employer] 'substantial assistance or encouragement' to violate FEHA." *Smith*, 278

Cal.Rptr.3d at 594. Lively has not alleged the Wallace Defendants knew anything they did was for the purpose of retaliation or harassment or that it would be in any way tortious or in violation of FEHA, nor has she alleged the Wallace Defendants gave "substantial assistance or encouragement" to violate FEHA. *Id.*

Lively's deficient allegations constitute a failure to state a claim on the merits, and her FEHA claim against the Wallace Defendants should be dismissed with prejudice.

### 3.    Civil Conspiracy

Without an underlying tort, there is no civil conspiracy. As this Court recognized in dismissing Lively's claims the first time, "Lively's civil conspiracy claim therefore functions not as an independent claim but as an alternative theory of liability on her non-conspiracy claims." Dkt. 426 at 19 n.8. Whether California, New York, or Texas law applies, Lively's civil conspiracy claim fails if her underlying tort claims do. *Id.* (collecting cases). For the reasons above, Lively fails to state a claim that Wallace or Street engaged in any tort, so the civil conspiracy claim against the Wallace Defendants should be dismissed.

## VII.    Conclusion

Because Lively has not made a prima facie case for personal jurisdiction over Wallace or Street, this Court should dismiss Lively's claims against them without prejudice. Alternatively, if the Court believes there is personal jurisdiction, it should still dismiss the claims against Wallace and Street, but with prejudice for failure to state a claim.

Dated: August 13, 2025

Respectfully submitted,

JACKSON WALKER LLP

S/ *Charles L. Babcock*
Charles L. Babcock
SDNY #5451117
Joel R. Glover
SDNY #5697487
Tori C. Emery (admitted *pro hac vice*)
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
cbabcock@jw.com
jglover@jw.com
temery@jw.com

**ATTORNEYS FOR DEFENDANTS
JED WALLACE, AN INDIVIDUAL AND
STREET RELATIONS, INC.**

**CERTIFICATE OF COMPLIANCE**

This memorandum of law complies with S.D.N.Y. Local Civil Rule 7.1 because it meets the formatting requirements, including being 12-point type or larger, with one-inch margins, and the body text is exactly double-spaced. This memorandum of law complies with Judge Liman's individual practices concerning page limits because parties in this case have agreed to a limit of no greater than 30 pages for memoranda of law in support and in opposition.

/s/ *Charles L. Babcock*
Charles L. Babcock