# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| Blake Lively, | § | |
|---|---|---|
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 1:24-cv-10049-LJL |
| | § | (Consolidated with 1:25-cv-00449-LJL) |
| Wayfarer Studios LLC, a Delaware Limited | § | |
| Liability Company; Justin Baldoni, an indi- | § | |
| vidual; Steve Sarowitz, an individual; It | § | |
| Ends With Us Move LLC, a California Lim- | § | |
| ited Liability Company; Melissa Nathan, an | § | |
| individual; The Agency Group PR LLC, a | § | |
| Delaware Limited Liability Company; Jen- | § | |
| nifer Abel, an individual; Jed Wallace, an in- | § | |
| dividual; and Street Relations, Inc., a Texas | § | |
| Corporation | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |

## Declaration of Jed Wallace, individually and behalf of Street Relations, Inc.

I, Jed Wallace, declare as follows:

1.      My name is Jed Wallace. I am over the age of eighteen years, am of sound mind and am otherwise fully competent to testify. All of the facts contained in this Declaration are based upon my personal knowledge, unless stated otherwise, and are true and correct; and if called as a witness, I could and would testify as follows.

2.      I live in, am a citizen of, and am domiciled in Texas.

3.      I have been a citizen of Texas, and have been domiciled there since 2021.

4.      I currently live in Dripping Springs, Texas, in Hays County.

5.      In late 1991, after attending college at Fordham University, I moved back home to Pennsylvania.

6.      Since moving home to Pennsylvania in late 1991, I can only recall having visited the State of New York on four occasions. Those visits occurred in 2007, 2008 and 2024. In December 2007, I attended a Christmas party in New York City that was hosted by a Florida-based client. The 2008 trip was to visit a friend in Manhattan who had had a baby. Also in 2008, a friend asked me to visit New York City with him, and I did. And I and my family visited New York City on a family trip, from December 9 to December 16, 2024. I conducted no business on any of these four trips.

7.      I do not own, use, or possess any real property situated within New York.

8.      In 2007, I formed Street Relations LLC. In 2008, Street Relations LLC became Street Relations, Inc., and it was incorporated in California. I have been the sole owner and President of Street Relations, Inc. since its foundation.

9.      Since 2021, Street Relations, Inc.'s ("Street") principal place of business has been in Texas. At the time it was joined as a defendant in this case, Street was incorporated in Texas, and Texas continues to be its state of incorporation.

10.      Street is a crisis mitigation firm engaged by clients to help navigate real-life human crisis, threats, trauma, and mental health concerns.

11.      Street has no registered agent in New York, no property in New York, and no bank account in New York.

12.      Since the founding of Street, I have been the only officer and director of Street. Since 2021, all of my work and Street's work has been performed from Texas.

13.      Neither I nor Street reasonably expected any of my conduct to have consequences in New York.

14.      In no way would I consider myself or Street at home in New York.

15.      I have read Ms. Lively's Amended Complaint and am familiar with the allegations against me and Street. Prior to the filing of the Amended Complaint, Ms. Lively filed a complaint with the California Civil Rights Department (the "CRD Complaint"). I understand that the CRD

Complaint was provided to the press. The CRD Complaint is attached as Exhibit 5. And the complaint attached to the CRD Complaint is attached as Exhibit 6.

16.    My earliest involvement in my limited role concerning Justin Baldoni and Wayfarer was August 2024. I am the only employee of Street that engaged in that limited role. All of that limited work was done by me from Texas. None of that work was in New York. None of that work was directed at New York.

17.    Neither I nor Street posted anything on social media on behalf of the Wayfarer parties or about Lively, Reynolds, *It Ends With Us*, or any of Lively's or Reynold's businesses.

18.    Neither I nor Street have ever asked or directed anyone to post about, comment on, or like any social media posts about *It Ends With Us*, Wayfarer, Justin Baldoni, Blake Lively, Ryan Reynolds, or any of Lively's or Reynolds's businesses or family.

19.    I never published, directly or indirectly, any information or content (negative or otherwise) regarding Lively.

20.    I have never met or interacted with Lively.

21.    I do not have a "digital army" in Los Angeles, in New York, or anywhere else. I do not have, work with, or direct a team in Hawai'i. I have never been to Hawai'i.

