**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

Blake Lively,

Plaintiff,

v.

Wayfarer Studios LLC, et al.,

Defendants.

Case No. 1:24-cv-10049-LJL

**NON-PARTY "JANE DOE" RESPONSE  IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER TO REQUIRE COURT APPROVAL PRIOR TO FUTURE
NON-PARTY SUBPOENAS**

I, **Jane Doe,** a non-party to Blake Lively v. Wayfarer Studios LLC (Case No.
1:24-cv-10049-LJL), respectfully submit this statement in support of non-party **Mario Armando
Lavandeira, Jr.** ("Lavandeira," commonly known as "Perez Hilton") and his prior request that
the Court require advance approval before **Blake Lively (Ms. Lively)** and her counsel may serve
further subpoenas on non-parties.

As an online content creator and prior marketing professional, I have a personal interest
in the above request for protection. If Lavandeira's request has already been denied, I ask that the
Honorable Judge Liman reconsider imposing such an order to safeguard the rights of uninvolved
individuals and to protect free speech online, including my own. I also request that this safeguard
apply specifically to further non-party subpoenas issued by Ms. Lively and her counsel. Based on
my layman's review of filings by other non-parties, it appears that Ms. Lively's counsel has
issued subpoenas to content creators based on unsubstantiated suspicions about their protected

online speech. On information and belief, several of these subpoenas were later withdrawn after private accounts were unmasked or a meet-and-confer was completed. These circumstances suggest that these subpoenas may, therefore, have been issued without a sufficient basis beyond the target's online speech (See Dkt. No. 503).

### I. Basis for Concern

I have never met any party in this case or their counsel or any third-parties employed by them, nor have I engaged in any coordinated marketing or communication efforts related to an alleged "smear campaign" at the behest of the Wayfarer Parties or anyone involved in this case. Nevertheless, I believe I am at real risk of being subpoenaed because:

1. **I am a frequent online content creator discussing this case.** After one of my videos garnered attention on TikTok, my LinkedIn profile appeared to be viewed by persons connected to Ms. Lively, specifically her husband Ryan Reynolds and others who appear to hold a monetary stake in Ms. Lively and her husband's professional network. This concerned me and continues to concern me.

2. **My professional background is in marketing, crisis communication, writing, and content creation.** These fields appear in my LinkedIn profile, as does a footnote that I worked for an actor during a film release. Like many professionals, I have held various roles throughout my career. However, I have absolutely no involvement with any of the parties, other than following this case through public sources and court filings. I fear that my prior work may be misinterpreted by Ms. Lively as relevant, even though it is unequivocally unrelated. In fact, like other content creators, my career is indicative only

of my interest in public relations, marketing, and pop-culture topics.

3. **I am a moderator of a Reddit group that openly discusses Justin Baldoni, Blake Lively, and related topics.** This voluntary role supports free speech and provides a space for domestic violence survivors who were upset by Ms. Lively's promotional behavior for the film or who continue to be frustrated by contrived or incomplete media narratives. I felt called to do this activity after realizing that I, too, was afraid to openly express my concern about the discrepancies in Ms. Lively's behavior during the film's promotion or within her subsequent allegations in the public domain. I care deeply about victims of injustice and was mindful that, online, there is an unofficial court of public opinion. Reddit seemed the safest choice for those who, like me, found Mr. Baldoni's lawsuit claims more compelling than Ms. Lively's narrative. In today's world, when reputation management is everything, as Ms. Lively can likely attest, speaking about Ms. Lively publicly appeared to risk a face-off with any of her or Mr. Reynold's fans. As time went on, I began to speak more openly about specific thoughts about the case filings, as is allowed within my protected free speech.

4. **During the summer of 2024, I publicly criticized Ms. Lively's marketing for It Ends With Us under my real name.** My comments were based on professional expertise and public information, not insider knowledge. Many users on the platform appeared to agree with my take that she ought to pivot in her approach and "liked" my comment. Unfortunately, Ms. Lively did not appear to pivot in her approach or acknowledge the public concerns, which may have resolved the online pushback.

5. My concerns are heightened by reports that private information about non-parties has appeared online through the court, as well as allegations that photos of non-parties' children have appeared in court filings. **Lavandeira highlighted other dangers for persons involved in the case (See Dkt. No. 510).**

---

## II. Summary of Concerns

I spoke out online about Ms. Lively's promotional approach for the film "It Ends With Us," as I found it tone-deaf to the subject of domestic violence. Rather than adopting a more empathetic tone amid public backlash, which I believe would have swiftly resolved public concerns, Ms. Lively continued promoting personal beauty and alcohol brands during publicity appearances.

One particularly troubling example was a promotional video found online, reportedly produced by Mr. Reynolds's marketing company, portraying him as a jealous husband questioning Ms. Lively's co-star (See Exhibit A). In my view, invoking toxic jealousy, presumably for humor, in the context of a domestic violence–themed film was inappropriate.

I also observed what appeared to be negative press coverage about Mr. Baldoni (See Exhibit B) that, based on my public relations experience, could plausibly have originated from Ms. Lively or those close to her. This raised concerns of a possible smear campaign against Mr. Baldoni. Worse, I read text messages in a legal filing that were purportedly authored by Ms. Lively to Mr. Baldoni. I found her messages surprising (See Exhibit C).

**III. Personal Impact and Fear of Targeting**

After appearing in a semi-viral video under my real name, I noticed LinkedIn "recommended connections" from Mr. Reynolds's professional sphere, including his own profile, despite never viewing them myself. This unusual activity, combined with Ms. Lively's alleged description of Mr. Reynolds as one of her "dragons" (See Exhibit D), left me feeling targeted for lawful speech.

The prospect of being subpoenaed by well-resourced parties like Ms. Lively and Mr. Reynolds is intimidating. They have legal and media access far beyond the capacity of non-party creators, journalists, or moderators.

---

**IV. Position on the Underlying Case**

As a non-party, I take no position on the merits of Ms. Lively's workplace claims, but seek to explain my natural interest in the topics above. My sole interest here is ensuring that non-parties are not subject to unnecessary, burdensome subpoenas based solely on public commentary.

I acknowledge that online discussions about public figures can be pointed, but my comments have been grounded in the belief that discourse on marketing choices and public contradictions is protected speech, and that we can never know exactly what happens in someone's individual experience.

---

**V. Request**

For these reasons, I respectfully request that the Court adopt a pre-filing requirement for subpoenas to non-parties in this matter. This safeguard would prevent unnecessary intrusion into the lives of individuals — like myself — who have exercised their right to comment on matters of public interest without any involvement in the alleged conduct at issue.

---

Dated: August 11, 2025

Respectfully submitted,

Jane Doe

[Address provided under seal]

# EXHIBIT A

Link: https://youtu.be/i2fMZgKCBY0?si=6DjoI3fCm0HRsohL



# EXHIBIT B



**Link:**

https://www.tmz.com/2024/08/14/blake-lively-justin-baldoni-fat-shamed-it-ends-with-us/

# EXHIBIT C



# Exhibit D

**Link:**

https://www.dailymail.co.uk/tvshowbiz/article-14347923/Blake-Lively-Justin-Baldoni-truth-dragon-husband-Ryan-Reynolds-lovers.html

And now that Reynolds is being dragged into this confusing crisscross of lawsuits, it's not only Lively and Baldoni whose behavior has come into question.

In a bizarre text exchange with Baldoni, Lively appears to refer to her husband as her 'dragon.' That's not exactly the 'Nice Guy' public image cultivated by this Canada-born rom-com hero.