**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**



**In Re Subpoena to:**

**MARIO LAVANDEIRA JR. aka PEREZ HILTON**

**MOTION TO QUASH SUBPOENA**

Non-party Mario Armando Lavandeira Jr., aka Perez Hilton, appearing pro se, respectfully moves this Court to quash the subpoena issued to him by the Southern District of New York in the matter of Blake Lively v. Wayfarer Studios, et al., for the reasons set forth below.

Mr. Lavandeira is a Nevada resident who was served in Nevada. The subpoena commands compliance at a location within this district, making this Court the appropriate venue for adjudicating this motion under Federal Rule of Civil Procedure 45(d)(3).

**PRELIMINARY STATEMENT**

This motion challenges a subpoena that is overbroad and abusive. It targets Mario Armando Lavandeira Jr., professionally known as Perez Hilton — a private citizen, a resident of Nevada, and a journalist who is wholly uninvolved in the litigation pending in the Southern District of New

York. Mr. Lavandeira is not a party, not a witness, and not alleged to possess any unique information relevant to the claims at issue. Yet, the subpoena demands sensitive, privileged, and constitutionally protected materials - in blatant disregard for the First Amendment, Nevada's Shield Law, and Rule 45's procedural protections.

This is not discovery — it is a fishing expedition that chills journalistic freedom and imposes undue burden on a non-party. The Court should quash this subpoena in its entirety to prevent further abuse of process and to uphold the legal protections afforded to individuals like Mr. Lavandeira.

I anticipate that the subpoenaing party may attempt to characterize me as merely a "content creator" or social media personality. That framing is inaccurate and misleading. I am a journalist — a globally recognized one — with a decades-long track record of reporting on matters of public interest. For over 20 years, I have operated PerezHilton.com, a daily news website that continues to publish original reporting, commentary, and media coverage. The Court is invited to review the site to confirm that it remains an active and ongoing journalistic enterprise. My work and I have been cited by mainstream outlets, referenced in legal filings, and are followed by millions. I adhere to journalistic standards, protect my sources, and conduct my job in the same professional capacity as any reporter. Courts have long held that reporter's privilege and First Amendment protections apply regardless of platform — whether print, digital, or social — and I am no exception. This motion should be evaluated in light of my role as a working journalist entitled to all applicable legal protections.

## I. THE SUBPOENA IMPOSES AN UNDUE BURDEN ON A NON-PARTY

This subpoena places an undue and unjustifiable burden on me, a private citizen and non-party with no involvement whatsoever in the underlying litigation. I am not a party, not a witness, and not alleged to possess unique information relevant to any claim or defense in the case. As such, I am entitled to the strongest possible protection under Federal Rule of Civil Procedure 45(d)(3)(A), which mandates that courts must quash subpoenas that impose an undue burden.

The burden here is not hypothetical - it is real and severe. Complying would require extensive effort to review, compile, and potentially testify about private communications or unpublished material, none of which have been shown to be relevant, proportional, or obtainable from a more appropriate source. Courts have consistently held that discovery burdens placed on non-parties are to be given special weight and must be narrowly tailored (see Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)).

The Ninth Circuit has echoed this view, warning that non-parties should not be conscripted into wide-reaching, speculative discovery campaigns (see Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999), cited favorably in Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993)). The subpoena here flouts this standard.

The burden here is especially disproportionate given my complete lack of involvement in this litigation and the absence of any claim that I possess unique knowledge. Requiring a non-party journalist to expend substantial time, energy, and resources to comply with an overly broad and invasive subpoena is exactly what Rule 45(d)(3)(A)(iv) was designed to prevent.

Courts have consistently held that non-parties deserve special protection from the burdens of civil discovery. See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the

balance of competing needs."). This is especially true for journalists. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("[C]ompelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

Since receiving this subpoena, I have already spent a substantial amount of time researching the law, drafting this motion, and defending my rights — time that has taken me away from my job as a journalist and from my responsibilities as a parent. That burden is real, personal, and entirely unjustified. The discovery process is not a license to conscript journalists into litigation to which they are strangers — especially when the requesting party has not even attempted to seek the information from more direct sources.

