# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

August 15, 2025

**VIA ECF**

Hon. Lewis J. Liman
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Lively v. Wayfarer Studios, LLC, et al.*, No. 24-cv-10049 (LJL)

Dear Judge Liman:

Plaintiff Blake Lively respectfully submits this reply in further support of her letter-motions to compel Katherine Case and Breanna Butler Koslow to produce documents withheld on privilege grounds or, alternatively, for *in camera* review (Dkt. Nos. 585, 586), and in response to Ms. Case and Ms. Koslow's opposition (Dkt. No. 622), and to their more recent filing of an "expanded and revised" privilege log late Wednesday night (Dkt. No. 644).

In their opposition, Ms. Case and Ms. Koslow ignore that it is the party claiming privilege, rather than the party disputing it, who bears the burden to demonstrate that the privilege applies. Instead, they fault Ms. Lively's counsel for their supposed "false assumptions" about the nature of the withheld materials. Dkt. No. 622 at 1. In doing so, Ms. Case and Ms. Koslow seek to have it both ways: on the one hand, they do not dispute that, during their conferrals with Ms. Lively's counsel, they maintained that their privilege logs were sufficient under *Rekor Systems, Inc. v. Loughlin* in the sense that they included enough information to permit "an intelligent determination about the validity of the assertion of the privilege," 2021 WL 5450366, at *1 (S.D.N.Y. Nov. 22, 2021). On the other hand, they now appear to fault Ms. Lively's counsel for assuming that the privilege logs did, in fact, contain such information—something Ms. Case and Ms. Koslow now appear to have conceded was not the case. It was not, and is not, Ms. Lively's burden to extract information supportive of Ms. Case, Ms. Koslow, or the Wayfarer Parties' privilege claims from those parties themselves (although her counsel tried to do so and was rebuffed). It is *their* burden to demonstrate the facts necessary to uphold their own privilege claims. Despite ample opportunity, they did not do so at any time up to and including when they filed their opposition.

Whether or not the new "expanded and revised" privilege log satisfies their burden to justify the disputed privileges is beside the point, because any arguments beyond those made at the time of Ms. Case and Ms. Koslow's opposition should be deemed waived. Ms. Lively "is not [Ms. Case or Ms. Koslow's] keeper, and [their] obligation to produce a privilege log was triggered by service of the subpoena, not by" Ms. Lively's prompting. *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *3 (S.D.N.Y. May 23, 2016). The same goes for the Wayfarer Parties. *See* Dkt. No. 623 at 2; *Micillo*, 2016 WL 2997507, at *3. Ms. Case, Ms. Koslow, and the Wayfarer Parties have been on notice of the underlying subpoenas for months, of the possibility that Ms. Lively would challenge privilege claims for weeks, and of the detailed arguments set forth in Ms. Lively's letter-motions since August 8. Yet they

did not serve their "expanded and revised" privilege log until August 13, *the day after their opposition was due*. That does not qualify as a timely assertion of privilege. *Micillo*, 2016 WL 2997507, at *3. The Court should hold Ms. Case and Ms. Koslow to their original logs and should reject the bulk of these privilege assertions without any need to review the documents.[1] Dkt. Nos 585, 586.

To the extent the Court does not deem the "expanded and revised" privilege log waived and/or is inclined to accept any privilege assertions, *in camera* review is warranted. Ms. Case and Ms. Koslow suggest that Ms. Lively has not justified *in camera* review, but the case they cite requires only a "minimal showing" to do so. *Micillo*, 2016 WL 2997507, at *6. Even more tellingly, *Micillo* rejected the *proponent*'s request for *in camera* review because the *proponent* had not put forward any facts suggesting that the materials were privileged. *Id.* The alternative, in other words, was not upholding the privilege but ordering production. That is what should occur here. As in *Micillo*, there is no basis to conclude that the privilege claims here are justified, "particularly in the glaring absence of any supporting affidavits or other documentation"—an absence that has persisted even after the "expanded and revised" privilege log emerged. *Id.* at *3 (cleaned up). But if there were any doubt, Ms. Case and Ms. Koslow have conceded that the actual contents and purpose of their communications would be dispositive across most if not all of their asserted privileges, requiring *in camera* review.[2]

As to the issues raised in Ms. Lively's letter-motions that would not be affected by the "expanded and revised" privilege log, Ms. Case and Ms. Koslow's opposition brief responds to straw-man versions of Ms. Lively's arguments or fails to respond at all. With respect to most elements of most of the claimed privileges, Ms. Case and Ms. Koslow did not even address them, much less satisfy their burden.

