**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY, | Case No. 1:24-cv-10049-LJL |
| Plaintiff, | (consolidated with 1:25-cv-00449-LJL) |
| v. | |
| WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC., | |
| Defendants. | |
| JENNIFER ABEL, | |
| Third-Party Plaintiff, | |
| v. | |
| JONESWORKS, LLC | |
| Third-Party Defendant. | |
| WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, JENNIFER ABEL, and STEVE SAROWITZ, | |
| Consolidated Plaintiffs, | |
| v. | |
| BLAKE LIVELY, RYAN REYNOLDS, LESLIE SLOANE, VISION PR, INC., and THE NEW YORK TIMES COMPANY | |
| Consolidated Defendants. | |

**NON-PARTY ISABELA FERRER'S OPPOSITION
TO MOTION FOR LEAVE TO
<u>SERVE HER BY ALTERNATIVE SERVICE</u>**

JARED B. FOLEY
jfoley@mrllp.com
**MICHELMAN & ROBINSON, LLP**
605 Third Avenue, 30th Floor
New York, NY 10158
Telephone: 212-730-7700
Facsimile: 212-730-7725


SANFORD L. MICHELMAN (CA SBN 179702)
smichelman@mrllp.com
JON-JAMISON HILL (CA SBN 203959)
jhill@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90024
Telephone: 310-299-5500
Facsimile: 310-299-5600


*Specially Appearing for
Non-Party Isabella Ferrer*

### <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

    A.   BALDONI MADE MINIMAL REFERENCE TO MS. FERRER IN THE ORIGINAL COMPLAINT
        BALDONI FILED AGAINST LIVELY .................................................................... 3

    B.   MS. FERRER BECAME INVOLVED IN THE LITIGATION BY WAY OF THE LIVELY
        SUBPOENA. ....................................................................................................... 4

    C.   BALDONI DEMANDED THAT MS. FERRER RELINQUISH CONTROL OF HER RESPONSE
        TO THE LIVELY SUBPOENA TO WAYFERER. ..................................................... 4

    D.   BALDONI MADE ACCEPTING SERVICE OF THE BALDONI SUBPOENA A QUID PRO QUO
        TO MOVE FORWARD WITH THE PROCESS FOR HANDLING CONTRACTUAL
        INDEMNIFICATION OBLIGATIONS OWED TO MS. FERRER. ................................. 6

    E.   BALDONI'S MOTION LED TO NEGATIVE PUBLICITY FOR MS. FERRER. ............. 7

III.  ARGUMENT ....................................................................................................... 8

    A.   THE MOTION IS BASELESS, BECAUSE BALDONI HAS NOT TAKEN ANY ACTION TO
        ACTUALLY LOCATE MS. FERRER, AND BALDONI DOES NOT HAVE A SHRED OF
        EVIDENCE TO SHOW THAT MS. FERRER IS EVADING SERVICE. ...................... 10

    B.   THE PURPOSE OF THE MOTION, AND THE UNDERLYING SUBPOENA, IS TO HARASS
        MS. FERRER AS PART OF A BROADER, COORDINATED CAMPAIGN AGAINST HER. ......... 12

        1.   Baldoni Used the Motion to Publicly Disseminate Personally Identifying
            Information of Non-Parties. .................................................................... 13

        2.   Baldoni Previously Tried to Leverage Indemnity Obligations Owed to
            Ms. Ferrer to "Control" of Ms. Ferrer's Response to Other Discovery Directed
            to Her in This Litigation. ........................................................................ 14

        3.   Baldoni's Subpoena Largely Covers Materials that Lively's Subpoena
            Covered, Highlighting the Harassing Nature of Baldoni's Discovery Conduct. .... 15

    C.   BALDONI'S CONDUCT WARRANTS SANCTIONS PURSUANT TO RULE 45,
        SUBDIVISION D .............................................................................................. 16

IV.   CONCLUSION .................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

*Ahmed v. City of New York*, 2024 WL 2884039 (S.D.N.Y. May 23, 2024) ........................... 9, 10

*Doe v. Princeton University*, 349 F.R.D. 92 (D.N.J. 2025) ........................................................ 8

*Electro-Mechanical Products, Inc. v. Alan-Lupton Assoc., Inc.*, 2025 WL 51205
  (D. Col. Jan. 8, 2025) ......................................................................................................... 16

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 1313259 (S.D.N.Y.
  May 11, 2009) ........................................................................................................................ 9

*Keep on Kicking Music, Inc. v. UMG Recordings, Inc.*, 2025 WL 1905090
  (S.D.N.Y. Jul. 10, 2025) ..................................................................................................... 8, 9

*Saint-Jean v. Emigrant Mortgage Co.*, 2015 WL 13735434 (E.D.N.Y. Oct. 7,
  2015) ................................................................................................................................. 16, 17

