UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>    Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>    Defendants. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BLAKE LIVELY, et al.,<br><br>    Defendants. | No. 25-cv-449 (LJL) (member case) |

**MEMORANDUM OF LAW IN SUPPORT OF BLAKE LIVELY'S
MOTION TO COMPEL DISCOVERY FROM JED WALLACE AND STREET
RELATIONS, INC.**

Esra A. Hudson (admitted pro hac vice)
Stephanie A. Roeser (admitted pro hac vice)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904

anathan@willkie.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (admitted *pro hac vice*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

*Attorneys for Blake Lively*

## TABLE OF CONTENTS

Page

Page

INTRODUCTION ..................................................................................................................1
BACKGROUND ....................................................................................................................2
      A.    The Wallace Defendants Execute The Retaliation Campaign Against Ms. Lively.............................................................................................2
      B.    Ms. Lively Issues Interrogatories and RFPs, In Response To the Wallace Defendants Serve Deficient Responses and Productions. .............4
ARGUMENT ..........................................................................................................................6
    I.    THE COURT SHOULD COMPEL THE WALLACE DEFENDANTS TO SUPPLEMENT THEIR RESPONSES TO INTERROGATORIES 13 AND 14. ..................................................................................................................6
    II.    THE COURT SHOULD COMPEL THE WALLACE DEFENDANTS TO REMEDY THEIR DEFICIENT DOCUMENT PRODUCTIONS. ........................9
      A.    The Court Should Compel the Wallace Defendants to Produce Materials from Signal. ................................................................................9
      B.    The Court Should Compel the Wallace Defendants to Produce Materials After December 20, 2024............................................................12
      C.    The Court Should Compel the Wallace Defendants to Produce Documents in Response to RFPs 10 and 11, as Modified. ........................13
CONCLUSION.....................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
   2011 WL 1642381 (S.D.N.Y. Apr. 26, 2011)..........................................................................................12

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*,
   282 F.R.D. 346 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21,
   2012) ..................................................................................................................................................11

*Sekisui Am. Corp. v. Hart*,
   945 F. Supp. 2d 494 (S.D.N.Y. 2013)..................................................................................................11

*Serin v. N. Leasing Sys., Inc.*,
   2010 WL 6501659 (S.D.N.Y. Apr. 16, 2010)........................................................................................12

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394 (S.D.N.Y. 2015), *on reconsideration in part*, 2015 WL
   3739276 (S.D.N.Y. June 15, 2015).......................................................................................................11

Pursuant to the Court's Amended Case Management and Scheduling Order, dated July 15, 2025 (ECF No. 425), Plaintiff Blake Lively respectfully moves to compel discovery against Defendants Jed Wallace ("Wallace") and Street Relations, Inc. ("Street") (together, the "Wallace Defendants"), as described further below.

## INTRODUCTION

Ms. Lively brings this Motion to remedy substantial deficiencies in the Wallace Defendants' interrogatory responses and document productions. The Wallace Defendants have asserted that their discovery is largely complete but have produced only 37 documents, taking the position that they did not engage in any "smear" campaign and therefore have nothing more to produce. They offer no explanation for the numerous texts and emails that reference work they are doing behind the scenes. They offer no explanation for the numerous texts and emails that reference work they are doing behind the scenes, including ███████████████████ ███████████████████████████, and executing "social and digital mitigation and remediation" "all without fingerprints." This is made all the more problematic because the Wallace Defendants have: (1) failed to produce a document from Signal, ***an ephemeral messaging platform that the Wallace Defendants have admitted they use***, even though Signal communications appear in third-parties' productions, (raising the substantial likelihood that the lack of responsive documents may be due to using disappearing messages to communicate, rather than the explanation that the Wallace Defendants offer that they simply did not do the things their communications suggest they did) and, (2) in apparent coordination with the Wayfarer Defendants, have unilaterally limited the responsive time period to end as of December 20, 2024, thereby failing to produce a single post-December document, despite this Court previously acknowledging the ongoing nature of Ms. Lively's allegations.

