# EXHIBIT 8

**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

July 14, 2025

**VIA ELECTRONIC MAIL**

Charles L. Babcock
Carl C. Butzer
Joel R. Glover
Jackson Walker, LLP
2323 Ross Avenue
Suite 600
Dallas, TX 75201

Counsel:

On behalf of Blake Lively, we write to address deficiencies in Defendants Street Relations' and Jed Wallace's (together, "Wallace Parties") objections and answers ("Responses"), dated July 7, 2025, to Plaintiff's Second Set of Interrogatories ("Interrogatories"), dated June 4, 2025. Please review this letter and advise by **Wednesday, July 16, 2025,** whether the Wallace Parties will promptly supplement their Interrogatory Responses to Interrogatories 11, 13, and 14.[1]

### I. The Wallace Parties' Deficient Responses to Interrogatory 14

Interrogatory 14 asks the Wallace Parties to "[i]dentify all employees, associates, or subcontractors who have performed services for You since May 1, 2020 including to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts." The Wallace Parties objected to Interrogatory 14 and opted instead to respond to it "as narrowed to include 'all employees, associates, or subcontractors who have performed services for You from July 1, 2024 to December 20, 2024

---

[1] **Interrogatory No. 11**: "Identify any financial accounts used to make or receive Payments in connection with services performed for or on behalf of any Wayfarer Defendant, Bryan Freedman, Liner Freedman Taitelman + Cooley LLP, or anyone acting on their behalf from July 2, 2024 to the present."
**Interrogatory No. 13**: "Identify all former or current clients for whom You have performed services similar to those provided to or on behalf of any Wayfarer Defendant, Bryan Freedman, Liner Freedman Taitelman + Cooley LLP, or anyone acting on their behalf, including without limitation efforts to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts."
**Interrogatory No. 14**: "Identify all employees, associates, or subcontractors who have performed services for You since May 1, 2020, including to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts."

relating to the social/digital monitoring project beginning August 9, 2024 regarding It Ends With Us and its two stars—Lively and Baldoni." As discussed further below, the Wallace Parties' unilateral narrowing of this Interrogatory is improper, as is the Wallace Parties' Response to Interrogatory No. 14 even under the narrowed Interrogatory.

### A. Improper Definitional Narrowing

The revisions appear to (i) narrow the date range, (ii) limit the Response only to those who worked on the *It Ends With Us* "project," and (iii) limit the Response to a "monitoring project" within that narrowed window of time. Each of these limitations is improper.

First, the Amended Complaint alleges "that there's a continuing violation." June 24, 2025 Hr'g Tr. ("Tr.") 24:25–25:3; *see* ECF No. 355 at 3-4 (noting Ms. Lively's allegations involve "the campaign against Lively after December 21, 2024"). It is for this reason that this Court has expressly recognized on multiple occasions that the relevant time period for discovery extends into March 2025. Tr. 24:18–25:3 (The Court stating it had "previously ruled that documents are responsive going beyond December" and Ms. Lively "[is] entitled to probe th[e] representation" that conduct was contained to a period ending in December 2024). We are amenable to shortening the start date range to December 1, 2022, which is designed to capture when Mr. Wallace and Street Relations first communicated about the possibility of working or providing services in connection with Ms. Lively, Mr. Baldoni, Mr. Freedman, the film *It Ends With Us*, or related. Limiting the Wallace Parties' Responses to July 1, 2024, if that date is after the aforementioned start of the Wallace Parties' conduct, would improperly deprive Ms. Lively of necessary information relevant to her claims and the Wayfarer Parties' defenses.[2]

Second, as the Court recently stated, "If Street Relations has participated in digital campaigns for other clients to harm the reputation of third parties, it is more likely to have done so here." ECF No. 390 at 2 (July 7, 2025 Order Denying Street Request for Protective Order). Like Street Relations' prior clients, the identity of its current and former employees, associates, or subcontractors are "relevant because they could lead to information bearing on the issues in this case." *Id.* Accordingly, Ms. Lively is entitled to pursue discovery as to the Wallace Parties' current and former employees, associates, or subcontractors who may have important, relevant, information relating to services the Wallace Parties have provided to clients on other projects. *See* ECF No. 390 at 2 ("Relevancy under Rule 26 is to be 'construed broadly to encompass any matter that bears on , or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Ms. Lively is willing to narrow this to start as of December 1, 2022, as noted above.

---

[2] An arbitrary limitation to July 1, 2024, without reference to when communications first began would be inappropriate given that Ms. Lively understands that Mr. Wallace was retained by and has previously worked with Defendants Melissa Nathan and The Agency Group ("TAG") on other matters. ECF No. 84 ¶¶ 221-22; ECF No. 37 ¶ 156 ("[The Agency Group] admits that Jed Wallace had worked on previous matters with Ms. Nathan, and was retained by TAG on behalf of Wayfarer and Mr. Baldoni.").

2

Third, as to the Wallace Parties' apparent limitation to a "monitoring project," that self-serving limitation appears designed to eliminate any obligation to identify "all employees, associates, or subcontractors who have performed services ... including *to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts*"—in other words, those who have performed services beyond monitoring. Interrogatory No. 14 (emphasis added). Ms. Lively has expressly alleged such conduct in her Amended Complaint (*e.g.*, ECF No. 84 ¶¶ 38, 73, 216, 218, 223, 245, 260, 274), and she therefore is entitled to discovery as to this information as requested in Interrogatory No. 14 on this point, rather than in a narrowed, self-serving formulation tailored to the Wallace Parties' denials.

