UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>                Defendants. | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>BLAKE LIVELY, et al.,<br><br>                Defendants. | No. 25-cv-449 (LJL) (member case) |

**REPLY IN FURTHER SUPPORT OF BLAKE LIVELY'S
MOTION FOR SANCTIONS AGAINST DEFENDANTS' COUNSEL**

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Michael J. Gottlieb
Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (admitted *pro hac vice*)
401 Ninth Street, NW

Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

*Attorneys for Blake Lively*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1
ARGUMENT ...................................................................................................................................1
    I.    MR. FREEDMAN VIOLATED RULE 3.6 AND THIS COURT'S ORDER. .............1
        A.    Mr. Freedman's Statements Presumptively Violated Rule 3.6 and the Court's Order. ......................................................................................................1
        B.    Mr. Freedman's Statements Are Substantially Likely to Materially Prejudice These Proceedings. ...............................................................................3
    II.    NO SAFE HARBOR APPLIES TO MR. FREEDMAN'S STATEMENTS. ................6
        A.    Mr. Freedman's Violative Statements Were Not Exempted By Rule 3.6(d) ...........6
        B.    No Other Exceptions to Rule 3.6(a) Apply to Mr. Freedman's Statements. ...........8
    III.    THE COURT SHOULD SANCTION MR. FREEDMAN PURSUANT TO RULE 16(F) AND ITS INHERENT POWER. ........................................................................9
CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                                     **Page(s)**

*Gentile v. Stat Bar of Nev.*,
   501 U.S. 1030 (1991)..................................................................................................5, 7

*Liebowitz v. Bandshell Artist Mgmt.*,
   6 F.4th 267 (2d Cit. 2021)..................................................................................................10

*Lott v. Estes*,
   2023 WL 4278688 (S.D. Ga. June 29, 2023).......................................................................4, 5

*Muhaymin v. City of Pheonix*,
   2020 WL 3050572 (D. Ariz. June 5, 2020) ...............................................................................5

*Murphy-Fauth v. BSNF Railway Co.*,
   2018 WL 5312201 (D. Mont. April 4, 2018)............................................................................5

*Rice v. NBCUniversal Media, LLC*,
   2019 WL 3000808 (S.D.N.Y. July 10, 2019) .........................................................................10

*Sherrod, Teed, Vanderhagen and Ware v. VNA*,
   2022 WL 15523073 (E.D. Mich. Oct. 26, 2022) ......................................................................4

*Sweet v. City of Mesa*,
   2021 WL 3130335 (D. Ariz. July 23, 2021) .............................................................................4

*U.S. v. Khan*,
   538 F. Supp. 2d 929 (E.D.N.Y. 2007) ......................................................................................3

*United States v. Claville*,
   2008 WL 1021364 (W.D. La. April 8, 2008) ...........................................................................5

**Other Authorities**

N.Y. Rule 3.6 ...............................................................................................................................1, 2

**INTRODUCTION**

The Opposition filed by Mr. Freedman and the Wayfarer Defendants does not seriously challenge that Mr. Freedman's repeated extrajudicial statements have targeted Ms. Lively's character, credibility, and reputation. As such, those statements presumptively violate N.Y. Rule 3.6 and are sanctionable under this Court's February 3 Order. Leaving aside the Opposition's repeated ad hominem attacks, Mr. Freedman's primary response is that his press campaign has not *necessarily* prejudiced the jury pool against Ms. Lively. But the consistency and volume of Mr. Freedman's themes challenging Ms. Lively's character and credibility have created a situation in which the issue is not whether jurors will remember Mr. Freedman's statements, but whether they can escape them. The Opposition's attempt to blame Mr. Freedman's misconduct on various press statements made on Ms. Lively's behalf, like his disingenuous rebranding of his proposal to hold Ms. Lively's deposition at Madison Square Garden as a "scheduling" statement, fall flat. In sum, Mr. Freedman has plainly violated Rule 3.6, he has identified no cognizable justification for his violations, and, accordingly, Ms. Lively respectfully requests that her motion be granted in its entirety.

