UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>*Plaintiff,*<br><br>v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>*Defendants.* | No. 24-cv-10049 (LJL) (lead case) |
| WAYFARER STUDIOS LLC, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>BLAKE LIVELY,<br><br>*Defendants.* | No. 25-cv-449 (LJL) (member case) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS OR, ALTERNATIVELY, SEVER AND TRANSFER**

## I.     INTRODUCTION

Like the seasons, Blake Lively's ("Lively") efforts to retain jurisdiction over Jed Wallace and Street Relations (the "Wallace Defendants") are ever-changing from "a conspiracy-based theory of jurisdiction," Dkt. 426 at 23,[1] asserted in the spring but rejected in the summer, to now, in the fall, a "novel theory that Lively had not raised," *id* at 31 n.10, in her prior complaint but which is now the primary focus of her argument, specifically, that section 302(a)(1) of the New York long-arm statute confers jurisdiction.

This change is likely explained by Lively's inability to overcome her pleadings and sworn testimony that the two claims against the Wallace Defendants sound in defamation and thus the conspiracy theory of jurisdiction, found in sections 302(a)(2) and (a)(3), is inapplicable. Her two-paragraph attempt (in a 31-page brief) to overcome the defamation exception is hardly a response at all, Dkt. 713 at 17–18. The colors in autumn are so bright just before they lose it all.

And the change of seasons has not cured the novelty (or inapplicability) of her (a)(1) argument.

## II.     ARGUMENT

**A.     The defamation exception forecloses jurisdiction under 302(a)(2) and (a)(3).**

A defamation claim "is defined in terms of [] damage to reputation." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 556 (S.D.N.Y. 2020). Thus, New York law "considers claims sounding in tort to be defamation claims" where those claims seek damages for "injury to reputation," or where "the entire injury complained of by plaintiff flows from the effect on [her] reputation." *Id.* These are precisely the claims Lively alleges here.

---

[1] All page cites are to the ECF page.

Specifically, Lively's claims against the Wallace Defendants are founded on her assertion that they engaged in a "retaliation campaign" that "create[ed], seed[ed], manipulate[d], and advance[d] *disparaging content*" about her. Dkt. 520 at ¶¶ 38, 223 (emphasis added). This alleged campaign, Lively asserts, caused "devastation to [her] *reputation*." *Id.* at ¶ 334 (emphasis added). Further, Lively specifically alleges in her false-light and FEHA claims that the Wallace Defendants participated in a "campaign to *discredit* and 'bury'" her "*reputationally*," and publicly made "false and misleading disclosures" that harmed "her *reputation*." *Id.* at ¶¶ 411, 438 (emphasis added); Dkt. 649-3 at 20 (emphasis added). Even Lively's general allegations regarding the actions of unspecified "Defendants" show that she seeks to redress alleged reputational harm caused by false statements.[2]

Lively refuses to substantively engage in this argument, ignores her own allegations, and instead relies entirely on her *ipse dixit* that "neither the false light claim nor the FEHA aiding-and-abetting claim fall under the defamation exception." Dkt. 715 at 17. Lively also appears to argue that the exception does not apply to her FEHA claim because it is based, not only on the Wallace Defendants' "boosting [of] negative narratives," but also on their provision of "advice and counsel to the Wayfarer Parties," activity she asserts does not "arguably 'sound in defamation.'"[3] Dkt. 715 at 18. Lively misses the point—it is the reputational injury she seeks to redress through her FEHA

---

[2] *See* Dkt. 520 at ¶ 50 ("Defendants . . . gave numerous statements to the press including blatantly *false and defamatory* factual allegations, and began a near-daily media and social media blitz aimed at *discrediting* Ms. Lively.") (emphasis added); *id.* at ¶ 73 (alleging that "Defendants' . . . agent and lawyer . . . made *defamatory statements* regarding Ms. Lively on their behalf") (emphasis added); *id.* at ¶ 296 (alleging that "Defendants . . . have pursed a highly public, media blitz and litigation strategy to attempt to *discredit* Ms. Lively") (emphasis added).

[3] Lively suggests that the court in *Findlay v. Duthuit*, 86 A.D.2d 789 (1st Dep't 1982) held that FEHA aiding-and-abetting claims do not "sound in defamation." *See* Dkt. 715 at 17. *Findlay*, however, did not involve a FEHA claim and thus that court made no such holding. In fact, the *Findlay* court reiterated that in determining whether a claim sounds in defamation, it is "the reality and essence of the action" that controls and not its "mere name." *See Findlay*, 86 A.D.2d at 790 (holding claim based on statement discrediting authenticity of artwork sounded in defamation).

claim that matters, not the precise manner in which the Wallace Defendants are alleged to have aided any "retaliation campaign." *Ganske*, 480 F. Supp. 3d at 556.

