UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**IN RE: ORDER ON MOTIONS TO QUASH  24-cv-10049 (LJL)**
Non-Party Movants.

Ordered by:

Served in the matter of

Case Nos: 1:24-cv-10049-LJL; 1:25-cv-00449-LJL

**Judge Lewis J. Liman**

**Blake Lively**

Petitioners

V

**Wayfarer Studios LLC, et al.,**
Defendants.

---

## MOTION FOR SANCTIONS UNDER 28 U.S.C § 1927 and THE COURT'S INHERENT AUTHORITY

**I. INTRODUCTION**

Movant is a non-party subpoena recipient through the subpoena issued to Google for Movant's data and personal information. Plaintiff issued a subpoena that was improper and burdensome. Plaintiff never answered any questions the Movant had regarding the subpoena including after learning that the Movant would be pro se. Four days after Movant filed her motion to quash, Plaintiff withdrew the subpoena. Although Plaintiff withdrew the subpoena, the conduct nevertheless was an abuse of the court and has vexatiously multiplied proceedings. Movant respectfully requests that the Court address the Plaintiff's improper use of judicial process to chill the First Amendment rights of her critics. Movant's request for sanctions is to deter further misuse and abuse of the Court.

## II. BACKGROUND

On July 10th 2025, Movant became aware Google that Plaintiff served a subpoena to Google LLC d/b/a YouTube, demanding the disclosure of sensitive information for McKenzie Folks, @existingtothrive. At the time of receiving the notice, Movant had one subscriber on YouTube. (Exhibit A)

Movant requested a copy of the subpoena from Google and Esra Hudson on July 10th 2025 via email. The morning of July 11th Movant called Esra Hudson's office and left a voicemail requesting confirmation of the legitimacy of the subpoena and a copy of it. It was not until July 14th 2025 that the Movant received a copy of the subpoena from Google at 12:56 pm and Manatt, Phelps & Phillips, LLP at 3:53pm. (Exhibit B)

The subpoena requested Movant's (a) name, (b) email address(es), (c) phone number(s),(d) physical address, ( e ) backup/recover email address or phone number, (f) subscriber registration information, (g) length of service (including start date) and any premium services utilized, (h) means and source of payment for such services (including any credit card or bank account number, or public blockchain data any addresses), (i) login internet protocol (IP) address used for initial registration, (j) IP address used from May 1, 2024 to the present, with dates and session times, and (k) video upload IP address.  The request was overbroad, invasive, and not narrowly tailored to any legitimate legal interest. (Exhibit C)

After Movant received a copy of the subpoena, she emailed Esra Hudson following up on her initial email sent July 11th. The Movant never received a response from the Plaintiff's legal team. On July 22nd Movant filed her motion to quash pro se to the Court and to both parties of the case Lively v Wayfarer Studios LLC, 1:24-cv-10049, (S.D.N.Y). Two days later, July 24th, Plaintiff's legal counsel emailed the Movant requesting a call to discuss the subpoena. (Exhibit D) Movant agreed to a call with the understanding it would be a phone call. However, after confirming the date/time the Plaintiff's legal counsel sent an email link for a Zoom meeting. (Exhibit E) From Movant's understanding, Zoom meetings show the IP Address of the users on the call which is something the Plaintiff was requesting in the subpoena. (Exhibit F) Movant has no knowledge if this was intentional of the Plaintiff's counsel to get the Movant's IP address outside of the subpoena, but it raised significant concerns of improper intent. The Zoom meeting was scheduled to have **four lawyers** speaking to the Movant without legal representation. The lawyers included Esra Hudson, Sareen Armani, Stephanie Roeser, and Sarah Moses. Since Movant did not feel comfortable with a Zoom call, she emailed the Plaintiff's counsel on July 25th to respectfully request all communications between the parties be in writing. (Exhibit G) Again,

Plaintiff's counsel did not respond to the Movant's questions regarding the subpoena. Instead, the following day July 26th, Plaintiff withdrew the subpoena for Movant's data. (Exhibit H) Movant wrote a letter to the Court the same day informing the Court of the withdrawal and requesting the Court review the Movant's filings as they hold substantial weight in Movant's claims that the subpoena was an abuse of the Court. (Exhibit I) The Court denied all requests in Movant's motion to quash on July 28th stating that the motion was moot due to Plaintiff's withdrawal. (Exhibit J)

**III. LEGAL STANDARD**

    A.    28 U.S.C § 1927: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

    B.    ABA *Model Rules of Professional Conduct: Rule , 4.4 (a)  In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.*

    C.    Chambers v Nasco Inc 501 US. 32 1991: the Court of Appeals confirmed the Court can utilize its inherent power for bad-faith conduct in litigation.

