UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
BLAKE LIVELY, :
:
Plaintiff, :
: 24-cv-10049 (LJL)
-v- :
: MEMORANDUM &
WAYFARER STUDIOS LLC, JUSTIN BALDONI, : ORDER
JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH :
US MOVIE LLC, MELISSA NATHAN, THE AGENCY :
GROUP PR LLC, JENNIFER ABEL, JED WALLACE, :
STREET RELATIONS, INC., :
:
Defendants. :
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Blake Lively ("Lively") moves to compel non-parties Breanna Butler Koslow ("Koslow") and Katherine Case ("Case") to produce documents allegedly improperly withheld on privilege grounds. Dkt. Nos. 585–86. For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

The Court presumes familiarity with the proceedings in this case and in a related case, *Wayfarer Studios LLC v. Lively*, 25-cv-449 (S.D.N.Y. filed Jan. 16, 2025) (the "Wayfarer Action"). It describes only those allegations necessary to understand its decision. Lively is an actor. Dkt. No. 520 ¶ 56. She co-starred in the film "It Ends With Us" (the "Film") with Justin Baldoni ("Baldoni"). *Id.* ¶ 2. The Film was produced by Wayfarer Studios, LLC ("Wayfarer"), along with Sony Pictures Entertainment. *Id.* ¶¶ 2, 11. Jamey Heath ("Heath") is the Chief Executive Officer of Wayfarer. *Id.* ¶ 11. Steve Sarowitz ("Sarowitz") is a co-founder and

financier of Wayfarer. *Id.* ¶ 26. The Agency Group PR LLC ("TAG") is a media relations firm, and Melissa Nathan ("Nathan") is its founder and head. *Id.* ¶ 29. Case is a former TAG employee, and Koslow is a current TAG employee.[1] *Id.* ¶ 293n. Jennifer Abel ("Abel") is a publicist for Wayfarer and Baldoni. *Id.* ¶ 29. Jed Wallace ("Wallace") is a public relations consultant who offers crisis-mitigation services. *Id.* ¶ 38. The Skyline Agency LLC ("Skyline") is a digital marketing and design services company, and Roza Kalantari ("Kalantari") is its chief marketing officer. *Id.* ¶ 293n.

This case stems from Lively's claims of sexual harassment that she was allegedly subjected to during production of the Film, and from an alleged smear campaign launched by the defendants after filming in retaliation for her claims of sexual harassment. *Id.* ¶ 29. On or about July 31, 2024, Wayfarer retained TAG on Abel's recommendation to provide crisis-management support related to the Film.[2] Lively claims that TAG was retained specifically to engage in "a sophisticated press and digital" campaign to smear her in retaliation for the exercise of her rights to speak up about Wayfarer's misconduct on set. *Id.* ¶ 8. Nathan, Case, and Koslow were allegedly involved in providing these services on behalf of TAG, *id.* ¶¶ 29, 293b, and Wayfarer allegedly retained Wallace for similar purposes, *id.* ¶¶ 65–66. Their support included the creation of a website (the "Website") and monitoring and engagement with the public through social media. *Id.* ¶ 29.

On December 31, 2024, Lively filed a complaint in this Court against Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, and It Ends With Us Movie LLC ("IEWU"). Dkt. No. 1. Lively alleged claims of sexual harassment, retaliation, breach of contract, and intentional and

---

[1] Case ceased to be employed by TAG sometime in December 2024. Dkt. No. 381 at 17:23–24.
[2] TAG claims it was retained on August 2, 2024. Dkt. No. 381 at 17:5–6.

2

negligent infliction of emotional distress. On February 18, 2025, Lively filed an amended complaint adding Wallace as a defendant. Dkt. No. 84. She filed a second amended complaint on July 30, 2025. Dkt. 520.

