# EXHIBIT "C"

```
 1                      CONFIDENTIAL
 2                      ROUGH DRAFT
 3
 4                      N O T I C E
 5      This transcript is an UNCERTIFIED ROUGH DRAFT
 6   TRANSCRIPT ONLY.  It contains the raw output from the
 7   court reporter's stenotype machine translated into
 8   English by the court reporter's computer, without the
 9   benefit of proofreading.  It will contain
10   untranslated steno outlines, mistranslations (wrong
11   words), and misspellings.  These and any other errors
12   will be corrected in the final transcript.  Since
13   this rough draft transcript has not been proofread,
14   the court reporter cannot assume responsibility for
15   any errors.
16
17           This rough draft transcript is intended to
18   assist attorneys in their case preparation and is not
19   to  be construed as the final transcript. It is not
20   to be read by the witness or quoted in any pleading
21   or for any other purpose and may not be filed with
22   any court.
23
24
25
```

```
 1       A.   Visiting a client which is what I do when
 2   my clients are directing films.
 3       Q.   By the way, where was the film shot?  Let's
 4   stick with the first phase of filming, if you know.
 5       A.   In New Jersey.  I believe.
 6       MS. GAROFALO:  Okay. Very briefly, let's
 7   mark as Exhibit 3 another one of your chats.  This
 8   one's Bates stamped WME 510 through 511.  Also dated
 9   November 14th, 2023.
10       (Exhibit 3 for identification.)
11       Q.   BY MS. GAROFALO:  Okay.  And in this one,
12   the second dark blue box about two thirds of the way
13   down, it's a message from you to Mr. Baldoni -- to
14   Mr. Heath, rather; is that correct?
15       A.   So let's see here.
16       Q.   I guess my question is --
17       A.   So what's your question?
18       Q.   -- is that one directed to Mr. Heath or
19   Mr. Baldoni?
20       A.   It looks like this was a conversation
21   between Justin and me.
22       Q.   Okay.  And you say to Mr. Baldoni, "Yup,
23   and I'm there to have your back and remind you, not
24   that you need me to, that you are the man, and you
25   are going to crush this."
```

```
 1   They are your partners.  It was theirs too.  Paren,
 2   i.e., you want to mention this a.m. event, their
 3   acknowledgement of the continued extortion and effort
 4   to gain control of the film.
 5           At the time you sent these suggestions for
 6   letter to Sony, you sent to to Mr. Baldoni, had you
 7   had discussions with anyone at Sony about
 8   Ms. Lively's effective attempts at extortion?
 9           MS. LEADER:  Object to the form.
10           THE WITNESS:  I had on going conversations
11   with Ange Giannetti, the executive on the project,
12   about the behavior that Blake was displaying along
13   the way.  And at this point in time, what was on the
14   table was the premiere issue.
15      Q.   BY MS. GAROFALO:  You were choosing your
16   words very carefully, weren't you?
17           MS. GOVERNSKI:  Objection to form.
18           MS. LEADER:  Object to form.
19           THE WITNESS:  I don't remember my state of
20   mind when I wrote this letter.
21      Q.   BY MS. GAROFALO:  Is it your practice to
22   choose why you are words carefully when conveying an
23   important message?
24      A.   I do my best.
25      Q.   And you used the word extortion in this
```

```
1    chat suggesting to Mr. Baldoni what he might write to
2    Sony, correct?
3            MS. LEADER:  Objection to form.
4            THE WITNESS:  Yes, it's in the text.
5       Q.   BY MS. GAROFALO:  That's a pretty strong
6    word, isn't it?
7            MS. GOVERNSKI:  Objection to form.
8            MS. LEADER:  Object to form.
9            THE WITNESS:  It felt appropriate at the
10   moment.
11      Q.   BY MS. GAROFALO:  You anticipated my next
12   question.  Thank you.  Then you go on to say but
13   don't in any way put Sony on the defensive or indict
14   them.  Then if you can be contrite in some capacity
15   very briefly, acknowledging the two of you had your
16   moments which she would dissect your energy, word
17   choice, and personality frequently that led to mutual
18   discomfort working with one another.  Paren, not
19   everyone gets along kind of thing.  Not all
20   personalities are compatible.
21           Now, when you were suggesting to
22   Mr. Baldoni that he write something to Sony saying,
23   you know, other people have agreements or down
24   playing the agreements, did you believe that
25   Mr. Baldoni was taking Ms. Lively's conduct too
```

1  seriously?
2           MS. GOVERNSKI:  Object to form.
3           MS. LEADER:  Object to form.
4           THE WITNESS:  I'm not really following the
5  question.
6      Q.   BY MS. GAROFALO:  Okay.  I'll withdraw it.
7           You used the word extortion, correct?
8      A.   Yes.
9      Q.   Sounds to me like you believed at the time
10 of this chat July 26, 2024, that it was more than
11 just ordinary incompatibility between Mr. Baldoni
12 and Ms. Lively.  Is that a true statement?
13          MS. GOVERNSKI:  Objection to form.
14          THE WITNESS:  I think my use of the word
15 extortion there was referencing just cumulative
16 behavior that both the studio and Wayfarer and Justin
17 was having to manage.  And so that's why I used the
18 word.
19     Q.   BY MS. GAROFALO:  That would be more than
20 just a disagreement between two different
21 personalities, wouldn't it, Mr. Greenberg?
22     A.   Well, their personalities, you know, again,
23 I think the text speaks for itself.  But I think they
24 were not getting along.  And so I think it's
25 important -- I was suggesting to Justin that he be --