UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

BLAKE LIVELY,                                  :
                                               :    Civ. Action No. 1:24-cv-10049-LJL
                    Plaintiff,                  :
                                               :    Related to:
v.                                             :    Civ. Action No. 1:25-cv-00779-LJL
                                               :
WAYFARER STUDIOS LLC, JUSTIN BALDONI,           :
JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH       :
US MOVIE LLC, MELISSA NATHAN, THE AGENCY        :
GROUP PR LLC, and JENNIFER ABEL,                :
                                               :
                    Defendants.                 :
                                               :
------------------------------------------------------------------- x
JENNIFER ABEL,                                  :
                                               :
                    Third-Party Plaintiff,      :
                                               :
v.                                             :
                                               :
JONESWORKS LLC,                                 :
                                               :
                    Third-Party Defendant.      :
                                               :
_____:

## **<u>WAYFARER PARTIES' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# **Table of Contents**

Page

I.   INTRODUCTION ................................................................................................ 1

II.  THE ALLEGATIONS IN MS. LIVELY'S SECOND AMENDED COMPLAINT.......... 2

III. THE STANDARD FOR JUDGMENT ON THE PLEADINGS ........................................ 4

IV.  FEHA AND THE OTHER CITED CALIFORNIA STATUTES HAVE NO
     EXTRATERRITORIAL APPLICATION........................................................................ 5

V.   PLAINTIFF'S TITLE VII AND FEHA CLAIMS AGAINST IEWUM FAIL BECAUSE
     PLAINTIFF DOES NOT PLEAD THAT SHE EXHAUSTED HER ADMINISTRATIVE
     REMEDIES.............................................................................................................. 9

VI.  THE COMPLAINT FAILS TO STATE RETALIATION CLAIMS UNDER FEHA OR
     TITLE VII............................................................................................................... 11

     A. The SAC Fails to Plead an Adverse Employment Action Within the Scope of FEHA or
        Title VII............................................................................................................. 11

     B. The SAC Fails to Plausibly Plead a Causal Link Between the Protected Activity and
        the Alleged 'Smear Campaign.' ......................................................................... 14

        1. Plaintiff Fails to Show the Requisite Temporal Proximity Between Lively's
           Complaints and the Allegedly Retaliatory Smear Campaign. ................................. 14

        2. The SAC Lacks Factual Allegations to Directly Establish a Retaliatory Purpose.. 16

VII. PLAINTIFF FAILS TO STATE COGNIZABLE DEFAMATION CLAIMS................ 19

     A. The SAC Fails to State Claims for Defamation *Per Se* and False Light Under
        California Law................................................................................................... 19

     B. New York Does Not Recognize a Claim for False Light Based on Privacy And The
        Allegedly Defamatory Statements Are Privileged Under New York Law. ................. 21

VIII. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS. .................................................. 23

IX.  CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abacus Fed. Sav. Bank v. Lim*,
905 N.Y.S.2d 585 (1st Dep't 2010) ........................................................................................23

*Agosto v. New York City Dep't of Educ.*,
982 F.3d 86 (2d Cir. 2020)......................................................................................................15

*Alexander & Alexander of New York, Inc. v. Fritzen*,
68 N.Y.2d 968 (1986) .............................................................................................................23

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ..............................................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007)...................................................................................................................4

*Brady v. NYP Holdings, Inc.*,
2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) .........................................................................22

*Campbell v. Arco Marine, Inc.*,
42 Cal. App. 4th 1850 (1996) ...................................................................................................6

*Choi v. Wolfgang*,
2018 WL 7506173 (C.D. Cal. Sept. 26, 2018) .......................................................................12

*Chukwueze v. NYCERS*,
891 F. Supp. 2d 443 (S.D.N.Y. 2012).....................................................................................15

*CIT Bank, N.A. v. Neris*,
385 F. Supp. 3d 241 (S.D.N.Y. 2019)........................................................................................4

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004)......................................................................................22

*Cozzi v. County of Marin*,
787 F. Supp. 2d 1047 (N.D. Cal. 2011) ..................................................................................12

*DeIuliis v. Engel*,
2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021)........................................................................21

*Diamond Multimedia Systems, Inc. v. Superior Court*,
 19 Cal. 4th 1036 (1999) ........................................................................................6

*Dickinson v. Cosby*,
 17 Cal. App. 5th 655 (2017) ..................................................................................20

*Doctors' Co. v. Sup. Ct.*,
 49 Cal. 3d 39 (1989) .............................................................................................23

*Dodd-Owens v. Kryphon, Inc.*,
 2007 WL 420191 (N.D. Cal. Feb 5, 2007) .............................................................7

*Eisenberg v. Alameda Newspapers, Inc.*,
 74 Cal. App. 4th 1359 (1999) ...............................................................................20

*English v. Gen. Dynamics Mission Sys., Inc.*,
 808 F. App'x 529 (9th Cir. 2020) ...........................................................................7

*Garcia v. Roc Nation*,
 2025 WL 1865965 (S.D.N.Y. July 2, 2025) ........................................................6, 8

*Gonsalves v. Infosys Technologies, LTD.*,
 2010 WL 1854146 (N.D. Cal. May 6, 2010) ...........................................................7

*Gordon v. N.Y.C. Bd. of Educ.*,
 232 F.3d 111 (2d Cir. 2000).................................................................................11

*Gordon-Mallett v. Mount Sinai Hosp. Grp., Inc.*,
 2024 WL 1513910 (S.D.N.Y. Apr. 8, 2024).....................................................11, 14

*Grauer v. UBS Financial Services, Inc.*
 2008 WL 11398936 (S.D.N.Y. 2008) ...............................................................14, 15

*Gu v. The Verge*,
 2023 WL 4599522 (N.Y. Sup. Ct. July 18, 2023) .................................................22

*Hawran v. Hixson*,
 209 Cal. App. 4th 256 (2012) ...............................................................................19

*Hill v. Workday, Inc.*,
 773 F. Supp. 3d 779 (N.D. Cal. 2025) ......................................................5, 6, 7, 8

*Johnson v. City of Loma Lindam*,
 24 Cal. 4th 61 (2000) ..........................................................................................10

*Johnson v. Rowley*,
 569 F.3d 40 (2d Cir. 2009).....................................................................................4

451905.1

*Jones v. Lodge at Torrey Pines Partnership*,
    42 Cal. 4th 1158 (2008) ...........................................................................................11

*Judd v. Weinstein*,
    967 F.3d 952 (9th Cir. 2020) ....................................................................................9

*Kim v. Konad USA Distribution, Inc.*,
    226 Cal. App. 4th 1336 (2014) ................................................................................10

