UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

:

BLAKE LIVELY, et al.,                                      :

                                                          :

                              Plaintiffs,                 :

                                                          :            24-cv-10049 (LJL)

              -v-                                         :

                                                          :            OPINION AND ORDER

WAYFARER STUDIOS LLC, et al.,                             :

                                                          :

                              Defendants.                 :

                                                          :

------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Third-Party Defendant Jonesworks LLC ("Jonesworks") moves, pursuant to Federal Rule

of Civil Procedure 12(b)(6), to dismiss the third-party complaint of Third-Party Plaintiff Jennifer

Abel ("Abel"), which seeks indemnification from Jonesworks for any liability, expenditures, or

losses incurred in connection with the claims against Abel in this action.  Dkt. No. 670.  For the

following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

This case is related to the ongoing proceedings between the actress Blake Lively

("Lively") and various defendants affiliated with the production and distribution of the film *It*

*Ends with Us* (the "Film").  Familiarity with the proceedings is presumed.

Jonesworks is a well-known New York-based public relations firm founded by Stephanie

Jones ("Jones"), who serves as its CEO.  Dkt. No. 639 ¶ 9 (the "Third Party Complaint," or

"Compl.").  Abel is a publicist who resides in Beverly Hills, California.  *Id.* ¶ 1.  Abel was hired

by Jonesworks as Vice President on or about July 9, 2020, with a mandate to oversee

Jonesworks' talent department and to grow its Los Angeles office, which at the time had only

four employees.  *Id.* ¶ 16.  In connection with and as a condition of her employment, Abel signed

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/09/2025__

a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement (the "2020 Employment Agreement"). *Id.* ¶ 17. The 2020 Employment Agreement characterized Abel as an "at-will" employee whose employment was "exclusive" to Jonesworks during the period of her employment. *Id.* ¶ 18. The agreement also had a California choice-of-law provision stating that the agreement "has been made and shall be interpreted in accordance with the laws of the State of California without regard to conflicts of laws principles." *Id.* ¶ 19.

On or about November 22, 2021, Abel and Jonesworks entered into a modified employment agreement (the "2021 Employment Agreement") which changed Abel's employment from at-will to a contractual term and adjusted her title to that of partner. *Id.* ¶ 20. The 2021 Employment Agreement also changed Abel's compensation and provided that Jonesworks would indemnify Abel in limited circumstances. *Id.* Section 10.1 of the 2021 Employment Agreement provides:

> Except to the extent caused by Employee or resulting from a breach of this Agreement by Employee, Company shall indemnify and hold harmless Employee from and against any and all liability, claims, costs, damages, and expenses (including reasonable outside attorneys' fees and court costs) arising out of or in connection with any breach by the Company of the terms of this Agreement or any warranties and representations made herein.

*Id.* ¶ 21. In contrast to the 2020 Employment Agreement, Section 11.7 of the 2021 Employment Agreement further provides: "This Agreement and the performance of the Parties' obligations hereunder will be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles." *Id.* ¶ 22.

Abel was employed by Jonesworks for four years. During that time, she was based out of Jonesworks' Los Angeles office and performed most of her work within the State of California. *Id.* ¶ 24. Abel was the point person with Wayfarer Studios LLC ("Wayfarer") and Justin Baldoni

("Baldoni") during Wayfarer's four-year engagement with Jonesworks.[1]  *Id.* ¶ 27.  She largely managed Jonesworks' work for Wayfarer out of the firm's Los Angeles office and developed a close and trusting relationship with Baldoni, Wayfarer CEO Jamey Heath ("Heath"), and the rest of the Wayfarer team (together, the "Wayfarer Parties").  *Id.* ¶ 26.  On or about July 10, 2024, Abel notified Jones of her departure from Jonesworks.  *Id.* ¶ 28.  Abel offered a six-week transition period, with an end date of August 23, 2024.  *Id.*  Jonesworks terminated Abel's employment on August 21, 2024.  *Id.* ¶ 29.

On December 31, 2024, Lively commenced this action by filing a complaint—superseded on July 30, 2025, by a Second Amended Complaint—asserting claims against Abel for: (a) aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (b) intentional infliction of emotional distress; (c) false light invasion of privacy; and (d) civil conspiracy.  *Id.* ¶¶ 30–31; *see* Dkt. No. 521 (Lively's Second Amended Complaint, or "Lively's Complaint").  The conduct allegedly committed by Abel consisted of public relations activities on behalf of the Wayfarer Parties while they were Jonesworks clients and which was undertaken at Jonesworks' direction.  Compl. ¶ 32.  Jonesworks directed Abel's work on behalf of the Wayfarer Parties, and Jones personally interfered with Abel's handling of her duties.  *Id.* ¶¶ 36–37.  Abel alleges that she was named in Lively's Complaint only because of her duties as a public relations professional at Jonesworks, *id.* ¶ 38, and that Jonesworks itself was not named as a defendant only because Jones and Jonesworks conspired with Lively to exploit Abel's private communications, *id.* ¶ 40.

---

[1] Baldoni was the producer, director, and co-star of the Film.  Wayfarer Studios LLC is a production studio founded by Baldoni.  *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 716 (S.D.N.Y. 2025).

## PROCEDURAL HISTORY

After Lively initiated this case on December 31, 2024, *see* Dkt. No. 1, and filed an amended complaint on January 31, 2025, *see* Dkt. No. 50, Abel filed an answer to the amended complaint on March 20, 2025, *see* Dkt. No. 154.  At the same time, Abel also filed a Third-Party Complaint against Jonesworks seeking statutory and common-law indemnification or, in the alternative, contribution.  *See id.*

On April 14, 2025, Jonesworks filed a motion to dismiss Abel's Third-Party Complaint for failure to state a claim for relief.  Dkt. No. 176.  The motion was accompanied by a memorandum of law in support.  Dkt. No. 177.  Abel filed an Amended Answer to Lively's First Amended Complaint and an Amended Third-Party Complaint on April 28, 2025.  Dkt. No. 187.[2] On May 12, 2025, Jonesworks moved to dismiss the amended Third-Party Complaint for failure to state a claim for relief.  Dkt. No. 210.  It also filed a memorandum of law in support of that motion.  Dkt. No. 211.  Abel filed a memorandum of law in opposition to the motion to dismiss on May 27, 2025.  Dkt. No. 240.  On June 3, 2025, Jonesworks filed a reply memorandum of law in further support of its motion to dismiss.  Dkt. No. 277.

