# EXHIBIT 31

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------  x
BLAKE LIVELY,                                    :    Civ. Action No. 1:24-cv-10049-LJL
                                                 :    rel. 1:25-cv-00449-LJL
                 Plaintiff,                      :
                                                 :
                                                 :
v.                                               :
                                                 :
WAYFARER STUDIOS LLC, JUSTIN BALDONI,             :
JAMEY HEATH, STEVE SAROWITZ, IT ENDS             :
WITH US MOVIE LLC, MELISSA NATHAN, THE           :
AGENCY GROUP PR LLC, JENNIFER ABEL, JED          :
WALLACE, and STREET RELATIONS INC.,              :
                                                 :
                 Defendants.                     :
                                                 x
----------------------------------------------------------------  :
JENNIFER ABEL,                                   :
                                                 :
                         Third-Party Plaintiff,  :
                                                 :
                                                 :
v.                                               :
                                                 :
JONESWORKS LLC,                                  :
                                                 :
                         Third-Party Defendant.  :
                                                 :
                                                 :
----------------------------------------------------------------  x
```

1

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**DEFENDANT/THIRD-PARTY PLAINTIFF JENNIFER ABEL'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLAKE LIVELY'S SEVENTH SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules of the Court, Defendant/Third-Party Plaintiff Jennifer Abel ("Responding Party"), by and through her attorneys, hereby objects and responds to Plaintiff Blake Lively's ("Lively" or "Propounding Party") Seventh Set of Interrogatories.

## I.

## GENERAL OBJECTIONS

Responding Party makes the following general objections ("General Objections") to Propounding Party's Interrogatories.

1.     Responding Party objects to each Interrogatory to the extent that it seeks information that is not relevant to any claim or defense or proportional to the needs of the case.

2.     Responding Party objects to each Interrogatory to the extent that it purports to impose on Responding Party obligations broader than, or inconsistent with, those imposed by the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of New York, or by any other applicable law or protocol governing discovery obligations in the above-captioned action.

3.     Responding Party objects to each Interrogatory to the extent that it seeks discovery of information that is protected from disclosure by the attorney-client privilege, the common interest privilege, or the work product doctrine.

4.     Nothing contained in these responses, or any inadvertent production or identification of documents made in response to these interrogatories, is intended as, or shall in any way be deemed, a waiver of the attorney-client privilege, the common interest privilege, or

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

the work product doctrine.

5.     Responding Party objects to each Interrogatory to the extent that it is overbroad or unduly burdensome.

6.     Responding Party objects to each Interrogatory to the extent it seeks information that is not in Responding Party's possession, custody, or control.

7.     Responding Party objects to each Interrogatory to the extent it would require Responding Party to produce information covered by confidentiality agreements or protective orders with others, or that constitute an unwarranted invasion of the affected persons' constitutional, statutory, and/or common-law rights of privacy and confidentiality.

8.     Responding Party objects to each Interrogatory to the extent it seeks confidential commercial, financial, and/or proprietary business information, trade secrets, and/or any other non-public information protected from disclosure by law, court order, or agreement respecting confidentiality or non-disclosure or requires the disclosure of confidential or proprietary business information of third parties which Responding Party is obligated to protect.

9.     Responding Party objects to Propounding Party's Interrogatories as unduly burdensome to the extent that they seek information or documents that are publicly available, equally accessible to Propounding Party, or already in Propounding Party's possession, custody, or control.

10.     Responding Party objects to each Interrogatory insofar as it is unreasonably cumulative, duplicative, repetitive, redundant, or overlapping of other discovery requests.

11.     Responding Party objects to each Interrogatory to the extent that it, or any word or term used therein, is vague, ambiguous, compound, confusing, unintelligible, unclear, subject to different interpretations, and/or lacking in definition.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

12.     Responding Party objects to each Interrogatory to the extent that it is unlimited in temporal scope or contains overly broad time limitations or periods that are not relevant to any claim or defense or proportional to the needs of the case.

