# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

BLAKE LIVELY,
Plaintiff,
vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

JENNIFER ABEL,
Third-party Plaintiff,
vs.
JONESWORKS, LLC,
Third-party Defendant.

---

WAYFARER STUDIOS LLC, et al.
Consolidated Plaintiffs,
vs.
BLAKE LIVELY, et al.
Consolidated Defendants.

---

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JAMEY HEATH
Los Angeles, California
Wednesday, October 8, 2025

Stenographically Reported by: Ashley Soevyn,
CALIFORNIA CSR No. 12019

Q You produced a video in -- your lawyers produced a video in this case.

Did you provide the video of -- a video in which your wife is in a tub with a baby to your lawyers to produce to us in this case?

A I did.

Q Okay. Where was that video stored?

A You mean when I -- at what point?

Q At the point that you took it to give it to your lawyers. Where did you get it? Where was it?

A I believe it was on my phone.

Q It was on your phone?

A I believe so.

Q Okay. Did you edit the video at all before giving it to your lawyers?

A I did not.

Q So the video you gave was the complete video as it existed on your phone?

A Correct.

Q What, in your memory, did the video depict?

A It's our midwife, my sister, my kids, my wife, myself, our newborn baby. I believe we were singing or praying. The baby was crying, and then

at some point we were whispering a prayer in the baby's ear.

Q That's what you recall?

A Yeah.

Q And your wife was in a tub?

A A birthing tub, yeah.

Q A birthing tub.

And you said she wasn't clothed, but she had a towel over her?

MS. SHAPIRO: Objection.

THE WITNESS: The towel was more over the baby, I think, because, you know, when the baby came out of the water and you bring it up, then it's wet. So you put a dry towel to cover it.

BY MS. HUDSON:

Q And in the video that you gave to your lawyers to give to us, were you in the video?

A I am.

Q And are you nude in that video?

A No.

Q Were -- did your wife give birth in a tub?

A She did.

Q Were you in the tub when she gave birth?

A I was.

Q The entire time?
A I believe so.
Q You were there the whole time she was giving birth?
A I was.
Q Who filmed the video?
A That particular one, I believe, was my daughter.
Q Your daughter?
A My older daughter.
Q Your older daughter.
Did you give your daughter instructions for filming?
A I'm not sure. What do you mean?
Q Did you ask her to film any particular part of the birth?
A No. She just was -- her and my sister both, actually, were filming different stages of the labor and the birth and afterwards.
Q So did someone else film a different stage other than the stage that is depicted in the video that you gave to your lawyers to produce to us?
MS. SHAPIRO: Objection.
THE WITNESS: I think I'm a little

confused, but I think your question is, are there other -- is there other video of the duration of my child being born and after and beforehand?

BY MS. HUDSON:

Q Sure.

A Yes.

Q What other stages of the delivery are depicted in the video?

A Her entire birth.

Q How long was the birth?

A Oh, gosh. I don't remember. The whole birthing? Couple of hours.

Q And it's all on film?

A No, no, no. I just mean the birth took a couple of hours at different times. But if you're wondering if the birth is filmed, it is.

Q The delivery itself?

A It is.

Q So the baby crowning and coming out is all filmed?

A Yes. The baby being delivered, yes, for sure.

Q Were you in the tub with your wife when the baby was actually delivered?

A I was.

Q Do you know in the film depicting your -- the baby actually being delivered, are you in that, or is there -- are you in the shot?

A I'm sorry. Can you repeat it? I just want to follow.

Q Yes.

When the baby is being delivered, are you in the shot of the film?

A I think so.

Q Have you watched all of that film of the birth and delivery of your child?

A No.

Q You haven't watched it all?

A Not all of it. I mean, we -- at some point we've seen -- reflected on it and seen some portions of it, but no.

Q Is it all on your phone?

A No.

Q It's not? Which ones are on your phone?

A Just the one with the baby on my wife, and the one I described.

Q The one -- the one that you produced in this case, that's the only one that is on your phone?

A Yes. The one I produced and the one that

I showed to Ms. Lively.
Q Is that the only one that has ever been on your phone?
A I don't know for sure.
Q How did that one get on your phone?
A Well, originally, we had uploaded to preserve them on, I believe, Dropbox. And then on Dropbox, then I would download it to my phone. So that's how it would have got on my phone. Or maybe even -- maybe some portions were filmed with my phone. Maybe my daughter had my phone. I don't recall the process of that time, but --
Q So some portions might have been filmed on your phone, but the only one that remained on your phone was the one that you produced; is that what you're saying?
MS. SHAPIRO: Objection.
THE WITNESS: Yeah. That's the only one that I would keep on my phone, as that's something that I would feel appropriate if my phone was falling into the wrong hands.
BY MS. HUDSON:
Q You said that you were not nude in that video, but you were not wearing a shirt, correct?
A I was not wearing a shirt.

Q Would you agree that it's not really clear what you're wearing beyond -- if anything, beyond a shirt from that video?

MS. SHAPIRO: Objection.

THE WITNESS: Yeah. I would agree that you wouldn't know otherwise, I suppose.

BY MS. HUDSON:

Q So going back to the -- well, you said there might have been other portions of the birth video on your phone.

When would those other portions -- when did you remove the other ones?

MS. SHAPIRO: Objection.

THE WITNESS: From -- I don't even know if they were ever on my phone to begin with. So I wouldn't have had to remove them.

BY MS. HUDSON:

Q You said you thought that some portions of the birthing video might have been taken with your phone?

MS. SHAPIRO: Objection.

THE WITNESS: Correct. But once I would have them, then I would upload them to Dropbox.

BY MS. HUDSON:

Q Immediately?

A Within -- I mean, immediately? Not in the moment of the birth. Week and two weeks it's happening, but, you know, at some point...

Q So it's your testimony that you -- to the extent there were other videos on your phone, you removed all of them onto Dropbox except for the one that you produced in this case; is that right?

MS. SHAPIRO: Objection.

THE WITNESS: I'm saying that at some point. I don't know exactly what was on my phone during the time of the birth, but eventually, I did not have them.

BY MS. HUDSON:

Q Did you send that video that you gave to your lawyers to anyone?

MS. SHAPIRO: Objection.

BY MS. HUDSON:

Q Other than your lawyers?

A Not that I can recall.

Q Did you send it to Melissa Nathan?

A I do not recall.

Q Can you access Dropbox from your phone?

A I can.

Q Have you ever accessed any of the videos of your -- of your wife's birth -- not your wife's

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Dated this 10th day of October 2025.

ASHLEY SOEVYN

CSR No. 12019