# EXHIBIT D

CONFIDENTIAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLAKE LIVELY,

Plaintiff,

-v-

WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,

Defendants.

JENNIFER ABEL,

Third-Party Plaintiff,

-v-

JONESWORKS LLC,

Third-Party Defendant.

WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, JENNIFER ABEL, and STEVE SAROWITZ,

Consolidated Plaintiffs,

-v-

BLAKE LIVELY, RYAN REYNOLDS, LESLIE SLOANE, VISION PR, INC., and THE NEW YORK TIMES COMPANY.

Consolidated Defendants.

Case No. 1:24-cv-10049-LJL
(consolidated with 1:25-cv-00449-LJL)

**PLAINTIFF BLAKE LIVELY'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JAMEY HEATH**

CONFIDENTIAL

Pursuant to Federal Rule of Civil Procedures 26 and 34, Plaintiff Blake Lively ("Ms. Lively" or "Plaintiff") hereby serves the following Third Set of Requests for Production of Documents ("Requests") and requests that Defendant Jamey Heath, within thirty (30) days of the date hereof, provide a written response hereto and produce at the offices of Manatt, Phelps & Phillips, LLP, 2049 Century Park East, Suite 1700, Los Angeles, California 90067, all documents, electronically stored information, and other tangible things described below for inspection and copying.

In responding to these requests, the following definitions and instructions shall apply.

## DEFINITIONS

1. The Uniform Definitions in Discovery Requests that are set forth in Local Civil Rule 26.3 are hereby incorporated by reference.

2. "Actions" means and collectively refers to the following cases entitled (a) *Lively v. Wayfarer Studios LLC et al.*, U.S. District Court for the Southern District of New York (Case No. 1:24-cv-10049-LJL); (b) *Wayfarer Studios LLC et al. v. Lively et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00449-LJL); (c) *Wayfarer Studios LLC et al. v. The New York Times Company*, Superior Court of California, County of Los Angeles (Case No. 24STCV34662); (d) *Jones v. Jennifer Abel et al.*, United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779); and/or (e) *Jed Wallace et al. v. Lively*, United States District Court for the Western District of Texas (Case No. 25-163-DAE), as well as the factual allegations or claims contained in all pleadings.

3. "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written.

4. "Affiliate" means any and all entities that are wholly owned and/or controlled (directly or indirectly) by, or under common control by an identified individual or entity, including any corporate parent, subsidiaries, or affiliates, and each of their respective officers, directors, employees, or partners.

5. The terms "all," "any," and "each" shall each be construed as encompassing any and all. *See* Local Civil Rule 26.3.

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. *See* Local Civil Rule 26.3.

7. "Abel" refers to Jennifer Abel, who is a party to the Actions.

8. "Baldoni" refers to Justin Baldoni, who currently serves as the co-founder and co-chairman of Wayfarer Studios LLC and is a party to the Actions.

9. "Bryan Freedman" refers to counsel for the Wayfarer Defendants in the Actions, as well as his past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

10. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). *See* Local Civil Rule 26.3.

11. "Concerning" means relating to, referring to, describing, evidencing, or constituting. *See* Local Civil Rule 26.3.

12. "Content Creator" shall refer to any individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital services.

13. The "CRD Complaint" means the operative administrative complaint filed by Blake Lively with the California Civil Rights Department on December 20, 2024.

14. "Digital Campaign" refers to efforts of the Wayfarer Defendants and/or any affiliates, employees, associates, or subcontractors to communicate information regarding Blake Lively, Ryan Reynolds, the Lively/Reynolds Companies, the Lively/Reynolds Family, the Wayfarer Defendants, the Film, or the Actions on any Social Media, news outlet, or other internet platform and/or to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts, as described in the Complaint.

15. "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. *See* Local Civil Rule 26.3.

16. The "Film" means the movie "It Ends with Us," co-starring Blake Lively and Justin Baldoni, as described in the Lively Complaint.

17. "Heath" refers to Jamey Heath who currently serves as the CEO of Wayfarer Studios LLC and is a party to the Actions.

18. "IEWU LLC" shall refer to Defendant It Ends With Us Movie LLC, which is a party to the Actions, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

19. "Including" means "including, but not limited to," or "including, without limitation," and should not be construed as limiting any request.

