# EXHIBIT 10

Filed Under Seal

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF NEW YORK

 2
      BLAKE LIVELY,                )
 3          PLAINTIFF,             )   CASE NO.
                                   )   1:24-CV-10049-LJL
 4    VS.                          )   (CONSOLIDATED WITH
                                   )   1:25-CV-00449-LJL
 5    WAYFARER STUDIOS LLC,        )
      JUSTIN BALDONI, JAMEY        )
 6    HEATH, STEVE SAROWITZ,       )
      IT ENDS WITH US MOVIE        )
 7    LLC, MELISSA NATHAN,         )
      THE AGENCY GROUP PR          )
 8    LLC, JENNIFER ABEL, JED      )
      WALLACE, AND STREET          )
 9    RELATIONS INC.,              )
           DEFENDANTS.             )
10    _____
      JENNIFER ABEL,               )
11        THIRD-PARTY              )
          PLAINTIFF,               )
12                                 )
      VS.                          )
13                                 )
      JONESWORKS LLC,              )
14        THIRD-PARTY              )
          DEFENDANT.               )
15    _____
      WAYFARER STUDIOS LLC,        )
16    JUSTIN BALDONI, JAMEY        )
      HEATH, IT ENDS WITH US       )
17    MOVIE LLC, MELISSA           )
      NATHAN, JENNIFER ABEL,       )
18    AND STEVE SAROWITZ,          )
           CONSOLIDATED            )
19         PLAINTIFFS,             )
                                   )
20    VS.                          )
                                   )
21    BLAKE LIVELY, RYAN           )
      REYNOLDS, LESLIE             )
22    SLOANE, VISION PR,           )
      INC., AND THE NEW YORK       )
23    TIMES COMPANY,               )
           CONSOLIDATED            )
24         DEFENDANTS.             )
25
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1          ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE

                        OCTOBER 9, 2025

2              CONFIDENTIAL - ATTORNEYS' EYES ONLY

3

4          ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE,

5     produced as a witness at the instance of the Blake

6     Lively and duly sworn, was taken in the above styled and

7     numbered cause on Thursday, October 9, 2025, from 9:14

8     a.m. to 7:36 p.m., before Janalyn Elkins, CSR, in and

9     for the State of Texas, reported by computerized

10    stenotype machine, at the offices of Jackson Walker, 100

11    Congress Avenue, Suite 1100, Austin, Texas, pursuant to

12    the Federal Rules of Civil Procedure and any provisions

13    stated on the record herein.

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL - ATTORNEYS' EYES ONLY

                                                              Page 72

1   about services on email?

2        A.  Not that I recall.

3        Q.  How about on text message?

4        A.  Not -- could you be more specific?

5        Q.  On any form of electronic communication?  Let's

6   broaden it up.

7        A.  And the question did I have any communication

8   with her about any types of services?

9        Q.  That you might provide to Wayfarer Studios?

10       A.  Yeah, we discussed monitoring.

11       Q.  Okay.  In what -- on what platform did you have

12  that conversation with Ms. Nathan?

13       A.  I -- I -- I wouldn't know because I didn't know

14  the client or the details yet.

15       Q.  Were you in -- I'm not talk -- sorry.  Maybe my

16  question was unclear.  I wasn't talking about what

17  platform for monitoring.  I was talking about the

18  platform that you used to communicate with Ms. Nathan

19  about that.  Was it Signal?

20       A.  We've communicated through Signal and phone

21  calls.

22       Q.  By August 8th, 2024, had you communicated with

23  Melissa -- Melissa Nathan on Signal?

24       A.  Related to this?

25       Q.  On anything?

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 73

1        A.   Oh, yes.

2        Q.   Okay.  Did you also communicate with Ms. Nathan

3   on the -- do you -- do you have an Apple iPhone?

4        A.   I do.

5        Q.   Okay.  Did you also communicate with Ms. Nathan

6   as of August 8th, 2024 on the Apple messaging app, the

7   iMessaging app?

8        A.   Ever before?

9        Q.   Yes.

10        A.   I believe so.

11        Q.   Would you say as between those two messaging

12   applications as of August 8th, 2024, with respect to

13   your communications with Melissa Nathan, you used one of

14   those applications more than the other?

15        A.   I -- I would say yes, Signal.

16        Q.   You used Signal more?

17        A.   Uh-huh.

18        Q.   When do you recall -- do you -- do you recall a

19   point in time when you started to use Signal more than

20   regular text messaging with Melissa Nathan?

