# Exhibit 2

## NON-DISCLOSURE AND INTELLECTUAL PROPERTY RIGHTS AND NON-SOLICITATION AGREEMENT (EMPLOYEES)

AGREEMENT dated July 9, 2020, by and between JONESWORKS LLC, a Delaware limited liability company having an address at 211 East 43rd Street, New York, NY, 10017 (the "Agency") and Jennifer Abel, an individual residing at ▇▇▇▇▇▇▇ ("Employee").

### BACKGROUND

The Agency values Employee's services, and desires to retain the services of Employee, and Employee wishes to be employed by the Agency.

NOW, THEREFORE, in consideration of employment by the Agency of Employee, and the compensation to be paid by the Agency to Employee now and hereafter, the Agency and Employee agree as follows:

1. **Confidential Information**.

    (a) *Agency Information*. In the course of your employment, you will have access to information of and relating to the Agency, its clients, former clients and prospective clients and other third parties that is non-public, confidential or proprietary in nature ("Confidential Information"). Confidential Information specifically includes, without limitation, any data or information that is proprietary to the Company and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including, but not limited to: (i) any marketing strategies, plans, financial information, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; (ii) plans for products or services; (iii) Company's accounts, customers and clients; (iv) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (iv) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; and (v) any other information that should reasonably be recognized as confidential information of the Company including but not limited to any advertising, marketing or communications campaigns and content on which the Company works that has not been released to the public with the Company's client's authorization. Confidential Information does not include information which is in the public domain other than by breach of this Employee Agreement on the part of Employee. Employee agrees that, except as required in the lawful performance of employment duties to the Agency, Employee will not disclose to others, including, without limitation, privately, on the internet, via text message, on any blog, or on any social networking website, tool or device (such as Twitter, YouTube, Facebook, Pinterest, Instagram, etc.) or any other public forum, use for Employee's own benefit or for the benefit of anyone other than the Agency, or otherwise appropriate or copy, Confidential Information, whether or not developed by Employee and whether disclosed to Employee by the Agency, its clients or other third parties, either directly or indirectly, in writing or orally, or learned by Employee by observation or creation in the course of Employee's duties,

whether or not during working hours. Employee will also take all reasonable measures, in accordance with the Agency's policy and instructions from Employee's supervisor, to protect Confidential Information from any accidental, unauthorized, or premature use, disclosure, or destruction. Employee's obligation to protect Confidential Information will continue throughout Employee's employment with the Agency, and remain in effect after the termination of Employee's employment. If Employee is ordered by a competent court of law, governmental body, or pursuant to subpoena, to disclose any Confidential Information, Employee agrees to provide Agency with prompt notice, prior to any disclosure, so that Agency may seek other legal remedies to maintain the confidentiality of such Confidential Information, and Employee agrees to comply with any applicable protective order or equivalent.

(b) <u>Former Employer Information</u>. Employee represents and warrants that the execution of this Agreement and performance of Employee's obligations hereunder will not conflict with, result in the breach of any provision of or the termination of, or constitute a default under, any agreement with any other person or entity of which Employee is a party or by which Employee is bound. Furthermore, Employee will not, during Employee's employment with the Agency, improperly use or disclose any proprietary information or trade secrets of any former employer or other person or entity with which Employee has an agreement or duty to keep in confidence and that Employee will not bring onto the premises of the Agency or any client any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) <u>Third Party Information</u>. Employee recognizes that the Agency has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Agency's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Employee agrees to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Employee's work for the Agency consistent with the Agency's agreement with such third party.

(d) <u>Notice Pursuant to Defend Trade Secrets Act, 18 U.S.C. § 1833(b)</u>. Employee hereby acknowledges that Agency has informed Employee, in accordance with 18 U.S.C. § 1833(b), that Employee may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret where the disclosure (a) is made (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (2) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

2. **Ideas and Creations**.

