UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>　　　　　　　Plaintiff,<br><br>-v-<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,<br><br>　　　　　　　Defendants.<br><br>JENNIFER ABEL,<br><br>　　　　　　　Third-Party Plaintiff,<br><br>-v-<br><br>JONESWORKS LLC,<br><br>　　　　　　　Third-Party Defendant. | Case No. 1:24-cv-10049-LJL<br>(consolidated with 1:25-cv-00449-LJL)<br><br><br><br>**LOCAL RULE 56.1 STATEMENT<br>BY THIRD-PARTY PLAINTIFF<br>JENNIFER ABEL** |

Third-party Plaintiff Jennifer Abel ("Abel"), by her undersigned attorneys, hereby submits the following statement, pursuant to Local Civil Rule 56.1, of which she claims that there are no genuine issues of material fact to be tried:

**Procedural History**

1. On December 31, 2024, Plaintiff Blake Lively ("Plaintiff") commenced this action by filing a complaint. (*See* Dkt. 1).

2. Plaintiff named, among others, Abel as a defendant in the complaint. (Id).

1

3. On July 30, 2025, Plaintiff filed a second amended complaint, again naming Abel as a defendant. (*See* Dkt. 520).

4. On August 13, 2025, Abel answered the second amended complaint and filed an amended third-party complaint ("Answer and Third-Party Compl."), naming Jonesworks LLC ("Jonesworks") as a third-party defendant. (*See* Declaration of Kevin Fritz, dated November 11, 2025 ("Fritz Decl."), Ex. A).

5. Jonesworks responded to the amended third-party complaint by filing a motion to dismiss. (*See* Dkt. 670).

6. On October 9, 2025, the Court issued an Opinion and Order, denying Jonesworks' motion to dismiss, in its entirety. (*See* Dkt. 852).

7. On October 23, 2025, Jonesworks filed an answer to Abel's amended third-party complaint ("Answer"). (Fritz Decl., Ex. B).

**Abel's Employment with Jonesworks**

8. Abel resides in Beverly Hills, California. (*See* Declaration of Jennifer Abel, dated November 11, 2025 ("Abel Decl."), ¶ 3).

9. On or about July 9, 2020, Jonesworks hired Abel as Vice President. (Fritz Decl., Ex. A, ¶ 16; Ex. B, ¶ 16; Abel Decl., ¶ 5; Abel Decl., Ex. 1).

10. Jonesworks is a well-known public relations firm founded by Stephanie Jones ("Jones"), who serves as its CEO. (Abel Decl., ¶ 4; Fritz Decl., Ex. C at 32:7-33:16).

11. As a condition of her employment, Abel executed a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement ("2020 Employment Agreement"). (Fritz Decl. Ex. A, ¶ 17; Ex. B, ¶ 17; Abel Decl., ¶ 6; Abel Decl., Ex. 2).

12.     Pursuant to the 2020 Employment Agreement, Abel was an at-will employee of Jonesworks.  (Fritz Decl., Ex. A, ¶ 18; Ex. B, ¶ 18; Abel Decl., ¶ 7; Abel Decl., Ex. 2, ¶ 10).

13.     The 2020 Employment Agreement further stated:

> **Exclusive Employment.**  Employee agrees that while Employee is employed by the Agency, Employee's employment shall be exclusive and Employee shall not provide services to any entity in the public relations, media communications, marketing, branding or talent management business or any business without the Agency's prior written approval.

(Abel Decl., Ex. 2, ¶ 9; Fritz Decl., Ex. A, ¶ 18; Ex. B, ¶ 18).

14.     When she joined Jonesworks, Abel oversaw Jonesworks' talent department and sought to grow its Los Angeles office, which at the time only had four employees.  (Abel Decl., ¶ 5).[1]

15.     On or about November 22, 2021, Jonesworks and Abel entered into a modified employment agreement ("2021 Employment Agreement").  (Fritz Decl., Ex. A, ¶ 20; Ex. B, ¶ 20; Abel Decl., ¶ 8; Abel Decl., Ex. 3).

16.     The 2021 Employment Agreement states that Abel would serve as Vice President, Talent.  (Abel Decl., Ex. 3, ¶ 2).

17.     The 2021 Employment Agreement states: Abel's ███████████████████████████████████████████████████████████ (Abel Decl., Ex. 3, ¶ 2; Abel Decl., ¶ 10).

