UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                    Plaintiff,<br><br>          -v-<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,<br><br>                    Defendants. | Case No. 1:24-cv-10049-LJL<br>(consolidated with 1:25-cv-00449-LJL) |
| JENNIFER ABEL,<br><br>                    Third-Party Plaintiff,<br><br>          -v-<br><br>JONESWORKS LLC,<br><br>                    Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY PLAINTIFF JENNIFER ABEL'S MOTION FOR CONDITIONAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT.................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

LEGAL STANDARD................................................................................................................. 10

ARGUMENT .............................................................................................................................. 11

      I.      ABEL IS ENTITLED TO CONDITIONAL SUMMARY JUDGMENT ............ 11

      II.     NEW YORK COMMON LAW REQUIRES JONESWORKS TO INDEMNIFY ABEL ........................................................................................ 13

CONCLUSION........................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abdel-Karim v. Egyptair Holding Co.*,
  649 F. App'x 5 (2d Cir. 2016) ................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................. 10

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
  769 F.2d 919 (2d Cir. 1985) ..................................................................... 11

*Caldarola v. Calabrese*,
  298 F.3d 156 (2d Cir. 2002) ..................................................................... 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................. 10

*Clark v. 345 E. 52nd St. Owners, Inc.*,
  245 A.D.2d 410 (2d Dep't 1997) .............................................................. 12

*CSC Sci. Co. v. Manorcare Health Servs., Inc.*,
  867 F. Supp. 2d 368 (S.D.N.Y. 2011) ..................................................... 13

*Fincher v. Depository Trust & Clearing Corp.*,
  604 F.3d 712 (2d Cir. 2010) ..................................................................... 10

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010) ..................................................................... 10

*Hong-Bao Ren v. Gioia St. Marks, LLC*,
  163 A.D.3d 494 (1st Dep't 2018) ............................................................. 12

*IBM v. Liberty Mut. Ins. Co.*,
  363 F.3d 137 (2d Cir. 2004) ..................................................................... 13

*Ins. Co. of the State of Penn. v. Equitas Ins. Ltd.*,
  68 F.4th 774 (2d Cir. 2023) ..................................................................... 13

*Lively v. Wayfarer Studios LLC*,
  2025 WL 2884407 (S.D.N.Y. Oct. 9, 2025) ................................. 13, 15, 16

*Lowe v. Dollar Tree Stores, Inc.*,
  40 A.D.3d 264 (1st Dep't 2007) .............................................................. 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................. 10

*Matzinger v. MAC II, LLC*,
   2018 WL 3350328 (S.D.N.Y. July 9, 2018) ........................................................ 14

*McCabe v. Queensboro Farm Prods., Inc.*,
   22 N.Y.2d 204 (1968) .......................................................................................... 12

*McCarthy v. Turner Const., Inc.*,
   953 N.E.2d 794 (N.Y. 2011) ............................................................................... 14

*McDermott v. City of New York*,
   50 N.Y.2d 211 (1980) .......................................................................................... 14

*Mt. Hawley Ins. Co. v. Buckeye Real Estate Invest. LLC*,
   2024 WL 32334 (S.D.N.Y. Jan. 29, 2024) *vacated on other grounds*, 2024 WL 3523051
      (S.D.N.Y. July 23, 2024) .................................................................................. 11

*N.X. v. Cabrini Med. Ctr.*,
   97 N.Y.2d 247 (2002) .......................................................................................... 14

*Niagara Mohawk Power Corp. v. Jones Chem. Inc.*,
   315 F.3d 171 (2d Cir. 2003) ............................................................................... 10

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ................................................................................. 11

*Rodriguez v. City of New York*,
   2004 WL 444089 (S.D.N.Y. Mar. 10, 2004) ...................................................... 10

*Rogers v. Dorchester Assocs.*,
   32 N.Y.2d 553 (1973) .......................................................................................... 14

*Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*,
   109 A.D.2d 449 (1st Dep't 1985) ....................................................................... 14

*Varga v. Flowcon, Inc.*,
   2025 WL 2774261 (S.D.N.Y. Sept. 29, 2025) .................................................... 13

*Vitrano v. State Farm Ins. Co.*,
   2009 WL 3365866 (S.D.N.Y. Oct. 19, 2009) ..................................................... 10

*Wallace v. Nat'l R.R. Passenger Corp.*,
   5 F. Supp. 3d 452 (S.D.N.Y. 2014) ................................................................... 12

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ................................................................................. 11

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ......................................................................................... 11

*Wright v. Goord*,
  554 F.3d 255 (2d Cir. 2009) ............................................................................. 10

## **Statutes**

28 U.S.C. § 2201(a) ................................................................................................ 11

## **Rules**

Fed. R. Civ. P. 56(a) .............................................................................................. 10

## **Other Authorities**

Restatement (First) of Restitution § 76 (1937) ....................................................... 13

Third-party plaintiff Jennifer Abel ("Abel") respectfully submits this Memorandum of Law in support of her motion for conditional summary judgment against third-party defendant Jonesworks LLC ("Jonesworks") on her Second Cause of Action for common law indemnification.  For the reasons set forth herein, Abel's motion should be granted.

