# Exhibit 271

**manatt**

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
■■■■■■■■■■■■■■■

**WILLKIE FARR & GALLAGHER** LLP

Michael J. Gottlieb
Willkie Farr & Gallagher, LLP
1875 K Street NW
Washington, D.C. 20006
■■■■■■■■■■■■■■■

December 20, 2024

### VIA FEDEX AND EMAIL

Justin Baldoni
Co-Founder
Wayfarer Studios LLC
■■■■■■■■■■■■■■■

Jamey Heath
CEO
Wayfarer Studios LLC
■■■■■■■■■■■■■■■

Steve Sarowitz
Co-Founder
Wayfarer Studios LLC
■■■■■■■■■■■■■■■

Imene Meziane
Vice President, Business & Legal Affairs
Wayfarer Studios LLC
■■■■■■■■■■■■■■■

Melissa Nathan and
The Agency Group PR LLC
■■■■■■■■■■■■■■■

Jennifer Abel and RWA Communications LLC
■■■■■■■■■■■■■■■

Jed Avery Wallace and
Street Relations, Inc.
■■■■■■■■■■■■■■■

### RE: Cease and Desist Demand / Preservation Notice

To Wayfarer Studios, LLC, The Agency Group PR LLC, & Other Addressed Parties:

    The undersigned law firms represent Blake Lively, Ryan Reynolds, and their related entities, including but not limited to Betty Buzz, LLC, Blake Brown, Aviation Gin, Mint Mobile,

**manatt**    **WILLKIE FARR & GALLAGHER** LLP

December 20, 2024
Page 2

and Maximum Effort Productions (collectively, the "Lively-Reynolds Parties") with respect to a dispute between the Lively-Reynolds Parties and Wayfarer Studios LLC ("Wayfarer"), its co-founders Justin Baldoni ("Baldoni") and Steve Sarowitz ("Sarowitz"), CEO Jamey Heath ("Heath"), and their related companies, affiliates, associates, or agents (collectively, the "Wayfarer Parties"), as well as Melissa Nathan, The Agency Group PR LLC, Jed Avery Wallace, Street Relations, Inc., Jennifer Abel, and RWA Communications LLC (collectively, the "Wayfarer Associates") (the Wayfarer Parties and the Wayfarer Associates shall be collectively referred to as "you" or "your").[1] The dispute arises out of actions by the Wayfarer Parties to sexually harass Ms. Lively during the production of *It Ends With Us* (the "Film"), and to retaliate against her for raising concerns about such harassing and other inappropriate conduct, through a coordinated and malicious social media and press campaign, which was aided and abetted by the Wayfarer Associates, and designed to harm the Lively-Reynolds Parties and to portray them in a negative false light (the "Matter").

In particular, we have obtained extensive communications among and between you detailing a repulsive and ongoing scheme to harm Ms. Lively and the Lively-Reynolds Parties, including by targeting them for harassment and damaging their public image through a coordinated, harassing, and retaliatory media and online campaign.[2] We know that, collectively, you worked to create, plant, alter, promote, and even suppress traditional and social media content, including but not limited to content addressing the on-set hostile environment created by Mr. Baldoni and Mr. Heath. We know that, for example, you worked to suppress stories that would have revealed "HR complaints" with the "four majors" and coordinated to plant and shape stories that were published in *The Daily Mail, Business Insider,* and *Page 6*. We also know that, via contract with Mr. Wallace and his "digital team," you have paid third parties to seed, manipulate, and then re-circulate content designed to harass, intimidate, and disparage Ms. Lively on platforms such as Reddit and TikTok (as well as others), pretending all the while that the content you were promoting was authentic user-generated content rather than content you had commissioned and paid for in the first instance. We understand that you mistakenly believed that these efforts would be "untraceable" and would allow you to "destroy" Ms. Lively without fingerprints. But, just as these efforts have come to light, rest assured that if you take *any* additional actions to retaliate against our clients, we will uncover and hold you accountable for those actions as well.

Your actions against our clients were and are unlawful. As your own communications prove, when you launched the campaign described above, you were aware that Ms. Lively *and other* members of the cast and crew had raised complaints of sexual harassment, a hostile environment, and/or other unwelcome behavior by Mr. Baldoni and Mr. Heath. Indeed, as you likely know, Ms. Nathan and Ms. Abel bragged *in writing*—contemporaneous text messages, to be

---

[1] If you are represented by counsel other than Ms. Meziane for this matter, please direct this correspondence to your attorney immediately.
[2] Our knowledge and understanding is based, in part, on an extraordinary collection of information that Ms. Lively has obtained through legal process, including a civil subpoena.

