UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
BLAKE LIVELY, :
:
Plaintiff, :
: 24-cv-10049 (LJL)
-v- :
: MEMORANDUM &
WAYFARER STUDIOS LLC, JUSTIN BALDONI, : ORDER
JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH :
US MOVIE LLC, MELISSA NATHAN, THE AGENCY :
GROUP PR LLC, JENNIFER ABEL, JED WALLACE, :
STREET RELATIONS, INC., :
:
Defendants. :
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Blake Lively ("Lively") seeks an order directing the Wayfarer Parties[1] to produce certain documents identified on their Signal Privilege Log (the "Privilege Log"). Dkt. No. 908. With limited exceptions, the Wayfarer Parties oppose the motion. Dkt. No. 920. Because the Court cannot sufficiently assess many of the Wayfarer Parties' claims of privilege based on the contents of their Privilege Log, the Wayfarer Parties are directed to file a more complete log as further detailed below.

On August 27, 2025, the Court issued a Memorandum and Order (the "Order") addressing a host of discovery issues raised by Lively in an omnibus motion to compel. Dkt. No. 711. Among the issues addressed in the Order was Lively's contention that the Wayfarer Parties should be directed to produce a privilege log for documents or communications created after

---

[1] The Wayfarer Parties are Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel.

December 2024. Dkt. No. 553 at 6–7; Dkt. No. 646 at 9. The Wayfarer Parties opposed this request. Dkt. No. 611 at 17. In its Order, the Court directed the Wayfarer Parties to produce a categorical privilege log in accordance with Local Civil Rule 26.2(c). Dkt. No. 711 at 12. The Wayfarer Parties subsequently did so. After Lively contended that the amended log contained many of the same deficient descriptions as the original one, the Wayfarer Parties agreed to provide a document-by-document privilege log, which is now the subject of Lively's current motion. Dkt. No. 908 at 1. Lively asserts that the Privilege Log is again deficient in several respects. For example, the log does not indicate senders or recipients of each communication but instead lumps "participants" into certain categories. *Id.* at 1–2. Lively argues that this approach prevents an assessment of the propriety of each claim of privilege, as it is unclear who is communicating in each document. *Id.* Lively also seeks production of certain categories of documents which she believes "plainly are not privileged." *Id.* at 2.

A privilege log must contain sufficient information to enable other parties to assess the claim of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii); *see United States v. Construction Prods. Rsch., Inc.*, 73 F.3d 464, 473–74 (2d Cir. 1996). "To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document." *Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 93 (E.D.N.Y. 2019) (quoting *Burns v. Image Films Ent., Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y. 1996)). The log provided by the Wayfarer Parties in many instances provides the Court with insufficient information to assess the claims of privilege.

First, Lively asserts that the Wayfarer Parties should be ordered to produce all Signal communications and attachments lacking an attorney presence. *Id.* The Wayfarer Parties respond that an attorney does not need to be a sender or recipient of a document or communication for the attorney-client or work-product privileges to attach. Dkt. No. 920 at 1–2. What matters is whether the non-lawyer communications are "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.* at 1 (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)). Certain entries in the Privilege Log appear sufficiently detailed and related to the provision of legal advice to qualify as privileged, while it is less clear whether others do. For example, some of the communications such as Privilege Log Items 421–451 include the presence of law clerks Spencer Freedman and Jared Freedman, *see* Dkt. No. 908-1, and would therefore appear to be privileged unless those individuals' presence was incidental to the provision of legal advice. The Wayfarer Parties also argue that some communications are categorically privileged because they were made "between corporate employees" for the purpose of "implement[ing] legal advice and . . . obtain[ing] information to support counsel's legal strategy." Dkt. No. 920 at 2. Although it is true that communications among corporate employees are privileged where the communications are intended to give "professional advice to those who can act on it [or to provide] information to the lawyer to enable him to give sound and informed advice," *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981), the Privilege Log is insufficiently detailed in certain places to determine whether, as to the particular chat, that is in fact what the relevant communications were designed to do. In places, the Privilege Log contains only general descriptions regarding corporate employee communications involving claims in Lively's lawsuit and parrots the legal standard by asserting that these communications were "in furtherance of

legal advice." *See* Dkt. No. 908-1 (e.g., Privilege Log Items 50, 178). It is the Wayfarer Parties' burden to "establish those facts that are the essential elements of the privileged relationship," *von Bulox ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987), and conclusory assertions that these communications were "necessary to seeking legal advice" fail to meet that burden when those assertions are not specifically tied to particular aspects of the litigation.

