# EXHIBIT F

CONFIDENTIAL

Page 1

```
 1          UNITED STATES DISTRICT COURT
 2        FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                    ---oOo---
 4
 5   STEPHANIE JONES, JONESWORKS
     LLC,
 6
                     Plaintiffs,
 7
        vs.              CASE NO. 1:25-CV-00779-LJL
 8
     JENNIFER ABEL, MELISSA NATHAN,
 9   JUSTIN BALDONI, WAYFARER
     STUDIOS LLC,
10
                     Defendants.
11   _____
     BLAKE LIVELY,
12
                     Plaintiff,
13
        vs.        CASE NO. 24-CV-10049-LJL (LEAD CASE)
14                      25-CV-449 (LJL) (MEMBER CASE)
15   WAYFARER STUDIOS LLC, ET AL.
16                   Defendants.
     _____
17
18                ***CONFIDENTIAL***
19     VIDEO-RECORDED DEPOSITION OF MELISSA NATHAN
20               Los Angeles, California
21            Tuesday, September 30, 2025
22
23   Stenographically Reported By:  Ashley Soevyn,
     CALIFORNIA CSR No. 12019
24
25
```

CONFIDENTIAL

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                     ---oOo---
 4
 5  STEPHANIE JONES, JONESWORKS
    LLC,
 6
                     Plaintiffs,
 7
       vs.                  CASE NO. 1:25-CV-00779-LJL
 8
    JENNIFER ABEL, MELISSA NATHAN,
 9  JUSTIN BALDONI, WAYFARER
    STUDIOS LLC,
10
                     Defendants.
11  _____
    BLAKE LIVELY,
12
                     Plaintiff,
13
       vs.        CASE NO. 24-CV-10049-LJL (LEAD CASE)
14                       25-CV-449 (LJL) (MEMBER CASE)
15  WAYFARER STUDIOS LLC, ET AL.
16                   Defendants.
    _____
17                  **CONFIDENTIAL**
18          Video-recorded Deposition of
19  MELISSA NATHAN, taken on behalf of the Plaintiff
20  Jonesworks, Pursuant to Notice, at the offices of
21  Willkie Farr & Gallagher, 2029 Century Park East,
22  Los Angeles, California beginning at 9:16 a.m.  and
23  ending at 8:00 p.m. on Tuesday, September 30, 2025,
24  before me, ASHLEY SOEVYN, California Certified
25  Shorthand Reporter No. 12019.
```

CONFIDENTIAL

Page 3

```
 1   A P P E A R A N C E S:

 2

 3   For the Plaintiffs Stephanie Jones and Jonesworks

 4   LLC:

 5             QUINN EMANUEL URQUHART & SULLIVAN

 6             BY:  KRISTIN TAHLER

 7             Attorney at Law

 8             865 S. Figueroa Street

 9             8th Floor

10             Los Angeles, California 90017

11             kristintahler@quinnemanuel.com

12             (212) 849-7000

13   -AND-

14             QUINN EMANUEL URQUHART & SULLIVAN

15             BY:  MAAREN A. SHAH

16             BY:  MORGAN ANASTASIO

17             Attorneys at Law

18             51 Madison Avenue

19             22nd Floor

20             New York, New York 10010

21             maarenshah@quinnemanuel.com

22             manastasio@quinnemanuel.com

23             (212) 849-7000

24

25
```

CONFIDENTIAL

**Page 4**

```
 1   A P P E A R A N C E S:

