# EXHIBIT 1

CONFIDENTIAL

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                       ---oOo---
 4
 5   BLAKE LIVELY,
 6                  Plaintiff,
 7      vs.         CASE NO. 24-CV-10049-LJL (LEAD CASE)
                                25-CV-449 (LJL) (MEMBER CASE)
 8
     WAYFARER STUDIOS LLC, ET AL.,
 9
                    Defendants.
10   _____
     JENNIFER ABEL,
11              Third-party Plaintiff,
        vs.
12   JONESWORKS, LLC,
                Third-party Defendant.
13   _____
     WAYFARER STUDIOS LLC, et al.,
14              Consolidated Plaintiffs,
        vs.
15   BLAKE LIVELY, et al.,
                Consolidated Defendants.
16   _____
17                    **CONFIDENTIAL**
18
19       VIDEO-RECORDED DEPOSITION OF JAMEY HEATH
20              Los Angeles, California
21            Thursday, October 9, 2025
22
23   Stenographically Reported by:  Ashley Soevyn,
24   CALIFORNIA CSR No. 12019
25
```

CONFIDENTIAL

Page 76

1  Wayfarer.  So if this person was putting in their
2  notice and moving on, what would that mean for
3  Wayfarer?  So it was something to consider.
4           But I do recall that in her notice, that
5  that didn't mean she was leaving tomorrow.  There
6  was a duration of time.  I don't know -- I don't
7  know if that was a month or two months or
8  three months or whatever it would have been.  But
9  certainly, that would have been on my mind.
10 BY MS. SHAH:
11     Q    You just said something about Matthew not
12 being the person you felt safe considering to be
13 like the leader of the Wayfarer account, right?  Who
14 was the person that you felt safe with being the
15 leader of the Wayfarer account?
16     A    Jen.
17     Q    Okay.  Anyone else at Jonesworks?
18     A    Jen.
19     Q    Okay.  How would you describe the cadence
20 of your relationship and interactions with Jen as
21 Wayfarer's publicist over the four years she had
22 been on that account?
23          MS. SHAPIRO:  Objection.
24          THE WITNESS:  Jen is on top of it.  She
25 understands and gets what we're about and how we

Page 77

1  like to operate.  And I trusted her judgment.  And
2  based on that, we built a relationship that was a
3  professional trusting of the path we wanted to take.
4  While I liked Matthew Mitchell, he didn't feel to be
5  a leader to me in the way that Jen is.
6  BY MS. SHAH:
7       Q    Did you feel like you had that close
8  relationship of trust on a professional level with
9  anyone else than Jen at Jonesworks?
10      A    I didn't have distrust with anybody, but
11 Jen was our point.
12      Q    Okay.
13           THE STENOGRAPHIC REPORTER:  Was our what?
14           THE WITNESS:  Point.  Point person.
15 Sorry.
16 BY MS. SHAH:
17      Q    And I think you testified a little bit
18 ago that, like, sure, when you found out Jen was
19 considering leaving, Jonesworks, it was a
20 consideration for you in terms of what would happen
21 to Wayfarer after she left?
22      A    Sure.
23      Q    Can you tell me a little bit more about
24 how you thought about that in your mind?
25           MS. SHAPIRO:  Objection.

CONFIDENTIAL

Page 230

1    A    She just never was.  So other than some
2    of these instances, but...
3    Q    Now, there came a time in late August of
4    2024 where Wayfarer provided notice to Jonesworks
5    that it was terminating Jonesworks; is that right?
6    A    Late August?
7    Q    Uh-huh.
8    A    I probably need to see an email or
9    something so I can confirm the date, but for the
10   moment I can take your word for it.
11   Q    Sure.  Even apart from the date, you
12   recall that there came a point in time when Wayfarer
13   terminated Jonesworks, right?
14   A    Yes.
15   Q    Okay.  Who made that decision?
16   A    Ultimately?
17   Q    Uh-huh.
18   A    Me.
19   Q    Okay.  Why did you make that decision?
20   A    I mean, I think I expressed it before so
21   I will just give you the short version.
22   Q    Please.
23   A    I had come to the conclusion that I had
24   lost faith.  I don't like saying -- I had lost faith
25   in what I believed Stephanie could provide and

1  Jonesworks felt like -- thank you so much -- a place
2  that we've been for some years and, you know,
3  changes happen.  And also, our point person who I
4  trusted with my kids, going back to the babysitter
5  analogy, I just trusted her.  And here she's going
6  somewhere else.  And this happens all the time with
7  agencies and managers.  You know, you have a
8  relationship with -- with Ms. Shah, not the law firm
9  you are at.
10             THE WITNESS:  Thank you.
11             MS. SHAPIRO:  Do you want a break?
12             MS. SHAH:  Yes.  I think the reporter
13  would like a break.  Why don't we go off the record.
14  How long would you like?
15             THE WITNESS:  Was this for me?
16             THE VIDEOGRAPHER:  We are going off the
17  record.  The time is 3:04 p.m.
18          (Recess.)
19          (Recess.)
20             THE VIDEOGRAPHER:  We're back on record.
21  The time is 3:44 p.m.
22  BY MS. SHAH:
23      Q    You're aware that Wayfarer filed
24  counterclaims against Jonesworks and Ms. Jones in
25  this case, correct?

CONFIDENTIAL

Page 348

1            REPORTER'S CERTIFICATE
2            I, ASHLEY SOEVYN, a Certified Shorthand
3    Reporter of the State of California, do hereby
4    certify:
5            That the foregoing proceedings were taken
6    before me at the time and place herein set forth;
7    at which time the witness was put under oath by me;
8            That the testimony of the witness, the
9    questions propounded, and all objections and
10   statements made at the time of the examination were
11   recorded stenographically by me and were thereafter
12   transcribed;
13           That a review of the transcript by the
14   deponent was/ was not requested;
15           That the foregoing is a true and correct
16   transcript of my shorthand notes so taken.
17           I further certify that I am not a relative
18   or employee of any attorney of the parties, nor
19   financially interested in the action.
20           I declare under penalty of perjury under
21   the laws of California that the foregoing is true
22   and correct.  Dated this 10th day of October 2025.
23   *[signature]*
24   _____
     **ASHLEY SOEVYN**
25   CSR No. 12019