# EXHIBIT 19

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                      ---oOo---
 4
 5   BLAKE LIVELY,
 6                Plaintiff,
 7      vs.       CASE NO. 24-CV-10049-LJL (LEAD CASE)
                              25-CV-449 (LJL) (MEMBER CASE)
 8
     WAYFARER STUDIOS LLC, ET AL.,
 9
                  Defendants.
10   _____
     JENNIFER ABEL,
11             Third-party Plaintiff,
       vs.
12   JONESWORKS, LLC,
               Third-party Defendant.
13   _____
     WAYFARER STUDIOS LLC, et al.,
14             Consolidated Plaintiffs,
       vs.
15   BLAKE LIVELY, et al.,
               Consolidated Defendants.
16   _____
17                    **CONFIDENTIAL**
18
19       VIDEO-RECORDED DEPOSITION OF JAMEY HEATH
20               Los Angeles, California
21              Thursday, October 9, 2025
22
23   Stenographically Reported by:  Ashley Soevyn,
24   CALIFORNIA CSR No. 12019
25
```

Page 163

1 whether the conversations referenced only incidents
2 that happened within some ten-day or short period of
3 time --
4     A    Okay.
5     Q    -- do you think that the fact that it
6 kept being brought up over and over and over, at
7 least on June 1st in the November 17-point letter
8 and in the January 2024 meeting, was an indication
9 that, perhaps, at least from Blake's perspective,
10 whatever had happened before was not, in fact,
11 resolved?
12             MS. SHAPIRO:  Objection.
13             THE WITNESS:  Again, I think there wasn't
14 multiple, multiple ones.  June 1st was the first
15 conversation.  There was the first conversation with
16 Blake, right?  Some thoughts had been shared.  We
17 had a conversation on June 1st.  No other
18 conversations about it.  You're referencing the
19 November 9th letter as if that's a conversation.
20 But it was clear.  I'm not trying to hide away from
21 the language.
22             In lieu of an HR complaint, we know that
23 there's a lot of things that happened on set.  That
24 involved a lot.  There was a lot.  We had a lot of
25 strikes.  We had COVID.  We had issues, production,

Page 164

1   that had nothing to do with you and me bumping
2   heads.  But to say it and characterize that as it's
3   coming up again, it was like, here's the protections
4   that I need to make sure that I feel safe, as she
5   put it, moving forward.
6           It wasn't bringing back up the June 1st
7   stuff, the conversation.  It was like, here's what I
8   need moving forward.  Here's some guidelines.  We'd
9   give this to anybody, but it wasn't a conversation
10  about it.  We did not think it was kept being
11  brought up and brought up.  This is, contracts
12  happen all the time of what they need to go on set.
13  Here was one.
14          The January 4th is what I would
15  consider the second conversation, no matter how you
16  want to frame the other.  And that meeting, with a
17  Sony representative, the new Sony producer, myself,
18  Justin, Alex Saks, our other producer, no one felt
19  that this was a -- a nod to then, what do you do
20  next?  She got -- she wanted to express it.  She
21  said, just want to clear the air, after we talked
22  about it, then we talked about production.  See you
23  guys tomorrow.
24          There was no indication that we were
25  supposed to take another step.  We thought the step

1  was done.  We talked about it.  She got it off
2  her -- even though we disagreed.  I still contend to
3  this day that most of what she is saying, either all
4  of it -- either it's twisted or fabricated.
5          She says I talked about my genitals.  I
6  still haven't had -- heard anybody ask me.  She said
7  I had a porn addiction in her complaint.  No one has
8  asked me where that came from as it pertains to me.
9  But we talked about it.
10         And our belief -- I don't know if lawyers
11 like it if I say this or not, whether we were right
12 or wrong, our belief at the time was that it was
13 handled, it was discussed, and then we moved on.
14 I'm sorry.
15 BY MS. SHAH:
16      Q   Don't be sorry.
17         THE WITNESS:  Can we take a break?
18         MS. SHAH:  Yes, absolutely.  Why don't we
19 take the lunch break?
20         MS. SHAPIRO:  Forty-five minutes?
21         MS. SHAH:  We can go off the record.
22 Forty minutes?
23         MS. SHAPIRO:  Forty minutes is fine.
24         THE VIDEOGRAPHER:  We are going off the
25 record.  The time is 12:50 p.m.

CONFIDENTIAL

Page 348

```
 1                REPORTER'S CERTIFICATE
 2           I, ASHLEY SOEVYN, a Certified Shorthand
 3   Reporter of the State of California, do hereby
 4   certify:
 5           That the foregoing proceedings were taken
 6   before me at the time and place herein set forth;
 7   at which time the witness was put under oath by me;
 8           That the testimony of the witness, the
 9   questions propounded, and all objections and
10   statements made at the time of the examination were
11   recorded stenographically by me and were thereafter
12   transcribed;
13           That a review of the transcript by the
14   deponent was/ was not requested;
15           That the foregoing is a true and correct
16   transcript of my shorthand notes so taken.
17           I further certify that I am not a relative
18   or employee of any attorney of the parties, nor
19   financially interested in the action.
20           I declare under penalty of perjury under
21   the laws of California that the foregoing is true
22   and correct.  Dated this 10th day of October 2025.
23   [signature]
24   _____
     ASHLEY SOEVYN
25   CSR No. 12019
```