# EXHIBIT 1

Filed Under Seal

Page 1

```
 1
 2    ** C O N F I D E N T I A L **
 3    * CONTAINS ATTORNEYS' EYES ONLY MATERIAL *
 4    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 5    Case No. 1:24-CV-10049-LJL
      (Consolidated with 1:25-cv-00449-LJL)
 6    ------------------------------------x
      BLAKE LIVELY,
 7               Plaintiff,
 8          - against -
 9    WAYFARER STUDIOS LLC, a Delaware
      Limited Liability Company, JUSTIN
10    BALDONI, an individual, JAMEY HEATH, an
      individual, STEVE SAROWITZ, an individual,
11    IT ENDS WITH US MOVIE LLC, a California
      Limited Liability Company, MELISSA
12    NATHAN, an individual, THE AGENCY
      GROUP PR LLC, a Delaware Limited Liability
13    Company, JENNIFER ABEL, an individual,
      JED WALLACE, an individual, and STREET
14    RELATIONS INC., a California Corporation,
                  Defendants.
15    ------------------------------------x
                   (Caption continued)
16                 September 5, 2025
                   9:10 a.m.
17
18          Videotaped Deposition of KATHERINE
19    CASE, taken by Plaintiff, pursuant to
20    Subpoena, held at the offices of Willkie
21    Farr & Gallagher LLP, 787 Seventh Avenue,
22    New York, New York, before Todd DeSimone, a
23    Registered Professional Reporter and Notary
24    Public of the State of New York.
25
```

```
                                          Page 75
 1          K. CASE - CONFIDENTIAL
 2      A.     At times.
 3      Q.     When would TAG individuals use
 4  Signal in lieu of iMessage?
 5      A.     If we would -- if we would
 6  speak with Jed, it was primarily over
 7  Signal.
 8      Q.     And why was that?
 9      A.     I'm not sure.
10      Q.     Was that at Jed's request?
11      A.     No.
12      Q.     Who suggested that you use
13  Signal?
14      A.     It was just the form of
15  communication that was used.
16      Q.     Do you recall the first time
17  you communicated with Jed on Signal?
18      A.     Not by date specifically, no.
19      Q.     Did he text you on Signal?
20      A.     Not individually, but as it
21  related to communications.
22      Q.     Did you have a Signal account
23  prior to working at TAG?
24      A.     I believe so, yes.
25      Q.     And did you communicate on it
```

```
                                              Page 163
 1           K. CASE - CONFIDENTIAL
 2   ██  █    ████████████████████
 3   █  ██████████████████
 4   █         ███████  █████████████
 5   █     █   ████████████████
 6   █   ███████████████████████████  █
 7   █   ██████████████████████████
 8   █           ████████  ██████████████
 9   █        █████  █████████████████
10       Q.     Have you ever met Mr. Wallace
11   in person?
12       A.     No.
13       Q.     And you testified earlier that
14   you had communicated directly with
15   Mr. Wallace, correct?
16              MS. EMERY:  Objection.
17       A.     Across several instances, yes.
18       Q.     What were your modes of
19   communication with Mr. Wallace?
20       A.     Primarily Signal.
21       Q.     What other avenues of
22   communication?
23       A.     Limited e-mail.
24       Q.     Any others?
25       A.     No.
```