## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BLAKE LIVELY,

                    Plaintiff,

v.

WAYFARER STUDIOS LLC, et al.,

                    Defendants.

No. 24-cv-10049 (LJL)

## PLAINTIFF BLAKE LIVELY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Meryl C. Governski
Dunn Isaacson Rhee LLP
401 9th Street NW
Washington, DC 20004
(202) 240-2927
mgovernski@dirllp.com

Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com

Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com

Aaron E. Nathan
Michaela A. Connolly
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com
mconnolly@willkie.com

*Attorneys for Blake Lively*

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................3

    I.      The Court Should Conform the SAC to the Evidence. ...............................3

    II.     Ms. Lively Exhausted Her Administrative Remedies As To All Defendants. .............5

    III.   Defendants' Extraterritoriality Arguments Fail. ..........................................7

         A.     The California choice-of-law provision in the ALA expressly applies, and Defendants are estopped from arguing otherwise.....................................7

         B.     Ms. Lively's hostile work environment and retaliation claims do not implicate extraterritoriality concerns because they have a sufficient nexus to California. ...................................................................................13

    IV.   Wayfarer is Liable for Harassment and Retaliation as a Joint Employer. ...................18

    V.     Ms. Lively's Defamation and False Light Claims Must Proceed to Trial. .................21

         A.     Defendants' Opinion Defense Is Meritless. ...........................................21

         B.     The Litigation and Fair Report Privileges Do Not Apply.....................23

    VI.   The SAC States A Claim For Conspiracy. ................................................25

CONCLUSION.................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Abbott Lab'ys v. Frank*,
   2018 WL 10529808 (E.D.N.Y. July 3, 2018) ..........................................................................5

*ADYB Engineered For Life, Inc. v. Edan Admin. Servs. Ltd.*,
   2022 WL 912127 (S.D.N.Y. Mar. 28, 2022) .........................................................................4

*Amto, LLC v. Bedford Asset Mgmt., LLC*,
   168 F. Supp. 3d 556 (S.D.N.Y. 2016).....................................................................................7

*Baiul v. NBC Sports*,
   2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016)........................................................................12

*Bourdeau v. Housing Works, Inc.*,
   2001 WL 943316 (S.D.N.Y.2001)..........................................................................................19

*Cabrera v. Google LLC*,
   2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) ......................................................................11

*Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.*,
   622 AF. App'x 73, 75 (2d Cir. 2015) ...................................................................................12

*Campbell v. Arco Marine, Inc.*,
   42 Cal. App. 4th 1850 (1996) ....................................................................................9, 11, 17

*Cargill, Inc. v. Charles Kowsky Res., Inc.*,
   949 F.2d 51 (2d Cir. 1991)....................................................................................................12

*Carney v. St. John*,
   2025 WL 2961622 (S.D.N.Y. Oct. 20, 2025) .......................................................................22

*Carroll v. Trump*,
   664 F. Supp. 3d 550 (S.D.N.Y. 2023)..............................................................................23, 25

*Carroll v. Trump*,
   680 F. Supp. 3d 302 (S.D.N.Y. 2023)....................................................................................21

*Citizens of Humanity, LLC v. Applied Underwriters, Inc.*,
   17 Cal. App. 5th 806 (2017) ..................................................................................................10

*Clark v. Superior Ct.*,
   62 Cal. App. 5th 289 (2021) ....................................................................................................6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Coleman v. Grand*,
 158 F.4th 132, 139 (2d Cir. 2025) ...........................................................................21

*Conti v. Doe*,
 2019 WL 952281 (S.D.N.Y. Feb. 27, 2019)...........................................................21

*Cruz v. Coach Stores, Inc.*,
 202 F.3d 560 (2d Cir. 2000)........................................................................................4

*Davis v. Boeheim*,
 24 N.Y.3d 262 (2014) ................................................................................................21

*Delanuez v. City of Yonkers*,
 2022 WL 16540682 (S.D.N.Y. Oct. 28, 2022) ...........................................................4

*Deravin v. Kerik*,
 335 F.3d 195 (2d Cir. 2003)........................................................................................6

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
 19 Cal. 4th 1036 (1999) ..............................................................................................9

*Diamond v. Calaway*,
 2018 WL 4906256 (S.D.N.Y. Oct. 9, 2018) ...............................................................7

*Digital Camera Int'l Ltd. v. Antebi*,
 2014 WL 940723 (E.D.N.Y. Mar. 11, 2014) ...........................................................13

*Dodd-Owens v. Kyphon, Inc.*,
 2007 WL 420191 (N.D. Cal. Feb. 5, 2007) ..............................................................18

*Doe v. Maxim, Inc.*,
 2023 WL 11979557 (C.D. Cal. May 19, 2023) ........................................................14

*eShares, Inc. v. Talton*,
 2025 WL 936921 (S.D.N.Y. Mar. 27, 2025) ......................................................13, 17

*Felder v. United States Tennis Ass'n*,
 27 F.4th 834 (2d Cir. 2022) ......................................................................................19

*Garcia v. ROC Nation LLC*,
 No. 1:24-CV-7587-GHW, 2025 WL 1865965 (S.D.N.Y. July 2, 2025)............................9, 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gardner-Alfred v. Fed. Rsrv. Bank of New York*,
    651 F. Supp. 3d 695 (S.D.N.Y. 2023)..................................................................6

*Glob. Network Commc'ns, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006)...........................................................................5

*Gomes v. Mendocino City Cmty. Servs. Dist.*,
    35 Cal. App. 5th 249 (2019) .........................................................................5

*Gonsalves v. Infosys Techs., Ltd.*,
    2010 WL 1854146 (N.D. Cal. May 6, 2010) ..................................................9, 18

*Grajales v. Puerto Rico Ports Auth.*,
    682 F.3d 40 (1st Cir. 2012) ...........................................................................4

*Gravquick A/S v. Trimble Nav. Int'l Ltd.*,
    323 F.3d 1219 (9th Cir. 2003) ...................................................................10, 11

*Great Am. Ins. Co. v. Gemstone Prop. Mgmt. LLC*,
    2025 WL 2196886 (S.D.N.Y. Aug. 1, 2025) ....................................................5

*Grootonk v. Labrie Env't Grp., LLC*,
    2023 WL 5420299 (C.D. Cal. July 20, 2023) ...................................................8

*Hardaway v. Hartford Pub. Works Dep't*,
    879 F.3d 486 (2d Cir. 2018)..........................................................................5

*Hill v. Workday, Inc.*,
    2024 WL 3012802 (N.D. Cal. June 14, 2024) ..................................................9, 18

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ...........................................................11

*Kearney v. Salomon Smith Barney Inc.*,
    39 Cal. 4th 95 (2006) ..................................................................................13

*Kim v. Konad USA Distribution, Inc.*,
    226 Cal. App. 4th 1336 (2014) ......................................................................6

*Kisman v. United Parcel Serv.*,
    2023 WL 11822264 (C.D. Cal. Nov. 14, 2023)..................................................13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996)..................................................................................8

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)................................................................................3

*Leibman v. Prupes*,
    2015 WL 3823954 (C.D. Cal. June 18, 2015) ...............................................12, 13

*Linenbroker v. ITT Educ. Servs. Inc.*,
    2014 WL 4795169 (E.D. Cal. Sept. 24, 2014)........................................... passim

*Lipcon v. Underwriters at Lloyd's London*,
    148 F.3d 1285 (11th Cir. 1998) ...........................................................................8

*Lively v. Wayfarer Studios LLC*,
    786 F. Supp. 3d 695 (S.D.N.Y. 2025)................................................................23

*1-800-Got Junk? LLC v. Superior Ct.*,
    189 Cal. App. 4th 500 (2010) ............................................................................10

*LoanCare, LLC v. Dimont & Assocs., LLC*,
    2025 WL 951585 (S.D.N.Y. Mar. 28, 2025) .......................................................7

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
    2025 WL 2781280 (S.D.N.Y. Sept. 30, 2025).....................................................4

*Magnuson v. Newman*,
    2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013)...................................................10

