UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                        Plaintiff,<br><br>        -against-<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS, INC.,<br>                        Defendants.<br><br>JENNIFER ABEL,<br><br>                        Third-Party Plaintiff,<br><br>        -against-<br><br>JONESWORKS LLC,<br><br>                        Third-Party Defendant. | Civil Action No. 1:24-cv-10049<br>(consolidated with 1:25-cv-00449) |

### JONESWORKS LLC'S RESPONSE TO RULE 56.1 STATEMENT BY THIRD-PARTY PLAINTIFF JENNIFER ABEL AND COUNTER STATEMENT OF MATERIAL FACTS

Third-Party Defendant Jonesworks LLC ("Jonesworks"), by its undersigned attorneys, hereby submits the following responses to the statement, pursuant to Local Civil Rule 56.1, of Third-Party Plaintiff Jennifer Abel ("Abel"):

**Procedural History**

1.      On December 31, 2024, Plaintiff Blake Lively ("Plaintiff") commenced this action by filing a complaint.  (*See* Dkt. 1).

**RESPONSE:** Undisputed.

2.      Plaintiff named, among others, Abel as a defendant in the complaint. (*Id*.).

**RESPONSE:** Undisputed.

3.      On July 30, 2025, Plaintiff filed a second amended complaint, again naming Abel as a defendant. (*See* Dkt. 520).

**RESPONSE:** Undisputed.

4.      On August 13, 2025, Abel answered the second amended complaint and filed an amended third-party complaint ("Answer and Third-Party Compl."), naming Jonesworks LLC ("Jonesworks") as a third-party defendant. (*See* Declaration of Kevin Fritz, dated November 11, 2025 ("Fritz Decl."), Ex. A).

**RESPONSE:** Undisputed.

5.      Jonesworks responded to the amended third-party complaint by filing a motion to dismiss. (*See* Dkt. 670).

**RESPONSE:** Undisputed.

6.      On October 9, 2025, the Court issued an Opinion and Order, denying Jonesworks' motion to dismiss, in its entirety. (*See* Dkt. 852).

**RESPONSE:** Undisputed.

7.      On October 23, 2025, Jonesworks filed an answer to Abel's amended third-party complaint ("Answer"). (Fritz Decl., Ex. B).

**RESPONSE:** Undisputed.

**Abel's Employment with Jonesworks**

8.      Abel resides in Beverly Hills, California. (*See* Declaration of Jennifer Abel, dated November 11, 2025 ("Abel Decl."), ¶ 3).

**RESPONSE:** Undisputed.

9.    On or about July 9, 2020, Jonesworks hired Abel as Vice President. (Fritz Decl., Ex. A, ¶ 16; Ex. B, ¶ 16; Abel Decl., ¶ 5; Abel Decl., Ex. 1).

**RESPONSE:** Undisputed.

10.    Jonesworks is a well-known public relations firm founded by Stephanie Jones ("Jones"), who serves as its CEO. (Abel Decl., ¶ 4; Fritz Decl., Ex. C at 32:7-33:16).

**RESPONSE:** Undisputed.

11.    As a condition of her employment, Abel executed a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement ("2020 Employment Agreement"). (Fritz Decl. Ex. A, ¶ 17; Ex. B, ¶ 17; Abel Decl., ¶ 6; Abel Decl., Ex. 2).

**RESPONSE:** Undisputed.

12.    Pursuant to the 2020 Employment Agreement, Abel was an at-will employee of Jonesworks. (Fritz Decl., Ex. A, ¶ 18; Ex. B, ¶ 18; Abel Decl., ¶ 7; Abel Decl., Ex. 2, ¶ 10).

**RESPONSE:** Undisputed.

13.    The 2020 Employment Agreement further stated:

**Exclusive Employment.** Employee agrees that while Employee is employed by the Agency, Employee's employment shall be exclusive and Employee shall not provide services to any entity in the public relations, media communications, marketing, branding or talent management business or any business without the Agency's prior written approval.

(Abel Decl., Ex. 2, ¶ 9; Fritz Decl., Ex. A, ¶ 18; Ex. B, ¶ 18).

**RESPONSE:** Undisputed.

14.    When she joined Jonesworks, Abel oversaw Jonesworks' talent department and sought to grow its Los Angeles office, which at the time only had four employees. (Abel Decl., ¶ 5).

**RESPONSE:** Undisputed.

15.     On or about November 22, 2021, Jonesworks and Abel entered into a modified employment agreement ("2021 Employment Agreement").  (Fritz Decl., Ex. A, ¶ 20; Ex. B, ¶ 20; Abel Decl., ¶ 8; Abel Decl., Ex. 3).

**RESPONSE:** Undisputed.

16.     The 2021 Employment Agreement states that Abel would serve as Vice President, Talent.  (Abel Decl., Ex. 3, ¶ 2).

**RESPONSE:** Undisputed.

17.     The 2021 Employment Agreement states: Abel's ███████████████████████
███████████████████████████████     (Abel Decl., Ex. 3, ¶ 2; Abel Decl., ¶ 10).

**RESPONSE:** Undisputed.

**The Wayfarer Clients Engage Jonesworks**

18.     In or about 2018, before Abel's employment with Jonesworks, Defendant Justin Baldoni ("Baldoni") engaged Jonesworks to provide public relations services to him. (Abel Decl., ¶¶ 5, 14; Fritz Decl., Ex. C at 69:9-13; 71:18-20 ████████████████
████████████████████████████████████

**RESPONSE:** Partially disputed to the extent that Jonesworks began representing Baldoni in 2017.  Jones Decl. ¶ 5.

19.     After Baldoni's engagement, Defendant Wayfarer Studios LLC ("Wayfarer") retained Jonesworks.  (Friz Decl., Ex. C at 69:14-70:6; Abel Decl., Ex. 4).

**RESPONSE:** Undisputed.

20.     Wayfarer is a production studio founded by Baldoni and others.  (Abel Decl., ¶ 12).

**RESPONSE:** Undisputed.

21.    On or about May 6, 2020, Jonesworks and Wayfarer entered into an agreement on Jonesworks letterhead ("Wayfarer Agreement").  (Abel Decl., ¶ 15; Abel Decl., Ex. 4).

**RESPONSE:** Undisputed.

22.    Pursuant to the terms of the Wayfarer Agreement, Wayfarer retained Jonesworks "as its exclusive public relations counsel to provide strategic communications services as" described in a schedule to the agreement.  (Abel Decl., ¶ 15; Abel Decl., Ex. 4).

**RESPONSE:** Undisputed.

23.    Schedule A to the Wayfarer Agreement set forth the services Jonesworks would provide in the following chart:

| | |
|---|---|
| Press Materials | • Assist in developing, writing and updating communication materials related to all press outreach such as biographies, media kits, boilerplates, press releases, and key messaging<br>• Manage media and press communications |
| Inter-Agency Programs | Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned |
| Executive Visibility | Position and utilize Wayfarer Studios key executives as thought-leaders and change agents in the film and television industry |
| On-Going/Proactive Outreach | • Develop a 12-month media and communications strategy to further drive awareness<br>• Strategize and execute select film and television project announcements<br>• Conduct proactive feature pitching to top-tier print, broadcast and online media outlets<br>• Conduct media monitoring and competitor tracking for industry press<br>• Conduct regular check-on calls surrounding the status of Wayfarer Studios projects, events and news |
| Measurement and Evaluation | • Clip and Service media as published<br>• Create monthly clip books and activity reports that detail account activity and media impressions<br>• Create and maintain a media library on behalf of Wayfarer Studios |

(Abel Decl., Ex. 4, Schedule A; Abel Decl., ¶ 16).

**RESPONSE:** Undisputed.

24.     Pursuant to the terms of the Wayfarer Agreement, the initial term of the agreement would commence on May 7, 2020, and conclude on May 6, 2021. (Abel Decl., Ex. 4).

**RESPONSE:** Undisputed.

25.     The Wayfarer Agreement further provides: "This agreement shall automatically renew for additional one-year periods ("Extension Period(s)") unless notice is received by either party ninety (90) days prior to the expiration of the Initial Term of this Agreement, or any Extension Period." (*Id*).

**RESPONSE:** Undisputed.

26.     In addition to expenses and other fees, per the Wayfarer Agreement, Wayfarer agreed to pay Jonesworks a service fee of $20,000 per month. (*Id*).

**RESPONSE:** Undisputed.

27.     According to Jones, ███████████████████████████ ████████ (Fritz Decl., Ex. C at 86:24-87:2).

**RESPONSE:** Undisputed as to the content of Jones's referenced testimony.

**Jonesworks Provides Services for Wayfarer Clients**

28.     ██████████████████████████████████████ ████████████████ (Fritz Decl., Ex. C at 82:14-18; 82:25-83:5; 84:15-18).

**RESPONSE:**  Undisputed as to the content of Jones's referenced testimony.

29.     According to Jones, ████████████████████████ ████████████ (Friz Decl., Ex. C at 82:19-22).

**RESPONSE:** Undisputed as to the content of Jones's referenced testimony.

30.     Jones, however, also testified that ██████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (Fritz Decl., Ex. C at 84:21-85:4).

**RESPONSE:** Undisputed as to the content of Jones's referenced testimony.

31.    Jones also testified: ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

(Fritz Decl., Ex. C at 85:9-14).

**RESPONSE:** Undisputed as to the content of Jones's referenced testimony.

32.    Jonesworks set up email distribution lists to help service the Wayfarer

Clients. (Abel Decl., ¶ 20).

**RESPONSE:** Undisputed.

33.    Emails sent to ██████████████████ and

██████████████████ were received by multiple Jonesworks' personnel,

including Jones and Abel. (*Id*).

**RESPONSE:** Disputed. Jones was not on these email listservs continuously or at all

times, but was added in late July 2024. Jones Decl. ¶ 15.

34.    Jonesworks also provided Baldoni with ██████████ (Fritz Decl., Ex. C at

87:3-87:16).

**RESPONSE:** Disputed. Jonesworks occasionally assisted Baldoni with matters that he

considered to be a "crisis," but Jonesworks—whose ethos centers on positive publicity—did not

provide what is commonly referred to in the PR industry as ▇▇▇▇▇▇ because Jonesworks is not a "crisis PR" firm.  Jones Decl. ¶ 12.

35.    Jonesworks also assisted Baldoni with ▇▇▇▇▇▇▇▇ (Fritz Decl., Ex. C at 87:5-16).

**RESPONSE:** Undisputed as to the content of Jones's referenced testimony.

36.    Jones  testified: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Fritz Decl., Ex. C at 87:12-16).

**RESPONSE:** Undisputed as to the content of Jones's referenced testimony.

37.    Jones  did  not ▇▇▇▇▇▇▇▇▇▇▇▇ (Fritz Decl., Ex. C at 83:6-14).

**RESPONSE:** Undisputed.

38.    Jonesworks provided ▇▇▇▇▇▇▇▇▇▇ (Fritz Decl., Ex. C at 83:12-14).

**RESPONSE:** Undisputed.

39.    Among  others,  Abel  was ▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇ (Fritz Decl., Ex. C at 85:15-86:23).

**RESPONSE:** Undisputed.

40.    After joining Jonesworks, Abel served as the primary point person for Wayfarer and Baldoni during Wayfarer's multi-year engagement with Jonesworks.  (Abel Decl., ¶ 17).

**RESPONSE:** Undisputed.

41.    Abel managed Jonesworks' work for Wayfarer from Jonesworks' Los Angeles

office.  (Abel Decl., ¶ 18).

**RESPONSE:** Partially disputed to the extent the term "managed" is vague and undefined.  Undisputed that Abel performed work for Wayfarer from Jonesworks' Los Angeles office, and that she also performed work for Wayfarer and Baldoni in New York.  *See* Abel Decl. ¶ 34 n.2.

42.    Through Jonesworks' engagement with Wayfarer, Abel developed a close and trusting relationship with the Wayfarer Clients.  (*Id*)

**RESPONSE:** Disputed to the extent "close and trusting relationship" is vague and undefined, and Abel's assertion regarding the nature of her relationship with the Wayfarer Clients is speculative.  Moreover, Abel disparaged Baldoni to others including Nathan, including stating that ███████████████████████████████████████ ████████████████████████████████    Declaration of Kristin Tahler ("Tahler Decl."), Ex. 1 (JONESWORKS_00041606).

