**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY,<br><br>              Plaintiff,<br><br>   v.<br><br>WAYFARER STUDIOS LLC, et al,<br><br>              Defendants. | No. 24-cv-10049 (LJL) (lead case)<br>No. 25-cv-449 (LJL) (case) |
| JENNIFER ABEL,<br><br>              Third-Party Plaintiff,<br><br>   v.<br><br>JONESWORKS LLC,<br><br>              Third-Party Defendant. | |

**PLAINTIFF BLAKE LIVELY'S RESPONSE TO DEFENDANTS'**
**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiff Blake Lively ("Lively") submits this response to the Statement of Undisputed Material Facts filed by Defendants Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), Steve Sarowitz ("Sarowitz"), It Ends With Us Movie LLC ("IEWUM"), Jennifer Abel ("Abel"), The Agency Group PR LLC ("TAG"), and Melissa Nathan ("Nathan," and together with Wayfarer, Baldoni, Heath, Sarowitz, IEWUM, Abel, and TAG, "Defendants") in support of their Motion for Summary Judgment (Dkt. No. 958).

1.      Wayfarer Studios is a production studio.  It aspires to create purpose-driven films intended to inspire connection and promote social change through authentic, impactful storytelling and fresh creative voices. Ex. 1, WAYFARER_00013949 at-052; Ex. 2, Heath Dep. (Oct. 9, 2025) at 38:16-23.

**Plaintiff's Response 1:**      Undisputed.

2.      Justin Baldoni and Steve Sarowitz co-founded Wayfarer Studios in or about 2019 or 2020 and serve as its co-chairs. Ex. 3, SAC ¶ 58, 60; Ex. 4, Heath Dep. (Oct. 8, 2025) at 32:1-5; Ex. 5, Baldoni Dep. (Oct. 6, 2025) at 42:21-43:5; Ex. 3, Dkt. 520 ¶¶ 58 ("SAC"), 60; Ex. 5, Baldoni Dep. (Oct. 6, 2025) at 46:22-24.

**Plaintiff's Response 2:**      Undisputed.

3.      Sarowitz is the majority investor in Wayfarer Studios.  Ex. 3 SAC ¶¶57, 60, 75; Dkt. 151, Sarowitz Answer ¶¶57, 60, 75; Ex. 6, Sarowitz Dep. Tr. 98:4-7, 103:17-21, 177:18-19, 231:3-5.  He resides in Illinois.  Ex. 3, SAC ¶60; Sarowitz Answer ¶ 60.

**Plaintiff's Response 3:**      Undisputed.

4.      Jamey Heath is the CEO of Wayfarer.  Ex. 3, SAC ¶ 59; Ex. 4, Heath Dep. (Oct. 8, 2025) at 34:1-9; Ex. 2, Heath Dep. (Oct. 9, 2025) at 38:1-14.

**Plaintiff's Response 4:**      Undisputed.

5.      Baldoni is an acclaimed actor, director, and author.  Before the events giving rise to this dispute, he was the one of the stars of the acclaimed Golden-Globe nominated television show *Jane the Virgin*. He also produced and directed two prior feature films, *Five Feet Apart* and *Clouds*, together with CBS Films and Warner Brothers, respectively.    Ex. 7, WAYFARER_000041408-409.

**Plaintiff's Response 5:**        Undisputed, except as to the characterization of Baldoni and Jane the Virgin being acclaimed, and, in the case of Jane the Virgin, Golden-Globe nominated, which the cited evidence does not support. Wayfarer Ex. 7 at WAYFARER_000041408–41409.

6.      Baldoni has written two books on gender-related topics, focusing on the question of masculinity and addressing, among other issues, the importance of mutual consent, one of which was a *New York Times* bestseller.  Ex. 7, WAYFARER_000041408-409; Ex. 5, Baldoni Dep. (Oct. 6, 2025) at 302:09 – 307:9; Ex. 8, Baldoni Dep. (Oct. 7, 2025) at 77:2 – 77:9, 79:18-25.  Baldoni has also hosted a podcast, called "Man Enough," concerning the same and similar topics.  Ex. 7, WAYFARER_000041408-409.

**Plaintiff's Response 6:**        Undisputed.

7.      In February 2019, Baldoni met Colleen Hoover, author of the smash success *It Ends With Us,* a novel that addresses issues of domestic violence.  Ex. 9, WAYFARER_000141660; Ex. 10, Hoover Dep. at 21:22-22:13; Ex. 11, Saks Dep. at 231:5-18; Ex. 12, Giannetti Dep. at 188:13-189:2; Ex. 13, Slate Dep. at 122:2-6.

**Plaintiff's Response 7:**        Undisputed that the book *It Ends With Us* addresses issues of domestic violence alongside a theme of female empowerment. Exs. 1, Hoover Tr. 33:15–17; 2, Giannetti Tr. 38:8–21.

8.      Baldoni and Hoover discussed how the book could be adapted into a film, and, on May 8, 2019, Hoover agreed to sell Baldoni the rights for a film, in part due to Baldoni's ability and experience approaching sensitive topics in his prior films.  Ex. 14, WAYFARER_000141663 (Hoover, writing: "[Y]ou "get" the book…" and "based on the magnificent adaptation you did of Five Feet Apart, I'm confident you could do this book justice and that our visions will align").  Hoover also suggested that Baldoni play the lead role of Ryle.  Ex. 9, WAYFARER_000141660; Ex. 14, WAYFARER_000141663; Ex. 15, WAYFARER_000141666; Ex. 16, WAYFARER_000141667; Ex. 17, WAYFARER_000141669; Ex. 18, WAYFARER_000141671.

**Plaintiff's Response 8:**      Undisputed, except as to the assertion that May 8, 2019 is the date on which Colleen Hoover ("Hoover") agreed to sell Baldoni the rights for a film, which the cited evidence does not support. Wayfarer Exs. 9, 14–18.

9.      In September 2022, Baldoni and Wayfarer sought to, and eventually did, partner with NO MORE, an organization dedicated to ending domestic and sexual violence, in connection with the film.  Ex. 19, WAYFARER_000141658.  Together, Wayfarer and NO MORE planned to use the film as an opportunity to raise awareness about domestic violence, and to provide education, resources, and support for survivors.  *Id.*

**Plaintiff's Response 9:**      Undisputed, except as to the assertion that Wayfarer planned to use *It Ends With Us* (the "Film") as an opportunity to raise awareness about domestic violence, which the cited evidence does not support. Wayfarer Ex. 19.

10.      ███████████████████████████████████████████████████
██████████████████████.  Ex. 20, SPE_BL0000343.  Wayfarer's proposal included a requirement that ████ of the film's proceeds be donated to support survivors of domestic abuse.  *Id.*

3

at -345.   To date, NO MORE has received nearly $600,000 in connection with the film. Declaration of Jamey Heath ("Heath Decl.") ¶22.

**Plaintiff's Response 10:**   Undisputed that ███████████████████████ ████████████████████, but disputed as to the remaining assertions regarding Wayfarer's proposal, which the cited evidence does not support. Wayfarer Ex. 20.

11.   In early publicity planning for the Film, Sony emphasized the need to center the



███████████████ of the story: █████████████████████████

█████████████████████████████████

████ Wayfarer Ex. 21-22 at SPE_BL0005500-5503. Sony cautioned: ███████

████████████████████ *Id.* at SPE_BL0005501.

**Plaintiff's Response 11:**   Undisputed that █████████████████████

█████████████████████████████ but disputed that ████████████████

███████████████████████████████

███████████████████████████████

████ Wayfarer Ex. 22 at SPE_BL0005502. Also disputed that ███████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████ *Id.*

12.   Wayfarer Studios typically depends on separate LLCs for separate films or projects. Heath Decl. ¶6.   In 2022, It Ends With Us Movie LLC ("IEWUM") was incorporated to develop and produce the film.   Heath Decl. ¶¶6, 9.

**Plaintiff's Response 12:**    Undisputed that the evidence cited supports Defendants' assertion, but otherwise disputed as inconsistent with Heath's October 8, 2025 deposition testimony in which he claimed to ███████████████████████████████████████

████████████████████. Ex. 3, Heath 10/8 Tr. 134:16–19 ██████████████████████

████████████████████████████████████████████████████████████████████████

134:24–135:1 ████████████████████████████████████████████████████████████

████████████████████████████ 154:14–22 ████████████████████████████████████

██████████.

13.    Establishing a separate entity for each individual film production is common in the film industry to separate each production's liabilities, investment and ownership structure, rights assignments for distribution, and accounting. The SPE is often necessary for the purpose of obtaining production (or post-production) tax credits (which are often based on the specific jurisdiction in which individual films are shot, or edited, as well as the residency of members the crew), and for residual reporting with unions such as SAG-AFTRA, DGA, and WGA (which determine participation on a project-by-project basis). Heath Decl. ¶7.

**Plaintiff's Response 13:**    Undisputed.

14.    Utilizing a separate, project-specific entity is also necessary in order to, for example, calculate net proceeds and back-end profit participation for each film, for the purpose of calculating profit participation.  Heath Decl. ¶8.

**Plaintiff's Response 14:**    Undisputed.

15.    IEWUM maintained its own bank accounts and funds, separate from Wayfarer, and independently engaged the cast and crew of the film, only a handful of whom were also Wayfarer employees.  Heath Decl. ¶10.

**Plaintiff's Response 15:** Undisputed that the evidence cited supports Defendants' assertion, but otherwise disputed as inconsistent with Heath's October 8, 2025 deposition testimony in which he claimed to 


**Plaintiff's Response 15:** Undisputed that the evidence cited supports Defendants' assertion, but otherwise disputed as inconsistent with Heath's October 8, 2025 deposition testimony in which he claimed to ███████████████████████████████ ███████████████████████████. Ex. 3, Heath 10/8 Tr. 134:16–19 (███████████████████████████ ████████████████), 134:24–135:1 (███████████ ██████████████████████████, 138:20–139:20 (████████████████████████████), 154:14–22 ████████████████████████.

16.    Although Wayfarer and its employees provided some administrative, legal, and operational support to IEWUM on the film, that is common in the film industry, and IEWUM paid Wayfarer ████████ those services pursuant to the terms of the Wayfarer's co-financing agreement with Sony Pictures' subsidiary, Columbia.  Heath Decl. ¶11; Ex. 23, SPE_BL0000001 at -02.

**Plaintiff's Response 16:** Undisputed that the evidence cited supports Defendants' assertion, but otherwise disputed as Heath's declaration is inconsistent with his October 8, 2025 deposition testimony in which he claimed to ██████████████████ ████████████. Ex. 3, Heath 10/8 Tr. 134:16–19 ████████████ ████████████████████████████████████ 134:24–135:1 ██████████████████████████ ████████████████████████, 154:14–22 ███████████████████ ████████.

17.    Beyond providing some financing, Sarowitz was not involved in the production of the film.  Ex. 6, Sarowitz Dep. Tr. 230:13-15, 120:21-24.  And he did not supervise or manage anyone at Wayfarer Studios during the filming of *It Ends With Us*.  Ex. 6, Sarowitz Dep. Tr. 204:20-23.

**Plaintiff's Response 17:**    Undisputed that Sarowitz was "barely involved with the film besides providing its funding," Wayfarer Ex. 6 at 120:21–24, but disputed that Sarowitz did not supervise or manage anyone at Wayfarer Studios because "████████████████████████ ████████████████ Ex. 4, Baldoni 10/7 Tr. 46:22–47:21, 55:14–56:11.

18.    Before Blake Lively joined the production, filming was set to begin in 2023, under Baldoni's direction. Ex. 24, Lively Dep. at 21:18-25; 261:3-12.

**Plaintiff's Response 18:**    Undisputed.

19.    The book *It Ends With Us* was well known for sexual content.  Ex. 12, Giannetti Dep. at 188:13-189:2

**Plaintiff's Response 19:**    Disputed.  The evidence cited does not support the assertion that the book *It Ends With Us* was well known for sexual content, *see* Wayfarer Ex. 12 at 188:13–189:2, and Hoover challenged any suggestion that the book was "a hot romance" when discussing optioning the Film with Baldoni. Wayfarer Ex. 14 at WAYFARER_00014663.

20.    ████████████████████████████████████████ Ex. 24, Lively Dep. at 60:22-23.

**Plaintiff's Response 20:**    Disputed.  Lively informed Baldoni that, when she is part of book-to-film adaptations, ████████████████████████████████ ████████████████████████████████████████████████

7

███████████████████████████████ Ex. 281, Lively Tr. 59:21–60:7. ████

███████████████████████████████ *Id.* at 9:16–61:17.

21.    In or about December 2022, after having met with Baldoni, Lively accepted an offer to play the film's female lead, Lily Bloom. Ex. 24, Lively Dep. at 12:17-20; *see also* Ex. 25, HEATH-000028774 at -75 (email from Warren Zavala to Jamey Heath expressing that "We're good on the financial terms for Blake. She's excited to do the film.").

**Plaintiff's Response 21:**    Undisputed.

22.    In mid-December 2022, Imene Meziane, Wayfarer's VP of Business and Legal Affairs, sent Lively's representatives a draft offer letter ("Offer Letter") setting out the basic parameters under which Lively would agree to perform in the role of Lily Bloom in the film.  Exs. 26-27, HEATH_000046097-99.

**Plaintiff's Response 22:**    Undisputed.

23.    As is standard in the film industry, the proposed agreement for Lively's services was not between Lively herself, or Wayfarer.  The agreement's intended parties were IEWUM and Blakel, Inc., Lively's "loanout" entity.  Ex. 28, HEATH_000045678.  A loanout entity is a corporation formed around one individual, typically for tax purposes, which then "loans" the services of the individual for a fee.  Heath Decl. ¶13.

**Plaintiff's Response 23:**    Undisputed that IEWUM and Blakel, Inc. were parties to the agreements governing Lively's services but disputed that those agreements did not also impose obligations on Wayfarer and create enforceable rights for Lively. Wayfarer Exs. 117, 264.

24.    On or about April 27, 2023, Lively signed an escrow agreement to facilitate payments from IEWUM to her loanout entity in connection with the film. Ex. 29, HEATH_000045645.

**Plaintiff's Response 24:**     Undisputed.

25.     Shortly before the Offer Letter was finalized, pursuant to the escrow agreement, IEWUM wired Lively's up-front fee of $1.75 million, less a 6.37% New Jersey withholding tax, to Lively's client trust account at WME. IEWUM was not asked to and did not withhold federal income, Social Security, or Medicare taxes, or any other state or local taxes. Wayfarer Exs. 30–31, WAYFARER_000030416-17; Ex. 29, HEATH_000045645.

**Plaintiff's Response 25:**     Undisputed.

26.     The Offer Letter was finalized in early May 2023.  As discussed below, the Offer Letter expressly provided that full execution of a long form agreement regarding the terms of Lively's engagement was a condition precedent to IEWUM's obligations to Lively thereunder. Ex. 32; HEATH_000045662; Ex. 28, HEATH_000045678 at 80.

**Plaintiff's Response 26:**     Undisputed that the final version of the Offer Letter was circulated on May 4, 2023, but otherwise disputed that the Offer Letter expressly provided that full execution of a long form agreement regarding the terms of Lively's engagement was a condition precedent to IEWUM's obligations thereunder, which the cited evidence does not support. Wayfarer Exs. 28, 32. To the contrary, the cited evidence specifies as a condition precedent execution of "an Agreement in a form reasonably acceptable to all parties," Wayfarer Ex. 28 at HEATH_000045680, and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Further, disputed that Paragraph 13 of the Offer Letter was an ongoing and operative part of the parties' agreement; the terms of the Offer Letter became binding through Lively's reliance letter to Wayfarer which expressly recognized the waiver of Paragraph 13 through the parties' mutual performance notwithstanding the absence of an executed long-form. Ex. 6 ("In the meantime, since

9

principal photography has commenced, until such time that the long form is fully-executed, our client will continue to proceed in reliance upon the terms of the negotiated deal memo with the understanding that Lender and Artist are now unconditionally pay-or-play for the acting fee of $1.75M and that the conditions in Paragraph 13 of the deal memo are now either satisfied or waived.").

27.    No long form agreement, as described in the Offer Letter, was ever executed by the parties.  Heath Decl. ¶¶14-18.

**Plaintiff's Response 27:**    Undisputed that the parties never executed a long form agreement, but otherwise disputed that the Offer Letter required or described a "long form agreement," which the cited evidence does not support. Heath Decl. ¶¶ 14–18. Disputed to the extent that this paragraph asserts that there was no agreement in substantially the form represented by the Actor Agreement and Standard Terms and Conditions ("Agreement"), and Side Letter (defined below). Wayfarer Exs. 117, 264; Dkt. No. 50, ¶ 341.

28.    Before accepting the role, ████████████████████████████████
███████████████████████████████████████████████ Ex. 33, Zavala Dep. at 43:4-44:5, 47:18-23; Ex. 34, Stone Dep. at 65:3-66:13; Ex. 24, Lively Dep. at 60:8-21. The script Lively reviewed included scenes of sexual intimacy, intimate partner violence, and attempted sexual assault. *See, e.g.*, Ex. 35, WAYFARER_000129261, at -129275-77, -129308-311, -129328-331, -129338-340, -129347, -129348-351, -129354-359.

**Plaintiff's Response 28:**    Undisputed that ██████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

██████████████████████    Disputed that the script Lively reviewed included scenes of "sexual intimacy, intimate partner violence, and attempted sexual assault," which the cited evidence does not support. Wayfarer Ex. 35.

29.    Lively worked to revise the script before filming began.  Her written work product included frank sexual language and overtly sexual themes.  For instance, in April 2023, Lively sent Baldoni a revised draft for the scene in which Lively's character (Lily Bloom) and Baldoni's character (Ryle Kincaid) first meet—on the rooftop of a building (the "rooftop scene").  Lively explained she revised the scene to include ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ : "I want to fuck you." Ex. 36, BL-0000092 at -48; Ex. 37, BL-000009253 at BL-000009262.

**Plaintiff's Response 29:**    Undisputed that Lively revised the script before filming began, including a portion of the script corresponding to the rooftop scene, and that the quoted language appears in the cited sources. Disputed to the extent this paragraph suggests that Lively was solely responsible for these revisions because Baldoni solicited, encouraged and approved of Lively's script revisions. Ex. 7 at BALDONI_000016476–16477.

30.    On May 5, 2023, Baldoni sent Lively some notes on the script from Sony Executive Ange Giannetti, who wanted the scenes to involve more than just verbal interplay. Giannetti wrote: ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Ex. 38, BL-000013115.

11

**Plaintiff's Response 30:**    Undisputed that the quoted language appears in the cited source, but otherwise disputed to the extent this paragraph suggests that the Film should have been an R-rated Film.  It was broadly acknowledged that "making th[e] film PG-13 ha[d] proven without a doubt to be what[] [was] best for the film and the audience."  Ex. 8 at AS000702.

31.    Lively immediately exercised substantial influence over the development and shooting of the film.  At Lively's request, Wayfarer agreed to abandon its intended filming location—Boston, where Hoover's novel was set—and to accept Lively's choice of New Jersey "to accommodate Blake." Ex. 26, HEATH_000046097; *see also* Ex. 39, BL-000018396 ███ ██████████████████████████████████████████████ Wayfarer also agreed to adjust the filming schedule to accommodate Lively's other obligations.  Ex. 26, HEATH_000046097.

**Plaintiff's Response 31:**    Disputed that Lively "immediately exercised substantial influence" and to the extent that this paragraph suggests that Lively, rather than Wayfarer, was the decisionmaker for these changes, neither of which are supported by the cited evidence. Wayfarer Exs. 26, 39. ████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████ Ex. 9.

32.    ██████████████████████████████████ ██████████████████████████ ███████████████ █████████████████████████████ ████████████████████████████████



**Plaintiff's Response 32:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

33.    In a February 8, 2023 voice memo, Lively asked if the start of shooting could be pushed back because she █████████████████ Ex. 40, BL-000008806.

**Plaintiff's Response 33:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

34.    On February 9, 2023, in response to Baldoni's comment that Lively must █████ █████ after resolving a personal dilemma, Lively responded █████████ Baldoni disliked Lively's self-deprecating joke. Ex. 41, BL-000008801 at -04.

**Plaintiff's Response 34:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

35.     On February 17, 2023, Lively asked Baldoni ██████████████████

██████████████████ Baldoni responded: ██████████████████

████████████████████████████████████████████

████████████████████████████████ Ex.

42, BL-0000008819 at -20.

**Plaintiff's Response 35:**     Undisputed that the quoted language appears in the cited

source, but Lively respectfully refers the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

36.     The same day, February 17, Lively told Warren Zavala, her agent at WME: ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ Ex. 43, BL-000021371.

**Plaintiff's Response 36:**     Undisputed that the quoted language appears in the cited

source, but Lively respectfully refers the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

37.     In a February 18, 2023 message to Baldoni, Lively wrote: ██████████████

████████████████████████████████████████████

████████████████████████████████ Ex. 44,

BL-000008821 at -22.

**Plaintiff's Response 37:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

38.    On April 8, 2023, Lively sent Baldoni her proposed revisions to the "rooftop scene" in which the two main characters first meet. Ex. 36, BL-000009247 at -48.

**Plaintiff's Response 38:**    Undisputed.

39.    ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████  Ex. 45, BL-000018765 █ ███████████

██████████

**Plaintiff's Response 39:**    Undisputed that the quoted language appears in the cited source, but disputed that ██████████████████████████████████

██████  Ex. 281, Lively Tr. 241:3–242:23 ████████████████████████

███████████████████████████████████████

█████████████████████████████████  Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

40.    ███████████████████████████████████

Ex. 45, BL-000018765. ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

15

██████████████████████████████████████████████████████

████████████████████████████████ Ex. 46, BL-000018767.

**Plaintiff's Response 40:**    Disputed that ████████████████████████████

████████████████████████████████ which is not supported by the cited evidence.

Wayfarer Ex. 46. Undisputed that the quoted language appears in the cited source, but Lively

respectfully refers the Court to the cited source for its complete contents and disputes any summary

or interpretation inconsistent therewith.

    41.    On April 14, 2023, Baldoni told Lively he liked the revised scene. He added that

he ██████████████████████████████ Ex. 47, BL-000009345 at -48. Lively

explained that, ██████████████████████████████████████████████

██████████████ Ex. 48, BL-000009349 at -50.

**Plaintiff's Response 41:**    Undisputed that the quoted language appears in the cited

documents, but Lively respectfully refers the Court to the full documents for their complete

contents, including that ██████████████████████████████████████████

█████████████████████ Wayfarer Ex. 48 at BL-000009350.

    42.    Lively has since disclosed that her husband, Ryan Reynolds, actually wrote the

revisions to the "rooftop scene" that she proposed. Ex. 49, WAYFARER_000142463 at -64; Ex.

50, BL-000011703.

**Plaintiff's Response 42:**    Undisputed.

    43.    Wayfarer has a set of industry-standard policies and procedures in place to prevent

harassment, discrimination, and retaliation. Ex. 51, HEATH_000034943; Ex. 1,

WAYFARER_000139049 (Wayfarer employee handbook). "All Wayfarer Studios employees,

officers, principals, agents, workers, and representatives are prohibited from engaging in unlawful

discrimination, harassment, and/or retaliation." *Id.* at -53. "The Anti-Harassment Policy also applies to vendors, customers, independent contractors, unpaid interns, volunteers, persons providing services pursuant to a contract, and any other person's employees [sic] may come into contact with through the course of their work." *Id.*

> **Plaintiff's Response 43:**      Undisputed that Wayfarer maintains written policies, but disputed to the extent the Wayfarer Parties imply these policies were distributed to, explained to, or available to cast or crew of the Film. ████████████████████████████████
> 
> ████████████████████████████████████████████████████
> 
> ██████████████████  Additionally, Baldoni testified that ████████████████████
> 
> ██████████████████████████████████████████████
> 
> ████████████████. Ex. 4, Baldoni 10/7/25 Tr. 50:17-51:2. Sarowitz testified ████████████
> 
> ██████████████████████████████ Ex. 51, 10, Ferrer Tr. 240:21–242:23; 3, Heath
> 
> 10/8 Tr. 128:17–134:2, 395:7–396:2, 398:12–19; 4, Baldoni 10/7 Tr. 50:17–51:2; 11, Sarowitz
> 
> Tr. 184:13–19. Lively Decl. ¶ 26.

44.      Wayfarer has a complaint process to address alleged instances of harassment, discrimination, and/or retaliation. "Individuals who believe they have been the victims of [prohibited conduct] should discuss their concerns with their immediate supervisor, any member of management, or Human Resources." Ex. 1, WAYFARER_000139049 (Wayfarer employee handbook) at -54. Wayfarer "encourages reporting of all perceived incidents of discrimination or harassment." *Id.* "Any reported allegations of harassment, discrimination, or retaliation will be promptly and thoroughly reported in an impartial manner." *Id.* at -55.

> **Plaintiff's Response 44:**      Undisputed that Wayfarer Ex. 1 has a policy with the stated information, but disputed to the extent the Defendants imply the policy or information about the

complaint process therein was ███████████████████████████████████████

██████████████████████████████████████████████████████████ Exs.

12, Slate Tr. 38:15–24; 10, Ferrer Tr. 240:21–242:23; Lively Decl. ¶ 26. When asked at his

deposition ███████████████████████████████ Heath testified ████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 3, Heath 10/8 Tr. 129:24–

130:24.

45.    Wayfarer has a human resources department headed by Cynthia Barnes-Slater. Ex.

4, Heath Dep. 10/8 Tr. 38:7-9. Mitz Toskovic assists Slater. *Id.* at 39:11-14.

**Plaintiff's Response 45:**    Undisputed that Slater is a human resources consultant for

Wayfarer and that Toskovic assists Slater in the operations level, but disputed to the extent

Defendants imply that Wayfarer ████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Ex. 3, Heath 10/8 Tr. 128:17–133:6, 398:12–19.

46.    Wayfarer employees are required to participate in workplace harassment training. Ex. 4, Heath Dep. 10/8 Tr. 54:2-10. Baldoni participated in training approximately every two years. Ex. 8 Baldoni 10/7 Dep. Tr. 52:3-53:5.

**Plaintiff's Response 46:**    Undisputed that Wayfarer employees are required to participate in workplace harassment training, but disputed to the extent it suggests that ███████ ████████████████████████████████████, which is not supported by the cited evidence. ███ ████████████████████████████████████████████████████████████████ Exs. 12, Slate Tr. 38:7–24, 58:23-59:8; 10, Ferrer Tr. 240:21–242:23; 13, Baker Tr. 46:9–47:15, 205:22–25; 281, Lively Tr. 220:19–221:21; Lively Decl. ¶ 26.

47.    Sarowitz is not involved in the day-to-day operations of Wayfarer Studios. Ex. 6, Sarowitz Dep. Tr. at 126:8-9, 260:23-261:2, 266:22-267:7, 311:24-25. And he is not responsible for administering Wayfarer Studios' harassment policies. Ex. 6, Sarowitz Dep. Tr. at 183:6-12, 184:5-19, 195:17-196:13, 203:9-16.

**Plaintiff's Response 47:**    Undisputed that Sarowitz is not involved in day-to-day operations. Disputed to the extent it suggests that Sarowitz is not responsible for ensuring a safe workplace as co-chairman of Wayfarer, and signatory of its anti-harassment policies. Sarowitz's signature is on the Wayfarer Employee Handbook in Wayfarer Ex. 1 and Wayfarer Ex. 2. Exs. 11, Sarowitz Tr. 183:13–25; 4, Baldoni 10/7 Tr. 46:18–21. ███████████████████████ ████████████████████████████████████████████████████████████████ ████████████████. Ex. 4, Baldoni 10/7 Tr. 56:4–11; 282:13–283:1.

48.    Lively was under no obligation to engage in any nude or simulated sex scenes without her consent. The Offer Letter provided that Lively would not perform any

nudity/stimulated sex without her prior written consent and negotiation/execution of a formal nudity rider. Ex. 28, HEATH_000045678 at 80.

**Plaintiff's Response 48:**    Undisputed that the offer letter stated that there would be "[n]udity/simulated sex without [Lively's] prior written consent and negotiation/execution of a nudity rider," Wayfarer Ex. 28 at HEATH_000045680, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Lively disputes any implication that this provision reflects the dynamics or conditions on set or that the Wayfarer Parties followed appropriate industry and/or nudity-rider procedures in practice, which is not supported by the cited evidence.  Lively Decl. ¶¶ 12-14.

49.    In April 2023, before filming began, IEWUM hired Elizabeth Talbot to serve as the intimacy coordinator for the film. Ex. 52, 24-CV-10049_0002891 ███████████████

███████████████████

**Plaintiff's Response 49:**    Undisputed.

50.    On April 5, 2023, Baldoni wrote to Lively: ████████████████

█████████████████████████████

████████████████████ Ex. 53, BL-000009220 at -22.

**Plaintiff's Response 50:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

51.    Baldoni reported to the production team: "Seems [Lively] doesn't want to meet with intimacy coordinator until we start which may mess up the workflow but I can still meet with her of course." Alex Saks, one of the film's producers, responded: "That's fine if [Lively] doesn't

want to meet [the intimacy coordinator] now. You'll just have to walk her through what you and [the intimacy coordinator] are thinking." Ex. 54, BALDONI_000018766.

**Plaintiff's Response 51:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

52.    On May 4, 2023, before any filming had begun and months before any shooting of the film's intimate scenes would take place, the intimacy coordinator considered the content of anticipated intimate scenes and suggested details and clarifications to both Baldoni and Heath. Ex. 55, BALDONI_00010363. While expressing concern that the scenes were becoming "too PG-13" as compared to the more explicit scenes in the book, Baldoni suggested that the intimacy coordinator discuss with Lively whether there were other ways of implying nudity that she would consider so as not to "disappoint readers," while also expressing sensitivity for Lively's boundaries. He wrote: ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████    Ex. 56, BL-000013564 at -65. The intimacy coordinator agreed to have any necessary conversations to get clarity for the scenes "so both [Baldoni and Lively] are confident about level of contact during the scenes." Ex. 57, BALDONI_000010377.

**Plaintiff's Response 52:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

53.    ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Ex. 58, Talbot Dep. Tr. at 57:14-58:17.

**Plaintiff's Response 53:**    Undisputed except to the extent that it suggests ████████

████████████████████████████████████████████

████████████████████ Ex. 14, Talbot Tr. 57:6–60:5, 142:13–24, 143:9–25, 145:16–146:13.

54.    That same day, the ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Ex. 60, 24–CV–10049_0001816.

**Plaintiff's Response 54:**    Undisputed.

55.    On or about May 8, 2023, Lively and Baldoni were provided with nudity riders detailing their consent and boundaries concerning intimate scenes. Ex. 61, WAYFARER–000122708 (Lively Nudity Rider); Ex. 62, 24–cv–10049_0001822 (Baldoni Nudity Rider).

**Plaintiff's Response 55:**    Undisputed that Lively was provided with an initial draft nudity rider but respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

56.    On May 5, 2023, IEWUM held a "Respect in the Workplace: Preventing Discriminatory Harassment & Retaliation" meeting. Ex. 63, WAYFARER_000140131 (production schedule as of 5/4/2023); Ex. 64 BALDONI_000003760, attaching Ex. 65, BALDONI_000003760; Ex. 66, WAYFARER_000142434. The training was administered by the

law firm Mitchell Silberg & Knupp LLP. Ex. 67, WAYFARER_000142796. Heath and Baldoni

both attended and completed that training in advance of filming. Ex. 5, Baldoni 10/6 Dep. Tr.

51:22 – 52:1–10. Ex. 4, Heath 10/8 Dep. Tr. 399:25 – 400:12.

**Plaintiff's Response 56:**     Disputed to the extent that it suggests the 

Exs. 12, Slate Tr. 38:7–24, 57:25–58:20; 10, Ferrer Tr. 240:21–242:23; 13, Baker Tr.

46:9–47:15, 205:22–25; 281, Lively Tr. 220:19–221:21; Lively Decl. ¶ 26.

57.     During the first phase of filming, Wayfarer distributed a Preliminary Crew List to

the crew that listed Wayfarer's Human Resources contact, Cynthia Barnes Slater. Ex. 68, 24–CV–

10049_0002324.

**Plaintiff's Response 57:**     Undisputed that a preliminary crew list existed and listed

Wayfarer's HR representative, Cynthia Barnes-Slater, but disputed that such list, or Ms. Barnes–

Slater's contact information, was distributed to cast and crew, which the cited evidence does not

support.

Exs. 3, Heath

10/8 Tr. 128:17–134:2; 398:12–19; 12, Slate Tr. 38:15–24; 10, Ferrer Tr. 240:21–23, 242:4–12; 15, Saks Tr. 58:6–20.

58.    All cast and crew were provided daily call sheets on the evening before each day of filming, which included a hotline number for workplace complaints, including sexual harassment, that directed them to a third–party organization to assist with any complaints. Ex. 69, 24–CV–10049_0001427. Ex. 70, Carroll Dep. Tr. 191:1–3. Ex. 4, Heath 10/8 Dep. Tr. 138:22 – 139:2; Ex. 150, BL–000021729; *see also* Ex. 151, BL–000021725 ██████████████ ██████

**Plaintiff's Response 58:**    Undisputed that daily call sheets were provided before filming days, but disputed that the "hotline number" was "for workplace complaints, including sexual harassment," and "directed" any person to an organization "to assist with any" such complaints. The call sheets in Wayfarer Ex. 69 and Wayfarer Ex. 150 list a "safety hotline" with a number for "Vigilant EHS" (Environmental Health & Safety Anonymous Hotline). The cited materials do not state that the hotline was intended for reporting sexual harassment, nor that cast or crew were informed it could be used for such complaints. Heath testified that he ████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ Wayfarer Ex. 151 does not include a call sheet or any reference to a call sheet. Exs. 3, Heath 10/8 Tr. 140:1–141:23; 12, Slate Tr. 38:22–24; 10, Ferrer Tr. 242:19–23; Lively Decl. ¶ 26.

59.    Filming began on May 15, 2023, and then stopped of June 14, 2023, in deference to labor strikes by the Writers Guild of America and SAG–AFTRA. Ex. 3, SAC ¶ 15; Ex. 24, Lively Dep. at 261:15–18; Ex. 71, WAYFARER_000141293.

**Plaintiff's Response 59:**    Undisputed.

60.     All filming during the first phase of filming took place on a set in New Jersey. Ex. 12, Giannetti Dep. at 236:17–19; Ex. 24, Lively Dep. at 261:11–12.

**Plaintiff's Response 60:**     Undisputed.

61.     None of Lively's sexually explicit scenes or scenes involving simulated nudity were rehearsed or filmed during this initial period. Ex. 58, Talbot Dep. at 73:18–24; Ex. 72, SPE_WF0000312 (███████████████████████████████████████

████████████████████████; Ex. 11, Saks Dep. at 203:18–204:14. Those scenes were rehearsed and filmed during a later phase of filming, without issue or incident. *See* Section L, *infra*.

**Plaintiff's Response 61:**     Disputed. A scene involving simulated nudity, in which

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Exs. 16; 13, Baker Tr. 209:20–210:14; 14, Talbot Tr. 69:13–21, 86:7–16, 143:13–25, 145:16–146:17; 17, Robbins Tr. 82:20–83:9; Lively Decl. ¶¶ 14–15.

62.     A scene in which Lively's character gives birth was filmed on May 22, 2023. Ex. 73, 24–CV–10049_0003314 – 3321.

**Plaintiff's Response 62:**     Undisputed.

63.     Lively claims the birthing scene constituted an "intimate" scene because there was implied nudity. Ex. 3, SAC ¶¶ 87–89.

**Plaintiff's Response 63:**     Undisputed.

64.     Footage of the birthing scene shows Lively covered with a hospital gown and a prosthetic pregnancy belly. Ex. 74, WAYFARER_000140494.

**Plaintiff's Response 64:**    Disputed as incomplete and misleading. While certain footage of the birthing scene shows Lively wearing a hospital gown and a prosthetic pregnancy belly, █████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Accordingly, the cited footage does not fully or accurately reflect the ████████████████

████████████████████████████████ Exs. 16; 13, Baker Tr. 209:20–210:14; 14, Talbot Tr. 69:13–21, 86:7–16, 143:13–25, 145:16-146:17; Lively Decl. ¶¶ 14–15; *see also* Wayfarer Ex. 91, at Resp. 23.

    65.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████    *Id.* at 100:10–101:18.

**Plaintiff's Response 65:**    Undisputed that Talbot's testimony included the quoted language, but disputed to the extent this testimony is interpreted to suggest that █████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

26



████████. Ex. 14, Talbot Tr. 69:13–21, 86:7–16, 143:13–147:17.

66. ████████████████████████████████

████████████████████████████████████

██████████████ Ex. 58, Talbot Dep. Tr. 69:18–23.

**Plaintiff's Response 66:**    Undisputed  that  ████████████████

████████████████████████████████████████

██████ Otherwise disputed. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████ Ex. 14, Talbot Tr. 152:16–25, 69:13–23, 86:7–16, 143:13–17; Lively

Decl. ¶ 13.

67. ████████████████████████████████

████████████████████████████████████████

████████████████████████ Ex. 58, Talbot Dep. Tr. 73:18–

24; Ex. 75, Ferrer Dep. Tr. 67:13–15.

**Plaintiff's Response 67:**    Undisputed that the only simulated sex scene shot in the first phase of production did not involve Lively. Disputed to the extent that ███████████ ████████████████████████████████████████████████████████ Exs. 14, Talbot Tr. 69:13–21, 86:7–16, 143:13–25, 145:16-146:17; 17, Robbins Tr. 82:20–83:9.

68.    ████████████████████████████████████████████████

████████████████████ Ex. 58, Talbot Dep. at 78:14–20; Ex. 75, Ferrer Dep. Tr. 39:5–10.

**Plaintiff's Response 68:**    Undisputed.

69.    On June 11, 2023, before the Young Lily and Young Atlas intimate scene was filmed, Baldoni flagged to the production team that they would need to coordinate and work with the intimacy coordinator. Ex. 76, BALDONI_000016437.

**Plaintiff's Response 69:**    Undisputed.

70.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 75, Ferrer Dep. Tr. 32:9–33:5.

**Plaintiff's Response 70:**    Undisputed that ████████████████████████████

████████████████████████████████. Disputed, however, that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████. Exs. 14, Talbot Tr. 169:25–172:19, 175:13–177:23, 188:22–192:16; 18;

19;   10, Ferrer Tr. 20:19–24, 68:3–9, 244:3–245:17; 246:14-248:14. ██████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

     71.    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████. Ex. 75, Ferrer Dep. Tr. 109:7–13.

**Plaintiff's Response 71:**    Undisputed that the quoted language appears in the cited

source, but respectfully refers the Court to the cited source for its complete contents and disputed

as to any summary or interpretation inconsistent therewith. █████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ Exs. 10, Ferrer Tr. 20:19–24, 68:3–9, 244:3–245:17; 246:14–248:14, 252:21–254:3, 283:24–284:9; 14, Talbot Tr. 188:25–192:16.

72.    Ferrer also wrote to Baldoni to thank him for an "incredible" experience on the set. She continued: "you are such a wonderful smart sincere director and you created such a comfortable safe space for me to feel like I could fully step into this role I couldn't have asked for a more welcoming environment. It will stay with me for the rest of my life!!" Ex. 78, BALDONI_000031938.

**Plaintiff's Response 72:**    Undisputed that the quoted language appears in the cited source, but respectfully refers the Court to the cited source for its complete contents and disputed as to any summary or interpretation inconsistent therewith. ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. 10, Ferrer Tr. 254:4–257:13.

73.    In her Second Amended Complaint and deposition testimony, Lively points to various alleged incidents prior to or during this first phase of filming, which she alleges amounted to sexual harassment and contributed to a hostile work environment. *See generally*, Ex. 3, SAC; Ex. 24, Lively Dep. Tr.

**Plaintiff's Response 73:**    Undisputed.

74.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Ex. 24, Lively Dep. Tr. 28:15–21, 29:15–21.

**Plaintiff's Response 74:**    Undisputed that the meeting took place at Lively's apartment, but disputed that ██████████████, which is not accurate and which the evidence does not support.

75.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ *Id.* at 52:07–09.

**Plaintiff's Response 75:**    Undisputed.

76.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ *Id.* at 55:15–17.

**Plaintiff's Response 76:**    Disputed. Lively told her husband and her agent about the comment but does not recall when. Ex. 281, Lively Tr. 52:23–53:2, 56:10–57:7.

77.    On February 28, 2023, after that initial meeting, Lively's husband, Ryan Reynolds, wrote to Baldoni: ██████████████████████████████████████████

███████████████████████████████████ Ex. 79, RR–

SUBPOENA–000000049 at –50.

**Plaintiff's Response 77:**    Undisputed that the quoted language appears in the cited source, but respectfully refers the Court to the cited source for its complete contents and disputed as to any summary or interpretation inconsistent therewith.

78.    On or around April 23, 2023, outside the workplace, and outside the presence of any Wayfarer Studios or IEWUM employee, Baldoni privately asked a personal trainer he had consulted with (who was working separately with Lively) what Lively would weigh when filming began. Ex. 3, SAC ¶ 106; Ex. 5, Baldoni 10/6 Dep. Tr. 73:7–15.

**Plaintiff's Response 78:**    Undisputed that Baldoni asked Lively's longtime personal trainer how much Lively would weigh when filming began, but otherwise disputed as incomplete and misleading. The cited testimony does not establish where Baldoni was located when he asked Lively's longtime personal trainer about her weight, nor does it identify who was present at the time. The testimony also does not support the assertion that this occurred "outside the presence of any Wayfarer Studios or IEWUM employee." To the contrary, Baldoni testified that he shared screenshots of this conversation with Mitz Toskovic, who is employed by Wayfarer as the VP of Operations. Exs. 20, Baldoni 10/6 Tr. 72:24–73:25; 3, Heath 10/8 Tr. 37:7–8; Saladino Decl. ¶¶ 9–10; Lively Decl. ¶¶ 7–8.

79.    Baldoni, who suffers from chronic back issues, asked in anticipation of a scene in which he was expected to lift her. Ex. 5, Baldoni 10/6 Dep. Tr. 296:23–297:10; *see also* Ex. 80, BL–000018761 at –62 ███████████████████████████████

████████████████████████████████████████

███████████████████████████

**Plaintiff's Response 79:**    Disputed. The cited testimony does not state that Baldoni "suffers from chronic back issues," and Defendants identify no evidence supporting that assertion. Wayfarer Exs. 5 Baldoni 10/6 Dep. Tr. 296:23–297:10; 80, at BL–000018762.

80.    Documentary evidence shows that Baldoni contemplated including such a scene in the film as late as December 28, 2023. Ex. 81, BALDONI_000031127 at –28.

**Plaintiff's Response 80:**    Undisputed that the cited document includes a reference to a scene in which Ryle carries Lily. Lively respectfully refers the Court to the full document for its complete contents.

81.    Baldoni never made the same comment in Lively's presence or in the presence of any cast or crew member. Ex. 5, Baldoni 10/6 Dep. Tr. 296:23–297:10.

**Plaintiff's Response 81:**    Disputed as incomplete and misleading. The cited testimony does not indicate whether Baldoni made the same comment in Lively's presence or in the presence of any cast or crew member.

82.    The trainer, acting on his own, decided to share the comment with Lively. Ex. 82, BALDONI_000015397.

**Plaintiff's Response 82:**    Disputed. The cited source does not indicate whether the trainer was acting on his own when he decided to share the comment with Lively, and the evidence that Baldoni initiated the inquiry about Lively's weight supports an inference that the trainer shared the question as a result of Baldoni's inquiry and/or at his behest. Saladino Decl. ¶¶ 9–11.

83.    On or about April 25, 2023, Baldoni met with Lively at her apartment. Ex. 83, BL–000021593. Lively's husband, Ryan Reynolds, and two other famous friends were there. Reynolds chastised Baldoni for commenting on a woman's weight. Ex. 5, Baldoni 10/6 Dep. Tr. 297:4–7.

**Plaintiff's Response 83:**    Undisputed that Baldoni and Lively met on or about April 25, 2023, during which time Lively confronted Baldoni about asking her trainer about her weight. Disputed that "two other famous friends were there" during this discussion. Lively Decl. ¶ 8.

84.    Lively subsequently described the meeting to a friend as follows: " ██████████████

████████████████████████████████████████████████████████████████

██████████████████████ Ex. 84, BL–000021593.

**Plaintiff's Response 84:**    Undisputed that the quoted language appears in the cited source, but respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

85.    Lively also alleged that Baldoni "sham[ed Lively] for her body and weight" by offering to connect her with a specialist in probiotics after Lively caught strep throat, because, Lively alleges, the expert "was instead a weight–loss specialist." Ex. 3, SAC ¶ 108. Lively has not offered any admissible evidence supporting that claim. She did not discuss it during her deposition, and she has not produced any documentary evidence indicating that the expert was a "weight–loss specialist." Documentary evidence shows that Baldoni discussed Lively's illness with the specialist, and not her weight. *See* Ex. 257, BALDONI_000026173.

**Plaintiff's Response 85:**    Undisputed as to the allegation of Lively's Second Amended Complaint and that Lively was not asked about this incident during her deposition. Otherwise disputed. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ Exs. 21 at BENSON_0008; 22 at BL–000008819–20; Lively Decl., ¶¶ 5–6.

86.    In late April 2023, before filming began, Sony executive Ange Giannetti encouraged Baldoni to shoot an R–rated film to reflect the content of the book. In April 28, 2023,

she wrote: "I will [update] sony you are going to try and get as much tasteful hot sex as you can … You find out if we are pg–13 will colleen be ok and does she think her readers will be ok?" Ex. 84, BALDONI_000018544.

**Plaintiff's Response 86:**    Undisputed that Giannetti sent a text message to Baldoni on the specified date containing that language. Otherwise disputed. Wayfarer Ex. 84 does not show that Giannetti encouraged Baldoni to shoot an R–rated film. Instead, Wayfarer Ex. 84 reflects that Baldoni stated he would "do everything [he] can to shoot an R film." Nothing in Wayfarer Ex. 84 attributes this suggestion to Giannetti, Sony, or anyone else. Wayfarer Ex. 84 also does not support the proposition that an R–rated film would reflect the content of the book. In fact, Hoover stated she does not believe the book "is filled with sex," contradicting the Defendants' implication that an R–rating was required "to reflect the content of the book." Wayfarer Ex. 85; *see also* Exs. 15, Saks Tr. 173:3–175:3; 8 at AS000702 ("Making this film PG-13 has proven without a doubt to be what's best for the film and the audience.").

87.    Baldoni discussed Giannetti and Sony's suggestion about additional and more explicit sex scenes with Lively and Colleen Hoover. Ex. 85, BALDONI_00018780.

**Plaintiff's Response 87:**    Disputed. Wayfarer Ex. 85 reflects a discussion between Baldoni and Hoover regarding the character's emotional connection and sex scenes but also does not reflect a discussion of "explicit sex scenes" or any suggestion from Giannetti. Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

88.    On or about May 4, 2023, Baldoni worked with Elizabeth Talbot, the film's intimacy coordinator, to add specifics to the intimate scenes. Ex. 55, BALDONI_00010363. He suggested Talbot discuss the scenes with Lively to determine how to portray more sexual intimacy

in a manner consistent with Lively's personal boundaries and preferences. Ex. 57, BALDONI_000010377.

**Plaintiff's Response 88:**    Undisputed that Wayfarer Ex. 55 includes notes on intimate scenes but disputed to the extent Wayfarer Ex. 55 is construed as identifying all intimate scenes filmed. It is further disputed that Wayfarer Ex. 57 reflects any suggestion by Baldoni that Talbot "discuss the scenes with Lively to determine how to portray more sexual intimacy in a manner consistent with Lively's personal boundaries and preferences." Wayfarer Ex. 57 instead reflects Baldoni's ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████ Ex. 14, Talbot Tr. 141:2–142:12.

89.   ████████████████████████████████████████████
████████████████████████████████████████. Ex. 56, BL–000013564.

**Plaintiff's Response 89:**    Disputed. Wayfarer Ex. 56 does not support the characterization that ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████.

90.   ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 24, Lively Dep. Tr. 132:16–133:4, 137:6–

10.

      **Plaintiff's Response 90:**    Undisputed.

      91.    ██████████████████████████████████. Ex. 24, Lively Dep. Tr.

137:11–24.

      **Plaintiff's Response 91:**    Undisputed.

      92.    Such discussion took place in the context of planning and choreographing a sex

scene. Lively first volunteered her own personal experience before Baldoni shared his. Ex. 8,

Baldoni 10/7 Dep. Tr. 174:25–177:20.

      **Plaintiff's Response 92:**    Disputed. ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

      93.    Baldoni has publicly discussed his prior addiction to pornography on his podcast,

which is aimed at male audiences, and in his published books. Ex. 8, Baldoni 10/7 Dep. Tr. 76:7

– 77:9.

      **Plaintiff's Response 93:**    Undisputed.

      94.    ████████████████████████████████████████████

██████████████████████████. Ex. 24, Lively Dep. Tr. 139:2–140:9.

      **Plaintiff's Response 94:**    Undisputed.

95.     On one occasion, on or about May 16, 2023, Heath entered Lively's make–up trailer while she was having her make–up removed. They had a brief conversation concerning a work–related issue. Ex. 24, Lively Dep. Tr. 126:12–129:16 ███████████████████████████ ████ Ex. 4, Heath 10/8 Dep. Tr. 212:06–07 (indicating that the conversation was between two and three minutes).

**Plaintiff's Response 95:**     Undisputed that Heath entered Lively's makeup trailer on May 16, 2023, and that Lively was "having her make–up removed" but otherwise disputed as incomplete and misleading. ██████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████ Exs. 281, Lively Tr. 123:2–124:24, 126:12–131:2; 23, Carroll Tr. 53:11–55:23, 56:6–57:18, 59:16–61:25; 13, Baker Tr. 71:25–72:24, 74:8–13, 77:10–78:2.

96.     Heath had been seeking to schedule a meeting with Lively, Baldoni, and Giannetti after several failed attempts. At the end of the shooting for the day, Heath suggested that they meet the following day. Lively said they could meet her at her makeup trailer to discuss the timing for the meeting. Ex. 4, Heath 10/8 Dep. Tr. 209:09–210:16.

**Plaintiff's Response 96:**     Disputed as incomplete and misleading. On the second day of filming, ██████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████. Exs. 281, Lively Tr. 123:2–124:24,

126:12–131:2; 23, Carroll Tr. 53:11–55:23, 56:6–57:18, 59:16–61:25; 13, Baker Tr. 71:25–72:24, 74:8–13, 77:10–78:2.

97.    Heath knocked on Lively's trailer door and Lively permitted him to come in. Ex. 4, Heath 10/8 Dep. Tr. 210:19–23; *see also* Ex. 24, Lively Dep. Tr.at 127:17–██████████████

██████████████████████████████████

**Plaintiff's Response 97:**    Disputed. ███████████████████████

███████████████████████████████████

███████████████████████████████

████████████████████████████████

████████████████████████████ Exs. 281, Lively Tr. 123:2–124:24, 126:12–131:2;  23, Carroll Tr. 53:11–55:23, 56:6–57:18, 59:16–61:25; 13, Baker Tr. 71:25–72:24, 74:8–13, 77:10–78:2, 154:9–17██

██████████████████████████████████ 24, Heath 10/9 Tr. 145:16–147:7███████████████████████████████████

████████████████████████████████

████████████████

98.    Lively asked Heath to turn around while he was speaking to her and he did. Ex. 24, Lively Dep. Tr.at 127:22–25 ███████████████████████████████

███████████████████████████████ *see also* Ex. 4, Heath 10/8 Dep. Tr. 211:21–212:1 ("As I took a step up, I saw that she was leaned back. She looked what I though was either maybe breastfeeding or nursing. I said to her, oh, it looks like you're busy, I can come back. As I turned around she says, no, that's okay. You can come in, just look away. And I said sure.").

**Plaintiff's Response 98:**    Undisputed that Lively directed Heath to turn around and that he initially did so. Disputed that Heath faced away from Lively throughout the conversation, during which he ███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████ Exs. 281, Lively Tr. 123:2–124:24, 126:12–131:2; 24, Heath 10/9 Tr. 145:16–147:7.

99.    Lively has testified ████████████████████████████████████████

█████████████████████████████. Ex. 24, Lively Dep. Tr. 129:1–8.

**Plaintiff's Response 99:**    Disputed that Heath ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████. Ex. 281, Lively Tr. 126:12–131:2.

100.    Two weeks after the incident occurred and months before this litigation arose, Lively raised the incident with Heath for the first time. She told Heath: "I asked you to look away and at some point you made eye contact with me….I'm not saying you were trying to cop a look. I'm just saying that I had asked you to turn away and you made eye contact with me." After expressing her displeasure, Lively moved on to other topics. Ex. 4, Heath 10/8 Dep. Tr. 223:12–25.

**Plaintiff's Response 100:**    Disputed. █████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████

101.    A scene in which Lively's character gives birth was filmed on or around May 22, 2023. Ex. 73, 24–CV–10049_0003314 – 3321.

**Plaintiff's Response 101:**    Undisputed.

102.    While shooting the scene, Lively was wearing a hospital gown, a prosthetic belly, and fabric over her genitals. Ex. 74, video clip excerpt of WAYFARER_000140494; Ex. 91, Lively's Second Amended Responses to Wayfarer Studios LLC's Second Set Of Interrogatories, No. 23 (Oct. 9. 2025).

**Plaintiff's Response 102:**    Disputed. While Lively wore a hospital gown, prosthetic belly, and a piece of fabric over her genital area, the video clip in Wayfarer Ex. 74 does not accurately reflect the manner in which the scene was filmed. During the filming of the birth scene,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████ *See* Exs. 16; 23, Carroll Tr. 89:6–19; 14, Talbot Tr. 69:13–21, 86:7–16, 143:13–25; 17, Robbins Tr. 82:20–83:9; Lively Decl. ¶¶ 14–16.

103.    Lively alleged that an actor Baldoni knew was cast as the doctor performing the delivery. SAC ¶ 89.

**Plaintiff's Response 103:**    Undisputed.

104.    The actor playing the doctor was a local union actor. Heath Decl. ¶23.

**Plaintiff's Response 104:**    Disputed that the cited evidence is admissible and sufficiently that the actor playing the OBGYN was a "local union actor."

105.    Lively has subsequently alleged that Steve Sarowitz was present on set during the birthing scene. Ex. 3, SAC ¶ 89; Ex. 24, Lively Dep. Tr. 50:2–8.

**Plaintiff's Response 105:**    Undisputed.

106.    Sarowitz testified that he was not on set during the filming of the birthing scene. Ex. 6, Sarowitz Dep. Tr. 169:24–25, 172:20–173:3, 211:16–18, 255:13–17; *see also* Ex. 86, SAROWITZ_000000 at –899–900. He arrived later, after the scene was filmed. Ex. 6, Sarowitz Dep. Tr. 173:10–12.; Ex. 11, Saks Dep. Tr.at 46:4–47:17; Ex. 4, Heath 10/8 Dep. Tr. 197:4–16. In fact, he only visited the set twice. Ex. 6, Sarowitz Dep. Tr. 120:25–121:2, 230:16–21. He visited briefly for part of one day and just a few minutes on another day, which happened to be the day the birthing scene was shot. Ex. 6, Sarowitz Dep. Tr. 319:25–320:3, Tr.at 173:4–12. Vivian Baker,

███████████████████████████████████████████████████

███████████████████████████████ Ex. 87, Baker Dep. Tr. 149:21–150:2.

**Plaintiff's Response 106:**    Undisputed as to Sarowitz and Baker's testimony. Disputed as to the remainder. Lively recalls Sarowitz being on set during the birthing scene. In response to whether he was "essential crew" to be on set that day, Sarowitz stated: "While I might have technically been non–essential, I did invest $30 million and paid for her salary, or at least my share of it, as well as the other actors, and I consider that to be essential. Lively considers that not to be essential, she can send me a check. I can give her an address or you could give it to her." Exs. 11, Sarowitz Tr. 168:24–171:5; Lively Decl. ¶ 12.

107.    Sarowitz later spoke to Adam Mondschein—who appeared in the birthing scene—regarding events on set. Mondschein did not raise anything negative about his experience on set and shared a positive experience. Ex. 6, Sarowitz Dep. Tr. 235:9–236:25. He confirmed that Sarowitz was not on set during the filming of the scene. Ex. 6, Sarowitz Dep. Tr.at 236:6–238:7.

**Plaintiff's Response 107:**    The Defendants' assertion is unsupported by any admissible evidence, as Sarowitz's testimony was based entirely on inadmissible hearsay. FRE 801(c), 802.

108.    Sarowitz did not know what scenes were being filmed at any given time. Ex. 6, Sarowitz Dep. Tr. at 172:21–22. And he made no conscious decision to see Lively in any particular scene while shooting. Ex. 6, Sarowitz Dep. Tr. at 172:22–173:3. Sarowitz did not know the birthing scene was being shot on the day it was shot. Ex. 6, Sarowitz Dep. Tr. at. 173:7–12.

**Plaintiff's Response 108:**    Disputed. Sarowitz was aware that the birthing scene would be filmed on May 22, 2023. On May 15, 2023, Sarowitz's Chief of Staff emailed Wayfarer that Sarowitz wanted to come to set on May 22, 2023, and on May 21, 2023, Sarowitz's Chief of Staff was sent the call sheet showing that the birthing scene would be filmed the next day. Ex. 25.

109.    During his first visit on set, Sarowitz spoke to Brandon Sklenar. Sklenar was effusive in his praise for Baldoni, his directing, Wayfarer, and how he had been treated in general. Ex. 6, Sarowitz Dep. Tr. at 232:16–24, 233:6–9.

**Plaintiff's Response 109:**    The Defendants' assertion is unsupported by any admissible evidence, as Sarowitz's testimony was based entirely on inadmissible hearsay. FRE 801(c), 802.

110.    During that first visit, Sarowitz also spoke to Lively for a minute or two. It was a very friendly meeting, and she did not voice any complaints. Ex. 6, Sarowitz Dep. Tr. at 234:10–235:7.

**Plaintiff's Response 110:**    Undisputed. Sarowitz testified as set forth above, but Lively respectfully refers the Court to the deposition transcript for its complete contents.

111.    ███████████████████████████████████████████████████
████████████████    Ex. 24, Lively Dep. Tr. at 49:23–50:1.

**Plaintiff's Response 111:**    Undisputed.

112.    Lively has never discussed with Sarowitz her claims of sexual harassment. Ex. 24, Lively Dep. Tr. at 49:20–22.

**Plaintiff's Response 112:**    Undisputed.

113.    On or about May 18, 2023, Baldoni commented that actor Jenny Slate looked "sexy" in her character's wardrobe, which included black leather pants. Ex. 13, Slate Dep. Tr. 51:14–18; Ex. 11, Saks. Dep. Tr. 104:6–15; Ex. 8, Baldoni 10/7 Dep. Tr. 203:12–23. He made this comment in the presence of others, during the course of their work on the film. *Id*.

**Plaintiff's Response 113:**    Undisputed that Baldoni told Slate she "looked sexy." The remainder is disputed as incomplete and misleading. Baldoni told Slate, ███████████ ████████████████████████████████████████████ Exs. 12, Slate Tr. 51:16–54:7; 4, Baldoni 10/7 Tr. 202:8–203:17. Slate testified that ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Ex. 12, Slate Tr. 51:16–54:7.

114.    On or about May 23, 2023, Lively testified that █████████████████ ████████████████████████████████████████████████████████ ██████████████████. Ex. 24, Lively Dep. Tr.at 83:16–85:09, 191:13–192:4.

**Plaintiff's Response 114:**    Undisputed that ████████████████████ ████████████████████████████████████████████████████████ ████████████████████. The remainder is disputed as incomplete and misleading because the cited testimony is taken out of context. █████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

███████████████████████████████████████████. Ex. 281, Lively Tr. 83:16–91:11, 92:18–97:14.

115.    ████████████████████████████████████████████████████

██████ Ex. 24, Lively Dep. Tr. 100:18–102:25.

**Plaintiff's Response 115:**    Undisputed that Baldoni used the quoted words but otherwise disputed as incomplete and misleading because the cited testimony omits critical context. On May 23, 2023, while shooting a bar scene in the presence of crew and multiple actors, Baldoni pressured Lively to remove her jacket to expose the partially unzipped "onesie" she was wearing underneath that revealed her lace bra. Lively removed her coat and, looking at her, Baldoni said, "pretty hot," █████████████████████████████████████. Lively responded "that's not what I was going for." Baldoni responded stating, "sexy?," to which Lively responded "neither." ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ Ex. 12, Slate Tr. 42:7–44:18 █████████████████████ 281:16–283:23. Baldoni responded by rolling his eyes and stating, "Sorry. I missed the sexual harassment training," before ████████████████ Exs. 281, Lively Tr. 101:5–103:5, 113:1–11; 4, Baldoni 10/7 Tr. 230:2–232:16; 12, Slate Tr. 58:23–59:8, 89:16–20; *see also* Wayfarer Ex. 281 at 20230523–IEWU–PPD7 at 12:36:45–12:37:42.

116.    Video footage of the incident shows Lively was fully dressed in an oversized fleece "onesie" at the time, that numerous actors and crew were also present and engaged in ongoing work at time, that Baldoni's facial expression was neutral and not ogling or suggestive, and that,

after Baldoni apologized if his remark was inappropriate, Lively responded by saying "All good." Ex. 281, video clip excerpt of WAYFARER_000140494.

> **Plaintiff's Response 116:**    Disputed as incomplete and misleading because the footage in Wayfarer Ex. 281 omits critical context. On May 23, 2023, while shooting a bar scene in the presence of crew and multiple actors, Baldoni pressured Lively to remove her jacket to expose the partially unzipped "onesie" she was wearing underneath that revealed her lace bra. Lively removed her coat and, looking at her, Baldoni said, "pretty hot," ███████████████████████ ████████████████████ Lively responded "that's not what I was going for." Baldoni responded stating, "sexy?," to which Lively responded "neither." ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ Ex. 12, Slate Tr. 42:7–44:18 ████████████████████ 281:16–283:23. Baldoni responded by rolling his eyes and stating, "Sorry. I missed the sexual harassment training," before ███████████████████ Exs. 281, Lively Tr. 101:5–103:5, 113:1–11; 4, Baldoni 10/7 Tr. 230:2–232:16; 12, Slate Tr. 58:23–59:8, 89:16–20; *see also* Wayfarer Ex. 281 at 20230523–IEWU–PPD7 at 12:36:45–12:37:42.

117.    Lively has testified that, sometime in late May 2023, Heath ██████████ showed Lively an image of his wife giving birth. Ex. 24, Lively Dep.at 188:17–190:21. Lively said she stopped watching the video because there was ██████████████ in it. *Id*.

> **Plaintiff's Response 117:**    Undisputed that the quoted language appears in Lively's deposition, but Lively respectfully refers the Court to the deposition transcript for its complete contents.

118.    Heath and his wife had a home birth for their younger daughter, using a birthing tub. Ex. 4, Heath 10/8 Dep. Tr. 179:23–180:7.

**Plaintiff's Response 118:**    Undisputed.

119.    Baldoni had asked Heath to show Lively a video of the experience—which Baldoni had previously seen—showing Heath and his wife in a birthing tub, surrounded by their family. Ex. 8, Baldoni 10/7 Dep. Tr. 300:15–301:18; Ex. 12, Giannetti Dep. Tr. 120:19–23. ██████████

████████████████████████████████████████████████████████████████

████  Ex. 12, Giannetti Dep. Tr. 123:9–12; Ex. 70, Carroll Dep. Tr.at 109:1–2.

**Plaintiff's Response 119:**    Undisputed that Baldoni asked Heath to show Lively the birth video. Disputed that Heath showed Lively the portion of the video depicting Heath and his wife surrounded by their family. Also disputed that ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████  Exs. 281, Lively Tr. 188:17–190:21; 3, Heath 10/8 Tr. 191:23–192:4; 13, Baker Tr. 118:2–119:2; 26 at BL-000021685.

120.    Heath testified that he showed Lively a video depicting: "our midwife, my sister, my kids, my wife, myself, our newborn baby. I believe we were singing or praying." Heath and

his wife were in a birthing tub with the baby, who was covered in a towel. Ex. 4, Heath 10/8 Dep. Tr. 179:23–180:25.

**Plaintiff's Response 120:**     Undisputed that Heath testified that he showed Lively a video depicting "our midwife, my sister, my kids, my wife, myself, our newborn baby. I believe we were singing or praying." The remainder is disputed as incomplete and misleading. ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ 281, Lively Tr. 188:17–190:21; 3, Heath 10/8 Tr. 191:23–192:4; 13, Baker Tr. 118:2–119:2; 26 at BL-000021685.

121.    ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

**Plaintiff's Response 121:**     Undisputed that the quoted language appears in Giannetti's deposition, but Lively respectfully refers the Court to the deposition transcript for its complete contents.

122.    ███████████████████████████████████████ Ex. 12, Giannetti Dep. Tr. 122:03–04.

**Plaintiff's Response 122:**     Undisputed that ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ The remainder is disputed as incomplete and misleading because it omits critical subsequent events. ████████████████████████████████████

████████████████████████████████████████████████████████████████



Exs. 281, Lively Tr. 76:3– 80:20; 2, Giannetti Tr. 108:24–
114:9, 116:1–117:25, 132:1–135:6; 27 at BL–000007954; 3, Baldoni 10/7 Tr. 180:2–185:22; 17,
Robbins Tr. 93:13–94:8, 220:18–221:5; Wayfarer Ex. 92.

123.                                                        . Ex. 12, Giannetti
Dep. Tr. 122:06–07.

**Plaintiff's Response 123:**    Undisputed but Lively respectfully refers the Court to the
deposition transcript for its complete contents.

Ex. 17, Robbins Tr.
93:13–94:8, 220:18–221:5.

124.

Ex. 12, Giannetti Dep. Tr. 122:7–22.

**Plaintiff's Response 124:**    Disputed that Heath showed Giannetti "the image," to the extent that refers to the same material that Heath showed to Lively. Giannetti does not know if the video Heath showed her was the same video that Lively saw. Ex. 2, Giannetti Tr. 122:20–25.

125.    ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ Ex. 12, Giannetti Dep. Tr. 124:21– 125:02.

**Plaintiff's Response 125:**    Undisputed that ████████████████████████ ██████████████████████████████████████████████.

126.    Lively also alleges that, during the first phase of filming, while riding in a car with Lively, her assistant, and her driver, Baldoni stated that he had not always obtained consent before sex. Ex. 3, SAC ¶ 93.

**Plaintiff's Response 126:**    Undisputed.

127.    Baldoni was not questioned about this incident during two days of depositions.

**Plaintiff's Response 127:**    Undisputed.

128.    He recalls a conversation with Lively in which he told her about his own experience of having a romantic partner go beyond his personal boundaries of consent. Decl. of Justin Baldoni ("Baldoni Decl.) at ¶3.

**Plaintiff's Response 128:**    Undisputed.

129.    Baldoni has written about this experience in his published books and discussed in in public talks. Ex. 8, Baldoni 10/7 Dep. Tr. 20:2–18, 22:22–23:11, 27:16–22; Baldoni Decl. ¶4.

**Plaintiff's Response 129:**    Undisputed.

130.    Lively's subsequent conduct confirms Baldoni's account. In her "protections" demands, she objected to Baldoni referring ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 89, BL–000021208.

**Plaintiff's Response 130:**    Undisputed that Lively objected to Baldoni referring █

████████████████████████████████████████████████████████████

████████████████████████████████████████████. Disputed that ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Exs. 28, Security Tr. 44:19–46:4; 46:12–47:9; 87:12–90:8; 92:23–93:10; 29.

131.    On or about May 26, 2023, Lively and her baby contracted COVID on set. Ex. 90, BL–000011538.

**Plaintiff's Response 131:**    Undisputed.

132.    Other cast and crew members also got COVID. Ex. 24, Lively Dep. Tr. 184:1–8.

**Plaintiff's Response 132:**    Undisputed.

133.    Lively included her COVID exposure in her list of incidents that required "protections," as discussed below, and also alleges it as part of her harassment claims. Ex. 88, BL–000026031; Ex. 3, SAC ¶109.

**Plaintiff's Response 133:**    Undisputed.

134.    █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████    Ex.92, BL000033431.

**Plaintiff's Response 134:**    Undisputed that on ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███    Disputed ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████    Exs. 281, Lively Tr. 76:3–80:20; Wayfarer Ex. 92.

135.    In an email on the same date, Lively ████████████████████████████

████████████████████████████████████████████.  Ex. 93, BL–000007955 at –

56. Lively's email did not mention "sexual harassment" or "discrimination" or make any

accusation that any conduct rising to that level had occurred.

**Plaintiff's Response 135:**    Undisputed that the document reflects the quoted language

in the first sentence. Disputed as to the second sentence to the extent it suggests that Lively was

required to use specific buzz words like "sexual harassment" or "discrimination" or that Lively

had not made "any accusation that any conduct rising to that level had occurred." ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. Exs. 281, Lively Tr. 76:3–80:20; 2, Giannetti Tr. 108:24–114:9, 116:1–117:25, 132:1–135:6; 27, at BL–000007954; Wayfarer Ex. 92; 4, Baldoni 10/7 Tr. 180:2–185:22.

       136.   ████████████████████████████████████████████

████████████████████████████████████████████ Ex. 12, Giannetti Dep. Tr. 138:2–7, 143:1–6; *see also* Ex. 39, BL–000018396 at –97 ████████

████████████████████████████████████████; Ex. 94, BL–000011615 at –16.

      **Plaintiff's Response 136:**    Undisputed that ████████████████

████████████ The remainder is disputed as incomplete and misleading. The cited materials do not support the implication that █████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Exs. 15, Saks Tr. 90:16–92:16; 2, Giannetti Tr. 143:1–6, 156:23–157:4, 159:14–160:14; 30, at SPE_BL0002030–2031.

137.    On May 28, 2023, Lively discussed the production with fellow cast member ███ ███ Ex. 95, BL–000020770 at –1–4. In this communication, ██████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *Id.* at –1.

**Plaintiff's Response 137:**    Undisputed that the quoted language is included in Wayfarer Ex. 95, but Lively respectfully refers the Court to the full communication for its complete contents and disputes any summary or interpretation inconsistent therewith.

138.    Lively did not contact Wayfarer's HR department during the production, nor did she file a formal sexual harassment complaint with Sony or Wayfarer's HR departments at any time. Ex. 12, Giannetti Dep. Tr. 299:22–300:15; Ex. 96, WAYFARER_000149780 (email from Cynthia Barnes Slater confirming that Blake Lively did not make a complaint to Wayfarer's HR department).

**Plaintiff's Response 138:**    Undisputed that Lively did not contact Wayfarer's HR consultant or Sony's HR department. The remainder is disputed as incomplete and misleading because it omits critical context. ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████ Ex. 17, Robbins Tr. 93:13–94:8, 220:18–221:5. The Defendants' reference to a "formal sexual harassment complaint" is vague, undefined, and appears to be a legal conclusion. The cited materials do not support any implication that Lively failed to report her concerns.

139.    On June 1, 2023, Lively asked Baldoni, Heath, and producer Alex Saks into her trailer. Ex. 24, Lively Dep. Tr. 188:7–16; Ex. 4, Heath 10/8 Dep. Tr. 213:13–25. Lively discussed various topics, including: Baldoni's comment that the wardrobe for Lively's character looked "sexy" or "hot"; Heath showing Lively an image of his wife at around the time she gave birth; an instance in which Heath entered her makeup trailer while Lively was in a state of undress; an instance in which Baldoni had cried in her trailer over the negative public reaction to Lively's casting; and Heath and Baldoni's practice of hugging other cast and crew members. Ex. 97, NATHAN_00003767 attaching Ex. 219, NATHAN_00003768; *see also* Ex. 24, Lively Dep. Tr. 191:13–192:4.

**Plaintiff's Response 139:**    Undisputed that Lively raised concerns about each of these topics to Saks, Heath and Baldoni during the June 1, 2023 meeting. But disputed that such concerns were with respect to (a) comments about Lively's wardrobe, ████████████ ████████████ (b) Heath showing Lively an "image" "around the time" of his wife's birth, rather than a video of ████████████; and (c) only Heath entering her trailer, rather than also ████████████ after she asked him to turn away. Exs. 30; 2 Giannetti Tr. 156:23–159:13; 15 Saks Tr. 134:17–139:16. ████████████████

55

███████████████████████████████████████████████████

████████████████████████████████████████████

████ Ex. 281, Lively Tr. 186:14–187:16.

140.  Baldoni and Heath attempted to explain the innocent context and apologized for any discomfort Lively may have experienced. *See, e.g.*, Ex. 4, Heath 10/8 Dep. Tr. 219:6–25, 284:6–12, 290:11–24.

**Plaintiff's Response 140:**    Undisputed that Baldoni and Heath tried to justify their decision to show Lively a video of Heath's naked wife giving birth, claiming that they "thought she wanted to see it." Disputed as to the characterization of their explanation as providing "innocent context," which is argumentative and unsupported by the record. ███████████

███████████████████████████████████████████████████

███████████████████████████  The cited testimony does not establish that the context was "innocent," only that Baldoni and Heath offered their own justification after the fact. Ex. 281, Lively Tr. 186:5–187:16.

141.  █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████  *Id.* at 130:12–131:11.

**Plaintiff's Response 141:**    Undisputed that the quoted language appears in Giannetti's deposition, but Lively respectfully refers the Court to the deposition transcript for its complete contents. Even though ████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████ . Ex. 17, Robbins Tr. 93:13–94:8, 220:18–221:5.

    142.   ████████████████████████████████████████████████████████

█████████████████████████ . Ex. 12, Giannetti Dep. Tr. 147:15–148:10; Ex. 11, Saks Dep. Tr. 100:20–

108:18; Ex. 95, BL–000020771; Ex. 98, SPE_BL00020 at –24. █████████████████████████

██████████████████████████████ . Ex. 12, Giannetti Dep. Tr. 149:1–4. █████████████████████

█████████████████████████████████████████████████████████ Ex. 11, Saks Dep. Tr.

104:6–10.

    **Plaintiff's Response 142:**    Undisputed that Slate spoke with Giannetti and Saks about

issues on the production. The remainder is disputed as incomplete and misleading. Slate raised

multiple concerns about Baldoni and Heath, which were not "primarily focused on Lively's

concerns about the set." ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

    ███████████ Exs. 15, Saks Tr. 101:15–102:15; 12, Slate Tr. 51:16-54:7, 58:23-59:8. In a text to

Giannetti that same day, Saks noted that ██████ concerns were "very bad" and stated "I think we

need to replace our director. And [Heath] should not be on set." Saks went on to share that ████

"really would prefer to never see [Heath] again…" Exs. 15, Saks Tr. 99:10–20, 102:5–

106:15;108:19–112:1; Wayfarer Ex. 98. ████████████████████████████████████

██████████████████████ Ex. 2, Giannetti Tr. 148:22–149:24.

143.    On May 30, 2023, Baldoni wrote messages to Lively and Slate separately, thanking them for their work and stating: "I was made fully aware of your concerns. I wanted you to know that they are fully received, I hear you, and adjustments will be made accordingly. I appreciate your feedback and really looking forward to working with you at the end of the week." Ex. 99, WAYFARER_000141469 at –71; *see also id.* (message to Lively, using similar language).

**Plaintiff's Response 143:**    Undisputed, but Lively respectfully refers the Court to the full document for its complete contents and disputes any summary or interpretation inconsistent therewith. Additionally, ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. 12, Slate Tr. 100:17-101:12.

144.    Giannetti testified ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. 12, Giannetti Dep. Tr. 150:7–151:5.

**Plaintiff's Response 144:**    Undisputed that the quoted language appears in Giannetti's deposition, but Lively respectfully refers the Court to the deposition transcript for its complete contents. ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. Ex. 17, Robbins Tr. 93:13–94:8, 220:18–221:5.

145.    Neither Lively nor anyone else have identified any other incidents that they believe may have constituted sexual harassment or discrimination after June 1, 2023. *See, e.g.*, Ex. 11, Saks Dep. Tr. 198:22–199:2; *see generally* Ex. 3, SAC.

**Plaintiff's Response 145:**    Disputed.



Further, the entire course of retaliatory conduct that began with Baldoni's

which was ongoing and continues to this day. In addition, Defendants have engaged in an ongoing course of retaliatory harassing conduct, including by

, ¶¶ 624-632. Exs. 10, Ferrer Tr. 68:3–9, 244:3–245:17; 246:14–248:14; 14, Talbot Tr. 188:25–192:16; Exs. 281, Lively Tr. 101:5–103:5, 104:2–106:20, 113:1–11, 118:19–120:4; 12, Slate Tr. 42:7–44:18, 58:23–59:8, 88:25–90:19; 15, Saks Tr. at 134:5–145:15; 30 at SPE_BL0002026–2029.

146.    ███████████████████████████████████████████

███████████████████████████████████████████ Ex. 13,

Slate Dep. Tr. 296:3–8.

**Plaintiff's Response 146:**    Undisputed as to Slate's testimony. Disputed to the extent

that it suggests Lively ever asked or suggested ███████████████████, which is not

supported by the cited evidence, and which ████████████

147.    Sarowitz has no firsthand knowledge of anyone on the set of *It Ends With Us*

advising Baldoni that any behavior was unwelcome. Ex. 6, Sarowitz Dep. Tr. 198:2–16, 199:2–5.

**Plaintiff's Response 147:**    Undisputed that the paraphrased language appears in

Wayfarer Ex. 6, but Lively respectfully refers the Court to the deposition transcript for its complete

contents.

148.    Prior to this litigation, Sarowitz was not aware of any formal HR complaints that

were filed in connection with the film. Ex. 6, Sarowitz Dep. Tr. 202:3–9, 275:11–12.

**Plaintiff's Response 148:**    Disputed. ███████████████████████████

██████████████████████████████. *See, e.g*, Exs.

281, Lively Tr. 76:3– 80:20; 2, Giannetti Tr. 108:24–114:9, 116:1–117:25, 132:1–135:6; 4,

Baldoni 10/7 Tr. 180:2–185:22; 12, Slate Tr. 113:21-116:1. ████████████████

███████████████████████████████████████████

███████████████████████████████████ Exs. 11,

Sarowitz Tr. 285:19–286:8; 3, Heath 10/8 Tr. 256:18–260:23; 31. ████████████████.

Ex. 11, Sarowitz Tr. 209:11–211:3.

149.    Sarowitz was not aware of any SAG complaints that were raised concerning

Baldoni's behavior on the set of the film. Ex. 6, Sarowitz Dep. Tr. 202:3–9.

**Plaintiff's Response 149:**    Undisputed.

150.    Nor was he aware of any reported allegations of misconduct prompting an HR investigation at Wayfarer Studios. Ex. 6, Sarowitz Dep. Tr. 213:15–19, 221:19–24, 224:4–11, 256:17–20.

**Plaintiff's Response 150:**    Disputed. ███████████████

███████████████████████████████

███████████████████████████████

████████████████    Ex. 31 at HEATH_000035493.

151.    Nor does Sarowitz have any knowledge of any actual behavior on set that could be described as sexual advances or requests for sexual favors, verbal abuse of a sexual nature, commentary about an individual's body, sexual prowess, or sexual deficiencies, sexual jokes and innuendo, leering, whistling, or touching, insulting or obscene comments or gestures, display in the workplace of sexually suggestive objects or pictures, or other physical, verbal, or visual conduct of a sexual nature, outside of the subject matter of the film itself. Ex. 6, Sarowitz Dep. Tr. 217:19–218:4.

**Plaintiff's Response 151:**    Disputed. ████████████████

██████████████████████████████    *See, e.g,*

Exs. 281, Lively Tr. 76:3– 80:20; 2, Giannetti Tr. 108:24–114:9, 116:1–117:25, 132:1–135:6; 4, Baldoni 10/7 Tr. 180:2–185:22; 12, Slate Tr. 113:21-115:9. ████████████

████████████████████████████████

████████████████████████████    Exs. 11,

Sarowitz Tr. 285:19–286:8; 3, Heath 10/8 Tr. 256:18–260:23; 31. ████████████

███    Ex. 11, Sarowitz Tr. 209:11–211:3.

152.    Sarowitz is not aware of any complaints raised on set that were not resolved. Ex. 6, Sarowitz Dep. Tr. 221:4–18.

**Plaintiff's Response 152:**    Disputed. 

See, e.g, Exs. 281, Lively Tr. 76:3– 80:20; 2, Giannetti Tr. 108:24–114:9, 116:1–117:25, 132:1–135:6; 4, Baldoni 10/7 Tr. 180:2–185:22; 12, Slate Tr. 113:21-115:9.

Exs. 11, Sarowitz Tr. 285:19–286:8; 3, Heath 10/8 Tr. 256:18–260:23; 31.

. Ex. 11, Sarowitz Tr. 209:11–211:3. The cited evidence does not support that the foregoing were "resolved."

153.    Sarowitz was aware that Jenny Slate had a concern on set at one point, but he was not aware of the specifics of the issue and believed it was resolved. To his knowledge, there were no additional issues or concerns raised by Slate. Ex. 6, Sarowitz Dep. Tr. 266:5–14, 267:14–16, 268:24–25.

**Plaintiff's Response 153:**    Disputed. 

Ex. 31 at HEATH_000035493.

154.    Sarowitz has never talked to Slate or met her. Ex. 6, Sarowitz Dep. Tr. 267:17–24.

**Plaintiff's Response 154:**    Undisputed.

155.    Sarowitz is unaware of any alleged complaint by Lively that Baldoni referred to her as sexy. Ex. 6, Sarowitz Dep. Tr. 265:16–19.

**Plaintiff's Response 155:**    Disputed. ███████████████████

████████████████████████████████████████████████ *See, e.g*, Exs.

281, Lively Tr. 76:3– 80:20; 2, Giannetti Tr. 108:24–114:9, 116:1–117:25, 132:1–135:6; 4,

Baldoni 10/7 Tr. 180:2–185:22; 12, Slate Tr. 113:21-115:9. ████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Exs. 11,

Sarowitz Tr. 285:19–286:8; 3, Heath 10/8 Tr. 256:18–260:23; 31. ████████████████

Ex. 11, Sarowitz Tr. 209:11–211:3.

156.    On June 1, 2023, ████████████████████████████████

████  Ex. 100, BL–000020779 at –80.

**Plaintiff's Response 156:**    Undisputed that the quoted language appears in Wayfarer

Ex. 100, but Lively respectfully refers the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

157.    Filming halted on June 14, 2023 due to the Writers Guild of America and SAG–

AFTRA strikes. Ex. 3, SAC ¶ 15; Ex. 24, Lively Dep.at 261:15–18; Ex. 71,

WAYFARER_000141293.

**Plaintiff's Response 157:**    Undisputed.

158.    On July 19, 2023, approximately one month after filming had been interrupted due

to the writers' strikes, Lively wrote to ████████████████████████████

████████████████████  She told ██████████████████████████

████████████████████████████████████████████████

████    Ex. 101, BL-000011555 at -56.

**Plaintiff's Response 158:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.  Lively Dec. ¶ 27.

159.    On August 29, 2023, Lively wrote to her agent, ███████████████████

████████████████████████████████████████████████████████████

████████████████    Ex. 102, BL-000021967 at -71.

**Plaintiff's Response 159:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Undisputed that on August 29, 2023, Lively wrote to ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████    Wayfarer Ex. 102 at BL-000021968.

160.    During the next two months, Lively did not file any HR complaint.

**Plaintiff's Response 160:**    Undisputed that Lively did not file an HR complaint between August 29, 2023 and October 29, 2023.

161.    On November 9, 2023, Lively's attorney sent Imene Meziane, Vice President of Business and Legal Affairs at Wayfarer, and Joseph Lanius, outside counsel to IEWUM, a list of "Protections for Return to Production."  Ex. 103, WAYFARER_000140991.

**Plaintiff's Response 161:**    Undisputed.

162.     In an email accompanying the list, Lively's attorney stated that the list was being provided "to remedy the misconduct that Ms. Lively and others had allegedly reported."  Lively's attorney further stated that items on the list would need to be "observed by the Film's producers" "in order for [Lively] to feel safe returning to the production."  The email also stated "While we reserve all legal rights, at this stage our client is willing to forego a more formal HR process in favor of everyone returning to work and finishing the Film as long as the set is safe moving forward."  It continued: "This letter is not intended to be, nor should it be construed as, a waiver, release or relinquishment of any of our client's rights or remedies, legal or equitable, all of which are hereby expressly reserved." Ex. 103, WAYFARER_000140991.

**Plaintiff's Response 162:**     Disputed that the language "to remedy the misconduct that Ms. Lively and others had allegedly reported," appears in the cited source. *See* Wayfarer Ex. 103. Undisputed that the remaining quoted language appears in the cited source, with the correction that it says "It is not intended to be," rather than "This letter is not intended to be." *Id.* Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

163.     Lively requested that an intimacy coordinator must be present at all times when she was on set.  SAC Ex. A, ¶ 1.

**Plaintiff's Response 163:**     Undisputed that Lively requested that an intimacy coordinator be present at all times when she returned to set after the hiatus.

164.     IEWUM had already retained an intimacy coordinator ███████████ ███████. *See* Ex. 53, BL-000009220.

**Plaintiff's Response 164:**     Undisputed that an intimacy coordinator was hired in April 2023 and made available to Lively for a meeting prior to the start of filming, but disputed to the

extent this fact is intended to imply that this is the same as the condition Lively requested, *i.e.*, that an intimacy coordinator be present at all times. Wayfarer Ex. 53 at BL-000009221–9221.

165.    Lively requested a closed set for any scene involving simulated sex or nudity, subject to a nudity rider and demanded that there be no rehearsal or filming of intimate scenes without such a rider in place.  Ex. 3, SAC; SAC Ex. A, ¶¶ 2, 7, 15.  Lively also sought an exception to the closed set requirement for an unspecified "representative of her choosing."  *Id.* ¶ 8.

**Plaintiff's Response 165:**    Disputed as to the summary and characterization of Lively's requests at paragraphs 2, 7, and 15 of SAC Ex. A, which were as follows:

2. "There must be a closed set during the rehearsal or filming of any scene involving simulated sex or nudity and any observation via remote monitors shall be restricted to essential personnel as approved by BL (to be further described in a fully-negotiated, fully-executed, SAG-compliant nudity rider ("Nudity Rider");

7. "There shall be no rehearsal or filming of any nudity and/or simulated sex without the Nudity Rider in place. Any such footage previously shot without the Nudity Rider in place, and in direct violation of SAG requirements, may not be used without BL's and her legal representatives' prior, written consent";

15. "Any rehearsal or shooting involving Ms. Lively, or any other performer depicting the character of 'Lily,' that involves nudity (including partial nudity) or simulated sex must be conducted strictly in accordance with the Nudity Rider and must adhere to the approved script";

8. "BL may have a representative of her choosing present with her on set for the remainder of the rehearsal and shooting days, including while on a closed set." Ex. 32 at WAYFARER_000140992–140993.

166.    The film's intimacy coordinator had already sought Lively's input on all intimate scenes in advance, and the parties had negotiated a nudity rider that Lively had already been provided.  Ex. 60, 24-CV-10049_0001816.

**Plaintiff's Response 166:**    Disputed.  The cited document does not support the proposition that the film's intimacy coordinator had already sought Lively's input on all intimate scenes in advance. Wayfarer Ex. 60. The film's intimacy coordinator for the first phase of filming, ███ th █████████████████████████████████████████████████. Exs. 19 at 24-CV-10049_0003612; 14, Talbot Tr. 160:6–162:17, 185:2–186:22, 194:8–195:5.

167.    Lively requested pre-approval of any scenes involving physical touching, simulated sex, or nudity.  Ex. 3, SAC; SAC Ex. A, ¶ 3.

**Plaintiff's Response 167:**    Disputed as to the summary and characterization of Lively's requests at paragraph 3 of SAC Ex. A, which were as follows:

3. "There is to be no spontaneous improvising of any scenes involving physical touching, simulated sex, or nudity. Scenes involving kissing, depictions of sexual intercourse, or any other physical touching must be contained in the screenplay (as approved by BL), choreographed in advance in the presence of the intimacy coordinator, and may only proceed as choreographed with the consent of all participants in advance." Ex. 32 at WAYFARER_000140992.

168.    The Offer Letter setting out the basic terms of Lively's participation already provided that there would be "no nudity / simulated sex without Artist's prior written consent and negotiation/execution of a nudity rider."  Ex. 28, HEATH_000045678 at 80.

**Plaintiff's Response 168:**    Undisputed that the Offer Letter provided that there would be "[n]o nudity/simulated sex without Artist's prior written consent and negotiation/execution of

67

a nudity rider," but disputed that this term "already provided" the protection sought in Lively's Protections for Return to Production. Ex. 32 at WAYFARER_000140992–140993.

169.   Lively requested that any footage involving "any nudity and/or simulated sex…previously shot without the Nudity Rider" in place could not be used.  Ex. 3, SAC; SAC Ex. A, ¶ 7.

**Plaintiff's Response 169:**   Disputed. Lively requested the following:

7. "There shall be no rehearsal of filming of any nudity and/or simulated sex without the Nudity Rider in place. Any such footage previously shot without the Nudity Rider in place, and in direct violation of SAG requirements, may not be used without BL's and her legal representatives' prior, written consent." Ex. 32 at WAYFARER_000140992.

170.   There were no such scenes. ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

**Plaintiff's Response 170:**   Disputed. A scene in ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

covering her genitals. Exs 16; 13, Baker Tr. 209:20–210:14; 14, Talbot Tr. 145:16-146:17; Lively Dec. ¶¶ 13–15.

171.   Lively requested that no one enter her trailer while she was in a state of undress. SAC Ex. A, ¶ 6.

**Plaintiff's Response 171:**     Undisputed that Lively requested that "No one will enter, attempt to enter, interrupt, pressure, or request entrance for BL's trailer while she is in a state of undress for any reason." Ex. 32 at WAYFARER_000140992.

172. ███████████████████████████████████████████████
Ex. 87, Baker Dep., at 82:5-21.

**Plaintiff's Response 172:**     Undisputed that ██████████████████████
███████████████████████████████████████████████████
██████████████ but that after Heath entered Lively's trailer without permission ███████████████
███████████████████████████ Exs. 13, Baker Tr. 72:11–82:21; 23, Carroll Tr. 65:22–66:25.

173. █████████████████████████ Ex. 24, Lively Dep. Tr. at 125:10-24.

**Plaintiff's Response 173:**     Undisputed.

174.    Lively requested an "A-list stunt double, approved by [herself], to rehearse and perform any scenes" depicting rape or sexual violence.  SAC Ex. A, ¶ 14.

**Plaintiff's Response 174:**     Undisputed that Lively requested for Wayfarer to "engage an A-list stunt double, approved by Ms. Lively, to rehearse and perform any scenes involving the character 'Lily' that depicts rape or any act of sexual violence. Ms. Lively will only perform close-up work or other pre-approved shots for such scenes." Ex. 32 at WAYFARER_000140993.

175.    The Offer Letter setting out the basic terms of Lively's participation already provided that Lively had approval rights over any double.  Ex. 28, HEATH_000045678 at 80.

**Plaintiff's Response 175:**     Undisputed that the Offer Letter provided that there would be "[n]o digitizing or doubling in connection with nudity/simulated sex without Artist's prior

written consent," but disputed that this term "already provided" the protection sought in Lively's Protections for Return to Production. Wayfarer Ex. 28; Ex. 32 at WAYFARER_000140992.

176.    Lively requested that there was "to be no spontaneous improvising of any scenes involving physical touching, simulated sex or nudity."  SAC Ex. A, ¶ 4.

**Plaintiff's Response 176:**    Disputed that the quoted language appears in the cited paragraph. Undisputed that Lively requested there "to be no spontaneous improvising of any scenes involving physical touching, simulated sex, or nudity." Ex. 32 at WAYFARER_000140992.

177.    On May 19, 2023, Lively oversaw a scene she herself added to the script, in which her character kissed Baldoni's character in every take, although there was no kiss in the script.  Ex. 104, video clip excerpt from WAYFARER_000140494.

**Plaintiff's Response 177:**    Disputed. The source cited does not support the assertions that Ms. Lively "oversaw a scene [that] she herself added to the script." ███████████████ ████████████████████████████████████████████████████. Lively Decl. ¶ 10.

178.    Lively requested that no comments be made concerning her personal, physical appearance.  SAC Ex. A, ¶ 4.

**Plaintiff's Response 178:**    Disputed. Lively requested the following:

4. "Physical touching and/or comments on BL's physical appearance must only be done/made in connection with the character and scene work, not as to BL personally. Except as written into the screenplay or as strictly required in connection with make-up or costume preparation, there is to be no physical touching (including hugging) of BL, her on-set personnel and/or her employees." Ex. 32 at WAYFARER_000140992.

179. ███████████████████████████████████████████████

████████████████████████████████████████████. Ex. 41, BL-000008801; Ex. 42, BL-000008819-20; Ex. 44, BL-000008821-22; Ex. 43, BL-000021371.

**Plaintiff's Response 179:** Disputed that the documents cited support that Lively ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Wayfarer Ex. 44.

180. On one occasion, Lively advocated ███████████████████████

████████████████████████ Ex. 105, BL-000011518 at -19; *see also* Ex. 106, BL-000007943 at-44 (Lively, writing: ███████████████████████████████████

████████████████

**Plaintiff's Response 180:** Undisputed that ████████████████████████████

████████████████████████████████████████████████████

████████████████ Wayfarer Exs. 105 at BL-000011519; 106 at BL-000007944.

181. Video footage also shows Lively explaining to a group of male crew members why her boots are "so sexy" because they are just "bone hitting wood." Ex. 107, video clip excerpt from WAYFARER_000140494.

**Plaintiff's Response 181:** Undisputed.

182.    Lively also commented on the physical appearance of other actors in connection with the project, both before and after issuing these demands.

a.    When discussing one potential actor in the film with Baldoni on March 29, 2023, Lively said she was meeting ████████████████████████████ Ex. 108, BL-000009166 at -67.

b.    When discussing the marketing of the film in May 2024, Lively wrote to a younger male cast member: ████████████████████████████████████████
Ex. 109, BL-000020058 at -59.

**Plaintiff's Response 182:**    Disputed. It was Baldoni, not Lively, who "commented on the physical appearance of other actors in connection with the project," when he wrote that he was meeting ████████████████████████████ Wayfarer Ex. 108 at BL-000009167.

Undisputed that Lively ██████████████████████████████████████
█████████████████████████████████████████████
████████████████████████ Wayfarer Ex. 109 at BL-000020059.

183.    ██████████████████████████████████████████
████████████████████████████████ Ex. 95, BL-000020770 at -71.

**Plaintiff's Response 183:**    Undisputed that, in a text exchange ████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████ Wayfarer Ex. 95 at BL-000020771. Otherwise disputed.

184.    Lively requested there be "no physical touching (including hugging) of [herself], her on-set personnel and/or her employees.  SAC Ex. A, ¶ 4.

**Plaintiff's Response 184:** Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

185. Lively herself had initiated hugs with Baldoni (Ex. 8, Baldoni 10/7 Dep. Tr. at 116:17-117:15) as had several members of her staff (*id.* at 117:20-118:14).

**Plaintiff's Response 185:** Disputed. The testimony cited does not support Defendants' assertion that Lively "herself had initiated hugs with Baldoni," or that "several" members of her staff had initiated hugs with Baldoni. ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ Ex. 281, Lively Tr. 117:23–119:20.

186. More broadly, all staff members had engaged in large ███████ Ex. 34, Justin Grey Stone Dep. at 177:16-178:6. A producer on the film observed that "████████

███████████████████████████████████████

███████████████ Ex. 11, Saks Dep. Tr. at 139:6-9.

**Plaintiff's Response 186:** Undisputed that ████████████████████

███████████████████████████████████████

████████████████ Undisputed that Saks observed "a lot of hugging and touching amidst the Wayfarer team," and recalled Lively asking that the set be "more professional." Ex. 15, Saks Tr. 139:4–22.

187.    Video footage shows Baldoni hugging male members of the cast and crew as well. Ex. 110, video clip excerpt from WAYFARER_000140494; Ex. 280, video clip excerpt from WAYFARER_000140494.

**Plaintiff's Response 187:**    Undisputed.

188.    Lively requested there were to be "no discussions of personal experiences with sex or nudity."  SAC Ex. A, ¶ 5.

**Plaintiff's Response 188:**    Undisputed that Lively requested that there "be no discussions of personal experiences with sex or nudity, including as it relates to conduct with spouses or others." Ex. 32 at WAYFARER_000140992.

189.    Lively had previously volunteered to Baldoni details of her personal sex life.  Ex. 8, Baldoni 10/7 Dep. Tr. at 176:8-178: 21.

**Plaintiff's Response 189:**    Disputed. The cited testimony does not support the assertion that Lively volunteered details of her personal sex life; Baldoni's testimony, at most, claims Lively spoke about a hypothetical situation, not her personal experiences.  Wayfarer Ex. 8 at 176:8–178:21.

190.    ██████████████████████████████████████████████████████ ████████████████████████  Ex. 95, BL-000020770 at -71.

**Plaintiff's Response 190:**    Disputed. The cited source does not support the assertion that ████████████████████████████  Wayfarer Ex. 95 at BL-000020771.

191.    Lively's list also included several items that were wholly unrelated to her sex, gender or physical appearance, including demands that Baldoni not "speak" to her dead father, mention his own religious beliefs or ask for hers, or have "private, multi-hours meetings in Lively's

trailer with Mr. Baldoni crying," as well as a demand that Lively receive notice of COVID exposures on set.  Exs. 111-112, BL-000038461-62.

**Plaintiff's Response 191:**    Undisputed that Lively privately had a more fulsome list of protections on her phone that included additional items such as "No more mention by Mr. Baldoni of him 'speaking to' BL's dead father," "No more pressing by Mr. Baldoni for BL to disclose her religious beliefs, or unsolicited sharing of his," "No more private, multi-hour meetings in BL's trailer, with Mr. Baldoni crying, with no outside BL appointed representative to monitor," "No more pressing by Mr. Baldoni to sage any of BL's employees," and "No more asking or pressuring BL to cross physical picket lines." Wayfarer Exs. 111, 112. Disputed that these additional items were "wholly unrelated to her sex, gender or physical appearance," which is improper argument.

192.    On November 11, Meziane explained to Lively's representatives that certain of the seventeen "Protections" were not viable.  Ex. 113, HEATH_000046158.

**Plaintiff's Response 192:**    Disputed. On November 11, Ms. Meziane responded that Wayfarer found "most" of the requests "not only reasonable but also essential for the benefit of all parties involved." Wayfarer Ex. 113 at HEATH_000046158. Ms. Meziane only rejected a single request in its entirety--the request for Wayfarer to "engage an additional, experienced A-level producer, approved by Ms. Lively, to actively supervise the production, including monitoring the safety of the cast and crew, ensuring compliance with the schedule and overseeing logistics, problem solving and creative issues." *Id.*; Ex. 32 at WAYFARER_000140993.

193.    ████████████████████████████████████████████

████████████████████████████████████████████████████

Ex. 33, Zavala Dep. Tr. at 117:8-118:19; Ex. 114, Zavala Dep. Ex. 5; Ex. 12, Giannetti Dep. at 296:10-12.

**Plaintiff's Response 193:**    Disputed. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Exs. 33, Stone Tr. 235:23–236: 14; 34, Zavala Tr. 117:8–118:19; Wayfarer Ex. 114.

194.    █████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 12_, Giannetti

Dep. Tr. at 295:18-296:8, 300:25-303; Ex. 115, Giannetti Dep. Ex. 19. █████████

██████████████████████████████████████ Ex. 12, Giannetti

Dep. Tr. at 296:21-297:5.

**Plaintiff's Response 194:**    Disputed. The cited sources do not support Defendants'

assertions that ████████████████████████████████████████████

███████████████████████████████. Wayfarer Ex. 12 at 295:18–

297:5, 300:25–303; Wayfarer Ex. 115.

195.    On December 15, 2023, Lively's counsel sent Meziane a "draft side letter"—*i.e.*, a

draft of what Lively's First Amended Complaint refers to as the "Contract Rider Agreement"

("CRA").  Ex. 116, BL-000038466-75; Ex. 3, SAC ¶426.

**Plaintiff's Response 195:**    Undisputed.

196.    In an accompanying email, Lively's counsel stated that the draft side letter

██████████████████████████████████████████████████ Ex. 116, BL-

000038466.

**Plaintiff's Response 196:**    Undisputed that Lively's counsel stated that the "draft side

letter ███████████████████████████████████████████████████

██████████████████████████████████████████████████ Wayfarer Ex. 116 at

BL-000038466.

197.    Following further negotiations, ███████████████████████ (Ex.

12, Giannetti Dep. Tr. at 295:18-296:8), on or about January 19, 2024, Heath, acting on behalf of

IEWUM, signed the CRA as a rider to the long-form agreement that was contemplated in the Offer

Letter.  A true and correct copy of the executed CRA is at Ex. 117, HEATH_000045307.

**Plaintiff's Response 197:**    Disputed. The CRA detailing Lively's 17 protections (the

"Side Letter") is a side letter and not a "rider," and makes reference to the Agreement, including

that in the Agreement Blakel, Inc. "has agreed" to cause Ms. Lively to "render acting services."

*See* Wayfarer Ex. 117 at HEATH_000045307. Defendants cite no evidence to support their

assertion that the CRA was signed ███████████ as stated *supra* ¶ 194. Undisputed that Heath

signed the CRA on behalf of IEWUM on January 19, 2024. *Id*. at HEATH_000045309.

198.    The parties to the draft CRA were IEWUM and Blakel, Inc. Ex. 117,

HEATH_000045307.

**Plaintiff's Response 198:**    Undisputed that the parties to the executed Side Letter

(which Defendants cite) were IEWUM and Blakel, Inc. Wayfarer Ex. 117.

199.    The CRA contained a provision stating:

There shall be no retaliation of any kind against Artist for raising concerns about the conduct
described in this letter or for these requirements. Any changes in attitude, sarcasm,
marginalization or other negative behavior, either on set or otherwise, including during
publicity and promotional work, as a result of these requests is retaliatory and unacceptable,
and will be met with immediate action.

Ex. 117, HEATH_000045307.

**Plaintiff's Response 199:**    Undisputed.

200.    The CRA expressly stated that it reflected "*additional* terms and conditions …

which shall be deemed *incorporated into*" the ALA.  Ex. 117, HEATH_000045307 (emphasis

added).

**Plaintiff's Response 200:**    Undisputed.

201.    The first "Whereas" clause of the CRA states that "the parties wish to confirm the

conditions under which Lender has agreed to cause Artist to render acting services on the Picture

following the break in production of the Picture related to the 2023 WGA and SAG-AFTRA labor

strikes."  Ex. 117, HEATH_000045307.

**Plaintiff's Response 201:**    Undisputed.

202.    The CRA did not contain any provision embodying a promise that Lively would

forego or delay any claim against any party.  Ex. 117, HEATH_000045307.

**Plaintiff's Response 202:**    Undisputed that no such provision appears on the face of the

CRA.

203.    At the time the CRA was executed, no long-form agreement had been signed, nor

had the terms of any long-form agreement been finalized.  Heath Decl. ¶¶17-18.

**Plaintiff's Response 203:**    Undisputed that the ALA had not been signed, but disputed

that the terms were not substantially finalized, and disputed to the extent that this assertion suggests

that the ALA was not a binding enforceable agreement. The face of the CRA itself confirms that

the parties "had" reached agreement on at least the material terms. Wayfarer Ex. 117. Further, only

20% of the terms remained subject to discussion around the time the CRA was executed, and

meanwhile both parties had commenced performance of their obligations under the ALA.

██████████████████ Exs. 293 (WAYFARER_000067020) ████████████████████

████████ 294 (HEATH_000045201) ██████████████████████████████



204.    The CRA did not include any admission or acknowledgement of improper conduct or that any of the conduct prohibited by the rider had ever occurred.  Ex. 3, SAC ¶ 149; SAC Ex. B.

**Plaintiff's Response 204:**    Disputed. Ex. 24, 10/9 Heath Tr. 27:10-29:2.

205.    Wayfarer Studios was not a party to the CRA.  *See* Ex. 117, HEATH_000045307.

**Plaintiff's Response 205:**    Undisputed that Wayfarer was not listed as a party in the recitals to the CRA but disputed that Wayfarer was not bound by the CRA; the CRA expressly obligates Wayfarer by name (Paragraphs 9, 12, 13, 14) and was signed by Wayfarer's President Jamey Heath. Wayfarer Ex. 117 at HEATH_000045308. In response to the CRA, Wayfarer's Vice President of Business & Legal Affairs, Imene Meziane, indicated that "Wayfarer, Sony, and Production" acknowledged the CRA and Lively's "concerns regarding safety, professionalism and workplace culture," and, with narrow caveats, promptly agreed to 16 of the 17 protections outlined in the CRA. Ex. 35.

206.    Lively has not provided any evidence that the compensation she received for her work was reduced following her demand for "Protections."

**Plaintiff's Response 206:**    Undisputed that the compensation Lively received for her work on the Film was not reduced following her request for implementation of the return-to-work protections detailed in the CRA.

207.    Following Lively's insistence on a list of "Protections," and the execution of the CRA, her role in the production and involvement in the film was not constrained or diminished in

any way.  Instead, Lively's control over the film continued to expand.  On December 28, 2023, Baldoni wrote that although he was angry and upset about "letting Blake take over a film and re-write a movie we spent years developing, writing and funding … I am waving the white flag and submitting. I am going to give her 98% of what she wants."  Ex. 118, BALDONI_000018926.

**Plaintiff's Response 207:**    Disputed.  During 2024, Baldoni and Heath diminished Lively and her role in production through post-production and promotion of the Film. For example,



Ex. 1, Hoover Tr. 61:14–62:8, 74:3–75:17. In post-production, Wayfarer and Baldoni

. Exs. 36. Exs. 150; 36; 296, BL_000008107; 297, HEATH_000051764.

208.    On January 4, 2024, Lively, Baldoni, Heath, and others met at Lively's apartment, at Lively's request.  Ex. 12, Giannetti Dep. at 304:21-307:4; Ex. 119, AS000101. . Ex. 12, Giannetti Dep. at 305:11-22. . Ex. 120, SPE_BL0004526 at -27. . Ex. 12, Giannetti Dep. at 304:1-307:4; Ex. 3, SAC ¶ 20.

**Plaintiff's Response 208:**    Disputed that the CRA specifically indicated that "[a]t Artist's election, an all-hands, in-person meeting before production resumes which will include the director, the existing third party

80

producer, the Sony representative, the newly-engaged third party producer, Artist and Artist's designated representatives to confirm and approve a plan for implementation of the above will be adhered to for the physical and emotional safety of Artist, her employees and all the cast and crew moving forward." Wayfarer Ex. 116 at BL-000038475; Ex. 4, Baldoni 10/7 Tr. 253:2–24. Further disputed that ███████████████████████████████████████████████████ ████████████████████████████████████████. Lively Decl. ¶ 24.

209.    During the meeting, Lively read a longer list of demands off her phone. *See* Exs. 111-112, BL-000038461-62; *see also* Ex. 3, SAC ¶20. In addition to the "Protections" discussed above, these demands appeared to refer to several incidents Lively had raised previously, including Baldoni's reference to circumcision in their first meeting; his discreet inquiry about her weight in April 2023; and the events she had discussed in June 2023, such as the birth video she was shown by Heath and Baldoni's references to his prior pornography addiction; as well as insinuations that Defendants needed to be told not to discuss "personal experiences with sex" or make "sexual comments" to female cast or crew. Lively also demanded that Baldoni not "speak" to her dead father, mention his own religious beliefs, or have "private, multi-hours meetings in Lively's trailer with Mr. Baldoni crying." Lively also demanded notice of COVID exposures on set.

**Plaintiff's Response 209:**    Undisputed that Lively included additional protections on the list kept on her phone, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. These additional protections were also discussed above. ██████████████████████████ ██████████████████████

210.    Although the attendees were stunned by the nature of the meeting, they made efforts to assuage Lively's anger though neither Heath nor Baldoni admitted any wrongdoing. Ex. 12,

Giannetti Dep. at 304:21-307:4; Ex. 4, Heath 10/8 Dep. Tr. at 290:11-24; Ex. 121, BALDONI_000026204.

**Plaintiff's Response 210:**    Disputed.  Heath ███████████████████  during the January 4 meeting. Exs. 2, Giannetti Tr. 129:7–9; 4, Baldoni 10/7 Tr. 272:6–23. Also disputed that Lively was "angry." Also disputed that attendees were "stunned" by the nature of the meeting given that the Return to Work Protections specifically indicated that "[a]t Artist's election, an all-hands, in-person meeting before production resumes which will include the director, the existing third party producer, the Sony representative, the newly-engaged third party producer, Artist and Artist's designated representatives to ***confirm and approve a plan for implementation of the above will be adhered to for the physical and emotional safety of Artist***, *her employees and all the cast and crew moving forward.*" Wayfarer Ex. 116 at BL-000038475 (emphasis added); Ex. 4, Baldoni 10/7 Tr. 253:2–24.   Lively Decl. ¶ 24.

211.    Sarowitz was not present at the meeting that took place in New York on January 4, 2024.  Ex. 6, Sarowitz Dep. Tr. at 273:6-10.  He does not recall exactly when he learned about the meeting.  Ex. 6, Sarowitz Dep. Tr. at 304:21-25.  Sarowitz recalls speaking to Baldoni about the meeting at some point in time but does not know the exact date they spoke.  Ex. 6, , Sarowitz Dep. Tr. at 303:19-304:7.

**Plaintiff's Response 211:**    Undisputed.

212.    Sarowitz was never aware that anyone ever referred to the meeting as an "HR complaints meeting."  Ex. 6, Sarowitz Dep. Tr. at 274:25-275:5.

**Plaintiff's Response 212:**    Undisputed that Sarowitz was not aware of anyone using this specific phrase, but disputed to the extent that the substantially identical substance was conveyed to Sarowitz ████████████████████████████████████████████████████████████



Ex. 37.

213.    Sarowitz is aware that Lively sent a list of demands for her return to work, which were honored.  Ex. 6, Sarowitz Dep. Tr. at 210:11-211:3.

**Plaintiff's Response 213:**    Disputed to the extent Lively's demand that "[t]here shall be no retaliation of any kind against [Lively] for raising concerns about the conduct described in this letter or for these requirements" was not honored. Ex. 32 at WAYFARER_000140992; *see also infra* ¶¶ 274; 275; 279; 280; 289; 404.

214.    Sarowitz has no knowledge that anyone at Wayfarer Studios committed any of the acts implied in the list of demands.  Ex. 6, Sarowitz Dep. Tr. at 227:2-13, 291:7-14.

**Plaintiff's Response 214:**    Disputed. Sarowitz was on a text chain dated January 5, 2024 in which Baldoni acknowledged that "many of" the things Ms. Lively complained of "were based in actual situations" and that Mr. Heath "did a beautiful job apologizing." Ex. 37.

215.    Sarowitz understood that Wayfarer Studios acceded to Lively's list of demands under duress and with a caveat saying that the studio did not necessarily agree with the demands.  Ex. 6, Sarowitz Dep. Tr. at 291:7-14.

**Plaintiff's Response 215:**    Undisputed that Sarowitz testified that was his understanding.

216.    Around the time Lively provided her list of demands, representatives from Wayfarer Studios spoke to counsel, who advised there were no events that they felt would require an investigation. Ex. 6, Sarowitz Dep. Tr. at 224:12-15.

**Plaintiff's Response 216:**    Disputed. Defendants' assertion is unsupported by any admissible evidence, as Mr. Sarowitz's testimony was based entirely on inadmissible hearsay, and not personal knowledge. Ex. 11, Sarowitz Tr. 224:12–225:25.

217.    ████████████████████████████████████████████████
████████████████████. Ex. 122, SPE_WF0000021; Ex. 123, SPE_WF0000022; Ex. 124, SPE_WF0000024; Ex. 125, SPE_WF0000025; Ex. 127, SPE_WF0000026; Ex. 127, SPE_WF0000027.

**Plaintiff's Response 217:**    Undisputed that Lively revised certain scenes in December 2023. Disputed as to the characterization that Lively "insisted upon revising numerous scenes in the film," which is not supported by the cited evidence. Wayfarer Exs. 122127. The cited exhibits reflect that revisions occurred, but do not establish that Lively demanded or insisted upon them. .

218.    In a revision of a ████████████ Lively explained that she was trying to ████████ ████████████████████████████████████████ Ex. 125, SPE_WF0000025. In her revised scene ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Ex. 128, 24–CV–10049_0000319, at – 355. Later the characters are described as ████████████████████████ ████████████████████████████████████████ ████████████████████ *Id*. at –358.



84

**Plaintiff's Response 218:**    Undisputed that the quoted language appears in Wayfarer Ex. 125 and Wayfarer Ex. 128, but Lively respectfully refers the Court to the cited sources for their complete contents and disputes any summary or interpretation inconsistent therewith.

219.    In another December 2023 revision, Lively directed Baldoni's character to say:

██████████████████████████████████████████████████████

████████████    Ex. 126, SPE_WF0000026.

**Plaintiff's Response 219:**    Disputed because Wayfarer Ex. 126 does not include the quoted language ████████████████████████████████████████

████████████████████████████

220.    Production resumed on January 5, 2024. Ex. 12, Giannetti Dep. at 173:7–8.

**Plaintiff's Response 220:**    Undisputed.

221.    The second phase of filming took place primarily on a New Jersey set and with a few additional days in California. Ex. 24, Lively Dep. at 261:24–25.

**Plaintiff's Response 221:**    Undisputed.

222.    That day, Lively told Slate: ████████████████████████████████

████████████████████████    Ex. 129, BL–000020898.

**Plaintiff's Response 222:**    Undisputed that the quoted language appears in Wayfarer Ex. 129, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

223.    One week into filming, on January 14, 2024, Lively told ████████████████

████████████████████████████    Ex. 130, BL–000020899 at –900.

**Plaintiff's Response 223:** Undisputed that the quoted language appears in Wayfarer Ex. 130, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.



Ex. 33, Zavala Dep. Tr. at 124:3–15; 236:19–237:22.

Lively

Ex. 39, BL–000018396 at –97. Lively also

**Plaintiff's Response 225:** Undisputed that the quoted language appears in Wayfarer Ex. 39, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

226. Filming concluded on February 9, 2024. Ex. 3, SAC ¶ 21.

**Plaintiff's Response 226:** Undisputed.

227. 

**Plaintiff's Response 227:** Undisputed that the quoted language appears in Wayfarer Ex. 39, but disputed as to the characterization as "extensive control," which is described instead as "the director's partner." Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

228. On or about February 22, 2024, Lively told Sony that she would not agree to promote the film unless she was permitted to participate in the edit. Ex. 131, BALDONI_000018831.

**Plaintiff's Response 228:** Disputed. The cited evidence does not support the assertion that Lively threatened not to promote the film unless permitted to participate in the edit. Lively told Greenstein at Sony ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Ex. 38, Greenstein Tr. 161:1–7, 303:18–19; Lively Decl. ¶ 25.

229. During the ensuing weeks, Lively ████████████████████████ ███. *See* Ex. 132, BL–000019015 at –16; Ex. 133, BL–0000188 at –09.

**Plaintiff's Response 229:**    Disputed. The assertion that Lively made "extensive edits to the film, trailer, and poster" is argumentative and unsupported by the cited evidence. Wayfarer Ex. 132 reflects a text from Lively to Greenstein discussing the edit, and Wayfarer Ex. 133 reflects a text from Lively to Swift asking Swift to watch the trailer. Neither exhibit shows that Lively performed or directed extensive edits to any of these materials. Lively Decl. ¶ 33.

230.    Lively told 

Ex. 134, BL–000027070. She also did not hesitate to

*See* Ex. 135, BL–000027069

**Plaintiff's Response 230:**    Undisputed that the quoted language appears in Wayfarer Ex. 134 and Wayfarer Ex. 135, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

231.    Lively urged 

Ex. 134, BL–000027070; Ex. 135, BL–000027069; Ex. 136, BL–000018825.

**Plaintiff's Response 231:**    Undisputed that the quoted language appears in Wayfarer Ex. 134, Wayfarer Ex. 135, Wayfarer Ex. 136, and Wayfarer Ex. 137, but Lively respectfully refers the Court to the cited sources for their complete contents and disputes any summary or interpretation inconsistent therewith.

232.    ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ Ex. 138, BL–000019326.

**Plaintiff's Response 232:**    Undisputed that the quoted language appears in Wayfarer Ex. 138, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

233.    Lively also demanded changes to the film's credits, ███████████████

███████████████████████████████████████████████████████

██████ and removing a credit stating that *It Ends With Us* was a "film by" Baldoni altogether. Ex. 139, BL–000019455; Ex. 140, SPE_WF0000641; Ex. 141, SPE_BL0022958; Ex. 8, Baldoni 10/7 Dep. Tr. 328:9–17 ("Lively had requested that my name be removed. So I had my "a film by" credit removed."); Ex. 142, Greenberg Dep. Tr. 138:2–19.

**Plaintiff's Response 233:**    Disputed that Lively demanded anything; Lively made requests and they were granted. *Infra* Pl.'s Response ¶ 387. Undisputed that Lively proposed Baldoni remove his "film by" credit but disputed to the extent this paragraph suggests that doing so was inappropriate or that Baldoni did not waive his credit of his own volition.  Wayfarer Ex. 142 at Tr. 138:2–19.

234.    ███████████████████████████████████

███████████████████████ Ex. 142 at, Greenstein Dep. Tr. 325:6–327:14 ████

███████████████████████████████████

**Plaintiff's Response 234:**    Undisputed that ████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████ Lively Decl. ¶ 25.

235.    Lively also insisted that Baldoni's image be removed from marketing materials and the film's poster, which ultimately just featured Lively herself. Ex. 8, Baldoni Dep. (Oct. 7, 2025) at 328:9–17; Ex. 143, BALDONI_000024619.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████



**Plaintiff's Response 236:**    Undisputed that the quoted language appears in Wayfarer Ex. 39, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

237.    The film's post–production supervisor wrote: ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████    Ex. 144, BL–000018409.

**Plaintiff's Response 237:**    Undisputed that the quoted language appears in Wayfarer Ex. 144, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

238.    Lively asserted ████████████████████████████████

████████    Ex. 39, BL–000018396 at –98–99.

**Plaintiff's Response 238:**    Undisputed that ███████████████████

████████ but disputed as to the characterization ███████████████████

█████████████ which is argumentative and unsupported by the cited evidence.████

████████████████████████████████████████████████████

████████████████████████████████████. Exs. 38,

Greenstein Tr. 67:21–74:4, 170:7–171:21, 236:19–237:11; 39; 40; Wayfarer Ex. 254 at

BALDONI_000030668–69 (███████████████).

239.    Josh Greenstein, the President of Sony's Motion Picture Group, wrote ████████

████████████████████████████████████████████

████████████████████████████████████ Ex. 145, BL–000018415.

**Plaintiff's Response 239:**    Undisputed that the quoted language appears in Wayfarer

Ex. 145, but Lively respectfully refers the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

240.    On July 7, 2024, Lively told ████████████████████████

████████████████████████████████████ Ex. 146,

BL–000028962.

**Plaintiff's Response 240:**    Undisputed that the quoted language appears in Wayfarer

Ex. 146, but Lively respectfully refers the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

241.    The film premiered in New York City on August 6, 2024 and it was released to the

public on August 9, 2024. Ex. 24, Lively Dep. at 274:13–17, 275:1–18.

**Plaintiff's Response 241:**    Undisputed.

242.    On or about July 17, 2023, during the filming hiatus and before presenting her "protections" demands, Lively and her husband Ryan Reynolds "unfollowed" Baldoni on Instagram.  *See* Ex. 3, SAC at 186 n.26.

**Plaintiff's Response 242:**    Undisputed that Lively and Mr. Reynolds unfollowed Mr. Baldoni's social media accounts in or around July 2023.

243.    After the conclusion of filming and leading up to the premiere, Lively and her husband Ryan Reynolds openly attacked and disparaged Baldoni, seeking to tarnish his reputation in Hollywood, including among their famous and powerful friends, as well as with fellow cast members, and in the media.  For instance:

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████

██████████████████████

████████████████████████

███████████████████

**Plaintiff's Response 243:**    Undisputed  that  ████████████████

██████████████████ but disputed that ███████████████

███████████████████████

███████████████████████

███████████████████████

Wayfarer Exs. 134 at BL-000027072–27072 ████████████████

███████████████████████

█████████████████████ 135

███████████████████████

████ 109 at  BL-000020063 ██████████████

███████████████████████

██████████ 147 at BL-000019740 ██████████

████████ 148 at  BL-000032000 ████████

██████████████████

244.    During the relevant period, ███████████████

██████████████ Ex. 142, Greenberg Dep. at 12:16-18, 17:7-18:14,

35:25-36:2.

**Plaintiff's Response 244:**    Undisputed  ████████████████

███████████████████████

██████████████████████████. Ex. 41, Greenberg Tr. 18:6–16. ██████████████████

████████████████████████████████████

245.    On July 13, 2024, ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 149, RR-

SUBPOENA-000000082.

**Plaintiff's Response 245:**    Undisputed that the quoted language appears in the cited

source, but Lively respectfully refers  the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

246.    On or about June 20, 2024, a promotional event for the film was held at Book

Bonanza, Hoover's annual romance-book convention.  Baldoni was not permitted to attend.  Ex.

11, Saks Dep. Tr. at 150:7-152:22. Ex. 75, Ferrer Dep. Tr. at 272:16-276:3. ████████████████

███████████████████████████████████████ Ex. 11, Saks. Dep. Tr. at 151:24-

153:17.

**Plaintiff's Response 246:**    Undisputed that a promotional event for the Film was held

at Book Bonanza that Baldoni did not attend, but otherwise disputed. ████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

109:13–110:4; *see also* Ex. 42 (SPE_BL0019748). ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 1, Hoover Tr. 111:11–20.

247.    In July, Lively excluded Baldoni from a marketing shoot for the film conducted by her husband's marketing company, Maximum Effort.  Ex. 152, ABEL_000018946; Ex. 142, Greenberg Dep. Tr. at 227:3-14.

**Plaintiff's Response 247:**    Disputed. The evidence cited does not support Defendants' assertion that Baldoni was "excluded" from a marketing shoot. Wayfarer Exs. 152 at ABEL_000018946. To the contrary, the evidence shows that Baldoni's representatives explicitly stated they were "not asking AT ALL for Justin to be flown to NY and in the room with Blake," but rather were "just asking for him to be incorporated into whatever content is produced so optically it isn't evident he isn't included." Wayfarer Ex. 152 at ABEL_000018947. Sony assured Baldoni's representatives that their "content team [was] putting together a few pieces for Justin," to which Baldoni's PR agent, Abel, responded "Wonderful thank you!" *Id.* at ABEL_000018946.

248.    Lively and others at Sony were aware that the media, including social media, was picking up on Lively's efforts to alienate Baldoni from the cast and film, while generating adverse publicity about Baldoni.  For instance:



**Plaintiff's Response 248:**    Undisputed that ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ Otherwise

disputed because the evidence Defendants cite does not support their assertions or

characterizations that (1) Lively made "efforts to alienate" Baldoni, (2) there was "adverse

publicity about Baldoni" at the time, (3) ████████████████████████ (3) the

████████████████████████████████████████████████████████

███████████████ *See* Wayfarer Exs. 153, 154.

249.    On or about July 22, 2024, ████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ *See* Ex. 155, WME_00001254 (Danny Greenberg,

writing: "[Lively's] been brilliantly choreographing this for a while."); Ex. 156, WME_00001266.

**Plaintiff's Response 249:**    Disputed. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Exs. 38, Greenstein Tr. 287:7–288:22; 33, Stone Tr. 394:7–395:1

████████████████████████████████████████████████████████

████████████████████████████████████████████ Lively Decl. ¶ 25.

████████████████████████████████████████████████████ Ex. 33,

Stone Tr. 395:2–14, ████████████████████████████████████████

████████████████████████████ Exs. 12, Slate Tr. 114:5–115:9, 120:5–19; █

JS0000284 ( 

███████████████████████ 15, Saks Tr. 154:3–155:5; 43 █████████████

██████████████████████ 1, Hoover Tr. 253:10–254:5; 24, Heath 10/9 Tr. 134:11–

135:20 ████████████████████████

250.    Ultimately, Baldoni and the Wayfarer team were not allowed to be on the red carpet

during the premiere, except during specified times when Lively was not present.  Baldoni and his

team were also required to wait in a basement while Lively conducted her red carpet pictures, and

then view the film on a separate screen.  Ex. 2, Heath 10/9 Dep. Tr. at 96:18-21; Ex. 6, Sarowitz

Dep. Tr. at 140:11-13; Ex. 157, WAYFARER_000141754; Ex. 158, WAYFARER_000141765.

**Plaintiff's Response 250:**    Disputed.  The evidence cited does not support Defendants'

assertion that Baldoni and the Wayfarer team were "not allowed" to be on the red carpet unless

Lively was not present.  It also does not support Defendants' assertion that Baldoni was required

to wait in a basement or that Defendants viewed the Film on a separate screen.

251.    ██████████████████████████████████

████████████████ Ex. 159, SPE_BL0023136.

**Plaintiff's Response 251:**    Undisputed that ██████████████████████

██████████████████████████████████ Ex. 38, Greenstein

Tr. 290:6–16.

252.    For years prior to the events at issue here, Jennifer Abel, a public relations

professional, had worked with Wayfarer and Baldoni on PR matters.  Ex. 160, Abel Dep. Tr. at

38:15-40:17.

**Plaintiff's Response 252:**    Undisputed.

253.    Wayfarer and Baldoni were concerned that any adverse media would harm the reception and success of the film.    Ex. 161, Hanks Dep. Tr. at 275:8-15; Ex. 162, HEATH_000019467.

**Plaintiff's Response 253:**    Undisputed that Wayfarer and Baldoni were concerned that adverse media would harm the reception and success of the film, but the above is misleading because it omits that ██████████████████████████████████████ ███████████████████████████████████████████ Exs. 36; 4, Baldoni 10/7 289:10–291:20; 44; 45 at BALDONI_000018853 ████████████ █████████████████████████████████████████████ ████████████████

254.    Even as the negative press intensified, Wayfarer gave Abel and her colleagues "explicit instructions…to not place any story that was negative about Blake [Lively] or otherwise. Our main focus was to mitigate the negative press that was breaking, organically, from the press tour." Ex. 160, Abel Dep. Tr. at 340:15-22.

**Plaintiff's Response 254:**    Disputed. A plethora of evidence instead supports that Wayfarer, Baldoni, Abel, Nathan, and TAG strategized and executed on a plan to "bury" Lively, that included "get[ting] ahead of the narrative," pushing out "key messaging points" that were negative about Lively, and placing or amplifying negative stories about Lively in the press and on social media. Exs. 46 at NATHAN_000005504; 47; 48; 49; 50 at JONESWORKS_00016238; 51; 52, Abel 9/26 Tr. 173:5–16, 187:16–188:1; 53; 54; 55; 56; 57, Case Tr. 259: 2–15; 58 at Vituscka000016; 59; 60; 61; 62, Koslow Tr. 312:2–8; 63; 64; 65; Wayfarer Ex. 224.

255.    On July 24, 2024, Heath and Jen Abel agreed that ███████████████ ██████████████ in response to the swirling press rumors.  Ex. 163, BL-000006379 at -6410.

**Plaintiff's Response 255:**    Disputed.  The document Defendants cite does not contain the quoted language. Wayfarer Ex. 163, at BL-000006410. Also disputed for the reasons set forth in Plaintiff's Response ¶ 254.

256.    On or about July 25, 2024, Baldoni and Heath first met with TAG, Melissa Nathan's PR firm, to discuss the possibility of retaining the firm for crisis PR.  Ex. 164, KCASE-000005773. A TAG employee's notes from that meeting state that Wayfarer was "Not going to fire offensive bullets but [wanted] to have a strategy."  *Id*.

**Plaintiff's Response 256:**    Undisputed that Baldoni and Heath first met with TAG on or about July 25, 2024. Also undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

257.    On July 26, 2024, TAG circulated a proposed "Scope of Work.".  Ex. 165, NATHAN_000003795.  It included providing "support" for Baldoni and others with "independent strategic counsel," "curat[ing] statements, background information, and talking points for the press reflecting [Wayfarer's] core values, key messaging, and the integral role they played to bring this film to life," developing a "scenario planning document," identifying "third party validators," working to "mitigate negative stories / correct inaccuracies," and monitoring coverage, as well as providing input on press strategies and media training.

**Plaintiff's Response 257:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

258.    On July 30, 2024, Wayfarer President Tera Hanks wrote to Stephanie Jones:

████████████████████████████████████████████████████

████████████████████████████████████████████████    Ex.   166,

JONESWORKS_00030156.

**Plaintiff's Response 258:**    Undisputed that the quoted language appears in the cited

source, but disputed that ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████    Ex. 50; Wayfarer Ex. 228.

259.    Wayfarer hired TAG and Nathan on August 2, 2024.    Ex. 167,

JONESWORKS_WAYFARER_000003009.

**Plaintiff's Response 259:**    Undisputed.

260.    On August 2, 2024, TAG circulated a "Scenario Planning" document listing a series

of possible options for responding to the public relations crisis facing Baldoni and Wayfarer.  Ex.

168, NATHAN_000005497.  Nathan has testified that document was not an approved action plan,

but only a preliminary document for the purposes of "scenario planning," with each suggestion

being only "a possibility.  This is not definitive."  Ex. 169, Nathan 9/29 Dep. Tr. at 111:18-112:4

("[T]his is scenario planning. So this is a possibility. This is not definitive.").

**Plaintiff's Response 260:**    Undisputed, except that evidence suggests certain options

set forth in the Scenario Planning Document were indeed acted upon, such as, for example, (1)

"giving a friendly reporter who is covering the film a simple line hinting that [ ] you and Blake . .

. 'had our differences,'" to "tee[] up reporters properly that there were issues with her," Exs. 54;

53, and (2) "planting stories about the weaponization of feminism and how people in BL's circle

like Taylor Swift, have been accused of utilizing these tactics to 'bully' into getting what they

want," Ex. 55. When discussing the contents of the Scenario Planning Document, Nathan told

Abel: "when we send over documents we can't send over the work we will or could do because

that could get us in a lot of trouble. . . . Imagine if a document saying all the things that he wants

ends up in the wrong hands. The work is not the document." Ex. 47.

261.    On August 4, 2024, TAG employees exchanged messages discussing the ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ Ex. 170, KCASE-000002654.

**Plaintiff's Response 261:**    Undisputed that the quoted language appears in the cited

source, but Lively respectfully refers  the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith.

████████ On or about August 7, 2024, additional cast members unfollowed Baldoni on social

media, at Lively' prompting.  *See* Ex. 171, SPE_WF0000719 at -721 ████████████████████

████████████████████████████████████████████████████████████████████

████████

**Plaintiff's Response 262:**    Disputed. ██████████████████████████████

██████████████████████████ Ex. 281, Lively Tr. 177:2–178:1. Saks testified that she

does not have knowledge whether Lively engaged in efforts to "have the cast and crew de-friend

Mr. Baldoni on social media." Ex. 15, Saks Tr. 278:17–279.1.

263.    On August 8, 2024, *The Hollywood Reporter* published an article entitled: "Did

Blake Lively, Justin Baldoni Have A Rift Over It Ends With Us? Sleuthing TikTokers Think So."

Ex. 3, SAC ¶ 237 n.36. The article discussed Baldoni being excluded from press for the film and

unfollowed by Lively and other cast members.

**Plaintiff's Response 263:**    Undisputed  the  referenced  article  was  published  and

referenced "Baldoni's notable absence from joint press events; the lack of group photos of Lively

and Baldoni together at [the] premiere; and the fact that neither Lively, Hoover, nor the rest of the cast, follow Baldoni on Instagram." Wayfarer Ex. 3.

264.    On or about August 8, 2024, Lively's PR representative, Leslie Sloane, ███████████ ██████████████████████████████████████████████████████████████ Ex. 172, LS-0000223 at -224.  Sloane testified ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████

████████████████████████ Ex. 173, Sloane Dep. Tr. at 100:15-104:7.

**Plaintiff's Response 264:**    Undisputed.

265.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ Ex. 173, Sloane Dep. Tr. at 103:8-18.

**Plaintiff's Response 265:**    Undisputed  that  ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ *See*

Wayfarer Ex. 173, Sloane Dep. Tr. at 103:8–18.

266.    On August 8, 2024, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Ex. 173, Sloane Dep. Tr. at 148:4-152:12.

**Plaintiff's Response 266:**     Undisputed that the quoted language appears in the cited sources, but Lively respectfully refers  the Court to the cited sources for their complete contents and disputes any summary or interpretation inconsistent therewith.

267.     The same day, 

Ex. 175, LS0000314 at -315.

**Plaintiff's Response 267:**     Undisputed.

268.     Heath, Abel, and Nathan did not want to add fuel to the fire by prompting additional adverse media.  In particular, they told Jones not to contact the press about Lively.  Upon learning that Jones had done so, on August 9, 2024, Heath wrote to Jones: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 176, JONESWORKS_00030241.

**Plaintiff's Response 268:**     Undisputed that the quoted language appears in the cited source, otherwise disputed because the document cited does not support the remaining assertions, including because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Ex. 191, Jones Tr. at 193:24-196:10.

269.     On August 9, 2024, *The Daily Mail* published an article entitled: "Disturbing TRUTH behind why Blake Lively and her It Ends With Us stars are feuding with Justin Baldoni." Ex 177, James Vituscka & Lillian Gissen, "Disturbing TRUTH behind why Blake Lively and her It Ends With Us stars are feuding with Justin Baldoni" (Aug. 15, 2024), https://www.dailymail.co.uk/tvshowbiz/article-13727789/it-ends-blake-lively-justin-baldoni-

feud.html.[1]  That article quoted sources asserting Baldoni was 'chauvinistic' and 'borderline abusive' on set.  It also noted that "rumors of a vicious feud" between Lively and Baldoni had "been swirling for weeks, with online sleuths highlighting how the on-screen love interests were not pictured together at the US premiere – while some cast members have blatantly swerved questions about the director."

**Plaintiff's Response 269:**    Undisputed.

270.    That day, ███████████████████████████████████
████████████████    Ex. 178, BL-000020323 at -324.

**Plaintiff's Response 270:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

271.    ████████████████████████████████████████████
████████████████    Ex. 179, SPE_WF0000740179.

**Plaintiff's Response 271:**    Undisputed that, on August 9, 2024, ███████████
█████████████████████████████████████████████████████
████████████    *see* Wayfarer Ex. 179, SPE_WF0000740179, ███████████████████
████████████████    Ex. 68, Sloane Tr. 155:22–25.

272.    On August 7, 2024, Abel wrote to Nathan: "I think we really need to put the social combat plan…into motion."  Ex. 180, NATHAN_000003599 at -602.  She noted that she was waiting on a greenlight from Heath to do so.  *Id*. at -603.

---

[1] District courts have discretion to take judicial notice of online articles and websites, and the Court may properly notice such facts on summary judgment.  *See Fed. Election Comm'n v. Hall-Tyner Election Campaign Comm.*, 524 F. Supp. 955, 959 n.7 (S.D.N.Y. 1981), *aff'd*, 678 F.2d 416 (2d Cir. 1982) ("[A]ny facts subject to judicial notice may be properly considered in a motion for summary judgment."); *Baron A. Wolman Archives Tr. through Wareham v. Complex Media, Inc.*, No. 20 CIV. 152 (ER), 2022 WL 523597, at *1 n.3 (S.D.N.Y. Feb. 22, 2022) (taking judicial notice of *New York Times* and *Rolling Stones* articles); *Staley v. FSR Int'l Hotels Inc.*, 775 F. Supp. 3d 720, 725 n.3 (S.D.N.Y. 2025) (taking judicial notice of news articles and website).

**Plaintiff's Response 272:**    Undisputed that Abel wrote the quoted language to Nathan, and instructed Nathan to "call Jamey and get the [green] light." Wayfarer Ex. 180 at NATHAN_000003602-03.

273.    On August 8, 2024, Nathan proposed a quote for a new scope of work that included additional social media engagement.  Ex. 181, JONESWORKS_00006978; Exs. 182-183, SR 1.00000007-08.

**Plaintiff's Response 273:**    Disputed. It was on August 5, 2024 (not August 8) that Nathan sent Heath and Abel quotes for digital services, including for the "creation of social fan engagement to go back and forth with any negative accounts, helping to change narrative and stay on track." Ex. 66.

274.    On or about August 9, 2024, Wayfarer engaged Jed Wallace's firm, Street Relations, to monitor the social media discussion concerning Lively, Baldoni, and the film.  Ex. 184, SR 1.00000011.

**Plaintiff's Response 274:**    Disputed. The document Defendants cite shows that it was on August 8, 2024 (not August 9) that Nathan connected Heath and Jed Wallace over email, writing that ████████████████████████████████████████████████████ Wayfarer Ex. 184. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. 66. ██████████████████ ████████████████████████████████████████████████████ ██████████████████ Ex. 67 at HEATH_000048498. By August 9, 2024, Wallace reported to Wayfarer that his "████████████████████████████████████ *Id.* at HEATH_0000048496 (emphasis added).

275.    Jed Wallace has testified that his firm did not surreptitiously spread negative information about Lively and has no ability to do so.  Ex. 185, Wallace 10/9 Dep. Tr. at 23:19-24:1 (███████████████████████████████████████████

███████████████)

**Plaintiff's Response 275:**    Undisputed that Wallace testified as such, but Plaintiff disputes the veracity of that testimony in light of extensive evidence indicating Wallace regularly offered and provided such services to clients, and that Wallace orchestrated a digital smear campaign against Lively beginning in August 2024. Exs. 207 (NATHAN_000003780) ████

████████████ 299 (STREET 3.000305) at STREET 3.000306 ████████████ 209 (STREET 3.000492) at STREET 3.000493 ████████████ 210 (STREET 3.000199) at STREET 3.000201

████████████████████████████████████████████████████

████████████ 211 (STREET 3.000499) at STREET 3.000500-501 ████████████

████████████████████████████████████████████████████

████████████ 212 (STREET 3.000204) at STREET 3.00205 ████████████

████████████████████████████████████████████████████ 213 (STREET 3.000366) at STREET 3.000366 ████████████████████████

████████████████████████████ 214 (STREET 3.000486) at STREET 3.000487 (████████████████████████████████████████████

(STREET 3.000495199) at STREET 3.000497 ████████████████████

████████████████████████████████████████████████████

216 (STREET 3.000326) at STREET 3.000326 ████████████████████

████████████████████████ 217 (STREET 3.000360) at STREET 3.00361–362 ████████

████████████████████████, (Wallace Ex. 14 (STREET 3.000495) at STREET 3.000497



██████████████████████████████ 218 (STREET 1.000005) at STREET 1.000005

████████████████████████████████ 67 (HEATH_000048496) at HEATH_000048498 ████

██████████ (BBKOSLOW-000004011) at BBKOSLOW-000004013 ████

████████████ 224 (KCASE-000000728) at KCASE-000000732 ("████

████ 225 (BBKOSLOW-000003330) at BBKOSLOW-000003338, BBKOSLOW-000003341 ██████████████████████████ KCASE-000001540)

at KCASE-000001541 ██████████████████████

████████████ 70, Culotta Report ¶ 9, ¶¶ 54–60, 65, ¶ 67 ████

████████ ¶¶ 72, 79–81, ¶ 87, ██████████

████████████████████████ ¶ 96–97 ██████████

████████████████

276.    In August 2024, Baldoni himself repeatedly made positive comments about Lively in the press. ████████████████████████████████████████████

████ Ex. 186, BL-000003219.

**Plaintiff's Response 276:**    Undisputed that in response to a question about whether he would be directing the Film's sequel, Baldoni told *Entertainment Tonight*: "I think that there are better people for that one. I think Blake Lively's ready to direct, that's what I think." Wayfarer Ex. 186. Disputed that this comment can be characterized as a "positive comment" about Lively when the public connected this statement to "[r]umors [that] said Ryan Reynolds and Blake Lively wanted to take over the scripts or they made so many edits." *Id.*

277.    Melissa Nathan confirmed ████████████████████████████████
████████████████████████ Ex. 173, Sloane Dep. Tr. at 205:15-19.

**Plaintiff's Response 277:**    Undisputed that ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Ex. 68, Sloane Tr. 203:5–207:12.

278.    On August 8, 2024, Nathan also told her own sister, gossip reporter Sara Nathan, that she had not contacted reporters on Baldoni's behalf and did not intend to do so.  Ex. 187, NATHAN_000002493.

**Plaintiff's Response 278:**    Undisputed that Nathan told her sister that she had not contacted reporters on Baldoni's behalf, however, ████████████████████████

████████████████████████████████████████ Exs.  50  at JONESWORKS_00016238; 69 at JONESWORKS_00016249; Wayfarer Ex. 228.

279.    ████████████████████████████████████████████

████████████████████████ Ex. 173, Sloane Dep. Tr. at 287:21-288:3.

**Plaintiff's Response 279:**    Undisputed that ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Exs. 55 at JONESWORKS_00016354-16355; 56; 57, Case Tr. 259:2–15; 58 at Vituscka000016; 59 at KCASE-000002822; 60 at BBKOSLOW-000001025; 61 at KCASE-0000004758–4759; 62, Koslow Tr. 312:2–8.

280.    As of August 11, 2024, ███████████████████████████████

████████████████████████████████████ Ex. 188, JONESWORKS00015018 at

-18.

**Plaintiff's Response 280:**    Disputed. On August 10, 2024, Baldoni was informed that

there had been ████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████ Ex. 63 at BALDONI_000015463;

Wayfarer Ex. 224.

281.    On August 11, 2024, the *New York Times* published an article entitled "What 'It

Ends With Us' Says About the Blake Lively Brand."  Ex 189, Esther Zuckerman "What 'It Ends

With    Us'    Says    About    the    Blake    Lively    Brand"    (Aug.    11,    2024),

https://www.nytimes.com/2024/08/11/movies/it-ends-with-us-blake-lively-brand.html.    The

article discussed Lively's efforts to cross-promote the film and her personal haircare and alcohol

brands as well as her husband's brand of gin.  For instance, it stated: "A promotional email

explained how to make 'It Ends With Us'-inspired cocktails using Betty Buzz. One recipe called

for Reynolds's gin. It's a cheery gimmick that seems awkwardly out of step with the context of

the film itself, which tells the story of a woman dealing with domestic violence. … [Lively's]

performance is almost beside the point. Lively has transformed the project into film-as-

commerce."  *Id.* There is no evidence that Defendants played any role in this article.

**Plaintiff's Response 281:**    Undisputed that this article was published, or that the quoted

language appears in the cited source, but Lively respectfully refers  the Court to the cited source

for its complete contents and disputes any summary or interpretation inconsistent therewith.

282.    On August 13, 2024, ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ Ex. 190,

SPE_BL0003328.

**Plaintiff's Response 282:**    Undisputed that the quoted language appears in the cited

source alongside ████████████████████████████████████████

████████████████████████████████████████████████████████

Wayfarer Ex. 190, SPE_BL0003328..

283.    Also on August 13, Nathan privately observed to Abel that there was a "completely

unsolicited story from tmz – Blake has a huge ego [Justin Baldoni] was liked by many cast and

crew And this is her ego being bruised."  Abel responded: "Not from any of us obv."  Nathan

agreed: "Totally not from us."  Abel concluded:  "These are clearly people on set coming out to

defend [Baldoni] which is good and we just let them do their thing."   Ex. 191,

NATHAN_000000547.

**Plaintiff's Response 283:**    Undisputed, except as to the characterization as "privately

observed" because Heath was included on the text chain as well. Wayfarer Ex. 191,

NATHAN_000000547.



284.    The same day, Lively wrote to another male cast member: ████████████████

████████████████████████████████████████████████████████

██████ The cast member responded ████████████████████████ Ex. 192, BL-

000020228 at -229.

**Plaintiff's Response 284:**     Disputed. The message Lively wrote was: █████████████

████████████████████████████████████████████████████████████

████████████████████ Wayfarer Ex. 192 at BL-000020228.

285.    On or about August 19, 2024, ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Ex. 193, WME_00001051.

**Plaintiff's Response 285:**     Disputed. On August 19, 2024, an NBC reporter reached out about "writing a story looking at how domestic violence survivors feel about the marketing around" the Film. Wayfarer Ex. 193. The Film's marketing strategy was developed by Sony and Wayfarer, and was not Lively's "preferred promotion." Ex. 38, Greenstein Tr. 61:12–63:1, 67:13–68:6; 70:15–73:22; 85:23–86:1, 171:9–172:11.

286.    Prior to these events, Lively had been criticized ██████████████████████

█████████████████████████████████████████ Ex. 24, Lively Dep. Tr. at 208:11-25. ███████████████████████████████ *Id*. at 209:6-14; *see also* Ex. 194, A. Culotta Report (Oct. 17, 2025) at 47-49.

**Plaintiff's Response 286:**     Disputed that ████████████████████████

██████████████████████ Ex. 281, Lively Tr. 208:11–17. Undisputed that ███████████

████████████████████████████████████████████████████████████

████████████████████ *Id*. at 208:11–209:18; Ex. 70, Culotta Report at 46–49.

287.    Prior to these events, Lively had also been criticized for "problematic on-set behavior" while working on the TV show *Gossip Girl*.  Ex. 195, Lively's Third Amended

Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025) at 15 (referring to January 7, 2024 video).  These criticisms resurfaced in August 2024.  *Id.*

**Plaintiff's Response 287:**    Undisputed that on January 7, 2024 a TikTok user posted a clip of a May 2017 interview with commentary about Lively's alleged "problematic on-set behavior" without any supporting evidence or foundation, and that on August 10, 2024 Abel ████████ ████████████████████████████████████████████████████████████ Wayfarer Ex. 195 at 15; Ex. 71 at WAYFARER_000136137. Disputed to the extent that this fact suggests there were any prior independent criticisms of Lively's on-set behavior by anyone who worked with her, of which there is no competent evidence. Defendants were █████████████████ ███████████████████████████████ Ex. 4, Baldoni 10/7 Tr. 278:18–279:2.

288.    ███████████████████████████████████████████

███████████████████ For instance:

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████████

████    Ex. 198, SPE_WF0000793 at -794.

**Plaintiff's Response 288:**     Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited sources for their complete contents and disputes any summary or interpretation inconsistent therewith.

289.     As negative sentiment toward Lively accelerated, Baldoni asked his PR team to confirm that it was not using "bots" or fake accounts to generate positive sentiment for him online. Abel and Nathan both confirmed that they were not using bots or fake accounts.  Ex. 199, BL-00000216 at -253; Ex. 190, BL-00000328; Ex. 200, JONESWORKS_0000001; Ex. 201, NATHAN_000000290.

**Plaintiff's Response 289:**     Undisputed that on August 18, 2024, after Baldoni noticed "[Instagram] comments on random posts defending me by people who are private with no followers and [ ] feel like bots," he asked Nathan and Abel for confirmation that they were not using bots because he doing so would "feed[] into [Lively's] potential narrative." Ex. 65 at BALDONI_000019423. Nathan responded that they were not using bots because "bots look fake to anyone," and that "[t]he other team is doing something very specific in terms of what they do. I know Jamey & Jed connected on this. Bots and fan accounts also run pretty organically by now with all the AI platforms and Google Analytics itself - there is no bot army that's a myth these days. Any digital team these days is far more intelligent to utilise something so obvious." *Id.* at NATHAN_000001006. Baldoni replied "Ok thank you" with praying hand and heart emojis. *Id.* Disputed that Nathan confirmed they were not using fake accounts. *See* Wayfarer Exs. 200 at JONESWORKS_00000003; 201 at NATHAN_000000290.

290.    On August 19, 2024, Baldoni asked Nathan about the negative sentiment toward Lively online.  He wrote:  "This is not us, correct?"  Nathan responded: "None of us would ever do this….there is this struggle where it's kind of maybe even unbelievable the way that people are turning against her … But they are. Organically. It's organic she's blown herself up by her own actions [Cites article describing Lively's past use of a transgender slur]…This just ran – obviously none of us knew about this either. But once media goes in, they go in … You did not do any of these[,] we did not do any of these. This is all organic."  Ex. 202, NATHAN_000000278-279.

**Plaintiff's Response 290:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited sources for their complete contents and disputes any summary or interpretation inconsistent therewith.

291.    On August 27, 2024, Baldoni privately discussed with Nathan that he had "no intention…to make [Lively] or anyone an outcast" and told Nathan he was "Praying for [Lively and Reynolds]."  Ex. 203, NATHAN_000000292.

**Plaintiff's Response 291:**    Undisputed that on August 27, 2024 Nathan wrote to Baldoni that she "kn[ew] that [it's] not your intention either to make her or anyone an outcast," and that Baldoni responded that "Praying for them (Lively and Reynolds) has been helpful" for his own trauma. Wayfarer Ex. 203 at NATHAN_000000292.

292.    On August 27, 2024, Baldoni wrote to Heath, Nathan and Abel: "Definitely don't want to place stories – and yet just want to change the narrative." Heath subsequently responded: "Let's stay the course and not react."  Abel agreed: "we want to keep our participation with press to a min and keep steering the narrative into other things where we can."  Ex. 204, NATHAN_000001030 at -32.

**Plaintiff's Response 292:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

293.    

**Plaintiff's Response 293:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

294.    

**Plaintiff's Response 294:**    Undisputed that in the cited ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

295.    

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

**Plaintiff's Response 295:**     Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Specifically, ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

296.     ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Ex. 173, Sloane Dep. Tr. at 192:07-21.

**Plaintiff's Response 296:**     Undisputed that the quoted language appears in the cited sources, but Lively respectfully refers  the Court to the cited sources for their complete contents and disputes any summary or interpretation inconsistent therewith. Specifically, Plaintiff disputes Defendants' characterization that ███████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ Wayfarer Ex. 208 at LS_0000219.

297.    On August 15, 2024, Sloane wrote to another gossip reporter, asking him to change the wording of a headline about the "feud" between Lively and Baldoni. █████████████ ████████████████████████████ After reviewing the article, ███████████ ███████████████████████████████████ Ex. 209, LS_0000253 at -256.

**Plaintiff's Response 297:**    Disputed. The document Defendants cite does not support that ████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

298.    ███████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████ Ex. 173, Sloane Dep. Tr.at 244:8-14.

**Plaintiff's Response 298:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith, including the assertion that 

299.

Ex. 210, RR-SUBPOENA-000000025 at -26.

**Plaintiff's Response 299:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

300.

Ex. 211, RR-SUBPOENA-000000120 at -122, 124.

**Plaintiff's Response 300:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

301.    During this period, Defendants believed that Lively's press team was spreading negative information about Baldoni and using bots.



**Plaintiff's Response 301:**    Disputed that the cited source supports Defendants' assertion that "Defendants" generally "believed that Lively's press team was spreading negative information about Baldoni and using bots" or that " ███████████████████████████████████ █████████████████████████████████████████████████████████████████████ Wayfarer Ex. 212 at BL-000003464. Undisputed that the quoted language appears in the cited source, but Lively respectfully refers  the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

302.    During this litigation, Lively responded to interrogatories seeking identification of the ways in which Defendants supposedly "seeded social media content" to increase the "negative sentiment" toward Lively. Ex. 195, Lively's Third Amended Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025).[2]

**Plaintiff's Response 302:**    Undisputed.

---

[2] Wayfarer, Abel, Nathan, and TAG propounded substantially similar interrogatories to Lively on this topic, and Lively provided substantially similar responses. *See* Ex. 215, Lively's Third Amended R&Os to Abel's Second Set of ROGs; Ex. 216, Lively's Third Amended R&Os to Nathan's Second Set of ROGs; Ex.-217, Lively's Third Amended R&Os to TAG's Second Set of ROGs.

303.    Nearly half the incidents Lively identifies are devoid of any negative content about Lively and merely claim that Defendants either "suppress[ed] content about Mr. Baldoni or enhanc[ed] positive content regarding Mr. Baldoni." Ex. 195, Lively's Third Amended Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025).  These include:

a.    Baldoni's effort to focus his press and promotion for the film on the issue of domestic violence and to "boost" videos by others showing him promoting his film. Ex. 220, BALDONI_000015675220; Ex. 221, JONESWORKS_00013830; Ex. 222, BALDONI_000019422.



b.    ██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████  Ex. 223, BBKOSLOW-000004011 at -4016.

c.    ██████████████████████████████████████████████
██████████████████████████████████████████████
███████  Ex. 224, BBKOSLOW-000004606.

d.    ██████████████████████████████████████████████
███████████████████████████████  Ex. 225, BBKOSLOW-000002400.

e.    ███████████████████████████████████████████████  Ex. 226, KCASE-000003856; Ex. 227, BBKOSLOW-000001800; Ex. 228, NATHAN_000001924; Ex. 229, BBKOSLOW-000004049; Ex. 223, BBKOSLOW-000004011; Ex. 230, BBKOSLOW-000006156; Ex. 231, KCASE-000000728; Ex. 232, KCASE- 000000763; Ex. 233, KCASE-000001093; Ex. 213,

JONESWORKS_00016275; Ex. 234, NATHAN_000002124; Ex. 235, KCASE-000003354.

f.   Efforts to track social media comments that were supportive of Baldoni's account or doubted Lively's.  Ex. 236, BBKOSLOW-000003330.

g.   

Ex. 237, BBKOSLOW-000005085; Ex. 238, BBKOSLOW-000005127.

h.

Ex. 239, JONESWORKS_00015395 at -396.

**Plaintiff's Response 303:**    Disputed that the incidents identified in Lively's Third Amended Responses to Wayfarer Studios LLC's Second Set Of Interrogatories make any "claim" regarding Defendants. Wayfarer Ex. 195. Disputed that nearly half the incidents Lively identifies in Lively's Third Amended Responses to Wayfarer Studios LLC's Second Set Of Interrogatories are devoid of any negative content about Lively, given that efforts to circulate negative content about Lively were inextricably tied to inorganic efforts suppressing content about Baldoni or enhancing positive content regarding Baldoni. *Id.* ("Such amplification, boosting, and similar efforts to affect the narrative to negatively affect Ms. Lively resulted where such efforts were taken in relation to suppressing content about Mr. Baldoni or enhancing positive content regarding Mr. Baldoni in relation to the Film or Ms. Lively.") (citing NATHAN_000005503 ("If the team is working on a longer lead, negative narrative, we would …mitigate false negatives, and point reporters toward third party advocates who can speak possibility on [Baldoni's] behalf"); *id.* ("Background briefing would include the numerous articles, interviews, and quotes of past

colleagues who openly love working with Justin, and pointing to BL's less than favorable reputation of her twenty-year career."); *id.* (encouraging "planting seeds of doubt and speculation" about Ms. Lively's "'experience' on set" by combining messaging as to "managing difference egos" and "being the subject to an imbalance of power" with "more positive press about the film")). Subject to the above:

- Undisputed that Baldoni undertook an effort to focus his press and promotion for the film on the issue of domestic violence and to "boost" videos by others showing him promoting the film. Disputed the cited sources supports Defendants' assertion that the cited context exclusively reflects Baldoni's effort to exclusively focus his press and promotion for the film on domestic violence. Wayfarer Exs. 220 (August 8, 2024 discussion of post regarding Baldoni making matcha); 222 (Baldoni texts link and request "To boost" TikTok video where the author of the video states: "I am flabbergasted that with the huge audience that Blake Lively has and all of the press interviews she's had she doesn't once talk about DV"). Disputed that Wayfarer Exhibit 221, a communication between Mitz Toskovic, Abel, and Heath, which does not include Baldoni as a participant, reflects Baldoni's effort to focus his press and promotion for the film on the issue of domestic violence or to "boost" videos by others showing him promoting his film. Wayfarer Ex. 221.

- Undisputed that ███████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████ Wayfarer Ex. 223 at BBKOSLOW-000004016.

- Undisputed that ███████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████ Wayfarer Ex. 224, BBKOSLOW-000004606. ██████████████████████

██████████████████████████████████████████████████████

████████████████████████████ Wayfarer Ex. 195 at 14.

- Undisputed that ████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Wayfarer Ex.

225.

- Undisputed  that  ██████████████████████████████████████

████████████████████ but disputed that any cited source other than Wayfarer Ex. 227, reflects the

express quoted language. Wayfarer Exs. 213, 223, 226–35.

- Undisputed that ████████████████████████████████████████

██████████████████████████ Disputed that the cited source does not express conduct

that would have a negative effect on Lively.  Wayfarer Ex. 236 ████████████████████

███████████████████████.

- Undisputed that ████████████████████████████████████████

████████████████████████ Disputed that the cited sources support Defendants' assertion that claim

was false. Wayfarer Exs. 237–38.

- Undisputed that ████████████████████████████████████████

████████████████████████████████████████ Disputed that the cited source

supports Defendants' assertion that ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ Wayfarer Ex. 239.

304.    Lively also points to incidents in which certain Defendants spoke to the press about

Lively herself.  None of these incidents involved sharing any factual falsehoods about Lively;

instead, they involved pointing out true facts about Lively or her husband's conduct or sharing negative opinions of that conduct. Ex. 195, Lively's Third Amended Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025).

**Plaintiff's Response 304:**     Undisputed that in Lively's Third Amended Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025), Lively points to incidents in which certain Defendants spoke to the press about Lively herself.  Undisputed that some of these incidents involved point out facts about Lively or her husband's conduct or sharing negative opinions about Lively or her husband's conduct. Disputed that none of these incidents involved sharing any factual falsehoods about Lively given that multiple placed Lively in a false light. Wayfarer Ex. 195.

305.



*See, e.g.,* Ex. 240, KCASE- 000001194; Ex. 194, A. Culotta Report (Oct. 17, 2025) at 52-57.

**Plaintiff's Response 305:**     Disputed that Professor Aron Culotta, PhD. concluded in his expert report that Defendants

Wayfarer Ex. 194 at 4, 52–57.

306.     Lively has not put forward any evidence to suggest the "little bump" video is not genuine, or that Defendants had any contact with the reporter in the video.

**Plaintiff's Response 306:**     Undisputed.

307.    Sarowitz was not involved in the marketing of the film, and did not review any of the marketing materials for the film created by Wayfarer Studios or Sony.  Ex. 6, Sarowitz Dep. Tr. 146:8-18, 121:3-5.

**Plaintiff's Response 307:**    Undisputed that Sarowitz testified that he did not review any of the marketing materials for the film created by Wayfarer Studios or Sony. Disputed that Sarowitz was not involved in the marketing of the film, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████. *See* Ex. 72. Sarowitz hosted a showing of the film at Wayfarer Theaters, which was styled as Lily Bloom's flower shop. "'It Ends With Us' Pop-Up & Non-Profit Partnership," https://wgntv.com/spotlight-chicago/it-ends-with-us-pop-up-non-profit-partnership/    (Aug.  14, 2024). Sarowitz personally gave an interview on the film on August 14, 2024. *Id.* ████████

████████████████████████████████████████████████

██████████ Ex. 73. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Exs. 41, Greenberg Tr. 290:19–291:22; 11, Sarowitz Tr. 122:18–123:9; Wayfarer Ex. 241.

308.    Sarowitz did not participate in any respect in any of the preparation in advance of Baldoni's interviews regarding the release of *It Ends With Us*.  Ex. 6, Sarowitz Dep. Tr. 137:19-22.

**Plaintiff's Response 308:**    Undisputed that Sarowitz did not participate in the preparation in advance of Baldoni's interviews regarding the release of *It Ends With Us*.

309.    Sarowitz himself participated in certain interviews in August 2024, but did not do any media interviews in conjunction with the release of *It Ends with Us* in the first couple of weeks of August 2024.  Ex. 6, Sarowitz Dep. Tr. 138:3-10.

**Plaintiff's Response 309:**    Undisputed that Sarowitz participated in certain interviews in August 2024, but disputed that Sarowitz did not do any media interviews in conjunction with the release of *It Ends with Us* in the first couple of weeks of August 2024, as Sarowitz participated in an interview with Spotlight Chicago, WGN news on August 14, 2024 on a segment entitled "'It Ends With Us' Pop-Up & Non-Profit Partnership." *See* https://wgntv.com/spotlight-chicago/it-ends-with-us-pop-up-non-profit-partnership/ (Aug. 14, 2024).

310.    Sarowitz was not involved in hiring any PR team for Wayfarer.  Ex. 6, Sarowitz Dep. Tr. 152:4-9.

**Plaintiff's Response 310:**    Disputed that Sarowitz was not involved in hiring any PR or crisis team for Wayfarer, ████████████████████████████████████████ ████████████████████████████████████████████████████████ Wayfarer Exs. 167 at JONESWORKS_WAYFARER_000003012; 246 at 38:15–24 ████████ ████████████████████████████████████████████; Ex. 73.  Further disputed that Sarowitz was unaware of and did not approve of hiring a PR or crisis team for Wayfarer, Baldoni, and its executives, given that he ████████████████████████████ ██████████████████████████████ Exs. 11, Sarowitz Tr. 122:18–123:9; Wayfarer Ex. 241.

311.    Sarowitz was not asked his opinion on hiring The Agency Group before they were retained.  Nor did he vet The Agency Group before they were retained.  Ex. 6, Sarowitz Dep. Tr. 152:16-153:2.

**Plaintiff's Response 311:**    Undisputed that Sarowitz was not asked his opinion on hiring The Agency Group before they were retained, and did not vet The Agency Group before they were retained, except to the extent that opinion or vetting took place in connection with Sarowitz's █████████████████████████████████ as of August 14, 2024. Ex. 73.

312.    Sarowitz also did not approve the hiring of Street Relations.  He was not consulted before they were hired and was not involved in that decision.  Ex. 6, Sarowitz Dep. Tr. 153:3-154:7.

**Plaintiff's Response 312:**    Undisputed that Sarowitz did not directly approve hiring Street Relations before they were hired and was not involved in that decision, except to the extent that opinion or vetting took place in connection with Sarowitz's "████████████████████ ███████████████████. Ex. 73. Further disputed that Sarowitz was unaware of and did not approve of the hiring of Street Relations and/or Jed Wallace after the fact and during the retaliatory campaign against Lively. *See, e.g.*, Ex. 74 (certified transcript)).

313.    There is no evidence that Sarowitz received or reviewed the "Scenario Planning" document circulated by TAG prior to this litigation.

**Plaintiff's Response 313:**    Undisputed except to the extent that Baldoni was unable to disclaim that Sarowitz's suggestion regarding "flipping the script" regarding Lively and her family was part of Defendants' scenario planning. Ex. 20, Baldoni 10/6 Tr. 285:8–10.

314.    There is no evidence that Sarowitz ever spoke with Jed Wallace or any employee of Street Relations prior to this litigation. Ex. 4, Heath 10/8 Dep. Tr. 338:5-10.

**Plaintiff's Response 314:**    Undisputed that Sarowitz never spoke with Jed Wallace or any employee of Street Relations prior to this litigation, but disputed that Sarowitz never spoke

with Jed Wallace or any employee of Street Relations during the retaliation campaign. Ex. 74 (certified transcript)).

315.    In her interrogatory response, Lively has identified each instance in which the Defendants purportedly spread "negative" information about her.    Ex. 195, Lively's Third Amended Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025).    The interrogatory response does not identify any specific instance in which Sarowitz himself was involved in circulating any information about Lively whatsoever prior to this litigation, and only one instance in which he weighed in on press strategy concerning Lively.

**Plaintiff's Response 315:**    Disputed that Lively's Third Amended Responses To Wayfarer Studios LLC's Second Set Of Interrogatories No. 21 (Oct. 17, 2025) does not identify any specific instance in which Sarowitz himself was involved in circulating any information about Lively whatsoever prior to this litigation, as he "suggested" influencing the narrative with reference to Lively and her family, the substance of which was the direct cause of Baldoni circulating that information to Nathan. Wayfarer Ex. 241; Exs. 20, Baldoni 10/6 Tr. 278:10–279:6; 4, 10/7 Baldoni Tr. 339:10–340:6; 11, Sarowitz Tr. 122:18–123:9.

316.     Ex. 242, WAYFARER_000142463; Ex. 50, BL-000011703.

**Plaintiff's Response 316:**    Undisputed  that ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ Disputed that Sarowitz was suggesting factual corrections for accuracy rather

than asking about "flipping the narrative" and "[u]sing their own words against them" to "lead" to

the conclusion that Lively and Reynolds "were scabs" in attempt to influence the narrative against

Lively and her family. Wayfarer Ex. 241; 11, Sarowitz Tr. 122:18–123:9.

317.    ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████ Ex. 142, Greenberg Dep. Tr. 290:19-291:22.

**Plaintiff's Response 317:**    Undisputed that ██████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ Undisputed that Greenberg testified that

██████████████████████████████████████████ Wayfarer Ex. 142

at 290:19–291:22. Disputed that ██████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ *See* Exs. 75 ████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████

318.    ████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Ex.

142, Greenberg Dep. Tr. 291:5-292:14.

**Plaintiff's Response 318:**    Undisputed, except that ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

319.    ████████████████████████████████████

███████████████████████████████████████████ Ex. 142,

Greenberg Dep. Tr. 292:18-21.

**Plaintiff's Response 319:**    Undisputed as to the substance of Greenberg's testimony,

but disputed as whether the testimony accurately reflects the complete substance of the

conversation between ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

320.    ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. 142, Greenberg Dep. Tr. 294:9-11.

██████████████████ █ Undisputed as to the substance of Greenberg's testimony,

but disputed as whether the testimony accurately reflects the complete substance of the

conversation between ██████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

321.    Greenberg has no memory of Sarowitz mentioning ruining anyone's life.  Ex. 142, Greenberg Dep. Tr. 300:12-13.

**Plaintiff's Response 321:**    Undisputed as to the substance of Greenberg's testimony, but disputed as whether the testimony accurately reflects the complete substance of the conversation between ███████████████████████████

███████████████████████████████████████████

██████████████████████████████████

322.    Greenberg recalls that Sarowitz stated: "I have lawyers and in the event I need to, and this becomes a legal situation, I'm prepared to spare no expense."  Ex. 142, Greenberg Dep. Tr. 292:22-293:10.

███████████████ Undisputed as to the substance of Greenberg's testimony, but disputed as whether the testimony accurately reflects the complete substance of the conversation between ███████████████████████████

███████████████████████████████████████████

██████████████████████████████████

323.    ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

**Plaintiff's Response 323:**    Undisputed as to the content of the August 9, 2024 text message and the substance of Greenberg's testimony. Disputed as whether the testimony accurately reflects the complete substance of the conversation between ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

324.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████. 142, Greenberg Dep. Tr. 298:18-299:13.

**Plaintiff's Response 324:**    Undisputed as to the content of the August 10, 2024 text message and the substance of Greenberg's testimony. Disputed as whether the testimony accurately reflects the complete substance of the conversation between ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

325.    ████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████ Ex. 142,

Greenberg Dep. Tr. 302:16-17.

**Plaintiff's Response 325:** Undisputed as to the substance of Greenberg's testimony, but disputed as whether the testimony accurately reflects the complete substance of the conversation between ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

326.    Sarowitz had a call with Claire Ayoub on August 29, 2024, which Ayoub recorded. Ex. 245, BL-000033428; Ex. 246, Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.); Ex. 6, Sarowitz Depo. Tr. 312:3-313:24.

**Plaintiff's Response 326:** Undisputed.

327.    During the conversation, Sarowitz stated the following: "The *It Ends With Us* drama is simply that it is a drama, I'm done with it….It's going to happen when it's going to happen.  You know, whatever is going to happen, whatever people want to think they are going to think.  I was worried about it at one point and now I just -- now I'm just going to let the chips fall where they may…. If they like us, great, if they don't, they don't.  We are who we are."  Ex. 246, Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 5:1-16.

**Plaintiff's Response 327:** Undisputed.

328.    He further stated: "They went after everything we had.  Luckily I was out of it so like – [n]obody mentioned me….That's because I'm a nobody.  I'm like I'm nobody, you know."  Ex. 246, Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 19:24-20:8.

**Plaintiff's Response 328:** Undisputed.

329.    He further stated: "Justin never has a bad set.  Yet, it was the worst set he has ever been on, but no, it wasn't bad.  I was there on set.  It was, you know, Justin is really kind and loving and he is like Rainn, actually Rainn is running a set…It is a Bahá'í set.  It is never going to be like that, no.  Everything was made up, it was manufactured, and it was – it was manufactured on purpose in order to take Justin down."  Ex. 246,  Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 31:7-13.

**Plaintiff's Response 329:**    Undisputed.

330.    He also stated: "I just know that for right now it seems like détente and then if they persist and they push to the limits then we will go to court and then it's all on me."  Ex. 246,  Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 36:16-20.

**Plaintiff's Response 330:**    Undisputed.

331.    In response to a question by Ayoub as to whether he meant "protecting the studio," Sarowitz replied "I will protect the studio like Israel protected itself from Hamas.  There were 39,000 dead bodies.  There will be two dead bodies when I'm done.  You know, and so not dead, but, you know…But you're dead to me…So that kind of -- that kind of dead, but dead to a lot of people.  If they ever get me to that point then I will make it worth their while because I'm going to spend a lot of money to make sure the studio is protected.  But I don't think we will go there."  Ex. 246,  Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 36:23-37:18.  Ayoub replied "Yeah, I hope not."  And Sarowitz stated "That's not the world I want to live in." Ex. 246,  Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 37:19-22.

**Plaintiff's Response 331:**    Undisputed.

332.    Sarowitz further stated "this is not going to go away, I don't think it is going to go away anytime soon….We will have to be defensive for years because there will be stuff coming

at us.  I will be defensive for years."  Ex. 246,  Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 38:6-13.  When Sarowitz said this, he meant that he would defend Wayfarer Studios.  Ex. 6, Sarowitz Dep. Tr. 334:2-10.

**Plaintiff's Response 332:**     Undisputed.

333.     Sarowitz further stated: "If they ever cross the line, ever, then I will go after them. Jamey at one point called me up and said I think we're going to need you.  And we have lawyers ready to go, we have our press people, our PR people working."  Ex. 246,  Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) 38:15-24.

**Plaintiff's Response 333:**     Undisputed.

334.     Sarowitz further commented: "you work with so many people and almost everybody is nice, and then there is Blake who she is totally different than everyone….Not to say anything bad about her, but … [s]he is different.  She is different."  Ex. 246, Oct. 3, 2025 transcript (Ex. 15 to Sarowitz Dep.) . 55:9-14.

**Plaintiff's Response 334:**     Undisputed.

335.     ███████████████████████████████████████████████████ Ex.  6, Sarowitz Dep. Tr. 283:7-19.

**Plaintiff's Response 335:**     Disputed.  ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

336.    ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████ Ex. 6, Sarowitz Dep. Tr.

48:5-17, 52:1-21, 53:1-20, 352:9-11.

**Plaintiff's Response 336:**    Undisputed as to the substance of Sarowitz's testimony, but

disputed that this litigation ████████████████████████████████████████

██████████████████████████ Ex. 11, Sarowitz Tr. 46:20–47:8.

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

**Plaintiff's Response 337:** ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ Ex. 281, Lively Tr. 147:11–148:15.

██ █ ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

**Plaintiff's Response 338:** Undisputed.

██ █ ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

**Plaintiff's Response 339:** Undisputed that, ████████████████████

████████████████████████ and Lively respectfully refers the Court to the cited source for its

complete contents and disputes any summary or interpretation inconsistent therewith.

340. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Ex. 248, Harris Dep. Tr. 224:15–225:15.

**Plaintiff's Response 340:**   Disputed. The evidence cited does not support Defendants' assertion.

341.   On or about October 1, 2024, taking advantage of New York rules that permit discovery even before issue has been joined, and of the fact that no defendants had been named who could thereby invoke the Court's process on their behalf, ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

**Plaintiff's Response 341:**   Undisputed that, ████████████████████████

████████████████████████ and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

████ Such requests were made even though the complaint did not refer to the film or Jonesworks at all, *see* Ex. 249, VANZAN_00001, nor ████████████████████████

████████████ *see* Ex. 248, Harris Dep. Tr. 38:18–39:1 ████████████████████████

████████████████████████

**Plaintiff's Response 342:**   Undisputed and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

343.   The filing of the lawsuit and the issuance of the subpoena created a legal mechanism by which Lively, through Vanzan, could ostensibly claim to legitimately obtain the documents Jones had found on Abel's phone.  Absent a court's compulsory process, Jones could not simply turn over records she found on one of her employee's phones.  Ex. 251, JONESWORKS_00030306.

**Plaintiff's Response 343:**    Undisputed that the initiation of the Vanzan lawsuit and Vanzan's issuance of a document subpoena to Jones permitted Vanzan to request the categories of documents therein, but otherwise disputed that "[a]bsent a court's compulsory process, Jones could not simply turn over records she found on one of her employee's phones," which the cited evidence does not support, and which is a legal conclusion.

344.    ▮▮▮▮▮▮▮▮ Vanzan voluntarily dismissed the case on December 19, 2024, without any defendant ever appearing in the action.  *See Vanzan Inc. v. Does 1–10*, No. 655130/2024 (N.Y. Sup. Ct.), NYSCEF No. 2; *see also* Ex. 248, Harris Dep. Tr. 63:24–64:2.

**Plaintiff's Response 344:**    Undisputed.

345.    On December 21, 2024, *The New York Times* published a 4,000 word article entitled "We Can Bury Anyone: Inside a Hollywood Smear Machine."    Ex. 242, WAYFARER_000142613.  The article cited documents from Abel's phone that Vanzan had obtained by invoking the Court's process in a case against 10 anonymous Doe defendants.  It appears that Jones agreed to turn over the documents without any protective order or measure to prevent their disclosure.

**Plaintiff's Response 345:**    Undisputed that, on December 21, 2024, the New York Times published an article entitled "We Can Bury Anyone: Inside a Hollywood Smear Machine" and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Disputed that "[t]he article cited documents from Abel's phone that Vanzan had obtained," which is not supported by any evidence.

346.    *The New York Times* article asserted that Baldoni and Heath had violated physical boundaries and made sexual and other inappropriate comments to and then instituted a retaliatory

"smear campaign" against Lively.  *Id.  The New York Times* article included a link to Lively's

California state administrative complaint, which had been filed the previous day.  *Id.*

**Plaintiff's Response 346:**    Undisputed and Lively respectfully refers the Court to the

cited source for its complete contents and disputes any summary or interpretation inconsistent

therewith.

347.    

**Plaintiff's Response 347:**    Disputed. The evidence cited does not support Defendants'

assertion that

Undisputed that the quoted language appears in the cited

source, but Lively respectfully refers the Court to the cited source for its complete contents and

disputes any summary or interpretation inconsistent therewith. Wayfarer Ex. 89 at BL-000021210.

348.    Through the administrative complaint she provided, Lively and/or her agents told

*The New York Times* and other media that Baldoni had "abruptly pivoted away" from the agreed–

on marketing for the film to emphasize his support for survivors of domestic violence.  Ex. 252,

CRD ¶ 7.  That statement is false. *See* Ex. 253, BALDONI_000030667 (cover email to Sony); Ex.

254, BALDONI_000030668 (IEWU initial campaign concepts).

**Plaintiff's Response 348:**    Undisputed that Lively's CRD complaint alleges that "[i]n

the days leading up to the Film's release, Mr. Baldoni abruptly pivoted away from the Film's

Marketing Plan and the types of publicity activities in which he had previously participated . . . in

an effort to explain why many of the Film's cast and crew had unfollowed Mr. Baldoni on social

media and were not appearing with him in public," *see* Wayfarer Ex. 252 at ¶ 7, and Lively

respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Disputed as to the Defendants' assertion "[t]hat statement is false," which the cited evidence does not support. *See* Wayfarer Exs. 253, 254.

349.    Through the administrative complaint she provided, Lively and/or her agents told *The New York Times* and other media Baldoni and Wayfarer had not used nudity riders or intimacy coordinators on set until her intervention.  Ex. 252, CRD ¶ 30. That statement is false.  *See* Ex. 255, HEATH_000045527; Ex. 256, 24–CV–10049_0001819; Ex. 60, 24–CV–10049_0001816.

**Plaintiff's Response 349:**    Undisputed that Lively's CRD complaint alleges that "Wayfarer failed to adhere to guild rules, as well as Lively's contract, and standard industry safety protocols with respect to nudity and intimate scenes," *see* Wayfarer Ex. 252 at ¶ 30, and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Disputed that Defendants' assertion "[t]hat statement is false," which the cited evidence does not support. To the contrary, the evidence cited by Defendants shows that, ██████████████████████████████████████████ *See* Wayfarer Ex. 60 at 24–CV–10049_0001816–18; Wayfarer Ex. 255 at HEATH_000045527–31.

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ *See* Exs. 77; 78.

350.    Through the administrative complaint she provided, Lively and/or her agents told *The New York Times* and other media Baldoni had suggestively told Lively her neck "smells so good" during a shot.  Ex. 252, CRD ¶ 32.  Video captured of the scene demonstrates that statement was false. Ex. 74, WAYFARER_000140494.

**Plaintiff's Response 350:**    Undisputed that Lively's CRD complaint alleges that during a slow dance scene for a montage with no sound recorded, Mr. Baldoni "leaned forward and slowly dragged his lips from [Lively's] ear and down [Lively's] neck as he said, 'it smells so good,'" which was not part of the script, *see* Wayfarer Ex. 252 at ¶ 32, and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Disputed that "[v]ideo captured of the scene demonstrates that statement was false," which the cited evidence does not support. To the contrary, the evidence cited by Defendants is video footage from the scene in which Lively's character gives birth. *See* Wayfarer Ex. 74, at WAYFARER_000140494; *see also* Lively Decl. ¶ 19.

351.    Through the administrative complaint she provided, Lively and/or her agents told *The New York Times* and other media Baldoni had "routinely degraded Lively by finding back channel ways of criticizing her body and weight," including by pretending a scene in the script required him to lift Lively so he could ask her trainer about her weight and by referring Lively to a weight loss specialist.  Ex. 252, CRD ¶¶ 51–52.  Those statements were false. *See* Ex. 257, BALDONI_000026173; Ex. 258, BL–000011258 at –11329.

**Plaintiff's Response 351:**    Undisputed that Lively's CRD complaint alleges that Mr. Baldoni also routinely degraded Lively by finding back–channel ways of criticizing her body and weight" and that Mr. Baldoni "sham[ed] her for her body and weight," *see* Wayfarer Ex. 252, at ¶¶ 49–50, and Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Disputed that Defendants assertion "[t]hat statement is false," which the cited evidence does not support. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ Lively Decl., ¶¶ 5–8; Saladino

Decl. ¶¶ 9-10; Exs. 21 at BENSON_0008; 22 at BL–000008819–20; 12, Slate Tr. 47:8–24.

352.    ████████████████████████████████████████████

████████████████████████████████████████████ Ex. 259,

BBKOSLOW–000005795 at –797.

**Plaintiff's Response 352:**    Undisputed that the quoted language appears in the cited source, but respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

353.    As discussed above, formal negotiations regarding the terms governing Lively's potential performance in *It Ends With Us* commenced in mid–December 2022, when Meziane sent Lively's representatives a draft Offer Letter under which Lively would agree to perform in the role of Lily Bloom in the film.  Ex. 26, HEATH_000046097.

**Plaintiff's Response 353:**    Undisputed.

354.    The first draft of the Offer Letter defined "Producer" as "Wayfarer Studios (or their designated production service entity)."  Ex. 27, HEATH_000046098.

**Plaintiff's Response 354:**    Undisputed.

355.    On April 25, 2023, Lively's lawyer revised the Offer Letter to define "Producer" as IEWUM, an entity that Lively's representatives understood was Wayfarer's "designated production service entity" for the film.    Ex. 260, HEATH_000045731; Ex. 261, HEATH_000045741.

144

**Plaintiff's Response 355:**    Undisputed.

356.    The Offer Letter set forth basic parameters of the anticipated agreement, which endured throughout the drafting process:  Lively's loanout company Blakel, Inc. (defined as "Lender") would agree to furnish Lively (defined as "Artist") to perform in the role of Lily on specified dates.  Ex. 28, HEATH_000045678.

**Plaintiff's Response 356:**    Undisputed that Ms. Lively's Loanout company, Blakel, Inc., contracted to provide the services of Ms. Lively to perform in the role of "Lily" pursuant to the Offer Letter, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

357.    Lively would also receive top billing and an "Executive Producer" credit.  Ex. 28, HEATH_000045678.

**Plaintiff's Response 357:**    Undisputed that the cited source reflects that Ms. Lively would receive "Executive Producer" credit, would be "1st position among EP's," and would take "First Position" in on screen credits, Wayfarer Ex. 28 at HEATH_000045679, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

358.    In exchange for this and other consideration to Lively, IEWUM (ultimately defined as "Producer") would pay Lively a substantial up-front fee, to be placed in an escrow account held by Lively's agent, WME, before filming would commence, plus compensation based on the performance of the film and other contingencies. Ex. 28, HEATH_000045678.

**Plaintiff's Response 358:**    Undisputed, except as to Lively's compensation based on the performance of the Film and other contingencies, which remained subject to negotiation. *Compare* Wayfarer Ex. 28 at HEATH_000045678 *with* Wayfarer Ex. 264 at BL-000038606–38608.

359.    Following several months of negotiations and exchanges of drafts, the Offer Letter was finalized in early May 2023, and dated March 17, 2023.  Ex. 32, HEATH_000045662.  Ex. 28, HEATH_000045678.

**Plaintiff's Response 359:**    Undisputed that the final version of the Offer Letter, dated March 17, 2023, was circulated on May 4, 2023.

360.    The Offer Letter did not contain any terms regarding sexual harassment. Ex. 28, HEATH_000045678.

**Plaintiff's Response 360:**    Undisputed.

361.    Wayfarer itself, as opposed to IEWUM, undertook no obligations under the Offer Letter.  Ex. 28, HEATH_000045678.

**Plaintiff's Response 361:**    Disputed. The evidence cited does not support Defendants' assertion that Wayfarer undertook no obligations under the Offer Letter. Wayfarer Ex. 28 at HEATH_000045678. To the contrary, the Offer Letter was signed by Ms. Meziane on behalf of "Wayfarer Studios," and IEWUM contracted with Blakel, Inc. in its capacity as an LLC "established by Wayfarer in 2022 in connection with the development and production of *It Ends With Us*." Wayfarer Ex. 28 at HEATH_000045678; Heath Decl. ¶ 6.

362.    The Offer Letter expressly and unambiguously provided that full execution of a long form agreement, to be subsequently negotiated, was a condition precedent to IEWUM's obligations thereunder, stating:

> 13. **Conditions Precedent**. Producer's obligations to Artist hereunder shall be subject to the satisfaction of the following: (a) Artist qualifying for cast and other insurance (which may include essential element insurance) and (b) full execution by Artist, Lender and Producer, of an Agreement in a form reasonably acceptable to all parties. Unless and until Lender/Artist are unconditionally pay or play and 100% of the fee is in escrow, Lender and Artist are not obligated hereunder, and Artist is free to take conflicting engagements.
>    …

Once we reach an agreement on the above terms, we will be happy to distribute a long form agreement, incorporating the terms herein and other standard terms and conditions to be negotiated in good faith.

Ex. 28, HEATH_000045678 at 80-81.

**Plaintiff's Response 362:**    Disputed. The evidence cited does not support Defendants' assertion that full execution of a long form agreement regarding the terms of Ms. Lively's engagement was expressly and unambiguously a condition precedent to IEWUM's obligations to Ms. Lively under the Offer Letter. To the contrary, the cited evidence specifies as a condition precedent execution of "an Agreement in a form reasonably acceptable to all parties," Wayfarer Ex. 28 at HEATH_000045680, and Ms. Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith. Further, disputed that Paragraph 13 of the Offer Letter was an ongoing and operative part of the parties' agreement; the terms of the Offer Letter became binding through Lively's reliance letter to Wayfarer which expressly recognized the waiver of Paragraph 13 through the parties' mutual performance notwithstanding the absence of an executed long-form. Ex. 6 █████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████.

363.    On May 8, 2023, outside counsel for IEWUM, Joseph Lanius, sent Lively's attorney a draft "Actor Loanout Agreement," ("ALA")—*i.e.*, the "long form agreement" referred to in the Offer Letter.  Ex. 262, WAYFARER_000140956; Ex. 263, WAYFARER_000140957.

**Plaintiff's Response 363:**    Undisputed that Joseph Lanius ("Lanius") sent Lively's attorney a draft Agreement on May 8, 2023 (although he did so "on accident"). Ex. 79.

364.    The parties to the draft ALA were IEWUM (defined as "Company") and Blakel, Inc. ("Lender"), with an inducement to be signed by Lively ("Artist").    Ex. 263, WAYFARER_000140957.

**Plaintiff's Response 364:**    Undisputed.

365.    The first section of the draft ALA referred expressly to "Conditions Precedent," stating that conditions precedent to "Company's obligations under this Agreement" included "Company's receipt of executed copies of this Agreement signed by Lender and Artist," (§1.3)[3] as well as receipt of "the inducement attached hereto and incorporated herein by this reference, fully executed by Lender and Artist" (§1.5). Ex. 263, WAYFARER_000140957 at 57-58.

**Plaintiff's Response 365:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

366.    An inducement provision included at the end of the draft provided that Blake Lively would be personally bound by the terms of the ALA. It further provided that "for the purposes of any and all Worker's Compensation statutes, laws, or regulations…an employment relationship exists between [IEWUM] and myself, [IEWUM] being my special employer under the agreement." Ex. 263, WAYFARER_000140957 at 90.

---

[3] The section numbers did not remain consistent across drafts of the ALA.

**Plaintiff's Response 366:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

367.    The draft ALA contained an "Entire Agreement" provision (§18) which provided that a document setting forth "Standard Terms" would be included as part of the ALA and stated *inter alia*:

> This Agreement (including the Standard Terms) constitutes the entire understanding of the parties hereto and replaces any and all former agreements, understandings and representations relating in any way to the subject matter hereof.  No modification, alteration or amendment of this Agreement shall be valid or binding unless it is in writing and signed by both parties.

> Ex. 263, WAYFARER_000140957 at 71.

**Plaintiff's Response 367:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

368.    The "Standard Terms" attached as Exhibit A contained numerous provisions designed to protect IEWUM, including a notice and cure provision titled "Company's Breach," which ruled out any breach in the event of cure, as well as an express damages limitation, which ruled out any consequential damages:

> §4.3, titled "Company's Breach," stated, *inter alia*:

> No act or omission of Company hereunder shall constitute an event of Default or breach of this Agreement unless Artist shall first notify Company in writing setting forth such alleged breach or Default and Company shall not cure the same within thirty (30) days after receipt of such notice…. Ex. 263, WAYFARER_000140957 at 77.

> §15.7, titled "Limitations on Damages" stated:

> In no event will any party hereto (Company and/or Artist) be liable for or have any obligation to pay to the other consequential and/or incidental and/or special and/or punitive damages, all of which are expressly excluded, and Company and Lender and

Artist each hereby waive any right to recover any such damages from the other.  Ex. 263, WAYFARER_000140957 at 83.

**Plaintiff's Response 368:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

369.    The Standard Terms contained an additional merger provision (§15.3) which also included "non-waiver" language.  Ex. 263, WAYFARER_000140957 at 82.

**Plaintiff's Response 369:**    Undisputed.

370.    The Standard Terms also contained a "Lender's and Artist's Remedies" Provision (§15.6) stating, *inter alia*, that "The rights and remedies of Lender and Artist in the event of any breach by Company of this Agreement or any of Company's obligations hereunder shall be limited to Lender's and/or Artist's right to recover damages (subject to Paragraph 15.7 below), if any, in one or more arbitration proceedings."  Ex. 263, WAYFARER_000140957 at 83.

**Plaintiff's Response 370:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

371.    The Standard Terms required that any notices to IEWUM be "in writing" and addressed to IEWUM Attn: Jamey Heath.  Ex. 263, WAYFARER_000140957 at 77-78.

**Plaintiff's Response 371:**    Undisputed that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

372.    ███████████████████████████████████████████

████████  Ex. 218, BL-000038554.

**Plaintiff's Response 372:**    Undisputed that, after several rounds of negotiations, Ms. Lively's counsel circulated revisions to the Agreement on April 18, 2024, which included provisions ███████████████████████████████████████

███████████████████████████████████████████████

Wayfarer Exs. 266 at BL-000038542, BL-000038548 (February 2024 draft); 267 at BL-000038504, BL-000038510 (March 2024 draft); 218 at BL-000038554.

373.    ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████ *Id.*

**Plaintiff's Response 373:**    Undisputed.

374.    The first phase of filming *It Ends With Us* began on May 15, 2023, with the ALA still unsigned and no agreement reached on its final terms.  Heath Decl. ¶¶17-18.

**Plaintiff's Response 374:**    Undisputed that the first phase of filming *It Ends With Us* began on May 15, 2023 and that the Agreement was not signed at the time, but disputed that the terms were not substantially finalized, and disputed to the extent that this assertion suggests that the Agreement was not a binding enforceable agreement. The face of the CRA itself confirms that the parties "ha[d]" reached agreement on at least the material terms. Wayfarer Ex. 117 at HEATH_000045307. Further, as of the date the CRA was executed, both parties had commenced performance of their obligations under the Agreement. Exs. 293 (WAYFARER_000067020) (████████████████████████████████; 294 (HEATH_000045201) ████████████

███████████████████████████████████████████████

295  (HEATH_000045200) ████████████████████████████████

████████████████████████████████

375.    IEWUM was not asked to and did not pay for any medical insurance for Lively. Heath Decl. ¶21.

**Plaintiff's Response 375:**    Undisputed.

376.    Lively and her team negotiated every aspect of her work, dictating numerous terms and conditions, including minute details, such as the right to exercise pre-approval over the days when shoots would take place in locations other than New Jersey as well as her travel and accommodations in those locations; the financial bonuses she would receive if the film hit certain benchmarks; the credits she would receive for her work, including an executive producer credit; the identity of her make-up artist, wig maker, and body double; the ability to offer a "Meaningful consultation over the 'look' of the Role, ad campaign and release pattern; and the time she would spend on set and travelling to and from her home in New York each day; and even approval over the screenplay, the director, and her co-lead actor.  *E.g.*, Ex. 28, HEATH_000045678; Ex. 32, HEATH_000045662 at -663-75; Ex. 265, HEATH_000046122.

**Plaintiff's Response 376:**    Disputed that Lively and her team negotiated "every aspect of her work," which the cited evidence does not support. *See generally* Wayfarer Exs. 28, 32, 265. Lively and her representations negotiated for certain terms and conditions "beyond SAG minimum protections," and such negotiations were consistent with work condition negotiations for ████ ████████████████████████████████████████ Wayfarer Ex. 32 at HEATH_000045664. ████████████████████████████ ████████████████████████████ Wayfarer Ex. 266.

377.    Nonetheless, although the parties negotiated for more than a year, Lively never signed any long-form agreement setting out the complete terms of her engagement with the film. Ex. 264, BL-000038599; Heath Decl. ¶¶14-19.

**Plaintiff's Response 377:**    Undisputed that Lively did not sign the Agreement, but disputed that the parties did not reach agreement on the material terms of the Agreement and that the Agreement was not binding as to those terms. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Compare* Wayfarer Ex. 266 ████████████████████████████████████████████

████████████████████████████████████████████ *with* Wayfarer Ex. 267 at BL-000038482, BL-000038483, BL-000038492, BL-000038504, BL-000038510 ██████████████████████████████ *and* Wayfarer Ex. 218 ██████████

████████████████████████████████████████████████████

███████████████████████████████████████████; *and* Ex. 80 at HEATH_000041866, HEATH_000041888, HEATH_000041894 ██████████████

████████████████████████████████████████████

378. ████████████████████████████████

████████████████████████████████████

████████ *E.g.*, Ex. 266, BL-000038516; Ex. 267, BL-000038477.

**Plaintiff's Response 378:**     Undisputed that negotiations over the terms of the Agreement resumed and continued after the CRA was executed and filming recommenced, and that certain terms remained subject to disagreement, but otherwise disputed as misleading because the assertion that "numerous terms" remained subject to disagreement fails to account for the reality that ████████████████████████████████

██ *Compare* Wayfarer Ex. 266, BL-000038516 ████████████████

████████████████████████████████████

████████████████████ *with* Wayfarer Ex. 267, BL-000038477 (████████

████████████████ *and* Wayfarer Ex. 218 ████████████

████████████████████████████████████

████████████████████ *and* Ex. 80 ████████

████████████████████████████████

379. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████

**Plaintiff's Response 379:**     Undisputed that negotiations over certain terms to be included in the parties' existing Agreement ████████████████████

████████████████████████████████████



. *See e.g.*, Wayfarer Ex. 266 at BL-000038516

Wayfarer Ex. 267 at BL-000038477 Wayfarer Ex. 218 (BL-000038554)

Ex. 80

380.

. Ex. 267, BL-000038477 at -482; Ex. 218, BL-000038554 at -565; Ex. 268, HEATH_000041864 at -866.

**Plaintiff's Response 380:**  Undisputed that

, *see* Wayfarer Ex. 218 at BL-000038565; Wayfarer Ex. 266 at BL-000038520; however, the assertion that

Wayfarer Ex. 267 at BL-000038482

381.  At no point during the negotiations did either side suggest changes to the "Entire Agreement" provision, the "Company's Breach" provision, the "Non-Waiver" provision, or the

"Limitation on Damages" provision.  Nor did Lively ever seek to add Wayfarer as a party to the draft agreement.  Nor was Wayfarer ever made a party or signatory to the draft agreement.  Heath Decl. ¶¶19-20.

**Plaintiff's Response 381:**    Undisputed. Similarly, at no point during the negotiations did either side suggest changes to, *inter alia*, the "Governing Law" provision, the "Services; Start Date" provision, the "Company's Ownership Rights" provision, the "Sexual Harassment" provisions, save for the final sentence. *See, e.g.*, ███████████████████████

382.    ███████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████    Ex. 264, BL-000038599.

**Plaintiff's Response 382:**    Undisputed that that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

383.    ███████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████. Ex. 264, BL-000038599 at 02-03.

**Plaintiff's Response 383:**    Undisputed, ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ Wayfarer Ex. 264 at BL-000038611; Exs. 81; 82; 83; 84; 85; 86 at SPE_BL0008724.

384.    ██████████████████████████████████████████████

██████████████████████████████████ BL-000038599.

**Plaintiff's Response 384:**    Undisputed that the last version of the Agreement exchanged was sent on July 2, 2024.

385.    Lively refused to sign the ALA. *See, e.g.*, Ex. 269, SPE_WF0000460 at -461 ████

████████████████████████████████████████████████████

███████ Ex. 270, BALDONI_000018702 ████████████████████

██████████████████

**Plaintiff's Response 385:**    Undisputed that Lively did not sign the Agreement.

386.    ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at -608.

**Plaintiff's Response 386:**    Undisputed  that  ████████████████████████████

███████████████████████████ but Lively respectfully refers the Court to the cited source for

its complete contents and disputes any summary or interpretation inconsistent therewith.

387.    ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Ex. 264, BL-000038599 at 610-611.

**Plaintiff's Response 387:**    Undisputed  that  ████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Wayfarer Ex. 264 at BL-

000038610–38611.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████



Ex. 264, BL-000038599 at 625.

**Plaintiff's Response 388:**    Undisputed that the quoted language and edit appear in the cited source. Disputed that the terms of that provision, aside from the edited language, did not represent a binding agreement between the parties. *Supra* ¶ 381; Wayfarer Ex. 264 at BL-000038625. Lively respectfully refers the Court to the cited source for its complete contents and disputes any summary or interpretation inconsistent therewith.

389.    The draft ALA contained a California choice-of-law provision.  Ex. 264, BL-000038599 at -628.

**Plaintiff's Response 389:**    Undisputed.

390.    Lively never signed the ALA or the inducement.  Heath Decl. ¶¶17-18.

**Plaintiff's Response 390:**    Undisputed.

391.    Lively's representatives sent a cease and desist letter addressed to certain Defendants and others, on December 20, 2024.  The Letter was not addressed to IEWUM.  Ex. 271, HEATH_000041140 at -142.

**Plaintiff's Response 391:**    Undisputed.

392.    The cease and desist letter alleged, *inter alia*, that the addressees had breached the "Protections For Return to Production" and/or "Lively's contract rider."    Ex. 271, HEATH_000041140 at 42.  The cease and desist letter did not allege any independent breach of the ALA.

**Plaintiff's Response 392:**    Undisputed.

393.    Lively filed her initial Complaint in this Action on December 31, 2024.  (Dkt. 1).

**Plaintiff's Response 393:**    Undisputed.



Ex. 272, Lively's Fourth Amended Initial Disclosures, dated October 29, 2025, at 41.

**Plaintiff's Response 394:**    Undisputed that Lively seeks the categories of damages identified in paragraph 394(a)-(e) and that the quoted language appears in the cited source, but Lively respectfully refers the Court to the cited source for its complete contents and disputes and summary or interpretation inconsistent therewith.

Wayfarer Ex. 272 at 40.

Wayfarer Ex. 272 at 41.

395. ███████████████████████████████████████

██████████████████████████████████████████

███████ Ex. 272, Lively's Fourth Amended Initial Disclosures, dated October 29, 2025, at 41.

**Plaintiff's Response 395:**    Undisputed.

396. ███████████████████████████████████████

██████████████████████████████████████████

███████████ Ex. 272, Lively's Fourth Amended Initial Disclosures, dated October 29, 2025, at 43.

**Plaintiff's Response 396:**    Undisputed.

397. ███████████████████████████████████████

██████████████████████████████████████████ Ex. 273,

Family Hive Dep. Tr. 50:24-50:25, 35:10-35:10.

**Plaintiff's Response 397:**    Undisputed.

398. ███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

**Plaintiff's Response 398:**    Undisputed  that  ██████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

399. ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

**Plaintiff's Response 399:**     Undisputed.

400. ████████████████████████████████████

█████████████████████████████████████

**Plaintiff's Response 400:**     Undisputed.

401. ████████████████████████████████████

███████████████████████████

**Plaintiff's Response 401:**     Undisputed.

402. ████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

**Plaintiff's Response 402:**     Undisputed that ████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████ Lively Decl. ¶35.

403. ████████████████████████████████████████

████████████████████████████ Ex. 277, BL-000037820; Ex. 278, BL-000034251;

Ex. 279, BL-000034253.

**Plaintiff's Response 403:**     Undisputed that ████████████████████████

████████████████████████████████████████████████████

████████████ Wayfarer Ex. 277 at BL-000037820.

404. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████. Ex. 272, Lively's

Fourth Amended Initial Disclosures, dated October 29, 2025, at 43-44.

**Plaintiff's Response 404:**     Undisputed.

# PLAINTIFFS' ADDITIONAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    Baldoni Proclaims Himself As a Feminist and Uses His Feminist Brand to Promote Wayfarer**

405.    In 2017, Baldoni launched the "Man Enough" brand, which he describes as a content studio and "movement around healthy manhood and greater equity for all." Ex. 88.

406.    In 2017, Baldoni spoke about his own journey with masculinity in a viral TED Talk titled *Why I'm Done Trying to be 'Man Enough'* and, in 2021, Baldoni released his first book *Man Enough: Undefining My Masculinity*. Ex. 88; *see also* Wayfarer Ex. 7, WAYFARER_000041408–409.

407.    Baldoni has stated, ███████████████████████████████████ ███████████████████████████████████████████████ He has also publicly commented that there is a "one million percent probability" that there "is a woman or two" that he has "in some way made uncomfortable by saying something or doing something that was chauvinistic or sexist" and that he did not "always ask for consent" or "always listen when they said no." Ex. 4, Baldoni 10/7 Tr. 78:4–16, 307:10–16.

408.    Baldoni publicly stated that he would "do better" and be "man enough" to "shut the hell up and listen" to women "so that one day we don't have to live in a world where a woman has to risk everything and come forward to say the words 'me too[.]'" SAC ¶¶ 314, 321; Dkt. No. 633 (Baldoni Answer to SAC) ("Baldoni Answer") ¶¶ 314, 321.

409.    In 2019, Baldoni launched the California–based production company Wayfarer Studios LLC ("Wayfarer") with Steve Sarowitz. Both hold the title of co–founder and co–chairman. Exs. 20, Baldoni 10/6 Tr. 19:13–20:5, 42:21–43:5, 46:3–5; 4, Baldoni 10/7 Tr. 284:9–11; 11, Sarowitz Tr. 98:4–7, 266:22–23; *see also* SAC ¶¶ 59, 60; Baldoni Answer ¶ 59; Dkt. No.

636 (Sarowitz Answer to SAC) ("Sarowitz Answer") ¶ 60. Wayfarer is based out of Los Angeles, California, and at all relevant times, Baldoni has resided in California. SAC ¶¶ 57, 58; Dkt. No. 632 (Wayfarer Answer to SAC) ("Wayfarer Answer") ¶ 57; Baldoni Answer ¶ 58.

410.    Sarowitz is a billionaire financier and co–founder of Wayfarer. He invested approximately thirty–million dollars to finance the Film. Ex. 11, Sarowitz Tr. 98:4–7, 132–134:2.

411.    In 2020, Baldoni hired his friend of nearly fifteen years, Jamey Heath, to serve as Wayfarer's interim Chief Operating Officer. Heath 10/8 Tr. 30:8–33:4. Heath later gained the title of Co–Chief Operating Officer, President, and then Chief Executive Officer. At all relevant times, Heath has resided in California. SAC ¶ 59; Dkt. No. 634 (Heath Answer to SAC) ("Heath Answer") ¶ 59; *see also* Exs. 3, Heath 10/8 Tr. 18:12–23; 33:7–34:9, 134:14–15; 89, Hanks Tr. 277:8–9; 4, Baldoni 10/7 Tr. 255:14–22; 11, Sarowitz Tr. 287:22–288:6; *see also* Dkt. No. 962 (Declaration of Jamey Heath in Support of Wayfarer Parties' Motion for Summary Judgment ("Heath Decl.") ¶ 3.

412.    Sarowitz, Heath, and Baldoni are close personal friends. Exs. 3, Heath 10/8 Tr. 121:22–122:9; 4, Baldoni 10/7 Tr. 255:14–22; 11, Sarowitz Tr. 287:22–288:6.

413.    Baldoni has stated that through Wayfarer, he aimed to create, and strives to maintain, an enterprise "where everybody is free to have their own beliefs and express opinions that maybe different from the executives or the shareholders, and where there is true unity and equality across the board, and where we're mindful of the positions of power and how those power dynamics work." Katia Arami, Wayfarer Studios Aims to Be a "Light in the Darkness," BahaiTeachings.org (June 24, 2022), https://bahaiteachings.org/wayfarer–studios/; Ex. 4, Baldoni 10/7 Tr. 38:23–41:7.

166

414.    Prior to the Film, Baldoni had directed two films: Five Feet Apart and Clouds. Ex.

88; *see also* Wayfarer Ex. 7, WAYFARER_000041408–409.

**B.    Baldoni Acquires Rights to Produce It Ends With Us To Capitalize on His Feminist Brand**

415.    In 2019, Wayfarer acquired the film rights to Colleen Hoover's novel, *It Ends With Us* (the "Film"). Ex. 4, Baldoni 10/7 Tr. 199:6–200:6.

416.    The novel centered on female triumph and empowerment in breaking the cycle of domestic violence. Exs. 1, Hoover Tr. 22:2–16, 33:15–17; 2, Giannetti Tr. 38:16–21; 3, Heath 10/8 Tr. 156:9–12.

417.    Hoover did not know that Baldoni would ███████████████████████
████████████████████████████████████████████████
███████████████    Ex. 1, Hoover Tr. 37:5–24.

418.    When Baldoni expressed interest in directing the Film, both ███████████████
████████████████████████████████████████████████
███████████████    Hoover told Baldoni and Wayfarer that she ███████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████    Ex. 1, Hoover Tr. 37:20–38:25, 39:9–14.

419.    Although Hoover specifically requested that the Film be ████████████████
████████████████████████████████████████████    Exs. 4, Baldoni 10/7

Tr. 33:16–22, 199:3–201:4; 3, Heath 10/8 Tr. 121:22–122:1; 1, Hoover Tr. 39:9–21.

420.    As the Director and co–chairman, ██████████████████████████████
██████████████████████████████████████████    Exs. 4, Baldoni 10/7 Tr.

41:9–44:17, 61:3–18, 140:2–9; 15, Saks Tr. 61:2–13; 11, Sarowitz Tr. 204:20–205:2.

421.    Baldoni was also the lead male actor, playing the character of Ryle Kincaid. He was also an Executive Producer of the Film. Exs. 4, Baldoni 10/7 Tr. 33:16–22, 146:11–20, 199:3–201:4, 284:12–17; 3, Heath 10/8 Tr. 121:22–122:1; *see also* SAC ¶ 2; Baldoni Answer ¶ 2; Wayfarer Answer ¶ 2.

422.    It Ends With Us Movie LLC ("IEWUM") is wholly owned by Wayfarer. SAC ¶ 61; Wayfarer Answer ¶ 61; Heath Decl. ¶¶ 6, 9. IEWUM is a California limited liability company with its principal place of business in California. SAC ¶ 61; Dkt. 635 (IEWUM Answer) ¶ 61.

423.    All cast and crew were ████████████████ Ex. 4, Baldoni 10/7 Tr. 140:2–9.

424.    Heath was President of IEWUM and a producer for the ████████████ ████████████████████████████████████████████████████████ ████ Heath Decl. ¶ 5; *see also* Exs. 3, Heath 10/8 Tr. 57:3–11, 135:14–137:24, 154:17–22; 11, Sarowitz Tr. 204:20–25; 15, Saks Tr. 61:2–13.

425.    When IEWUM hired Heath as President and producer for the Film, ████████ ████████████████████████ Exs. 15, Saks Tr. 149:11–21; 3, Heath 10/8 Tr. 49:5–10, 50:8–25.

426.    At all times, ████████████████████████████ Ex. 4, Baldoni 10/7 Tr. 56:4–11.

427.    Saks was a producer for the film, and in that capacity, reported to Baldoni and Heath, who were her bosses. Exs. 15, Saks Tr. 29:22–24, 52:15–25; 3, Heath 10/8 Tr. 118:5–7.

428.    ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

█████████████ Exs. 2, Giannetti Tr. 24:9–12, 43:1–22, 296:21–25; 38, Greenstein Tr. 29:14–

33:3; *see also* Heath Decl., Ex. A (Dkt. No. 957–1).

429.    Andrea ("Ange") Giannetti was an Executive Vice President and Senior Creative

at Sony and served as Sony's day–to–day representative overseeing filming.  Exs. 2, Giannetti Tr.

25:3–26:3, 33:10–21; 15, Saks Tr. 53:1–15.

430.    Sony had the ████████████████████

████████████████████████████████

████████████████ Heath Decl. Ex. A (Dkt.

No. 957–1) at SPE_BL0000013, SPE_BL0000017.

## C.    Wayfarer Approaches Lively for the Film and Lively Agrees to Sign on To a Film about Female Empowerment and Triumph

### i.    Lively's Positive Reputation in Hollywood Made Her a Top Contender for the Role of Lily Bloom

431.    In late 2022, Wayfarer worked to cast the role of Lily Bloom, for whom Baldoni,

Heath, and Sarowitz knew ████████████████

████████████ Exs. 4, Baldoni 10/7 Tr. 145:10–145:8; 2, Giannetti Tr. 57:2–6;

90; 3, Heath 10/8 Tr. 156:14–17.

432.    ████████████████████████████

███ Exs. 90; 91; 33, Stone Tr. 378:8–379:6.

433.    In December 2022, Baldoni believed that ████████████

████████████████████████████ Ex. 4,

Baldoni 10/7 Tr. 278:18–279:2.

434.    On December 9, 2022, Heath texted Baldoni: ████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ Exs. 92; 3, Heath 10/8 Tr. 160:11–161:19, 163:15–164:22. Hoover told

Baldoni that ████████████████████████████████████████. Ex. 282.

   ii. <u>Lively's First Meeting with Baldoni Contained Unwanted Sexual</u>
<u>Discussion</u>

  435. On December 14, 2022, Baldoni and Lively met for the first time at an initial

meeting to discuss the possibility of Lively joining the Film. Exs. 281, Lively Tr. 28:24–25, 51:07–

52:19; 4, Baldoni 10/7 Tr. 144:10–145:8. Baldoni later texted a friend that he had ████████████

████████████████████████ Ex. 93.

  436. Lively was pregnant with her first boy at the time of the meeting, ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

Baldoni then told Lively ████████████████████████████████

████████████████████████ Exs. 281, Lively Tr. 50:22–52:12; 4, Baldoni 10/7 Tr.

147:11–148:6.

  437. Lively ██████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ Ex. 281, Lively Tr. 54:6–13.

  438. Lively never asked Baldoni whether he was ████████████████████

████████████████████ Ex. 4, Baldoni 10/7 Tr. 147:11–148:6.

  439. Prior to filming, Lively spoke with Baldoni's former ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ Exs. 94; 95; Lively Decl.,

¶¶ 2–3.

440.    On December 23, 2024, ██████████████████████████████████ ████ Ex. 4, Baldoni 10/7 Tr. 107:18–108:4.

441.    Lively had concerns about Baldoni's unsolicited disclosure about his ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Lively Decl., ¶ 4.

442.    ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ 96, Freyd Report at 10, 16.

iii.    Wayfarer Hires Lively in an Actor Loan Out Agreement

443.    Lively believed in the importance of the Film as a story about female empowerment and triumph. Lively Decl., ¶ 4.

444.    On December 16, 2022, Wayfarer offered Lively the role of Lily Bloom, which Lively accepted on December 31, 2022. Exs. 281, Lively Tr. 12:17–20; 97; 98; 99.

445.    Lively's representatives negotiated an initial offer letter with Wayfarer ("Offer Letter"). On May 19, 2023, Lively's attorney transmitted a reliance letter to Wayfarer based on the terms of the May 4, 2023 version of the Offer Letter, stating that because principal photography had commenced, Ms. Lively would "proceed in reliance upon the terms of the negotiated deal memo with the understanding that . . . the conditions in Paragraph 13 of the deal memo are now either satisfied or waived." Ex. 6. Through that communication, the Offer Letter's terms became

binding on Wayfarer and IEWUM aside from the "Conditions Precedent" set forth in Paragraph 13, which were not a part of the agreement.

446.    The Offer Letter entitled Lively to "a contingent participation from the exploitation of the Picture of an amount equal to 10% of 100% of Sony's A+ pool definition, with direct accounting, payment and audit rights from the studio. No one to get a greater percentage, a more favorable definition or cut in earlier. Guaranteed wide theatrical release. No crediting of overscale or contingent compensation against residuals or vice versa." Wayfarer Ex. 28.

447.    The final version of the Actor Agreement transmitted by Wayfarer to Lively's representatives on July 2, 2023, accepted changes to Lively's contingent compensation that Lively's representatives had requested, and added Lively's entitlement to a producer credit in place of an executive producer credit. Wayfarer Ex. 268 at HEATH_000041869–41871, HEATH_000041874. The Actor Agreement's contingent compensation terms were accordingly more generous than the Offer Letter's in the following ways: (1) Lively was entitled to home entertainment revenues accounted at 100% of amounts received less customary deductions; (2) there would be no advertising overhead charge; and (3) there would be no overbudget penalty. *Id.*

448.    Wayfarer performed these obligations under the Actor Agreement, ensuring that Lively was compensated according to the more generous terms of the Actor Agreement. Exs. 81; 82; 83; 84; 85.

449.    In addition, the final version of the Actor Agreement entitled Lively to a Producer credit, not the Executive Producer credit provided for in the Offer Letter. *Compare* Wayfarer Ex. 264 at BL-000038611 *with* Wayfarer Ex. 28 at HEATH_000045678.

450.    Wayfarer ensured that Ms. Lively was credited as a Producer as required by the Actor Agreement. Ex. 86 at SPE_BL0008724.

451.    During the negotiations over the Actor Agreement's terms, on February 5, 2024, Lively's attorney struck the conditions precedent requiring execution of the Actor Agreement and the Inducement, commenting that "Company has effectively waived this condition in practice," and that even though returning a signed Inducement "is part of signing a long form, . . . it is not a condition precedent to your obligations at this point." Wayfarer Ex. 266 at BL-000038520. Wayfarer's attorney responded **_without disputing that the Execution Conditions had been waived_**, stating instead that: "It still needs to be left in as it is always in a CP in every deal I have ever done." Wayfarer Ex. 267 at BL-000038482. At the same time, while as late as December 15, 2023, the operative draft of the CRA referred to the "_unexecuted_ Actor Agreement," Wayfarer Ex. 116 at BL-000038466 (emphasis added), Wayfarer _struck_ the word "unexecuted" from the draft they transmitted to Lively's representatives on January 3. Ex. 100 at HEATH_000045418.

452.    On May 3, 2024, Jamey Heath wrote to Lively's representative expressly waiving the Execution Conditions, writing **_"We have withdrawn our request for your client to sign her agreement_** in order to extend the time with the edit." Ex. 101.

453.    On December 18, 2022, Heath and Baldoni celebrated Lively's acceptance of the role, with Heath remarking that they were ███████████████████████████████ Heath was at home in Los Angeles at the time. Exs. 102 at WAYFARER_000138398; 3, Heath 10/8 Tr. 18:12–23.

454.    In January 2023, the announcement that Lively was cast to play the role of Lily Bloom caused the novel *It Ends With Us* to go "back to #1 on Amazon." Exs. 103; 2, Giannetti Tr. 65:13–66:9.

**D.    During Pre–Production, Baldoni Feigns Appreciation to Lively While Mistreating Women**

455.    On March 8, 2023, Baldoni texted Lively that he would



Exs. 104 at BL–000009295; 105; 106; 107; 108; 109; 110; 111.

456.    On April 3, 2023, Baldoni asked Lively



Ex. 112.

457.

Ex. 104 at BL–000009295.

458.

. 113.

459.    When Lively offered recommendations for department heads for hair and makeup with whom Lively had prior relationships, Baldoni



x. 114.

460.

Exs. 115 at BL–000011246_A; 116.

461.    Baldoni and Heath described Lively's contributions to the Film to the Producers Guild of America as follows: "Her contributions have been impactful as she was consulted with

many of the casting options, she helped refine the script, she redesigned her own wardrobe as well as gave notes on others, she contributed to the production design and set decoration, and had influence on how many of the scenes were shot." Ex. 117.

462.    Baldoni asked for Lively's ideas on 

███████████████████████████████████████████████ Exs. 118; 119.

463.    On January 26, 2023, Baldoni told Lively that ████████████████████████

████████████████ Ex. 120 at BL–000008570.

464.    On April 9, 2023, Baldoni left a voice note for Lively about her notes on the script and said: ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ Ex. 121 at BL–000009270.

465.    On April 16, 2023, when reviewing Lively's edits to the script, Baldoni wrote:

████████████████████████████████████████████████

████ Ex. 122 at BL–000009643–9644.

466.    On May 14, 2023, Baldoni wrote to Lively: ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████ Ex. 123.

467.    During pre–production, Lively asked Baldoni if there was any ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ Ex. 22.

468.    During pre–production, Baldoni introduced Lively to ████████████████

███████████████████████████████████████████████████████

████████████████████████████ Lively Decl., ¶¶ 5–6; Exs. 21 at BENSON_0008;

22 at BL–000008819–20.

469.    On or about April 24, 2023, Baldoni asked ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ Saladino Decl. ¶¶ 7–11; Lively Decl. ¶¶ 7–8.

470.    █████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ Lively Decl. ¶¶ 7–8.

471. ███████████████████████████████████████████████████

███████████████ Exs. 15, Saks Tr. 284:14–285:5; 2, Giannetti Tr. 135:15–24, 244:1–245:2.

472. During rehearsals, ██████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ Ex. 20, Baldoni 10/6 Tr.

27:25–29:18.

473. ███████████████████████████████████████████

████████████████████████████████████████ Exs. 20,

Baldoni 10/6 Tr. 27:25–31:5, 35:8–37:4; 3, Heath 10/8 Tr. 67:4–21, 73:7–16, 82:16–84:8,

88:20–23, 92:9–93:2.

**E.    Wayfarer Policies "Strictly Prohibited" Harassment, But Its Leaders Disclaimed Responsibility For Creating A Safe Workplace On Set**

474. At all relevant times, Wayfarer worked with one human resources consultant ████

███████████ Exs. 3, Heath 10/8 Tr. 38:7–40:1; 124, Robbins Report at 4 & n.10; 17, Robbins

Tr. 101:21–104:18.

475. Wayfarer had in place an Employee Handbook that applied to "all persons who

interact with our Wayfarer Studios team" and "prohibited "harassment, disrespectful or

unprofessional conduct by any employee of the Company, including supervisors, managers, and

co–workers," including Heath, Baldoni, and Sarowitz. That handbook:

a.    "strictly prohibits" all forms of harassment, explaining that "harassment is

not just sexual harassment" but extends to any behavior "that denigrates or shows hostility or

aversion toward an individual based on any actual or perceived protected characteristic (including

being perceived to have any of these protected characteristics or anyone who associates with a

person who has, or is perceived to have, any of these protected characteristics)." Wayfarer Ex. 1, at WAYFARER_000139053.

b.    defines harassment to "may include a range of subtle and not–so–subtle behaviors" including: "sexual jokes and innuendo"; "commentary about an individual's body"; "leering, whistling or touching"; and "insulting or obscene comments or gestures[.]" Wayfarer Ex. 1 at WAYFARER_000139054.

c.    encouraged the reporting of "all perceived incidents of discrimination or harassment" and promised that any "reported allegations of harassment, discrimination or retaliation will be promptly and thoroughly investigated by qualified personnel in an impartial manner" and using "evidence to reach reasonable conclusions." Wayfarer Ex. 1 at WAYFARER_000139054–55.

d.    strictly prohibited retaliation "against an individual for reporting harassment or discrimination in good faith" and provided that any acts "of retaliation should be reported immediately and will be promptly investigated and addressed." Wayfarer Ex. 1 at WAYFARER_000139055.

e.    required that if "any supervisor or manager becomes aware of a violation of this policy, they are obligated to report the violation to Human Resources/management so Wayfarer Studios can investigate and, if appropriate, take corrective action." Wayfarer Ex. 1 at WAYFARER_000139054; *see also* Exs. 3, Heath 10/8 Tr. 100:3–116:16, 135:2–12; 4, Baldoni 10/7 Tr. 45:15–50:24, 53:15–63:10, 66:19–68:3; 11, Sarowitz Tr. 182:23–184:19, 186:14–198:1, 202:23–208:6, 212:9–217:18, 219:21–220:16.

476.    Baldoni does not know if ████████████████████████████ ████████████████████████████████████████████████ Both he and

Heath understood the policy to prohibit harassment and retaliation and to require investigations. Sarowitz testified that he ██████████████████████████████████████, even though he signed the handbook introduction in his capacity as Co-Chairman of Wayfarer, along with Baldoni. Exs. 3, Heath 10/8 Tr. 100:3–116:16, 135:2–12; 4, Baldoni 10/7 Tr. 45:15–50:24, 53:15–63:10, 66:19–68:3; 11, Sarowitz Tr. 182:23–184:19, 186:14–198:1, 202:23–208:6, 212:9–217:18, 219:21–220:16.

477.    Heath does not know if ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ Ex. 3, Heath 10/8 Tr. 128:17–134:2, 395:7–396:2, 398:12–19.

478.    Wayfarer does not have ██████████████████████████ ██████████████████████ Ex. 3, Heath 10/8 Tr. 396:4–20.

479.    Slate, Lively, Ferrer, and Baker did not ████████████████ ████████████████████████████████████████████████████ ████████ Exs. 12, Slate Tr. 38:7–24; 10, Ferrer Tr. 240:21–242:23; 13, Baker Tr. 46:9–47:15, 205:22–25; 281, Lively Tr. 220:19–221:21; Lively Decl. ¶ 26.

480.    The training slide deck titled "Respect in the Workplace: Preventing Discriminatory Harassment & Retaliation":

a.    listed additional specific examples of conduct as harassing, including conveying sexual "comments, stories or innuendos" or jokes "about sex," asking "about sexual fantasies/activities," making "sexual comments about someone's clothing, anatomy or appearance," using "facial expressions, winking, licking lips," or "hugging, touching, stroking or brushing." Wayfarer Ex. 67 at WAYFARER_000142810–15.

b.      did not include information about who cast and crew should report workplace concerns to. Wayfarer Ex. 67 at WAYFARER _000142812–16; *see also* Ex. 124, Robbins Report at 6 ("That training, however, did not provide information about where or to whom to complain.").

481.    Heath believed others, not himself, were responsible for ███████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Ex. 3, Heath 10/8 Tr. 128:17–134:2.

482.    During production, Baldoni invited each of the film's production department heads to enjoy Russian baths with him. Alarmed, Saks reported the incident to Sony and to Heath. Sony confirmed that the invitation was inappropriate for the workplace. Exs. 15, Saks Tr. 152:23–153:5, 159:1–160:11; 125 at SPE_BL0002195–2196.

483.    Saks had concerns about Wayfarer overseeing HR/harassment protocols for the Film, and felt that cast and crew may not be comfortable raising concerns to Baldoni or Heath. She proposed that Sony provide the harassment protocols and training instead.  Exs. 15, Saks Tr. 59:7–61:18; 126. Which California-based Sony, did not do. Ex. 15, Saks Tr. 62:12-14.

484.    Saks believed that concerns or inappropriate behavior related to the Film should be raised to Heath as the "signer of checks and agreements." Ex. 15, Saks Tr. 57:25–58:20.

485.    In March 2023, Wayfarer received a complaint about ████████████████ █████████████████████████████████████████████ Exs. 3, Heath 10/8 Tr. 125:24–127:4, 396:21–398:11; 127.

486.    Giannetti reflected in a text to Saks that "Everybody has something weird, uncomfortable and bad to say" about Baldoni, which was also Saks' experience. Ex. 15, Saks Tr. 160:6–24.

**F.    Wayfarer's and Baldoni's Self–Proclaimed Feminist Image Cracks As They Foster A Hostile Work Environment For Women.**

487.    On the very first day of filming, ███████████████████████████████ ███████████████████████████████████████████████████████ Lively Decl. ¶ 21.

i.    <u>Baldoni and Heath Marginalize and Mistreat Women Based on Gender</u>

488.    Saks recalled Baldoni "consistently" yelling at her and exhibiting "rageful yelling or interrupting reaction" when she spoke with him. Ex. 15, Saks Tr. 70:11–19, 74:11–19, 243:20–25 ("Q Okay. And do you think that those — that Mr. Baldoni's being curt with you had — that it was gender bias? Is that what you're telling us?. . . THE WITNESS: I don't know, honestly. But I also — I want to clarify, it actually wasn't him being curt. It was usually the opposite of that. It was usually that it provoked a sort of rageful yelling or interrupting reaction."); *id.* at 85:9–15 ("Q: Did you ever observe Mr. Baldoni become physically intimidating with a man on set or in connection with the film? A: Not that I can recall. Q: Did you ever observe Mr. Baldoni yell at a man in connection with the film? A: Not that I can remember.").

489.    In January 2023, Baldoni yelled at Saks during a Zoom with other Film leaders, raising his voice to her during a discussion about the script. Ex. 15, Saks Tr. 74:20–76:6. Baldoni did not go to New Jersey to begin production until March 2023, and was presumably in California at this time where he resided and where Wayfarer was headquartered. Exs. 128; 129; 130.

490.    On February 18, 2023, Baldoni yelled at Saks during another Zoom meeting. Baldoni sent Saks an email the next day, acknowledging that it was not "okay for me to interrupt

you and then mansplain" and that he had been trying "very hard not to interrupt the women" in his life. Baldoni promised to "make sure that [interrupting] doesn't happen again, ***to any of the women*** involved in this film." Exs. 15, Saks. Tr. 67:2–70:19; 131.

491.     On set in June of 2023, Baldoni "came up behind the monitor, where [Saks] was sitting," "yelled and then slammed his hands on the director's chair next to [her]," and stormed away. Saks felt physically intimidated by Baldoni. Ex. 15, Saks Tr. 76:16–81:14.

492.     Saks, who was seated in front of Heath and Giannetti and surrounded by several other crew at the time, told Mr. Heath and Ms. Giannetti that if Mr. Baldoni behaved that way again, she would "walk off the movie." Ex. 15, Saks Tr. 76:16–81:14.

493.     Saks felt sidelined by Baldoni and Heath. Ex. 15, Saks Tr. 171:20–23.

494.     On June 15, 2024, Saks texted Giannetti about the Film's screenwriter, Christy Hall, writing: "Justin was very dismissive of her when she wanted to direct and then used Jamey to try and manipulate her," "[a]nd then she felt like he tried to use her for cover with [Lively] and [Hoover] a bunch," and "she didn't feel respect as a female voice on the team and on a movie like this, that felt especially bad." Saks went on: "[Hall] just doesn't want to be associated with him/them." Exs. 15, Saks Tr. 152:23–157:2; 125.

495.     Hoover was not involved in the script as it was written and Wayfarer did not send her dailies, despite her Executive Producer title. Ex. 1, Hoover Tr. 46:25–47:15, 48:1–51:2, 66:2–68:20, 70:4–16.

496.     Clare Ayoub, who wrote and directed the film Empire Waist, which was produced by Wayfarer, declared under oath that Baldoni was verbally abusive to her and as a result she banned him from the set and, in August 2024, refused to appear in press and publicity with Baldoni. Ex. 132

ii.   Baldoni Objectifies Women on Set

497.   During a rehearsal on May 23, 2023, ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ Ex. 281, Lively Tr. 83:16–91:11, 92:18–97:14.

498.   On the same day, May 23, 2023, ████████████████████

████████████████████████████████████

██████████████████████ Ex. 281, Lively Tr. 101:5–103:5, 113:1–11.

499.   Lively ████████████████████████████

████████████████ Exs. 281, Lively Tr. 101:5–103:5; 4, Baldoni 10/7 Tr. 230:4–232:16.

████████████████████ Exs. 281, Lively Tr. 101:5–103:5; 12, Slate Tr. 42:7– 44:18; *see also* Wayfarer Ex. 281.

500.   ████████████████████████████████

████████████████████████████████████

████ Ex. 12, Slate Tr. 42:7–44:18 ████████████████, 281:16–283:23.

501.   Baldoni responded by ████████████████████

████████████████ Exs. 281, Lively Tr. 101:5–103:5; 4, Baldoni 10/7 Tr. 230:2–232:12; 12, Slate Tr. 58:23–59:8, 85:10-23, 86:21-87:16, 88:25-90:15; *see also* Wayfarer Ex. 281at 20230523–IEWU–PPD7 at 12:36:45–12:37:42.

502.    Baldoni ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ Ex. 281, Lively Tr. 103:15–106:20. ██████████████████

██████ Ex. 12, Slate Tr. 85:10-23, 86:21-87:16, 88:25-90:15.

503.    On May 18, 2022, ████████████████████████████████

████████████████████████████ Exs. 12, Slate Tr. 51:16–54:7; 4, Baldoni 10/7

Tr. 202:8–203:17. ███████████████████████████████████

████████ Exs. 12, Slate Tr. 17:2–10; 15, Saks Tr. 236:10–18.

504.    ██████████████████████████████████████████

████████ Ex. 4, Baldoni 10/7 Tr. 202:8–203:17.

505.    ██████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ Ex. 12, Slate Tr. 51:16–54:7.

506.    On May 25, 2023, Baldoni texted friends, writing: ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ Ex. 133.

507.    The first day that the two actors portraying "young Lily" and "young Atlas" met,

Baldoni █████████████████████████████████████████████

████████████████████ Ex. 10, Ferrer Tr. 252:21–254:3, 283:24–284:9.

508.    After filming a scene in which two underage characters have sex for the first time,

Baldoni stated: ████████████████████████████████████████

████████████████████████████████████████████ Ex. 10, Ferrer Tr. 20:19–24, 68:3–9, 244:3–245:17; 246:14–247:3.

509.    In another instance, Baldoni directed Ferrer to ████████████████████████ ████████████████████████████████████████████████████ The scene was not in the script. Ex. 10, Ferrer Tr. 20:19–24, 68:3–9, 244:3–245:17; 246:14-248:14.

510.    Talbot insisted ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ Ex. 14, Talbot Tr. 186:9–22, 194:8–195:5.

       iii.    <u>Heath Gawks at Lively While She is Undressed</u>

511.    On the first day of filming, ████████████████████████ ████████████████████████████████████████████████ Lively Decl. ¶ 21.

512.    On the second day of filming, May 16, 2023, ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Exs. 281, Lively Tr. 123:2–124:24, 126:12–131:2; 23, Carroll Tr. 53:11–55:23, 56:6–57:18, 59:16–61:25; 13, Baker Tr. 71:25–72:24, 74:8–13, 77:10–78:2.

513.    In response to Heath's knock on the trailer door, Lively, Carroll, and Baker, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Exs. 281,

Lively Tr. 123:2–124:24, 126:12–131:2; 23, Carroll Tr. 53:11–55:23, 56:6–57:18, 59:16–61:25;

13, Baker Tr. 71:25–72:24, 74:8–13, 77:10–78:2,154:9–17 ████████████████████

████████████████████ 24, Heath 10/9 Tr. 145:16–147:7 ████████████

████████████████████████████████████████████████

██████████████████████████████████████

514.    ████████████████████████████████

████████████████████████████████████████████████

██████████████████ Exs. 281, Lively Tr. 123:2–124:24, 126:12–131:2; 24, Heath 10/9 Tr.

145:16–147:7.

515.    ████████████████████████████████

████████████████████████████████████████████████

██████████████████ Ex. 281, Lively Tr. 123:2–124:24, 126:12–131:2.

516.    Lively, Baker and Carroll were ██████████████████████

████████████████████████████████████████████████

██████████ Exs. 281, Lively Tr. 123:2–124:24, 126:12–131:2; 13, Baker Tr. 81:7–81:24; 23,

Carroll Tr. 59:16–61:25, 63:23–64:21.

517.    Baker described Heath as having ██████████████████

████████████████████████████████████████████████

████████████████████████ Ex. 13, Baker Tr. 78:21–79:3, 208:19–

209:4. And Carroll began ██████████████████████████

Ex. 23, Carroll Tr. 65:22–66:8, 66:20–67:3.

    iv.   <u>Baldoni Adds Explicit and Gratuitous Sexual Content to the Film</u>

518.    ████████████████████████████████

Ex. 281, Lively Tr. 63:2–64:12; 131:3–133:23.

      a.     In one addition to the script, Lively was to ███████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ *Compare* Exs. 134

at 24-CV-10049_0002522 *with* 135 at 24-CV-10049_0002682; 14, Talbot Tr. 106:23–107:10,

127:2–16.

      b.     In another addition to the script, Lively would ██████████████

*Compare* Ex. 134 at 24-CV-10049_0002522 *with* 135 at 24-CV-10049_0002682; 14, Talbot Tr.

106:23–107:10, 127:2–16.

      c.     In another scene added to the script, ██████████████████████

█████████████████ *Compare* Ex. 134 at 24-CV-10049_0002556 *with* 135 at 24-CV-

10049_0002715; 14, Talbot Tr. 106:23–107:10, 127:2–16; 281, Lively Tr. 63:2–64:12; 131:3–

133:23; 4, Baldoni 10/7 Tr. 172:25–176:16.

    519.    Lively told Baldoni directly that she was uncomfortable with the additions, sharing

that she ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Ex. 281, Lively Tr. 66:12–67:16, 131:3–133:23.

    520.    Baldoni told Lively that ████████████████████████████████

███████████████████████████ He also shared that ███████████████████

████████████████████████████████████████████████████████

██████████████████████ Ex. 281, Lively Tr. 131:3–

133:23; Ex. 4, Baldoni 10/7 Tr. 172:25–176:16.

    521.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. Lively

Tr. 131:2-133:23.

522.    On April 30, 2023, Hoover had shared with Baldoni her view that ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████And that she ███████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ Exs. 1, Hoover Tr. 33:4–17, 52:1–53:5; 136; 15,

Saks Tr. 173:3–175:3; 8 at AS000702 ("Making this film PG-13 has proven without a doubt to be

what's best for the film and the audience.").

        v.    <u>Baldoni Makes Disturbing Personal Disclosures About ████████</u>
<u>████████████████████</u>

523.    During an April 2023 car ride from New York to New Jersey with Lively, her long–

time driver and security detail, and her assistant during Phase One—Baldoni divulged to Lively

that ██████████████████████████████████████████████████████████

█████████████████████████ Exs. 28, Security Tr. 44:19–46:4; 46:12–47:9; 87:12–

90:8; 92:23–93:10; 29, Security Errata.

524.    After making that disclosure, Baldoni warned this "stays in this car." Lively Decl.

¶ [].

525.    Lively's ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ Exs. 28, Security Tr. 44:19–46:4; 46:12–47:9; 87:12–90:8; 92:23–93:10; 29, Security

Errata.

526.    Lively's security detail testified about this incident in detail, █████████████

███████████████████████████████████████████████████████████████

████████████████    Ex. 28, Security Tr. 37:19–38:22, 42:7–42:22, 43:8–45:10.

527.    Baldoni also discussed his ██████████████████████, a topic that

had no connection to the Film's material. Ex. 281, Lively Tr. 136:12–137:24, 139:2–140:5. Lively

attempted to shut down the ████████████████████████████████████████    Ex.

281, Lively Tr. 136:12–137:24, 139:2–140:5.

528.    Baldoni said to multiple cast and crew that ████████████████████

████████████████████████████████████    Ex. 281, Lively Tr. 136:12–

137:19, 139:2–140:5.

      vi.   <u>Baldoni Pressured Lively to Perform Unscripted Nudity</u>

529.    Lively's ALA provided her with ████████████████████████████████

Ex. 263 at WAYFARER_000140970 § 13. And typically, ████████████████████████

██████████████████████████    Giannetti Tr. 67:8–68:20.

530.    The terms of the ALA provided Lively would, among other things:

      a.   ████████████████████████████████████████

Wayfarer Ex. 263 at WAYFARER_000140959 § 2, and ███████████████████████

███████████████████████████████████████████████████████████████

████████    <em>id.</em> at WAYFARER_000140973 § 1;

      b.   ████████████████████████████████████████████

█████████████████    <em>id.</em> at WAYFARER_000140958 § 2;

      c.   ████████████████████████████████    <em>id.</em> § 2.1; Ex. 98 ¶ 12;

████████████████████████████████████████████████████    <em>id.</em>    at

WAYFARER_000140958 § 2.1;

e. ███████████████████████████████████ *id.*
at WAYFARER_000140959 §§ 2.2, 2.3.

f.    The ALA authorized IEWUM to terminate at ████████████
████████████ *id.* at WAYFARER_000140965 § 7.1, ████████████
███████████████, *id.* at WAYFARER_000140968 § 9, and provided that IEWUM is
Lively's ████████████████████████████████████
███████████████████████ *id.* at WAYFARER_000140980 § 13.

531.    SAG maintains certain guidelines for scenes involving nudity, simulated nudity,
simulated sex, hyper exposure and other forms of intimacy, designed to prevent harassment on
sets. Exs. 138; 139 at 3; 17, Robbins Tr. 81:22–82:15 ████████████████
████████████████████████████████████████████
███████████████████████████████████ Those guidelines require
actor consent for scenes involving intimacy or nudity, or depiction of nudity, in advance of filming.
Ex. 14, Talbot Tr. 23:19–24:2, 102:17–104:11.

532.    The Film's script included a scene in which Lively's character gives birth ("Birth
Scene"). The script did not call for the simulation of nudity in that scene and ████████
████████████████████████████████████████████
████ Lively Decl., ¶ 13; Ex. 14, Talbot Tr. 142:13–24, 143:9–25, 145:16–146:13 ("Q If you
understood that the birth scene was going to include profile nudity, would you have discussed the
scene with Ms. Lively? A Yes."), 152:4–153:10; 140.

533.    The birth scene was filmed on May 22, 2023. That day, Baldoni informed Lively
that it was ████████████████████████████████████████
████████████████████████. He insisted that Lively ████████████

190

████████████████████████████████████████████████

████████████████ Wayfarer Ex. 73; Lively Decl. ¶ 14.

534.    The Birth Scene was filmed over several hours and shot using different framing and

angles, including ones that showed ████████████████████████████████

████████████████ Exs. 16; 14, Talbot Tr. 69:13–21 ████████████████

████████████████████████████████████████████████

██████ 86:7–16 ████████████████████████████████

████████████████████████ 143:13–25; 17, Robbins Tr. 82:20–83:9; Lively

Decl. ¶¶ 13–15.

535.    To obtain those shots, Lively wore ████████████████████

████████████████████████████████████████████████

████████ Lively Decl., ¶¶ 13–15; Ex. 23, Carroll Tr. 89:6–19.

536.    At other times, Lively ████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Lively Decl., ¶¶ 13–15; *see also*

Wayfarer Ex. 91, at Resp. 23.

537.    During filming, Lively ████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Lively Decl., ¶¶ 16–17; Exs. 23,

Carroll Tr. 81:13–83:3; 88:7–23; 17, Robbins Tr. 82:20–83:9;

538.    Wayfarer did not ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Lively Decl., ¶ 12; Ex. 14, Talbot Tr. 152:4–158:6; 140; 141.

539.    Closed set protocols are standard protections are designed to ensure actors' comfort during particularly exposing scenes and to ensure safe harassment free work environments on productions. Exs. 124, Robbins Report, pp. 10–11; 14, Talbot Tr. 152:4–158:6; 141.

540.    Sarowitz was on set the day of the Birth Scene. Lively Decl. ¶ 12; Ex. 25.

541.    When asked whether he ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ Exs. 11, Sarowitz Tr. 168:24–171:5.

    vii.    <u>After the Birth Scene is Shot, Heath Shows Lively a Video of His Nude Wife Without Explanation or Consent.</u>

542.    On May 23, 2023, the day after filming of the Birth Scene, Heath ████████████

████████████████████████████████████████████████████████

███████████████████████████████████ Exs. 281, Lively Tr. 188:17–190:21; 3, Heath 10/8 Tr. 191:23–192:4; 13, Baker Tr. 118:2–119:2; 26; Lively Decl. ¶ 18.

543.    Lively ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ Exs. 281, Lively Tr. 188:17–190:21; 3, Heath 10/8 Tr. 191:23–192:4; 13, Baker Tr. 118:2–119:2; 26; Lively Decl. ¶ 18.

544.    Lively was disturbed and unsettled that Heath would show her the video at work. Ex. 281, Lively Tr. 79:1–12; Lively Decl. ¶ 18.

545.    Heath insists he showed Lively only an ███████████████████████

███████████████████████████████████████████████████████████. 3 Heath

10/8 Tr. 179:23–180:25. ███████████████████████████ Lively Decl. ¶

18. ██████████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 3, Heath 10/8 Tr. 181:3–182:22.

      viii.   <u>Baldoni Improvised Physical Touching and Intimacy Scenes Without Lively's Consent</u>

546.    On May 23, 2023, Lively and Baldoni shot a dance scene ("Dance Scene"). The script stated that their characters would be █████████████████████████ and did not call for any kissing or simulated intimacy. Lively Decl. ¶ 19; Ex. 142.

547.    Baldoni did not ████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████ Ex. 14, Talbot Tr. 161:10–163:3; Lively Decl. ¶ 19.

548.    Baldoni improvised during that scene by ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Lively Decl. ¶ 19; Exs. 143, 144, 145; 23, Carroll Tr. 69:2–20; 124, Robbins Report at 24 n.65–66 ██████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████ 17, Robbins Tr. 47:15–48:3.

549.    Video footage shows Lively leaning away from Baldoni, and repeatedly suggesting that their characters should just talk. Exs. 143, 144, 145.

550.    Lively used ██████████████████████████████████████████████

█████████████████████████████████████████ Lively Decl. ¶ 19. On

January 14, 2024, "Baldoni's long-time publicist, Jen Abel, described the Dance Scene 'so gross' and 'cringy,' speculating that it led Lively to file 'a cease and desist,' while also stating that she could not 'stand' Baldoni who was 'pompous' and 'unlikeable.' Ex. 283 at JONESWORKS_00041607.

551.    In another instance, ███████████████████████████████████████████
████████████████████████████████████████ Lively Decl. ¶ 20; Ex. 12, Slate Tr. 78:23–79:11.

## G.    During Phase One, Lively and Others Repeatedly Report Concerns about Baldoni and Heath, Which Wayfarer Failed to Investigate

552.    Lively and others voiced their discomfort directly and privately to Baldoni, Heath, and others, often in real time or shortly thereafter. When confronted, Baldoni would ████████
████████████████████████ Exs. 281, Lively Tr. 101:5–103:5, 104:2–106:20, 113:1–11, 118:19–120:4;  12, Slate Tr. 42:7–44:18, 58:23–59:8, 84:4–15, 88:25-90:1; 15, Saks Tr. 134:5–145:15; 30 at SPE_BL0002026–2029; 2, Giannetti Tr. 117:6–25, 148:11–151:5.

553.    On May 29, 2023, Lively ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ Ex. 12, Slate Tr. 85:10-23, 86:21-87:16, 88:25-90:15.

554.    Lively described Baldoni's reaction as ████████████████████
████████████████████████████████████████████████████
███████████████████████ Baldoni. Ex. 281, Lively Tr. 101:5–103:5, 104:2–106:20. Slate and Lively discussed how Baldoni's conduct and his response when confronted was ████████
████████████████ Exs. 12, Slate Tr. 68:9-73:24.

555.   On May 24, 2023, Lively texted ███████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████ Ex. 95 at BL–000021654–21656.

556.   That same day, █████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████ Ex. 95 at BL–000021656–21657.

557.   On June 4, 2023, ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████   Ex. 12,  Slate  Tr.  113:21-114:4  █████████████████

█████████████████; Ex. Ex. 284 at JS00000284.

558.   In that same message, ███████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████   Also on

June 4, 2024, █████████████████████████████████████████████

████████████████████████████████   Ex. 12, Slate Tr. 113:21-115:9.

559.    Early during production, within the first week or two, Giannetti and Saks informed Baldoni that ████████████████████████████████████████. Ex. 4, Baldoni 10/7 Tr. at 119:17–121:19, 181:3–182:2.

560.    On May 26, 2023, Lively had a 45–minute conversation with ████████████ ████████████████████████████████████████████ ████████ Exs. 281, Lively Tr. 76:3– 80:20; 2, Giannetti Tr. 108:24–114:9, 116:1–117:25, 132:1–135:6; 27 at BL–000007954; Wayfarer Ex. 92.

561.    Lively shared with Giannetti her concerns ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████ Exs. 281, Lively Tr. 76:3–80:20; Wayfarer Ex. 92.

562.    After Lively told Giannetti that ███████████████████████████ ████████████████████████████████████████ Exs. 4, Baldoni 10/7 Tr. 180:2–185:22; 281, Lively Tr. 79:1–80:20. Lively took notes contemporaneous notes of her conversation with Giannetti.  Wayfarer Ex. 92.

563.    On May 27, 2023, ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████ Ex. 12, Slate Tr. 68:9–73:24.

564.    ███████████████████████████████████████ ████████████████████████████████████████████ Ex. 12, Slate Tr. 85:10-23.



565. Giannetti had ██████████████████████████████████████ ███████████ Ex. 4 Baldoni 10/7 Tr. 180:2–185:22.

566. Baldoni ████████████████████████████████████████ ████████████████████████████████████████████ ████████ Exs. 4, Baldoni 10/7 Tr. 180:11–196:7; 146; 12, Slate Tr. 100:17-101:12

567. On May 29, 2023, ████ shared her concerns with Saks. In a text to Giannetti that same day, Saks noted that Slate's concerns were "very bad" and stated "I think we need to replace our director. And [Heath] should not be on set." Saks went on to share that ████ "really would prefer to never see [ Heath] again…" Exs. 15, Saks Tr. 99:10–20, 102:5–106:15, 108:19–112:1; Wayfarer Ex. 98.

568. That same day, Saks notified Baldoni and Heath of ████ concerns and encouraged them to investigate because she "wanted the behavior to be taken seriously" and to help create "a more comfortable work environment for everyone going forward." Ex. 15, Saks. Tr. 115:1–119:13.

569. Saks understood that Heath "didn't want the behavior written down, documented anywhere, in the event that someone wanted to talk about it again in the future" and that he "did not want Wayfarer to conduct an investigation into concerns about his and Baldoni's behavior because he didn't want a written record of it anywhere." Ex. 15, Saks. Tr. 115:1–119:13.

570. Sarowitz ████████████████████████████████████ ██████████████████████████████████████ Ex. 11, Sarowitz Tr. 220:21– 222:11, 297:8–15.

571. When Baldoni and Heath shared ██████████████████ ████████████████████████████████████████████ Exs. 11, Sarowitz Tr. 285:19–286:8; 3, Heath 10/8 Tr. 256:18–260:23; 31.

197

572.    Michael Robbins, AWI-CH, an expert on harassment, discrimination and other employment matters, opined that █████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. Exs. 124, Robbins Report at 1, 3–20; 17, Robbins Tr. 93:19–94:2, 98:25–100:5, 101:1–3, 101:21–102:1, 102:3–103:25, 140:17– 142:24, 154:7–14, 155:9–156:2.

573.    On June 1, 2023, Lively attended an in–person meeting with ████████████ █████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████. Ex. 281, Lively Tr. 186:14– 187:16.

574.    Although Lively ███████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ ██████████████████████████████. Ex. 281, Lively Tr. 186:14–187:16.

575.    After the meeting, Saks texted Giannetti, ██████████████████████████ █████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████. Exs. 15, Saks Tr. 134:5–143:15; 30 at SPE_BL0002026–2029.

576.    Neither Baldoni nor Heath █████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████. Ex. 281, Lively Tr. 186:14– 187:16.

577.    Baldoni saw █████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ Ex. 4, Baldoni 10/7 Tr. 240:13–241:7, 263:23–265:2.

578.    Baldoni ████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. 4,

Baldoni 10/7 Tr. 214:8–13.

579.    On June 15, 2024, Giannetti texted Saks, observing that ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ Exs. 15, Saks Tr. 153:2–5, 155:21–160:4;

125 at SPE_BL0002193–2195.

580.    Saks responded: "It's only when Jamey/this isn't fair nonsense and revisionist

history comes up that I'm like, come on, guys," by which she referred to Heath and Baldoni's

response that "we didn't do anything wrong, as opposed to remembering what happened." Exs.

15, Saks Tr. 153:2–158:10; 125 at SPE_BL0002193–2195. Saks further texted: "I think this is

where the narcissism is dangerous," and further observed that "it's when Baldoni and Heath "have

a way of making women (and some men) feel like shit[.] It is deep[.] Because they sign the

checks." Exs. 15, Saks Tr. 153:2–158:10; 125 at SPE_BL0002193–2195.

581.    On October 13, 2023, Lively texted ████████████████████████████████

████████████████████████████████████ Ex. 285.

## H.    Before Phase Two, Lively Negotiates Protections (That Wayfarer Agrees Are Reasonable) and Again Reports Her Concerns.

582.    On November 9, 2023, Lively (through her attorneys, located in California) sent

Wayfarer a document entitled, "Protections for Return to Production" (the "CRA"), Letter

requested Wayfarer agree to implement 17 protections ("17 Protections") to ensure a safe set going forward. Exs. 32; 3, Heath 10/8 Tr. 261:12–262:8. The CRA, provided, among other things:

¶ 1: "An intimacy coordinator must be present at all times when BL is on set" (¶ 1);

¶ 2: "There must be a closed set during the rehearsal or filming of any scene involving simulated sex or nudity";

¶ 3: "Scenes involving kissing, depictions of sexual intercourse, or any other physical touching must be contained in the screenplay (as approved by BL), choreographed in advance in the presence of the intimacy coordinator, and may only proceed as choreographed with the consent of all participants in advance";

¶ 4: "Physical touching and/or comments on BL's physical appearance must only be one/made in connection with the character and scene work, not as to BL personally";

¶ 5: "There are to be no discussions of personal experiences with sex or nudity, including as it relates to conduct with spouses or others";

¶ 6: "No one will enter, attempt to enter, interrupt, pressure, or request entrance to BL's trailer while she is in a state of undress for any reason";

¶ 10: "There shall be no retaliation of any kind against [Lively] for raising concerns about the conduct described in this letter or for these requirements. Any changes in attitude, sarcasm, marginalization or other negative behavior, either on set or otherwise, including during publicity and promotional work, as a result of these requests is retaliatory and unacceptable, and will be met with immediate action"; and

¶ 17: "an all–hands, in–person meeting before production resumes which will include the director, all producers, the Sony representative, the newly–engaged third party producer, BL and BL's designated representatives to confirm and approve a plan for implementation of the above that will be adhered to for the physical and emotional safety of BL, her employees and all the cast and crew moving forward." *Id.*

583.    Wayfarer's ███████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████ Exs. 147; 3, Heath 10/8/ Tr. 278:25–279:4. Meziane confirmed that Wayfarer "Agreed" to all but one of the proposed conditions immediately, including the prohibition against retaliation. Wayfarer Ex. 28.

584.    Heath ████████████████████████████████████████████████
██████ Ex. 24, Heath 10/9 Tr. 27:10–29:5. On November 10, 2023, Baldoni and Heath sent the CRA to their PR team (at that time Jones and Abel), writing "need you both for a zoom." Ex. 286.

585.    On November 12, 2023, Baldoni texted his ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████ Wayfarer Ex.121; 4, Baldoni 10/7 Tr. 258:2–260:12, 261:10–20.

586.    On January 4, 2024, one day before filming ████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ Lively Decl. ¶ 24; Wayfarer Ex. 111; 15, Saks

Tr. 175:11–176:10; 2, Giannetti Tr. 174:3–175:25; 3, Heath 10/8 Tr. 279:12–280:18, 281:21–

285:4; 4, Baldoni 10/7 Tr. 265:10–268:21.

587.    ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ Lively Decl. ¶ 24; Wayfarer Ex.

111.

588.    On January 4, 2024, before that meeting, ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ Wayfarer Ex. 121.

589.    Wayfarer or IEWUM did not investigate Lively's concerns about Baldoni or

Heath's conduct raised during the January 4 meeting. Exs. 3, Heath 10/8 Tr. 291:8–294:2 ███

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ 4, Baldoni 10/7 Tr. 309:2–310:11

590.    Heath believed Lively's concerns were ██████████████████████████

████████████████████ Ex. 3, Heath 10/8 Tr. 291:8–294:2 ███████████

█████████████████████████████████████

**I.    Sony Exercises Its Right To Edit Its Own Version Of The Film And Supports Lively's Help Doing So, Which Wayfarer Fought At Every Turn**

591.    During contract negotiations, Sony rejected Baldoni's attempt to secure ████████

███████████████████████████████████████████████

Exs. 2, Giannetti Tr. 46:8–55:23; Wayfarer Ex. 20 at SPE_BL0000345; Exs. 148

SPE_BL0001997; 149 SPE_BL0000369; 41, Greenberg Tr. 240:24–247:19.

592.    The Distribution Agreement provided Sony the right to █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Heath Decl., Ex. A (Dkt. No. 957–

1) at SPE_BL0000017 § 7.1, SPE_BL0000019 § 8.2; *see also* Ex. 38, Greenstein Tr. 30:25–37:2.

593.    In or around August 2023, Lively █████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ Lively Decl. ¶

28.

594.    That editing concerned Lively, █████████████████████████

██████████████████████████████ Lively Decl. ¶ 30.

595.    With Sony's support.████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ Exs. 38, Greenstein Tr.

100:19–103:19, 110:8–13, 130:23–131:11; Lively Decl. ¶¶ 31–32.

596.    Lively did not receive extra pay or a promise of a producer credit for her work on

the edit. Lively Decl. ¶ 32.

597.    Lively worked closely with Hoover █████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ Exs. 1, Hoover Tr. 88:18–89:8, 90:11–21;

93:6–12; 120:1–14, 121:8–23; 38, Greenstein Tr. 126:2–12.

598.    Baldoni did not ████████████████████████████████

████████████████, Hoover Tr. 126:17–127:1.

599.    After production, Baldoni and Heath returned to California where they reside. SAC

¶¶ 58, 59; Baldoni Answer ¶ 58; Heath Answer ¶ 59; *see also* Exs. 3, Heath 10/8 Tr. 18:12–23;

20, Baldoni 10/6 Tr. 19:13–20:5, 32:18–33:12.

600.    Wayfarer attempted to ██████████████████████████████

███████████████ Ex. 150.

601.    Baldoni ████████████████████████████████████

████████████████████████████████████████████████

Ex. 38, Greenstein Tr. 93:7–97:13, 106:9–107:21, 110:17–115:20.

602.    Mr. Greenstein thought the █████████████████████████

██████ Exs. 38, Greenstein Tr. 129:2–134:22; 151 at RR–SUBPOENA–000000086.

603.    Hoover █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ Exs. 1, Hoover Tr.

93:15–95:13, 99:15–105:9; 152 at BL–000039198–39199; 153; 154 at Hoover 0092–93; 38,

Greenstein Tr. 65:17–66:9, 116:14–117:12, 122:7–16.

604.    In June 2024, an audience screened Sony's Cut at Book Bonanza, an annual charity

event Hoover hosted for book fans. The █████████████████████████████

████████████████████████████████████████ Exs. 38, Greenstein Tr.

149:13–152:25, 241:17–242:5; 15, Saks Tr. 164:11–165:12; 10, Ferrer Tr. 276:15–277:12; 1,

Hoover Tr. 147:18–150:23.

605.    After Sony's Cut was screened at Book Bonanza, both Sony and Wayfarer ████

███████████████████████████████████████████████████████ Ex. 38,

Greenstein Tr. 147:17–21; 2, Giannetti Tr. 343:24-344:3.

**J.    Sony and Wayfarer Develop a Plan To Market The Film As A Story of Female Empowerment, Which Lively And The Cast Follow And Support**

606.    In January 2023 (before the Film had even started shooting), ██████████

██████████████████████████ Wayfarer Exs. 253; 254 at BALDONI_000030668–

30669. Among the ████████████████████████████████████████

████████████████████████████████.

607.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ Exs. 39 at SPE_BL0006379; 40. Sony's objective was

therefore ████████████████████████████████████████

████████████████████ Ex. 38, Greenstein Tr. 70:18–74:4.

███ ██ ████████████████████████████████████████

████████████████████████████████████████

609.    Wayfarer, in turn, ████████████████████████████

████████████████ Ex. 38, Greenstein Tr. 193:9–194:15.

610.    Sony ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ Exs. 33, Stone Tr. 391:8–392:10;

155 at ABEL_000000181.

611.    In the lead up to the premiere of the Film, Baldoni, like Lively and other cast

members, ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████ Exs. 156; 52, Abel 9/26 Tr. 147:2–149:15; 157.

**K.    The Wayfarer Defendants Undertook A Pattern of Disparaging And Discrediting Lively.**

612.    Baldoni told Nathan that ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Exs. 158 at NATHAN_000000294. Nathan agreed,

writing: ██████████████████████ *Id.*

613.    On November 12, 2023, Baldoni described ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████ Exs. 44 at BALDONI_000026194.

614.    On December 30, 2023, Baldoni told Greenberg that Lively was ██████

████████████████████████ Ex. 159 at WME_00001169. Baldoni expressed

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.* at WME_00001169–

1170.

615.    On February 9, 2024, shooting of *It Ends With Us concluded*. Wayfarer Defendants'

Amended Complaint Ex. A at 61.

206

616.    On February 23, 2024, Baldoni described ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ Exs. 45 at

BALDONI_000018853; 4, Baldoni 10/7 Tr. 281:4–11.

617.    Sony was responsible for creating the trailers for the Film. Exs. 38, Greenstein Dep.

77:16–22; 2, Giannetti Tr. 45:14–21.

618.    On April 27, 2024, Baldoni sent a string of text messages to Heath describing ██

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Ex. 36 at BALDONI_000033560–33561.

619.    Baldoni wrote to Heath that ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████ Baldoni stated, ████████████████████████████

███████████████████. 36 at BALDONI_000033561, BALDONI_000033563.

620.    Baldoni set out a plan to ████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████ Exs. 36 at BALDONI_000033564; 4, Baldoni 10/7 Tr.

289:10–290:20.

621.    Later that day, Baldoni texted Heath about his ██████████████████

███████████████████████████████ He described feeling ███████

███████████████████████████████████████████████████████████

207

███████████████████████████████████████████████████ Exs.

36 at BALDONI_000033565; 4, Baldoni 10/7 Tr. 291:14–20.

622.    Baldoni stated that the ████████ in him has ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Exs. 36 at BALDONI_000033566; 4, Baldoni 10/7 Tr. 291:15–19.

623.    On May 6, 2024, Sony ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Exs. 161 at SPE_BL0001762; 38, Greenstein Tr. at 81:8–

82:19. Baldoni appeared at the event and passed out floral bouquets to fans. Ex. 1, Hoover Tr.

61:14–64:13.

624.    On May 6, 2024, Baldoni and Heath ████████████████████████

████████ Exs. 1, Hoover Tr. 65:6–9; 162.

625.    During dinner, Baldoni and Heath told Hoover about their issues with Lively and

the editing process, and in particular, told Hoover, ████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Exs. 1, Hoover Tr. 75:8–17; 10, Ferrer Tr. 271:11–

272:4.

626.    Baldoni told Hoover that ████████████████████████████

████████████████████████████████████████████████ Baldoni

alleged that Lively ████████████████ Ex. 1, Hoover Tr. 74:17–75:3.

627.    Baldoni and Heath told Hoover ████████████████████████████

████████████████████████████████████████████████████████████

██████████ Ex. 1, Hoover Tr. 75:18–25.

628.    The behavior described included █████████████████████ Heath explained

that ████████████████████████████████████████████████ Hoover Tr.

77:13–25.

629.    Hoover understood that Heath ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Ex. 1, Hoover Tr. 78:1–4.

630.    Hoover believed █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████ Ex. 1, Hoover

Tr. 80:20–81:10.

631.    Hoover ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Ex. 1, Hoover Tr. 82:12–23.

632.    Hoover was █████████████████ and ██████████████████████

████████████████████████ Exs. 1, Hoover Tr. 83:8–11, 134:7–16, 136:21–137:8;

10, Ferrer Tr. 271:11–272:4.

633.    As of May 6, Hoover ████████████████████████████████████

████████████████████. 1, Hoover Tr. 57:3–24, 85:18–87:19.

634.    Alex Saks testified that she believed ███████████████████████████
███████████████████████████ Ex. 15, Saks Tr. 178:21–24; Wayfarer Defendants'

Motion for Summary Judgment at 34–35.

635.    In June 2024, nineteen of the Film's department heads, producers, and creatives

drafted letters detailing Lively's significant contributions to the film in support of Lively obtaining

a PGA producer's mark, including:



636.    On June 18, 2024, Wayfarer agreed to give Lively a producer credit on the Film.

But, Wayfarer remarked that Lively "would not be getting the PGA Mark as that is not applicable."

Ex. 169; Wayfarer Defendants' Amended Complaint Ex. A at 86.

637.    On June 20, 2024, Baldoni and Heath were requested, through Sony, to write a

letter in support of Lively receiving a PGA mark for her contributions to the Film. Wayfarer

Defendants' Amended Complaint Ex. A at 87.

638.    On June 26, 2024, Baldoni and Heath wrote a letter in support of Lively receiving a PGA mark to the PGA. Ex. 117; Wayfarer Defendants' Amended Complaint Ex. A at 91–92.

639.    On June 27, 2024, Heath emailed Wayfarer personnel describing Lively's request for a letter in support of receiving the PGA mark as "unreasonable and cold hearted.  Essentially, the movie IEWU has been taken unjustly from Justin as a director and essentially from Wayfarer's control due to the extortion of Blake. . . . She continues to hold a threat over our heads and every time we try and hold a line she uses that threat either directly or indirectly to get us to fold." Ex. 170; Wayfarer Defendants' Amended Complaint Ex. A at 93.

**L.    The Wayfarer Defendants Hired Crisis Experts to "Bury" Ms. Lively by Discrediting Her Claims and Assassinating Her Character.**

    i.    <u>The Wayfarer Defendants Planned to Go On The Offensive Against Lively From the Outset</u>

640.    On May 6, 2020, Wayfarer hired Jonesworks as its ███████████████ ████████████████████████████████████████ Ex. 171 at JONESWORKS_00038539. Since around July 2020, Jennifer Abel has served as the PR representative overseeing the Baldoni and Wayfarer account. Ex. 52, Abel 9/26 Tr. 38:15–39:5. Matthew Mitchell also supported the Wayfarer account with Abel. *Id.* at 41:9–21. Both Abel and Mitchell are based in Los Angeles. Wayfarer Am. Compl. ¶ 232.

641.    On May 17, 2024, Baldoni texted Abel and Matthew Mitchell that he expected Lively ███████████████████████████████████████████████ Ex. 172 at JONESWORKS_00013486. Baldoni told Abel and Mitchell, ███████████████████ ████████████████████████ *Id.*

642.    On May 22, 2024, Baldoni texted Abel and Matthew Mitchell with continued concern: █████████████████████████████████████████████████████████ █████████████████ Ex. 173 at JONESWORKS_00013489. He continued, ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████ *Id.*

643.    On June 15, 2024, Lively, Hoover, and other cast ████████████████████████████

████████████    Exs. 42; 1, Hoover Tr. 109:13–111:3.

644.    On June 17, 2024, Abel and Baldoni ██████████████████████████████

██████████████████████████████    Ex. 174 at JONESWORKS_00037248. Abel relayed

Baldoni's request to Jones, stating, ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████    *Id.*

645.    After Jones suggested that Wayfarer use ████████████████████████████

██████████████████████████████████████████████████████

████████████    *Id.*

646.    Mitz Toskovic is Wayfarer's Vice President of Operations. Ex. 24, Heath 10/9 Tr.

111:11–14.

647.    On June 17, 2024, Heath told Toskovic ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████    Exs. 175 at TOSKOVIC_000000678; 3, Heath 10/8 Tr.

318:13–319:6, 321:7–322:1.

648.    Heath requested that ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Ex. 175.

649.    On July 30, 2024, ████████████████████████████████

Exs. 176; 177; 3, Heath 10/8 Tr. 316:11–23, 317:6–8. "The timeline had a tab entitled "Zingers,"

focused on themes for attacking Lively's reputation:

      ii.    <u>Baldoni and Wayfarer Coordinate To Conceal That Cast And Creatives
Do Not Want To Appear With Baldoni Or Heath At Premiere</u>

650.    Around the time of the film's premiere, Greenstein was made aware of a ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ Ex. 38, Greenstein Tr. 226:7–227:1.

651.    On June 15, 2024, Saks told Black and Giannetti that ████████████████████

    ZINGERS

             Blakes last movie RHYTHM SETION was reported to have also had difficulties on
             set similar to IEWU. there was specualtion that Blake took over teh movie and
    reputation  when the movie bombed she blamed Reed Morana (director).
             Blake has had number of speculated feuds with cast on her projects including,
    reputation  Anna Kendrick, Leighton Meester,

████████████████████████████████████████████████████████████

████████████████████ Exs. 43 at SPE_BL0002184; 125 at SPE_BL0002194.

213

652. On July 14, 2024, Hoover wrote to Giannetti and Greenstein, ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ Exs. 178; 38, Greenstein Tr. 156:10–159:5; 41, Greenberg Tr. 271:19–272:9; 43 at
SPE_BL0002184; 125 at SPE_BL0002194.

653. On June 4, 2023, ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Ex. 12, Slate Tr.
113:21-115:9; Ex. 284 at JS00000284.

654. In that same message, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ at JS00000284. Also on
June 4, 2024, ██████████████████████████████████████████████

████████████████████████████████████ Ex. 12 Slate Tr. 113:21-115:9.

655. ████ and Sklenar ████████████████████████████████████████

███████████████████████ Ex. 38, Greenstein Tr. 160:2–7.

656. ████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. 12, Slate Tr. 119:23–120:4,
121:15–21.

657. █████████████████████████████████████████████████████ Ex. 10,
Ferrer Tr. 269:8–270:9.

658. Saks did not want to attend the premiere. Ex. 24, Heath 10/9 Tr. 134:11–135:2.

659.    On June 20, 2024, Abel expressed concern to Sony ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ Ex. 179 at JONESWORKS_00008075.

660.    Abel, Baldoni, Heath, and Baldoni's PR team ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Exs. 180; 181.

661.    ████████████████████████████████████████████████████

████████████████████ Exs. 182 at JONESWORKS_00013831; 52, Abel 9/26 Tr. 287:20–

292:8; Wayfarer Ex. 180 at NATHAN_000003601.

662.    Another possible excuse floated for Baldoni's absence from promotional content

and cast tension was Baldoni's neurodivergence. Baldoni wrote ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 183 at

JONESWORKS_00013503.

663.    On July 16, 2024, Sony reported that the Film's ██████████████████

████ Exs. 38, Greenstein Tr. 166:5–167:2; 184 at SPE_BL0003130. In particular, ████████

████████████████████████████████████████████████████████ while some

████████████████████████████████ Exs. 38, Greenstein Tr. 167:21–169:7; 184 at

SPE_BL0003131, SPE_BL0003134.

664.    Greenstein was responsible ███████████████████████████ Ex. 38, Greenstein Tr. 15:11–16:21.

665.    On June 17, 2024, Greenstein ██████████████████████████████████ ████████ Ex. 38, Greenstein Tr. at 153:24–154:6.

666.    Greenstein recalled that █████████████████████████████████████ ███████████████████████ Exs. 38, Greenstein Tr. at 58:8–60:14, 150:1–7, 166:5–168:20, 233:6–234:2; 184 at SPE_BL0003130.

667.    On July 22, 2024, Baldoni texted Greenberg that they needed to ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Ex. 185 at WME_00001252.

668.    On or about July 22, 2024, Lively told Sony that she would not appear in press with Baldoni. Lively Decl. ¶ 25; *Infra* at ¶ 249.

669.    Lively did not want to appear alongside Baldoni due to her grave concerns about how he treated women in connection with the Film, how he had disparaged her to others as retaliation for her speaking up, and Heath and Baldoni's inappropriate and uncomfortable behavior in connection with the Film. Lively Decl.at ¶ 25; 15, Saks Tr. at 161:13–25.

## M.    Baldoni and Wayfarer hired a California-Based Crisis PR Team To "Bury" Lively.

670.    Jennifer Abel was the Vice President of Jonesworks at the time, until she created and started working at RWA Communications, a public relations firm, on September 1, 2024. Ex. 186, Abel 9/25 Tr. at 17:15–23, 18:9–22.

671.    On July 24, 2024, Abel emailed Heath and Greenberg requesting that ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████. 187
at WME_00001300.

672.    In that same email, Abel stated, ██████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

*Id.*

673.    Also on or around July 24, 2024, Tera Hanks, the President of Wayfarer, Wayfarer
56.1 ¶ 258, asked Jones ███████████████████████████████. *See* Exs. 188 at
JONESWORKS_00012592; 20, Baldoni 10/6 Tr. at 140:9–20, 255:22–257:19.

674.    Melissa Nathan is the founder and CEO of The Agency Group PR LLC ("TAG").
Ex. 189, Nathan 9/29 Tr. at 72:12–14.

675.    Jones ████████████████████████████████████████████████
████████████████████████████ Exs. 190; 191, Jones Tr. at 50:2–50:10, 52:19–
54:9, 91:14–92:25.

676.    Abel █████████████████████████████████████ Exs. 192 at
KCASE-000005077; 52, Abel 9/26 Tr. at 228:15–19.

677.    Katherine Case was a vice president of TAG until late December 2024 or early
January 2025. Ex. 57, Case Tr. 31:20–32:9, 286:20–25.

678.    On July 25, 2024, Nathan and Case met with Heath and Hanks for an introductory
call, during which Wayfarer provided details regarding on-set ████████ that were the subject of
Lively's and others' complaints, as well as the Protections for Return to Production. *Infra* ¶ 256;
Wayfarer Ex. 164 at KCASE-000005773–5775; 57, Case Tr. at 48:25–49:2.

679.    Case's notes from that meeting state the following:



680.    After the call, Wayfarer ███████████████████████████████

███████████████  Exs. 57, Case Tr. 47:13–48:7; *see also* Ex. 193 at HEATH_000035539 ████

████████████████████████████████████████████████████████████████

Ex. 194 at KCASE-000000571; 62, Koslow Tr. at 27:10–25.

      i.      <u>Abel And TAG Plan To Get Ahead Of The Narrative</u>

681.    On July 31, 2024, Abel texted Heath and Toskovic, informing them ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████  Ex. 49 at JONESWORKS_00013780.

682.    Abel added that her friend ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████  *Id.*

683.    When a publicist tells a journalist information, regardless of whether it is "off the

record," ██████████████████████████████████████████ Ex. 189, Nathan 9/29 Tr. 128:1–

131:8. ██████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.*; Ex. 52, Abel 9/26 Tr. 262:14–

263:23.

684.    On August 1, 2024, TAG discussed a ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████ Exs. 51 at NATHAN_000002714–2715; 52,

Abel 9/26 Tr. at 171:2–15, 173:5–16, 187:16–188:1; *see also* 53 at JONESWORKS_00014981.

685.    On August 2, 2024, Case, on behalf of TAG, sent Wayfarer and Baldoni a "Scenario

Planning" document. Ex. 46 at NATHAN_000005497.

686.    The Scenario Planning document outlined ████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████ *Id.* at NATHAN_000005499–5550.

687.    In that document, TAG recommended that Wayfarer ██████████████████

*Id.* at NATHAN_000005503, and outlined a number of ███████████████████████:

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████



688.    The Scenario Planning document also suggested that the TAG ███████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

*Id.* at NATHAN_000005506.

      ii.    <u>Abel And TAG Avoid Putting In Writing How They Will "Bury" Lively</u>

689.    After reviewing the Scenario Planning document, Baldoni told Abel: ████████

██████████████████████████████████████████████████ Ex. 195 at

BALDONI_000016442.

690.    Abel then texted Nathan that Baldoni ████████████████████████████

█████ Ex. 47 at NATHAN_000005552.

691.    Nathan sent the following messages in response:

      a.    ████████████████████████████████████████

████████████████████████████████████████

      *Id.* (emphasis added).

      b.    ████████████████████████████████████ *Id.* at

NATHAN_000005553 (emphasis added).

      c.    ████████████████████████ *Id.* at NATHAN_000005554.

d.  ████████████████████████████████████████

████████████ *Id.* (emphasis added).

692.    Nathan also sent Abel █████████████████████████████████

████████████████████████████████████████████████████

Ex. 47. at NATHAN_000005558.

693.    The next day, on August 3, 2024, Wayfarer executed TAG's engagement letter.

Wayfarer Ex. 167 at JONESWORKS_WAYFARER_000003014.

694.    On August 4, 2024, Abel told Nathan that she was ███████████████

████████████████████████████████████ Ex. 50 at

JONESWORKS_00016238. Nathan █████████████ and told Abel that she ██████

████████████████████████████████████████████

██████████ *Id.* at JONESWORKS_00016238-16239.

695.    That same day, Case emailed Nathan the 17 Protections for Return to Production

list, stating that ███████████████████████████████████████████

████████████████. 196. Nathan then emailed the same to Abel and Mitchell. Ex. 197.

696.    At this point, Baldoni's █████████████████████████████

██████████████████████████ to Baldoni's talent agent, Danny Greenberg. Ex. 198;

Wayfarer Ex. 142 at 17:11–15.

697.    The Sony publicity team provided Baldoni extensive feedback on how to better

approach interview questions during his press tour. Ex. 199; Ex. 52, Abel 9/26 Tr. at 152:7–10,

153:16–154:3. Specifically, Sony advised Baldoni ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 199 at

ABEL_000000666.

698.    On August 5, 2025, internal Sony emails discuss how, in a Dallas Morning News interview Baldoni ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████. 200; 52, Abel 9/26 Tr. at 190:11–19, 192:21–193:12; 38, Greenstein Tr. at 174:4–175:22. A Sony executive noted that they "████████████████████████████

████████████████████ Ex. 200.

## N.    Baldoni Plants the Seed that Lively's Personality Caused Friction On Set

699.    On August 4, 2024, Case provided press █████████████ the PR team, which included a statement that ████████████████████████

████████████████████████ Exs. 201 at KCASE-000001080; 57, Case Tr. at 153:10–154:9 ████████████████████████

700.    On August 5, 2024, Baldoni began the Film's press junket, through which he began planting a ██████████████████████████████

████ Exs. 201 at KCASE-000001080; Ex. 46 at NATHAN_000005500; *see also* Ex. 155 at ABEL_00000156.

701.    Specifically, at 9:18 a.m., Abel reported to TAG that they had ██████████

████████████████████████████████████████

████████████████████████████████████ Ex. 201 at KCASE-000001080.

702.  Case replied ██████████████████████████████████████████

████████████████████████████████████████████████  *Id.*

703.  A Sony representative texted Abel requesting that Baldoni not ████████

██████████████████████  Ex. 202 at JONESWORKS_00015998.

704.  Just over an hour later, Mr. Baldoni repeated ████████  narrative in his Cosmo

UK interview, in which he ██████████████████████████████████

██████████████████████████████████████████████

████████████████████. 201 at KCASE-000001081 (emphasis added).

705.  Sony's representative then texted Abel again: ████████████████

██████████████  Ex. 202 at JONESWORKS_00016000.

706.  Abel conveyed Sony's message to Baldoni: ████████████████

██████████████████████████████████████████████

██████████████████████  Exs. 53 at JONESWORKS_00014981

(emphasis added); 52 (Abel 9/26 Dep. Tr.) at 186:11–188:1.

707.  Within a week, dozens of news articles quoted Baldoni's statements identifying

"friction" on set. *See, e.g.*, https://www.elle.com/uk/life-and-culture/culture/a61823800/justin-

baldoni-interview/; https://www.usatoday.com/story/entertainment/celebrities/2024/08/10/it-

ends-with-us-cast-drama-explained/74740951007/; https://www.instyle.com/it-ends-with-us-

drama-8693842; https://www.usatoday.com/story/entertainment/celebrities/2024/08/10/it-ends-

with-us-cast-drama-explained/74740951007/; https://people.com/it-ends-with-us-cast-drama-

explained-everything-to-know-8693157.

708.  Baldoni also spoke in interviews about ████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████ Ex. 201 at KCASE-000001081.

**O.    As The Film Premiered With Massive Success, Defendants Launched A "Social Combat Plan" Against Lively With The Help Of A Digital Fixer.**

> i.    <u>Wayfarer And Baldoni Hire Jed Wallace</u>

709.    In 2008, Wallace founded Street Relations, Inc. ("Street Relations"), for which is the sole director and officer. Ex. 203, Wallace 10/9 Tr. 21:6–23:13.

710.    Wallace specializes in ████████████████ Ex. 203, Wallace 10/9 Tr. 263:7–264:8. Case described Wallace as a ███████████ with whom TAG would work ██████████ ████████████████████ Ex. 57, Case Tr. 160:16–21.

711.    On August 5, 2024, Nathan sent Heath and Abel a text message setting forth the ██████████████████████████████████ Ex. 66 at JONESWORKS_00012745. ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.*

712.    ██████████ in Nathan's text message was for ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████ *Id.*

713.    Nathan wrote: ██████████████████████████████ *Id.*

714.    Nathan wrote: █████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████ *Id.*

715.    Also on August 5, 2024, Nathan emailed Wallace ██████████████████

████████████████████████████████████████████████████████████████████

████████████████ Ex. 204.

716.    On August 6, 2024, the U.S. premiere of the "It Ends With Us" film took place in

New York. Ex. 1, Hoover Tr. at 152:18–19; *infra* ¶ 241.

717.    At the premiere, ██████████████████████████████████████████

█████████████████ Ex. 41, Greenberg Tr. 290:19–293:17.  On August 9, 2024, Greenberg texted

Giannetti: ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████ *Id* at 295:5–297:11; Ex. 205 at SPE_BL0009643. On August 10,

2024, Greenberg texted Whitesell that he ████████████████████████████████████

████████████████████ Ex. 41, Greenberg Tr. 298:5–299:13; Ex. 206 at WME_00001319.

718.    On August 6, a TAG intern flagged a social media comment that read █████████

████████████████████████████████████████████████████████████

and noted that ██████████████████████████████████████ Wayfarer Ex. 226.

Case replied ██████████████████████████████and ██████████████ *Id.*

719.    On August 7, 2024, Nathan and Abel agreed that Baldoni and █████████████

██████████████████████████████████████████and that Nathan would call Heath to

████████████████████ Wayfarer Ex. 180 at NATHAN_000003602. ████████████████

225

████████████████████████████████████████████████████████

████████████████████████████████

720.     Later that day, Case sent Heath and Abel an email with the subject line "Social /

Digital Mitigation / Remediation," which set out the scope of work for the digital team (the

"Digital Scope of Work"). Ex. 207. The proposal outlined ████████████ that the digital

team would ██████████████████████ including (among other things):

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████

███████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████

██████████████████████████████████████

*Id.* Citing the concern of ████████████████████████████████████████

████████████████████████████████████. Ex. 207.

721.     Wallace and TAG have sent similar scopes of work to other prospective clients.

For example, in a scope of work prepared by TAG and Wallace ██████████████ Wallace

offers for ████████████████████████████████████████

 Exs. 208 at

STREET 3.000306; Ex. 209 at STREET 3.000493. The scope of work further described that

as well as

Ex. 208 at STREET 3.000306.

Wallace offered to

*Id.*

722.    In emails and text messages with current or prospective clients, Wallace often

describes his capabilities in the digital space, such as:

a.    Ex. 210 at STREET 3.000201;

b.    *Id.*;

c.    Ex. 211 STREET 3.000500–501;

d.    Ex. 212 at STREET 3.00205;

e.    Ex. 213 at STREET 3.000366;

f.    Ex. 214 at STREET 3.000487;

227

g.    ███████████████████████████████████

███████████████████████████████ Ex. 215 at

STREET 3.000497.

723.    In the five or six years that Nathan and Wallace have known each other, they have

worked together frequently, including ████████████████████████

███████████████████████████████████████

███████████████████████████████████, and build

digital ███████████████████████████ favor. Ex. 208 at STREET

3.000306; Ex. 216 at STREET 3.000326; Ex. 217 at STREET 3.00362; Ex. 215 at STREET

3.000497.

724.    On August 7, 2024, ███████████████████████████

███████████████████████████████████████

███████████ Ex. 218 at STREET 1.000005.

ii.    <u>Baldoni and Wayfarer, With Help From Wallace, Get To Work
Manipulating Media Narratives And Causing An Onslaught Of Hate
Toward Lively, Hoover, Slate, and Ferrer</u>

725.    On August 8, 2025, ███████████████████████

██████████████████████████████████

████████████████████ Ex. 67 at HEATH_000048498.

726.    That same day, ████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████ Ex. 223 at BBKOSLOW-000004013.

727.    Also that day, Baldoni ███████████████████████████████████
███████████████████████████████ Wayfarer Ex. 230 at BBKOSLOW-000006156.

Case assured Baldoni that they had "██████████████████████████. at BBKOSLOW-
000006157.

728.    Meanwhile, also on August 8, 2024, Baldoni ████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████ Exs. 219 at

JONESWORKS_00014507; 52, Abel 9/26 Tr. 130:1–14, 194:5–19, 197:8–198:19.

729.    Toskovic wrote to ███████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████ Exs. 182 at

JONESWORKS_00013831; 52, Abel 9/26 Tr. 289:19–290:11, 291:12–292:8.

730.    Abel responded that, while it was a "███████████████████████████
████████████████████████████████████ Exs. 182 at

JONESWORKS_00013831; 52, Abel 9/26 Tr. 289:19–290:11, 291:12–292:8.

731.    Heath replied: ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████ Exs. 182 at JONESWORKS_00013831; 52, Abel 9/26 Tr. 291:12–292:8.

732.    Ferrer and Hoover continued to receive substantial public hate. Exs. 10, Ferrer Tr. 172:3–20, 175:10–25, 183:11–19, 189:9–190:9, 208:15–210:6, 278:17–281:18; 1, Hoover Tr. 153:2–157:8, 174:7–175:24.

733.    The film was released to the public in theaters on August 9, 2024. 56.1 ¶ 241; Ex. 281, Lively Tr. 274:13–17, 275:1–18.

734.    On August 9, 2024,



Ex. 220 at JONESWORKS_00014513

735.    That same day,

Ex. 67 at HEATH_000048496, HEATH_000048498.

736.    Also on August 9, when a Daily Mail article reporting on the gossip was published,

Ex. 221 at JONESWORKS_00016279; *see also infra* ¶ 269.

737.    Days later, Abel would tell a friend

Ex. 222 at JONESWORKS_00014817.

738.    When the New York Post's Page Six was prepared to run an article, Ms. Nathan was able to easily reach the reporter—who is also Ms. Nathan's sister—and convince her to remove the most inflammatory language in the draft. Ex. 223.

739.    On social media, one user posted a comment regarding the story: ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ *Id.* at KCASE-000000732.

740.    Similarly, just minutes later, in response to a comment shared by a TAG intern

that read "████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ Exs. 225 at BBKOSLOW-000003393; *id.* at 000003338.

741.    Later that day, Case had to ████████████████████████████████

████████████████████████████████ Ex. 226 at KCASE-000001096.

742.    Nathan texted Abel that they had ████████████████████████

████████████████████████████████ Ex. 221 at

JONESWORKS_00016284. Abel commented that ████████████████████

████████████████████████████████████████████████████████

*Id.* at JONESWORKS_00016285. Nathan agreed that ████████████████████

████████████████████████████████████████████████ *Id.*

743.    On August 10, 2024,██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Wayfarer Ex. 224 at BBKOSLOW-000004607.

    iii.    <u>Despite Extraordinary Box Office Success, Baldoni and Wayfarer</u>
<u>Continue To Smear Lively In the Media</u>

744.     On opening weekend, the Film made more than $50 million, and around $80 million internationally. Ex. 38, Greenstein Tr. 24:22–25:6. Mr. Greenstein, a film marketing executive with 25 years of experience, called the Film's $50 million opening ████████ ████████████████████████████████ *Id.*, Greenstein Tr. 235:1–3, 236:4–9.

745.     Giannetti called the opening ████████████████████████ ████████ Ex. 2, Giannetti Tr. 343:3–23. Sony was "thrilled" with the Film's performance. Ex. 38, Greenstein Tr. 247:1–13.

746.     On August 11, Giannetti texted Lively: ████████████████ ██████████████████████████████████████████ ████████████████████████████ Ex. 227 at BL-000008025; Ex. 2, Giannetti Tr. 342:10–343:19.

747.     That same day, Heath emailed Sony about the Film's success, saying: ████████ ██████████████████████████████████████ ████████████████████████████████████████ Ex. 228 at HEATH_000019467.

748.     Greenstein described Lively as ██████████████████████ ██████████████████████████████████████ ██████████████████████████████████████████ ████████ Exs. 38, Greenstein Tr. 23:7–20; 229. Greenstein described Lively as a ████████ ██████████████████████████████████████ Ex. 38, Greenstein Tr. 130:2–133:19.

749.     Saks had described Lively's cut as ████████████████████████ ████████████████████ Exs. 230 at BL-000008043; 15 Saks Tr. 165:9–166:11.

She wrote: ████████████████████████████████████████████

████████████████████████████████████████████

████████ *Id.*

750.    On August 10, 2024, Abel reached out to the TAG team noting that it ████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ Ex. Wayfarer Ex. at BBKOSLOW-000004606. Ms. Case responded: ████████████

████████

751.    On August 13, 2024, Koslow orchestrated the placement of an article in the Daily

Mail UK. Koslow first texted Case bullet points for a ████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Ex. 59 at KCASE-000002822.

752.    Case responded: ████████████████████████████████████

████████████████████ *Id.* Later that day, Koslow texted

Nathan, █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Ex. 60 at BBKOSLOW-000001025. On

August 20, 2024, the Daily Mail published an article that reported: "This should be the crowning

moment of Blake Lively's career . . . Lively's launch of her new film, *It Ends With Us*, has been

an unmitigated disaster."[4] The article also reported: "Lively has come under fire for aggressively

marketing her personal projects – not just her haircare, but her drinks company – seemingly on

the back of a film dealing with domestic violence."



      753.    On August 13, 2024, ████████████████████████████████████

███████████████████████████████████████████████ Ex. 63 at

BALDONI_000015463. The links were to ████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████.

*Id.*

      754.    On August 14, ██████████████████████ Daily Mail article entitled

"HOLLYWOOD VILLIAN," which "branded" Lively "a mean girl" in light of a 2016 interview

with journalist Kjersti Flaa in which Flaa attempted to congratulate Lively on her recent

pregnancy news by referring to Lively's "little bump." Exs. 64 at KCASE-000003361, KCASE-

000003397. ██████████████████████████████████████ *Id.*

at KCASE-000003361.

      755.    On August 15, 2024, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[4] Alison Boschoff, *How Blake Lively's Fairytale Turned Into a PR Nightmare*, Daily Mail (Aug. 20, 2024), https://www.dailymail.co.uk/femail/article-13761985/How-Blake-Livelys-fairytaleturned-PR-nightmare-Amid-growing-backlash-ALISON-BOSHOFF-reveals-wentwrong-Hollywoods-golden-girl.html

████████████████████████████████████████████████████

████████████████████████████████████

756.    That same day, Case emailed ████████████████████████

███████████████████████. Ex. 56.

757.    On August 17, 2024, the Daily Mail published the article,[5] which incorporated the links Case had provided and reported that, according to an insider, "'Blake is trying to get Taylor to help pull her out of this mess by using their friendship for interviews and other promotional work directly related to the film amid the current backlash that she is getting'" and that Lively "laughed at the concept of making herself available to" domestic violence survivors. It further reported: "The source told DailyMail.com that 'Blake thinks she's getting set up by people around Justin so he doesn't have to come clean about his behavior' on set. . . . 'Instead of cementing her as a movie star it has served only to show out of touch she is.'"

758.    On August 15, 2024, Koslow ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████ Ex. 231 at JONESWORKS_00013335. Again, Ms. Koslow focused on the fact that ████████████████████████████████████████

██████████████████████████ *Id.*; Ex. 232 at BBKOSLOW-000006070. On August 27, Variety published the article, which claimed that "Reynolds' involvement [in It Ends With Us] raises . . .WGA issue[s]."[6]

---

[5] Lillian Gissen, *How Blake Lively COPIED Best Friend Taylor Swift to Promote It Ends With Us*, Daily Mail (Aug. 17, 2024) https://www.dailymail.co.uk/tvshowbiz/article-13750525/blake-lively-taylor-swiftcopied-friendship-justin-baldoni-drama.html.

[6] Rebecca Rubin, Tatiana Siegel, *"It Ends With Us" Sequel in Doubt Amid Blake Lively-Justin Baldoni Feud: "There's Probably No World Where They Work Together Again,"* Variety (Aug. 27, 2024), https://variety.com/2024/film/news/it-endswith-us-sequel-in-doubt-blake-lively-justin-baldoni-feud-1236114099.

759.    On August 18, 2024,  Baldoni asked TAG ███████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████. Ex. 65 at

BALDONI_000019422–19423. Abel responded: "████████████████████ and

Koslow replied that they █████████████ *Id.* at BALDONI_000019423.

760.    Later that day, Baldoni noted █████████████████████

█████████████████████████████████████████. Nathan

responded: ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ *Id.* at

BALDONI_000019424.

761.    Baldoni responded simply with "█████████████████████

████████

762.    Between August and October 2024, Wayfarer would █████████████

██████████████████████████████████. Exs. 203,

Wallace 10/9 Tr. 80:4–23; Exs. 233; 234 at STREET 1.000084; 235; 280; 279.

763.    While the TAG team would communicate with each other over ordinary text

messaging applications, ██████████████████████████████████

█████████████████████████████████████████████████ Exs. 57, Case

Tr. 74:17–75:7; 203, Wallace 10/9 Tr. at 72:20–73:15.

764.    Indeed, in initial conversation with Heath, ████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████

765.    In the weeks after the Film was released, however, ████████████████████

███████████████████████████████████████████████ Wayfarer Ex.

190 at SPE_BL0003328; 38, Greenstein Tr. 191:9–192:17, 200:4–201:25, 203:2–7. In an August

13, 2024 █████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Exs. 190 at SPE_BL0003328; 38, Greenstein Tr.

200:4–203:7.

      iv.    <u>Sarowitz Decides To "Go After" And "Ruin The Lives" Of Lively And
Reynolds</u>

766.    On August 29, Sarowitz had a Zoom conversation with ████████████ during

which Sarowitz said:

      a.  that he had been on set of the Film and that ████████████████

      b.  that if Lively and Reynolds ████████████████████████████████

         ████████ Wayfarer Ex. 245;

237

c. that he would protect Wayfarer ████████████████████████

████████████████████████████████████████████████

Wayfarer Ex. 245;

d. that Wayfarer ████████████████████████████████

████████████████

Wayfarer Ex. 245; Ex. 11, Sarowitz Tr. 320:20–321:24, 322:10–14;

767. Sarowitz considers ████████████████████████ Ex. 11,
Sarowitz Tr. 169:14–25.

768. On May 28, 2023, Baldoni ██████████████████████
█████████████████████████████████████████████████
████████████████████ Exs. 31 at HEATH_000035493; 11,
Sarowitz Tr. 285:19–286:8.

769. Sarowitz was aware ██████████████████████████
████ Ex. 44; 11, Sarowitz Tr. 210:11–211:3.

770. Sarowitz was aware ████████████████████████
████████████████ Ex. 11, Sarowitz Tr. 220:21–221–15

771. Sarowitz was aware ████████████████████████
████████████████████████████████████████
Ex. 37 at SAROWITZ_000000080–81.

772. On May 16, 2024, Sarowitz received ████████████████
█████████████████████████████████████████████████
████████████████████████ Ex.72.

238

773.    Baldoni discussed going through ███████████████████████████

████████████████████████████████████████████████████████████

████ on May 26, 2024. Ex. 237 at SAROWITZ_000000747.

774.    By August 14, 2024, Sarowitz was aware ████████████████████

████████████████████████████████████████████████████████████

████████ Ex. 238 at SAROWITZ_000000709.

775.    Sarowitz ████████████████████████████████████. Ex. 11,

Sarowitz Tr. 138:8–10, 138:21–24.[7]

776.    Sarowitz was in touch with ████████████████. Exs. 11, Sarowitz Tr.

347:22–349:16 349:23–25; 239 at SAROWITZ_000001241–1242.

777.    On January 2, 2025, Sarowitz emailed ██████████████████

██████████████████████████████ Exs. 240 at SAROWITZ_000000940; 11,

Sarowitz Tr. 74:15–75:9.

778.    On January 5, 2025, Sarowitz provided █████████████████

████████████████████████ Ex. 239 at SAROWITZ_000001241–1242.

779.    On January 6, 2025, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Ex. 75 at SAROWITZ_000000918.

780.    From May 1, 2024 through July 2025, TAG communicated with individuals who

seed, generate, create, or influence Social Media content or provide related digital services,

---

[7] "'It Ends With Us' Pop-Up & Non-Profit Partnership," https://wgntv.com/spotlight-chicago/it-ends-with-us-pop-up-non-profit-partnership/ (Aug. 14, 2024).

including Billy Bush, Andy Signore of Popcorned Planet, Candace Owens, Perez Hilton, and Sage Steele. Exs. 207 (Defendant The Agency Group PR LLC's Second Supplemental Responses and Objections to Plaintiff Blake Lively's First Set of Interrogatories) at 12–13; 208 (Defendant The Agency Group PR LLC's Third Supplemental Responses and Objections to Plaintiff Blake Lively's First Set of Interrogatories) at 11–12; 289 (Plaintiff Blake Lively's First Set of Interrogatories to Defendant The Agency Group PR LLC) at 3. Nathan told Perez Hilton that he was in her "circle of BF trust." Ex. 300 at NATHAN_000020427.

781.    From May 1, 2024 through June or July 2025, Abel and TAG communicated with more than two dozen media outlets, including The Daily Mail, People, Us Weekly, and Deux Moi, regarding Ms. Lively or Mr. Reynolds. Exs. 208 (Defendant The Agency Group PR LLC's Second Supplemental Responses and Objections to Plaintiff Blake Lively's First Set of Interrogatories) at 12–13; (Defendant/Third-Party Plaintiff Jennifer Abel's Responses and Objections to Plaintiff Blake Lively's Third Set of Interrogatories) at 13–17. By August 2024, negative sentiment regarding Ms. Lively and positive sentiment about Mr. Baldoni had dramatically increased in online discourse. Exs. 267, Mayzlin Report ¶84; Ex. 70, Culotta Report ¶¶54–56.

782.    On January 17, 2025, Sarowitz texted Abel and Nathan stating ████████████ ████████████ in response to Nathan sharing several links of content regarding ████████ ███████████████████████████████████████████████████████████ ███████████████████████████ Ex. 241.

**P.    In Response to Lively's CRD Complaint, Defendants Continued Their Retaliatory Campaign with a Baseless Lawsuit and Defamatory Statements.**

783.    On December 20, 2024, Lively filed an administrative complaint with the California Civil Rights Department naming as defendants Wayfarer Studios LLC, Justin Baldoni,

Jamey Heath, Steve Sarowitz, Melissa Nathan, The Agency Group PC LLC, Jennifer Abel and

her company RWA Communications, LLC, and Jed Wallace and his company Street Relations

Inc. *Lively v. Wayfarer Studios LLC et al.*, CRD No.: 202412-27269003 (the "CRD

Complaint").

784.    The CRD Complaint alleged that Lively and others were subject to sexual

harassment and other misconduct by Baldoni and Heath on the set of the Film, that Lively's

complaints about sexual harassment and other misconduct were not investigated during

production of the Film, and that the defendants worked together to retaliate against her by

engaging in a "multi-tiered plan that Mr. Baldoni and his team described as '***social***

***manipulation***' designed to '***destroy***' Ms. Lively's reputation."  CRD Complaint ¶¶ 1-2, 8, 24-25.

785.    That day, the CRD issued an immediate right-to-sue letter pursuant to

Government Code § 12965(b). Ex. 242. Lively privately sent the CRD Complaint to Defendants

along with a cease and desist letter. Ex. 242

786.    Before the CRD Complaint had been published or reported, Defendants leaked it,

along with a statement from Defendants' counsel, Bryan Freedman, to a variety of news outlets.

*See* Blake Lively Sues Justin Baldoni for Sexual Harassment … Claims of Wild Behavior On

Set, TMZ (Dec. 21, 2024) https://www.tmz.com/2024/12/21/blake-lively-sues-justin-baldoni-

sexual-harassment-retaliation-on-it-ends-with-us-set/; Blake Lively Accuses 'It Ends With Us'

Co-Star Justin Baldoni of Sexual Harassment; His Lawyer Slams 'Shameful' Complaint Full of

'False Accusations,' Variety (Dec. 21, 2024) https://variety.com/2024/film/news/blake-lively-

accuses-justin-baldoni-sexual-harassment-it-ends-with-us-1236257048/; Justin Baldoni

Responds to Blake Lively's Sexual Harassment Legal Complaint, E! News (Dec. 21, 2024)

https://www.eonline.com/news/1411455/justin-baldoni-responds-to-blake-livelys-sexual-harassment-legal-complaint.

787.    On December 21, 2024, Freedman published a statement to the New York Times on behalf of Baldoni, Heath, Sarowitz, Abel, Nathan, and Wallace regarding the CRD Complaint which Ms. Abel had provided.  Ex. 243.[8]  It said: "It is shameful that Ms. Lively and her representatives would make such serious and categorically false accusations against Mr. Baldoni, Wayfarer Studios and its representatives, as yet another desperate attempt to 'fix' her negative reputation which was garnered from her own remarks and actions during the campaign for the film; interviews and press activities that were observed publicly, in real time and unedited, which allowed for the internet to generate their own views and opinions.  These claims are completely false, outrageous and intentionally salacious with an intent to publicly hurt and rehash a narrative in the media."  *Id.*  Freedman stated that "[t]hese claims are completely false, outrageous and intentionally salacious with an intent to publicly hurt and rehash a narrative in the media."  *Id.* Further, he said "[t]he representatives of Wayfarer Studios still did nothing proactive nor retaliated, and only responded to incoming media inquiries to ensure balanced and factual reporting and monitored social activity.  What is pointedly missing from the cherry-picked correspondence is the evidence that there was no proactive measures taken with media or otherwise; just internal scenario planning and private correspondence to strategize which is standard operating procedure with public relations professionals."  *Id.*

788.    On December 23, 2024, counsel for Lively sent Freedman a letter reminding him of his ethical obligations, notifying him that he "defamed and engaged in further unlawful

---

[8] Statement to The New York Times from Bryan Freedman, attorney for Justin Baldoni, Wayfarer Studios and all its representatives, the New York Times (Dec. 21, 2024), https://www.nytimes.com/interactive/2024/12/21/us/statement-to-the-new-york-times.html/.

retaliation against Ms. Lively," and demanding that he "immediately cease and desist from making further defamatory, and retaliatory, statements relating to Ms. Lively." Exs. 244, 245. The letter further explained that his December 21 statement to the New York Times constituted defamation *per se* as it implied that "Ms. Lively has made knowingly false factual allegations in a verified pleading to a state administrative agency, which (if true) would be a crime under California state law." Ex. 245 at WAYFARER_000143714.

789.    On December 30, 2024, Lively amended her CRD complaint to specially identify IEWUM as a respondent. The CRD issued a notice of amended complaint, which states: "The original Notice of Case Closure and Right to Sue issued in this case remains the only such notice provided by the CRD. (Cal. Code Regs., tit. 2, § 10022.)" (the "Notice of Amended CRD Complaint"). Ex. 274.

790.    Lively received a dismissal and notice of right-to-sue from the EEOC as to Wayfarer and IEWUM from the EEOC on January 21, 2025 (the "EEOC Notices"). Exs. 275-276.

791.    Lively served Defendants with the Notice of Amended CRD Complaint, the EEOC Notices, the CRD notice and right-to-sue on February 15, 2025 by certified mail. Ex. 277.

792.    By December 30, 2024, Wayfarer Studios LLC, Baldoni, Heath, Sarowitz, Nathan, The Agency Group PC LLC, Abel and her company RWA Communications, LLC, and Jed Wallace and his company Street Relations Inc. all jointly retained the legal services of Liner Freedman Taitelman + Cooley, LLP. Ex. 246

793.    Wayfarer Studios LLC arranged to pay the legal fees for all Defendants as well as third party witnesses Case, Koslow, and Hanks. Exs. 11, Sarowitz Tr. 363:24–364:15; 24, Heath

10/9 Tr. 39:8–40:9; 247, Wallace 10/10 Tr. 15:6–8; 62, Koslow Tr. 396:7–18; 89, Hanks Tr.

20:16–19; *see* 57, Case Tr. 265:21–266:7.

794.    On December 31, 2024, Lively filed her complaint in the present action in the

District Court for the Southern District of New York.  *Lively v. Wayfarer Studios LLC, et al.*,

Case No. 1:24-cv-10049, ECF No. 1.  That same day, Freedman filed a lawsuit against the New

York Times in California state court on behalf of certain of his clients alleging that an article

published by the New York Times regarding the CRD Complaint defamed them under California

law (the "California State Lawsuit").  *Wayfarer Studios LLC et al. v. New York Times Company*,

No. 24STCV34662 (L.A. Superior Court).

795.    On January 2, 2025, Sarowitz texted his friend, Rainn Wilson, regarding news

coverage of Lively's legal actions and the California State Lawsuit.  Ex. 248.  Sarowitz told

Wilson that ███████████████████████████████████████████████████████████

███████████████████████████████ the California State Lawsuit is ████████████████ *Id.*

          i.      <u>Defendants And Freedman Recruit Content Creators To Place Strategic Anti-Lively Content</u>

796.    On January 3, 2025, Freedman started a group text with Sage Steele, an online

content creator and his former client, and Sarowitz, Baldoni, Heath, Abel, Nathan, and other

attorneys, explaining that ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

797.    On the same day, Abel ████████████████████████████ with Steele.  Ex.

251  The talking points advise that:

a.   the goal of the video is to establish that Ms. Lively's claims of sexual harassment

on set are ██████████

████████████████████████████████████████████

██████████████████████████

c.   the Wayfarer Parties ████████████████████

███████████████

d.   ████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████

e.   ████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████

Ex. 251 at ABEL_000019515, ABEL_000019516, ABEL_000019518, ABEL_000019519,

ABEL_000019520.

798.    On the same day, Nathan reached out to Roza Kalantari of the Skyline Agency,[9] including Wallace, Abel, and Freedman on the correspondence.  Exs. 252; 189 Nathan 9/29 Tr. 117:20–118:8.  Nathan instructed Kalantari: ███████████████████████████████

███████████████████████████████████████████████████████████████████

Ex. 252.

799.    On January 5, 2025, Steele provided Sarowitz, Baldoni, Heath, Abel, Nathan, Freedman, and other attorneys with a first take of her video.  Ex. 253.  Sarowitz replied that it was ████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████ *Id.* at NATHAN_000019471.

800.    Heath, Abel, and their attorneys provided additional feedback on the contents of the draft video provided by Steele.  *Id.* at NATHAN_000019472.  For example, Heath advised her: ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████. at NATHAN_000019474.

---

[9] The Skyline Agency is a "full-service digital advertising and branding agency." https://theskylineagency.com/about.

801.    On January 7, 2025, Steele published a video titled, "Shame on Blake Lively,"[10]

in which she makes the following statements:

    a.    "I think what's happening between Blake Lively and Justin Baldoni is just wrong, and as a woman and as a journalist, I can't stay silent about it anymore."[11]

    b.    "The more you dig, the more you realize Blake has been creating her own bad pr issues on her own for years."[12]

    c.    "The bad press began after old interviews of Blake resurfaced; videos that were not a good look for Blake Lively. They were unflattering, to say the least. Did you see the interview with Kjersti Flaa?"[13]

    d.    "Blake invited Justin into her trailer so they could continue working while she was pumping and nursing."[14]

    e.    "Here's the truth, Blake is the one who initiated the conversation about the wardrobe needing to be 'much sexier.' That's what was in the text. Justin, he's not just the co-star; he's the director of this film so he provided creative input while on the set. . . . That's his job."[15]

    f.    "I tried to, like, take a step back and think about Justin and how he chose to handle this whole thing by taking the high road. I admit that I don't know that I could have done it the way that he's done it. In some ways, it was to his detriment during the production of the film, and he just kept taking the high road with her."[16]

    g.    "It's so disappointing because it ends up hurting other women. This discredits women who are actual victim of sexual harassment."[17]

    h.    "Other women are being hurt because of these claims."[18]

802.    That same day, Freedman appeared for an interview with former client Megyn

Kelly and said: "the concern really is that she used these allegations of sexual harassment, and

---

[10] Sage Steele, *Shame on Blake Lively*, Youtube (Jan. 7, 2025), https://www.youtube.com/watch?v=vWLURmkBL_k&t=6s.
[11] *Id.* at 0:05–0:12.
[12] *Id.* at 4:08–4:15.
[13] *Id.* at 3:13–3:25.
[14] *Id.* at 1:45–1:51.
[15] *Id.* at 2:30–2:52.
[16] *Id.* at 6:14–6:34.
[17] *Id.* at 0:48–0:55.
[18] *Id.* at 5:07–5:10.

she used these allegations of bullying to try and leverage her position so she could be the de facto director in the case."[19]

        ii.    <u>Defendants File Their Retaliatory Lawsuit And Continue Defaming Lively In the Press</u>

803.    On January 16, 2025, the Wayfarer Parties filed a complaint against Lively, Reynolds, Sloane and Vision PR.  Case No. 1:25-cv-00449 (the "Wayfarer Action"), ECF. No. 1.

804.    The Wayfarer Action complaint brought claims of civil extortion, defamation, false light invasion of privacy, breach of implied covenant of good faith and fair dealing, intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage seeking at least $400,000,000 in damages.  *Id.*

805.    That same day, Ms. Nathan and Mr. Freedman worked with their ███████ ███████████████████ People Magazine, to place at least eight articles which were favorable to Mr. Baldoni.  Ex. 254.  The articles published that day, which were sent directly to Freedman and Nathan by Roeser, included ones which reported that:

a.    Lively had compared herself to the *Game of Thrones* character Khaleesi and referred to Reynolds and Swift as her "dragons,"[20]

b.    Lively attempted to use Swift and Reynolds to pressure Baldoni into accepting a rewrite of a key scene in the script,[21]

---

[19] Megyn Kelly, How the New York Times Colluded with Blake Lively, According to Justin Baldoni Lawyer Bryan Freedman (Jan. 7, 2005), https://www.youtube.com/watch?v=XIfFOdAk02U at 6:56.
[20] Benjamin VanHoose, *Justin Baldoni Claims Ryan Reynolds and Taylor Swift Pressured Him to Accept Blake Lively's It Ends With Us Rewrite: Complaint*, People (Jan. 16, 2025), https://people.com/justin-baldoni-claims-blake-lively-ryan-reynolds-taylor-swift-pressured-him-8775745; Jen Juneau, *Blake Lively Compared Self to Khaleesi in Alleged Texts to Justin Baldoni, Called Ryan Reynolds, Taylor Swift Her Dragons: Complaint*, People (Jan. 16, 2025), https://people.com/blake-lively-compared-herself-to-khaleesi-in-texts-to-justin-baldoni-lawsuit-8776041.
[21] *Id.*

c. Lively never read the book on which the Film is based prior to making the Film,[22]

d. Lively joked about Baldoni's nose and told him he should get plastic surgery,[23]

e. Lively named an after-party drink after the Film's abuser;[24] and

f. Lively pressured Ms. Ferrer to "shun" Baldoni.[25]

806.    On January 18, 2025, Freedman made a statement to Deadline claiming: "After my clients filed a comprehensive lawsuit packed with almost 200 pages of undeniable facts and documentary evidence which crushed their false allegations of a smear campaign by providing doctored communications to the New York Times, Blake and her legal team have just one heinous pivot left, and that is to double down on the revoltingly false sexual allegations against Mr. Baldoni[.]"[26]  Freedman further stated that "[t]he mere fact that Ms. Lively feels that she can publicly destroy Mr. Baldoni's reputation in an attempt to devastate his future career and then deny him or his team their own ability to defend theirselves [*sic*] against her is preposterous. Mr. Baldoni never once publicly attempted to call Ms. Lively out for her own many wrongdoings during filming, he kindly addressed all her concerns during filming in the correct manner despite the fact that he wholly disagreed, he himself was committed to do things differently and to keep the peace as she specifically admitted to in her own lawsuit."  *Id.*

---

[22] Jen Juneau, *Justin Baldoni Alleges Blake Lively Never Read It Ends with Us Book Before Making Movie: It 'Worried' Her Colleagues*, People (Jan. 16, 2025), https://people.com/justin-baldoni-says-blake-lively-never-read-it-ends-with-us-book-before-making-film-lawsuit-8775743.

[23] Tommy McArdle, *Justin Baldoni Alleges Blake Lively Joked About His Nose on It Ends With Us Set, Told Him He 'Should Get Plastic Surgery'*, People (Jan. 16, 2025), https://people.com/justin-baldoni-alleges-blake-lively-joked-about-his-nose-it-ends-with-us-plastic-surgery-8775759.

[24] Lindsay Kimble, *Justin Baldoni Claims in Lawsuit That Blake Lively Named It Ends With Us Afterparty Drink After Film's Abuser*, People (Jan. 16, 2025), https://people.com/justin-baldoni-claims-blake-lively-named-it-ends-with-us-party-drink-after-film-abuser-8775762.

[25] Jack Smart, *Justin Baldoni Claims Blake Lively Urged Isabela Ferrer to 'Shun' Him Despite Her Allegedly Calling IEWU Set 'Safe': Complaint*, People (Jan. 16, 2025), https://people.com/justin-baldoni-lawsuit-blake-lively-urged-isabela-ferrer-shun-him-8776102.

[26] Dominic Patten, *Justin Baldoni's Lawyer Decries "Revoltingly False Sexual Allegations" From Blake Lively As Lawsuits Fly; Brands At Business Heart Of Dispute*, Deadline (Jan. 18, 2025, 5:44 pm), https://deadline.com/2025/01/blake-lively-justin-baldoni-lawyer-latest-1236260673/.

807.    On January 21, 2024, the Defendants provided raw video footage of the Dance Scene ("Dance Scene Footage") along with an approved statement to media outlets and content creators. Exs. 255, 256, 257.

808.    The Dance Scene Footage was shared by Defendants to The Daily Mail, TMZ, Entertainment Tonight, Popcorned Planet, and Perez Hilton. *Id.*; Ruth Styles, *Who's lying, Blake Lively or Justin Baldoni? Shocking It Ends With Us clip reveals the truth about abuse claims*, Daily Mail (Jan. 21, 2025), https://www.dailymail.co.uk/tvshowbiz/article-14308745/Blake-Lively-Justin-Baldoni-bombshell-clip-reveals-truth-abusee.htm ("The clip . . . was passed to DailyMail.com by the actor's production company Wayfarer and his lawyer Bryan Freedman."); *Justin Baldoni Claims No Signs of Sexual Harassment Here!!! Raw 'It Ends With Us' Scene*, TMZ (Jan. 21, 2025), https://www.tmz.com/2025/01/21/justin-baldoni-it-ends-with-us-raw-footage-dance-scene-no-sexual-harassment-blake-lively/ ("Baldoni's team dropped nearly 10 minutes of unedited footage -- including one scene where Justin and Blake are slow dancing."); Popcorned Planet, *See Blake Lively CAUGHT Lying About Justin Baldoni - Full Video Evidence From It Ends With Us REVEALED!*, YouTube (Jan. 21, 2025) https://www.youtube.com/watch?v=PIX7Clu_ZSU ("we got this from their legal counsel"); Entertainment Tonight, *It Ends With Us Legal Battle: Justin Baldoni Releases Raw Footage of Blake Lively on Set*, YouTube (Jan. 21, 2025), https://www.youtube.com/watch?v=Iz_aU4QJOOE&t=2s ("Justin Baldoni's lawyer, Bryan Freedman, shares new video of the director working with Blake Lively on set of the film at the center of the actors' he said, she said legal battle."); Andy Signore (@andysignore), X (Jan. 21, 2025), https://x.com/andysignore/status/1881768808861598176 ("EXCLUSIVE! We just got ahold of 10 MINUTES of 'It Ends With Us' On-Set Footage from Justin Baldoni's legal counsel

that PROVES Blake Lively was NOT being honest in her lawsuit... Read the accusation below,

then click the next tweet to watch what really happened."); Perez Hilton,

(@PerezHiltonOnReddit), Reddit,

https://www.reddit.com/r/teamjustinbaldoni/comments/1ll7har/exclusive_major_victory_for_just

in_baldoni/ ("The link is in my video. Team Baldoni confirmed to me.").[27]

809.    While discussing the Dance Scene Footage with Alison Boshoff of The Daily

Mail, Nathan exclaimed: ██████████████████████████

██████████████████████████████ Ex. 256 at

NATHAN_000025354.

810.    Nathan celebrated with her sister—a reporter at Page Six—that the Dance Scene

Footage was ████████████ Ex. 258 at NATHAN_00026628.

811.    On January 21, 2025, Lively asked the Court to enter a protective order pursuant

to Rule 3.6 in response to the near-daily character assassination of Lively. ECF No. 17.

812.    In response, Nathan provided People.com with a quote ████████████

████████████████████████████████████████

██████████████████████ Ex. 259.

[27] *See also* Ryan Hudgins, *Justin Baldoni's Lawyer Releases Video of 'It Ends With Us' Scene to Try to Disprove Blake Lively*, US Magazine (Jan. 21, 2025), https://www.usmagazine.com/entertainment/news/wayfarer-studios-releases-justin-baldoni-blake-lively-slow-dance-scene/; Gabrielle Chung, *Blake Lively & Justin Baldoni's It Ends With Us Behind-the-Scenes Footage Revealed*, E! News (Jan. 21, 2025), https://www.eonline.com/news/1412416/blake-lively-justin-baldonis-behind-the-scenes-video-of-it-ends-with-us; Jack Smart & Elizabeth Rosner, *Newly Released Video Shows Blake Lively and Justin Baldoni Awkwardly Interacting on It Ends With Us Set*, People (Jan. 21, 2025), https://people.com/video-blake-lively-justin-baldoni-awkward-it-ends-with-us-set-8777517. ,

813.   On January 23, 2025, Mr. Freedman filed a motion for *pro hac vice* admission, with a Certificate of Good Standing which was signed and notarized in Los Angeles, California, stating that he practices law in California.  ECF Nos. 28, 28–1.

814.   On January 25, 2025, Freedman went to New York Post's Page Six to discuss the gag order: "The irony is not lost on anyone that Ms. Lively is so petrified of the truth that she has moved to gag it . . . Ms. Lively did this with the sole intent to ruin the lives of innocent individuals, and then went the extra mile to place blame on a fictitious smear campaign, all because she quite simply could not accept that the public had organically seen through her facade. . . . When you accuse innocent individuals of something so disturbing as sexual harassment without thinking of the destruction it would cause to not only them, but the entire domestic violence community, this is where accountability for such mean spirited actions must be taken. . . . All we want is for people to see the actual text messages that directly contradict her allegations, video footage that clearly shows there was no sexual harassment and all the other powerful evidence that directly contradicts any false allegations of sexual harassment and subsequent smear campaign."[28]

815.   On January 31, 2025, the Defendants filed the First Amended Complaint to include The New York Times as a party and to attach a 168-page "Timeline" detailing the Wayfarer Parties' version of events.  ECF Nos. 50, 50–1.

816.   On February 1, 2025, Defendants launched a website with the URL https://www.thelawsuitinfo.com/, containing a copy of the Wayfarer Parties' Amended Complaint and their Exhibit A, "Timeline of Relevant Events."  Kalantari asked for approval for

---

[28] BreAnna Bell, Justin Baldoni's lawyer says he won't be 'bullied' into silence by 'petrified' Blake Lively, Ryan Reynolds after gag order request, Page Six (Jan. 25, 2025, 4:45 pm), https://pagesix.com/2025/01/25/celebrity-news/justin-baldonis-lawyer-says-he-wont-be-bullied-into-silence-by-petrified-blake-lively-ryan-reynolds-after-gag-order-request/; see *also* Amended Humphreys Report ¶ 148, Appendix F at 171, Appendix G at 175.

the Defendants' website to go "live."  Ex. 260 at SKYLINE_000000249;

https://www.thelawsuitinfo.com/.

817.    On June 9, 2025, the Court dismissed Defendants' lawsuit in full. ECF No. 296 at

129–30.

**Q.    Mr. Freedman Killed Stories Unfavorable to His Clients & Continued to Defame Ms. Lively**

818.    On December 23, 2024, Freedman emailed an NBC reporter in response to a

possible connection between TAG and the Amber Heard smear campaign by stating:



Ex. 261.

819.    On February 5, 2025, Freedman emailed another NBC reporter in connection with

an article that stated the Court "barred Justin Baldoni's attorney Bryan Freedman from deposing

Blake Lively" by stating:



" Ex. 262.

820.    During a conversation between Freedman and          counsel on February 6,

2025, that Nathan described in a text message,



Ex. 263 at

NATHAN_000022028–22029.

821.    On February 7, 2025,            of the Hollywood Reporter emailed Freedman

███████████████████████████████████████████████

████████████████████████ Ex. 264.

822.    On February 11, 2025, Freedman responded to Gary Baum stating: ██████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

*Id.*

823.    Freedman continued, █████████████████████████████

███████████████████████████████████████████████

██████ *Id.*

**R.    Ms. Lively Suffered Damages As A Result Of The Conduct**

824.    Following the success of the Film, Lively was on track to command ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Ex. 33, Stone Tr. 397:22–399:8.

825.    Since the Film's release, Lively suffered ██████████████████████

████████████████████████████████████ Exs. 34, Zavala Tr. 285:7–

24); 281, Lively Tr. 225:16–228:5.

826.    The income Lively derived from her businesses, Blake Brown and Betty Booze,

suffered as well.  Exs. 265, Betty B Tr. 117:2–19; 87, Family Hive 9/29 Tr. 111:14–112:10; 266,

Kinrich Report at 33–40, 53–56.

827.    Both brands are built around Lively, and their success depends on her acting as their "face," as the painstakingly prepared company financial projections reflect.  *Id.*

828.    After the retaliation, Lively could not publicly promote the businesses, and the onslaught of negative commentary forced the brands to suspend social media activities in the immediate aftermath of the Film's release.  Exs. 87, Family Hive 9/29 Tr. 30:14–31:5, 46:7–20, 50:5–10, 51:16–20; 265, Betty B. Tr. 32:14–33:1.

829.    Despite the prior success of Blake Brown and Betty Booze, sales of both brands declined significantly as a result of disruptions in marketing strategy, erosion of brand equity, and a sharp decline in sales performance in the aftermath of Defendants' retaliation.  Exs. 87, Family Hive 9/29 Tr. 177:16–178:4, 179:11–180:10, 181:1–12; 267, Mayzlin Report ¶¶ 92–113; 266, Kinrich Report ¶¶ 46–48, 53–56, 59–61; 268 at BL-000038029–38047;269 at BL-00008236, BL-00008237, BL-00008243, BL-00008244.

## S.    EXPERT OPINIONS

830.    Professor Aron Culotta, a Professor of Computer Science at Tulane University, reviewed the posts and platforms discussed in Defendants' text messages and found ███████████ ███████████████████████████████████████████████████████████████████████████ ██████ Ex. 70, Culotta Report at 3–4.

831.    Indicia of a digital campaign to manipulate online discussion of Lively is reflected in ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ █████████ *Id.* ¶¶ 9, 96–97; *id.* ¶¶ 54–60, 65, 67 (TikTok); *id.* ¶¶ 72, 79–81, 87, (Reddit); *id.* ¶ 95 (YouTube).

832.     TikTok video comments in August 2024 reflected a ████████████████████

███████████████████████████████████████████████████

████████████████████████████ Ex. 270, Culotta Tr. 50:6–51:10, 58:16–59:9, 60:20–24.

833.     During August 2024, the subreddit thread FauxMoi reflected ████████████

███████████████████████████████████████████████████████

██████████████████████ *Id*. 76:10–18, 89:8–17, 90:3–8.

834.     Dr. Dina Mayzlin, the Robert E. Brooker Chair in Marketing at the Marshall

School of Management and the University of Southern California, was asked to evaluate

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ Ex. 267, Mayzlin Report ¶¶ 1, 7.  In conducting her analysis, Dr. Mayzlin observed

███████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* ¶ 11.

835.     Dr. Mayzlin also ███████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 12. Her analysis confirmed that

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

836.     More specifically, her assessment "████████████████████████████

███████████████████████████████████████████████████



*Id.* ¶ 84.

837.    Professor Ashlee Humphreys, a Professor of Integrated Marketing Communications at Medill School of Journalism and Professor of Marketing at the Kellogg School of Management at Northwestern University analyzed the impact to Lively's reputation from the retaliation campaign ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 271, Humphreys Report ¶¶ 1, 8–9.

838.    Dr. Humphreys observed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ congruent with the alleged retaliation campaign. Ex. 272, Humphreys Tr. 146:7–14; 168:14–23.

839.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*, 105:11–18.

840.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*, 134:23–135:13.

841.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*, 180:1–4; 183:2–13.