**LINER FREEDMAN TAITELMAN + COOLEY, LLP**
1801 CENTURY PARK WEST, 5TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6007
TEL: (310) 201-0005
FAX: (310) 201-0045
E-MAIL: bfreedman@lftcllp.com

December 5, 2025

*Via ECF*
Hon. Lewis J. Liman
United States District Court, Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

**Re:** *Blake Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL

Dear Judge Liman:

Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC and Jennifer Abel (collectively, the "Wayfarer Parties") oppose Blake Lively's motion to compel or in the alternative for *in camera* review of 106 entries listed on the Wayfarer Parties' privilege log of post-complaint Signal communications. ECF No. 1032.[1]

Lively's primary contention is that 106 of the entries on the privilege log are insufficient and that the remedy for the alleged inadequacies is that the documents must be produced or alternatively reviewed *in camera*. As discussed below, the 106 log entries are sufficient. Regardless, the remedy for any deficiencies should not be production of the documents. Any alleged deficiencies are not so "flagrant" to justify a wholesale waiver of the privilege. *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 2025 WL 1434375, at *3 (S.D.N.Y. May 17, 2025). At most, an *in camera* review could be conducted "in order to supplement the parties' privilege logs and determine the contents of the documents." *Weber v. Paduano*, 2003 WL 161340, at *13 (S.D.N.Y. Jan. 22, 2003). To address the issues raised in Lively's motion, the Wayfarer Parties re-reviewed the 106 entries identified and revised those entries on the log in an effort to eliminate or reduce the burden on the Court associated with an *in camera* review. Troupson Decl. ¶¶ 3-4. In conducting their re-review, the Wayfarer Parties also determined that some of the documents are not privileged or protected by the work product doctrine, and the Wayfarer Parties have produced or will produce the documents (in whole or in a redacted form) by December 8. Troupson Decl., ¶¶ 5-6.

The 106 privilege log entries Lively identifies comply with the law as they list (i) the type of document, *e.g.*, email; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author of the document, the addressees of the document, and the recipients of the document and (v) the privileges claimed. L.R. 26.2(a)(2). Lively agrees that all required information has been provided but contends that the subject matter of the document is not sufficiently detailed. The level of detail, however, is sufficient to allow Lively and the Court to assess the privilege claims. Courts have generally sustained privilege log entries with the level of detail that the Wayfarer Parties have used here. For instance, in *S.E.C. v. Beacon Hill Asset*

---

[1] Lively says there are 108 entries she has issues with, but in fact she is challenging 106 unique documents – she double-counts two of the documents, because they are duplicated in two of her four appendices (log entries 297 and 298).

Hon. Lewis J. Liman
December 5, 2025
Page 2

*Management LLC*, the court sustained privilege claims supported by log entries stating that the withheld documents were "correspondence or e-mails seeking, transmitting or reflecting legal advice," because under the circumstances of the case, "[t]o require [the party] to disclose additional information would come perilously close to requiring disclosure of the substance of the privileged communication." 231 F.R.D. 134, 144-45 (S.D.N.Y. 2004); *see also Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 2010 WL 11594991, at *16 (S.D.N.Y. Oct. 14, 2010) (special master decision observing that "identifying e-mails in a privilege log as 'seeking, transmitting or reflecting legal advice' ... provides a sufficient description to sustain an assertion of privilege"); *NovaFund Advisors, LLC v. Capitala Grp., LLC*, 2021 WL 2109112, at *3 (D. Conn. May 25, 2021) (privilege log entry identifying document as "[i]nternal communication regarding legal issues related to Fund V" was sufficient); *Orenshteyn v. Int'l Bus. Machs. Corp.*, 2013 WL 208902, at *1 (S.D.N.Y. Jan. 15, 2013) (accepting descriptions such as "request for legal advice re issuance of patent and infringement by IBM"); *In re Currency Conversion Antitrust Litig.*, 2010 WL 4365548, at *2 (S.D.N.Y. Nov. 3, 2010) (accepting descriptions such as "Training document reflecting legal advice from in-house counsel re arbitration provision."); *Lam v. State St. Corp.*, 2025 WL 834885, at *4 (S.D.N.Y. Mar. 17, 2025) (accepting log entry stating "[c]ommunications between State Street employees and State Street's in-house legal team for the purpose or [sic] seeking or obtaining legal advice regarding employment law issues"); *see also* Troupson Decl., Ex. A (Lively's supplemental privilege log) ("Message providing information necessary to render legal advice of Manatt Phelps & Phillips, LLP concerning litigation"); *cf. Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 93 (E.D.N.Y. 2019) (notes "related to ACS [defendant] litigation" insufficient because it failed to state whether the documents were "related to this case or another case," or to whom the document was sent).

