UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                Plaintiff,<br><br>    v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>                Defendants. | Civ. Action No. 1:24-cv-10049-LJL<br>(Consolidated for pretrial purposes with 1:25-cv-00449-LJL)<br><br>rel. 1:25-cv-00449-LJL<br><br><br>**THIRD-PARTY DEFENDANT JONESWORKS LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SPOLIATION SANCTIONS** |
| JENNIFER ABEL,<br><br>                Third-Party Plaintiff,<br><br>    v.<br><br>JONESWORKS LLC,<br><br>                Third-Party Defendant. | |
| WAYFARER STUDIOS LLC, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>BLAKE LIVELY, et al.,<br><br>                Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

    A.    Abel's Duty to Preserve Was Triggered Before the Signal Messages Disappeared ............ 2

    B.    Abel Used Signal During the Relevant Period and Failed to Preserve Those Communications ............................................................................................................... 4

    C.    Abel's Destroyed Signal Messages Are Highly Relevant and Not Cumulative ................. 6

    D.    Jonesworks Has Established All Elements for Sanctions Under Rule 37(e)(2) ................ 8

CONCLUSION .............................................................................................................................. 10

**INTRODUCTION**

Jennifer Abel destroyed critical evidence while anticipating litigation, and now asks this Court to excuse that destruction with semantics and selective memory. Her opposition fails on every ground. Abel ███████████████████████████████—yet claims her duty to preserve extended only to "████████" allegations, not to the public relations campaign launched specifically to counter those very allegations. This artificial distinction collapses under the slightest scrutiny. The PR campaign was conceived for one purpose: to shape the narrative surrounding the on-set conduct that Abel contemporaneously believed would spawn litigation. Communications about that campaign—including whether Abel's own employer, Jonesworks, participated or even knew about it—were plainly relevant to any anticipated dispute. Abel did not preserve those records, spoliating relevant evidence.

Abel ██████████████████████████████████████████████████████████████████████████. Yet Abel produced not a single Signal message prior to December 2024. The reason is obvious: she and her collaborators enabled Signal's auto-delete feature to ensure these communications would vanish. Abel's attempt to characterize the missing messages as "cumulative" misses the point entirely. The existing evidence shows Jones and Jonesworks were excluded from the campaign. The Signal messages would have shown that Abel deliberately concealed her actions, operated outside her authority, and aligned herself with a client's interests against her employer's. That evidence goes to the heart of Abel's indemnification claim and her defense that she acted within the scope of her employment.

Abel's ██████████████████████████████████—and her inability to explain the disappearance of all pre-December 2024 messages—reflects bad faith. This is precisely the conduct Rule 37(e)(2) sanctions are designed to address.

1

## ARGUMENT

### A. Abel's Duty to Preserve Was Triggered Before the Signal Messages Disappeared

Abel's principal argument—that she was not required to preserve her Signal messages because she anticipated litigation about " ▮▮▮ in 2023 but not litigation about the PR campaign in 2024—is incorrect as a matter of law and fact. Opp. at 18-20. The "obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation" or *"when a party should have known that the evidence may be relevant to future litigation."* *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (emphasis added).

Abel admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 30 at 7-8; Ex. 31 at No. 23. Those allegations are the very reason the PR campaign existed. The PR campaign Abel seeks to characterize as unrelated was conceived solely to influence the narrative surrounding those misconduct allegations. The distinction Abel now draws is artificial and unavailing. The August 2 Scenario Planning Document makes this explicit: the PR strategy was designed to protect the reputation of Baldoni and Wayfarer studios against Lively's anticipated public allegations and to prepare for public scenarios. Ex. 15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 29 at 5-6.

Abel cannot plausibly claim that PR work designed to manage anticipated litigation fallout was irrelevant to that litigation. The PR campaign was not an independent, unrelated activity—it was part and parcel, undertaken specifically to manage the fallout from the very conduct that Abel admits she believed would lead to litigation. Opp. at 21, Garafalo Decl. Ex. 57, 9/25/25 Abel Dep. Tr. 78:22-79:6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Communications about



2

that PR work—including how it was conceived, who participated, and, critically here, whether Jones and Jonesworks were involved—were plainly relevant to any anticipated litigation concerning Lively's allegations.

None of the authorities Abel cites support her distorted argument that the preservation duty is limited to the specific legal theory ultimately asserted or begins only once suit is filed. *See* Opp. at 18, citing *Kronisch*, 150 F.3d at 126-27 ("This obligation to preserve evidence arises . . . ***also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation***.") (emphasis added) and *Kosmidis v. Port Auth. of New York & New Jersey*, 2020 WL 5754605, at *4 (S.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-8413 (AJN), 2020 WL 7022479 (S.D.N.Y. Nov. 30, 2020) (internal citations omitted) ("The duty to preserve can arise even before the formal initiation of an action, once a party reasonably anticipates litigation."). Abel admitted that she ███████ ███████████████████████████████████████████████████ Ex. 31 at No. 23. And, under own authority, her duty to preserve was triggered by mid-August 2024 at the latest.[1] Abel's attempt to cabin her preservation duty to what happens to now be preserved to avoid the consequences of this motion is untenable.

