UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

BLAKE LIVELY,

        Plaintiff,

   -v-

WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,

        Defendants.

_____

JENNIFER ABEL,

        Third-Party Plaintiff,

   -v-

JONESWORKS LLC,

        Third-Party Defendant.

Case No. 1:24-cv-10049-LJL
(consolidated with 1:25-cv-00449-LJL)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THIRD-PARTY PLAINTIFF JENNIFER ABEL'S MOTION FOR CONDITIONAL SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT............................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.    THE RECORD DEMONSTRATES THAT JONESWORKS SHOULD INDEMNIFY ABEL ............................................................................................. 3

        a.  Abel Acted Within the Scope of her Employment for Jonesworks ................ 3

        b.  Jonesworks' Reliance on Allegations in Lively's Pleadings is Misplaced ....... 5

        c.  The Expert Report Supports the Motion ........................................................... 6

        d.  Abel's Public Relations Actions were Foreseeable ........................................... 7

        e.  Jonesworks Identifies No Post-Date Conduct Warranting Any Limitation of Abel's Motion for Conditional Summary Judgment .................................... 8

    II.   JONESWORKS' IMPROPER RULE 56.1 RESPONSE........................................ 8

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baity v. Kralik*,
  51 F. Supp. 3d 414 (S.D.N.Y. 2014) ........................................................................................9

*Ball v. Marriott Int'l, Inc.*,
  627 F. Supp. 3d 296 (S.D.N.Y. 2022) .....................................................................................10

*Bellis v. New York City Dep't of Educ.*,
  2024 WL 1177232 (S.D.N.Y. Mar. 19, 2024) ..........................................................................9

*Capobianco v. City of New York*,
  422 F.3d 47 (2d Cir. 2005) .......................................................................................................6

*Caro Cap., LLC v. Koch*,
  653 F. Supp. 3d 108 (S.D.N.Y. 2023) .....................................................................................10

*Chen v. New Trend Apparel, Inc.*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014) ..........................................................................................5

*Davis v. Mount Saint Mary's Coll.*,
  2012 WL 12883657 (S.D.N.Y. June 28, 2012) *aff'd sub nom. Davis v. Mount St. Mary Coll.*,
  515 F. App'x 26 (2d Cir. 2013) ..............................................................................................10

*Glowczenski v. Taser Int'l Inc.*,
  2010 WL 1957289 (E.D.N.Y. May 13, 2010) ..........................................................................6

*Goldstick v. The Hartford, Inc.*,
  2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) ..........................................................................9

*Hartley v. Rubio*,
  785 F. Supp. 2d 165 (S.D.N.Y. 2011) ......................................................................................9

*Heiden v. New York City Health & Hosps. Corp.*,
  2023 WL 171888 (S.D.N.Y. Jan. 11, 2023) ...........................................................................10

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001) .......................................................................................................8

*In Re Adelphia Commc'ns Corp.*,
  323 B.R.345 (Bankr. S.D.N.Y. 2005) ......................................................................................6

*Pizzuto v. Cnty. of Nassau*,
  239 F. Supp. 2d 301 (E.D.N.Y. 2003) ......................................................................................3

*Riviello v. Waldron*,
  47 N.Y.2d 297 (1979) ................................................................................................... 3

*Tripathy v. McCloskey*,
  2024 WL 2135623 (S.D.N.Y. May 13, 2024) ............................................................ 10

*Varga v. Flowcon, Inc.*,
  2025 WL 2774261 (S.D.N.Y. Sept. 29, 2025) ............................................................. 6

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ........................................................................................... 5

*Williams v. City of New York*,
  916 F. Supp. 2d 235 (E.D.N.Y. 2012) .......................................................................... 5

## **Rules**

Fed. R. Civ. P. 56(c) ............................................................................................................ 8

**P**RELIMINARY **S**TATEMENT

Regardless of how Stephanie Jones tries to minimize her role, Jonesworks cannot sidestep that: (a) Jonesworks was contractually obligated to perform public relations services for the Wayfarer Clients; (b) Jonesworks employed Abel as its Vice President of Talent and as the "point person" for the Wayfarer Clients; (c) Jones knew of Abel's activities that are the subject of Lively's Claims; and (d) Jonesworks was handsomely paid by the Wayfarer Clients for the work Abel performed for them (without any commission being paid to Abel, as is standard).[1]

