# WILLKIE FARR & GALLAGHER LLP

2029 Century Park East
Los Angeles, CA 90067-2905
Tel: 310 855 3000
Fax: 310 855 3099

December 19, 2025

**VIA ECF**

Hon. Lewis J. Liman
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Liman:

Plaintiff Blake Lively respectfully moves for an order (1) imposing sanctions on two of Defendants' attorneys, Bryan Freedman and Kevin Fritz, for conduct that impeded, delayed, and frustrated the fair examination of one of their designated experts, Nicole Alexander, during her deposition on December 15, 2025 ("Deposition"); (2) compelling Ms. Alexander to sit for an additional deposition of up to one hour ("Supplemental Deposition") to answer questions that Mr. Fritz improperly instructed her not to answer;[1] (3) assigning all reasonable fees and costs for the Supplemental Deposition to opposing counsel whose conduct necessitated this relief; and (4) awarding Plaintiff half of its reasonable expenses and attorneys' fees incurred in connection with the Deposition and this Motion.

Opposing counsel's improper behavior began less than twenty minutes into the Deposition. Ms. Alexander began to testify about a "30-minute call" that occurred in August 2025—during a "vetting process" and *at least a month prior* to her engagement as an expert in the matter—that she had with two attorneys she could not identify who "were looking for someone with" her "background to come on as an expert witness" in this case ("Pre-Engagement Conversation").

> Q What do you recall about that call?
> A It was a --
> **MR. FRITZ: Hold on. I would just instruct you not to disclose the substance of the conversation.**
> MS. GOVERNSKI: She wasn't engaged at that time.
> **MR. FRITZ: Attorney-client privilege. I understand your position.**
> MS. GOVERNSKI: Q Are you following your counsel's advise [*sic*] not to answer questions?
> **MR. FRITZ: She is.**
> THE WITNESS: Yes.
> MS. GOVERNSKI: Ms. Alexander, at the time you had this conversation, had you ever spoken with any of these individuals before?
> A No.

---

[1] Ms. Lively respectfully asks the Court to limit the Supplemental Deposition to questioning by her counsel, so Defendants do not inure benefit from their own misconduct.

Q Did you understand that they were speaking with a number of individuals, you called it part of a vetting process?
**MR. FRITZ: Same instruction. To the extent that your answer would require you to disclose the substance of your conversation, I would instruct you not to answer that.**
BY MS. GOVERNSKI: Q Are you following your counsel's instruction not to answer?
A Yes.
Q Well, you mentioned --
**MR. FRITZ: Just going forward, she's always going to follow my instruction not to answer, so...**
MS. GOVERNSKI: Can you articulate your basis for instructing her not to answer?
**MR. FREEDMAN: Can we stop with the speaking objections?**
**MR. FRITZ: Sorry, I don't know who that is.**
**MR. FREEDMAN: That's Bryan Freedman.**
MS. GOVERNSKI: Mr. Freedman, you're not entered in this -- in this, so you're --
**MR. FREEDMAN: You know what, you will need to stop with the -- you'll need to stop with the speaking objections.**
MS. GOVERNSKI: It's my deposition.
**MR. FREEDMAN: Yeah, that's right, and you're improperly handling it and you don't know what you're doing or how to practice law. So stop with your speaking objections.**
MS. GOVERNSKI: Counsel, please mute Mr. Freedman who has not entered an appearance in this deposition. And I am not giving speaking objections, you're instructing your own counsel not to give speaking objections. It's my deposition.
**MR. FREEDMAN: No, you're the one giving speaking objections, as your mouth is moving right now.**
MS. GOVERNSKI: Can we please -- Mr. Fritz, can you please control your co-counsel or I'm going to have to seek relief from the Court.
MR. FRITZ: I mean, he's not incorrect. You're, like, trying to engage –
(Cross talk)
MS. GOVERNSKI: I'm asking to understand -- I'm asking, Mr. Fritz, you to explain the basis for your objection so I can understand what your perception is on the line on privilege.
MR. FRITZ: You have it.
MS. GOVERNSKI: No, I would like you to explain to me -- I am asking you to explain to me your line on privilege when Ms. Alexander said she was not engaged at that time.
MR. FRITZ: I'm not going to engage in the debate during the deposition.

Ex. 1 at 16:17-28:15, 65:17-66:6 (emphasis added). Mr. Fritz continued to instruct Ms. Alexander not to answer additional questions about the Pre-Engagement Conversation. *Id.*[2] He asserted frequent speaking objections, such as by: interrupting to ask if the questioning attorney wanted Ms. Alexander to "read" or "review" the materials cited in her report before answering questions about her current recollection or

---

[2] The transcript does not support Mr. Fritz's characterization of the privilege exchange to the Court (Ex. 2 at 14), nor his representation that counsel for Ms. Lively "gratuitously" asked about the "illness" that necessitated rescheduling the Deposition. *Compare* Ex. 2 at 14:10-15:1, *with* Ex. 1 at 15:24-17:6 ("**Q**. You understand we originally were supposed to meet last week, and I understand that you came down with a fever. Has your fever resolved at this point? A. It was a stomach bug, but yes, it has. **Q**. Is there any reason that the stomach bug would prevent you from giving truthful and complete testimony today? A. None.").

understanding of them (*id*. at 59:4-20; 93:13-94:2; 135:3-144:9); interjecting commentary so *he* could "understand" the questions and to demand advice or clarifications for which the witness did not ask or need (*id*. at 99:12-23; 120:13-20; 136:23-139:11; 184:16-185:5); and instructing the witness that she could "answer *again*" (*id*. at 77:19-20; 126:13-14; 130:17-18; 133:20-21; 149:5-6). Mr. Fritz demanded that "*we're going to take a break now*" in the midst of a line of questioning and refused to stop talking until he got his way. *Id*. at 108:15-112:9. Mr. Fritz ignored repeated requests to desist from making speaking objections, which necessitated judicial intervention. *Id*. at 136:25-139:6; 185:1-5.

