# KATSKY | KORINS LLP

605 Third Avenue New York, NY 10158   PHONE 212.953.6000   FAX 212.953.6899   www.katskykorins.com

WRITER'S DIRECT DIAL | 212.716.3390
WRITER'S DIRECT FAX | 212.202.5175
WRITER'S EMAIL | rfissell@katskykorins.com
OUR REFERENCE |

January 5, 2026

**Via ECF**

Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>Lively v. Wayfarer Studios LLC et al.</u>, No. 1:24-cv-10049 (LJL)

Dear Judge Liman:

      In accordance with the parties' agreement, so-ordered by Your Honor (ECF No. 1026), we write on behalf of nonparty Betty B Holdings, LLC ("Betty B")[1] to move for continued sealing of certain documents attached to the parties' summary judgment papers, specifically:

1. Betty B's Second Amended and Restated Limited Liability Company Agreement (the "Betty B Operating Agreement");[2] and

2. Betty B's sensitive, competitive business information contained in:

    a. two highly confidential Board Updates,[3]

    b. two years of K-1s,[4]

---

[1] Betty B is a private holding company for two operating entities, Betty Buzz, which sells premium nonalcoholic seltzers, and Betty Booze, which sells premium alcoholic seltzers. Plaintiff Blake Lively and her affiliates own a minority interest in Betty B.

[2] The Operating Agreement was submitted as Ex. 276 (ECF No. 954-272) to the Declaration of Alexandra A.E. Shapiro (ECF No. 954) in Support of the Wayfarer Parties' Motion for Summary Judgment (the "Shapiro Declaration").

[3] The Board Update, dated October 1, 2024, was submitted as Ex. 268 (ECF No. 1071-118) and the Board Update, dated May 8, 2025, was submitted as Ex. 269 (ECF No. 1071-119) to the Declaration of Michael J. Gottlieb (ECF No. 1071) in Opposition to the Wayfarer Parties' Motion for Summary Judgment (the "Gottlieb Declaration").

[4] The K-1s were submitted as Ex. 278 (ECF No. 954-274) and Ex. 279 (ECF No. 954-275) to the Shapiro Declaration.

Judge Lewis J. Liman
January 5, 2026
Page 2

       c. two pages from the deposition transcript of Betty B's 30(b)(6) witness,[5] and

       d. certain portions of Ms. Lively's expert reports.[6]

     We attempted to confer with both parties about our request. Ms. Lively does not contest our proposed sealing request. We were unable to get a response from the Wayfarer parties despite multiple attempts to reach them.

     While we understand the Court's position on the presumption of public access which attaches to "judicial documents" submitted in support of the summary judgment motions (ECF No. 1027 at 3), as this Court has recently stated, "[t]he common-law and First Amendment rights of access are not absolute." *Lohnn v. Int'l Bus. Machines Corp.*, 2022 WL 36420, at *7 (S.D.N.Y. Jan. 4, 2022) (Liman, J.). In particular, "countervailing factors" can overcome the presumption of access and warrant continued sealing or redaction of documents. *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 70 (2d Cir. 2023) ("[D]istrict court erred in failing to consider and give appropriate weight to the 'countervailing factors'" which supported sealing), *cert denied*, 144 S. Ct. 1011 (Mem) (2024).

     A commonly found countervailing factor is the prospect that public disclosure of "confidential business information" would subject a party to "financial harm." *Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming order to protect from disclosure confidential financial information) (citation and internal quotation marks omitted); *see also, e.g.*, *Bergen Brunswig Corp. v. Ivax Corp.,* 1998 WL 113976, at *3 (S.D.N.Y. Mar. 12, 1998) (collecting cases where "[p]otential damage from the release of sensitive business information has been deemed a ground for denying access to court documents."). This Court recently granted sealing of "confidential business information and the personally identifiable information of third parties" in documents submitted in connection with summary judgment motions. *Adstra, LLC v. Kinesso, LLC*, 2025 WL 1002253, at *2 (S.D.N.Y. Mar. 31, 2025) (Liman, J.); *see also Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing sealing of "specific business information and strategies" where disclosure "may provide valuable insights into a company's current business practices that a competitor would seek to exploit.") (citation and internal quotation marks omitted). Further, "[t]he privacy interests of innocent third parties should weigh heavily in a court's balancing equation" and "are a venerable common law exception to the presumption of access." *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (citing *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) & collecting cases).

