Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

January 12, 2026

VIA ECF

The Honorable Lewis J. Liman
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl St., Room 1620
New York, NY 10007

Re: *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL

Dear Judge Liman:

The Wayfarer Parties (Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Jennifer Abel, Melissa Nathan, and TAG) write in response to non-party WME's motion for sealing. (Dkt. 1170). Not one of WME's requests meets the Second Circuit's high standard for sealing at this stage.

WME is a world-famous talent agency. It represented Justin Baldoni, Blake Lively, and Ryan Reynolds at all relevant times. Contrary to WME's motion (at 3), its former Chairman, Patrick Whitesell, *was* listed in the parties' initial disclosures. *See e.g.*, Dkts. 352-5 at 9, 913-1 at 11, 913-2 at 13 (describing Whitesell as having knowledge of "The parties' alleged conduct; efforts taken to market or promote the Film; publicity surrounding the Film; complaints or discussions about the work environment or conduct on the set of the Film."). Baldoni and Lively's WME agents were also included in the parties' initial disclosures and similarly identified as to their relevant knowledge, and both were deposed.

WME seeks to seal or redact communications that bear substantively and directly on issues now before the Court. For instance, WME seeks to withhold portions of documents that reflect communications in which WME's agents not only confirm the Wayfarer Parties' account of events, but also make clear, among other things, that (1) Baldoni and others had serious concerns about Lively's conduct and its effect on the film long before any of these events came to light; and (2) Lively and her husband were using their substantial power and influence to campaign against Baldoni from the outset. The documents also bear on Lively's damages claims: in WF MSJ Ex. 210 at -26, Lively and Reynolds' agent discuss professional opportunities being offered to Lively following the film's release, in the precise period of time during which Lively alleges her reputation was damaged. WME's role is not tangential. The communications make clear that WME and its agents were intimately involved in managing the tensions on set and later during the film's premiere, and that they were far from neutral parties when those tensions erupted in a public dispute.

WME claims its "privacy interests are high" because "the redacted material is not already public." Mot. at 3. But, as this Court recognizes in its own Invididual Rules, the mere fact that information has previously been kept confidential "is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents." Attachment A (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015)). WME has failed to identify any actual privacy interest, much less any interest that would outweigh the strong presumption in favor of public access to summary judgment materials. The names of the WME parties involved have already been publicly disclosed. *See, e.g.*, Dkt. 913-1 at 11; Dkt. 913-2 at 13-14. The information at issue does not concern anything especially personal, such as medical information, or anything competitively sensitive. Nor has WME identified any other personal or professional risk that might result from disclosure, beyond a vague reference to the "media-driven nature of this case." Mot. at 3. As this Court has acknowledged, "a 'generalized concern of adverse publicity' is not, however, a sufficiently compelling reason to outweigh the presumption of access." Dkt. 848 at 4 (quoting *Nycomed US, Inc. v. Glenmark Generics, Inc.*, 2010 WL 889799, at *8 (E.D.N.Y. Mar. 8, 2010)).

WME's other arguments for sealing are similarly off-base. It asserts the documents should be sealed because they may not be admissible at trial. Mot. at 2-3. "But the presumption of public access and the reasoning of *Lugosch* and its progeny are directed to different concerns than the Federal Rules of Evidence." *Fairstein v. Netflix, Inc.*, 2023 WL 6164293, at *7 n.1 (S.D.N.Y. Sept. 21, 2023) (rejecting sealing argument based on claimed inadmissibility). Even documents a court deems wholly inadmissible still become part of the record and can still inform a public's understanding of the judicial function. In any event, WME's view of admissibility is overly cramped in assuming that if its agents had no personal knowledge of what happened on set, the documents cannot come in. Mot. at 2. This case raises a host of broader issues, including how Lively's conduct affected the production, marketing, and publicity around the film, and the events leading up to Defendants' decision to hire crisis PR. The nuances of admissibility can be addressed at a later stage.

WME claims that its agents were simply acting as "advocates" for their clients, but that is not a justification for sealing and only underscores the importance of the documents: a key issue in this case is the exent and manner in which Lively used her considerable power and industry influence, amplified by her husband and through a powerful entertainment agency, against the Wayfarer Parties.

WME further argues its communications with Reynolds about these issues should be sealed because he is "not [a] party to this case." *See* Mot. at 3 (discussing WF MSJ Ex. 149, 205, 207, 210, 211; WF Spoliation Opp. Ex. D, E). Yet WME does not explain how WME itself might suffer competitive harm or any other cognizable privacy injury should this information be made public, nor does it articulate any harm that might befall Reynolds. Moreover, as explained in the Wayfarer Parties' Opposition to Lively's motion to seal, the claim that Reynolds is a non-party whose communications should be sealed is overly restrictive and absurd. In the documents at issue Reynolds directly advocates, on behalf of his wife, for punishing and ostracizing the Wayfarer Parties, and WME, in turn, vows that it will support Lively and Reynolds in that fight. Especially given that Lively has asserted marital privilege over her communications with Reynolds, Reynolds' communications with others relaying his wife's claims are crucial to the

Wayfarer Parties' defense. The messages are cited throughout and form an integral part of the Wayfarer Parties' summary judgment briefs. *See* Dkt. 955: WF Opening MSJ Br. at 13, 17, 30; Dkt. 1119: WF Reply Br. at 10. For these reasons, and those stated in opposition to Lively's sealing motion, these documents should not be sealed.

Finally, WME seeks to seal documents that disclose the commission it obtained from Lively's work on the film. Mot. at 4 (discussing Pl. MSJ Ex. 84, 85). Notably, WME does not claim this rate is confidential or competitively sensitive, because it is not: rather, WME charges the industry-standard rate dictated by California's Talent Agencies Act, Cal. Labor Code §1700 *et seq*. Because Lively's compensation is material and relevant to the question of whether she was an independent contractor and to questions concerning the extent to which she was damaged or benefitted from her participation in the film, this material should not be sealed.

Respectfully submitted,

*/s/ Alexandra A.E. Shapiro*

Alexandra A.E. Shapiro
Jonathan P. Bach
Alice Buttrick
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880
ashapiro@shapiroarato.com
jbach@shapiroarato.com
abuttrick@shapiroarato.com

*Attorneys for the Wayfarer Parties*

cc: All counsel (by ECF)