## LINER FREEDMAN TAITELMAN + COOLEY, LLP
ATTORNEYS AT LAW

**1801 CENTURY PARK WEST, 5TH FLOOR**
**LOS ANGELES, CALIFORNIA  90067-6007**
TEL: (310) 201-0005
FAX: (310) 201-0045
E-MAIL: bfreedman@lftcllp.com

BRYAN J. FREEDMAN

January 12, 2026

<u>Via ECF</u>
Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

Re:   *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL

Dear Judge Liman:

   The Wayfarer Parties (Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Jennifer Abel, Melissa Nathan, and TAG) write in response to Betty B Holdings, LLC's ("Betty B") motion for sealing.  (Dkt. 1148).  As explained in their Motion for Summary Judgment, the Wayfarer Parties take the position that none of Betty B's information has any relevance to Ms. Lively's claims because as a matter of law she lacks standing to seek damages for the company's lost profits.  *Ali v. NYC Env't Control Bd.*, 670 F. App'x 26, 27 (2d Cir. 2016) ("[A]n LLC and its owner or members are not interchangeable for the purposes of standing," and "[a]n individual lacks standing to sue when the alleged injury is based on an injury to a corporate entity").  Therefore, none of the evidence Betty B seeks to seal should be admissible at trial.  However, future determinations of admissibility do not govern the sealing inquiry.  For purposes of evaluating the Motion for Summary Judgment, the Court should not seal any documents that Ms. Lively placed squarely at issue as the basis for her damages.

   "The Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment."  *Lohnn v. Int'l Bus. Machines Corp.*, 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4, 2022).  "[T]he presumption of public access is at its highest when the material is relevant to a court's decision on a dispositive motion, such as a motion for summary judgment."  *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 2023 WL 3477552, at *1 (S.D.N.Y. May 16, 2023); Dkt. No. 1027.  Where the presumption applies, "continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).

   This Court has observed that sealing of business information may be appropriate as to "certain confidential business information that has no bearing on any issue in this case and that

would cause substantial harm to a party or non-party's competitive business…" [Dkt. No. 1027 at 7]. "In determining whether such information is properly sealed, courts may look to whether 'the information [is] still relevant to the business' and 'the degree to which a party would be competitively harmed if [the information] were revealed.'" *Spencer-Smith v. Ehrlich*, 2025 WL 1115019, at *2 (S.D.N.Y. Apr. 15, 2025) quoting *Jackpocket, Inc. v. Lottomatrix NY LLC*, 2022 WL 17738779, at *2 (S.D.N.Y. Dec. 15, 2022). There is no basis, however, to seal stale information that no longer poses any competitive threat. "The older the information is, the less appropriate it is to seal that information." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023). Betty B has failed to overcome the presumption of public access because it failed to show that the information it seeks to seal (1) has no bearing on any issue in this case, (2) is still relevant to its business operations; or (3) would competitively harm it if revealed. Betty B seeks to seal the following documents:

1. <u>Betty B Operating Agreement [Dkt. No. 954-272]</u> – Betty B seeks to seal its Second Amended Operating Agreement, arguing it has "extremely limited relevance" to this action. Not so. Ms. Lively claims up to ███████ [Dkt. No. 954-268 at p. 43; Dkt. No. 1071-116 at 3.] However, the Operating Agreement establishes two key facts that are dispositive of Ms. Lively's claims with respect to alleged Betty B damages: (1) ███████ [Dkt. No. 954-272 at 38, 63.] In other words, Ms. Lively, a Betty B board member and the party who produced the document, has placed ███████ directly at issue.

Betty B also fails to establish that the Second Amended Operating Agreement is still relevant to its business given that as of June 2025, Betty B had entered into a ███████[1] Ex. 1 at 228:16-231:7. Nor does Betty B explain how disclosure of the Operating Agreement could or would harm its business interests other than to claim that it explains how Betty B decided to "structure and manage its business".

