

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

January 12, 2026

VIA ECF

The Honorable Lewis J. Liman
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl St., Room 1620
New York, NY 10007

     Re:    *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL

Dear Judge Liman:

     The Wayfarer Parties write in response to Lively's motion for sealing. Dkt. 1165.

     Lively carries a heavy burden in seeking to seal summary judgment and sanctions materials. The Second Circuit instructs: "It is not, and should not be, an easy matter to deny the public access to documents that are utilized in judicial proceedings and form part of the basis of judicial decision-making." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013). That is because "public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1048 (2d Cir. 1995). The majority of Lively's requests fail to overcome the strong presumption of public access at this stage. Crucially, Lively cannot hide key facts of this litigation from public scrutiny simply because she finds them embarrassing or unhelpful to her case.

     As detailed in an accompanying chart that will be separately submitted to the Court, the Wayfarer Parties agree that certain financial information concerning the film and non-parties (Pl. MSJ Exs. 33, 81-83, 135), as well as information that could implicate Hoover's privacy (Pl. MSJ Ex. 152), should be sealed. Separately, the Wayfarer Parties do not object to sealing references to true non-parties, such as actors who were considered but not chosen to appear in the film (Pl. MSJ Exs. 22, 104, 106, 108, 112, 114, WF MSJ Ex. 47, 48, 53), and other Jonesworks clients (WF MSJ Ex. 89). The Wayfarer Parties also take no position on the sealing of one witness's medical information, although such information should be disclosed if the matter proceeds to trial, as it bears on the witness's credibility and knowledge. (WF MSJ Ex. 87).

     But Lively's sealing requests go well beyond these narrowly limited and well-established exceptions to the public's presumptive right of access. Lively seeks to hide from public view the identity of key witnesses, people she herself involved in this dispute because of who they were:

Hon. Lewis J. Liman
January 12, 2026

famous, powerful Hollywood players who uniquely commanded enough influence to convince Sony to take a film away from its director, Baldoni, and to try to destroy his career.

Chief among these claimed "non-parties" is Lively's husband, Ryan Reynolds, the subject of her sealing requests in WF MSJ Exs. 134, 149, 205-07, 210-11, and WF Spoliation Opp. Exs. B-F, I. Reynolds is not an "innocent third party" by any stretch of the imagination. He is the proponent of the Rule 11 sanctions motion at issue here, Dkt. 229, yet he has asked the Court to seal nearly all of the documents submitted with the Wayfarer Parties' supplemental opposition to that motion. In seeking to protect her husband, Lively relies on *Desarrolladora La Ribera, S. de R.L. de C.V. v. Anderson*, but that case is entirely inapposite. There the court redacted the identity of a potential customer who was "not affiliated with any party" and "not accused of any wrongdoing." 2024 WL 2049413, at *3 (S.D.N.Y. May 6, 2024). From the outset, Reynolds involved himself in the production of the film and Lively's objections to it: He secretly re-wrote the film's pivotal rooftop scene, under Lively's name. Dkt. 1074: Lively 56.1 Opp. ¶ 42. He berated Baldoni for supposedly commenting on his wife's weight before shooting began (which is a subject of her claims). *Id.* ¶ 83. He participated as Lively's designated representative in the all-hands meeting to discuss Lively's objections months later. Dkt. 1077: Lively Decl. ¶ 24. The very documents Lively now seeks to seal make plain that Reynolds continued to deliberately insert himself into this dispute, ███████████████████████

███ long before the Wayfarer Parties' alleged smear campaign supposedly began. After the premiere, these messages show that ████████████████████████████████████████

████████████████████████████████████████, WF MSJ Ex. 206. In at least one instance, it appears that ████████████████████████████████████

████. Lively has asserted marital privilege over her communications with Reynolds. But it is fair to infer that Reynolds' communications to third parties were made with her consent, based on the information she provided, and on her behalf. And although Reynolds was not deposed, there is no dispute that he is a key witness who may well be called if this case proceeds to trial. Both parties named Reynolds on their initial disclosures. *See, e.g.*, Dkts. 352-5 at 5, 913-2 at 3.

Lively offers no basis for sealing Reynolds' communications, beyond her fatuous claim that he is not really involved in this case. The information at issue does not disclose anything private or especially sensitive.[2] Rather, Reynolds primarily discusses ████████████ ████████████, a subject that has no bearing on his own privacy concerns.

