# EXHIBIT D

1
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
CAMILLE M. VASQUEZ, Cal Bar No. 273377
3  CVasquez@sheppardmullin.com
SAMUEL A. MONIZ, Cal Bar No. 313274
4  SMoniz@sheppardmullin.com
HONIEH UDENKA, Cal Bar No. 319103
5  HUdenka@sheppardmullin.com
MELISSA M. MIKAIL, Cal Bar No. 323212
6  MMikail@sheppardmullin.com
AVA HABIBIAN, Cal Bar No. 348319
7  AHabibian@sheppardmullin.com
650 Town Center Drive, 10th Floor
8  Costa Mesa, California 92626-1993
Telephone:    714.513.5100
9  Facsimile:    714.513.5130

10  Attorneys for Plaintiffs and Cross-Defendants
AMANDA GHOST, GREGOR CAMERON,
11  and VINCE HOLDEN

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/05/2025 4:58 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Sino-Cruz, Deputy Clerk

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13          COUNTY OF LOS ANGELES, CENTRAL DISTRICT

14  AMANDA GHOST, an individual; GREGOR
CAMERON, an individual; and VINCE
15  HOLDEN, an individual,

16          Plaintiffs,

17          v.

18  REBEL WILSON, an individual; and DOES
1-50, inclusive,

19          Defendants.

20

21  AND RELATED CROSS-ACTIONS

22

23

24

25

Case No. 24STCV17314

Assigned for All Purposes to:
Hon. Thomas D. Long, Department 48

**AMANDA GHOST'S MOTION FOR
LEAVE TO TAKE LIMITED
DISCOVERY IN RESPONSE TO ANTI-
SLAPP MOTION**

*Filed concurrently with Declarations of
Amanda Ghost and Samuel A. Moniz; and
Request for Judicial Notice*

Date:      January 8, 2026
Time:      8:30 a.m.

Reservation No.: 099894740620

Operative Complaint Filed: July 29, 2024
Cross-Complaint Filed: October 1, 2024
Cross-Complaint Filed: September 2, 2025
Trial Date: October 5, 2026

26

27

28

SMRH:4929-7878-0283.2                    MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 8, 2026 at 8:30 a.m. in Department 48 of the above-entitled Court, located at 111 N. Hill Street, Los Angeles, California 90012, Plaintiff and Cross-Complainant Amanda Ghost ("Ms. Ghost") will and hereby does move ("Motion") for an Order granting her leave to take limited discovery in connection with her opposition to the pending Special Motion to Strike ("anti-SLAPP Motion") filed by Cross-Defendant Rebel Wilson ("Wilson") and joined by Cross-Defendants Melissa Nathan ("Ms. Nathan") and The Agency Group PR LLC ("TAG"). This Motion is made pursuant to California Code of Civil Procedure section 425.16(g), on the grounds that good cause exists to permit limited, specified discovery that pertains to the pending anti-SLAPP Motion. Ms. Ghost requires discovery so that she can fully and properly present a *prima facie* case of defamation, particularly as to the elements of publication and (to the extent required) actual malice. The Court should also continue the hearing on the anti-SLAPP Motion by at least 90 to 120 days to allow for such discovery to be completed.

The anti-SLAPP Motion is based on, and puts at issue, essentially ***factual*** questions. In particular, the anti-SLAPP Motion turns on whether Wilson, TAG, and Ms. Nathan were involved in the publication of defamatory materials on the Internet via websites dedicated to smearing Ms. Ghost with false accusations of criminal misconduct, which appeared at the domain names amandaghost.com and amandaghostsucks.com (the "Smear Websites") after Ms. Ghost's contractual disputes with Wilson escalated to litigation. Ms. Nathan and Wilson have both filed declarations denying involvement in the Websites. In fact, that is the central argument in the anti-SLAPP Motion. Ms. Ghost is confident that the evidence will eventually compellingly show that Wilson, Ms. Nathan, and TAG were, indeed, involved – and, troublingly, ***that their sworn declarations to the contrary are false.*** Targeted discovery is warranted to ensure that Ms. Ghost has a reasonable opportunity to present her *prima facie* case, including but not limited to the elements of publication and malice. The requested discovery includes the following:

- Ms. Ghost requests leave of court to issue a subpoena and conduct a short deposition of third party Katie Case ("Ms. Case"). Ms. Case is a former employee of TAG/Ms. Nathan who engaged in an exchange of written

messages with Ms. Nathan.  Ms. Nathan instructed Ms. Case in writing to prepare written copy for websites about Ms. Ghost.  Ms. Case is, thus, a critical witness who can authenticate and contextualize relevant written evidence.  She will likely be able to provide direct testimony as to the involvement of Wilson, TAG, and Ms. Nathan in the Smear Websites, further controverting their declarations.  In fact, Ms. Case has apparently already testified adversely to Ms. Nathan regarding such conduct in a separate consolidated action currently pending against TAG, Ms. Nathan, and others, in the District Court for the Southern District of New York, *Jones et al. v. Abel, et al.,* Case No. 1:25-cv-00779-LJL, consolidated with Case No. 1:24-cv-10049-LJL, and related to Case No. 1:25-cv-00449-LJL (collectively, the "New York Litigations").  For instance, in a filing dated November 13, 2025, counsel in the New York Litigations noted that based on "Ms. Case's own under oath testimony" it "is apparent that Ms. Case had a material role in the creation and drafting of copy… ***as part of a pattern and practice of drafting copy for and assisting with similar smear websites against many individuals, together with Melissa Nathan, Jed Wallace, and Bryan Freedman.***"  (Emphasis added).  Obtaining basic testimony and documents from Ms. Case pertaining to the creation, content, authorship, and purpose of the Smear Websites is well warranted.

