# Exhibit 24

CONFIDENTIAL

```
                                                    Page 1

 1             UNITED STATES DISTRICT COURT
 2         FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                     ---oOo---
 4
 5   BLAKE LIVELY,
 6                 Plaintiff,
 7     vs.        CASE NO. 24-CV-10049-LJL (LEAD CASE)
                             25-CV-449 (LJL) (MEMBER CASE)
 8
     WAYFARER STUDIOS LLC, ET AL.,
 9
                   Defendants.
10   _____
     JENNIFER ABEL,
11             Third-party Plaintiff,
       vs.
12   JONESWORKS, LLC,
               Third-party Defendant.
13   _____
     WAYFARER STUDIOS LLC, et al.,
14             Consolidated Plaintiffs,
       vs.
15   BLAKE LIVELY, et al.,
               Consolidated Defendants.
16   _____
17                  **CONFIDENTIAL**
18
19       VIDEO-RECORDED DEPOSITION OF JAMEY HEATH
20               Los Angeles, California
21             Thursday, October 9, 2025
22
23   Stenographically Reported by:  Ashley Soevyn,
24   CALIFORNIA CSR No. 12019
25
```

CONFIDENTIAL

Page 27

```
 1        A     I am.

 2        Q     Did you discuss with them, yes or no,

 3   what you were going to testify about with respect to

 4   that answer this morning?

 5             MS. SHAPIRO:  Same objection and same

 6   instruction.

 7   BY MS. SHAH:

 8        Q     Are you going to follow that instruction?

 9        A     I think it's best.

10        Q     Okay.  I don't have the words right in

11   front of me, but you did give me the correction that

12   you wanted to correct at the top of the testimony

13   today.  Would you just explain that to me again?

14   What it is about yesterday's testimony that you

15   wanted to correct in today's testimony.

16        A     I think simply, as I was testifying as it

17   pertains to 17-point list and my state of mind and

18   how I viewed it, in reflecting, while, of course, I

19   agreed that all of these things were reasonable

20   things that anyone asked for, I think I also

21   messaged that I may not have considered that some of

22   these things had some -- a nod to how -- what may

23   have been brought up in the past.  And that's what I

24   wanted to.

25        Q     I see.  So am I understanding correctly
```

CONFIDENTIAL

Page 28

1    that what you're essentially saying is, you think

2    during the deposition yesterday, it may have

3    appeared from your testimony that you were not

4    leaving room for the possibility that some of the

5    things on the 17-point list related in some way to

6    past incidents, and -- and that's the aspect of it

7    that you want to expand on this morning?

8              MS. SHAPIRO:  Objection.

9              Go ahead.

10             THE WITNESS:  Not necessarily that it

11   related or not, but that I -- that I had considered

12   that could some of these things have some sort of

13   nod -- for lack of a better term -- to what we had

14   discussed in the past.

15   BY MS. SHAH:

16        Q    What you and Ms. Lively and others had

17   discussed in the past?

18        A    What -- yeah, some of the concerns that

19   she may have spoken about.

20        Q    Okay.  And when you say the word "nod,"

21   like it may have some nod to those things, do you

22   mean reference, or relatedness, or can you give me

23   another verb?

24        A    That it could have insinuated that

25   possibly, is this related to anything that's come up

CONFIDENTIAL

Page 29

1   before?  While I didn't necessarily land on that,

2   but that it was a consideration.

3        Q    It's something that went through your

4   mind at the time?

5        A    Sure.

6        Q    Okay.  Why was it important to you to

7   correct that aspect of your testimony this morning?

8             MS. SHAPIRO:  Objection.

9             THE WITNESS:  I want to really do my best

10  to reflect and to be truthful.  And if that was

11  sitting in me, that did I convey that correctly?

12  And so that was -- that was the purpose.

13  BY MS. SHAH:

14       Q    Is there anything else about your

15  testimony yesterday that you want to take the

16  opportunity now to correct?

17       A    No.

18       Q    Okay.  You were in the room, the breakout

19  room with your lawyers last night after the

20  deposition with some of the other defendants here,

21  and I believe your wife and Mr. Baldoni's wife for

22  quite a long time last night.  During that time, did

23  you discuss the substance of your deposition

24  testimony yesterday in any respect?

25       A    I don't believe so.

CONFIDENTIAL

Page 39

1    have impact whether or not they make money.  Of

2    course we have to make money, but that's not our

3    primary goal.

