# Exhibit 149

Exhibit: 3
Witness: GIANETTI
Date: 9/23/25
CSR#12019: Ashley Soevyn

**Message**

| | |
|---|---|
| From: | Moore, Schuyler [ ] |
| Sent: | 10/27/2022 6:50:40 AM |
| To: | Marshall, Michael [ ] |
| CC: | Giannetti, Andrea [ ]; McQueen, DeShawn [ ]; 'Julia Harris' [ ]; 'Jamey Heath' [ ]; 'Andrew Calof' [ ]; 'Deborah McIntosh' [ ]; 'Abraham Bengio' [ ]; 'Hannah Davis' [ ]; 'Danny Greenberg' [ ]; 'Patrick Trey Brady' [ ]; 'Imene Meziane' [ ]; 'Mitz Toskovic' [ ]; 'Brian Singer' [ ]; |
| Subject: | IT ENDS WITH US / Proposed Sony Co-Production Term Sheet |
| Attachments: | [RED] Proposal to Sony for It Ends With Us [#4510978v6 to #4510978v5].doc; [Modified Document] Proposal to Sony for It Ends With Us.doc |

Michael,

Attached please find a clean and redlined proposal with our remaining minor requested changes. Please let me know if we are good to go.

Thank you.

Sky

Schuyler M. Moore
Partner
Biography | vCard

Greenberg Glusker LLP
2049 Century Park East, Suite 2600
Los Angeles, CA 90067
GreenbergGlusker.com

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

## PROPOSAL TO COLUMBIA PICTURES FOR "IT ENDS WITH US"

1. <u>Definitions</u>. Capitalized terms used herein have the following meanings

    a. "Book" means the book titled "It Ends With Us" written by Colleen Hoover.

    b. "BTS Special" means a behind-the scenes special for the Picture.

    c. "Budget" means a mutually agreed budget for production of the Picture and the BTS Special.

    d. "Derivative Rights" means all derivative rights to the Book other than the Picture Rights.

    e. "Overages" means production costs for the Picture in excess of the Budget.

    f. "Picture" means one feature length film based upon the Book.

    g. "Picture Rights" means the perpetual, worldwide rights to the Picture in all media and all standard ancillary rights thereto (e.g. merchandising and consumer products, but for the avoidance of doubt, excluding theme park and live stage rights), including the BTS Special. The Picture Rights include a 50% interest in the copyright to the Picture.

    h. "Wayfarer" means Wayfarer Studios, LLC.

2. <u>Grant of Rights</u>. Wayfarer will grant the Picture Rights to Columbia. If principal photography of the Picture does not commence within one year of closing, the Picture Rights shall revert to Wayfarer. The parties approve the current screenplay for the Picture.

3. <u>Derivative Rights</u>. All Derivative Rights will be retained by Wayfarer and held back for three years from initial release of the Picture. Columbia will have (a) an option to co-finance derivative feature-length films on the same basis as for the Picture and (b) a first negotiation and first refusal on co-financing other derivative works.

4. <u>Funding</u>. Columbia and Wayfarer will each cash flow 50% of up to 110% of the Budget. Wayfarer will control production and will fund any Overages over 110% of the Budget (which must be approved by Columbia unless they are due to unforeseen events). Columbia will fund all distribution expenses, residuals, and participations. Columbia to provide QD and/or DAA letter to the relevant guilds.

5. <u>Approvals</u>. Mutual approval of Columbia and Wayfarer is required for all material creative and business decisions for the Picture, including the following:

    a. Budget (not to exceed $25 million), production schedule, and cash-flow schedule.

1

Confidential

SPE_BL0000368

  b. Final screenplay.

  c. Key cast.

  d. Fees and back-end to all talent.

  e. Music.

  f. Any replacement of director or lead actor.

  g. All producers and producer credits.

  h. Production company for the BTS Special and the licensing of it.

  i. Any other funding sources. Columbia may bring in third-party financing sources as long as (A) any fees, premium, or profit share to them is borne only by Columbia and (B) any credits to them that include the word "producer" must be approved by Wayfarer. Wayfarer pre-approves up to two individual executive producer credits for Columbia's slate co-financing partner, plus a logo and an "in association with" presentation credit.

  j. All product placements. Product placement company to be chosen by Wayfarer.

  k. Press releases.

  l. Submission to film festivals (with Columbia to have tie-breaker).

  m. Location of premieres (with Columbia to have tie-breaker).

  n. Marketing plan and budget (Justin Baldoni has extensive expertise at marketing), including an amount used by Belove.org (the non-profit arm of Wayfarer) to create impact via organizations that work against domestic violence and that can create ground support for the Picture. This should also have a Columbia tie-break in order to facilitate timely marketing/distribution of the picture (if the parties for some reason fail to mutually agree).

  o. Trailer.

