# Exhibit 279



# JONESWORKS
## NEW YORK | LOS ANGELES

211 EAST 43rd STREET, SUITE 1501
NEW YORK, NEW YORK 10017

Wayfarer Studios LLC
7961 W 3rd Street, 2nd Floor
Los Angeles, CA 90048

Dear Jamey Heath,

This agreement (the "Agreement") confirms that Wayfarer Studios LLC (the "Client") is retaining JONESWORKS, LLC and/or its affiliates (the "Company") as its exclusive public relations counsel to provide strategic communications services as described on the attached Schedule A (the "Services").

The initial term of Client's engagement of Company as contemplated in this Agreement shall commence on 5/1/24 (the "Commencement Date") and conclude on 8/31/24 (the "Initial Term"). This agreement shall renew for additional one-year periods ("Extension Period(s)") unless notice is received by either party thirty (30) days prior to the expiration of the Initial Term of this Agreement, or any Extension Period. (The Initial Term and Extension Period(s) are hereinafter referred to as the "Term").

Company shall provide the Services in a professional manner and in accordance with the goals mutually established by Client and Company. Company shall take reasonable steps to keep Client informed of its progress, including current and upcoming placements. Nonetheless, Client understands and agrees that outside factors may affect the implementation of the Services and Company cannot make any representations or warranties that Client's desired placements or publicity will appear in media whenever or wherever desired.

As consideration for the Services during the Initial Term, Client hereby agrees to pay the Company a sum of $6,000.00 per month ("Services Fee") through the first four months ("Trial Period"). If services are requested to be continued, a monthly sum of $8,000.00 will be invoiced for the Extension Period beginning with the month of September 2024. Request to extend or terminate post the trial period must be submitted in writing to later than July 31st 2024.

This first month's Services Fee shall be due at the signing of the agreement. The Services Fee shall automatically increase at the beginning of each Extension Period by an amount equal to the increase in the cost of living for the twelve-month period preceding the commencement of each such Extension Period, as reported in the "Consumer Price Index for All Urban Consumers, New York and Northeastern New Jersey, All Items," published by the United States Department of Labor, Bureau of Labor Statistics (or, if such index is no longer published, a successor or comparable index that is published). If additional public relations services are requested (i.e., services other than those designated on Exhibit A), an additional fee shall be negotiated in good faith between Client and

Exhibit: 25
Witness: HEATH
Date: 10/9/25
CSR#12019: Ashley Soevyn

# JONESWORKS
###### NEW YORK | LOS ANGELES

Company prior to the provision of such additional services and such fee shall be payable in advance of the provision of such services.

Client understands and agrees that Client is responsible for all of Company's reasonable and customary third-party costs and expenses incurred in connection with the Services as well as all travel costs including, but not limited to, airline transportation and accommodations ("Expenses") provided that Client shall pre-approve all such Expenses greater than one thousand dollars ($1,000). All air travel shall be no less than business class, all hotel accommodations shall not be less than four stars, and all such air travel and hotel accommodations for which Client approval is required as per the terms of this Agreement, as requested by Client at the time of approval, will be secured through the Client. It is specifically stipulated and agreed that a Company representative shall be entitled to attend all press opportunities originated by Company.

In addition to the Services, it is hereby understood by Client and Company that Company shall use its best efforts to facilitate meetings, deals, and relationships with relevant third parties. In connection with the foregoing, to the extent that Company secures a Third-Party Agreement (as defined below) for Client, Company shall receive a commission fee of ten (10%) of the gross compensation due to Client in connection with such Third-Party Agreement (the "Commission"). For each Third-Party Agreement, (a) such Commission entitlement shall extend for as long as Client accrues compensation under such Third-Party Agreement, irrespective of the Term, expiration or termination of this Agreement; and (b) Client shall remit to Company the Commission payments on terms to be mutually agreed by Client and Company in good faith. As used herein, "Third Party Agreement" means an agreement entered into by or on behalf of Client with a third party and shall include, but be limited to, an agreement regarding Client's merchandising, testimonial, and/or commercial tie-in rights, among other rights Client may license to a third party ("License Rights"). In connection with the foregoing and with respect to the License Rights, Company shall perform one or more of the following services (a) aid/advise in the creation of merchandise (b) implementation of the License Rights and (c) design/market merchandise.

In addition, in the event that Company secures a speaking engagement or appearance for Client, Client hereby agrees to pay the Company twenty (20%) of the total fee due to Client in connection therewith ("Appearance Fees"). If additional services are requested (i.e., services other than those designated in Exhibit A), an additional fee shall be negotiated in good faith between Client and Company prior to the provision of any such additional services and such fee shall be payable in advance of the provision of such services.

With respect to the Services Fee, Client will be billed ten (10) days in advance of the start of each month and payment shall be due to Company no later than ten (10) days of Client's receipt thereof. With respect to Expenses, Client will be billed monthly, and payment shall be due to Company no later than ten (10) days of Client's receipt thereof. Client acknowledges and agrees that in the event that payments due to Company hereunder are not received in accordance with this Agreement, Company reserves the right and is entitled to suspend any services hereunder, including the Services, until such time as all outstanding payments are received by Company only after providing Client with a mandatory two (2) days notice to cure prior to taking effect.

