UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                    :
BLAKE LIVELY,                                       :
                                                    :
                          Plaintiff,                :
                                                    :
                 -v-                                :
                                                    :
WAYFARER STUDIOS LLC, JUSTIN BALDONI,               :
JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH           :
US MOVIE LLC, MELISSA NATHAN, THE AGENCY            :
GROUP PR LLC, and JENNIFER ABEL,                    :
                                                    :
                          Defendants.               :
                                                    :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/20/2026__

24-cv-10049 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

    Before the Court are various requests for sealing and unsealing filed by both parties and

non-parties regarding materials submitted in connection with: (1) Plaintiff Blake Lively's

("Lively") motion for spoliation sanctions against the Wayfarer Parties,[1] see Dkt. No. 862; (2)

Third-Party Defendant Jonesworks LLC's ("Jonesworks") motion for spoliation sanctions

against Third-Party Plaintiff Jennifer Abel ("Abel"), see Dkt. No. 867; (3) Abel's motion for

conditional summary judgment against Jonesworks, see Dkt. No. 938; and (4) the Wayfarer

Parties' motion for summary judgment against Lively, see Dkt. No. 952.  On January 16, 2026,

the Court issued a bottom-line order regarding the materials submitted in connection with the

Wayfarer Parties' motion for summary judgment and Lively's motion for spoliation sanctions.

Dkt. No. 1229.  This Opinion and Order explains that decision.

**LEGAL STANDARD**

---

[1] The Wayfarer Parties are Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz,
It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel.

"The Supreme Court and Second Circuit have long held that there is a presumption of immediate public access to judicial documents under both the common law and the First Amendment."  *Lohnn v. Int'l Bus. Machs. Corp.*, 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4, 2022) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)).  This presumption stems from notions of democratic control and judicial accountability.  As the Second Circuit has explained:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.  Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke.  Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control.  Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior.  Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings.  Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).

Given that the presumption is intended to promote principles of judicial oversight and accountability, it applies only where the documents in question are "judicial"—that is, when the documents "are relevant to the performance of the judicial function."  *Brown v. Maxwell*, 929 F.3d 41, 49–50 (2d Cir. 2019).  A document is "'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers."  *Id.* at 49 (citation omitted).  This "tendency" determination "is a binary decision made as of the time of the document's filing," *Giuffre v. Maxwell*, 146 F.4th 165, 178 (2d Cir. 2025), and therefore must be made "without

regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision," *Brown*, 929 F.3d at 49.  After all, "documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision."  *Lugosch*, 435 F.3d at 123 (citation omitted). Although the Second Circuit has emphasized that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access," *id.* at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")), it has also held as a categorical matter that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment," *id.* at 121; *see also id.* at 123 ("Once those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations." (citation omitted)).[2]

Where the presumption of public access attaches, courts must assess its relative weight. The fact that information has been designated confidential by a party has no bearing on this inquiry.  *Nielson Consumer LLC v. Circana Grp., L.P.*, 2024 WL 990073, at *1 (S.D.N.Y. Mar. 6, 2024); *see also Lugosch*, 435 F.3d at 126.  Nor does the fact that parties have agreed the information should be sealed.  *Indian Harbor Ins. Co. v. Mashinsky*, 2025 WL 3514796, at *1 (S.D.N.Y. Dec. 8, 2025); *see In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2023 WL 196134, at *7 (S.D.N.Y. Jan. 17, 2023) ("There is temptation, when a district court is

---

[2] This "categorical rule" regarding summary-judgment materials is "well-settled," but it does not apply where a court has stricken a document from the record, as "stricken material is not 'relevant to the performance of the judicial function'" and therefore "enjoy[s] no presumption of public access."  *Brown*, 929 F.3d at 47 & n.12, 51–52.

faced with a deluge of sealing motions, to effectively outsource sealing determinations to the parties by approving or even pre-approving sealing requests that the parties agree on. . . . This, as *Brown* noted is not acceptable."). Courts act as guardians of the interests of the public in ruling on motions to seal. Accordingly, they must consider "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049).

The presumption of public access is "at its zenith" where documents "are used to determine litigants' substantive legal rights." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016). "Thus, a strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion." *Olson v. Major League Baseball*, 29 F.4th 59, 90 (2d Cir. 2022). The strength of the presumption does not turn on any extended analysis of the merits of the case or on "the disposition of each particular claim," as requiring a court "to review the documents under varying standards . . . would be extremely difficult and a waste of judicial resources." *Lugosch*, 435 F.3d at 123 (citation omitted). A strong presumption therefore applies to summary judgment materials "as a matter of law." *Id.* at 121. The Second Circuit has not expressly addressed the strength of the presumption that attaches when a motion seeks alternative relief, some of which would determine substantive legal rights and some of which is procedural. The assessment of "the weight to be accorded to the presumption of access must be determined by the exercise of judgment." *Amodeo II*, 71 F.3d at 1050. "Where such documents are usually filed with the court

and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.*

Where the presumption is at its peak, as it is in the summary judgment context, continued sealing "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* at 124.[3] "[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons*." *Id.* at 123 (emphasis added) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Among the "higher values" that courts have found sufficient to overcome the presumption of public access are "protecting the confidentiality of grand jury proceedings, protecting minor victims of sex crimes, protecting a defendant's Sixth Amendment right to a fair trial, protecting significant and substantial privacy interests, such as the physical safety of litigants, witnesses, or third parties, preventing danger to persons or property, and maintaining 'the integrity of significant activities entitled to confidentiality, such as ongoing undercover investigations or detection devices.'" *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 68–69 (2d Cir. 2025) (citation omitted).

Of these higher values, the most commonly invoked is privacy, which itself encompasses a number of interests including, for example, the confidentiality of health records and proprietary and competitively sensitive business information. *See Lively v. Wayfarer Studios LLC*, 2025 WL 3295147, at *2 (S.D.N.Y. Nov. 26, 2025). In evaluating privacy interests, "a court should

---

[3] The Second Circuit has not articulated a similar "specific, on-the-record findings" standard with respect to orders *unsealing* materials. Rather, unsealing orders require only what is typically required when a court issues a ruling—an explanation sufficient to reveal the ruling and its basis to the parties and to permit meaningful appellate review. *See Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 630 (2d Cir. 1991) (noting that a district court abuses its discretion when it provides an insufficient explanation to permit meaningful review).

consider both the degree to which the subject matter is traditionally considered private rather than public, as well as the nature and degree of the injury to which the party resisting disclosure would be subjected were the privacy interest not protected." *Barbera v. Grailed, LLC*, 2025 WL 1126120, at *1 (S.D.N.Y. Apr. 16, 2025) (cleaned up) (quoting *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020)). "The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation," *Amodeo II*, 71 F.3d at 1050 (citation omitted), but "a generalized concern of adverse publicity concerning a public figure is [not] a sufficiently compelling reason that outweighs the presumption of access," *Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374, 376 (S.D.N.Y. 2007).

## DISCUSSION

The Court has considered numerous sealing motions in this case in recent months. *See, e.g.*, Dkt. Nos. 226, 251, 434, 469, 505, 619, 628, 688, 736, 848, 894, 1027. Most recently, the Court addressed requests for sealing and unsealing in the context of opening materials submitted in connection with Lively's and Jonesworks' spoliation sanctions motions. *See* Dkt. No. 1027; *Lively*, 2025 WL 3295147. A few principles from that decision are relevant for present purposes and worth reiterating.

First, the Court held that the materials at issue were judicial documents entitled to a strong presumption of public access because they arose in the context of dispositive motions and involved the exercise of core Article III judicial authority. 2025 WL 3295147, at *2. The same (and even more) goes for the Wayfarer Parties' summary judgment motion. Second, certain materials implicated privacy interests sufficiently weighty to justify continued sealing notwithstanding the presumption of public access. *Id.* Those materials included personally identifying information ("PII") such as email addresses and phone numbers, as well as the

6

identities of non-party clients and prospective clients who have used public-relations services. *Id.* at *2–3. The Court noted that innocent third parties had a significant right to privacy in the materials. *Id.*; *see also Olson*, 29 F.4th at 93 (explaining that, where third-party identities are "not critical to the public's ability to understand . . . [the] plaintiffs' claims," the district court "should consider its ability to use redactions that do not unduly interfere with the public's right to access judicial documents in order to address privacy concerns"); *In re Newsday, Inc.*, 895 F.2d 74, 80 (2d Cir. 1990) (holding that a district court did not abuse its discretion in "redact[ing] references to innocent third parties"). The Court further found that certain commercially sensitive information which would cause significant harm to a party or non-party's competitive business standing also warranted sealing. 2025 WL 3295147, at *3.

The Court came to a different conclusion with respect to information revealing the types of public-relations services alleged to have been provided in this case. While such information might have been appropriately sealed when filed in connection with non-dispositive motions, any competitive interest that the public-relations professionals had in keeping confidential the nature of their work did not provide a compelling reason for sealing in connection with a dispositive motion. *Id.*

To those observations the Court now adds a few more.

