F3512UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

BLAKE LIVELY,                          :
                                       :      Civ. Action No. 1:24-cv-10049-LJL
                    Plaintiff,         :
                                       :      Related to:
v.                                     :      Civ. Action No. 1:25-cv-00779-LJL
                                       :
WAYFARER STUDIOS LLC, JUSTIN BALDONI,  :
JAMEY HEATH, STEVE SAROWITZ, IT ENDS   :
WITH US MOVIE LLC, MELISSA NATHAN, THE :
AGENCY GROUP PR LLC, and JENNIFER ABEL,:
                                       :
                    Defendants.        :
                                       :
-------------------------------------------------------------------- x
                                       :
JENNIFER ABEL,                         :
                                       :
                    Third-Party Plaintiff, :
                                       :
v.                                     :
                                       :
JONESWORKS LLC,                        :
                                       :
                    Third-Party Defendant. :
                                       :

**DEFENDANTS' OPPOSITION TO PLAINTIFF BLAKE LIVELY'S**
**<u>MOTION FOR SPOLIATION SANCTIONS</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ........................................................................................... 6

II.  FACTUAL BACKGROUND ......................................................................... 9

    A.   The Film "It Ends With US" and Lively's Complaints About Misconduct on the Set. .......................................................................................... 10

    B.   The "Protections" and Resolution of Lively's Complaints.................................... 10

    C.   Lively Hijacks Control of the Film from the Wayfarer Defendants. .................... 11

    D.   The Public Relations Response to Lively's Attacks and the Surging Chatter Over Discord on the Film's Set. ............................................................ 12

    E.   The Use of Signal by Some Defendants. ............................................................. 15

III. PLAINTIFF FAILS TO MEET HER BURDEN TO SHOW THAT SHE IS ENTITLED TO SANCTIONS UNDER RULE 37(e)(1) ................................ 16

    A.   Plaintiff Fails to Establish Sanctionable Conduct by Any Particular Defendant.. 18

    B.   Plaintiff Fails to Show that Defendants Had a Duty to Preserve Allegedly Deleted Evidence. ............................................................................. 20

    C.   Plaintiff Fails to Show that the Allegedly Destroyed Documents Existed. .......... 22

    D.   Plaintiff Fails to Show Prejudice. ...................................................................... 24

    E.   Plaintiff Fails to Show that Any Defendant Had a Culpable State of Mind When Signal Messages Automatically Deleted. ................................................... 25

IV.  PLAINTIFF FAILS TO MEET HER BURDEN UNDER RULE 37(e)(2) FOR THE SEVERE SANCTIONS SHE SEEKS ........................................................ 26

V.   CONCLUSION ........................................................................................... 30

470220.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adato v. Gala Tour, Inc.*,
2011 WL 4458852 (E.D.N.Y. Sept. 23, 2011) .......................................................................23

*American Lecithin Co. v. Rebmann*,
2023 WL 7160729 (S.D.N.Y. Oct. 31, 2023) ........................................................................16

*Anderson v. Amazon.com, Inc.*,
2025 WL 2780921 (S.D.N.Y. Sept. 30, 2025)........................................................................22

*Barbera v. Grailed, LLC*,
2025 WL 2098635 (S.D.N.Y. July 25, 2025) ................................................................ *passim*

*Bradshaw v. Welch*,
2024 WL 3495154 (N.D.N.Y. July 22, 2024) .......................................................................16

*CAT3, LLC v. Black Lineage, Inc.*,
164 F. Supp. 3d 488 (S.D.N.Y. 2016).............................................................................17, 25

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
337 F.R.D. 47 (S.D.N.Y. 2020) ................................................................................20, 25, 27

*Chin v. Port Auth. of N.Y. & N.J.*,
685 F.3d 135 (2d Cir. 2012)........................................................................................17, 20

*Cooper Foods International, LLC v. Yourd*,
2025 WL 2663977 (E.D.N.Y. Sept. 17, 2025) ...............................................................22, 23

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
2007 WL 5193736 (C.D. Cal. Sept. 21, 2007), *aff'd*, 322 F. App'x 569 (9th
Cir. 2009) ............................................................................................................................21

*Dilworth v. Goldberg*,
3 F. Supp. 3d 198 (S.D.N.Y. 2014) .....................................................................................23

*ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*,
2025 WL 1962141 (2d Cir. July 17, 2025)...........................................................................17

*Fed. Trade Comm'n v. Noland*,
2021 WL 3857413 (D. Ariz. Aug. 30, 2021)........................................................................29

*Field Day v. County of Suffolk*,
2010 WL 1286622 (E.D.N.Y. March 25, 2010) ....................................................................18

*Grant v. Salius*,
   2011 WL 5826041 (D. Conn. Nov. 18, 2011) .......................................................18

*Gregory v. Montana*
   118 F.4th 1069 (9th Cir. 2024) .........................................................................9

*Hamling v. United States*,
   418 U.S. 87 (1974)...........................................................................................24

*Herzig v. Ark. Found. for Med. Care, Inc.*,
   2019 WL 2870106 (W.D. Ark. July 3, 2019) .......................................................29

*Hoffer v. Tellone*,
   128 F.4th 433 (2d Cir. 2025) ......................................................................26, 29

*Johnson v. L'Oreal USA*,
   2020 WL 5530022 (S.D.N.Y. Sept. 15, 2020)......................................................27

*Karsch v. Blink Health Ltd.*,
   2019 WL 2708125 (S.D.N.Y. June 20, 2019) .......................................................27

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   341 F.R.D. 474 (S.D.N.Y. 2022) ..................................................................16, 26

*Khaldei v. Kaspiev*,
   961 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 961 F. Supp. 2d 572 (S.D.N.Y.
   2013) .............................................................................................................23

*Kosmidis v. Port Auth. of New York & New Jersey*,
   2020 WL 5754605, at *4-9 (S.D.N.Y. Aug. 27, 2020), *report and
   recommendation adopted*, 2020 WL 7022479 (S.D.N.Y. Nov. 30, 2020) ..............20

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998).............................................................................20

*Marshall v. Port Auth. of New York & New Jersey*,
   2022 WL 17491006 (S.D.N.Y. Dec. 5, 2022) ....................................................20

*Oakley v. MSG Networks, Inc.*,
   792 F. Supp. 3d 377 (S.D.N.Y. 2025)........................................................ *passim*

*Pable v. Chicago Transit Auth.*,
   2023 WL 2333414, at *19 (N.D. Ill. Mar. 2, 2023), *report and
   recommendation adopted*, 2024 WL 3688708 (N.D. Ill. Aug. 7, 2024), *aff'd*,
   145 F.4th 712 (7th Cir. 2025) ..........................................................................15

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
   685 F. Supp. 2d 456 (S.D.N.Y. 2010)................................................................21

