# EXHIBIT 4

CONFIDENTIAL

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                    ---oOo---
 4
 5    BLAKE LIVELY,
 6                   Plaintiff,
 7       vs.          CASE NO. 24-CV-10049-LJL (LEAD CASE)
                              25-CV-449 (LJL) (MEMBER CASE)
 8
 9    WAYFARER STUDIOS LLC, ET AL.
10                   Defendants.
      _____
11    JENNIFER ABEL,
               Third-party Plaintiff,
12       vs.
      JONESWORKS, LLC,
               Third-party Defendant.
13    _____
14    WAYFARER STUDIOS LLC, et al.
               Consolidated Plaintiffs,
15       vs.
      BLAKE LIVELY, et al.
               Consolidated Defendants.
16    _____
17                  **CONFIDENTIAL**
18
19     VIDEO-RECORDED DEPOSITION OF ANDREA GIANNETTI
20               Culver City, California
21             Tuesday, September 23, 2025
22
23    Stenographically Reported by:  Ashley Soevyn,
      CALIFORNIA CSR No. 12019
24
25
```

CONFIDENTIAL

Page 109

1          (Exhibit 12 marked for identification.)

2               THE WITNESS:  Thank you.

3   BY MS. HUDSON:

4          Q     Exhibit 12 is a text chain between

5   Ms. Lively and Ms. Giannetti dated May 25th

6   through May 26th, 2023, BL7953.

7               Ms. Giannetti, do you recognize this text

8   chain?

9          A     Yes.

10         Q     And you recognize this as a text chain

11  between you and Ms. Lively?

12         A     Correct.

13         Q     In the second entry here from Ms. Lively

14  at the end of the sentence, she says:

15              (As read):

16                  "But let's attach up in general"?

17         A     Uh-huh.

18         Q     And then you say:

19              (As read):

20                  "I can make any time tomorrow work."

21              Do you see that?

22         A     I do.

23         Q     And it looks like you play a little phone

24  tag with her for a document; is that right?

25         A     It looks like it.

CONFIDENTIAL

Page 110

