# EXHIBIT 6

CONFIDENTIAL

Page 1

```
                UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF NEW YORK
                          ---oOo---

   BLAKE LIVELY,
                    Plaintiff,
         vs.         CASE NO. 24-CV-10049-LJL (LEAD CASE)
                                25-CV-449 (LJL) (MEMBER CASE)

   WAYFARER STUDIOS LLC, ET AL.

                    Defendants.
   _____
   JENNIFER ABEL,
               Third-party Plaintiff,
        vs.
   JONESWORKS, LLC,
               Third-party Defendant.
   _____
   WAYFARER STUDIOS LLC, et al.
               Consolidated Plaintiffs,
        vs.
   BLAKE LIVELY, et al.
               Consolidated Defendants.
   _____
                        **CONFIDENTIAL**

      VIDEO-RECORDED DEPOSITION OF ANDREA GIANNETTI
                   Culver City, California
                Tuesday, September 23, 2025

   Stenographically Reported by:  Ashley Soevyn,
   CALIFORNIA CSR No. 12019
```

CONFIDENTIAL

Page 295

1  Q   Was Ryan Reynolds her manager?
2  A   No.
3  Q   He was her husband, correct?
4  A   Correct.
5  Q   Part of what Blake was complaining about
6  in these protections was what she thought was sexist
7  behavior, correct?
8  A   I don't know.
9  Q   She asked her husband to talk to her
10 studio on a movie in his capacity as her husband,
11 correct?
12      MS. HUDSON:  Objection.
13      THE WITNESS:  I don't know.
14 BY MR. FREEDMAN:
15 Q   Todd Black was hired as the A-list
16 producer, correct?
17 A   Correct.
18 Q   Did Wayfarer agree to the 17-point list?
19      MS. HUDSON:  Objection.
20      THE WITNESS:  I don't know the wording,
21 but yes, we -- we agreed to the protections so she
22 would return to work.
23 BY MR. FREEDMAN:
24 Q   Did you talk with anyone about why --
25 anyone at Wayfarer about why they agreed to the

CONFIDENTIAL

Page 296

```
 1   17-point list?
 2        A    No.  I knew why.
 3        Q    Why?
 4             MS. HUDSON:  Objection.
 5             THE WITNESS:  Because there was a
 6   tremendous amount of money that had been invested
 7   and spent, and we had to finish the movie or it was
 8   unreleasable.
 9   BY MR. FREEDMAN:
10        Q    Did Blake Lively threaten to leave the
11   movie if the 17-point list wasn't signed without
12   alteration or revision?
13             MS. HUDSON:  Objection.
14             THE WITNESS:  That's my understanding.
15   BY MR. FREEDMAN:
16        Q    Do you recall telling Jamey Heath that
17   you thought Blake was a fucking terrorist?
18             MS. HUDSON:  Objection.
19             THE WITNESS:  Yes.
20   BY MR. FREEDMAN:
21        Q    At that point in time, how much money had
22   Sony invested in the movie?
23        A    Well, I believe the ingoing budget was 28
24   and change, 28 million and change.  We had
25   three weeks left -- I -- I -- I'm -- at least
```

CONFIDENTIAL

Page 300

1     THE WITNESS: I didn't know about any
2  HR -- I never heard about any HR complaints.
3  BY MR. FREEDMAN:
4     Q   So that's a yes?
5     A   That's a yes.
6     Q   Had Blake Lively made an HR complaint to
7  Sony?
8     MS. HUDSON: Objection.
9     THE WITNESS: Not that I know of.
10 BY MR. FREEDMAN:
11    Q   Do you have any reason to believe that
12 Blake Lively had filed an HR complaint with
13 Wayfarer?
14    MS. HUDSON: Objection.
15    THE WITNESS: No.
16 BY MR. FREEDMAN:
17    Q   When it says that "The complaints of our
18 client and others have been repeatedly conveyed and
19 well documented throughout preproduction and
20 photography," what did you understand that to mean?
21    MS. HUDSON: Objection.
22    THE WITNESS: That -- that she was very
23 vocal about things that she didn't like.
24 BY MR. FREEDMAN:
25    Q   I'm -- I'm referring right now to

