# EXHIBIT 43

Page 1

```
 1
 2   ** C O N F I D E N T I A L **
 3   * CONTAINS ATTORNEYS' EYES ONLY MATERIAL *
 4   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 5   Case No. 1:24-CV-10049-LJL
     (Consolidated with 1:25-cv-00449-LJL)
 6   ----------------------------------x
     BLAKE LIVELY,
 7            Plaintiff,
 8        - against -
 9   WAYFARER STUDIOS LLC, a Delaware
     Limited Liability Company, JUSTIN
10   BALDONI, an individual, JAMEY HEATH, an
     individual, STEVE SAROWITZ, an individual,
11   IT ENDS WITH US MOVIE LLC, a California
     Limited Liability Company, MELISSA
12   NATHAN, an individual, THE AGENCY
     GROUP PR LLC, a Delaware Limited Liability
13   Company, JENNIFER ABEL, an individual,
     JED WALLACE, an individual, and STREET
14   RELATIONS INC., a California Corporation,
              Defendants.
15   ----------------------------------x
                (Caption continued)
16              September 5, 2025
                9:10 a.m.
17
18        Videotaped Deposition of KATHERINE
19   CASE, taken by Plaintiff, pursuant to
20   Subpoena, held at the offices of Willkie
21   Farr & Gallagher LLP, 787 Seventh Avenue,
22   New York, New York, before Todd DeSimone, a
23   Registered Professional Reporter and Notary
24   Public of the State of New York.
25
```

Page 74

1        K. CASE - CONFIDENTIAL
2      A.    I had never been on a call with
3  a psychic before.
4      Q.    Was it unusual to you?
5      A.    In my workday, it was unusual
6  comparatively to most client calls.
7      Q.    It was unusual to you, correct?
8      A.    In the scope of most client
9  calls, yes.
10     Q.    What about just generally, was
11 it unusual?
12     A.    I don't --
13     Q.    What was the psychic's name?
14     A.    I don't remember.
15     Q.    Was it a male?
16     A.    It was.
17     Q.    How would individuals at TAG
18 communicate with each other when working on
19 this account?
20     A.    Primarily text.
21     Q.    iMessage?
22     A.    Yes.
23     Q.    Signal?
24     A.    Not really, no.
25     Q.    Sometimes?

Page 75

```
 1              K. CASE - CONFIDENTIAL
 2        A.      At times.
 3        Q.      When would TAG individuals use
 4   Signal in lieu of iMessage?
 5        A.      If we would -- if we would
 6   speak with Jed, it was primarily over
 7   Signal.
 8        Q.      And why was that?
 9        A.      I'm not sure.
10        Q.      Was that at Jed's request?
11        A.      No.
12        Q.      Who suggested that you use
13   Signal?
14        A.      It was just the form of
15   communication that was used.
16        Q.      Do you recall the first time
17   you communicated with Jed on Signal?
18        A.      Not by date specifically, no.
19        Q.      Did he text you on Signal?
20        A.      Not individually, but as it
21   related to communications.
22        Q.      Did you have a Signal account
23   prior to working at TAG?
24        A.      I believe so, yes.
25        Q.      And did you communicate on it
```

```
 1
 2                CERTIFICATION
 3
 4     I,  TODD DeSIMONE, a Notary Public for
 5   and within the State of New York, do hereby
 6   certify:
 7     That the witness whose testimony as
 8   herein set forth, was duly sworn by me; and
 9   that the within transcript is a true record
10   of the testimony given by said witness.
11     I further certify that I am not related
12   to any of the parties to this action by
13   blood or marriage, and that I am in no way
14   interested in the outcome of this matter.
15     IN WITNESS WHEREOF, I have hereunto set
16   my hand this 6th day of September, 2025.
17
18            Todd DeSimone
19            TODD DESIMONE
20
21
22
23
24
25
```