# EXHIBIT A

CONFIDENTIAL

```
                                           Page 1

 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                     ---oOo---
 4
 5   BLAKE LIVELY,
 6                   Plaintiff,
 7      vs.          CASE NO. 24-CV-10049-LJL (LEAD CASE)
                              25-CV-449 (LJL) (MEMBER CASE)
 8
     WAYFARER STUDIOS LLC, ET AL.,
 9
                     Defendants.
10   _____
     JENNIFER ABEL,
11              Third-party Plaintiff,
        vs.
12   JONESWORKS, LLC,
                Third-party Defendant.
13   _____
     WAYFARER STUDIOS LLC, et al.,
14              Consolidated Plaintiffs,
        vs.
15   BLAKE LIVELY, et al.,
                Consolidated Defendants.
16   _____
17                   **CONFIDENTIAL**
18
19      VIDEO-RECORDED DEPOSITION OF STEVE SAROWITZ
20                Los Angeles, California
21                Friday, October 3, 2025
22
23   Stenographically Reported by:  Ashley Soevyn,
24   CALIFORNIA CSR No. 12019
25
```

CONFIDENTIAL

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3                     ---oOo---
 4
 5   BLAKE LIVELY,
 6                   Plaintiff,
 7     vs.         CASE NO. 24-CV-10049-LJL (LEAD CASE)
                             25-CV-449 (LJL) (MEMBER CASE)
 8
     WAYFARER STUDIOS LLC, ET AL.,
 9
                     Defendants.
10   _____
     JENNIFER ABEL,
11             Third-party Plaintiff,
       vs.
12   JONESWORKS, LLC,
               Third-party Defendant.
13   _____
     WAYFARER STUDIOS LLC, et al.,
14             Consolidated Plaintiffs,
       vs.
15   BLAKE LIVELY, et al.,
               Consolidated Defendants.
16   _____
17                 **CONFIDENTIAL**
18         Video-recorded Deposition of
19   STEVE SAROWITZ, taken on behalf of the Plaintiff
20   Blake Lively, Pursuant to Notice, at the offices of
21   Willkie Farr & Gallagher, 2029 Century Park East,
22   Los Angeles, California beginning at 9:28 a.m.  and
23   ending at 7:16 p.m. on Friday, October 3, 2025,
24   before me, ASHLEY SOEVYN, California Certified
25   Shorthand Reporter No. 12019.
```

CONFIDENTIAL

Page 3

1  A P P E A R A N C E S :

2

3  For the Plaintiffs Stephanie Jones and Jonesworks

4  LLC:

5          QUINN EMANUEL URQUHART & SULLIVAN

6          BY:  KRISTIN TAHLER

7          Attorney at Law

8          865 S. Figueroa Street

9          8th Floor

10          Los Angeles, California 90017

11          kristintahler@quinnemanuel.com

12          (212) 849-7000

13  -AND-

14          QUINN EMANUEL URQUHART & SULLIVAN

15          BY:  MAAREN A. SHAH (Not present)

16          BY:  MORGAN ANASTASIO (Not present)

17          Attorneys at Law

18          51 Madison Avenue

19          22nd Floor

20          New York, New York 10010

21          maarenshah@quinnemanuel.com

22          manastasio@quinnemanuel.com

23          (212) 849-7000

24

25

CONFIDENTIAL

**Page 4**

```
 1    A P P E A R A N C E S:

 2

 3    For the Plaintiff Blake Lively:

 4              MANATT PHELPS & PHILLIPS LLP

 5              BY:  STEPHANIE ROESER (VIA ZOOM)

 6              BY:  ESRA HUDSON (VIA ZOOM)

 7              Attorneys at Law

 8              2049 Century Park East

 9              Suite 1700

10              Los Angeles, California 90067

11              sroeser@manatt.com

12              ehudson@manatt.com

13              (310) 312-4207

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL

Page 5

```
1   A P P E A R A N C E S:

2

3   For the Plaintiff Blake Lively:

4              WILLKIE FARR & GALLAGHER

5              BY:  MICHAEL GOTTLIEB

6              Attorney at Law

7              2029 Century Park East

8              Los Angeles, California 90067

9              mgottlieb@willkie.com

10             (310) 855-3000

11   -AND-

12             WILLKIE FARR & GALLAGHER

13             BY:  MELISSA TAUSTINE

14             BY:  KRISTIN BENDER (VIA ZOOM)

15             Attorneys at Law

16             1875 K Street

17             Northwest

18             Washington, D.C. 20006

19             mtaustine@willkie.com

20             kbender@willkie.com

21             (202) 303-1245

22

23

24

25
```

