# EXHIBIT 50

Filed Under Seal

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| BLAKE LIVELY, | : | Civ. Action No. 1:24-cv-10049-LJL |
| | : | rel. 1:25-cv-00449-LJL |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| WAYFARER STUDIOS LLC, JUSTIN BALDONI, | : | |
| JAMEY HEATH, STEVE SAROWITZ, IT ENDS | : | |
| WITH US MOVIE LLC, MELISSA NATHAN, THE | : | |
| AGENCY GROUP PR LLC, JENNIFER ABEL, JED | : | |
| WALLACE, and STREET RELATIONS INC., | : | |
| | : | |
| Defendants. | x | |
| | : | |
| | : | |

------------------------------------------------------------ :

| | | |
|---|---|---|
| JENNIFER ABEL, | : | |
| | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JONESWORKS LLC, | : | |
| | : | |
| Third-Party Defendant. | : | |

------------------------------------------------------------ x

1

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**DEFENDANT JUSTIN BALDONI'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLAKE LIVELY'S FIFTH SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules of the Court, Defendant Justin Baldoni ("Baldoni" or "Responding Party"), by and through his attorneys, hereby objects and responds to Plaintiff Blake Lively's ("Lively" or "Propounding Party") Fifth Set of Interrogatories.

## I.

## GENERAL OBJECTIONS

Responding Party makes the following general objections ("General Objections") to Propounding Party's Interrogatories.

1.      Responding Party objects to each Interrogatory to the extent that it seeks information that is not relevant to any claim or defense or proportional to the needs of the case.

2.      Responding Party objects to each Interrogatory to the extent that it purports to impose on Responding Party obligations broader than, or inconsistent with, those imposed by the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of New York, or by any other applicable law or protocol governing discovery obligations in the above-captioned action.

3.      Responding Party objects to each Interrogatory to the extent that it seeks discovery of information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or exception.

4.      Nothing contained in these responses, or any inadvertent production or identification of documents made in response to these interrogatories, is intended as, or shall in any way be deemed, a waiver of the attorney-client privilege, the common interest privilege, the work product doctrine, or any other applicable privilege, immunity, or exception.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

5.      Responding Party objects to each Interrogatory to the extent that it is overbroad or unduly burdensome.

6.      Responding Party objects to each Interrogatory to the extent it seeks information that is not in Responding Party's possession, custody, or control.

7.      Responding Party objects to each Interrogatory to the extent it would require Responding Party to produce information covered by confidentiality agreements or protective orders with others, or that constitute an unwarranted invasion of the affected persons' constitutional, statutory, and/or common-law rights of privacy and confidentiality.

8.      Responding Party objects to each Interrogatory to the extent it seeks confidential commercial, financial, and/or proprietary business information, trade secrets, and/or any other non-public information protected from disclosure by law, court order, or agreement respecting confidentiality or non-disclosure or requires the disclosure of confidential or proprietary business information of third parties which Responding Party is obligated to protect.

9.      Responding Party objects to Propounding Party's Interrogatories as unduly burdensome to the extent that they seek information or documents that are publicly available, equally accessible to Propounding Party, or already in Propounding Party's possession, custody, or control.

10.     Responding Party objects to each Interrogatory insofar as it is unreasonably cumulative, duplicative, repetitive, redundant, or overlapping of other discovery requests.

11.     Responding Party objects to each Interrogatory to the extent that it, or any word or term used therein, is vague, ambiguous, compound, confusing, unintelligible, unclear, subject to different interpretations, and/or lacking in definition.

12.     Responding Party objects to each Interrogatory to the extent that it is unlimited in

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

temporal scope or contains overly broad time limitations or periods that are not relevant to any claim or defense or proportional to the needs of the case.

13.     Responding Party objects to each Interrogatory to the extent that it assumes, relies on, or seeks disputed facts, legal conclusions, or opinions. Responding Party denies any such disputed facts or legal conclusions or opinions to the extent assumed, relied on, or sought by each Interrogatory. Any response or objection by Responding Party to any such Interrogatory is without prejudice to this objection.

