# EXHIBIT 19

Filed Under Seal

**THE AGENCY GROUP PR**

## LETTER OF AGREEMENT

**August 02, 2024**

Wayfarer Studios
CC: Jamey Heath, Tera Hanks

Dear Wayfarer Studios

This constitutes the master services agreement ("Agreement") between **Wayfarer Studios** ("Client") and The Agency PR Group LLC ("Agency") for the provision of services as set forth herein. The parties agree as follows:

1. **Services.** Client is retaining Agency as its non-exclusive public relations counsel to assist with mutually agreed strategic communication services in connection with **Wayfarer Studios as laid out in the Statement of Work ("SOW") which is hereby incorporated to this Agreement..** If Client wants to expand the scope of the Services or wants additional services, Client and Agency shall mutually agree upon the additional services to be performed and the amount required to perform the additional services and either amend the current Agreement or execute a new Agreement, as appropriate. Agency shall bill Client and Client shall pay Agency for such additional services in accordance with the terms of this Agreement.

2. **Compensation.**

   2.1. **Fee.** As consideration for the Services, **Wayfarer Studios** hereby agrees to pay Agency a sum of $15,000 USD per month ("Services Fee"). The first month's Services Fee shall be due upon execution of the Agreement.



Page 1 of 5

Doc ID: bf6674b23d2ace529a1efb87bbec52c31e75bb93

THE
AGENCY
GROUP PR

3. **Indemnification.**

    **3.1**    Client represents and warrants that the materials and information it provides to Agency are, accurate and complete and that it is the owner or licensee of all intellectual property rights sufficient to enable Agency to edit, reproduce and otherwise use, publish and distribute such materials in performing Services for Client. Client shall defend, indemnify and hold Agency harmless from and against any third-party liabilities, actions, claims, damages, judgments or expenses, including reasonable attorneys' fees and costs, (collectively "Claims") that arise out of or relate to: (i) information, statements or materials prepared or provided by Client, that Client directed Agency to use or that were approved by Client (ii) product liability or death, personal injury or property damage arising out of, or relating to, Client's acts or omissions or Client's products, services or equipment; and/or (iii) Client's gross negligence or willful misconduct or breach of this Agreement.

    **3.2**    Agency shall defend, indemnify and hold Client harmless from and against any Claims that arise out of, or relate to Agency's gross negligence or willful misconduct in performing the Services under this Agreement. Agency shall not be liable for any delay in or omission of publication or transmission, or for any error in any press or other publication, to the extent that such delay, omission, or error is outside Agency's control or is the result of any third party's action or inaction.

    **3.3**    The indemnifying party's obligations under this Agreement are conditioned upon (i) the other party's giving prompt, written notice of a Claim; (ii) the indemnifying party having sole control of the defense and settlement of a Claim (provided that the indemnifying party may not settle any Claim in a manner that would adversely affect the other party's rights, reputation or interests without the other party's prior written consent, which shall not be unreasonably withheld); and (iii) the other party's cooperation with the indemnifying party, at the indemnifying party's expense, in the defense and settlement of the Claim, as the indemnifying party may reasonably request. The party seeking indemnification shall have the right to participate in the defense thereof with counsel of its choosing at its own expense.

    **3.4**    In addition, in matters in which Agency is not an adverse party, Client shall pay or reimburse Agency for all reasonable staff time, attorneys' fees and expenses Agency incurs in relation to subpoenas, depositions, discovery demands and other inquiries in connection with suits, proceedings, governmental, legislative or regulatory hearings, investigations or other civil or criminal proceedings in which Client is a party, subject or target.

    **3.5**    This Section shall survive termination or expiration of this Agreement.

4.    **Term**. This Agreement shall commence effective as of **August 02** until **November 02, 2024**. Thereafter, the agreement shall continue on a month-to-month basis until terminated by either party as provided herein.

5.    **Termination**. After the initial one (1) month period, either party may terminate this Agreement for any reason by providing the other party with not less than ten (10) days written notice. In addition, either party may terminate this Agreement upon ten (10) days written notice to the other party in the event of a material breach of this Agreement (including non-payment of any invoice), if such breach is not corrected by the other party within the ten-day period. Either party may immediately terminate this Agreement if the other becomes insolvent; is unable to pay its debts as they mature; is the subject of a petition in bankruptcy or of any other proceeding under bankruptcy, insolvency or similar laws; makes an assignment for the benefit of creditors, or is named in, or its property is subjected to, a suit for the appointment of a receiver; or is dissolved or liquidated. The respective rights and duties of the parties shall

CONFIDENTIAL

Doc ID: bf6674b23d2ace529a1efb87bbec52c31e75bb93

CHURLEY_00000021

**THE AGENCY GROUP PR**

continue in full force and effect during the notice period.  Upon expiration or termination of this Agreement, Client shall pay Agency fees through the termination date and reimburse Agency for expenses incurred through the termination date.  In addition, Client shall either assume liability or pay Agency for non-cancelable expenses committed to be incurred prior to the termination date. This Section shall survive termination or expiration of this Agreement.

