**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY,<br><br>    Plaintiff,<br><br>  v.<br><br>WAYFARER STUDIOS LLC, et al,<br><br>    Defendants. | No. 24-cv-10049 (LJL) (lead case)<br>No. 25-cv-449 (LJL) (member case) |
| JENNIFER ABEL,<br><br>    Third-Party Plaintiff,<br><br>  v.<br><br>JONESWORKS LLC,<br><br>    Third-Party Defendant. | |
| WAYFARER STUDIOS LLC, et al.,<br><br>    Consolidated Plaintiffs,<br><br>  v.<br><br>BLAKE LIVELY, et al.<br><br>    Consolidated Defendants. | |

**PLAINTIFF BLAKE LIVELY'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION FOR SPOLIATION SANCTIONS**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1
II. ARGUMENT .................................................................................................................... 2
    A. The Undisputed Record Confirms Each Defendant Had a Duty to Preserve Ephemeral Communications and No Reasonable Steps Were Taken. ................... 2
    B. The Undisputed Record Establishes that Each Defendant Used Signal and that Ephemeral Communications Once Existed. ................................................... 5
    C. Defendants' Spoliation Has Prejudiced Ms. Lively................................................ 6
    D. The Wayfarer Parties are Responsible for the Wallace Parties' Spoliation........... 7
    E. Defendants Intended to Deprive Ms. Lively of Discoverable Evidence. .............. 9
III. CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................................................. 5

*Bruin v. Swank*,
  2025 WL 289679 (W.D. Ky. Jan. 24, 2025) ....................................................................... 7

*CAT3, LLC v. Black Lineage, Inc.*,
  164 F. Supp. 3d 488 (S.D.N.Y. 2016) ................................................................................. 7

*F.T.C. v. Noland*,
  2021 WL 3857413 (D. Az. Aug. 30, 2021) ...................................................................... 10

*Fashion Exchange LLC v. Hybrid Promotions, LLC*,
  2019 WL 6838672 (S.D.N.Y. Dec. 16, 2019) ..................................................................... 9

*Funk v. Belneftekhim*,
  2019 WL 7603139 (E.D.N.Y. Jan. 17, 2019) ..................................................................... 8

*GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*,
  282 F.R.D. 346 (S.D.N.Y. Apr. 20, 2012) .......................................................................... 8

*Hawley v. Mphasis Corp.*,
  302 F.R.D. 37 (S.D.N.Y. 2014) ........................................................................................... 3

*Herzig v. Ark. Foundation for Med. Care, Inc.*,
  2019 WL 2870106 (W.D. Ark. July 3, 2019) ................................................................... 10

*In re Google Play Store Antirust Litig.*,
  664 F. Supp. 3d 981 (N.D. Cal. 2023) ................................................................................ 7

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................................................ 8

*In re NTL, Inc. Sec. Litig.*,
  244 F.R.D. 179 (S.D.N.Y. 2007) ........................................................................................ 8

*Leidig v. Buzzfeed, Inc.*,
  2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ..................................................................... 7

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ..................................................................... 3

*Moody v. CSX Transp., Inc.*,
  271 F. Supp. 3d 410 (W.D.N.Y. 2017) ............................................................................. 10

*Pable v. Chicago Transit Auth.*,
  2023 WL 2333414 (N.D. Ill. Mar. 2, 2023) ........................................................................ 7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Ronnie Van Zant, Inc. v. Pyle*,
   270 F. Supp. 3d 656 (S.D.N.Y. 2017),
   *rev'd on other grounds*, 906 F.3d 253 (2d Cir. 2018) ..............................................................8, 9

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394 (S.D.N.Y. 2015) ......................................................................................3

*WeRide Corp. v. Kun Huang*,
   2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .........................................................................7

**RULES**

Fed. R. Civ. P. 37(e) ...................................................................................................................1, 7

Fed. R. Civ. P. 37(e)(1) ...................................................................................................................5

Fed. R. Civ. P. 37(e)(2) ...............................................................................................................9, 10

Fed. R. Evid. 403 ............................................................................................................................7

