UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
BLAKE LIVELY,                                             :
                                                          :
                              Plaintiff,                  :
                                                          :
       -v-                                                :
                                                          :
WAYFARER STUDIOS LLC, et al.,                             :
                                                          :
                              Defendants.                 :
                                                          :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/27/2026

24-cv-10049 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Consolidated Defendants Leslie Sloane ("Sloane") and Vision PR, Inc. ("Vision," and with Sloane, the "Sloane Parties") move, pursuant to Federal Rule of Civil Procedure 54(d), New York's anti-SLAPP law, and the Court's inherent powers, for an award of attorneys' fees and costs. Dkt. No. 370.

## BACKGROUND AND PROCEDURAL HISTORY

On January 16, 2025, Consolidated Plaintiffs Wayfarer Studios LLC, Justin Baldoni ("Baldoni"), Jamey Heath, It Ends With Us Movies LLC, Melissa Nathan ("Nathan"), and Jennifer Abel (collectively, the "Wayfarer Parties") sued Sloane and Vision, asserting claims for civil extortion, defamation, and false light invasion of privacy. *Wayfarer Studios LLC v. Lively*, Case No. 25-cv-449, Dkt. No. 1 ("Compl.") ¶¶ 287–310 (S.D.N.Y. filed Jan. 16, 2025). The Wayfarer Parties repeated their allegations in an amended complaint filed on January 31, 2025. Dkt. No. 50 ("AC") ¶¶ 316–339. The Wayfarer Parties' defamation claim against the Sloane Parties was based on the allegation that, after December 20, 2024, Sloane falsely told a reporter

for the Daily Mail that Baldoni had sexually assaulted the actress Blake Lively ("Lively").

Compl. ¶ 191; AC ¶ 193.[1]

It appears that the accusation against the Sloane Parties was false. It may have been knowingly false. The allegation is based on a text message between Nathan and the Daily Mail reporter, relating to conduct on the set of the film It Ends With Us. Compl. ¶ 191; AC ¶ 193. At one portion of the text exchange, the reporter states to Nathan, referring to Baldoni and Lively:

> She said the whole cast hits Justin this has nothing to do with Blake and now she's saying that Blake was sexually assaulted. Why wouldn't she say anything about that then? She knows she is full of shit. She told me that the whole issue was that everybody hates Justin. Nothing about Blake and Justin. She said it has nothing to do with Blake. Bullshit

Compl ¶ 191; AC ¶ 193. The complaint and amended complaint are based on the allegation that the "she" who has said that Lively was sexually assaulted was Sloane.

The reporter has since been identified as James Vituscka ("Vituscka"). The Sloane Parties submitted a declaration to this Court signed under oath by Vituscka on June 4, 2025. Dkt. No. 286-1. He states that the reference to sexual assault should have been to sexual harassment and that he obtained the information from a complaint that Lively had filed with the California Civil Rights Department ("CRD") accusing Baldoni of sexual harassment. Sloane never told him that Lively was the victim of sexual assault or sexual harassment. In particular, Vituscka swears as follows: (i) he is the Daily Mail reporter who authored the text message at paragraph 193 of the amended complaint; (ii) his use of the phrase "sexually assaulted" was a mistake and that the message should have said "sexually harassed"; (iii) the phrase was in reference to the allegations in the complaint that Lively filed with the Civil Rights Department in

---

[1] The Court dismissed the Wayfarer Parties' complaint by Opinion and Order of June 9, 2025 for failure to state a claim for relief. Dkt. No. 296; *see Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695 (S.D.N.Y. 2025).

2

California and not in reference to any conversation that he had with Sloane; (iv) Sloane never told him that Lively was sexually harassed or sexually assaulted by Baldoni or anyone else; and (v) the Wayfarer Parties and their counsel never consulted him about what he meant by his use of the term "sexually assaulted," and he did not authorize the Wayfarer Parties or their counsel to use his private text messages in their filings.  Dkt. No. 286-1.

With their initial motion, the Sloane Parties also submitted to the Court a text message from Vituscka to the Wayfarer Parties' lawyer, Bryan Freedman.  It reads:

> Hi Bryan.  This is James Vituscka.  I need to make it clear that I do not want to be involved in this lawsuit in any capacity.  Being part of this suit, or having any association with it, even if names are removed, will jeopardize my job and career.  Please ensure I am fully excluded and mention of daily mail in connection with myself before filing.

Dkt. No. 371-1.

