UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                       Plaintiff,<br><br>      v.<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,<br><br>                      Defendants. | Case No. 1:24-cv-10049-LJL<br>(consolidated with 1:25-cv-00449-LJL) |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE
AGENCY GROUP PR LLC'S MOTION FOR SUMMARY JUDGMENT**

---

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS REGARDING TAG .......................................................... 2

ARGUMENT ..................................................................................................................... 4

    I.     TAG CANNOT BE HELD DIRECTLY LIABLE FOR RETALIATION UNDER FEHA BECAUSE IT WAS NOT INVOLVED IN ANY FEHA-REGULATED ACTIVITIES............................................................................................................... 4

           A.  Liability Under FEHA Requires a Nexus to an Employment Relationship ..... 4

           B.  Direct Liability Under FEHA for Business-Entity Agents is Limited to Those Which Carry Out FEHA-Regulated Activities ..................................... 6

    II.    TAG IS NOT LIABLE FOR AIDING AND ABETTING A VIOLATION OF FEHA ................................................................................................................. 7

CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Ackoff-Ortega v. Windswept Pacific Enter. Co. (Inc.),*
  130 F.Supp.2d 440 (S.D.N.Y. 2000) ...................................................................... 10

*Alch v. Superior Court,*
  122 Cal. App. 4th 339 (Cal. Ct. App. 2004)........................................................... 7, 8

*Banco Nacional De Cuba v. Chase Manhattan Bank,*
  514 F. Supp. 5 (S.D.N.Y. 1980) ............................................................................. 10

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
  415 F.Supp.2d 261 (S.D.N.Y. 2005) ...................................................................... 10

*Janken v. GM Hughes Electronics,*
  46 Cal. App. 4th 55 (Cal. Ct. App. 1996)................................................................ 5, 8

*Jones v. Lodge at Torrey Pines P'ship,*
  42 Cal. 4th 1158 (2008)........................................................................................... 5, 7

*Malekzadeh v. Costco Wholesale,*
  2023 WL 4311262 (N.D. Cal. April 10, 2023)....................................................... 7, 8

*Mobley v. Workday, Inc.,*
  740 F. Supp. 3d 796 (N.D. Cal. 2024)..................................................................... 6, 9

*Radentz v. American Assoc. of Physician Spec., Inc.,*
  2014 WL 12601013 (C.D. Cal. Aug. 18, 2014) ...................................................... 8

*Raines v. U.S. Healthworks Med. Group,*
  15 Cal. 5th 268 (2023)............................................................................................. 6

*Reno v. Baird,*
  18 Cal. 4th 640 (1998)............................................................................... 4, 5, 7, 8

*Smith v. BP Lubricants USA Inc.,*
  64 Cal. App. 5th 138 (Cal. Ct. App. 2021).............................................................. 9

*Vernon v. State of California,*
  116 Cal App. 4th 114 (Cal. Ct. App. 2004)............................................................. 5

ii

**<u>Statutes</u>**

Cal. Gov't Code § 12920 ........................................................................................................ 5

Cal. Gov't Code § 12940(i) .................................................................................................... 8

As authorized by the Court during the conference on April 2, 2026, defendant The Agency Group PR LLC ("TAG") submits this memorandum of law in support of TAG's motion for summary judgment on plaintiff Blake Lively's ("Lively") Seventh Cause of Action for aiding and abetting of retaliation in violation of the California Fair Employment and Housing Act ("FEHA").

## INTRODUCTION

Lively's attempt to impose liability against TAG under FEHA suffers from a fatal flaw: FEHA liability has historically been applied only in scenarios that involve employment-related activities such as hiring, compensation and workplace standards. As discussed further below, the crux of a claim under FEHA is the employer-employee relationship.[1] Both the language of FEHA itself, as well as the cases that have evaluated who is liable under FEHA (either directly or as an aider and abettor), establish that FEHA's purpose is to protect employees who are subject to discrimination, harassment or retaliation in connection with their employment relationship. By contrast, TAG is a public relations firm retained by defendant Wayfarer Studios LLC ("Wayfarer") to protect its reputation, that of its co-founder Justin Baldoni ("Baldoni"), and that of the film "It Ends With Us" (the "Film"), in which it had invested millions of dollars. TAG was not involved in Lively's hiring, compensation, workplace standards or any other employment-related matters. Based upon the precedents discussed herein, TAG cannot be liable under FEHA because its role with respect to the issues herein was entirely separate from the employer-employee relationship.

