**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BLAKE LIVELY,<br><br>               Plaintiff,<br><br>-v-<br><br>WAYFARER STUDIOS LLC, JUSTIN<br>BALDONI, JAMEY HEATH, STEVE<br>SAROWITZ, IT ENDS WITH US MOVIE LLC,<br>MELISSA NATHAN, THE AGENCY GROUP PR<br>LLC, JENNIFER ABEL, JED WALLACE, and<br>STREET RELATIONS INC.,<br><br>               Defendants. | No. 1:24-cv-10049-LJL |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS IN LIMINE

491317.3

# Table of Contents

Motion in Limine No. 1 To Preclude Evidence Of The Alleged Bad Experiences Of Other Women ...................................................................................................................11

    A.  The "Other Bad Act" Evidence.........................................................................11

    B.  The "Other Bad Act" Evidence Is Not Admissible To Prove Lively's Good Faith Belief That She Was Opposing Sex Discrimination ................................................. 13

    C.  "Other Act" Evidence To Establish Motive Is No Longer Relevant............................... 16

    D.  Lively's "Other Act" Evidence Is Essentially Propensity Evidence and Unfairly Prejudicial ....................................................................................................... 16

Motion in Limine No. 2 To Preclude Evidence Of Alleged Weight-Related Comments ............. 17

Motion in Limine No. 3 To Preclude Evidence Concerning Alleged Sexual Assault .................. 18

Motion in Limine No. 4 To Preclude All References To Other Clients Of Melissa Nathan And Jed Wallace...................................................................................................... 19

Motion in Limine No. 5 To Preclude Evidence And Argument Relating To Pretrial Filings And The Court's Rulings ............................................................................................ 21

    A.  The Court Should Preclude All Reference to Sanctions Motions and the Court's Rulings on Those Motions. ...................................................................................... 22

    B.  The Court Should Exclude All References to the Wayfarer Complaint and Its Dismissal........................................................................................................ 23

    C.  The Court Should Preclude All References to Proceedings Involving Pretrial Publicity and the Sealing of Evidence.......................................................................... 24

Motion in Limine No. 6 To Preclude References To Other Lawsuits Involving Defendants, The Dismissed Defendants, Or Their Counsel ............................................................... 25

    A.  The Court Should Preclude Evidence and Argument Relating to Other Employment-Related Actions Against Defendants.................................................................. 25

    B.  The Court Should Exclude Evidence of Related and Unrelated Lawsuits, Including Suits Involving Melissa Nathan or Jennifer Abel. .......................................... 28

Motion in Limine No. 7 To Preclude Any Reference To A Surreptitious Recording Of Nonparty Steve Sarowitz ........................................................................................ 29

Motion in Limine No. 8 To Preclude Evidence Of Steve Sarowitz's Wealth, Financial Resources, And The Payment Of Defendants' Legal Fees ........................................... 30

Motion in Limine No. 9 To Preclude Evidence And Argument Relating To Bryan Freedman .... 30

Motion in Limine No. 10 To Preclude Evidence And Argument Concerning Retaliation In Anticipation Of Future Protected Activity ...................................................................... 31

Motion in Limine No. 11 To Preclude Lively's Prior Descriptions Of Her Experience .............. 33

Motion in Limine No. 12 To Preclude Evidence Concerning Remedial Measures Taken By Defendants ................................................................................................................... 35

Motion in Limine No. 13 To Preclude Lively From Offering Improper Lay Opinion ................ 38

    A.  Lively Should Be Barred From Offering Lay Opinion That Other People Believed Defendants' Conduct Was Improper ................................................................ 38

    B.  Lively Should Be Barred From Offering Lay Opinion That Other People Thought Her Cut Of The Movie Was Good ....................................................................... 41

    C.  Lively Should Be Barred From Offering Lay Opinion That Other People Believed She Had A Good Character .................................................................................. 42

Motion in Limine No. 14 To Preclude Speculative Evidence About The Use Of "Bots" ............. 43

Motion in Limine No. 15 To Preclude Evidence Concerning The Following Irrelevant Topics .. 43

Motion in Limine No. 16 To Preclude Evidence And Argument Of Reputational Harm Damages .................................................................................................................... 44

    A.  Plaintiff's Failure to Comply With Fed. R. Civ. P. 26(A)(1)(A)(iii) Warrants Exclusion of Reputational Harm Damages ....................................................................... 44

        1. Factual Background .................................................................................. 45

        2. Lively Should Be Precluded from Presenting Evidence or Argument on Reputational Harm Damages Pursuant to Fed. R. Civ. P. Rule 37(c) ................................ 48

    B.  Plaintiff is Not Entitled to Reputational Harm Damages Attributable to Her Dismissed Defamation Claim ...................................................................................... 51

Motion in Limine No. 17 To Preclude Evidence And Argument Relating To Plaintiff's Allegedly Lost Profits And Lost Royalties ..................................................................... 52

Motion in Limine No. 18 To Preclude Evidence Of Emotional Distress Damages Beyond "Garden Variety" Emotional Distress Damages ............................................................. 54

Motion in Limine No. 19 To Bifurcate The Issue Of Punitive Damages .................................... 56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Ross*,
   No. 23 CIV. 10292 (KPF), 2025 WL 2578079 (S.D.N.Y. Sept. 5, 2025)...............................32

*Adams v. Austal, U.S.A., LLC*,
   754 F.3d 1240 (11th Cir. 2014) .............................................................................................14

*Adams v. Kmart Corp.*,
   2001 WL 969049 (N.D. Cal. Aug. 10, 2001) .........................................................................33

*Adams v. New York State Unified Ct. Sys.*,
   No. 22-CV-9739 (JMF), 2023 WL 5003593 (S.D.N.Y. Aug. 4, 2023)...................................32

*Aghaeepour v. Northern Leasing Sys., Inc.*,
   No. 14-CV-5449, 2024 WL 2700564 (S.D.N.Y. May 24, 2024) ............................................27

*Ali v. NYC Env't Control Bd.*,
   670 F. App'x 26 (2d Cir. 2016) .......................................................................................52, 53

*Am. Stock Exch., LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) ..............................................................................................48

*Asanjarani v. City of New York*,
   No. 09 CIV. 7493 JCF, 2011 WL 6811027 (S.D.N.Y. Dec. 27, 2011) ..................................24

*Banks v. Gen. Motors, LLC*,
   81 F.4th 242 (2d Cir. 2023) ....................................................................................................15

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   860 F. Supp. 2d 251 (S.D.N.Y. 2012)...............................................................................25, 27

*Beata Music LLC v. Danelli*,
   No. 18-CV-6354 (JGK), 2022 WL 61862 (S.D.N.Y. Jan. 6, 2022) .................................44, 50

*Bick v. City of New York*,
   No. 95CIV.8781(KMW)(MHD), 1998 WL 190283 (S.D.N.Y. Apr. 21, 1998)......................55

*Brennan v. Metropolitan Opera Ass'n, Inc.*,
   192 F.3d 310 (2d Cir. 1999)....................................................................................................15

*Brooks v. City of San Mateo*,
   229 F.3d 917 (9th Cir. 2000) ..................................................................................................14

*Burnett v. Tyco Corp.*,
   203 F.3d 980 (6th Cir. 2000) ................................................................................14

*Cann v. Ford Motor Co.*,
   658 F.2d 54 (2d Cir. 1981)...................................................................................36

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   No. 00-cv-2838, 2008 WL 9358563 (N.D. Ga. Apr. 23, 2008)..............................37

*Castillo v. Isakov*,
   No. 22 CIV. 6888 (LJL) (GS), 2024 WL 5323851 (S.D.N.Y. Dec. 27, 2024).........55

*Celeste C. Smith v. Wayfarer Foundation, Wayfarer Pathways, and Steve
   Sarowitz*,
   Case No. 26-cv-01940 (N.D. Ill. Feb. 20, 2026) ...................................................26

*Colson v. Mingo*,
   No. 18-CV-2765, 2025 WL 688832 (S.D.N.Y. Mar. 4, 2025)................................23

*Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*,
   No. 14CIV48AJNHBP, 2016 WL 184407 (S.D.N.Y. Jan. 15, 2016).....................45

*Cottrill v. MFA, Inc.*,
   443 F.3d 629 (8th Cir. 2006) ................................................................................14

*Dennis v. Cnty. of Fairfax*,
   55 F.3d 151 (4th Cir. 1995) ..................................................................................36

*Dickerson v. Prison Health Servs. Inc.*,
   495 F. App'x 154 (2d Cir. 2012) ...........................................................................36

*Dickson v. New York State Office of Children and Family Servs.*,
   2024 WL 127849 (E.D.N.Y. Jan. 11, 2024) ..........................................................16

*Duarte v. St. Barnabas Hosp.*,
   341 F. Supp. 3d 306 (S.D.N.Y. 2018)....................................................................56

*Empire Gas Corp. v. Am. Bakeries Co.*,
   646 F. Supp. 269 (N.D. Ill. 1986) .........................................................................20

*Enchante Accessories, Inc. v. Turko Textiles, LLC*,
   No. 19CV00581(GHW)(SN), 2023 WL 395221 (S.D.N.Y. Jan. 25, 2023) ............51

*Figueroa v. Boston Scientific Corp.*,
   No. 00-CV-7922, 2003 WL 21488012 (S.D.N.Y. June 27, 2003) ..........................27

*Fish v. Georgia-Pac. Corp.*,
   779 F.2d 836 (2d Cir. 1985)..................................................................................36

5

*Foster v. Berwind Corp.*,
No. 90 Civ. 0857, 1991 WL 83090 (E.D. Pa. May 14, 1991) ..........................................24, 25

*Freeman v. Giuliani*,
No. 24-CV-06563 (LJL), 2025 WL 81370 (S.D.N.Y. Jan. 13, 2025), *appeal
withdrawn*, No. 25-107, 2025 WL 1122435 (2d Cir. Jan. 28, 2025) (Liman, J.) ....................48

*Funk v. Belneftekhim*,
No. 14-CV-376 (BMC), 2020 WL 7642868 (E.D.N.Y. Dec. 23, 2020),
*clarified on denial of reconsideration*, No. 14-CV-376 (BMC), 2020 WL
13891271 (E.D.N.Y. Dec. 30, 2020) ........................................................................................48

*Gorbea v. Verizon New York, Inc.*,
No. 11-CV-3758 KAM LB, 2014 WL 2916964 (E.D.N.Y. June 25, 2014)............................23

*Gould Paper Corp. v. Madisen Corp.*,
614 F. Supp. 2d 485 (S.D.N.Y. 2009)......................................................................................49

*Gray Gables Corp. v. Arthur*,
2022 WL 905393 (2d Cir. Mar. 29, 2022).........................................................................52, 53

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
331 F. Supp. 3d 221 (S.D.N.Y. 2018)................................................................................44, 50

*Haas v. Delaware & Hudson Ry. Co.*,
282 F. App'x 84 (2d Cir. 2008).................................................................................................48

*Estate of Hamilton v. City of New York*,
627 F.3d 50 (2d Cir. 2010)........................................................................................................36

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993).....................................................................................................................14

*Hester v. BIC Corp.*,
225 F.3d 178 (2d Cir. 2000).......................................................................................................40

*Highland Cap. Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008).......................................................................................20

*Hirase-Doi v. U.S. W. Commc'ns, Inc.*,
61 F.3d 777 (10th Cir. 1995) .....................................................................................................14

*Izuogu v. Credit Agricole Corp. & Inv. Bank, New York*,
No. 24 CIV. 4329 (DEH), 2025 WL 2806683 (S.D.N.Y. Oct. 2, 2025) ..................................14

*Karkare ex rel. JN v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing
Iron Workers Loc. 580*,
140 F.4th 60 (2d Cir. 2025) .......................................................................................................52

*Jones v. Niagara Frontier Transp. Auth. (NFTA)*,
    836 F.2d 731 (2d Cir. 1987)................................................................52, 53, 54

*Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*,
    776 F. App'x 1 (2d Cir. 2019) ...............................................................52

*Marshall v. Port Auth. of New York & New Jersey*,
    No. 19-CV-2168 (LJL), 2022 WL 17491006 (S.D.N.Y. Dec. 5, 2022) (Liman,
    J.)............................................................................................57

*McKenna v. Permanente Med. Grp., Inc.*,
    894 F. Supp. 2d 1258 (E.D. Cal. 2012)....................................................32

*Medina v. D.C.*,
    No. 97-cv-594, 2008 WL 11388705 (D.D.C. July 7, 2008) ..................................36

