**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLAKE LIVELY,

                    Plaintiff,

v.

WAYFARER STUDIOS LLC, et al.,

                    Defendants.

No. 24-cv-10049 (LJL) (lead case)


**PLAINTIFF BLAKE LIVELY'S MOTION TO EXCLUDE**
**TESTIMONY OF MICHAEL J. WAGNER**

Plaintiff Blake Lively respectfully moves to exclude the testimony of Michael Wagner, an inactive attorney and accountant, who intends to offer a potpourri of opinions about *inter alia* the law, social media manipulation, and Hollywood acting careers. Wagner is not qualified to offer *any* of these opinions and, even if he were, they require exclusion because they invade the province of the Court, will not "help the trier of fact to understand the evidence or to determine a fact in issue," and are not reliable. Rule 702 of the Federal Rules of Evidence ("Rule" or "Rules") and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) ("*Daubert*").

## I.    <u>BACKGROUND</u>

Defendants intend to offer Wagner to rebut Lively's experts: brand damages expert, Jeffery Kinrich, a certified public accountant with more than 40 years of experience analyzing damages in commercial disputes; Richard Marks, an entertainment transactional lawyer who has been practicing for over 50 years; Michael Sippel, a CPA who has worked in the entertainment industry for nearly 20 years; and Dr. Ashlee Humpreys, a professor at the Medill School of Journalism, Media, and Integrated Marketing Communication, Northwestern University who holds a PhD in Marketing from the Kellogg School of Management at Northwestern University with a focus on Cultural Sociology. *See* Ex. 1 (Kinrich Report) ¶ 3; Ex. 4 (Marks Report) p. 2; Ex. 5 (Sippel Report) ¶¶ 1-5; Ex. 9 (Humphreys Report) ¶ 1-2; *see generally* Ex. 2 (Wagner Report). Wagner intends to offer five opinions (together, the "Opinions"):

**<u>Opinion 1 – Legal Standing</u>**. Wagner intends to rebut Kinrich's opinion that Lively suffered losses between $39.6 and $143.5 million, representing her share of the lost profits of her two businesses—Blake Brown, a hair-care line, which is owned by Family Hive LLC ("Family Hive"), and Betty Booze, a ready-to-drink alcoholic beverage and mixer company, which is owned by Betty B Holdings LLC ("Betty B Holdings")—by opining that she lacks "standing" to recover damages associated with her brands. Ex. 1, Kinrich Report, ¶ 5; Ex. 2, Wagner Report, ¶¶ 42-49.

He plans to testify that any "damages related to lost profits and lost royalties calculated by Kinrich are not properly included as damages to Blake Lively," as opposed to Blake Brown and Betty Booze. Ex. 2, Wagner Reprot, pp. 9, 15-18; *see also id*. ¶ 42 ("while the amount of profit that Blake Brown lost due to the Alleged Retaliation Campaign could conceivably be considered lost profits to *Blake Brown* if Blake Brown had standing in this case, that lost profit amount is not lost profits (or damages) to *Blake Lively*" (emphasis in original)); ¶ 46 (same).

**Opinion 2 – Online Manipulation**. Wagner challenges all four experts' damages analysis on the basis that another Wayfarer expert, Nicole Alexander, concluded that Defendants were not responsible for negative online commentary about Lively. *Id*. ¶¶ 33-39. Wagner also relies on his own bald claim of allegedly "unrelated" negative press about Lively from January 2023 through early August 2024. *Id*. ¶¶ 33-37. But it is undisputed—because Wagner acknowledged in his deposition—that he did not actually perform any analysis. *See* Ex. 6, Wagner Tr. at 65:1-67:19. He admitted that, aside from reviewing the complaint and collecting examples of press from public articles, he "did nothing else" to reach his conclusions, did not apply any methodology, and did not attempt to quantify damages. (*Id.*). His opinion was purely an "assumption." (*Id*.)

**Opinion 3 – Brand Underperformance.** Wagner opines that "even if some small amount of revenue or profit was lost [by Betty B or Blake Brown], Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit." Ex. 2, Wagner Report, pp. 9-10. In support, Wagner points to a number of alternative factors that *could* have caused the decline in sales without actually analyzing whether they *did* impact sales. *See, e.g.,* ¶ 63: "I have found a number of reasons why the Blake Brown products' sales ***could have been affected*** from July 2023 through the period that Ms. Kinrich calculates damages . . ." (emphasis added). He also claims that

Kinrich's damages estimate for Blake Brown is based on unrealistic financial projections, despite later admitting that the product ***outperformed*** even the highest projections. *Id.* ¶¶ 69-70.

