**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BLAKE LIVELY,<br><br>                      Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, et al.,<br><br>                      Defendants. | No. 24-cv-10049 (LJL) |

### [PROPOSED] JURY INSTRUCTIONS

The parties have worked collaboratively to propose the following jury instructions. Matters

that the parties could not agree upon include each party's position. All parties reserve the right to

offer additional argument or authorities in support of their positions and to seek changes as the

trial progresses.

Dated: April 10, 2026

<table>
<tr><td><u>/s/ Michael J. Gottlieb</u></td><td><u>/s/ Ellyn S. Garofalo</u></td></tr>
<tr><td>WILLKIE FARR & GALLAGHER LLP<br>Michael J. Gottlieb<br>Koren L. Bell<br>2029 Century Park East<br>Los Angeles, CA 90067<br>(310) 855-3111<br>mgottlieb@willkie.com<br>kbell@willkie.com<br><br>Kristin E. Bender<br>1875 K Street NW<br>Washington, DC 20006<br>(202) 303-1000<br>kbender@willkie.com<br><br>Michael S. Schachter<br>Aaron E. Nathan</td><td>SHAPIRO ARATO BACH LLP<br>Alexandra A.E. Shapiro<br>Jonathan P. Bach<br>Alice Buttrick<br>1140 Avenue of the Americas, 17th Floor<br>New York, NY 10036<br>(212) 257-4881<br>ashapiro@shapiroarato.com<br>jbach@shapiroarato.com<br>abuttrick@shapiroarato.com<br><br>MEISTER SEELIG & SCHUSTER PLLC<br>Mitchell Schuster<br>Kevin Fritz<br>125 Park Avenue, 7th Floor<br>New York, NY 10017<br>(212) 655-3500</td></tr>
</table>

Michaela A. Connolly
Melissa S. Taustine
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
mschachter@willkie.com
anathan@willkie.com
mconnolly@willkie.com
mtaustine@willkie.com

MANATT, PHELPS & PHILLIPS LLP
Esra A. Hudson (admitted *pro hac vice*)
Naeun Rim (*pro hac vice* pending)
Stephanie A. Roeser (admitted *pro hac vice*)
Sarah E. Moses (admitted *pro hac vice*)
Sareen K. Armani
Katelyn A. Climaco
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
nrim@manatt.com
sroeser@manatt.com
smoses@manatt.com
sarmani@manatt.com
kclimaco@manatt.com

Matthew F. Bruno
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski
401 9th Street NW
Washington, DC 20004
(202) 240-2927
mgovernski@dirllp.com

*Attorneys for Blake Lively*

ms@mss-pllc.com
kaf@msf-law.com

LINER FREEDMAN TAITELMAN +
COOLEY, LLP
Bryan J. Freedman (admitted *pro hac vice*)
Ellyn S. Garofalo (admitted *pro hac vice*)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
(310) 201-0005
bfreedman@lftcllp.com
egarofalo@lftcllp.com

*Attorneys for the Wayfarer Parties*

<u>**JOINT PROPOSED JURY INSTRUCTIONS**</u>

Plaintiff Blake Lively and Defendants Wayfarer Studios LLC, It Ends With Us Movie LLC, and The Agency Group PR LLC (collectively, the "Parties") have worked collaboratively to propose the following instructions. Matters that the Parties could not agree upon are identified as Plaintiff's/Defendants' proposed instruction with explanatory positions provided. To the extent the Parties have included brief explanations of their positions in connection with conflicting instructions, these are not fully briefed arguments or authorities on each of the instructions. The Parties request the opportunity to brief and be heard on any instructions on which the Parties offer conflicting positions and reserve the right to seek changes as trial progresses.

## I.    PRELIMINARY INSTRUCTIONS TO JURORS

Members of the jury, now you have been sworn in, I'll give you some preliminary instructions to guide you in your participation in the trial.

To begin, you are here to administer justice in this case, according to the law and the evidence. You are to perform this task with complete fairness and impartiality and without bias, prejudice, or sympathy for or against the plaintiff or the defendants.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as the Court will give it to you.

You must follow that law, whether you agree with it or not. Nothing the Court may say or do during the trial is intended to indicate or should be taken by you as indicating what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of the witnesses, documents, and other things received into the record as exhibits, as well as any facts

1

that the parties agree to or stipulate to or that the Court may instruct you to find. Where the facts have been stipulated, you must accept those facts as true in this trial. Certain things are not evidence and must not be considered by you. I will list them for you now.

First, statements, arguments, and questions by lawyers are not evidence, nor are my own statements to you evidence.

Only the answers given by the witnesses and the documents admitted as exhibits are evidence. Second, objections to questions are not evidence. The lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the Court's ruling on an objection. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Third, testimony that the Court has excluded or told you to disregard is not evidence and must not be considered. Finally, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

When you are determining the facts, keep in mind that there are two kinds of evidence, direct and circumstantial.

Direct evidence is direct proof of a fact such as the testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.

The word "infer" or the expression "to draw an inference," means to find a fact exists from proof of another fact.

2

An inference is to be drawn only if it's logical and reasonable to do so and not by speculation or guesswork.

In deciding whether to draw an inference, you must look at and consider all of the facts in light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury to decide. Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.

Here is an example to help you think about the difference between direct and circumstantial evidence:

> Assume that when you came into the courthouse this morning the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn, and you could not look outside. Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet and then a few moments later someone else walked in with a raincoat that was also dripping wet. Now, because you could not look outside the courtroom and you could not see whether it was raining and because no witness testified that it is raining, you would have no direct evidence of the fact that it was raining. But on the combination of facts that I asked you to assume, it would be reasonable and logical for you to conclude that it was raining. That is all there is to circumstantial evidence. You infer on the basis of reason, experience and common sense, from one established fact the existence or nonexistence of some other fact.

I will give you further instructions on these as well as other matters at the end of the case. But for now, keep in mind that you may consider both kinds of evidence.

One of your most important tasks as jurors is to evaluate the credibility of the witnesses who will testify before you. That is how truthful and believable they are. Listen carefully as each witness testifies during both direct and cross-examination and consider whether the witness is telling the truth.

3

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

Now, how do you decide what to believe and what not to believe? You are to listen to the witnesses, observe their testimony, then decide as you would decide such questions in your own life. Did they know what they were talking about?

Were they candid, honest, open and truthful? Did they have a reason to falsify, exaggerate, or distort their testimony?

Sometimes it is not what a witness says but how he or she says it that may give you a clue as to whether or not to accept that witness's version of an incident or an event as credible or believable.

In short, the way a witness testifies may play an important part in you reaching a judgment as to whether or not you can accept the witness's testimony as reliable.

Now, a few words about your conduct as jurors. First, during the trial, you are not to discuss the case with anyone, nor are you to permit anyone to discuss it with you.

This includes viewing, reading or posting anything on the Internet about the case, whether it be on television, in the media or newspapers, personal blogs, Meta or Facebook, TikTok, Twitter or X, or Threads, Reddit or Instagram, or any other social media or digital platform, even if I didn't list it here.

Until you retire to the judgment at the end of the case to deliberate, you are simply not to talk to anyone about this case, including your spouse or partner, family, or close friends. Do not even discuss the case with each other until you begin your actual deliberations at the end of the trial.

4

Second, please do not, while you are serving as jurors in this trial, have any conversations with the parties, the attorneys, or any witnesses in this case whether in the courtroom, in the hallways, in the elevators, outside, or anywhere else.

By this, I mean not only avoid talking about the case, but do not talk at all, even to say good morning or to acknowledge any of these people.

Someone seeing a juror in conversation with a party, lawyer, or witness might think that something improper was being discussed. To avoid even the appearances of impropriety, then, avoid any such contact or conversations. So, I can tell you that when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude. They are simply following my instruction.

Third, do not read or listen to anything outside the courtroom that relates to this case in any way. Similarly, you are not to allow anyone to speak to you about the case. If you are approached by anyone to speak about it, politely but firmly tell them that the judge has directed you not to do so. If any person seeks to contact you about the case, you are required to report the incident promptly to me by sending me a note through my courtroom deputy, Mr. Fishman.

Also, be sure that I am informed if any person you know comes into this courtroom. This is a public trial, so that could happen. But it is important that you do not hear from them what may have happened in court while the jury was not present. If you should see a friend or relative come into the court, please send me a note through Mr. Fishman at your earliest and first opportunity.

Fourth, do not try to do any research or make any investigation about the case or the issues presented by the case. For example, do not go on to the Internet tonight and research any matters relating to the case. Do not call up any lawyer friends to ask about the type of matters at issue in the case.

5

Fifth, I know that many of you use cellphones, smartphones, social media, the Internet, and other tools of technology. You must not use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, which includes smartphones, through e-mail, text messaging, Twitter, X, Threads, any blog or website, any Internet chat room or by way of any other social networking websites, including Facebook, LinkedIn, and YouTube.

Finally, do not form any opinion until all the evidence is in. A case can be presented only step by step, witness by witness until all the evidence is before you. Keep an open mind until you start your deliberations at the end of the case.

You are permitted to take notes during the trial. Mr. Fishman is handing each of you a notepad and you'll have a pen with you. Please write your name on the cover of the pad. If you do take notes, please do so only in these pads. Remember that any notes you take are for your use only and they are only to be used as an aid for your memory. Your memory controls. If you do take notes, be careful not to get so involved in taking notes that you are not listening to the evidence.

Once you are in your deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony or to have that portion of the transcript sent to you, for it is the official court transcript that controls, not any particular juror's notes.

During the course of the trial, exhibits will be received into evidence. They will be marked by exhibit number. If there is an exhibit that you are particularly interested in seeing during your deliberations, write down the exhibit number.

At the end of the trial, as you begin your deliberations, we will provide each of you with a list of all of the witnesses who testified during the trial, as well as the list of all the exhibits that have been received in evidence.

We will now begin the trial. As I told you earlier, the trial is expected to be done by […]. Let me tell you about the trial day. We'll begin each day at 9:00 a.m. Please be on time. To help ensure that we start on time, please be in the jury room 15 minutes before the start of the trial day, so that we may begin without delay.

I will add that a light breakfast will be available in the jury room each morning at 8:30 a.m. You are not required to take us up on this hospitality, but in my experience, many jurors do.

The key thing is that nobody be late. If any of you are late, we will have to wait, for we cannot start unless all of you are here. And all of us, myself, the lawyers, the parties, the witnesses, and your fellow jurors, will have to wait. And if we lose 10 or 20 minutes every day, we will not be able to get the trial completed on time.

As to the rest of the trial day, we may take a brief mid-morning break, and we will take a lunch break at approximately 1:00 p.m., and we'll take a brief midafternoon break with refreshments provided for you.

Now, let me tell you how the trial will proceed. First, in a moment, and before lunch, we will have opening statements. The attorney for the plaintiff will make an opening statement, then the attorney for the defendants will do so.

The opening statements are neither evidence nor argument. They are simply outlines of what the attorneys believe the evidence will show, and they are given to help you follow the evidence as it is presented.

7

After the opening statements, and after lunch, the plaintiff will present her case. The plaintiff will call her witnesses, and after each witness testifies on direct examination, counsel for the defendants will have an opportunity to cross-examine the witness. After the cross-examination, there may be a little bit of what we call redirect and recross-examination. Following the plaintiff's case, the plaintiff will rest.

After the evidence is completed and all sides have rested, the attorneys will give their summations. This is the opportunity for the lawyers to summarize the evidence and to give the closing arguments. Following the summations, I will give you instructions on the law. You will then, finally, retire to deliberate on your verdict.

