**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BLAKE LIVELY,

      Plaintiff,

v.

WAYFARER STUDIOS LLC, et al.,

      Defendants.

---

No. 24-cv-10049 (LJL) (lead case)

 

 

**PLAINTIFF BLAKE LIVELY'S MOTION TO EXCLUDE**
**<u>TESTIMONY OF ANN FROMHOLZ</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT.................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

   A.   Fromholz Intends To Offer Four Opinions Purporting To Rebut Robbins' Opinions. ....... 2

   B.   Fromholz Has Limited Background On Workplace Practices In The Industry. ................. 3

   C.   Fromholz Relies On The CRD Guide To Support Her Methodology. .............................. 4

III.  LEGAL STANDARD ............................................................................................... 5

IV.   ARGUMENT ........................................................................................................... 6

   A.   FROMHOLZ'S FIRST OPINION REQUIRES EXCLUSION PURSUANT TO RULE
        702(A) & (C)....................................................................................................... 6

      1.   Fromholz's First Opinion Fails to Assist the Trier of Fact............................................ 6

      2.   Fromholz's First Opinion Is An Incorrect Legal Conclusion......................................... 7

      3.   Fromholz's First Opinion is Unreliable. ................................................................... 9

   B.   FROMHOLZ'S SECOND OPINION REQUIRES EXCLUSION PURSUANT TO RULE
        702(A)-(D). .......................................................................................................11

      1.   Fromholz's Second Opinion Fails to Assist the Trier of Fact. ....................................11

      2.   Fromholz's Second Opinion Is An Improper Legal Conclusion................................... 12

      3.   Fromholz's Second Opinion Is Unreliable................................................................ 13

   C.   FROMHOLZ IS NOT QUALIFIED TO OFFER THE THIRD OPINION AND IT
        SEPARATELY REQUIRES EXCLUSION PURSUANT TO RULE 702(B)-(D). .................. 16

      1.   Fromholz's Third Opinion is Unreliable.................................................................. 16

      2.   Fromholz Is Unqualified to Provide Her Third Opinion. ............................................ 18

V.    FROMHOLZ IS UNQUALIFIED TO PROVIDE HER FOURTH OPINION ................... 18

VI.   CONCLUSION...................................................................................................... 19

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*523 IP LLC v. CureMD.Com*,
    48 F. Supp. 3d 600 (S.D.N.Y. 2014)...............................................................................18

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
    754 F. Supp. 3d 456 (S.D.N.Y. 2024)..............................................................................13

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)...............................................................................................5

*Ascher v. Target Corp.*,
    522 F. Supp. 2d 452 (E.D.N.Y. 2007) .............................................................................18

*Bowles v. Osmose Utilities Servs., Inc.*,
    443 F.3d 671 (8th Cir. 2006) ..............................................................................................9

*Brooks v. City of San Mateo*,
    229 F.3d 917 (9th Cir. 2000) ..............................................................................................9

*Cadena v. Pacesetter Corp.*,
    224 F.3d 1203 (10th Cir. 2000) ..........................................................................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..................................................................................... *passim*

*F.T.C. v. Vyera Pharms., LLC*,
    2021 WL 5279465 (S.D.N.Y. Nov. 12, 2021)..................................................................16

*Faulkner v. Arista Records LLC*,
    46 F. Supp. 3d 365 (S.D.N.Y. 2014)................................................................................16

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    2015 WL 640875 (S.D.N.Y. Feb. 16, 2015)......................................................................7

*Golden Unicorn Enters., Inc. v. Audible, Inc.*,
    682 F. Supp. 3d 368 (S.D.N.Y. 2023)................................................................................7

*Highland Cap. Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)................................................................................7

*In re Elysium Health-ChromaDex Litig.*,
    No. 17-CV-7394 (LJL), 2022 WL 421135 (S.D.N.Y. Feb. 11, 2022)...............................5

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
    281 F.R.D. 174 (S.D.N.Y. 2012) .....................................................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018)..............................................................................10

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
    341 F. Supp. 3d 213 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS
    Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020) ..................9

*In re Rezulin*,
309 F. Supp. 2d at 543-44 ...........................................................................................13

*Kotla v. Regents of Univ. of California*,
115 Cal. App. 4th 283 (2004) ......................................................................................12

*Li v. Aponte*,
2009 WL 1285928 (S.D.N.Y. May 5, 2009) ...............................................................13

*Lippe v. Bairnco Corp.*,
288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) .....................13

*Lipsett v. Univ. of Puerto Rico*,
740 F. Supp. 921 (D.P.R. 1990) ..................................................................................12

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) ...........5

*Mendoza v. W. Med. Ctr. Santa Ana*,
222 Cal. App. 4th 1334 (2014) .....................................................................................8

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ......................................................................................5, 6

*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*,
103 Cal. App. 4th 1021 (2002) .....................................................................................8

*Rekor Sys., Inc. v. Loughlin*,
No. 19-CV-7767 (LJL), 2022 WL 2063857 (S.D.N.Y. June 8, 2022) .........................7

*Roberts v. Ford Aerospace & Commc'ns Corp.*,
224 Cal. App. 3d 793 (Ct. App. 1990) ..........................................................................8

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) .................................................................................6, 7

*Swenson v. Potter*,
271 F.3d 1184 (9th Cir. 2001) .......................................................................................8

*Tritchler v. Cnty. of Lake*,
358 F.3d 1150 (9th Cir. 2004) .......................................................................................8

