# EXHIBIT 23

Digital edition created exclusively for LFTC by VPS. Distribution is prohibited.

# LOST PROFITS DAMAGES:

## PRINCIPLES, METHODS, AND APPLICATIONS

### SECOND EDITION

### EVERETT P. HARRY, III
### JEFFREY H. KINRICH

Digital edition created exclusively for LFTC by VPS. Distribution is prohibited.

business faces a more difficult task of proving the elements of lost profits than an established business.[89] Nevertheless, "they are entitled to try."[90]

The "evidence of lost profits from a new business venture receives greater scrutiny because there is no track record upon which to base an estimate."[91] Due to this higher standard, courts "routinely reject lost profit claims from unestablished businesses."[92]

## Status as a New Business

Because courts apply greater scrutiny to lost profits claims of new businesses, a plaintiff has an incentive to contend that its business is not new. Whether a business is new is highly fact dependent. Courts may look at whether the business's product is new, whether the business proposes to sell an already existing product in a new market, the existence of an established customer base, and the experience of the individuals running the business, among other factors.[93] A new franchisee may avoid being designated as a new business if the costs and profits of existing franchise outlets, even those outside the local area, are "known and largely uniform."[94]

One court has suggested that a business developing new technology may still be considered a "start-up" even though it had operated for more than a decade, because "[s]uch businesses often operate for years without profit."[95] "[T]raditional lost profits analysis as a measure of damages may not be an adequate model" for those kinds of businesses.[96]

## Reasonable Certainty of Lost Profits for New Businesses

For a new business seeking to prove lost profits, the business's belief that it would have been profitable is not enough.[97] The plaintiff must submit evidence of lost profits that is reasonably

---

89    *Energy Capital*, 302 F.3d at 1326–27 ("While the nature of a new venture may make it difficult to recover lost profits by establishing all of the elements of the general rule, such damages are not barred as a matter of law.").

90    *Smart Mktg. Grp.*, 624 F.3d at 829.

91    *Schonfeld*, 218 F.3d at 172; *Alphamed Pharm.*, 432 F. Supp. 2d at 1340 (citing and quoting *Schonfeld*); *Kenford*, 67 N.Y.2d at 261 ("If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty."); *Tipton v. Mill Creek Gravel Inc.*, 373 F.3d 913, 918 (8th Cir. 2004) (new businesses labor "under a greater burden of proof in overcoming the general rule that evidence of expected profits is too speculative, uncertain, and remote to be considered") (citation omitted).

92    *Alphamed Pharm.*, 432 F. Supp. 2d at 1340 (listing numerous examples).

93    *Specialty Beverages*, 537 F.3d. at 1178 (business in existence for two years, which had stepped "into the shoes" of an established business, was "not a new enterprise"); *TAS Distrib.*, 491 F.3d at 634 (applying Illinois new business rule to new products marketed by established business and to products that created new business for established entity); *Schonfeld*, 218 F.3d at 173 (business was new because the "operating entity never saw the light of day," was offering a new product and an existing product into a new market, "had no established customer base," and was run by individuals with "no historic record of operations"); *Knier*, 78 Nev. at 23–24 (motel "at its new location was a new business venture" although it had operated for two years "at a nearby location"); *RC & CA Doghouse, L.L.C. v. Riccadonna*, 820 N.W.2d 159, 159 (Iowa Ct. App. 2012) (business taken over by new owner was not a "new business"); *Smart Mktg. Grp.*, 624 F.3d at 830 (venture by two established businesses to create web-based enterprise was a new business); *Humetrix,* 268 F.3d at 920 (although plaintiff had not previously marketed defendant's health care product, plaintiff was not a new business because it had marketed other health care services for 10 years); *Ashland Management, Inc. v. Janien*, 82 N.Y.2d 395, 406 (1993) ("while the parties were launching a new investment strategy, they were not entering a new or unfamiliar business"); *SIGA Tech., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1137–38 (Del. 2015) (lost profits from experimental drug were not speculative because parties were in the pharmaceutical business, government was a "likely near term purchaser," and plaintiff had met development and funding milestones).

