# EXHIBIT 8

CONFIDENTIAL

** C O N F I D E N T I A L **

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 1:24-CV-10049-LJL

(Consolidated with 1:25-cv-00449-LJL)

-----------------------------------x

BLAKE LIVELY,

          Plaintiff,

    - against -

WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual, JED WALLACE, an individual, and STREET RELATIONS INC., a California Corporation,

         Defendants.

-----------------------------------x

         (Caption continued)

         September 29, 2025

         10:06 a.m.

      Videotaped Deposition of KEVIN ALEXANDER, taken by Defendants, pursuant to Subpoena, held at the offices of Meister Seelig & Fein PLLC, 125 Park Avenue, New York, New York, before Todd DeSimone, a Registered Professional Reporter and Notary Public of the State of New York.

Page 1

ALEXANDER - CONFIDENTIAL

Tribeca to the New Jersey production office?

A.      20 to 25 minutes.

Q.      That's pretty good, no traffic that day.

Was the radio on during any portion of that car ride?

MS. ROESER:  Objection.

A.      No.

Q.      And it was during that period of time where you heard Mr. Baldoni discuss his personal sexual experience; is that correct?

A.      Yeah.

Q.      Did you hear Mr. Baldoni discuss anything else during that car ride?

A.      Yes.

Q.      Can you tell us what you heard him discuss during the car ride?

A.      He was discussing his sexual relations with women.  As we were driving, he stated that, and it took my focus off driving because I can't forget this, you know, his sexual relations with women, how

Page 44

ALEXANDER - CONFIDENTIAL

he was forced on and he forced himself on women.  To me it was very out of the ordinary to meet somebody and talk like that in a vehicle.  That's why it caught my attention.

Basically he kept talking about his sexual relations, and, again, like I'm repeating myself I believe, but, you know, he would force himself on women.  If they said no, this, that, he would revert back.  It was just disturbing.

Q.    Anything else that you can recall?

A.    While we were driving, for some reason he pointed out his place of living.

Q.    I'm sorry?

A.    His place of living in Jersey City as we were driving.  I remember that.  He for some reason had us pause.  And then when we got to the production office, which was down the road from that area, I pulled over, let everybody out, I stated to Blake "I feel very uncomfortable.  Something is not right here.  I would like to do a

Page 45

ALEXANDER - CONFIDENTIAL

background check on him or something," and later to learn that he was the producer in production of this movie.

Q.    How did you learn that?

A.    Basically when I brought up his name, everybody was like he is part of the movie, you know.  Well, I shouldn't say it that way.  Like Sophia and Blake said, you know, that's the production guy, you know, that movie.

Q.    Okay.  Do you recall anything else discussed during that car ride other than what you have already told us?

A.    I can go through it again.  It just stuck in my head.  It is just basically --

Q.    I'm not asking you to repeat yourself, I'm asking did you leave anything out?

A.    Him having sexual relations, force himself on women, women force themself on him.  It is straightforward, standard, what went on in that car ride.

He did -- he did ramble on

Page 46

ALEXANDER - CONFIDENTIAL

about more stuff, but I didn't pay attention to it because I was focused on driving.  It is those key points when someone says, you know, forcing myself on women, women forced on me, I don't -- I didn't care, like, you know, it is disturbing to me.  You can't forget something like that.

Q.    Okay.

A.    So that is mainly it.

Q.    Okay.  Did his tone of voice or volume of speaking remain the same during the car ride or were there periods of time where his voice was amplified or he started to talk lower or something else?

MS. ROESER:  Objection.

A.    I don't recall.

Q.    When in relation to them getting into the car did he start to discuss these topics that you just raised?

MS. ROESER:  Objection.

Q.    And if it's not clear, you know, was it right away, was it five minutes in, was it closer to the production

Page 47

ALEXANDER - CONFIDENTIAL

need to be on heightened alert or do anything different?

MS. ROESER:  Objection.

A.    Not that I recall.

MR. SCHUSTER:  I have nothing else.

MS. ROESER:  I have just a couple of questions before we go off record.

EXAMINATION BY MS. ROESER:

Q.    Mr. Alexander, you testified earlier with respect to a conversation in a car ride with Mr. Baldoni when he said something to the effect of that he forced himself on women.  Do you recall that testimony?

A.    Yes.

Q.    Do you recall Mr. Baldoni also sharing during that car ride something to the effect of he would force himself on women even when they said no or did not consent?

A.    Yes.

Q.    Mr. Baldoni's statements during

Page 87

ALEXANDER - CONFIDENTIAL

that right?

A.     Yes.

Q.     And was that true to what you were feeling at the time?

A.     Yes.

Q.     Why didn't you want Ms. Lively to be alone with Mr. Baldoni?

A.     Due to the conversation in the vehicle, the stuff he spoke about, you know, sexual relations, forcing himself on women, no consent, or he didn't give consent for a woman to force it on him. It's disturbing to me when you are first meeting someone and it just stuck out and that's why I stated what I stated.

Q.     You stated it was disturbing to you when you first meet somebody.  Did you also find it disturbing that Mr. Baldoni would speak about forcing himself on women without consent to Ms. Lively at any time even if it wasn't their first meeting?

MR. SCHUSTER:  Objection.

A.     Repeat that.

Q.     Would you find it appropriate

Page 89

ALEXANDER - CONFIDENTIAL

for Mr. Baldoni to speak about forcing himself on women without consent --

A.    No.

Q.    -- to Ms. Lively even if it wasn't the first time they met?

MR. SCHUSTER:  Objection.

A.    No.

MS. ROESER:  Nothing further.

MR. SCHUSTER:  I have a few follow-ups.  I'm sorry.

EXAMINATION BY MR. SCHUSTER:

Q.    You said it was the first car ride.  Do you know if this was the first interaction between Blake Lively and Justin Baldoni or was it your first interaction with Justin Baldoni?

A.    It is my first, and I don't recall if they were before the fact.

Q.    I know you didn't read the book, but at that time did you have any understanding of what this movie was about?

A.    No.

Q.    Did you have any understanding that it was about domestic violence?

Page 90

ALEXANDER - CONFIDENTIAL

take following that car ride to ensure that Blake Lively would not be alone with Justin Baldoni?

MS. ROESER:  Objection.

A.    Repeat the question.

Q.    Sure.  You said that you did not want Ms. Lively to be alone with Mr. Baldoni going forward after the car ride, correct?

A.    Correct.

MS. ROESER:  Objection.

Q.    What, if anything, did you do to ensure that Ms. Lively would not be alone with Mr. Baldoni going forward?

MS. ROESER:  Objection.

A.    I don't recall.

Q.    Did you consider yourself a driver, a driver/security, or something else?

MS. ROESER:  Objection.

A.    A driver/security.

Q.    And as you sit here today, those are the words you recall Mr. Baldoni using, that he forced himself on other

Page 92

ALEXANDER - CONFIDENTIAL

women without consent?

A.    Yes.

Q.    Anything else you can recall specifically that Mr. Baldoni said in that car ride?

A.    He had women force themselves on him as well without consent, that was part of the car ride, a back and forth scenario.

Q.    And did you hear any context for why he brought this up?

MS. ROESER:  Objection.

A.    Not that I know of.

MR. SCHUSTER:  Okay.  Thank you, sir.

MS. ROESER:  Off the record.

(Continued on the next page.)

Page 93

CONFIDENTIAL

CERTIFICATION

I, TODD DeSIMONE, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of September, 2025.

TODD DESIMONE

*        *        *

Page 96