# EXHIBIT 28

CONFIDENTIAL

**Page 1**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---

BLAKE LIVELY,

               Plaintiff,

  vs.       CASE NO. 24-CV-10049-LJL (LEAD CASE)

                    25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

              Defendants.

_____

JENNIFER ABEL,

        Third-party Plaintiff,

  vs.

JONESWORKS, LLC,

        Third-party Defendant.

_____

WAYFARER STUDIOS LLC, et al.

        Consolidated Plaintiffs,

  vs.

BLAKE LIVELY, et al.

        Consolidated Defendants.

_____

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JAMEY HEATH

Los Angeles, California

Wednesday, October 8, 2025

Stenographically Reported by:  Ashley Soevyn,
CALIFORNIA CSR No. 12019

CONFIDENTIAL

Page 130

production?

MS. SHAPIRO:  Objection.

THE WITNESS:  I'm not saying that.  I'm saying that Wayfarer has HR, and movies don't typically have an HR person on set.

BY MS. HUDSON:

Q    So what is your understanding of who was responsible for human resources matters for the movie It Ends with Us?

A    My understanding is I deferred to Alex Saks, ultimately, and Jill Sacco, who was our production supervisor, as well as Andrea, who was our line producer, that if there was -- concerns would go to them if there were any brought up.  They would then learn what the next step was should it need to go to another step.  And in this case, they had asked for Wayfarer's HR or they wanted to know who, and that's -- we just followed what their suggestions were at that time.

Q    So you deferred the notion of human resources issues to Alex Saks, Jill Sacco, and Andrea Ajemian?

A    For the movie itself?

Q    Uh-huh.

A    They were ones that were more experienced

CONFIDENTIAL

Page 131

with how policies or -- or what the procedure would be -- excuse me -- not policies, but the procedure would be for anything as it pertains to the movie.

Q    And were Alex Saks, Jill Sacco, or Andrea Ajemian employees of Wayfarer Studios?

A    They were employees of It Ends With Us.

Q    They were not Wayfarer employees, right?

A    They were not.

Q    But you were?

A    Yes.

Q    And was there any other information given to anybody who worked on It Ends with Us that if they had a human resources concern, they should go to Alex Saks, Jill Sacco or Andrea Ajemian?

MS. SHAPIRO:  Objection.

THE WITNESS:  From my understanding, the normal protocol that happens at all movies, happened on It Ends with Us.

MS. HUDSON:  We'll move to strike as nonresponsive.

THE WITNESS:  Okay.

BY MS. HUDSON:

Q    Can you answer the question I asked?

A    I'm happy to.  I thought I did.

Q    You did not.

CONFIDENTIAL

Page 280

production resumes which will include the director, all producers, the Sony representative, the newly-engaged third-party producer, Ms. -- BL and BL's designated representative to confirm and approve a plan for implementation of all the above that will be adhered to for the physical and emotional safety of BL, her employees and all the cast and crew moving forward."

Do you see that?

A    I do.

Q    Okay.  And there was a meeting that included all of those participants in her apartment on January 4th, the day before production began, right?

A    Yes.

Q    Okay.  And have you read Ms. Lively's second amended complaint?

A    I have.

MS. HUDSON:  Okay.  I'm going to hand you that document, the second amended complaint, which we have marked as Exhibit 15.

(Exhibit 15 marked for identification.)

CONFIDENTIAL

Page 281

THE WITNESS:  Do you want me to read the whole thing?

BY MS. HUDSON:

Q    I definitely don't want you to read the whole thing.  I am going to point you to something very specific in this document.

If you turn to page 7.

A    Okay.

Q    You will see paragraphs 19 and 20 refer to the January 4th meeting and the participants.

Do you see that?

A    I do.

Q    And the participants that are listed in paragraph 19, is that an accurate list of who was present?

A    Chris Surgent was also present for the beginning portion of it.

Q    Okay.  Other than that, is it an accurate list?

A    Yes.

Q    And then in paragraph 20, the complaint says that during the meeting, that Ms. Lively read the list below in its entirety.  And then below is a list of 30 points.

Do you see that?

CONFIDENTIAL

Page 282

A    I see the 30-point list that's included in this document.

Q    Okay.  And you see in the complaint where it says Ms. Lively said she read the list below in its entirety, right?

A    I see that.

Q    Okay.  And did you attend the entire meeting?

A    I did.

Q    Okay.  And you said you've read the second amended complaint before, right?

A    I have, but I don't recall every single detail of it.  There's been many legal motions moving on around.  So I did at the time, yes.

Q    Well, I would like you to take a moment and look at this 30-point list, and tell me if you recall Ms. Lively discussing each of these things during the January 4th meeting.

A    You mean did she -- I just want to be clear -- discuss any of the things inferred in these things?  Because she did not read this list.

Q    Your position is she did not read from a list?

A    She did read a few things from her phone. She did not read this list.  So I just want to know

CONFIDENTIAL

Page 283

what you want me to do because...

Q    Are you saying Ms. Lively read a different list?

A    I'm saying Ms. Lively read a few things from her phone, maybe nine or ten things, that were not phrased in this way at all.

Q    When you say they "were not phrased in this way," what do you mean by that?

A    Well, nothing ever said "no more."  And the way that it's written was not -- she read more -- it wasn't firsthand, but it was -- it was less -- it was not phrased like this.

Q    So each one of these 30 points addresses a topic.  Are -- are there any topics that are addressed in these 30 points that Ms. Lively did not cover during the meeting?

MS. SHAPIRO:  Objection.

THE WITNESS:  Yeah.

BY MS. HUDSON:

Q    Which ones?

A    Okay.  Well, we can take our time going through them.  I -- I don't know how you want to do this.  But, like, starting with number 1, "no more showing nude videos or images of women."  Then it says "including producer's wife," which insinuates

CONFIDENTIAL

Page 404

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Dated this 10th day of October 2025.

ASHLEY SOEVYN

CSR No. 12019