# EXHIBIT 30

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                              )
BLAKE LIVELY,                 )
                              )
          Plaintiff,          )
                              )
     vs.                      ) No. 1:24-CV-10049-LJL
                              ) (Consolidated with
WAYFARER STUDIOS LLC, a       ) 1:25-cv-00449-LJL)
Delaware Limited Liability    )
Company, JUSTIN BALDONI, an   )
individual, JAMEY HEATH, an   )
individual, STEVE SAROWITZ, an) HIGHLY CONFIDENTIAL -
individual, IT ENDS WITH US   ) ATTORNEYS' EYES ONLY
MOVIE LLC, a California        )
Limited Liability Company,     )
MELISSA NATHAN, an individual,)
THE AGENCY GROUP PR LLC, a     )
Delaware Limited Liability     )
Company, JENNIFER ABEL, an     )
individual, JED WALLACE, an    )
individual, and STREET         )
RELATIONS INC., a California   )
Corporation,                   )
                              )
          Defendants.         )
_____)
                              )
(RELATED CONSOLIDATED CASE.   )
_____)


     VIDEOTAPED DEPOSITION OF SHELLEY ANNE CARROLL
               Los Angeles, California
             Thursday, September 25, 2025


     Reported by:
     RENEE A. PACHECO, RPR, CLR
     CSR No. 11564

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 53

in the first phase of production?

A    Yes.

Q    Can you describe for me what you recall about the occasion on which Mr. Heath arrived to Ms. Lively's hair and makeup trailer?

A    Yes.  Do you want me to describe like the --

Q    Sure.  Go ahead and ask your question.

A    Like the whole -- that sort of moment, like the whole morning or.

Q    Why don't we do it this way.  If you could -- it sounds like there's a certain occasion on which Mr. Heath's arrival to Ms. Lively's hair and makeup trailer sticks out in your mind; is that right?

A    Yes.

Q    Can you please describe for me the moment at which you understood Mr. Heath was arriving to the trailer to the point at which Mr. Heath exited the trailer?

A    Okay.  We -- Blake was having body makeup done in the trailer by Vivian.  We heard the door open and looked and went "Whoa, whoa, whoa."  And it was Jamey at the door.  I had grabbed a cutting cape which was over my chair and held it up to try and

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 54

cover her.  And she said -- Blake said, "Whoa, whoa. I'm" -- you know, "Don't come in."  And he said, "It will only take a second."  And that's when all of that action was happening.  He stayed in the trailer, they had a discussion, and he left.

Q   Did you know that Mr. Heath was going to be coming to the trailer when he did?

A   I did not.

Q   Did you have an understanding that Mr. Heath was invited to the trailer by Ms. Lively?

A   I did not.

Q   Did you understand that Ms. Lively did not expect Mr. Heath to come to the trailer at that moment?

MS. GAROFALO:  Objection.

THE DEPONENT:  Say that again.  Sorry.

BY MS. BENDER:

Q   Did you have an understanding that Ms. Lively was not expecting Mr. Heath to show up at her hair and makeup trailer at that moment?

A   By her reaction, yes.

Q   Did Mr. Heath abide by the protocol of knocking on the door that you described earlier today?

A   No.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 55

Q   Did Mr. Heath ask for permission to open the door into Ms. Lively's private hair and makeup trailer?

A   No.

Q   You stated that you, Ms. Lively, and Ms. Baker verbally indicated something to the effect of whoa, whoa, whoa when Mr. Heath was opening the door; is that right?

A   Yes.

Q   And did you, Ms. Lively, Ms. Baker give a loud verbal indication that the trailer was occupied at that point in time?

A    I believe we were speaking loudly.

Q   So you had an understanding that Mr. Heath heard you when you said something to the effect of whoa, whoa, whoa as he was entering her private hair and makeup trailer?

MS. GAROFALO:  Sorry.  Objection.

THE DEPONENT:  Yes.

BY MS. BENDER:

Q   And did Mr. Heath nevertheless open the door to the hair and makeup trailer?

A   Yes.

Q   Now, at this point in time, where was Ms. Lively situated in the hair and makeup trailer?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 56

A    She was towards the far right of the trailer, standing.

Q    And which direction was Ms. Lively facing when she was standing in the trailer?

A    I don't recall.

Q    Do you recall what Ms. Lively was wearing at that moment in the trailer?

A    Either nothing or a nude thong.

