# EXHIBIT 31

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---


BLAKE LIVELY,

Plaintiff,

vs.          CASE NO. 24-CV-10049-LJL  (LEAD CASE)

25-CV-449 (LJL)  (MEMBER CASE)


WAYFARER STUDIOS LLC, ET AL.


Defendants.

_____

JENNIFER ABEL,

Third-party Plaintiff,

vs.

JONESWORKS, LLC,

Third-party Defendant.

_____

WAYFARER STUDIOS LLC, et al.

Consolidated Plaintiffs,

vs.

BLAKE LIVELY, et al.

Consolidated Defendants.

_____

**CONFIDENTIAL**


VIDEO-RECORDED DEPOSITION OF VIVIAN BAKER

Los Angeles, California

Friday, September 12, 2025


Stenographically Reported by:  Ashley Soevyn,

CALIFORNIA CSR No. 12019

CONFIDENTIAL

Page 71

BY MS. BENDER:

Q    And when -- in a case when someone knocks but then proceeds to enter, and you say, "Don't come in," did people typically heed that request and not enter?

A    Oh, yeah --

MR. KALTGRAD:  Objection.

THE WITNESS:  -- absolutely.

BY MS. BENDER:

Q    That would -- is that something that you would expect people to do on set?

A    That's -- I've never seen it in any other way in my many years.

Q    Do you recall Mr. Heath ever entering Ms. Lively's hair and makeup trailer?

A    Yes, I do.

Q    And do you recall whether he did so with permission to enter?

MR. KALTGRAD:  Objection.

THE WITNESS:  I -- could you reask the question, or . . . ?

BY MS. BENDER:

Q    Sure.

Do you recall whether there was ever an instance when Mr. Heath entered Ms. Lively's hair

CONFIDENTIAL

Page 72

and makeup trailer without invitation?

MR. KALTGRAD:  Objection.

THE WITNESS:  Yes.  There was a time that he came to enter, and we all -- there were -- myself and Anne.  And Blake was like, "No, I'm not dressed. No, no, no.  Don't come in."

BY MS. BENDER:

Q    And I would like to discuss this situation in a little bit more detail.

A    Mm-hmm.

Q    So from your recollection, did Ms. Lively say Mr. Heath is -- is coming over to discuss something?

A    Oh, no, no, no.

Q    And do you recall whether there was a knock on the door by Mr. Heath?

A    You know, my memory is vague.  I -- I -- I think there was a knock.  The -- what I remember most specifically is all three of us.  So there must have been a knock, saying, "No, don't come in," and, "No, don't come in."  It was quite loud.  So that they wouldn't come in.

It was myself, Anne, and all Blake saying it at the same time.

Q    Ms. Lively, yourself, and Ms. Carroll all

CONFIDENTIAL

Page 74

clean her up.  So there wasn't a state -- I mean, I think we were -- as -- as I said, we're always very cognizant of how much -- you know, get people off the clock so that they can get a turnaround.  So we were just busily working.  So I would have been to her right but facing her.  And I believe Anne would have been to her left, facing at her.

Q   Okay.  And so at this point in time, Ms. Lively is wearing underwear but no other clothing?

A   That's correct.

Q   Okay.  And so her breasts were exposed?

A   Absolutely.

Q   And was -- where -- where was Ms. Lively facing?  Was she facing the door?  Was she facing mirror?  Or somewhere else?

A   She was facing the mirror.

Q   Okay.  And what -- she was standing?

A   No.  She was seated.

Q   She was seated.  Okay.

At this point in time, did you have an understanding of who entered trailer?

A   After they opened the door, we all saw that it was Jamey.  And there was a -- and Blake said -- I don't remember exactly what he said, but I

CONFIDENTIAL

Page 77

to face any given direction during the course of their conversation?

A   I -- I don't know that I recall that.  It was an uncomfortable situation.  And I focused on what I needed to do to help get her in a state of -- that she can leave -- finish up my job.

Q   And so were you attempting to work quickly?

A   Yes.

Q   Do you recall what direction Mr. Heath was, in fact, facing?  Or at that point, were you just more focused on your work?

A   No, I was aware.  He was facing -- if you -- if you -- the door opens out.  And so the door would be partly behind him, and he would be able to look at her through the mirror.

Q   And do you recall whether Mr. Heath, in fact, looked at Ms. Lively through the mirror?

A   I -- yes.  I remember him engaging in a conversation, the conversation he wanted to have, in that manner, yes.

Q   Okay.  Could Mr. Heath see Ms. Lively topless if he looked in the mirror?

A   Yes.

Q   And it's your testimony that Mr. Heath

CONFIDENTIAL

Page 78

was, in fact, looking in the mirror?

A   He was looking in the mirror.

Q   Do you know whether the conversation between Mr. Heath and Ms. Lively was conditioned on him not looking at Ms. Lively?

A   I don't understand the question.  Can you . . . .

Q   Do you know either way whether Ms. Lively said she would engage in a conversation with Mr. Heath if he turned around?

A   I don't.  I don't have a memory of that.

Q   Do you recall whether Ms. Lively asked Mr. Heath not to look at her?

A   I -- I have -- I definitely have a memory of things similar but not specific at that point. It was a -- like I said, it was an uncomfortable situation.

Q   Uncomfortable for -- for him?

A   Well, I was uncomfortable.  In that -- I mean, I'm -- yes.

Q   Had you ever witnessed this type of interaction play out on any of the prior film sets on which you've worked?

MS. GAROFALO:  Objection.

THE WITNESS:  No, I have not.  I've never

CONFIDENTIAL

Page 81

handled.  You know what I mean?  Like, we were -- let's -- let's get this -- there was no reaction, so to speak, of -- you know, no reaction.  It was just like let's get this handled so we can get out of this uncomfortable situation, is what my memory recall is we did.

Q   And do you recall after the fact discussing the encounter with Ms. Lively or Ms. Carroll?

A   After he left, wasn't much of a discussion, but it was certainly a -- you know, eyes open, mouth dropped.  I think I said, "I've never seen anyone do that before."  Anne may have agreed with me.  I think that we were all really just in a state of shock.  We just finished our work and let Blake get out of there.  But there was not a discussion, per se.

Q   Did you perceive the interaction with Mr. Heath that we just discussed in Ms. Lively's trailer to cross any boundaries?

A   Of course.

Q   And did it cross a boundary that you had not observed on other film sets?

A   Yes.

Q   Do you recall any other times that

CONFIDENTIAL

Page 154

Ms. Lively was breastfeeding, correct?

MS. BENDER:  Object.

THE WITNESS:  That's correct.

BY MS. GAROFALO:

Q    And I surely wouldn't know whether or not she was breastfeeding on that occasion clothed or with her breast exposed, correct?

A    Correct.

Q    Okay.  And I think you told us that Mr. Heath knocked and opened the door; that was immediately after the knock; is that right?

A    Best of my recollection, and -- yes.  And we had -- before the door was opened, we were screaming, "Don't come in."

Q    Okay.  And when you say "we were screaming," who was screaming?

A    Myself, Blake, and Anne.

Q    Okay.  And do you know whether Mr. Heath heard you through the door?

A    Well, I think that's why we were talking very loudly.  It's something that we do a lot.

Q    You do that a lot to stop people from coming in?

A    Yes.

Q    Okay.  And did Mr. Heath -- strike that.

CONFIDENTIAL

Page 213

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Dated this 13th day of September, 2025.

ASHLEY SOEVYN

CSR No. 12019