UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

BLAKE LIVELY,

                          Plaintiff,

       -v-

WAYFARER STUDIOS LLC, et al.,

                 Defendants.

-------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:__4/23/2026__

24-cv-10049 (LJL)

<u>MEMORANDUM AND
ORDER</u>

LEWIS J. LIMAN, United States District Judge:

Defendant The Agency Group PR LLC ("TAG") renews its motion for summary judgment as to the only claim remaining against it, aiding and abetting retaliation in violation of California's Fair Employment and Housing Act ("FEHA"), Dkt. No. 1284, following the Court's Opinion and Order of April 2, 2026 (the "Opinion and Order"), Dkt. No. 1273, which denied TAG's initial motion for summary judgment with respect to this issue without prejudice, *id.* at 139–40.  Plaintiff Blake Lively ("Lively") has field a memorandum of law in opposition to the motion, Dkt. No. 1360, and TAG has moved for leave to file a reply brief, Dkt. No. 1371.[1]

  For the following reasons, the motion for summary judgment is denied.

## BACKGROUND

The Court presumes familiarity with the issues and facts in this case as outlined in the Court's prior Opinion and Order.  *See generally* Dkt. No. 1273; *Lively v. Wayfarer Studios LLC*, 2026 WL 905447 (S.D.N.Y. Apr. 2, 2026).

---

[1] The Court grants the motion for leave to file a reply brief and will consider the proposed brief in connection with this Memorandum and Order.

In brief, Lively alleges that she was sexually harassed on the set of the film *It Ends With Us* (the "Film"), and that Wayfarer Studios LLC ("Wayfarer") and It Ends With Us Movie LLC ("IEWUM"), two entities responsible for producing the Film, retaliated against her for complaining about that harassment by launching a coordinated smear campaign to destroy her reputation. Dkt. No. 1273 at 2–4. Lively alleges that Wayfarer and IEWUM hired TAG, a crisis-communications firm, to assist them with the smear campaign. *Id.* at 4. Specifically, she contends that TAG and its founder, Melissa Nathan ("Nathan"), planted false narratives online and in traditional media outlets portraying Lively as, among other things, a "bully" and a "mean girl," and that they worked with others, including crisis-communications specialist Jed Wallace and his firm Street Relations, to amplify negative content about Lively online in an attempt to "bury" her for engaging in protected activity. *Id.* at 4, 93–94, 117–28.

On November 12, 2025, Wayfarer, IEWUM, TAG, Nathan, and their co-defendants Justin Baldoni, Jamey Heath, Steve Sarowitz, and Jennifer Abel ("Abel") (collectively, the "Wayfarer Parties"), moved for summary judgment on all claims. Dkt. No. 952. The Wayfarer Parties also filed a motion for judgment on the pleadings. Dkt. No. 810.

In its Opinion and Order addressing these motions, the Court denied Wayfarer and IEWUM's motion for summary judgment with respect to Lively's retaliation claim under FEHA, finding that there existed genuine issues of material fact with respect to whether Lively engaged in a protected activity and was subjected to an adverse employment action that was substantially motivated by that activity. *Id.* at 103–36. Of particular note, the Wayfarer Parties argued in their briefing that Lively suffered no employment-related adverse action as required under FEHA because no aspect of her employment changed for the worse after she engaged in her purported protected activity. Dkt. No. 955 at 27. That is, the Wayfarer Parties asserted that because Lively

2

"was not demoted, sidelined, or paid less" following any protected activity, she suffered no "adverse employment action in any traditional sense," and she had no claim under FEHA. *Id.* (emphasis omitted); *see also* Dkt. No. 813 at 12–13 (arguing in the context of the motion for judgment on the pleadings that Lively failed to allege an adverse employment action because she "d[id] not allege that she was terminated, demoted, deprived of any benefit of her employment with IEWUM, assert any act that may have blocked or interfered with a potential employment opportunity or other any materially adverse change to the terms of her employment").

