UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

BLAKE LIVELY                                            :
                                                        :
                        Plaintiff,                      :
                                                        :
            -v-                                         :    No. 24-cv-10049-LJL
                                                        :
WAYFARER STUDIOS LLC, JUSTIN BALDONI,                   :    **DECLARATION OF**
JAMEY HEATH, STEVE SAROWITZ, IT ENDS                    :    **NICOLE ALEXANDER**
WITH US MOVIE LLC, MELISSA NATHAN,                      :
THE AGENCY GROUP PR LLC, JENNIFER ABEL,                 :
JED WALLACE, STREET RELATIONS, INC.                     :
                                                        :
                        Defendants.                     :

------------------------------------------------------------------x

I, Nicole Alexander, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I have been retained as a rebuttal expert by Defendants in this Action, in which

capacity I have submitted an expert report and been deposed by Plaintiff's counsel on two

occasions.  I respectfully submit this Declaration in opposition to Plaintiff's motion to

exclude my testimony.  This Declaration is based on my personal knowledge.

2.      Plaintiff argues that the data set underlying my "meta-analysis" appears to be

different from the full data set collected for purposes of my report.  I have investigated

the discrepancy that Plaintiff identifies and determined that there was indeed an error in

the data file used for my meta-analysis.  That data file contained numbers of social media

posts that were different from the correct data set.  To remedy the error, I corrected the

data file for the meta-analysis to ensure that it matches the overall data set and re-ran the

meta-analysis using the corrected data file.  As discussed further below, the meta-analysis continues to support my original opinions, which remain unchanged.

3.      Plaintiff also argues that my data set contains certain "duplicate" posts, primarily on YouTube.  I have identified these duplicates and removed them from my data set in order to confirm the validity of my prior analyses.

4.      These corrections to the meta-analysis data file and the duplicate posts do not alter my opinions.  Although these corrections to the data result in amendments to certain of the underlying figures (as discussed below), they do not change my overall conclusions.

5.      As before, the data shows a spike in social media activity in August 2024 that occurred in close proximity across all five social media platforms.  The uptick in activity began between August 5 and 7, depending on the platform, and the day-to-day correlation in activity across platforms remained very high throughout the month of August.  This is strong evidence that social media users on different platforms were reacting to the same external event at the same time, which is what organic virality looks like, rather than coordinated manipulation.

6.      As before, social media activity declined dramatically across every platform in September 2024, with reductions ranging between 75% and 92%, and by October 2024, activity had returned to ordinary levels.  This is consistent with the findings in my report and inconsistent with coordinated manipulation.  In addition, the temporal decay pattern continued to exhibit a smooth, exponential decline characteristic of organic attention cycles.

7.      As before, there were spikes in social media activity in December 2024 and October 2025, corresponding with the lawsuit filings and ongoing media coverage of the litigation.  As explained in my report, this is consistent with organic attention to newsworthy events and inconsistent with coordinated manipulation.

8.      As before, the hourly and day-of-week activity patterns were consistent with organic human behavior rather than bot activity, and posting activity was widely dispersed across user accounts.  In addition, on Twitter/X, the top ten accounts were responsible for under 5% of the posts; five of the top ten accounts were major news and entertainment outlets (The Hollywood Reporter, Rolling Stone, Daily Mail, TODAY Show, and Fandango); the typical account was approximately nine years old; and only about 3% of accounts were less than six months old.  This data is inconsistent with coordinated manipulation campaigns, which are driven by anonymous or newly created amplifier accounts.

9.      In my report, I observed that the "peak" of activity across all five platforms occurred within a 48-72 hour window in August 2024.  Based on the corrected data, it appears that although the platforms began to spike at the same time (as noted above), they "peaked" at different times (Reddit on August 8, TikTok on August 9, Twitter on August 14, and YouTube on August 16).  This is a normal organic pattern and does not serve as evidence of coordinated manipulation.  It takes longer to make a YouTube video than to post a tweet, and as a result, a slight lag in YouTube activity is unsurprising.

10.      In my report, I observed that the proportion of social media activity across platforms during August 2024 closely matched the baseline proportions in the prior

period.  The corrected data no longer reflects this strong proportional consistency across time periods.  Instead, Twitter's share of activity declined relative to baseline proportions, while YouTube's share rose.    This change does not serve as evidence of coordinated manipulation or otherwise affect my conclusions.  Twitter and YouTube are platforms with different content cycles, and it is not surprising that YouTube comments would accumulate naturally over a longer period than tweets.  In addition, as noted above, the remaining cross-platform findings remain unaffected and further confirm that this change is immaterial to the ultimate conclusion.

11.     Based on the corrected data, I can no longer verify that the post-versus-repost lag identified in my original report (8-30 minutes) remains accurate.  However, this was merely one of many factors that previously weighed in support of my opinions.  Its removal is immaterial and does not affect my ultimate conclusions.

12.     The removal of duplicates from my data set has no effect on my sentiment analysis.  I compared the original and de-duplicated versions of the data set to determine whether there was any difference in the aggregate sentiment distribution.  The comparison was conducted using VADER v.3.3.2a, which is a standard, publicly available sentiment classifier installed in Python and regularly used in business and academia.  The removal of duplicates shifted the distribution of sentiment by less than one percentage point for any category (positive, negative, or neutral).  For August 2024, the positive/negative/neutral distribution shifted by approximately 0.2 percentage points.  As a result, the presence of duplicates in my original data set was immaterial to the outcome.

13.    I understand that Plaintiff claims that a bar chart related to my sentiment analysis displays numbers of social media posts for January through May 2024 that are inconsistent with the figures in my data set.  There does appear to be such an error in Figure B-7, but that error affected only the chart.  It did not affect the underlying sentiment analysis, which made use of the correct data set.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date:  New York, New York
       April 24, 2026

_____
Nicole Alexander

5