**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BLAKE LIVELY,

                Plaintiff,

-v-

WAYFARER STUDIOS LLC, JUSTIN
BALDONI, JAMEY HEATH, STEVE
SAROWITZ, IT ENDS WITH US MOVIE LLC,
MELISSA NATHAN, THE AGENCY GROUP PR
LLC, JENNIFER ABEL, JED WALLACE, and
STREET RELATIONS INC.,

                Defendants.

No. 1:24-cv-10049-LJL

---

**MEMORANDUM OF LAW IN OPPOSITION TO**
**LIVELY'S MOTION TO EXCLUDE THE TESTIMONY OF**
**DEFENSE REBUTTAL EXPERT ANN FROMHOLZ**

492555.5

**TABLE OF CONTENTS**

<u>Page</u>

I.     INTRODUCTION ................................................................................................ 5

II.    BACKGROUND ................................................................................................ 6

III.  TO THE EXTENT ROBBINS' DUTY TO INVESTIGATE AND ENTERTAINMENT-INDUSTRY PROTOCOL OPINIONS ARE RELEVANT TO THE REMAINING CLAIMS, FROMHOLZ SHOULD BE PERMITTED TO REBUT THEM ........................ 8

IV.  FROMHOLZ SHOULD BE PERMITTED TO REBUT ROBBINS' LEGAL OPINIONS ..............................................................................................................11

V.   LIVELY'S ARGUMENT THAT FROMHOLZ'S OPINIONS ARE "WRONG" GOES TO THE WEIGHT, NOT THE ADMISSIBILITY, OF HER TESTIMONY AND IN ANY EVENT IS UNFOUNDED ........................................................................... 13

     A.   Fromholz's First Two Opinions Are Not "Wrong" ................................ 14

     B.   Fromholz's Third Opinion Concerning Entertainment-Industry Protocols Is Not "Wrong" ..................................................................................... 18

VI.  FROMHOLZ IS QUALIFIED TO REBUT ROBBINS' OPINIONS ABOUT ENTERTAINMENT INDUSTRY PROTOCOLS AND REPUTATION INJURY IN THAT INDUSTRY ....................................................................................................... 19

VII. CONCLUSION .............................................................................................. 20

492555.5

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
754 F. Supp. 3d 456 (S.D.N.Y. 2024)........................................................................................12

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)......................................................................................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)...................................................................................................................13

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)...................................................................................................................15

*Faulkner v. Arista Records LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014).........................................................................................17

*Glencore Ltd. v. Louis Dreyfus Company B.V.*,
No. 1:23-CV-11125 (ALC), 2026 WL 880262 (S.D.N.Y. Mar. 31, 2026) ..............................14

*Golden Unicorn Enterprises, Inc. v. Audible, Inc.*,
682 F. Supp. 3d 368 (S.D.N.Y. 2023).....................................................................................5, 9

*Hardage v. CBS Broad., Inc.*,
436 F.3d 1050 (9th Cir. 2006) ..................................................................................................14

*Koalta v. Regents of Univ. of California*,
115 Cal. App. 4th 283 (2004) .....................................................................................................9

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)...................................................................................................................19

*M.F. v. Pac. Pearl Hotel Mgmt. LLC*,
16 Cal. App. 5th 693 (2017) .....................................................................................................10

*Mendoza v. Western Medical Center Santa Ana*,
222 Cal. App. 4th 1334 (2014) ..............................................................................................9, 10

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994).........................................................................................................13

*Rekor Sys., Inc. v. Loughlin*,
No. 19-CV-7767 (LJL), 2022 WL 2063857 (S.D.N.Y. June 8, 2022) ...............................12, 13

492555.5

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)..................................................................................14

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................12

*Stagl v. Delta Air Lines, Inc.*,
    117 F.3d 76 (2d Cir. 1997)....................................................................................20

*Swenson v. Potter*,
    271 F.3d 1184 (9th Cir. 2001) ..............................................................................10

*Tritchler v. Cty. of Lake*,
    358 F.3d 1150 (9th Cir. 2004) ..............................................................................14

*United States v. L.E. Cooke Co.*,
    991 F.2d 336 (6th Cir. 1993) ................................................................................14

