**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLAKE LIVELY,

                    Plaintiff,

v.

WAYFARER STUDIOS LLC, JUSTIN
BALDONI, JAMEY HEATH, STEVE
SAROWITZ, IT ENDS WITH US MOVIE LLC,
MELISSA NATHAN, THE AGENCY GROUP
PR LLC, JENNIFER ABEL, JED WALLACE,
and STREET RELATIONS INC.,

                    Defendants.

No. 1:24-cv-10049-LJL


**DEFENDANTS' OPPOSITION TO PLAINTIFF BLAKE LIVELY'S MOTION TO**
**EXCLUDE THE OPINIONS AND TESTIMONY OF MICHAEL J. WAGNER**

493735.1

# **Table of Contents**

Page

I.    INTRODUCTION ................................................................................................ 4

II.   ARGUMENT ...................................................................................................... 4

    A.  Rebuttal Experts Have A Less Demanding Task Than Affirmative Experts ............... 4

    B.  Wagner Is Qualified To Critique Lively's Damages Experts ...................................... 5

    C.  Wagner Should Be Permitted To Critique Kinrich's Opinion That Profits Earned By Lively's Brands Would Inexorably Flow Through To Lively ................................ 6

    D.  Wagner Should Be Permitted To Critique Lively's Experts' Failure To Consider Alternative Causes Of Lively's Alleged Losses Or Apportion Damages Between The Impact Of Defendants' Alleged Unlawful Actions And Unrelated Negative Press ...................................................................................................................... 7

    E.  Wagner Should Be Permitted To Critique Marks And Sippel's Opinions Regarding Lively's Allegedly Lost Acting And Endorsement Opportunities .............................. 8

    F.  Wagner Should Be Permitted To Critique Humphreys' Opinion On Reputational Damages ................................................................................................................ 10

III.  CONCLUSION ................................................................................................. 11

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
 336 F.R.D. 5 (S.D.N.Y. 2020) ......................................................................................4, 8, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)..............................................................................................................5

*Feliciano v. CoreLogic Saferent, LLC*,
 No. 17-CV-05507, 2020 WL 6205689 (S.D.N.Y. June 11, 2020) ............................................4

*In re M/V MSC FLAMINIA*,
 No. 12-CV-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. July 28, 2017)..........................5, 8, 10

**Other Authorities**

Fed. R. Civ. Proc. 11 ...............................................................................................................4

Fed. R. Evid. 702 ..............................................................................................................4, 5, 10

493735.1

## I.    INTRODUCTION

Lively's motion to exclude Defendants' rebuttal damages expert, Michael Wagner, mischaracterizes Wagner's opinions and confuses the roles of affirmative and rebuttal experts. Wagner, whose qualifications cannot be seriously questioned, performed precisely the task charged to rebuttal expert witnesses:  he criticized the methodologies and opinions of Lively's experts.  Each of Wagner's opinions is the product of reliable principles and methods and will help the jury understand the evidence.  The motion to exclude should be denied.[1]

## II.    ARGUMENT

### A.    Rebuttal Experts Have A Less Demanding Task Than Affirmative Experts

Wagner is a rebuttal expert:  Defendants are not calling him to provide an alternative damages calculation but to explain the methodological flaws in the opinions of Lively's damages experts.  While rebuttal experts are not excused from the rigors of Rule 702, it is well established that they have "a less demanding task because they have no burden to produce models or methods of their own; they need only attack those of plaintiffs' expert." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020).  This is because "[t]he task of a rebuttal expert is different from that of an affirmative expert .... A rebuttal expert, by nature, criticizes the methodology and/or opinions of another." *Id.*  "[R]ebuttal can be properly undertaken by poking holes in another's argument; rebuttal does not require deploying a ground-up analysis of the very same argument." *Feliciano v. CoreLogic Saferent, LLC*, No. 17-CV-05507, 2020 WL 6205689, at *3 (S.D.N.Y. June 11, 2020).  Disagreements with an expert's

---

[1] Lively filed identical memoranda seeking the same relief.  Dkt. Nos. 1315 and 1330.  Neither was signed by Lively's attorney of record as required by Fed. R. Civ. Proc. 11 and the Court should strike the motion on this basis alone.  Fed. R. Civ. Proc. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name…").

