**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BLAKE LIVELY,

                    Plaintiff,

v.

WAYFARER STUDIOS LLC, et al.,

                    Defendants.

No. 24-cv-10049 (LJL)

---

**<u>PLAINTIFF BLAKE LIVELY'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

    I.    Defendants Cite No Authority Supporting Their Position That an Extraterritorial Bar to Harassment Claim Bars the Retaliation Claim as a Matter of Law. .........................................................................................................3

    II.    Ms. Lively Need Only Allege a Reasonable, Good Faith Belief that the Practice She Opposed was Unlawful, Which Ms. Lively Did. ......................................6

    III.    Defendants' Motion Ignores the Participation Clause of Section 12940(h). ................11

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005)............................................................................................... 8

*Arn v. News Media Grp.*,
175 F. App'x 844 (9th Cir. 2006) ..................................................................................... 5

*Campbell v. Arco Marine, Inc.*,
50 Cal. Rptr. 2d 626 (Cal. Ct. App. 1996). ..................................................................... 1

*Cooper v. New York State Department of Labor*,
 819 F.3d 678 (2d Cir. 2016)............................................................................................. 5

*DeWeerth v. Baldinger*,
38 F.3d 1266 (2d Cir. 1994)............................................................................................. 8

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
19 Cal. 4th 1036 (1999) ................................................................................................... 8

*Dinslage v. City and County of San Francisco*,
209 Cal. Rptr. 3d 809 (Cal. Ct. App. 2016)................................................................. 4, 6

*Fitzsimons v. Cal. Emergency Physicians Med. Grp.*,
205 Cal. App. 4th 1412 (2012) ........................................................................................ 5

*Lively v. Wayfarer Studios LLC*,
2026 WL 905447 (S.D.N.Y. Apr. 2, 2026)................................................................... 3, 7

*Miller v. Dep't of Corr.*,
36 Cal. 4th 446 (2005) .................................................................................................. 5, 6

*Moyo v. Gomez*,
40 F.3d 982 (9th Cir. 1994) .............................................................................................. 5

*Radentz* v. *American Association of Physician Spec., Inc.*,
2014 WL 12601013 (C.D. Cal. Aug. 18, 2014) ............................................................... 6

*Wolf v. J.I. Case Co.*,
617 F. Supp. 858 (E.D. Wis. 1985)................................................................................... 3

*Yanowitz v. L'Oreal USA, Inc.*,
36 Cal. 4th 1028 (2005). ...................................................................................... 3, 4, 7, 11

**Statutes**

Cal. Gov. Code § 12940(h)................................................................................... 1, 2, 4, 11

Cal. Gov't Code § 12940(j)(1)....................................................................................... 5

**Other Authorities**

Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 VA. L. REV. 1671 (1992 ..................................................................................... 8

**INTRODUCTION**

Defendants' renewed motion for judgment on the pleadings (Dkt. No. 1295 "Renewed MJP") is premised on the concept that the "FEHA prohibits retaliation against someone who 'has opposed any practices forbidden under this part[.]' Cal. Gov. Code § 12940(h) (emphasis added)." Renewed MJP at 4. Defendants assert that, in dismissing the harassment claim on the basis of extraterritoriality, "[t]he Court has ruled that the allegedly harassing actions of the Wayfarer Parties were not subject to or 'forbidden under' FEHA" and "[a]ccordingly, Lively's alleged opposition to those actions was not opposition to 'practices forbidden under' that statute" and must be dismissed. *Id.* There are three fatal defects with this argument:

*First*, the Court neither analyzed nor considered the "practices forbidden under this part" language of Section 12940(h) in its ruling on extraterritoriality, either in connection with the harassment claim or the retaliation claim. Instead, the Court analyzed extraterritoriality following the test articulated in *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d 626 (Cal. Ct. App. 1996). *See* Dkt. No. 1273 at 82-94. That test, as the Court explained, places an "emphasis on the **'ultimate'** *discriminatory acts* [and] aligns with other courts' focus on whether a 'crucial element' of the claim occurred in California." *Id.* at 86 (emphasis added) (citations omitted). Defendants have identified *no case*—not one—even considering the extraterritoriality of underlying harassment as a basis for concluding that an otherwise territorial application of a resulting retaliation claim must fail. Their novel theory, which is presented in a conclusory fashion with minimal analysis, should be rejected.

