# EXHIBIT Z

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---


BLAKE LIVELY,

                    Plaintiff,

    vs.          CASE NO. 24-CV-10049-LJL (LEAD CASE)

                             25-CV-449 (LJL) (MEMBER CASE)


WAYFARER STUDIOS LLC, ET AL.


                    Defendants.

_____

JENNIFER ABEL,

             Third-party Plaintiff,

    vs.

JONESWORKS, LLC,

             Third-party Defendant.

_____

WAYFARER STUDIOS LLC, et al.

             Consolidated Plaintiffs,

    vs.

BLAKE LIVELY, et al.

             Consolidated Defendants.

_____

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JEFFREY KINRICH

Los Angeles, California

Tuesday, November 25, 2025




Stenographically Reported by:  Ashley Soevyn,

CALIFORNIA CSR No. 12019

Pages 1 - 128


                                          Page 1

MS. CONNOLLY:  Objection.                      10:42:57

THE WITNESS:  Most of that discussion

occurred before my report.  So are you asking me --

are you changing -- are you asking me what I did

after or what I did before or in total overarching?   10:43:06

BY MR. KALTGRAD:

Q   Let's talk about before now.

A   That the projection that I relied upon

was, but for the online manipulation, a reasonable

and most likely expected case for their Betty B        10:43:32

line.

Q   How did you make that determination?

A   Well, you've changed the question.  I

will answer that, but that's a different question.

Q   Let me back up.                           10:43:54

Are you saying that -- well, did you --

did you form an opinion that it was a reasonable

expectation?

A   I did.

Q   How did you come to that opinion?         10:44:07

A   I came to it by considering several

things.  First, I -- if you will kick the tires with

the client.  I talked to them about their basis for

their beliefs.  That the projections were reasonable

at the time.  I talked to them about their beliefs     10:44:28

Page 40

that today with hindsight given what they know has          10:44:31

happened, but recognizing the online manipulation

occurred, that it still was a reasonable projection

at the time.  In other words, nothing that's

happened since then, other than the online                  10:44:42

manipulation, would change their views that that was

reasonable at the time and reasonable today.

I then asked them for justifications and

we talked through many items.  I can't give you that

list today, but we talked through many of the items         10:45:03

that are in the various documents, the various

PowerPoints and board presentations.  Some of the

glass half-full, glass half-empty documents.  Not

some but those documents.

And looked at the things that were the             10:45:15

glass half-empty items in particular.  Because those

are the negatives.  And discussed whether any of

them would have reasonably caused them to believe

that their -- that those forecasts -- not cause them

to believe but would have caused those forecasts to         10:45:38

be unreasonable, or not the most reasonable

expectation but for the online manipulation.

I then looked at market conditions to see

whether there's anything in the market in general

that would have caused the results not to be                10:45:55

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

A    I do.                                          11:28:45

Q    Okay.  I will represent that this Excel spreadsheet that we were looking at was produced as BL-39169, so I just want to confirm that that's what you were referring to as the Blake Brown forecast.    11:28:52 That's the -- these are the -- that's what you're referring to as the Blake Brown forecast; is that correct?

A    If the Bates numbers match, the answer is yes.                                             11:29:03

Q    Thank you.  We're looking back at the Blake Brown forecast, Exhibit 4.  And you have a printout in front of you as Exhibit 4A, the section I'm looking at.  But under the Target Revenue Summary for Total Retail Revenue, do you see that?    11:29:17

A    Not yet, but I'm sure you will help me see it.

Q    Sure.  If you look down at your little spreadsheet in front of you.  It says Retail Revenue and Target Revenue Summary is expanded there.    11:29:30

Do you see that?  Sort of brown line in the middle?

A    I do see that.

Q    Okay.  And below that, it says Retail Revenue?                                          11:29:38

Page 61

that?                                                    11:37:52

A    I see that.

Q    Do you know how the baseline productivity levels were determined?

