# EXHIBIT 2

## FILED
## UNDER SEAL

**Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order**

**United States District Court**
**Southern District of New York**
**Case No. 1:24-cv-10049-LJL**

**Blake Lively**

v.

**Wayfarer Studios LLC, Justin Baldoni, Jamey Heath,**
**Steve Sarowitz, It Ends With Us Movie LLC, Melissa**
**Nathan, The Agency Group PR LLC, Jennifer Abel, Jed**
**Wallace and Street Relations Inc.**

---

**Expert Report of Michael J. Wagner**

**November 03, 2025**

**Volume I**

# Blake Lively v. Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, Jennifer Abel, Jed Wallace and Street Relations

## Expert Report of Michael J. Wagner

## Volume 1

<table>
<tr><td>Tab #</td><td>Description</td></tr>
<tr><td>1</td><td>Expert Report of Michael J. Wagner</td></tr>
<tr><td>2</td><td>Damages Analysis</td></tr>
<tr><td>3</td><td>Curriculum Vitae of Michael J. Wagner</td></tr>
<tr><td>4</td><td>List of Documents Considered</td></tr>
</table>

**LitiNomics**

# Tab 1

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**United States District Court**

**Southern District of New York**

**Case No. 1:24-cv-10049-LJL**

**Blake Lively**

**v.**

**Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, Jennifer Abel, Jed Wallace and Street Relations Inc.**

---

**Expert Report of**

**Michael J. Wagner**

**November 3, 2025**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

I.   INTRODUCTION ..................................................................................................................... 1

II.  QUALIFICATIONS ................................................................................................................. 1

III. BACKGROUND ...................................................................................................................... 4

    A. PARTIES TO THE LITIGATION ............................................................................................ 4

       1.   Blake Lively ............................................................................................................ 4

       2.   Wayfarer Studios LLC ............................................................................................ 4

       3.   Justin Baldoni ......................................................................................................... 4

       4.   Jamey Heath ............................................................................................................ 5

       5.   Steve Sarowitz ........................................................................................................ 5

       6.   It Ends With Us Movie LLC ................................................................................... 5

       7.   Melissa Nathan ....................................................................................................... 5

       8.   The Agency Group PR LLC .................................................................................... 5

       9.   Jennifer Abel ........................................................................................................... 5

       10.  Jed Wallace ............................................................................................................. 6

       11.  Street Relations Inc. ................................................................................................ 6

    B. BLAKE LIVELY ENTITIES AND BRANDS ........................................................................... 6

       1.   Family Hive LLC .................................................................................................... 6

       2.   Betty B Holdings LLC ............................................................................................ 7

    C. BLAKE LIVELY'S CLAIMED DAMAGES ............................................................................ 7

IV.  SUMMARY OF OPINIONS ................................................................................................... 9

    A. DISAGREEMENTS THAT ARE RELEVANT TO ALL OF THE DAMAGES CALCULATED BY BLAKE LIVELY'S
       EXPERT WITNESSES ....................................................................................................... 9

    B. DISAGREEMENTS WITH THE DAMAGES OPINIONS AND BASES OF OPINIONS OF JEFFREY KINRICH ............. 9

    C. DISAGREEMENTS WITH THE DAMAGES OPINIONS AND BASES OF OPINIONS OF MICHAEL SIPPEL AND
       RICHARD MARKS: ......................................................................................................... 10

    D. DISAGREEMENTS WITH THE DAMAGES OPINIONS AND BASES OF OPINIONS OF PROFESSOR ASHLEE
       HUMPHREYS ................................................................................................................. 10

V.   BASES FOR OPINIONS ....................................................................................................... 11

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

A. Disagreements that are relevant to all of the damages calculated by Blake Lively's Expert Witnesses .................................................................................................................. 11

    1. The damages calculations of Blake Lively's experts do not account for the fact that Blake Lively received negative press prior to August 2024 and that many of the negative press articles in August 2024 relate to issues that are unrelated to Defendants. ........................... 11

    2. Based on Nicole Alexander's opinions, Blake Lively's experts do not have any basis to conclude damages related to the Alleged Retaliation Campaign. ........................................ 13

B. Disagreements with the Damages Opinions and Bases of Opinions of Jeffrey Kinrich ........... 15

    1. The damages related to lost profits and lost royalties calculated by Mr. Kinrich are not properly included as damages to Blake Lively. ......................................................................... 15

    2. Mr. Kinrich has not demonstrated that Blake Brown lost any revenue or profit related to the Alleged Retaliation Campaign; even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit. ............................................................................................. 19

    3. Mr. Kinrich has not demonstrated that LOL HATA LLC lost any royalties related to Blake Brown, and even if some small amount of royalties was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost royalties, and his methodology significantly overstates the potential amount of lost royalties. ............................................... 31

    4. Mr. Kinrich has not demonstrated that Betty B Holdings has lost any Betty Booze revenue or profit related to the Alleged Retaliation Campaign; even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit. ....................................................................... 32

    5. Mr. Kinrich's analysis of damages includes several inputs that are unsupported or aggressive that result in significant overstatements of the damages. ................................... 40

    6. Mr. Kinrich's analysis of other celebrity brands does not corroborate his use of the projections that he relies upon. ............................................................................................. 54

C. Disagreements with the Damages Opinions and Bases of Opinions of Michael Sippel and Richard Marks: ................................................................................................................... 60

    1. Mr. Marks and Mr. Sippel appear to ignore certain constraints of Blake Lively's ability to accept acting or producing opportunities, including taking opportunities at the same time as her husband and the fact that her husband is the second highest paid actor in the world. ...................................................................................................................................... 60

    2. Mr. Marks opines about (and Mr. Sippel uses in his analysis) lost future compensation per film that far exceeds what Blake Lively has earned per film over the last 8+ years. ........ 61

    3. Mr. Marks and Mr. Sippel assume the only acting or producing opportunity that Blake Lively will obtain in the next five years is the actual role she played in the Secrets of the Penguins. Clearly, Blake Lively is going to get more acting and producing projects in the next five years. Ignoring this offset overstates the damages to Blake Lively's lost professional opportunities. ............................................................................................... 64

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

4.   Mr. Sippel uses different present value dates for his discounting of future damages and his prejudgment interest for past damages.............................................................. 66

5.   Mr. Sippel's alternative damages model is more appropriate than his other damage models. However, it is still aggressive to assume Blake Lively will consistently make as much earnings as she did in a peak year for the next five years.......................................... 66

D.   DISAGREEMENTS WITH THE DAMAGES OPINIONS AND BASES OF OPINIONS OF PROFESSOR ASHLEE HUMPHREYS.......................................................................................................... 67

1.   It appears that Professor Humphreys ignores the large amount of free positive publicity that would occur if Blake Lively wins this lawsuit, which is a necessary condition for and relevant to Professor Humpreys' cost to repair Blake Lively's reputation. ........................... 67

**VI.   DOCUMENTS, DATA AND OTHER INFORMATION CONSIDERED**.............................................. 67

**VII.   POTENTIAL ADDITIONAL ANALYSES TO PERFORM**..................................................... 68

**VIII.   COMPENSATION** ............................................................................................ 68

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

## I.    Introduction

1.    I have been retained on behalf of Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie, LLC, Melissa Nathan, The Agency Group PR LLC and Jennifer Abel to provide an opinion regarding the alleged damages claimed by Blake Lively in her Second Amended Complaint.[1] In forming the opinions I express in this report, I have no opinion on liability in this case. For purposes of my analysis, I have assumed liability on at least one cause of action that results in the damages addressed in my analysis. I have no opinions regarding liability.

2.    My opinions address the following matters:

- My disagreements with the opinions and bases of opinions of Jeffrey H. Kinrich expressed in his Expert Report dated October 17, 2025 ("Kinrich Report").

- My disagreements with the opinions and bases of opinions of Michael F. Sippel expressed in his Expert Report dated October 17, 2025 ("Sippel Report").

- My disagreements with the opinion and bases of opinions of Richard Marks expressed in his Expert Report dated October 17, 2025 ("Marks Report").

- My disagreements with the opinion and bases of opinions of Professor Ashlee Humphreys expressed in her Expert Report dated October 17, 2025 ("Humphreys Report").

## II.    Qualifications

3.    I am currently a Senior Advisor at LitiNomics, Inc., a financial and economic consulting firm specializing in the analysis of economic issues that arise in commercial disputes.

4.    I am a Certified Public Accountant (currently on inactive status after 35 years with an active license) and attorney (currently on inactive status after 38 years with an active license) licensed in the State of California. I have been a Partner at Price Waterhouse; a Managing Director at Putnam, Hayes & Bartlett; and a Senior Advisor at CRA International, a publicly traded management consulting firm.  I have a Bachelor of Science in Engineering, which I received from the University of Santa Clara in 1969.  I have a Master in Business Administration, which I

---

[1]    Second Amended Complaint for Sexual Harassment, Retaliation, Breach of Contract, False Light, Defamation, and Other Claims, Case No. 1:24-cv-10049-LJL, July 30, 2025 (hereafter, "Second Amended Complaint"), p. 21. [2.1] (Note: References in this report are to [Volume, Tab]).

1

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

received from U.C.L.A. in 1971.  I have a Juris Doctor degree, which I received from Loyola University School of Law at Los Angeles in 1975.

5.      I have specialized in the computation of commercial damages over the last 48 years of my professional career.  I have been qualified and testified at trial as an expert on financial matters, principally commercial damages, 146 times.  I have testified on financial issues in 39 arbitrations.  I also have been deposed 385 times on financial issues over my career.

6.      I have 33 professional publications, the majority of which deal with the computation of commercial damages (10 deal directly with patent damages).  The most significant publication is the Litigation Services Handbook, which went through the fourth edition while I was an editor. The book is a collaborative effort of many of the leading experts in the financial area.  I am the founding editor and continued as an editor for over 20 years.  The book has been recognized as authoritative by the Federal Judicial Center in its Treatise on Scientific Evidence: the Treatise's chapter on Economic Damages cited only five reference sources for further guidance to federal judges in the first two editions.  The Litigation Services Handbook was one of the five reference sources.

7.      I have served as a member of the Sedona Conference Patent Damages and Remedies Working Group (2011 - 2016) and was on the Panel of Experts for Dunn on Damages.

8.      I have served on a number of committees for the American Institute of Certified Public Accountants ("AICPA") including: the inaugural Certificate in Financial Forensics Credential Committee (2008 – 2011), the AICPA Litigation Services Committee (1993 – 1995), the AICPA Business Valuation Standards Task Force (1994 – 1995), the AICPA and IBA combined Conference Steering Committee (1995), the AICPA Litigation Services Conference Steering Committee (1990 – 1995), the AICPA Management Advisory Services Practice Standards and Administration Subcommittee (1988 – 1990), and the AICPA Auditing Standards Board Litigation Services Task Force (1989). I also served as a Co-Editor of the CPA Expert (1994 – 1996), a publication of the AICPA for CPAs who perform litigation services and business valuation.

9.      I have served on the California Society of CPAs Litigation Services Committee (1985 – 1990) and was Chairman of this committee (1987 – 1989). I have served on the California Society of CPAs Government Relations Committee (1989 – 1990) and the Contingent Fee Task Force (1988 – 1990).

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

10.    I have performed professional services in a number of entertainment industry litigations during my career. I have testified at trial five times (in four of the cases I was also deposed):

- I testified for Michael Landon in the Gursey v. Landon litigation (p. 21 of my C.V.)
- I testified for Virgin Vision in the Virgin Vision v. The Samuel Goldwyn Co. litigation (p. 20 and p. 57 of my C.V.)
- I testified for MCEG Virgin Vision in The Samuel Goldwyn Co. v. MCEG Virgin litigation (p. 18 and p. 55 of my C.V.)
- I testified for Billy Blanks in the Billy Blanks v. Seyfarth Shaw litigation (p. 15 and p. 44 of my C.V.)
- I testified for Jibe Audio in the Jibe Audio v. Dr. Dre litigation (p. 9 and p. 27 of my C.V.)

11.    I have testified in deposition in entertainment industry litigations that did not reach trial in six additional litigations:

- I testified for Dr. Oz in the Woodard v. Dr. Oz litigation (p. 25 of my C.V.)
- I testified for MP3.com in the Bob Dylan, Billie Joel, James Taylor v. MP3.Com litigation (p. 47 of my C.V.)
- I testified for MP3.com in the Fonomusic v. MP3.com litigation (p. 47 of my C.V.)
- I testified for MP3.com in the Zomba v. MP3.com litigation (p. 49 of my C.V.)
- I testified for MP3.com in the TeeVee Toons v. MP3.com litigation (p. 50 of my C.V.)
- I testified for J.H. Design in the J.H. Design v. The Walt Disney Company (p. 56 of my C.V.)

12.    I have also performed professional services for Dr. Phil in two litigations that were resolved before any testimony.

13.    My curriculum vitae, which details my qualifications, including a listing of all my publications and testimony is contained in Volume 1, Tab 3.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

## III.    Background

### A.  Parties to the Litigation

#### 1.    Blake Lively

14.    Blake Lively is an actress and entrepreneur who resides in New York, New York and co-starred in and served as an executive producer for, "It Ends With Us" (hereafter, "Film").[2]

#### 2.    Wayfarer Studios LLC

15.    Wayfarer Studios LLC ("Wayfarer") is a production company co-founded by Justin Baldoni and Steve Sarowitz and is a Delaware limited liability company with its principal place of business in California.[3] Wayfarer's "About Wayfarer" section on its company website provides the following overview of its business:[4]

> Wayfarer Studios is an independent studio actively developing, producing, and fully financing a slate of highly original, genre-defining, and globally impactful feature films, episodic television, documentaries, unscripted series, and podcasts. Co-founded by Justin Baldoni and Steve Sarowitz, and led by CEO Jamey Heath and President Tera Hanks, the studio's work highlights the power of human connection—debunking the traditional studio model by championing inspirational stories that serve as true agents for social change.

16.    Additionally, Wayfarer co-financed and produced the Film through its production entity, It Ends With Us Movie LLC and was the alleged employer of all cast and crew on set, including Ms. Lively.[5]

#### 3.    Justin Baldoni

17.    Justin Baldoni is a co-founder and co-chairman of Wayfarer and co-starred in, directed, and served as a producer for the Film.[6]

---

[2]  Second Amended Complaint, p. 21. [2.1]
[3]  Second Amended Complaint, p. 22. [2.1]
[4]  Wayfarer, "About Wayfarer," <https://www.wayfarerstudios.com/#about>, accessed October 14, 2025. [2.2]
[5]  Second Amended Complaint, p. 22. [2.1]
[6]  Second Amended Complaint, p. 22. [2.1]

4

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### 4. Jamey Heath

18.     Jamey Heath has been Wayfarer's Chief Executive Officer since March 2024, was President of Wayfarer during production of the Film, and resides in Los Angeles, California.[7]

### 5. Steve Sarowitz

19.     Steve Sarowitz is a co-founder and leading financier of Wayfarer who resides in Highland Park, Illinois.[8]

### 6. It Ends With Us Movie LLC

20.     It Ends With Us Movie LLC operates as a production entity of Wayfarer, with Wayfarer being its sole member.[9] It Ends With Us Movie LLC is a California limited liability company with its principal place of business in California and has entered into an agreement regarding Ms. Lively's acting services and regarding the contractual rider for the Film.[10]

### 7. Melissa Nathan

21.     Melissa Nathan is an individual who provides crisis management and communications services who launched The Agency Group PR LLC in January 2024 and resides in North Hollywood, California.[11]

### 8. The Agency Group PR LLC

22.     The Agency Group PR LLC ("TAG") is a Delaware limited liability company with its principal place of business in Santa Monica, California.[12]

### 9. Jennifer Abel

23.     Jennifer Abel is an individual who provides public relations services, serves as CEO and founder of RWA Communications LLC, and resides in Beverly Hills, California.[13]

---

[7]  Second Amended Complaint, p. 22. [2.1]
[8]  Second Amended Complaint, p. 22. [2.1]
[9]  Second Amended Complaint, p. 22. [2.1]
[10] Second Amended Complaint, p. 22. [2.1]
[11] Second Amended Complaint, p. 22. [2.1]
[12] Second Amended Complaint, p. 23. [2.1]
[13] Second Amended Complaint, p. 23. [2.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### 10. Jed Wallace

24.    Jed Wallace is an individual who resides in Dripping Springs, Texas.[14] He formed Street Relations LLC in 2007, which became Street Relations Inc. in 2008; he has been the sole owner and President of Street Relations, Inc. since its founding.[15]

### 11. Street Relations Inc.

25.    Street Relations Inc. is a "crisis mitigation firm engaged by clients to help navigate real-live human crisis, threats, trauma, and mental health concerns."[16] Since the founding of Street Relations, Inc. in 2007, Mr. Wallace has been the only officer and director of Street Relations, Inc.[17]

## B.   Blake Lively Entities and Brands

### 1.   Family Hive LLC

26.    Family Hive is the overarching entity for the Blake Brown Brand which is a hair care brand.[18] Blake Lively's entity, LOL HATA LLC owns a 40% interest in Family Hive LLC.[19] LOL HATA LLC is entitled to royalties from Family Hive LLC.[20] The royalties are set out in the Promotional Services and License Agreement dated March 4, 2022 between Family Hive LLC and LOL HATA LLC ("Lender"), which was entirely owned/controlled by Blake Lively ("Talent") as of that date.[21]

27.    During the License Term….Company shall pay to Lender (a) royalty equal to 5% of Wholesale Gross Sales ("Wholesale Royalties") and (b) a royalty equal to 10% of Consumer

---

[14] Declaration of Jed Wallace, individually and behalf of Street Relations, Inc., August 13, 2025, p. 1. [2.3]

[15] Declaration of Jed Wallace, individually and behalf of Street Relations, Inc., August 13, 2025, p. 2. [2.3]

[16] Declaration of Jed Wallace, individually and behalf of Street Relations, Inc., August 13, 2025, p. 2. [2.3]

[17] Declaration of Jed Wallace, individually and behalf of Street Relations, Inc., August 13, 2025, p. 2. [2.3]

[18] Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, p. 26. [2.4]

[19] Limited Liability Company Agreement of Family Hive LLC, March 4, 2022 (Exhibit 2 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), Exhibit A Capitalization Table, BL-000037766-819 at '808. [2.5]

[20] Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, p. 61. [2.4]

[21] Promotional Services and License Agreement, March 4, 2022 (Exhibit 3 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000037820-853 at '820,'829. [2.6]

6

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Gross Sales ("Consumer royalties" and together with Wholesale Royalties, "Product Royalties").[22] The royalties shall be paid in quarterly installments within 10 days after the end of each applicable calendar quarter.[23]

### 2.    Betty B Holdings LLC

28.    Betty Buzz LLC was contributed, transferred, and assigned to Betty B Holdings LLC as of February 24, 2023.[24] Blake Lively's interest in Betty B Holdings LLC is through LOL HATA LLC.[25] LOL HATA LLC owns a 32.78% interest (fully diluted interest of 30.415%) in Betty B Holding LLC.[26] LOL HATA LLC's interest in Betty B. Holding LLC was later diluted to 21.65%.[27]

## C.    Blake Lively's Claimed Damages

29.    I understand that Blake Lively's experts have generally described their assignments as calculating damages related to what they refer to as a "retaliation campaign" as summarized in the bullet list below, which I refer to in this report as the Alleged Retaliation Campaign.    While I understand Defendants deny involvement in any Alleged Retaliation Campaign, my analysis assumes its existence for purposes of rebutting the opinions of Plaintiff's damages experts.

- Ashlee Humphreys: "I was engaged by counsel on behalf of Blake Lively to analyze the impact to Ms. Lively's reputation, if any, from the retaliation campaign that was orchestrated by the Defendants to manipulate online discussion of Ms. Lively in August 2024. I have been asked to consider activity that occurred across both social and other digital media, such as online news, in my analysis."[28]  In addition, "I have also been asked (1) to calculate the number of impressions of the allegedly-defamatory statements […] made about Ms. Lively by Mr. Baldoni's attorney, Bryan Freedman […], (2) to analyze the reputational impact, if any, of the At-Issue Statements by evaluating the public response to them […], and (3) to

---

[22]  Promotional Services and License Agreement, March 4, 2022 (Exhibit 3 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), Section 4.1.1, BL-000037820-853 at '829. [2.6]

[23]  Promotional Services and License Agreement, March 4, 2022 (Exhibit 3 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), Section 4.2, BL-000037820-853 at '829. [2.6]

[24]  Betty B Holdings LLC Second Amended and Restated Limited Liability Company Agreement, May 29, 2023 (Exhibit 2 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000022233-301 at '234. [2.7]

[25]  Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 59. [2.8]

[26]  Betty B Holdings LLC, Second Amended and Restated Limited Liability Company Agreement, May 19, 2023 (Exhibit 2 to Deposition of Andrew T. Chrisomalis, September 24, 2025), Schedule of Members, BL-000022233-301 at '291. [2.7]

[27]  Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 76. [2.8] *See also*, Betty B Ownership Investment and Fully Diluted Percentages (Exhibit 3 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037497. [2.9]

[28]  Expert Report of Professor Ashlee Humphreys, October 17, 2025, p. 3.

7

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

estimate the costs to repair Ms. Lively's reputation based on the impact of those impressions."[29]

- Jeffrey Kinrich: "I understand that Ms. Lively alleges that the Defendants 'mount[ed] a sophisticated and well-funded retaliation campaign' that damaged her reputation and negatively affected the performance of her businesses, including her haircare business, Blake Brown, and beverage businesses, Betty Buzz and Betty Booze."[30]

- Richard Marks: "Ms. Lively alleges that the defendants "mount[ed] a sophisticated and well-funded retaliation campaign' […] that damaged Ms. Lively's reputation and resulted in lost professional opportunities. I have been asked to identify Ms. Lively's lost professional opportunities as a result of the defendants' alleged wrongful conduct based on entertainment industry custom and practice and my experience therewith."[31]

- Michael Sippel: "my assignment in connection with this lawsuit is to analyze and opine as to the amount of economic damages in the form of lost professional opportunities for acting, endorsements, and speaking engagements […] owed to Ms. Lively as a result of the Wayfarer Defendants' alleged wrongful conduct."[32]

30.    The amount of damages that Blake Lively suffered as claimed by her experts is as follows:

**Figure 1:    Summary of Blake Lively's Claimed Damages[33]**

| Type | Expert Calculating Damages | Minimum Amount | Maximum Amount |
|---|---|---|---|
| Blake Brown Lost Profits | Jeffrey H. Kinrich | $ 19,400,000 | $ 45,100,000 |
| Betty Booze Lost Profits | Jeffrey H. Kinrich | $ 7,900,000 | $ 28,300,000 |
| Blake Lively's Lost Royalties from Blake Brown | Jeffrey H. Kinrich | $ 12,300,000 | $ 70,200,000 |
| Blake Lively's Lost Professional Opportunities | Michael F. Sippel | $ 41,550,956 | $ 87,793,592 |
| Cost to Repair Blake Lively's Reputation | Ashlee Humphreys | $ 14,625,160 | $ 24,375,267 |
| **Total Damages** | | **$ 95,776,116** | **$ 255,768,859** |

31.    Mr. Sippel performed an alternative calculation of Blake Lively's Lost Professional Opportunities based on Blake Lively's last year of earnings just prior to the alleged wrongful acts

---

[29] Expert Report of Professor Ashlee Humphreys, October 17, 2025, p. 3.
[30] Kinrich Report, p. 1.
[31] Marks Report, p. 1.
[32] Sippel Report, p. 2.
[33] Kinrich Report, p. 4. *See also* Sippel Report, p. 3. *See also* Humphreys Report, p. 6.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

totaling $11,750,000. The amount of damages using Blake Lively's last year of earnings as his basis for her next five years of "but for" earnings results in a damages amount of $34,300,124,[34] which is lower than his minimum amount damages.

## IV.    Summary of Opinions

### A.    Disagreements that are relevant to all of the damages calculated by Blake Lively's Expert Witnesses

- The damages calculations of Blake Lively's experts do not account for the fact that Blake Lively received negative press prior to August 2024 and that many of the negative press articles in August 2024 relate to issues that are unrelated to Defendants.

- Based on Nicole Alexander's opinions, Blake Lively's experts do not have any basis to conclude damages related to the Alleged Retaliation Campaign.

### B.    Disagreements with the Damages Opinions and Bases of Opinions of Jeffrey Kinrich

- The damages related to lost profits and lost royalties calculated by Mr. Kinrich are not properly included as damages to Blake Lively.

- Mr. Kinrich has not demonstrated that Blake Brown lost any revenue or profit related to the Alleged Retaliation Campaign; even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit.

- Mr. Kinrich has not demonstrated that LOL HATA LLC lost any royalties related to Blake Brown, and even if some small amount of royalties was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost royalties, and his methodology significantly overstates the potential amount of lost royalties.

- Mr. Kinrich has not demonstrated that Betty B Holdings has lost any Betty Booze revenue or profit related to the Alleged Retaliation Campaign; even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit.

- Mr. Kinrich's analysis of damages includes several inputs that are unsupported or aggressive that result in significant overstatements of the damages.

---

[34]  Expert Report of Michael Sippel, October 17, 2025, p. 11, ¶ 44, see Exhibit D.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

- o Mr. Kinrich includes a shutdown scenario in his lost analyses that is not supported by any evidence and results in significantly overstated damages.
- o Mr. Kinrich has not established that the Alleged Retaliation Campaign would be expected to have a permanent effect on the sales of the products at issue; therefore, calculating damages to Betty Booze and Blake Brown (and related royalties to Blake Lively) into perpetuity overstates any possible damages to these entities.
- o Mr. Kinrich appears to have not considered all of the risks relevant to calculate the appropriate discount rate to the cash flows he is bringing to present value.
- o Mr. Kinrich's Present Value Date of the Trial Date is not appropriate. His Analysis is an "ex ante" approach and so should be discounted to the date of injury in August 2024.

- Mr. Kinrich's analysis of other celebrity brands does not corroborate his use of the projections that he relies upon.

## C. Disagreements with the Damages Opinions and Bases of Opinions of Michael Sippel and Richard Marks:

- Mr. Marks and Mr. Sippel appear to ignore certain constraints of Blake Lively's ability to accept acting or producing opportunities, including taking opportunities at the same time as her husband and the fact that her husband is the second highest paid actor in the world.

- Mr. Marks opines about (and Mr. Sippel uses in his analysis) lost future compensation per film that far exceeds what Blake Lively has earned per film over the last 8+ years.

- Mr. Marks and Mr. Sippel assume the only acting or producing opportunity that Blake Lively will obtain in the next five years is the actual role she played in the Secrets of the Penguins. Clearly, Blake Lively is going to get more acting and producing projects in the next five years. Ignoring this offset overstates the damages to Blake Lively's lost professional opportunities.

- Mr. Sippel uses different present value dates for his discounting of future damages and his prejudgment interest for past damages.

- Mr. Sippel's alternative damages model is more appropriate than his other damage models. However, it is still aggressive to assume Blake Lively will consistently make as much earnings as she did in a peak year for the next five years.

## D. Disagreements with The Damages Opinions and Bases of Opinions of Professor Ashlee Humphreys

- It appears that Professor Humphreys ignores the large amount of free positive publicity that will occur if Blake Lively wins this lawsuit, which is a necessary condition for and relevant to Professor Humpreys' cost to repair Blake Lively's reputation.

10

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

32.    The bases for my opinions will be explained in the next section of my Expert Report. In the next section I also explain some qualitative disagreements with Blake Lively's experts' opinions and bases for opinions.

## V.    Bases for Opinions

### A.    Disagreements that are relevant to all of the damages calculated by Blake Lively's Expert Witnesses

**1.    The damages calculations of Blake Lively's experts do not account for the fact that Blake Lively received negative press prior to August 2024 and that many of the negative press articles in August 2024 relate to issues that are unrelated to Defendants.**

33.    Even if the methodologies used by Blake Lively's experts could be used to calculate damages related to negative press in August 2024 and thereafter for Blake Lively in general, their methodologies do not perform any analysis that separates out or apportions the impact from Defendants' actions versus negative press that has nothing to do with Defendants. For example, the list below provides examples of negative press for Blake Lively that either occurred between January 2023 and early August 2024 that have no apparent connection to Defendants:

- January 2023 and thereafter: Negative press over Blake Lively being cast as Lily in It Ends With Us.[35]

- June-July 2023: Negative press over Blake Lively selling an alcohol product when she does not drink, considered to be a cash grab.[36]

---

[35]  Randee Dawn, "Colleen Hoover Fans are Divided over Blake Lively's 'It Ends With Us' Casting," January 27, 2023, Today, <https://www.today.com/popculture/movies/blake-lively-it-ends-with-us-casting-backlash-explained-rcna67895>, accessed November 3, 2025. [6.9] *See also* Mehera Bonner, "Twitter is Extremely Upset About Blake Lively's New Movie Role," January 27, 2023, Cosmopolitan, <https://www.cosmopolitan.com/entertainment/celebs/a42684209/blake-lively-it-ends-with-us-backlash/>, accessed November 3, 2025. [6.10] *See also* Kay Banks, "Social Media Melts Down over Blake Lively's Upcoming Movie Role," January 27, 2023, Nickiswift, <https://www.nickiswift.com/1180321/social-media-melts-down-over-blake-livelys-upcoming-movie-role/>, accessed November 3, 2025. [6.11]

[36]  Amber Raiken, "Non-Drinker Blake Lively Sparks Backlash with Launch of Alcohol Brand: 'Genuinely Confused'," June 29, 2023, The Independent, <https://www.the-independent.com/life-style/blake-lively-betty-booze-alcohol-brand-b2366699.html>, accessed November 3, 2025. [6.12] *See also* Leah Bitsky, "Non-Drinker Blake Lively Accused of 'Cash Grab' as She Launches Alcohol Brand," June 29, 2023, Page Six, <https://pagesix.com/2023/06/29/non-drinker-blake-lively-accused-of-cash-grab-as-she-launches-alcohol-brand/>, accessed November 3, 2025. [6.13] *See also* Lindsay Lowe, "Blake Lively Faces Backlash from Fans for Betty Booze Line," July 3, 2023, Today, <https://www.today.com/food/news/blake-lively-betty-booze-backlash-rcna92387>, accessed November 3, 2025. [6.14] *See also* Carly Johnson, "Blake Lively Sparks Backlash from 'Confused' Fans Over Launch of Her New Alcoholic Beverages After Admitting she NEVER Drinks Booze," June 29, 2023, Daily Mail, <https://www.dailymail.co.uk/tvshowbiz/article-12245529/Blake-Lively-sparks-

11

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

- March 2024: Negative press related to Blake Lively making light in a Betty Buzz post of Kate Middleton's release of an edited photograph after she had been out of the public eye, then apologizing after Kate Middleton announced she had cancer.[37]

- August 7, 2024: Negative press over Blake Lively being selected as cover for Vogue magazine.[38]

34.    Further, Betty Booze's own analysis of the negative social media content it received related to its posts reflected issues that apparently have nothing to do with Defendants, including but not limited to "Domestic Violence Advocacy in connection with Booze (tone-deaf)" and "Promoting brands in relationship to DV."[39]

35.    For all the different categories of the alleged damages being claimed by Blake Lively as a result of the Alleged Retaliation Campaign, there must be an apportionment of the alleged damages claimed between the alleged damages suffered by Blake Lively caused by the Alleged Retaliation Campaign and all other negative articles and social media content that were not part of the Alleged Retaliation Campaign.  As mentioned above, there were other negative public commentaries about Blake Lively in the years before and at this time that were not caused by the Defendants in this action.

36.    If negative publicity about Blake Lively is the sole cause of the decline in professional acting and producing opportunities, sales of Blake Brown, and sales of Betty Booze then only the amount of harm caused by the negative publicity related to the Alleged Retaliation Campaign should be included in damages. Currently, none of Blake Lively's experts have made

backlash-fans-launching-alcoholic-beverages-despite-TEETOTAL.html>, accessed November 3, 2025. [6.15] *See also* Flic Everett, "The Hypocrisy of Sober Celebs Flogging Us Booze," July 12, 2023, Daily Mail, <https://www.dailymail.co.uk/femail/article-12292281/The-hypocrisy-sober-celebs-flogging-booze.html>, accessed November 3, 2025. [6.16]

[37] Miranda Siwak, "Blake Lively Seemingly Pokes Fun at Kate Middleton Photoshop Scandal for Betty Buzz Promotion," March 16, 2024, US Weekly, <https://www.usmagazine.com/celebrity-news/news/did-blake-lively-poke-fun-at-kate-middleton-photoshop-scandal/>, accessed November 3, 2025. [6.17] *See also* Charna Flam, "Blake Lively Apologizes for 'Photoshop Fails' Post After Kate Middleton's Cancer News," March 22, 2024, People, <https://people.com/blake-lively-kate-middleton-photoshop-fails-apology-8619479>, accessed November 3, 2025. [6.18] *See also* Chloe Stewart, "Blake Lively Apologises After She's Slammed Over 'Insensitive' Kate Middleton Post," March 22, 2024, The Mirror, <https://www.mirror.co.uk/3am/us-celebrity-news/blake-lively-apologises-after-shes-32421707>, accessed November 3, 2025. [6.19] *See also* Eve Batey, "Blake Lively Apologizes to Kate Middleton for 'Silly Post' Following Cancer Announcement," March 23, 2024, Vanity Fair, <https://www.vanityfair.com/style/blake-lively-kate-middleton-instagram-apology>, accessed November 3, 2025. [6.20]

[38] Jay Stahl, "Blake Lively Receives Backlash for Controversial Vogue Cover," August 7, 2024, USA Today, <https://www.usatoday.com/story/entertainment/celebrities/2024/08/07/blake-lively-vogue-cover-backlash/74702305007/>, accessed November 3, 2025. [6.21]

[39] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8132_A. [2.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

any attempt to calculate damages limited to this subset of negative publicity related to Blake Lively.

37.    I am not aware that Blake Lively's experts have even considered whether all of the negative press in August 2024 and thereafter can be attributed to Defendants actions, let alone concluded that it is properly attributed to Defendants' actions.

**2.    Based on Nicole Alexander's opinions, Blake Lively's experts do not have any basis to conclude damages related to the Alleged Retaliation Campaign.**

38.    In addition to my opinions expressed in this report, I understand that Defendants' expert Nicole M. Alexander analyzed several key questions relating to Defendants alleged conduct, including "(1) does Ms. Lively's social media patterns exhibit signs of coordinated manipulation or are they typical for a celebrity under media spotlight? (2) Did the sentiment shifts indicate reputational harm beyond normal publicity fluctuations? (3) Did the online activity correlate with any actual damage to Ms. Lively's commercial interests?"[40]  Based on her analysis, I understand that Ms. Alexander has reached the following opinions:[41]

> **Opinion 1**: The social media activity surrounding Ms. Lively during August 2024 through February 2025 exhibited patterns consistent with organic public discourse driven by legitimate news cycles, film publicity, and entertainment media coverage, rather than coordinated manipulation or astroturfing.
>
> **Opinion 2**: The August 2024 spike in social media volume coincided directly with the theatrical release of It Ends With Us and surrounding promotional events, following temporal patterns characteristic of major entertainment publicity cycles. The $4.9\sigma$ statistical deviation, while extraordinary, reflects organic news-driven interest rather than manufactured manipulation.
>
> **Opinion 3**: Sentiment analysis demonstrates that overall online conversation about Ms. Lively remained predominantly positive throughout the relevant period, with 63% Positive, 20% Neutral, and 17% Negative sentiment (Figure B-3) inconsistent with coordinated negative campaigns, which typically exhibit sentiment homogeneity (60-80% negative) and focused negative messaging. Time series forecasting analysis further demonstrates that the August 2024 spike had no lasting impact on sentiment trajectory, with comparative forecasts converging to nearly identical endpoints (difference: 0.010, well below the 0.05 significance threshold). This convergence pattern is characteristic of temporary organic event responses, not sustained

---

[40]  Expert Report of Nicole M. Alexander, November 3, 2025, p. 9.
[41]  Expert Report of Nicole M. Alexander, November 3, 2025, pp. 74-76.

13

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

manipulation campaigns which would show permanent trajectory shifts. The sentiment patterns observed here are typical for entertainment content during major publicity events.

**Opinion 4**: Network structure analysis revealed decentralized, diffuse engagement patterns characteristic of organic spread, with no evidence of centralized amplification hubs, bot networks, or coordinated influencer activity. Network metrics (density 0.0023, clustering coefficient 0.089, top-10 accounts <5% of volume) all indicate authentic word-of-mouth rather than manufactured amplification.

**Opinion 5**: Cross-platform meta-analysis confirmed synchronous timing across all five platforms (peak activity within 48-72 hours), proportional distribution stability, and identical decay patterns (87% decline in September). This cross-platform consistency supports interpretation of authentic public interest driven by a common external stimulus (the film release) rather than manufactured activity.

**Opinion 6**: The distinctive signatures of coordinated manipulation campaigns (including repetitive phrasing, synchronized posting, anomalous account behavior, centralized network structures, sustained elevation, platform concentration, and new account clustering) were systematically absent from the dataset.

**Opinion 7**: Content analysis revealed substantial topical diversity, natural linguistic variation, and absence of focused negative messaging, all inconsistent with coordinated campaigns and indicative of authentic public discourse.

**Opinion 8**: I identified no measurable commercial harm to Ms. Lively's brand partnerships or business ventures attributable to online discourse during the relevant period. The film's exceptional box office performance ($351 million worldwide), stable brand sentiment for Betty Buzz/Betty Booze, and continued professional opportunities all contradict claims of material reputational damage.

**Opinion 9**: The methodologies employed in this analysis meet established Daubert standards for scientific reliability, having been extensively peer-reviewed, tested with known error rates, and generally accepted within the relevant expert communities of marketing science, computational social science, and digital analytics.

**Opinion 10**: The December 2024 spike (12,871 items), larger than the August spike, corresponded precisely with lawsuit filing and media coverage, further confirming that social media volume responds predictably to major news events regardless of their relationship to any alleged manipulation campaign.

**Opinion 11**: Marketplace outcomes in the business records I reviewed, including retail expansion, volume growth, and revenue performance above plan, are more consistent with expected category trends than with substantial consumer response to the alleged negative narratives.

14

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

39.     Based on Nicole Alexander's opinions, there does not appear to be any diminution of reputation of Blake Lively that would cause any of the damages calculated by Blake Lively's experts.

## B. Disagreements with the Damages Opinions and Bases of Opinions of Jeffrey Kinrich

40.     As summarized in Figure 1 above, Mr. Kinrich's opinions address (i) what he refers to as lost profits that relate to two businesses promoted by Blake Lively (Blake Brown and Betty Booze) and (ii) lost royalties related to Blake Brown.  Based on my review of Mr. Kinrich's opinions, I conclude that (i) the damages calculated by Kinrich related to lost profits and lost royalties are not properly included as damages to Blake Lively; (ii) Mr. Kinrich has not demonstrated that Blake Brown or Betty Booze have lost any revenue or profit from the Alleged Retaliation Campaign, and even if some amount of revenue was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue, and his methodology significantly overstates the potential amount of lost revenue; (iii) because Blake Lively's royalties are based on Blake Brown revenue, Mr. Kinrich has not established that Blake Lively lost royalties; (iv) Mr. Kinrich's analysis of damages includes several inputs that are unsupported or aggressive that result in significant overstatements of the damages; and (v) Mr. Kinrich's analysis of other celebrity brands does not corroborate his use of the projections that he relies upon.

41.     I discuss the bases for my conclusions in the sections below.

### 1. The damages related to lost profits and lost royalties calculated by Mr. Kinrich are <u>not</u> properly included as damages to Blake Lively.

42.     Mr. Kinrich explains in his summary that "[d]amages are calculated as the difference between the but-for profits for Blake Brown and the actual profits in each case, multiplied by Ms. Lively's ownership percentage in Blake Brown."[42]  Essentially, Mr. Kinrich's calculation attempts to estimate the amount of profit that Blake Brown lost due to the Alleged Retaliation Campaign, and then simply multiply that amount by Blake Lively's ownership percentage.  However, while the amount of profit that Blake Brown lost due to the Alleged Retaliation Campaign could conceivably be considered lost profits to *Blake Brown* if Blake Brown had standing in this case, that lost profit amount <u>is not</u> lost profits (or damages) to *Blake Lively*.  Further, simply multiplying by Blake Lively's ownership percentage does not make it lost cash flow damages to Blake Lively.

---

[42]  Kinrich Report, p. 2.

15

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

43.     For Ms. Lively to be damaged due to a loss of income or cashflow, Mr. Kinrich would need to demonstrate that *Ms. Lively* actually earned less income in the past or would be expected to earn less income in the future due to the causes of action.  However, lost past or future income to a different entity (in this case, Blake Brown) is not lost past or future income to Ms. Lively.  I note that in this case, there is at least one entity that sits between Ms. Lively and Family Hive LLC: LOL HATA LLC.  Mr. Kinrich assumes that LOL HATA LLC is 100% owned and controlled by Blake Lively, citing to a Promotional Services and License Agreement dated March 4, 2022.[43] Even accepting that representation as true, that agreement reflects the ownership of LOL HATA LLC as of March 2022, not today.  The two corporate representatives that were asked about LOL HATA LLC did not know the ownership details for that entity.[44]  Mr. Kinrich has not cited anything that supports that Blake Lively owns 100% of LOL HATA LLC as of today, nor that she would receive 100% of any payments to LOL HATA LLC.

44.     Regardless of LOL HATA LLC ownership, Mr. Kinrich has not demonstrated that any cash would flow from Family Hive LLC to LOL HATA LLC.  In fact, a "Deloitte Busines Plan – Cash Requirements" document was produced by Ms. Lively, and Ms. Tedesco testified that it "is a document that was prepared for shareholders by GBB that detailed the cash required for the Deloitte business plan. […] I know it was GBB [that created it]. It was created to supplement the Deloitte business plan because cash flow hadn't been detailed out in that plan."[45]  That cash plan does not reflect any cash outflow from Family Hive to its owners, and instead requires a capital contribution of $5 million in 2024, with no repayment of that contribution included in the plan.[46] Therefore, Mr. Kinrich has no basis to opine that LOL HATA LLC (or Ms. Lively) would receive *any* cash from the operations of Family Hive in the but-for world, let alone that Ms. Lively would somehow lose a significant amount of income payments.

---

[43]  Kinrich Report, p. 35, fn 143. *See also* Promotional Services and License Agreement, March 4, 2022, (Exhibit 3 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000037820-853. [2.6]

[44]  Ms. Tedesco testified that she doesn't "know the ins and outs of LOL HATA and its relationship to Blake." (Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, p. 58. [2.4]) When asked what ownership percentage Ms. Lively had in LOL HATA LLC, Mr. Chrisomalis testified that "I think it's 100 percent, but I'm not 100 percent sure," and when asked for the basis for his belief, he could not recall. (Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 63. [2.8])

[45]  Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, pp. 107-109. [2.4] *See also* Deloitte Business Plan – Cash Requirements, (Exhibit 10 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000039160-168. [2.10]

[46]  Deloitte Business Plan – Cash Requirements, (Exhibit 10 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000039160-168 at '164. [2.10]

16

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

45.     For example, this concept of whether an owner or a related entity to a company that potentially lost profits could collect such lost profits has been addressed by the Federal Circuit in the context of patent infringement cases.  In *Mars vs. Coinco*, the Federal Circuit established a test that the lost profits must inexorably flow to the patent owner (the individual or entity that has standing to bring the lawsuit): "Because we conclude that MEI's profits did not--as Mars argued--flow inexorably to Mars, we, like the Poly-America court, need not decide  whether a parent company can recover on a lost profits theory when profits of a subsidiary actually do flow inexorably up to the parent. We hold simply that the facts of this case cannot support recovery under a lost profits theory."[47]  Mr. Kinrich has not demonstrated that any profits or cash flow of Blake Brown flows to Blake Lively, let alone that it inexorably flows.

46.     The same logic discussed above applies with respect to lost profits for Betty Booze as well.  Specifically, the method of estimating lost profits through lost free cash flow to *Betty Booze* that Mr. Kinrich employs for his calculation of lost profits does not estimate any amount that is properly included as damages to *Blake Lively*, and those are the damages that are relevant in this matter.

47.     Ms. Lively has ownership of Betty B Holdings LLC through LOL HATA LLC, the entity she owned at least as of 2022.  The October 1, 2024 presentation that Mr. Kinrich uses as the basis for his but-for scenario includes a cash flow projection, and over the projection period through 2028, the cash flow projection does not include any distribution of cash to owners,[48] as reflected in Figure 2 below.  Instead, the cash flow projection reflects an equity infusion and a loan in 2024, then a further equity infusion and loan in 2026 to repay the 2024 loan.[49]  Therefore, there is no basis for Mr. Kinrich to assume that any income would flow to Ms. Lively from the operations of Betty B Holdings LLC.

---

[47]  *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008). [2.11] [citations omitted]

[48]  Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8125_A. [2.12]

[49]  Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8125_A. [2.12]

17

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 2:  Cash Projection and Financing Plan for Betty B Holdings, Excerpted from October 1, 2024 Presentation[50]**

## Current business plan requires $10mm plus repayment of debt

4. Betty B Con

| Cash Flow Projections | 2023A | 2024LE | 2025F | 2026F | 2027F | 2028F |
|---|---|---|---|---|---|---|
| Cash Flow | | | | | | |
| EBITDA | ($11,002,970) | ($9,300,389) | ($4,845,961) | $1,316,773 | $6,994,112 | $15,224,030 |
| (Increase) / Decrease in Working Capital | (1,197,837) | 426,910 | (2,618,668) | (2,502,704) | (1,840,202) | (2,918,591) |
| Cash Flow from Operations | ($12,870,377) | ($8,873,479) | ($7,464,629) | ($1,185,931) | $5,153,910 | $12,305,438 |
| Capital Expenditure | $0 | $0 | $0 | $0 | $0 | $0 |
| FCF | ($12,870,377) | ($8,873,479) | ($7,464,629) | ($1,185,931) | $5,153,910 | $12,305,438 |
| Beginning Cash Balance | $10,249,481 | $453,104 | $8,217,125 | $227,496 | $854,065 | $3,895,475 |
| FCF | (12,870,377) | (8,873,479) | (7,464,629) | (1,185,931) | 5,153,910 | 12,305,438 |
| Equity Infusion | A 3,074,000 | C 10,000,000 | 0 | D 7,000,000 | 0 | 0 |
| Loan | 0 | B 7,000,000 | 0 | E 2,000,000 | 0 | 0 |
| Interest on Loan | | (362,500) | (525,000) | (187,500) | (112,500) | 0 |
| Repayment of Loan | 0 | 0 | 0 | (7,000,000) | (2,000,000) | 0 |
| Ending Cash Balance | $453,104 | $8,217,125 | $227,496 | $854,065 | $3,895,475 | $16,200,913 |

A & B Completed

**C**

**2024 Q4**
- Funding: $10mm Equity Capital
- Anticipated Closing: Oct 31st 2024
- Uses of Funds: Growth Capital
- Redacted - Non-Responsive
- Runway: Mar 2026

**D**

- **2026 H1**
- Funding: $7mm Equity Capital
- Anticipated Closing: Q2 2026
- Uses of Funds: Repayment of existing shareholder debt
- Source: TBD

**E**

- **2026 Q2**
- Funding: Revolver $2mm Revolving Loan facility
- Anticipated Closing: Q2 2026
- Uses of Funds: Working capital needs
- Source: Banking Line of Credit
- Runway: Fully Funded

48.    And the same holds for the lost royalties calculations as well.  As discussed in Section V.B.3, the Blake Brown royalties are paid to LOL HATA LLC.  Blake Lively is not LOL HATA LLC, and as discussed above, there has been no analysis by Mr. Kinrich of the current ownership structure of LOL HATA LLC, let alone any analysis of its operations or whether any income would flow through to Blake Lively.  Therefore, Mr. Kinrich has not established that Blake Lively is entitled to any potential lost royalties of LOL HATA LLC.

49.    In conclusion, the method of estimating lost profits through lost free cash flow to *Family Hive* and *Betty B Holdings* that Mr. Kinrich employs for his calculation of lost profits does not estimate any amount that is properly included as damages to *Blake Lively*, and those are the damages that are relevant in this matter.  Further, Mr. Kinrich's estimate of lost royalties to *LOL HATA LLC* does not estimate any amount that is properly included as damages to *Blake Lively*.

---

[50]  Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8125_A. [2.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**2. Mr. Kinrich has not demonstrated that Blake Brown lost any revenue or profit related to the Alleged Retaliation Campaign; even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit.**

50.    Mr. Kinrich's analysis uses projections of EBITDA and other metrics from a Deloitte presentation that was sent by Deloitte to the Blake Brown team on July 18, 2023 and described as Deloitte's "final report as part of Deloitte's engagement with Family Hive."[51]  I note that Mr. Kinrich states this forecast was prepared in July 2024,[52] but he is incorrect.   The Deloitte presentation was clearly sent on July 18, 2023, Family Hive's witness, Ms. Tedesco, testified that it was her understanding the document was a July 2023 document despite being labeled July 2024, and the Deloitte spreadsheet that he relies upon was last modified on July 18, 2023 (the same date as the email sending the presentation).[53]  Therefore, the projection that Mr. Kinrich uses was created more than a year prior to the launch at Target, not weeks before the launch at Target as stated by Mr. Kinrich.

51.    Mr. Kinrich has not even attempted to justify why projections from July 2023 are reasonable to use as the basis of but-for revenue at the end of 2024 and beyond, likely because he thought the projections were from July 2024.  Given the company was a year away from launch at that point, any number of things could change, as I discuss in detail below.  For example, as demonstrated by two other Blake Lively-backed brands (Betty Buzz and Betty Booze), large changes in forecasts can be made in very short periods of time.  As I discuss in Section V.B.4 below, Betty Buzz projections went from November 2023 projections of more than $50 million of net revenue in 2028[54] to the company being wound down in 2025, and Betty Booze projections for 2024 net revenue were reduced three different times in an 11-month span, dropping from a projected $8.5 million down to $4.6 million.[55]  Given the significant changes in forecasts in the

---

[51] Email from Anastasia Adams, July 18, 2023 (Exhibit 6 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021797. [2.13] *See also* Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910. [2.14] *See also* BL-000039169.xlsm. *See also* Kinrich Report, p. 16, Appendix C.3.

[52] Kinrich Report, p. 16. ¶ 32.

[53] Email from Anastasia Adams, July 18, 2023 (Exhibit 6 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021797. [2.13] *See also* Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910. [2.14] *See also* BL-000039169.xlsm. *See also* Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, p. 70. [2.4]

[54] Schedule 3.5. [1.2]

[55] Schedule 3.1. [1.2]

19

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

same time period for other Blake Lively brands and Mr. Kinrich's failure to even address the intervening 12+ month period from the date of the Deloitte forecast to the date of the Alleged Retaliation Campaign, it is not reasonable for Mr. Kinrich to use the July 2023 projections, without adjustment, as the basis of his but-for projections.

52.    Further, these projections relied upon by Mr. Kinrich are clearly a "best case" outcome that are driven by the presentation's statement that "Ellender Brown's ambition is to be a global, multi-category beauty company with a +1B valuation,"[56] and that needed a lot of assumptions to hold true to have a chance to achieve the projections.  The Deloitte presentation includes an Appendix D that reflects a "June 26 [2023] Project Update" presentation, and that presentation walks through two scenarios for the Masstige Brand that was ultimately pursued – an "Ambition" case and a "Conservative" case.[57]  The "Ambition" case from the June 26th presentation includes net revenue and EBITDA projections in line with the final numbers presented in the presentation.[58]  By contrast, the "Conservative" case reflected 2030 net revenue and EBITDA that is about 44%  and 31% of the "Ambition" case, respectively.[59]

53.    Further, two slides later, the presentation explains the risks involved in the "Ambition" case, including a preamble stating: "[t]he masstige ambition assumptions are predicated on a set of conditions 'that need to be true', and have unique risks, particularly in product and productivity; these can be mitigated with upside potential in channel & product expansion."[60]  The slide proceeds to detail several implicit assumptions under a "what needs to be true?" header including assumptions for retail channels, product, productivity, and

---

[56] Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '799. [2.14]

[57] Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '868-869, '888-890. [2.14]

[58] The June 26th presentation forecasts $153.5 million of net revenue in 2030 and $23.9 million of EBITDA, as compared to the final forecast of $152.9 million of net revenue and $21.4 million of EBITDA. (Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '850, '889.) [2.14]

[59] The 2030 "Conservative" Masstige projection is $67.4 million of net revenue and $7.5 Million of EBITDA in 2030. $67.4MM / $153.5MM = 43.9%. $7.5MM / $23.9MM = 31.4%. (Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '889.) [2.14]

[60] Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '891. [2.14]

20

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

profitability.[61]  The final presentation has an almost identical "Haircare Financial Plan – Risks" slide, except that it drops the preamble, but still detailing the same "what needs to be true?" assumptions for retail channels, product, productivity, and profitability.[62]

54.     Therefore, it is clear that the final numbers that are relied upon by Mr. Kinrich as simply the "Ambition" case reflected in the June 26th presentation, and Mr. Kinrich's use of only the "Ambition" profit projection is not a reasonable projection to use.  In many places Mr. Kinrich attempts to argue that he is somehow being conservative,[63] yet when the very presentation that he uses presents an alternative "Conservative" forecast, Mr. Kinrich appears to ignore the alternative and focuses on the best-case "Ambition" projections.  And the presentation includes numerous statements about the risk inherent in the "Ambition" projections that were used.  For example, a discussion of the "Market Competitive Landscape" notes that "[v]ery few beauty companies in masstige or prestige achieve more than $100M in retail sales," and the first key takeaway is that "[h]aircare is an attractive category to launch EB.  However, competition is increasing, with few hair companies +$100M retail sales."[64]  Notably, the projections relied upon by Mr. Kinrich reflect Blake Brown reaching $116.9 million of retail sales by 2026 (two years from launch) and $280.7 million of retail sales by 2030, despite the caution that very few beauty companies achieve more than $100 million in such sales.[65]

55.     In addition, the fact that the "Ambition" projections that Mr. Kinrich relied upon were created more than a year prior to the launch date also raises serious concerns with his reliance upon those projections.  The Deloitte presentation includes a discussion of "Marketing & Execution" that would be necessary[66] – I'm not aware that Mr. Kinrich has performed any assessment that the execution steps were actually performed, likely because Mr. Kinrich believes

---

[61]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '891. [2.14]

[62]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '808. [2.14]

[63]  Kinrich Report, pp. 15 (fn 50), 22-23.

[64]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '800. [2.14]

[65]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '800, '805. [2.14]

[66]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '804. [2.14]

21

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

this is a July 2024 forecast[67] (weeks from the launch) instead of the fact that it is an August 2023 document.

56.     With respect to marketing, the strategy calls for "[s]ignificant Investment of an additional $2.2M launch spend in the first-year (total $2.9M in initial 12 months) boosts brand recognition at launch to disrupt and breakthrough in a crowded market. Given the competitive landscape, the brand is sustaining marketing investment, with plans to spend 20% net retailer revenues plus 25% of brand.com revenues."[68]  However, Blake Brown did not spend nearly these amounts of marketing expense.  For example, the launch occurred around August 4, 2024, so most of the projected $2.2 million of launch marketing expense would be expected to be incurred prior to or around that date.  However, Blake Brown's financials indicate that Blake Brown incurred only $812,510 of marketing expense through the end of August 2024 (well after launch),[69] reflecting that Blake Brown spent only about 37% of the expected launch marketing expense.[70]

57.     In addition to the Deloitte projections, Target itself provided pre-launch forecasts of the units per store per week that it expected for the Blake Brown products.  For example, a Blake Brown presentation notes that "Pre-Launch, Target forecast called for 11.57 units per store per week. Launch initially far outpaced that forecast but latest performance is underdelivering vs forecast."[71]  This Target pre-launch projection of 11.57 units per store per week is significantly lower than the underlying estimates used by Deloitte in its July 2023 modeling.  Figure 3 below compares the units per store per week in the Target pre-launch forecast to the assumption used in the underlying Deloitte projection.  As can be seen, despite the Target projections including 8 products relative to the 7 products included by Deloitte, the Deloitte projections are 23% higher than the Target pre-launch projection assumptions, and three of the seven products in the Deloitte projections have more than 75% higher projected sales.[72]

---

[67]  Kinrich Report, p. 16.

[68]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '804. [2.14]

[69]  The Family Hive 2024 actual results record $718,132 of marketing expense in January to July 2024 and $94,378 in August 2024, a total of $812,510. (Blake Brown Presentation, "Brand Update" (Exhibit 24 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000038373-382 at '376. [2.15])

[70]  $812,510 / $2,200,000 = 36.93%.

[71]  Blake Brown Presentation, "Blake Brown Media Impact Overview," November 13, 2024 (Exhibit 22 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000034377-432 at '380. [3.1]

[72]  Schedule 2.1. [1.2]

22

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 3:** **Comparison of Units per Store per Week in Target Pre-Launch Forecast and July 2023 Deloitte Forecast**[73]

| Blake Brown Presentation Product Name | Target Pre-Launch Forecast | Deloitte Forecast Product Name | Deloitte 2024 Forecast | Deloitte 2024 Forecast as Percent of Target Pre-Launch Forecast |
|---|---|---|---|---|
| Strengthening Shampoo | 1.89 | Repair Shampoo | 3.33 | 176% |
| Strengthening Mask | 1.21 | Repair Mask | 1.27 | 105% |
| Nourishing Shampoo | 2.00 | Nourishing Shampoo | 2.48 | 124% |
| Nourishing Mask | 0.93 | Nourishing Mask | 1.27 | 137% |
| Rich Reset Pre-Shampoo Mask | 1.15 | Pre-Shampoo Mask | 2.38 | 207% |
| All-In-Wonder | 1.33 | Detangler | 2.38 | 179% |
| Glam Mousse | 1.26 | Mousse | 1.16 | 92% |
| Dry Shampoo | 1.80 | N/A | N/A | |
| **Total** | **11.57** | | **14.26** | **123%** |

58.    Given that Target, the retailer that would be selling the product, knows much more about their business than Deloitte, provided the units per store per week projection, and the Target projection was almost certainly made much closer to the August 4, 2024 launch date than the July 2023 projections used by Mr. Kinrich, the Target pre-launch forecast would be a much more appropriate forecast to use than the July 2023 Deloitte projections used by Mr. Kinrich. Therefore, the Deloitte projections are significantly overstated. The fact that the Deloitte projections were built-up based on the overstated projections provides further facts that Mr. Kinrich's sole reliance on those projections is not reasonable.

59.    In addition, there are other differences which Mr. Kinrich has not accounted for between the underlying assumptions in the Deloitte forecast and what actually occurred, and those differences would be expected to impact sales and profitability of the Blake Brown products going forward. For example, as mentioned above, Blake Brown spent considerably less on its launch marketing than projected in the Deloitte forecast, which would be expected to have an effect on ongoing sales. Also, the launch date of This Ends With Us was moved to August 6, 2024, within days of the Target launch, which Family Hive's representative, Ms. Tedesco, testified impacted the performance of the Blake Brown brand:[74]

> We -- we found out about the movie date in that, maybe, like May/June
> time frame. Prior to that the intention was, you know, we have Blake

---

[73]  Schedule 2.1. [1.2]
[74]  Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, pp. 170-171. [2.4]

23

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

kind of like on uninterrupted, you know, no distractions to really devote to launching the brand.

And given the business models is built on her likeness and her, as someone who has major credibility and likability, credibility in the hair care space and overall popularity and likability, the intention was to be able to have her really be the face of the brand for ongoing basis post-launch.

When the movie premier date was then shared that it would line up closely to the Target launch date, it actually, I'll say, it created a bit of a challenge for us.

Because the movie required her to take on responsibilities that took her away from being able to be 100 percent focused on the brand launch.

There was no strategic effort or plan to bring the two launches together. And, again, it actually kind of worked against Blake Brown to not have our founder and face fully available for all our marketing needs.

60.     Further, The Blake Brown website has performed considerably worse in terms of proportion of sales vs. those projected by the Deloitte model.  The Deloitte projection projects that Direct-to-Consumer (DTC) / website sales would be 10% of retail sales, and notes that the DTC channel has higher profitability and "builds consumer relationships and cultivates loyalty."[75]  Ms. Lively has produced information about the amount of royalties that LOL HATA LLC has received for website sales in 2024 (August through December) and 2025 through June, which are used to estimate the total website sales for 2024 and 2025 based on the 10% royalty rate paid on website sales.[76]  Mr. Lively has produced a presentation with weekly retail sales reported by Target in 2024 and 2025 (through 6/28), which are summarized in Schedule 2.4 at [1.2].  The estimated website sales as a proportion of retail sales are 1.8% in 2024 and 2.5% in 2025,[77] both of which are significantly lower than the 10% of retail sales assumed by Deloitte in its projections.

61.     I'm not aware that Mr. Kinrich has stated that the Alleged Retaliation Campaign has an outsized effect on Blake Brown website relative to sales at Target, and it is not clear how he could do so.  Regardless of whether the websites sales have been a lower percentage than expected due to poor execution of the website by Family Hive, lack of focus / marketing on the website, or overly optimistic projections by Deloitte, the fact that the website has been far less than 10% of retail sales would impact the sales and profitability expected in the future.

---

[75] Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '803, '806. [2.14]

[76] Schedule 2.3. [1.2]

[77] Schedule 2.3. [1.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

62.    Mr. Kinrich also did not consider that the Blake Brown products may not have performed as well as the projections assumed.  For example, the assumptions in the projections include assumptions about Productivity that include "EB performs as a top masstige brand in Target & in other channels (i.e., Shampoo performs better than Kristin Ess & Native shampoos)" and that all "products perform well and stay on all shelves."[78]  I have found a number of reasons why the Blake Brown products' sales could have been affected from July 2023 through the period that Mr. Kinrich calculates damages that are unrelated to the allegations in this case, and Mr. Kinrich's analysis has not considered any of these.

63.    First, Mr. Kinrich has not taken into account that Target has expanded its product line of health / beauty products since July 2023, making for a more competitive product environment, all while suffering from reductions in sales and foot traffic between the time of the Deloitte projection in July 2023 and today.  For example, a Target press release dated January 24, 2024 (more than 6 months before Blake Brown was launched at Target on August 4, 2024[79]) announced that it was introducing more than 1,000 new wellness products, including celeb-founded brands such as Being Frensche (which I understand includes haircare products sold by Target[80]) and beauty products: "[g]uest-loved brands like Tree Hut, CeraVe, Native and Lume are reliable go-tos for great skin care, hair care and personal care."[81]  More beauty / haircare products were announced in early 2025 – a February 14, 2025 article quoted a Target SVP of Essentials and Beauty as stating "our team is incredibly excited to add more than 2,000 new items to our assortment — including science-focused skin care, hair care, nail care, cosmetics and fragrance."[82]  The article mentions several haircare brands by name: "Hair care from Being Frenshe, Kristin Ess and NEQI; Textured hair care from Alodia and Camille Rose."[83]  A Target

---

[78]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '808. [2.14]

[79]  Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, p. 35. [2.4]

[80]  Target, "Being Frenshe Products at Target, <https://www.target.com/b/being-frenshe/-/N-q643leyonhf>, accessed November 2, 2025. [6.1]

[81]  Target Press Release, "Target Introduces More than 1,000 New Products to Support Guests on Their Wellness Journey, Starting at Just $1.99," January 24, 2024, <https://corporate.target.com/press/release/2024/01/target-introduces-more-than-1%2C000-new-products-to-support-guests-on-their-wellness-journey%2C-starting>, accessed November 2, 2025. [6.7]

[82]  Adam Blair, "Target Feels Pretty: Retailer Adds 2,000+ Beauty Products to Assortment," February 14, 2025, Retail Touch Points, <https://www.retailtouchpoints.com/features/news-briefs/target-feels-pretty-retailer-adds-2000-beauty-products-to-assortment>, accessed November 2, 2025. [6.6]

[83]  Adam Blair, "Target Feels Pretty: Retailer Adds 2,000+ Beauty Products to Assortment," February 14, 2025, Retail Touch Points, <https://www.retailtouchpoints.com/features/news-briefs/target-feels-pretty-retailer-adds-2000-beauty-products-to-assortment>, accessed November 2, 2025. [6.6]

25

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

press release emphasized these beauty releases in February 2025 and into the future: "Target's ongoing evolution in the beauty category continued in February with the introduction of more than 45 new beauty brands and 2,000 new items, with 90% priced under $20, and more newness to come in the year ahead."[84]

64.    While the haircare product competition has expanded since July 2023, Target has experienced ten consecutive quarters of flat or declining sales, most recently reporting net sales fell 2.8% with a 3.8% drop in comparable sales in the first quarter of 2025. Its comp sales were bolstered by 4.7% increase in online sales against a dramatic 5.7% decline in store sales. Target derives some 80% of sales in its nearly 2,000 stores.[85]  I note that in her deposition, Family Hive's representative Ms. Tedesco recognized that there was a drop in foot traffic at Target (fewer people going into Target stores) during 2025, but she added that the category that Blake Brown competes in remained healthy and strong.[86] However, given an expansion of the haircare and general beauty product lines, even if overall category performance remained flat, any particular product or brand would be expected to be impacted by a drop in Target foot traffic.  Therefore, the reduced foot traffic and increased competition are factors that would be expected to impact Blake Brown sales (especially as compared to projections from July 2023), and those are factors that must be taken into consideration in calculating any potential damages. I did not see anywhere in Mr. Kinrich's expert report that he took these facts into account.

65.    Second, Mr. Kinrich has not even considered that the Blake Brown product line may have performed worse than expected.  I understand that most haircare product lines include a shampoo and conditioner as the primary products, but that the Blake Brown product line does not have a conditioner, and instead a mask is sold.  This was found notable in several articles discussing the Blake Brown product line upon its release.[87]  For example, one article includes a discussion of the lack of a conditioner as follows:

---

[84]  Target Press Release, "Target Announces Strategic Plans to Drive More Than $15 Billion in Sales Growth by 2030," March 4, 2025, <https://corporate.target.com/press/release/2025/03/target-announces-strategic-plans-to-drive-more-than-$15-billion-in-sales-growth-by-2030>, accessed November 2, 2025. [6.5]

[85]  Pamela N. Danziger, "Calling It Quits, Ulta Beauty and Target's Partnership Unravels," Forbes, August 15, 2025,  <https://www.forbes.com/sites/pamdanziger/2025/08/15/calling-it-quits-ulta-beauty-and-targets-partnership-unravels/>, accessed November 1, 2025. [3.2]

[86]  Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, pp. 91-93. [2.4]

[87]  Kristin Contino, "Blake Lively Announces New Haircare Line, Blake Brown Beauty - and it won't include conditioner," July 31, 2024, Page Six, <https://pagesix.com/2024/07/31/style/blake-lively-announces-new-haircare-line-blake-brown-beauty/>, accessed November 2, 2025. [6.2] *See also* Shreya Kachroo, "Blake Lively's Haircare Routine Does NOT Include Conditioner," August 18, 2024, Times Now News, <https://www.timesnownews.com/lifestyle/beauty/hair/blake-livelys-haircare-routine-does-not-include-conditioner-article-112602048>, accessed November 2, 2025. [6.3] *See also* Nimisha Popat, "Blake

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

> Not only did the "Gossip Girl" alum, 36, reveal that she doesn't use conditioner, she said that no one in Hollywood does, either.
>
> "I don't know anyone who uses conditioner in my industry," Lively — whose real name is Blake Ellender Brown — shared with the magazine.
>
> The Betty Buzz founder continued by explaining that her shiny, bouncy hair was achievable to anyone by simply switching up their products, and that her line will include a special regimen of shampoos and hair masks.
>
> "It's not that people in the entertainment industry are gifted with better hair," she said. "We're using a different hair system than the process promoted to the mass market."
>
> Instead of following up shampoo with traditional conditioner, Blake Brown Beauty users will wash, then apply a hair mask, swapping the hydrating system for a strengthening duo on the next shower.

Given that Blake Brown was marketing a "different hair system" than the norm, it would not be surprising if the product line did not perform as well as projected in July 2023.

66.     Further, based on an email sent by a Blake Brown employee on September 10, 2024, there were many complaints about the Blake Brown hair care products in the month after their launch.[88]   The email starts with the following discussion (recognizing that changes in marketing message or strategy were needed to address issues raised in the reviews):[89]

> Hi Blake - wanted to resurface detail on the reviews - snapshot of major feedback below, and detail in the attached. Feedback in past week has been largely consistent. Here is high level action plan against major areas of feedback
>
> • Scent: this will always be a personal choice and some just won't like it, but overwhelmingly we get positive feedback on social and in other reviews
>
> • Price: **looking at ways to contextualize price** (e.g., xx number of uses, xx number of months) **to help the price feel more attainable**. Also note that for many the price is viewed as a huge positive given the comparison of salon products

---

Lively Launches Affordable Hair Care Line But There's a Twist You Won't Expect," August 9, 2024, Control Hair Fall, <https://controlhairfall.com/blake-lively/>, accessed November 2, 2025. [6.4]

[88] Email from Laura - Blake Brown Beauty to Blake Reynolds, September 10, 2024 (Exhibit 12 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000032949-952 at '949. [3.3]

[89] Email from Laura - Blake Brown Beauty to Blake Reynolds, September 10, 2024 (Exhibit 12 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000032949-952 at '949. [3.3] (emphasis added)

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

• Packaging: we knew the packaging wouldn't be for everyone. Most notably people have given feedback

• Performance + formula: ***Focusing social and owned content on educating how to use products, who should use products*** (e.g., evolving from saying "hair needs nourishment, try our nourishing" to helping people identify how to know if hair needs nourishment by behaviors or physical attributes), ***how often to use products, etc. this will be huge focus of our 9/30 shoot***

67.    As referenced in the block quote above, the email includes a "snapshot of major feedback," which runs through each of the eight products and provides examples of the types of negative feedback left for five different areas (formula, packaging, performance, price, and scent). Figure 4 below summarizes which categories include negative feedback, as summarized in the email.  As examples of the types of feedback, the Comments/Trends for the Nourishing Shampoo and Strengthening Mask are as follows:[90]

Nourishing Shampoo [Comments/Trends]

**Performance**: The most frequently mentioned issue, with 42.11% of the comments highlighting problems such as dryness, brittleness, and damage to hair.

**Formula**: 21.05% of the comments specifically pointed out issues related to the formula causing hair problems.

**Packaging**: Also at 21.05%, many users found the packaging to be impractical or difficult to use.

**Scent**: 10.53% of the comments mentioned that the scent was overpowering or unpleasant.

Strengthening Mask [Comments/Trends]

**Scent**: This was the most frequently mentioned complaint, with 54.3% of the reviews citing issues with the scent. Users often found the scent overpowering, unpleasant, or not as expected.

**Packaging**: 40% of the reviews mentioned problems with the packaging. Complaints included the bottle design being hard to use, unattractive, or taking up too much space.

**Performance**: 25.7% of the reviews criticized the product's performance, with users reporting that it did not deliver the expected results, such as causing hair dryness, fallout, or other negative effects.

---

[90] Email from Laura - Blake Brown Beauty to Blake Reynolds, September 10, 2024 (Exhibit 12 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000032949-952 at '949-950. [3.3] (emphasis in original)

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Price**: Another 25.7% of the reviews highlighted the product's price as an issue, with users feeling that the product did not offer value for the cost, especially considering the perceived poor performance.

**Figure 4:   Target Reviews Summarized as Reflecting Negative Feedback for Blake Brown Products, By Product and by Category in September 10, 2024 Email[91]**

| Complaint Category | Nourishing Shampoo | Nourishing Mask | Strengthening Shampoo | Strengthening Mask | Leave-in Conditioner | Pre-Shampoo Mask | Glam Mousse | Dry Shampoo |
|---|---|---|---|---|---|---|---|---|
| Formula | ✓ | | | | ✓ | | | ✓ |
| Packaging | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| Performance | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Price | | | | ✓ | ✓ | ✓ | | ✓ |
| Scent | ✓ | | ✓ | ✓ | ✓ | ✓ | | |

68.    Not surprisingly given the negative feedback, returns of the Blake Brown products were somewhat high in the first month after launch.  For example, a September 5, 2024 email sent by a Blake Lively employee notes that "[s]ales rates overall have come down but we are still out pacing original Target forecast and amidst somewhat spotty inventory" and that ""[r]eturns are remaining somewhat high but we are monitoring to ensure rate of return is staying same or declining vs getting worse."[92]  In addition, industry commentators note that beauty brands tend to have relatively low retention rates, so it would not be surprising for customers to try the Blake Brown products and then move on to other haircare products.[93]  I did not see anywhere in Mr. Kinrich's expert report that he considered the "different hair system" sold by Blake Brown and the first month after launch resulting in negative feedback and high return rates.

69.    Regardless of *all* the issues described above, when the actual performance in 2024 is compared to the Deloitte projected performance, the Blake Brown brand out-performed expectations in the 2024 time period.  This is the case despite the fact that the Deloitte projections expected the Blake Brown brand to launch on July 1, 2024,[94] meaning the 2024 projections included 6 months of retail sales, whereas the product actually launched on August 4th and was sold at retail for only about 5 months in 2024.  A Blake Brown presentation compares the Blake

---

[91]  Email from Laura - Blake Brown Beauty to Blake Reynolds, September 10, 2024 (Exhibit 12 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000032949-952. [3.3]

[92]  Email from Laura - Blake Brown Beauty to Blake Reynolds, September 10, 2024 (Exhibit 12 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000032949-952 at '952. [3.3

[93]  Medha Pandey, "Why Most Beauty Brands Fail at Customer Retention? 20 Fresh Beauty Industry Customer Retention Strategies That Drive Loyalty in 2025!," September 8, 2025, Propel, <https://www.trypropel.ai/resources/customer-retention-beauty-industry>, accessed November 2, 2025. [6.8]

[94]  Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '805-807. [2.14]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Brown actual results to the Deloitte projections for 2024 (excerpted in Figure 5 below), reflecting that the actuals performed better both in terms of net revenue (by more than $2.5 million) and by EBITDA (by more than $2.2 million).[95]  Therefore, any claim that the 2024 performance of Blake Brown products was affected by the Alleged Retaliation Campaign is not supported by a comparison of actual results to Deloitte projections, which form the basis for Mr. Kinrich's but for net revenues and EBITDA.

**Figure 5:    Excerpt of Actual to Deloitte P&L for 2024 from Blake Brown Presentation[96]**

| | ACTUAL | | Deloitte | | Var. Actual vs Deloitte |
|---|---|---|---|---|---|
| | Family Hive - Target + DTC | | Family Hive - Target + DTC | | |
| | 2024 Full Year | % | 2024 Full Year | % | Var Actual vs Deloitte |
| Income Statement 2024 USD | | | | | |
| Gross sales | 12,488,977 | 111% | - | 0% | 0% |
| Route insurance | 5,150 | 0% | - | 0% | 0% |
| Deductions | (1,229,149) | -11% | - | 0% | 0% |
| Net revenue | 11,264,977 | 100% | 8,700,000 | 100% | 2,564,977 | 29% |
| COGS | 3,963,954 | 35% | 3,400,000 | 39% | 563,954 | 17% |
| Freight in, special handling and sourcing fees | 587,883 | 5% | 500,000 | 6% | 87,883 | 18% |
| Customs & Excise | 44,515 | 0% | - | 0% | 44,515 | N.a. |
| Warehouse storage and fill & pack | 168,768 | 1% | - | 0% | 168,768 | N.a. |
| Other warehouse expenses | 19,283 | 0% | - | 0% | 19,283 | N.a. |
| Total CHARGES MARCHANDISES | 4,784,403 | 42% | 3,900,000 | 45% | 884,403 | 23% |
| GROSS MARGIN (incl other stock costs) | 6,480,574 | 58% | 4,800,000 | 55% | 1,680,574 | 35% |
| Royalties | 572,277 | 5% | 500,000 | 6% | 72,277 | 14% |
| Marketing | 1,549,824 | 14% | 2,900,000 | 33% | (1,350,176) | -47% |
| TOTAL MARKETING COSTS | 2,122,101 | 19% | 3,400,000 | 39% | (1,277,899) | -38% |
| CONTRIBUTION MARGIN | 4,358,474 | 39% | 1,400,000 | 16% | 2,958,474 | 211% |
| TOTAL OTHER OVERHEADS | 3,419,764 | 30% | 2,700,000 | 31% | 719,764 | 27% |
| EBITDA | 938,710 | 8% | (1,300,000) | -15% | 2,238,710 | N.a. |

70.    Further, when the Target pre-launch forecast of 11.57 units per store per week is used as the basis of comparison, the actual performance is again higher than the forecasted performance.  I analyze the data reported in the presentation about actual units per store per week by product in Schedule 2.2 at [1.2].  The average units per store per week reported in the Blake Brown presentation for the weeks ending 8/10 through 11/2/2024 is 22.18 units, which is significantly greater than (almost double) the 11.57 units forecasted by Target.

71.    If Mr. Kinrich may try to parse 2024 into short periods and compare certain weeks or months of 2024 to the projections, I do not think that is a reasonable basis to compare.  This is a newly launched product, and looking at a very limited period is not reflective of long-term

---

[95]  Blake Brown Presentation, "Brand Update" (Exhibit 24 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000038373-382 at '375. [2.15]

[96]  Blake Brown Presentation, "Brand Update" (Exhibit 24 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000038373-382 at '375. [2.15]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

expected sales.  For example, a Blake Brown presentation explains that "Target buys pipeline inventory and maintains seven to nine weeks of supply for each product in its network."[97] Therefore, the most reasonable basis for comparison would be the full period for 2024 sales, not any subset of that period.

72.    Regardless of the projections used, it is clear from the actual financials that Blake Brown **surpassed** the projections of sales in Deloitte projections and Target's pre-launch forecast for 2024.  Therefore, Mr. Kinrich has not provided any basis to opine that Blake Brown's sales at Target were somehow significantly reduced in 2024, nor has he explained how sales in 2025 would somehow be impacted with the lack of impact in 2024.

73.    In conclusion, Mr. Kinrich has not demonstrated that Blake Brown lost any revenue or profit related to the Alleged Retaliation Campaign.  Even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit.

> **3.    Mr. Kinrich has not demonstrated that LOL HATA LLC lost any royalties related to Blake Brown, and even if some small amount of royalties was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost royalties, and his methodology significantly overstates the potential amount of lost royalties.**

74.    As discussed in the previous section, Mr. Kinrich has not demonstrated that Blake Brown lost revenue related to the allegations in this case.  Therefore, LOL HATA LLC has not lost any royalties, because the royalties are calculated based on revenue.

75.    According to Section 4.1 of the Promotional Services and License Agreement between Family Hive LLC, LOL HATA LLC, and Blake Lively royalties are paid to the "Lender".[98] Lender is defined as LOL HATA LLC, not, Blake Lively who is defined as "Talent".[99] This was confirmed in the 30(b)(6) deposition of Family Hive LLC.[100] It is my understanding that LOL HATA LLC is not a plaintiff in this litigation.[101]

---

[97] Blake Brown Presentation, "Blake Brown 2024 Goals" (Exhibit 17 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000033089-102 at '094. [3.11]

[98] Promotional Services and License Agreement, March 4, 2022 (Exhibit 3 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000037820-853 at '829. [2.6]

[99] Promotional Services and License Agreement, March 4, 2022 (Exhibit 3 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000037820-853 at '820. [2.6]

[100] Deposition of Family Hive LLC; Laura Tedesco, October 21, 2025, p. 240. [3.10]

[101] Second Amended Complaint, p. i. [2.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

76.     In conclusion, Mr. Kinrich has not demonstrated that LOL HATA LLC lost any royalties related to the Alleged Retaliation Campaign.  Even if some small amount of royalties was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost royalties, and his methodology significantly overstates the potential amount of lost royalties.

**4.    Mr. Kinrich has not demonstrated that Betty B Holdings has lost any Betty Booze revenue or profit related to the Alleged Retaliation Campaign; even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit.**

77.     Mr. Kinrich's analysis uses projections of EBITDA and other metrics from an October 1, 2024 Betty B presentation, ultimately concluding that any shortfall of the revenue from the Betty Booze projections in that presentation was caused by the Alleged Retaliation Campaign.[102]  For a number of reasons, Mr. Kinrich's conclusions are not reasonable.  Mr. Kinrich has not demonstrated that Betty Booze lost *any* revenue from the Alleged Retaliation Campaign, let alone that the methodology that he employed could reasonably estimate the lost revenue / cash flow from the Alleged Retaliation Campaign if there was such a loss.

78.     Notably, leading up to the time of the presentation relied upon by Mr. Kinrich, Betty Booze continually and significantly revised its projections for 2024.  For example, Blake Lively produced Betty B presentations as early as November 2023 with projections for 2024 net revenue as follows:

- November 2023: Betty Booze projected 2024 net revenue of $8,483,850.[103]
- February 9, 2024: Betty Booze projected 2024 net revenue of $7,538,153.[104]
- June 2024: Betty Booze projected 2024 net revenue of $5,579,550.[105]
- October 1, 2024: Betty Booze projected 2024 net revenue of $4,649,625.[106]

---

[102] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A. [2.12] *See also* Kinrich Report, p. 27-33.

[103] Betty B Presentation, "Brand Overview," November 2023, BL-000037661-748 at '727. [3.4]

[104] Betty B Presentation, "February Update," February 9, 2024 (Exhibit 5 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000026484-524 at '503. [3.5]

[105] Betty B Presentation, "Company Overview 2024," June 2024 (Exhibit 7 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000028664-725 at '699. [3.6]

[106] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8136_A. [2.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

79.    I illustrate the reductions in projected 2024 net revenue in Figure 6 below, along with the actual net revenue earned by Betty Booze.  As can be seen in Figure 6 below, every 3-4 months Betty B reduced its projected net revenue for 2024 significantly.  And despite the last revision being dated October 1, 2024, Mr. Kinrich admits that the reduction of the 2024 projected revenue in the October 1, 2024 forecast is unrelated to this case.[107]  As an example of the reasons for reduction unrelated to this case, the October 1, 2024 presentation notes that the "lower forecast is a result of limited brand marketing to date thus far in 2024 impacting in store velocity as well as a later launch then anticipated with SGWS."[108]  A November 2024 presentation provides further detail on the "later launch then anticipated with SGWS," noting that the downward adjustment reflected "Southern Glazers delayed onboarding right prior to the Summer (and listings having long lead times – 6-12 months in many cases)."[109]

---

[107] Kinrich Report, p. 28.

[108] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8048_A. [2.12]

[109] Betty B Presentation, "Q3 2024 Update," November 2024 (Exhibit 10 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000033111-141 at '113. [3.7]

33

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 6:  Comparison of Betty Booze Projected 2024 Net Revenue Over Time to Actual Net Revenue[110]**



80.    Despite the continual reduction of projected revenue for 2024, Mr. Kinrich attributes 100% of the reduction in net revenue between the October 1, 2024 projection and the actual results to the Alleged Retaliation Campaign, as well as all future shortfalls in revenue from the October 1st forecast.  As can be seen by the continual revisions to the projections, this is simply not a reasonable and reliable method to estimate lost revenue related to the Alleged Retaliation Campaign.  Mr. Kinrich has not demonstrated that any portion of the shortfall in revenue can be tied specifically to the Alleged Retaliation Campaign, let alone that ALL future shortfalls are due to the Alleged Retaliation Campaign.

81.    And Betty B's internal analysis supports that factors other than the Alleged Retaliation Campaign had a significant impact on Betty Booze's past and future shortfalls of revenue from projections, including i) Betty Booze having a poor product mix (tequila and bourbon RTDs instead of more popular vodka RTDs), ii) Betty Booze products being overpriced, and iii)

---

[110] Schedule 3.1. [1.2]

34

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

having limited Blake Lively involvement in 2024.  For example, a Betty B presentation dated May 8, 2025 includes an executive summary discussing sales in 2024, noting that "velocity and re-orders were weaker than expected," and the presentation "attribute[s] this to quiet H2 marketing and being priced at a ~50% premium to market leaders at $14.99 / 4-Pack."[111]  Further, as excerpted in Figure 7 below, the presentation notes Betty Booze's two biggest priorities for 2025 were 1) to introduce a vodka iced tea into the market and 2) to re-price its entire Betty Booze product portfolio.[112]

**Figure 7:   Excerpt from May 2025 Betty Booze Presentation Discussion 2 Biggest Priorities in 2025[113]**



Our 2 biggest Priorities to drive Betty Booze velocity at Scale in 2025

1. Win with **Vodka Iced Tea as the #1 Betty Booze Priority**
   • Focus Spring/Summer Marketing Activation on Tea
   • Critical Product Message: **"No Artificial Anything"** vs. Category leader with artificial sweeteners

2. **Immediately re-price the Booze portfolio** ($11.99 midpoint vs. $14.99) – to be in line with the category

82.     With respect to the wrong product mix, Betty Booze initially launched in June 2023 with two tequila (Sparkling Tequila with Lime Sjhiso and Sparkling Tequila with Oak Smoked Lemonade) and one bourbon (Sparkling Bourbon with Apple Ginger Sour Cherry) Ready-to-Drink (RTD) canned cocktails.[114]  However, by 2024, it appears that Betty Booze realized its product mix was missing the mark.  For example, in the October 2024 presentation used by Mr. Kinrich for his analysis, the executive summary notes that Betty Booze had  "experienced a loss of market

---

[111] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '175_A. [4.1]

[112] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '183_A. [4.1]

[113] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '183_A. [4.1]

[114] PR Newswire, "Blake Lively Announces the Launch of Betty Booze, A New Line of Gourmet Sparkling Canned Cocktails," June 29, 2023. [4.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

share at Total Wine (from 6% last Summer to 4% currently i.e. from Top 5 to Top 6 position) despite the launch of the Tequila Variety Pack - share loss has been primarily to Surfside (vodka based non-carbonated RTD Tea)."[115]  Further, the executive summary notes that "[v]odka based RTD's represent 2/3rd of RTD Spirits category & Vodka based non-carbonated teas alone are driving 1/3rd of overall category growth – **Betty Booze has no Vodka based RTD (working to remedy ASAP)**."[116]  In the "Booze Goal and Actions" section of the presentation, the first action noted is that "We Need to Fish Where the Fish Are," explaining that "[v]odka is still by far the largest RTD category, noting a 67% share for vodka compared to 16% for tequila and 5% for whiskey.[117]  As reflected in Figure 7 above, the #1 priority for Betty Booze in the May 2025 presentation was to launch its vodka tea products, later noting that "Vodka Tea RTDs are winning."[118]  A Betty Booze press release dated June 4, 2025 announced the launch of two vodka iced teas.[119]  I understand that the launch of vodka iced tea was a little late because of some problems with bottling production.[120]  Mr. Kinrich's analysis has not taken into account in any way that Betty Booze had a poor product mix and had delays unrelated to the Alleged Retaliation campaign, which would be expected to have a negative impact on sales.

83.    With respect to Betty Booze products being overpriced, as noted above, a Betty B presentation dated May 8, 2025 includes an executive summary discussing sales in 2024, noting that "velocity and re-orders were weaker than expected," and the presentation "attribute[s] this to quiet H2 marketing and being priced at a ~50% premium to market leaders at $14.99 / 4-Pack."[121] Later in the presentation, a discussion of the #2 priority indicates that immediate price reductions would be made, from $14.99 down to $11.99 for its 4-packs and from $21.99 down to $17.99 for its variety 6-packs, reductions of 20% and 18%, respectively.[122]    Mr. Chrisomalis testified that one of the reasons that the velocity and reorders were weaker than expected was because "Betty

---

[115] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '7974_A. [2.12] (emphasis added)

[116] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '7974_A. [2.12] (emphasis added)

[117] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8052_A-8053_A. [2.12] (emphasis added)

[118] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '186_A. [4.1]

[119] PR Newswire, "Betty Booze Introduces New Vodka Iced Teas – Just in Time for Summer," June 4, 2025,< https://www.prnewswire.com/news-releases/betty-booze-introduces-new-vodka-iced-teas--just-in-time-for-summer-302472674.html>, accessed October 31, 2025. [4.3]

[120] Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 207-208. [2.8]

[121] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '175_A. [4.1]

[122] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '187_A. [4.1]

36

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Booze was about 50% more expensive than competitors.[123]  This level of over-pricing clearly has an impact on sales, as Betty B itself recognized.  Mr. Kinrich's analysis has not taken Betty Booze being significantly overpriced into account, which would be expected (and which Betty B concluded did) have a significant impact on sales.  I also note that the October 1, 2024 presentation would be forecasting profits at significantly higher price points and therefore significantly higher profitability into perpetuity, whereas a reasonable analysis would have recognized that the price point (and therefore profitability) would need to be lowered. Mr. Kinrich did not take this into account in his damage model.

84.     With respect to Blake Lively's limited marketing involvement in 2024, Betty B presentations indicated that marketing was lower than hoped throughout 2024.  For example, the October 2024 presentation executive summary notes that before the Alleged Retaliation campaign "[w]ith only 1 brand marketing activation (Boulud spot in May 2024) this year, search interest on google for Betty Booze has dropped significantly during Summer 2024 (vs Summer 2023)."[124]   The presentation later notes that Betty Booze had only 1 tentpole in 2024 versus 4 the prior year, and note that Betty Booze needs 4 tentpoles per year working with Blake Lively & Maximum Effort Marketing (MEM).[125]  Mr. Chrisomalis testified that a tentpole moment are "big theatrical spots with Blake – you know starring Blake and the brand that we talked about, that we produced.  Think of it as a TV commercial."[126]  The executive summary of the October 2024 presentation also notes that given Blake Lively's "busy schedule during the key RTD summer season, time for trade engagement has been limited - both in-person and virtual events."[127]  The presentation later explains there was limited trade engagement with Blake Lively during the key summer-launch period, and noted that one of the two specified reasons for the lower sales forecast "is a result of limited brand marketing to date thus far in 2024."[128]  I also note that Betty B Holdings apparently had issues with their marketing staff in 2024. For example, until October

[123] Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 203. [2.8] *See also* Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2015), Executive Summary, BL_000038170-269_A at '175_A. [4.1]

[124] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '7974_A. [2.12]

[125] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '7976_A, '8031_A, '8058_A. [2.12] Mr. Chrisomalis testified that MEM is Maximum Effort Marketing, a marketer. (Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 143-144. [2.8])

[126] Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 144-145. [2.8]

[127] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '7974_A. [2.12]

[128] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8037_A, '8048_A. [2.12] (emphasis added)

37

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

2024, Betty B Holdings Chief Marketing Officer was an interim marketing person who was a consultant and not a permanent Chief Marketing Person.[129] A permanent Chief Marketing Officer was hired but did not work out and was there only for around 100 days and then the position was eliminated.[130] In addition, Betty B Holdings only had 5 dedicated employees (CEO, CMO, Senior Brand Manager, VP of Supply Chain and Director of Supply Chain) – all working across both Booze and Buzz.[131] As Mr. Chrisomalis testified, "…you know you have a really small team that's doing a lot of stuff."[132]

85.    I understand that Plaintiff may try to argue that there was less Blake Lively marketing due to the impact of the causes of action in this case.  However, as discussed above, the marketing was limited *throughout* 2024, not just after the Alleged Retaliation Campaign, and there is no indication in the presentations that the number of tentpole events or marketing would have been significantly increased but-for the Alleged Retaliation Campaign.

86.    I also note that it is relevant that Blake Lively does not drink alcohol.[133] An influencer who does not drink would be less effective at promoting alcohol than an influencer who does drink.[134] For example, I cite to several articles that summarize negative feedback to Blake Lively's connection to Betty Booze due to the fact that she doesn't drink alcohol in Section V.A.1 above.  Further, it would be expected that Ms. Lively would be a much more effective influencer and promoter for the non-alcoholic beverages that Betty B Holdings sold (Betty Buzz), but this product line failed for reasons unrelated to the Alleged Retaliation Campaign, as discussed below.

87.    Overall, this evidence demonstrates that a number of factors other than the Alleged Retaliation Campaign impacted Betty Booze and caused a shortfall from its revenue projections in 2024 and into the future.  Mr. Kinrich's assumption that all of the 2024 and future shortfall in revenue was related to the Alleged Retaliation Campaign is unsupported and not reasonable.

---

[129] Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 128. [2.8]

[130] Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 129-131. [2.8]

[131] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8165_A at '981_A. [2.12]

[132] Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 164. [2.8]

[133] Leslie Barrie and Laura McArdle, "17 Celebrities Who Don't Drink Alcohol," Nutrition & Fitness, April 4, 2022, <https://www.everydayhealth.com/diet-nutrition/diet/celebrities-who-dont-drink-alcohol/>, accessed November 1, 2025. [4.4]

[134] Scott Van den Berg, "Celebrity-Product-Market-Fit: The Framework That Predicts Which Celebrity Brands Hit $100M," HotStart, September 10, 2025, <https://hotstart.beehiiv.com/p/celebrity-product-market-fit-the-framework-that-predicts-which-celebrity-brands-hit-100m>, accessed November 2, 2025. [3.8]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

88.    Mr. Kinrich also appears to ignore that the very same management team that was making projections for Betty Booze (which Mr. Kinrich accepts without any concerns) was making contemporaneous projections showing significant forecasted growth for another Blake Lively-backed beverage product (Betty Buzz); however, that product was being wound down by the summer of 2025.  A Betty Buzz press release announced the launch of the Betty Buzz products on September 23, 2021.[135]  The press release announcing the launch of Betty Booze products touted the "early success of Betty Buzz," stating that it was recently awarded the "Best Snack" by Good Housekeeping and that "Betty Buzz is one of the fastest growing gourmet beverage brands."[136]

89.    A Betty B presentation dated November 2023 projected Betty Buzz's net revenue would grow from $6.5 million in 2023 to $54.8 million in 2028, and its Contribution after Advertising and Promotion would grow from a loss of $2.2 million in 2023 up to $17.9 million in 2028.[137]  Less than one year later, Betty B was considering winding down Betty Buzz – the October 1, 2024 presentation discusses the pros and cons of continuing Betty Buzz.[138]  The May 8, 2025 presentation notes that management recommends winding down the Betty Buzz mixer business and transition the Betty Buzz brand to mocktails.[139]  Mr. Kinrich admits that the decision to wind down Betty Buzz was not impacted by the allegations in this case, and he has not calculated any damages related to Betty Buzz.[140]

90.    This example provided by Betty Buzz, another beverage product with the same celebrity backing of Blake Lively and the same management as Betty Booze, exemplifies the risk of simply accepting projections for a new business and assuming that those projections would be achieved with near certainty, and then attributing any deviation from those projections to the causes of action in this case.  Based on his conclusions, it appears that Betty Buzz has minimal impact on his analysis.  This example provides further evidence that Mr. Kinrich's analysis is not a reasonable or reliable methodology to calculate the damages in connection with Betty Booze.

---

[135] PR Newswire, "Blake Lively Announces the Launch of Betty Buzz; A Great-Tasting, Lower Calorie Mixer that Uses Only Clean Ingredients," September 23, 2021. [4.5]

[136] PR Newswire, "Blake Lively Announces the Launch of Betty Booze, A New Line of Gourmet Sparkling Canned Cocktails," June 29, 2023. [4.2]

[137] Betty B Presentation, November 2023, BL-000037661-748 at '743. [3.4] Mr. Chrisomalis testified that CAAP is Contribution after Advertising and Promotion. (Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 105. [2.8])

[138] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '7979_A-7980_A. [2.12]

[139] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '177_A. [4.1]

[140] Kinrich Report, p. 10 (fn 36).

39

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

91.     In conclusion, Mr. Kinrich has not demonstrated that Betty Booze lost any revenue or profit related to the Alleged Retaliation Campaign.  Even if some small amount of revenue or profit was lost, Mr. Kinrich's analysis cannot reasonably and reliably estimate the amount of lost revenue or lost profit, and his methodology significantly overstates the potential amount of lost revenue or lost profit.

**5.    Mr. Kinrich's analysis of damages includes several inputs that are unsupported or aggressive that result in significant overstatements of the damages.**

92.     Mr. Kinrich's analysis of damages includes several assumptions that are either unsupported or aggressive, and these assumptions result in significant overstatements of the amount of lost profits to Blake Brown and Betty Booze, as well as the royalties to Blake Lively.  I discuss these assumptions below.

**a)    Mr. Kinrich includes a shutdown scenario in his lost analyses that is not supported by any evidence and results in significantly overstated damages.**

93.     In each of his damages calculations, Mr. Kinrich includes a scenario where he assumes the companies shut down the impacted products.  Mr. Kinrich does not point to any evidence a decision to shut down the impacted products had been made, or even that there is a significant probability that a shutdown would occur.  By including a shutdown scenario, Mr. Kinrich's significantly *understates* the revenue and profit that would be expected to be earned in the actual world, resulting in a significant overstatement of the lost profits and lost royalty damages that he calculates.

94.     With respect to Family Hive, the only evidence that I am aware of that discusses shutting down the product lines at issue in this case is a statement in the Executive Summary in an August 2025 Blake Brown Q3 2025 Board Meeting presentation that stated "Brand performance struggling and we are at risk of significant SKU reduction / discontinuation on the business in July 2026 / January 2027."[141] This Executive Summary also states that Brand productivity below category average and they need to drive awareness and trial. They also say this awareness "Can be unlocked through marketing budget and through Blake's incredible reach and credibility."[142] This statement is made a year after the Alleged Retaliation Campaign.

---

[141] Blake Brown Presentation, "Blake Brown Q3 2025 Board Meeting," BL-000039329-337 at '330. [4.6]
[142] Blake Brown Presentation, "Blake Brown Q3 2025 Board Meeting," BL-000039329-337 at '330. [4.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

95.     Ms. Tedesco testified on October 21, 2025, after Mr. Kinrich prepared his Expert Report, that "The nature of innovation is you always have to be looking a few years out. So we've discussed Category 3 fragrance as a potential future option."[143] Also, marketing is being increased in 2025.[144] These statements are inconsistent with Mr. Kinrich's Shut Down damages scenario.

96.     With respect to Betty Booze, at least $10 million has been invested as equity in Betty B Holdings LLC since 2024.[145] Betty B Holding's consolidated financial statements for the calendar year 2024 indicate that on "December 18, 2024, BB Holdings entered into a Unit Purchase Agreement […] in which a new investor contributed cash of $10,000,000 in exchange for 18,706,452 common units."[146] Further, a May 2025 presentation indicates that an additional $6.5 million would be raised through new equity and all of the $6 million of debt would be converted to equity.[147] A quarterly balance sheet for Betty B Holdings indicates that member contributions increased by $9.27 million in Q2 2025 and $6 million of long term debt was removed from the books (likely converted to equity, per the note in the presentation), likely indicating an additional $3.27 million of cash was raised in Q2 2025.[148]

97.     These capital raises are clearly inconsistent with Mr. Kinrich's assumption that the company is going to shut down. Further, Betty Booze launched two new vodka iced tea products in June 2025,[149] which filled a large product gap that Betty Booze's management recognized it had in its product portfolio, as discussed above in Section V.B.4. In its May 8, 2025 presentation (the latest presentation relating to Betty B of which I am aware), Betty B discusses that "Our #1 Brand priority – Betty Booze – will be the key focus for activation going forward."[150] Mr. Kinrich has not cited to any evidence that Betty B is considering shutting down Betty Booze as a brand, and the evidence cited above suggests the opposite.

---

[143] Deposition of Family Hive LLC; Laura Tedesco, October 21, 2024, pp. 233-234. [3.10]

[144] Deposition of Family Hive LLC; Laura Tedesco, October 21, 2024, p. 275. [3.10]

[145] Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 110-111. [2.8]

[146] Betty B Holdings LLC Consolidated Financial Statements for the Year Ended December 31, 2024 (Exhibit 14 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037188_A-206_A at ' 203_A. [4.18]

[147] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '245_A. [4.1]

[148] Capital Contributions were $43,390,437 at the end of Q2 2025 versus $34,120,436 at the end of Q1 2025, a difference of $9,270,001. (BL-000038862.xlsx, tab "Balance Sheet".)

[149] PR Newswire, "Betty Booze Introduces New Vodka Iced Teas – Just in Time for Summer," June 4, 2025,< https://www.prnewswire.com/news-releases/betty-booze-introduces-new-vodka-iced-teas--just-in-time-for-summer-302472674.html>, accessed October 31, 2025. [4.3]

[150] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '177_A. [4.1]

41

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

98.    I also note that these recent capital raises and potential future capital raises (and new option grants) likely result in an overstatement by Mr. Kinrich of LOL HATA's fully diluted ownership percentage, and therefore Ms. Lively's damages.  Mr. Kinrich relies on a document that shows LOL HATA's ownership percentage, but it does not state an "as of" date.[151]  Betty B Holdings' representative, Mr. Chrisomalis, was asked about this document, and he testified it was accurate as of today to his knowledge, but he did not recall when it was created.[152]  As discussed above, Betty B Holdings has recently raised capital, and based on its cashflow planning, apparently plans to raise more as it planned to raise $6.5 million through new equity in 2025 and raised only $3.27 million as of the end of Q2 2025.[153]  I note that the October 1, 2024 presentation that Mr. Kinrich relied upon also projected significant new equity infusions into Betty B Holdings ($10 million in 2024 and $7 million in 2026).[154]

99.    In addition to new equity capital, Betty B Holdings also issues options (Incentive Units), apparently on an ongoing basis,[155] and options issued after the date that Exhibit 3 was prepared would further reduce Ms. Lively's fully diluted ownership percentage.  Therefore, depending on the date of Exhibit 3, it may be the case that additional equity units and/or option units have already been issued, and it is almost certainly the case that additional equity units and/or option units will issue in the future, all of which would reduce LOL HATA's (and Ms. Livley's) ownership percentage of Betty B Holdings.

100.    I believe that because of the lack of evidence that shutting down the relevant products is a likely scenario, it would be inappropriate for Mr. Kinrich to present this shutdown scenario at trial. If one were to present a shutdown scenario, a proper analysis of the probability of this scenario should be done, and the damage figure put forward by Mr. Kinrich should be multiplied by that probability percentage.

---

[151] Kinrich Report, Exhibit 2. *See also* Betty B Ownership Investment and Fully Diluted Percentages (Exhibit 3 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037497. [2.9]

[152] Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 74-75. [2.8]

[153] Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '245_A. [4.1]

[154] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8125_A. [2.12]

[155] In 2024, Incentive Units were granted on March 31, 2024, October 14, 2025, and November 15, 2024 to employees and on March 31, 2024 and April 5, 2024 to service providers. (Betty B Holdings LLC Consolidated Financial Statements for the Year Ended December 31, 2024 (Exhibit 14 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037188_A-206_A at '204_A-206_A. [4.18] *See also* Deposition of Andrew T. Chrisomalis, September 24, 2025, pp. 64-65. [2.8])

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**b)  Mr. Kinrich has not established that the Alleged Retaliation Campaign would be expected to have a permanent effect on the sales of the products at issue; therefore, calculating damages to Betty Booze and Blake Brown (and related royalties to Blake Lively) into perpetuity overstates any possible damages to these entities.**

101.    Mr. Kinrich calculates his damages into perpetuity. For example, he calculates damages for Blake Brown by taking the present value of cash flows between a "but for" Blake Brown projection through 2030 and then a terminal value of the cash flow in 2030 into perpetuity.[156] Mr. Kinrich does the same for his lost royalties calculation, calculating the lost royalties into perpetuity.[157]  And Mr. Kinrich calculates his damages to Betty Booze into perpetuity as well.[158]

102.    As an example of the effect of his assumption, in his 2-year and 3-year delay scenarios for Betty Booze, Mr. Kinrich assumes that the results of Betty Booze would always be 2 or 3 years behind where they would have been, into perpetuity.  Figure 8 below calculates the amount of lost revenue that Mr. Kinrich is claiming for every year through 2100 in his 3-year delay scenario, demonstrating that Mr. Kinrich is claiming significant amounts of lost revenue for every year into the future.

---

[156] In his shutdown case, Mr. Kinrich assumes operations stop, so his damages extend into perpetuity.  In his Marketing Investment case, he delays sales and calculates a terminal value, but because the sales are delayed, the revenue and profit never catch up to his but-for scenario, resulting in a reduction of revenue and profit into perpetuity. (Expert Report of Jeffrey H. Kinrich, Exhibit 1, 1.A, and 1.B.)

[157] Kinrich Report, Exhibit 3.A and 3.B.

[158] In his shutdown case, Mr. Kinrich assumes that Betty Booze would shut down at the end of 2026 (an unreasonable assumption as discussed in the previous section) and calculate damages until 2028 and then adds a terminal value that extends his damages forever.  In his 2-year and 3-year delay scenarios, he calculates damages by taking the present value of cash flows between a "but for" Betty Booze projection through 2028 and then a terminal value of the cash flow in 2028 into perpetuity and then subtracting an "actual" Betty Booze projection through 2031 and then a terminal value of the cash flow in 2031 into perpetuity. (Expert Report of Jeffrey H. Kinrich, Exhibit 2, 2.A, and 2.B.)

43

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 8:    Mr. Kinrich's Projected Lost Revenue for Betty Booze Through 2100 in 3-Year Delay Scenario[159]**



103.    However, Mr. Kinrich has not established that the Alleged Retaliation Campaign would be expected to have a permanent effect on the sales of the products at issue.  For example, Blake Brown's representative, Ms. Tedesco, testified that Blake Brown stopped posting on its social media accounts for limited periods in 2024: from about August 20th through September 9th or 10th, and then again in the last week of December, and that the December shutdown was around the time a New York Time article was released.[160]    Similarly, Betty B Holdings representative, Andrew Chrisomalis, testified that there was a decision to refrain from posting on the social media accounts of Betty Buzz and Betty Booze in the Month of August 2024, as far as he could recall.[161]

---

[159] Schedule 3.2. [1.2]
[160] Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025, pp. 30-31. [2.4]
[161] Deposition of Andrew T. Chrisomalis, September 24, 2025, p. 32. [2.8]

44

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

104.    Internal discussion at Family Hive and Betty B Holdings indicate that the sentiment was changing by September, only a few weeks after the companies stopped posting on social media.  For example, a September 6, 2024 Blake Brown presentation noted that the negative sentiment trend from August 13, 2024 was "now slowing."[162]

105.    When Blake Brown resumed its posting on September 10, 2024, an email was sent to Blake Lively noting that "[o]ur first day back posting and positive signs so far, great to see!" The report that was forwarded included a discussion of Instagram sentiment as follows, noting that Blake Brown was receiving relatively positive comments, even if sentiment around Blake Lively was neutral:[163]

> INSTAGRAM SENTIMENT:
>
> Important to Note:
>
> **The start of 9.10 saw the continuation of negative comments on previous posts - though fewer in number, they remained predominantly negative. However, after we went live with the Scent carousel, we experienced and are continuing to experience a significant influx of positively-skewed comments. **
>
> Blake Brown Overarching Sentiment around Blake Brown products across channels is Positive.
>
> Blake Lively Overarching Sentiment around Blake across channels is leaning Neutral.
>
> Follows: Gross: 5,887 | Net: 4,593
>
> We gained a net of +4,593 followers over the past 24 hours, which is a significant increase from previous reports. This shows that consumers/users are still resonating with Blake Brown regardless of recent events. It will be interesting to assess how this number fluctuates tomorrow (after today's in-feed post has been up for a full 24 hours) and if we continue to see a positive net, a negative net, or a neutral net number of followers.
>
> Overall IG Sentiment: 98% Positive, 2% Negative
>
> Comments:
>
> We've received over 112 comments and expect to continue receiving comments throughout the evening and well into tomorrow. It is

---

[162] Blake Brown Presentation, "Blake Brown Update," September 6, 2024 (Exhibit 11 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000034272-292 at '278. [4.7]

[163] Email from Mindel – Blake Brown Beauty, September 10, 2024 (Exhibit 15 to Deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000032954-955 at '954-955. [4.8]

45

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

incredibly important and remarkable to note that 98% of these comments are positive.

106.    The Betty B October 1, 2024 presentation used by Mr. Kinrich also supports that negative sentiment had been reduced.  For example, a slide titled "Negative sentiment has primarily centered on social, with negative sentiment reducing recently" includes an "August 2024 onwards Social Sentiment Tracker" that reflects significantly lower percentages of negative posts for posts from September 10th and after.[164]

107.    Even assuming there was an effect from the Alleged Retaliation Campaign, Mr. Kinrich's assumption that Blake Brown or Betty Booze could never catch up from a shortfall is contradicted by the forecasting done by Betty Booze's own management.  As explained above in Section V.B.4, From November 2023 through October 2024, Betty Booze's management continually downgraded its forecast for 2024 net revenue.  However, as reflected below in Figure 9 below, despite the continual reduction in 2024 forecasting, the forecasts for future years were continually *increased*.  Therefore, Betty Booze's own projections corroborate that shortfalls in revenue in the short term do not necessarily result in a long-term effect.

---

[164] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8132_A. [2.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 9:    Comparison of Betty Booze's 2024-2028 Net Revenue Projections in Various Presentations[165]**



108.    In conclusion, Mr. Kinrich has not established that the Alleged Retaliation Campaign would be expected to have a permanent effect on the sales of the products at issue. Therefore, calculating damages to Betty Booze and Blake Brown (and related royalties to Blake Lively) into perpetuity overstates any possible damages to these entities.

**c)    Mr. Kinrich appears to have not considered all of the risks relevant to calculate the appropriate discount rate to the cash flows he is bringing to present value.**

109.    In estimating his discount rate, Mr. Kinrich uses a methodology that may be acceptable to use for established business to arrive at his discount rate, but he has not established that it is reasonable to use for early stage companies such as Family Hive LLC / Blake Brown and Betty B Holdings / Betty Booze.  In the case of Blake Brown, the projection Mr. Kinrich relies upon was created in July 2023, more than a year ahead of the launch on August 4, 2024.  And in the

---

[165] Schedule 3.1. [1.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

case of Betty Booze, the projection relied upon by Mr. Kinrich is dated October 1, 2024, a little over a year after the Betty Booze products had launched (June 29, 2023),[166] the projections shows losses in 2024 with significant growth in 2025-2028,[167] and the projected results for 2024 were continually downwardly revised in the preceding 11 months.[168]  Therefore, both companies would be considered new businesses as of the time of the projections relied upon by Mr. Kinrich, as well as the time the Alleged Retaliation Campaign started.

110.    An established method to derive an appropriate discount rate for startup or early-stage companies is to use the return requirements of financial investors (venture capitalists) who invest in these types of companies. Mr. Kinrich is familiar with this approach as it is discussed in a book he is co-editor of with the Title Lost Profits Damages: Principles, Methods, and Applications.[169] A chapter discussion Lost Profits for New Businesses discusses discount rates to be used as follows::[170]

> Some damages experts argue for what is known as the *capital markets or venture capital approach*, which favors the use of a relatively high discount rate that incorporates a significant company-specific risk premium and adjusts the computed present value for potential wide variability in the possible outcomes. The damages analyst may use the high discount rate even if analyses have been undertaken to identify the types of *achievement risk* (optimistic returns) and uncertainty that are embedded in the success or hoped-for projection.
>
> Other damages experts argue for what is known as the expected cash flows approach, which is premised on the assertion that the lost profits model should be fully adjusted for the risks and uncertainties of achievement. As such, the expected outcomes approach utilizes certain methodologies to account for the various possible outcomes, from the full success scenario to possibly a complete failure outcome. For the expected outcome, the use of a discount rate that incorporates a remarkably high risk premium for achievement risk would overstate the discount rate and materially understate the damages' present value. The discount rate applied to an expected outcome should generally be an expected rate of return. Published rates of return, such as an industry weight-adjusted cost of capital (WACC), are actual historical

---

[166] PR Newswire, "Blake Lively Announces the Launch of Betty Booze, A New Line of Gourmet Sparkling Canned Cocktails," June 29, 2023. [4.2]

[167] Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8136_A. [2.12]

[168] Schedule 3.1. [1.2]

[169] W. Ira Bowman, David M. Duffus, and Robert P. Gray, "Chapter 17 – Lost Profits for 'New Businesses,' in *Lost Profits Damages: Principles, Methods, and Applications*, Second Edition, ed. Everett P. Harry, III and Jeffrey H. Kinrich (Valuation Products and Services, 2022), p. 447. [4.9] (emphasis added)

[170] W. Ira Bowman, David M. Duffus, and Robert P. Gray, "Chapter 17 – Lost Profits for 'New Businesses,' in *Lost Profits Damages: Principles, Methods, and Applications*, Second Edition, ed. Everett P. Harry, III and Jeffrey H. Kinrich (Valuation Products and Services, 2022), p. 447. [4.9]

48

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

returns, and therefore reflect actual results achieved by investors. As such, these achieved rates include compensation for certain undertaken risks, but as achieved results, are appropriate for use in discounting expected returns.

111.    The second paragraph in the excerpt above discusses the *expected cash flows approach*, which fully adjusts for the risks and uncertainties of achievement in the lost profits model. Based on his use of the Deloitte projection done in 2023 and making no adjustments to that projection, I do not believe Mr. Kinrich has accounted for all the risks of achieving that projection.  For example, Mr. Kinrich did not consider any possibility that the businesses could go out of business in the but-for world, nor did he consider the "Conservative" case alternative that was discussed in the Deloitte presentation or the continual decline in 2024 projections for Betty Booze leading up to the October 1, 2024 projection that he used.  In addition, he did not consider any of the facts I have discussed above that indicate the projection he used was too high. As a result, in my opinion, Mr. Kinrich should have used the capital markets or venture capital approach in discounting his future damages to present value.

112.    A similar discussion of the venture capital required rates of return is found in another chapter of the book co-edited by Mr. Kinrich that focuses on discount rates, which states:[171]

> The venture capital approach to analyzing and discounting hoped-for streams of future economic income is instructive for experts evaluating lost profits and lost business value damages, particularly when plaintiff's business is not yet established and economically profitable, at least but for any wrongful conduct by defendant. Venture capitalists that actually earn around an overall 25 percent rate of return on a portfolio of investments are successfully identifying and accounting for significant risks and uncertainties in hoped-for projections on a portfolio basis. The lesson for damages experts relates to the methods and techniques used by a venture capitalist to address risk and uncertainties for the different stages of an investee's business development. More specifically, the damages expert may benefit from understanding how the venture capitalist may assess achievement risk through a substantial investment-specific risk premium in the venture capital discount rate. The damages expert is not advised to simply adopt the venture capitalist's risk considerations and related discount rates by business development stage for direct application to damages measurement assignments involving hoped-for cash flow projections. Rather, the expert's independent analysis of risk and uncertainty may be refined by understanding the venture capitalist's risk considerations

---

[171] Everett P. Harry III, Mark E. Hayden, and Wallace Ng, "Chapter 20 – Discount Rates in Practice," in *Lost Profits Damages: Principles, Methods, and Applications*, Second Edition, ed. Everett P. Harry, III and Jeffrey Kinrich (Valuation Products and Services, 2022), p. 573. [4.9]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

and other factors, as well as their relative influences on a corresponding discount rate.

113.    Several academic articles discuss the use of the venture capital method to estimate the discount rates for new businesses / early-stage companies.[172]  The Figures below are excerpted from a KPMG article about valuing starts-ups and early-stage companies.   Below excerpts a discussion of the definition of different stages and below excerpts a table of the expected rates of return by venture capitalists by stage of the company as estimated by different researchers.

**Figure 10:  Excerpt from KPMG Article – Different Stages of Early Stage Companies[173]**

---

[172] KPMG, "Start-ups and Early Stage Companies, A Valuation Insight," May 2021, <https://assets.kpmg.com/content/dam/kpmg/kw/pdf/insights/2021/05/valuation-startup-web.pdf>, accessed November 1, 2025. [4.10] *See also* KNAV, "Building a Discount Rate for Early-Stage Companies," December 2020, <https://ca.knavcpa.com/wp-content/uploads/2023/03/Building-a-Discount-Rate-for-Early-Stage-Companies.pdf>, accessed November 1, 2025. [4.11] *See also* PwC, "PwC Deals Insights: How to Value a Start-up Business," <https://www.pwc.com/ee/en/services/transaction-services/pwc-deals-insights--how-to-value-a-start-up-business.html>, accessed November 1, 2025. [4.12]

[173] KPMG, "Start-ups and Early Stage Companies, A Valuation Insight," May 2021, <https://assets.kpmg.com/content/dam/kpmg/kw/pdf/insights/2021/05/valuation-startup-web.pdf>, accessed November 1, 2025. [4.10]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 11: Excerpt from KPMG Article – Overview of Expected Rates of Return by Venture Capitalists**[174]

| Stage of development | Plummer / QED median [7] | Scherlis and Sahlman [8] | Sahlman, Stevenson and Bhide [9] | Damodaran [10] |
|---|---|---|---|---|
| Seed stage | 50% - 70% | 50% - 70% | 50% - 100% | 50% - 70% |
| First stage | 40% - 60% | 40% - 60% | 40% - 60% | 40% - 60% |
| Second stage | 35% - 50% | 30% - 50% | 30% - 40% | 35% - 50% |
| Bridge/Initial Public Offering ("IPO") | 25% - 35% | 20% - 35% | 20% - 30% | 25% - 35% |

114.    Based on Family Hive LLC's history in that it was just launching their first products and that the valuation relied upon by Mr. Kinrich was created in July 2023, more than one year prior to launch, it is at most a Second Stage (Expansion Stage) company, if not a First Stage company.  Based on Betty B Holdings LLC's history in that it had recently launched its second product while its first product was failing, it would also be considered a Second Stage (Expansion Stage) company. The discount rates suggested by the KPMG article summary of the expected rates of return by venture capitalists for Second Stage companies are between 30% to 50%. The book co-edited by Mr. Kinrich includes a similar chart, with required rates of return reported between 30% to 50% for Second Stage / Expansion Stage companies.[175] In my opinion, a discount rate in this range of 30% to 50% would be more reasonable to use for any estimate of future damages related to Betty B Holdings or Family Hive.

115.    Further, even if it were reasonable to use Mr. Kinrich's methodology, there are a number of assumptions in his analysis that I believe are not appropriate. My most significant disagreements with the assumptions that Mr. Kinrich derives from his inputs to his discount rate are the Company-Specific Premium of 1% that he uses in both of his calculations in Appendices C.4 and C.5 and the beta he has used in his weighted Average Cost of Capital. In both of his calculations of the Company Specific Premium he footnotes his assumed Premium in Footnote [D] in Appendix C.5 and Footnote [F] in Appendix C.4 which state "Company-Specific Premium, reflects the inherent risks. The model uses a 1% Company-Specific Premium." There is no citation to any source for this percentage.

---

[174] KPMG, "Start-ups and Early Stage Companies, A Valuation Insight," May 2021, <https://assets.kpmg.com/content/dam/kpmg/kw/pdf/insights/2021/05/valuation-startup-web.pdf>, accessed November 1, 2025. [4.10]

[175] Everett P. Harry III, Mark E. Hayden, and Wallace Ng, "Chapter 20 – Discount Rates in Practice," in *Lost Profits Damages: Principles, Methods, and Applications*, Second Edition, ed. Everett P. Harry, III and Jeffrey Kinrich (Valuation Products and Services, 2022), p. 575. [4.9]

51

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

116.    Mr. Kinrich appears to make no adjustment for the fact that Blake Brown and Betty Booze are new products and would be considered new businesses. I do not see how he has taken these facts into consideration in calculating the company specific risk in this case.

117.    Mr. Sippel, another damages expert retained by Blake Lively to calculate her alleged damages related to her professional opportunities for acting, endorsements, and speaking engagements, also brings his damages to a present value using a discount rate. He uses similar methodologies to Mr. Kinrich. However, his "Company Specific" Risk Premium is 7.5% (Minimum scenario) and 11.5% (Maximum scenario).[176] I believe that Mr. Sippel's company specific risk premium is closer to the range that Mr. Kinrich should have used in his calculations. Ms. Lively is the key spokesperson for the Blake Brown brand, and the underlying risk of an early-stage company based largely on Ms. Lively's reputation should be considered at least as risky as Ms. Lively's future earnings.

118.    In my professional judgment, even this is not enough of an adjustment to Mr. Kinrich's discount rate. His discount rate is derived from the capital asset pricing model. As I explained above, considering the valuations used by Mr. Kinrich, a more appropriate yardstick to arrive at a discount rate is the rates that venture capitalists demand to invest in companies at a similar stage of their existence.

119.    The yardsticks that Mr. Kinrich uses to estimate the beta in his Capital Asset Pricing Model are companies that are far more mature than either Family Hive, LLC or Betty B Holdings LLC. These yardsticks will not properly reflect all the risks facing these companies vs. the risks of the median company in Mr. Kinrich's peer group companies. A study dealing with high-tech startups showed that the average capitalization rate was 39.5%, suggesting a beta of 6.4. This is compared to betas of between 0.5 and 2 for mature public companies.[177] I realize that Family Hive LLC and Betty B Holdings LLC are not high-tech companies and face different risks, however Mr. Kinrich has used betas in the same range as the mature public companies in the high-tech industry.

---

[176] Expert Report of Michael Sippel, October 17, 2025, p. 11, ¶ 42.

[177] Gunter Festel et al., "Valuation of Early Stage High-tech Start-up Companies," International Journal of Business 18(2) 2013, p. 223, <https://ijb.cyut.edu.tw/var/file/10/1010/img/859/V183-3.pdf>, accessed November 1, 2025. [4.13]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

120.    One study shows that "Unfortunately, the method (CAPM) which predicts the expected return of an asset as a function of its beta, is not always accurate."[178] The article goes on to say "By examining 12,000 takeover bids for private companies between 1997 and 2015, the authors of a forthcoming study show that using the CAPM to value targets leads to valuation errors that correspond to an average range of 12% to 33% of deal values."[179]

121.    The beta that Mr. Kinrich uses for Family Hive LLC is 1.04 which is based on the median sum beta for GICS Code 30302010 (Personal Care Products).[180] This yardstick is in no way comparable to the risks associated with the cash flows of Blake Brown.  The beta that Mr. Kinrich uses for Betty B Holdings LLC is 0.51 which is based on the median sum beta for GICS Code 302010 (Beverages).[181] This yardstick is in no way comparable to the risks associated with the cash flows of Betty Booze.

122.    In calculating the risk-adjusted cost of capital, risk premiums are applied to the discount rate that goes well beyond the scope of the Capital Asset Pricing Model (CAPM), which can be used to value established companies and established business models,[182] which clearly Family Hive and Blake Brown are not.

> **d)    Mr. Kinrich's Present Value Date of the Trial Date is not appropriate. His Analysis is an "ex ante" approach and so should be discounted to the date of injury in August 2024.**

123.    Mr. Kinrich uses a present value date of March 31, 2026.[183] This is an appropriate present value date if his damage calculation was "ex post".[184] An "ex post" damage claim considers all information knowable up to the date of trial. An "ex ante" damage claim only

---

[178] Betsy Vereckey, "Dealmakers Take Heed: CAPM Can Cause Significant Valuation Errors," March 5, 2020, MIT Sloan, https://mitsloan.mit.edu/ideas-made-to-matter/dealmakers-take-heed-capm-can-cause-significant-valuation-errors, accessed November 1, 2025. [4.14]

[179] Betsy Vereckey, "Dealmakers Take Heed: CAPM Can Cause Significant Valuation Errors," March 5, 2020, MIT Sloan, https://mitsloan.mit.edu/ideas-made-to-matter/dealmakers-take-heed-capm-can-cause-significant-valuation-errors, accessed November 1, 2025. [4.14]

[180] Expert Report of Jeffrey H. Kinrich, Exhibit 1,3, Appendix C.4, Footnote [B].

[181] Kinrich Report, Exhibit 2, Appendix D.7, Footnote [B].

[182] Rodl & Partner, "Determining Cost of Capital When Valuing Start-ups," February 20, 2024, <https://www.roedl.com/insights/capital-costs/adjusted-market-return-vc-method>, accessed November 1, 2025. [4.15]

[183] Kinrich Report, Exhibit 1.A and 2.A Notes, Footnote [G].

[184] Litigation Services Handbook, Fourth Edition, Chapter 8, (Wagner, Dunbar, and Weil), *Ex Ante* versus *Ex Post* Damages Calculations, at p. 11. [6.22]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

considers information known up to the date of the wrongful act and is present valued to that date.[185]

124.    Mr. Kinrich appears to be using an "*ex ante*" approach in his damages calculation. All of his inputs for projected revenues and EBITDA are from sources that existed before the alleged wrongful acts. I did not see any information that was used to adjust these numbers for factors that affecting these projections that occurred between the alleged wrongful acts and the trial date in this matter. Therefore, he should have discounted his damages to the period of the Alleged Retaliation Campaign and then brought that figure up to the trial date using a prejudgment interest rate.

### 6.    Mr. Kinrich's analysis of other celebrity brands does not corroborate his use of the projections that he relies upon.

#### a)    Overview of Mr. Kinrich's analysis

125.    In the final section of Mr. Kinrich's report, he provides a general overview of the celebrity owned brand industry, specifically looking at the performance of celebrity owned beauty and alcohol brands.[186] Mr Kinrich argues that the recent "boom" in celebrity-owned brands provides additional support for his projected growth rates for Blake Brown and Betty Booze, and ultimately concludes that "[i]ndustry trends show rapid growth for celebrity-owned alcohol brands, many of which have leveraged their owner's fame to drive marketing campaigns, form partnerships, and gain recognition at tasting competitions. These trends suggest that the projected growth of Betty Booze absent the alleged misconduct was reasonable and consistent with the performance of other celebrity-owned alcohol brands."[187]

126.    For Blake Brown, Mr. Kinrich cites the rapid growth of two specific celebrity-owned beauty brands: Selena Gomez's Rare Beauty and Hailey Bieber's Rhode. Additionally, Mr. Kinrich cites to Nielson data stating that "sales of celebrity-owned beauty brands in the U.S. surpassed $1 billion in 2023, representing 57.8 percent growth from the previous year, which is higher than the 11.1 percent increase in overall beauty industry sales" and that "as of 2024, more than 20 million U.S. households purchased a celebrity-owned beauty brand, an increase of 21.9 percent from the previous year."[188]

---

[185] Litigation Services Handbook, Fourth Edition, Chapter 8, (Wagner, Dunbar, and Weil), *Ex Ante* versus *Ex Post* Damages Calculations, at p. 5. [6.22]
[186] Kinrich Report, pp. 35-42.
[187] Kinrich Report, pp. 36 and 41-42..
[188] Kinrich Report, pp. 36-38.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

127.    For Betty Booze, Mr. Kinrich points towards several examples of highly successfully celebrity-backed alcohol brands that achieved rapid growth or large buyouts. Mr. Kinrich specifically looks at two tequila brands, Casamigos from George Clooney and Aviation American Gin owned in part by Ryan Reynolds, a bottled gin and ready-to-drink cocktail line from Dr. Dre and Snoop Dogg, and finally Sprinter, a vodka soda brand founded by Kylie Jenner.[189] Mr. Kinrich cites to SOMM TV Magazine stating that the "number of celebrity-owned alcohol brands [has] increased by over 700 percent between 2018 and 2022, from fewer than 40 brands to more than 350 brands" and IWSR stating that "[i]n 2022 and 2023, sales of celebrity-owned tequila brands grew at 40 percent and 16 percent, respectively, higher than the 13 percent and 3 percent growth in the overall tequila industry."[190]

### b)    Disagreements with Mr. Kinrich's analysis

128.    In his discussion, Mr. Kinrich chooses to only highlight a handful of successful celebrity brands and fails to address the large number of celebrity brands that have failed or have never achieved any meaningful long-term growth. For example, HotStart VC, a venture capital firm that is exclusively focused on celebrity-founded brands, states that 90% of celebrity-founded brands fail within 3 years.[191] Another example is provided by Cascadia Managing Brands, a brand management, sales, and marketing firm specializing in the food and beverage industry, states that more than 70% of celebrity food and beverage brands fail in the industry.[192]

129.    The Cascadia Managing Brands article highlights several notable failures of celebrity food and beverage brands:[193]

- Kylie Jenner's Glow: Marketed as an energy and hydration beverage, it quickly became evident that this product was more about cashing in on

---

[189] Kinrich Report, pp. 39-41.

[190] Kinrich Report, p. 39.

[191] Scott Van den Berg, "Celebrity-Product-Market-Fit: The Framework That Predicts Which Celebrity Brands Hit $100M," HotStart, September 10, 2025, <https://hotstart.beehiiv.com/p/celebrity-product-market-fit-the-framework-that-predicts-which-celebrity-brands-hit-100m>, accessed November 2, 2025. [3.8] *See also* HotStart VC, "About," <https://www.hotstart.vc/about/>, accessed November 2, 2025. [3.9]

[192] Cascadia Managing Brands, "Why More than 70% of Celebrity Food and Beverage Brands Fail in the Industry," July 21, 2024, <https://cascadiafoodbev.com/the-celebrity-endorsement-gamble-why-more-than-70-of-celebrity-food-and-beverage-brands-fail/>, accessed November 2, 2025. [7.1] *See also* Cascadia Managing Brands, "Contact Us," <https://cascadiafoodbev.com/contact-us/>, accessed November 2, 2025. [7.2]

[193] Cascadia Managing Brands, "Why More than 70% of Celebrity Food and Beverage Brands Fail in the Industry," July 21, 2024, <https://cascadiafoodbev.com/the-celebrity-endorsement-gamble-why-more-than-70-of-celebrity-food-and-beverage-brands-fail/>, accessed November 2, 2025. [7.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Jenner's fame than offering any real benefits. Consumers weren't fooled and the product failed to make a lasting impression.

- Jason Momoa's Mananalu Water: Despite Momoa's passionate environmental advocacy, Mananalu Water struggled with logistics and failed to stand out in the competitive bottled water market.

- Kate Hudson's Nutrition Line: Hudson launched a range of nutritional products that, while initially popular, failed to sustain consumer interest. The products didn't offer anything particularly unique or compelling compared to existing options on the market.

- Shaquille O'Neal's Shaq Fu Punch: Shaq's attempt to enter the beverage market with Shaq Fu Punch was met with enthusiasm at first, but it quickly lost steam. The product couldn't sustain its initial momentum and failed to become a staple in the competitive beverage market.

- Selena Gomez's Revival Ice Cream: Despite Gomez's immense popularity, her foray into the ice cream business didn't take off as expected. The product struggled with quality issues and failed to differentiate itself in a crowded market, leading to its eventual decline.

- David Beckham's Organic Coconut Water: Beckham's venture into the health drink market with an organic coconut water brand also fell flat. The product faced stiff competition and couldn't maintain a unique selling point to keep consumers interested.

130. I note that the July 2024 article cites Betty Buzz as an example of a success story, calling out Ms. Lively's sober lifestyle as a reason for success: "[t]ake Blake Lively's Betty Buzz, for example. Lively, who openly talks about her sober lifestyle, created a line of non-alcoholic mixers that not only taste great but are made with high-quality ingredients. Her genuine connection to the product shines through, making it a hit with consumers."[194] As discussed above, the company was being wound down within one year.

131. Additionally, many of the successful celebrity brands that Mr. Kinrich uses as support are not apt comparisons for Blake Brown and Betty Booze. In his first example of a successful celebrity brand, Mr. Kinrich points towards an extremely successful outlier with Skims.[195] Mr. Kinrich fails to note that Skims, which is a clothing brand specializing in underwear, loungewear, and shapewear,[196] operates in a completely different industry than both Blake Brown and Betty Booze, making the use of this brand as support for Blake Brown and Betty Booze an unsubstantiated example.

---

[194] Cascadia Managing Brands, "Why More than 70% of Celebrity Food and Beverage Brands Fail in the Industry," July 21, 2024, <https://cascadiafoodbev.com/the-celebrity-endorsement-gamble-why-more-than-70-of-celebrity-food-and-beverage-brands-fail/>, accessed November 2, 2025. [7.1]

[195] Kinrich Report, p. 36.

[196] Skims, "About," <https://skims.com/pages/about>, accessed November 1, 2025. [7.3]

56

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

132.    In regard to the examples Mr. Kinrich uses for celebrity-owned *beauty* brands, he once again chooses two highly successful outliers, Selena Gomez's cosmetics brand Rare Beauty and Hailey Bieber's skincare brand Rhode.[197] Although these companies exist within the beauty industry, they are selectively picked examples and they are in different segments, cosmetics and skincare, compared to Blake Brown's haircare.

133.    Mr. Kinrich also fails to make any note of the large amount of competition and overcrowding present in the beauty industry, which makes it more difficult for newer brands to enter the space or individually achieve significant growth in sales. Mr. Kinrich's cited NielsenIQ article makes note of the high competition and large amount of celebrity brand launches, stating that "[g]iven the sheer volume of celebrity Beauty launches, it's important for founders to have a clear purpose for starting the brand."[198] Additionally, a 2024 report from the Capgemini Research Institute states that "[s]ince 2019, there have been 42 celebrity beauty brand launches."[199]

134.    In regards to Mr. Kinrich's brand comparisons within the *beverage* industry, the IWSR data that Mr. Kinrich cites for a celebrity-owned tequila brand growth rate only provides information regarding the growth in celebrity alcohol brands, rather than any information regarding failure rates.[200] In fact, the main header for the article states that "while celebrity-backed brands tend to outperform their total category, celebrity involvement doesn't always guarantee success."[201] The potential (and even high likelihood) of failure is a fact that Mr. Kinrich seems to repeatedly ignore in his analysis. Additionally, according to the IWSR article, the growth in celebrity-backed tequila is partly due to timing, since "the renaissance of the tequila category has coincided neatly with the rise of celebrity spirits."[202] So the success of the celebrity-backed tequilas can't be entirely attributed to the celebrity involvement. In fact, the IWSR article also

---

[197] Kinrich Report, pp. 37-38.

[198] Nielsen Consumer LLC, "Celebrity-founded Beauty brands surpass $1 billion in sales," January 22, 2024, <https://nielseniq.com/global/en/insights/analysis/2024/celebrity-founded-beauty-brands-surpass-1-billion-in-sales/>, accessed November 2, 2025. [7.4]

[199] Capgemini Research Institute, "What Matters to Today's Consumer 2024 consumer behavior tracker for the Consumer Products and Retail Industries," 2024, <https://www.sogeti.com/wp-content/uploads/sites/3/2024/10/CRI_TODAYS-CONSUMER_WEB.pdf>, p. 31. [7.5]

[200] Kinrich Report, p. 39. *See also* IWSR, "How impactful are celebrity-backed brands?" May 9, 2024, <https://www.theiwsr.com/insight/how-impactful-are-celebrity-backed-brands/>, accessed November 1, 2025. [7.6]

[201] IWSR, "How impactful are celebrity-backed brands?" May 9, 2024, <https://www.theiwsr.com/insight/how-impactful-are-celebrity-backed-brands/>, accessed November 1, 2025. [7.6]

[202] IWSR, "How impactful are celebrity-backed brands?" May 9, 2024, <https://www.theiwsr.com/insight/how-impactful-are-celebrity-backed-brands/>, accessed November 1, 2025. [7.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

states that a "celebrity-backed drink does not always outperform the market, however. In 2023, volumes of celebrity-owned or backed gins actually declined by 1%, against a gin category that grew by 4%."[203] Mr. Kinrich did not cite to this statistic in his discussion.

135.    Further, Mr. Kinrich notes that the number of celebrity-owned alcohol brands have "increased by over 700 percent between 2018 and 2022, from fewer than 40 brands to more than 350 brands."[204]  However, that growth simply makes the segment all that much more competitive and makes it more difficult for a single celebrity brand to be successful.  He doesn't make any adjustments to account for the overcrowding and saturation of celebrity alcohol brands, which makes it an increasingly more difficult environment for new brands, such as Betty Booze which was launched in June 2023,[205] to break through and become successful.

136.    In terms of Mr. Kinrich's discussion of specific brands in the beverage industry, his use of Aviation Gin as an example to provide support for his projected growth of Betty Booze is also unsubstantiated. Aviation Gin was initially founded in 2006 by two non-celebrities, Christian Krogstad and Ryan Magarian, and only became a celebrity brand when Ryan Reynolds acquired a majority stake in the company over a decade later in 2018.[206]  This example is far cry from the situation of Betty Booze, starting a brand new alcoholic beverage brand from scratch, as Aviation Gin was already an established product and brand with over a decade of business experience before Ryan Reynolds became involved in the company.

137.    Out of all the examples that Mr. Kinrich cites as support, he fails to consider what is clearly the most apt comparison and example for Betty Booze: the Betty Buzz benchmark. Betty Buzz was launched in September 2021, offering a line of non-alcoholic, sparkling mixers, had the same celebrity brand (Blake Lively), had the same management, and has now started winding down in 2025, as discussed above.  Further, the celebrity-backed VC company article I mentioned above that states 90% of celebrity-founded brands fails within 3 years highlights that one of the key elements of a successful celebrity-founded brand is that the product fits who they authentically

---

[203] IWSR, "How impactful are celebrity-backed brands?" May 9, 2024, <https://www.theiwsr.com/insight/how-impactful-are-celebrity-backed-brands/>, accessed November 1, 2025. [7.6]

[204] Kinrich Report, p. 39.

[205] PR Newswire, "Blake Lively Announces the Launch of Betty Booze, A New Line of Gourmet Sparkling Canned Cocktails," June 29, 2023. [4.2]

[206] Padia, Vrushali, "The 'Aviation Gin' Story: Here's How Ryan Reynolds Grew The $610 Million Alcohol Brand," TheRichest, August 3, 2023, <https://www.therichest.com/rich-powerful/the-aviation-gin-story-heres-how-ryan-reynolds-grew-the-610-million-alcohol-brand/>, accessed November 1, 2025. [7.9]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

are.[207]  And the article proceeds to provide an example of a successful brand, as well as an unsuccessful brand – J.Lo's ready-to-drink cocktail brand, which was deemed a poor fit because Jennifer Lopez doesn't' drink alcohol:[208]

**The Anatomy of Misalignment: J.Lo's $50M Mistake**

Now let's examine the opposite: Jennifer Lopez and Delola.

J.Lo has 251 million followers. That's 100x more than Dani Austin. She could lose 99%of her audience and still have more followers.

On paper, her ready-to-drink cocktail brand made sense. The RTD market isexploding. She's the definition of aspirational lifestyle. The math seemed obvious.

But there was one catastrophic flaw: Jennifer Lopez doesn't drink alcohol.

She's been vocal about it for years. "I don't drink or smoke or have caffeine," she toldInStyle. Her entire brand is built on discipline, wellness, and that famous glow.

Then she launches an alcohol brand. The disconnect was immediate and brutal:

**Her Persona**: Sober wellness icon

**Her Product**: Alcoholic beverages

**Her Market**: Women aspiring to her healthy lifestyle

The misalignment created cognitive dissonance. Fans felt betrayed. Media mocked the hypocrisy. Sales stagnated.

Even worse? Her ex-husband Ben Affleck's public battle with alcoholism made the optics toxic. Every Delola post triggered discussions about addiction, not cocktails.

138.    As explained above in Section V.B.4, this situation for J.Lo is similar to Betty Booze and Blake Lively, who doesn't drink alcohol.  I also note that as mentioned above in this section, a July 2024 article cites Betty Buzz as an example of a success story, calling out her sober lifestyle

---

[207] Scott Van den Berg, "Celebrity-Product-Market-Fit: The Framework That Predicts Which Celebrity Brands Hit $100M," HotStart, September 10, 2025, <https://hotstart.beehiiv.com/p/celebrity-product-market-fit-the-framework-that-predicts-which-celebrity-brands-hit-100m>, accessed November 2, 2025. [3.8] *See also* HotStart VC, "About," <https://www.hotstart.vc/about/>, accessed November 2, 2025. [3.9]

[208] Scott Van den Berg, "Celebrity-Product-Market-Fit: The Framework That Predicts Which Celebrity Brands Hit $100M," HotStart, September 10, 2025, <https://hotstart.beehiiv.com/p/celebrity-product-market-fit-the-framework-that-predicts-which-celebrity-brands-hit-100m>, accessed November 2, 2025. [3.8] (emphasis in original)

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

as a reason for success: "[t]ake Blake Lively's Betty Buzz, for example. Lively, who openly talks about her sober lifestyle, created a line of non-alcoholic mixers that not only taste great but are made with high-quality ingredients. Her genuine connection to the product shines through, making it a hit with consumers."[209]  As discussed above, the company was being wound down within one year.  Even with this match between Blake Lively's celebrity lifestyle and a non-alcoholic healthy beverage, Betty Buzz still failed as a product. The opposite facts relate to Betty Booze. Mr. Kinrich has not explained why he ignores the Betty Buzz story, and instead selectively picks examples of celebrity brands of *other* celebrities in his analysis.

### C.  Disagreements with the Damages Opinions and Bases of Opinions of Michael Sippel and Richard Marks:

1.  **Mr. Marks and Mr. Sippel appear to ignore certain constraints of Blake Lively's ability to accept acting or producing opportunities, including taking opportunities at the same time as her husband and the fact that her husband is the second highest paid actor in the world.**

139.    There are certain constraints on Blake Lively accepting offers as an actor. Warren Zavala, who was Blake Lively's agent for ten years,[210] testified that Ms. Lively is a responsible parent and after she started a family she has worked intermittently.[211] She is married to Ryan Reynolds and they try not to work at the same time and as a result "it's actually been more challenging to get her to do a job in a moment in which it is a good opportunity for her and also works for her lifestyle."[212]

140.    Ryan Reynolds is a far more successful actor than Blake Lively. In 2020 and 2024 he was the second highest paid actor in the world.[213] Even though Blake Lively is an "A" list actress[214], the married couple is far better off the more Ryan Reynolds works than if Blake Lively works.

---

[209] Cascadia Managing Brands, "Why More than 70% of Celebrity Food and Beverage Brands Fail in the Industry," July 21, 2024, <https://cascadiafoodbev.com/the-celebrity-endorsement-gamble-why-more-than-70-of-celebrity-food-and-beverage-brands-fail/>, accessed November 2, 2025. [7.1]

[210] Deposition of Warren Zavala, September 18, 2024, p. 14. [4.16]

[211] Deposition of Warren Zavala, September 18, 2024, pp. 175-176. [4.16]

[212] Deposition of Warren Zavala, September 18, 2024, pp. 177-179, 298. [4.16]

[213] Madeline Berg, "The Highest-Paid Actors of 2020," August 11, 2020, Forbes, <https://www.forbes.com/sites/maddieberg/2020/08/11/the-highest-paid-actors-of-2020-dwayne-johnson-ryan-reynolds/>, accessed November 3, 2025. [7.7] *See also* Matt Craig, "The Highest-Paid Actors of 2024," February 28, 2025, Forbes, <https://www.forbes.com/sites/mattcraig/2025/02/28/the-highest-paid-actors-of-2024/>, accessed November 3, 2025. [7.8]

[214] Deposition of Warren Zavala, September 18, 2024, pp. 176-177. [4.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

141.    Mr. Zavala could not recall any feature films that Blake Lively made in the two years before It Ends With Us.[215] When asked about how many feature films Blake Lively did in the five years before It Ends With Us, Mr. Zavala could only recall two, Rhythm Section in 2017 or 2018 and A Simple Favor.[216]

142.    Another factor affecting Blake Lively's earnings since It Ends With Us is that Hollywood is suffering and there are fewer productions now than before the Writers Guild and SAG Strikes.[217] Justin Grey Stone, Blake Lively's talent manager for 18 years"[218] testified that "And again, I repeat that our business in a time of transition right now, where the ability for people to open a movie theatrically has significantly shrunk."[219] Mr. Zavala testified that Hollywood is suffering and there are fewer productions now than before the Writers Guild strike.[220] Any calculation of damages to Blake Lively must take this into consideration. I do not see anywhere in Mr. Marks' Expert Report where he took any of the above factors into consideration in arriving at his estimate of lost professional opportunities for Blake Lively.

### 2.    Mr. Marks opines about (and Mr. Sippel uses in his analysis) lost future compensation per film that far exceeds what Blake Lively has earned per film over the last 8+ years.

143.    Mr. Marks opines that in the five years following the premiere of the film It Ends With Us, Ms. Lively was positioned to secure deals including three to four lead roles, including a role in a prequel or sequel to It Ends With Us in which he opines "Ms. Lively would have been expected to receive fixed compensation in the range of $15,000,000 to $20,000,000, with profit participation between 15-20 points" and other major studio theatrical films for which he opines "Ms. Lively would have been expected to receive fixed compensation ranging from $10,000,000 to $15,000,000 per project, plus profit participation in the form of 10-15 percentage points."[221] Mr. Sippel uses these opinions as inputs to his analysis, except that he "conservatively" excludes participations for the other major studio theatrical films (but he includes participations for the It Ends With Us prequel / sequel).[222]

---

[215] Deposition of Warren Zavala, September 18, 2024, pp. 112-113. [4.16]
[216] Deposition of Warren Zavala, September 18, 2024, p. 13. [4.16]
[217] Deposition of Warren Zavala, September 18, 2024, p. 294-295. [4.16]
[218] Deposition of Justin Grey Stone, October 6, 2025, p. 13. [4.17]
[219] Deposition of Justin Grey Stone, October 6, 2025, p. 406. [4.17]
[220] Deposition of Warren Zavala, September 18, 2024, p. 294. [4.16]
[221] Expert Report of Richard Marks, October 17, 2025, p. 1.
[222] Sippel Report, p. 4.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

144.    I understand that Defendants' expert Emanual Nunez opines that Mr. Marks' opinions lack any basis in fact and that Blake Lively would not command the kind of opportunities or compensation that Mr. Marks identifies in his report.[223]  I note that the opinions expressed by Mr. Marks are significantly higher than the amounts that Blake Lively has earned in her starring roles in the last eight years.  As mentioned above, when asked about how many feature films Blake Lively did in the five years before It Ends With Us, Mr. Zavala could only recall two: Rhythm Section in 2017 or 2018 and A Simple Favor[224]  It Ends With Us and A Simple Favor 2 (Another Simple Favor) were released in 2024 and 2025, respectively.  Mr. Marks identifies these same films as the movies that Blake Lively has starred in since 2017.[225]

145.    Figure 12 and Figure 13 below summarize the fixed compensation and profit participation (if any was identified) from Blake Lively's contracts for the four movies identified above, as well as Mr. Marks' opined minimum and maximum compensation that Blake Lively would earn for an It Ends With Us prequel/sequel and for other major studio theatrical films.  As reflected in Figure 12 and Figure 13 below, Mr. Marks' opinions far exceed the actual earnings that Blake Livley has earned since 2017.

---

[223] Expert Report of Emanual Nunez, November 3, 2025, p. 3.
[224] Deposition of Warren Zavala, September 18, 2024, p. 113. [4.16]
[225] Expert Report of Richard Marks, October 17, 2025, p. 9.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 12: Comparison of Blake Lively's Fixed Compensation in Past 4 Films to Mr. Marks' Opinions About Lost Compensation[226]**



---

[226] Schedule 1.1. [1.2] *See also* Expert Report of Richard Marks, October 17, 2025, p. 1. *See also* The Numbers, "Blake Lively – Box Office," <https://www.the-numbers.com/person/86530401-Blake-Lively#tab=acting>, accessed November 3, 2025. [7.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 13:  Comparison of Blake Lively's Profit Participation in Past 4 Films to Mr. Marks' Opinions About Lost Compensation[227]**



3. **Mr. Marks and Mr. Sippel assume the only acting or producing opportunity that Blake Lively will obtain in the next five years is the actual role she played in the Secrets of the Penguins. Clearly, Blake Lively is going to get more acting and producing projects in the next five years. Ignoring this offset overstates the damages to Blake Lively's lost professional opportunities.**

146.    As far as future work, Mr. Zavala testified about the effect of this litigation.  "There have been people that have taken the position that it would be difficult to hire her until they know the destiny of what this conversation is."[228] He then testified that Blake Lively will get work whether she prevails in this litigation or not.[229] Mr. Marks and Mr. Sippel's damages calculation is

---

[227] Schedule 1.1. [1.2] *See also* Expert Report of Richard Marks, October 17, 2025, p. 1. *See also* The Numbers, "Blake Lively – Box Office," <https://www.the-numbers.com/person/86530401-Blake-Lively#tab=acting>, accessed November 3, 2025. [7.12]

[228] Deposition of Warren Zavala, September 18, 2024, pp. 148 and 287. [4.16]

[229] Deposition of Warren Zavala, September 18, 2024, p. 149. [4.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

inconsistent with Blake Lively's agent's testimony. Mr. Zavala believes Blake Lively will get work even if she loses this litigation.

147.    The only deduction for actual professional net amounts paid in Mr. Sippel's damages calculation is for a payment in February 2025 for Secrets of the Penguins in the amount of $157,500 ($210,000 * 75%).[230] Mr. Sippel appears to assume that Blake Lively will have not one penny of additional compensation from acting or producing through 2029. If that is true, there is a total failure of mitigating her damages. This assumption is clearly inconsistent with the testimony of Blake Lively's agent as set out in the immediate paragraph above. Without a proper offset for Blake Lively's likely compensation in the real world through 2029, Mr. Sippel's damages calculation overstates any possible damages Blake Lively has suffered.

148.    It appears that Blake Lively on June 12, 2025 will be paid $500,000 in Producer Fees for the movie "The Survival List" plus 5% or Defined Proceeds. Mr. Sippel did not include this in his damage model.[231] Mr. Zavala also testified that a piece of development at Lionsgate with Mark Platt producing was set up in 2025.[232]

149.    Neither Mr. Marks nor Mr. Sippel have shown why Blake Lively's future professional opportunities are so different than other actors or celebrities that were able to have successful careers after some bad publicity. Some examples are Jane Fonda, Britney Spears, Martha Stewart, Mariah Carey, Naomi Campbell, Lindsay Lohan, Vanessa Williams, Shania Twain, Angelina Jole, Anne Hathaway, Elizabeth Taylor, Madonna, and Marilyn Monroe.[233]

150.    As stated in the Expert Report of Emanuel Nunez, data from one year of earnings cannot support five years of guaranteed losses.[234] During Blake Lively's entire career, her earnings have been cyclical. The "but for" world that Mr. Marks and Mr. Sippel model shows no cyclicality and higher earnings in every year of their five-year damage scenario than Blake Lively had ever earned in her decades long career. Further, as Emanuel Nunez points out in his Expert Report, not all of Blake Lively's movies where she is the lead is successful. For example, the

[230] Sippel Report, Exhibits 10.17.25, C – Main Summary.

[231] Producer Offer Memo, June 12, 2025 (Exhibit 24 to Deposition of Justin Grey Stone, October 6, 2025), BL-000039107-108. [5.16]

[232] Deposition of Warren Zavala, September 18, 2024, p. 115. [4.16]

[233] Jack Slater, "Celebrities Who Overcame Scandal and Came Back Stronger than Before, April 11, 2025, Woman & Home, <https://www.womanandhome.com/life/news-entertainment/celebrities-who-overcame-scandal-and-came-back-stronger-than-before/>, accessed October 30, 2025. [7.10]

[234] Expert Report of Emanual Nunez, November 3, 2025, p. 3.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Rhythm Section was a box office flop. [235] This movie was in 2020, four years before It Ends with Us, and did not prevent Blake Lively from getting the co-lead role in It Ends With Us. This is another fact that shows the unreasonableness of Mr. Mark's assumption that Blake Lively will get no significant acting roles in the next five years.

**4.    Mr. Sippel uses different present value dates for his discounting of future damages and his prejudgment interest for past damages.**

151.    Mr. Sippel discounts his future damages to March 31, 2026.[236] However, he calculates his prejudgment interest to April 15, 2026.[237] I assume he believes this is the date that judgment should be entered into. So, currently he uses a different present value date for his discounting future damages to the start of the trial and calculating prejudgment interest on past damages to the assumed end of the trial. This appears to be an inconsistency. Since Mr. Sippel's damages model does not rely on any information post the alleged legal violations, his damages model is an "ex ante" damages model and should be discounted to the date of the alleged wrongdoing, as I explained in my criticisms of Mr. Kinrich's damages models above in Section V.B.5.d).

**5.    Mr. Sippel's alternative damages model is more appropriate than his other damage models. However, it is still aggressive to assume Blake Lively will consistently make as much earnings as she did in a peak year for the next five years.**

152.    Blake Lively's yearly earnings have been very inconsistent throughout her career. The amount of work she has obtained yearly has not been consistent, as Mr. Sippel's damage model calculates. Instead, there are years where her earnings were significantly less that the amount of her earnings in her peak year that Mr. Sippel uses from August 6, 2023 to August 5, 2024.[238] Mr. Sippel's simplistic assumption that averages her earnings for each year of his five year damage study is clearly not what would happen and is consistent with the pattern of earnings from professional opportunities from the period before the alleged defamation campaign. Actors do not typically have consistent earnings. From the limited information I have seen produced in this case and the earnings I summarize in Figure 12 above, it appears that Blake Lively's earnings

---

[235] Expert Report of Emanual Nunez, November 3, 2025, pp. 5-6.

[236] Sippel Report, C4-A PV & Trial Date MAX, C4-B PV & Trial Date MIN, and D2 – ALT 1yr AVG PV.

[237] Sippel Report, C5-A Interest – T-Bill MAX, C5-B Interest-T-Bill MIN, and D3 – ALT 1yr Interest.

[238] Sippel Report, D1 – ALT 1 yr AVG.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

have been highly variable and it appears that the year used by Mr. Sippel was a peak year for Ms. Lively.[239]

153.    Although Blake Lively's earnings of $11.75 million are clearly significant. It is a fraction of what her husband, Ryan Reynolds, makes in a year. For example, Ryan Reynolds was paid a minimum of $20 million for Deadpool 2.[240] This is over twice the amount Blake Lively has been paid for a movie. This is only relevant to Blake Lively's future earnings because Ryan Renyolds and Blake Lively have agreed to not work at the same time because they have four young children and want a parent to be present in their children's lives. If there is a conflict between an opportunity for Blake Lively and Ryan Reynolds, it makes economic sense that Ryan Reynolds would take to opportunity, rather than Blake Lively. This fact would contribute to Blake Lively's inconsistent future earnings.

**D. Disagreements with The Damages Opinions and Bases of Opinions of Professor Ashlee Humphreys**

**1.    It appears that Professor Humphreys ignores the large amount of free positive publicity that would occur if Blake Lively wins this lawsuit, which is a necessary condition for and relevant to Professor Humpreys' cost to repair Blake Lively's reputation.**

154.    Dr. Humphreys' opinions are only relevant if Blake Lively is successful in this litigation. However, if she wins this lawsuit, the resulting free publicity from that victory would go a long way in restoring any alleged reputational harm. It does not appear that Dr. Humphreys has taken this into consideration in her Expert Report. I did not see any discussion of the flood of positive publicity and its results beneficial impact on Blake Lively's reputation if she prevails in this lawsuit.

## VI.    Documents, Data and Other Information Considered

155.    Volume 1, Tab 4 contains a complete list of documents I considered in forming my opinions.

---

[239] Schedule 1.1. [1.2]

[240] Allie Nelson, "'Deadpool' Has the Best Life! Ryan Reynolds' Net Worth in 2025 Shows He Truly Has It All," October 26, 2025, Parade, <https://parade.com/celebrities/ryan-reynolds-net-worth>, accessed October 30, 2025. [7.11]

67

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

## VII.    Potential Additional Analyses to Perform

156.    My opinions are based on the information received as of the date of my report.  I will consider any criticisms of my opinions or bases for my opinions brought to my attention at my deposition or offered by experts retained by Blake Lively which may cause me to change my opinions.

## VIII.    Compensation

157.    My current billing rate is $895 per hour. I also receive compensation from LitiNomics based on LitiNomics' staff billings on the case.


Michael J. Wagner

# Tab 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**
**Damages Analysis**
**Table of Contents**

| | |
|---|---|
| **Series 1** | **Summary of Blake Lively Agreements** |
| Schedule 1.1 | Summary of Blake Lively Agreements |

| | |
|---|---|
| **Series 2** | **Analysis of Blake Brown / Family Hive LLC Financials** |
| Schedule 2.1 | Blake Brown Target Pre-Launch Forecast vs Deloitte 2024 Forecast by Product |
| Schedule 2.2 | Blake Brown Weekly Sales Units per Store per Week by Product (8/3/2024 - 11/2/2024) |
| Schedule 2.3 | Blake Brown Website Royalties and Estimated Website Proportion of Retail Sales |
| Schedule 2.4 | Blake Brown Weekly Retail Sales (8/10/2024 - 6/28/2025) |
| Schedule 2.5 | Masstige Ambition/Conservative Projections from July 2023 Deloitte Presentation |
| Schedule 2.6 | Family Hive LLC Initial Business Plan |

| | |
|---|---|
| **Series 3** | **Analysis of Betty B Holdings Financials** |
| Schedule 3.1 | Summary of Betty Booze Net Revenue Projections 2024-2028 |
| Schedule 3.2 | Calculation of Betty Booze Net Revenue through 2100 using Mr. Kinrich's Scenarios |
| Schedule 3.3 | November 2023 Betty B (Combined) 5 Year Financial Model (2023LE - 2028F) |
| Schedule 3.4 | November 2023 Betty Booze 5 Year Financial Model (2023LE - 2028F) |
| Schedule 3.5 | November 2023 Betty Buzz 5 Year Financial Model (2023LE - 2028F) |
| Schedule 3.6 | February 2024 Betty B Consolidated 5 Year Plan (2023LE - 2028F) |
| Schedule 3.7 | February 2024 Betty Booze 5 Year Plan (2023LE - 2028F) |
| Schedule 3.8 | February 2024 Betty Buzz 5 Year Plan - Conservative Case & No Additional International Assumptions (2023LE - 2028F) |
| Schedule 3.9 | June 2024 Betty B Consolidated Income Statement (2023A - 2028F) |
| Schedule 3.10 | June 2024 Betty Booze 5 Year Financial Model (2023A - 2028F) |
| Schedule 3.11 | June 2024 Betty Buzz 5 Year Financial Model (2023A - 2028F) |
| Schedule 3.12 | October 2024 Betty B Holdings P&L (2023A - 2028F) |
| Schedule 3.13 | October 2024 Betty Booze 5 Year Financial Model (2023A - 2028F) |
| Schedule 3.14 | October 2024 Betty Buzz 5 Year Financial Model (2023A - 2028F) |
| Schedule 3.15 | May 2025 Betty B Income Statement 5 Year Model (2025F - 2029F) |
| Schedule 3.16 | May 2025 Betty Booze Income Statement 5 Year Model (2025F - 2029F) |
| Schedule 3.17 | May 2025 Betty Buzz Income Statement 5 Year Model (2025F - 2029F) |

Blake Lively v. Wayfarer Studios LLC. et al.
**Summary of Blake Lively Agreements**
**Summary of Blake Lively Agreements**

| # | Exhibit # | Bates | Effective Date | Blake Lively Related Parties | Other Parties | Agreement/Contract Title | Production Title |
|---|---|---|---|---|---|---|---|
| 1 | Stone 15 | BL-000038889-936 [5.6] | 7/30/2017 | Blakel, Inc. | SF1 Productions, Inc. | Memorandum of Agreement | A Simple Favor |
| 2 | Stone 16 | BL-000038967-9011 [5.7] | 11/8/2017 | Blakel, Inc. | TRS Productions Designated Activity Company | ARTST Loan Out Agreement "The Rhythm Section" | The Rhythm Section |
| 3 | N/A | BL-000039012-013 [5.8] | 11/8/2017 | Blakel, Inc. | TRS Productions Designated Activity Company | Side Letter to Artist Loan Out Agreement "The Rhythm Section" | The Rhythm Section |
| 4 | Stone 17 | BL-000038863-880 [5.9] | 7/17/2019 | B For Effort, Inc. | Amazon Studios LLC | First Look Agreement Additional Terms | Unspecified Amazon TV Series |
| 5 | N/A | BL-000039109-112 [5.10] | 7/17/2019 | B For Effort, Inc. | Amazon Studios LLC | Email: Blake Lively First Look - Closed Deal Term | Unspecified Amazon TV Series |
| 6 | N/A | BL-000039075-106 [5.11] | 8/30/2022 | Blakel, Inc. | Willow and Oak, Inc. | "SECONDS" — Blake Lively (Writer) | SECONDS |
| 7 | Stone 18 | BL-000039014-054 [5.12] | 8/30/2022 | Blakel, Inc. | Willow and Oak, Inc. | RE: "SECONDS" / Blake Lively / Director Agreement / Side Letter (Amendment to the Director Borrowing Agreement) | SECONDS |
| 8 | Stone 19 | BL-000021911-955 [5.13] | 2/10/2023 | Blakel, Inc. | SF2 Productions, Inc. | Memorandum of Agreement | A Simple Favor 2 |
| 9 | Stone 20 | HEATH_000041864-899 [5.14] | 5/5/2023 | Blakel, Inc. | It Ends With Us Movie LLC | Actor Loanout Agreement - No Quote/Non-Precedential | It Ends With Us |
| 10 | N/A | BL-000039184-193 [5.17] | 1/16/2024 | Blakel, Inc. | Paramount Pictures Corporation | Employment of Day Player | Brooklyn - OCTO CAT IF (VO) |
| 11 | Stone 23 | BL-000039060-074 [5.15] | 12/17/2024 | Blakel, Inc. | NG Channel Swallowtail, LLC | Non-Precedential/Non-Citable Talent Services Agreement | Secrets of the Penguins |
| 12 | Stone 24 | BL-000039107-108 [5.16] | 6/12/2025 | Blake Lively | Agent: Warren Zavala, WME Attorney: David Weber, Esq. and Lindsey Strasberg, Esq., SOWDLLP | Producer Offer Memo | The Survival List |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Schedule 1.1

| Fixed Compensation | Contingent Compensation |
|---|---|
| $1,000,000 | Two payments of $200,000 payable only if the film's domestic box office receipts ("DBOR") reach $100,000,000 and $120,000,000 respectively.<br><br>5% of gross receipts from the film (minus any Box Office Bonuses) after it reaches true cash breakeven.<br><br>Box Office Bonus of $200,000 payable once the film earns DBOR of $60,000,000 and additional bonuses of $200,000 (up to an aggregate of $4,000,000) each time the film earns an additional $7,500,000 beyond the initial payout point. |
| $2,500,000 | First Box Office Bonus of $200,000 payable once the film earns DBOR of $75,000,000 and then another bonus of $200,000 once DBOR reaches $80,000,000. After that bonuses are received for each $10,000,000 of DBOR up to an aggregate of $6,500,000 in the following increments:<br>- $200,000 reaching DBOR of $90,000,000<br>- $250,000 for every $10M DBOR increment from $100,000,000-$150,000,000<br>- $300,000 for every $10M DBOR increment from $160,000,000-$200,000,000<br>- $350,000 for every $10M DBOR increment from $210,000,000-$220,000,000 |
| Fixed compensation reduced to $2,250,000 | Amended with the addition of one further Bonus of $250,000 payable when DBOR reaches $70,000,000 |
| Amazon Service MAGR Payments are a one-time guaranteed fixed value payment per percentage point of Lively's MAGR beginning in the 3rd Series year to which all payments are credited against futures ones according to the following tiered schedule:<br>- Year 3: $30,000 per % point (1hr eps) or $10,000 per % point (0.5hr eps)<br>- Year 4: $200,000 per % point (1hr) or $100,000 per % point (0.5hr)<br>- Year 5: $400,000 per % point (1hr) or $250,000 per % point (0.5hr)<br>- Year 6: $700,000 per % point (1hr) or $400,000 per % point (0.5hr)<br>- Year 7: $1,000,000 per % point (1hr) or $550,000 per % point (0.5)<br>- After Year 7: Increases 10% each year going forward. | 25% of Modified Adjusted Gross Receipts ("MAGR") from each applicable Series minus any agency packages. This share can be reduced down to a minimum of 15% dependent on the number of contingent participation payable to all non-financing 3rd parties and can be further reduced to a minimum of 12.5% if total third-party participation exceeds 35% of MAGR.<br><br>Top 3 Program Bonus: If the series ranks as a "Top 3 Program" on Amazon in its 5th season or later, Lively's Amazon Service MAGR rates are replaced as follows:<br>- Year 5: $500,000 (1hr eps) / $300,000 (0.5hr eps)<br>- Year 6: $1,000,000 (1hr) / $500,000 (0.5hr)<br>- Year 7: $1,500,000 (1hr) / $700,000 (0.5hr)<br>- Year 8 and beyond: +10% cumulative annual increase each year.<br><br>Revenue from off-Amazon distribution: Lively will receive a share (equal to Lively's vested MAGR percentage) of the net receipts from Off-Amazon TV and consumer video distribution and merchandise sales. |
| Year 1: $1,000,000<br>Year 2: $1,000,000<br>Year 3: $1,200,000 | Pilot/Series Fees: For both 0.5hr and 1hr - $60,000 for pilot and per episode in year 1 with a 5% increases in subsequent seasons.<br><br>Contingent Compensation: 25% of 100% of MAGR which can be reduced dollar-for-dollar down to 15% by non-financing thirds, further reducible to 12.5% by amounts out over 35%.<br><br>Development Executive: Up to $300,000/year for mutually agreed development executive.<br><br>Award Bonuses: $25,000 for each Emmy/Golden Globe nomination for best series and an additional $50,000 for each win for best series.<br><br>Series Sales Bonus: $25,000 in year 1 if 6 episodes are produced. |
| $20,312 (50% paid on the start of services and 50% on delivery) | None |
| Development Fee: $10,000 (50% paid on signature of Agreement or commencement of services and 50% paid on Company's election to abandon or proceed with production of the film.)<br><br>If Company proceeds to production of the film Lively to be paid:<br>- Amount equal to the then-current Directors Guild of America ("DGA") theatrical scale (min. $282,945 for budgets over $11,000,000) paid over the course of the film's production. | None |
| $9,000,000 paid in 5 equal weekly installments over the scheduled period of Lively's services. | Streamer Bonus: If the film is bought out by a subscription video-on-demand ("SVOD") company for initial distribution, then 15% of the total buyout amount will be paid to Lively (minus any budget overages). |
| $1,750,000 paid on a weekly basis during the Scheduled Period.<br><br>If Lively works beyond the Scheduled Period and Free Days, then she will be paid $291,666.67 per week (or pro-rated for a partial week). | If Lively appears recognizably in the film as released to the public, she will receive 10% of the Modified Defined Gross Proceeds ("MDGP") of the film minus any Box Office Bonuses paid. This 10% is only paid after the film reaches the "Rolling Enhanced 10% Breakeven" and the total amount of contingent compensation shall be no less then the director's or any other cast member's amount of contingent compensation.<br><br>Box Office Bonus:<br>- $250,000 paid if the film's aggregate worldwide gross box office receipts reaches an amount equal to 3 times the film's direct cost.<br>- Additional $250,000 paid every time the box office gross reaches another 0.5x of the direct cost.<br><br>Award Bonus:<br>- Academy Awards: $100,000 for best actress nomination and $200,000 for win.<br>- Golden Globe: $75,000 for best actress nomination and $100,000 for win.<br>- SAG Awards: $50,000 for best actress nomination and $75,000 for win. |
| $1,158 + 10% per Day = $1,273.80 | None |
| Guaranteed pay of $210,000 for 3 episodes. | $70,000 per episode |
| $500,000 | 5% of Defined Proceeds |

**Blake Lively v. Wayfarer Studios LLC. et al.**                                               **Schedule 2.1**
**Analysis of Blake Brown / Family Hive LLC Financials**
**Blake Brown Target Pre-Launch Forecast vs Deloitte 2024 Forecast by Product**

| | [a] | [b] | [c] | [c] | |
| | **Blake Brown Presentation Product Name** | **Target Pre-Launch Forecast** | **Deloitte Forecast Product Name** | **Deloitte 2024 Forecast** | **Deloitte 2024 Forecast as Percent of Target Pre-Launch Forecast** |
|---|---|---|---|---|---|
| [d] | Strengthening Shampoo | 1.89 | Repair Shampoo | 3.33 | 176% |
| | Strengthening Mask | 1.21 | Repair Mask | 1.27 | 105% |
| | Nourishing Shampoo | 2.00 | Nourishing Shampoo | 2.48 | 124% |
| | Nourishing Mask | 0.93 | Nourishing Mask | 1.27 | 137% |
| | Rich Reset Pre-Shampoo Mask | 1.15 | Pre-Shampoo Mask | 2.38 | 207% |
| [e] | All-In-Wonder | 1.33 | Detangler | 2.38 | 179% |
| | Glam Mousse | 1.26 | Mousse | 1.16 | 92% |
| | Dry Shampoo | 1.80 | N/A | N/A | |
| | **Total** | **11.57** | | **14.26** | **123%** |

*Sources / Notes:*

[a] *Blake Brown Presentation, "Blake Brown Media Impact Overview," November 13, 2024 (Exhibit 22 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000034377-432 at '380. [3.1]*

[b] *Schedule 2.2*

[c] *BL-000039169.xlsm, Tab "c.Demand".*

[d] *I note that the product description for the Fundamental Strengthening Mask on the Blake Brown website states that it "restores the appearance of damaged hair." Therefore, I've paired it with Deloitte's Repair Shampoo.*
  *Blake Brown, "Fundamental Strengthening Mask," <https://www.blakebrownbeauty.com/products/fundamental-strengthening-mask?variant=41550479851587>, accessed October 30, 2025. [5.4]*

[e] *I note that the product description for the All-In Wonder on the Blake Brown website states that it is used for detangling. Therefore, I've paired it with Deloitte's Detangler product.*
  *Blake Brown, "All-In-Wonder Leave-In Potion," <https://www.blakebrownbeauty.com/products/all-in-wonder-leave-in-potion>, accessed October 30, 2025. [5.5]*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**
**Analysis of Blake Brown / Family Hive LLC Financials**
**Blake Brown Weekly Sales Units per Store per Week by Product (8/3/2024 - 11/2/2024)**

| Item | Target Pre-Launch Forecast | 8/3/2024 | 8/10/2024 | 8/17/2024 | 8/24/2024 | 8/31/2024 | 9/7/2024 | 9/14/2024 | 9/21/2024 | 9/28/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| Strengthening Shampoo | 1.89 | 5.42 | 17.58 | 4.49 | 4.29 | 2.70 | 1.89 | 1.71 | 1.78 | 1.82 |
| Strengthening Mask | 1.21 | 5.66 | 14.83 | 2.93 | 1.94 | 1.67 | 1.35 | 1.83 | 2.25 | 2.23 |
| Nourishing Shampoo | 2.00 | 6.86 | 17.54 | 4.71 | 5.38 | 3.06 | 2.30 | 1.89 | 1.74 | 1.45 |
| Nourishing Mask | 0.93 | 7.02 | 13.36 | 4.41 | 5.26 | 1.31 | 0.71 | 1.41 | 1.80 | 1.36 |
| Rich Reset Pre-Shampoo Mask | 1.15 | 0.66 | 7.22 | 3.96 | 2.55 | 1.65 | 1.19 | 0.90 | 0.66 | 0.54 |
| All-In-Wonder | 1.33 | 1.94 | 8.99 | 5.53 | 6.96 | 4.06 | 2.71 | 1.88 | 1.40 | 1.33 |
| Glam Mousse | 1.26 | 0.90 | 6.34 | 3.72 | 2.66 | 1.57 | 1.13 | 0.94 | 0.83 | 0.70 |
| Dry Shampoo | 1.80 | 1.81 | 8.87 | 5.47 | 5.21 | 3.13 | 2.19 | 2.13 | 1.79 | 1.40 |
| **Total** | **11.57** | **30.27** | **94.73** | **35.24** | **34.24** | **19.13** | **13.47** | **12.69** | **12.26** | **10.81** |

*Sources / Notes:*

*Blake Brown Presentation, "Blake Brown Media Impact Overview," November 13, 2024 (Exhibit 22 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000034377-432 at '380. [3.1]*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Schedule 2.2**

| 10/5/2024 | 10/12/2024 | 10/19/2024 | 10/26/2024 | 11/2/2024 | Average Units Per Store Per Week 8/10 - 11/2 |
|---|---|---|---|---|---|
| 1.90 | 1.48 | 1.29 | 1.19 | 1.06 | 3.32 |
| 2.00 | 1.52 | 1.40 | 1.56 | 1.33 | 2.83 |
| 1.78 | 1.83 | 1.65 | 1.60 | 1.33 | 3.56 |
| 1.43 | 1.17 | 1.18 | 1.39 | 1.31 | 2.78 |
| 0.60 | 0.57 | 0.43 | 0.37 | 0.26 | 1.61 |
| 2.16 | 2.78 | 2.38 | 2.04 | 1.56 | 3.37 |
| 0.91 | 0.92 | 0.84 | 0.81 | 0.61 | 1.69 |
| 2.00 | 2.18 | 1.92 | 1.72 | 1.36 | 3.03 |
| **12.78** | **12.45** | **11.11** | **10.67** | **8.82** | 22.18 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                     **Schedule 2.3**
**Analysis of Blake Brown / Family Hive LLC Financials**
**Blake Brown Website Royalties and Estimated Website Proportion of Retail Sales**

| Period | 2024 Royalty Amount | Period | 2025 Royalty Amount |
|---|---|---|---|
| AUGUST 2024 | $6,340.00 | JANUARY 2025 | $3,247.84 |
| NOVEMBER 2024 | $6,711.10 | FEBRUARY 2025 | $1,928.91 |
| AUGUST-DECEMBER 2024 | $8,408.87 | APRIL 2025 | $1,532.66 |
|  |  | MAY 2025 | $4,116.18 |
|  |  | JUNE 2025 | $1,542.99 |
| **Total** | **$21,460** |  | **$12,369** |
| [a] Implied Website Sales Based on 10% Royalty | $214,600 |  | $123,686 |
| [b] Total Retail Sales | $11,938,000 |  | $4,981,000 |
| [c] Estimated Website Proportion of Retail Sales | **1.8%** |  | **2.5%** |

*Sources / Notes:*

LOL HATA, LLC. General Ledger Report, 1/1/2024 - 7/14/2025, BL-000034271. [5.1]

[a]  Calculated as Total / 10%.

[b]  Schedule 2.4

[c]  Calculated as Implied Website Sales Based on 10% Royalty / Total Retail Sales.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**      **Schedule 2.4**
**Analysis of Blake Brown / Family Hive LLC Financials**
**Blake Brown Weekly Retail Sales (8/10/2024 - 6/28/2025)**

| Week Ending | 2024 Weekly Retail Sales | | Week Ending | 2025 Weekly Retail Sales |
|---|---|---|---|---|
| 8/10/2024 | $3,054,000 | [a] | 1/4/2025 | $143,000 |
| 8/17/2024 | $1,212,000 | | 1/11/2025 | $204,000 |
| 8/24/2024 | $1,158,000 | | 1/18/2025 | $197,000 |
| 8/31/2024 | $665,000 | | 1/25/2025 | $178,000 |
| 9/7/2024 | $459,000 | | 2/1/2025 | $182,000 |
| 9/14/2024 | $410,000 | | 2/8/2025 | $147,000 |
| 9/21/2024 | $420,000 | | 2/15/2025 | $145,000 |
| 9/28/2024 | $373,000 | | 2/22/2025 | $131,000 |
| 10/5/2024 | $434,000 | | 3/1/2025 | $139,000 |
| 10/12/2024 | $396,000 | | 3/8/2025 | $134,000 |
| 10/19/2024 | $389,000 | | 3/15/2025 | $123,000 |
| 10/26/2024 | $370,000 | | 3/22/2025 | $118,000 |
| 11/2/2024 | $308,000 | | 3/29/2025 | $122,000 |
| 11/9/2024 | $265,000 | | 4/5/2025 | $170,000 |
| 11/16/2024 | $270,000 | | 4/12/2025 | $123,000 |
| 11/23/2024 | $242,000 | | 4/19/2025 | $125,000 |
| 11/30/2024 | $244,000 | | 4/26/2025 | $97,000 |
| 12/7/2024 | $307,000 | | 5/3/2025 | $116,000 |
| 12/14/2024 | $253,000 | | 5/10/2025 | $123,000 |
| 12/21/2024 | $303,000 | | 5/17/2025 | $130,000 |
| 12/28/2024 | $294,000 | | 5/24/2025 | $344,000 |
| [a] 12/31/2024 | $112,000 | | 5/31/2025 | $425,000 |
| | | | 6/7/2025 | $350,000 |
| | | | 6/14/2025 | $326,000 |
| | | | 6/21/2025 | $298,000 |
| | | | 6/28/2025 | $391,000 |
| **2024 Total** | **$11,938,000** | | **2025 Total** | **$4,981,000** |

*Sources / Notes:*

Blake Brown Presentation, "Blake Brown Update," July 14, 2025, BL-000034433-436 at '435-436. [5.3]

[a] The graph on '435 includes an additional $112,000 corresponding to Week 1/4/2025 which is continued on '436 with an additional $143,000. $112,000 has therefore been added for the period ending 12/31/2024 and $143,000 has been added for the period ending 1/4/25.

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                                    **Schedule 2.5**
**Analysis of Blake Brown / Family Hive LLC Financials**
**Masstige Ambition/Conservative Projections from July 2023 Deloitte Presentation**

| Deloitte Projection Scenario | [a]<br>2024 | [a]<br>2025 | [a]<br>2026 | [a]<br>2027 | [a]<br>2028 | [a]<br>2029 | 2030 |
|---|---|---|---|---|---|---|---|
| Masstige Ambition Net Revenue | $19,000,000 | $42,000,000 | $87,000,000 | $112,500,000 | $132,000,000 | $147,000,000 | $153,500,000 |
| Masstige Conservative Net Revenue | $5,000,000 | $9,000,000 | $18,000,000 | $36,000,000 | $51,000,000 | $62,500,000 | $67,400,000 |
| Conservative % of Ambition Net Revenue | 26% | 21% | 21% | 32% | 39% | 43% | 44% |
| | | | | | | | |
| Masstige Ambition EBITDA | ($1,950,000) | $1,800,000 | $6,000,000 | $14,000,000 | $17,800,000 | $21,000,000 | $23,900,000 |
| Masstige Conservative EBITDA | ($2,300,000) | ($300,000) | $500,000 | $3,400,000 | $5,000,000 | $6,700,000 | $7,500,000 |
| Conservative % of Ambition EBITDA | 118% | -17% | 8% | 24% | 28% | 32% | 31% |

**Sources / Notes:**

*Deloitte Presentation, "Business Strategy & Haircare Financial Plan – July 2024 – Ellender Brown," July 2023 (Exhibit 7 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000021798-910 at '891. [2.14]*

[a]  *I note that exact values for the years 2024 - 2029 are not present within the graph on '889. Therefore, for these years values are estimated based on graph.*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                    Schedule 2.6
**Analysis of Blake Brown / Family Hive LLC Financials**
**Family Hive LLC Initial Business Plan**

### Haircare

| Minimum Sales | Contract Year 1 | Contract Year 2 | Contract Year 3 | Contract Year 4 | Contract Year 5 | Total |
|---|---|---|---|---|---|---|
| USA | $800,000 | $900,000 | $1,400,000 | $2,000,000 | $1,800,000 | $6,900,000 |
| UK | $300,000 | $300,000 | $500,000 | $600,000 | $800,000 | $2,500,000 |
| Australia | $200,000 | $300,000 | $500,000 | $700,000 | $800,000 | $2,500,000 |
| Germany | - | $100,000 | $200,000 | $200,000 | $300,000 | $800,000 |
| Italy | - | $100,000 | $100,000 | $200,000 | $200,000 | $600,000 |
| Canda | $100,000 | $100,000 | $100,000 | $100,000 | $100,000 | $500,000 |
| Brazil | $100,000 | $200,000 | $300,000 | $500,000 | $600,000 | $1,700,000 |
| France | - | $100,000 | $100,000 | $100,000 | $100,000 | $400,000 |
| India | - | $100,000 | $100,000 | $200,000 | $300,000 | $700,000 |
| Mexico | - | $100,000 | $200,000 | $400,000 | $500,000 | $1,200,000 |
| Russia | - | - | $100,000 | $100,000 | $100,000 | $300,000 |
| China | - | - | $100,000 | $200,000 | $300,000 | $600,000 |
| **Total** | **$1,500,000** | **$2,300,000** | **$3,700,000** | **$5,300,000** | **$5,900,000** | **$18,700,000** |

### Makeup

| Minimum Sales | Contract Year 1 | Contract Year 2 | Contract Year 3 | Contract Year 4 | Contract Year 5 | Total |
|---|---|---|---|---|---|---|
| USA | - | $2,000,000 | $2,100,000 | $2,500,000 | $2,600,000 | $9,200,000 |
| UK | - | $900,000 | $1,200,000 | $1,500,000 | $1,800,000 | $5,400,000 |
| Australia | - | $500,000 | $700,000 | $1,000,000 | $1,100,000 | $3,300,000 |
| Germany | - | $400,000 | $500,000 | $500,000 | $600,000 | $2,000,000 |
| Italy | - | - | $300,000 | $300,000 | $400,000 | $1,000,000 |
| Canda | - | $300,000 | $300,000 | $400,000 | $400,000 | $1,400,000 |
| Brazil | - | $300,000 | $400,000 | $500,000 | $800,000 | $2,000,000 |
| France | - | - | $200,000 | $300,000 | $300,000 | $800,000 |
| India | - | - | $200,000 | $400,000 | $500,000 | $1,100,000 |
| Mexico | - | $200,000 | $200,000 | $400,000 | $600,000 | $1,400,000 |
| Russia | - | - | $200,000 | $300,000 | $400,000 | $900,000 |
| China | - | - | $100,000 | $200,000 | $300,000 | $600,000 |
| **Total** | **$0** | **$4,600,000** | **$6,400,000** | **$8,300,000** | **$9,800,000** | **$29,100,000** |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**　　　　　　　　　　　　　　　　　　　　Schedule 2.6
**Analysis of Blake Brown / Family Hive LLC Financials**
**Family Hive LLC Initial Business Plan**

| | **Fragrances** | | | | | |
|---|---|---|---|---|---|---|
| **Minimum Sales** | **Contract Year 1** | **Contract Year 2** | **Contract Year 3** | **Contract Year 4** | **Contract Year 5** | **Total** |
| **USA** | - | - | $1,000,000 | $1,300,000 | $1,600,000 | **$3,900,000** |
| **UK** | - | - | $600,000 | $700,000 | $800,000 | **$2,100,000** |
| **Australia** | - | - | $300,000 | $400,000 | $500,000 | **$1,200,000** |
| **Germany** | - | - | $200,000 | $300,000 | $300,000 | **$800,000** |
| **Italy** | - | - | $200,000 | $300,000 | $300,000 | **$800,000** |
| **Canda** | - | - | $200,000 | $300,000 | $300,000 | **$800,000** |
| **Brazil** | - | - | $100,000 | $100,000 | $300,000 | **$500,000** |
| **France** | - | - | - | $300,000 | $300,000 | **$600,000** |
| **India** | - | - | - | $100,000 | $200,000 | **$300,000** |
| **Mexico** | - | - | $200,000 | $300,000 | $500,000 | **$1,000,000** |
| **Russia** | - | - | $100,000 | $100,000 | $200,000 | **$400,000** |
| **China** | - | - | $100,000 | $100,000 | $200,000 | **$400,000** |
| **Total** | **$0** | **$0** | **$3,000,000** | **$4,300,000** | **$5,500,000** | **$12,800,000** |

| | **Total Business** | | | | | |
|---|---|---|---|---|---|---|
| **Minimum Sales** | **Contract Year 1** | **Contract Year 2** | **Contract Year 3** | **Contract Year 4** | **Contract Year 5** | **Total** |
| **USA** | $800,000 | $2,900,000 | $4,500,000 | $5,800,000 | $6,000,000 | **$20,000,000** |
| **UK** | $300,000 | $1,200,000 | $2,300,000 | $2,800,000 | $3,400,000 | **$10,000,000** |
| **Australia** | $200,000 | $800,000 | $1,500,000 | $2,100,000 | $2,400,000 | **$7,000,000** |
| **Germany** | - | $500,000 | $900,000 | $1,000,000 | $1,200,000 | **$3,600,000** |
| **Italy** | - | $100,000 | $600,000 | $800,000 | $900,000 | **$2,400,000** |
| **Canda** | $100,000 | $400,000 | $600,000 | $800,000 | $800,000 | **$2,700,000** |
| **Brazil** | $100,000 | $500,000 | $800,000 | $1,100,000 | $1,700,000 | **$4,200,000** |
| **France** | - | $100,000 | $300,000 | $700,000 | $700,000 | **$1,800,000** |
| **India** | - | $100,000 | $300,000 | $700,000 | $1,000,000 | **$2,100,000** |
| **Mexico** | - | $300,000 | $600,000 | $1,100,000 | $1,600,000 | **$3,600,000** |
| **Russia** | - | - | $400,000 | $500,000 | $700,000 | **$1,600,000** |
| **China** | - | - | $300,000 | $500,000 | $800,000 | **$1,600,000** |
| **Total** | **$1,500,000** | **$6,900,000** | **$13,100,000** | **$17,900,000** | **$21,200,000** | **$60,600,000** |

*Sources / Notes:*

*Limited Liability Company Agreement of Family Hive LLC, March 4, 2022 (Exhibit 2 to the deposition of Family Hive LLC; Laura Tedesco, September 29, 2025), BL-000037766-819 at '817. [2.5]*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    **Schedule 3.1**
**Analysis of Betty B Holdings Financials**
**Summary of Betty Booze Net Revenue Projections 2024-2028**

| Projection Period | 2024 Projected Net Revenue | 2025 Projected Net Revenue | 2026 Projected Net Revenue | 2027 Projected Net Revenue | 2028 Projected Net Revenue |
|---|---|---|---|---|---|
| [a] November 2023 Projection | $8,483,850 | $15,967,128 | $27,942,468 | $41,913,702 | $54,487,814 |
| [b] February 2024 Projection | $7,538,153 | $18,036,000 | $32,658,120 | $48,987,180 | $66,132,693 |
| [c] June 2024 Projection | $5,579,550 | $18,598,500 | $37,197,000 | $52,386,110 | $69,673,526 |
| [d] October 2024 Projection | $4,649,625 | $18,598,500 | $37,197,000 | $52,386,110 | $69,673,526 |
| [e] **2024 Actual** | **$3,541,815** | | | | |

*Sources / Notes:*

[a]  *Schedule 3.4*

[b]  *Schedule 3.7*

[c]  *Schedule 3.10*

[d]  *Schedule 3.13*

[e]  *Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '236_A. [4.1]*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                                                                   Schedule 3.2

**Analysis of Betty B Holdings Financials**

**Calculation of Betty Booze Net Revenue through 2100 using Mr. Kinrich's Scenarios**

| | Year | [a] Mr. Kinrich's But-For Net Revenue | [b] Mr. Kinrich's 2-Year Delay Case | [c] Mr. Kinrich's 3-Year Delay Case | [d] Lost Revenue for Mr. Kinrich's Shutdown Case | [e] Lost Revenue for Mr. Kinrich's 2-Year Delay Case | [f] Lost Revenue for Mr. Kinrich's 3-Year Delay Case |
|---|---|---|---|---|---|---|---|
| [g] | 2025F | $18,598,500 | | | | | |
| [g] | 2026F | $37,197,000 | | | $37,197,000 | | |
| [g] | 2027F | $52,386,110 | $18,598,500 | | $52,386,110 | $33,787,610 | |
| [g] | 2028F | $69,673,526 | $37,197,000 | $18,598,500 | $69,673,526 | $32,476,526 | $51,075,026 |
| | 2029 | $71,763,732 | $52,386,110 | $37,197,000 | $71,763,732 | $19,377,622 | $34,566,732 |
| | 2030 | $73,916,644 | $69,673,526 | $52,386,110 | $73,916,644 | $4,243,118 | $21,530,534 |
| | 2031 | $76,134,143 | $71,763,732 | $69,673,526 | $76,134,143 | $4,370,411 | $6,460,617 |
| | 2032 | $78,418,167 | $73,916,644 | $71,763,732 | $78,418,167 | $4,501,524 | $6,654,436 |
| | 2033 | $80,770,712 | $76,134,143 | $73,916,644 | $80,770,712 | $4,636,569 | $6,854,069 |
| | 2034 | $83,193,834 | $78,418,167 | $76,134,143 | $83,193,834 | $4,775,666 | $7,059,691 |
| | 2035 | $85,689,649 | $80,770,712 | $78,418,167 | $85,689,649 | $4,918,936 | $7,271,481 |
| | 2036 | $88,260,338 | $83,193,834 | $80,770,712 | $88,260,338 | $5,066,504 | $7,489,626 |
| | 2037 | $90,908,148 | $85,689,649 | $83,193,834 | $90,908,148 | $5,218,500 | $7,714,315 |
| | 2038 | $93,635,393 | $88,260,338 | $85,689,649 | $93,635,393 | $5,375,055 | $7,945,744 |
| | 2039 | $96,444,455 | $90,908,148 | $88,260,338 | $96,444,455 | $5,536,306 | $8,184,116 |
| | 2040 | $99,337,788 | $93,635,393 | $90,908,148 | $99,337,788 | $5,702,395 | $8,429,640 |
| | 2041 | $102,317,922 | $96,444,455 | $93,635,393 | $102,317,922 | $5,873,467 | $8,682,529 |
| | 2042 | $105,387,460 | $99,337,788 | $96,444,455 | $105,387,460 | $6,049,671 | $8,943,005 |
| | 2043 | $108,549,083 | $102,317,922 | $99,337,788 | $108,549,083 | $6,231,161 | $9,211,295 |
| | 2044 | $111,805,556 | $105,387,460 | $102,317,922 | $111,805,556 | $6,418,096 | $9,487,634 |
| | 2045 | $115,159,722 | $108,549,083 | $105,387,460 | $115,159,722 | $6,610,639 | $9,772,263 |
| | 2046 | $118,614,514 | $111,805,556 | $108,549,083 | $118,614,514 | $6,808,958 | $10,065,431 |
| | 2047 | $122,172,950 | $115,159,722 | $111,805,556 | $122,172,950 | $7,013,227 | $10,367,394 |
| | 2048 | $125,838,138 | $118,614,514 | $115,159,722 | $125,838,138 | $7,223,624 | $10,678,416 |
| | 2049 | $129,613,282 | $122,172,950 | $118,614,514 | $129,613,282 | $7,440,333 | $10,998,768 |
| | 2050 | $133,501,681 | $125,838,138 | $122,172,950 | $133,501,681 | $7,663,543 | $11,328,731 |
| | 2051 | $137,506,731 | $129,613,282 | $125,838,138 | $137,506,731 | $7,893,449 | $11,668,593 |
| | 2052 | $141,631,933 | $133,501,681 | $129,613,282 | $141,631,933 | $8,130,252 | $12,018,651 |
| | 2053 | $145,880,891 | $137,506,731 | $133,501,681 | $145,880,891 | $8,374,160 | $12,379,210 |
| | 2054 | $150,257,318 | $141,631,933 | $137,506,731 | $150,257,318 | $8,625,385 | $12,750,587 |
| | 2055 | $154,765,037 | $145,880,891 | $141,631,933 | $154,765,037 | $8,884,146 | $13,133,104 |
| | 2056 | $159,407,988 | $150,257,318 | $145,880,891 | $159,407,988 | $9,150,671 | $13,527,097 |
| | 2057 | $164,190,228 | $154,765,037 | $150,257,318 | $164,190,228 | $9,425,191 | $13,932,910 |
| | 2058 | $169,115,935 | $159,407,988 | $154,765,037 | $169,115,935 | $9,707,946 | $14,350,898 |
| | 2059 | $174,189,413 | $164,190,228 | $159,407,988 | $174,189,413 | $9,999,185 | $14,781,425 |
| | 2060 | $179,415,095 | $169,115,935 | $164,190,228 | $179,415,095 | $10,299,160 | $15,224,867 |
| | 2061 | $184,797,548 | $174,189,413 | $169,115,935 | $184,797,548 | $10,608,135 | $15,681,613 |
| | 2062 | $190,341,475 | $179,415,095 | $174,189,413 | $190,341,475 | $10,926,379 | $16,152,062 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                                          **Schedule 3.2**
**Analysis of Betty B Holdings Financials**
**Calculation of Betty Booze Net Revenue through 2100 using Mr. Kinrich's Scenarios**

| | [a] | [b] | [c] | [d] | [e] | [f] |
| | Mr. Kinrich's But-For | Mr. Kinrich's 2-Year | Mr. Kinrich's 3-Year | Lost Revenue for Mr. Kinrich's Shutdown | Lost Revenue for Mr. Kinrich's 2-Year | Lost Revenue for Mr. Kinrich's 3-Year |
| Year | Net Revenue | Delay Case | Delay Case | Case | Delay Case | Delay Case |
|---|---|---|---|---|---|---|
| 2063 | $196,051,719 | $184,797,548 | $179,415,095 | $196,051,719 | $11,254,171 | $16,636,624 |
| 2064 | $201,933,270 | $190,341,475 | $184,797,548 | $201,933,270 | $11,591,796 | $17,135,722 |
| 2065 | $207,991,269 | $196,051,719 | $190,341,475 | $207,991,269 | $11,939,550 | $17,649,794 |
| 2066 | $214,231,007 | $201,933,270 | $196,051,719 | $214,231,007 | $12,297,736 | $18,179,288 |
| 2067 | $220,657,937 | $207,991,269 | $201,933,270 | $220,657,937 | $12,666,668 | $18,724,666 |
| 2068 | $227,277,675 | $214,231,007 | $207,991,269 | $227,277,675 | $13,046,668 | $19,286,406 |
| 2069 | $234,096,005 | $220,657,937 | $214,231,007 | $234,096,005 | $13,438,068 | $19,864,999 |
| 2070 | $241,118,885 | $227,277,675 | $220,657,937 | $241,118,885 | $13,841,210 | $20,460,949 |
| 2071 | $248,352,452 | $234,096,005 | $227,277,675 | $248,352,452 | $14,256,447 | $21,074,777 |
| 2072 | $255,803,025 | $241,118,885 | $234,096,005 | $255,803,025 | $14,684,140 | $21,707,020 |
| 2073 | $263,477,116 | $248,352,452 | $241,118,885 | $263,477,116 | $15,124,664 | $22,358,231 |
| 2074 | $271,381,430 | $255,803,025 | $248,352,452 | $271,381,430 | $15,578,404 | $23,028,978 |
| 2075 | $279,522,873 | $263,477,116 | $255,803,025 | $279,522,873 | $16,045,756 | $23,719,847 |
| 2076 | $287,908,559 | $271,381,430 | $263,477,116 | $287,908,559 | $16,527,129 | $24,431,443 |
| 2077 | $296,545,816 | $279,522,873 | $271,381,430 | $296,545,816 | $17,022,943 | $25,164,386 |
| 2078 | $305,442,190 | $287,908,559 | $279,522,873 | $305,442,190 | $17,533,631 | $25,919,317 |
| 2079 | $314,605,456 | $296,545,816 | $287,908,559 | $314,605,456 | $18,059,640 | $26,696,897 |
| 2080 | $324,043,619 | $305,442,190 | $296,545,816 | $324,043,619 | $18,601,429 | $27,497,804 |
| 2081 | $333,764,928 | $314,605,456 | $305,442,190 | $333,764,928 | $19,159,472 | $28,322,738 |
| 2082 | $343,777,876 | $324,043,619 | $314,605,456 | $343,777,876 | $19,734,256 | $29,172,420 |
| 2083 | $354,091,212 | $333,764,928 | $324,043,619 | $354,091,212 | $20,326,284 | $30,047,593 |
| 2084 | $364,713,948 | $343,777,876 | $333,764,928 | $364,713,948 | $20,936,073 | $30,949,020 |
| 2085 | $375,655,367 | $354,091,212 | $343,777,876 | $375,655,367 | $21,564,155 | $31,877,491 |
| 2086 | $386,925,028 | $364,713,948 | $354,091,212 | $386,925,028 | $22,211,079 | $32,833,816 |
| 2087 | $398,532,779 | $375,655,367 | $364,713,948 | $398,532,779 | $22,877,412 | $33,818,830 |
| 2088 | $410,488,762 | $386,925,028 | $375,655,367 | $410,488,762 | $23,563,734 | $34,833,395 |
| 2089 | $422,803,425 | $398,532,779 | $386,925,028 | $422,803,425 | $24,270,646 | $35,878,397 |
| 2090 | $435,487,528 | $410,488,762 | $398,532,779 | $435,487,528 | $24,998,766 | $36,954,749 |
| 2091 | $448,552,153 | $422,803,425 | $410,488,762 | $448,552,153 | $25,748,729 | $38,063,391 |
| 2092 | $462,008,718 | $435,487,528 | $422,803,425 | $462,008,718 | $26,521,190 | $39,205,293 |
| 2093 | $475,868,980 | $448,552,153 | $435,487,528 | $475,868,980 | $27,316,826 | $40,381,452 |
| 2094 | $490,145,049 | $462,008,718 | $448,552,153 | $490,145,049 | $28,136,331 | $41,592,896 |
| 2095 | $504,849,400 | $475,868,980 | $462,008,718 | $504,849,400 | $28,980,421 | $42,840,682 |
| 2096 | $519,994,883 | $490,145,049 | $475,868,980 | $519,994,883 | $29,849,833 | $44,125,903 |
| 2097 | $535,594,729 | $504,849,400 | $490,145,049 | $535,594,729 | $30,745,328 | $45,449,680 |
| 2098 | $551,662,571 | $519,994,883 | $504,849,400 | $551,662,571 | $31,667,688 | $46,813,170 |
| 2099 | $568,212,448 | $535,594,729 | $519,994,883 | $568,212,448 | $32,617,719 | $48,217,565 |
| 2100 | $585,258,821 | $551,662,571 | $535,594,729 | $585,258,821 | $33,596,251 | $49,664,092 |
| Total | $17,879,616,946 | $16,726,145,676 | $16,174,483,105 | $17,861,018,446 | $1,097,675,769 | $1,596,952,230 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                      **Schedule 3.2**
**Analysis of Betty B Holdings Financials**
**Calculation of Betty Booze Net Revenue through 2100 using Mr. Kinrich's Scenarios**

| Year | [a]<br>Mr. Kinrich's But-For<br>Net Revenue | [b]<br>Mr. Kinrich's 2-Year<br>Delay Case | [c]<br>Mr. Kinrich's 3-Year<br>Delay Case | [d]<br>Lost Revenue for Mr.<br>Kinrich's Shutdown<br>Case | [e]<br>Lost Revenue for Mr.<br>Kinrich's 2-Year<br>Delay Case | [f]<br>Lost Revenue for Mr.<br>Kinrich's 3-Year<br>Delay Case |
|---|---|---|---|---|---|---|

*Sources / Notes:*

[a]  *After the 2028 forecast I assume a revenue growth rate of 3% each year.*

[b]  *Calculated as Mr. Kinrich's But-For Net Revenue delayed by 2 years.*

[c]  *Calculated as Mr. Kinrich's But-For Net Revenue delayed by 3 years.*

[d]  *Calculated as Mr. Kinrich's But-For Net Revenue beginning in 2026.*

[e]  *Calculated as the difference between Mr. Kinrich's But-For Net Revenue and Mr. Kinrich's  2-Year Delay Case.*

[f]  *Calculated as the difference between Mr. Kinrich's But-For Net Revenue and Mr. Kinrich's  3-Year Delay Case.*

[g]  *Expert Report of Jeffrey H. Kinrich, Backup Exhibit 2.A. See also Schedule 3.13.*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                       **Schedule 3.3**
**Analysis of Betty B Holdings Financials**
**November 2023 Betty B (Combined) 5 Year Financial Model (2023LE - 2028F)**

|  | 2023LE | [a]<br>2024F | 2025F | [a]<br>2026F | 2027F | [a]<br>2028F |
|---|---|---|---|---|---|---|
| Physical Cases (24 pack) | 279,727 | 576,250 | 950,250 | 1,478,448 | 2,110,666 | 2,668,055 |
| | | | | | | |
| **Gross Revenue** | **$9,557,200** | **$24,688,943** | **$42,494,739** | **$68,042,377** | **$99,266,792** | **$126,666,511** |
| Less: Discounting | ($1,575,540) | ($2,872,880) | ($4,799,433) | ($7,357,926) | ($10,606,566) | ($13,476,944) |
| Less: FET | ($104,610) | ($607,500) | ($1,154,250) | ($2,019,938) | ($3,029,906) | ($3,938,878) |
| Net Revenue | $7,877,050 | $21,208,563 | $36,541,056 | $58,664,514 | $85,630,320 | $109,250,688 |
| | | | | | | |
| Total COGS | $6,064,726 | $13,594,655 | $23,127,726 | $34,140,428 | $47,644,165 | $58,224,384 |
| | | | | | | |
| **Gross Profit Margin $'s** | **$1,812,324** | **$7,613,908** | **$13,413,330** | **$24,524,085** | **$37,986,155** | **$51,026,305** |
| Gross Profit Margin % of Net Revenue | 23% | 36% | 37% | 42% | 44% | 47% |
| Advertising & Promotions | $4,575,000 | $6,400,000 | $7,900,000 | $10,000,000 | $12,000,000 | $13,700,000 |
| **CAAP** | **($2,762,676)** | **$1,213,908** | **$5,513,330** | **$14,524,085** | **$25,986,155** | **$37,326,305** |
| | | | | | | |
| Total Salary & T&E | $5,640,013 | $6,136,168 | $6,530,628 | $6,814,812 | $7,113,205 | $7,426,517 |
| | | | | | | |
| Total Other SG&A | $2,120,226 | $2,655,934 | $2,735,612 | $2,817,681 | $2,902,211 | $2,989,277 |
| | | | | | | |
| Total SG&A | $7,760,239 | $8,792,103 | $9,266,240 | $9,632,492 | $10,015,416 | $10,415,795 |
| **EBITDA** | **($10,522,915)** | **($7,578,194)** | **($3,752,910)** | **$4,891,593** | **$15,970,739** | **$26,910,510** |
| | | | | | | |
| A&P % of Net Revenue | 58% | 30% | 22% | 17% | 14% | 13% |
| CAAP % of Net Revenue | (35%) | 6% | 15% | 25% | 30% | 34% |
| EBITDA % of Net Revenue | (134%) | (36%) | (10%) | 8% | 19% | 25% |

---

_**Sources / Notes:**_

_Betty B Presentation, November 2023, BL-000037661-748 at '745. [3.4]_

_[a]  I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value._

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    **Schedule 3.4**
**Analysis of Betty B Holdings Financials**
**November 2023 Betty Booze 5 Year Financial Model (2023LE - 2028F)**

| | [a] 2023LE | 2024F | 2025F | 2026F | [a] 2027F | 2028F |
|---|---|---|---|---|---|---|
| Physical Cases (24 pack) | 34,815 | 225,000 | 427,500 | 748,125 | 1,122,188 | 1,458,844 |
| **Gross Revenue** | **$1,551,745** | **$10,012,500** | **$19,023,753** | **$33,291,562** | **$49,937,343** | **$64,918,547** |
| Less: Discounting | ($80,175) | ($921,150) | ($1,902,375) | ($3,329,156) | ($4,993,734) | ($6,491,855) |
| Less: FET | ($104,610) | ($607,500) | ($1,154,250) | ($2,019,938) | ($3,029,906) | ($3,938,878) |
| Net Revenue | $1,366,961 | $8,483,850 | $15,967,128 | $27,942,468 | $41,913,702 | $54,487,814 |
| Total COGS | $585,544 | $4,108,501 | $8,730,151 | $14,666,653 | $21,119,980 | $26,357,735 |
| **Gross Profit Margin $'s** | **$781,416** | **$4,375,349** | **$7,236,977** | **$13,275,815** | **$20,793,722** | **$28,130,079** |
| Gross Profit Margin % of Net Revenue | 57% | 52% | 45% | 48% | 50% | 52% |
| Advertising & Promotions | $1,325,000 | $3,700,000 | $4,750,000 | $6,000,000 | $7,500,000 | $8,700,000 |
| **CAAP** | **($543,584)** | **$675,349** | **$2,486,977** | **$7,275,815** | **$13,293,722** | **$19,430,079** |
| A&P % of Net Revenue | 97% | 44% | 30% | 21% | 18% | 16% |
| CAAP % of Net Revenue | (40%) | 8% | 16% | 26% | 32% | 36% |

***Sources / Notes:***

*Betty B Presentation, November 2023, BL-000037661-748 at '727. [3.4]*

[a]  *I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value.*

**Blake Lively v. Wayfarer Studios LLC. et al.**                                          **Schedule 3.5**
**Analysis of Betty B Holdings Financials**
**November 2023 Betty Buzz 5 Year Financial Model (2023LE - 2028F)**

|  | 2023LE | [a] 2024F | 2025F | 2026F | 2027F | [a] 2028F |
|---|---|---|---|---|---|---|
| Physical Cases (24 pack) | 244,912 | 351,250 | 522,750 | 730,823 | 988,478 | 1,209,211 |
|  |  |  |  |  |  |  |
| **Gross Revenue** | **$8,005,455** | **$14,676,443** | **$23,470,986** | **$34,750,815** | **$49,329,449** | **$61,747,964** |
| Less: Discounting | ($1,495,365) | ($1,951,730) | ($2,897,058) | ($4,028,770) | ($5,612,831) | ($6,985,090) |
| Less: FET | $0 | $0 | $0 | $0 | $0 | $0 |
| Net Revenue | $6,510,090 | $12,724,713 | $20,573,928 | $30,722,045 | $43,716,618 | $54,762,874 |
|  |  |  |  |  |  |  |
| Total COGS | $5,479,182 | $9,486,153 | $14,397,575 | $19,473,775 | $26,524,185 | $31,866,649 |
|  |  |  |  |  |  |  |
| **Gross Profit Margin $'s** | **$1,030,908** | **$3,238,559** | **$6,176,353** | **$11,248,270** | **$17,192,433** | **$22,896,226** |
| Gross Profit Margin % of Net Revenue | 16% | 25% | 30% | 37% | 39% | 42% |
|  |  |  |  |  |  |  |
| Advertising & Promotions | $3,250,000 | $2,700,000 | $3,150,000 | $4,000,000 | $4,500,000 | $5,000,000 |
|  |  |  |  |  |  |  |
| **CAAP** | **($2,219,092)** | **$538,559** | **$3,026,353** | **$7,248,270** | **$12,692,433** | **$17,896,226** |
|  |  |  |  |  |  |  |
| A&P % of Net Revenue | 50% | 21% | 15% | 13% | 10% | 9% |
| CAAP % of Net Revenue | (34%) | 4% | 15% | 24% | 29% | 33% |

---

_**Sources / Notes:**_

_Betty B Presentation, November 2023, BL-000037661-748 at '743. [3.4]_

[a]  _I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value._

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                                    Schedule 3.6
**Analysis of Betty B Holdings Financials**
**February 2024 Betty B Consolidated 5 Year Plan (2023LE - 2028F)**

|  | 2023LE | [a]<br>2024F | 2025F | [a]<br>2026F | [a]<br>2027F | [a]<br>2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 228,301 | 422,500 | 745,000 | 1,185,130 | 1,666,217 | 2,173,113 |
|  |  |  |  |  |  |  |
| Gross Revenue | $8,181,684 | $16,925,290 | $31,289,900 | $50,832,734 | $72,151,847 | $94,514,535 |
| Discounting | ($1,280,371) | ($2,027,117) | ($3,317,988) | ($5,128,603) | ($7,217,744) | ($9,415,587) |
| Early Payment | ($64,274) | ($49,300) | ($50,150) | ($60,180) | ($72,216) | ($86,659) |
| Slotting | ($152,515) | ($118,936) | ($120,987) | ($145,184) | ($174,221) | ($209,065) |
| FET | ($108,108) | ($540,000) | ($1,296,000) | ($2,332,800) | ($3,499,200) | ($4,723,920) |
| **Net Revenue** | **$6,576,416** | **$14,189,936** | **$26,504,775** | **$43,165,966** | **$61,188,465** | **$80,079,304** |
|  |  |  |  |  |  |  |
| COGS | $3,285,153 | $6,463,467 | $12,789,228 | $19,959,730 | $27,266,182 | $34,386,851 |
| COGS - Logistics | $222,779 | $145,000 | $145,000 | $145,000 | $145,000 | $145,000 |
| Total COGS | $3,507,932 | $6,608,467 | $12,934,228 | $20,104,730 | $27,411,182 | $34,531,851 |
|  |  |  |  |  |  |  |
| **Gross Profit** | **$3,068,484** | **$7,581,470** | **$13,570,547** | **$23,061,236** | **$33,777,283** | **$45,547,452** |
| Gross Profit Margin % | 47% | 53% | 51% | 53% | 55% | 57% |
|  |  |  |  |  |  |  |
| A&P | $4,650,790 | $6,200,000 | $8,150,000 | $9,100,000 | $10,800,000 | $12,250,000 |
| Selling & Distribution | $1,830,253 | $2,623,515 | $4,099,317 | $6,056,863 | $8,002,963 | $9,922,774 |
| **Total CAAP** | **($3,412,558)** | **($1,242,045)** | **$1,321,230** | **$7,904,373** | **$14,974,321** | **$23,374,678** |
|  |  |  |  |  |  |  |
| Salaries | $4,185,014 | $3,599,212 | $3,407,086 | $3,509,298 | $3,614,577 | $3,723,014 |
| Payroll Taxes | $196,691 | $259,836 | $244,466 | $251,800 | $259,354 | $267,134 |
| Benefits & Insurance | $325,439 | $357,684 | $366,559 | $377,556 | $388,883 | $400,549 |
| T&E | $690,171 | $511,059 | $510,306 | $525,615 | $541,384 | $557,625 |
| Total Salaries and T&E | $5,397,315 | $4,727,791 | $4,528,417 | $4,664,269 | $4,804,197 | $4,948,323 |
|  |  |  |  |  |  |  |
| Accounting | $117,255 | $100,000 | $102,500 | $104,550 | $106,641 | $108,774 |
| Company Insurance | $133,755 | $142,000 | $145,550 | $148,461 | $151,430 | $154,459 |
| IT | $217,605 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Legal | $405,423 | $180,000 | $184,500 | $188,190 | $191,954 | $195,793 |
| Office Expense | $150,464 | $197,500 | $202,438 | $206,486 | $210,616 | $214,828 |
| Broker Fees | $281,714 | $808,034 | $859,457 | $1,234,005 | $1,589,590 | $1,950,203 |
| Consultants | $219,458 | $220,000 | $165,000 | $168,300 | $171,666 | $175,099 |
| Consultants - Sales Mgt | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 |
| Consultants - Digital | $169,815 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Processing Fees | $24,450 | $44,500 | $45,613 | $46,525 | $47,455 | $48,404 |
| Research and Development | $116,987 | $125,000 | $128,125 | $130,688 | $133,301 | $135,967 |
| Other SG&A | $2,016,926 | $2,397,034 | $2,423,182 | $2,825,404 | $3,209,218 | $3,598,623 |
| **EBITDA** | **($10,826,799)** | **($8,366,871)** | **($5,630,369)** | **$414,700** | **$6,960,905** | **$14,827,732** |

<u>*Sources / Notes:*</u>

*Betty B Presentation, "February Update," February 9, 2024 (Exhibit 5 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000026484-524 at '515. [3.5]*

[a]  *I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value.*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                           Schedule 3.7
**Analysis of Betty B Holdings Financials**
**February 2024 Betty Booze 5 Year Plan (2023LE - 2028F)**

|  | 2023LE | 2024F | 2025F | [a]<br>2026F | 2027F | 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 40,040 | 200,000 | 480,000 | 864,000 | 1,296,000 | 1,749,600 |
|  |  |  |  |  |  |  |
| Gross Revenue | $1,781,558 | $8,950,000 | $21,480,000 | $38,664,000 | $57,996,000 | $78,294,600 |
| Discounting | $0 | ($871,847) | ($2,148,000) | ($3,673,080) | ($5,509,620) | ($7,437,987) |
| FET | ($108,108) | ($540,000) | ($1,296,000) | ($2,332,800) | ($3,499,200) | ($4,723,920) |
| **Net Revenue** | **$1,673,450** | **$7,538,153** | **$18,036,000** | **$32,658,120** | **$48,987,180** | **$66,132,693** |
|  |  |  |  |  |  |  |
| COGS | $639,961 | $3,044,000 | $8,766,720 | $15,148,892 | $21,814,405 | $28,271,469 |
| COGS - Logistics | $800 | $0 | $0 | $0 | $0 | $0 |
| Total COGS | $640,761 | $3,044,000 | $8,766,720 | $15,148,892 | $21,814,405 | $28,271,469 |
|  |  |  |  |  |  |  |
| **Gross Profit** | **$1,032,689** | **$4,494,153** | **$9,269,280** | **$17,509,228** | **$27,172,775** | **$37,861,224** |
| Gross Profit Margin % | 62% | 60% | 51% | 54% | 55% | 57% |
|  |  |  |  |  |  |  |
| A&P | $1,634,216 | $3,688,750 | $5,500,000 | $6,250,000 | $7,750,000 | $9,000,000 |
| Selling & Distribution | $0 | $800,000 | $1,881,600 | $3,319,142 | $4,879,139 | $6,455,101 |
| **Total CAAP** | **($601,527)** | **$5,403** | **$1,887,680** | **$7,940,085** | **$14,543,636** | **$22,406,123** |
|  |  |  |  |  |  |  |
| Broker Fees | $0 | $318,928 | $214,800 | $386,640 | $579,960 | $782,946 |
| Other SG&A | $0 | $318,928 | $214,800 | $386,640 | $579,960 | $782,946 |
| **EBITDA** | **($601,527)** | **($313,525)** | **$1,672,880** | **$7,553,445** | **$13,963,676** | **$21,623,177** |

| $/Case | 2023LE | 2024F | 2025F | 2026F | 2027F | 2028F |
|---|---|---|---|---|---|---|
| Gross Revenue | $44.49 | $44.75 | $44.75 | $44.75 | $44.75 | $44.75 |
| Discounting | $0.00 | ($4.36) | ($4.48) | ($4.25) | ($4.25) | ($4.25) |
| FET | ($2.70) | ($2.70) | ($2.70) | ($2.70) | ($2.70) | ($2.70) |
| **Net Revenue** | **$41.79** | **$37.69** | **$37.58** | **$37.80** | **$37.80** | **$37.80** |
|  |  |  |  |  |  |  |
| COGS | $15.98 | $15.22 | $18.26 | $17.53 | $16.83 | $16.16 |
| COGS - Logistics | $0.02 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total COGS | $16.00 | $15.22 | $18.26 | $17.53 | $16.83 | $16.16 |
|  |  |  |  |  |  |  |
| **Gross Profit** | **$25.79** | **$22.47** | **$19.31** | **$20.27** | **$20.97** | **$21.64** |
|  |  |  |  |  |  |  |
| A&P | $40.81 | $18.44 | $11.46 | $7.23 | $5.98 | $5.14 |
| Selling & Distribution | $0.00 | $4.00 | $3.92 | $3.84 | $3.76 | $3.69 |
| Total CAAP | ($15.02) | $0.03 | $3.93 | $9.19 | $11.22 | $12.81 |
|  |  |  |  |  |  |  |
| A&P % of Net Revenue | 98% | 49% | 30% | 19% | 16% | 14% |
| CAAP % of Net Revenue | (36%) | 0% | 10% | 24% | 30% | 34% |
| EBITDA % of Net Revenue | (36%) | (4%) | 9% | 23% | 29% | 33% |

**Sources / Notes:**

Betty B Presentation, "February Update," February 9, 2024 (Exhibit 5 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000026484-524 at '503. [3.5]

[a]  I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    **Schedule 3.8**
**Analysis of Betty B Holdings Financials**
**February 2024 Betty Buzz 5 Year Financial Model (2023LE - 2028F)**

| | [a] 2023LE | [a] 2024F | 2025F | [a] 2026F | [a] 2027F | 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 188,261 | 222,500 | 265,000 | 321,130 | 370,217 | 423,515 |
| | | | | | | |
| Gross Revenue | $6,400,127 | $7,975,290 | $9,809,900 | $12,168,734 | $14,155,847 | $16,219,935 |
| Discounting | ($1,280,371) | ($1,155,270) | ($1,169,988) | ($1,455,523) | ($1,708,124) | ($1,977,600) |
| Early Payment | ($64,274) | ($49,300) | ($50,150) | ($60,180) | ($72,216) | ($86,659) |
| Slotting | ($152,515) | ($118,936) | ($120,987) | ($145,184) | ($174,221) | ($209,065) |
| FET | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Revenue** | **$4,902,967** | **$6,651,783** | **$8,468,775** | **$10,507,846** | **$12,201,285** | **$13,946,611** |
| | | | | | | |
| COGS | $2,645,192 | $3,419,467 | $4,022,508 | $4,810,837 | $5,451,777 | $6,115,383 |
| COGS - Logistics | $221,979 | $145,000 | $145,000 | $145,000 | $145,000 | $145,000 |
| Total COGS | $2,867,171 | $3,564,467 | $4,167,508 | $4,955,837 | $5,596,777 | $6,260,383 |
| | | | | | | |
| **Gross Profit** | **$2,035,795** | **$3,087,317** | **$4,301,267** | **$5,552,008** | **$6,604,508** | **$7,686,228** |
| Gross Profit Margin % | 42% | 46% | 51% | 53% | 54% | 55% |
| | | | | | | |
| A&P | $3,016,573 | $2,511,250 | $2,650,000 | $2,850,000 | $3,050,000 | $3,250,000 |
| Selling & Distribution | $1,830,253 | $1,823,515 | $2,217,717 | $2,737,721 | $3,123,823 | $3,467,673 |
| **Total CAAP** | **($2,811,031)** | **($1,247,448)** | **($566,450)** | **($35,712)** | **$430,685** | **$968,555** |
| | | | | | | |
| Broker Fees | $35,305 | $489,107 | $644,657 | $847,365 | $1,009,630 | $1,167,257 |
| Consultants | $19,566 | $0 | $0 | $0 | $0 | $0 |
| Consultants - Sales Mgt | $15,000 | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 |
| Consultants Digital | $169,815 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Other SG&A | $239,685 | $869,107 | $1,029,657 | $1,236,465 | $1,402,912 | $1,564,805 |
| **EBITDA** | **$3,095,414** | **($2,116,555)** | **($1,596,107)** | **($1,272,177)** | **($972,228)** | **($596,250)** |

| **$/Case** | **2023LE** | **2024F** | **2025F** | **2026F** | **2027F** | **2028F** |
|---|---|---|---|---|---|---|
| Gross Revenue | $34.00 | $35.84 | $37.02 | $37.89 | $38.24 | $38.30 |
| Discounting | ($6.80) | ($5.19) | ($4.42) | ($4.53) | ($4.61) | ($4.67) |
| Early Payment | ($0.34) | ($0.22) | ($0.19) | ($0.19) | ($0.20) | ($0.20) |
| Slotting | ($0.81) | ($0.53) | ($0.46) | ($0.45) | ($0.47) | ($0.49) |
| FET | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Net Revenue** | **$26.04** | **$29.90** | **$31.96** | **$32.72** | **$32.96** | **$32.93** |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    **Schedule 3.8**
**Analysis of Betty B Holdings Financials**
**February 2024 Betty Buzz 5 Year Financial Model (2023LE - 2028F)**

| | [a] 2023LE | [a] 2024F | 2025F | [a] 2026F | [a] 2027F | 2028F |
|---|---|---|---|---|---|---|
| COGS | $14.05 | $15.37 | $15.18 | $14.98 | $14.73 | $14.44 |
| COGS - Logistics | $1.18 | $0.65 | $0.55 | $0.45 | $0.39 | $0.34 |
| Total COGS | $15.23 | $16.02 | $15.73 | $15.43 | $15.12 | $14.78 |
| | | | | | | |
| **Gross Profit** | **$10.81** | **$13.88** | **$16.23** | **$17.29** | **$17.84** | **$18.15** |
| | | | | | | |
| A&P | $16.02 | $11.29 | $10.00 | $8.87 | $8.24 | $7.67 |
| Selling & Distribution | $9.72 | $8.20 | $8.37 | $8.53 | $8.44 | $8.19 |
| Total CAAP | **($14.93)** | **($5.61)** | **($2.14)** | **($0.11)** | **$1.16** | **$2.29** |
| | | | | | | |
| A&P % of Net Revenue | 62% | 38% | 31% | 27% | 25% | 23% |
| CAAP % of Net Revenue | (57%) | (19%) | (7%) | (0%) | 4% | 7% |
| EBITDA % of Net Revenue | 63% | (32%) | (19%) | (12%) | (8%) | (4%) |

**_Sources / Notes:_**

Betty B Presentation, "February Update," February 9, 2024 (Exhibit 5 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000026484-524 at '513. [3.5]

[a]  I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**  **Schedule 3.9**
**Analysis of Betty B Holdings Financials**
**June 2024 Betty B Consolidated Income Statement (2023A - 2028F)**

| | [a] 2023A | [a] 2024F | [a] 2025F | [a] 2026F | [a] 2027F | [a] 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 228,299 | 382,500 | 783,675 | 1,341,469 | 1,792,341 | 2,319,635 |
| | | | | | | |
| Gross Revenue | $8,210,150 | $15,395,430 | $33,147,631 | $57,735,693 | $77,749,243 | $101,103,094 |
| Discounting | ($1,296,023) | ($1,900,033) | ($3,517,972) | ($6,029,713) | ($7,782,941) | ($10,091,696) |
| FET | ($109,496) | ($405,000) | ($1,350,000) | ($2,700,000) | ($3,780,000) | ($5,027,400) |
| **Net Revenue** | **$6,573,726** | **$12,891,631** | **$28,075,905** | **$48,761,475** | **$65,892,896** | **$85,631,912** |
| | | | | | | |
| COGS | $3,224,076 | $6,048,619 | $13,999,385 | $23,621,816 | $30,633,522 | $38,352,755 |
| COGS - Logistics | $356,771 | $145,000 | $145,000 | $145,000 | $145,000 | $145,000 |
| Total COGS | $3,580,848 | $6,193,619 | $14,144,385 | $23,766,816 | $30,778,522 | $38,497,755 |
| | | | | | | |
| **Gross Profit** | **$2,992,878** | **$6,698,012** | **$13,931,520** | **$24,994,659** | **$35,114,375** | **$47,134,157** |
| Gross Profit Margin % | 46% | 52% | 50% | 51% | 53% | 55% |
| | | | | | | |
| A&P | $4,672,096 | $6,200,000 | $7,600,000 | $9,600,000 | $11,600,000 | $12,600,000 |
| Selling & Distribution | $1,955,883 | $2,490,940 | $4,284,976 | $6,617,954 | $8,518,931 | $10,632,864 |
| **Total CAAP** | **($3,635,100)** | **($1,992,928)** | **$2,046,544** | **$8,776,705** | **$14,995,443** | **$23,901,292** |
| | | | | | | |
| Salaries | $4,122,289 | $3,438,601 | $3,349,822 | $3,416,818 | $3,485,154 | $3,589,709 |
| Payroll Taxes | $191,448 | $246,000 | $238,898 | $243,676 | $248,549 | $256,006 |
| Benefits & Insurance | $270,849 | $321,301 | $340,079 | $346,881 | $353,818 | $364,433 |
| T&E | $690,530 | $477,474 | $505,303 | $515,409 | $525,717 | $541,489 |
| Total Salaries and T&E | **$5,275,116** | **$4,483,375** | **$4,434,101** | **$4,522,783** | **$4,613,239** | **$4,751,636** |
| | | | | | | |
| Accounting | $160,083 | $100,000 | $102,500 | $104,550 | $106,641 | $108,774 |
| Company Insurance | $127,956 | $142,000 | $145,550 | $148,461 | $151,430 | $154,459 |
| IT | $247,985 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Legal | $414,955 | $180,000 | $184,500 | $188,190 | $191,954 | $195,793 |
| Office Expense | $140,126 | $197,500 | $202,438 | $206,486 | $210,616 | $214,828 |
| Broker Fees | $279,257 | $817,358 | $979,833 | $1,397,314 | $1,776,690 | $2,233,494 |
| Consultants | $212,508 | $220,000 | $165,000 | $168,300 | $171,666 | $175,099 |
| Consultants - 3rd Party Sales | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 |
| Consultants - Digital | $169,815 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Processing Fees | $26,908 | $44,500 | $45,613 | $46,525 | $47,455 | $48,404 |
| Research and Development | $133,161 | $125,000 | $128,125 | $130,688 | $133,301 | $135,967 |
| Other SG&A | $2,092,754 | $2,406,358 | $2,543,558 | $2,988,713 | $3,396,318 | $3,881,914 |
| **EBITDA** | **($11,002,970)** | **($8,882,661)** | **($4,931,115)** | **$1,265,209** | **$6,985,887** | **$15,267,742** |

***Sources / Notes:***

*Betty B Presentation, "Company Overview 2024," June 2024 (Exhibit 7 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000028664-725 at '717. [3.6]*

[a] *I note that, in some instances, the calculated totals do not match the source values due to rounding. In these cases, the source value was used. The only material discrepancies observed were related to net revenue, and in those cases, the source value was retained for consistency.*

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                          **Schedule 3.10**
**Analysis of Betty B Holdings Financials**
**June 2024 Betty Booze 5 Year Financial Model (2023A - 2028F)**

| | 2023A | 2024F | 2025F | 2026F | 2027F | 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 40,040 | 150,000 | 500,000 | 1,000,000 | 1,400,000 | 1,862,000 |
| | | | | | | |
| Gross Revenue | $1,781,558 | $6,649,500 | $22,165,000 | $44,330,000 | $62,062,000 | $82,542,460 |
| Discounting | $0 | ($664,950) | ($2,216,500) | ($4,433,000) | ($5,895,890) | ($7,841,534) |
| FET | ($109,496) | ($405,000) | ($1,350,000) | ($2,700,000) | ($3,780,000) | ($5,027,400) |
| **Net Revenue** | **$1,672,062** | **$5,579,550** | **$18,598,500** | **$37,197,000** | **$52,386,110** | **$69,673,526** |
| | | | | | | |
| COGS | $574,406 | $2,388,018 | $9,588,600 | $18,410,112 | $24,743,191 | $31,592,106 |
| COGS - Logistics | $43,281 | $0 | $0 | $0 | $0 | $0 |
| Total COGS | $617,687 | $2,388,018 | $9,588,600 | $18,410,112 | $24,743,191 | $31,592,106 |
| | | | | | | |
| **Gross Profit** | **$1,054,375** | **$3,191,532** | **$9,009,900** | **$18,786,888** | **$27,642,919** | **$38,081,421** |
| Gross Profit Margin % | 63% | 57% | 48% | 51% | 53% | 55% |
| | | | | | | |
| A&P | $1,462,394 | $3,688,750 | $5,000,000 | $7,000,000 | $9,000,000 | $10,000,000 |
| Selling & Distribution | $17,118 | $600,000 | $1,960,000 | $3,841,600 | $5,270,675 | $6,869,798 |
| **Total CAAP** | **($425,137)** | **($1,097,218)** | **$2,049,900** | **$7,945,288** | **$13,372,244** | **$21,211,623** |
| | | | | | | |
| A&P % of Net Revenue | 87% | 66% | 27% | 19% | 17% | 14% |
| CAAP % of Net Revenue | (25%) | (20%) | 11% | 21% | 26% | 30% |

*Sources / Notes:*

*Betty B Presentation, "Company Overview 2024," June 2024 (Exhibit 7 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000028664-725 at '699. [3.6]*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                           **Schedule 3.11**
**Analysis of Betty B Holdings Financials**
**June 2024 Betty Buzz 5 Year Financial Model (2023A - 2028F)**

| | [a] 2023A | 2024F | 2025F | 2026F | 2027F | 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 188,259 | 232,500 | 283,675 | 341,469 | 392,341 | 457,635 |
| | | | | | | |
| Gross Revenue | $6,428,592 | $8,745,930 | $10,982,631 | $13,405,693 | $15,687,243 | $18,560,634 |
| Discounting | ($1,296,023) | ($1,235,083) | ($1,301,472) | ($1,596,713) | ($1,887,051) | ($2,250,162) |
| Early Payment | ($56,238) | ($53,360) | ($59,708) | ($71,650) | ($85,980) | ($103,175) |
| Slotting | ($174,666) | ($145,406) | ($144,046) | ($172,855) | ($207,426) | ($248,911) |
| FET | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Revenue** | **$4,901,664** | **$7,312,081** | **$9,477,405** | **$11,564,475** | **$13,506,786** | **$15,958,386** |
| | | | | | | |
| COGS | $2,649,671 | $3,660,601 | $4,410,785 | $5,211,704 | $5,890,331 | $6,760,650 |
| COGS - Logistics | $313,490 | $145,000 | $145,000 | $145,000 | $145,000 | $145,000 |
| Total COGS | $2,963,161 | $3,805,601 | $4,555,785 | $5,356,704 | $6,035,331 | $6,905,650 |
| | | | | | | |
| **Gross Profit** | **$1,938,503** | **$3,506,480** | **$4,921,620** | **$6,207,771** | **$7,471,455** | **$9,052,736** |
| Gross Profit Margin % | 40% | 48% | 52% | 54% | 55% | 57% |
| | | | | | | |
| A&P | $3,209,701 | $2,511,250 | $2,600,000 | $2,600,000 | $2,600,000 | $2,600,000 |
| Selling & Distribution | $1,938,765 | $1,890,940 | $2,324,976 | $2,776,354 | $3,248,256 | $3,763,066 |
| **Total CAAP** | **($3,209,962)** | **($895,710)** | **($3,356)** | **$831,417** | **$1,623,199** | **$2,689,670** |
| | | | | | | |
| Broker Fees | $32,848 | $570,863 | $758,183 | $954,014 | $1,156,070 | $1,408,069 |
| Consultants | $19,566 | $0 | $0 | $0 | $0 | $0 |
| Consultants - 3rd Party Sales | $15,000 | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 |
| Consultants - Digital | $169,815 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Other SG&A | $237,229 | $950,863 | $1,143,183 | $1,343,114 | $1,549,352 | $1,805,617 |
| **EBITDA** | **$3,491,889** | **($1,846,572)** | **($1,146,539)** | **($511,696)** | **$73,847** | **$884,053** |
| | | | | | | |
| A&P % of Net Revenue | 65% | 34% | 27% | 22% | 19% | 16% |
| CAAP % of Net Revenue | (65%) | (12%) | (0%) | 7% | 12% | 17% |

---

**Sources / Notes:**

Betty B Presentation, "Company Overview 2024," June 2024 (Exhibit 7 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000028664-725 at '712. [3.6]

[a]  I note that due to rounding, the calculated total does not match the source. Therefore, in these instances I use the source value.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**     **Schedule 3.12**
**Analysis of Betty B Holdings Financials**
**October 2024 Betty B Holdings P&L (2023A - 2028F)**

| | [a]<br>2023A | [a]<br>2024F | [a]<br>2025F | [a]<br>2026F | [a]<br>2027F | [a]<br>2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 228,299 | 352,000 | 776,250 | 1,332,154 | 1,780,799 | 2,305,547 |
| | | | | | | |
| Gross Revenue | $8,210,150 | $13,867,290 | $32,580,779 | $57,027,129 | $76,873,459 | $100,035,573 |
| Discounting | ($1,296,023) | ($1,746,901) | ($3,461,967) | ($5,959,095) | ($7,695,129) | ($9,984,324) |
| Early Payment | ($56,238) | ($53,360) | ($59,708) | ($71,650) | ($85,980) | ($103,175) |
| Slotting | ($174,666) | ($145,406) | ($144,046) | ($172,855) | ($207,426) | ($248,911) |
| FET | ($109,496) | ($337,500) | ($1,350,000) | ($2,700,000) | ($3,780,000) | ($5,027,400) |
| **Net Revenue** | **$6,573,726** | **$11,584,123** | **$27,565,058** | **$48,123,530** | **$65,104,925** | **$84,671,763** |
| | | | | | | |
| COGS | $3,224,076 | $5,510,975 | $13,834,776 | $23,421,464 | $30,391,935 | $38,064,845 |
| COGS - Logistics | $356,771 | $145,000 | $145,000 | $145,000 | $145,000 | $145,000 |
| Total COGS | $3,580,848 | $5,655,975 | $13,979,776 | $23,566,464 | $30,536,935 | $38,209,845 |
| | | | | | | |
| **Gross Profit** | **$2,992,878** | **$5,928,148** | **$13,585,282** | **$24,557,066** | **$34,567,990** | **$46,461,918** |
| Gross Profit Margin % | 46% | 51% | 49% | 51% | 53% | 55% |
| | | | | | | |
| A&P | $4,672,096 | $6,200,000 | $7,600,000 | $9,600,000 | $11,600,000 | $12,600,000 |
| Selling & Distribution | $1,955,883 | $2,256,105 | $4,110,230 | $6,408,107 | $8,269,809 | $10,341,271 |
| **Total CAAP** | **($3,635,100)** | **($2,527,957)** | **$1,875,052** | **$8,548,959** | **$14,698,181** | **$23,520,647** |
| | | | | | | |
| Salaries | $4,122,289 | $3,419,726 | $3,211,825 | $3,276,062 | $3,341,583 | $3,441,830 |
| Payroll Taxes | $191,448 | $244,490 | $227,858 | $232,415 | $237,063 | $244,175 |
| Benefits & Insurance | $270,849 | $322,104 | $334,094 | $340,776 | $347,591 | $358,019 |
| T&E | $690,530 | $477,474 | $480,306 | $489,912 | $499,710 | $514,701 |
| Total Salaries and T&E | $5,275,116 | $4,463,795 | $4,254,083 | $4,339,164 | $4,425,948 | $4,558,726 |
| | | | | | | |
| Accounting | $160,083 | $100,000 | $102,500 | $104,550 | $106,641 | $108,774 |
| Company Insurance | $127,956 | $142,000 | $145,550 | $148,461 | $151,430 | $154,459 |
| IT | $247,985 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Legal | $414,955 | $180,000 | $184,500 | $188,190 | $191,954 | $195,793 |
| Office Expense | $140,126 | $197,500 | $202,438 | $206,486 | $210,616 | $214,828 |
| Broker Fees | $279,257 | $719,638 | $903,206 | $1,301,622 | $1,658,494 | $2,089,471 |
| Consultants | $212,508 | $220,000 | $165,000 | $168,300 | $171,666 | $175,099 |
| Consultants - Sales Mgt | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 |
| Consultants - Digital | $169,815 | $200,000 | $205,000 | $209,100 | $213,282 | $217,548 |
| Processing Fees | $26,908 | $44,500 | $45,613 | $46,525 | $47,455 | $48,404 |
| Research and Development | $133,161 | $125,000 | $128,125 | $130,688 | $133,301 | $135,967 |
| Other SG&A | $2,092,754 | $2,308,638 | $2,466,931 | $2,893,021 | $3,278,122 | $3,737,891 |
| **EBITDA** | **($11,002,970)** | **($9,300,389)** | **($4,845,961)** | **$1,316,773** | **$6,994,112** | **$15,224,030** |

**Sources / Notes:**

   Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8124_A. [2.12]

[a]  I note that, in some instances, the calculated totals do not match the source values due to rounding. Therefore, in these instances I use the source value.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    Schedule 3.13
**Analysis of Betty B Holdings Financials**
**October 2024 Betty Booze 5 Year Financial Model (2023A - 2028F)**

| | 2023A | 2024F | 2025F | 2026F | 2027F | [a] 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 40,040 | 125,000 | 500,000 | 1,000,000 | 1,400,000 | 1,862,000 |
| | | | | | | |
| Gross Revenue | $1,781,558 | $5,541,250 | $22,165,000 | $44,330,000 | $62,062,000 | $82,542,460 |
| Discounting | $0 | ($554,125) | ($2,216,500) | ($4,433,000) | ($5,895,890) | ($7,841,534) |
| Early Payment | $0 | $0 | $0 | $0 | $0 | $0 |
| Slotting | $0 | $0 | $0 | $0 | $0 | $0 |
| FET | ($109,496) | ($337,500) | ($1,350,000) | ($2,700,000) | ($3,780,000) | ($5,027,400) |
| **Net Revenue** | **$1,672,062** | **$4,649,625** | **$18,598,500** | **$37,197,000** | **$52,386,110** | **$69,673,526** |
| | | | | | | |
| COGS | $574,406 | $1,974,795 | $9,588,600 | $18,410,112 | $24,743,191 | $31,592,106 |
| COGS - Logistics | $43,281 | $0 | $0 | $0 | $0 | $0 |
| Total COGS | $617,687 | $1,974,795 | $9,588,600 | $18,410,112 | $24,743,191 | $31,592,106 |
| | | | | | | |
| **Gross Profit** | **$1,054,375** | **$2,674,830** | **$9,009,900** | **$18,786,888** | **$27,642,919** | **$38,081,421** |
| Gross Profit Margin % | 63% | 58% | 48% | 51% | 53% | 55% |
| | | | | | | |
| A&P | $1,462,394 | $3,688,750 | $5,000,000 | $7,000,000 | $9,000,000 | $10,000,000 |
| Selling & Distribution | $17,118 | $500,000 | $1,960,000 | $3,841,600 | $5,270,675 | $6,869,798 |
| **Total CAAP** | **($425,137)** | **($1,513,920)** | **$2,049,900** | **$7,945,288** | **$13,372,244** | **$21,211,623** |

| $/Case | 2023LE | 2024F | 2025F | 2026F | 2027F | 2028F |
|---|---|---|---|---|---|---|
| Gross Revenue | $44.49 | $44.33 | $44.33 | $44.33 | $44.33 | $44.33 |
| Discounting | $0.00 | ($4.43) | ($4.43) | ($4.43) | ($4.21) | ($4.21) |
| FET | ($2.73) | ($2.70) | ($2.70) | ($2.70) | ($2.70) | ($2.70) |
| **Net Revenue** | **$41.76** | **$37.20** | **$37.20** | **$37.20** | **$37.42** | **$37.42** |
| | | | | | | |
| COGS | $14.35 | $15.80 | $19.18 | $18.41 | $17.67 | $16.97 |
| COGS - Logistics | $1.08 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total COGS | $15.43 | $15.80 | $19.18 | $18.41 | $17.67 | $16.97 |
| | | | | | | |
| **Gross Profit** | **$26.33** | **$21.40** | **$18.02** | **$18.79** | **$19.74** | **$20.45** |
| | | | | | | |
| A&P | $36.52 | $29.51 | $10.00 | $7.00 | $6.43 | $5.37 |
| Selling & Distribution | $0.43 | $4.00 | $3.92 | $3.84 | $3.76 | $3.69 |
| Total CAAP | **($10.62)** | **($12.11)** | **$4.10** | **$7.95** | **$9.55** | **$11.39** |
| | | | | | | |
| A&P % of Net Revenue | 87% | 79% | 27% | 19% | 17% | 14% |
| CAAP % of Net Revenue | (25%) | (33%) | 11% | 21% | 26% | 30% |
| EBITDA % of Net Revenue | (25%) | (37%) | 10% | 20% | 24% | 29% |

**Sources / Notes:**

Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8136_A. [2.12]

[a]  I note that, in some instances, the calculated totals do not match the source values due to rounding. Therefore, in these instances I use the source value.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    Schedule 3.14
**Analysis of Betty B Holdings Financials**
**October 2024 Betty Buzz 5 Year Financial Model (2023A - 2028F)**

|  | [a] 2023A | 2024F | 2025F | [a] 2026F | [a] 2027F | [a] 2028F |
|---|---|---|---|---|---|---|
| Cases Sold | 188,259 | 227,000 | 276,250 | 332,154 | 380,799 | 443,547 |
| | | | | | | |
| Gross Revenue | $6,428,592 | $8,326,040 | $10,415,779 | $12,697,129 | $14,811,459 | $17,493,113 |
| Discounting | ($1,296,023) | ($1,192,776) | ($1,245,467) | ($1,526,095) | ($1,799,239) | ($2,142,790) |
| Early Payment | ($56,238) | ($53,360) | ($59,708) | ($71,650) | ($85,980) | ($103,175) |
| Slotting | ($174,666) | ($145,406) | ($144,046) | ($172,855) | ($207,426) | ($248,911) |
| FET | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Revenue** | **$4,901,664** | **$6,934,498** | **$8,966,558** | **$10,926,530** | **$12,718,815** | **$14,998,236** |
| | | | | | | |
| COGS | $2,649,671 | $3,536,180 | $4,246,176 | $5,011,352 | $5,648,745 | $6,472,739 |
| COGS - Logistics | $313,490 | $145,000 | $145,000 | $145,000 | $145,000 | $145,000 |
| Total COGS | $2,963,161 | $3,681,180 | $4,391,176 | $5,156,352 | $5,793,745 | $6,617,739 |
| | | | | | | |
| **Gross Profit** | **$1,938,503** | **$3,253,318** | **$4,575,382** | **$5,770,178** | **$6,925,070** | **$8,380,497** |
| Gross Profit Margin % | 40% | 47% | 51% | 53% | 54% | 56% |
| | | | | | | |
| A&P | $3,209,701 | $2,511,250 | $2,600,000 | $2,600,000 | $2,600,000 | $2,600,000 |
| Selling & Distribution | $1,938,765 | $1,756,105 | $2,150,230 | $2,566,507 | $2,999,133 | $3,471,473 |
| **Total CAAP** | **($3,209,962)** | **($1,014,037)** | **($174,848)** | **$603,671** | **$1,325,937** | **$2,309,025** |

___

***Sources / Notes:***

   *Betty B Presentation, October 1, 2024 (Exhibit 8 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000037970_A-8164_A at '8138_A. [2.12]*

*[a]  I note that, in some instances, the calculated totals do not match the source values due to rounding. Therefore, in these instances I use the source value.*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    Schedule 3.15
**Analysis of Betty B Holdings Financials**
**May 2025 Betty B Income Statement 5 Year Model (2025F - 2029F)**

| | 2025F | [a] 2026F | [a] 2027F | [a] 2028F | [a] 2029F |
|---|---|---|---|---|---|
| Cases Sold | 350,360 | 768,720 | 1,160,772 | 1,537,829 | 2,097,268 |
| | | | | | |
| Gross Revenue | $13,150,947 | $27,578,685 | $41,556,126 | $54,827,451 | $74,329,276 |
| Discounting | ($2,601,003) | ($4,161,245) | ($6,036,844) | ($7,837,159) | ($10,379,682) |
| Early Payment | ($39,518) | ($17,035) | ($22,998) | ($29,897) | ($38,866) |
| Slotting | ($48,180) | ($40,884) | ($55,194) | ($71,752) | ($93,278) |
| FET | ($665,415) | ($2,025,000) | ($3,065,850) | ($4,063,433) | ($5,547,309) |
| **Net Revenue** | **$9,796,831** | **$21,334,520** | **$32,375,241** | **$42,825,211** | **$58,270,142** |
| | | | | | |
| COGS | $5,531,423 | $10,458,602 | $14,968,438 | $18,969,133 | $24,691,960 |
| COGS - Other | $1,721,689 | $0 | $0 | $0 | $0 |
| COGS - Write Offs (Non-Cash) | $1,247,825 | $0 | $0 | $0 | $0 |
| Total COGS | $8,500,937 | $10,458,602 | $14,968,438 | $18,969,133 | $24,691,960 |
| | | | | | |
| **Gross Profit** | **$1,295,894** | **$10,875,918** | **$17,406,802** | **$23,856,078** | **$33,578,182** |
| Gross Profit Margin % | 13% | 51% | 54% | 56% | 58% |
| | | | | | |
| A&P | $4,542,075 | $4,975,000 | $5,475,000 | $6,725,000 | $7,725,000 |
| Selling & Distribution | $2,641,398 | $3,778,799 | $5,589,998 | $7,257,306 | $9,698,189 |
| **Total CAAP** | **($5,887,579)** | **$2,122,119** | **$6,341,805** | **$9,873,772** | **$16,154,992** |
| | | | | | |
| Salaries | $1,952,313 | $2,010,882 | $2,051,100 | $2,112,633 | $2,112,633 |
| Payroll Taxes | $128,030 | $131,871 | $134,509 | $138,544 | $138,544 |
| Benefits & Insurance | $189,468 | $195,152 | $199,055 | $205,027 | $205,027 |
| T&E | $225,961 | $232,739 | $237,394 | $244,516 | $244,516 |
| Total Salaries and T&E | $2,495,772 | $2,570,645 | $2,622,058 | $2,700,720 | $2,700,720 |
| | | | | | |
| Accounting | $208,640 | $212,813 | $217,069 | $221,410 | $221,410 |
| Company Insurance | $143,504 | $146,374 | $149,301 | $152,287 | $152,287 |
| IT | $178,501 | $182,071 | $185,712 | $189,427 | $189,427 |
| Legal | $143,764 | $143,764 | $146,639 | $149,572 | $149,572 |
| Office Expense | $107,397 | $109,545 | $111,736 | $113,971 | $113,971 |
| Broker Fees | $364,577 | $346,495 | $462,846 | $589,446 | $751,424 |
| Consultants | $83,384 | $85,052 | $86,753 | $88,488 | $88,488 |
| Consultants - Sales Mgt | $90,000 | $0 | $0 | $0 | $0 |
| Consultants - Digital | $66,667 | $0 | $0 | $0 | $0 |
| Processing Fees | $42,760 | $43,616 | $44,488 | $45,378 | $45,378 |
| Research and Development | $156,548 | $156,548 | $159,679 | $162,872 | $162,872 |
| Other SG&A | $1,585,742 | $1,426,276 | $1,564,224 | $1,712,851 | $1,874,829 |
| **EBITDA** | **($9,969,093)** | **($1,874,803)** | **$2,155,523** | **$5,460,201** | **$11,579,443** |

*Sources / Notes:*
*Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '241_A. [4.1]*

[a] *I note that, in some instances, the calculated totals do not match the source values due to rounding. Therefore, in these instances I use the source value.*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**　　　　　　　　　　　　　　　　　　**Schedule 3.16**
**Analysis of Betty B Holdings Financials**
**May 2025 Betty Booze Income Statement 5 Year Model (2025F - 2029F)**

|  | [a] 2025F | [a] 2026F | [a] 2027F | [a] 2028F | 2029F |
|---|---|---|---|---|---|
| Cases Sold | 246,450 | 750,000 | 1,135,500 | 1,504,975 | 2,054,559 |
|  |  |  |  |  |  |
| Gross Revenue | $9,274,725 | $26,726,925 | $40,406,250 | $53,332,613 | $72,385,986 |
| Discounting | ($1,837,066) | ($4,033,481) | ($5,864,363) | ($7,612,933) | ($10,088,188) |
| FET | ($665,415) | ($2,025,000) | ($3,065,850) | ($4,063,433) | ($5,547,309) |
| **Net Revenue** | **$6,772,244** | **$20,668,444** | **$31,476,038** | **$41,656,247** | **$56,750,489** |
|  |  |  |  |  |  |
| COGS | $3,717,665 | $10,022,278 | $14,391,182 | $18,233,708 | $23,755,030 |
| COGS - Other | $739,747 | $0 | $0 | $0 | $0 |
| COGS - Write Offs (Non-Cash) | $0 | $0 | $0 | $0 | $0 |
| Total COGS | $4,457,412 | $10,022,278 | $14,391,182 | $18,233,708 | $23,755,030 |
|  |  |  |  |  |  |
| **Gross Profit** | **$2,314,832** | **$10,646,165** | **$17,084,855** | **$23,422,539** | **$32,995,459** |
| Gross Profit Margin % | 34% | 52% | 54% | 56% | 58% |
|  |  |  |  |  |  |
| A&P | $3,900,000 | $4,750,000 | $5,250,000 | $6,500,000 | $7,500,000 |
| Selling & Distribution | $1,232,250 | $3,675,000 | $5,452,671 | $7,082,352 | $9,475,298 |
| **Total CAAP** | **($2,817,418)** | **$2,221,165** | **$6,382,184** | **$9,840,186** | **$16,020,161** |
|  |  |  |  |  |  |
| Broker Fees | $144,249 | $310,295 | $413,977 | $525,915 | $688,834 |
| Other SG&A | $144,249 | $310,295 | $413,977 | $525,915 | $688,834 |
| **EBITDA** | **($2,961,668)** | **$1,910,870** | **$5,968,208** | **$9,314,271** | **$15,331,327** |

| $/Case | 2025F | 2026F | 2027F | 2028F | [b] 2029F |
|---|---|---|---|---|---|
| Gross Revenue | $37.63 | $35.64 | $35.58 | $35.44 | $35.23 |
| Discounting | ($7.45) | ($5.38) | ($5.16) | ($5.06) | ($4.91) |
| FET | ($2.70) | ($2.70) | ($2.70) | ($2.70) | ($2.70) |
| **Net Revenue** | **$27.48** | **$27.56** | **$27.72** | **$27.68** | **$27.62** |
|  |  |  |  |  |  |
| COGS | $15.08 | $13.36 | $12.67 | $12.12 | $11.56 |
| COGS - Other | $3.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total COGS | $18.09 | $13.36 | $12.67 | $12.12 | $11.56 |
|  |  |  |  |  |  |
| **Gross Profit** | **$9.39** | **$14.19** | **$15.05** | **$15.56** | **$16.06** |
|  |  |  |  |  |  |
| A&P | $15.82 | $6.33 | $4.62 | $4.32 | $3.65 |
| Selling & Distribution | $5.00 | $4.90 | $4.80 | $4.71 | $4.61 |
| Total CAAP | ($11.43) | $2.96 | $5.62 | $6.54 | $7.80 |

**Sources / Notes:**

Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '243_A. [4.1]

[a]  I note that, in some instances, the calculated totals do not match the source values due to rounding. Therefore, in these instances I use the source value.

[b]  I note that in the source this column is incorrectly labeled as "2028F."

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**　　　　　　　　　　　　　　　　**Schedule 3.17**
**Analysis of Betty B Holdings Financials**
**May 2025 Betty Buzz Income Statement 5 Year Model (2025F - 2029F)**

| | [a] 2025F | [a] 2026F | [a] 2027F | [a] 2028F | [a] 2029F |
|---|---|---|---|---|---|
| Cases Sold | 103,910 | 18,720 | 25,272 | 32,854 | 42,710 |
| | | | | | |
| Gross Revenue | $3,876,222 | $851,760 | $1,149,876 | $1,494,839 | $1,943,290 |
| Discounting | ($763,937) | ($127,764) | ($172,481) | ($224,226) | ($291,494) |
| Early Payment | ($39,518) | ($17,035) | ($22,998) | ($29,897) | ($38,866) |
| Slotting | ($48,180) | ($40,884) | ($55,194) | ($71,752) | ($93,278) |
| FET | $0 | $0 | $0 | $0 | $0 |
| **Net Revenue** | **$3,024,588** | **$666,076** | **$899,203** | **$1,168,964** | **$1,519,653** |
| | | | | | |
| COGS | $1,813,758 | $436,324 | $577,256 | $735,424 | $936,930 |
| COGS - Other | $981,942 | $0 | $0 | $0 | $0 |
| COGS - Write Offs (Non-Cash) | $1,247,825 | $0 | $0 | $0 | $0 |
| Total COGS | $4,043,525 | $436,324 | $577,256 | $735,424 | $936,930 |
| | | | | | |
| **Gross Profit** | **($1,018,937)** | **$229,753** | **$321,947** | **$433,540** | **$582,723** |
| Gross Profit Margin % | (34%) | 34% | 36% | 37% | 38% |
| | | | | | |
| A&P | $642,075 | $225,000 | $225,000 | $225,000 | $225,000 |
| Selling & Distribution | $1,409,148 | $103,799 | $137,327 | $174,954 | $222,892 |
| **Total CAAP** | **($3,070,160)** | **($99,047)** | **($40,380)** | **$33,586** | **$134,831** |
| | | | | | |
| Broker Fees | $220,328 | $36,200 | $48,870 | $63,531 | $82,590 |
| Consultants | $0 | $0 | $0 | $0 | $0 |
| Consultants - Sales Mgt | $90,000 | $0 | $0 | $0 | $0 |
| Consultants - Digital | $66,667 | $0 | $0 | $0 | $0 |
| Processing Fees | $0 | $0 | $0 | $0 | $0 |
| Research and Development | $0 | $0 | $0 | $0 | $0 |
| Other SG&A | $376,994 | $36,200 | $48,870 | $63,531 | $82,590 |
| **EBITDA** | **($3,447,155)** | **($135,246)** | **($89,249)** | **($29,945)** | **$52,241** |

| $/Case | 2025F | 2026F | 2027F | 2028F | [b] 2029F |
|---|---|---|---|---|---|
| Gross Revenue | $37.30 | $45.50 | $45.50 | $45.50 | $45.50 |
| Discounting | ($7.35) | ($6.83) | ($6.83) | ($6.83) | ($6.83) |
| FET | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| [c] **Net Revenue** | **$29.11** | **$35.58** | **$35.58** | **$35.58** | **$35.58** |
| | | | | | |
| COGS | $17.46 | $23.31 | $22.84 | $22.38 | $21.94 |
| COGS - Other | $9.45 | $0.00 | $0.00 | $0.00 | $0.00 |
| [c] Total COGS | $38.91 | $23.31 | $22.84 | $22.38 | $21.94 |
| | | | | | |
| [c] **Gross Profit** | **($9.81)** | **$12.27** | **$12.74** | **$13.20** | **$13.64** |
| | | | | | |
| A&P | $6.18 | $12.02 | $8.90 | $6.85 | $5.27 |
| Selling & Distribution | $13.56 | $5.54 | $5.43 | $5.33 | $5.22 |
| Total CAAP | **($29.55)** | **($5.29)** | **($1.60)** | **$1.02** | **$3.16** |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**Blake Lively v. Wayfarer Studios LLC. et al.**                                                    **Schedule 3.17**
**Analysis of Betty B Holdings Financials**
**May 2025 Betty Buzz Income Statement 5 Year Model (2025F - 2029F)**

| | [a]<br>2025F | [a]<br>2026F | [a]<br>2027F | [a]<br>2028F | [a]<br>2029F |
|---|---|---|---|---|---|

*Sources / Notes:*

    *Betty B Presentation, "Betty B Update," May 8, 2025 (Exhibit 12 to Deposition of Andrew T. Chrisomalis, September 24, 2025), BL-000038170_A-269_A at '244_A. [4.1]*

[a]  *I note that, in some instances, the calculated totals do not match the source values due to rounding. In these cases, the source value was used.*

[b]  *I note that in the source this column is incorrectly labeled as "2028F."*

[c]  *I note that material discrepancies were observed in the source data related to the Net Revenue per case calculations as well as the 2025F Total COGS and Gross Profit per case calculations. In these cases the source value was retained for consistency.*

# Tab 3

# LITI|NOMICS

## MICHAEL J. WAGNER
Senior Advisor

(Updated as of August 12, 2025)

J.D., Loyola University School
of Law at Los Angeles (1975)

M.B.A., University of California
at Los Angeles (1971)

B.S. Engineering,
University of Santa Clara
(1969)

Michael Wagner, a Senior Advisor with LitiNomics, has testified 146 times at trial, 39 times in arbitration, and 385 times in deposition.  He has testified at trial in Federal courts in 19 different states and in State court in 10 different States.  He has been deposed in cases pending in 33 states. The most frequent subject matters of his expert testimony are the calculation of commercial damages or business value.  He has also testified a number of times on the subject of alter ego.

## EXPERIENCE

2007-Present    *Senior Advisor* beginning 2018; *Managing Director* 2007-2017, LitiNomics, Inc.

2004–2007    *Senior Advisor*, CRA International (successor to InteCap, Inc.)

1999–2004    *Managing Director*, InteCap, Inc.

1999    *Senior Vice President*, PHB Hagler Bailly, Inc. (successor to Putnam, Hayes & Bartlett, Inc.)

1993–1999    *Managing Director*, Putnam, Hayes & Bartlett, Inc. (successor to Dickenson, O'Brien & Associates)

1985–1992    *Partner*, Price Waterhouse

*Senior Manager*, 1983–1985

*Manager*, 1979–1980

*Consultant*, 1976–1979

1981–1983    *Principal*, Dickenson, O'Brien & Associates

*Associate*, 1980–1981

1975–1976    *Associate Cost Engineer*, Fluor Engineers & Constructors, Inc.

## PROFESSIONAL AFFILIATIONS (CURRENT)

Certified Public Accountant, State of California - # 30327 (Active status from July 1980 through April 2014, Inactive status beginning May 2014)

Member, State Bar of California - # 67911 (Active status from November 1975 to April 1991 and January 1995 to December 2016, Inactive status beginning January 2017)

## PROFESSIONAL AFFILIATIONS (PAST)

Member, Sedona Conference Patent Damages and Remedies Working Group (2011 – 2016)

Member, American Institute of Certified Public Accountants - # 1079895

Certified in Financial Forensics - # 23 (2008 – 2014)

Inaugural CFF Credential Committee (2008 – 2011)

AICPA Litigation Services Committee (1993–1995)

AICPA Business Valuation Standards Task Force (1994–1995)

AICPA and IBA combined Conference Steering Committee (1995)

AICPA Litigation Services Conference Steering Committee (1990 – 1995)

AICPA MAS Practice Standards and Administration Subcommittee (1988–1990)

AICPA Auditing Standards Board Litigation Services Task Force (1989)

Co-Editor, *CPA Expert* (1994–1996)

Panel of Experts, Dunn on Damages

Member, American Bar Association

Member, State Bar of California (inactive status 1991–1995)

Member, California Society of Certified Public Accountants

Litigation Services Committee (1985–1990), Chairman (1987–1989)

Government Relations Committee (1989–1990)

Contingent Fee Task Force (1988–1990)

Member, Oregon Society of Certified Public Accountants

Litigation Services Committee (1990–1994)

Certified Public Accountant, States of Hawaii (1980–1983), Washington (1990–1994), Oregon (1990–1994)

Member, Los Angeles County Bar Association

Dispute Resolution Services, Sub-chair of Administration Committee (1987–1989)

NASD Board of Arbitrators

***Underlined party was my client.

Hastings College of Advocacy, Faculty Expert

NITA, Faculty Member

Certified Management Consultant

American Arbitration Association's Panel of Arbitrators

Arbitration Services of Portland, Inc.

Academy of Experts

## PUBLICATIONS

"When Is It Appropriate To Have A Reasonable Royalty Higher Than The Infringer's Profits?" *Dunn on Damages*, Issue 9, Winter 2012.

"Book of Wisdom – Is it Fact or Fiction", *Dunn on Damages – The Economic Damages Report for Litigators, Issue 3*, Summer 2011

"A Primer on Patent Damages", *Dunn on Damages - The Economic Damages Report for Litigators and Experts*, Issue 2, Spring 2011.

"The 25% Rule Lives On", *IP Law 360*, September 8, 2010 (co-authored with John Jarosz and Carla Mulhern)

"Response to One Man's Opinion, comments on 'A New Look at Expected Cash Flows and Present Value Discounts'," *CPA Expert*, spring 2004 (co-authored with Michael Crain and Bonnie Goldsmith)

"Differences between Economic Damages Analysis and Business Valuation," Chapter 13 in the *Handbook of Business Valuation and Intellectual Property Analysis*, McGraw-Hill, 2004 (co-authored with Michael Dunbar)

*Litigation Services Handbook* (4th Edition – 2007, 3rd Edition – 2001, 2nd Edition – 1995, 1st Edition – 1990), John Wiley & Sons, (co-edited with Peter B. Frank and Roman L. Weil).

### Chapters Co-Authored

4th Edition:

      Chapter 1 "The Role of the Financial Expert in Litigation Services"

      Chapter 8 "Ex Ante versus Ex Post Damages Calculations"

      Chapter 22 "Patent Infringement Damages"

      Chapter 29 "Alter Ego"

3rd Edition:

      Chapter 1 "The Role of the Financial Expert in Litigation Services"

      Chapter 5A "Ex Ante versus Ex Post Damages Calculations" (2003 Supplement)

      Chapter 24 "Patent Infringement Damages"

      Chapter 38 "Alter Ego"

***Underlined party was my client.

2nd Edition:

>   Chapter 1 "The Role of the CPA in Litigation Services"
>
>   Chapter10 "Alter Ego"
>
>   Chapter 34 "Patent Infringement Damages"

1st Edition:

>   Chapter 1 "The Role of the CPA in Litigation Services"
>
>   Chapter 17 "Patent Infringement Damages"
>
>   Chapter 31 "Securities Act Violations: Computation of Damages"

"Economic Damages: Use and Abuse of Business Valuation Concepts," Chapter 14 in *The Handbook of Advanced Business Valuation*, McGraw-Hill, 1999 (co-authored with John Phillips).

"Tax Effects of Discount Rates in Taxable Damage Awards," *CPA Expert*, winter 1999 (co-authored with Greg Hallman).

"Experience Enhances Objectivity of Damage Estimates," *CPA Expert,* winter 1997.

"Communicating in Litigation Services: Reports, A Nonauthoritative Guide," *AICPA Consulting Services Practice Aid No. 96-3*, 1996 (co-authored with Everett P. Harry III). Partially reprinted in *Recovery of Damages for Lost Profits*, Volume 2, (5th Edition) by Robert L. Dunn.

"Court Expands Lost Profits Damages From Patent Infringement," *CPA Expert*, summer 1996 (co-authored with Bruce L. McFarlane).

"The Implications of Changes in the Federal Rules of Civil Procedure for CPA-Expert Witnesses," *The CPA Management Consultant Newsletter* of the AICPA Management Consultant Division, spring 1994 (co-authored with Bruce L. McFarlane).

"The Revised Federal Rules of Civil Procedures That Apply to Expert Witnesses," *CPA Litigation Services Counselor*, Volume 1994, Issues 2 & 3. Harcourt Brace (February and March 1994).

"What Juries Look for in CPAs," *Journal of Accountancy* (November 1993).

"Litigation Services," *AICPA MAS Technical Consulting Practice Aid*, No. 7 1986 reprinted and updated as "Providing Litigation Services" *AICPA Consulting Services Practice AID 93-4* (co-authored with Peter B. Frank) (1993).

"Valuation of Intangible Assets," *Financial Valuation: Businesses and Business Interests*, Warren Gorham Lamont, 1993 Supplement (co-authored with Lee B. Shepard).

"Opportunities in Litigation Services," *Journal of Accountancy*, (June 1992) (co-authored with Bruce L. McFarlane).

"Economic Damages in Patent Infringement Cases," *Patent Litigation 1991*, Vol. II, Practicing Law Institute, Course Handbook Series No. 321 (co-authored with Peter B. Frank and Jeffrey H. Kinrich).

"Using CPAs In Your Law Practice," *Seattle-King County Bar Bulletin*, February 1991 (co-authored with Bruce L. McFarlane). Reprinted in *The Oregon Certified Public Accountant*, September 1991, as "The Role of the CPA in Commercial Litigation."

---

***Underlined party was my client.

"The Accountant's Role in the Process of Damage Measurement," *The Practical Accountant* (July 1990).

"How do you Measure Damages?  Lost Income or Lost Cash Flow?" *Journal of Accountancy* (February 1990).

"Expert Problems," *ABA Litigation Journal*, Volume 15, No. 2 (Winter 1989).

"How to Control Your Expert," *Association of Business Trial Lawyers Report*, Volume X, No. 2 (February 1988).

"Computing Lost Profits and Reasonable Royalties," *American Intellectual Property Law Association Quarterly Journal*, Volume 15, No. 4 1987 (co-authored with Peter B. Frank).

"Breach of Duty by Directors, Officers and Principal Shareholders: Shareholder Derivative Actions," Chapter 63, *Commercial Damages*, Matthew Bender (1986).

"Computers Revolutionize Damage Claim Analysis," *The Recorder* (June 7, 1984).

"Analyzing Damage Claims—Discounted Cash Flow Method," *The National Law Journal* (August 29, 1983).

"The Litigator's Ultimate Weapon," *Los Angeles Lawyer* (May/June 1983) (co-authored with Peter B. Frank and Jeffrey H. Kinrich).

## Committee Publications

"Commentary on Patent Damages and Remedies" *The Sedona Conference*, June 2014 Public Comment Version, Contributing Editor.

 "Communicating Understandings in Litigation Services: Engagement Letters," AICPA Consulting Services Practice Aid 95-2 (1995).

Statement on Standards for Consulting Services No. 1, AICPA (October 1991).

## Selected Speeches

"Issues and Strategies Based on Recent Damages Decisions" panelist, March 5, 2018, University of Arizona Inaugural IP Conference, Tucson, Arizona

"IP Remedies Roundtable and Workshop", panelist, March 20, 2017, USC Gould School of Law 2017 Intellectual Property Institute, Santa Monica, California

"Commentary on Patent Damages and Remedies", panelist, November 6, 2014, The Sedona Conference All Voices Meeting, New Orleans

"The Use of Consumer Surveys in Patent Cases for Damage Apportionment", LES 2012 Winter Meeting, March 13, 2012, Anaheim, CA

"Evolving IP Value: Recent Developments in Damages and Licensing", Top IP Retreat, September 16, 2011, Pebble Beach, CA

"Patent Exhaustion", IP Damages Institute, November 8, 2010, Century City, California

"Big Verdicts Under Scrutiny: Taking a Hard Look at the Damages Case", The 2010 Midwest Intellectual Property Institute, September 24, 2010, Minneapolis, Minnesota

***Underlined party was my client.

"Do's and Don'ts of Being and Expert Witness", 24th Annual Bankruptcy and Restructuring Conference, Association of Insolvency and Restructuring Advisors, June 7, 2008, Las Vegas, Nevada

"Enforcing the License Agreement, Royalty Audits, Collections, and Litigation" The Intellectual Property Law Section of the State Bar of California, April 9, 2008, San Francisco, California

"Effective Presentations of Financial Information at Trial", 2007 Advanced Litigation Conference, California Society of CPAs, May 3, 2007, Las Vegas, Nevada

"Discounting Damages to Present Value: Today's Hottest Issues," panelist, Business Valuation Resources, July 20, 2005, Telephonic Conference

"Assessing and Proving Damages from Infringement," panelist, USC Law School 2004 Intellectual Property Institute, May 25, 2004, Beverly Hills, California

"Economic Damages," AICPA National Business Valuation Conference, November 17, 2003, Phoenix, Arizona

"Discovery of Expert Drafts and Notes, Panel Discussion," Advanced Workshop on Calculating & Proving Patent Damages, Law Seminars International, November 12, 2003, Seattle, Washington

"Calculating and Presenting Lost Profits: The Bread and Butter of Litigation Services" and "Mock Arbitration for Lost Profits", panelist on both presentations, AICPA National Conference on Advanced Litigation Services, October 1, 2003, Miami, Florida

"Discount Rates and Taxation Issues in Damages," 2003 Advanced Business Litigation Institute, California Society of CPAs, May 9, 2003, La Quinta, California

"Current Issues in Patent Damages," The Sedona Conference, November 10, 2000, Sedona, Arizona

"Tax Issues in Lost Profits Damage Calculations" and panelist for "Expert Shootout, or Shoot the Expert," 2000 AICPA National Advanced Litigation Services Conference, October 17, 2000, Beverly Hills, California

"IP Valuation: A Critical Component in Transactional and Litigation Strategy," Silicon Valley Intellectual Property Law Association, September 20, 2000, Palo Alto, California

"Damages, Damages, Damages: Business Damages In Commercial Litigation," 1999 AICPA National Advanced Litigation Services Conference, October 18, 1999, Atlanta, Georgia.

"Commercial Damages: A Case Study on Lost Profits," 1998 AICPA National Advanced Litigation Services Conference, October 14, 1998, Tempe, Arizona.

"Damages—What You Need to Know as Taught by the Experts," 1998 ABA Section of Litigation Annual Meeting, April 24, 1998, New York, New York.

"Expert Witnessing in a Fraud Case," 1997 AICPA National Conference on Fraud, December 8, 1997, San Antonio, Texas.

"Advanced Issues in Determining Discount and Growth Rates," 1997 AICPA National Advanced Litigation Services Conference, October 16, 1997, Las Vegas, Nevada (with Greg Hallman).

***Underlined party was my client.

"Alter Ego" and "More Effective Testimony," EPA Third Annual Financial Analyst Workshop, May 7–8, 1997, Denver, Colorado.

"More Effective Testimony," 1996 AICPA National Advanced Litigation Services Conference, October 1, 1996, New Orleans, Louisiana.

"Expert Witness," The 1996 AICPA Practitioners' Symposium, June 10, 1996, Las Vegas, Nevada.

"Calculating Damages," 1996 Institute of Business Appraisers Conference on Appraising Closely Held Businesses, January 26, 1996, Orlando, Florida.

"Calculating Damages," 1995 Institute of Business Appraisers Conference on Appraising Closely Held Businesses, January 26, 1995, Las Vegas, Nevada.

"The Revised Federal Rules of Civil Procedure That Apply to Expert Witnesses," 1994 AICPA National Advanced Litigation Services.  Conference, October 20, 1994, Phoenix, Arizona.

"Damages In Employment Litigation," Employment And Labor Law In Oregon, Lorman Education Services, April 29, 1994, Portland, Oregon.

"Damages, Time Value of Money" and panel participant on "Practical Problems of Federal Rule of Civil Procedure No. 26," 1994 Litigation Advanced Forum, California Society of CPAs, April 25, 1994, Monterey, California.

"Patent Infringement/Intellectual Property," 1993 Litigation Services Conference, California Society of CPA's, December 1, 1993, Los Angeles; December 2, 1993, San Francisco, California.

"Expert Witness Depositions," 1993 Oregon Society of CPA's Litigation Support Services Miniseries, November 17, 1993, Portland, Oregon.

"Panel: The Many Roads to Alternative Dispute Resolution" and "Basic Concepts in Litigation Services," Fifth Annual AICPA Conference on "The CPA's Role in Litigation Services," July 22–23, 1993, La Jolla, California.

"Professional Standards" and "Litigation Process/Role of Expert Witness" 1993 Litigation Services Conference, Washington Society of Certified Public Accountants, May 20, 1993, Bellevue, Washington.

"The Deposition of the Expert Witness," Fourth Annual AICPA Conference on "The CPA's Role in Litigation Services," July 17, 1992 Washington, DC; October 23, 1992, Las Vegas, Nevada.

"Litigation Services Standards," 1992 Litigation Services Conference, Washington Society of Certified Public Accountants, May 9, 1992, Silverdale, Washington.

"The Litigation Process Through Discovery," 1991 Litigation Services Conference, California Society of Certified Public Accountants, November 20, 1991, San Francisco; November 21, 1991, Los Angeles, California.

"Professional Standards and Work Papers," Oregon Society of CPAs, Litigation Support Services Conference, September 27, 1991, Portland, Oregon.

"Economic Analysis of Damages: Computing Lost Profits and Reasonable Royalties," IRR's Conference on Securing and Enforcing Intellectual Property Rights for Competitive Advantage, September 26, 1991, San Francisco, California.

***Underlined party was my client.

"How to be a Better Testifying Expert," the Third Annual AICPA Conference on "The CPA's Role in Litigation Services," July 11, 1991, Denver, Colorado; October 10, 1991, Atlanta, Georgia.

"Accounting Standards in Litigation Support—Current and Future," Colorado Society of CPAs 1990 Litigation Support Conference, December 3,1990, Denver, Colorado.

"Mini Trials—New Work for Experts" and "Issues in Forensic Accounting," National Forensic Center's 7th National Conference, December 8, 1990, Palm Springs, California.

"Deposition of the Expert," California Society of CPAs 1990 Litigation Services Conference, November 19, 1990—San Francisco; November 20, 1990, Los Angeles, California.

"Examining Damage Experts," PLI's Accountant's Liability: Trial Strategies Conference, August 10, 1990, San Francisco, California.

"Developing Damages: Mock Trial Demonstration, "AICPA's Conference on the CPA's Role in Litigation Services, July 13, 1990, Dallas, Texas; September 7, 1990, Washington, DC.

"Lost Profits, Business Interruptions" and "The Discovery Process," 1990 Litigation Consulting Conference, California Society of Certified Public Accountants, April 26, 1990, Los Angeles, California.

"Standards in Litigation Services Engagements" and "Expert Witness Strategy Tactics," Arizona Society of CPAs' Conference on the CPA as an Expert, September 25, 1989, Phoenix, Arizona.

"Damage Management," AICPA's Conference on the CPA's Role in Litigation Support Services, May 12, 1989, San Francisco; July 11, 1989, Boston; October 27, 1989, Chicago; December 8, 1989, Palm Beach, Florida.

"Litigation Services—Damage Studies," AICPA's 101st Annual Meeting, October 4, 1988, Los Angeles, California.

"Litigation Update," 1988 Marital Dissolution Conference, California Society of Certified Public Accountants, September 26, 1988, San Francisco; September 27, 1988, Los Angeles, California.

"The Mini-Trial Approach to Dispute Resolution," Los Angeles County Bar Association and the American Arbitration Association Conference on New Techniques in Dispute Resolution, February 4, 1988, Los Angeles, California.

"Damages Issues During Trial," Association of Business Trial Lawyers 14th Annual Seminar, October 17, 1987, Rancho Mirage, California.

"Litigation Services Committee Update," 1987 Marital Dissolution Conference, California Society of Certified Public Accountants, September 22, 1987, Los Angeles, California.

"Using a CPA in Litigation," 1987 Annual Meeting of the Florida Bar, June 11, 1987, Orlando, Florida.

"Litigation Services," 12th Annual AICPA Small Business Management Advisory Services Conference, September 9–10, 1986, Dallas, Texas.

***Underlined party was my client.

## EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 146. | Horyong Co. Ltd v. Premier Roofing Supply, Inc., Pacific Equipment & Supply, Inc., Chang Ho Ahn, and Young S. Ahn Case No. RG17877579 (2022)*379 | Superior Court of California, County of Alameda | Breach of Contract, Unfair Business Practices, Fraud, Negligent Misrepresentation, Alter Ego | Buckhalter Nemer<br><br>Law Offices of Mark Choi | Alter Ego and Damages Analysis |
| 145. | Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson and Ericsson Inc. Civil Action No. 2:21-cv-113 JRC (2022)*378 | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Susman Godfrey L.L.P. | Damages Analysis |
| 144. | TecSec, Inc. v. Adobe Systems, Inc. Case No. 1:10-cv-00115-LO-TCB (2018)*365 | U.S. District Court, Eastern District of Virginia | Patent infringement | Hunton Andrews Kurth LLP | Damages Analysis |
| 143 | Jibe Audio, LLC and Steven Lamar v. Pentagram Design, Inc., Hinrichs & Associates, Jimmy Iovine, Andre Young P/K/A Dr. Dre, Beats Electronics, LLC, Ammunition, LLC, and Robert Brunner Case No. BC533089 (2018)*355 | Los Angeles Superior Court, State of California | Breach of Contract, Breach of Fiduciary Duties, Intentional Interference with Contractual Relations. | Susman Godfrey | Damages Analysis |
| 142. | Intellectual Ventures II LLC v. FedEx Corp., Federal Express Corp., FedEx Ground Package Systems, Inc., FedEx Freight, Inc., FedEx Custom Critical Inc., FedEx Office and Print Services, Inc., and GENCO Distribution Systems, Inc. Civil Action No. 2:16-cv-980 (2018)*362 | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 141. | Bladeroom Group Limited and BRIPCO (UK) Limited v. Facebook, Inc., Emerson Electric Co., Emerson Network Power Solutions, Inc., and Liebert Corporation Case No. 5:15-cv-01370-EJD (2018)*357 | U.S. District Court, Northern District of California, San Jose Division | Theft of Trade Secrets | Farella Braun & Martell | Damages Analysis |
| 140. | CardiAQ Valve Technologies, Inc. v. Neovasc, Inc. and Neovasc Tiara, Inc., Case No. 1:14-CV-12405-NMG (2016)*344 | U.S. District Court, District of Massachusetts | Theft of Trade Secrets, Breach of Contract, Fraud, and deceptive trade practices | Knobbe Martens Olson & Bear | Damages Analysis |

***Underlined party was my client.

**EXPERT TESTIMONY—COURT** (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 139. | Adaptix, Inc. v. <u>Alcatel-Lucent USA, Inc., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and Sprint Spectrum Civil Actions No. 6:12-cv-0022, No. 6:13-cv-0049, and No. 6:13-cv-0050 (2015)*338</u> | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 138. | FieldTurf USA, Inc. and FieldTurf Tarkett, Inc. v. <u>AstroTurf LLC.</u> Case No. 2: 10-CV-12492-SJM-MJG (2015)*341 | U.S. District Court, Eastern District of Michigan Southern Division | Patent Infringement Lanham Act | Bejin VanOphem Bieneman PLC<br><br>Manion Gaynor & Manning LLP | Damages Analysis |
| 137. | <u>St. Clair Intellectual Property Consultants, Inc.</u> v. Toshiba  Civil Action No. 09-354-KAJ (2015)*303 | U.S. District Court, District of Delaware | Patent Infringement | Niro, Haller & Niro | Damages Analysis |
| 136. | Charles C. Freeny III, Bryan E. Freeny, and James P. Freeny v. <u>Murphy USA, Inc.</u> Case No. 2:13-cv-00791 (RSP) (2015) | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Jackson Walker L.L.P. | Damages Analysis |
| 135. | <u>Eagle Harbor Holdings LLC  and Mediustech LLC</u> v. Ford Motor Company Case No. 3:11-cv-05502-BHS (2015)*337 | U.S. District Court, Western District of Washington | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 134. | <u>Intellectual Ventures I LLC</u> v. Symantec Corp. Civil Action No. 10-cv-1065-LPS (2015)*322 | U.S. District Court, District of Delaware | Patent Infringement | Susman Godfrey LLP | Damages Analysis |
| 133. | <u>Masimo Corporation</u> v. Philips Electronics North America Corporation and Philips Medizin Systeme Boblingen GMBH Civil Action No. 09-080 (JJF) (2014)*311 | U.S. District Court, District of Delaware | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 132. | Anesta AG, Aptalis Pharmatech, Inc. and IVAX International GMBH v. <u>Mylan Pharmaceuticals, Inc. and Mylan, Inc.</u> Case No. 08-889-SLR (2014)*335 | U.S. District Court, District of Delaware | Patent Infringement | Wilson, Sonsini, Goodrich & Rosati | Damages Analysis |
| 131. | U.S. Ethernet Innovations, LLC v. <u>Texas Instruments Incorporated</u> Civil Action No. 6:11-cv-491-LED (2014) | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | Covington & Burling | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 130. | Innovative Sonic Limited v. Research In Motion Ltd. And Research In Motion Corporation Civil Action No. 3:11-CV-706 (2013)*315 | U.S. District Court, Northern District of Texas | Patent Infringement | Susman Godfrey LLP | Damages Analysis |
| 129. | XpertUniverse, Inc. v. Cisco Systems, Inc. Civil Action No. 09-157-RGA (2013)*316 | U.S. District Court, District of Delaware | Fraud and Patent Infringement | Morgan Lewis & Bockius | Damages Analysis |
| 128. | TV Interactive Data Corporation v. Sony Corporation; Sony Computer Entertainment Inc.,; Sony Computer Entertainment America, Inc.; Sony Corporation of America; and Sony Electronics Co., Ltd  Case No. C 10-00475 PJH (2013)*312 | U.S. District Court, Northern District of California | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 127. | Apple, Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC Case No. 11-cv-01846-LHK (2012, 2013 and 2018)*296 | U.S. District Court, Northern District of California, San Jose Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 126. | Shelbyzyme LLC v. Genzyme Corporation Civil Action No. 09-768 (GMS) (2012)*309 | U.S. District Court, District of Delaware | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 125. | IMRA America, Inc. v. IPG Photonics Corporation Case No. 2:06-CV15139 (2011)*282 | U.S. District Court, Eastern District of Michigan | Patent Infringement | Skadden Arps Slate Meagher & Flom | Damages Analysis |
| 124 | E.I. du Pont de Nemours and Company v. Kolon Industries, Inc. Civil Action No. 3:09cv58 (2011)*285 | U.S. District Court, Eastern District of Virginia | Theft of trade secrets | Paul Hastings | Damages Analysis |
| 123. | Ahcom, Ltd. V. Hendrick Smedling and Lettie Smedling Case No. 3:07 CV 1139 SC (2011)*252 | U.S. District Court, Northern District of California, San Francisco Division | Alter ego | Parish & Small | Alter ego Analysis |
| 122. | ActiveVideo Networks, Inc. v. Verizon Communications, Inc. et al. Civil Action No. 2:10cv248 (2011)*293 | U.S. District Court, Eastern District of Virginia | Patent Infringement | Morgan Lewis & Bockius | Damages Analysis |

***Underlined party was my client.

### EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 121 | Wellogix, Inc. v. BP America, Inc. Civil Action No. 4:09-CV-1511 (2011)*281 | U.S. District Court, Southern District of Texas, Houston Division | Theft of trade secrets, Breach of contract, Tortious Interference with Prospective Business Relations | Laminack, Pirtle & Martines | Damages Analysis |
| 120. | Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors, USA, Inc. Case No. H-07-02392 (2009 and 2011)*260 | U.S. District Court, Southern District of Texas | Patent Infringement | Brinks Hofer Gilson & Lione  Smyser Kaplan & Veselka | Damages Analysis |
| 119. | Grimaud Farms of California, Inc. v. Whole Foods Market California and Whole Foods Market Services, Inc. Case No. CV030845 (2011)*290 | San Joaquin County Superior Court, California | Breach of contract, Fraud, Tortious Interference with Contract. | Damrell, Nelson, Schrimp, Pallios, Pacher & Silva | Damages Analysis |
| 118. | St. Jude Medical, Inc. and St. Jude Medical Puerto Rico LLC v. Access Closure, Inc. Case No. 4:08-cv-04101-HFB (2010)*287 | U.S. District Court, Western District of Arkansas, Texarkana  Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 117. | Sportsmark Trading, Ltd., v. Roger Cleveland Golf Company, Inc. Case No. 07CC12309 (2010)*266 | Orange County Superior Court, California | Breach of Contract | Krane & Smith | Damages Analysis |
| 116. | Function Media, L.L.C. v. Google, Inc. Case No. 2-007-CV-279 (2010)*268 | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 115. | Advanced Thermal Sciences Corporation v. Applied Materials, Inc. Case No. 8:07-CV-1384 (JVS) (2009)*262 | U.S. District Court, Central District of California, Southern Division | Breach of Contract, Fraud | Orrick Herrington & Sutcliffe | Damages Analysis |
| 114. | Versata Software, Inc., et al. v. SAP America, Inc. and SAP, AG  Civil Action No.: 2:07-cv-153-CE (2009 and 2011)*261 | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Howrey, LLP  Fish & Richardson  Ropes & Grey | Damages Analysis |
| 113. | Medtronic, Inc., et al. v. AGA Medical Corporation Case No. C 07 00567 MMC (2009)*255 | U.S. District Court, Northern District of California, San Francisco Division | Patent Infringement | Alston Bird | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 112. | Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc., and Wake Forest University Health Sciences v. Blue Sky Medical Group, Inc., Smith & Nephew, Inc. Case No. SA08-CA-102 RF (2009 and 2010)*257 | U.S. District Court, Western District of Texas, San Antonio Division | Patent Infringement | Knobbe Martens Olson & Bear | Irreparable Harm<br>Damages Analysis<br>eBay Factors |
| 111. | I4i, LP and i4i, Inc. v. Microsoft Corporation Civil Action No. 6:07-CV-113-LED (2009)*254 | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | McKool Smith | Damages Analysis |
| 110. | Brea Imperial, Inc. v. Titan International, Inc. Case No. 05CC06828 (2008)*241 | Orange County Superior Court, California | Alter Ego | Law Offices of Michael Bononi | Alter ego analysis |
| 109. | epicRealm Licensing, L.P. v. Various, Inc. Civil Action 5:07-cv-135 (Consolidated) (2008)*246 | U.S. District Court, Eastern District of Texas, Texarkana Divison | Patent Infringement | Baker Botts | Damages Analysis |
| 108. | Carter Bryant v. Mattel, Inc. Case No. CV 07-9049 SGL (RNBx) Consolidated with Case No. 04-9059 and Case No. 05-2727 (2008 and 2011)*240 | U.S. District Court, Central District of California | Copyright Infringement Trade Secret Misappropriation | Quinn Emanuel | Damages Analysis<br>Business Valuation |
| 107. | Deep Nines, Inc. v. McAfee, Inc. Civil Action No. 9:06-cv174-RC (2008)*244 | U.S. District Court, Eastern District of Texas, Lufkin Division | Patent Infringement | Fish & Richardson | Damages Analysis |
| 106. | North American Title Company v. Liberty Title Company Case No. C 06-00187 (2008)*238 | Contra Costa County Court, California | Theft of Trade Secret | Weintraub Genshlea Chediak<br>Jackson Lewis<br>Seyfarth Shaw | Damages Analysis |
| 105. | Global Sign, LLC, et al. v. Robert Merto, et al. Civil Action No. 05 CC 04088 (2008) | Orange County Superior Court, California | Unfair Competition | Bidna & Keys | Damages Analysis |
| 104. | Computer Acceleration Corporation v. Microsoft Corporation Case No. 9:06CV-140 (2007)*235 | U.S. District Court Eastern District of Texas Lufkin Division | Patent Infringement | McKool Smith | Damages Analysis |

***Underlined party was my client.

**EXPERT TESTIMONY—COURT** (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 103. | Cybergym Research LLC v. ICON Health & Fitness, Inc., Sears Roebuck & Co., Costco Wholesale Corp., The Sports Authority, Inc., & Dick's Sporting Goods, Inc. Case No. 2:05-cv-527-DF (2007)*230 | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Russo & Hale | Damages Analysis |
| 102. | Electromotive, Inc. v. Mercury Marine Case No. 1:06CV1139 (GBL/TRJ) (2007) | U.S. District Court, Eastern District of Virginia | Patent Infringement | Kaufman & Canoles | Damages Analysis |
| 101 | Broadcom Corporation v. Qualcomm Incorporated Case No. SACV05-467 JVS (RNBx) (2007) *224 | U.S. District Court Central District of California, Southern Division | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis & Irreparable Harm |
| 100. | In re 3dfx Interactive, Inc. and William A. Brandt, Jr., Trustee v. nVidia Corporation and nVidia Investment Company Case No. 02-55795 RLE (2007) *213 | U.S. Bankruptcy Court Northern District of California San Jose Division | Fraudulent Transfer | Buchalter Nemer | Business Valuation |
| 99. | MAN Aktiengesellschaft, et al. v. DaimlerChrysler AG, Freightliner LLC, et al. No. 0412-13050 (2006) | Multnomah Circuit Court, Oregon | Fraud | Ball Janik<br><br>Alston & Bird | Solvency analysis, Ordinary Course of Business, Reasonably Equivalent Value |
| 98. | In the Matter of the George L. Brichetto and Elizabeth M. Brichetto Living Trust Dated October 1, 1987, as Amended. Case No. 328789 (2006) | Stanislaus Superior Court, California | Breach of Fiduciary Duty | Damrell Nelson Schrimp Pallios Pacher & Silva | Trust Accounting and Damages Analysis |
| 97. | Christopher R. Harris v. San Jose Mercury News, Inc. Case No. C-04-05262 (CRB) (2006) *217 | U.S. District Court Northern District of California | Copyright Infringement | DLA Piper Rudnick Gray Cary; Sheppard Mullin | Damages Analysis |
| 96. | L.G. Philips LCD Co. Ltd. V. Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes Ltd., and ViewSonic Corporation. Civil Action No. 05-292 (JJF) (2006) *218 | U.S. District Court District of Delaware | Patent Infringement | Howrey LLP | Damages Analysis |
| 95. | PostX Corporation v. Secure Data In Motion, Inc., d/b/a Sigaba Case Nos. C02-04483 SI and C03-0521 SI (2006) *210 | U.S. District Court Northern District of California, San Francisco Division | Unfair Competition | Pillsbury Winthrop Shaw Pittman | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 94. | Stephen M. Waltrip, et al. v. Kevin B. Kimberlin, et al. Case No. 01AS04979 (2005) *211 | Sacramento Superior Court, California | Fraud and Breach of Fiduciary Relationship | Sedgwick Detert Moran & Arnold | Damages Analysis Alter Ego Analysis |
| 93. | Coleman (Parent) Holding v. Morgan Stanley Co., Inc. Case No. 2003 CA 005045 A1 (2005) *206 | Circuit Court of the Fifteenth Judicial Circuit Palm Beach County, Florida | Breach of Fiduciary Duty | Jenner & Block | Punitive Damages |
| 92. | Tarik Omari, et al. v. Kindred Healthcare Operating, Inc. et al. Case No. BC280010 (2005) | Los Angeles Superior Court, California | Fraud | Law Offices of Victor L. George | Punitive Damages |
| 91. | Coelho, et al. v. Coelho, et al. Case Nos. 591120-1, 595828-5, 588695-7, and 0537454-1 (2003) (2005) (2006) *176 | Fresno Superior Court, California | Breach of Fiduciary Duties | Damrell Nelson Schrimp Pallios Pacher & Silva Lange Richert & Patch Parish & Nelson | Damages Analysis |
| 90. | Billy Blanks, et al. v. Seyfarth Shaw LLP Case No. BC 308355 (2005) *205 | Los Angeles Superior Court, California | Legal Malpractice | Law Offices of James Rosen | Damages Analysis & Punitive Damages |
| 89. | Kalitta Air, LLC, as assignee of American International Airlines, Inc. v. Central Texas Airborne Systems, Inc. Case No. 96-2494CW & 97-0378CW (2005) ) *191 | U.S. District Court Northern District of California | Breach of Contract | Sedgwick, Detert, Moran & Arnold | Damages Analysis |
| 88. | The Coleman Company, Inc. v. Fleetwood Enterprises, Inc. & Fleetwood Folding Trailers, Inc. Civil Action No. 03 CV 2029 (2004) *203 | Eighteenth Judicial Court, Sedgewick County, Kansas | Trademark Infringement & Interference with Contract | Foulston Siefkin LLP | Damages Analysis |
| 87. | St. Clair Intellectual Property Licensing, Inc. v. Fuji Photo Film Co. Ltd, Fuji Photo File USA, Inc., and Fujifilm America, Inc. Case No. 03-241-JJF (2004) *199 | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 86. | St. Clair Intellectual Property Licensing, Inc. v. Canon Inc. and Canon USA, Inc. Case No. 03-241-JJF (2004) *198 | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 85. | Immersion Corporation v. Sony Computer Entertainment America, Inc., Sony Computer Entertainment, Inc. and Microsoft Corporation No. C 02-0710 CW (WDB) (2004) *189 | U.S. District Court Northern District of California Oakland Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 84. | Patrick Martin, Inc. and Patrick Walsh v. Ralph Clumeck & Associates, et al. Case No. 03CC06858 (2004) *196 | Orange County Superior Court, California | Breach of Fiduciary Duty | Nordman Cormany Hair & Compton | Damages Analysis |
| 83. | Protocol Services, Inc. v. Evolve Tele-Services, et al. Case No. 5:03 CV 0174 (2004) | U.S. District Court Western District of Michigan Southern Division | Theft of Trade Secret | Jenner & Block | Damages Analysis |
| 82. | Jerome Dahan and Michael Glasser. v. L'Koral and Peter Koral Case No. BC 286577 (2004) *193 | Los Angeles County Superior Court, California | Fraud and Breach of Fiduciary Duty | Browne & Woods Law Offices of Gary Freedman | Business Valuation |
| 81. | Engineered Products Co. v. Donaldson Company, Inc. Civ. No. 98-2106 MJM (2004) *132 | U.S. District Court, Northern District of Iowa | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 80. | Mallinckrodt, Inc., et al. v. Masimo Corporation Case No. CV 00-6506 MRP (2004) | U.S. District Court Central District of California | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 79. | Meridian Enterprises Corporation v. Carlson Marketing Group, Inc. Case No. 4:01CV1955CDP (2004) *185 | U.S. District Court Eastern District of Missouri, Eastern Division | Patent Infringement | Woodard, Emhardt, Moriarty & McNett | Damages Analysis |
| 78. | Glaxo Group Ltd. and Glaxo Wellcome, Inc. V. Ranbaxy Pharmaceuticals Inc. Civil Action No. 00-5172 MLC (2003) *179 | U.S. District Court District of New Jersey | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 77. | Lyrick Studios, Inc. v. Big Idea Productions, Inc. Civil Action 3-02 CV-0034 M (2003) *173 | U.S. District Court Northern District of Texas, Dallas Division | Breach of Contract | Baker Botts L.L.P. O'Melveny & Myers | Damages Analysis |
| 76. | LASVN#2, et. al. v. Van Ness and Sperry, et. al., Case No. BC 206251 (2003) *163 | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Krane & Smith | Damages Analysis & Punitive Damages |

***Underlined party was my client.

**EXPERT TESTIMONY—COURT** (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 75. | Carver et al. v. Audio Products International Corp. Case No. CV00-1477L (2003) *164 | U.S. District Court Western District of Washington | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 74. | Lowe's Home Centers, Inc. v. General Electric Company Case No. 4:98-CV 0028 (2002) *135 | U.S. District Court, Northern District of Georgia Rome Division | Environmental Contamination | Williams & Connolly | Damages Analysis |
| 73. | City of Hope National Medical Center v. Genentech, Inc. Case No. BC 215152 (2001) & (2002) *154 | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis & Punitive Damages |
| 72. | Perry v. Mellon Financial Corporation Case No. 997170 (2001) *157 | San Francisco Superior Court | Breach of Contract | Howard, Rice, Nemerovski, Canady, Robertson & Folk | Damages Analysis |
| 71. | True North Composites LLC v. Trinity Industries Case No. 99-783 (2001) | U.S. District Court District of Delaware | Breach of Contract | Baker Botts L.L.P. | Damages Analysis |
| 70. | MET-Rx Foundation for Health Enhancement, et al. v. MET-RX USA, INC., et al. Case No. 771551  (2000) *126 | Orange County Superior Court, California | Breach of Contract | Feldhake, August & Roquemore | Damages Analysis |
| 69. | Telecontrol Systems, Inc. v. Westec Security, Inc. Case No. BC 188264 (2000) *125 | Los Angeles Superior Court, California | Theft of Trade Secret | Howarth & Smith | Damages Analysis |
| 68. | Hameetman v. Schumann, et al., Case No. SC 049754 (2000) *124 | Los Angeles Superior Court, California | Breach of Contract | Hennigan, Bennett & Dorman | Damages Analysis |
| 67. | Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc. Case Nos. 95-03577 DLJ & 96-00942(DLJ) (1999) *121 | U.S. District Court Northern District of California, Oakland Division | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 66. | Trovan, Ltd., et al. v. Pfizer, Inc. Case No. 98-0094 (1999) *120 | U.S. District Court, Central District of California | Lanham Act Trademark Infringement | Levin & Hawes | Damages Analysis |
| 65. | Precor Incorporated v. Life Fitness Civil No. C94-1586C (1999) *117 | U.S. District Court Western District of Washington | Patent Infringement, Unfair Competition | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |
| 64. | Surgin Surgical Instrumentation, Inc. v. Truck Insurance Exchange Case No. 66 2216 (1999) *114 | Orange County Superior Court, California | Breach of Contract | Stradling Yocca Carlson & Rauth | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 63. | Airgas, Inc. v. Praxair, Inc. Case No. 115 (1999) | Common Pleas, First Judicial District of Pennsylvania | Breach of Contract | Cozen & O'Connor | Damages Analysis |
| 62. | Chesterfield Investments, et al. v. Stone Container Corporation Case No. BC 188858 (1999) *113 | Los Angeles Superior Court, California | Breach of Contract | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 61. | Lexecon, Inc. v. Milberg, Weiss, et al. No. 92C7768 (1999) | U.S. District Court, Northern District of Illinois | Abuse of Process | Jenner & Block | Damages Analysis |
| 60. | Saremi, et al. v. Atara, et al. Case No. 387467 (1999) *111 | San Mateo Superior Court, California | Breach of Contract | Nelson, Greenberg & Cohen | Damages Analysis |
| 59. | 9850 Meadowglen Properties v. A.G. Spanos Enterprises, Inc. Case No. BC 084216 (1998) and (1997) | Los Angeles Superior Court, California | Breach of Contract | Freeman & Brown | Damages analysis |
| 58. | Evanite Fiber Corp. v. Lauschaer Glaswerk GmbH, et al. Civil No. 2: 96-3525-18 (1998) *106 | U.S. District Court, District of South Carolina, Charleston Division | Theft of Trade Secret | Farleigh, Wada & Witt | Damages Analysis |
| 57. | Ayre, et al. V. Attwood Corp., et al. Case No. 96-5087-NP (1998) *103 | Circuit Court, County of Kent, Michigan | Wrongful Death | Kell & Lynch; Chaklos, Jungerheld, Hahn & Washburn | Damages Analysis |
| 56. | AMETRON v. Entin, et al. Case No. BC160521 (1998) *101 | Los Angeles Superior Court, California | Usurpation of Corporate Opportunity | Mahoney, Coppenrath, Jaffe & Pearson | Damages Analysis |
| 55. | Koutney v. Exxon Corporation Case No. CV 748293 (1997) | Santa Clara Superior Court, California | Unfair Competition | McClintock, Weston, Benshoof, Rochefort, Rubalvaca & MacCuish | Damages Analysis |
| 54. | Galaxy Networks, Inc. v. Kenan Systems Corp. Civil Action No. CV-95-5568 DDP (1997) *95 | U.S. District Court, Central District of California | Unjust Enrichment, Quantum Meruit | Irell & Manella | Damages Analysis |
| 53. | Potlatch Corporation v. Beloit Corporation Case No. CV 95-01992 (1997) *92 | 2nd Judicial District State of Idaho | Breach of Contract | Sacks Montgomery | Damages Analysis |
| 52. | The Samuel Goldwyn Co. v. MCEG Virgin Vision, Ltd. Case No. BC 016305 (1997) *91 | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 51. | Competitive Technology, Inc. v. AST Research, Inc. Case No. 74 82 37 (1996) *79 | Orange County Superior Court, California | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 50. | Medical Billing, Inc. v. Medical Management Services No. 1:94-CV-1567 (1996) *77 | U.S. District Court Northern District of Ohio, Eastern Division | Breach of Contract | Donovan, Leisure, Newton & Irvine | Damages Analysis |
| 49. | Cook v. Carousel Mall Case No. SCV 07595 (1996) | San Bernardino Superior Court, California | Breach of Fiduciary Duty | Howarth & Smith | Damages Analysis |
| 48. | Forti v. General Dynamics No. KC 016871/017393 (1996) *73 | Los Angeles Superior Court, California | Breach of Contract | Howarth & Smith | Business Valuation |
| 47. | Wilcox & Devineni v. Wilkes-Barre General Hospital Case No. 5418-C-1990 (1996) | Court of Common Pleas, Lucerne County, Pennsylvania | Breach of Contract | Nash & Company | Damages Analysis |
| 46. | TLB, Inc. v. Platinum Software Civil No. 95WY621 (1996) *72 | U.S. District Court of Colorado | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 45. | In re: AST Research Securities Litigation CV-94-1370 SVW (1995) *66 | U.S. District Court, Central District of California | Action Securities Case | Prongay & Mikolajcyk; Greenfield & Rifkin | Damages Analysis |
| 44. | TRW, Inc. v. Talley Industries CIV 94-0350-PHX-PGR (1995) *64 | U.S. District Court, District of Arizona | Breach of Contract | Donovan, Leisure, Newton & Irvin; Cohen & Cotton | Damages Analysis |
| 43. | Supra Corporation v. D.L. Horton Enterprises, Inc. BC 093085 (1995) *61 | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 42. | Portland 76 v. UNOCAL, et al. Case No. 92-1635 (1995) | U.S. District Court District of Oregon | Breach of Contract | Ball, Janik & Novack | Damages Analysis |
| 41. | Mortorff v. Scotti Bros. Entertainment No. BC 022503 (1995) | Los Angeles Superior Court, California | Breach of Contract | Law Offices of James P. Tierney | Damages Analysis |
| 40. | Mahne v. Crown Roll Leaf No. BC069435 (1994) *59 | Los Angeles Superior Court, California | Breach of Contract | Quinn, Emanuel, Urquhart & Oliver | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 39. | Castro v. Paine Webber, Inc. No. 1:94CV65 and No. 1:94CV256 (1994) | U.S. District Court, Eastern Division of Texas | Class Action Securities Case | Provost & Umphrey | Fairness of Settlement |
| 38. | Virgin Vision Ltd. v. The Samuel Goldwyn Co. No. BC-013701 (1994) *58 | Los Angeles Superior Court, California | Intellectual Property | Law Offices of James P. Tierney | Damages Analysis |
| 37. | Chaintool Company v. Workman, Nydegger & Jensen Civil No. 900903226CV (1994) *55 | Third Judicial Court, Salt Lake City, Utah | Patent Attorney Malpractice | Wilkins, Oritt & Headman | Damages Analysis |
| 36. | In re: Information Resources, Inc. Civil No. 89C 3712 (1994) *53 | U.S. District Court, Northern District of Illinois | Class Action Securities Case | Freeborn & Peters; Katten, Muchin & Zavis | Budgeting |
| 35. | Lawrence v. Equipment Denis (1993) | Circuit Court, Multnomah County, Oregon | Products Liability | Farleigh, Wada & Witt | Damages Analysis |
| 34. | Georgia Pacific v. Corrugated Partitions, Inc. (1993) | Orange County Superior Court, California | Breach of Contract | Howarth & Smith | Alter Ego Analysis |
| 33. | Grice Industries v. Ingman (1993) | Circuit Court, Lane County, Oregon | Patent Attorney Malpractice | Williams & Troutwine | Damages Analysis |
| 32. | Boly v. Boly (1992) | Circuit Court, Multnomah County, Oregon | Marital Dissolution | Gevurtz, Menashe, Hergert, Larson & Kurshner | Business Valuation |
| 31. | Rekdahl v. Owens Illinois (1992) | Los Angeles Superior Court, California | Products Liability | Howarth & Smith | Punitive Damages |
| 30. | E.J. Bartells Co. v. A.P. Green Industries (1992) *42 | King County Superior Court, Washington | Securities Laws Violations | Thompson & Mitchell | Damages Analysis |
| 29. | Glock v. Owens Illinois (1991) | Philadelphia County Court, Pennsylvania | Products Liability | Howarth & Smith | Punitive Damages |
| 28. | Ixsys v. Stratagene (1991) *38 | San Diego Superior Court, California | Intellectual Property | Pillsbury, Madison & Sutro | Damages Analysis |
| 27. | WSI v. Port of Portland (1991) | Circuit Court, Multnomah County, Oregon | Breach of Contract | Bogle & Gates | Damages Analysis |
| 26. | Torppe v. Saint Joseph Medical Center (1991) | Los Angeles, Superior Court, California | Medical Malpractice | Gibson, Dunn & Crutcher | Damages Analysis |

***Underlined party was my client.

**EXPERT TESTIMONY—COURT** (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|--------------------|----------------|
| 25. | Keike v. Owens Illinois (1991) | Circuit Court, Hawaii | Asbestos | Greeley, Walker & Kowen | Punitive Damages |
| 24. | Gresham v. Warren Tool (1991) | Circuit Court, Multnomah County, Oregon | Product Liability | Farleigh, Wada & Witt | Damages Analysis |
| 23. | Ingram v. Owens Illinois (1990) *36 | U.S. District Court, Oregon | Asbestos | Morgenstein & Jubelirer | Punitive Damages |
| 22. | First Interstate Bank of Washington v. AFC (1990) *33 | King County Superior Court, Washington | Lender Liability | Davis, Wright & Tremaine | Damages Analysis |
| 21. | Woodbridge Plaza v. Bank of Irvine (FDIC) (1990) *30 | Orange County Superior Court, California | Breach of Contract | Bidna & Keys | Real Estate Valuation |
| 20. | Hammersmith v. Taco Bell Corp. (1990) *27 | U.S. District Court, Oregon | Fraud | Skadden, Arps, Slate, Meagher & Flom | Damages Analysis |
| 19. | Pioneer Hi-Bred v. Holden Foundation Seeds (1989) *26 | U.S. District Court, Iowa | Theft of Trade Secret | Grefe & Sidney | Damages Analysis |
| 18. | In re: Desert High Foods, Inc. (1989) | U.S. Bankruptcy Court, Eastern District of California | Bankruptcy | Gendel, Raskoff, Shapiro & Quittner | Business Valuation |
| 17. | ASD, Ltd. v. Carolina Lanes, Inc. (1989) | Los Angeles Superior Court, California | Unlawful Detainer | Law Offices of Frank Whitehead | Revenue Analysis |
| 16. | Hideaway Productions v. Ampex Corp. (1989) *25 | Los Angeles Superior Court, California | Breach of Implied Warranties, Fraud | Rosenfeld, Meyer & Susman | Damages Analysis |
| 15. | Bernstein v. Delta Airlines (1989) *23 | U.S. District Court, Southern District of Florida | Wrongful Death | Steven Walker; Jenner & Block | Damages Analysis |
| 14. | Lippman v. Levy (1989) *22 | Los Angeles Superior Court, California | Breach of Contract, Fraud | Browne & Woods | Business Valuation |
| 13. | Kay Co. v. HCC Industries (1989) *20 | U.S. District Court, Southern District of Texas | Product Liability | Mayer, Day & Caldwell | Alter Ego Analysis |
| 12. | Challenge/Cook Brothers v. LCB Holdings (1989) | Federal District Court, Central District of California | Breach of Contract | Loeb & Loeb | Business Valuation |

***Underlined party was my client.

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 11. | Gursey v. Landon (1988) | Los Angeles Superior Court, California | Accounting Malpractice | Haight, Brown & Bonesteel | Professional Standards |
| 10. | Redacted v. Redacted (1988) *17 | Los Angeles Superior Court | Professional Negligence | Riordan & Mckenzie | Professional Negligence & Damages Analysis |
| 9. | George W. Gaulding, Jr. v. River Downs Investments Co. (1988) | U.S. Bankruptcy Court, Central District of California | Bankruptcy, Breach of Fiduciary Duty | Lobel, Winthrop & Broker | Investigatory Accounting |
| 8. | Egilsson v. Polarknit (1987) | Federal District Court, Central District of California | Antitrust | Shea & Gould | Damages Analysis |
| 7. | Newman v. Stutman, Treister & Glatt (1986) | Los Angeles Superior Court, California | Legal Malpractice | Irell & Manella | Damages Analysis |
| 6. | Stewart v. Stewart 1986) | Orange County Superior Court, California | Fraud to Set Aside Marital Dissolution Property Settlement | Hunt, Colaw & Roe, Inc. | Business Valuation |
| 5. | Prowizor v. City of Los Angeles (1986) | Los Angeles City Administrative Hearing, California | Wrongful Termination | Lowe & Marr | Damages Analysis |
| 4. | Asphalt Specialties, Inc. v. State of California (1986) | Riverside Superior Court, California | Breach of Contract | Legal Staff of California Department of Transportation | Damages Analysis |
| 3. | Cadillac Fairview/California, Inc. v. Atlantic Mutual Insurance Co. 1985) | Federal District Court, Northern District of California | Breach of Insurance Contract | Irell & Manella | Analysis of Reasonableness of Attorney Fees |
| 2. | Decorative Carpets v. Barkhordarian (1983 and 1988) *3 | San Francisco Superior Court, California | Constructive Eviction | Pillsbury, Madison & Sutro | Damages Analysis |
| 1. | Bernstein v. L.A. New Hospital (1983) | Los Angeles Superior Court, California | Breach of Contract | Gold, Herscher, Marks & Pepper | Damages Analysis |

***Underlined party was my client.

**EXPERT TESTIMONY—DEPOSITION** (\*\*If <u>Protective Order</u> in place)

| No. | Lawsuit\*\*\* | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 385. | <u>PDL BioPharma, Inc.</u> v. Eli Lilly and Company Case No. 1:23-cv-02289-RLY-MKK (2025)\*\* | U.S. District Court, Southern District of Indiana, Indianapolis Division | Breach of Contract | Orrick, Herrington & Sutcliffe LLP | Damages Analysis |
| 384. | US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation v. <u>Herring Networks, inc. d/b/a One America News Network, Charles Herring, Rogert Herring, Sr., Chanel Rion, and Christina Bobb</u> Case No. 1:21-cv-02130 (2025)\*\* | U.S. District Court, District of Columbia | Defamation | Jackson Walker LLP | Damages Analysis |
| 383. | <u>Koninklijke KPN N.V.</u> v. Cisco Systems, Inc. ICC Arbitration 28424/PDP (2025)\*\* | International Chamber of Commerce | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 382. | Herbert D. Dompe and Susan Dompe, Trustees of The Herbert D. Dompe and Roberta Susan Dompe 2017 Trust; and Stewart J. Dompe, Trustee of The Stewart J. Dompe 2013 Trust v. <u>Stewart & Jasper Orchards, Stewart & Jasper Marketing, Stewart & Jasper Processing, James L. Jasper, and Jason L. Jasper</u> Case No. CV-20-004626 (2023) | Superior Court of the State of California, County of Stanislaus | Involuntary Dissolution of Corporation and Breach of Contract | Rodarakis & Sousa, APC and William H. Parish, PC | Damages Analysis |
| 381. | <u>Ryan Hardin and Andrew Hill</u> v. Samsung Electronics Co., LTD and Samsung Electronics America, Inc. Case No. cv-290 (2022 and 2023)\*\* | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Winston & Strawn LLP | Damages Analysis |
| 380. | Energy Conversion Devices Liquidation Trust v. <u>Ovoyxy, Inc.</u> Tyler Lowrey, <u>Micron Technology, Inc., Ovoynyx Memory Technology, LLC,</u> and Intel Corporation Case No. 12-43166-TJT (2022)\*\* | United States Bankruptcy Court, Eastern District of Michigan, Southern Division | Breach of Contract, Tortious Interference with Contract, Fraudulent Conveyance | Winston & Strawn LLP | Valuation Analysis and Damages Analysis |
| 379. | <u>Horyong Co. Ltd</u> v. Premier Roofing Supply, Inc., Pacific Equipment & Supply, Inc., Chang Ho Ahn, and Young S. Ahn Case No. RG17877579 (2022) | Superior Court of California, County of Alameda | Breach of Contract, Unfair Business Practices, Fraud, Negligent Misrepresentation, Alter Ego | Buckhalter Nemer<br><br>Law Offices of Mark Choi | Alter Ego and Damages Analysis |

\*\*\*Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 378. | Koninklijke KPN N.V. v. Telefonaktiebo-laget LM Ericsson and Ericsson Inc. Case No. 2:21-cv-113 (2022)** | U.S. District Court, Eastern District of Texas | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 377. | Board of Trustees of the University of Arkansas v. The Travelers Indemnity Company Case No. 60-CV-20-4834 (2021) | In the Circuit Court of Pulaski County, Arkansas Sixth Division | Business Interruption | Jackson Walker | Damages Analysis |
| 376. | Red Hydrogen, LLC v. CloudMinds (Hong Kong) LTD JAMS REF NO. 1220062943 (2021) | JAMS | Breach of Contract | Weeks Nelson | Alter Ego and Damages Analysis |
| 375 | International Swimming League, Ltd. V. Fédération International De Natation Case No. 3:18-cv-7394-JSC (2021)** | U.S. District Court, Northern District of California | Antitrust and Unfair Competition | Farella Braun & Martell | Damages Analysis |
| 374. | Edwards Lifesciences Corporation and Edwards Lifesciences LLC v. Meril Life Sciences Pvt. Ltd., and Meril, Inc. Case No. 4-19-cv 06593-HSG (2021)** | U.S. District Court, Northern District of California, Oakland Division | Trade Secret and Unfair Competition | Stradling Yocca Carlson & Rauth and Knobbe Martens Olson & Bear | Damages Analysis |
| 373. | Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., and Huawei Digital Technologies (Chengdu) Co., Ltd. v. Verizon Communications, Inc., Cellco Partnership D/B/A Verizon Wireless, and Verizon Business Network Services, Inc. Civil Action No. 6:20-cv-00090 (2021)** | U.S. District Court, Western District of Texas | Patent Infringement | Fish & Richardson | Damages Analysis |
| 372. | TecSec, Inc. v. Oracle America, Inc. (F/K/A Sun Microsystems, Inc.) and Oracle Corporation Case No. 1:10-cv-00115-LO-TCB (2020 and 2023)** | U.S. District Court, Eastern District of Virginia | Patent Infringement | Hunton Andrews Kurth | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 371. | Veda Woodard, Teresa Rizzo-Marino, and Diane Morrison on behalf of themselves, all others similarly situated, and the general public v. Lee Labrada: Labrada Bodybuilding Nutrition, Inc.; Labrada Nutritional Systems, Inc., Dr. Mehmet C. Oz, M.D.; Entertainment Media Ventures, Inc. d/b/a Oz Media; ZoCo Productions, LLC; Harpo Productions, Inc.; Naturex, Inc.; and InterHealth Nutraceuticals, Inc. Case No. 5:16-cv-00189-JGB-SP (2020)** | U.S. District Court, Central District of California | Consumer Class Action | Jackson Walker | Damages Analysis |
| 370. | Thomas Allegra, Yesenia Ariza, Mariana Elise Emmert, Stuart Rogoff, Gracelynn Tenaglia, and Melisa Verrastro individually and on behalf of others similarly situated v. Luxottica Retail North America d/b/a LensCrafters Case No. 1:17-cv-05216-PKC-RLM (2019)** | U.S. District Court, Eastern District of New York | Consumer Class Action | Cohen Milstein | Damages Analysis |
| 369. | DealDash Oyj and DealDash Inc. v. ContextLogic, Inc. d/b/s Wish, Case No. 3:18-cv-02353-MMC (2019)** | U.S. District Court, Northern District of California | Trademark Infringement, Unfair Competition | Warren Lex | Damages Analysis |
| 368. | Cellular Communications Equipment LLC v. ZTE Corporation, ZTE (USA) Inc., ZTE Solutions, Inc.., et al. Civil Action No. 6:16-cv-00375-KNM (2018)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent infringement | Pillsbury Winthrop Shaw Pittman  LLP | Damages Analysis |
| 367. | Cellular Communications Equipment LLC v. HTC Corporation, HTC America, Inc., et al. Civil Action No. 6:16-cv-00363-KNM (2018)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent infringement | Pillsbury Winthrop Shaw Pittman LLP | Damages Analysis |
| 366. | Monster Energy Company v. Integrated Supply Network, LLC Civil Action No. 5:17-CV17-0548 CBM (RAOx) (2018)** | U.S. District Court, Central District of California | Trademark infringement | Standley LLP | Damages Analysis |
| 365. | TecSec, Inc. v. Adobe Systems, Inc. Case No. 1:10-cv-00115-LO-TCB (2018)** | U.S. District Court, Eastern District of Virginia | Patent infringement | Hunton Andrews Kurth LLP | Damages Analysis |

***Underlined party was my client.

**EXPERT TESTIMONY—DEPOSITION** (**If <u>Protective Order</u> in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|-------------------|----------------|
| 364. | Cellular Communications Equipment LLC v. <u>ZTE Corporation, ZTE (USA) Inc., ZTE Solutions, Inc</u>.., et al. Civil Action No. 6:16-cv-476 (2018)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent infringement | Pillsbury Winthrop Shaw Pittman LLP | Damages Analysis |
| 363. | Cellular Communications Equipment LLC v. <u>HTC Corporation, HTC America, Inc.,</u> et al. Civil Action No. 6:16-cv-475 (2018)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent infringement | Pillsbury Winthrop Shaw Pittman LLP | Damages Analysis |
| 362 | <u>Intellectual Ventures II LLC</u> v. FedEx Corp., Federal Express Corp., FedEx Ground Package Systems, Inc., FedEx Freight, Inc., FedEx Custom Critical Inc., FedEx Office and Print Services, Inc., and GENCO Distribution Systems, Inc. Civil Action No. 2:16-cv-980 (2018)** | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 361 | Vesta Corporation v. <u>Amdocs Management Limited and Amdocs, Inc.</u> Civil Action No. 3:14-cv-01142-HZ (2017)** | U.S. District Court, District of Oregon | Theft of trade Secrets, Breach of Contract | Katten Muchin Rosemann LLP<br><br>Stoll Berne | Damages Analysis |
| 360 | <u>Sound View Innovations, LLC</u> v. Facebook, Inc. Case No. 16-116-RGA (2017)** | U.S. District Court, District of Delaware | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 359. | Straight Path IP Group, Inc. V. <u>Cisco Systems, Inc</u>. Case No. 3:16-cv-03463-WA (2017)** | U.S. District Court, Northern District of California, San Francisco Division | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 358. | <u>Lotes Co., LTD.</u> v. Hon Hai Precision Industry Co., LTD. and Foxconn Electronics, Inc. Case No. 3:11-CV-01036-WHA (2017)* | U.S. District Court, Northern District of California, San Francisco Division | Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Patent Infringement | Sheppard Mullin Richter & Hampton | Damages Analysis |
| 357. | <u>Bladeroom Group Limited and BRIPCO (UK) Limited</u> v. Facebook, Inc., Emerson Electric Co., Emerson Network Power Solutions, Inc., and Liebert Corporation Case No. 5:15-cv-01370-EJD (2017)** | U.S. District Court, Northern District of California, San Jose Division | Theft of Trade Secrets | Farella Braun & Martell | Damages Analysis |
| 356. | <u>Waymo LLC</u> v. Uber Technologies, Inc.; Ottomotto LLC; and Otto Trucking LLC Civil Action No. 3:17-CV-00939-WHA (2017)** | U.S. District Court, Northern District of California, San Francisco Division | Theft of Trade Secrets | Quinn Emanuel | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 355. | Jibe Audio, LLC and Steven Lamar v. Pentagram Design, Inc., Hinrichs & Associates, Jimmy Iovine, Andre Young P/K/A Dr. Dre, Beats Electronics, LLC, Ammunition, LLC, and Robert Brunner Case No. BC533089 (2017)** | Los Angeles Superior Court, State of California | Breach of Contract, Breach of Fiduciary Duties, Intentional Interference with Contractual Relations. | Susman Godfrey | Damages Analysis |
| 354. | Intellectual Ventures II LLC v. JPMorgan Chase & Co., JPMorgan Chase Bank National Association, Chase Bank National Association, Chase Paymentech Solutions LLC and Paymentech LLC  Civil Action No. 13 CIV 3777 (AHK) (2017)** | U.S. District Court of New York | Patent Infringement | Feinberg Day Alberti & Thompson | Damages Analysis |
| 353. | Kenwood Investments No. 2, LLC v. Federated Indians of the Graton Rancheria AAA Case No. 01-15-005-6087, JAMS No. 1110019071 (2017) | American Arbitration Association – San Francisco | Breach of Contract | Winston & Strawn | Alter Ego Analysis |
| 352. | Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Symantec Corp. and Veritas Technologies LLC Case No. 13-cv-440 (LPS) (2016)** | U.S. District Court, District of Delaware | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 351. | Tatung Company LTD. v, Shu Tze Hsu, Shour-Por Houng, Chin-Ying Hsu, Howard Houng, ChiMei Trading Co., LTD, Rich Demander, Li Fu Investment Co., and Gregory Hu Case No. SACV13-01743 DOC (ANx) (2016) | U.S. District Court, Central District of California, Southern Diversion (Santa Ana) | Alter Ego | Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C. | Alter Ego Analysis |
| 350. | Fowler Packing Company, Inc. v. Berne H Evans, III, Sun Pacific Shippers L.P., Sun Pacific Marketing Cooperative, Inc., Evans AG GP, Inc., Paramount Citrus Association, and Maricopa Packers, L.P. Case No. 12DEDG01301 (2016)** | Superior Court of California, County of Fresno Civil Division | Breach of Contract, Promissory Estoppel, Fraud | Gibson Dunn | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 349. | ORIX USA Corporation v. Preston Hollow Capital, LLC  Civil Action No. 5:15-CV-00170 (2016)** | U.S. District Court, Eastern District of Texas, Texarkana Division | Unfair Competition, Lanham Act Claims, trademark and service mark infringement | Jackson Walker | Damages Analysis |
| 348. | Joyce L. Ielmini, et al. v. Angelo M. Ielmini et al. Case No. 677740 (2016) | Superior Court of California, County of Stanislaus | Breach of Fiduciary Duty | Damrell, Nelson, Schrimp, Pallios, Pacher & Silva | Damages Analysis |
| 347. | Masimo Corporation v. Philips Electronics North America Corporation and Philips Medizin Systeme Boblingen GMBH Civil Action No. 09-080 and 11-742-LPS-MPT (JJF)(2016)** | U.S. District Court, District of Delaware | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 346. | Teva Pharmaceuticals USA, Inc. and Mayne Pharma International PTY LTD v. Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc. Civil Action No. 13-2002 (GMS) (2016)** | U.S. District Court, District of Delaware | Patent Infringement | Calfee Halter & Griswold | Damages Analysis |
| 345. | Redacted v. Redacted (2016)** | Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution | Breach of contract, Breach, Tortious Interference with Prospective Economic Advantage | Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C. | Damages Analysis |
| 344. | CardiAQ Valve Technologies, Inc. v. Neovasc, Inc. and Neovasc Tiara, Inc., Case No. 1:14-CV-12405-NMG (2015)** | U.S. District Court, District of Massachusetts | Theft of Trade Secrets, Breach of Contract, Fraud, and deceptive trade practices | Knobbe Martens Olson & Bear | Damages Analysis |
| 343. | GO Computer, Inc. and S. Jerrold Kaplan v. Microsoft Corporation, Case No. CGC-05-442684 (2015)** | San Francisco Superior, California | Unfair Competition | Kilpatrick Townsend<br><br>Kellog, Huber, Hansen, Todd, Evans & Figel | Damages Analysis |
| 342. | Masimo Corp. and Masimo International SARL v. Shenzhen Mindray Bio-Medical Electronics Co., Ltd. Civil Action No. SACV12-02206 CJC (JPRx) (2015)** | U.S. District Court, Central District of California Southern Division | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 341. | FieldTurf USA, Inc. and FieldTurf Tarkett, Inc. v. AstroTurf LLC. Case No. 2: 10-CV-12492-SJM-MJG (2015)** | U.S. District Court, Eastern District of Michigan Southern Division | Patent Infringement Lanham Act | Bejin VanOphem Bieneman PLC | Damages Analysis |
| 340. | Wi-LAN USA, Inc. and Wi-LAN Inc. v. Telefonaktiebolaget LM Ericsson and Ericsson Inc. Case No. 1:12-cv-23569-DMM (2015)** | U.S. District Court, Southern District of Florida | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 339. | Emulex Corporation v. Renesas Electronics America Inc. No. 1100077501 (2015)** | JAMS, San Francisco, CA | Breach of Indemnity Agreement re Patent Infringement | Arnold & Porter | Damages Analysis |
| 338. | Adaptix, Inc. v. Alcatel-Lucent USA, Inc., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, and Sprint Spectrum Civil Actions No. 6:12-cv-0022, No. 6:13-cv-0049, and No. 6:13-cv-0050 (2014)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 337. | Eagle Harbor Holdings LLC and Mediustech LLC v. Ford Motor Company Case No. 3:11-cv-05502-BHS (2014)** | U.S. District Court, Western District of Washington | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 336. | Phillips 66 Company v. Atlantic Richfield Company, BP West Coast Products LLC, Tesoro Corporation, Tesoro Refining & Marketing Company LLC Case No. BC 518730 (2014)** | Los Angeles Superior Court, California | Breach of Contract Tortious Interference with Contract | Glynn & Finley, LLP | Damages Analysis |
| 335. | Anesta AG, Aptalis Pharmatech, Inc. and IVAX International GMBH v. Mylan Pharmaceuticals, Inc. and Mylan, Inc. Case No. 08-889-SLR (2014)** | U.S. District Court, District of Delaware | Patent Infringement | Wiley Rein, LLC | Damages Analysis |
| 334. | Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Capital One Financial Corporation, Capital One Bank (USA), National Association and Capital One, National Association Case No. 1:13-cv-740-AJT-TRJ (2014)** | U.S. District Court, Eastern District of Virginia | Patent Infringement | Feinberg Day | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 333. | Florida Atlantic University Research Corp., et al. v. TPV Technology Limited, et al.; Asus Computer International, et al.; and Acer Inc., et al. Case Numbers. 9:12-CV-80701-PAS, 9:12-CV-80697- PAS, and 9:12-CV-80694-PAS  (2014)** | U.S. District Court, Southern District of Florida | Patent Infringement | Hunton & Williams LLP | Damages Analysis |
| 332. | SanDisk Corporation v. Round Rock Research LLC Case No. 3:11-cv-05243-RS (2014)** | U.S District Court, Northern District of California | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 331. | Chiquita Fresh North America, L.L.C. v. Greene Transport Company and John Greene Logistics Company Case No. C-11-06683 DMR (2014) | U.S District Court, Northern District of California | Breach of Contract | Phillips Spallas & Angstadt LLP | Alter Ego |
| 330. | Bryan Michael Stow, et.al. v. Los Angeles Dodgers, LLC et. al. Case No. BC462127 (2014) | Los Angeles Superior Court, California | Negligence | Lewis Brisbois Bisgaard & Smith LLP | Alter Ego |
| 329. | SquareTrade, Inc. v. AmTrust North America, Inc. and AMT Warranty Corp. Ref. No. 74-195-Y-000341-13 (2013) | American Arbitration Association, San Francisco | Breach of Contract | Arnold & Porter LLP | Damages Analysis |
| 328. | Wi-LAN USA, INC. and Wi-LAN Inc. v. Toshiba Corporation; Toshiba America, Inc.; Toshiba America Electronic Components, Inc.; and Toshiba America Information Systems, Inc. Case No. 12-Civ-23744 (2013)** | U.S District Court, Southern District of Florida | Patent Infringement | Kilpatrick Townsend & Stockton LLP | Damages Analysis |
| 327. | Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Altera Corporation and Xilinx, Inc. Civil Action No. 10-1065-LPS (2013)** | U.S. District Court, District of Delaware | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 326. | Applied Medical Resources Corporation v. Tyco Healthcare Group LP d/b/a Covidien Civil Action No. SACV11-01406JVS (ANx) (2013)** | U.S. District Court, Central District of California | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If <u>Protective Order</u> in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|-------------------|----------------|
| 325. | <u>C-Cation Technologies, LLC</u> v. Comcast Corporation, Charter Communications, Inc., Cequel Communications, LLC d/b/a Suddenlink Communications, and Cable One, Inc. Civil Action No. 2:11-cv-30 (2013)** | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Kenyon & Kenyon | Damages Analysis |
| 324. | TracBeam v. <u>AT&T, Inc. and AT&T Mobility L.L.C.</u> Case No. 6:11-cv-96 (2013)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | Baker Botts | Damage Analysis |
| 323. | <u>Guzik Technical Enterprises, Inc.</u> v. Western Digital Corporation, et al. Case No.:11-cv-03786-PSG (2013)** | U.S District Court, Northern District of California | Patent Infringement, Theft of Trade Secrets, and Breach of Contract | Kilpatrick Townsend | Damages Analysis |
| 322. | <u>Intellectual Ventures I LLC</u> v. Symantec Corp. Civil Action No. 10-cv-1065-LPS (2013)** | U.S. District Court, District of Delaware | Patent Infringement | Susman Godfrey LLP | Damages Analysis |
| 321. | <u>Intellectual Ventures I LLC</u> v. Trend Micro Incorporated and Trend Micro, Inc. (USA) Civil Action No. 12-cv-1581-LPS (2013)** | U.S. District Court, District of Delaware | Patent Infringement | Susman Godfrey LLP | Damages Analysis |
| 320. | <u>Carl B. Collins and Farzin Davanloo</u> v. Nissan North America, Inc. and Nissan Motor Co., Ltd. Case No. 2:11-cv-00428-DF (2013)** | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Jackson Walker | Damages Analysis |
| 319. | <u>Language Line Services, Inc.</u> v. Language Services Associates, Inc., William Schwartrz, and Patrick Curtin Case No. CV 10-02605-JW (2013)** | U.S. District Court, Northern District of California | Theft of trade secrets | Murphy, Rosen, Meylan LLP  Holmes Weinberg PC | Value of trade secrets |
| 318. | <u>EasyWeb Innovations, LLC</u> v. Twitter, Inc. Civil Action No. 2:11-cv-4550 (JFB)(WDW) (2012)** | U.S. District Court, Eastern District of New York | Patent Infringement | Desmarais, LLP | Damages Analysis |
| 317. | In re Heller Ehrman LLP and Heller Ehrman LLP, Liquidating Debtor v. <u>Jones Day</u> Case No. 08-32514 DM (2012)** | U.S. Bankruptcy Court, Northern District of California, San Francisco Division | Bankruptcy | Jones Day | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 316. | XpertUniverse, Inc. v. Cisco Systems, Inc. Civil Action No. 09-157-RGA (2012)** | U.S. District Court, District of Delaware | Theft of Trade Secrets, Fraud, Conversion and Patent Infringement | Morgan Lewis & Bockius | Damages Analysis |
| 315. | Innovative Sonic Limited v. Research In Motion Ltd. And Research In Motion Corporation Civil Action No. 3:11-CV-706 (2012)** | U.S. District Court, Northern District of Texas | Patent Infringement | Cooley LLP | Damages Analysis |
| 314. | Boston Scientific Corp. et al. v. Mirowski Family Ventures, LLC Civil Action 1:11-cv-00736 (2012)** | U.S. District Court, Southern District of Indiana | Satisfaction of Royalty Obligation | Finnegan Henderson Farabow, Garrett & Dunner | Damages Analysis |
| 313. | Mee Industries, Inc. v. Wasserman Comden & Casselman, L.L.P., I Donald Weissman, David & McElyea, P.A., John McElyea and D. Paul McCaskill Case No. 2011-CA-004008-O (2012) | Ninth Judicial District, Orange County, Florida | Legal Malpractice | Hill Ward Henderson | Damages Analysis |
| 312. | TV Interactive Data Corporation v. Sony Corporation; Sony Computer Entertainment Inc.,; Sony Computer Entertainment America, Inc.; Sony Corporation of America; and Sony Electronics Co., Ltd  Case No. C 10-00475 PJH (2012)** | U.S. District Court, Northern District of California | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 311. | Masimo Corporation v. Philips Electronics North America Corporation and Philips Medizin Systeme Boblingen GMBH Civil Action No. 09-080 (JJF) (2012)** | U.S. District Court, District of Delaware | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 310. | Gen-Probe, Incorporated v. Becton, Dickinson and Company Case Action No. 09 CV 2319 and 10 CV 0602 BEN (NLS) (2012)** | U.S. District Court, Southern District of California | Patent Infringement | Latham & Watkins | Damages Analysis Commercial Success |
| 309. | Shelbyzyme LLC v. Genzyme Corporation Civil Action No. 09-768 (GMS) (2012)** | U.S. District Court, District of Delaware | Patent Infringement | Quinn Emanuel | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 308. | Apple, Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC Case No. 12-cv-00630-LHK (2012), (2013), (2015), (2016), and (2018)** | U.S. District Court, Northern District of California, San Jose Division | Patent Infringement | Quinn Emanuel | Irreparable Harm<br>Damages Analysis |
| 307. | Apple Inc. and Next Software, Inc. (f/k/a NeXT Computer v. Motorola, Inc., and Motorola Mobility, Inc. Case No. 1:11-CV-08540 (2012)** | U.S. District Court, Northern District of Illinois | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 306. | iHance, Inc. v. Eloqua Limited and Eloqua Corporation Case no. 2:11 CV 257 (MSD/TEM) (2012)** | U.S. District Court, Eastern District of Virginia | Patent Infringement | Williams & Connolly | Damages Analysis |
| 305. | CooperVision Inc. v. CIBA Vision A.G. Docket No. 50-122-T-00363-11 (2012)** | American Arbitration Association International Centre for Dispute Resolution | Breach of Patent License | Irell & Manella | Damages Analysis |
| 304. | WesternGeco L.L.C. v. ION Geophysical Corporation, Fugro-Geoteam, Inc., Fugro-Geoteam AS, Fugro Norway Marine Services AS, Fugro, Inc., Fugro (USA), Inc., and Fugro Geoservices, Inc. Civil Action No. 4:09-cv-1827 (2012)** | U.S. District Court, Southern District of Texas, Houston Division | Patent Infringement | Royston Raynor | Damages Analysis |
| 303. | St. Clair Intellectual Property Consultants, Inc. v. Microsoft, Intel, Dell, Toshiba, Lenovo, and Acer Civil Action No. 09-353-JJF, 09-704-JJF, and 10-282-LPS (2012)** | U.S. District Court, District of Delaware | Patent Infringement | Rader, Fishman and Grauer PLLC | Damages Analysis |
| 302. | Technology & Intellectual Property Strategies Group PC v. Basil P. Fthenakis and Cambridge CM, Inc. Case No. CV 11-02373 CRB (2012)** | U.S. District Court, Northern District of California, San Francisco Division | Copyright, Trademark, Conversion, Labor Code Violations & Breach of Contract | Law Office of William Milks | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 301. | Dollar Tree Stores, Inc. v. Toyoma Partners, LLC, Peter Pau d/b/a Sand Hill Property Company, Peter Pau, Sand Hill Property Management Company, Susanna Pau, and Capella-Mowry, LLC Case No. CV-10-0325 SI (2011)** | U.S. District Court, Northern District of California | Breach of Contract and Unfair Competition | Fox Rothschild LLP | Alter Ego and Damages Analysis |
| 300. | Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc. Civil Action No. 3:11-cv-00819-J-32-JRK (2011)** | U.S. District Court, Middle District of Florida, Jacksonville Division | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 299. | Datel Holdings, Ltd. And Datel Design & Development, Inc. v. Microsoft Corporation Case No. CV-09-5535 EDL (2011)** | U.S. District Court, Northern District of California, San Francisco Division | Theft of Trade Secret, Copyright, Trademark | Howard Rice Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 298. | Whirlpool Corporation and Maytag Corporation v. Sensata Technologies, Inc. and Texas Instruments, Inc. Case No. 09 L 1022 (2011) | Circuit Court of Cook County, Illinois | Product Liability | Greenberg Traurig | Damages Analysis |
| 297. | Redacted v. Redacted (2011)** | American Arbitration Association- New York | Breach of Patent Transfer Agreement | Schnader Harrison Segal and Lewis LLP | Damages Analysis |
| 296. | Apple, Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC Case No. 11-cv-01846-LHK (2011 2012, 2013, 2015, 2016, and 2018)** | U.S. District Court, Northern District of California, San Jose Division | Patent Infringement | Quinn Emanuel | Irreparable Harm & Damages Analysis |
| 295. | HTC Corporation et al. v. IPCom GmbH & Co., KG 1:08:cv-01897-RMC (2011)** | U.S. District Court, District of Columbia | Patent Infringement | Kilpatrick Townsend & Stockton | Damages Analysis |
| 294. | Microsoft Corporation v. Motorola Mobility, Inc. 1:10-CV-24063 Moreno (2011)** | U.S. District Court, Southern District of Florida | Patent Infringement | Ropes & Gray | Damages Analysis |
| 293. | ActiveVideo Networks, Inc. v. Verizon Communications, Inc. et al. Civil Action No. 2:10cv248 (2011)** | U.S. District Court, Eastern District of Virginia | Patent Infringement | Morgan Lewis & Bockius | Damages Analysis Commercial Success |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 292. | Starcrest Products of California v. Millennium Corporate Solutions and Lexington Insurance Company Case No. RIC 434493 (2011)** | Riverside County Superior Court, California | Breach of Contract | Law Office of David Gerber | Damages Analysis |
| 291. | Tamrarack Scientific Co., Inc. v. Ultratech, Inc. Case No. RIC450454 (2011)** | Riverside County Superior Court, California | Malicious prosecution | Thompson & Knight<br>Hale & Associates | Damages Analysis |
| 290. | Grimaud Farms of California, Inc. v. Whole Foods Market California and Whole Foods Market Services, Inc. Case No. CV030845 (2011) | San Joaquin County Superior Court, California | Breach of contract, Fraud, Tortious Interference with Contract. | Damrell, Nelson, Schrimp, Pallios, Pacher & Silva | Damages Analysis |
| 289. | Wellogix, Inc. v. Accenture, LLP Civil Action No. 3:08-CV-119 (2011)** | U.S. District Court, Southern District of Texas | Theft of Trade Secrets Interference with Contract | Laminack, Pirtle & Martines | Damages Analysis |
| 288. | TecSec, Inc. v. International Business Machines Corp. Case No. 1:10-cv-115-LMB/TCB (2010)** | U.S. District Court, Eastern District of Virginia | Patent Infringement | Hunton & Williams | Damages Analysis |
| 287. | St. Jude Medical, Inc. and St. Jude Medical Puerto Rico LLC v. Access Closure, Inc. Case No. 4:08-cv-04101-HFB (2010)** | U.S. District Court, Western District of Arkansas, Texarkana Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 286. | Lectec Corporation v. Chattem, Inc. and Prince of Peace Enterprises, Inc. Case No. 5:08-cv-00130-DF (2010)** | U.S. District Court, Eastern District of Texas, Texarkana Division | Patent Infringement | Rader, Fishman and Grauer | Damages Analysis |
| 285. | E.I. du Pont de Nemours and Company v. Kolon Industries, Inc. Civil Action No. 3:09cv58 (2010)** | U.S. District Court, Eastern District of Virginia | Theft of trade secrets | Paul Hastings | Damages Analysis |
| 284. | Volterra Semiconductor Corp. v. Primarion, Inc., Infineon Technologies AG, and Infineon Technologies North America Corp. Case No. CV 08-5129 JCS (2010 and 2013)** | U.S. District Court, Northern District of California | Patent Infringement | Farella Braun & Martel | Commercial Success and Price Erosion |
| 283. | Advanced Micro Devices, Inc. v. Samsung Electronics Co., et al. Civil Action No. CV-08-0986-SI (2010)** | U.S. District Court, Northern District of California, San Francisco Division | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 282. | IMRA America, Inc. v. IPG Photonics Corporation Civil Action No. 2:06-15139 (ADT)(MKM) (2010 and 2011)** | U.S. District Court, Eastern District of Michigan | Patent Infringement | Skadden Arps Slate Meagher & Flom | Damages Analysis<br>Commercial Success |
| 281. | Wellogix, Inc. v. BP America, Inc. Civil Action No. 4:09-CV-1511 (2010)** | U.S. District Court, Southern District of Texas, Houston Division | Theft of trade secrets, Breach of contract, Tortious Interference with Prospective Business Relations | Laminack, Pirtle & Martines | Damages Analysis |
| 280. | Thomas Weisel Partners LLC & Thomas Weisel International Private Limited v. BNP Paribas, BNP Paribas Securities (Asia) Limited, and Praveen Chakravarty Case No. 3:07-cv-06198 MHP  (2010)** | U.S. District Court, Northern District of California, San Francisco Division | Theft of Trade Secrets, Intentional Interference with Contract, Breach of Fiduciary Duty | Howard Rice Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 279. | St. Clair Intellectual Property Consultants, Inc. v. Palm, Inc., Kyocera Communications, Inc., and Kyocera Wireless Corporation Civil Action No. 06-404-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 278. | Power Integrations, Inc. v. Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and Systems General Corporation Civil Action No. 08-09-JFF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Orrick Herrington & Sutcliffe | Damages Analysis |
| 277. | St. Clair Intellectual Property Consultants, Inc. v. Research In Motion, LTD., Research In Motion Corp., and General Imaging Co. Civil Action No. 08-371-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 276. | Rosetta Stone Ltd. V. Google, Inc. Civil Action No. 1:09CV736 GBL/JFA (2010)** | U.S. District Court, Eastern District of Virginia | Trademark Infringement | Quinn Emanuel | Damages Analysis |
| 275. | St. Clair Intellectual Property Consultants, Inc v Fujifilm Holdings Corporation, Fujifilm Corporation, Fuji Photo Film Co., Ltd., Fuji Photo Film U.S.A., Inc., Fujifilm U.S.A., Inc., and Fujifilm America Inc. No. 08-373-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |

***Underlined party was my client.

**EXPERT TESTIMONY—DEPOSITION** (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 274. | St. Clair Intellectual Property Consultants, Inc. v. Matsushita Electric Industrial Co., Ltd. (now known as Panasonic Corporation), Matsushita Corporation of America (now known as Panasonic Corporation of North America), Victor Company of Japan, Ltd. And JVC Company of America No. 04-1436-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 273. | St. Clair Intellectual Property Consultants, Inc. v. Hewlett-Packard Company Civil Action No. 04-1436-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 272. | St. Clair Intellectual Property Consultants, Inc. v. Nokia Corporation and Nokia, Inc. Civil Action No. 04-1436-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 271. | St. Clair Intellectual Property Consultants, Inc. v. HTC Corporation, H.T.C. (B.V.I.) Corp., and HTC America, Inc. Civil Action No. 06-404-JJF-LPS (2010)** | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 270. | Marvell Semiconductor, Inc., Marvell Asia PTE., LTD., and Marvel International, LTD v. Commonwealth Scientific and Industrial Research Organisation Civil Action No. 6:07-CV-204 (LED) (2010)** | U.S. District Court, Eastern District of Texas | Patent Infringement | Townsend and Townsend and Crew | Damages Analysis |
| 269. | Codonics, Inc. v. DatCard Systems, Inc. Case No. 1:08CV1885 (2010)** | U.S. District Court, Northern District of Ohio | False advertising, False Patent Marking | Law offices of Michael W. Kinney | Damages Analysis |
| 268. | Function Media, L.L.C. v. Google, Inc. Case No. 2-007-CV-279 (2009)** | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Quinn Emanuel | Damages Analysis |
| 267. | Motorola, Inc. v. VTech Communications, Inc. & VTech Telecommunications, Ltd. Case No. 5:07-CV-00171-DF-CMC (2009)** | U.S. District Court, Eastern District of Texas, Texarkana Division | Patent Infringement | Ropes & Gray | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 266. | Sportsmark Trading, Ltd., v. Roger Cleveland Golf Company, Inc. Case No. 07CC12309 (2009)** | Orange County Superior Court, California | Breach of Contract | Krane & Smith | Damages Analysis |
| 265. | MLC Intellectual Property, LLC v. BTG International, Inc. Case No. 108CV109292 (2009)** | Santa Clara Superior Court, California | Breach of Contract | Korda Johnson & Wall | Damages Analysis |
| 264. | Aircraft Technical Publishers v. Avantext, Inc. Case No. C 07-4154 SBA (2009)** | U.S. District Court, Northern District of California, Oakland Division | Patent Infringement | Russo & Hale | Damages Analysis |
| 263. | ICON Health & Fitness, Inc. v. True Fitness Technology, Inc. Case No. 5:08-CV-00026 (2009)** | U.S. District Court, Eastern District of Texas, Texarkana Division | Patent Infringement | Workman Nydegger | Damages Analysis |
| 262. | Advanced Thermal Sciences Corporation v. Applied Materials, Inc. Case No. 8:07-CV-1384 (JVS) (2009)** | U.S. District Court, Central District of California, Southern Division | Breach of Contract, Fraud | Orrick Herrington & Sutcliffe | Damages Analysis |
| 261. | Versata Software, Inc., et al. v. SAP America, Inc. and SAP, AG  Civil Action No.: 2:07-cv-153-CE (2009 and 2011)** | U.S. District Court, Eastern District of Texas, Marshall Division | Patent Infringement | Howrey, LLP | Damages Analysis |
| 260. | Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors, USA, Inc. Case No. H-07-02392 (2009 and 2011)** | U.S. District Court, Southern District of Texas | Patent Infringement | Brinks Hofer Gilson & Lione Smyser Kaplan & Veselka | Damages Analysis |
| 259. | The Official Committee of Unsecured Creditors v. Asarco, LLC Case No. 05-21207 (2009)** | United States Bankruptcy Court, Southern District of Texas | Alter Ego | Baker  Botts | Alter Ego Analysis |
| 258. | St. Vincent Medical Center and Daughters of Charity Health System v. Hector C. Ramos, M.D., Hector C. Ramos, M.D., Inc., Richard R. Lopez, Jr., M.D., and Richard R. Lopez, Jr. M.D. Inc. Case No. 1220037027 (2009) | JAMS | Fraud, Negligence, Breach of Fiduciary Duty | Jones Day | Damages Analysis |

***Underlined party was my client.

### EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 257. | Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc., and Wake Forest University Health Sciences v. Blue Sky Medical Group, Inc., Smith & Nephew, Inc. Case No. SA08-CA-102 RF (2009 and 2010)** | U.S. District Court, Western District of Texas, San Antonio Division | Patent Infringement | Knobbe Martens Olson & Bear | Irreparable Harm |
| 256. | Accolade Systems LLC v. Citrix Systems, Inc. Civil Action No. 6-07CV-048 (2009)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | The Roth Firm | Damages Analysis |
| 255. | Medtronic, Inc., et al. v. AGA Medical Corporation Case No. C 07 00567 MMC (2009)** | U.S. District Court, Northern District of California, San Francisco Division | Patent Infringement | Alston Bird | Damages Analysis |
| 254. | I4i, LP and i4i, Inc. v. Microsoft Corporation Civil Action No. 6:07-CV-113-LED (2009)** | U.S. District Court, Eastern District of Texas, Tyler Division | Patent Infringement | McKool Smith | Damages Analysis |
| 253. | Finmeccanica S.p.A. and Ansaldo Ricerche S.p.A. v. General Motors Case No. 07-08222 SJO (PJWx) and No. 07-07537 SJO (PJWx) (2009)** | U.S. District Court, Central District of California, Western Division | Trade Secret | Kirkland & Ellis | Damages Analysis |
| 252. | Ahcom, Ltd. V. Hendrick Smedling and Lettie Smedling Case No. 3:07 CV 1139 SC (2008) | U.S. District Court, Northern District of California, San Francisco Division | Alter ego | Parish & Small | Alter ego Analysis |
| 251. | Grocery Outlet, Inc. v. American Stores Company, LLC, New Albertson's, Inc., Albertson's LLC, and Save Mart Supermarkets. Civil Action No. C06-2173 JSW (2008)** | U.S. District Court, Northern District of California, San Francisco Division | Trademark Infringement | Craigie, McCarthy & Clow<br><br>Pirkey Barber LLP | Damages Analysis |
| 250. | Convolve, Inc. and Massachusetts Institute of Technology v. Compaq Computer Corp. and Seagate Technology LLC Case No. 00 Civ. 5141 GBD (2008)** | U.S. District Court, Southern District of New York | Patent Infringement | Cadwalader, Wickersham and Taft | Damages Analysis |
| 249. | Intel Corporation and Dell, Inc. v. Commonwealth Scientific and Industrial Research Organisation Civil Action No. 6:06CV550 (2008)** | U.S. District Court, Eastern District of Texas | Patent Infringement | Townsend and Townsend and Crew | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 248. | Ainsworth Engineered (USA) LLC et al v. Advanced Manufacturing Corporation et al Case No. 1:07 CV 00909 CAB (2008)** | U.S. District Court, Northern District of Ohio | Product Liability | Dorsey & Whitney | Damages Analysis |
| 247. | Vanguard Products Group v. Merchandising Technologies, Inc. Case No. 07-1405-BR (2008)** | U.S. District Court, District of Oregon | Patent Infringement | Stoll Berne | Damages Analysis |
| 246. | epicRealm Licensing, L.P. v. Various, Inc. and Herbalife International, Inc. Civil Action 5:07-cv-135 (Consolidated) (2008)** | U.S. District Court, Eastern District of Texas | Patent Infringement | Baker Botts | Damages Analysis |
| 245. | Oracle Corporation v. epicRealm Licensing, L.P. Civil Action No. 06-cv-414 SLR (2008)** | U.S. District Court, District of Delaware | Patent Infringement | Jenner & Block | Damages Analysis |
| 244. | Deep Nines, Inc. v. McAfee, Inc. Civil Action No. 9:06-cv174-RC (2008)** | U.S. District Court, Eastern District of Texas | Patent Infringement | Fish & Richardson | Damages Analysis |
| 243. | Brent Williams, As Plan Trustee for Touch America Holdings, Inc. v. Robert P. Gannon, et al. Cause No. DV-2-201 (2008)** | Montana Second Judicial District Court, Silver Bow County | Breach of Fiduciary Duty | Winston & Strawn | Damages Analysis |
| 242. | Abbott Laboratories, Abbott Laboratories, Inc., and Abbott Pharmaceuticals PR Ltd. V. Sandoz, Inc. Civil Action No. 05 C 5373 (2008)** | U.S. District Court, Northern District of Illinois | Patent Infringement | Munger Tolles & Olson | Damages Analysis |
| 241. | Brea Imperial, Inc. v. Titan International, Inc. Case No. 05CC06828 (2008) | Orange County Superior Court, California | Alter Ego | Law Offices of Michael Bononi | Alter ego analysis |
| 240. | Carter Bryant v. Mattel, Inc. Case No. CV 07-9049 SGL (RNBx) Consolidated with Case No. 04-9059 and Case No. 05-2727 (2008, 2010, and 2011)** | U.S. District Court, Central District of California | Copyright Infringement Trade Secret Misappropriation, RICO | Quinn Emanuel | Damages Analysis |
| 239. | Comcast Cable Communication Corporation, LLC v. Finisar Corporation Case No. C-06-04206-WHA (2008)** | U.S. District Court, Northern District of California, San Francisco Division | Patent Infringement | Morgan & Finnegan | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 238. | North American Title Company v. Liberty Title Company Case No. C 06-00187 (2008)** | Contra Costa County Court, California | Theft of Trade Secret | Weintraub Genshlea Chediak Jackson Lewis Seyfarth Shaw | Damages Analysis |
| 237. | Eastman Kodak Company v. St. Clair Intellectual Property Licensing, Inc., et al. Case No. 1-05-CV-039164 (2008)** | Santa Clara County Court, California | Slander of Title | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 236. | Diana Gabriel, et al. v. Verizon Communications Inc., et al. Case No. 04 CC 00591 (2007) | Orange County Superior Court, California | Breach of Contract | Paul Hastings Janofsky & Walker | Damages Analysis |
| 235. | Computer Acceleration Corporation v. Microsoft Corporation Case No. 9:06CV-140 (2007)** | U.S. District Court Eastern District of Texas Lufkin Division | Patent Infringement | McKool Smith | Damages Analysis |
| 234. | Hewlett-Packard Company v. Factory Mutual Insurance Company Case No. 04-CV-02791 (2007)** | U.S. District Court Southern District of New York | Business Interruption | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 233. | Veritas Operating Corporation v. Microsoft Corporation Case No. 2:06-cv-00703-JCC (2007)** | U.S. District Court Western District of Washington at Seattle | Patent Infringement | Latham & Watkins | Damages Analysis |
| 232. | Polycom, Inc. and Polycom Israel, Ltd. v. Codian Ltd. And Codian, Inc. Case No. 2-05CV-520 DF (2007)** | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 231. | ISP.NET LLC d/b/a IQuest Internet v. Qwest Communications International, Inc. Case No. IP01-0480 C B/S (2007)** | U.S. District Court Southern District of Indiana Indianapolis Division | Trademark Infringement | Reed Smith Sachnoff & Weaver | Damages Analysis |
| 230. | Cybergym Research LLC v. ICON Health & Fitness, Inc., Sears Roebuck & Co., Costco Wholesale Corp., The Sports Authority, Inc., & Dick's Sporting Goods, Inc. Case No. 2:05-cv-527-DF (2007)** | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Russo & Hale | Damages Analysis |
| 229. | Timeline, Inc. v. Proclarity Corporation and Microsoft Corporation Case No. CV05-1013JLR (2007)** | U.S. District Court Western District of Washington at Seattle | Patent Infringement | Susman Godfrey L.L.P. | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 228. | David Gill, Post Confirmation Trustee for the Estate of Lyon & Lyon v. Orrick, Herrington & Sutcliffe, LLP, et al. Case No. LA-03-10365-VZ (2007)** | U.S. Bankruptcy Court Central District of California Los Angeles Division | Breach of Fiduciary Duty | Howard Rice Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 227. | Cardiac Pacemakers, Inc., Guidant Sales Corporation, Mirowski Family Ventures, LLC, and Anna Mirowski v. St. Jude Medical, Inc. and Pacesetter, Inc. Civil No. 1:96-CV-1718-DFH/TAB (2007)** | U.S. District Court, Southern District of Indiana, Indianapolis Division | Patent Infringement | Finnigan Henderson Farabow Barrett & Dunner LLP | Damages Analysis |
| 226. | Creative Concepts Software, Inc. and ITEK Services, Inc. v. MobileTech Solutions, Inc. Case No. SA CV 05-00670 DOC (MLGx) (2007)** | U.S. District Court Central District of California, Southern Division | Breach of contract | The Feldhake Law Firm | Damages Analysis |
| 225. | Semiconductor Energy Laboratory Co., Ltd. v. Chi MEI Optoelectronics Corp., International Display Technology Co., Ltd., International Display Technology USA, Inc., Westinghouse Digital Electronics, LLC and CTX Technology Corp. C04-4675 RS (2007)** | U.S. District Court Northern District of California | Patent Infringement | Jenner & Block | Damages Analysis |
| 224. | Broadcom Corporation v. Qualcomm Incorporated Case No. SACV05-467 JVS (RNBx (2007)** | U.S. District Court Central District of California, Southern Division | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis |
| 223. | Semiconductor Energy Laboratory Co., Ltd. v. Toppoly Optoelectronics Corp.; Samsung Techwin Co., Ltd.; Samsung Optoelectronics America, Inc.; Matsunichi Hi-Tech Ltd.; and Matsunichi Hi-Tech (USA), Inc. Case No. CV 04-4783 TJH (2006)** | U.S. District Court Central District of California | Patent Infringement | Jenner & Block | Damages Analysis |
| 222. | Qualcomm Incorporated v. Broadcom Corporation Case No. 05 CV 1662 B (BLM) (2006)** | U.S. District Court Southern District of California | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 221. | Qualcomm Incorporated v. Broadcom Corporation Case No. 05 CV 1958 (2006)** | U.S. District Court Southern District of California | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis |
| 220. | The Nautilus Group, Inc. v. ICON Health & Fitness, Inc., Case No. 02-1420 RSM (2006)** | U.S. District Court of Western District of Washington | Trademark Infringement | Jeffer, Mangels, Butler & Marmaro | Damages Analysis |
| 219. | Moss, et al. v. Veneco et al. Case No. 297083 (2006) | Los Angeles Superior Court, California | Mass Tort | Gallagher & Gallagher; Steptoe & Johnson | Alter Ego |
| 218. | L.G. Philips LCD Co. Ltd. V. Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes Ltd., and ViewSonic Corporation.  Civil Action No. 05-292 (JJF) (2006)** | U.S. District Court District of Delaware | Patent Infringement | Howrey LLP | Damages Analysis |
| 217. | Christopher R. Harris v. San Jose Mercury News, Inc. Case No. C-04-05262 (CRB) (2006) | U.S. District Court Northern District of California | Copyright Infringement | DLA Piper Rudnick Gray Cary | Damages Analysis |
| 216. | Dey, L.P. v. IVAX Pharmaceuticals, Inc. and Eon Labs, Inc. Case Nos. SACV 04-00079 CJC (FMOx) and SACV 04-00243 CJC (FMOx) (2006)** | U.S. District Court Central District of California Southern District | Patent Infringement | Hennigan Bennett & Dorman | Commercial Success |
| 215. | McKesson Information Solutions LLC  v. The Trizetto Group, Inc. Civil Action No. 04-1258 (2005)** | U.S. District Court Northern District of Delaware | Patent Infringement | Skadden Arps Slate Meagher & Flom | Damages Analysis |
| 214. | Advanced Neuromodulation Systems, Inc. v. Advanced Bionics Corporation Civil Action No. 4:04cv131 (Brown) (2005)** | U.S. District Court Eastern District of Texas Sherman Division | Patent Infringement | Baker Botts L.L.P. | Damages Analysis |
| 213 | Trustee in Bankruptcy for 3dfx v. NVIDIA Corp. Case No. 02-55795 JRG (2005) ** | U.S. Bankruptcy Court Northern District of California San Jose Division | Fraudulent Transfer | Buchalter Nemer Fields & Younger | Business Valuation |
| 212 | John R. Jamison v. Olin Corporation-Winchester Division; U.S. Repeating Arms Co., Inc.,; Browning; Browning Arms Co.; and G.I. Joe's  Case No. 3-03-01036-KI (2005)** | U.S. District Court District of Oregon | Patent Infringement | Stoll Stoll Berne Lokting & Shlachter | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 211. | Stephen M. Waltrip, et al. v. Kevin B. Kimberlin, et al. Case No. 01AS04979 (2005) | Sacramento Superior Court, California | Fraud and Breach of Fiduciary Relationship | Sedgwick Detert Moran & Arnold | Damages Analysis Alter Ego Analysis |
| 210. | PostX Corporation v. Secure Data In Motion, Inc., d/b/a Sigaba Case Nos. C02-04483 SI and C03-0521 SI (2005)** | U.S. District Court Northern District of California, San Francisco Division | Unfair Competition | Pillsbury Winthrop Shaw Pittman | Damages Analysis |
| 209. | Network Appliance, Inc. v. BlueArc Corporation Case No. C 03-05665 MHP (2005)** | U.S. District Court Northern District of California, San Francisco Division | Patent Infringement | Howrey Simon Arnold & White | Damages Analysis |
| 208. | Teri J. McDermott, CMI, et al. v. Advanstar Communications, Inc. Case No. 1:98 CV 515 (2005) | U.S. District Court Northern District of Ohio, Eastern Division | Copyright Infringement | Greenberg Traurig | Damages Analysis |
| 207. | Storage Technology Corporation v. Quantum Corporation Civil Action No. 03-M-0672 PAC (2005)** | U.S. District Court District of Colorado | Patent Infringement | Howrey Simon Arnold & White | Damages Analysis |
| 206. | Coleman (Parent) Holding v. Morgan Stanley Co., Inc. Case No. 2003 CA 005045 A1 (2005) | Circuit Court of the Fifteenth Judicial Circuit Palm Beach County, Florida | Breach of Fiduciary Duty | Jenner & Block | Business Valuation Punitive Damages Analysis |
| 205. | Billy Blanks, et al. v. Seyfarth Shaw LLP Case No. BC 308355 (2005) | Los Angeles Superior Court, California | Legal Malpractice | Law Offices of James Rosen | Damages Analysis |
| 204. | Intergraph Hardware Technologies Company v. Hewlett Packard Civil Action No. 2-02CV-312 TJW (2004)** | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 203. | The Coleman Company, Inc. v. Fleetwood Enterprises, Inc. & Fleetwood Folding Trailers, Inc. Civil Action No. 03 CV 2029 (2004)** | Eighteenth Judicial Court, Sedgewick County, Kansas | Trademark Infringement & Interference with Contract | Foulston Siefkin LLP | Damages Analysis & Alter Ego Analysis |
| 202. | LiveWorld, Inc. v. SocialNet, Inc., MatchNet PLC, et al. Case No. 1-01-CV799864 (2004)** | Santa Clara County Superior Court, California | Fraudulent Transfer | Bergeson, LLP | Alter Ego Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 201. | Comdisco, Inc. v. SocialNet, Inc. v. MatchNet, Inc., et al. Case No. CV 800 611 (2004)** | Santa Clara County Superior Court, California | Fraudulent Transfer | Winston & Strawn | Alter Ego Analysis |
| 200. | Everything For Love, Inc. v. Tender Loving Things, Inc., D/B/A The Happy Company Case No. CIV-02-2605-P:HX-EHC (2004)** | U.S. District Court District of Arizona | Patent Infringement | Law Offices of A. Peter Rausch | Damages Analysis |
| 199. | St. Clair Intellectual Property Licensing, Inc. v. Fuji Photo Film Co. Ltd, Fuji Photo File USA, Inc., and Fujifilm America, Inc. Case No. 03-241-JJF (2004) ** | U.S. District Court District of Arizona | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 198. | St. Clair Intellectual Property Licensing, Inc. v. Canon Inc. and Canon USA, Inc. Case No. 03-241-JJF (2004) ** | U.S. District Court District of Arizona | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 197. | Kathy Papale v. Pacific Bell Directory Company, Pacific Telesis, SBC Communications, et al. Case No. 2002055171 (2004) | Alameda County Superior Court, California | Sex and Age Discrimination | Pillsbury Winthrop | Damages Analysis |
| 196. | Patrick Martin, Inc. and Patrick Walsh v. Ralph Clumeck & Associates, et al. Case No. 03CC06858 (2004) | Orange County Superior Court, California | Breach of Fiduciary Duty | Nordman Cormany Hair & Compton | Damages Analysis |
| 195. | Marjorie Bright and Edward Bright v. The Bright Family Foundation, et al. Case No. 274513 (2004)** | Stanislaus County Superior Court, California | Breach of Fiduciary Duty | Damrell Nelson Schrimp Pallios Pacher & Silva | Damages Analysis |
| 194. | Misha Consulting Group, Inc. d/b/a eBusiness Design v. Source Medical Solutions, Inc. Case No. CO2 04908 JW (HRL) (2004) | U.S. District Court Northern District of California San Jose Division | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 193. | Jerome Dahan and Michael Glasser. v. L'Koral and Peter Koral Case No. BC 286577 (2004) | Los Angeles County Superior Court, California | Fraud and Breach of Fiduciary Duty | Browne & Woods Law Offices of Gary Freedman | Business Valuation |
| 192. | Neoris de México, S.A. de C.V., v. Ariba, Inc. Case No. C 02 1670 JSW (2004)** | U.S. District Court Northern District of California San Francisco Division | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |

***Underlined party was my client.

### EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 191. | Kalitta Air, LLC, as assignee of American International Airlines, Inc. v. Central Texas Airborne Systems, Inc. Case No. 96-2494CW & 97-0378CW (2004) | U.S. District Court Northern District of California | Breach of Contract | Sedgwick, Detert, Moran & Arnold | Damages Analysis |
| 190. | TV Interactive Corp. v. Microsoft Corp. Case No. 02 C 02385 (SBA) (2004)** | U.S. District Court Northern District of California Oakland Division | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 189. | Immersion Corporation v. Sony Computer Entertainment America, Inc., Sony Computer Entertainment, Inc. and Microsoft Corporation No. C 02-0710 CW (WDB) (2004) ** | U.S. District Court Northern District of California Oakland Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 188. | Kelly-Moore Paint Company v. Union Carbide Corporation No. 19785-BH02 (2004) ** | District Court of Brazoria County Texas 23rd Judicial District | Products Liability | Weil Gotshal & Manges | Business Valuation |
| 187. | Kaiser Aerospace Electronics v. Teledyne Industries, et al. Case No. 95-05288 CA 15 (2003) and (2005)** | 11th Circuit Court Miami-Dade County Florida | Breach of Contract | Weil Gotshal & Manges | Damages Analysis |
| 186. | The Profit Recovery Group, Inc. v. Neil Loder & Associates, et al. Case No CV 01-6200 AN (2003)** | U.S. District Court Central District of California, Western Division | Trademark & Theft of Trade Secret | Knobbe Martens Olson & Bear | Damages Analysis |
| 185. | Meridian Enterprises Corporation v. Carlson Marketing Group, Inc. Case No. 4:01CV1955CDP (2003)** | U.S. District Court Eastern District of Missouri, Eastern Division | Patent Infringement | Woodard, Emhardt, Moriarty & McNett | Damages Analysis |
| 184. | Hauselmann v. Hauselmann Case No. 307662 (2003) | Stanislaus County Superior Court, California | Breach of Contract | Damrell Nelson Schrimp Pallios Pacher & Silva | Business Valuation |
| 183. | Bell & Associates, Inc. v. Fidelity National Information Solutions, Inc. & Vista Information Solutions, Inc. Case No. 02CC02336 (2003) | Orange County Superior Court, California | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 182. | Winn Incorporated & Ben Huang v. Eaton Corporation.  Case No: CV03-1568-SJO (2003)** | U.S. District Court Central District of California Western Division | Patent Infringement | Knobbe Martens Olson & Bear Ropers Majeski Kohn & Bentley | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 181. | Semiconductor Energy Laboratory Co., Ltd. V. Acer Inc., Acer America Corp., and AU Optronics Corp.  Case No. C 02-02800 WHA (2003)** | U.S. District Court Northern District of California San Francisco Division | Patent Infringement | Jenner & Block | Damages Analysis |
| 180. | Cambrian Consultants, Inc. et al. v. Stuart Lubitz & Hogan & Hartson LLP Case No. BC 271707 (2003) | Los Angeles Superior Court, California | Patent Attorney Malpractice | Alschuler Grossman Stein & Kahan Quinn Emanuel Urquhart Oliver & Hedges Gibson Dunn & Crutcher | Damages Analysis |
| 179. | Glaxo Group Ltd. and Glaxo Wellcome, Inc. V. Ranbaxy Pharmaceuticals Inc. Civil Action No. 00-5172 MLC (2003) ** | U.S. District Court District of New Jersey | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 178. | Deltakor Investments, Inc. v. Carl Karcher, et al.  Case No. 01-CC13626 (2003) | Orange County Superior Court, California | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 177. | Fonovisa, Inc. v. MP3.com, Inc. Case No. 02 CV 8614 JSR (2003)**; Fonomusic, Inc. v. MP3.com, Inc. Case No. 02 CV 8617 JSR (2003)**; HMS Distributors, Inc. et al. v. MP3.com, Inc. Case No. 02 CV 8616 JSR (2003)**; Musical Productions, Inc. et al. v. MP3.com, Inc. Case No. 02 CV 8618 JSR (2003)** | U.S. District Court Southern District of New York | Copyright Infringement | Quinn Emanuel Urquhart Oliver & Hedges | Damages Analysis |
| 176. | Coelho, et al. v. Coelho, et al. Case Nos. 591120-1, 595828-5, 588695-7, and 0537454-1 (2003) (2005) | Fresno Superior Court, California | Breach of Fiduciary Duties | Damrell Nelson Schrimp Pallios Pacher & Silva Lange Richert & Patch Parish & Nelson | Damages Analysis |
| 175. | BCE Emergis, Inc. v. Ariba, Inc. Civil Action No. C01-21221 PVT (2003) ** | U.S. District Court Northern District of California, San Jose Division | Breach of Contract | Howard Rice Nemerovski Canady Falk & Rabkin | Damages Analysis |
| 174. | Bob Dylan, Billie Joel, James Taylor, et al. v. MP3.com, Inc. Case No. 02 CV 8006 (JSR) (2003) ** | U.S. District Court Southern District of New York | Copyright Infringement | Quinn Emanuel Urquhart Oliver & Hedges | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 173. | Lyrick Studios, Inc. v. Big Idea Productions, Inc. Civil Action 3-02 CV-0034 M (2002)** | U.S. District Court Northern District of Texas, Dallas Division | Breach of Contract | Baker & Botts O'Melveny & Myers | Damages Analysis |
| 172. | Robert Carver and Diana Carver v. Velodyne Acoustics, Inc. Civil Action No. C00-1194L (2002)** | U.S. District Court Western District of Washington | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 171. | Bayshore Ford Truck Sales, Inc. et al. v. Ford Motor Company Civil Action No. 99 CV 741 (JCL) 2002 | U.S. District Court District of New Jersey | Breach of Contract | Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 170. | Feltheimer v. Sony Corporation of America, et al. Case No. BC-244836 (2002) | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |
| 169. | Booneville Convalescent Center, Inc. v. Cloverleaf Healthcare Services, Inc., et al. Cause No. 32D01-0204-CC-38 (2002) | Superior Court of Hendricks, County, Indiana | Breach of Contract | Leeuw & Doyle | Alter Ego and Damages Analysis |
| 168. | Superior National Insurance Group v. Foundation Health Corporation, et al. Case No. 02 CV 5155 (2002) (2003) | U.S. District Court Central District of California, Western Division | Fraud | Skadden, Arps, Slate Meagher & Flom | Business Valuation and Damages Analysis |
| 167. | United States of America ex rel. William Gilliam v. General Dynamics Corporation Case No. 2:01-3023-18 (2002) | U.S. District Court District of South Carolina, Charleston Division | Qui Tam | Jenner & Block | Damages Analysis |
| 166. | Novartis Consumer Health, Inc. v. Elan Transdermal Technologies, Inc. Case No. 01-1120-CIV-MOORE (2002)** | U.S. District Court Southern District of Florida, Miami Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 165. | 2learn2.com v. San Diego State University, College of Extended Studies, et. Al., Case No. 80 Y 181 00138 01 VMD (2002)** | American Arbitration Association | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 164. | Carver et al. v. Audio Products International Corp. Case No. CV00-1477L (2002)** | U.S. District Court Western District of Washington | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 163. | LASVN#2, et. al. v. Van Ness and Sperry, et. al., Case No. BC 206251 (2002 and 2003) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Krane & Smith | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If <u>Protective Order</u> in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 162. | Cyberspace Headquarters, LLC v. <u>MacMillan USA, Inc.,</u> Case No. 00 CV 9764 CBM (JWJx) (2001)** | U.S. District Court Central District of California | Lanham Act | Mahoney Coppenrath Jaffe & Pearson | Damages Analysis |
| 161. | <u>Tri Valley Growers</u> v. Oracle Corporation (2001) | San Francisco Superior Court | Breach of Contract | Dorsey & Whitney | Damages Analysis |
| 160. | PowerAgent, Inc. v. <u>Electronic Data Systems Corporation</u> No. 71 Y 117 00262 00 (2001) | American Arbitration Association | Breach of Fiduciary Duty | Baker & Botts Townsend and Townsend and Crew | Damages Analysis Due Diligence |
| 159. | <u>Idea Man</u> v. Silver & Freedman, Case No. BC235669 (2001) | Los Angeles Superior Court, California | Legal Malpractice | Krane & Smith | Damages Analysis |
| 158. | <u>Intergraph Corporation</u> v. Intel Corporation, CIV 97-N-3023-NE (2001)** | U.S. District Court Northern District of Alabama | Patent Infringement | Townsend and Townsend and Crew | Damages Analysis |
| 157. | <u>Perry</u> v. Mellon Financial Corporation Case No. 997170 (2001) | San Francisco Superior Court | Breach of Contract | Howard, Rice, Nemerovski, Canady, Robertson & Folk | Damages Analysis |
| 156. | <u>Berclain America Latina, S.A., et al.</u> v. Baan Company, et al. Case No. 403080 (2001)** | San Mateo Superior Court, California | Intentional Interference with Contract | Townsend and Townsend and Crew | Damages Analysis |
| 155. | <u>Modesto City Schools, Stockton Unified School District.</u> V. Riso Kagaku Corporation CIV S-99-2214 FCD/GGH (2001)** | U.S. District Court Eastern District of California | Antitrust | Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 154. | <u>City of Hope National Medical Center</u> v. Genentech, Inc. Case No. BC 215152 (2001) (2002)** | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |
| 153. | Zomba v. <u>MP3.com</u>  Case Nos. 00 CIV 6831 and 6833 (2001)** | U.S. District Court Southern District of New York | Copyright Infringement | Orrick Herrington & Sutcliffe | Damages Analysis |
| 152. | Marconi Communications, Inc. v. <u>Vidar-SMS Co.</u> Civil No. CV-1293-L (2001)** | U.D. District Court Northern District of Texas | Theft of Trade Secret Breach of Indemnity Agreement | Munger Tolles & Olson | Damages Analysis |
| 151. | In re: BankAmerica Corp. Securities Litigation MDL No. 1264 (2001)** | U.S. District Court Eastern District of Missouri | Class Action Securities Litigation | Green Schaaf & Jacobson | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|-------------------|----------------|
| 150. | Clayton Industries v. SPX Corporation Case No. 72-18166200-SMY (2001) | American Arbitration Association | Breach of Contract | Jenner & Block | Damages Analysis |
| 149. | Electro Scientific Industries, Inc. v. Dynamic Details, Inc. and GSI Lumonics, Inc. Case No. SACV00-272 AH (2001) | U.S. District Court Central District of California Southern Division | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 148. | Farallon Capital Partners, L.P. v. Gleacher & Co. Inc. Case No. BC 215260 (2001) | Los Angeles Superior Court, California | Misrepresentation | Hennigan Bennet & Dorman | Alter Ego Analysis |
| 147. | Flying J Inc. et al. v. Comdata Network, Inc. and Trendar Corporation  Civil No. 1:96CV0066K (2001)** | U.S. District Court District of Utah Northern Division | Antitrust | Bendinger Crockett Peterson & Casey Stokes Bartholomew Evans & Petree | Damages Analysis |
| 146. | Process Specialties, Inc. v. Sematech, Inc. Case No.: CIV-S-00-414 (2001 and 2002)** | U.S. District Court Eastern District of California | Antitrust | Herum, Crabtree, Brown, Dwyer, Zolezzi & Terpstra | Damages Analysis |
| 145. | Re/Max of California & Hawaii v. Robert Lesh, et al. No. BC186234 (2001) | Los Angeles Superior Court, California | Breach of Contract | Lewis, D'Amato, Brisbois & Bisgaard Murtaugh Miller Meyer & Nelson | Damages Analysis |
| 144. | True Fitness Technology, Inc. v. Precor Incorporated Case No. 4:99 CV1306-DJS (2001)** | U.S. District Court, Eastern District of Missouri | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 143. | TeeVee Toons, Inc., et al v. MP3.com, Inc. Case No. 00 CIV. 3951 (JSR) (2000)** | U.S. District Court, Southern District of New York | Copyright Infringement | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 142. | Marketel v. priceline.com, Inc. Case No. C-99-0161 CAL (2000)** | U.S. District Court, Northern District of California | Theft of Trade Secret | Skadden, Arps, Slate, Meagher & Flom | Damages Analysis |
| 141. | Venture Industries Corporation, et al. v. Masco Tech, et al. No. 99-07219-CK (2000) | Circuit Court For The County of Kent, Michigan | Breach of Contract | Jenner & Block | Damages Analysis |
| 140. | Perry v. Miller Wagner & Co.  Case No. CV 98-11591 (2000) | Superior Court, State of Arizona, County of Maricopa | Professional Malpractice | Mower, Koeller, Nebeker, Carlson & Haluck | Standard of Care and Damages Analysis |
| 139. | Lussier Subaru, et al. v. Subaru of New England, Inc., et al  Case No. C-99-109-B (2000) ** | U.S. District Court, District of New Hampshire | Class Action | Wiggin & Nourie Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 138. | Optical Solutions, Inc. v. Michael S. Hawes and Associates  Case No. 99AS05264 (2000) | Sacramento Superior Court, California | Professional Malpractice | Law Offices of Richard H. Hart | Damages Analysis |
| 137. | St Luke's Hospital v. California Pacific Medical Center No. 300518 (2000)** | San Francisco Superior Court, California | Unfair Competition Antitrust | Townsend and Townsend and Crew | Damages Analysis |
| 136. | Pactiv Corporation v. S.C. Johnson, Inc. Case No. 98C-2679 (2000)** | U.S. District Court, Northern District of Illinois | Patent Infringement | Jenner & Block | Damages Analysis |
| 135. | Lowe's Home Centers, Inc. v. General Electric Company Case No. 4:98-CV 0028 (2000) & (2001) ** | U.S. District Court, Northern District of Georgia Rome Division | Environmental Contamination | Williams &Connolly | Damages Analysis |
| 134. | MicroGuild, Inc. v. Netscape Communications Corporation No. CV774054 (2000) ** | Santa Clara Superior Court, California | Fraud | Pillsbury, Madison & Sutro | Damages Analysis |
| 133. | Rush Hour Music, L.L.C. v. Magix Entertainment Corp. Case No. 2:99cv1003 (2000) ** | U.S. District Court, Eastern District of Virginia Norfolk Division | Patent Infringement | Fellers, Snider, Blankenship, Bailey & Tippens | Damages Analysis |
| 132. | Engineered Products Co. v. Donaldson Company, Inc. Civ. No. 98-2106 MJM (2000) ** | U.S. District Court, Northern District of Iowa | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 131. | Guzik Technical Enterprises v. KMY Instruments, Inc. Case No. CV762875 (2000) ** | Santa Clara Superior Court, California | Theft of Trade Secret | Gray, Cary, Ware & Friedenrich | Damages Analysis |
| 130. | Merchandise Mart Owners, LLC v. Metropolitan Life Insurance, Co. Case No. 98 CH 3566 (2000) ** | Circuit Court of Cook County, Illinois | Breach of Contract | Jenner & Block | Damages Analysis |
| 129. | Winkler Forming, Inc., PMC, Inc. v. Lewis Anten Case No. BC 194 364 (2000) | Los Angeles Superior Court, California | Patent Legal Malpractice | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 128. | Ardent Software, Inc. v. Pacific Unidata, Inc. (2000) | CPR Arbitration | Breach of Contract | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |
| 127. | Topanga and Victory Partners, L.P., et al. v. Jones, et al. Case No. LC 038853 (2000) | Los Angeles Superior Court, California | Breach of Contract | Hamburg, Hanover, Edward & Martin | Alter Ego Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If <u>Protective Order</u> in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 126. | <u>MET-Rx Foundation for Health Enhancement, et al.</u> v. MET-RX USA, INC., et al. Case No. 771551 (2000) | Orange County Superior Court, California | Breach of Contract | Feldhake, August & Roquemore | Damages Analysis |
| 125. | Telecontrol Systems, Inc. v. <u>Westec Security, Inc.</u> Case No. BC 188264 (2000) | Los Angeles Superior Court, California | Theft of Trade Secret | Howarth & Smith | Damages Analysis |
| 124. | <u>Hameetman</u> v. Schumann, et al., Case No. SC 049754 (2000) | Los Angeles Superior Court, California | Breach of Contract | Hennigan, Bennett & Dorman | Damages Analysis |
| 123. | Placerita Oil Company, Inc. v. <u>Berry Oil Trading & Transportation Co.,</u> et al. Case No. PC 017079 Z (2000) ** | Los Angeles Superior Court, California | Breach of Contract | Norman, Cormany, Hair & Compton | Damages Analysis |
| 122. | GATX/Air log Company, and GATX Capital v. Evergreen, <u>Ellsinore</u>, et al. Civil Action No. C 96-2494 WHO (1999) (2000) ** | U.S. District Court, Northern District of California | Breach of Contract | Murphy, Sheehan, Julian & Rogers | Alter Ego Analysis |
| 121. | Advanced Cardiovascular Systems, Inc. v. <u>Medtronic, Inc.</u> Case Nos. 95-03577 DLJ & 96-00942(DLJ) (1999) | U.S. District Court Northern District of California, Oakland Division | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 120. | <u>Trovan, Ltd,</u> et al. v. Pfizer, Inc., Case No. 98-0094 (1999) | U.S. District Court, Central District of California | Lanham Act Trademark Infringement | Levin & Hawes | Damages Analysis |
| 119. | Norfolk Southern Railroad v. <u>Flexivan & Dole</u> Case No. 99 Civ. 055 WHP HBP (1999) | U.S. District Court, Southern District of New York | Breach of Contract | O'Melveny & Myers | Damages Analysis |
| 118. | <u>Bitner,</u> et al., v. Bayshore, et al. Case No. 771246 (1999) | Orange County Superior Court, California | Fraud, Breach of Fiduciary Duty | Law Offices of Jay Seltzer | Damages Analysis |
| 117. | <u>Precor Incorporated</u> v. Life Fitness Civil No. C94-1586C (1999) | U.S. District Court Western District of Washington | Patent Infringement, Unfair Competition | Christensen, O'Connor, Johnson, Kindness | Damages Analysis |
| 116. | Salant v. <u>Spensley, Horn, Jubas & Lubitz</u> Case No. SC033055 (1999) | Los Angeles Superior Court, California | Patent Legal Malpractice | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 115. | Susman v. <u>GTE Information Services, Inc.</u> Case No. 97-06677 (1999) ** | 44th Judicial District, Dallas County, Texas | Breach of Contract | Baker & Botts | Business Valuation |

***Underlined party was my client.

### EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 114. | Surgin Surgical Instrumentation, Inc. v. Truck Insurance Exchange Case No. 66 2216 (1999) | Orange County Superior Court, California | Breach of Contract | Stradling Yocca Carlson & Rauth | Damages Analysis |
| 113. | Chesterfield Investments, et al. v. Stone Container Corporation Case No. BC 188858 (1999) | Los Angeles Superior Court, California | Breach of Contract | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 112. | Imatec, Ltd, et al. v. Apple Computer, Inc. Civil Action No. 98 CV 1058(JGK) (1999) ** | U.S. District Court, Northern District of California | Patent Infringement | Fenwick & West | Damages Analysis |
| 111. | Saremi, et al. v. Atara, et al. Case No. 387467 (1999) | San Mateo Superior Court, California | Breach of Contract | Nelson, Greenberg & Cohen | Damages Analysis |
| 110. | ProCom Marketing v. Prestolite Wire Corp. Case No. C-96-20978 JF PVT (1998) ** | U.S District Court, Northern District of California | Theft of Trade Secret | Morrison & Forester | Damages Analysis |
| 109. | Irvine Ranch Water District v. Merrill Lynch & Co. Case No. 96-8932 (1998) | U.S. District Court, Central District of California | Intentional Misrepresentation | Irell & Manella | Damages Analysis |
| 108. | Zemco Manufacturing, Inc. v. Navistar Int'l Transportation Corp. Case No. 1:97CV0260 (1998) | U.S. District Court, Northern District of Indiana | Breach of Contract | Leeuw, Popper, Bee man & Doyle; Swift & Finlay son | Damages Analysis |
| 107. | Orlaford Limited, et al. v. BBC International, et al. Civil Action No. 97-C-0540-S (1998) | U.S. District Court Western District of Wisconsin | Patent Infringement | Foley & Lardner | Damages Analysis |
| 106. | Evanite Fiber Corp. v. Lauschaer Glaswerk GmbH, et al. Civil No. 2: 96-3525-18 (1998) | U.S. District Court, District of South Carolina, Charleston Division | Theft of Trade Secret | Farleigh, Wada & Witt | Damages Analysis |
| 105. | Livadas v. Graham & James Case No. BC 145386 (1998) | Los Angeles Superior Court, California | Legal Malpractice | Howard, Rice, Nemerovski, Canady, Robertson & Folk | Damages Analysis |
| 104. | Summa Four, Inc. v. Claircom Communications Group, Inc. d.b.a. AT&T Wireless Services Case No. 95-E-293 and 95-C-973 (1998) ** | Superior Court Northern District of Hillsborough County, New Hampshire | Breach of Contract | Hale & Dorr | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 103. | Ayre, et al. v. Attwood Corp., et al. Case No. 96-5087-NP (1998) | Circuit Court, County of Kent, Michigan | Wrongful Death | Kell & Lynch; Chaklos, Jungerheld, Hahn & Washburn | Damages Analysis |
| 102. | AQC Holdings, L.P. v. Dynamic Circuits, Inc. CV760815 (1998) ** | Santa Clara Superior Court, California | Breach of Contract | Freeborn & Peters | Damages Analysis |
| 101. | AMETRON v. Entin, et al. Case No. BC160521 (1998) | Los Angeles Superior Court, California | Usurpation of Corporate Opportunity | Mahoney, Coppenrath, Jaffe & Pearson | Damages Analysis |
| 100. | MasterCard Int'l, et al. v. Meridian Enterprises Corp. Case No. CA-94-4105 (DRD) (1997) ** | U.S. District Court, District of New Jersey | Patent Infringement | Woodard, Emhardt, Moriarty & McNett | Damages Analysis |
| 99. | Pitney Bowes, Inc. v. Hewlett Packard Company Case No. 395CV01764 (1997) ** | U.S. District Court, District of Connecticut | Patent Infringement | Pennie & Edmonds | Damages Analysis |
| 98. | McCaw v. McCaw Case No. 95-3-07235-0 SEA (1997) ** | King County Superior Court, Washington | Marital Dissolution | Perkins, Coie; Danielson, Harrigan & Tollefson; Kinzel, Allan, Skone & Searing; Law Offices of Gordon Wilcox | Investigatory Accounting |
| 97. | Foodmaker, Inc. v. The Vons Companies, Inc. Case No. BC085705 (1997) ** | Los Angeles Superior Court, California | Defamation | Thorsnes, Bartolotta, McGuire & Padilla | Damages Analysis |
| 96. | JRS Products v. Network Office Systems Case No. 95 AS 04411 (1997) | Sacramento County Superior Court, California | Libel | Law Offices of Richard Hart | Damages Analysis |
| 95. | Galaxy Networks, Inc. v. Kenan Systems Corp. Civil Action No. CV-95-5568 DDP (1997) | U.S. District Court, Central District of California | Unjust Enrichment, Quantum Meruit | Irell & Manella | Damages Analysis |
| 94. | Rubin v. Southwest Leasing Corp. Case No. SC0322254 (1997) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Browne & Woods; Baker, Silberberg & Keenen | Damages Analysis |
| 93. | Tung Yuan Construction Co. v. Chao Case No. GC 012436 (1997) | Los Angeles Superior Court (Baseball Arbitration) | Breach of Contract | Bird, Marella, Boxer, Wolpert & Matz | Investigatory Accounting |
| 92. | Potlatch Corporation v. Beloit Corporation Case No. CV 95-01992 (1997) | 2nd Judicial District State of Idaho | Breach of Contract | Sacks Montgomery | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 91. | The Samuel Goldwyn Co. v. MCEG Virgin Vision, Ltd. Case No. BC 016305 (1997) | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |
| 90. | Ostex International, Inc. v. Boehringer Mannheim No. 79T184 00192 95 (1996) | American Arbitration Association | Breach of Contract | Mundt, MacGregor, Happel, Falconer, Zulauf & Hall | Damages Analysis |
| 89. | Cook Inc. v. Palmaz Case No. IP 94-1459C (TIG) (1996) | U.S. District Court, District of Indiana | Breach of Contract | Akin, Gump, Strauss, Hauer & Feld | Damages Analysis |
| 88. | Cinnamon, et al. v. Reaz Shera, et al. No. 95AS01471 (1996) | Sacramento County Superior Court, California | Breach of Contract | Law Offices of Richard Hart | Damages Analysis |
| 87. | United Rock Products Corp. v. City of Irwindale (1996) | Arbitration before the Honorable Robert Wenke | Inverse Condemnation | Jeffer, Mangels, Butler & Marmaro | Damages Analysis |
| 86. | Ferreira v. Virco Manufacturing Corp. No. L003894 (1996) | Solano County Superior Court, California | Product Defect | Howarth & Smith | Damages Analysis |
| 85. | In re: America Honda Motor Co., Dealerships Relations Litigation MDL Case No. 1069 (1996) ** | U.S. District Court, District of Maryland | RICO | Kronick, Moskovitz, Tiedemann & Gerard | Fairness of Settlement |
| 84. | Brooktree Corporation v. S3 Incorporated Civil Action No. 95-2388R (ATB) (1996) ** | U.S. District Court, Southern District of California | Patent Infringement | Howrey & Simon; Pillsbury, Madison & Sutro | Damages Analysis |
| 83. | Redacted v. Redacted (1996) | American Arbitration Association | Breach of Contract | Kirkland & Ellis | Damages Analysis |
| 82. | In re: Radica Games Limited CV-S-94-00653-DAE (LRL) (1996) | U.S. District Court, District of Nevada | Class Action Securities Case | Sullivan & Cromwell | Damages Analysis |
| 81. | Martin v. Sprint Case No. (IV-S-93-1731) (1996) | U.S. District Court, Eastern District of California | Breach of Contract | Law Offices of Lisa Wright | Damages Analysis |
| 80. | Thermodyne v. McDonald's Corp. Case No. 1:95 CV 0232 (1996) | U.S. District Court, Northern District of Illinois | Theft of Trade Secret | Swift & Finlayson; Leeuw & Doyle | Damages Analysis |
| 79. | Competitive Technology, Inc. v. AST Research, Inc. Case No. 74 82 37 (1996) | Orange County Superior Court, California | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 78. | Ah Young Industrial Co. v. Brunswick Corp. Case No. 2340 CA (1996) | U.S. District Court, Northern District of California | Breach of Contract | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 77. | Medical Billing, Inc. v. Medical Management Services No. 1:94-CV-1567 (1996) | U.S. District Court Northern District of Ohio, Eastern Division | Breach of Contract | Donovan, Leisure, Newton & Irvine | Damages Analysis |
| 76. | TRW, Inc. v. Talley Industries, Inc. Case No. 89-1920 (1996) | U.S. District Court, District of Arizona | Breach of Contract | Donovan, Leisure, Newton & Irvine; Cohen & Cotton | Damages Analysis |
| 75. | Wadsworth Golf Construction Co. v. Castle Oak Investment Corp. Case No. 18250 (1996) | Amador County Superior Court, California | Breach of Contract | Mark Wleklinski, Ann Rankin | Alter Ego Analysis |
| 74. | Conte v. Kelly Case No. LC 018879 (1996) | Los Angeles Superior Court, California | Legal Malpractice | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 73. | Forti v. General Dynamics No. KC 016871/017393 (1996) | Los Angeles Superior Court, California | Breach of Contract | Howarth & Smith | Business Valuation |
| 72. | TLB, Inc. v. Platinum Software Civil No. 95WY621 (1996) | U.S. District Court of Colorado | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 71. | Strand Home Video v. Affiliated Regional Communications SC028 190 (1995) | Los Angeles Superior Court, California | Breach of Contract | Browne & Woods | Damages Analysis |
| 70. | Schlessinger v. Safeco Insurance Co. of America Case No. SC027965 (1995) | Los Angeles Superior Court, California | Bad Faith | Schlessinger & Wheeler | Damages Analysis |
| 69. | J.H. Design v. The Walt Disney Company No. BC090 485 (1995) ** | Los Angeles Superior Court, California | Breach of Contract | Bird, Marella, Boxer, Wolpert & Matz | Damages Analysis |
| 68. | Hewlett-Packard Company v. GenRad, Inc. No. 94-10675 RCL (1995) ** | U.S. District Court, District of Massachusetts | Patent Infringement | Pennie & Edmonds | Damages Analysis |
| 67. | Licensing Funding Partners v. Biblioteca Apostolica Vaticana, et al. BC 059176 (1995) | Los Angeles Superior Court, California | Breach of Contract | Howarth & Smith, Blecher & Collins | Damages Analysis |
| 66. | In re: AST Research Securities Litigation CV-94-1370 SVW (1995) | U.S. District Court, Central District of California | Class Action Securities Case | Prongay & Mikolajcyk; Greenfield & Rifkin | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|--------------------|----------------|
| 65. | AJIR, et al. v. Exxon Corp. No. C-93 20830 RMW PVT (1995) | U.S. District Court Northern District of California | PMPA | McClintock, Weston, Benshoof, Rochefort, Rubalcava & Mac-Cuish | Damages Analysis |
| 64. | TRW, Inc. v. Talley Industries CIV 94-0350-PHX-PGR (1995) | U.S. District Court, District of Arizona | Breach of Contract | Donovan, Leisure, Newton & Irvin; Cohen & Cotton | Damages Analysis |
| 63. | Fordiani v. Siino, et al. No. C93-05885 (1995) | Contra Costa Superior Court, California | Misrepresentation | King, Shapiro, Mittelman & Buchman | Damages Analysis |
| 62. | Gonsalves v. Kaiser Sand & Gravel and SVAR Industries No. C92-3561 MHP (1995) | U.S. District Court Northern District of California | Antitrust | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 61. | Supra Corporation v. D.L. Horton Enterprises, Inc. BC 093085 (1995) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 60. | Adams v. Calif. State Automobile Assoc. No. 916163 (1994) | San Francisco Superior Court, California | Various Business Torts | Thelen, Marrin, Johnson & Bridges | Cost Allocation and Reasonableness of Commissions |
| 59. | Mahne v. Crown Roll Leaf No. BC069435 (1994) *58 | Los Angeles Superior Court, California | Breach of Contract | Quinn, Emanuel, Urquhart & Oliver | Damages Analysis |
| 58. | Virgin Vision Ltd. v. The Samuel Goldwyn Co. No. BC-013701 (1994) | Los Angeles Superior Court, California | Intellectual Property | Law Offices of James P. Tierney | Damages Analysis |
| 57. | Ethicon Endo-Surgery v. Richard-Allen Medical Industries No. C2940501 (1994) ** | U.S. District Court Southern District of Ohio | Patent Infringement | Sullivan & Cromwell | Damages Analysis |
| 56. | Knickerbocker v. Scudder Reality Advisors Inc. Case No. 200169 (1994) | Riverside Superior Court, California | Breach of Contract | Giles & Burkhalter | Damages Analysis |
| 55. | Chaintool Company v. Workman, Nydegger & Jensen Civil No. 900903226CV (1994) | Third Judicial Court, Salt Lake City, Utah | Patent Attorney Malpractice | Wilkins, Oritt & Headman | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 54. | Southland Sod Farms v. Stover Seed Company, et al. Civil No. 92-4894-JMI (1994) ** | U.S. District Court, Central District of California | Lanham Act | Nordman, Cormany, Hair & Compton | Damages Analysis |
| 53. | In re: Information Resources, Inc. Civil No. 89C 3712 (1994) | U.S. District Court, Northern District of Illinois | Class Action Securities Case | Freeborn & Peters; Katten, Muchin & Zavis | Budgeting |
| 52. | Guy v. United Healthcare Corp. Case No. C2-92-397 (1993) | U.S. District Court, Southern District of Ohio | Breach of Contract | Robert J. Feldhake | Damages Analysis |
| 51. | The Boulders on the River v. First Interstate Bank of California Civil No. 90-19MA (1993) | U.S. District Court, Oregon | Breach of Contract | Lane Powell Spears Lubersky | Damages Analysis |
| 50. | American Savings Bank v. MGM-Pathe Communications Corp. (1993) | Los Angeles Superior Court, California | Breach of Guarantee | Pircher, Nichols & Meeks | Alter Ego Analysis |
| 49. | Liebert Corp. v. North American Phillips Corp. (1993) | Orange County Superior Court, California | Breach of Warranty | Banchero & Lasater | Damages Analysis |
| 48. | Precor v. Weider Civil No. C91-1743Z (1993) | U.S. District Court, Western District of Washington | Patent Infringement | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |
| 47. | Astec v. North American Phillips Corp. (1993) | Los Angeles Superior Court, California | Breach of Warranty | Banchero & Lasater | Damages Analysis |
| 46. | Gill v. American Savings Bank (1992) | U.S. Bankruptcy Court, Central District of California | Bankruptcy | Milbank, Tweed, Hadley & McCloy | Bankruptcy Analysis |
| 45. | Haro v. The Hahn Company (1992) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Howarth & Smith | Punitive Damages |
| 44. | Tube Forgings of America v. Weldbend (1992) | U.S. District Court, Oregon | Lanham Act | Mayer, Brown & Platt | Damages Analysis |
| 43. | State of California v. Bio-Rad (1992) | Alameda Superior Court, California | Eminent Domain | James Whittaker | Damages Analysis |
| 42. | E.J. Bartells Co. v. A.P. Green Industries (1992) | King County Superior Court, Washington | Securities Laws Violations | Thompson & Mitchell | Damages Analysis |

***Underlined party was my client.

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 41. | Stafford v. Miller, Wagner & Co. (1991) | State Court, Phoenix, Arizona | Accounting Malpractice | Greengard & Finley | Professional Standards |
| 40. | Firnschild v. Wyandotte Hospital (1991) | State Court, Detroit, Michigan | Breach of Contract | Kitch, Saurbier, Drutchas, Wagner & Kenney | Damages Analysis |
| 39. | Bacchi v. Fireman's Fund Insurance Co. (1991) | JAMS, Los Angeles, California | Breach of Contract | Kayajanian, Furay, Baker & Hill | Damages Analysis |
| 38. | Ixsys v. Stratagene (1991) | San Diego Superior Court, California | Intellectual Property | Pillsbury, Madison & Sutro | Damages Analysis |
| 37. | Falcon Cable Media v. Booth American Co. (1990) | U.S. District Court, Central District of California | Tortious Interference with Contract | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 36. | Ingram v. Owens Illinois (1990) | U.S. District Court, Oregon | Asbestos | Morgenstein & Jubelirer | Punitive Damages |
| 35. | Sucperity Corp. of California v. Shih (1990) | U.S. District Court, Central District of California | Breach of Contract | Fred & Lewin | Investigatory Accounting |
| 34. | Moreland v. Planet Insurance Company (1990) | Santa Barbara Superior Court, California | Breach of Contract | Rosenfeld, Meyer & Susman | Business Valuation |
| 33. | First Interstate Bank of Washington v. AFC (1990) | King County Superior Court, Washington | Lender Liability | Davis, Wright & Tremaine | Damages Analysis |
| 32. | El Torito v. La Mirada Redevelopment Agency (1990) | Orange County Superior Court, California | Condemnation | Bidna & Keys | Business Valuation |
| 31. | Moss v. Shepp (1990) | Los Angeles Superior Court, California | Legal Malpractice | Musick, Peeler & Garrett | Damages Analysis |
| 30. | Woodbridge Plaza v. Bank of Irvine (FDIC) (1990) | Orange County Superior Court, California | Breach of Contract | Bidna & Keys | Real Estate Valuation |
| 29. | Lines v. Bank of America (1990) | U.S. District Court, Northern District of California | Antitrust | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 28. | Major Projects, Inc. v. Hismeh (1990) | Riverside Superior Court, California | Breach of Contract | Bidna & Keys | Damages Analysis |
| 27. | Hammersmith v. Taco Bell Corp. (1990) | U.S. District Court, Oregon | Fraud | Skadden, Arps, Slate, Meagher & Flom | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 26. | Pioneer Hi-Bred v. Holden Foundation Seeds (1989) | U.S. District Court, Iowa | Theft of Trade Secret | Grefe & Sidney | Damages Analysis |
| 25. | Hideaway Productions v. Ampex Corp. (1989) | Los Angeles Superior Court, California | Breach of Implied Warranties, Fraud | Rosenfeld, Meyer & Susman | Damages Analysis |
| 24. | Lim v. Lehman (1989) | Sacramento Superior Court, California | Breach of Contract | Wolf & Leo | Damages Analysis |
| 23. | Bernstein v. Delta Airlines (1989) | U.S. District Court, Southern District of Florida | Wrongful Death | Steven Walker; Jenner & Block | Damages Analysis |
| 22. | Lippman v. Levy (1989) | Los Angeles Superior Court, California | Breach of Contract, Fraud | Browne & Woods | Business Valuation |
| 21. | In re: Technical Equities Federal Securities Litigation (1989) | U.S. District Court, Northern District of California | Class Action Securities Case | Buchalter, Nemer, Fields & Younger | Damages Analysis |
| 20. | Kay Co. v. HCC Industries (1989) | U.S. District Court, Southern District of Texas | Product Liability | Mayer, Day & Caldwell | Alter Ego Analysis |
| 19. | Pacific Dataware Inc. v. Novell (1989) | U.S. District Court, Utah | Antitrust | Kirton, McConkie & Poleman | Damages Analysis |
| 18. | Cole v. Benvenuti (1989) | Sacramento Superior Court, California | Breach of Contract | Lovitt & Hannan | Damages Analysis |
| 17. | Redacted v. Redacted (1988) | Los Angeles Superior Court | Professional Negligence | Riordan & Mckenzie | Professional Negligence & Damages Analysis |
| 16. | Sunwest Bank v. Alec Sharp (1988) | U.S. District Court, Central District of California | Breach of Contract | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 15. | Standard Wire & Cable v. Ameritrust (1988) | U.S. District Court, Central District of California | Lender Liability | Milbank, Tweed, Hadley & McCloy | Damages Analysis |
| 14. | Small v. Rogers (1988) | Los Angeles Superior Court, California | Breach of Contract and Fiduciary Duty | Loeb & Loeb | Business Valuation |
| 13. | Cleanmaster v. Fireman's Fund Insurance (1988) | Los Angeles Superior Court, California | Business Interruption | Crouch & Fern | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 12. | Benvenuti v. Evans (1988) | Sacramento Superior Court, California | Fraud, Breach of Contract | Kronick, Moskovitz, Tiedemann & Girard | Real Estate Valuation |
| 11. | In re: Technical Equities (1988) | Santa Clara Superior Court, California | Class Action Securities Case | Buchalter, Nemer, Fields & Younger | Damages Analysis |
| 10. | Avila v. Goeden (1988) | U.S. District Court, Central District of California | Fraud, Breach of Contract | Rogers & Wells | Damages Analysis |
| 9. | Skeen v. Wynn's International (1987) | Los Angeles Superior Court, California | Fraud, Breach of Contract | Gibson, Dunn & Crutcher | Business Valuation |
| 8. | Dumke v. Buffalo Chips, Inc. (1987) | San Francisco Superior Court, California | Breach of Contract | Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 7. | General Dynamics v. AT&T (1986) | U.S. District Court, Northern District of Illinois | Antitrust | Jenner & Block | Damages Analysis |
| 6. | Zelmans v. Tarzana Medical Partners (1985) | Los Angeles Superior Court, California | Breach of Contract | Fischer, Krane, & Jacobson | Damages Analysis |
| 5. | Ambassador Foods, Inc. v. State of California (1985) | Los Angeles Superior Court, California | Breach of Contract | Legal Staff of California Dept. of Transportation | Damages Analysis |
| 4. | Grizzard v. Western Kraft (1985) | Los Angeles Superior Court, California | Breach of Implied Warranties | Stern & Miller | Damages Analysis |
| 3. | Decorative Carpets v. Barkhordarian (1983 and 1988) | San Francisco Superior Court, California | Constructive Eviction | Pillsbury, Madison & Sutro | Damages Analysis |
| 2. | Morse Products v. AT&T (1983) | U.S. District Court, Central District of California | Antitrust | Blecher, Collins & Weinstein | Damages Analysis |
| 1. | Atherton Industries v. Sweda International (1982) | San Francisco Superior Court, California | Breach of Implied Warranties of Fitness and Merchantability | Cutler & Cutler | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS

(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|-------------------|----------------|
| 39. | Koninklijke KPN N.V. v. Cisco Systems, Inc. ICC Arbitration 28424/PDP (2025)*383 | International Chamber of Commerce | Patent Infringement | Susman Godfrey, LLP | Damages Analysis |
| 38. | CloudMinds (Hong Kong) Ltd. V. Red.Com LLC and Red Hydrogen, LLC JAMS Ref. No. 1220063907 (2022) | JAMS | Breach of Contract | Weeks Nelson | Damages Analysis and Alter Ego |
| 37. | Redacted. v. Redacted* (2016)*345 | Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution | Breach of Contract, Breach, Tortious Interference with Prospective Economic Advantage | Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C. | Damages Analysis |
| 36. | CopyTele, Inc. v. AU Optronics Corporation. Case No. 50 117 T 00883 13 (2014) | International Centre for Dispute Resolution, International Arbitration Tribunal | Breach of Contract, Fraud | Lieff Cabraser Heimann & Bernstein | Damages Analysis |
| 35. | CooperVision Inc. v. CIBA Vision A.G. Docket No. 50-122-T-00363-11 (2012)*305 | American Arbitration Association International Centre for Dispute Resolution | Breach of Patent License | Irell & Manella | Damages Analysis |
| 34. | Redacted v. Redacted (2011)*297 | American Arbitration Association – New York | Breach of Patent Transfer Agreement | Schnader Harrison Segal and Lewis LLP | Damages Analysis |
| 33. | Key Brand Entertainment, Inc. v. Dancap Productions, Inc. Ref. No. 1220038984 (2011) *281 | JAMS | Breach of Contract | Jeffer Mangels Butler & Marmaro | Damages Analysis |
| 32. | Wellogix, Inc. v. BP American, Inc. CA No. 4:09-CV-1511 (KPE) (2010)** | U.S. District Court, Southern District of Texas, Houston Division | Breach of Contract, Theft of Trade Secrets | Laminack, Pirtle & Martines Matthews, Lawson & Bowick | Damages Analysis |
| 31. | Gold Canyon Mining and Construction, LLC v. American Asphalt and Grading Company (2010)** | The Honorable Eli Chernow | Breach of Warranty | Howarth & Smith | Business Valuation |
| 30. | St. Vincent Medical Center and Daughters of Charity Health System, Inc. v. Victor C. Ramos, M.D., Inc. and Richard R. Lopez, Jr. M.D., Inc. JAMS Matter No. 1220037027 (2009)** | JAMS | Breach of Contract, Breach of Fiduciary Duty, Fraud | Jones Day | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS
(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|-----------|-------|------|--------------------|----------------|
| 29. | Redacted v. Redacted Case No. 74 180 Y 00729 06 DEAR (2007)** | American Arbitration Association | Breach of Contract | Howard Rice Nemerovski, Canady, Falk & Rabkin | Fairness of Partner Compensation |
| 28. | SilentAir Corporation v. Maytag Corporation, et al. Case No. 77133 0022205NADE (2006) | American Arbitration Association | Breach of Contract | Holland & Knight LLP | Damages Analysis |
| 27. | George Yardley Company, Inc. v. Johnson Controls, Inc. Case No. 72 11001086 02 (2005) | American Arbitration Association | Antitrust | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 26. | Anthony M. Trolio v. RemedyTemp, Inc. Case No. 72-114-305-02 MACR (2004) | American Arbitration Association | Breach of Contract | Lewis, Brisbois, Bisgaard & Smith | Damages Analysis |
| 25. | 911Notify.com v. Verizon Delaware, Inc. Case No: 71Y1810072202 (2003) | American Arbitration Association | Breach of Contract | Munger, Tolles & Olson | Damages Analysis |
| 24. | SPX Corporation v. Franklin Electric Corporation Case No. 51 Y 198 00469 01 (2002) | American Arbitration Association | Breach of Contract | Jenner & Block | Business Valuation |
| 23. | 2learn2.com v. San Diego State University, College of Extended Studies, et. Al., Case No. 80 Y 181 00138 01 VMD (2002)* 165 | American Arbitration Association | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 22. | PowerAgent, Inc. v. Electronic Data Systems Corporation No. 71 Y 117 00262 00 (2002)*160 | American Arbitration Association | Breach of Fiduciary Duty | Baker & Botts Townsend and Townsend and Crew | Damages Analysis Due Diligence |
| 21. | Potlatch Corporation v. Beloit Corporation Case No. 99-2177 (PJW) (2002) | JAMS, San Francisco, California | Breach of Contract | Sacks Montgomery | Damages Analysis |
| 20. | Clayton Industries v. SPX Corporation Case No. 72-18166200-SMY (2001) *150 | American Arbitration Association | Breach of Contract | Jenner & Block | Damages Analysis |
| 19. | Fourthchannel, Inc. v. Pivotal Corporation No. 50 T 133 00200 (2001) | American arbitration Association | Breach of Contract | Dorsey & Whitney LLP Bordon Ladner Gervais | Damages Analysis |
| 18. | Glass & Associates v. Factory Mutual Insurance Company Civil No. 99-6105-HO (2000) | U.S. District Court, District of Oregon | Breach of Contract | Ball Janik | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS
(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 17. | Ardent Software, Inc. v. Pacific Unidata, Inc. (2000)*127 | CPR Arbitration | Breach of Contract | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |
| 16. | RAM Consulting, Inc. v. Adams Golf No. 74-Y181-0602-98 (1999) | American Arbitration Association | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 15. | Synnex Information Technologies v. Tandy Corp., et al. C97-3757 WHO (1999) | U.S. District Court, Northern District of California, Referral | Breach of Contract | Nelson, Greenberg & Cohen | Damages Analysis |
| 14. | The Ischemia Research & Educational Foundation v. UCB, S.A. No. 74 T181 0440 97 (1998) | American Arbitration Association | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 13. | Green Hills Software, Inc. v. Integrated Systems, Inc. No. 72 117 01213 97 (1998) | American Arbitration Association | Breach of Contract | Munger, Tolles & Olson | Damages Analysis |
| 12. | Prestige Card, Inc. v. Bank One, et al. (1998) | American Arbitration Association | Breach of Contract | Lane Powell Spears Lubersky | Damages Analysis |
| 11. | Tung Yuan Construction Co. v. Chao Case No. GC 012436 (1996) *93 | Los Angeles Superior Court (Baseball Arbitration) | Breach of Contract | Bird, Marella, Boxer, Wolpert & Matz | Investigatory Accounting |
| 10. | Polo Ralph Lauren L.P. v. The Magnin Company, Inc. (1997) | American Arbitration Association | Breach of Contract | Browne & Woods | Damages Analysis |
| 9. | Redacted v. Redacted (1996) | American Arbitration Association | Breach of Contract | Kirkland & Ellis | Damages Analysis |
| 8. | Ostex International, Inc. v. Boehringer Mannheim No. 79T184 00192 95 (1996) *88 | American Arbitration Association | Breach of Contract | Mundt, MacGregor, Happel, Falconer, Zulauf & Hall | Damages Analysis |
| 7. | Kenady v. Cooper, White & Cooper No. 940973151 (1995) | JAMS, San Francisco, California | Breach of Contract | Quinn, Kully and Morrow | Damages Analysis |
| 6. | Dahle v. Integrated Resource Equity Corp. (1991) | NASD Arbitration, Portland, Oregon | Securities Violations | Garvey, Schubert & Barer | Damages Analysis |
| 5. | Bacchi v. Fireman's Fund Insurance Co. (1991) *39 | JAMS, Los Angeles, California | Breach of Contract | Kayajanian, Furay, Baker & Hill | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS
(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 4. | Kernohan v. Prudential Bache (1989) | American Arbitration Association | Breach of Fiduciary duty | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 3. | Scherick v. Taft Entertainment Co. (1989) | American Arbitration Association | Breach of Contract | Rosenfeld, Meyer & Susman | Damages Analysis |
| 2. | Nuvision Eyecare v. Southern California Glazers (1987) | American Arbitration Association | Breach of Contract | Gibson, Dunn & Crutcher | Damages Analysis |
| 1. | Pittsburgh/Des Moines Corp. v. Garden Grove Community Church (1984) | American Arbitration Association | Breach of Construction Contract | Irell & Manella | Damages Analysis |

***Underlined party was my client.

## EXPERT TESTIMONY—WRITTEN TESTIMONY ONLY

| No. | Lawsuit*** | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 8. | In re Textile Rental Services Litigation Case No CV-05-19 (2006) | Circuit Court of Barbour County (Clayton Division), Alabama | Class Action Fraud and Breach of Contract | 14 different law firms | Fairness of Settlement |
| 7. | Castle & Cooke California, Inc. v. Waste Management of California, Inc. No. CV760322 (1997) | JAMS/ENDISPUTE | Breach of Contract | Crosby, Heafey, Roach & May | Business Valuation |
| 6. | IMACC Corporation v. Dorothy Myers Warburton, et al. Case No. C 93 114 CW (1996) | U.S. District Court Northern District of California | Environmental Clean up | Morrison & Foerster Lane Powell Spears Lubersky Larson & Burnham | Alter Ego Analysis |
| 5. | Williams v. Kaiser Sand & Gravel & SYAR Case No. C92-3561 (1995) | U.S. District Court Northern District of California | Antitrust | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 4. | State Farm, et al. v. Garmendi Case No. 918689 (1995) | Los Angeles Superior Court, California | Declaratory Relief | Heller, Ehrman, White & McAuliffe | Reasonableness of Fees |
| 3. | In re: Phar-Mor Inc. Securities Litigation Case No. 93-631 (1995) | U.S. District Court, Western District of Pennsylvania | Securities Litigation | Zelle & Larson | Damages Analysis |
| 2. | Reggie White, et al. v. N.F.L. Civil No. 4-92-906 (1993) | U.S. District Court, District of Minnesota, 4th Division | Antitrust | Howarth & Smith | Damages Analysis |
| 1. | McCarthy v. Pollet (1983) | State Court, Hawaii | Fraud | Goodsill, Anderson, Quinn & Stifell | Investigatory Accounting |

***Underlined party was my client.

# Tab 4

Blake Lively v. Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, Jennifer Abel, Jed Wallace and Street Relations Inc.

List of Documents Considered

| Document Description | Date | Bates Range |
|---|---|---|
| 1 | | |
| 2 | | BBKOSLOW-000002985 - BBKOSLOW-000002989 |
| 3 | | BBKOSLOW-000006800 - BBKOSLOW-000006804 |
| 4 | | BBKOSLOW-000008194 - BBKOSLOW-000008199 |
| 5 | | BL-000008567 - BL-000008572 |
| 6 | | BL-000016330 - BL-000016344 |
| 7 | | BL-000021750 - BL-000021790 |
| 8 | | BL-000021798 - BL-000021910 |
| 9 | | BL-000021911 - BL-000021957 |
| 10 | | BL-000022233 - BL-000022301 |
| 11 | | BL-000028664 - BL-000028725 |
| 12 | | BL-000033111 - BL-000033141 |
| 13 | | BL-000033392 - BL-000033408 |
| 14 | | BL-000033409 - BL-000033427 |
| 15 | | BL-000034269 - BL-000034269 |
| 16 | | BL-000034271 - BL-000034271 |
| 17 | | BL-000034272 - BL-000034292 |
| 18 | | BL-000034377 - BL-000034432 |
| 19 | | BL-000034433 - BL-000034436 |
| 20 | | BL-000037129 - BL-000037151 |
| 21 | | BL-000037152 - BL-000037168 |
| 22 | | BL-000037152_A - BL-000037168_A |
| 23 | | BL-000037169 - BL-000037187 |
| 24 | | BL-000037169_A - BL-000037187_A |
| 25 | | BL-000037188 - BL-000037206 |
| 26 | | BL-000037188_A - BL-000037206_A |
| 27 | | BL-000037661 - BL-000037748 |
| 28 | | BL-000037749 - BL-000037752 |
| 29 | | BL-000037766 - BL-000037819 |
| 30 | | BL-000037820 - BL-000037853 |
| 31 | | BL-000037854 - BL-000037865 |

| Document Description | Date | Bates Range |
|---|---|---|
| 32 | | BL-000037923 - BL-000037958 |
| 33 | | BL-000037970_A - BL-000038164_A |
| 34 | | BL-000038170 - BL-000038269 |
| 35 | | BL-000038373 - BL-000038382 |
| 36 | | BL-000038599 - BL-000038636 |
| 37 | | BL-000038795 - BL-000038833 |
| 38 | | BL-000038834 - BL-000038834 |
| 39 | | BL-000038835 - BL-000038858 |
| 40 | | BL-000038859 - BL-000038859 |
| 41 | | BL-000038860 - BL-000038860 |
| 42 | | BL-000038861 - BL-000038861 |
| 43 | | BL-000038862 |
| 44 | | BL-000038863 - BL-000038880 |
| 45 | | BL-000038881 - BL-000038888 |
| 46 | | BL-000038889 - BL-000038936 |
| 47 | | BL-000038937 - BL-000038957 |
| 48 | | BL-000038958 - BL-000038960 |
| 49 | | BL-000038961 - BL-000038966 |
| 50 | | BL-000038967 - BL-000039011 |
| 51 | | BL-000039012 - BL-000039013 |
| 52 | | BL-000039014 - BL-000039054 |
| 53 | | BL-000039055 - BL-000039059 |
| 54 | | BL-000039060 - BL-000039074 |
| 55 | | BL-000039075 - BL-000039106 |
| 56 | | BL-000039107 - BL-000039108 |
| 57 | | BL-000039109 - BL-000039112 |
| 58 | | BL-000039160 - BL-000039168 |
| 59 | | BL-000039169 |
| 60 | | BL-000039170 - BL-000039170 |
| 61 | | BL-000039171 - BL-000039171 |
| 62 | | BL-000039172 - BL-000039183 |
| 63 | | BL-000039184 - BL-000039193 |
| 64 | | BL-000039194 - BL-000039196 |
| 65 | | BL-000039329 - BL-000039337 |
| 66 | | BL-000039338 - BL-000039338 |
| 67 | | BL-000039339 - BL-000039355 |
| 68 | | BL-000039356 - BL-000039356 |
| 69 | | BL-000039357 - BL-000039374 |
| 70 | | BL-000039375 - BL-000039375 |
| 71 | | BL-000039376 - BL-000039394 |
| 72 | | BL-000039395 - BL-000039395 |

| Document Description | Date | Bates Range |
|---|---|---|
| 73 | | BL-000039396 - BL-000039396 |
| 74 | | BL-000039397 - BL-000039397 |
| 75 | | BL-000039398 - BL-000039398 |
| 76 | | KCASE-000001079 - KCASE-000001083 |
| 77 | | KCASE-000002821 - KCASE-000002826 |
| 78 | | KCASE-000003354 - KCASE-000003366 |
| 79 | | NATHAN_000003433 - NATHAN_000003433 |
| 80 | | SAROWITZ_000001020 - SAROWITZ_000001025 |
| 81 | | SAROWITZ_000001253 - SAROWITZ_000001257 |
| 82 | | SPE_WF0000793 - SPE_WF0000794 |
| 83 A Simple Favor (2018), The Numbers https://www.the-numbers.com/movie/Simple-Favor-A#tab=summary) | 10/14/2025 | |
| 84 A Simple Favor, Rotten Tomatoes (https://www.rottentomatoes.com/m/a_simple_favor) | 10/14/2025 | |
| 85 Adam Blair, "Target Feels Pretty: Retailer Adds 2,000+ Beauty Products to Assortment," Retail Touch Points (https://www.retailtouchpoints.com/features/news-briefs/target-feels-pretty-retailer-adds-2000-beauty-products-to-assortment) | 2/14/2025 | |
| 86 Amber Raiken, "Non-Drinker Blake Lively Sparks Backlash with Launch of Alcohol Brand: 'Genuinely Confused'," The Independent (https://www.the-independent.com/life-style/blake-lively-betty-booze-alcohol-brand-b2366699.html) | 6/29/2023 | |
| 87 Amended Expert Report of Professor Ashlee Humphreys | 10/29/2025 | |
| 88 Arthur S. Poe, 'A Simple Favor' Becomes a Proper Hit on Netflix as the Sequel Is Currently Being Filmed, IMDb (Jun. 1, 2024) (https://www.imdb.com/news/ni64617824/) | 6/1/2024 | |
| 89 Betsy Vereckey, "Dealmakers Take Head: CAPM Can Cause Significant Valuation Errors," MIT Sloan (https://mitsloan.mit.edu/ideas-made-to-matter/dealmakers-take-heed-capm-can-cause-significant-valuation-errors) | 3/5/2020 | |
| 90 Blake Brown Beauty, "All-in-Wonder Leave-in Potion" (https://www.blakebrownbeauty.com/products/all-in-wonder-leave-in-potion) | 10/30/2025 | |
| 91 Blake Brown Beauty, "Fundamental Strengthening Mask (https://www.blakebrownbeauty.com/products/fundamental-strengthening-mask?variant=41550479851587) | 10/30/2025 | |
| 92 Cap Gemini Research Institute, "What Matters to Today's Consumer" (https://www.sogeti.com/wp-content/uploads/sites/3/2024/10/CRI_TODAYS-CONSUMER_WEB.pdf) | | |

| Document Description | Date | Bates Range |
|---|---|---|
| 93 Carly Johnson, "Blake Lively Goes into Damage Control by FINALLY Addressing the Domestic Violence in It Ends With Us Amid Critism Over 'Tone Deaf' Film Promo," Daily Mail (https://www.dailymail.co.uk/tvshowbiz/article-13740773/Blake-Lively-address-domestic-violence-Ends-film.html) | 8/13/2024 | |
| 94 Carly Johnson, "Blake Lively Sparks Backlash from 'Confused' Fans Over Launch of Her New Alcoholic Beverages After Admitting she NEVER Drinks Booze," Daily Mail (https://www.dailymail.co.uk/tvshowbiz/article-12245529/Blake-Lively-sparks-backlash-fans-launching-alcoholic-beverages-despite-TEETOTAL.html) | 6/29/2023 | |
| 95 Cascadia Managing Brands, "Contact Us" (https://cascadiafoodbev.com/contact-us/) | 11/2/2025 | |
| 96 Cascadia Managing Brands, "Why More than 70% of Celebrity Food and Beverage Brands Fail in the Industry," (https://cascadiafoodbev.com/the-celebrity-endorsement-gamble-why-more-than-70-of-celebrity-food-and-beverage-brands-fail/) | 7/21/2024 | |
| 97 Charna Flam, "Blake Lively Apologizes for 'Photoshop Fails' Post After Kate Middleton's Cancer News," People (https://people.com/blake-lively-kate-middleton-photoshop-fails-apology-8619479) | 3/22/2024 | |
| 98 Chloe Stewart, "Blake Lively Apologises After She's Slammed Over 'Insensitive' Kate Middleton Post," The Mirror (https://www.mirror.co.uk/3am/us-celebrity-news/blake-lively-apologises-after-shes-32421707) | 3/22/2024 | |
| 99 Complaint, Stephanie Jones, Jonesworks LLC v. Jennifer Abel et al. | 12/24/2024 | |
| 100 CT Jones, "'It Ends With Us': Why is Hollywood So Bad at Marketing Serious Movies?," Rolling Stone (https://www.rollingstone.com/tv-movies/tv-movie-features/it-ends-with-us-drama-domestic-romance-film-blake-lively-1235076583/) | 8/8/2024 | |
| 101 Declaration of Jed Wallace, individually and behalf of Street Relations, Inc. (1:24-cv-10049-LJL) | 8/13/2025 | |
| 102 Declaration of Michael J. Gottlieb in Support of Blake Lively's Motion for Sanctions Against Defendants' Counsel | 8/4/2025 | |
| 103 Defendant Jennifer Abel's Answer to Complaint, Counterclaims, and Jury Trial Demand (1:24-cv-10049-LJL) | 3/20/2025 | |
| 104 Defendant Wayfarer Studios LLC's Amended Answer to Complaint, Counterclaims, and Demand for Jury Trial (1:25-cv-00779-LJL) | 4/24/2025 | |
| 105 Defendant Wayfarer Studios LLC's Answer to Plaintiff's Second Amended Complaint and Jury Trial Demand (1:24-cv-10049-LJL) | 8/13/2025 | |
| 106 Deposition of Alexandria Saks | 9/24/2025 | |
| 107 Deposition of Alexandria Saks, Exh. #01 | | AS000062 - AS000062 |
| 108 Deposition of Alexandria Saks, Exh. #02 | | AS000008 - AS000008 |
| 109 Deposition of Alexandria Saks, Exh. #03 | | HEATH_000048499 - HEATH_000048500 |
| 110 Deposition of Alexandria Saks, Exh. #04 | | AS004588 - AS004589 |
| 111 Deposition of Alexandria Saks, Exh. #05 | | SPE_WF0000247 - SPE_WF0000256 |
| 112 Deposition of Alexandria Saks, Exh. #06 | | SPE_BL0002023 - SPE_BL0002025 |
| 113 Deposition of Alexandria Saks, Exh. #07 | | BL-000011598 - BL-000011599 |

| Document Description | Date | Bates Range |
|---|---|---|
| 114  Deposition of Alexandria Saks, Exh. #08 | | WAYFARER_000141469 - WAYFARER_000141472 |
| 115  Deposition of Alexandria Saks, Exh. #09 | | SPE_BL0002026 - SPE_BL0002035 |
| 116  Deposition of Alexandria Saks, Exh. #10 | | SPE_WF0000150 - SPE_WF0000153 |
| 117  Deposition of Alexandria Saks, Exh. #11 | | SPE_BL0002193 - SPE_BL0002197 |
| 118  Deposition of Alexandria Saks, Exh. #12 | | SPE_BL0002183 - SPE_BL0002188 |
| 119  Deposition of Alexandria Saks, Exh. #13 | | BL-000008042 - BL-000008043 |
| 120  Deposition of Alexandria Saks, Exh. #14 | | WAYFARER_000006823 - WAYFARER_000006831 |
| 121  Deposition of Alexandria Saks, Exh. #15 | | AS000499 - AS000501 |
| 122  Deposition of Alexandria Saks, Exh. #16 | | AS000701 - AS000703 |
| 123  Deposition of Alexandria Saks, Exh. #17 | | |
| 124  Deposition of Alexandria Saks, Exh. #18 | | BL-000018426 - BL-000018427 |
| 125  Deposition of Alexandria Saks, Exh. #19 | | AS000889 - AS000890 |
| 126  Deposition of Alexandria Saks, Exh. #20 | | AS001088 - AS001089 |
| 127  Deposition of Alexandria Saks, Exh. #21 | | AS001094 - AS001095 |
| 128  Deposition of Alexandria Saks, Exh. #22 | | AS004690 - AS004725 |
| 129  Deposition of Andrea Giannetti | 9/23/2025 | |
| 130  Deposition of Andrea Giannetti, Exh. #01 | | SPE_BL0000343 - SPE_BL0000348 |
| 131  Deposition of Andrea Giannetti, Exh. #02 | | SPE_BL0001995 - SPE_BL0002000 |
| 132  Deposition of Andrea Giannetti, Exh. #03 | | SPE_BL0000367 - SPE_BL0000377 |
| 133  Deposition of Andrea Giannetti, Exh. #04 | | SPE_WF0000185 - SPE_WF0000186 |
| 134  Deposition of Andrea Giannetti, Exh. #05 | | SPE_WF0000210 - SPE_WF0000210 |
| 135  Deposition of Andrea Giannetti, Exh. #06 | | |
| 136  Deposition of Andrea Giannetti, Exh. #07 | | BALDONI_000017192 - BALDONI_000017193 |
| 137  Deposition of Andrea Giannetti, Exh. #08 | | BL-000007939 - BL-000007940 |
| 138  Deposition of Andrea Giannetti, Exh. #09 | | HEATH_000048501 - HEATH_000048501 |
| 139  Deposition of Andrea Giannetti, Exh. #10 | | SPE_BL0005563 - SPE_BL0005564 |
| 140  Deposition of Andrea Giannetti, Exh. #11 | | BL-000007945 - BL-000007946 |
| 141  Deposition of Andrea Giannetti, Exh. #12 | | BL-000007953 - BL-000007954 |
| 142  Deposition of Andrea Giannetti, Exh. #13 | | BL-000033431 - BL-000033431 |
| 143  Deposition of Andrea Giannetti, Exh. #14 | | BL-000020768 - BL-000020769 |

| Document Description | Date | Bates Range |
|---|---|---|
| 144  Deposition of Andrea Giannetti, Exh. #15 | | BL-000020770 - BL-000020774 |
| 145  Deposition of Andrea Giannetti, Exh. #16 | | SPE_BL0002023 - SPE_BL0002025 |
| 146  Deposition of Andrea Giannetti, Exh. #17 | | SPE_BL0002026 - SPE_BL0002035 |
| 147  Deposition of Andrea Giannetti, Exh. #18 | | SPE_BL0002193 - SPE_BL0002197 |
| 148  Deposition of Andrea Giannetti, Exh. #19 | | SPE_BL0003512 - SPE_BL0003516 |
| 149  Deposition of Andrea Giannetti, Exh. #20 | | |
| 150  Deposition of Andrea Giannetti, Exh. #21 | | SPE_WF0000157 - SPE_WF0000158 |
| 151  Deposition of Andrea Giannetti, Exh. #22 | | SPE_BL0005402 - SPE_BL0005403 |
| 152  Deposition of Andrea Giannetti, Exh. #23 | | SPE_BL0000789 - SPE_BL0000790 |
| 153  Deposition of Andrea Giannetti, Exh. #24 | | BALDONI_000016470 - BALDONI_000016470 |
| 154  Deposition of Andrea Giannetti, Exh. #25 | | SPE_BL0003349 - SPE_BL0003350 |
| 155  Deposition of Andrea Giannetti, Exh. #26 | | BALDONI_000018544 - BALDONI_000018546 |
| 156  Deposition of Andrea Giannetti, Exh. #27 | | SPE_BL0000912 - SPE_BL0000914 |
| 157  Deposition of Andrea Giannetti, Exh. #28 | | SPE_WF0000233 - SPE_WF0000235 |
| 158  Deposition of Andrea Giannetti, Exh. #29 | | BL-000013114 - BL-000013242 |
| 159  Deposition of Andrea Giannetti, Exh. #30 | | BL-000007943 - BL-000007944 |
| 160  Deposition of Andrea Giannetti, Exh. #31 | | SPE_BL0005959 - SPE_BL0005961 |
| 161  Deposition of Andrea Giannetti, Exh. #32 | | SPE_WF0000260 - SPE_WF0000260 |
| 162  Deposition of Andrea Giannetti, Exh. #33 | | BL-000007941 - BL-000007942 |
| 163  Deposition of Andrea Giannetti, Exh. #34 | | BL-000011512 - BL-000011517 |
| 164  Deposition of Andrea Giannetti, Exh. #35 | | JS0000084 - JS0000085 |
| 165  Deposition of Andrea Giannetti, Exh. #36 | | BALDONI_000017299 - BALDONI_000017302 |
| 166  Deposition of Andrea Giannetti, Exh. #37 | | SPE_WF0000311 - SPE_WF0000312 |
| 167  Deposition of Andrea Giannetti, Exh. #38 | | SPE_WF0000019 - SPE_WF0000020 |
| 168  Deposition of Andrea Giannetti, Exh. #39 | | SPE_WF0000415 - SPE_WF0000417 |
| 169  Deposition of Andrea Giannetti, Exh. #40 | | SPE_WF0000472 - SPE_WF0000474 |

| Document Description | Date | Bates Range |
|---|---|---|
| 170 Deposition of Andrea Giannetti, Exh. #41 | | BL-000008024 - BL-000008025 |
| 171 Deposition of Andrea Giannetti, Exh. #42 | | SPE_BL0023261 - SPE_BL0023262 |
| 172 Deposition of Andrew T. Chrisomalis | 9/24/2025 | |
| 173 Deposition of Andrew T. Chrisomalis, Exh. #01 | | |
| 174 Deposition of Andrew T. Chrisomalis, Exh. #02 | | BL-000022233 - BL-000022301 |
| 175 Deposition of Andrew T. Chrisomalis, Exh. #03 | | BL-000037497 - BL-000037497 |
| 176 Deposition of Andrew T. Chrisomalis, Exh. #04 | | BL-000026482 - BL-000026483 |
| 177 Deposition of Andrew T. Chrisomalis, Exh. #05 | | BL-000026484 - BL-000026524 |
| 178 Deposition of Andrew T. Chrisomalis, Exh. #06 | | BL-000028663 - BL-000028663 |
| 179 Deposition of Andrew T. Chrisomalis, Exh. #07 | | BL-000028664 - BL-000028725 |
| 180 Deposition of Andrew T. Chrisomalis, Exh. #08 | | BL-000037970_A - BL-000038164_A |
| 181 Deposition of Andrew T. Chrisomalis, Exh. #09 | | BL-000033169 - BL-000033189 |
| 182 Deposition of Andrew T. Chrisomalis, Exh. #10 | | BL-000033111 - BL-000033141 |
| 183 Deposition of Andrew T. Chrisomalis, Exh. #11 | | BL-000037129_A - BL-000037151_A |
| 184 Deposition of Andrew T. Chrisomalis, Exh. #12 | | BL-000038170_A - BL-000038269_A |
| 185 Deposition of Andrew T. Chrisomalis, Exh. #13 | | BL-000037128_A - BL-000037128_A |
| 186 Deposition of Andrew T. Chrisomalis, Exh. #14 | | BL-000037188_A - BL-000037206_A |
| 187 Deposition of Andrew T. Chrisomalis, Exh. #15 | | BL-000034253 - BL-000034253 |
| 188 Deposition of Ashley Avignone | 9/29/2025 | |
| 189 Deposition of Blake Lively | 7/31/2025 | |
| 190 Deposition of Blake Lively, Errata Sheet | 9/2/2025 | |
| 191 Deposition of Blake Lively, Exh. #1000 | | |
| 192 Deposition of Blake Lively, Exh. #1001 | | |
| 193 Deposition of Blake Lively, Exh. #1041 | | STREET1.000091 - STREET1.000091 |
| 194 Deposition of Blake Lively, Exh. #1042 | | STREET1.000092 - STREET1.000105 |
| 195 Deposition of Blake Lively, Exh. #1048 | | |
| 196 Deposition of Blake Lively, Exh. #1049 | | |
| 197 Deposition of Blake Lively, Exh. #1051 | | BL-000028978 - BL-000028982 |
| 198 Deposition of Blake Lively, Exh. #1055 | | |
| 199 Deposition of Breanna Koslow | 9/9/2025 | |
| 200 Deposition of Breanna Koslow, Exh. #01 | | BBKOSLOW-000000740 - BBKOSLOW-000000746 |
| 201 Deposition of Breanna Koslow, Exh. #02 | | HEATH_000031737 - HEATH_000031740 |

| Document Description | Date | Bates Range |
|---|---|---|
| 202  Deposition of Breanna Koslow, Exh. #03 | | BBKOSLOW-000008776 - BBKOSLOW-000008781 |
| 203  Deposition of Breanna Koslow, Exh. #04 | | KCASE-000005118 - KCASE-000005121 |
| 204  Deposition of Breanna Koslow, Exh. #05 | | BBKOSLOW-000002816 - BBKOSLOW-000002825 |
| 205  Deposition of Breanna Koslow, Exh. #06 | | KCASE-000002654 - KCASE-000002665 |
| 206  Deposition of Breanna Koslow, Exh. #07 | | KCASE-000005046 - KCASE-000005054 |
| 207  Deposition of Breanna Koslow, Exh. #08 | | KCASE-000004176 - KCASE-000004185 |
| 208  Deposition of Breanna Koslow, Exh. #09 | | NATHAN_000000141 - NATHAN_000000151 |
| 209  Deposition of Breanna Koslow, Exh. #10 | | BBKOSLOW-000002092 - BBKOSLOW-000002094 |
| 210  Deposition of Breanna Koslow, Exh. #1010 | | BBKOSLOW-000004085 - BBKOSLOW-000004086 |
| 211  Deposition of Breanna Koslow, Exh. #11 | | BBKOSLOW-000001960 - BBKOSLOW-000001961 |
| 212  Deposition of Breanna Koslow, Exh. #12 | | NATHAN_000003131 - NATHAN_000003142 |
| 213  Deposition of Breanna Koslow, Exh. #13 | | |
| 214  Deposition of Breanna Koslow, Exh. #14 | | |
| 215  Deposition of Breanna Koslow, Exh. #15 | | |
| 216  Deposition of Breanna Koslow, Exh. #16 | | |
| 217  Deposition of Breanna Koslow, Exh. #17 | | BBKOSLOW-000001024 - BBKOSLOW-000001029 |
| 218  Deposition of Breanna Koslow, Exh. #18 | | |
| 219  Deposition of Breanna Koslow, Exh. #19 | | BBKOSLOW-000005171 - BBKOSLOW-000005187 |
| 220  Deposition of Breanna Koslow, Exh. #20 | | BBKOSLOW-000006444 - BBKOSLOW-000006458 |
| 221  Deposition of Breanna Koslow, Exh. #21 | | BBKOSLOW-000005795 - BBKOSLOW-000005817 |
| 222  Deposition of Breanna Koslow, Exh. #22 | | BBKOSLOW-000002400 - BBKOSLOW-000002418 |
| 223  Deposition of Breanna Koslow, Exh. #23 | | BBKOSLOW-000007302 - BBKOSLOW-000007305 |
| 224  Deposition of Breanna Koslow, Exh. #24 | | BBKOSLOW-000007262 - BBKOSLOW-000007269 |
| 225  Deposition of Breanna Koslow, Exh. #25 | | BBKOSLOW-000006269 - BBKOSLOW-000006282 |
| 226  Deposition of Breanna Koslow, Exh. #26 | | BBKOSLOW-000008836 - BBKOSLOW-000008838 |

| Document Description | Date | Bates Range |
| --- | --- | --- |
| 227 Deposition of Breanna Koslow, Exh. #27 | | BBKOSLOW-000006239 - BBKOSLOW-000006243 |
| 228 Deposition of Breanna Koslow, Exh. #28 | | NATHAN_000001027 - NATHAN_000001028 |
| 229 Deposition of Breanna Koslow, Exh. #29 | | BBKOSLOW-000008822 - BBKOSLOW-000008825 |
| 230 Deposition of Breanna Koslow, Exh. #30 | | BBKOSLOW-000000983 - BBKOSLOW-000000986 |
| 231 Deposition of Breanna Koslow, Exh. #31 | | |
| 232 Deposition of Breanna Koslow, Exh. #32 | | TAG_000000336 - TAG_000000336 |
| 233 Deposition of Breanna Koslow, Exh. #33 | | WAYFARER_000140710 - WAYFARER_000140710 |
| 234 Deposition of Breanna Koslow, Exh. #34 | | |
| 235 Deposition of Breanna Koslow, Exh. #35 | | BBKOSLOW-000000987 - BBKOSLOW-000000989 |
| 236 Deposition of Breanna Koslow, Exh. #36 | | BBKOSLOW-000007294 - BBKOSLOW-000007295 |
| 237 Deposition of Breanna Koslow, Exh. #37 | | BBKOSLOW-000003663 - BBKOSLOW-000003666 |
| 238 Deposition of Breanna Koslow, Exh. #38 | | BBKOSLOW-000002727 - BBKOSLOW-000002733 |
| 239 Deposition of Breanna Koslow, Exh. #38 | | BBKOSLOW-000002736 - BBKOSLOW-000002736 |
| 240 Deposition of Breanna Koslow, Exh. #39 | | BBKOSLOW-000003624 - BBKOSLOW-000003631 |
| 241 Deposition of Breanna Koslow, Exh. #40 | | BBKOSLOW-000002801 - BBKOSLOW-000002808 |
| 242 Deposition of Breanna Koslow, Exh. #41 | | BBKOSLOW-000001914 - BBKOSLOW-000001919 |
| 243 Deposition of Breanna Koslow, Exh. #42 | | BBKOSLOW-000002008 - BBKOSLOW-000002014 |
| 244 Deposition of Breanna Koslow, Exh. #43 | | BBKOSLOW-000004099 - BBKOSLOW-000004109 |
| 245 Deposition of Breanna Koslow, Exh. #44 | | BBKOSLOW-000001852 - BBKOSLOW-000001861 |
| 246 Deposition of Breanna Koslow, Exh. #45 | | BBKOSLOW-000003749 - BBKOSLOW-000003763 |
| 247 Deposition of Breanna Koslow, Exh. #45 | | BBKOSLOW-000003780 - BBKOSLOW-000003780 |
| 248 Deposition of Breanna Koslow, Exh. #46 | | BBKOSLOW-000001364 - BBKOSLOW-000001368 |
| 249 Deposition of Breanna Koslow, Exh. #46 | | BBKOSLOW-000001400 - BBKOSLOW-000001400 |

| Document Description | Date | Bates Range |
|---|---|---|
| 250  Deposition of Breanna Koslow, Exh. #47 | | BBKOSLOW-000004011 - BBKOSLOW-000004020 |
| 251  Deposition of Breanna Koslow, Exh. #47 | | BBKOSLOW-000004063 - BBKOSLOW-000004063 |
| 252  Deposition of Breanna Koslow, Exh. #48 | | BBKOSLOW-000001988 - BBKOSLOW-000001992 |
| 253  Deposition of Breanna Koslow, Exh. #49 | | BBKOSLOW-000003330 - BBKOSLOW-000003344 |
| 254  Deposition of Breanna Koslow, Exh. #50 | | BBKOSLOW-000004606 - BBKOSLOW-000004610 |
| 255  Deposition of Breanna Koslow, Exh. #51 | | JONESWORKS_00013647 - JONESWORKS_00013649 |
| 256  Deposition of Breanna Koslow, Exh. #52 | | BBKOSLOW-000004442 - BBKOSLOW-000004455 |
| 257  Deposition of Breanna Koslow, Exh. #52 | | BBKOSLOW-000004473 - BBKOSLOW-000004473 |
| 258  Deposition of Danny Greenberg | 9/19/2025 | |
| 259  Deposition of Danny Greenberg, Exh. #01 | | WME_00000507 - WME_00000507 |
| 260  Deposition of Danny Greenberg, Exh. #02 | | WME_00000508 - WME_00000509 |
| 261  Deposition of Danny Greenberg, Exh. #03 | | WME_00000510 - WME_00000511 |
| 262  Deposition of Danny Greenberg, Exh. #04 | | WME_00001169 - WME_00001171 |
| 263  Deposition of Danny Greenberg, Exh. #05 | | WME_00000541 - WME_00000542 |
| 264  Deposition of Danny Greenberg, Exh. #06 | | WME_00001187 - WME_00001190 |
| 265  Deposition of Danny Greenberg, Exh. #07 | | WME_00001195 - WME_00001195 |
| 266  Deposition of Danny Greenberg, Exh. #08 | | WME_00001214 - WME_00001215 |
| 267  Deposition of Danny Greenberg, Exh. #09 | | WME_00001221 - WME_00001223 |
| 268  Deposition of Danny Greenberg, Exh. #10 | | WME_00000547 - WME_00000549 |
| 269  Deposition of Danny Greenberg, Exh. #11 | | WME_00000661 - WME_00000663 |
| 270  Deposition of Danny Greenberg, Exh. #12 | | WME_00001245 - WME_00001246 |
| 271  Deposition of Danny Greenberg, Exh. #13 | | WME_00000550 - WME_00000550 |
| 272  Deposition of Danny Greenberg, Exh. #14 | | RR-SUBPOENA-000000178 - RR-SUBPOENA-000000178 |

| Document Description | Date | Bates Range |
|---|---|---|
| 273  Deposition of Danny Greenberg, Exh. #15 | | WME_00001251 - WME_00001253 |
| 274  Deposition of Danny Greenberg, Exh. #16 | | WME_00001254 - WME_00001255 |
| 275  Deposition of Danny Greenberg, Exh. #17 | | WME_00001266 - WME_00001267 |
| 276  Deposition of Danny Greenberg, Exh. #18 | | WME_00001259 - WME_00001261 |
| 277  Deposition of Danny Greenberg, Exh. #19 | | WME_00001342 - WME_00001342 |
| 278  Deposition of Danny Greenberg, Exh. #20 | | WME_00000459 - WME_00000460 |
| 279  Deposition of Danny Greenberg, Exh. #21 | | HEATH_000032774 - HEATH_000032779 |
| 280  Deposition of Danny Greenberg, Exh. #22 | | SPE_BL0000343 - SPE_BL0000348 |
| 281  Deposition of Danny Greenberg, Exh. #23 | | SPE_BL0001995 - SPE_BL0002000 |
| 282  Deposition of Danny Greenberg, Exh. #24 | | SPE_BL0000367 - SPE_BL0000377 |
| 283  Deposition of Danny Greenberg, Exh. #25 | | BL-000039114 - BL-000039159 |
| 284  Deposition of Danny Greenberg, Exh. #26 | | WME_00000641 - WME_00000645 |
| 285  Deposition of Danny Greenberg, Exh. #27 | | WME_00001300 - WME_00001301 |
| 286  Deposition of Danny Greenberg, Exh. #28 | | WME_00001318 - WME_00001318 |
| 287  Deposition of Danny Greenberg, Exh. #29 | | SPE_BL0009642 - SPE_BL0009644 |
| 288  Deposition of Danny Greenberg, Exh. #30 | | WME_00001319 - WME_00001320 |
| 289  Deposition of Elizabeth Talbot | 8/21/2025 | |
| 290  Deposition of Elizabeth Talbot, Exh. #03 | | BALDONI_000026188 - BALDONI_000026189 |
| 291  Deposition of Elizabeth Talbot, Exh. #03A | | |
| 292  Deposition of Elizabeth Talbot, Exh. #03B | | |
| 293  Deposition of Elizabeth Talbot, Exh. #05 | | 24-CV-10049_0002367 - 24-CV-10049_0002368 |
| 294  Deposition of Elizabeth Talbot, Exh. #05 | | 24-CV-10049_0002636 - 24-CV-10049_0002750 |
| 295  Deposition of Elizabeth Talbot, Exh. #07 | | 24-CV-10049_0002001 - 24-CV-10049_0002004 |
| 296  Deposition of Elizabeth Talbot, Exh. #10 | | 24-CV-10049_0001869 - 24-CV-10049_0001870 |

| Document Description | Date | Bates Range |
|---|---|---|
| 297  Deposition of Elizabeth Talbot, Exh. #11 | | 24-CV-10049_0003550 - 24-CV-10049_0003551 |
| 298  Deposition of Elizabeth Talbot, Exh. #12 | | 24-CV-10049_0001816 - 24-CV-10049_0001824 |
| 299  Deposition of Elizabeth Talbot, Exh. #14 | | 24-CV-10049_0003470 - 24-CV-10049_0003471 |
| 300  Deposition of Elizabeth Talbot, Exh. #16 | | 24-CV-10049_0003588 - 24-CV-10049_0003591 |
| 301  Deposition of Elizabeth Talbot, Exh. #25 | | 24-CV-10049_0003560 - 24-CV-10049_0003561 |
| 302  Deposition of Elizabeth Talbot, Exh. #27 | | 24-CV-10049_0003564 - 24-CV-10049_0003565 |
| 303  Deposition of Elizabeth Talbot, Exh. #29 | | 24-CV-10049_0002867 - 24-CV-10049_0002867 |
| 304  Deposition of Elizabeth Talbot, Exh. #30 | | 24-CV-10049_0002961 - 24-CV-10049_0002963 |
| 305  Deposition of Elizabeth Talbot, Exh. #38 | | |
| 306  Deposition of Elizabeth Talbot, Exh. #39 | | |
| 307  Deposition of Elizabeth Talbot, Exh. #41 | | 24-CV-10049_0002634 - 24-CV-10049_0002635 |
| 308  Deposition of Elizabeth Talbot, Exh. #42 | | 24-CV-10049_0002473 - 24-CV-10049_0002591 |
| 309  Deposition of Elizabeth Talbot, Exh. #43 | | 24-CV-10049_0002016 - 24-CV-10049_0002017 |
| 310  Deposition of Elizabeth Talbot, Exh. #44 | | 24-CV-10049_0003313 - 24-CV-10049_0003321 |
| 311  Deposition of Elizabeth Talbot, Exh. #45 | | 24-CV-10049_0001097 - 24-CV-10049_0001098 |
| 312  Deposition of Elizabeth Talbot, Exh. #46 | | 24-CV-10049_0001426 - 24-CV-10049_0001434 |
| 313  Deposition of Elizabeth Talbot, Exh. #47 | | 24-CV-10049_0003478 - 24-CV-10049_0003481 |
| 314  Deposition of Elizabeth Talbot, Exh. #48 | | 24-CV-10049_0003488 - 24-CV-10049_0003490 |
| 315  Deposition of Elizabeth Talbot, Exh. #49 | | 24-CV-10049_0003491 - 24-CV-10049_0003493 |
| 316  Deposition of Elizabeth Talbot, Exh. #50 | | 24-CV-10049_0003611 - 24-CV-10049_0003615 |
| 317  Deposition of Elizabeth Talbot, Exh. #51 | | 24-CV-10049_0003609 - 24-CV-10049_0003610 |
| 318  Deposition of Family Hive LLC | 9/29/2025 | |
| 319  Deposition of Family Hive LLC, Exh. #01 | | |
| 320  Deposition of Family Hive LLC, Exh. #02 | | BL-000037766 - BL-000037819 |
| 321  Deposition of Family Hive LLC, Exh. #03 | | BL-000037820 - BL-000037853 |
| 322  Deposition of Family Hive LLC, Exh. #04 | | BL-000021748 - BL-000021749 |

| Document Description | Date | Bates Range |
|---|---|---|
| 323  Deposition of Family Hive LLC, Exh. #05 | | BL-000021750 - BL-000021790 |
| 324  Deposition of Family Hive LLC, Exh. #06 | | BL-000021797 - BL-000021797 |
| 325  Deposition of Family Hive LLC, Exh. #07 | | BL-000021798 - BL-000021910 |
| 326  Deposition of Family Hive LLC, Exh. #08 | | BL-000037854 - BL-000037865 |
| 327  Deposition of Family Hive LLC, Exh. #09 | | BL-000034296 - BL-000034376 |
| 328  Deposition of Family Hive LLC, Exh. #10 | | BL-000039160 - BL-000039168 |
| 329  Deposition of Family Hive LLC, Exh. #11 | | BL-000034272 - BL-000034292 |
| 330  Deposition of Family Hive LLC, Exh. #12 | | BL-000032949 - BL-000032952 |
| 331  Deposition of Family Hive LLC, Exh. #13 | | |
| 332  Deposition of Family Hive LLC, Exh. #14 | | BL-000032962 - BL-000032966 |
| 333  Deposition of Family Hive LLC, Exh. #15 | | BL-000032954 - BL-000032955 |
| 334  Deposition of Family Hive LLC, Exh. #16 | | BL-000033088 - BL-000033088 |
| 335  Deposition of Family Hive LLC, Exh. #17 | | BL-000033089 - BL-000033102 |
| 336  Deposition of Family Hive LLC, Exh. #18 | | |
| 337  Deposition of Family Hive LLC, Exh. #19 | | |
| 338  Deposition of Family Hive LLC, Exh. #20 | | |
| 339  Deposition of Family Hive LLC, Exh. #21 | | |
| 340  Deposition of Family Hive LLC, Exh. #22 | | BL-000034377 - BL-000034432 |
| 341  Deposition of Family Hive LLC, Exh. #23 | | BL-000034894 - BL-000034897 |
| 342  Deposition of Family Hive LLC, Exh. #24 | | BL-000038373 - BL-000038382 |
| 343  Deposition of Family Hive LLC, Exh. #25 | | BL-000034433 - BL-000034436 |
| 344  Deposition of Family Hive LLC, Volume 2 | 10/21/2025 | |
| 345  Deposition of Family Hive LLC, Volume 2, Exh. #08 | | BL-000037854 - BL-000037865 |
| 346  Deposition of Family Hive LLC, Volume 2, Exh. #09 | | BL-000034296 - BL-000034376 |
| 347  Deposition of Family Hive LLC, Volume 2, Exh. #24 | | BL-000038373 - BL-000038382 |
| 348  Deposition of Family Hive LLC, Volume 2, Exh. #26 | | BL-000034268 - BL-000034268 |
| 349  Deposition of Family Hive LLC, Volume 2, Exh. #27 | | BL-000034259 - BL-000034259 |
| 350  Deposition of Family Hive LLC, Volume 2, Exh. #28 | | BL-000034269 - BL-000034269 |
| 351  Deposition of Family Hive LLC, Volume 2, Exh. #29 | | BL-000033371 - BL-000033371 |
| 352  Deposition of Family Hive LLC, Volume 2, Exh. #30 | | BL-000033369 - BL-000033369 |
| 353  Deposition of Family Hive LLC, Volume 2, Exh. #30 | | BL-000034256 - BL-000034256 |
| 354  Deposition of Family Hive LLC, Volume 2, Exh. #30 | | BL-000034261 - BL-000034261 |
| 355  Deposition of Family Hive LLC, Volume 2, Exh. #30 | | BL-000034265 - BL-000034265 |
| 356  Deposition of Family Hive LLC, Volume 2, Exh. #31 | | BL-000034270 - BL-000034270 |
| 357  Deposition of Gordon Duren | 9/23/2025 | |
| 358  Deposition of Gordon Duren, Exh. #004 | | JONESWORKS_00039172 - JONESWORKS_00039181 |
| 359  Deposition of Gordon Duren, Exh. #004 | | JONESWORKS_00039183 - JONESWORKS_00039184 |
| 360  Deposition of Gordon Duren, Exh. #012 | | JONESWORKS_00039196 - JONESWORKS_00039197 |

| Document Description | Date | Bates Range |
|---|---|---|
| 361  Deposition of Gordon Duren, Exh. #021 | | JONESWORKS_00039253 - JONESWORKS_00039262 |
| 362  Deposition of Gordon Duren, Exh. #025 | | JONESWORKS_00039263 - JONESWORKS_00039276 |
| 363  Deposition of Gordon Duren, Exh. #026 | | JONESWORKS_00040866 - JONESWORKS_00040867 |
| 364  Deposition of Gordon Duren, Exh. #028 | | JONESWORKS_00013204 - JONESWORKS_00013205 |
| 365  Deposition of Gordon Duren, Exh. #029 | | JONESWORKS_00040104 - JONESWORKS_00040120 |
| 366  Deposition of Gordon Duren, Exh. #031 | | JONESWORKS_00039316 - JONESWORKS_00039319 |
| 367  Deposition of Gordon Duren, Exh. #032 | | JONESWORKS_00039323 - JONESWORKS_00039345 |
| 368  Deposition of Gordon Duren, Exh. #034 | | JONESWORKS_00038883 - JONESWORKS_00038887 |
| 369  Deposition of Gordon Duren, Exh. #036 | | JONESWORKS_00039444 - JONESWORKS_00039462 |
| 370  Deposition of Gordon Duren, Exh. #038 | | JONESWORKS_00039029 - JONESWORKS_00039034 |
| 371  Deposition of Gordon Duren, Exh. #039 | | JONESWORKS_00039075 - JONESWORKS_00039077 |
| 372  Deposition of Gordon Duren, Exh. #041 | | JONESWORKS_00040304 - JONESWORKS_00040310 |
| 373  Deposition of Gordon Duren, Exh. #042 | | JONESWORKS_00038892 - JONESWORKS_00038893 |
| 374  Deposition of Gordon Duren, Exh. #044 | | ABEL_000002187 - ABEL_000002187 |
| 375  Deposition of Gordon Duren, Exh. #045 | | JONESWORKS_00040213 - JONESWORKS_00040224 |
| 376  Deposition of Gordon Duren, Exh. #046 | | JONESWORKS_00038853 - JONESWORKS_00038857 |
| 377  Deposition of Gordon Duren, Exh. #056 | | JONESWORKS_00039528 - JONESWORKS_00039540 |
| 378  Deposition of Gordon Duren, Exh. #100 | | |
| 379  Deposition of Gordon Duren, Exh. #101 | | |
| 380  Deposition of Gordon Duren, Exh. #102 | | JW0000004 - JW0000012 |
| 381  Deposition of Gordon Duren, Exh. #103 | | |
| 382  Deposition of Gordon Duren, Exh. #104 | | |
| 383  Deposition of Isabela Ferrer | 9/30/2025 | |
| 384  Deposition of Isabela Ferrer, Exh. #01 | | |
| 385  Deposition of Isabela Ferrer, Exh. #02 | | IF_000024 - IF_000024 |
| 386  Deposition of Isabela Ferrer, Exh. #03 | | IF_000015 - IF_000021 |
| 387  Deposition of Isabela Ferrer, Exh. #04 | | BL-000020639 - BL-000020644 |

| Document Description | Date | Bates Range |
|---|---|---|
| 388  Deposition of Isabela Ferrer, Exh. #05 | | BL-000020645 - BL-000020649 |
| 389  Deposition of Isabela Ferrer, Exh. #06 | | IF_000025 - IF_000030 |
| 390  Deposition of Isabela Ferrer, Exh. #07 | | IF_000031 - IF_000033 |
| 391  Deposition of Isabela Ferrer, Exh. #08 | | BL-000019674 - BL-000019678 |
| 392  Deposition of Isabela Ferrer, Exh. #09 | | IF_000022 - IF_000022 |
| 393  Deposition of Isabela Ferrer, Exh. #10 | | IF_000023 - IF_000023 |
| 394  Deposition of Isabela Ferrer, Exh. #11 | | |
| 395  Deposition of Isabela Ferrer, Exh. #12 | | |
| 396  Deposition of Isabela Ferrer, Exh. #13 | | SPE_BL0007253 - SPE_BL0007262 |
| 397  Deposition of Isabela Ferrer, Exh. #14 | | IF_000001 - IF_000002 |
| 398  Deposition of Jamey Heath | 10/8/2025 | |
| 399  Deposition of Jamey Heath | 10/9/2025 | |
| 400  Deposition of Jamey Heath, Exh. #01 | | HEATH_000034943 - HEATH_000034970 |
| 401  Deposition of Jamey Heath, Exh. #02 | | AS000008 - AS000008 |
| 402  Deposition of Jamey Heath, Exh. #03 | | HEATH_000048501 - HEATH_000048501 |
| 403  Deposition of Jamey Heath, Exh. #04 | | HEATH_000048499 - HEATH_000048500 |
| 404  Deposition of Jamey Heath, Exh. #05 | | SPE_BL0000001 - SPE_BL0000140 |
| 405  Deposition of Jamey Heath, Exh. #06 | | BALDONI_000018877 - BALDONI_000018878 |
| 406  Deposition of Jamey Heath, Exh. #07 | | BALDONI_000033491 - BALDONI_000033495 |
| 407  Deposition of Jamey Heath, Exh. #08 | | BALDONI_000018879 - BALDONI_000018881 |
| 408  Deposition of Jamey Heath, Exh. #09 | | BL-000021306 - BL-000021307 |
| 409  Deposition of Jamey Heath, Exh. #10 | | HEATH_000046126 - HEATH_000046137 |
| 410  Deposition of Jamey Heath, Exh. #11 | | BL-000011580 - BL-000011581 |
| 411  Deposition of Jamey Heath, Exh. #12 | | HEATH_000035492 - HEATH_000035493 |
| 412  Deposition of Jamey Heath, Exh. #13 | | WAYFARER_000140991 - WAYFARER_000140993 |
| 413  Deposition of Jamey Heath, Exh. #14 | | HEATH_000051120 - HEATH_000051125 |
| 414  Deposition of Jamey Heath, Exh. #15 | | |
| 415  Deposition of Jamey Heath, Exh. #16 | | TOSKOVIC_000000677 - TOSKOVIC_000000678 |
| 416  Deposition of Jamey Heath, Exh. #17 | | HEATH_000046882 - HEATH_000046883 |
| 417  Deposition of Jamey Heath, Exh. #18 | | |

| Document Description | Date | Bates Range |
|---|---|---|
| 418  Deposition of Jamey Heath, Exh. #19 | | HEATH_000028187 - HEATH_000028187 |
| 419  Deposition of Jamey Heath, Exh. #20 | | SR1.00000009 - SR1.00000010 |
| 420  Deposition of Jamey Heath, Exh. #21 | | SR1.00000054 - SR1.00000055 |
| 421  Deposition of Jamey Heath, Exh. #22 | | |
| 422  Deposition of Jamey Heath, Exh. #23 | | JONESWORKS_00038539 - JONESWORKS_00038543 |
| 423  Deposition of Jamey Heath, Exh. #24 | | JONESWORKS_00041594 - JONESWORKS_00041596 |
| 424  Deposition of Jamey Heath, Exh. #25 | | JONESWORKS_00041705 - JONESWORKS_00041709 |
| 425  Deposition of Jamey Heath, Exh. #26 | | JONESWORKS_WAYFARER_000003776 - JONESWORKS_WAYFARER_000003776 |
| 426  Deposition of Jamey Heath, Exh. #27 | | JONESWORKS_WAYFARER_000003754 - JONESWORKS_WAYFARER_000003764 |
| 427  Deposition of Jamey Heath, Exh. #28 | | JONESWORKS_WAYFARER_000003838 - JONESWORKS_WAYFARER_000003838 |
| 428  Deposition of Jamey Heath, Exh. #29 | | JONESWORKS_JB_000001142 - JONESWORKS_JB_000001142 |
| 429  Deposition of Jamey Heath, Exh. #30 | | JONESWORKS_00040269 - JONESWORKS_00040273 |
| 430  Deposition of Jamey Heath, Exh. #31 | | HANKS_000000012 - HANKS_000000013 |
| 431  Deposition of Jamey Heath, Exh. #32 | | JONESWORKS_WAYFARER_000004651 - JONESWORKS_WAYFARER_000004652 |
| 432  Deposition of Jamey Heath, Exh. #33 | | JONESWORKS_MN_000001208 - JONESWORKS_MN_000001210 |
| 433  Deposition of Jamey Heath, Exh. #34 | | |
| 434  Deposition of Jamey Heath, Exh. #35 | | HEATH_000046697 - HEATH_000046711 |
| 435  Deposition of Jamey Heath, Exh. #36 | | WAYFARER_000167550 - WAYFARER_000167559 |
| 436  Deposition of Jamey Heath, Exh. #37 | | KCASE-000000369 - KCASE-000000373 |

| Document Description | Date | Bates Range |
|---|---|---|
| 437  Deposition of Jamey Heath, Exh. #38 | | HEATH_000028187 - HEATH_000028187 |
| 438  Deposition of Jamey Heath, Exh. #39 | | JONESWORKS_00014718 - JONESWORKS_00014725 |
| 439  Deposition of Jamey Heath, Exh. #40 | | BL-000038477 - BL-000038515 |
| 440  Deposition of Jed Wallace | 10/9/2025 | |
| 441  Deposition of Jed Wallace | 10/10/2025 | |
| 442  Deposition of Jed Wallace, Exh. #01 | | |
| 443  Deposition of Jed Wallace, Exh. #02 | | STREET1.000007 - STREET1.000008 |
| 444  Deposition of Jed Wallace, Exh. #03 | | STREET1.000084 - STREET1.000085 |
| 445  Deposition of Jed Wallace, Exh. #04 | | STREET1.000087 - STREET1.000087 |
| 446  Deposition of Jed Wallace, Exh. #05 | | STREET3.000304 - STREET3.000307 |
| 447  Deposition of Jed Wallace, Exh. #06 | | STREET3.000297 - STREET3.000301 |
| 448  Deposition of Jed Wallace, Exh. #07 | | STREET3.000199 - STREET3.000201 |
| 449  Deposition of Jed Wallace, Exh. #08 | | STREET3.000499 - STREET3.000501 |
| 450  Deposition of Jed Wallace, Exh. #09 | | STREET3.000204 - STREET3.000205 |
| 451  Deposition of Jed Wallace, Exh. #10 | | STREET3.000366 - STREET3.000368 |
| 452  Deposition of Jed Wallace, Exh. #11 | | STREET3.000486 - STREET3.000488 |
| 453  Deposition of Jed Wallace, Exh. #12 | | STREET3.000363 - STREET3.000363 |
| 454  Deposition of Jed Wallace, Exh. #13 | | STREET3.000302 - STREET3.000303 |
| 455  Deposition of Jed Wallace, Exh. #14 | | STREET3.000495 - STREET3.000498 |
| 456  Deposition of Jed Wallace, Exh. #15 | | STREET3.000381 - STREET3.000381 |
| 457  Deposition of Jed Wallace, Exh. #16 | | STREET3.000373 - STREET3.000375 |
| 458  Deposition of Jed Wallace, Exh. #17 | | STREET3.000384 - STREET3.000385 |
| 459  Deposition of Jed Wallace, Exh. #18 | | STREET3.000348 - STREET3.000355 |
| 460  Deposition of Jed Wallace, Exh. #19 | | STREET1.000001 - STREET1.000002 |

| Document Description | Date | Bates Range |
|---|---|---|
| 461  Deposition of Jed Wallace, Exh. #20 | | NATHAN_000003767 - NATHAN_000003768 |
| 462  Deposition of Jed Wallace, Exh. #21 | | STREET1.000091 - STREET1.000105 |
| 463  Deposition of Jed Wallace, Exh. #22 | | STREET3.000278 - STREET3.000280 |
| 464  Deposition of Jed Wallace, Exh. #23 | | STREET3.000276 - STREET3.000277 |
| 465  Deposition of Jed Wallace, Exh. #24 | | STREET3.000281 - STREET3.000295 |
| 466  Deposition of Jed Wallace, Exh. #25 | | STREET3.000383 - STREET3.000383 |
| 467  Deposition of Jed Wallace, Exh. #26 | | STREET1.000027 - STREET1.000034 |
| 468  Deposition of Jed Wallace, Exh. #27 | | STREET1.000005 - STREET1.000005 |
| 469  Deposition of Jed Wallace, Exh. #28 | | JONESWORKS_00017110 - JONESWORKS_00017111 |
| 470  Deposition of Jed Wallace, Exh. #29 | | KCASE-000004802 - KCASE-000004805 |
| 471  Deposition of Jed Wallace, Exh. #30 | | BBKOSLOW-000002008 - BBKOSLOW-000002014 |
| 472  Deposition of Jed Wallace, Exh. #31 | | BBKOSLOW-000001988 - BBKOSLOW-000001992 |
| 473  Deposition of Jed Wallace, Exh. #32 | | BBKOSLOW-000004011 - BBKOSLOW-000004020 |
| 474  Deposition of Jed Wallace, Exh. #32 | | BBKOSLOW-000004063 - BBKOSLOW-000004063 |
| 475  Deposition of Jed Wallace, Exh. #33 | | BBKOSLOW-000006742 - BBKOSLOW-000006743 |
| 476  Deposition of Jed Wallace, Exh. #34 | | STREET3.000268 - STREET3.000274 |
| 477  Deposition of Jed Wallace, Exh. #35 | | STREET3.000260 - STREET3.000267 |
| 478  Deposition of Jed Wallace, Exh. #36 | | STREET3.000433 - STREET3.000439 |
| 479  Deposition of Jed Wallace, Exh. #37 | | |
| 480  Deposition of Jed Wallace, Exh. #38 | | SKYLINE_000000280 - SKYLINE_000000280 |
| 481  Deposition of Jed Wallace, Exh. #39 | | SKYLINE_000000281 - SKYLINE_000000281 |
| 482  Deposition of Jed Wallace, Exh. #40 | | SKYLINE_000000299 - SKYLINE_000000299 |
| 483  Deposition of Jed Wallace, Exh. #41 | | SKYLINE_000000235 - SKYLINE_000000277 |

| Document Description | Date | Bates Range |
|---|---|---|
| 484  Deposition of Jed Wallace, Exh. #42 | | NATHAN_000003131 - NATHAN_000003142 |
| 485  Deposition of Jed Wallace, Exh. #43 | | |
| 486  Deposition of Jed Wallace, Exh. #44 | | |
| 487  Deposition of Jed Wallace, Exh. #45 | | |
| 488  Deposition of Jed Wallace, Exh. #46 | | |
| 489  Deposition of Jed Wallace, Exh. #47 | | |
| 490  Deposition of Jed Wallace, Exh. #48 | | |
| 491  Deposition of Jed Wallace, Exh. #49 | | |
| 492  Deposition of Jed Wallace, Exh. #50 | | |
| 493  Deposition of Jed Wallace, Exh. #51 | | |
| 494  Deposition of Jed Wallace, Exh. #52 | | KCASE-000004949 - KCASE-000004962 |
| 495  Deposition of Jed Wallace, Exh. #53 | | KCASE-000004957 - KCASE-000004957 |
| 496  Deposition of Jed Wallace, Exh. #54 | | |
| 497  Deposition of Jed Wallace, Exh. #55 | | |
| 498  Deposition of Jed Wallace, Exh. #56 | | |
| 499  Deposition of Jed Wallace, Exh. #57 | | |
| 500  Deposition of Jed Wallace, Exh. #58 | | |
| 501  Deposition of Jed Wallace, Exh. #59 | | |
| 502  Deposition of Jed Wallace, Exh. #60 | | |
| 503  Deposition of Jed Wallace, Exh. #61 | | |
| 504  Deposition of Jed Wallace, Exh. #62 | | |
| 505  Deposition of Jed Wallace, Exh. #63 | | |
| 506  Deposition of Jed Wallace, Exh. #64 | | |
| 507  Deposition of Jed Wallace, Exh. #65 | | |
| 508  Deposition of Jed Wallace, Exh. #66 | | |
| 509  Deposition of Jed Wallace, Exh. #67 | | |
| 510  Deposition of Jed Wallace, Exh. #68 | | |
| 511  Deposition of Jed Wallace, Exh. #69 | | |
| 512  Deposition of Jed Wallace, Exh. #70 | | |
| 513  Deposition of Jed Wallace, Exh. #71 | | |
| 514  Deposition of Jed Wallace, Exh. #72 | | JONESWORKS_MN_000001249 - JONESWORKS_MN_000001258 |
| 515  Deposition of Jed Wallace, Exh. #73 | | SR1.00000077 - SR1.00000081 |
| 516  Deposition of Jed Wallace, Exh. #74 | | KCASE-000000369 - KCASE-000000413 |
| 517  Deposition of Jed Wallace, Exh. #75 | | NATHAN_000002151 - NATHAN_000002156 |

| Document Description | Date | Bates Range |
|---|---|---|
| 518 Deposition of Jed Wallace, Exh. #76 | | STREET3.000471 - STREET3.000474 |
| 519 Deposition of Jed Wallace, Exh. #77 | | BBKOSLOW-000010793 - BBKOSLOW-000010848 |
| 520 Deposition of Jennifer Abel | 9/25/2025 | |
| 521 Deposition of Jennifer Abel | 9/26/2025 | |
| 522 Deposition of Jennifer Abel, Exh. #01 | | JONESWORKS_00041858 - JONESWORKS_00041858 |
| 523 Deposition of Jennifer Abel, Exh. #02 | | JONESWORKS_WAYFARER_000003838 - JONESWORKS_WAYFARER_000003838 |
| 524 Deposition of Jennifer Abel, Exh. #03 | | JONESWORKS_00014176 - JONESWORKS_00014181 |
| 525 Deposition of Jennifer Abel, Exh. #04 | | JONESWORKS_JA_000000309 - JONESWORKS_JA_000000309 |
| 526 Deposition of Jennifer Abel, Exh. #05 | | JONESWORKS_JA_000000789 - JONESWORKS_JA_000000798 |
| 527 Deposition of Jennifer Abel, Exh. #06 | | JONESWORKS_JA_000001063 - JONESWORKS_JA_000001064 |
| 528 Deposition of Jennifer Abel, Exh. #07 | | JONESWORKS_00040860 - JONESWORKS_00040860 |
| 529 Deposition of Jennifer Abel, Exh. #08 | | |
| 530 Deposition of Jennifer Abel, Exh. #09 | | JONESWORKS_00040862 - JONESWORKS_00040862 |
| 531 Deposition of Jennifer Abel, Exh. #10 | | |
| 532 Deposition of Jennifer Abel, Exh. #11 | | JONESWORKS_00041616 - JONESWORKS_00041619 |
| 533 Deposition of Jennifer Abel, Exh. #12 | | JONESWORKS_JA_000006538 - JONESWORKS_JA_000006541 |
| 534 Deposition of Jennifer Abel, Exh. #13 | | JONESWORKS_JA_000006416 - JONESWORKS_JA_000006418 |
| 535 Deposition of Jennifer Abel, Exh. #14 | | JONESWORKS_00012591 - JONESWORKS_00012592 |
| 536 Deposition of Jennifer Abel, Exh. #15 | | JONESWORKS_00013939 - JONESWORKS_00013940 |
| 537 Deposition of Jennifer Abel, Exh. #16 | | KCASE-000000585 - KCASE-000000587 |
| 538 Deposition of Jennifer Abel, Exh. #17 | | JONESWORKS_00039971 - JONESWORKS_00039976 |
| 539 Deposition of Jennifer Abel, Exh. #18 | | |

| Document Description | Date | Bates Range |
|---|---|---|
| 540  Deposition of Jennifer Abel, Exh. #19 | | BBKOSLOW-000008776 - BBKOSLOW-000008781 |
| 541  Deposition of Jennifer Abel, Exh. #20 | | JONESWORKS_00013943 - JONESWORKS_00013951 |
| 542  Deposition of Jennifer Abel, Exh. #21 | | |
| 543  Deposition of Jennifer Abel, Exh. #22 | | JONESWORKS_00014116 - JONESWORKS_00014117 |
| 544  Deposition of Jennifer Abel, Exh. #23 | | JONESWORKS_JA_000000774 - JONESWORKS_JA_000000774 |
| 545  Deposition of Jennifer Abel, Exh. #24 | | NATHAN_000002110 - NATHAN_000002118 |
| 546  Deposition of Jennifer Abel, Exh. #25 | | JONESWORKS_00012448 - JONESWORKS_00012449 |
| 547  Deposition of Jennifer Abel, Exh. #26 | | NATHAN_000002124 - NATHAN_000002136 |
| 548  Deposition of Jennifer Abel, Exh. #27 | | JONESWORKS_00016169 - JONESWORKS_00016170 |
| 549  Deposition of Jennifer Abel, Exh. #28 | | JONESWORKS_00037494 - JONESWORKS_00037496 |
| 550  Deposition of Jennifer Abel, Exh. #29 | | JONESWORKS_MN_000001652 - JONESWORKS_MN_000001659 |
| 551  Deposition of Jennifer Abel, Exh. #30 | | JONESWORKS_JA_000001701 - JONESWORKS_JA_000001702 |
| 552  Deposition of Jennifer Abel, Exh. #31 | | NATHAN_000002266 - NATHAN_000002286 |
| 553  Deposition of Jennifer Abel, Exh. #32 | | JONESWORKS_JA_000006751 - JONESWORKS_JA_000006754 |
| 554  Deposition of Jennifer Abel, Exh. #33 | | JONESWORKS_00037277 - JONESWORKS_00037277 |
| 555  Deposition of Jennifer Abel, Exh. #33 | | JONESWORKS_00037279 - JONESWORKS_00037279 |
| 556  Deposition of Jennifer Abel, Exh. #34 | | JONESWORKS_00004655 - JONESWORKS_00004808 |
| 557  Deposition of Jennifer Abel, Exh. #35 | | JONESWORKS_00041606 - JONESWORKS_00041608 |
| 558  Deposition of Jennifer Abel, Exh. #36 | | JONESWORKS_00037270 - JONESWORKS_00037273 |
| 559  Deposition of Jennifer Abel, Exh. #37 | | JONESWORKS_00012849 - JONESWORKS_00012852 |
| 560  Deposition of Jennifer Abel, Exh. #38 | | JONESWORKS_00013035 - JONESWORKS_00013041 |

| Document Description | Date | Bates Range |
|---|---|---|
| 561  Deposition of Jennifer Abel, Exh. #39 | | ABEL_000006281 - ABEL_000006289 |
| 562  Deposition of Jennifer Abel, Exh. #40 | | JONESWORKS_00012461 - JONESWORKS_00012462 |
| 563  Deposition of Jennifer Abel, Exh. #41 | | JONESWORKS_00014045 - JONESWORKS_00014049 |
| 564  Deposition of Jennifer Abel, Exh. #42 | | HEATH_000031887 - HEATH_000031889 |
| 565  Deposition of Jennifer Abel, Exh. #43 | | JONESWORKS_00007003 - JONESWORKS_00007003 |
| 566  Deposition of Jennifer Abel, Exh. #44 | | JONESWORKS_00014512 - JONESWORKS_00014520 |
| 567  Deposition of Jennifer Abel, Exh. #45 | | JONESWORKS_00013274 - JONESWORKS_00013277 |
| 568  Deposition of Jennifer Abel, Exh. #46 | | WAYFARER_000111054 - WAYFARER_000111056 |
| 569  Deposition of Jennifer Abel, Exh. #47 | | JONESWORKS_00016763 - JONESWORKS_00016768 |
| 570  Deposition of Jennifer Abel, Exh. #48 | | JONESWORKS_00014920 - JONESWORKS_00014922 |
| 571  Deposition of Jennifer Abel, Exh. #49 | | ABEL_000000665 - ABEL_000000671 |
| 572  Deposition of Jennifer Abel, Exh. #50 | | ABEL_000000154 - ABEL_000000187 |
| 573  Deposition of Jennifer Abel, Exh. #51 | | JONESWORKS_00020981 - JONESWORKS_00020982 |
| 574  Deposition of Jennifer Abel, Exh. #52 | | JONESWORKS_00015997 - JONESWORKS_00016003 |
| 575  Deposition of Jennifer Abel, Exh. #53 | | JONESWORKS_00015509 - JONESWORKS_00015514 |
| 576  Deposition of Jennifer Abel, Exh. #54 | | JONESWORKS_00014980 - JONESWORKS_00014982 |
| 577  Deposition of Jennifer Abel, Exh. #55 | | SPE_BL0009086 - SPE_BL0009086 |
| 578  Deposition of Jennifer Abel, Exh. #56 | | JONESWORKS_00014504 - JONESWORKS_00014511 |
| 579  Deposition of Jennifer Abel, Exh. #57 | | BALDONI_000020412 - BALDONI_000020417 |
| 580  Deposition of Jennifer Abel, Exh. #58 | | JONESWORKS_00013485 - JONESWORKS_00013487 |
| 581  Deposition of Jennifer Abel, Exh. #59 | | JONESWORKS_00012765 - JONESWORKS_00012769 |
| 582  Deposition of Jennifer Abel, Exh. #60 | | JONESWORKS_00013779 - JONESWORKS_00013780 |
| 583  Deposition of Jennifer Abel, Exh. #61 | | JONESWORKS_00016225 - JONESWORKS_00016234 |

| Document Description | Date | Bates Range |
|---|---|---|
| 584  Deposition of Jennifer Abel, Exh. #62 | | JONESWORKS_00037247 - JONESWORKS_00037248 |
| 585  Deposition of Jennifer Abel, Exh. #63 | | JONESWORKS_00016237 - JONESWORKS_00016239 |
| 586  Deposition of Jennifer Abel, Exh. #64 | | NATHAN_000000556 - NATHAN_000000564 |
| 587  Deposition of Jennifer Abel, Exh. #65 | | HEATH_000028187 - HEATH_000028187 |
| 588  Deposition of Jennifer Abel, Exh. #66 | | NATHAN_000003599 - NATHAN_000003611 |
| 589  Deposition of Jennifer Abel, Exh. #67 | | ABEL_000005635 - ABEL_000005635 |
| 590  Deposition of Jennifer Abel, Exh. #68 | | JONESWORKS_00013830 - JONESWORKS_00013831 |
| 591  Deposition of Jennifer Abel, Exh. #69 | | NATHAN_000002151 - NATHAN_000002156 |
| 592  Deposition of Jennifer Abel, Exh. #70 | | JONESWORKS_00014019 - JONESWORKS_00014029 |
| 593  Deposition of Jennifer Abel, Exh. #71 | | JONESWORKS_00014205 - JONESWORKS_00014207 |
| 594  Deposition of Jennifer Abel, Exh. #72 | | NATHAN_000000515 - NATHAN_000000521 |
| 595  Deposition of Jennifer Abel, Exh. #73 | | JONESWORKS_00013334 - JONESWORKS_00013335 |
| 596  Deposition of Jennifer Abel, Exh. #74 | | NATHAN_000002730 - NATHAN_000002733 |
| 597  Deposition of Jennifer Abel, Exh. #74 | | NATHAN_000002736 - NATHAN_000002737 |
| 598  Deposition of Jennifer Abel, Exh. #75 | | JONESWORKS_00016275 - JONESWORKS_00016287 |
| 599  Deposition of Jennifer Abel, Exh. #76 | | ABEL_000019590 - ABEL_000019591 |
| 600  Deposition of Jennifer Abel, Exh. #77 | | ABEL_000019529 - ABEL_000019534 |
| 601  Deposition of Jennifer Abel, Exh. #78 | | ABEL_000019514 - ABEL_000019521 |
| 602  Deposition of Jennifer Abel, Exh. #79 | | ABEL_000006072 - ABEL_000006078 |
| 603  Deposition of Jenny Slate | 9/26/2025 | |
| 604  Deposition of Jenny Slate, Exh. #01 | | |
| 605  Deposition of Jenny Slate, Exh. #02 | | |
| 606  Deposition of Jenny Slate, Exh. #03 | | BL-000020754 - BL-000020755 |
| 607  Deposition of Jenny Slate, Exh. #04 | | BL-000020756 - BL-000020759 |
| 608  Deposition of Jenny Slate, Exh. #05 | | JS0000368 - JS0000373 |

| Document Description | Date | Bates Range |
|---|---|---|
| 609 Deposition of Jenny Slate, Exh. #06 | | HEATH_000033626 - HEATH_000033632 |
| 610 Deposition of Jenny Slate, Exh. #07 | | JS0000374 - JS0000376 |
| 611 Deposition of Jenny Slate, Exh. #08 | | JS0000506 - JS0000507 |
| 612 Deposition of Jenny Slate, Exh. #09 | | JS0000292 - JS0000293 |
| 613 Deposition of Jenny Slate, Exh. #10 | | JS0000379 - JS0000383 |
| 614 Deposition of Jenny Slate, Exh. #11 | | JS0000307 - JS0000310 |
| 615 Deposition of Jenny Slate, Exh. #12 | | JS0000333 - JS0000335 |
| 616 Deposition of Jenny Slate, Exh. #13 | | JS0000336 - JS0000344 |
| 617 Deposition of Jenny Slate, Exh. #14 | | BL-000020861 - BL-000020868 |
| 618 Deposition of Jenny Slate, Exh. #15 | | JS0000297 - JS0000298 |
| 619 Deposition of Jenny Slate, Exh. #16 | | JS0000283 - JS0000288 |
| 620 Deposition of Jenny Slate, Exh. #17 | | JS0000520 - JS0000522 |
| 621 Deposition of Jenny Slate, Exh. #18 | | JS0000512 - JS0000514 |
| 622 Deposition of Jenny Slate, Exh. #19 | | JS0000326 - JS0000329 |
| 623 Deposition of Jenny Slate, Exh. #20 | | BL-000021016 - BL-000021018 |
| 624 Deposition of Jenny Slate, Exh. #21 | | JS0000504 - JS0000505 |
| 625 Deposition of Jenny Slate, Exh. #22 | | JS0000492 - JS0000494 |
| 626 Deposition of Jenny Slate, Exh. #23 | | JS0000394 - JS0000399 |
| 627 Deposition of Jenny Slate, Exh. #24 | | BL-000020925 - BL-000020927 |
| 628 Deposition of Jenny Slate, Exh. #25 | | IF_000015 - IF_000021 |
| 629 Deposition of Jenny Slate, Exh. #26 | | |
| 630 Deposition of Jenny Slate, Exh. #27 | | |
| 631 Deposition of Jenny Slate, Exh. #28 | | JS0000390 - JS0000393 |
| 632 Deposition of Josh Greenstein | 9/30/2025 | |
| 633 Deposition of Josh Greenstein, Exh. #01 | | BL-000016252 - BL-000016252 |
| 634 Deposition of Josh Greenstein, Exh. #02 | | SPE_BL0000001 - SPE_BL0000140 |
| 635 Deposition of Josh Greenstein, Exh. #03 | | SPE_WF0000403 - SPE_WF0000404 |
| 636 Deposition of Josh Greenstein, Exh. #04 | | SPE_BL0005326 - SPE_BL0005328 |
| 637 Deposition of Josh Greenstein, Exh. #05 | | SPE_BL0003308 - SPE_BL0003314 |
| 638 Deposition of Josh Greenstein, Exh. #06 | | SPE_BL0006375 - SPE_BL0006396 |
| 639 Deposition of Josh Greenstein, Exh. #07 | | SPE_BL0002044 - SPE_BL0002046 |
| 640 Deposition of Josh Greenstein, Exh. #08 | | SPE_BL0007468 - SPE_BL0007468 |
| 641 Deposition of Josh Greenstein, Exh. #09 | | SPE_BL0001762 - SPE_BL0001768 |
| 642 Deposition of Josh Greenstein, Exh. #10 | | BL-000018992 - BL-000018993 |

| Document Description | Date | Bates Range |
|---|---|---|
| 643  Deposition of Josh Greenstein, Exh. #11 | | BL-000018994 - BL-000018995 |
| 644  Deposition of Josh Greenstein, Exh. #12 | | BL-000001059 - BL-000001062 |
| 645  Deposition of Josh Greenstein, Exh. #13 | | BL-000019036 - BL-000019037 |
| 646  Deposition of Josh Greenstein, Exh. #14 | | BL-000019122 - BL-000019123 |
| 647  Deposition of Josh Greenstein, Exh. #15 | | SPE_BL0007874 - SPE_BL0007877 |
| 648  Deposition of Josh Greenstein, Exh. #16 | | BL-000019158 - BL-000019159 |
| 649  Deposition of Josh Greenstein, Exh. #17 | | SPE_BL0007900 - SPE_BL0007919 |
| 650  Deposition of Josh Greenstein, Exh. #18 | | BL-000019218 - BL-000019219 |
| 651  Deposition of Josh Greenstein, Exh. #19 | | RR-SUBPOENA-000000085 - RR-SUBPOENA-000000086 |
| 652  Deposition of Josh Greenstein, Exh. #20 | | SPE_WF0000551 - SPE_WF0000553 |
| 653  Deposition of Josh Greenstein, Exh. #21 | | BL-000019326 - BL-000019330 |
| 654  Deposition of Josh Greenstein, Exh. #22 | | SPE_BL0008046 - SPE_BL0008046 |
| 655  Deposition of Josh Greenstein, Exh. #23 | | SPE_BL0003031 - SPE_BL0003033 |
| 656  Deposition of Josh Greenstein, Exh. #24 | | SPE_BL0008206 - SPE_BL0008207 |
| 657  Deposition of Josh Greenstein, Exh. #25 | | SPE_BL0003130 - SPE_BL00031306 |
| 658  Deposition of Josh Greenstein, Exh. #26 | | SPE_BL0001905 - SPE_BL0001907 |
| 659  Deposition of Josh Greenstein, Exh. #27 | | SPE_BL0009086 - SPE_BL0009086 |
| 660  Deposition of Josh Greenstein, Exh. #28 | | LS_0000325 - LS_0000327 |
| 661  Deposition of Josh Greenstein, Exh. #29 | | |
| 662  Deposition of Josh Greenstein, Exh. #30 | | JONESWORKS_00014116 - JONESWORKS_00014117 |
| 663  Deposition of Josh Greenstein, Exh. #31 | | SPE_BL0009980 - SPE_BL0009981 |
| 664  Deposition of Josh Greenstein, Exh. #32 | | BL-000019511 - BL-000019516 |
| 665  Deposition of Josh Greenstein, Exh. #33 | | SPE_BL0003328 - SPE_BL0003335 |
| 666  Deposition of Josh Greenstein, Exh. #34 | | SPE_BL0004526 - SPE_BL0004527 |
| 667  Deposition of Josh Greenstein, Exh. #35 | | SPE_BL0023201 - SPE_BL0023202 |
| 668  Deposition of Josh Greenstein, Exh. #36 | | SPE_BL0008472 - SPE_BL0008473 |
| 669  Deposition of Josh Greenstein, Exh. #37 | | SPE_WF0000740 - SPE_WF0000744 |

| Document Description | Date | Bates Range |
|---|---|---|
| 670 Deposition of Josh Greenstein, Exh. #38 | | SPE_BL0021955 - SPE_BL0021955 |
| 671 Deposition of Josh Greenstein, Exh. #39 | | SPE_BL0023149 - SPE_BL0023150 |
| 672 Deposition of Josh Greenstein, Exh. #40 | | SPE_BL0023136 - SPE_BL0023137 |
| 673 Deposition of Josh Greenstein, Exh. #41 | | SPE_BL0022891 - SPE_BL0022893 |
| 674 Deposition of Josh Greenstein, Exh. #42 | | SPE_WF0000624 - SPE_WF0000627 |
| 675 Deposition of Josh Greenstein, Exh. #43 | | SPE_BL0022958 - SPE_BL0022959 |
| 676 Deposition of Josh Greenstein, Exh. #44 | | SPE_BL0022803 - SPE_BL0022807 |
| 677 Deposition of Josh Greenstein, Exh. #45 | | SPE_WF0000460 - SPE_WF0000461 |
| 678 Deposition of Josh Greenstein, Exh. #46 | | SPE_BL0022999 - SPE_BL0023000 |
| 679 Deposition of Josh Greenstein, Exh. #47 | | SPE_BL0022682 - SPE_BL0022687 |
| 680 Deposition of Josh Greenstein, Exh. #48 | | SPE_WF0000566 - SPE_WF0000567 |
| 681 Deposition of Josh Greenstein, Exh. #49 | | SPE_WF0000566 - SPE_WF0000567 |
| 682 Deposition of Josh Greenstein, Exh. #50 | | SPE_BL0007970 - SPE_BL0007970 |
| 683 Deposition of Josh Greenstein, Exh. #51 | | SPE_BL0022872 - SPE_BL0022878 |
| 684 Deposition of Josh Greenstein, Exh. #52 | | SPE_BL0022883 - SPE_BL0022884 |
| 685 Deposition of Josh Greenstein, Exh. #53 | | SPE_BL0008430 - SPE_BL0008433 |
| 686 Deposition of Justin Baldoni | 10/6/2025 | |
| 687 Deposition of Justin Baldoni, Exh. #01 | | JONESWORKS_JB_000001434 - JONESWORKS_JB_000001441 |
| 688 Deposition of Justin Baldoni, Exh. #02 | | JONESWORKS_00015478 - JONESWORKS_00015481 |
| 689 Deposition of Justin Baldoni, Exh. #03 | | JONESWORKS_JB_000000651 - JONESWORKS_JB_000000651 |
| 690 Deposition of Justin Baldoni, Exh. #04 | | JONESWORKS_00016169 - JONESWORKS_00016170 |
| 691 Deposition of Justin Baldoni, Exh. #05 | | JONESWORKS_00039735 - JONESWORKS_00039736 |

| Document Description | Date | Bates Range |
|---|---|---|
| 692  Deposition of Justin Baldoni, Exh. #06 | | JONESWORKS_JB_000001142 - JONESWORKS_JB_000001142 |
| 693  Deposition of Justin Baldoni, Exh. #07 | | |
| 694  Deposition of Justin Baldoni, Exh. #08 | | NATHAN_000003972 - NATHAN_000003982 |
| 695  Deposition of Justin Baldoni, Exh. #09 | | NATHAN_000004552 - NATHAN_000004591 |
| 696  Deposition of Justin Baldoni, Exh. #10 | | NATHAN_000001221 - NATHAN_000001227 |
| 697  Deposition of Justin Baldoni, Exh. #11 | | KCASE-000004949 - KCASE-000004962 |
| 698  Deposition of Justin Baldoni, Exh. #12 | | JONESWORKS_00041606 - JONESWORKS_00041608 |
| 699  Deposition of Justin Baldoni, Exh. #13 | | NATHAN_000002938 - NATHAN_000002940 |
| 700  Deposition of Justin Baldoni, Exh. #14 | | JONESWORKS_00013939 - JONESWORKS_00013940 |
| 701  Deposition of Justin Baldoni, Exh. #15 | | JONESWORKS_00041609 - JONESWORKS_00041612 |
| 702  Deposition of Justin Baldoni, Exh. #16 | | NATHAN_000000141 - NATHAN_000000151 |
| 703  Deposition of Justin Baldoni, Exh. #17 | | BALDONI_000018710 - BALDONI_000018711 |
| 704  Deposition of Justin Baldoni, Exh. #18 | | NATHAN_000004562 - NATHAN_000004563 |
| 705  Deposition of Justin Baldoni, Exh. #19 | | JONESWORKS_MN_000002208 - JONESWORKS_MN_000002210 |
| 706  Deposition of Justin Baldoni, Volume 2 | 10/7/2025 | |
| 707  Deposition of Justin Baldoni, Volume 2, Exh. #20 | | WAYFARER_000139046 - WAYFARER_000139046 |
| 708  Deposition of Justin Baldoni, Volume 2, Exh. #20 | | WAYFARER_000139049 - WAYFARER_000139076 |
| 709  Deposition of Justin Baldoni, Volume 2, Exh. #21 | | HEATH_000031887 - HEATH_000031889 |
| 710  Deposition of Justin Baldoni, Volume 2, Exh. #22 | | SPE_BL0002193 - SPE_BL0002197 |
| 711  Deposition of Justin Baldoni, Volume 2, Exh. #23 | | BALDONI_000026086 - BALDONI_000026090 |
| 712  Deposition of Justin Baldoni, Volume 2, Exh. #24 | | BALDONI_000030723 - BALDONI_000030723 |
| 713  Deposition of Justin Baldoni, Volume 2, Exh. #25 | | BALDONI_000003641 - BALDONI_000003759 |

| Document Description | Date | Bates Range |
|---|---|---|
| 714  Deposition of Justin Baldoni, Volume 2, Exh. #26 | | BALDONI_000031947 - BALDONI_000031950 |
| 715  Deposition of Justin Baldoni, Volume 2, Exh. #27 | | JS0000224 - JS0000225 |
| 716  Deposition of Justin Baldoni, Volume 2, Exh. #28 | | JONESWORKS_00013502 - JONESWORKS_00013503 |
| 717  Deposition of Justin Baldoni, Volume 2, Exh. #29 | | TOSKOVIC_000000089 - TOSKOVIC_000000097 |
| 718  Deposition of Justin Baldoni, Volume 2, Exh. #29 | | TOSKOVIC_000000103 - TOSKOVIC_000000103 |
| 719  Deposition of Justin Baldoni, Volume 2, Exh. #30 | | SPE_BL0002026 - SPE_BL0002035 |
| 720  Deposition of Justin Baldoni, Volume 2, Exh. #31 | | BALDONI_000016447 - BALDONI_000016452 |
| 721  Deposition of Justin Baldoni, Volume 2, Exh. #32 | | BALDONI_000026193 - BALDONI_000026198 |
| 722  Deposition of Justin Baldoni, Volume 2, Exh. #33 | | BL-000038461 - BL-000038462 |
| 723  Deposition of Justin Baldoni, Volume 2, Exh. #34 | | BALDONI_000026204 - BALDONI_000026206 |
| 724  Deposition of Justin Baldoni, Volume 2, Exh. #35 | | BALDONI_000018852 - BALDONI_000018856 |
| 725  Deposition of Justin Baldoni, Volume 2, Exh. #36 | | BALDONI_000033560 - BALDONI_000033566 |
| 726  Deposition of Justin Baldoni, Volume 2, Exh. #37 | | SPE_BL0005563 - SPE_BL0005564 |
| 727  Deposition of Justin Baldoni, Volume 2, Exh. #38 | | NATHAN_000005497 - NATHAN_000005506 |
| 728  Deposition of Justin Baldoni, Volume 2, Exh. #39 | | BALDONI_000015407 - BALDONI_000015409 |
| 729  Deposition of Justin Grey Stone | 10/6/2025 | |
| 730  Deposition of Justin Grey Stone, Exh. #01 | | BL-000021684 - BL-000021685 |
| 731  Deposition of Justin Grey Stone, Exh. #02 | | BL-000038655 - BL-000038668 |
| 732  Deposition of Justin Grey Stone, Exh. #03 | | BL-000022174 - BL-000022177 |
| 733  Deposition of Justin Grey Stone, Exh. #04 | | HEATH_000046721 - HEATH_000046722 |
| 734  Deposition of Justin Grey Stone, Exh. #05 | | |
| 735  Deposition of Justin Grey Stone, Exh. #06 | | BL-000022322 - BL-000022324 |
| 736  Deposition of Justin Grey Stone, Exh. #07 | | BL-000022327 - BL-000022330 |
| 737  Deposition of Justin Grey Stone, Exh. #08 | | BL-000025285 - BL-000025287 |
| 738  Deposition of Justin Grey Stone, Exh. #09 | | BL-000022496 - BL-000022498 |
| 739  Deposition of Justin Grey Stone, Exh. #10 | | WME_00000801 - WME_00000804 |
| 740  Deposition of Justin Grey Stone, Exh. #11 | | BL-000026788 - BL-000026789 |
| 741  Deposition of Justin Grey Stone, Exh. #12 | | BL-000026845 - BL-000026847 |

| Document Description | Date | Bates Range |
|---|---|---|
| 742  Deposition of Justin Grey Stone, Exh. #13 | | SPE_BL0009270 - SPE_BL0009277 |
| 743  Deposition of Justin Grey Stone, Exh. #14 | | WME_00001076 - WME_00001081 |
| 744  Deposition of Justin Grey Stone, Exh. #15 | | BL-000038889 - BL-000038936 |
| 745  Deposition of Justin Grey Stone, Exh. #16 | | BL-000038967 - BL-000039011 |
| 746  Deposition of Justin Grey Stone, Exh. #17 | | BL-000038863 - BL-000038880 |
| 747  Deposition of Justin Grey Stone, Exh. #18 | | BL-000039014 - BL-000039054 |
| 748  Deposition of Justin Grey Stone, Exh. #19 | | BL-000021911 - BL-000021955 |
| 749  Deposition of Justin Grey Stone, Exh. #20 | | HEATH_000041864 - HEATH_000041899 |
| 750  Deposition of Justin Grey Stone, Exh. #21 | | VPR_0000852 - VPR_0000854 |
| 751  Deposition of Justin Grey Stone, Exh. #22 | | BL-000039184 - BL-000039193 |
| 752  Deposition of Justin Grey Stone, Exh. #23 | | BL-000039060 - BL-000039074 |
| 753  Deposition of Justin Grey Stone, Exh. #24 | | BL-000039107 - BL-000039108 |
| 754  Deposition of Justin Grey Stone, Exh. #25 | | BL-000016446 - BL-000016446 |
| 755  Deposition of Justine Harris | 9/30/2025 | |
| 756  Deposition of Justine Harris, Exh. #1 | | VANZAN_000001 - VANZAN_000011 |
| 757  Deposition of Justine Harris, Exh. #2 | | VANZAN_000028 - VANZAN_000028 |
| 758  Deposition of Justine Harris, Exh. #4 | | VANZAN_000044 - VANZAN_000051 |
| 759  Deposition of Justine Harris, Exh. #5 | | |
| 760  Deposition of Katherine Case | 9/5/2025 | |
| 761  Deposition of Katherine Case, Exh. #01 | | HEATH_000031737 - HEATH_000031740 |
| 762  Deposition of Katherine Case, Exh. #02 | | KCASE-000001190 - KCASE-000001193 |
| 763  Deposition of Katherine Case, Exh. #03 | | KCASE-000001842 - KCASE-000001842 |
| 764  Deposition of Katherine Case, Exh. #04 | | KCASE-000004176 - KCASE-000004182 |
| 765  Deposition of Katherine Case, Exh. #05 | | KCASE-000004208 - KCASE-000004211 |
| 766  Deposition of Katherine Case, Exh. #06 | | KCASE-000001079 - KCASE-000001083 |
| 767  Deposition of Katherine Case, Exh. #07 | | KCASE-000003856 - KCASE-000003870 |
| 768  Deposition of Katherine Case, Exh. #08 | | KCASE-000004949 - KCASE-000004954 |
| 769  Deposition of Katherine Case, Exh. #09 | | KCASE-000004802 - KCASE-000004805 |

| Document Description | Date | Bates Range |
|---|---|---|
| 770 Deposition of Katherine Case, Exh. #10 | | KCASE-000000414 - KCASE-000000424 |
| 771 Deposition of Katherine Case, Exh. #11 | | HEATH_000028187 - HEATH_000028187 |
| 772 Deposition of Katherine Case, Exh. #12 | | KCASE-000001511 - KCASE-000001520 |
| 773 Deposition of Katherine Case, Exh. #13 | | KCASE-000000728 - KCASE-000000763 |
| 774 Deposition of Katherine Case, Exh. #14 | | KCASE-000001785 - KCASE-000001794 |
| 775 Deposition of Katherine Case, Exh. #15 | | KCASE-000001093 - KCASE-000001097 |
| 776 Deposition of Katherine Case, Exh. #16 | | KCASE-000000174 - KCASE-000000188 |
| 777 Deposition of Katherine Case, Exh. #17 | | KCASE-000001540 - KCASE-000001544 |
| 778 Deposition of Katherine Case, Exh. #18 | | KCASE-000003320 - KCASE-000003322 |
| 779 Deposition of Katherine Case, Exh. #19 | | JONESWORKS_00013647 - JONESWORKS_00013649 |
| 780 Deposition of Katherine Case, Exh. #20 | | KCASE-000002919 - KCASE-000002922 |
| 781 Deposition of Katherine Case, Exh. #21 | | KCASE-000001675 - KCASE-000001679 |
| 782 Deposition of Katherine Case, Exh. #22 | | KCASE-000003354 - KCASE-000003366 |
| 783 Deposition of Katherine Case, Exh. #22 | | KCASE-000003368 - KCASE-000003368 |
| 784 Deposition of Katherine Case, Exh. #22 | | KCASE-000003371 - KCASE-000003372 |
| 785 Deposition of Katherine Case, Exh. #22 | | KCASE-000003375 - KCASE-000003379 |
| 786 Deposition of Katherine Case, Exh. #22 | | KCASE-000003382 - KCASE-000003388 |
| 787 Deposition of Katherine Case, Exh. #23 | | KCASE-000002343 - KCASE-000002345 |
| 788 Deposition of Katherine Case, Exh. #24 | | |
| 789 Deposition of Katherine Case, Exh. #25 | | WAYFARER_000140710 - WAYFARER_000140710 |
| 790 Deposition of Katherine Case, Exh. #26 | | KCASE-000003477 - KCASE-000003485 |
| 791 Deposition of Katherine Case, Exh. #27 | | KCASE-000001870 - KCASE-000001876 |
| 792 Deposition of Katherine Case, Exh. #28 | | KCASE-000000585 - KCASE-000000587 |

| Document Description | Date | Bates Range |
|---|---|---|
| 793  Deposition of Katherine Case, Exh. #29 | | KCASE-000005118 - KCASE-000005121 |
| 794  Deposition of Katherine Case, Exh. #30 | | NATHAN_000002828 - NATHAN_000002841 |
| 795  Deposition of Katherine Case, Exh. #31 | | NATHAN_000001746 - NATHAN_000001755 |
| 796  Deposition of Katherine Case, Exh. #32 | | NATHAN_000001180 - NATHAN_000001213 |
| 797  Deposition of Katherine Case, Exh. #33 | | NATHAN_000002842 - NATHAN_000002879 |
| 798  Deposition of Katherine Case, Exh. #33 | | NATHAN_000002900 - NATHAN_000002900 |
| 799  Deposition of Katherine Case, Exh. #33 | | NATHAN_000002906 - NATHAN_000002911 |
| 800  Deposition of Katherine Case, Exh. #33 | | NATHAN_000002917 - NATHAN_000002920 |
| 801  Deposition of Katherine Case, Exh. #33 | | NATHAN_000002923 - NATHAN_000002925 |
| 802  Deposition of Katherine Case, Exh. #34 | | NATHAN_000001719 - NATHAN_000001729 |
| 803  Deposition of Katherine Case, Exh. #35 | | NATHAN_000003131 - NATHAN_000003142 |
| 804  Deposition of Katherine Case, Exh. #36 | | |
| 805  Deposition of Katherine Case, Exh. #37 | | |
| 806  Deposition of Katherine Case, Exh. #38 | | |
| 807  Deposition of Katherine Case, Exh. #39 | | NATHAN_000000141 - NATHAN_000000151 |
| 808  Deposition of Katherine Case, Exh. #40 | | KCASE-000002257 - KCASE-000002264 |
| 809  Deposition of Katherine Case, Exh. #41 | | KCASE-000002938 - KCASE-000002940 |
| 810  Deposition of Katherine Case, Exh. #42 | | NATHAN_000003319 - NATHAN_000003319 |
| 811  Deposition of Katherine Case, Exh. #43 | | KCASE-000003950 - KCASE-000003968 |
| 812  Deposition of Katherine Case, Exh. #44 | | KCASE-000001891 - KCASE-000001897 |
| 813  Deposition of Kevin Alexander | 9/29/2025 | |
| 814  Deposition of Kevin Alexander, Exh. #1 | | |
| 815  Deposition of Leslie Sloane | 9/26/2025 | |
| 816  Deposition of Leslie Sloane, Exh. #100 | | |
| 817  Deposition of Leslie Sloane, Exh. #101 | | JONESWORKS_00040610 - JONESWORKS_00040611 |
| 818  Deposition of Leslie Sloane, Exh. #11 | | LS_0000223 - LS_0000226 |
| 819  Deposition of Leslie Sloane, Exh. #12 | | LS_0000243 - LS_0000246 |

| Document Description | Date | Bates Range |
|---|---|---|
| 820  Deposition of Leslie Sloane, Exh. #13 | | LS_0000314 - LS_0000318 |
| 821  Deposition of Leslie Sloane, Exh. #14 | | LS_0000325 - LS_0000327 |
| 822  Deposition of Leslie Sloane, Exh. #16 | | LS_0000431 - LS_0000434 |
| 823  Deposition of Leslie Sloane, Exh. #17 | | BL-000032291 - BL-000032292 |
| 824  Deposition of Leslie Sloane, Exh. #23 | | VPR_0000048 - VPR_0000049 |
| 825  Deposition of Leslie Sloane, Exh. #27 | | BL-000032519 - BL-000032521 |
| 826  Deposition of Leslie Sloane, Exh. #28 | | LS_0000219 - LS_0000222 |
| 827  Deposition of Leslie Sloane, Exh. #33 | | LS_0000234 - LS_0000237 |
| 828  Deposition of Leslie Sloane, Exh. #33 | | LS_0000239 - LS_0000239 |
| 829  Deposition of Leslie Sloane, Exh. #33 | | LS_0000242 - LS_0000242 |
| 830  Deposition of Leslie Sloane, Exh. #34 | | LS_0000279 - LS_0000280 |
| 831  Deposition of Leslie Sloane, Exh. #37 | | LS_0000185 - LS_0000189 |
| 832  Deposition of Leslie Sloane, Exh. #39 | | LS_0000253 - LS_0000256 |
| 833  Deposition of Leslie Sloane, Exh. #40 | | VPR_0000870 - VPR_0000874 |
| 834  Deposition of Leslie Sloane, Exh. #41 | | VPR_0000877 - VPR_0000877 |
| 835  Deposition of Leslie Sloane, Exh. #42 | | VPR_0000878 - VPR_0000878 |
| 836  Deposition of Leslie Sloane, Exh. #51 | | VPR_0000006 - VPR_0000006 |
| 837  Deposition of Leslie Sloane, Exh. #52 | | VPR_0000111 - VPR_0000111 |
| 838  Deposition of Leslie Sloane, Exh. #55 | | VPR_0000846 - VPR_0000847 |
| 839  Deposition of Margaret Colleen Hoover | 9/29/2025 | |
| 840  Deposition of Margaret Colleen Hoover, Exh. #01 | | WAYFARER_000141660 - WAYFARER_000141662 |
| 841  Deposition of Margaret Colleen Hoover, Exh. #02 | | WAYFARER_000141669 - WAYFARER_000141670 |
| 842  Deposition of Margaret Colleen Hoover, Exh. #03 | | WAYFARER_000141663 - WAYFARER_000141665 |
| 843  Deposition of Margaret Colleen Hoover, Exh. #04 | | BALDONI_000017026 - BALDONI_000017036 |
| 844  Deposition of Margaret Colleen Hoover, Exh. #05 | | HEATH_000048421 - HEATH_000048422 |
| 845  Deposition of Margaret Colleen Hoover, Exh. #06 | | HEATH_000051557 - HEATH_000051558 |
| 846  Deposition of Margaret Colleen Hoover, Exh. #07 | | BALDONI_000033442 - BALDONI_000033443 |
| 847  Deposition of Margaret Colleen Hoover, Exh. #08 | | BALDONI_000033449 - BALDONI_000033449 |
| 848  Deposition of Margaret Colleen Hoover, Exh. #09 | | BL-000027030 - BL-000027033 |
| 849  Deposition of Margaret Colleen Hoover, Exh. #10 | | BL-000027039 - BL-000027043 |
| 850  Deposition of Margaret Colleen Hoover, Exh. #11 | | BL-000027086 - BL-000027087 |
| 851  Deposition of Margaret Colleen Hoover, Exh. #12 | | BL-000018583 - BL-000018584 |
| 852  Deposition of Margaret Colleen Hoover, Exh. #13 | | BL-000039197 - BL-000039201 |
| 853  Deposition of Margaret Colleen Hoover, Exh. #14 | | SPE_BL0007880 - SPE_BL0007888 |

| Document Description | Date | Bates Range |
|---|---|---|
| 854 Deposition of Margaret Colleen Hoover, Exh. #15 | | HOOVER0090 - HOOVER0099 |
| 855 Deposition of Margaret Colleen Hoover, Exh. #16 | | SPE_BL0019747 - SPE_BL0019750 |
| 856 Deposition of Margaret Colleen Hoover, Exh. #17 | | BL-000021221 - BL-000021223 |
| 857 Deposition of Margaret Colleen Hoover, Exh. #18 | | BL-000027117 - BL-000027126 |
| 858 Deposition of Margaret Colleen Hoover, Exh. #19 | | WAYFARER_000126473 - WAYFARER_000126474 |
| 859 Deposition of Margaret Colleen Hoover, Exh. #20 | | BL-000027117 - BL-000027126 |
| 860 Deposition of Margaret Colleen Hoover, Exh. #21 | | BL-000021224 - BL-000021225 |
| 861 Deposition of Margaret Colleen Hoover, Exh. #22 | | BL-000028281 - BL-000028284 |
| 862 Deposition of Margaret Colleen Hoover, Exh. #23 | | BL-000028391 - BL-000028392 |
| 863 Deposition of Margaret Colleen Hoover, Exh. #24 | | BL-000028508 - BL-000028509 |
| 864 Deposition of Margaret Colleen Hoover, Exh. #25 | | BL-000021232 - BL-000021235 |
| 865 Deposition of Margaret Colleen Hoover, Exh. #26 | | BL-000021264 - BL-000021269 |
| 866 Deposition of Margaret Colleen Hoover, Exh. #27 | | HOOVER0237 - HOOVER0256 |
| 867 Deposition of Margaret Colleen Hoover, Exh. #28 | | BALDONI_000015483 - BALDONI_000015516 |
| 868 Deposition of Margaret Colleen Hoover, Exh. #29 | | HOOVER0100 - HOOVER0109 |
| 869 Deposition of Margaret Colleen Hoover, Exh. #30 | | SPE_BL0008206 - SPE_BL0008207 |
| 870 Deposition of Margaret Colleen Hoover, Exh. #31 | | BALDONI_000030873 - BALDONI_000030873 |
| 871 Deposition of Margaret Colleen Hoover, Exh. #32 | | BALDONI_000018780 - BALDONI_000018785 |
| 872 Deposition of Margaret Colleen Hoover, Exh. #33 | | BALDONI_000021254 - BALDONI_000021256 |
| 873 Deposition of Margaret Colleen Hoover, Exh. #34 | | WAYFARER_000138736 - WAYFARER_000138737 |
| 874 Deposition of Margaret Colleen Hoover, Exh. #35 | | BL-000027060 - BL-000027062 |
| 875 Deposition of Margaret Colleen Hoover, Exh. #36 | | HOOVER0090 - HOOVER0091 |
| 876 Deposition of Margaret Colleen Hoover, Exh. #37 | | HOOVER_000000050 - HOOVER_000000053 |
| 877 Deposition of Margaret Colleen Hoover, Exh. #38 | | HOOVER0156 - HOOVER0161 |
| 878 Deposition of Margaret Colleen Hoover, Exh. #39 | | BL-000032648 - BL-000032649 |
| 879 Deposition of Margaret Colleen Hoover, Exh. #40 | | BL-000021276 - BL-000021279 |
| 880 Deposition of Margaret Colleen Hoover, Exh. #41 | | HOOVER0024 - HOOVER0035 |
| 881 Deposition of Margaret Colleen Hoover, Exh. #42 | | HOOVER0047 - HOOVER0049 |
| 882 Deposition of Margaret Colleen Hoover, Exh. #43 | | BL-000021262 - BL-000021263 |
| 883 Deposition of Melissa Nathan | 9/29/2025 | |
| 884 Deposition of Melissa Nathan | 9/30/2025 | |
| 885 Deposition of Melissa Nathan, Exh. #01 | | NATHAN_000003647 - NATHAN_000003647 |

| Document Description | Date | Bates Range |
|---|---|---|
| 886  Deposition of Melissa Nathan, Exh. #01 | | NATHAN_000003733 - NATHAN_000003733 |
| 887  Deposition of Melissa Nathan, Exh. #01 | | NATHAN_000003736 - NATHAN_000003745 |
| 888  Deposition of Melissa Nathan, Exh. #02 | | NATHAN_000005582 - NATHAN_000005582 |
| 889  Deposition of Melissa Nathan, Exh. #03 | | |
| 890  Deposition of Melissa Nathan, Exh. #04 | | NATHAN_000003795 - NATHAN_000003798 |
| 891  Deposition of Melissa Nathan, Exh. #05 | | NATHAN_000002707 - NATHAN_000002708 |
| 892  Deposition of Melissa Nathan, Exh. #06 | | NATHAN_000005497 - NATHAN_000005498 |
| 893  Deposition of Melissa Nathan, Exh. #06 | | NATHAN_000005503 - NATHAN_000005506 |
| 894  Deposition of Melissa Nathan, Exh. #07 | | NATHAN_000005552 - NATHAN_000005559 |
| 895  Deposition of Melissa Nathan, Exh. #08 | | NATHAN_000000141 - NATHAN_000000147 |
| 896  Deposition of Melissa Nathan, Exh. #09 | | JONESWORK_00012744 - JONESWORK_00012746 |
| 897  Deposition of Melissa Nathan, Exh. #10 | | NATHAN_000003599 - NATHAN_000003601 |
| 898  Deposition of Melissa Nathan, Exh. #10 | | NATHAN_000003609 - NATHAN_000003610 |
| 899  Deposition of Melissa Nathan, Exh. #11 | | NATHAN_000003599 - NATHAN_000003611 |
| 900  Deposition of Melissa Nathan, Exh. #12 | | NATHAN_000001924 - NATHAN_000001925 |
| 901  Deposition of Melissa Nathan, Exh. #13 | | NATHAN_000003780 - NATHAN_000003780 |
| 902  Deposition of Melissa Nathan, Exh. #14 | | KCASE-000004802 - KCASE-000004805 |
| 903  Deposition of Melissa Nathan, Exh. #15 | | KCASE-000005773 - KCASE-000005778 |
| 904  Deposition of Melissa Nathan, Exh. #16 | | BBKOSLOW-000008437 - BBKOSLOW-000008439 |
| 905  Deposition of Melissa Nathan, Exh. #17 | | NATHAN_000003194 - NATHAN_000003196 |
| 906  Deposition of Melissa Nathan, Exh. #18 | | NATHAN_000003767 - NATHAN_000003767 |
| 907  Deposition of Melissa Nathan, Exh. #19 | | JONESWORK_00018704 - JONESWORK_00018706 |
| 908  Deposition of Melissa Nathan, Exh. #20 | | |

| Document Description | Date | Bates Range |
|---|---|---|
| 909  Deposition of Melissa Nathan, Exh. #21 | | NATHAN_000000267 - NATHAN_000000270 |
| 910  Deposition of Melissa Nathan, Exh. #22 | | NATHAN_000002524 - NATHAN_000002524 |
| 911  Deposition of Melissa Nathan, Exh. #22 | | NATHAN_000002530 - NATHAN_000002536 |
| 912  Deposition of Melissa Nathan, Exh. #23 | | NATHAN_000000425 - NATHAN_000000425 |
| 913  Deposition of Melissa Nathan, Exh. #24 | | NATHAN_000002356 - NATHAN_000002359 |
| 914  Deposition of Melissa Nathan, Exh. #25 | | NATHAN_000001936 - NATHAN_000001937 |
| 915  Deposition of Melissa Nathan, Exh. #26 | | JONESWORK_00036706 - JONESWORK_00036706 |
| 916  Deposition of Melissa Nathan, Exh. #26 | | JONESWORK_00036850 - JONESWORK_00036860 |
| 917  Deposition of Melissa Nathan, Exh. #27 | | NATHAN_000001221 - NATHAN_000001226 |
| 918  Deposition of Melissa Nathan, Exh. #28 | | NATHAN_000003414 - NATHAN_000003415 |
| 919  Deposition of Melissa Nathan, Exh. #29 | | NATHAN_000002151 - NATHAN_000002156 |
| 920  Deposition of Melissa Nathan, Exh. #30 | | NATHAN_000022027 - NATHAN_000022030 |
| 921  Deposition of Melissa Nathan, Exh. #31 | | NATHAN_000018672 - NATHAN_000018673 |
| 922  Deposition of Melissa Nathan, Exh. #32 | | NATHAN_000002711 - NATHAN_000002715 |
| 923  Deposition of Melissa Nathan, Exh. #33 | | BBKOSLOW-000007503 - BBKOSLOW-000007508 |
| 924  Deposition of Melissa Nathan, Exh. #34 | | JONESWORK_00016237 - JONESWORK_00016239 |
| 925  Deposition of Melissa Nathan, Exh. #35 | | KCASE-000004212 - KCASE-000004217 |
| 926  Deposition of Melissa Nathan, Exh. #36 | | NATHAN_000002938 - NATHAN_000002940 |
| 927  Deposition of Melissa Nathan, Exh. #37 | | NATHAN_000000718 - NATHAN_000000723 |
| 928  Deposition of Melissa Nathan, Exh. #38 | | JONESWORK_00016301 - JONESWORK_00016307 |
| 929  Deposition of Melissa Nathan, Exh. #39 | | NATHAN_000002124 - NATHAN_000002136 |
| 930  Deposition of Melissa Nathan, Exh. #40 | | NATHAN_000002730 - NATHAN_000002733 |
| 931  Deposition of Melissa Nathan, Exh. #41 | | NATHAN_000001004 - NATHAN_000001006 |

| Document Description | Date | Bates Range |
|---|---|---|
| 932  Deposition of Melissa Nathan, Exh. #42 | | JONESWORK_00013334 - JONESWORK_00013335 |
| 933  Deposition of Melissa Nathan, Exh. #43 | | NATHAN_000019470 - NATHAN_000019475 |
| 934  Deposition of Melissa Nathan, Exh. #44 | | NATHAN_000020424 - NATHAN_000020429 |
| 935  Deposition of Melissa Nathan, Exh. #45 | | JONESWORK_00016351 - JONESWORK_00016359 |
| 936  Deposition of Melissa Nathan, Exh. #46 | | NATHAN_000002462 - NATHAN_000002464 |
| 937  Deposition of Melissa Nathan, Exh. #47 | | NATHAN_000001756 - NATHAN_000001761 |
| 938  Deposition of Melissa Nathan, Exh. #48 | | NATHAN_000027523 - NATHAN_000027527 |
| 939  Deposition of Melissa Nathan, Exh. #49 | | JONESWORK_00041852 - JONESWORK_00041854 |
| 940  Deposition of Melissa Nathan, Exh. #50 | | |
| 941  Deposition of Melissa Nathan, Exh. #51 | | |
| 942  Deposition of Melissa Nathan, Exh. #52 | | |
| 943  Deposition of Melissa Nathan, Exh. #53 | | NATHAN_000002390 - NATHAN_000002409 |
| 944  Deposition of Melissa Nathan, Exh. #54 | | NATHAN_000003131 - NATHAN_000003142 |
| 945  Deposition of Melissa Nathan, Exh. #55 | | |
| 946  Deposition of Melissa Nathan, Exh. #56 | | |
| 947  Deposition of Melissa Nathan, Exh. #57 | | |
| 948  Deposition of Melissa Nathan, Exh. #58 | | |
| 949  Deposition of Melissa Nathan, Exh. #59 | | MG_0000046 - MG_0000062 |
| 950  Deposition of Melissa Nathan, Exh. #60 | | JONESWORKS_MN_000002044 - JONESWORKS_MN_000002049 |
| 951  Deposition of Melissa Nathan, Exh. #61 | | MG_0000094 - MG_0000094 |
| 952  Deposition of Melissa Nathan, Exh. #62 | | JONESWORKS_MN_000001862 - JONESWORKS_MN_000001867 |
| 953  Deposition of Melissa Nathan, Exh. #63 | | JONESWORKS_MN_000001876 - JONESWORKS_MN_000001894 |
| 954  Deposition of Melissa Nathan, Exh. #64 | | JONESWORKS_MN_000001652 - JONESWORKS_MN_000001659 |

| Document Description | Date | Bates Range |
|---|---|---|
| 955  Deposition of Melissa Nathan, Exh. #65 | | |
| 956  Deposition of Melissa Nathan, Exh. #66 | | |
| 957  Deposition of Melissa Nathan, Exh. #67 | | |
| 958  Deposition of Melissa Nathan, Exh. #68 | | |
| 959  Deposition of Melissa Nathan, Exh. #69 | | |
| 960  Deposition of Melissa Nathan, Exh. #70 | | |
| 961  Deposition of Melissa Nathan, Exh. #71 | | KCASE-000004949 - KCASE-000004962 |
| 962  Deposition of Melissa Nathan, Exh. #72 | | |
| 963  Deposition of Melissa Nathan, Exh. #73 | | |
| 964  Deposition of Melissa Nathan, Exh. #74 | | |
| 965  Deposition of Melissa Nathan, Exh. #75 | | |
| 966  Deposition of Melissa Nathan, Exh. #76 | | |
| 967  Deposition of Melissa Nathan, Exh. #77 | | |
| 968  Deposition of Melissa Nathan, Exh. #78 | | |
| 969  Deposition of Melissa Nathan, Exh. #79 | | |
| 970  Deposition of Melissa Nathan, Exh. #80 | | |
| 971  Deposition of Melissa Nathan, Exh. #81 | | KCASE-000001410 - KCASE-000001427 |
| 972  Deposition of Melissa Nathan, Exh. #82 | | JONESWORKS_MN_000002915 - JONESWORKS_MN_000002919 |
| 973  Deposition of Melissa Nathan, Exh. #83 | | NATHAN_000002649 - NATHAN_000002662 |
| 974  Deposition of Melissa Nathan, Exh. #84 | | |
| 975  Deposition of Melissa Nathan, Exh. #85 | | NATHAN_000002828 - NATHAN_000002839 |
| 976  Deposition of Melissa Nathan, Exh. #86 | | NATHAN_000001180 - NATHAN_000001213 |
| 977  Deposition of Melissa Nathan, Exh. #87 | | BBKOSLOW-000005048 - BBKOSLOW-000005051 |
| 978  Deposition of Melissa Nathan, Exh. #88 | | BBKOSLOW-000008776 - BBKOSLOW-000008781 |
| 979  Deposition of Melissa Nathan, Exh. #89 | | JONESWORKS_MN_000000097 - JONESWORKS_MN_000000099 |
| 980  Deposition of Melissa Nathan, Exh. #90 | | JONESWORKS_MN_000002208 - JONESWORKS_MN_000002210 |

| Document Description | Date | Bates Range |
|---|---|---|
| 981  Deposition of Melissa Nathan, Exh. #91 | | JONESWORKS_MN_000000842 - JONESWORKS_MN_000000861 |
| 982  Deposition of Melissa Nathan, Exh. #92 | | JONESWORKS_MN_000000666 - JONESWORKS_MN_000000666 |
| 983  Deposition of Melissa Nathan, Exh. #93 | | NATHAN_000001795 - NATHAN_000001806 |
| 984  Deposition of Melissa Nathan, Exh. #94 | | BBKOSLOW-000005795 - BBKOSLOW-000005817 |
| 985  Deposition of Shelley Anne Carroll | 9/25/2025 | |
| 986  Deposition of Shelley Anne Carroll, Exh. #1 | | BL-000025288 - BL-000025289 |
| 987  Deposition of Shelley Anne Carroll, Exh. #2 | | |
| 988  Deposition of Shelley Anne Carroll, Exh. #3 | | |
| 989  Deposition of Stephanie Jones | 9/16/2025 | |
| 990  Deposition of Stephanie Jones, Errata Sheet | 10/16/2025 | |
| 991  Deposition of Stephanie Jones, Exh. #01 | | JONESWORKS_00030155 - JONESWORKS_00030155 |
| 992  Deposition of Stephanie Jones, Exh. #02 | | JONESWORKS_00038586 - JONESWORKS_00038590 |
| 993  Deposition of Stephanie Jones, Exh. #03 | | JONESWORKS_00040102 - JONESWORKS_00040103 |
| 994  Deposition of Stephanie Jones, Exh. #04 | | JONESWORKS_00020577 - JONESWORKS_00020577 |
| 995  Deposition of Stephanie Jones, Exh. #05 | | JONESWORKS_00039988 - JONESWORKS_00039991 |
| 996  Deposition of Stephanie Jones, Exh. #06 | | JONESWORKS_00040021 - JONESWORKS_00040027 |
| 997  Deposition of Stephanie Jones, Exh. #07 | | JONESWORKS_00040574 - JONESWORKS_00040586 |
| 998  Deposition of Stephanie Jones, Exh. #08 | | BALDONI_000021305 - BALDONI_000021305 |
| 999  Deposition of Stephanie Jones, Exh. #09 | | JONESWORKS_00012591 - JONESWORKS_00012592 |
| 1000  Deposition of Stephanie Jones, Exh. #10 | | JONESWORKS_00039746 - JONESWORKS_00039748 |
| 1001  Deposition of Stephanie Jones, Exh. #11 | | JONESWORKS_00040269 - JONESWORKS_00040271 |
| 1002  Deposition of Stephanie Jones, Exh. #12 | | JONESWORKS_00039132 - JONESWORKS_00039171 |
| 1003  Deposition of Stephanie Jones, Exh. #13 | | JONESWORKS_00040323 - JONESWORKS_00040332 |

| Document Description | Date | Bates Range |
|---|---|---|
| 1004  Deposition of Stephanie Jones, Exh. #14 | | JONESWORKS_00040104 - JONESWORKS_00040125 |
| 1005  Deposition of Stephanie Jones, Exh. #15 | | BL-000021190 - BL-000021196 |
| 1006  Deposition of Stephanie Jones, Exh. #16 | | |
| 1007  Deposition of Steve Sarowitz | 10/3/2025 | |
| 1008  Deposition of Steve Sarowtiz, Exh. #01 | | SAROWITZ_000000939 - SAROWITZ_000000941 |
| 1009  Deposition of Steve Sarowtiz, Exh. #02 | | SAROWITZ_000000942 - SAROWITZ_000000945 |
| 1010  Deposition of Steve Sarowtiz, Exh. #03 | | SAROWITZ_000000898 - SAROWITZ_000000907 |
| 1011  Deposition of Steve Sarowtiz, Exh. #04 | | SAROWITZ_000000068 - SAROWITZ_000000068 |
| 1012  Deposition of Steve Sarowtiz, Exh. #05 | | SAROWITZ_000000709 - SAROWITZ_000000710 |
| 1013  Deposition of Steve Sarowtiz, Exh. #06 | | JONESWORKS_00037247 - JONESWORKS_00037248 |
| 1014  Deposition of Steve Sarowtiz, Exh. #07 | | HEATH_000034940 - HEATH_000034940 |
| 1015  Deposition of Steve Sarowtiz, Exh. #07 | | HEATH_000034943 - HEATH_000034970 |
| 1016  Deposition of Steve Sarowtiz, Exh. #08 | | NATHAN_000003767 - NATHAN_000003768 |
| 1017  Deposition of Steve Sarowtiz, Exh. #09 | | HEATH_000035492 - HEATH_000035493 |
| 1018  Deposition of Steve Sarowtiz, Exh. #10 | | SAROWITZ_000000744 - SAROWITZ_000000750 |
| 1019  Deposition of Steve Sarowtiz, Exh. #11 | | SAROWITZ_000000069 - SAROWITZ_000000074 |
| 1020  Deposition of Steve Sarowtiz, Exh. #12 | | SAROWITZ_000000080 - SAROWITZ_000000082 |
| 1021  Deposition of Steve Sarowtiz, Exh. #13 | | HEATH_000031887 - HEATH_000031889 |
| 1022  Deposition of Steve Sarowtiz, Exh. #14 | | BL-000033428 - BL-000033428 |
| 1023  Deposition of Steve Sarowtiz, Exh. #15 | | |
| 1024  Deposition of Steve Sarowtiz, Exh. #16 | | SAROWITZ_000000969 - SAROWITZ_000000971 |
| 1025  Deposition of Steve Sarowtiz, Exh. #17 | | SAROWITZ_000001241 - SAROWITZ_000001243 |
| 1026  Deposition of Steve Sarowtiz, Exh. #18 | | WAYFARER_000150148 - WAYFARER_000150149 |
| 1027  Deposition of Steve Sarowtiz, Exh. #19 | | SAROWITZ_000001218 - SAROWITZ_000001218 |
| 1028  Deposition of Tera Hanks | 9/8/2025 | |

| Document Description | Date | Bates Range |
|---|---|---|
| 1029  Deposition of Tera Hanks, Exh. #01 | | HANKS_000000062 - HANKS_000000064 |
| 1030  Deposition of Tera Hanks, Exh. #02 | | JONESWORKS_WAYFARER_000003747 - JONESWORKS_WAYFARER_000003750 |
| 1031  Deposition of Tera Hanks, Exh. #03 | | JONESWORKS_WAYFARER_000004651 - JONESWORKS_WAYFARER_000004652 |
| 1032  Deposition of Tera Hanks, Exh. #04 | | HANKS_000000012 - HANKS_000000013 |
| 1033  Deposition of Tera Hanks, Exh. #05 | | JONESWORKS_00015108 - JONESWORKS_00015109 |
| 1034  Deposition of Tera Hanks, Exh. #06 | | JONESWORKS_00030156 - JONESWORKS_00030157 |
| 1035  Deposition of Tera Hanks, Exh. #07 | | HANKS_000000014 - HANKS_000000014 |
| 1036  Deposition of Tera Hanks, Exh. #08 | | JONESWORKS_WAYFARER_000003009 - JONESWORKS_WAYFARER_000003013 |
| 1037  Deposition of Tera Hanks, Exh. #09 | | |
| 1038  Deposition of Tera Hanks, Exh. #10 | | HEATH_000046697 - HEATH_000046707 |
| 1039  Deposition of Tera Hanks, Exh. #11 | | HANKS_000000056 - HANKS_000000056 |
| 1040  Deposition of Tera Hanks, Exh. #12 | | HANKS_000000054 - HANKS_000000055 |
| 1041  Deposition of Tera Hanks, Exh. #13 | | HANKS_000000026 - HANKS_000000027 |
| 1042  Deposition of Tera Hanks, Exh. #14 | | JONESWORKS_00030241 - JONESWORKS_00030242 |
| 1043  Deposition of Tera Hanks, Exh. #15 | | HANKS_000000018 - HANKS_000000018 |
| 1044  Deposition of Tera Hanks, Exh. #17 | | JONESWORKS_00012734 - JONESWORKS_00012735 |
| 1045  Deposition of Tera Hanks, Exh. #18 | | JONESWORKS_MN_000000764 - JONESWORKS_MN_000000764 |
| 1046  Deposition of Tera Hanks, Exh. #19 | | JONESWORKS_MN_000000765 - JONESWORKS_MN_000000765 |

| Document Description | Date | Bates Range |
|---|---|---|
| 1047  Deposition of Tera Hanks, Exh. #20 | | JONESWORKS_WAYFARER_0 00004661 - JONESWORKS_WAYFARER_0 00004662 |
| 1048  Deposition of Tera Hanks, Exh. #21 | | BL-000003591 - BL-000003594 |
| 1049  Deposition of Tera Hanks, Exh. #22 | | JONESWORKS_00039768_A - JONESWORKS_00039770_A |
| 1050  Deposition of Tera Hanks, Exh. #23 | | |
| 1051  Deposition of Tera Hanks, Exh. #24 | | HANKS_000000004 - HANKS_000000004 |
| 1052  Deposition of Tera Hanks, Exh. #25 | | JONESWORKS_00015116 - JONESWORKS_00015117 |
| 1053  Deposition of Tera Hanks, Exh. #26 | | JONESWORKS_00017399 - JONESWORKS_00017400 |
| 1054  Deposition of Tera Hanks, Exh. #27 | | WAYFARER_000139988 - WAYFARER_000139988 |
| 1055  Deposition of Tera Hanks, Exh. #28 | | WAYFARER_000140710 - WAYFARER_000140710 |
| 1056  Deposition of Tera Hanks, Exh. #29 | | WAYFARER_000140035 - WAYFARER_000140035 |
| 1057  Deposition of Vivian Baker | 9/12/2025 | |
| 1058  Deposition of Vivian Baker, Errata Sheet | 10/15/2025 | |
| 1059  Deposition of Warren Zavala | 9/18/2025 | |
| 1060  Deposition of Warren Zavala, Errata Sheet | 9/18/2025 | |
| 1061  Deposition of Warren Zavala, Exh. #01 | | BL-000021692 - BL-000021693 |
| 1062  Deposition of Warren Zavala, Exh. #02 | | BL-000021737 - BL-000021738 |
| 1063  Deposition of Warren Zavala, Exh. #03 | | BL-000021967 - BL-000021971 |
| 1064  Deposition of Warren Zavala, Exh. #04 | | BL-000020310 - BL-000020312 |
| 1065  Deposition of Warren Zavala, Exh. #05 | | HEATH_000045307 - HEATH_000045311 |
| 1066  Deposition of Warren Zavala, Exh. #06 | | BL-000015473 - BL-000015474 |
| 1067  Deposition of Warren Zavala, Exh. #06 | | WME_00001214 - WME_00001215 |
| 1068  Deposition of Warren Zavala, Exh. #07 | | WME_00000547 - WME_00000549 |
| 1069  Deposition of Warren Zavala, Exh. #08 | | BL-000026592 - BL-000026595 |
| 1070  Deposition of Warren Zavala, Exh. #09 | | WME_00001313 - WME_00001314 |
| 1071  Deposition of Warren Zavala, Exh. #10 | | SPE_WF0000185 - SPE_WF0000186 |
| 1072  Deposition of Warren Zavala, Exh. #11 | | BL-000021306 - BL-000021307 |
| 1073  Deposition of Warren Zavala, Exh. #12 | | BL-000025285 - BL-000025287 |
| 1074  Deposition of Warren Zavala, Exh. #13 | | BL-000015471 - BL-000015472 |
| 1075  Deposition of Warren Zavala, Exh. #14 | | BL-000028571 - BL-000028572 |

| Document Description | Date | Bates Range |
|---|---|---|
| 1076 Deposition of Warren Zavala, Exh. #15 | | VPR_0000870 - VPR_0000874 |
| 1077 Deposition of Warren Zavala, Exh. #16 | | SPE_BL0023165 - SPE_BL0023166 |
| 1078 Eve Batey, "Blake Lively Apologizes to Kate Middleton for 'Silly Post' Following Cancer Announcement," Vanity Fair (https://www.vanityfair.com/style/blake-lively-kate-middleton-instagram-apology) | 3/23/2024 | |
| 1079 Everett P. Harry, III and Jeffrey H. Kinrich, "Lost Profits Damages: Principles, Methods, and Applications," Second Edition, Valuation Products and Services, 2022 | | |
| 1080 Expert Report of Dina Mayzlin | 10/17/2025 | |
| 1081 Expert Report of Jeffrey H. Kinrich | 10/17/2025 | |
| 1082 Expert Report of Michael F. Sippel | 10/17/2025 | |
| 1083 Expert Report of Professor Ashlee Humphreys | 10/17/2025 | |
| 1084 Expert Report of Richard Marks | 10/17/2025 | |
| 1085 First Amended Complaint | 1/31/2025 | |
| 1086 First Amended Complaint, Exhibit A | 1/31/2025 | |
| 1087 Gunter Festel et al., "Valuation of Early Stage High-tech Start-up Companies," International Journal of Business, 18(3), 2013 | | |
| 1088 Hotstart VC, "About" (https://www.hotstart.vc/about/) | 11/2/2025 | |
| 1089 Hotstart, "Celebrity-Product-Market-Fit: The Framework that Predicts Which Celebrity Brands Hit $100M" (https://hotstart.beehiiv.com/p/celebrity-product-market-fit-the-framework-that-predicts-which-celebrity-brands-hit-100m) | 9/10/2025 | |
| 1090 IWSR, "How Impactful are Celebrity-Backed Brands?" (https://www.theiwsr.com/insight/how-impactful-are-celebrity-backed-brands/) | 11/1/2025 | |
| 1091 Jay Stahl, "Blake Lively Receives Backlash for Controversial Vogue Cover," USA Today (https://www.usatoday.com/story/entertainment/celebrities/2024/08/07/blake-lively-vogue-cover-backlash/74702305007/) | 8/7/2024 | |
| 1092 Josh Duboff, When Gossip Girl Ruled the World, Vanity Fair (Aug. 30, 2017) | 8/30/2017 | |
| 1093 Kay Banks, "Social Media Melts Down over Blake Lively's Upcoming Movie Role," Nickiswift (https://www.nickiswift.com/1180321/social-media-melts-down-over-blake-livelys-upcoming-movie-role/) | 1/27/2023 | |
| 1094 KNAV, "Building a Discount Rate for Early-Stage Companies" (https://ca.knavcpa.com/wp-content/uploads/2023/03/Building-a-Discount-Rate-for-Early-Stage-Companies.pdf) | 12/1/2020 | |
| 1095 KPMG, "Start-ups and Early Stage Companies, A Valuation Insight" (https://assets.kpmg.com/content/dam/kpmg/kw/pdf/insights/2021/05/valuation-startup-web.pdf) | 5/1/2021 | |
| 1096 Kristin Contino, "Blake Lively Announces New Haircare Line, Blake Brown Beauty - and it Won't Include Conditioner," Page Six (https://pagesix.com/2024/07/31/style/blake-lively-announces-new-haircare-line-blake-brown-beauty/) | 7/31/2024 | |
| 1097 Leah Bitsky, "Non-Drinker Blake Lively Accused of 'Cash Grab' as She Launches Alcohol Brand," Page Six (https://pagesix.com/2023/06/29/non-drinker-blake-lively-accused-of-cash-grab-as-she-launches-alcohol-brand/) | 6/29/2023 | |

| Document Description | Date | Bates Range |
|---|---|---|
| 1098  Leslie Barrie and Laura McArdle, "17 Celebrities Who Don't Drink Alcohol," Everyday Health (https://www.everydayhealth.com/diet-nutrition/diet/celebrities-who-dont-drink-alcohol/) | 4/4/2022 | |
| 1099  lic Everett, "The Hypocrisy of Sober Celebs Flogging Us Booze," Daily Mail (https://www.dailymail.co.uk/femail/article-12292281/The-hypocrisy-sober-celebs-flogging-booze.html) | 7/12/2023 | |
| 1100  Lindsay  Lowe, "Blake Lively Faces Backlash from Fans for Betty Booze Line," | 7/3/2023 | |
| 1101  Madeline Berg, "The Highest-Paid Actors of 2020," Forbes (https://www.forbes.com/sites/maddieberg/2020/08/11/the-highest-paid-actors-of-2020-dwayne-johnson-ryan-reynolds/) | 8/11/2020 | |
| 1102  Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1367 (Fed. Cir. 2008) | 6/2/2008 | |
| 1103  Matt Craig, "The Highest-Paid Actors of 2024," Forbes (https://www.forbes.com/sites/mattcraig/2025/02/28/the-highest-paid-actors-of-2024/) | 2/28/2025 | |
| 1104  Medha Pandey, "Why Most Beauty Brands Fail at Customer Retention? 20 Fresh Beauty Industry Customer Retention Strategies That Drive Loyalty in 2025!," Propel (https://www.trypropel.ai/resources/customer-retention-beauty-industry) | 9/8/2025 | |
| 1105  Mehera Bonner, "Twitter is Extremely Upset About Blake Lively's New Movie Role," Cosmopolitan (https://www.cosmopolitan.com/entertainment/celebs/a42684209/blake-lively-it-ends-with-us-backlash/) | 1/27/2023 | |
| 1106  Memorandum of Law in Support of Blake Lively's Motion for Sanctions Against Defendants' Counsel | 8/4/2025 | |
| 1107  Michael J. Wagner, Michael K. Dunbar, Roman L. Weil, "Chapter 8 – Ex Ante Versus Ex Post Damages Calculations," in Litigation Services Handbook, Fourth Edition, Eds. Roman L. Weil, Peter B. Frank, Christian W. Hughes, Michael J. Wagner, John Wiley & Sons, Inc., 2007 | | |
| 1108  Miranda Siwak, "Blake Lively Seemingly Pokes Fun at Kate Middleton Photoshop Scandal for Betty Buzz Promotion," US Weekly (<https://www.usmagazine.com/celebrity-news/news/did-blake-lively-poke-fun-at-kate-middleton-photoshop-scandal/) | 3/16/2024 | |
| 1109  Nielsen IQ, "Celebrity-Founded Beauty Brands Surpass $1 Billion in Sales" (https://nielseniq.com/global/en/insights/analysis/2024/celebrity-founded-beauty-brands-surpass-1-billion-in-sales/ ) | 1/22/2024 | |
| 1110  Nimisha Popat, "Blake Lively Launches Affordable Hair Care Line But There's a Twist You Won't Expect," Control Hair Fall (https://controlhairfall.com/blake-lively/) | 8/9/2024 | |
| 1111  Pamela N. Danziger, "Calling It Quits, Ulta Beauty and Target's Partnership Unravels," Forbes (https://www.forbes.com/sites/pamdanziger/2025/08/15/calling-it-quits-ulta-beauty-and-targets-partnership-unravels/) | 8/15/2025 | |
| 1112  Parade, "Ryan Reynolds' Net Worth (2025) from Deadpool, Wrexham" (https://parade.com/celebrities/ryan-reynolds-net-worth) | 10/26/2025 | |
| 1113  Plaintiff Blake Lively's Fourth Amended FRCP 26(A)(1) Initial Disclosures | 10/29/2025 | |
| 1114  Plaintiff Blake Lively's Third Amended FRCP 26(A)(1) Initial Disclosures (1:24-cv-10049-LJL) | 9/30/2025 | |

| Document Description | Date | Bates Range |
|---|---|---|
| 1115 PR Newswire, "Betty Booze Introduces New Vodka Iced Teas - Just in Time for Summer" (https://www.prnewswire.com/news-releases/betty-booze-introduces-new-vodka-iced-teas--just-in-time-for-summer-302472674.html) | 6/4/2025 | |
| 1116 PR Newswire, "Blake Lively Announces the Launch of Betty Booze, A New Line of Gourmet Sparkling Canned Cocktails" | 6/29/2023 | |
| 1117 PR Newswire, "Blake Lively Announces the Launch of Betty Buzz; A Great-Tasting, Lower Calorie Mixer that Uses Only Clean Ingredients" | 9/23/2021 | |
| 1118 Protective Order (1:24-cv-10049-LJL) | 3/13/2025 | |
| 1119 PwC, "PwC Deals Insights: How to Value a Start-up Business" (https://www.pwc.com/ee/en/services/transaction-services/pwc-deals-insights--how-to-value-a-start-up-business.html) | 11/1/2025 | |
| 1120 Randee Dawn, "Colleen Hoover Fans are Divided over Blake Lively's 'It Ends With Us' Casting," Today (https://www.today.com/popculture/movies/blake-lively-it-ends-with-us-casting-backlash-explained-rcna67895) | 1/27/2023 | |
| 1121 Rodl & Partner, "Determining Cost of Capital When Valuing Start-ups" | 2/20/2024 | |
| 1122 Ryan Coleman, "Blake Lively's Hair-Care Launch Was Never Meant to Coincide with It Ends With Us," Entertainment Weekly (https://ew.com/blake-lively-hair-care-launch-not-meant-to-coincide-with-it-ends-with-us-8696767) | 8/16/2024 | |
| 1123 Sabina Wex, "Is the It Ends With Us Marketing Campaign Detracting from the Film's Serious Subject Matter?," CBC Arts (https://www.cbc.ca/arts/commotion/is-the-it-ends-with-us-marketing-campaign-detracting-from-the-film-s-serious-subject-matter-1.7293524) | 8/13/2024 | |
| 1124 Second Amended Complaint for Sexual Harassment, Retaliation, Breach of Contract, False Light, Defamation, and Other Claims (1:24-cv-10049-LJL) | 7/30/2025 | |
| 1125 Shannon Pratt, "Valuing a Business" | | |
| 1126 Shreya Kachroo, "Blake Lively's Haircare Routine Does NOT Include Conditioner," Times Now News (https://www.timesnownews.com/lifestyle/beauty/hair/blake-livelys-haircare-routine-does-not-include-conditioner-article-112602048) | 8/18/2024 | |
| 1127 Skims, "About" (https://skims.com/en-br/pages/about) | 11/1/2025 | |
| 1128 Target Press Release, "Target Announces Strategic Plans to Drive More Than $15 Billion in Sales Growth by 2030" (https://corporate.target.com/press/release/2025/03/target-announces-strategic-plans-to-drive-more-than-$15-billion-in-sales-growth-by-2030) | 3/4/2025 | |
| 1129 Target Press Release, "Target Introduces More than 1,000 New Products to Support Guests on Their Wellness Journey, Starting at Just $1.99" (https://corporate.target.com/press/release/2024/01/target-introduces-more-than-1%2C000-new-products-to-support-guests-on-their-wellness-journey%2C-starting) | 1/24/2024 | |
| 1130 Target, "Being Frenshe Products at Target (https://www.target.com/b/being-frenshe/-/N-q643leyonhf) | 11/2/2025 | |
| 1131 The Agency Group PR LLC, "Services" (https://www.tagpr.com/services) | 10/14/2025 | |
| 1132 The Express Tribune, "Blake Lively Slammed for It Ends With Us Betty Booze Promo & Insensitivity to Domestic Violence" (https://tribune.com.pk/story/2488537/blake-lively-slammed-for-it-ends-with-us-betty-booze-promo-insensitiviy-to-domestic-violence-theme) | 8/16/2024 | |

| Document Description | Date | Bates Range |
|---|---|---|
| 1133 The Numbers, "Blake Lively - Box Office" (https://www.the-numbers.com/person/86530401-Blake-Lively#tab=acting) | 11/3/2025 | |
| 1134 The Rhythm Section, IMDb (https://www.imdb.com/title/tt7134096/) | 10/14/2025 | |
| 1135 The Sisterhood of the Traveling Pants, IMDb (https://www.imdb.com/title/tt0403508/) | 10/14/2025 | |
| 1136 The Sisterhood of the Traveling Pants, Rotten Tomatoes (https://www.rottentomatoes.com/m/sisterhood_of_the_traveling_pants) | 10/14/2025 | |
| 1137 Vani Mahajan, "Blake Lively's Hair-Care Brand Benefits from It Ends With Us Premiere, But It Was NEVER Meant to," Hindustan Times (https://www.hindustantimes.com/entertainment/hollywood/blake-livelys-hair-care-brand-benefits-from-it-ends-with-us-premiere-but-it-was-never-meant-to-report-101723904879082.html) | 8/17/2024 | |
| 1138 Vrushali Padia, "The 'Aviation Gin' Story: Here's How Ryan Reynolds Grew the $610 Million Alcohol Brand," TheRichest (https://www.therichest.com/rich-powerful/the-aviation-gin-story-heres-how-ryan-reynolds-grew-the-610-million-alcohol-brand/) | 8/3/2023 | |
| 1139 Wayfarer Studios, "About" (https://www.wayfarerstudios.com/#about) | 10/14/2025 | |
| 1140 William A. Sahlman, "A Method for Valuing High-Risk, Long-Term Investments, The 'Venture Capital Method'," Harbard Business School | 10/1/2009 | |
| 1141 Woman & Home, "Celebrities Who Overcame Scandal and Came Back Stronger than Before (https://www.womanandhome.com/life/news-entertainment/celebrities-who-overcame-scandal-and-came-back-stronger-than-before/) | 4/11/2025 | |