# EXHIBIT 3

## FILED
## UNDER SEAL

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---

BLAKE LIVELY,

Plaintiff,

vs.          CASE NO. 24-CV-10049-LJL (LEAD CASE)

25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

_____

JENNIFER ABEL,

Third-party Plaintiff,

vs.

JONESWORKS, LLC,

Third-party Defendant.

_____

WAYFARER STUDIOS LLC, et al.

Consolidated Plaintiffs,

vs.

BLAKE LIVELY, et al.

Consolidated Defendants.

_____

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JEFFREY KINRICH

Los Angeles, California

Tuesday, November 25, 2025

Stenographically Reported by:  Ashley Soevyn,
CALIFORNIA CSR No. 12019

Pages 1 - 128

Page 1

Is it your understanding that -- let's         11:53:48
start with Betty B.  Blake Lively would not be
entitled under the corporate documents to the value
of lost cash flows at any point?

MS. CONNOLLY:  Objection.                    11:54:07

THE WITNESS:  That sounds like a legal
question.  It's not within my expertise.

BY MR. KALTGRAD:

Q    Okay.  Well, do you have an understanding
that if the company distributed all of its profits    11:54:19
today, would Ms. Lively be entitled to the value of
lost cash flows?  Do you have an opinion on that?

MS. CONNOLLY:  Objection.

THE WITNESS:  Are you distinguishing in
that question between cash flows and profits or are    11:54:33
you not intending to?

BY MR. KALTGRAD:

Q    I am not intending to.

A    If the company made distributions, she
would get her share.                                 11:54:44

Q    What do you mean by "her share"?

A    It would flow through various entities,
and she would ultimately benefit from her
shareholdings.

Q    So is it your understanding that if she    11:54:59

Page 83

has a certain interest in the company, that's the          11:55:01

amount of the lost profits or cash flows -- I am

using that interchangeably at this point -- that she

would receive if the company distributed those

profits?                                                   11:55:14

                MS. CONNOLLY:  Objection.

                THE WITNESS:  Unless there is a subtlety

that I'm missing, the answer is yes.

BY MR. KALTGRAD:

        Q    Are you aware of whether the corporate     11:55:22

documents of Betty B describe how distributions are

made to shareholders?

                MS. CONNOLLY:  Objection.

                THE WITNESS:  I am not aware.  I would

have to go look to answer that question.                11:55:30

BY MR. KALTGRAD:

        Q    Okay.  Are you aware whether Blake Lively

has any direct ownership interest of Betty B

Holdings?

                MS. CONNOLLY:  Objection.              11:55:48

                THE WITNESS:  You mean as opposed to

through LOL HATA, for example?

BY MR. KALTGRAD:

        Q    Yes.

        A    My understanding is all of her businesses  11:56:00

Page 84

Q    Okay.  So I was reading:                    12:50:55

(As read):

"I calculate the but-for value of

Blake Brown to be $108.6 million as of

March 31, 2026."                    12:51:02

You can see that?

A    I do.

Q    And you reference Exhibit 1 of your

report.  So I'm going to turn to Exhibit 1.  I think

the exhibits are before the appendices, if that's --   12:51:40

A    That clears up my current problem.  Thank

you.

All right.  I'm there.

Q    All right.  And I'm just looking --

excuse me -- at note number 1, which says:          12:52:03

(As read):

"Ms. Lively owns 100 percent of LOL

HATA, which owns 40 percent Family Hive

as of March 4, 2022.  This analysis

assumes that Family Hive owns          12:52:15

100 percent of Blake Brown."

Do you see that?

A    I do.

Q    Do you know whether Ms. Lively still owns

100 percent of LOL HATA?                    12:52:24

Page 101

MS. CONNOLLY:  Objection.                12:52:27

THE WITNESS:  That's my assumption, and that is what I believe to be true.  I don't have personal knowledge.

BY MR. KALTGRAD:                          12:52:34

Q   Do you know if that percentage has ever changed?

MS. CONNOLLY:  Objection.

THE WITNESS:  The same answer.

BY MR. KALTGRAD:                          12:52:39

Q   Do you know if LOL HATA still owns 40 percent of Family Hive?

A   That is my understanding and assumption. I have no personal knowledge other than that is what I'm informed.                          12:52:49

Q   And what is your understanding based on?

A   That that's what I've been informed.

Q   Were you informed by Family Hive?

MS. CONNOLLY:  Objection.

THE WITNESS:  I was informed by my staff,  12:52:57 who has inquired and received that information.

BY MR. KALTGRAD:

Q   Do you know if that percentage has ever changed?

A   I don't know if it was something        12:53:14

Page 102

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Dated this 26th day of November, 2025.

ASHLEY SOEVYN

CSR No. 12019

Page 126