# Exhibit 22

CONFIDENTIAL

**Page 1**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---

BLAKE LIVELY,

                    Plaintiff,

    vs.          CASE NO. 24-CV-10049-LJL (LEAD CASE)

                            25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.,

                    Defendants.

_____

JENNIFER ABEL,

              Third-party Plaintiff,

    vs.

JONESWORKS, LLC,

              Third-party Defendant.

_____

WAYFARER STUDIOS LLC, et al.,

              Consolidated Plaintiffs,

    vs.

BLAKE LIVELY, et al.,

              Consolidated Defendants.

_____

                    **CONFIDENTIAL**


    VIDEO-RECORDED DEPOSITION OF STEVE SAROWITZ

              Los Angeles, California

              Friday, October 3, 2025


Stenographically Reported by:  Ashley Soevyn,

CALIFORNIA CSR No. 12019

CONFIDENTIAL

Page 48

MS. GAROFALO: Again, other than advice you may have been provided by attorneys, you can answer.

BY MR. GOTTLIEB:

Q   I am not asking for your conversations with your lawyers. As you sat in the boardroom as a board member, I imagine a proposal was presented. It's a serious proposal. It meant shutting down an organization that I imagine you'd given a lot of time and money to. And all I'm trying to ask is why you decided to do that.

A   One of the deciding factors was death threats against both me and my family as a result of this litigation.

Q   And as a result of those threats -- sorry, what else did you want to say?

A   And arson at my house.

Q   And that informed the decision to shut down the foundation in what way?

A   You were asking me about my personal opinion, correct?

Q   I was asking you about why you made the decision to support closing the foundation.

A   Well, as I said before, the board made the decision, and then you asked me about my

CONFIDENTIAL

Page 51

any projects that it's funding?

A    There may be something small, but the foundation will be shut down by the end of the year.

Q    How many employees did the foundation have as of this -- the spring of 2025 before it shut down?

A    Can I go back to a previous question?

Q    Sure.

A    I just want to audit -- edit it now.  If you can edit my previous question, the third co-host is Liz Plank.  Sorry, for some reason her mind -- her name was slipping my mind.

Q    We won't edit the transcript in real time, but you can state it for the record.

A    Liz Plank was the third co-host.

Q    Okay.  Thank you for that clarification.

A    And could you repeat the question, please?  Sorry.

Q    How many employees did the foundation have as of the spring of 2025 before it was shut down?

A    Twenty-eight.

Q    The threats that you mentioned to you and your family -- and I'm sorry that you and your family have received threats.  My question to you

Page 52

is:  Have those threats been made to your knowledge against other employees, directors -- let's start with employees.

Have -- are you aware of any threats that have been made to employees of the foundation?

A    There was a threat made to the foundation itself.

Q    And what was that threat?

A    I don't recall the exact threat, but I remember we had to get security and it was during the course of this litigation, where -- I want to say this very clearly -- antisemitism was weaponized against me and anything I was associated with, even though I'm a Baha'i.  And it was weaponized violently and purposefully.  And as someone who lost 20 members of my family in the holocaust and was beaten up for being Jewish when I was a child, lost my great-grandfather who I'm named after, I don't appreciate that.  And I want to go on record as saying that religious prejudice has no place in America.

Q    And I appreciate all that.  And I am deeply sorry that that occurred.  I'm also a descendant of holocaust survivors and so I don't appreciate it either.

Page 53

I'm trying to understand the link between the threats that you received and your decision respecting the foundation.  I think I understand you to be saying that that link is this threat that the foundation itself received.  Am I understanding you correctly?

A    In addition to the personal death threats, in addition to the death threats and kidnapping threats and arson against my family, the foundation also received a threat as a direct result of this litigation because of the actions taken by the people within this litigation, which were purposefully leveled against me and my family.

Q    As a direct result, that antisemitic threats against you and the Wayfarer Foundation, you said -- I think you just testified are direct results of actions taken by people in this litigation?

MS. GAROFALO:  Objection.

THE WITNESS:  Yes.

BY MR. GOTTLIEB:

Q    By which people?

A    I don't know who authorized it, but I know it was done by someone on -- on the other side.

Q    What was done by someone on the other

CONFIDENTIAL

Page 352

BY MR. GOTTLIEB:

Q    Is saying, "I will never ever let up going after you for the rest of my career" something that you want your attorneys to say to reporters at news organizations?

MS. GAROFALO:  Objection.

THE WITNESS:  I don't know the context, so I can't comment on something I don't have the context.  I don't know what was done.  For example, in the course of this case, someone threatened my daughter's life.  If I knew who did that, I would say something similar to that, even as a Baha'i, because we're not perfect human beings.

There are things that are beyond the pale and people get angry.  I'm sure you, like me, have a temper, and occasionally we say things we might even regret.  So I would like to know what the whole context is before I can comment on it.

Do you have anymore context on this you can give me?

BY MR. GOTTLIEB:

Q    I do not.  Your attorneys do.

Did you ever learn of anything horrific or terrible that Mr. Reiss had done or said in public?  Did you ever see anything that he said in

CONFIDENTIAL

Page 365

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Dated this 4TH day of October, 2025.

_____

ASHLEY SOEVYN

CSR No. 12019