# EXHIBIT 39

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Expert Report of Michael F. Sippel

in the Matter of

*Lively v. Wayfarer Studios LLC et al.*,

Case No. 1-24-cv-100049-LJL (S.D.N.Y)

October 17, 2025

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## TABLE OF CONTENTS

I.      **Background and Qualifications** ........................................................ 1

II.     **Scope of Work** ............................................................................... 2

III.    **Summary of Opinion** ..................................................................... 3

IV.     **Estimated Lost Professional Opportunities** ................................. 3

    A.      Major Studio Feature Films ...................................................... 4

    B.      Independent, Limited Budget & Cameo Film Opportunities ............ 6

    C.      Limited Television Series ......................................................... 7

    D.      Endorsements, Speaking Engagements, and Personal Appearances ...... 8

    E.      Deductions ............................................................................. 8

    F.      Off-Set .................................................................................. 9

    G.      Present Value ......................................................................... 9

        (i)      Discount Rate ............................................................ 10

V.      **Prejudgment Interest** ................................................................... 11

VI.     **1-Year Average** ........................................................................... 11

VII.    **Conclusion** .................................................................................. 12

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## I. Background and Qualifications

1.      My name is Michael F. Sippel.  I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), and Accredited in Business Valuations (ABV).  I have eighteen years of experience in entertainment accounting, as well as performing audits of the production and distribution of motion pictures and television programs on behalf of third-party participants, including actors, directors, producers, and investors.  In that time, I have reviewed several hundreds of licensing and distribution agreements, profit participation statements, and ultimates during the course of conducting film and television audits.

2.      I am the founder of Sippel Advisory Services since September 2023. Prior to starting Sippel Advisory, I was a Principal in the Litigation Support & Forensics and Profit Participations Services departments of the accounting, tax, and advisory firm of Green Hasson Janks (GHJ), where I worked since 2007.  Prior to joining GHJ, I worked as a forensic accountant at the San Francisco firm of Hagen, Streiff, Newton & Oshiro.  I graduated from the University of California, Berkeley, in 2007.

3.      Between 2007 and 2025, I have performed or supervised hundreds of participation audits.  I have also provided the following services to clients: merchandise licensing royalty audits; contract consultation and settlement negotiation; and film and television projections and valuations.  I have taught on entertainment accounting matters for the California Society of CPAs and at the University of California, Los Angeles (UCLA), and Southwestern Law School.  I have co-authored several articles on profit participation and the entertainment industry.

4.      I have also performed a number of estate valuations related to entertainment properties for use in filing United States Estate Tax Returns, Form 706.  The return requires that the estate value the interest in a film or television series based on the market value as of the date of death.  The methodology used in this valuation is to estimate the future cash flow from the property and discount these amounts back to net present value.

5.      I have also been engaged approximately 30 times in consulting and litigation related to entertainment matters, which required analysis of ultimate cash flow projections, waterfall

CONFIDENTIAL – ATTORNEYS' EYES ONLY

analyses, estimates of future revenues and expenses, present value, and damages calculations.  In addition, performing or supervising audits and reviewing countless participation statements has allowed me to obtain an in-depth knowledge of the entertainment industry and the components of various profit participant statement reporting.

6.      I am being compensated for my involvement in this matter. My time is currently billed at a rate of $600 per hour for analysis and report preparation and $750 per hour for deposition and trial, if applicable.  My fee is not contingent on the outcome of this litigation.

7.      My resume and lists of litigation matters (i) in which I have been engaged as an expert, and (ii) for which I have testified as an expert, are attached to this report as **Exhibit A**.

## II. Scope of Work

8.      I have been retained as a damages testifying expert by counsel for Blake Lively ("Ms. Lively") in her lawsuit against Wayfarer Studios LLC et al. (collectively, the "Wayfarer Defendants"), Case No. 1-24-cv-100049-LJL (S.D.N.Y), related to the alleged wrongful conduct of the Wayfarer Defendants.

