# EXHIBIT D

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____
                                   )
BLAKE LIVELY,                      )
                                   )
          Plaintiff,               )
                                   )
     vs.                           ) No. 1:24-CV-10049-LJL
                                   ) (Consolidated with
WAYFARER STUDIOS LLC, a            ) 1:25-cv-00449-LJL)
Delaware Limited Liability         )
Company, JUSTIN BALDONI, an        )
individual, JAMEY HEATH, an        )
individual, STEVE SAROWITZ, an)  HIGHLY CONFIDENTIAL -
individual, IT ENDS WITH US   )  ATTORNEYS' EYES ONLY
MOVIE LLC, a California        )
Limited Liability Company,     )
MELISSA NATHAN, an individual,)
THE AGENCY GROUP PR LLC, a     )
Delaware Limited Liability     )
Company, JENNIFER ABEL, an     )
individual, JED WALLACE, an    )
individual, and STREET         )
RELATIONS INC., a California   )
Corporation,                   )
                               )
          Defendants.          )
_____)
                               )
(RELATED CONSOLIDATED CASE.    )
_____)

    VIDEOTAPED DEPOSITION OF SHELLEY ANNE CARROLL
            Los Angeles, California
            Thursday, September 25, 2025

Reported by:
RENEE A. PACHECO, RPR, CLR
CSR No. 11564

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 47

concerns or complaints that she had regarding

Wayfarer or the conduct of Mr. Baldoni or Mr. Heath?

A    During filming?

Q    Yes.   During filming did you ever discuss

Ms. Lively's concerns regarding the conducts of                10:04AM

Mr. Baldoni or Mr. Heath?

A    Yes.

Q    Frequently?

A    Sometimes.

Q    On numerous occasions?                                    10:04AM

A    A few occasions.

Q    Would Ms. Lively confide in you as she had

her hair and makeup done or undone?

MS. GAROFALO:  Objection.

THE DEPONENT:  Yes.                                            10:04AM

MS. BENDER:  This is a good time for a

break.

THE VIDEOGRAPHER:  The time is 10:04 a.m.

Off record.

(Recess.)                                                     10:25AM

THE VIDEOGRAPHER:  The time is 10:25 a.m.

We're back on record.

MS. BENDER:  Thank you.  Before we begin, I

just wanted to note for the record that Lindsey

Strasberg on behalf of plaintiff is on the Zoom as             10:26AM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 73

A    She had said that he, Mr. Baldoni, wanted it to be a lot more intimate, more kissing, and her view on it was that they shouldn't give away everything right away at that point in the script. It should be more of a tease and not to give the    11:00AM audience -- give it all away to the audience at that point.

Q    And did Ms. Lively share her discomfort with that scene with you after the fact?

A    Yes.    11:00AM

Q    She was uncomfortable in the way that Mr. Baldoni had improvised the scene to make it more intimate?

A    Yes, and comments that he had made.

Q    And what were those comments that    11:01AM Mr. Baldoni had made to Ms. Lively?

A    She said that while he nuzzled into her neck that he said, "It smells so good" or "You smell so good."

Q    And Ms. Lively had the understanding that    11:01AM that was not something that was said in character; correct?

        MS. GAROFALO:  Objection.

        MR. ROBINSON:  Object to form.

        THE DEPONENT:  I don't know that.    11:01AM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 76

THE DEPONENT:  From what she told me, yes. It's my experience that those types of scenes are fully discussed between the actors before they're filmed.

BY MS. BENDER:                                          11:04AM

    Q   In your experience, Ms. Carroll, the type of scene that was the montage scene would be fully discussed between the actors before they're filmed?

    A    In my experience, yes.

    Q   So in your experience, any kissing that           11:04AM
would have been included in the montage scene should have been fully discussed between the actors before it was filmed?

        MS. GAROFALO:  Objection.

        THE DEPONENT:  That's my experience, yes.         11:04AM

BY MS. BENDER:

    Q   Did you ever discuss Ms. Lively's interaction with Mr. Baldoni during the dance montage scene with anyone else on set?

    A   No.  Maybe Vivian.                                11:05AM

    Q   Do you recall what you might have said to Ms. Vivian -- to Ms. Baker or Ms. Baker to you regarding that?

