UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---

BLAKE LIVELY,

Plaintiff,

vs.          CASE NO. 24-CV-10049-LJL (LEAD CASE)

25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

_____

JENNIFER ABEL,

Third-party Plaintiff,

vs.

JONESWORKS, LLC,

Third-party Defendant.

_____

WAYFARER STUDIOS LLC, et al.

Consolidated Plaintiffs,

vs.

BLAKE LIVELY, et al.

Consolidated Defendants.

_____

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JEFFREY KINRICH

Los Angeles, California

Tuesday, November 25, 2025

Stenographically Reported by:  Ashley Soevyn,
CALIFORNIA CSR No. 12019

Pages 1 - 128

Page 1

                    Is it your understanding that -- let's    11:53:48

start with Betty B.  Blake Lively would not be

entitled under the corporate documents to the value

of lost cash flows at any point?

                    MS. CONNOLLY:  Objection.              11:54:07

                    THE WITNESS:  That sounds like a legal

question.  It's not within my expertise.

BY MR. KALTGRAD:

        Q    Okay.  Well, do you have an understanding

that if the company distributed all of its profits    11:54:19

today, would Ms. Lively be entitled to the value of

lost cash flows?  Do you have an opinion on that?

                    MS. CONNOLLY:  Objection.

                    THE WITNESS:  Are you distinguishing in

that question between cash flows and profits or are    11:54:33

you not intending to?

BY MR. KALTGRAD:

        Q    I am not intending to.

        A    If the company made distributions, she

would get her share.                                    11:54:44

        Q    What do you mean by "her share"?

        A    It would flow through various entities,

and she would ultimately benefit from her

shareholdings.

        Q    So is it your understanding that if she    11:54:59

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

has a certain interest in the company, that's the    11:55:01

amount of the lost profits or cash flows -- I am

using that interchangeably at this point -- that she

would receive if the company distributed those

profits?    11:55:14

MS. CONNOLLY:  Objection.

THE WITNESS:  Unless there is a subtlety

that I'm missing, the answer is yes.

BY MR. KALTGRAD:

Q    Are you aware of whether the corporate    11:55:22

documents of Betty B describe how distributions are

made to shareholders?

MS. CONNOLLY:  Objection.

THE WITNESS:  I am not aware.  I would

have to go look to answer that question.    11:55:30

BY MR. KALTGRAD:

Q    Okay.  Are you aware whether Blake Lively

has any direct ownership interest of Betty B

Holdings?

MS. CONNOLLY:  Objection.    11:55:48

THE WITNESS:  You mean as opposed to

through LOL HATA, for example?

BY MR. KALTGRAD:

Q    Yes.

A    My understanding is all of her businesses    11:56:00

Page 84

are held through her -- I will call it business
holding company, that's my phrase.  Not meant to
imply anything other than I don't know what else to
call it.  Which is LOL HATA.

Q    If you look at paragraph 21 of your
report, you say:

(As read):

"The profits under each scenario are
calculated using a discounted cash flow
DCF approach."

You see that?

A    I'm sorry, what page?

Q    Paragraph 21.

A    Yes.  I see that.

Q    Did you consider any other approach to
calculating lost profits?

A    I guess conceptually, I did.  Because I'm
always thinking at the beginning of any case I work
on, what are the approaches that make any economic
or logical sense.  I didn't spend any great amount
of time on any other approaches because none
other -- no other approach seemed to be relevant in
this case.  So, you know, there wasn't any -- there
wasn't more than, you know, two seconds worth of
consideration.  But I at least tick through them in

Page 85

Q    Okay.  So I was reading:                     12:50:55

(As read):

"I calculate the but-for value of

Blake Brown to be $108.6 million as of

March 31, 2026."                    12:51:02

You can see that?

A    I do.

Q    And you reference Exhibit 1 of your report.  So I'm going to turn to Exhibit 1.  I think the exhibits are before the appendices, if that's --    12:51:40

A    That clears up my current problem.  Thank you.

All right.  I'm there.

Q    All right.  And I'm just looking -- excuse me -- at note number 1, which says:    12:52:03

(As read):

"Ms. Lively owns 100 percent of LOL HATA, which owns 40 percent Family Hive as of March 4, 2022.  This analysis assumes that Family Hive owns    12:52:15 100 percent of Blake Brown."

Do you see that?

A    I do.

Q    Do you know whether Ms. Lively still owns 100 percent of LOL HATA?    12:52:24

Page 101

MS. CONNOLLY:  Objection.                    12:52:27

THE WITNESS:  That's my assumption, and that is what I believe to be true.  I don't have personal knowledge.

BY MR. KALTGRAD:                             12:52:34

Q    Do you know if that percentage has ever changed?

MS. CONNOLLY:  Objection.

THE WITNESS:  The same answer.

BY MR. KALTGRAD:                             12:52:39

Q    Do you know if LOL HATA still owns 40 percent of Family Hive?

A    That is my understanding and assumption. I have no personal knowledge other than that is what I'm informed.                            12:52:49

Q    And what is your understanding based on?

A    That that's what I've been informed.

Q    Were you informed by Family Hive?

MS. CONNOLLY:  Objection.

THE WITNESS:  I was informed by my staff,   12:52:57 who has inquired and received that information.

BY MR. KALTGRAD:

Q    Do you know if that percentage has ever changed?

A    I don't know if it was something       12:53:14

Page 102

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Dated this 26th day of November, 2025.

ASHLEY SOEVYN

CSR No. 12019

Page 126