UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                    :
WAYFARER STUDIOS LLC, et al.,                                       :
                                                                    :
                                    Plaintiffs,                     :
                                                                    :
                -v-                                                 :
                                                                    :
BLAKE LIVELY, et al.,                                               :
                                                                    :
                                    Defendants.                     :
                                                                    :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/12/2026__

25-cv-449;
24-cv-10049 (related)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

This case, No. 25-cv-449 (the "Wayfarer Action"), and the related action, No. 24-cv-10049 (the "Lively Action"), involve the film *It Ends With Us* (the "Film") and the contentious fallout between its two co-stars, Blake Lively ("Lively") and Justin Baldoni ("Baldoni"). Before the Court now is Lively's motion for fees, costs, and damages under California Civil Code Section 47.1 brought in the Wayfarer Action. *See* Dkt. Nos. 742, 748.[1] For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

The Court has previously outlined the background of this dispute at length. *See, e.g.*, *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 714–731 (S.D.N.Y. 2025). Familiarity with the prior proceedings is presumed.

As relevant for present purposes, on December 20, 2024, Lively filed a complaint with the California Civil Rights Department ("CRD") against Baldoni and his co-defendants, the

---

[1] Unless otherwise indicated, citations to docket entries are to entries in the consolidated docket, No. 24-cv-10049.

Wayfarer Parties,[2] alleging, among other things, that Baldoni and others sexually harassed her on the set of the Film and that the Wayfarer Parties retaliated against her for raising complaints about that harassment by launching a smear campaign to tarnish her reputation. *See id.* at 728. After Lively filed her CRD complaint, the CRD issued a "right to sue" notice, and Lively filed suit in this Court on December 31, 2024. *See* Dkt. No. 1. Approximately two weeks later, the Wayfarer Parties counter-sued, asserting claims, including defamation, against Lively and others for making statements that the Wayfarer Parties "engaged in, permitted, and/or failed to prevent sexually inappropriate conduct toward Lively and others, and that [they] retaliated against Lively and others for reporting the alleged sexual misconduct including by propagating false and misleading narratives about Lively for the purpose of damaging her image and reputation." *See* Wayfarer Action, Dkt. No. 1 ¶¶ 296, 298.

On June 9, 2025, the Court dismissed the Wayfarer Parties' amended complaint. *See Lively*, 786 F. Supp. 3d at 787–88. With respect to the defamation claim against Lively—for which the parties agreed that California law applied, *id.* at 734—Lively moved to dismiss by invoking at least three different California privileges, each of which she asserted independently barred the claim against her, *see* Dkt. No. 145 at 15–21. In its opinion and order dismissing the Wayfarer Action, the Court agreed that one of these privileges, the fair report privilege, precluded the Wayfarer Parties from bringing a defamation claim against Lively for providing a copy of her CRD complaint to the New York Times (the "Times"). *Lively*, 786 F. Supp. 3d at 758–64. In particular, the Court explained that even if this alleged conduct preceded the formal filing of the CRD complaint, California's "fair report privilege extends to advance

---

[2] The Wayfarer Parties are Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel.

communication to [the media] of a complaint so long as the party intends in good faith to file it in a public official proceeding." *Id.* at 760.  The Court further held that the Wayfarer Parties had insufficiently alleged that text messages Lively may have provided to the Times were defamatory, or that Lively was responsible for any statements made by her husband Ryan Reynolds ("Reynolds") or publicist Leslie Sloane ("Sloane").  *Id.* at 763–64, 771–74.

In dismissing the defamation claim against Lively with prejudice, the Court declined to consider the alternative grounds for dismissal offered by Lively—namely, that her communications were protected by a recently enacted law, California Civil Code Section 47.1, which establishes a qualified privilege for communications made without malice by an individual regarding an incident of sexual assault, harassment, or discrimination.  *Id.*  Section 47.1 not only provides that such communications are privileged and cannot form the basis for a defamation claim, but that "[a] prevailing defendant in any defamation action brought against [a] defendant for making a communication that is privileged under this section" shall be entitled to attorneys' fees, costs, treble damages, and punitive damages.  Cal. Civ. Code § 47.1(b).  The Court explained that it "ha[d] not ruled on whether Lively's statements were privileged under California Civil Code § 47.1," and it denied Lively's motion for fees and damages under that statute without prejudice.  *Lively*, 786 F. Supp. 3d at 788.

The Court dismissed all other claims in the Wayfarer Action with prejudice except for the Wayfarer Parties' claims for tortious interference with contract and breach of implied contract, as to which the Court granted leave to amend.  *Id.* at 787–88.  The Wayfarer Parties did not do so.  On October 31, 2025, the Court entered final judgment in the Wayfarer Action.  *See* Wayfarer Action, Dkt. No. 206.  At the same time, the Court delayed the finality of the judgment for appellate purposes such that the time for the Wayfarer Parties to appeal the dismissal of their

complaint would begin to run only once the Court ruled on Lively's renewed motion for fees under Section 47.1. *Id.* at 3–4. Briefing on the renewed Section 47.1 motion was completed on September 29, 2025. *See* Dkt. Nos. 742, 748, 797, 824.

Meanwhile, on May 7, 2026, following an extensive discovery and summary judgment process in the Lively Action, the parties filed a notice of settlement and joint stipulation dismissing that action, which was scheduled to go to trial on May 18, 2026. *See* Dkt. No. 1434. The settlement ends both matters—with one notable exception. The stipulation states that "Lively does not release, and retains all claims, rights, and remedies in connection with her pending Motion for Attorneys' Fees, Treble Damages and Punitive Damages under California Civil Code Section 47.1 in the Wayfarer Action (Dkt. No. 742 in 24-cv-10049) (the '47.1 Motion')." *Id.* ¶ 2. The stipulation adds that the parties "agree that the 47.1 Motion is not withdrawn and remains pending before this Court. The Stipulating Parties further agree that they hereby irrevocably waive any appeal from the Court's determination of the 47.1 Motion." *Id.*

On May 28, 2026, the Court scheduled oral argument on Lively's Section 47.1 motion and permitted the parties to file supplemental letter briefs addressing issues regarding burdens of proof. Dkt. No. 1437. The parties filed their letters on May 31, 2026. Dkt. Nos. 1438, 1439. The Court heard argument on June 1, 2026.

## LEGAL STANDARD

Lively brings her Section 47.1 motion under Federal Rule of Civil Procedure 54(d). *See* Dkt. No. 748-1 at 20, 24–25 (indicating that the Court should resolve the motion in accordance with the procedures outlined in Rule 54). That rule, entitled "Costs; Attorney's Fees," provides in relevant part that costs (other than attorneys' fees) should typically be awarded to a prevailing party, and that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion" within fourteen days after the entry of judgment, "unless the substantive law requires

4

those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A)–(B). In moving for fees, a party must "specify the judgment and the statute, rule, or other grounds entitling [her] to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). Rule 54(d) further outlines certain procedures for awarding and calculating fees: "Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the [fees] motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a)." Fed. R. Civ. P. 54(d)(2)(C). "[C]laims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. §1927" are exempted from the procedural requirements applicable to motions for attorneys' fees. Fed. R. Civ. P. 54(d)(2)(E).

Lively identifies California Civil Code Section 47.1 as "the statute, rule, or other grounds entitling [her] to the award" of fees and damages. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii). That law was enacted in 2023 as a response to the #MeToo movement and expanded on an existing privilege that protected complaints of sexual harassment to an employer or court. *See Lively*, 786 F. Supp. 3d at 757. Section 47.1 was passed with overwhelming support in both chambers of the California legislature and seeks to advance two primary aims. The first is to shield "survivors of sexual assault, harassment, and discrimination from defamation lawsuits"—and, in particular, the burdensome and invasive discovery process those lawsuits often entail—"by clarifying that claims made in good faith are a form of protected speech." Dkt. No. 146-1 at 54, 58.[3] The second aim is to compensate survivors for successfully defending themselves against meritless and retaliatory defamation suits by permitting them to recover attorneys' fees and damages incurred as a result of the suits. *Id.*

---

[3] Citations to this docket entry use ECF pagination.

To accomplish these goals, the law establishes that "[a] communication made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination is privileged under Section 47." Cal. Civ. Code § 47.1(a). (Section 47 provides for a number of other defamation privileges, including the fair report privilege.) Section 47.1 clarifies that the privilege and benefits under the section apply only where the individual has or at any time had "a reasonable basis to file a complaint of sexual assault, harassment, or discrimination, whether the complaint is, or was, filed or not." *Id.* § 47.1(c). The statute defines a "communication" as "factual information related to an incident of sexual assault, harassment, or discrimination experienced by the individual making the communication, including, but not limited to," acts of workplace harassment, discrimination, or retaliation under California Government Code Section 12940, also known as California's Fair Employment and Housing Act or FEHA, and acts of harassment in business, service, and other professional relationships—including ones between an individual and a director or a producer—under California Civil Code § 51.9. *See id.* § 47.1(d).[4] As for the issue of compensation, the statute provides that:

> A prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged under this section shall be entitled to their reasonable attorney's fees and costs for successfully defending themselves in the litigation, plus treble damages for any harm caused to them by the defamation action against them, in addition to punitive damages available under Section 3294 or any other relief otherwise permitted by law.[5]

*Id.* § 47.1(b). Putting this together, a defamation defendant is entitled to recover fees and damages under Section 47.1 where: (1) they prevail in the action; (2) the communications at

---

[4] Other covered acts include sexual harassment under the state's education and housing codes. *See* Cal. Civ. Code § 47.1(d).

[5] California Civil Code § 3294 provides that: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant had been guilty of oppression, fraud, or malice, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a).

6

issue in the action conveyed factual information related to an incident of sexual assault, harassment, or discrimination that the individual personally experienced, including workplace harassment under FEHA; (3) the communications were made without malice; and (4) there is or was a reasonable basis to file a complaint regarding the assault, harassment, or discrimination.

