**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>WAYFARER STUDIOS LLC, et al,<br><br>　　　　　　　　Defendants. | No. 24-cv-10049 (LJL) (lead case)<br>No. 25-cv-449 (LJL) (member case) |
| JENNIFER ABEL,<br><br>　　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>JONESWORKS LLC,<br><br>　　　　　　Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF BLAKE LIVELY'S**
**MOTION FOR ATTORNEYS' FEES PURSUANT TO CAL. CIV. CODE § 47.1**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

RELEVANT BACKGROUND ........................................................................................ 2

ARGUMENT .................................................................................................................... 4

    I.    The Wayfarer Parties Are Liable for Lively's Attorneys' Fees and Costs. ........................ 4

    II.    Section 47.1 Does Not Permit Apportionment of Defense Fees and Costs. ................... 4

    III.    Lively's Attorneys' Rates Are Reasonable. ................................................................. 6

CONCLUSION ................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amtower v. Photon Dynamics, Inc.*,
158 Cal. App. 4th 1582 (2008) ...............................................................................................6

*Calvo Fisher & Jacob LLP v. Lujan*,
234 Cal. App. 4th 608 (2015) .................................................................................................6

*Children's Hosp. & Med. Ctr. v. Bonta*,
97 Cal. App. 4th 740 (2002) ...................................................................................................7

*Cunningham v. Cnty. of Los Angeles*,
879 F.2d 481 (9th Cir. 1988) ..................................................................................................7

*Dane-Elec Corp., USA v. Bodokh*,
35 Cal. App. 5th 761 (2019) ...................................................................................................6

*Doppes v. Bentley Motors, Inc.*,
174 Cal. App. 4th 967 (2009) .................................................................................................6

*Fair Hous. of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) ..................................................................................................9

*Graciano v. Robinson Ford Sales, Inc.*,
50 Cal. Rptr. 3d 273 (2006) ....................................................................................................4

*Haun v. Pagano*,
118 Cal. App. 5th 667 (2026) .................................................................................................6

*Hoffman v. Superior Ready Mix Concrete, L.P.*,
30 Cal. App. 5th 474 (2018) ...................................................................................................6

*Hiken v. Dep't of Def.*,
836 F.3d 1037 (9th Cir. 2016) ................................................................................................7

*In re SAS AB*,
No. 22-10925-MEW (Bankr. S.D.N.Y. May 23, 2024), ECF No. 2601 ..................................8

*In re Spirit Aviation Holdings Inc.*,
No. 25-11897-SHL (Bankr. S.D.N.Y. Mar. 4, 2026), ECF No. 821 .......................................8

*Joseph S. v. Kijakazi*,
2023 WL 2628243 (C.D. Cal. Jan. 23, 2023) .........................................................................8

*Ketchum v. Moses*,

24 Cal. 4th 1122 (2001) ...................................................................................................7

*Mann v. Quality Old Time Serv., Inc.*,

    42 Cal. Rptr. 3d 607 (Cal. Ct. App. 2006) ....................................................................5

*Meister v. Regents of Univ. of California*,

    67 Cal. App. 4th 437 (1998) ...........................................................................................7

*Moreno v. City of Sacramento*,

    534 F.3d 1106 (9th Cir. 2008) ........................................................................................9

*PDV USA, Inc. v. Interamerican Consulting Inc.*,

    2026 WL 1283316 (S.D.N.Y. May 11, 2026) ................................................................7

*Pulliam v. HNL Auto. Inc.*,

    60 Cal. App. 5th 396 (2021) ...........................................................................................7

*Reynolds Metals Co. v. Alperson*,

    25 Cal. 3d 124 (1979) .....................................................................................................6

*Sokolow v. Cnty. of San Mateo*,

    261 Cal. Rptr. 3d 231 (Cal Ct. App. 1989)......................................................................5

*Syers Props. III, Inc. v. Rankin*,

    226 Cal. App. 4th 691 (2014) .........................................................................................9

*Taylor v. Cnty. of Los Angeles*,

    50 Cal. App. 5th 205 (2020) ...........................................................................................9

*Trendsettah USA Inc. v. Swisher Int'l Inc.*,

    2023 WL 8263365 (C.D. Cal. Nov. 17, 2023).................................................................8

*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*,

    2013 WL 11299004 (9th Cir. Sept. 9, 2013) ..................................................................8

*Yuga Labs, Inc. v. Ripps*,

    2024 WL 489248 (C.D. Cal. Jan. 11, 2024) ...................................................................7

**RULES**

Federal Rule of Civil Procedure 11 .......................................................................................3

