**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY, <br><br>            Plaintiff, <br><br>      v. <br><br> WAYFARER STUDIOS LLC, et al, <br><br>            Defendants. | No. 24-cv-10049 (LJL) (lead case) <br> No. 25-cv-449 (LJL) (member case) |
| JENNIFER ABEL, <br><br>            Third-Party Plaintiff, <br><br>      v. <br><br> JONESWORKS LLC, <br><br>            Third-Party Defendant. | |

**DECLARATION OF DIANA KANTNER IN SUPPORT OF BLAKE LIVELY'S MOTION FOR ATTORNEYS' PURSUANT TO CAL. CIV. CODE § 47.1**

I, Diana Kantner, declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I am over 18 years of age, of sound mind, and otherwise competent to make this declaration in support of Defendant Blake Lively's motion for attorneys' fees pursuant to California Civil Code § 47.1 ("Section 47.1"). This declaration is based on my personal knowledge and professional experience in the data analytics field, as described herein.

**Education, Experience, and Work History**

2.  I am a Senior Managing Director of KCIC, LLC, a consulting firm specializing in insurance recovery, litigation support, and data analytics.  I have more than twenty-five years of

1

experience in providing data analytics, damage calculations, and claims management services for companies facing complex liability claims or litigation disputes.

3.     I received my Bachelor of Science Degree in Finance with a concentration in Accounting from the University of Illinois, Urbana-Champaign.

4.     Prior to KCIC, I was a Managing Director at The Claro Group LLC, where I provided litigation and consulting support in complex disputes, insurance coverage matters, and business interruption loss profits and property damage claims.

5.     I previously worked at Northwestern University's Feinberg School of Medicine as the Director of Financial Management, where I managed the medical school's multi-hundred-million-dollar annual budget, oversaw the school's financial plan, and developed forecasting models for its capital and strategic initiatives.

6.     I began my career in 1995 at Arthur Andersen LLP, where I focused on providing economic and financial analysis to clients in a wide range of industries, such as chemical, oil & gas, energy, and manufacturing.

7.     I have been retained as an attorney fee expert on several occasions and have served as a consulting expert in additional matters.  A significant portion of those cases have been large and complex, including those in which attorneys' fees are sought under the lodestar method on the basis of hourly billings contemporaneously paid by a prevailing client.  I have been retained in a number of confidential high-fee matters that have involved the recovery of fees exceeding nine figures.  Over the course of my career, I have reviewed and analyzed several thousand attorney invoices in connection with the evaluation, allocation and recovery of defense costs in disputed matters.

2

8.      I have also been retained as a claims consulting expert in numerous insurance claims matters, including those relating to environmental, asbestos, polychlorinated biphenyls (PCBs), Agent Orange, per- and polyfluoroalkyl substances (PFAS), and silicone breast implants, where I was responsible for preparing and presenting my findings to insurance carriers in the United States, London, and Bermuda.  In total, my claims analyses have exceeded tens, if not hundreds, of billions of dollars.

9.      My *Curriculum Vitae* is attached hereto as **Exhibit A**.

**Summary of Ms. Lively's Fees and Costs**

10.     I have been asked to examine and analyze the billings of the two law firms retained by Ms. Lively, Manatt, Phelps, & Phillips LLP ("Manatt") and Willkie Farr & Gallagher LLP ("Willkie" and, with Manatt, collectively "Counsel") in relation to her successful defense of the lawsuit brought by Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, It Ends With Us Movie LLC, Melissa Nathan, Jennifer Abel, and Steve Sarowitz (collectively, the "Wayfarer Parties"), captioned *Wayfarer Studios LLC v. Blake Lively*, Case No. 25-cv-449 (the "Wayfarer Action"). I have been specifically asked to determine the defense fees and costs to be reasonably assessed against the Wayfarer Parties, pursuant to Section 47.1.

