UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

BLAKE LIVELY,

                    Plaintiff,

v.

WAYFARER STUDIOS LLC, JUSTIN BALDONI,
JAMEY HEATH, STEVE SAROWITZ, IT ENDS
WITH US MOVIE LLC, MELISSA NATHAN, THE
AGENCY GROUP PR LLC, and JENNIFER ABEL,

                    Defendants.

--------------------------------------------------------------- x

JENNIFER ABEL,

                    Third-Party Plaintiff,

v.

JONESWORKS LLC,

                    Third-Party Defendant.

: No. 1:24-cv-10049-LJL (Lead Case)
: No. 1:25-cv-00449 (Member Case)

: Related to:
: No. 1:25-cv-00779-LJL

## DECLARATION OF ELLYN S. GAROFALO IN SUPPORT OF THE WAYFARER PARTIES' OPPOSITION TO PLAINTIFF BLAKE LIVELY'S MOTION FOR ATTORNEYS' FEES PURSUANT TO CAL. CIV. CODE § 47.1

522650.1

I, Ellyn S. Garofalo, declare as follows:

1.      I am an attorney licensed to practice in the State of California and admitted pro hac vice in this matter. I am a partner in the law firm of Liner Freedman Taitelman + Cooley LLP. Since approximately June 2025, I have been co-lead counsel for the defendants in *Lively v. Wayfarer Studios LLC, Justin Baldoni*, No. 1:24-cv-10049-LJL (Lead Case), No. 1:25-cv-00449 (Member Case), and the related matter, No. 1:25-cv-00779-LJL. As such, I am competent to testify to the matters set forth herein.

2.      Blake Lively filed her lawsuit against the Wayfarer Parties on December 31, 2024. On January 16, 2025, the Wayfarer Parties filed a separate action against Ms. Lively, followed by a First Amended Complaint and then the Wayfarer Parties' Second Amended Complaint (the "Wayfarer Complaint"), filed on January 31, 2025. The Wayfarer Complaint asserted nine claims against five defendants: Ms. Lively, The New York Times, Ryan Reynolds, Leslie Sloane, and Vision PR.

3.      Count II asserted a defamation claim against Ms. Lively and The New York Times (the "Times"), alleging that Ms. Lively provided false and defamatory statements to the Times, which the Times published in a story coinciding with the filing of Ms. Lively's California Civil Rights Department complaint. Defamation was only one of nine causes of action; the others included civil extortion, false light, breach of the implied covenant, intentional interference with contract and prospective economic advantage, negligent interference with prospective economic advantage, promissory fraud, and breach of implied-in-fact contract.

4.      On March 20, 2025, Ms. Lively moved to dismiss the Wayfarer Complaint and for attorneys' fees pursuant to California Civil Code § 47.1 ("Section 47.1").

522650.1

5.      On June 9, 2025, the Court dismissed the Wayfarer Complaint, including Count II for defamation against Ms. Lively and the Times, on privilege grounds, and denied Ms. Lively's request for fees under Section 47.1 without prejudice.

6.      On September 8, 2025, Ms. Lively moved for fees and costs, treble damages, and punitive damages pursuant to Section 47.1.

7.      On January 14, 2026, in its separate state-court action under New York's anti-SLAPP statute, the Times moved for summary judgment and sought $181,622.70 in attorneys' fees in connection with the Wayfarer Parties' claims against it. A true and correct copy of the Times' memorandum of law in support of that motion is attached as **Exhibit 1** hereto.

8.      On June 12, 2026, the Court granted Ms. Lively's motion for fees and costs under Section 47.1 but denied her request for treble and punitive damages.

9.      I have reviewed Ms. Lively's fee motion and the attached declarations of Michael Gottlieb, Esra Hudson, and Diana Kantner. The shortcomings in Ms. Kantner's qualifications and analysis are described on pages 2 through 4 of the Wayfarer Parties' opposition.

10.     Without establishing any experience or expertise in allocating recoverable and nonrecoverable attorneys' fees under Section 47.1 (or any statute), or providing a proper foundation for her opinions, including a showing of familiarity with the legal claims, facts, or issues relevant to this litigation, Ms. Kantner separated fees into three buckets: (1) fees relating "exclusively to the Wayfarer Action" (i.e., defensive costs); (2) fees relating "exclusively to the Lively Action" (i.e., offensive costs); and (3) fees relating to "both [the Wayfarer and Lively Actions]" (i.e., intertwined).

