UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>Plaintiff,<br><br>-v-<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,<br><br>Defendants. | Case No. 1:24-cv-10049-LJL<br>(consolidated with 1:25-cv-00449-LJL) |
| JENNIFER ABEL,<br><br>Third-Party Plaintiff,<br><br>-v-<br><br>JONESWORKS LLC,<br><br>Third-Party Defendant. | |

# DECLARATION OF JENNIFER ABEL

I, Jennifer Abel, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a defendant and the third-party plaintiff in the above-captioned action.

2. I respectfully submit this declaration in support of my motion for summary judgment against third-party defendant Jonesworks LLC ("Jonesworks").

## Background

3. I am a publicist, who resides in Beverly Hills, California.

4. Jonesworks is a well-known public relations firm founded by Stephanie Jones ("Jones"), who serves as its CEO.

5. I was hired by Jonesworks as Vice President on or about July 9, 2020, with a mandate to oversee Jonesworks' talent department and to grow its Los Angeles office, which at the time had only four employees. A true and correct copy of Jonesworks' offer letter, which I co-signed, is attached as Exhibit 1.

6. In connection with and as a condition of my employment, I signed a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement (the "2020 Employment Agreement"). A true and correct copy of the 2020 Employment Agreement is attached as Exhibit 2.

7. The 2020 Employment Agreement characterized me as an "at-will" employee whose employment was "exclusive" to Jonesworks during the period of employment.

8. On or about November 22, 2021, Jonesworks and I entered into a modified employment agreement (the "2021 Employment Agreement"). A true and correct copy of the 2021 Employment Agreement is attached as Exhibit 3.

9. The 2021 Employment Agreement also changed my compensation and provided

that Jonesworks would indemnify me in certain circumstances. I performed all my obligations under the 2021 Employment Agreement.

10. The 2021 Employment Agreement states that my primary place of employment pursuant thereto shall be Los Angeles, California.

11. During my four years of employment with Jonesworks, and at its direction, I was based out of Jonesworks' Los Angeles office and performed all of my work within California, except for infrequent work-related trips.

12. Wayfarer Studios LLC ("Wayfarer") is a production studio founded by Justin Baldoni ("Baldoni") and others.

13. Baldoni was the director and co-star of the film *It Ends With Us* (the "Film").

14. In or about 2018, Baldoni engaged Jonesworks to provide public relations services to him.

15. On or about May 6, 2020, Jonesworks and Wayfarer entered into an agreement (the "Wayfarer Agreement") pursuant to which Jonesworks served as Wayfarer's "exclusive public relations counsel to provide strategic communications services" as described on an attached Schedule A (the "Services") in exchange for a fee. A true and correct copy of the Wayfarer Agreement is attached as <u>Exhibit 4</u>.

16. The Services included, among other things: assisting in developing, writing and updating communication materials related to all press outreach; managing media and press communications; and advising on marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles are aligned.

17. I was the primary point person with Wayfarer and Baldoni (together, the "Wayfarer Clients") during Wayfarer's multi-year engagement with Jonesworks.

18. I largely managed Jonesworks' work for Wayfarer out of the firm's Los Angeles office and developed a close and trusting relationship with Baldoni, Wayfarer CEO Jamey Heath ("Heath"), and the rest of the Wayfarer team.

19. Jonesworks, through Jones, directed me to carry out the duties of a public relations professional on behalf of the Wayfarer Clients, including but not limited to garnering good publicity and eliminating or minimizing bad publicity for them and the Film.

20. Jonesworks set up email distribution lists (*i.e.*, a collection of email addresses that enabled people to send a single email to multiple recipients at once) to help service the Wayfarer Clients. Emails sent to those distribution lists were received by multiple Jonesworks' personnel, including Jones and me.

21. On or about July 10, 2024, I notified Jones of my departure from Jonesworks. I offered a six-week transition period, with an end date of August 23, 2024.

22. A few days later, I re-confirmed my decision to resign and advised Jones that I would be starting my own public relations firm.

23. However, Jonesworks terminated my employment on August 21, 2024.

24. Meanwhile, until August 21, 2024, and pursuant to the 2021 Employment Agreement, I continued to perform public relations activities for the Wayfarer Clients, in my capacity as a Jonesworks' employee, within the scope of my employment, and at the direction of Jonesworks.

25. Jonesworks profited and was enriched by fees paid by the Wayfarer Clients for my public relations services. True and correct copies of Jonesworks' *paid* invoices for public relations services, rendered from May 2020 through August 2024 (the month at issue herein), are attached as Exhibit 5.

**<u>Lively's Claims</u>**

26. On July 30, 2025, Lively filed her Second Amended Complaint asserting claims against me for: (a) aiding and abetting harassment and retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (b) false light invasion of privacy; and (c) civil conspiracy (collectively, "Lively's Claims") (Dkt. 520).

