UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, et al,<br>Plaintiffs,<br>-v-<br><br>WAYFARER STUDIOS, et al<br>Defendants. | Civil Action No. 1:24-cv-10049 (LJL);<br><br>Civil Action No. 1:25-cv-449 (LJL) |

**THIRD-PARTY DEFENDANT JONESWORKS LLC ‘S MOTION FOR SUMMARY JUDGMENT AGAINST THIRD-PARTY PLAINTIFF JENNIFER ABEL’S CLAIMS FOR INDEMNIFICATION AND CONTRIBUTION**

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ I

INDEX OF AUTHORITIES ........ II

INTRODUCTION ........ 1

BACKGROUND ........ 3

A. Jonesworks and Abel's Employment ........ 3

B. Abel Brings In Nathan and TAG Behind Jones's Back ........ 4

C. Lively's Claims and Their Resolution ........ 5

LEGAL STANDARD ........ 6

ARGUMENT AND AUTHORITIES ........ 7

I. Abel's claims fail as a matter of law because Abel has not suffered any loss ........ 7

A. Abel's indemnification and contribution claims are now moot. ........ 7

B. There is no record evidence that Abel suffered any loss. ........ 8

II. The undisputed record evidence shows that Abel acted outside the scope of her employment with Jonesworks and in her own interest. ........ 10

A. Abel's conduct was outside the scope of her employment with Jonesworks. ........ 11

B. Abel acted in her own interest—not her employer's. ........ 14

III. As a matter of law, Abel cannot pursue indemnification from Jonesworks for conduct that occurred after she terminated her employment with Jonesworks. ........ 17

CONCLUSION ........ 18

# INDEX OF AUTHORITIES

**Case(s)** **Page(s)**

*AmTrust N. Am., Inc. v. KF&B, Inc.*,
No. 17-CV-5340 (LJL), 2020 WL 5519197 (S.D.N.Y. Sept. 14, 2020) ....6

*Blitz v. BLDG Mgmt. Co.*,
2023 WL 6162295 (S.D.N.Y. Sept. 21, 2023) ....1, 7, 8

*Boatman v. Cnty. of Onondaga*,
229 A.D. 3d 1214, 1215 (4th Dep't 2024) ....11

*Cassady v Morgan, Lewis & Bockius LLP*,
145 Cal. App. 4th 220 (2006) ....10, 14, 17, 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....6

*Danner-Cantalino v. City of New York*,
85 A.D.3d 709 (2d Dep't 2011) ....11

*Doe v. Guthrie Clinic, Ltd.*,
710 F.3d 492 (2d Cir. 2013) ....11

*Dunlop-McCullen v. Rogers*,
2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002) ....6

*Escobar v. Autozone*,
No. 603148/2019, 2020 WL 13413145 (N.Y. Sup. Ct., Suffolk Cnty. May 5, 2020) ....17

*Fin. Servs. Vehicle Tr. v. Saad*,
137 A.D.3d 849 (2d Dep't 2016) ....8

*Gadani v. DeBrino Caulking Assocs., Inc.*,
124 A.D.3d 1123 (3d Dep't 2015) ....8

*Hammond v. Equinox Holdings LLC*,
193 A.D.3d 586 (1st Dep't 2021) ....11, 16

*Jacobus v. Krambo Corp.*,
78 Cal. App. 4th 1096 (2000) ....14

*Judith M. v. Sisters of Charity Hosp.*,
93 N.Y.2d 932 (1999) ....11

**Case(s)** **Page(s)**

*KI v. N.Y. City Bd. of Educ.*,
256 A.D.2d 189 (1st Dep't 1998) ....................3, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................6

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005)....................8, 9

*N.X. v. Cabrini Medical Ctr.*,
97 N.Y.2d 247 (2002) ....................10, 16, 17

*Perez v. Harbor Freight Tools*,
698 F. App'x 627 (2d Cir. 2017) ....................6

*Rivera v. State*,
34 N.Y.3d 383 (2019) ....................11, 17

*Riviello v. Waldron*,
47 N.Y.2d 297 (1979) ....................11

*s.a.r.l. Orliac v. Winebow, Inc.*,
595 F. Supp. 470 (S.D.N.Y. 1984)....................7, 8

*Schlesinger v Pitney Bowes, Inc.*,
187 Misc 2d 298 (N.Y. Sup. Ct., N.Y. Cnty. 2001)....................17

*Schneider v. Nat'l R.R. Passenger Corp.*,
987 F.2d 132 (2d Cir. 1993)....................1, 7, 8

*USS-Posco Indus. v. Case*,
244 Cal. App. 4th 197 (2016) ....................10

*Webb v. United Health Servs., Inc.*,
221 A.D.3d 1315 (3d Dep't 2023)....................11

**Statute(s)**

California Labor Code § 2802 .................... *passim*

**Rule(s)**

Fed. R. Civ. P. 56 ....................................................................................................................6

## INTRODUCTION

Third-party plaintiff Jennifer Abel asks Jonesworks to pay for a lawsuit she won, defended with money she never spent, over conduct she hid from Jonesworks and undertook for her own benefit. Her Amended Third-Party Complaint asserts three claims against Jonesworks, all arising from the claims Blake Lively asserted against her: (1) statutory indemnification under California Labor Code § 2802, (2) implied or common-law indemnification, and (3) contribution. Each fails as a matter of law.

