**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLAKE LIVELY,<br><br>Plaintiff,<br><br>-v-<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, JENNIFER ABEL, JED WALLACE, and STREET RELATIONS INC.,<br><br>Defendants. | Case No. 1:24-cv-10049-LJL<br>(consolidated with 1:25-cv-00449-LJL)<br><br>**THIRD-PARTY PLAINTIFF JENNIFER ABEL'S RESPONSE TO JONESWORKS LLC'S <u>LOCAL RULE 56.1 STATEMENT</u>** |
| JENNIFER ABEL,<br><br>Third-Party Plaintiff,<br><br>-v-<br><br>JONESWORKS LLC,<br><br>Third-Party Defendant. | |

Pursuant to Local Civil Rule 56.1, third-party plaintiff Jennifer Abel ("Abel"), by her undersigned attorneys, hereby responds to the Statement of Material Facts submitted by third-party defendant Jonesworks LLC ("Jonesworks"), without admitting that any of the statements are material and without waiving any evidentiary objections, as follows:

1. Jonesworks is a public relations firm whose work for Justin Baldoni and Wayfarer Studios consisted of positive publicity promoting Baldoni's work as an actor and director. Dkt. 1060 (Jones Decl.) ¶¶ 5-6.

**RESPONSE:** Disputed. Stephanie Jones instructed Jonesworks staff to "be armed with [an] arsenal of stuff" about Blake Lively and the staff confirmed for Jones that they would "dig for details on [Lively's] indiscretions[.]" *See* Abel Decl., Ex. 20A (Dkt. 1486-21).

2. That work never included seeding, planting, or promoting negative stories about Baldoni's co-stars or manipulating social media, and Jonesworks' written scope of services for Wayfarer authorizes nothing of the kind. Dkt. 1060 (Jones Decl.) ¶ 7; Dkt. 941-4 (Wayfarer Agreement) at 5.

**RESPONSE:** Disputed. Stephanie Jones instructed Jonesworks staff to "be armed with [an] arsenal of stuff" about Blake Lively and the staff confirmed for Jones that they would "dig for details on [Lively's] indiscretions[.]" *See* Abel Decl., Ex. 20A (Dkt. 1486-21). Jonesworks' written scope of services obligated Jonesworks to "[a]ssist in developing, writing and updating communication materials related to all press outreach" and to "[a]dvise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles are aligned[.]" *See* Abel Decl., Ex. 4 (Dkt. 1486-4).

3. As a Jonesworks employee, Abel was prohibited from engaging in astroturfing or social-media manipulation against non-clients, and she knew Jonesworks did not engage in those practices. Dkt. 1060 (Jones Decl.) ¶¶ 17-20.

**RESPONSE**: Disputed. Abel never published, planted, or pitched any negative content about Blake Lively, never communicated, or worked, with any content creators to plant negative stories or comments about Lively, and never "boosted" or "amplified" any negative content about

Lively. *See* Abel Decl., ¶¶ 45-47, 50, 57 (Dkt. 1486). Jonesworks' written scope of services obligated Jonesworks to "[a]ssist in developing, writing and updating communication materials related to all press outreach" and to "[a]dvise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles are aligned[.]" Abel Decl., Ex. 4 (Dkt. 1486-4). Stephanie Jones instructed Jonesworks staff to "be armed with [an] arsenal of stuff" about Blake Lively and the staff confirmed for Jones that they would "dig for details on [Lively's] indiscretions[.]" Abel Decl., Ex. 20A (Dkt. 1486-21); Abel Decl., Ex. 28 (Dkt. 1486-29). According to Stephanie Jones, Jonesworks would do "whatever [Baldoni] needed us to do." Fritz Decl., Ex. C at 84:21-85:4, 85:9-14, 87:3-87:16 (Dkt. 1485-3).

4. Abel's Employment Agreement also imposed on her a fiduciary duty of loyalty and barred her from competing with Jonesworks or soliciting its clients during her employment. Dkt. 941-3 (2021 Employment Agreement) §§ 6.2-6.3, 9.2.