22.    I have an understanding of what a "social combat" or "social manipulation" plan could be, but that is not a service I provided related to *It Ends With Us*, Wayfarer, Justin Baldoni, Blake Lively, Ryan Reynolds, or any of Lively's or Reynolds's businesses or family.

23.    I do not specialize in executing confidential and 'untraceable' campaigns across various social media platforms (including TikTok, Instagram, Reddit, and X) to shape public perception.

24.    In early August, 2024, I was contacted by Melissa Nathan about Justin Baldoni and potential stories or social media attacks on him. My job was to read, analyze, and assess all forms of media and trends taking place with respect to various issues.

25.    This job was in line with my work generally with respect to all forms of media. Specifically, for the events related to Mr. Baldoni, my limited job was to conduct analysis of the media

climates. In doing so, I reviewed all forms of media, analyzed the sentiment of the coverage, and then provided updates on my observations. Most times, my feedback took the form of informal comments that I made to Ms. Nathan, who I understood to be in California. After passively observing the social media environment, I saw an organic outpouring of support for Justin Baldoni and the film. This observation led to my comment, "we are crushing it on Reddit." My feeling, based on what I saw, was that no actions needed be taken at that time, and that everyone should let the sentiment on the social media unfold organically. In addition to observing that people on social media organically supported Mr. Baldoni, there appeared to be a dislike for Ms. Lively based on her tone-deaf promotion of the film. Therefore, my advice was not to do anything at that time and let the sentiment on social media continue to unfold organically.

26. My limited work related to Justin Baldoni concluded in early November 2024.

27. Neither I nor Street had anything to do with the production of *It Ends With Us*, and I was never on the set of the film.

28. Because I provided feedback to Ms. Nathan, who I understood to be in California most if not all the time, I only considered the impact of my work to be in California. The goal of my work was to inform her and her team, who I anticipated would be in California. And I thought of her work as for Wayfarer Studios, which I knew and know to be based in California. In other words, I thought I was doing business and providing my services to individuals in California.

29. Neither I nor Street communicated or caused content to be provided to any journalists, content creators, or media entities anywhere, let alone New York. To be clear, I did not speak to any journalists at the *New York Post* or at the *New York Times* regarding the issues set forth in this lawsuit.

30. My role on social media was merely passive observation and analysis of the social media environment as it pertained to *It Ends With Us*.

31. Lively alleges, among other things, that I participated in a conspiracy to commit tortious conduct or unlawful acts against her. I did not. If that conspiracy even exists, which I

doubt, I have no knowledge of it because I was not involved. I had (and have) no desire to torch Lively or her reputation, nor did I act on that imagined desire with anyone.

32.     On January 21, 2025, Lively filed a Rule 202 Petition against me in Texas. On February 4, 2025, Lively non-suited the Petition. A true and correct copy of the Rule 202 Petition is attached as Exhibit 1 (Lively Rule 202 Petition) and the Motion to Non-Suit is attached as Exhibit 2 (Non-Suit).

33.     On February 4, 2025, I filed a lawsuit against Lively in the Western District of Texas, asserting claims for Declaratory Judgment and Defamation. A true and correct copy of this pleading is attached as Exhibit 3. Lively's responsive pleading is due April 4, 2025. A true and correct copy of e-mail confirmation from her Texas counsel is attached as Exhibit 4.

34.     ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████

35.     Travel to-and-from New York would be difficult financially for me. Not only would consistent travel to-and-from New York be a major expense for me, it would disrupt my ability to make a living, as I do most of my work in Texas.

36.     I believe my financial resources pale in comparison to Lively and her husband.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 18, 2025.

Jed Wallace
Hays County, Texas

# EXHIBITS A-1
# Previously Filed Dkt. 142-2

# EXHIBITS A-2
# Previously Filed Dkt. 142-3

# EXHIBITS A-3 Previously Filed Dkt. 142-4

# EXHIBITS A-4
# Previously Filed Dkt. 142-5

# EXHIBITS A-5
# Previously Filed Dkt. 142-6

# EXHIBITS A-6 Previously Filed Dkt. 142-7