## II. THE SUBPOENA VIOLATES REPORTER'S PRIVILEGE AND THE FIRST AMENDMENT

 The subpoena strikes at the heart of my constitutionally protected role as a journalist and media commentator. It seeks information obtained during the course of my newsgathering activities - information that is protected by both federal law and Nevada's absolute reporter's privilege.

Under well-established Ninth Circuit precedent, courts recognize a qualified journalist's privilege against compelled disclosure of both confidential and non-confidential information. This privilege arises from the First Amendment and protects against discovery that would chill freedom of the press and hinder the free flow of information to the public. As held in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993), and reaffirmed in Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995), the party seeking to overcome this privilege must demonstrate that the information is (1) highly relevant, (2) unavailable by alternative means, and (3) crucial to the case. Blake Lively's legal team has made

no such showing - nor could they.

Courts have repeatedly affirmed that even non-anonymous individuals enjoy robust First Amendment protections against compelled disclosure that would chill speech or association. In Perry v. Schwarzenegger, 591 F.3d 1147, 1152 (9th Cir. 2010), the Ninth Circuit quashed a subpoena seeking internal communications from identified individuals and advocacy groups involved in public discourse, holding that "[t]he freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment." The court concluded that compelled disclosure in such contexts poses a "serious risk of chilling" public participation, and thus must be narrowly tailored and justified by a compelling need — a standard not remotely met here.

As a Nevada resident, and with the place of compliance located in Nevada, I am also protected by Nevada's Shield Law, codified at NRS 49.275. This statute grants journalists absolute immunity from being compelled to disclose any published or unpublished information or the identity of any source, regardless of confidentiality. This includes digital media and online reporting.

Because I reside and was served in Nevada, and enforcement is being sought in the District of Nevada, this Court should apply Nevada privilege law in evaluating the subpoena. Under Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Even when federal law applies, courts often consider state privilege laws when those laws offer heightened protection, particularly in cases involving non-party journalists. Nevada's Shield Law provides categorical protection against compelled disclosure of both published and unpublished information obtained in the course of journalism. That absolute privilege applies here.

Enforcing the subpoena would violate my First Amendment rights, the statutory protections of NRS 49.275, and long-standing judicial precedent. This Court must quash the subpoena to prevent the chilling effect it would have on press freedom, independent journalism, and the ability of reporters to inform the public without fear of compelled disclosure.

## III. THE SUBPOENA IS PROCEDURALLY DEFECTIVE AND LEGALLY INVALID UNDER RULE 45

This subpoena suffers from multiple procedural and jurisdictional defects that violate both the letter and spirit of Rule 45. As outlined below, it was issued from the wrong court, exceeds geographic limitations, and lacks enforceability.

First, it violates Rule 45(c)(1)(A), which limits the geographic scope of compliance. The subpoena was issued from the Southern District of New York but seeks compliance in Nevada — more than 2,000 miles away. Rule 45 strictly prohibits compelling attendance or production more than 100 miles from where the person resides, is employed, or regularly transacts business in person. Courts have repeatedly held that subpoenas served outside this range are invalid and unenforceable. See Schwarz v. Meinberg, No. 2:16-mc-00016, 2016 WL 4011620, at *2 (C.D. Cal. July 15, 2016); In re Apple Inc., 581 F. App'x 886, 889 (Fed. Cir. 2014); Powell v. Time Warner Cable, Inc., No. 2:09-CV-00600, 2010 WL 5464895, at *3 (S.D. Ohio Dec. 30, 2010). This subpoena plainly exceeds those bounds and must be quashed.

I live and work in Las Vegas, and I have no presence or connection to New York. The SDNY has no authority to compel compliance in this District. This jurisdictional defect alone renders the subpoena invalid and requires it to be quashed.

Second, the subpoena fails to clearly and properly designate a specific court or authorized proceeding with jurisdiction over me. Although it lists a Las Vegas location for compliance, it was issued from the Southern District of New York — a court that has no authority over me as a Nevada resident and non-party. The subpoena does not state that this is being conducted under the supervision of a court in Nevada, nor does it identify any properly authorized proceeding in this District. Courts have held that a subpoena that fails to identify a proper issuing authority or legal basis for jurisdiction is procedurally defective and must be quashed. See Estate of Ungar v. Palestinian Authority, 412 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) ("Subpoenas issued from a court that lacks jurisdiction over the person served are unenforceable."). This is not a minor technical flaw — it is a jurisdictional defect that strips the subpoena of any legal effect.