*First*, Ms. Case and Ms. Koslow's assertion of a "common legal interest" among *all* of the listed participants on the group communications fails to carry the necessary burden to demonstrate what that interest was, how the different parties shared it, or (as importantly) that the various parties had actually agreed on a joint legal strategy prior to exchanging the disputed communications. Dkt. No. 622 at 2; *see, e.g.*, *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 2013 WL 238176, at *2 (S.D.N.Y. Jan. 18, 2013). With respect to the post-December 21, 2024 period, Ms. Case and Ms. Koslow assert only that the participants all shared an interest in "vindicating themselves and prevailing in this suit." Dkt. No. 622 at 2. But a proponent's "general statements in [a] letter brief that" different parties' "interests on litigation . . . were aligned are insufficient to carry its burden" to demonstrate the common interest doctrine applies. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2019 WL 6736132, at *9 (S.D.N.Y. July 22, 2019); *see id.* (rejecting common-interest claim where the proponent "produced no declarations or other reliable evidence to adequately substantiate a claim of common legal interest"). Even if such generalized assertions were sufficient to carry the burden, Ms. Case and Ms. Koslow

---

[1] Notably, Ms. Case and Ms. Koslow do not even attempt to explain their alleged "inadvertent production" on July 16. Dkt. No. 622 at 2.

[2] The "expanded and revised" privilege log, among other changes, modifies the date ranges for the withheld documents, including by changing the dates of conversations from prior to December 20, 2024 to after December 20, 2024, which affects the arguments raised in Ms. Lively's letter motions. The revised privilege log also adds a significant amount of new detail regarding individual communications that was withheld from the initial privilege logs. Dkt. No. 644-1. This new detail would permit Ms. Lively to compare the logged communications with other communications that *were* produced in discovery, and not clawed back, and determine whether those productions effectuated a waiver of privilege as to the communications currently being withheld.

mischaracterize the nature of the common interest it would be their burden to demonstrate: it is not enough to demonstrate that the various participants all shared a rooting interest in the litigation, or even that all hoped to "vindicate" their own reputations through the other parties' success. Otherwise, every litigant's employee, friend, relative, or business partner could claim a common legal interest based only on the downstream effects on *their* reputations of the litigants' success or failure in the lawsuit.

*Third*, and similarly, Ms. Case and Ms. Koslow fail to explain why the inclusion of third-party PR professionals on the disputed communications does not constitute a waiver of any privilege. Dkt. No. 622 at 2. They do not even argue that these PR professionals were essential to the provision of legal advice, as they must. Dkt. No. 585 at 2. Instead, Ms. Case and Ms. Koslow assert broadly that "TAG, its employees, and others involved in the PR representation of the Wayfarer parties, were entitled to coordinate with counsel and to pursue a unified legal strategy," Dkt. No. 622 at 2. Accepting that broad (and unsupported) assertion as sufficient to demonstrate privilege would extend the "narrow" protection for communications "essential" to the provision of legal advice, Dkt. No. 586 at 3; Dkt. No. 585 at 2, into a general protection for all "involved in the PR representation" of litigants. Dkt. No. 622 at 2. That is emphatically not the law. Dkt. No. 585 at 2. Ms. Case and Ms. Koslow defend the presence of PR professionals by noting that "[c]risis PR professionals routinely coordinate with legal counsel on both PR **and** legal matters." Dkt. No. 622 at 2. But that is exactly the point: PR professionals "routinely" engage in activities that have nothing to do with, or are at least not "essential" to, the provision of legal advice—and communications made in the course of such activities are not privileged. *Id.*; Dkt. No. 585 at 2; *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).[3]

*Fourth*, Ms. Case and Ms. Koslow fail to substantiate nearly all of their work-product claim. They assert that work-product protection "extends to *all* materials prepared in anticipation of litigation by or for a party," but that glosses over the relevant issue here. Dkt. No. 622 at 3 (emphasis added). Some attorney tasks "may be related to litigation while others may not. It is only [the former] and those communications that are generated 'because of' litigation or the anticipation of litigation, and not those that [merely] postdate litigation that are entitled to work product protection." *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *7 (S.D.N.Y. Oct. 4, 2024). "The key is that the documents result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." *Id.* at *4 (cleaned up). PR strategy does not generally qualify. Dkt. No. 585 at 3; Dkt. No. 586 at 3. In any event, Ms. Case and Ms. Koslow actually defend application of the doctrine only as to "drafts of the counterclaims filed in this action," which Ms. Lively agrees would be protected work-product to the extent they are included in the disputed materials. Dkt. No. 622 at 3. Because Ms. Case and Ms. Koslow do not even mention any other specific materials that might be protected, their work-product claim must otherwise be rejected.

---

[3] Ms. Case and Ms. Koslow concede that communications between company counsel and former employees are privileged only if the "content and purpose" of the communications shows that they were "made to assist counsel in gathering facts or formulating legal strategy related to the former employee's work." Dkt. 622 at 3; *see* Dkt. No. 585 at 2. But rather than explain whether or how that standard is satisfied with respect to any of Ms. Case's communications post-dating her employment with TAG, they assert a new date—January 24—as her last day. Previously, Ms. Case's counsel had represented to the Court that her last day was "[s]ometime in December," and cited this as a reason that it was "simply not even conceivable" that Ms. Case had been involved in "continuing violations" beyond December 21, 2024, an assertion that now appears to have been without factual support. ECF No. 381, 17:20-24.

Respectfully submitted,

s/ Michael J. Gottlieb

*Counsel for Blake Lively*