*Sec. & Exch. Comm'n v. Pence,* 322 F.R.D. 450 (S.D.N.Y. 2017) ................................................ 9

*Tube City IMS, LLC v. Anza Capital Partners, LLC*, 2014 WL 6361746 (S.D.N.Y.
  Nov.14, 2014) ......................................................................................................................... 9

**Statutes**

Federal Rule of Civil Procedure 45 ......................................................................................... 8, 16

# I
## **INTRODUCTION**

The instant Motion for Leave to Serve Third Party Isabela Ferrer by Alternative Service ("<u>Motion</u>") is yet another attempt by Justin Baldoni and his affiliated entities (collectively "<u>Baldoni</u>") to harass non-party Isabela Ferrer and draw her deeper into litigation and disputes that she has done her best to avoid. This is Ms. Ferrer's first filing in this Court, but she was pulled into the discovery fray in February 2025 when Blake Lively delivered a subpoena to her ("<u>Lively Subpoena</u>") to delve into allegations about Ms. Ferrer that Baldoni included in his original complaint. In response, Ms. Ferrer tendered a demand for indemnity to It Ends With Us Movie, LLC ("<u>It Ends, LLC</u>") as mandated in her Day/Weekly Player Contract for Theatrical Motion Pictures ("<u>Acting Agreement</u>").

From that point forward, Baldoni has tried to manipulate, threaten, control and otherwise act inappropriately towards Ms. Ferrer. In fact, Baldoni's legal team has gone as far as citing a phony case, which Ms. Ferrer's counsel discovered as an AI hallucination, to support a frivolous legal position. But it did not stop there; the filing of the instant Motion is yet another attempt to manipulate the press, to create havoc on a young, up-and-coming and talented actress and to violate this Court's policies on the publishing of non-party personally identifying information ("<u>PII</u>"). As set forth herein, there is no need for the Court to grant the press-garnering Motion, but instead, sanction Baldoni for engaging in such obvious sharp practice.

The primary reason to deny the Motion is that it fails to meet the applicable legal standard for the relief Baldoni seeks. Baldoni prematurely brought the Motion without conducting the diligence necessary to support a motion for leave to serve a discovery subpoena on Ms. Ferrer by means other than personal service. The Motion discloses no efforts made by Baldoni to determine Ms. Ferrer's actual residential or business address, nor does it offer a scintilla of evidence to

1

demonstrate that Ms. Ferrer has, in any way, attempted to avoid personal service of Baldoni's July 3, 2025 document subpoena ("Baldoni Subpoena"). To the contrary, by responding to the Lively Subpoena, Ms. Ferrer has already proven that when faced with a valid subpoena in this matter, she **will** comply with her obligations. There is no proper foundation to support the Motion, and Baldoni's true motivations will be revealed herein.

Unfortunately, the Motion is just the latest in a broader pattern of conduct by Baldoni to bully Ms. Ferrer. Earlier, Baldoni tried to leverage compliance with contractual indemnity obligations owed to Ms. Ferrer in an effort to take "control" of Ms. Ferrer's response to the Lively Subpoena. Baldoni then tried to leverage compliance with those same indemnity obligations as a *quid pro quo* for Ms. Ferrer to instruct her attorney to accept service of the Baldoni Subpoena on her behalf. Stated another way, Baldoni refused to honor contractual obligations unless Ms. Ferrer agreed to certain demands. Ms. Ferrer rightfully refused to tie her indemnity rights to any other issue in Baldoni's dispute with Lively. While Ms. Ferrer will faithfully comply with her legal obligations under any subpoena, summons or court order, she obviously will not be intimidated or extorted by any party to otherwise participate in the proceedings.

Finally, though the Motion does not directly raise the substance of the Baldoni Subpoena, the Court should consider it when determining whether to give Baldoni special treatment for the manner in which it is served. Even the most cursory review of the Baldoni Subpoena demonstrates its harassing nature. For example, it demands the production of "All Documents produced in connection with any subpoena in the Action."[1] There is no rational reason to demand that Ms. Ferrer, who is not a party to this action, re-produce materials that have already been produced by her or others in the litigation.

---

[1] *See* Dkt. No. 618-1, at p. 9.

For all of these reasons, which are discussed at length below, Ms. Ferrer respectfully asks the Court to deny the Motion in its entirety and impose appropriate sanctions against Baldoni.

## II
## BACKGROUND

Isabela Ferrer is a talented actress who, a few years ago, broke into feature films. One of her first film roles was in "It Ends With Us" ("Film"). Although her role in the Film was important, she only spent four days on set and was paid a small sum for her work. She has little to do with the operative facts and events of this case, but that has not stopped her from being pulled into the dispute by Baldoni in a number of different ways.