1

The Wallace Defendants also have refused to respond to interrogatories regarding their client base—despite this Court's denial of their prior motion for a protective order that makes clear this information is discoverable, ECF No. 390—and regarding the ▓▓▓▓ with whom they collaborated to perform their work with the Wayfarer Defendants and their counsel.

Planning and executing an "untraceable" campaign is one thing, but making evidence "untraceable" in the face of anticipated litigation is spoliation, and refusing to produce information that the Court has already ruled is discoverable is sanctionable. Whatever the explanation, Ms. Lively is entitled to relief and, to that end, Ms. Lively hereby respectfully requests that the Court issue an order compelling the Wallace Defendants to: (1) produce any ordered supplemental production and discovery responses along the same timeline ordered as to the Wayfarer Defendants, identifying by Bates Numbers which documents were produced responsive to each request, and (2) if documents are not produced, provide an explanation of why, including whether such documents never existed, were destroyed, deleted, or not preserved, and if any documents are known to have existed but are no longer in the party's possession, custody, or control, then the Wallace Defendants should identify the document and explain what happened to them, including, but not limited to, whether any deletion was due to ephemeral messaging or other automatic deletion, as may be the case here.

## BACKGROUND

**A.    The Wallace Defendants Execute The Retaliation Campaign Against Ms. Lively.**

The Wallace Defendants are the covert operatives that carried out the "social manipulation" campaign launched by the Wayfarer Defendants in retaliation for Ms. Lively for speaking out about Mr. Baldoni and Mr. Heath's misconduct on the set of *It Ends With Us*. Mr. Wallace is a

self-described "hired gun" who executes "untraceable" campaigns on social media platforms to shape public perception of his clients and their adversaries. ECF No. 520 ¶¶ 217–19.

The Wallace Defendants are alleged to have been a key part of the campaign to "bury" Ms. Lively and advance a false narrative by seeding and manipulating content on social media and internet chat forums like Reddit, TikTok, and Instagram. *Id.* ¶¶ 34, 223, 230; *see* ECF No. 380 at 1 (admitting "specialized crisis response coordination"). By August 8, 2024, Wayfarer and Baldoni had formally retained the Wallace Defendants to perform services for a minimum of three months at a monthly rate of $30,000 (the "Wayfarer Engagement"). Ex. 1.[1] The Wallace Defendants' services were designed to "change[] the overall narrative and helping keep it on track" including by "[u]tiliz[ing] CTR manipulation," "sway[ing] the algorithm," and "starting threads with theories"—all "without fingerprints"—to conceal Mr. Baldoni and Mr. Heath's misconduct and to avoid public fallout stemming from that misconduct becoming public. Ex. 2. The Wallace Defendants services focused on not only Wayfarer and Baldoni, but also on Ms. Lively. *See* Ex. 3 (referencing "Jed and his team's efforts to shift he narrative towards shining a spotlight on Blake and Ryan"). During the same time period, the Wayfarer Defendants decided to "[l]awyer up" and had their "lawyer is prepped and ready," clearly contemplating litigation. *See* ECF No. 533 n.9; ECF Nos. 554-20, 554-21. And no later than September 16, 2024, the Wallace Defendants were involved in communications apparently regarding engagement of outside counsel related to anticipated litigation. *See* ECF No. 556-26 at 50 (Wayfarer Privilege Log Entry No. 310). Ms. Lively alleges that the retaliatory campaign is ongoing, as this Court has recognized, and that

---

[1] Cites to "Ex." refer to the exhibits attached to the Declaration of Kristin E. Bender ("Bender Decl.") filed contemporaneously herewith.

further retaliatory actions were taken in direct response to, among other things, Ms. Lively submitting her CRD Complaint on December 20, 2024. ECF No. 520 ¶ 94–97; ECF No. 355.