### B. Deficient Response

Moreover, the Wallace Parties' Responses to Interrogatory 14, even as improperly modified, are obviously deficient. Street Relations responded "Jed Wallace," and Wallace responded ███ ███ relating to the social/digital monitoring project beginning August 9, 2024 regarding the Film, Ms. Lively, and Mr. Baldoni. But this representation is belied by Street Relations' own document production:

- On August 8, 2024, Wallace writes to Heath that ███ (STREET 1.000009) (emphasis added);

- On August 9, 2024, Wallace writes that ███ (STREET 1.000023) (emphasis added);

- On August 8, 2024, Melissa Nathan ███ (STREET 1.000006) (emphasis added);

- On August 8, 2024, Katie Case responds ███ (STREET 1.000007) (emphasis added);

- On October 1, 2024, Melissa Nathan ███ (STREET 1.000086) (emphasis added).

Wallace, himself, states in two separate emails that ███ That concept is confirmed time and again by TAG employees referring ███ That the Wallace Parties would respond to Interrogatory 14 to suggest ███ is plainly false.

**Please promptly amend your Responses to Interrogatory 14 to respond to the Interrogatory as described above, which Responses must include** ███

3

**and any and all employees, associates, or subcontractors "working for" Wallace, as described in his Production**.

## II. The Wallace Parties' Deficient Responses to Interrogatories 11 and 13

The Wallace Parties refused to provide Responses to Interrogatory 11—which asks for the identity of "any financial accounts used to make or receive Payments in connection with services performed for or on behalf of any Wayfarer Defendant, Bryan Freedman, Liner Freedman Taitelman + Cooley LLP" from July 1, 2024 to the present[3]—as well as Interrogatory 13, which seeks a list of former or current clients for whom the Wallace Parties have performed similar services. The Wallace Parties' refusal to respond to these Interrogatories is improper, particularly in light of the Court's July 7 Order. ECF No. 390.

There can be no doubt that a response to Interrogatory 13 is required in light of the Court's July 7 Order concluding that the Wallace Parties cannot avoid "having to disclose any name in its client base beyond those identified as parties in Lively's complaint." ECF No. 390 at 1. As the Court held, that information "reasonably could lead to information bearing on the issues in this case," and "Lively is entitled to test for herself whether the digital footprints of other clients have similarities to the work Street Relations is alleged to have done here, and to do so at a level of granularity that will not be addressed by a 30(b)(6) representative's general testimony about the type of services provided." *Id.* at 2. **Please promptly amend your Responses to Interrogatory 13**.

The same logic underpinning the Court's July 7 Order applies with equal force to Interrogatory 11. The compensation the Wallace Parties received for their work is plainly relevant because it "reasonably could lead to information bearing on the issues in this case," ECF No. 390 at 2. As the Court noted in its July 7 Order, Rule 26 broadly permits discovery of material that has "any possibility" of leading to information bearing on the issues in a case. *Id.*; *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md.*, 122 F.R.D. 447, 449 (S.D.N.Y.1988). The "analysis of the relevance (or irrelevance) of the requested material must begin with an understanding of the claims asserted." *Eastman Kodak Co. v. Camarata,* 238 F.R.D. 372, 375 (W.D.N.Y. 2006). Ms. Lively alleges that the Wallace Parties were engaged "to design and implement" the "social combat plan" through a coordinated digital campaign, ECF No. 84 ¶ 216, and are thus liable for aiding and abetting harassment and retaliation and civil conspiracy. *See id.* ¶¶ 408-15, 434-39, 447-53, 479-82. Courts in the Second Circuit have consistently found that financial account information is relevant and discoverable when it aids a party in ascertaining the scope and details of alleged wrongdoing. *See Madanes v. Madanes*, 186 F.R.D. 279, 289 (S.D.N.Y. 1999) (finding financial account information relevant to plaintiff's claims); *see Eastman Kodak*, 238 F.R.D. at 375 (analyzing at length the relevance of certain accounts to allegations "specifically assert[ed]" in the complaint); *see also In re American Motor Club, Inc.*, 129 B.R. 981, 987 (Bankr. E.D.N.Y. 1991) (finding financial records relevant where they "will either belie or substantiate" allegations). Here, Interrogatory 11 seeks to do just that—obtain an understanding of the scope and details of the Wallace Parties' liability by identifying and ascertaining the financial accounts containing records of their compensation for their work, including on behalf of subcontractors or teams engaged in

---

[3] As noted, the Wallace Parties are required to provide Responses through the present given the ongoing allegations in the Amended Complaint. *See supra* at 1-2.

connection with Mr. Wallace or Street Relations.[4] **<u>Please promptly amend your Responses to Interrogatory 11</u>**.

                                                Yours,

                                                *s/ Kristin Bender*
                                                Kristin Bender

Cc:    Michael Gottlieb, Esq.
         Laura Prather, Esq.
         Aaron Nathan, Esq.
         Meryl Governski, Esq.

---

[4] None of the Responses discussed herein implicates any privacy concerns that would preclude production because, as the Court explained in its July 7 Order, "[t]he Court has already entered a protective order in this case preventing the disclosures of confidential material," which is "sufficient to account for Street Relations' confidentiality interests here." ECF No. 390 at 3.