**ARGUMENT**

**I.    MR. FREEDMAN VIOLATED RULE 3.6 AND THIS COURT'S ORDER.**

    **A.    Mr. Freedman's Statements Presumptively Violated Rule 3.6 and the Court's Order.**

In her Opening Brief, Ms. Lively established that Mr. Freedman has repeatedly and viciously attacked Ms. Lively's credibility, character, and reputation in violation of N.Y. Rule 3.6 and this Court's February 3 Order. Mot. at 9–16. Mr. Freedman does not deny (and therefore concedes) that he made each of the statements identified by Ms. Lively and that those statements

1

targeted Ms. Lively's credibility, character, and reputation.[1] These statements reflect Mr. Freedman's efforts to publicly paint Ms. Lively as (1) a liar who is "afraid of the truth" and so lacking in credibility that she will "look at a scene and say the sky is not blue" (*id.* at 10-12); (2) "arrogant," a "bully," and a "privileged elite[]" (*id.* at 12–13); (3) deserving of the "organic backlash" against her "self-concocted disaster," not the Wayfarer smear campaign documented in discovery (*id.* at 13–14); and (4) not credible given her husband's SNL appearance (*id.* at 15–16).

Instead, Mr. Freedman argues that "[t]he chief failing in Ms. Lively's motion is the underlying assumption that any statement that touches on a party's character, credibility or reputation automatically triggers 'a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter' and therefore violates Rule 3.6." Opp. at 4. But this hair-splitting exercise runs directly into the plain language of N.Y. Rule 3.6(b), which provides that "[a] statement *ordinarily* is likely to prejudice materially an adjudicative proceeding" if the statement "relates to . . . the character, credibility, reputation or criminal record of a party . . . or the expected testimony of a party or witness." N.Y. Rules of Pro. Conduct 3.6(b)(1) (emphasis added). The New York State Bar Association Committee on Professional Ethics has further clarified that the conduct identified in N.Y. Rule 3.6(b)(1) is a "presumptive" violation of the Rule:

> The final and central element of the prohibition is that the lawyer knows or reasonably should know that the statement "will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." The rule provides some guidance on this final element by identifying certain kinds of statements that are presumptively permissive and other kinds **that are presumptively impermissible**.

---

[1] The sole exception to this are statements made by Mr. Freedman's client, Megyn Kelly, and now disclaimed by Mr. Freedman, during the podcast interview in which Ms. Kelly stated that that Mr. Freedman is "waging war against Blake Lively who he believes is not a good person" and referred to Ms. Lively as a "bitch." *See* Opp. at 10 n.3. Mr. Freedman argues that "Rule 3.6 applies to statements by counsel," *id.*, ignoring his own statements made during the same podcast that not only endorse Ms. Kelly's invective, but violate Rule 3.6 on their own terms (all while demonstrating why many of the statements made on Ms. Lively's behalf have nothing to do with Rule 3.6).

2

N.Y. State 977 (2013) (citing Rule 3.6(b)(1)-(6)). That holds true here—a sustained public relations campaign attacking the character and credibility of a sexual harassment plaintiff creates an unacceptable risk of tainting the jury pool, particularly given Mr. Freedman's admission that, "in these kinds of cases, once someone says something, it becomes fact." ECF No. 63 at 59:8–10. Mr. Freedman offers no reason to discard the Rule's ordinary presumption here.

### B. Mr. Freedman's Statements Are Substantially Likely to Materially Prejudice These Proceedings.

Presumption aside, under any analysis Mr. Freedman's statements attacking Ms. Lively's character, credibility, and reputation have a substantial likelihood of prejudicing Ms. Lively at trial. For months, Mr. Freedman has sowed into the minds of the potential jury pool that Ms. Lively is a "privileged elite[]" intentionally "twist[ing] and curat[ing]" the law to weasel her way out of a "self-concocted disaster," that she "couldn't handle" perhaps because of a "narcissis[tic] quality." *See* Mot. at 12–13. Such comments "clearly prejudice[] the due administration of justice and potentially interfere[] with a fair trial" by "publicly tarnish[ing] the credibility" of Ms. Lively. *U.S. v. Khan*, 538 F. Supp. 2d 929, 931–32 (E.D.N.Y. 2007); *see also* Mot. at 9-16.