Because Lively's claims against the Wallace Defendants indisputably sound in defamation,[4] she cannot predicate jurisdiction on 302(a)(2) or (a)(3).

**B.    Lively cannot establish jurisdiction under 302(a)(1).**

**1.    302(a)(1)'s "through an agent" language does not permit a conspiracy-based theory of jurisdiction.**

Under 302(a)(1), a non-domiciliary may be subject to personal jurisdiction if he "transacts any business" in New York either "in person or through an agent." C.P.L.R. 302(a)(1). Lively contends that the phrase "through an agent" permits the Court to exercise jurisdiction over a non-domiciliary, like the Wallace Defendants, through the acts of a co-conspirator. *See* Dkt. 715 at 12–13. While this may be true in the *302(a)(2)* context, "where tortious acts by a co-conspirator are a well-recognized basis for personal jurisdiction," it is not the case when, as here, *302(a)(1)* is invoked. *QBE Americas, Inc. v. Allen*, No. 22-CV-756 (JSR), 2022 WL 889838, at *5 (S.D.N.Y. Mar. 25, 2022). In *QBE Americas*, this Court rejected Lively's very argument, *i.e.*, "that a co-conspirator's allegedly tortious acts in New York can establish a basis for personal jurisdiction under § 302(a)(1)." *Id.* Instead, this Court reiterated that "302(a)(1) *requires* an agency relationship . . . in which the purported agent acted purposely in New York for the defendant's benefit and with

---

[4] *See Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 664, 669–71 (S.D.N.Y. 2007) (claim based on dissemination of negative statements causing harm to professional reputation sounded in defamation); *Golden Ring Int'l, Inc. v. Cullen*, No. 6:18-CV-1244, 2019 WL 4015638, at *8 (N.D.N.Y. Aug. 26, 2019) (claims based on "an allegedly harmfully false statement[] sound in defamation"); *Lines v. Cablevision Sys. Corp.*, No. 04 CV 2517 DRH ETB, 2005 WL 2305010, at *5 (E.D.N.Y. Sept. 21, 2005) (case sounded in defamation where plaintiff alleged "that his reputation in the industry was damaged because of an alleged wrongful communication"); *Kartiganer Assocs., P. C. v. Town of Newburgh*, 57 A.D.2d 857, 857, 394 N.Y.S.2d 262, 263 (1977) (when the "gravamen" of a claim is "the alleged injury to plaintiff's professional reputation," it sounds in defamation); *See Noel v. Interboro Mut. Indem. Ins. Co.*, 31 A.D.2d 54, 295 N.Y.S.2d 399, 400 (1st Dep't 1968) (claim based on allegation that "defendants willfully and maliciously issued, published and widely circulated a bulletin designed intentionally to discredit and harm the plaintiff" sounded in defamation), *aff'd*, 29 N.Y.2d 743 (1971).

[the defendant's] knowledge." *Id.* (emphasis added); *see also Saks v. Andreu, Palma, Lavin, & Solis, PLLC*, No. 24-CV-02045 (OEM) (CLP), 2025 WL 317516, at *4 (E.D.N.Y. Jan. 28, 2025) (same). Thus, Lively's conspiracy-based theory of jurisdiction based on 302(a)(1)'s "through an agent" language fails.

2. **Lively does not—and cannot—establish the agency relationship contemplated under 302(a)(1).**

302(a)(2) contemplates a specific agency relationship where the agent is an in-state actor who operates at the behest of a non-domiciliary principal. Thus, for 302(a)(1) jurisdiction "to exist over [the Wallace Defendants], [the co-conspirators] must have acted in New York as . . . agent[s] under the control of [the Wallace Defendants] as [their] principal." *Saks*, 2025 WL 317516, at *4. Lively, however, alleges the inverse: that the Wallace Defendants are the agents of the co-conspirators. Indeed, Lively alleges that the co-conspirators hired the Wallace Defendants,[5] and also controlled the Wallace Defendants' activities.[6] "Courts have declined to find jurisdiction where," as here, "the non-domiciliary defendant acted as the agent of the domiciliary." *See Saks*, 2025 WL 317516, at *4 (302(a)(1) jurisdiction did not exist where the non-domiciliary defendant acted at the behest of the alleged in-state co-conspirator).