    D.    Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962): Inherent powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

    E.    Sony Music Entm't Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), which requires that plaintiffs make a concrete showing of actionable speech before compelling disclosure.

    F.    *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 90 Civ. 6328 (SWK), 1992 U.S. Dist. LEXIS 14832, at *24-25 (S.D.N.Y. Sept. 30, 1992); The Second Circuit has stated that use of a subpoena for a fishing expedition is improper and blanket subpoenas are not permitted.

**IV. ARGUMENT**

    A.    **Plaintiff's Subpoena was improper and abusive.**

The subpoena was issued without any showing of necessity or relevance, and it appeared to be an intimidation tactic toward a small independent content creator engaged in protected speech. The Plaintiff has not proven actual malice to demonstrate the necessity for the subpoena. When it comes to Movant's first amendment rights, Ms. Lively needs clear evidence justifying her infringement on Movant's rights to post commentary on a legal case initially made public by Ms. Lively's team. Negative commentary or opinions regarding Ms. Lively or Lively v Wayfarer Studios LLC, 1:24-cv-10049, (S.D.N.Y) does not constitute sufficient evidence that Movant had any involvement in a smear campaign. Considering the Movant was not monetized on YouTube prior to receiving the subpoena further demonstrates how unnecessary this subpoena is. A content creator on YouTube with one subscriber lacks substantial evidence of any of Plaintiff's claims that Movant is a part of the alleged smear campaign. *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 90 Civ. 6328 (SWK), 1992 U.S. Dist. LEXIS 14832, at *24-25 (S.D.N.Y. Sept. 30, 1992); The Second Circuit has stated that use of a subpoena for a fishing expedition is improper, and blanket subpoenas are not permitted. The Plaintiff has provided no evidence that Movant's speech is defamatory, unlawful, or even relevant to the core claims in the underlying litigation. The subpoena failed to articulate why unmasking an anonymous content creator – who has merely commented on publicly available information – is necessary to advance Plaintiff's claims. Courts have consistently held that when discovery requests target anonymous speakers, the Plaintiff must meet a heightened evidentiary standard. See Sony Music Entm't Inc. v. Does 1–40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), which requires that plaintiffs make a concrete showing of actionable speech before compelling disclosure. Plaintiff has made no such showing here.

B.     **Withdrawal does not cure the abuse.**

The timing of the Plaintiff's withdrawal strongly suggests a strategic effort to prevent this Court from ruling on the Motion to Quash. Movant believes the Plaintiff withdrew the subpoena not because it was issued in error, but because the motion laid bare the baselessness of the subpoena and exposed a troubling misuse of the legal process. The arguments and evidence in Movant's motion directly undermine any claim that there is a legitimate basis for such intrusive discovery and instead point to Plaintiff's ongoing campaign of intimidation and reputational harm aimed at silencing protected

speech. The repetitive pattern of the Plaintiff to issue subpoenas to content creators then withdrawal them is noted throughout the Court docket. Since July 10th, the Court docket has erupted with filings due to Plaintiff's fishing expedition. 28 U.S.C § 1927 states any attorney or other person who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. In withdrawing the subpoena, Plaintiff seeks to avoid a ruling that could confirm the misuse of judicial authority to pursue personal vendettas or suppress lawful criticism. The Plaintiff's withdrawal - only after the filing of Movant's Motion to Quash - further confirms that the subpoena was not issued in good faith. Rather, its issuance appears to have been intimidation tactics, designed to chill constitutionally protected expression and burden the Movant with legal hardship. This maneuver reflects an attempt to erase from the record the clear signs of abuse rather than confront them. Plaintiff also misguided the Court by stating "Based on the Third Parties' representations made in meet and confers, public statements, and/or information provided in their moving papers, there is no further information required from the Subpoenas as to these specific Third-Parties at this time." (Exhibit K) The statement alludes that the information Movant provided in her motion wasn't already publicly available. Everything noted in Movant's motion was publicly available. Furthermore, Movant has made numerous videos stating that the Movant is not a part of a smear campaign or told by anyone to content on the case. It reiterates that Plaintiff had issued the subpoena for malicious intent to chill Movant's First Amendment right. ABA Model Rules of Professional Conduct: Rule , 4.4 (a) a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person. Plaintiff used the subpoena to embarrass, discredit, and burden the Movant. Public supporters of Plaintiff weaponized the Plaintiff's subpoena to claim this was proof Movant engaged in an alleged smear campaign that in itself has not been confirmed.