On January 16, 2025, Wayfarer, Baldoni, Heath, IEWU, Nathan, and Abel filed their own complaint in this Court against Lively, her husband Ryan Reynolds, her publicist Leslie Sloan, and Sloan's company Vision PR, Inc. Wayfarer Action Dkt. No. 1. The Wayfarer Complaint contained claims for civil extortion, defamation, false light invasion of privacy, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, and negligent and intentional interference with prospective economic advantage. *Id.* The complaint was filed along with a supporting 168-page timeline. Dkt. No. 50-1. Leading up to the public filing of the complaint and accompanying timeline, Wayfarer retained Skyline and Kalantari to launch the Website, which contained links where individuals could download these two documents.

Lively filed the current motions on August 8, 2025. Dkt. Nos. 585–86. Case and Koslow submitted a response to the motions on August 12, 2025. Dkt. No. 622. On August 13, 2025, Case and Koslow submitted to the Court an expanded and revised privilege log. Dkt. No. 644-1. Lively submitted a reply on August 15, 2025. Dkt. No. 663. By order of August 27, 2025, the Court directed Case and Koslow to produce the relevant documents to the Court for its review. Dkt. No. 710. Case and Koslow produced the documents on August 29, 2025. Dkt. No. 724. The Court has reviewed the documents *in camera*.

## DISCUSSION

Because Lively's complaint asserts both federal and state claims and the requested materials are relevant to both sets of claims, principles of federal law apply. *See von Bulow ex*

*rel. Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987). Case and Koslow invoke the attorney-client and work-product privileges. Under federal law, "[a] party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *accord United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (internal quotation marks and citation omitted); *accord Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 301 (E.D.N.Y. 1992). Courts have emphasized that "[w]hile the privilege confers important social benefits, it also exacts significant costs" because "[i]t runs counter to the ordinary judicial interest in the disclosure of all relevant evidence." *In re Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (citation omitted); *accord In re Bairnco Corp. Secs. Litig.*, 148 F.R.D. 91, 96 (S.D.N.Y. 1993) (noting that "the attorney-client privilege both advances and impedes the administration of justice"). Accordingly, courts apply the attorney-client privilege "only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (internal quotation marks and citation omitted). "A document is not privileged merely because it was sent or received between an attorney and client. The document must contain confidential communication relating to legal advice." *Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*, 139 F.R.D. 295, 300 (S.D.N.Y. 1991).

"[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow*, 811 F.2d at 144

(quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)). "A showing that the privilege is applicable and has not been waived 'must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence.'" *Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, New York*, 171 F. Supp. 3d 136, 143 (S.D.N.Y. 2016) (quoting *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013)). The party invoking the attorney-client privilege also has the burden of demonstrating that the privilege has not been waived. *See Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. 2015).

"[F]ederal law governs the applicability of the work product doctrine in all actions in federal court." *Weber v. Paduano*, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (quoting *Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs.*, 1998 WL 729735, at *4 (S.D.N.Y. Oct. 16, 1998)). Federal Rule of Civil Procedure 26(b)(3)(A) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . [unless] the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *see McGowan v. JPMorgan Chase Bank, N.A.*, 2020 WL 1974109, at *3 (S.D.N.Y. Apr. 24, 2020). "The party asserting work-product protection must demonstrate that the material at issue '(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" *Id.* (quoting *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d

Cir. 1995) ("*Adlman I*").  "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation," it falls within the protection of the work-product doctrine.  *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) ("*Adlman II*").  The burden of establishing the right to the protection of the attorney work-product doctrine "is on the party asserting it, and 'is not discharged by mere conclusory or *ipse dixit* assertions.'"  *Johnson v. J. Walter Thompson U.S.A., LLC*, 2017 WL 3432301, at *5 (S.D.N.Y. Aug. 9, 2017) (cleaned up) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 225).

"Unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party."  *In re Lifetrade Litig.*, 2022 WL 3644357, at *3 (S.D.N.Y. Aug. 24, 2022); *cf. Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995) (notwithstanding a waiver of attorney-client privilege, documents may still be protected as work product because waiver principles applicable to the attorney-client privilege are not identical to those applicable to work product).  The protection is only waived if disclosure of the work product to the third party has substantially increased the opportunity for potential adversaries to obtain the information.  *See* 8 Wright & Miller's Federal Practice & Procedure § 2024 (3d ed. 2025); *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *5 (S.D.N.Y. Oct. 4, 2024); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 14 (S.D.N.Y. 2022); *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009).