*Kim v. Lee*,
    576 F. Supp. 3d 14 (S.D.N.Y. 2021), *aff'd*, No. 22-61, 2023 WL 2317248 (2d
    Cir. Mar. 2, 2023) ..................................................................................................19

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
    665 F. Supp. 3d 412 (S.D.N.Y. 2023).....................................................................11

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011).......................................................................................5

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A*,
    274 F.3d 683 (2d Cir. 2001).....................................................................................10

*Lewis v. Snow*,
    2003 WL 22077457 (S.D.N.Y. Sept. 8, 2003)........................................................15

*Lively v. Wayfarer Studios LLC*,
    2025 WL 1637019 (S.D.N.Y. June 9, 2025) ...........................................................20

*Marchuk v. Faruqi & Faruqi, LLP*,
    100 F. Supp. 3d 302 (S.D.N.Y. 2015)......................................................................13

*McMartin v. Children's Institute International*,
    212 Cal. App. 3d 1393 (1989) ................................................................................23

*McRae v. Dep't of Corr. & Rehab.*,
    142 Cal. App. 4th 377 (2006) ............................................................................12, 14

*Medix Ambulance Service, Inc. v. Superior Court*,
    97 Cal. App .4th 109 (2002) ...................................................................................10

*Mishk v. Destefano*,
    5 F. Supp. 2d 194 (S.D.N.Y. 1998) .........................................................................12

*Morisseau v. DLA Piper*,
    532 F. Supp. 2d 595 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009).....................15

*Morrison v. National Australia Bank, Ltd.*,
    561 U.S. 247 (2010).................................................................................................6

iv

*O'Connor v. Uber Techs., Inc.,*
58 F. Supp. 3d 989 (N.D. Cal. 2014) ...............................................................7, 8

*Okoli v. Lockheed Technical Operations Co.,*
36 Cal. App. 4th 1607 (1995) ..............................................................................10

*Phillips v. United Food and Commercial Workers Union Local 2013,*
2025 WL 2659087 (S.D.N.Y. Sept. 17, 2025)......................................................10

*PowerDsine, Inc. v. AMI Semiconductor, Inc.,*
591 F. Supp. 2d 673 (S.D.N.Y. 2008)..............................................................20, 21

*Richards v. Dep't of Educ. of City of New York,*
2022 WL 329226 (S.D.N.Y. Feb. 2, 2022)...........................................4, 12, 14, 16

*Rohm v. Homer,*
367 F. Supp. 2d 1278 (N.D. Cal. 2005) ...............................................................9

*Romano v. Romano,*
767 N.Y.S.2d 841 (2003) ......................................................................................23

*Rulenz v. Ford Motor Co.,*
2013 WL 2181241 (S.D. Cal. May 20, 2013).........................................................6

*Rusheen v. Cohen,*
37 Cal. 4th 1048 (2006) .......................................................................................20

*Russo v. APL Marine Servs., Ltd.,*
135 F. Supp. 3d 1089 (C.D. Cal. 2015) .................................................................6

*Sank v. City Univ. of New York,*
2011 WL 5120668 (S.D.N.Y. Oct. 28, 2011) ......................................................15

*Shaw v. McDonald,*
715 F. App'x 60 (2d Cir. 2018) ...........................................................................15

*Sheindlin v. Brady,*
597 F. Supp. 3d 607 (S.D.N.Y. 2022).................................................................22

*Silberg v. Anderson,*
50 Cal. 3d 205 (1990) .....................................................................................20, 21

*Sullivan v. Oracle Corp.,*
51 Cal. 4th 1191 (2011) .........................................................................................6

*Uddin v. City of New York,*
427 F. Supp. 2d 414 (S.D.N.Y. 2006)..................................................................15

v

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)................................................................12

*Ward v. United Airlines, Inc.*,
    9 Cal. 5th 732 (2020) ....................................................................6

*Washington v. California City Correction Ctr.*,
    871 F. Supp. 2d 1010 (E.D. Cal. 2012)................................................16

*Williams v. N.Y.C. Dep't of Correction*,
    2020 WL 509180 (S.D.N.Y. Jan. 30, 2020) ........................................15

*Wilson v. Wavestream Corporation*,
    2024 WL 3914475 (C.D. Cal. May 13, 2024) ......................................7

*Zann Kwan v. Andalex Grp. LLC*,
    737 F. 3d 834 (2d Cir. 2013)............................................................14

*Zappin v. NYP Holdings, Inc.*,
    2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d Cir.
    2019) ........................................................................................22

**Statutes**

42 U.S.C. § 2000e–3(a) ........................................................................11

42 U.S.C. § 2000e-5(e)(1)......................................................................11

Cal. Civ Code §§ 44, 45 ..................................................................19, 20

Cal. Civ. Code § 47(b) ....................................................................20, 21

Cal. Civ. Code § 51.9........................................................................9, 24

Cal. Gov't Code § 12940 ....................................................................5, 11

Cal. Gov't Code § 12960(b) ....................................................................9

Cal. Lab. Code § 1102.5 ..............................................................5, 8, 9, 24

N.Y. Civ. Rights Law § 74 ......................................................................22

Fed. R. Civ. Proc. 12(c) ....................................................................4, 5

## I.    <u>INTRODUCTION</u>

Plaintiff Blake Lively's ("Lively" or "Plaintiff") Second Amended Complaint ("SAC") asserts thirteen causes of action[1] arising from alleged sexual harassment during production of the film "It Ends With Us" (the "Film") and a subsequent "smear campaign" allegedly launched in August 2024, concurrently with the Film's premiere.  As shown below, Plaintiff fails to plead cognizable claims under California's Fair Employment and Housing Act ("FEHA") and other California statutes, for retaliation under Title VII, for defamation *per se* and false light under either California or New York law or for civil conspiracy to commit the underlying torts.  Lively's claims fail on the following grounds, among others:

- FEHA does not have extraterritorial application and thus Plaintiff's FEHA claims (Third, Fourth, Sixth, Sixth and Seventh Causes of Action) should be dismissed with prejudice.  Plaintiff's claims for violations of other California statutes including California Labor Code § 1102.5 (Fifth Cause of Action) and California Civil Code § 51.9 (Thirteenth Cause of Action) fail for the same reason;

- Lively fails to allege an adverse employment action, a requisite for retaliation claims under FEHA (Fourth Cause of Action) and Title VII (Second Cause of Action);

- Lively fails to plead a causal link between her complaints of harassment and the alleged 'smear campaign' as required for retaliation claims under FEHA and Title VII; specifically, Lively fails to plead temporal proximately between the allegedly

---

[1] The SAC does not include a Tenth or Eleventh Cause of Action, but skips from the Ninth Cause of Action to the Twelfth Cause of Action.  The Table of Contents omits the Seventh Cause of Action for Aiding and Abetting FEHA violations.  Dkt. 520, p. 3.

protected activity and the commencement of the alleged 'smear' campaign or a retaliatory purpose;

- Lively fails to allege that she exhausted her administrative remedies against It Ends With Us Movie, LLC ("IEWUM"), a predicate for any FEHA claim against IEWUM;

- Lively's defamation claims (Twelfth and Fourteenth Causes of Action) are barred by California's litigation privilege or New York's fair report privilege, whichever law applies; and

- Lively fails to plead a civil conspiracy, specifically, a tort that all Defendants were capable of committing (Fifteenth Cause of Action).