Lively filed her Second Amended Complaint on July 30, 2025.  Dkt. No. 521.  Abel filed an answer to the Second Amended Complaint and her own Second Amended Third-Party Complaint on August 13, 2025.  Dkt. No. 639.

On August 18, 2025, Jonesworks moved to dismiss Abel's Second Amended Third-Party Complaint.  Dkt. No. 670.  The parties agreed to rely on the memoranda of law submitted in connection with the prior motion to dismiss Abel's third-party complaint.  Dkt. No. 671.[3]

---

[2] On May 1, 2025, the Court entered a minute order denying Jonesworks' motion to dismiss the Third-Party Complaint as moot in light of the filing of the Amended Answer and Amended Third-Party Complaint.  Dkt. No. 192.
[3] On August 18, 2025, the Court denied Abel's prior motion to dismiss the Amended Third-Party

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e., whether] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

In evaluating the Complaint, the Court "is limited to the facts alleged in the [pleading] and any documents attached . . . or incorporated by reference."  *Rombach v. Chang*, 335 F.3d 164, 169 (2d Cir. 2004); *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).  Abel has not incorporated Lively's Complaint by reference in her pleading; Abel's Third-Party Complaint references Lively's Complaint only to describe the procedural posture of the case, and "[t]o be incorporated by reference, the complaint must make 'a clear, definite, and substantial reference to the" external document.  *DeLuca v. AccessIT Grp.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)

---

Complaint as moot in light of the filing of the Amended Answer and Second Amended Third-Party Complaint in response to Lively's Second Amended Complaint.  Dkt. No. 672.

(quoting *Helprin v. Harcour, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)); *see Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025). The Court thus takes judicial notice and considers Lively's Complaint only for the fact of its allegations without assuming their truth. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1992). Nor has Abel incorporated by reference her counterclaims alleged in response to a different lawsuit initiated by Jones and Jonesworks, *see Jones v. Abel*, No. 25-cv-779 (S.D.N.Y. filed Jan. 27, 2025). Those counterclaims are therefore not before this court for purposes of the motion to dismiss Abel's Third-Party Complaint.

## DISCUSSION

Jonesworks argues that the Amended Third-Party Complaint should be dismissed in its entirety. It contends that: (1) Abel's first cause of action for California statutory indemnification is barred by the 2021 Employment Agreement's New York choice-of-law provision, Dkt. No. 211 at 11–16; (2) Abel's claim for common-law indemnification must be dismissed because it is inconsistent with the contractual indemnification to which she agreed in the 2021 Employment Agreement and is unavailable because her conduct was outside the scope of her employment, *id.* at 16–23; and (3) Abel has not pleaded a plausible claim for contribution. *Id.* at 23–25.

## I.     Statutory Indemnification Under California Law

Abel's first cause of action seeks statutory indemnification pursuant to California Labor Code Section 2802, which provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). Abel contends that whether or not she is ultimately found liable to Lively, she has incurred expenditures and accrued losses (including attorneys' fees) in defending this action as a direct consequence of the discharge of her duties as a public relations professional employed by Jonesworks. Compl. ¶¶ 47–48. Jonesworks argues

that because Abel agreed that the performance of obligations under the 2021 Employment Agreement would be governed by and construed in accordance with New York law, it can only be required to provide indemnification consistent with New York law and not with California law. Dkt. No. 211 at 11–16. Abel responds that the 2021 Employment Agreement is null and void under California Labor Code Section 2804, which provides that "[a]ny contract or agreement express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void." Dkt. No. 240 at 9–13. She also argues that even if the 2021 Employment Agreement is not null and void, its choice-of-law provision would not reach the California statutory claims. *Id.* at 13–16.

The Court first addresses Abel's argument that this Court need not consider the 2021 Employment Agreement's choice of law provision because that provision, and the Employment Agreement, were void at the time of their execution. Pursuant to California Labor Code Section 2804, an employment agreement that violates the requirement in Section 2802 that an employer indemnify their employee for the discharge of their duties results in the nullification of that contract. Cal. Lab. Code § 2804. To accept that argument would be to presuppose the merits of the Court's determination as to which state's law governs—it "merely begs the question of whether California law, and thus [Section 2804], applies." *Stevens & Co. LLC v. Espat*, 2025 WL 950989, at *9 (S.D.N.Y. Mar. 28, 2025) (quoting *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 91 (S.D.N.Y. 2021)). If California law ultimately applies, Section 2804 would arguably make the 2021 Employment Agreement void because it does not provide for indemnity as required under Section 2802 of the California Labor Code.[4] But that does not then mean that

---

[4] The Court would still need to verify that Abel qualifies as an employee of Jonesworks, which is required for Section 2802 to apply. Whether Abel does so qualify would need to be answered only if the Court determined California law applies to the first cause of action. *See Espat*, 2025

7

California law governs this Court's determination as to the validity of the contract in the first instance. Here, "[t]he Court is sitting in diversity and is required to determine the validity of the provision under the law of New York, the forum state." *Id.* "There is therefore no legal basis for the Court to apply California law to determine the validity of the choice-of-law provision," and thereby the validity of the contract. *Id.* Sitting in diversity, this court "must determine the body of substantive law that applies here with reference to New York's choice of law rules." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).

Abel attempts to distinguish *Espat* by arguing that (1) that opinion did not address whether the contract was void *ab initio*, (2) that the opinion dealt with a different provision of the California Labor Code, and (3) that the opinion did not reach California statutory causes of action. These arguments are not convincing. First, the opinion in *Espat* expressly considered whether the California statute at issue there, California Labor Code Section 925, made "the choice-of-law and choice-of-venue provisions voidable," and found that it did not. *Id.* at *9. Abel's argument here is that the entire contract, rather than any specific provision, is void, but that is not a distinction of legal significance. Second, it is true that *Espat* concerned Section 925 of the California Labor Code, but the Court specifically addressed the fact that if the provision applied, the choice-of-law provision would have been void. Section 925, similar to Section 2802, states that an employer "shall not require an employee who primarily resides and works in California . . . to agree to a provision that would . . . require the employee to adjudicate outside of California a claim arising in California," or "deprive the employee of the substantive protection of California law." Cal. Lab. Code § 925. The law continues that where a provision

---

WL 950989 at *9 n.11.

of a contract violates that Section, the "provision is rendered void at the request of the employee." *Id.* If Section 925 applied, it would "arguably make the choice-of-law and choice-of-venue provisions voidable." *Espat*, 2025 WL 950989, at *9. Nevertheless, the court sitting in diversity was "required to determine the validity of the provision under the law of New York, the forum state." *Id.* And third, the portion of the *Espat* opinion that explained that it did not reach California statutory causes of action merely reflected the distinction between claims that were "statutory" and claims that were "contractual." *Id.* at *10. For statutory causes of action, "[w]hether the relevant statutes apply will be determined by other principles of conflicts of law and statutory interpretation." *Id.* Section 2804 does not create a cause of action; like Section 925 discussed in *Espat*, it modifies how contracts can be made and interpreted under California law.