13.     Responding Party objects to each Interrogatory to the extent that it assumes, relies on, or seeks disputed facts, legal conclusions, or opinions. Responding Party denies any such disputed facts or legal conclusions or opinions to the extent assumed, relied on, or sought by each Interrogatory. Any response or objection by Responding Party to any such Interrogatory is without prejudice to this objection.

14.     Responding Party objects to each Interrogatory to the extent that it exceeds the scope of interrogatories set forth in Local Civil Rule 33.3(a).

15.     In providing responses to each Interrogatory, Responding Party does not in any way waive any objections Responding Party may later assert, including but not limited to competency, relevancy, materiality, and admissibility. Responding Party expressly reserves the right to object to the use of any responses below in any subsequent proceedings or any other action. Responding Party further reserves the right to object to additional discovery into the subject matter of the Interrogatory.

16.     Responding Party has responded to each Interrogatory based upon her understanding of each Interrogatory and recollection as of the date these responses are served.

17.     Responding Party's responses are based on her present knowledge, information, and belief following her diligent search and reasonable inquiry. Discovery and investigation are ongoing, and Responding Party reserves the right to amend, correct, supplement, or clarify her responses based upon, among other things, further investigation, discovery of additional facts or information, or developments in this action or in related law, particularly in view of Propounding

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Party's failure to comply with the Local Rules.

18. Responding Party objects to Paragraph 2 of Propounding Party's Instructions to the extent it instructs Responding Party to gather information from her "agents, employees, representatives, or investigators (including but not limited to experts) . . . present or former attorneys or [her] agents, employees, representatives or investigators; or by any other person or legal entity controlled by or in any other manner affiliated with [her]" that is protected from disclosure by the attorney-client privilege, work product doctrine, or the common interest privilege. Responding Party further objects to this instruction to the extent that it requires Responding Party to produce duplicative or cumulative information. Responding Party will only produce information that is in her possession, custody, or control, as required under the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of New York, or by any other applicable law or protocol governing discovery obligations in this action.

19. Responding Party objects to each Interrogatory to the extent it seeks information "from May 1, 2024, through the present." The Court has limited discovery to a period ending on February 18, 2025. Dkt. 711. To the extent this Interrogatory seeks information after February 18, 2025, it exceeds the permissible scope of discovery. Responding Party's responses are limited to a period ending on February 18, 2025.

20. Responding Party objects to Propounding Party's definition of "Content Creator" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

21. Responding Party objects to Propounding Party's definition of the term "Digital Campaign," as it is vague, ambiguous, overbroad, and unduly burdensome.

22. Responding Party objects to Propounding Party's definition of "Social Media," as

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

it is vague, ambiguous, and overbroad.

23.    Responding Party objects to Propounding Party's definition of "You," "Your," and "Yours" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

24.    These General Objections are hereby incorporated into each specific response.

## II.

### RESPONSES TO BLAKE LIVELY'S INTERROGATORIES

**INTERROGATORY NO. 14:**

Identify in reasonable detail all factual and legal bases for Your contention that the criticism against Ms. Lively on social media and tabloid/mainstream media, during and after August 2024, was entirely organic.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "criticism" and "entirely organic"; (2) seeks information subject to expert opinion; and (3) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

Collen Hoover's highly successful novel *It Ends with Us*, Lively and her husband Ryan Reynolds, and the film *It Ends With Us* (the "Film") have all been the subject of extraordinary public interest. Although negative coverage of Lively began with news of her casting and continued due to paparazzi photographs of her characters' wardrobe (chosen by Lively herself), rumors of discord between Justin Baldoni (the Film's lead actor and director) and Lively on the set heightened media interest in and somewhat prior to August 2024, driven in large measure by Lively and certain cast members' mass unfollowing of Baldoni on social media and Baldoni's conspicuous absence from the Film's marketing and publicity events as well as gossip regarding