20. "Jonesworks" shall refer to the entity Joneworks LLC, as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Stephanie Jones.

21. "Jonesworks Complaint" means the operative complaint filed by Stephanie Jones and Jonesworks LLC in *Jones v. Jennifer Abel et al.* and removed to the United States District Court for the Southern District of New York (NYS Case No. 659849/2024; SDNY Case No. 1:25-cv-00779), Dkt. No. 1, and any amended complaints filed by Stephanie Jones and/or Jonesworks LLC in the proceeding.

22. "Liner Freedman Taitelman + Cooley" refers to the law firm serving as counsel for the Wayfarer Defendants in the Actions as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

23. "Lively Complaint" shall refer to the Complaint, Dkt. No. 1, the First Amended Complaint, Dkt. No. 84, and any amended complaints filed by Blake Lively in *Lively v. Wayfarer Studios LLC et al.*, 1:24-cv-10049-LJL, as consolidated.

24. "Lively/Reynolds Companies" shall refer to Ms. Lively and Mr. Reynolds's affiliated entities, including but not limited to Betty Buzz LLC, Blake Brown, Aviation Gin, Mint Mobile, and Maximum Effort Productions, individually and collectively, and their past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

25. "Marketing Plan" shall refer to any efforts to market or promote the Film, including, but not limited to, any advertising, promotional, publicity or marketing materials (such as, without limitation, themes, market testing, research, summaries, talking points, trailers or teasers, posters, social media posts, and screen, radio, digital or television advertising), as described in the Complaint.

26. "Ms. Lively" shall refer to Blake Lively, who is a party to the Actions.

27. "Mr. Reynolds" shall refer to Ryan Reynolds, who is a party to the Actions.

28. "Nathan" shall refer to Melissa Nathan, who is a party to the Actions.

29. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. *See* Local Civil Rule 26.3.

30. "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or associate. *See* Local Civil Rule 26.3.

31. "Protections for Return to Production Agreement" means the contract executed in November 2023 concerning appropriate behavior during filming and production of the Film, as described in the Complaint.

32. "Relating to" or "Relate to" means, without limitation, assessing, comprising, constituting, concerning, referring to, containing, describing, discussing, embodying, evidencing, identifying, pertaining to, reflecting, stating, supporting, or tending to support or refute, or referring in any other way, directly or indirectly, in whole or in part, to the subject matter specified.

33. "Sarowitz" shall refer to Steve Sarowitz, who is a party to the Actions.

34. "Social Media" means any digital platform, forum, website, application, online service, or other platform on which persons can create, transmit, share, communicate, exchange content, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to:

a. Social Networking Platforms – Facebook, Instagram, Twitter (X), LinkedIn, TikTok, Snapchat, Reddit, and similar platforms.

b. Content Sharing & Video Platforms – YouTube, Vimeo, Twitch, Rumble, or similar services where videos, reels, or live content can be uploaded or streamed.

c. Email, Messaging Applications & Direct Communication Platforms – Including, but not limited to, Gmail, Outlook, WhatsApp, Telegram, Signal, Discord, Slack, Facebook Messenger, Instagram DMs, Twitter DMs, or any private messaging feature within a social media platform.

d. Blogging & Forum Sites – Medium, Substack, WordPress, 4chan, 8kun, or any other user-generated content site where written materials are published.

e. Influencer & Review-Based Platforms – Yelp, Glassdoor, Trustpilot, Google Reviews, Patreon, or any website where reputational impact can be influenced.

f. Advertising & Promotional Services – Paid sponsorships, influencer partnerships, promoted posts, advertisements, bots, or algorithm-driven visibility campaigns.

g. Automated or Third-Party Content Management Tools – Hootsuite, Buffer, Sprout Social, or any platform used to schedule, automate, or track social media activity.

h. Any Other Online Presence – Any additional websites, forums, private groups, or digital spaces where content related to Plaintiff was discussed, posted, or promoted.

i. Without limiting the foregoing in any manner, and by way of example only, this definition includes: all original posts, reposts, shares, likes, comments,

hashtags, memes, images, videos, stories, threads, and reactions; all drafts, deleted posts, or unpublished content related to Plaintiff; all engagement metrics, analytics, reports, or logs reflecting interactions with content; and all metadata, timestamps, IP addresses, geolocation data, or user activity logs related to content.