21        A.   No.

22        Q.   Okay.  At some point in time you did, though?

23        A.   No, I need a more specific question.

24        Q.   Okay.  Do you see, back to the email,

25   Ms. Nathan says, (Reading:)  He is aware we're going for

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 132



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 133



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 134



CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 136

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 148

```
 1              VIDEOGRAPHER:  Going off the record.  The
 2     time is 12:29.
 3                   (Brief recess.)
 4              VIDEOGRAPHER:  Back on the record.  The
 5     time is 1:34.
 6         Q.  (BY MR. GOTTLIEB)  Hi, Mr. Wallace, back on the
 7     record.  Hope you had a good lunch.
 8              We were talking before about a period of
 9     time in October through November of 2024.  We were
10     looking at a bunch of messages.  I think I asked you
11     before about sort of, like, the recordkeeping that you
12     have or that Street has for your work.  If we wanted to
13     recreate one of your days in that period of time after
14     the fact, say, you know, mid-October, end of
15     October 2024, would you have anything in terms of
16     records other than, you know, your text messages,
17     emails, and phone records?
18         A.  Would I have anything other as records?  Is
19     that what you're asking?  I'm sorry.
20         Q.  Any information that you would have stored
21     somewhere that would help us to recreate one of your
22     days going back in time other than your -- what -- what
23     is -- you have preserved in the form of text messages,
24     whether Signal or Apple, emails, and phone records that
25     show outgoing and incoming calls?
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 149

1      A.   No.

2      Q.   Do you keep --

3      A.   Not that I'm aware of.

4      Q.   I'm sorry.

5      A.   Not that I'm aware of.

6      Q.   Okay.  Do you keep a calendar?

7      A.   Yeah.  There's -- there's a calendar of events.

8      Q.   You -- you have a calendar personally?

9      A.   Yeah.  I mean, everyone has I on an iPhone.

10     Q.   Okay.  Do you ever put work calls or work

11  meetings into your calendar on your iPhone?

12     A.   Yes.

13     Q.   Okay.  And if you get invited to a Zoom or a

14  Microsoft Teams meeting or something like that, that

15  from time to time show up in your calendar on your

16  iPhone?

17             MR. BABCOCK:  Objection.

18             THE WITNESS:  Yeah.  If -- if someone sent

19  me a link to that, you know, it just populates

20  sometimes.  You accept or deny.

21     Q.   (BY MR. GOTTLIEB)  All right.  So sometimes you

22  will have a -- depending on whether somebody sent you

23  the invite to your -- your email or your -- otherwise

24  sent you an invite that populates into your calendar?

25     A.   I need to know more details.

CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 172



CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 173

[redacted]

CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 198



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 199



CONFIDENTIAL - ATTORNEYS' EYES ONLY



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 201



CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Page 202**



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 226

1    the Texas case.  In fact, Ms. Lively has prevented us

2    from taking discovery in the Texas case.  So if -- if

3    your questions are limited to the New York case where

4    the accusations are clear about what she's alleging,

5    I'll let him answer.  But I don't want him answering

6    questions about the Texas case.

7                    MR. GOTTLIEB:  Well, as you recall in

8    Ms. Lively's deposition, you, in your limited time, and

9    it was limited, asked her questions about the Texas 202

10    position, correct?

11                    MR. BABCOCK:  Well, I asked her what I

12    asked her.

13                    MR. GOTTLIEB:  Okay.

14                    MR. BABCOCK:  But I wasn't asking her about

15    the Texas case.

16        Q.  (BY MR. GOTTLIEB)  I'm not asking you

17    specifically about allegations in your Texas complaint.

18    Okay?

19        A.  Okay.

20        Q.  But at any point in time, perhaps other than

21    your allegations in your Texas complaint, have you ever

22    claimed or alleged that Ms. Lively fabricated her

23    allegations of sexual harassment?

24        A.  Not that I recall.

25        Q.  Has -- have you ever had, to your knowledge, a

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 232

1      Q.   Okay.  At any point in time, did you gain that

2  understanding?

3      A.   As I said, he's my lawyer since 2020.  That was

4  my first phone call.  We were trying to process what it

5  meant.

6      Q.   All right.  Did you understand when you

7  received this email and the attached cease and desist

8  letter that you were required to preserve all documents

9  concerning Ms. Lively's sexual harassment allegations

10  against Mr. Baldoni and other Wayfarer parties?

11          MR. BABCOCK:  I don't need to say this, but

12  exclude conversations with a -- your lawyer.  Lawyers.

13          THE WITNESS:  Yes.

14          Ask the question again, I'm sorry.

15      Q.   (BY MR. GOTTLIEB)  Did you understand that this

16  letter required you to preserve all documents concerning

17  Ms. Lively's sexual harassment allegations against

18  Mr. Baldoni and other Wayfarer parties?

19      A.   I did.

20      Q.   And did you understand that the document or

21  the -- sorry.  Did you understand that you were required

22  to preserve all documents concerning Ms. Lively's

23  retaliation allegation against the Wayfarer parties?

24      A.   I did.

25      Q.   Did you understand that preservation

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 233

1    requirement to extend to electronically stored

2    information?

3          A.  Yes.

4          Q.  And you saw the long description of

5    electronically stored information in this letter as you

6    were reviewing it?

7          A.  I did.

8          Q.  You saw that that included things like WhatsApp

9    and Signal?

10         A.  I did.

11         Q.  And emails and text messages?

12         A.  Yes.

13         Q.  Okay.  What steps did you take, and I don't

14   want to know about conversations that you had with your

15   counsel.  But what steps, if any, did you personally

16   take to preserve documents after receiving this letter?

17         A.  I called my lawyer.

18         Q.  Okay.  Apart from talking to your attorneys,

19   which I will not ask you about, did you take any steps

20   personally to engage in document preservation for your

21   devices?

22         A.  I did what they suggested.

23         Q.  Okay.  Did you -- did you personally go into

24   your phone and change any settings, retention settings

25   on your Signal app after receiving this letter?

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 234

1       A.  I don't recall doing that.
2       Q.  Okay.  Do -- do you recall examining the
3   retention settings on the Street Relations email
4   accounts?
5       A.  I don't recall.
6       Q.  Do you -- do you know one way or the other
7   whether the Street Relations email account have
8   retention settings on them?
9       A.  Yeah, they retain everything --
10      Q.  For how long?
11      A.  -- from my understanding.  I don't recall.
12      Q.  Okay.  So you don't know if that's indefinite
13   or for some period of time?
14      A.  I don't as we sit here.
15      Q.  Okay.  Do you recall going into your WhatsApp
16   account and changing any settings in that?
17      A.  I don't recall.
18      Q.  And how about in iMessage, do you recall
19   looking at any settings that you might have had with
20   respect to data retention on the cloud for -- for Apple
21   or for your device with Apple?
22      A.  I don't recall.
23      Q.  You, from time to time, use the -- the voice
24   note feature; is that right?
25      A.  Yes.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 235