(a) All results and proceeds of Employee's services to the Agency, including without limitation treatments, pitches, scripts, notes, artwork, presentations, distribution plans, technical information, workflows, strategies, business plans, software design or code, discoveries, concepts, ideas, inventions, innovations, improvements, developments, methods,

2

designs, analyses, drawings, sketches, writings, photography, reports, patent applications or copyrightable work and other property or elements that Employee may conceive, develop or procure in connection with Employee's services for the Agency or its clients or prospective clients, including all materials incorporated therein and all preliminary or other copies thereof, (collectively, "Work Product") whether such Work Product was conceived or created by Employee individually or jointly, on or off the premises of the Agency or during or after working time, shall be "works made for hire" for Agency, and all rights therein, including but not limited to the exclusive copyright, shall be the property of the Agency or its clients. For purposes of clarity, this means that Agency or its clients shall be deemed the sole owner throughout the universe of any and all rights of every nature in such Work Product, with the right to license and dispose of the Work Product, in perpetuity, in any manner Agency or its clients determine in its or their sole discretion, without any payment to Employee, whether such rights or means or use are now known or hereafter defined or discovered.

(b)     If, for any reason, any Work Product is considered not to be a work-made-for-hire, Employee hereby irrevocably assigns to the Agency, any and all right, title and interest in and to such Work Product, including without limitation, any and all copyrights, patents, trade secrets, trademarks and/or other rights of every nature, and Employee agrees to take all actions necessary (at the Agency's expense) to secure such Agency rights. Employee also waives any and all "moral rights" in and to any such Work Product created by Employee. To be clear, all rights granted by Employee pursuant to this paragraph are fully compensated by Employee's salary.

(c)     For purposes of clarity, Work Product shall not include all copyrightable work that is created by Employee outside of his Services to the Agency and that is created on his own time and without use of the Agency's property or equipment or that of the Agency's clients.

(d)     Employee acknowledges and understands that the provisions of this Section 2 requiring assignment of Work Product to the Company and or its clients do not apply to any Work Product that qualifies fully under the provision of California Labor Code Section 2870, to the extent that such provision applies to Employee. Employee agrees to advise the Company promptly in writing of any inventions that Employee believes meet the criteria in California Labor Code Section 2870.

3.  **No Portfolio Use.** Employee agrees that Employee will not at any time (during or after Employee's employment) use or display (or authorize any third party to use or display) any Work Product which Employee creates in the course of Employee's employment in any manner, including, without limitation, as part of Employee's portfolio, "reel" or book or on a website or other medium, without the Agency's prior written approval.

4.  **Interviews, Speeches or Writings about Agency.** Except in the performance of Employee's authorized duties for Agency, consistent with Agency's policies, Employee shall obtain the express authorization of the Agency before (i) giving any speeches or interviews; or (ii) preparing or assisting any person or entity in the preparation of any books, articles, radio broadcasts, electronic communications, television or motion picture productions or other creations, in any case concerning Agency, its affiliates, parent Agency or clients or any of their respective officers, directors, agents or employees. Employee may provide notice to the public

CONFIDENTIAL                                                                                                  JONESWORKS_JA_000006778

of Employee's separation from the Company, so long as such notice is done in a manner normal and customary in the PR community, however any notification to the Agency's clients must be pre-approved by Stephanie Jones.

5. **Non-Disparagement**. Employee shall not, directly or indirectly, in any communications with any reporter, author, producer or any similar person or entity, the press or other media, or any customer, client or supplier of Agency, criticize, ridicule or make any statement that disparages or is detrimental to Agency, its affiliates, parent Agency or clients or any of their respective officers, directors, agents or employees.

6. **Policies**. Employee agrees that Employee will abide by all of the Agency's policies, as such policies may be changed and updated from time to time.