---

[1] *See also* Deadline Article, dated February 16, 2023, "Jennifer Abel Named Partner at Jonesworks" (https://deadline.com/2023/02/jennifer-abel-named-partner-jonesworks-1235262051/) ("Abel was tapped in 2019 to run the Entertainment Division of the Los Angeles office, overseeing a strong growth period, and launching a social media and digital division.").

**The Wayfarer Clients Engage Jonesworks**

18. In or about 2018, before Abel's employment with Jonesworks, Defendant Justin Baldoni ("Baldoni") engaged Jonesworks to provide public relations services to him. (Abel Decl., ¶¶ 5, 14; Fritz Decl., Ex. C at 69:9-13; 71:18-20 ██████████████████████████████████████████

19. After Baldoni's engagement, Defendant Wayfarer Studios LLC ("Wayfarer") retained Jonesworks. (Friz Decl., Ex. C at 69:14-70:6; Abel Decl., Ex. 4).

20. Wayfarer is a production studio founded by Baldoni and others. (Abel Decl., ¶ 12).

21. On or about May 6, 2020, Jonesworks and Wayfarer entered into an agreement on Jonesworks letterhead ("Wayfarer Agreement"). (Abel Decl., ¶ 15; Abel Decl., Ex. 4).

22. Pursuant to the terms of the Wayfarer Agreement, Wayfarer retained Jonesworks "as its exclusive public relations counsel to provide strategic communications services as" described in a schedule to the agreement. (Abel Decl., ¶ 15; Abel Decl., Ex. 4).

23. Schedule A to the Wayfarer Agreement set forth the services Jonesworks would provide in the following chart:

| | |
|---|---|
| Press Materials | • Assist in developing, writing and updating communication materials related to all press outreach such as biographies, media kits, boilerplates, press releases, and key messaging<br>• Manage media and press communications |
| Inter-Agency Programs | Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned |
| Executive Visibility | Position and utilize Wayfarer Studios key executives as thought-leaders and change agents in the film and television industry |
| On-Going/Proactive Outreach | • Develop a 12-month media and communications strategy to further drive awareness<br>• Strategize and execute select film and television project announcements<br>• Conduct proactive feature pitching to top-tier print, broadcast and online media outlets<br>• Conduct media monitoring and competitor tracking for industry press<br>• Conduct regular check-on calls surrounding the status of Wayfarer Studios projects, events and news |
| Measurement and Evaluation | • Clip and Service media as published<br>• Create monthly clip books and activity reports that detail account activity and media impressions<br>• Create and maintain a media library on behalf of Wayfarer Studios |

(Abel Decl., Ex. 4, Schedule A; Abel Decl., ¶ 16).

24. Pursuant to the terms of the Wayfarer Agreement, the initial term of the agreement would commence on May 7, 2020, and conclude on May 6, 2021. (Abel Decl., Ex. 4).

25. The Wayfarer Agreement further provides: "This agreement shall automatically renew for additional one-year periods ("Extension Period(s)") unless notice is received by either party ninety (90) days prior to the expiration of the Initial Term of this Agreement, or any Extension Period." (*Id*).

26. In addition to expenses and other fees, per the Wayfarer Agreement, Wayfarer agreed to pay Jonesworks a service fee of $20,000 per month. (*Id*).

27. According to Jones, ███████████████████████████████████████ ████████. (Fritz Decl., Ex. C at 86:24-87:2).

**Jonesworks Provides Services for Wayfarer Clients**

28. ███████████████████████████████████████████████████

████████████ (Fritz Decl., Ex. C at 82:14-18; 82:25-83:5; 84:15-18).

29. According to Jones, ██████████████████████████████

████. (Friz Decl., Ex. C at 82:19-22).

30. Jones, however, also testified that █████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ (Fritz Decl., Ex. C at 84:21-85:4).

31. Jones also testified: █████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████ (Fritz Decl., Ex. C at 85:9-14).

32. Jonesworks set up email distribution lists to help service the Wayfarer Clients. (Abel Decl., ¶ 20).

33. Emails sent to ████████████████████████ and ████████████████████ were received by multiple Jonesworks' personnel, including Jones and Abel. (*Id*).