<u>PRELIMINARY STATEMENT</u>

Abel was employed by Jonesworks to render public relations services to its clients, such as Justin Baldoni ("Baldoni") and Wayfarer Studios LLC ("Wayfarer") (collectively, the "Wayfarer Clients"). At Jonesworks' direction, Abel performed public relations activities for the Wayfarer Clients, including in connection with the film *It Ends With Us* (the "Film"). In late July 2024/early August 2024, public commentary circulated concerning purported on-set strife between Baldoni and the Film's co-star, plaintiff Blake Lively ("Plaintiff" or "Lively"). Abel and other Jonesworks employees discussed how to garner positive publicity and to minimize negative publicity for the Wayfarer Clients, as was within Abel's scope of employment with Jonesworks.

In breach of Jonesworks' contractual and fiduciary duties to the Wayfarer Clients, Jonesworks Chief Executive Officer Stephanie Jones ("Jones") inexplicably and covertly advised Lively of the Wayfarer Clients' public relations activities. Lively then caused her entity Vanzan, Inc. ("Vanzan") to commence a frivolous lawsuit in New York state court against "John Does" devoid of any reference to the Wayfarer Clients or Abel. Jonesworks participated in the hoax orchestrated by Lively by generously complying with a knowingly invalid subpoena from Vanzan (*i.e.*, Lively) which sought the Wayfarer Clients and Abel's communications, and which any other recipient thereof would have moved to quash. Based upon those communications, Lively manufactured a claim against Abel for allegedly aiding and abetting "retaliation" when, in truth, Abel merely engaged in standard public relations activities.

Abel's actions at issue herein were *all* undertaken as a Jonesworks employee, within the scope of her employment, and were foreseeable by and known to Jonesworks. Therefore, under well-established New York law, Abel is entitled to common law indemnification from Jonesworks, regardless of whether Jones realized, at the time Jones betrayed her then-clients (the Wayfarer Clients), that her unwavering alliance with Lively resulted in Jonesworks' own potential liability.[1]

## STATEMENT OF FACTS

**Jonesworks Hires Abel**

Founded by Jones, the firm's current chief executive officer, Jonesworks provides, *inter alia*, public relations services to its clientele. (Local Rule 56.1 Statement by Third Party Plaintiff Jennifer Abel ("56.1"), ¶10; Declaration of Jennifer Abel, dated November 11, 2025 ("Abel Decl."), ¶ 4; Declaration of Kevin Fritz, dated November 11, 2025, ("Fritz Decl."), Ex. C at 32:7-33:16)).

On or about July 9, 2020, Jonesworks hired Abel, a publicist, as Vice President. (56.1 ¶¶ 9, 16; Fritz Decl., Ex. A, ¶ 16; Ex. B, ¶ 16; *see also* Abel Decl., ¶¶ 3, 5[2]; Abel Decl., Ex. 1). As a condition of her employment, Abel executed a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement ("2020 Employment Agreement"). (56.1 ¶ 11; Fritz Decl. Ex. A, ¶ 17; Ex. B, ¶ 17; Abel Decl., ¶ 6; Abel Decl., Ex. 2). Under the terms of the 2020 Employment Agreement, Jonesworks hired Abel as an at-will employee. (56.1 ¶ 12; Fritz Decl.,

---

[1]  Abel expressly reserves all rights in connection with her other third-party claims herein and her counterclaims in *Jones v. Abel* (25-cv-00779), including with respect to choice/conflict of laws.

[2]  *See also* Deadline Article, dated February 16, 2023, "Jennifer Abel Named Partner at Jonesworks" (https://deadline.com/2023/02/jennifer-abel-named-partner-jonesworks-1235262051/) ("Abel was tapped in 2019 to run the Entertainment Division of the Los Angeles office, overseeing a strong growth period, and launching a social media and digital division.").