CONFIDENTIAL    HEATH_000041141

manatt                                    WILLKIE FARR & GALLAGHER LLP

December 20, 2024
Page 3

precise—about having killed stories that would have *accurately* reported on those complaints. Further, you knew that Wayfarer, by mid-November of 2023, had agreed to a comprehensive set of protections to facilitate a return to production, which Wayfarer had agreed (again) *in writing* were "not only reasonable but also essential for the benefit of all parties involved." To the extent you have not recently reviewed the "reasonable but also essential" provisions of that "Protections for Return to Production" document to which Wayfarer agreed, ***including its robust anti-retaliation provision***, you may wish to re-familiarize yourself with that document before you take any additional actions that will result in further liability for you and your associates.

To be clear, we understand that certain recipients of this letter may represent themselves to be nothing more than service-providers acting at the behest of their clients. While we appreciate that the Wayfarer Parties ultimately bear responsibility for the actions described herein, our review of the relevant communications leaves no doubt that the Wayfarer Associates ***directly and knowingly participated*** in conduct that offends human decency, basic ethical standards of your professions, and the legal regimes listed below. Of course, you understood that from the get-go—as Ms. Nathan presciently warned: "We can't write we will destroy her," because "Imagine if a document saying all of the things that he wants ends up in the wrong hands."

**In sum, your conduct has violated, and continues to violate Ms. Lively's contract rider as well as state and federal laws—both directly and as an aider and abettor of unlawful conduct,** including, but not limited to: (1) Sexual Harassment (Cal. Gov. Code, § 12940/Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) Retaliation (Cal. Gov. Code, § 12940/Title VII); (3) Failure To Investigate, Prevent, And/Or Remedy Harassment (Cal. Gov. Code, § 12940); (4) Retaliation (Cal. Labor Code, § 1102.5); (5) Aiding And Abetting Harassment And Retaliation (Cal. Gov. Code, § 12940); (6) Breach Of Contract; (7) Intentional Infliction Of Emotional Distress; (8) Negligence; (9) False Light Invasion Of Privacy (Cal. Const., Art. I, § 1); and (10) Interference With Prospective Economic Advantage. **This unlawful conduct must stop immediately**.

Please be advised that the Lively-Reynolds Parties have exhausted any applicable administrative remedies by filing the enclosed Complaint with the California Civil Rights Department. Please also understand that we have now obtained an immediate right-to-sue notice, which is also enclosed, and are prepared to commence litigation. For present purposes, we demand that you **(1) immediately cease and desist your unlawful conduct towards Ms. Lively and the Lively-Reynolds Parties, and (2) immediately preserve, and do not take any steps to alter or destroy, any evidence that relates to the Matter**.

State and federal law obligates you to comply with this demand to preserve evidence. *See Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47 (2020); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (2003). This includes the duty to immediately direct all of your employees, agents, and representatives to safeguard relevant records and to create mechanisms for collecting the preserved records so that they might be searched. *See VOOM HD*

- 3 -

CONFIDENTIAL                                                                                     HEATH_000041142

**manatt**                                                      **WILLKIE FARR & GALLAGHER** LLP

December 20, 2024
Page 4

*Holdings LLC v. EchoStar Satellite LLC*, 93 A.D.3d 33 (2012). Failure to immediately cease and desist all such unlawful conduct, and to comply with this preservation notice may trigger significant legal consequences and a host of damages, including but not limited to economic and non-economic damages, punitive damages, attorneys' fees and costs.

<b><u>DEMAND TO CEASE AND DESIST</u></b>

You must immediately cease and desist from engaging in, directing others to engage in, or assisting or supporting any effort to harass, retaliate against, or damage the Lively-Reynolds Parties and their public image, including, but not limited to, through the use of social media and press surrounding the Film in any way whatsoever, including but not limited to through the use of digital media, social media, or content seeding with any print or online media source, blog, vlog, podcast or internet platform (including but not limited to TikTok, Instagram, Facebook, X (formerly Twitter), Reddit, YouTube, SnapChat, Threads, Bluesky, LinkedIn, or any other such platform).

<b><u>DEMAND TO PRESERVE AND RETAIN ALL RELEVANT DOCUMENTS AND<br>ELECTRONICALLY STORED INFORMATION</u></b>

We further demand that you take the necessary and appropriate steps to safeguard against the destruction of all Documents or ESI in your possession, custody, or control that relate to, or reasonably calculated to lead to the discovery of evidence related to this Matter in any way whatsoever.