"The failure to provide sufficiently descriptive information in a privilege log may result in a finding that the proponent of the privilege has not satisfied its burden." *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2017 WL 1232526, at *6 (E.D.N.Y. Feb. 17, 2017). As an alternative to ordering production of the materials, however, a court may direct the party producing the privilege log to serve an updated and corrected log. *See Sulaymu-Bey*, 372 F. Supp. 3d at 94. The Wayfarer Parties are therefore directed to update their Privilege Log with the information necessary to substantiate their claims of privilege, including by specifying not only chat "participants" but also message senders.[2]

A similar point applies with respect to a second category of documents: those where the Privilege Log indicates that the communications were made "seeking legal advice regarding media strategy to support litigation objectives." *See* Dkt. No. 908-3. As the Court has previously explained, "[a] media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice." *Lively v. Skyline Agency LLC*, 2025 WL 2532796, at *5 (S.D.N.Y. Sept. 3, 2025) (quoting *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,

---

[2] At points, the Wayfarer Parties sufficiently tie the communications to specific aspects of the case, such as the preparation of amended pleadings. Dkt. No. 908-1 (e.g., Privilege Log Items 572, 577, 579, 590–600, 604, 622–626). The Wayfarer Parties do not need to provide further details about the subject of these communications (though they do need to indicate the message senders).

2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003)). Here, the Wayfarer Parties assert that the communications did not simply concern media and PR strategy but were specifically "seeking legal advice" regarding those activities. Dkt. No. 920 at 2. The log does not identify message senders. In addition, although some of the descriptions tie the "seeking of legal advice" to something concrete, such as "preparation of amended pleading[s]," *see* Dkt. No. 908-3 at 1, other descriptions are more general and conclusory, such as those involving "ongoing litigation strategy, including coordinated media and communications strategy in support of litigation objectives," *see id.* at 2. These latter descriptions are insufficiently detailed for the Court to ascertain whether any particular communication principally involved the provision and seeking of legal advice or instead was merely related to media strategy concerning litigation. They therefore should be supplemented.

Third, Lively requests *in camera* review of twelve documents where there is an attorney present because the descriptions of the documents are in her view insufficiently particular to enable her to assess the Wayfarer Parties' claims of privilege. Dkt. No 908 at 3. Four of the entries concern an "internal investigation," which the Wayfarer Parties have since indicated was "the internal investigation by Raines Feldman Littrell LLP" and which the Court has previously ordered need not be disclosed. Dkt. No. 920 at 3; *see* Dkt. No. 341. The Court reaches the same conclusion here. The other eight documents are "voice note attachments," which the Privilege Log describes as made "in furtherance of legal advice." Dkt. No. 908-4. The Court holds for the reasons provided above that while some of these descriptions are adequate (e.g., those tying the communications to a specific legal issue, such as the "implications of communications obtained by the New York Times," *see id.* at 1), others are not (e.g., those related generally to "evidence gathered and work product" involving the litigation as a whole, *see id.* at 1–2). In addition, once

5

again, the log does not indicate message senders.

Finally, Lively seeks attachments to certain Signal communications, arguing that evidence transmitted to counsel—especially evidence that existed prior to litigation—is not entitled to protection under the attorney-client or work-product privileges. Dkt. No. 908 at 2. The Wayfarer Parties assert that most, if not all, of these documents were already produced, but that to the extent any have not been produced, they will be.

The Wayfarer Parties are accordingly ordered to provide an updated privilege log by November 25, 2025 substantiating their claims of privilege and addressing the deficiencies identified in this Order. The Wayfarer Parties are also directed to provide the additional attachments by November 21, 2025. Lively shall have until December 1, 2025, to make a renewed challenge to the claims of privilege.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 889.

SO ORDERED.

Dated: November 19, 2025
       New York, New York

LEWIS J. LIMAN
United States District Judge