 2

 3   For the Plaintiff Blake Lively:

 4            MANATT PHELPS & PHILLIPS LLP (Not present)

 5            BY:  STEPHANIE ROESER

 6            BY:  KATELYN CLIMACO

 7            Attorneys at Law

 8            2049 Century Park East

 9            Suite 1700

10            Los Angeles, California 90067

11            sroeser@manatt.com

12            kclimaco@manatt.com

13            (310) 312-4207

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL

Page 5

```
1    A P P E A R A N C E S:

2

3    For the Plaintiff Blake Lively:

4             WILLKIE FARR & GALLAGHER

5             BY:  MICHAEL GOTTLIEB

6             Attorney at Law

7             2029 Century Park East

8             Los Angeles, California 90067

9             mgottlieb@willkie.com

10            (310) 855-3000

11   -AND-

12            WILLKIE FARR & GALLAGHER

13            BY:  MELISSA TAUSTINE (VIA ZOOM)

14            BY:  KRISTIN BENDER (VIA ZOOM)

15            Attorneys at Law

16            1875 K Street

17            Northwest

18            Washington, D.C. 20006

19            mtaustine@willkie.com

20            kbender@willkie.com

21            (202) 303-1245

22

23

24

25
```

CONFIDENTIAL

Page 6

1    A P P E A R A N C E S:

2

3    For the Plaintiff Blake Lively:

4              WILLKIE FARR & GALLAGHER

5              BY:  AARON E. NATHAN

6              BY:  MICHAELA CONNOLLY

7              Attorneys at Law

8              787 Seventh Avenue

9              New York, New York 10019

10             anathan@willkie.com

11             mconnolly@willkie.com

12             (212) 728-8000

13   -AND-

14

15             SLOANE OFFER WEBER AND DERN

16             BY:  LINDSEY STRASBERG (VIA ZOOM)

17             Attorney at Law

18             10100 Santa Monica Blvd., Ste. 750

19             Los Angeles, California 90067

20             (310) 248-5100

21

22

23

24

25

CONFIDENTIAL

Page 7

1   A P P E A R A N C E S:

2   For the Defendants Wayfarer Studios LLC, Jennifer

3   Abel, Melissa Nathan and Justin Baldoni, Jamey Heath

4   and Steve Sarowitz:

5            LINER FREEDMAN TAITELMAN+COOLEY

6            BY:  BRYAN FREEDMAN

7            BY:  SUMMER BENSON

8            BY:  JASON SUNSHINE (VIA ZOOM)

9            Attorneys at Law

10           1801 Century Park West, 5th Floor

11           Los Angeles, California 90067

12           bfreedman@lftcllp.com

13           sbenson@lftcllp.com

14           jsunshine@lfcllp.com

15           (310) 201-0005

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

                                    Page 8

1    A P P E A R A N C E S:

2    For the Defendants Wayfarer Studios LLC, Jennifer

3    Abel, Melissa Nathan and Justin Baldoni, Jamey Heath

4    and Steve Sarowitz:

5              AHOURAIAN LAW

6              BY: MITRA AHOURAIAN (Not present)

7              Attorney at Law

8              2029 Century Park East

9              Suite 400

10             Los Angeles, California 90067

11             mitra@ahouraianlaw.com

12             (310) 376-7878

13

14   For the Defendants Jed Wallace and Street Relations,

15   Inc.:

16             JACKSON WALKER LLP

17             BY:  JOEL R. GLOVER

18             Attorney at Law

19             1401 McKinney Street

20             Suite 1900

21             Houston, Texas 77010

22             jglover@jw.com

23             (713) 752-4226

24

25

CONFIDENTIAL

**Page 9**

1   A P P E A R A N C E S:

2   Also Present:

3   Jennifer Abel

4   Zach Czerenda, Veritext Legal Solutions Concierge

5   (Via Zoom)

6   Jacob Florez, Videographer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

Page 18

```
 1              MR. GOTTLEIB:  Mike Gottlieb, Willkie
 2    Farr & Gallagher, on behalf of Ms. Lively.
 3              MR. NATHAN:  Aaron Nathan from Willkie
 4    Farr & Gallagher, on behalf of Ms. Lively.
 5              MR. GLOVER:  Joel Glover from Jackson
 6    Walker for Jed Wallace and Street Relations,
 7    Incorporated.
 8              MS. BENSON:  Summer Benson of Liner
 9    Freedman Taitelman & Cooley on behalf of the
10    Wayfarer defendants.
11              MR. FREEDMAN:  Bryan Freedman, same firm,
12    on behalf of the deponent, Melissa Nathan, the
13    Wayfarer parties, Jen Abel, who is present today,
14    and Steve Sarowitz, Jamey Heath, and Justin Baldoni.
15              THE VIDEOGRAPHER:  Thank you.  Any
16    remaining participants will be noted on the
17    transcript.
18              Will our court reporter please introduce
19    herself and swear in the witness.
20              THE STENOGRAPHIC REPORTER:  Good morning,
21    everybody.  Ashley Soevyn, stenographic reporter,
22    license 12019.
23              Ma'am, can I please have you raise your
24    right hand?
25              Do you solemnly state that the testimony
```