*Maldonado v. Apple, Inc*,
    2021 WL 1947512 (N.D. Cal. May 14, 2021) ...................................................11

*Malon Res. Corp. v. Midland Bank*,
    1997 WL 403450 (S.D.N.Y. July 17, 1997) ........................................................8

*McNamee v. Clemens*,
    762 F. Supp. 2d 584 (E.D.N.Y. 2011) ...............................................................22

*Medina v. Equilon Enterprises, LLC*,
    68 Cal. App. 5th 1049 (2021) ...........................................................................20

*Monroe Staffing Servs., LLC v. Whitaker*,
    2023 WL 4285292 (S.D.N.Y. June 9, 2023) .......................................................8

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

*Morgan v. Regents of University of California*,
    88 Cal. App. 4th 52 (2000) ...........................................................................................6

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ....................................................................................................8

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ..............................................................9, 10, 11

*Olinick v. BMG Entertainment*,
    138 Cal. App. 4th 1286 (2006) ...............................................................................8, 10

*P.T. Adimitra Rayapratama v. Bankers Tr. Co.*,
    1995 WL 495634 (S.D.N.Y. Aug. 21, 1995) ...............................................................9

*People v. Ashford Univ., LLC*,
    100 Cal. App. 5th 485 (2024) .....................................................................................13

*Roger-Vasselin v. Marriott Int'l, Inc.*,
    2006 WL 2038291 (N.D. Cal. July 19, 2006)............................................................13

*Rulenz v. Ford Motor Co.*,
    2013 WL 2181241 (S.D. Cal. May 20, 2013) .........................................................9, 18

*Russo v. APL Marine Servs., Ltd.*,
    135 F. Supp. 3d 1089 (C.D. Cal. 2015),
    *aff'd*, 694 F. App'x 585 (9th Cir. 2017)................................................................9, 17

*Schlesinger v. Superior Ct.*,
    2010 WL 3398844 (Cal. Ct. App. Aug. 31, 2010)......................................................11

*Sims v. Worldpac Inc.*,
    2013 WL 663277 (N.D. Cal. Feb. 22, 2013) ..............................................................12

*Stovall v. Align Tech., Inc.*,
    2020 WL 264402 (N.D. Cal. Jan. 17, 2020) ..............................................12, 13, 17

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ................................................................................................9

*Tetrault v. Cap. Grp. Companies Glob.*,
    2024 WL 3468903 (C.D. Cal. Jan. 17, 2024) .......................................................12, 13

*Thompson v. Nat'l R.R. Passenger Corp.*,
    2008 WL 11398932 (N.D. Cal. Dec. 17, 2008) ....................................................13, 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Townsquare Media, Inc. v. Regency Furniture, Inc.*,
2022 WL 4538954 (S.D.N.Y. Sept. 28, 2022).............................................................4

*Trujillo v. Skaled Consulting, LLC*,
2021 WL 4150380 (S.D. Cal. Sept. 13, 2021).............................................................13

*Turtur v. Rothschild Registry Int'l, Inc.*,
26 F.3d 304 (2d Cir. 1994)..............................................................................................9

*U.S. EEOC v. Global Horizons, Inc.*,
915 F.3d 631 (9th Cir. 2019) .........................................................................................20

*Vernon v. State of California*,
116 Cal. App. 4th 114 (2004) .........................................................................................19

*VTX Commc'ns, LLC v. AT&T Inc.*,
2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) ...............................................................8

*Ward v. United Airlines, Inc.*,
9 Cal. 5th 732 (2020) .......................................................................................................9

*Weingard v. Telepathy, Inc.*,
2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005).................................................................7

*Wexler v. Allegion (UK) Ltd.*,
374 F. Supp. 3d 302 (S.D.N.Y. 2019)...........................................................................23

*Williams v. Deutsche Bank Sec., Inc.*,
2005 WL 1414435 (S.D.N.Y. June 13, 2005) .............................................................8

*Wilson v. Wavestream Corp.*,
2024 WL 3914475 (C.D. Cal. May 13, 2024) .........................................................9, 10

*Yuille v. Uphold HQ Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023).........................................................................8, 9

*Zipes v. Trans World Airlines, Inc.*,
455 U.S. 385 (1982)..........................................................................................................5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**STATUTES**

Cal. Civ. Code § 51.9..................................................................7, 11, 13, 17

Cal. Labor Code § 1102.5.................................................................. passim

Gov't Code § 12940....................................................................................11

Gov't Code § 12965(b)..................................................................................2

**REGULATIONS**

Cal. Code of Reg. § 10022(f)...............................................................2, 3, 6

**RULES**

Fed. R. Civ. P. 11.......................................................................................24

Fed. R. Civ. P. 12(c)....................................................................................3

Fed. R. Civ. P. 12(d)....................................................................................5

Fed. R. Civ. P. 15(b)(2)................................................................................3

Fed. R. Civ. P. 56.1......................................................................................2

**<u>INTRODUCTION</u>**

Defendants' Motion for Judgment on the Pleadings ("MJOP") should be denied because it is an ill-conceived, ill-timed, and legally baseless effort to deny Blake Lively her day in court.

*First,* Defendants' argument against the extraterritorial application of California laws cannot be squared with the unambiguous choice of law provision in the Actor Loan Out Agreement, which applies to **all** disputes between the parties as if the contract had been **performed entirely in California.** The two (and only two) cases Defendants cite in support of ignoring their own choice of law provision involved much narrower provisions, and in any event are irreconcilable with well-established California precedent. Moreover, Defendants should be estopped from advancing this argument because they have repeatedly argued for the application of California law in this litigation—and responded to three different pleadings without challenging it—only to raise extraterritoriality once their own claims had been dismissed (on other grounds). Finally, even setting aside the choice of law provision, there is a plethora of evidence of California ties to every aspect of the conduct giving rise to the California claims, as set forth here and in the evidence Ms. Lively submits in support of her opposition to the Motion for Summary Judgment ("MSJ"), filed concurrently and incorporated by reference herein.

*Second*, although Defendants' exhaustion argument is waived, Ms. Lively fully exhausted her administrative remedies against each of the Defendants, including IEWUM, which she clearly alleged in the SAC, and is further evidenced in the MSJ. Defendants object to Ms. Lively's filing of an *amended* CRD complaint against IEWUM before she filed the instant lawsuit, but the law is clear that the amendment exhausted her administrative remedy in full.

*Third*, as for the retaliation claims under FEHA and Title VII, Ms. Lively more than adequately pled an adverse employment action and a causal link. Defendants made this same argument in their MSJ, however, and given the substantial record on retaliation that has been

developed in discovery, Ms. Lively's arguments on retaliation are set forth in her opposition to the MSJ, and incorporated by reference herein.

*Fourth*, Defendants' arguments against the defamation and false light claims, which Defendants also moved against in their MSJ, are without merit. The requisite statements are not opinion, and neither the litigation nor fair report privilege apply. And *finally*, the conspiracy claim pleads all elements of conspiracy, as set forth in the SAC, and additional facts supporting conspiracy are included in Ms. Lively's opposition to the MSJ, which are incorporated by reference herein. For all of the foregoing reasons, the MJOP should be denied in its entirety.