43.    Jonesworks directed Abel to carry out the duties of a competent public relations professional on behalf of the Wayfarer Clients, including but not limited to garnering good publicity and eliminating or minimizing bad publicity for them and the film *It Ends With Us* (the "Film").  (Abel Decl., ¶¶ 13, 19).

**RESPONSE:** Partially disputed to the extent the direction Jonesworks provided Abel to carry out the duties of a competent public relations professional at no time included activities contributing or amounting to the digital smear campaign Abel, Nathan, and others engaged in against Lively on Baldoni's and Wayfarer's behalf as alleged by Lively in this action. Declaration of Stephanie Jones ("Jones Decl.") ¶¶ 44-49.  Abel was expected to guide her clients as they interacted with the press, but Abel was not expected to, was never instructed to,

and was prohibited from manipulating social media conversations to attack a non-client on behalf of Jonesworks' clients or pitch, seed, or promote negative false stories about a non-client who had complained of misconduct against her client. Jones Decl. ¶ 17. Abel was never instructed to and was prohibited from engaging or participating in conduct that could be considered harassment, discrimination, or retaliation in violation of state or federal laws or aiding and abetting harassment, discrimination, or retaliation in violation of state and federal laws. Jones Decl. ¶ 18. Abel was never instructed to and was prohibited from engaging or participating in any conduct that would amount to "astroturfing," or the manufacturing of grassroots support of or opposition to a message or person orchestrated through fake or paid for social-media accounts or engagement and coordinated disinformation to manufacture what appears to be an organic consensus response. Jones Decl. ¶ 19. Abel knew that Jonesworks did not engage in these types of nefarious activities. Jones Decl. ¶ 20.

44.    Baldoni directed and co-starred in the Film.  (Abel Decl., ¶ 13).

**RESPONSE:** Undisputed.

45.    For its services, including Abel's public relations services, the Wayfarer Clients from May 2020 to August 2024 paid fees to Jonesworks. (Abel Decl., ¶ 25; Abel Decl., Ex. 5; Fritz Decl., Ex. C at 86:24-87:2).

**RESPONSE:** Undisputed that Wayfarer and Baldoni paid Jonesworks through August 2024. Disputed to the extent the "public relations services" for which Wayfarer and Baldoni paid Jonesworks did not include any activities contributing or amounting to the digital smear campaign Abel, Nathan, and others engaged in against Lively on Baldoni's and Wayfarer's behalf as alleged by Lively in this action. Jones Decl. ¶¶ 44-49. The work Jonesworks did for Baldoni and Wayfarer under their agreement at no time included seeding, planting, or promoting

10

negative stories about individuals in disputes with Baldoni or Wayfarer. Jones Decl. ¶ 11. Nor
did Jonesworks directly influence conversations about Baldoni or Wayfarer occurring on social
media through false or paid for accounts or comments, or otherwise engage in social media
manipulation. *Id.*

**Jonesworks' Public Relations Work for the Wayfarer Clients Concerning the Film**

46.     On July 24, 2024, Abel advised Jones ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████ (Abel Decl., ¶ 31;
Abel Decl., Ex. 7).

**RESPONSE:** Undisputed.

47.     Jones asked for Abel's recommendations for a crisis management professional.
(*Id*).

**RESPONSE:** Partially disputed to the extent that this statement mischaracterizes
communications. When Abel informed Jones that Wayfarer was looking for crisis recommendations,
Abel said she told Wayfarer she ██████████████████████████ Jones responded ████
████████████████████████████████████ to which Abel replied, ████
██████████████████████████ Abel Decl., Ex. 7.

48.     Wayfarer hired The Agency Group PR LLC ("TAG") to assist Jonesworks
with crisis management. (Abel Decl., ¶ 32; Abel Decl., Ex. 8).

**RESPONSE:** Disputed to the extent this fact asserts that Wayfarer hired TAG to "assist
Jonesworks." TAG was engaged for separate "scenario planning" and crisis-management
issues—not to support or assist Jonesworks in its public-relations efforts. Abel Decl., Ex. 10
(August 2 scenario planning document specifying TAG would work "alongside Jen Abel and

her team"); Tahler Decl.,  Ex. 2 at 3, KCASE-000005118 (TAG employees discussing how they "thought this was Jen on her own already coming to us for help").

49.     On July 31, 2024, Abel texted Jamey Heath ("Heath") and Mitz Toskovic of Wayfarer about a conversation that she had with an independent journalist concerning the exclusion of Baldoni from Film-related promotions and that such journalist was willing to publish a story of Lively's misconduct.  (Abel Decl., ¶ 33; Abel Decl., Ex. 9).

**RESPONSE:** Partially disputed to the extent this mischaracterizes the document.  That "independent journalist" was Abel's self-described "friend of 12+ years," and Abel told Heath and Toskovic that her friend "hates Blake" and was "armed and ready to take this story of Blake weaponizing feminism to any of her outlines."  Abel Decl., Ex. 9.  Abel additionally told Heath and Toskovic that she was "going to connect her [friend] to Melissa tomorrow."  Abel Decl., Ex. 9.

50.     At the time she communicated with the journalist, Abel acted within the scope of her employment at Jonesworks, providing public relations services to the Wayfarer Clients. (Abel Decl.,  ¶  33;  Abel  Decl.,  Ex.  4,  Schedule  A  ("Manage  media  and  press communications")).

**RESPONSE:** Disputed. Abel's scope of employment at Jonesworks did not include, and expressly prohibited, participating in or contributing to any digital smear or astroturfing campaign that Abel, Nathan, and others engaged in against Lively on Baldoni's and Wayfarer's behalf as alleged by Lively in this action, and Abel did not perform such work in her capacity as a Jonesworks employee.  Jones Decl. ¶¶ 44-49.  Neither Jonesworks nor Jones ever advised or instructed Abel to plant, seed, or promote negative stories about Lively, and to the extent that Abel did so, it was without Jonesworks' or Jones's knowledge or consent.  Jones Decl.

¶¶ 45-49.  Jones specifically expected and instructed Abel to carry out here duties in an ethical and lawful manner, which did not include astroturfing, digital smear campaigns, retaliation, or any of the other nefarious behavior and/or actions that Lively alleges Abel did.  Jones Decl. ¶ 48.  Jonesworks' written scope of services for Wayfarer and Baldoni does not reference or authorize activities involving anonymous dissemination of disparaging information, coordination of online attacks, or use of personal accounts to communicate with journalists. Abel Decl., Ex. 4.  The work Jonesworks did for Baldoni and Wayfarer under their agreement at no time included seeding, planting, or promoting negative stories about individuals in disputes with Baldoni or Wayfarer.  Jones Decl. ¶ 11.  Nor did Jonesworks directly influence conversations about Baldoni or Wayfarer occurring on social media through false or paid for accounts or comments, or otherwise engage in social media manipulation.  Jones Decl. *Id.*

51.    Abel never followed up her communication with the journalist nor referred the journalist to anyone else.  (Abel Decl., ¶ 33).

**RESPONSE:** Disputed. Abel told Heath and Toskovic she was "going to connect [her journalist friend] to Melissa tomorrow."  Abel Decl., Ex. 9.

52.    The journalist never published the story.  (*Id*).

**RESPONSE:** Disputed to the extent Abel does not identify the journalist and does not state whether that journalist (who according to Abel "hates Blake") never wrote or published or contributed in any manner to a story about Lively, Baldoni, or *It Ends With Us*.  *See* Abel Decl. ¶ 33.

53.    On August 2, 2024, a representative of TAG sent Abel a "Scenario Planning" document referencing an objective to "[p]rotect the reputation of" the Wayfarer Clients "in the lead up, during, and following the premiere" of the Film and related goals.  (Abel Decl., ¶ 34; Abel

Decl., Ex. 10).

    **RESPONSE:** Undisputed.

    54.    TAG shared the "Scenario Planning" document with Abel because she was a Jonesworks employee responsible for providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 34; Abel Decl., Ex. 4, Schedule A ("Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

    **RESPONSE:** Disputed. Abel establishes no basis to understand TAG's intention or purpose in sharing the "Scenario Planning" document with Abel, and the cited evidence does not support the assertion that TAG shared the document with Abel because she was a Jonesworks employee or based on any responsibility she held for providing public relations services. *See* Abel Decl., Ex. 10 ("Scenario Planning" document providing TAG intended to work with "Abel and her team," not Jonesworks).

    55.    On August 5, 2024, Abel notified Baldoni that Sony (the co-producer of the Film) had an issue with the word "friction" being used in social media commentary about the on-set relationship between Baldoni and Plaintiff. (Abel Decl., ¶ 35; Abel Decl., Ex. 11).

    **RESPONSE:** Undisputed.

    56.    Abel proposed the word "challenge" to downplay such commentary and to highlight that, as director of the Film, Baldoni successfully brought all people together to "create something beautiful" in the Film. (*Id*).

    **RESPONSE:** Undisputed.

    57.    Abel made the proposal as part of her employment with Jonesworks, providing a public relations "strategy" to Jonesworks' clients, *i.e.,* the Wayfarer Clients. (*Id*.; Abel Decl.,

Ex. 4, Schedule A ("Assist in developing, writing and updating communication materials related to all press outreach …")).

**RESPONSE:** Disputed.  At the same time Abel was advising Baldoni of what to say about Lively during press in these messages, Abel was also coordinating negative messages about Lively with Baldoni and Nathan as part of the digital smear campaign as alleged by Lively in this action.  Abel Decl., Ex. 11.  In direct response to Abel's message to "stick to the words of 'challenge,'" Baldoni sent Abel social media content about "hailey bieber's history of bullying many women (not just selena gomez) throughout the years," and told Abel "This is what we would need."  Abel Decl., Ex. 11.  Abel responded that she "literally just spoke to Melissa about this on the break about what we discussed last night for social and digital."  Abel Decl., Ex. 11.

Abel's activities contributing to or amounting to the digital smear campaign as alleged by Lively in this action were not within the scope of Abel's employment at Jonesworks or performed by Abel in her capacity as a Jonesworks employee.   Jones Decl. ¶¶ 45-49.  Moreover, the context of Abel's conduct undermines any claim that she was acting within her Jonesworks role: Abel and Nathan were attempting to develop and execute a strategy after Stephanie Jones had recommended that Wayfarer not hire TAG, meaning the proposal and related communications were not part of any approved Jonesworks project or scope of work. Tahler Decl., Ex. 3 (JONESWORKS_JB_000001142) (Jones warning Baldoni and Heath that Nathan was "not someone we would want in justin's orb. or for blake's PR to use as weapon against him"); Tahler Decl., Ex. 5 (10/6/25 Baldoni Dep. Tr. at 136:24–137:25, 147:3–8) ("Q Okay. Do you understand from this text message that Stephanie is telling you and Jamey and Tera that it might not be good for you to be associated with someone like Melissa Nathan based

on the type of tactics that she has used in the past? A That seems to be an accurate summary.").

58.    On August 7, 2024, Abel exchanged text messages with Jonesworks' employee Matthew Mitchell ("Mitchell") and TAG employees Melissa Nathan ("Nathan") and Katie Case ("Case") and Breanna Koslow ("Koslow") ███████████████████████████ ███████████████████████████████████████ (Abel Decl., ¶ 36; Abel Decl., Ex. 12).

**RESPONSE:** Disputed to the extent it mischaracterizes the text messages, in which Abel, Mitchell, Nathan, Case, and Koslow discussed ████████████████████ ████████████████████████████████████████ █████████████████████████████ Abel Decl., Ex. 12.

59.    Abel made her comments concerning ████████████████ in the course of her employment at Jonesworks providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 36; Abel Decl., Ex. 4, Schedule A ("Assist in developing, writing and updating communication materials related to all press outreach …")).

**RESPONSE:** Disputed. In the August 7, 2024 text messages, Abel and others discussed ███████████████████████████████████████████ ████████████████████████████████████████████ ██████ Abel Decl., Ex. 12. The work Jonesworks did for Baldoni and Wayfarer under their agreement at no time included seeding, planting, or promoting negative stories about individuals in disputes with Baldoni or Wayfarer or otherwise adverse or potentially adverse to them; nor did Jonesworks directly influence conversations about Baldoni or Wayfarer occurring on social media through false or paid for accounts or comments, or otherwise engage in social media manipulation. Jones Decl. ¶ 11.