Most of the entries Lively alleges are insufficient describe attachments to a "parent" Signal chat separately listed on the privilege log. *See* Lively Appendices B and C. Lively fails to consider the descriptions of the attachments must be read in conjunction with the description of the parent Signal chat, most of which Lively does not challenge. For instance, entry 10 is an attachment to entry 9, which is not challenged. The descriptions of the attachments "suffice to establish each element of the privilege or immunity that is claimed." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 2025 WL 1434375, at *6 (S.D.N.Y. May 17, 2025) (citation and quotation marks omitted) (finding description of attachments on a privilege log sufficient that stated merely "'attachment to privileged email communication for legal analysis,' sent to corporate counsel"). Lively also ignores that many of the "attachments" are just "voice notes" made and embedded within the Signal chat – in lieu of written text. That is, instead using written words in the text of the Signal message, the sender (most often Jed Wallace) opted to communicate the privileged information via a voice recording, which appears in the chat with an indication that the communication is by voice message, rather than writing the message with text. While Lively does not object to the descriptions of "parent" Signal chats when written text is provided, she argues, without providing any reason, that she is somehow entitled to more detail when the communication is made by voice message.

Lively's argument ignores that the inevitable danger inherent in providing too much detail on a privilege log threatens to invade attorney-client communications and opinion work product, a danger that is particularly acute when post-complaint communications are logged. Recognizing this danger, courts either do not require logging post-complaint communications at all or only require a categorical privilege log. ECF No. 711, p. 12 (requiring only a categorical log); *Gary Freidrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 1642381, at * 2 (S.D.N.Y.

Apr. 26, 2011); see ECF No. 610, p. 17 (collecting cases). Although the Wayfarer Parties informally agreed to provide a document-by-document privilege log to address Lively's concerns regarding the identity of the individuals involved in the communications, the Wayfarer Parties cautiously drafted the descriptions of the document to protect counsel's litigation opinions and strategies – to prevent Plaintiff from 'invading the defense camp.' To require more detailed descriptions of post-complaint communications "would come perilously close to requiring disclosure of the substance of the privileged communication." *S.E.C.*, 231 F.R.D. at 145.

With respect to two categories of entries, Lively contends that, in addition to being insufficiently described on the privilege log, the documents are not in fact privileged. First, Lively contends that eight Signal communications listed on the privilege log were improperly withheld because it is "unclear for whom the underlying work was being performed." See Appendix A. As reflected in the log entries, the work was being performed at the behest of counsel, Liner Freedman Taitelman + Cooley, LLP, in connection with its investigation and strategy in the defense and prosecution of the lawsuits.[2] These communications were between defendants, who as co-litigants represented by the same counsel, share a common interest in the litigation of the case. *Han v. InterExchange, Inc.*, 2025 WL 1419527, at *3 (S.D.N.Y. May 16, 2025). As Lively notes, most of these communications concern the collection of evidence and information for counsel. Contrary to Lively's assertion, "[c]ommunications related to the collection of information and documents for attorneys implicate the work-product doctrine as well as the attorney-client privilege." *Id*. "[I]nquiring as to the particularized discussions and direction from counsel regarding specific documents or information to be collected or gathered reflects attorney-client communications as well as 'attorneys' mental impressions, opinions or legal theories concerning specific litigation.'" *Id*. The work product doctrine, which is "broader" than the attorney-client privilege also protects these documents from disclosure. For the work product doctrine to apply it "is not in fact necessary that the material be prepared by or at the direction of an attorney. Thus, the rule affords protection to materials gathered by non-attorneys even where there was no involvement by an attorney." *Id.* (citations and quotation marks omitted).

Second, Lively argues that the Wayfarer Parties must produce communications that concern, in part, media strategy (Lively Appendix D). In connection with their re-review, some of these documents will be produced in their entirety or in a redacted form. The Wayfarer Parties have described, on the revised log, communications about media communications with counsel that remain privileged, such as where counsel was consulted regarding the legal ramifications of making a proposed media communication (*e.g*., a press statement), which was never made after consultation with counsel.

In sum, the privilege log is not insufficient, and any deficiencies have been addressed by the revised log and additional production of documents identified on the earlier version of the log (Troupson Ex. B).

---

[2] Lively's Motion is missing information contained in the actual log. For example, Lively claims that the Wayfarer Parties' privilege log entries compiled in Appendix B "only offer the following descriptions: (i) '[a]ttachment to attorney-client communication'; (ii) '[a]ttorney-client communication attachment'; or (iii) '[c]ommunication attachment'" (Mot. at 2), omitting the subject-matter description contained in each privilege log entry. *See* App'x B.

Hon. Lewis J. Liman
December 5, 2025
Page 4

Respectfully submitted,

*/s/ Bryan J. Freedman*
LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (*pro hac vice*)
Ellyn S. Garofalo (*pro hac vice*)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
          egarofalo@lftcllp.com


MEISTER SEELIG & FEIN PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
          kaf@msf-law.com

cc: all counsel of record (via ECF)