Moreover, Abel's timeline is off base. She claims she could not have anticipated litigation over "August 2024 public relations activities" in November 2023 because those "public relations activities" had not yet occurred. Opp. at 20. But her duty to preserve did not end in November 2023—it continued and intensified as litigation became increasingly likely. By August 2024, when Abel was actively using Signal to coordinate PR strategy and ███████████████████████

---

[1] Abel received explicit notice that a lawsuit may be afoot on November 10, 2023, when she saw Lively's lawyer's letter threatening that Lively was "prepared to pursue her full legal rights and remedies." Garofalo Decl. Ex. 18 (HEATH_000049558).

3

███, the foreseeability of litigation was undeniable. By that point at the latest, her duty to preserve communications relating to that anticipated litigation attached, regardless of when those communications occurred.

### B. Abel Used Signal During the Relevant Period and Failed to Preserve Those Communications

Abel claims Jonesworks "does not show that Abel used Signal prior to December 20, 2024 to communicate about Lively." Opp. at 20. This is demonstrably false.

*First*, ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████. Opp. at 21, Garafalo Decl. Ex. 57, 9/25/25 Abel Dep. Tr. 78:22-79:6. The timing is not coincidental. When Abel was asked whether she used Signal for Wayfarer during the campaign, she did not deny it; instead, she claimed she ███████." Ex. 3, 9/26/25 Abel Dep. Tr. at 250:17-252:2. This loss of memory is not exculpatory. To the contrary it, combined with the complete absence of any Signal production from before December 2024, supports the inference that Abel did in fact use Signal and that those messages have been deleted.

*Second*, Heath testified that he believed he communicated with Abel via Signal during the relevant period. Ex. 33, Oct. 8, 2025 Deposition of Jamey Heath ("10/8/25 Heath Dep. Tr.") at 359:15-24, 364:2-7) (confirming he may have started using Signal to speak with Abel and Nathan by September 2024). Because there is no evidence suggesting that Heath and Abel worked together on any other client or project during that period, Heath's recollection confirms that Signal was used for the campaign.

*Third*, Abel was added to Signal threads during this period. On August 12, 2024, Nathan started a new ████████████████████████████████████████████████████████████████████████████████████ Ex. 29 at 5-6. This ████████████

4

███████████████████████████ is strong evidence that Signal was being used for substantive communications about the anticipated litigation. This also demonstrates that Abel understood the nature of the communications and consciously chose to shift them to a platform that she could enable to automatically delete them.

Abel relies on *Cooper Foods International, LLC v. Yourd*, arguing that "speculation" about deleted messages does not show spoliation. Opp. at 22 (citing 2025 WL 2663977, at *2 (E.D.N.Y. Sept. 17, 2025)). There, the court denied spoliation sanctions because the movant's argument rested on the "speculative assertion" that because the parties communicated on WhatsApp at other times, similar messages must have existed during the relevant period. *Id.* at *2-3. Here, by contrast, there is direct, contemporaneous evidence that Signal communications existed during the relevant period and that Abel participated in them: (1) ████████████████████████████ ██████████████████████████ (Ex. 29); (2) she █████████████████████████ ██████████████ (*id.*); (3) Heath testified that he may have communicated with Abel via Signal during the campaign (Ex. 33 at 364:2-7); and (4) Abel ████████████████████████ ████████████████████████████████████████████████████ (Opp. at 21, Garafalo Decl. Ex. 57, 9/25/25 Abel Dep. Tr. 78:22-79:6). *Cooper Foods* therefore underscores that Jonesworks has established spoliation.[2]

---

[2] Each of *Dilworth*, *Adato*, and *Khaldei* (Opp. at 23) are likewise inapposite because he courts there denied sanctions for the same fundamental reason that is *not* present here: the movants failed to establish that the allegedly missing materials ever existed, making their spoliation theories entirely speculative. *See Dilworth v. Goldberg*, 3 F.Supp. 3d 198, 202, 202-03 (S.D.N.Y. 2014) (rejecting sanctions where plaintiffs offered only conjecture and "pure speculation" that sought after evidence existed); *Adato v. Gala Tour, Inc.*, 2011 WL 4458852, at *10-11 (E.D.N.Y. Sept. 23, 2011) (denying sanctions because plaintiffs "have not established that the subject evidence ever existed" where no witness testified a logbook entry about the incident was ever created); *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 569-70 (S.D.N.Y. 2013), *aff'd*, 961 F.Supp. 2d 572 (S.D.N.Y. 2013) (rejecting spoliation claim where plaintiff's theory that evidence was destroyed amounted to "pure speculation" and there was no actual loss of evidence). Here, the evidence, by Abel's own admission, existed but was not preserved.