Jonesworks' assertion that it maintains an "ethos of positive publicity" is refuted by her former employees[2] and her own words. In June 2024, Stephanie Jones instructed Jonesworks staff to "█████████████████████" about Lively, and the staff confirmed for Jones that they would "█████████████████████████████" (Reply Fritz Decl., Ex. 2). Jones testified: "█████████████████████████████████" and that Jonesworks would do "█████████████████████████" (Fritz Decl., Ex. C, at 84:21 – 85:19). Ultimately, Jones did whatever Lively needed her to do (betray her own clients), making **Jones** the "double agent" (Opp. Br. at 2) and foolishly increasing Jonesworks' own potential liability.

Jonesworks' opposition ignores Lively's verified interrogatory responses, in which Lively identified the specific actions, emails, and text messages that form the basis of her claims against Abel.[3] Citing Lively's sworn responses, Abel's motion demonstrates that her actions consist of monitoring negative publicity of Baldoni and potentially garnering positive publicity for him – actions that fall within the scope of Abel's employment. Jonesworks does not cite any evidence,

---

[1] Defined terms not defined herein have the same meaning as in Abel's brief dated Nov. 11, 2025, Dkt. 946.
[2] How Stephanie Jones Became One of Celebrity PR's Most Polarizing Names - Business Insider; https://www.glassdoor.com/Reviews/JONESWORKS-Reviews-E2975882.htm ("Many reviews highlight a challenging management style, particularly involving the CEO, Stephanie Jones. The feedback describes a toxic and controlling atmosphere with verbal abuse, high turnover, and lack of HR support.").
[3] *See* Jonesworks LLC's Memorandum of Law Opposing Jennifer Abel's Conditional Motion for Summary Judgment ("Opp. Br.").

1

*because there is none*, showing that Abel placed, "boosted" or "amplified" any negative content about Lively. Instead, Jonesworks: (a) inadequately hinges its opposition on conclusory *allegations* from Lively's Second Amended Complaint that Abel "participated in a sophisticated press and digital campaign designed to retaliate" against Lively; and (b) then contends that the scope of Abel's employment did not include such "retaliatory" activity. However, Jonesworks cannot defeat a motion for summary judgment by resting solely on pleadings because uncorroborated allegations are insufficient to create a triable issue of fact.

Furthermore, Jonesworks was aware, in real-time, of Abel's public relations activities because *Jones was surreptitiously monitoring Abel's phone*, as evidenced by text messages involving Abel (but no other Jonesworks employee) and produced herein by Jonesworks (stamped as "JONESWORKS"). (Dkt. 1056-58; Dkt. 1056-63).

Highlighting its desperation, Jonesworks mischaracterizes the defendants' expert report to provide an opinion which it unambiguously does not. Specifically, citing the expert report's reference to *Lively's allegation* that a retaliatory "smear campaign" is not standard public relations, Jonesworks disingenuously contends that the expert concluded that Abel's actions were not ordinary public relations. In other words, even though the expert clearly refers to Lively's "claims" and what is "alleged" in her Second Amended Complaint, Jonesworks misrepresents that such statements are the expert's opinions. In any event, Jonesworks has now "opened the door" and waived any objection to the admissibility of the expert report. As such, the Court should consider the expert's unrebutted opinions that the steps outlined for the Wayfarer Clients in the "Scenario Planning" document (so heavily relied upon by Lively) are consistent with standard, *reactive* crisis management practices and that any artificial *proactive* campaign to discredit Lively would have taken weeks or months to effectuate (not mere days, as she alleges).