Because this behavior is part of an ongoing pattern of deposition misconduct, the Court should sanction Mr. Freedman and Mr. Fritz for disrupting a fair examination with speaking objections, disparaging comments, and improper privilege objections. *See* Rules 30(c)(2) & 30(d)(2); *Antolini v. McCloskey*, 2021 WL 5411176, at *12 (S.D.N.Y. Nov. 19, 2021), *adopted*, 2022 WL 1689331 (S.D.N.Y. May 26, 2022); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 309 (S.D.N.Y. 2019); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 110, 124 (S.D.N.Y. 2018); *In re Omeprazole Pat. Litig.*, 227 F.R.D. 227, 229, 231 (S.D.N.Y. 2005); *Morales v. Zondo, Inc.*, 204 F.R.D. 50, 57–58 (S.D.N.Y. 2001); *see also Junger v. Singh*, 514 F. Supp. 3d 579, 603 (W.D.N.Y. 2021). Mr. Fritz's instructions to Ms. Alexander about the Pre-Engagement Conversation separately are sanctionable because, by her own admission, the conversation pre-dated her retention as part of a "vetting" process by Defendants' counsel. *Higher One, Inc. v. TouchNet Info. Sys., Inc.*, 298 F.R.D. 82, 87–88 (W.D.N.Y. 2014); *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 190 (S.D.N.Y. 1988). Even if timing were not dispositive, attorney-client privilege (which is the only objection Mr. Fritz asserted in his speaking objections) does not apply to communications between counsel and a testifying expert. Ex. 1 at 18:24-28:15, 65:17-66:6; Ex. 2 at 14:10-15:14; *Heard v. Statue Cruises LLC*, 2020 WL 1285456, at *9 (S.D.N.Y. Mar. 18, 2020). If *arguendo* Mr. Fritz has preserved work product or Rule 26 privileges, they would be inapplicable to testimony about Ms. Alexander's purported expertise or any facts, data, and assumptions that the attorneys provided. *See Sec. & Exch. Comm'n v. Rio Tinto PLC*, 2021 WL 2186433, at *7 (S.D.N.Y. May 28, 2021); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 574 (2013).

This type of disruptive behavior by opposing counsel is part of an unfortunate pattern. Throughout discovery, multiple defense counsel insisted on making speaking objections (often in depositions they were not defending) and consuming time on the record to demean and orate. Ms. Lively's attorneys consistently asked opposing counsel to stop, including by letter on September 29, 2025 highlighting their "inappropriate and unprofessional behavior," such as referring to questions as "STUPID," laughing on the record, and complaining that "we cannot get a real question" that does not "provoke laughter." *See* Ex. 3. Despite attempting to resolve the issue, the conduct continued. *See* Ex. 4 at 386-394 (lengthy improper speech offered with nine minutes of questioning remaining by a member of Defendants' defense team who, again, was *not* defending the deposition).[3] Accordingly, the record amply supports the imposition of sanctions in connection with the Deposition of Ms. Alexander.

---

[3] During another expert deposition, defense counsel, Kim Zeldin, objected to questions about a declaration submitted by Ms. Lively by offering her personal opinion (again on the record) about who drafted the declaration. Ex. 5.

Respectfully submitted,

/s/ *Michael J. Gottlieb*

*Counsel for Blake Lively*

The motion for sanctions is DENIED except to the following extent: (1) Mr. Freedman is admonished for his conduct and comments during the deposition—which are reflected in their entirety above—and warned that future such conduct may be met with sanctions; and (2) by agreement of the parties, counsel for Lively shall be permitted to take an additional remote deposition of one hour of Ms. Alexander limited to questions regarding her communications with "separate counsel." *See Gavrity v. City of New York*, 2014 WL 4678027, at *5 (E.D.N.Y. Sept. 19, 2014) ("A successful [deposition] process requires Parties, attorneys, and witnesses participating in depositions to conduct themselves with civility and decency." (citation omitted)); L. Civ. R. 26.4(a) ("Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other . . . .").

To the extent that the witness invokes a privilege, counsel may inquire into and test the basis for that assertion of privilege, and counsel shall be permitted to inquire into the matters excepted from attorney work-product protection by Federal Rule of Civil Procedure 26(b)(4)(C). The deposition shall be taken at a mutually convenient time for the parties and the witness on or before January 5, 2025 (except as may otherwise be mutually agreed upon by the parties). Because counsel for the Wayfarer Parties improperly invoked attorney-client privilege, the Wayfarer Parties shall pay the costs of the court reporter and videographer for no more than one hour, as well as the reasonable attorneys' fees for one hour for one lawyer for Lively.

The Clerk of Court is respectfully directed to close the motion at Dkt. Nos. 1132 and 1133.

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

December 23, 2025