     ***As to the Betty B Operating Agreement***, it contains information about the identity of the other members of Betty B. This Court already held that "the identity of unrelated non-party clients"

---

[5] These excerpts are pages 121 & 147 of the deposition transcript of Betty B's witness, which was submitted as Ex. 274 (ECF No. 954-270) to the Shapiro Declaration.

[6] These excerpts are Sections V.C., VIII., Exhibit 2 (and all subsections therein), and Appendix D (and all subsections therein) of the Expert Report of Jeffrey Kinrich, submitted as Exhibit 266 (ECF No. 1071-116) and pages 87-91 of the Expert Report of Dina Mayzlin, submitted as Exhibit 267 (ECF No. 1071-117) to the Gottlieb Declaration.

Judge Lewis J. Liman
January 5, 2026
Page 3

may be sealed. ECF No. 1027 at 7. In addition, the Agreement explains how Betty B has decided to structure and manage its business, which could "provide valuable insights into a company's current business practices that a competitor would seek to exploit." *See Louis Vuitton*, 97 F. Supp. 3d at 511. Moreover, the agreement is cited just once in the Wayfarer Parties' summary judgment papers (in their Local Rule 56.1 Statement, ECF No. 953 ¶ 402) and solely for the proposition that LOL HATA, Lively's wholly owned entity, is a "member of Betty B Holdings, LLC." Given the extremely limited relevance, if any, of the Operating Agreement itself (as opposed to Ms. Lively's ownership), Betty B requests that the Agreement (Ex. 276, ECF No. 954-272) remain under seal. *See, e.g.*, *SEC v. Ripple Labs, Inc.,* 2023 WL 3477552, at *6 (S.D.N.Y. May 16, 2023) (sealing contracts in their entirety where such contracts demonstrate "an ongoing contractual relationship" with one of the defendant's current business partners given that defendant's "business relationships and interests, and the privacy interests of non-parties, would be detrimentally affected by the disclosure of confidential contracts that the parties expect to remain private") (citation and internal quotation marks omitted); ECF No. 1027 at 7 ("confidential business information that has no bearing on any issue in this case that would cause substantial harm to a . . . non-party's competitive business standing may be sealed").

***As to the competitive business information***, the Board Updates (ECF Nos. 1071-118 & 1071-119), which are discussed extensively in the above-referenced portions of the expert reports (ECF Nos. 1071-116 & 1071-117), are littered with sensitive, competitive business information, including financial results, forecasts for future years, detailed competitive positioning of the brands, internal strategy and plans for the future of the brands – the disclosure of any of which could harm the company. The Board Updates (ECF Nos. 1071-118 & 1071-119), each of which is labeled "Confidential" on the cover, contain almost exclusively private, highly confidential company information and the expert reports (ECF Nos. 1071-116 & 1071-117) rely extensively on information from those documents as well as additional financial analyses and calculations based on Betty B's historical performance and forecasts. Likewise, the K-1s (ECF Nos. 954-274 & 954-275) contain financial results for two years and are relied on by the Wayfarer Parties solely to show that Ms. Lively receives distributions indirectly. The deposition transcript excerpts (ECF No. 954-270) discuss sensitive, competitive business information, specifically competitive brand positioning and Betty B asks that just two pages (pp. 121 & 147) of the transcript submitted as Ex. 274 (ECF No. 954-270) remain sealed.

Courts in this district routinely protect from full disclosure exactly this type of sensitive, competitive business information. *See, e.g.*, *Adstra*, 2025 WL 1002253, at *2; *Bergen Brunswig*, 1998 WL 113976, at *3; *Oliver Wyman*, 282 F. Supp. 3d at 706 (collecting cases where courts have held that competitive company information should be protected). Although Ms. Lively indirectly owns a minority interest in Betty B, Betty B is a third party to the dispute, making sealing even more appropriate here. *See, e.g.*, *Oliver Wyman*, 282 F. Supp. 3d at 706. Given the foregoing, Betty B asks that the Court continue sealing the above-referenced competitive business information as set forth *supra* on pages 1-2 & notes 2-6.

Respectfully,

/s/ Rachel Penski Fissell