2. <u>Board Updates [Dkt Nos. 1071-118, 1071-119]</u> – Betty B seeks to seal two "Board Updates" because they contain "sensitive, competitive business information".[2] However, Betty B admits the information is a key component of Ms. Lively's claim, noting that Ms. Lively's experts "rely extensively on information from those documents." Mot. at 3. Moreover, the Board Updates were produced by Ms. Lively with redactions, removing information she or Betty B deemed irrelevant to this action. Notably, these Board Updates were only included in Ms. Lively's opposition to Defendants' Motion for Summary Judgment, as part of her argument that Defendants caused Betty Booze's lost sales. [Dkt. 1074 at ¶ 829]. The documents are thus directly "relevant to the performance of the judicial function," Dkt. 1027 at 4, (quoting *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019), as the Court must evaluate them to test Ms. Lively's assertions. For example, the Board updates ███████

---

[1] The extent of the differences from the Second Amended Operating Agreement are not fully clear to the Wayfarer Parties given that neither Ms. Lively nor Betty B produced ███████.
[2] Betty B does not explain what specific portions of the board updates contain sensitive information.

[REDACTED], supporting the argument that Lively's damages are too speculative. Indeed, Ms. Lively's expert, Jeffrey Kinrich, relies on the Board Updates in opining that [REDACTED] Dkt. No. 1071-116 at fn 36.

3. <u>Ms. Lively's Expert Reports [Dkt. Nos. 1071-116, 1071-117]</u> - Betty B seeks to seal portions of two reports submitted by Ms. Lively's experts. As noted above, the fact that Ms. Lively's experts "rely extensively on" Betty B's information establishes the information's relevance to the summary judgment motion. Betty B seeks to seal the following portions of the expert reports:

- Kinrich, § V.C – Most of the information contained in this section comes from publicly available sources. The small portions related to Betty B's declining sales form the basis of Ms. Lively's damages claim with respect to Betty B.

- Kinrich, § VIII, and Exhibit 2 – The very title of Section VIII, "[REDACTED]", emphasizes the basis for Ms. Livley's damages claim. Moreover, Section VIII.A describes Mr. Kinrich's opinion of [REDACTED] However, [REDACTED] Section VIII.B, describing purported [REDACTED], forms the basis for Ms. Lively's claim.

- Kinrich, Appendix D – Mr. Kinrich's calculations of lost profits form the basis for Ms. Lively's damages claim. The MSJ argues that such calculations are overly speculative.

- Mayzlin, pp. 87-91 – These pages describe Betty B's financial performance in the context of Ms. Lively's claim for damages.

4. <u>K-1 statements [Dkt. Nos. 954-274, 954-275]</u> - Betty B seeks to seal two K-1 statements because they contain "financial results for two years". The K-1 statements only show the share of income for Betty B member LOL HATA, LLC, [REDACTED]. Betty B's financial results are not included. The documents directly relate to the Wayfarer Parties' lack of standing argument.

5. <u>Deposition Pages [Dkt. No. 954-270 at pp. 121 and 147]</u> - Betty B seeks to seal two pages from the deposition transcript of its Rule 30(b)(6) witness, Andrew Chrisomalis. Page 121 describes Betty B's expectation of Betty Booze sales for 2024 as of October 1, 2024. Betty B does not describe how disclosure of this stale information could competitively harm it. Page 147 describes how [REDACTED] Again, disclosure of this stale information could not harm Betty B.

As Betty B has not met its burden to overcome the right to public access of information used in evaluating dispositive motions, the Court should decline to seal any information requested in Betty B's Motion.

476715.1

Hon. Lewis J. Liman
January 12, 2026
Page 4

                                                                          Respectfully submitted,

Dated:  January 12, 2026           LINER FREEDMAN TAITELMAN +
           Los Angeles, CA             COOLEY, LLP

                                                                          */s/ Bryan Freedman*
                                                                      Bryan J. Freedman (admitted *pro hac vice*)
                                                                      Ellyn S. Garofalo (admitted *pro hac vice*)
                                                                      Kim S. Zeldin (admitted *pro hac vice*)
                                                                      1801 Century Park West, 5th Floor
                                                                      Los Angeles, CA 90067
                                                                      Tel: (310) 201-0005
                                                                      Email: bfreedman@lftcllp.com
                                                                                egarofalo@lftcllp.com
                                                                                kzeldin@lftcllp.com

cc: all counsel of record (via ECF)

476715.1