Lively also seeks to hide the identity of the famous people she recruited as advocates on her behalf against the Wayfarer Parties in her attempt to take over the film. (WF MSJ Ex. 102 at

---

[1] ████████ is an alias for Reynolds in this document. The Wayfarer Parties have no objection to replacing the alias name with Reynold's name.
[2] Lively asserts WF MSJ Ex. 205 and 211 reflect private information about her family. Mot. at 2 n.11. Lively has not identified such references and none are apparent from a review of the text.

Hon. Lewis J. Liman
January 12, 2026

-21970; Exs. 39, 133-37, 146, 148).[3] But "information ought not be sealed or redacted solely because it may harm a party's public reputation or celebrity status." *Fairstein v. Netflix, Inc.*, 2023 WL 6164293, at *6 (S.D.N.Y. Sept. 21, 2023). Witness identities are shielded from the public only in rare circumstances, such as where there is a "danger of impairing law enforcement" or some credible safety risk. *See Amodeo II*, 71 F.3d at 1050. There is nothing comparable here. Moreover, not only are these individuals key witnesses in the case, but their identities are essential to enabling the public to understand the Wayfarer Parties' defense. Lively did not merely vent her frustration to friends. She sought out people with immense influence in the industry, and she explicitly weaponized that influence against the Wayfarer Parties. *See, e.g.*, WF MSJ Ex. 134, 135 (recruiting ▮); WF MSJ Ex. 136 (stating ▮); WF MSJ Ex. 39 (Lively's PGA letter, invoking ▮"). Moreover, Lively had no qualms about publicly divulging the identity of other famous people in whom she apparently confided. *See* Dkts. 913-1, -2 (identifying, *inter alia*, Emily Blunt, Alexis Bledel, America Ferrera, Gigi Hadid, Hugh Jackman, Taylor Swift, and Amber Tamblyn). It is only now that the messages place Lively and her friends in a negative light that she seeks to hide their identity. Lively should not be permitted to use sealing tactics as a sword and shield in this manner. As this Court has acknowledged, "a 'generalized concern of adverse publicity' is not a sufficiently compelling reason to outweigh the presumption of access." Dkt. 848 at 4 (quoting *Nycomed US, Inc. v. Glenmark Generics, Inc.*, 2010 WL 889799, at *8 (E.D.N.Y. Mar. 8, 2010)). That is particularly so at this stage of the process, when—as this Court has rightly stated—the presumption of public access "is at its peak." Dkt. 1027 at 3.

Lively also seeks to seal the identity of other witnesses. First, she seeks to seal the identity of a crew member who discussed filming with the film's intimacy coordinator. (Pl. MSJ Ex. 18 and 19). Lively identifies no privacy interest whatsoever concerning the crew member, and none is apparent from his communications. Next, Lively seeks to seal references to Lively's personal staff even though their names were already made public by Lively herself when she identified those individuals in her initial disclosures and stated no objection when those disclosures were filed on the public docket weeks ago. *See* Dkts. 406-2, 897-1, 913-1, 913-2. She also has cited them as witnesses supporting her case. (Pl. MSJ Exs. 95, 137; Def. MSJ Exs. 45, 102). Although Lively claims some of these individuals suffered harassment when their names were initially disclosed, Tahler Decl. ¶ 5, she offers nothing to suggest that disclosing the additional information at issue here would cause any further harm.

Finally, Lively seeks to seal information about her compensation for the film in Pl. MSJ Exs 84 and 85. That information has already been publicly disclosed, without objection. *E.g.*, Dkt. 958: WF Publicly Filed 56.1 Stmt., ¶ 25. And it is directly relevant to the independent contractor issue raised on summary judgment and to Lively's damages claims. Lively also claims those documents should be sealed because they divulge WME's commission rate, but WME itself does not, and cannot, claim that information is competitively sensitive because it is the industry standard. *See* Dkt. 1170: WME Mot. at 4; Dkt. 1181: WME Opp. at 3.

For the foregoing reasons, the bulk of Lively's sealing requests should be rejected.

---

[3] In WF MSJ Ex. 95, Lively recounts a conversation about the appearance of a famous person. There is no basis whatsoever to seal this reference.

Hon. Lewis J. Liman
January 12, 2026

                              Respectfully submitted,

                              <u>/s/ Alexandra A.E. Shapiro</u>
                              Alexandra A.E. Shapiro
                              Jonathan P. Bach
                              Alice Buttrick
                              SHAPIRO ARATO BACH LLP
                              1140 Avenue of the Americas, 17th Floor
                              New York, New York 10036
                              (212) 257-4880
                              ashapiro@shapiroarato.com
                              jbach@shapiroarato.com
                              abuttrick@shapiroarato.com

                              *Attorneys for the Wayfarer Parties*

cc:      All counsel (by ECF)