- Ms. Ghost also seeks leave of Court to obtain certain basic documents and testimony from TAG and Ms. Nathan.  In particular, as parties to the New York Litigations, TAG and Ms. Nathan are already in possession of transcripts of the depositions of Ms. Case and Ms. Nathan regarding the creation of derogatory websites – including, apparently the very Smear Websites at issue in this action.  Those transcripts should be produced, with exhibits, so that Ms. Ghost and counsel can evaluate the testimony that has already been given on this topic.  Further, Ms. Ghost should be permitted to

-3-

MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY

seek from Ms. Nathan and TAG all documents and communications pertaining to the Amanda Ghost Smear Websites – including any documents that reference (1) Amanda Ghost, (2) amandaghost.com, (3) amandaghostsucks.com, or (4) Rebel Wilson's dispute with Ms. Ghost. This should specifically include any documents pertaining to those topics that have been produced by any party in the New York Litigations.

- Ms. Ghost should be afforded an opportunity to take short depositions of both Wilson and Ms. Nathan.  Such depositions are warranted to cross-examine them on their declarations, as well as documents and conduct that directly contradict those declarations.  For instance, written messages in Ms. Ghost's possession already reflect that Ms. Nathan directed the creation of defamatory content for publication on the websites, at Rebel's behest.  That is an appropriate topic of cross-examination.  Such depositions would also be relevant to the question of actual malice, to the extent that the Court were to conclude that Ms. Ghost is required to show malice.

- In addition, Ms. Ghost should be authorized to issue subpoenas for follow-up depositions and records, to the extent necessary, from certain additional third parties who evidently had a role in the dissemination of defamatory material about Ms. Ghost via the Smear Websites.  Specifically, and to the extent needed after Ms. Case's deposition, Ms. Ghost should be afforded an opportunity to depose persons identified in the messages between Ms. Nathan and Ms. Case as "Carolina," and "Jed," who are described as being involved in the creation of the websites.  As well, documentary evidence, filings in the New York Litigations, and Wilson's own words all point to a connection between the Smear Websites and Wilson's former attorney Bryan J. Freedman, making him a potentially necessary witness as well.

**PLEASE TAKE FURTHER NOTICE** that Ms. Ghost requests a reasonable continuance of at least 90 to 120 days of the hearing on the anti-SLAPP Motion, which is currently set for

-4-

February 3, 2026, to allow for discovery to be concluded.  The length of this request is dictated, in part, by the fact that some of the potential deponents – including, crucially, Ms. Case – are believed to reside outside the State of California, and may require additional time for service.

This Motion is made and based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Samuel A. Moniz ("Moniz Decl."), all papers and pleadings on file in this matter, and on such further evidence and argument as may be presented at or before the hearing on this Motion.

Dated:  December 5, 2025          Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
         CAMILLE M. VASQUEZ
         SAMUEL A. MONIZ
     Attorneys for Plaintiffs and Cross-Defendants
     AMANDA GHOST, GREGOR CAMERON,
         and VINCE HOLDEN

## <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................8

I.      INTRODUCTION ................................................................................................................8

II.     BACKGROUND ................................................................................................................11

        A.      Factual Background And Summary Of Allegations .................................................11

        B.      The Smear Websites ................................................................................................12

        C.      Evidence Of Cross-Defendants' Involvement And Avenues Of Discovery ...........14

        D.      The Anti-SLAPP Motion ........................................................................................15

III.    ARGUMENT ....................................................................................................................16

        A.      Good Cause Exists To Grant The Requested Discovery, Especially As To
                the Issues Of Publication And Malice ....................................................................16

                1.      Good Cause Exists For Discovery As To Publication ................................17

                2.      Discovery Is Warranted As To Issues Of Malice ........................................19

        B.      The Request Is Narrowly Tailored And Will Not Prejudice Wilson ......................20

        C.      The Court Should Continue The Anti-SLAPP Hearing By 90-120 Days................20

IV.     CONCLUSION ................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Balla v. Hall* (2021)
    59 Cal.App.5th 652 ............................................................................................ 16

*Burrill v. Nair* (2013)
    217 Cal.App.4th 357 .......................................................................................... 19

*Diamond Resorts U.S. Collection Development LLC v. Pandora Marketing, LLC* (C.D.
    Cal. 2020)
    500 F.Supp.3d 1104 ........................................................................................... 17

*Lafayette Morehouse, Inc. v. Chronicle Publishing, Co.* (1995)
    37 Cal. App. 4th 855 ................................................................................... 11, 16

*Mitchell v. Twin Galaxies, LLC* (2021)
    70 Cal.App.5th 207 ............................................................................................ 19

*Reader's Digest Assn. v. Superior Court* (1984)
    37 Cal.3d 244 ..................................................................................................... 19

*Sanchez v. Bezos* (2022)
    80 Cal.App.5th 750 ...................................................................................... 16, 17

*St. Amant v. Thompson* (1968)
    390 U.S. 727 ...................................................................................................... 19

*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019)
    6 Cal.5th 931 ..................................................................................................... 16