4            Q    Is Wayfarer profitable?

5            A    No.

6            Q    Has it ever been?

7            A    No.

8            Q    I believe Mr. Sarowitz testified that

9    Wayfarer is paying for the litigation fees and

10   expenses of the various defendants in these two

11   related litigations; is that correct?

12           A    I don't know about -- well, the

13   defendants, yes, we are paying for those.

14           Q    And that includes litigation fees and

15   expenses for Mr. Baldoni's defense?

16           A    It does.

17           Q    And for Ms. Abel's defense?

18           A    It does.

19           Q    And for Ms. Nathan's defense?

20           A    It does.

21           Q    And for Wayfarer's defense?

22           A    Yes.

23           Q    For Mr. Wallace's defense?

24           A    Yes.  Sorry.  I just needed to -- there

25   is a lot of expenses, so I'm just making sure.

CONFIDENTIAL

Page 40

1      Q    And for Street Relations' defense?

2      A    I believe so.  I don't know if there is a

3  distinction between the two.

4      Q    And for The Agency Group's defense?

5      A    I believe so.

6      Q    For your defense?

7      A    Yes.

8      Q    For Mr. Sarowitz's defense?

9      A    Yes.

10      Q    Am I missing any defendants that you are

11  paying for?

12      A    I don't think --

13           MS. SHAPIRO:  Objection.

14           THE WITNESS:  -- there's any other

15  defendants.

16  BY MS. SHAH:

17      Q    Okay.  How about attorneys' fees for

18  Ms. Case's legal fees related to this case?

19           MS. SHAPIRO:  Objection.  Objection.

20           THE WITNESS:  I don't know.

21  BY MS. SHAH:

22      Q    How about for the attorneys' fees related

23  to Ms. Koslow's involvement in this case?

24           MS. SHAPIRO:  Objection.

25           THE WITNESS:  Similarly, I don't know.

CONFIDENTIAL

Page 111

1          MS. SHAH:  Can you pull tab 7?

2          I'm going to show you what's been marked

3     as Exhibit 27.  It's a document -- email with an

4     attachment, dated October 24th, 2024,

5     Bates-stamped JONESWORKS_WAYFARER_, several zeroes,

6     3754.

7          (Exhibit 27 marked for identification.)

8     BY MS. SHAH:

9          Q     Do you see that?

10         A     I do.

11         Q     Who is Mitz Toskovic at Wayfarer?  And

12    forgive my pronunciation.

13         A     Mitz Toskovic or Toskovic.  She's our

14    vice president of operations.

15         Q     Who is Laura Voglesong?

16         A     She's our controller.

17         Q     Who is ██████████████████

18         A     He's our CFO.

19         Q     What is his last name?

20         A     Singer.

21         Q     You're not on this email, it doesn't

22    appear to me.  Unless, are you part of the -- so

23    there is a --

24         A     I'm on it.

25         Q     You're on the accounting listserv?

CONFIDENTIAL

Page 134

1    Isabela Ferrer's experiences on the set and what she

2    has testified to in this case, right?

3         A    I don't believe we talked about Isabela

4    yesterday.

5         Q    Okay.  Counsel talked to you yesterday

6    about Ms. Hoover's experiences on the set, and what

7    she has testified to about in this case, right?

8              MS. SHAPIRO:  Objection.

9              THE WITNESS:  I don't recall that.

10   BY MS. SHAH:

11        Q    Okay.  At least with respect to then

12   three women involved in the film; Ms. Lively,

13   Ms. Slate, and Alex Saks, coming into August of

14   2024, how do you think it's possible that by then

15   you did not recognize indications of their

16   discomfort and concerns about what had happened on

17   the set and people's on-set behavior?

18             MS. SHAPIRO:  Objection.

19             THE WITNESS:  In order to have this

20   conversation or for me to give testimony -- it's not

21   really a conversation.  I don't know how this is

22   working.  We're going to have to separate Alex Saks.

23   Because other than what I heard and some testimony

24   and until she then also would not go to the

25   premiere, up until that time, we were on fine

CONFIDENTIAL

Page 135

1   speaking terms.  She and I were -- everything was

2   good.

3           So other than, which I acknowledge there

4   was a moment that they bumped heads on set, there

5   was no indication that there was anything more than

6   that with Alex Saks, nor have I heard any

7   accusations that there was more other than they

8   bumped heads a few times.