6. <u>Director</u>. Justin Baldoni to direct. Picture to be edited at location of his choosing. Final cut to be determined by bakeoff. Bake-off ok provided that (a) it's a blind recruit test screening and (b) Justin's cut scores above ~~90~~ 85 in the top two boxes and above 70 in definite recommends. Alternatively, if Justin's cut scores at least 7 points higher in definite recommends than a cut incorporating Columbia's changes, then Justin's cut will also prevail.

7. <u>Actor</u>. Justin Baldoni to be lead actor.

8. <u>Production</u>. Wayfarer to produce, with producer fee of $1.5 million provided it fits within a $25 million Budget. Run time (with main and end credits) to be

54789-00001/4387694.2

Confidential  SPE_BL0000369

between 90-120 minutes. MPAA rating no more restrictive than "R".

9. **Waterfall of Gross Receipts.** Gross receipts from the Picture Rights shall be allocated as follows applying the Accounting Rider attached hereto:

a. First, Columbia shall retain a distribution fee equal of 10% of gross receipts attributable to "at-source" distribution by Columbia and its affiliates and 5% of all other gross receipts received by Columbia.

b. Next, recoupment of all distribution expenses, residuals, and participations to Columbia.

c. Next, 50-50 to Wayfarer and Columbia until they have recouped their funding of production costs up to 110% of the Budget.

d. Next, to Wayfarer in reimbursement of any Overage.

e. Next, 1% of the balance to Wayfarer overhead.

f. Thereafter, 50-50 to Wayfarer and Columbia.

10. **Credits.** Wayfarer to receive the following credits:

a. Animated logo following Columbia's.

b. Presentation credit reading "Presented by Columbia Pictures and Wayfarer Studios."

c. First position Produced by credit to _____ on a separate card

d. Two Executive Producer credits to Wayfarer's designees, and up to two executive producer credits to Columbia's slate co-financing partner.

e. One Co-Producer credit to Wayfarer's designee in the end crawl.

11. **Theatrical Release.** Columbia to release the Picture on a minimum of 2,300 screens ~~at the widest point of release — we need to preserve the possibility of a platform release. An~~ simultaneously upon initial release. Failure of Columbia to meet this (or an indication by Columbia that it does not plan to meet the minimum release requirement will give Wayfarer the option to take control over distribution of the Picture, subject to, if Columbia elects, Wayfarer buying out Columbia's financial interest in the Picture.

3

## ACCOUNTING RIDER

1. Gross Receipts

    a. Gross receipts will include all gross receipts actually received by Columbia or its affiliates attributable to the Picture Rights, including a fair allocation of any exclusivity payments, annual bonuses, etc. that are paid to Columbia in consideration for any grant of rights by Columbia that includes Picture Rights.

    b. Gross receipts will include 100% of home entertainment revenues received, not on a royalty basis, including physical media and all forms of VOD.

    c. There will be no reserves taken by Columbia. Instead, any refunds will just be deducted when and if paid; provided, if there are not adequate Gross Receipts within the next two accounting periods to recoup such refunds, Wayfarer shall pay to Columbia its share of such shortfall.

    d. All receipts will be reported on the cash method, except for refundable amounts received prior to delivery. Thus, advance payments will be reported as Gross Receipts when and if they are nonrefundable and will not be accrued over the term of the license.

    e. If the Picture is sold or licensed in a package with other films. There shall be an arm's-length fair market value allocation to the Picture.

2. Production and Distribution Expenses

    a. All costs will be calculated net of all discounts and rebates (including an a fair allocable share of any advance payments, volume discounts, incentive fees, exclusivity fees, and the like that apply to multiple films).

    b. All costs will be reduced by all cross-promotion payments actually received (and there will be no distribution fee on such amounts).

    c. There will be no mark-up of any costs.

    d. Checking costs shall not exceed 0.5% of theatrical Gross Receipts. And additionally, trade association dues shall not exceed 0.5% of theatrical Gross Receipts.

    e. There will be no double allocation of costs among multiple films; provided, Wayfarer shall have no right to audit any other titles.

    f. All reserves will be limited to a reasonable estimate of expenses to be incurred during the next six months.

    g. There will be no deduction of any of the following items:

4

       i.      Overhead, including employee salaries, their travel and other costs, and all "indirect costs" (as defined according to GAAP).

       ii.     Interest charges.

       iii.    Any payments to affiliates other than Affiliates that regularly provide the same service for third parties in the ordinary course of business, and then at the lowest charge paid by third parties.