# JONESWORKS
### NEW YORK | LOS ANGELES

Throughout Client's engagement of Company hereunder, Client may disclose or provide Company with confidential, proprietary and/or sensitive information about Client, its customers, or other related parties ("Confidential Information"). Company shall use reasonable efforts to keep Confidential Information confidential provided that Company may disclose such information to third parties in order to fulfill its obligations under this Agreement or to its legal representatives. Company shall not use such information for any purpose beyond the performance of Company's services hereunder unless otherwise required by law or a court of competent jurisdiction. Company may, however, use Client's name as part of its client list and publicly acknowledge that it is undertaking work for Client pursuant to this Agreement without specifying the nature of Services. For the avoidance of doubt, Confidential Information shall not include information (a) which is or later becomes publicly available through no wrongful act of Company, (b) known by Company prior to Client's disclosure to Company in connection with this Agreement or (c) independently developed by Company without reliance on information disclosed by Client. Notwithstanding the foregoing, Company is not liable for any third party's disclosure of Client's Confidential Information. Upon the expiration or termination of this Agreement and at the request of Client, Company shall return or destroy all of Client's Confidential Information in Company's possession and provide notice to Client of doing so.

During the Term and for the two years (2) period following the expiration or termination of this Agreement, Client agrees not to (a) solicit or attempt to solicit for employment any officer, employee or agent of Company (collectively, an "Employee") or (b) employ or attempt to employ, or otherwise induce or attempt to induce any Employee to terminate such Employee's employment or engagement with Company, without Company's prior written consent (collectively, the "Non-Solicitation Obligation").

Other than the authorization to terminate after the conclusion of the trial period, as noted in paragraph 4, either party may terminate this Agreement (a) without cause upon thirty (30) days' notice to the other party, or (b) the other party's material breach of this Agreement provided that the non-breaching party shall furnish notice of such breach to the breaching party and the breaching party shall have five (5) days from receipt of such notice to cure the breach. If the breach is not cured within such five (5) day period, the breaching party may terminate this Agreement immediately. Notwithstanding the foregoing, it is stipulated that if Client violates the Non-Solicitation Obligation, Company may terminate this Agreement immediately, without any such cure period. In the event of a termination of this Agreement, Client shall remain liable for all payments due for all Services rendered and Expenses incurred up to the date of termination provided that if the Agreement terminates on a date other than the first of a month, the Services Fee for the final month shall be pro-rated accordingly.

Company shall have no obligation to indemnify Client for any third-party claims, losses, damages, actions, liabilities, or costs against Client arising out of, resulting from or in connection with Company's representation of Client, the Services, or this Agreement other than for the Company's gross negligence or willful misconduct. Without limiting the foregoing, Company shall not be liable for any delay in or omission of publication or transmission, or for any error in any press or other publication, to the extent that such delay, omission, or error is outside Company's control or is the result of any third party's action or inaction. The indemnity provision herein shall survive the expiration and termination of this Agreement.

# JONESWORKS
### NEW YORK | LOS ANGELES

The parties shall use good faith efforts to resolve any disputes arising in connection with this Agreement and the relationship established hereunder amongst them. To the extent that the parties cannot reach a timely resolution (which shall be no later than twenty (20) days), any such disputes shall be submitted to final and binding arbitration in New York, New York subject to judicial review for any and all legal error in accordance with the laws of the State of New York. Such arbitration shall be conducted in compliance with the rules of the American Arbitration Association. Each party shall be responsible for its own costs in connection with such arbitration. Notwithstanding the foregoing, in the event of a breach or threatened breach of the Non-Solicitation Obligation, in addition to all other available remedies, Company shall be entitled to injunctive relief from a court of competent jurisdiction without being required to post a bond and without being required to show the inadequacy of money damages. This Agreement shall be governed by, construed under, and enforced in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein.

Sincerely,
Fred Joseph, Vice President of Finance

**Agreed to and Accepted:**

_____          _____
Jamey Heath                     Fred Joseph

_____          _____
Date:                           Date:



## SCOPE OF WORK

## SCHEDULE A: JUSTIN BALDONI x JONESWORKS

| | |
|---|---|
| Inter-Agency Programs + Partnerships | • Liaise with external third parties (Wayfarer Studios, Sony, Brand partners, and others) to ensure social media obligations are compliant with all contractual agreements. |
| Social Media Strategic Development + Execution | • Enhance and maintain a positive and engaging social media presence for Justin Baldoni.<br>• Develop, implement, and execute a 4-month personal digital strategy for Instagram and TikTok.<br>• Build monthly content calendars with suggested cadence, content type (reels, images, carousels), and captions.<br>    ○ Instagram: maximum cadence of three (3) posts per week<br>    ○ TikTok: maximum cadence of one (1) post per week<br>• Collaborate with Justin on what feels best for number of posts and which platforms with a mix of IEWU, other Wayfarer Studios projects, personal and wellness initiatives.<br>• 5 hours per week dedicated to Community Management by monitoring, moderating, and engaging in social media conversations, trends, and topics related to Justin's work.<br>• Identify, discuss and potentially implement social media trends and challenges relevant to Justin and his interests. |
| Creative Services | • Provide basic editing and corrections for provided assets to use on Justin's social platforms. |
| Measurement and Evaluation | • Measure and analyze content performance to inform and optimize future content recommendations.<br>• Provide insights about Justin's existing social media audience and updates on his audience growth.<br>• Conduct calls with team to manage account activity and deliverables. |

*Note: With respect to our longstanding relationship with you and the Wayfarer team, the above will be billed at $6K/month for a 4-month trial. As of September 1, the fee would increase to $8K/month based on the above deliverables. Extension of contact must be determined by no later than July 31 to ensure no lapse of coverage.*