To start, while each of the parties and non-parties here argues to some extent that the documents it wishes to keep confidential are not relevant to the Court's summary judgment decision, the sealing decision on a motion for summary judgment ordinarily does not envision the Court making a ruling based on relevance. The Second Circuit has held that materials submitted in support of and in opposition to a motion for summary judgment are categorically judicial documents to which a strong presumption of public access attaches and which may be

sealed only for "compelling reasons." *Lugosch*, 435 F.3d at 121.  The inquiry does not involve the Court deciding exhibit by exhibit, much less line by line, whether information might be relevant to the summary judgment decision or have a tendency to influence the Court's analysis before moving to the step of determining whether a higher value justifies sealing.  The presumption is one of "immediate public access." *Courthouse News Service*, 131 F.4th at 67 (quoting *Lugosch*, 435 F.3d at 126).  The Second Circuit has directed district courts to act "expeditiously" in ruling upon sealing motions and has held that it is error to wait until after ruling on a summary judgment motion to determine whether documents should be sealed: "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment." *Lugosch*, 435 F.3d at 126 (quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1984)).  If that is so, then the Court cannot as a practical matter judge the relevance of a particular item of evidence on a motion for summary judgment before turning to the question of whether compelling reasons exist for its sealing.

Summary judgment records are lengthy, and the Federal Rules of Civil Procedure command parties to cite "particular parts of materials in the record," including depositions, documents, and affidavits or declarations to support their respective positions.  *See* Fed. R. Civ. P. 56(c)(1)(A).  The inclusion of evidence in connection with a summary judgment motion is not optional.  And the Rules permit the Court to engage in a searching examination of the record before granting or denying summary judgment; the Court is not necessarily limited to the portions of an exhibit that are cited in a brief or quoted in a Rule 56.1 statement.  *In re Refco Inc. Sec. Litig.*, 2013 WL 12191891, at *4 (S.D.N.Y. Mar. 11, 2013) ("Rule 56(c)(3) states that the court is only required to consider the materials cited pursuant to (c)(1), but it is permitted to go beyond the citations to consider other materials in the record.").  For the Court to do its job of

unsealing information before it makes a substantive decision on the motion rather than after, the Court could not as a practical matter review every document and every sentence for relevance. Doing so would require the Court to make many of the same decisions it makes in determining whether or not to grant summary judgment, including whether the evidence is sufficient to create a "genuine" issue of fact.

That would not only be inefficient. It would also have the Court make privately some of the very determinations that under *Lugosch* it should make only under the glare of public scrutiny at the summary judgment stage. The Court's decision about whether a particular document or item in a document is relevant is itself a judicial act about which the public has a right to know (and to criticize). Indeed, it may be among the more important decisions a court makes in ruling upon a motion for summary judgment. Requiring an exhaustive relevance inquiry would also serve no higher purpose. The parties have no cognizable interest in keeping summary judgment materials under seal simply because such documents have not previously been publicly disclosed. They have a right to keep documents confidential if and only if doing so servers a higher value. If a party believes that a document could have no conceivable relevance to a motion for summary judgment, its remedy is a motion to strike. *See Brown*, 929 F.3d at 51–52. The Court can also consider a document's relevance in assessing the privacy interests at stake *after* a higher value is identified. *See Fed. Trade Comm'n v. PepsiCo, Inc.*, 2025 WL 3484835, at *5 (S.D.N.Y. Dec. 4, 2025) (observing that a document's "critical" importance to "the public's ability to understand" the case "lessen[ed] the force of any privacy interests at stake"). In sum, on a motion for summary judgment, relevance is not a threshold issue that the Court must analyze before determining whether the presumption of public access attaches, what its strength is, and whether disclosure of the document would affect a party's

rights or implicate a higher value.

For similar reasons, the public-access inquiry does not require courts to ask whether a document submitted in connection with a summary judgment motion is "admissible" under the Federal Rules of Evidence before determining whether the document should be unsealed.  If no higher value would be served by sealing a document, the Court must unseal it regardless of whether the Court would later determine that its admission would not satisfy the Federal Rules of Evidence.  *See Fairstein v. Netflix, Inc.*, 2023 WL 6164293, at *7 (S.D.N.Y. Sept. 21, 2023) (noting that "the presumption of public access and the reasoning of *Lugosch* and its progeny are directed to different concerns than the Federal Rules of Evidence").  The question whether material cited to support or dispute a fact is presented or can be presented in a form that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(2), is itself frequently a hotly contested issue upon which a summary judgment motion may turn.

The Court assumes that a party moving for or opposing summary judgment will have "supported its motion only on the basis of 'such facts as would be admissible in evidence." *Lugosch*, 435 F.3d 122 (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991)).  "Fed. R. Civ. P. 11 requires no less."  *Id.* (quoting *Westinghouse*, 949 F.2d at 660).  If a court decides not to consider an item because it is not admissible, the public has a right to know that.  "If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision[,] . . . documents that the judge *should have* considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision."  *Id.* at 123 (citation omitted).  The purpose of promoting public access is not to appeal to any prurient interest or to "cater 'to a morbid craving for that which is sensational and impure,'" *Amodeo II*, 71 F.3d at 1051 (citation omitted), but to enable

democratic oversight of the courts, and admissibility determinations play an important part of that public accountability, *see United States v. Silver*, 2016 WL 1572993, at *7 (S.D.N.Y. Apr. 14, 2016) ("[P]ublic access to a court's decision to admit or exclude evidence—a crucial judicial function in maintaining fair trial rights—promotes public monitoring of federal courts and an appearance of fairness.").

Finally, the extent to which disclosure would implicate the privacy interests of third parties requires a nuanced analysis. The fact that a document mentions the name of a third party does not in and of itself provide a compelling reason for the continued sealing of that document. Many documents in litigation may contain the names of third parties—whether that of a public official in a case against the government, a business executive in a securities or antitrust case, an inventor in a patent case, or an author in a copyright case. Neither the status of the person as a non-party nor the revelation of his or her connection with the litigation or with a party is enough to permit sealing. Rather, "[i]n determining the weight to be accorded an assertion of a right of privacy," the court must "first consider the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051.

The Court must therefore clarify its prior order holding that the identities of non-party clients and prospective clients who have used public-relations services may be maintained under seal. *See* 2025 WL 3295147, at *2–3. The revelation of a client's name may implicate the privacy interests of the client when the services being sought are themselves of the type that is traditionally considered private (e.g., consultation with a particular type of medical doctor) or when the specific services being provided are themselves confidential. It may also implicate the business interests of the person providing the services when the client's name is a trade secret, the disclosure of which would cause competitive harm. But disclosure of the fact that a celebrity

11

or public figure has hired a public-relations consultant does not itself necessarily compromise the privacy interests of that celebrity or public figure to support continued sealing—especially where that information has already been reported or publicly disclosed.  *See Shetty v. SG Blocks, Inc.*, 2021 WL 4959000, at *4 (E.D.N.Y. Oct. 26, 2021) (collecting cases declining to seal information that "was already made public"); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (noting that once the "genie is out of the bottle," courts "have not the means to put the genie back").  Put another way, the public might reasonably assume that a celebrity has a general public-relations agent.  The disclosure of that person's name can, however, implicate the individual's privacy interests when it reveals the *nature* of public-relations work conducted on their behalf, and it can at least in theory implicate the confidential business interests of the agent when it reveals a current client whom a competitor might seek to poach with the information.  *See In re Document Techs. Litig.*, 282 F. Supp. 3d 743, 750 (S.D.N.Y. 2017) (explaining that "information about the work performed for the client" requires "closer consideration" than requests to seal the client's identity, and holding that there was "no basis for redacting [] general references to client identities").

In analyzing non-party privacy interests, the Second Circuit has also instructed that an individual's "third-party status should be placed in context."  *Olson*, 29 F.4th at 91.  Third parties "with no association with a named [party]" might enjoy greater privacy interests than those who share a close affiliation with a party.  *In re Keurig*, 2023 WL 196134, at *4; *see also Boothbay Absolute Return Strategies, LP v. Belgische Scheepvaartmaatschappij-Compagnie Mar. Belge SA,* 2024 WL 1097128, at *9 (S.D.N.Y. Mar. 13, 2024) (observing that two non-parties were "closely affiliated" with a party, which "diminishe[d] the weight of their privacy interests").

With these principles in mind, the Court turns to the specific sealing requests.  The Court

12

addresses the non-party requests first before turning to the parties' motions.

### 1. Dkt. No. 1146: Isabela Ferrer

Non-party Isabela Ferrer ("Ferrer") seeks continued sealing of exhibits disclosing her testimony regarding "the filming of intimate scenes and discussion of another non-party's religious affiliation."  Dkt. No. 1146 at 1.  Ferrer played the role of Young Lily Bloom in the film *It Ends With Us* (the "Film").  She asserts that her testimony is "highly sensitive" and that as "a non-party who did not voluntarily choose to become involved in this litigation, [she] is particularly vulnerable to harassment and misuse of these sensitive excerpts, including widespread disclosures in the press and on social media."  *Id.* at 1–2.  She further contends that "[p]ublic circulation and potential distortion of intimate, highly personal testimony could negatively affect her opportunities within an industry that is uniquely sensitive to public perception."  *Id.* at 2.  The Wayfarer Parties oppose the request.  *See* Dkt. No. 1175.