4

*United States v. Bankman-Fried*,
   2023 WL 1490417 (S.D.N.Y. Feb. 1, 2023)........................................................25

*United States v. Holmes*,
   44 F.3d 1150 (2d Cir.1995)..............................................................................24

*United States v. Jamil*,
   707 F.2d 638 (2d Cir. 1983)..............................................................................25

*WeRide Corp. v. Kun Huang*,
   2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ...................................................29

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999)..............................................................................16

## Other Authorities

Fed. R. Civ. Proc. 37 ................................................................................. *passim*

Fed. R. Evid. 403 ...............................................................................................24

5

I.     **INTRODUCTION**

Plaintiff Blake Lively's ("Lively" or "Plaintiff") sanctions motion ( "Motion") should be denied. Lively seeks the most severe sanctions available under Rule 37(e) including an adverse inference that an August 2024 crisis management strategy was not only planned but executed ***and*** a preclusion order barring Defendants from presenting any evidence refuting Lively's claim that they executed on the plan to manipulate the internet to defame Lively and derail her career (for which she is now seeking a mere $300 million in damages). Lively's showing falls woefully short of the "harsh" standard for sanctions under Rule 37(e)(2) or even the lesser sanctions available under Rule 37(e)(1).

Boiled down to its essence, the Motion asserts that some Defendants may have "used Signal to discuss topics relevant to this litigation," prior to the December 20, 2024 filing of Lively's Complaint without disabling the auto-delete feature. Lively assumes, and asks the Court to assume, that all eight Defendants deleted messages that might have "further" shown that Defendants executed on a crisis management strategy that turned the internet against Lively in August 2024, at the time the Film "It Ends With Us" (the "Film") was released. The mere assumption that some or all Defendants may have deleted relevant evidence – even intentionally – is not enough to justify sanctions that would devastate the defense of eight Defendants.

The Motion's first flaw is that Lively seeks blanket sanctions against all Defendants, without distinction. Rule 37(e) sanctions are personal and cannot be awarded against a group of eight without proof that each independently spoliated evidence. Lively fails to show that any message evidencing the implementation of a 'smear campaign' was deleted by a particular Defendant or even that all Defendants used Signal to communicate about Lively prior to the filing of her Complaint. Rather, Lively indiscriminately seeks sanctions against all eight Defendants.

6

Plaintiff admits that it is "unclear" whether all Defendants used Signal "prior to December 20, 2024." Dkt. 874, p. 14, n.9. The allegation that all Defendants executed a crisis management strategy to manipulate the internet (Lively refers to this as the "Digital Campaign") is based solely on the supposition that negative publicity about Lively went viral in August 2024, and thus Defendants must have been the cause. In fact, Lively fails to identify specific communications that might demonstrate the implementation of the Digital Campaign. She only speculates that such evidence may or "must" have existed and been automatically deleted. Lively stubbornly refuses to acknowledge, or take any responsibility for, her own conduct which was the impetus for the public backlash that spiraled out of control when the Film was released in August 2024.

Lively also fails to make the critical threshold showing for application of Rule 37(e), namely, that any Defendant anticipated litigation over a 'smear campaign' – the purported subject of the allegedly deleted communications – and thus had a duty to preserve such evidence prior to the filing of Lively's December 20, 2024 complaint. Lively's claims fall into two categories: (1) claims relating to alleged sexual harassment and gender discrimination by certain Wayfarer Defendants occurring between May 15 and June 14, 2023; and (2) claims relating to an alleged digital or 'smear campaign' that allegedly began in August 2024.

The Signal messages that are the subject of Plaintiff's Motion relate to the "digital" or "smear" campaign allegedly conceived in August 2024, not Lively's sexual harassment claims which arose between May 15 and June 14, 2023. Plaintiff does not even attempt to show that any party contemplated litigation over a public relations strategy or Digital Campaign when unspecified Signal messages allegedly were deleted by any Defendant. Plaintiff merely points to a November 9, 2023 "demand letter" relating to the objections she raised in 2023 and Defendants' discovery response which confirm that in November 2023, they anticipated litigation "in

connection with the shooting of the Film" in May and June 2023. Dkt. 874, pp. 13, 18. Lively fails to demonstrate that Defendants reasonably foresaw litigation in which the August to December 2024 Signal chats might be relevant and thus fails to establish a duty to preserve those messages.

Lively next fails to show prejudice caused by the acts of any Defendant – a predicate for Rule 37(e) sanctions. In fact, Plaintiff fails to show prejudice at all – Lively contends that "severe prejudice" is "obvious" because deleted Signal messages may have "further shown Defendants' execution of the Digital Campaign" (Dkt. 874, p. 4), thereby "impair[ing] Ms. Lively's ability to fully prosecute her claims" and "rebut" the defense that the "Wallace Defendants decided, after being retained, that no proactive Digital Campaign work was required given 'organic' online sentiment" (Dkt. 874, pp. 18, 22-23).

Yet, on the very first page of her Motion, Plaintiff admits that she was not prejudiced by the deletion of Signal threads by noting that despite Defendants' alleged "efforts to cover their tracks, *there is substantial evidence that the retaliatory campaign was, in fact, implemented as planned.*" Dkt. 874, p. 1 (emphasis added). Lively has also produced multiple expert reports which rely on the evidence she provided to opine (albeit erroneously) on the execution of the Digital Campaign. Since she admittedly has "substantial evidence" that the Digital Campaign was implemented, Lively cannot establish prejudice from the purported denial of "further evidence" which may be subject to exclusion as cumulative. Absent a showing of prejudice, Plaintiff is not entitled to sanctions under Rule 37(e).

Lively thus fails to establish her right to sanctions under Rule 37(e)(1), which, upon a showing of prejudice, are limited to those sufficient to cure the prejudice she has not shown. But Lively does not seek sanctions under subsection (e)(1); she seeks the more severe sanctions of an adverse inference and preclusion available only under Rule 37(e)(2). Failing to meet her burden

470220.1

under 37(e)(1), Lively is not entitled to sanctions under 37(e)(2). Even assuming she met her burden under 37(e)(1), Lively fails to establish that any Defendant acted with the intent to deprive her of specific evidence for use in this litigation – a predicate for the onerous sanctions available under subsection (e)(2) only.

As elaborated below, conjecture and speculation are insufficient to justify sanctions under Rule 37(e), much less the severe sanctions of an adverse inference and presumption that damaging evidence existed and was deleted. In fact, this is only one of multiple sanctions motions in which Lively – implicitly conceding that the evidence adduced in discovery will not support her claims – seeks to exclude evidence crucial to the defense.[1] Crippling the defense of eight Defendants to avoid having to prove claims with admissible evidence is not a proper purpose of Rule 37(e).