```
 1        Q     And then at the end, you say:
 2              (As read):
 3                   "I will say what I did want to
 4                   review/discuss feels very, very small
 5                   in light of today's news.  I'm so
 6                   sorry.  Calling you in moments."
 7              Do you see that?
 8        A     I do.
 9        Q     Did you call Ms. Lively on this day?
10        A     I can't recall but most likely.
11        Q     And the day is May 26th, right?
12   Correct?
13        A     I see -- I see that on the -- I see that
14   on the -- on the printout, yeah.
15        Q     And do you recall what it was that you
16   wanted to review and discuss with Ms. Lively?
17        A     I think it was wardrobe.
18        Q     And you say that:
19              (As read):
20                   "In light of today's news, that seems
21                   very, very small."
22              Right?
23        A     That's what I wrote, yes.
24        Q     What was "today's news"; do you recall?
25        A     I believe it was that she had been
```

CONFIDENTIAL

Page 111

1  exposed to COVID and was worried that the baby might

2  have COVID.

3       Q    And how did you learn that?

4       A    I don't remember where I learned it

5  first.

6       Q    Did you talk with Ms. -- did Ms. Lively

7  tell you that herself?

8       A    Yes.  We definitely talked about it.

9       Q    Did you talk about it before this call?

10      A    I don't remember.

11      Q    And you said you think you probably did

12  have a call with her on May 26th, then?

13      A    If I said "I'm calling you in moments," I

14  would have called her in moments.

15      Q    Sitting here today, do you have a

16  recollection of that phone call?

17      A    Exactly, no.

18      Q    Do you have a general recollection of it?

19      A    I have a general recollection.

20      Q    And generally, what do you recall?

21      A    I remember -- I mostly remember her being

22  very concerned about the COVID.  And if I'm correct,

23  I -- I don't know if it was before or after.  I'm

24  not great with the timing.  But I recall that she

25  had been in the hospital, and the baby had been in

CONFIDENTIAL

Page 112

1   the hospital with RSV.  And so this -- you know,
2   this -- that potentially the baby would have COVID.
3   As a mother, that was concern- -- you know, very
4   concerning.
5           Q    The phone call, do you recall whether it
6   was just you and Ms. Lively on that phone call?
7           A    I think it was just the two of us on the
8   phone call.
9           Q    Do you recall how long it lasted?
10          A    No.
11          Q    Do you recall anything else about the
12  phone call, other than what you described?
13          A    Specifically, on this call, I can't -- I
14  know there were many things we were talking about at
15  this time, but I couldn't say for sure exactly.
16  Yeah, I don't -- you know.
17          Q    And where were you on May 26th?  Were
18  you in Los Angeles?
19          A    Yeah, I was in Los Angeles.
20          Q    And was it your understanding that
21  Ms. Lively was in New York, New Jersey?
22          A    New York.  I mean if it was at night, she
23  was probably in New York.  Or maybe she was on set
24  if it was a night shoot -- I mean in New Jersey, if
25  it was a night shoot.

CONFIDENTIAL

Page 299

1    BY MR. FREEDMAN:

2        Q    Well, her role in the movie continued to

3    grow, correct?

4            MS. HUDSON:  Objection.

5            THE WITNESS:  In the -- I -- I didn't

6    notice any change.

7    BY MR. FREEDMAN:

8        Q    What about editing?

9        A    Well, that's post.  You're still talking

10   about production.  If we're moving to post, it's a

11   whole different ball game.

12       Q    Why do you say "it's a whole different

13   ball game" in post?

14       A    Because it's a whole different ball game.

15       Q    Can you explain to me what you mean by

16   that?

17       A    I'm saying I did not notice a -- any

18   distinct change from Blake on the set before strike,

19   after strike, other than she was happier and we did

20   good work.  So that felt more consistent.

21           Post was very not consistent.

22       Q    Did you understand that a formal HR

23   process had not yet occurred, as stated in the

24   letter with the 17-point list?

25           MS. HUDSON:  Objection.

CONFIDENTIAL

Page 300

1          THE WITNESS:  I didn't know about any

2    HR -- I never heard about any HR complaints.

3    BY MR. FREEDMAN:

4          Q    So that's a yes?

5          A    That's a yes.

6          Q    Had Blake Lively made an HR complaint to

7    Sony?

8          MS. HUDSON:  Objection.

9          THE WITNESS:  Not that I know of.

10   BY MR. FREEDMAN:

11         Q    Do you have any reason to believe that

12   Blake Lively had filed an HR complaint with

13   Wayfarer?

14         MS. HUDSON:  Objection.

15         THE WITNESS:  No.

16   BY MR. FREEDMAN:

17         Q    When it says that "The complaints of our

18   client and others have been repeatedly conveyed and

19   well documented throughout preproduction and

20   photography," what did you understand that to mean?

21         MS. HUDSON:  Objection.

22         THE WITNESS:  That -- that she was very

23   vocal about things that she didn't like.

24   BY MR. FREEDMAN:

25         Q    I'm -- I'm referring right now to

CONFIDENTIAL

Page 353

1          REPORTER'S CERTIFICATE

2               I, ASHLEY SOEVYN, a Certified Shorthand

3     Reporter of the State of California, do hereby

4     certify:

5               That the foregoing proceedings were taken

6     before me at the time and place herein set forth;

7     at which time the witness was put under oath by me;

8               That the testimony of the witness, the

9     questions propounded, and all objections and

10    statements made at the time of the examination were

11    recorded stenographically by me and were thereafter

12    transcribed;

13              That a review of the transcript by the

14    deponent was/ was not requested;

15              That the foregoing is a true and correct

16    transcript of my shorthand notes so taken.

17              I further certify that I am not a relative

18    or employee of any attorney of the parties, nor

19    financially interested in the action.

20              I declare under penalty of perjury under

21    the laws of California that the foregoing is true

22    and correct.  Dated this 25th day of September,

23    2025.

24

      ASHLEY SOEVYN

25    CSR No. 12019