CONFIDENTIAL

Page 301

1  Exhibit 19.
2       A    Okay.  So what's the question?
3       Q    I direct your attention to 30 -- what's
4  marked 3514 on the bottom.
5       A    3514.  Hold on.
6            Uh-huh.
7       Q    And it states in the first paragraph, the
8  last line:
9            (As read):
10               "The complaints of our client and
11               others have been repeatedly conveyed
12               and well documented throughout
13               preproduction and photography."
14           Did -- did you know that to be true?
15      A    No.
16      Q    Had you seen any documentation of the
17  complaints referred hereto by Ms. Lively?
18           MS. HUDSON:  Objection.
19           THE WITNESS:  No.
20  BY MR. FREEDMAN:
21      Q    Had you seen any of the -- any complaints
22  in writing of anyone else on the set --
23           MS. HUDSON:  Objection.
24  BY MR. FREEDMAN:
25      Q    -- as of that date?

CONFIDENTIAL

Page 302

1           THE WITNESS:  No.
2    BY MR. FREEDMAN:
3        Q    Do you know what complaints Lindsey --
4    Lindsey Strasberg was referring to here?
5           MS. HUDSON:  Objection.
6           THE WITNESS:  No.
7    BY MR. FREEDMAN:
8        Q    Was this email and its attachment
9    discussed internally at Sony?
10       A    Yes.
11       Q    Amongst who?
12       A    Myself, Michael Marshall,
13   Sanford Panitch.  I was not in rooms with
14   Tom Rothman when it was discussed, but I'm sure they
15   briefed him.
16       Q    Okay.  What was the conclusion reached at
17   Sony regarding this document?
18          MS. HUDSON:  Objection.
19          THE WITNESS:  Give her the protections.
20   BY MR. FREEDMAN:
21       Q    At some point, did you say, in talking to
22   Wayfarer, Jamey, and Justin, something like,
23   "Listen, we're going to get through this movie.
24   We're going to give her what she wants.  We're going
25   to make this film.  We're going to get it done

```
 1   because the only thing that matters is making this
 2   film"?
 3                MS. HUDSON:  Objection.
 4                THE WITNESS:  Often.
 5   BY MR. FREEDMAN:
 6        Q    Often?
 7        A    Often.
 8        Q    At some point, did you discuss -- discuss
 9   with Jamey and Justin that Blake Lively's biggest
10   fear is that she will go onto set and not be liked?
11                MS. HUDSON:  Objection.
12                THE WITNESS:  I -- I don't recall that.
13   BY MR. FREEDMAN:
14        Q    Did anyone at Sony discuss this document
15   with Ms. Lively?
16                MS. HUDSON:  Objection.
17                THE WITNESS:  Not that I know of.
18   BY MR. FREEDMAN:
19        Q    Did anyone at Sony discuss this document
20   with Lindsey Strasberg?
21                MS. HUDSON:  Objection.
22                THE WITNESS:  Not that I know of.
23   BY MR. FREEDMAN:
24        Q    Did anyone at Sony discuss this document
25   with David Weber?
```

1        REPORTER'S CERTIFICATE
2              I, ASHLEY SOEVYN, a Certified Shorthand
3     Reporter of the State of California, do hereby
4     certify:
5              That the foregoing proceedings were taken
6     before me at the time and place herein set forth;
7     at which time the witness was put under oath by me;
8              That the testimony of the witness, the
9     questions propounded, and all objections and
10    statements made at the time of the examination were
11    recorded stenographically by me and were thereafter
12    transcribed;
13             That a review of the transcript by the
14    deponent was/ was not requested;
15             That the foregoing is a true and correct
16    transcript of my shorthand notes so taken.
17             I further certify that I am not a relative
18    or employee of any attorney of the parties, nor
19    financially interested in the action.
20             I declare under penalty of perjury under
21    the laws of California that the foregoing is true
22    and correct.  Dated this 25th day of September,
23    2025.

                         *[signature]*

                         ASHLEY SOEVYN
25                       CSR No. 12019