CONFIDENTIAL

```
                                              Page 6

 1    A P P E A R A N C E S:

 2

 3    For the Plaintiff Blake Lively:

 4              WILLKIE FARR & GALLAGHER

 5              BY:  AARON E. NATHAN (VIA ZOOM)

 6              BY:  MICHAELA CONNOLLY (VIA ZOOM)

 7              Attorneys at Law

 8              787 Seventh Avenue

 9              New York, New York 10019

10              anathan@willkie.com

11              mconnolly@willkie.com

12              (212) 728-8000

13    -AND-

14              SLOANE OFFER WEBER AND DERN

15              BY:  LINDSEY STRASBERG (VIA ZOOM)

16              Attorney at Law

17              10100 Santa Monica Blvd., Ste. 750

18              Los Angeles, California 90067

19              (310) 248-5100

20

21

22

23

24

25
```

CONFIDENTIAL

Page 7

```
 1    A P P E A R A N C E S:

 2    For the Defendants Wayfarer Studios LLC, Jennifer

 3    Abel, Melissa Nathan and Justin Baldoni, Jamey Heath

 4    and Steve Sarowitz:

 5              LINER FREEDMAN TAITELMAN+COOLEY

 6              BY:  BRYAN FREEDMAN

 7              BY:  ELLYN GAROFALO

 8              BY:  SUMMER BENSON (VIA ZOOM)

 9              BY:  KYLE FINKEL (NOT PRESENT)

10              BY:  JASON SUNSHINE (VIA ZOOM)

11              Attorneys at Law

12              1801 Century Park West, 5th Floor

13              Los Angeles, California 90067

14              bfreedman@lftcllp.com

15              egarofalo@lftcllp.com

16              sbenson@lftcllp.com

17              kfinkel@ftcllp.com

18              jsunshine@lfcllp.com

19              (310) 201-0005

20

21

22

23

24

25
```

CONFIDENTIAL

Page 8

1   A P P E A R A N C E S:

2   For the Defendants Wayfarer Studios LLC, Jennifer

3   Abel, Melissa Nathan and Justin Baldoni, Jamey Heath

4   and Steve Sarowitz:

5               AHOURAIAN LAW

6               BY: MITRA AHOURAIAN

7               Attorney at Law

8               2029 Century Park East

9               Suite 400

10              Los Angeles, California 90067

11              mitra@ahouraianlaw.com

12              (310) 376-7878

13  -AND-

14              MEISTER SEELIG & FEIN

15              BY: KEVIN FRITZ (VIA ZOOM)

16              125 Park Avenue, 7th Floor

17              New York, New York 10017

18              kaf@msf-law.com

19              (212) 655-3570

20

21

22

23

24

25

CONFIDENTIAL

Page 9

```
 1   A P P E A R A N C E S:

 2   For the Defendants Jed Wallace and Street Relations,

 3   Inc.:

 4             JACKSON WALKER LLP

 5             BY:  JOEL R. GLOVER

 6             BY:  TORI EMERY (NOT PRESENT)

 7             Attorney at Law

 8             1401 McKinney Street

 9             Suite 1900

10             Houston, Texas 77010

11             jglover@jw.com

12             temery@jw.com

13             (713) 752-4226

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL

Page 165

1    amended complaint, you raised legal claims against

2    my client on behalf of yourself?

3                MS. GAROFALO:  I'm going to caution you

4    that Mr. Gottlieb is not asking you about anything

5    you learned from your lawyers.  So you're going to

6    respond based on your knowledge independent of what

7    you may have learned from lawyers.

8                THE WITNESS:  Not based on personal

9    knowledge.

10   BY MR. GOTTLIEB:

11        Q    Did you read the complaints that you

12   filed against my clients?

13        A    Not in detail.

14        Q    Did you review any part of the complaints

15   that you filed against my clients?

16        A    I don't recall.

17        Q    So you do not know one way or the other

18   then whether the factual allegations contained in

19   your complaint, your federal complaint, against

20   Ms. Lively and Mr. Reynolds are accurate?

21        A    To the best of my knowledge, the

22   allegations in the complaint are accurate.

23        Q    But if I'm understanding your testimony

24   correct, you didn't read the entire document; is

25   that right?

CONFIDENTIAL

Page 166

1          A     Correct.

2          Q     And so your testimony that to the best of

3    your knowledge it's accurate, would be based on

4    things I can't ask you about, right?

5          A     Correct.

6          Q     Okay.  So that would be discussions

7    you've had with your attorneys, which we're not

8    going to wade into; is that a fair understanding?

9          A     Yes.

10          Q     Okay.

11                Do you know that in the complaint you

12    filed, and I'm not asking you about conversations

13    you had with your attorney, but in the complaint you

14    actually filed on the public docket, that you sued

15    Ms. Lively and Mr. Reynolds for something called

16    civil extortion?

17          A     Did I sue them personally or did Wayfarer

18    sue them?

19          Q     Do you know whether you sued them,

20    Mr. Reynolds and Ms. Lively, in your personal

21    capacity in the name of Steve Sarowitz, for civil

22    extortion?

23          A     I believe that would have been Wayfarer

24    that would have sued them, not me personally.

25          Q     So you don't believe that you -- you

1    don't believe that you did sue my clients for civil

2    extortion?

3         A    I don't recall.

4         Q    Are you aware of whether you sought

5    punitive damages from my clients for civil

6    extortion?

7         A    I don't recall.

8         Q    Do you have any personal knowledge of

9    anything Mr. Reynolds has ever done to extort you?

10        A    Me personally or Wayfarer?

11        Q    You personally, not Wayfarer,

12   Steve Sarowitz.

13        A    Not that I recall.

14        Q    What about Ms. Lively?

15             Do you have any personal knowledge of

16   anything Ms. Lively has ever done to extort you,

17   Steve Sarowitz, not Wayfarer Studios, but you,

18   Steve Sarowitz?

19        A    Not that I recall.

20        Q    Do you have any knowledge of any public

21   statement Mr. Reynolds has ever made that has

22   mentioned your name?

23        A    Not that I recall.

24        Q    So I gather then that you are unaware of

25   any circumstance in which Mr. Reynolds has ever

CONFIDENTIAL

1    defamed you?

2            MS. GAROFALO:  Objection.

3            THE WITNESS:  Privately or publicly?

4    BY MR. GOTTLIEB:

5        Q    Are you aware of, as you sit here today,

6    of any way in which Ryan Reynolds has defamed you

7    personally, Steve Sarowitz?  Again, not Wayfarer

8    Studios or your other co-plaintiffs?

9        A    No.

10       Q    How about Ms. Lively?  Are you aware of

11   any occasion where Ms. Lively has defamed you

12   personally, as in Steve Sarowitz?

13       A    Yes.

14       Q    And what is that?

15       A    And I don't -- I'm just asking this.  I'm

16   not trying to cause any issues, but can I talk about

17   her deposition?  Is that -- or is that something I

18   should not address in this and -- as part of my

19   answer?

20       Q    If you believe that that -- so my

21   question is, if you're aware of when Ms. Lively has

22   defamed you?

23       A    Yes.

24       Q    So let me modify it to be, are you aware

25   of any public statement that Ms. Lively has ever

CONFIDENTIAL

Page 169

1    made about you that you believe to be defamatory?

2         A    Again, sorry.  I'm just trying to get

3    clarification.  I'm not trying to be difficult.

4    During the course of the complaint or as part of the