14.     Responding Party objects to each Interrogatory to the extent that it exceeds the scope of interrogatories set forth in Local Civil Rule 33.3(a).

15.     In providing responses to each Interrogatory, Responding Party does not in any way waive any objections Responding Party may later assert, including but not limited to competency, relevancy, materiality, and admissibility. Responding Party expressly reserves the right to object to the use of any responses below in any subsequent proceedings or any other action. Responding Party further reserves the right to object to additional discovery into the subject matter of the Interrogatory.

16.     Responding Party has responded to each Interrogatory based upon its understanding of each Interrogatory and recollection as of the date these responses are served.

17.     Responding Party's responses are based on its present knowledge, information, and belief following its diligent search and reasonable inquiry. Discovery and investigation are ongoing, and Responding Party reserves the right to amend, correct, supplement, or clarify its responses based upon, among other things, further investigation, discovery of additional facts or information, or developments in this action or in related law, particularly in view of Propounding Party's failure to comply with the Local Rules.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

18.     Responding Party objects to Paragraph 2 of Propounding Party's Instructions to the extent it instructs Responding Party to gather information from its "agents, employees, representatives, or investigators (including but not limited to experts) . . . present or former attorneys or [its] agents, employees, representatives or investigators; or by any other person or legal entity controlled by or in any other manner affiliated with [its]" that is protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege and/or any other applicable privilege or immunity. Responding Party further objects to this instruction to the extent that it requires Responding Party to produce duplicative or cumulative information. Responding Party will only produce information that is in its possession, custody, or control, as required under the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of New York, or by any other applicable law or protocol governing discovery obligations in this action.

19.     Responding Party objects to each Interrogatory to the extent it seeks information "from May 1, 2024, through the present." The Court has limited discovery to a period ending on February 18, 2025. Dkt. 711. To the extent this Interrogatory seeks information after February 18, 2025, it exceeds the permissible scope of discovery. Responding Party's responses are limited to a period ending on February 18, 2025.

20.     Responding Party objects to Propounding Party's definition of "Content Creator" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

21.     Responding Party objects to Propounding Party's definition of the term "Digital Campaign," as it is vague, ambiguous, overbroad, and unduly burdensome.

22.     Responding Party objects to Propounding Party's definition of "Social Media," as it is vague, ambiguous, and overbroad.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

23.     Responding Party objects to Propounding Party's definition of "You," "Your," and "Yours" on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

24.     These General Objections are hereby incorporated into each specific response.

## II.

## RESPONSES TO BLAKE LIVELY'S INTERROGATORIES

**INTERROGATORY NO. 7:**

Identify in reasonable detail all factual and legal bases for Your contention that the criticism against Ms. Lively on social media, during and after August 2024, was entirely organic.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "criticism" and "entirely organic"; (2) seeks information subject to expert opinion; and (3) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

Collen Hoover's highly successful novel *It Ends with Us*, Lively and her husband Ryan Reynolds, and the film *It Ends With Us* (the "Film") have all been the subject of extraordinary public interest. Although negative coverage of Lively began with news of her casting and continued due to paparazzi photographs of her characters' wardrobe (chosen by Lively herself), rumors of discord between Responding Party (the Film's lead actor and director) and Lively on the set heightened media interest in and somewhat prior to August 2024, driven in large measure by Lively and certain cast members' mass unfollowing of Responding Party on social media and Responding Party's conspicuous absence from the Film's marketing and publicity events as well as gossip regarding Lively's efforts to wrest creative control of the Film from Responding Party, Heath, and Wayfarer Studios LLC ("Wayfarer"). In response to public interest, the media began