   **6.**  **Limitation of Liability.** EXCEPT WITH RESPECT TO ANY AND ALL LIABILITY ARISING FROM AGENCY'S OBLIGATIONS IN SECTION 3 (INDEMNIFICATION), AGENCY'S AGGREGATE LIABILITY ARISING OUT OF, OR RELATING TO, THIS AGREEMENT (WHETHER IN CONTRACT, TORT OR OTHER LEGAL THEORY) SHALL NOT EXCEED THE AMOUNT OF FEES PAID BY CLIENT TO AGENCY PURSUANT TO THIS AGREEMENT.  IN NO EVENT SHALL AGENCY BE LIABLE TO CLIENT FOR ANY SPECIAL, CONSEQUENTIAL, PUNITIVE OR OTHER INDIRECT DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST REVENUES OR PROFITS), WHETHER OR NOT NOTIFIED OF SUCH DAMAGES.  This Section shall survive termination or expiration of this Agreement.

   **7.**  **Confidentiality.**  Each party will use the commercially reasonable efforts to keep confidential all information and materials so designated by the other party and to limit access to such information and materials to those with a need to know for purposes of performing this Agreement. Notwithstanding the foregoing, each party acknowledges that information and materials shall not be deemed confidential for the purposes of this Agreement if such information and materials: (i) become publicly available through no wrongful act or breach of any obligation of confidentiality on the receiving party's part; (ii) are, at the time of disclosure, lawfully known to the receiving party without restriction on disclosure; (iii) are independently developed or obtained by the receiving party without breach of this Agreement (iv) becomes available to the receiving party on a non-confidential basis from a source other than the disclosing party, provided such source is not bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality, to the disclosing party with respect to such information or (v) are authorized for release by the disclosing party. In the event that a party is, in the context of a legislative, administrative or judicial proceeding, requested or required (by oral questions, interrogatories, regulations, orders, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar legal process) to disclose any confidential information, such party shall provide the other party with prompt written notice of any such request or requirement, if and to the extent permitted by law, and shall refrain from disclosure so that the other party may in its sole discretion and at its sole expense seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.

   **8.**  **Non-Solicitation of Employees.**  During the term of this Agreement and for one (1) year after its termination, Client will not, without the written consent of Agency, knowingly solicit (either directly or indirectly) any Agency employee with whom Client came into contact during the performance of this Agreement, for the purpose of engaging such employee as an employee, consultant, agent or other independent contractor.  In the event Client does so solicit and employ or engage any person so employed by Agency, Client shall pay Agency a fee equal to the total amount of such employee's annual cash and non-cash compensation as a reimbursement to Agency of its recruitment and training costs.  This Section shall survive termination or expiration of this Agreement.

   **9.**  **Choice of Law and Jurisdiction.**  This Agreement shall be construed in accordance with the laws of the State of California, regardless of any conflict of law rules. Any and all claims controversies, disputes, demands, counts, or causes of action arising out of, touching on, or relating to this Agreement (including, without limitation, its formation, performance, or alleged breach), shall be submitted to JAMS and shall be resolved exclusively by confidential binding arbitration in Los Angeles County, California, in accordance with the JAMS's rules for commercial arbitration by one arbitrator appointed in accordance with said rules. The arbitrator shall apply California law, without reference to rules of conflicts of law or rules of statutory arbitration, to the resolution of any dispute. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, the parties may apply to any court of competent jurisdiction for preliminary or interim equitable relief, or to compel arbitration in accordance with this paragraph, without breach of this arbitration provision.

Doc ID: bf6674b23d2ace529a1efb87bbec52c31e75bb93

CONFIDENTIAL CHURLEY_00000022

**THE AGENCY GROUP PR**

    **10.**    **Compliance with Laws.** Client and Agency shall comply with, and be in compliance with, all applicable federal, state and municipal statutes, laws, ordinances and regulations, including, without limitation, those relating to privacy, security, environment, Occupational Safety and Health Administration, labor standards, and any required permits, licenses and certifications.