I.      **INTRODUCTION**

In their Opposition, Defendants admit that they took no steps to preserve ephemeral communications prior to December 20, 2024, and that these communications have been irretrievably destroyed. The ephemeral communications facilitated a means by which Defendants could speak quickly, candidly, and (most importantly) covertly (as Melissa Nathan, acknowledged, "***when we send over documents, we can't send over the work we will or could do because that could get us in a lot of trouble***"). None of Defendants' excuses for their failure to preserve pass muster. ***First***, Defendants' argument that they anticipated litigation only as to Ms. Lively's *harassment* claims, but not *retaliation*, is entirely disingenuous, and plainly wrong on the facts and the law. It ignores the fact that in the November 9, 2023 Protections Document, Ms. Lively cautioned Wayfarer against ***retaliation in its many possible forms***, including "changes in attitude, sarcasm, marginalization or other negative behavior, either on set or otherwise, including during publicity and promotional work," and warned such conduct would be met with immediate ***action***. Instead of heeding this warning, Defendants treated it like a roadmap and promptly set about retaliating in each of the ways described. (Dkt. No. 1064, at 19-35.) The Protections Document (which *each Defendant received*), along with others referenced in the Motion, provided as much notice of potential litigation on the issue of retaliation as it did of harassment. ***Second***, in a cynical attempt to benefit from their own misconduct, Defendants argue that Ms. Lively has failed to demonstrate the *contents* of the destroyed ephemeral communications—but Rule 37(e) does not require such a showing, nor could it since it would enable bad actors to avoid liability for their wrongdoing by using their own destructive activities as a shield. Obviously, the contents cannot be demonstrated because they were destroyed. That's the whole point. ***Third***, Defendants argue that Ms. Lively has not suffered prejudice because she noted there is "substantial evidence" of retaliatory conduct and, as such, the lost communications would be "unnecessarily cumulative."

But Defendants ignore their own repeated and loud proclamations that they *did nothing* to further any Digital Campaign and were only "monitoring"—if unchecked, they could describe this "monitoring" in whatever way they want, safe from the risk of impeachment by contrary documentary evidence, having conveniently destroyed it. This is textbook prejudice, which can only be mitigated by a limiting instruction. ***Finally***, Defendants' argument that they lacked the requisite intent ignores each of their own admissions—that they anticipated litigation no later than August 2024 and took no steps to preserve these destroyed communications. In fact, Defendants confirm that at any point, Signal chats could have been preserved with the flick of a switch—their decision not to was deliberate, and the very reason they used Signal, warranting severe sanctions.

## II.   ARGUMENT

### A.   The Undisputed Record Confirms Each Defendant Had a Duty to Preserve Ephemeral Communications and No Reasonable Steps Were Taken.

Defendants' Opposition confirms they took no steps to preserve their ephemeral communications. Instead, they argue that they had no duty to preserve. (Opp. 20-22.) This argument not only ignores settled Second Circuit precedent (*see* Mot. at 18 (collecting cases)), but also Ms. Lively's unrebutted evidence. Among other things, Defendants do not dispute (and therefore concede) that Wayfarer, IEWU, Baldoni, Sarowitz, Heath, and Abel received the Protections Document in November 2023 and that the Protections Document constituted a "demand letter," for preservation purposes.[1] (Mot. at 18.) Defendants also do not dispute that, in their written interrogatory responses, they admitted that litigation was possible "in or around mid-August 2024." (Mot. at 13.) These admissions confirm that by no later than mid-August 2024 (and

---

[1] At several points in their Opposition, Defendants baldly claim that their agreement "to the 'Protection' resolved the issues that had arisen during Phase 1 and eliminated the threat of potential litigation." (Opp. at 10; *see also* Opp. at 21-22.) These claims are not supported by any facts or evidence and are plainly undermined by the underlying allegations in the present matter.

2

as early as November 2023) a duty to preserve was triggered. *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 407-08 (S.D.N.Y. 2015). None of this is contested by Defendants. Rather, the crux of their argument rests on the dubious assertion that "the only litigation that could have been anticipated in August 2024 involved Lively's objections in Phase 1," which somehow excuses them from any preservation obligations. (Opp. at 21.) This argument is simply baseless.

***First***, Defendants' contention that their duty to preserve was limited *only* to Ms. Lively's harassment claims finds no legal support; in fact, they cite no authority for this extremely narrow interpretation of the duty to preserve. (Opp. at 21.) Nor could they. Courts within this Circuit have repeatedly recognized that this duty is a "broad concept" that applies to "all relevant documents," which in this case would clearly encompass Ms. Lively's retaliation claims. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *10 (S.D.N.Y. Mar. 12, 2018) (rejecting defendants' duty to preserve argument as "too narrow"); *see also Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014) (the duty to preserve requires a party to preserve evidence that "may be relevant to future litigation . . . which is 'an extremely broad concept.'").