The Sloane Parties have since submitted an additional declaration by Vituscka dated August 21, 2025.  Dkt. No. 684.  In that sworn declaration, Vituscka adds that he expressly told Nathan and Freedman on December 25, 2024, *i.e.* before the filing of the complaint and the amended complaint, that Sloane never told him that Lively was sexually harassed or sexually assaulted.  *Id.* ¶ 10.  That assertion is supported by a copy of a text message sent by Vituscka to Freedman and to Nathan on December 25, 2025, in which he tells the two that "never once" did Sloane say anything about sexual harassment or sexual assault.  Dkt. No. 684-1.  Vituscka states:

> By filing a lawsuit based on falsely casting me as the source of a sexual assault allegation, Mr. Freedman, his clients, and those apparently aligned or acting in concert with them have caused immense harm and, I believe, misled this Court.  They have damaged my reputation, cost me my employment, and undermined my career as a journalist.

Dkt. No. 684 ¶ 13.[2]

---

[2] Vituscka explains that his June declaration was prepared under "intense pressure" while he was employed by the *Daily Mail* and did not include everything that he wished to say.  *Id.* at ¶¶ 4–5.

3

Sloane has submitted a declaration.  Dkt. Nos. 372.  In her declaration, Sloane swears: (i) she works out of New York and her relationship with Lively is centered in New York; (ii) she never told Vituscka that Lively was sexually assaulted by Baldoni or anyone else; (iii) the first time she discussed Lively's sexual harassment allegations with a journalist was when Melissa Nathan's sister, Sara Nathan, texted her on August 8, 2024, and relayed that she heard about "three things" that Baldoni did on set that were, in her words, "all a bit creepy"; and (iv) as a result of the Wayfarer Parties' claims against her, she has "received an onslaught of public ridicule and intimidating messages" and has suffered severe emotional, physical, and professional damage.  *Id.*

### DISCUSSION

Sloane moves for attorneys' fees and costs under New York's anti-SLAPP statute and the Court's inherent powers.[3]

New York's anti-SLAPP law is "intended to deter actions filed to punish or harass a defendant for participating in public life."  *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022).  Among other things, it permits a defendant who has been sued in a covered action to recover damages, including costs and attorneys' fees, if such action was commenced or continued without a substantial basis in law or fact.  Two provisions of New York's anti-SLAPP statute are relevant here.  First, New York Civil Rights Law § 70-a(1) provides:

---

After he filed a whistleblower complaint about the pressure he received not to include the additional information, Vituscka was terminated by the *Daily Mail* and retained new counsel.  *Id.* ¶¶ 5–6.

[3] Sloane filed this motion on June 23, 2025.  Dkt. No. 370.  She also filed a memorandum of law and a declaration in support of the motion.  Dkt. Nos. 371–72.  The Wayfarer Parties filed a memorandum in opposition to the motion on July 7, 2025.  Dkt. No. 392.  Sloane filed a reply memorandum in further support of the motion on July 14, 2025.  Dkt. No. 420.  Sloane filed a sur reply on August 22, 2025, Dkt. No. 690, which referred to the second Vituscka declaration filed at Dkt. No. 684.  The Wayfarer Parties filed a sur-sur reply on August 26, 2025, Dkt. No. 705.

> A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:
>
> (a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules, that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law[.]

N.Y. Civ. Rights Law § 70-a(1). Second, subdivision (g) of New York Civil Practice Law and Regulations ("C.P.L.R.") section 3211, referenced in section 70(a)(1), provides in pertinent part:

> (g) Stay of proceedings and standards for motions to dismiss in certain cases involving public petition and participation.
>
> 1. A motion to dismiss based on paragraph seven of subdivision (a) of this section, in which the moving party has demonstrated that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation as defined in paragraph (a) of subdivision one of section seventy-six-a of the civil rights law, shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion.
>
> 2. In making its determination on a motion to dismiss made pursuant to paragraph one of this subdivision, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the action or defense is based. No determination made by the court on a motion to dismiss brought under this section, nor the fact of that determination, shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.
>
> 3. All discovery, pending hearings, and motions in the action shall be stayed upon the filing of a motion made pursuant to this section. The stay shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and upon a showing by the nonmoving party, by affidavit or declaration under penalty of perjury that, for specified reasons, it cannot present facts essential to justify its opposition, may order that specified discovery be conducted notwithstanding this subdivision. Such discovery, if granted, shall be limited to the issues raised in the motion to dismiss.

C.P.L.R. 3211(g)(1)-(3).

C.P.L.R. 3211(a)(7), referenced in Section 3211(g)(1), is New York's corollary to Rule 12(b)(6), and it provides for dismissal of a complaint where "the pleading fails to state a cause of action." C.P.L.R. 3211(a)(7). C.P.L.R. 3211(g)(1)–(3) was enacted by the New York legislature to provide "a vehicle through which defendants could expeditiously halt SLAPP claims and recover attorney's fees and costs without the burden of . . . protracted litigation." *Isaly v. Garde*, 213 N.Y.S.3d 852, 860–61 (N.Y. Sup. Ct. 2024), *appeal dismissed*, 243 N.Y.S.3d 7 (1st Dep't 2025).