It would be especially harmful for at least two public policy reasons to hold TAG potentially liable under FEHA. First, liability for retaliation under FEHA has historically been

---

[1] The Court has determined that Lively was an independent contractor. Dkt. 1273, p. 78. In its discussion of FEHA in its recent Opinion and Order, the Court treated Wayfarer (and It Ends With Us Movie LLC) as Lively's employer "not to suggest that there was an employer-employee relationship (there was not), but to conform to the language of the statute and caselaw, which use the term 'employer' even in cases involving independent contractors." *Id.*, p. 95. TAG utilizes the same approach herein.

restricted to activities involving the employer-employee relationship, therefore permitting a claim to proceed against TAG involving a FEHA violation would be fundamentally unfair. More importantly, such a decision would set a new precedent that an entity completely outside the employer-employee relationship could face future liability for retaliation under FEHA. This would have an understandably chilling effect on not only public relations firms, but also any other company that renders services for an employer. For good reason, companies would be reluctant to provide services that could somehow be held to adversely affect one or more of the employer's employees and potentially lead to liability against the companies under FEHA.

Finally, Lively's effort to impose backdoor liability via an "aiding and abetting" claim against TAG, when such liability cannot attach directly, should also be rejected. As discussed below, the cases examining aiding and abetting of a FEHA violation are similarly confined to the employer-employee context. Courts do not deviate from the employer-employee relationship when it comes to imposing aiding and abetting liability under FEHA.

For all these reasons, TAG's motion for summary judgment on the Seventh Cause of Action for aiding and abetting retaliation in violation of FEHA should be granted.

### STATEMENT OF FACTS REGARDING TAG[2]

In 2019, Baldoni obtained the rights to produce a film based on Colleen Hoover's best-selling novel "It Ends With Us" (heretofore defined as the "Film"). Dkt. 958 (56.1 ¶8); Dkt. 954-14 (Ex. 14). In December 2022, Lively, a well-known, prominent actor, was cast as the female lead. Dkt. 958 (56.1 ¶21); Dkt. 954-24 (Ex. 24 at 12); *e.g.*, Dkt. 954-20 (Ex. 20). After completion

---

[2] This Statement of Facts is an abbreviated version of the more expansive Statement of Facts contained within Defendants' Memorandum of Law in Support their Motion for Summary Judgment dated November 12, 2025. Dkt. 1242.

of the Film, during which various conflicts between Baldoni and Lively arose, Lively took steps to damage Baldoni's reputation, including: (1) unfollowing Baldoni on social media, encouraging the press and fans to suspect a "feud" (Dkt. 958 (56.1 ¶¶242, 262); Dkt. 520 (SAC ¶186 n.26); Dkt. 954-171 (Ex. 171 at -721)); (2) having her husband Ryan Reynolds ("Reynolds") tell their famous Hollywood friends that Baldoni belonged in "jail" (Dkt. 958 (56.1 ¶243); Dkt. 954-134 (Ex. 134)); (3) having Reynolds tell the Executive Chairman of WME, the powerful talent agency that represented Baldoni at the time, that Baldoni was a "thoroughbred predatory fraudster" (Dkt. 958 (56.1 ¶245); Dkt. 954-149 (Ex. 149)); (4) telling Colleen Hoover and another prominent author that Baldoni was a "narcissist" (Dkt. 958 (56.1 ¶243); Dkt. 954-147 (Ex. 147)); and (5) telling Sony, which co-produced and co-financed the Film, that she would not attend the Film's premiere if Baldoni was also present.  Dkt. 958 (56.1 ¶249); Dkt. 954-155 and 954-56 (Exs. 155-56).

In July 2024, in response to Lively's tactics preceding the premiere of the Film, Baldoni and Wayfarer entertained the concept of hiring a crisis communications team.  Dkt. 958 (56.1 ¶¶253-254); Dkt. 954-160 (Ex. 160 at 340:15-22).  On July 25, 2024, Baldoni met with TAG to discuss retaining the firm for crisis management.  Dkt. 958 (56.1 ¶256); Dkt. 954-164 (Ex. 164). Wayfarer reiterated that it did not want to take any "offensive" steps and that TAG's principal, Melissa Nathan, would not be "having any comms outside of our internal teams."  Dkt. 958 (56.1 ¶¶256-258); Dkt. 954-167 (Ex. 167).  On August 2, 2024, TAG circulated a "Scenario Planning" document listing a series of possible options for responding to the public relations crisis facing Baldoni and Wayfarer. Dkt. 958 (56.1 ¶260); Dkt. 954-168 (Ex. 168); Dkt. 954-169 (Ex. 169 at 111:18-112:4).