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLC*,
    232 F. Supp. 3d 558 (S.D.N.Y. 2017)...........................................19, 20, 28

*Moore v. Donahoe*,
    460 F. App'x 661 (9th Cir. 2011) ........................................................16

*Moore v. Rubin*,
    No. 17-CV-6404 (BMC), 2020 WL 13573582 (E.D.N.Y. Jan. 31, 2020)...........23, 25, 27

*Nejadian v. Cnty. of Los Angeles*,
    40 Cal. App. 5th 703 (2019) ..............................................................32

*Norman v. Wayfarer Studios, LLC, et al.*,
    Cal. Super. Ct. Case No. 20STCV46882 .................................................25

*Olsen v. Cnty. of Nassau*,
    615 F. Supp. 2d 35 (E.D.N.Y. 2009) ....................................................55

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)........................................................................15

*Park W. Radiology v. CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009)..........................................17, 26, 27

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006)..............................................................48

*Peck v. Hudson City Sch. Dist., Hudson, N.Y.*,
    100 F. Supp. 2d 118 (N.D.N.Y. 2000) ..................................................36

*Pilitz v. Inc. Vill. of Freeport*,
    No. 12-CV-5655(JS)(ARL), 2020 WL 6945927 (E.D.N.Y. Nov. 25, 2020) ...........45, 50

7

*Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*,
   212 F.3d 976 (7th Cir. 2000) ...................................................................................14

*Puglisi v. Town of Hempstead Sanitary District No. 2*,
   No. 11-cv-445, 2014 WL 12843521 (E.D.N.Y. Jan. 27, 2014)................................26

*R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers*'
   *Union Loc. 89-22-1, I.L.G.W.U., AFL-CIO*,
   33 F.3d 145 (2d Cir. 1994).....................................................................................37

*Reynolds v. Univ. of Pennsylvania*,
   483 F. App'x 726 (3d Cir. 2012) ............................................................................37

*Salaam v. Syracuse Model Neighborhood Facility*,
   No. 5:11-CV-948 MAD/ATB, 2012 WL 893487 (N.D.N.Y. Mar. 15, 2012).........32

*Schafer v. Bd. of Co-op. Educ. Servs. of Nassau Cnty.*,
   No. 06-cv-2531, 2012 WL 5547319 (E.D.N.Y. Nov. 15, 2012) .............................36

*Schwapp v. Town of Avon*,
   118 F.3d 106 (2d Cir. 1997).....................................................................................13

*Simpson v. Pitts. Corning Corp.*,
   901 F.2d 277 (2d Cir. 1990)......................................................................................56

*Smith v. Fricke*,
   635 F. Supp. 3d 152 (N.D.N.Y. 2022).....................................................................26

*Smith v. Lighting Bolt Prods., Inc.*,
   861 F.2d 363 (2d Cir. 1988)................................................................................56, 57

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008).............................................................................................15, 16

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
   No. 15 CIV.211 (LGS), 2025 WL 1565327 (S.D.N.Y. June 3, 2025),
   *reconsideration denied*, No. 15 CIV. 211 (LGS), 2025 WL 1642886
   (S.D.N.Y. June 9, 2025)............................................................................................22

*Szarzynski v. Roche Lab'ys, Inc.*,
   No. 07-CV-6008, 2010 WL 811445 (W.D.N.Y. Mar. 1, 2010) ..............................32

*Tang Cap. Partners, LP v. BRC Inc.*,
   No. 22-CV-3476 (RWL), 2025 WL 1785245 (S.D.N.Y. June 27, 2025)................30

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)....................................................................................41

8

*United States v. Chiu*,
  36 F.4th 294 (1st Cir. 2022).................................................................................34

*United States v. Dawkins*,
  999 F.3d 767 (2d Cir. 2021)..............................................................................42

*United States v. Garcia*,
  413 F.3d 201 (2d Cir. 2005)..........................................................................39, 40

*United States v. Kaplan*,
  490 F.3d 110 (2d Cir. 2007)...............................................................................41

*United States v. Ray*,
  No. 20-CR-110 (LJL), 2022 WL 558146 (S.D.N.Y. Feb. 24, 2022)................................34, 35

*United States v. Roye*,
  2016 WL 4147133 (D. Conn. Aug. 4, 2016) ...........................................................34

*United States v. Scop*,
  846 F.2d 135 (2d Cir. 1988)...............................................................................41

*United States v. Smothers*,
  652 F. Supp. 3d 271 (E.D.N.Y. 2023) ..................................................................18

*United States v. Thomas*,
  No. 7:23-CR-00481-NSR-1, 2025 WL 2860312 (S.D.N.Y. Oct. 9, 2025)........................34, 35

*United States v. Zhong*,
  26 F.4th 536 (2d Cir. 2022) ..............................................................................18

*Uzhca v. Wal-Mart Stores, Inc.*,
  No. 17 CIV. 3850 (NSR), 2023 WL 2529186 (S.D.N.Y. Mar. 15, 2023)...............................30

*Vasbinger v. Ambach*,
  926 F.2d 1333 (2d Cir. 1991)........................................................................56, 57

*Village of Freeport v. Barrella*,
  814 F.3d 594 (2d Cir. 2016).............................................................................40

*W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*,
  No. 13-cv-47, 2016 WL 165698 (D. Neb. Jan. 13, 2016) ............................................37

*Williams v. Boulevard Lines, Inc.*,
  No. 10 CIV. 2924 DF, 2013 WL 5652589 (S.D.N.Y. Sept. 30, 2013)...................................48

*Williams v. Cnty. of Orange*,
  No. 03 CIV. 5182 (LMS), 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005)...............................49

*Zubulake v. UBS Warburg LLC,*
    382 F. Supp. 2d 536 (S.D.N.Y. 2005)..............................................................22, 23, 27

**Other Authorities**

Wright & Miller, 23 Fed. Prac. & Proc. Evid. § 5291 (2d ed.).......................................................37

28 Fed. Prac. & Proc. Evid. § 6206 (2d ed. Sept. 2025 update) ......................................................34

Defendants Wayfarer Studios LLC, It Ends With Us Movie LLC, and The Agency Group PR LLC move in limine to preclude evidence and argument at trial as follows:

## Motion in Limine No. 1 To Preclude Evidence Of The Alleged Bad Experiences Of Other Women

Lively seeks to introduce a broad range of "other bad act" evidence concerning the alleged experiences of seven other women. This grab bag of awkward comments, minor confrontations, and perceived slights would have been inadmissible even if Lively's sexual harassment claims proceeded to trial. With those claims dismissed, the evidence is even more plainly barred by Rules 401, 402, 403, and 404[1]. With a single exception, Lively was unaware of these "other bad acts" while working on the movie. The evidence therefore cannot support Lively's claim that she reasonably and in good faith believed that her work environment was hostile or that she was opposing discriminatory conduct. Even the one incident that Lively knew about—Baldoni's comment to Jenny Slate about her wardrobe—does not appreciably move the needle. Nor is this evidence admissible to show a sex-based discriminatory motive, as existence of such a motive is no longer an issue at trial. The irrelevant "other bad act" evidence will turn into a series of mini trials, prolonging proceedings and confusing the jury about what is relevant and why. Lively is offering it only to convince the jury that Baldoni and Heath are "bad guys" who should be made an example. It should be excluded.

### A.      The "Other Bad Act" Evidence

Lively primarily seeks to offer "other bad act" evidence relative to seven women:

<u>Jenny Slate</u>:  Slate is the only woman who shared her concerns with Lively during the filming. Specifically, Slate complained to Lively that Baldoni said Slate looked "sexy" in her

---

[1] All references are to the Federal Rules of Evidence unless otherwise noted.

character's wardrobe (a pair of black leather pants), was "unprofessional," and sometimes made awkward jokes. Slate also complained that Heath's offer to improve her housing because she was a mother with a baby was patronizing. Slate raised her concerns with producer Alex Saks, received a prompt apology from Baldoni, and experienced no further incidents. Slate herself testified that she felt her issues were adequately resolved on set.

Isabela Ferrer: Lively has identified co-star Isabela Ferrer as another witness who will speak to "Defendants' misconduct related to the Film." According to Ferrer's deposition, ███ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████. Ferrer did not complain to anyone at Wayfarer about that incident at the time and instead gave both Baldoni and the intimacy coordinator an effusive review of her experience. Lively was not present for the scene and was also apparently unaware of the supposedly objectionable comment at the time.

Alex Saks: Lively seeks to offer testimony from Saks, a female producer on the film, who testified that ██████████████████████████████████████████ ██████████. Declaration of Ellyn S. Garofalo Ex. C (Saks Dep. at 76:25-78:8; 243:20-244:16).[2] Lively would also offer evidence that █████████████████████████████. *Id.* at 97:18-98:13. Lively was not present for any of the ██████ incidents and she did not know about Saks's concerns at the time.

Colleen Hoover: Lively seeks to offer evidence that the book's author, Colleen Hoover, ███████████████████████████. *E.g.*, Ex. A (Hoover Dep. at 46:6-51:2, 65:1-68:20).

---

[2] All Exhibits are attached to the Declaration of Ellyn S. Garofalo. All exhibits will be referenced as "Ex. ___."

Hoover played no part in Lively's workplace experience. She had no contractual right to participate in the film and was not present on set.

Christy Hall: Lively seeks to offer second-hand reports that Christy Hall, a female script writer, ███████████████████████████. *E.g.*, Ex. B (PTX-365); Ex. C (Saks Dep. Tr. 153:6-155:20). Hall was not deposed or listed as a witness. There is no evidence that Lively was aware of any of Hall's concerns at the time.

Liz Plank: Reaching even further afield, Lively includes on her witness list Liz Plank, the co-host of Baldoni and Heath's podcast. Plank had no role whatsoever in the film. She was not deposed. It appears that Lively's interest in her comes from several messages in which ████ ████████████████████████████████████████ Ex. B (PTX-158, PTX-406).

Claire Ayoub: Lively also includes on her witness list Claire Ayoub, a director who worked with Baldoni on a different film altogether, at a different time. Like Plank, Ayoub had no role on IEWU and was not deposed. It is not clear that Ayoub ever met Lively prior to this litigation. Nevertheless, Lively submitted on summary judgment a declaration from Ayoub claiming that Baldoni engaged in unspecified "verbal abuse."

**B.  The "Other Bad Act" Evidence Is Not Admissible To Prove Lively's Good Faith Belief That She Was Opposing Sex Discrimination**

With the sole exception of the comment directed at Slate, Lively was unaware of the "other bad act" incidents during the filming of IEWU. Such evidence therefore does little to establish the existence of a hostile work environment. "[T]he fact that a plaintiff learns second-hand of a [discriminatory] comment or joke … can impact the work environment." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997). But "[h]arassment directed towards others of which an employee is *unaware* can, naturally, have no bearing on whether she reasonably considered her

13

working environment abusive." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (emphasis added); *accord Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1250 (11th Cir. 2014); *Cottrill v. MFA, Inc.*, 443 F.3d 629, 637 (8th Cir. 2006); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 978 (7th Cir. 2000); *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000); *Hirase-Doi v. U.S. W. Commc'ns, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995). As the Court observed at oral argument on the motion for summary judgment, conduct of which Lively was not aware "doesn't contribute to the severe and pervasive environment for [Lively]" even if it may be relevant to "whether the conduct is based on gender." Transcript of 01/22/26 Summary Judgment Argument at 44.

Moreover, with the harassment claims dismissed, the question is not even whether there was a sexually hostile work environment. Rather, the question is whether Lively, at the time she opposed Defendants' alleged harassment, reasonably believed that she was subject to such harassment. Incidents involving other women cannot possibly have contributed to that good faith belief if Lively was not aware of them.

Even aside from this, the incidents in question are so attenuated from any actionable discrimination claim that they will serve only to waste time and confuse the jury about what is and is not relevant. Baldoni's comment to Slate that the leather pants she wore to shoot a particular scene "looked sexy" falls far below the standard necessary for Slate to state a hostile work environment claim, let alone for such a comment to impact Lively. It is, at most, "a mere offensive utterance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Izuogu v. Credit Agricole Corp. & Inv. Bank, New York*, No. 24 CIV. 4329 (DEH), 2025 WL 2806683, at *5 (S.D.N.Y. Oct. 2, 2025) ("isolated incidents or episodic stray remarks" are not sexual harassment as a matter of law). The comment, moreover, was made during costumed rehearsals in a film that tried to capture

14

a sexy aesthetic.  Whatever limited probative value it may have is far outweighed by the danger of unfair prejudice arising from the implication that Baldoni had more than one victim.  Fed. R. Evid. 403; *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 267 (2d Cir. 2023) (incidents involving other employees "may be of limited probative value").