**Opinion 4 – Acting Damages**. Wagner intends to rebut the opinions of Marks and Sippel—who conclude that Lively suffered damages between $$34,300,124 to $87,793,592 in lost acting, endorsement, and speaking opportunities based on Ms. Lively's career trajectory and the enormous success of *It Ends With Us* (the "Film") (Ex. 5, Sippel Report, ¶¶ 13, 44)—by opining that Lively would not have suffered damages of this magnitude because: (1) her ability to "accept acting or producing opportunities . . . . at the same time as her husband" is "constrained" including because "her husband is the second highest paid actor in the world"; (2) the amount "exceeds" what Lively earned on projects in the past; and (3) "Blake Lively is going to get more acting and producing projects in the next five years" than she has to date. Ex. 2, Wagner Report, p. 10. To the extent Wagner offers any support at all for his conclusions, he cherry-pick facts and ignores contrary evidence.

**Opinion 5 – Reputational Harm**. Wagner opines that Humphreys' damages calculation "ignores the large amount of free positive publicity that will occur if Blake Lively wins this lawsuit," which will obviate the need for (and cost of) a reputational repair campaign. *Id*. p. 10.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" only if:

(a)    "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case."

Rule 702. Pursuant to Rule 702 and *Daubert*, a district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable" at "every step." *Daubert*, 509 U.S. at 589.

## III.   <u>ARGUMENT</u>

### A.   <u>MR. WAGNER IS NOT QUALIFIED TO OFFER OPINIONS 1, 2, 4, AND 5</u>

Wagner cannot meet the "threshold" requirement of demonstrating that he is 'qualified as an expert by knowledge, skill, experience, training, or education'" to offer any of the Opinions. *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.* (*In re Keurig*), 2025 WL 354671, at \*3 (S.D.N.Y. Jan. 30, 2035). Wagner is an accountant; he is not a practicing lawyer, a data scientist, or an entertainment industry professional. *See* Ex. 2, Wagner Report, Tab 3. He therefore cannot opine on Lively's legal standing to recover damages related to her brands, which invades the exclusive province of the Court regardless. (*See* Sec. II(B), *infra*.) He cannot opine on whether Defendants engaged in online manipulation, and in fact, relies almost exclusively on Alexander's conclusions (Ex. 2, Wagner Report, ¶¶ 38-39)—all of which are subject to a separate *Daubert* attack and which did reach any conclusion as to whether Defendants' conduct caused the "extraordinary" spike in online conversation about Lively in August 2024. (Dkt. 1296 at 11). Mr. Wagner cannot opine on what kind of acting, endorsement, or speaking offers Ms. Lively could have reasonably expected to receive following the success of the Film because he lacks any experience as entertainment industry professional—a reality that is underscored by the fact that he

relies on yet another Wayfarer expert, Emanuel Nunez, to arrive at this conclusion. Ex. 2, Wagner Report, ¶¶ 144, 150. And Mr. Wagner cannot opine on whether "prevailing" in this lawsuit would restore Lively's reptation such that she would not need to incur the costs of a repair campaign because he possesses no expertise on how the media ecosystem operates and gives no indication that he reviewed, let alone could understand, the data underlying Dr. Humphreys' opinions. *Id*. ¶¶ 154. Without any relevant professional experience or case-specific knowledge, Wagner cannot offer Opinions 1, 2, 4, or 5.

### B. OPINION 1 IS AN IMPERMISSIBLE AND INCORRECT LEGAL CONCLUSION.

#### 1. Wagner's Opinion Is An Impermissible Legal Conclusion.

Opinion 1 is a pure legal conclusion on a question of law—the scope of recoverable damages for a particular plaintiff—and thus an improper subject of expert testimony. *See Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (Second Circuit has "consistently held" that "expert testimony that usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it…by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's" (citations and quotations omitted)); *accord Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) (expert cannot provide "legal opinions, legal conclusions, or interpret[s] legal terms; those roles fall solely within the province of the court"). Defendants cannot dispute that Opinion 1 is a legal opinion because they advanced the same legal argument in their summary judgment motion. *See* Dkt. 955 (Wayfarer MSJ) at 58-59 (arguing Lively lacks standing to assert claims for lost profits). Rule 702 does not permit the Wayfarer Defendants to present a disputed legal theory to the jury by laundering it through the authority of an expert witness. Opinion 1 requires exclusion because it is unhelpful to the trier of

fact and presenting a legal argument via an expert "rebuttal" would confuse the respective roles of Court and jury and risk verdict error. *See, e.g.*, *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 468 (S.D.N.Y. 2024) (excluding expert legal conclusions as "not helpful to the trier of fact").