You have a tremendously important task as jurors. It is to determine the facts. You and not the Court are the sole judges of the facts. The Constitution itself recognizes your role in our system of justice. So please pay careful attention to the witnesses and the evidence received at trial as well as my instructions on the law.

We'll now begin with counsel's opening statement.

**Source**: *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL); *Hong v Mommy's Jamaican Market Corp. et al.*, No. 20-cv-9612 (LJL).

**Plaintiff's Proposed Addition:** The defendants will then have the opportunity to present their case. The defense witnesses will testify, and the plaintiff will have the opportunity to cross-examine them.

**Source**: *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL); *Hong v Mommy's Jamaican Market Corp. et al.*, No. 20-cv-9612 (LJL).

**Defendants' Proposed Addition:** At the conclusion of Plaintiff's case, the Defendants may introduce evidence and Plaintiff's lawyer may cross-examine the witnesses.  Because Plaintiff has the burden of proof on every claim, the Defendants are not required to introduce any evidence

or to call any witnesses.  If the Defendants introduce evidence, Plaintiff may then present rebuttal evidence.

**Source**: 3 Fed. Jury Prac. & Instr. § 101:02 (7th ed.) (modified).

**Plaintiff's Position:** Plaintiff disagrees that Defendants' proposed instruction is appropriate and has proposed alternative language above.

**Defendants' Position:** The jury needs to understand from the outset that Lively has the burden and Defendants do not need to put on a case. Defendants do not have the burden on affirmative defenses unless and until Plaintiff carries her affirmative burden.

9

## II.    INTRODUCTION

Members of the jury, you have now heard all the evidence as to the claims by Plaintiff Blake Lively against Defendants Wayfarer Studios LLC, It Ends With Us Movie LLC, and The Agency Group PR. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case. We are near the point where you will undertake your vital function as jurors of deliberating.

Now that the lawyers have made their closing arguments, I am going to instruct you about the law that governs the case. There are three parts to these instructions:

*First*, I will provide you with some general instructions about your role and about how you are to decide the facts of the case. These instructions would apply to just about any trial.

*Second*, I will give some specific instructions about the legal rules applicable to this case.

*Third*, I will give you some final instructions before you begin your deliberations.

Listening to these instructions may not be easy. It is important, however, that you listen carefully and that you concentrate. I ask you for patient cooperation and attention. You will notice that I am reading these instructions from a prepared text. It would be more interesting, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You will have copies of what I am reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying.

I will also be distributing to you a verdict form in which to record your verdict. It will list the questions that you should consider, in the order you should consider them.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

## III.    GENERAL INSTRUCTIONS

### A.  Role of the Court

I will now instruct you on the law. It is my duty to do that, just as it has been my duty to preside over the trial and decide what testimony and evidence are relevant under the law for your consideration. It is your duty to accept my instructions on the law and to apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room.

You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

B.  Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence. You determine the credibility of the witnesses. You resolve any conflicts there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence. Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

C.  Role of Counsel / Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Therefore, you should draw no inference from the fact that an attorney objected to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences at sidebar, out of your hearing. These conferences involved procedural and other matters. None of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable,

whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

   D.  <u>Juror Oath / Sympathy or Bias</u>

I know you will try the issues that have been presented to you according to the oath that you have taken as jurors in which you promised that you would well and truly try the issues joined in this case and render a true verdict. If you follow that oath, and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict.

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You must not let bias, prejudice, or public opinion influence your decision. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, socioeconomic status, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. All parties stand equal before the law, and are to be dealt with as equals in this Court.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.); CACI - 113. Bias (additions).

13

E. All Persons Equal Before the Law

As noted, in reaching your verdict, you must remember that all parties stand equal before the law, and are to be dealt with as equals in this Court. The mere fact that three of the parties in this case are corporations does not mean they are entitled to any lesser consideration by you. All litigants are equal before the law, and companies, big or small, are entitled to the same fair consideration as you would give any other individual party. This means you must treat Blake Lively, a natural person, and corporate entities Wayfarer Studios, It Ends With Us Movie LLC, and The Agency Group PR as equal under the law.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

F. Wealth of Parties

In reaching a verdict, you may not consider the wealth or poverty of any party. The parties' wealth or poverty is not relevant to any of the issues that you must decide.

**Source:** CACI - 117. Wealth of Parties; *Casmento v. Volmar Construction, Inc.*, 20-cv-00944 (LJL) (S.D.N.Y.) (for proposition that financial resources are relevant to punitive damages).

G. Burden of Proof – Preponderance of the Evidence

Now, the plaintiff, Blake Lively, has the burden of proving all of the elements of her claims against the Defendants.

Some of you may have heard of "proof beyond a reasonable doubt," which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this one, and you should put it out of your mind.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of

14

the evidence, not the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have offered or produced them.

If, after considering all of the testimony, you are satisfied that plaintiff, as to her claims, has carried her burden on each element of her claim, then you must find in favor of her, as to that specific claim. If, after such consideration, you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the plaintiff. That is because the plaintiff bears the burden of proof on her claims, and must prove more than simple equality of evidence—Plaintiff must prove the elements of her claims by a preponderance of the evidence. On the other hand, the plaintiff need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the plaintiff—that what the plaintiff claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

**Plaintiff's Proposed Second paragraph:** The burden of proof in this case is generally a "preponderance of the evidence." Ms. Lively is also seeking punitive damages in this case, and the burden of proof to determine liability for punitive damages is "clear and convincing evidence." I will instruct you on what that burden requires later in the case.

**Defendants' Proposed Second Paragraph**: The burden of proof in this case is generally a "preponderance of the evidence." Certain issues are subject to a higher burden of proof, as I will instruct you further.

Defendants also seek to add a sentence to the end of the instruction: "Some facts must be proved by a higher standard known as Clear and Convincing, which I will instruct you on next."

**Plaintiff's position.** The language suggested by Defendants is too argumentative. The Court should defer to the jury instruction language regarding what a burden of proof is. Further, the burden of proof instruction as initially proposed has already been vetted and used by Judge Liman. Plaintiff is amenable to including a clear and convincing instruction in connection with the punitive damages instruction, and has included the CACI version in line below.

**Defendants' position.** It is inappropriate to refer to punitive damages in this section. Defendants' language is more neutral and notifies the jury that certain issues are subject to a clear and convincing standard.

H. <u>Affirmative Defense</u>

**Plaintiff's Proposed Instruction:** n/a

**Defendants' Proposed Instruction:** In this case, the Defendants have asserted certain affirmative defenses to Plaintiff's claims. Even if the Plaintiff proves all of the essential elements of her claims, the Defendants can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendants do not have to disprove Plaintiff's claims by a preponderance – she always has an affirmative obligation to carry the burden of proof on her claims. But if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

**Source:** 11th Circ. Model Jury Instruction No. 3.7.2.

**Plaintiff's Position:** Plaintiff maintains that this instruction is confusing and misleading, and simply not accurate. Defendants do not have any affirmative defenses as to liability. The affirmative defenses (Mixed Motive/Same Decision and Employee's Duty to Mitigate) are only as to damages. It is not proper to instruct the jury on what the Defendants don't have to do, in the context of explaining the Plaintiff's burden.

**Defendants' Position:** Defendants are entitled to an instruction on affirmative defenses. Defendants assert a duress affirmative defense to Plaintiff's breach of contract claim.

I.   Multiple Defendants And Claims

**Plaintiff's Proposed Instruction:** n/a.

**Defendants' Proposed Instructions.** In this case, the plaintiff has brought claims against multiple defendants. In reaching a verdict you must bear in mind that each of the defendants is to be considered separately for each of the plaintiff's claims brought against that defendant. Your verdict must be reached solely on the evidence or lack of evidence presented against each defendant, for each claim, without regard to the alleged liability of the other defendants. The case against one defendant stands or falls upon the proof, or lack of proof, against that defendant alone.

You must also give separate consideration to each claim in this case. The plaintiff has brought multiple claims. It does not follow that, if the plaintiff is successful on one of her claims, she must succeed on all of her claims. Similarly, if you determine that the plaintiff has failed to prove the required elements of any one of her claims, that does not mean that she has failed to do so with respect to any of her other claims, except as I specifically instruct you. You must consider each claim, and the evidence that bears on that claim, independently of all other claims, again, except to the extent that I instruct you otherwise.

**Source**: *Luo v. AIK Renovation Inc.*, No. 23-cv-5878 (LJL) (S.D.N.Y.).

**Plaintiff's Position:** Defendants' proposed instruction is not an accurate or appropriate instruction for this case. Plaintiff asserts that Wayfarer and It Ends With Us are a single or joint entity for the

17

purposes of the FEHA retaliation claim. Further, if the jury finds FEHA retaliation, they can certainly determine that is sufficient for the contract claim, which simply prohibits retaliation generally. This overstates their obligation. Also, given the jury instructions and the nature of the claims, there is little danger of the jurors being confused about their task without this instruction. The aiding and abetting claim is alleged only against TAG, and the breach of contract claim is alleged only against IEUWM. Only the FEHA claim has multiple defendants, and for that claim, they are alleged to be a single or joint entity. As an alternative, we would be amenable to adding the following language to the Single Integrated Entity instruction: If you do not find that Wayfarer and IEWUM are a single integrated enterprise, then you must separately determine the liability of each entity for retaliation under the FEHA.

**Defendants' Position:** Plaintiff's assertions are simply assertions and cannot be taken as an instruction on the law. Wayfarer, It Ends With Us Movie, and TAG are separate entities and entitled to separate consideration by the jury. Plaintiff has also brought claims against It Ends With Us Movie on two different legal theories. Wayfarer and IEWUM are legally distinct. Moreover, as the Court observed in its summary judgment ruling (at p. 22), Plaintiff has abandoned her alter ego arguments as to those entities.

> J.   What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case. As I have said, you may rely only on the evidence in your deliberations. The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence. On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

A question by a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Similarly, arguments by lawyers and demonstrative exhibits used in connection with such arguments are not evidence, because the lawyers are not witnesses. Each of the lawyers has made

assertions in their opening statements and in their closing statements. What they have said in their opening statements and in their closing statements is not evidence and was intended to help you understand the evidence and to reach your verdict. However, if your recollection of the evidence that was received in court differs from the lawyers' statements, it is the evidence and your recollection of the evidence which controls.

Statements that I may have made concerning the evidence do not constitute evidence.

Testimony that has been stricken or excluded or that I have asked you to disregard is not evidence, and it may not be considered by you in rendering your verdict.

Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence. As I have said, evidence may come in several forms:

The sworn testimony of witnesses, regardless of who called them, is evidence. This is true of the witnesses' answers on both direct and cross-examination. However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

The exhibits that were admitted during the trial, regardless of who may have presented them, are evidence. However, if certain exhibits were received for a limited purpose, you must follow the limiting instructions I have given.

Any agreements or stipulations of the parties may be considered as evidence.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

### K.  Direct and Circumstantial Evidence

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.

19

One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses—something he or she has seen, felt, touched or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To restate the example I gave you last week, assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day. Assume that the courtroom blinds were drawn, and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later, another person entered with a wet raincoat. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Many facts, such as a person's state of mind, are rarely susceptible to proof by direct evidence. Usually, such facts are established by circumstantial evidence. Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

20

L.  Inferences

During the trial, you may have heard the parties use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Ms. Lively asks you to draw one set of inferences, while the Defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

M.  Witness Credibility

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid? Or was the witness evasive and edgy, as if hiding something? How did the witness appear? What was his or her demeanor— that is, the witness's carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which the witness testified, the accuracy of his or her memory, his or her candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. However, you are not required to consider such a witness as totally "unbelievable." You may accept so much of the witness's testimony as you deem true and disregard what you feel is false. By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent, and if so, how much, if any, weight to give to an inconsistent statement in assessing a witness's credibility at trial.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of a party's claim or defenses to the claim, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

23

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

### N. Failure to Explain or Deny Evidence

**Plaintiff's Proposed Instruction:** If a party failed to explain or deny evidence against him or her when they could reasonably be expected to have done so based on what they knew, you may consider their failure to explain or deny in evaluating that evidence. It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.