*Yanowitz v. L'Oreal USA, Inc.*,
36 Cal. 4th 1028 (2005) ..........................................................................................11, 12

## OTHER AUTHORITIES

CAL. C.R. DEP'T. *Harassment Prevention Guide for California Employers* (Mar. 2025)
https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2025/04/Harassment-
Prevention-Guide-2025.pdf ................................................................................. *passim*

*California Department of Fair Employment and Housing Workplace Harassment
Prevention Guide for California Employers* (Mar. 2017)
(https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2017/06/DFEH-Workplace-
Harassment-Guide.pdf ....................................................................................................5

*Fox's Handling of O'Reilly Complaint Is A Cautionary Tale*, Law360 (Apr. 24, 2017)
    https://www.law360.com/articles/916583/fox-s-handling-of-o-reilly-complaints-is-a-
    cautionary-tale..................................................................................................................5

*Investigating When a Complaining Employee Won't Cooperate*, LinkedIn (Oct. 23,
    2017), https://www.linkedin.com/pulse/investigating-when-complaining-employee-
    wont-ann-fromholz ..........................................................................................................5

*Jeweler's Handling of Employee Complaints Far From Sterling*, Law360 (Mar. 30, 2017)
    https://www.law360.com/articles/907148/jeweler-s-handling-of-employee-
    complaints-far-from-sterling...........................................................................................5

**RULES**

Fed. R. Evid. 702      *passim*

## I.    **PRELIMINARY STATEMENT**

Defendants seek to rely on expert testimony from Ann Fromholz ("Fromholz") to rebut the opinions of Plaintiff Blake Lively's highly credentialed workplace policy expert, Michael Robbins ("Robbins"). *See* Hudson Decl., Ex. 1 (Robbins Rep.);[1] Ex. 2 (Robbins Tr.); Ex. 3 (Fromholz Rep.); Ex. 4 (Fromholz Tr.).[2] But Fromholz's opinions cannot survive scrutiny under Federal Rule of Evidence 702 ("Rule 702"). They are untethered from the remaining claims in this case, contrary to governing law and recognized workplace and investigative standards, unsupported by any reliable methodology, and—at critical junctures—based on selective facts, misstatements of the record, and improper legal conclusions reserved for the Court.

Fromholz's opinions are irrelevant and unhelpful to the trier of fact. Following the Court's April 2 summary judgment order, Dkt. 1273 (the "Order"), Ms. Lively's retaliation, but not her harassment, claim remains. Fromholz ignores Ms. Lively's retaliation claim altogether, opining only that it was not necessary to investigate any complaints of harassment because, according to her, no harassment occurred or recurred and a hypothetical investigation would not have supported the harassment complaints. As the Court held in the Order, whether the complained-of conduct amounted to harassment is immaterial to a retaliation claim so long as the employee acted with a good faith, reasonable belief. *Id*. at 97. Accordingly, Fromholz's testimony requires exclusion because it will not assist the trier of fact and instead substantially risks confusing the issues.

Fromholz's opinions separately require exclusion because they are unreliable. She opines that no investigation was necessary based on the outcome of a hypothetical investigation that never

---

[1] References to "Ex." or "Hudson Decl., Ex." refer to exhibits attached to the Declaration of Esra A. Hudson filed in support of this motion.

[2] "Robbins Rep." refers to the expert report of Michael Robbins, and "Fromholz Rep." refers to the expert report of Ann Fromholz.  Likewise, "Robbins Tr." refers to the deposition transcript of Michael Robbins, and "Fromholz Tr." refers to the deposition transcript of Ann Fromholz.

1

occurred, makes credibility determinations without interviewing a single witness (and failed to review available evidence and testimony), relies on a cherry-picked and incomplete record supplied by Defendants, and disregards investigative standards—including those she herself elsewhere endorses. In doing so, she repeatedly departs from the California Civil Rights Department ("CRD") Harassment Prevention Guide, Wayfarer's own policies, and her stated investigative practices.

Finally, Fromholz is unqualified to opine on core aspects of this case, including entertainment-industry intimacy protocols and the reputational impact of post-employment conduct on actors. She concedes she has never worked on a film set, engaged with an intimacy coordinator, or negotiated a nudity rider, and that her views on reputational harm are based solely on anecdote and media consumption. Rule 702 does not permit expert testimony built on speculation, selective reading, or generalized impressions.

Because Fromholz's opinions are unhelpful, unreliable, and—at points—inadmissible legal conclusions offered by an unqualified witness, her testimony should be excluded in its entirety.

## II.    <u>BACKGROUND</u>

### A.    <u>Fromholz Intends To Offer Four Opinions Purporting To Rebut Robbins' Opinions.</u>

Fromholz intends to offer Four Opinions:

1. "Robbins erred in his conclusion that Wayfarer failed in its obligation to conduct an investigation into concerns that Lively raised during the filming of It Ends With Us (the "Film") because Wayfarer, Baldoni, Heath, and other defendants took immediate action to correct and prevent conduct about which Lively complained and, therefore, an investigation would have been superfluous…" ("First Opinion");

2. "Robbins erred in his conclusion that Wayfarer failed in its obligation to conduct an investigation because an investigation would have shown that a preponderance of the evidence did not support Lively's allegations." ("Second Opinion");

3. "Robbins erred in his conclusion that Wayfarer violated 'Entertainment Industry-specific intimacy protocols,' by failing to require an intimacy coordinator to be present on set during Phase 1, failing to have a signed nudity rider in place in Phase 1, and allegedly failing to have a closed set during the birthing scene." ("Third Opinion"); and

4. "Robbins erred in his conclusion that the entertainment industry is unique in that post-employment actions that affect a person's reputation can harm their future job prospects." ("Fourth Opinion").