94    *No Ka Oi Corp. v. National 60 Minute Tune, Inc.*, 71 Wash. App. 844, 852 (1993).

95    *LightLab*, 469 Mass. at 193.

96    Ibid.

97    *Schonfeld*, 218 F.3d at 173 ("entrepreneur's cheerful prognostications are not enough").

Digital edition created exclusively for LFTC by VPS. Distribution is prohibited.

**CHAPTER 2  LEGAL PRINCIPLES FOR LOST PROFITS DAMAGES** 57

certain.[98] Because a new business does not have a track record of profits, the plaintiff must show "that there is some standard by which the amount of damages may be adequately determined."[99]

Some types of new businesses may find proving lost profits difficult. A lost profits claim by a new business that relies on "the 'fickle' preferences of the consuming public may be unduly speculative."[100] For example, in *MindGames, Inc. v. Western Pub. Co., Inc.*, the seller of a new board game "had no track record" when he created the game, and thus "could not point to other games that he had invented and that had sold well."[101] Although the game at issue had sold well at first, "sales fizzled," and the court concluded that it was plausible to conclude that "demand had dried up."[102] The plaintiff's lack of a track record made determining the amount of lost sales "excessively speculative," and because the plaintiff "pointed to no evidence from which lost royalties could be calculated to even a rough approximation," the court affirmed judgment in favor of the defendant.[103]

Similarly, "claims for profits lost in unsuccessful entertainment ventures have received a chilly reception in the New York courts."[104] Likewise, "recovery of lost profits for anticipated sales of a new drug" is "exceedingly difficult" because only a "minuscule percentage of drugs in development ever reaches the commercial market" and only a subset of those are profitable.[105] Needless to say, a plaintiff seeking lost profits for a new business not even in the planning stage will find recovery difficult.[106]

Lost profits for a new business may be shown "with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises and the like."[107] The expert must present a "method for determining the lost profits" and base conclusions on evidence such as "specific economic or financial data, market survey or analysis based on the business records or operating histories of similar enterprises."[108] Unsupported expert conclusions are insufficient.

One method is to use "a comparable established business that is also owned and operated by the plaintiff."[109] For example, in *DSC Communications Corp. v. Next Level Communications*,

---

98    *Tipton*, 373 F.3d at 919 (new business "did not prove lost profits with reasonable certainty" because profits calculation was based "upon a future demand that does not yet exist"); *Mid-Am. Tablewares,* 100 F.3d at 1366–67 (evidence from experienced buyers of enthusiasm for plaintiff's new product line was sufficient to support "reasonable finding" that new product line would have yielded future profits); *Knier*, 78 Nev. at 23–24 (no evidence motel would have been profitable at new location where record did not "reveal whether the motel at its original location ever enjoyed a profit"); *Sargon*, 55 Cal. 4th at 781 (plaintiff "could not obtain a massive verdict based on speculative projections of future spectacular success").

99    *Alphamed Pharm.*, 432 F. Supp. 2d at 1340 (citation omitted).

100   Ibid at 1341 (citing *MindGames, Inc. v. Western Pub. Co., Inc.*, 218 F.3d 652, 658 (7th Cir. 2000)); see also *Kenford,* 67 N.Y.2d at 262–63 ("the whim of the general public" and "the fickle nature of popular support for professional athletic endeavors" make predicting profits of a sports facility inherently uncertain).

101   *MindGames,* 218 F.3d at 658.

102   Ibid at 658.

103   Ibid at 659; see also *Olsenhaus Pure Vegan, LLC v. Electric Wonderland, Inc.*, 983 N.Y.S.2d 506, 508 (2014) (lost profits speculative in fashion industry).

104   *Schonfeld*, 218 F.3d at 174 (explaining that entertainment ventures are subject "to the changing whims and artistic tastes of the general public").

105   *Alphamed Pharm.*, 432 F. Supp. 2d at 1345–46.

106   *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (reversing award of lost profits where plaintiff had merely contemplated entering into the new business).