Q    Ms. Lively's breasts were exposed in that moment?

A    Yes.

Q    And Ms. Lively was generally undressed and unclothed?

A    Yes.

Q    And was that one of the reasons why you and Ms. Carroll and Ms. Lively indicated that Mr. Heath should not enter the trailer at that point in time?

A    Yes.

Q    And would you have expected Mr. Heath to heed that request?

MS. GAROFALO:  Objection.

MR. ROBINSON:  Objection to form.

THE DEPONENT:  I don't know why he would have come up.

///

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 57

BY MS. BENDER:

Q   Mr. Heath walked into Ms. Lively's hair and makeup trailer while she was unclothed without knocking, without permission; correct?

A   Yes.

Q   And that was after you and others loudly tried to stop Mr. Heath from entering the trailer?

MS. GAROFALO:  Objection.

THE DEPONENT:  We verbally said "Whoa, whoa, whoa," you know.  Yes.

BY MS. BENDER:

Q   Don't come in?

A   Yeah, I don't remember saying "Don't come in," but we were like, "Whoa, whoa, whoa.  Just a minute" warning him.

Q   And at that point Mr. Heath stayed; is that right?

A   Yes.

Q   And where was Mr. Heath standing for the remainder of his time at the trailer?

A   I am not completely -- my back was to him, so he was behind me.

Q   And was your back to Mr. Heath because you were standing with a cloth to cover Ms. Lively for modesty?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 59

trailer for entering without permission?

A    I don't remember that.

Q    Do you recall why Mr. Heath was at the trailer?

MS. GAROFALO:  Objection.

THE DEPONENT:  I don't.

BY MS. BENDER:

Q    And you believe it was unclear to Mr. Heath at that point in time that Ms. Lively was in a state of undress?

MR. ROBINSON:  Objection to form.

MS. GAROFALO:  Join.

THE DEPONENT:  Can you ask that again. Sorry.

BY MS. BENDER:

Q    Do you believe that it was clear during the course of the interaction between Mr. Heath and Ms. Lively that Ms. Lively was in a state of undress?

MS. GAROFALO:  Objection.

THE DEPONENT:  Yes.

BY MS. BENDER:

Q    And from your perspective do you think that would have been clear to Mr. Heath himself?

A    Yes, once he stepped up into the trailer.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 60

Q   But nevertheless, at that point he stayed in the trailer?

A   Yes.

Q   Given your understanding of where Ms. Lively and Mr. Heath were in the trailer, if Mr. Heath had looked into the mirror, would he have seen Ms. Lively's breasts exposed?

MS. GAROFALO:  Objection.

THE DEPONENT:  You can see the room when you look -- you can see into different parts of the room through reflection, yes.

BY MS. BENDER:

Q   And so from where Mr. Heath was standing, if Ms. Lively was facing the mirror Mr. Heath could have seen Ms. Lively's breasts exposed; is that correct?

MS. GAROFALO:  Objection.

THE DEPONENT:  He would be able to see her, yes.

BY MS. BENDER:

Q   How did this interaction between Mr. Heath and Ms. Lively in Ms. Lively's hair and makeup trailer make you feel?

A   Uncomfortable.  It was strange.

Q   You found the interaction between Mr. Heath

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 61

and Ms. Lively uncomfortable and strange?

A    I felt uncomfortable and strange.

Q    And why did you feel uncomfortable when Mr. Heath came to Ms. Lively's trailer that day?

A    I guess because we had warned him, you know, she was in a state where nobody else should have seen her in that way.  And he stayed.  So it was a strange interaction.

Q    And you testified as well that that interaction made you feel strange?

A    Yeah.  Uncomfortable and strange.

Q    Had you ever seen that type of conduct from a producer on a film set before?

A    I have not.

Q    And would you expect to have seen that type of conduct previously?

MS. GAROFALO:  Objection.

THE DEPONENT:  It's not my experience that that has ever happened on any of the sets I've worked on before.

BY MS. BENDER:

Q    Did you view that conduct by Mr. Heath as inappropriate?

MS. GAROFALO:  Objection.

THE DEPONENT:  Yes, I do.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 245

I, the undersigned, a Certified Shorthand Reporter of the State of California, Registered Professional Reporter, Certified Live Note Reporter, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [  ] was [  ] was not requested. I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: September 26, 2025

_____

RENEE A. PACHECO

CSR No. 11564 RPR, CLR