The Court rejected the Wayfarer Parties' interpretation of FEHA as unduly narrow. The Court noted that "FEHA covers not only 'employment actions that are reasonably likely to adversely and materially affect an employee's job performance' but also the employee's 'opportunity for advancement in his or her career.'" Dkt. No. 1273 at 129 (quoting *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1138 (Cal. 2005)). The Court further explained that "'[r]etaliation claims are inherently fact specific, and the impact of an employer's action in a particular case must be evaluated in context,' considering 'the unique circumstances of the affected employee as well as the workplace context of the claim.'" *Id.* (quoting *Yanowitz*, 116 P.3d at 1137). Given the particular circumstances of Lively's profession, including the industry's "heavy emphasis on personal and professional marketability," the Court found that there were triable issues "with respect to whether the Wayfarer Parties took action that impermissibly and materially altered Lively's opportunity for advancement in her career" by taking affirmative steps aimed not at undermining her credibility but at damaging her professional reputation and livelihood. *Id.* at 128–29.

At the same time, the Court granted Nathan and Abel's motion for summary judgment with respect to aiding and abetting retaliation under FEHA. *Id.* at 136–40. In doing so, the

3

Court relied on two California Supreme Court decisions, *Reno v. Baird*, 957 P.2d 1333 (Cal. 1998), and *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158 (2008), which stand for the proposition that there can be no aiding-and-abetting liability for individual non-employers acting in their capacity as agents for an employer.  *Id.* at 137–38.  "Aiding and abetting liability instead applies to third parties such as customers or suppliers who 'induce or coerce' conduct prohibited under FEHA."  *Id.* at 138 (quoting *Reno*, 957 P.2d at 1342).  This limitation under FEHA on aiding-and-abetting liability exists because "FEHA only covers employers with five or more employees, and it would be 'inconceivable' that small employers were shielded from FEHA claims while individual supervisors were not."  *Id.* at 137 (quoting *Reno*, 957 P.2d at 1339–40).  Furthermore, "[t]he concept of aiding and abetting involves two separate persons, one helping the other," and because a "corporation can act only through its individual employees," it would be odd to say "that an employee who exercises delegated personnel management authority is 'aiding and abetting' his or her employer in managing personnel."  *Reno*, 957 P.2d at 1342–43. The Court held that because Nathan and Abel were hired by Wayfarer and IEWUM to perform services on their behalf as their agents and were for all intents and purposes individual employees carrying out alleged adverse employment actions at the direction of their employer, liability attached against the employer (Wayfarer and IEWUM) rather than the individuals (Nathan and Abel).  *Id.* at 138–39.

The Court added that while Nathan and Abel were not liable for aiding and abetting retaliation under FEHA, a different conclusion might be warranted with respect to TAG, as the California Supreme Court has held that an "employer's business-entity agents can be held directly liable under the FEHA for employment discrimination in appropriate circumstances when the business-entity agent has at least five employees and carries out FEHA-regulated

4

activities on behalf of an employer." *Id.* at 139 (quoting *Raines v. U.S. Healthworks Med. Grp.*, 534 P.3d 40, 41 (Cal. 2023)).  Because business entities with five or more employees acting as agents for employers can be held directly liable under FEHA, the Court noted that it stood to reason that these entities might also be held indirectly liable under an aiding-and-abetting theory. *Id.* at 139.  The parties, however, had not specifically addressed the issue of business-entity liability (direct or indirect) in their briefing.  For example, neither party offered any argument or evidence regarding the number of TAG's employees.  And in *Raines*, the California Supreme Court expressly reserved decision on the applicability of aiding-and-abetting liability under FEHA to business-entity agents.  *See* 534 P.3d at 54 ("[W]e express no view of the scope of a business entity agent's possible liability under the FEHA's aider and abettor provision").  The Court therefore also reserved judgment on the question.

That brings the Court to the present motion, in which TAG renews its arguments that it cannot be held liable for aiding and abetting retaliation under FEHA.