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal. 4th 1028 (2008) ........................................................................................10

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With
    Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*,
    2021 WL 1405185 (S.D.N.Y. Apr. 14, 2021)......................................................12

**Statutes**

Cal. Gov't Code § 12920 .............................................................................................15

**Other Authorities**

Fed. R. Civ. Proc. 26(b)(2)(D)(ii) ...............................................................................12

Fed. R. Evid. 702 .........................................................................................................13

492555.5

## I.    INTRODUCTION

Blake Lively moves to exclude Defendants' rebuttal expert Ann Fromholz for many of the same reasons Defendants move to exclude Robbins, including lack of relevance, improper legal opinion, and lack of qualifications.  In doing so, Lively conveniently ignores that the same principles should apply to Robbins, resulting in the exclusion of his testimony as well as Fromholz's.  If the Court grants Defendants' motion to exclude the testimony of Blake Lively's workplace investigation expert Michael Robbins (Dkt. No. 1321), it need not read any further. *Golden Unicorn Enterprises, Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 381 (S.D.N.Y. 2023) ("In light of the Court's preclusion of [plaintiff's expert's] testimony, therefore, [defendant's rebuttal expert's testimony] must also be excluded as irrelevant.").  On the other hand, if the Court allows Robbins to testify, Defendants' expert Ann Fromholz should be permitted to provide rebuttal testimony.

First, Lively argues that Fromholz's opinions are "untethered from the remaining claims in the case."  Dkt. No. 1337 at 1.  Indeed, the testimony of workplace investigation experts is relevant and admissible, if at all, only with respect to a claim for failing to investigate, prevent, and remedy harassment and retaliation in violation of FEHA.  This claim was dismissed as were all Lively's claims for harassment.  The workplace investigation testimony of Robbins and Fromholz is not relevant to the remaining retaliation claim because the duty to conduct an investigation is triggered only by notice to the employer of the alleged misconduct and the scope of the investigation is determined by, and limited to, the misconduct complaints that were made. Lively claims only that she made harassment allegations to Wayfarer – not complaints about a retaliatory "smear" campaign.  Similarly, Robbins' opinion that Wayfarer failed to implement entertainment-industry protocols to "prevent harassment" is irrelevant to the remaining claims.

492555.5

Second, Lively says that some of Fromholz's opinions are improper legal conclusions. To the extent that Fromholz's opinions crossed the line, it is only because she followed Robbins across that line to rebut his legal conclusion that Wayfarer had a duty to conduct an investigation into Lively's claims. The subject of workplace investigation experts is typically confined to whether the investigation that was conducted was consistent with industry standards. Lively's criticism of Fromholz's rebuttal ignores the problems with Robbins' own legal-duty opinion.

Third, Lively claims that Fromholz's conclusions are "wrong," pointing to alleged inconsistencies and alleged failures to consider certain evidence. These arguments go to the weight, not the admissibility, of the testimony and are more properly the subject of cross-examination.

Finally, Lively argues Fromholz is unqualified to testify on entertainment-industry intimacy protocols (Robbins' second opinion) and reputational harm that may be suffered by actors (Robbins' third opinion) because she never "worked on a film set" or "negotiated a nudity rider." Dkt. No. 1337 at 2. Robbins' work for studios decades ago hardly qualifies him any more than Fromholz to opine on nudity riders and intimacy coordinators – concepts that he admits were developed only in the past few years. Nor is he any more qualified to address reputational damages in the entertainment industry (or otherwise) than Fromholz is.

## II.    BACKGROUND

Fromholz is an employment law attorney with over thirty-one years of experience who founded The Fromholz Firm in 2015, where approximately 50 to 60 percent of her practice consists of workplace investigations. Declaration of Esra A. Hudson in Support of Blake Lively's Motion to Exclude Testimony of Ann Fromholz ("Hudson Decl.") Ex. 3 (Fromholz Rpt.) at 1; Declaration of Ellyn S. Garofalo ("Garofalo Decl.") Ex. A (Fromholz Dep.) at 47:16–