493735.1

conclusions are not a basis for exclusion; rather, the opposing party may question those conclusions via cross-examination. *In re M/V MSC FLAMINIA*, No. 12-CV-8892 (KBF), 2017 WL 3208598, at *23 (S.D.N.Y. July 28, 2017).

The overall theme of Lively's motion is that Wagner fails to offer his own methodology and fails to offer affirmative opinions. These arguments are misplaced. For example, Lively attacks Wagner for opining that various alternative causes "could have" caused the decline in sales for Lively's brands without opining on alternative causes that *actually caused* a decline. Dkt. No. 1315 at 7. But, as a rebuttal expert, Wagner has no burden to show what *actually caused* the decline in sales. Rather, his evidence is offered to show the jury that the opinions offered by Lively's experts are not sufficiently supported and do not take into consideration all the relevant factors they should have considered in arriving at the damages opinions. Without Wagner's rebuttal testimony, the jury will simply assume that Lively's experts did what experts in the field usually do. They did not, and Defendants must be permitted to offer testimony to explain why.

### B.    Wagner Is Qualified To Critique Lively's Damages Experts

A witness may qualify as an expert based on his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Lively does not seriously challenge Wagner's overall qualifications as a damages expert—and does not challenge his qualifications to opine on brand underperformance—and for good reason. Wagner holds both a Masters of Business Administration and a Juris Doctor. He has decades of experience as a Certified Public Accountant, including as a partner at Price Waterhouse, where he worked alongside Lively's own damages expert, Jeffrey Kinrich. He has specialized in computation of commercial damages for almost 50 years and has been qualified

and testified as an expert 147 times at trial and 39 times in arbitration.  He has authored 33 publications, the majority of which deal with commercial damages, and was the editor of the Litigation Services Handbook.  Wagner Rpt. at ¶¶ 4-6.[2]

Contrary to Lively's contention, Wagner is not being offered as a legal expert, an expert in social media manipulation, or an expert in the entertainment industry.  *See* Dkt. No. 1315 at 4-5.  He is being offered solely as a rebuttal damages expert.

**C.**   **Wagner Should Be Permitted To Critique Kinrich's Opinion That Profits Earned By Lively's Brands Would Inexorably Flow Through To Lively**

Wagner will critique the simplistic testimony of Lively's brand damages expert, Jeffrey Kinrich, that Lively's damages may be "calculated as the difference between the but-for profits for" Lively's brands and "the actual profits in each case, multiplied by Ms. Lively's ownership percentage in" in the relevant companies.  Kinrich Rpt. ¶ 5.[3]  Wagner will explain why this formula does not in fact capture true cash flow damages to Lively associated with lost sales. Wagner Rpt. ¶¶ 42-49.  Contrary to Lively's contentions, this is not an opinion on "legal standing," nor are Defendants seeking to "launder[]" legal arguments "through the authority of an expert witness."  *See* Dkt. No. 1315 at 1-2, 4-6.  Rather, Wagner assumes that Lively does have standing and offers a critique of Kinrich's *methodology* and *measure* of damages.

For instance, Wagner faults Kinrich's analysis because "simply multiplying by Blake Lively's ownership percentage does not make it lost cash flow damages to Blake Lively." Wagner Rpt. at ¶ 42.  Wagner explains that to properly calculate Lively's lost profits, Kinrich would need to establish lost cash flow to her directly.  *Id.* ¶ 43.  Wagner also appropriately criticizes Kinrich's unsupported assumption that Lively owns 100% of LOL HATA, LLC, the

---

[2] The Wagner Report is attached as Exhibit 2 to the Declaration of Esra Hudson.