*Second*, even if the harassment claim is barred on the legal basis of extraterritoriality, Ms. Lively's retaliation claim does not turn on whether harassment *ultimately succeeded*—only on whether she had a reasonable, good faith belief that the conduct she was opposing constituted

harassment. Dkt. No. 1273 at 107. Defendants do not address how Ms. Lively has failed to meet this standard. Instead, they rely on a proposition that California courts consistently reject—that a belief in unlawful harassment is not "objectively reasonable" as a matter of law if the claim is dismissed on extraterritoriality grounds. *See* Renewed MJP at 5. This is wrong. California courts are clear that a plaintiff's belief may be a mistake of fact *or law*, and is only unreasonable if it is "utterly baseless," Dkt. No. 1273 at 107 (citation omitted). If Defendants' extreme position were correct, individuals who witness troubling conduct—and who are not themselves employment lawyers, legal scholars, or judges—would be chilled from reporting by a fear of retaliation if the conduct is *later* determined to be outside of FEHA's coverage. That chill would be even worse with respect to the presumption against extraterritoriality, a technical doctrine that can produce results that would appear counterintuitive to a layperson, including that—as the Court held here— a Hollywood actress working for a California-based entity who is alleged to have harassed an individual working under a contract negotiated by her California counsel with a California choice of law provision, is not protected by California's anti-harassment provision. At a minimum, Ms. Lively's belief that the relevant conduct constituted FEHA-actionable harassment was not "utterly baseless," Dkt. No. 1273 at 107, and her retaliation claim must therefore proceed.

***Third***, Defendants' Renewed MJP *simply ignores* the participation clause of Section 12940(h), which forbids retaliation because a person "has filed a complaint . . . under this part." Cal. Gov. Code § 12940(h). Ms. Lively undisputedly did just that when she filed her CRD complaint *in California*. Having done so, she clearly engaged in a protected activity with *no territorial issues whatsoever*, and which is entirely independent of the harassment claim. As such, the "protected activity" element, which is the only one challenged by Defendants, is met for pleading purposes at minimum, and the Renewed MJP must be denied.

## ARGUMENT[1]

I.    **Defendants Cite No Authority Supporting Their Position That an Extraterritorial Bar to a Harassment Claim Bars a Retaliation Claim as a Matter of Law.**

Defendants cite no case—California or otherwise—and Ms. Lively is not aware of one, that examines the extraterritoriality of the harassment underlying a retaliation plaintiff's claims.[2] In their effort to embed a second extraterritoriality analysis within the test that Ms. Lively's retaliation claim has already passed, Defendants' sole argument is that to the extent Ms. Lively's harassment claims are not actionable under FEHA, her retaliation claims are not either. *See* Renewed MJP at 6 (arguing that because "all the allegedly harassing conduct took place in New Jersey," Ms. Lively "was never protected by FEHA and she did not oppose conduct 'forbidden by' FEHA," and she therefore "has no retaliation claim under FEHA.").

That is a flatly wrong statement of California law, and an incorrect interpretation of the "forbidden under" language of Section 12940(h). "It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1043 (2005). This Court has already recognized exactly that principle in reviewing Ms. Lively's retaliation claim. *Lively*, 2026 WL 905447, at *47. Defendants seem to favor "[a] rule that permits an

---

[1] As with Defendants' initial motion for judgment on the pleadings, at this stage of the case the relevant record is not confined to the pleadings but instead embraces the entire summary judgment record. *Lively v. Wayfarer Studios LLC*, 2026 WL 905447, at *5 (S.D.N.Y. Apr. 2, 2026) (citing *Miller v. Lamanna*, 169 F.4th 118 (2d Cir. 2026)).

[2] In the only case Ms. Lively has identified raising analogous facts, the Court concluded that a plaintiff's ADEA retaliation claim was unaffected by the conclusion that the discrimination complained of was not actionable because it occurred outside the U.S. *See Wolf v. J.I. Case Co.*, 617 F. Supp. 858, 868 (E.D. Wis. 1985) ("The plaintiff in the present case objected that his termination was unlawful age discrimination under the ADEA. The court cannot say that this belief was unreasonable or in bad faith, even though I hold today that the plaintiff's termination claim is not cognizable under the ADEA because he was employed overseas.").

employer to retaliate against an employee with impunity whenever the employee's reasonable belief turns out to be incorrect"—*i.e.*, exactly the regime that the California Supreme Court rejected in *Yanowitz*. *See* 36 Cal. 4th at 1043.