A    I do not.                                          11:37:59

Q    If we look at the next page under Exhibit 4A.  It's tab SP.  And I'm looking at row 741.  There's a row that says "Productivity Growth Details."

Do you see that?                                         11:38:16

A    I do.

Q    And then underneath that 743, it says "percent growth profile."

Do you see that?

A    I do.                                              11:38:24

Q    And then in rows 744 through 757 are the various products listed.

Do you see that?

A    I do.

Q    Okay.  And then scrolling over, we have    11:38:36 various projected growth percentages for each of the contemplated Blake Brown products.

Do you see that?

A    I do.

Q    And those go from Q2 of 2024 through Q4    11:38:47

Page 70

of 2028.                                                  11:38:53

     Do you see that?

    A   I do.

    Q   Now, some of the growth percentages are
quite significant.  If you look, for example, at the   11:39:02
repair shampoo, there is a 30 percent growth in Q1
of 2025.

     Do you see that?

    MS. CONNOLLY:  Objection.

    THE WITNESS:  I see that number.         11:39:15

BY MR. KALTGRAD:

    Q   Okay.  Do you have an understanding for
how the assumptions for growth percentages were
determined?

    A   I do not.                            11:39:22

    Q   So you just accepted these percentages
for purposes of your opinion, correct?

    MS. CONNOLLY:  Objection.

    THE WITNESS:  I did not accept the
percentages.  I did not even deal with the             11:39:33
percentages.  What I accepted was the overall
projection taken as a whole, not without concerning
myself with the individual details, that individual
details can be off.  I -- I understand that.  That's
always the case for any projection.                    11:39:49

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

The question is, whether the overall    11:39:50
picture painted by the projection, recognizing the
details can go -- some details can be off high; some
details can be off low.  Some things can change.
They will change.  They absolutely will change.    11:40:05
Every projection will have differences between it
and actuals.  The ultimate question is whether the
projection itself is a reasonable expectation of the
expected value.

BY MR. KALTGRAD:    11:40:16

Q    Okay.

A    And so I did not accept the -- any given
item as sacrosanct, but I accepted the overall
expectation taken as a whole as a reasonable
expectation.    11:40:29

Q    Okay.  But you understood that the
revenue projections reflected in these Blake Brown
forecasts incorporated these growth percentage
assumptions, correct?

MS. CONNOLLY:  Objection.    11:40:39

THE WITNESS:  That is one of the elements
used to arrive at the overall expectation.

MR. KALTGRAD:  Can we get 21798?  I'm
sorry, what number are we on?

THE STENOGRAPHIC REPORTER:  Five.    11:41:13

Page  72

"To calculate the free cash flow for          11:59:57

Blake Brown, you start with EBITDA

forecasts from 2024 through 2030

prepared by Deloitte Consulting LLP,

Deloitte, in July 2024 before the          12:00:07

online manipulation began."

Why did you use the date of 2024?

MS. CONNOLLY:  Objection.

THE WITNESS:  Because at the time, I

thought that's when they were prepared.  I now          12:00:17

understand they were probably originally prepared in

2023.  That was not apparent to me at the time.  But

they were used by the company in 2024 and adopted by

the company as their projections in 2024.  So my

statement was factually in error.  But functionally          12:00:36

irrelevant because the company endorses them as of

2024.  And actually endorses them as of today as to

what they believe would have been achievable as of

that time.  So I apologize for the misstatement, but

it has no impact on my analysis.          12:00:56

BY MR. KALTGRAD:

Q    No need to apologize.  What do you mean

by the company endorsed them in 2024?

A    By making the projection, by putting them

in their analysis in 2024, the company was stating,          12:01:08

Page 88

and has stated to me through my discussions with the    12:01:11
company, that in 2024, that was their then good
faith belief based on their own analysis that they
had done in the intervening year since Deloitte had
prepared the original analysis, that those    12:01:29
projections were, in fact, reasonable and
achievable.