9.      Specifically, my assignment in connection with this lawsuit is to analyze and opine as to the amount of economic damages in the form of lost professional opportunities for acting, endorsements, and speaking engagements ("Lost Professional Opportunities") owed to Ms. Lively as a result of the Wayfarer Defendants' alleged wrongful conduct.

10.      In coming to my opinion here and preparing this report, I have reviewed documents produced and/or provided in this litigation by the parties and third-parties.  A list of the materials I considered is attached as **Exhibit B** to this report.

11.      In addition, I have relied on my eighteen years of entertainment experience, including auditing films and television shows, which includes my review of hundreds of agreements and accounting statements concerning entertainment assets, revenue from theatrical exhibition, television licensing, streaming platforms, other ancillary revenue streams, and distribution expenses during the course of these audits.

12.      My preparation of this expert report and the opinion set forth herein are for the

2

CONFIDENTIAL – ATTORNEYS' EYES ONLY

purpose of this matter only. Although my analysis is based upon the current record to date, it is ongoing. Accordingly, I respectfully reserve the right to revise, expand, or supplement my analysis and opinion based on any additional information that may be provided to me prior to trial.

### III. Summary of Opinion

13.     I understand that, based on the Expert Report of Mr. Richard Marks, dated October 17, 2025 ("Marks Report"), Ms. Lively has Lost Professional Opportunities as a result of the alleged wrongful conduct of the Wayfarer Defendants. In my opinion, and as noted in detail below, it is reasonable to conclude that the gross amount, including all future amounts, of Lost Professional Opportunities to Ms. Lively falls within a range of **$67,500,000 to $158,500,000.** *See* **Exhibit C**. After deducting 25% commissions/fees for her agent, business manager and legal representatives, as well as applying the present value calculation and prejudgment interest, and deducting the off-set amount, in my opinion it is reasonable to conclude that Ms. Lively's total Lost Professional Opportunities would range from **$41,550,956 to $87,793,592.** *See* Exhibit C.

### IV. Estimated Lost Professional Opportunities

14.     My opinion is based on amounts provided in the Marks Report. I have utilized the expected minimum and maximum ranges of the various categories of Lost Professional Opportunities noted by Mr. Marks for the five-year period following the premiere of the film, *It Ends With Us,* on August 6, 2025 (the "Five-Year Period"). Considering the expected timeline of each project/frequency of such engagements, I estimated the expected payment dates of each of the projects during the Five-Year Period, including the Fixed Compensation, Box Office Bonuses, Streamer Buyouts, Contingent Compensation (the latter only for an *It Ends With Us* ("IEWU" or "Film") prequel/sequel), and other forms of compensation. After estimating the monthly cash flows during the Five-Year Period, in addition to the applicable post Five-Year Period specifically for the IEWU prequel/sequel Contingent Compensation (in addition to the Streamer Buyouts on the last film in the upper end of my damages range), I applied the Net Present Value Calculation and calculated Prejudgment Interest on the amounts from the Loss Date (August 6, 2024) through the projected end of trial date (March 31, 2026).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## A. Major Studio Feature Films

15.    Mr. Marks opines that "Ms. Lively was positioned to obtain three to four lead roles, if not more, in high budget productions for major studios and/or streaming over the Five-Year Period … one of these productions would have been a prequel or sequel to the Film" and "would have resulted in fixed compensation in the range of $15,000,000 to $20,000,000, with profit participation between 15–20 points… Ms. Lively could reasonably have expected to earn an additional $10,000,000 to $15,000,000 in contingent compensation on the prequel/sequel, inclusive of both (a) profit participation, and (b) box office bonuses ranging between approximately $5,000,000 to $10,000,000. In sum, Ms. Lively's total compensation on the Film's prequel/sequel would likely have been $25,000,000 to $35,000,000." Marks Report at 16.