    A   No.

    Q   Do you recall any other instances in which        11:05AM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 77

Mr. Baldoni improvised to introduce more intimacy into a scene than scripted?

MS. GAROFALO:  Objection.

THE DEPONENT:  I believe there was a scene where they were supposed to be making love, and I     11:05AM think he wanted her to react like she was having an orgasm, made her feel uncomfortable.

BY MS. BENDER:

Q   When you're saying that Mr. Baldoni wanted Ms. Lively to react like she was having an orgasm,     11:06AM was this direction that Mr. Baldoni was providing to Ms. Lively on set while they were filming that scene?

A   Yes.

Q   Was it your understanding that Mr. Baldoni     11:06AM had not discussed the direction of Ms. Lively having -- strike that.

It was your impression that including the orgasm in the direction of the scene was not something previously discussed between Mr. Baldoni     11:06AM and Ms. Lively?

MS. GAROFALO:  Objection.  Sorry. Objection.

THE DEPONENT:  I'm not -- I don't know.

///     11:07AM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 91

Q   You understood that Mr. Baldoni had discussed his pornography addiction with Ms. Lively?

A   Yes.

Q   Did that seem appropriate to you?

A   I couldn't imagine what the conversation   11:26AM
was that prompted that.

Q   You can't think of a conversation in which it would be appropriate for Mr. Baldoni to have discussed a pornography addiction with Ms. Lively?

A   I can't.   11:26AM

Q   Do you recall Ms. Lively's reaction to her discussion with Mr. Baldoni regarding pornography?

A   No.

Q   Did you have an impression as to whether Ms. Lively was uncomfortable regarding the   11:27AM
discussion with Mr. Baldoni as to pornography?

MS. GAROFALO:  Objection.

THE DEPONENT:  I can't say how she felt about it.  I just know she repeated the comment and I -- to me.   11:27AM

BY MS. BENDER:

Q   It was remarkable enough to Ms. Lively that she had repeated the comment to you directly; is that right?

MS. GAROFALO:  Objection.   11:27AM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 120

other films; right?

A   Yes.

Q   Had you ever witnessed Ms. Lively being upset and distressed with the same frequency as a result of conduct by other individuals on set?      12:31PM

A   No, I haven't.  This was more of a unique experience.

Q   And when you say this was a unique experience, why was "It Ends With Us" a unique experience?      12:31PM

A   I guess because of the level of her being upset or distressed or, you know, those types of things.  On other projects, she's lighthearted and fun, and she didn't display those very often on this particular project.      12:32PM

Q   Was it your perception that Ms. Lively's demeanor was substantially different from how you had witnessed her on other film projects?

A   Yes.

Q   Do you recall learning that Mr. Baldoni had      12:32PM
stated that he could speak to the dead?

A   Yes.

Q   And how did you learn that Mr. Baldoni had indicated that he could speak to dead?

A   Blake told me a conversation that Justin      12:33PM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 121

and Blake had had about her deceased father.

Q    And at that point, what did Ms. Lively tell you during that conversation?

A    That he told her a story about having a dream about her dad and then something about a jacket and finding money in the coat pocket that somehow related to her father.                                    12:33PM

Q    Was Mr. Baldoni claiming that he had spoken to Ms. Lively's recently deceased father?

A    Say that again.                                    12:33PM

Q    Was Mr. Baldoni claiming that he had spoken to Ms. Lively's recently deceased father?

A    Through a dream or a vision.

Q    Was Ms. Lively uncomfortable with that, from what you perceived?                                    12:34PM

A    Yes, she was.

Q    Did you think that that was appropriate --

MS. GAROFALO:  Objection.

BY MS. BENDER:

Q    -- behavior by Mr. Baldoni?                                    12:34PM

MS. GAROFALO:  Objection.

THE DEPONENT:  I can't say either way.

BY MS. BENDER:

Q    Did you find it unusual?

A    Yes.                                    12:34PM

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 245

I, the undersigned, a Certified Shorthand Reporter of the State of California, Registered Professional Reporter, Certified Live Note Reporter, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [  ] was [  ] was not requested. I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: September 26, 2025

RENEE A. PACHECO

CSR No. 11564 RPR, CLR