In seeking both to deter speech-chilling lawsuits and to compensate survivors of sexual assault, harassment, and discrimination for harms suffered as a result of such lawsuits, Section 47.1 closely resembles other so-called anti-SLAPP (Strategic Lawsuit Against Public Participation) statutes.  These laws aim to protect petition and free-speech rights by permitting defamation defendants to file special—typically expedited—motions to dismiss, and by awarding successful movants their court costs and attorneys' fees.  *See* 19 Wright & Miller's Federal Practice & Procedure § 4509 (3d ed. 2026).  California's anti-SLAPP statute, for example, provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  The law further requires a hearing on such a motion not more than 30 days after service of the motion, unless a court's docket conditions require otherwise; a stay of discovery upon notice of such a motion; and attorneys' fees and costs to defendants whose motions to strike succeed.  *Id.* § 425.16(c)(1), (f), (g).  The legislative history for Section 47.1 underscores that it was intended not only to continue these protections but to augment them.  *See* Dkt. No. 146-1 at 54.

Notwithstanding its similarities to California's anti-SLAPP statute, Section 47.1 is different in several notable respects.  For one, Section 47.1 provides no procedures for

adjudicating motions to dismiss specifically or for applying the privilege more generally. The statute mentions no stays of discovery or expedited timeframes. It provides no evidentiary or pleading standards, such as the anti-SLAPP statute's probability-of-success standard. Instead, it simply creates a privilege and states that a prevailing defendant "in *any* defamation action brought against that defendant for making" such a privileged communication shall be entitled to costs, fees, and damages—suggesting that regardless of the stage of the lawsuit or the method by which the defendant prevails, she may recover fees, costs, treble damages, and punitive damages where the privilege applies. *See* Cal. Civ. Code § 47.1(b) (emphasis added).

The statute's lack of procedures—at least on its face—is likely intentional. It is foundational that federal courts sitting in diversity cases "are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In other words, "[w]hen a federal procedural rule is valid and on point, the federal rule controls." *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 168 (E.D.N.Y. 2001). The Second Circuit has accordingly held that California's anti-SLAPP motion to strike cannot be applied in federal court because it establishes procedures inconsistent with the Federal Rules of Civil Procedure. *See La Liberte v. Reid*, 966 F.3d 79, 85–89 (2d Cir. 2020). In particular, the Second Circuit has observed that federal "Rules 12 and 56 express with unmistakable clarity that proof of probability of success on the merits is not required in federal courts to avoid pretrial dismissal," and that because "California's special motion requires the plaintiff to make a showing that the Federal Rules do not require," the state law is inapplicable in federal court. *Id.* at 87 (citation and internal quotation marks omitted). Furthermore, because the anti-SLAPP statute "awards attorneys' fees *only* to 'a prevailing defendant *on a special motion to strike*'"—as opposed to a defendant who

prevails based on a court's separate dismissal under Rule 12(b)(6) or by some other means—fees under the statute are also unavailable in federal court. *See id.* at 88–89 (emphasis in original). In reaching this conclusion, the Circuit noted that "[t]he California Legislature presumably could have awarded attorneys' fees to the prevailing party in any defamation action," and not only those who prevail under a special motion to strike, "but it chose not to do so." *Id.* at 89 n.6.

Section 47.1 appears designed to avoid these same pitfalls. As indicated above, it does not on its face require any particular procedures or pleading standards, and it provides that "[a] prevailing defendant in *any* defamation action" where the privilege applies is entitled to costs, fees, and damages, not just defendants who prevail in a particular procedural posture or on a particular kind of motion. *See* Cal. Civ. Code § 47.1(b) (emphasis added).

A second and related way in which Section 47.1 differs from California's anti-SLAPP statute is that it provides no instructions for how courts are to determine whether the privilege's predicates, including that the communications were made without malice and with a reasonable basis, have been met. California's anti-SLAPP statute explains that "[i]n making [a] determination" as to whether the relevant cause of action arose from an act in furtherance of the defendant's right of petition or free speech, "court[s] shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(1)–(2); *see also Gerbosi v. Gaims, Weil, W. & Epstein, LLP*, 122 Cal. Rptr. 3d 73, 80 (Cal. Ct. App. 2011) ("In determining whether the first step has been established, i.e. the 'arising from' element of the anti-SLAPP statute, a court must consider the pleadings and any supporting and opposing affidavits stating the facts upon which alleged liability is based."). By contrast, Section 47.1 provides no analogous instructions, leaving it to both the state and

9

federal courts to determine how the statute should be applied based on the particularities of their own particular procedural regimes.

Additionally, whether a cause of action "arises from" an act in furtherance of the right of petition or free speech under California's anti-SLAPP statute turns not on whether "the plaintiff filed his or her lawsuit in retaliation for the defendant's petitioning or speech activities," but whether "the plaintiff's cause of action is actually based on conduct in exercise of those rights." *Gerbosi*, 122 Cal. Rptr. 3d at 80. "The moving defendant has no obligation to demonstrate that the plaintiff's subjective intent was to chill the exercise of constitutional speech or partition rights, or that the action had the effect of chilling such rights." *Ingels v. Westwood One Broad. Servs., Inc.*, 28 Cal. Rptr. 3d 933, 939 (Cal. Ct. App. 2005) (citation omitted). Rather, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Rand Res., LLC v. City of Carson*, 433 P.3d 899, 907 (Cal. 2019) (citation omitted). That presents a question of law. *Sonoma Media Invs., LLC v. Superior Ct.*, 247 Cal. Rptr. 3d 5, 12 (Cal. Ct. App. 2019). The predicates for Section 47.1's application—especially the requirement that there be no actual malice—at least potentially present questions of fact rather than law.

Finally, as previously mentioned, Section 47.1 provides not only for attorneys' fees and costs for prevailing defendants but also for treble and punitive damages. *See* Cal. Civ. Code § 47.1(b). California's anti-SLAPP statute contains no analogous damages provision. *See* Cal. Civ. Proc. Code § 425.16. California law does however recognize a kind of malicious-prosecution or abuse-of-process cause of action known as a "SLAPPback" claim, wherein a defendant who has prevailed on a special motion to strike under the anti-SLAPP statute may file a separate lawsuit seeking compensation for damages beyond their attorneys' fees and costs,

10

including damages for emotional distress. *See* Cal. Civ. Proc. Code § 425.18; *see also Soukup v. L. Offs. of Herbert Hafif*, 139 P.3d 30, 43 (Cal. 2006).

## DISCUSSION

In moving for fees and damages under Section 47.1, Lively contends that "[i]t is hard to imagine a more straightforward application of Section 47.1, including its provision for punitive damages." Dkt. No. 748-1 at 3. The Wayfarer Parties disagree. They raise a host of legal challenges to the application of the statute here. Among other things, they argue that the law has no extraterritorial application and that the facts here lack a sufficient nexus to California, Dkt. No. 797 at 14–18; that the law is inconsistent with the First Amendment, which protects individuals who petition the courts for redress and which prohibits imposing liability for such conduct, *id.* at 11; that the law is also inconsistent with California Civil Code § 47(b), which separately protects statements made in connection with judicial proceedings, *id.* at 11–12; that the law can have no application where, as here, the defamation claim is dismissed at the pleading stage without factual findings regarding whether the defamation defendant acted with actual malice and whether their complaints had a reasonable basis, *id.* at 12–13, 18–19; and that there likewise can be no treble or punitive damages without a showing of actual damages, a finding which would be inappropriate in this procedural posture, *id.* at 19–22. The Wayfarer Parties further suggest that it would be unwise for the Court to wade into these murky waters given that few California courts have addressed these "serious constitutional and other legal questions." *Id.* at 13. The Wayfarer Parties state that this lack of clarity and guidance "rais[es] the preliminary question of whether this Court, as a matter of first impression, should apply Section 47.1 to impose the draconian remedies of attorney's fees, treble damages and punitive damages." *Id.*

The Court agrees that application of Section 47.1 in this case presents a number of important legal questions of first impression. There is scant caselaw addressing the applicability

11

of the statute either at the state or federal level.  But that is a reason to tread cautiously, not to avoid treading at all.  Indeed, this Court lacks the authority to abstain from addressing issues squarely presented to it simply because those issues are difficult or novel.  "With limited exceptions, it is the duty of the federal courts when acting as if they were state courts enforcing state substantive law . . . to decide what the state law is."  *In re Joint E. & S. Districts Asbestos Litig.*, 929 F. Supp. 1, 4 (E.D.N.Y. 1996); *see also First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1126 (2026) ("[F]ederal courts have a 'virtually unflagging' obligation to exercise the jurisdiction given them." (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013))); *In re MF Glob. Holdings Ltd.*, 562 B.R. 55, 59 (Bankr. S.D.N.Y. 2017) ("[T]his Court cannot shy away from deciding issues properly presented to it.").  "In the absence of a controlling California Supreme Court decision, [the Court] must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids."  *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).  To the extent necessary to resolve the pending motion, the Court will do so.

The Court first addresses the issues of treble and punitive damages before turning to the propriety of attorneys' fees.