Federal Rule of Civil Procedure 12 .....................................................................................10

## **INTRODUCTION**

Before this litigation began, Steve Sarowitz—the billionaire financier of Wayfarer Studios and Justin Baldoni—threatened that if Blake Lively ever "crossed the line," he would use his vast personal fortune to destroy Lively and her husband, comparing his plan to a holy war. The Wayfarer Parties[1] made good on that threat just days after Lively filed her administrative complaint for sexual harassment and retaliation with the California Civil Rights Department—claims which they have now admitted were "protected activity" that "deserved to be heard"—by filing a frivolous, baseless, and retaliatory $400 million defamation lawsuit designed to sue Lively "into oblivion." This gross abuse of the legal system was ***not*** meant to win in court—its aim was to retaliate against Lively by falsely branding her a liar, intimidating witnesses and the media, and discouraging others from speaking out. The Wayfarer Parties filed first in California state court against *The New York Times*, withdrew it, re-filed in federal court, and then amended for no reason other than seeking publicity designed to impose maximum harm on Lively. Then, after they *vowed* (in the media) that they would amend their complaint following this Court's dismissal of their entire complaint, they quietly abandoned their lawsuit.[2]

The Wayfarer Parties employed scorched-earth litigation tactics designed to drain Lively's resources, including a near-daily press campaign promoting their sham lawsuit, propounding expansive and irrelevant discovery demands, obstructing discovery directed at them and affiliated third parties, and forcing Lively to seek frequent relief from the Court to reign in their abusive docket filings. The Wayfarer Parties chose to bring this retaliatory action in this Court under California law, despite California Civil Code Section 47.1's robust fee- and cost-shifting

---

[1] The "Wayfarer Parties" collectively refers to Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends With Us Movie LLC, Melissa Nathan, Jennifer Abel, and Steve Sarowitz.

[2] *See* WF Dkt. No. 207; *see also* Declaration of Esra Hudson ¶ 33 ("Hudson Decl."), filed contemporaneously herewith.

provisions, and readily-available public information regarding the rates charged by the law firms they *knew* would defend Lively. They could have ended it (and offered to reimburse Lively) at any time. Having refused to do so, they should be ordered to reimburse Lively for all of the costs, attorney's fees, and expenses they improperly forced her to incur.

## RELEVANT BACKGROUND

On January 16, 2025, the Wayfarer Parties filed their $400 million retaliatory lawsuit against Lively and others, amending it on January 31, 2025 (collectively the "Wayfarer Action"). WF Dkt. No. 1; Dkt. No. 50. An obvious PR tool (filed for no conceivable legal reason before any responsive pleading or deadline to amend), the 391-paragraph First Amended Complaint ("FAC") and 168-page "Exhibit A" was an unhinged rant that attempted to brand Lively (falsely) as a liar. *See, e.g.*, Dkt. No. 50. The Wayfarer Parties sensationalized their lawsuit by launching and promoting a website, "thelawsuitinfo.com." *See* Dkt. No. 748, at 11 (describing launch of "the lawsuitinfo.com"); *see also* Dkt. No. 1043-17 (Signal group chat gloating about the website launch).

At the inception of the litigation, on January 30, 2025, the Court determined that the Wayfarer Action and Lively's affirmative case (the "Lively Action") "involve common questions of law and fact," and "consolidated [the] cases into a single action." *See* Dkt. No. 47. As this Court acknowledged, throughout the litigation, the parties engaged in "an extensive and fiercely contested discovery process." Dkt. No. 1273 at 11. At every turn, discovery was met with extreme resistance by the Wayfarer Parties, who failed to produce documents, improperly invoked attorney-client privilege, and/or destroyed relevant evidence. *see* Dkt. No. 862 (Motion for Spoliation Sanctions); Dkt. No. 1125 (Ordering the production of documents improperly withheld for privilege). This required Lively to file over fifteen discovery-related motions to compel during the course of these Actions (five of which were prior to the deadline for the Wayfarer Parties to

2

amend their complaint). Hudson Decl., ¶ 37. The Wayfarer Parties also abused the Court's docket to smear both Lively and her counsel, leading the Court to warn that "future misuse . . . may be met with sanctions." Dkt. No. 220 (granting motion to strike).