11.     Section 47.1 provides in pertinent part that "[a] prevailing defendant in any defamation action brought against that defendant for making a communication that is privileged under this section shall be entitled to their reasonable attorney's fees and costs for successfully defending themselves in the litigation."  Cal. Civil Code § 47.1.  Here, the Court previously determined that Ms. Lively qualifies as a prevailing defendant under Section 47.1 based upon her having successfully secured a complete dismissal of the Wayfarer Parties' First Amended Complaint.  *See* Dkt. No. 1440.

3

12.    To determine the reasonable attorneys' fees and costs associated with Ms. Lively's successful defense in the Wayfarer Action, I have reviewed Ms. Lively's invoices from both firms and prepared schedules that summarize the same to assist the Court in its assessment of a reasonable lodestar, which are included as **Exhibit B**.  These schedules are based upon the invoice spreadsheets that were provided to me by Counsel and reflect the same information provided in the monthly invoices prepared for Ms. Lively.  All of the calculations made in these schedules incorporate the rates that were negotiated between Ms. Lively and Counsel, including any discounts.  As described further below, work that is not recoverable or is otherwise excludable has been removed from the schedule.  Any portion of work descriptions that revealed the substance of attorney-client privileged communications, attorney work product, or other confidential information have been redacted, with an "**XX**" indication or are otherwise anonymized.

13.    The total fees that Ms. Lively has been billed and for which she seeks to recover under Section 47.1 is $7,495,526.87. This figure does not include all of the fees incurred in connection with oral argument or the preparation of the present application, which I understand have not been fully invoiced and some are being incurred contemporaneously with this submission.

14.    Counsel represented Ms. Lively in the Wayfarer Action as well as in her affirmative case, captioned *Blake Lively v. Wayfarer Studios LLC, et al.*, Case No. 24-cv-10049 (the "Lively Action"), and billed their work to one matter, respectively, that was then billed to Ms. Lively.  As such, the firms' bills include work that relates: (i) exclusively to the Wayfarer Action (i.e., defensive costs); (ii) exclusively to the Lively Action (i.e., offensive costs); or (iii) both (i.e., intertwined).

15.    In preparing the schedules included in **Exhibit B**, I first identified and excluded any and all work that relates exclusively to the Lively Action.  Work associated exclusively to the

4

Livley Action is excluded from the schedules submitted herein and is not being submitted as part of Ms. Lively's fee application.

16.    After isolating and excluding work exclusively related to the Lively Action, I then performed a similar analysis for the work that relates exclusively to the Wayfarer Action, which is captured in Schedules B.1 and B.4 of Exhibit B.  As further reflected in the attorney narratives provided therein, Schedules B.1 and B.4 captures work concerning Ms. Lively's motion practice in the Wayfarer Action, including the prevailing motion to dismiss, the prevailing Rule 11 sanctions motion, and the Section 47.1 motion.  The total recoverable amount in Schedules B.1 and B.4 is $2,267,288.75.

17.    I then separately identified work that was associated and intertwined with both Actions, which largely concerned overlapping discovery and related fact-gathering exercises in the consolidated action.  Given the Court's June 9, 2025 decision and order granting Ms. Lively's motion to dismiss in its entirety, which granted the Wayfarer Parties leave to file an amended pleading by June 23, 2025, I selected June 23, 2025 as the cut-off date to apply to intertwined work, with the exception of any additional defense-related work that continued after that cut-off date.  This work is captured in Schedules B.2 and B.5 of Exhibit B.  The total recoverable amount in Schedules B.2 and B.5 is $5,228,238.12.

18.    Finally, Schedules B.3 and B.6 reflect the reasonable expenses and costs that Ms. Lively incurred in relation to her defense, which total $539,514.01. To determine reasonable expenses and costs, I applied the same principles used in the schedules described above.

**<u>Summary of Reasonable Fees</u>**

19.     Based upon Schedules B.1, B.2, B.4, and B.5, Ms. Lively's total lodestar for work performed in successfully defending the Wayfarer Action is approximately $7,495,526.87 which is reflected in Exhibit B. The fees sought at this time do not include fees incurred in preparing this submission.

 I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th day of June 2026 in Chicago, Illinois.


        /s/ Diana Kantner
Diana Kantner

6