3

11. Ms. Kantner then prepared spreadsheets of two categories of purportedly recoverable fees: $2,267,288.75 in fees relating exclusively to the Wayfarer Action and $5,228,238.12 in fees Ms. Kantner deemed "intertwined," for a total fee request of $7,495,526.87.

12. Neither Willkie nor Manatt provided billing invoices or receipts for the $539,514.01 in costs Ms. Lively seeks to recover. Instead, Ms. Kantner relied on "spreadsheets" provided by counsel to segregate allegedly recoverable fees from nonrecoverable fees, and she determined which fees should be assigned to each category.

13. Ms. Kantner's summaries include descriptions that do not appear to have been taken verbatim from the billing statements, and she admits that she edited entries in the spreadsheets provided by Ms. Lively's counsel to exclude "any portion of work descriptions" that might disclose privileged or confidential information. Kantner Decl. ¶ 12.

14. Ms. Kantner also calculated "reasonable expenses and costs" at $539,514.01 without explaining how she calculated that amount, whether she was provided with vendor invoices, or how she determined what was necessary or reasonable other than to state that she "applied the same principles used in the schedules" that allegedly reflect reasonable and recoverable fees. Kantner Decl. ¶ 18. Neither Willkie nor Manatt provided receipts or invoices to substantiate their costs.

15. Ms. Kantner's schedules of fees and costs allegedly recoverable under Section 47.1 are extremely overinclusive and deeply flawed. The summaries include work by 82 timekeepers, including 53 from Willkie Farr and 29 from Manatt. Ms. Lively does not provide sufficient information to determine the reasonableness of the rates or hours worked. For instance, she provided biographical, qualification, title, and billing-rate information for only 11 timekeepers, leaving 71 timekeepers unsupported.

522650.1

16.     The omission is material because those unsupported timekeepers include substantial billers, such as Vincent Biagiotti, who billed 435.2 hours and $517,888.00; Jung Hyun (Monica) Lee, who billed 307.4 hours and $324,582.90; Brent Dinino, who billed 306.4 hours and $188,895.60; Autumn Adams-Jack, who billed 178.7 hours and $190,265.40; and Zachary Stern, who billed 153.0 hours and $85,616.40. **Exhibits 2A** and **2B** summarize the entries attributed to the 71 timekeepers for whom biographical information is not provided.

17.     Schedules B.1 and B.4 to Ms. Kantner's Declaration purport to reflect work performed solely in the Wayfarer Action. Those schedules identify 49 timekeepers who billed 2,069.9 hours and $2,267,288.75. as reflected in **Exhibits 3A and 3B**. Ms. Lively provided no biographical, qualification, title, or billing-rate information for 38 of these timekeepers, although they billed 788.7 hours and $719,506.35. In other words, even within the schedules that Ms. Lively characterizes as Wayfarer-only work, more than one-third of the hours and nearly one-third of the fees were billed by timekeepers for whom no supporting credentials, title, or rate justification was provided. Exhibit 3B lists the entries attributed to those 38 timekeepers.

18.     Given the lack of foundational information and the breadth of the fees and costs sought by Ms. Lively for the dismissal of a single cause of action pursuant to an early motion to dismiss, it is impracticable, if not impossible, to isolate or dissect each entry in Ms. Kantner's summaries.

19.     Under my direction and supervision, attorneys in my law firm converted the schedules attached to Ms. Kantner's declaration from PDF format into Excel after Ms. Lively's counsel failed to provide the Excel spreadsheets when requested. Using the Excel workbook our office created from Ms. Kantner's PDF schedules, I directed the attorneys to prepare spreadsheets showing examples from Ms. Kantner's summaries that demonstrate various flaws. Those

spreadsheets are attached as Exhibits 4 through 12. They were prepared by performing keyword searches and manually examining the entries. Except for Exhibit 4, if a time entry contained the relevant keyword or descriptor, the entire time and dollar amount were counted in the totals because the block-billing practices of Ms. Lively's counsel made it difficult or impossible to separate the time. For Exhibit 4, where the timekeeper parenthetically identified the amount of time spent on a particular task in the narrative field, an effort was made to include only that time. That process was manually intensive because of the manner in which Ms. Kantner presented the information, so it was not performed for Exhibits 5 through 12. For Exhibits 5 through 12, if a block-billed entry contained the keyword, the entire number of minutes or hours and the dollar amount attributed to the block-billed entry were used to calculate the totals.

20.     Due to deficiencies in the entries in Ms. Kantner's summaries, it was not possible to prepare a comprehensive listing of all entries that fall into the various categories. Thus, the exhibits are illustrative only.