27. The Second Amended Complaint alleged that Melissa Nathan, along with her separate crisis management company, The Agency Group PR LLC ("TAG"), and I "perpetrated a retaliation scheme against Ms. Lively" including via "the amplifying of negative content about Ms. Lively…." (Dkt. 520, ¶ 230). The pleading further alleges that Nathan, TAG and I "aided and abetted the discriminatory conduct of Defendants It Ends With Us Movie LLC, Wayfarer, Baldoni and Heath, including but not limited to by participating in the above-described coordinated 'astroturfing' campaign to discredit and 'bury' Ms. Lively." (Dkt. 520, ¶ 411). I deny Lively's allegations.

28. In her Third Amended Responses and Objections to my Second Set of Interrogatories (the "Interrogatory Responses"), Lively purports to identify the "negative content about [her] (including through the engagement of social media)" that she alleges was "amplified" by me. A true and correct copy of the Interrogatory Responses is attached as <u>Exhibit 6</u>.[1]

29. In her Interrogatory Responses, Lively further alleges that I "amplified" negative content about her "by virtue of recommending services to be performed by TAG and facilitating that engagement" and "by direct communications with TAG and/or digital teams identifying relevant narratives as well as content to be amplified, boosted, or similar conduct, in order to negatively affect the online conversation regarding [her]." (*Id.*).

30. The alleged conduct that forms the basis of Lively's Claims against me (which

[1] The Third Amended Responses and Objections contain links to the articles and videos referenced therein.

have now been dismissed) consists of public relations activities on behalf of the Wayfarer Clients during the time in which they were Jonesworks' clients, within the scope of my employment, and any such conduct was undertaken at Jonesworks' direction. The documents cited by Lively in her Interrogatory Responses are discussed below.

31. On July 24, 2024, I informed Jones that Wayfarer was seeking recommendations for a crisis management professional to work with Jonesworks in countering potentially negative publicity related to issues on the set of the Film. Jones turned to me for recommendations for a crisis management professional. A true and correct copy of the text chain (JONESWORKS_00012591) is attached as Exhibit 7.

32. Wayfarer hired TAG to assist Jonesworks with crisis management. A true and correct copy of the agreement between Wayfarer and TAG is attached as Exhibit 8.

33. On July 31, 2024, I texted Jamey Heath and Mitz Toskovic of Wayfarer about a conversation I had with an independent journalist concerning Baldoni's exclusion from Film-related promotions and that the journalist was willing to publish a story of Lively's misconduct. I was providing public relations services to the Wayfarer Clients within the scope of my employment by Jonesworks. Moreover, I never followed up or referred the journalist to anyone, and the story was never published. A true and correct copy of the text chain (TOSKOVIC_000000620) is attached as Exhibit 9.

34. On August 2, 2024, a representative of TAG sent me a "Scenario Planning" document describing TAG's objective to "[p]rotect the reputation of" the Wayfarer Clients "in the lead up, during, and following the premiere" of the Film and related goals. My understanding is the "Scenario Planning" document was shared with me because I was a Jonesworks employee

providing public relations services to the Wayfarer Clients.[2] A true and correct copy of the "Scenario Planning" document (BALDONI_000014598) is attached as Exhibit 10.

35. On August 5, 2024, I notified Baldoni that Sony (the co-producer of the Film) had an issue with the word "friction" being used in his press interviews about the on-set relationship between Baldoni and Lively, and I proposed the word "challenge" to help downplay the ongoing social media narrative regarding speculation of an "on-set feud" resulting from Baldoni being unfollowed on social media and not being present in the marketing campaign. This was an effort to also highlight that, as director of the Film, Baldoni successfully brought all people together to "create something beautiful" amidst the very usual, and challenging, circumstances of working with multiple personalities on a film set. As set forth in my text message, the foregoing was part of public relations "strategy" which is what Jonesworks employed me to do for the Wayfarer Clients (and other clients). A true and correct copy of the text chain (BALDONI_000018710) is attached as Exhibit 11.

36. On August 7, 2024, I exchanged text messages with Jonesworks' employee Matthew Mitchell, Nathan, and TAG employee Katie Case about an online narrative concerning Baldoni and Lively's separate promotion of the Film (as opposed to both being present). My comments about how to handle that narrative were public relations services for the Wayfarer Clients within the scope of my employment by Jonesworks. A true and correct copy of the text chain (BBKOSLOW-000001800) is attached as Exhibit 12.

37. On August 7, 2024, Case sent Heath and me (at my Jonesworks email address) an email referring to "social and digital mitigation and remediation" and to public narratives concerning Baldoni and Wayfarer. My understanding is the email was sent to me in my capacity as a Jonesworks employee providing public relations services to the Wayfarer Clients. A true and

[2] I was in New York from August 4, 2024 to August 8, 2024 in connection with the premiere of the Film.

correct copy of the email (ABEL_000005094) is attached as Exhibit 13.