*First*, Abel has suffered no loss, and "[a] party must sustain a loss in order to assert an indemnification claim." *Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132, 138 (2d Cir. 1993). On April 2, 2026, the Court granted Abel judgment on every claim Lively asserted against her, Dkt. 1273 at 136-43, 151, and the Lively Action was later dismissed with prejudice, with appeal waived, Dkt. 1434. Accordingly, there is no primary liability to shift or apportion, and Abel's indemnification and contribution claims are moot. *See Blitz v. BLDG Mgmt. Co.*, 2023 WL 6162295, at *13 (S.D.N.Y. Sept. 21, 2023). The only remaining "loss" is Abel's legal fees, but she admits she not paid any fees and has never seen a bill. Instead, Wayfarer is paying them under an engagement letter naming Wayfarer as the "Obligor." Dkt. 1056-4 (Heath Dep.) at 39:8-18; Dkt. 1056-76 (ABEL_000021588). Fact discovery closed without Abel producing any document obligating her to repay Wayfarer. Abel cannot shift to Jonesworks a cost she never bore, and Section 2802, which reaches only "necessary expenditures or losses incurred by the employee," is no different.

*Second*, the conduct Lively sued over fell outside the scope of Abel's employment. By Lively's own account, the alleged "social manipulation" campaign "took shape with Wayfarer's retention . . . of Ms. Nathan" in late July 2024. Dkt. 521 (Second Am. Compl.) ¶¶ 193-94, 224-26,

230. Abel recommended Nathan even though Stephanie Jones had warned that Nathan was "not someone we would want in justin's orb," and Abel then kept Jonesworks in the dark: she had TAG send its scope of work to her personal RWA email address, excluded Jones from the planning and execution of TAG's work, and arranged for Wayfarer to tell Jones, falsely, that TAG would only be "working through scenario planning." Dkt. 1056-3 (JONESWORKS_JB_000001142); Dkt. 1056-20 (KCASE-000000585); Dkt. 1056-22 (JONESWORKS_00015108); Dkt. 1056-34 (Jones Dep.) at 116:15-20. None of this resembled Jonesworks' work for Baldoni and Wayfarer, which had always been positive publicity, and Abel was prohibited from astroturfing or manipulating social media to attack a non-client. Dkt. 1060 (Jones Decl.) ¶¶ 5-7, 18-20. An employer cannot reasonably anticipate conduct its employee deliberately hides from it. The same facts defeat Abel's Section 2802 claim, which requires that the conduct defended against fall within the course and scope of employment.

*Third*, Abel acted for herself and against Jonesworks. On July 19, 2024, while still employed by Jonesworks and bound by a fiduciary duty of loyalty, she secretly formed a competing firm, RWA Communications LLC. She then pitched Wayfarer to Nathan as business the two of them could work on because she was "leaving Jonesworks in three weeks," and Nathan assured her that "once you are gone - we will be on accounts together and make really good money." Dkt. 1056-25 (BBKOSLOW-000008781); Dkt. 1056-45 (JONESWORKS_00037451). Abel also helped a reporter publish a Business Insider story that damaged Jonesworks, took confidential documents, and told Nathan she was "going to war" with Jonesworks. Dkt. 1056-14 (JONESWORKS_00013606); Dkt 1056-13 (JONESWORKS_MN_000000740). Jonesworks gained nothing from any of it. Conduct designed to build an employee's competing venture at her employer's expense is the antithesis of conduct in furtherance of the employer's business.

*Finally*, Abel cannot obtain indemnity for anything she did after Jonesworks terminated her employment on August 21, 2024. Respondeat superior — and the common-law indemnity premised on it — "cannot exist without a present employer-employee relationship." *KI v. N.Y. City Bd. of Educ.*, 256 A.D.2d 189, 191 (1st Dep't 1998). Section 2802 likewise confines indemnity to conduct during the period of employment. At a minimum, then, the Court should grant partial summary judgment on Abel's claims to the extent they rest on post-termination conduct. But because Abel has suffered no loss, and because her conduct was neither within the scope of her employment nor in Jonesworks' interest, the Court should grant summary judgment to Jonesworks on all three claims.