**RESPONSE:** Undisputed for purposes of this motion only.

5. On July 19, 2024, while still employed by Jonesworks and without telling Jones, Abel formed a competing firm, RWA Communications LLC. Dkt. 1056-75 (JONESWORKS_JA_000001760).

**RESPONSE**: Undisputed for purposes of this motion only that Abel formed a limited liability company (RWA Communications LLC) on July 19, 2024. Disputed that Abel operated a competing firm on July 19, 2024. RWA Communications did not commence operations until after Jonesworks fired Abel. (Abel Opp. Decl., ¶ 15; Fritz Opp. Decl., Ex. 3 (Baldoni Dep. (Oct. 6, 2025) 251:5–252:11, 252:13–14, 288:7–9, 288:11–289:14); Fritz Opp. Decl., Ex. 4 (Hanks Dep. 47:10–18, 49:22–50:3, 50:13–23); Fritz Opp. Decl., Ex. 5 (Heath Dep. (Oct. 9, 2025) 67:12–24, 68:5–17, 68:19–69:2, 69:4, 100:3–20, 112:19–113:4, 113:6–15).

6. Days later, when Wayfarer sought crisis recommendations, Abel turned to Melissa Nathan, whose firm, TAG, had launched only weeks earlier. Dkt. 521 (Second Am. Compl.) ¶¶ 194-96.

**RESPONSE**: The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. The statement fails to comply with Local Civil Rule 56.1(a)'s requirement that assertions of fact be in the form of "separate, short, and concise" statements. Jonesworks fails to cite evidence in an admissible form to support the proposed statement. Notwithstanding, disputed. Wayfarer's President told Stephanie Jones that Abel recommended other crisis managers: "Shawn Sachs and Actum." *See* Fritz Opp. Decl., Ex. 7 (JONESWORKS_WAYFARER_000004651)

7. Jones had warned Baldoni and Heath against Nathan, describing her as "not someone we would want in justin's orb," and Wayfarer's principals admit they hired Nathan over Jones's objections. Dkt. 1060 (Jones Decl.) ¶ 23; Dkt. 1056-3 (JONESWORKS_JB_000001142); Dkt. 1056-4 (Heath Dep.) at 168:18-21; Dkt. 1056-5 (Baldoni Dep.) at 137:18-21, 140:1-4, 147:3-148:3.

**RESPONSE**: The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. The statement fails to comply with Local Civil Rule 56.1(a)'s requirement that assertions of fact be in the form of "separate, short, and concise" statements. Notwithstanding, undisputed for purposes of this motion only.

8. Nathan understood the engagement with Wayfarer as business for herself and Abel once Abel left Jonesworks. *See* Dkt. 1056-26 (JONESWORKS_00016275); Dkt. 1056-35 (Nathan Dep. (Sept. 30, 2025)) at 334:10-335:8.

**RESPONSE**: The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. Notwithstanding, disputed. The "Scope of Work" set forth in the written agreement between Wayfarer and TAG provides that TAG will "[a]lign with Jonesworks and team on the timeline for the coming months…", "[s]upport Jonesworks in media management…" and "[w]ork with Jonesworks and team to monitor relevant coverage and social conversation while flagging, correcting, and updating as needed, adding statements, and background items, and more in real time." *See* Abel Decl., Ex. 8 (Dkt. 1486-8, p. 5). Even after Jonesworks terminated Abel's employment on August 21, 2024, Jones herself continued to coordinate crisis management efforts with TAG. Abel Decl., Ex. 29 (Dkt. 1486-30).

9. Abel kept Jones in the dark by having TAG send its scope of work to her RWA email address and excluding Jones from TAG's communications with Wayfarer. Dkt. 1056-20 (KCASE-000000585); Dkt. 1056-4 (10/9/25 Heath Dep.) at 229:11-14.