Third, the subpoena was served on me in Nevada and commands compliance in Nevada, where I reside and work. This is not a minor technical issue — it is a fatal jurisdictional flaw. Under Rule 45(d)(3), only the court for the district where compliance is required — here, the District of Nevada — may adjudicate a motion to quash or enforce a subpoena. The issuing court, the Southern District of New York, has no territorial power over me as a non-party outside its geographic reach.

Courts consistently hold that a subpoena served and made returnable outside the issuing court's jurisdiction is null and void. See Gipson v. Southwest Bell Tel. Co., 2009 WL 790203 (D. Kan. Mar. 24, 2009) (quashing subpoena issued from the wrong district); Wright v. American Int'l Group, 2020 WL 5526680, at 4 (S.D. Ohio Sept. 15, 2020) ("The issuing court lacks jurisdiction to enforce a subpoena outside its district under Rule 45.").

Because I have no presence in New York, and the subpoena neither originates from nor is enforceable by the court with jurisdiction over the place of compliance, it is invalid and must be quashed as a matter of law.

Courts have consistently held that when a subpoena is issued by a court that lacks territorial authority over the recipient, it is unenforceable and must be quashed. See Eurofins Discovery Services v. BioChain Institute, Inc., No. 21-mc-80160, 2021 WL 3510363, at *3 (N.D. Cal. Aug. 10, 2021) (quashing subpoena for lack of jurisdiction where it commanded compliance outside the issuing court's authority). The subpoena in this case is therefore void, and this Court — the District of Nevada — is the only proper forum to adjudicate the matter and to issue relief.

## IV. THE SUBPOENA FAILS BECAUSE THE INFORMATION SOUGHT IS READILY AVAILABLE FROM THE WAYFARER PARTIES - OTHER, MORE APPROPRIATE SOURCES

Even assuming, solely for the sake of argument, that the subpoena seeks material relevant to the underlying litigation, that alone is insufficient to justify compelling disclosure from a non-party journalist. Courts have consistently held that when constitutionally protected or privileged information is sought from members of the press, the requesting party must first demonstrate that the information is not available from other sources. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("[C]ompelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources."); United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988) (quashing subpoena where "the party seeking the information failed to show that it was unavailable from another source").

In this case, the information sought is plainly available from parties to the litigation or other primary sources. I possess no exclusive access, no first-hand knowledge, and no involvement in the events at issue. As a journalist, I am protected by both the federal reporter's privilege and Nevada's absolute Shield Law. The subpoena must be quashed because it seeks to extract protected information from a non-party without meeting the threshold burden imposed by law.

Also, if the subpoena seeks relevant material - it still must be quashed because the information is plainly available from parties to the litigation or other primary sources, not from me, a non-party journalist. Under Federal Rule of Civil Procedure 26(b)(2)(C), courts must limit discovery when the information can be obtained from some other source that is more convenient, less burdensome, or less expensive. This principle applies with even greater force when the target of discovery is a non-party, especially one engaged in constitutionally protected press activity. As the Ninth Circuit held in Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995), compelled disclosure is only permissible when the party seeking it has first shown unavailability from other sources.

Blake Lively and her legal team have not made-and cannot make-such a showing. They should pursue discovery through the parties actually involved in the lawsuit. I am not part of this case, and any information I do have is protected by law. Rule 26(b)(2)(C) and Rule 45(d)(3) both exist to prevent this kind of abuse.

Moreover, I possess no unique or exclusive access to any information relevant to this litigation. I am not a witness, insider, or party to any of the events at issue. What I have publicly commented on is based on materials already available in the court record or reported in the public domain. To the extent the subpoena seeks information that might be relevant, it can — and must — be obtained directly from the parties to the case, particularly the Wayfarer defendants. Courts have

consistently held that journalists cannot be forced to testify or produce materials when the information sought is available from more direct sources. See Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("If the information sought is available from a non-journalistic source, the subpoena should be quashed."); Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("Compelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

The law is clear: when information can be obtained from someone directly involved in the underlying dispute, courts will not permit discovery from an uninvolved journalist. See Gonzales v. NBC, 194 F.3d 29, 35 (2d Cir. 1999) ("Compelled disclosure from journalists is not appropriate unless the party has first exhausted all alternative sources.").