### A.    BALDONI MADE MINIMAL REFERENCE TO MS. FERRER IN THE ORIGINAL COMPLAINT BALDONI FILED AGAINST LIVELY.

The 179-page complaint Baldoni filed against Lively makes four direct references to Ms. Ferrer and includes screenshots of a few text messages Ms. Ferrer sent. [Dkt. No. 1, Case No. 1:25-cv-00449, pp. 92-94]. Not surprisingly, some of the text messages Ms. Ferrer sent Baldoni were very positive and included the types of comments one would expect from a young actress to make to the director and producer of her first feature film.

Baldoni used these texts to craft the narrative that after Ms. "Ferrer spent substantial time with Lively during film promotions," Ms. Ferrer "felt compelled to shun Baldoni in repudiation of her warm words." [*See id.*, p. 93, at ¶160]. Baldoni's complaint made no other allegations that directly reference Ms. Ferrer. Baldoni's lawyer-crafted narrative is far from reality or the true facts, but nonetheless, it created a situation where even those minimal allegations were enough to drag Ms. Ferrer into this litigation. Stated more bluntly, Baldoni appropriated Ms. Ferrer's narrative without her permission simply to create a self-serving image for the public and the press. Ironically, the allegations against Baldoni are those that mimic a harasser, and his recent actions surely support that view.

3

**B.    MS. FERRER BECAME INVOLVED IN THE LITIGATION BY WAY OF THE LIVELY SUBPOENA.**

On February 25, 2025, Lively issued the Lively Subpoena to Ms. Ferrer. [Declaration of Sanford Michelman ("Michelman Decl."), Ex. 1]. Mr. Ferrer tendered this matter to It Ends, LLC for indemnity. [Michelman Decl., Ex. 2]. As explained below, It Ends, LLC has not honored its obligations. Consequently, Ms. Ferrer sought reasonable extensions of time from Lively to respond to the Lively Subpoena until the indemnity issue was resolved.

**C.    BALDONI DEMANDED THAT MS. FERRER RELINQUISH CONTROL OF HER RESPONSE TO THE LIVELY SUBPOENA TO WAYFERER.**

Shortly after Ms. Ferrer received the Lively Subpoena, she sent notice to It Ends, LLC pursuant to her Acting Agreement, to demand that It Ends, LLC indemnify her in connection with her response to the Lively Subpoena. [Michelman Decl., Ex. 2]. The Acting Agreement includes an express provision requiring It Ends, LLC to "keep [Ms. Ferrer] fully and effectually indemnified from and against any and all . . . proceedings, costs . . . and expenses . . . incurred by [Ms. Ferrer] arising . . . in connection with the development, production, or exploitation of the [Film]." [Michelman Decl., ¶ 3].

In a response letter from counsel for It Ends, LLC and Wayferer Studios, LLC dated February 28, 2025 ("February 28 Letter"), It Ends, LLC conditionally agreed to indemnify Ms. Ferrer, as required by the Acting Agreement. [Michelman Decl., Ex. 3]. The condition, however, was a serious one. The February 28 Letter demanded that Ms. Ferrer confirm that she will "***surrender control*** [of her response] to Wayferer".[2] [*See id.* (emphasis added)]. Meaning, the

---

[2]  The full statement from Baldoni's counsel, Theresa Troupson, reads as follows:

"Please confirm that your letter constitutes notice of a pending claim or claims (specifically, Ms. Ferrer's response to the subpoena mentioned in your letter and the costs and expenses, including reasonable attorney's fees, that Ms. Ferrer is incurring and will incur in connection therewith); and that, by your letter, Ms.

Baldoni team sought to respond for Ms. Ferrer however they wanted, not actually allowing Ms. Ferrer to provide the documents that reveal the true facts.

Ms. Ferrer was not willing to turn over control of her response to the Lively Subpoena to Baldoni, or anyone else for that matter, which led to a protracted dispute over It Ends, LLC's indemnity obligations. Aspects of that dispute help explain Ms. Ferrer's frustration with her dealings with Baldoni and his counsel, as well as the distrust those dealings have fostered.

First, as It Ends, LLC fought over its claimed right to control Ms. Ferrer's response to the Lively Subpoena, or at a minimum unilaterally select her counsel, It Ends, LLC's attorney relied on non-existent case citations to support the argument that Baldoni was legally entitled to control or select counsel for Ms. Ferrer for purposes of her response. [Michelman Decl., ¶ 6]. Ms. Ferrer's counsel on numerous occasions (*at least seven times*) requested copies of the referenced authority, which appeared to be AI-hallucinated citations and was called out for being fake, but It Ends, LLC's attorney refused to provide the "case" or prove the citation was not an AI hallucination. [*See id.*]. It Ends, LLC's use of a fake case citation only underscored the impropriety of the position it was attempting to defend.