> **B.  Ms. Lively Issues Interrogatories and RFPs And In Response The Wallace Defendants Serve Deficient Responses and Document Productions.**

On March 14, 2025, Ms. Lively served the Wallace Defendants with her first set of interrogatories ("Interrogatories"). Bender Decl. ¶ 3. On June 4, 2025, Ms. Lively served the Wallace Defendants with her first set of requests for production ("RFPs") and her second set of Interrogatories.[2] Exs. 4, 5. On July 3, 2025, the Wallace Defendants served their responses and objections to the RFPs, stating in response to all but RFPs 10, 14 18–22, 38–39 and 53 that they would "produce non-privileged documents in [the Wallace Defendants'] possession, custody or control, if any, dated between July 1, 2024 and December 20, 2024." Ex. 6. Alongside their responses and objections, the Wallace Defendants made a single document production that—in response to a collective 98 RFPs—consisted of only 37 documents totaling a mere 194 pages and did not include any documents responsive to more than 24 RFPs, in response to which they had explicitly agreed to search for and produce documents. Bender Decl. ¶ 4. The same day, the Wallace Defendants also produced their responses and objections to the second set of

---

[2] Ms. Lively served 45 Requests for Production to Street Relations and 53 Requests for Production to Mr. Wallace. Ex. 4. Ms. Lively served identical discovery requests as to Wallace and Street for the first 45 Requests for Production, with eight unique additional requests to Wallace. Ms. Lively served identical Interrogatories to Wallace and Street. For purposes of this Motion, and given slight variations in the order of numbering for the served requests, any references to any numbered discovery requests in this Motion refer to the numbering in the Requests for Production and Interrogatories to Wallace, although any request for relief is applicable as to the Wallace Defendants together.

4

Interrogatories, refusing to respond to Interrogatories Nos. 11 and 13, and problematically redefining (and answering implausibly) Interrogatory No. 14. Ex. 7.

On July 14, 2025, Ms. Lively served a deficiency letter on the Wallace Defendants regarding their responses and objections to the Interrogatories and demanding that the Wallace Defendants promptly supplement their responses. Ex. 8. On July 15, 2025, during a hearing with this Court, counsel for the Wallace Defendants represented that their document production was complete. Bender Decl. ¶ 6. On July 16, 2025, the Court granted the Wallace Defendants' motions to dismiss on personal jurisdiction grounds, but permitted Ms. Lively an opportunity to amend her complaint. ECF No. 426. Later that same day, counsel for the Wallace Defendants emailed Ms. Lively's counsel informing them that given the Court's ruling, the Wallace Defendants would "not be responding to [the deficiency] letter at this time." Ex. 9 at 3.[3]

On August 5, 2025, Ms. Lively served a deficiency letter regarding the Wallace Defendants' document productions. Ex. 10. Later that day, the Wallace Defendants' counsel and Ms. Lively's counsel conferred regarding the deficiencies in the Wallace Defendants' responses to the Interrogatories and document productions. Bender Decl. ¶ 7–11. Ms. Lively and the Wallace Defendants continued their conferral efforts on August 14, August 20, August 21, and August 22, but were unable to fully resolve their disputes. Bender Decl. ¶ 12–17.

---

[3] On July 28, 2025, the Wallace Defendants agreed that Ms. Lively's forthcoming filing of the Second Amended Complaint the parties would return to their pre-dismissal status quo as to the discovery requests, such that Ms. Lively would not be required to re-serve her RFPs or Interrogatories. *Id.* at 2. On July 30, 2025, Ms. Lively filed her Second Amended Complaint, thereby restoring the Wallace Defendants' status as parties to the litigation, as well as their obligations to respond to the RFPs and Interrogatories. *See* ECF No. 520.