Mr. Freedman's argument that there is no prejudice lacks credibility. Opp. at 12–14. This is not a matter involving a single, isolated, or discrete statement. Rather, Mr. Freedman has made repeated statements across months (which are then repeatedly re-circulated) by outlets reaching millions of audience members in a litigation that has been "dominating headlines and drawing attention at every step." *Blake Lively, Justin Baldoni's 'It Ends With Us' legal battle: A timeline*, ABC News (June 19, 2025). This belies his efforts to downplay the significance and prejudice of his statements, Opp. at 14, especially in light of his ongoing media efforts, which include not just website that he and his team established, but also sustained engagement with tabloid and social

3

media platforms, whose conduct he praises and expressly encourages.[2] Simply put, the issue is not whether jurors will remember Mr. Freedman's statements, but whether they can escape them.[3]

This case stands in stark contrast with *Sherrod, Teed, Vanderhagen and Ware v. VNA*, 2022 WL 15523073, at *1 (E.D. Mich. Oct. 26, 2022), and the other authorities on which Mr. Freedman relies. There, after a mistrial, the plaintiff's attorney made several comments to a reporter (most of which were made on a single day), including that they were "only one juror shy from winning the case" and were "fired up for the next [trial]." *Id.* at *1. The defendant sought sanctions under Rule 3.6 of Michigan's Rules of Professional Conduct. *Id.* In denying the motion, the court found it "nonsensical" that these statements—which were akin to a reporting of the litigation—could possibly manipulate or influence a jury. *Id.* at *3-4. At best, the statements at issue amounted to puffery about the likelihood of success in a subsequent trial, and had nothing to do with the character or credibility of the parties. The other cases cited by Mr. Freedman are equally inapposite. *See* Opp. at 13–14 (citing *Stroble v. California*, 343 U.S. 181, 195 (1952) (73-year-old case considering whether a criminal defendant was deprived of due process); (citing *Gentile v. Stat Bar of Nev.*, 501 U.S. 1030, 1039 (1991) (addressing "abbreviated, general comments"); *Sweet v.*

---

[2] It was Mr. Freedman who, on a podcast appearance with former client Billy Bush, argued that it is "these TikTokers and people on YouTube. They're amazing. They're brilliant. . . . those types of people that have that type of information that are willing to do that type of diligence should actually be the jury one day." ECF No. 545-3 at 13:14–14:8. It has since been revealed through discovery that the Wayfarer Parties are *colluding* with several content creators, including Perez Hilton, Candace Owens and Andy Signore of Popcorned Planet, to perpetuate some of the most hateful and anti-Lively rhetoric. ECF No. 451-1 at 12–13; *In re Subpoena to Mario Lavandeira, Jr.*, 2:25-cv-01396 (D. Nev. Aug. 18, 2025), ECF No. 12 at 5; *Popcorned Planet, Inc. v. Blake Lively*, 8:25-mc-00028 (M.D. Fla. Aug. 12, 2025), ECF No. 8 at 8.
[3] *See Lott v. Estes*, 2023 WL 4278688, at *6 (S.D. Ga. June 29, 2023) ("[N]ews outlets regularly utilize social media platforms to connect to a wider audience both within and outside the traditional geographic broadcast television limits."). People magazine, where a number of Mr. Freedman's statements were published, alone has an estimated readership of over 98 million people across all platforms. *50 Popular US Magazines of 2024*, Magazine Line (Mar. 3, 2025), https://www.magazineline.com/blog/most-popular-magazines-in-the-us?srsltid=AfmBOor-SqNfMUFQSsutMzm_A3NQkfGs4PcfMdvD1zzsrmI_Vc7HCGoR. The video of Mr. Freedman's full-length interview with Megyn Kelly on June 11 has over 352,000 views on YouTube. *See Justin Baldoni's Lawyer Says He Won't Settle with Blake Lively, and What's Next, w/ Bryan Freedman* (June 11, 2025), https://www.youtube.com/watch?v=gm8cXmwJc9w.

*City of Mesa*, 2021 WL 3130335, at *4 (D. Ariz. July 23, 2021) ("counsel is discouraged from commenting on the character or reputation of the parties [or] the expected testimony of a party or witness"); *Murphy-Fauth v. BSNF Railway Co.*, 2018 WL 5312201, at *14 (D. Mont. April 4, 2018) (statements included "general information regarding asbestos claims and the course of litigation"); *Muhaymin v. City of Pheonix*, 2020 WL 3050572, at *3 (D. Ariz. June 5, 2020) (addressing two Facebook posts that were not "easily accessible")).