3. **Lively's claims do not arise from the transaction of business in New York.**

Lively does not allege that the Wallace Defendants transacted business in New York "in person." Additionally, the absence of the requisite agency relationship prevents the in-state co-conspirators' alleged business transactions from being attributed to the Wallace Defendants. *See*

---

[5] *See, e.g.*, Dkt. 520 at ¶ 37 (Defendants Wayfarer and Baldoni "retained . . . Jed Wallace"); ¶ 216 ("[Defendant] TAG engaged Mr. Jed Wallace."); *id.* at ¶ 62 ("Ms. Nathan helped the other Wayfarer Parties retain Mr. Wallace and Street Relations."); *id.* at ¶ 216 ("TAG engaged Mr. Jed Wallace [] in early August 2024."); *id.* at ¶ 223 ("TAG retained Mr. Wallace, and his company Street Relations."); *id.* at ¶ 293b (referencing text messages instructing alleged in-state co-conspirators to "hire" Wallace).

[6] *See, e.g.*, Dkt. 520 at ¶ 234 ("Ms. Abel and Ms. Nathan . . . direct[ed] Mr. Wallace to take 'serious action on the social side' in response."); *id.* at ¶ 260 ("Ms. Abel was calling for Mr. Wallace to take action . . . .").

*Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.*, No. 2:23-CV-01268 (LDH) (ARL), 2024 WL 5213366, at *8 (E.D.N.Y. Dec. 24, 2024) (absent facts establishing the requisite agency relationship, the transacted-business element could not be "plausibly allege[d]"). But even if attribution were possible, none of the co-conspirators actually transacted business in New York.

"Transact[ing] business" means that a party "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). The only transaction Lively specifically points to is the co-conspirators' trip to New York on August 4–6, 2024 to promote the Film, consisting of "press appearances" and attendance at the Film's premiere. Dkt. 715 at 13–14, 15–16; *see* Dkt. 520 at ¶¶ 293a–d. But alleged co-conspirators' mere attendance at press events and a premiere—activities that rise, at most, to the solicitation of business—do not constitute "transact[ing] business" under 302(a)(1). *See Girl Scouts of the United States v. Steir*, 102 Fed. App'x 217, 219 (2nd Cir. 2004) ("[M]ere solicitation of business within the state does not constitute the transaction of business within the state."); *Hammond v. Alpha 1 Biomedicals, Inc.*, No. 91-CV-1477, 1992 WL 44365, at *7 (N.D.N.Y. Mar. 2, 1992) (attendance at a "trade show" in New York did not constitute transacting business, "even though the visit might ultimately work to the defendant's pecuniary advantage").

Even if attendance at these few events constituted transacting business, Lively's claims against the Wallace Defendants do not arise out of those transactions, *i.e.*, there is no "articulable nexus, or a substantial relationship, between the claim[s] asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246. Lively does not allege that the co-conspirators engaged in any wrongful conduct during these events and fails to even discuss this nexus requirement in her briefing. *See gen.* Dkt. 715; *DiBenedetto v. Boardwalk 1000, LLC*, No. 22-CV-

6759 (JMA) (AYS), 2024 WL 1241997, at *3 (E.D.N.Y. Mar. 22, 2024) (302(a)(1) jurisdiction failed where plaintiff failed to articulate how his claim arose from a promotional event in New York). In fact, Lively admits that there is *no nexus* between any New York transactions and her FEHA claim. *See* Dkt. 715 at 29 (admitting that her "retaliation (and aiding-and-abetting) claim is premised on *California-based* conduct") (emphasis added); *id.* at 30 (admitting that a "significant part" of the "retaliatory scheme" was "all carried out by California-based persons in California").

For this additional independent reason, Lively cannot predicate jurisdiction on 302(a)(1).

C.   **Lively's conspiracy-based theory of jurisdiction under 302(a)(2) fails.**

Even if the defamation exception did not plainly apply (which it does), Lively fails to allege facts supporting a conspiracy-based theory under 302(a)(2). To establish the Wallace Defendants' membership in a conspiracy for the purposes of New York's long-arm statute, Lively must allege specific facts showing: (i) the Wallace Defendants had an awareness of the effects in New York of their activity; (ii) the activity of the co-conspirators in New York was to the benefit the Wallace Defendants; and (iii) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the Wallace Defendants. *QBE Americas*, 2022 WL 889838, at *4.