C.  **Sanctions are necessary to deter repetition.**

Although Plaintiff withdrew the subpoena, the conduct nevertheless imposed unnecessary burden and was objectively unreasonable. Plaintiff's revolving practice of issuing subpoenas only to withdraw

them places an undue burden on non-parties and risks undermining the integrity of the Court's process. Permitting Plaintiff to repeatedly issue and then withdraw subpoenas directed at citizens discussing this public case invites further abuse, weaponizing the Court's process to silence free expression. While the motion to quash may be moot due to withdrawal, the Court retains full authority to issue sanctions based on conduct that has already occurred. Chambers v Nasco Inc 501 US. 32 1991: the Court of Appeals confirmed the Court can utilize its inherent power for bad-faith conduct in litigation. Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962): Inherent powers are governed not by rule or statute but by the control necessarily vested in Courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. Therefore, the Court still has the ability to issue sanctions to Plaintiff to bring order to the Court and its docket.

V. **CONCLUSION**

Movant respectfully urges this Court to impose the **most severe** sanctions permissible under the law in light of the Plaintiff's abuse of subpoena power. The withdrawal should not shield the Plaintiff from scrutiny or judicial oversight. This conduct reflects not only a disregard for the rules of civil procedure, but an intentional weaponization of the legal system to harass, intimidate, and silence protected speech. Such misuse of judicial authority by a high-profile litigant against a private individual threatens the integrity of this Court and the fairness of the proceedings. Movant therefore asks that the Court exercise its full discretion to sanction the Plaintiff to the **maximum extent** allowed to send a clear message that this kind of conduct will not be tolerated.

Respectfully submitted,

McKenzie Folks @existingtothrive    x_____

Pro Se Movant

15050 W 138th St PO Box 2673

Olathe, KS 66063

913-782-3423

# EXHIBIT A







# EXHIBIT B



# EXHIBIT C

**REQUEST FOR PRODUCTION NO. 16:**

All subscriber information, for the username @existingtothrive associated with Youtube and Google Pay, including but not limited to: (a) the first and last name; (b) registered email address(es); (c) phone number(s); (d) physical address; (e) backup/recovery email address or phone number; (f) subscriber registration information; (g) length of service (including start date) and any premium services utilized; (h) means and source of payment for such services, if applicable (including any credit card or bank account number, or public blockchain data and addresses); (i) Login Internet Protocol (IP) address used for initial registration; and (j) IP address used from May 1, 2024 to the present, with dates and session times; and (k) video upload IP addresses.

# EXHIBIT D



**Armani, Sareen** <SArmani@manatt.com>
to Stephanie, Sarah, me, Esra

Thu, Jul 24, 8:21 PM

Hi McKenzie,

Thank you for your email.

Are you available for a call tomorrow to discuss?

Thank you.

Best,
Sareen

**Sareen Armani**
Associate

**Manatt**, Phelps & Phillips, LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067

# EXHIBIT E



**Armani, Sareen**
to me, Esra, Stephanie, Sarah

Jul 24, 2025, 9:10 PM

Hi there,

Sareen Armani is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

# EXHIBIT F



# EXHIBIT G

McKenzie <themrsfolks@gmail.com>　　　　　　　　　　　　　　　　　　　　Jul 25, 2025, 10:44 AM
to Sareen, Esra, Stephanie, Sarah

Good morning,

Since I am representing myself, I would be more comfortable having our conversations in writing. I will list my questions below for you to respond to. If you have any questions, please let me know. I will answer any question I determine is appropriate.

1.) What is the justification for the subpoena?

2.) How did you determine what content creators you would request data from? The Wayfarer team already stated only ONE content creator was on the list you referenced as your determination for all the creators you requested data from. If you want to clarify that - feel free to do so.