The documents for which Case and Koslow seek protection fall into several categories, which are discussed below.

1. Communications Between Case and Case's Father

Thirteen of the communications are between Case and her father, James Case, who is a

litigator at the firm Dykema Gossett PLLC.  *See* Dkt. Nos. 724-1, 724-2, 724-9, 724-11, 724-20, 724-24, 724-25, 724-31, 724-40, 724-42, 724-43, 724-53, 724-54.  Case claims attorney-client privilege with respect to each of the communications.  *See* Dkt. No. 644-1.  Case argues that the communications are privileged because they involve her "receiving legal advice from her father and retained counsel, having retained his firm as of August 28, 2024." Dkt. No. 622 at 3.

      The attorney-client privilege protects communications where legal advice is sought "from a professional legal advisor in his capacity as such" and the communications relate to that purpose and are made in confidence by the client.  *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (Friendly, J.) (quoting 8 Wigmore on Evidence § 2292 (McNaughton Rev. 1961)).  A client's familial relationship with counsel neither imbues the communications with protection nor deprives them of privileged status.  "The mere fact that an attorney is a [family member] does not mean that he ceases to act as an attorney in providing assistance to the client.  However, it is also true, . . . that the mere fact that a [family member] is an attorney, and may therefore be better able to render assistance, does not necessarily mean that he is not acting as a [family member] when that assistance is given."  *United States v. Burnett*, 1996 WL 1057161, at *7 (E.D.N.Y. Mar. 11, 1996) (citing *United States v. Tedder*, 801 F.2d 1437, 1442–43 (4th Cir. 1986)).  "The fact that a person is a lawyer does not disqualify him as a witness, for he, like any other person, may testify to any competent facts except those which came to his knowledge by means of confidential relations with his client."  *Mod. Woodmen of Am. v. Watkins*, 132 F.2d 352, 354 (5th Cir. 1942); *see Lanci v. Arthur Andersen LLP*, 1998 WL 409776, at *1 (S.D.N.Y. July 21, 1998) (noting that "the privilege does not apply if the lawyer is acting as a friend, relative, accountant or agent," and holding that a plaintiff failed to establish an attorney-client relationship where the evidence indicated that the "plaintiff consulted [his friend], who while

7

admittedly a lawyer, was acting as a friend" (quoting 3 Weinstein's Federal Evidence § 503.13[3][a] (2d ed. 1998))); *In re Kinoy*, 326 F. Supp. 400, 405–06 (S.D.N.Y. 1970) ("The court concludes, upon this record as a whole, that Mr. Kinoy's knowledge is likewise acquired from his parental role, not in any capacity as legal adviser."); *cf. People v. O'Connor*, 447 N.Y.S.2d 553, 556 (4th Dep't 1982) (applying New York's privilege laws and holding that "[t]he client must consult the attorney as an attorney, not as a friend or to engage him for non-legal matters"). "The central inquiry" in determining whether an attorney-client relationship exists is the client's purpose in contacting the attorney. *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 103 (S.D.N.Y. 2002) (citation omitted).