## II.    THE ALLEGATIONS IN MS. LIVELY'S SECOND AMENDED COMPLAINT

This lawsuit arises from Lively's claim that she was mistreated on the set of the film "It Ends With Us" during the first phase of production (May 2023 to June 14, 2023) and unlawfully retaliated against for reporting sexual harassment that occurred … on the set." SAC, ¶ 1.  Filming began in early May 2023.  *Id*., ¶ 77.  IEWUM and Lively, through her company, Blakel, Inc. entered into an Actor's Loanout Agreement ("Actor's Agreement") with IEWUM for Lively's acting services.  *Id*., ¶ 417; Declaration of Ellyn S. Garofalo ("Garofalo Decl."), Ex. 1.  Wayfarer is not a party to the Actor's Agreement which provides ██████████████████████ ████████████████████████████████████████████████████████ ██████████████████████ *Id*., Ex. 1 at Ex. A, ¶ 15.

The Film was shot in New Jersey and New York, where Lively resides.  *Id*., ¶ 56.  Lively first complained about inappropriate behavior in May 2023.  *Id*., ¶¶ 8, 132.  On May 26, 2023, Lively told Sony that she wanted to file an HR complaint.  *Id*., ¶ 120.  Production May 2023 and

was suspended in in mid-June 2023, due to strikes by the Writers Guild and Screen Actors Guild. *Id*., ¶ 77.  "During that time" (May 2023 to June 14, 2023), Lively "experienced "invasive, unwelcome, unprofessional, and sexually inappropriate behavior."  *Id*., ¶¶ 78.  The SAC details the alleged incidents of inappropriate behavior on the set in Paragraphs 85 through 109.  Before returning to production, on November 9, 2023, Lively presented a list of 17 "Protections for Return to Production" as a condition of her return to complete the Film.  The 17-point list was intended by Lively "to remedy the misconduct that Ms. Lively and others had reported earlier that year." *Id*., ¶ 16, Ex. A.  On November 15, 2023, the Wayfarer Parties agreed to Lively's terms and, on January 19, 2024, the parties executed a contractual "rider" incorporating those terms into the unsigned May 2023 Actor's Agreement. *Id*., ¶ 149.  Wayfarer was not a signatory to the November 2023 rider which was signed by IEWUM only.

On January 4, 2024, the parties participated in an "all hands" meeting in New York where, according to Lively, a plan was "approved for "implementation of [certain protections] that will be adhered to for the physical and emotional safety of [Ms. Lively], her employees and all cast and crew moving forward."  *Id*., ¶ 16.  Production resumed on January 5, 2024, and concluded on February 9. 2024.  *Id*., ¶ 57, Ex. A.  Neither the SAC nor its forerunners identify any act of harassment that occurred in the second phase of filming (January 5 to February 9, 2024).  In fact, on January 14, 2024, Lively assured a cast member that the inappropriate behavior had been stopped and that "It's a professional set and we're getting good work."  *Id*.

On the eve of the Film's premiere and release, rumors of discord on the set already swirling in the press.  Accordingly, on July 31, 2024, the Wayfarer Parties contacted a crisis communication specialist to defuse the negative publicity and protect his reputation as the Film's director.  *Id*., ¶¶ 29, 201.  On August 2, 2024, the crisis management team circulated a "SCENARIO PLANNING"

document with a proposed strategy "should [Lively] and her team make her grievances public." *Id.*, ¶¶ 31, 203. Lively contends that this was the launch of a 'smear campaign' and that in the weeks and months that followed, the Wayfarer Parties "engaged in a sophisticated, coordinated, and well-financed retaliation plan." *Id.*, ¶¶ 26, 35-37. According to Lively, the Defendants "mounted[ed] a well-funded retaliation campaign that sought to 'bury' and 'destroy anyone that challenged [Mr. Baldoni's] brand." *Id.*, ¶ 5. Based on these allegations, Lively asserts claims of sexual, harassment and retaliation under California and federal law, breach of contract, civil conspiracy, defamation *per se* and false light.

## III.    THE STANDARD FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) permits a party to "move for judgment on the pleadings" after the pleadings are closed, but early enough not to delay trial. *CIT Bank, N.A. v. Neris*, 385 F. Supp. 3d 241, 243-44 (S.D.N.Y. 2019). The standard for a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009). Thus, judgment on the pleadings is appropriate where, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense. *Richards v. Dep't of Educ. of City of New York*, 2022 WL 329226, at *6 (S.D.N.Y. Feb. 2, 2022) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007) ("A complaint must offer more than 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further factual enhancement' in order to survive dismissal."). The plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556. A claim has "facial plausibility" where the plaintiff pleads factual content sufficient

4

for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a court considering a Rule 12(c) motion is generally limited to the contents of the complaint, the Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Also, a complaint is deemed to include "materials incorporated in it by reference, and documents that, although not incorporated by reference are 'integral' to the complaint." *Id*.

## IV.    FEHA AND THE OTHER CITED CALIFORNIA STATUTES HAVE NO EXTRATERRITORIAL APPLICATION

Plaintiff asserts claims for sexual harassment, retaliation, failure to supervise and aiding and abetting under California Government Code § 12940 (FEHA), retaliation under California Labor Code § 1102.5 and sexual harassment under California Civil Code § 51.9. The threshold question is whether FEHA or the other cited California statutes have extraterritorial application where, as here, the plaintiff is not a California resident, and the discriminatory conduct did not occur in California. *See Hill v. Workday, Inc*., 773 F. Supp. 3d 779, 797-98 (N.D. Cal. 2025) (dismissing FEHA and California Labor Code § 1102.5 claims asserted by a non-California resident who failed to establish a nexus between the allegedly wrongful conduct and California). "Failure to adequately plead grounds for extraterritorial application of state law constitutes a failure to state a claim on the merits." *Id*. at 792-93 (citing *Morrison v. National Australia Bank, Ltd*., 561 U.S. 247, 253-54 (2010).)