Other courts that have considered whether Section 2802 of the California Labor Code makes an indemnity provision unenforceable regardless of which state's law is applied have found similarly. In *Palomar v. SMC Corp. of America*, 2023 WL 11962387 (S.D. Ind. Mar. 31, 2023), the court declined to entertain the argument that the contract was unenforceable under Section 2802 where it had already held that under Indiana choice-of-law rules the law to be applied was that of Indiana, and that the contract was enforceable under Indiana law. *Id.* at *11. It held that "[t]he California law upon which [plaintiff] relies has no application here." *Id.* And in *Cherry Creek Mortgage, LLC v. Jarboe*, 2021 WL 3710360 (D. Colo. Aug. 20, 2021), the court held that although the plaintiff invoked Section 2802, under Colorado choice-of-law rules, Colorado had the "greater interest in the determination of these counterclaims." *Id.* at *6. The court therefore dismissed all "counterclaims asserted under California law." *Id.* at *8; *see also T2 Modus, LLC v. Williams-Arowolo*, 2023 WL 7924720, at *3 (E.D. Tex. Nov. 16, 2023)

("Whether the California Labor Code controls despite the presence of a Texas choice-of-law provision creates a tautology: the [c]ourt must employ California law despite the presence of a Texas choice-of-law provision because California law says that it must apply.").

Determining which state's law *does* apply requires analysis of the 2021 Employment Agreement's choice-of-law provision. If that provision is valid, and if its scope covers the conduct at issue in Abel's first cause of action, New York law applies. If it is not, the Court must conduct a conflict-of-laws analysis. "The validity of a contractual choice-of-law clause is a threshold question that must be determined by the law of the forum." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005). "[T]he scope of a choice-of-law clause is also determined by the law of the forum," *id.* at 333, so this Court applies New York law to determine both the validity and scope of the choice-of-law provision in the 2021 Employment Agreement.

Addressing validity first, under New York law, "a choice-of-law provision will be enforced if the chosen law 'has sufficient contacts with the transaction' and there is no 'fraud or violation of public policy.'" *Espat*, 2025 WL 950989, at *5 (quoting *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020)); *see id.* (noting that although some courts have "disputed whether this test incorporates recent New York jurisprudence," district courts are "'bound to follow the Second Circuit's interpretation of New York law' until such time as it is clarified or overruled") (quoting *Willis Re*, 550 F. Supp. 3d at 94)); *see also BDO U.S.A. P.C. v. Rojas*, 2024 WL 3236822, at *6 (S.D.N.Y. June 27, 2024) (explaining that *Moseley* postdates any potentially contrary New York decisions and controls the federal district courts in the Second Circuit). The standard from *Moseley* "does not contemplate a wide-ranging conflicts analysis to determine the

state that is most interested in the transaction, but rather a limited inquiry aimed largely at protecting the interests of New York and its courts." *Espat*, 2025 WL 950989, at *8.

Under this framework, the choice of New York law in the 2021 Employment Agreement is enforceable. Jonesworks is based in New York, is a "well known New York-based public relations firm," and "systematically and continuously conducts and solicits business in New York." Compl. ¶¶ 1, 6, 9. Although Abel resides in California and did most of her work for Jonesworks from California, she visited New York at least on "infrequent business travel." *Id.* ¶ 24. "In a transaction between parties in two jurisdictions in which both jurisdictions have an interest, New York law suggests that the parties should be free to choose the law of either jurisdiction." *Espat*, 2025 WL 950989, at *8 (addressing an employee who "resided in California" but did "at least some" of his work at company headquarters in New York); *Willis Re*, 550 F. Supp. 2d at 95 (employee based in California and company in New York). If the parties had chosen California law—as they did in the 2020 Employment Agreement—that choice would have been respected absent issues of fraud or public policy. That they chose New York does not entitle the choice to any less respect.

The choice-of-law provision does not run into either of the exceptions to enforceability of such provisions—fraud or violation of public policy. Abel does not allege that the 2021 Employment Agreement was the product of fraud. *See* Dkt. No. 240 at 13–15. On public policy, a litigant "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy." *Espat*, 2025 WL 950989, at *9 (quoting *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583–84 (S.D.N.Y. 2018)). The public policy exception applies only where "application of the chosen law would be offensive to a fundamental policy of this state," *id.* (quoting *Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 368–69 (N.Y.

2015)); it does not "concern the general interests of other states in the subject-matter of the contract," *id.*

Although the choice-of-law provision is valid, it only applies to Abel's request for indemnification under California law if such a request is within its scope. "New York courts are 'reluctant to read choice-of-law clauses broadly.'" *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d Cir. 2017) (quoting *Fin. One Pub. Co.*, 414 F. 3d at 335). "New York courts typically apply the law selected in contractual choice-of-law clauses only to causes of action sounding in contract unless the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *16 (S.D.N.Y. June 6, 2022) (quoting *EMA Fin., LLC v. NRusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020)). Here, the 2021 Employment Agreement states: "This Agreement and the performance of the Parties' obligations hereunder will be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles." Compl. ¶ 22. That "narrow" choice of law provision applies only to performance as contemplated under the employment agreement and does not reach other claims "incident to the contractual relationship or other non-contractual causes of action." *Fleetwood*, 2022 WL 1997207, at *16.

Jonesworks argues that the choice-of-law provision's language that it reaches all "obligations hereunder" means it is not narrow and would apply even to non-contractual disputes. *See* Dkt. No. 277 at 5–6. But courts recognize such broad choice-of-law provisions only where the contractual language is clear, such as language clarifying that the chosen state's law must be applied to "any dispute between the parties to this agreement or with respect to any claim arising from the employment relationship." *McPhee v. Gen. Elec. Intern., Inc.*, 736 F.