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Lively's efforts to wrest creative control of the Film from Baldoni, Heath, and Wayfarer Studios LLC ("Wayfarer"). In response to public interest, the media began to report about (1) a poorly conceived and tone deaf marketing campaign for the Film spearheaded by Lively in coordination with Maximum Effort Productions, Inc. ("Maximum Effort") and its principal, Ryan Reynolds; (2) Lively's promotion of a film about domestic violence with her hair care and alcohol brands; (3) Lively's alcohol brand's sponsorship of an official Film promotional event and decision to name a signature cocktail after the Film's male lead, a domestic abuser; (4) Lively's conspicuous refusal to take photos or do press with Justin Baldoni and her exclusion of Baldoni from promotional appearances, international premieres, panel appearances, and screenings; (5) Lively's campaign to alienate the Film's cast and crew from Baldoni including the orchestration of their mass unfollowing of Baldoni's social media accounts; (6) Lively's pointed failure to meaningfully engage with the Film's serious subject matter and emphasis of "levity" in her promotional appearances, interviews, and social media posts; and (7) Lively's myriad of bizarre and/or off-putting public appearances and interviews by leading up to the Film's release. Lively further fueled the negative press by feeding information to the *New York Times* and other media outlets in advance of the filing of her complaint, which she provided, along with inflammatory text messages, to the *New York Times* well prior to the complaint's filing. Criticism of Lively escalated when litigation commenced following her multi-month coordination with the *New York Times* to launder stolen private communications and peddle a false narrative in order to, in Responding Party's view, resuscitate her tarnished public image at the Wayfarer Parties' expense. Through the *New York Times* article, Lively stirred up significant public interest in her allegations against the Wayfarer Parties. Lively's strategy backfired when the factual basis for her allegations started to unravel and the real story began to emerge painting a highly negative picture of Lively and her

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

cohorts. That negative public image has only been heightened by the unrelenting public relations tactics of Lively's legal team, which has cynically exploited and thereby diluted the language of domestic violence survivorship (e.g., "DARVO") and engaged in a concerted abuse of subpoena power to intimidate internet influencers and chill public criticism of Lively.

These factors and conduct by Lively and her agents organically created a climate of negative public sentiment against Lively, which spurred the media and internet users to dig up and re-circulate unflattering content concerning Lively's behavior from years past.

**INTERROGATORY NO. 15:**

Identify in reasonable detail all factual and legal bases for Your contention that the social media and tabloid/mainstream media support for Mr. Baldoni, during and after August 2024, was entirely organic.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "support" and "entirely organic"; (2) seeks information subject to expert opinion; and (3) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

Collen Hoover's highly successful novel *It Ends with Us*, Lively and her husband Ryan Reynolds and the Film have all been the subject of extraordinary public interest. Rumors of discord between Justin Baldoni (the Film's lead actor and director) and Lively on the set heightened media interest, particularly leaks about Lively's efforts to wrest creative control of the Film from Baldoni, Heath, and Wayfarer. In response to public interest, the media began to report about (1) a poorly conceived and tone deaf marketing campaign for the Film spearheaded by Lively in coordination with Maximum Effort and its principal, Ryan Reynolds; (2) Lively's promotion of a film about

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

domestic violence with her hair care and alcohol brands; (3) Lively's alcohol brand's sponsorship of an official Film promotional event and decision to name a signature cocktail after the Film's male lead, a domestic abuser; (4) Lively's conspicuous refusal to take photos or do press with Justin Baldoni and her exclusion of Baldoni from promotional appearances, international premieres, panel appearances, and screenings (juxtaposed with Baldoni's effusive praise of Lively and the rest of the cast); (5) Lively's campaign to alienate the Film's cast and crew from Baldoni including the orchestration of their mass unfollowing of Baldoni's social media accounts; (6) Lively's pointed failure to meaningfully engage with the Film's serious subject matter and emphasis of "levity" in her promotional appearances, interviews, and social media posts; and (7) Lively's myriad of bizarre and/or off-putting public appearances and interviews by leading up to the Film's release.

Lively further fueled the negative press by feeding information to the *New York Times* and other media outlets in advance of the filing of her complaint, which she provided, along with inflammatory text messages, to the *New York Times* well prior to the complaint's filing. As Lively increased the pressure to take control of the Film—threatening not to complete the Film, participate marketing or attend the premiere if Baldoni attended—public sympathy for Baldoni increased. Baldoni and Wayfarer's conduct in pacifying Lively, ceding control and caving into every whim, further alienated the media and soured public opinion.