35. "Sony" shall refer to Sony Pictures Entertainment, and its past or present officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

36. "Street Relations" shall refer to the entity Street Relations, Inc., as well as its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates, including, without limitation, Jed Wallace.

37. "TAG" shall refer to The Agency Group PR LLC, which is a party to the Actions, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

38. "Vision PR Parties" refers to Defendants Leslie Sloane and Vision PR, Inc., in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL.

39. "Wallace" shall refer to Jed Wallace, as described in the Complaint.

40. "Wayfarer" shall refer to Defendant Wayfarer Studios LLC, and its past or present members, officers, employees, partners, corporate parent, subsidiaries, or affiliates.

41. "Wayfarer SDNY Complaint" shall refer to the Complaint, Dkt. No. 1, the First Amended Complaint, Dkt. No. 50, and any other amended complaints filed by Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends with Us Movie LLC, Melissa Nathan, and Jennifer Abel in *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL, as consolidated.

42. "Wayfarer New York Times Action" shall refer to the lawsuit entitled *Wayfarer Studios LLC et al. v. The New York Times Company*, No. 24STCV34662, filed in the Superior Court of California, County of Los Angeles.

43. "Wayfarer Defendants" shall refer, individually and collectively, to Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel, Wallace, and Street Relations.

44. "WME" shall refer to William Morris Endeavor Entertainment Agency, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

45. "You," "Your," or "Yours" refers to Jamey Heath and anyone else acting or purporting to act on his behalf and anyone on whose behalf he is acting.

## INSTRUCTIONS

1. In responding to these Requests, You shall make a diligent search and produce all responsive Documents that are (i) in Your possession, custody, or control, or (ii) in the possession, custody, or control of any of Your agents, employees, attorneys, accountants, or other representatives or anyone acting on Your behalf, or under Your direction or control, or (iii) otherwise available to You. A Document shall be deemed within Your control if You have the right to secure the document or a copy of the Document from another Person having possession, custody, or control of the Document.

2. Unless otherwise specified, each Request concerns the time period from December 1, 2022, through the present.

3. In construing these Requests, You should give effect to the Definitions set forth above. Undefined words and terms shall be given their common meaning. If You are unsure of the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response.

4. If You do not clearly understand, or have any questions about the definitions or instructions for any Request, please promptly contact counsel for Ms. Lively for clarification.

5. These Requests should be construed as broadly as possible with all doubts resolved in favor of production. If you believe a Request is ambiguous, use the broadest reasonable interpretation as permitted under the Federal Rules of Civil Procedure and state the nature of the perceived ambiguity and the interpretation used to resolve it. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive. Except as specifically provided in these Requests, words imparting the singular shall include plural, and vice versa, where appropriate. Except as specifically provided in these Requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate.

6. For any hard copy production, all documents produced shall be produced as kept in the ordinary course, including identification of the applicable file folder and source. The original of each document requested shall be produced, or an identical copy of each document, imprinted with a Bates identification number. Documents attached to other documents or materials shall not be separated. Documents not otherwise responsive to these requests shall be produced if such documents are attached to documents called for by the Requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials, or mention, discuss, refer to, or explain the documents that are called for by the Requests.

7. For any hard copy production, identical copies of a document need not be produced. Any copy of a document that varies from the original, whether by reason of handwritten or other notation or any omission, or metadata associated with a file, shall constitute a separate document

and must be produced, whether or not the original of such a document is within your possession, custody, or control.

8. If an objection is made to any portion of any Request, (a) state with specificity the objection and legal basis for such objection; (b) state whether any responsive materials are being withheld on the basis of that objection; and (c) answer all remaining portions of the Request to which an objection is not asserted.

9. If any responsive document is withheld in whole or in part under a claim of privilege or other ground, as to each such document, identify the privilege or other ground being asserted and provide the following information in sufficient detail to permit the Court to evaluate Your claim:

a. date, author, addressees, Persons carbon copied or blind carbon copied, including the relationship of those Persons to You or the author of the document;

b. brief description sufficient to identify the type, subject matter, and purpose of the document;

c. all Persons to whom the document's contents have been disclosed;

d. the party who is asserting the privilege;

e. the nature of the privilege, immunity or protection asserted, the Person(s);

f. asserting the privilege, immunity or protection, and/or the specific reason why the Document is not being produced; and

g. the same information referenced in 10(a)-(f) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production.