```
 1        Q.  And am I right that the voice note feature is
 2   configured in a way on Apple devices where voice notes
 3   will not automatically be saved to devices?
 4        A.  I -- I don't know the specifics.
 5        Q.  Okay.
 6        A.  What's the question again, what you're asking?
 7        Q.  Do you know if on your device, the -- the voice
 8   notes that you send or receive are automatically saved
 9   to your device or whether you have to save them
10   yourself?
11        A.  I -- I don't know offhand.
12        Q.  Okay.  So you don't know one way or the other
13   whether, for example, if you send a voice note to
14   someone in the context of a text thread whether that is
15   saved, that being the voice note, along with the text
16   thread?
17        A.  I'd need to know more specifics.
18        Q.  Okay.  But you don't know, right?
19        A.  I -- not offhand.
20        Q.  Okay.  Apart from your Street Relations email,
21   do you use any other email account?
22        A.  There's a Mac address.
23        Q.  Okay.
24        A.  Nothing for business.
25        Q.  Have you ever received or sent, whether
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 315

```
 1                    THE WITNESS:  Yeah, I -- I -- I don't -- I
 2    don't recall.
 3         Q.  (BY MR. GOTTLIEB)  So you can't rule it out?
 4                    MR. COOLEY:  Objection.
 5                    THE WITNESS:  I -- I need to know more
 6    details.
 7         Q.  (BY MR. GOTTLIEB)  You've got to answer my
 8    question, sir.  It's a yes or no question.  Can you rule
 9    out the possibility that you were on a Signal chain with
10    Katie Case and Melissa Nathan as this -- on the date of
11    this message here, August 8th, 2024?
12                    MR. COOLEY:  Same objection.
13                    MR. BABCOCK:  Me too.
14                    THE WITNESS:  Yeah, I -- I don't know what
15    indicates this is a Signal message, so I'd need to know
16    more information.
17         Q.  (BY MR. GOTTLIEB)  Okay.  You were
18    communicating with people at TAG by this time in August
19    of 2024, right, on Signal?
20         A.  Sure, yes.
21         Q.  Including Melissa Nathan?
22         A.  Correct.
23         Q.  Okay.  And you just don't recall whether this
24    is among the Signal messages that -- or Signal chains
25    that you were on?
```