7. **Nature of Agency's Business/Acknowledgement and Consent to Exposure to Materials**. Employee acknowledges that in the course and scope of Agency's business and Employee's duties while working for Agency, Employee may be exposed to Agency clients' indecent, offensive, and/or graphic material and profane language. Such graphic material may include, but is not limited to, sexually explicit photographs and video recordings, lewd or salacious video or audio recordings, audio or video recordings containing reference to or acts of sexual or physical violence and/or other criminal acts, video and photographs depicting or referencing the use of alcohol and/or other controlled substances, audio or video recordings featuring insensitive or offensive comments regarding race, religion, ethnicity, sexuality, national origin, and disabilities, and performance of its duties as a publicist, may be required to address a client's involvement in any of the foregoing acts and thus the likelihood of Employee's exposure thereto. Employee represents and acknowledges that s/he is comfortable and capable of working in an environment in which s/he may be exposed to such obscene, indecent, offensive and/or graphic materials and profane language. Employee further agrees that nothing in this paragraph shall be construed as Agency's condoning any such deplorable behavior. Further, Employee acknowledges, understands, and agrees that Employee may not engage in any behavior referred to in this section 7, and that Agency shall have the right to terminate Employee's employment in the event such conduct occurs.

8. **Agency Property**. Employee agrees that all Confidential Information, trade secrets, drawings, designs, reports, computer programs or data, books, handbooks, manuals, files (electronic or otherwise), computerized storage media, papers, memoranda, letters, notes, lists, photographs, facsimile, software, computers, PDAs and other documents (electronic or otherwise), materials, credit cards, keys, passwords, digital data, and equipment of any kind that Employee has acquired or will acquire during the course of Employee's employment with the Agency are and remain the property of the Agency. Upon termination of employment with the Agency, or sooner if requested by the Agency, Employee agrees to return all such documents, materials and records to the Agency and not to make or take copies of the same without the prior written consent of the Agency.

9. **Exclusive Employment**. Employee agrees that while Employee is employed by the Agency, Employee's employment shall be exclusive and Employee shall not provide services to any entity in the public relations, media communications, marketing, branding or talent management business or any similar business without the Agency's prior written approval.

4

CONFIDENTIAL

JONESWORKS_JA_000006779

10.     **At Will**. Employee understands that Employee's employment with the Agency is at will, which means that the Agency may terminate Employee's employment at any time, with or without reason, and with or without advance notice, without any further obligation to Employee, and Employee may resign Employee's employment at any time, with or without reason, and with or without notice. This "at will" employment relationship may not be changed except in a writing signed by an executive officer of the Agency.

11.     **Restrictions**.

    (a)     Agency's Business. Employee acknowledges (i) that the business and the industry in which the Agency competes is highly competitive; (ii) that as part of Employee's employment with the Agency, Employee will participate in the servicing of current clients and the solicitation of prospective clients, and in connection with these services, the Agency will disclose to Employee, and Employee will obtain, Confidential Information of the Agency, including, without limitation, knowledge of the proprietary methods, business practices, operations, prices and costs of the Agency; (iii) that Employee's employment requires the performance of services that are special, unique, extraordinary and intellectual in character; and (iv) in the course of Employee's employment with the Agency, Employee may develop a personal relationship with the clients of the Agency and a knowledge of those clients' affairs and requirements, and, during the course of Employee's employment, the relationship of the Agency with its clients will be placed in Employee's hands by the Agency in confidence and trust. Employee consequently agree that it is a legitimate interest of the Agency, and reasonable and necessary for the protection of the Agency's valuable Confidential Information, goodwill and business, that Employee make the covenants contained in this Employee Agreement.

    (b)     Restriction. Accordingly, Employee agrees that, for as long as Employee is employed by the Agency and for a period of twelve (12) months thereafter, Employee will not, directly or indirectly, individually, or through an entity, except on behalf of the Agency, (i) hire, engage or solicit (or attempt to hire, engage or solicit) any person who is, or at any time during the preceding six (6) months was, an employee, exclusive consultant or freelancer of the Company with whom Employee worked or became aware of during Employee's employment; (ii) use any Company Confidential Information in order to solicit business from, or in any way render services to, any Client (as defined below), or persuade any Client to cease to do business or to reduce the amount of business which such Client has customarily done or contemplates doing with the Company. The time period during which Employee is prohibited from being engaged in certain business practices pursuant to Section 11 shall be extended by any length of time during which Employee is in breach of such covenant.