34. Jonesworks also provided Baldoni with ████████ (Fritz Decl., Ex. C at 87:3-87:16).

6

35. Jonesworks also assisted Baldoni with ███████████ (Fritz Decl., Ex. C at 87:5-16).

36. Jones testified: ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ (Fritz Decl., Ex. C at 87:12-16).

37. Jones did not ████████████████████████████████ (Fritz Decl., Ex. C at 83:6-14).

38. Jonesworks provided ████████████████████████████. (Fritz Decl., Ex. C at 83:12-14).

39. Among others, Abel was ████████████████████████
██████ (Fritz Decl., Ex. C at 85:15-86:23).

40. After joining Jonesworks, Abel served as the primary point person for Wayfarer and Baldoni during Wayfarer's multi-year engagement with Jonesworks. (Abel Decl., ¶ 17).

41. Abel managed Jonesworks' work for Wayfarer from Jonesworks' Los Angeles office. (Abel Decl., ¶ 18).

42. Through Jonesworks' engagement with Wayfarer, Abel developed a close and trusting relationship with the Wayfarer Clients. (*Id*).

43. Jonesworks directed Abel to carry out the duties of a competent public relations professional on behalf of the Wayfarer Clients, including but not limited to garnering good publicity and eliminating or minimizing bad publicity for them and the film *It Ends With Us* (the "Film"). (Abel Decl., ¶¶ 13, 19).

44. Baldoni directed and co-starred in the Film. (Abel Decl., ¶ 13).

45.     For its services, including Abel's public relations services, the Wayfarer Clients from May 2020 to August 2024 paid fees to Jonesworks. (Abel Decl., ¶ 25; Abel Decl., Ex. 5; Fritz Decl., Ex. C at 86:24-87:2).

**Jonesworks' Public Relations Work for the Wayfarer Clients Concerning the Film**

46.     On July 24, 2024, Abel advised Jones that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Abel Decl., ¶ 31; Abel Decl., Ex. 7).

47.     Jones ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id*).

48.     Wayfarer hired The Agency Group PR LLC ("TAG") to assist Jonesworks with crisis management. (Abel Decl., ¶ 32; Abel Decl., Ex. 8).

49.     On July 31, 2024, Abel texted Jamey Heath ("Heath") and Mitz Toskovic of Wayfarer about a conversation that she had with an independent journalist concerning the exclusion of Baldoni from Film-related promotions and that such journalist was willing to publish a story of Lively's misconduct. (Abel Decl., ¶ 33; Abel Decl., Ex. 9).

50.     At the time she communicated with the journalist, Abel acted within the scope of her employment at Jonesworks, providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 33; Abel Decl., Ex. 4, Schedule A ("Manage media and press communications")).

51.     Abel never followed up her communication with the journalist nor referred the journalist to anyone else. (Abel Decl., ¶ 33).

52.     The journalist never published the story. (*Id*).

53. On August 2, 2024, a representative of TAG sent Abel a "Scenario Planning" document referencing an objective to "[p]rotect the reputation of" the Wayfarer Clients "in the lead up, during, and following the premiere" of the Film and related goals. (Abel Decl., ¶ 34; Abel Decl., Ex. 10).

54. TAG shared the "Scenario Planning" document with Abel because she was a Jonesworks employee responsible for providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 34; Abel Decl., Ex. 4, Schedule A ("Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

55. On August 5, 2024, Abel notified Baldoni that Sony (the co-producer of the Film) had an issue with the word "friction" being used in social media commentary about the on-set relationship between Baldoni and Plaintiff. (Abel Decl., ¶ 35; Abel Decl., Ex. 11).

56. Abel proposed the word "challenge" to downplay such commentary and to highlight that, as director of the Film, Baldoni successfully brought all people together to "create something beautiful" in the Film. (*Id*).

57. Abel made the proposal as part of her employment with Jonesworks, providing a public relations "strategy" to Jonesworks' clients, *i.e.,* the Wayfarer Clients. (*Id*.; Abel Decl., Ex. 4, Schedule A ("Assist in developing, writing and updating communication materials related to all press outreach …")).