Ex. A, ¶ 18; Ex. B, ¶ 18; Abel Decl., ¶ 7; Abel Decl., Ex. 2, ¶ 10). Abel further agreed during the term of her employment that she would work exclusively for Jonesworks, providing no services to any other entity in the public relations industry, media communications, marketing, branding or talent management business, or any other business without Jonesworks prior written approval. (56.1 ¶ 13; Abel Decl., Ex. 2, ¶ 9; Fritz Decl., Ex. A, ¶ 18; Ex. B, ¶ 18).

Approximately sixteen (16) months later, on or about November 22, 2021, Jonesworks and Abel entered into a modified employment agreement ("2021 Employment Agreement"). (56.1 ¶ 15; Fritz Decl., Ex. A, ¶ 20; Ex. B, ¶ 20; Abel Decl., ¶ 8; Abel Decl., Ex. 3). Per the terms of the 2021 Employment Agreement, Abel agreed to serve as Vice President of Talent. Abel's employment required that she devote all her business time to Jonesworks. (56.1 ¶¶ 16-17; Abel Decl., Ex. 3, ¶ 2; *see also* Abel Decl., ¶ 10).

**The Wayfarer Clients Retain Jonesworks**

In or around 2018, a couple of years before Jonesworks hired Abel, Baldoni retained Jonesworks to provide him with public relations services. (56.1 ¶ 18; Abel Decl., ¶¶ 5, 14; Fritz Decl., Ex. C at 69:9 – 70:6). Thereafter, Wayfarer, a production studio founded by Baldoni and others, retained Jonesworks for public relations services. (56.1 ¶¶ 19-20; Friz Decl., Ex. C at 69:14-70:6; Abel Decl., ¶ 12; Abel Decl., Ex. 4).

On or about May 6, 2020, Wayfarer entered into an agreement with Jonesworks ("Wayfarer Agreement") for Jonesworks to serve "as its exclusive public relations counsel." (56.1 ¶ 21; Abel Decl., ¶ 15; Abel Decl., Ex. 4). Under the terms of the Wayfarer Agreement, Jonesworks was tasked with providing "strategic communication services" including:

- "Assist in developing, writing and updating communication materials related to all press outreach such as biographies, media kits, boilerplates, press releases, and key messaging";

- "Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities maximized, and the strongest press angles aligned";
- "Conduct media monitoring and competitor tracking for industry press"; and
- "Conduct regular check-on calls surrounding the status of Wayfarer Studios projects, events and news".

(56.1 ¶ 23; Abel Decl., Ex. 4, Schedule A; Abel Decl., ¶ 16). At her deposition, Jones (in her capacity as Jonesworks CEO) testified that ███████████████████████████

██████ (56.1 ¶¶ 29-31; Fritz Decl., Ex. C at 82:14-22; 82:25-83:5; 84:15-18); Fritz Decl., Ex. C at 84:21-85:4).  Specifically, Jones also testified that:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

(56.1 ¶ 31; Fritz Decl., Ex. C at 85:9-14). In exchange for Jonesworks' personalized and bespoke services, Wayfarer and Baldoni collectively agreed to pay Jonesworks $25,000.00 per month in addition to other expenses and fees. (56.1 ¶¶ 26-27; Abel Decl., Ex. 4).

Under the terms of the Wayfarer Agreement, the initial term of the agreement would last one year.  Following the one-year term, the Wayfarer Agreement would "automatically renew for additional one-year periods" unless terminated.  (56.1 ¶ 24-25; Abel Decl., Ex. 4).

Following its retention, Jonesworks ███████████████████████████████████.
(56.1 ¶ 38; Fritz Decl., Ex. C at 83:12-14). Jonesworks also set up email distribution lists ████████████████████████████████████████ to help service the Wayfarer Clients.  (56.1 ¶ 33; Abel Decl., ¶ 20).

Additionally, and as part of its retention, Jonesworks assigned Abel to serve as the primary point person for the Wayfarer Clients working out of Jonesworks' Los Angeles office. (56.1 ¶¶ 39-41; Fritz Decl., Ex. C at 83:12-14; 85:15-86:23; Abel Decl., ¶¶ 17-18).

**Lively's Claims against Abel Stem Exclusively from Her Employment for Jonesworks**

Throughout the summer of 2024, consistent with the Wayfarer Agreement and its role as "exclusive public relations counsel," Jonesworks provided a wide range of public relations services to the Wayfarer Clients, including in connection with the premiere of the Film. (56.1 ¶¶ 23, 29-32, 35-37, 44-45, 46-78; Abel Decl., ¶¶ 13, 15, 19, 31-44; Abel Decl., Ex. 4).