A.   **Materials Related to The Matter.**

For the removal of all doubt, relevant materials related to this Matter include any Documents or ESI, as defined below, related to but not limited to the following issues:

- Sexually explicit or other inappropriate or unwelcome actions, conduct, or comments made by Baldoni, Heath or anyone else during Film production;

- Communications by or involving any Wayfarer Parties or Wayfarer Associates related to formal or informal complaints or discussions about the work environment on the set of the Film, by the Lively-Reynolds Parties, or anyone else;

- Communications by or involving any Wayfarer Parties or Wayfarer Associates about any of the Lively-Reynolds Parties and/or any actors or staff working on the Film;

CONFIDENTIAL                                                                                    HEATH_000041143

**manatt**  **WILLKIE FARR & GALLAGHER LLP**

December 20, 2024
Page 5

- Contracts or agreements with any public relations, marketing, publicity firms, or other third-party firms or providers of any social media services, including but not limited to efforts to seed, influence, manipulate, boost, amplify, or engage with social media algorithms, narrative or virality, as well as the use of bots or inauthentic accounts;

- Actions taken to harm the Lively-Reynolds Parties and damage their public image, including but not limited to any:

- Solicitation of individuals or entities to post negative material or comments or reactions (e.g., votes or "likes") about the Lively-Reynolds Parties, whether paid or unpaid, in any online forum, including but not limited to TikTok, Instagram, Facebook, X (formerly Twitter), Reddit, YouTube, SnapChat, Threads, Bluesky, LinkedIn or any other such social media or online platforms;

- Solicitation, encouragement, creation, seeding, or purchase of any online, digital, or social media or "bot" services, including those that generate artificial, inauthentic, and/or machine-generated negative posts or comments or reactions about any of the Lively/Reynolds Parties;

- Solicitation, encouragement, creation, or purchase of any online, digital, or social media or "bot" services, including those that generate artificial, machine-generated positive posts or comments or reactions about any Wayfarer Party;

- Solicitation, encouragement, creation, or purchase of any online, digital, or social media or "bot" services, including those that engage with audiences, perform account take downs, start threads of theories, create social fan engagements, and/or attempt to influence public narrative in any other way;

- Communication with any media outlet of any kind, encouraging it to publish a negative post, comment, reaction, or article about any of the Lively/Reynolds Parties;

- Communication with any media outlet of any kind, encouraging it to alter or not publish a positive post, comment, reaction, or article about any of the Wayfarer Parties;

- Communications with any current or former cast, crew, colleague, employee, agent or other associate of any of the Lively/Reynolds Parties, including but not limited to communications designed to gather negative intelligence on any of the Lively/Reynolds Parties;

- 5 -

CONFIDENTIAL
HEATH_000041144

manatt                                         WILLKIE FARR & GALLAGHER LLP

December 20, 2024
Page 6

- Any and all articles or copy of any kind drafted about any of the Lively/Reynolds Parties to be used in the media, on social media or on the Internet;

- Any plan, program, strategy, or campaign by Melissa Nathan, any employee of The Agency Group PR firm, or any vendor, contractor or other third-party entity working in cooperation with the same, or any other Wayfarer Party, to disparage any of the Lively/Reynolds Parties or harm their public image;

- Any attempt to hide or divert attention from any Wayfarer Party's inappropriate, unwelcome, and harassing activity on the set of, or related to, the Film;

- Formal or informal allegations or complaints about a hostile work environment, or other inappropriate or unlawful conduct, on the set of the Film;

- Any other real, alleged, or reported "feud," dispute or disagreement between any of the Lively/Reynolds Parties and any Wayfarer Party regarding the filming, editing, production, marketing, publicity, or distribution of the Film; and

- All documents and records of any kind reflecting payments to anyone for services of any kind related to the Lively-Reynolds Parties, including but not limited to, in support of any negative media or social media campaign against the Lively-Reynolds Parties, or any of them.