CONFIDENTIAL

```
                                        Page 19
 1    you're about to give in this deposition will be the
 2    truth, the whole truth, and nothing but the truth?
 3              THE WITNESS:  I do.
 4              THE STENOGRAPHIC REPORTER:  Great.  Thank
 5    you.
 6              THE WITNESS:  Thank you.
 7                   EXAMINATION
 8    BY MS. SHAH:
 9         Q    Good morning.
10         A    Good morning.
11         Q    My name is Maaren Shah.  You heard I
12    represent Stephanie Jones and Jonesworks in these
13    matters?
14         A    Yes.
15         Q    And you were just sworn in by the court
16    reporter.  Again, do you understand that you, as you
17    did yesterday, have a duty today to give true and
18    accurate testimony?
19         A    I do.
20         Q    And you are under oath today with equal
21    force as though you were in a court of law?
22         A    I understand.
23         Q    Is there any reason that you can't give
24    full and complete testimony today?
25         A    None.
```

CONFIDENTIAL

Page 129

1   that popped up on the Internet in or around May of

2   2024 about Stephanie Jones, right?

3       A    From being sent them, yes.  And knowing

4   about them.  Reading all the different articles,

5   yes.

6       Q    Is it your testimony that you are only

7   aware of those websites because you were sent them

8   or read publicly available articles about them?

9       A    It is.

10          MS. SHAH:  Okay.  I'm going to hand you a

11  series of documents.

12          THE WITNESS:  Before you do that, can I

13  just go to the bathroom really quickly?

14          MS. SHAH:  Yeah.  Of course.  We can take

15  a five-minute break.

16          THE VIDEOGRAPHER:  Off record.  The time

17  is 11:30 a.m.

18          (Recess.)

19          THE VIDEOGRAPHER:  The time is 11:50 a.m.

20  We're back on record.

21          MS. SHAH:  Okay.  So we're going to hand

22  you a series of documents, and I'm going to read

23  them out for the record.  If you'll just keep them

24  in front of you.

25          THE WITNESS:  Sure.

CONFIDENTIAL

Page 130

1    MS. SHAH:  Exhibit 54 is a document

2 entitled, "Holding Clients Hostage:  Stephanie Jones

3 Leaks."  It's marked NATHAN_000003131.

4   (Exhibit 54 marked for identification.)

5    THE WITNESS:  I see that.

6    MS. SHAH:  Exhibit 55 is a document

7 entitled "Stephanie Jones Leaks," and that bears the

8 website domain https://StephanieJoneslies.com/.

9   (Exhibit 55 marked for identification.)

10    THE WITNESS:  I see that.

11    MS. SHAH:  Exhibit 56 is a document from

12 what appears to be an X account or Twitter account

13 under the name @lyingstephjones.

14   (Exhibit 56 marked for identification.)

15    THE WITNESS:  I see that.

16    MS. SHAH:  Exhibit 57 is what appears to

17 be a Facebook account with the banner

18 Stephanie Jones Leaks.

19   (Exhibit 57 marked for identification.)

20    THE WITNESS:  I see that.

21    MS. SHAH:  And Exhibit 58 is a Pinterest

22 account with the banner Stephanie Jones Leaks.

23   (Exhibit 58 marked for identification.)

24    THE WITNESS:  I see that.

25

CONFIDENTIAL

Page 131

1    BY MS. SHAH:

2        Q    Okay.  And you have seen each of these

3    documents in Exhibits 54 through 58 before; isn't

4    that correct?