## **BACKGROUND**

On December 20, 2024, Ms. Lively filed a complaint with the California Civil Rights Department ("CRD," the "CRD Complaint"). *See* ECF Nos. 107-3–107-6.8. That complaint asserted ten claims under California law, including sexual harassment, retaliation, failure to prevent harassment and retaliation, aiding and abetting the same, as well as others. *See id.* That same day, the CRD issued an immediate right-to-sue letter pursuant to Government Code § 12965(b) and closed Ms. Lively's administrative complaint. Ex. 273.[1] Ten days later, on December 30, 2024, Ms. Lively timely filed an amended complaint with the CRD, adding IEWUM as a respondent. ¶ 789. The CRD issued a notice of amended complaint, which pursuant to Cal. Code Regs., tit. 2, § 10022, stated: "The amended complaint is deemed to have the same filing date of the original complaint . . . The original Notice of Case Closure and Right to Sue issued in this case remains the only such notice provided by the CRD." Ex. 274. Ms. Lively thereafter

---

[1] Citations to "¶ __" refer to Ms. Lively's responsive Rule 56.1 statement filed in opposition to summary judgment ("MSJ Opp."). Citations to "Ex. __" refer to the exhibits to the Gottlieb Declaration filed with the MSJ Opp.

received corresponding right-to-sue notices from the EEOC as to both Wayfarer and IEWUM.[2] Exs. 275, 276.[3]

On December 31, 2024, Ms. Lively commenced this action. *See* Dkt. 1. That same day, Defendants (and others) filed a complaint in Los Angeles Superior Court asserting California claims against The New York Times based on their reporting about Ms. Lively's CRD Complaint. On January 16 Defendants filed a retaliatory lawsuit against Ms. Lively in this Court, asserting defamation and related claims under California law. (Case No. 1:25-cv-00449-LJL, Dkt. 1). Two weeks later, they filed an amended complaint (Dkt. 50, or "FAC"), again asserting claims against Ms. Lively under California law. (FAC at 211–22.). Ms. Lively moved to dismiss on the grounds that, among other things, the FAC was based on statements protected under California law by the fair report privilege, the litigation privilege, and Section 47.1. (Dkt. 145). Defendants "agree[d] that California law applies to their claims." (Dkt. 162, at 3)

## ARGUMENT

### I.     The Court Should Conform the SAC to the Evidence.

As detailed further below, Defendants' attacks on the legal sufficiency of the pleadings are meritless. But they are also pointless, because even if Defendants had identified any deficiency in the SAC's allegations, the Court should conform the pleadings to the evidence in the summary judgment record and evaluate Defendants' arguments on that basis. Measured against the evidence in the summary judgment record, Defendants' arguments all fail.

Federal Rule of Civil Procedure 15(b)(2) permits amendment of the pleadings "at any time" to "conform them to the evidence." Fed. R. Civ. P. 15(b)(2). That rule applies "at the summary

---

[2] Ms. Lively timely served the Wayfarer Parties with both her initial and amended CRD complaints and the right-to-sue notices. *See* ¶¶ 785, 791. Indeed, the Wayfarer Parties admit they received such service. (Dkt. Nos. 632-639.)

[3] Because the SAC alleges that Ms. Lively filed an administrative complaint with the CRD and obtained right-to-sue notices, those documents are both referenced in and integral to the pleading, and therefore properly considered by the Court on a Rule 12(c) motion. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

judgment stage," even to "consider claims not expressly raised by the complaint." *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2025 WL 2781280, at *15 (S.D.N.Y. Sept. 30, 2025); *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568-70 (2d Cir. 2000); *Townsquare Media, Inc. v. Regency Furniture, Inc.*, 2022 WL 4538954, at *24 (S.D.N.Y. Sept. 28, 2022).

In considering a request to conform the pleadings, the key inquiry is whether allowing the amendment would prejudice the opposing party, *Local 3621*, 2025 WL 2781280, at *15, and specifically whether allowing a party to conform will "have disadvantaged its opponent in presenting its case." *Cruz*, 202 F.3d at 569 (cleaned up). Here, conforming the pleadings to the summary judgment evidence does not require consideration of any new claim or new theory— only *facts* that were unavailable to Ms. Lively without discovery.[4] Defendants may prefer not to deal with those facts, but they cannot claim any cognizable prejudice from the Court resolving this motion on the full summary judgment record. Defendants have long been on notice of Ms. Lively's claims, and the evidence that Ms. Lively now seeks to rely on emerged from discovery on those very claims. At this stage of proceedings, "after substantial pretrial discovery has taken place," "[i]gnoring the entire panoply of facts developed during discovery makes little sense." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 45–46 (1st Cir. 2012); *accord ADYB Engineered For Life, Inc. v. Edan Admin. Servs. Ltd.*, 2022 WL 912127, at *9 (S.D.N.Y. Mar. 28, 2022). The Court should begin by conforming the pleadings to the evidence in the summary judgment record to and proceed to consider the MJP on that record.[5]

---

[4] Even if any of the evidence Ms. Lively seeks to rely on could be characterized as supporting a "new claim," such a claim would still "arise[] from a similar nucleus of operative facts and . . . similar legal theories as the claims alleged," and would nevertheless satisfy the test for a conforming amendment. *Delanuez v. City of Yonkers*, 2022 WL 16540682, at *7 (S.D.N.Y. Oct. 28, 2022).

[5] The Court should also consider Ms. Lively's summary judgment evidence in connection with this motion because Defendants have incorporated each of the instant motion's arguments into their motion for summary judgment, MSJ at 18-19, and have relied on significant material outside of the pleadings to support them in that motion. In doing so,

## II.    Ms. Lively Exhausted Her Administrative Remedies As To All Defendants.

Defendants assert that the SAC's Title VII and FEHA claims are insufficiently pleaded based on a failure to exhaust administrative remedies. That argument is meritless. Failure to exhaust is an affirmative defense that a *defendant* must plead and prove. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (Title VII); *Linenbroker v. ITT Educ. Servs. Inc.*, 2014 WL 4795169, at *6 (E.D. Cal. Sept. 24, 2014) (FEHA). Despite answering Ms. Lively's original, First Amended, and Second Amended Complaints, only Ms. Abel ever asserted the defense (and even then, only in response to the SAC). *See* Dkt. Nos. 632–639. Even IEWUM, which has raised an exhaustion argument particular to itself, did not assert the defense in its Answer. Dkt. 635. In other words, Defendants have moved for judgment on the pleadings based on an affirmative defense they have not pleaded. And, having litigated this case for nearly a year without raising exhaustion, Defendants cannot now invoke it as a technical escape hatch: the failure to assert this affirmative defense waives their ability to invoke it. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (recognizing that failure to exhaust administrative remedy is waived if not asserted under Title VII); *Gomes v. Mendocino City Cmty. Servs. Dist.*, 35 Cal. App. 5th 249, 256 n.11 (2019) (same under FEHA). If anyone is entitled to judgment on the pleadings as to a putative exhaustion defense, it is Ms. Lively, not Defendants.

---

Defendants have effectively conceded that these arguments must be considered on the full record, and conversion of this motion to one for summary judgment would be appropriate under Rule 12(d). *See, e.g., Great Am. Ins. Co. v. Gemstone Prop. Mgmt. LLC*, 2025 WL 2196886, at *8 (S.D.N.Y. Aug. 1, 2025) (conversion is required where a Rule 12(c) motion "considers material outside of the pleadings that is not attached to the complaint, incorporated by reference, or integral to the complaint") (cleaned up); *Abbott Lab'ys v. Frank*, 2018 WL 10529808, at *1 (E.D.N.Y. July 3, 2018) (converting motion to dismiss where discovery was complete, and parties submitted evidence for the court to consider that went beyond four corners of complaint); *see also Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006) (Rule 12(d) exists to ensure that the Court "direct[s] a pretrial motion to the vehicle most appropriate for its resolution, ensuring that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular stage of the litigation").

In any event, Ms. Lively more than satisfied her administrative remedies under both FEHA and Title VII. "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [CRD] and must obtain from the [CRD] a notice of right to sue in order to be entitled to file a civil action." *Morgan v. Regents of University of California*, 88 Cal. App. 4th 52, 63 (2000); *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (same under Title VII). Ms. Lively's CRD Complaint named Wayfarer, Baldoni, Heath, Sarowitz, Nathan, TAG, Abel (and her company RWA Communications LLC), Jed Wallace, and Street Relations Inc. on December 20, 2024, and was deemed simultaneously filed with the EEOC under the agencies' work-sharing agreement. *Clark v. Superior Ct.*, 62 Cal. App. 5th 289, 308 n.21 (2021) (complaints "filed with either the [EEOC] or the [CRD] are deemed 'constructively filed' with the other"). Ms. Lively thereafter received an immediate right-to-sue notice, and commenced this action. *Supra*, at 2–3. When Ms. Lively amended her CRD complaint on December 30, 2024 to specially identify IEWUM as a respondent, *supra* at 2, her original right-to-sue notice remained in effect pursuant to California Code of Regulations section 10022(f). Cal. Code Regs., tit. 2, § 10022(f); *see* ¶ 789. The original right-to-sue therefore related forward to Ms. Lively's amended CRD complaint.[6] And even if Ms. Lively had only exhausted her remedies after filing her federal complaint,[7] it is well established in this District that such post-filing exhaustion is sufficient. *See, e.g.*, *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 651 F. Supp. 3d 695, 702 n.1 (S.D.N.Y. 2023).