60.    On August 7, 2024, Case sent Heath and Abel (at her Jonesworks email address) an email referring to "social and digital mitigation and remediation" and to public narratives concerning Baldoni and Wayfarer.  (Abel Decl., ¶ 37; Abel Decl., Ex. 13).

**RESPONSE:** Undisputed.

61.    Case sent the email to Abel because she was a Jonesworks employee providing public relations services to the Wayfarer Clients. (Abel Decl., ¶ 37).

**RESPONSE:** Disputed.  Abel's declaration does not and cannot establish Case's state of mind, purpose, or reason for sending the email, Abel does not purport to have any basis to claim to understand why Case sent this email, and the cited evidence does not support the asserted fact.  Rather, the email states that TAG and Wallace would "work in conjunction with Jen and her team, as well as TAG PR," not Jonesworks.  Abel Decl., Ex. 13.

62.    On August 8, 2024, Abel sent a text message to Mitchell (of Jonesworks), Nathan, Case, and Koslow ████████████████████████████████████████████

████████████████████  (Abel Decl., ¶ 38; Abel Decl., Ex. 14).

**RESPONSE:** Undisputed.

63.    Abel flagged the negative public commentary about Baldoni as part of her employment at Jonesworks.  (Abel Decl., ¶ 38; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring …")).

**RESPONSE:** Disputed.  After Abel flagged the negative public commentary, ████

████████████████████████████████████████████████████  Abel Decl.,

Ex. 14.  Abel's coordination with TAG and Wallace was at no time within Abel's scope of employment for Jonesworks or performed by Abel in her capacity as a Jonesworks employee.  Jones Decl. ¶¶ 36, 44-49.  Neither Jonesworks nor Jones advised or instructed Abel to plant,

seed, or promote any negative stories about Lively, and to the extent Abel did so, it was without Jonesworks' or Jones's knowledge. Jones Decl. ¶¶ 44-46. Neither Jonesworks nor Jones advised or instructed Abel to boost or amplify negative false content about Lively in traditional or social media to cover up any misconduct. Jones Decl. ¶ 46.

64.     On August 9, 2024, Abel exchanged text messages with Nathan concerning articles about a "rift" or "feud" between Baldoni and Lively, as well as other potential media coverage of the situation. (Abel Decl., ¶ 39; Abel Decl., Ex. 15).

**RESPONSE:** Partially disputed to the extent this mischaracterizes the text messages, in which Abel told Nathan she could "tell [Nathan had] done a lot of work" to keep references to Lively "being unsafe. Fat comments. Sexual." out of the press. Abel Decl., Ex. 15. Nathan responded with a message from Jed Wallace that "we are crushing it on Reddit" and "[w]eve [sic] confused people[.] So much mixed messaging[.] It's actually really funny if you think about it." *Id.* Further in these messages, Nathan said to Abel, "[a]nd you take this fucking client and never talk to [Jones] again I swear to God." *Id.*

65.     As part of her employment at Jonesworks, Abel monitored news outlets for negative publicity about Baldoni and sought to potentially garner positive publicity for him. (Abel Decl., ¶ 39; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring …"; "Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

**RESPONSE:** Partially disputed to the extent that Abel's scope of employment with Jonesworks at no time included any activity contributing or amounting to the digital smear campaign alleged by Lively in this action. Jones Decl. ¶¶ 44-49.

66.     Abel exchanged text messages with Nathan on August 9, 2024, as part of her

employment at Jonesworks. (Abel Decl., ¶ 39; Abel Decl., Ex. 15).

**RESPONSE:** Disputed to the extent this statement asserts that Abel's August 9, 2024 text messages with Nathan were sent as part of her employment at Jonesworks because the messages demonstrate that Abel was working against Jonesworks' interests. *See* Abel Decl., Ex. 15 (Nathan said to Abel, "[a]nd you take this fucking client and never talk to [Jones] again I swear to God.").

67. On August 10, 2024, Abel exchanged text messages with Heath, Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning a *Hollywood Reporter* article and TikTok videos related to Plaintiff and/or Baldoni. (Abel Decl., ¶ 40; Abel Decl., Ex. 16; Abel Decl., Ex. 6).

**RESPONSE:** Disputed to the extent this mischaracterizes the text message, which also discussed how "[w]e've also started to see a shift on social, due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan." Abel Decl., Ex. 16.

68. The TikTok video from May 17, 2023, included within the text chain shows Baldoni and Plaintiff in a pleasant atmosphere on the set of the Film. (Abel Decl., ¶ 40; Abel Decl., Ex. 6).

**RESPONSE:** Partially disputed to the extent the text chain Abel cites purports to include multiple "TikToks," but does not actually attach any videos, so it is not clear what the "TikTok video from May 17, 2023," is, Abel Decl., Ex. 16, ██████████

██████████

██████████

69. The *Hollywood Reporter* article discusses why it was important for Baldoni to

19

make a movie about domestic violence. (Abel Decl., ¶ 40; Abel Decl., Ex. 6).

**RESPONSE:** Partially disputed to the extent the article discusses why Baldoni felt it was "important to bring the book's story to the big screen," which the article describes as involving a romantic relationship that "remind [Lively's character] of her parents' abusive relationship" and that Lively's character "must learn to rely on her on strength to move forward."   Abel  Decl.,  Ex.  16  (https://www.hollywoodreporter.com/movies/movie-features/justin-baldoni-it-ends-with-us-interview-ryle-pressure-1235970799/);   Abel   Decl., Ex. 6.

70.    Abel  sent  text  messages  on  August  10,  2024,  concerning  the  *Hollywood Reporter* article and TikTok videos as part of her employment for Jonesworks. (Abel Decl., ¶ 40; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring")).

**RESPONSE:** Disputed. When Abel shared the May 17, 2023 TikTok to Heath, Mitchell, Nathan, and TAG employees, the most recent comments on it were negative to Blake Lively, Abel Decl., Ex. 6, and Abel noted it ██████████████████████████████ ███████████████████████████████████████████ Abel Decl., Ex. 16. Abel also shared a TikTok that featured commentary on Lively's alleged "problematic on-set behavior" on the set of Gossip Girl. Abel Decl., Ex. 16. Abel also asked for the digital team to "amplify" the *Hollywood Reporter* article. *Id.* Case responded: "Thank you! We'll share this as well — at the very least ask for engagement in the comments." *Id.* Abel's activity contributing or amounting to the digital smear campaign as alleged by Lively in this action, including by flagging to amplifying negative coverage of Lively, was at no time within Abel's scope of employment for Jonesworks or performed by Abel in her capacity as a Jonesworks employee. Jones Decl. ¶¶ 44-49.

20

71.    On August 11, 2024, in her capacity as a Jonesworks employee, Abel advised

Wayfarer via text message about ███████████████████████████████████████████

████████████████████████ (Abel Decl., ¶ 41; Abel Decl., Ex. 17).

**RESPONSE:** Partially disputed to the extent Abel, Heath, and Toskovic were

discussing ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Abel Decl., Ex.

17, and the work Abel performed for Baldoni and Wayfarer with TAG, including the digital

smear campaign as alleged by Lively in this action, was at no time within Abel's scope of

employment for Jonesworks or performed by Abel in her capacity as a Jonesworks employee,

nor was Jones included in that message thread.  Jones Decl. ¶¶ 44-49.

72.    On August 13, 2024, Abel exchanged text messages with Heath, Baldoni,

Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning a TikTok video praising

Baldoni and another video criticizing Lively for her marketing of the Film in a manner

insensitive to domestic violence victims.  (Abel Decl., ¶ 42; Abel Decl., Ex. 18).

**RESPONSE:** Undisputed.

73.    Abel sent the August 13, 2024, text messages as part of her employment at

Jonesworks, providing public relations services for the Wayfarer Clients.  (Abel Decl., ¶ 42;

Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring")).

**RESPONSE:** Disputed to the extent this statement asserts that Abel sent the August 13,

2024 text messages as part of her employment at Jonesworks.  *See* Abel Decl., Ex. 18

(demonstrating Abel's efforts to amplify negative content about Lively in support of digital smear

campaign as alleged by Lively).  Abel's activity contributing or amounting to the digital smear

campaign as alleged by Lively in this action, including by flagging to amplifying negative

coverage of Lively, was at no time within Abel's scope of employment for Jonesworks or performed by Abel in her capacity as a Jonesworks employee.  Jones Decl. ¶¶ 44-49

74.    On August 15, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Nathan, Case, and Koslow concerning the positive public comments made by ███████████████████████████████████████████ ███████████████████████ (Abel Decl., ¶ 43; Abel Decl., Ex. 19).

**RESPONSE:** Partially disputed to the extent this mischaracterizes the text message, in which Abel ██████████████████████████████████████████ Abel Decl., Ex. 19.

75.    Abel exchanged the August 15, 2024, text messages as part of her employment for Jonesworks and as its point person assigned to the Wayfarer Clients.  (Abel Decl., ¶ 43; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring"; "Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the  strongest press angles aligned")).

**RESPONSE:** Disputed to the extent this statement asserts that Abel exchanged the August 15, 2024 test messages as part of her employment at Jonesworks.  Abel's activity contributing or amounting to the digital smear campaign as alleged by Lively in this action, including by flagging to amplifying negative coverage of Lively, was at no time within Abel's scope of employment for Jonesworks or performed by Abel in her capacity as a Jonesworks employee.  Jones Decl. ¶¶ 44-49.

76.    On August 18, 2024, Abel exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Nathan and Koslow concerning TikTok videos related to the Film. (Abel Decl., ¶ 44; Abel Decl., Ex. 20).

**RESPONSE:** Partially disputed to the extent this mischaracterizes the text messages, which included videos negative to Lively and her perceived promotion of the Film, including one in which the author of the post commented, ███████████████████████████████ ████████████████████████████████████████ which Baldoni ████████████████ Abel Decl., Ex. 20; Abel Decl., Ex. 6.

77.     The TikTok video called the Film "one of the best movies ever made" and said the Film touched on domestic violence "in the best way possible." (*Id.*; Abel Decl., Ex. 6).

**RESPONSE:** Disputed to the extent the referenced document includes multiple TikTok videos, but did not include with production any actual videos, Abel Decl., Ex. 20, so it is not clear what "[t]he TikTok video" refers to in this paragraph.

78.     Abel exchanged the August 18, 2024, text messages and commented about one of the videos as part of her employment for Jonesworks, providing public relations services for the Wayfarer Clients. (*Id.*; Abel Decl., Ex. 4, Schedule A ("Conduct media monitoring"; "Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned")).

**RESPONSE:** Disputed to the extent this statement asserts that Abel exchanged the August 18, 2024 text messages as part of her employment at Jonesworks. *See* Abel Decl., Ex. 20 (Abel, Baldoni, and others discuss "boost[ing]" social media content, including content critical of Lively). Abel's activity contributing or amounting to the digital smear campaign as alleged by Lively in this action, including by flagging to amplifying negative coverage of Lively, was at no time within Abel's scope of employment for Jonesworks or performed by Abel in her capacity as a Jonesworks employee. Jones Decl. ¶¶ 44-49

79.     Abel's employment with Jonesworks ended on August 21, 2024.  (Abel Decl., ¶

23).

      **RESPONSE:** Undisputed.

**Plaintiff's Claims against Abel Due to her Employment for Jonesworks**

      80.     On July 30, 2025, Plaintiff filed her Second Amended Complaint in which she asserted claims against Abel for: (a) aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (b) false light invasion of privacy; and (c) civil conspiracy (collectively, "Plaintiff's Claims"). (Abel Decl., ¶ 26; Dkt. 520).

      **RESPONSE:** Undisputed.

      81.     According to the Second Amended Complaint, Nathan, her company TAG, and Abel "perpetrated a retaliation scheme against [Plaintiff]" including via "the amplifying of negative content about [Plaintiff]…." (Abel Decl., ¶ 27; Dkt. 520, ¶ 230).

      **RESPONSE:** Partially disputed to the extent the Second Amended Complaint alleges the "retaliation scheme" Abel and others perpetuated "was what TAG described as a "social manipulation" plan relying on direct and constant media engagement, the seeding of content on traditional and social media platforms, the boosting of content (sometimes the very content that TAG and its affiliates had seeded), the suppressing of negative content about Mr. Baldoni, and the amplifying of negative content about Ms. Lively (including through engagement via comments on social media)." ECF No. 520 ¶ 230.