5

Finally, Abel's pure speculation that perhaps she used Signal only for unrelated matters, Opp. at 21, is contradicted by witness testimony (Ex. 33 at 364:2-7), contradicted by timing (Opp. at 21, Garafalo Decl. Ex. 57, 9/25/25 Abel Dep. Tr. 78:22-79:6), contradicted by the shift of attorney communications to Signal (Ex. 29), and contradicted by the complete absence of messages from the app during the relevant window. Abel cannot escape spoliation sanctions through speculation that evaporates under scrutiny.

### C. Abel's Destroyed Signal Messages Are Highly Relevant and Not Cumulative

Abel argues that even if Signal messages existed and were deleted, they would be merely "cumulative" of other evidence showing Jonesworks was excluded from the PR campaign. Opp. at 23. This fundamentally misunderstands the law at issue and the relevance of the destroyed evidence. Abel's own cited authority confirms that spoliation turns on whether evidence was lost or destroyed, not on whether additional proof might have supplemented existing evidence. *See Khaldei*, 961 F. Supp. 2d at 569-70 (spoliation doctrine "predicated on evidence actually exist[ing] and [being] destroyed" and no sanctions warranted where evidence "has not in fact been destroyed" and remains available for inspection). Abel's reliance on "cumulative evidence" cases is thus misplaced. Opp. 23. None of the authorities she cites for that contention concern spoliation or sanctions, and, of course, none stand for the proposition that a party may withhold or spoliate relevant documents in discovery simply because they may be "cumulative".[3]

Abel's indemnification claim turns on whether she "conducted the actions at issue in the Lively Complaint in the course of her employment at Jonesworks and at the direction of

---

[3] Abel incorrectly conflates admissibility under Rule 403 with the standard for spoliation. Of course, Rule 403 does not address spoliation and, in any event, courts have recognized that the loss of even "cumulative" evidence may "still cause[] substantive prejudice to the innocent plaintiff because 'Plaintiff's case against Defendants is weaker when it cannot present the overwhelming quality of evidence it otherwise would have to support its case.'" *Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)).

6

Jonesworks." ECF No. 852 at 27. The destroyed Signal messages would show she did not. They would show deliberate concealment: Abel's choice to use Signal rather than normal business channels indicates she knew she lacked authority and sought to hide her conduct from Jones. They would show decision-making by Abel, not Jones or Jonesworks: the content would depict Abel alone setting strategy, coordinating with Nathan and Wallace, and directing the campaign without Jones's knowledge or approval. *See* ECF No. 1050 at 19-24 (discussing disputed facts bearing on whether Abel acted within the scope of her employment, including evidence that she operated independently of Jonesworks, excluded Jones from the PR strategy, and coordinated campaign activity without Jonesworks' knowledge or authorization). And they would show personal benefit: the messages may reveal Abel's conspiracy to leave Jonesworks, take the Wayfarer account, and continue working with Nathan—evidence that she acted for herself, not for the company. *Id.* This evidence goes to the heart of whether Abel was operating within the scope of her employment. *Id.* Abel's use of Signal to operate independent of the Jonesworks platform and thus hide her activities from Jones is powerful evidence that she was not.

Moreover, Abel's "cumulative" argument is inconsistent with her own litigation position. Abel seeks summary judgment on indemnification by contending that she acted within the scope of her employment and with Jonesworks' knowledge and authorization, ECF No. 945, yet she simultaneously dismisses evidence showing Jones was excluded from her actions as supposedly "cumulative." These positions cannot be reconciled. If Abel genuinely acted with Jones's awareness and direction, then communications demonstrating concealment, circumvention of Jones, or unilateral decision-making would be uniquely probative—not cumulative—of whether Abel's indemnification theory is false. Abel cannot both assert company-sanctioned conduct

7

warranting summary judgment and argue that evidence of concealment and exclusion adds nothing to the record.