**ARGUMENT**

I. **THE RECORD DEMONSTRATES THAT JONESWORKS SHOULD INDEMNIFY ABEL**

    a. **Abel Acted Within the Scope of her Employment for Jonesworks**

"In determining whether an employee's tortious acts have been committed within the scope of his or her employment, the court weighs the following factors: 'the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.'" *Pizzuto v. Cnty. of Nassau*, 239 F. Supp. 2d 301, 313 (E.D.N.Y. 2003) (*quoting Riviello v. Waldron*, 47 N.Y.2d 297, 301, 391 (1979)). Where, as here, no conflicting evidence exists as to the essential facts, "a court may make a determination as a matter of law." *Pizzuto*, 239 F. Supp. 2d at 313.

Jonesworks admits that it is a well-known *public relations* firm, that it hired Abel in 2020, and that it later promoted her to Vice President of Talent. (Rule 56.1 Response, ¶¶ 9-10, 16). Abel served in this role from November 2021 through August 21, 2024. (*Id.*, ¶¶ 15-16, 79). The conduct at issue in Lively's Claims occurred between the end of July 2024 and the middle of August 2024. Jonesworks admits that, during such period, Abel ██████████████████ ████████████ (Rule 56.1 Response, ¶ 39), Abel performed public relations services for the Wayfarer Clients (*Id.*, ¶¶ 55-56, 62, 72), and "Abel served as the *primary point person* for Wayfarer and Baldoni…." (*Id.*, ¶ 40 (emphasis added)).

Jonesworks acknowledges that under the terms of its Wayfarer Agreement, the Wayfarer Clients retained Jonesworks "as its exclusive public relations counsel to provide strategic communications services…." (*Id.*, ¶ 22). Among other things, Jonesworks agreed to:

3

- "Assist in developing, writing and updating communication materials related to all press outreach";
- "Manage media and press communications";
- "Advise on any marketing and campaign strategies to ensure … the strongest press angles [are] aligned";
- "Conduct media monitoring and competitor tracking for industry press"; and
- "Create monthly clip books and activity reports that detail … media impressions".

(*Id*., ¶ 23). According to Jones, Jonesworks would do "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"

(*Id*., ¶ 30). The services provided by Jonesworks were "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" (*Id*.).

Jonesworks assisted Baldoni with "▬▬▬▬▬▬" and "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" (*Id*., ¶¶ 35 – 36). In exchange for these services, including the work performed by Abel, the Wayfarer Clients paid Jonesworks ▬▬▬ per month – payments which continued throughout the relevant time period (August 2024). (*Id*., ¶¶ 26 – 27, 45).

Jonesworks does not dispute that: (a) Abel advised Jones ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id*., ¶ 46); (b) Abel managed media and press communications for the Wayfarer Clients (*Id*., ¶¶ 55-56); and (c) Abel communicated with Jonesworks personnel about ▬▬▬▬▬▬▬▬ and TikTok videos (*Id*., ¶¶ 62, 72). Jonesworks also concedes that Jones knew that Abel was working with Baldoni on his press tour in connection with the premiere of the Film in late July/early August 2024, amid reports of strife between Baldoni and Lively. (*Id*., ¶ 94). Furthermore, Jonesworks admits that Abel kept her in the loop for all press strategy. (*Id*., ¶ 96). During this period, Jones assured Baldoni that she had a plan, and that she had "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" (*Id*., ¶ 95). Jones also notified Baldoni that ▬▬▬▬▬▬ ▬▬▬▬▬ (*Id*.). Jonesworks admits Jones took credit for "successfully manag[ing] every crisis for Justin without any negative press coming to light." (*Id*., ¶ 111). Jones further provided the Wayfarer Clients with a strategy for dealing with the "▬▬▬▬▬▬▬" which included "▬▬▬▬

4

██████████████████████████████████████████████████████

████████████████████████████" and make "████████████████████

██████████" (*Id.*, ¶ 110).  Contrary to Jonesworks' theory that Abel went rogue, Jones's own emails show that she had assigned *multiple employees* ("Team Baldoni") to work on the Wayfarer Clients' account during Summer of 2024. (Dkt. 942-26).