*Taus v. Loftus* (2007)
    40 Cal.4th 683 ................................................................................................... 17

Statutes

Code Civ. Proc. § 425.16(g) .................................................................................... 16

SMRH:4929-7878-0283.2     MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The pending anti-SLAPP Motion filed by Cross-Defendant Rebel Wilson ("Wilson") and joined by Melissa Nathan ("Ms. Nathan"), and The Agency Group PR, LLC ("TAG," and collectively with Ms. Nathan, the "PR Professionals") is focused on a single disputed factual question*:* were Wilson and her PR Professionals behind certain websites ("Smear Websites"), that spread defamatory lies about Plaintiff Amanda Ghost ("Ms. Ghost")?  Wilson and the PR Professionals claim the answer is "no."  But Ms. Ghost contends that the answer is undoubtedly "yes" – and that the declarations filed by Wilson and Ms. Nathan in support of their anti-SLAPP motions are knowingly false and perjurious.  Because the anti-SLAPP Motion turns on contested factual issues, the Court should grant Ms. Ghost leave to conduct specified discovery.  Discovery is warranted to ensure that Ms. Ghost has a full and fair opportunity to present a *prima facie* case, and to enable the Court to decide the pending dispositive motion on a fully developed factual record.

**First,** Ms. Ghost should be permitted to issue a subpoena for documents and testimony so that she may take the deposition of Katie Case, a subordinate of Ms. Nathan's at TAG.   Ms. Case is a critical witness.  ***Ms. Nathan instructed Ms. Case, in writing, to prepare copy for a malicious website about Ms. Ghost, writing:***

- **"So basically, Rebel wants a one of those sites"**
- **"Should be a mixture of that document that I think Carolina pulled about Amanda goes or the Intern pulled The voice note and this…** *Attachment: \_\_Library_SMS_Attachments_88_08_DB9BA138-EBEE-4043-803C-A39606AB4701_Amanda Ghost website.docx (26 KB)*
- **"It can be really really harsh"**
- **"Russian oglivarchs [sic] and making her a madam basically lol"** (Emphasis added.)

As a direct participant in creating content for the Smear Websites, Ms. Case's testimony can reasonably be expected to support Ms. Ghost's *prima facie* claim that Wilson and Ms. Nathan were responsible for their publication., which would refute Wilson and Nathan's self-serving denials of involvement.  Indeed, ***Ms. Case appears to have already contradicted Ms. Nathan's***

-8-

1    *testimony* when she was deposed in a separate consolidated action currently pending against TAG,

2    Nathan, and others, in the District Court for the Southern District of New York, *Jones et al. v.*

3    *Abel, et al.,* Case No. 1:25-cv-00779-LJL, consolidated with Case No. 1:24-cv-10049-LJL, and

4    related to Case No. 1:25-cv-00449-LJL (collectively, the "New York Litigations").  The New

5    York Litigations involve allegations against Ms. Nathan, TAG, and others for conducting smear

6    campaigns, including through the use of derogatory websites.  The Amanda Ghost Smear

7    Websites have been included as exhibits in filings in the New York Litigations, and appear to have

8    been the subject of testimony by Ms. Case, Ms. Nathan, and others.  Ms. Case can reasonably be

9    expected to provide information about Wilson and Ms. Nathan's involvement, and help controvert

10   their declarations.  Her testimony would also be relevant to issues of actual malice, as she can

11   speak to the purpose, sources, and content of the Smear Websites, and whether those who prepared

12   them believed them to be true.

13       **Second**, Ms. Ghost seeks leave of Court to obtain certain basic documents and testimony

14   from TAG, Wilson, and Ms. Nathan.  As parties to the New York Litigations, TAG and Nathan

15   are already in possession of transcripts of the depositions of Ms. Case, Ms. Nathan, and others

16   regarding the creation of derogatory websites – including, apparently, the Smear Websites at issue

17   in this action.  Ms. Ghost should be authorized to propound discovery for those documents,

18   including transcripts of Ms. Case's and Nathan's depositions, and any testimony that pertain to the

19   Smear Websites about Ms. Ghost.  Further, Nathan and TAG, as well as Wilson, should turn over

20   all documents and communications pertaining to the Smear Websites about Ms. Ghost – including

21   any documents regarding (1) Ms. Ghost, (2) amandaghost.com, (3) amandaghostsucks.com, or (4)

22   Rebel Wilson's dispute with Ms. Ghost.  This should specifically include any documents

23   pertaining to those topics that have been produced by any party in the New York Litigations.

24   Such documents are appropriately targeted to obtain information about the creation and

25   publication of defamatory material via the Smear Websites.

26       **Third,** Ms. Ghost should be afforded an opportunity to take short depositions of both

27   Wilson and Nathan.  Such depositions are needed to cross-examine them on their declarations, as

28   well as on documents and conduct that contradict their testimony.  For instance, Ms. Ghost should

-9-

MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY

be allowed to question both Nathan and Ghost about written messages that reflect that, at Wilson's behest, Nathan directed the creation of defamatory content for publication on the Smear Websites. Ms. Ghost should also be allowed to question Wilson about a broader pattern of conduct that supports the inference that she is involved in the Smear Websites. For instance, Wilson briefly posted the Smear Websites on her own social media and caused them to be included in her filings in this action. Wilson has also spread rumors about Ms. Ghost elsewhere that are virtually identical to the defamatory material appearing on the Smear Websites. In addition to exploring Wilson's and Nathan's involvement in publishing the defamatory content, the requested depositions would also be relevant to the question of actual malice (to the extent that the Court were to conclude that Ms. Ghost is required to show malice). To properly address the question of malice, Ms. Ghost should be permitted to explore at deposition such matters as (1) what sources were relied on to create the defamatory material on the Smear Websites; (2) what was the purpose of disseminating such material; (3) who came up with the defamatory material, and (4) whether any of the persons involved in doing so believed that a single word of it was true.