9           I don't want to belittle what someone may

10  feel, but I want to be clear that in intense

11  situations, people bump heads all the time.  I'm

12  sure you've bumped heads with an attorney once or

13  twice.  I saw you guys going at it a few times.  It

14  happens, but then do you go and think that there is

15  a problem with this person because you bumped heads?

16  That's what the experience was with Alex.  So I

17  think it's important to separate that from anything

18  else.  Because there was no indication for me at

19  that point to think when you say "other women" to

20  include Alex, if that's fair.

21  BY MS. SHAH:

22      Q    I don't know whether it's fair or not,

23  but I accept your answer.

24          And I guess my question is, respectfully,

25  your perspective of these various incidents seems

Page 145

1  to discuss or clear the air about.  One of them was

2  the incident with you and she in her trailer, right,

3  when she was getting her body makeup removed.  And

4  you mentioned that she had said something to you

5  like, I asked you to look away and I turned around

6  and we made eye contact or something like that,

7  right?

8        A    In the June 1st meeting?

9        Q    Okay.

10        A    Is that what you mean?

11        Q    Sure.  At any point in time.

12        A    Okay.  I didn't know if you talked about

13  --

14        Q    Fair.

15        A    -- other things.

16        Q    I guess my question is, you understood,

17  though, from your discussions with her that the

18  issue about you entering her trailer was because she

19  was nude from the waist up, right?

20        A    No.

21             MS. SHAPIRO:  Objection.

22  BY MS. SHAH:

23        Q    You didn't think she asked you to turn

24  around because she was nude from the waist up?

25             MS. SHAPIRO:  Objection.

CONFIDENTIAL

Page 146

1           THE WITNESS:  I did not think that.

2    BY MS. SHAH:

3        Q    Does she typically ask you to turn around

4    when she's having conversations with you when she

5    has her clothes on?

6           MS. SHAPIRO:  Objection.

7           THE WITNESS:  Fair.

8    BY MS. SHAH:

9        Q    Okay.

10       A    I didn't see her, what she was wearing or

11   not wearing.  I saw that she was leaning back, and

12   it looked like she was either feeding or maybe

13   nursing -- or pumping.  That's what it appeared she

14   was doing.  When she asked me to look away, I

15   thought it was in that regard.

16       Q    I understand --

17       A    So I never saw it, so I didn't question

18   that.  So I moved over and looked away based on

19   that.

20       Q    Okay.  But even nursing or pumping

21   involves activity with a woman's breasts, right?

22       A    Sure.

23       Q    And you understood that it was in that

24   context that she was asking you not to look, right?

25       A    Fair.  She asked me to look away, so

CONFIDENTIAL

Page 147

1    whatever she was doing, she didn't want me to --

2         Q    Right.

3         A    Sure.

4         Q    And what she was doing was something that

5    had to do with her breasts being exposed or

6    involved?

7         A    Okay.

8         Q    Okay.  The video that you mentioned that

9    she -- that you showed her of your wife was one of

10   the things that she raised for discussion with you,

11   right?

12             MS. SHAPIRO:  Objection.

13             THE WITNESS:  Correct.

14   BY MS. SHAH:

15        Q    Okay.  However you want to characterize

16   that video, that is a video -- I don't mean that in

17   any way other than I'm trying not to say "birthing

18   video," because I understand there's been some

19   discrepancy around what exactly is in the video.

20        A    Okay.

21        Q    That is a video of some portion of your

22   wife in an intimate scene with you during the

23   process of birthing your child, right?

24        A    The word "intimate" throws me when you

25   say that.

CONFIDENTIAL

Page 348

1                REPORTER'S CERTIFICATE

2        I, ASHLEY SOEVYN, a Certified Shorthand

3  Reporter of the State of California, do hereby

4  certify:

5        That the foregoing proceedings were taken

6  before me at the time and place herein set forth;

7  at which time the witness was put under oath by me;

8        That the testimony of the witness, the

9  questions propounded, and all objections and

10  statements made at the time of the examination were

11  recorded stenographically by me and were thereafter

12  transcribed;

13        That a review of the transcript by the

14  deponent was/ was not requested;

15        That the foregoing is a true and correct

16  transcript of my shorthand notes so taken.

17        I further certify that I am not a relative

18  or employee of any attorney of the parties, nor

19  financially interested in the action.

20        I declare under penalty of perjury under

21  the laws of California that the foregoing is true

22  and correct.  Dated this 10th day of October 2025.

23

24  _____

     ASHLEY SOEVYN

25  CSR No. 12019