3.    <u>Distribution Fees</u>.  Distribution fees will be charged based on Columbia's Gross Receipts, and not the receipts of subdistributors or third parties.

4.    <u>Audits and Dispute Resolution</u>.  Wayfarer to have full audit rights, including the right for Wayfarer's auditors to review copies of all agreements relating to gross receipts and costs subject to any pre-existing contractual prohibitions on such disclosure.  All disputes subject to jurisdiction in federal or state courts in Los Angeles County.  No arbitration, and no contractual limits on discovery of materials related to the Picture but in no event shall Wayfarer's auditors be provided access to materials for any other motion picture or television production.

Confidential

SPE_BL0000372

## PROPOSAL TO COLUMBIA PICTURES FOR "IT ENDS WITH US"

1. <u>Definitions</u>. Capitalized terms used herein have the following meanings

    a. "Book" means the book titled "It Ends With Us" written by Colleen Hoover.

    b. "BTS Special" means a behind-the scenes special for the Picture.

    c. "Budget" means a mutually agreed budget for production of the Picture and the BTS Special.

    d. "Derivative Rights" means all derivative rights to the Book other than the Picture Rights.

    e. "Overages" means production costs for the Picture in excess of the Budget.

    f. "Picture" means one feature length film based upon the Book.

    g. "Picture Rights" means the perpetual, worldwide rights to the Picture in all media and all standard ancillary rights thereto (e.g. merchandising and consumer products, but for the avoidance of doubt, excluding theme park and live stage rights), including the BTS Special. The Picture Rights include a 50% interest in the copyright to the Picture.

    h. "Wayfarer" means Wayfarer Studios, LLC.

2. <u>Grant of Rights</u>. Wayfarer will grant the Picture Rights to Columbia. If principal photography of the Picture does not commence within one year of closing, the Picture Rights shall revert to Wayfarer. The parties approve the current screenplay for the Picture.

3. <u>Derivative Rights</u>. All Derivative Rights will be retained by Wayfarer and held back for three years from initial release of the Picture. Columbia will have (a) an option to co-finance derivative feature-length films on the same basis as for the Picture and (b) a first negotiation and first refusal on co-financing other derivative works.

4. <u>Funding</u>. Columbia and Wayfarer will each cash flow 50% of up to 110% of the Budget. Wayfarer will control production and will fund any Overages over 110% of the Budget (which must be approved by Columbia unless they are due to unforeseen events). Columbia will fund all distribution expenses, residuals, and participations. Columbia to provide QD and/or DAA letter to the relevant guilds.

5. <u>Approvals</u>. Mutual approval of Columbia and Wayfarer is required for all material creative and business decisions for the Picture, including the following:

    a. Budget (not to exceed $25 million), production schedule, and cash-flow schedule.

1

Confidential

SPE_BL0000373

    b.    Final screenplay.

    c.    Key cast.

    d.    Fees and back-end to all talent.

    e.    Music.

    f.    Any replacement of director or lead actor.

    g.    All producers and producer credits.

    h.    Production company for the BTS Special and the licensing of it.

    i.    Any other funding sources. Columbia may bring in third-party financing sources as long as (A) any fees, premium, or profit share to them is borne only by Columbia and (B) any credits to them that include the word "producer" must be approved by Wayfarer. Wayfarer pre-approves up to two individual executive producer credits for Columbia's slate co-financing partner, plus a logo and an "in association with" presentation credit.

    j.    All product placements. Product placement company to be chosen by Wayfarer.

    k.    Press releases.

    l.    Submission to film festivals (with Columbia to have tie-breaker).

    m.    Location of premieres (with Columbia to have tie-breaker).

    n.    Marketing plan and budget (Justin Baldoni has extensive expertise at marketing), including an amount used by Belove.org (the non-profit arm of Wayfarer) to create impact via organizations that work against domestic violence and that can create ground support for the Picture. This should also have a Columbia tie-break in order to facilitate timely marketing/distribution of the picture (if the parties for some reason fail to mutually agree).

    o.    Trailer.

6.    <u>Director</u>. Justin Baldoni to direct. Picture to be edited at location of his choosing. Final cut to be determined by bakeoff. Bake-off ok provided that (a) it's a blind recruit test screening and (b) Justin's cut scores above 85 in the top two boxes and above 70 in definite recommends. Alternatively, if Justin's cut scores at least 7 points higher in definite recommends than a cut incorporating Columbia's changes, then Justin's cut will also prevail.

7.    <u>Actor</u>. Justin Baldoni to be lead actor.