The Court agrees that the materials should not be sealed.  Though Ferrer's status as a non-party carries some weight, her requests for continued sealing fail because none of the cited materials are sufficiently sensitive to overcome the strong presumption of public access.  Ferrer's testimony largely concerns when she rehearsed a simulated sex scene for the Film and who attended those rehearsals, three incidents of behavior on set that she found inappropriate, and the reasons for Baldoni's non-attendance at a pre-release event for the Film.  The testimony regarding the rehearsals contains no details of a graphic or sensitive nature and revolves around a scene in a widely distributed movie.  The three incidents of on-set behavior are not particularly private and are directly relevant to Lively's sexual-harassment and hostile-workplace claims.  And Baldoni's non-attendance at the promotional event and the reasons for that non-attendance likewise implicate issues in this case and are not especially sensitive.  At least in this context, an

individual's assertion that they are *not* a member of a certain religion is not so personal as to fall among "the most compelling reasons" justifying sealing. *See Joy*, 692 F.2d at 893; *see also Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 470–71 (S.D.N.Y. 2017) ("A possibility of future adverse impact on employment or the celebrity status of a party is not a 'higher value' sufficient to overcome the presumption of access to judicial documents.").

Ferrer's motion for continued sealing is therefore denied.

## 2. Dkt. No. 1148: Betty B Holdings, LLC

Non-party Betty B Holdings, LLC ("Betty B") moves for continued sealing of: (1) Betty B's Second Amended and Restated Limited Liability Company Agreement (the "Betty B Operating Agreement"); (2) two confidential board updates; (3) two years of K-1s; (4) two pages from the deposition transcript of its 30(b)(6) witness; and (5) certain portions of Lively's expert reports. Dkt. No. 1148 at 1–2. As components of her damages, Lively seeks lost profits and cash flows to Betty B. The Wayfarer Parties oppose Betty B's request. Dkt. No. 1183.

The materials must be unsealed. First, the Wayfarer Parties correctly observe that even if information once was commercially sensitive, it may cease to be, and courts should consider whether "'the information [is] still relevant to the business' and 'the degree to which a party would be competitively harmed if [the information] were revealed.'" *Spencer-Smith v. Ehrlich*, 2025 WL 1115019, at *2 (S.D.N.Y. Apr. 15, 2025) (quoting *Jackpocket, Inc. v. Lottomatrix NY LLC*, 2022 WL 17738779, at *2 (S.D.N.Y. Dec. 15, 2022)). "[T]he older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed." *In re Keurig*, 2023 WL 196134, at *4; *see also In re Upper Brook Cos.*, 2023 WL 172003, at *6 (S.D.N.Y. Jan. 12, 2023) (holding that a party failed to show "that the information is not 'stale'

and why disclosure would still cause harm"). Here, the Second Betty B Operating Agreement has been amended by a Third and now Fourth Amended Operating Agreement, and Betty B has not sufficiently demonstrated that the Second Agreement (dated May 2023) is still applicable to its present business. Its assertions regarding possible competitive disadvantages resulting from disclosure of how it "has decided to structure and manage its business" are too general to demonstrate actual or imminent competitive harm. Dkt. No. 1148 at 2–3; *Zesty Paws LLC v. Nutramax Lab'ys, Inc.*, 2024 WL 3330709, at *2 (S.D.N.Y. June 24, 2024) ("Vague and unspecified business concerns, like confidential and related business interactions that could be used by corporate competitors in a detrimental manner, are broad, general, and conclusory allegations . . . insufficient to justify sealing." (citation omitted)). Furthermore, although the Agreement contains information about the identity of other non-party members of Betty B, Betty B has not specifically explained why that information is so sensitive or traditionally private as to warrant sealing. The materials are also relevant, as Lively has put her ownership interest in Betty B and her entitlement to distributions from the business directly at issue.

The board updates should be unsealed for similar reasons. Although the financial information is undoubtedly sensitive in certain respects, it also appears to be "stale." Lively claims that the results that she hoped to achieve can no longer be achieved as a result of Defendants' allegedly tortious conduct. She cannot at the same time claim that the disclosure of those results—which she says are no longer achievable—would cause competitive harm. Betty B's sales and the reasons for their decline directly implicate Lively's damages arguments. To intelligently understand any subsequent decision the Court might make with respect to damages, a reader would likely need to see the materials. *Ferring Pharms. Inc. v. Serenity Pharms., LLC*, 2020 WL 949423, at *1–2 (S.D.N.Y. Feb. 27, 2020) (refusing to seal purportedly sensitive

15

commercial information where doing so would require the court to make '"secret' findings of fact" and to "award secret damages"). Betty B has not offered narrowly tailored redactions, instead seeking to redact the documents in their entirety (although it is worth noting that certain portions were redacted as irrelevant prior to being produced in discovery, which, again, tends to underscore the relevance of the portions that were provided). Betty B, while a third party, shares a close affiliation with Lively and therefore is not the kind of innocent third party whose privacy interests are weighed most heavily. As for the deposition excerpts and expert reports, these materials largely reflect the contents of the Agreement and board updates, which the Court has already found should be unsealed.

Lastly, the K-1s show only financial information for one of Betty B's members rather than Betty B itself, and although "courts have been reluctant to require disclosure of tax returns because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns," *Morales Elec. Contracting, Inc. v. Siemens Bldg. Techs., Inc.*, 2012 WL 3779410, at *4 (E.D.N.Y. Aug. 30, 2012) (citation omitted), Betty B has not invoked that general reluctance as a basis for continued sealing, nor has it explained why sealing is necessary other than by asserting that the documents contain financial results. Betty B has not asserted with any specificity the harm that would stem from providing that information, and it acknowledges that the documents are relevant at least in certain respects.

Betty B's motion for continued sealing is therefore denied.

### 3.  Dkt. No. 1153: Family Hive, LLC

Non-party Family Hive, LLC ("Family Hive") moves for continued sealing of portions of: (1) Family Hive's 30(b)(6) deposition transcript; (2) the expert report of Jeffrey H. Kinrich;

and (3) the expert report of Dina Mayzlin.  Dkt. No. 1153.  Family Hive also moves to seal any citations to or quotations from these materials in the parties' briefing.  The Wayfarer Parties oppose the requests.  Dkt. No. 1186.

The requests are denied for largely the reasons that Betty B's requests are denied. Information regarding Family Hive's sales are at once "stale" while also relevant to Lively's damages arguments.  There are limited, if any, privacy concerns involving the identities of corporate non-parties that Family Hive wished to conduct business with.  Although Family Hive is a non-party, it shares a close affiliation with Lively, as evidenced by her claim for damages stemming from Family Hive's business losses.  Family Hive has not specifically established any imminent competitive harm associated with unadopted marketing plans and outdated sales information.

Family Hive's motion for continued sealing is therefore denied.

### 4. Dkt. No. 1162: Sony Pictures Entertainment

Sony Pictures Entertainment ("SPE") moves to seal portions of the deposition testimony, texts, emails, and personal phone numbers of its employees, as well as a commercial agreement between an SPE affiliate and Wayfarer Studios.  Dkt. No. 1162.  The Wayfarer Parties and Lively oppose certain aspects of SPE's motion.  Dkt. Nos. 1188, 1206.  The request to seal the SPE employees' testimony and messages is denied, while the request to seal the commercial agreement and PII is granted.

SPE argues that all of the materials it has identified are irrelevant to the judicial function and that therefore no presumption of public access applies.  *Id.* at 4.  The Court disagrees. "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both

the common law and the First Amendment." *Lugosch*, 435 F.3d at 121.  Furthermore, for all the reasons outlined above, SPE takes far too narrow a view of relevance.  At this stage in the case, the Court cannot say with complete confidence that the materials are entirely irrelevant to the pending motions.  Both parties believe that at least certain portions are relevant.  At a minimum, the SPE employees' statements provide context regarding the Film and the controversy surrounding it.  That the parties have not specifically and extensively cited from all portions of the documents makes no difference regarding whether they are "judicial documents" entitled to a strong presumption of public access.  The public-access inquiry does not ask courts to count up the number of citations to a document or sentence to determine whether the public has a right to inspect the materials.

SPE's arguments regarding the documents' admissibility also fail to change the calculus.  SPE states in conclusory fashion that some of the materials contain hearsay and are inadmissible, but it has not moved to intervene and to strike them.  Nor has it cited any case in which a court has found that materials submitted in connection with a motion for summary judgment are not judicial documents because they contain hearsay.  The materials here form a part of the summary judgment record and thus have the tendency to influence the court's exercise of its judicial authority.  *Cf. Brown*, 929 F.3d at 47 & n.12, 51–52 (noting that "stricken material is not 'relevant to the performance of the judicial function'" and therefore "enjoy[s] no presumption of public access").  The strong presumption of public access applies.