## II.     FACTUAL BACKGROUND

Plaintiff asserts claims for sexual harassment and retaliation under FEHA and Title VII, as well as defamation and other reputational harm against Defendants Justin Baldoni, Jamey Heath, Steve Sarowitz, Wayfarer Studios LLC and It Ends With Us Movie LLC ("IEWUM") (collectively the "Wayfarer Defendants"). Plaintiff also complains that Wayfarer's public relations/crisis management team, Jen Abel, Melissa Nathan and The Agency Group PR LLC ("TAG") (collectively the "PR Defendants"), were involved in an alleged Digital Campaign that manipulated negative content against Lively on the internet. The relevant facts are summarized below.

---

[1] Plaintiff devotes much time to arguing that Defendants were too slow in producing documents or otherwise engaged in efforts to obstruct discovery. Defendants deny these accusations. Most importantly, perceived shortcomings in Defendants' discovery efforts are not relevant to a Rule 37(e) analysis as the Court cannot impose sanctions for spoliation of ESI pursuant to its "inherent powers." *Barbera v. Grailed, LLC*, 2025 WL 2098635, at *10 (S.D.N.Y. July 25, 2025); *Gregory v. Montana* 118 F.4th 1069, 1080 (9th Cir. 2024).

**A.    The Film "It Ends With US" and Lively's Complaints About Misconduct on the Set.**

The Film began shooting in New Jersey and New York on May 15, 2023 ("Phase 1").  Dkt. 520, ¶ 15; Garofalo Decl. Ex. 1 (Lively Dep. at 261:15-18). Phase 1 ended on June 14, 2023, due to the Writers Guild and SAG strikes. Garofalo Decl. Ex. 2 (WAYFARER_000141293). During Phase 1, Lively complained about purported mistreatment on the set by Baldoni and Heath, including alleged conduct that made her uncomfortable. *See generally*, Dkt. 520. Her complaints ranged from wardrobe and scheduling issues to Baldoni's statements that she looked "hot" or "sexy" in a costume designed for an intimate scene between Baldoni's and Lively's characters, and Heath showing her a video his wife after the birth of his daughter in connection with the filming of a birthing scene. *Id*. Lively did not file a formal complaint, but voiced concerns to Baldoni, Heath and others including the Film's distributor, Sony, no later than June 1, 2023. Garofalo Decl. Ex. 3 (WAYFARER_000149780); Ex. 4 (Giannetti Dep. at 109:4-112:16, 299:22-300:15); Ex. 5 (Lively Dep. at 188:7-16, 191:13-192:4).

**B.    The "Protections" and Resolution of Lively's Complaints.**

During the strike-related pause in filming, on November 9, 2023, the Wayfarer Defendants received a letter from Lively's lawyer, Lyndsey Strasberg, demanding that Wayfarer agree to a 17-point list of "Protections" as a condition for Lively's return to complete the Film. Dkt. 864-11. The letter stated that "[i]f the production is unwilling to accept or uphold these protections, our client is prepared to pursue her full legal rights and remedies." *Id*. Under extreme financial pressure to complete the Film and pressure from Sony, the Film's co-investor, Wayfarer agreed to the Protections. Garofalo Decl. Ex. 6 (Giannetti Dep. at 295:18-296:8, 300:25-303); Ex. 7 (SPE_BL0003512). The Wayfarer Defendants understood that their agreement to the "Protections" resolved the issues that had arisen during Phase 1 and eliminated the threat of potential litigation.

Garofalo Decl. Ex. 8 (Heath Dep. 10/9/25 at 163:5-165:14).

Filming resumed on January 5, 2024, following an extremely tense "all hands" meeting on January 4, 2024, in which Lively's husband, Ryan Reynolds, spent hours berating the Wayfarer Defendants for their conduct in Phase 1. Garofalo Decl. Ex. 9 (Giannetti Dep. at 173:7-8, 304:21-307:4); Ex. 10 (Heath Dep. 10/8/25 at 290:2-291:7): Ex. 11 (BALDONI_000026204). After returning to the set, Lively did not assert any further complaints. Dkt. 520 ¶ 21. Filming which began on January 5, wrapped up on February 9, 2024 ("Phase 2"). *Id*. There is no evidence (or even allegation) that the Wayfarer Parties failed to "uphold" the Protections during the second phase of filming. *See generally*, Dkt. 520. In fact, on January 14, 2024, Lively assured a cast member that the inappropriate behavior had been stopped and that "It's a professional set and we're getting good work." Garofalo Decl. Ex. 12 (BL-000020899). The PR Defendants were not parties to the Protections (Dkt. 864-11), did not attend the January 4 "all-hands" meeting (Dkt. 520 ¶ 19 ("Attendees at the meeting included: (1) Mr. Baldoni; (2) Mr. Heath; (3). Ms. Gianetti; (4) Alex Saks; (5) Todd Black; (6) Ms. Lively; and (7) Ms. Lively's husband, Ryan Reynolds")) and did not have any contact with Lively about her complaints of misconduct in Phase 1.

### C.    Lively Hijacks Control of the Film from the Wayfarer Defendants.

During the second phase of production, Lively moved to seize control of the production. Among other things, she wrested control over editing, post-production and marketing from Baldoni and Wayfarer. Garofalo Decl. Ex. 13 (BL-000018396). Ultimately, Lively gained control over the entire post-production process, demanding that her cut of the Film be released even though Baldoni's Director's Cut tested better. Garofalo Decl. Ex. 14 (BL-000019326). Lively also demanded that Baldoni's "film by" credit be removed and that Baldoni's image be erased from the trailer and that Wayfarer recommend to the Producers Guild that Lively be given a producer's

11

mark. Garofalo Decl. Ex. 15 (BL-000019455); Ex. 16 (SPE_WF0000641); Ex. 17 (SPE_BL0022958); Ex. 18 (Baldoni Dep. 10/7/25 at 328:9-17); Ex. 19 (Greenberg Dep. at 138:2-19). Lively's own submission to the Producers Guild leaves no doubt about Lively's successful efforts to hijack the Film. Garofalo Decl. Ex. 13 (BL-000018396). Lively accomplished her takeover through threats that if her demands were not met, she would not participate in marketing the Film, even though she was contractually obligated to do so. Garofalo Decl. Ex. 20 (BALDONI_000018831). A Sony executive aptly characterized Lively as a "terrorist." Garofalo Decl. Ex. 21 (SPE_WF0000415 at -16).

Not content with usurping Baldoni's role as director and excluding him from the marketing of the Film he developed, financed, directed and starred in, Lively then sidelined – indeed banished – Baldoni from the premiere, refusing to be photographed with him, and demanding that he and his guests be hidden from sight and shunning Baldoni and his guests into another screening room. Garofalo Decl. Ex. 22 (WME_00001254) (Danny Greenberg, writing: "[Lively's] been brilliantly choreographing this for a while."); Ex. 23 (WME_00001266); Ex. 24 (Heath Dep. 10/9/25 at 96:18-21); Ex. 25 (Sarowitz Dep. at 140:11-13); Ex. 26 (WAYFARER_000141754); Ex. 27 (WAYFARER_000141765). Baldoni was also barred from appearing with Lively in publicity photos or promotional appearances. Lively very publicly "unfollowed" Baldoni on social media and pushed other cast and crew members as well as Colleen Hoover, the book's author, to follow suit. Dkt. 520 at 186 n.26; Garofalo Decl. Ex. 28 (Hoover Dep. at 197:8-12); Ex. 29 (BL-000020979 at -80).