5    complaint, would that be considered -- since that

6    was public in The New York Times and Ms. Lively was

7    the source of that statement, would that -- would

8    that count?

9         Q    That's for -- that's for you to tell me.

10        A    Would that --

11             MS. GAROFALO:  Why don't you answer the

12    question with what you believe she publicly said

13    through The New York Times.

14             THE WITNESS:  Okay.  Through The New York

15    Times in the course of the complaint, it was said

16    that I was on set for a scene where she was scantily

17    clad and that I was a non-essential person.  While I

18    might have technically been non-essential, I did

19    invest $30 million and paid for her salary, or at

20    least my share of it, as well as the other actors,

21    and I consider that to be essential.  Ms. Lively

22    considers that not to be essential, she can send me

23    a check.  I can give her an address or you could

24    give it to her.  But beyond that, I was not on set

25    for that scene.  And although I don't have direct

CONFIDENTIAL

Page 170

1  knowledge of this since I was not on set for that

2  scene, I was told she was not scantily clad.  She

3  repeated that in her deposition.

4         Also in her deposition, she repeated --

5  she took a piece of what I was quoted from, in a

6  recording where I was recorded without my knowledge,

7  and definitely against my will, there was a small

8  piece, and she took a small piece out of context and

9  said that I threatened to kill her and Ryan, which I

10  did not.  I never have.  The full recording, which

11  you have kept sealed, which I would like to keep

12  open so people can hear it, that -- she said

13  incorrectly, which went against her own amended

14  complaint, that I threatened to kill them.  That's

15  what she said in her deposition.  I consider that

16  defamation since it's patently false.  I have never

17  made a threat against her and Ryan.  And for her to

18  say that publicly, especially a serious threat, and

19  especially in light of the threats that have been

20  made against myself and my family, I find that to be

21  extremely defamatory.

22         The other thing she said that I believe

23  to be defamatory, is that -- and, again, I'm just

24  saying that I'm not 100 percent sure of the exact

25  details.  You could look this up for yourself, and I

CONFIDENTIAL

Page 171

1    might not be 100 percent right, is that I wanted to

2    ruin her and Ryan.  It has never been my intention

3    to ruin anybody.  It has always been my intention to

4    protect my company with truth and in a just way, but

5    never to ruin anybody else.

6    BY MR. GOTTLIEB:

7         Q    Okay.  There's a lot packed in there.  So

8    I'm going to sideline the statements made during the

9    deposition because, of course, the deposition

10   occurred after you filed your amended complaint; is

11   that correct?

12        A    Yes.

13        Q    Okay.  So I'm interested in when you

14   filed your amended complaint, you sued Ms. Lively

15   for defamation.  I think I understand your testimony

16   to be that the basis for that was what was contained

17   in her CRD complaint and what was printed in The New

18   York times; is that correct?

19             MS. GAROFALO:  Objection.

20             THE WITNESS:  I would have to -- I would

21   have to get more details.  Are you -- so if you

22   could give me a little bit more specifically.  Are

23   you talking specifically how she defamed me

24   personally?

25

CONFIDENTIAL

Page 172

1    BY MR. GOTTLIEB:

2        Q    That's all I'm interested in, is how your

3    understanding of how you, Steve Sarowitz, were

4    personally defamed.  And what she testified to in

5    her deposition, we're going to bracket that.

6        A    Okay.

7        Q    I think I understood you to say, you

8    believe that there were things in the CRD complaint

9    and The New York Times article that you found to be

10   defamatory about you?

11       A    Yes.

12       Q    Okay.  And the example that you gave of

13   that, I believe, was an allegation about a time when

14   it was alleged that you were on set for a scene

15   where Ms. Lively was acting out the scene of giving

16   birth; is that right?

17       A    Yes.  I want to add one other thing to

18   what I said.

19       Q    Okay.

20       A    It was insinuated that I went on set for

21   particularly that scene.  I didn't know what scenes

22   were being filmed.  Again, I wasn't on set for that

23   scene, but I did not -- it was insinuated that I

24   went on set for that particular scene.  Of course,

25   like I said, I wasn't on set for that particular

CONFIDENTIAL

Page 173

1    scene, and I also made no conscious decision to see

2    Ms. Lively in any particular thing because it wasn't

3    important to me.

4          Q    Were you on set that day, the day that

5    that scene was shot?

6          A    Yes.

7          Q    And how do you know that?

8          A    I didn't know it at the time, I was told

9    later in a conversation with someone who was there,

10   that, oh, yeah, that set was that scene.  Because I

11   said, what about that scene?  Oh, that was filmed

12   before you got on set.

13         Q    And there would be records, right, that

14   would show that you traveled to New Jersey; is that

15   right?

16         A    Yes.

17         Q    And those travel records would presumably

18   show us when you arrived and when you left?

19         A    I assume so.

20         Q    Would -- do you have a calendar or diary