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

to report about (1) a poorly conceived and tone deaf marketing campaign for the Film spearheaded by Lively in coordination with Maximum Effort Productions, Inc. ("Maximum Effort") and its principal, Ryan Reynolds; (2) Lively's promotion of a film about domestic violence with her hair care and alcohol brands; (3) Lively's alcohol brand's sponsorship of an official Film promotional event and decision to name a signature cocktail after the Film's male lead, a domestic abuser; (4) Lively's conspicuous refusal to take photos or do press with Responding Party and her exclusion of Responding Party from promotional appearances, international premieres, panel appearances, and screenings; (5) Lively's campaign to alienate the Film's cast and crew from Responding Party including the orchestration of their mass unfollowing of Responding Party's social media accounts; (6) Lively's pointed failure to meaningfully engage with the Film's serious subject matter and emphasis of "levity" in her promotional appearances, interviews, and social media posts; and (7) Lively's myriad of bizarre and/or off-putting public appearances and interviews by leading up to the Film's release. Lively further fueled the negative press by feeding information to the *New York Times* and other media outlets in advance of the filing of her complaint, which she provided, along with inflammatory text messages, to the *New York Times* well prior to the complaint's filing.

Criticism of Lively escalated when litigation commenced following her multi-month coordination with the *New York Times* to launder stolen private communications and peddle a false narrative in order to, in Responding Party's view, resuscitate her tarnished public image at the Wayfarer Parties' expense. Through the *New York Times* article, Lively stirred up significant public interest in her allegations against the Wayfarer Parties. Lively's strategy backfired when the factual basis for her allegations started to unravel and the real story emerged painting a highly negative picture of Lively and her cohorts. That negative public image has only been heightened

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

by the unrelenting public relations tactics of Lively's legal team, which has cynically exploited and thereby diluted the language of domestic violence survivorship (e.g., "DARVO") and engaged in a concerted abuse of subpoena power to intimidate internet influencers and chill public criticism of Lively.

These factors and conduct by Lively and her agents organically created a climate of negative public sentiment against Lively, which spurred the media and internet users to dig up and re-circulate unflattering content concerning Lively's behavior from years past.

**INTERROGATORY NO. 8:**

Identify in reasonable detail all factual and legal bases for Your contention that the criticism against Ms. Lively on tabloid and mainstream media, during and after August 2024, was entirely organic.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "criticism" and "entirely organic"; (2) seeks information subject to expert opinion; (3) is duplicative of Interrogatory No. 7; and (4) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

Collen Hoover's highly successful novel *It Ends with Us*, Lively and her husband Ryan Reynolds, and the Film have all been the subject of extraordinary public interest. Although negative coverage of Lively began with news of her casting and continued due to paparazzi photographs of her characters' wardrobe (chosen by Lively herself), rumors of discord between Responding Party (the Film's lead actor and director) and Lively on the set heightened media interest in and somewhat prior to August 2024, driven in large measure by Lively and certain cast members' mass unfollowing of Baldoni on social media and Responding Party's conspicuous

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

absence from the Film's marketing and publicity events as well as gossip regarding Lively's efforts to wrest creative control of the Film from Heath, Responding Party, and Wayfarer. In response to public interest, the media began to report about (1) a poorly conceived and tone deaf marketing campaign for the Film spearheaded by Lively in coordination with Maximum Effort and its principal, Ryan Reynolds; (2) Lively's promotion of a film about domestic violence with her hair care and alcohol brands; (3) Lively's alcohol brand's sponsorship of an official Film promotional event and decision to name a signature cocktail after the Film's male lead, a domestic abuser; (4) Lively's conspicuous refusal to take photos or do press with Responding Party and her exclusion of Responding Party from promotional appearances, international premieres, panel appearances, and screenings; (5) Lively's campaign to alienate the Film's cast and crew from Responding Party including the orchestration of their mass unfollowing of Responding Party's social media accounts; (6) Lively's pointed failure to meaningfully engage with the Film's serious subject matter and emphasis of "levity" in her promotional appearances, interviews, and social media posts; and (7) Lively's myriad of bizarre and/or off-putting public appearances and interviews by leading up to the Film's release. Lively further fueled the negative press by feeding information to the *New York Times* and other media outlets in advance of the filing of her complaint, which she provided, along with inflammatory text messages, to the *New York Times* well prior to the complaint's filing.