    **11.**    **Survival.** The respective rights and obligations of the parties set forth in this Agreement shall survive the expiration or termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

    **12.**    **General**. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof, supersedes all prior understandings and agreements relating thereto, and may not be modified except by a written agreement signed by both of parties. The language contained herein shall be construed as a whole according to its fair meaning, and neither party shall be deemed the draftsman of this Agreement or any part hereof, for purposes of any litigation which may arise hereafter between the parties. If any provision or portion of this Agreement shall be held for any reason to be unenforceable or invalid, the remainder of this agreement shall remain valid and enforceable between the parties just as if the provision held to be invalid or unenforceable had never been included in the Agreement. The section headings contained herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement. Client shall not assign, transfer, delegate, or subcontract any of its rights or obligations under this Agreement without the prior written consent of Agency. Any purported assignment or delegation in violation of the foregoing shall be null and void. Agency may at any time assign or transfer any or all of its rights or obligations under this Agreement without Client's prior written consent. Nothing contained herein shall be construed to constitute a partnership or joint venture between the parties. This Agreement hereto may be executed in multiple counterparts, each of which shall be deemed an original, and all of which shall constitute but one agreement. Copies of this Agreement, including any emailed PDF or copies, may be used in lieu of the originals for all purposes.

Your signature below confirms that you, as an authorized representative of Client, enter into this Agreement on behalf of Client.

| ACCEPTED AND AGREED: | ACCEPTED AND AGREED: |
|---|---|
| **WAYFARER STUDIOS** | **THE AGENCY PR GROUP LLC** |
| By: _[signature]_ | By: _Melissa Nathan_ |
| Name: Jamey Heath | Name: Melissa Nathan |
| Title: CEO | Title: Founder & CEO |

Doc ID: bf6674b23d2ace529a1efb87bbec52c31e75bb93

CONFIDENTIAL    CHURLEY_00000023

**THE AGENCY GROUP PR**

## SCOPE OF WORK (SOW)

Our approach will include the following elements:

**CRISIS PREVENTION & MITIGATION**

Support Justin Baldoni, Wayfarer Studios and its applicable executives with independent strategic counsel and perspective.
- Curate statements, background information, and talking points for press reflecting the company's core values, key messaging and the integral role they played to bring this film to life.
- Develop a comprehensive scenario planning document outlining a series of potential outcomes
- with a suggested course of action for each variable.
- Catalog third party validators from the crew, previous projects, and other industry peers to
- establish credibility around the narrative and help shape perception in the press.
- Provide input on specific inquiries and liaise with reporters to mitigate negative stories/correct
- inaccuracies.
- Monitor coverage and social conversations, correcting and updating stories & headlines in real
- time.

**BRANDING & MESSAGING**

As needed, our team can be helpful in identifying and supporting future proactive opportunities to further assuage any potential negativity. These efforts will include:
- Align with Jonesworks and team on the timeline for the coming months to establish key moments and determine accessible opportunities.
- Support Jonesworks in media management as appropriate, to ensure Justin, the company, and its team are positioned in a positive light.
- Define target audiences and identify areas of focus and sensitivity.
- Review, refine, and help to create all existing communications materials and incorporate
- consistent, unified messaging, including but not limited to, boilerplates, talking points, press
- releases, statements, event and appearance materials, promotional language, and more.
- Curate statements, background information, and responses for press.
- Provide input on press inquiries as appropriate and liaise with reporters through this time of
- crisis to filter through opportunities and determine which are valuable to Justin, Wayfarer
- Studios, and executives' overall profiles and reputations.
- Manage and oversee any potentially negative stories and correct inaccuracies, as necessary.
- Work with Jonesworks and team to monitor relevant coverage and social conversations while
- flagging, correcting, and updating as needed, adding statements, and background items, and
- more in real time.
- Perform media training and prep sessions by drafting and reviewing talking points and
- facilitating a mock interview experience, as necessary.

Doc ID: bf6674b23d2ace529a1efb87bbec52c31e75bb93

CONFIDENTIAL                                                                                          CHURLEY_00000024



Audit trail

| | |
|---|---|
| Title | TAG Agreement / PR Engagement / Execution Copy |
| File name | Wayfarer_Studios_...ter_-_Updated.pdf |
| Document ID | bf6674b23d2ace529a1efb87bbec52c31e75bb93 |
| Audit trail date format | MM / DD / YYYY |
| Status | • Signed |

## Document History

**SENT** — 08 / 03 / 2024  02:20:13 UTC
Sent for signature to Jamey Heath
IP: 76.32.233.14

**VIEWED** — 08 / 03 / 2024  07:06:05 UTC
Viewed by Jamey Heath
IP: 76.95.35.44

**SIGNED** — 08 / 03 / 2024  07:06:16 UTC
Signed by Jamey Heath
IP: 76.95.35.44

**COMPLETED** — 08 / 03 / 2024  07:06:16 UTC
The document has been completed.

Powered by Dropbox Sign