***Second***, any actions taken in response to the Protections Document and communications relating to the *anticipated plaintiff* (Ms. Lively) should have been preserved. Illustrating this point: during a July 25, 2024 meeting between TAG and Wayfarer (specifically, Defendant Heath and Tera Hanks), Wayfarer discussed, among other things, (i) the Protections Document; (ii) the January 2024 "all hands" meeting; (iii) the ***"incidents" and "misdemeanors" involving Defendants Baldoni and Heath***; and (iv) ***Defendant Baldoni's concern "about being cancelled."*** (Hudson Reply Decl., Ex. 56 (KCASE_000005773) (emphasis added).) By July 2024, Defendants were *still* discussing Ms. Lively's harassment claims—now in the context of a crisis PR strategy designed to proactively prevent Defendants Baldoni and Heath from being "cancelled." And

3

because *retaliation* was plainly an issue that Defendants were warned would be the subject of any litigation, they cannot now pretend they did not understand that in the midst of undertaking the precise retaliatory conduct about which they had been warned. In fact, they understood the risks perfectly well, which is why they repeatedly stressed the need to avoid putting things in writing, and further why they moved to Signal—to cover their tracks and avoid creating a litigation record.

*Finally*, Defendants argue that "[t]here is no evidence that prior to December 20, 2024, Nathan had reason to anticipate litigation involving her crisis management activities on behalf of the Wayfarer [Defendants]." (Opp. at 22.) This argument ignores the fact that (i) by early June 2024, Wayfarer was assembling a "timeline doc" of each "alleged incident" that involved Ms. Lively, as well as "ZINGERS" intended to attack Ms. Lively's reputation—this document, which is effectively a litigation roadmap, was provided to TAG, Abel and Nathan on July 31, 2024, (*see* Hudson Decl., Exs. 14, 17; *see also* Hudson Reply Decl., Ex. 57 (ABEL_000005622)); (ii) the TAG Defendants were aware of Ms. Lively's harassment complaints by June 17, 2025, when the TAG Defendants received a copy of the Protections Document, and no later than July 25, 2024, when the TAG Defendants attended the TAG-Wayfarer meeting (*see* Hudson Reply Decl. Ex. 56 (KCASE_000005773)); (iii) the TAG Defendants, themselves, acknowledged that litigation was anticipated by mid-August 2024, and knew that they needed to cover their tracks (*see* Hudson Decl., Exs. 52, 54; *see also* Ex. 18); and (iv) the TAG Defendants were responsible for facilitating meetings with Mr. Freedman, when litigation was forthcoming, (*see* Hudson Decl., Ex. 29).

Ignoring all relevant context, Defendants argue that there is "not a whit of evidence that the 'war'" referenced by Ms. Nathan was "linked to Lively's discrimination claims." (Opp. at 22.) But Defendants omit from their papers that this reaction—to "go to war"—was made in response to Ms. Lively's request that Defendants Baldoni, Heath, and Wayfarer issue a public statement

apologizing for their misconduct on set, which followed a vicious and viral online hate campaign directed not just at Ms. Lively, but other female cast members, that was confounding given the Film's remarkable box office success. (*See* Hudson Decl., Ex. 29 (Aug. 12, 2024 Text Message from Abel to Nathan, "Blake and Ryan want Justin to put out a statement"); Ex. 32 (Aug. 13, 2024 Text Message from Ms. Toskovic to Heath, sharing the draft statement).)

B. **The Undisputed Record Establishes that Each Defendant Used Signal and that Ephemeral Communications Once Existed.**

Defendants attempt to pass blame onto Ms. Lively for purportedly failing to demonstrate that "Defendants deleted Signal chats *evidencing that they executed the public/relations/crisis management strategy*." (Opp. at 23 (emphasis added).) But Defendants' argument on this score turns Rule 37's standard on its head: Ms. Lively is not required to provide the *contents* of the communications Defendants destroyed, but only their *existence*. *See, e.g., Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (issuing spoliation sanctions and adverse inference because "neither Apple nor the Court may ever know the contents of any destroyed Samsung emails"). Indeed, in *Barbera v. Grailed, LLC*, this Court issued spoliation sanctions under Rule 37(e)(1), notwithstanding that "the nature of the deletions makes it impossible to identify with certainty what documents were destroyed." 2025 WL 2098635, at *7 (S.D.N.Y. July 25, 2025). Put simply, the applicable inquiry here is whether relevant ESI existed and was destroyed. *Id.* The answer to each question is yes.