The Sloane Parties assert that the New York anti-SLAPP statute applies and its elements are satisfied because Sloane's alleged statements regarding sexual misconduct concern the public interest and Baldoni is a public figure and the claims lack a substantial basis in law and fact, which entitles them to reasonable attorneys' fees and costs in the approximate amount of $1,300,000 in fees and $38,000 in costs. Dkt. No. 371 at 13–18. They assert in the alternative that they are entitled to their reasonable attorneys' fees and costs pursuant to the Court's inherent powers. *Id.* at 24–25. The Wayfarer Parties respond: (1) New York's anti-SLAPP law does not apply to the Wayfarer Parties' defamation claims which the Court evaluated on the motion to dismiss by applying the law of California, *see* Dkt. No. 296 at 41; (2) New York's anti-SLAPP law does not apply in Federal court; (3) the Sloane Parties cannot obtain relief under New York's anti-SLAPP law by way of a motion filed in federal court supported by the Court's decision to grant the Sloane Parties' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); and (4) their complaint was not filed without a substantial basis in law or fact. Dkt. No. 392 at 9–21, 23–25. The Wayfarer Parties also assert that Vituscka's "credibility is suspect." Dkt. No.

6

705 at 1.  Tellingly, the Wayfarer Parties do not dispute that Vituscka told them before they filed the complaint that Sloane had not made the allegedly defamatory statement.

The Court has concluded that the Wayfarer Parties' argument that the New York anti-SLAPP law does not apply in Federal court is without merit.  There is an emerging trend of cases favoring the application of the substantive standards of the New York anti-SLAPP statute in federal court.  *See Button v. N.Y. Times Co.*, 2025 WL 2643674, at *20 (S.D.N.Y. Sept. 15, 2025); *Heilbut v. Cassava Sci., Inc.*, 778 F. Supp.3d 551, 567–68 (S.D.N.Y. 2025); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 184–88 (S.D.N.Y. 2024); *see also Murchinson Ltd. v. Nano Dimension Ltd.*, 2025 WL 1397615, at *16 (S.D.N.Y. May 14, 2025).  The Court now joins that emerging consensus.  *See Grifols, S.A. v. Yu*, 2026 WL 836657, at *6 (S.D.N.Y. Mar. 26, 2026).  The substantive provisions of the New York anti-SLAPP statute do not violate the Rules Enabling Act or conflict with a Federal Rule of Civil Procedure.  The Court can put it no better than Judge Rochon did in *Heilbut*:

> To sum up, New York's anti-SLAPP law "is doing no procedural work" in the instant case; "it is merely defining the substantive standard for entitlement to" a state-law remedy.  *Bobulinski v. Tarlov*, 758 F.Supp.3d 166, 186 (S.D.N.Y. 2024).  Plaintiffs are not relying on the New York anti-SLAPP regime's expedited motion-to-dismiss or summary-judgment mechanisms—they are asserting affirmative claims based on a substantive cause of action created by the New York Legislature, a routine exercise in federal diversity cases.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 142 n.2 (2d Cir. 2013) ("[A] federal court sitting in diversity must apply substantive law supplied . . . by state legislation . . . ."); *cf. Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 422 (S.D.N.Y. 2019) ("Simply put, it does not violate the Supremacy Clause for a federal court sitting in diversity to apply state substantive law." (citing *Erie*, 304 U.S. at 78)).  In this context, section 70-a's "substantial basis" language does not supply a pleading standard—it is a substantive provision that "impacts the 'rights and obligations of individuals within a given jurisdiction'" and does not answer the same question as Rules 12 or 56.  *Gonzalez*, 80 F.4th at 194 (quoting *Corley*, 11 F.4th at 85); *see Max v. Lissner*, No. 22-cv-05070 (VEC), 2023 WL 2346365, at *8 (S.D.N.Y. Mar. 3, 2023) (holding that the plaintiff could bring her New York anti-SLAPP claim in federal court because, among other reasons, she was not invoking its heightened pleading standard).  Accordingly, "a federal court sitting in diversity must apply"

7

section 70-a "because it is a substantive, rather than a procedural, provision." *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (citing *Adelson*, 774 F.3d at 809) (applying section 76-a, which, in relevant part, "requires public figures . . . to prove actual malice by clear and convincing evidence" in defamation cases).

*Heilbut*, 778 F. Supp. 3d at 567–68.