After media outlets began publishing stories about the "feud" between Lively and Baldoni (56.1 ¶269), Baldoni's public relations team, including TAG, distributed positive information and

3

stories about Baldoni and worked to mitigate or minimize negative ones – standard operating procedure for public relations professionals.  Dkt. 958 (56.1 ¶303); Dkt. 954-195 (Ex. 195).

TAG was not involved in any FEHA-regulated activities on Wayfarer's behalf (or on behalf of defendant It Ends With Us Movie LLC) regarding Lively, including her hiring for the Film, her compensation, services to be rendered, or the maintenance of workplace standards.

## ARGUMENT

**I.     TAG CANNOT BE HELD DIRECTLY LIABLE FOR RETALIATION UNDER FEHA BECAUSE IT WAS NOT INVOLVED IN ANY FEHA-REGULATED ACTIVITIES**

In its recent Opinion and Order, the Court noted that there is reason to believe that aiding and abetting liability applies to business-entity agents because: "(1) business-entity agents can be directly liable for substantive FEHA violations and (2) the California Supreme Court treated issues of direct liability and aiding-and-abetting liability similar in *Reno* [*v. Baird*]."  Dkt. 1273, p. 139. However, as explained below, business-entity agents are only directly liable for substantive FEHA violations when they carry out FEHA-regulated activities, which Lively neither alleges nor demonstrates with respect to TAG (because TAG is merely engaged in public relations activities). Furthermore, the California Supreme Court's similar treatment of issues of direct liability and aiding and abetting liability compels a conclusion that TAG cannot be held liable under FEHA because a predicate for direct liability is the defendant's engagement in FEHA-regulated activities. TAG did not engage in any FEHA-regulated activities with respect to Lively.

### A.  Liability Under FEHA Requires a Nexus to an Employment Relationship

"The fundamental foundation for liability [under FEHA] is the existence of an employment relationship between the one who discriminates against another and that other who finds himself

the victim of that discrimination." *Vernon v. State of California*, 116 Cal App. 4th 114, 123 (Cal. Ct. App. 2004) (quotation omitted). As stated in FEHA itself, the employment relationship is key:

> It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons *to seek, obtain, and hold employment* without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, reproductive health decisionmaking, or military and veteran status.

Cal. Gov't Code § 12920 (emphasis added).

The California Supreme Court has consistently interpreted FEHA in the context of the employment relationship. In *Reno v. Baird*, 18 Cal. 4th 640 (1998), the Court examined whether individual supervisors may be held liable for discrimination under FEHA. *Id*. at 643. The *Reno* Court held that no liability for discrimination under FEHA could attach to supervisors because doing so "would place a supervisory employee in a direct conflict of interest with his or her employer every time that supervisory employee was faced with a personnel decision…[It] would coerce the supervisory employee not to make the optimum lawful decision for the employer." *Id*. at 653 (quoting *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 74 (Cal. Ct. App. 1996)). The *Reno* Court similarly held that it was not concerned about "open[ing] the floodgates of discrimination" by absolving individual supervisors of liability for discrimination under FEHA because the supervisors' employers would remain liable. *Id*. at 654-55.

In *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158 (2008), the California Supreme Court examined whether it should extend its holding in *Reno* to personal liability for retaliation as well. *Id*. at 1160. In extending this protection from liability for retaliation under FEHA, the *Jones* Court adopted the reasoning of *Reno* wholesale, noting that "[a]ll of [the] reasons for not imposing individual liability for discrimination…apply equally to retaliation," including "sound policy

5

favors avoiding conflicts of interest and the chilling of effective management, corporate employment decisions are often collective, and it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision." *Id*. at 1167. Again, the California Supreme Court interpreted FEHA through the all-important lens of an employment relationship.