Ferrer's testimony will apparently concern a single comment ███████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████  A comment made to both a male and a female actor, even if objectionable, does not shed any light on *gender* bias or discrimination.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("The critical issues … is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.").  If admitted, this evidence will only confuse the jury about what is and is not relevant, and what is and is not harassment.

Similarly, there is no evidence that Baldoni, during a stressful movie shoot, ████████ ████████████████████████████████████████████████  is not, alone, sufficient to show animus because "an environment which is equally harsh for both men and women ... does not constitute a hostile working environment under the civil rights statutes." *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  Saks does not assert that Baldoni said or did anything at the time to indicate his reactions were motivated by her sex.  Thus, to determine whether these incidents were evidence of gender bias, the parties would have to delve into when and why ███████████████████████████████████████████████████ and other ancillary issues.  Moreover, ██████ is also distinct in kind from the type of conduct of which Lively complains.  This evidence is therefore not "closely related … to [Lively's] circumstances and theory of the case" and is not admissible.  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379,

388 (2008); *Dickson v. New York State Office of Children and Family Servs.*, 2024 WL 127849, at **3-5 (E.D.N.Y. Jan. 11, 2024) (excluding other act evidence insufficiently similar to plaintiff's allegations).

The evidence concerning Hoover, Hall, Plank, and Ayoub is even further afield—indeed, Hoover had no official role in connection with the movie, and neither Plank nor Ayoub worked on the movie at all. And their concerns are distinct in kind and not similar to the concerns Lively professed to have about sexualized comments and encounters. The lack of substantive nexus underscores the lack of probative value, while heightening concern about unfair prejudice. *Sprint/United*, 552 U.S. at 388; *see also Moore v. Donahoe*, 460 F. App'x 661, 663 (9th Cir. 2011) (affirming exclusion of "other employee" evidence as "not relevant" because the other employees "were not similarly situated individuals").

### C.    "Other Act" Evidence To Establish Motive Is No Longer Relevant

Evidence of discrimination against individuals other than the plaintiff is sometimes admitted to show an illegal motive. However, because all sexual harassment claims have now been dismissed, Lively no longer has to establish that defendants acted with a discriminatory motive or gender-based animus. Proof of such a motive, though an element of a FEHA harassment claim, is not an element of a FEHA retaliation claim. This separate basis to admit "other act" evidence is no longer part of the case.

### D.    Lively's "Other Act" Evidence Is Essentially Propensity Evidence and Unfairly Prejudicial

Because motive is no longer relevant, the standard Rule 404(b) rationale for admissibility no longer applies. As such, Lively's proffered evidence merely serves to suggest that defendants had a propensity to engage in certain conduct, a prohibited purpose under Rule 404(a) and 404(b)(1). Evidence tending to show a propensity to engage in bad acts distracts the jury from the

issues *sub judice* and unfairly prejudices Defendants and therefore should be excluded under Rule 403 as well as on the other grounds set forth above.

**Motion in Limine No. 2 To Preclude Evidence Of Alleged Weight-Related Comments**

Evidence concerning Plaintiff's allegation that Baldoni made comments about her weight is irrelevant, unduly prejudicial, and constitutes improper character evidence, and therefore should be excluded under Fed. R. Evid. 401, 402, 403, and 404.

This action concerns an alleged "smear" campaign that Defendants purportedly launched in retaliation for Lively's complaint of misconduct on the set of *It Ends With Us*. Baldoni's alleged inquiries to Ms. Lively's trainer about her weight are collateral to the issues to be tried and would not make any fact of consequence more or less probable. Therefore, comments about Lively's weight are irrelevant under Rule 401 and inadmissible under Rule 402. *See Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding allegations that risked "turning the trial into a 'multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case.'") (quoting *Park West Radiology et al. v. CareCore Nat'l LLC et al.,* 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008)).

Even if marginal relevance could be established, any probative value is substantially outweighed by the risk of unfair prejudice, jury confusion, and misleading the jury. Introduction of alleged weight-related comments would invite the jury to base its decision on emotion or moral judgment rather than the evidence directly related to the alleged harassment and retaliation. Permitting such testimony would improperly shift the focus from the veracity of Plaintiff's causes of action to inflammatory, unrelated assertions that could unfairly prejudice him, in violation of Rule 403.

Furthermore, such testimony constitutes impermissible character or propensity evidence under Rule 404.  Alleged comments about weight would be offered solely to portray Baldoni in a negative light or suggest a propensity to engage in inappropriate behavior or conduct that made Lively uncomfortable but does not fall within the purview of the sexual harassment statutes.  They are not offered for any permissible purpose under Rule 404(b), such as motive, intent, or knowledge, and thus constitute improper character evidence that would unfairly bias the jury.

For these reasons, any testimony or evidence regarding alleged comments about Plaintiff's weight should be excluded in their entirety.

### Motion in Limine No. 3 To Preclude Evidence Concerning Alleged Sexual Assault

Lively may attempt to introduce evidence concerning her claim that Baldoni admitted to sexually assaulting other unspecified women.  Defendants respectfully submit that Baldoni never made any such admissions and never engaged in any such conduct.  Regardless, Lively's inflammatory evidence should be excluded under Fed. R. Evid. 401, 402, and 403.  Any sexual harassment that Lively may seek to prove in this case pales in comparison to allegations of sexual assault.  "[E]vidence shall be excluded as unfairly prejudicial when it is more inflammatory than the charged crime."  *United States v. Smothers*, 652 F. Supp. 3d 271, 285 (E.D.N.Y. 2023); *cf. United States v. Zhong*, 26 F.4th 536, 553 (2d Cir. 2022) (overturning a criminal conviction where evidence was "significantly more sensational and disturbing than the charged crimes").  For these reasons, evidence related to sexual assault should be excluded here.

## Motion in Limine No. 4 To Preclude All References To Other Clients Of Melissa Nathan And Jed Wallace

Lively's exhibit list includes many emails and text messages referencing clients of Melissa Nathan and non-party Jed Wallace and their companies which have no relationship to Lively or this lawsuit. These exhibits fall into two general categories: (1) communications *exclusively* referencing other clients of Nathan or Wallace (*i.e.*, not Wayfarer Studios) and/or the services rendered for those other clients; and (2) communications referencing services for Wayfarer Studios *and* other clients (such as an internal TAG text chain referencing the Baldoni/Lively situation and, separately, services that TAG has performed or will perform for other TAG clients).[3]

Pursuant to Rules 402 and 403, the Court should preclude these exhibits as well as any reference to the representation of, or services rendered for, other (non-party) clients because such evidence is not relevant to the matter before this Court and any reference thereto would be unfairly prejudicial to the Wayfarer Parties. In *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLC*, 232 F. Supp. 3d 558 (S.D.N.Y. 2017), the Administrator of the Chapter 11 liquidation plan for financial firm MF Global commenced an action against MF Global's outside auditor and accountant, PricewaterhouseCoopers ("PWC"), alleging that PWC committed professional malpractice in connection with certain transactions that resulted in the financial firm's collapse. PWC moved to preclude any evidence or argument referring to other accounting firms or clients or to past accounting scandals, contending that such evidence was irrelevant and would be unduly prejudicial. *Id.* The Court granted the motion, holding that "references to well-known historical accounting scandals, while marginally relevant to explain the historical context of MF Global's

---

[3] Stated differently, TAG employees sometimes included discussions about multiple clients/tasks within the same internal text chain.

19

ratings downgrades or certain regulations promulgated in their wake, would be unduly prejudicial to PWC." *Id.*

The same result is warranted here. Any services that Nathan rendered for actor Johnny Depp in connection with his high-profile defamation litigation against ex-wife Amber Heard, for other celebrities such as rappers Drake and Travis Scott, professional wrestler Logan Paul, and actress Rebel Wilson, for politicians, or for other clients are irrelevant to whether she aided and abetted the purported smear campaign at issue herein, as alleged by Lively. Indeed, any references to Nathan's involvement with so-called "smear websites" are irrelevant and prejudicial because Lively does not allege that such mechanism was utilized (by any of the defendants) against her.

The sole reason why Lively improperly seeks to introduce evidence of work that Nathan purportedly performed for her other clients (other than Wayfarer Studios) is to convince the jury that Nathan is immoral and a wrongdoer, etc. *See Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 192-93 (S.D.N.Y. 2008) (precluding evidence that defendants committed a securities law violation because "the only apparent reason for such trial strategy would be to show the jury that defendants are 'bad people'"); *Empire Gas Corp. v. Am. Bakeries Co.*, 646 F. Supp. 269, 276 (N.D. Ill. 1986) (finding that testimony showing that party, its executives and its lawyers were "bad people" was prejudicial, confusing, and misleading where principal issue for jury to decide whether there was a breach of contract).

Although this Court previously determined on a discovery motion that the identities of clients of (Jed Wallace's) Street Relations are relevant "because they could lead to information bearing on the issue in this case[,]" the Court also recognized that information within the scope of Rule 26 "need not be admissible in evidence to be discoverable." Dkt. 390 at 2 n.1 (quoting Rule 26(b)(1)). The Court further noted that it "need not address [at that time] whether the names of

20

Street Relations' clients or evidence of Street Relations' other business dealings would be admissible at trial." Thereafter, the Court dismissed Lively's claims against Jed Wallace and Street Relations. Dkt. 912.

Whatever work Wallace or Street Relations performed for clients *other* than Wayfarer Studios is not relevant to the claims herein against the Wayfarer Parties, especially because the Second Amended Complaint alleges that Wallace and Street Relations' so-called role in the purported smear campaign was *distinct* from that of their co-defendants. Specifically, Lively alleges that Wayfarer and Baldoni "direct[ed] and approv[ed]" the retaliation campaign, which "relied on more than just publicists [Abel] and crisis managers [Nathan] to spinning stories." Dkt. 520, ¶¶ 37, 38. According to Lively, Wallace and Street Relations allegedly would "create, seed, promote, and engage with content that appeared to be authentic on social media platforms and internet chat forums" to "influence public opinion and thereby cause an organic pile-on [against Lively]." *Id.* ¶¶ 38, 293a–n. Lively does not allege that any of the Wayfarer Parties took those same alleged actions. Hence, the proffered evidence is both irrelevant and prejudicial and is only being proffered to inflame the jury.

Given that Jed Wallace and his company are no longer parties, the Wayfarer Parties do not anticipate that Wallace, who resides in Texas, will testify at the trial. The introduction of evidence pertaining to Wallace's other clients and services rendered for them, in the absence of Wallace's ability to explain any negative significance or implication that Lively may attribute thereto, would be unfairly prejudicial to the Wayfarer Parties.

### Motion in Limine No. 5 To Preclude Evidence And Argument Relating To Pretrial Filings And The Court's Rulings

The parties have engaged in extensive pretrial litigation during the pendency of this action. Evidence and argument relating to these pretrial proceedings, including the Court's rulings, orders,

21

and on the record statements at pretrial hearings should be excluded. *See Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 546 (S.D.N.Y. 2005) ("The jurors will be told all they need to know through the evidence admitted at trial and my charge. There is no need to reference my earlier decisions.").

### A. The Court Should Preclude All Reference to Sanctions Motions and the Court's Rulings on Those Motions.

The Court should preclude evidence and references to sanctions motions against Defendants and/or their counsel and the Court's rulings on such motions. In *Zubulake*, the Court precluded evidence relating to its previous decisions in the case, including sanctions motions which culminated in sanctions against UBS, as irrelevant and unfairly prejudicial. 382 F. Supp. 2d at 546; s*ee also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 CIV.211 (LGS), 2025 WL 1565327, at *7 (S.D.N.Y. June 3, 2025), *reconsideration denied*, No. 15 CIV. 211 (LGS), 2025 WL 1642886 (S.D.N.Y. June 9, 2025) (granting motion to preclude evidence of prior violations and sanctions issued pursuant to Fed. R. Evid. 403).[4]

There has been no shortage of motions by Lively seeking sanctions and other remedies against Defendants and their counsel during this litigation.[5] Plaintiff has also exploited every opportunity to assault and undermine the credibility of Defendants and their counsel. Evidence of counsel's litigation conduct and motions addressing alleged transgressions bear no relevance to the merits of Lively's claim of retaliation and would serve no purpose but to undermine the credibility of Defendants' counsel and prejudice the jury against Defendants. *See* Fed. R. Evid. 401, 402, and 403. The Court will grant or deny sanctions motions and impose such remedies as it deems proper to cure and/or prevent future infractions, including the exclusion of evidence or

---

[4] Rule 403 balances the relevance of proposed evidence against its potential prejudice.