### 2.    Mr. Wagner's Legal Authority Is Inapposite.

Even if Wagner could offer his opinion on standing, his sole reliance on a single out-of-circuit patent case, *Mars,* 527 F.3d at 1367, does not support his opinion. Wagner cites to *Mars* to argue that Lively cannot recover her apportioned share of Family Hive and Betty B's lost profits because they would not "inexorably flow" to her because her ownership interest is held via another entity. Ex. 2 ¶¶ 44, 45, 47. But *Mars* addressed a narrow, fact-specific issue: whether a parent company (Mars, Inc. ("Mars")) could recover lost profits damages in a patent infringement action for sales lost by its wholly owned subsidiary ("MEI"). *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008). There, the Federal Circuit held that MEI's profits did not "flow inexorably" to Mars based on a "highly case-specific and fact-specific" conclusion that the entities were linked only by a royalty-bearing license agreement under which MEI paid royalties to Mars, not by any profit sharing. *Id*. at 1366-67. Here, unlike the arrangement in *Mars*, Lively was entitled to receive any profits through the entity that she controls and which owned a percentage interest in each of Family Hive and Betty B Holdings. Ex. 1 n.1, Ex. 2 n.1 to Ex. 1; Ex. 3 (Kinrich Dep. Tr.) at 83:17-84:8, 101:24-102:15. *Mars* is thus inapposite and Mr. Wagner cannot use it to support his already inadmissible opinion.

### C.    MR. WAGNER's OPINIONS ARE UNHELPFUL, AND IRRELEVANT.

Wagner's opinions are unhelpful and irrelevant because they parrot the opinion of other experts without any independent thought and rely entirely on conjecture and assumptions.  For example, Opinion 2 relies on adopting Alexander's conclusions wholesale, without any

independent analysis of her conclusions or underlying data, and on assumptions he accepted without any scrutiny. *See* Ex. 2, Wagner Report, ¶¶ 38-39. His concession that he did "nothing" to reach Opinion 2, did not apply any methodology, and relied only on what he claims—without any analysis—was a handful of "unrelated" news articles is fatal. *Id*. ¶¶ 33-37; Ex. 6, Wagner Tr. at 65:1-67:19. The same holds true for Wagner's Opinion 3, which points to a variety of potential alternative factors that he opines *could* have caused the decline but does not conclude if they **actually did** cause the decline in sales. *See* Ex. 2, Wagner Report pp. 9-10, ¶¶ 62-68, 79, 81-87. For example, Wagner intends to testify that: "Blake Brown product line **may have** performed worse than expected"; "it would not be surprising for customers to try the Blake Brown products and then move on to other hair care products"; and "it would be expected that Ms. Lively would be a much more effective influencer and promoter for the non-alcoholic beverages" that Betty Buzz sold. *Id*. ¶¶ 65, 68, 86 (emphasis added).[1] None of Wagner's conjecture about what "could have" caused the decline in Lively's brand sales will "help the trier of fact to understand the evidence or to determine a fact in issue"—many of which require no expert analysis at all. *Atlantic Specialty Ins.* v. *AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 291-92 (S.D.N.Y. 2013) (excluding testimony that amounted to saying "'a fire causes increasing damage the longer it burns'" because "a lay person is entirely capable of reaching this conclusion without the help of an expert").

---

[1] Wagner also criticizes Kinrich's "Company Specific" Risk Premium on the basis that Blake Brown and Betty Booze were early-stage companies subject to a greater discount on future cash flows. (Ex. 2, Wagner Report, ¶ 117). In coming to this conclusion, Wagner opines that Sippel's Risk Premium is more appropriate because "the underlying risk of an early-stage company based largely on Ms. Lively's reputation should be considered at least as risky as Lively's future [acting] earnings." *Id*. Wagner offers no authority or logic to support this comparison.

**D.    OPINIONS 2 THROUGH 5 ARE UNRELIABLE UNDER RULE 702(B)-(D).**

Opinions 2-5 require exclusion because Wagner must but cannot show that they rely on "sufficient facts and data" and "reliable principles and methods," which means that the data "sample must be adequate, the data gathering techniques reliable, and the conclusions drawn demonstrated to be statistically significant." Fed. R. Evid. 702(b)-(c); *Rowe Ent., Inc. v. William Morris Agency, Inc.,* No. 98 CIV, 8272 (RPP), 2003 WL 22124991, at *1 (S.D.N.Y. Sept. 15, 2003). Rule 702 requires that a methodology be sound, and reliably applied to the facts. *Oakley* v. *MSG Networks, Inc.* No. 17-CV-6903 (RJS), 2026 WL 523770, at *3 (S.D.N.Y. Feb. 25, 2026).