**Source:** CACI - 205. Failure to Explain or Deny Evidence.

**Defendants' Proposed Instruction:** n/a.

**Plaintiff's Position:** This is a standard instruction provided for in the CACIs and that the jury must be instructed on in this case given the evidentiary arguments Plaintiff has made consistently throughout the case, including but not limited to in her Spoliation Motion. If Plaintiff's Spoliation Motions is granted such that the Court orders a specific spoliation instruction, we can revisit this instruction.

**Defendants' Position:** This instruction is argumentative, confusing, and unnecessary under the CACI instructions. The instruction is premature at this stage.

### O. Inference From Evidence of Intent or Planning

**Plaintiff's Proposed Instruction:** You may consider evidence that a party intended or planned to take a particular action. If you find that a party, after deliberation, expressed an intention or plan to act, you may infer that the party carried out that action. Whether to draw this inference, and how much weight to give it, is for you to decide based on all the evidence.

**Source:** *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 779 (S.D.N.Y. 2025); *Mut. Life Ins. Co. of N.Y. v. Hillmon*, 145 U.S. 285, 296 (1892); Fed. R. Evid. 803 advisory committee note

24

(1973).

**Defendants' Proposed Instruction:** n/a.

**Plaintiff's Position:** Plaintiff's proposed instruction is consistent with the Court's Motion to Dismiss and Summary Judgment Orders (Dkt. Nos. 296, 1273), and, specifically, the notion that "[i[t is fair to presume that the Wayfarer Parties did what they said that they planned to do." *Lively v. Wayfarer*, Dkt. 1273 at 133, and the authority cited therein.

**Defendants' Position:** Plaintiff's proposed instruction is argumentative and not a statement of law appropriate to instruct the jury on. The Court's order discussed the Court's reasoning in deciding whether a triable issue of fact existed for purposes of ruling on a motion for summary judgment. The statement was not a statement of law and there is no basis to instruct the jury as proposed by plaintiff. Moreover, the introductory instructions already includes an instruction on inferences making this instruction duplicative.

P. Deposition Testimony

During the trial, you received deposition testimony that was shown by video. A deposition is the testimony of a person taken before trial. At a deposition the person is sworn to tell the truth and is questioned by the attorneys. You must consider the deposition testimony that was presented to you in the same way as you consider testimony given in court.

**Source:** CACI - 208. Deposition as Substantive Evidence; *see also Dixon v. L.A. Reid*, No. 23-cv-09878 (JAV) (S.D.N.Y.).

Q. Preparation of Witnesses

You have heard evidence during the trial that certain witnesses discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her

testimony and what inferences you draw from such preparation are matters completely within your discretion.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

### R.    Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit or avoid a harm in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

You may also consider a witness's relationship with a party, including a present or past friendship, romantic or employment relationship, when deciding whether the testimony of the witness was in any way influenced by the witness's relationship with that party. It is your duty to consider whether each witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean the witness has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony. You are not required to believe an interested witness; you may accept as much of the witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

    S.   <u>Expert Witnesses</u>

You have heard the testimony of several experts in this case. When a case involves a matter of science or requires special knowledge or skill that most people do not have, a qualified witness is permitted to state his or her opinions for the information of the Court and jury. The opinions stated by these witnesses were based on particular facts, as they obtained knowledge of them and testified about them or as the attorneys who questioned them asked them to assume. You may reject any opinion if you find the facts to be different from the facts that formed the basis for the opinion. You may also reject an opinion if, after careful consideration of all the evidence in the case, including the cross-examinations of these witnesses, you decide that an opinion is not convincing. In other words, you are not required to accept any opinion to the exclusion of the facts and circumstances disclosed by other evidence. Such an opinion is subject to the same rules concerning reliability as the testimony of any other witness. It is given to assist you in reaching a proper conclusion; it is entitled to such weight as you find the witness's qualifications in the field warrant and must be considered by you, but is not controlling upon your judgment. Your role in judging credibility and assessing weight applies just as much to these witnesses as to other witnesses. In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

## IV.     RETALIATION INSTRUCTIONS

### A.  Single Integrated Enterprise

**Plaintiff Proposed Instruction:** Ms. Lively claims that Wayfarer Studios and It Ends With Us Movie LLC operated as a single integrated enterprise and are therefore both responsible for retaliating against her.

In deciding whether Wayfarer Studois and It Ends With Us Movie LLC operated as a single integrated enterprise, you should consider all the circumstances, including the following factors:

1. Interrelation of operations, such as shared services, personnel, offices, or operational systems;

2. Common management, including overlapping officers, directors, or managers who made decisions for both entities;

3. Centralized control of labor relations, including who made or controlled decisions about hiring, firing, discipline, workplace policies, or employment complaints; and

4. Common ownership or financial control.

No single factor is required or decisive; however, the most important consideration is whether Wayfarer Studios exercised centralized control over employment decisions, particularly decisions involving hiring, firing, discipline, or other terms and conditions of employment in connection with the film. If you find that Wayfarer Studios exercised such control, you must find that the entities operated as a single integrated enterprise and were both Ms. Lively's employer under FEHA.

**Source:** *Mathews v. Happy Valley Conf. Ctr., Inc.*, 43 Cal. App. 5th 236, 251 (2019); *Barrera v. Prima Frutta Packing, Inc*., No. 21-CV-01454 (TLN) (AC), 2025 WL 950379, at *3 (E.D. Cal. Mar. 28, 2025).

**Defendants' Proposed Instruction:** n/a.

**Plaintiff's Position:** Plaintiff asserts that Wayfarer Studios and It Ends With Us Movie LLC are operated as a joint employer and/or single enterprise such that Wayfarer Studios and It Ends With Us Movie LLC were both Ms. Lively's employers and may both be held liable for

28

retaliating against her. That Ms. Lively has been deemed an independent contractor, rather than employee, does not negate these tests, and Defendants cite no case law to support such position.

**Defendants' Position:** Plaintiff's instruction mislabels and misrepresents the joint employer doctrine. It is incorrect for numerous reasons. First, a joint employer instruction has no basis here. The Court has already determined that Lively was not an employee and that neither Wayfarer Studios nor It Ends With Us Movie had sufficient control over Lively to be considered Lively's employer. Plaintiff's cited authority only relates to employees. The instruction is also an incorrect statement of the law even if Ms. Lively was an employee.

Second, replacing the term "joint employer" with "single enterprise" is confusing and inappropriate. Wayfarer and IEWUM are legally distinct. Moreover, as the Court observed in its summary judgment ruling (at p. 22), Plaintiff has abandoned her alter ego arguments as to those entities.

A. Elements of Retaliation

**Plaintiff's Proposed Instruction:** Ms. Lively claims that Wayfarer Studios/It Ends With Us Movie LLC retaliated against her (1) because she engaged in a protected activity, including by complaining about or opposing alleged harassment based on sex or gender, or (2) because Wayfarer Studios/It Ends With Us Movie LLC anticipated that she might engage in further protected activity. To establish this claim, Ms. Lively must prove each and all of the following:

1. That Ms. Lively engaged in protected activity, including by complaining about or opposing a hostile work environment based on sex or gender;

2. That Wayfarer Studios/It Ends With Us Movie LLC subjected her to an adverse action;

3. That Ms. Lively complaining about or opposing a hostile work environment was a substantial motivating reason for Wayfarer Studios/It Ends With Us Movie LLC's conduct;

4. That Ms. Lively was harmed; and

5. That Wayfarer Studios/It Ends With Us Movie LLC's conduct was a substantial factor in causing Ms. Lively's harm.

Ms. Lively does not have to prove harassment in order to be protected from retaliation. If she reasonably believed that Wayfarer Studios/It Ends With Us Movie's conduct was unlawful, she

29

may prevail on a retaliation claim even if she does not present, or prevail on, a separate claim for harassment.

**Source:** CACI - 2505. Retaliation—Essential Factual Elements (Gov. Code, § 12940(h)). (modified).

**Defendants' Proposed Instruction:** Ms. Lively claims that Wayfarer Studios and It Ends With Us Movie LLC retaliated against her for engaging in a protected activity, namely complaining about or opposing alleged sexual harassment. To establish this claim, Ms. Lively must prove each and all of the following:

1. That Ms. Lively complained about or opposed the alleged sexual harassment based on a reasonable belief that she had experienced sexual harassment;

2. That Wayfarer Studios and/or It Ends With Us Movie LLC subjected her to an adverse employment action;

3. That Ms. Lively's complaints or opposition to the alleged sexual harassment was a substantial motivating reason for Wayfarer Studios/It Ends With Us Movie LLC's conduct;

4. That Ms. Lively was harmed; and

5. That Wayfarer Studios/It Ends With Us Movie LLC's conduct was a substantial factor in causing Ms. Lively's harm.

Ms. Lively does not have to prove harassment in order to be protected from retaliation. If she reasonably believed that Wayfarer Studios/It Ends With Us Movie's conduct was unlawful, she may prevail on a retaliation claim even if she does not present, or prevail on, a separate claim for harassment.

**Source:** CACI - 2505. Retaliation—Essential Factual Elements (Gov. Code, § 12940(h)). (modified).

**Plaintiff's Position:** Plaintiff maintains that this instruction must include her allegation that Wayfarer/IEWUM retaliated against Ms. Lively not only because she engaged in protected activity, but also because she anticipated that she would continue to do so, including by filing a lawsuit, as illustrated by Defendants' own contemporaneous texts. Defendants' position misstates California law, which prohibits employers from retaliating against those "who are believed to be *prospective* complainants or witnesses for complainants," and holds that a finding to the contrary

30

would "condone 'an absurd result.'" *See, e.g.*, *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1255 (2008) ("FEHA protects []against preemptive retaliation") (emphasis added) (citing In *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1045 (2004); Cal.Code Regs., tit. 2, § 7287.8, subd. (a)(2)(B)).

**Defendants' Position:** Anticipatory retaliation is not actionable and it would be error to instruct the jury on it. Defendants have filed a motion in limine on the issue.  Moreover, the instruction must reflect the requirement that Ms. Lively's actions were based on her reasonable belief regarding alleged sexual harassment.

B. Protected Activity

**Plaintiff's Proposed Instruction:** With respect to the first element, protected activity can take many forms. To establish "protected activity," Ms. Lively need not have expressly informed Wayfarer Studios/It Ends With Us Movie LLC that she believed their conduct was harassing or otherwise violated the FEHA. Ms. Lively was not required to use legal terms or buzzwords when opposing harassment or to make a formal or written complaint. Instead, you may find protected activity if her comments and actions, when read in their totality, oppose harassment and that such opposition was sufficiently conveyed to Wayfarer Studios/It Ends With Us Movie LLC.

Ms. Lively also need not prove sexual harassment to have engaged in protected activity, and you need not determine whether the relevant conduct rose to the level of sexual harassment. You may find that Ms. Lively's belief was reasonable so long as it was not utterly baseless.

Ms. Lively alleges that she engaged in protected activity by: (1) complaining about sexual harassment in May and June 2023; (2) lodging complaints through the Protections Letter in November 2023; (3) during the January 4, 2024 all-hands meeting; (4) declining to appear in promotion with Mr. Baldoni, Mr. Heath, or Wayfarer Studios between June and August 2024; and (5) filing her CRD complaint and this lawsuit in December 2024.