Fromholz Rep. at 2-3, 10 (collectively, "Opinions"). The Opinions purport to refute the three opinions offered by Ms. Lively's expert, Michael Robbins, who brings nearly five decades of experience in workplace practices and investigations:

1. "Defendants fail[ed] to follow standard practices (and their own policies and procedures) with respect to preventing harassment and retaliation from occurring relating to the movie It Ends With Us," including by "repeated failures to investigate harassment and retaliation allegations raised by Plaintiff Blake Lively (and at times by others on the Film)."

2. "Defendants fail[ed] to follow standard practices…with respect to preventing harassment and retaliation from occurring," including by "violat[ing] Entertainment Industry-specific intimacy protocols" that are "designed to prevent harassment from occurring and to ensure a safe environment for all involved."

3. The "unique nature of the Entertainment Industry and how an actor's career in the Industry can be affected both before and even after the project on which she is working has been completed."

Robbins Rep. at 1-2, 25-27.

### B.    Fromholz Has Limited Background On Workplace Practices In The Industry.

Although she has practiced employment law for years, none of the cases in which Fromholz has provided expert testimony pertain to workplace investigations within the industry. Fromholz Rep. at 1-2; Fromholz Tr. 60:15-18; 83:2-4. Fromholz conceded that she has never: (i) worked on a film set; (ii) worked with, or spoken to, an intimacy coordinator; (iii) negotiated or drafted a nudity rider; (iv) represented a film or TV studio in litigation; (v) served as an expert for an entertainment client; or (vi) opined as an expert on intimacy issues. *See* Fromholz Tr. 70:25-71:2, 15-21, 73:21-74:3, 224:23-225:20, 253:16-20; Fromholz Rep. at 2-3, 6-10.

### C.    <u>**Fromholz Relies On The CRD Guide To Support Her Methodology.**</u>

Fromholz points to three data points that can support the sufficiency of an investigation: (i) "legal obligations"; (ii) the "factors…in the CRD guide"; and (iii) her own "experience." Fromholz Tr. 61:23-62:3. While there are various standards, Fromholz's own cited CRD Harassment Prevention Guide for California Employers ("CRD Guide")[3] provides in relevant part:

- **<u>What An Employer Should Do Upon Receipt of a Complaint:</u>** "…if the report contains allegations of conduct that, if true, *would violate the company's policies or the law, the employer must investigate*…"

- **<u>Obligation to Investigate</u>**: "Investigators should start the investigation *promptly*…" "It is *rarely appropriate* for an employer or investigator to fail to investigate a complaint simply because an employee…*says they will address the problem themselves*…."

- **<u>Basic Steps For a Fair Investigation</u>**: "…*Interview relevant witnesses* and review relevant documents…*get all the facts*…Reach a reasonable and fair conclusion about what happened..."

- **<u>Recommended Practices for Investigations</u>**: "The investigation should be *impartial*. Factual findings should be based on *objective weighing of the evidence*…It is not uncommon for there to be no direct witnesses…in which case the investigator *must make determinations about the parties' credibility*…," by using factors such as motive to lie, and inconsistent statements.

- **<u>Counseling Against Retaliation</u>**: "…Employers *should tell…witnesses that retaliation violates the law and their policies*, *should counsel all parties and witnesses not to retaliate*, and should *be alert to signs of retaliation*…"

CRD Guide at 4-11, 14 (emphases added). Prior to her retention in this case, Fromholz publicly emphasized practices that aligned with the CRD Guide, stating, for example, that a "company *must*

---

[3] While Fromholz relies on the CRD Guide released in April 2025, Robbins relies on the DFEH guide that was operative at the time of the misconduct. *Compare* Fromholz Rep. at 7 (citing CAL. C.R. DEP'T. *Harassment Prevention Guide for California Employers* (Mar. 2025) https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2025/04/Harassment-Prevention-Guide-2025.pdf), with Robbins Rep. at 9 (citing DEP'T. OF FAIR EMP. AND HOUS., *California Department of Fair Employment and Housing Workplace Harassment Prevention Guide for California Employers* (Mar. 2017) (https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2017/06/DFEH-Workplace-Harassment-Guide.pdf).

investigate promptly" and "***regardless*** of whether the complaining party chooses to participate."[4]

### III.    <u>LEGAL STANDARD</u>

The "proponent of expert testimony has the burden of establishing" it is admissible. *In re Elysium Health-ChromaDex Litig.*, No. 17-CV-7394 (LJL), 2022 WL 421135, at \*1 (S.D.N.Y. Feb. 11, 2022) (citation omitted). Expert testimony is admissible only if it is (i) made by an expert with sufficient qualifications, (ii) reliable, and (iii) relevant. Fed. R. Evid. 702*; Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Nimely v. City of New York*, 414 F.3d 381, 396-397 (2d Cir. 2005). Whether a witness is qualified is a "threshold question that precedes the court's relevance and reliability inquiries." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) (citations omitted).

It is "critical that an expert's analysis be reliable at every step." *In re Elysium Health-ChromaDex Litig.*, 2022 WL 421135, at \*1. (internal citations omitted). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id*. Where "an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

As for relevance, the inquiry is whether the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 597 (citing Fed.