107   *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 884 (2002) (quoting *Restatement (Second) of Contracts*, section 352, comment b); see also *Kaech v. Lewis County Pub. Util. Dist. No. 1*, 106 Wash. App. 260, 277 (2001) ("expert testimony alone is a sufficient basis for an award of lost profits in the new business context when the expert opinion is supported by tangible evidence with a 'substantial and sufficient factual basis' rather than by mere 'speculation and hypothetical situations'") (citation omitted); *Helena Chemical*, 47 S.W.3d at 505 ("future contracts" can be basis for calculation).

108   Ibid at 888.

109   *DaimlerChrysler Motors*, 362 S.W.3d at 190; see also *Kids' Universe*, 95 Cal. App. 4th at 886 ("the experience of the plaintiff and that of third parties in a similar business have been admitted to prove lost profits" for a new business).

Digital edition created exclusively for LFTC by VPS. Distribution is prohibited.

**CHAPTER 10  ANALYSIS OF PROJECTED LOST REVENUE**

analyst in analyzing and understanding cost behaviors as part of the broader damages analysis (see Chapter 12, "Analysis of Cost Behavior").

Regardless of the modeling platform selected, documentation is essential. A computational or analytical process should be supported with cross-references to supporting materials to make the calculation easy to follow for both the analyst and other parties. Often, deposition or trial testimony occurs months or years after preparation of a damages model, and the expert may have difficulty explaining the process and methodology used to compute a given number if the mathematical steps and data referenced are hidden within spreadsheet formulas. To circumvent this, the analyst should avoid embedding multiple-step calculations within a cell unless the mathematical logic will be clear to any intelligent reviewer of the spreadsheet and can be easily recalled by the expert months after preparation of the computational model. A few tactics to facilitate the referencing process include:

- Breaking more complex computations into multiple steps that are shown on separate rows/columns within the model
- Ensuring that the row/column descriptions clearly explain the computational step
- Adding a footnote for each relevant row or column that clearly states how the figures shown were computed and what source documents were relied upon

## Use of Management Sales Projections

While some lost profits engagements require projecting lost revenue in aggregate, often the analyst must separately project the components of revenue: lost-sales quantities and but-for unit sales prices. When calculating lost-sales quantities, the analyst typically relies either on historical data or on projections developed by the damaged entity or an external source. The analyst should consider whether management's estimate of expected revenue during the damages period is reasonable and, if not, make necessary adjustments. If the analyst elects to utilize company projections, as opposed to historical data, the analyst should be prepared to provide supporting documentation and analyses detailing the rationale for utilizing the projections. Experts have been harshly criticized—and at times excluded—for basing lost profits models on the plaintiff's business plans without validating and supporting their reasonableness. It is dangerous to merely assume that the forecasts are reasonable without appropriate testing.[2] One approach to validating projections is to compare historical budgets or projections to actual results during the pre-injury period to evaluate the damaged entity's ability to accurately project future results. For example, if in the two years preceding the damage event the entity's forecasts were accurate to within 2 percent of its sales, the analyst may conclude that the entity is skilled in forecasting its sales revenue. Following such an evaluation, the analyst should consider whether adjustments are appropriate to align company forecasts with but-for projected results. Also, *ex post* information may reveal the need to amend a projection prepared before the beginning of the but-for damages period. Thus, adjustments may be warranted under either or both of these two possible conditions. First, the analyst may determine that management's historical projections generally tend to either overstate or understate actual results. If so, management's projection for the damages period may be adjusted accordingly. Second, the damages analyst may identify relevant *ex post* information arising during the damages period that contradicts a management premise for the damages period projection and adjust the projection, as needed. For example, the projection of expected revenue volume for the damages period included sales to a company that subsequently encountered financial insolvency and ceased buying plaintiff's

---

2    *David Otis v. Doctor's Associates, Inc., Frederick A. Deluca, and Peter H. Buck*, Memorandum Opinion and Order dated September 14, 1998 (U.S. District Court, N.D. Illinois, No. 94 C 4227).