### DISCUSSION

TAG's renewed motion for summary judgment is straightforward.  It does not turn on the intricacies or nuances of direct versus indirect liability under California law, whether TAG is a "business entity" with five or more employees, or whether Lively has provided sufficient evidence regarding the common-law elements of aiding-and-abetting liability.[2]  The motion instead contends that TAG cannot be held directly liable as a business-entity agent[3] under

---

[2] TAG indicates that it reserves its right to challenge the common-law aiding-and-abetting elements at trial.  Dkt. No. 1371-1 at 4.  This motion also does not raise issues regarding the extraterritorial reach of FEHA, which are currently *sub judice* in the form of Defendants' renewed motion for judgment on the pleadings.  Dkt. No. 1294.

[3] The term "agent" is used advisedly.  FEHA defines the term "employer" to include "any person regularly employing five or more persons, *or any person acting as an agent of an employer, directly or indirectly*."  Cal. Gov't Code § 12926(d) (emphasis added).

*Raines*, and that because California courts treat issues of direct and indirect liability similarly under FEHA, TAG also cannot be held indirectly liable as an aider and abettor.  Dkt. No. 1285 at 4.  In other words, TAG contends that direct and indirect liability under FEHA are overlapping in this context, and it disputes its direct liability, thereby disputing its indirect liability.

TAG offers one primary reason why it cannot be held directly liable under FEHA as interpreted by the California Supreme Court in *Raines*: TAG asserts that business-entity agents can only be directly liable for engaging in "FEHA-regulated activities" on behalf of an employer, and TAG's public-relations activities were not "FEHA-regulated."  *Id.* at 4–8.  The relevant language from *Raines* which TAG cites for this proposition reads: "Although the question presented in this case does not require that we go further and attempt to identify the specific scenarios in which a business-entity agent will be subject to liability under the FEHA, we recognize as a necessary minimum that, consistent with the FEHA's language and purpose, a business-entity agent can bear direct FEHA liability only when it carries out FEHA-regulated activities on behalf of an employer."  534 P.3d at 52; *see also id.* at 45 ("These indicators of legislative intent serve to confirm our conclusion that section 12926, subdivision (d) can impose direct liability on the business-entity agents of employers for their FEHA-regulated activities.").

TAG's motion must be denied.  The Court has already rejected its central premise—namely, that the activities at issue in this case necessarily fall outside FEHA's scope and are therefore unregulated by the statute.  *See* Dkt. No. 1273 at 128–34.  To recap, Wayfarer and IEWUM argued in their motions for summary judgment and judgment on the pleadings that the activities alleged by Lively were not FEHA-regulated because they did not implicate "traditional" employment actions such as hiring, firing, or altering an employee's pay.  *See, e.g.,* Dkt. No. 813 at 12–13; Dkt. No. 955 at 27.  The Court explained that FEHA is not so limited.

6

The California Supreme Court has instructed courts to analyze FEHA retaliation claims "in context" and based on the "the unique circumstances of the affected employee as well as the workplace context of the claim," "interpret[ing the statute] broadly to further [its] fundamental antidiscrimination purposes." *Yanowitz*, 116 P.3d at 1137–38.  The California Supreme Court has further indicated that FEHA "protects an employee against unlawful discrimination with respect not only to so-called 'ultimate employment actions' such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance *or opportunity for advancement in his or her career*."  *Id.* at 1138 (emphasis added); *see also Bailey v. S.F. Dist. Attorney's Off.*, 552 P.3d 433, 450 (Cal. 2024) ("[A]dverse treatment that is reasonably likely to impair an employee's job performance *or prospects for advancement in their career* falls within the reach of FEHA's antiretaliation provision." (emphasis added)).