6

20; 48:4–8; 49: 6–8.  She has conducted an estimated 200 or more workplace investigations since approximately 1998 into allegations of harassment, discrimination, retaliation, bullying, and other workplace misconduct, personally conducting 75 to 80 percent of them.  Hudson Decl. Ex. 3 (Fromholz Rpt.) at 2; Garofalo Decl. Ex. A (Fromholz Dep.) at 50:6–15, 51:24–52:5.  Of those investigations, approximately 10 to 15 have been for entertainment-industry clients, including most recently for Warner Bros., where she investigated allegations of harassment, retaliation, and hostile work environment raised by an actress against a television show's creator, director, and actor on a TV set.  Garofalo Decl. Ex. A (Fromholz Dep.) at 70:18–22, 71:3–10, 71:22–72:17, 72:22–73:4, 73:8–15.  She has testified as an expert witness in approximately twenty cases. Hudson Decl. Ex. 3 (Fromholz Rpt.) at 1.

Fromholz's "first opinion" rebuts Robbins' opinion that Wayfarer failed in its obligation to conduct an investigation into "harassment and retaliation allegations raised by Plaintiff Blake Lively" during the filming of *It Ends With Us*.  Hudson Decl. Ex. 1 (Robbins Rpt.) at 1.  She opines that because Wayfarer took immediate action to correct and *prevent* conduct that Lively complained about, an investigation would have been superfluous.  Hudson Decl. Ex. 3 (Fromholz Rpt.) at 2.  Wayfarer adopted the Protections Letter[1] Lively proposed and there was no further unwanted conduct in the second phase of production.  *Id*. at 6-7.

Fromholz's "second opinion" also rebuts Robbins' failure to investigate opinion with her opinion that even if Wayfarer had investigated Lively's complaints, the preponderance of the evidence standard would have led to a finding that most of the alleged conduct did not occur, at

---

[1] "Protections Letter" refers to the document titled "Protections for Return to Production," which was sent on November 9, 2023, by Lively's attorneys to Meziane, Wayfarer's in-house counsel, in anticipation of returning to set after the conclusion of the Writers Guild of America and SAG-AFTRA strikes.  See Dkt. No. 1273 at 103.

least in the form Lively alleged. *Id*. at 7. Fromholz explains that the standard workplace investigators apply is whether a preponderance of the evidence supports a finding that the alleged misconduct occurred or did not occur. *Id*. Fromholz describes and reviews the alleged harassment incidents as well as Lively's understanding of the original intent to make a "sexy" R-rated film in reaching her conclusion that the incidents did not occur as Lively alleges. *Id.* at 6–8.

In her "third opinion," Fromholz responds to Robbins' opinion that Wayfarer violated entertainment-industry protocols which are "designed to prevent harassment from occurring." Hudson Decl. Ex. 1 (Robbins Rpt.) at 2; Ex. 3 (Fromholz Rpt.) at 9. Fromholz opines that Robbins erred in his conclusion regarding "Entertainment Industry-specific intimacy protocols" because there was no nudity or simulated sex during Phase 1 of production and his opinions ignore the intimacy coordinator's testimony and the SAG-AFTRA guidelines. Hudson Decl. Ex. 3 (Fromholz Rpt.) at 9.

Finally, in her "fourth opinion," Fromholz opines that Robbins incorrectly concluded that reputational damage is unique to the entertainment industry. *Id*. at 9-10. She points out that Robbins ignores the numerous other industries in which people develop work opportunities based on reputation, including lawyers, expert witnesses and investigators, doctors, architects and others. *Id*.

III.    **TO THE EXTENT ROBBINS' DUTY TO INVESTIGATE AND ENTERTAINMENT-INDUSTRY PROTOCOL OPINIONS ARE RELEVANT TO THE REMAINING CLAIMS, FROMHOLZ SHOULD BE PERMITTED TO REBUT THEM**

Because the Court dismissed the only claim to which Robbins' testimony and Fromholz's rebuttal might have been relevant (the Sixth Count for failure to investigate, prevent and remedy harassment and retaliation in violation of FEHA), Robbins' first two opinions and Fromholz's

rebuttal to them are thus "irrelevant, unreliable, and will not assist the trier of fact." *Golden Unicorn Enterprises, Inc.*, 682 F. Supp. 3d at 380; Dkt. No. 1273.