[3] The Kinrich Report is attached as Exhibit 1 to the Declaration of Esra Hudson.

entity through which she owns a stake in Betty B and Family Hive.  *Id.*  Wagner further criticizes Kinrich because the evidence Kinrich reviewed does not demonstrate that any cash would flow to Lively, while the projections Kinrich reviewed indicated a need for a cash infusion rather than distributions.  *Id.* at ¶¶ 44, 47.

Wagner will not testify about legal standing and will not refer to caselaw.  Wagner's opinions are consistent with the purpose of standard rebuttal expert opinions:  criticism of Lively's expert's methodology.

> **D.**  **Wagner Should Be Permitted To Critique Lively's Experts' Failure To Consider Alternative Causes Of Lively's Alleged Losses Or Apportion Damages Between The Impact Of Defendants' Alleged Unlawful Actions And Unrelated Negative Press**

Lively falsely claims that Wagner is planning to opine that Defendants did not in fact engage in online manipulation.  Dkt. No. 1315 at 2.  Using this mischaracterization as a jumping off point, Lively argues that Wagner is not qualified to offer such an opinion and that the opinion is not helpful to the jury and unreliable.  *Id.* at 4, 6, 8.

These arguments miss the mark.  Wagner will not opine on whether online manipulation occurred.  Rather, Wagner criticizes Lively's damages experts for failing to analyze any possible alternative causes of Lively's claimed losses, including a failure to consider and analyze negative press against Lively published prior to the alleged retaliation campaign.  Wagner Rep. at ¶¶ 33-37.  Wagner also opines on various other business-related factors that may have caused sales to fail to live up to the projections Kinrich relied on, including an increasingly competitive market and flat sales at Blake Brown's retailer, Target.  *Id.* at ¶¶ 59-87.  And Wagner explains the forecasting problems involved in Kinrich's use of a best case "Ambition" projection prepared more than a year before Blake Brown launched.  *Id.* at ¶¶ 50-58.  This is standard rebuttal and Wagner is eminently qualified to offer this opinion.

493735.1

Wagner also criticizes Lively's experts' failure to apportion damages. For example, Wagner opines that Lively's experts "do not perform any analysis that separates out or apportions the impact from Defendants' actions versus negative press that has nothing to do with Defendants." Wagner Rpt. at ¶ 33. The failure of Lively's experts to consider or apportion damages to alternative causes is not an opinion on whether online manipulation occurred, much less who was and was not responsible. Although Lively challenges Wagner on the grounds that he did not attempt to quantify Lively's damages, as a rebuttal expert, Wagner is not required to perform an affirmative analysis. *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. at 29.

Lively claims Wagner's alternative causation criticisms are unhelpful because they depend on the conclusions of Defendants' expert Nicole Alexander. Not so. While Wagner notes the opinions provided by Alexander, he explicitly states that those opinions arise "in addition to my opinions expressed in this report." Wagner Rpt. at ¶ 38. Even so, an expert may "rely upon the findings of other experts to reach his own conclusions employing his independent expertise." *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *23 ("although [the expert] explicitly discusses and repeatedly relies upon the expert opinions of his colleagues who have expertise different from his own, he does so to support his own analysis and conclusions based upon his own expertise"). In any event, Wagner's opinion criticizing Lively's experts' failure to analyze alternative causes of loss is not an affirmative opinion as to whether an online retaliation campaign occurred but a criticism of Lively's experts' failures. Thus, his opinion will assist the trier of fact to determine the reliability of Lively's own experts' opinions.

E.    **Wagner Should Be Permitted To Critique Marks And Sippel's Opinions Regarding Lively's** ████████████████████████████

Wagner criticizes analyses performed by Lively's experts Richard Marks and Michael Sippel in arriving at their damages opinions related to ████████████████████████ .