Contrary to Defendants' apparently unprecedented argument, nothing in the statutory language requires such a rule. FEHA's anti-retaliation provision prohibits retaliation for "*oppos[ing] any practices forbidden under this part* [including harassment based on sex,] or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h) (emphasis added). Defendants make much of the italicized language, but they overread it. Subsection (h) requires only that a person have opposed a "practice[] forbidden under" FEHA, not that the conduct complained of constitute an actual violation of FEHA, in the sense of satisfying every element of liability. Harassment, including the creation of a hostile work environment, is a "practice forbidden" by the FEHA. Stated differently, the "practices forbidden under this part" language on which Defendants rely is meant to define the *types of conduct*—and not the *types of legal violations*—that a person may safely report. Thus, a person who opposes conduct alleged to be sexual harassment or a hostile work environment has opposed a "practice forbidden" by FEHA even if the conduct does not qualify as a *violation* of FEHA because some other element is not met—including because it occurred beyond the FEHA's geographic scope.

That distinction explains the conclusions reached by some courts that opposing certain practices is not protected activity—because those practices do not resemble a type of conduct prohibited by the relevant antidiscrimination statute. In *Dinslage v. City and County of San Francisco*, which Defendants rely on, the plaintiff's "general advocacy for the disabled community" and "opposition to elimination of allegedly beneficial programs" opposed a type of

4

discrimination—against disabled members of the general public—that FEHA did not cover. 209 Cal. Rptr. 3d 809, 821 (Cal. Ct. App. 2016) ("[D]iscrimination by an employer against members of the general public is not a prohibited *employment* practice under the FEHA."). Similarly, in *Cooper v. New York State Department of Labor*, 819 F.3d 678, 681 (2d Cir. 2016), and *Arn v. News Media Grp.*, 175 F. App'x 844, 846 (9th Cir. 2006), the conduct at issue fell outside of the scope of the statute's enumerated, protected activities—whistleblowing on environmental practices in *Arn*, and opposing internal procedures in *Cooper*. By contrast, FEHA forbids both sexual harassment and the creation of a hostile work environment as an employment practice. *See* Cal. Gov't Code § 12940(j)(1). All that is required to state a claim of retaliation is that the "nature of [the] complaint" falls within the "*general purview*" of FEHA. Dkt. No. 1273 at 116 (quoting *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 475 (2005)). Complaints about perceived sexual harassment—unlike complaints about discrimination against disabled members of the public—do. *See, e.g.*, *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (cited in *Yanowitz*) ("regardless of whether the inmates in this case actually qualified as employees, Moyo would be able to state a retaliation claim if he could show that his belief that an unlawful employment practice occurred was "reasonable". If Moyo reasonably believed that the inmates were protected by Title VII, then his opposition to their treatment would be a statutorily protected activity").[3]

---

[3] *Fitzsimons v. Cal. Emergency Physicians Med. Grp.*, which the Court cited in its MSJ opinion, does not undermine the well-established reasonable belief standard governing protected activity under FEHA. There, the Court of Appeal explained that although the plaintiff was not an employee of CEP, "CEP is the employer of those persons who are the victims of the alleged harassment that plaintiff reported, for which she allegedly became the subject of CEP's retaliation," and that harassment of CEP's employees—if proven—would constitute an unlawful employment practice under FEHA, such that subdivision (h) makes it unlawful for CEP to retaliate against "any person" for opposing that conduct. 205 Cal. App. 4th 1412, 1429 (2012). That statutory interpretation was central to the court's resolution of who may bring a retaliation claim, not to the scope of what qualifies as protected activity. *Fitzsimons* did not address— much less purport to limit—the settled rule that protected activity may rest on a reasonable, good faith belief as to the law or the facts. To the extent the opinion elsewhere suggests that a partner complaining of harassment directed at herself might not be engaging in activity "forbidden under this part," that observation was unnecessary to the holding

**II.     Ms. Lively Need Only Allege a Reasonable, Good Faith Belief that the Practice She Opposed was Unlawful, Which She Did.**