      And that, in fact, now -- when I say now,
I mean a few weeks ago when I spoke to them -- with
hindsight they believe today, given everything they    12:01:51
know that just happened, had the online manipulation
not occurred, they were, in fact, still reasonable
and still believe that those were reasonable
projections, the most reasonable expectations that
could have been and would have been achieved but for    12:02:08
the online manipulation.

     Q   You said by putting them in their
analysis in 2024.  What do you mean by that?

     A   By putting them in the documents, the
2024 documents that I cite to.  These are 2024    12:02:22
documents, even though Deloitte's underlying
projection had been prepared a year earlier.

     Q   And you're referring to the PowerPoint
presentation that says July 2024 on there?

     A   Yes.    12:02:41

Page 89

Q    Okay.  Your understanding is this    12:02:41
PowerPoint presentation was prepared in July of
2024?

MS. CONNOLLY:  Objection.

THE WITNESS:  I think so.  But more    12:02:59
importantly, whenever it was prepared, the company
confirms that as of just before the online
manipulation, they believed both at the time and
with hindsight -- I know I said this before but I'm
just referring back to my prior statement -- that    12:03:18
those projections were reasonable for all the
reasons I said previously.  I won't repeat myself.

BY MR. KALTGRAD:

Q    When you say "the company confirms", are
you saying based on your conversations with Blake    12:03:30
Brown executives as part of your report?

A    Yes.

Q    That was a "yes"?

A    Yes.

Q    Do you know if any changes were made to    12:03:45
the Blake Brown forecast between July of 2023 and
any time in 2024?

A    The only change, which I did not rely on,
was the update that they made on their own, which
was after the launch, they thought they would do    12:04:02

Page 90

PowerPoint presentations?                           12:44:38

MS. CONNOLLY:  Objection.

THE WITNESS:  I don't know.  I don't think about documents that way.

BY MR. KALTGRAD:                                    12:44:54

Q   You don't recall seeing audited financial statements for Family Hive, correct?

MS. CONNOLLY:  Objection.

THE WITNESS:  I don't remember audited financials.  Don't remember that they have an audit,   12:45:03 but I -- so I guess the answer is, I don't remember.

BY MR. KALTGRAD:

Q   You also mentioned case documents.  Do you know what case documents you're referring to in this footnote?                                     12:45:12

A   That's just -- I used to speak English, I'm sorry.

That is just a generic statement. Meaning, just everything I've seen in the case.  By the way, this -- let me -- can I add something?   12:45:20 It's really a reference to a prior answer, but this is probably as good a time as any to mention it.

When I was talking about the Deloitte projection and the 2024 versus 2023 date confusion because the documents stated one thing but the   12:45:38

Page 95

underlying source documents another, I don't know if   12:45:40

I screwed up the referencing or whatever.  I

understand that the document itself is from 2023,

even though it's dated 2024.  What I tried to say

and may not have been as clear as I should have is   12:45:57

that the company -- I will use the word "endorsed,"

for lack of a better term -- that statement -- those

projections, as reasonable in 2024, as their view of

the world then.  And then, in my discussions with

them, as I've already said many times on the record,   12:46:13

endorsed that as what they thought was the

reasonable base case in 2024 and today.

So I understand the date of the document

was earlier, but they incorporated that as their

view of the world in 2024, even though the document   12:46:33

was from a prior period.  So I probably didn't say

that cleanly before.  I just wanted to hopefully

make it clean now.

Q    Okay.  How do you know they incorporated

it in 2024?  Is that based on your discussions you   12:46:45

had with them?

A    Yes.

MS. CONNOLLY:  Objection.

BY MR. KALTGRAD:

Q    On page 23 of your report, the second   12:47:07

Page 96

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Dated this 26th day of November, 2025.

ASHLEY SOEVYN

CSR No. 12019

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127