16.    Ms. Marks additionally opines that "Ms. Lively was further well-positioned to receive offers for non-derivative big-budget studio films for fixed compensation ranging from $10,000,000 to $15,000,000… For streaming originals, where profit participation is less common, Ms. Lively likely would have commanded compensation in the range of $12,500,000 to $20,000,000 per project, inclusive of her fixed compensation and buy-out, with a general allocation of 75% for fixed compensation and 25% for buy-out." Marks Report at 17.

17.    Assuming the amounts noted by Mr. Marks, and conservatively excluding participations (except for the IEWU prequel/sequel) and residuals,[1] I have calculated gross Lost Professional Opportunities to Ms. Lively for Major Studio Feature Films for the Five-Year Period ranging between **$47,500,000 and $90,000,000**. *See* Exhibit C & C2.

18.    For purposes of the Present Value calculation and Interest, as it relates to the estimated timing of payments, I have assumed that the three to four projects would be spread as equally as possible, given the timing of the other projects, during the Five-Year Period. And, as noted by Mr. Marks, the payments would have been made in equal weekly or bi-weekly installments during the Principal Photography, which he has estimated at 2-3 months. Marks

---

[1] *See* Marks Report at n.9-10.

4

Docusign Envelope ID: 74701483-042C-485B-827A-B5C696D69979

Report at 4.

19.    As it relates to the timing of the Streamer Buyouts noted by Mr. Marks, I utilized the actual payment dates and timing structure from Ms. Lively's acting agreement for *Another Simple Favor*. After principal photography for *Another Simple Favor* wrapped in May 2024, the first payment (25%) of the Buyout was received in May 2025, one year (or 12 months) after, and the second payment (25%) was received in August 2025, one quarter (or 3 months) later. Then, the remaining 50% is to be paid in two equal quarterly payments thereafter. *See* Marks Report at 10; BL-000021911-57; BL-000039397; BL-000039398.

20.    As it relates to the timing of the Box Office Bonuses, as noted by Mr. Marks for the IEWU prequel/sequel, I utilized (a) the actual Box Office Bonus payment dates from IEWU, which occurred in September 2024 (87.5%) and October 2024 (12.5%), 8-9 months after the end of Principal Photography. *See* Marks Report at 11; BL-000038599-636; BL-000039338; BL-000039356; BL-000039375; BL-000039339-55; BL-000039357-74; BL-000039376-94; BL-000039395; BL-000039396.

21.    As it relates to the timing of the estimated Contingent Compensation ("CC"), in excess of the $5,000,000 to $10,000,000 Box Office Bonuses, as noted by Mr. Marks for the IEWU prequel/sequel, I utilized (a) the actual activity from the three profit participation statements provided to me (through May 31, 2025) as of this report date (including the revenues, expenses and other deductions) and actual timing (including the end dates of Principal Photography and IEWU CC profit participation statements) (*see id*.) and (b) using my 18 years of experience with CC in the entertainment industry, I have estimated the additional IEWU CC amounts and payment dates. I then utilized the applicable ratios from IEWU to estimate the amounts and timing of the IEWU prequel/sequel CC, *i.e*., I used IEWU as a basis to estimate the applicable CC payments for the IEWU prequel/sequel, and to appropriately incorporate the $5,000,000 to $10,000,000 Box Office Bonuses and enhanced backend points applicable for the IEWU prequel/sequel.

22.    To expand on (b) above, I first aggregated the actual IEWU Revenues, Expenses, and Costs of Production (Direct Costs, Deferments, Supervisory Fees and Interest) per the IEWU

CONFIDENTIAL – ATTORNEYS' EYES ONLY

profit participation statements, and then recalculated the net amount earned, application of the Box Office Bonuses and payments of the additional Contingent Compensation through the application of the contractual waterfall. Then, I estimated the additional (post-May 31, 2025) revenues and expenses, by projecting ratios of revenues to box office, and estimated the future timing of those revenues, using knowledge and data accumulated during my career.  Using these ratios and timing from IEWU, I projected the timing and amounts for the IEWU prequel/sequel, assuming both greater costs (which are common for sequels) and application of the higher 15-20% backend profit participation share.  *See* Marks Report at 16.  I then ran all of the amounts through the contractual waterfall to determine Ms. Lively's estimated share of the profits, by quarter, and accounted for the $5,000,000 to $10,000,000 Box Office Bonuses and, once the Bonuses were recouped, the additional IEWU prequel/sequel CC.