## I.    Lively Cannot Seek Treble and Punitive Damages Under Rule 54(d).

The Wayfarer Parties first take issue with any award of treble and punitive damages in this procedural posture.  They argue that treble and punitive damages require a finding of actual compensatory damages and that no such damages have been found here.  Dkt. No. 797 at 19–22.  Lively responds that she has sought a schedule for the submission of damages evidence consistent with Federal Rule of Civil Procedure 54(d)(2)(C), which she says "provides the appropriate procedure" for "determining any disputed factual issues relating to these damages

awards." Dkt. No. 748-1 at 24–25; *see also* Dkt. No. 824 at 10. A straightforward reading of Rule 54(d), however, reveals that Lively's position must be rejected. Because treble and punitive damages are neither "costs" nor "attorneys' fees" under Rule 54(d), Lively cannot seek them pursuant to the procedures outlined in that provision.[6]

Courts must "interpret the Federal Rules the same way [they] interpret federal laws more generally: by giving them their 'plain meaning.'" *Berk v. Choy*, 607 U.S. 187, 192 (2026) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750, n.9 (1980)); *accord Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). "[T]he starting point of inquiry is of course the language of the [rule] itself." *In re Edelman*, 295 F.3d 171, 177 (2d Cir. 2002). "Where the [rule's] terms are clear, our inquiry is at an end, . . . and where they are not otherwise defined, individual words in a [rule] carry 'their ordinary, contemporary, common meaning.'" *Id.* (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "It is axiomatic that statutes must be read as a whole[,] . . . [and t]he Federal Rules of Civil Procedure are no different." *Barbera v. Grailed, LLC*, 2025 WL

---

[6] Lively's counsel suggested at oral argument that the Wayfarer Parties waived any arguments regarding the propriety of seeking damages through Rule 54(d). The Court disagrees. Although the Wayfarer Parties did not expressly challenge the applicability of Rule 54(d) to a claim for damages in their memorandum of law, they did challenge the award of damages in this procedural posture, and the procedure Lively now invokes comes from Rule 54(d). Furthermore, Lively had the opportunity to address this issue in her supplemental letter brief and at oral argument—opportunities of which she availed herself. "[I]t is well settled that courts have the discretion to consider arguments raised at oral argument, especially where, as here, it is in the nature of clarifying or making explicit what was set forth in the party's brief rather than an entirely new argument." *Mercedez v. Compass Grp. USA, Inc.*, 2026 WL 788270, at *14 n.12 (S.D.N.Y. Mar. 20, 2026); *see also United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992) (finding no waiver where issue raised only at oral argument and not in memorandum of law). It is similarly well settled that courts "are required to interpret federal statutes as they are written" and are "not bound by parties' stipulations of law." *Hankins v. Lyght*, 441 F.3d 96, 104 (2d Cir. 2006); *see also Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 56 (2006) (courts need not "accept an interpretation of a statute simply because it is agreed to by the parties"). Thus, even if the Wayfarer Parties *had* conceded that damages were available under Rule 54(d), that could not constrain the Court's independent interpretation of the Rule's plain language.

2098635, at *9 (S.D.N.Y. July 25, 2025) (internal quotation marks omitted and alterations adopted) (first quoting *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007); and then quoting *Nasser v. Isthmian Lines*, 331 F.2d 124, 127 (2d Cir. 1964)).  "[I]t is essential that we recognize that the Rules were intended to embody a unitary concept of efficient and meaningful judicial procedure, and that no single Rule can consequently be considered in a vacuum." *Nasser*, 331 F.2d at 127.

Rule 54(d) is titled "Costs; Attorney's Fees," and it discusses certain procedures for the award of those two categories of expenses.  Fed. R. Civ. P. 54(d).  It does not mention "damages"—compensatory, treble, punitive, or otherwise.  *Id.*

The Supreme Court has explained that "the term 'costs' as used in Rule 54(d)" is defined by 28 U.S.C. § 1920, which outlines six categories:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012) (quoting 28 U.S.C. § 1920). "[O]nly the specific items enumerated" in Section 1920 qualify as costs under Rule 54(d). *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001), *abrogated on other grounds by Bruce v. Samuels*, 577 U.S. 82 (2016).  Treble and punitive damages plainly do not fall into any of these six buckets, and Lively does not argue that they do.

14

Equally clear is that treble and punitive damages also cannot fairly be described as "attorneys' fees" under any ordinary meaning of that term. Black's Law defines attorneys' fees as "[t]he charge to a client for services performed for the client, such as an hourly fee, a flat fee, or a contingent fee." *Attorney's Fee*, Black's Law Dictionary (12th ed. 2024). Section 47.1 specifically distinguishes attorneys' fees and costs from treble and punitive damages, indicating that the latter are intended to punish defamation plaintiffs and to compensate prevailing defendants for financial and emotional harms extending beyond the expenses associated with their legal defense. Cal. Civ. Code § 47.1(b); *see also id.* § 3294(a) (punitive damages are imposed "for the sake of example and by way of punishing the defendant"). In this way, Section 47.1 resembles California's anti-SLAPP scheme, which provides for attorneys' fees and costs for prevailing defendants but also permits such defendants to separately seek, via SLAPPback suits, additional compensation for other harms caused by the litigation. *See* Cal. Civ. Proc. Code §§ 425.16, 425.18; *see also Soukup*, 139 P.3d at 43. Attorneys' fees and costs in this context therefore serve entirely distinct purposes from treble and punitive damages. As the California Supreme Court has explained, "Fee shifting simply requires the party that creates the costs to bear them. . . . It does not make a party 'liable' for filing a lawsuit." *Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685, 691 (Cal. 2002). The same cannot be said of the liability for damages that Section 47.1 establishes.

Nor can treble and punitive damages under Section 47.1 be understood as a kind of "nontaxable expense" "related" to attorneys' fees. *See* Fed. R. Civ. P. 54(d)(2)(A). Courts have held that such nontaxable expenses include costs such as "messenger services, photocopying, and legal research." *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co.*, 2007 WL 430096, at *3 (E.D.N.Y. Feb. 2, 2007). That is, the expenses must bear some connection to the provision of

15

legal representation.  Treble and punitive damages stemming from emotional, reputational, financial, and other harms caused by abusive litigation lack that necessary connection.

In short, Lively provides no support for the proposition that a party may seek treble and punitive damages through a Rule 54(d) motion for costs and fees, and the plain language of that rule forecloses the possibility.  Lively herself appears to acknowledge the difference between attorneys' fees and costs on the one hand—the proper subject of a Rule 54(d) motion—and treble and punitive damages on the other, as she independently seeks all four categories of monetary awards.  *See* Dkt. No. 748-1 at 19–20.[7]

That treble and punitive damages cannot be sought through the procedural vehicle of a Rule 54(d) motion finds further support from a reading of the Federal Rules of Civil Procedure "as a whole."  *See Barbera*, 2025 WL 2098635, at *9 (citation omitted).  The Federal Rules of Civil Procedure establish that "[t]here is one form of action—the civil action."  Fed. R. Civ. P. 2. And the Rules outline a comprehensive set of procedures for adjudicating legal and equitable rights and remedies in "all" such civil actions in United States district courts.  *See* Fed. R. Civ. P. 1; *see also* 4 Wright & Miller's Federal Practice & Procedure § 1042 (4th ed. 2026) ("The prescription in Federal Rule of Civil Procedure 2 that there shall be one form of action has been characterized as the most fundamental rule of all. . . .  Today, there is a single procedural framework for all federal civil proceedings, regardless of the substantive claim at issue . . . .").

---

[7] At oral argument, Lively's counsel suggested that relief might also be warranted under Rule 54(c), which provides in relevant part that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  This provision likewise does not help Lively, as the Court, without objection, has already entered final judgment without the relief she seeks.  And although, in entering judgment, the Court did provisionally grant Lively the right to amend the judgment under Rule 54(d), the Court did not permit Lively to amend the judgment in ways inconsistent with Rule 54(d).

"A civil action is commenced by filing a complaint with the court."  Fed. R. Civ. P. 3. That formal filing "trigger[s] the full array of legal, procedural, and evidentiary rules governing the process by which a court adjudicates the merits of a dispute."  *S.E.C. v. McCarthy*, 322 F.3d 650, 657 (9th Cir. 2003).  This process includes, among many other things, service of process in accordance with Rule 4, pleading in accordance with Rules 8, 9, 10, the imposition of sanctions in accordance with Rule 11, the presentation of defenses in accordance with Rule 12, the interposition of counterclaims and cross-claims in accordance with Rule 13, amendments to pleadings in accordance with Rule 15, discovery in accordance with Rules 26 through 37, trials in accordance with Rules 38 through 53 (including, where applicable, the right to a jury trial), and judgment in accordance with Rules 54 through 63, including summary judgment in accordance with Rule 56.

By seeking damages through Rule 54(d), Lively circumvents this web of procedures and processes designed for the orderly, just, and fair determination of civil claims in federal court.  In essence, she seeks to pursue a kind of malicious prosecution or abuse of process claim (similar to a SLAPPback suit) and to hold the Wayfarer Parties liable not only for actual damages, but to triple those damages and to impose additional punitive damages, all without the benefit of formal pleading, discovery, and dispositive motion practice in line with Rules 12(b) and 56.  Also lurking in the background is a potential conflict with the Seventh Amendment, which guarantees in federal court the right to a jury trial "in Suits at common law."  U.S. Const. amend. VII.  To the extent a claim for damages under Section 47.1 resembles a kind of abuse of process or malicious prosecution claim, courts have held that "[a]n action for malicious prosecution falls well within the recognized forms of action at common law" for Seventh Amendment purposes. *See, e.g.*, *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965); *see also* 8 Moore's Federal Practice

§ 38.10[2][c] (3d ed. 2026).  During oral argument, Lively's counsel stated that the damages she seeks under Section 47.1 include reputational damages and lost jobs and business opportunities she allegedly suffered as a result of the dissemination of the Wayfarer Complaint.  In effect, she seeks through Section 47.1 much of the same relief that she would have had to obtain through a jury verdict in her affirmative lawsuit.  This fact only underscores the ways in which her current request seeks to bypass the full panoply of rights guaranteed a defendant under federal law.

It is understandable that Lively might attempt to shoehorn her damages claim into a Rule 54(d) motion.  Litigation is costly, time consuming, and risky, and to the extent Section 47.1 is intended to remedy harms to defamation defendants as quickly, efficiently, and easily as possible, Rule 54(d)'s procedures—which permit fee liability and award determinations based upon mere motion and evidentiary hearing, *see* Fed. R. Civ. P. 54(d)(2)(C)–(D)—present an alluring alternative to the normal arc of litigation.  But those benefits cannot come at the expense of the rights of the defamation plaintiff.  By its own terms, and especially when viewed in the context of the Federal Rules as a whole, Rule 54(d) does not sweep so broadly.  It does not create an end run around the entire set of carefully crafted federal procedural rules designed to protect the rights of the parties.  It instead establishes a narrow exception to the usual litigation process for a specific and limited kind of relief.  Compensatory and punitive damages do not fall within that exception.

In her supplemental letter brief, Lively suggests that even if Rule 54(d) does not contemplate an award of damages, federal courts may stretch the federal rules to find a procedural home for state law remedies, and Rule 54(d) is the best home here.  *See* Dkt. No. 1438 at 2.  Lively's counsel offered a similar contention at oral argument.  For support, Lively points to the Second Circuit's decision in *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*,

18

879 F.3d 462, 468–70 (2d Cir. 2018), and the Supreme Court's decision in *People of Sioux County v. National Surety Co.*, 276 U.S. 238, 244 (1928). Neither stands for such a proposition.