On March 20, 2025, Lively moved to dismiss the FAC (the "MTD"). Dkt. Nos. 144–46. On June 9, 2025, the Court dismissed the FAC in its entirety, criticizing it for "lack[ing] clarity as to the boundaries" of claims and for relying on "conclusory and often dramatized allegations." Dkt. No. 296 at 38, 45, 80. Given the baseless nature of their claims, Lively served five of the Wayfarer Parties ("R11 Plaintiffs") with Rule 11 Safe Harbor letters and demanded that they withdraw six of the seven claims asserted against her. Dkt. No. 748-1 at 89; *see also* Hudson Decl. ¶¶ 29-32. In response to her subsequent Rule 11 Motion, the R11 Plaintiffs did not even attempt to defend the factual or legal merits of their claims. Dkt. Nos. 233; 748-1 at 9. On March 27, 2026, the Court granted Lively's Rule 11 Motion, concluding that there was ***"no conceivable basis" to assert five out of the seven claims against Lively***, and reprimanding the Wayfarer Parties' counsel for "making claims that were legally frivolous and factually baseless." WF Dkt. No. 226 at 10; *see also* Hudson Decl., ¶ 30.

On September 8, 2025, Lively moved for an award of attorneys' fees and costs, treble damages, and punitive damages pursuant to Section 47.1 ("47.1 Motion"). Dkt. No. 748. On June 12, 2025, the Court granted the 47.1 Motion, finding that Lively: (i) "made statements that come within the purview of Section 47.1," meaning she had a reasonable basis for making claims of sexual harassment, retaliation and related claims, (ii) "prevailed on her defense," and (iii) "there is no evidence" that Lively made her statements with "malice." Dkt. No. 1440 at 47.

3

## ARGUMENT

**I.      The Wayfarer Parties Are Liable for Lively's Attorneys' Fees and Costs.**

Section 47.1 provides that "[a] prevailing defendant in any defamation action brought against that defendant for making a communication [without malice] that is privileged under this section ***shall be entitled to their reasonable attorney's fees and costs*** for ***successfully defending themselves in the litigation*** . . ." Cal. Civ. Code § 47.1(b) (emphasis added). Accordingly, Lively seeks  $8,035,040.88 in fees and costs for her successful litigation defense.  As reflected in Exhibit B to the Declaration of Diana Kantner, this figure represents the expenses incurred and work performed by Lively's Counsel to that end—specifically, the fees and costs that relate to (i) motion practice associated with the Wayfarer Action, including, but not limited to, the prevailing MTD, then Rule 11 Motion, and motions to compel; (ii) work performed associated with the Consolidated Action as a whole, including discovery through the deadline for the Wayfarer Parties to amend their pleading that was relevant to both actions; and (iii) Lively's 47.1 Motion, including this application. *See* Kantner Decl., ¶¶ 10-18 (summarizing fees and costs); *see also* Ex. B.

**II.     Section 47.1 Does Not Permit Apportionment of Defense Fees and Costs.**

Section 47.1 does not limit the recovery of reasonable attorney's fees and costs to the successful defense of a particular claim (i.e., defamation), but, instead, applies to the successful defense of "the litigation." Cal. Civ. Code § 47.1(b). Accordingly, apportionment of Lively's defense costs by claim is not permitted. Section 47.1's conferral of a fee shifting right to the recovery of fees for "successfully defending … in the litigation"—distinguishes Section 47.1 from other fee-shifting statutes. Under California law, apportionment may be appropriate in other contexts, such as where a plaintiff has prevailed upon some claims but not others, or where a statute textually limits fee-shifting to particular claims.  For instance, in *Graciano v. Robinson Ford Sales, Inc.*, *see* Dkt. No. 1440, at 46 n.14, the California appellate court evaluated the lodestar amount

4

where the plaintiff prevailed on some claims for which she was entitled to recover fees pursuant to two different statutes: the Automobile Sales Finance Act *and* the Consumers Legal Remedies Act, which limit recovery to the causes of action brought under those statutes, unlike Section 47.1. 50 Cal. Rptr. 3d 273, 287-88 (Cal. Ct. App. 2006); *see also Sokolow v. Cnty. of San Mateo*, 261 Cal. Rptr. 3d 231, 251 (Cal Ct. App. 1989) (discussing apportionment under California's Fair Employment and Housing Act).