21.     **Exhibit 4** includes entries for attorney internal meetings, calls, and conferences. Although Exhibit 4 is illustrative rather than exhaustive, the entries capture an estimated 728.9 hours and $894,506.20 for internal communications. For instance, on May 29, 2025, Ms. Climaco recorded "attend litigation strategy meeting"; on February 5, 2025, Ms. Governski recorded "team strategy session" and "comms/legal call"; on June 20, 2025, Ms. Bender recorded "attend partner call"; and on June 16, 2025, Ms. Connolly recorded "partner strategy call." Ms. Hudson also repeatedly recorded entries vaguely described as a "legal strategy call" or "legal strategy meeting," including on June 2 and June 6, 2025.

22.     Exhibit 4 demonstrates that the lawyers spent an exorbitant amount of time conferring internally, illustrating the inefficiency caused by the numerous timekeepers. In addition,

6

the descriptions of the time entries reflected in Exhibit 4 do not identify the issues discussed, the work performed, why multiple timekeepers were necessary, or whether the communications related to the defense of the defamation claim rather than Ms. Lively's affirmative claims, collateral sanctions proceedings, or the broader consolidated litigation.

23.     The billing records also reflect redundant or duplicative time, particularly where multiple senior attorneys billed to the same brief, motion, or strategy workstream on the same dates, or where the same timekeeper recorded serial entries for drafting, revising, reviewing, strategizing about, and further revising the same filing. For example, from April 4 through April 10, 2025, multiple attorneys billed for strategy, drafting, research, review, revision, and finalization of the same motion-to-dismiss reply. On May 15 and 16, 2025, several timekeepers—including Ms. Roeser, Mr. Bruno, Mr. Dinino, Mr. Gramajo, Ms. Climaco, and Ms. Hudson—billed for revising, finalizing, cite-checking, and strategizing regarding the same Rule 11 motion. On June 2, 2025, multiple team members billed separate entries for document-review protocol, allocation of assignments, workflow, and strategy calls. On June 20, 2025, multiple timekeepers billed for partner calls, team calls, and related discovery or deposition strategy. This pattern makes it difficult to determine whether the hours claimed were reasonably necessary or instead reflect overstaffing, repeated review, and inefficiencies generated by the size of Ms. Lively's legal team.

24.     **Exhibit 5** shows an estimated 842.6 hours and $905,852.30 for sanctions-related proceedings, including $529,561.35 for Rule 11 matters, $289,076.40 for spoliation sanctions, $50,587.70 for Rule 3.6 proceedings, and $36,626.85 for other sanctions matters. See Exhibits 5A-5D. These motions were collateral to the defense of the defamation claim and continued well beyond the pleading-stage dismissal. Further, the Court declined to award Ms. Lively her fees in connection with her Rule 11 motions.  The Court did not rule on the remaining motions.

25.      **Exhibit 6** attempts to capture entries in which Ms. Kantner replaced portions of the narrative with "XX." The spreadsheet reflects 319.5 hours and $361,403.50 in entries containing such redactions, making it impossible to determine the full scope of the work performed or on whose behalf it was performed. The redactions are not limited to minor details; they obscure parties, motions, subjects, witnesses, documents, consultants, interviews, articles, productions, protective-order issues, privilege issues, and communications with clients, legal teams, media teams, and unidentified third parties. For example, entries refer to research concerning whether pleadings can be struck "XX," review of an "XX" motion to dismiss, legal issues related to "XX statements," review of "XX interviews and articles," protective-order issues "XX," and "XX production." These redactions prevent allocation to the defamation defense and obscure whether the work concerned Ms. Lively, Mr. Reynolds, media strategy, discovery, third-party issues, or another matter.

26.      Other entries refer to multiple motions to dismiss, further indicating that the claimed fees may include work unrelated to Ms. Lively's defense of the defamation claim. For example, on March 5, 2025, Mr. Gottlieb recorded 1.5 hours for "[p]lanning calls (discovery and MTDs) with legal team, XX," and on March 12, 2025, he recorded time for "MTD drafts" and related communications while redacting the identity of the party involved. Rule 11 entries likewise include work concerning unidentified parties. On June 9, 2025, Mr. Nathan expressly recorded 1.5 hours to "revise XX rule 11 reply," in addition to 0.6 hours revising Ms. Lively's Rule 11 reply. On April 11, 2025, Ms. Taustine recorded 3.5 hours, or $4,462.50, revising a Rule 11 motion that included reviewing "XX interviews and articles." These redactions prevent a determination of whether the claimed fees were incurred on Ms. Lively's behalf or instead concerned Mr. Reynolds,

8

other parties, other claims, collateral sanctions efforts, nonparty discovery, media-related issues, or another matter outside the defense of the defamation claim.