38. On August 8, 2024, I sent a text message to Mitchell (of Jonesworks), Nathan and Case concerning negative social media posts about Baldoni by a content creator named Jenna Redfield. Taking note of (or "flagging") negative public commentary about Baldoni was part of my duties as a Jonesworks employee. A true and correct copy of the text chain (BBKOSLOW-000004011) is attached as Exhibit 14.

39. On August 9, 2024, I exchanged text messages with Nathan concerning articles about a "rift" or "feud" between Baldoni and Lively, as well as other potential media coverage of the situation. These text messages, which reflect my monitoring negative publicity of Baldoni and potentially garnering positive publicity for him, were sent and received by me as part of my duties as a Jonesworks employee. A true and correct copy of the text chain (NATHAN-000002124) is attached as Exhibit 15.

40. On August 10, 2024, I exchanged text messages with Heath, Mitchell (of Jonesworks), and Case concerning a *Hollywood Reporter* article and TikTok videos related to Lively and/or Baldoni. The TikTok video from May 17, 2023, included within the text chain shows Baldoni and Lively in a pleasant atmosphere on the set of the Film. The *Hollywood Reporter* article discusses why it was important for Baldoni to make a movie about domestic violence. These text messages were carried out in furtherance of public relations services rendered to the Wayfarer Clients, as I was employed by Jonesworks to do. A true and correct copy of the text chain (WAYFARER_000136136) is attached as Exhibit 16.

41. On August 11, 2024, and acting in my capacity as a Jonesworks employee, I advised Wayfarer via text message about whether the timing was appropriate for Baldoni to issue further comments about domestic violence. A true and correct copy of the text chain

(JONESWORKS_00013830) is attached as Exhibit 17.

42. On August 13, 2024, I exchanged texts with Heath, Baldoni, Mitchell (of Jonesworks), Case, Brianna Koslow (of TAG) and Nathan concerning another TikTok video praising Baldoni and another video criticizing Lively for her marketing of the Film in a manner insensitive to domestic violence victims. My comments about the videos were public relations services for the Wayfarer Clients within the scope of my employment by Jonesworks. A true and correct copy of the text chain (BALDONI_000015463) is attached as Exhibit 18.

43. On August 15, 2024, I exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Case, Koslow and Nathan concerning the positive public comments made by Brandon Sklenar (an actor in the Film) about Baldoni and concerning other publicity related to the Film. My statements were made in furtherance of my role as the Jonesworks' point person assigned to the Wayfarer Clients. A true and correct copy of the text chain (BBKOSLOW-000002400) is attached as Exhibit 19.

44. On August 18, 2024, I exchanged text messages with Heath, Baldoni, Mitchell (of Jonesworks), Nathan and Koslow concerning TikTok videos related to the Film. The TikTok video from August 17, 2024 called the Film "one of the best movies ever made" and said the Film touched on domestic violence "in the best way possible." My comment about one of the videos was public relations services for the Wayfarer Clients within the scope of my employment by Jonesworks. A true and correct copy of the text chain (BALDONI_000019422) is attached as Exhibit 20.

45. I never published, planted, or pitched any negative content about Lively. I never communicated, or worked, with any content creators to plant negative stories or comments about Lively.

46. I never "boosted" or "amplified" any negative content about Lively.

**Jonesworks is Responsible**

47. I am not at fault and bear no responsibility for Lively's Claims (which have now been dismissed) because, *inter alia*, I undertook the actions while I was an employee of Jonesworks and in the course of my employment with Jonesworks.

48. None of my actions at issue herein were taken in pursuit of my own interests.

49. Jonesworks foresaw my actions because Jonesworks directed me to render public relations services to the Wayfarer Clients (which Jonesworks had contracted to do), because Jonesworks knew that I was rendering public relations services to the Wayfarer Clients, and because my actions were not a significant departure from my normal method of performance of public relations duties (or from other Jonesworks' employees).

50. In June 2024, and amid concerns that Lively would publicize "lies/exaggerate[d] truth" of onset issues, Jonesworks' principal Jones instructed Jonesworks staff to "be armed with [an] arsenal of stuff" about Lively, and the staff confirmed for Jones that they would "dig for details on [Lively's] indiscretions[.]" A true copy of a text message/chain, dated June 2, 2024, bearing beginning Bates number JONESWORKS_00040068, is attached as Exhibit 20A.