## BACKGROUND

### A. Jonesworks and Abel's Employment

Jonesworks is a public relations firm whose work for Justin Baldoni and Wayfarer Studios consisted of positive publicity promoting Baldoni's work as an actor and director. Dkt. 1060 (Jones Decl.) ¶¶ 5-6. That work never included seeding, planting, or promoting negative stories about Baldoni's co-stars or manipulating social media, and Jonesworks' written scope of services for Wayfarer authorizes nothing of the kind. Dkt. 1060 (Jones Decl.) ¶ 7; Dkt. 941-4 (Wayfarer Agreement) at 5. As a Jonesworks employee, Abel was prohibited from engaging in astroturfing or social-media manipulation against non-clients, and she knew Jonesworks did not engage in those practices. Dkt. 1060 (Jones Decl.) ¶¶ 17-20. Abel's Employment Agreement also imposed on her a fiduciary duty of loyalty and barred her from competing with Jonesworks or soliciting its clients during her employment. Dkt. 941-3 (2021 Employment Agreement) §§ 6.2-6.3, 9.2.

### B. Abel Brings In Nathan and TAG Behind Jones's Back

On July 19, 2024, while still employed by Jonesworks and without telling Jones, Abel formed a competing firm, RWA Communications LLC. Dkt. 1056-75 (JONESWORKS_JA_000001760). Days later, when Wayfarer sought crisis recommendations, Abel turned to Melissa Nathan, whose firm, TAG, had launched only weeks earlier. Dkt. 521 (Second Am. Compl.) ¶¶ 194-96. Jones had warned Baldoni and Heath against Nathan, describing her as "not someone we would want in justin's orb," and Wayfarer's principals admit they hired Nathan over Jones's objections. Dkt. 1060 (Jones Decl.) ¶ 23; Dkt. 1056-3 (JONESWORKS_JB_000001142); Dkt. 1056-4 (Heath Dep.) at 168:18-21; Dkt. 1056-5 (Baldoni Dep.) at 137:18-21, 140:1-4, 147:3-148:3. Nathan understood the engagement as business for herself and Abel once Abel left Jonesworks. *See* Dkt. 1056-26 (JONESWORKS_00016275); Dkt. 1056-35 (Nathan Dep. (Sept. 30, 2025)) at 334:10-335:8.

Abel kept Jones out. She had TAG send its scope of work to her RWA email address and excluded Jones from TAG's communications with Wayfarer. Dkt. 1056-20 (KCASE-000000585); Dkt. 1056-4 (10/9/25 Heath Dep.) at 229:11–14. Wayfarer told Jones that TAG would only be "working through scenario planning" and "would not be having any comm[unication]s outside of our internal teams." Dkt. 1056-16 (JONESWORKS_00030156); Dkt. 1056-22 (JONESWORKS_00015108); Dkt. 1056-34 (Jones Dep. at 116:15-20); Dkt. 1056-52 (JONESWORKS_WAYFARER_000004651). In fact, TAG's scenario planning contemplated managing media inquiries "on background" working "[a]longside Jen Abel and her team." Dkt. 941-10 (Scenario Planning Document). Jones was excluded from the planning and execution of TAG's work, and Abel discussed the "social combat plan" and the Wallace engagement only with

Nathan and Wayfarer. Dkt. 1060 (Jones Decl.) ¶¶ 32, 36, 44; Dkt. 1056-4 (Heath Dep.) at 229:11-14; Dkt. 1056-18 (Case Dep.) at 408:12-14; Dkt. 1056-19 (Wallace Dep.) at 118:3-119:8.

Throughout her representation of Wayfarer, Abel worked against Jonesworks. She helped a reporter publish a story damaging Jonesworks, proposed telling the press that Baldoni and Wayfarer had "severed ties" with Jonesworks, took confidential documents, and told Nathan she was "going to war" with Jonesworks. *See* Dkt. 1056-13 (JONESWORKS_MN 000000740); Dkt. 1056-14 (JONESWORKS_00013606); Dkt. 1056-74 (JONESWORKS_00016169); Dkt. 1056-77 (JONESWORKS_00040860); Dkt. 1056-78 (JONESWORKS_00040862); Dkt. 1056-80 (JONESWORKS_JA_000000799); Dkt. 1056-81 (JONESWORKS_JA_000000904); Dkt. 1056-82 (JONESWORKS_JA _000001063).

**C. Lively's Claims and Their Resolution**

Lively sued Abel for aiding and abetting retaliation under FEHA, false light invasion of privacy, and civil conspiracy, based on an alleged "social manipulation" campaign that, by Lively's own account, "took shape with Wayfarer's retention . . . of Ms. Nathan" around July 31, 2024. Dkt. 521 (Second Am. Compl.) ¶¶ 194-95, 203-06, 215-16, 224-26, 230. Abel then asserted third-party claims for indemnification and contribution against Jonesworks. Dkt. 639 (Abel's Answer and 3P Compl.) at 80-83. Specifically, Abel alleges three claims against Jonesworks: (1) statutory indemnification pursuant to California Labor Code § 2802 (Count I); (2) implied/common law indemnification; and (3) contribution. *Id.* On April 2, 2026, the Court granted Abel judgment on every claim against her. Dkt. 1273 at 136-43, 151. The Lively Action was later dismissed with prejudice, with appeal waived. Dkt. 1434.