**RESPONSE**: Disputed. Stephanie Jones was aware that Wayfarer had retained TAG to assist Jonesworks with crisis management. *See* Abel Decl., ¶ 58 (Dkt. 1486). Even after Jonesworks terminated Abel's employment on August 21, 2024, Jones herself continued to coordinate crisis management efforts with TAG. Abel Decl., Ex. 29 (Dkt. 1486-30).

10. Wayfarer told Jones that TAG would only be "working through scenario planning" and "would not be having any comm[unication]s outside of our internal teams." Dkt. 1056-16 (JONESWORKS_00030156); Dkt. 1056-22 (JONESWORKS_00015108); Dkt. 1056-34 (Jones Dep. at 116:15-20); Dkt. 1056-52 (JONESWORKS_WAYFARER_000004651).

**RESPONSE**: The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. Notwithstanding, undisputed for purposes of this motion only.

11. TAG's scenario planning contemplated managing media inquiries "on background" working "[a]longside Jen Abel and her team." Dkt. 941-10 (Scenario Planning Document).

**RESPONSE**: The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. Notwithstanding, disputed. The "Scope of Work" set forth in the written agreement between Wayfarer and TAG provides that TAG will "[a]lign with Jonesworks and team on the timeline for the coming months…", "[s]upport Jonesworks in media management…" and "[w]ork with Jonesworks and team to monitor relevant coverage and social conversation while flagging, correcting, and updating as needed, adding statements, and background items, and more in real time." *See* Abel Decl., Ex. 8 (Dkt. 1486-8, p. 5).

12. Jones was excluded from the planning and execution of TAG's work, and Abel discussed the "social combat plan" and the Wallace engagement only with Nathan and Wayfarer. Dkt. 1060 (Jones Decl.) ¶¶ 32, 36, 44; Dkt. 1056-4 (Heath Dep.) at 229:11-14; Dkt. 1056-18 (Case Dep.) at 408:12-14; Dkt. 1056-19 (Wallace Dep.) at 118:3-119:8.

**RESPONSE**: The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. The statement fails to comply with Local Civil Rule 56.1(a)'s requirement that assertions of fact be in the form of "separate, short, and concise" statements. Notwithstanding, disputed that Jones was excluded from the planning and execution of TAG's work. Even after Jonesworks terminated Abel's employment on August 21, 2024, Jones herself continued to coordinate crisis management efforts with TAG. Abel Decl., Ex. 29 (Dkt. 1486-30).

13. Throughout her representation of Wayfarer, Abel worked against Jonesworks by helping a reporter publish a story damaging Jonesworks, proposing telling the press that Baldoni and Wayfarer had "severed ties" with Jonesworks, taking confidential documents, and telling

Nathan she was "going to war" with Jonesworks. *See* Dkt. 1056-13 (JONESWORKS_MN 000000740); Dkt. 1056-14 (JONESWORKS_00013606); Dkt. 1056-74 (JONESWORKS_00016169); Dkt. 1056-77 (JONESWORKS_00040860); Dkt. 1056-78 (JONESWORKS_00040862); Dkt. 1056-80 (JONESWORKS_JA_000000799); Dkt. 1056-81 (JONESWORKS_JA_000000904); Dkt. 1056-82 (JONESWORKS_JA _000001063).

**RESPONSE**: The statement fails to comply with Local Civil Rule 56.1(a)'s requirement that assertions of fact be in the form of "separate, short, and concise" statements. Jonesworks fails to cite evidence in an admissible form to support the proposed statements. Notwithstanding, disputed. At Stephanie Jones's request, Abel arranged for Baldoni to send an email to the *Business Insider* reporter praising Jones (using mostly Jones's own words). *See* Fritz Opp. Decl., Ex. 8; Ex. 9; Ex. 10. Jonesworks authorized Abel to take the Wayfarer Clients with her to her new venture. *See* Abel Opp. Decl., Ex. B; Fritz Opp. Decl. Ex. 1 (Jones Dep. 188:7–9, 188:11–22); Abel Opp. Decl., ¶ 11. The so-called "confidential" documents consist of a list of media coverage of the Film's premiere (Dkt. 1056-79; Dkt. 1056-80), media requests for comments on the dispute between the co-stars of the Film (Dkt. 1056-81), as well as an email from Nathan to Jonesworks in which Nathan copied and pasted Lively's prior demands (from months earlier) for her to return to the set of the Film. (Dkt. 1056-82). Abel's "going to war" comment (Dkt. 1056-13) was a reference to the public relations battle between the Wayfarer Clients and Lively/Ryan Reynolds and not concerning any dispute between Abel and Jonesworks. (Abel Opp. Decl., ¶ 13).