In this case, Blake Lively and her legal team have direct access to the Wayfarer defendants, who can answer for their own communications, statements, or alleged conduct. There is no showing that I possess any unique or exclusive evidence. Everything I have commented on was based on public court filings or other publicly reported facts. The burden is on the subpoenaing party to show that I have critical, non-duplicative evidence that cannot be acquired elsewhere — and they have not even attempted to make such a showing.


## V. THE SUBPOENA RISKS INTRUDING ON ATTORNEY-CLIENT PRIVILEGE AND CONFIDENTIAL LEGAL COMMUNICATIONS

This subpoena not only overreaches journalistically - it also threatens to pierce the veil of attorney-client privilege, one of the most sacred doctrines in American law. Any attempt to compel disclosure of legal communications-directly or indirectly-raises grave constitutional and

ethical concerns.

I am represented by attorney Bryan Freedman, although he is not representing me in this matter. Notably, Mr. Freedman is also lead counsel for Justin Baldoni and the Wayfarer defendants — the very parties at the center of this litigation. While I am not a party to this case, the subpoena may overlap with privileged or confidential communications I have had with Mr. Freedman or members of his firm. That fact alone heightens the risk of improper disclosure and potential ethical conflict.

Courts have held that once the possibility of attorney–client privilege is raised, the burden shifts to the subpoenaing party to prove that no privilege applies. See United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996) (holding that the party seeking disclosure "must prove, by clear and convincing evidence, that the privilege does not apply"). That burden has not been met here — nor has it even been addressed. The risk of breaching attorney–client privilege further reinforces the need to quash this subpoena in its entirety.

The Ninth Circuit has consistently held that courts must apply a strict standard when determining whether a subpoena can intrude into privileged realms (see Admiral Ins. Co. v. U.S. District Court, 881 F.2d 1486 (9th Cir. 1989)). There has been no privilege waiver. There has been no evidentiary showing of need. There has been no justification at all for this dangerous overstep.

No litigant is entitled to discovery that compromises attorney–client communications, especially not from a non-party with no material connection to the case.

## VI. The Subpoena Reflects the Type of Abuse Anti-SLAPP Principles Are Designed to Prevent

The principles underlying Nevada's anti-SLAPP statute (NRS 41.660) further underscore the impropriety of this subpoena.

Although Nevada's anti-SLAPP statute does not explicitly apply to subpoenas, its core principles are highly relevant here. The statute is designed to protect individuals — including journalists and commentators — from legal tactics intended to chill participation in public discourse. That is precisely what is occurring in this case: I provided commentary on a matter of public concern based entirely on public court filings, and now I am being dragged into federal litigation as a result.

Nevada's anti-SLAPP statute is meant to deter legal tactics aimed at punishing or chilling protected speech. This subpoena, issued against a non-party journalist based solely on constitutionally protected commentary about public litigation, exemplifies the kind of abusive legal pressure the statute seeks to discourage. Courts have long held that the power of discovery must not be used as a weapon against free expression. That principle applies here with equal force, reinforcing the need for this Court to quash the subpoena in full.

As the Ninth Circuit has held, Nevada's anti-SLAPP statute must be interpreted broadly to safeguard public participation in legal and policy debates. See Metabolic Research, Inc. v. Ferrell, 693 F.3d 795, 802 (9th Cir. 2012) ("The protections of Nevada's anti-SLAPP statute are to be construed broadly and interpreted to encourage participation in public discourse without fear of retribution through abusive litigation.").

This Court should take these policy concerns into account when evaluating the burden,

overbreadth, and chilling effect of enforcing this subpoena. The public's interest in robust

commentary on judicial proceedings is not advanced by punishing those who report or opine on

them.

## VII. The Subpoena Requires Disclosure of Privileged and Protected Information in Violation of Rule 45(d)(3)(A)(iii)

Rule 45(d)(3)(A)(iii) mandates that a court must quash or modify a subpoena that "requires

disclosure of privileged or other protected matter, if no exception or waiver applies." The rule is

mandatory: if privilege applies and no exception exists, the subpoena must be quashed.