Second, It Ends, LLC's conduct in negotiating the terms of the indemnity greatly delayed the process, and any related indemnification to Ms. Ferrer, in a transparent attempt to put financial pressure on Ms. Ferrer as her legal costs mounted. [Michelman Decl., ¶¶ 7-12]. Those delays continued even after the parties entered into a written contract in late May 2025 ("Submission Agreement") which defined a process that would allow a neutral, retired judge to review Ms. Ferrer's attorney invoices to determine whether the services and fees billed are subject to

---

Ferrer demands that Wayfarer undertake the defense thereof and offers to surrender control thereof to Wayfarer".
[Michelman Decl., Ex. 3].

indemnification under the Acting Agreement. [*See id.*].

In fact, it was during the time period when Ms. Ferrer was pushing It Ends, LLC to engage the agreed-upon JAMS neutral that Baldoni reached out to Ms. Ferrer's attorney about accepting service of the Baldoni Subpoena. Although the Motion discusses the initial part of that outreach, it omits the salient facts that followed in violation of the well-settled obligation of candor to a tribunal.

### D.    BALDONI MADE ACCEPTING SERVICE OF THE BALDONI SUBPOENA A QUID PRO QUO TO MOVE FORWARD WITH THE PROCESS FOR HANDLING CONTRACTUAL INDEMNIFICATION OBLIGATIONS OWED TO MS. FERRER.

Baloni's attorney, Jason Sunshine, sent an email to Sanford Michelman, Ms. Ferrer's counsel in the indemnity dispute, late in the day on July 3, 2025 and just before the long holiday weekend. [Dkt. No. 618-2]. That email asked Mr. Michelman to voluntarily accept service of the Baldoni Subpoena on Ms. Ferrer's behalf. [*See id.*]. Not long after, Mitra Ahouraian, who is representing It Ends, LLC in its indemnity dispute with Ms. Ferrer, separately sent Mr. Michelman an email demanding that he confirm he will accept service of the Baldoni Subpoena on Ms. Ferrer's behalf. [Michelman Decl., ¶ 10 and Ex. 4]. The demand to accept service of the Baldoni Subpoena came along with other demands to "clarify" or alter previously agreed-upon terms of the parties' Submission Agreement and at a time when the parties were working with JAMS to engage the agreed-upon neutral. [Michelman Decl., Ex. 4]. Stated another way, Ms. Ferrer had no idea that Baldoni was attempting to serve her with the subpoena, but only that he was trying to trade indemnity for acceptance of a subpoena.

It Ends, LLC did not, and would not, send Ms. Ferrer an executed copy of the engagement contract needed to engage the JAMS neutral until Ms. Ferrer responded to Ms. Ahouraian's demands. When Ms. Ferrer's counsel unilaterally submitted a partially signed copy of the JAMS engagement contract to JAMS, Ms. Ahouraian almost immediately sent back an email stating,

"Will you accept service of process on behalf of your client?" referring to the Baldoni Subpoena. [Michelman Decl., ¶ 11 and Ex. 5]. In this way, It Ends, LLC indicated that if Ms. Ferrer wanted to move the indemnity dispute resolution process forward, her counsel would need to accept service of the Baldoni Subpoena on her behalf. Ms. Ferrer refused to bend to the *quid pro quo* service demand.

Baldoni filed his Motion on August 12, 2025. [Dkt. No. 616]. ***Only after filing the Motion did It Ends, LLC finally return a countersigned copy of the JAMS engagement contract.*** [Michelman Decl., ¶ 12]. The coordinated timing of these two events highlights the *quid pro quo* nature of Baldoni's earlier demand regarding acceptance of service and Baldoni's use of the media coverage garnered by filing the Motion to pressure Ms. Ferrer.

### E.    BALDONI'S MOTION LED TO NEGATIVE PUBLICITY FOR MS. FERRER.

As with many filings in this case, the Motion generated public interest. Ms. Ferrer has felt the effects of the public comments about the Motion. For example, an *Us Weekly* article about Baldoni's Motion wrongly asserts that "Baldoni explained that Ferrer's lawyer failed to respond to the subpoena," making it seem as though Ms. Ferrer disobeyed a validly served subpoena, even though she has not and that narrative is utterly false. [Michelman Decl., Ex. 6].

Sadly, social media has been harsher and harassing, due in part to the fact that the Motion publicly discloses what Baldoni claims to be two residential addresses for Ms. Ferrer (implications that she has two residences are equally false). Using the residential addresses Baldoni identified in the Motion, some social media posters questioned why Ms. Ferrer, as a young actress, was living in a residence valued at more than $1 million. [Michelman Decl., ¶ 17]. Other posters accused Ms. Ferrer of dodging service and speculated Ms. Ferrer was doing so at the direction of Lively. [Michelman Decl., Exs. 7-9].