**ARGUMENT**

**I.    THE COURT SHOULD COMPEL THE WALLACE DEFENDANTS TO SUPPLEMENT THEIR RESPONSES TO INTERROGATORIES 13 AND 14.**

The Wallace Defendants refused to respond, or to provide a credible response, to two Interrogatories that plainly seek nonprivileged information relevant to Ms. Lively's claims and are proportional to the needs to this case:

> **Interrogatory No. 13:** Identify all employees, associates, or subcontractors who have performed services for You since May 1, 2020 including to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts.
>
> **Interrogatory No. 14**: Identify all employees, associates, or subcontractors who have performed services for You since May 1, 2020 including to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts.

Ex. 7.

With respect to Interrogatory No. 13, the Wallace Defendants refused to respond on the grounds that, *inter alia*, Interrogatory No. 13 ███████████████████████████████████ and ███████████████ ███████████████████████████████ *See Id.* at 8. But the Court has already unambiguously rejected this very argument when the Wallace Defendants moved for a protective order from the Court "preventing Street Relations from having to disclose any name in its client base beyond those identified as parties in Lively's complaint." ECF Nos. 380, 390 at 3. This Court held that "[t]he identities of Street Relations' clients are relevant because they reasonably could lead to information bearing on the issues in this case," explaining that if "Street Relations has participated in digital campaigns for other clients to harm the reputation of third parties, it is more likely to have done so here, as Lively alleges." ECF No. 390 at 2 (citing 1 McCormick on Evid. § 198 (9th ed. 2025) ("Evidence concerning other contracts or business

6

dealings may be relevant to prove . . . a business habit or custom.")). As the Court has made clear, Ms. Lively is "entitled to test for herself whether the digital footprints of other clients have similarities to the work Street is alleged to have done here," including in connection with Interrogatory No. 13. *Id.*

As to privacy considerations, the fact that the information sought affects "privacy rights" of others does not justify a refusal to disclose such information. *Id.* at 3. Even if the Wallace Defendants had standing to invoke the privacy interests of other parties, which they do not, "courts commonly require parties to produce confidential documents; the confidentiality of those documents is protected not by denying access to them, but by entering a protective order to cover them." *Id.*(quoting *Doe v. Benjamin Zaremski M.D., P.C.*, 2022 WL 2966041, at *10 (S.D.N.Y. July 27, 2022)). The Court has already entered a protective order that does just that. *See* ECF No. 125.

As to Interrogatory No. 14, documents involving the Wallace Defendants repeatedly reference "platform-specific specialists" and a "team" working with them, including:

- On August 8, 2024, Wallace writes to Heath that "this is *our* wheelhouse and have it prioritized across *all platform-specific specialists working for me*." Ex. 11 (emphasis added);

- On August 8, 2024, Melissa Nathan introduces Heath to "Jed who will be *having his team assist on all social activity* based off our own conversations as well as their digital plan you are in receipt of." Ex. 13 (emphasis added);

- On August 8, 2024, Katie Case (who regularly communicated with Jed) responds that "Jed *and his team* are truly the best of the best!" Ex. 2 (emphasis added);

- On August 9, 2024, ███████████████████████████████████████ Ex. 12 (emphasis added);

- On October 1, 2024, ███████████████████████ Ex. 14 (emphasis added).

7

These communications, which include Wallace's own words regarding his "specialists," call into question the responses that Street and Wallace provided to Interrogatory No. 14. Namely, ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████. Ex. 7 at 8, 17. While counsel for the Wallace Defendants has explained the discrepancy as an odd turn of phrase, Bender Decl. ¶ 9, Ms. Lively is entitled to probe these allegations.