Mr. Freedman also does not meaningfully explain how the fast-approaching March 2026 trial is far enough in the future to warrant his "no harm no foul" approach. Even if the mere seven months to trial were sufficiently attenuated in an ordinary case (it is not), cases that are "widely publicized or sensational" are those that are most likely to be recognized by courts as prejudicial to a jury. *Cf. United States v. Claville*, 2008 WL 1021364, at *1 (W.D. La. April 8, 2008). As noted, if there is any case that falls into that category, it is this one. *See Lott*, 2023 WL 4278688, at *7 ("The reality of modern media and the internet, however, means that the potential exposure" to extrajudicial statements "is not limited" when statements "remain[] on the internet regardless of when a trial is scheduled.").

Mr. Freedman's only remaining argument as to prejudice is that it is "nonsensical . . . that an impartial jury cannot be seated," Opp. at 14, but that proves too much. If that argument were sufficient, there would be no need for Rule 3.6, and Mr. Freedman would never have stipulated to the application of Rule 3.6 as a rule for this case. Instead, as the United States Supreme Court has noted, "[e]ven if a fair trial can ultimately be ensured through voir dire, change of venue, or some other device, these measures entail serious costs to the system . . . [and] [t]he State has a substantial interest in preventing . . . lawyers[] from imposing such costs." *Gentile*, 501 U.S. at 1075.

5

## II. NO SAFE HARBOR APPLIES TO MR. FREEDMAN'S STATEMENTS.

While Mr. Freedman is correct that attorneys are not prohibited from speaking to the press, particularly in high-profile cases, such interactions with the press must be conducted within the confines of an attorney's professional ethical obligations. *See* Opp. at 15. Thus, while "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client, … [a] statement made pursuant to this paragraph shall be limited to such information ***as is necessary to mitigate the recent adverse publicity***." N.Y. Rule 3.6(d) (emphasis added); Mot. at 7. Likewise, statements about "the claim, offense or defense," "information contained in a public record," and "the scheduling or result of any step in the litigation" are permissible when made "without elaboration." N.Y. Rule 3.6(c). None of these exceptions applies.

### A. Mr. Freedman's Violative Statements Were Not Exempted By Rule 3.6(d).

Mr. Freedman attempts, but fails, to distract from his own violative statements by blaming Ms. Lively's counsel (or others who speak on Ms. Lively's behalf) and summarily concluding that "if Mr. Freedman's statements are sanctionable, so are those of Lively's counsel." Opp. at 21. Even a cursory glance at the statements raised by Mr. Freedman reveals the differences between his statements that violate Rule 3.6 and those on behalf of Ms. Lively, which do not.[4]

***First***, Mr. Freedman identifies numerous statements made by a non-lawyer spokesperson for Ms. Lively, and baselessly asserts without ***any*** evidence or authority that these were in fact statements made by lawyers "euphemistically called 'spokespersons.'" Opp. at 15; *see also* Ex. A, Statement Nos. 4–10. Mr. Freedman ignores the straightforward principle that N.Y. Rule 3.6

---

[4] Attached hereto as Exhibit A is a demonstrative chart setting forth the statements by Ms. Lively's counsel, spokesperson, or representative listed in Mr. Freedman's Opposition for ease of reference. Opp. at 15-21. *Only Statement Nos. 11–16 are by attorneys and post-dating February 3, 2025* (as compared to all of the Freedman Statements that are the subject of this Motion and Reply).