The Wallace Defendants explain at length in their Motion why Lively still fails to make this showing, including that she does not allege facts showing that the Wallace Defendants were aware of overt acts in New York. *See* Dkt. 649 at 21–26. Lively attempts to show otherwise by pointing to email "timestamps," area codes, and Instagram posts. *See* Dkt. 715 at 14-15, 18. But Lively never alleges that Wallace saw these timestamps or area codes, much less that he understood

them to mean anyone was presently in New York.[7] *See* Dkt. 520 at ¶¶ 293d, 293m. This is also the case with the Instagram posts. *See id.* at ¶ 293l–m.

Lively attempts to connect the Wallace Defendants to these posts by baldly alleging that "anyone" engaged in "passive observation" of the "social media environment . . . would have been aware of these posts." *Id.* This is not a reasonable inference, but rather pure speculation that fails to satisfy Lively's burden to allege "*specific facts* warranting the inference" that "*the [out-of-state] defendant*"—not simply "anyone"—had an "awareness of the effects [of its activity] in New York." *QBE Americas*, 2022 WL 889838, at *3, *4 (emphasis added); *see Doe v. Oxford Health Plans (NY), Inc.*, No. 24-CV-5922 (LJL), 2025 WL 1105287, at *8 (S.D.N.Y. Apr. 14, 2025) ("[M]ere speculation is insufficient to withstand a motion to dismiss.").

Lastly, Lively argues that because the Wallace Defendants "do not argue they have ever" "removed themselves from the conspiracy," their alleged involvement in the creation of a website in 2025 somehow constitutes a "substantial overt act[] in New York." Dkt. 715 at 16. First, the Wallace Defendants averred that they were not involved in any conspiracy, *see* Dkt. 649-2 at 5–6, meaning there was no conspiracy to "remove[] themselves from." Even if the Wallace Defendants were involved in creating the website, Lively admits that it only contained materials "filed in [a prior] lawsuit" and thus is not actionable. Dkt. 715 at 16; *see Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) ("[S]tatements made in the course of litigation are entitled to absolute privilege."). And even if the website were actionable, there are no allegations that this website (or those responsible for its publication) had any connection to New York sufficient to trigger 302(a)(2). *See Shamoun v. Mushlin*, No. 12 CIV. 3541(AJN), 2014 WL 12776779, at *5 (S.D.N.Y. Mar. 26, 2014) (no 302(a)(2) jurisdiction based on website where there was no allegation that

---

[7] Nor does Lively address the Wallace Defendants' arguments concerning the expansiveness of the eastern time zone or the portability of cell phone numbers. *See* Dkt. 649 at 13–14, 22, 25.

defendants "published the website *in* New York") (emphasis in original); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) (website did not confer jurisdiction under 302(a)(2) where there were no allegations that it was "created in New York or . . . maintained on New York servers").

**D.     Jurisdiction under 302(a)(3) fails.**

To satisfy 302(a)(3), Lively had to allege facts showing: (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). For the reasons discussed above and in the Motion, Lively has not alleged any facts from which this Court can reasonably infer that the Wallace Defendants expected or should have reasonably expected that any act they undertook would have New York consequences.

Lively continues to point to the $90,000 the Wallace Defendants received from the alleged co-conspirators. *See* Dkt. 715 at 19. But this only shows what the Wallace Defendants earned from a single engagement, without comparing that amount to the revenue the Wallace Defendants derive from in-state (*i.e.*, Texas-based) business. *See New England Laminates Co., Inc. v. Murphy*, 79 Misc.2d 1025, 362 N.Y.S.2d 730, 734 (N.Y. Sup. Ct. 1974) (where out-of-state corporation derived four percent of its revenue from New York, *i.e.*, $400,000, 302(a)(3)'s "substantial revenue" requirement was not satisfied). Absent this necessary context, Lively has not alleged facts established that the Wallace Defendants derive substantial revenue from interstate commerce.

**E.     Due process is not satisfied.**

As explained, there are no factual allegations supporting the reasonable inference that the Wallace Defendants were aware of the alleged co-conspirators' presence in New York, or that they took any act in furtherance of an alleged conspiracy while in New York. On the contrary, the facts alleged show that the Wallace Defendants were "blindsided" by the alleged co-conspirators' contacts with New York. *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 125 (2d Cir. 2021). Thus, because "[a] defendant cannot reasonably anticipate being haled into a court as a result of contracts that are unknown to him," the exercise of jurisdiction over the Wallace Defendants would not comport with the Due Process Clause. *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 1952027, at *17 (S.D.N.Y. July 16, 2025).