3.) What is the marker for determining if the smear campaign is nonexistent? If you have no evidence to support the claim, when will you drop the allegation?

4.) Is Ms. Lively willing to drop the claims of a smear campaign?

5.) What did your team assume would be found from my Youtube that had one subscriber at the time of receiving the subpoena notice from Google?

6.) What is Ms. Lively willing to do to mitigate the situation?


Thank you

~McKenzie

# EXHIBIT H

**Lively v. Wayfarer Studios et al. (24-CV-10049)** Inbox

**Armani, Sareen**
to me, Esra, Stephanie, Sarah, Katelyn, Kristin

Sat, Jul 26, 2:44 PM

Hi McKenzie,

Thank you for your time. We appreciate it.

In reviewing your moving papers, we have concluded that there is no further information required from the subpoena as to your account at this time. We have notified Google that we withdraw the subpoena as to your username. Please see the attached notice to Google.

Thanks again for your time.

Best,
Sareen

**Sareen Armani**
Associate

**Manatt**, Phelps & Phillips, LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067

# EXHIBIT I

July 26, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Lively v. Wayfarer Studios LLC et al.*, No. 24-cv-10049 (LJL)

Dear Judge Liman,

Movant respectfully notifies the Court that the Plaintiff has now withdrawn the subpoena previously issued to Google seeking Movant's private account data. The subpoena was issued without any showing of necessity or relevance, and it appeared to be an intimidation tactic toward a small independent content creator engaged in protected speech. The timing of the Plaintiff's withdrawal strongly suggests a strategic effort to prevent this Court from ruling on the Motion to Quash. Movant believes the Plaintiff withdrew the subpoena not because it was issued in error, but because the motion laid bare the baselessness of the subpoena and exposed a troubling misuse of the legal process. The arguments and evidence in Movant's motion directly undermine any claim that there is a legitimate basis for such intrusive discovery, and instead point to Plaintiff's ongoing campaign of intimidation and reputational harm aimed at silencing protected speech. In withdrawing the subpoena, Plaintiff seeks to avoid a ruling that could confirm the misuse of judicial authority to pursue personal vendettas or suppress lawful criticism. The Plaintiff's withdrawal - only after the filing of Movant's Motion to Quash - further confirms that the subpoena was not issued in good faith. Rather, its issuance appears to have been intimidation tactics, designed to chill constitutionally protected expression and burden the Movant with legal hardship. This maneuver reflects an attempt to erase from the record the clear signs of abuse rather than confront them.

While the Plaintiff has now withdrawn the subpoena, Movant respectfully asks this Court to review the Motion to Quash and its accompanying evidence in full. The contents of the motion

demonstrate not only that the subpoena lacked legal and factual merit, but that it was issued as part of a broader pattern of harassment, intimidation, and abuse of process. The withdrawal should not shield the Plaintiff from scrutiny or judicial oversight. To the contrary, the Motion to Quash now serves as important documentation of how subpoena power was misused against a private citizen engaged in protected speech.

Movant urges the Court to take judicial notice of this pattern of conduct of the Plaintiff. Movant respectfully urges this Court to impose the **most severe** sanctions permissible under the law in light of the Plaintiff's abuse of subpoena power. This conduct reflects not only a disregard for the rules of civil procedure, but an intentional weaponization of the legal system to harass, intimidate, and silence protected speech. Such misuse of judicial authority by a high-profile litigant against a private individual threatens the integrity of this Court and the fairness of the proceedings. Movant therefore asks that the Court exercise its full discretion to sanction the Plaintiff to the **maximum extent** allowed under Rule 45(d), Rule 11, or any other applicable authority, to send a clear message that this kind of conduct **will not** be tolerated.

Respectfully submitted,

McKenzie Folks - @existingtothrive (Listed as No. 16 on subpoena to Google)
Pro Se Movant
15050 W 138th St PO Box 2673
Olathe, KS 66063
913-782-3423

# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

BLAKE LIVELY,

        Plaintiff,

-v-

WAYFARER STUDIOS LLC, JUSTIN BALDONI,
JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH
US MOVIE LLC, MELISSA NATHAN, THE AGENCY
GROUP PR LLC, JENNIFER ABEL, JED WALLACE,
STREET RELATIONS INC.,

        Defendants.