The documents at issue here are inconsistent with the notion that Case's communications with James Case were those made with "a professional legal advisor in his capacity as such," *Kovel*, 296 F.2d at 921, or that Case was communicating with James Case in his capacity as her lawyer rather than as her father. Case claims that she retained James Case's firm as of August 28, 2024. But she offers no support for that claim and the messages from that timeframe undermine the contention that she was consulting her father to obtain legal advice. In the earliest communication on August 24, 2024, James Case asks his daughter whether she has received "[a]ny word from [Nathan]," and when Case replies that she has not heard from Nathan other than receiving a picture in a group chat, James Case expresses the view that "if [Nathan] is really not interested I don't want to waste my guy's time." Dkt. No. 724-1. At the conclusion of the text chain, Case conveys that Nathan "doesn't want to waste anyone's time" and has decided not to file a lawsuit and expresses her thanks to James Case "and his partners" and her apologies "for the past two days." *Id.* It is evident from the messages that Case and James Case are not communicating as client and attorney, but as intermediaries connecting a lawyer at James Case's

8

law firm ("my guy") with a person at Case's firm (Nathan).³ In the next message on August 28, 2024, James Case tells his daughter that "you can tell your client involved with Blake Lively he should now feel free to take any or no action." Dkt. No. 724-2. The message reflects a father offering helpful advice to his daughter; it does not establish that James Case was giving Case legal advice or had formed an attorney-client relationship with her. The next message is not until December 31, 2024, and it mixes communications regarding the family dog, a movie that James Case is watching, and a stray comment that the Wayfarer Parties should "file soon to gain any traction over the rest of the week." Dkt. No. 724-9. This statement sounds in public relations advice from father to daughter, not legal advice. Case offers no affidavit from her or her father that an attorney-client relationship existed between the two, no evidence from James Case's law firm to that effect, no engagement letter, and no evidence that any advice was provided to Case beyond the comments in the text messages. Nor does Case describe the scope of the purported engagement, indicate that anyone at James Case's law firm did any work for Case or ran a conflicts check, assert that Case paid her father or his firm any fee for purportedly representing her, or offer any other evidence that would support the notion that an attorney-client relationship was formed or anticipated.

Case has not established a claim of privilege.

2. Communications That Do Not Include Counsel

Several communications do not include counsel. *See* Dkt. Nos. 724-8 (text between Koslow and Nathan regarding public relations), 724-13 (text between Case and Nathan containing no legal advice), 724-21 (text between Koslow and Nathan containing no legal

---

³ Case does not claim that she was acting as either her father's or Nathan's agent in these communications. *See Kovel*, 296 F.2d at 921.

9

advice), 724-22 (text among Case, Koslow, and Kalantari regarding populating the Website and containing no legal advice).  Although corporate executives may sometimes share legal advice relayed to them by counsel to other corporate executives without waiving the attorney-client privilege, *see Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 88 (S.D.N.Y. 2019); *cf. Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981), these communications were not made for the purpose of obtaining or providing legal advice, and as such, they do qualify as privileged in the first place.

3. Documents Including Kalantari and Wallace

Case and Koslow have withheld on attorney-client privilege grounds several text-message chains that include counsel in addition to certain third parties such as Kalantari of the Skyline Agency LLC and Wallace of Street Relations, Inc.  *See* Dkt. Nos. 724-23, 724-27, 724-28, 724-29 (documents including Kalantari); *see also* Dkt. Nos. 724-4, 724-7, 724-12, 724-17, 724-19, 724-30, 724-32, 724-34, 724-35, 724-38, 724-39, 724-41, 724-44, 724-45, 724-47, 724-48, 724-49, 724-55 (documents including Wallace).[4]

The "disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed." *Universal Standard*, 331 F.R.D. at 86 (quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)).  Case and Koslow argue that "Crisis PR professionals routinely coordinate with legal counsel on both PR and legal matters" and that persons other than Wayfarer and TAG who were included in the text messages were "integral to the common legal strategy."  Dkt. No. 622 at 2.