FEHA does not protect non-California residents such as Lively where the allegedly discriminatory conduct occurs outside California. California recognizes a presumption that the

California legislature did not intend a statute to be "operative, with respect to occurrences outside the state … unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *Morrison*, 561 U.S. at 255 ("When a statute gives no clear indication of an extraterritorial application, it has none."); *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 749 (2020) (presumed "that state law is intended to apply only within state borders" and "courts ordinarily will not give extraterritorial effect to legislative enactments absent an affirmative indication that such was the Legislature's intent."); *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059-60, n.20 (1999) ("The presumption against extraterritoriality is one against an intent to encompass conduct occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute."); *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1858-60 (1996) (FEHA "should not be construed to apply to non-residents employed outside the state and when the tortious conduct did not occur in California" and extraterritorial application of FEHA "would raise serious constitutional concerns" as "the Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.); *see also Hill v. Workday Inc.*, 773 F. Supp. 3d 779, 793 (N.D. Cal. Mar. 28, 2025).

The employee or employer's residency is not sufficient to overcome the presumption that FEHA does not apply when the tortious conduct is outside of California. *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094-95 (C.D. Cal. 2015); *see also, Rulenz v. Ford Motor Co.*, 2013 WL 2181241, at *3 (S.D. Cal. May 20, 2013) ("California residency [was] insufficient to defeat the presumption against extraterritorial application" of FEHA); *Garcia v. Roc Nation*, 2025 WL 1865965, at *10 (S.D.N.Y. July 2, 2025) ("FEHA does not protect non-residents when the

tortious conduct takes place outside of California").  To apply California law, the complaint must establish a substantial connection between the situs of the legally relevant conduct to California. *English v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. 2020).

To determine whether there is a substantial connection, courts look to "the location of where the core of the alleged wrongful conduct occurred." *Hill,* 773 F. Supp. 3d at 794 (quotation marks omitted) (quoting *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *3 (E.D. Cal. Feb. 8, 2023)).  A plaintiff cannot merely make a "formulaic, conclusory blanket recitation of 'ratification'" by a non-resident defendant to establish the necessary nexus but must aver a "factual nexus between [the defendant's] California-based activities and the alleged discriminatory conduct." *Gonsalves v. Infosys Technologies, LTD.,* 2010 WL 1854146 at *6 (N.D. Cal. May 6, 2010). Although the Actor's Agreement calls for the application of California law, a contractual choice of law provision does not overcome the California statutes' lack of territorial reach.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014*); see also*, *Wilson v. Wavestream Corporation*, 2024 WL 3914475, at *2 (C.D. Cal. May 13, 2024) ("a California choice-of-law clause incorporates California's presumption against extraterritoriality and its geographical limitation unless there is an indication otherwise").

Lively is a New York resident.  Dkt. 520, ¶ 56.  The alleged acts of sexual harassment occurred during the first phase of production on the New Jersey set and in New York.  Thus, the allegedly hostile work environment which "the core of the alleged wrongful conduct" was not in California, but in New York and New Jersey.  The SAC lacks specific averments of any participation in or ratification of the harassing conduct by Wayfarer or IEWUM in California. *Hill,* 773 F. Supp. 3d at 796-97; *Dodd-Owens v. Kryphon, Inc.*, 2007 WL 420191 at *2-3 (N.D. Cal. Feb 5, 2007) ("If California based employees participated in or ratified the alleged tortious conduct,

7

the complaint must so state with specificity, so the Court can determine if these actions are sufficient to state a claim under FEHA.").

Plaintiff alleges that Wayfarer's principals, Jamey Heath, Wayfarer's President (SAC ¶ 59) and Justin Baldoni, who would have authority to ratify an employee's conduct, were in New York during the filming where they allegedly committed the acts of harassment that are the subject of the Complaint.  Steve Sarowitz, described as a Wayfarer founder and financial backer, is a resident of Highland Park Illinois.  SAC ¶ 60.  The Complaint is bereft of any allegation that Sarowitz participated in or ratified any discriminatory conduct or adverse employment action, much less in California.  In short, FEHA has no extraterritorial application, the presumption against extraterritoriality applies, and Plaintiff's FEHA claims are not enforceable in this Court.

Plaintiff's claim for retaliation under California Labor Code § 1102.5 against Wayfarer and IEWUM, fares no better.  Courts have recognized that neither the express language of Section 1102.5 nor its legislative history indicate the California legislature's intent to extend its application beyond California's borders.  In *O'Connor*, for instance, the court rejected the notion that extraterritorial application of Labor Code §§ 351 and 2802 because the California legislature "failed to specify that either provision should be applied extraterritorially."  58 F. Supp. 3d at 1006.  The court contrasted these sections with other sections of the Labor Code which expressly provide for extraterritorial application noting that "Where it so desired, the California legislature provided for extraterritorial application."  *Id.*; *Hill,* 773 F. Supp. 3d at 797-98 (dismissing Labor Code § 1102.5 claims asserted by a non-California resident for failure establish a nexus between the allegedly wrongful conduct and California).  "In evaluating the extraterritorial application of Cal Labor Code sections 1102.5 and 98.6, the Court must evaluate whether the alleged conduct giving rise to liability – that is, the action that created the litigation—occurred in California."  *Garcia*,

8

2025 WL 1865965, at *18 (quoting *Wilson v. Wavestream Corp.*, 2024 WL 3914475 at * 3).  As explained above, all the allegedly harassing conduct occurred in New York or New Jersey during the first phase of filming and thus Section 1102.5 does not apply.

Finally, Lively alleges that Baldoni and Heath violated California Civil Code § 51.9 which prohibits sexual harassment by any person in a professional relationship with the plaintiff, specifically including directors and producers.  Like its sister statutes FEHA and Labor Code § 1102.5, neither the text nor legislative history of Section 51.9 indicate a legislative intent that the statute has extraterritorial application.[2]

In sum, the lack of extraterritorial application cannot be cured by amendment.  Therefore, Plaintiff's claims under FEHA, California Labor Code § 1102.5 and California Civil Code § 51.9 should be dismissed with prejudice.