Supp. 676, 681–82 (S.D.N.Y. 2010), *aff'd*, 426 F. App'x 33 (2d Cir. 2011) (summary order); *see Mayaguez S.A. v. Citigroup, Inc.*, 2018 WL 1587597, at *10 (S.D.N.Y. Mar. 28, 2018) (chosen law applies to "all issues concerning . . . enforcement of the rights and duties of the parties," and to "this Agreement and all claims related to it").  "Hereunder" as used in the 2021 Employment Agreement encompasses only those claims arising from the agreement itself and is not as capacious as those agreements that courts have found to encompass other related claims.  *See Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 555 (S.D.N.Y. 2016) ("'Hereunder' means 'under this,' 'under this written statement,' 'under this agreement,' or 'in accordance with the terms of this document.'") (quoting Webster's Third New International Dictionary 1059 (1993)).

"Extra-contractual claims will not fall within the scope of a narrow choice-of-law provision 'even where the rights at issue are closely related to contractual rights and obligations.'"  *Fleetwood*, 2022 WL 1997207, at *16 (quoting *Mayaguez*, 2018 WL 1587597, at *7).  To that end, narrow choice-of-law provisions do not cover a wide variety of torts, even those that arise in connection with a contract, including fraudulent inducement, fraudulent concealment, negligent misrepresentation, or tortious interference.  *See id.* (collecting cases).  Nor does a narrow choice-of-law provision cover "claims that are non-contractual in nature like promissory estoppel and unjust enrichment claims."  *Id.*  By contrast, claims that "sound in contract," such as a claim that a contract is unconscionable, "fall within a narrow choice-of-law provision."  *Id.*  Applying those principles here, the Court must determine whether Abel's first cause of action sounds in contract, in which case it would be covered by the choice-of-law provision, or if it does not, in which case the provision would not apply.

In her first cause of action, Abel seeks indemnification available under California law for expenditures "incurred by the employee in direct consequence of the discharge of his or her

duties, or in his or her obedience to the directions of the employer."  Compl. ¶ 42 (quoting Cal.

Lab. Code § 2802(a)).  Although the right to indemnification under California law cannot be

applied absent some employer-employee relationship—which here is established by contract—

the right to statutory indemnification is nevertheless external to that contract.  *See Carter v.*

*Entercom Sacramento*, 219 Cal. App. 4th 337, 348 (2013) (noting that although a "contract of

employment must exist for section 2802 to apply," it is "a statutory obligation, not a contractual

one").  The 2021 Employment Agreement, and Abel's performance thereunder, is a prerequisite

for Section 2802 to apply, but whether or not Jonesworks is required to indemnify Abel under

the California Labor Code does not turn on the provisions of the agreement itself—and the

choice-of-law provision is clear that it is only those actions arising under the *agreement* for

which New York law applies.  *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).  Reasoning

by analogy, courts in New York have determined that actions under the New York Labor Law

("NYLL"), which includes provisions mandating a minimum wage, overtime, and spread of

hours pay, are extra-contractual such that they are not covered by a narrow choice-of-law

provision.  *Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3676681, at *2 (S.D.N.Y. July 6,

2016).  Although a claim that an employer did not pay their employee a minimum wage is, like

the claim here, contingent upon that employee's contract of employment, courts have

nevertheless determined that such claims are "outside the scope of forum selection clauses that

are not broadly phrased, including those that are limited to governing 'this agreement,' and

devoid of any broadening language such as 'related to,' or 'in connection with.'"  *Garcia v. S.*

*Grover, CPA, PLLC*, 2018 WL 5818106, at *3–4 (S.D.N.Y. Oct. 19, 2018); *cf. Cuhadar v.*

*Savoya, LLC*, 766 F. Supp. 3d 434, 446 (E.D.N.Y. 2025) (NYLL claims did fall within a

"broader" choice-of-law provision because it included all actions "arising out of" and "relating

to" the agreement). Therefore, the first cause of action for indemnification under California

Labor Code Section 2802 does not sound in contract and does not fall within the scope of the

Agreement's narrow New York choice-of-law provision.

Absent application of the choice-of-law provision, the Court is required to conduct a

conflict of law analysis only if "there is an actual conflict between the laws of the jurisdictions

involved." *In re Allstate Ins. Co.*, 613 N.E.2d 936, 937 (N.Y. 1993). Here, the conflict is

evident; Section 2802 of the California Labor Code only applies under California law, and the

parties have pointed to no equivalent provision under New York law. However, the parties have

not briefed a conflict-of-laws analysis. The inquiry is a "fact-intensive[]" one that often cannot

be resolved at the motion to dismiss stage. *Bristol-Myers Squibb Co. v. Matrix Lab. Ltd.*, 655 F.

App'x 9, 12 (2d Cir. 2016) (summary order). Without briefing or a developed record, the Court

"lacks facts necessary to conduct the context-specific 'center of gravity' or 'grouping of

contacts' analysis required by New York's choice of law principles." *Speedmark Transp., Inc. v.

Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011); *see also Lively v. Wayfarer Studios LLC*, 786 F.

Supp. 3d 695, 735 (S.D.N.Y. 2025). The Court therefore cannot decide at this early stage

whether California law or New York law applies to the first cause of action. Jonesworks' motion

to dismiss the first cause of action is therefore denied.

## II.    Common Law Indemnification

In her second cause of action, Abel asserts that Jonesworks is obligated to indemnify her

for any liability, expenditures, or losses she incurs in connection with Lively's claims under the

common law. Dkt. No. 639 ¶¶ 52–61. Jonesworks argues that Abel is not entitled to common

law indemnification because (1) she agreed to a specifically scoped and narrow contractual

indemnification clause that defines the limits of Jonesworks' indemnification obligations; and (2)

her allegations make clear that she was not acting within the scope of her employment in

connection with the conduct alleged by Lively. Dkt. No. 211 at 16–23. Both parties assume that New York law applies to the implied common law indemnification and contribution claims. *See* Dkt. No. 240 at 16–22; Dkt. No. 277 at 5–10. "[W]here the parties agree that [New York] law controls, this is sufficient to establish choice of law." *Ins. Co. of the State of Penn. v. Equitas Ins. Ltd.*, 68 F.4th 774, 779 n.2 (2d Cir. 2023).

"In an indemnification the entire loss is shifted from the person who has been compelled to pay (the indemnitee) to another upon the imposition of a contingent liability." *Weissman v. Sinorm Deli, Inc.*, 669 N.E.2d 242, 246 (N.Y. 1996). New York recognizes two forms of indemnification.