Criticism of Lively escalated when litigation commenced following her multi-month coordination with the *New York Times* to launder Responding Party's stolen private communications and peddle a false narrative in order to, in Responding Party's view, resuscitate her tarnished public image at the Wayfarer Parties' expense. Through the *New York Times* article, Lively stirred up significant public interest in her allegations against the Wayfarer Parties. Lively's

9

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

strategy backfired when the factual basis for her allegations started to unravel and the real story began to emerge painting highly negative picture of Lively and her cohorts.

Baldoni's support on social media and in tabloid/mainstream media starting in or around August 2024 was a reaction to Lively's very public assault on him. As the media began to investigate and unravel the facts, the public responded with overwhelming support of the Wayfarer Parties. While Lively shied away from the Film's serious domestic violence storyline, Baldoni consistently engaged with it and spoke directly in the community of survivors through his interviews and social media presence. Baldoni also vocally supported his partnership with the domestic violence nonprofit No More, often bearing a pin with its logo during public appearances. Baldoni regularly engaged with and amplified fan voices, including those with past experiences of domestic violence. Baldoni's positive public image has only been heightened by the unrelenting public relations tactics of Lively's legal team, which has cynically exploited and thereby diluted the language of domestic violence survivorship (e.g., "DARVO") and engaged in a concerted abuse of subpoena power to intimidate internet influencers and chill public criticism of Lively.

**INTERROGATORY NO. 16:**

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively acted and continues to act with "unclean hands," as stated in paragraph 474 of Your Answer.

**RESPONSE TO INTERROGATORY NO. 16:**

Responding Party objects that this Interrogatory (1) is overbroad in time and scope and compound; (2) is not proportional to the needs of the case or relevant to the claims or defenses of any party; and (3) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

Lively participated in wrongful conduct of the same kind she accuses the Wayfarer

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Defendants of committing, namely, a smear campaign targeting Baldoni's professional and personal reputation and Wayfarer. Lively created the disputes, hostility and animus of the set, alienated the cast and crew against Baldoni, sidelined Baldoni from the production, refused to treat Baldoni or his religious beliefs with respect and orchestrated and is still pursuing a smear campaign to manipulate media and public sentiment against Baldoni. Lively also showed extreme disrespect and dismissiveness against victims of sexual violence and abuse by downplaying the Film's anti-domestic violence theme, tying her own products including an alcohol business into her marketing and focusing on levity in the promotion of the Film, while ignoring the Film's serious message about domestic violence. Notwithstanding Lively's complaints about the Wayfarer Parties' purported coordination with the press, it was Lively (through a shell entity) who filed a sham lawsuit to launder Responding Party's stolen communications and share them (spliced and stripped of context) with the press.

**INTERROGATORY NO. 17:**

Identify in reasonable detail all factual and legal bases for your contention that Ms. Lively has failed to mitigate damages she has incurred in paragraph 478 of Your Answer.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party objects that this Interrogatory seeks information subject to expert opinion and presumes that Lively has incurred damages and injuries, which Responding Party denies. Without waiving these objections:

Responding Party denies that Lively suffered any damages as a result of any act or omission of Responding Party or any other Wayfarer Party. However, to the extent Lively is alleged to have suffered damages, including without limitation as a result of reputational harm, she has failed to mitigate such damages. In the first instance, Lively was the proximate cause of any harm or

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

damages she seeks to recover. To the extent Lively can show any damages proximately caused by the Wayfarer Parties or their efforts to defuse the storm of negative press that Lively instigated against Baldoni and the Wayfarer Parties, Lively failed to mitigate her damages by failing to seek or "turn[ing] down other acting and directing opportunities" and public appearances and promotional events for her brands. Dkt. 520, ¶ 341 (Lively's Second Amended Complaint). Lively also acknowledges declining to work on projects at the same time as her husband to avoid being apart from one another, limiting the opportunities available to her.