10. If a portion of any responsive document is withheld under a claim of privilege or other ground, any non-privileged portion of the document must be produced with the withheld portion redacted, with the redaction language indicating that the information is being withheld for privilege.

11. If any responsive document was, but no longer is, in Your possession, custody, or control, state whether it is (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of; and (e) in each instance identify the contents, author(s), date prepared or received, name and address of its current or last known custodian, and the date and circumstances surrounding such disposition.

12. To the extent that the native format for transactional or other data responsive to these Requests is not compatible with Microsoft Office products (*e.g.*, Microsoft Excel, Microsoft Word, Microsoft Access, etc.), the data shall be produced in a usable format. If You need assistance in determining what constitutes a usable format, You shall promptly contact Ms. Lively's counsel.

13. In addition to the specific instructions below, these Requests incorporate by reference the instructions set forth in Rule 26(e) of the Federal Rules of Civil Procedure. You are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by You or any Person purporting to act on Your behalf that will augment or modify Your answers now given to the following requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, You are required to supplement these responses and provide additional Documents or things without a specific request from Ms. Lively.

14. Notwithstanding anything else to the contrary herein, each word, term, or phrase is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## PRODUCTION OF ESI

The exchange of electronically-stored information, documents, and hard copy documents in response to these Requests shall be exchanged pursuant to the Instructions for Discovery of Electronically-Stored Information and Hard Copy Documents ("ESI Instructions") conveyed herewith. If the parties enter into any stipulated agreement or protocol governing electronically stored information, the stipulated agreement will supersede these ESI Instructions, to the extent any provisions conflict.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 68:**

All Documents and Communications concerning Ms. Lively's purported threats and/or extortionate actions, as alleged in paragraphs 2, 16, 52, 81, 112, 124, 130, 140, 141, 154, 155, 157, and 253 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 69:**

All Documents and Communications demonstrating Your acquiescence to Ms. Lively's purported threats and/or extortionate actions, as alleged in paragraphs 81, 140, 142, 154, and 158 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 70:**

All Documents and Communications demonstrating any tangible or intangible property that Ms. Lively and/or the Lively Parties, as that term is defined in the Wayfarer SDNY Complaint, obtained from any Wayfarer Defendant, as alleged in the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 71:**

All Documents and Communications concerning Your allegations in the Wayfarer SDNY Complaint that Ms. Lively made false accusations of sexual harassment against any Wayfarer Defendant.

**REQUEST FOR PRODUCTION NO. 72:**

All Documents and Communications demonstrating that any statements made in the CRD Complaint, as that term is defined in paragraph 4 of the Wayfarer SDNY Complaint, are false and/or not true.

**REQUEST FOR PRODUCTION NO. 73:**

All Documents and Communications demonstrating that any statements made in the Article, as that term is defined in paragraph 261 of the Wayfarer SDNY Complaint, are false and/or not true.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents and Communications demonstrating that any allegations made in the Lively Complaint, are false and/or not true.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents and Communications demonstrating any right and/or interest in the Film that You claim to have lost, as alleged in the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 76:**

All Documents and Communications concerning Your allegation in paragraph 4 that Ms. Lively "worked for months with the . . . New York Times to prepare a false and damaging narrative to deploy against" any Wayfarer Defendant.

**REQUEST FOR PRODUCTION NO. 77:**

The "evidence" that is referred to in paragraphs 5, 8, 9 n.3, 10, 15, 17, 19, 46, 61 n.12, 89, 176, 259, 274, 283, and 287 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 78:**

All Documents and Communications demonstrating Ms. Lively's efforts to take control over the Film, as alleged in paragraphs 9, 31, 32, 43, 51, 52, 53, 54, 62, 68, 69, 124, 126, 130, and 134-78 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents and Communications concerning Your allegation in paragraph 11 of the Wayfarer SDNY Complaint that Ms. Lively "refused to meet with the Film's domestic violence partner organization, nomore.org."

**REQUEST FOR PRODUCTION NO. 80:**

All Documents and Communications concerning Your allegation in paragraph 12 of the Wayfarer SDNY Complaint that Ms. Lively "*herself* had ensured" that Baldoni "was excluded from participating in her marketing efforts."