    (c)     Client. As used in this Section 11, the term "Client" means any person, firm, corporation or other entity (i) that is, or at any time during the preceding one year period was, a client of the Agency's or a prospective client to which the Agency made a presentation or other offering of services during the preceding one year period; or (ii) that is a prospective client to which the Agency made a new business presentation (or similar offering of services) at any time within six (6) months after the date of termination of Employee's employment, if, during Employee's employ with the Agency, Employee was involved with the preparation of, or the strategy or discussions with respect to, such new business presentation (or similar offering of services).

CONFIDENTIAL                                                                JONESWORKS_JA_000006780

(d) <u>Reasonable</u>. Employee further acknowledges and agrees that, because of the nature of the business engaged in by the Agency and the fact that Clients can be and are serviced by the Agency wherever located, the restrictions set forth in this Section 11 of this Employee Agreement are reasonable and necessary to protect the Agency's legitimate business interests; provided, however that if a court determines that the restrictions set forth herein are unreasonable based upon length of time, geographic scope or for other reason, the parties contemplate that such court shall modify, apply and enforce such restrictions to the maximum extent allowed by law, without affecting the validity of any other provision of this Employee Agreement. Employee also acknowledges that the restrictions set forth in this Employee Agreement will not prevent Employee from earning a livelihood or otherwise supporting yourself after employment with the Agency and/or during the term of the restrictions.

(e) <u>Notice to Third Parties</u>. Employee agrees that during the periods of time during which Employee is restricted in taking certain actions by the terms of this Employee Agreement, Employee shall inform any entity or person with whom Employee may seek to enter into a business relationship (whether as an owner, employee, independent contractor or otherwise) of Employee's contractual obligations under this Employee Agreement. Employee also understands and agrees that the Agency may, with or without prior notice to Employee and during or after the term of this Employee Agreement, notify third parties of Employee's agreements and obligations under this Employee Agreement.

(f) <u>Other Covenants</u>. The restrictions set forth herein shall be in addition to (and not in lieu of) the restrictions set forth in any other agreement entered into between you and the Company.

12. <u>Enforcement</u>. Employee understands that the obligations outlined in this letter are the concern and responsibility of all employees of the Agency. By signing this document, Employee understands that Employee has a legal commitment to abide by the above obligations. Employee recognizes that any violation or threatened violation of the terms and conditions set forth above in this Employee Agreement will cause the Agency irreparable injury and that in addition to whatever other remedies may be available to the Agency at law or otherwise, the Agency will be entitled to injunctive relief without being required to post a bond or other security.

13. <u>Governing Law</u>. This Employee Agreement has been made and shall be interpreted in accordance with the laws of the State of California without regard to conflicts of law principles.

CONFIDENTIAL                                                                JONESWORKS_JA_000006781

14. **Miscellaneous**. This Employee Agreement represents the entire agreement between the Agency and Employee with respect to the subject matter of this Agreement. No modification of this Employee Agreement will be effective or binding, unless it is in a writing and signed by both Employee and the Agency. No waiver by either Employee or the Agency of the breach of any terms or condition of this Employee Agreement will constitute a waiver of any subsequent breach of such provision or a waiver of the provision itself. If any provision of this Agreement is held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining parts or provisions of this Agreement and this Agreement will be construed and enforced as if such illegal or invalid provision had not been included.

AGREED:

DocuSigned by:
Jennifer Abel
D378BAF7CD68410

7/10/20

Date

Signature of Employee

Jennifer Abel

Print Name of Employee

7