58. On August 7, 2024, Abel exchanged text messages with Jonesworks' employee Matthew Mitchell ("Mitchell") and TAG employees Melissa Nathan ("Nathan") and Katie Case ("Case") and Breanna Koslow ("Koslow") about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

███████████████████████████████████████████████████ (Abel Decl., ¶ 36; Abel Decl., Ex. 12).

59. Abel made her comments concerning ███████████████ in the course of her employment at Jonesworks providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 36; Abel Decl., Ex. 4, Schedule A ("Assist in developing, writing and updating communication materials related to all press outreach …")).

60. On August 7, 2024, Case sent Heath and Abel (at her Jonesworks email address) an email referring to "social and digital mitigation and remediation" and to public narratives concerning Baldoni and Wayfarer. (Abel Decl., ¶ 37; Abel Decl., Ex. 13).

61. Case sent the email to Abel because she was a Jonesworks employee providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 37).

62. On August 8, 2024, Abel sent a text message to Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning ████████████████████████████████████ ██████████████. (Abel Decl., ¶ 38; Abel Decl., Ex. 14).

63. Abel flagged the negative public commentary about Baldoni as part of her employment at Jonesworks. (Abel Decl., ¶ 38; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring …")).

64. On August 9, 2024, Abel exchanged text messages with Nathan concerning articles about a "rift" or "feud" between Baldoni and Lively, as well as other potential media coverage of the situation. (Abel Decl., ¶ 39; Abel Decl., Ex. 15).

65. As part of her employment at Jonesworks, Abel monitored news outlets for negative publicity about Baldoni and sought to potentially garner positive publicity for him. (Abel Decl., ¶ 39; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring …"; "Advise on

10

any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

66. Abel exchanged text messages with Nathan on August 9, 2024, as part of her employment at Jonesworks. (Abel Decl., ¶ 39; Abel Decl., Ex. 15).

67. On August 10, 2024, Abel exchanged text messages with Heath, Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning a *Hollywood Reporter* article and TikTok videos related to Plaintiff and/or Baldoni. (Abel Decl., ¶ 40; Abel Decl., Ex. 16; Abel Decl., Ex. 6).

68. The TikTok video from May 17, 2023, included within the text chain shows Baldoni and Plaintiff in a pleasant atmosphere on the set of the Film. (Abel Decl., ¶ 40; Abel Decl., Ex. 6).

69. The *Hollywood Reporter* article discusses why it was important for Baldoni to make a movie about domestic violence. (Abel Decl., ¶ 40; Abel Decl., Ex. 6).

70. Abel sent text messages on August 10, 2024, concerning the *Hollywood Reporter* article and TikTok videos as part of her employment for Jonesworks. (Abel Decl., ¶ 40; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring")).

71. On August 11, 2024, in her capacity as a Jonesworks employee, Abel advised Wayfarer via text message about ███████████████████████████████████████ ███████████████████████████ (Abel Decl., ¶ 41; Abel Decl., Ex. 17).

72. On August 13, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning a TikTok video praising Baldoni and another video criticizing Lively for her marketing of the Film in a manner insensitive to domestic violence victims. (Abel Decl., ¶ 42; Abel Decl., Ex. 18).

11

73. Abel sent the August 13, 2024, text messages as part of her employment at Jonesworks, providing public relations services for the Wayfarer Clients. (Abel Decl., ¶ 42; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring")).

74. On August 15, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning the positive public comments made by ▮▮▮▮▮ (Abel Decl., ¶ 43; Abel Decl., Ex. 19).

75. Abel exchanged the August 15, 2024, text messages as part of her employment for Jonesworks and as its point person assigned to the Wayfarer Clients. (Abel Decl., ¶ 43; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring"; "Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

76. On August 18, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Nathan and Koslow concerning TikTok videos related to the Film. (Abel Decl., ¶ 44; Abel Decl., Ex. 20).

77. The TikTok video called the Film "one of the best movies ever made" and said the Film touched on domestic violence "in the best way possible." (*Id.;* Abel Decl., Ex. 6).