During that time period and, more importantly, within the scope of her employment for Jonesworks, Abel performed public relations services for the Wayfarer Clients. (56.1 ¶¶ 45-78; Abel Decl., ¶¶ 13, 19, 31-44).   A number of those activities now serve as the basis of Lively's Claims (as defined herein) against Abel, as detailed below.

On July 24, 2024, Abel advised Jones that ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████. (56.1 ¶ 46; Abel Decl., ¶ 31; Abel Decl., Ex. 7). Jones responded by ██████████████████████████████ ████████████████. (56.1 ¶ 47; *Id.*). Thereafter, and based upon Abel's recommendation, Wayfarer hired The Agency Group PR LLC ("TAG") to assist Jonesworks with crisis management. (56.1 ¶ 48; Abel Decl., ¶ 32; Abel Decl., Ex. 8).

On July 31, 2024, Abel texted Jamey Heath ("Heath") and Mitz Toskovic of Wayfarer about a conversation that she had with an independent journalist concerning the exclusion of Baldoni from Film-related promotions, and that such journalist was willing to publish a story of Lively's misconduct. (56.1 ¶ 49; Abel Decl., ¶ 33; *see also* Abel Decl., Ex. 9). Abel never followed up on the matter or referred the journalist to anyone else, and the story was never published. (56.1 ¶¶ 51-52; Abel Decl., ¶ 33).

On August 2, 2024, a representative of TAG sent Abel a "Scenario Planning" document referencing an objective to "[p]rotect the reputation of" the Wayfarer Clients "in the lead up, during, and following the premiere" of the Film and related goals. (56.1 ¶ 53; Abel Decl., ¶ 34; Abel Decl., Ex. 10). The "Scenario Planning" document was shared with Abel because she was a Jonesworks employee responsible for providing public relations services to the Wayfarer Clients. (56.1 ¶ 54; Abel Decl., ¶ 34; Abel Decl., Ex. 4, Schedule A).

On August 5, 2024, Abel notified Baldoni that Sony (the co-producer of the Film) had an issue with the word "friction" being used in his press interviews about the on-set relationship between Baldoni and Lively. (56.1 ¶¶ 55-57; Abel Decl., ¶ 35; Abel Decl., Ex. 11). Abel proposed the word "challenge" as a compromise to downplay the social media speculation of an "on-set feud" and to highlight that, as director of the Film, Baldoni successfully brought all people together to "create something beautiful" in the Film. (*Id.*).

On August 7, 2024, Abel exchanged certain text messages with Jonesworks' employee Matthew Mitchell ("Mitchell") and TAG employees Melissa Nathan ("Nathan"), Katie Case ("Case"), and Breanna Koslow ("Koslow") about an online narrative concerning Baldoni and Lively's separate promotion of the Film (as opposed to both being present). (56.1 ¶¶ 58; Abel Decl., ¶ 36; Abel Decl., Ex. 12; Abel Decl., Ex. 4, Schedule A).

On August 7, 2024, Case sent Heath and Abel (at her Jonesworks email address) an email referring to "social and digital mitigation and remediation" and public narratives concerning Baldoni and Wayfarer. (56.1 ¶ 60; Abel Decl., ¶ 37; Abel Decl., Ex. 13).  The email was sent to Abel because she was a Jonesworks employee providing public relations services to the Wayfarer Clients. (56.1 ¶ 61; Abel Decl., ¶ 37).

On August 8, 2024, Abel sent a text message to her Jonesworks co-employee (Mitchell) and TAG employees Nathan and Case concerning ███████████████████████ ████████████████████ (56.1 ¶ 62; Abel Decl., ¶ 38; Abel Decl., Ex. 14). Taking note of (or "flagging") negative public commentary about Baldoni was a key part of Abel's duties as a Jonesworks employee performing public relations services for its clients. (56.1 ¶ 63; Abel Decl., ¶ 38; Abel Decl., Ex. 4, Schedule A).

On August 9, 2024, Abel exchanged text messages with Nathan concerning articles about a "rift" or "feud" between Baldoni and Lively, as well as other potential media coverage of the situation. (56.1 ¶¶ 64-66; Abel Decl., ¶ 39; Abel Decl., Ex. 15; Abel Decl., Ex. 4, Schedule A).