B.   **Preservation of Documents.**

For purposes of this preservation demand, "Document" and "Documents" shall be interpreted in the broadest sense contemplated by sections 2031.010 *et seq.* of the California Code of Civil Procedure or Rules 26, 34, and 37 of the Federal Rules of Civil Procedure ("FRCP") and shall mean, refer to, and include any writing as defined by section 250 of the California Evidence Code or Electronically Stored Information ("ESI") defined by FRCP Rule 34, including but not limited to:

- All written materials in original, draft, or duplicate form, whether handwritten, typewritten, or both, including but not limited to all notices, written agreements, contracts, correspondence, letters, records, reports, memoranda, notes, files, messages, message books, meeting notes, meeting minutes, telephone logs, memoranda of telephone conversations, publications, books, brochures, booklets, manuals, flyers, leaflets, memoranda of agreement, letters of intent, books of account, ledgers, journals, working papers, records or summaries of personal interviews or conversations, appointment calendars, diaries, receipts, invoices, billing statements, and payment stubs;

CONFIDENTIAL                                                          HEATH_000041145

**manatt**  **WILLKIE FARR & GALLAGHER** LLP

December 20, 2024
Page 7

- All facsimiles, electronic mail messages, instant messages, text messages, voicemails, telegrams, telexes or other ESI;

- All graphical matter, including but not limited to charts, diagrams, graphs, and models;

- All audio recordings and video recordings;

- All photocopies, photographs, and images; and

- All microfilm, microfiche, magnetic tapes, floppy discs, DVDs, hard drives, disc drives, data cards, data processing files, and computer-readable records or programs, including any and all drafts or non-identical copies thereof, however produced or reproduced and of every kind and description, including but not limited to the original and each copy thereof that is non-identical by reason of any mark, change, or other cause or reason whatsoever.

**C.** **Preservation of Electronically Stored Information (ESI).**

For purposes of this demand, Electronically Stored Information ("ESI") shall be interpreted in the broadest sense contemplated by California Civil Procedure sections 2016.020 ("information that is stored in an electronic medium"), FRCP Rule 34 ("any type of information that is stored electronically"), and any other applicable law. Your computer systems, including, without limitation, enterprise servers and databases, workstations, smart phones and other mobile devices, and online or cloud repositories, contain information that will not be available in paper format, and therefore preservation of paper Documents alone will not constitute full or adequate preservation of discoverable evidence. Because we do not know about your information technology systems or retention policies regarding Documents and ESI, we cannot specify in any detail the steps that are required to meet your preservation obligations for this Matter.

Thus, we hereby request that you take all appropriate steps to preserve ESI that might contain information related to, or reasonably calculated to lead to the discovery of evidence related to this Matter. This ESI includes, without limitation, the following:

- Mobile devices, including cellular phones, smart phones, and tablets, used or accessed in connection with or related to your business, employees, or business operations;

- Laptop computers, desktop computers, and other electronic devices used or accessed in connection with or related to your business, employees, or business operations;

CONFIDENTIAL    HEATH_000041146

**manatt**  **WILLKIE FARR & GALLAGHER LLP**

December 20, 2024
Page 8

- Digital communications, including email, voice mail transcriptions, SMS text messages, other instant messages, or chats between and among your and any vendor, consultant, contractor, employee, or other individual or entity;

- Word processing Documents, spreadsheets, notebooks, and presentations;

- Databases and the data within the databases;

- Image and facsimile files;

- Sound recordings including voicemail, podcasts, interviews, and others;

- Video or animation files;

- Calendar information;

- Contacts and relationship management data;

- Blog tools;

- Web-based email systems, including but not limited to, Gmail, Yahoo!, Hotmail, Outlook, and all others;

- Social media and communications applications including Facebook, Instagram, Threads, TikTok, YouTube, Snapchat, X (formerly Twitter), Slack, Teams, Jabber, WhatsApp, Signal, Bluesky, Telegram, LinkedIn, Reddit, and others;

- Websites and related information, including all historical information;

- Wikis;

- Shared work applications such as SharePoint, Google Apps, and others;

- Online repositories such as OneDrive, Dropbox, Box, secure file transfer locations, or cloud platforms such as Amazon Web Services (AWS) or Microsoft Azure;

- Project management application data;

CONFIDENTIAL                                                                                              HEATH_000041147

manatt                                        WILLKIE FARR & GALLAGHER LLP

December 20, 2024
Page 9

- Legacy data;

- Online advertisements, including key words purchases, and campaigns;

- Local or remotely stored activity or data logs for any remote access programs on your computers or for which you have a license;

- Backup media; and

- Archival files.