5        A    I have seen this one.

6        Q    Which one is that?

7        A    This is the Holding Clients Hostage.

8        Q    That's Exhibit 54.

9        A    I have seen 54.  Is 55 from 54?

10       Q    Fifty-five is different.  It is another

11   website, stephaniejoneslies.com.

12       A    I -- I mean, I don't know if they're the

13   same thing for me.  I have not seen this before.

14       Q    Which exhibit is that?

15       A    Fifty-eight.  I have not seen 57 before.

16       Q    Okay.

17       A    And I know that I was sent a Twitter, but

18   I really don't know if I have seen the majority of

19   Exhibit 56 before.

20       Q    Okay.  Now, you had a role in the

21   creation of the Stephanie Jones Leaks website that

22   documented in Exhibit 54, right?

23            MR. FREEDMAN:  Objection.

24            THE WITNESS:  No.

25

CONFIDENTIAL

Page 132

1    BY MS. SHAH:

2         Q    You asked Katie Case to write copy for

3    that website; isn't that true?

4         A    That is not true.

5         Q    And you also had a role in the creation

6    of publication of Exhibit 56, the X account, right?

7         A    No.

8         Q    You asked Katie Case to write copy for at

9    least five or six tweets that were posted on that X

10   account in Exhibit 56, right?

11              MR. FREEDMAN:  Objection.

12              THE WITNESS:  No.

13   BY MS. SHAH:

14        Q    Is it your under-oath testimony that you

15   had no involvement whatsoever in any shape or form

16   in anything having to do with the website in

17   Exhibit 54 and the X account in Exhibit 56?

18              MR. FREEDMAN:  Objection.

19              THE WITNESS:  It is, yes.

20   BY MS. SHAH:

21        Q    And if Katie Case testified to the

22   contrary, would she be lying?

23        A    Yes.

24        Q    Are you aware that Katie Case testified

25   that you asked her to write copy for the website in

CONFIDENTIAL

Page 133

1    Exhibit 54?

2              MR. FREEDMAN:  Objection.

3              THE WITNESS:  I was told that she did

4    testify.  I did not listen to her deposition.  I was

5    on a plane.

6    BY MS. SHAH:

7         Q    Who told you that?

8         A    I can't remember exactly who told me.  It

9    would have been one of my lawyers.

10             MR. FREEDMAN:  So no information from

11   your lawyers you should be disclosing.

12             THE WITNESS:  Got you.

13   BY MS. SHAH:

14        Q    Have you since read a transcript of her

15   testimony?

16        A    I have.

17        Q    You have?

18        A    Yes.

19        Q    And so you have read what she testified

20   about in this respect?

21        A    I have.

22        Q    Okay.  So you're aware that she testified

23   that you communicated to her to write copy for the

24   website in Exhibit 54, including specific language

25   that Stephanie holds clients hostage, that she leaks

Page 134

1   clients' secrets, and that she treats her employees

2   poorly, amongst others; are you aware that she

3   testified that?

4           MR. FREEDMAN:  Objection.

5           THE WITNESS:  I read her testimony.

6   BY MS. SHAH:

7       Q    And are you aware, then, that she

8   testified that you communicated to her that she

9   should write copy for the website in Exhibit 54,

10  including specific language that Stephanie Jones

11  holds clients hostage, that she leaks client

12  secrets, and that she treats her employees poorly?

13          MR. FREEDMAN:  Objection.

14          THE WITNESS:  I'm aware of what she

15  testified in her deposition, yes.

16  BY MS. SHAH:

17      Q    And is it your under-oath testimony that

18  when she testified that you communicated to her to

19  write copy for the website in Exhibit 54, she was

20  giving false testimony under oath?

21      A    It is, yes.

22      Q    Okay.  And is it your under-oath

23  testimony that when she testified in her deposition

24  that you gave her specific language to write for

25  this website, including that Stephanie Jones holds

CONFIDENTIAL

Page 135

1    clients hostage, that she leaks clients' secrets,

2    and that she treats her employees poorly, that she

3    was giving false under-oath testimony?