---

[6] Defendants' description of FEHA's exhaustion requirement as a "jurisdictional prerequisite" is misleading because FEHA exhaustion does *not* implicate a Court's subject matter jurisdiction and *can* be forfeited through a party's failure to raise it. *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1348 (2014).
[7] Ms. Lively obtained right-to-sue notices from the EEOC on January 21, 2025. ¶ 790.

III.    **Defendants' Extraterritoriality Arguments Fail.**

    A. **The California choice-of-law provision in the ALA expressly applies, and Defendants are estopped from arguing otherwise.**

Defendants contend the Court cannot apply California's Fair Employment and Housing Act ("FEHA"), Labor Code § 1102.5, or Civil Code § 51.9 (the "California Statutes") because doing so would amount to an impermissible extraterritorial application. This argument misses the mark. The fundamental issue before the Court is not the territorial reach of the California Statutes but the parties' contractual choice of law. And on that point, the parties' intent could not be clearer. The parties expressly agreed that California's substantive law would govern all disputes arising out of or relating to Ms. Lively's services under the Actor Loan-Out Agreement ("ALA").

While the ALA is by and between IEWUM and Ms. Lively's loanout entity, Wayfarer, Mr. Baldoni, Mr. Heath, and Mr. Sarowitz are similarly bound by its choice-of-law provision as "closely related" individuals and entities—as are TAG, Nathan, and Abel. "A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Weingard v. Telepathy, Inc.*, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (extending "closely related" doctrine to extra contractual tort claims); *Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 569 (S.D.N.Y. 2016) (applying "closely-related doctrine" "where the signatory's claims against the non-signatory defendant are substantially identical to its claims against a signatory defendant"); *see also Diamond v. Calaway*, 2018 WL 4906256, at *5 (S.D.N.Y. Oct. 9, 2018) (binding non-signatory defendant where she was "intimately involved" in scheme to defraud plaintiff). Although often discussed in the context of forum selection clauses, the same analysis has been directly applied to choice of law provisions. *See LoanCare, LLC v. Dimont & Assocs., LLC*, 2025 WL 951585, at *12 (S.D.N.Y. Mar. 28, 2025) (applying the "closely related" doctrine to bind a non-

signatory to both a forum-selection clause and a choice of law provision); *VTX Commc'ns, LLC v. AT&T Inc.*, 2020 WL 4465968, at *5 (S.D. Tex. Aug. 4, 2020) (same); *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (same).

In particular, Section 15.1 of the Standard Terms and Conditions, attached as Exhibit A to the ALA, provides that "the internal substantive laws . . . of the State of California . . . **applicable to contracts made and performed entirely in California**" shall govern the agreement's validity, interpretation, performance, and "all other causes of action (whether sounding in contract or in tort) arising out of or relating to this Agreement (or Lender's engagement and/or Artist's services hereunder) . . . or otherwise relating to the Picture." Dkt. 811-1 at 26 § 15.1 (emphasis added). A "choice of law provision expressly stating that controversies 'arising out of or relating to' the contract [is] sufficiently broad to include tort claims related to the contract," *Williams v. Deutsche Bank Sec., Inc.*, 2005 WL 1414435, at *4 (S.D.N.Y. June 13, 2005); *see Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 357 n.18 (S.D.N.Y. 2023).[8] Here, the relevant language includes not only those words but an express statement that California law will apply to causes of action "sounding . . . in tort," language that extends to both common-law and statutory claims. *Grootonk v. Labrie Env't Grp., LLC*, 2023 WL 5420299, at *7 (C.D. Cal. July 20, 2023) (FEHA discrimination "sounds in tort"). Moreover, the "arising out of or relating to" language is broad enough to encompass statutory claims as well. *See Monroe Staffing Servs., LLC v. Whitaker*, 2023 WL 4285292, at *13 (S.D.N.Y. June 9, 2023)*; Malon Res. Corp. v. Midland Bank*, 1997 WL 403450,

---

[8] Although the ALA's choice of law provision requires that the ALA be construed according to California law, New York law governs the scope of the choice-of-law provision itself. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). In any event, California law on the scope of choice of law provisions is also in accord. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 468 (1992) (applying Hong Kong law to statutory and tort claims arising from the parties' agreement); *Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1299 (2006) (holding that a choice-of-law clause covering "any dispute arising out of or relating to" the employment relationship encompassed FEHA claims).

at *3 (S.D.N.Y. July 17, 1997); *P.T. Adimitra Rayapratama v. Bankers Tr. Co.*, 1995 WL 495634, at *3 (S.D.N.Y. Aug. 21, 1995).[9]

Despite acknowledging the ALA's California choice-of-law clause, Defendants attempt to sidestep it by invoking a general presumption against the extraterritorial application of California statutes. Their argument rests entirely on two non-binding federal district court decisions—*Wilson v. Wavestream Corp.*, 2024 WL 3914475 (C.D. Cal. May 13, 2024) and *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989 (N.D. Cal. 2014)—which suggest that a California choice-of-law provision incorporates California's implied territorial limits by default.[10]

These cases are unpersuasive for several reasons. First, the choice-of-law provision at issue here is not one that "presumably incorporates *all* of California law—including California's presumption against extraterritorial application of its law," *O'Connor*, 58 F. Supp. 3d at 1005, because the choice-of-law provision expressly selects California law that applies to "contracts made and performed ***entirely in California***," mooting any question of how the law would apply to a wholly extraterritorial transaction. Dkt. 811-1 at 26 § 15.1 This choice-of-law provision instead expresses the parties' intent to "exclude the incorporation of California law's presumption against extraterritoriality." *O'Connor*, 58 F. Supp. 3d at 993–994, 1005, *Wilson*, 2024 WL 3914475, at *1.

Second, and in any event, the California Courts of Appeal has never instructed that a choice-of-law clause implicitly imports a presumption against extraterritorial application. Rather,

---

[9] These cases address the question arguably left unanswered in *Yuille*, namely whether a choice of law provision worded as *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304 (2d Cir. 1994), would cover statutory claims as well as common-law tort claims. *Yuille*, 686 F. Supp. 3d at 357 n.18.

[10] None of the other cases cited by the Wayfarer Parties involved choice-of-law provisions. *See Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850 (1996); *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036 (1999); *Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 1854146 (N.D. Cal. May 6, 2010); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011); *Rulenz v. Ford Motor Co.*, 2013 WL 2181241 (S.D. Cal. May 20, 2013); *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017); *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020); *Hill v. Workday, Inc.*, 2024 WL 3012802 (N.D. Cal. June 14, 2024); *Garcia v. ROC Nation LLC*, 2025 WL 1865965 (S.D.N.Y. July 2, 2025).

California appellate courts have found that extraterritoriality concerns are irrelevant once parties have contractually agreed to be bound by a state's substantive law. *See*, *e.g.*, *1-800-Got Junk? LLC v. Superior Ct.*, 189 Cal. App. 4th 500, 518–519 (2010) (finding that application of Washington statute pursuant to choice of law clause would afford plaintiff "greater protection" and rejecting defendant's extraterritoriality argument as "***an irrelevancy***" because "[i]rrespective of whether [a Washington statute] contains territorial restrictions," the parties were "free to agree" to apply Washington's substantive law) (emphasis added); *see also Citizens of Humanity, LLC v. Applied Underwriters, Inc*., 17 Cal. App. 5th 806, 821 (2017) (extraterritorial-regulation concerns "inapposite" where statute applies "because the parties contractually agreed to its application"). *Olinick* is illustrative. There, a California employee brought FEHA claims against his New York employer, yet the Court of Appeal enforced a New York choice-of-law provision and required the employee to bring his discrimination claims under New York law—even though New York, like California, presumes its statutes do not apply extraterritorially.[11] *Olinick*, 138 Cal. App. 4th at 1297–1300. The same reasoning applies here.