      82.     Abel denies Plaintiff's allegations. (Abel Decl., ¶ 27; Fritz Decl., Ex. A, ¶ 230).

      **RESPONSE:** Undisputed that Abel denies the allegations made in paragraph 230 of Lively's complaint. Fritz Decl., Ex. A, ¶ 230.

      83.     Abel never published, planted, or pitched any negative content about Plaintiff.

(Abel Decl., ¶ 45).

      **RESPONSE:** Disputed. For example, on July 31, 2024, Abel pitched a negative story of Lively to a "friend of 12+ years who writes for people magazine, Fox News, in touch, us weekly"; that journalist friend "hates Blake," and was "armed and ready to take the story of Blake weaponizing feminism to any of her outlets." Abel Decl., Ex. 9. The August 2 Scenario Planning document noted TAG, "[a]longside Jen Abel and her team," would "plant[] a seed earlier on to position [Baldoni's] truth / narrative . . . hinting that . . . [Baldoni] and Blake didn't always agree at times" and plant stories about the "weaponization of feminism and how people in BL's circle like Taylor Swift, have been accused of utilizing these tactics to 'bully' into getting what they want." Abel Decl., Ex. 10. On August 4, 2024, Abel wrote to Nathan ███

███████████████████████████████████████████████████

███ Tahler Decl., Ex. 6, JONESWORKS_00016237. Nathan responded, ███████

███████████████████████████████████████████████████

███████████████████████ *Id.* On August 5, 2024, Baldoni sent Abel social media content about "hailey bieber's history of bullying many women (not just selena gomez) throughout the years," and told Abel "This is what we would need." Abel Decl., Ex. 11. Abel responded that she "literally just spoke to Melissa about this on the break about what we discussed last night for social and digital." *Id.* On August 7, 2024, Abel wrote to Nathan that ██████████████████████████████████████████████ Tahler Decl., Ex. 7 (NATHAN_000003599). On January 3, 2025, Abel sent content creator and former Freedman client, ████████████████████████████████████████████████

██████████ Tahler Decl., Ex. 8 (NATHAN_000018774). Wayfarer co-founder and defendant Steve Sarowitz noted that he █████████████████████████████████████

Abel Decl., Ex. 6; Tahler Decl., Ex. 9, WAYFARER_000167841. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████  Abel Decl., Ex. 6; Tahler Decl., Ex. 10, ABEL_000019523; @officialsagesteele,

TikTok                (Jan.              7,              2025),

https://www.tiktok.com/@officialsagesteele/video/7457284296856866091.

84.    Abel never "boosted" or "amplified" any negative content about Plaintiff.
(Abel Decl., ¶ 46).

**RESPONSE:** Disputed. The August 2 Scenario Planning document noted TAG,
"[a]longside Jen Abel and her team," would "plant[] a seed earlier on to position [Baldoni's]
truth / narrative . . . hinting that . . . [Baldoni] and Blake didn't always agree at times" and plant
stories about the "weaponization of feminism and how people in BL's circle like Taylor Swift,
have been accused of utilizing these tactics to 'bully' into getting what they want." Abel Decl.,
Ex. 10; Abel Decl., Ex. 6.  The "social and digital mitigation and remediation" plan TAG
intended to implement with Wallace and Abel also included "[l]everag[ing] relationships with
Discord, Reddit, X, IG, TikTok, YouTube, etc. to expose behavior of Blake and other parties,
both current and past and engage directly with communities to adjust or influence the
conversations taking place in real time."  Abel Decl., Ex. 13; Abel Decl., Ex. 6.  On August 5,
2024, Baldoni sent Abel social media content about "hailey bieber's history of bullying many
women (not just selena gomez) throughout the years," and told Abel "This is what we would
need."  Abel Decl., Ex. 11.  Abel responded that she "literally just spoke to Melissa about this

on the break about what we discussed last night for social and digital." *Id.* On August 8, 2024,

██████████████████████████████████████████████████████████████

███████████████████████████ Abel Decl., Ex. 6; Abel Decl., Ex. 14.  On August 10, 2024,

Case told Heath, Nathan, Abel, and Koslow that "[w]e've also started to see a shift on social,

due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on

Blake and Ryan." Abel Decl., Ex. 6; Abel Decl., Ex. 16.  In that same thread, Abel circulated

a TikTok that had recent negative comments about Lively and instructed that it "would be great

for the digital team to boost this in any way possible." Abel Decl., Ex. 16.  Abel circulated

another TikTok about Lively's alleged "problematic on-set behavior" on the set of Gossip Girl

with the note: "I like that this is now getting some viral attention." *Id.* On August 13, 2024,

Baldoni sent TikToks to Abel and others, including one that criticized Lively's marketing of

the Film as insensitive to domestic violence survivors.  Abel Decl., Ex. 6; Abel Decl., Ex. 18.

Abel responded, "we have this and this is what the digital team is amplifying." Abel Decl.,

Ex. 18.  On August 18, 2024, Baldoni shared TikToks with Abel and others, including another

by an author who commented ████████████████████████████████████████████

████████████████████████████████████████████████████████████ Abel

Decl., Ex. 6; Abel Decl., Ex. 20.  Abel responded "Yes definitely let's boost these vids," to

which Koslow replied "Will let digital know!" Abel Decl., Ex. 20.  Also on August 18, 2024,

██████████████████████████████████████████████████████████████

███████████████████████████████████ Abel Decl., Ex. 6; Tahler Decl., Ex.

11 (BBKOSLOW-000005085).  Koslow responded ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████    Abel Decl., Ex. 6; Tahler Decl., Ex. 11

(BBKOSLOW-000005085).

85.    The pleading further alleges that Nathan, TAG and Abel "aided and abetted the discriminatory conduct of Defendants It Ends With Us Movie LLC, Wayfarer, Baldoni and Heath, including but not limited to by participating in the above-described coordinated 'astroturfing' campaign to discredit and 'bury' Ms. Lively." (Abel Decl., ¶ 27; Dkt. 520, ¶ 411).

**RESPONSE:** Undisputed.

86.    Abel denies Plaintiff's allegations. (Abel Decl., ¶ 27; Fritz Decl., Ex. A, ¶ 411).

**RESPONSE:** Partially disputed to the extent that Abel answered the allegations in paragraph 411 of Lively's complaint as follows: "the allegations [in paragraph 411] require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations." Fritz Decl., Ex. A, ¶ 411.

87.    In her Third Amended Responses and Objections to my Second Set of Interrogatories (the "Interrogatory Responses"), Plaintiff purports to identify the

███████████████████████████████████████████████████

███████████████████    (Abel Decl., ¶ 28; Abel Decl., Ex. 6).

**RESPONSE:** Partially disputed to the extent ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



██████████████ Abel Decl., Ex. 6 at No. 21.

88.    In her Interrogatory Responses, Plaintiff further alleges that Abel

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████████ (Abel

Decl., ¶ 29; Abel Decl., Ex. 6).

**RESPONSE:** Partially disputed to the extent █████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

Abel Decl., Ex. 6 at No. 22.

89.    As discussed above, the alleged conduct that forms the basis of Plaintiff's

Claims against Abel consists of public relations activities conducted on behalf of the Wayfarer

Clients as part of Abel's employment for Jonesworks and its clients. (Abel Decl., ¶ 30).

**RESPONSE:** Disputed. Abel's activities contributing or amounting to a digital smear

campaign as alleged by Lively in this action was not within the scope of Abel's employment

with Jonesworks or performed by Abel in her capacity as a Jonesworks employee.  Jones Decl.

¶¶ 44-49.  Abel's own expert report in this action acknowledges that ████████████

███████████████████████████████



Tahler Decl., Ex. 12 at 9

**<u>Jonesworks Knew of and Authorized Abel's Actions</u>**

90.    Abel denies any fault and/or responsibility for Plaintiff's Claims or the alleged loss or damage incurred by Plaintiff, because, *inter alia*, Abel undertook the actions while employed by and in the course of her employment for Jonesworks. (Abel Decl., ¶ 47).

**RESPONSE:** Undisputed that Abel claims she is "not at fault and bear no responsibility for Lively's Claims or the alleged loss or damage incurred by Lively" Abel Decl. ¶ 47. Disputed as to the merit of Abel's claim, which is the subject of this litigation.

91.    Abel did not take any of the actions at issue herein in pursuit of her own interest. (Abel Decl., ¶ 48).

**RESPONSE:** Disputed.   Abel did take the actions at issue in pursuit of her own personal and competitive interests:  Abel actively planned to poach Jonesworks clients, steal confidential documents, and undermine Jonesworks while still employed, including by collaborating with Nathan to plant a *Business Insider* "kill story" against Jonesworks and persuade Wayfarer and Baldoni to breach their contract and move their business to Abel and Nathan instead.  *See, e.g.*, Tahler Decl., Ex. 13 (JONESWORKS_MN_000000740); Ex. 14 (JONESWORKS_00013606)   Tahler Decl., Ex 15 (JONESWORKS_00016395) (Nathan telling Abel she said to Baldoni: "I'm just going to step out of line before I go to bed and tell you Jen is amazing.

She's so loyal she loves you so much and you have to go with her and he was like oh my God of course course I'm going with her," to which Abel responded "Hahahaha omg love you"); Abel Decl., Ex. 15 (Nathan texting Abel, "[a]nd you take this fucking client and never talk to [Jones] again I swear to God).

92.    Jonesworks knew of and foresaw Abel's actions because it directed her to render public relations services to the Wayfarer Clients. (Abel Decl., ¶ 49).

**RESPONSE:** Disputed. Jonesworks did not know of, foresee, or direct Abel's actions; in fact, Abel's conduct was directly contrary to what Jonesworks and Jones instructed her to do. Jones Decl. ¶¶ 18-20, 44-47. Jonesworks, including Jones herself, was purposefully excluded from Abel and TAG's crisis response in connection to *It Ends With Us* and misled about the work TAG would be doing for Wayfarer and Baldoni. Jones Decl. ¶¶ 25, 31, 35-36; Tahler Decl., Ex. 16 (JONESWORKS_00030156); Tahler Decl., Ex. 17 (JONESWORKS_WAYFARER_000004205) (Heath: "I don't like the idea that there is continued cannibalization from within the same side. Meaning 'Jonesworks' ie Stephanie, and the Crisis team. I only want us to be communicating with people who are working together and not the ones who are undermining others within our team. Stephanie is casing doubt and can have an affect like poison."); Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 218:18–219:10) (Heath's testifying that he "didn't want anyone" who was not "in our inner circle" such as Stephanie Jones handling press inquiries); Tahler Decl., Ex. 18 ██████████████ Tahler Decl., Ex. 19 ███████████████████████████████ ██████████████████████████

93.    Jonesworks had contracted with the Wayfarer Clients to perform, *inter alia*,

public relations services. (Abel Decl., ¶ 49; Abel Decl., Ex. 4).

**RESPONSE:** Partially disputed to the extent the public relations services Jonesworks contracted with the Wayfarer Clients to perform did not include any activities contributing or amounting to the digital smear campaign Abel, Nathan, and others engaged in against Lively on Baldoni's and Wayfarer's behalf as alleged by Lively in this action. Jones Decl. ¶¶ 7, 9-11, 47, 49.

94.    Jones knew that Abel was working with Baldoni on his press tour in connection with the premiere of the Film in late July/early August 2024, amid reports of strife between Baldoni and Plaintiff. (Abel Decl., ¶ 50).

**RESPONSE:** Undisputed.

95.    In a July 25, 2024 text message to Baldoni, Jones: ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████  (Abel Decl., ¶ 50; Abel Decl., Ex. 21).

**RESPONSE:** Undisputed.

96.    Jones also knew that other Jonesworks employees and Abel were handling press inquiries concerning alleged issues on the set of the Film. (Abel Decl., ¶ 52).

**RESPONSE:** Partially disputed to the meaning of "handling press inquiries," because Jones did not know—and in fact was deliberately excluded from—Abel's and TAG's pitching, seeding, planting, amplifying, and boosting, negative stories about Lively in support of their digital smear campaign as alleged by Lively in this action. Jones Decl. ¶¶ 32-33, 35-38, 44-47, 49.

97.    In fact, Abel communicated directly with Jones ████████████████████

████████████████████  (Abel Decl., Ex. 22).