The existing emails and text messages produced in this litigation show that Jones was excluded from the Wayfarer PR strategy. ECF No. 1050 at 23-24. The Signal messages would have shown how and why. They would have revealed that Abel consciously hid her actions from her employer, that she coordinated strategy that contradicted Jones's directives, and that she aligned herself with Wayfarer's interests rather than those of Jonesworks. *Judith M. v. Sisters of Charity Hosp.*, 715 N.E.2d 95, 96 (N.Y. 1999); *see also Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979) (factors include whether the specific act was one that the employer could reasonably have anticipated); ECF No. 1050 at 18-25 (collecting cases showing the factors courts consider in deciding whether an employee was acting within the scope of her employment for indemnification purposes). Those facts bear directly on whether Abel acted within the scope of her employment—the central issue in her indemnification claim. *Id.* The Signal messages would also show that Abel affirmatively chose to use an ephemeral messaging platform to coordinate work for Jones's own client behind Jones's back. This goes directly to Abel's state of mind, her intent to conceal her activities, and whether she was acting within or outside the scope of her employment. *Id.*

D. **Jonesworks Has Established All Elements for Sanctions Under Rule 37(e)(2)**

Abel applies the four-factor test from *Charlestown Capital Advisors* but fails to meaningfully address what Jonesworks showed in its Motion—i.e., how the facts here readily satisfy each factor and establish Abel's intent to deprive required under Rule 37(e)(2). 337 F.R.D. 47, 67 (S.D.N.Y. 2020). The test requires: "(1) evidence once existed that could fairly be supposed to have been material…; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve

the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith." *Id.* Each factor is readily established here.[4]

As to the first factor—whether evidence once existed that could fairly be supposed to have been material—the answer is yes. ▮▮▮▮▮▮▮▮▮▮. Ex. 29 at 5-6. She ▮▮▮▮▮▮▮▮▮▮. *Id.* She cannot credibly deny she participated in these threads; she ▮▮▮▮▮▮▮▮▮▮ Ex. 3, 9/26/25 Abel Dep. Tr. at 250:17-252:2. And the materiality of these messages to Abel's indemnification claim is obvious: they would show that Abel acted outside the scope of her employment, that Jones was not involved in the campaign, and that Abel deliberately sought to conceal her activities from her employer by using an ephemeral platform. *See* ECF No. 1050 at 18-24 (discussing factors courts consider in determining whether an employee is entitled to indemnification). They would also show that Abel was acting in her own self-interest and adverse to Jonesworks, as continued use of Signal to coordinate Wayfarer-related activity would reflect a pattern of unilateral, unauthorized conduct rather than an isolated lapse. *Id.* Because Abel bears the burden of establishing that any liability arose from actions taken on behalf of—and for the benefit of—Jonesworks, evidence showing that she acted independently, in her own interest, or against Jonesworks' interests is directly relevant to her indemnification claim.

The second factor—whether Abel engaged in an affirmative act causing the evidence to be lost—is equally clear. Signal does not auto-delete messages by default, the auto-delete feature

---

[4] Abel's contention that Jonesworks must prove the contents of the spoliated messages misstates the law. Opp. at 20–24. A party seeking spoliation sanctions is not required to reconstruct or prove the substance of evidence that was destroyed as destruction itself forecloses such proof and permits a reasonable inference of prejudice. *See Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) ("[N]either Apple nor the Court may ever know the contents of any destroyed Samsung emails, [but] the fact that the emails of key Samsung witnesses were among those destroyed permits the reasonable inference that Apple was prejudiced by Samsung's spoliation.").

must be manually enabled. Opp. at 14 ("[T]o the extent Signal was used, the participants had Signal set on its auto-delete feature.") (citing exhibits). This means Abel and the other Defendants could only have lost these messages because they affirmatively enabled Signal's disappearing-messages setting. This was a conscious choice to ensure communications would not be preserved, not a passive failure to act.

As to the third factor—whether Abel knew or should have known of her preservation duty—Abel admits she ███████████████████████████████████████ Ex. 31 at No. 23. ███████████████████████ ███████████████████████ Ex. 29 at 5-6; Ex. 30 at 7-8. There can be no serious dispute that Abel was on notice of her obligation to preserve relevant communications when she chose to use Signal's auto-delete feature.

Finally, Abel's conduct reveals bad faith. ███████████████████████████ strains credulity given the documentary evidence showing ███████████████████ ███████████████████. And her purported justification—that Signal was chosen for security reasons to protect against "hackers and aggressive media players," (Opp. at 29)—does not explain why the auto-delete feature was necessary, particularly when Abel knew she had a duty to preserve these communications for anticipated litigation. The far more plausible explanation is that Abel and her co-conspirators chose Signal precisely because it would make their coordination disappear without a trace. The Court should therefore impose sanctions under Rule 37(e)(2), including an adverse inference and preclusion as requested.

## CONCLUSION

For the foregoing reasons, Jonesworks LLC respectfully requests that the Court enter an order granting Jonesworks' motion for Rule 37(e) sanctions in its entirety.

Dated: December 8, 2025

By: /s/ Kristin Tahler

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
Morgan L. Anastasio
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com
morgananastasio@quinnemanuel.com

Nicholas Inns (*pro hac vice*)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Jonesworks LLC*