### b. Jonesworks' Reliance on Allegations in Lively's Pleadings is Misplaced

In response to a motion for summary judgment, the non-moving party cannot simply rest on conclusory allegations made in a pleading.  *See Williams v. City of New York*, 916 F. Supp. 2d 235, 240 (E.D.N.Y. 2012) (a non-moving party may not defeat summary judgment resting "upon the mere allegations or denials" asserted in a pleading); *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 430–31 (S.D.N.Y. 2014) (same).  To defeat a motion for summary judgment, the non-moving party must point to evidence in the record demonstrating either the existence of a material triable issue of fact or that summary judgment is inappropriate as a matter of law. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("When the motion is made, we go beyond the paper allegations of the pleadings ….").

Here, Jonesworks insufficiently cites the conclusory *allegations* from Lively's pleading as "proof" that Abel's actions fell outside of the scope of her employment. (Opp. Br., p. 16). Jonesworks fails to discuss the evidence cited in Lively's interrogatory responses, which evidence Abel addresses in her motion, and which evidence proves that Abel's public relations activities were within the scope of her employment. Indeed, the case law cited by Jonesworks belies its argument, acknowledging that "in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or speculation" and that "[t]o defeat summary judgment, the non-moving party must set forth significant, probative evidence

5

on which a reasonable factfinder could decide in its favor." *Varga v. Flowcon, Inc.*, No. 22 Civ. 7477 (ER), 2025 WL 2774261, at *12 (S.D.N.Y. Sept. 29, 2025) (internal citations and quotations omitted).[4]

### c. The Expert Report Supports the Motion

Jonesworks tries to misdirect the Court by contending the Expert Report of James Haggerty (the "Expert Report") undermines the summary judgment motion. Specifically, Jonesworks' cites the Expert Report's summary of Lively's *allegations* and then Jonesworks misrepresents that such recitation constitutes the expert's *opinion*. (Opp. Br. at p. 1, 13). Now that Jonesworks has opened the door, the Court should consider the unrebutted findings of the Expert Report. *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (finding "defendants waived any objections to the admissibility of the reports by offering them themselves."); *Glowczenski v. Taser Int'l Inc.*, No. CV04-4052(WDW), 2010 WL 1957289, at *3 (E.D.N.Y. May 13, 2010) (finding party may rely on expert report introduced by opposing side).

As explained in the Expert Report: "The 'Scope of Work' agreement prepared by TAG, and the subsequent 'Scenario Planning' document, are in keeping with standard practice in the crisis communications field as evidence of <u>reactive</u> crisis planning." (Reply Fritz Decl., Ex. 1, p. 11). Notably, the Scope of Work confirms that TAG "will work closely **with Jonesworks**…." (*Id.*, Ex. 1, ex. B thereto) (emphasis added). Mr. Haggerty also opined: "The hiring of a crisis communications consultant in the face of perceived reputational threats should not be considered in any way evidence of a negative, or nefarious, intent. Rather, it is well established that such a

---

[4] Jonesworks' reliance on *In Re Adelphia Commc'ns Corp.*, 323 B.R.345 (Bankr. S.D.N.Y. 2005) is misplaced. In that Chapter 11 adversary proceeding, the Court merely addressed whether a "hung" jury in a criminal case entitled the defendant to certain indemnification under applicable statutes. Likewise, in *Varga*, 2025 WL 2774261, the defendant did not seek a *conditional* summary judgment on its entitlement to common law indemnification, as is the case here.

retention is entirely acceptable, appropriate, and prudent for organizations, brands (personal or corporate), and high-profile individuals seeking to mitigate reputational risk, particularly in the face of threats." (*Id.*, p. 31).[5]  In short, the Expert Report confirms that Abel's activities were standard public relations steps and fall squarely within the scope of her employment.