*Fourth,* several additional follow-up depositions may be warranted depending on the foregoing discovery. Documentary evidence and filings in the New York Litigations reflect that Nathan and Wilson did not act alone, but were supported by others who were materially involved, including a person named Jed Wallace, a person named Carolina, and Bryan Freedman. Nathan's messages to Ms. Case reflect that a person named "Jed" was involved in discussing the content of the Smear Websites, and that the material was also based on materials about Ms. Ghost that had been compiled by a person named "Carolina." Wilson has conceded publicly that Nathan was employed by her former attorney, Bryan J. Freedman. In a recent interview with 60 Minutes Australia, Wilson was forced to concede that Nathan "worked for my lawyer at the time" and was unable to offer any innocent explanation for her obvious involvement. Mr. Freedman is also referenced in the written exchanges between Nathan and Ms. Case ("I'm already trying to kill one rebel story and deal with Mattel loss for Bryan" "Jed and Bryan asking me for copy lol kill me"). Notably, Mr. Freedman has been accused in the New York Litigations of facilitating similar smear

MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY

websites.  For instance, in a filing dated November 13, 2025, counsel in the New York Litigations

noted the following about Ms. Case's testimony at deposition:

> Ms. Case's own under oath testimony reveals that Ms. Case was
> integrally involved in planting and providing information for the
> Business Insider article, starting in March 2024—earlier than
> Jonesworks had previously been aware. It is also apparent that Ms.
> Case had a material role in the creation and drafting of copy for the
> defamatory website and social media handles regarding Stephanie
> Jones, ***as part of a pattern and practice of drafting copy for and
> assisting with similar smear websites against many individuals,
> together with Melissa Nathan, Jed Wallace, and Bryan
> Freedman."*** (Emphasis added).

Accordingly, Ms. Ghost should be permitted to issue subpoenas for documents (i.e., their

communications about the creation or content of the Smear Websites) and testimony, if necessary,

to conduct depositions of Jed Wallace, Carolina, and Mr. Freedman, to investigate their

involvement in assisting Wilson's defamatory campaign again Ms. Ghost via the Smear Websites,

their purpose in doing so, and the sources they relied on, if any.

An anti-SLAPP motion puts a plaintiff or cross-complainant's entire case to the test

without the benefit of discovery.  Because of this inherent procedural unfairness, the law mandates

that courts should "liberally exercise" their discretion to permit discovery necessary to refute an

anti-SLAPP motion.  *Lafayette Morehouse, Inc. v. Chronicle Publishing, Co.* (1995) 37

Cal.App.4th 855, 868.  Where, as here, an anti-SLAPP motion **turns on disputed factual issues**,

discovery is particularly appropriate.  Ms. Ghost's request for discovery is targeted and manifestly

appropriate.  The Motion should be granted and the hearing on the anti-SLAPP Motion should be

continued by an appropriate period of no less than 90-120 days to allow for discovery to take

place.

## II.    **BACKGROUND**

### A.    Factual Background And Summary Of Allegations

As explained at greater length in prior briefing and declarations filed with the Court, this

case arises out of a film, *The Deb* (the "Film") that was made in Australia.  The three original

plaintiffs, Ms. Ghost, Gregor Cameron, and Vince Holden are experienced producers (the

"Producers").  The Producers and their companies partnered with Wilson to make the Film,

1   contemplating that Wilson would act and direct the Film, while the Producers, through their

2   associated entities, would provide funding and producing services.  The Film was governed by a

3   number of contracts that were the subject of extensive negotiation over a period of months.

4   Wilson was represented in these negotiations, including by her agent Charlies Collier.  Wilson

5   voluntarily signed the relevant contracts via DocuSign after lengthy negotiation.  (*See* Declaration

6   of Amanda Ghost ("Ghost Decl.") at ¶ 3.)

7        Wilson then became dissatisfied with the agreements she had made; in particular, she

8   wanted to be given credit for writing the Film, which was based on a script by a young writer

9   named Hannah Reilly.  When Ms. Reilly declined Wilson's demands for shared writing credit,

10  Wilson commenced an arbitration against Reilly in Australia.  Wilson lost.  Wilson then sought to

11  obtain a writing credit from the Producers and renegotiate the Film's contracts, inventing a

12  patently false narrative that she had been forced to sign the relevant contracts under duress.  As

13  part of this pressure campaign, Wilson then took to social media and accused Ms. Ghost, Mr.

14  Cameron, and Mr. Holden of embezzlement and harassing an actress on the Film.  This was a

15  revival of a rumor Wilson had previously spread that the Film's lead actress, Charlotte MacInnes,

16  had accused Ms. Ghost of harassment.  In fact, that is categorically false, and has been denied by

17  both Ms. Ghost and Ms. MacInnes.  The Producers sued for defamation.  (Ghost Decl. ¶ 4-5.)