8.    <u>Production</u>. Wayfarer to produce, with producer fee of $1.5 million provided it fits within a $25 million Budget. Run time (with main and end credits) to be

54789-00001/4387694.2

Confidential

SPE_BL0000374

between 90-120 minutes. MPAA rating no more restrictive than "R".

9. <u>Waterfall of Gross Receipts</u>. Gross receipts from the Picture Rights shall be allocated as follows applying the Accounting Rider attached hereto:

a. First, Columbia shall retain a distribution fee equal of 10% of gross receipts attributable to "at-source" distribution by Columbia and its affiliates and 5% of all other gross receipts received by Columbia.

b. Next, recoupment of all distribution expenses, residuals, and participations to Columbia.

c. Next, 50-50 to Wayfarer and Columbia until they have recouped their funding of production costs up to 110% of the Budget.

d. Next, to Wayfarer in reimbursement of any Overage.

e. Next, 1% of the balance to Wayfarer overhead.

f. Thereafter, 50-50 to Wayfarer and Columbia.

10. <u>Credits</u>. Wayfarer to receive the following credits:

a. Animated logo following Columbia's.

b. Presentation credit reading "Presented by Columbia Pictures and Wayfarer Studios."

c. First position Produced by credit to _____ on a separate card

d. Two Executive Producer credits to Wayfarer's designees, and up to two executive producer credits to Columbia's slate co-financing partner.

e. One Co-Producer credit to Wayfarer's designee in the end crawl.

11. <u>Theatrical Release</u>. Columbia to release the Picture on a minimum of 2,300 screens simultaneously upon initial release. Failure of Columbia to meet this (or an indication by Columbia that it does not plan to meet the minimum release requirement will give Wayfarer the option to take control over distribution of the Picture, subject to, if Columbia elects, Wayfarer buying out Columbia's financial interest in the Picture.

## ACCOUNTING RIDER

1. Gross Receipts

    a. Gross receipts will include all gross receipts actually received by Columbia or its affiliates attributable to the Picture Rights, including a fair allocation of any exclusivity payments, annual bonuses, etc. that are paid to Columbia in consideration for any grant of rights by Columbia that includes Picture Rights.

    b. Gross receipts will include 100% of home entertainment revenues received, not on a royalty basis, including physical media and all forms of VOD.

    c. There will be no reserves taken by Columbia. Instead, any refunds will just be deducted when and if paid; provided, if there are not adequate Gross Receipts within the next two accounting periods to recoup such refunds, Wayfarer shall pay to Columbia its share of such shortfall.

    d. All receipts will be reported on the cash method, except for refundable amounts received prior to delivery. Thus, advance payments will be reported as Gross Receipts when and if they are nonrefundable and will not be accrued over the term of the license.

    e. If the Picture is sold or licensed in a package with other films. There shall be an arm's-length fair market value allocation to the Picture.

2. Production and Distribution Expenses

    a. All costs will be calculated net of all discounts and rebates (including a fair allocable share of any advance payments, volume discounts, incentive fees, exclusivity fees, and the like that apply to multiple films).

    b. All costs will be reduced by all cross-promotion payments actually received (and there will be no distribution fee on such amounts).

    c. There will be no mark-up of any costs.

    d. Checking costs shall not exceed 0.5% of theatrical Gross Receipts. And additionally, trade association dues shall not exceed 0.5% of theatrical Gross Receipts.

    e. There will be no double allocation of costs among multiple films; provided, Wayfarer shall have no right to audit any other titles.

    f. All reserves will be limited to a reasonable estimate of expenses to be incurred during the next six months.

    g. There will be no deduction of any of the following items:

4

      i.      Overhead, including employee salaries, their travel and other costs, and all "indirect costs" (as defined according to GAAP).

      ii.      Interest charges.

      iii.      Any payments to affiliates other than Affiliates that regularly provide the same service for third parties in the ordinary course of business, and then at the lowest charge paid by third parties.

3.    <u>Distribution Fees</u>.  Distribution fees will be charged based on Columbia's Gross Receipts, and not the receipts of subdistributors or third parties.

4.    <u>Audits and Dispute Resolution</u>.  Wayfarer to have full audit rights, including the right for Wayfarer's auditors to review copies of all agreements relating to gross receipts and costs subject to any pre-existing contractual prohibitions on such disclosure. All disputes subject to jurisdiction in federal or state courts in Los Angeles County. No arbitration, and no contractual limits on discovery of materials related to the Picture but in no event shall Wayfarer's auditors be provided access to materials for any other motion picture or television production.

54789-00001/4387694.2

Confidential

SPE_BL0000377