Given that the strong presumption attaches, SPE must identify a sufficiently weighty higher value to justify continued sealing.  It has not.  It relies primarily on the privacy interests of its non-party employees, but it does not explain with specificity why those interests are "significant and substantial" akin to interests in protecting "the physical safety of litigants,

18

witnesses, or third parties [or] preventing danger to persons or property." *Courthouse News Serv.*, 131 F.4th at 68–69. Instead, the privacy interests at issue seem to be those in avoiding negative publicity or potential embarrassment, but courts generally reject those as bases for overcoming a strong presumption of public access. *See Halwani v. Brightside Health, Inc.*, 2024 WL 4132369, at *2 (E.D.N.Y. Sept. 10, 2024). Moreover, some of the information has already been publicly disclosed. *See* Dkt. No. 1206 at 3. Other than the PII, the SPE-employee information must be unsealed.

The commercial agreement, however, may be sealed. The document is a 140-page co-financing, co-production, and distribution agreement between SPE's affiliate Columbia Pictures Industries, Inc. ("Columbia") and Wayfarer. SPE seeks sealing of the document on the grounds that its public disclosure could be exploited by counterparties in future negotiations. The Court agrees that this is a sufficiently specific and possible risk of future competitive harm such that sealing is warranted. The agreement was negotiated by Columbia and Wayfarer and therefore provides a roadmap for future Columbia counterparties regarding what Columbia might or might not be inclined to agree to, as well as a guide to Columbia's competitors regarding what they might have to offer to outbid it. This would place Columbia at a decided "competitive disadvantage in future negotiations." *Frontier Airlines v. AMCK Aviation*, 2022 WL 17718338, at *2 (S.D.N.Y. Dec. 13, 2022). Courts have found continued sealing appropriate in such circumstances. *See id.*; *see also Sony Corp. v. Fujifilm Holdings Corp.*, 2016 WL 11708368, at *2 (S.D.N.Y. Nov. 1, 2016) (sealing a document that "was the product of extensive negotiation," as "the parties have shown that disclosure of its terms would present a significant risk of competitive harm to the parties, and would likely undermine their future ability to negotiate with third parties").

19

SPE's motion for continued sealing is therefore granted in part and denied in part.

### 5. Dkt. No. 1168: William Morris Endeavor Entertainment, LLC

William Morris Endeavor Entertainment, LLC ("WME") seeks to seal three exhibits disclosing internal WME messages. Dkt. No. 1168. WME also joins in certain requests made by Lively, *id.*, which the Court addresses below. The Wayfarer Parties object to WME's requests. *See* Dkt. No. 1181.

WME's motion largely mirrors SPE's and must therefore be rejected for the same reasons. WME asserts that the materials are irrelevant, inadmissible, and prejudice third-party privacy interests. Those arguments fail for the reasons provided above. The documents are neither wholly irrelevant nor clearly inadmissible as to all issues such that the presumption of public access does not apply. WME has not moved to strike the materials from the record. The identified third-party privacy interests, if any, are those in preventing the disclosure of potentially embarrassing statements, which cannot overcome the strong presumption of public access. WME has not demonstrated that its commission from Lively's work on the Film is competitively sensitive information. Dkt. No. 1181 at 3.

WME's motion for continued sealing is therefore denied.

### 6. Dkt. No. 1149: The Wallace Non-Parties

Jed Wallace and Street Relations, Inc. (the "Wallace Non-Parties") move to seal several exhibits on the grounds that they include PII, sensitive financial account information, non-public business information, and information regarding third-party clients or prospective clients. Dkt. No. 1149. Lively opposes some of the requests, largely on the basis that they are overbroad, and she has provided certain alternative proposed redactions for the Court's consideration. Dkt. No. 1206. The Wallace Non-Parties' specific requests are addressed as reflected below in the

accompanying chart.  *See* Table A.