### D.    The Public Relations Response to Lively's Attacks and the Surging Chatter Over Discord on the Film's Set.

By the time of the Film's August 6, 2024 premiere, rumors of discord on the Film's set were already swirling on social media and in the press. Dkt. 520, ¶ 237 n.36. These rumors were

fueled by Lively's very public exclusion of Baldoni from the Film's marketing (Garofalo Decl. Ex. 30 (SPE_BL0008472)), Lively's bullying of Sony to release her cut of the Film instead of Baldoni's Director's cut (Garofalo Decl. Ex. 14 (BL-000019326)), Lively's "unfollowing" of Baldoni on social media (Dkt. 520, p. 186 n.26) and Lively's insistence that Baldoni be stripped of the credit "film by Justin Baldoni" on the movie he developed, sold, directed and starred in. Garofalo Decl. Ex. 18 (Baldoni Dep.10/7/25 at 328:9-17). Lively was also attracting negative media attention based on her marketing of the Film which seemed to trivialize the issue of domestic violence. Garofalo Decl. Ex. 31 (WME_00001051). Lively was further criticized for shamelessly using the Film to promote her alcohol business and other brands. Garofalo Decl. Ex. 32 (SPE_BL0003328). This decision was particularly tone deaf given the role of alcohol abuse in domestic violence cases. Nevertheless, Lively used alcoholic drinks using her Betty Booze alcohol product such as "Ryle You Wait" and "It Ends With Buzz" at promotional events. Garofalo Decl. Ex. 33 (WAYFARER_000142484). The public backlash was immediate and unforgiving. *See* Esther Zuckerman "What 'It Ends With Us' Says About the Blake Lively Brand" (Aug. 11, 2024), https://www.nytimes.com/2024/08/11/movies/it-ends-with-us-blake-lively-brand.html.

Given the circumstances and Lively's affirmatively hostile conduct, the Wayfarer Parties were understandably concerned about a potential onslaught of negative publicity from Lively. On July 25, 2024, the Wayfarer Parties contacted crisis communication specialist, Melissa Nathan and her company TAG, to defuse and defend against Lively's anticipated assault and protect the Film and Baldoni's professional reputation as a producer and director. Garofalo Decl. Ex. 34 (KCASE-000005773); Ex. 35 (NATHAN_000003795). The Wayfarer Defendants also retained Jed Wallace to provide digital monitoring services. Garofalo Decl. Ex. 36 (SR 1.00000011). Nathan, who was first engaged as a crisis manager on August 2, 2024 (nine months after the Strasberg letter and

over a year after the alleged acts Lively now claims as harassment), had no involvement with the Film or the Wayfarer Defendants during Filming, did not receive a copy of the Strasberg letter and had no contemporaneous knowledge of Lively's litigation threats. However, Heath provided Abel with a copy of the Strasberg letter and the 17-point list of protections on November 10, 2023. Garofalo Decl. Ex. 37 (HEATH_000049558).

On August 2, 2024, the crisis management/public relations team circulated a "SCENARIO PLANNING" document with a proposed strategy to counter against negative press and Lively's efforts to disparage Baldoni and Heath as the Film's director and producer, respectively, tamp down the growing chatter on the internet's rumor mill, and handle the response "should [Lively] and her team make her grievances public." Garofalo Decl. Ex. 38 (NATHAN_000005497). Lively defines this defensive measure as the launch of a retaliatory "smear campaign" and contends that in the weeks and months that followed, the Wayfarer Parties "engaged in a sophisticated, coordinated, and well-financed retaliation plan." Dkt. 520, ¶ 5. In fact, the Wayfarer Defendants did nothing other than exercise their right to defend against Lively's attacks and the tidal wave of negative publicity triggered by Lively's conduct. Lively implicitly concedes that the goal of the Wayfarer Defendants' public relations effort was not retaliation for some protected activity, but to defend Baldoni and his reputation.

The strategy described in the Scenario Planning document was never implemented. Anti-Lively, pro-Baldoni sentiment went viral organically. Garofalo Decl. Ex. 39 (NATHAN_000000278-279). The negative publicity spiked on the eve of the August 6 premiere and August 9, 2024 release date. Dkt. 520, ¶ 237 n.36. Plaintiff's own timeline indicates that Defendants could not have been the masterminds behind the spike in negative publicity. Plaintiff points to spikes in negative internet traffic on August 8 and 14, 2024. Dkt. 520, ¶ 326; Motion,

14

Dkt. 863, p. 13 ("[b]y no later than August 12, 2024, Defendants took to the offensive – using their words, it was time to 'lawyer up,' get 'ready to fight,' and 'go to war.'"). Wallace was recommended to Defendants on August 8 and engaged on August 9, 2024. Garofalo Decl. Ex. 40 (NATHAN_000003599 at -602); Dkt. 874-10 (J. Wallace Dep. 10/9/25 at 197:20-198:1). The first spike in negative digital coverage began on August 8 – before Wallace, the alleged digital wizard, was retained and only one day after he was referred by Nathan. Dkt. 520, ¶ 326. Even looking at the August 14 spike, Plaintiff does not offer any explanation about how the PR Defendants and Wallace were able to turn the entire internet against Lively in less than two days. *Id.* These facts undermine Lively's presumption that Defendants manipulated the spike in the already burgeoning negative sentiment targeted at Lively.

E.    **The Use of Signal by Some Defendants.**

After the crisis management team was brought on board in August 2024 and prior to Plaintiff's filing of her claim on December 20, 2024, certain Defendants used Signal chats to communicate. Signal is a commonly used app which provides "enhanced security features." *Pable v. Chicago Transit Auth.*, 2023 WL 2333414, at *19 (N.D. Ill. Mar. 2, 2023), *report and recommendation adopted*, 2024 WL 3688708 (N.D. Ill. Aug. 7, 2024), *aff'd*, 145 F.4th 712 (7th Cir. 2025). The security protections Signal provides, made Signal the preferred and primary means of communication between Nathan, the crisis manager, and Jed Wallace, who operated in a highly charged media environment. Dkt. 874-4 (Nathan Dep. 9/29/25 at 51:6-18). Other Defendants used Signal on limited occasions. Jamey Heath communicated at least twice on Signal during this period. Dkt. 874-8 (Heath Dep. 10/8/25 at 359:5-360:20). Sarowitz, Baldoni and Abel did not use Signal at all during the pre-litigation period to communicate about Lively. Garofalo Decl. Ex. 41 (Sarowitz Dep. 91:14-93:6); Dkt. 874-6 (Baldoni Dep. 10/6/25 at 54:5-55:6); Garofalo Decl. Ex.