21   that you keep?  By diary, I mean a calendar.  Do you

22   keep a calendar?

23         A    I do, but it wouldn't specifically say

24   which scenes I was there for.

25         Q    But wouldn't the calendar have, for

CONFIDENTIAL

Page 174

1   example, things like, you know, flight to Newark or

2   wherever you flew to in New Jersey?

3          A     Yes.

4          Q     And it would say what time the flight was

5   at?

6          A     Yes.

7          Q     And did you take a taxi or a car service?

8   Or how did you get from the airport to the set that

9   day?

10         A     I don't recall.

11         Q     Do you have somebody who books your

12  travel for you?

13         A     Yes.

14         Q     So there is a person who booked travel

15  arrangements for your visit to the set that day,

16  right?

17         A     I don't recall.

18         Q     Do you have a recollection of who the

19  person was who assisted you with travel for that

20  particular visit?

21         A     I don't recall.

22         Q     Do you have a recollection of what time

23  you arrived on the set that day?

24         A     I don't recall.

25         Q     If we wanted to find that out and we

CONFIDENTIAL

Page 175

1   looked through -- if you pulled out your phone --
2   I'm not proposing to take it from it, but if you
3   pulled out your phone, would you have on your
4   calendar app in your phone information from that day
5   in May of 2023?
6          A     No.
7          Q     Why not?
8          A     Because the phone archived the data.
9          Q     Okay.  So we would have to look in your
10   archives to find that information?
11          A     Yes.
12          Q     Did you ever take a car service to get to
13   the set?
14          A     Can I answer that question a little more
15   thoroughly?
16          Q     Sure.
17          A     I don't know that the time that I arrived
18   on set would be on my calendar.
19          Q     Okay.
20          A     It probably would not.
21          Q     Okay.  Other than the -- what you have
22   told me now, do you have any other things that you
23   can think of that Ms. Lively has said about you
24   publicly that you believe defamed you personally?
25          A     Not that I recall.

CONFIDENTIAL

Page 176

1        Q    Do you know how many other claims you
2    filed against Ms. Lively and Ms.[sic] Reynolds
3    personally?
4        A    No.
5        Q    Did you know that you sued Ms. Lively and
6    Mr. Reynolds for intentional interference with
7    contractual relations?
8        A    Was that Wayfarer or myself?
9        Q    You, personally, Steve Sarowitz.
10       A    As a part of the group of defendants?
11       Q    You, along with others, sued Ms. Lively
12   and Mr. Reynolds for intentional interference with
13   contractual relations.
14            Do you understand that?
15       A    I -- you know, I'm not a lawyer.  So what
16   I would say is, to the best of my knowledge, a group
17   of us sued them.  I don't know why the lawyers made
18   it a group of us, but that I believe was not about
19   anything I did personally or anything that was done
20   to me personally.
21       Q    Did you ever consider whether there was
22   any contract that Ms. Lively or Mr. Reynolds
23   interfered with of yours?
24       A    Again, I don't think this is about me
25   personally.

CONFIDENTIAL

Page 177

1     Q    Okay.  And then would the same be true

2  for intentional negligent interference with

3  prospective economic advantage?  Not about you

4  personally?

5     A    I'm not as certain on that one.  I'd have

6  to know more on that one.  Can -- I'd have to know

7  more on that one.  I'd need more detail.  The other

8  one, no.  That one, possibly.

9     Q    As you sit here today, what is your

10  understanding of the factual basis for intentional

11  and negligent interference with prospective economic

12  advantage against, for example, let's start with

13  Mr. Reynolds?

14     A    And the reason I'm hesitating is, I'm not

15  sure where Wayfarer ends and I start.  I don't know

16  how -- why the lawyers sued the way they did.  I'm

17  not a lawyer.  So I -- I'm not really an expert on

18  the law.  But I can talk about damages done to

19  Wayfarer, of which I'm the majority owner.  And that

20  would have a negative economic advantage to me as an

21  individual.  I don't know if that is what you're

22  asking me.

23     Q    I'm not ask- -- I'm not asking you

24  questions about damages to Wayfarer.  I'm talking

25  about the claims you personally raised.  But I

CONFIDENTIAL

Page 178

1    understand, I think, your testimony to be that what

2    harms Wayfarer harms you because of your financial

3    interest?

4         A    Yes.

5         Q    Okay.

6         A    And any -- any crimes done against

7    Wayfarer such as are extorting, et cetera, would

8    also be against me personally because of my

9    ownership interest.  But not because of anything

10   that was done to me personally.

11        Q    But you're not saying that Wayfarer

12   and -- Wayfarer is your alter ego, are you?

13            MS. GAROFALO:  Objection.

14   BY MR. GOTTLIEB:

15        Q    Are you saying that you and Wayfarer

16   Studios are one and the same?

17            MS. GAROFALO:  Objection.

18            THE WITNESS:  No.

19   BY MR. GOTTLIEB:

20        Q    Okay.  Have you ever said, "I've seen in

21   the companies I work at that women aren't listened

22   to in meetings, that women aren't respected, that

23   sexual harassment is allowed to go on.  We as men

24   need to stand up against that"?

25        A    Yes.

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.