Criticism of Lively escalated when litigation commenced following her multi-month coordination with the *New York Times* to launder stolen private communications and peddle a false narrative in order to, in Responding Party's view, resuscitate her tarnished public image at the Wayfarer Parties' expense. Through the *New York Times* article, Lively stirred up significant public interest in her allegations against the Wayfarer Parties. Lively's strategy backfired when

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

the factual basis for her allegations started to unravel and the real story emerged painting a highly negative picture of Lively and her cohorts. That negative public image has only been heightened by the unrelenting public relations tactics of Lively's legal team, which has cynically exploited and thereby diluted the language of domestic violence survivorship (e.g., "DARVO") and engaged in a concerted abuse of subpoena power to intimidate internet influencers and chill public criticism of Lively.

These factors and conduct by Lively and her agents organically created a climate of negative public sentiment against Lively, which spurred the media and internet users to dig up and re-circulate unflattering content concerning Lively's behavior from years past. This has all been covered extensively in the tabloid and mainstream media.

**INTERROGATORY NO. 9:**

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively acted and continues to act with "unclean hands," as stated in paragraph 474 of your Answer.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects that this Interrogatory (1) is overbroad in time and scope and compound; (2) is not proportional to the needs of the case or relevant to the claims or defenses of any party; and (3) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

Lively participated in wrongful conduct of the same kind she accuses the Wayfarer Defendants of committing, namely, a smear campaign targeting Responding Party's professional and personal reputation and Wayfarer. Lively created the disputes, hostility and animus of the set, alienated the cast and crew against Responding Party, sidelined Responding Party from the production, refused to treat Responding Party or his religious beliefs with respect and orchestrated

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

and is still pursuing a smear campaign to manipulate media and public sentiment against Responding Party. Lively also showed extreme disrespect and dismissiveness against victims of sexual violence and abuse by downplaying the Film's anti-domestic violence theme, tying her own products including an alcohol business into her marketing and focusing on levity in the promotion of the Film, while ignoring the Film's serious message about domestic violence. Notwithstanding Lively's complaints about the Wayfarer Parties' purported coordination with the press, it was Lively (through a shell entity) who filed a sham lawsuit to launder stolen communications and share them (spliced and stripped of context) with the press.

**INTERROGATORY NO. 10:**

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively has failed to mitigate damages she has incurred in paragraph 478 of your Answer.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects that this Interrogatory seeks information subject to expert opinion and presumes that Lively has incurred damages and injuries, which Responding Party denies. Without waiving these objections:

Responding Party denies that Lively suffered any damages as a result of any act or omission of Responding Party or any other Wayfarer Party. However, to the extent Lively is alleged to have suffered damages, including without limitation as a result of reputational harm, she has failed to mitigate such damages. In the first instance, Lively was the proximate cause of any harm or damages she seeks to recover. To the extent Lively can show any damages proximately caused by the Wayfarer Parties or their efforts to defuse the storm of negative press that Lively instigated against Responding Party and the Wayfarer Parties, Lively failed to mitigate her damages by failing to seek or "turn[ing] down other acting and directing opportunities" and public appearances

11

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

and promotional events for her brands. Dkt. 520, ¶ 341 (Lively's Second Amended Complaint). Lively also acknowledges declining to work on projects at the same time as her husband to avoid being apart from one another, limiting the opportunities available to her.

Lively further harmed her reputation since August 2024 by, among other things, (1) her tone-deaf cross promotional efforts, which created an association between her hair care and liquor brands and domestic violence; (2) making provably false claims about the Wayfarer Parties and exploiting the language of #MeToo in a manner that has undermined her credibility with the public; (3) abusive legal tactics, including the initiation of a sham legal action through a shell company (i.e., Vanzan, Inc.) to launder stolen communications as well as a scorched earth legal campaign to intimidate content creators and chill online criticism of Lively; and (4) Lively's exploitation her power and influence to coordinate the publication a one-sided *New York Times* hit piece.