There is overwhelming proof that Defendants spoliated communications. Each Defendant admitted in interrogatory responses to using Signal to discuss, among other things, "*the Digital Campaign*, Ms. Lively, Mr. Reynolds, [or] the Film." (Hudson Decl., Exs. 49-54 (emphasis added); Hudson Reply. Decl., Exs. 58-59.) Further, the Wallace Parties admitted to the existence of these communications and further explained that "[b]y operation of Signal's [auto-deletion]

5

settings, any potentially responsive messages were deleted as a matter of course." (Dkt. No. 707, at 6.) This Court has already found that "[i]t is undisputed that the Wayfarer Parties used Signal to discuss topics relevant to this litigation." (Dkt. No. 711, at 12.) Discovery has only bolstered this Court's prior finding: (i) in party productions, documents were produced demonstrating the creation and use of Signal threads to discuss issues relating to the retaliatory campaign as early as August 7, 2024, (Mot. at 10) and (ii) at their respective depositions, Defendants Heath, Nathan, and Abel each testified to using Signal during the relevant period of time. (*Id.* at 11.[2]) These facts render the entire laundry-list of cases cited by Defendants inapposite—each of which turned on the movant's failure to demonstrate the purportedly spoliated documents even existed *ex ante*.

### C. **Defendants' Spoliation Has Prejudiced Ms. Lively.**

The evidence shows that Defendants, along with the Wallace Parties, turned to Signal in or around mid-August 2024 (*at the latest*)—at the same time the Digital Campaign was underway. (Mot. at 8-13; *see also* Dkt. No. 949-1.) The few documents that *were* preserved and produced by the Wallace Parties illustrate their abilities to, among other things, manipulate social media engagements and website traffic for clients, as well as how easily they were able to conceal their hand in those efforts. (Mot. at 8). That the key ephemeral communications (including those with the Wallace Parties) were not preserved establishes clear prejudice to Ms. Lively—and deprives her of the ability to test and rebut the counternarratives that Defendants have continued to advance. In their Opposition, Defendants do not address the examples of prejudice identified by Ms. Lively; instead, they focus on the "substantial evidence" referenced in the opening brief and argue that this

---

[2] As for Baldoni, he testified that he used Signal to talk to a support group prior to December 2024, but the evidence in this case has shown that he sent texts to his support group directly about the harassment allegations in November 2023 and January 2024, at minimum. (Hudson Reply Decl., Exs. 60-61.). It defies reason to suggest that he was talking with a support group in the fall of 2024 *on Signal* in the height of this dispute, and never once discussed Lively.

6

somehow "rebuffs the notion of prejudice." (Opp. at 24.[3]) But, again, Defendants miss the point—they have compromised Ms. Lively's ability to rebut and refute Defendants' defenses. This is especially so with respect to their assertion that the only work they were doing is "monitoring," which courts (including this Court) have recognized as establishing prejudice. *Barbera*, 2025 WL 2098635, at *9; *Pable v. Chicago Transit Auth.*, 2023 WL 2333414, at *34 (N.D. Ill. Mar. 2, 2023) (prejudice where plaintiff "deprived the CTA of the ability to use the messages to rebut or refute Pable's claimed whistleblower status or any exculpatory testimony") (collecting cases); *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *11 (N.D. Cal. Apr. 24, 2020) (prejudice based on the plaintiff's inability to "test" the defendant's "explanation with [the spoliated] internal communications."). Ms. Lively has been deprived of the digital trail that would allow her to test, counter, and contextualize Defendants' insistence that they did nothing other than "monitoring."

Finally, relying upon Rule 403 of the Federal Rules of Evidence, Defendants argue there is no prejudice since the ephemeral communications that they failed to preserve would be "needlessly cumulative." (Opp. at 24.[4]) But the loss of "needlessly cumulative" evidence, in and of itself, supports a finding of prejudice. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (even if "cumulative," spoliated evidence can cause substantial prejudice since it deprives a party of the ability to "present the overwhelming quantity of evidence it otherwise would have to support its case.'" (cleaned up)).