The Court has no occasion to consider whether New York or California law applies to the Sloane Parties' anti-SLAPP claim.[4] That the substantive provisions of the New York anti-SLAPP law may be applied in Federal court without violating *Erie* does not mean that the procedural rules of C.P.L.R. 3211(g)(1)–(2) permitting anti-SLAPP costs and attorneys' fees to be pursued by motion apply in Federal court any more than the stay provided by C.P.L.R. 3211(g)(3) applies in Federal court. *See Watson v. NY Doe 1*, 2023 WL 6540662, at *6 (S.D.N.Y. Oct. 6, 2023) (party can bring a counterclaim under the anti-SLAPP law in federal court, but cannot rely on the pleading standard of New York's anti-SLAPP law). Federal Rule of Civil Procedure 11, not CPLR 3211(g), is applicable when a motion is made for sanctions based on frivolous litigation in Federal court. *Cf. Brady v. NYP Holdings, Inc.*, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022) (denying request for anti-SLAPP sanctions made by way of motion as in conflict with Rule 11). Rule 11 requires that a factual contention must either have evidentiary support or, if it does not, be "specifically" identified as an allegation likely to have evidentiary support after "a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). It also provides for sanctions if a pleading is made for an improper purpose.

---

[4] California has its own anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16(a). It provides that SLAPP lawsuits "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* § 425.16(b)(1). The special motion to strike must be followed by "a hearing not more than 30 days after the service of the motion." *Id.* § 425.16(f). It further states that, subject to certain exceptions regarding how the cause of action is brought, "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." *Id.* § 425.16(c)(1), (2).

Fed. R. Civ. P. 11(b)(1).  If a party wishes to obtain relief in federal court under the New York anti-SLAPP statute, he or she must proceed by way of "an action, claim, cross claim or counterclaim."  N.Y. Civ. Rights Law § 70-a(1); *see Wang v. Sussman*, 2025 WL 2607155, at *4–6 (S.D.N.Y. Sept. 9, 2025).  "In the context of a standalone claim . . . a defamation plaintiff facing a bid for fees will have a right to pursue discovery, something that a CPLR 3211(g) motion provides for, but Rule 12 does not.  Of course, just as in state court, the chance of making an evidentiary showing that the 'substantial basis' standard is satisfied, where a prior defamation complaint failed to do so, may be remote. But importantly, the defamation plaintiff's rights won't vary based on whether they happen to find themselves in a state or federal forum."  Wang, 2025 WL 2607155, at *6; *cf  Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 3824394, at *22 (S.D.N.Y. Aug. 14, 2024), *aff'd sub nom. Lee v. Hong*, 2025 WL 3637495 (2d Cir. Dec. 16, 2025) (holding that request for attorneys' fees and costs in federal court under New York Judiciary Law § 487 must be brought as an action, not by motion, and the complaint must satisfy the standards of *Twombly* and *Iqbal* "and the defendant is entitled to the full panoply of rights accorded parties to a civil litigation").

Sloane alternatively seeks sanctions under the Court's inherent powers.  Sloane's submission, if credited, outlines a potentially troubling course of practice by the Wayfarer Parties or their counsel in this Court.  They allegedly filed a false claim in this Court by claiming that Sloane told Vituscka that Blake was "sexually assaulted," despite receiving texts from Vituscka prior to filing that affirmatively stated Sloane made no such statement.  Dkt. No. 50 ¶ 193; Dkt. No. 684.  In doing so, they made Sloane collateral damage in their battle against Lively.  The Court has inherent power to impose sanctions for bad faith conduct even where "the conduct

9

could also be sanctioned under the statute or the Rules." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

However, the Court must "exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.* In this case, Sloane could have followed the procedural requirements of Rule 11, served a copy of a sanctions motion on the Wayfarer Parties and given them an opportunity to withdraw the allegation, and then, only if the allegation was not withdrawn, filed a motion for Rule 11 sanctions. *See* Fed. R. Civ. P. 11(c). The timeline in this case confirms that Sloane could have pursued that course. On April 30, 2025, Sloane filed a discovery motion that included as an exhibit the December 2024 complaint filed by the Wayfarer Parties against the New York Times in California state court, which included at least one of the text messages from Vituscka that Sloane alleges demonstrates the falsity of the allegations against her. Dkt. No. 190-3 at 16. Sloane obviously had personal knowledge of what she said to the Daily Mail. If she believed that the Wayfarer Parties had engaged in sanctionable conduct, she could have raised it with them and then with the Court under Rule 11. She chose not to do so. In this case, thus, the Court will not allow inherent powers to substitute for the procedural mechanism under Rule 11.

## CONCLUSION

The motion of the Sloane Parties for attorneys' fees and costs is denied without prejudice to renewal by way of a formal action.

The Clerk of Court is respectfully directed to close Dkt. No. 370.


SO ORDERED.

Dated: March 27, 2026
      New York, New York

                                LEWIS J. LIMAN
                        United States District Judge

11