### B. Direct Liability Under FEHA for Business-Entity Agents is Limited to Those Which Carry Out FEHA-Regulated Activities

In *Raines v. U.S. Healthworks Med. Group*, 15 Cal. 5th 268 (2023), the California Supreme Court examined whether a business-entity agent may be held directly liable for discrimination under FEHA. The *Raines* Court held that it could, but it expressly limited such potential liability to "appropriate circumstances when the business-entity agent…carries out *FEHA-regulated activities* on behalf of an employer." *Id*. at 273 (emphasis added). The *Raines* Court ruled that "as a *necessary minimum* …, consistent with the FEHA's language and purpose, a business-entity agent can bear direct FEHA liability only when it *carries out FEHA-regulated activities* on behalf of an employer." *Id*. at 288 (emphasis added). In other words, according to the *Raines* Court, "a business-entity agent's obligation to comply with FEHA and its consequent liability for FEHA violations results from the entity's own *engagement in FEHA-regulated activities* on the employer's behalf." *Id*. at 290 (emphasis added).

Although the *Raines* Court did not define "FEHA-regulated activities," the context in which *Raines* was decided – the screening of potential employees for hiring (15 Cal. 5th at 274) – demonstrates that the activities in question are the traditional activities performed by an employer in an employment relationship. This is consistent with analogous caselaw interpreting Title VII of the Civil Rights Act of 1964, for which courts "have held that an employer's agent may be independently liable when the employer has delegated to the agent 'functions that are traditionally exercised by an employer.'" *Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 804 (N.D. Cal. 2024)

6

(collecting cases).  This is also consistent with the California Supreme Court's prior holdings in *Reno* and *Jones*, in which the employment relationship formed the crux of the Court's holdings.

## II.  TAG IS NOT LIABLE FOR AIDING AND ABETTING A VIOLATION OF FEHA

The cases examining whether a business-entity agent may be held liable for aiding and abetting a FEHA violation also uniformly deal with conduct involving employment-related activities.  Thus, TAG, which was indisputably not involved in any employment-related conduct, cannot be held liable for aiding and abetting a violation of FEHA.

In *Alch v. Superior Court*, 122 Cal. App. 4th 339 (Cal. Ct. App. 2004), the California Court of Appeal examined whether certain talent agencies for television writers could be liable for allegedly assisting networks and studios in engaging in age discrimination.  *Id*. at 353.  In finding that aiding and abetting liability under FEHA could attach to the talent agencies, the Court held that the complaints adequately alleged that the agencies "knew the employers were engaged in systemic discrimination on the basis of age" and gave substantial assistance or encouragement to such conduct "by virtue of their own referral practices, screening out older writers in favor of younger ones."  *Id*. at 390.  In other words, the talent agencies' own *employment-related practices* (*i.e.,* screening out older writers and referring younger writers) triggered the agencies' potential liability for aiding and abetting.

In *Malekzadeh v. Costco Wholesale*, No. 22-cv-04678, 2023 WL 4311262 (N.D. Cal. April 10, 2023), the plaintiff alleged that his employer Costco discriminated against him by failing to provide reasonable accommodation for his disability.  *Id.* at *2.  The United States District Court for the Northern District of California found that plaintiff had alleged a colorable aiding and abetting claim under FEHA against the agent (RehabWest) retained by the employer to manage its

disability accommodation program where RehabWest attended and facilitated job assessment meetings and determined that plaintiff could not perform essential job functions. *Id.*

Nothing in these cases, or in the language of FEHA itself, suggests that a public relations company like TAG should be held liable under FEHA "by the roundabout method of 'aiding and abetting' language." *Reno*, 18 Cal. 4th at 656 (quoting *Janken*, 46 Cal. App. 4th at 79).

There is no evidence that TAG engaged, directly or indirectly, in any employment-related practices, as was the case in *Alch* and in *Malekzadeh*. To the contrary, the evidence demonstrates that TAG simply engaged in *public relations* work for Wayfarer and Baldoni after Lively's work on the Film ended. Dkt. 958 (56.1 ¶¶253-254); Dkt. 954-160 (Ex. 160 at 340:15-22); Dkt. 958 (56.1 ¶256); Dkt. 954-164 (Ex. 164); Dkt. 958 (56.1 ¶260); Dkt. 954-168 (Ex. 168); Dkt. 954-169 (Ex. 169 at 111:18-112:4). Moreover, there is no evidence that TAG *encouraged* Wayfarer (which did not even employ Lively or contract for her services) to do anything concerning Lively's working relationship with Wayfarer. As the Court recently noted, "[t]he retaliatory smear campaign is alleged to have begun after Lively's working relationship with the Wayfarer Parties concluded." Dkt. 1273, p. 91.