[5] *See, e.g.,* Dkts. 43, 222, 229, 543, 862, 867, 889, 974, 1133.

22

monetary sanctions as the Court deems warranted, including evidentiary or preclusion sanctions sufficient to cure any prejudice to the opposing party. In other words, should the Court find any sanctionable violation, it would be addressed and cured prior to trial. Finally, whether Defendants engaged in sanctionable conduct prior to trial would constitute impermissible character evidence under Rule 404. Indeed, evidence relating to alleged ethical or other violations falls within the scope of inadmissible character evidence under Rule 404 as it impugns the integrity and credibility of Defendants and their legal representatives. Hence, whatever the fate of any particular motion, the Court should preclude evidence of Plaintiff's serial motions about Defendants' alleged transgressions in the litigation pursuant to Rules 401, 402, 403, and 404. *See Zubulake*, 382 F. Supp. 2d at 546.

**B.    The Court Should Exclude All References to the Wayfarer Complaint and Its Dismissal.**

On January 16, 2025, the Wayfarer Parties filed a complaint against Plaintiff and other parties affiliated with Plaintiff, captioned *Wayfarer Studios LLC, et al. v. Lively, et al.*, 25-cv-00449 (LJL) (the "Wayfarer Complaint") which was subsequently consolidated with this case. (Dkt. No. 50). On June 9, 2025, the Court entered an order dismissing the Wayfarer Complaint. (Dkt. Nos. 296). Courts routinely hold that previously dismissed claims, and evidence of such claims, should be excluded on relevance grounds, as well as the potential prejudice and juror confusion that might result. *Colson v. Mingo*, No. 18-CV-2765 (JGLC), 2025 WL 688832, at *3 (S.D.N.Y. Mar. 4, 2025) (Evidence pertinent solely to dismissed or unpled claims is irrelevant and inadmissible)*; Gorbea v. Verizon New York, Inc.*, No. 11-CV-3758 KAM LB, 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) (holding that "evidence relating" to previously dismissed claims "may not be introduced at trial"); *see also Moore v. Rubin*, No. 17-CV-6404 (BMC), 2020 WL 13573582, at *3 (E.D.N.Y. Jan. 31, 2020) (*quoting Puglisi v. Town of Hempstead Sanitary District No. 2*, No. 11-cv-445, 2014

23

WL 12843521, at *3 (E.D.N.Y. Jan. 27, 2014) ("Courts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court" because "[s]uch evidence is excluded because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice.") (citation omitted); *Asanjarani v. City of New York*, No. 09 CIV. 7493 JCF, 2011 WL 6811027, at *1 (S.D.N.Y. Dec. 27, 2011) (evidence relating exclusively to claims previously dismissed is generally inadmissible); *Foster v. Berwind Corp.,* No. 90 Civ. 0857, 1991 WL 83090, at *1 (E.D. Pa. May 14, 1991) (excluding evidence of other lawsuits because "the complaints in these other actions are just that: "allegations" and "are dispositive of nothing and would confuse the complex issues already present").

The Wayfarer Complaint and its dismissal are irrelevant to proving Plaintiff's remaining claims, which arise from an allegedly retaliatory digital campaign launched in August 2024. Simply put, any probative value of evidence relating to Wayfarer's dismissed Complaint is substantially outweighed by the potential prejudice to Defendants. Accordingly, the Court should exclude any evidence, argument, or suggestions relating to the dismissed Wayfarer Complaint.

### C. The Court Should Preclude All References to Proceedings Involving Pretrial Publicity and the Sealing of Evidence

There have been multiple filings, hearings, and orders relating to restrictions on pretrial publicity and the sealing of relevant evidence. Such proceedings, orders, and the Court's on-the-record statements are irrelevant to any fact at issue in this case. However, evidence of proceedings involving potential restrictions on pretrial evidence, including, without limitation, Plaintiff's repeated attacks on Defendants' ability to publicly defend against Ms. Lively's claims, would threaten to prejudice the jury and may well mislead the jury into believing that post-litigation, pretrial publicity is a proper basis for calculating Plaintiff's damages. Since the probative value

of proceedings involving pretrial publicity and sealing is far outweighed by potential prejudice, any reference to court proceedings involving pretrial publicity and sealing should be precluded.

### Motion in Limine No. 6 To Preclude References To Other Lawsuits Involving Defendants, The Dismissed Defendants, Or Their Counsel

"Courts generally exclude evidence of other related lawsuits." *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254-55 (S.D.N.Y. 2012); *see also Moore v. Rubin*, No. 17-CV-6404 (BMC), 2020 WL 13573582, at *3 (E.D.N.Y. Jan. 31, 2020) ("Courts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court.") (citation omitted); *Foster v. Berwind Corp.,* No. 90 Civ. 0857, 1991 WL 83090, at *1 (E.D. Pa. May 14, 1991) (excluding evidence of other lawsuits because "the complaints in these other actions are just that: allegations" and "are dispositive of nothing and would confuse the complex issues already present"). "Such evidence is excluded because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice." *Moore*, 2020 WL 13573582, at *3 (*quoting Puglisi v. Town of Hempstead Sanitary District No. 2*, No. 11-cv-445, 2014 WL 12843521, at *3 (E.D.N.Y. Jan. 27, 2014).

### A.    The Court Should Preclude Evidence and Argument Relating to Other Employment-Related Actions Against Defendants

The Court also should apply the general rule to preclude references to dismissed or pending employment-related lawsuits against Wayfarer including, without limitation, a dismissed lawsuit by a former film editor alleging age discrimination claims (an allegation absent from Lively's claims); a December 2020 (approximately three years before filming began for "It Ends With Us") claim for breach of contract and wrongful termination by Shane Norman, an employee of nonparty Wayfarer Entertainment, LLC, *Norman v. Wayfarer Studios, LLC, et al.*, Cal. Super. Ct. Case No. 20STCV46882, which was dismissed by a California state court on or about September 10, 2021;

25

and *Celeste C. Smith v. Wayfarer Foundation, Wayfarer Pathways, and Steve Sarowitz*, Case No. 26-cv-01940 (N.D. Ill. Feb. 20, 2026) involving claims for age, religion, gender, and race discrimination by a former program director who was not promoted by non-party Wayfarer entities.

Lively does not assert claims for age discrimination, wrongful termination, or religion, gender, and race discrimination, and the cited lawsuits involve different parties, different facts, different forums, and different legal standards. *Puglisi*, 2014 WL 12843521, at *3 ("[A]dmitting other litigation evidence is limited to relevant *evidence* from other lawsuits, not the pleadings from those lawsuits….The bare, unproven allegations of discrimination contained in the complaints have no probative value."); *Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 336 (S.D.N.Y. 2009) (precluding documents, references, and testimony of allegations or other unlawful conduct of nonparties as irrelevant and prejudicial under Fed. R. Evid. 402 and 403).

In contrast to the slight probative value of the other lawsuits, the potential prejudice is substantial. For instance, among other things, evidence relating to the other employment-related claims might well mislead and confuse the jury by suggesting that mistreatment of employees is pervasive. The implication that Wayfarer management has a propensity for unfair treatment of employees threatens to taint the jury and unfairly prejudice the Wayfarer Parties. Fed. R. Evid. 403 and 404.

Further, allegations of other wrongful conduct by Wayfarer supervisors, Baldoni and Heath are precisely the kind of character evidence subject to exclusion under Rule 404. Rule 404 prohibits Plaintiff from introducing the failed lawsuit to show that individual defendants, such as Baldoni or Heath, engaged in other wrongful employment actions and therefore acted in conformity with the conduct alleged by Ms. Lively. *See Smith v. Fricke*, 635 F. Supp. 3d 152, 170 (N.D.N.Y. 2022) ("Plaintiff seeks to offer the lawsuits for one purpose: to show that, when

26

'[Defendant] engaged in conduct with [ ] Plaintiff,' Defendant acted 'in conformity with his past practice[ ].' … Such a purpose is impermissible."); *Zubulake,* 382 F. Supp. 2d at 540 n.1 (2005) ("A plaintiff's character is not an essential element of any claim or defense in an employment discrimination case.  The prohibitions of Rule 404 therefore apply.").

Lively cannot explain the significance of these other litigations to her case and the fact that such other litigations exist has no bearing on the merits (or lack thereof) of her claims herein.  *See Aghaeepour v. Northern Leasing Sys., Inc.*, No. 14-CV-5449, 2024 WL 2700564, at *8 (S.D.N.Y. May 24, 2024) (precluding exhibits consisting of civil judgments in other cases).  Furthermore, the fact that the proffered exhibits refer to *allegations* (as opposed to judgments) makes them even less probative.  *See Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254 (S.D.N.Y. 2012) (precluding evidence of existence of other lawsuits because mere allegations of misconduct therein is of little probative value); *see also Moore v. Rubin*, No. 17-CV-6404 (BMC), 2020 WL 13573582, at *3 (E.D.N.Y. Jan. 31, 2020) ("Courts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court.") (citation omitted); *Figueroa v. Boston Scientific Corp.*, No. 00-CV-7922, 2003 WL 21488012 (S.D.N.Y. June 27, 2003) (precluding evidence as to 720 other lawsuits filed against defendant medical device manufacturer because "[t]he probative value of the fact that approximately 720 plaintiffs have brought suit is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time.").

Also, evidence of other litigations will likely confuse the jury and prejudice the Wayfarer Parties. *See Aghaeepour*, 2024 WL 2700564, at *8 ("Likewise, evidence of prior cases will likely confuse the jury and prejudice Defendants."); *Park West Radiology v. CareCore Nat. LLC*, 675 F.Supp.2d 314, 324 (S.D.N.Y. 2009) (precluding references to other malpractice lawsuits,

27

allegations, and other disputes involving doctors associated with plaintiff). The jury may be misled into concluding that the number or nature of other lawsuits is relevant to the merits of this one or that Defendants engage in repeated misconduct leading to multiple litigations.  The potential prejudice far outweighs any imagined probative value of other lawsuits.  Accordingly, the Court should preclude evidence regarding other litigations against Defendants as inadmissible under Rule 403.

**B.      The Court Should Exclude Evidence of Related and Unrelated Lawsuits, Including Suits Involving Melissa Nathan or Jennifer Abel.**

The general rule against the admission of evidence relating to other lawsuits should also be applied to exclude all reference to *Jones et al. v. Abel et al.* (25-cv-779) (the "Jones Action"), as well as other lawsuits asserting claims against Defendants Jennifer Abel and Melissa Nathan. Pursuant to Rules 401, 402, and 403, the Court should preclude these exhibits as well as any reference to those litigations and the allegations therein because such evidence is not relevant to the matter before this Court, and any reference to the above-referenced exhibits would be unduly prejudicial to the Wayfarer Parties.

The jury could easily confuse any evidence regarding the merits of the Jones Action (which involves some of the same parties and witnesses as this case) or other actions involving Melissa Nathan with the merits (or lack thereof) of this case, thereby causing undue prejudice to the Wayfarer Parties. "Courts routinely exclude 'evidence relating to previous litigations involving one or both of the same parties where the merits of those prior litigations would 'become inextricably intertwined with the case at bar.'" *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLC*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (quoting *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007)).  Accordingly, the Court should preclude evidence regarding other

28

litigations against Melissa Nathan or Jennifer Abel, including the allegations therein (whether based in contract or tort), as inadmissible under Rule 403.

### Motion in Limine No. 7 To Preclude Any Reference To A Surreptitious Recording Of Nonparty Steve Sarowitz

The Wayfarer Parties anticipate Plaintiff will seek to introduce excerpts of a secretly taped 38-minute recording of an August 29, 2024 conversation between third party Claire Ayoub and Steve Sarowitz, in which he states an intent to vigorously defend his studio, Wayfarer, against any claims brought by Plaintiff and/or her husband.  In the soundbite, Sarowitz states in response to a question from Ms. Ayoub about protecting the studio:

> I will protect the studio like Israel protected itself from Hamas. There were 39,000 dead bodies.  There will be two dead bodies when I'm done.  And so, not dead, but dead to me.  You're dead to me. So that kind of dead.  But dead to a lot of people.  If they ever get me to that point, then I'll make it worth their while because I'm going to spend a lot of money to make sure the studio is protected. But I don't think we'll go there.

*See* Ex. B (PTX-251).  This statement has nothing to do with the merits of the case.