In Opinion 2, Wagner does not even attempt to address the copious amounts of evidence adduced in this case showing that Defendants engaged in an online digital manipulation campaign. Dkt. No. 1273 (MSJ Order) pp. 133-34. Wagner instead concludes the opposite, basing his opinion on a handful of online articles that he collected without any principled process for doing so, claiming—without performing any analysis or applying any methodology, as he conceded in his deposition—that they "have no apparent connection to Defendants." Ex. 2, Wagner Report ¶ 33. He comes to this conclusion despite the fact that some of these articles reference the very same themes Defendants expressly stated they would advance against Lively. (*See* Wagner Report ¶ 34.) Wagner's reliance on nothing more than his say-so does not suffice. *See In re Elysium Health-ChromaDex Litig.*, 2022 WL 421135, at *30 (S.D.N.Y. Feb. 11, 2022) (Liman, J.) (expert opinion testimony "that does no more than assert" a conclusion based on an "expert's 'personal opinion'" does not meet Rule 702(C)). At best, Opinion 2 is rank speculation. At worst, it is flatly contradicted by the evidence. Either way, it must be excluded.

As discussed above, Opinion 3 amounts to speculation about potential alternate causes for decline in sales, without any attempt to apply those theories to the facts of this case in any meaningful way. *See generally* Wagner Report ¶¶ pp. 9-10, ¶¶ 62-68, 79, 81-87. As if to underline

8

this point, Wagner does not even attempt to offer an alternate damages calculation, instead merely opining that Kinrich's estimates are "overstated." *Id*. pp. 9-10. This is not a methodology; it is an inadmissible thought experiment.

Opinion 4 is equally untethered to the facts of the case. In concluding that the opinions of Marks and Sippel overstate the number of projects she would have completed in the five years after the release of the Film, Wagner ignores testimony that Lively was committed to working full time after the release of the Film and was ready to capitalize on its success. *See* Ex. 4, Marks Report, p. 13. Wagner instead substitutes a moralizing and outdated view of marriage for reasoned analysis, asserting that because Lively's husband "is far more successful than Blake Lively . . . the married couple is far better off the more Ryan Reynolds works than if Blake Lively works." *Id*. ¶ 140. Wagner misunderstands the nature of the offers Lively has received since the Film's release (claiming that Lively "will be paid" on a development deal, for which no fee is guaranteed)[2] and incorrectly asserts that Sippel's analysis fails to account for events that occurred after the alleged retaliation.[3] Mr. Wagner further opines that Marks and Sippel fail to take into account the effects of the 2023 Writers Guild and SAG strikes (*id*. ¶ 142) while ignoring testimony from actual Hollywood professionals that the strikes, in fact, increased the draw of A list talent like Lively. *See* Ex. 6, Grey Stone Depo., 405:17-406:24.

Mr. Wagner's analysis likewise ignores that Ms. Lively's past offers are not an adequate proxy for her future offers because they would not reflect the astronomical success of the Film (*see* Ex. 2, Wagner Report ¶¶ 144-47, 150) instead falling back on generalized assertions such as "Actors do not typically have consistent earnings." *Id*. ¶ 152. In this way, Wagner's analysis would

---

[2] Ex. 8, Producer Offer Memo, June 12, 2025 (Exhibit 24 to Deposition of Justin Grey Stone, October 6, 2025), BL-000039107-108.

[3] Wagner claims that "Mr. Sippel's damages model does not rely on any information post the alleged legal violations" which is false. (Ex. 5, Sippel Report, ¶ 37.)

unjustly deprive Lively of the financial uplift that the Film's success should have brought her. And, Wagner takes a sliver of deposition testimony from Lively's agent out of context to conclude that "Clearly, Blake Lively is going to get more acting and producing projects in the next five years" than she has to date. *Id*. p. 64, ¶¶ 146-50. Neither Wagner's facts nor his methodology is accurate, or reliable.

Opinion 5 fares no better. In a perfunctory one-paragraph opinion, Wagner concludes that Lively's reputational harm will be eliminated if she prevails in this lawsuit, which Wagner asserts Humphreys did not consider. Ex. 2, Wagner Report, ¶ 154. Wagner does not provide a single citation to anything to support this opinion, including any reason to believe news of such a victory in this case would reach the intended audience at all or with the frequency necessary to restore Lively's reputation following Defendants' retaliation campaign. *See id*. Without facts or a methodology, this opinion must be excluded too.

## IV.     **CONCLUSION**

The Court should exclude Wagner's Opinions 1-5 in full.