You may consider any protected activity in considering the substantial motivating reason element, which I will instruct you on separately.

31

**Sources**: *Lively,* Dkt. 1273 at 95-98 (citing *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d at 1131 (2005)), 105 *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1065 (2016).

**Defendants' Proposed Instruction:** In order to show that any of her actions in complaining or opposing the alleged harassment was a "protected activity," the plaintiff must prove that:

(1) the action in question was based on a good-faith, reasonable belief that defendants discriminated against her based on her sex; and

(2) The action in question was sufficient to convey to the defendants that the plaintiff believed discrimination was occurring and took the action in question with the intent to oppose it.

That is, to be considered "protected activity," the plaintiff must prove that the conduct was something she did to oppose what she reasonably believed was unlawful discrimination, and that the defendants would have understood the plaintiff's conduct to be opposing such discrimination.

In addition, not all forms of protest are protected. The way in which a party presses complaints of discrimination can be so disruptive that it strips away protections against retaliation. A defendant does not engage in unlawful retaliation when it takes an adverse action against a party to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and/or conducive to the work of the enterprise.

**Sources**: 3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Laurin v. Pokoik*, No. 02 CIV. 1938 (LMM), 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005); *Lively v. Wayfarer* MSJ Op. at 97-98; *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000); *Emmanuel v. Cushman & Wakefield, Inc.*, No. 1:13-CV-2894-GHW, 2015 WL 5036970, at *8 n.8 (S.D.N.Y. Aug. 26, 2015).

**Plaintiff's Position:** Plaintiff's proposed instruction is appropriate and critical to instruct the jury with respect to what constitutes "protected activity," and closely tracks case law regarding the same. *See Castro-Ramirez, 2 Cal. App. 5th at 1048*; *Yanowitz*, 36 Cal. 4th at 1048. Defendants' objection misstates one of the alleged protected activities at issue. Ms. Lively does not assert that

she engaged in a protected act by allegedly "taking over the marketing and promotion of the film." Rather, she asserts that her decision not to appear publicly with Mr. Baldoni or Mr. Heath during press and promotion of the film constituted further opposition to their harassing and retaliatory conduct towards her. Such opposition may constitute protected activity, including where, as here, Defendants' contemporaneous communications indicate that they understood Ms. Lively's conduct to convey opposition to their prior harassing acts. *See Id.*; *see also*, Cal. Gov't Code § 12940(h) ("[i]t is an unlawful employment practice…[f]or any employer … to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part…"); *Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1105 (E.D. Cal. 2025) ("An informal complaint to a supervisor that protests a behavior prohibited under FEHA is considered a protected activity…"); 42 USC § 2000e-3(a) (accord). In addition, this is not a discrimination case. There is no discrimination cause of action alleged, and it is very confusing to continue to use the term "discrimination" when that is not at issue. Further, CACI 2505 calls for a description of the alleged protected activity at issue.

Further, Defendants' proposed instruction includes prejudicial, misleading, argumentative, and inaccurate statements in the final paragraph with respect to "stripping away" protections against retaliation.  During conferrals, Defendants' counsel was unable to articulate what activity by Ms. Lively would warrant such instruction. The facts at issue here do not come close to those in Defendants' cited cases. *See Matima v. Celli,* 228 F.3d 68, 79 (2d Cir. 2000) (where employee repeatedly yelled at coworkers and/or supervisors); *Emmanuel v. Cushman & Wakefield, Inc.*, No. 1:13-CV-2894-GHW, 2015 WL 5036970, at *8 (S.D.N.Y. Aug. 26, 2015) (considering, without deciding, whether employee post to Facebook, complaining about protected activity during business hours, constituted protected activity); *cf. Lim v. Teledyne Ryan Aeronautical*, 2001 WL 1250136, at *9–10 (Cal. Ct. App. Oct. 19, 2001) (unpublished) (holding that employee who "engaged in mutual combat" with another employee was not protected under FEHA). That plainly is not the case here.

Perhaps even more importantly, Defendants' cases apply in the context of employers undertaking adverse actions for the purpose of ceasing active disruptions caused by employees. *Matima*, for example, considered an employer's decision to suspend the protesting employee based on his repeatedly yelling at others in the workplace. Defendants have not identified a single allegedly "disruptive" act by Ms. Lively—only vaguely referring to communications related to Ms. Lively's creative contributions to the film. They cannot reasonably argue that they were justified in attacking Ms. Lively's character, among other adverse acts, in August 2024 simply because she provided creative input on the film. That is not, and cannot be, the law. Indeed, such holding would gut the meaningful and essential workplace protections that FEHA was designed to provide. Defendants provided their below stated position after 6ET on the date of filing. For that reason, and the others stated above, should the Court entertain this instruction, Ms. Lively requests further briefing on the propriety thereof.

**Defendants' Position:** Plaintiff's proposed instruction is argumentative, prejudicial, and likely to confuse the jury.  Preliminarily, her description of her purported conduct assumes the truth of contested facts (e.g., Lively "complain[ed] about sexual harassment").

Her proposed instruction also fails to clearly delineate the essential elements of good faith and notice, both of which are clearly established in caselaw and present in standard instructions on this issue. *See, e.g.*, 3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.) (requiring proof of a "good-faith, reasonable belief" and conduct sufficient to alert the employer that the plaintiff "believed that [discrimination occurred])"; *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII"); *Laurin v. Pokoik*, No. 02 CIV. 1938 (LMM), 2005 WL 911429, at *3 (S.D.N.Y. Apr. 18, 2005) ("to be a protected activity, the complainant must put the employer on notice that the complainant believes that discrimination is occurring.");

*Yanowitz*, on which Lively relies, also expressly references the "good faith" requirement. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1043, 116 P.3d 1123, 1131 (2005). And *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028 (2016), discusses the notice issue at length. It holds: "[C]omplaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." *Id.* at 1046.

Lively relies on a subsequent portion of that decision, concerning "legal terms" and "buzzwords," which is not on point. That issue typically comes up when an unsophisticated, unrepresented party makes a complaint without using appropriate legal terms. Lively, on the other hand, was a highly sophisticated party with legal counsel, who in fact raised a concern through lawyers.

A clear instruction on the element of good faith and notice is essential here, because Lively claims as "protected activity" actions that fall well-outside what would generally be understood or recognized in that category, such as her refusal to market the film alongside its director. Whether such conduct was in fact intended in good faith to "oppose discrimination," or instead to further Lively's ulterior motives; and whether the Wayfarer Parties should have reasonably understood it as an effort to oppose discrimination rather than as a power play are two hotly disputed issues in the case. Defendants' proposed instructions appropriately orient the jury to these issues.

For the same reasons, Defendants' proposed instruction on the limits of protected activity, as articulated by *Matima v. Celli,* 228 F.3d 68 (2d Cir. 2000), is appropriate. Lively does not dispute that Defendants' proposed instruction accurately represents and indeed almost precisely tracks *Matima*, which states: "not all forms of protest are protected by Title VII's prohibition on retaliation...An employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise." *Id.* at 79. Nor does Lively dispute that the same principle applies in the FEHA context. Instead, she apparently claims there is no evidentiary basis for the instruction, based on her own view of the facts. The Wayfarer Parties, of course, have a different view: as discussed at length in the summary judgment papers and elsewhere, the Wayfarer Parties and others at Sony viewed Lively's conduct to be extraordinarily disruptive. Sony executives repeatedly referred to her as a "terrorist", observed that Lively had "orchestrated all this drama" around the premiere,

34

and threatened the success of the film in the process.  In other words, Lively is free to argue to the jury that her conduct was not disruptive, the Wayfarer Parties are free to argue the opposite.

The purpose of jury instructions is not to resolve such disputes, but to accurately state the law to the jury.  Defendants' proposal does so.  Lively's does not.

Finally, Defendants' use of the term "discrimination" is entirely appropriate.  Lively has consistently claimed she was raising concerns about "sexual harassment," which is actionable specifically because it is a form of discrimination.  Her complaint specifically asserts that she was retaliated against for raising concerns about "unlawful conduct based on sex."  SAC ¶ 389-90.

### C.  Adverse Action Explained[1]

**Joint Instruction:** As to the second element, Ms. Lively must prove that she was subjected to an adverse employment action. Adverse employment actions are not limited to ultimate actions such as termination or demotion.  There is an adverse employment action if Wayfarer Studios or It Ends With Us Movie, LLC has taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Ms. Lively's employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action.

**Source:** CACI - 2509. "Adverse Employment Action" Explained.

**Plaintiff's Proposed Addition:** Alleged adverse acts should be considered collectively, rather than individually, and may take the form of a series of subtle, yet damaging, injuries.

Here, Ms. Lively alleges that Wayfarer Studios/It Ends With Us Movie LLC subjected her to adverse treatment, including by discouraging and obstructing her ability to complain about the hostile environment, attacking her character and professional reputation—including through a

---

[1] Defendant asserts the section title should be Adverse Employment Action consistent with the instruction.  Plaintiff disagrees.

35

negative press and digital media campaign—threatening and/or attempting to intimidate Ms. Lively and third parties, and filing a frivolous and factually baseless retaliatory lawsuit against her. An adverse act may include employer conduct that sullies an employee's reputation, such as providing a negative job reference or making negative public statements about an employee's character or professional reputation

**Source:** CACI - 2509. Adverse Employment Action Explained; *see also*, *Lively*, Dkt. 1273 at 129; *Lively,* Dkt. 1273 at 99 (citing *Bailey*, 552 P.3d at 433, 451); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005); *Lively*, Dkt. 1273 at 129-130 (citing *Salgado v. Iqvia, Inc.*, 459 F. Supp. 3d 1318, 1332–33 (S.D. Cal. 2020); *Yanowitz*, 116 P.3d at 1138; *Akers v. County of San Diego*, 116 Cal. Rptr. 2d 602, 612 (Cal. Ct. App. 2002); and *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)).

**Plaintiff's Position:** That Parties agree on the core language of this instruction. Plaintiff submits that the instruction should further include guidance with respect to the adverse acts at issue in this case, including that adverse actions may include efforts to disparage an employee's character or reputation, including through negative references. Contrary to Defendants' stated position, this instruction does not misstate the holding of *Yanowitz*, which is clear that an adverse action includes "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance *or opportunity for advancement in his or her career*." *Yanowitz*, 36 Cal. 4th at 1054 (emphasis added).

**Defendants' Position:** Plaintiff's instruction does not accurately state the holding in *Yanowitz*, which affirms that FEHA, unlike Title VII, is limited to adverse *employment* actions, and that such actions must "materially affect the terms and conditions of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1055, 116 P.3d 1123, 1139 (2005). The instruction should be limited to the CACI language.

D.   Reasonable Belief

**Plaintiff's Proposed Instruction:** n/a.

**Defendants' Proposed Instruction:** Defendants have not been found liable for sexual harassment against Ms. Lively. The question in this case is not whether sexual harassment occurred, but whether Ms. Lively had a good faith reasonable basis to complain about or oppose Defendants' conduct. If you find that she had a good faith reasonable basis, you need not consider whether Defendants' conduct actually rose to the level of sexual harassment in considering her

claims for retaliation.  On the other hand, if you find that she did not have a reasonable good faith basis, you must find that defendants are not liable for retaliation.

**Source**: *Dinslage v. City and County of San Francisco*, 5 Cal. App. 5th 368, 381 (2016).

**Plaintiff's Position:** Defendants' proposed instruction is argumentative and misleading, as well as duplicative of the both the agreed to instruction under CACI 2505, which specifically addresses reasonable belief, as well as the parties' separate proposed instructions as to protected activity. It is therefore unnecessary.