---

[4] A. Fromholz, *Jeweler's Handling of Employee Complaints Far From Sterling*, Law360 (Mar. 30, 2017) https://www.law360.com/articles/907148/jeweler-s-handling-of-employee-complaints-far-from-sterling;    A. Fromholz, *Investigating When a Complaining Employee Won't Cooperate*, LinkedIn (Oct. 23, 2017), https://www.linkedin.com/pulse/investigating-when-complaining-employee-wont-ann-fromholz; A. Fromholz, *Fox's Handling of O'Reilly Complaint Is A Cautionary Tale*, Law360 (Apr. 24, 2017) https://www.law360.com/articles/916583/fox-s-handling-of-o-reilly-complaints-is-a-cautionary-tale.

R. Evid. 702(a)). The Second Circuit has "consistently held…that expert testimony that usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it…by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely*, 414 F.3d at 397 (citations and quotations omitted); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) (citation omitted). Likewise, an expert cannot provide "legal opinions, legal conclusions, or interpret[s] legal terms; those roles fall solely within the province of the court." *Id*. (citations omitted).

IV.    **ARGUMENT**

   A.    **FROMHOLZ'S FIRST OPINION REQUIRES EXCLUSION PURSUANT TO RULE 702(A) & (C)**

      1.    **Fromholz's First Opinion Fails to Assist the Trier of Fact.**

Fromholz's First Opinion fails to assist the trier of fact under Fed. R. Evid. 702(a) because it no longer addresses a viable cause of action following the Court's Order, which granted summary judgment as to the harassment claims, but not as to Ms. Lively's Fair Employment and Housing Act ("FEHA") retaliation or aiding and abetting claims. Dkt. 1273. Fromholz opines that an "investigation would have been superfluous" because after Ms. Lively's Protections for Return to Production (the "Seventeen Protections")—a document that Ms. Lively sent to Wayfarer in November 2023 in which she requested that Wayfarer agree to implement seventeen protections to ensure a safe set going forward, and as to which she was "willing to forego a more formal HR process" ("Seventeen Protections")—no "allegations of misconduct…took place during the second phase [of filming]." Fromholz Rep. at 2; Tr. 63:23-64:8 ("if the conduct has stopped…and it hasn't repeated, then. . . the action was sufficient"). But that opinion addresses only Ms. Lively's complaints made during production, while ignoring anything that followed, including the

retaliation campaign. Fromholz's First Opinion is limited to ***only*** harassment, which not only leaves out the current viable claims, it also ignores that Robbins opines on the failure to follow practices and policies to prevent harassment ***and*** retaliation. It thus fails to correspond to Ms. Lively's remaining claims. *See, e.g.*, *Golden Unicorn Enters., Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 380 (S.D.N.Y. 2023) (finding expert's opinions "do not correspond to Plaintiffs' sole remaining claim…and, thus, are irrelevant, unreliable, and will not assist the trier of fact.").

### 2.    Fromholz's First Opinion Is An Incorrect Legal Conclusion.

Fromholz's First Opinion also fails to assist the trier of fact under Fed. R. Evid. 702(a) because her opinion that the Defendants' "corrective actions rendered an investigation superfluous" and "lived up to [their] ***legal obligation*** because [they] ensured that the unwanted conduct did not recur" is an incorrect legal conclusion. Fromholz Report at 2, 6 (emphasis added). Unlike Robbins, Fromholz is not opining on a failure to follow standards and policies to prevent harassment and retaliation. Instead, she opines far beyond Robbins' mandate by expressing opinions on whether ***the law***—as opposed to standards and policies—required the Defendants to perform an investigation into Ms. Lively's harassment complaints. A rebuttal expert report, such as Fromholz's Report, is "not the proper place for presenting new arguments" that prejudicially shift the legal framework. *Rekor Sys., Inc. v. Loughlin*, No. 19-CV-7767 (LJL), 2022 WL 2063857, at *7 (S.D.N.Y. June 8, 2022). And Fromholz may not "give testimony stating ultimate legal conclusions," as she purports to do here. *Scott*, 315 F.R.D. at 48 (citation omitted); *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 179-181 (S.D.N.Y. 2008) (quotations omitted) (excluding expert testimony providing ultimate legal conclusions).

Even assuming *arguendo* Fromholz could opine on the law, she wholly misstates the legal standard. Expert opinion that is "incorrect as a matter of law and conclusions drawn therefrom cannot help the trier of fact to determine a fact in issue." *See Fed. Hous. Fin. Agency v. Nomura*

*Holding Am., Inc.*, 2015 WL 640875, at *3 (S.D.N.Y. Feb. 16, 2015). Fromholz's legal conclusion that the Defendants somehow "lived up to [their] legal obligation" without performing an investigation is far afield from employers' "affirmative obligation" under the law to promptly investigate misconduct complaints. *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004); *see also Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002) ("employer's duty to prevent harassment and discrimination is affirmative and mandatory"); *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001) ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation"). Any conclusion otherwise runs contrary to well-established precedent.