California law therefore eschews any strict requirements of "traditional" or ultimate adverse employment actions, instead adopting a more flexible, context-specific approach— including for actions which impair only *future* employment prospects.  *See, e.g.*, *Hedgpeth v. City of Anaheim*, 2010 WL 1042725, at *10 (Cal. Ct. App. Mar. 23, 2010) (unpublished)[4] (holding that "a retaliation claim under FEHA may be maintained by a former employee" alleging that his former employer's decision to boycott his training courses and its public announcement that it would continue to do so in the future "affected his ability to retain employment as an instructor" and therefore could support a retaliation claim).  Based on this

---

[4] Federal courts "may consider unpublished California Court of Appeal decisions" as persuasive authority.  *Cap. Express Lines, Inc. v. JPMorgan Chase Bank, N.A.*, 801 F. Supp. 3d 1095, 1103 (E.D. Cal. 2025) (citing *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 681 n.12 (9th Cir. 2021)).

standard, the Court found that Lively had provided sufficient evidence at the summary-judgment stage regarding actions which might have been taken to limit her opportunities for advancement in her career.  Dkt. No. 1273 at 128–34.  The Court accordingly denied Wayfarer and IEWUM's motions with respect to Lively's claims for retaliation under FEHA.

The exact same activities which might support liability against Wayfarer and IEWUM are the ones that TAG is alleged to have engaged in.  In its Opinion and Order, the Court outlined certain conduct that "could be construed as directed not at Lively's allegations and at undermining their credibility, but as an attack on her professional reputation and livelihood."  *Id.* at 132–34.  TAG has not specifically attempted to distance itself from the activities which the Court found presented a genuine issue for trial.  Thus, to the extent Wayfarer and IEWUM might be liable under FEHA for engaging in retaliation, TAG's argument now that its participation in these very same activities was not "FEHA-regulated" lacks merit.  If the activities that form the basis of Lively's retaliation claim were not at least potentially regulated by FEHA, the Court would have granted Wayfarer and IEWUM's motions for summary judgment and judgment on the pleadings.

TAG's alternative arguments for summary judgment likewise are without merit.  For instance, TAG suggests that FEHA prohibits misconduct only by employers, not third parties. Dkt. No. 1285 at 8.  TAG states that "FEHA prohibits employers from aiding and abetting third-parties, not the other way around."  *Id.*  For support, TAG cites dicta from *Radentz v. American Association of Physician Spec., Inc.*, 2014 WL 12601013, at *7 (C.D. Cal. Aug. 18, 2014).  In that case, in the course of deciding that FEHA would not support a claim against two individuals who were officers of the defendant non-profit corporation, the court stated in passing that FEHA's aiding-and-abetting provision "is meant to prohibit employers from aiding and abetting

8

third-parties, such as customers or suppliers, not from aiding and abetting themselves." *Id.*  This statement from *Radentz* cannot bear the weight that TAG puts on it.  For one, the statement was dicta.  The court's decision was based on the conclusion that under California law, "discrimination and retaliation causes of action do not create individual liability for supervisors or other employees of the offending employer or employment agency, either directly or by an aiding and abetting theory."  *Id.*  That is, the decision turned on the proposition upon which the Court dismissed Abel and Nathan from this case, not on the proposition that only employers can aid and abet retaliation.  For another, *Radentz* cites the California Supreme Court's decision in *Reno* for support.  *Id.*  But *Reno* states that FEHA's aiding-and-abetting language "makes it unlawful, for example, *for third parties* such as customers or suppliers to induce or coerce prohibited discrimination or harassment."  957 P.2d at 1342 (emphasis added).  As such, to the extent *Radentz* could be read to say that a third party cannot be liable for aiding and abetting an employer's discrimination, that is an inaccurate statement of law.

Indeed, it makes little sense to say that FEHA's aiding-and-abetting provision is intended only to prevent employers from aiding and abetting employment discrimination committed by third parties such as customers or suppliers, rather than preventing third parties from aiding and abetting employment discrimination committed by employers.  A person is liable for aiding and abetting under FEHA if the aider and abettor knows that another's conduct violates FEHA and gives substantial assistance or encouragement to the principal to violate the statute.  *See Smith v. BP Lubricants USA Inc.*, 278 Cal. Rptr. 3d 587, 594 (Cal. Ct. App. 2021).  In other words, there must be some underlying substantive violation (employment discrimination) committed by someone else that the aider and abettor knows about and encourages or assists.  In the absence of a principal violation, there can be no aiding-and-abetting

9

liability.  *See Richard B. LeVine, Inc. v. Higashi*, 32 Cal. Rptr. 3d 244, 250 (Cal. Ct. App. 2005). But, if only employers could be liable for aiding and abetting, there would be little need for the aiding-and-abetting provision.  The employer who engages in discrimination or retaliation is already liable as a principal.  The aiding-and-abetting provision is instead most naturally read— as *Reno* expressly indicates—to prohibit third parties (who are not otherwise covered by the statute) from encouraging or assisting employment discrimination.