Lively argues that Fromholz's rebuttal to Robbins' opinion that Wayfarer should have conducted an investigation into Lively's misconduct claims is irrelevant but argues Robbins' opinion remains relevant. Lively claims Robbins' opinion is relevant to her FEHA retaliation claim – but Fromholz's opinion is not. Lively's flawed logic is as follows. Lively contends Fromholz's opinion is irrelevant because it "addresses only Ms. Lively's complaints made during production, while ignoring anything that followed, including the retaliation campaign." Dkt. No. 1337 at 6-7. By contrast, Lively says that Robbins' opinion is relevant to the retaliation claim because "Robbins opines on the failure to follow practices and policies to ***prevent harassment and retaliation*.**" *Id*. at 7 (emphasis added). But, as is evident from Lively's own words, Robbins' opinions were relevant only to the claim for failure to ***prevent*** harassment and retaliation, which was dismissed. The alleged duty to investigate that Robbins purports to opine about is not an element of the remaining claims for retaliation. Lively suggests that the fact that an investigation was not conducted may be relevant for some other purpose. That no investigation was conducted is undisputed. Lively fails to explain why Robbins' testimony would be permitted just to make this undisputed point and Lively's own case law clearly says that he cannot. *Koalta v. Regents of Univ. of California*, 115 Cal. App. 4th 283, 291 (2004) (holding that it is improper for an expert to testify that the failure to investigate plaintiff's concerns demonstrates "evidence of retaliation in this case" because it "improperly invaded the province of the jury.")[2]

---

[2] Plaintiff's reliance upon *Mendoza v. Western Medical Center Santa Ana*, 222 Cal. App. 4th 1334 (2014) is misplaced. The issue was not whether the expert's testimony was admissible. Nor did the expert testify about the lack of any investigation. *Id*. at 1344–45. The court held the

With respect to Wayfarer's alleged failure to investigate, Robbins' report and his opinion, consistent with Fromholz's rebuttal, addressed only the reports of misconduct that Lively made during production. Hudson Decl. Ex. 1 (Robbins Rpt.) at 11–20. The reason for that is obvious: those are the only complaints Lively made to Wayfarer (before she filed her lawsuit) and therefore the only complaints that could have been subject to an investigation. Garofalo Decl. Ex. B (Robbins Dep.) at 40:20–41:4. Consistent with the law, Robbins testified the duty to investigate is triggered only when the plaintiff makes allegations of harassment or retaliation such that the defendant has "notice." Garofalo Decl. Ex. B (Robbins Dep.) at 203:20–204:1; *M.F. v. Pac. Pearl Hotel Mgmt. LLC*, 16 Cal. App. 5th 693, 701 (2017) ("Once an employer is informed of the sexual harassment, the employer must take adequate remedial measures"); *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1047 (2008) (an employee must put his employer on notice as to what conduct it should investigate and, thus, "vague and conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct"). Once a complaint has been made an investigation is conducted to "determine whether the complaint is justified." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001). Thus, the subject of the investigation is confined to misconduct alleged by the complainant. Lively did not make a complaint to Wayfarer (before she filed her lawsuit) about the alleged "smear campaign," which might have triggered an investigation, and Robbins does not say that she did. The alleged "smear campaign," after all, did not begin according to Lively until August 2024 (Hudson Decl. Ex. 1 (Robbins Rpt.) at 21), months after pre-production, production, and editing had concluded. When the alleged "smear campaign" began,

---

jury's verdict finding the employee was wrongfully terminated was supported in part by the expert's testimony that the investigation was inadequate because the jury could have concluded the employer did not care about the truth. *Id.*

the parties no longer had a work relationship and there would have been no reason to report or to conduct an investigation – because the purpose of investigating is to address the parties' ongoing working relationship.[3]

Robbins' second opinion is that Wayfarer violated "Entertainment Industry-specific intimacy protocols," which are "designed to ***prevent harassment*** from occurring and to ensure a safe environment for all involved."  Hudson Decl. Ex. 1 (Robbins Rpt.) at 2.  This opinion was relevant only to the Sixth Count for failure to prevent harassment.  With this second opinion, there is not even the pretense that those protocols would prevent retaliation – only harassment, which Lively agrees is no longer relevant.  Thus, Fromholz's rebuttal opinion that Robbins erred in his conclusion that Wayfarer violated the entertainment industry protocols is also irrelevant.