8

For example, Wagner points to a host of factors affecting ███████████████████

██████ that Marks did not consider, including ███████████████ (Wagner Rpt. at ¶¶

139, 143-145), ██████████████████████████████████ (*id.* at ¶ 140), and

███████████████████████████████████████████████████

██████ (*id.* at ¶ 141).  Wagner also criticizes Marks and Sippel for failing to identify ██████

████████████████████████████████████████████████ and

for assuming, without any analysis, and contrary to the testimony of her own manager, that ████

█████████████████████████ Finally, Wagner criticizes Sippel's ████████

█████████████████████████████ – precisely the kind of opinions one

would expect from a rebuttal damages expert.  (*Id.* at ¶¶ 151-153).

As a rebuttal damages expert, these opinions fall within Wagner's expertise.  Wagner

does not offer an opinion on the ████████████████████████ but he does note the

deficiencies in both Marks' and Sippel's analyses.

Nor is Wagner's opinion inadmissible simply because he considered the opinion of expert

Emanuel Nunez in forming his opinion.  *See* Dkt. No. 1315 at 4-5.  Wagner's report notes that

Mr. Nunez's comments are consistent with his own criticisms – namely, ████████████

███████████████████████████████████████████████

██████████████ *Id.* at ¶ 150.  Wagner specifically noted in deposition that his opinion

would not change even if Nunez's conclusions were incorrect.  Ex. A (Wagner Dep. at

201:12-18).

Lively asserts that Wagner's criticisms regarding Lively's alleged lost earnings are

unreliable because he "ignores testimony that Lively was committed to working full time after

the release of the Film," "misunderstands the nature of the offers Lively has received since the

Film's release," "ignor[es] testimony from actual Hollywood professionals," and "ignores that Ms. Lively's past offers are not an adequate proxy for her future offers," and "takes a sliver of deposition testimony from Lively's agent out of context." Dkt. No. 1315 at 9-10. However, none of these criticisms of Wagner's analysis establish that he did not have access to sufficient facts or data or that he did not apply his methodology reliably. Fed. R. Evid. 702. To the extent Lively disagrees with Wagner, she is free to cross-examine him at trial. *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *23.

### F. Wagner Should Be Permitted To Critique Humphreys' Opinion On Reputational Damages

Lively asserts Wagner cannot opine on Ashlee Humphreys' reputational harm calculations because "he possesses no expertise on how the media ecosystem operates." Dkt. No. 1315 at 5. However, Wagner does not purport to opine on the amount of reputational harm suffered by Lively. He only opines that Humphreys' analysis did not consider that winning a highly publicized lawsuit may help to repair the reputational harm of which Lively complains. Wagner Rpt. at ¶ 154. Wagner is qualified to criticize Humphrey's methodology in calculating damages based on her failure to consider important factors affecting those calculations. *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. at 29.

Nor is Wagner's opinion on this point unreliable because he did not provide evidence that her reputational harm would be "eliminated." ECF 1315 at 10. Again, Lively misstates Wagner's opinion. Wagner criticizes Humphreys for not considering that a victory in this lawsuit would go a long way toward restoring reputational harm, thus diminishing her damages. Wagner Rpt. ¶ 154. He does not opine that Lively's alleged reputational harm would be eliminated.

493735.1

## III.    CONCLUSION

For all of the foregoing reasons, the Court should strike Plaintiff's motion for failure to

comply with Rule 11 of the Federal Rules of Civil Procedure, or, in the alternative, deny

Plaintiff's motion.


Respectfully submitted,

Dated:  April 24, 2026                                          */s/ Ellyn S. Garofalo*
       New York, New York                          LINER FREEDMAN TAITELMAN +
COOLEY, LLP
Bryan J. Freedman (pro hac vice)
Ellyn S. Garofalo (pro hac vice)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
bfreedman@lftcllp.com
egarofalo@lftcllp.com


SHAPIRO ARATO BACH LLP
Alexandra A.E. Shapiro
Jonathan P. Bach
Alice Buttrick
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: 212-257-4881
ashapiro@shapiroarato.com
jbach@shapiroarato.com
abuttrick@shapiroarato.com

MEISTER SEELIG & SCHUSTER PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
ms@mss-pllc.com
kaf@mss-pllc.com


*Counsel for the Wayfarer Parties*

11