Perhaps recognizing a flaw in their argument, Defendants devote a single paragraph to the proposition that Ms. Lively cannot prevail by showing a "good faith if mistaken belief that Defendants' actions violated FEHA." Renewed MJP at 6. Defendants quote language from an intermediate California appellate court (in turn quoting the Eleventh Circuit) stating that a retaliation plaintiff's belief must be "objectively reasonable when measured against existing substantive law." *Id.* (quoting *Dinslage*, 209 Cal Rptr. 3d at 820). Defendants then suggest that this means that a FEHA retaliation plaintiff *must have a correct and up-to-date understanding of the law*, based on the latest relevant precedents—otherwise, protecting activities based on a belief that is "legally erroneous" would constitute "expand[ing] the statute beyond the categories of discrimination addressed by the legislature." *Id.*

That is *also* an incorrect statement of the law on protected activity. As this Court has already recognized—although Defendants conveniently ignore this—it is "well settled" that "a retaliation claim may be brought by an employee who has complained of or opposed conduct, even when a court or jury subsequently determines the conduct actually was not prohibited by the FEHA." *Miller*, 36 Cal. 4th at 473–74. Instead, "[a]n employee is protected against retaliation if the employee reasonably and in good faith believed that what he or she was opposing constituted

---

and therefore dicta as to any mistake of law issue, in the same way this Court concluded with respect to The Agency Group LLC's citation to *Radentz* v. *American Association of Physician Spec., Inc.*, 2014 WL 12601013, at *7 (C.D. Cal. Aug. 18, 2014) in its ruling on TAG's summary judgment motion. Dkt. 1374 at 8. Indeed, the *Fitzsimons* court did not decide whether the alleged harassment actually occurred or whether it ultimately constituted a FEHA violation on the merits. *Id*. Read otherwise would conflict with the California Supreme Court's clear holdings in *Yanowitz* and *Miller* that retaliation protection does not require legal correctness, but only that the employee's opposition be reasonable and undertaken in good faith. The case's finding of a "mistake of law" as dispositive are those where the complained of conduct bears *no relationship whatsoever* to the types of discrimination or harassment FEHA addresses—not where, as our case, harassment falls squarely within FEHA's core prohibitions.

unlawful employer conduct such as sexual harassment or sexual discrimination." *Id.* at 474. Further, the "reasonableness" required to make such a belief sufficient to sustain a retaliation claim is not a high bar: as this Court has recognized, the California Supreme Court holds that "even if a plaintiff's beliefs regarding sexual harassment are legally mistaken under FEHA, a retaliation claim might be sustained where 'the nature of [the] complaint' reasonably falls within the statute's 'general purview.'" Dkt. No. 1273 at 116 (quoting *Miller*, 36 Cal. 4th at 475). As this Court has recognized: "The question is . . . whether Lively's belief was, as some courts have put it, 'utterly baseless.'" *Lively*, 2026 WL 905447, at *51. As the California Supreme Court has explained,

> [s]trong policy considerations support this rule. Employees often are legally unsophisticated and will not be in a position to make an informed judgment as to whether a particular practice or conduct actually violates the governing antidiscrimination statute. A rule that permits an employer to retaliate against an employee with impunity whenever the employee's reasonable belief turns out to be incorrect would significantly deter employees from opposing conduct they believe to be discriminatory.

*Yanowitz*, 36 Cal. 4th at 1043. By the same token, the California Supreme Court has explained, "a rule that would allow retaliation against an employee for opposing conduct the employee reasonably and in good faith believed was discriminatory, whenever the conduct subsequently was found not to violate the FEHA, would significantly discourage employees from opposing incidents of discrimination, thereby undermining the fundamental purposes of the antidiscrimination statutes." *Id.*

For these reasons, the correct standard is not, as Defendants suggest, whether Ms. Lively's belief that she was opposing unlawful harassment accurately reflected the state of existing law. The only question is whether that belief was "utterly baseless." It was not, including as to the extraterritoriality defects that this Court identified.