23.     Because of the Box Office Bonuses and additional expected costs to produce and distribute the IEWU prequel/sequel, a significant amount of the estimated CC payments occur after the end of the Five-Year Period in August 2029. However, because CC payments continue into perpetuity, it is appropriate to account for these post Five-Year Period amounts. To be conservative, I have only estimated the IEWU prequel/sequel payments through the end of its First Cycle (10-Year Period) and have, conservatively, not considered any further "Terminal Value."

## B.  Independent, Limited Budget & Cameo Film Opportunities

24.     Mr. Marks opines: "Ms. Lively would also have been expected to secure two to three lead roles in independent or limited-budget films over the Five-Year Period.  Ms. Lively's likely compensation for such roles would have ranged from $500,000 to $5,000,000 per project, plus customary participation, depending on the budget, genre, size of the cast and other factors. Ms. Lively could also have secured one to two smaller or cameo roles on various film projects, commanding in the range of $750,000 to $1,250,000 per project per week for approximately 2-3 weeks, plus profit participation."  Marks Report at 17-18.

25.     Assuming the amounts noted by Mr. Marks, and conservatively excluding

CONFIDENTIAL – ATTORNEYS' EYES ONLY

participations and residuals,[2] I have calculated gross Lost Professional Opportunities to Ms. Lively for Independent, Limited Budget & Cameo Films ranging between **$2,500,000 and $22,500,000**. *See* Exhibit C & C2.

26. For purposes of the Present Value calculation and Interest, as it relates to the estimated timing of payments, I have assumed that the 2-3 Independent/Limited Budget projects and 1-2 Smaller Engagements/Cameos would be spread equally during the Five-Year Period (unless this conflicted with another Major Feature Film or Television Series, in which case it was moved to the nearest available time period within the Five-Year Period). And, as noted by Mr. Marks, the payments for the Independent/Limited Budget projects would have been made in equal weekly or bi-weekly installments during the Principal Photography, which he has estimated at 1-2 months. *See* Marks Report at 5.

## C. Limited Television Series

27. Mr. Marks opines: "Over the Five-Year Period, Ms. Lively would have expected to secure one to two limited and/or ongoing television series…Ms. Lively would have been in a position to command $1,000,000 per episode, with guarantees of 8–10 episodes, per season, resulting in potentially $8,000,000 to $10,000,000 for a single-season project, and therefore up to $20,000,000 for two, ten-episode series in the Five-Year Period." Marks Report at 18.

28. Assuming the amounts noted by Mr. Marks, and conservatively excluding participations and residuals,[3] I have calculated Lost Professional Opportunities to Ms. Lively for Limited Television Series ranging between **$8,000,000 and $20,000,000**. *See* Exhibit C & C2.

29. For purposes of the Present Value calculation and Interest, as it relates to the estimated timing of payments, I have assumed that the 1-2 projects would be spread as equally as possible, given the timing of the other projects, during the Five-Year Period. And, as noted by Mr. Marks, the payments would have been made in equal weekly or bi-weekly installments during the Principal Photography, which he has estimated at 4-5 months. Marks Report at 5.

---

[2] *See* Marks Report n.11-12.
[3] *See* Marks Report n.13.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

### D. Endorsements, Speaking Engagements, and Personal Appearances

30.     Mr. Marks opines: "During the Five-Year Period, Ms. Lively would have been expected to secure one or two multi-year endorsement contracts, each in the $7,000,000 to $10,000,000 range, as well as up to ten to fifteen smaller engagements, including personal appearances,  brand tie-ins and speaking engagements, each valued at $250,000 to $400,000." Marks Report at 18.