In *CSX Transportation*, the Second Circuit addressed whether a plaintiff in federal court was required to institute a special proceeding pursuant to New York law in order to enforce and collect on a money judgment, or whether the plaintiff could instead seek such relief by motion via Federal Rule of Civil Procedure 69(a), which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." 879 F.3d at 468. The Circuit concluded that the plaintiff could proceed by motion for three reasons. *Id.* at 469. First, it noted that "a special proceeding is a procedural vehicle under New York law with no equivalent under the Federal Rules of Civil Procedure," and it was "therefore 'unclear' how a party in a federal district court in New York could comply with the special proceeding requirements, . . . which we have indicated 'need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues.'" *Id.* (first quoting *Mitchell v. Garrison Prot. Servs., Inc.*, 819 F.3d 636, 640 (2d Cir. 2016) (per curiam); and then quoting *Vera v. Republic of Cuba*, 802 F.3d 242, 245 n.3 (2d Cir. 2015)). In other words, the Circuit explained that in that particular context, *state procedural* rules did not necessarily need to be strictly adhered to—not that the Federal Rules could be disregarded and reshaped to fit state procedure as Lively's counsel argues. Second, the Circuit noted that "a special proceeding is more akin to motion practice than a plenary action." *Id.* For the reasons provided above, the opposite appears true for a request for damages under Section 47.1. And third, the Circuit stated that "New York law explicitly contemplates that proceedings brought as motions may, if necessary, be converted to special proceedings by the court." *Id.* Again, no such similar considerations exist here. *CSX* is inapposite.

19

Lively next cites *People of Sioux County* for the proposition that where a "particular mode of enforcing [a] right provided by [] state statute . . . is not available to the federal courts," that "does not preclude the recovery," as "federal courts may follow their own appropriate procedure for its enforcement." Dkt. No. 1438 (quoting 276 U.S. at 244). This observation also does nothing to move the needle in Lively's favor. As the Court has explained, Section 47.1 does not appear to specify a particular "mode of enforcing" the privilege it establishes. Section 47.1 instead appears intentionally agnostic as to issues of procedure. And the plain language of the Federal Rules of Civil Procedure underscore that seeking damages under Rule 54(d) is not an "appropriate procedure."

The fact that federal courts may apply their own procedures to rights established by state law does not mean that district courts may unilaterally alter these procedures to accommodate state laws. The Federal Rules of Civil Procedure are "as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule[s'] mandate than they do to disregard constitutional or statutory provisions." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988); *see also In re Petrobras Sec.*, 862 F.3d 250, 267 (2d Cir. 2017) ("Courts are not free to amend [the Federal Rules of Civil Procedure] outside the process Congress ordered." (citation omitted)). This does not necessarily mean that Section 47.1 has no home in the Federal Rules or that compensatory and punitive damages under Section 47.1 are not available in federal court. It simply means that by proceeding under Rule 54(d) following the entry of judgment—with all the benefits that rule provides to a prevailing defendant and detriments to the losing plaintiff—Lively has chosen the wrong procedural vehicle.[8]

---

[8] It is possible that Section 47.1 is most naturally enforced through a counterclaim filed by the defamation defendant. In that fashion, both plaintiff and defendant would be entitled to the discovery tools of the Federal Rules of Civil Procedure and a jury trial on the question of

Lively's request for damages must be denied.

## II.     Lively Is Entitled to Attorneys' Fees and Costs.

Lively's motion for attorneys' fees and costs under Section 47.1 stands on much firmer

ground.  For starters, this aspect of her motion does not suffer from the same categorical

mismatch with Rule 54(d) that her request for damages does.  Rule 54(d) is designed precisely to

address requests for attorneys' fees.  *See supra* § I.  The Wayfarer Parties raise a host of other

threshold issues with respect to Lively's request for attorneys' fees and costs, but as the Court

details below, none poses a bar to recovery.  As for the merits, the Court concludes that, on this

record, the Wayfarer Parties have failed to carry their burden of demonstrating that the Section

47.1 privilege does not apply, and Lively is therefore entitled to fees and costs.

### A.     Threshold Issues

#### 1.     The Federal Rules Do Not Bar a Request for Fees and Costs Under Section 47.1.

At the outset, there is no reason why Section 47.1 could not, at least theoretically, provide

the basis for a fee request under the Federal Rules of Civil Procedure.

Rule 54(d) "sets the procedure for filing a motion for fees rather than the substantive

standard for entitlement to such fees."  *Button v. N.Y. Times Co.*, 2025 WL 2643674, at *21 n.19

(S.D.N.Y. Sept. 15, 2025).  Where, as here, a federal court sits in diversity or decides a claim of

state law based on the exercise of supplemental jurisdiction, state law provides the substantive

---

whether the defendant, if she prevails in defending against the defamation claim, is entitled to
damages under Rule 47.1 (perhaps with the quantum of damages determined in a bifurcated
proceeding, akin to that which the courts frequently employ with respect to punitive damages).
*Cf. Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373–74 (2d Cir. 1988) (explaining
procedures for trial bifurcation in punitive damages context); *see also Sooroojballie v. Port Auth.
of N.Y. & N.J.*, 816 F. App'x 536, 549–50 (2d Cir. 2020) (summary order) (same).  The Court
need not address that question.  For present purposes, it is sufficient that Rule 54(d) does not
provide a vehicle for compensatory and punitive damages.

standard for determining an entitlement to fees.  *See Cotton v. Slone*, 4 F.3d 176, 180–81 (2d Cir. 1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity."); *see also Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (explaining that "in a diversity action," "[s]tate law creates the substantive right to attorney's fees" (citation and internal quotation marks omitted)). Accordingly, there is nothing either unusual or improper about seeking fees under California law through the vehicle of a Rule 54(d) motion.  In fact, the Federal Rules require as much in certain circumstances.  *See* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses *must be made by motion* unless the substantive law requires those fees to be proved at trial as an element of damages." (emphasis added)).

To be sure, Section 47.1 is no ordinary fee-shifting statute.  Central to the Federal Rules' treatment of attorneys' fees is an assumption that a "court's decision of entitlement to fees will" typically "require an inquiry separate from the decision on the merits"—i.e., an inquiry regarding "what is due because of the judgment," rather than an inquiry regarding what the judgment should be—and the award of attorneys' fees is therefore "uniquely separable from the cause of action to be proved at trial."  *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451–52 (1982). Because such awards generally are "not part of the merits of the action to which the fees pertain," final judgment may be entered, and an appeal may be taken, even when fee requests remain outstanding.  *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the

22

attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.").

But Section 47.1 appears to effectively collapse merits and fee determinations, thereby calling into question whether fees may be sought under the Federal Rules after final judgment has already been entered, as it was here on October 31, 2025. *See* Dkt. No. 893. In determining whether a prevailing defendant is entitled to fees, costs, and treble and punitive damages under Section 47.1(b), a court must decide whether the relevant communication is privileged under Section 47.1(a)—a determination which necessarily also resolves the merits of the underlying defamation claim, as a defamation claim under California law by definition cannot be premised on a privileged communication. *See Brown v. Kelly Broad. Co.*, 771 P.2d 406, 412 n.7 (Cal. 1989) ("[B]ecause defamation is statutorily defined as an unprivileged communication, it is incorrect terminology under California law to refer to a 'privileged defamation' or to a 'privilege to defame.'"). Said differently, the merits of the underlying defamation claim and the fees analysis rise and fall together. Furthermore, to the extent a request for compensatory and punitive damages under California Civil Code 47.1(b) could be understood to raise merits questions of its own, ones to which the right to a jury trial might attach, attorneys' fees might similarly be understood to raise merits questions, as the California statute does not distinguish between the different types of relief provided in subsection (b). *See* Cal. Civ. Code § 47.1(b). It would therefore be reasonable to conclude that fees and damages under Section 47.1(b) both require merits determinations to be decided at the same time as the remainder of the merits issues, as opposed to in a post-judgment context—perhaps with the question of damages resolved as part of a bifurcated proceeding.

Ultimately, however, the Supreme Court's decision in *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), forecloses this line of reasoning.  There, the Supreme Court ruled categorically "that the question of statutory attorney's fees is collateral to, and separate from, the decision on the merits regardless of whether the statute authorizing the attorney's fees characterizes them as part and parcel of the merits judgment." *Cooper v. Salomon Bros. Inc.*, 1 F.3d 82, 85 (2d Cir. 1993) (citing *Budinich*, 486 U.S. at 200–02).  This brightline rule, which turns on the nature of the relief requested and not on its characterization as a matter of state law or the findings that it requires, comes not from "conceptual consistency in the status of a particular fee authorization as 'merits' or 'nonmerits,' but rather preservation of operational consistency and predictability in the overall application of § 1291," which deals with the finality of decisions for appellate purposes.  *Budinich*, 486 U.S. at 202.  These interests in consistency and predictability, the Supreme Court reasoned, require "a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." *Id.*; *see also id.* at 201 (holding that the "effect of an unresolved issue of attorney's fees" for the finality of "the litigation at hand should not turn upon the characterization of those fees by the statute or decisional law that authorizes them").  Thus, even if Section 47.1 might most naturally be read to treat attorneys' fees as a merits issue, *Budinich*'s language is broad and seemingly does not admit of qualification, and federal law therefore treats such fees as collateral to the merits.  A court may therefore entertain a request for Section 47.1(b) fees under Rule 54(d) even where final judgment has already been entered.