The text and purpose of Section 47.1 do not support the use of apportionment principles here. Section 47.1 entitles recovery for the successful defense of a ***litigation*** without any textual limitation to any particular claim. The text and structure of Section 47.1 is thus different from California's anti-SLAPP statute, under which parties may file a "motion to strike" a particular "***cause of action***" (or causes of action). Cal. Civ. Proc. Code § 425.16(c) (emphasis added). Where a SLAPP defendant succeeds in striking some (but not) all claims, principles of apportionment may apply to address still-viable claims. *Mann v. Quality Old Time Serv., Inc.*, 42 Cal. Rptr. 3d 607, 616-18 (Cal. Ct. App. 2006) (explaining that a reduced award may be appropriate where "the defendant achieved only a relatively minor benefit and the essential thrust of the plaintiff's complaint remains viable"). No such concerns apply to Section 47.1, where success is measured by "the litigation" rather than a specific claim.

In the Wayfarer Action, Lively succeeded in every conceivable measure. ***All*** of the Wayfarer Parties' claims—which were brought as a strategy to sue her "into oblivion"—were dismissed with prejudice and abandoned without amendment or appeal. Apportionment is therefore inappropriate under Section 47.1 given its broad statutory purpose of protecting good faith complainants (like Lively) from the costs of retaliatory litigation.  Lively is entitled to the recovery of full fees and costs associated with her prevailing defense of the Wayfarer Action, as

well as for fees and costs incurred in furtherance of that recovery, including  in connection with this motion. *See Doppes v. Bentley Motors, Inc.*, 174 Cal. App. 4th 967, 1002 (2009) ("[W]hen attorney fees are recoverable by statute, the reasonable attorney fees incurred in preparing the motion are also recoverable.").[3]

Likewise, where work on recoverable and non-recoverable matters is "inextricably intertwined," no apportionment is required. *See Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129–30 (1979) ("Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."); *see also Hoffman v. Superior Ready Mix Concrete, L.P.*, 30 Cal. App. 5th 474, 485 (2018) (same); *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608 (2015).[4]  Here, Lively is entitled to recover fees and costs on work that is "inextricably intertwined" among her successful defense of the Wayfarer Action and her prosecution of the Lively Action through the Wayfarer Parties' abandonment of their right to amend the dismissed complaint (*i.e.,* June 23, 2026). Kantner Decl., ¶ 17 (describing intertwined work).[5]

### III.    Lively's Attorneys' Rates Are Reasonable.

The attorneys' fees sought in the amount of $7,495,526.87 are reasonable.  In California, courts apply the "lodestar method" to calculate "a statutory attorney's fee award unless the

---

[3] Lively's fees and costs for preparing the instant fee motion have been incurred in June, the accounting for which has not been closed, and Lively has not been invoiced. Lively respectfully requests the ability to submit her final invoices for fees and costs in June following the issuance of such invoices. Hudson Decl., ¶ 14; Gottlieb Decl., ¶ 3.

[4] *See also Dane-Elec Corp., USA v. Bodokh*, 35 Cal. App. 5th 761, 771–72 (2019) (apportionment not required when claims are "so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units"); *Graciano v. Robinson Ford Sales, Inc.*, 50 Cal. Rptr. 3d 273, 289 (2006) ("Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories."); *Haun v. Pagano*, 118 Cal. App. 5th 667 (2026); *Amtower v. Photon Dynamics, Inc*., 158 Cal. App. 4th 1582, 1604 (2008).