27.     Not only are the entries containing "XX" unduly vague, but many other entries without redactions make it impossible to determine what work was performed, on whose behalf, in which action, or concerning which issue. **Exhibit 7** identifies such entries, which include time for reviewing unidentified court filings, attending to unspecified "workflow," discussing generic "litigation strategy," and "syncing" regarding broad subjects such as motions to dismiss and ongoing discovery matters.  For example, on March 5, 2025, Ms. Lee recorded "Review and analyze filings"; on January 26, 2025, Ms. Bender recorded research regarding unidentified "workstreams"; on May 16, 2025, Ms. Roeser recorded strategy regarding litigation-related communications; and on March 25, 2025, Ms. Roeser recorded "sync" regarding litigation strategy and factual and forensic investigation. These descriptions provide no basis to determine whether the claimed work related to the defense of the defamation claim, Ms. Lively's affirmative claims, collateral sanctions work, media or communications strategy, discovery in the broader consolidated litigation, or another aspect of the case.

28.     **Exhibit 8** shows that Ms. Lively included time spent on matters other than her defense of the defamation claim in the Wayfarer Action. The entries include work on Ms. Lively's affirmative claims, such as opposing Wayfarer's motions for summary judgment and judgment on the pleadings in the Lively Action; Wayfarer's answers to Ms. Lively's complaint in the Lively Action; FEHA issues; discovery concerning Wayfarer's investigation of Ms. Lively's employment claims; and analysis of "employment" claims. Exhibits 8A-D also demonstrate that Ms. Kantner's summaries include work on the Jonesworks action, The New York Times' motion to dismiss, and co-defendant Leslie Sloane's motion practice and discovery. Representative entries include

522650.1

analysis of defendants' answers to Ms. Lively's amended complaint; work on California employment claims and FEHA-related issues; review and analysis of the New York Times' motion to dismiss; offensive discovery work, including motions to compel the Wayfarer investigation and financial records; and mixed hearing preparation involving summary judgment, judgment on the pleadings, and spoliation. Exhibit 8 provides examples of these entries, which total at least 277.4 hours and $309,075.00.

29.    Ms. Lively also seeks fees for nonlegal or business-oriented work, including advice concerning media communications, press coverage, social-media reports, and "client media appearances." **Exhibit 9** identifies representative entries. For example, on March 6, 2025, Ms. Hudson recorded an entry to strategize regarding client media appearances; on June 3, 2025, she recorded time to advise regarding legal issues related to a media statement; and on June 18, 2025, she recorded time to review and analyze media and social-media reports and analysis. Notably, Ms. Lively previously took the position that media advice is not attorney work because it constitutes a business, rather than legal, function. See ECF No. 586, pp. 2-3.

30.    Ms. Lively also seeks fees for clerical or administrative work, including filing documents in counsel's internal document-management system, iManage; indexing pleadings; organizing and updating trackers; calendaring; preparing binders and e-binders; distributing filings; managing service lists; and "book reading," i.e., proofreading. **Exhibit 10** identifies examples of these clerical entries, which reflect at least 185.3 hours and $103,508.85 in clerical work. Representative examples include updating research trackers, case calendars, deadline lists, and shared deadline trackers; indexing, uploading, and organizing pleadings and filings in iManage or data rooms; book reading filings and memoranda; revising service lists; distributing filings; preparing notices; and coordinating filing logistics. These tasks are administrative or clerical, not

522650.1

substantive defense work, and they appear to have been billed as attorney time or at attorney rates. Because the exhibit is illustrative rather than exhaustive, the total amount of clerical fees sought may be higher.

31.    Ms. Lively also seeks attorneys' fees for travel time untethered to any identified proceeding or event related to the defense of the defamation claim. **Exhibit 11** identifies 47.5 hours and $55,145.30 in travel-related entries. For example, on February 4, 2025, Ms. Hudson recorded 10.0 hours, or $11,610.00, in a block that included travel from New York to Los Angeles, social-media commentary, calls with unidentified persons, and multiple litigation workstreams; on February 4, 2025, Ms. Roeser recorded 4.5 hours, or $4,617.00, for travel from New York to Los Angeles; and on May 30, 2025, Ms. Hudson recorded 5.5 hours, or $6,385.50, for travel from Washington, D.C., to Los Angeles. These entries do not identify a hearing, deposition, court-ordered appearance, compensable event, or other claim-specific purpose, and because several are block-billed with other tasks, they may obscure additional noncompensable travel time.