51. Jones knew that I was working with Baldoni on his press tour in connection with the premiere of the Film in late July/early August 2024, amid reports of strife between Baldoni and Lively. For instance, in a July 25, 2024 text message to Baldoni, Jones: (a) confirms that she is "on [the phone] with Jen now"; (b) tells Baldoni that she has "a plan" for him to attend the premiere of the Film; and (c) assures Baldoni that she has "his back and nothing is going to happen on [her] watch." A true and correct copy of a text message/chain, dated July 25, 2024, bearing beginning Bates number JONESWORKS_00039733, is attached as Exhibit 21. True

and correct copies of text messages/chains, dated August 5, 2024 and August 6, 2024, bearing beginning Bates number JONESWORKS_00039977, is attached as Exhibit 22.

52. Jones also knew that Jonesworks employees were monitoring social media activity concerning Baldoni and the Film (which is a standard public relations procedure), including online comments from Jenna Redfield. For instance, in an August 8, 2024 email, a Jonesworks employee passed along information related to such social media monitoring to Jones. A true and correct copy of an email message/chain, dated August 8, 2024, bearing beginning Bates number JONESWORKS_00022081, is attached as Exhibit 23.

53. Jones also knew that other Jonesworks employees and I were handling press inquiries concerning alleged issues on the set of the Film. On August 8, 2024, Jonesworks' Chief of Staff (Gordon Duren) forwarded (to an internal email distribution list) an inquiry from *The Hollywood Reporter* concerning alleged Film-related "drama…." I confirmed for Jones and Duren that the situation was being handled by the Jonesworks employees assigned to the Wayfarer Clients' accounts. A true and correct copy of an email message/chain, dated August 8, 2024, bearing beginning Bates number JONESWORKS_00017201, is attached as Exhibit 24.

54. As another example, on August 9, 2024, Jones forwarded (to two internal email distribution lists) an inquiry from *The Daily Mail* concerning purported on-set issues. I confirmed for Jones that the matter was being handled. A true and correct copy of an email message/chain, dated August 9, 2024, bearing beginning Bates number JONESWORKS_00017221, is attached as Exhibit 25.

55. In yet another example, on August 9, 2024, Jones forwarded a press inquiry concerning alleged on-set drama to the Jonesworks (internal) email distribution lists, and Jonesworks employee Matthew Mitchell confirmed that the inquiry would be handled. A true

and correct copy of an email message/chain, dated August 9, 2024, bearing beginning Bates number HEATH_000031717, is attached as Exhibit 26.

56. My alleged actions were consistent with how Jonesworks rendered public relations services. For instance, in an August 9, 2024 text message, Jones noted that *People* had reported that Baldoni was "largely absent from grouped promotional appearances, including at the New York premiere" and that he "didn't introduce the film ahead of the screening." Jones wrote that Baldoni "introduced at screening" and instructed me to "have [the story] corrected." A true and correct copy of a text message/chain, dated August 9, 2024, bearing beginning Bates number JONESWORKS_00040614, is attached as Exhibit 27.

57. As another example, in an August 14, 2024 email to Heath, Jones referred to herself as "a key member of both Justin's and Wayfarer's account" and "a keyman on Justin's account." In that same email, Jones provided the Wayfarer Clients with Jonesworks' "recommended strategy" for dealing with the publicity crisis: (1) "Flood the Zone with Positives" – "ensure that we promote positive narratives that media outlets cannot ignore" and because "[c]urrently, most stories are heavily biased towards Blake's perspective" it is "crucial" that "we fight for every inch of every story"; and (2) "Prepare Alternative Stories" – "mobilize a robust network of supporters and third-party advocates ready to counter these narratives on deep background as well as some on the record, making it clear that the claims being made are untrue and unfounded." Notably, Jones states in the email that she has "successfully managed every crisis for Justin without any negative press coming to light." A true and correct copy of an email message/chain, dated August 14, 2024, bearing beginning Bates number BALDONI_000026329, is attached as Exhibit 28.

58. Jones was also aware that Wayfarer had retained TAG to assist Jonesworks with

crisis management. Indeed, even after Jonesworks terminated my employment on August 21, 2024, Jones herself continued to coordinate crisis management efforts with TAG. A true and correct copy of an email message/chain, dated August 22, 2024, bearing beginning Bates number JONESWORKS_000021631, is attached as Exhibit 29.

59. In sum, I was named as a defendant herein only because of, and as a direct consequence of, the discharge of my duties as a public relations professional employed by Jonesworks. Jonesworks has not agreed, but rather has declined, to defend me against Lively's Claims.

60. I have incurred significant legal fees and costs in defending against Lively's Claims, which were advanced by Wayfarer. My engagement agreement with Liner Freedman Taitelman + Cooley LLP is attached as Exhibit 30. My engagement agreement with Meister Seelig & Schuster PLLC (formerly Meister Seelig & Fein PLLC) is attached as Exhibit 31.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 3, 2026
Beverly Hills, CA

JENNIFER ABEL