Throughout, Abel has paid nothing for her defense. Abel testified that she is not paying her fees and has never seen a bill. Dkt. 1056-49 (Abel Dep. (9/26/25)) at 253:18-24. Wayfarer is paying

them under an engagement letter naming Wayfarer as the "Obligor." Dkt. 1056-4 (Heath Dep.) at 39:8-18; Dkt. 1056-76 (ABEL_000021588). Fact discovery is closed, and Abel has produced no document that evidence that she is obligated to repay Wayfarer for those fees. Abel's claims for indemnity and contribution therefore fail for the reasons discussed below.

## LEGAL STANDARD

A motion for summary judgment must be granted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "The moving party may satisfy this burden by demonstrating to the court that there is an absence of evidence to support the responding party's case on the points for which the responding party has the burden of proof at trial." *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-CV-5340 (LJL), 2020 WL 5519197, at *1 (S.D.N.Y. Sept. 14, 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party meets this initial burden, the responding party "must come forward with specific facts showing that there is a genuine issue for trial by a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dunlop-McCullen v. Rogers*, 2002 WL 1205029, at *6 (S.D.N.Y. Feb. 21, 2002) (internal citations omitted). Judgment must be entered against any party that fails to establish the existence of any essential element of their case. *Celotex*, 477 U.S. at 322. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT AND AUTHORITIES

### I. Abel's claims fail as a matter of law because Abel has not suffered any loss.

The Court should grant summary judgment for Jonesworks on Abel's third-party claims for indemnification and contribution. It is well established that "[a] party must sustain a loss in order to assert an indemnification claim." *Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132, 138 (2d Cir. 1993); *see s.a.r.l. Orliac v. Winebow, Inc.*, 595 F. Supp. 470, 473 (S.D.N.Y. 1984). Yet Abel can show no loss. Each of Abel's third-party claims fails as a matter of law because all underlying claims have been resolved in her favor, and she has no evidence that she has incurred any expenses.

#### A. Abel's indemnification and contribution claims are now moot.

Abel's claims for indemnification and contribution fail because there is no underlying liability to shift to Jonesworks. When the underlying claims are resolved in the alleged indemnitee's favor, there is no primary liability, and the indemnification claim is moot. *Blitz v. BLDG Mgmt. Co.*, 2023 WL 6162295, at *13 (S.D.N.Y. Sept. 21, 2023); *s.a.r.l. Orliac v. Winebow, Inc.*, 595 F. Supp. 470, 473 (S.D.N.Y. 1984).

This case matches *Blitz*. In *Blitz*, the plaintiff brought claims against his apartment's management because of disturbances related to his neighbor's barking dog. *Blitz*, 2023 WL 6162295, at *1. The defendant managers, in turn, asserted third-party claims against the neighbor seeking indemnification or contribution. *Id.* The court granted summary judgment in favor of the defendants on each of plaintiff's federal claims and dismissed the complaint. *Id.* at *6-13. Because all claims before the court were resolved in favor of the defendants, the court held that the third-party indemnification and contribution claims were moot. *Id.* at *13.

The same reasoning applies here. The Court has granted judgment for Abel on every claim Lively asserted against her. Dkt. 1273 at 136-43, 151. As the Court explained, Abel "cannot be held personally liable for aiding and abetting retaliation," New York "does not recognize a claim for false light invasion of privacy," and there can be no conspiracy liability absent an underlying tort. *Id.* at 140, 143, 150-51. The Lively Action has since been dismissed with prejudice. Dkt. 1434 ¶ 3. Therefore, as in *Blitz*, Abel's indemnification and contribution claims are moot because there is no primary liability to indemnify or apportion. *See Blitz*, 2023 WL 6162295, at *13 (citing *s.a.r.l.*, 595 F. Supp. at 473 ("Third-party defendant's motions are contingent on the availability of [third-party plaintiff's] claim for indemnification. If there is no primary liability, [third-party plaintiff's] claim is moot and third-party defendants' motions are moot.")).

**B. There is no record evidence that Abel suffered any loss.**

Abel will no doubt argue that a duty to indemnify encompasses defense costs, even when the underlying suit fails. But even if that were true, it cannot be the case here. A party may not be indemnified for expenses it has not paid. *See Schneider*, 987 F.2d at 138 (rejecting claim for indemnification of attorney's fees where insurer paid the party's fees); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 179 (2d Cir. 2005) ("Indemnity provisions by definition only require reimbursement for losses and liabilities that the indemnitee has actually incurred."); *Gadani v. DeBrino Caulking Assocs., Inc.*, 124 A.D.3d 1123, 1124 (3d Dep't 2015) (affirming lower court's denial of claim for indemnification of attorney's fees where attorney's fees were paid by the party's insurer); *see also Fin. Servs. Vehicle Tr. v. Saad*, 137 A.D.3d 849, 852–53 (2d Dep't 2016) (court erred in allowing defendant to recover attorney's fees paid by a third party).