14. Lively sued Abel for aiding and abetting retaliation under FEHA, false light invasion of privacy, and civil conspiracy, based on an alleged "social manipulation" campaign that, by Lively's own account, "took shape with Wayfarer's retention . . . of Ms. Nathan" around July 31, 2024. Dkt. 521 (Second Am. Compl.) ¶¶ 194-95, 203-06, 215-16, 224-26, 230.

**RESPONSE**: Jonesworks fails to cite evidence in an admissible form to support the proposed statement. Notwithstanding, disputed. The alleged conduct that forms the basis of Lively's claims against Abel consists of public relations activities on behalf of the Wayfarer Clients during the time in which they were Jonesworks' clients, and any such conduct was undertaken at Jonesworks' direction. *See* Abel Decl., ¶¶ 26 – 30 (Dkt. 1486)

15. Abel asserted three third-party claims against Jonesworks for (1) statutory indemnification pursuant to California Labor Code § 2802 (Count I); (2) implied/common law indemnification; and (3) contribution. Dkt. 639 (Abel's Answer and 3P Compl.) at 80-83.

**RESPONSE:** Undisputed for purposes of this motion only.

16. On April 2, 2026, the Court granted Abel judgment on every claim against her. Dkt. 1273 at 136-43, 151.

**RESPONSE:** Undisputed for purposes of this motion only.

17. The Lively Action was later dismissed with prejudice, with appeal waived. Dkt. 1434.

**RESPONSE:** Undisputed for purposes of this motion only.

18. Throughout, Abel has paid nothing for her defense. She testified that she is not paying her fees and has never seen a bill. Dkt. 1056-49 (Abel Dep. (9/26/25)) at 253:18-24.

**RESPONSE:** The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. Notwithstanding, undisputed for purposes of this motion only.

19. Wayfarer is paying Abel's legal bills under an engagement letter naming Wayfarer as the "Obligor." Dkt. 1056-4 (Heath Dep.) at 39:8-18; Dkt. 1056-76 (ABEL_000021588).

**RESPONSE:** The statement is neither relevant nor material to the outcome of the motion and therefore no response is necessary. Notwithstanding, undisputed for purposes of this motion only.

20. Fact discovery is closed, and Abel has produced no document that evidences that she is obligated to repay Wayfarer for those fees. Dkt. 425 at 2; *see also* Dkt. 1273 at 11 ("the parties have completed an extensive and fiercely contested discovery process"); Dkt. 1056-55 (2025.09.11 Correspondence With Counsel).

**RESPONSE:** The statement fails to comply with Local Civil Rule 56.1(a)'s requirement that assertions of fact be in the form of "separate, short, and concise" statements. The statement that Abel has produced no document that evidences that she is obligated to repay Wayfarer for those fees is neither relevant nor material to the outcome of the motion and therefore no response is necessary. Jonesworks fails to cite evidence in an admissible form to support the proposed statement. Notwithstanding, undisputed for purposes of this motion only.

Dated: November 23, 2026

*<u>/s/ Kevin Fritz</u>*

LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (*pro hac vice*)
Ellyn S. Garofalo (*pro hac vice*)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
egarofalo@lftcllp.com

MEISTER SEELIG & SCHUSTER PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@mss-pllc.com
kaf@mss-pllc.com