As detailed above, the subpoena issued to me seeks information subject to multiple, overlapping

privileges:

- First, it targets materials protected by the First Amendment and the federal reporter's
  privilege, as established in Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) and 48 F.3d 412
  (9th Cir. 1995).

- Second, it implicates Nevada's absolute journalist Shield Law, NRS 49.275, which
  categorically bars compelled disclosure of both published and unpublished materials
  obtained in the course of reporting.

- Third, it risks invading the attorney-client privilege, given my past communications with
  counsel that may fall within the subpoena's sweeping scope.

No exception or waiver applies to any of these protections. The subpoena does not identify

specific, non-privileged information, nor does it make any showing that privileged material should

be pierced. Its breadth and vagueness only heighten the risk that it would improperly compel

disclosure of protected content.

Under Rule 45(d)(3)(A)(iii), that alone is sufficient grounds for this Court to quash the subpoena

in full.


## VIII. The Subpoena Seeks Confidential Editorial and Commercial Information in Violation of Rule 45(d)(3)(B)(i)

Rule 45(d)(3)(B)(i) authorizes courts to quash or modify a subpoena if it "requires disclosure of a

trade secret or other confidential research, development, or commercial information." I own and

operate a media website with editorial discretion and proprietary decision-making processes that

are commercially sensitive.


The subpoena, by seeking access to internal communications, unpublished content, and

newsgathering practices, threatens to expose confidential editorial strategies and reporting

methods. These materials are not public, and disclosure would directly undermine the

independence and viability of my work as a journalist.

Courts have acknowledged that such information is entitled to protection. See Gonzales v. NBC,

194 F.3d 29, 35 (2d Cir. 1999) (forced disclosure of internal editorial process can chill journalism);

In re Subpoena Duces Tecum to ABC, 189 F.3d 117, 123 (2d Cir. 1999) (courts must be cautious

when discovery intrudes on editorial judgments and unpublished materials); In re Bextra &

Celebrex, 249 F.R.D. 8, 12 (D. Mass. 2008) (courts routinely quash subpoenas seeking commercially sensitive information without justification).

This risk of compelled disclosure of protected material provides yet another independent — and compelling — reason to quash the subpoena in full.


## IX. THE SUBPOENA IS OVERBROAD, INTRUSIVE, AND A TRANSPARENT FISHING EXPEDITION

This subpoena exceeds the bounds of reasonable discovery and functions as a textbook fishing expedition. While it purports to identify certain document categories, those categories are broad, vaguely defined, and largely untethered to any specific claims or defenses in the underlying case. Courts have consistently rejected discovery requests that amount to open-ended demands for "anything that might be useful." See In re Subpoena to Verizon Internet Services, 257 F. Supp. 2d 244, 258 (D.D.C. 2003) ("[S]ubpoenas are not a license for fishing expeditions or intrusions into constitutionally protected areas.").

Rule 45 does not permit parties to impose undue burden or demand sweeping disclosure from non-parties in the hope of stumbling upon something relevant. See also Gropper v. David Ellis Real Estate, L.P., 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (quashing overbroad subpoena that sought documents "regardless of whether they bear on any party's claim or defense").

Courts in the Ninth Circuit have repeatedly quashed subpoenas that fail to delineate relevance or specificity. Indeed, the Ninth Circuit has emphasized that "the litigant's interest in disclosure should yield to the journalist's privilege," and any subpoena must adhere to Rule 45's

proportionality and specificity requirements (Shoen II, 48 F.3d at 416; Farr v. Pitchess, 522 F.2d 464, 468-69). Broad, speculative demands for information - especially from non-parties-are routinely rejected.

Here, the subpoena targets me, a journalist and public figure, seeking unspecified communications and materials unrelated to any known claim, thereby risking a chilling effect on press freedom. Rule 45 does not permit such untargeted discovery. As one court put it, subpoenas "must represent a good faith effort to obtain identified evidence rather than a general 'fishing expedition.'"