More dangerous are the direct messages Ms. Ferrer has received from social media users,

some of which have come with personal threats and hateful statements. [Michelman Decl., Ex. 7]. Also, the people living at the addresses Baldoni publicly identified in the Motion, who have nothing whatsoever to do with this litigation, are now subject to harassment because Baldoni openly and knowingly violated this Court's practice of sealing or redacting non-party PII.

### III
### ARGUMENT

Federal Rule of Civil Procedure 45 ("Rule 45") governs the use of subpoenas in civil lawsuits. Subdivision (b) of Rule 45 requires a party to serve a subpoena by "delivering a copy to the named person". That language in Rule 45 "has long been interpreted as requiring personal service" of a subpoena on the person to whom the subpoena is directed. *See Doe v. Princeton University*, 349 F.R.D. 92, 100 (D.N.J. 2025).

New York's district courts follow the general rule that a subpoena must be served by personal service. However, when a party can show that there are extenuating circumstances that prevent personal service, courts may allow that party to serve non-party subpoenas using alternative means. For example, where there is evidence that the person to whom the subpoena is directed is actively avoiding service, courts have allowed service by alternative means. *See Keep on Kicking Music, Inc. v. UMG Recordings, Inc.*, 2025 WL 1905090, *1 (S.D.N.Y. Jul. 10, 2025) (allowing alternative means of service where evidence proved subpoenaed person "is aware that the Universal Defendants are attempting to serve him with subpoenas, and may be intentionally evading service")].

Though there are ***some*** circumstances where service by alternative means will be allowed, New York's district courts have not interpreted Rule 45 to broadly allow service of non-party subpoenas by alternative means. Courts carefully examine the diligence with which the party has attempted to personally serve the subpoena on the person to whom it is directed before they will

8

grant a motion to serve subpoenas by alternative means.

Important to that analysis is whether the party has confirmed that the party to be subpoenaed witness actually resides or works at the address where service attempts are being made. For example, a court found the party conducted appropriate diligence where the process server confirmed the service address of the non-party to be served with non-party's wife. *See Tube City IMS, LLC v. Anza Capital Partners, LLC*, 2014 WL 6361746, *1 (S.D.N.Y. Nov.14, 2014). Similarly, appropriate diligence was undertaken where the party serving subpoena confirmed the witness lived at the residence and the occupant told process server that witness was on his way to the residence and "would be there in 5 minutes", though the party named in the subpoena never actually arrived. *See Keep on Kicking Music*, 2025 WL 1905090, at *1. However, when the party moving for alternative means had "provide[d] no information [to the court] that the home address at which service was attempted is [witness]'s last known home address", the court refused to authorize the party to use alternative means of service. *See Ahmed v. City of New York*, 2024 WL 2884039, *2 (S.D.N.Y. May 23, 2024).

Courts also examine the number of attempts a party made to personally serve the subpoena and will not allow alternative means of service until numerous personal service attempts have been made at an appropriate location. In *Sec. & Exch. Comm'n v. Pence*, the court found that fourteen attempts at five separate locations demonstrated the diligence needed to support a motion to service by alternative means. *See Pence,* 322 F.R.D. 450, 454-455 (S.D.N.Y. 2017). Similarly, a court found that nine attempts at personal service on a non-party who "appears to be aware of that [the party] seeks to depose her" demonstrated the requisite diligence. *See JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 1313259, *3 (S.D.N.Y. May 11, 2009). On the other hand, a court determined that a party who had made four attempts at the witness' last known business address

and one attempt at a supposed residence had not performed the diligence necessary to support a motion for service by alternative means. *See Ahmed v. City of New York*, 2024 WL 2884039, *2 (S.D.N.Y. May 23, 2024).

The circumstances presented here do not meet the standard for allowing Baldoni to serve Ms. Ferrer by alternate means.

**A.    THE MOTION IS BASELESS, BECAUSE BALDONI HAS NOT TAKEN ANY ACTION TO ACTUALLY LOCATE MS. FERRER, AND BALDONI DOES NOT HAVE A SHRED OF EVIDENCE TO SHOW THAT MS. FERRER IS EVADING SERVICE.**

The Motion focuses on Baldoni's attempts to effect personal service of the Baldoni Subpoena on Ms. Ferrer. Two of those attempts were made at an address Baldoni's process server confirmed was not Ms. Ferrer's. [Dkt. No. 618-4]. During those two attempts, Baldoni's process server spoke with the apartment's occupants, who confirmed that they did not know Ms. Ferrer. [*See id.*]. The process server also spoke with a number of people in the building, as well as the superintendent, all of whom indicated they did not know Ms. Ferrer. [*See id.*]. The other four attempts were made at an address where the process server found no indication that Ms. Ferrer resides and which, according to a neighbor, is at times occupied by a middle-aged woman. [Dkt. No. 618-5]. Ms. Ferrer does not live at that address. Nothing in the record demonstrates that Ms. Ferrer was actually aware of any of the attempts made to serve her at these two locations, nor did Baldoni's counsel even raise that personal service was being attempted on Ms. Ferrer, which they clearly could have done via email.