Doing so is all the more important given that the Wallace Defendants' objections to Interrogatory No. 14 suggest that this response is only pursuant to the way that they've "narrowed" it. Before responding the Interrogatory No. 14, the Wallace Defendants narrowed it ████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

The Wallace Parties' unilateral narrowing of the date range is improper. So, too, is the self-serving limitation seemingly designed to eliminate any obligation to identify "all employees, associates, or subcontractors who have performed services … including ***to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts***"—in other words, those who have performed services beyond monitoring. Interrogatory No. 14 (emphasis added). Ms. Lively has expressly alleged such conduct in her Amended Complaint (*e.g.*, ECF No. 520 ¶¶ 38, 73, 216, 218, 223, 245, 260, 274), and she therefore is entitled to discovery as to this information as originally requested in Interrogatory No. 14, rather than in subject to Wallace Defendants' re-formulation tailored to their denials. Accordingly, the Court should compel the Wallace Defendants' response to Interrogatory

No. 14 as originally defined, except pursuant to a narrowed date range of July 1, 2024 to the present.

## II. THE COURT SHOULD COMPEL THE WALLACE DEFENDANTS TO REMEDY THEIR DEFICIENT DOCUMENT PRODUCTIONS.

### A. The Court Should Compel the Wallace Defendants to Produce Materials from Signal.

The Wallace Defendants began working for the Wayfarer Defendants no later than August 7, 2024, Ex. 15, and continued (in some capacity) through at least February 23, 2025, Ex. 16. Over the course of their engagement, the Wallace Defendants collected a minimum of $90,000 from the Wayfarer Defendants in connection with their work. Ex. 17 Third-party productions confirm that the Wallace Defendants were actively engaged in the digital campaign, including communications with TAG in which they identified certain content to "boost" or "amplify." Exs. 18, 19. In light of the extensive and active role the Wallace Defendants had in effectuating the smear campaign against Ms. Lively, it strains credulity that the entire universe of documents and communications reflecting those efforts consists of a mere 37 documents.

During conferrals, counsel for the Wallace Defendants have explained that so few documents and communications exist (including none from Signal) because the Wallace Defendants regularly and automatically deleted all text and other messaging from their devices, an apparent acknowledgment of the Wallace Defendants' use of Signal. Bender Decl. ¶ 11. But this raises more questions than it answers.

There is no dispute that the Wallace Defendants communicated about topics relevant to this dispute on the ephemeral messaging platform Signal, and in response to Interrogatory No. 7, Street disclosed that it communicated via Signal with Melissa Nathan, and added that its "records indicate that Street was added to a Signal chat with Breanna Koslow, Katie Case, and Melissa Nathan." Ex. 7 at 15. Street Relations added that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████[4] *Id.* Despite acknowledging engaging in Signal messaging with Ms. Nathan and referring to their ██████ that reflect Signal communications with additional third parties, the Wallace Defendants have not produced such records or a single Signal communication. This is problematic because, while Signal includes ephemeral messaging capabilities that delete the content of text messages, the user can retain a record of a conversation occurring and calls made between individuals. Yet, none have been produced.[5]

Further, the Wallace Defendants' automated deletions, due to Signal, do not offer sufficient explanation for why Signal documents have not been produced after September 16, 2024—by which point the Wallace Defendants incontrovertibly anticipated litigation, as revealed by Wallace's participation in a conversation with the Wayfarer Defendants' current litigation counsel (with additional conversations regarding "litigation" taking place among the Wayfarer Defendants later that same day). *See* ECF No. 556-26 at 50.[6] Serious questions exist as to the explanation

---

[4] Street's response to Interrogatory No. 7 should be amended in light of documents produced by Ms. Koslow, in which Mr. Wallace appears on Signal chats *See, e.g.*, Ex. 16 (Signal chat in which Mr. Wallace states that "the forensic guys put it all in the reports").

[5] The Wallace Defendants' explanation as to automatic deletion, also does not explain how the Wallace Defendants retained a single text chain with Mr. Heath, Ex. 20, and yet produced no text messages with Ms. Nathan (although such communications occurred, Ex. 7 at 15). It also does not explain why despite approximately 20 emails with the Wayfarer Defendants from the narrow timeframe of August 5, 2024 to August 14, 2024 were substantive emails regarding the media narrative on Mr. Baldoni and Ms. Lively abruptly stop on August 14, 2024. *See* Ex. 21. The Wallace Parties should be compelled to confirm that no such substantive, non-Signal communications exist thereafter.