6

governs the conduct of lawyers, not clients or their public relations advisers. That is why Ms. Lively has not moved for relief under Rule 3.6 for any of the countless derogatory public statements made by the Wayfarer Defendants, their public relations professionals, or the content creators with whom the Wayfarer Defendants have admittedly coordinated. *See supra* n.2. The distinction is not theoretical—as the United States Supreme Court has explained, it is "[b]ecause lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative." *Gentile*, 501 U.S. at 1074. Mr. Freedman's attempt to justify his own misconduct by pointing to statements made by non-lawyers is futile.[5]

***Second***, none of the statements Mr. Freedman identifies violate N.Y. Rule 3.6. Many of the statements do not even mention Mr. Baldoni or the Wayfarer Defendants, *see* Ex. A, Statement Nos. 1, 4, 11, 12, 14, 15, while the vast majority of remaining statements are presumptively permissible comments regarding the claims, offenses, and defenses in the action that refrain from attacking the credibility, character, or reputation of Mr. Baldoni or the Wayfarer Defendants. *See* Ex. A, Statement Nos. 2 (explaining defense to retaliatory lawsuit); 3 (describing complained-of offenses in video footage released by Wayfarer Defendants); 5 (describing complained-of retaliation offenses); 8 (defense to investigation claim); 13 (explaining defenses of applicable privileges in motions to dismiss); 16 (explaining claims and defenses in retaliatory lawsuit, in context of result of Ms. Lively's motion to dismiss); 16 (describing complained-of offense of retaliatory conduct).

---

[5] In any event, many of the spokesperson statements were made in direct response to publicity harmful to Ms. Lively initiated by Mr. Freedman. *See* Ex. A, Statement Nos. 7 (responding to statement that Ms. Lively's deposition should be held at Madison Square Garden with tickets sold to the public), 9 (responding to media circus created by statements regarding the withdrawal of subpoena to Ms. Swift for documents).

These statements do not assert that Mr. Baldoni will fail to show up for trial, give false testimony, or try to "bully" others. Instead, every reference Mr. Freedman has identified is a description of a claim or argument made in court filings, which Rule 3.6 deems presumptively permissible, as opposed to efforts to assassinate the credibility or character of an opposing party or witness, which Rule 3.6 deems presumptively impermissible. Mr. Freedman also has not made any showing (beyond his own conclusory judgment) as to how his over-the-line statements were justified by anything Ms. Lively's counsel said in the press. *See* Opp. at 21. Mr. Freedman's bald assertion that his statements were absolved by "the prejudice created by the incessant press releases and interviews published by Ms. Lively and her counsel," *see id.*, fails to demonstrate what publicity rendered any of his specific statements necessary or that they were properly "limited to such information as is necessary to mitigate the recent adverse publicity." N.Y. Rule 3.6(d).

### B. No Other Exceptions to Rule 3.6(a) Apply to Mr. Freedman's Statements.

Mr. Freedman's assertion that certain of his statements regarding Ms. Lively can be categorized as any of the presumptively permissible subjects enumerated in N.Y. Rule 3.6(c) is conclusory and cannot be squared with the text of the Rule. Opp. at 21. The statements that he defends as discussing "scheduling" are, in fact, statements to convince the public that Ms. Lively will attempt to avoid her deposition because she is "afraid of the truth," *see* Freedman Statement Nos. 1 ("we'll see if they can try to avoid a deposition"), 8 ("we're gonna see if she's gonna appear at that deposition or not"). The same is true for Mr. Freedman's taunt that Ms. Lively should sit for a public deposition at Madison Square Garden and that he would "sell tickets or stream it," which might constitute appropriate "scheduling" for a boxing promoter, but is unacceptable for a licensed attorney discussing civil litigation. Opp. at 22; Freedman Statement No. 8.

Similarly, the statements Mr. Freedman describes as concerning the "amended complaint," Opp. at 22—specifically, that "documents do not lie people do" (Freedman Statement No. 3) and

8

that Ms. Lively is a "Hollywood elite" who "does not need discovery to find out who smeared her. Just a mirror will do" (Freedman Statement Nos. 5, 6)—do not concern any claims or allegations in the Amended Complaint, but rather characterize Ms. Lively as a liar and a person of bad character who invited press attacks (absolving, of course, the Wayfarer Defendants of their smear campaign against her). Mr. Freedman's argument that his Statement No. 5 is permissible as a matter of "public record" that Ms. Lively faced media backlash ignores that the source of this backlash is at issue in the currently pending litigation. *See* Mot. at 13–15. Regardless, none of these statements are "without elaboration" as required by N.Y. Rule 3.6(c).