**F.    Lively fails to state a claim against the Wallace Defendants.**

Lively does not address the most-significant-relationship test or meaningfully contest that under that test either New York or Texas has the most significant relationship to Lively's claims against the Wallace Defendants. *See* Dkt. 649 at 28–29. Nor does she dispute that the laws of those jurisdiction bar her false-light claim. Contrary to Lively's contentions that California law does not require her to plead the elements of a defamation claim in connection with her false-light claim, that is what federal courts analyzing California false-light claims have required.[8] The mere fact that Lively has not alleged a defamation claim against the Wallace Defendants does not excuse her from pleading the elements of a defamation claim in connection with her false-light claim.[9] And for the reasons discussed in the Motion, Lively failed to plead those elements.

---

[8] *See Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2017 WL 6539874, at *10 (N.D. Cal. Dec. 21, 2017) (where plaintiffs did not "plausibly plead a claim for defamation," their false-light claim "necessarily fail[ed]"), *aff'd*, 803 F. App'x 73 (9th Cir. 2020); *Welsh v. Am. Home Mortg. Assets*, LLC, No. 4:13-CV-04750 CW, 2014 WL 4954144, at *13 (N.D. Cal. Sept. 30, 2014) (same).

[9] *See Burnell v. Marin Humane Soc'y*, No. 14-CV-05635-JSC, 2015 WL 6746818, at *18 (N.D. Cal. Nov. 5, 2015) (requiring plaintiffs to plead defamation elements in connection with a false-light claim even though plaintiffs did not assert a standalone defamation claim).

Lively's admission that "FEHA does not apply to 'non-residents employed outside the state when the tortious conduct did not occur in California" is fatal. Dkt. 715 at 29 (quoting *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996)). Here, Lively alleges no tortious conduct that occurred in California, and instead plainly predicates her claims against the Wallace Defendants on purported "New York-based overt acts." Dkt. 520 at ¶ 72; *see also id.* at ¶¶ 293a–b. Additionally, even assuming the actions of Lively's employer were discriminatory, there are no allegations that the Wallace Defendants "knew that . . . conduct was discriminatory" or for the purposes of retaliation or harassment. *Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 813 (N.D. Cal. 2024). Thus, Lively fails to adequately plead a FEHA claim.

Because Lively's false-light and FEHA claims are fatally infirm, so too is her civil conspiracy claim. *See* Dkt. 426 at 19 n.8.

### III.   CONCLUSION

We note that Lively has retreated not only from her primary conspiracy based jurisdictional theories (although she puts up a game front) but despite repeating verbatim large swaths of her Second Amended Complaint, nowhere mentioned is the previously pleaded winky faced emoji 😉. Dkt. 520 at ¶ 294f. Nor has she clarified the post which Lively claims the Wallace Defendants must have seen and understood. *See id.* at ¶ 293l. It depicts Lively under the caption "blakelively@blue jean baby, N.Y. lady," which anyone who has listened to Elton John or watched the movie or seen the play *Almost Famous* knows is not "N.Y. lady" but "**L.A. lady**," the address Lively used when she sued Wallace in Texas. Dkt. 649-2 at ¶ 32; Dkt. 141-2 at 16. We would concede that the blue jean lady, wherever found, was, in fact, a seamstress for the band. But with all that the motion to dismiss should be granted.

Dated: September 3, 2025

Respectfully submitted,

JACKSON WALKER LLP

S/ *Charles L. Babcock*
Charles L. Babcock
SDNY #5451117
Joel R. Glover
SDNY #5697487
Victoria C. Emery (admitted *Pro Hac Vice*)
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
cbabcock@jw.com
jglover@jw.com
temery@jw.com

**ATTORNEYS FOR DEFENDANTS JED WALLACE, AN INDIVIDUAL AND STREET RELATIONS, INC.**

**CERTIFICATE OF COMPLIANCE**

This memorandum of law complies with S.D.N.Y. Local Civil Rule 7.1, because it meets the formatting requirements, including being 12-point type or larger, with one-inch margins, and the body text is exactly double-spaced. This memorandum of law also complies with Judge Liman's *Individual Practices in Civil Cases*, which limit reply memoranda to 10 pages.

*/s/ Charles L. Babcock*  
Charles L. Babcock