---------------------------------------------------------------X

24-cv-10049 (LJL)

ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/28/2025

LEWIS J. LIMAN, United States District Judge:

    Blake Lively represents that she has withdrawn her subpoenas to Google and X Corp. as to certain accounts which are the subject of the motions to quash at Dkt. Nos. 445, 472, 473, 474, and 483. *See* Dkt. No. 496. Therefore, the motions must be denied as moot to the extent that the seek to quash the subpoenas as to the relevant accounts.

    To the extent that the motions also seek relief on behalf of other non-parties or seek sanctions and costs, *see, e.g.*, Dkt. No. 472 at 18–19; Dkt. No. 473 at 6; Dkt. No. 484 at 18, the motions are denied. "As a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying the subpoena." *City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019). Movants have not shown any personal interest in whether Google or X produce documents regarding other individuals or accounts. *See Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023). Especially given that Lively has withdrawn the subpoenas as to Movants, there is no cause for the Court to award sanctions or costs.

    The motions to quash are DENIED. The Clerk of Court is respectfully directed to close Dkt. Nos. 445, 472, 473, 474, and 483.

    SO ORDERED.

Dated: July 28, 2025
      New York, New York

                                            LEWIS J. LIMAN
                                         United States District Judge

# EXHIBIT K

**manatt**

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

July 26, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Lively v. Wayfarer Studios LLC et al.*, No. 24-cv-10049 (LJL)

Dear Judge Liman:

Plaintiff Blake Lively writes in response to the Motions to Quash as to specific portions of (1) Ms. Lively's July 3, 2025 document subpoena to Google, LLC d/b/a Youtube ("Google Subpoena") as to third-parties Lauren Neidigh, Ashley Briana Eve, McKenzie Folks, and Kassidy O'Connell, and (2) Ms. Lively's July 3, 2025 document subpoena to X Corp., as to third-party Leanne Newton (the "X Subpoena," together with the "Google Subpoena," the "Subpoenas"; collectively, "Third-Parties"). Dkt. Nos. 445, 472, 473, 474, 483, 484, 486. Based on the Third-Parties' representations made in meet and confers, public statements, and/or information provided in their moving papers, there is no further information required from the Subpoenas as to these specific Third-Parties at this time. Ms. Lively has therefore withdrawn the Subpoenas as to them. Accordingly, Ms. Lively requests that the Court deny the Third-Parties' Motions to Quash as moot.

As the Court knows, a core component of Ms. Lively's claims center on the Wayfarer Defendants' digital media "smear campaign," which sought to manipulate the media landscape against her using "untraceable" sources to paint Ms. Lively as the *aggressor*, instead of the victim. *See, e.g.*, Dkt. No. 84 at ¶¶ 29-45, 303. The Wayfarer Defendants have recently taken to mocking Ms. Lively's reference to an "untraceable" digital campaign, claiming that such a notion "defies common sense." Dkt. No. 460 at 1. As they are well-aware, the term "untraceable" was coined by **Defendant Melissa Nathan** in discussing the blueprint of the Wayfarer Parties' retaliatory plan:

> From: Melissa Nathan
> To: Jennifer Abel (owner)
>
> Hi Jamey, Jen
>
> So incredibly glad that the press went so well today and from what I know, Justin felt incredibly supported. He is lucky to have you all.
>
> We took the day today to do some research and get digital quotes in from the two teams we use that get the best results.
>
> As you are both aware, we are in a predicament that we just do not know the outcome of right now.
>
> Saying that, full transparency is key here, we have seen the most innocuous issues turn giant due to socials or the hugest crisis have no effects on social whatsoever - you just cannot tell at this stage. But, BL does have some of the TS fanbase so we will be taking it extremely seriously.
>
> We also understand audience is not solely JB fanbase but, the studio so it is covering all bases time.
>
> Quote one: $175k - this will be for a 3-4 month period and includes: website ( to discuss) full reddit, full social account take downs, full social crisis team on hand for anything - engage with audiences in the right way, start threads of theories ( to discuss) this is the way to be fully 100%protected.
>
> Quote two $25k per month - min 3 months as it needs to seed same as above - this will be for creation of social fan engagement to go back and forth with any negative accounts, helping to change narrative and stay on track.
>
> All of this will be most importantly untraceable.