A lawyer or client may share a privileged communication with a media or public relations

---

[4] Case and Koslow do not assert work-product protection over any of these documents.  *See* Dkt. No. 644-1.

expert without waiving the privilege if the attorneys are "using the public relations consultant 'to implement a specific legal strategy that require[s] the use of a public relations consultant.'" *Universal Standard*, 331 F.R.D. at 92 (citation omitted); *see In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 329 (S.D.N.Y. 2003) (holding that employment of public relations consultants did not waive privilege because the consultants were retained for the purpose of influencing prosecutors not to seek indictment of the client). For reasons that the Court has explained elsewhere, *see* No. 25-mc-347 (S.D.N.Y. filed Aug. 6, 2025), Dkt. No. 31 at 9–11, Case and Koslow have failed to establish that Kalantari and Wallace's inclusion in these messages was either necessary or actually done for the purpose of implementing a specific "legal strategy"; the public relations efforts were not directed at the Court, and they could not have properly been directed at a potential future jury given lawyers' ethical obligations against prejudicing adjudicative proceedings. *See id.*

The fact that the Wayfarer Parties and TAG might have been sensitive to public relations considerations associated with this litigation does not make the public relations or crisis-management experts part of the *legal strategy* or integral to the request or provision of legal advice. *See Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) ("A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice."); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("It may be that the modern client comes to court as prepared to massage the media as to persuade the judge," but that does not make the client's communications "for the former purpose . . . the obtaining of legal advice or justif[y] a privileged status."). TAG and the Wayfarer Parties were free to obtain advice regarding the public relations impact of the

11

litigation, but they could not, by including lawyers in those communications, shield the materials from discovery in this action under the attorney-client privilege.

4. Documents Withheld on Work-Product Grounds

Case and Koslow have withheld the following documents, which include certain non-parties, based on work-product and attorney-client privilege grounds: Dkt. Nos. 724-5, 724-6, 724-14, 724-15, 724-16, 724-33, 724-37, 724-46, 724-50, and 724-52. Because Wallace was included on the communications, TAG and the Wayfarer Parties have waived any claim based on the attorney-client privilege. *See supra* § 3.

The communications over which Case and Koslow claim work-product privilege contain a mixture of legal strategizing and public relations advice. To the extent the communications constitute legal strategizing itself, the fact that the communications are shared with public relations experts does not result in a waiver of the privilege (unlike in the attorney-client privilege context). "[A]n otherwise valid assertion of work-product protection is [not] waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence." *Calvin Klein*, 198 F.R.D. at 55. "This is especially so if . . . the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form." *Id.* By the same token, however, the purpose of the work-product "rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Id.*

Certain of the communications over which Case and Koslow now assert work-product

protection involve pure legal strategizing or are so intertwined with messages that contain public relations advice that they cannot be disentangled. Others contain pure public relations advice. The following materials may be withheld on the basis of work-product privilege: Dkt. Nos. 724-5, 724-6, 724-14 (except CK-In-Camera00000491 through the second-to-last message on CK-In-Camera00000499), 724-15, 724-16, 724-33 (except the last message on CK-In-Camera00001597 through Nathan's message at 10:22 AM on CK-In-Camera00001598; and except Abel's message at 11:42 AM on CK-In-Camera00001599 through CK-In-Camera00001604), 724-37 (except Toskovic's message at 1:20 PM on CK-In-Camera00001662 through the end of the document), 724-46 (except the last message on CK-In-Camera000002004 through the end of the document), 724-50, and 724-52.

5. <u>Communications Between Attorneys and Clients Withheld on Attorney-Client Privilege Grounds</u>

Case and Koslow have withheld the following communications that include only counsel and their clients on attorney-client privilege grounds: Dkt. Nos. 724-3, 724-10, 724-18, 724-36, and 724-51.

Confidential communications between an attorney and client for the purpose of obtaining or conveying legal advice are privileged. Accordingly, the communications at Dkt. Nos. 724-3, 724-36, and 724-51 are privileged. The communications at Dkt. Nos. 724-10 and 724-18 are for the purpose of Freedman obtaining public relations advice. They are not privileged.

## CONCLUSION

The motions to compel are GRANTED IN PART and DENIED IN PART. Case and Koslow shall produce the relevant materials detailed in this Memorandum and Order by

13

September 12, 2025.  The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 585–86.

    SO ORDERED.

Dated: September 9, 2025
       New York, New York

                                        LEWIS J. LIMAN
                                  United States District Judge