## V.    PLAINTIFF'S TITLE VII AND FEHA CLAIMS AGAINST IEWUM FAIL BECAUSE PLAINTIFF DOES NOT PLEAD THAT SHE EXHAUSTED HER ADMINISTRATIVE REMEDIES

Assuming FEHA applies extraterritorially, California Government Code § 12960(b) requires that an employee such as Plaintiff, exhaust her administrative remedies before filing a civil action alleging FEHA violations.  Similarly, to assert a claim under Title VII, a plaintiff may

---

[2] Section 51.9 was intended to fill a gap in FEHA by extending harassment claims to those in professional relationships with the plaintiff.  It does not apply to sexual harassment in the workplace.  *See Rohm v. Homer*, 367 F. Supp. 2d 1278, 1287 (N.D. Cal. 2005) (in amending the Unruh Civil Rights Act to create liability for sexual harassment when there is "business, service, or professional relationship," the California legislature intended to supplement statutes that forbid workplace harassment, not to extend Act into employer-employee context); *Judd v. Weinstein*, 967 F.3d 952, 956 (9th Cir. 2020) (Civil Code section 51.9  prohibits sexual harassment in professional relationships prohibits sexual harassment to business relationships outside the workplace).  Lively alleges harassment in the workplace, on the set of the Film.  Based on the allegation, Lively asserts claims under FEHA and Title VII which prohibit sexual harassment in the workplace.  Both FEHA and Section 51.9 cannot apply.

bring a suit in federal court only if she has filed a timely complaint and obtained a right to sue letter. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A,* 274 F.3d 683, 686 (2d Cir. 2001). Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters. *Id.*; *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345-46 (2014) (citing *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 492 (1996)). Plaintiff has the burden to plead timely exhaustion of administrative remedies, such as filing a sufficient complaint with the California Civil Rights Department ("CRD") and obtaining a right-to-sue letter. *Kim,* 226 Cal. App. 4th at 1345-46 (quoting *Garcia v. Los Banos Unified School Dist.*, 418 F. Supp. 2d 1194, 1215).

Under the FEHA, exhaustion of administrative remedies is "a jurisdictional prerequisite to resort to the court." *Johnson v. City of Loma Lindam*, 24 Cal. 4th 61, 70 (2000) (internal quotes omitted). Therefore, failure to file an administrative charge before commencing suit is ground for dismissal of an action for violation of the FEHA. *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995); *Medix Ambulance Service, Inc. v. Superior Court,* 97 Cal. App .4th 109, 118 (2002). Similarly, under Title VII, failure to exhaust administrative remedies is grounds for dismissal. *Legnani*, 274 F.3d at 686; *Phillips v. United Food and Commercial Workers Union Local 2013*, 2025 WL 2659087, at *6 (S.D.N.Y. Sept. 17, 2025)

On December 20, 2024, Lively filed complaint with the California Civil Rights Department ("CRD") against Wayfarer and ten other defendants and received a right to sue letter for the named parties. Garofalo Decl., Ex. 2. IEWUM, Lively's employer and party to Lively's Actor Agreement and rider, is not identified in Lively's CRD complaint and, as a result, Lively did not obtain a right to sue letter with respect to IEWUM. *Id.*, Ex. 2. Accordingly, IEWUM is entitled to dismissal of Lively's Third, Fourth, Sixth and Seventh causes of action. In addition, as more than 300 days

10

have elapsed since the allegedly unlawful employment practice, IEWUM is entitled to dismissal with prejudice of Lively's First and Second causes of action.  42 U.S.C. § 2000e-5(e)(1).

## VI.    THE COMPLAINT FAILS TO STATE RETALIATION CLAIMS UNDER FEHA OR TITLE VII

### A.    The SAC Fails to Plead an Adverse Employment Action Within the Scope of FEHA or Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) she engaged in a protected activity; (2) the employer was aware of the activity; (3) the employer took a materially adverse employment action against her; and (4) a causal connection between the alleged adverse employment action and the protected activity.  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 112 (2d Cir. 2000); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023); *Gordon-Mallett v. Mount Sinai Hosp. Grp., Inc.*, 2024 WL 1513910, at *18 (S.D.N.Y. Apr. 8, 2024).

California Government Code § 12940(h) (FEHA) similarly provides that it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person" for complaining of sexual harassment or other discriminatory conduct in the workplace.[3]  Retaliation claims under Title VII are broader than under FEHA "because FEHA requires an adverse action for purposes of

---

[3] The employer alone is liable for retaliation under FEHA.  *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1173 (2008).  Plaintiff attempts to blur the lines between Wayfarer and IEWUM, the party to Lively's loan out agreement and Lively's employer.  As noted, Wayfarer is not a party to the loan out agreement for Lively's acting services or the rider.

a retaliation claim to materially affect ... employment whereas Title VII more broadly defines an adverse action as any action that is reasonably likely to deter employees from making or supporting a charge of discrimination." *Choi v. Wolfgang*, 2018 WL 7506173, at *3 (C.D. Cal. Sept. 26, 2018) (citing *Tackitt v. Superior Ct. of California ex rel. Cnty. of Madera*, 2013 WL 5970383, at *4 (E.D. Cal. Nov. 8, 2013)); *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1066-67 (N.D. Cal. 2011) (discussing differences between retaliation claims brought under Title VII and FEHA).

Not all adverse employment actions violate Title VII or FEHA and "it is important to separate significant from trivial harms." *Richards v. Dep't of Educ. of City of New York*, 2022 WL 329226, at * 15-16 (S.D.N.Y. Feb. 2, 2022) (quoting *Burlington Northern and State Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Rather, a plaintiff must show the employer's retaliatory actions had a "detrimental and substantial" effect on the plaintiff's employment. *Mishk v. Destefano*, 5 F. Supp. 2d 194, 202 (S.D.N.Y. 1998); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("plaintiff sustains an adverse employment action only if he or she endures a materially adverse change in the terms and conditions of employment." (citation omitted)); *see also, McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 386 (2006). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Vega*, 801 F.3d at 85 (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Lively does not allege that she was terminated, demoted, deprived of any benefit of her employment with IEWUM, assert any act that may have blocked or interfered with a potential

employment opportunity or other any materially adverse change to the terms of her employment.[4]

The SAC includes only three cursory references to "adverse employment action," each alleging "a

coordinated campaign to cast Ms. Lively in a false light during the publicity and promotion of the

Film and thereafter." *See* Dkt. 520 (¶¶ 372, 391, 398). Lively's claim of an adverse employment

action is based solely the publication of negative publicity commencing in August 2024, after

production ended and after discord on the set spilled into the public eye. *See Marchuk v. Faruqi*

*& Faruqi, LLP*, 100 F. Supp. 3d 302, 311 (S.D.N.Y. 2015) (no adverse employment action where

plaintiff was no longer an employee, worked at a different job and Defendants lacked control over

any aspect of plaintiff's working conditions). Lively's December 2024 CRD complaint

acknowledges that her claims would constitute a ███████████████ Garofalo Decl., Ex. 2,

p. 62 ("████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.").

(Emphasis added.) This Court should decline Plaintiff's invitation to create a "████████████

██████████" by creating a new standard for adverse employment actions. Plaintiff's failure to allege

an adverse employment action, alone defeats Plaintiff's ability to establish a *prima facie* Title VII

or FEHA violation sufficient to survive a motion to dismiss.

---

[4] The SAC demonstrates quite the opposite – after voicing her complaints, Lively was ceded more control over the editing (not called for her in her acting contract) and marketing and ultimately obtaining an executive producer credit. See Dkt. 520 (¶ 162). One might even say that Lively was rewarded after her complaints of inappropriate behavior on the set.