First, two parties can, by contract, explicitly agree that the loss for a specific contingent liability should be shifted from one party to another. They can agree, for example, that responsibility for a particular type of liability will be assumed by one party or another. *See id.* at 244 (liability for unpaid corporate taxes). They can also agree that a party should be indemnified notwithstanding "its own active negligence" so long as "the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances.'" *N.Y. Tel. Co. v. Gulf Oil Corp.*, 609 N.Y.S.2d 244, 246 (1st Dep't 1994) (quoting *Margolin v. N.Y. Life Ins. Co.*, 297 N.E.2d 80, 82 (N.Y. 1973)). Parties may also single out a particular type of contingent liability that is the subject of a duty to indemnify, as "New York generally permits parties to freely undertake whichever contingencies they choose, including obligations to make payments based on contingencies affecting third parties." *FTI Consulting, Inc. v. Reg'l Health Props., Inc.*, 2022 WL 4625959, at *15 (S.D.N.Y. Sept. 30, 2022). However, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not

intend to be assumed." *Weissman*, 669 N.E.2d at 246 (quoting *Hooper Assocs. v. AGS Computs.*, 548 N.E.2d 903, 905 (N.Y. 1989)).

Second, New York common law implies a right to indemnification under certain circumstances. "Common law or implied indemnification is a 'quasi-contract' doctrine rooted in principles of equity and fairness conceptually related to restitution." *CSC Sci. Co. v. Manorcare Health Servs., Inc.*, 867 F. Supp. 2d 368, 377 (S.D.N.Y. 2011). "To achieve an equitable result in appropriate circumstances, a contract between the parties to reimburse or indemnify is implied by law." *Id.* Where such indemnification is supplied by common law, "the contract is a mere fiction, a form imposed to adapt the case to a given remedy . . . [T]here has been no agreement or expression of assent, by word or act, on the part of either party involved." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (quoting *Bradkin v. Leverton*, 257 N.E.2d 643, 645 (N.Y. 1970)). Implied or common law indemnification recognizes that "a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity." *McDermott v. City of New York*, 406 N.E.2d 460, 462 (N.Y. 1980) (quoting Restatement (First) of Restitution § 76 (1937)). "[T]he predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee," and "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 375 (1st Dep't 1985). Common law indemnity "will generally be available 'in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer.'" *Matzinger v. MAC II, LLC*, 2018 WL 3350328, at *2 (S.D.N.Y. July 9, 2018) (quoting *McCarthy v. Turner Const., Inc.*, 953 N.E.2d 794, 799 (N.Y. 2011)). Thus, if an employee is held liable for

17

following the instructions of an employer who is vicariously responsible for those actions, and whose instructions the employee was required to follow, that employee is entitled to indemnification from the person who gave the instruction. *See Rogers v. Dorchester Assocs.*, 300 N.E.2d 403, 409 & n.2 (N.Y. 1973). Under common law indemnification, however, "[i]f the party seeking to be indemnified is at any fault, they cannot seek indemnification, only contribution as a joint tortfeasor." *Westport Marina, Inc. v. Boulay*, 2010 WL 4340343, at *4 (E.D.N.Y. Oct. 25, 2010).[5]

In this case, Abel requests indemnification under such a quasi-contract theory, while she also has rights under an express contractual provision in the 2021 Employment Agreement regarding indemnification. She does not seek recovery under the 2021 Employment Agreement.

There are circumstances where a valid and enforceable contract "precludes recovery in quasi-contract for losses arising from the same subject matter." *CSC Sci. Co.*, 867 F. Supp. 2d at 377; *see Blanchard v. Blanchard*, 94 N.E. 630, 631 (N.Y. 1911) ("[A] promise by implication does not exist where the parties have made the promise express."). "[W]here there is a contract that expressly outlines the parties' own definition of their respective obligations, then courts are loath, due to considerations of 'both justice and efficiency,' to override those obligations in favor of 'obligations that the law would impose in the absence of agreement.'" *Frio Energy*, 680 F.

---

[5] The claim for common law indemnity can thus be conceived as either a quantum meruit or an unjust enrichment claim. Indeed, "[i]mplied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of another." *Mas v. Two Bridges Assoc.*, 554 N.E.2d 1257, 1262 (N.Y. 1990). Courts often address a claim of unjust enrichment and a claim of quantum meruit "as a whole since the latter is merely the means by which the former is remedied." *Strauss v. Hearst Corp.*, 1988 WL 18932, at *9 (S.D.N.Y. Feb. 19, 1988); *see Frio Energy*, 680 F. Supp. 3d at 337 ("The Court analyzes quantum meruit and unjust enrichment together as a single quasi contract claim." (cleaned up) (quoting *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 420, 460 (S.D.N.Y. 2021))).

Supp. 3d at 340 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)).

To preclude recovery in quasi-contract, however, an express contractual provision must concern

the same particular subject matter; it "'must specifically address' the actions that gave rise to the

dispute.  That is to say, the contract must clearly cover the dispute between the parties."  *Id.* at

338 (quoting *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 193–94 (S.D.N.Y. 2018),

*reconsideration denied*, 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018)); *see Goldman v. Metro.*

*Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005).  The fact that the parties have agreed on

indemnification for some contingent liability on some conditions does not necessarily indicate

that they intended to preclude common law restitution for other contingent liabilities.  An

express indemnification may be intended to supplement rather than supplant the indemnification

provided by the common law of New York.  Two parties may, for example, decide that a person

should be indemnified without regard to fault as to a particular claim, without intending to

eliminate all right to recovery for claims as to which the putative indemnitee bears no fault

whatsoever.  Indeed, any agreement by contract to indemnify is constructed narrowly, and any

such provision can cover only the conduct specifically delineated.  *Cf. Levine v. Shell Oil Co.*,

269 N.E.2d 799, 801 (1971) ("Since one who is actively negligent has no right to

indemnification unless he can point to a contractual provision granting him that right, a rule has

evolved under which courts have carefully scrutinized these agreements for an expression of an

intent to indemnify and for some indication of the scope of that indemnification.").