Lively further harmed her reputation since August 2024 by, among other things, (1) her tone-deaf cross promotional efforts, which created an association between her hair care and liquor brands and domestic violence; (2) making provably false claims about the Wayfarer Parties and exploiting the language of #MeToo in a manner that has undermined her credibility with the public; (3) abusive legal tactics, including the initiation of a sham legal action through a shell company (i.e., Vanzan, Inc.) to launder stolen communications as well as a scorched earth legal campaign to intimidate content creators and chill online criticism of Lively; and (4) Lively's exploitation her power and influence to coordinate the publication a one-sided *New York Times* hit piece.

**INTERROGATORY NO. 18:**

Identify all "individuals or entities other than [You]," whom You contend "directly and proximately caused" Ms. Lively's damages and injuries, as stated in paragraphs 483 and 484 of Your Answer.

**RESPONSE TO INTERROGATORY NO. 18:**

Responding Party objects that this Interrogatory seeks information subject to expert opinion and presumes that Lively has incurred damages and injuries, which Responding Party denies. Without waiving these objections:

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

- Blake Lively

- Ryan Reynolds

- Maximum Effort

- Leslie Sloane

- Vision PR

- Stephanie Jones

- Jonesworks

- Sony

## INTERROGATORY NO. 19:

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively planned and implemented a smear campaign against Mr. Baldoni and Wayfarer.

## RESPONSE TO INTERROGATORY NO. 19:

Responding Party objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "smear campaign"; (2) seeks irrelevant information; and (3) and seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections:

Responding Party is aware of a variety of conduct by Lively and her agents tantamount to a smear campaign against Baldoni and Wayfarer (and others). Lively took a series of steps she knew or should have known would cause negative public chatter about Baldoni/Wayfarer, including: (1) orchestrating a mass unfollowing of Baldoni's social media accounts by the cast; (2) excluding Baldoni from interviews and pre-promotional activities with her and the rest of the cast; (3) refusing to allow photos of Baldoni and her to be taken; (4) attempting to ban Baldoni from the premiere of the *It Ends With Us* and, when that failed, sequestering him from her and the rest of

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

the cast;  (5) refusing to say Baldoni's name in pre- and post-release publicity efforts; (6) causing the removal of Baldoni's name from marketing materials; (7) planting (through her publicist) negative stories about Baldoni in the press; (8) coordinating a hit piece with the *New York Times* over the span of multiple months accusing Baldoni and Heath of sexual harassment and the other Wayfarer Parties of orchestrating a retaliatory smear campaign to cover up her allegations; (9) releasing an otherwise confidential Civil Rights Department complaint for the purpose of causing maximum reputational damage to the Wayfarer Parties; and (10) releasing inflammatory statements through her legal team regarding the Wayfarer Parties, including accusing them of DARVO. Taken together, Responding Party believes these actions constitute a smear campaign on Lively's part.

**INTERROGATORY NO. 20:**

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively sought to vilify any Wayfarer Defendant, Wallace or Street Relations to resuscitate her public image.

**RESPONSE TO INTERROGATORY NO. 20:**

Responding Party objects that this Interrogatory (1) is overbroad and compound; (2) seeks irrelevant information; and (3) seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections:

From the time of her casting as Lily Bloom and especially after the release of paparazzi-captured photos of her character's wardrobe (chosen by Lively), Lively has been scrutinized on social media. In or around (and somewhat prior to) August 2024, Responding Party observed that criticism of Lively heightened on social media (and, to a lesser extent, in tabloid/mainstream

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

media) for, among other things, her perfunctory treatment of the Film's serious subject matter, off-putting and tone-deaf public appearances, and Lively's decision to cross-promote her alcohol and hair care brands with a domestic violence movie. Because Lively had so effectively isolated Baldoni from her promotional activities, Baldoni was insulated from the public backlash Lively incited.