**REQUEST FOR PRODUCTION NO. 81:**

All Documents and Communications concerning Your allegation in paragraph 13 of the Wayfarer SDNY Complaint that "Jones, Lively, Reynolds, and Leslie Sloane . . . concocted a plan whereby Jones would seize Abel's phone upon her departure."

**REQUEST FOR PRODUCTION NO. 82:**

All Documents and Communications demonstrating that Ms. Lively and/or the Lively Parties, as that term is defined in the Wayfarer SDNY Complaint, planned and implemented a "smear campaign against Baldoni and Wayfarer," as alleged in paragraph 15 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents and Communications demonstrating that neither You nor any of the Wayfarer Defendants planned and implemented a smear campaign against Ms. Lively, as alleged in paragraph 17 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents and Communications concerning Your allegations in the Wayfarer SDNY Complaint that Ms. Lively and Mr. Reynolds attempted to steal the Film from any Wayfarer Defendant.

**REQUEST FOR PRODUCTION NO. 85:**

All Documents and Communications concerning Your allegations in the Wayfarer SDNY Complaint that Ms. Lively and Mr. Reynolds stole the Film from any Wayfarer Defendant.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents and Communications concerning Your allegations that Ms. Lively had a "reputation for being difficult to work with" or had "longstanding reputational challenges," as alleged in paragraph 26 and 284 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents and Communications concerning Your allegations that Ms. Lively and Baldoni began a "[c]lose collaboration" or "collaborative creative partnership," as alleged in paragraphs 28 and 55 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents and Communications concerning Your allegation in paragraph 33 of the Wayfarer SDNY Complaint regarding Ms. Lively's actions related to wardrobe fittings.

CONFIDENTIAL

**REQUEST FOR PRODUCTION NO. 89:**

All Documents and Communications concerning Your allegation in paragraph 35 of the Wayfarer SDNY Complaint that "Baldoni received direct criticism from Sony."

**REQUEST FOR PRODUCTION NO. 90:**

All Documents and Communications concerning Your allegations in paragraphs 39-45, and 62 of the Wayfarer SDNY Complaint that Ms. Lively or Mr. Reynolds rewrote scenes in the script of the Film.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents and Communications concerning Your allegations in paragraphs 39-45, 62, and 72 of the Wayfarer SDNY Complaint that Ms. Lively or Mr. Reynolds pressured Baldoni to accept their revisions to the script.

**REQUEST FOR PRODUCTION NO. 92:**

All Documents and Communications concerning Your allegations in paragraphs 51 and 52 of the Wayfarer SDNY Complaint that Ms. Lively delivered an "ultimatum" to any Wayfarer Defendant.

**REQUEST FOR PRODUCTION NO. 93:**

All Documents and Communications concerning Ms. Lively's "undue influence" over the Film, as alleged in paragraph 52 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents and Communications concerning Your allegations in paragraphs 59 and 104 of the Wayfarer SDNY Complaint that Ms. Lively "would breastfeed openly and without hesitation" and "regularly breast-fed in front of Baldoni while they had meetings."

**REQUEST FOR PRODUCTION NO. 95:**

All Documents and Communications concerning Your allegation in paragraph 68 of the Wayfarer SDNY Complaint that it was "inappropriate and unorthodox" for Ms. Lively to request the "dailies."

**REQUEST FOR PRODUCTION NO. 96:**

All Documents and Communications concerning Your allegations in paragraphs 62, 72, 77, 133, 137, 140, 142, 143, 154, and 158 of the Wayfarer SDNY Complaint that Ms. Lively imposed "demands" regarding the Film.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents and Communications concerning the "17-point Return to Production Demands," as described in paragraphs 77 through 123 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents and Communications concerning Your allegations in paragraph 62 of the Wayfarer SDNY Complaint that Ms. Lively "caused unending interruptions to the production process, leading to entirely unnecessary stress, chaos, and delays" or "frequently . . . requested changes."

**REQUEST FOR PRODUCTION NO. 99:**

All Documents and Communications concerning the "expense[s]" referenced in paragraphs 64, 114, 117, 140, 144, and 329 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents and Communications concerning Your allegations in paragraph 69 of the Wayfarer SDNY Complaint that Ms. Lively "demand[ed] to edit the whole movie."