78. Abel exchanged the August 18, 2024, text messages and commented about one of the videos as part of her employment for Jonesworks, providing public relations services for the Wayfarer Clients. (*Id.*; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring"; "Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

79. Abel's employment with Jonesworks ended on August 21, 2024. (Abel Decl., ¶ 23).

**Plaintiff's Claims against Abel Due to her Employment for Jonesworks**

80. On July 30, 2025, Plaintiff filed her Second Amended Complaint in which she asserted claims against Abel for: (a) aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (b) false light invasion of privacy; and (c) civil conspiracy (collectively, "Plaintiff's Claims"). (Abel Decl., ¶ 26; Dkt. 520).

81. According to the Second Amended Complaint, Nathan, her company TAG, and Abel "perpetrated a retaliation scheme against [Plaintiff]" including via "the amplifying of negative content about [Plaintiff]…." (Abel Decl., ¶ 27; Dkt. 520, ¶ 230).

82. Abel denies Plaintiff's allegations. (Abel Decl., ¶ 27; Fritz Decl., Ex. A, ¶ 230).

83. Abel never published, planted, or pitched any negative content about Plaintiff. (Abel Decl., ¶ 45).

84. Abel never "boosted" or "amplified" any negative content about Plaintiff. (Abel Decl., ¶ 46).

85. The pleading further alleges that Nathan, TAG and Abel "aided and abetted the discriminatory conduct of Defendants It Ends With Us Movie LLC, Wayfarer, Baldoni and Heath, including but not limited to by participating in the above-described coordinated 'astroturfing' campaign to discredit and 'bury' Ms. Lively." (Abel Decl., ¶ 27; Dkt. 520, ¶ 411).

86. Abel denies Plaintiff's allegations. (Abel Decl., ¶ 27; Fritz Decl., Ex. A, ¶ 411).

87. In her Third Amended Responses and Objections to my Second Set of Interrogatories (the "Interrogatory Responses"), Plaintiff purports to identify the ████

13



by Abel. (Abel Decl., ¶ 28; Abel Decl., Ex. 6).

88. In her Interrogatory Responses, Plaintiff further alleges that Abel ▇▇▇ negative content about her ▇▇▇ ▇▇▇ and ▇▇▇ ▇▇▇ ▇▇▇ (Abel Decl., ¶ 29; Abel Decl., Ex. 6).

89. As discussed above, the alleged conduct that forms the basis of Plaintiff's Claims against Abel consists of public relations activities conducted on behalf of the Wayfarer Clients as part of Abel's employment for Jonesworks and its clients. (Abel Decl., ¶ 30).

**<u>Jonesworks Knew of and Authorized Abel's Actions</u>**

90. Abel denies any fault and/or responsibility for Plaintiff's Claims or the alleged loss or damage incurred by Plaintiff, because, *inter alia*, Abel undertook the actions while employed by and in the course of her employment for Jonesworks. (Abel Decl., ¶ 47).

91. Abel did not take any of the actions at issue herein in pursuit of her own interest. (Abel Decl., ¶ 48).

92. Jonesworks knew of and foresaw Abel's actions because it directed her to render public relations services to the Wayfarer Clients. (Abel Decl., ¶ 49).

93. Jonesworks had contracted with the Wayfarer Clients to perform, *inter alia*, public relations services. (Abel Decl., ¶ 49; Abel Decl., Ex. 4).

94. Jones knew that Abel was working with Baldoni on his press tour in connection with the premiere of the Film in late July/early August 2024, amid reports of strife between Baldoni and Plaintiff. (Abel Decl., ¶ 50).

95. In a July 25, 2024 text message to Baldoni, Jones: ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ (Abel Decl., ¶ 50; Abel Decl., Ex. 21).

96. Jones also knew that other Jonesworks employees and Abel were handling press inquiries concerning alleged issues on the set of the Film. (Abel Decl., ¶ 52).

97. In fact, Abel communicated directly with Jones about ▮▮▮▮▮ ▮▮▮▮▮ (Abel Decl., Ex. 22).

98. Jones instructed Abel to tell Baldoni that Abel was taking ▮▮▮▮▮ ▮▮▮▮▮ (*Id*).

99. On August 8, 2024, Jonesworks' Chief of Staff (Gordon Duren) ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ (Abel Decl., ¶ 52; Abel Decl., Ex. 24).