On August 10, 2024, Abel exchanged text messages with Heath, Mitchell, Nathan and Case concerning a *Hollywood Reporter* article and TikTok videos related to Lively and/or Baldoni. (56.1 ¶ 67-69; Abel Decl., ¶ 40; Abel Decl., Ex. 16; Abel Decl., Ex. 6). The TikTok video from May 17, 2023, included within the text chain, shows Baldoni and Lively in a pleasant atmosphere on the set of the Film. (*Id.*). The *Hollywood Reporter* article discusses why it was important for Baldoni to make a movie about domestic violence. (*Id.*).

On August 11, 2024, and in her capacity as a Jonesworks employee, Abel advised Wayfarer via text message about ████████████████████████ ████████████████████ (56.1 ¶ 71; Abel Decl., ¶ 41; Abel Decl., Ex. 17).

On August 13, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell, Case, Koslow, and Nathan concerning a TikTok video praising Baldoni and another video criticizing Lively for her marketing of the Film in a manner insensitive to domestic violence victims. (56.1 ¶¶ 72-73; Abel Decl., ¶ 42; Abel Decl., Ex. 18; Abel Decl., Ex. 4, Schedule A).

On August 15, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell, Case, Koslow and Nathan concerning the positive public comments made ███████████████ ████████████████████████████████████████████████████ (56.1 ¶¶ 74-75; Abel Decl., ¶ 43; Abel Decl., Ex. 19; Abel Decl., Ex. 4, Schedule A).

On August 18, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell, Nathan and Koslow concerning TikTok videos related to the Film. (56.1 ¶ 76; Abel Decl., ¶ 44; *see also* Abel Decl., Ex. 20). The TikTok video from August 17, 2024, called the Film "one of the best movies ever made" and said the Film touched on domestic violence "in the best way possible." (56.1 ¶ 77; *Id.*; Abel Decl., Ex. 6).

Jonesworks profited from the foregoing work performed by Abel, receiving its monthly $25,000 fee from the Wayfarer Clients. (56.1 ¶ 27; Abel Decl., ¶ 25; Abel Decl., Ex. 5; Fritz Decl., Ex. C at 86:24-87:2).

Abel's employment with Jonesworks ended on August 21, 2024. (56.1 ¶ 79; Abel Decl., ¶ 23). Abel never published, planted, or pitched any negative content about Lively nor "boosted" or "amplified" any negative content about Lively. (56.1 ¶¶ 83-84; Abel Decl., ¶¶ 45-46).

**Lively's Lawsuit Against Abel**

On July 30, 2025, Lively filed her Second Amended Complaint in which she asserted claims against Abel for: (a) aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (b) false light invasion of privacy; and (c) civil conspiracy (collectively, "Lively's Claims"). (56.1 ¶ 80; Abel Decl., ¶ 26; Dkt. 520). According to the Second Amended Complaint, Nathan, her company TAG, and Abel allegedly "perpetrated a retaliation scheme against Ms. Lively" including via "the amplifying of negative content about Ms. Lively…." (56.1 ¶ 81; Abel Decl., ¶ 27; Dkt 520, ¶ 230). The

pleading further alleges that Nathan, TAG and Abel "aided and abetted the discriminatory conduct of Defendants It Ends With Us Movie LLC, Wayfarer, Baldoni and Heath, including but not limited to by participating in the above-described coordinated 'astroturfing' campaign to discredit and 'bury' Ms. Lively."  (56.1 ¶ 85; Abel Decl., ¶ 27; Dkt. 520, ¶ 411). Abel denies Lively's allegations and claims.  (56.1 ¶¶ 82-86; Abel Decl., ¶¶27, 45, 46; Fritz Decl., Ex. A, ¶¶ 230, 411; Dkt. 520, ¶ 411).

In her Third Amended Responses and Objections to Abel's Second Set of Interrogatories (the "Interrogatory Responses"), Lively purports to identify the ███████████████████ ██████████████████████████████████ that she alleges was ████████ by Abel. (56.1 ¶ 87; Abel Decl., ¶ 28; Abel Decl., Ex. 6). In her Interrogatory Responses, Lively further alleges that Abel: ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████ (56.1 ¶ 88; Abel Decl., ¶ 29; Abel Decl., Ex. 6). Abel again denies Lively's assertions in her Interrogatory Responses.  (56.1 ¶¶ 82-86; Abel Decl., ¶¶ 27, 45, 46; Fritz Decl., Ex. A, ¶¶ 230, 411; Dkt. 520, ¶ 411). Moreover, each of the specific instances identified in Lively's Interrogatory Responses consists of public relation activities performed as part of Abel's employment with Jonesworks.  As discussed above in detail, the activities performed by Abel from July 2024 through August 2024 were within the scope of her employment with Jonesworks. (56.1 ¶ 90; Abel Decl. ¶¶ 31-44; Abel Decl. Ex. 4).  This makes Jonesworks responsible for any potential vicarious liability to Abel for work performed during the course of her employment with Joneswoks.  (56.1 ¶¶ 90-112; Abel Decl., ¶¶ 30, 49-57; Abel Decl. Ex. Nos. 22-29).