Further, we hereby request that you take all appropriate steps to preserve the following specific categories of identified Documents and ESI related to this Matter:

- Documents and communications (including, but not limited to, contracts, text and instant messages, social media messages and comments, email communications, notes, files, and other records, memos, articles, etc.) regarding the Lively-Reynolds Parties, the Film, or the filming, editing, production, marketing, publicity, or distribution of the Film, as well as related to any efforts to influence or analyze the press or social media conversations about the Lively-Reynolds Parties, Mr. Baldoni, or Wayfarer Studios;

- All communications that you have sent or received since December 1, 2022, either transmitted by way of an email account or maintained on a personal electronic device (*e.g.*, a cell phone or computer) regarding the Lively-Reynolds Parties, the Film, or the filming, editing, production, marketing, publicity, or distribution of the Film, as well as related to any efforts to influence or analyze the press or social media conversations about the Lively-Reynolds Parties, Mr. Baldoni, or Wayfarer Studios;

- Communications with third parties regarding the Lively-Reynolds Parties, the Film, or the filming, editing, production, marketing, publicity, or distribution of the Film, as well as related to any efforts to influence or analyze the press or social media conversations about the Lively-Reynolds Parties, Mr. Baldoni, or Wayfarer Studios;

- Any and all communications or other Documents regarding your formal or information technology, security data, or privacy procedure policies, or practices, including document retention policies; and

- All other Documents about the Lively-Reynolds Parties, the Film, or the production, marketing, publicity, or distribution of the Film that are

- 9 -

CONFIDENTIAL                                                              HEATH_000041148

**manatt**                          **WILLKIE FARR & GALLAGHER** LLP

December 20, 2024
Page 10

> potentially relevant to this Matter, including, but not limited to all other documents related to any efforts to influence or analyze the press or social media conversations about the Lively-Reynold Parties, Mr. Baldoni, or Wayfarer Studios.

2. **Preservation of Materials in Native Format.**

It is important that you preserve ESI in native format, *i.e.*, in the format in which it is normally maintained, and avoid taking steps that degrade the usability of the data. For example, you must not remove or alter metadata or full text searchability, or take any other action, which might make it more difficult or burdensome to access or use the ESI efficiently. Please ensure you take steps to preserve ESI in the native forms and avoid preservation methods that could remove or limit the ability to search the ESI by electronic means or that make it difficult or burdensome to access or use the information.

3. **Preservation of Metadata.**

Because of the nature of ESI, you should also expect that you will need to preserve, disclose and produce system and application metadata. System metadata is information describing the history and characteristics of documents, files, or volumes containing ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting the file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data, and dates of creation and printing. For electronic mail, metadata includes all header routing data and attachment data, in addition to the To, From, Subject, Sent or Received Date, CC, and BCC fields.

Please be mindful that Metadata may be over-written or corrupted by careless handling or improper preservation, including by moving, copying, or examining the contents of files. For example, every time an individual saves an updated version of a Word document, the person alters the metadata of the file, even if the only thing that changed was the timestamp.

4. **Preservation of Accessible and Inaccessible Data**.

ESI resides not only in active computer systems or storage devices that are reasonably accessible to you, but also on devices or media (such as remote backup systems or archives) you may believe are not reasonably accessible. You are obligated to preserve potentially relevant ESI from both of these sources of ESI, even if you do not currently intend to produce ESI that you believe to be inaccessible. In fact, the relevant law requires you to identify all sources of ESI and demonstrate why some of those sources may contain information that is not reasonably accessible. For good cause shown, a Court may order production of ESI, even if it is not reasonably accessible.

CONFIDENTIAL                                                                                      HEATH_000041149

manatt                                WILLKIE FARR & GALLAGHER LLP

December 20, 2024
Page 11

Accordingly, such ESI must be preserved in the interim so as to avoid prejudicing the Lively-Reynolds Parties' rights to secure this ESI or to have a Court resolve this issue.

Moreover, regarding accessibility, you must not do anything which results in ESI being more difficult to collect, process, search or produce. For example, you must not take online data and move it near line or offline or take near line data and move it offline. Should you do so, the cost of restoring that ESI to online status will be borne solely by you and will not be subject to any cost sharing or cost shifting arrangement.