4         A    Yes.

5              MR. FREEDMAN:  Objection.

6    BY MS. SHAH:

7         Q    Okay.  Are you aware that Katie Case

8    testified that she received a call from you in early

9    May and communicated to her that a website that

10   became the website in Exhibit 54 had been requested?

11             MR. FREEDMAN:  Objection.

12             THE WITNESS:  Am I aware that she

13   testified that?

14   BY MS. SHAH:

15        Q    Uh-huh.

16        A    I don't actually recall that bit, but if

17   it's in her testimony, then yes.

18             MS. SHAH:  Okay.  We're going to need to

19   go on AEO.

20             MR. FREEDMAN:  Okay.

21   BY MS. SHAH:

22        Q    Have you read the entirety of Katie

23   Case's deposition transcript?

24             MR. FREEDMAN:  Objection.

25             THE WITNESS:  I think so.

CONFIDENTIAL

Page 137

1       Q    Okay.  At ██████

2       A    Yes.

3       Q    If Katie Case testified that you asked

4  her to draft the tweets about Stephanie Jones that

5  appeared in Exhibit 56, the outlying Steph Jones X

6  account --

7       A    Uh-huh.

8       Q    -- is it your under-oath testimony that

9  Katie Case was giving false under-oath testimony?

10      A    About me, yes, absolutely.

11      Q    Okay.  Do you have any personal knowledge

12  about whether or not Katie Case did write the copy

13  for the website in Exhibit 54?

14      A    Now or then?

15      Q    Personal knowledge.

16      A    No, but when, time period?

17      Q    Before.

18      A    No.

19      Q    Now?

20      A    Given what she said that she wrote it,

21  then yes.

22      Q    Okay.  Do you have any personal knowledge

23  about whether or not Katie Case wrote five or six

24  tweets that appeared on Exhibit 56, the X account?

25      A    No.

CONFIDENTIAL

Page 138

1          Q    Okay.  So you're saying you didn't ask

2    her to do it, but you don't know whether or not she

3    actually did it?

4          A    I mean, she testified that she did it,

5    correct?

6          Q    Yes.

7          A    So based on that and the conversations

8    that I'm not allowed to -- then, yes.  But before

9    that, no, I did not.  No.

10          Q    Okay.  And you are also aware that

11    Jed Wallace had involvement in building or creating

12    or publishing the website in Exhibit 54, right?

13              MR. GLOVER:  Objection.  Form.

14              MR. FREEDMAN:  Objection.

15              THE WITNESS:  No.

16    BY MS. SHAH:

17          Q    If Katie Case testified that he did, is

18    it your testimony that she would be giving false

19    under-oath testimony?

20          A    I can only talk to myself as to what I

21    know about my own personal test -- you know, I can't

22    speak to anyone else.  But I have no knowledge of

23    that.

24          Q    Okay.  And you just don't know one way or

25    another if Jed Wallace had involvement in the

CONFIDENTIAL

Page 139

1   website in Exhibit 54?

2              MR. FREEDMAN:  Objection.

3              MR. GLOVER:  Objection.

4              THE WITNESS:  Correct.  I don't know.

5   BY MS. SHAH:

6         Q    And if Katie Case said she spoke to him

7   about it, you don't have any basis to deny that?

8              MR. GLOVER:  Objection.  Form.

9              MR. FREEDMAN:  Objection.

10             THE WITNESS:  If I was not on any

11  telephone calls between those two, if it did or did

12  not happen, I was not on them.

13  BY MS. SHAH:

14        Q    Okay.

15             You're aware that part of what

16  Jed Wallace does for clients is to build websites,

17  right?

18             MR. GLOVER:  Objection.  Form.

19             MR. FREEDMAN:  Objection.

20             THE WITNESS:  That is not to my

21  knowledge, he builds websites.

22  BY MS. SHAH:

23        Q    Say it in the language that you would

24  prefer.