Third, *O'Connor* and *Wilson* relied on a misapplication of the Ninth Circuit's decision in *Gravquick A/S v. Trimble Nav. Int'l Ltd*., 323 F.3d 1219 (9th Cir. 2003). In *Gravquick*, the Ninth Circuit held, consistent with California law, that "[h]onoring [a] choice of law does not give extraterritorial application to [a] statute, even if the contract was performed partially outside of California, so long as the contract itself was properly governed by California law." *Id*. at 1222. The Ninth Circuit further explained that where a statute "contains no express geographical limitations as to its application," courts may apply it to a contract governed by that state's law. *Id*. at 1223 (applying California statute with no explicit geographic limitation to out-of-state dealers

---

[11] *Magnuson v. Newman*, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013) (New York presumption against extraterritorial application of state statutes).

pursuant to choice-of-law provision in dealers' agreements). *O'Connor* turned *Gravquick*'s holding on its head, finding that the Ninth's Circuit's specific carveout for statutes with "express geographic limitations" also encompassed statutes subject only to "implicit" geographic limitations based on the general presumption against extraterritorial application. *O'Connor*, 58 F. Supp. 3d at 1004. That is contrary to the clear language of *Gravquick*, and California Court of Appeal decisions considering *Gravquick* have reached the opposite conclusion. *See Schlesinger v. Superior Ct.*, 2010 WL 3398844, at *6–8 (Cal. Ct. App. Aug. 31, 2010) (holding that out-of-state customers could bring UCL claims pursuant to parties' California choice-of-law clause and distinguishing cases relied on by defendant on the ground that "no . . . *express* geographic restriction is contained in the UCL") (emphasis in original). Other California district courts have also declined to adopt the faulty reasoning of *O'Connor. See*, *e.g.*, *Cabrera v. Google LLC*, 2023 WL 5279463, at *36 & n.25 (N.D. Cal. Aug. 15, 2023) (finding non-California class members could bring UCL claims based on a choice-of-law clause even though "the UCL (like most California law) is subject to a general presumption against extraterritoriality"); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 448 (N.D. Cal. 2018) ("Having determined that the parties agreed that California law would apply to all of the non-U.S. Plaintiffs' claims at issue . . . the Court need not address Apple's arguments as to whether the California laws apply extraterritorially"); *Maldonado v. Apple, Inc*, 2021 WL 1947512, at *7 (N.D. Cal. May 14, 2021) (finding California choice-of-law clause applied to out-of-state class members statutory claims).

As in *Schlesinger*, there are no express geographic restrictions in any of the California Statutes (*see* Gov't Code § 12940; Labor Code § 1102.5; Civil Code § 51.9), which Defendants' own authority recognizes. *See Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1859 (1996) ("Read literally, the FEHA imposes no residency requirement on either the employer or the person

aggrieved and no limitation based on where the conduct occurred."). Indeed, courts have routinely permitted out-of-state plaintiffs to assert FEHA and § 1102.5 claims, even in the absence of a California choice-of-law provision. *See, e.g., Sims v. Worldpac Inc.*, 2013 WL 663277, at *1 (N.D. Cal. Feb. 22, 2013); *Stovall v. Align Tech., Inc.*, 2020 WL 264402, at *3 (N.D. Cal. Jan. 17, 2020); *Tetrault v. Cap. Grp. Companies Glob.*, 2024 WL 3468903, at *6–7 (C.D. Cal. Jan. 17, 2024); *Leibman v. Prupes*, 2015 WL 3823954, at *8 (C.D. Cal. June 18, 2015).

Beyond the ALA itself, Defendants' litigation conduct further confirms their shared intent for California law to govern. In their retaliatory counter lawsuit, Defendants also invoked California law—asserting California constitutional claims against Ms. Lively and other New York residents based on an article published in New York by *The New York Times*, and even purporting to assert such claims on behalf of an Illinois resident. ¶ 803. They did so because they understood that California law governed the parties' relationship, regardless of where the underlying conduct or the parties resided. Consistent with that understanding, Defendants expressly relied on California law to oppose Ms. Lively's motion to dismiss (Dkt. 121 at 13), and discovery in this case has proceeded on the same premise. Having conceded that California law governs the parties' dispute, Defendants cannot now disavow that same choice merely because their counterclaims were dismissed. *See Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.*, 622 AF. App'x 73, 75 (2d Cir. 2015) ("Our law on waiver disfavors a double-bite at the apple—a party cannot test its case under the laws of one state and, when unsuccessful there, change the playing field and try again under the laws of another."); *Baiul v. NBC Sports*, 2016 WL 1587250, at *12 (S.D.N.Y. Apr. 19, 2016) (holding that "plaintiffs have waived their choice of law argument by affirmatively representing that New York law applies in numerous prior filings in this action"); *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (parties' "conduct during litigation may

indicate assent to the application of another state's law"); *Digital Camera Int'l Ltd. v. Antebi*, 2014 WL 940723, at *3 (E.D.N.Y. Mar. 11, 2014) (explaining "conduct indicating the parties' consent to a given state's substantive law can consist of the cases cited and relied upon by the parties in their briefs[.]") (internal quotations omitted).

### B. Ms. Lively's hostile work environment and retaliation claims do not implicate extraterritoriality concerns because they have a sufficient nexus to California.

Even setting aside the parties' choice-of-law provision, this case does not involve an extraterritorial application of the California Statutes. California's presumption against extraterritoriality applies only when the liability-forming conduct occurs **entirely outside California**. *Kearney v. Salomon Smith Barney Inc.*, 39 Cal. 4th 95, 119 (2006) (explaining that applying California statute to a "multistate event" is ***not*** an extraterritorial application where a "crucial element" of the event occurred in California); *People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 522–23 (2024) (presumption does not "prohibit[] recovery . . . for harm occurring outside the state" that is connected to acts or omissions committed in the state). Consistent with these principles, courts routinely apply FEHA "where the tortious conduct at issue occurred partially in the state of California and partially or mostly outside the state of California." *Trujillo v. Skaled Consulting, LLC*, 2021 WL 4150380, at *4 (S.D. Cal. Sept. 13, 2021).[12] As one federal court in California explained, "[h]iring someone in California with knowledge that they will suffer

---

[12] *See, e.g.*, *eShares, Inc. v. Talton*, 2025 WL 936921, at 15 (S.D.N.Y. Mar. 27, 2025) (applying FEHA to non-resident's retaliation claim where certain adverse employment actions occurred in California); *Stovall v. Align Tech., Inc.*, 2020 WL 264402, at *3 (N.D. Cal. Jan. 17, 2020) (applying FEHA even where the "majority of the allegedly discriminatory conduct…took place outside of California"); *Roger-Vasselin v. Marriott Int'l, Inc.*, 2006 WL 2038291, at *8 (N.D. Cal. July 19, 2006) (applying FEHA to non-resident's discrimination claim where a California-based manager may have participated in a relevant employment decision); *Thompson v. Nat'l R.R. Passenger Corp.*, 2008 WL 11398932, at *3–4 (N.D. Cal. Dec. 17, 2008) (applying FEHA to non-resident's discrimination and retaliation claims where employee complained of harassment to officials in California who then "permitted the situation to fester" and retaliated against him); *Kisman v. United Parcel Serv.*, 2023 WL 11822264, at *9 (C.D. Cal. Nov. 14, 2023) (FEHA may apply where California-based supervisors communications about non-resident employee occurred in California). Courts have not yet addressed how the presumption against extraterritoriality applies to Civil Code § 51.9, but they have evaluated allegations regarding Labor Code § 1102.5 in the same manner as FEHA claims. *See Tetrault*, 2024 WL 3468903, at 6–7; *Leibman*, 2015 WL 3823954, at *8.

discriminatory conduct out of state creates a nexus between the in-state conduct and the discriminatory conduct, and FEHA therefore applies." *Doe v. Maxim, Inc.*, 2023 WL 11979557, at \*11 (C.D. Cal. May 19, 2023) (FEHA applied to sexual assault that occurred in St. Lucia where plaintiff "allege[d] a clear nexus between the California-based conduct and the discriminatory conduct outside of California.").