**RESPONSE:** Partially disputed to the extent on August 5 and August 6, 2024, Abel and Jones had a text conversation in which they discussed, among other things, Baldoni's press.  Abel Decl., Ex. 22

98.    Jones instructed Abel to tell Baldoni that Abel was taking ████████████ ████████ (*Id*).

**RESPONSE:** Partially disputed to the extent this mischaracterizes the communications.  After Jones mentioned she █████████████████████████████████████████████ ██████████████   Jones responded ████████████████████████████████████████ █████████████████████████   Abel Decl., Ex. 22.

99.    On August 8, 2024, Jonesworks' Chief of Staff (Gordon Duren) ████████████ ████████████████████████████████████████████████████████████████ ██████████████████████   (Abel Decl., ¶ 52; Abel Decl., Ex. 24).

**RESPONSE:** Partially disputed to the extent █████████████████████████████ ████████████████████████████████████████████████████   and Abel responded to Durn and ████████████████████████████████████   Abel Decl., Ex. 24.

100.    Abel confirmed to Jones and ████████████████████████████████████████ ████████████████████████████████████████████   (*Id*).

**RESPONSE:** Disputed.  Abel does not specify ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████   *Id.*

101.    On August 9, 2024, Jones forwarded █████████████████████████████ ████████████████████████████████████████████████████████████████ ██████   (Abel Decl., ¶ 53; Abel Decl., Ex. 25).

**RESPONSE:** Undisputed.

102.    Again, Abel confirmed to Jones that ███████████████ (*Id*).

**RESPONSE:** Partially disputed to the extent ████████████████████

████████████████████████████████

████████████    Abel Decl., Ex. 25.

103.    On August 9, 2024, Jones forwarded a press inquiry concerning alleged on-set drama to the Jonesworks (internal) email distribution lists, and Jonesworks employee Matthew Mitchell confirmed that the inquiry would be handled. (Abel Decl., ¶ 54; Abel Decl., Ex. 26).

**RESPONSE:** Partially disputed to the extent Mitchell said "Will handle" but did not specify in what manner or by whom. Abel Decl., Ex. 26.

104.    Jones also knew that Jonesworks employees were monitoring social media activity concerning Baldoni and the Film, including online comments from Jenna Redfield. (Abel Decl., ¶ 51).

**RESPONSE:** Partially disputed to the extent Jones knew Jonesworks employees as of August 8, 2024, ████████████████████████

████████████████████████████████

████████████    Abel Decl., Ex. 23, but that Jones did not know that Abel or anyone else was engaged in activities contributing or amounting to the digital smear campaign as alleged by Lively in this action. Jones Decl. ¶¶ 9-11, 44-47, 49.

105.    For instance, in an August 8, 2024, email, a Jonesworks employee passed along information related to such social media monitoring to Jones. (Abel Decl., ¶ 51; Abel Decl., Ex. 23).

**RESPONSE:** Partially disputed to the extent that the cited email reflects only that, on

34

August 8, 2024, a Jonesworks employee passed along links reflecting ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████ Abel Decl., Ex. 23.  It

does not show that Jones was provided anything beyond publicly-available monitoring, nor

that she understood anyone—including Abel—to be engaged in activities contributing or

amounting to a digital smear campaign as alleged by Lively in this action.  *Id.*; Jones Decl. ¶¶

9-11, 44-47, 49.

106.    Abel's alleged actions were consistent with how Jonesworks rendered public

relations services.  (Abel Decl., ¶ 55).

**RESPONSE:** Disputed. The public relations services Jonesworks renders and has

rendered do not and have never included activities contributing or amounting to a digital smear

campaign, including that aids and abets discriminatory conduct or is in retaliation for raising

concerns of inappropriate behavior or sexual harassment, which is the conduct alleged by

Lively in this action.  Jones Decl. ¶¶ 7, 11, 18-20, 47-49.  Abel's own expert report in this

action acknowledges that ████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████    Tahler Decl., Ex. 12 at 9 ███████████████████████

107.    In an August 9, 2024, text message, ████████████████████████████

███████████████████████████████████████████████████████████████

████████████    and that he ██████████████████████████████ (Abel Decl., ¶ 55; Abel

35

Decl., Ex. 27).

**RESPONSE:** Undisputed.

108. ███████████████████████████████████████████████

██████████████████ (*Id*).

**RESPONSE:** Partially disputed to the extent Jones said: ████████████████

██████████████ Abel Decl., Ex. 27.

109.    In an August 14, 2024, email to Heath, Jones referred to herself as "a key member of both Justin's and Wayfarer's account" and "a keyman on Justin's account." (Abel Decl., ¶ 56; Abel Decl., Ex. 28).

**RESPONSE:** Undisputed.

110.    In the August 14, 2024 email chain (Abel Decl., Ex. 28), Jones provided the Wayfarer Clients with Jonesworks' "recommended strategy" for dealing with the publicity crisis: (1) "Flood the Zone with Positives" – "ensure that we promote positive narratives that media outlets cannot ignore" and because "[c]urrently, most stories are heavily biased towards Blake's perspective" it is "crucial" that "we fight for every inch of every story"; and (2) "Prepare Alternative Stories" – "mobilize a robust network of supporters and third-party advocates ready to counter these narratives on deep background as well as some on the record, making it clear that the claims being made are untrue and unfounded." (*Id*).

**RESPONSE:** Undisputed.

111.    Jones states in the August 14, 2024, email chain (Abel Decl., Ex. 28) that she has "successfully managed every crisis for Justin without any negative press coming to light." (*Id*).

**RESPONSE:** Undisputed.

112.    Jones also knew that Wayfarer had retained TAG to assist Jonesworks with crisis management. (Abel Decl., ¶ 57; Abel Decl., Ex. 29; Fritz Decl., Ex. C at 88:3-89:3).

**RESPONSE:** Disputed. Jones did not know that Wayfarer had retained TAG to "assist Jonesworks," nor did she foresee or approve the work Nathan and TAG were doing, because Wayfarer and Abel repeatedly misled and lied to Jones from the outset about hiring Nathan and about the scope of work he and TAG would be performing. Jones Decl. ¶¶ 31-38; Tahler Decl., Ex. 20 (KCASE-000000585) (Abel telling then-TAG employee Case to send the scope of work to her RWA email address, not her Jonesworks email address, and that she was "going to have Tera [Hanks] call Steph and let her know"); Tahler Decl., Ex. 21 (BBKOSLOW-000002816) ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ Tahler Decl., Ex. 16 (JONESWORKS_00030156); Tahler Decl., Ex. 22 (JONESWORKS_00015108).

Moreover, Wayfarer did not hire TAG to "assist Jonesworks" ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████ Tahler Decl., Ex. 23 (9/25/25 Abel Dep. Tr. at 56:17–57:4); Fritz Decl., Ex. A (ECF No. 154, Abel's Third-Party Complaint ¶ 28); Tahler Decl., Ex. 24 at 3-4 (WAYFARER_000141577); Tahler Decl., Ex. 2 at 3 (KCASE-000005118); Tahler Decl., Ex. 20 (KCASE-000000585); Tahler Decl., Ex. 25 (BBKOSLOW-000008776); Tahler Decl., Ex. 26 (JONESWORKS_00016275) ██████████████████████

████ Tahler Decl., Ex. 27 (JONESWORKS_MN_0000022208); Tahler Decl., Ex. 28 (NATHAN_000000141) ████████████

████████

113.   After Abel's employment ended on August 21, 2024, ████████ ████████████ (*Id.*; Fritz Decl., Ex. C at 76:20-77:7).

**RESPONSE:** Disputed. Jones did not participate in and at all times was deliberately excluded from Wayfarer and Baldoni's crisis efforts with TAG. In fact, Heath testified that Jones was "never [] involved" in the work Wayfarer was doing with TAG. Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. 229:11–14); *see also id.* at 218:18–219:10.   To the contrary, Jones ██

████████████████████████

████████████████████████

████████████ Tahler Decl., Ex. 29 (HANKS_000000054). Although Wayfarer did not purport to terminate its agreement with Jonesworks until August "30th or 31st of 2024," Fritz Decl., Ex. C at 76:20-77:7, it continued its work with Abel and TAG after Abel's termination on August 21 without pause, Tahler Decl., Ex. 30 (JONESWORKS_JA_000000254) ████████████████

████████████

## **JONESWORKS LLC'S COUNTERSTATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, third-party Defendant Jonesworks LLC ("Jonesworks") respectfully submits this Counterstatement of Material Facts, without admitting that any of third-party Plaintiff Jennifer Abel's statements are material.

### I.   BACKGROUND

#### A.   Jonesworks' Relationship With Justin Baldoni And Wayfarer Studios

1.      Jonesworks is an award-winning PR agency that provides positive, bespoke PR services to its clients.  Jones Decl. ¶¶ 3-4.

2.      Jonesworks began providing personal publicity to Baldoni in 2017.  Jones Decl. ¶ 5.

3.      On or about May 6, 2020, Jonesworks and Wayfarer entered into a written agreement on Jonesworks letterhead.  Abel Decl., Ex. 4.

4.      At Wayfarer's request, Jonesworks "bundled" Baldoni's personal publicity services into its agreement with Wayfarer. Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 52:11–53:10, 54:2–10);  Tahler Decl., Ex. 31 (JONESWORKS_00041594);  Tahler Decl., Ex. 32 (JONESWORKS_00039065).

5.      Jonesworks thereafter "issued a single invoice to Wayfarer" each month for $25,000, which "encompassed" both the $20,000 fee for services for Wayfarer and $5,000 for Baldoni's personal publicity services. Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 52:11–53:10, 54:2–10);  Tahler  Decl.,  Ex.  31  (JONESWORKS_00041594);  Tahler  Decl.,  Ex.  32 (JONESWORKS_00039065).

6.      Jonesworks was retained to promote Baldoni and his projects through positive publicity, including by creating communications materials such as biographies and press releases, supporting Baldoni's promotional activities and philanthropy, and securing press coverage to promote his work as an actor and director. Jones Decl. ¶ 6. Jonesworks also supported Baldoni's and Wayfarer's upcoming projects, pitched stories to promote Baldoni and Wayfarer as well as their projects to earned media, such as magazines, and provided talking points for use with the press. Jones Decl. ¶ 9. Jonesworks also collected and collated links to press coverage of Wayfarer and Baldoni to share with them.  Jones Decl. ¶ 10.

7.     The work Jonesworks did for Baldoni and Wayfarer under their agreement at no time included seeding, planting, or promoting negative stories about individuals in disputes with Baldoni or Wayfarer.  Jones Decl. ¶¶ 7, 11.  Nor did Jonesworks influence conversations about Baldoni or Wayfarer occurring on social media through false or paid for accounts or comments, or otherwise engage in social media manipulation.  *Id.*

8.     The personal publicity that Jonesworks was retained to perform on behalf of Baldoni and Wayfarer did not include any activities contributing or amounting to the digital smear campaign Abel, Nathan, and others are alleged by Lively to have engaged in against Lively on Baldoni's and Wayfarer's behalf.  Jones Decl. ¶¶ 7, 10-11, 47, 49.

9.     Jonesworks occasionally assisted Baldoni with matters that he considered to be a "crisis," but Jonesworks—whose ethos centers on positive publicity—did not provide what is commonly referred to in the PR industry as "crisis PR" because Jonesworks is not a "crisis PR" firm.  Jones Decl. ¶ 12.

10.    Rather, Jonesworks was retained to engage in proactive positive press—not to seed or promote negative stories or manipulate social media.  Jones Decl. ¶¶ 7-11.

11.    Around May 2025, Jonesworks began providing additional social media services to Wayfarer and Baldoni on a three-month trial basis.  Jones Decl. ¶ 13.  Under that trial, Jonesworks helped Baldoni brainstorm ideas for social posts, post approved content for him, and record video in connection with those social media posts.  Jones Decl. ¶ 13.  Jonesworks did not take any steps to manipulate social media conversations or coverage, and such conduct was not within the scope of the trial.  Jones Decl. ¶ 13.

12.    Wayfarer ended the trial on July 31, 2024.  Jones Decl. ¶ 14.

**B.     Jonesworks' Relationship With Jennifer Abel And Melissa Nathan**

13.      On July 9, 2020, Abel and Jonesworks executed an offer letter establishing Abel's compensation and a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement ("Abel NDA").  Abel Decl., Exs 1, 2.