### d. Abel's Public Relations Actions were Foreseeable

Jonesworks further argues that it did not foresee the conduct at issue and/or the conduct was not a natural incident of Abel's employment. (Opp. Br. at p. 21 – 23).  However, Jonesworks neither specifically addresses the conduct identified by Lively in her interrogatory responses nor cites any evidence demonstrating that such conduct was unforeseeable or not a natural incident of Abel's employment. The record demonstrates that Abel's conduct was not only foreseeable but also that *Jones played an integral role* therein.  In fact, when Jones was notified about growing tension between Lively and Baldoni, Jones told her team, including Abel, that they would "▮▮▮▮▮▮" and directed her team to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮" about Lively. (Reply Fritz Decl., Ex. 2 (Jonesworks 00040068)). Jonesworks personnel responded to Jones's instruction stating: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.*). (emphasis added).  Jones then ▮▮▮▮ her team. (*Id.*). Stated differently, *Jones instructed Jonesworks' employees to* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Jonesworks seemingly argues that basic public relations work – responding to press inquiries, monitoring media coverage, and coordinating messaging – is beyond the scope of Abel's employment. (Opp. Br. at p. 22).  Specifically, Jonesworks claims Abel "planted" a

---

[5] Mr. Haggerty also states that the "social manipulation" plan alleged by Lively could not have been implemented merely within days (as she alleges): "The growth in media and social media coverage negative to Ms. Lively, starting in August 2024, is unlikely to have been caused by the work done by the crisis communications consultants hired by the Wayfarer parties, given the short timeframe." (*Id.*, p. 32).

7

negative story (which Jonesworks concedes via silence was never published and, in any event, placing stories is standard public relations), identified social media content that was hostile to Lively (which Jones expressly ███████████), suppressed a report of Baldoni's alleged misconduct (standard public relations) and "worked with" TAG to manipulate content (without citing evidence any manipulation occurred, let alone by Abel). In sum, according to Jonesworks, the very work that Jonesworks contracted to do for the Wayfarer Clients and which the Expert Report confirms is standard public relations activities are beyond the scope of Abel's employment. The Court can and should reject that notion without a trial.

> e. **Jonesworks Identifies No Post-Date Conduct Warranting Any Limitation of Abel's Motion for Conditional Summary Judgment**

Jonesworks argues that summary judgment is unavailable for Abel's post-termination conduct. (Opp. Br. at p. 25). However, Jonesworks does not identify any such post-termination conduct. Instead, Jonesworks meekly refers to Lively's *allegation* that the so-called "retaliation" is ongoing. At most, Lively's interrogatory responses state that Abel ███████████ ███████████. (Dkt. 942-6, p. 23). Jonesworks does not explain how that is actionable.

## II.   JONESWORKS' IMPROPER RULE 56.1 RESPONSE

Fed. R. Civ. P. 56(c)(1)(A) requires a party opposing a summary judgment motion to cite particular facts in the record in order to demonstrate that a genuine issue of material fact exists for trial. Each of these responses "must be followed by citation to evidence which would be admissible … as required by Fed. R. Civ. P. 56(c)." Otherwise, it will be deemed admitted for purposes of the motion. (Local Civ. Rule 56.1(c)). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

8

Courts routinely reject conclusory non-responsive answers and objections that "simply advocate for a different spin on otherwise uncontroverted facts." *Hartley v. Rubio*, 785 F. Supp. 2d 165, 171 n.1 (S.D.N.Y. 2011); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of Plaintiff's purported denials – and a number of his admissions – improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts.")

Jonesworks' Rule 56.1 Response and Counterstatement is a 64-page smokescreen littered with improper qualifications on uncontested facts, feigned "disputed" or "partially disputed" facts without any contrary support, improper argument, and newly asserted facts irrelevant to Abel's motion. In response to certain facts it cannot dispute, Jonesworks tries to limit its response by writing, for instance: "undisputed as to the content of Jones' referenced testimony."[6] In other instances, Jonesworks attaches long narratives of irrelevant information and argument to paragraphs it should otherwise admit.[7] For example, in response to Abel's assertion that the Wayfarer Clients from May 2020 to August 2024 paid fees to Jonesworks, Jonesworks responds "Undisputed" but then launches into a ten-line response seeking to inject its own spin on an incontrovertible fact. (Rule 56.1 Response, ¶ 45); *Bellis v. New York City Dep't of Educ.*, No. 21-CV-3282 (JMF), 2024 WL 1177232, at *2 (S.D.N.Y. Mar. 19, 2024) (rejecting response, *inter alia*, "acknowledging a fact as undisputed but layering unsupported narrative on top of that acknowledgment."). These transparent attempts to obfuscate Abel's factual assertions, adding page after page of argument, are improper. *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (addition of "argumentative and often lengthy narrative" in order "to 'spin' the impact of the admissions plaintiff has been compelled to