18        B.      The Smear Websites

19       In response to the lawsuit and subsequent news coverage, Wilson wrote that Ms. Ghost and

20  the other Producers "leave a path of destruction" and that the lawsuit would "very publicly ruin

21  them."  Wilson also claimed in writing that a long litany of other people had supposedly had

22  problems with Ms. Ghost, including Baz Lurhmann, Shakira, Brandy, and Sarah Bareilles, and

23  asserted that Ms. Ghost and Mr. Cameron had lost a financier "a lot of money on the GATSBY

24  stage project as well."   (Moniz Decl. ¶ 7.)  Wilson followed this with an email decrying the

25  "grossly abhorrent attack on me in the press" and announcing that she was "cancelling Toronto

26  and all sales/promotion of the film and will be going public as to why."

27        Shortly thereafter, the first of the website domain names – amandaghost.com – was

28  registered, at which was eventually published profoundly false and defamatory content about Ms.

Ghost.  Among other things, the Smear Websites labelled Ms. Ghost the "Indian Ghislaine

Maxwell" and falsely accused her of  accused her of being a "madame" and "procuring young

women for the pleasure of the extremely wealthy."  (Ghost Decl. ¶¶ 7-8, **Ex. 1**.) The Smear

Websites also were notably reminiscent of Wilson's earlier private written messages.  For

instance, just as Wilson had previously written private messages claiming that Baz Lurhmann,

Shakira, Brandy, and Sarah Bareilles supposedly had bad experiences with Ms. Ghost, the Smear

Websites identified each of those individuals as "some of the people impacted by Amanda[.]"  Just

as Wilson had commented in private messages that Ms. Ghost had supposedly lost "a lot of

money" for a financier on the "Gatsby stage project," the Smear Websites recycled the same

charge ("let's only hope the hookers made up for losing her financier $25M by mounting The

Great Gatsby stage musical to simply reward an actress for remaining silent about the abuse she

suffered at Ghost's hands").[1]  The statements in the Smear Websites are false and defamatory.

(Ghost Decl. ¶ 8.)

        Wilson has publicly denied involvement with the Smear Websites, while winking at their

content.  For instance, she commented publicly: "it is important to note that in my opinion, is the

information on these websites probably true? Yes, I feel like it most likely is true with the

information I'm aware of after speaking to so many people. You don't need to search very far to

find a chequered history of Ghost!"[2]  Wilson's Cross-Complaint filed on October 1, 2024 (which

was sent to the media a week before it was served on the parties) notably cited to both

amandaghost.com and amandaghostsucks.com.  As part of an extraordinarily inappropriate rant

against Ms. Ghost that appeared in Wilson's Cross-Complaint, Wilson and her counsel alleged,

among other things, that: "Amanda Ghost has accumulated numerous enemies over the years.  In

---

[1] Wilson would later echo this same libel about Ms. Ghost and Ms. MacInnes on her own social
media: "The fact that this girl has now been employed by this 'producer' in the lead role of a
production called GATSBY (ART Boston)… should be all the proof you need as to why she has
now changed her story[.]" (Ghost Decl.  ¶ 6.)

[2] See Request for Judicial Notice ("RJN") at ¶ 6, *Rebel Wilson Denies 'Malicious Websites'
Claim*, Yahoo News U.K., https://uk.news.yahoo.com/rebel-wilson-denies-malicious-websites-
080000233.html.

-13-

fact, a website has emerged that exposes some of her darker dealings, which can be found at **'amandaghost.com'** and **'amandaghostsucks.com'**." (Wilson Cross-Complaint at ¶ 2.) (Bold emphasis in original). In short, while Wilson has previously denied involvement in the Smear Websites, her denials are simply not credible; she has tried to be too cute by half.

      C.    <u>Evidence Of Cross-Defendants' Involvement And Avenues Of Discovery</u>

Public filings in the New York Litigations, where TAG and Nathan are both defendants, have revealed some additional evidence of Wilson's involvement. Counsel for Ms. Ghost recently became aware of documents publicly filed in the New York Litigations, which were circulating on social media, and which reflected involvement by Nathan, Wilson, and TAG in the Smear Websites. Counsel for Ms. Ghost promptly obtained copies of the filed documents in the New York Litigations, including a series of messages between Nathan and one of her subordinates at TAG, Ms. Case, discussing the preparation of websites targeting Ms. Ghost, for Wilson. (Moniz Decl. ¶ 4-5, **Ex. 2**.) In the messages, Nathan wrote instructions to Ms. Case that:

- **"So basically, Rebel wants a one of those sites"**

- **"Should be a mixture of that document that I think Carolina pulled about Amanda goes or the Intern pulled The voice note and this…** *Attachment: \_\_Library\_SMS\_Attachments\_88\_08\_DB9BA138-EBEE-4043-803C-A39606AB4701\_Amanda Ghost website.docx (26 KB)*

- **"It can be really really harsh"**

- **"Russian oglivarchs [sic] and making her a madam basically lol"**

(See Declaration of Samuel A. Moniz at ¶ 4-5, Exhibit 2.)