**Table A: The Wallace Non-Parties' Proposed Redactions and the Court's Rulings**

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| Def. MSJ Ex. 182 | PII | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of party and non-party email addresses. The privacy interests in this PII outweigh any public interest.  *See Brown*, 929 F.3d at 48 (sealing PII). |
| Def. MSJ Ex. 183 | PII and sensitive financial account information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of a non-party's email address and an invoice containing banking information including an account name, number, routing number, and the associated bank name and address.  The privacy interests in this PII and banking information are sufficiently sensitive to warrant sealing, as "[t]here is very little need for public access to such information and the potential for harm through bank fraud or identity theft is great."  *Broadhurst Invs., LP v. Bank of New York Mellon*, 2010 WL 3154840, at *6 (S.D.N.Y. Aug. 2, 2010) (quoting *Bunkers Int'l v. Orient Oil*, 2008 WL 5431166, at *1 (S.D.N.Y. Dec. 23, 2008)). |
| Def. MSJ Ex. 184 | PII | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of party and non-party email addresses and cell phone numbers.  For the reasons described above, the privacy interests in |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | this PII outweigh any public interest. |
| Def. MSJ Ex. 215 | Third-party clients or prospective clients | Seal only the Wallace Non-Parties' first proposed redaction on p. 29:<br><br>The Wallace Non-Parties seek sealing of information related to business engagements for non-party clients or prospective clients. They previously sought sealing of this same information in addition to other information, and the Court deemed their proposed redactions improperly broad in its November 16 Order. *See* 2025 WL 329514, at *2. The Court instructed the Wallace Non-Parties to provide more narrowly tailored redactions. *Id.* at *4. They did, *see* Dkt. No. 1040-5, but the redactions are still impermissibly broad. Aside from the first proposed redaction on p. 29, the redactions are not necessary to protect non-party privacy interests, as they are not so detailed or specific as to reveal the identity of a non-party client or prospective client and work done for that individual. |
| Def. MSJ Ex. 216 | Third-party clients or prospective clients | Seal only the Wallace Non-Parties' first proposed redaction on p. 29:<br><br>This document contains the same information as Def. MSJ Ex. 215 and therefore must sealed only in the manner detailed above. |
| Def. MSJ Ex. 217 | Third-party clients or prospective clients | Seal only the Wallace Non-Parties' first proposed redaction on p. 29:<br><br>This document contains the same |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | information as Def. MSJ Ex. 215 and therefore must sealed only in the manner detailed above. |
| Pl. MSJ Ex. 203 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to the proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of portions of Wallace's deposition testimony on the grounds that these excerpts mention work completed or allegedly completed for non-party clients or prospective clients. The Wallace Non-Parties indicate that counsel for Lively provided them with redacted versions of the exhibits, and the Wallace Non-Parties agree that Lively's redactions are appropriate. The redactions are adopted but only to the extent they are consistent with this Opinion and Order. |
| Pl. MSJ Ex. 208 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of a non-party client or prospective client's name and identifying information for that individual, as well as information revealing the rates and timeframe associated with work conducted for that person. The individual's name may be redacted because the materials read in their entirety reveal specific public-relations work performed for that individual and, as far as the Court is aware, such work and client relationship have not been previously publicly disclosed or reported. That said, the Wallace Non-Parties' proposed redactions are not all necessary to protect the individual's privacy, as |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | details including the date and the individual's general sector and pronouns do not reveal their identity.<br><br>As for the financial information, the Wallace Non-Parties have not identified a specific and concrete competitive harm that would result from disclosing the engagement's term and associated fees. This information also possesses at least some relevance insofar as the services, rates, timeframe, and months do or do not overlap with those that Lively alleges in her case. |
| Pl. MSJ Ex. 209 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of non-party clients' or prospective clients' names and identifying information, as well as information revealing the rates and timeframe associated with work conducted for a client. The document should be sealed consistent with the analysis for Pl. MSJ Ex. 208. The names can be redacted but pronouns and pricing information should not. |
| Pl. MSJ Ex. 210 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to the proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of portions of Wallace's deposition testimony on the grounds that these excerpts mention work completed or allegedly completed for non-party clients or prospective clients. The Wallace Non-Parties indicate that counsel for Lively provided them with redacted versions of the exhibits, and the Wallace Non-Parties agree that Lively's |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | redactions are appropriate. The redactions are adopted but only to the extent they are consistent with this Opinion and Order. |
| Pl. MSJ Ex. 211 | Third-party clients or prospective clients and sensitive, non-public business information | Unseal:<br><br>The Wallace Non-Parties seek sealing of the word "brother" on the grounds that it might reveal the identity of a non-party client or prospective client, but the word is insufficiently identifying to raise such a risk. |
| Pl. MSJ Ex. 212 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of a non-party client or prospective client's name and identifying information, as well as information suggesting specific work performed for that individual. The document should be sealed consistent with the analysis for Pl. MSJ Ex. 208. The name and information revealing that name can be redacted, but pronouns should not. |
| Pl. MSJ Ex. 213 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to the proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of portions of Wallace's deposition testimony on the grounds that these excerpts mention work completed or allegedly completed for non-party clients or prospective clients. The Wallace Non-Parties indicate that counsel for Lively provided them with redacted versions of the exhibits, and the Wallace Non-Parties agree that Lively's |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | redactions are appropriate. The redactions are adopted but only to the extent they are consistent with this Opinion and Order. |
| Pl. MSJ Ex. 214 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to the proposed redactions provided by Lively: The Wallace Non-Parties seek sealing of portions of Wallace's deposition testimony on the grounds that these excerpts mention work completed or allegedly completed for non-party clients or prospective clients. The Wallace Non-Parties indicate that counsel for Lively provided them with redacted versions of the exhibits, and the Wallace Non-Parties agree that Lively's redactions are appropriate. The redactions are adopted but only to the extent they are consistent with this Opinion and Order. |
| Pl. MSJ Ex. 215 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to the Wallace Non-Parties' proposed redactions except for the first message at 8:57 AM and the words "actually dropped" and "Page six" in the message at 9:41 AM: The Wallace Non-Parties seek sealing of non-party clients' or prospective clients' names and identifying information, as well as well as information suggesting specific work performed for those individuals. The proposed redactions for the first message at 8:57 AM are not necessary to protect non-party privacy interests, as they concern an already public dispute that has been publicly reported on and which involves public litigation. The words "actually dropped" and "Page six" in the message at 9:41 |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | AM are also not necessary to protect non-party privacy interests. The other redactions, however, suggest not only the identity of a non-party client or prospective client but also specific work performed for that individual. The individual had a significant and reasonable expectation that this information would be kept confidential, and the details have no bearing on this case. The information may therefore be sealed. |
| Pl. MSJ Ex. 216 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of a non-party client or prospective client's name and identifying information, as well as information revealing the rates and timeframe associated with work conducted for that individual. The document should be sealed consistent with the analysis for Pl. MSJ Ex. 208. The individual's name may be redacted because the materials read in their entirety reveal specific public-relations work performed for that individual and, as far as the Court is aware, such work and client relationship have not been previously publicly disclosed or reported. That said, the Wallace Non-Parties' proposed redactions are not all necessary to protect the individual's privacy, as details including the date and the individual's general geography, industry or sector, and pronouns do not reveal their identity. The financial information should also be unsealed for the reasons provided in connection with Pl. MSJ Ex. 208. |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| Pl. MSJ Ex. 217 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of a non-party client or prospective client's name and identifying information, as well as information revealing the rates and timeframe associated with work conducted for that individual. The document should be sealed consistent with the analysis for Pl. MSJ Ex. 208. The individual's name may be redacted because the materials read in their entirety reveal specific public-relations work performed for that individual and, as far as the Court is aware, such work and client relationship have not been previously publicly disclosed or reported. That said, the Wallace Non-Parties' proposed redactions are not all necessary to protect the individual's privacy, as details including the date do not reveal the person's identity. The financial information should also be unsealed for the reasons provided in connection with Pl. MSJ Ex. 208. |
| Pl. MSJ Ex. 235 | Sensitive financial account information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of banking information including an account name, number, routing number, and the associated bank name and address. The document should be sealed consistent with Def. MSJ Ex. 183. |
| Pl. MSJ Ex. 236 | Third-party clients or prospective clients and sensitive, non-public business information | Seal only the Wallace Non-Parties' second proposed redaction ending the message at 2:30 PM: |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | The Wallace Non-Parties seek sealing of identifying information for a non-party client or prospective client.  The first proposed redaction at 2:30 PM is not necessary to protect the non-party's privacy, but the second proposed redaction is, as it suggests not only the individual's identity, but specific work performed for them and, as far as the Court is aware, such work and client relationship have not been previously publicly disclosed or reported.  The first proposed redaction should therefore be deleted while the second should not. |
| Pl. MSJ Ex. 247 | Third-party clients or prospective clients and sensitive, non-public business information | Unseal:<br><br>The Wallace Non-Parties seek sealing of portions of Wallace's deposition revealing a non-party's name and information regarding payment for legal services.  The non-party's name does not need to be sealed to protect significant and substantial privacy interests, as all that is stated is that Wallace *did not* perform any work for the individual.  The information regarding payment for legal services is also not sufficiently sensitive to warrant sealing, as the Wallace Non-Parties have provided no reason for it to be sealed other than that the information is "confidential."  This information is also already publicly disclosed on the docket.  *See* Dkt. No. 1072-24 at 39:8–13, 39:23–40:3. |
| Pl. MSJ Ex. 299 | Third-party clients or prospective clients and sensitive, non-public business information | Seal pursuant to proposed redactions provided by Lively:<br><br>The Wallace Non-Parties seek sealing of a non-party client or prospective client's name and identifying information for |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | that individual, as well as information revealing the rates and timeframe associated with work conducted for that person.  This is the same document as Pl. MSJ Ex. 208 and therefore should be sealed as indicated above. |
| Pl. reply in support of her motion for spoliation sanctions, Ex. 63 | PII and sensitive financial account information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of a non-party's email address and an invoice containing banking information including an account name, number, routing number, and the associated bank name and address.  This is the same document as Def. MSJ Ex. 183 and therefore should be sealed as indicated above. |
| Pl. reply in support of her motion for spoliation sanctions, Ex. 64 | PII and sensitive financial account information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of email addresses, a phone number, and a link used for a banking transaction.  The document can be sealed as proposed for the reasons provided in connection with Def. MSJ Ex. 183. |
| Pl. reply in support of her motion for spoliation sanctions, Ex. 65 | PII and sensitive financial account information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of a non-party's email address and an invoice containing banking information including an account name, number, routing number, and the associated bank name and address.  This is the same document as Def. MSJ Ex. 183 and therefore should be sealed as indicated |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | above. |
| Pl. reply in support of her motion for spoliation sanctions, Ex. 66 | PII and sensitive financial account information | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The Wallace Non-Parties seek sealing of email addresses, a phone number, and a link used for a banking transaction. This is the same document as Ex. 64 to Lively's reply in support of her motion for spoliation sanctions and therefore should be sealed as indicated above. |
| Pl. reply in support of her motion for spoliation sanctions, Ex. 68 | Third-party clients or prospective clients and confidential services information | Unseal:<br><br>The Wallace Non-Parties seek sealing of portions of Wallace's deposition transcript, including the index to the deposition, on the grounds that they reveal non-party names and information regarding payment for legal services. The materials should be unsealed for the reasons provided in connection with Pl. MSJ Ex. 247. Wallace states that he does not recall providing services in connection with the named individuals, and the information regarding payment for legal services is not particularly sensitive and already publicly disclosed. As for the deposition index, that certain individuals were mentioned during the deposition does not without additional context implicate substantial and significant privacy interests. |

**7. Dkt. No. 1157: Katherine Case and Breanna Butler Koslow**

Katherine Case ("Case") and Breanna Butler Koslow ("Koslow"), two public-relations

professionals who have worked for Melissa Nathan's The Agency Group PR LLC ("TAG"),
move to seal exhibits on the grounds that they include non-public information regarding work
performed for clients. Dkt. No. 1157. Case and Koslow have agreed to withdraw one of their
requests on the grounds that it was inadvertently filed. Dkt. No. 1193. The requests are
addressed as reflected below in the accompanying chart, *see* Table B, except that some overlap
with those made by the Wayfarer Parties and are therefore addressed in Table C.

**Table B: Case and Koslow's Proposed Redactions and the Court's Rulings**

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| Def. MSJ Ex. 233 | Third-party clients or prospective clients and confidential services information | Unseal:<br><br>Case and Koslow seek sealing of two non-parties' names, but the information is not sufficiently sensitive such that continued sealing is necessary. The information includes only passing references to individuals rather than suggesting specific work performed for them. The PII may be sealed. |
| Def. MSJ Ex. 236 | Third-party clients or prospective clients and confidential services information | Seal pursuant to Case and Koslow's proposed redactions:<br><br>Case and Koslow seek sealing of information suggesting not only non-party client or prospective client names, but also specific public-relations work performed for these individuals. For the reasons previously provided, such information may be maintained under seal. The PII may also be sealed. |
| Pl. MSJ Ex. 192 | Third-party clients or prospective clients and confidential services information | Seal pursuant to Case and Koslow's proposed redactions:<br><br>Case and Koslow seek sealing of |

| Exhibit Number | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|
| | | information suggesting not only non-party client or prospective client names, but also specific public-relations work performed for these individuals.  For the reasons previously provided, such information may be maintained under seal.  The PII may also be sealed. |
| Pl. MSJ Ex. 194 | Third-party clients or prospective clients and confidential services information | Seal pursuant to Case and Koslow's proposed redactions:<br><br>Case and Koslow seek sealing of information suggesting not only non-party client or prospective client names, but also specific public-relations work performed for these individuals.  The information regarding clients and work conducted for them is interwoven throughout much of the document in addition to irrelevant information regarding family and other personal matters.  The non-party privacy interests in this information outweigh the presumption of public access. |

#### 8.  Dkt. Nos. 1160 and 1163: The Parties

That brings the Court to the Wayfarer Parties' and Lively's own motions for continued sealing.  Dkt. Nos. 1160, 1163.  The parties both oppose certain aspects of the others' requests for sealing.  Dkt. Nos. 1190, 1208.  The requests are addressed as reflected below in the accompanying chart.  *See* Table C.