45 (Abel Dep. 9/26/25 at 249:7-18; 323:17-23). However, to the extent Signal was used, the participants had Signal set on its auto-delete feature. Dkt. 874-8 (Heath Dep. 10/8/25 at 362:17-363:12); Garofalo Decl. Ex. 42 (Nathan Dep. 9/29/25 at 51:25-53:7).  Defendants therefore have no Signal communications from the pre-litigation period. However, Defendants also used traditional platforms, such as text messages, to communicate about Lively.  Garofalo Decl. Ex. 43 (Case Dep. at 74:17-75:2). These messages have been produced and some of these messages may be included in the "substantial evidence" Lively claims exists.[2]

Plaintiff filed her CRD complaint on December 20, 2024 and, on the same day, sent a cease and desist letter advising the parties of a litigation hold. Dkt. 520, ¶ 294. Mr. Freedman, although he had been introduced to Defendants in August 2024, was not retained until December 24, 2024. Garofalo Decl. Ex. 44 (ABEL_000021588). The engagement letter cautioned Defendants to preserve documents. *Id*. Shortly thereafter, Defendants switched off the auto delete feature. Dkt. 874-4 (Nathan Dep. 9/29/25 at 48:2-19); Dkt. 874-8 (Heath Dep. 10/8/25 at 370:11-373:8). Non-privileged Signal communications after December 20, 2024 have been produced.

## III.  PLAINTIFF FAILS TO MEET HER BURDEN TO SHOW THAT SHE IS ENTITLED TO SANCTIONS UNDER RULE 37(e)(1)[3]

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v.*

---

[2] For instance, Lively cites to the June 2024 message in which Abel discusses whether to recommend Bryan Freedman (Dkt. 874-15), and in August 2024, Katie Case indicated they were getting ready to "go to war" (Dkt. 874-31).

[3] The Second Circuit has not decided whether a preponderance of evidence or clear and convincing standard of proof on spoliation claims or on what issues. *Bradshaw v. Welch*, 2024 WL 3495154, at * 6 (N.D.N.Y. July 22, 2024) ("It is the movant's burden to establish by clear and convincing evidence that the non-moving party acted with intent to deprive him of the spoliated evidence"); *American Lecithin Co. v. Rebmann*, 2023 WL 7160729, at *3 (S.D.N.Y. Oct. 31, 2023) ("The party requesting an adverse inference, 'bears the burden to show by clear and convincing evidence that the alleged spoliator acted with intent to deprive the movant of the information for use in the litigation.'" (citation omitted)); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 496 (S.D.N.Y. 2022) (moving party on spoliation motion must prove bad faith and intent to deprive by clear and convincing evidence);

*Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 2025 WL 1962141, at *8 (2d Cir. July 17, 2025). Federal Rule of Civil Procedure 37(e) governs spoliation of electronically stored information ("ESI"). *Barbera*, 2025 WL 2098635, at *7. Rule 37(e) sanctions are "entrusted to the court's discretion." Fed. R. Civ. P. 37(e). A party seeking sanctions for spoliation has the burden to establish "'(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the [evidence was] destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

There are two levels of sanctions under Rule 37(e). Sanctions under Rule 37(e)(1) are available upon a showing of prejudice and are limited to "measures no greater than necessary to cure the prejudice." *Barbera*, 2025 WL 2098635, at *8, *11 (citing Fed. R. Civ. P. 37(e)(1) advisory committee note to 2015 amendment, which states "it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence."). The Court is not "require[d] … to adopt measures to cure every possible prejudicial effect." *Id*. Under Rule 37(e)(1) a court may permit the prejudiced party "to present evidence to the jury concerning the loss and likely relevance of information and instruct[] the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37(e)(1) advisory committee note to 2015 Amendments; *Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 389 (S.D.N.Y. 2025) (denying request to

---

*CAT3, LLC v. Black Lineage, Inc*., 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016) (same). As shown below, Plaintiff's motion fails to meet even the lesser preponderance standard.

preclude evidence showing that plaintiff was assaulted where after the filing of his complaint, plaintiff deleted a spike of over 800 text messages from immediately after the alleged assault finding no authority "that would permit such a sweeping preclusion of evidence under Rule 37(e)(1)").

More severe sanctions, including an adverse inference, presumption and terminating sanctions, are available only under Rule 37(e)(2), which requires an additional showing that the spoliating party deleted or destroyed evidence with the intent to deprive the non-spoliating party of its use in the litigation. *Barbera*, 2025 WL 2098635, at *8. As noted, Plaintiff is seeking draconian sanctions available only under Rule 37(e)(2) including "an adverse inference that Defendants intentionally deleted and failed to preserve relevant evidence when they had an obligation to do so, and that the destroyed evidence would have further shown Defendants' execution of the Digital Campaign" and an order precluding Defendants "from arguing that they did not execute their Digital campaign and they openly planned to do." Dkt. 874, p. 4. Imposition of such sanctions would be tantamount to a dispositive ruling on Plaintiff's retaliation and defamation claims.

### A.    Plaintiff Fails to Establish Sanctionable Conduct by Any Particular Defendant.

As a preliminary matter, Rule 37(e) sanctions are personal and the destruction of documents by one party cannot give rise to a spoliation sanction against another party. *See, e.g.*, *Grant v. Salius*, 2011 WL 5826041, at *3 (D. Conn. Nov. 18, 2011) (favorably citing caselaw for the proposition that spoliation sanctions must be assessed "independently with respect to each individual defendant" and holding "that spoliation sanctions ... were unwarranted against those individual defendants where plaintiffs could not demonstrate they actually spoliated any evidence"); *Field Day v. County of Suffolk*, 2010 WL 1286622, at *2-4 (E.D.N.Y. March 25, 2010)

(spoliation sanctions, including an adverse inference instruction, unwarranted against those individual defendants where plaintiffs could not demonstrate they actually spoliated any evidence).

Plaintiff does not identify which of the eight Defendants may have used Signal and deleted specific items of relevant evidence. Plaintiff merely asserts, in the most conclusory fashion, that "[t]here is no dispute that each of the Defendants used Signal as an ephemeral messaging platform to discuss issues related to this litigation" (Dkt. 874, p. 15) and that in August 2024 all Defendants, including Nathan, decided to "go to war" (*Id*., p. 18). There may be no dispute that some Defendants used Signal, there is certainly a dispute over whether ***all*** Defendants used Signal and whether any Defendant deleted messages evidencing the execution of a planned Digital Campaign.