**INTERROGATORY NO. 11:**

Identify all "individuals or entities other than [You]," whom You contend "directly and proximately caused" Ms. Lively's damages and injuries, as stated in paragraphs 483 and 484 of your Answer.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects that this Interrogatory seeks information subject to expert opinion and presumes that Lively has incurred damages and injuries, which Responding Party denies. Without waiving these objections:

- Blake Lively

- Ryan Reynolds

- Maximum Effort

- Leslie Sloane

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

- Vision PR

- Stephanie Jones

- Jonesworks

- Sony

**INTERROGATORY NO. 12:**

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively planned and implemented a smear campaign against Mr. Baldoni and Wayfarer.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party objects that this Interrogatory (1) is vague and ambiguous as to the meaning of "smear campaign"; (2) seeks irrelevant information; and (3) and seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections:

Responding Party is aware of a variety of conduct by Lively and her agents tantamount to a smear campaign against Responding Party and Wayfarer (and others). Lively took a series of steps she knew or should have known would cause negative public chatter about Responding Party/Wayfarer, including: (1) orchestrating a mass unfollowing of Responding Party's social media accounts by the cast; (2) excluding Responding Party from interviews and pre-promotional activities with her and the rest of the cast; (3) refusing to allow photos of Responding Party and her to be taken; (4) attempting to ban Baldoni from the premiere of the *It Ends With Us* and, when that failed, sequestering him from her and the rest of the cast;  (5) refusing to say Responding Party's name in pre- and post-release publicity efforts; (6) causing the removal of Responding Party's name from marketing materials; (7) planting (through her publicist) negative stories about Responding Party in the press; (8) coordinating a hit piece with the *New York Times* over the span

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

of multiple months accusing Responding Party and Heath of sexual harassment and the other Wayfarer Parties of orchestrating a retaliatory smear campaign to cover up her allegations; (9) releasing an otherwise confidential Civil Rights Department complaint for the purpose of causing maximum reputational damage to the Wayfarer Parties; and (10) releasing inflammatory statements through her legal team regarding the Wayfarer Parties, including accusing them of DARVO. Taken together, Responding Party believes these actions constitute a smear campaign on Lively's part.

**INTERROGATORY NO. 13:**

Identify in reasonable detail all factual and legal bases for Your contention that Ms. Lively sought to vilify any Wayfarer Defendant, Wallace or Street Relations to resuscitate her public image.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party objects that this Interrogatory (1) is overbroad and compound; (2) seeks irrelevant information; and (3) seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections:

From the time of her casting as Lily Bloom and especially after the release of paparazzi-captured photos of her character's wardrobe (chosen by Lively), Lively has been scrutinized on social media. In or around (and somewhat prior to) August 2024, Responding Party observed that criticism of Lively heightened on social media (and, to a lesser extent, in tabloid/mainstream media) for, among other things, her perfunctory treatment of the Film's serious subject matter, off-putting and tone-deaf public appearances, and Lively's decision to cross-promote her alcohol and hair care brands with a domestic violence movie. Because Lively had so effectively isolated

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Baldoni from her promotional activities, Baldoni was insulated from the public backlash Lively incited.

In response, Responding Party believes Lively has engaged in a concerted effort to vilify Responding Party, the other Wayfarer Parties, Jed Wallace, and Street Relations, Inc. in an effort to resuscitate her public image. That campaign started in August 2024, when Lively's publicist started planting negative stories about Responding Party, including that he had "fat shamed" her and that he belonged to a cult. Lively then worked in secret with Wayfarer's and Responding Party's former public relations firm, Jonesworks, and Stephanie Jones to launder private stolen communications, splicing and stripping them of context to support a factually false narrative that Lively's reputational challenges were a function not of her own missteps but instead of a "smear campaign" orchestrated by Responding Party and the Wayfarer Parties in retaliation for purported allegations of sexual misconduct. Lively and/or her agents fed these false allegations to the *New York Times*, which ultimately regurgitated them in a bombshell article intended for maximum public impact. The day before publication, Lively requested a right-to-sue notice from the California Civil Rights Department and attached a recitation of purported factual allegations. Lively's attachment was procedurally unnecessary and would have been confidential had she not leaked it to the *New York Times* for publication. Responding Party believes these actions were designed to change the prevailing narrative about her and recast her as the victim rather than the architect of her own undoing.