### D. The Wayfarer Parties are Responsible for the Wallace Parties' Spoliation.

The Wayfarer Parties attempt, but fail, to relieve themselves of responsibility for the

---

[3] Defendants improperly shift the burden to Ms. Lively to demonstrate prejudice; however, it is well-settled that "[i]t is . . . not plaintiffs' burden to prove prejudice." *See In re Google Play Store Antitrust Litig.*, 664 F.Supp.3d 981, 994 (N.D. Cal. 2023) (citing Fed R. Civ. P. 37(e), Advisory Committee Note, 2015 Amendment).
[4] Defendants' reliance upon the Federal Rules of Evidence is entirely inapplicable to evaluating prejudice under Rule 37(e) of the Federal Rules of Civil Procedure. *See Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) (recognizing that Rule 37(e) "governs sanctions for spoliation of ESI."); *see also Bruin v. Swank*, 2025 WL 289679, at *5 (W.D. Ky. Jan. 24, 2025) ("The Federal Rules of Evidence contain no spoliation rule.").

Wallace Parties' spoliation. Courts in this Circuit have held that a party may be liable for spoliation based on the actions of a non-party within his or her control. *See Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 669 (S.D.N.Y. 2017) (issuing adverse inference based on non-party's failure to preserve text messages), *rev'd on other grounds*, 906 F.3d 253 (2d Cir. 2018); *see also Funk v. Belneftekhim*, 2019 WL 7603139, at *5-6 (E.D.N.Y. Jan. 17, 2019) (issuing preclusion sanctions based on non-party's failure to preserve medical records). "The concept of control has been construed broadly" and "documents are considered to be under a party's control if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement." *Ronnie Van Zant*, 270 F. Supp. 3d at 669 (quoting In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 & n.19 (S.D.N.Y. 2007) and *In re NASDAQ Mkt. Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (cleaned up)). While determining "control" is not an "exact science," courts have taken a "common sense" approach. *See Funk*, 2019 WL 7603139, at *5; *see also GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y. Apr. 20, 2012) (third-party documents were within plaintiff's "practical control," notwithstanding absence of "legal control," since there was "little doubt that [third-party] would have complied with a timely request by [the plaintiff] to preserve its information."). The court's decision in *Ronnie Van Zant* is instructive. There, the court determined control was established, for spoliation purposes, where the non-party (i) was contracted to work for the defendant on a film underlying the litigation; (ii) had been working closely with the defendant "for over the past year"; (iii) actively participated in discovery; and (iv) had a financial interest in the outcome of the litigation. 270 F. Supp. 3d at 668-70. Upon finding control, the court held spoliation sanctions were appropriate against the defendant, based upon the non-party's actions, which included "getting a new phone after Plaintiffs brought the instant action and managing to back-up pictures but, somehow, not text messages." *Id.* at 670.

8

Here, the relationship between Wayfarer and the Wallace Parties supports a similar "common sense" finding that the Wallace Parties' ephemeral communications were within Wayfarer's control. Among other things, (i) Wayfarer hired the Wallace Parties to "support" Wayfarer's crisis PR team, (Hudson Reply Decl., Ex. 62 (Heath Dep. Tr. Vol. I, 332:25-333:6, 333:15-23); (ii) Wayfarer paid the Wallace Parties for their "Digital Consulting Strategy and Services," (*see* Hudson Reply Decl., Exs. 63 (STREET 1.000008), 64 (STREET 1.000084); 65 (STREET 1.000087); 66 (STREET 1.000089); (iii) Wayfarer and the Wallace Parties share the same counsel, Liner Freedman Taitelman + Cooley, LLP, (Hudson Reply Decl., Ex. 67 (ABEL_000021588); (iv) Mr. Freedman has been the Wallace Parties' lawyer since 2020, (Mot. at 10 n.8); (v) Wayfarer is paying the Wallace Parties' legal defense fees, (Hudson Reply Decl., Ex. 68 (Wallace Dep. Tr. Vol. II, 15:6-8); and (vi) since at least August 11, 2024, Wayfarer knew of Wallace's use of Signal. (Hudson Decl., Ex. 28.) As such, the Wayfarer Parties should remain liable for the Wallace Parties' separate spoliation. *See Van Zant*, 270 F. Supp. 3d at 669.