Importantly, at least one federal court in California has stated that California Government Code Section 12940(i) was intended "to prohibit employers from aiding and abetting third-parties, such as customers or suppliers, not from aiding and abetting themselves." *Radentz v. American Assoc. of Physician Spec., Inc.*, No. 13-cv-01486, 2014 WL 12601013, at *7 (C.D. Cal. Aug. 18, 2014). FEHA focuses on prohibiting improper conduct by employers, not third parties. In other words, FEHA prohibits employers from aiding and abetting third-parties, not the other way around.

Although the Court's recent Opinion and Order cited two cases pertaining to aiding and abetting liability under FEHA, those matters involved defendants who were alleged to have

8

participated in employment-related conduct and stepped into the proverbial shoes of employers. In *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138 (Cal. Ct. App. 2021), plaintiff's employer Jiffy Lube held a presentation for its employees to learn about a new Castrol (BP Lubricants) product. *Id.* at 142. Plaintiff alleged that, at the presentation hosted by his employer, a Castrol (BP Lubricants) representative made several comments to Smith that were racist and offensive. *Id.* Plaintiff commenced an action alleging, among other things, that Castrol (BP Lubricants) (and its representative) aided and abetted Jiffy Lube's harassment and discrimination of him in violation of FEHA. *Id.* at 144. In liberally construing the allegations, the California Court of Appeal inferred that Castrol's (BP Lubricants) "presentation was intended to ensure that Jiffy Lube's employees knew how to properly use Castrol's product, thereby promoting it." *Id.* at 152. Significantly, the Court determined that "[i]n this context, *Jiffy Lube's employees*, including [plaintiff], *were effectively Castrol's clients, patrons or customers*." *Id.* (emphasis added) (internal quotation omitted).[3] In *Mobley v. Workday, Inc.*, defendant Workday provided "human resource management services" (including applicant screening services) to businesses in various industries. 740 F. Supp. 3d at 802. After plaintiff was denied employment for over 100 positions to which he applied through Workday's system, plaintiff asserted a claim against Workday for aiding and abetting discrimination under FEHA, alleging that Workday's algorithm-based applicant screening tools discriminated against him based upon his race, age and disability. *Id.* at 802 – 803.[4]

In stark contrast to those two cases, there is no contention (let alone evidence) that Lively was TAG's client, patron or customer (as was the case in *Smith*) or that TAG provides human resources services (as was the case in *Mobley*). TAG has not located any decisions from a

---

[3] The Court affirmed the trial court's dismissal of the aiding and abetting claim due to plaintiff's failure to plead the requisite elements. *Id.* at 147.

[4] The United States District Court for the Northern District of California dismissed plaintiff's claim for failure to allege the required elements. *Id.* at 813.

California court (or any other court) holding that a business-entity agent can be liable for aiding and abetting a FEHA violation where the business-entity agent does not engage in any employment-related activities.  It is respectfully submitted that the Court should not create new law for the State of California. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 415 F.Supp.2d 261 (S.D.N.Y. 2005) (federal court "may not adopt innovative theories without support in state law, or distort existing state law…"); *Ackoff-Ortega v. Windswept Pacific Enter. Co. (Inc.)*, 130 F.Supp.2d 440, 446 (S.D.N.Y. 2000) ("federal courts do not create state law"); *Banco Nacional De Cuba v. Chase Manhattan Bank*, 514 F. Supp. 5, at 6 (S.D.N.Y. 1980) (federal courts "must follow and not make" New York State law).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in TAG's favor on Lively's Seventh Cause of Action for aiding and abetting retaliation under FEHA.

Dated:  April 10, 2026
New York, NY

/s/ Kevin Fritz
MEISTER SEELIG & SCHUSTER PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
(212) 655-3500
ms@mss-pllc.com
kaf@mss-pllc.com

LINER FREEDMAN TAITELMAN +
COOLEY, LLP
Bryan J. Freedman (pro hac vice)
Ellyn S. Garofalo (pro hac vice)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
(310) 201-0005
bfreedman@lftcllp.com
egarofalo@lftcllp.com

SHAPIRO ARATO BACH LLP
Alexandra A. E. Shapiro
Jonathan Bach
Alice Buttrick
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jbach@shapiroarato.com
abuttrick@shapiroarato.com

AHOURAIAN LAW
Mitra Ahouraian (pro hac vice)
2029 Century Park East, 4th Floor
Los Angeles, CA 90067
(310) 376-7878
mitra@ahouraianlaw.com

*Counsel for The Agency Group PR LLC*

11