Plaintiff has repeatedly quoted this excerpt in its filings with the Court and to the press, characterizing it as a threat against Lively and Ryan Reynolds.  To create the false impression of a threat, Plaintiff has cynically omitted the qualifying phrase "Also, not dead but dead to me.  You're dead to me. So that kind of dead."

The recording is irrelevant in that it does not make any material fact of the case more or less likely.  The statement does not relate to Plaintiff's claims for sexual harassment and/or retaliation.  If anything, in the full recording, Sarowitz explains that no issues occurred on set.  The only purpose of this evidence would be to attack Sarowitz's character and prejudice the jury against Sarowitz and Wayfarer.  The soundbite falls squarely within the ambit of evidence typically

excludable under Rules 403 and 404.  Accordingly, the Court should preclude Plaintiff from introducing and/or referencing Sarowitz's comment to Ayoub.

### Motion in Limine No. 8 To Preclude Evidence Of Steve Sarowitz's Wealth, Financial Resources, And The Payment Of Defendants' Legal Fees

Plaintiff has repeatedly referred to Steve Sarowitz as a "billionaire" both in court filings and to the media.  "[E]vidence of a person or entity's wealth generally is inadmissible because it is usually irrelevant and unfairly prejudicial." *Tang Cap. Partners, LP v. BRC Inc.*, No. 22-CV-3476 (RWL), 2025 WL 1785245, at *4 (S.D.N.Y. June 27, 2025); *accord Uzhca v. Wal-Mart Stores, Inc.*, No. 17 CIV. 3850 (NSR), 2023 WL 2529186, at *6 (S.D.N.Y. Mar. 15, 2023).  That is especially so here, where Sarowitz's wealth is irrelevant to Plaintiff's claims.  Even assuming Sarowitz's financial condition once had some relevance to punitive damages, he is no longer a defendant in this matter and thus not subject to a punitive damages award.  Moreover, Sarowitz's financial status threatens to prejudice the jury.  In the current political climate, the term "billionaire" may have a negative connotation to some—perhaps many—potential jurors.  Balancing the lack of probative value of Sarowitz's wealth with the potential prejudice leads to the inescapable conclusion that such evidence should be precluded.  Fed. R. Evid. 403.

For similar reasons, payment of or responsibility for legal fees and costs incurred in defense of Lively's allegations should be precluded, as it lacks any relevance to the merits of Plaintiff's claims.

### Motion in Limine No. 9 To Preclude Evidence And Argument Relating To Bryan Freedman

Plaintiff's thirteenth cause of action for defamation was based solely on five post-litigation statements by the Wayfarer Parties' counsel, Bryan Freedman.  On April 2, 2026, the Court granted summary judgment to Defendants on this claim, eliminating any need for testimony relating to. Freedman's statements to the media.  In contrast, any such evidence threatens severe prejudice to

Defendants and their defense.  First, evidence of alleged misconduct by Defendants' trial counsel would tend to undermine his credibility with the jury and, by extension, erode his clients' credibility.  Indeed, the only reason why Plaintiff would seek to admit such evidence (which now bears no relevance to her remaining claims) would be to poison the jury against Defendants by undermining the credibility of their counsel.

Second, Freedman's testimony could very well implicate privileged communications between Freedman and his clients, as well as privileged work product.  Multiple objections on this ground at trial, albeit well taken, may leave the jury with the impression that Defendants and their counsel are attempting to hide something.  Freedman would thus face the Hobson's choice of looking evasive to the jury or sacrificing privileges fundamental to our system of justice.

Third, with the dismissal of the thirteenth cause of action, Plaintiff no longer has a claim for defamation and is not entitled to recover damages for defamation.  Allowing evidence of Freedman's allegedly defamatory statements threatens to confuse and mislead the jury into believing defamation—and defamation damages—are still issues.  The risk is particularly acute because Plaintiff is seeking hundreds of millions of dollars in "reputational harm" damages stemming from an alleged retaliatory digital campaign.  It is not a stretch of the imagination to anticipate that the jury might well confuse defamation damages, which are no longer available, and reputational harm damages which remain at issue.

For these reasons, the Court should preclude references to Bryan Freedman and, among other things, his allegedly defamatory statements should be precluded.

### Motion in Limine No. 10 To Preclude Evidence And
### Argument Concerning Retaliation In Anticipation Of Future Protected Activity

Lively has indicated, including in proposed jury instructions, that she intends to prove defendants took retaliatory actions because they "anticipated" Lively would engage in protected

activity in the future.  Evidence of anticipatory retaliatory measures is, by definition, irrelevant and inadmissible, and should be excluded from all aspects of the upcoming trial.

The law recognizes actionable retaliation only in connection with *past* protected activity, and not in connection with *future* protected activity.  One retaliates against something that has already occurred.  "[T]here can be no preemptive claim for retaliation, because retaliation presupposes a causal connection between an actual (and not contemplated) protected activity and an actual (and not contemplated) adverse employment action."  *Acosta v. Ross*, No. 23 CIV. 10292 (KPF), 2025 WL 2578079, at *12 (S.D.N.Y. Sept. 5, 2025); *see also Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." (collecting cases)); *Salaam v. Syracuse Model Neighborhood Facility*, No. 5:11-CV-948 MAD/ATB, 2012 WL 893487, at *3 (N.D.N.Y. Mar. 15, 2012) ("Quite simply, a person cannot be retaliated against for engaging in protected activity which has not yet taken place."); *Szarzynski v. Roche Lab'ys, Inc.*, No. 07-CV-6008, 2010 WL 811445, at *14 (W.D.N.Y. Mar. 1, 2010) ("Similarly, since past actions cannot logically be made in retaliation for future protected activity, plaintiff's retaliation claim fails as a matter of law.").

This well-settled principle applies to retaliation under FEHA.  *See Nejadian v. Cnty. of Los Angeles*, 40 Cal. App. 5th 703, 724 (2019) ("Because retaliation under FEHA requires the plaintiff to show that the employer was motivated to retaliate by the plaintiff's protected activity, actions the employer took before the plaintiff engaged in the protected activity necessarily are irrelevant."); *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1280 (E.D. Cal. 2012) (dismissing FEHA claim "given the absence of a causal connection between protected

32

activity and adverse employment action."); *cf. Adams v. Kmart Corp.*, 2001 WL 969049, at *4 (N.D. Cal. Aug. 10, 2001) ("In retaliation claims brought under Title VII and the FEHA, however, both the Ninth Circuit and California courts have held that the decisionmaker's knowledge of the protected activity is an essential element.").

It is anticipated that Lively may present evidence and argument that (1) Defendants contemplated she would make protected statements in the future, including statements about allegedly harassing conduct she had endured in the past, and (2) the smear campaign Defendants allegedly engaged in was in anticipation of such future statements. Such evidence and argument should be excluded.

**Motion in Limine No. 11 To Preclude Lively's Prior Descriptions Of Her Experience**

Lively includes on her exhibit list dozens of emails in which she purports to recount to others her objections about her experience on set. *E.g.*, PTX-195, PTX-392, PTX-344, PTX-158. Such materials are of limited relevance now that Lively's harassment claims have been dismissed. Moreover, many of these documents were written days or weeks after the alleged events, and are therefore not admissible for their truth under any hearsay exception—for example, Lively seeks to offer a ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████. Ex B (PTX-814). Similarly, Lively seeks to offer messages with Jenny Slate dated July 2023, while the set was shut down, ████████████████████████████████ ████████████████████████████████ (Ex. B (PTX-193, PTX-392)), as well as testimony from other witnesses reiterating ████████████████████████████ *E.g.*, Ex. A (Hoover Dep. at 134:17-136:19); Ex. D (Carroll Dep. at 47:4-7, 73:8-19, 76:25-77:7, 91:1-10, 120:20-121:16); Ex. E (Baker dep. at 92:17-93:6, 117:14-17, 118:2-14, 129:2-130:3, 210:15-24).

Lively should not be permitted to offer such messages as "prior consistent statements" unless and until her credibility is attacked at trial (if at all).

Rule 801(d)(1)(B) places strict limits on when prior consistent statements may be offered for their truth: only to rebut a charge of fabrication or to rehabilitate a witness whose credibility has been attacked. "The Rule 'does not allow impermissible bolstering of a witness' and 'the trial court has ample discretion to exclude prior consistent statements that are cumulative accounts of an event.'" *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *5 (S.D.N.Y. Feb. 24, 2022) (quoting Adv. Comm. Notes). Nor can 'prior consistent statements' be offered simply "to rebut 'only a generalized attack on credibility.'" *United States v. Thomas*, No. 7:23-CR-00481-NSR-1, 2025 WL 2860312, at *7 (S.D.N.Y. Oct. 9, 2025) (quoting *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986)). This is because, as the venerable Wright & Miller treatise explains: "Consistency and deceitfulness can coexist. Without such a logical connection to the theory of attack, the probative value of evidence supporting credibility would be insufficient to warrant its consideration." 28 Fed. Prac. & Proc. Evid. § 6206 (2d ed. Sept. 2025 update). In other words, "the prior consistent statement … must have 'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" *Ray*, 2022 WL 558146, at *5 (quoting *Pierre*, 781 F.2d at 331); *see also Thomas*, 2025 WL 2860312, at *7 (same).

To ensure that a prior consistent statement has any meaningful probative value and to ward off improper bolstering, there must be "some degree of fit" between the attack and prior consistent statement offered to rebut it. *United States v. Chiu*, 36 F.4th 294, 301 (1st Cir. 2022); *accord United States v. Roye*, 2016 WL 4147133, at *1 (D. Conn. Aug. 4, 2016); 1 McCormick On Evid.

34

§ 47 (9th ed.) ("The rehabilitating facts must meet the impeachment with relative directness. The wall, attacked at one point, may not be fortified at another, distinct point.").

But there is no way to determine what statements are consistent with a witness's trial testimony until the witness testifies, and there is similarly no way to determine what statements are necessary to rehabilitate the witness's credibility until specific events are challenged or the witness's credibility is attacked. Crucially, some of Lively's allegations are not disputed—for instance, Defendants are not denying the contents of the slow dance video Lively makes allegations about, or the comments that were made while filming the "onesie" scene and captured on video. Thus, it is premature for the Court to rule that any of the statements Lively apparently offers as "prior consistent statements" are admissible as such. *See Ray*, 2022 WL 558146, at \*6 (denying motion to admit statements under Rule 801(d)(1)(B) as "premature" prior to openings and testimony); *cf. Thomas*, 2025 WL 2860312, at \*7 (conditionally granting the government leave to offer prior consistent statements only after the parties had opened, the witness in question testified, defendant attempted to impeach her credibility, and "the Rule 801(d)(1)(B) requirements for that specific statement were met").

To the extent Defendants do choose to challenge certain aspects of Lively's account as false or exaggerated or otherwise open the door to prior consistent statements, Defendants reserve the right to object on the basis that Lively cannot satisfy the other requirements of Rule 801(d)(1)(B).

**Motion in Limine No. 12 To Preclude Evidence
Concerning Remedial Measures Taken By Defendants**

Lively claims she asked for certain remedial measures to be taken, and that such measures were taken, to address concerns she raised during the first phase of filming. Such measures, according to Lively, include execution of the document entitled "Protections for Return to Production," also known as the "Contract Rider Agreement" or "CRA," and the provisions

35

contained therein.  Such measures, she claims, also include execution of a nudity rider, and the provisions contained therein.

Lively should not be permitted to argue that such measures qualify as admissions or otherwise constitute evidence that defendants engaged in certain conduct.  "Under FRE 407, evidence of measures taken subsequent to an event which, if taken previously, would have made the event less likely to occur is inadmissible to prove … culpable conduct in connection with the event."  *Fish v. Georgia-Pac. Corp.*, 779 F.2d 836, 839 (2d Cir. 1985); *see* Fed. R. Evid. 407.  Consistent with this Rule, the Second Circuit has held that attempts to use remedial measures as proof of misconduct are "highly prejudicial" and improper.  *Cann v. Ford Motor Co.*, 658 F.2d 54, 60 (2d Cir. 1981).