Further, Defendants' grossly misstate the Court's April 2 Summary Judgment Order. The Court did <u>not</u> find that Defendants are "not liable" for harassment nor that Defendants did not engage in harassing conduct. Instead, the Court merely held that California law did not apply to Plaintiff's harassment claims extraterritorially and/or that Plaintiff was an independent contractor, rather than an employee. *See Lively v. Wayfarer*, Dkt. 1273. In addition, Defendants' proposed instruction wrongly and improperly pre-bakes into the jury's mind an assumption that Plaintiff was not only *not sexually harassed*, but that it has been affirmatively adjudicated on the merits that Defendants did not harass her as a matter of law. This leads the jury to assume that Plaintiff's belief was neither reasonable nor in good faith. It is highly inappropriate and prejudicial to instruct the jury as proposed.

Further Defendants only provided this proposed instruction after 6:00 p.m. ET on the date of filing. For that reason, and the others stated above, should the Court entertain this instruction, Ms. Lively requests further briefing on the propriety thereof.

**Defendants' Position:** The proposed instruction is a correct statement of law.  Defendants have not been found liable for sexual harassment nor is there any such claim remaining.  Plaintiff's exhibit and witness list indicate she intends to put on hours of evidence regarding her reasonable belief and the jury must be instructed as to the relevance of the evidence and what claim they are deciding.

E.   Reasonable Defensive Measures

**Plaintiff's Proposed Instruction:** It is not an adverse employment action for an employer to defend itself against allegations by, for example, denying that the alleged harassment occurred. But an employer may not attack the complainant's character or professional reputation, or threaten, intimidate, or otherwise interfere with someone's right to pursue a claim for harassment or retaliation.

**Source:** *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018); *Areu v. Fox News Network, LLC*, 2021 WL 4124226, at *16 (S.D.N.Y. Sept. 9, 2021); *Dixon v.*

*International Broth of Police Officers*, 504 F.3d 73, 84; *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 258 (S.D.N.Y. 2025); *Eckhart*, 2021 WL 4124616, at \*22–23.

**Defendants' Proposed Instruction:** Parties accused of harassment and discrimination are permitted to defend themselves. Thus, even if you conclude that the defendants engaged in certain activities in response to protected activities, you cannot find for the plaintiff if you determine that defendants' actions were reasonable defensive measures taken in response to her actions.

**Source:** *United States v. N.Y.C. Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018); *Areu v. Fox News Network, LLC*, 2021 WL 4124226, at \*16 (S.D.N.Y. Sept. 9, 2021).

**Plaintiff's Position:** Defendants' proposed instruction is confusing, argumentative and ignores the very cases upon which it relies, as well as the Court's April 2 Order. *See Lively,* Dkt. 1273 at 131-132. The case law is clear that reasonable defensive measures do not include character or reputation attacks, or threats, intimidation, or other interferences with the right to remediate harassment. *See Hughes v. 20th Century Fox*, 304 F. Supp. 429, (2018) (employer may "proffer[] . . .defense without the use of threats or menacing language impugning [plaintiff's] character."); *Dixon*, 504 F.3d at 84; *McSweeney*, 776 F. Supp. 3d at 258. If the jury is instructed on this defense, it is critical that it also be instructed on the limitations thereof to avoid a jury finding inconsistent with the law.

**Defendants' Position:** Plaintiff's proposed instruction is confusing and argumentative. Defendant's instruction is consistent with the Court's summary judgment ruling.

F.   Dismissed Claims by IEWUM Against Ms. Lively

**Plaintiff's Proposed Instruction:** After Ms. Lively filed her CRD Complaint and federal lawsuit alleging Defendants' retaliatory conduct, the Defendants filed a lawsuit against Ms. Lively and Mr. Reynolds, seeking $400 million in damages. The Court dismissed the lawsuit for failing to state a claim on which relief can be granted and ruled that Defendants' lawsuit included "legally frivolous and factually baseless" claims. You are instructed that this lawsuit was, by definition, not a reasonable defensive measure under the law.

**Defendants' Proposed Instruction:** n/a.

38

**Source:** *Lively v. Wayfarer Studios LLC et al.*, 24-cv-10049 (S.D.N.Y), Dkt. 1270; *Wayfarer Studios LLC et al.*, 25-cv-449 (S.D.N.Y.), Dkt. 142.

**Plaintiff's Position:** Plaintiff maintains that this instruction is appropriate and consistent with the Court's ruling, and is necessary given Plaintiff's allegation that Defendants' dismissed lawsuit constitutes an adverse action against her, which remains part of the case. *See Robinson v. De Niro*, 739 F. Supp. 3d 33, 89 (S.D.N.Y. 2023) (Liman, J.) (citing *Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021), aff'd, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023). As this Court has recognized, "by suing an employee who files charges [or engages in other protected activity], an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 740 (1983).)

**Defendants' Position:** Plaintiff's instruction is argumentative, prejudicial, and contrary to the law and the facts. Defendants have filed motions in limine to exclude references to Defendants' affirmative complaint and Rule 11 motions or orders. The instruction is also misleading. The instruction is simply meant to inflame and prejudice the jury.

### G. Substantial Motivating Reason

As to the third element, "substantial motivating reason" is a reason that actually contributed to the pattern of conduct towards Ms. Lively. It must be more than a remote or trivial reason. It does not have to be the only reason motivating such conduct.

**Source**: CACI - 2507. "Substantial Motivating Reason" Explained.

### H. Causation

As to the fourth and fifth elements, Ms. Lively must also establish that she was harmed, and that Wayfarer Studios and/or It Ends With Us Movie LLC's conduct was a substantial factor in causing that harm. A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

**Source:** CACI - 430. Causation: Substantial Factor.

I.  Same Decision

**Plaintiff's Proposed Instruction:** n/a.

**Defendants' Proposed Instruction:** Plaintiff claims that the defendants retaliated against her because of her complaints about or opposition to alleged sexual harassment.  Wayfarer Studios and It Ends With Us Movie LLC claim that their conduct was not directed toward or in retaliation against any protected activity, but was instead intended to protect their reputations, and the film's reputation, in the event of adverse media, which is lawful.

If you find that retaliation was a substantial motivating reason for Wayfarer Studios and It Ends With Us Movie LLC's conduct, you must then consider Wayfarer Studios and It Ends With Us Movie LLC's stated reason for its conduct.

If you find that Defendants' concerns about protecting their reputations and the film's reputation was also a substantial motivating reason, then you must determine whether the defendant has proven that they would have engaged in the same conduct anyway at that time even if they had not also been substantially motivated by retaliation.

If you find that Wayfarer Studios and It Ends With Us Movie LLC would have engaged in the same conduct anyway at that time for other reasons, then Plaintiff will not be entitled to damages.

**Source:** CACI – 2512. Limitation on Remedies—Same Decision

**Plaintiff's position.** Defendants are not entitled to this instruction because they failed to plead, and therefore waived, the mixed motive/same decision affirmative defense. Under *Alamo v. Practice Management Information Corp.*, 219 Cal. App. 4th 466 (Cal. Ct. App. 2013), a defendant must plead mixed motive / same decision as an affirmative defense to preserve it. *Id.*, 219 Cal. App. 4th at 481-482. In *Alamo*, the court held "the [Defendant] was not entitled to an instruction on the mixed-motive defense as a potential limitation on remedies because it did not plead the defense in its answer to [Plaintiff's] complaint, nor did it assert as an affirmative defense that it had lawful reasons for discharging her." *Id*. This ruling was grounded in the California Supreme Court's decision in *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 239 (2013), stating, "if an employer wishes to assert the defense, it should plead that if it is found that

40

its actions were motivated by both discriminatory and nondiscriminatory reasons, the nondiscriminatory reasons alone would have induced it to make the same decision." Neither Wayfarer nor IEWUM asserted a "mixed motive" or "legitimate business reasons" defense in their answers and, as such, they may not assert them now.

If this instruction is included (which it should not be), it should be administered in connection with damages instructions because it goes to a limitation of remedies, rather than liability. Despite advance notice of Plaintiff's position with respect to this instruction and the *Alamo* case, Defendants waited until after 6:00 p.m. ET on the day of filing to provide any position or related case law. Plaintiff reserves all rights to respond to the additional information and argument untimely provided by Defendants.

**Defendants' position.** *Alamo v. Practice Management Information Corp.*, 219 Cal. App. 4th 466 (Cal. Ct. App. 2013) does not apply to pleading requirements as those are governed by Rule 8 of the Federal Rules of Civil Procedure, not California's Code of Civil Procedure. *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 31 (2d Cir. 2016) ("It is well established that a federal court sitting in diversity applies federal rules of procedure to a plaintiff's claims under both state and federal law."). In the Second Circuit, failure to plead an affirmative defense does not necessarily lead to waiver, and courts routinely consider unpled affirmative defense where there is no surprise or prejudice. *See Reives v. Lumpkin*, 632 F. App'x 34, 35 (2d Cir. 2016); *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283-84 (2d Cir. 2000) (allowing affirmative defense to be raised at the summary judgment stage); *Gilmore v. Gilmore*, 503 F. App'x 97, 99 (2d Cir. 2012) (allowing an affirmative defense to be raised for the first time in a joint pretrial order). Moreover, the Second Circuit does not treat the defense of "same decision" (often called "mixed motive") as a true affirmative defense for the purposes of Rule 8. *See Donovan v. Milk Mktg., Inc.,* 243 F.3d 584, 586 (2d Cir. 2001) (rejecting argument that a defendant is required by Rule 8(c) of the Federal Rules of Civil Procedure to plead a mixed-motive "defense" in its answer to the complaint). In addition, Plaintiff can show no prejudice from inclusion of the defense. She would not have conducted additional discovery or developed a different theory of liability.

## V.    AIDING AND ABETTING INSTRUCTIONS

### Plaintiff's Proposed Instruction:

If you find that Ms. Lively was subject to retaliation, then you must determine whether The Agency Group PR aided and abetted Wayfarer Studios/It Ends With Us Movie LLC in that retaliation. To find that these individuals aided and abetted retaliation you must find that:

1.  The Agency Group PR knew that Ms. Lively engaged in protected activity; and

2.  The Agency Group PR substantially assisted or encouraged Wayfarer Studios/ It Ends With Us Movie LLC's retaliation against Ms. Lively.

41

**Sources:** Cal. Gov't Code § 12940(i); *Alch v. Superior Ct.*, 122 Cal. App. 4th 339 (2004).

**Defendant's Proposed Instruction:** If you find that Wayfarer Studios or It Ends With Us Movie committed retaliation that harmed Ms. Lively, then you must determine whether The Agency Group PR, LLC is also responsible for the harm. The Agency Group PR, LLC is responsible as an aider and abetter if Ms. Lively proves each and all of the following:

1. That The Agency Group PR, LLC knew that retaliation was being committed by Wayfarer Studios or It Ends With Us Movie against Ms. Lively;

2. That The Agency Group PR, LLC gave substantial assistance or encouragement to Wayfarer Studios or It Ends With Us Movie; and

3. That The Agency Group PR, LLC's conduct was a substantial factor in causing harm to Ms. Lively.

Mere knowledge that retaliation was being committed and the failure to prevent it do not constitute aiding and abetting.

**Sources: CACI 3610. Aiding and Abetting Tort. Essential Factual Elements**

**Plaintiff's Position:** Defendants' proposed language is confusing and relies on CACI 3610. That CACI instruction, however, applies to traditional tort claims—not employment claims and, specifically, not claims asserted under FEHA. The instruction, as proposed by Defendants, imposes burdens that do not exist under California Government Code 12940(i) and is therefore improper.