Significantly, Fromholz's conclusion that simply agreeing to the Seventeen Protections corrected and prevented conduct is flatly wrong. Fromholz ignored the retaliation campaign that followed the Defendants' failure to investigate complaints. And the law is clear that the failure to conduct a rigorous investigation ***may be compelling evidence of an employer's retaliatory animus or malice***. For example, in *Mendoza v. W. Med. Ctr. Santa Ana*, the court found that an employer's "numerous shortcomings" with respect to an investigation following an employee's harassment complaints may be considered evidence from which to infer "retaliatory animus" for firing the employee after making such complaints. 222 Cal. App. 4th 1334, 1343–45 (2014) ("The lack of a rigorous investigation by defendants is evidence suggesting that defendants did not value the discovery of the truth so much as a way to clean up the mess that was uncovered [following the] complaint."). A failure to conduct an investigation may also support a finding of ratification for the purposes of punitive damages. *See also, e.g.*, *Roberts v. Ford Aerospace & Commc'ns Corp.*, 224 Cal. App. 3d 793, 801 (Ct. App. 1990) ("ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to

8

repudiate the employee's conduct by redressing the harm done and punishing or discharging the employee") (citation omitted). And even in Title VII cases, under which no independent failure to prevent cause of action exists, courts consider a failure to investigate as relevant in the context of punitive damages. *See, e.g.. Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1209 (10th Cir. 2000) (affirming punitive damages award based in part on investigation that was "inadequate...if not a complete sham"); *Bowles v. Osmose Utilities Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) (affirming punitive damages award based in part on the company's "indifference to the racially discriminatory behavior of its foreman").[5] It is undisputed that there was *no investigation at all* here, much less a rigorous one.

### 3.     Fromholz's First Opinion is Unreliable.

If the Court reaches reliability, the First Opinion must be excluded because it is methodologically unreliable under Fed. R. Evid. 702(c). When, as here, an expert "ignores evidence that is highly relevant to his conclusion, ***contrary to his own stated methodology***, exclusion of the expert's testimony is warranted." *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 242 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020) (emphasis added). Fromholz's opinion is based on multiple faulty steps: (i) replacing the Seventeen Protections with a "more formal HR process"; (ii) ignoring the retaliation to find that "[n]one of the allegations of misconduct in the Complaint took place during the second phase [of filming]"; and (iii) finding that "corrective actions rendered an investigation superfluous." Ex. 3 (Fromholz Rep.) at 2, 6-7, 10. Each step is contrary to her three data points she uses to assess the sufficiency of an

---

[5] Courts look to Title VII guidance for FEHA claims given they "operate under the same guiding principles."  Dkt. 1273 at 107 (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)).

investigation: (i) "legal obligations," as set forth *supra*; (ii) the CRD guide; and (iii) her own "experience." Fromholz Tr. 61:23-62:3.

***First***, Fromholz's conclusion that the Seventeen Protections were in lieu of a more formal HR process, Fromholz Report at 2, is directly contradicted by the CRD Guide, Wayfarer's workplace policies, and Fromholz's own practices. Despite standards and her own practices otherwise, she wrongly concludes that the Defendants "took immediate action to correct conduct about which Lively complained," by passively agreeing the Seventeen Protections. Fromholz Rep. at 2. The CRD Guide states it is "rarely appropriate" for an employer to forego an investigation simply because an employee "says they will address the problem themselves," and that an employer "must investigate" allegations of "conduct that, if true, would violate the company's policies or the law." CRD Guide at 4, 7. Fromholz conceded that the failure to investigate was "not consistent with every step" of Wayfarer's own workplace policies. Fromholz Tr. 140:4-145:8, 160:2-5. She has also explicitly stated that employers "must investigate promptly," regardless of whether the complainant chooses to participate. *See, supra*, n.4.

***Second***, the CRD Guide provides that an employer should counsel against retaliation, and that part of the purpose of conducting an investigation is that at the end of an investigation, the employer needs to take effective remedial measures to avoid additional wrongful conduct, including retaliation. CRD Guide at 14. Fromholz acknowledged that a core component of investigations—including every investigation she has ever conducted—is instructing the accused not to retaliate for the very purpose of preventing future retaliation against the complainant or anyone else involved in such investigation. Fromholz Tr. 97:22-102:1, 104:13-20. Yet Fromholz admits that because the Defendants never investigated Ms. Lively's or others' concerns, Mr. Baldoni and Mr. Heath were never instructed not to retaliate. *See id*. These "contradictory and

irrational results" are "indicia of unreliability" in Fromholz's methodologies requiring exclusion. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 468 (S.D.N.Y. 2018); *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 181 (S.D.N.Y. 2012) (refusing to consider "internally inconsistent" expert analysis).

### B.   FROMHOLZ'S SECOND OPINION REQUIRES EXCLUSION PURSUANT TO RULE 702(A)-(D).

#### 1.   Fromholz's Second Opinion Fails to Assist the Trier of Fact.

Fromholz's Second Opinion predicts the outcome of a hypothetical investigation of harassment complaints—an investigation that never occurred—to find that Ms. Lively's allegations somehow did not amount to harassment. For the reasons discussed above, Fromholz's Second Opinion fails to assist the trier of fact under Rule 702(a) because it is limited to predicting the legal outcome of harassment, and only harassment. This is particularly problematic given the well-established rule that a retaliation claim may be brought by an employee who has complained of harassing conduct that the employee *reasonably believes to be harassing*, even if a court later finds otherwise. Dkt. 1273 (Order) at 97 (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1131 (2005)). Here, the Court's Order did *not* conclude that Ms. Lively's allegations did not amount to harassment, determining instead that there was sufficient evidence that she *reasonably believed, in good faith, that the behavior she complained of was unlawful harassment*, and that *the Wayfarer Parties understood that her complaints amounted to sexual harassment allegations*.[6]

---

[6] "[I]t suffices for present purposes to conclude that, drawing all inferences in Lively's favor, a person in her position could have understood the workplace to at times reflect a gendered and sexualized view of women and a disregard for their privacy sufficient to make it reasonable to complain about a hostile work environment based on sex or gender. That conclusion finds additional support in the fact that Lively alluded to many of these incidents in the Protections Letter, and the Wayfarer Parties wrote that "[a]lthough [their] perspective differ[ed] in many aspects," they found most of her requests "not only reasonable but also essential for the benefit of all parties involved." *See* Dkt. 1273 (Order) at 115-116. And also: "a jury could also find that the Wayfarer Parties understood that Lively thought they had behaved in a discriminatory manner. Baldoni stated with respect to the Protections Letter, "[O]f course we all know what this document insinuates – that i am/ unsafe /sexually harassing etc etc etc . . ." *Id.* at 116.