California cases confirm that FEHA's aiding-and-abetting provision covers non-employer third parties.  *See Smith*, 278 Cal. Rptr. 3d at 593 ("We first reject BP and Pumarol's argument that they cannot be liable under FEHA because they were never Smith's employer.  FEHA prohibits 'any person' from aiding or abetting workplace discrimination."); *see also Alch v. Superior Ct.*, 19 Cal. Rptr. 3d 29, 67–68 (Cal. Ct. App. 2004) (holding that aiding and abetting claim could be stated against non-employer talent agencies).  Acknowledging this caselaw, TAG asserts in its reply brief that even if third parties might be liable for aiding and abetting under FEHA in certain circumstances, they still must have performed some "employment-related function" on behalf of an employer.  Dkt. No. 1371-1 at 3.  As explained above, there is a triable issue here with respect to whether TAG engaged in an employment-related function on Wayfarer and IEWUM's behalf by subjecting Lively to "adverse treatment that [was] reasonably likely to impair . . . [her] prospects for advancement in [her] career."  *See Bailey*, 552 P.3d at 450.  TAG's purported employment-related-function rule therefore does little to help it in this case.

Additionally, there is reason to doubt that any such rule exists.  To the extent TAG suggests that a third party must be acting as an employer's agent by carrying out some employment-related function in order for there to be aiding-and-abetting liability, that is really just another way of arguing that the third party must be an employer.  FEHA defines "employer"

10

as including "any person acting as an agent of an employer, directly or indirectly." Cal. Gov't Code § 12926(d). Because the statute equates an employer's agents with the employer itself, requiring some sort of agency relationship for aiding-and-abetting liability would effectively cabin such liability to employers—which, as indicated above, California courts reject.

Caselaw further undermines TAG's employment-related-function rule for aiding-and-abetting liability. For one, *Reno* explains that "third parties such as customers or suppliers" may be liable for aiding and abetting substantive FEHA violations, 957 P.2d at 1342, and it is unclear how or why a customer would engage in an employment-related activity on behalf of an employer. Moreover, in addressing aiding-and-abetting liability, California courts have assumed that third parties need not engage in an employment-related activity on behalf of an employer for liability to attach. For example, in *Smith v. BP Lubricants USA Inc.*, the California Court of Appeals analyzed whether a vendor could be liable for aiding and abetting FEHA retaliation by making offensive remarks during a presentation in which the vendor promoted its own product to the employer's employees, including the plaintiff. 278 Cal. Rptr. 3d at 591–94. The court rejected the claim on the grounds that the plaintiff had failed to establish the common-law elements of aiding-and-abetting liability. *Id.* at 594. But nowhere did it suggest that because the vendor had not engaged in an employment-related activity, there could be no liability—even though it seems clear that promoting a product as an outside vendor does not constitute an "employment-related function" as TAG narrowly understands that phrase. *See* Dkt. No. 1285 at 1 (TAG arguing that there can only be liability under FEHA for "employment-related activities such as hiring, compensation and workplace standards").

Ultimately, this Court, like the California Supreme Court in *Raines*, need not express any definitive view regarding "the scope of a business entity agent's possible liability under the

11

FEHA's aider and abettor provision." 534 P.3d at 54. In this motion, TAG has argued that there can be no aiding-and-abetting liability against it because the conduct in which it engaged is not FEHA-regulated, and the Court has rejected that view.

The motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 1284 and 1371.


        SO ORDERED.

Dated: April 23, 2026
        New York, New York                          LEWIS J. LIMAN
                                              United States District Judge

12