## IV.     FROMHOLZ SHOULD BE PERMITTED TO REBUT ROBBINS' LEGAL OPINIONS

Lively also argues that Fromholz's first and second rebuttal opinions are improper legal conclusions.  But Fromholz merely responds to Robbins' legal opinion that Wayfarer had a duty to investigate, which was triggered by Lively's misconduct allegations.  Hudson Decl. Ex. 1 (Robbins Rpt.) at 20; Ex. 3 (Robbins Dep.) at 259:12–261:20.  The crux of Fromholz's first two opinions are that an investigation was unnecessary: (a) because the purpose of a workplace investigation is to address the misconduct alleged and that result was achieved, any investigation would have been superfluous; and (b) if a workplace investigation had been conducted into

---

[3] In addition to the "smear campaign," Robbins describes two other instances which he describes as "retaliation": (1) Justin Baldoni responded to Lively "in a 'huffy' manner" (Hudson Decl. Ex. 1 (Robbins Rpt.) at 20 n.55); (2) Baldoni and Jamey Heath remarked to Colleen Hoover that Lively was exhibiting "narcissistic behavior" (*id*. at 20).  The Court concluded these incidents are too "minor" or "trivial" to qualify as actionable under FEHA.  Dkt. No. 1273 at 117 n. 28.  Moreover, Robbins does not claim Lively reported either of these 'events' to Wayfarer.  Hudson Decl. Ex. 1 (Robbins Rpt.) at 20; Garofalo Decl. Ex. B (Robbins Dep.) at 259:12–261:20.

11

492555.5

Lively's allegations of misconduct she would have applied the preponderance of evidence standard and, reviewing the evidence, she would have reached the conclusion that the evidence did not support Lively's allegations. To the extent that Robbins' opinions are based on his knowledge and experience as a workplace investigator, Fromholz's are as well, and she must be permitted to offer those rebuttal opinions. *See Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 467 (S.D.N.Y. 2024) ("If Plaintiffs' expert testimony is helpful to the trier of fact, then [the] rebuttal of that testimony would also be helpful.").

Lively also suggests that Fromholz's first two opinions are "new arguments," implying they are not true rebuttal opinions but should have been made in a principal affirmative report. However, "[r]ebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Scott v. Chipotle Mexican Grill, Inc*., 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008)). A rebuttal report contradicts or rebuts "evidence on the same subject matter" as the other party's expert report. Fed. R. Civ. P. 26(b)(2)(D)(ii). The term "same subject matter" is not narrowly construed. *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, 2021 WL 1405185, at *2 (S.D.N.Y. Apr. 14, 2021). Lively's citation to *Rekor Sys., Inc. v. Loughlin*, No. 19-CV-7767 (LJL), 2022 WL 2063857, at *7 (S.D.N.Y. June 8, 2022) is misplaced. In *Rekor*, defendants purported to designate an expert to rebut plaintiff's expert in financial accounting. However, defendants' expert report did not address financial accounting and instead addressed "federal or state regulatory requirements" and the "standard of a reasonable due diligence investigation in the context of a M&A transaction" – matters on which

12

the plaintiff's financial accounting expert did not opine and was not even qualified to testify about. *Id.* The court excluded defendants' purported rebuttal expert because he was not in fact a rebuttal expert – he was an affirmative expert who was untimely designated. *Id.* Fromholz's opinion, by contrast, is on the same subject matter: whether Wayfarer had a duty to conduct a workplace investigation.

## V.    LIVELY'S ARGUMENT THAT FROMHOLZ'S OPINIONS ARE "WRONG" GOES TO THE WEIGHT, NOT THE ADMISSIBILITY, OF HER TESTIMONY AND IN ANY EVENT IS UNFOUNDED

Lively also moves to exclude Fromholz's first, second and third opinions claiming that they are "wrong," inconsistent, contradicted or unsupported by the facts and/or not credible, and therefore unreliable. Lively confuses correctness of conclusions with reliability. A "proponent of an expert does not have to demonstrate to the judge that the assessments of their experts are 'correct,' …. The evidentiary requirement of reliability is lower than the merits standard for correctness." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3d Cir. 1994). The reliability inquiry is a "flexible one," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). "In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