*First*, as the Court has recognized, neither the Ninth Circuit nor the California Supreme Court "has addressed whether FEHA [or Section 1102.5] may apply extraterritorially." Dkt. No. 1273 at 83 (internal quotation marks omitted).[4] In the absence of binding precedent from the California Supreme Court, this Court is necessarily in the familiar—but uncertain—position of having to "predict how the forum state's highest court would decide" the issue. *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). Such "*Erie* guesses" are, of course, sometimes wrong. *See, e.g.*, *DeWeerth v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir. 1994); Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 VA. L. REV. 1671, 1679 & nn.48-53 (1992). It is entirely possible that the California Supreme Court may someday conclude that some degree of extraterritorial application is "reasonably to be inferred from the language of the [FEHA] or from its purpose, subject matter or history," Dkt. No. 1273 at 83 (cleaned up)—particularly in circumstances like these, where someone agrees to work on a California studio's production and is then harassed by California residents working for that California studio during the New Jersey phase of a film shoot that also included shooting days in California. *Campbell*—an intermediate appellate case—inferred that the presumption of extraterritoriality was not overcome based on constitutional avoidance principles that (whatever their force laid against *Campbell*'s more remote facts) have little force in light of the substantial connections between Ms. Lively's work on the film and California. *See Campbell*, 50 Cal. Rptr. 2d at 632. And *Campbell* otherwise turned on a few phrases of legislative history, but did not otherwise consider the FEHA's purpose or subject matter. *Id.*; *but see Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1059 (1999) (the presumption of extraterritoriality is overcome if "such intention is clearly

---

[4] Similarly, no Court "has addressed the extraterritorial reach of California Civil Code Section 51.9." Dkt. No. 1273 at 84.

expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history"). It is entirely possible that the California Supreme Court, were it to engage in the more comprehensive analysis required by its own precedents, would lead to a contrary result. The purpose and the subject matter of the FEHA suggest that an actor's protection from harassment should not toggle on and off as a film's shooting schedule takes her in and out of California. It was not unreasonable, much less "utterly baseless," for Ms. Lively to have believed that the FEHA does apply extraterritorially, at least to the harassing conduct of employees of California entities with contractual California choice of law provisions.

*Second*, even applying the extraterritoriality analysis that this Court adopted, it was not objectively unreasonable (much less "utterly baseless") for Ms. Lively to believe that FEHA applied given the specific facts that contributed to her expectations here. Ms. Lively executed a contract between her and IEWUM, a California-based entity and a subsidiary of a California-based studio, to govern her work on a production led by California residents (Baldoni and Heath) acting as producers and director. *See* Dkt. No. 1252-2 ("56.1") ¶ 409. Unsurprisingly for an actress who worked regularly in California-based productions, Ms. Lively's California-based representatives, including her agent, her manager, and her entertainment lawyer, all negotiated that deal on Ms. Lively's behalf. *See* Dkt. No. 963-26. The production itself was planned to include, and *did* include, filming in California: The "script anticipated" filming in Los Angeles, 56.1 ¶ 387, and the film's production ultimately *did* include a "few" days of filming in California. 56.1 ¶ 221; *see* Dkt. No. 1245-8, Lively Tr. at 261:9–25. Later, IEWUM and Wayfarer's California-based acts and omissions were important to the conduct that occurred on set—such as their failure to hire

9

additional HR personnel or share HR policies with the cast and crew.[5] Further, Ms. Lively's own experience of the specific harassment she suffered had a significant California nexus. As discussed above, Ms. Lively was harassed by California residents (and officers of the California-based entities who employed her). And, when Ms. Lively informed Sony executive Ange Giannetti that she was "very unhappy" that Heath showed her a video of his wife giving birth, Ms. Lively then had a 45-minute conversation with Ms. Giannetti, who was in California at the time. 56.1 ¶¶ 121-22. During that conversation, Ms. Lively shared her concerns—including about Baldoni's comments about her body and Heath's decision to show her the birth video—Ms. Giannetti told Ms. Lively that she had to report her concerns directly to Wayfarer. *Id.* Ms. Lively told Ms. Giannetti that she wanted to file an HR complaint, but Ms. Giannetti instead reported Ms. Lively's complaints to Baldoni and Heath, but not to Sony's HR. *Id.* at 122. And throughout this period, Ms. Lively reasonably believed that her work on the Film was governed by the ALA, which contained provisions governing her accommodations during anticipated work in Los Angeles, and also contained a California choice-of-law provision.[6] 56.1 ¶¶ 387–89.