31.     Assuming the amounts noted by Mr. Marks, I have calculated Lost Professional Opportunities to Ms. Lively for Endorsements, Speaking Engagements, and Personal Appearances ranging between **$9,500,000 and $26,000,000**.  *See* Exhibit C & C2.

32.     For purposes of the Present Value calculation and Interest, as it relates to the estimated timing of payments for the Endorsements, I have assumed that the 1-2 endorsements would be spread equally during the Five-Year Period. For the specific payment structure of each of these endorsements, I applied the payment structure from the $7,500,000 L'Oreal endorsement. BL-000038937-57.

33.     For purposes of the Present Value calculation and Interest, as it relates to the estimated timing of payments for the Speaking Engagements, and Personal Appearances, I have assumed that the ten to fifteen speaking engagements and personal appearances would be spread equally during the five-year term (unless this conflicted with another film or television series noted above, in which case it was moved to the nearest available window).  Based on information provided for previous similar engagements (e.g. Meta, in June 2024), the payments were made the same month in which the event occurred.

34.     In summary, and conservatively excluding participations and residuals as noted above, I have calculated that the total estimated Lost Professional Opportunities range between **$67,500,000 and $158,500,000**.  *See* Exhibit C & C2.

### E. Deductions

35.     It is my understanding that Ms. Lively pays commission as follows on all applicable revenue streams: (i) 10% to her agency (William Morris Endeavor); (ii) 10% to her business

8

CONFIDENTIAL – ATTORNEYS' EYES ONLY

management firm (360 Management); and (iii) 5% for legal representation (Sloane Offer Weber Dern).  *See, e.g.*, BL-000039339-55; BL-000039357-74; BL-000039376-94; BL-000039395; BL-000039396; BL-000039397; BL-000039398.

36.    As such, I have deducted the total 25% on all amounts, resulting in deductions ranging from **$16,875,000 to $39,625,000**, to arrive at the "Net" Lost Professional Opportunities to Ms. Lively, ranging from **$50,625,000 to $118,875,000.**  *See* Exhibit C & C2.

F.  **Off-Set**

37.    In coming to my conclusions, I have deducted actual net payments received during the Five-Year Period as of the last available statement for review, consisting of $157,500 received in February 2025 related to the "Secrets of the Penguins" (gross amount of $210,000 less 25% fees/commissions).  BL-000039060-74.  I reserve the right to reduce the damages for actual amounts received after this report is issued.

G.  **Present Value**

38.    My damages calculation includes estimated amounts owed to Ms. Lively in the future.  In order to calculate the amounts due through March 31, 2026 (the last day of the month in which trial in this matter is scheduled to begin), I have performed a Net Present Value calculation to reflect the overall discount for valuing future amounts today.  Present value represents the current value of a future sum of money or stream of cash flows, discounted at a specific interest rate.  The formula for Present Value is as follows: Future Value divided by (1 + Rate of Return) to the Nth power, where N = Number of Periods. For example, $110 due in 12 months' time has a present value of $100 today, if invested at an annual rate of 10 percent.

39.    As noted above, I utilized the Principal Photography timing information provided by Mr. Marks, as well as my accumulated industry and technical knowledge, and prepared monthly timing estimates for the Five-Year Period, as well as an additional Five-Year period to account for the estimated Contingent Compensation payments for the IEWU Sequel (in addition to the Streamer Buyouts on the last film in the upper end of my damages range).

40.    Once all of the relative cash flows to Ms. Lively were estimated, the cumulative

cash flow was discounted to its present value on March 31, 2026 (*i.e.*, through March 31, 2026). Applying the applicable 26-30% Discount Rate (see below), the estimated Net Lost Professional Opportunities to Ms. Lively ranging from **$50,625,000 to $118,875,000** results in net present value damages ranging from **$41,291,420 to $87,233,054**. *See* Exhibit C, C4-A, C4-B.