Additionally, Rule 54(d) does not prevent courts from resolving factual issues in determining liability for fees and the amount of any such award.  The Wayfarer Parties argue that the availability of Section 47.1 relies upon certain factual predicates—particularly a lack of

24

malice and a reasonable basis for the complaint—and that because the Court has made no factual findings regarding those issues, Lively's claim for attorneys' fees cannot be adjudicated. Dkt. No. 797 at 18–19. But Rule 54(d) states that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services," and that in doing so, a "court *must find the facts* and state its conclusions of law as provided in Rule 52(a)." Fed. R. Civ. P. 54(d)(2)(C) (emphasis added). The Rule further contemplates that courts might conduct evidentiary hearings in connection with fee awards. *See* Fed. R. Civ. P. 54(d)(2)(D). And the advisory committee notes to Rule 54(d) even suggest that in certain circumstances, courts might permit discovery under Rules 26–37 in the context of adjudicating a motion for fees. *See* Fed. R. Civ. P. 54(d)(2) advisory committee's note to 1993 amendment. It may seem odd that a federal court can resolve a defamation claim at the pleadings stage—foreclosing any need for the parties to take discovery and for the court to reach a ruling on the factual merits of the claim—only for the parties to have to delve into the same issues in the context of a request for attorneys' fees. But that appears to be precisely what the California statute requires and what federal law as interpreted by the Supreme Court permits. At least as a general matter, then, there is nothing inherently improper with finding facts in furtherance of adjudicating Rule 54(d) motions for fees.[9]

---

[9] To the extent that the issuance of a fees order addressing the substance of the plaintiff's claim would overlap with a merits order dismissing that claim, the Federal Rules of Appellate and the Federal Rules of Civil Procedure provide a ready mechanism by which the district court can prevent any inefficiencies on appeal. Federal Rule of Appellate Procedure 4 provides that the time to appeal runs from the date that a party files a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59. And Federal Rule of Civil Procedure 58 gives the court the authority to rule that a timely motion for attorneys' fees has the same effect for the time to appeal as a timely motion under Rule 59. Fed. R. Civ. P. 59(e). Thus, a district court concerned with the appellate court having the benefit of a record developed under Rule 54 can achieve that result by entering an order under Federal Rule of Civil Procedure 58. *See* Dkt. No. 206.

Whether Section 47.1 permits awards of attorneys' fees in these circumstances presents a different issue, one to which the Court now turns.

### 2. Section 47.1 Does Not Preclude Fees in this Procedural Posture.

The Court has concluded that treble and punitive damages are unavailable in this context. The Court has also dismissed the Wayfarer Parties' complaint before making any factual findings on the merits of the claims. And it has dismissed the defamation claims on grounds other than the Section 47.1 privilege. The question becomes whether Section 47.1 independently precludes the award of attorneys' fees and costs where one or more of these circumstances exists. The answer to that question is no. The statutory language offers limited guidance with respect to these issues. Under California law, however, where an "examination of the statutory language leaves doubt about its meaning, [courts] may consult other evidence of the Legislature's intent, such as the history and background of the measure." *People v. Birkett*, 980 P.2d 912, 915 (Cal. 1999). And the legislative history and background of the statute remove any doubt regarding its proper interpretation. It is clear that the legislature intended fees to be available to a prevailing defendant even where damages are not available, and where a case has been dismissed— including on alternative grounds—at the motion to dismiss stage without factual findings.

### a. Severability

First, the fact that Lively may not seek treble and punitive damages in this posture does not mean that Section 47.1 prevents her from also seeking fees. Put differently, it would appear that the remedies in the statute are severable. True, as the Court observed above, the statute treats fees and damages in the same subsection without differentiation:

> A prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged under this section shall be entitled to their reasonable attorney's fees and costs for successfully defending themselves in the litigation, plus treble damages for any harm caused to them by the defamation

> action against them, in addition to punitive damages available under Section 3294 or any other relief otherwise permitted by law.

Cal. Civ. Code § 47.1(b).  The California legislature therefore appears to have assumed that fees and damages could be treated together, simultaneously.  But that assumption does not mean that the statute positively requires that outcome, such that an inability to seek damages necessarily precludes an ability to seek fees.  It is also possible that the legislature provided for fees and damages in the same subsection not because those remedies must be sought together, but because the subsection generally establishes entitlements to different awards without specifying how or when they are to be obtained.

Furthermore, reading the statute to preclude fees in this circumstance would be fundamentally inconsistent with the provision's overarching purposes and aims.  "[W]hen interpreting a state statute," federal courts "must follow the state's rules of statutory interpretation."  *E. Fork Funding LLC v. U.S. Bank, Nat'l Ass'n as Tr. for Greenpoint Mortg. Funding Tr. Mortg. Pass-Through Certificates, Series 2006-AR6*, 118 F.4th 488, 503 (2d Cir. 2024) (Liman, J., concurring) (quoting *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017)).  California's rules of statutory interpretation require courts to "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."  *Bohbot v. Santa Monica Rent Control Bd.*, 34 Cal. Rptr. 3d 827, 830 (Cal. Ct. App. 2005).  "Remedial statutes must be broadly interpreted to achieve the legislative goals."  *Balderas v. Fresh Start Harvesting, Inc.*, 320 Cal. Rptr. 3d 326, 328 (Cal. Ct. App. 2024).  "A reviewing court may look at the history and purposes of the legislation in order to determine whether the Legislature would prefer invalidation of the invidious portion of the statute rather than invalidation of the whole section, and would have

27

made such choice had it considered the constitutional issue." *People v. Navarro*, 497 P.2d 481, 489 (Cal. 1972).

As previously explained, the California legislature intended to promote at least two goals with Section 47.1. The first was to deter a form of SLAPP lawsuit, which the legislature found was "increasingly being used as a weapon to threaten, silence, intimidate, and dissuade survivors of sexual assault, harassment, and discrimination from speaking out against their abusers and exposing predators." Dkt. No. 146-1 at 54. The second was to "help[] take the burden off of survivors by providing reasonable attorneys' fees and damages if they successfully defend themselves against meritless lawsuits." *Id.* If, hypothetically, a prevailing defendant sought only attorneys' fees but not compensatory or punitive damages, it appears that there would be nothing in the statute that would prevent them from doing so. The result should be no different if, as a result of the procedural posture of the case and the rule that the prevailing defendant has invoked, the court is powerless to grant anything more than attorneys' fees. There is no indication that the legislature intended an all-or-nothing outcome. Instead, to the extent any recovery might be available for prevailing defendants, it is clear that the legislature intended to promote such recovery. Providing attorneys' fees at once lightens the financial burden on defendants of defending themselves against retaliatory lawsuits while also offering some measure of deterrence toward plaintiffs who might, in the California legislature's words, seek to weaponize the legal system against survivors of sexual assault, harassment, and discrimination. Dkt. No. 146-1 at 88.

The Court therefore concludes that under Section 47.1, the fees remedy is severable from the damages remedies, and the fact that damages are not available does not preclude a prevailing defendant from obtaining fees in a post-judgment context.

28

###### b. Dismissal at the Motion to Dismiss Stage Without Factual Findings

The next question is whether the California legislature intended to permit recovery of fee awards under Section 47.1(b) even where a case has been dismissed at the motion to dismiss stage without factual findings regarding issues such as malice or a reasonable basis for the sexual harassment complaint. *See* Dkt. No. 797 at 18–19 (Wayfarer Parties arguing that "Section 47.1 cannot apply where, as here, there are no factual findings that Lively's claims were asserted without malice and with a reasonable basis" (capitalization altered)). For many of the same reasons, the Court concludes that these circumstances also do not preclude an award of fees under Section 47.1.

The text of the statute provides for fees "in *any* defamation action" in which the relevant communications are privileged. *See* Cal Civ. Code § 47.1(b) (emphasis added). This broad language suggests that statute applies in all defamation cases regardless of the stage at which the defendant prevails. Indeed, Section 47.1(b)'s unqualified language stands in contrast to the language of California's anti-SLAPP statute, which specifies that fees are available "*only* to 'a prevailing defendant *on a special motion to strike*.'" *La Liberte*, 966 F.3d at 88–89 (quoting Cal. Civ. Pro. Code § 425.16(c)(1) (emphasis in original)). The California legislature therefore knows how to specify when it wishes to limit attorneys' fees to defendants who prevail in a particular procedural posture, and not only has it not done so here, but it has done the opposite, specifying that fees are available in "any" action. *See id.* at 89 n.6 (stating with respect to California's anti-SLAPP law that "[t]he California Legislature presumably could have awarded attorneys' fees to the prevailing party in any defamation action, but it chose not to do so").

The legislative history and overarching aims behind the law—including to compensate successful defamation defendants, to shield them from the discovery process, and to punish and

29

deter retaliatory suits from being brought in the first place—provide further reason to believe that the California legislature intended for fees to be available even where cases are dismissed at the motion to dismiss stage without factual findings. After all, such cases may still involve considerable expenses, fees, and other financial and emotional harms—ones which might deter survivors of sexual assault, harassment, or discrimination from speaking out, and which the California legislature clearly intended to prevent and remedy. *See* Dkt. No. 146-1 at 74 (Senate Judiciary Committee report for Section 47.1 stating that "[i]deally . . . this bill's fee-shifting provisions will deter SLAPP suits against the victims of sexual abuse, harassment, and discrimination before they are filed"); *see also id.* at 58 ("[T]he costs of being sued in a defamation are dramatic for survivors of sexual assault and harassment. . . . In fact, the financial burden of defending against a defamation suit is one of the main reasons these suits tend to evoke so much fear in survivors."); *id.* at 66 ("Plaintiffs in SLAPP suits bring defamation, and similar claims, not because they expect to win, but because they know that the cost and burden of defending a lawsuit can wear down and silence critics, particularly when the critic is an individual without the resources to defend against a lawsuit."). There is no reason, then, to conclude that the statute confines its relief solely to defendants who prevail at later stages of a case after formal factfinding in the summary judgment or trial context.

### c.    Dismissal on Other Grounds

Finally, and relatedly, the Wayfarer Parties suggest that fees are unavailable under Section 47.1 where, as here, a case is dismissed on grounds other than the Section 47.1 privilege. Dkt. No. 797 at 18. This argument, too, is inconsistent with the statute's text and purposes.

The statute does not state that a defendant who prevails on the basis of Section 47.1(a) is entitled to attorneys' fees and costs. It instead indicates that "[a] prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged

30

under this section shall be entitled" to fees and costs. *See* Cal. Civ. Code § 47.1(b). A defamation claim may be brought against a defendant for making a communication that is privileged under Section 47.1(a) even where a court does not dismiss the case on those grounds. Moreover, it makes little sense to read "prevailing defendant" to refer only to a defendant who prevails on the basis of Section 47.1(a). The analogy to California's anti-SLAPP statute is again apt. "[T]he statutory predicate for a fee award under the anti-SLAPP statute is that the defendant prevailed on its motion. There is no condition based on the reason the defendant prevailed." *Tukes v. Richard*, 296 Cal. Rptr. 3d 707, 719 (Cal. Ct. App. 2022). So too here.