[5] In preparing the figures submitted herein, Lively excluded fees and expenses *exclusively* associated with her affirmative case, such as, for example, those associated with amending Lively's complaint or defending summary judgment or for the motion for judgment on the pleadings, where possible. *See* Kantner ¶ (describing fee analysis and apportionment methodology).

statutory authorization for the award provide[s] for another method of calculation." *Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448–49 (1998). Using this method, courts begin with a "lodestar" figure, which is calculated by determining "the number of hours reasonably expended multiplied by the reasonable hourly rate," which "may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1134 (2001). A lodestar figure is "presumptively reasonable." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988). An hourly rate is "reasonable" when it is "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002). To determine an appropriate range, courts are vested with broad discretion to consider a number of factors, including: (1) "the experience and qualifications of each attorney and paralegal who billed on the case," *Pulliam v. HNL Auto. Inc.*, 60 Cal. App. 5th 396, 407 (2021); (2) "rate determinations in other cases," *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016); and (3) "survey[s] of prevailing rates among" similar attorneys, *Pulliam*, 60 Cal. App. 5th 396 at 407. Counsel's rates are reasonable across each measure.

*First*, the hourly rates charged by Counsel are reasonable based on the experience, and qualifications of Lively's counsel, and standard market rates. "A billing rate that is the usual rate an attorney charges for his or her services is evidence that the rate approximates the market rate." *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *2 (C.D. Cal. Jan. 11, 2024). As one Judge in this District recently held (in a case involving a Willkie fee application), because "a reasonable rate is what a paying client would be willing to pay for counsel to litigate the case effectively, the fact that [the client] actually paid the fees charged," as is the case with the fees sought here, "is a strong

7

indicator of the reasonableness of those rates." *PDV USA, Inc. v. Interamerican Consulting Inc.*, 2026 WL 1283316, at *4 (S.D.N.Y. May 11, 2026) (cleaned up); *see also Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, 2013 WL 11299004, at *4 (9th Cir. Sept. 9, 2013) (in "corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case").[6] Here, Willkie and Manatt are international and national law firms, respectively. Hudson Decl.¶ 4. In defense of the Wayfarer Action, nationally-recognized attorneys Michael Gottlieb and Esra Hudson served as co-lead trial counsel and assembled a team with extensive experience, including in First Amendment, complex commercial litigation, and employment litigation. Hudson Decl.¶¶ 5-10; Exs. 1-5; Gottlieb Decl., ¶¶ 7-14.[7] All time billed to Lively reflects 10 and 15% discounts from Manatt and Willkie's standard rates, respectively. Hudson Decl. ¶ 11; Gottlieb Decl. ¶¶ 15, 47.[8]  The average billable rates for each attorney for whom Ms. Lively is requesting fees are addressed in the declarations of Mr. Gottlieb and Ms. Hudson, respectively.

*Second*, the rates are well within the range of "rate determinations in other cases." *Hiken*, 836 F.3d 1037 at 1044; *Trendsettah USA Inc. v. Swisher Int'l Inc.*, 2023 WL 8263365, at *13-14 (C.D. Cal. Nov. 17, 2023) (approving 2014-16 rates from $1,080-$2,180, the equivalent of $1,180 -$2,380 today);[9] *Joseph S. v. Kijakazi*, No. 2023 WL 2628243, *2 (C.D. Cal. Jan. 23, 2023)

---

[6] In the bankruptcy context, courts in this District routinely approve Willkie's rack rates as reasonable. *See, e.g.*, *In re Spirit Aviation Holdings Inc.*, No. 25-11897-SHL (Bankr. S.D.N.Y. Mar. 4, 2026), ECF No. 821; *In re SAS AB*, No. 22-10925-MEW (Bankr. S.D.N.Y. May 23, 2024), ECF No. 2601.

[7] By no later than December 23, 2024, when Counsel jointly served the Wayfarer Parties (and their counsel) with cease and desist letters, were they put on notice that Manatt and Willkie were Lively's attorneys.  Hudson Decl. ¶ 16; *see also* Ex. 6.

[8] "Gottlieb Decl." shall refer to the Declaration of Michael Gottlieb, filed contemporaneously herewith.

[9] These approximate figures were calculated using the U.S. Bureau of Labor Statics CPI Inflation Calculator, inputting the money value and using the date of issuance of the decision and inflation to May 2026 as benchmark dates for the calculation. *See* U.S. Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (last visited June 25, 2026)

(approving effective attorney hourly rate in the range of $1,300-$1,600); *see PDV USA*, 2026 WL 1283316 (considering Willkie's rates).[10] Likewise, as the Court observed in *PDV USA*, although "in other geographical areas and other types of cases, the hourly rates charged to and paid by [Willkie's client] may well appear outlandish," in "the New York City area . . . , comparable rates have been awarded as reasonable in commercial litigation." 2026 WL 1283316, at *4 (collecting cases). As further described in the supporting declarations, *see* Hudson Decl., ¶¶ 44-45; Ex. 7; *see also* Gottlieb Decl., ¶¶ 45-47, Counsel's standard hourly rates are also reasonable and consistent with the "prevailing rates among" attorneys of comparable law firms. *Pulliam*, 60 Cal. App. 5th 396 at 407.