32.    Ms. Kantner's billing summaries show that Ms. Lively's counsel began billing work concerning Section 47.1 fees, damages, and procedural mechanisms months before the current fee application. The motion to dismiss was filed in March 2025 and included a request for fees under Section 47.1, yet the records still do not reliably allocate compensable and noncompensable work. Later entries dated after the motion to dismiss was filed include work on fee-motion strategy, appellate timing, damages options, legislative history, and preparation of motions for attorneys' fees and damages under Section 47.1. These entries show that, despite the foreseeable fee request, the records continued to be block-billed, redacted, and mixed across claims and proceedings in a way that prevents reliable apportionment.

11

522650.1

33. The summaries Ms. Kantner provided for expenses show similar problems. The Kantner Declaration attaches Schedules B.3 and B.5, which purport to summarize the expenses sought. Ms. Lively seeks an estimated $539,514.01 in expenses across seven categories, as reflected in **Exhibits 12A-G**, but the descriptions frequently fail to identify how the charges furthered the defense of the defamation claim rather than Ms. Lively's affirmative claims or the broader consolidated litigation.

34. The largest category—$374,415.14 in "Experts and Consultants" expenses— includes a single $173,276.50 charge described only as "GBX Holdings LLC," as well as generally described e-discovery services, but Ms. Kantner does not provide invoices, identify the work performed, or allocate those expenses to the defamation defense. It is clear from Mr. Gottlieb's declaration that the approximately $173,000 in costs charged by GBX Holdings, LLC were incurred "for the purpose of assessing the impact to Ms. Lively's reputation, if any, from the Wayfarer Action." Similarly, Ms. Kantner's summaries identify $173,276.50 in "47.1 Related" GBX charges and include invoice descriptions for "new impressions," assembling a "damages approach," "47.1 impressions collection," website and traffic analytics, calculation of impressions figures, coding social-media posts, reviewing social-media posts for use of the word "defamation," and updating impression numbers. Those descriptions reflect damages and reputation-impact work, not costs that are tied to defending the defamation claim itself.

35. Ms. Lively also seeks $134,519.65 in computer-research expenses for Westlaw, Lexis, Bloomberg, PACER, and similar charges that generally do not identify the research topic or proceeding to which they relate, and she does not provide invoices. Nor does Ms. Lively provide the firms' Westlaw and Lexis fee arrangements or otherwise explain how Ms. Kantner arrived at the requested amount.

522650.1

36.    The $28,438.71 in travel expenses include charges for client meetings, a strategy conference, a "Lively v. Wayfarer Summit," and co-counsel meetings that are not tied to a hearing or defense-specific event. The remaining categories include local meals, public-records searches, and other charges such as lunches, background searches, and a transcript fee that do not show claim-specific necessity. Ms. Kantner's summary schedules therefore provide insufficient information to determine what portion of the claimed $539,514.01 in expenses was reasonably incurred in defending the defamation claim, as opposed to Ms. Lively's affirmative case or other aspects of the litigation.

37.    Taken together, the Kantner Declaration and supporting materials show that Ms. Lively's request depends on categories of work that are unsupported, unallocated, redacted, vague, clerical, collateral, or facially connected to matters other than the defense of the defamation claim. The problems are cumulative rather than isolated: many entries combine multiple issues, including block billing, internal strategy communications, redactions, work for other parties or actions, media-related work, travel, and administrative tasks. The summaries do not permit a reliable determination of what amount was reasonably and necessarily incurred for the defense of the defamation claim.

522650.1

38.    Attached as **Exhibit 13** is a true and correct copy of an order dated February 25, 2025, in *In re Johns-Manville Corporation*, No. 82-11656 (CGM), in which the United States Bankruptcy Court for the Southern District of New York reduced Willkie's requested attorneys' fees from $543,165.70 to $10,512.50.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 13, 2026
       Los Angeles, CA

By: */s/ Ellyn S. Garofalo*
LINER FREEDMAN TAITELMAN + COOLEY, LLP
   Ellyn S. Garofalo
   1801 Century Park West, 5th Floor
   Los Angeles, CA 90067
   Tel: (310) 201-0005
   Email: egarofalo@lftcllp.com

14

522650.1