Abel cannot shift to Jonesworks a cost she never bore. And the record makes clear that Abel has paid nothing. As discussed above, Abel has no liability to Lively because the Court granted judgment in her favor on all of Lively's claims against her. *See* Dkt. 1273 at 136-43, 151. The parties to the Lively Action also entered into a stipulation dismissing that action with prejudice and waiving appeal. *See* Dkt. 1434. Thus, the only losses Abel could possibly claim are her legal fees. But Abel admits she has paid no legal fees and has never seen a legal bill for this case. Dkt. 1056-49 (Abel Dep.) at 253:18-24 ("Q: You're not paying? A: No. Q: You ever seen a bill? A: No."). Wayfarer's CEO confirmed under oath that Wayfarer is paying the fees and expenses of Abel's defense. Dkt. 1056-4 (Heath Dep.) at 39:8-18. And Abel's own engagement letter designates Wayfarer as the "Obligor" that "agrees to pay for all legal services" her counsel provides. Dkt. 1056-76 (ABEL_000021588). Although Abel agreed to produce all documents supporting her claimed losses, she has produced no agreement or document obligating her to repay Wayfarer, and her counsel represented that the only responsive documents are "legal invoices and her engagement agreement(s)." Dkt. 1056-55 (2025.09.11 Correspondence With Counsel); Dkt. 1056-86 (Email re Search Terms). Fact discovery closed on September 30, 2025. Dkt. 425 at 2; *see also* Dkt. 1273 at 11 ("the parties have completed an extensive and fiercely contested discovery process"). The mere possibility that Wayfarer may someday ask Abel to repay her fees is insufficient to allow Abel to recover them now. *See Mid-Hudson*, 418 F.3d at 179 ("Plaintiff may not be indemnified for an amount it does not yet owe."). Abel's claim fails because she has not shown any loss incurred.

The same reasoning applies to Abel's California Labor Code claim for statutory indemnification. Even if the Court ultimately concludes that California law applies, Abel's claim still fails. Section 2802 reaches only "necessary expenditures or losses *incurred by the employee*."

Cal. Lab. Code § 2802(a) (emphasis added). Subsection (c) defines the term to include "reasonable costs, including . . . attorney's fees *incurred by the employee* enforcing the rights granted by this section." *Id.* § 2802(c) (emphasis added). California courts have confirmed that the statute means what it says: Section 2802 only applies to expenditures made or losses sustained by an employee, and then, only to those expenditures or losses an employee must "necessarily incur." *Cassady v Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006) ("[t]he elements of a section 2802 . . . cause of action . . . are: (1) the employee ***made expenditures*** or ***incurred losses***; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." (emphasis added)); *USS-Posco Indus. v. Case*, 244 Cal. App. 4th 197, 205-06 (2016) (holding no Section 2802 claim can lie where the plaintiff "[her]self, made no expenditure, nor suffered any loss, in direct consequence of the discharge of [her] duties or in obedience to the directions of [her employer]"). Because Abel has not incurred any costs, she cannot prevail on this claim.

## II. The undisputed record evidence shows that Abel acted outside the scope of her employment with Jonesworks and in her own interest.

Abel is not entitled to indemnification from Jonesworks because she was not acting within the scope of her employment or in furtherance of Jonesworks's business. An employer is vicariously liable only for acts "committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002). The question is not whether Abel did some work Jonesworks was paid for. The question is whether *the specific conduct Lively sued over* was within the scope of Abel's employment and undertaken to further Jonesworks' business. The record conclusively demonstrates that it was not.

**A. Abel's conduct was outside the scope of her employment with Jonesworks**

Where an employee's "actions are taken for wholly personal reasons, which are not job related, his or her conduct cannot be said to fall within the scope of employment." *Danner-Cantalino v. City of New York*, 85 A.D.3d 709, 710 (2d Dep't 2011); *see also Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495-96 (2d Cir. 2013); *Webb v. United Health Servs., Inc.*, 221 A.D.3d 1315, 1319-20 (3d Dep't 2023) (conduct "out of spite"); *Hammond v. Equinox Holdings LLC*, 193 A.D.3d 586, 587 (1st Dep't 2021) (no liability where employer "did not stand to benefit from" the misconduct). When conduct is not "in furtherance of any employer-related goal whatsoever," it is outside the scope of employment. *Rivera v. State*, 34 N.Y.3d 383, 390 (2019). Although scope of employment is ordinarily a question of fact, summary judgment is appropriate where, as here, no reasonable factfinder could conclude that the conduct at issue was undertaken within the scope of employment. *See Boatman v. Cnty. of Onondaga*, 229 A.D. 3d 1214, 1215 (4th Dep't 2024).