The subpoena is painfully overbroad. Courts have routinely rejected similarly expansive requests — particularly when aimed at non-party journalists. See Oakley v. MSG Networks, Inc., No. 24-mc-23 (S.D.N.Y. Jan. 8, 2025), 2025 WL 72111, at 2 ("Subpoenas seeking 'all documents and communications' without reasonable limitation are presumptively improper."); Hedgeye Risk Mgmt., LLC v. Dale, No. 21-cv-3687, 2023 WL 4353076, at *5 (S.D.N.Y. July 5, 2023) (quashing subpoena for "sweeping and non-specific" requests not narrowly tailored); Gropper v. David Ellis Real Estate, L.P., No. 13-cv-2068, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) ("Subpoenas that fail to specify categories or relevant timeframes are inherently overbroad and must be quashed.") Blake Lively's subpoena suffers from the same fatal flaws. That kind of fishing expedition is exactly what Rule 45(d)(3)(A)(iv) forbids.

The subpoena's breadth and disregard for proportionality make it oppressive and improper. It should be quashed. This overbreadth is contrary to Rule 45's mandate that subpoenas not impose an "undue burden" or be "unreasonable or oppressive." This is particularly true where, as here, the target is a non-party journalist entitled to heightened protection under both the First Amendment and Rule 45. See Hale v. State Farm Mut. Auto. Ins. Co., 2016 WL 1055580, at *4 (S.D. Ill. Mar.

17, 2016) (quashing non-party subpoena as overbroad, not proportional, and imposing undue burden).

The subpoena is an impermissible fishing expedition. It does not seek narrowly tailored, material evidence — it casts a wide net in hopes of uncovering something useful. Courts have consistently rejected such tactics, especially where privileged or protected materials are at stake. It should be quashed.

## RELATED FEDERAL COURT FILING

For the Court's awareness and consideration, Movant notes that on July 19, 2025, a related motion was filed in the United States District Court for the Southern District of New York. That filing — docketed as Document 470 in Case No. 1:24-cv-10049 (Lively v. Wayfarer Studios LLC) — is a formal Motion to Seal or Redact Personal Information submitted by Movant in response to the very same subpoena at issue here.

The SDNY filing outlines in detail the serious privacy and safety risks associated with public disclosure of Movant's personal identifying information, particularly as a journalist and public figure with minor children and an elderly parent in the household. That motion is attached in this filing

## REQUEST FOR FEES AND COSTS

Pursuant to Federal Rule of Civil Procedure 45(d)(1), Mr. Lavandeira requests that the Court

award reasonable expenses incurred in responding to this improper subpoena. Rule 45(d)(1)

imposes an affirmative duty on parties and their counsel to avoid imposing undue burden or

expense on non-parties, and authorizes the Court to "enforce this duty and impose an appropriate

sanction — which may include lost earnings and reasonable attorney's fees." This subpoena,

which targets a journalist with no involvement in the underlying litigation and seeks protected

information, falls squarely within the category of abusive discovery that courts have routinely

sanctioned. See, e.g., Mount Hope Church v. Bash Back!, 705 F.3d 418, 429 (9th Cir. 2012)

(reversing denial of sanctions under Rule 45 where subpoena was issued without due

consideration for the burden on a non-party); Legal Voice v. Stormans Inc., 738 F.3d 1178, 1184

(9th Cir. 2013) (affirming award of fees to non-party public interest group improperly

subpoenaed); In re NCAA Student-Athlete Name & Likeness Licensing Litig., No. 09-cv-01967,

2012 WL 4846522, at *2 (N.D. Cal. Oct. 10, 2012) (awarding fees under Rule 45(d)(1) where

subpoena was overbroad and unduly burdensome); Miller v. Ghirardelli Chocolate Co., No.

12-cv-04936, 2013 WL 6775532, at *4 (N.D. Cal. Dec. 20, 2013) (same). Responding to this

overreaching subpoena has required substantial time, legal research, and preparation of the instant

motion and supporting materials. An award of reasonable costs would not only compensate Mr.

Lavandeira for this undue hardship, but would send a clear message that the subpoena power

cannot be wielded recklessly or punitively — especially against journalists and uninvolved third

parties.

Rule 45(d)(1) requires parties and attorneys issuing subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." It further provides that "[t]he court… must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply."