Perhaps more important than the facts Baldoni's counsel provides in the Motion's supporting declaration is the information that is absent from the submission. Baldoni never attempts to explain why these are appropriate addresses where Ms. Ferrer could be served, which is a factor courts heavily weigh when analyzing whether a party has acted with the requisite diligence. *See Ahmed*, 2024 WL 2884039, at *2 (denying motion where party "provide[d] no

information [to the court] that the home address at which service was attempted is [witness]'s last known home address").

Baldoni also fails to discuss the reasonable steps taken to try to locate a current residential or business address for Ms. Ferrer. Conspicuously absent from Baldoni's moving papers are facts to show any research was conducted to find an appropriate service address, despite having connections and resources in the entertainment industry to do so. Baldoni does not even claim to have reached out to Ms. Ferrer's talent agent, who is widely known to those in the industry. Baldoni apparently has not conducted a simple skip trace, which is the typical first step for service of process where the party trying to effect service may not have a current address for the person to be served. This simply is not a not a situation where Baldoni has demonstrated appropriate diligence or shown that Ms. Ferrer is so difficult to personally serve that the only viable alternative is for the Court to authorize alternative means. Worse yet, Baldoni fails to inform this Court that Ms. Ferrer is already complying with another subpoena in this matter.

Baldoni generally points to the fact that the Court has allowed parties to use alternative means to serve other subpoenas in this case as a reason for allowing alternative means here. However, the circumstances of the Court's recent order allowing service by alternative means were far different. There, the Court granted a motion by Lively to serve non-party Robb Sullivan by alternative means. [Dkt. No. 502]. The Court explained that Lively had verified that the address where attempts to serve were made was, in fact, Mr. Sullivan's residence. [*See id.* ("A neighbor informed the process server that Sullivan did reside at the address and should be reachable there")]. Service attempts were made at times when someone appeared to be home, providing an inference that Mr. Sullivan could be avoiding service or was at least aware that attempts to personally serve him were being made. [*See id.* (noting the process server "did not receive an answer, despite lights

11

and television being on in the residence")]. The Court then found that the numerous attempts to personally serve Mr. Sullivan *at his actual residence* at times when occupants appeared to be home demonstrated the necessary diligence to allow the Court to grant Lively's motion to proceed with alternative methods of service. [*See id.*].

Baldoni has not taken similar actions here, as Baldoni never took the time or made the effort to locate Ms. Ferrer's actual residential or business address. Unless and until Baldoni can demonstrate an appropriate level of diligence, Baldoni's Motion is premature and the request to serve Ms. Ferrer by alternative means should be denied. Of course, Baldoni had reasons to rush the filing of the Motion, as the Motion serves other important purposes, none of which are proper.

**B.    THE PURPOSE OF THE MOTION, AND THE UNDERLYING SUBPOENA, IS TO HARASS MS. FERRER AS PART OF A BROADER, COORDINATED CAMPAIGN AGAINST HER.**

Both the Motion and the related Baldoni Subpoena have underlying purposes that go well beyond pursuing legitimate discovery from a non-party. A subpoena that requires a non-party to produce "Documents produced in connection with any subpoena in the Action"[3] is not aimed at uncovering new evidence or information. Those documents are, by their very nature, materials the parties have readily available to them in the litigation.

Instead, the Motion and the Baldoni Subpoena are transparent efforts to exert pressure on Ms. Ferrer, both in this litigation and in connection with other pending disputes. Rushing to file the Motion before conducting the necessary diligence to support a proper request for service by alternative means allowed Baldoni to publicly disseminate addresses that could have been Ms. Ferrer's home. This sort of conduct from Baldoni is not new, and Baldoni has been improperly attempting to exert control over Ms. Ferrer ever since Ms. Ferrer received the Lively Subpoena. [Michelman Decl., Ex. 2].

---

[3] *See* Dkt. No. 618-1, at p. 9.

The Court has taken decisive action in the past in order to address Baldoni's misuse of court process for improper purposes. For example, in May 2025, the Court struck a letter that Baldoni publicly filed on the Court's docket when it found that the purpose of the letter was "to 'promote public scandal' by advancing inflammatory accusations". [Dkt. No. 220, p. 3]. More recently, on August 8, 2025, the Court struck Baldoni's filings when it found that they served no proper purpose and instead were filed "to invite public speculation and scandal". [Dkt. No. 582, p. 3]. The Court should take a similar approach to Baldoni's misconduct here when assessing whether to allow Baldoni to serve a subpoena on Ms. Ferrer using lesser, alternative means.