[6] The fact that the Wayfarer Defendants since have determined that the document reflecting the September 16, 2024 communication is not protected by the attorney client-privilege, ECF No. 611 at 13, does not undermine the conclusion that the Wallace and Wayfarer Defendants were aware of anticipated litigation as of that date.

regarding the absence of documents on Signal after this date. To be clear, to the extent the Wallace Defendants did not anticipate that they would *personally* be litigants in the litigation that was anticipated at this point, their position as consultants involved in those conversations clearly demonstrates, at the very least, that a subset of the Wayfarer Defendants should have ensured that the Wallace Defendants preserve their documents and communications on the subject. *See GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (party's failure to ensure preservation of evidence by consultant after litigation was anticipated "plainly constitutes negligence" and spoliation); *Sky2line Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 408, 410–11 (S.D.N.Y. 2015), *on reconsideration in part*, 2015 WL 3739276 (S.D.N.Y. June 15, 2015) (recognizing litigant's obligation to take affirmative steps to preserve evidence and noting defendant never contacted the contractor or consultant to ensure preservation of data); *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013) (plaintiff's failure to notify vendor of preservation obligation until six months later constituted gross negligence).[7]

The Court should compel the Wallace Defendants to produce all relevant and responsive Signal communications—including records that demonstrate a conversation took place, even if no substantive messages remain—and order them to alternatively show why they have not and are unable to do so, including by identifying whether responsive communications were deleted after the date by which litigation was anticipated.

---

[7] To the extent the Court concludes that Ms. Nathan, Ms. Abel, and TAG anticipated litigation in August 2024, that conclusion should equally apply to the Wallace Defendants, as they were well aware of Mr. Freedman and engaged by Wayfarer at this point. *See* Exs. 1, 3. At the very least, the Wallace Defendants anticipated litigation in no event later than December 20, 2024, when Ms. Lively served their counsel with a preservation letter. *See* ECF No. 17-1 at 3. Although the Wallace Defendants subsequently changed counsel, they were initially represented by Liner Freedman. *See* ECF No. 190-3.

**B.     The Court Should Compel the Wallace Defendants to Produce Materials After December 20, 2024.**

Ms. Lively's RFPs generally sought documents and communications from July 1, 2024 through the present.[8] Ex. 4 at 11, 35. The Wallace Defendants objected to this time frame and instead unilaterally limited their productions to documents dated between July 1, 2024 and December 20, 2024, in keeping with the approach of the Wayfarer Defendants. *See* Ex. 6. But the Court has repeatedly rejected this cut-off date in light of Ms. Lively's allegations that the retaliatory smear campaign conducted by the Defendants, including the Wallace Defendants, is ongoing. *See* ECF Nos. 355 at 4; ECF No. 382, at 25:24-25:9. The Court should therefore compel the Wallace Defendants to produce all responsive materials from December 21, 2024 through the present. *See Serin v. N. Leasing Sys., Inc.*, 2010 WL 6501659, at *2 (S.D.N.Y. Apr. 16, 2010) (compelling production of documents requested "to the present" due to allegation of "open-ended pattern of [] activity"); *see also Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 1642381, at *2 (S.D.N.Y. Apr. 26, 2011) (compelling production of documents where "defendants have improperly withheld all documents created after the commencement of this litigation"). To the extent that the Wallace Defendants intend to withhold materials from December 20, 2024 to the present on the basis of privilege, the Court should compel them to produce a privilege log accounting for such withholding (along with such withholding across the entire relevant time period).[9]

---

[8] Ms. Lively seeks documents post-dating December 2024 for all Wallace RFPs except RFPs 10–11, 18–22, 36–37, 40, and 53 (and the corresponding Street RFPs). Of these, Ms. Lively has agreed to February 18, 2025 as the end date range of RFPs 10–11, Bender Decl. ¶ 16, is not seeking to compel RFPs 18–22 or 53, and is not seeking an extended time frame beyond what was searched and/or produced as to RFPs 36–37, 40.