### III.  THE COURT SHOULD SANCTION MR. FREEDMAN PURSUANT TO RULE 16(F) AND ITS INHERENT POWER.

Mr. Freedman's failure to obey the Court's "clear and unambiguous . . . pretrial order" incorporating N.Y. Rule 3.6 violates Federal Rule 16(f) and is sufficient grounds for the Court to "impose whichever sanction it feels is appropriate under the circumstances." Mot. at 7–8 (quoting *Chevrestt v. Barstool Sports, Inc.*, 2020 WL 2301210, at *2 (S.D.N.Y. May 8, 2020)). New York law is clear that when, as here, violations of Federal Rule 16(f) are not "substantially justified" the Court "must order" the wrongdoer "to pay the reasonable expenses—including attorney's fees—incurred because of" the noncompliance. *Id.* (quoting *Chevrestt*, 2020 WL 2301210, at *2).

Ms. Lively "seeks only a public admonishment and an award of costs and fees." Mot. at 17. If the Court decides to impose sanctions, Mr. Freedman concedes that those are proper sanctions. Indeed, he makes no objection to these sanctions, instead entreating the Court to "reject the request" to revoke Mr. Freedman's *pro hac vice* admission. *See* Opp. at 22 (remarking that "no punishment for a perceived slight would be too draconian for Ms. Lively"). It is telling that Mr. Freedman fixates on this purportedly "draconian" sanction, because Ms. Lively **did not** request that relief at this time, and only reserved her rights to seek it if Mr. Freedman **continues** to refuse

9

to follow the rules of this Court. Mot. at 17 ("Ms. Lively **reserves all rights** to seek appropriate remedial instructions prior to trial, as well as to seek additional sanctions ***in the event Mr. Freedman continues to violate*** the N.Y. Rule 3.6 Order, including but not limited to revocation of Mr. Freedman's *pro hac vice* admission.") (emphasis added).

Finally, the Court may also sanction Mr. Freedman under its inherent power in tandem with or in addition to any sanctions imposed under Rule 16(f) in light of Mr. Freedman's "willful disobedience" of the Court's Rule 3.6 Order. Mot. at 18 (quoting *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *3 (S.D.N.Y. July 10, 2019)). In addition to the reasons set forth in Ms. Lively's Opening Brief, Mr. Freedman's Opposition further demonstrates his willful disobedience. He purported to welcome this Court's entry of its Rule 3.6 Order, he acknowledges that his statements regarding a party's credibility, character, or reputation "ordinarily" materially prejudicial to the proceedings, and yet he nevertheless admittedly engaged in that conduct a minimum of ten times in half as many months. Mr. Freedman's actions and admissions illustrate his bad faith, therefore the Court should impose sanctions under its inherent power. Mot. at 18–19; *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 292 (2d Cit. 2021) (affirming a $20,000 sanction for "bad faith conduct"); *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019) (collecting cases).

## CONCLUSION

For the reasons stated above, this Court should impose sanctions against Mr. Freedman and set a briefing schedule for the calculation of any award, as appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 25, 2025 | /s/ *Michael J. Gottlieb* |

| | |
|---|---|
| Esra A. Hudson (admitted *pro hac vice*) | Michael J. Gottlieb |
| Stephanie A. Roeser (admitted *pro hac vice*) | Kristin E. Bender |
| Manatt, Phelps & Phillips LLP | Willkie Farr & Gallagher LLP |
| 2049 Century Park East, Suite 1700 | 1875 K Street NW |
| Los Angeles, CA 90067 | Washington, DC 20006 |
| (310) 312-4000 | (202) 303-1000 |
| ehudson@manatt.com | mgottlieb@willkie.com |
| sroeser@manatt.com | kbender@willkie.com |
| | |
| Matthew F. Bruno | Aaron E. Nathan |
| Manatt, Phelps & Phillips LLP | Willkie Farr & Gallagher LLP |
| 7 Times Square | 787 Seventh Avenue |
| New York, NY 10036 | New York, NY 10019 |
| (212) 790-4525 | (212) 728-8904 |
| mbruno@manatt.com | anathan@willkie.com |
| | |
| | DUNN ISAACSON RHEE LLP |
| | Meryl C. Governski (admitted *pro hac vice*) |
| | 401 Ninth Street, NW |
| | Washington, DC 20004 |
| | (202) 240-2900 |
| | mgovernski@dirllp.com |

*Attorneys for Blake Lively*

11