**B.**     **The SAC Fails to Plausibly Plead a Causal Link Between the Protected**

**Activity and the Alleged 'Smear Campaign.'**

Merely pleading an adverse employment action is not enough and a plaintiff must plausibly

allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Richards,* 2022

WL 329226, at *16. "'But-for' causation does not require proof that retaliation was the only cause

of the employer's action, but only that the adverse action would not have occurred in the absence

of the retaliatory motive." *Id*.; *see also*, *Zann Kwan v. Andalex Grp. LLC*, 737 F. 3d 834, 846 (2d

Cir. 2013); *Gordon-Mallett,* 2024 WL 1513910, at *18.

Lively alleges protected activity (complaints of sexual harassment) and a public relations

campaign which commenced in early August 2024 at or about the time of the Film's August 6,

2024 premier (the alleged adverse employment action).  The Complaint, however, does not link

the two, much less plead that the public relations campaign would not have occurred absent a

retaliatory motive.  Simply put, Lively fails to plead causation.

A causal link may be shown by pleading the employer's knowledge that the employee

engaged in protected activities and the proximity in time between the protected action and the

retaliatory employment decision.  *Richards,* 2022 WL 329226, at *15.  A retaliatory purpose can

be shown directly or indirectly by timing where the: protected activity was followed closely in

time by adverse employment action.  *McRae*, 142 Cal. App. 4th at 386-89.

1.     Plaintiff Fails to Show the Requisite Temporal Proximity Between

Lively's Complaints and the Allegedly Retaliatory Smear Campaign.

Over a year passed between Plaintiff's May 2023 complaints and the August 2024 launch

of Defendants' alleged smear campaign.  Dkt. 521 (¶¶ 120, 127, 224).  In *Grauer v. UBS Financial

Services, Inc*., an alleged "smear campaign" was launched more than four months after the plaintiff

engaged a lawyer and more than three months after he resigned, was insufficient to show retaliation. 2008 WL 11398936, at *14 (S.D.N.Y. 2008). The *Grauer* Court found that "While courts may infer such a link where the alleged retaliation occurred shortly after a plaintiff engaged in a protected activity, this time lapse exceeds the limit." *Id.,* citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (dismissing retaliation claim on summary judgment where there was a three-month lapse between the protected activity and the alleged retaliation) and *Lewis v. Snow*, 2003 WL 22077457, at *8 (S.D.N.Y. Sept. 8, 2003) (same); *see also, Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 104 (2d Cir. 2020) ("a gap of 'more than several months' is typically too long by itself to survive summary judgment"); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) ("[T]he temporal proximity between [the plaintiff's protected activity] and the alleged adverse employment action—somewhere between three and six months—is insufficient, standing alone, to establish a causal connection"); *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 617 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009) ("While the Second Circuit has not 'drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports the view that ten or twelve months is too long.'"); *Uddin v. City of New York*, 427 F. Supp. 2d 414, 434 (S.D.N.Y. 2006) ("more than nine months after the last alleged protected activity ... are too remote to establish a causal connection" for a retaliation claim); *Williams v. N.Y.C. Dep't of Correction*, 2020 WL 509180, at *5 (S.D.N.Y. Jan. 30, 2020) ("One year is far beyond what courts in this circuit have determined as temporally close."); *Shaw v. McDonald*, 715 F. App'x 60, 62 (2d Cir. 2018) (twelve-month gap too remote); *Sank v. City Univ. of New York*, 2011 WL 5120668, at *10 (S.D.N.Y. Oct. 28, 2011) (ten months between alleged protected activity and adverse employment action represented a "lack of temporal proximity" that "negates any possible inference" that the action

15

"was motivated by retaliatory animus"); *Washington v. California City Correction Ctr.*, 871 F. Supp. 2d 1010, 1029 (E.D. Cal. 2012) (finding 6-months insufficient to establish a 'very close' temporal promixity).

Lively surfaced her grievances in May 2023 and the alleged smear campaign began in August 2024, fifteen months later.  Even assuming that the January 4, 2024 "all hands" meeting where Lively renewed her complaints is the starting point, there is a seven-month temporal gap between her complaints and the commencement of the so-called "smear campaign" in August 2024. Thus, the alleged retaliation is too remote to establish a causal link.  The lack of temporal proximity refutes any possible inference that the smear campaign was motivated by a retaliatory purpose.  To the contrary, as set forth below, the crisis management/public relations campaign, designed to counter the already negative and escalating publicity spurred by Lively, would have occurred and did occur "in the absence of the retaliatory motive."  *Richards,* 2022 WL 329226, at *16.

        2.      <u>The SAC Lacks Factual Allegations to Directly Establish a Retaliatory Purpose.</u>

The SAC includes two cursory allegations of retaliatory intent (1) that the public relations plan was "embarked" in "***retaliation for Ms. Lively exercising her legally-protected right to speak up about [] misconduct on the set***." (Dkt. 520 (¶ 28) (emphasis in original)) and (2) "Ms. Abel, Ms. Nathan, Wallace and Street Relations, and others employed or engaged by TAG perpetrated a retaliation scheme against Ms. Lively, in collusion with [the Wayfarer Parties]." *id*. (¶ 230).  This is insufficient to show a retaliatory animus or purpose.  In fact, the SAC's own allegations show something entirely different -- that the alleged 'smear campaign' was not retaliatory but an effort to defend Baldoni and Wayfarer against the anticipated storm of negative

16

publicity from Lively and her team's blistering criticism of Baldoni and his work as the Film's director to coincide with the Film's release.

Lively cites text messages (stolen from Jennifer Abel's phone by Stephanie Jones) to support her retaliation claim. These messages do not evidence a retaliatory purpose. To the contrary, they confirm that beginning in late July 2024 – after the completion of production and after the end of Lively's acting services -- Baldoni and the other Wayfarer Parties consulted public relations and crisis management professionals to plan how to counter an anticipated onslaught of negative publicity by Lively about a feud on the IEWUM set and the struggle over control of the production, editing and marketing of the Film. *See, e.g.*, SAC ¶ 186 (May 17, 2024 text from Baldoni to Abel, that, Ms. Lively's husband had blocked him on social media stating "We should have a plan for IF she does the same when [the] movie comes out"); ¶ 190 (it "would be ***helpful to arm us in the case we need to refute any of the claims*** ….."); ¶ 200 (Abel briefed press on the situation and stated to Wayfarer they were "***armed and ready to take this story of Blake weaponizing feminism***"); ¶ 204 (An August 2, 2024 "Scenario Planning" document states "we should be prepared … ***should [Ms. Lively] and her team make her grievances public*** …."); ¶ 208 (Heath stating "That's the most important part of this is how quickly they can shut things things down and place stories in your favor."); ¶ 210 (August 4, 2024 text from Abel to Nathan regarding "reckless thoughts of wanting to plant pieces this week of how horrible Blake is to work with…Just to get ahead of it … She's putting us through hell"); ¶ 214(b) (August 6, 2024 text from Nathan: "this will be for creation of social fan engagement to g***o back and forth with any negative accounts, helping to change narrative and stay on track***") ¶ 225 (Abel inquiring about the cost of "social media mitigation and proactive fan posting to counter the narrative" surrounding

17

Baldoni); ¶ 230 (planning for "suppressing of negative content about Mr. Baldoni, and the amplifying of negative content about Ms. Lively").