Applying those principles, New York courts have found that a claim for common law

indemnity may lie even where there is a contractual indemnity clause.  In *Hawthorne v. South*

*Bronx Community Corp.*, 582 N.E.2d 586 (N.Y. 1991), the New York Court of Appeals

addressed one such situation.  It determined that "[p]lacing an indemnity provision in the

contract did not alter" the common law duty to indemnity, "for the mere existence of an indemnity provision does not indicate an intent to replace common-law liability with contractual liability." *Id.* at 588. The contractual indemnification provision in *Hawthorne* demonstrated only that one party "was assuring" another "that they would not sustain loss on account of injuries occurring at the construction site through" their own fault. *Id.* Because that provision did not touch on the kind of indemnity provided by common law, it did not preclude an action in quasi-contract; "both a contractual duty and a common-law duty to indemnify existed." *Id.*; *see also Zurich Ins. Co. v. Lumbermen's Cas. Co.*, 649 N.Y.S.2d 660, 661 (1st Dep't 1996) (explaining that where liability was found at the district court on both "contractual and common-law grounds," "[c]ontractual and common-law indemnity may coexist")[6]; *Lamela v. Verticon, Ltd.*, 128 N.Y.S.2d 91, 95 n.4 (3rd Dep't 2020) ("We do not dispute that it is not only common but also proper for a party who is benefited by a contractual indemnity clause to alternatively plead common-law indemnity."). Federal courts have recognized, too, that "the fact that the parties entered into a contractual indemnification provision does not abrogate any responsibility that [a party] may have under New York common law to indemnify," and that "[t]o hold otherwise would result in unjust enrichment to" the other party. *Casey ex rel. Casey v. Ryder Truck Rental*, 2005 WL 1150228, at *21 (E.D.N.Y. May 16, 2005); *see Gomez v. Preferred Rentals*, 1997 WL 749389, at *10 n.11 (S.D.N.Y. Dec. 3, 1997) (same).

In *CSC Scientific Co.*, the court stated broadly that "[s]ubject to exceptions not applicable

---

[6] Although *Hawthorne* and *Zurich Insurance Co.* arose in the insurance context, that does not change the broader applicability of their holdings as to the coexistence of a contractual and common law duty to indemnify. It was the insured party in those cases that was liable for the alleged conduct and whose requirement to indemnify drove the court's analysis, not the insurers. *See Hawthorne*, 582 N.E.2d at 587 (explaining that it is the insured subcontractor held liable to indemnify the owner and general contractor for injuries sustained by one of the subcontractor's employees).

here, a valid and enforceable contract generally precludes recovery in quasi-contract for losses arising from the same subject matter." 867 F. Supp. 2d at 377. But that case is distinguishable on its facts. At issue in *CSC Scientific* was the allocation of liability for tort damages paid to a plaintiff among three successive owners of a business engaged in the manufacture of asbestos-containing products: Manorcare Health Services, Inc. ("Manorcare"), which owned the business from 1957 to 1976, CSC Scientific Company, Inc. ("CSC Scientific"), which owed the business between 1976 and 1979, and VWR International ("VWR"), which owed the business after 1979. *Id.* at 371. The tort plaintiff ultimately settled with Manorcare and VWR (no case having gone forward against CSC Scientific), and CSC Scientific agreed to indemnify VWR for the sale of asbestos-laden products after July 31, 1976, when VWR purchased the business. The court rejected CSC Scientific's contractual indemnification claim as against Manorcare for the sums paid to VWR and, having rejected the contractual indemnification claim, also rejected the common law indemnification claim. The acquisition agreement between Manorcare and CSC Scientific (the "CSC-Manorcare Agreement") explicitly addressed the allocation of liability between the two arising from sales contracts and purchase orders transferred to CSC Scientific. *Id.* at 374. Although Manorcare agreed to indemnify and hold harmless CSC Scientific from losses and damages arising from claims not expressly assumed by CSC Scientific under the CSC-Manorcare Agreement, under that same agreement, CSC Scientific assumed all liabilities and obligations of Manorcare arising after the closing date. *Id.* CSC Scientific had "expressly assumed liability" for the sale of asbestos-laden products for which it had agreed to indemnify VWR and thus could "not obtain contractual indemnification from Manorcare for amounts paid by CSC Scientific under the CSC-VWR Settlement." *Id.* at 376. And having reached a contractual agreement with Manorcare on that subject matter, the court concluded that CSC

21

Scientific could not "circumvent[] [the agreement] by proceeding under an equitable theory of common law indemnification." *Id.* at 378.  In essence, CSC Scientific's argument would have rendered the parties' explicit agreement regarding the allocation of responsibility for sales of asbestos products illusory, in violation of the established canon that all language in a contract is to be given meaning.  *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.").

The *CSC Scientific* court did not hold that the inclusion of a contractual indemnification provision in a contract categorically precludes a common law indemnification claim, and it has not been so understood by the courts that have followed it.  Those courts have recognized that the inquiry is a context-specific one, and that the existence of a contractual indemnity provision is not a *per se* bar on recovery under common law implied indemnity.  *See CVS Pharmacy, Inc. v. Press Am., Inc.*, 2018 WL 318479, at *7 (S.D.N.Y. Jan. 3, 2018) (contractual provision might preclude a common law claim, but it is "too soon to determine whether there was a valid and enforceable contract governing the same subject matter"); *Emps. Ins. Co. of Wausau v. Harleysville Ins. Co. of N.Y.*, 759 F. Supp. 3d 344, 356–57 (E.D.N.Y. 2024) (noting only that it is "possible" a contractual provision might preclude a common law indemnification claim); *PNBC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 370 (S.D.N.Y. 2014) (parties conceded the indemnification provision precluded common law indemnification where it was "duplicative of its breach-of-contract claim").[7]

---

[7] *CSC Scientific* distinguishes *Hawthorne* on a different basis—namely, that an "exception" to the rule that a contractual indemnification provision precludes an action for implied indemnification exists "almost exclusively in cases involving multiple insurers covering a single

Turning to the facts at hand, Jonesworks argues that the contractual indemnification provision in the 2021 Employment Agreement precludes Abel's claim for common law indemnification because it limits indemnification to claims connected to a breach by Jonesworks of the 2021 Employment Agreement, and because it carves out liabilities caused by Abel or resulting from a breach by her of the Employment Agreement.  Dkt. No. 211 at 17.  The 2021 Employment Agreement between Abel and Jonesworks provides in Section 10.1 that:

> Except to the extent caused by Employee or resulting from a breach of this agreement by Employee, Company shall indemnify and hold harmless Employee from and against any and all liability, claims, costs, damages, and expenses (including reasonable outside attorneys' fees and court costs) arising out of or in connection with any breach by the Company of the terms of this Agreement or any warranties and representations made herein.

Compl. ¶ 21.