In response, Responding Party believes Lively has engaged in a concerted effort to vilify Responding Party, the other Wayfarer Parties, Jed Wallace, and Street Relations, Inc. in an effort to resuscitate her public image. That campaign started in August 2024, when Lively's publicist started planting negative stories about Baldoni, including that he had "fat shamed" her and that he belonged to a cult. Lively then worked in secret with Wayfarer's and Baldoni's former public relations firm, Jonesworks, and Stephanie Jones to launder private communications stolen from Responding Party's phone and cloud accounts, splicing and stripping them of context to support a factually false narrative that Lively's reputational challenges were a function not of her own missteps but instead of a "smear campaign" orchestrated by Responding Party and the Wayfarer Parties in retaliation for purported allegations of sexual misconduct. Lively and/or her agents fed these false allegations to the *New York Times*, which ultimately regurgitated them in a bombshell article intended for maximum public impact. The day before publication, Lively requested a right-to-sue notice from the California Civil Rights Department and attached a recitation of purported factual allegations. Lively's attachment was procedurally unnecessary and would have been confidential had she not leaked it to the *New York Times* for publication. Responding Party believes these actions were designed to change the prevailing narrative about her and recast her as the victim rather than the architect of her own undoing.

**INTERROGATORY NO. 21:**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Identify all Persons with whom You communicated via Signal concerning the Digital Campaign, Ms. Lively, Mr. Reynolds, the Film, or the Consolidated Actions and the date of each such communication.

**RESPONSE TO INTERROGATORY NO. 21:**

Responding Party objects that this Interrogatory (1) is overbroad, compound, and unduly burdensome in that, among other things, it requires a compilation of dates for numerous communications involving numerous parties; (2) is overbroad and unduly burdensome in that it seeks information relating to communications from "May 1, 2024, through the present", even though the Court limited discovery of this information to a period ending on February 18, 2025; (3) seeks irrelevant information; and (4) seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege; and (5) is overbroad, unduly burdensome to answer, and intended for an improper purpose. Without waiving these objections:

Responding Party has been included on various group Signal chats involving:

- Bryan Freedman

- Theresa Troupson

- Summer Benson

- Jason Sunshine

- Christina Puello

- Tamar Yeghiayan

- Mitchell Schuster

- Kevin Fritz

- Stacy Ashby

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

- Mitra Ahourian

- Justin Baldoni

- Jamey Heath

- Steve Sarowitz

- Tera Hanks

- Mitz Toskovic

- Ahmed Musiol

- Melissa Nathan

- Breanna Koslow

- Spencer Freedman

- Jared Freedman

- Christina Puello

- Jed Wallace

- Roza Kalantari

- Rylie Long

- Sage Steele

- Carolina Hurley

- Dervla Mcneice

- Alyx Sealy

- Katherine Case

- Michael Lawrence

- James Vituscka

**INTERROGATORY NO. 22:**

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

If you contend that You have taken efforts to preserve, maintain and collect data contained in any platform or account You identified in response to Interrogatory No. 7, describe in detail what, if any, efforts You have taken to preserve, maintain and collect data as to each platform or account.

**RESPONSE TO INTERROGATORY NO. 22:**

Responding Party objects that this Interrogatory seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections, Responding Party responds as follows:

Responding Party's access to the data associated with her former phone number (904-742-2954) was cut off on August 21, 2024, when her cell phone was seized by Jonesworks. As for the other sources of data, Responding Party has complied with her preservation obligations since receiving a litigation hold on or about December 20, 2024 by providing documents, including all relevant electronic data, to her counsel and vendor working with counsel. Since then, Responding Party has not knowingly or intentionally deleted any documents or communications within the scope of the litigation hold.

**INTERROGATORY NO. 23:**

If you contend that You anticipated litigation related to Ms. Lively or the Film prior to December 31, 2024, identify when You anticipated litigation and describe in detail why.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party objects that this Interrogatory seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections, Responding Party responds as follows:

Given Lively's hostile and threatening conduct at the time, Responding Party suspected the

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

possibility of litigation relating to the shooting of the Film in or around mid-August 2024. Responding Party did not anticipate litigation against her until December 20, 2024, when Lively's counsel served her with a copy of Lively's Civil Rights Department Complaint naming her as a Respondent.