**REQUEST FOR PRODUCTION NO. 101:**

All Documents and Communications concerning Your allegations in paragraph 77 of the Wayfarer SDNY Complaint that "Wayfarer would have to sign the [17-point list of demands] as-is, despite the falsity of its insinuations."

**REQUEST FOR PRODUCTION NO. 102:**

All Documents and Communications concerning Your allegations in paragraph 77 of the Wayfarer SDNY Complaint that Wayfarer risked "los[ing] millions of dollars" or "destroy[ing] [its] relationship with Sony."

**REQUEST FOR PRODUCTION NO. 103:**

All Documents and Communications concerning Your allegation in paragraph 84 of the Wayfarer SDNY Complaint that "only 'essential' individuals (e.g. film crew, talent) were present for the [birth] scene."

**REQUEST FOR PRODUCTION NO. 104:**

All notes, or handwritten notes, referenced in the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications concerning Your allegation in paragraph 91 of the Wayfarer SDNY Complaint that Ms. Lively "engaged in unchoreographed kissing scenes."

**REQUEST FOR PRODUCTION NO. 106:**

All Documents and Communications concerning Your allegations in paragraph 92 of the Wayfarer SDNY Complaint that "the only two kissing scenes filmed during the initial filming period were both scenes that included kisses as written in the script" and "the[] kissing scenes were not improvised."

CONFIDENTIAL

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications concerning Your allegations in paragraph 92 of the Wayfarer SDNY Complaint that "the[] kissing scenes were not improvised."

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications concerning Your allegation in paragraph 101 of the Wayfarer SDNY Complaint that Ms. Lively "falsely suggest[ed] that she was shown pornography or naked images of Heath's wife on set."

**REQUEST FOR PRODUCTION NO. 109:**

All Documents and Communications concerning Your allegation in paragraph 104 of the Wayfarer SDNY Complaint that "Baldoni and Heath were led into situations that would later be characterized as harassment."

**REQUEST FOR PRODUCTION NO. 110:**

All Documents and Communications concerning the January 4, 2024, meeting with Ms. Lively and Mr. Reynolds, as alleged in paragraphs 127 through 130 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Communications demonstrating that Ms. Lively threatened not to promote the Film or refused to promote the Film, as alleged in paragraphs 140, 142, 144, 148, 152, 158, and 161 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Communications concerning Your allegations in paragraph 140 of the Wayfarer SDNY Complaint that creating and/or editing a "cut of the Film" is "a right that is ***exclusively*** reserved for directors."

CONFIDENTIAL

**REQUEST FOR PRODUCTION NO. 113:**

All Documents and Communications concerning Your allegation in paragraph 146 of the Wayfarer SDNY Complaint that Ms. Lively "insisted that her version [of the Film] be released to the public instead of Baldoni's cut as director."

**REQUEST FOR PRODUCTION NO. 114:**

All Documents and Communications concerning Your allegation in paragraph 148 of the Wayfarer SDNY Complaint that Ms. Lively "removed Baldoni . . . out of all posters, trailers, and other promotional materials."

**REQUEST FOR PRODUCTION NO. 115:**

All Documents and Communications concerning Your allegations in paragraph 149 of the Wayfarer SDNY Complaint that, "[o]ver Sony's objection, Lively insisted on screening her cut at Book Bonanza" and "Sony made it known to Wayfarer that, per Lively, Baldoni could not attend" Book Bonanza.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents and Communications concerning Your allegation in paragraph 149 of the Wayfarer SDNY Complaint that Baldoni "was not even allowed to review the final cut *before it was shown to the world*."

**REQUEST FOR PRODUCTION NO. 117:**

All Documents and Communications concerning Your allegation in paragraph 158 of the Wayfarer SDNY Complaint that, Ms. Lively "instructed Sony that she and the cast would not participate in any marketing or promotion of the Film alongside Baldoni."

CONFIDENTIAL

**REQUEST FOR PRODUCTION NO. 118:**

All Documents and Communications concerning Your allegation in paragraph 159 of the Wayfarer SDNY Complaint that "Lively induced the other cast members to shun Baldoni."