100. Abel confirmed to Jones and Duren that ▮▮▮▮▮ ▮▮▮▮▮ . (*Id*).

101. On August 9, 2024, Jones forwarded ▮▮▮▮▮ ▮▮▮▮▮ (Abel Decl., ¶ 53; Abel Decl., Ex. 25).

102. Again, Abel confirmed to Jones that ▮▮▮▮▮ . (*Id*).

15

103. On August 9, 2024, Jones forwarded a press inquiry concerning alleged on-set drama to the Jonesworks (internal) email distribution lists, and Jonesworks employee Matthew Mitchell confirmed that the inquiry would be handled. (Abel Decl., ¶ 54; Abel Decl., Ex. 26).

104. Jones also knew that Jonesworks employees were monitoring social media activity concerning Baldoni and the Film, including online comments from Jenna Redfield. (Abel Decl., ¶ 51).

105. For instance, in an August 8, 2024, email, a Jonesworks employee passed along information related to such social media monitoring to Jones. (Abel Decl., ¶ 51; Abel Decl., Ex. 23).

106. Abel's alleged actions were consistent with how Jonesworks rendered public relations services. (Abel Decl., ¶ 55).

107. In an August 9, 2024, text message, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and that he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Abel Decl., ¶ 55; Abel Decl., Ex. 27).

108. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id*).

109. In an August 14, 2024, email to Heath, Jones referred to herself as "a key member of both Justin's and Wayfarer's account" and "a keyman on Justin's account." (Abel Decl., ¶ 56; Abel Decl., Ex. 28).

110. In the August 14, 2024 email chain (Abel Decl., Ex. 28), Jones provided the Wayfarer Clients with Jonesworks' "recommended strategy" for dealing with the publicity crisis: (1) "Flood the Zone with Positives" – "ensure that we promote positive narratives that media

16

outlets cannot ignore" and because "[c]urrently, most stories are heavily biased towards Blake's perspective" it is "crucial" that "we fight for every inch of every story"; and (2) "Prepare Alternative Stories" – "mobilize a robust network of supporters and third-party advocates ready to counter these narratives on deep background as well as some on the record, making it clear that the claims being made are untrue and unfounded." (*Id*).

111. Jones states in the August 14, 2024, email chain (Abel Decl., Ex. 28) that she has "successfully managed every crisis for Justin without any negative press coming to light." (*Id*).

112. Jones also knew that Wayfarer had retained TAG to assist Jonesworks with crisis management. (Abel Decl., ¶ 57; Abel Decl., Ex. 29; Fritz Decl., Ex. C at 88:3-89:3).

113. After Abel's employment ended on August 21, 2024, ███████████ ███████████████████████████████. (*Id*.; Fritz Decl., Ex. C at 76:20-77:7)

Dated: November 11, 2025          */s/ Kevin Fritz*

| | |
|---|---|
| LINER FREEDMAN TAITELMAN + COOLEY, LLP<br>    Bryan J. Freedman (*pro hac vice*)<br>    Ellyn S. Garofalo (*pro hac vice*)<br>    Theresa M Troupson (*pro hac vice*)<br>    Summer Benson (*pro hac vice*)<br>    Jason Sunshine<br>    1801 Century Park West, 5th Floor<br>    Los Angeles, CA 90067<br>    Tel: (310) 201-0005<br>    Email: bfreedman@lftcllp.com<br>           egarofalo@lftcllp.com<br>           ttroupson@lftcllp.com<br>           sbenson@lftcllp.com<br>           jsunshine@lftcllp.com | MEISTER SEELIG & FEIN PLLC<br>Mitchell Schuster<br>Kevin Fritz<br>125 Park Avenue, 7th Floor<br>New York, NY 10017<br>Tel: (212) 655-3500<br>Email: ms@msf-law.com<br>         kaf@msf-law.com |
| AHOURAIAN LAW<br>Mitra Ahouraian (*pro hac vice*)<br>2029 Century Park East, 4th Floor<br>Los Angeles, CA 90067<br>Tel. (310) 376-7878<br>Email: mitra@ahouraianlaw.com | SHAPIRO ARATO BACH LLP<br>Alexandra A. E. Shapiro<br>Jonathan Bach<br>Alice Buttrick<br>1140 Avenue of the Americas, 17th Floor<br>New York, NY 10036<br>Tel: 212-257-4881<br>Email: ashapiro@shapiroarato.com<br>         jbach@shapiroarato.com<br>         abuttrick@shapiroarato.com |