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (*quoting* Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In response the non-moving party must then set out "specific facts showing a genuine issue of material fact for trial." *See* Fed. R. Civ. P. 56(c)(1); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue of material fact exists only when there is sufficient evidence favoring the non-moving party such that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Id*. at 248. The non-movant must do "more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The "mere existence of a scintilla of evidence" supporting the non-movant cannot survive summary judgment. *Rodriguez v. City of New York*, No. 02-CV-8203 (SAS), 2004 WL 444089, at *2 (S.D.N.Y. Mar. 10, 2004) (*citing Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003)).

"A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Equally, a party may not defeat summary judgment on inadmissible hearsay. *Vitrano v. State Farm Ins. Co.*, No. 08-CV-103 (JGK), 2009 WL 3365866, at *4 (S.D.N.Y. Oct.

19, 2009) (*citing Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *Abdel-Karim v. Egyptair Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015), *aff'd sub nom. Abdel-Karim v. Egyptair Holding Co.*, 649 F. App'x 5 (2d Cir. 2016) ("A party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment ... .'") (*quoting Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 924). Summary judgment is the time "to put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

<u>ARGUMENT</u>

### I.  ABEL IS ENTITLED TO CONDITIONAL SUMMARY JUDGMENT

Jonesworks cannot escape its obligation to indemnify its employee (Abel) for the work she performed during the course of her employment.  These circumstances warrant the issuance of conditional summary judgment in favor of Abel, even though the Court has not issued a judgment in the underlying action.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (28 U.S.C. § 2201(a)). The Act "confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). This Court has issued declaratory relief where "no losses have yet accrued" because clarifying whether a party had a duty to indemnify another party was "beneficial not only to [those] parties … but to … plaintiff in the underlying action, [who] will benefit from knowing who exactly is financially liable if she prevails." *Mt. Hawley Ins. Co. v. Buckeye Real Estate Invest. LLC*, No.

23-cv-2342, 2024 WL 32334, at *5 (S.D.N.Y. Jan. 29, 2024), *vacated on other grounds*, 2024 WL 3523051 (S.D.N.Y. July 23, 2024).

It is well-established that an indemnified party can obtain conditional summary judgment on an indemnification claim as to liability even before a judgment on or settlement of the underlying claim. *See, e.g.*, *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 479 (S.D.N.Y. 2014) (rejecting argument that indemnification claim was not ripe until judgment of liability on underlying claims because "a court may grant conditional summary judgment on a third-party plaintiff's indemnification claims where no genuine issues of material fact exist to preclude such judgment."); *see also McCabe v. Queensboro Farm Prods., Inc.*, 22 N.Y.2d 204, 208–09 (1968) (finding it serves the interest of justice and judicial economy in affording the indemnitee "the earliest possible determination as to the extent to which he may expect to be reimbursed"); *Hong-Bao Ren v. Gioia St. Marks, LLC*, 163 A.D.3d 494, 496–97 (1st Dep't 2018) ("[C]onditional summary judgment is appropriate here even when judgment has yet to be rendered or paid in the main action, since it serves the interest of justice and judicial economy in affording the indemnitee the earliest possible determination as to the extent to which he may expect to be reimbursed.") (internal quotations omitted).

As discussed above, Lively's Claims rest entirely on Abel's actions undertaken during the course of her employment for Jonesworks, thereby entitling Abel to common law indemnification from her employer, Jonesworks. Rather than holding Abel's claims in limbo, the Court should grant Abel conditional summary judgment on her Second Cause of Action for common law indemnification. *Lowe v. Dollar Tree Stores, Inc.*, 40 A.D.3d 264, 264 (1st Dep't 2007) (granting conditional summary judgment on third-party claim for common-law indemnification); *Clark v. 345 E. 52nd St. Owners, Inc.*, 245 A.D.2d 410, 412 (2d Dep't 1997)

(finding the trial court erred denying cross-motion for common-law indemnification). Alternatively, in the event the Court deems this motion premature because no liability determination has been made as to Lively's Claims against Abel, *see Varga v. Flowcon, Inc.*, No. 22-cv-7477, 2025 WL 2774261, *24 (S.D.N.Y. Sept. 29, 2025), Abel respectfully requests that the Court holds this motion in abeyance until such time.