5. **Suspension of Certain Routine Practices.**

In addition, you should be aware that implementation of a litigation hold requires you to act immediately to identify, modify, and/or suspend any features of your information management systems and devices that, in routine operation, may cause the loss or alteration of potentially relevant ESI. Examples of such features include, without limitation:

- Purging emails based on age, capacity, or other criteria through use of auto-delete functions;

- Limiting email mailbox sizes such that mailbox custodians may be caused to delete material to meet such restrictions;

- Using data wiping, erasure, or encryption utilities or devices;

- Overwriting, erasing, destroying, or discarding backup media, legacy systems, or data;

- Reassigning, reimaging, or disposing of devices, systems, servers, or media;

- Releasing or purging online storage repositories;

- Running antivirus or other programs affecting wholesale meta data alteration;

- Using metadata stripper utilities;

- Disabling or failing to enable server or IM logging; and

- Executing drive or file defragmentation or compression programs.

Adequate preservation of paper Documents and ESI requires taking steps to make sure the evidence is not disposed of or destroyed. For paper Documents and other tangible things, this may

- 11 -

CONFIDENTIAL                                                                                    HEATH_000041150

manatt                                          WILLKIE FARR & GALLAGHER LLP

December 20, 2024
Page 12

simply mean storing the Documents and things in a safe place where they cannot be lost, thrown away, or damaged. With ESI, however, it may be more complicated to ensure that evidence is not lost, damaged, or altered due to daily or routine operations or malfeasance (whether intentional or not). For example, with respect to ESI stored on a computer or mobile device, booting a drive, examining its contents, or running any application on it may irretrievably alter the evidence it contains and constitute unlawful spoliation of evidence. Preservation requires appropriate action.

6. **Maintain Activity Log of System Modifications.**

Until this matter reaches resolution, you should maintain an activity log that documents all modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria of this letter.

7. **Employee Efforts to Protect Private Information.**

In this regard, be advised that employees may seek to hide, destroy or alter ESI since it is common for employees to use business devices and workplace internet access for personal communications. In an effort to prevent such purely personal communications from being collected in litigation, they may attempt to destroy them, and in doing so, they may also delete or destroy potentially relevant ESI. You must take steps to guard against such actions.

8. **ESI Held by Assistants or Proxies.**

To the extent that you identify individuals within the organization who have potentially relevant ESI, you should preserve the data of such individuals' assistants or proxies in addition to preserving the data in the immediate possession of the custodians themselves.

9. **ESI on Home or Portable Devices or Online Accounts.**

You should also determine the extent to which any home or portable systems contain potentially relevant ESI. If employees, former employees, officers, or board members have sent or received work-related messages, or reviewed potentially relevant Documents while away from the office, you must preserve the contents of systems, devices, and media used for these purposes, including, home computers, laptops, personal smart phones, external drives, thumb drives, CDs, DVDs, and the like. Similarly, if employees, former employees, officers, or board members have used online or browser-based personal email accounts or services (*e.g.*, Gmail) to send or receive potentially relevant messages or attachments, the contents of these accounts must be preserved.

D. **ESI or Documents in the Possession of Third Parties.**

- 12 -

**manatt**                                        **WILLKIE FARR & GALLAGHER** LLP

December 20, 2024
Page 13


You must also identify and preserve Documents and ESI in the possession of third parties that are subject to your direction or control. Accordingly, you must notify any current or former agent, vendor, employee, attorney, consultant, contractor, accountant, marketing firm, public relations firm, or other entity, of their obligation to ensure that such third parties preserve potentially relevant Documents and ESI.

E.  **Continuing Obligation to Retain Documents and ESI Created After Notice.**

Relevant evidence includes Documents and ESI created after the service of this Letter. You are under a continuing and affirmative obligation to safeguard such evidence against destruction, modification, or alteration.

## CONCLUSION

We hereby demand that you **immediately cease and desist** in engaging in the above-identified conduct, ongoing or contemplated, and **immediately implement the document preservation steps described above**. Nothing herein should be construed as a waiver of any of the Lively-Reynolds Parties' rights, which are hereby reserved.

- 13 -

CONFIDENTIAL                                                                                         HEATH_000041152

**manatt**                                    **WILLKIE FARR & GALLAGHER** LLP

December 20, 2024
Page 14

                                                           Respectfully,

/s/ Esra. A Hudson                         /s/ Michael J. Gottlieb
Esra A. Hudson                              Michael J. Gottlieb
Manatt, Phelps & Phillips, LLP              Willkie Farr & Gallagher LLP
2049 Century Park East, Suite 1700          1875 K Street NW
Los Angeles, CA 90067                       Washington, DC 20006

cc:    Stephanie Roeser, Manatt, Phelps & Phillips LLP
       Kristin Bender, Willkie Farr & Gallagher LLP

CONFIDENTIAL                                HEATH_000041153