25             MR. FREEDMAN:  Objection.

CONFIDENTIAL

                                        Page 142

1    connection with building websites?

2          A    Yes.

3                MR. FREEDMAN:  Objection.

4    BY MS. SHAH:

5          Q    Okay.

6                Do you have any knowledge as to who was

7    involved in any respect in the website about

8    Stephanie Jones in Exhibit 54?

9                MR. FREEDMAN:  Objection.

10               THE WITNESS:  I do now.

11   BY MS. SHAH:

12         Q    What is that knowledge?

13         A    From Katie's testimony that she wrote it.

14         Q    Anything else?

15         A    No, I do not build websites.  So no.

16         Q    Have you ever been involved in a matter

17   where a website was built?

18               MR. FREEDMAN:  Objection.

19               THE WITNESS:  Just now, yes.  And my own.

20   BY MS. SHAH:

21         Q    What is your own?

22         A    The one that you have, The Agency Group.

23         Q    Okay.  And when you say "just now," you

24   mean the website that was built in connection with

25   the -- the Lively litigations?

CONFIDENTIAL

Page 143

```
 1        A     Correct.
 2        Q     Okay.  What about for ████████████?
 3        A     No, I have not built any websites.
 4        Q     I'm not asking if you built websites --
 5        A     Uh-huh.
 6        Q     -- I'm asking if you've been involved in
 7   a matter where a website was built?
 8        A     No.
 9        Q     Including ████████████████?
10              MR. FREEDMAN:  Objection.
11              THE WITNESS:  I have not been involved in
12   that.
13   BY MS. SHAH:
14        Q     Are you saying you were not involved in
15   building the website, or are you saying that a
16   website was not built in connection with the ████
17   ████████ matter?
18        A     Could you rephrase the question --
19        Q     Sure.
20        A     -- so I know exactly what I'm answering?
21        Q     I don't want to get caught up in -- in
22   the meaning of the world -- word "built" a website,
23   so I'm trying to broaden the question in terms of
24   your involvement in any capacity.
25        A     Uh-huh.
```

CONFIDENTIAL

Page 144

1       Q    Your involvement in any capacity in a

2  matter where a website was built?

3       A    In any matter at all?

4       Q    Yes.

5       A    I already testified yes to that.

6       Q    Which ones?

7       A    The one in connection with the Lively.

8       Q    Uh-huh.

9       A    My own.

10      Q    Uh-huh.

11      A    And there could have been one previously

12  for clients that back, back, back, I -- please show

13  me, I -- maybe.  But that's what I've been involved

14  in.

15      Q    Okay.  Do you know whether ██████████

16  requested that Katie Case write copy for the website

17  in Exhibit 54?

18      A    I have never met ████████████.  I have

19  never had any communication with him, so no, I don't

20  know.

21      Q    Apart from meeting ████ or having

22  communication with ████ are you aware of whether or

23  not ██ requested this website?

24      A    No.

25          MR. FREEDMAN:  Objection.

CONFIDENTIAL

Page 231

```
 1            MR. FREEDMAN:  Objection.
 2            THE WITNESS:  No.  I was also working on
 3    two other matters for Bryan at 9:40 a.m. that same
 4    day.
 5    BY MS. SHAH:
 6        Q    Was Jed involved in any of the other two
 7    matters you were working on for Bryan at that time?
 8        A    I can't recall.
 9        Q    Okay.  Do you believe that they were
10    asking you for copy on another matter?
11            MR. FREEDMAN:  Objection.
12            THE WITNESS:  I could have background
13    report something.  Could be.
14    BY MS. SHAH:
15        Q    Does copy typically mean background
16    report?
17        A    Yes, it can.
18        Q    Really?
19        A    Yes, it can.
20        Q    Okay.
21            So if Katie Case testified that this was
22    another website that she created at your request --
23        A    Uh-huh.
24        Q    -- in conjunction with Bryan Freedman and
25    Jed Wallace, that would be false under-oath
```

CONFIDENTIAL

Page 232

1    testimony?