Defendants' contention that the SAC includes no "specific averments" of California involvement in the "allegedly hostile work environment" falls flat.[13] Ms. Lively also alleged—and now has developed through discovery—facts showing that key decisions that enabled, escalated, and perpetuated the hostile work environment were made in California by executives supervising Ms. Lively's employment from Wayfarer's California headquarters.[14] For example, the record shows that Mr. Baldoni, the Film's director and Wayfarer's chairman, and Mr. Heath, Wayfarer's CEO, made critical pre-production decisions from California that enabled harassment to occur and left cast and crew without protections once filming moved to New Jersey. Indeed, in March 2023, a female producer warned Mr. Heath that Mr. Baldoni's dual role as both the Film's director and Wayfarer's chairman created an obvious conflict of interest and urged the company to engage a separate HR presence for the production. ¶ 483; Ex. 15. Mr. Heath, acting from California, decided not to follow that advice. ¶¶ 411, 477–481; *see also* SAC ¶¶ 24, 110–13. At the same time, Wayfarer declined to provide sexual harassment training to cast and crew after ███ (a California-based entity) informed Wayfarer that ███ would not be responsible for the training – another

---

[13] Notably, Defendants' Motion focuses exclusively on the SAC's "allegedly hostile work environment" and "harassing conduct" allegations, ignoring Ms. Lively's detailed retaliation and failure-to-prevent allegations. As discussed below, all of Ms. Lively's claims rest on a substantial California nexus.

[14] Wayfarer, IEWUM, Mr. Baldoni, and Mr. Heath are residents of California and have resided there during all relevant times discussed herein. ¶¶ 409, 411, 422. The Wayfarer Parties admit the residency allegations in the SAC in their respective answers to the SAC. *Id.* Likewise, the employment relationship was established through a contracting relationship between Wayfarer, IEWUM, Blakel, Inc. – all California entities, negotiated in California, through California-based representatives. ¶¶ 422, 582, 583.

decision made in California from where Wayfarer operates. ¶ 483. These omissions guaranteed that once filming began, there would be no meaningful mechanism for Ms. Lively or any other cast member to report inappropriate behavior. ¶¶475-484. The resulting onset misconduct was the predictable manifestation of those California-based management decisions.

Other actions in California set the tone for harassment. Shortly after Ms. Lively accepted the role of Lily Bloom, Mr. Heath remarked that Ms. Lively would be "birthed into" the role – a statement that sexualized her and invoked female reproductive imagery to describe her professional contributions. ¶ 453. This objectification, made from California where Mr. Heath resided, signaled that Ms. Lively's value was tied to her gender rather than her talent. ¶ 453.

During a pre-production Zoom meeting with producers, Mr. Baldoni, joining from California, lashed out at a female producer, Alex Saks, for disagreeing with him, and later sent an "apology" from California acknowledging that he had "mansplained" and been "dismissive." ¶¶ 489-490. Later, when Ms. Saks attempted to push back against Mr. Baldoni during filming, he reacted with explosive anger, slamming his hands onto the back of a chair while angrily yelling the producer's name. ¶¶ 491-492.

The absence of reporting structures left Ms. Lively, Ms. Saks and other cast and crew vulnerable to harassment. Ms. Saks explained that the only people who had authority to take corrective action were Mr. Baldoni and Mr. Heath – an obvious conflict of interest and one that she had raised months earlier, which Wayfarer's California leadership ignored when it decided not to engage separate HR. ¶¶ 483-484; SAC ¶¶ 110-13. When ███████ and Ms. Lively complained to ████████, who was also located in California, about Mr. Baldoni and Mr. Heath's inappropriate behavior, ██████████ took no corrective steps because ████ role was limited to ██████████████████████████ – a position ████ had communicated to Wayfarer months

earlier when it disclaimed responsibility for harassment training. ¶ 483. Notably, when efforts were finally made to address Ms. Lively's and complaints by other female personnel, they were done via negotiation between ██, Wayfarer, and Ms. Lively's personal counsel in California. ¶¶ 582, 583. These facts show that the harassment on set was the foreseeable extension of a hostile environment conceived in California, directed by California executives, and perpetuated through California-based decisions, policies, and omissions.

Moreover, Defendants overlook that Ms. Lively alleges that the harassment did not end when on-location filming concluded. As the SAC makes clear, Defendants continued to engage in harassing and retaliatory conduct long after production wrapped, including a smear campaign planned, coordinated, and implemented from California. *See* SAC ¶ 363 (alleging ongoing harassing and retaliatory efforts "to cast Ms. Lively in a false light, to discredit her" claims, and to damage her career); *see also id.* ¶¶ 192-313. Under California law, retaliatory acts can constitute continuing harassment of an employee. *See* MSJ Opp. at 40. Ms. Lively's retaliation allegations confirm a direct California nexus: Ms. Lively alleges that in August 2024, Wayfarers' management retained California residents TAG and Ms. Nathan to "get ahead of" Ms. Lively's "grievances" by planting false narratives portraying her as a "bully" and "mean girl." SAC ¶¶ 190, 194, 199, 245. And Mr. Wallace declared under oath that he understood "the impact" of the work that he and Street Relations' work for Wayfarer "to be in California," and he "thought [they] were doing business and providing [] services to individuals in California." ECF No. 142-1, ¶ 28. Gearing up to hiring crisis PR and legal representation to implement the retaliation campaign in June 2024, Mr. Heath, from California, directed the preparation of a timeline of the "alleged incidents" involving Ms. Lively, which includes a host of additional California conduct. Ex. 177.

In addition, after Ms. Lively filed her CRD complaint in December 2024—another California-based act—Defendants launched a second wave of retaliation, executed in part through their California-based attorney, Bryan Freedman, who made defamatory public statements and filed Defendants' retaliatory counter-lawsuit from California. SAC ¶¶ 50–51, 303–312; *see also* Dkt. No. 50. Each of these harassing and retaliatory acts – planned, directed, and executed from California – constitutes conduct subject to the California Statutes. *See eShares*, 2025 WL 936921, at *15; *Stovall*, 2020 WL 264402, at 3; *Thompson*, 2008 WL 11398932, at *3–4.

The FEHA cases cited by Defendants are readily distinguishable, and a close review reveals precisely why courts found no meaningful nexus to California in each of those cases.[15] In *Campbell*, all of the relevant conduct occurred entirely while the plaintiff was on a shipping vessel at sea or in out-of-state ports, the parties had no relevant communications with California personnel, all complaints were made and addressed on the shipping vessel, and there was no subsequent harassment or retaliation emanating from California. *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1853–55, 1858 (1996) (noting that the *only* California-related fact was the employer's unrelated past disciplinary decisions). In *Russo*, the sole connection to California was plaintiff's residence—she otherwise worked almost exclusively aboard a vessel, her employer was incorporated in Delaware and headquartered in Arizona, her vessel was administered by a separate Delaware entity headquartered in Maryland, and the plaintiff's supervisor, the alleged harasser, resided in Washington. *Russo v. APL Marine Servs.*, 135 F. Supp. 3d 1089, 1092–93, 1095 (C.D. Cal. 2015). In *Hill*, the plaintiff's supervisor lived and worked in New York, the plaintiff worked

---

[15] The Wayfarer Parties' reliance on *Garcia v. ROC Nation LLC*, 2025 WL 1865965, at *10 (S.D.N.Y. July 2, 2025), is also misplaced. In *Garcia*, the plaintiff's only alleged California-related conduct was accompanying the defendant to strip clubs, and the claim failed not for lack of California nexus, but because the plaintiff did not allege he was singled out based on sexual orientation. By contrast, Ms. Lively expressly and specifically alleges harassment and based on her sex, making *Garcia* inapplicable.