14.      The Abel NDA obligates her to: (a) maintain the confidentiality of Jonesworks' proprietary and confidential information; (b) acknowledge that all work product created in connection with her engagement constitutes the exclusive property of Jonesworks; (c) refrain from preparing or publishing any articles or materials involving Jonesworks without prior written authorization; and (d) refrain from engaging in any form of disparagement regarding Jonesworks. Abel Decl., Ex. 2.

15.      Abel was subsequently promoted to Partner and, on November 22, 2021, executed a new Employment Agreement reaffirming her obligations to protect Jonesworks' proprietary information, acknowledging that all related work product is the exclusive property of Jonesworks, and imposing non-competition, non-solicitation, and fiduciary duty obligations. Abel Decl., Ex. 3.

16.      When Abel was hired at Jonesworks, she was instructed to carry out the duties of a competent PR professional, which include supporting the positioning of her clients in an ethical, lawful, and responsible manner.  Jones Decl. ¶ 17.  For example, Abel was expected to guide her clients as they interacted with the press, but Abel was not expected to, was never instructed to, and was prohibited from manipulating social media conversations to attack a non-client on behalf of Jonesworks' clients or pitch, seed, or promote negative false stories about a non-client who had complained of misconduct against her client.  *Id*.

17.      As a PR professional with over a decade of experience, Abel understood when she joined Jonesworks that she was employed to engage in proactive positive press to help build her

clients' brand and promote their projects and partnership, and that her duties did not include promoting negative coverage. Jones Decl. ¶ 17.

18.     Abel was never instructed to and was prohibited from engaging or participating in conduct that could be considered harassment, discrimination, or retaliation in violation of state or federal laws or aiding and abetting harassment, discrimination, or retaliation in violation of state and federal laws. Jones Decl. ¶ 18.

19.     Abel was never instructed to and was prohibited from engaging or participating in any conduct that would amount to "astroturfing," or the manufacturing of grassroots support of or opposition to a message or person orchestrated through fake or paid for social-media accounts or engagement and coordinated disinformation to manufacture what appears to be an organic consensus response. Jones Decl. ¶ 19.

20.     Jonesworks, as a company, does not engage in these activities, and its employees understand that such activities are prohibited based on Jonesworks' ethics, course of conduct and expectations, as well as the industry standard expectations that garnering positive publicity to promote clients' projects and partnerships does not include promoting negative content. Jones Decl. ¶ 20. As a seasoned PR executive who worked at Jonesworks for more than four years, Abel knew that. *Id.* Abel also knew, through her work and interactions at Jonesworks, that Jonesworks and Jones did not engage in or approve of the kind of "crisis PR" activities Jones had observed and reflected upon from Melissa Nathan. *Id.*

21.     Nathan is the founder and Chief Executive Officer of The Agency Group PR LLC ("TAG"), a crisis public-relations firm she established as a joint venture with Hybe Inc. in or about December 2023 to January 2024. Tahler Decl., Ex. 33 (9/29/25 Nathan Dep. Tr. 72:12–14; 74:21-75:8).

22.    Stephanie Jones first met Nathan in approximately 2014 or 2015, when Nathan was

employed ████████████████████████████████████████████████████████████████████

Tahler Decl., Ex. 34 (Jones Dep. Tr. 45:9-25; 48:10-24).

23.    Jones and Nathan initially maintained a positive professional relationship, and

████████████████████████████████████████████████████ Tahler Decl., Ex. 34 (Jones Dep.

Tr. 48:10–14); Tahler Decl., Ex. 35 (9/30/25 Nathan Dep. Tr. 74:22–24).

24.    That changed, however, around 2023, after Jones personally experienced Nathan

engage in what she considered unethical behavior in support of a mutual client.  Jones Decl. ¶ 27.

████████████████████████████████████████████████████████████████████

███████████████████████ Tahler Decl., Ex. 34 (Jones Dep. Tr. at 48:10–14); Jones Decl. ¶ 27.

25.    After this incident, Jones ceased referring clients to Nathan, and Nathan began

expressing significant hostility toward Jones, particularly concerning shared clients.  Jones Decl.

¶ 27.

26.    For example, on December 1, 2023, Nathan referred to Jones as ██████████████

████████████████  Tahler Decl., Ex. 36  (NATHAN_000002649).

27.    On  March  20,  2024,  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ Tahler Decl., Ex. 33 (9/29/25 Nathan Dep. Tr. 117:15-

118:6) █████████████████████████████████ In that exchange, █████████████

████████████████████████████████████████████████████████████████ Tahler

Decl., Ex. 37 (NATHAN_000002390). ████████████████████████

████████████████████████ *Id.*

28. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Tahler Decl., Ex. 36

(NATHAN_000002649) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Tahler Decl., Ex. 38

(NATHAN_000001746); Tahler Decl., Ex. 39 (NATHAN_000002842); Tahler Decl., Ex. 40

(NATHAN_000002828) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

29. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉ Tahler Decl., Ex. 41 ("Who's Afraid of Stephanie Jones?" article); Tahler

Decl., Ex. 42 (NATHAN_000001180) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

30. Nathan and the former Jonesworks employee discussed ▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Tahler Decl., Ex.

43 (KCASE-000004949); Tahler Decl., Ex. 18 (Case Dep. Tr. 366:2–11).

31. Abel also contributed to that Business Insider article. Tahler Decl., Ex. 23 (9/25/25

Abel Dep. Tr. at 237:7-14); Tahler Decl., Ex. 14 (JONESWORKS_00013606) ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

32. In July 2024, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Tahler Decl.,

Ex. 23 (9/25/25 Abel Dep. Tr. at 237:7-14); Tahler Decl., Ex. 44 (JONESWORKS_00041875).

33. On July 29, 2024, Abel and Nathan discussed the forthcoming article, with Abel

asking Nathan if she had yet spoken with "Katie [Warren][,] … [t]he journo" writing the story.

Tahler Decl., Ex. 45 (JONESWORKS_00037451). Abel and Nathan later joked that article would

be a "KILL STORY" about Jones. Tahler Decl., Ex. 13 (JONESWORKS_MN_000000740).

34. On July 30, 2024, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

████████████████████████████████████    Tahler  Decl.,  Ex.  46

(JONESWORKS_00037494).

## II.    ABEL AND TAG ENGAGE IN A DIGITAL SMEAR CAMPAIGN AGAINST LIVELY

### A.    Wayfarer Hires Melissa Nathan And TAG At Abel's Recommendation, Over Jones's Objection, And Behind Jones's Back

35.    In late July and early August 2024, as rumors regarding Baldoni and cast members escalated ahead of the Film's early-August premiere, Abel recommended that Wayfarer retain crisis-management PR support.  Jones Decl. ¶ 21; Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 131:11–17); *see also id.* at 127:18–22; Tahler Decl., Ex. 23 (9/25/25 Abel Dep. Tr. at 145:13–14); Abel Decl., Ex. 7.

36.    Abel told Jones that █████████████████████████████████████████

████████████████████████████████████████    Jones Decl. ¶ 22;

Abel Decl., Ex. 7.

37.    Jones provided recommendations for crisis PR services to Wayfarer.  Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 168:11–13) (testifying he "know[s] that we got some recommendations from Stephanie Jones"); Tahler Decl., Ex. 47 (Deposition of Tera Hanks ("Hanks Dep. Tr.") at 58:20–21 ██████████████████████████████    Tahler Decl., Ex. 48 (HANKS_000000016) ████████████████████████████████

████████████████████████████████████

38.    Jones did not recommend Nathan or TAG to Wayfarer, because as Abel knew, Jones did not approve of or endorse certain of the "crisis PR" tactics and activities that Jones understood Nathan to engage in.  Jones Decl. ¶ 23; Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 168:14–21) ("Q. Okay. And Melissa Nathan was not on Stephanie Jones' list of recommendations to you for crisis communications, right?  A She was not.  Q You were aware that Stephanie Jones

expressly warned you that you should not hire Melissa Nathan for this role, correct?  A I was aware.").

39.    Despite knowing that Jones distrusted Nathan and did not want Jonesworks to work with her, ███████████████████████████████████████████████████████████
███████████████████████ Tahler Decl., Ex. 23 (9/25/25 Abel. Dep. Tr. at 146:21–147:2, 150:17–24); Tahler Decl., Ex. 49 (9/26/25 Abel Dep. Tr. at 228:15–19); Tahler Decl., Ex. 25 at 2 (BBKOSLOW-000008776) ("the wayfarer studios scope … was brought to [Nathan] specifically by Jen Abel"); Tahler Decl., Ex. 50 (Koslow Dep. Tr. at 19:3–8) ████████████████████
█████████████████████████████████████████████████████████████████████
██████████████████████

40.    Nathan ███████████████████████████████████████ Tahler Decl., Ex. 51 (JONESWORKS_WAYFARER_000003747); Tahler Decl., Ex. 33 (9/29/25 Nathan Dep. Tr. at 93:17–94:2).

41.    ████████████████████████████████████████████████████
██████████████████████████████████ Tahler Decl., Ex. 33 (9/29/25 Nathan Dep. Tr. at 91:2–7).

42.    On July 26, 2024, Wayfarer's President Tera Hanks told Jones ██████████████
██████████ Tahler Decl., Ex. 52 (JONESWORKS_WAYFARER_000004651).  Jones asked ██
██████████████████████ *Id.*  Hanks told Jones ██████████████████████████████
████████████████ *Id.*

43.    Jones immediately cautioned Wayfarer against hiring Nathan.  *E.g.*, Tahler Decl., Ex. 3 (JONESWORKS_JB_000001142).

44.    Jones told Baldoni, Heath, and Hanks

Tahler Decl., Ex. 34 (Jones Dep. Tr.

at 89:16–20).

45.    Jones cautioned Baldoni, in particular, that she was worried not only about Nathan but the people Nathan works with.  Jones Decl. ¶ 28.

46.    On that same day, Jones also warned Wayfarer that Baldoni's image would suffer by association with a publicist like Nathan.  Tahler Decl., Ex. 3 (JONESWORKS_JB_000001142) (Jones warning Baldoni and Heath that Nathan was "not someone we would want in justin's orb. or for blake's PR to use as weapon against him"); Tahler Decl., Ex. 5 (10/6/25 Baldoni Dep. Tr. at 136:24–137:25, 147:3–8) ("Q Okay. Do you understand from this text message that Stephanie is telling you and Jamey and Tera that it might not be good for you to be associated with someone like Melissa Nathan based on the type of tactics that she has used in the past? A That seems to be an accurate summary.").[1]

47.    Jones further told Hanks and Heath

Tahler Decl., Ex. 34 (Jones Dep. Tr. at 91:14-16; 93:19-94:6).

48.    Heath, Hanks, and Baldoni each knew that Jones thought Nathan used underhanded "dirty" PR tactics that would blow back on Baldoni.    E.g., Tahler Decl., Ex. 3 (JONESWORKS_JB_000001142); Tahler Decl., Ex. 47 (Hanks Dep. Tr. at 66:1–10, 80:15–23)

---

[1]  In fact, a story was subsequently published in The Hollywood Reporter disclosing that Baldoni had retained Nathan, and referencing TAG's connection to Johnny Depp, which Baldoni found upsetting. Ex. 5 (10/6/25 Baldoni Dep. Tr. at 148:5-183:15.  Nathan's friend

Tahler Decl., Ex. 53 (Nathan_000001221).

████████████████████████████████████████████

Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 168:14–21) ("Q. Okay. And Melissa Nathan was

not on Stephanie Jones' list of recommendations to you for crisis communications, right? A She

was not. Q You were aware that Stephanie Jones expressly warned you that you should not hire

Melissa Nathan for this role, correct? A I was aware."); Tahler Decl., Ex. 4 (10/9/25 Heath Dep.

Tr. at 169:4–6) ("At some point, yes, [Jones] had said she didn't think [Nathan] was the right fit

because she thought she was shady.").

49.    Wayfarer interviewed only Nathan and spoke to none of the agencies Jones

recommended.  Tahler Decl., Ex. 47 (Hanks Dep. Tr. at 57:11–17, 59:1–3) ████████████

████████████████████████████████████████████

████████████████████████████████████████  Tahler Decl., Ex. 4 (10/9/25

Heath Dep. at 167:18–25) ("Q. Did you personally speak with Melissa Nathan or anyone from

TAG before you decided to hire them? A. I did. Q. Did you personally speak with or interview any

other crisis communications professional? A. I did not.").