---

[6] *See* Rule 56.1 Response, ¶¶ 27-31, 35-36
[7] *See, e.g.*, Rule 56.1 Response ¶¶ 43, 45, 47-48, 49, 57, 83-84, 112-113

9

make" was improper); *Tripathy v. McCloskey*, No. 21-CV-6584 (CS), 2024 WL 2135623, at *2 (S.D.N.Y. May 13, 2024) (Local Rule 56.1 response "presents no occasion for context, argument, semantic quibbles, opinions or conclusions."); *Heiden v. New York City Health & Hosps. Corp.*, No. 20-CV-10288 (LJL), 2023 WL 171888, at *2, n. 2 (S.D.N.Y. Jan. 11, 2023) (Liman, J.) ("To the extent that Plaintiff has made assertions that are improper—*e.g.*, if they lack support in admissible evidence, advance improper legal argument or conclusory assertions, or are otherwise immaterial—the Court will disregard such statements.")

Jonesworks also purports to cite "evidence" that does not actually controvert Abel's assertions.[8] *See Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 115, n.2 (S.D.N.Y. 2023) (Liman, J.) ("Assertions that certain facts are 'disputed' without citation to admissible evidence need not be, and are not, accepted by this Court."); *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 308, n. 2 (S.D.N.Y. 2022) (Liman, J.) (deeming admitted facts plaintiff failed to properly dispute). In some instances, Jonesworks disputes facts, but cites no evidence at all.[9] *See Davis v. Mount Saint Mary's Coll.*, No. 10-CV-5297 (CS), 2012 WL 12883657, at *1, n.1 (S.D.N.Y. June 28, 2012), *aff'd sub nom. Davis v. Mount St. Mary Coll.*, 515 F. App'x 26 (2d Cir. 2013) (finding "blanket denials of the type one would see in an answer" without "reference to admissible evidence" improper).

## CONCLUSION

For these reasons, the Court should grant Jennifer Abel conditional summary judgment against Jonesworks on the Second Cause of Action in her Amended Third-Party Complaint.

---

[8] *See, e.g.*, Rule 56.1 Response ¶¶ 34, 42, 48, 51, 67, 81, 89, 106
[9] *See, e.g.*, Rule 56.1 Response, ¶¶ 90

| | |
|---|---|
| Dated: December 12, 2025 | MEISTER SEELIG & FEIN PLLC |
| | |
| | ‎ /s/ Kevin Fritz_____ |
| | Mitchell Schuster |
| | Kevin Fritz |
| | David A. Gold |
| | 125 Park Avenue, 7th Floor |
| | New York, NY 10017 |
| | Tel: (212) 655-3500 |
| | Email: ms@msf-law.com |
| |        kaf@msf-law.com |
| |        dag@msf-law.com |
| | |
| | LINER FREEDMAN TAITELMAN + COOLEY, LLP |
| | Bryan J. Freedman (*pro hac vice*) |
| | Ellyn S. Garofalo (*pro hac vice*) |
| | 1801 Century Park West, 5th Floor |
| | Los Angeles, CA 90067 |
| | Tel: (310) 201-0005 |
| | Email: bfreedman@lftcllp.com |
| |        egarofalo@lftcllp.com |
| | |
| | SHAPIRO ARATO BACH LLP |
| | Alexandra A.E. Shapiro |
| | Jonathan Bach |
| | Alice Buttrick |
| | 1140 Avenue of the Americas, 17th Floor |
| | New York, NY 10036 |
| | Tel: (212) 257-4881 |
| | Email: ashapiro@shapiroarato.com |
| |        jbach@shapiroarato.com |
| |        abuttrick@shapiroarato.com |
| | |
| | AHOURAIAN LAW |
| | Mitra Ahouraian (*pro hac vice*) |
| | 2029 Century Park East, 4th Floor |
| | Los Angeles, CA 90067 |
| | Tel. (310) 376-7878 |
| | Email: mitra@ahouraianlaw.com |