Documentary evidence and filings in the New York Litigations further reflect that Nathan and Wilson did not act alone, but were supported by others who were materially involved, including a person named Jed Wallace, Carolina, and Bryan Freedman. Nathan's messages to Ms. Case reflect that a person named "Jed" was involved in discussing the content of the Smear Websites, and that the material was also based on materials about Ms. Ghost that had been compiled by a person named "Carolina." (*Id.*) Wilson has conceded publicly that Nathan was employed by her former attorney, Bryan J. Freedman. In a recent interview with 60 Minutes Australia, Wilson acknowledged that Nathan "worked for my lawyer" but was unable to offer any

innocent explanation for her obvious involvement.[3]  Mr. Freedman is specifically discussed in the written exchanges between Nathan and Ms. Case ("I'm already trying to kill one rebel story and deal with Mattel loss for Bryan" "Jed and Bryan asking me for copy lol kill me").  (**Ex. 2**.)  Notably, Mr. Freedman has also been accused in the New York Litigations of facilitating similar smear websites.  For instance, in a filing dated November 13, 2025, counsel in the New York Litigations noted the following about Ms. Case's testimony at deposition:

> Ms. Case's own under oath testimony reveals that Ms. Case was integrally involved in planting and providing information for the Business Insider article, starting in March 2024—earlier than Jonesworks had previously been aware. It is also apparent that Ms. Case had a material role in the creation and drafting of copy for the defamatory website and social media handles regarding Stephanie Jones, ***as part of a pattern and practice of drafting copy for and assisting with similar smear websites against many individuals, together with Melissa Nathan, Jed Wallace, and Bryan Freedman."*** (Emphasis added).[4]

D.    The Anti-SLAPP Motion

In response to Ms. Ghost's Cross-Complaint for defamation based on the Smear Websites, Wilson filed an anti-SLAPP motion, the gravamen of which is that Wilson "had nothing to do with the websites" and that neither "Wilson nor anyone acting at her direction asked for, authorized, or caused the websites to be created."  (anti-SLAPP Mot. 1:3-6.)  Wilson has submitted a declaration to that effect.[5]  Nathan and TAG joined in Wilson's anti-SLAPP Motion, and Nathan submitted a declaration stating that neither she nor TAG registered, created, or provided any of the content in the websites.  The truth or falsity of Wilson's and Nathan's denials are at the core of their anti-SLAPP Motion.

---

[3] See Ms. Ghost's Request for Judicial Notice at ¶ 7.  The full interview involving Wilson is available on YouTube at https://www.youtube.com/watch?v=Oiv6ikIwMXQ.  Wilson's discussion of the Smear Websites begins at 18:09 minutes.

[4] Request for Judicial Notice at ¶ 5, S.D.N.Y. Case No. 1:25-cv-00779-LJL Document 170-10, at page 2.

[5] Wilson's credibility is squarely at issue in this case, and, as will be demonstrated more thoroughly in opposition to the anti-SLAPP Motion, she has shown no compunction in submitting false testimony under oath.

III.    **ARGUMENT**

A.      Good Cause Exists To Grant The Requested Discovery, Especially As To the
        Issues Of Publication And Malice

Ms. Ghost's request for limited, targeted discovery should be granted.

As stated by the California Supreme Court, "the SLAPP Act was 'intended to end meritless SLAPP suits early without great cost to the target,' *not* to abort potentially meritorious claims due to a lack of discovery." *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949 (citation omitted). Although the filing of an anti-SLAPP motion stays discovery in an action until the motion is resolved, "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." Code Civ. Proc. § 425.16(g). "Good cause" exists when "the specified discovery is necessary for the plaintiff to oppose the anti-SLAPP motion and is tailored to that end." *Balla v. Hall* (2021) 59 Cal.App.5th 652, 692 (cleaned up) (discovery was properly allowed where the plaintiffs "sought discovery on actual malice" and "narrowly tailored their requests by seeking the depositions of Hall, Siegel, and a handful of others"). Further, "the fact [that] evidence necessary to establish the plaintiff's prima facie case is in the hands of the defendant or a third party goes a long way toward showing good cause for discovery." *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 778, citing *The Garment Workers Center v. Superior Court* (2004) 117 Cal.App.4th 1156, 1162. In *Lafayette Morehouse, Inc. v. Chronicle Publishing, Co.* (1995) 37 Cal.App.4th 855, 868, the court explained:

> Motions under section 425.16 commonly will be filed early in the legal proceedings, before the plaintiff has the opportunity to conduct (or complete) significant and necessary discovery. If the plaintiff makes a timely and proper showing in response to the motion to strike, that a defendant or witness possesses evidence needed by plaintiff to establish a *prima facie* case, **the plaintiff must be given the reasonable opportunity to obtain that evidence through discovery before the motion to strike is adjudicated. The trial court, therefore, must liberally exercise its discretion by authorizing reasonable and specified discovery** timely petitioned for by a plaintiff in a case such as this, when evidence to establish a *prima facie* case is reasonably shown to be held, or known, by defendant or its agents and employees. (emphasis added).

1       Here, the anti-SLAPP Motion centers on the factual contention by Wilson and Nathan that

2    they were not involved in the publication of the Smear Websites.  Those denials, however, are

3    contradicted by a mountain of circumstantial evidence – including written admissions – that argue

4    powerfully for further discovery on this issue.  The Cross-Defendants' self-serving declarations

5    are dubious at best.  In fact, they are likely false and perjurious.  Discovery is plainly permissible

6    and justified to enable Ms. Ghost to present a prima facie case of defamation, including as to the

7    element of publication, which is the threshold question put at issue by the anti-SLAPP Motion.