**Table C: The Parties' Proposed Redactions and the Court's Rulings**

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Pl. MSJ Ex. 18 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party's name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the communication is "confidential" and implicates third-party privacy interests.  That conclusory assertion is insufficient to overcome the presumption of public access. |
| Pl. MSJ Ex. 19 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact non-party names but has not specifically explained why that information is so sensitive as to require sealing other than stating that the communications are "confidential" and implicate third-party privacy interests.  That conclusory assertion is insufficient to overcome the presumption of public access. |
| Pl. MSJ Ex. 22 (Def. MSJ Ex. 42) | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party's name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individual is a non-party without a substantial connection to the Film.  That conclusory assertion is insufficient to overcome the presumption of public access.<br><br>*Note that in its January 16, 2026 Order, the Court mistakenly indicated that this information should be sealed.* |

34

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Pl. MSJ Ex. 33 | Lively | Non-disclosed financial information | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of information revealing the structure of her compensation on a separate film.  This is sensitive, non-public financial information that could put her at a competitive disadvantage in future job negotiations and therefore may be sealed.  *See Frontier Airlines v. AMCK Aviation*, 2022 WL 17718338, at *2 (S.D.N.Y. Dec. 13, 2022). |
| Pl. MSJ Ex. 81 | Lively | Non-disclosed financial information | Seal:<br><br>Lively seeks sealing of certain financials concerning the Film's profits, including but not limited to residuals, distribution fees, and trade dues, as applicable.  The Wayfarer Parties agree that sealing is appropriate.  The quantity and detail of the non-public financial information in this document is so extensive and sensitive as to warrant continued sealing. |
| Pl. MSJ Ex. 82 | Lively | Non-disclosed financial information | Seal:<br><br>Lively seeks sealing of certain financials concerning the Film's profits, including but not limited to residuals, distribution fees, and trade dues, as applicable.  The Wayfarer Parties agree that sealing is appropriate. This document includes similar information as Pl. MSJ Ex. 81 and therefore should be sealed for the same reasons. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Pl. MSJ Ex. 83 | Lively | Non-disclosed financial information | Seal:<br><br>Lively seeks sealing of certain financials concerning the Film's profits, including but not limited to residuals, distribution fees, and trade dues, as applicable.  The Wayfarer Parties agree that sealing is appropriate. This document includes similar information as Pl. MSJ Ex. 81 and therefore should be sealed for the same reasons. |
| Pl. MSJ Ex. 84 | Lively | Non-disclosed financial information | Unseal:<br><br>Lively seeks sealing of information regarding her compensation for the Film.  This information has already been revealed, *see* Dkt. No. 948 ¶ 25, and is not wholly irrelevant to the motions, as the Wayfarer Parties contend that Lively's compensation goes to the issue of whether she was an independent contractor.  Furthermore, as indicated above, WME's commission rate is not competitively sensitive, as it has not asserted that its rate is anything other than the industry standard. |
| Pl. MSJ Ex. 85 | Lively | Non-disclosed financial information | Unseal:<br><br>Lively seeks to seal information regarding her compensation for the Film.  This document includes similar information as Pl. MSJ Ex. 84 and therefore should be unsealed for the same reasons. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Pl. MSJ Ex. 95 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party's name but the name has already been publicly disclosed and there is nothing sensitive about the reference to the individual in the document. Although Lively is correct that protecting the physical safety of third parties is a higher value that warrants continued sealing, Lively has provided insufficient evidence of specific physical safety concerns in this circumstance. |
| Pl. MSJ Ex. 104 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the names of two non-party actors who were considered but not cast for the Film. These non-parties have a significant privacy interest in the fact that they were considered but not cast in the Film, and this interest is sufficient to overcome any presumption of public access. *See Fairstein v. Netflix, Inc.*, 2023 WL 6164293, at *4 (S.D.N.Y. Sept. 21, 2023) (sealing the names of actors who were considered for a television series but ultimately not cast). |
| Pl. MSJ Ex. 106 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the names of several non-party actors who were considered but not cast for the Film. These names can be sealed for the |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | reasons provided in connection with Pl. MSJ Ex. 104. |
| Pl. MSJ Ex. 108 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the names of several non-party actors who was considered but not cast for the Film. The name can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |
| Pl. MSJ Ex. 112 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the name of a non-party actor who was considered but not cast for the Film. The name can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |
| Pl. MSJ Ex. 114 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the names of several non-party actors who were considered but not cast for the Film. These names can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |
| Pl. MSJ Ex. 135 | Lively | Third-party privacy interests (compensation data) | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the typical payment rate of a non-party crew member disclosed in the context of |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | confidential job negotiations.  That information is non-public and, in contrast to other compensation information in the case, could have no possible bearing on any issue.  It may therefore be sealed.  *See Rowe v. Google LLC*, 2022 WL 4467628, at *2 (S.D.N.Y. Sept. 26, 2022) ("Individuals' financial information, including their compensation, is considered private and can override even a strong presumption in favor of public access."). |
| Pl. MSJ Ex. 137 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party's name.  The information is the same as that in Pl. MSJ Ex. 95 and should therefore be unsealed accordingly. |
| Pl. MSJ Ex. 152 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of a photo of Colleen Hoover's home and a reference to the home's location.  Information regarding an individual's residence is especially sensitive and could have no possible bearing on the case.  The photo and reference may therefore be sealed. |
| Def. MSJ Ex. 39 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of a non-party's name and information tending to reveal that name as mentioned in her letter to the Producers Guild of America.  Although, as repeatedly indicated |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | above, the mere mention of a non-party name is insufficient to raise the specter of substantial privacy interests, the letter not only mentions the individual but shares information regarding their personal experiences in connection with an unrelated project. That information and those details do implicate privacy interests. They may therefore be maintained under seal. |
| Def. MSJ Ex. 45 | Lively | Third-party privacy interests | Unseal: <br><br> Lively seeks to redact two non-party names, but the references to the individuals are not particularly sensitive and Lively has failed to provide sufficient evidence of significant and substantial privacy interests. |
| Def. MSJ Ex. 47 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions: <br><br> Lively seeks sealing of the names of several non-party actors who were considered but not cast for the Film. These names can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |
| Def. MSJ Ex. 48 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions: <br><br> Lively seeks sealing of the names of several non-party actors who were considered but not cast for the Film. These names can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Def. MSJ Ex. 53 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the names of several non-party actors who were considered but not cast for the Film. These names can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |
| Def MSJ Ex. 87 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of reference to a non-party's medical information in a deposition.  Courts have recognized significant privacy interests in such information, and that interest is only heightened in the case of a non-party. *See AngioDynamics, Inc. v. C.R. Bard, Inc.*, 2022 WL 2643583, at *25 (N.D.N.Y. July 8, 2022) ("Courts regularly allow medical records and information to be filed under seal, 'finding that parties have a strong privacy interest in their medical information.'" (quoting *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 2021 WL 4166628, at *1 (W.D.N.Y. Sept. 14, 2021))).  These interests overcome any presumption of public access. |
| Def MSJ Ex. 95 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party's name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individual is a non-party without a |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | substantial connection to the Film. That conclusory assertion is insufficient to overcome the presumption of public access. |
| Def MSJ Ex. 102 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact non-party names but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individuals are non-parties without a substantial connection to the Film. That conclusory assertion is insufficient to overcome the presumption of public access. One of the names is also the same information in Pl. MSJ Ex. 95 and therefore should be unsealed for the same reasons. |
| Def. MSJ Ex. 108 | Lively | Third-party privacy interests | Seal pursuant to Lively's proposed redactions:<br><br>Lively seeks sealing of the names of several non-party actors who were considered but not cast for the Film. These names can be sealed for the reasons provided in connection with Pl. MSJ Ex. 104. |
| Def MSJ Ex. 133 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of a non-party name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individual is a non-party without a substantial connection to the Film. That conclusory assertion regarding third-party privacy interests is |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | insufficient to overcome the presumption of public access. |
| Def MSJ Ex. 134 (R. 11 Supp. Opp., Ex. A) | Lively | Third-party privacy interests | Unseal except that the name indicated by the parties can be replaced as the Wayfarer Parties suggest:<br><br>Lively seeks sealing of non-party names but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individuals are non-parties without a substantial connection to the Film. Moreover, the messages concern issues surrounding the Film. The Wayfarer Parties assert that Lively not only vented frustration to friends but enlisted people with "immense influence in the industry" against them prior to any alleged smear campaign. Given this assertion and the Wayfarer Parties' argument that any public-relations activities they undertook were purely defensive, the asserted privacy interests associated with these messages cannot overcome the presumption of public access.<br><br>Additionally, one of the names Lively seeks to redact is an alias for her husband, Ryan Reynolds, which should be replaced with Reynolds' actual name. Although Reynolds is a non-party in this case, his "third-party status should be placed in context," *Olson*, 29 F.4th at 91, and in that light, he is not so disconnected from the events at issue as to warrant heightened privacy protections. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Def MSJ Ex. 135 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact non-party names but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individuals are non-parties without a substantial connection to the Film. For substantially the reasons provided in connection with Def. MSJ Ex. 134, the names should be unsealed. |
| Def MSJ Ex. 136 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact non-party names but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individuals are non-parties without a substantial connection to the Film. For substantially the reasons provided in connection with Def. MSJ Ex. 134, the names should be unsealed. |
| Def MSJ Ex. 137 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individual is a non-party without a substantial connection to the Film. That conclusory assertion regarding third-party privacy interests is insufficient to overcome the presumption of public access. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Def MSJ Ex. 146 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individual is a non-party without a substantial connection to the Film. That conclusory assertion regarding third-party privacy interests is insufficient to overcome the presumption of public access. |
| Def MSJ Ex. 148 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks to redact a non-party name but has not specifically explained why that information is so sensitive as to require sealing other than stating that the individual is a non-party without a substantial connection to the Film. That conclusory assertion regarding third-party privacy interests is insufficient to overcome the presumption of public access. |
| Def. MSJ Ex. 149 (R. 11 Supp. Opp., Ex. B) | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of messages between Reynolds and his talent agent, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case. Any privacy interests cannot overcome the strong presumption of public access. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Def. MSJ Ex. 205 (R. 11 Supp. Opp., Ex. F) | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of messages between Reynolds and his talent agent, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case. Any privacy interests cannot overcome the strong presumption of public access. |
| Def. MSJ Ex. 206 (R. 11 EX. H) | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of messages between Reynolds and Colleen Hoover, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case. Any privacy interests cannot overcome the strong presumption of public access. |
| Def. MSJ Ex. 207 (R. 11 Supp. Opp., Ex. C) | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of messages between Reynolds and his talent agents, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case. Any privacy interests cannot overcome the strong presumption of public access. |
| Def. MSJ Ex. 210 | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of communications |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | between Reynolds and his talent agent, but at least some of the messages appear possibly to have been authored by Lively herself.  In any event, they are not wholly irrelevant to the issues in this case, and any third-party privacy interests cannot overcome the presumption of public access. |
| Def. MSJ Ex. 211 (R. 11 Supp. Opp., Ex. I) | Lively | Third-party privacy interests | Unseal: <br><br> Lively seeks sealing of messages between Reynolds and his talent agents, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case.  Any privacy interests cannot overcome the strong presumption of public access. |
| R. 11 Supp. Opp. Ex. D | Lively | Third-party privacy interests | Unseal: <br><br> Lively seeks sealing of messages between Reynolds and his talent agent, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case.  Although Lively has not specifically raised the prospect of competitive harm associated with the reference to Betty B, the Court notes that that information should not be sealed for the reasons provided above in connection with Betty B's requests for sealing. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| R. 11 Supp. Opp. Ex. E | Lively | Third-party privacy interests | Unseal:<br><br>Lively seeks sealing of messages between Reynolds and his talent agent, but Reynolds is not the kind of non-party whose privacy interests are weighed most heavily, and the messages are not wholly irrelevant to the issues in this case. Any privacy interests cannot overcome the strong presumption of public access. |