In fact, there is no evidence that most Defendants used Signal prior to December 20, 2024, much less used Signal to communicate about this litigation or deleted relevant evidence. Plaintiff concedes that the pre-litigation Signal threads relating to Lively were used primarily by Nathan and Wallace and admits that it is "unclear whether Mr. Baldoni and Mr. Sarowitz were separately using Signal prior to December 20, 2024." *Id*., p. 14, n.9, p. 18. Sarowitz, however, did not believe he used Signal to communicate about the Film prior to December 20, 2024. Garofalo Decl. Ex. 41 (Sarowitz Dep. at 91:14-93:6). Baldoni also did not use Signal prior to December 20, 2024 to communicate about Lively but only used it in connection with a men's support group unrelated to Lively or this action. Dkt. 874-6 (Baldoni Dep. 10/6/25 at 54:23-55:1-3). Heath downloaded Signal in August 2024 and briefly connected with Wallace. Dkt. 874-6 (Heath Dep. 10/8/25 at 359:15-360:20). There is no evidence that Heath's handful of messages evidence or even reference the implementation of a plan to manipulate the internet to ramp up negative publicity about Lively. Abel did not use Signal prior to Lively's filing of her complaint except for communications relating to another very high-profile client unrelated to this action. Dkt. 874-2 (Abel Dep. 9/25/25 at 78:14-

470220.1

20).

In sum, Plaintiff fails to show that a particular Defendant used Signal during the pre-litigation period, much less deleted evidence that Defendants' public relations strategies, outlined in the "Scenario Planning" document, were put in motion. Yet, the blanket sanctions sought by Plaintiff would effectively strip all eight Defendants of any ability to defend against her retaliation and defamation claims. Plaintiff is not entitled to blanket sanctions against all eight Defendants without specifically identifying what evidence each Defendant allegedly possessed and deleted.

### B.    Plaintiff Fails to Show that Defendants Had a Duty to Preserve Allegedly Deleted Evidence.

To even establish that Rule 37(e) even applies, a party seeking spoliation sanctions must show that the destroying party "had an obligation to preserve [the evidence] at the time it was destroyed." *Chin*, 685 F.3d at 162 (citation and quotation omitted); *Oakley*, 792 F. Supp. 3d at 384; *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60-61 (S.D.N.Y. 2020). The duty to preserve evidence "most commonly [arises] when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (defendants did not have reasonably anticipated a claim prior to service of the summons and complaint); *Kosmidis v. Port Auth. of New York & New Jersey*, 2020 WL 5754605, at *4-9 (S.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 7022479 (S.D.N.Y. Nov. 30, 2020) (sanctions not warranted where defendants denied that they had engaged in misconduct and thus they had no reason to expect litigation); *Marshall v. Port Auth. of New York & New Jersey*, 2022 WL 17491006, at *7 (S.D.N.Y. Dec. 5, 2022) ("Defendants would not have reasonably anticipated that they would be sued prior to the date that they were served following Plaintiff

issuing his first summons and complaint"). "A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010), *abrogated on other grounds by Chin*, 685 F.3d 135. "Unlike defendants, plaintiffs may be imputed notice of the duty to preserve potentially relevant evidence prior to the filing of the complaint. Plaintiffs are 'in control of when the litigation is to be commenced' and must necessarily anticipate litigation before the complaint is filed." *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009).

Plaintiff contends that Strasberg's November 9, 2023 "demand letter" placed the Wayfarer Defendants on notice of potential litigation and that the evidence was "relevant to litigation." Dkt. 874, p. 22. Plaintiff also cites Defendants' interrogatory responses which acknowledge that "the Wayfarer Defendants recognized the possibility of litigation ***relating to the shooting of the Film*** in or around mid-August 2024." Dkt. 874, p. 13 (emphasis added) (citing Dkts. 874-49 to 874-54). In other words, the only litigation that could have been anticipated in August 2024 involved Lively's objections in Phase 1.

However, Lively's motion is based on the premise that allegedly deleted Signal threads may have been relevant to the execution of the Digital Campaign – not Lively's claims of harassment or discrimination during Phase 1 of "shooting." Plaintiff provides no support for the allegation that any party contemplated litigation over a public relations strategy or Digital Campaign when Signal messages were deleted. And naturally, Lively does not explain how any Defendant could not have reasonably foreseen litigation in November 2023 over a retaliatory 'smear campaign' that did not happen until August 2024. In fact, even the threat of litigation over

21

Lively's harassment allegations dissipated when the Wayfarer Defendants agreed to the Protections – Lively and Strasberg's express condition for avoiding litigation.

Finally, Lively identifies Nathan as the most frequent user of Signal. Nathan was retained in August 2024 as a crisis manager to handle the growing public relations crisis spurred by Lively's efforts to seize control of the Film and sideline Baldoni and Wayfarer. There is no evidence that prior to December 20, 2024, Nathan had reason to anticipate litigation involving her crisis management activities on behalf of the Wayfarer Parties.  In fact, there is no evidence whatsoever that Nathan could have reasonably foreseen even litigation relating to Lively's earlier objections. Nathan was not involved with Wayfarer in 2023 and there is no evidence that she knew of Strasberg's November 9, 2023 "demand letter" or even the nature of Lively's complaints. Plaintiff cites not a whit of evidence that the "war" was in any way linked to Lively's discrimination claims. In other words, there is no evidence that Nathan and TAG could have reasonably foreseen litigation giving rise to a duty to preserve evidence when their Signal messages were deleted.

### C.    Plaintiff Fails to Show that the Allegedly Destroyed Documents Existed.

Rule 37(e) requires a showing that evidence existed and was destroyed. *Cooper Foods International, LLC v. Yourd*, 2025 WL 2663977, at *2 (E.D.N.Y. Sept. 17, 2025); *Anderson v. Amazon.com, Inc*., 2025 WL 2780921, at *15 (S.D.N.Y. Sept. 30, 2025) (moving party failed to show that allegedly destroyed documents even existed). An assumption or speculation that allegedly deleted relevant evidence existed, is not sufficient. For instance, in *Cooper Foods International, LLC* the plaintiff failed to meet his burden under Rule 37(e) where he argued that because defendants usually communicated over WhatsApp during the relevant time period, and one of the defendants had enabled Disappearing Messages, "relevant messages must have been deleted." 2025 WL 2663977, at *2. The *Cooper* court rejected the moving party's claim that he

could not prove spoliation because plaintiff deleted the evidence, concluding that such speculation failed to show that the allegedly missing evidence ever existed to be destroyed. *Id.* ("This speculative assertion fails to establish that there were indeed any messages – much less, messages relevant to the claims in this action – sent during that time period."), *see also, Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014) (denying spoliation sanction based on "pure speculation about the existence of the [sought-after documents]"); *Adato v. Gala Tour, Inc.*, 2011 WL 4458852, at *10-11 (E.D.N.Y. Sept. 23, 2011) (denying spoliation sanctions where plaintiff failed to show documents existed); *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), *aff'd*, 961 F. Supp. 2d 572 (S.D.N.Y. 2013) ("[B]ecause plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions.").