**INTERROGATORY NO. 14:**

Identify in reasonable detail all factual and legal bases for Your contention in Paragraph 482 of your Answer that You "appropriately, completely, and fully performed and discharged any alleged obligations and any alleged legal duties arising out of the matters alleged in the

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Complaint."

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party objects that this Interrogatory (1) is overbroad in time and scope and compound; (2) is not proportional to the needs of the case or relevant to the claim or defense of any party; and (3) seeks the disclosure of information or documents protected by the attorney-client privilege, work-product doctrine, or common interest privilege. Without waiving these objections:

Responding Party fully performed under the applicable contracts, including, without limitation, the Actor Loan Out Agreement, Nudity Rider, and Protection Side Letter. Responding Party has also fully complied with all obligations created by the California Fair Employment and Housing Act, Title VII, and related statutes.

**INTERROGATORY NO. 15:**

Identify in reasonable detail every instance when Ms. Lively provided "consent," as You contend in paragraph 477 of your Answer.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party objects that this Interrogatory (1) is overbroad in time and scope and compound; (2) is not proportional to the needs of the case or relevant to the claims or defenses of any party; and (3) seeks information protected by the attorney-client privilege and the attorney work product doctrine. Without waiving these objections:

This Interrogatory does not specify the instances with respect to which Lively contends she did not provide consent. Based on the evidence and testimony in this case, however, Lively consented to, among other things, (1) playing the role she was cast for, including the shooting of intimate scenes; (2) accepting changes to the script and some degree of improvisation during

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

filming; (3) Jamey Heath's entry into her trailer on the occasion described in her Second Amended Complaint; and (4) the use of the term "sexy" to describe her characters' wardrobe.

**INTERROGATORY NO. 16:**

Identify all Persons with whom You communicated via Signal concerning the Digital Campaign, Ms. Lively, Mr. Reynolds, the Film, or the Consolidated Actions (including any allegations asserted therein) and the date of each such communication.

**RESPONSE TO INTERROGATORY NO. 16:**

Responding Party objects that this Interrogatory (1) is overbroad, compound, and unduly burdensome in that, among other things, it requires a compilation of dates for numerous communications involving numerous parties; (2) is overbroad and unduly burdensome in that it seeks information relating to communications from "May 1, 2024, through the present", even though the Court limited discovery of this information to a period ending on February 18, 2025; (3) seeks irrelevant information; (4) seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege; and (5) is overbroad, unduly burdensome to answer, and intended for an improper purpose. Without waiving these objections:

Responding Party has been included on various group Signal chats involving

- Jamey Heath

- Mitz Toskovic

- Tera Hanks

- Steve Sarowitz

- Ahmed Musiol

- Melissa Nathan

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

- Jennifer Abel

- Mitra Ahourian

- Bryan Freedman

- Summer Benson

- Theresa Troupson

- Jason Sunshine

- Tamar Yeghiayan

- Mitchell Schuster

- Kevin Fritz

- Stacy Ashby

- Spencer Freedman

- Jared Freedman

- Christina Puello

- Breanna Koslow

- Jed Wallace

- Sage Steele

**INTERROGATORY NO. 17:**

If you contend that You anticipated litigation related to Ms. Lively or the Film prior to December 31, 2024, identify when You anticipated litigation and describe in detail why.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party objects that this Interrogatory seeks information protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Without waiving these objections, Responding Party responds as follows:

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

Given Lively's hostile and threatening conduct at the time, Responding Party suspected the

possibility of litigation relating to the shooting of the Film in or around mid-August 2024.