### E. Defendants Intended to Deprive Ms. Lively of Discoverable Evidence.[5]

Defendants ignore almost entirely the evidence presented by Ms. Lively that demonstrates their intentional use of ephemeral communications, as part of their "untraceable" plan. (Mot. at 5-13, 21-22.) Instead, they point to steps they took to preserve Signal communications *after* December 20, 2024, as disproving the "notion" that they acted with "culpable intent." (Opp. at 25.) Defendants admit that they were always capable of preserving these communications, but only began taking the appropriate preservation steps once the lawsuit was filed. (*Id.*) This does not excuse them of wrongdoing but is, in fact, further proof of their "conscious dereliction of a known duty to preserve electronic data." *Fashion Exchange LLC v. Hybrid Promotions, LLC*, 2019 WL

---

[5] In their Opposition, the Wayfarer Parties commit two separate sections to addressing the requisite intent for sanctions under Rule 37(e)(2), (*see* Opp. at 25, 26-30). Ms. Lively addresses these arguments together.

6838672, at *5 (S.D.N.Y. Dec. 16, 2019) (cleaned up). Further, the unrebutted record unequivocally demonstrates that Defendants acted with the requisite level of intent for purposes of Rule 37(e)(2) sanctions. *See Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017). Each of the factors identified by *Moody* are established: (i) ephemeral communications existed and would have been relevant to this dispute (Dkt. No. 711, at 12); (ii) Defendants took no steps to preserve their ephemeral communications, despite anticipating litigation, (Mot. at 4-5, 13-15, 17-19); and (iii) there is no credible explanation for the lost ephemeral communications as not involving bad faith. (*Id.* at 9-12, 21-22).

The timing of Defendants' use of Signal communications removes all doubt as to bad faith: by mid-August 2024 Defendants knew litigation was reasonably foreseeable and made the deliberate decision to then communicate through ephemeral channels. In fact, they expressly acknowledged the need to cover their tracks, knowing that documenting their actual work "***could get us in a lot of trouble***." (Hudson Decl., Ex. 18 (emphasis added).) This demonstrates bad faith. *See Moody*, 271 F. Supp. 3d at 431; *Herzig v. Ark. Foundation for Med. Care, Inc.*, 2019 WL 2870106, at *4 (W.D. Ark. July 3, 2019); *F.T.C. v. Noland*, 2021 WL 3857413, at *12-13 (D. Az. Aug. 30, 2021). If Defendants were truly engaged in run-of-the-mill PR work, there would be no reason to think that their activities, if exposed, could have gotten them in a "lot of trouble." Instead, their own documents confirm that an "[i]ntegral part" of the "crisis management strategy" was that it be executed without "fingerprints." (Hudson Decl., Ex. 24.) Defendants used ephemeral communications as part of their retaliatory Digital Campaign—so as to avoid being used against them as part of a legal claim. (Mot. at 9-13.) This is precisely the type of misconduct Rule 37(e)(2) is intended to address. *See Moody*, 271 F. Supp. 3d at 431-32 (collecting cases).

### III. <u>CONCLUSION</u>

For the foregoing reasons, Ms. Lively's motion for spoliation sanctions should granted.

| | |
|---|---|
| Dated: December 8, 2025 | /s/ *Esra A. Hudson* |
| WILLKIE FARR & GALLAGHER LLP<br>Michael J. Gottlieb<br>2049 Century Park East<br>Los Angeles, California 90067<br>(310) 855-3000<br>mgottlieb@willkie.com<br><br>Kristin E. Bender<br>1875 K Street NW<br>Washington, DC 20006<br>(202) 303-1000<br>kbender@willkie.com<br><br>Aaron Nathan<br>Michaela A. Connolly<br>787 7th Avenue<br>New York, NY 10019<br>(212) 728-8000<br>anathan@willkie.com<br>mconnolly@willkie.com<br><br>DUNN ISAACSON RHEE LLP<br>Meryl C. Governski (admitted *pro hac vice*)<br>401 9th Street NW<br>Washington, DC 20004<br>(202) 240-2927<br>mgovernski@dirllp.com | MANATT, PHELPS & PHILLIPS, LLP<br>Esra A. Hudson (admitted *pro hac vice*)<br>Stephanie A. Roeser (admitted *pro hac vice*)<br>Sarah E. Moses (admitted *pro hac vice*)<br>2049 Century Park East, Suite 1700<br>Los Angeles, California 90067<br>(310) 312-4000<br>ehudson@manatt.com<br>sroeser@manatt.com<br>smoses@manatt.com<br><br>Matthew F. Bruno<br>7 Times Sq<br>New York, NY 10036<br>(212) 790-4500<br>mbruno@manatt.com |

*Attorneys for Plaintiff Blake Lively*

11