Under Rule 407, courts routinely exclude evidence of measures implemented in response to allegations of sexual harassment, discrimination, and other civil rights violations—remedial measures that include policy changes, contractual agreements, and acquiescence to the plaintiff's demands.  In *Estate of Hamilton v. City of New York*, 627 F.3d 50 (2d Cir. 2010), the district court prevented plaintiffs in a Title VII case from introducing evidence that their employer had changed its promotion process to address their concerns of unfairness.  The Second Circuit affirmed, holding that it "plainly runs afoul of Rule 407" to use such evidence to argue that the earlier process was, in fact, discriminatory.  *Id.* at 53-54.  There are many other similar cases.[6]  Similarly, in other

---

[6] *See Dickerson v. Prison Health Servs. Inc.*, 495 F. App'x 154, 157 (2d Cir. 2012) (new policy aimed at preventing sexual abuse could not be used to show prior culpable conduct); *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 153-54 (4th Cir. 1995) (rejecting plaintiff's argument that "corrective action by an employer amounts to a concession that discrimination actually took place"); *Schafer v. Bd. of Co-op. Educ. Servs. of Nassau Cnty.*, No. 06-cv-2531, 2012 WL 5547319, at *1-2 (E.D.N.Y. Nov. 15, 2012) (excluding evidence of change in student disciplinary policies); *Medina v. D.C.*, No. 97-cv-594, 2008 WL 11388705, at *6 (D.D.C. July 7, 2008) (excluding evidence that the plaintiff's employer had entered into an agreement with the DOJ's Office for Civil Rights to undertake measures to prevent discrimination); *Peck v. Hudson City Sch. Dist., Hudson, N.Y.*, 100

contexts, the Second Circuit and other courts have applied Rule 407 to exclude evidence of changes in contractual language (like the CRA), when offered to suggest that changes were needed to remedy some defect.[7]

The Court should therefore prohibit Lively from offering evidence or argument concerning remedial measures for the purpose of proving liability or the existence of some prior wrongdoing. If either the CRA or nudity rider comes into evidence, then defendants would be entitled to a limiting instruction upon request. *See* Fed. R. Evid. 105 (where evidence is admissible for some purposes but not others, the court "must restrict the evidence to its proper scope and instruct the jury accordingly"); Wright & Miller, 23 Fed. Prac. & Proc. Evid. § 5291 (2d ed.) ("The party against whom the evidence is admitted also is entitled to … an order barring the opponent from asserting during argument that the evidence should be considered for a prohibited purpose.").

For instance, Lively may seek to introduce the CRA into evidence to support her claim for breach of contract. While the retaliation provision of the CRA may be relevant for purposes of establishing her alleged breach, none of the other provisions of the CRA are relevant for that purpose, and insofar as Lively describes them as remedial measures, they may not be used to establish the existence of any prior wrong. *See* Fed. R. Evid. 403, 407.

---

F. Supp. 2d 118, 122 (N.D.N.Y. 2000) (excluding evidence of "change in sexual harassment policy").

[7] *R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Loc. 89-22-1, I.L.G.W.U., AFL-CIO*, 33 F.3d 145, 156 (2d Cir. 1994) (suggested revisions to contract could not be used to prove prior unlawful conduct); *Reynolds v. Univ. of Pennsylvania*, 483 F. App'x 726, 732 n.2 (3d Cir. 2012) ("Changes in contract language may be considered subsequent remedial measures or 'repairs,' pursuant to Rule 407."); *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, No. 13-cv-47, 2016 WL 165698, at *8 (D. Neb. Jan. 13, 2016) (preventing party from using revisions to employment agreement to show that prior agreement was inadequate); *cf. Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-cv-2838, 2008 WL 9358563, at *5 (N.D. Ga. Apr. 23, 2008) (excluding evidence that defendant entered into an agreement with the SEC to undertake remedial measures).

37

## Motion in Limine No. 13 To Preclude Lively From
## Offering Improper Lay Opinion

Lively's deposition designations and exhibit list indicate that she plans to offer improper lay opinion in at least three areas: (1) to show that other people thought Defendants' conduct was inappropriate; (2) to show that other people thought Lively's cut of the movie was good; and (3) to show that other people believed Lively had a good character. These lay opinions should be excluded under Rules 701, and much of this evidence is also inadmissible under Rules 401, 402, 403, and 404.

### A.   Lively Should Be Barred From Offering Lay Opinion That Other People Believed Defendants' Conduct Was Improper

Lively should be precluded from offering evidence that other people believed Defendants' conduct was improper. For example, Lively has designated Alex Saks's testimony that "



Ex. C (Saks Dep. at 137:6-10). Lively has also designated Saks's testimony that it "

Ex. C (Saks Dep. at 140:10-20). Lively has also designated Saks's testimony that it was "

Ex. C (Saks Dep. at 146:19-24). Significantly, Saks was not present for any of these incidents.

There are numerous other similar examples. Lively has designated the testimony of Warren Zavala in which Zavala, addressing a hypothetical, opines that "

Ex. F (Zavala Dep. at 221:17-222:13). Lively has designated a message chain dated

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████    Ex. B (PTX-188 (JS0000283)).  The list goes on.

None of this evidence is admissible, and no similar lay opinion should be permitted from the witness stand.  Rule 701 permits lay testimony in the form of an opinion only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Lively's proposed use of lay opinion on the "inappropriateness" of Defendants' conduct flunks each requirement.

First, most of the proposed lay opinion is not "based on the witness's perception."  The rationale for the admission of lay opinion is the "recognition that lay witnesses often have difficulties describing factual situations in language that is not that of an opinion" and that "[m]any factual situations that people observe … cannot be adequately described in words confined to descriptions of observable phenomena."  4 Weinstein's Federal Evidence § 701.02; *accord United States v. Garcia*, 413 F.3d 201, 211-12 (2d Cir. 2005) (explaining that an example of proper lay opinion would be testimony by an observer that a particular participant in a drug deal was "directing the transaction").  But none of the opinions cited above—except, arguably, some of the messages from Jenny Slate—relate to incidents that the witnesses themselves observed.  Rather, they are naked attempts to put before the jury their opinions about incidents in which they were not directly involved.

Second, even assuming the witnesses were opining on incidents that they themselves witnessed, the opinions would not be "helpful" to the jury.  Rule 701(b) "helps protect against the admission of opinions which would merely tell the jury what result to reach, rather than providing

information that would assist the jury in drawing its own conclusions." *Village of Freeport v. Barrella*, 814 F.3d 594, 611-12 (2d Cir. 2016) (vacating judgment in employment discrimination case where witnesses were improperly permitted to offer lay opinion on mayor's motivations for personnel decisions). "[A]ttempts … to introduce meaningless assertions which amount to little more than choosing up sides" should be excluded "for lack of helpfulness." *Hester v. BIC Corp.*, 225 F.3d 178, 181-82 (2d Cir. 2000). Moreover, "[t]he likely benefits of lay opinion testimony must outweigh its costs" and "the costs of lay opinion increases and the benefits diminish the closer the opinion approaches the crucial issues in the case." *Id.* at 182. The harassment claims are no longer in the case and to the extent this lay opinion bears on whether Lively had a good faith basis to believe she was opposing illegal harassment, the opinions of various participants that Defendants' conduct was ▮▮▮▮▮▮ does not help the jury understand the testimony but simply tells the jury "what result to reach." *Village of Freeport*, 814 F.3d at 611.

Third, the reason Lively is offering the supposed lay opinions is not to illustrate the factual perceptions of an everyday observer but to convey the opinions of witnesses with specialized knowledge and experience in the movie industry. "If [an] opinion rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Garcia*, 413 F.3d at 215. Lively doesn't want Saks' testimony as a lay person, she wants her perspective as an experienced movie producer. The same goes for the testimony of Warren Zavala, the WME agent, about what comments are or are not appropriate as between producer, director, and actor. Lively isn't interested in the opinion of Warren Zavala, man on the street: she wants the opinion of Warren Zavala, the entertainment industry expert. Such testimony is not admissible under Rule 701.

Finally, the admission of this type of lay opinion creates significant risk that the jury will conflate "inappropriate" with "illegal" and therefore raises serious concerns of confusion and unfair prejudice under Rule 403. No opinion on what is or is not legal could properly be put before the jury because evidence must not "embody[] legal conclusions that encroach upon the court's duty to instruct on the law." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Such opinions are also unfairly prejudicial in suggesting legal conclusions on the ultimate issues. *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988). Even a properly instructed jury will struggle to disentangle testimony as to what other witnesses believe is or is not appropriate from the question of whether particular conduct is or is not unlawful. This creates a heightened risk that jurors will "render a decision on an improper basis by giving this testimony undue weight." *United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007).

### B. Lively Should Be Barred From Offering Lay Opinion That Other People Thought Her Cut Of The Movie Was Good

Lively should also be precluded from offering lay opinion that various people preferred her cut of IEWU to Baldoni's cut. For example, Lively has designated a portion of Hoover's deposition transcript in which Hoover explains that she ███████████████████ ███████████████ Ex. A (Hoover Dep. at 94:8-95:13). Similarly, Lively has designated a portion of Josh Greenstein's deposition in which Greenstein says ████ ████████████████████████ ████████████ Ex. G (Greenstein Dep. at 133:4-7); *see also id.* at 134:1-2 ████████ ████████████); Ex. B (PTX-337 (JS0000485)) (████████████ These are just examples.

That some people involved in the film believed Lively's cut was better than Baldoni's cut has no relevance to any of the issues in the case. It does not make it more or less likely that Lively

41

had a good faith belief that she had suffered illegal harassment.  It does not make it more or less likely that Lively opposed illegal harassment and was retaliated against due to that opposition. These opinions, moreover, are not "rationally based on the witness's perception" and will not help the jury understand the witnesses' testimony.  Fed. R. Evid. 701.  Even assuming that this testimony satisfies Rules 401 and 701, it should be excluded under Rule 403 as it will waste substantial trial time and confuse the issues. The Court should not permit the trial to become a referendum on which cut had more support and from whom.

### C. Lively Should Be Barred From Offering Lay Opinion That Other People Believed She Had A Good Character

Lively should be precluded from offering evidence that other people involved in the making of IEWU believe her to be a talented, good, and inspiring person.  For example, Slate tells Lively ███████████████████████████████████████ ██████████   Ex. B (PTX-337 (JS0000485)).  Or this: "███████████████████████ ████████████████████████████   Ex. B (PTX-596 (BL000021016)).  Or messages from Hoover telling Lively, ████████████████████████████████ ██████████████████████████████   Ex. B (PTX-532 (BL-000021262)).

That some people like and admire Lively is inadmissible as improper lay opinion under Rule 701.  It is also irrelevant and a waste of the jury's time, and so inadmissible under Rules 401, 402, and 403.  To the extent Lively would offer examples of her other good acts to show her good character, such evidence is barred under Rule 404(b)(1), which prohibits evidence of other good acts just as it prohibits evidence of other bad acts.  *See United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021).

**Motion in Limine No. 14 To Preclude Speculative Evidence
About The Use Of "Bots"**

Lively has designated exhibits and testimony that contain speculative musings by Lively
and others about the use of "bots" to generate inorganic social media content.  For example, in one
designated exhibit, Lively texts that Baldoni ████████████████████████████  Ex. B
(PTX-527).  Another designated exhibit, a slide deck prepared by Lively's hair care brand, ████
████████████████████████████████████████████████████████████

Ex. B (PTX-653).

These statements are no more than conclusory opinions, lacking any requisite indicia of
reliability, and insofar as they report on out-of-court findings or statements are nothing but pure
hearsay.  They are speculative at best.  Moreover, nothing in the record establishes any foundation
to establish that the speakers or authors of such statements had any personal knowledge or
otherwise sufficient knowledge to opine on the use of bots.  The introduction of such evidence
would serve only to inflame the jury and unduly prejudice defendants by prompting the jury to
consider unsupported speculation about the use of bots.  *See* Fed. R. Evid. 401, 402, 403, 602, and
701.

**Motion in Limine No. 15 To Preclude Evidence
Concerning The Following Irrelevant Topics**

Lively's lengthy pretrial exhibit list and voluminous deposition designations suggest she
will seek to introduce evidence on the following topics.  None are relevant to the remaining claims
and will lead only to juror confusion, unfair prejudice, and an unnecessarily long trial.  *See* Fed.
R. Evid. 401, 402, and 403.

1.  Evidence and argument concerning speculative or uncertain damages claims, as
discussed in the Wayfarer Parties' accompanying *Daubert* motions.

2.  Articles, videos, or podcasts in which former defendants Baldoni and Heath discuss
their personal and romantic histories, including but not limited to full episodes of

their *Man Enough* podcast and Baldoni's books.  *E.g.*, Ex. B (PTX-030, PTX-031, PTX-032, PTX-033, PTX-034, PTX-041, PTX-043, PTX-047, PTX-052, PTX-055).