**Defendants' Position:** The CACI instruction should be used rather than a special instruction created by Plaintiff. Retaliation is a tort and Plaintiff is seeking tort remedies. Moreover, *Alch v. Superior Ct.*, 122 Cal. App. 4th 339, 389 (2004), relied on by Plaintiff, specifically states that FEHA does not provide a definition of aiding and abetting so it is appropriate to look to the common law. That is what Defendants have done.

42

## VI.    BREACH OF CONTRACT INSTRUCTIONS

### A.  Breach of Contract—Introduction

Ms. Lively claims that she and It Ends With Us Movie LLC entered into a Protections Agreement dated November 15, 2023. That Agreement provides that:

> "Any changes in attitude, sarcasm, marginalization or other negative behavior, either on set or otherwise, including during publicity and promotional work, as a result of these requests is retaliatory and unacceptable, and will be met with immediate action."

I will refer to this provision as the "Anti-Retaliation Contract Provision."

Ms. Lively claims that It Ends With Us Movie LLC breached this provision by retaliating against her for complaining about or opposing the same.

Ms. Lively also claims that It Ends With Us Movie LLC's breach caused her harm for which It Ends With Us Movie LLC should pay.  It Ends With Us Movie LLC denies these claims.

**Source:** CACI - 300. Breach of Contract—Introduction (Modified).

**Defendant's Proposed Instruction:** Ms. Lively claims that It Ends With Us Movie LLC breached the contract known as the CRA by retaliating against her for "raising concerns" as described in the CRA.

Ms. Lively also claims that It Ends With Us Movie LLC's breach caused Ms. Lively harm for which It Ends With Us Movie LLC should pay.  It Ends With Us Movie LLC denies these claims.  It Ends With Us Movie LLC also claims it entered into the contract under duress.

**Source:** CACI - 300. Breach of Contract—Introduction (Modified).

**Plaintiff's Position:** Plaintiff's proposed instruction includes the language of the specific provision that Ms. Lively alleged IEWUM breached. It is important that the jury understand the specific nature of Ms. Lively's claim to avoid confusion. Defendant's proposed instruction is vague as to both what provision was breached and how, and is likely to cause juror confusion. Plaintiff also submits that the Protections Agreement should be uniformly referred to as a defined term throughout.

43

Further, Defendants' reference to economic duress is inappropriate, misleading and confusing.. There is no evidence of duress, a wrongful threat, or a wrongful act here. To the extent that Defendants alleged so in their affirmative complaint, that complaint has been dismissed with prejudice. In addition, the Court has already rejected Defendants' alleged "economic duress" theory in granting Plaintiff's Motion to Dismiss. *See Lively v. Wayfarer*, Dkt. 296 at 48-71. Defendants cannot revive this defective theory in a defense.

**Defendants' Position:** Contracts must be read as a whole and it is inappropriate to limit the jury's analysis of the contract in a jury instruction introducing the claim. Defendant's instruction below relates the provision at issue. Defendants' instruction here more closely follows the CACI. Defendant is also entitled to assert its duress defense.

### B.  Breach of Contract—Essential Factual Elements

To recover damages for breach of contract, Ms. Lively must prove all of the following:

1.  Ms. Lively and It Ends With Us Movie LLC entered into a contract.

2.   It Ends With Us Movie LLC did something that the contract prohibited it from doing;

3.  That Ms. Lively was harmed; and

4.  That It Ends With Us Movie LLC's breach of contract was a substantial factor in causing Ms. Lively's harm.

**Source:** CACI - 303. Breach of Contract—Essential Factual Elements.

### C.  Breach of Contract—Provision At Issue

**Plaintiff's Proposed Instruction:** n/a.

**Defendants' Proposed Instruction:** Plaintiff claims It Ends With Us Movie LLC breached the following contractual provision:

> "There shall be no retaliation of any kind against BL for raising concerns about the conduct described in this letter or for these requirements.  Any changes in attitude, sarcasm, marginalization or other negative behavior, either on set or otherwise, including during publicity and promotional work, as a result of these requests is retaliatory and unacceptable, and will be met with immediate action."

To prove that It Ends With Us Movie LLC breached this provision, Plaintiff must prove that the requests included in the CRA were the "but-for" cause of any alleged retaliatory conduct.

This is a higher standard of causation than what is required for the FEHA claims.  It means Plaintiff

44

must show that the allegedly retaliatory conduct would not have occurred in the absence of her requests.

**Source**: *Burrage v. United States*, 571 U.S. 204, 210-11 (2014).

**Plaintiff's Position:** Plaintiff has accounted for the first paragraph of this instruction in her proposed Introduction to Contract Instruction. In the event that the Court does not accept that proposal, Plaintiff is amenable to including a separate instruction as to the exact provision at issue. Plaintiff, however, is not amenable to including the second paragraph of this instruction, which is confusing and misleading. The Protections Agreement specifically defines what will constitute retaliation: "Any changes in attitude, sarcasm, marginalization or other negative behavior, either on set or otherwise, including during publicity and promotional work, as a result of these requests *is retaliatory and unacceptable*. . ." (emphasis added). For this reason, and others, Plaintiff is not required to prove that the Protections were a "but for" cause of retaliatory conduct. Defendants' proposed additions to that effect manufacture a high burden upon Plaintiff that simply does not exist.

Further, the case upon which Defendants rely, *Burrage*, 571 U.S. at 210-11, does not include any breach of contract allegations   and instead is a criminal case that concerns statutory interpretation—specifically of the Controlled Substance Act and when a defendant may be liable thereunder when death or serious bodily injury results from use of the distributed substance. It is therefore wholly inapposite.

**Defendants' Position.**   The proposed instruction is a correct statement of law and it critical to instruct the jury on the appropriate standard for causation.  The Defendants' proposed instruction is consistent with the Supreme Court's explanation in *Burrage v. United States*, that the "ordinary" meaning of "results" is "actual causality. 571 U.S. 204, 210-11 (2014), "In the usual course, this requires proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 211.

        D.  Affirmative Defense – Economic Duress

    **Plaintiff's Position:** n/a.

    **Defendants' Position:** It Ends With Us Movie LLC claims that there was no contract because its consent was given under duress. To succeed, It Ends With Us Movie LLC must prove all of the following:

    1. That Ms. Lively used a wrongful act or wrongful threat to pressure It Ends With Us Movie LLC into consenting to the contract;

2. That a reasonable person in It Ends With Us Movie LLC's position would have believed that there was no reasonable alternative except to consent to the contract; and

3. That It Ends With Us Movie LLC would not have consented to the contract without the wrongful act or wrongful threat.

An act or a threat is wrongful if a bad-faith breach of contract is threatened or the resulting exchange is not on fair terms and what is threatened is otherwise a use of power for illegitimate ends.  If you decide that It Ends With Us Movie LLC has proved all of the above, then no contract was created.

**Source:** CACI - 333. Affirmative Defense – Economic Duress

**Plaintiff's position.** This instruction is unnecessary and inapplicable. There is no evidence of duress, a wrongful threat, or a wrongful act here. The Directions for Use make clear that this instruction is completely inapplicable here. To the extent that Defendants alleged so in their affirmative complaint, that complaint has been dismissed with prejudice. In addition, the Court has already rejected Defendants' alleged "economic duress" theory in granting Plaintiff's Motion to Dismiss. *See Lively v. Wayfarer*, Dkt. 296 at 48-71. Defendants cannot revive this defective theory in a defense.

**Defendants' Position:** Evidence of duress will be presented.  The Court's ruling on an affirmative claim does not have bearing on the defense presented by Defendant.

## VII.    DAMAGES

### A.  Introduction to Damages

My next instructions are on the law of damages. If you decide that Ms. Lively has proved any of her claims against Wayfarer, It Ends With Us Movie LLC, or The Agency Group, you also must decide how much money, if any, will reasonably compensate Ms. Lively for the harm, if any, caused by the breach.

The fact that I am going to instruct you on damages does not reflect any view as to whether you should award Ms. Lively damages.  Instructions as to the measure of damages are simply given for your guidance in the event you return a verdict in favor of a party. If you decide that Ms.

Lively has not sustained her burden of proof as to any of her claims, you need not consider damages.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, that the plaintiff has suffered as a result of the actions of any Defendant you are considering. Any damages that you award must be fair and reasonable, and neither inadequate nor excessive. In awarding damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork or speculation. You may not award damages based on speculation.

On the other hand, the law does not require injured parties to prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

The verdict form I will give you will assist you in recording the determinations, if any, that you make as to damages.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.).

**The Parties' Positions**: Defendants contend the first paragraph should read: "My next instructions are on the law of damages. If you decide that Ms. Lively has proved any of her claims against Wayfarer, It Ends With Us Movie LLC, or The Agency Group, you also must decide how much money, if any, will reasonably compensate Ms. Lively for the harm, if any, caused by Defendants." Plaintiff disagrees and maintains the instruction should read ". . . caused by the breach."

        a.   Noneconomic and Economic Damages

The damages claimed by Ms. Lively for the harm caused by Wayfarer Studios, It Ends With Us Movie and The Agency Group PR fall into two categories called economic damages and

noneconomic damages. You will be asked on the verdict form to state the two categories of damages separately.

**Source:** CACI – 3902. Economic and Noneconomic Damages.

### b.  Damages on Multiple Legal Theories

**Plaintiff's Proposed Instruction**: Ms. Lively seeks damages from Wayfarer Studios, It Ends With Us Movie LLC, and The Agency Group PR under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether Wayfarer Studios, It Ends With Us Movie LLC, and/or The Agency Group PR are liable to Ms. Lively under the following legal theories:

1. Retaliation
2. Aiding and Abetting Retaliation
3. Breach of Contract

The following items of damages are recoverable only once under all of the above legal theories:

1. Lost past earnings
2. Lost future earnings
3. Lost profits
4. Reputational harm
5. Emotional distress

**Source:** CACI - 3934. Damages on Multiple Legal Theories; CACI No. VF-2504.

**Defendants' Proposed Instruction:** Ms. Lively seeks damages from Wayfarer Studios, It Ends With Us Movie LLC, and The Agency Group PR under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether Wayfarer Studios, It Ends With Us Movie LLC, and/or The Agency Group PR are liable to Ms. Lively under the following legal theories:

1. Retaliation
2. Aiding and Abetting Retaliation
3. Breach of Contract

The following items of damages are recoverable only once under all of the above legal theories:

1. Lost past earnings
2. Lost future earnings
3. Lost profits

The following additional items of damages are recoverable only once for Retaliation and Aiding and Abetting Retaliation:

1. "Garden Variety" Emotional distress

**Source:** CACI - 3934. Damages on Multiple Legal Theories; CACI No. VF-2504.

**Plaintiff's Position:** On the parties' conferral, Defendants refused to provide the basis for their position that Ms. Lively has "waived" the right to claim reputational harm, notwithstanding the disclosure of reputational harm in Ms. Lively's initial disclosures and expert reports. Ms. Lively never maintained that she has sustained reputational harm only in connection with her defamation claim. Instead, as Ms. Lively has long disclosed, she seeks reputational damages for the harm incurred from retaliatory public statements, and those "attributable to the retaliatory campaign."

Plaintiff asserts that she is entitled to emotional distress damages under the Protections Agreement, an "express object" of which was to ensure Plaintiff's mental and emotion well-being, which the Court already recognized is a basis to recover emotional distress damages under contract. *Lively v. Wayfarer*, Dkt. 1273 at 51 (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999)); *see also*, *Chelini v. Nieri,* 32 Cal. 2d 480, 488, 196 P.2d 915, 919 (1948).

In addition, Defendants first provided this information after 6:00 p.m ET on the day of filing. In the event that the court is inclined to accept Defendants' instruction, Plaintiff requests an opporunity for further briefing.