Policy considerations support this rule because "a rule that would allow retaliation against an employee for opposing conduct the employee reasonably and in good faith believed was discriminatory, whenever the conduct subsequently was found not to violate the FEHA, would significantly discourage employees from opposing incidents of discrimination, thereby undermining the fundamental purposes of the antidiscrimination statutes." *Yanowitz*, 36 Cal. 4th at 1130-1131. Because Fromholz summarily and baselessly concludes *no harassment occurred*, Fromholz's legal conclusion is irrelevant to Ms. Lively's good faith, reasonable belief.

### 2.    Fromholz's Second Opinion Is An Improper Legal Conclusion.

Fromholz's Second Opinion should also be excluded as an impermissible legal conclusion or law-to-fact application. Fed. R. Evid. 702(a). Fromholz opines—based solely on grossly incomplete materials provided to her by the Defendants—that "a preponderance of the evidence did not support Lively's allegations." Fromholz Rep. at 7-8. Courts routinely reject such expert testimony. For example, in *Kotla v. Regents of Univ. of California*, the Court of Appeal found reversible error in allowing an expert to opine on whether an employer acted for retaliatory reasons in a wrongful termination case. 115 Cal. App. 4th 283, 291-292 (2004). There, the court found that an HR expert who opined that facts were "indicators" that an employer discharged an employee for retaliatory reasons "improperly invaded the province of the jury." *Id.*

Similarly, in *Lipsett v. Univ. of Puerto Rico*, the district court found two experts unqualified to testify about whether conduct constituted harassment in violation of the law because that testimony "usurps the prerogative of the jury as the fact finder and would not assist the jury in understanding the evidence or determining a main issue in this case." 740 F. Supp. 921, 925 (D.P.R. 1990). As the court reasoned, the "jury, using its own judgment, must decide whether the totality of the circumstances which has been presented during the trial is enough to constitute a hostile work environment." *Id*. The same principles apply here. Fromholz cannot opine on whether

12

Ms. Lively's allegations amount to harassment by a preponderance of the evidence. Only the jury can determine whether Ms. Lively had a good faith, reasonable basis for her allegations. The Court should reject her opinion in full. *See, e.g.*, *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 468 (S.D.N.Y. 2024) (excluding expert legal conclusions as "not helpful to the trier of fact").

### 3.     Fromholz's Second Opinion Is Unreliable.

Fromholz's Second Opinion should also be excluded as unreliable under Fed. R. Evid. 702(b)-(d) because it speculates as to the outcome of a hypothetical harassment investigation in a manner that is contrary to standards and Fromholz's own practices. Courts routinely exclude expert testimony that is "speculative or conjectural" or that is formed "without even endeavoring to obtain and consider all the available and relevant information." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004); *Li v. Aponte*, 2009 WL 1285928, at *6-7 (S.D.N.Y. May 5, 2009); *see also In re Rezulin*, 309 F. Supp. 2d at 543-44 (excluding expert testimony based on "personal, subjective views"). That is precisely the case here for three reasons.

***First***, Fromholz's methodology of reviewing handpicked documents ignores standard practices, including the CRD Guide on how to conduct a "fair investigation." CRD Guide at 3, 5-6. The CRD Guide's steps include proceeding impartially, interviewing witnesses, obtaining "all the facts," and making factual findings based on "objective weighing of the evidence." *Id.* Fromholz admitted at her deposition that she has ***never*** been trained to assess credibility for an investigation solely by reviewing deposition transcripts in an adversarial proceeding. *See* Fromholz Tr. 85:22-87:2, 106:7-17, 180:1-4, 180:11-181:14. Instead, she has been trained, in line with the CRD Guide, that an investigation requires determining the credibility of witnesses by interviewing them in a neutral investigative environment. *Id.*; *see also* Robbins Tr. 251:5-14, 254:4-20. Fromholz acknowledged that a neutral setting allows the investigator to ask questions,

13

follow up, and "dig down." *See* Fromholz Tr. 88:18-92:11. Yet, Fromholz "conducts" her own hypothetical investigation in a vacuum—making credibility determinations (and thereby plainly intruding on the province of the jury) without ever interviewing any witnesses and based solely on grossly incomplete materials provided to her by the Defendants that ignores Ms. Lively's good faith, reasonable belief altogether. Fromholz Tr. 35:3-36:3, 40:14-16, 183:3-22.[7] Fromholz admits she had no opportunity to do that here because she never interviewed anyone. *Id*. 40:14-20. She provided no input into the deposition questions posed to Ms. Lively, even though she recognized she could have "dug down" in different directions. *Id*. 88:18-92:5. Fromholz could not even recall whether Ms. Lively had been asked at her deposition about each incident she believed was harassing. *Id*. Fromholz testified that when she assesses the sufficiency of an investigation, she considers whether it was conducted promptly, who was interviewed, what documents were reviewed, and whether appropriate corrective action was taken—all of which cut against any claim of sufficiency here since ***none of this was done as there was no investigation***. *Id*. 61:23-63:22.