Lively's various critiques of Fromholz go to the weight of the evidence, not its admissibility, which means Lively may cross-examine Fromholz with these points, but they are not a basis to exclude her testimony. *See, e.g., Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking ... admissible evidence"); Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[T]he trial court's role as gatekeeper is not

intended to serve as a replacement for the adversary system.") (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir.1996)); *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) ("Frequently 'gaps or inconsistencies in the reasoning leading to [the expert's] opinion ... go to the weight of the evidence, not to its admissibility'") (quoting *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001)); *Glencore Ltd. v. Louis Dreyfus Company B.V.*, No. 1:23-CV-11125 (ALC), 2026 WL 880262, at *4 (S.D.N.Y. Mar. 31, 2026) ("credibility challenges to expert testimony ordinarily do not require its preclusion but rather go to its weight"); *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("any weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than on its admissibility").

Not only does Lively misstate the standard for testing reliability of an expert, her critiques of Fromholz's opinions are without basis.

## A.    Fromholz's First Two Opinions Are Not "Wrong"

Lively claims that Fromholz's first opinion is "incorrect" as a matter of law because, she says, it is "mandatory," under all circumstances, for an employer to investigate a sexual harassment complaint. But workplace investigations are not legally required in all instances for any misconduct complaint. *See, e.g.*, *Tritchler v. Cty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004) (cited by Lively) ("If there is no discrimination, then the failure to investigate has no effect on the existence of a discrimination-free workplace.") For example, a claim for failure to investigate sexual harassment must be dismissed if there is no viable claim for sexual harassment. Dkt. No. 1273 at 141 (citing *Kohli v. City & Cty. of San Francisco*, 2025 WL 1883724, at *3 (N.D. Cal. July 8, 2025)). Also, there is no claim for failure to investigate if the employee agrees no investigation is necessary. *See Hardage v. CBS Broad., Inc.*, 436 F.3d 1050,

14

492555.5

1051 (9th Cir. 2006); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (in the Title VII context, an employer may avoid liability for coworker harassment where "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer").

Lively says that Fromholz's opinion is "directly contradicted by the CRD Guide," pointing to language that merely says it is "rarely appropriate" for an employer to forgo an investigation when the employee says they will "address the problem themselves." Dkt. No. 1337 at 10. As Fromholz notes in her report, Lively's attorneys (not Lively personally) sent Wayfarer the Protections Letter with a cover email stating that Lively was "willing to forgo a more formal HR process ... as long as the set is safe moving forward," Wayfarer accepted the terms, and there were no further allegations of misconduct thereafter. Hudson Decl. Ex. 3 (Fromholz Rpt.) at 7. Fromholz concludes that this immediate action taken by Wayfarer to correct and prevent the conduct about which Lively complained rendered an investigation superfluous. Her opinion is consistent with the express purpose of the California Fair Employment and Housing Act and investigations, which is "to provide effective remedies that will eliminate [such] discriminatory practices." Cal. Gov't Code § 12920.

Lively claims that Fromholz's first opinion is flawed because it fails to acknowledge what she claims is a "core component" of investigations. Lively claims that the California Civil Rights Department ("CRD") Guide says that during an investigation, a workplace investigator *is required* to instruct the accused not to retaliate against the complainant. But the CRD Guide only *recommends* that *employers* (not workplace investigators) inform complainants and the accused that retaliation violates the law. State of California Civil Rights Department, *Harassment Prevention Guide for California Employers* (March 2025),

15

http://calcivilrights.ca.gov/wp-content/uploads/sites/32/2025/04/Harassment-Prevention-Guide-2025.pdf, at 13-14.  Mischaracterizing Fromholz's deposition testimony, Lively claims Fromholz agreed with her proposition.[4]  Yet Fromholz testified only that at the conclusion of an interview her practice is to tell the witness not to retaliate against others *for participating in the investigation* and that the witness cannot be retaliated against for participating in the investigation.  Garofalo Decl. Ex. A (Fromholz Dep.) at 97:22–101:1.  She was asked repeatedly whether the admonition she gave witnesses she interviewed was broader (for the accused not to retaliate in the future against the complainant) and she repeatedly responded "no" – that her "role is limited to the investigation, so not more broadly" and that she admonished witnesses to prevent or "discourage retaliation related to the investigation."  *Id.* at 99:9–14.  As Fromholz testified, it is up to the employer to make a broader admonition as reflected in the CRD Guide. *Id.* at 99:11–100:2.