FEHA's policies and purposes strongly favor the conclusion that Ms. Lively's belief was reasonable. FEHA's anti-retaliation provision exists to eliminate the chill that would result if

---

[5] The Court may have since determined that these omissions were "not 'the core of the alleged wrongful conduct' underlying Lively's sexual harassment claims," but as discussed above, that is not a legal judgment that Ms. Lively was required to predict correctly before speaking up. Dkt. No. 1295 at 91.

[6] Of course, the Court has since held that the ALA was not binding, and may have been subject to a further "interesting and important question regarding parties' ability to contract around extraterritorial limitations in state statutes." MSJ Opinion at 85. Regardless of the Court's ultimate conclusion about the ALA's status, Ms. Lively reasonably believed that the ALA *was* binding, and further that its choice of law provision mandated application of the FEHA—a sensible outcome given the multi-jurisdictional nature of the anticipated film shoot. Ms. Lively's reasonable belief that the ALA was binding was rooted in the widespread practice—known to actors, agents, and studios alike—of actors leaving their long-form agreements unsigned, but all parties treating the undisputed portions of those agreements as operative and binding, even if other open terms remained subject to negotiation. *See* Declaration of Richard Marks in Opposition to Defendants' Renewed Motion for Judgment on the Pleadings at ¶¶ 5-6.

employers could freely retaliate against plaintiffs who turn out to be wrong about the facts or the law—such a scheme "would significantly discourage employees from opposing incidents of discrimination, thereby undermining the fundamental purposes of the antidiscrimination statutes." *Yanowitz*, 36 Cal. 4th at 1043. Those concerns are even more heightened with respect to extraterritoriality—a technical doctrine unknown to most laypeople, not tied closely to common sense intuitions, and often dependent on fact-bound inquiries and subtle legal tasks like identifying "the core of the alleged wrongful conduct" going to "the material elements of the cause of action." Dkt. No. 1295 at 87 (citation modified). In an age of remote work, multi-jurisdictional employers, and even movies that are shot in more than one location, asking potential complainants who would like to report unlawful conduct to first engage in an extraterritoriality analysis before speaking up—where the penalty for a wrong answer is that the complainant can be fired—is a recipe for chilling reporting, and contrary to the "fundamental purposes of the antidiscrimination statutes." *Yanowitz*, 36 Cal. 4th at 1043.

## III.    Defendants' Motion Ignores the Participation Clause of Section 12940(h).

Finally, Defendants' Renewed MJP ignores the participation clause of §12940(h), which makes it unlawful to retaliate against a person "because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h). Ms. Lively *has* filed a complaint "under" the FEHA—the CRD complaint. It is undisputed that the filing of the CRD complaint took place in California. 56.1 ¶ 783. And Ms. Lively has alleged, and intends to prove at trial, that Defendants retaliated against her for filing that CRD Complaint. Dkt. No. 1273 at 94. Nothing in Defendants' Renewed MJP affects her retaliation claim against that clause of Section 12940(h), nor could it.

11

## CONCLUSION

Defendants' renewed motion for judgment on the pleadings should be denied.

12

Dated: April 24, 2026

Respectfully submitted,


/s/ Esra A. Hudson


WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Koren L. Bell
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3111
mgottlieb@willkie.com
kbell@willkie.com

Kristin E. Bender
Anna M. Gotfryd
1875 K Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com
agotfryd@willkie.com

Michael S. Schachter
Aaron E. Nathan
Michaela A. Connolly
Melissa S. Taustine
M. Annie Houghton-Larsen
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
mschachter@willkie.com
anathan@willkie.com
mconnolly@willkie.com
mtaustine@willkie.com
mhoughton-larsen@willkie.com

MANATT, PHELPS & PHILLIPS LLP
Esra A. Hudson (admitted *pro hac vice*)
Naeun Rim (*pro hac vice* pending)
Stephanie A. Roeser (admitted *pro hac vice*)
Sarah E. Moses (admitted *pro hac vice*)
Sareen K. Armani
Katelyn A. Climaco
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
nrim@manatt.com
sroeser@manatt.com
smoses@manatt.com
sarmani@manatt.com
kclimaco@manatt.com

Matthew F. Bruno
7 Times Square
New York, NY 10036
(212) 790-4525
mbruno@manatt.com


*Attorneys for Blake Lively*

13