### (i) Discount Rate

41.     The discount rate is the rate of return used to discount future cash flows to calculate their present value. It represents the opportunity cost of capital or the expected rate of return. To arrive at an appropriate discount rate for my Net Present Value calculation, it would be appropriate to use the Capital Asset Pricing Model (CAPM), plus an applicable Size Risk Premium and an additional "Company Specific" Risk Premium. CAPM is a model of the relationship between the systematic risk (inherent in investing) and its expected return. It is a financial model that performs a straight line relationship between the reasonable return of investment and risk. CAPM utilizes an asset's beta (measure of risk), the risk-free rate (commonly approximated by the Treasury bill rate), and the market's equity risk premium (expected return on a risky asset minus the risk-free rate). In CAPM, the expected return is measured based on its risk as compared to the market overall. CAPM is broadly applied in finance to estimate expected return based upon the expected cash flows and cost of capital.

42.     The formula for CAPM is as follows: Expected Return on Investment = Risk Free Rate + (Beta of the investment X Equity Risk Premium). As a basis, I have utilized the "Kroll Cost of Capital Navigator" to estimate the applicable elements of the CAPM Model. *See* Exhibits C & D. Considering the applicable inputs [Yearly expected cash flows ("Five-Year Average Net Income") ranging between $10,000,000 to $25,000,000, Entertainment Industry – "Movie & Entertainment" and 1 Employee], based on the most recent information included by Kroll within the analysis, the Risk Free Rate (determined as the Federal Reserve Spot 20-Year Treasury Yield, as of October 2, 2025) is 4.66%. The Beta (determined by (i) S&P Global Market Intelligence (ii) MSCI, as of June 30, 2025) is 1.52. The Equity Risk Premium (determined by (i) The Center for Research in Security Prices (ii) Kroll Research (iii) U.S. Department of the Treasury (iv) U.S.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Treasury Yield Curves (v) S&P Global Market, as of December 31, 2024) is 6.26%. And, for the Size Risk Premium, I utilized 4.23%, representing the average of: (a) $10,000,000 and $25,000,000 "Five-Year Average Net Income" and (b) Kroll Regression Equation & Portfolio-based Size Study analysis. The total CAPM + Size Premium per Kroll amounts to 18.41%. Finally, I have also applied an additional "Company Specific" Risk Premium of 7.5% (Minimum scenario) and 11.5% (Maximum scenario) to account for the specific risk in this matter. Considering both Kroll and my expert judgment, I have rounded up and calculated a discount rate of 26% (Minimum) and 30% (Maximum), which I believe to be fair and reasonable, given the relevant facts and elements of this matter. *See* Exhibit C6.

## V. Prejudgment Interest

43. I have calculated prejudgment interest on amounts due to Ms. Lively during the period of August 6, 2024 through March 31, 2026, the projected end date of trial, utilizing the annual rate of return on US Treasury Bills (3.65% as of October 9, 2025) (Resource Center | U.S. Department of the Treasury). Prejudgment interest amounts range from **$417,036 to $718,038**. *See* Exhibits C, C4-A, C4-B, C5-A, C5-B.

## VI. 1-Year Average

44. As an alternative approach, I was asked to quantify damages using the last one year of Ms. Lively's actual activity just prior to the alleged Wayfarer Defendants' misconduct as the basis for the estimated Lost Professional Opportunities during the Five-Year Period. During that year, Ms. Lively earned a total of $11,750,000, consisting of compensation from *Another Simple Favor, It Ends With Us*, and a Meta event. Extrapolating this amount over the Five-Year Period results in total Lost Professional Opportunities of $58,750,000, less 25% Deductions of $14,687,500, resulting in Net Lost Professional Opportunities of $44,025,000. After applying the present value calculation (utilizing a discount rate of 25%) and the additional prejudgment interest, as well as the deduction for the off-set amount, in this alternative 1-year average scenario, in my opinion it is reasonable to conclude that the Lost Professional Opportunities to Ms. Lively are **$34,300,124.** *See* **Exhibit D**.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## VII. Conclusion