Common sense confirms what the text suggests: Section 47.1(b) does not limit fees and costs solely to defendants who prevail on the basis of Section 47.1(a). Imagine a retaliatory lawsuit initiated with the intent of harassing, intimidating, silencing, and otherwise burdening a survivor of sexual assault because she has communicated with others about her experience. The lawsuit is frivolous in more ways than can be counted (e.g., subject-matter jurisdiction, personal jurisdiction, venue, service of process, statute of limitations, failure to state a claim, etc.). At the same time, the complaint contains utterly false but factually well-pleaded allegations of malice. In dismissing the suit, the court does so on some basis other than Section 47.1(a). It cannot reasonably be maintained that because the case is *so frivolous*, and because the court chooses to dismiss the case on grounds other than malice, the prevailing defendant is not entitled to fees for her costs in defending against the lawsuit. That outcome would be inconsistent with the statute's aims of deterrence and compensation. The plaintiff, not "expect[ing] to win," but "know[ing] that the cost and burden of defending a lawsuit can wear down and silence critics, particularly when the critic is an individual without the resources to defend against a lawsuit," would have succeeded in achieving its retaliatory aims. *See* Dkt. No. 146-1 at 66. That cannot be right.

31

In arguing otherwise, the Wayfarer Parties rely on *Evans v. Walker*, 2026 WL 973763 (C.D. Cal. Mar. 24, 2026), a case in which a federal district court in California dismissed a federal copyright claim and declined to exercise supplemental jurisdiction over the plaintiff's remaining state law claims, including ones implicating Section 47.1. *Id.* at *5. The court explained that because it did not grant relief under Section 47.1, there was no basis for fees or damages under that provision. *Id.* The *Evans* decision does not explain the grounds for that conclusion. *Id.* And at argument, the Wayfarer Parties were largely unable to explain why that might be the case other than citing to the outcome in *Evans*. To the extent that *Evans* is on point, the Court does not find it persuasive. The Court instead determines, in line with the analysis above, that prevailing defendants may recover fees under Section 47.1 even where they prevail on grounds other than Section 47.1(a).

### 3.    Awarding Attorneys' Fees and Costs Under Section 47.1(b) Does Not Violate the First Amendment.

Lively's request for attorneys' fees and costs is also consistent with the First Amendment. The Wayfarer Parties argue that Section 47.1 violates the First Amendment under the *Noerr-Pennington* doctrine. Dkt. No. 797 at 11–12. The First Amendment protects the rights of citizens to petition the Government for a redress of grievances. *See McDonald v. Smith*, 472 U.S. 479, 482 (1985). This includes petitioning courts for redress. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition."). The *Noerr-Pennington* doctrine stems from this principle. It stands for the proposition that "efforts to influence governmental action through litigation, lobbying, and the like" are "immunized from antitrust liability," "provided the activities are more than a mere 'sham.'" *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 229 F.3d 1135 (2d Cir. 2000)

(quoting *Prof'l Real Estate Investors, Inc. v. Columbia Picture Indus.*, 508 U.S. 49, 56–57 (1993)).

Courts have held that the doctrine is "relevant outside the context of antitrust actions." *See EDF Renewable Dev., Inc. v. Tritec Real Est. Co., Inc.*, 147 F. Supp. 3d 63, 69 (E.D.N.Y. 2015) (citation omitted) (applying doctrine in context of tortious interference claim); *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 336 (S.D.N.Y. 2019) (noting that "[w]hile Noerr-Pennington was an antitrust case, state and federal courts routinely hold that it extends further and applies to a wide range of civil actions under both state and federal law," and applying the doctrine in the context of claims for trade libel, deceptive business practice, and tortious interference, among others). "The Second Circuit," however, "has not firmly resolved the parameters of *Noerr-Pennington* immunity outside the antitrust context." *Regel v. Campbell Soup Co.*, 2025 WL 2733840, at *6 (S.D.N.Y. Sept. 25, 2025) (citation omitted). The Wayfarer Parties argue that Section 47.1 conflicts with this doctrine insofar as the California law creates civil liability for petitioning courts in a legitimate, non-frivolous, and good-faith manner. Dkt. No. 797 at 11–12.

The Wayfarer Parties' argument must be rejected because "fee shifting is not civil liability within the meaning of the *Noerr-Pennington* doctrine." *Vargas v. City of Salinas*, 134 Cal. Rptr. 3d 244, 254 (Cal. Ct. App. 2011); *accord Woulfe v. Universal City Studios LLC*, 2024 WL 1110914, at *7 (C.D. Cal. Feb. 8, 2024); *Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir. 1987). "[B]eing charged with the costs of a suit is not the same thing as being civilly liable for having filed the suit." *Vargas*, 134 Cal. Rptr. 3d at 254. "Fee shifting simply requires the party that creates the costs to bear them." *See Equilon Enters.*,

33

52 P.3d at 691.  At least with respect to fees, then, the Court finds the Wayfarer Parties' First Amendment concerns unfounded.

### 4.     The Litigation Privilege Does Not Apply.

Along similar lines, the Wayfarer Parties contend that Lively "fails to address how Section 47.1 can be reconciled with California Civil Code § 47(b) which, consistent with the right to petition, creates an absolute to bar to any defamation claim based on statements made in connection with a judicial proceeding."  Dkt. No. 797 at 11–12.  But Lively is not bringing a defamation claim based on statements made in connection with a judicial proceeding.  She is seeking attorneys' fees as a result of the Wayfarer Parties' own defamation claim.  In any event, it is a well-established "rule of statutory construction that particular provisions will prevail over general provisions," and the California Supreme Court has applied this rule to recognize numerous exceptions to the litigation privilege where another statute "would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege."  *Action Apartment Assn., Inc. v. City of Santa Monica*, 163 P.3d 89, 98 (Cal. 2007); *see id.* (collecting cases identifying a number of such exceptions).  Section 47.1(b) is more specific than the general litigation privilege and "would be almost without meaning" if the litigation privilege independently precluded an award of attorneys' fees.  *Cf. id* at 99.  Thus, the litigation privilege is inapplicable to Lively's request for fees.

### 5.     Lively's Request Presents No Extraterritoriality Issues.

The Wayfarer Parties' extraterritoriality arguments also miss the mark.  Dkt. No. 797 at 14–18.  The Wayfarer Parties themselves invoked California law as the basis for their defamation claim (among other California causes of action).  *See* Dkt. No. 50 ¶¶ 324–39.  As they stated in their opposition to Lively's motion to dismiss: "Lively and the Wayfarer Parties agree that California law applies to their claims."  *See* Dkt. No. 162 at 3; *Lively*, 786 F. Supp. 3d

34

at 734. At the motion to dismiss stage, the Wayfarer Parties accordingly opposed Lively's attempts to invoke Section 47.1—and the other California-specific defamation privileges under Section 47—on grounds other than extraterritoriality. *See id.* at 11–23. At no point did they suggest that Section 47.1 was inapplicable based on the statute's geographic reach.

That omission was sound. Principles of extraterritoriality under California law are grounded in notions of legislative intent, *see Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011), and it is inconceivable that the California legislature intended for Section 47.1 to have no application in cases where the underlying cause of action itself arises under California law. Where a plaintiff seeks to hold a defendant liable for defamation under California law, it may be "reasonably . . . inferred from the language of [Section 47.1] or from its purpose, subject matter or history" that the California legislature intended for the defamation privilege to likewise have full effect. *See id.* (citation and internal quotation marks omitted). Indeed, defamation under California law is defined as "the intentional publication of a statement of fact that is false, *unprivileged*, and has a natural tendency to injure or which causes special damage," *Smith v. Maldonado*, 85 Cal. Rptr. 2d 397, 402 (Cal. Ct. App. 1999) (emphasis added), so any analysis of a defamation claim proceeding under California law must naturally also implicate the state's privileges, including Section 47.1. It is similarly unlikely that the California legislature intended for the statute's protections to be overcome by a plaintiff's unilateral choice to file suit outside of California on the basis of diversity jurisdiction.

If Section 47.1(a) applies to defeat defamation claims in cases filed in federal courts outside of California's territorial boundaries, there is no reason to believe the California legislature did not also intend for the statute's fee-shifting provision in Section 47.1(b) to apply in those circumstances.

35

### B.    Application of Section 47.1 to Lively's Request for Fees

The Wayfarer Parties' threshold arguments come up short; attorneys' fees and costs are at least theoretically available in a case like this one.  The Court must therefore address whether fees and costs are in fact warranted here.  That analysis turns on issues of burdens—namely, which party bears them, what they are, and how they may be discharged.