*Third*, the lodestar billed hours are reasonable. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). As further detailed in the supporting declarations, given the novel and complex employment and first amendment issues that this case presented, Lively retained the two firms that specialize in those respective areas, *see* Hudson Decl. ¶¶ 16, 38-41; Gottlieb Decl., ¶¶ 18, 41, and they delivered "consistently high quality" work that was "detailed, thorough, and [] reliable." *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002) (maintaining award given the papers' "quality, the research that they evidence, and the detailed and fact specific work that was required to prepare them"). Accordingly, Lively seeks compensation for the $7,495,526.87 in fees billed. *See* Kantner Decl.,

---

[10] "Billing rates for top-tier timekeepers in high-value practices" were "over $2,300 per hour and high-end associates nearing $2,000 per hour in 2024." *LexisNexis CounselLink Releases 2025 Trends Report Showing Large Law Command of Partner Rates, Share of Wallet*, Lexis Press Room (Apr. 22, 2025), https://www.lexisnexis.com/community/pressroom/b/news/posts/lexisnexis-counsellink-releases-2025-trends-report-showing-large-law-command-of-partner-rates-share-of-wallet.

Ex. B.[11] Given the context of this litigation, the approach of opposing counsel, and Lively's complete victory on her motion to dismiss and 47.1 Motion, this is an eminently reasonable amount. Further, given that Section 47.1 was recently enacted in 2023, Dkt. No. 1140 at 5, it required extensive research and briefing for which there is little precedent. Hudson Decl. ¶¶ 29-37.

*Finally*, even cases dismissed at the motion to dismiss stage "may still involve considerable expenses, fees, and other financial and emotional harms" stemming from attorney time defending them. Dkt. No. 1140 at 30; *see also* Hudson Decl., ¶¶ 16-37 (describing work performed by Manatt); Gottlieb Decl., ¶¶ 29-39 (describing the complexity of this litigation). This is particularly true here, where discovery was not stayed, and was aggressively pursued, alongside the litigation of Rule 12 motions.

## CONCLUSION

For the foregoing reasons, Lively respectfully requests the Court award her reasonable attorneys' fees of $7,495,526.87 and costs in the amount of $539,514.01.

---

[11] To prove hours reasonably spent, claimants need not provide "detailed time records." *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698–700 (2014) (explaining "trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent") (cleaned up). Courts often recognize, however, "that contemporaneous time records are the best evidence of lawyers' hourly work." *Taylor v. Cnty. of Los Angeles*, 50 Cal. App. 5th 205, 207 (2020). As proof of hours, Counsel included descriptions of their work in the declarations filed concurrently herewith, and have also provided "contemporaneous time records" including descriptions of attorney time. *Id*.; *see also* Kantner Decl., Ex. B (contemporaneous time records); Hudson Decl. ¶¶ 16-37 (description of work performed by Manatt); Gottlieb Decl. ¶¶ 18-28 (description of Willkie work performed).

Dated: June 29, 2026

Respectfully submitted,

/s/ Esra A. Hudson

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Koren Bell
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3000
mgottlieb@willkie.com
kbell@willkie.com

Kristin E. Bender
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
kbender@willkie.com

Michael S. Schachter
Aaron E. Nathan
Michaela A. Connolly
Melissa Taustine
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
mschachter@willkie.com
anathan@willkie.com
mconnolly@willkie.com
mtaustine@willkie.com

MANATT, PHELPS & PHILLIPS, LLP
Esra A. Hudson (admitted *pro hac* vice)
Naeun Rim (admitted *pro hac* vice)
Stephanie A. Roeser (admitted *pro hac v*ice)
Sarah Moses (admitted *pro hac vice*)
Sareen K. Armani
Katelyn A. Climaco
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com
smoses@manatt.com
sarmani@manatt.com
kclimaco@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

*Attorneys for Blake Lively*

11