To determine whether an employee is acting within the scope of her employment, courts consider the following factors: "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Riviello v. Waldron*, 47 N.Y.2d 297, 301 (1979). The conduct must be "generally foreseeable and a natural incident of the employment." *Judith M. v. Sisters of Charity Hosp.*, 793 N.Y.2d 932, 933 (1999). A "significant departure from the normal methods of performance" is not covered. *Rivera*, 34 N.Y. 3d at 390. Here, the record evidence conclusively establishes that Abel's rogue conduct was outside the scope of her employment.

The conduct at issue was a departure from Abel's normal methods of performance as an employee at Jonesworks. Lively's claims against Abel alleged Abel's involvement in a "social manipulation" retaliation scheme, which involved planting negative, false stories about Lively and amplifying critical content, both to cover up Baldoni's conduct and to retaliate against Lively. Dkt. 521 (Lively Am. Comp.) ¶ 230. By Lively's own account, that alleged conduct did not begin until Abel joined forces with Nathan and her newly formed company TAG ***behind*** Jones's back and against her wishes. *Id.* ¶¶ 193-95 (alleged plan "took shape with Wayfarer's retention … of Ms. Nathan," on or around July 31, 2024; TAG launched June 20, 2024); *id.* ¶¶ 203-06 (TAG's August 2, 2024 "Scenario Planning" document); *id.* ¶¶ 215-16, 224-26 (August 7, 2024 "social combat plan" and Wallace engagement). Wayfarer did not seek crisis recommendations until July 24, 2024, and Abel did not call Nathan until late July. Dkt. 941 (Abel Decl.) ¶ 31; Dkt. 941-7 (July 24, 2024 Text Chain). TAG's first call with Wayfarer was on July 25, 2024, and Jones was excluded from it. Dkt. 1056-33 (Nathan Dep. (9/29/25)) at 91:2-7. Jonesworks's practice for Baldoni and Wayfarer had always been positive publicity, such as creating promotional communications materials, supporting Baldoni's promotional activities and philanthropy, and securing press coverage to promote his work as an actor and director. Dkt. 1060, Jones Decl. ¶ 6. It had never included seeding, planting, or promoting negative stories about his co-stars or manipulating social media. *Id.* ¶ 7. Jonesworks's written scope of services for Wayfarer and Baldoni likewise authorizes no anonymous dissemination of disparaging information or coordination of online attacks. *See* Dkt. 941-4. And Abel was never instructed to, and was prohibited from, engaging in astroturfing, retaliation, or manipulating social media to attack a non-client—practices Abel knew Jonesworks did not engage in. Dkt. 1060, Jones Decl. ¶¶ 17-20. Indeed, Jones specifically advised against hiring Nathan because she did not endorse Nathan's

"crisis PR tactics," warning Baldoni and Heath that Nathan was "not someone we would want in justin's orb." *Id.* ¶ 23; Dkt. 1056-3 (JONESWORKS_JB_000001142). Yet Abel recommended Nathan anyway, knowing Jones distrusted her and did not want Jonesworks working with her. Dkt. 1056-49 (Abel Dep. (9/25/25)) at 228:15-19. Wayfarer's principals admit they hired Nathan "despite Stephanie Jones's warnings" and "over Stephanie Jones'[s] objections." Dkt. 1056- 4 (Heath Dep. at 168:18–21), Dkt. 1056-5 (Baldoni Dep.) at 137:18-21, 140:1-4, 147:3-148:3. Clearly recognizing that Jones would not approve of that choice, Abel concealed her involvement and excluded Jones from the crisis response. Dkt. 1060 (Jones Decl.) ¶¶ 32-33.

For those very reasons, Jonesworks could not foresee Abel's conduct. Abel actively concealed her actions from Jonesworks so that they could not reasonably be anticipated. For example, Abel instructed a TAG employee to send the TAG scope of work to her RWA email address instead of her Jonesworks email address. Dkt. 1056-20 (KCASE-000000585). She also arranged for Wayfarer President Tera Hanks to mislead Jonesworks about the scope of TAG's work, telling Jones that Nathan and TAG would be "working through scenario planning" only and "would not be having any comm[unication]s outside of our internal teams." Dkt. 1056-22 (JONESWORKS_00015108); Dkt. 1056-52 (JONESWORKS_WAYFARER_000004651). That was false. TAG's scenario planning document contemplated that TAG would "manage media inquiries on background as sources familiar" and would work "[a]longside Jen Abel and her team," with no mention of Jonesworks. Dkt. 941-10 (Scenario Planning Document). Hanks only told Jones that Wayfarer had hired TAG after it was done, and hid that Abel had made the recommendation. Dkt. 1056-52 (JONESWORKS_WAYFARER_000004651). Jones was then excluded from communications about the planning and execution of the campaign with TAG. *See, e.g.*, Dkts. 941-9 (July 31, 2024 Text Chain); Dkt. 941-11 (August 5, 2024 Text Chain); Dkt. 941-

13 (August 7, 2024 Email); Dkt. 941-14 (August 8, 2024 Text Chain); Dkt. 941-16 (August 10, 2024 Text Chain); Dkt. 1056-62 (NATHAN_000005552). Wayfarer's CEO confirmed that Jones had "never been involved," and TAG's personnel and Wallace likewise never spoke with Jones about Wayfarer. Dkt. 1056-11 (Heath Dep. at 229:11-14); Dkt. 1056-18 (Case Dep.) at 408:12-14; Dkt. 1056-19 (Wallace Dep.) at 118:3-119:8. An employer cannot reasonably anticipate conduct that its employee deliberately hides from it.