Blake Lively's legal team failed to meet this obligation. The subpoena directed at me — a non-party journalist — is overbroad, intrusive, legally deficient, and plainly designed to intimidate and burden rather than to obtain genuinely discoverable evidence. No effort was made to pursue discovery from parties actually involved in the litigation. Instead, the subpoena demands privileged and irrelevant material from someone with no nexus to the underlying claims, in direct violation of Rule 45(d)(1).

I respectfully request that the Court impose sanctions to reflect the improper and abusive nature of this subpoena, and to deter similar conduct in the future.

Sanctions Are Also Warranted Under Rule 26(g)

In addition to Rule 45(d)(1), sanctions are independently warranted under Federal Rule of Civil Procedure 26(g). That rule requires attorneys to certify that all discovery requests are legally

justified, not issued for improper purposes, and proportionate to the needs of the case. Blake

Lively's legal team failed that standard here. This subpoena targets a non-party journalist with no

connection to the underlying litigation, seeks privileged and protected material, and imposes

significant burden without first pursuing discovery from actual parties. Its overbreadth, legal

deficiencies, and apparent disregard for jurisdictional limits further indicate it was not interposed

in good faith.

Rule 26(g)(3) provides that if a certification is violated without substantial justification, "the court,

on motion or on its own, must impose an appropriate sanction on the signer, the party on whose

behalf the signer was acting, or both." I ask that this Court exercise that authority and award costs

or other appropriate relief to deter future misuse of the discovery process.

Finally, Rule 11(c) authorizes sanctions when a filing is submitted "for any improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The

sweeping scope and harassing nature of this subpoena — directed at a journalist —  strongly

suggest it was issued in retaliation for lawful commentary on a matter of public concern.

 For these reasons, I urge that the Court impose appropriate sanctions to reflect the improper,

burdensome, and constitutionally offensive nature of this subpoena, and to deter similar abuses in

the future. Such an award is especially warranted where the subpoena targets a journalist and

threatens to chill constitutionally protected expression and reporting.

**CONCLUSION**

For the record, I have not been paid by Justin Baldoni. I have not been paid by any of the Wayfarer defendants. I have not been paid by anyone to cover this litigation. My commentary and analysis have been wholly independent, based solely on my own reading of the docket and my interpretation of the underlying facts.

In relation to me, this subpoena is an egregious misuse of civil discovery — legally baseless, constitutionally offensive, and procedurally defective. It targets a non-party journalist with no involvement in the litigation, demanding sensitive and  privileged information - in flagrant disregard of the First Amendment, Nevada's Shield Law (NRS 49.275), and the procedural safeguards of Rule 45(d).

Because the subpoena threatens the compelled disclosure of privileged and constitutionally protected information, its enforcement would cause irreparable harm — both to me personally and to the broader public interest in a free and independent press.

Courts have long held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Disclosure here would not only violate reporter's privilege, but would inflict constitutional harm that cannot be undone.

The subpoena fails every applicable legal test: it imposes undue burden, ignores geographic limitations, and seeks information readily available from the parties to the case.

Worse still, it sends a dangerous signal — that journalists can be harassed, intimidated, and dragged into federal court simply for doing their jobs. That cannot be allowed. This Court has both the authority and the obligation to quash the subpoena in full and to reaffirm that discovery is not a bludgeon to be wielded against the free press. Anything less would reward abuse and invite repetition.

On July 26, 2025, Plaintiff Blake Lively, through counsel, submitted a letter to Judge Lewis J. Liman in the Southern District of New York acknowledging that she has withdrawn all subpoenas served on third-party service providers (including Google and X) in relation to several non-party individuals who filed motions to quash. A true and correct copy of that letter is attached hereto. This move — made only after multiple non-parties asserted their legal rights — is a tacit admission that those subpoenas were legally defective and unenforceable. The subpoena served on me suffers from the exact same flaws, and its continued enforcement would amount to selective harassment. The Court should take judicial notice of this pattern, and likewise quash the subpoena issued to me in full.

*Movant does not waive and specifically reserves any and all objections to this or any other discovery directed at him.*

For all the reasons stated above - I request that the Court quash the deficient and unenforceable subpoena in its entirety and grant any further relief it deems just and proper.

Dated: July 28, 2025

Respectfully submitted,

/s/ Mario Lavandeira

Mario Lavandeira aka Perez Hilton

Pro Se Movant