### 1. Baldoni Used the Motion to Publicly Disseminate Personally Identifying Information of Non-Parties.

The parties are obviously aware of the media's coverage of this litigation, and in some cases, have affirmatively sought that coverage out or tried to wield it for their own benefit. Ms. Ferrer understands that the Court has routinely taken reasonable steps to protect non-party PII in this action and that Baldoni previously moved to seal other non-party PII. In a very recent example, the Court sealed certain records to protect various types of PII, including phone numbers and email addresses, and instructed the parties to file other documents containing PII with redactions removing that personal information. [Dkt. No. 628 (granting multiple motions to seal)]. It cannot be coincidental that Baldoni did not attempt to protect the non-party PII contained in the Motion. Had it been anything but an intentional disclosure, Baldoni would have already taken steps to remedy the mistake by moving for limited sealing of the offending portions of the moving papers or requesting authorization to submit a redacted version of the papers.[4]

The Motion publicly discloses two residential addresses which, had they actually been the

---

[4]  The Court can correct this by imposing a limited sealing order consistent with the manner in which it has handled other submissions that contain non-party PII, particularly if Baldoni argues that Ms. Ferrer can actually be located at either address.

current address of Ms. Ferrer's home, could have led to personal harassment or something worse. The potential danger to Ms. Ferrer was perhaps best summarized by a member of the public who commented that "[t]here are a lot of crazy people out there that could harm someone. There's no need for it to be public". [Michelman Decl., Ex. 8]. Thankfully, the addresses Baldoni publicly disclosed in the Motion are ***not*** Ms. Ferrer's.

Other social media posters amplified the narrative that Baldoni has tried to advance about Ms. Ferrer from the outset of this lawsuit. People accused Ms. Ferrer of dodging service and speculated that she was doing so at the direction of Lively. [Michelman Decl., Exs. 7-9]. This follows the allegations that Baldoni made in his original complaint that Ms. Ferrer takes her instruction from Ms. Lively. [Dkt. No. 1, Case No. 1:25-cv-00449, pp. 92-94]. For Baldoni, the simple act of filing the Motion made it a success, regardless of whether the Court ultimately grants it.

In addition to the two residential addresses, Baldoni's submission includes other PII attributable to non-parties. Attachments to Motion's supporting declaration disclose at least one personal phone number and two vehicle license plates. [Dkt. Nos. 618-4 and 618-5]. Again, thankfully, this PII is not for Ms. Ferrer, but Baldoni's disclosures of non-party were wholly unnecessary and reckless in a matter with the widespread media coverage this case garners.

Baldoni's inappropriate conduct, here the use of the Motion to disclose non-party PII to harass others, is not an outlier event when it comes to Ms. Ferrer.

   **2.  Baldoni Previously Tried to Leverage Indemnity Obligations Owed to Ms. Ferrer to "Control" of Ms. Ferrer's Response to Other Discovery Directed to Her in This Litigation.**

The Motion tries to make much of the fact that one of Ms. Ferrer's attorneys did not agree to accept service of the Baldoni Subpoena. Ms. Ferrer's reluctance to authorize others to accept service on her behalf is well founded and stems from Baldoni's past discovery-related conduct in

14

this case. Ms. Ferrer has already had to resist Baldoni's inappropriate conduct in connection with her response to the Lively Subpoena. In that case, Baldoni tried to leverage contractual obligations It Ends, LLC has to Ms. Ferrer to compel Ms. Ferrer to "surrender control [of her response] to Wayfarer". [Michelman Decl., Ex. 2]. Baldoni's demand that Ms. Ferrer cede control of her subpoena response was truly an egregiously improper demand. And though it does not rise to the same level of severity as attempts to control the substance of a non-party's discovery response, Baldoni also tried to those leverage those same contractual obligations as a *quid pro quo* for Ms. Ferrer instructing one of her attorneys to accept service of the Baldoni Subpoena on her behalf.

Against this factual backdrop, allowing Baldoni to use lesser, alternative means to serve Ms. Ferrer with the Baldoni Subpoena effectively punishes Ms. Ferrer for refusing to bend to Baldoni's intimidation and may only serve to encourage more inappropriate behavior.

### 3. Baldoni's Subpoena Largely Covers Materials that Lively's Subpoena Covered, Highlighting the Harassing Nature of Baldoni's Discovery Conduct.

The Motion provides the Court with a copy of the subpoena that Baldoni wishes to serve on Ms. Ferrer. A review of the Baldoni Subpoena demonstrates that Baldoni's aim is not to gather evidence for use at trial. The best evidence of that is "Request for Production No. 5", which instructs Ms. Ferrer to turn over "Documents produced in connection with any subpoena in the Action". [Dkt. No. 618-1, p. 9]. The category is, by its very nature, cumulative and duplicative of past document productions made in the litigation.