[9] For the avoidance of doubt, in keeping with the above, Ms. Lively will view the end date range order by this Court as to the Wayfarer Defendants to equally apply to the Wallace Defendants' RFPs. However, based on conversations among counsel as to how collection and searching was

12

## C. The Court Should Compel the Wallace Defendants to Produce Documents in Response to RFPs 10 and 11, as Modified.

Ms. Lively initially propounded the following RFPs to the Wallace Defendants:

**RFP 10:** All Documents and Communications between You, Bryan Freedman, Liner Freedman Taitelman + Cooley LLP, or anyone acting on their behalf from December 1, 2023 to the present concerning the nature or duration of Your relationship with Bryan Freedman or Liner Freedman Taitelman + Cooley LLP.

**RFP 11:** All Documents and Communications between You, any Wayfarer Defendant, Bryan Freedman, Liner Freedman Taitelman + Cooley LLP, or anyone acting on their behalf from December 1, 2023 to the present concerning business, engagements, or work performed by You for, or in connection with, any Wayfarer Defendant, Bryan Freedman, or Liner Freedman Taitelman + Cooley LLP.

Ex. 4 at 16–16, 39–40.

On August 22, 2025, counsel for Ms. Lively proposed that the Wallace Defendants respond to modified RFPs according to a revised date range of December 1, 2023 through February 18, 2025:

**RFP 10:** Documents, including formal or informal engagement agreements, sufficient to show when and in what capacity the Wallace Defendants worked with Bryan Freedman, Liner Freedman Taitelman + Cooley LLP, or anyone acting on their behalf, and in what capacity (e.g., the nature of the engagement and what any Wallace Defendant was retained to do).

**RFP 11:** All Documents and Communications between You, any Wayfarer Defendant, Bryan Freedman, Liner Freedman Taitelman + Cooley LLP, or anyone acting on their behalf from December 1, 2023 to the present concerning efforts to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narratives, or virality, as well as the use of bots or inauthentic accounts.

Bender Decl. ¶ 16. As modified, RFPs 10 and 11 are narrowly tailored to capture relevant information about the nature of the alleged work performed by the Wallace Defendants in this

---

conducted by counsel for the Wallace Defendants, and unlike in the case of Ms. Lively's motions to compel the Wayfarer Defendants, Ms. Lively is not moving to compel the Wallace Defendants to produce search parameters, including hit reports, in connection with their document collection and review. *See* ECF Nos. 555, 647 at 7–9. Finally, if the Court grants this request, Ms. Lively reserves the right to seek relief relating to the insufficiency of the forthcoming production and/or privilege log, which counsel has represented will be produced, along with another agreed-to production, by August 29, 2025. Bender Decl. ¶ 15.

13

case. *See* ECF No. 520 ¶¶ 224–293; ECF No. 390. As of the time of filing, counsel for the Wallace Defendants has not provided a position as to the modified RFPs 10 and 11. Bender Decl. ¶ 17.

## CONCLUSION

For the above reasons, Ms. Lively respectfully requests that her motion to compel with respect to the Wallace Defendants be granted in their entirety.

Dated: August 22, 2025               /s/ *Michael J. Gottlieb*

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender

1875 K Street NW

Washington, DC 20006

(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron Nathan
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips, LLP
7 Times Sq
New York, NY 10036
(212) 790-4500

mbruno@manatt.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (*pro hac vice*)
401 9th Street NW
Washington, DC 20004
(202) 240-2927
mgovernski@dirllp.com

*Attorneys for Plaintiff Blake Lively*