Defendants' concerns proved prescient when, on the eve of the August 6, 2024 premier, Lively sidelined Baldoni, instructed cast and crew member to "defriend" him on social media and refused to be seen or photographed with Baldoni at the premier, where Baldoni and his family were banished to the basement until Lively finished her pre-show appearances. The public furor, Baldoni's distress over efforts to "cancel' him and Wayfarer's goal to "flip" the narrative and repair Baldoni's reputation, are reflected in the text messages cited in the SAC. *See, e.g.,* Dkt. 520 ¶ 187 (text from Abel that "***we can't have fans starting to guess why JB [Justin Baldoni] is left out this stuff***"); ¶ 214 (b) ("***helping to change narrative***"); ¶ 244 (text from Nathan that "'the worst is over' and that Mr. Baldoni likely would not be 'cancelled'"); ¶ 236 (concern that over threads beginning to appear on Reddit "speculating about the feud between Ms. Lively and Mr. Baldoni in connection with allegations of competing cuts of the Film"); ¶ 248 (August 10, 2024 text from Nathan stating that Lively "'fucked herself by doing the unfollow thing and insisting on no photos together'"); ¶ 268 (referencing August 13, 2024 text messages that "consisted of drafts of a story outlining Ms. Lively's role in making final cuts to the Film"); ¶ 271 (article addressed Lively's making final cuts to Film); ¶ 275 (Baldoni stating on August 15, 2024 that because of the negative articles "there is no way we can just let this go").

Thus, what Lively characterizes as a 'smear campaign,' began the week of the premiere and was conceived and executed to counter the onslaught of negative press spawned by Lively and her team, quell speculation about an alleged rift between Baldoni and his cast and crew and explain Baldoni's noticeable absence from joint press events and the lack of group photos at the premier. Plaintiff, in fact, admits that the "'plan' was not conceived to respond to any particular allegation—

18

it was entirely about managing the public perception that Mr. Baldoni feared might follow the theoretical possibility that Ms. Lively might decide to un-follow his social media accounts." Dkt. 520 (¶ 186); *see Kim v. Lee,* 576 F. Supp. 3d 14, 32 (S.D.N.Y. 2021), *aff'd*, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023) ("[N]o reasonable employee should expect that the employer-defendant would simply surrender in the face of litigation.").

Planning to counter potentially negative publicity and efforts to defend one's reputation in the face of highly public criticism is not tantamount to a retaliatory "adverse employment action" and Plaintiff fails to plausibly plead the requisite causal link (either directly or through Baldoni's efforts to manage the fallout from media stories about discord on the Film's set and Lively's efforts to sideline Baldoni from the Film's production, editing and marketing). Lively may not like the public criticism she unleashed but the SAC is devoid of facts that might show that these efforts to neutralize negative publicity had a retaliatory purpose. Absent a sufficient factual basis the SAC's conclusory allegations of retaliation fail to establish a *prima facie* showing that the Lively's sexual harassment complaint were the 'but for' cause of the 'smear campaign' as required to plead violations of Title VII or FEHA.

## VII.    PLAINTIFF FAILS TO STATE COGNIZABLE DEFAMATION CLAIMS

Plaintiff's defamation claims fail under either New York or California law.

### A.    The SAC Fails to State Claims for Defamation *Per Se* and False Light Under California Law.

"Defamation requires a publication that is false, defamatory, unprivileged, and has a tendency to injure or cause special damage. *Hawran v. Hixson*, 209 Cal. App. 4th 256, 277 (2012), citing *Taus v. Loftus, supra,* 40 Cal. 4th 683, 720 (2007) and Cal. Civ. Code, §§ 44, 45. The same

requirements apply to false light claims. *Id.,* citing *Kapellas v. Kofman*, 1 Cal. 3d 20, 35, n. 16 (1969).

Plaintiff identifies five post-litigation statements by the Wayfarer Parties' lawyer as defamatory *per se*. Each refutes express allegations in Lively's complaint: Lively was asserting "serious and categorically false accusations against Mr. Baldoni, Wayfarer Studios and its representatives"; Lively made "false allegations of a smear campaign"; (3) Lively's "claims are completely false"; "there was no sexual harassment"; and Lively has stated "false allegations of sexual harassment." *See* Dkt. 520 (¶ 451). The SAC cynically fails to note the timing of the allegedly defamatory statements. However, since the statements address the allegations in the complaint, there can be no dispute that they were made after Lively filed her claims, in the course of litigation. *Id*. (¶ 451).

California's litigation privilege, Civil Code § 47(b), creates an absolute to bar to any defamation claim based on statements made in connection with a judicial proceeding. Section 47(b) "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 211-12 (1990); *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1377 (1999)

The privilege is absolute and applies "to *all* publications, irrespective of their maliciousness." *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 681-82 (2017) (citations and quotation marks omitted); *see also*, *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057-59 (2006) (absolute litigation privilege "not limited to statements made during a trial or other proceedings, but may extent to steps taken prior thereto or afterwards"); *PowerDsine, Inc. v. AMI Semiconductor, Inc*., 591 F. Supp. 2d 673, 682-83 (S.D.N.Y. 2008) (same and applying California law); *Lively v. Wayfarer*

*Studios LLC*, 2025 WL 1637019, at *34 (S.D.N.Y. June 9, 2025).  It protects publications made outside the courtroom and "all torts except malicious prosecution."  *Silberg*, 50 Cal. 3d at 212. "Undergirding the immunity conferred by section 47(b) is the broadly applicable policy of assuring litigants the utmost freedom of access to the courts to secure and defend their rights ..." *PowerDsine,* 591 F. Supp. 2d at 682-83; *see also, Silberg*, 50 Cal. 3d at 214, quoting *Thornton v. Rhoden*, 245 Cal. App. 2d 80, 99 (1966) ("[I]t is desirable to create an absolute privilege ... not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions....").  California's litigation privilege recognizes that a plaintiff cannot on the one hand make accusations in a court filed pleading and then on the other hand use defamation law to silence any opposition.[5]

Since Section 47(b) provides an absolute privilege for all statements made in the course of judicial proceedings, Plaintiff's defamation *per se* and false light claims should be dismissed with prejudice.  Further, the litigation privilege extends to torts except, malicious prosecution and, therefore, Lively's claims based on the alleged 'smear campaign', including retaliation under the FEHA and Title VII, and civil conspiracy, which are based solely on the alleged 'smear campaign; are absolutely privileged and for this reason should be dismissed with prejudice.