The 2021 Employment Agreement does not "clearly cover" the same subject matter as the quasi-contract theory under which Abel seeks common law indemnification.  *See Frio*, 680 F. Supp. 3d at 338.[8]  The contractual indemnity provision is narrow addressed only to claims connected to a breach of the 2021 Employment Agreement.  It does not address claims arising from Abel's discharge of her responsibilities as an employee of Jonesworks, acting at the direction of Jonesworks.  There is further no indication from the face of the provision that the

---

insured."  867 F. Supp. 2d at 377 n.10.  "In those cases," the court continued, "coexisting common law and contractual indemnification claims concerning the same subject matter are recognized where the classification of the claim as common law or contractual is determinative of which party bears the burden of indemnification, and recognition of both types of indemnification is required to allocate the responsibility equitably amongst the insurers."  *Id.* But that conclusion presumes the answer to the very question at stake in *Hawthorne*—whether the insured was liable for both common law and contractual indemnification.  In the absence of a conclusion that the insured was liable for common law indemnification, there would be no equitable basis for an insurer who provided coverage only for common-law indemnification to share responsibility for the loss.

[8] The Court bases its judgment, as it must, on the allegations of the Complaint, as neither party has provided the Court with a copy of the 2021 Employment Agreement.

parties intended to preclude claims for common law indemnification arising not from a breach by Jonesworks of the 2021 Employment Agreement but by its directions to Abel *de hors* the agreement. *See Sternberg, Inc. v. Walber 36th St. Assocs.*, 594 N.Y.S.2d 144, 145 (1st Dep't 1993) (holding that where a contract is "silent" as to a specific "entitlement" or right, it will not "preclude the plaintiff's claim for quantum meruit"); *Union Bank, N.A. v. CBS Corp.*, 2009 WL 1675087, at *8 (S.D.N.Y. June 10, 2009) (preclusion "as a matter of law" is only appropriate if the contractual provision unambiguously covers the "instant dispute"); *see also id.* at *8 n.8 (distinguishing cases in which courts found it clear that a contract governed the same subject matter as an unjust enrichment claim and so precluded the second cause of action). The recognition of Abel's common law right of indemnification would not render illusory any term of the 2021 Employment Agreement. If Abel is forced as a result of the Lively lawsuit to assume liability that belongs exclusively to Jonesworks, the 2021 Employment Agreement does not preclude her claim to recover those sums on the theory that Jonesworks was unjustly enriched by being relieved of that liability. Thus, giving "effect to the parties' expressed written intent" to protect Abel from breach by Jonesworks does not lead to the conclusion that by doing so the parties similarly intended to forgo all other forms of quasi-contract recovery that might be provided at common law. *CSC Scientific*, 867 F. Supp. 2d at 377 n.10.

That does not end the inquiry. Abel's claim for recovery under common law indemnity may proceed only if she has plausibly alleged that Jonesworks was vicariously liable for the conduct in the underlying action, and that Abel herself was not negligent or responsible in any part. *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 687 F. Supp. 3d 405, 418 (S.D.N.Y. 2023) ("[A]s a general matter, 'a party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence.'" (quoting *McCarthy*, 953 N.E.2d

at 801)).  Abel argues that because she undertook the actions for which she has been sued by
Lively while she was an employee at Jonesworks and in the course of her employment for
Jonesworks, Jonesworks is vicariously responsible for her conduct, and should be standing in her
shoes as the defendant in the case.  That tracks the "classic case" for implied indemnity, which
"permits one held vicariously liable solely on account of the negligence of another to shift the
entire burden of loss to the actual wrongdoer."  *17 Vista Fee Assocs. v. Teachers Ins. & Annuity
Assoc. of Am.*, 693 N.Y.S.2d 554, 557 (1st Dep't 1999).  "Thus, for example, where the master
had been held liable for the tort of his servant, on a theory of *respondeat superior*, but the master
himself was free from wrong, the master was entitled to indemnification from his servant."
*D'Ambrosio v. City of New York*, 435 N.E.2d 366, 368 (N.Y. 1982).  So too in reverse; if Abel
was not negligent and acted merely at the direction of Jonesworks, the equitable outcome would
be for Jonesworks to indemnify the faultless employee.  "An agent, compelled to defend a
baseless suit, grounded upon acts performed in his principal's business, may recover from the
principal the expenses of his defense."  *Admiral Oriental Line v. United States*, 86 F.2d 201, 202
(2d Cir. 1936); *see* Restatement (Second) of Agency § 439 (1958) ("[A] principal is subject to a
duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for
. . . payments of damages to third persons which he is required to make on account of authorized
performance of an act which constitutes a tort.").

Jonesworks argues that no vicarious liability under *respondeat superior* exists here
because Abel acted in pursuit of her own interests rather than those of Jonesworks and because
Jonesworks could not have foreseen her conduct.  Dkt. No. 211 at 18–23.  Under the doctrine of
*respondeat superior* in New York, "an employer may be vicariously liable for the tortious acts of
its employees only if those acts were committed in furtherance of the employer's business and

within the scope of employment." *N.S. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002).

The tortious conduct must have been "generally foreseeable and a natural incident of the

employment." *Judith M. v. Sisters of Charity Hosp.*, 715 N.E.2d 95, 96 (N.Y. 1999).  If, by

contrast, an employee commits such a tort "for wholly personal motives," that conduct is not

covered.  *Id.*; *see Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013) (a nurse's texting

of confidential information about a patient to a relative had "nothing to do with" the patient's

treatment, and so was outside the scope of the nurse's employment); *Webb v. United Health

Servs., Inc.*, 201 N.Y.S.3d 293, 296 (2023) (an action taken "out of spite" is a purely personal

one).  Employee conduct that is unforeseeable is not covered either, including actions that are a

"significant departure from the normal methods of performance of the duties" of the employee.

*Rivera v. State*, 142 N.E.3d 641, 646 (N.Y. 2019); *see Fernandez v. Rustic Inn, Inc.*, 876

N.Y.S.2d 99, 102–03 (2d Dep't 2009) (violent propensities of an employee not foreseeable);

*Danko v. Forest Lake Camp, Inc.*, 882 N.Y.S.2d 280, 281 (2d Dep't 2009) (counselor throwing

flashlight at camper was not foreseeable).  However, mere "errors of judgment" do not constitute

unforeseeable employee conduct.  *Dkyes v. McRoberts Protective Agency, Inc.*, 680 N.Y.S.2d

513, 514 (1st Dep't 1998).  The question of whether an employee is acting within the scope of

their employment "is one of fact."  *Margolis v. Volkswagen of Am., Inc.*, 908 N.Y.S.2d 479, 480

(4th Dep't 2010) (internal citation omitted).