**INTERROGATORY NO. 24:**

Identify in reasonable detail all factual and legal bases for Your contention that the Digital Campaign was a reactive strategy only.

**RESPONSE TO INTERROGATORY NO. 24:**

Responding Party objects that this Interrogatory assumes the existence of a vague and broadly defined "Digital Campaign," which Responding Party denies. Responding Party further objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "reactive strategy only" and (2) seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections:

Responding Party denies that there was a "Digital Campaign" as defined by Propounding Party in that there was never an orchestrated effort to communicate negative information concerning Lively or her affiliates or to deploy bots or inauthentic accounts to amplify such information. On the eve of the Film's premiere, however, rumors of discord on the set had begun to circulate in the press and online, catalyzed by Baldoni's exclusion (at Lively's insistence) from promotional events, marketing materials, and interviews relating to the Film. Lively had been refusing to appear in photos with Baldoni or even publicly say his name. She also orchestrated a mass unfollowing of Baldoni's social media accounts by members of the cast. The public noticed, and it inevitably resulted in a surge of gossip and speculation, casting a shadow over the roll-out of the Film. Responding Party also learned that Lively's publicist was planting negative stories

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

about Baldoni and Wayfarer. Responding Party recommended that Wayfarer/Baldoni engage a crisis communications specialist to defuse the negative publicity and protect their reputations as well as the Film's prospects. Dkt. 521 ¶¶ 29, 201. Wayfarer ultimately engaged The Agency Group PR LLC, which, on August 2, 2024, circulated a "scenario planning" document with a proposed strategy to counter an anticipated onslaught of publicity negative to Baldoni and the Wayfarer Parties. *Id.* ¶¶ 31, 203.


Dated: September 29, 2025
      New York, NY

**MEISTER SEELIG & FEIN PLLC**

By:  */s/ Mitchell Schuster*
      Mitchell Schuster
      Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Email: ms@msf-law.com
        kaf@msf-law.com


Dated: September 29, 2025
      Los Angeles, CA

**LINER FREEDMAN TAITELMAN +
COOLEY, LLP**

By:  */s/ Bryan Freedman*
      Bryan J. Freedman (*pro hac vice*)
      Ellyn S. Garofalo (*pro hac vice*)
      Theresa M. Troupson (*pro hac vice*)
      Summer E. Benson (*pro hac vice*)
      Jason H. Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Telephone: (310) 201-0005
Email: bfreedman@lftcllp.com
       egarofalo@lftcllp.com
       ttroupson@lftcllp.com
       sbenson@lftcllp.com
       jsunshine@lftcllp.com

*Attorneys for Defendant and Third-Party Plaintiff
Jennifer Abel*

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

## VERIFICATION

I, Jennifer Abel, declare as follows:

I have read the foregoing **DEFENDANT/THIRD-PARTY PLAINTIFF JENNIFER ABEL'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLAKE LIVELY'S SEVENTH SET OF INTERROGATORIES** and know its contents. I am a party to this action, and I make this verification on my behalf. The matters stated in the foregoing document are true to my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States, the State of New York, and the State of California that the foregoing is true and correct.

Executed on September 29, 2025, at Beverly Hills, California.

Signed by:

*Jennifer Abel*

1ADCAC797D574CF...

Jennifer Abel

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

<u>**CERTIFICATE OF SERVICE**</u>

     I, Vaneta D. Birtha, do hereby certify that I am not less than 18 years of age and that on this 29th day of September 2025, I caused a copy of the within **DEFENDANT/THIRD-PARTY PLAINTIFF JENNIFER ABEL'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLAKE LIVELY'S SEVENTH SET OF INTERROGATORIES** be served upon the following counsel for the parties via email:

**SEE ATTACHED SERVICE LIST**

     I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  September 29, 2025
        Los Angeles, CA

                             */s/ Vaneta D. Birtha*
                             Vaneta D. Birtha

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

## SERVICE LIST
*Blake Lively v. Wayfarer Studios, et al.*
Case No. 1:24-cv-10049-LJL

**MANATT, PHELPS & PHILLIPS, LLP**                              *Attorneys for Plaintiff*
Esra Hudson, Esq.