**REQUEST FOR PRODUCTION NO. 119:**

All Documents and Communications concerning Your allegation in paragraph 162 of the Wayfarer SDNY Complaint that Mr. Reynolds "suggest[ed]" to WME that it was "working with a 'sexual predator'" and "demanded that [WME] 'drop' Baldoni."

**REQUEST FOR PRODUCTION NO. 120:**

All Documents and Communications concerning Your allegations in paragraph 162 of the Wayfarer SDNY Complaint that Ms. Lively "falsely (and ironically) allege[d] Baldoni set out on a 'smear campaign.'"

**REQUEST FOR PRODUCTION NO. 121:**

All Documents and Communications concerning Your allegations in paragraph 163 of the Wayfarer SDNY Complaint that "Lively systematically excluded Baldoni from all marketing and promotional efforts with her and the cast for the Film."

**REQUEST FOR PRODUCTION NO. 122:**

All Documents and Communications concerning Your allegations in paragraph 166 of the Wayfarer SDNY Complaint that, Ms. Lively "threatened that if Baldoni attended the premiere, she and the majority of the cast would boycott."

**REQUEST FOR PRODUCTION NO. 123:**

All Documents and Communications concerning Your allegation in paragraph 169 of the Wayfarer SDNY Complaint related to the premiere of the Film.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents and Communications concerning the agreement between Ms. Sloane and Nathan, as alleged in paragraph 187 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Communications concerning Your allegation in paragraph 187 of the Wayfarer SDNY Complaint that Ms. Sloane "disseminate[d] false and defamatory stories about Baldoni and Wayfarer."

**REQUEST FOR PRODUCTION NO. 126:**

All Documents and Communications concerning Your allegation in paragraph 190 of the Wayfarer SDNY Complaint that Ms. Sloane "seed[ed] false information to cast Baldoni in a negative light."

**REQUEST FOR PRODUCTION NO. 127:**

All Documents and Communications concerning Your allegation in paragraph 192 of the Wayfarer SDNY Complaint that, Ms. Sloane "had provided the [Daily Mail] reporter with information that significantly altered the narrative of the published story" or "planted false and defamatory information about Baldoni[.]"

**REQUEST FOR PRODUCTION NO. 128:**

All Documents and Communications concerning the "massive PR crisis" involving Wayfarer and Baldoni as alleged in paragraphs 226 and 227 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents and Communications concerning Your retention of Nathan as a "crisis PR specialist," as alleged in paragraphs 226 and 227 of the Wayfarer SDNY Complaint.

CONFIDENTIAL

**REQUEST FOR PRODUCTION NO. 130:**

All Documents and Communications concerning Your allegation in paragraph 227 of the Wayfarer SDNY Complaint that "a negative story was being 'shopped' around to multiple outlets, positioning Baldoni's religion as a 'cult' and accusing Baldoni of having 'fat shamed' Lively."

**REQUEST FOR PRODUCTION NO. 131:**

All Documents and Communications concerning the August 12, 2024 call between You and Abel, on the one hand, and "two executives from their then talent agency," on the other hand, as alleged in paragraphs 250 through 252 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents and Communications concerning Your allegation in paragraph 251 of the Wayfarer SDNY Complaint that Nathan "disabused the executives of th[e] notion" that "Wayfarer, Baldoni and Heath were waging a shadow campaign against [Ms. Lively]."

**REQUEST FOR PRODUCTION NO. 133:**

All Documents and Communications concerning the August 13, 2024, call between You and Abel, on the one hand, and "talent agency executives," on the other hand, as alleged in paragraphs 253 through 255 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents and Communications concerning Your allegation that Ms. Lively provided a copy of her CRD Complaint to *The Times* prior to filing it on December 20, 2024, as alleged in paragraphs 264 through 270 of the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents and Communications concerning Your allegations in paragraphs 274, 283 and 287 of the Wayfarer SDNY Complaint that the "complete communications" and "objective

evidence" unequivocally contradict claims that "the Wayfarer [Defendants] orchestrated a premeditated smear campaign."

**REQUEST FOR PRODUCTION NO. 136:**

All Documents and Communications concerning Your allegation in paragraph 299 of the Wayfarer SDNY Complaint that, Ms. Lively or her employees, agents, or representatives "have cost the Wayfarer [Defendants] their film, their reputations, their future prospects, even their talent agency."