## II.    NEW YORK COMMON LAW REQUIRES JONESWORKS TO INDEMNIFY ABEL

In her Second Cause of Action, Abel seeks indemnification under common law. ([Dkt. 669](#), ¶ 52 – 61).

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). Accordingly, courts in this district apply New York choice of law rules. *See, e.g.*, *Lively v. Wayfarer Studios LLC*, 24-cv-10049 (LJL), 2025 WL 2884407, *5 (S.D.N.Y. Oct. 9, 2025). Jonesworks contends that New York law applies to Abel's common law indemnification claim. ([Dkt. No. 277](#) at 5–10). For purposes of this motion and reserving all rights with respect to her other claims, Abel agrees. "[W]here the parties agree that [New York] law controls, this is sufficient to establish choice of law." *Ins. Co. of the State of Penn. v. Equitas Ins. Ltd.*, 68 F.4th 774, 779 n.2 (2d Cir. 2023).

"Common law or implied indemnification is a 'quasi-contract' doctrine rooted in principles of equity and fairness conceptually related to restitution." *CSC Sci. Co. v. Manorcare Health Servs., Inc.*, 867 F. Supp. 2d 368, 377 (S.D.N.Y. 2011). Implied or common law indemnification recognizes that "a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity." *McDermott v. City of New York*, 50 N.Y.2d 211, 216 (1980) (*quoting* Restatement (First) of Restitution § 76 (1937)). "[T]he predicate of common law

indemnity is vicarious liability without actual fault on the part of the proposed indemnitee," and "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 451 (1st Dep't 1985). Common law indemnity "will generally be available 'in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer.'" *Matzinger v. MAC II, LLC*, 17-cv-4813 (DLC), 2018 WL 3350328, at *2 (S.D.N.Y. July 9, 2018) (*quoting McCarthy v. Turner Const., Inc.*, 953 N.E.2d 794, 799 (N.Y. 2011)). Thus, if an employee is held liable for following the instructions of an employer who is vicariously responsible for those actions, and whose instructions the employee was required to follow, that employee is entitled to indemnification from the person who gave the instruction. *Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553 n.2 (1973). Under the doctrine of *respondeat superior* in New York, "an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002). Abel's conduct falls squarely within the scope of this doctrine, supporting her Second Cause of Action for common law indemnification against Jonesworks.

As detailed above, the alleged conduct that forms the basis of Lively's Claims against Abel consists of public relations activities on behalf of the Wayfarer Clients during the time in which they were Jonesworks' clients, all within the scope of Abel's employment, and any such conduct was undertaken at Jonesworks' direction. In sum, the record firmly establishes: (a) Wayfarer and Baldoni retained Jonesworks to perform public relations services for them (56.1 ¶¶ 18-27; Abel Decl., ¶¶ 4, 5, 12, 14, 15, 16, 20; Abel Decl., Ex. 4, Schedule A); (b) Jonesworks employed Abel to render those services (56.1 ¶¶ 9-17, 46-79; Fritz Decl., Ex. A, ¶¶ 16-18, 20;

Ex. B, ¶¶ 16-18, 20; Abel Decl., ¶¶ 4, 5, 6, 7, 8, 10, 11; Abel Decl., Ex. Nos. 1, 2, 3);[3] and (c) Jonesworks knew of and directed Abel's public relations activities for Wayfarer and Baldoni, including garnering positive publicity and eliminating or minimizing negative publicity for them. (56.1 ¶¶46-79, 90-112; Abel Decl., ¶¶ 47-57; Abel Decl. Ex. Nos. 4, 21-29).

Jonesworks provided the Wayfarer Clients with a wide range of services, including but not limited to crisis management to public relations. (56.1 ¶¶ 21-23; Abel Decl., ¶¶ 15, 16; Abel Decl., Ex. 4, Schedule A; Fritz Decl., Ex. C at 83:6-14; 87:12-16). As Jones testified ████ ████████████████████████████████ (56.1 ¶ 30-31; Fritz Decl., Ex. C at 82:14-22; 82:25-83:5; 84:15-18; 84:21-85:4; 85:9-14). This necessarily included providing advice, counsel, and public relations support surrounding the premiere of the Film. Furthermore, as discussed above, each of the purported acts which form the basis of Lively's Claims against Abel consist of public relations activities not only within the scope of Abel's employment for Jonesworks, but were also part and parcel of Jonesworks' obligations to the Wayfarer Clients. In other words, Jonesworks lacks any legitimate, much less cogent, basis upon which to deny responsibility for Abel's activities.