2            MR. GLOVER:  Objection.  Form.

3            THE WITNESS:  Yes.

4    BY MS. SHAH:

5        Q    Okay.

6            Do you know who the ███████████████

7    are?

8        A    Yes.

9        Q    Who are they?

10       A    They're ████████████████████████

11   ███████████████

12       Q    █████████████████████████████; is that

13   right?

14       A    Yes.

15       Q    Were they ever your clients?

16       A    They -- at the beginning of the crisis --

17   their crisis situation, they reached out to hire us.

18   We had one conversation with them, and said okay,

19   before we knew more.  And I have to -- I'm not sure

20   of the time period.  When we found out, I would say

21   a couple of days, a day, two days, we declined to

22   work with them.

23       Q    Okay.  So you ultimately declined to

24   bring them on as clients of TAG; is that right?

25       A    Correct.

CONFIDENTIAL

Page 233

1       Q    Okay.  But notwithstanding that they were
2   never clients of TAG, you did work with Katie Case
3   to create a website in connection with their
4   litigation, didn't you?
5       A    I did not.
6            MR. FREEDMAN:  Objection.
7   BY MS. SHAH:
8       Q    And if Katie Case testified that you did,
9   that would be false under-oath testimony; is that
10  your testimony?
11      A    Completely false.
12      Q    Okay.  Is Katie Case a huge liar?
13      A    Apparently so, yes.
14      Q    Okay.  What reason does she have to lie
15  about you?
16           MR. FREEDMAN:  Objection.
17           THE WITNESS:  I don't know how she is
18  lying about me, apart from her being scared of
19  Stephanie Jones.  I don't know any other lies so far
20  unless you tell me them.
21  BY MS. SHAH:
22      Q    Okay.  How long have you known
23  Katie Case?
24      A    Roughly, nine years -- I don't know.
25  Something like that.

CONFIDENTIAL

Page 239

1    business while at TAG building websites with

2    Jed Wallace and Bryan Freedman?

3            MR. GLOVER:  Objection.  Form.

4            MR. FREEDMAN:  Objection.

5            THE WITNESS:  No, I don't -- no.  I mean,

6    to my knowledge, I do not know, no.

7            MS. SHAH:  Okay.  I'm going to show

8    you -- you testified earlier that you were brought

9    in at some point to work with ██████████ and

10   ██████████ on a litigation involving ██████████,

11   right?

12       A    Yes.

13       Q    Okay.  And Jed was involved in working

14   with them on that litigation as well, right?

15           MR. FREEDMAN:  Objection.

16           THE WITNESS:  I can't remember.  I

17   only -- you only reminded me from my own text

18   messages.

19           MS. SHAH:  Okay.  Let's mark this as...

20           THE STENOGRAPHIC REPORTER:  73.

21       (Exhibit 73 marked for identification.)

22   BY MS. SHAH:

23       Q    Exhibit 73.  It's an article dated

24   June 2nd, 2021, entitled "██████████ Hit by

25   $50 million Lawsuit by Former Goldman Sachs

CONFIDENTIAL

Page 399

```
 1              REPORTER'S CERTIFICATE
 2          I, ASHLEY SOEVYN, a Certified Shorthand
 3     Reporter of the State of California, do hereby
 4     certify:
 5              That the foregoing proceedings were taken
 6     before me at the time and place herein set forth;
 7     at which time the witness was put under oath by me;
 8              That the testimony of the witness, the
 9     questions propounded, and all objections and
10     statements made at the time of the examination were
11     recorded stenographically by me and were thereafter
12     transcribed;
13              That a review of the transcript by the
14     deponent was/ was not requested;
15              That the foregoing is a true and correct
16     transcript of my shorthand notes so taken.
17              I further certify that I am not a relative
18     or employee of any attorney of the parties, nor
19     financially interested in the action.
20              I declare under penalty of perjury under
21     the laws of California that the foregoing is true
22     and correct.  Dated this 1st day of October, 2025.
23
24
                  ASHLEY SOEVYN
25                CSR No. 12019
```