primarily from Maryland, and the only alleged California-related conduct was a single "purported sneer" during a one-week summit in the state. *Hill v. Workday, Inc*., 2024 WL 3012802, at *9 (N.D. Cal. June 14, 2024). And in *Rulenz*, the Nevada-based plaintiff alleged no connection to California other than not being selected for a San Diego position nearly two years ***before*** the events forming the basis of her age-discrimination claim. *Rulenz v. Ford Motor Co*., 2013 WL 2181241, at *1–2 (S.D. Cal. May 20, 2013). Finally, in *Gonsalves* and *Dodd-Owens*, the courts rejected FEHA claims because the plaintiffs alleged only high-level, conclusory assertions of California involvement, without identifying any specific conduct, decisions, or actors in California or how those assertions connected to the alleged discrimination. *See Gonsalves v. Infosys Techs., LTD.*, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010) (finding formulaic allegations that California personnel "instituted, approved, ratified, affirmed and/or implemented the discriminatory policies" too "general in nature"); *Dodd-Owens v. Kyphon, Inc.*, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (directing that plaintiff must identify corporate officers that participated in challenged conduct by name and identify what actions, if any, they took in California). These cases—each involving little to no California-based conduct—stand in stark contrast to the facts of this case, where, among other things, the hostile environment created by Defendants specifically originated with decisions made in California, complaints of harassment were reported and addressed in California, and the subsequent campaign of harassment and retaliation against Ms. Lively was orchestrated from California. *Supra* at 14–17.

## IV.    Wayfarer is Liable for Harassment and Retaliation as a Joint Employer.

Wayfarer's attempt to shield itself from liability for harassment and retaliation, on the grounds that it was not a party to the ALA, fails. (MJOP at 11, n.3). Both FEHA and Title VII extend beyond the directly employing entity where, as here, there are "joint employers"—*i.e.* more than one entity that share or exercise significant control over an employee's work. *See Felder v.*

*United States Tennis Ass'n*, 27 F.4th 834, 842–43 (2d Cir. 2022) (Title VII liability extends to entities that "share in controlling the terms and conditions of a plaintiff's employment"); *Vernon v. State of California*, 116 Cal. App. 4th 114, 124–25 (2004) (FEHA applies where an entity has the "right to control the means and manner of the workers' performance"). In determining joint employer status, California and Federal courts "consider the 'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties." *Vernon*, 116 Cal. App. at 129; *Bourdeau v. Housing Works, Inc.*, 2001 WL 943316 at *5 (S.D.N.Y. 2001). Relevant factors include payment of salary or other employment benefits, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, and whether the work is part of the defendant's regular business operations, among other factors. *Vernon*, 116 Cal. App. at 129; *Bourdeau*, 2001 WL 943316 at *5.

Here, the facts demonstrate that Wayfarer and IEWU were Ms. Lively's joint employers under Title VII and FEHA. While IEWUM is a party to the ALA, the evidence shows that Wayfarer exercised, and retained, extensive control over Ms. Lively's work and working conditions in connection with the Film. IEWUM was simply a single-purpose vehicle formed to produce the Film, while Wayfarer financed the project, approved key creative and personnel decisions, and exercised control over cast and crew. ¶¶ 422, 423, 428. For example, Wayfarer executives, including Mr. Baldoni and Mr. Heath, approved all casting decisions, and Mr. Baldoni admitted his authority to hire, fire, and discipline all cast and crew as he sees fit. ¶¶ 420, 424. Wayfarer acquiesced in, and accepted, Mr. Baldoni's assumption of the director role. ¶ 419. Wayfarer also permitted both Mr. Baldoni and Mr. Heath to exercise supervisory authority on its behalf throughout production of the Film. ¶¶ 420, 424. Indeed, testimony from various cast and

crew members shows that Wayfarer was seen as their employer, carried out through the actions of Mr. Heath and Mr. Baldoni. ¶¶ 427, 484. Wayfarer also directed the schedule, location, and conditions under which Ms. Lively performed her work. ¶¶ 444-448; Ex. 9. Wayfarer also made all human resources-related decisions for the Film. Wayfarer reviewed whether harassment-prevention training would be provided under California law and ultimately decided to conduct this training for all cast and crew. ¶ 483. Moreover, in its summary judgment motion, Defendants cite to ***Wayfarer's*** employment policies as Wayfarer received, and investigated, an HR complaint related to the Film. *See, e.g.*, ¶¶ 43-45, 485. And Wayfarer made the decision not to investigate Ms. Lively's and ▮▮▮▮▮▮ concerns. ¶¶ 552–581. Wayfarer profited from the Film's success, stood to gain from Ms. Lively's performance, and was listed on the insurance policies covering the production. SAC ¶ 167; *see also Harco Nat'l Ins. Co. v. Wayfarer Studios LLC, et al.*, 25-cv-05949, Dkt. No. 1-1. Finally, Wayfarer retained TAG, Ms. Nathan, Ms. Abel, Mr. Wallace and Street Relations to carry out their PR strategy against Ms. Lively. ¶¶ 670–680, 709–724.

Courts routinely impose joint-employer liability under FEHA and Title VII where affiliated entities exercise significant control over an employee's work environment. For example, in *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 1049 (2021), the defendant was deemed a joint employer because it exercised pervasive control over daily operations, personnel decisions, and compliance obligations. Similarly, in *U.S. EEOC v. Global Horizons, Inc.*, 915 F.3d 631, 639–41 (9th Cir. 2019), the court held that agricultural growers were joint employers with a labor contractor for conditions off-site of orchards where temporary workers were hired, despite a contractual agreement that the contractor would provide day-to-day supervision, because the growers retained the ability to control the contractor's services by withholding payment or

demanding changes in performance. The record here overwhelmingly demonstrates that Wayfarer is liable as a joint employer with IEWUM under FEHA and Title VII.

**V.      Ms. Lively's Defamation and False Light Claims Must Proceed to Trial.**

In each of their motions, Defendants assert that Ms. Lively's defamation and false light claims are subject to the litigation privilege, the fair report privilege, and the opinion doctrine. Ms. Lively responds to those arguments here, and both are incorrect.[16]

**A.  Defendants' Opinion Defense Is Meritless.**

The Wayfarer Defendants assert that "whether conduct amounted to sexual harassment or retaliation" reflects unactionable opinion. MSJ 54. As an initial matter, this ignores that Defendants asserted verifiably false facts in connection with the statements, for example, their false assertion that Lively fabricated harassment claims as part of a ploy to take over the ***marketing*** of the Film, FAC ¶¶ 147–152, an assertion which further (falsely) pinned responsibility on Lively for a marketing plan that was approved by Wayfarer from the start, ¶ 609. In any event, the argument is wrong as a matter of law because statements asserting "that an individual made a false accusation or lied for financial or for personal gain are capable of being proven true or false" and attributing "specific and objectively verifiable motives for fabricating" accusations of sexual harassment is not protected opinion. *Carroll v. Trump*, 680 F. Supp. 3d 491, 512–513 (S.D.N.Y. 2023); *see Davis v. Boeheim*, 24 N.Y.3d 262, 271 (2014) (same); *Conti v. Doe*, 2019 WL 952281, at *5 (S.D.N.Y. Feb. 27, 2019).

Defendants rely heavily on *Coleman v. Grand*, but ignore that *Coleman* turned on the statements' being "clear" that the speaker's "views were ***not based on any undisclosed facts***" but

---

[16] The Court need not engage in a choice-of-law analysis as to these arguments, because there is no conflict between New York and California law as to the specific arguments that Defendants advance, and Defendants do not suggest otherwise. MSJ 55 n.11.

rather was based entirely on "***disclosed*** facts" from which readers were "free to determine" whether they agreed with her "characterization." 158 F.4th 132, 139 (2d Cir. 2025). Here, the Defamatory Statements state expressly, or at minimum imply, that Defendants possess substantial undisclosed evidence proving that Lively fabricated her claims of sexual harassment and retaliation for reasons other than the truth, such as to "'fix' her negative reputation" or take "control" of the film. *McNamee*, 762 F. Supp. 2d at 601; *see GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 2019 WL 1768965, at *6 (S.D.N.Y. Apr. 4, 2019) (not opinion where "an average reader might also conclude" the speaker "is privy to undisclosed and damning information, the details of which formed the basis for statements"); *see also, e.g.,* ¶ 814.