50.    Wayfarer ultimately hired Nathan over Jones's objections and against her advice.

Tahler Decl., Ex. 5 (10/6/25 Baldoni Dep. Tr. at 137:18–21, 140:1–4, 147:3–148:3) (admitting

Baldoni and Wayfarer hired Nathan "despite Stephanie Jones's warnings" and "over Stephanie

Jones'[s] objections"); Tahler Decl., Ex. 54 (HANKS_0000000014); Tahler Decl., Ex. 4 (10/9/25

Heath Dep. Tr. at 168:18-21) ("Q You were aware that Stephanie Jones expressly warned you that

you should not hire Melissa Nathan for this role, correct? A I was aware.").

**B.    TAG Was Hired To Work With Abel After She Left Jonesworks**

51.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Tahler Decl., Ex. 23 (9/25/25 Abel Dep. Tr. at 56:17–57:4); Fritz Decl., Ex. A (ECF No. 154, Abel's Third-Party Complaint ¶ 28) (Abel "communicated her intent to start her own business" on July 26, 2024); Abel Decl. ¶ 34; Abel Decl., Ex. 10  (August 2 scenario planning document specifying TAG would work "alongside Jen Abel and her team"); Tahler Decl., Ex. 2 at 3 (KCASE-000005118) (TAG employees discussing how they "thought this was Jen on her own already coming to us for help").

52.    Abel pitched the Wayfarer account to TAG as something Nathan and Abel could work on together after she left Jonesworks.  Tahler Decl., Ex. 25 (BBKOSLOW-000008781) ("Oh my God Jen Jonesworks just called me[.] She wants to give us quite a major piece of business[.] Something that you me and her would work on[.] Justin Baldoni crisis and his studio or something[.] She's leaving Jonesworks in three weeks[.]"); Tahler Decl., Ex. 35 (9/30/25 Nathan Dep. Tr. at 334:10-16) ███████████████████ Tahler Decl., Ex. 26 (JONESWORKS_00016275) (Nathan telling Abel to "take this fucking client and never talk to her again I swear to God"); Tahler Decl., Ex. 45 (JONESWORKS_00037451) (Nathan message to Abel saying: "And once you are gone, we will be on accounts together and make really good money and be happy."); Tahler Decl., Ex. 28 (NATHAN_000000141) ███████████ ███████████████████

53.    On July 26, 2024, Abel instructed a TAG employee to send the TAG scope of work to her RWA email address instead of her Jonesworks email address.  Tahler Decl., Ex. 20 (KCASE-000000585).  In those messages, Abel noted she was "going to have Tera [Hanks] call Steph and let her know" so they could move forward "above board."  *Id.*

54.    The August 2 Scenario Planning document also noted that TAG would be working "[a]longside Jen Abel and her team," not Jonesworks.  Abel Decl., Ex. 10.  Jones did not review or discuss the Scenario Planning document until this litigation.  Jones Decl. ¶ 35.

55.    Abel and Nathan sought to replace Jones as Wayfarer's representatives and work on the account together after Abel's departure.  Tahler Decl., Ex. 28 (NATHAN_000000141)

███████████████████████████████████████████████  Tahler Decl., Ex. 26 (JONESWORKS_00016275) (Nathan telling Abel to "take this fucking client and never talk to her again I swear to God"); Tahler Decl., Ex. 45 (JONESWORKS_00037451) (Nathan message to Abel saying: "And once you are gone, we will be on accounts together and make really good money and be happy.").

56.    Jones also was excluded from TAG's onboarding process and misled about the scope of work TAG would be performing for Wayfarer.  *E.g.*, Tahler Decl., Ex. 50 (Koslow Dep. Tr. at 23:8-24:2) ███████████████████████████████████████████

███████████████████████  Tahler Decl., Ex. 16 (JONESWORKS_00030156).

57.    On July 30, 2024, Hanks and Abel discussed telling Jones that Nathan would be

██████████████████████████████████████████████████

███████████████████████  Tahler Decl., Ex. 16 (JONESWORKS_00030156); ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████

58.    But TAG's Scenario Planning document with Wayfarer planned for TAG to "manage media inquiries on background as sources familiar" and "respond to media," which TAG

did. Tahler Decl., Ex. 33 (9/29/25 Nathan Dep. Tr. at 116:5-15, 123:13-124:8); Tahler Decl., Ex. 6 (JONESWORKS_00016237) (August 4, 2024 message from Nathan to Abel [REDACTED] Tahler Decl., Ex. 56 (NATHAN_000002730) (August 15, 2024 messages between [REDACTED]

### C. Abel Engaged In The Digital Smear Campaign Against Lively While Jones Was Excluded

59. In connection with Baldoni and Wayfarer's engagement of Nathan and TAG and the crisis response in connection to *It Ends With Us*, Nathan, TAG, Baldoni, and Wayfarer worked only with Abel from Jonesworks, and to a limited extent [REDACTED] Tahler Decl., Ex. 57 (NATHAN_000005497) [REDACTED] Tahler Decl., Ex. 58 (JONESWORKS_00013196) [REDACTED] Tahler Decl., Ex. 59 (SR 1.00000003) [REDACTED] Tahler Decl., Ex. 47 (Hanks Dep. Tr. at 88:13–17) [REDACTED] *id.* at 120:13–17 [REDACTED] Tahler Decl., Ex. 60 (JONESWORKS_MN_000000769); Tahler Decl., Ex. 17 (JONESWORKS_WAYFARER_000004205); Tahler Decl., Ex. 61 (JONESWORKS_MN_000000309); Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 218:18–219:10).

60. At the same time Abel and Nathan were engaged in the activities alleged by Lively, they were trying to poach Mitchell from Jonesworks to join TAG to continue working on the

Wayfarer account with Abel and Nathan after Abel left Jonesworks.  Tahler Decl., Ex. 60
(JONESWORKS_MN_000000769).  On August 14, 2024, Nathan told Abel ██████████████████
████████████████████████  *Id.*  Abel responded, ██████████████████████████████████████
████████████████████████████████████████████████████████████  *Id.*

61.    The rest of Jonesworks, including Jones and all other Jonesworks employees other
than Abel and Mitchell, was excluded from Abel and TAG's crisis response in connection to *It
Ends With Us*.    Tahler Decl., Ex. 17 (JONESWORKS_WAYFARER_000004205) (Heath: "I
don't like the idea that there is continued cannibalization from within the same side. Meaning
'Jonesworks' ie Stephanie, and the Crisis team. I only want us to be communicating with people
who are working together and not the ones who are undermining others within our team. Stephanie
is casting doubt and can have an affect like poison."); Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr.
at 218:18–219:10) (Heath's testifying that he "didn't want anyone" who was not "in our inner
circle" such as Stephanie Jones handling press inquiries).

62.    The planning and execution of the smear campaign took place in communications
that excluded Jones.  Jones Decl. ¶¶ 32, 36, 44-47; *see also, e.g.*, Abel Decl., Exs. 9, 11, 13, 14,
16; Tahler Decl., Ex. 62 (NATHAN_000005552).

63.    For example, on July 31, 2024, Abel sent Wayfarer executives a message that she
spoke to a journalist "friend of 12+ years" who was "armed and ready to take this story of Blake
weaponizing feminism to any of her outlets," and that she would "connect her [friend] to Melissa
tomorrow."  Abel Decl., Ex. 9.

64.    The August 2 Scenario Planning Document noted TAG and Abel would "plant[] a
seed earlier on to position [Baldoni's] truth / narrative …. hinting that …. [Baldoni] and Blake
didn't always agree at times" and plant stories about the "weaponization of feminism and how

people in BL's circle like Taylor Swift, have been accused of utilizing these tactics to 'bully' into getting what they want." Abel Decl., Ex. 10.

65.     On August 2, 2024, Baldoni shared with Abel, but not Jonesworks, that  Tahler Decl., Ex. 63 (JONESWORKS_00015491).

66.     Abel promptly shared that sentiment with Nathan, but never Jonesworks, telling Nathan that Baldoni wanted to feel like Blake could be "buried."    Tahler Decl., Ex. 62 (NATHAN_000005552).  Nathan responded, "Of course- but you know when we send over documents we can't send over the work we will or could do because that could get us in a lot of trouble." *Id.* Nathan also said, "We can't write it down to him…We can't write we will destroy her. We will go to this. We will do this. We will do this." and later added "you know we can bury anyone [b]ut I can't write that to him I will, I'll be very tough." *Id.*

67.     On August 4, 2024, Abel wrote to Nathan, but not Jones,

Tahler Decl.,

Ex. 6 (JONESWORKS_00016237).  Nathan responded,

*Id.*

68.     On August 5, 2024, Baldoni sent Abel, but not Jones, social media content about "hailey bieber's history of bullying many women (not just selena gomez) throughout the years," and told Abel "This is what we would need." Abel Decl., Ex. 11. Abel responded that she "literally just spoke to Melissa about this on the break about what we discussed last night for social and digital." *Id.*

69.    Also on August 5, 2024, Nathan sent Health and Abel—but not Jones or anyone

else from Jonesworks— ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████            Tahler Decl., Ex. 58

(JONESWORKS_00013196).

70.    Nathan ultimately recommended Wayfarer hire Jed Wallace and his team Street

Relations, which recommendation Abel agreed.  Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr.

204:6-11); Tahler Decl., Ex. 64 (10/8/25 Heath Dep. Tr. 332:19-333:4).

71.    Jones did not know of or participate in that decision.  Tahler Decl., Ex. 65

(JONESWORKS_MN_000001216); Tahler Decl., Ex. 66 (WAYFARER_000131365); Jones

Decl. ¶ 36.

72.    On August 7, 2024, Abel told Nathan ████████████████████████

████████████████            Tahler Decl., Ex. 7 (NATHAN_000003599).  Nathan responded

"So do I."  *Id.*

73.    Also on August 7, 2024, TAG sent Heath and Abel—but not Jones or anyone else

from Jonesworks—the "specifics" on the "social and digital mitigation and remediation" plan they

would pursue with Wallace.  Abel Decl., Ex. 13.  That plan anticipated working "work in

conjunction with Jen and her team, as well as TAG PR," not Jonesworks, to "directly influenc[e]

forums that are working against Justin and Wayfarer to adjust the narrative in real time …

execut[ing] all without fingerprints."  *Id.*

74.    The "social and digital mitigation and remediation" plan TAG intended to

implement with Wallace and Abel also included "[l]everag[ing] relationships with Discord,

Reddit, X, IG, TikTok, YouTube, etc. to expose behavior of Blake and other parties, both current

and past and engage directly with communities to adjust or influence the conversations taking place in real time." *Id.*

75.    On August 8-9, 2024, TAG introduced Wallace directly to Abel—not to Jones— stating ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Tahler Decl., Ex. 67 (SR 1.00000005); Tahler Decl., Ex. 68 (SR 1.00000007); Tahler Decl., Ex. 69 (SR 1.00000027).

76.    On August 8, 2024, Abel flagged social media content to TAG that stated, ████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████ Abel Decl., Ex. 6; Abel Decl., Ex. 14.  TAG in turn ████████

████████████████████████████████ Abel Decl., Ex. 6; Abel Decl., Ex. 14.

77.    On August 9, 2024, in reviewing certain media materials pertaining to Lively and Baldoni, Abel told Nathan she could "tell [Nathan had] done a lot of work" to keep references to Lively "being unsafe. Fat comments. Sexual." out of the press.  Abel Decl., Ex. 15.  Nathan responded with a message from Jed Wallace that "we are crushing it on Reddit" and "[w]eve [sic] confused people[.] So much mixed messaging[.]  It's actually really funny if you think about it." *Id.* Further in these messages, Nathan said to Abel, "[a]nd you take this fucking client and never talk to [Jones] again I swear to God." *Id.*

78.    On August 10, 2024, Case told Heath, Nathan, Abel, and Koslow that "[w]e've also started to see a shift on social, due largely to Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan."  Abel Decl., Ex. 6; Abel Decl., Ex. 16.  In that same thread,

Abel also circulated a TikTok that had recent negative comments about Lively and instructed that it "would be great for the digital team to boost this in any way possible." Abel Decl., Ex. 16. Abel circulated another TikTok about Lively's alleged "problematic on-set behavior" on the set of Gossip Girl with the note: "I like that this is now getting some viral attention." Abel Decl., Ex. 16; Abel Decl., Ex. 6.