8    *See, e.g., Sanchez, supra,* 80 Cal.App.5th at 779-80 (noting that discovery is permissible as to the

9    element of publication); *see also, Diamond Resorts U.S. Collection Development LLC v. Pandora*

10    *Marketing, LLC* (C.D. Cal. 2020) 500 F.Supp.3d 1104, 1112 (noting in the context of federal

11    practice that "[w]hen a factual sufficiency challenge is made, discovery must be allowed, with

12    opportunities to supplement evidence based on the factual challenges").

13           1.     Good Cause Exists For Discovery As To Publication

14       Here, without disputing that false and defamatory materials were published about Ms.

15    Ghost on the Smear Websites, the anti-SLAPP Motion primarily asserts that Wilson, Nathan, and

16    TAG are not the persons responsible for the publication of those defamatory materials.  Therefore,

17    they assert that as a factual matter they are not subject to a defamation action.  Those denials are

18    highly suspect – and Ms. Ghost's believes they will be proven false.  At this stage, however, they

19    implicate one of the key  elements of defamation that must be met in opposing an anti-SLAPP

20    motion: *publication* of a defamatory statement.  *See, e.g., Taus v. Loftus* (2007) 40 Cal.4th 683,

21    720.  There is significant evidence to warrant the belief that these denials cannot be trusted and

22    that discovery is likely to lead to substantial evidence that will support the element of publication.

23    For instance, there is written evidence that Nathan, on Wilson's behalf, directed Ms. Case to

24    prepare written copy for the Smear Websites.  There is an undeniable symmetry between Wilson's

25    statements and lies about Ms. Ghost and the content of the Smear Websites.  The timing is

26    likewise significant – the Smear Websites appeared when Wilson felt that she had been attacked in

27    the media, as the parties' contractual dispute became public.  And Wilson's subsequent conduct

28

1   (such as stating as her "opinion" that the content of the Smear Websites is true, and including links

2   to the Smear Websites in her pleadings in this case) is strongly suggestive of her involvement.

3         Thus, there are strong reasons not to simply accept the Cross-Defendants' denials at face

4   value.  Ms. Ghost ought to be permitted to conduct discovery to further bolster her prima facie

5   claims.  The requested discovery on this topic is appropriately tailored to the issues raised by the

6   anti-SLAPP Motion, as follows:

7         **Katie Case.**  Ms. Case is a critical witness, who will be able to contextualize and

8   authenticate Ms. Nathan's written instructions to her to prepare written copy for the Smear

9   Websites on Wilson's behalf.  Further, it appears that she has testified contrary to Ms. Nathan in

10  the New York Litigations, and that her testimony in this action will undermine Ms. Nathan's

11  credibility and support a *prima facie* case that Ms. Nathan and Wilson were involved in

12  publication.  Further depositions of other persons apparently involved could also help link the

13  Smear Websites to the Cross-Defendants: this includes the person identified as "Carolina;" Jed

14  Wallace; and Mr. Freedman, all of whom appear to have been involved based on the documents

15  currently available.  In addition, Ms. Case is likely to be in possession of additional documents

16  and communications discussing the content and creation of the Smear Websites.  In particular, she

17  may be in possession of the word document sent to her by Ms. Nathan, entitled "Amanda Ghost

18  Website.docx," which should certainly be turned over.

19        **TAG/Nathan Documents.**  Ms. Ghost should be permitted to seek documents from TAG

20  and Ms. Nathan pertaining to Ms. Ghost, the Smear Websites, and Wilson's dispute with Ms.

21  Ghost.  This should include any documents produced or deposition testimony given in the New

22  York Litigations on those topics.  For instance, TAG and/or Ms. Nathan ought to be in possession

23  of the word document sent to Ms. Case by Ms. Nathan, entitled "Amanda Ghost Website.docx,"

24  which ought to be provided to Ms. Ghost.  Such topics are calculated to controvert Nathan's denial

25  of involvement, which is already controverted by her own words to Ms. Case.

26        **Wilson/Nathan Depositions.**  The depositions of Wilson and Nathan are warranted on the

27  issue of their involvement in publication, particularly so that they can be subjected to cross

28

examination on the numerous pieces of circumstantial and documentary evidence that controvert their denials.

## 2.     Discovery Is Warranted As To Issues Of Malice

Ms. Ghost does not concede that she is required to show actual malice to defeat the anti-SLAPP Motion.  However, to the extent that the Court requires a showing of actual malice, which turns on the defendants' subjective belief as to the truth or falsity of their statements, discovery is plainly warranted to develop a factual record to support it.  "Factors such as failure to investigate, anger and hostility, and reliance on sources known to be unreliable or biased" will show malice. *Mitchell v. Twin Galaxies, LLC* (2021) 70 Cal.App.5th 207, 221.  Malice can also be shown "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."  *St. Amant v. Thompson* (1968) 390 U.S. 727, 732; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 391. "[E]vidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences," the presence of malice. *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 257.

Here, the discovery specified above is also tailored to issues of malice, because it will lead to discovery on such matters as the purpose and intent of the Smear Websites; how they were prepared; and what sources were relied on in their preparation.

**Katie Case.**  Ms. Case, because of her near-certain involvement in drafting copy for the Smear Websites, can shed light on what went into the language; what sources, if any were relied on, and their reliability (or lack thereof); her instructions, purpose, and motive in preparing the copy; and whether she or the other persons involved believed in the truth of their contents.  The same can be said for the potential follow-up depositions of "Carolina," Jed Wallace, and Mr. Freedman.