| Pl. MSJ Ex. 3 | Wayfarer Parties | Reference to non-party complaint | Unseal:<br><br>The Wayfarer Parties seek sealing of reference to a former Wayfarer employee who was subject to a workplace complaint, but that information is already on the public docket. |
| Pl. MSJ Ex. 4 | Wayfarer Parties | Reference to non-party complaint | Unseal:<br><br>This is the same information at issue in Pl. MSJ Ex. 3 and therefore must be unsealed for the same reasons. |
| Pl. MSJ Ex. 47 | Wayfarer Parties | Medical information | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of reference in a text message chain to an individual's medical issue. For the reasons previously provided, such information overcomes the presumption of public access and may be sealed. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Pl. MSJ Ex. 58 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Unseal except for the proposed redactions on pp. 24 and 30:<br><br>The Wayfarer Parties seek sealing of certain references to TAG's non-party clients and prospective clients. Two of the individuals have not, to the Court's knowledge, been publicly disclosed as working with TAG. Two other individuals, however, have been publicly identified, and the references to them therefore do not implicate significant privacy interests, particularly because the references do not specify public-relations work conducted for these two individuals. |
| Pl. MSJ Ex. 59 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto; irrelevant and inflammatory non-party commentary | Seal pursuant to Case and Koslow's proposed redactions:<br><br>The Wayfarer Parties and Case and Koslow move to seal references to a TAG non-party client or prospective client and information suggesting work performed for them. Because the information does more than simply reveal the identity of a previously disclosed client, and because the individual had a significant and reasonable expectation that this information would be kept confidential, it may be sealed. |
| Pl. MSJ Ex. 60 | Wayfarer Parties | Non-party and Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Case and Koslow's proposed redactions:<br><br>The Wayfarer Parties and Case and Koslow move to seal references to a TAG non-party client or prospective client and information suggesting work |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | performed for them. The information may be sealed for the reasons provided in connection with Pl. MSJ Ex. 59. |
| Pl. MSJ Ex. 61 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Case and Koslow's proposed redactions:<br><br>The Wayfarer Parties and Case and Koslow move to seal references to a TAG non-party client or prospective client and information suggesting work performed for them. The information may be sealed for the reasons provided in connection with Pl. MSJ Ex. 59. |
| Pl. MSJ Ex. 64 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to both the Wayfarer Parties' and Case and Koslow's proposed redactions:<br><br>The Wayfarer Parties and Case and Koslow move to seal references to TAG non-party clients or prospective clients and information suggesting work performed for them. Although some of the individuals have been publicly disclosed as working with TAG, others have not, and the information could be used to disclose specific public-relations work conducted for them, which is far more sensitive than just their names. The information regarding clients and work conducted for them is also interwoven throughout much of the document. The information may be sealed for the reasons provided in connection with Pl. MSJ Ex. 59. |
| Pl. MSJ Ex. 67 | Wayfarer Parties | PII (phone number) | Seal pursuant to the Wayfarer Parties' proposed redactions: |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | The Wayfarer Parties seek to seal one personal phone number, which is sufficiently sensitive to overcome any presumption of public access. |
| Pl. MSJ Ex. 90 | Wayfarer Parties | Non-public information about other Wayfarer projects | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of two messages revealing non-public information about another Wayfarer project. Undisclosed business plans of this nature are both irrelevant to this case and sufficiently sensitive to overcome the presumption of public access. The messages may therefore be sealed. |
| Pl. MSJ Ex. 188 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties and Case and Koslow move to seal references to TAG non-party clients or prospective clients and information suggesting work performed for them. As far as the Court is aware, the identities of these clients have not been publicly disclosed, and the messages might reveal not just their identities but work performed for them. The materials may therefore be sealed. |
| Pl. MSJ Ex. 190 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of references to Jonesworks' clients or prospective clients and information suggesting work performed for them. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | Although one of the individuals' names has been publicly disclosed as associated with parties in this case, another name has not been, at least to the Court's knowledge.  And the messages might reveal not only these individuals' identities but also sensitive public relations work performed for them.  The materials may therefore be sealed. |
| Pl. MSJ Ex. 191 | Wayfarer Parties | Non-party information and allegations | Unseal:<br><br>The Wayfarer Parties seek sealing of portions of Stephanie Jones' deposition testimony, but the testimony does not reveal any non-part client names and may be unsealed. |
| Pl. MSJ Ex. 208 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Lively's proposed redactions:<br><br>The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Pl. MSJ Ex. 209 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Lively's proposed redactions:<br><br>The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Pl. MSJ Ex. 212 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wallace Non-Parties' proposed redactions:<br><br>The materials should be sealed as |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Pl. MSJ Ex. 215 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wallace Non-Parties' proposed redactions except for the first message at 8:57 AM and the words "actually dropped" and "Page six" in the message at 9:41 AM:<br><br>The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Pl. MSJ Ex. 216 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to proposed redactions provided by Lively:<br><br>The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Pl. MSJ Ex. 217 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to proposed redactions provided by Lively:<br><br>The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Pl. MSJ Ex. 221 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of a reference to a TAG non-party client or prospective client and information revealing work performed for them. Because the document not only |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | mentions the non-party but reveals specific work performed for them, it is sufficiently sensitive to warrant continued sealing. |
| Pl. MSJ Ex. 222 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Unseal:<br><br>The Wayfarer Parties seek sealing of a non-party's name, but the document does not reveal any public-relations services performed for them. Rather, the messages largely concern the Film and the controversy surrounding it. The individual's name has also been publicly reported as connected to Abel. The individual's privacy interest in their name is therefore insufficient to warrant continued sealing.<br><br>*Note that in its January 16, 2026 Order, the Court mistakenly indicated that this information should be sealed.* |
| Pl. MSJ Ex. 223 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of a reference to a TAG non-party client or prospective client and information revealing work performed for them. This is the same information as that in Pl. MSJ Ex. 221 and should therefore be sealed accordingly. |
| Pl. MSJ Ex. 224 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Case and Koslow's proposed redactions at Dkt. No. 1159-3:<br><br>The Wayfarer Parties and Case and Koslow seek sealing of text messages revealing the identities of non-party |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | clients and information suggesting work performed for these individuals. The information may be sealed for the reasons provided in connection with Pl. MSJ Ex. 59. |
| Pl. MSJ Ex. 246 | Wayfarer Parties | Competitively sensitive retainer agreement | Seal only the PII on the first page, the dollar amounts of the fees in Section 5, the dollar amounts in Section 8, the bank information, and the percentage in Section 8: <br><br> The Wayfarer Parties seek sealing of portions of a retainer agreement between Liner Freedman Taitelman + Cooley, LLP and the Defendants in this case on the grounds that the agreement contains competitively sensitive information. Some of the information, including the specific fees and banking details, is both wholly irrelevant to the motion for summary judgment and sufficiently sensitive to warrant continued sealing. Other proposed redactions, however, do not implicate competitively sensitive information and therefore must be unsealed. |
| Pl. MSJ Ex. 247 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto; non-public financial information | Unseal: <br><br> The Wayfarer Parties seek sealing of a non-party's name, but the name is not sufficiently sensitive to warrant sealing for the reasons described above in connection with the Wallace Non-Parties' request to seal this same information. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Pl. MSJ Ex. 280 | Wayfarer Parties | Non-public financial information | Unseal:<br><br>The Wayfarer Parties seek sealing of an invoice amount and service fees associated with Abel's public-relations firm. For the reasons provided above with respect to the Wallace Non-Parties' requests to seal similar information, these details should not be sealed.<br><br>*Note that in its January 16, 2026 Order, the Court mistakenly stated that this information should be sealed.* |
| Pl. MSJ Ex. 292 | Wayfarer Parties | Non-public financial information | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of a non-party's daily rate and invoices reflecting the same. That information is non-public and, in contrast to other compensation information in the case, could have no possible bearing on any issue. It may therefore be sealed. |
| Pl. MSJ Ex. 299 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Lively's proposed redactions:<br><br>The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |
| Def. MSJ Ex. 167 | Wayfarer Parties | Competitively sensitive, irrelevant agreement terms | Seal only Section 2 except for Section 2.1:<br><br>The Wayfarer Parties seek sealing of portions of an engagement agreement |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | between Wayfarer and TAG on the grounds that the information is competitively sensitive, but much of the agreement does not strike the Court as particularly sensitive.  Information in Section 2 of the agreement regarding the structure of TAG's compensation, which extends far beyond a simple dollar amount, is sufficiently competitively sensitive to seal, but the rest of the agreement is not.<br><br>*Note that in its January 16, 2026 Order, the Court mistakenly indicated that Section 2 should be sealed in its entirety.* |
| Def. MSJ Ex. 170 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to Case and Koslow's proposed redactions:<br><br>The Wayfarer Parties and Case and Koslow seek sealing of references to TAG non-party clients or prospective clients and information suggesting work performed for them.  The information may be sealed for the reasons provided in connection with Pl. MSJ Ex. 59. |
| Def. MSJ Ex. 188 | Wayfarer Parties | Non-party contact information | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of contact information for a non-party contact at a hotel.  Contact information is sensitive and wholly irrelevant to any issue in this case.  It may therefore be sealed. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Def. MSJ Ex. 213 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the Wayfarer Parties' proposed redactions:<br><br>The Wayfarer Parties seek sealing of a reference to a TAG non-party client or prospective client and information revealing work performed for them. This is the same information as that in Pl. MSJ Ex. 221 and should therefore be sealed accordingly. |
| Def. MSJ Ex. 226 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal pursuant to the redactions provided by both the Wayfarer Parties and Case and Koslow:<br><br>The Wayfarer Parties and Case and Koslow move to seal references to TAG non-party clients or prospective clients and information suggesting work performed for them. Although some of the individuals have been publicly disclosed as working with TAG, others have not, and the information could be used to disclose specific public-relations work conducted for them, which is far more sensitive than just their names. The information regarding clients and work conducted for them is also interwoven throughout much of the document. The information may be sealed for the reasons provided in connection with Pl. MSJ Ex. 59. |
| Def. MSJ Ex. 231 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto; medical information | Seal pursuant to Case and Koslow's proposed redactions at Dkt. No. 1159-3:<br><br>The Wayfarer Parties and Case and Koslow seek sealing of references to TAG non-party clients or prospective clients and information revealing work |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | performed for them.  This is the same information as that in Pl. MSJ Ex. 224 and should therefore be sealed accordingly. |
| Def. MSJ Ex. 235 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Seal only the proposed redactions on KCASE-000003358, KCASE-000003359, the first redaction on KCASE-000003360, the first redaction on KCASE-000003361, and the remaining redactions proposed by the Wayfarer Parties:<br><br>The Wayfarer Parties and Case and Koslow seek sealing of text messages revealing the identities of non-party clients and information suggesting work performed for these individuals.  The messages contain a mix of previously disclosed and undisclosed public-relations information for a number of different clients and prospective clients.  The individuals' whose identities have been publicly disclosed as associated with TAG may be unsealed to the extent those messages do not reveal specifics about the work performed for the individuals.  The other undisclosed information may be sealed. |
| Def. MSJ Ex. 259 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto;  irrelevant personal information | Seal pursuant to the proposed redactions provided by both the Wayfarer Parties' and Case and Koslow:<br><br>The Wayfarer Parties and Case and Koslow seek sealing of text messages revealing the identities of non-party clients and information suggesting work performed for these individuals.  The information may be sealed for the |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| | | | reasons provided in connection with Pl. MSJ Ex. 59. |
| WF Parties' Opp. to Lively Motion for Spoliation Sanctions Ex. 44 | Wayfarer Parties | Irrelevant and sensitive information relating to relationship between attorneys and clients | Seal only the PII on the first page, the dollar amounts of the fees in Section 5, the dollar amounts in Section 8, the bank information, and the percentage in Section 8: <br><br> This is the same document as Pl. MSJ Ex. 246 and therefore should be sealed as indicated above. <br><br> *Note that in its January 16, 2026 Order, the Court mistakenly indicated that all of the Wayfarer Parties' proposed redactions should be adopted.* |
| Hudson Decl. In Support of Lively's Reply to Opp. to Motion for Spoliation Sanctions, Ex. 67 | Wayfarer Parties | Irrelevant and sensitive information relating to relationship between attorneys and clients | Seal only the PII on the first page, the dollar amounts of the fees in Section 5, the dollar amounts in Section 8, the bank information, and the percentage in Section 8: <br><br> This is the same document as Pl. MSJ Ex. 246 and therefore should be sealed as indicated above. |
| Hudson Decl. In Support of Lively's Reply to Opp. to Motion for Spoliation Sanctions, Ex. 68 | Wayfarer Parties | Identification of (non-party) client of parties or services rendered thereto | Unseal: <br><br> The materials should be sealed as detailed above in connection with the Wallace Non-Parties' request to seal this same document. |