Plaintiff glosses over this technicality, asking this Court to assume that Defendants deleted Signal chats evidencing that they executed the public/relations/crisis management strategy. Such assumptions, based solely on speculation, are insufficient to justify Rule 37(e) sanctions. Plaintiff disingenuously cites *Barbera*, 2025 WL 2098635, at *7-11, where this Court granted Rule 37(e)(1) sanctions. There, it was undisputed that plaintiff destroyed specific evidence showing when plaintiff discovered the alleged infringement at the heart of his claim. *Barbera,* 2025 WL 2098635, at *7.[4] Although it was unclear precisely what documents were lost, it was not disputed that the deletions included documents recording his discovery of the alleged infringement including his initial correspondence regarding that discovery which established not only the time of his knowledge but that he anticipated litigation at the time he deleted the documents. Plaintiff's

---

[4] Plaintiff fails to note that the Court imposed the lesser sanctions available under subsection (e)(1) only. Even though it found that the plaintiff deliberately destroyed highly relevant evidence, the Court denied the more severe sanctions available under subsection (e)(2) because the moving party failed to show that the plaintiff acted with the intent to deprive the defendant of the evidence for use in the litigation. *Barbera*, 2025 WL 2098635, at *8.

destruction of this evidence prejudiced the defendant's ability to prove a statute of limitations defense. These facts are in sharp contrast to this case, where Plaintiff fails to identify a single item of relevant evidence that was destroyed by any Defendant.

### D.    Plaintiff Fails to Show Prejudice.

A showing of prejudice is crucial to a spoliation analysis under Rule 37(e). *Oakley*, 792 F. Supp. 3d at 387. Rule 37(e) does not define prejudice, but the advisory committee note explains that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." *Id.* (quoting Fed. R Civ. P. 37(e)(1) advisory committee's note to 2015 amendment). Plaintiff contends that deleted communications may have "further shown Defendants' execution of the Digital Campaign" and thus "severe[] prejudice" is "obvious" because relevant communications were deleted, "impair[ing] her ability to fully prosecute her claims" and rebut the defense that the strategy for a proactive digital campaign was abandoned because of organic flood of negative internet activity spawned by Lively's own conduct. Dkt. 874, pp. 4, 18, 22-23.

Lively herself rebuffs the notion of prejudice on the very first page of her motion, admitting that despite Defendants' "efforts to cover their tracks, ***there is substantial evidence*** that the allegedly retaliatory Digital Campaign was implemented as planned." Dkt. 874, p. 5. Lively fails to explain why, if she already has "substantial evidence," the lack of "further evidence" prejudices her ability to prove her claim. In fact, district courts routinely exclude relevant evidence that is needlessly cumulative. Fed. R. Evid. 403; *Hamling v. United States*, 418 U.S. 87, 127 (1974) (district courts retain "considerable latitude" in rejecting cumulative evidence, even if it is relevant); *United States v. Holmes,* 44 F.3d 1150, 1157 (2d Cir.1995) ("Absent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative

evidence."); *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983) ("the exclusion of relevant, but cumulative, evidence is within the discretion of the trial court").

Rule 37(e)(1) "authorizes an award of attorneys' fees and costs to the moving party to the extent reasonably necessary to address any prejudice caused by the spoliation." *Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67-68. The purpose of this remedy is to "ameliorate[ ] the economic prejudice imposed ... and also serve[ ] as a deterrent to future spoliation." *CAT3, LLC*, 164 F. Supp. 3d at 502. As shown above, Plaintiff fails to show that Defendants, or any of them, violated Rule 37(e), much less that she was prejudiced by a deletion of relevant Signal messages. Accordingly, Plaintiff is not entitled to reasonable attorneys' fees to cure any imagined prejudice.

### E.     Plaintiff Fails to Show that Any Defendant Had a Culpable State of Mind When Signal Messages Automatically Deleted.

As noted, Baldoni and Sarowitz did not use Signal to communicate about the Film prior to the filing of her December 2024 Complaint and therefore could not have deliberately deleted Signal chats. Dkt. 874-6; Garofalo Decl. Ex. 41 (Sarowitz Dep. 91:14-93:6). Abel used Signal prior to December 20, 2024, but not to communicate about Lively. Dkt. 874-2. Nathan and Wallace routinely used Signal for the security it provides to protect sensitive crisis management communications for their high-profile clients. Dkt. 874-4; Dkt. 874, p. 19 (the "TAG and the Wallace Defendants appear to have used ephemeral messaging as a party of their regular business practice."). Plaintiff concedes that the Signal auto-delete feature was disabled after litigation commenced and Defendants have produced post-filing Signal messages. *Id*. at pp. 12-13.[5] These facts weigh heavily against the notion that in using Signal and its auto-delete, Defendants acted with culpable intent to delete relevant evidence. With respect to the Wayfarer Defendants, the

---

[5] Signal permits users to "implement settings that cause messages to automatically delete on the devices of others with whom they are communicating." *United States v. Bankman-Fried*, 2023 WL 1490417, at *1 (S.D.N.Y. Feb. 1, 2023)

Motion is silent on culpable intent, with Lively merely asking the Court to extrapolate intent from the fact that the auto-delete feature was used.  This is insufficient for Rule 37(e) sanctions.

## IV.    PLAINTIFF FAILS TO MEET HER BURDEN UNDER RULE 37(e)(2) FOR THE SEVERE SANCTIONS SHE SEEKS

Rule 37(e)(2) provides for more severe sanctions including an adverse inference and preclusion. Plaintiff seeks an adverse inference and preclusion order establishing that allegedly lost ESI was unfavorable to Plaintiff and barring Defendants from presenting any evidence to support their defense that the strategies set forth in the Scenario Planning document were never executed. Such an order would conveniently relieve Lively of the burden of having to prove her claims with admissible evidence – something discovery has shown she cannot do.

The more severe sanctions available only under Rule 37(e)(2), require a showing that the spoliating party intended to deprive the moving party of information for use in the litigation.  The intent standard for sanctions under Rule 37(e)(2), is "particularly harsh," and "stringent and specific." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig*., 341 F.R.D. at 496. The moving party must show "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025) (quoting *Karsch v. Blink Health Ltd*., 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019)) (quoting *Leidig v. Buzzfeed, Inc*., 2017 WL 6512353, at 11 (S.D.N.Y. Dec. 19, 2017)). "A party's acting negligently or knowingly will not suffice to justify [such] sanctions." *Oakley*, 792 F. Supp. 3d at 389 (citation and quotation marks omitted).