Dated: September 29, 2025              **MEISTER SEELIG & FEIN PLLC**
New York, NY


By:  _/s/ Mitchell Schuster_
     Mitchell Schuster
     Kevin Fritz


Dated: September 29, 2025              **LINER FREEDMAN TAITELMAN +**
Los Angeles, CA                       **COOLEY, LLP**


By:  _/s/ Bryan Freedman_
     Bryan J. Freedman (*pro hac vice*)
     Ellyn S. Garofalo (*pro hac vice*)
     Theresa M. Troupson (*pro hac vice*)
     Summer E. Benson (*pro hac vice*)
     Jason H. Sunshine



*Attorneys for Defendant Justin Baldoni*

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**VERIFICATION**

I, Justin Baldoni, declare as follows:

I have read the foregoing **DEFENDANT JUSTIN BALDONI'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLAKE LIVELY'S FIFTH SET OF INTERROGATORIES** and know its contents.

I am a party to this action, and I make this verification on my behalf. The matters stated in the foregoing document are true to my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States, the State of New York, and the State of California that the foregoing is true and correct.

Executed on September 29, 2025, at Nashville, Tennessee.

Signed by:

*Justin Baldoni* _____

B6D7B762A79948F...  Justin Baldoni

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I, Vaneta D. Birtha, do hereby certify that I am not less than 18 years of age and that on this 29th day of September 2025, I caused a copy of the within **DEFENDANT JUSTIN BALDONI'S RESPONSES AND OBJECTIONS TO PLAINTIFF BLAKE LIVELY'S FIFTH SET OF INTERROGATORIES** be served upon the following counsel for the parties via email:

### SEE ATTACHED SERVICE LIST

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: September 29, 2025
        Los Angeles, CA


                        */s/ Vaneta D. Birtha*
                        Vaneta D. Birtha

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

## SERVICE LIST

*Blake Lively v. Wayfarer Studios, et al.*
Case No. 1:24-cv-10049-LJL

**MANATT, PHELPS & PHILLIPS, LLP**              *Attorneys for Plaintiff*
Esra Hudson, Esq.
Sarah E. Moses, Esq.



Stephanie Anne Roeser



Matthew F. Bruno



**WILKIE FARR & GALLAGHER LLP**              *Attorneys for Plaintiff*
Aaron E. Nathan, Esq.
Michaela A. Connolly, Esq.



Michael Gottlieb
Kristin Bender



**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**HAYNES AND BOONE, LLP**                          *Attorneys for Plaintiff*
Laura Lee Prather
Michael Lambert

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**    *Attorneys for Third Party*
Kristin Tahler                                    *Defendant Jonesworks LLC*

Maaren Alia Shah
Morgan L. Anastasio

Nicholas Inns

**DUNN ISAACSON RHEE LLP**                        *Attorneys for Plaintiff*
Meryl C. Governski

**AHOURAIAN LAW**                                 *Co-Counsel for Defendants*
Mitra Ahouraian                                   *Wayfarer Studios LLC, Justin*
                                                  *Baldoni, Jamey Heath, It Ends*
                                                  *With Us Movie LLC, Steve*
                                                  *Sarowitz*

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**MEISTER SEELIG & FEIN PLLC**
Stacey Michelle Ashby
Mitchell Schuster
Kevin A. Fritz

*Co-Counsel for Defendants
Wayfarer Studios LLC, Justin
Baldoni, Jamey Heath, It Ends
With Us Movie LLC, Steve
Sarowitz, Melissa Nathan,
Agency Group PR LLC, and
Defendant / Third Party
Plaintiff Jennifer Abel*



**SHAPIRO ARATO BACH**
Alexandra A.E. Shapiro
Jonathan P. Bach, Esq.

*Co-Counsel for Defendants
Wayfarer Studios LLC, Justin
Baldoni, Jamey Heath, It Ends
With Us Movie LLC, Steve
Sarowitz, Melissa Nathan,
Agency Group PR LLC, and
Defendant / Third Party
Plaintiff Jennifer Abel*



**JACKSON WALKER L.L.P**
Charles L. Babcock, IV
Joel Glover

*Attorneys for Defendants Jed
Wallace and Street Relations,
Inc.*