3.    Speeches former defendant Sarowitz made about his Baha'i faith. *E.g.*, Ex. B (PTX-040, PTX-046).

4.    Evidence concerning picketing, or respect or lack of respect for picketing, during the writers' strike.  *E.g.* Ex. B (PTX-195).

5.    Wayfarer's or IEWUM's policies and procedures for preventing sexual harassment.

6.    Wayfarer's or IEWUM's policies and procedures for investigating sexual harassment.

7.    Whether consent was provided for certain tape-recorded phone calls.

8.    Evidence of Ryan Reynolds' charitable contributions.  *E.g.*, Ex. B (PTX-065, PTX-113).

9.    Comments on various social media posts endorsing Lively's allegations.  *E.g.*, Ex. B (PTX-219A, PTX-409A).

### Motion in Limine No. 16 To Preclude Evidence And Argument Of Reputational Harm Damages

### A.    Plaintiff's Failure to Comply With Fed. R. Civ. P. 26(A)(1)(A)(iii) Warrants Exclusion of Reputational Harm Damages

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) ("Rule 26(a)") requires that at the outset of a case, without waiting for discovery, a party provide a computation of each category of damages sought in the pleadings and the documents the party relied on in computing those damages.  This computation requires more than setting forth a damages amount or mere arithmetic calculation. *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 237-38 (S.D.N.Y. 2018) (precluding damages where "plaintiffs failed to provide a coherent computation of damages" and "failed to provide the 'documents or other evidentiary material … on which computation [was] based.'") (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)); *Beata Music LLC v. Danelli*, No. 18-CV-6354 (JGK), 2022 WL 61862, at *5 (S.D.N.Y. Jan. 6, 2022) (quoting *Okeke v. New York & Presbyterian Hosp.*, No. 16-CV-570 (CM), 2017 WL 2484200, at *3 (S.D.N.Y. June 6, 2017) ("failure to identify

44

the categories of damages sought by the plaintiff or provide a computation of those damages in an initial disclosure "is alone sufficient to preclude her from submitting evidence of it at trial."); *Pilitz v. Inc. Vill. of Freeport*, No. 12-CV-5655(JS)(ARL), 2020 WL 6945927, at *3 (E.D.N.Y. Nov. 25, 2020) ("[A] party cannot satisfy Rule 26(a) by merely setting forth the figure demanded unaccompanied by any analysis; rather, the disclosures must be sufficiently specific that the opposing party has some basis to calculate the damages claimed against it.") (internal quotations omitted).

The party seeking damages has the burden to disclose a calculation, and there is no burden on the opposing party to learn of a damages theory in discovery. *Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14CIV48AJNHBP, 2016 WL 184407, at *3 (S.D.N.Y. Jan. 15, 2016). As shown below, Lively failed to meet her burden under Rule 26(a)(1) with respect to two categories of reputational harm and thus should be precluded from presenting testimony and evidence of reputational harm damages.

### 1. Factual Background

Lively's serial Rule 26 Disclosures purport to set forth a computation of her damages and an intent to make available supporting documents, ███████████████████████████████ ███████████████████ They do no such thing with respect to Lively's claims for reputational harm. Lively's Initial Rule 26(a)(1) Disclosures ("Initial Disclosures"), served on February 18, 2025, and Amended Rule 26(a)(1) Initial Disclosures ("First Amended Disclosures") served on June 11, 2025, six months after the filing of her Complaint, do not mention reputational harm as a component of damages, citing only ████████████████████████████████ ███████████████████████████████████ Ex H, p. 9; Ex. I, p. 29. A disclaimer states that ███ ████████████████████████████████████████████████████████████

████████████████████████████████ Ex H, p. 9; Ex. I, p. 29.

On July 17, 2025, the Court granted the Wayfarer Defendants' motion to compel "with respect to Lively's obligations under Rule 26(a)(1)(A)(iii)." Dkt. No. 433. The Court noted that "[a]lthough Lively's damages may depend largely on expert discovery, this does not relieve her of the obligation to comply with Rule 26." *Id*. In response, on July 25, 2025, Lively served her Second Amended Rule 26(a)(1) Initial Disclosures ("Second Amended Disclosures") which, for the first time, ████████████████████████████████████ ████████████████████████████████████ without any computation or disclosure of materials that might be relevant to a computation. Ex. J, p. 34.

Fact discovery closed on September 30, 2025.[8] At this point, Lively had disclosed ███████████████████████████████ without any computation or identification of supporting documents that might shed light on the nature or amount of Lively's ████████████ damages. However, on the same day fact discovery closed, Lively served Third Amended Rule 26(a)(1) Initial Disclosures ("Third Amended Disclosures") which adopted the identical language from the Second Amended Disclosures. Ex. K, p. 43. There is no computation or explanation for how the impressions may have been estimated, the value assigned to each impression or how the total damages were computed. Nor did Lively produce or identify documents that might support her damages figure. Lively merely asserted that ████████ ████████████████████████████████████ ████████████████████ *Id.*

On October 17, 2025, Lively served her expert reports. Plaintiff's expert Ashlee Humphreys opined that Lively sustained $24,375,267 in 'reputational harm' damages—████

---

[8] The cut-off was extended to allow for the completion of a discrete number of depositions.

██████████████████████████████████████████. Ex. L, p. 107. Lively's Fourth Amended Rule 26(a)(1) Initial Disclosures ("Fourth Amended Disclosures") followed on October 29, 2025, a month after fact discovery closed. Ex. M. These Disclosures substantially diverge from her Third Amended Disclosures by reducing Lively's 'reputational harm' damages from ██ ██████ to "approximately $24,375,267" "based on a conservative estimated 116,959,267 impressions of the defamatory statements, subject to expert testimony," rather than the ██████ ██████████ that tethered the ██████████ in damages set forth in Lively's Second and Third Amended Disclosures. There is no computation, and Lively does not explain the reduction or how approximately twice as many defamatory impressions resulted in a ████████████████ in damages. Nor did Lively produce or even identify documents that allegedly supported her claim for 'reputational harm.'

In an even more stark departure from its predecessors, Lively's Fourth Amended Disclosures added a new category of damages, dubbed 'other reputational harm' which Lively estimated at approximately $36.5 million to $40.5 million, "based on a conservative estimated 176,738,781 impressions of the terms "bully," "mean girl," and "tone deaf," attributable to the retaliatory campaign, which impressions are subject to expert testimony." Ex. M, pp. 43-44. Lively did not provide a computation of these newly surfaced damages, merely noting that "All computations, assessments, and estimates are conservative and subject to amendment. Lively has identified each damages figure as the minimum sought in each category based on presently available information." *Id*., p. 44. Once again, Lively failed to produce or identify documents supporting a calculation of 'other reputational harm' damages.

Thus, Lively's Fourth Amended Disclosures, served well after fact discovery closed, increased her total reputational harm damages from ██████████ to a minimum of between

47

$60,875,267 and $68,875,267.  Lively's Fourth Amended Disclosures further state that "[a]s the Court acknowledged, Ms. Lively's damages depend largely on expert discovery, and the precise method of calculating damages is subject to expert discovery where applicable.  ECF No. 433." Ex. M, p. 44.  However, none of Lively's expert reports include a computation relating to Lively's belatedly disclosed 'other reputational' harm damages.

### 2.    Lively Should Be Precluded from Presenting Evidence or Argument on Reputational Harm Damages Pursuant to Fed. R. Civ. P. Rule 37(c)

Federal Rule of Civil Procedure 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) ... shall not, unless such failure is harmless, be permitted to use as evidence at a trial ... any ... information not so disclosed."  The purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary and to avoid 'surprise' or 'trial by ambush.'"  *Freeman v. Giuliani,* No. 24-CV-06563 (LJL), 2025 WL 81370, at *4 (S.D.N.Y. Jan. 13, 2025), *appeal withdrawn*, No. 25-107, 2025 WL 1122435 (2d Cir. Jan. 28, 2025) (Liman, J.) (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002)); *see also Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008); *see also Funk v. Belneftekhim*, No. 14-CV-376 (BMC), 2020 WL 7642868, at *3-4 (E.D.N.Y. Dec. 23, 2020), *clarified on denial of reconsideration*, No. 14-CV-376 (BMC), 2020 WL 13891271 (E.D.N.Y. Dec. 30, 2020) ("The failure to disclose a theory can carry harsh consequences.").

To avoid preclusion, a plaintiff such as Lively "bear[s] the burden of demonstrating that [her] non-compliance [with Rule 26] was 'substantially justified' or 'harmless.'" *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (citing Fed. R. Civ. P. 37(c)(1)) (A "party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use" it); *see also Amer. Stock Exchange, LLC v. Mopex, Inc.,* 215 F.R.D. 87, 93 (S.D.N.Y. 2002); *Williams v. Boulevard Lines, Inc.*, No. 10 CIV. 2924 DF, 2013 WL

5652589, at *3 (S.D.N.Y. Sept. 30, 2013) (citing *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 635 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284).

Plaintiff cannot meet her burden under Rule 37(c).  First, Lively's failure to comply with Rule 26(a)(1) was not substantially justified with respect to reputational harm damages.  The only excuse or justification offered by Lively in her five Disclosures (even those served after the close of discovery and disclosure of her expert reports) for failing to provide the required computations was that they depended on additional discovery and/or expert testimony.  *See Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (rejecting the excuse that the party needed expert discovery to comply with initial disclosure requirements).  Moreover, only a single expert, Ashlee Humphreys, provided an estimate of 'reputational harm' damages and neither Humphreys nor any other expert even mentioned 'other reputational harm' damages.  Ex. L. Hence, Lively cannot show that her uncured failure to comply with Rule 26(a)(1) was substantially justified.

Second, Lively cannot show that her failure to provide computations or documents to support over $60 million in reputational harm damages was harmless.  Harmlessness means an absence of prejudice to the defendant.  *See Williams v. Cnty. of Orange*, No. 03 CIV. 5182 (LMS), 2005 WL 6001507, at *3 (S.D.N.Y. Dec. 13, 2005) ("Non-compliance is considered 'harmless' when there is no prejudice to the party that was entitled to disclosure.").  Lively's failure to comply with Rule 26(a)(1) was not harmless but severely prejudiced Defendants by depriving them of the tools necessary to challenge Lively's mega-million-dollar damages claims.

The disclosure of ███████████████████████████████ ██████████ was first made in Lively's Second Amended Disclosures served after the Court granted a motion to compel Lively's obligation to disclose damages.  Only after fact discovery closed did

49

Lively amend her Disclosures to claim $24,375,267 in 'reputational harm' damages based on an estimated 116,959,267 impressions. As noted, Lively's claim for 'other reputational harm' damages of between $36.5 and 40.5 million based on 176,738,781 impressions did not even surface until her Fourth Amended Disclosures, served on October 29, 2025, a month after fact discovery closed.

Most importantly, even though Lively disclosed these basic facts and an amount of the purported damages, she never complied with Rule 26(a)(1) by providing a computation of each category of damages sought in the pleadings and supporting documents. Indeed, her vague estimates of damages based on a number of impressions fail even to rise to the level of the simple arithmetic calculation courts have found wanting. *See Gym Door Repairs, Inc.*, 331 F. Supp. 3d at 237-38; *Beata Music LLC v. Danelli*, No. 18-CV-6354 (JGK), 2022 WL 61862, at *5 (S.D.N.Y. Jan. 6, 2022) (quoting *Okeke v. New York & Presbyterian Hosp.*, No. 16-CV-570 (CM), 2017 WL 2484200, at *3 (S.D.N.Y. June 6, 2017); *Pilitz v. Inc. Vill. of Freeport*, No. 12-CV-5655(JS)(ARL), 2020 WL 6945927, at *2 (E.D.N.Y. Nov. 25, 2020).

As a result, Defendants lacked the ability to serve written discovery requests, including document requests, for information relating to Lively's alleged reputational harm damages. Defendants were similarly deprived of any opportunity to examine fact witnesses, including Lively, on the nature and calculation of over $60 million in damages purportedly attributable to reputational harm damages, including, among other things, how the damages were calculated, the source and method used to estimate the number of impressions on which the damages are reportedly based, and how the total monetary damages flow from each impression. Defendants were also unable to provide computations for their own damages experts to analyze and refute.

Based on this record, the Court should preclude evidence of Lively's 'reputational harm' and 'other reputational harm' damages which severely prejudiced Defendants' ability to mount a defense to claims of over $60 million in damages that were not properly disclosed in Lively's five Disclosures, either before or after the fact discovery cut-off.  *See Enchante Accessories, Inc. v. Turko Textiles, LLC*, No. 19CV00581(GHW)(SN), 2023 WL 395221, at *3–4 (S.D.N.Y. Jan. 25, 2023) ("Plaintiff has claimed to be pursuing 'damages' but has failed to make the disclosures mandated under Rule 26 and therefore is automatically precluded from presenting related evidence at trial under Rule 37.").