**Defendants' Position:** Plaintiff has waived any right to claim reputational harm as described in Defendants' motion in limine. In addition, emotional distress is not available for Plaintiff's breach of contract claim. The jury must also be instructed regarding the type of emotional distress plaintiff can recover – in this – garden variety – as she has waived her right to seek other emotional distress damages.

c.  <u>Multiple Defendants And Claims</u>

In this case, Ms. Lively seeks damages from more than one defendant. You must determine the liability of each defendant to Ms. Lively separately. If you determine that more than one

49

defendant is liable to Ms. Lively for damages, you will be asked to find Ms. Lively's total damages.

In deciding on the amount of damages, consider only Ms. Lively's claimed losses. Do not attempt

to divide the damages among the defendants. The allocation of responsibility for payment of

damages among multiple defendants is to be done by the court after you reach your verdict.

**Source:** CACI No. 3933.

**Plaintiff's Position:** Plaintiff rejects Defendants' proposed addition with respect to comparative fault on the basis that it does not apply to Plaintiff's claims. *See F.D.I.C. v. Varrasso*, 2012 WL 1197712, at *3 (E.D. Cal. Apr. 10, 2012) ("It is well established that comparative fault is not a defense to a breach of contract claim") (citing *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 402 (2000), *as modified* (July 26, 2000).

**Defendants' Position:**  The second sentence should state: "If you determine that more than one defendant is liable to Ms. Lively for damages, you will be asked to find Ms. Lively's total damages and the comparative fault of Ms. Lively, each defendant and other nonparties."  This language is included in the CACI instruction.  Ms. Lively does not seek solely contract damages.

### B.  FEHA Retaliation Damages

**Joint Instruction:** I will begin by instructing as to Ms. Lively's claimed damages for

retaliation. If you decide that Wayfarer Studios or It Ends With Us Movie LLC are liable for

retaliation, you also must decide how much money will reasonably compensate Ms. Lively for the

harm caused as a result.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.).

**Plaintiff's Proposed Addition:** In a retaliation action under the FEHA, all damages

necessary to make the victim whole are authorized, including past and future lost earnings, past

and future lost profits, past and future medical expenses, other future economic loss, past and

future noneconomic loss, including mental suffering and reputational harm, and punitive damages.

**Source**: *Cloud v. Casey*, 76 Cal. App. 4th 895 (1999), CACI No. VF-2504, *Baca v. City of Los Angeles,* 2025 WL 900477 (Cal. Ct. App. Mar. 25, 2026); *Commodore Home Sys., Inc. v. Superior Ct.*, 32 Cal. 3d 211, 221, 649 P.2d 912 (1982); California Civil Code Section 3333.

**Plaintiff's Position:** Plaintiff maintains that this proposed addition is appropriate and necessary to instruct the jury as to the scope of damages permissible under FEHA.

**Defendants' position.** The second paragraph above is unnecessary and argumentative. The types of damages sought are described below.

        a.   Retaliation Damages - Economic

**Plaintiffs Proposed Instruction:** The following are the specific items of economic damages claimed by Ms. Lively: past and future lost earnings, including lost acting, endorsement and speaking opportunities, and lost profits in the form of earnings associated with her brands.

To recover damages for past lost earnings, Ms. Lively must prove the amount of income, earnings, salary, wages, and/or profits that she has lost to date. To recover damages for future lost earnings, Ms. Lively must prove the amount of income, earnings, salary, wages, and/or profits she will be reasonably certain to lose in the future as a result of the retaliation.

**Source**: CACI - 3903. Items of Economic Damage; CACI – 3903C. Past and Future Lost Earnings; *Head v. Costco Wholesale Corporation*, 2025 WL 3238211 (N.D. Cal. 2025); *Medel v. Oceanic Companies, Inc.*, No. D079551, 2024 WL 719613, at \*13 (Cal. Ct. App. Feb. 22, 2024).

**Defendants' Proposed Instruction:** The following are the specific items of economic damages claimed by Ms. Lively:

    1.    Lost profits.

To recover damages for lost profits, Ms. Lively must prove it is reasonably certain she would have earned profits but for Defendants' conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Ms. Lively would have received but for Defendants' conduct and the subtract from that amount the expenses Ms. Lively would have had if Defendants' conduct had not occurred. The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

2.    Past and future lost earnings.

To recover damages for past lost earnings, Ms. Lively must prove the amount of income or earnings that she has lost to date.

To recover damages for future lost earnings, Ms. Lively must prove the amount of income or earnings she will be reasonably certain to lose in the future as a result of the injury.

**Source**:  CACI - 3903. Items of Economic Damage; CACI – 3903N. Lost Profits; CACI – 3903C. Past and Future Lost Earnings

**Plaintiff's Position:** Plaintiff disagrees with Defendants' characterization of the damages that she seeks. Loss to Plaintiff's brands constitute lost earnings to which she is entitled..

**Defendants' position**.  Ms. Lively does not claim lost salary or wages.  Moreover, Ms. Lively does not claim "lost profits in the form of earnings associated with her brands."  She claims the lost profits of businesses in which a separate company holds an interest.  Defendants have moved in limine to preclude this evidence based on lack of standing although the reference to lost profits remains in the instruction for now.

b.    Retaliation Damages - Noneconomic

**Plaintiff's Proposed Instruction:** The following are the specific items of noneconomic damages claimed by Ms. Lively: reputational harm as well as past and future emotional distress.

No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

To recover for future emotional distress damages, Ms. Lively must prove that she is reasonably certain to suffer that harm.

For future emotional distress, determine the amount in current dollars paid at the time of judgment that will compensate Ms. Lively for future emotional distress.

**Sources**: CACI 3905 – Items of Noneconomic Damage; CACI 3905A – Physical Pain, Mental Suffering and Emotional Distress; *Baca v. City of Los Angeles*, 2025 WL 900477 (Cal. Ct. App. Mar. 25, 2026).

**Defendants' Proposed Instruction:** The following are the specific items of noneconomic damages claimed by Ms. Lively:

1. Past and future "garden variety" emotional distress.

No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense. However, "garden variety" emotional distress damages generally range from $5,000 to $30,000.

To recover for future "garden variety" emotional distress damages, Plaintiff must prove that she is reasonably certain to suffer that harm.

For future "garden variety" emotional distress, determine the amount in current dollars paid at the time of judgment that will compensate Plaintiff for future "garden variety" emotional distress.

**Plaintiff's Position:** Instruction restored as it is critical to instruct the jury regarding Ms. Lively's claim for emotional distress damages. Also, Ms. Lively has identified the emotional distress damages she is seeking in her damages description, which she asserts is consistent with "garden variety" emotional distress damages. This is not a defined term for the jury and is a legal issue not a factual one. Reputational harm is an element of non-economic damages recoverable under the FEHA. On the parties' conferral, Defendants refused to provide the basis for their position that Ms. Lively has "waived" the right to claim reputational harm, notwithstanding the disclosure of reputational harm in Ms. Lively's initial disclosures and expert reports. Ms. Lively never maintained that she has sustained reputational harm only in connection with her defamation claim. Instead, as Ms. Lively has long disclosed, she seeks reputational damages for the harm incurred from retaliatory public statements, and those "attributable to the retaliatory campaign."

**Defendants' Position:** Reputational harm related to defamation is no longer part of the case and Plaintiff has waived her right to assert any additional reputational harm per Defendants' motion in limine.  The jury cannot be instructed that no standard exists for awarding emotional distress damages when Ms. Lively has explicitly limited her claim to garden variety damages.

C. Contract Damages

If you decide that Ms. Lively has proved her claim against It Ends With Us Movie LLC for breach of contract, you also must decide how much money will reasonably compensate Ms. Lively for the harm caused by the breach. This compensation is called "damages." The purpose of such

damages is to put Ms. Lively in as good a position as she would have been if It Ends With Us Movie LLC had performed as promised.

To recover damages on this claim, Ms. Lively must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Ms. Lively also must prove the amount of her damages according to the following instructions. She does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

**Source**: CACI 350 – Introduction to Contract Damages; *Lively v. Wayfarer*, Dkt. 1273 at 51 (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999).

a.   General Contract Damages

**Plaintiff's proposed instruction:** Ms. Lively claims general damages for emotional distress. When the express object of the contract is the mental and emotional well-being of one of the contracting parties, the breach of the contract may give rise to damages for mental suffering or emotional distress

**Source**: CACI 350 – Introduction to Contract Damages; *Lively v. Wayfarer*, Dkt. 1273 at 51 (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999); *Chelini v. Nieri,* 32 Cal. 2d 480, 488, 196 P.2d 915, 919 (1948).

**Defendants' Proposed Instruction:** n/a

**Plaintiff's Position:** Plaintiff maintains that an "express object" of the Protections Agreement was to ensure Plaintiff's mental and emotion well-being, which the Court already recognized is a basis to recover emotional distress damages under contract. *Lively v. Wayfarer*, Dkt. 1273 at 51 (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999)); *see also*, *Chelini v. Nieri,* 32 Cal. 2d 480, 488, 196 P.2d 915, 919 (1948).

**Defendants' Position:** The express objection of the contract was not the mental and emotional well-being of Ms. Lively.  She is not entitled to emotional distress damages for breach of contract.

54

### b.  Special Contract Damages

**Plaintiff's Proposed Instruction:** Ms. Lively also claims special damages in the form of lost acting, endorsement, and speaking opportunities and lost profits in the form of earnings associated with her brands, Betty B and Blake Brown. To recover for this harm, Ms. Lively must prove that when the parties made the contract, IEWU Movie LLC knew or reasonably should have known of the special circumstances leading to the harm.

**Source**: CACI 351; *Ericson v. Playgirl, Inc.*, 73 Cal. App. 3d 850 (1977); *Lloyd v. R.K.O. Pictures, Inc.*, 136 Cal. App. 2d 638, 641 (1955); *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968–69 (2004).

**Defendants' Proposed Instruction:** To recover for lost past earnings, lost future earnings, or lost profits under a breach of contract theory, Ms. Lively must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.  Ms. Lively must also prove that when the parties made the contract, It Ends With Us Movie, LLC knew or reasonably should have known of any special circumstances leading to the harm.

**Source:** CACI No. 350. Introduction to Contract Damages CACI - 351. Special Damages.

**Plaintiff's Position:** Plaintiff disagrees that the proposed language is misleading. This instruction is necessary to instruct the jury as to the basis for Plaintiff's claim for special contract damages.

**Defendants' Position:** Defendants' instruction follows the CACI language.  Plaintiff's language misleading refers to lost earnings associated with her brands.

### c.  Willful Breach

**Plaintiff's Proposed Instruction:** One who willfully breaches a contract bears the risk as to the uncertainty or the difficulty of computing the amount of damages.

**Source**: *Smithers v. Metro-Goldwyn-Mayer Studios, Inc.*, 139 Cal. App. 3d 643 (Ct. App. 1983)

**Defendants' Proposed Instruction:** n/a

**Plaintiff's Position:** Plaintiff maintains that this instruction is appropriate. Defendants have provided no authority otherwise.

**Defendants' Position:** This is not a proper jury instruction.

### D. No Reduction of Damages Based on Protected Characteristic.

In determining a reasonable amount of Ms. Lively's lost earnings, you must not use race, ethnicity, or gender as a basis for reducing Ms. Lively's lost earnings.

**Source:** CACI – 3906. Lost Earnings and Lost Earning Capacity—Jurors Not to Reduce Damages on Basis of Race, Ethnicity, or Gender (Economic Damage).