**Second**, Fromholz's methodology is also entirely inconsistent with her own past investigative practices. As to her own practice, Fromholz conceded that she has ***never before*** conducted an investigation in the manner in which she does here—making credibility findings using a self-serving set of documents without interviewing a single witness. *See id*. 40:14-20, 86:9-87:2, 72:2-75:25 (describing investigation in which she made credibility determinations based on witness interviews into an actress's harassment allegations). Even by her very own evaluation criteria by which she evaluates the sufficiency of any investigation—whether it was conducted

---

[7] "Q The factual findings that you made with respect to opinion 2? A Yes. Q Required you to choose which witnesses you believed or not, right? A Yes. Q To decide who's more credible? A Yes. Q And with respect to this, Ms. Lively's allegations, you have decided that Mr. Baldoni is more credible than she is? A In some cases, yes. . . . I think I decided he or somebody else was more credible than she. Q Okay. And you also made a determination that Mr. Heath, in certain instances, is more credible than Ms. Lively? A Yes."

14

promptly, who was interviewed, which documents were examined, and whether appropriate corrective action was taken—Fromholz's hypothetical investigation fails to pass muster.

**Third**, even if Fromholz could make credibility determinations without interviewing a single witness, her determinations ignore key facts that undermine the Defendants' narrative, and which demonstrate Ms. Lively's good faith, reasonable belief:

- **Fromholz Ignored Key Facts Regarding the Trailer Incident**: Fromholz found Ms. Lively's allegation that Jamey Heath entered her trailer and saw her breasts while she was having her makeup removed by Vivian Baker and Anne Carroll ("Trailer Incident") "contradicted" by selecting portions of Heath's testimony (who does not deny looking at Ms. Lively) and Carroll and Baker's testimony (who stated that they *tried* to cover Ms. Lively's naked body). Fromholz Rep. at 8; Fromholz Tr. 213:1-216:15. Fromholz entirely omits Carroll's testimony that Heath *could have seen* Ms. Lively's naked body in the mirror. *Id.*; Ex. 9 (Carroll Tr.) 60:13-19. When confronted with these omissions, Fromholz admitted that if she had credited Carroll's testimony, she *might have had to reconsider* her Second Opinion. *Id.*

- **Fromholz Ignored Key Facts Regarding the Birthing Video**: Fromholz accepts Heath's version of events as to Ms. Lively's allegation that Heath showed her a video of his wife giving birth nude without Ms. Lively's consent ("Birthing Video"). ███████████████████████████████████████ ███████████████████████████████████████ ██████████ She summarily and baselessly concludes that there was "no nudity in the first part of the video, which is the only part [Ms. Lively] might have seen." Fromholz Rep. at 8. Ms. Lively, however, recalls seeing a naked woman with her legs spread wide. Ex. 7 (Lively Decl.[8] ¶ 18). ██████████ ███████████████████████████████████████ ███████████████████████████████████████

- **Fromholz Ignored Pattern Evidence that Severely Undermines Baldoni's Credibility**: Fromholz's opinion conveniently omits incidents that Ms. Lively has pointed to as contributing to the harassing environment: (i) Baldoni telling Ms. Lively about his own sexual experiences, including simultaneous orgasms with his wife and asking Ms. Lively if she and her husband did too; and (ii) Baldoni teasing Ms. Lively about her not viewing pornography. *See generally* Fromholz Rep.; Robbins Tr. 249:1-250:16. Fromholz was also entirely unaware of Baldoni's text messages to his friends describing the Seventeen Protections as "all manipulation." *See* Fromholz Tr. 161:3-169:2. *She conceded that such*

---

[8] "Lively Decl." refers to Ms. Lively's declaration filed in opposition to defendants' summary judgment motion.

*texts would be relevant to assessing Baldoni's credibility, and that they could change her opinion "if there was action taken because of that." Id.*

- **Fromholz Ignored Key Facts Undermining the Defendants' Narrative**: Fromholz attempts to "undercut" Ms. Lively's allegations by asserting that "Lively, on multiple occasions initiated unscripted kisses of Baldoni." *See* Fromholz Rep. at 8. When pressed at her deposition, Fromholz acknowledged the script *expressly directed* Ms. Lively's character to kiss Baldoni's character "all over" for one of the scenes, and that for the other scene, "if they discussed and planned [the kiss], it *might have not been improvised*." Fromholz Tr. 204:14-209:22. Fromholz *never reviewed Ms. Lively's verified declaration in support of her MSJ opposition*, which contradicts the very narrative that Fromholz credited. *Id.* 210:22-212:6, 32:6-33:1. When asked whether her opinion would change based on the declaration, Fromholz replied, "I would have to go back and see if there's competing evidence..." *See id*.

Upon being confronted with these facts she conveniently ignored in forming her opinion, Fromholz immediately backtracked. She admitted that she may have changed certain opinions based on these omissions, or that her overlooked evidence would have been relevant to assessing credibility. *Id*. Fromholz's opinion relied on a record "too unrepresentative to provide reliable support." *F.T.C.* v. *Vyera Pharms., LLC*, 2021 WL 5279465, at *6 (S.D.N.Y. Nov. 12, 2021); *see also Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) (excluding opinion of expert who admitted "that he had failed to review all of the documents produced by [defendant] in the course of preparing his expert report").

## C.    FROMHOLZ IS NOT QUALIFIED TO OFFER THE THIRD OPINION AND IT SEPARATELY REQUIRES EXCLUSION PURSUANT TO RULE 702(B)-(D).