Also, Lively misleadingly argues that Fromholz "admits that because Defendants never investigated Ms. Lively's or others' concerns, Mr. Baldoni and Mr. Heath were never instructed not to retaliate."  Dkt. No. 1337 at 10.  But Fromholz did not testify (a) that Baldoni and Heath were never told not to retaliate against Lively; or (b) that, if they were not told, the reason they were not told was *because* there had not been an investigation.  Fromholz was asked if she was "aware of Mr. Baldoni [or Heath] at any time being advised that he cannot retaliate against Ms. Lively for raising concerns," to which Fromholz answered "I don't know."  Garofalo Decl. Ex. A (Fromholz Dep.) at 101:11–18.

---

[4] Notably, Robbins does not offer an opinion that the purpose of an investigation is to advise the accused that they cannot retaliate against the complainant.  Therefore, there was nothing for Fromholz to rebut.

16

492555.5

In addition, Lively contends that Fromholz improperly reached a conclusion about what an investigation would have uncovered, without personally interviewing witnesses and instead relied on sworn deposition testimony. Dkt. No. 1337 at 13. Fromholz testified she regularly relies on written summaries of witness interviews conducted by others in performing workplace investigations. Hudson Decl. Ex. 4 (Fromholz Dep.) at 85:22-86:19. Fromholz also testified that pursuant to the CRD Guide, she assesses credibility by looking at corroboration, contradiction, evasiveness, and those factors set forth in the guide. *Id.* at 83:5–17, 85:11–21. But Fromholz testified these issues can be gleaned from written testimony. When asked if there "is information that you can glean from an interview with someone, where you speak to them and ask questions, that you can't glean from written testimony?" Fromholz responded that demeanor (including the witnesses' emotional response to questioning) should not be used "as a credibility factor." *Id.* at 87:2–11, 87:25–17). In addition, Fromholz pointed out that deposition testimony is under oath and witnesses are "more truthful in a deposition than they are in an interview with me where it's not sworn testimony." *Id*. at 87:13–24.

Lively further criticizes Fromholz for allegedly failing to review "all" of the documents produced ***in preparing her report***. There is no such requirement. Nor did Fromholz testify that certain critical data relevant to her opinions did not exist when it did in fact exist as in the cases Lively relies upon. *See., e.g.*, *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) ("expert report lacked reliability where the expert did not review data he believed to be unavailable, when the data was, in fact, produced"). Notably, the documents Lively says Fromholz failed to consider were produced only after she issued her November 3, 2025 report. *See, e.g.*, Dkt. No. 1077 (Plaintiff Blake Lively's Declaration in Support of Opposition to Defendants' Motion for Summary Judgment (Dec. 4, 2025)); Dkt. No. 976 (Nov.

17

492555.5

17, 2025 Order compelling production of additional videos by Heath of his child's birth).

Significantly, when Plaintiff's counsel suggested to Fromholz at her deposition that she might

consider this new evidence, Fromholz said she would do so.  Garofalo Decl. Ex. A (Fromholz

Dep.) at 222:15–21.

> **B.**    **Fromholz's Third Opinion Concerning Entertainment-Industry Protocols Is Not "Wrong"**

Lively contends Fromholz's opinions concerning the entertainment-industry protocols are

wrong.  Specifically, Lively says Fromholz "wrongly concludes" the birth scene did not involve

nudity, and that Robbins' opinion on this point is correct.  Dkt. No. 1337 at 17.  But Robbins'

opinion is that the birth scene involved "simulated nudity."  Hudson Decl. Ex. 1 (Robbins Rpt.)

at 22; Garofalo Decl. Ex. B (Robbins Dep.) at 82:16–83:9; Hudson Decl. Ex. 3 (Fromholz Rpt.)

at 6.  Fromholz points out that the SAG-AFTRA intimacy guidelines apply to "nudity and

simulated sex"; there is no mention of the concept of "simulated nudity."  Hudson Decl. Ex. 3

(Fromholz Rpt.) at 6.  Fromholz also opined that the actual trained intimacy coordinator for the

movie testified that the birthing scene did not involve nudity and the SAG-AFTRA intimacy

guidelines apply to "nudity and simulated sex," with no mention of "simulated nudity."  *Id*. at 9.