45. In total, based on the information and amounts provided by Mr. Marks, and my expertise, and assuming the estimated timing of payments noted above, after deductions, the present value calculation and the additional prejudgment interest, as well as the deduction for the off-set amount, in my opinion it is reasonable to conclude that the Lost Professional Opportunities to Ms. Lively range between **$41,708,456 - $87,793,592.** *See* Exhibit C. Alternatively, based on a 1-year average, it is reasonable to conclude that the Lost Professional Opportunities to Ms. Lively are **$34,300,124.** *See* **Exhibit D**.

Dated: October 17, 2025

Signed by:

*Michael Sippel*

3A756D2AC79442E...

Michael F. Sippel

12

Docusign Envelope ID: 74701483-042C-485B-927A-B5C696D60979

**EXHIBIT A**



# MICHAEL SIPPEL

███████████████ | ███████ | www.sippeladvisory.com

## Summary

Determined and effective CPA, CFE, ABV, with 17 years of entertainment experience. Specializes in litigation support experience in the area of film finance, projections and damage calculations, expert witness testimony, and entertainment valuations. Significant experience with entertainment profit participations, including performing audits of the production and distribution of motion picture and television programs.

## Services/Skills

- Entertainment & Media
- Litigation Support
- Expert Witness
- Damages Calculation

- Profit Participation Audits & Services
- Entertainment Valuations
- Royalty & Licensing
- Forensic Services

## Experience

Sippel Advisory Services
**Owner**
*2023 – Current*

- Litigation Support; expert witness testimony and consultation; damages calculations, with a focus on entertainment. (See List of Litigation Engagements)

Green Hasson Janks LLP
**Principal, Litigation Support & Profit Participations**
*2007 - 2023*

- Valuation of film and television properties; formal (estate tax purposes, etc.) and informal (future projections analysis, etc.).

- Forensic investigations, with a focus on entertainment,

- Audits of production and distribution of motion picture and television programs on behalf of investors/financiers and third-party participants; review of the distribution agreements between the participants and the distributor to determine whether the accountings provided by the distributor are in accordance with such agreements; contract negotiation for profit and royalty participants; settlement negotiation of audit claims, etc.

Hagen Streiff Newton & Oshiro
**Staff Forensic Accountant**
*2005 - 2007*

## Education and Training

University of California-Berkeley
**Bachelor of Arts, Interdisciplinary Studies (Business & Economics)**
*12/2007*

Docusign Envelope ID: 74701483-042C-485B-927A-B5C696D60979

## Certifications

Texas
**Certified Public Accountant** ("CPA")
*02/2015*

California
**Certified Public Accountant** ("CPA")
*12/2010*

**Certified Fraud Examiner ("CFE")**
11/2011

**Accredited in Business Valuation ("ABV")**
06/2017

## Activities and Honors

- American Institute of Certified Public Accountants
- Beverly Hills Bar Association
- California Society of Certified Public Accountants
- Association of Certified Fraud Examiners

## Testimony In Last Four Years

1.  Arbitration testimony on 10/14/22 and 12/5/22; *PGS Entertainment v. Bagdasarian Productions, LLC*; Arbitration No. 01-22-0002-2640.

2.  Arbitration testimony on 5/30/24; *Bagdasarian Productions, LLC. v. PGS Entertainment*; Arbitration No. 01-22-0005-2712.

3.  Deposition testimony on 11/21/24 and 12/12/24; *Rueda v Pacquiao, Roach, Davidson, CBS, & Showtime*; Case No. BC 611486 (California State Court).