The Court starts with a point of common ground: The parties agree that fees under Section 47.1 are governed by the same burden-shifting framework which governs privileges under Section 47.  *See* Dkt. Nos. 1438, 1439.  That agreement appears to come from the fact that Section 47.1 specifically states that communications under it are "privileged under Section 47." Cal. Civ. Code § 47.1(a).  Under Section 47, "[t]he party asserting [a] privilege bears the burden to show that the statement was made on an occasion that falls within the statute.  At that point, the opposing party has the burden to prove that the statement was made with malice." *Dignity Health v. Mounts*, 325 Cal. Rptr. 3d 678, 686 (Cal. Ct. App. 2024) (citing *Lundquist v. Reusser*, 875 P.2d 1279, 1287 (Cal. 1994)).  As the Wayfarer Parties put it, the "party asserting privilege (Lively) bears the burden to show that the statement is within the purview of the privilege," at which point "the opposing party (Wayfarer, et al.) has the burden to prove that the statement was made with malice.'"  Dkt. No. 1439 at 1 (citation omitted).  "The malice necessary to defeat a qualified privilege is 'actual malice[,]' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Lundquist*, 875 P.2d at 1291 (citation omitted).  "Such facts must establish that the person speaking the defamatory words entertained toward the person defamed a feeling of hatred or ill will going beyond that which the occasion for the

36

communication apparently justified and different from that motive which prima facie rendered the communication privileged." *Smith v. Hatch*, 76 Cal. Rptr. 350, 355 (Cal. Ct. App. 1969).[10]

This burden-shifting framework applies throughout the lifecycle of a defamation case. For example, at the motion to dismiss stage, where "the privilege appears from the face of the complaint, that pleading must allege malice in fact in order to state a cause of action." *Pavlovsky v. Bd. of Trade of S.F.*, 340 P.2d 63, 65 (Cal. Dist. Ct. App. 1959); *see also Woods v. Asset Res.*, 2006 WL 3782704, at *5 (E.D. Cal. Dec. 21, 2006) ("Where the complaint discloses a case of qualified privilege, i.e., such as where the statement was made upon a privileged occasion, no malice is presumed, and in order to state a cause of action, the pleading must contain affirmative allegations of malice in fact."). At summary judgment, the plaintiff must present sufficient evidence to create a triable issue of fact regarding malice. *See Stationers Corp. v. Dun & Bradstreet, Inc.*, 398 P.2d 785, 788 (Cal. 1965) (reversing grant of summary judgment where plaintiff's affidavits established triable issue of fact regarding malice); *Dorn v. Mendelzon*, 242 Cal. Rptr. 259, 265 (Cal. Ct. App. 1987) ("The trial court's task [on summary judgment] was to determine, from the moving and opposing papers, whether there was 'a sufficient showing of malice to warrant submission of that issue to the jury.'" (citation omitted)). And at trial, the

---

[10] Lively argues that malice under Section 47.1 should be defined in accordance with California Civil Code § 48a, which requires that "the defendants acted both out of hatred or ill will *and* without a good faith belief in the truth of the publication at the time the [statement] was written." *Manguso v. Oceanside Unified Sch. Dist.*, 200 Cal. Rptr. 535, 539 (Cal. Ct. App. 1984) (emphasis in original) (citing Cal. Civ. Code § 48a(d)(4)). Because Section 48a defines the ill-will and good-faith-belief prongs conjunctively, rather than disjunctively, as the common law does, courts have described it as establishing a "less liberal standard" for malice. *Id.* But Section 48a by its terms applies to "libel in a daily or weekly news publication, or of a slander by radio broadcast," so it is unclear whether applying that section's definition of malice in this context is appropriate. *See Taus v. Loftus*, 151 P.3d 1185, 1210 (Cal. 2007) (citing Section 48a's definition of actual malice in applying a Section 47 privilege, but doing so in the context of a case involving articles). The Court need not resolve this issue, as the difference is immaterial to the outcome.

plaintiff must establish by a preponderance of the evidence that the defendant acted with malice. *See Manguso v. Oceanside Unified Sch. Dist.*, 200 Cal. Rptr. 535, 539 (Cal. Ct. App. 1984).

The lesson from these cases is that once a defamation defendant establishes that the communication is the kind generally protected by a qualified privilege, the plaintiff's burden of establishing actual malice kicks in, and the way that burden may be discharged depends on the pleading and evidentiary standards applicable to that stage of the case.

### 1.      The Communications Here Were Made on a Privileged Occasion.

Lively bears the initial burden of demonstrating that the relevant communications were "made on an occasion that falls within the statute." *Dignity Health*, 325 Cal. Rptr. 3d at 686.  A privileged occasion under Section 47.1 is one in which an individual makes a communication regarding an incident of sexual assault, harassment, or discrimination, with "communication" further defined to mean "factual information related to an incident of sexual assault, harassment, or discrimination experienced by the individual making the communication."  Cal. Civ. Code § 47.1(a), (d).  Here, the Wayfarer Parties do not dispute that the statements at issue are "communications" regarding sexual assault, harassment, or discrimination made by the person who allegedly experienced this misconduct.  *See generally* Dkt. No. 797.  Indeed, it is precisely this subject matter which the Wayfarer Parties argue is so damaging to their reputations.  Dkt. No. 50 ¶ 6 ("Modern society justly reviles sexual harassers and abusers, and Lively knew full well that making those allegations would be a career death sentence for the Wayfarer Parties, especially given that Baldoni has lived his private and public life as an impassioned advocate for gender equality and healthy masculinity.").  The communications were therefore made on a privileged occasion.

That conclusion is not altered by the Wayfarer Parties' assertions that Lively's allegations are false or by Section 47.1's language providing that the statute "shall only apply to an

individual that has, or at any time had, a reasonable basis to file a complaint of sexual assault, harassment, or discrimination, whether the complaint is, or was, filed or not." Cal. Civ. Code § 47.1(c). This requirement of a reasonable basis for filing a complaint cannot reasonably be read, as the Wayfarer Parties suggest, to mean that a defamation defendant bears the burden of establishing the truth of her statements before she is permitted the benefit of Section 47.1. Such a reading would turn Section 47.1 on its head, transforming the law from a shield for defendants into a tool for plaintiffs.

By its terms, Section 47.1(c)'s reasonable-basis requirement applies to "[t]his section," which would appear to encompass both determinations under Section 47.1(a), which establishes the privilege in the underlying defamation claim, and Section 47.1(b), which creates the entitlement to fees and damages. *Id.* One of the purposes of Section 47.1(a), however, is to shield the person making a claim of sexual assault or harassment from the punishing costs of discovery inflicted upon her by a retaliatory lawsuit. As discussed above, the law does so by imposing on the defamation plaintiff the burden of pleading malice in the first instance—that the statement was made with ill will or without a reasonable basis to believe in its truth. The privilege is intended to require such well-pled allegations before extensive discovery. But, under a reading where the burden is on the defendant to first establish a reasonable basis for her claims by proving their truth before the plaintiff's burdens with respect to malice arise, the privilege would be rendered largely illusory. The plaintiff's burden would arise, if at all, at the very end of the case, after most of the potential benefits of the privilege would have evaporated. A defendant who proves the truth of her statements has little to gain from the privilege.

This reading would also be inconsistent with principles of defamation law more generally. Under California law, "[w]here a [defamation] case involves matters of public

39

interest, the plaintiff, even a private figure plaintiff, bears the burden of proving that the statements at issue are false." *Med. Marijuana, Inc. v. ProjectCBD.com*, 260 Cal. Rptr. 3d 237, 253 n.12 (Cal. Ct. App. 2020).  California courts have also repeatedly held that sexual assault and harassment are matters of public interest and importance.  *See, e.g.*, *Carney v. Santa Cruz Women Against Rape*, 271 Cal. Rptr. 30, 37 (Cal. Ct. App. 1990) ("[S]exual harassment and violence against women is of pressing public concern."); *Peterson v. Harris*, 2023 WL 3773401, at *3–4 (Cal. Ct. App. June 2, 2023) (unpublished) (holding that "violence and sexual abuse in the entertainment industry" are matters of public interest, especially when they involve "high profile individuals"); *Hodo v. Cheryl R.*, 2004 WL 308667, at *3 (Cal. Ct. App. Feb. 19, 2004) (unpublished) (teacher's sexually inappropriate behavior toward students a matter of public interest).  Section 47.1 represents the legislature's agreement that these communications are of particular public importance and deserving of particular protection.  Section 47.1(c)'s requirement of a reasonable basis for filing a complaint does not flip this usual allocation of burdens against defamation defendants to their disadvantage; it does not require defendants to prove that their account of events occurred and that the plaintiff's did not.

What the subsection instead requires is for defendants to show that the information contained within the allegedly defamatory statement be the kind for which it would be reasonable to file a complaint.  Put differently, Section 47.1(c) serves a gatekeeping function, ensuring that defendants do not unreasonably attempt to stretch the substance of the contested statements to fall within the purview of the statute.  It would be unreasonable, for example, to file a complaint of sexual harassment based on a single instance of vulgar language in the context of a comedy writer's room for an adult show with adult themes.  *Cf. Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 216 (Cal. 2006).  A defamation defendant's statements about

40

that experience therefore likely would not benefit from the Section 47.1 privilege.  It would also be unreasonable to characterize a supervisor's comments about "bringing his 'guys' into the company" and his rejection of a single travel and expensive reimbursement request as "conduct based on sex or of a sexual nature."  *See Haberman v. Cengage Learning, Inc.*, 103 Cal. Rptr. 3d 19, 32 (Cal. Ct. App. 2009).  A defamation defendant's attempts to invoke Section 47.1 in that circumstance also likely would be rejected.

The Court need not explore the boundaries of the privilege and all the circumstances in which it might not apply, as it is clear here that the allegations contained with Lively's statements are the kinds for which it would be reasonable to file a complaint.  To reiterate, the Wayfarer Parties do not dispute that the statements at issue are ones regarding sexual harassment or discrimination.  Of course, they do so indirectly insofar as they dispute the truth of Lively's allegations.  But they do not contest the categorical subject-matter match between the substance of her statements and Section 47.1.  And subsection (c) does not, in contravention of well-established defamation law principles, require Lively to prove the truth of her statements in order to prevail.  The relevant communications therefore fall within the purview of the statute.

### 2.     The Wayfarer Parties Have Failed to Carry Their Burden of Establishing Malice.

Lively has established that the communications at issue here were made on a privileged occasion.  The burden accordingly shifts to Wayfarer Parties to demonstrate that the statements were made with malice.  There are two potential ways in which the Wayfarer Parties might satisfy this burden.  The first is by adequately pleading malice.  The second is by coming forward with adequate evidence to establish malice.  The Court must therefore confront yet another issue about which the statute's text says nothing: Are mere pleadings sufficient to satisfy the defamation plaintiff's burden and, without more, to avoid the imposition of attorneys' fees

where a case has been dismissed at the motion to dismiss stage, or must a defamation plaintiff instead affirmatively prove—using whatever procedures the relevant court provides for fees motions—that the privilege is defeated?  Drawing guidance from analogous statutes and Section 47.1's purposes and history, the Court determines that Section 47.1 requires proof rather than mere pleadings to avoid the imposition of attorneys' fees.[11]

First, caselaw interpreting the Section 47 privileges establishes that the way in which a defamation plaintiff satisfies its burden of demonstrating actual malice depends on the specific procedures applicable to the context in which the privilege arises.  Although pleadings might be sufficient in the context of a motion to dismiss under Rule 12(b)(6), they are not on a motion for summary judgment pursuant to Rule 56 or at trial.  Here, the relevant context is a request for attorneys' fees under Federal Rule of Civil Procedure 54(d).  Rule 54(d) permits courts to find the facts necessary to reach determinations both with respect to liability and amounts for fee awards.  Because factfinding is available under Rule 54(d), it would appear that facts—not just allegations—are required under Section 47.1.[12]

Second, holding that a defamation plaintiff may avoid liability for fees so long as it adequately pleads malice would again completely undermine the statute's compensatory and deterrent aims.  Drawing on the analogy previously provided, *see supra* § II.A.2.c, a retaliatory

---

[11] If mere pleadings were sufficient for a defamation plaintiff to carry its burden in this procedural posture—which, to reiterate, the Court does not believe is the best reading of the statute—the defamation defendant presumably might still be able to obtain fees by coming forward with evidence demonstrating that the well-pleaded allegations were false.  Otherwise, a plaintiff could avoid fees simply through pleading false allegations.  But, if that were so, as a practical matter, the burden would shift to the defamation defendant to *dis*prove malice.  As discussed, that was not the intent of the California legislature.