These same facts demand summary judgment on Abel's statutory indemnification under Section 2802 of the California Labor Code. " The elements of a section 2802, subdivision (a) cause of action, as delineated by the statutory language, are: (1) the employee made expenditures or incurred losses; (2) ***the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer***; and (3) the expenditures or losses were necessary." *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230–31 (2006). The second element requires that "the conduct defended against [be] within the course and scope of employment." *Id.* (quoting *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1101 (2000)). The doctrine of respondeat superior informs this analysis. *Id.* As discussed above, Abel's actions were outside the course and scope of her employment for Jonesworks. Judgment against Abel on her Section 2802 claim is warranted.

**B. Abel acted in her own interest—not her employer's.**

Beyond being outside the scope of her employment, Abel's conduct did not further Jonesworks' interests. Rather, Abel's conduct served her own venture and was directly adverse to Jonesworks. Abel owed Jonesworks "a fiduciary duty of loyalty, fidelity, and allegiance to act at all times in the best interests of Company and to do no act which might injure the business, interests, or reputation of the Company," and agreed not to compete with Jonesworks or solicit its

clients during her employment. Dkt. 941-3 (2021 Employment Agreement) §§ 6.2-6.3, 9.2. She did the opposite.

Abel's work with Nathan was not done to benefit Jonesworks but as a vehicle for Abel's departure from Jonesworks. On July 19, 2024, while still employed by Jonesworks, Abel formed a competing business, RWA Communications LLC, behind Jones's back. *See* Dkt. 1056-75 (JONESWORKS_JA_000001760). Abel then pitched Wayfarer to TAG as a business Abel and Nathan could work on after Abel left Jonesworks. Dkt. 1056-25 (BBKOSLOW-000008781) ("Oh my God Jen Jonesworks just called me[.] She wants to give us quite a major piece of business[.] Something that you me and her would work on[.] Justin Baldoni crisis and his studio or something[.] She's leaving Jonesworks in three weeks[.]"); Dkt. 1056-35 (Nathan Dep. (Sept. 30, 2025)) at 334:10-335:8 (confirming "Jen Jonesworks" is Abel); Dkt. 1056-23 (Abel Dep. (9/25/25 )) at 56:17-24. TAG's own employees understood that it "was Jen on her own already coming to us for help." Dkt. 1056-2 (KCASE-000005118).

Abel's and Nathan's work with Wayfarer and Baldoni was a strategic maneuver to lure them away from Jonesworks and into their own arms. *See* Dkt. 1056-28 (NATHAN_000000141) ("[Wayfarer] is the first one that Jen is giving us and she's taking all the clients"). Their motives are evident from their text messages. Nathan described Abel's pitch of Wayfarer as business for Abel and Nathan because Abel was "leaving Jonesworks in three weeks," Dkt. 1056-25 (BBKOSLOW-000008781), and they discussed Abel "taking all the clients," Dkt. 1056-28 (NATHAN_000000141). On July 29, 2024, Nathan told Abel that "once you are gone [from Jonesworks] we will be on accounts together and make really good money and be happy." Dkt. 1056-45 (JONESWORKS_00037451). Nathan also told Abel to "take this fucking client [Wayfarer] and never talk to [Jones] again I swear to God." Dkt. 1056-26

(JONESWORKS_00016275). She even encouraged Baldoni to "go with" Abel when she left Jonesworks, to which Abel replied, "Hahahaha omg love you." Dkt. 1056-27 (JONESWORKS_MN_000002208).