The Baldoni Subpoena's other categories substantially overlap with the categories of the Lively Subpoena. Those overlapping categories include: (a) Ms. Ferrer's communications with Lively, Baldoni and other parties to this litigation; (b) harassment or discrimination that took place during production of the Film; (c) complaints or grievances about various people connected to the Film, and in particular, Justin Baldoni and Jamey Heath; and (d) communications about the

"intimate" scenes from the Film. [Michelman Decl., Ex. 1 (listing the Lively Subpoena's requests for production); *see also* Dkt. No. 618-1, p. 9 (listing the Baldoni Subpoena's requests for production)]. Baldoni made no effort to tailor the subpoena towards the production of new or different materials, demonstrating that the real aim of the Baldoni Subpoena, as well as the pending Motion, is to harass Ms. Ferrer.

**C.    BALDONI'S CONDUCT WARRANTS SANCTIONS PURSUANT TO RULE 45, SUBDIVISION D.**

Rule 45 provides the Court with the authority to protect non-parties from misuse of the subpoena process. More specifically, Rule 45(d)(1) allows the Court to monetarily sanction a party "responsible for issuing and serving a subpoena" where the party fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena". This portion of Rule 45 "was intended primarily to protect a non-party witness as a result of a misuse of the subpoena" process. *See Saint-Jean v. Emigrant Mortgage Co.*, 2015 WL 13735434, *3 (E.D.N.Y. Oct. 7, 2015) (sanctioning party for pursuing overbroad subpoena).

On its face, Rule 45(d)(1) allows the Court to impose sanctions in connection with a party's action of "serving a subpoena" where the party's conduct results in undue burden or expense. Baldoni has committed sanctionable conduct here. The Motion was filed for improper purposes and was designed to harass Ms. Ferrer, as discussed in Sections III(B)(1)-(2) of this opposition brief. *See Electro-Mechanical Products, Inc. v. Alan-Lupton Assoc., Inc.*, 2025 WL 51205, *12 (D. Col. Jan. 8, 2025) (recognizing that "bad faith" conduct that causes undue burden or expense is sanctionable under Rule 45(d)(1)). The obvious undue burden and expense to Ms. Ferrer stems from the obvious need for Ms. Ferrer to file this opposition brief in order to challenge Baldoni's improper conduct.

Rule 45(d)(1) also allows the Court to impose sanctions if the subpoena itself improperly will result in undue burden or expense to the party being subpoenaed. Subpoenas that are "not

reasonably tailored to produce new information relevant" to the case fall squarely within the conduct prohibited by Rule 45(d)(1). *See Saint-Jean v. Emigrant Mortgage*, 2015 WL 13735434, at *4 (imposing sanctions for overbroad, and thus unduly burdensome, subpoena). For the reasons discussed in Section III(B)(3) of this opposition brief, the Baldoni Subpoena is facially overbroad. It purports to command the production of documents that were previously produced in response to earlier subpoenas, and it significantly overlaps with other subpoenas to which Ms. Ferrer has already been compelled to respond. The Baldoni Subpoena is precisely the type of subpoena that will cause undue burden and expense to Ms. Ferrer.

The measure of sanctions prescribed by Rule 45(d)(1) includes the attorneys' fees and expenses incurred in challenging the sanctionable conduct. Importantly, where a court determines that "a challenged subpoena should not have been issued, ***everything*** done in response to it constitutes an 'undue burden or expense within the meaning of' " Rule 45 (d)(1). *See Saint-Jean v. Emigrant Mortgage*, 2015 WL 13735434, at *5 (emphasis added"). Should the Court conclude that an award of fees and costs is appropriate, Ms. Ferrer respectfully requests that the Court set a briefing schedule for the calculation of that award.

**IV**
**<u>CONCLUSION</u>**

Baldoni has not met the threshold for seeking to serve Ms. Ferrer by means other than personal service, because Baldoni cannot show the requisite diligence to support such a request. Rather, Baldoni filed the Motion for improper purposes and with the aim of harassing Ms. Ferrer. Ms. Ferrer respectfully asks the Court to deny Baldoni's Motion and take appropriate action to protect the non-party PII that Baldoni so recklessly disclosed publicly through his filing. Ms. Ferrer also asks the Court to consider appropriate sanctions against Baldoni for his bad faith tactics.

Dated: New York, New York
       August 17, 2025                          Respectfully submitted,


                                              */s/ Jared B. Foley*
                                              _____
                                              Jared B. Foley, Esq.
                                              MICHELMAN & ROBINSON LLP
                                              605 Third Ave, 30th Floor
                                              New York, NY 10158
                                              (212) 730-7700
                                              Email: jfoley@mrllp.com

                                              *Specially Appearing for Non-Party*
                                              *Isabela Ferrer*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that the foregoing memorandum complies with the word limit in Local

Civil Rule 6.3, as it contains 5,630 words, excluding the parts exempted by the Local Rules.

Dated: New York, New York
        August 17, 2025

                                    /s/  *Jared B. Foley*
                                    _____
                                    Jared B. Foley, Esq.