**B.     New York Does Not Recognize a Claim for False Light Based on Privacy And The Allegedly Defamatory Statements Are Privileged Under New York Law.**

New York does not recognize a common law "false light" invasion of privacy tort.  *DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021).   The allegedly defamatory statements are absolutely privileged under New York law.  In contrast to California, New York's

---

[5] The allegation that a defense lawyer's denial of claims against his or her clients is defamatory *per se*, is antithetical to the First Amendment and a lawyer's ethical obligation to defend his or her clients – even in public statements in highly publicized action.

litigation privilege does not extend to out of court statements. *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 629 (S.D.N.Y. 2022). However, New York Civil Rights Law § 74 creates the fair report privilege, which provides absolute immunity from civil liability for defamation. *Gu v. The Verge*, 2023 WL 4599522, at *8 (N.Y. Sup. Ct. July 18, 2023) ("Importantly, section 74 protects reporting on allegations made in official proceedings, regardless of whether the underlying allegations are true or false"); *Zappin v. NYP Holdings, Inc*., 2018 WL 1474414, at *7 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d Cir. 2019) ("To invoke the § 74 privilege properly, Defendants need not prove that the statements made [at the proceeding] … were, themselves, accurate; rather, all that matters for the application of § 74 is that the Article is a substantially accurate rendering of what was said, even if the testimony given was not true."). Moreover, "[t]here is no obligation for a report to tell all sides of a story to be substantially accurate." *Brady v. NYP Holdings, Inc*., 2022 WL 992631, at *5 (S.D.N.Y. Mar. 31, 2022), quoting *Zappin,* 2018 WL 1474414, at *8.

These statements by counsel, to the extent they can even be construed as defamatory (which they are not), merely repeat Defendants' assertions made in court and fall within the scope of protected speech under Section 74. Counsel's other statements concerning Plaintiff's motives for making her claims are statements of opinion and not subject to a claim of defamation. New York also protects statements of opinion from claims of defamation. *Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004) ("New York law grants opinions greater protection from defamation actions than does California law."). "When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." *Sheindlin*, 597 F. Supp. 3d at 625-26. "Statements of 'rhetorical hyperbole' or 'imaginative expression' are not actionable, because they 'cannot reasonably be interpreted as stating actual facts' that could be proved false." *Id*.

22

## VIII.    PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS.

Civil conspiracy is not an independent tort and its only purpose is to extend liability beyond the primary wrongdoer to other tortfeasors for all damages ensuing from the wrong, "'irrespective of whether or not he was a direct actor and regardless of the degree of his activity.'" *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511-12 (1994), quoting *Doctors' Co. v. Sup. Ct.*, 49 Cal. 3d 39, 44 (1989), citing *Mox Incorporated v. Woods*, 202 Cal. 675, 677-78 (1927).

To establish a claim of civil conspiracy under either California or New York law, a plaintiff must plead an underlying tort that the alleged conspirators are capable of committing.[6]  Tort liability arising from a conspiracy presupposes that the coconspirator is legally capable of committing the tort, *i.e.*, that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.  *Applied Equip. Corp.*, 7 Cal. 4th at 511-12 ("A cause of action for civil conspiracy may not arise, however, if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing...."); *Doctors' Co.*, 49 Cal. 3d at 44 (co-conspirator must by legally capable of committing the underlying tort); *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ("'a mere conspiracy to commit a [tort] is never of itself a cause of action'… Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."); *Romano v. Romano*, 767 N.Y.S.2d 841, 842 (2003) ("a cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying tort.").

If a privilege applies to the underlying claims, the privilege extends to obviate a conspiracy to commit the immunized, underlying claims. *McMartin v. Children's Institute International,* 212

---

[6] The elements of civil conspiracy are (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585 (1st Dep't 2010); *Applied Equip. Corp.,* 7 Cal. 4th at 511-12.

Cal. App. 3d 1393, 1406 (1989) ("A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve.")  Thus, where the underlying wrongs are privileged, the immunity applies to all conspirators.

Plaintiff's pleading of a civil conspiracy is less than precise, relying solely on the conclusory allegation that "each Defendant committed numerous wrongful, unlawful, and tortious acts pursuant to Defendants' common plan, design, or agreement."  Dkt., 520 (¶ 468).  The SAC leaves Defendants and the Court in the dark as to who conspired with whom to commit what tort. For instance, as only an employer is liable for FEHA retaliation claims, the non-employer defendants (Baldoni, Heath, Sarowitz, Nathan, Abel, TAG and Wallace) have no duty not to retaliate and thus cannot be liable for conspiring to retaliate against Lively.  As explained above, Plaintiff's claims under FEHA, Labor Code § 1102.5, Civil Code § 51.9 and Title VII retaliation claims fail, as do Plaintiff's and Title VII retaliation claims.  Defendants cannot conspire to commit torts that are not actionable.  Nor can Defendants have conspired to defame Lively as her underlying claims are privileged.  The privilege which immunizes the named defendants, also immunizes alleged co-conspirators.  Also, the SAC is bereft of any allegation that Abel, Nathan, Wallace and TAG were involved in the production of the Film when the alleged harassment occurred on the set.  Therefore, they could not, under any stretch of the imagination be liable for the harassment or retroactively conspiring to harass Lively.  Finally, Civil Code § 51.9 applies only to those in a business or professional relationship with Lively.  The SAC does not allege that Nathan, Abel, TAG and Wallace had any duty to Lively arising from a professional relationship and thus these parties cannot be liable for conspiring to violate Section 51.9.  These are only a sampling of the shortcomings in Plaintiff's efforts to plausibly plead of civil conspiracy against ten Defendants, to commit no fewer than eleven torts (and two breaches of contract).

IX.    <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court enter order granting this motion and dismissing the Second through Seventh and Twelfth through Fifteenth Causes of Action with prejudice.

Dated:  September 26, 2025
Los Angeles, CA

**LINER FREEDMAN TAITELMAN + COOLEY**

By:_____/s/ Ellyn S. Garofalo_____
      Bryan J. Freedman*
      Ellyn S. Garofalo*
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
      egarofalo@lftcllp.com
(*Admitted *Pro Hac Vice*)

**MEISTER SEELIG & FEIN PLLC**
      Mitchell Schuster
      Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
      kaf@msf-law.com

25