Abel alleges that she worked with the Wayfarer Parties as "clients of Jonesworks," and

that Jonesworks "profited and was enriched by fees paid" by them.  Compl. ¶¶ 54–55.  Her

complaint states also that the "conduct alleged by Plaintiff to have been committed by Abel and

to have caused harm to Plaintiff consists of public relations activities on behalf of Wayfarer and

Baldoni during the time they were clients of Jonesworks.  To the extent any such conduct by

Abel was undertaken as alleged . . . it was undertaken in obedience of Jonesworks' directions." *Id.* ¶ 32. Abel continues that "Plaintiff's allegations against Abel . . . are of conduct and communications directed at the press and the public to garner publicity and to eliminate or minimize bad publicity for the clients of Wayfarer and Baldoni—activities which are the very essence of the public relations profession." *Id.* ¶ 35. In sum, Abel alleges that she was named as a defendant "only because of, and in direct consequence of," her "duties as a competent public relations professional employed by Jonesworks." *Id.* ¶ 38. Her allegations are sufficient to make plausible the inference that she conducted the actions at issue in the Lively Complaint in the course of her employment at Jonesworks and at the direction of Jonesworks, and that this conduct was neither done with wholly personal motives nor in a way unforeseeable to Jonesworks.[9]

Abel must also have plausibly alleged that she was herself faultless in order to state a claim for common law indemnification. Abel alleges that she "was not at fault and bore no responsibility for Plaintiff's claims or the alleged loss or damage incurred by Plaintiff." *Id.* ¶ 60. That is so because she was an employee of Jonesworks who undertook said conduct "in obedience of Jonesworks' directions." *Id.* ¶ 32. In light of the fact that Abel was Jonesworks' employee, that the company was in the business of public relations, and that the Wayfarer Parties were their client, such an inference is plausible. To succeed on her claim for indemnification, Abel will "bear the ultimate burden to show that [she] 'may not be held responsible in any degree'" with respect to the tort claims against her by Lively. *Westport Marina*, 2010 WL

---

[9] Jonesworks' argument to the contrary relies primarily on allegations arising out of Abel's counterclaims in a different case, *see Jones v. Abel*, No. 25-cv-779 (S.D.N.Y. filed Jan. 27, 2025). As described *supra*, Abel did not incorporate her counterclaims in that proceeding into her pleading in the instant proceeding.

4340343, at *6 (quoting *Rosado v. Proctor & Schwartz, Inc.*, 484 N.E.2d 1354, 1357 (N.Y. 1985)).

Jonesworks' motion to dismiss the second cause of action is accordingly denied.

## III. Contribution

Abel's third cause of action is for contribution. She alleges that to the extent she is found culpable for any injury which Lively may be found to have suffered, Jonesworks is jointly responsible as a concurrent wrongdoer. Dkt. No. 639 ¶¶ 62–66. Contribution differs from common law indemnification because it is available to a party even when "their wrongdoing contributes to the damage or injury involved." *Trs. of Columbia Univ.*, 492 N.Y.S.2d at 376. "The right to contribution and apportionment of liability among alleged wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries." *Id.* at 375–76. That is, the duty "may be one owed not merely to the party that was allegedly injured . . . but also to another party, such as the party seeking contribution." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010); *see Raquet v. Braun*, 681 N.E.2d 404, 407 (N.Y. 1997) (It is a "well-established" principle in New York that "a defendant may seek contribution from a third party even if the injured plaintiff has no direct right of recovery against that party."). "The crucial element in allowing a claim for contribution to proceed is that 'the breach of duty by the contributing party must have had a part in causing the injury for which contribution is sought.'" *Id.* (quoting *Raquet*, 681 N.E.2d 404 at 407).[10]

---

[10] Jonesworks argues that if Abel has successfully alleged a cause of action for contribution, her cause of action for common law indemnity must fail, because indemnity can exist only where Abel is not at fault, and contribution is available only where the parties share the fault. Dkt. No. 211 at 25 n.4; Dkt. No. 277 at 10; *see Amusement Indus.*, 693 F. Supp. 2d at 326 ("[I]ndemnity is no longer available under New York law where the proposed indemnitee bears fault for the injury for which it seeks indemnity."). At the motion to dismiss stage, before fault has been

Abel alleges that Jonesworks was liable for the conduct described in Lively's Complaint, and that to the extent Abel is found to be culpable, "Jonesworks is jointly responsible and a concurrent wrongdoer." Compl. ¶ 64. That is based both on the fact that Jones "personally interfered with Abel's competent handling of her duties," *id.* ¶ 79, and that the work complained of by Lively was "undertaken [by Abel] in obedience of Jonesworks' directions" as its employee, *id.* ¶ 32. Abel has plausibly alleged that Jonesworks' conduct "had a part in causing or augmenting the injury for which contribution is sought." *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 523 N.E.2d 803, 805 (N.Y. 1988). The action of Jonesworks which Abel has alleged contributed to Lively's claimed injuries are the same ones for which Abel has been sued herself as a defendant. Compl. ¶ 64–65. Where Abel has alleged that Jonesworks "[c]aused the same injury to the plaintiff," she has shown that "the parties must have contributed to the same injury," and has therefore "stated a cause of action" to "recover damages for contribution." *Razdolskaya v. Lyubarsky*, 76 N.Y.S.3d 95, 99 (2d Dep't 2018). And Jonesworks' argument that it cannot be liable for contribution because it owed no independent duty to Lively is irrelevant. *See* Dkt. No. 277 at 10. As explained, "a contribution claim can be made even when the contributor has no duty to the injured plaintiff." *Raquet*, 681 N.E. at 407. "In such situations, a claim of contribution may be asserted if there has been a breach of duty that runs from the contributor to the defendant who has been held liable," *id.*, and Jonesworks does not argue that no such duty ran between Jonesworks and Abel as its employee. "The duty that forms the basis for the liability arises from the principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the

---

apportioned to either Abel or any other party, Abel is not precluded from alleging both causes of action even if ultimately she can recover only once. *See, e.g.*, *Raquet*, 681 N.E.2d at 407 (recognizing causes of action for contribution and indemnification).

damages which ought to have been paid by the wrongdoer, they may be recovered from him.'"

*Id.* (quoting *Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola*, 31 N.E. 987, 989

(N.Y. 1892)).

Jonesworks' motion to dismiss Abel's claim for contribution is therefore denied.

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 670.


SO ORDERED.

Dated: October 9, 2025
       New York, New York                    _____
                                             LEWIS J. LIMAN
                                             United States District Judge