Sarah E. Moses, Esq.
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4381
Email: ehudson@manatt.com
          SMoses@manatt.com

Stephanie Anne Roeser
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7543
Email: sroeser@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
Telephone: (212) 790-4500
Email: mbruno@manatt.com

**WILKIE FARR & GALLAGHER LLP**                              *Attorneys for Plaintiff*
Aaron E. Nathan, Esq.
Michaela A. Connolly, Esq.
787 7th Avenue
New York, NY 10019
Telephone: (212) 778-8000
Email: anathan@wilkie.com
          mconnolly@wilkie.com

Michael Gottlieb
Kristin Bender
1875 K. Street, N.W., Suite 100
Washington, DC 20006-1238
Telephone: (202) 303-1000
Email: mgottlieb@willkie.com
          kbender@willkie.com

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**HAYNES AND BOONE, LLP**                                     *Attorneys for Plaintiff*
Laura Lee Prather
Michael Lambert
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470
Email: laura.prather@haynesboone.com
           Michael.lambert@haynesboone.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**     *Attorneys for Third Party*
Kristin Tahler                                                  *Defendant Jonesworks LLC*
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3615
Email: kristintahler@quinnemanuel.com

Maaren Alia Shah
Morgan L. Anastasio
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7452
Email: maarenchoksi@quinnemanuel.com
Email: morgananastasio@quinnemanuel.com

Nicholas Inns
1300 I St NW, Suite 900
Washington, DC 20005
Telephone: (202) 774-6147
Email: nicholasinns@quinnemanuel.com

**DUNN ISAACSON RHEE LLP**                                     *Attorneys for Plaintiff*
Meryl C. Governski
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900
Email: mgovernski@dirllp.com

**AHOURAIAN LAW**                                          *Co-Counsel for Defendants*
Mitra Ahouraian                                        *Wayfarer Studios LLC, Justin*
2029 Century Park East, 4th Floor                      *Baldoni, Jamey Heath, It Ends*
Los Angeles, CA 90067                                  *With Us Movie LLC, Steve*
Telephone: (310) 867-2777                                              *Sarowitz*
Email: mitra@ahouraianlaw.com

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**MEISTER SEELIG & FEIN PLLC**                                *Co-Counsel for Defendants*
Stacey Michelle Ashby                                        *Wayfarer Studios LLC, Justin*
Mitchell Schuster                                           *Baldoni, Jamey Heath, It Ends*
Kevin A. Fritz                                              *With Us Movie LLC, Steve*
125 Park Avenue, 7th Floor                                  *Sarowitz, Melissa Nathan,*
New York, NY 10017                                          *Agency Group PR LLC, and*
Telephone: (212) 655-3500                                   *Defendant / Third Party*
Facsimile:  (212) 655-3535                                  *Plaintiff Jennifer Abel*
Email: ms@msf-law.com
          kaf@msf-law.com
          sma@msf-law.com


**SHAPIRO ARATO BACH**                                       *Co-Counsel for Defendants*
Alexandra A.E. Shapiro                                      *Wayfarer Studios LLC, Justin*
Jonathan P. Bach, Esq.                                      *Baldoni, Jamey Heath, It Ends*
1140 Avenue of the Americas, 17th Floor                     *With Us Movie LLC, Steve*
New York, NY 10036                                          *Sarowitz, Melissa Nathan,*
Telephone: (212) 257-4880                                   *Agency Group PR LLC, and*
Email: ashapiro@shapiroarato.com                            *Defendant / Third Party*
          jbach@shapiroarato.com                            *Plaintiff Jennifer Abel*


**JACKSON WALKER L.L.P**                                     *Attorneys for Defendants Jed*
Charles L. Babcock, IV                                      *Wallace and Street Relations,*
Joel Glover                                                 *Inc.*
1401 Mckinney Street, Suite 1900
Houston, TX 77010
Tel: 713-752-4226
Fax: 713-752-4560
Email: cbabcock@jw.com
          jglover@jw.com