**REQUEST FOR PRODUCTION NO. 137:**

All Documents and Communications concerning any business opportunities, contracts, endorsements, or employment offers that You claim were withdrawn, delayed, or otherwise impacted due to the alleged conduct of Ms. Lively for which You seek to recover damages.

**REQUEST FOR PRODUCTION NO. 138:**

All Documents and Communications concerning any claim of lost earnings or future lost earnings relating to the alleged conduct of Ms. Lively for which You seek to recover, including, but not limited to, salary records, employment contracts, anticipated revenue from business ventures, creative projects, endorsement deals, and projections of income.

**REQUEST FOR PRODUCTION NO. 139:**

All Documents and Communications concerning any harm to Your reputation, as alleged in paragraph 299 of the Wayfarer SDNY Complaint, including, but not limited to, Communications with employers, agents, studios, production companies, advertisers, or other business partners regarding any reduction, termination, or modification of contracts, business deals, or opportunities.

**REQUEST FOR PRODUCTION NO. 140:**

All Documents and Communications in which You discuss or document any alleged emotional distress, humiliation, embarrassment, or loss of enjoyment of life caused by the Lively Parties', as that term is defined in the Wayfarer SDNY Complaint, alleged actions.

**REQUEST FOR PRODUCTION NO. 141:**

All Documents and Communications concerning any efforts You have taken to mitigate or reduce the damages You claim(s), including efforts to obtain alternative business opportunities, employment, partnerships, creative projects or public relations efforts to restore Your reputation.

**REQUEST FOR PRODUCTION NO. 142:**

All Documents and Communications concerning any payments, settlements, compensation, insurance proceeds, or other financial recovery received in connection with any of the damages alleged in the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 143:**

Documents sufficient to show all folders and subfolders of any email account from July 1, 2024 to the present, for which You (i) provided access to Content Creators or the media, or (ii) used to communicate talking points, guidelines, scripts, or messaging of any kind, regarding Ms. Lively and/or the Lively Parties, as that term is defined in the Wayfarer SDNY Complaint, including but not limited to the entire inbox folder, outbox folder, draft folder, archive folder, junk folder, or any other folder, regardless of whether any email was sent or received, and all metadata related thereto. For the sake of clarity, "provided access to" shall include any method by which access may be provided, including but not limited to by sharing the email account password or screen sharing the contents of any email folder.

CONFIDENTIAL

**REQUEST FOR PRODUCTION NO. 144:**

All Documents and Communications contained within any folder or subfolder identified and/or produced in response to Request No. 143.

**REQUEST FOR PRODUCTION NO. 145:**

With respect to any email account identified and/or produced in response to Request No. 143, all Documents and Communications, including but not limited to drafts, ever placed in any folder of such email account, regardless of whether or not any email reflecting such Documents and/or Communications was sent or received.

**REQUEST FOR PRODUCTION NO. 146:**

All Documents and Communications concerning the amount or calculation of any damages that You allege to have suffered as a result of Ms. Lively and/or the Lively Parties, as that term is defined in the Wayfarer SDNY Complaint.

**REQUEST FOR PRODUCTION NO. 147:**

All Documents and Communications concerning Your financial condition, including but not limited to Your net worth, assets and gross income.

**REQUEST FOR PRODUCTION NO. 148:**

All Documents reflecting Your current financial condition, including but not limited to Your net worth, assets, gross income, credit reports and ratings, valuation analyses and reports, investor reports, tax records, accounts receivable, balance sheet reports, real property statements, and loan or credit applications.

**CONFIDENTIAL**

Dated: March 26, 2025

/s/ Esra A. Hudson
MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson
Stephanie A. Roeser
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
E-mail: ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
7 Times Square
New York, NY 10036
(212) 790-4500
Email: mbruno@manatt.com

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
Meryl Governski
1875 K Street NW
Washington, DC 20006
(202) 303-1000
E-mail: mgottlieb@willkie.com
kbender@willkie.com
mgovernski@willkie.com

Aaron Nathan
787 7th Avenue
New York, NY 10019
(212) 728-8000
E-mail: anathan@willkie.com

*Attorneys for Blake Lively and Ryan Reynolds*

## CERTIFICATE OF SERVICE

I certify that on March 26, 2025, the foregoing was served via email on all counsel of record.

*/s/ Esra A. Hudson*
Esra A. Hudson