Jones herself knew of Abel's actions, providing supervision and direction. (56.1 ¶ 92; Abel Decl., ¶ 49). The record further establishes: (a) Jones knew Abel was working with Baldoni on his press tour (56.1 ¶ 94; Abel Decl., ¶ 50; Abel Decl., Ex. 21); (b) Jones knew Jonesworks employees (such as Abel) monitored social media activity concerning Baldoni and the Film (a standard practice) (56.1 ¶¶ 104-106; Abel Decl., ¶¶ 51, 55; Abel Decl., Ex. Nos. 23, 27); (c) Jones knew Abel and other Jonesworks employees interacted with the press handling inquiries

---

[3] The Court already concluded an employment relationship exists between Jonesworks and Abel. *See Lively*, 2025 WL 2884407, at *7 (finding an employment relationship "established by contract").

and other public relations issues (56.1 ¶¶ 96-103; Abel Decl., ¶¶ 52, 53, 54; Abel Decl., Ex. Nos. 22, 24, 25, 26); and (d) Jones knew Wayfarer had retained TAG to provide crisis management advice and services. (56.1 ¶ 112; Abel Decl., ¶ 57; Abel Decl., Ex. 29; Fritz Decl., Ex. C at 88:3-89:3). Jones herself even provided the Wayfarer Clients with a strategy to handle publicity.  (56.1 ¶¶ 109-111; Abel Decl., ¶ 56; Abel Decl., Ex. 28). In fact, even after Abel's employment ended, Jonesworks continued to represent both Wayfarer and Baldoni until at least August 30, 2024. (56.1 ¶ 113; Abel Decl., ¶ 57; Abel Decl., Ex. 29; Fritz Decl., Ex. C at 76:20-77:7; 88:3-89:3).

Jonesworks has not only declined to defend Abel but has denied any obligation to do so, going so far as to move to dismiss her claim.  *See Lively*, 2025 WL 2884407 (decision on Jonesworks' motion to dismiss).  Jonesworks further separately sued Abel based upon (false) allegations that Abel's public relations work "went far beyond the legitimate scope of Abel's employment." (*Jones et al. v. Abel et al.*, S.D.N.Y. Case No. 25-cv-779, Dkt. 1, ¶ 4).

Therefore, Abel is entitled to common law indemnification from Jonesworks in connection with Plaintiff's Claims.

## CONCLUSION

For these reasons, the Court should grant Jennifer Abel conditional summary judgment against Jonesworks on the Second Cause of Action in her Amended Third-Party Complaint.

Dated: November 11, 2025                        /s/ Kevin Fritz

LINER FREEDMAN TAITELMAN +              MEISTER SEELIG & FEIN PLLC
COOLEY, LLP                                              Mitchell Schuster
    Bryan J. Freedman (*pro hac vice*)       Kevin Fritz
    Ellyn S. Garofalo (*pro hac vice*)        125 Park Avenue, 7th Floor
    Theresa M Troupson (*pro hac vice*)     New York, NY 10017
    Summer Benson (*pro hac vice*)           Tel: (212) 655-3500
    Jason Sunshine                                    Email: ms@msf-law.com
    1801 Century Park West, 5th Floor                   kaf@msf-law.com
    Los Angeles, CA 90067
    Tel: (310) 201-0005
    Email: bfreedman@lftcllp.com
       egarofalo@lftcllp.com
       ttroupson@lftcllp.com
       sbenson@lftcllp.com
       jsunshine@lftcllp.com

AHOURAIAN LAW                                    SHAPIRO ARATO BACH LLP
Mitra Ahouraian (*pro hac vice*)              Alexandra A. E. Shapiro
2029 Century Park East, 4th Floor          Jonathan Bach
Los Angeles, CA 90067                          Alice Buttrick
Tel. (310) 376-7878                               1140 Avenue of the Americas, 17th Floor
Email: mitra@ahouraianlaw.com          New York, NY 10036
                                                            Tel: 212-257-4881
                                                            Email: ashapiro@shapiroarato.com
                                                                   jbach@shapiroarato.com
                                                                   abuttrick@shapiroarato.com

17