Defendants' argument that their denials of a "smear campaign" are not defamatory because they lack a "precise, definitive" meaning fails for similar reasons. MSJ 54. Contrary to Defendants' characterization, the Defamatory Statements not only include denials of participating in a smear campaign but also specific factual statements, such as that representatives of Wayfarer "***did nothing proactive*** nor retaliated, and only responded to incoming media inquiries." Whether the Wayfarer Defendants retaliated against Lively—including by proactively shaping or planting negative stories about her—is objectively verifiable and, in fact, will be verified by a jury. *See Carney v. St. John*, 2025 WL 2961622, at *6 (S.D.N.Y. Oct. 20, 2025) (allegation that the plaintiff made a woman's "'working life unnecessarily difficult' after she rejected a sexual advance implies alleges a verifiably true or false fact — that [he] took retaliatory action against her"). Nor are the Defamatory Statements protected as "general denials," MSJ 54, because "denials coupled with accusations that the accuser will be proven a liar . . . cross the line from general denial to specific accusations reasonably susceptible of a defamatory meaning." *McNamee v. Clemens*, 762 F. Supp. 2d 584, 601 (E.D.N.Y. 2011); *see, e.g.,* ¶ 814 ("a fictitious smear campaign, all because she quite

simply could not accept that the public had organically seen through her façade") *and* ¶ 787

("evidence that there was no proactive measures").

### B. The Litigation and Fair Report Privileges Do Not Apply.

The Defamatory Statements are unprivileged. *See* MSJ Opp. Table of Abbreviations

(defining "Defamatory Statements").[17] Neither California's nor New York's litigation privilege

applies to attempts to litigate in the press. The Defendants concede that neither California's nor

New York's litigation privilege applies to the Defamatory Statements because Freedman made

them outside of court. MJP at 21-22 ("New York's litigation privilege does not extend to out of

court statements"); Dkt. 162 at 22 (California's litigation privilege "does not protect 'litigating in

the press'"). Instead, the Wayfarer Defendants now argue that the Defamatory Statements are

protected based on the fair report privilege, which applies to a "fair and true report of any judicial

proceeding." But "the fair report privilege does not protect 'litigating in the press'" either. *Lively*

*v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 762 (S.D.N.Y. 2025). Further, an "overlap between

the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary

viewer or reader must be able to determine from the publication itself that the publication is

reporting on the proceeding." *Carroll v. Trump*, 664 F. Supp. 3d 550, 558 (S.D.N.Y. 2023); *Wexler*

*v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 313 (S.D.N.Y. 2019). The Defamatory Statements are

unprotected by the fair report privilege because they constitute litigating in the press and do not

reflect reports of any judicial proceeding. Instead, the Defamatory Statements are an

"amalgamation" of the Defendants' version of the "underlying events," which are not protected by

---

[17] Exhibit 271 is Appendix F to one of the expert reports Ms. Lively served and identifies all the Defamatory Statements. The Motion states, wrongly, that the SAC "cynically fails to note the timing of the allegedly defamatory statements." *See* Mot. at 19-20. The SAC footnotes include citations to the articles that contain the Defamatory Statements and reflect the dates of publication. *Compare* SAC ¶¶ 299(a) n.46 (Jan. 18, 2025); 299(b) n.47 (Dec. 21, 2024); 299(e) n.50 (Jan. 25, 2025); 299(f) n 52 (Jan. 7, 2025); 299(h) n.53 (Jan. 16.2025), *with id.* ¶ 451. Mr. Freedman's statement in response to an article in the *New York Times* pre-dated this litigation, but post-dated Ms. Lively's filing of the CRD Complaint. *Compare* Dkt. 1 (Dec. 31, 2024), *with* SAC 299(b) n.47 (Dec. 21, 2024).

fair report. Defendants concede this by admitting that the statements "repeat allegations Defendants had already asserted or *would soon* assert in this action," MSJ 55 (emphasis added).

At the time of the December 21 Statement, the only active proceeding was Lively's privately-filed CRD Complaint, which the statement did not expressly reference, nor did it give readers any way to understand that it was referencing Lively's CRD Complaint (as opposed to the New York Times article itself). Indeed, at this time, Defendants' chosen PR strategy was the preposterous assertion that Lively did not ever intend to litigate her claims, but had filed a fraudulent CRD Complaint for the sole purpose of laundering a story into the New York Times. ¶¶ 786-787. Even if readers had somehow understood Mr. Freedman to be referring to the CRD Complaint, the December 21 Statement is not a "fair and true" report of it, because it characterized it as filled with false allegations designed to "fix" Lively's negative reputation "which was garnered from her own remarks and actions," and that his clients "did nothing proactive nor retaliated, and only responded to incoming media inquiries."

By the time of the January 7 Statement, the active litigation proceedings also included Lively's complaint in this matter and the California State Lawsuit, which named only the New York Times as a party. The January 7 Statement also does not provide any indication what proceedings it was about, or a fair and accurate description of any of the ones that existed at that time. Nor can the Defendants rely on the California State Lawsuit as the basis for the fair report privilege because they attempted to assert nearly identical claims in their FAC, which the Court dismissed and, for the reasons explained in the various Rule 11 motions, were frivolous. Courts do not condone the "deliberate institution of baseless litigation for the purpose of fabricating a reporting privilege." *GeigTech E. Bay LLC*, 2019 WL 1768965, at *6. For the same reason, the Defendants cannot cloak the January 18 Statement or the January 25 Statement in fair report

because they related to the now-dismissed, sanctionable FAC, to the extent they report on any proceedings. *Id*. Even if that were not the case, nothing "about the content or context" of the January 18 and 27 Statements indicate that Mr. Freedman was describing judicial proceedings, let alone providing a "fair and true" report of them. *Carroll*, 664 F. Supp. 3d at 558. Attorneys, like Freedman, who choose "to litigate their cases in the press do so at their own risk" because applying the privilege to public "mudslinging" "would serve no purpose but to provide immunity to those who would inflict upon our system of justice the damage which litigating in the press generally causes: poisoning of jury pools and bringing disrepute upon both the judiciary and the bar.'" *See Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1145, 1149 (1996).[18]

## VI.    The SAC States A Claim For Conspiracy.

The SAC sufficiently pleads all the elements of civil conspiracy.[19] In any event, the summary judgment record puts this issue beyond doubt. MSJ Opp. at 58–59.

### <u>CONCLUSION</u>

Defendants' motion for judgment on the pleadings should be denied.

---

[18] Defendants suggest that Mr. Freedman's "ethical obligation to defend" his clients necessitated his public statements but offers no citation to support the assertion or attempt to reconcile such a claim with California law holding that attorneys engaging in "mudslinging, while a less physically destructive form of self-help than a public brawl, is nevertheless one of the kinds of unregulated and harmful feuding that courts and their processes exist to prevent." *Rothman*, 49 Cal. App. 4th at 1146.

[19] Specifically, the Wayfarer Defendants (1) agreed to execute a "social attack" plan (SAC ¶¶ 293, 293(a)-(n); (2) engaged in overt acts to further the agreed-upon plan (*id*. ¶¶ 294-312); (3) intentionally participated in furthering the agreed-upon plan (*id*.); and (4) caused resulting harm (*id*. ¶¶ 324-352).

Respectfully submitted,

Dated: December 3, 2025

/s/ Esra A. Hudson

Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com

Matthew F. Bruno
Manatt, Phelps & Phillips LLP
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

Meryl C. Governski
Dunn Isaacson Rhee LLP
401 9th Street NW
Washington, DC 20004
(202) 240-2927
mgovernski@dirllp.com

Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com

Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com

Aaron E. Nathan
Michaela A. Connolly
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com
mconnolly@willkie.com

*Attorneys for Blake Lively*