79.    On August 13, 2024, Baldoni sent TikToks to Abel and others, including one that criticized Lively's marketing of the Film as insensitive to domestic violence survivors. Abel Decl., Ex. 6; Abel Decl., Ex. 18. Abel responded, "we have this and this is what the digital team is amplifying." Abel Decl., Ex. 18.

80.    On August 18, 2024, Baldoni shared TikToks with Abel and others, including another by an author who commented "I am flabbergasted that with the huge audience that Blake Lively has and all of the press interviews she's had she doesn't once talk about DV." Abel Decl., Ex. 6; Abel Decl., Ex. 20. Koslow responded "Will let digital know!" and Abel responded "Yes definitely let's boost these vids."" Abel Decl., Ex. 20

81.    Also on August 18, 2024,



Abel Decl., Ex. 6; Tahler Decl., Ex. 11 (BBKOSLOW-000005085). Koslow responded TAG would

Abel Decl., Ex. 6; Tahler Decl., Ex. 11 (BBKOSLOW-000005085).

82.      Jones was actively excluded from this effort.  *E.g.*, Jones Decl, 32, 36, 38; Tahler

Decl., Ex. 4 (10/9/25 Heath Dep. Tr. 229:11–14); Tahler Decl., Ex. 70 (ABEL_000002843); Tahler

Decl., Ex. 17 (JONESWORKS_WAYFARER_000004205).

83.      Heath testified on Wayfarer's behalf that Jones had "never been involved" in the

crisis response.  Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. 229:11–14) ("Q: What I'm essentially

asking is, after you told [Jones] to stand down, did you later, like loop her back onto the team and

get her involve[d], or no? A: As I said, she's never been involved.").

84.      TAG employee Katie Case and Jed Wallace similarly testified that they never spoke

with Jones while working for Wayfarer.  Tahler Decl., Ex. 18 (Case Dep. Tr. at 408:12–14) █████

████████████████████████████████████████████  Tahler Decl., Ex. 19 (10/10/25

Wallace Dep. Tr. at 118:3–119:8) ██████████████████████████████████████

██████████████████

85.      Indeed, after Wayfarer was told falsely that Jones had spoken to the press about

Baldoni in or around August 8, 2024, ████████████████████████████████████

███████████████████████████████████████████████████████  Ex. 70

(ABEL_000002843) ███████████████████████████████████████████████

████████████  Jones Decl. ¶ 37.

86.      From that point forward, Heath was clear he wanted Wayfarer working only with

Nathan  and  Abel,  making  Jones's  exclusion  official.    Tahler  Decl.,  Ex.  17

(JONESWORKS_WAYFARER_000004205) (Heath: "I don't like the idea that there is continued

cannibalization from within the same side. Meaning 'Jonesworks' ie Stephanie, and the Crisis

team. I only want us to be communicating with people who are working together and not the ones

who are undermining others within our team. Stephanie is casing doubt and can have an affect like

poison."); Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 218:18–219:10) (Heath's testifying that he "didn't want anyone" who was not "in our inner circle" such as Stephanie Jones handling press inquiries).

87.    On August 8, 2024, Abel expressed her satisfaction to Nathan that Jones was being shut out, texting Nathan that ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████  Tahler Decl., Ex. 71 (JONESWORKS_MN_000000699).

88.    On August 14, 2024, Jones reaffirmed her support for Baldoni and Wayfarer and suggested Wayfarer "Flood the Zone with Positives," Abel Decl., Ex. 28, which is in line with Jonesworks' ethos of promoting positive stories about clients and their projects, Jones Decl. ¶ 38.



███████████  Tahler Decl., Ex. 72 (JONESWORKS_00006586); Tahler Decl., Ex. 73 (JONESWORKS_00006593).

## III.    ABEL ACTED IN HER OWN SELF INTEREST AND AGAINST JONESWORKS' INTERESTS

89.    At the same time Abel was participating in the conduct above, she was working against her employer Jonesworks' interests. *E.g.*, Tahler Decl., Ex. 25 (BBKOSLOW-000008776); Tahler Decl., Ex. 45 (JONESWORKS_00037451); Tahler Decl., Ex. 26 (JONESWORKS_00016275); Tahler Decl., Ex. 46 (JONESWORKS_00037494); Tahler Decl., Ex. 74 (JONESWORKS_00016169).

90.    On July 19, 2024, Abel formed her soon-to-be competing business RWA Communications LLC. Ex. 75 (JONESWORKS_JA_000001760).

58

91. At that time, Abel was still employed by Jonesworks and had not told Jones of her intent to start a competing business. Fritz Decl., Ex. A (ECF No. 154, Abel's Third-Party Complaint ¶ 28 (Abel told Jones of her intent to start a new business on July 26, 2024)).

92. Abel intended to take Baldoni and Wayfarer with her as clients to her new business, and pitched Wayfarer to TAG as business Abel and Nathan could work on after Abel left Jonesworks in a few weeks. Tahler Decl., Ex. 25 (BBKOSLOW-000008781) ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Tahler Decl., Ex. 35 (9/30/25 Nathan Dep. Tr. at 334:10-16) ████████████████████████ Tahler Decl., Ex. 23 (9/25/25 Abel Dep. Tr. at 56:17–24).

93. Abel and Nathan at the same time were working to marginalize Jones from shared accounts, so they would work with Abel and Nathan instead. Tahler Decl., Ex. 45 (JONESWORKS_00037451) (Nathan telling Abel, ██████████████████████

██████████████████████████████ So he knows its always us us us."); Tahler Decl., Ex. 26 (JONESWORKS_00016275) ("take this fucking client and never talk to her again I swear to God"); Tahler Decl., Ex. 27 (JONESWORKS_MN_000002208); Tahler Decl., Ex. 28 (NATHAN_000000141) ██████████████████

██████████████████

94. ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████    Tahler Decl., Ex. 27 (JONESWORKS_MN_000002208).

████████████████████████████████████    *Id.*

95.    Moreover, Abel was aware that *Business Insider* was preparing a negative article about Jones and Jonesworks, which she and Nathan joked would be a "KILL STORY" about Jones. Tahler Decl., Ex. 13 (JONESWORKS_MN_000000740); Tahler Decl., Ex. 14 (JONESWORKS_00013606).

96.    Abel spoke to the reporter who wrote the story, Katie Warren, multiple times in July 2024. Tahler Decl., Ex. 23 (9/25/25 Abel Dep. Tr. at 237:7-14); Tahler Decl., Ex. 44 (JONESWORKS_00041875).

97.    On July 30, 2024, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████    Tahler Decl., Ex. 46 (JONESWORKS_00037494).

98.    On August 9, 2024, while Baldoni and Wayfarer were still clients of Jonesworks,

████████████████████████████████████████████

████████████████████████████████████████████

████████    Tahler Decl., Ex. 74 (JONESWORKS_00016169).

99.    Abel was simultaneously stealing dozens of Jonesworks proprietary documents, including sensitive client and business information that Abel had no legitimate reason to access. Jones Decl. ¶ 34; Tahler Decl., Ex. 77 (JONESWORKS_00040860); Tahler Decl., Ex. 78 (JONESWORKS_00040862).

100.    In July and August 2024, Abel had forwarded several proprietary documents from her Jonesworks accounts to her personal email account and downloaded them to her computer.

Case 1:24-cv-10049-LJL    Document 1057    Filed 12/03/25    Page 61 of 64

Tahler Decl., Exs. 79-82 (JONESWORKS_JA_000000789, JONESWORKS_JA_000000799, JONESWORKS_JA_000000904, JONESWORKS_JA_000001063); *see also* Tahler Decl., Exs. 77-78, 83-84 (JONESWORKS_00040860, JONESWORKS_00040861, JONESWORKS_00040862, JONESWORKS_00040863).

101.    On August 20, 2024, after Jones blocked Abel's ability to forward documents to her personal email, Abel wrote to a friend that she ██████████████████████████ ████████████████████████████████████████████████████████ Tahler Decl., Ex. 85 (JONESWORKS_00041616).

102.    Jonesworks terminated Abel on August 21, 2024.  Abel Decl. ¶ 57.

## IV.    LIVELY'S SUES ABEL FOR HER INVOLVEMENT IN THE DIGITAL SMEAR CAMPAIGN

103.    On December 31, 2024, Blake Lively commenced this action against Abel, alleging claims for aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act, intentional infliction of emotional distress, and false light invasion of privacy.  ECF No. 1.

104.    On July 30, 2025, Lively filed the operative second amended complaint, asserting claims against Abel for aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act, false light invasion of privacy, and civil conspiracy.   ECF No. 520.

105.    Lively alleges that Abel participated in coordinating a retaliatory digital smear campaign designed to "bury" and "destroy" her reputation through covert astroturfing, social manipulation, and the seeding of false narratives on social media, which went far beyond legitimate public relations work and was undertaken in retaliation for Lively's reports of sexual harassment and unsafe working conditions on the set of *It Ends With Us*.  ECF No. 520.

106.    For example, Lively alleges that Abel participated in an astroturfing "retaliation scheme" against Lively by engaging in the "direct and constant media engagement, the seeding of content on traditional and social media platforms, the boosting of content (sometimes the very content that TAG and its affiliates had seeded), the suppressing of negative content about Mr. Baldoni, and the amplifying of negative content about Ms. Lively (including through engagement via comments on social media)."  ECF No. 520 ¶ 230.

107.    Lively alleges Abel participated in this astroturfing campaign by, among other things, planting negative, false stories of Lively to cover up Baldoni's bad acts, and amplifying, boosting, or flagging for amplification content negative or critical of Lively to cover up Baldoni's bad acts and retaliate against Lively.  *E.g.*, ECF No. 520 ¶¶ 200, 211-15, 230, 250-51, 254, 260-66; Abel Decl., Ex. 6.

108.    Lively alleges the digital smear campaign and retaliation is ongoing.  ECF No. 520 ¶ 55.

109.    On August 13, 2025, Abel filed the operative amended answer to Lively's complaint.  ECF No. 639.  Abel also filed an amended third-party complaint seeking indemnification against Jonesworks for attorney's fees incurred defending against Lively's claims.  *Id.*

110.    Abel ███████████████████████████████ Tahler Decl., Ex. 49 (9/26/25 Abel Dep. Tr. at 253:21–22).

111.    Abel ███████████████████████████████ Tahler Decl., Ex. 49 (9/26/25 Abel Dep. Tr. at 253:23–24).

112.    Abel's ███████████████████████████████ Tahler Decl., Ex. 49 (9/26/25 Abel Dep. Tr. at 253:14–19); Tahler Decl., Ex. 4 (10/9/25 Heath Dep. Tr. at 39:8–18).

113.    On August 15, 2025, Abel agreed to produce [a]ll engagement letters or agreements and invoices for any expenditures or losses (including attorneys' fees) for which Abel seek indemnification, including legal bills, requests for retainer, and proof of payment." Tahler Decl., Ex. 86 (Aug. 15, 2025 Agreement).

114.    On September 9, 2025, Abel produced her engagement letter with the law firm Liner Freedman Taitelman + Cooley LLP ("LFTC"). Tahler Decl., Ex. 76 (ABEL_000021588). That agreement provides that ███████████████████████████ ████████████████ *Id.* It states in pertinent part: ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*

115.    Attorney Bryan Freedman signed that agreement on behalf of LFTC on December 26, 2024. *Id.*

116.    Abel has not produced any other agreement or document that provides for a payment obligation from Abel to Wayfarer in the event she recovers on her indemnification claims; her counsel has represented the only documents that exist "responsive to Jonesworks' indemnification-related requests" are "legal invoices and her engagement agreement(s)." Tahler Decl., Ex. 55 (9/11/25 correspondence with counsel).

117.    On October 10, 2025, Abel served an expert report in this action. Tahler Decl., Ex. 12 ██████████████████████████████

118.    That report acknowledges that ████████████████████████████ ████████████████████████████████ Tahler Decl., Ex. 12 (Expert Report of James F. Haggerty).

119.    The report states:



*Id.* at 9.

DATED: December 3, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By:        */s/ Kristin Tahler*

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
Morgan L. Anastasio
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com
morgananastasio@quinnemanuel.com

Nicholas Inns (pro hac vice)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Third-Party Defendant Jonesworks
LLC*