**TAG/Nathan Documents.**  Likewise, documents, communications, and testimony about the Smear Websites in possession of Nathan and TAG are reasonably likely to lead to evidence of malice.  It appears likely that the Smear Websites did not appear in isolation, but were part of a

broader pattern of defamatory tactics employed by Nathan and TAG on behalf of various clients, including Wilson, all of which, once established, will certainly support an inference of malice.

**Wilson/Nathan Depositions.** The depositions of Wilson and Nathan are warranted on the issue of their subjective beliefs, particularly so that they can be subjected to cross examination on the numerous pieces of circumstantial evidence that controvert their denial of involvement; and their motives in manufacturing a defamatory campaign against Ms. Ghost.

B.    The Request Is Narrowly Tailored And Will Not Prejudice Wilson

The discovery requested herein is narrowly tailored, directly relevant to the issues, and minimally intrusive. Limited depositions and document discovery – the scope of which would be limited to only those factual matters put at issue by the pending anti-SLAPP Motion – will not cause any prejudice to the Cross-Defendants. Conversely, it is necessary for the Ms. Ghost to properly present evidence in support of her claims. Good cause exists for discovery. (Moniz Decl. 10.)

C.    The Court Should Continue The Anti-SLAPP Hearing By 90-120 Days

A continuance of 90 to 120 days is requested to allow for the discovery requested herein. Such a continuance is warranted because certain of the requested elements of discovery (such as document requests) are inherently time consuming. Further, third party depositions require the service of subpoenas and at least some potential deponents – including Ms. Case – are believed to be located in other states. As a practical matter, it will be difficult to complete discovery proceedings in less than 90 days, even if there are no unexpected delays. (Moniz Decl. 11.)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-20-

IV.    **CONCLUSION**

For the foregoing reasons, Ms. Ghost respectfully requests that the Court grant the Motion.

Dated:  December 5, 2025                    Respectfully submitted,

                                            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                    By    _Camille M. Vasquez_
                                            CAMILLE M. VASQUEZ
                                            SAMUEL A. MONIZ
                                            Attorneys for Plaintiffs and Cross-Defendants
                                            AMANDA GHOST, GREGOR CAMERON,
                                            and VINCE HOLDEN

<u>PROOF OF SERVICE</u>

**Amanda Ghost, et al. v. Rebel Wilson**
**Case No. 24STCV17314**

<u>STATE OF CALIFORNIA, COUNTY OF ORANGE</u>

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Orange, State of California. My business address is 650 Town Center Drive, 10th Floor, Costa Mesa, CA 92626-1993.

On December 5, 2025, I served true copies of the following document(s) described as **AMANDA GHOST'S MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY IN RESPONSE TO ANTI-SLAPP MOTION** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address CSuda@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 5, 2025, at Orange, California.

Casey Suda

**SERVICE LIST**
**Amanda Ghost, et al. v. Rebel Wilson**
**Case No. 24STCV17314**

| | |
|---|---|
| Allyson Thompson<br>Hart Kienle Pentecost<br>4 Hutton Centre Drive, Suite 900<br>Santa Ana, CA 92707-8713<br>Telephone: (714) 432-8700<br>athompson@hkplawfirm.com<br>rfernandez@hkplawfirm.com | Attorneys for Defendant and Cross-Complainant<br>REBEL WILSON |
| Jean-Paul Jassy<br>Nicholas R. Hartmann<br>JASSY VICK CAROLAN LLP<br>355 South Grand Avenue, Suite 2450<br>Los Angeles, California 90071<br>Telephone: 310-870-7048<br>Facsimile: 310-870-7010<br>jpjassy@jassyvick.com<br>nhartmann@jassyvick.com<br>office@jassyvick.com | Attorneys for Defendant and Cross-Complainant<br>REBEL WILSON |
| Douglas Mirell<br>NOLAN HEIMANN LLP<br>16000 Ventura Blvd., Suite 1200<br>Encino, California 91436<br>Telephone: (818) 574-5710<br>dmirell@nolanheimann.com<br>schateauneuf@nolanheimann.com | Attorneys for Cross-Defendants<br>MELISSA NATHAN and THE AGENCY<br>GROUP PR, LLC |

 Journal Technologies Court Portal

# Court Reservation Receipt

## Reservation

| | |
|---|---|
| Reservation ID:<br>099894740620 | Status:<br>RESERVED |
| Reservation Type:<br>Motion for Leave (to Take Limited Discovery in Response to Anti-SLAPP Motion) | Number of Motions:<br>1 |
| Case Number:<br>24STCV17314 | Case Title:<br>AMANDA GHOST, AN INDIVIDUAL, et al. vs REBEL WILSON, AN INDIVIDUAL |
| Filing Party:<br>Amanda Ghost (Cross-Complainant) | Location:<br>Stanley Mosk Courthouse - Department 48 |
| Date/Time:<br>January 8th 2026, 8:30AM | Confirmation Code:<br>CR-EWESZRJZ2VTR4GYD2 |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion for Leave (name extension) | 0.00 | 1 | 0.00 |
| TOTAL | | | **$0.00** |

## Payment

| | |
|---|---|
| Amount:<br>$0.00 | Type:<br>NOFEE |

 **‹ Back to Main**     **Print Page**

Copyright © Journal Technologies, USA. All rights reserved.