| Exhibit Number | Sealing Proponent | Proposed Basis for Sealing | Court's Ruling |
|---|---|---|---|
| Lively's motion for spoliation sanctions, Ex. 19 | Wayfarer Parties | Competitively sensitive, irrelevant agreement terms | Seal only Section 2 except for Section 2.1:<br><br>Following the Court's November 26, 2025 order in which the Court directed the Wayfarer Parties to file proposed redactions, they filed proposed redactions for Ex. 19 to Lively's motion for spoliation sanctions. This is the same document as Def. MSJ Ex. 167 and therefore should be sealed consistent with the above. |

## CONCLUSION

The motion of Isabela Ferrer at Dkt. No. 1146 is DENIED.  The motion of Betty B

Holdings, LLC at Dkt. No. 1148 is DENIED.  The motion of Family Hive, LLC at Dkt. No. 1153

is DENIED.  The motion of Sony Pictures Entertainment at Dkt. No. 1162 is GRANTED IN

PART and DENIED IN PART.  The motion of William Morris Endeavor Entertainment, LLC at

Dkt. No. 1168 is DENIED.  The motions of the Wallace Non-Parties, Case and Koslow, the

Wayfarer Parties, and Lively at Dkt. Nos. 1149, 1157, 1160, and 1163 are GRANTED IN PART

and DENIED IN PART.

The Clerk of Court need not unseal any docket entries, as the parties who submitted the

relevant materials shall refile them in accordance with this Opinion and Order by January 21,

2026, at 1:00 PM.  Before doing so, the parties shall ensure that all PII is redacted.  The parties

shall also provide CD copies of any audio or visual materials submitted in connection with the

motions to the Clerk of Court consistent with prior practice in this case so that the materials may

be distributed to the public (to the extent those materials have not been sealed or already

provided to the Clerk's Office).

      The Clerk of Court is respectfully requested to close Dkt. Nos. 1146, 1148, 1149, 1153, 1157, 1160, 1162, 1163, and 1168.

      SO ORDERED.

Dated: January 20, 2026
      New York, New York

                                LEWIS J. LIMAN
                        United States District Judge