A showing of prejudice from the destruction of highly relevant or even dispositive evidence may be insufficient for Rule 37(e)(2) sanctions absent a show that the evidence was destroyed with the intent to deprive the moving party of its use in the litigation. *Oakley*, 792 F. Supp. 3d at 389; *Barbera,* 2025 WL 2098635, at *8. "An intent to deprive can be found either from a conscious act

of destruction or a 'conscious dereliction of a known duty to preserve electronic data.'" *Oakley*, 792 F. Supp. 3d at 390 (quoting *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672, at *5 (S.D.N.Y. Dec. 16, 2019)); *see also*, *Johnson v. L'Oreal USA*, 2020 WL 5530022, at *4 (S.D.N.Y. Sept. 15, 2020) (denying request for adverse inference in absence of "evidentiary basis for Plaintiff's allegations that [the defendant] acted with an intent to deprive Plaintiff of relevant ESI in this litigation"); *Karsch*, 2019 WL 2708125, at *22 ("[T]he intent contemplated by Rule 37[(e)(2)] is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." (citation and quotation marks omitted)).

The Second Circuit applies four factors to determine whether a party acted with the intent to deprive: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Charlestown Cap. Advisors.*, 337 F.R.D. at 67 (quoting *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (quotation marks and citation omitted)).

Plaintiff fails to meet any prong of the "intent to deprive" test. First, as shown in Section III(C), above, Lively fails to show that relevant evidence existed. At issue are Signal chats between the public relations/crisis management team and/or Wayfarer Defendants in the pre-litigation period, August 2024 to December 20, 2024, when Lively filed her Complaint. At best, Plaintiff proffers that at least some of the Defendants used Signal to communicate about this case. Plaintiff only speculates that the deleted chats may have included evidence that Defendants executed on a plan to manipulate internet traffic. Second, Plaintiff does not show that Defendants engaged in an

affirmative act causing the evidence to be lost. As noted, Nathan, the primary user of Signal chats, routinely used the ephemeral messaging system and there is no evidence that she deliberately set the auto delete function for communications relating to Lively. As for the other Defendants, they either did not use Signal prior to December 20, 2024 or used Signal only for communications unrelated to Lively. Plaintiff presents no evidence to the contrary.

Third, addressed in Section III(B), above, Lively fails to show that any Defendant deleted relevant Signal chats knowing of a duty to preserve the evidence. The allegedly deleted Signal chats concerned the Digital Campaign, and the public relations/crisis management strategy developed in August 2024. Plaintiff makes no effort to show that Defendants had notice of potential litigation relating to the Digital Campaign or public relations strategy. Finally, the use of auto delete can be credibly explained. At the time the crisis management strategy was developed, the internet was already ablaze with stories about the Lively-Baldoni dispute, triggered primarily by Lively's conduct in excluding Baldoni from the marketing of the Film and the premiere, Lively's "unfollowing" of Baldoni on social media and Lively's own missteps in marketing the Film. Surely even Plaintiff would admit that keeping crisis management communications confidential, and safe from hackers and aggressive media players, can "be credibly explained as not involving bad faith by the reason proffered by the spoliator."

Plaintiff points to *Barbera*, 2025 WL 2098635, which hardly advances her cause. There, the plaintiff deleted documents that would have shown when the plaintiff first discovered the infringement at issue in the lawsuit. Since the deleted documents included the plaintiff's initial correspondence informing his attorneys of that discovery, the deletion plainly arose "in the anticipation ... of litigation." *Barbera*, 2025 WL 2098635, at *7; *see also* advisory committee note to 2015 amendment ("Rule 37(e) is based on [the] common-law duty ... to preserve relevant

28

information when litigation is reasonably foreseeable."). The Court found that even though the documents were highly relevant to the defendant's statute of limitations defense, and the plaintiff acted culpably in deleting the documents, the severe sanction of an adverse inference was not warranted because the defendant failed to show that the plaintiff deleted the documents "to deprive [Defendant] of the information's use in the litigation" as required under subsection (e)(2). *Barbera*, 2025 WL 2098635, at *7-11; *Hoffer*, 128 F.4th at 438 ("Today, we make clear that the imposition of a sanction under Rule 37(e)(2) requires a finding of 'intent to deprive another party of the information's use in the litigation.'").

Other authority cited by Plaintiff also is inapposite. In *Fed. Trade Comm'n v. Noland*, 2021 WL 3857413, at *1-4 (D. Ariz. Aug. 30, 2021), the court imposed sanctions against defendants who, after they learned of a Federal Trade Commission investigation, installed an encrypted ephemeral messaging application to communicate about work-related items, turned on the auto-delete function, and ultimately deleted the application before turning over devices for forensic investigation. In *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9-10 (N.D. Cal. Apr. 24, 2020) (imposing sanctions where the ephemeral messaging tool DingTalk was implemented for intra-company communications following the issuance of a preliminary injunction mid-litigation). And, in *Herzig v. Ark. Found. for Med. Care, Inc.*, 2019 WL 2870106, at *4-5 (W.D. Ark. July 3, 2019), the court-imposed sanctions where defendants' switch to Signal mid-litigation and configured it to delete text messages was "intentional and done in bad faith."

These out of district cases involved circumstances in which the spoliation occurred during litigation or an active investigation, with the clear intent to evade discovery by destroying communications. In *Oakley*, 2025 WL 2061665, at *8-9, the court found an intent to deprive the plaintiff of text messages where the defendant admitted knowledge of an obligation to preserve his

text messages and still allowed text messages to be destroyed when he upgraded his phone. This is a far cry from the facts before this court where litigation had not commenced, it is unclear what relevant evidence, if any, may have been deleted and by whom and whether any Defendant anticipated litigation over a planned public relations campaign during the time Signal was set to auto delete.

## V.     **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an order denying Lively's motion for Rule 37(e) sanctions in its entirety.

470220.1

Dated: November 20, 2025
      Los Angeles, CA

**LINER FREEDMAN TAITELMAN
+ COOLEY**

By:_____*/s/ Ellyn S. Garofalo*_____
Bryan J. Freedman (*pro hac vice*)
Ellyn S. Garofalo (*pro hac vice*)
Kim S. Zeldin (*pro hac vice*)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
      egarofalo@lftcllp.com
      kzeldin@lftcllp.com

**MEISTER SEELIG & FEIN PLLC**
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
      kaf@msf-law.com

**AHOURAIAN LAW**
Mitra Ahouraian (*pro hac vice*)
2029 Century Park East, 4th Floor
Los Angeles, CA 90067
Tel. (310) 376-7878
Email: mitra@ahouraianlaw.com

**SHAPIRO ARATO BACH LLP**
Alexandra A. E. Shapiro
Jonathan Bach
Alice Buttrick
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: 212-257-4881
Email: ashapiro@shapiroarato.com
      jbach@shapiroarato.com
      abuttrick@shapiroarato.com

470220.1