**B.    Plaintiff is Not Entitled to Reputational Harm Damages Attributable to Her Dismissed Defamation Claim**

There is another reason why Lively's alleged "reputational harm" damages should be excluded, even assuming they were timely disclosed.  On April 2, 2026, the Court entered an order granting in part and denying in part Defendants' motion for summary judgment.  Among other things, the Court dismissed the thirteenth claim for relief for defamation based on statements by Defendants' counsel, Bryan Freedman.  As noted, Lively's Fourth Amended Initial Disclosures reflect $24 million in reputational harm damages. This number is based on the expert report of Plaintiff's expert, Ashlee Humphreys, who opined on Lively's 'reputational harm' damages.  Humphreys states in her report that "I have also been asked (1) to calculate the number of impressions of the allegedly defamatory statements ("At-Issue Statements") made about Ms. Lively by Baldoni's attorney, Bryan Freedman." Ex. L, p. 3.  Humphreys opines that a reputational repair campaign to counteract the damage to Ms. Lively's reputation from the At-Issue Statements would cost between $14,625,160 and $24,375,267.  *Id.*, p. 6.

The Court has now dismissed this cause of action based on the fair report and litigation privileges.  Since the cause of action is now gone, Lively is not entitled to damages allegedly caused by Freedman's alleged defamatory statements.

**Motion in Limine No. 17 To Preclude Evidence And**
**Argument Relating To Plaintiff's Allegedly Lost Profits And Lost Royalties**

A significant component of Plaintiff's damages claims relates to allegedly lost profits to businesses she claims to own an interest in including Betty B Holdings and Family Hive.  However, a shareholder such as Lively "cannot sue in h[er] individual capacity to redress wrongs inflicted upon a corporation in which [s]he holds stock." *Gray Gables Corp. v. Arthur*, 2022 WL 905393, at *1 (2d Cir. Mar. 29, 2022).  "An individual lacks standing to sue when the alleged injury is based on an injury to a corporate entity."  *Ali v. NYC Env't Control Bd.*, 670 F. App'x 26, 27 (2d Cir. 2016).

Courts routinely reject claims like Lively's in which individuals seek redress for corporate damages, including lost profits.  *See Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987) (affirming dismissal and noting "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation"); *Karkare ex rel. JN v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Loc. 580*, 140 F.4th 60, 65 (2d Cir. 2025) (no standing despite plaintiff's assertions that he was "personally aggrieved" and "may have faced the risk of financial loss as a result"); *Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019); *Ali*, 670 F. App'x at 27 ("[A]n LLC and its owner or members are not interchangeable for the purposes of standing").

Lively's damages expert, Jeffrey Kinrich, calculated Lively's purported damages by calculating lost profits of Betty B (based on its Betty Booze product line) and Family Hive (based on its Blake Brown product line) and multiplying those lost profits by the membership interests of

LOL HATA, LLC ("LOL HATA"), an entity controlled by Lively.[9] Ex. N (Kinrich Rpt. at ¶ 21). As explained in *Gray Gables Corp.*, *Ali*, and *Jones*, neither LOL HATA's nor Lively's "share" of lost profits is recoverable as damages because Lively lacks standing to seek damages suffered by the companies.

When Defendants raised Lively's lack of standing in their motion for summary judgment, Lively argued for the first time in her opposition that she actually seeks damages to her "business reputation" rather than lost profit damages. However, that argument is directly contradicted by every iteration of Lively's initial disclosures, Kinrich's expert report, and Kinrich's deposition, each of which describe Lively's damages as "lost profits." See Ex. N (Kinrich Rpt. at 32, 34) ("Lost profits in an amount of approximately $71,000,000, subject to expert testimony"); Ex. K (██████████████████████████) (same) and 43; Ex. M (Fourth Amended Initial Disclosure at 41) ("Lost profits between approximately $39.6 million and $143.5 million subject to expert testimony") and 43; Ex. N (Kinrich Rpt. at 3) ("The total damages suffered by Ms. Lively based on her lost profits in Blake Brown and Betty Booze, as well as her lost royalties from Blake Brown, are between approximately $39.6 million and $143.5 million")[10]; Ex. O (Kinrich Dep. at 83:9-24) (██████████████████████████████████).

---

[9] Kinrich admits that ██████████████████████████████ Ex.O (Kinrich Dep. at 84:17-85:4). Kinrich assumes that ██████████████████████████████ Ex. O (Kinrich Dep. at 101:14-102:4). Regardless, Lively's interest, whether direct or indirect, does not cure her lack of standing to seek any portion of Betty B Holdings' or Family Hive's purported lost profits.

[10] Each iteration of Lively's initial disclosures also contain a category of damages for "reputational harm" which notably does not include damages associated with Betty B or Family Hive. Ex. J (██████████████████████); Ex. K (██████████████████████); Ex. M (Fourth Amended Initial Disclosure at 43).

Moreover, Lively and Kinrich never explain, because they cannot, how a calculation of lost profits equates to a loss of "business reputation." Lively's last-minute semantic wordplay should be seen for what it is – an attempt to evade her own lack of standing to claim damages suffered by the Companies.

Lively's claim for royalties fares no better as the evidence establishes that Lively herself is not entitled to any royalties from Family Hive. Ex. P (Family Hive Professional services agreement) at 1, 10 (████████████████████████); Ex. Q (Family Hive Dep. part 2 at 246:20-24) ("████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████); 240:7-19 (████████████████████ ██████). Lively is the plaintiff, not LOL HATA. Therefore, she lacks standing to seek damages for lost royalties to LOL HATA and the Court should exclude all evidence and argument regarding lost profits. *Jones*, 836 F.2d at 736 ("[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation").

In sum, Lively has no viable claim for lost profits and royalties, however labeled, and evidence relating to Betty B Holding and Family Hive's allegedly lost profits including, without limitation, testimony from corporate representatives on corporate earnings, is irrelevant and thus should be excluded.

### Motion in Limine No. 18 To Preclude Evidence Of Emotional Distress Damages Beyond "Garden Variety" Emotional Distress Damages

Lively initially asserted causes of action for intentional and negligent infliction of emotional distress. On June 2, 2025, Wayfarer filed a motion to compel medical information relating to her infliction of emotional distress claims. Dkt 261. Lively opposed, noting she had agreed to dismiss the intentional and negligent infliction of emotional distress damages. Dkt

264.  On June 3, 2025, the Court entered an order denying the motion without prejudice "based on Plaintiff's representation that the relevant claims will be withdrawn."  Dkt 266.  The order stated that "[f]or avoidance of doubt, if the claims are not dismissed, the Court will preclude Lively from offering any evidence of emotional distress."  *Id.*  On June 10, Lively filed a letter seeking clarification of the June 3 Order, noting that "she still pleads—and intends to introduce evidence of—garden variety emotional distress in connection with her other, remaining claims."  Dkt. 308. In response, the Court clarified its Order, stating the June 3 ruling "referred to medical evidence of emotional distress.  The ruling did not preclude Lively from offering evidence of garden-variety emotional distress."  Dkt. 313.  On June 13, the parties stipulated to dismiss the intentional and negligent infliction of emotional distress causes of action with prejudice.  Dkt. 337.

In this district, "[d]amages for garden-variety claims generally range from $5,000 to $30,000." *Castillo v. Isakov*, No. 22 CIV. 6888 (LJL) (GS), 2024 WL 5323851, at *12 (S.D.N.Y. Dec. 27, 2024) (quoting *Aponte*, 2024 WL 3796806, at *9 (citing *Yu*, 2023 WL 8438669, at *6 (S.D.N.Y. Oct. 5, 2023)); *see also Gavel*, 2024 WL 4203732, at *6 ("Garden variety emotional distress claims 'generally merit $5,000 to $35,000 awards.'") (quoting *Najnin v. Dollar Mountain, Inc.*, No. 14 Civ. 5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015)); *Bick v. City of New York*, No. 95CIV.8781(KMW)(MHD), 1998 WL 190283, at *25 (S.D.N.Y. Apr. 21, 1998) (garden-variety emotional distress damages in discrimination cases typically result in "awards hover[ing] in the range of $5,000 to $30,000) (citing *Luciano,* 912 F. Supp. at 673.)

"In 'garden variety' emotional distress claims, 'the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury.'" *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (quoting *Khan v. HIP Centralized Lab*

*Services, Inc.*, 2008 U.S. Dist. LEXIS 76721, at \*30-31 (E.D.N.Y. Sept. 17, 2008); *see also Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 319 (S.D.N.Y. 2018) ("'[For] 'garden variety' emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury.'")

Plaintiff voluntarily dismissed her claim for intentional infliction of emotional distress. Accordingly, Plaintiff's claim is for garden-variety emotional distress, and evidence relating to emotional distress should be limited to testimony from Plaintiff and damages not exceeding $30,000.

### Motion in Limine No. 19 To Bifurcate The Issue Of Punitive Damages

The Federal Rules of Civil Procedure provide that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trial will be conducive to expedition and economy, may order a separate trial of any claim … or of any separate issue or any number of claims, or issues …." Fed. R. Civ. P. 42(b).  Only after a plaintiff meets the heavy burden of showing by clear and convincing evidence the egregious circumstances that would entitle her to an award of punitive damages, should the jury be asked to consider the appropriate amount of a punitive damages award.  Indeed, the Second Circuit has emphasized that it is often preferable to bifurcate trials and delay trial as to the amount of a punitive damages award until the issues of liability and compensatory damages have been decided by the jury.  *Vasbinger v. Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991); *Simpson v. Pitts. Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990); *Smith v. Lighting Bolt Prods., Inc.*, 861 F.2d 363, 374 (2d Cir. 1988).

Bifurcation of the liability and punitive damages phases of trial is preferable because although punitive damages depend on the nature of the defendant's conduct and the defendant's

56

financial situation or ability to pay, the presentation of evidence regarding a defendant's financial situation is not desirable during the liability phase of the trial. *See Smith*, 861 F.2d at 373-74; *Vasbinger*, 926 F.2d at 1344; *see, e.g.*, *Marshall v. Port Auth. of New York & New Jersey*, No. 19-CV-2168 (LJL), 2022 WL 17491006, at *6 (S.D.N.Y. Dec. 5, 2022) (Liman, J.) (bifurcating the issue of punitive damages).

Here, raising the issue of punitive damages before any finding of liability will significantly prejudice the Wayfarer Parties, create confusion, and needlessly prolong the trial. It is axiomatic that Plaintiff has the burden of proving liability *before* she can seek punitive damages. If Plaintiff fails to prove liability, then she lacks any basis to seek punitive damages. In other words, allowing Plaintiff to invoke punitive damages *before* any finding of liability is putting the proverbial cart before the horse. There is no good reason for requiring the Wayfarer Parties to present their defense to punitive damages, including sensitive financial information, until after there has been a finding of liability and the egregious conduct necessary to warrant punishment through a punitive damages award.

Further, asking the jury to consider both punitive damages and compensatory damages at the same time will lead to confusion. Plaintiff—not the Wayfarer Parties—bears the burden of proving her claims for compensatory damages, which are wildly overstated and exaggerated. If Plaintiff can present both compensatory damages and punitive damages at the same time, she will be able to blur the lines between those two categories and avoid having to meet her evidentiary burden. As a result, the Court should bifurcate and reserve the issue of punitive damages until after the jury has resolved the issue of liability and compensatory damages.

Respectfully submitted,

57

Dated: April 10, 2026
      Los Angeles, CA

**LINER FREEDMAN TAITELMAN**
**+ COOLEY**

By:   */s/ Ellyn S. Garofalo*
Bryan J. Freedman
Ellyn S. Garofalo
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
      egarofalo@lftcllp.com


SHAPIRO ARATO BACH LLP
Alexandra A. E. Shapiro
Jonathan Bach
Alice Buttrick
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: (212) 257-4881
Email: ashapiro@shapiroarato.com
      jbach@shapiroarato.com
      abuttrick@shapiroarato.com


MEISTER SEELIG & SCHUSTER PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@mss-pllc.com
      kaf@mss-pllc.com


AHOURAIAN LAW
Mitra Ahouraian (admitted *pro hac vice*)
2029 Century Park East, 4th Floor
Los Angeles, CA 90076
Tel: (310) 376-7878
Email: mitra@ahouraianlaw.com

58