### E. Present Cash Value

Defendants claim that Ms. Lively's future economic damages for loss of earnings and lost profits, if any, should be reduced to present cash value. This is because money received now will, through investment, grow to a larger amount in the future. Present cash value is the amount of money that, if reasonably invested today, will provide Ms. Lively with the amount of her future damages.

Defendants must prove, through expert testimony, the present cash value of Ms. Lively's future economic damages. It is up to you to decide the present cash value of Ms. Lively's future economic damages in light of all the evidence presented by the parties.

**Source**: CACI – 3904A. Present Cash Value

### F. Use of Present-Value Tables

Use Worksheet B and Table B to compute the present value of lost earnings and lost profits.

2. Determine the future years in which a future loss will occur. In Column A, starting with the current year, enter each year through the last year that you determined a future loss will occur.

3. Determine the amount of Plaintiff's future loss for lost earnings and lost profits for each year that you determine the loss will occur. Enter these future losses in Column B on the worksheet. Enter $0 if no future loss occurs in a given year.

56

4.  Select the interest rate that you decide based on the expert testimony that you have heard represents a reasonable rate of return on money invested today over the number of years determined in Step 2. Enter this rate in Column C on the worksheet for each year that future-loss amounts are entered in Column B.

5.  Select the appropriate Present Value Factor from Table B for each year for which you have determined that a loss will occur. To locate this factor, use the Number of Years from Column A on the worksheet and the Interest Rate in Column C on the worksheet and find the number that is the intersection of the Interest Rate column and Number of Years row from the table. (For example, for year 15, if the interest rate is 10 percent, the corresponding Present Value Factor is 0.239.) Enter the appropriate Present Value Factors in Column D. For the current year, the Present Value Factor is 1.000. It is not necessary to select an interest rate for the current year in Step 3.

6.  Multiply the amount in Column B by the factor in Column D for each year for which you determined that a loss will occur and enter these amounts in Column E.

7.  Add all of the entries in Column E and enter this sum into Total Present Value of Future Loss.

Enter the amount from Step 6 on your verdict form as Plaintiff's total future economic loss for lost earnings and lost profits.

[TABLES to be inserted]

**Source**: CACI – 3904B. Use of Present Value Tables

G.  <u>Prejudgment Interest</u>

If you decide that Ms. Lively is entitled to recover damages for past economic loss in one or more of the categories of damages that she claims, then you must decide whether she should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict. Whether Ms. Lively should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may

award is within your discretion. If you award these damages to Ms. Lively, you will be asked to address prejudgment interest in the special verdict form.

**Source:** CACI – 3935. Prejudgment Interest.

## H. Mitigation of Damages

**Plaintiff's Proposed Instruction:** Wayfarer and It Ends With Us Movie LLC claim that if Ms. Lively is entitled to any damages, they should be reduced by the amount that Ms. Lively could have earned from other employment. To succeed, Wayfarer and It Ends With Us Movie LLC must prove all of the following:

1. That employment substantially similar to Ms. Lively's former job was available to her;
2. That Ms. Lively failed to make reasonable efforts to seek this employment; and
3. The amount that Ms. Lively could have earned from this employment.

In deciding whether the employment was substantially similar, you should consider, among other factors, whether:

(a) The nature of the work was different from Ms. Lively's employment with It Ends With Us Movie LLC;
(b) The new position was substantially inferior to Ms. Lively's former position;
(c) The salary, benefits, and hours of the job were similar to Ms. Lively's former job;
(d) The new position required similar skills, background, and experience;
(e) The job responsibilities were similar.

**Source**: CACI 3963. Affirmative Defense - Employee's Duty to Mitigate Damages.

**Defendants' Proposed Instruction:** If you decide Defendants are responsible for the original harm under any theory, Plaintiff is not entitled to recover damages for harm that Defendants prove Plaintiff could have avoided with reasonable efforts or expenditures.

You should consider the reasonableness of Plaintiff's efforts in light of the circumstances facing her at the time, including her ability to make the efforts or expenditures without undue risk or hardship.

If Plaintiff made reasonable efforts to avoid harm, then your award should include reasonable amounts that she spent for this purpose.

**Source:** CACI – 3930. Mitigation of Damages.

**Plaintiff's Position:** Plaintiff maintains that the appropriate instruction with respect to FEHA damages is CACI 3963, rather than CACI 3930, which, as stated in the "Directions for use," applies to personal injury cases and is thus inapplicable to Plaintiff's employment cause of action. Plaintiff disagrees that this instruction is only applicable to cases involving terminations and, as set forth above, Plaintiff does seek damages related to lost wages or salary. That FEHA permits "make whole damages" does not convert FEHA damages to tort damages. In addition, CACI 3930 misstates the standard for mitigation under FEHA. Defendants cite no authority to support their position.

**Defendants' Position:** Plaintiff's proposed instruction only applies in cases where an employee was terminated and seeks damages related to their wages or salary. Ms. Lively seeks lost profits, and lost earnings in the form of hypothetical acting opportunities which are more general tort damages requiring the more general mitigation instruction. Defendants are also entitled to instruct on mitigation for breach of contract in any event.

I. <u>Arguments of Counsel Not Evidence of Damages</u>

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the  witnesses and the other evidence that has been admitted during trial.

**Source:** CACI – 3925. Arguments of Counsel Not Evidence of Damages

J. <u>Jurors Not to Consider Attorney Fees and Court Costs</u>

You must not consider, or include as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

**Source:** CACI – 3964. Jurors Not to Consider Attorney Fees and Court Costs

K. <u>Punitive Damages</u>

If you decide that Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC's conduct caused Ms. Lively harm, you must decide whether that conduct justifies an award of punitive damages. The amount, if any, of punitive damages will be an issue decided later.

At this time, you must decide whether Ms. Lively has proved that Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC engaged in that conduct with malice, oppression, or fraud. To do this, Ms. Lively must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC, who acted on behalf of Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC;
2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC; or
3. That one or more officers, directors, or managing agents of Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC acted with intent to cause injury or that Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.

A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC's conduct was despicable and subjected Ms. Lively to cruel and unjust hardship in knowing disregard of her rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Wayfarer Studios, It Ends With Us Movie LLC, or The Agency Group LLC intentionally misrepresented or concealed a material fact and did so intending to harm Ms. Lively.

60

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision making such that the employee's decisions ultimately determine corporate policy.

**Source:** CACI – 3946. Punitive Damages – Entity Defendant—Bifurcated Trial (First Phase).

### L.   Burden of Proof - Clear and Convincing

**Plaintiff's Proposed Instruction:** For liability for punitive damages, the burden of proof is clear and convincing evidence, which is a higher burden of proof than "preponderance of the evidence." This means Ms. Lively must persuade you that it is highly probable that the facts as to punitive damages liability are true.

**Source:** CACI - 201. Highly Probable - Clear and Convincing Proof.

**Defendants' Proposed Instruction:**  Certain facts must be found by clear and convincing evidence.   Clear and convincing evidence is a more exacting standard than proof than a preponderance of the evidence, where you need believe only that a party's claim is more likely true than not.  On the other hand, clear and convincing evidence is not as high a standard as the burden of proof applied in criminal cases, beyond a reasonable doubt.

Clear and convincing evidence leaves no real substantial doubt in your mind. It is proof that establishes in your mind not only that the proposition at issue is probably true, but also that it is highly probably true.  For evidence to be clear and convincing, the witnesses must be found credible; the facts to which they testify must be distinctly remembered, and the testimony must be so clear, direct, weighty, and convincing that you can reach a clear conviction, without hesitancy, of the truth of the precise facts in issue.  Although this is a significant burden of proof, it is not necessary that the evidence by uncontradicted, as long as the evidence leads you to a clear conviction of its truth.

**Source:** *Carroll v. Trump*, 22-cv-10016, Dkt. No. 201 at Dkt. No. 18-22 (S.D.N.Y. 2023); N.Y. Civ. Rights Law § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 29 (S.D.N.Y. 2020); *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y. 2020); *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014).

**Plaintiff's Position:** The parties disagree with respect to both the language of the instruction and the sequence in which it should be given. Plaintiff maintains that the "Clear and Convincing" instruction should follow the language of CACI 201. Relying on federal case law, Defendants' proposed instruction seeks to impose a much higher burden than applies.

Plaintiff also asserts that the instruction should be given in connection with instructing the jury on punitive damages, rather than as part of the Court's General Instructions related to the burden of proof. This is especially important where, as here, Ms. Lively's punitive damages claim is the only claim that uses a clear and convincing standard. Including such instruction at the outset of the case may, therefore, risk the jury apply a clear and convincing burden where not required by law. Sequencing the instruction in connection with punitive damages, on the other hand, would effectively limit application of the higher burden only where appropriate and also moot Defendants' concerns about instructing the jury as to punitive damages at the outset of the case.

**Defendants position:** Defendant asserts that the "Clear and Convincing" Instruction should be administered in connection with the burden of proof instruction. Defendants are entitled to an instruction on clear and convincing evidence as the standard for certain issues (e.g., whether Defendants engaged in conduct with malice) must be proved by that standard.

## VIII.    FINAL INSTRUCTIONS

### A.    Right to See and Hear Exhibits and Testimony; Communications With Court

You are now about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The parties have prepared a list of the exhibits that were received, listed by exhibit number. If you want a particular exhibit, or if you want any testimony sent or read back to you, you may request that. Any communication with the Court should be made in writing, signed by your foreperson, and given to the court security officer, whom, as in all cases, I will swear to ensure that your deliberations may take place uninterrupted.

Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can. If you want testimony read back to you, please try to be as specific as you

62

possibly can because the court reporter will have to look through the transcript, and the parties will have to agree on what portions of testimony may be called for in response to your request, and if they disagree, I must resolve those disagreements.

If you want any further explanation of the law as I have explained it to you, you may also request that from the Court. If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for further explanation.

It is very important that you do not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my deputy, Mr. Fishman.

No member of the jury should ever attempt to communicate with me except by signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court.

If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

### B. Notes

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have

taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

### C. Duty to Deliberate / Unanimous Verdict

You will now retire to decide the questions I have described to you. For Ms. Lively to prevail on the questions that you must answer, she must sustain her burden of proof. Your verdict on each question must be unanimous. Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your duty to discuss the evidence. If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience. You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed. You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case. You are not to discuss the case until all jurors are present.

Four or five jurors together is only a gathering of individuals. Only when all the jurors are present do you constitute a jury, and only then may you deliberate.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

> D. <u>Selecting a Foreperson and the Foreperson's Duties</u>

The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the court security officer that the jury has reached a verdict, and when you come into open court, the foreperson will be asked to state what the verdict is.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

> E. <u>Verdict Form and Return of Verdict</u>

Once you have made your verdict, you will record your decisions in a verdict form which I have prepared for you. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

Once you have completed the form, the foreperson should then fill in the verdict sheet and date it, and each of you should sign it. The foreperson should then give a note to the court security officer outside your door stating that you have reached a verdict. Do not specify what the verdict is in your note. I will stress that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

F.  <u>Oath</u>

I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. Your oath sums up your duty. I know that you will do your duty and reach a just and true verdict.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).

G.  <u>Exceptions</u>

I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have given to you or if there is anything I may not have covered. In this regard, I ask you not to discuss the case while seated in the box because the case has not yet been formally submitted to you.

#     #     #

Members of the jury, that concludes my instructions to you. You may now retire to the jury room and begin this phase of your deliberations. As a first matter of business, please select a foreperson and send me a note, signed, dated, and timed, through the court security officer or my deputy, Mr. Fishman, telling me who you have elected as your foreperson.

**Source:** *Robinson v. De Niro et al.*, No. 19-cv-09156 (LJL) (S.D.N.Y.); *Rhee v. SHVMS, LLC*, No. 21-cv-4283 (LJL) (S.D.N.Y.).