### 1.    Fromholz's Third Opinion is Unreliable.

Fromholz's Third Opinion is unreliable under Fed. R. Evid. 702(b)-(d) because it is built on selective facts and misstates governing standards. Fromholz opined that Robbins incorrectly concluded that (i) Wayfarer should have but failed to establish closed set protocols before the Birth Scene, and (ii) Wayfarer violated the SAG-AFTRA Guidelines ("Guidelines") by failing to offer

Ms. Lively an intimacy coordinator for the scene. Fromholz Report at 9. When tested, Fromholz's Third Opinion quickly crumbles.

*First*, Fromholz wrongly concludes that the Birth Scene did not involve nudity, and so did not require certain protocols. *See id*. While stating that intimacy coordinator Elizabeth Talbot "testified that the birthing scene did not involve nudity" (Fromholz Rep. at 9), Fromholz also admitted that Talbot testified that the scene *did involve* a "high hip profile," which *is* a form of nudity for which an intimacy coordinator and nudity rider *would be recommended*. Fromholz Tr. 231:14-25; Ex. 8 (Talbot Tr.) 69:13-21.

*Second*, Fromholz also wrongly faults *Ms. Lively* for not requesting an intimacy coordinator before the Birth Scene (Fromholz Rep. at 9), but Fromholz had not read documents at any point prior to her deposition illustrating that *neither Ms. Lively nor Talbot knew that the Birth Scene would involve nudity*, and so would not have known to request an intimacy coordinator's presence. Fromholz Tr. 249:3-24. She also glossed over that it was *Wayfarer's* obligation to call the intimacy coordinator to set. *See* Robbins Rep. at 23; Fromholz Rep. at 9.

*Third*, Fromholz incorrectly concluded the set was closed during the Birth Scene based *entirely on Heath's testimony*, which confused closing a set to the public, generally, with closing a set under the Guidelines. Fromholz Rep. at 9; Fromholz Tr. 235:23-238:8. 4. Fromholz conceded that she might alter her conclusion after she reviewed Ms. Lively's declaration (Ex. 7)—which states that the set was not closed to non-essential personnel—*for the first time at her deposition*. *Id*. 238:10-239:9, 240:23-241:4.

*Fourth*, Fromholz misstates the Guidelines by claiming they state that "intimacy involves *nudity and simulated sex*" only. Fromholz Rep. at 9. But the Guidelines define intimacy coordinator obligations to encompass "nudity, simulated sex, *and other intimate and hyper-*

17

*exposed scenes*." Exs. 5, 6 (Guidelines). This plainly applies to the Birth Scene, which involved a "high hip line," *i.e.*, "profile nudity," as Ms. Lively was positioned on her back for hours with her legs spread wide in stirrups, and at times with only a small piece of fabric covering her genitals. Exs. 7 (Lively Decl.) ¶ 15; 8 (Talbot Tr.) 69:13-21. When confronted, Fromholz conceded, "SAG-AFTRA believes intimacy coordinators should be hired…for other intimate and hyper-exposed scenes that don't necessarily involve nudity or simulated sex." Fromholz Tr. 248:17-23.

### 2.    Fromholz Is Unqualified to Provide Her Third Opinion.

Fromholz's Third Opinion should be excluded because Fromholz is unqualified to offer it. Fromholz has no experience with intimacy coordinators, nudity riders, improvisation of intimate scenes, or the Guidelines. *See id.* She conceded that her understanding of the intimacy coordinator role derives entirely from her review of Talbot's deposition transcript. *Id*. Fromholz cannot manufacture expertise by reading a document. *See, e.g.*, *Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 459 (E.D.N.Y. 2007) (excluding expert testimony where expert's CV and report reflected no "training and experience, let alone expertise" in subject matter).

## V.    FROMHOLZ IS UNQUALIFIED TO PROVIDE HER FOURTH OPINION

Fromholz's Fourth Opinion that there "simply is no support for the conclusion that actors are harmed more by reputational damage" than, for example, plumbers, is not expert testimony at all. Fromholz Report at 3, 9-10. Fromholz has no experience on reputational damage specific to the entertainment industry. Fromholz conceded her opinion is based solely on "things [she's] read and things that have happened to people that have been publicized." Fromholz Tr. 261:4-10. Anecdotal observations are not a substitute for expertise. *See, e.g.*, *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 647 (S.D.N.Y. 2014) (expert not qualified where "no link" existed between expert's "education/work experience and his qualification to render an [expert] opinion").

18

## VI.    CONCLUSION

For the foregoing reasons, the Court should exclude Ann Fromholz's testimony in full on each of her opinions.

Respectfully submitted,

Dated:        April 10, 2026            /s/ Esra A. Hudson

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
2029 Century Park East, 90067
Los Angeles, CA 20015
(202) 303-1442
mgottlieb@willkie.com

Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com

Aaron E. Nathan
Michaela A. Connolly
Melissa S. Taustine
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mconnolly@willkie.com
mtaustine@willkie.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski (admitted *pro hac vice*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

MANATT, PHELPS & PHILLIPS LLP
Esra A. Hudson (admitted *pro hac vice*)
Stephanie A. Roeser (admitted *pro hac vice*)
Sarah Moses (admitted *pro hac vice*)
Sareen K. Armani
Katelyn A. Climaco
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com
smoses@manatt.com
sarmani@manatt.com
kclimaco@manatt.com

Matthew F. Bruno
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com

*Attorneys for Blake Lively*

19