Lively ignores this aspect of Fromholz's opinion entirely.  She then mischaracterizes the

intimacy coordinator Elizabeth Talbot's deposition testimony.  When asked if there was any

nudity in the birth scene, Talbot testified, "I don't recall any nudity.  There was a high hip line

that may have been called profile nudity to an extent, and that some actors would require or

request a nudity rider for," but that Lively did not request one for this scene.  Hudson Decl. Ex. 8

(Talbot Dep.) at 69:13–23.  Lively also argues Fromholz "wrongly faults" her for not requesting

an intimacy coordinator before the birth scene relying on Robbins' opinion that it is the studio's

responsibility to call the intimacy coordinator to set.  Dkt. No. 1337 at 17.  But this is

contradicted by Talbot's testimony that with a high hip line, it is the actor's responsibility to request a nudity rider.  Hudson Decl. Ex. 8 (Talbot Dep.) at 69:13–23.  Lively responds that she could not have asked for a nudity rider in advance because she did not know that she would be "simulating any type of nudity in that [birth] scene."  Dkt. No. 1077 at 4.  This response defies credulity and common sense.

Lively says Fromholz incorrectly concluded the set was closed during the birth scene relying on Heath's deposition testimony.  Dkt. No. 1337 at 17.  Lively says her declaration filed in support of her opposition to the summary judgment motion must necessarily trump Heath's testimony and criticizes Fromholz for not reading it.  *Id.*  However, the Lively declaration was filed ***after*** Fromholz issued her rebuttal report (and was not part of Robbins' opinions) so Fromholz testified she did not have an opportunity to consider the declaration and agreed she would do so prior to trial.

Lively quibbles with several other aspects of Fromholz's opinions, but they all amount to her belief that Robbins is "right" and Fromholz is "wrong."  This is not the proper inquiry. When, as here, the testimony falls within a "range where experts might reasonably differ," the duty to evaluate the weight and sufficiency of the evidence on which the expert relied lies properly with the jury, rather than the trial court.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

## VI.    FROMHOLZ IS QUALIFIED TO REBUT ROBBINS' OPINIONS ABOUT ENTERTAINMENT INDUSTRY PROTOCOLS AND REPUTATION INJURY IN THAT INDUSTRY

Lively argues Fromholz is not qualified to testify about entertainment industry protocols and reputation injury in the entertainment business because she has never negotiated a nudity rider, engaged an intimacy coordinator or had personal experience with closed sets.  But neither has Robbins.  Garofalo Decl. Ex B (Robbins Dep.) at 91:22-24.  Neither expert is experienced in

19

492555.5

the recent entertainment-industry intimacy protocols that came into effect only during the past few years although both experts have conducted workplace investigations for studios.  If the Court determines that Robbins is qualified because he has general experience in workplace investigations, then certainly Fromholz is equally qualified.  *See, e.g., Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 82 (2d Cir. 1997) (expert in human-machine interactions qualified to testify although he had no specific experience with airline baggage claim systems).

## VII.    CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court exclude the testimony of Robbins, which will moot this opposition.  Should the Court allow Robbins to testify, Fromholz should be permitted to rebut his opinions.

Respectfully submitted,

Dated: April 24, 2026
      Los Angeles, CA

**LINER FREEDMAN TAITELMAN
+ COOLEY**

By:____/s/ Ellyn S. Garofalo_____
Bryan J. Freedman
Ellyn S. Garofalo
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
        egarofalo@lftcllp.com

SHAPIRO ARATO BACH LLP
Alexandra A. E. Shapiro
Jonathan Bach
Alice Buttrick
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: (212) 257-4881
Email: ashapiro@shapiroarato.com
        jbach@shapiroarato.com
        abuttrick@shapiroarato.com

20

492555.5

MEISTER SEELIG & SCHUSTER PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@mss-pllc.com
      kaf@ mss-pllc.com

21