## Sippel Litigation Engagements: (as of August 28, 2025)

Diece-Lisa Industries v. Disney et. al. ("Toy Story 3")

Eclipse No 35 LLP v. The Commissioners for Her Majesty's Revenue and Customs

Incarcerated Entertainment v. Warner Bros. ("War Dogs")

Ingenious Film Partners/InsideTrack Productions and The Commissioners for Her Majesty's Revenue and Customs

Matrix Film Investment One Pty Limited and Ors v Alameda Films LLC and Ors ("The Matrix")

Napoleon Pictures v. Twentieth Century Fox/Paramount Pictures ("Napoleon Dynamite")

Rogue Marble v. Warner Bros. ("Demolition Man")

Candu v. LMNO. ("The Little Couple")

Wark Entertainment, Inc. et. al. v. Fox et. al.   ("Bones")

Myriad Pictures, et. al v. Lionsgate Entertainment ("Van Wilder")

Nye v. Disney. ("Bill Nye the Science Guy")

Century of Progress, et. al v. Studiocanal et. al. ("This is Spinal Tap")

Wind Dancer v. Disney ("Home Improvement")

Kunitz & Larsen v. Endemol Entertainment ("Wipeout")

Red Granite v. Paramount ("Wolf of Wall Street")

Aperture v. ProSight ("Billionaire Boys Club")

Aperture v. Burmeister ("The Wanting")

Mr. Rowe, Barness, Ahearne & Other and Ingenious Media Holdings PLC & Others, Ingenious Media, LTD and Mr. McKenna

RT v. Grandma (various films)

Docusign Envelope ID: 74701483-042C-485B-927A-B5C696D69979

ARTHUR LEE ALFRED, II, et al. v. WALT DISNEY PICTURES ("The Pirates of Caribbean")

PGS Entertainment v. Bagdasarian Productions ("Alvinnnn!!! And The Chipmunks")

John Vizaniaris v. Cinedigm ("Dead Talk Live")

Octavius Prince v. RVW Productions ("Roe vs Wade")

Village Roadshow v. WarnerMedia ("Matrix 4")

Christopher Bernand Upham & Others v. HSBC UK Bank PLC ("Eclipse")

Tradesol Group Ltd. V. VPlus Co., Nguyen Duy Hota and John Does 1-25

Gabriel Rueda v Pacquiao, Roach, Davidson, CBS/Showtime ("Mayweather/Pacquiao Boxing Fight")

Wendy Poole v Janes, Green Pastures Studio, Cricket Film LLC, Requiem Pictures LLC ("Cricket")

Directors Guild of America, Inc. v Metro-Goldwyn-Mayer Studios, Inc.

Docusign Envelope ID: 74701483-042C-485B-927A-B5C696D60979

**EXHIBIT B**

## FACTS OR DATA CONSIDERED OR RELIED UPON

### Documents

1. BL-000021911-57
2. BL-000038599-636
3. BL-000038863-80
4. BL-000038881-88
5. BL-000038889-936
6. BL-000038937-57
7. BL-000038958-60
8. BL-000038961-66
9. BL-000038967-9011
10. BL-000039012-13
11. BL-000039014-54
12. BL-000039055-59
13. BL-000039060-74
14. BL-000039075-106
15. BL-000039107-8
16. BL-000039109-112
17. BL-000039170
18. BL-000039171
19. BL-000039172-83
20. BL-000039184-93
21. BL-000039194-96
22. BL-000039338
23. BL-000039339-55
24. BL-000039356
25. BL-000039357-74
26. BL-000039375
27. BL-000039376-94
28. BL-000039395
29. BL-000039396
30. BL-000039397
31. BL-000039398

### Pleadings

1. 2025-01-31 Wayfarer Defendants' Amended Complaint, Dkt. 50
2. 2025-07-30 B. Lively Second Amended Complaint, Dkt. 521

### Other

1. Expert Report of Richard Marks, dated October 17, 2025.
2. Kroll Cost of Capital Navigator.
3. Residual statements.

1

Docusign Envelope ID: 74701483-042C-485B-927A-B5C696D60979

**EXHIBITS C & D**

**(PRODUCED NATIVELY)**