[12] It is possible that requiring a plaintiff to prove malice in the context of a Rule 54(d) motion goes both ways—that is, that where a complaint *inadequately alleges malice*, a plaintiff might be able to avoid fees by offering evidence that malice in fact exists.  Ultimately, this is also an issue that the Court need not decide to resolve this case.

SLAPP suit that is frivolous in any number of ways, but which adequately (and falsely) pleads malice, still functions to burden, intimidate, and potentially silence a defendant who has come forward with information regarding sexual assault, harassment, or discrimination.  The legislature clearly intended to protect such defendants and to deter such plaintiffs.  The Wayfarer Parties' reading, however, would reward precisely the type of wrongdoers the California legislature was intending to punish—those who seek to chill speech regarding matters of sexual assault or harassment by falsely accusing the speaker of lying.  The legislature was concerned with defamation plaintiffs who do not "expect to win" but who "know that the cost and burden of defending a lawsuit can wear down and silence critics, particularly when the critic is an individual without the resources to defend against a lawsuit."  *See* Dkt. No. 146-1 at 66.  By the artifice of adding allegations of malice—no matter how false or difficult to prove—the defamation plaintiff could shift the burden to the defamation defendant to disprove malice and thus defeat the purpose of the statute.  Patently false but adequately alleged malice should not insulate liability under Section 47.1.  Framed differently, it is clear that if a complaint adequately pleads jurisdiction and malice but the allegations of malice are not substantiated at trial, the prevailing defendant is at that stage entitled to an award of attorneys' fees.  Reasoning backwards, dismissal on other grounds earlier in the case should not put the defendant in a worse position.  The Wayfarer Parties have offered no cogent reason why that same defendant should not be entitled to fees when the case is dismissed at an earlier stage for lack of jurisdiction.

    In order to reach such a counterintuitive construction, there would have to be particularly compelling reasons to do so.  One such reason might be the apparent unfairness of requiring a plaintiff to put forward evidence prior to the completion (or in some cases the start) of discovery.  But as the advisory committee notes to Rule 54(d) indicate, courts adjudicating motions for fees

43

may permit discovery under Rules 26–37, and there might be good reasons to do so where a complaint contains well-pled allegations of malice but, as here, has been dismissed prior to the completion of discovery.  *See* Fed. R. Civ. P. 54(d)(2) advisory committee's note to 1993 amendment; *see also Valley Hous. Ltd. P'ship v. City of Derby*, 2011 WL 6258310, at *2 (D. Conn. Dec. 15, 2011) ("The Court agrees that the parties are permitted to conduct limited discovery on the attorney's fees issue.").  Such a result might end up putting the prevailing defendant to some of the same burdens of discovery and litigation, including a possible hearing over the circumstances under which the statement was made.  But in that instance, the prevailing defendant would at least be in charge of the litigation process and could avoid these burdens by eschewing her right to seek attorneys' fees.

Once these background legal principles are established, the result here is straightforward. It appears that the Wayfarer Parties' complaint adequately alleges malice.[13]  Accepting the complaint's allegations as true—as the Court must in assessing the adequacy of the pleadings, *see Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013)—there is enough to suggest that Lively's communications were "motivated by hatred or ill will towards the [Wayfarer Parties]," *see Lundquist*, 875 P.2d at 1291.  The Wayfarer Parties' complaint does not simply allege in conclusory terms that Lively's assertions of harassment were

---

[13] Lively argues that the Court has already held in its opinion and order dismissing the Wayfarer Parties' complaint that the complaint fails to adequately allege her malice. Dkt. No. 748-1 at 11 & n.15, 16–18.  The opinion contains no such holding.  *See Lively*, 785 F. Supp. 3d at 757–774. The Court held that Sloane and Reynolds—not Lively—lacked malice because neither was alleged to have witnessed any of the alleged instances of harassment, and they therefore had no reason to disbelieve Lively's retelling of those incidents.  *Id.* at 767–70.  The Court stated that it could not "simply infer, on the theory that Lively knew her allegations were false, that Reynolds and Sloane also would have known them to be false."  *Id.* at 769.  Even if Reynolds or Sloane were not lying and believed the truth of what they were saying, that does not resolve the truthfulness of Lively's own statements and her malice (or lack thereof) in making them.

44

false.  To be sure, it does do that.  But it also specifically disputes numerous factual assertions made by Lively in her CRD complaint.  *See, e.g.*, Dkt. No. 50 ¶¶ 84, 92, 94, 101, 104, 120.  It would be inaccurate to describe the Wayfarer Parties' complaint as only flyspecking Lively's allegations by "describ[ing] the exact same factual conduct" through their own "points of view." Dkt. No. 748-1 at 17.  In addition to asserting that specific communications Lively made were unfairly presented with misleading "spin," the Wayfarer Parties' complaint contends that Lively's statements were categorically false, and that she would have had reason to know they were false.  If that is true, it is plausible to infer that Lively made the statements with malice.

As the Court has already explained, however, allegations are insufficient on their own to demonstrate that statements were in fact made with malice.  That determination requires some evidence.  And the Wayfarer Parties have provided little evidence in connection with the motion, and none establishing that Lively acted with malice.

The parties agree that the factual record with respect to liability on Lively's Section 47.1 motion is closed.  The motion was fully submitted months ago.  The Wayfarer Parties have not requested discovery or a hearing.  *See* Dkt. No. 1435 at 2 (Wayfarer Parties asserting that the Court should not conduct "an evidentiary hearing or other proceedings on whether [Lively] is entitled to a recovery under Section 47.1").  The Wayfarer Parties have offered only three exhibits in connection with the motion.  The first is the deposition of Vivian Baker, and the cited testimony indicates merely that the incidents about which Lively complained occurred during the first phase of filming.  *See* Dkt. No. 798-1.  The second exhibit is the deposition of Warren Zavala, and the cited testimony likewise states that the relevant incidents occurred during the first phase of filming and that filming occurred in New Jersey.  *See* Dkt. No. 798-2.  The third exhibit is the deposition of Danny Greenberg ("Greenberg"), who confirms that the first phase of

45

filming occurred in New Jersey.  *See* Dkt. No. 798-3.  This testimony all goes to the Wayfarer Parties' extraterritoriality arguments, and not to the issue of malice.

The only evidence that the Wayfarer Parties have submitted in connection with the Section 47.1 motion which might *arguably* bear on Lively's malice comes from Greenberg's deposition, in which he was questioned about a single message he sent in which he used the word "extortion" to "referenc[e] just cumulative behavior that both the studio and Wayfarer and Justin was having to manage" (presumably at the hands of Lively).  *Id.* at 146:14–18.  This evidence falls far short of satisfying the Wayfarer Parties' burden.  The testimony excerpts make only vague reference to "behavior" issues without specifying what exactly those issues were or the background surrounding them.  There is no indication that Greenberg—who was Baldoni's talent agent at the time and who was proposing language for Baldoni to use in a letter to Sony Pictures Entertainment—was referring to Lively's complaints of sexual harassment, as opposed to something else.  Indeed, the Wayfarer Parties' own briefing asserts that these comments were made in connection with Lively's "threats that she would not return to the set unless she was given control over the script and editing," Dkt. No. 797 at 7 n.2—not that they were made in connection with false and malicious complaints of sexual harassment.  Greenberg further added at his deposition that he did not "remember [his] state of mind when [he] wrote" the comment. Dkt. No. 798-3 at 144:18–19.

Without more, the Wayfarer Parties cannot carry their burden of defeating the Section 47.1 privilege.  Lively is entitled to fees and costs.[14]

---

[14] The Court makes no findings or holdings at this juncture with respect to the appropriate measure of fees for the subject of this motion: Lively's defense of the Wayfarer Parties' complaint in the Wayfarer Action.  *See* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services.").  The ultimate fee determination may depend in part on "apportionment principles," including the extent to

46

*    *    *

In the end, and stepping back, the policy Section 47.1 achieves is far simpler than the analysis its application requires: The statute ensures that if a plaintiff invokes California law to bring a defamation claim against a defendant for making statements regarding sexual assault, harassment, or discrimination, and the defendant succeeds in dismissing the claim, the plaintiff must pay the defendant's legal fees and costs unless it turns out that the statements were made with malice. Lively made statements that come within the purview of Section 47.1, she prevailed on her defense, and—on this record—there is no evidence of malice. Accordingly, she is entitled to attorneys' fees under Section 47.1.

## CONCLUSION

The motion is GRANTED IN PART AND DENIED IN PART. The motion for attorneys' fees and costs pursuant to California Civil Code § 47.1 is GRANTED. The motion for treble and punitive damages pursuant to California Civil Code § 47.1 is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 742 and 748.

SO ORDERED.

Dated: June 12, 2026
  New York, New York        _____
                  LEWIS J. LIMAN
                United States District Judge

---

which fees were incurred on issues common to claims for which attorneys' fees are provided by statute and claims for which they are not. *See Graciano v. Robinson Ford Sales, Inc.*, 50 Cal. Rptr. 3d 273, 287 (Cal. Ct. App. 2006).