Abel's self-serving motives are further revealed by her assistance in creating the Business Insider "kill story" that damaged Jonesworks's reputation, Dkt. 1056-13 (JONESWORKS_MN_000000740); Dkt. 1056-14 (JONESWORKS_00013606) (Business Insider writer texting Abel "Story is up! Thanks again for your help."), including by suggesting that Baldoni withdraw his letter supporting Jonesworks so that she could tell the reporter "on background that both Justin and wayfarer have severed ties" with Jonesworks—which was untrue. Dkt. 1056-74 (JONESWORKS_00016169). As her departure neared, Abel used "100s of different emails" to circumvent Jonesworks' security systems and take confidential documents, and when Jonesworks cut off her access, she boasted, "I have my way around that shit . . . so she [Jones] can suck it." Dkt. 1056-79 (JONESWORKS_JA_000000789); Dkt. 1056-80 (JONESWORKS_JA_000000799); Dkt. 1056-81 (JONESWORKS_JA_000000904); Dkt. 1056-82 (JONESWORKS_JA _000001063); Dkt. 1056-85 (JONESWORKS_00041616). And she told Nathan she was "going to war" with Jonesworks while still employed there. *See* Dkt. 1056-13 (JONESWORKS_MN_000000740). Jonesworks gained nothing from any of this conduct. In fact, it was harmed by it. Conduct undertaken to enrich an employee's competing venture at her employer's expense is the antithesis of conduct "in furtherance of the employer's business." *See N.X.*, 97 N.Y.2d at 251; *Hammond*, 193 A.D.3d at 587. Accordingly, Abel is not entitled to indemnification from Jonesworks, and summary judgment should be granted as to her claims.

### III. As a matter of law, Abel cannot pursue indemnification from Jonesworks for conduct that occurred after she terminated her employment with Jonesworks.

At a minimum, the Court should grant partial summary judgment, and dismiss Abel's cross claims to the extent they are premised on indemnification of conduct Abel engaged in after August 21, 2024. Abel does not dispute that she was terminated from her employment with Jonesworks on August 21, 2024. Dkt. 941 (Abel Decl.) ¶ 23 ("Jonesworks terminated my employment on August 21, 2024). But Lively's claims against Abel sought to hold Abel responsible for tortious conduct that occurred *after* Abel's termination from Jonesworks. *See, e.g.*, Dkt. 520 ¶ 55 (describing Abel's retaliation as ongoing as of July 30, 2025).

Respondeat superior, and therefore common-law indemnity premised on it, reaches only acts "committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Medical Ctr.*, 97 N.Y.2d 247, 251 (2002); *Rivera v. State*, 34 N.Y.3d 383, 389 (2019). It is axiomatic that a person who is not an employee is not acting within the scope of employment, as New York courts have recognized. *See, e.g.*, *Schlesinger v Pitney Bowes, Inc.*, 187 Misc 2d 298, 300 (N.Y. Sup. Ct., N.Y. Cnty. 2001) (dismissing respondeat superior claim because plaintiff could not "demonstrate that there … was an existing employer/employee relationship at the time of the alleged wrongful conduct"); *KI v. N.Y. City Bd. of Educ.*, 256 A.D.2d 189, 191 (1st Dep't 1998) ("Respondeat superior cannot exist without a present employer-employee relationship."); *Escobar v. Autozone*, No. 603148/2019, 2020 WL 13413145, at *2 (N.Y. Sup. Ct., Suffolk Cnty. May 5, 2020) ("[D]efendant's submission establish, *prima facie*, that it cannot be held vicariously liable for the plaintiff's injuries, as [employee] was not employed by the defendant at the time of the assault.").

The same rule is applicable to Abel's statutory claim under Section 2802 of the California Labor Code. In *Cassady v. Morgan Lewis*, a California appellate court considered a claim brought

by a former attorney against her former employer, Morgan, Lewis & Bockius, seeking indemnification for legal malpractice claims alleged against the attorney by a former client. *Cassady*, 145 Cal. App. 4th at 227. The attorney's representation of that client spanned 20 years, only 13 months of which occurred while the attorney was employed at Morgan Lewis. *Id.* at 225-26. The Court held clearly:

> The plain language of section 2802 makes clear that Morgan Lewis is responsible for indemnifying Cassady, if at all, only for those defense costs arising from aspects of Cassady's representation of Rallis undertaken during the period Cassady was employed by Morgan Lewis. Defense costs arising from Cassady's conduct when he was practicing law elsewhere do not meet the statutory criteria: they simply cannot have been incurred in direct consequence of the discharge of duties for Morgan Lewis.

*Id.* at 232-33.

So too here, because Lively's complaint includes allegations that post-date Abel's employment at Jonesworks, Abel's claims to the extent premised on indemnification for post-employment conduct must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Jonesworks, LLC respectfully requests that the Court grant its Motion for Summary Judgment on Abel's third-party claims for indemnification and contribution.

Dated: November 4, 2026

Respectfully submitted,

By: */s/ Brad Beckworth*
Bradley E. Beckworth, *pro hac vice*
Christina Yarnell, *pro hac vice*
NIX PATTERSON, LLP
8701 Bee Cave Road
Seven Oaks East, Suite 500
Austin, Texas 78746
Telephone: (512) 328-5333
bbeckworth@nixlaw.com
cyarnell@nixlaw.com

*Attorneys for Third-Party Defendant Jonesworks LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, the foregoing was filed electronically with the Court and served by operation of the Court's ECF notification system upon all counsel of record.

Austin, Texas
November 4, 2026

*/s/ Brad Beckworth*
Bradley E. Beckworth