UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, et al,<br>Plaintiffs,<br>-v-<br>WAYFARER STUDIOS, et al<br>Defendants. | Civil Action No. 1:24-cv-10049 (LJL);<br>Civil Action No. 1:25-cv-449 (LJL) |

**MEMORANDUM OF LAW IN OPPOSITION TO THIRD PARTY PLAINTIFF JENNIFER ABEL'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

INTRODUCTION ....................1

BACKGROUND ....................2

A. Jonesworks' Engagement and Abel's Obligations ....................2

B. Abel Brings In Nathan and TAG Over Jones's Objection....................3

C. Abel Conceals Her Work With TAG and Acts Against Jonesworks....................4

D. Lively's Claims Are Rejected, and Wayfarer Pays Abel's Fees ....................4

LEGAL STANDARD....................5

ARGUMENT....................6

I. Abel has no standing to assert indemnification claims because she cannot show an injury .....6

II. Abel is not entitled to summary judgment on her Section 2802 claim....................9

A. New York law applies and precludes Abel's Section 2802 claim....................9

B. Abel has not established the elements of Section 2802 ....................12

III. Abel is not entitled to summary judgment on her common law indemnification claim..........11

CONCLUSION....................16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) .......... 6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 6, 14

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .......... 5

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989) .......... 8

*Blitz v. BLDG Mgmt. Co.*,
2023 WL 6162295 (S.D.N.Y. Sept. 21, 2023) .......... 15

*Bowerman v. Field Asset Servs., Inc.*,
60 F.4th 459 (9th Cir. 2023) .......... 9

*Bowerman v. Field Asset Servs., Inc.*,
No. 3:13-CV-00057-WHO, 2017 WL 4469112 (N.D. Cal. Oct. 6, 2017) .......... 9

*Buxbaum v. Robert C. Gottlieb & Assocs., PLLC*,
No. 25-CV-509 (JGK), 2025 WL 2161654 (S.D.N.Y. July 30, 2025) .......... 6

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......... 5

*Cassady v. Morgan, Lewis & Bockius LLP*,
145 Cal. App. 4th 220 (2006) .......... 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 6

*Colella v. Androus*,
No. CV 20-813 (RC), 2024 WL 1239697 (D.D.C. Mar. 22, 2024) .......... 9

*Danner-Cantalino v. City of New York*,
85 A.D.3d 709 (2d Dep't 2011) .......... 16

*Devereaux v. Latham & Watkins*,
32 Cal. App. 4th 1571, 38 Cal. Rptr. 2d 849 (1995) .......... 13, 14

*DiPerna v. Am. Broad. Cos.*,
200 A.D.2d 267 (1st Dep't 1994) .......... 15

*Eccles v. Shamrock Cap. Advisors, LLC*,
42 N.Y.3d 321, 245 N.E.3d 1110 (2024) .......... 10

*Estee Lauder Companies Inc. v. Batra*,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) .......... 12

*Ex parte McCardle*,
74 U.S. (7 Wall.) 506 (1868) .......... 5

*Gallano v. Burlington Coat Factory of Cal., LLC*,
67 Cal. App. 5th 953 (2021) .......... 13

*Gulf Offshore Logistics, LLC v. Superior Ct.*,
45 Cal. App. 5th 285 (2020) .......... 11, 12

*Guracar v. Student Loan Sols., LLC*,
111 Cal. App. 5th 330 (2025) .......... 8

*Hoblitzell v. City of Ione*,
110 Cal. App. 4th 675 (2003) .......... 13, 14

*Jacobus v. Krambo Corp.*,
78 Cal. App. 4th 1096 (2000) .......... 13

*Kaytor v. Elec. Boat Corp.*,
609 F.3d 537 (2d Cir. 2010) .......... 6

*Ketchum v. Moses*,
24 Cal. 4th 1122, 17 P.3d 735 (2001) .......... 13

*Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*,
No. 219CV00881JNPDAO, 2022 WL 1568923 (D. Utah May 18, 2022) .......... 8

*Lolley v. Campbell*,
28 Cal. 4th 367, 48 P.3d 1128 (2002) .......... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 5

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) .......... 8

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ........ 5

*Matzinger v. MAC II, LLC*,
No. 17-cv-4813 (DLC), 2018 WL 3350328 (S.D.N.Y. July 9, 2018) ........ 14

*McCarthy v. Turner Constr., Inc.*,
953 N.E.2d 794 (N.Y. 2011) ........ 14

*Moran v. Murtaugh Miller Meyer & Nelson, LLP*,
40 Cal. 4th 780, 152 P.3d 416 (2007) ........ 13

*N.X. v. Cabrini Med. Ctr.*,
765 N.E.2d 844 (N.Y. 2002) ........ 15

*Neumeier v. Kuehner*,
31 N.Y.2d 121 (1972) ........ 11

*Padula v. Lilarn Properties Corp.*,
84 N.Y.2d 519 (1994) ........ 11

*PLCM Grp. v. Drexler*,
22 Cal. 4th 1084, 997 P.2d 511 (2000) ........ 13

*Rivera v. Columbia Hicks Assocs. LLC*,
203 A.D.3d 524 (1st Dep't 2022) ........ 15

*Rivera v. State*,
142 N.E.3d 641 (N.Y. 2019) ........ 16

*Rogers v. Dorchester Associates*,
32 N.Y.2d 553 (1973) ........ 15

*Ross v. Fay's Drug Co. of Cohoes*,
132 Misc. 2d 65 (Sup. Ct. Albany Cnty. 1986) ........ 16

*s.a.r.l. Orliac v. Winebow, Inc.*,
595 F. Supp. 470 (S.D.N.Y. 1984) ........ 15

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*,
391 F.3d 77 (2d Cir. 2004) ........ 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 5

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .......... 12

*Tolan v. Cotton*,
572 U.S. 650 (2014) .......... 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7, 8

*Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*,
109 A.D.2d 449 (1st Dep't 1985) .......... 15

*Ward v. United Airlines, Inc.*,
9 Cal. 5th 732 (2020) .......... 12

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
84 N.Y.2d 309 (1994) .......... 10

<u>Statutes</u>

California Labor Code § 2802 .......... 1, 9, 10, 11, 12, 13

<u>Rules</u>

Fed. R. Civ. P. 12(h)(3) .......... 5

Fed. R. Civ. P. 56(a) .......... 6

Third-party defendant Jonesworks LLC ("Jonesworks") respectfully submits this Memorandum of Law in opposition to Jennifer Abel's ("Abel") motion for summary judgment on her First Cause of Action for statutory indemnification under California Labor Code § 2802 and her Second Cause of Action for common law indemnification. Abel's motion should be denied for the reasons set forth below.

## **INTRODUCTION**

Abel asks Jonesworks to pay for a defense that cost her nothing, against claims the Court rejected, arising from conduct Abel undertook behind Jonesworks' back for the benefit of her own competing venture. The motion fails at every step.

*First*, Abel has no injury and therefore no standing to raise her indemnification claims, much less a cognizable claim under statutory or common law. Abel admits she has paid no legal fees, nor has she ever seen a legal bill in this case. Wayfarer is paying Abel's counsel under an engagement letter that names Wayfarer as the sole "Obligor" that "agrees to pay for all legal services." Abel's own brief concedes that her fees "were advanced by Wayfarer." What is more, Abel has produced no document requiring her to repay a cent. A party who has lost nothing has nothing to recover.

*Second*, Abel is not entitled to summary judgment on her indemnification claim under California Labor Code Section 2802, which does not apply to the relationship between Abel and Jonesworks. New York law governs the question of which party to this employment relationship bears litigation expenses. New York is Jonesworks' headquarters, where its decisions are made and its finances are managed, and the parties' choice of New York law to govern their employment agreement reflects its importance to their relationship. Even under California law, Abel has not conclusively proved two required elements: that she made expenditures or incurred losses, and that

any expenditures or losses were a direct consequence of her duties as a Jonesworks employee. There is overwhelming evidence that Abel has made no expenditures nor incurred any losses, and that the conduct Lively sued over was not undertaken to benefit Jonesworks but to further Abel's personal interests. At a minimum, a jury must decide those questions.

*Third*, summary judgment is improper as to Abel's claim for common law indemnification under New York law. There is no underlying liability to shift to Jonesworks, and common law indemnity runs from the actual wrongdoer to the party vicariously liable for her, not the other way around. At a minimum, the record is replete with evidence from which a reasonable jury could find that the conduct Lively sued over—carried out with Melissa Nathan and TAG, over Jones's objection, and concealed from Jonesworks—was outside the scope of Abel's employment and undertaken for her own benefit. If anything, Abel was acting as Wayfarer's agent, and Wayfarer has thus appropriately already provided Abel's defense in this case. Abel's motion should be denied.

## <u>BACKGROUND</u>

### A. Jonesworks' Engagement and Abel's Obligations

Jonesworks' work for Justin Baldoni and Wayfarer Studios consisted of positive publicity through creating promotional materials, supporting Baldoni's promotional activities and philanthropy, and securing press coverage of his work. Dkt. 1060 (Jones Decl.) ¶ 5-6. It never included seeding, planting, or promoting negative stories about his co-stars or manipulating social media. *Id.* ¶ 7. Nothing in the Wayfarer Agreement on which Abel relies authorizes anonymous dissemination of disparaging information or coordination of online attacks. *See* Dkt. 1486-4 (Abel Decl. Ex. 4, Schedule A). Abel was prohibited from engaging in astroturfing, retaliation, or social-media manipulation against non-clients, and she knew Jonesworks did not engage in such

practices. Dkt. 1060 (Jones Decl.) ¶¶ 17-20. Her 2021 Employment Agreement imposed "a fiduciary duty of loyalty, fidelity, and allegiance to act at all times in the best interests of Company and to do no act which might injure the business, interests, or reputation of the Company," and barred her from competing with Jonesworks or soliciting its clients. Abel Decl. Ex. 3 (Abel Employment Agreement) §§ 6.2-6.3, 9.2.

**B. Abel Brings In Nathan and TAG Over Jones's Objection**

On July 19, 2024, while still employed by Jonesworks and without telling Jones, Abel formed a competing firm, RWA Communications LLC. Dkt. 1056-75 (JONESWORKS_JA_000001760). Days later, when Wayfarer sought crisis recommendations, Abel turned to Melissa Nathan, whose firm TAG had launched only weeks earlier. Dkt. 521 (Second Am. Compl.) ¶¶ 194-96. Jones had warned Baldoni and Heath that Nathan was "not someone we would want in justin's orb," and Wayfarer's principals admit they hired Nathan over Stephanie Jones's objections. Dkt. 1060 (Jones Decl.) ¶ 23; Dkt. 1056-3 (JONESWORKS_JB_000001142); Dkt. 1056-5 (Baldoni Dep. at 137:18-21, 140:1-4, 147:3-148:3); Dkt. 1056-4 (Heath Dep. at 168:18-21). Abel's assertion that "Jones turned to Abel for recommendations," Motion at 5, is thus sharply disputed. Nathan described the engagement as business Abel and Nathan would work on together, because Abel was "leaving Jonesworks in three weeks." Dkt. 1056-25 (BBKOSLOW-000008781); Dkt. 1056-35 (Nathan Dep. at 334:10-16). TAG's own staff understood it was "Jen on her own already coming to us for help," and Nathan told Abel that "once you are gone - we will be on accounts together and make really good money." Dkt. 1056-2 (KCASE-000005118); Dkt. 1056-45 (JONESWORKS_00037451).

**C. Abel Conceals Her Work With TAG and Acts Against Jonesworks**

Abel intentionally kept Jones in the dark. She had TAG send its scope of work to her RWA email address rather than her Jonesworks address. Dkt. 1056-20 (KCASE-000000585). Jones was excluded from TAG's first call with Wayfarer, and Wayfarer told Jones that TAG would only be "working through scenario planning" and "would not be having any comm[unication]s outside of our internal teams." Dkt. 1056-52 (JONESWORKS_WAYFARER_000004651); Dkt. 1056-16 (JONESWORKS_00030156). In fact, TAG's scenario planning contemplated managing media inquiries "on background" working "[a]longside Jen Abel and her team." Abel Decl. Ex. 10 at 1. Abel discussed the "social combat plan" and the Wallace engagement only with Nathan and Wayfarer; Heath testified that Jones had "never been involved." Dkt. 1060 (Jones Decl.) ¶¶ 32, 36, 44; Dkt. 1056-4 (Heath Dep.) at 229:11-14; Dkt. 1056-18 (Case Dep.) at 408:12-14; Dkt. 1056-19 (Wallace Dep.) at 118:3-119:8. Meanwhile, Abel helped a reporter publish a damaging story about Jonesworks, proposed telling the press that Baldoni and Wayfarer had "severed ties" with Jonesworks, took confidential documents, and told Nathan she was "going to war" with Jonesworks. *See* Dkt. 1056-13 (JONESWORKS_MN 000000740); Dkt. 1056-14 (JONESWORKS_00013606); Dkt. 1056-74 (JONESWORKS_00016169); Dkt. 1056-77 (JONESWORKS_00040860); Dkt. 1056-78 (JONESWORKS_00040862); Dkt. 1056-80 (JONESWORKS_JA_000000799); Dkt. 1056-81 (JONESWORKS_JA_000000904); Dkt. 1056-82 (JONESWORKS_JA _000001063).

**D. Lively's Claims Are Rejected, and Wayfarer Pays Abel's Fees**

Lively sued Abel for aiding and abetting retaliation under FEHA, false light, and civil conspiracy, alleging a campaign that "took shape with Wayfarer's retention . . . of Ms. Nathan" around July 31, 2024. Dkt. 521 (Second Am. Compl.) ¶¶ 194-95, 203-06, 215-16, 224-26, 230. On

April 2, 2026, the Court granted Abel judgment on every claim, finding that Nathan and Abel "were hired by Wayfarer and IEWUM to perform services on their behalf and as their agents" and acted "at the direction of the employer." Dkt. 1273 at 136-43, 138-39, 151. The Lively Action was later dismissed with prejudice. Dkt. 1434. Abel has paid nothing for her defense. She testified she is not paying and has never seen a bill. Dkt. 1056-49 (Abel Dep. (9/26/25)) at 253:18-24. Her engagement letter names Wayfarer as the "Obligor" that "agrees to pay for all legal services," and Wayfarer's CEO has confirmed that the company is doing so. Abel Decl., Ex. 30; Dkt. 1056-4 (Heath Dep.) at 39:8-18. Abel concedes the fees "were advanced by Wayfarer," and has produced no document obligating her to repay them. Motion at 9; Abel Decl. ¶ 60.

## LEGAL STANDARD

As a preliminary matter, the Court cannot reach the merits of Abel's motion unless Abel first establishes Article III standing. "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). Standing is a component of subject matter jurisdiction, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (jurisdictional objections may be raised at any stage of the litigation). The party invoking federal jurisdiction bears the burden of establishing it by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). At summary judgment, a plaintiff "can no longer rest on . . . 'mere allegations'" but must set forth specific facts supporting each element of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Where standing is absent, the claim must be dismissed without prejudice rather than decided on the merits. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016).

If the court reaches the merits of the motion, summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding the motion, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson*, 477 U.S. at 255. The Court's role is thus "not to resolve disputed questions but only determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). If any evidence in the record allows for a reasonable inference in favor of the opposing party, "summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004). As shown below, Abel has not carried her burden, and the record contains ample evidence from which a reasonable jury could find for Jonesworks.

## ARGUMENT

### I. Abel has no standing to assert indemnification claims because she cannot show an injury.

Abel's third-party claims fail at the outset because she has suffered no financial injury and therefore lacks standing. A litigant has no standing to recover legal fees paid by a third party. *See Buxbaum v. Robert C. Gottlieb & Assocs., PLLC*, No. 25-CV-509 (JGK), 2025 WL 2161654, at *3 (S.D.N.Y. July 30, 2025) (holding plaintiff lacked standing to recover legal fees paid to defendant

where plaintiff's parents paid the fees). To have Article III standing to sue, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). The injury "must affect the plaintiff in a personal and individual way" to be "particularized." *Id.*

Abel cannot show that she has personally suffered an injury because Wayfarer—not Abel—incurred the expenses of Abel's defense. *See* Abel Decl. Ex. 30 (ABEL_000021588); Abel Decl. Ex. 31; Dkt. 1056-4 (Heath Dep. at 39:8–18). Abel has never paid any fees nor incurred any legal obligation to do so. Indeed, she has never seen a bill in this case. Dkt. 1056-49 (Abel Dep. at 253:18–24) ("Q: You're not paying? A: No. Q: You ever seen a bill? A: No."). Abel's own brief concedes the point, describing her fees as "advanced by Wayfarer." Motion at 9. Moreover, the agreements governing Abel's attorney-client relationship with her counsel list Wayfarer as the "Obligor" and Abel as merely a "Client" and "Obligee." *See* Abel Decl. Ex. 30 (ABEL_000021588). Tellingly, these documents, which are integral to Abel's claims, are buried as Exhibits 30 and 31 to her Declaration in Support of her Motion, and her brief never discusses them. That is because they do not help Abel; rather, they conclusively demonstrate that Abel has not paid a dime for her defense. The legal responsibility is solely Wayfarer's. And Abel cannot point to any documents that show she has any obligation to repay those fees in the future. The only documents she identified as supporting her losses are "legal invoices and her engagement agreement(s)." Dkt. 1056-55 (2025.09.11 Correspondence With Counsel); Dkt. 1056-86 (Email re

Search Terms). Accordingly, Abel has not shown any personal financial obligation that constitutes an injury. And Abel lacks standing to recover fees on Wayfarer's behalf.

Abel will likely argue she did suffer an injury because she contends it is possible for a litigant to "incur" fees she is not "personally obligated to pay." Motion at 18-22. Jonesworks disagrees with that reading of the law. But even assuming Abel's cited authority supports her position, she relies on state court decisions. *See id.* State courts, however, are not bound by Article III's standing requirements and may entertain claims that a federal court could not adjudicate. *See, e.g.*, *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability."); *Guracar v. Student Loan Sols., LLC*, 111 Cal. App. 5th 330, 342 (2025) ("California courts are not subject to the restrictions that Article III imposes on federal judicial power, and, unlike the federal Constitution, the California Constitution has no case-or-controversy requirement. The California Legislature is therefore free to grant standing to sue in California courts absent concrete harm." (citations omitted)); *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 & n.4 (2d Cir. 2021) (citing *ASARCO*, 490 U.S. at 617, for the proposition that the plaintiffs could bring their New York statutory claims in state court despite lacking Article III standing). The Second Circuit has specifically held that a state statutory violation alone is not sufficient to confer standing. *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021) (citing *TransUnion*).

Any federal decisions allowing recovery of legal expenses paid by a third-party rest on materially different facts. *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*, No. 219CV00881JNPDAO, 2022 WL 1568923, at *5–6 (D. Utah May 18, 2022) (allowing recovery

of expenses paid by insurer where insurance policy included a subrogation clause); *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 467–68 (9th Cir. 2023) (allowing recovery of expenses associated with services performed for their own business entities where ultimately, as discussed in the subsequent opinion *Bowerman v. Field Asset Servs., Inc.*, No. 3:13-CV-00057-WHO, 2017 WL 4469112, at *4 (N.D. Cal. Oct. 6, 2017), "the jury listened to the evidence and concluded that the expenses were personally incurred by the claimants"); *Colella v. Androus*, No. CV 20-813 (RC), 2024 WL 1239697, at *4–5 (D.D.C. Mar. 22, 2024) (allowing plaintiff to recover attorney's fees and underlying liability associated with defendant's malpractice that were ultimately paid by plaintiff's companies because plaintiff was "legally obligated to pay" those expenses). There is no underlying liability in this case, Abel has never had a legal obligation to pay her legal expenses, and Abel has no duty to repay any expenses paid on her behalf. Therefore, Abel has suffered no cognizable injury to confer the Article III standing necessary for the Court to adjudicate her claims.

## II. Abel is not entitled to summary judgment on her Section 2802 claim.

Even if the Court finds that Abel has standing, summary judgment on Abel's indemnification claim under California Labor Code § 2802 is improper because California law does not apply, and Abel cannot establish the elements of Section 2802.

### A. New York law applies and precludes Abel's Section 2802 claim.

*First*, Abel cannot prevail on her claim under California Labor Code Section 2802 because New York law—not California law—applies. This is not a dispute over Abel's employment conditions while working in California, nor is it a dispute over liability for a tort committed in California. The Court has already determined that there is no underlying liability. *See* Dkt. 1273 at 136-43, 151. Instead, the issue here is whether a contractual employment relationship gives rise to

a statutory duty to reimburse litigation expenses. As the principal place of business and financial headquarters of Jonesworks, New York has the most significant relationship to that dispute.

The Court has acknowledged that a choice-of-law analysis is necessary because "Section 2802 of the California Labor Code only applies under California law, and the parties have pointed to no equivalent provision under New York law." Dkt. 852 at 15. Under New York choice-of-law principles, courts apply "the law of the jurisdiction with the most significant relationship to the dispute." *Eccles v. Shamrock Cap. Advisors, LLC*, 42 N.Y.3d 321, 335, 245 N.E.3d 1110 (2024). Therefore, where the issue is which party to an employment relationship governed by a contract must bear litigation expenses, the proper test is the "center of gravity or grouping of contacts," which is generally used in disputes arising out of contracts. *Id.* The Court recognize as much in its order. Dkt. 852 at 15 (noting that, at the time, the Court lacked necessary facts to conduct the "center of gravity" or "grouping of contacts" analysis New York law requires). This center of gravity test considers "the place of contracting, . . . the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317–18 (1994).

That analysis favors New York. While Jonesworks conducts business across the country, it maintains its principal place of business in New York. Ex. A ("Jones Opp. Decl.") at ¶ 2. That is where control over all operations emanates and where the company's major decisions are made. *Id.* Financial matters, such as litigation expenses, have always been handled in the New York office. *Id.* ¶ 3. While Abel primarily resided and worked in California when working for Jonesworks, she did not *only* work in California. *Id.* ¶ 4. Her work with Baldoni and Wayfarer was nationwide, frequently requiring her to travel to other states such as Illinois and New York. *Id.* Abel also worked for other Jonesworks clients whose representation required the same kind of

travel. *Id.* In fact, Abel traveled to New York for clients in May, June, August, and September of 2023, and in March, April, and August of 2024. *Id.* She also traveled frequently to other states, including Georgia, Nevada, Hawaii, Texas, and Colorado, for client needs throughout her time working for Jonesworks. *Id.* Wherever Abel's job duties took her, however, she reported to and consulted with New York operations daily. *Id.* ¶ 5. Indeed, the centrality of New York to the parties' relationship is reflected in their choice of New York law to govern their employment agreement. *See* Abel Decl., Ex. 3 (Abel Employment Agreement) at ¶ 11.7. Although the Court previously held that the choice of New York law in the parties' employment agreement is not controlling, Dkt. 852, at 13–15, it remains an important contact in identifying the state most closely connected to their legal relationship.

Abel argues that California law applies under the *Neumeier* rules. Motion at 11–14. However, the *Neumeier* rules govern conflicts involving laws that allocate losses arising from tortious conduct. *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972); *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522 (1994). This dispute no longer concerns liability for an underlying tort. The Court dismissed those claims, leaving only Abel's demand for reimbursement of defense expenses under California Labor Code § 2802. The issue, therefore, is not which party must bear damages arising from a tort, but whether Jonesworks has a statutory duty to reimburse litigation expenses because of its contractual employment relationship with Abel.

Abel's statement that a "wage earner of California . . . presumptively enjoys the protection of [California law]" is overly broad and misleading. Motion at 14. For one thing, the case Abel quotes for that proposition is no longer good law. *See Gulf Offshore Logistics, LLC v. Superior Ct.*, 45 Cal. App. 5th 285, 293 (2020), *vacated and superseded by* 58 Cal. App. 5th 264 (2020) (not designated for publication). And the other cases Abel cites address the reach of California's ***wage***

statutes. Motion at 14 (citing *Gulf Offshore Logistics*, 45 Cal. App. 5th 285; *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 741 (2020); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1199-1200 (2011)). The allocation of ***expenses*** incurred in defending third-party litigation is a very different issue and implicates different governmental interests than those associated with the underlying claims or an employee's routine performance of work. New York has a strong interest in protecting employers operating within its borders. *Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 173 (S.D.N.Y. 2006) ("Just as California has a strong interest in protecting those employed in California, so too does New York have a strong interest in protecting companies doing business here"). Therefore, New York law should control, eliminating Abel's claim under California Labor Code Section 2802, which has no equivalent under New York law.

**B. Abel has not established the elements of Section 2802.**

Alternatively, even if the Court applies California law, Abel is still not entitled to summary judgment on her Section 2802 claim because she has failed to conclusively prove its elements. To prevail on an indemnification claim under Section 2802, a plaintiff must prove three required elements: "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006). Abel's proof fails on at least two of those elements, and, at a minimum, the evidence creates genuine fact issues.

*First*, Abel made no expenditures, nor did she incur any losses. Wayfarer is the sole "Obligor" on her engagement letter, she has never paid or seen a bill, and she has no obligation to repay. Dkt. 1056-49 (Abel Dep. (9/26/25)) at 253:18-24; Abel Decl., Ex. 30; Dkt. 1056-4 (Heath Dep.) at 39:8-18. Abel's own authority requires that the employee have "made a monetary

payment" or become "'liable or subject to' a charge or obligation." *Gallano v. Burlington Coat Factory of Cal., LLC*, 67 Cal. App. 5th 953, 962 (2021); Motion at 15. Abel is neither. Her remaining cases—*Lolley v. Campbell*, 28 Cal. 4th 367, 48 P.3d 1128 (2002); *Ketchum v. Moses*, 24 Cal. 4th 1122, 17 P.3d 735 (2001); and *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1086, 997 P.2d 511 (2000)—concern prevailing-party fee-shifting statutes that award fees for work performed by counsel, not an indemnity statute that reimburses an employee for losses she actually bore. *See* Motion at 18-19. Section 2802 is a reimbursement statute, and here there is nothing to reimburse.

*Second*, any fees paid on Abel's behalf were not incurred in direct consequence of Abel's discharge of her duties as a Jonesworks employee. "Labor Code section 2802 requires indemnity for an employee's legal expenses only when the expenses are related to employee conduct within the course and scope of his or her employment." *Devereaux v. Latham & Watkins*, 32 Cal. App. 4th 1571, 1583–84, 38 Cal. Rptr. 2d 849 (1995), *disapproved of on other grounds by Moran v. Murtaugh Miller Meyer & Nelson, LLP*, 40 Cal. 4th 780, 152 P.3d 416 (2007). Actions taken against the interests of the employer or for personal gain do not fall within the scope of employment. *See id.*; *Hoblitzell v. City of Ione*, 110 Cal. App. 4th 675, 683 (2003) ("[A]n employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes."). Abel's reliance on the breadth of California's scope-of-employment test does not change the analysis. *See* Motion at 15, 17 (citing *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1101 (2000)). Even a broad test does not reach an employee who, while still on the payroll, forms a competing firm, steers the client to a new partner over her employer's objection, routes the work to her new firm's email, and conceals it from her employer. *See supra* Background §§ B–C; *Devereaux*, 32 Cal. App. 4th at 1583–84; *Hoblitzell*, 110 Cal. App. 4th at 683.

At a minimum, scope of employment is a question of fact, and this Court has already held as much. Dkt. 852 at 26. Abel, as the movant, must show that no reasonable jury could find against her. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 256 (1986). The record described above—including Wayfarer's principals' admissions that they hired Nathan over Jones's objection, TAG's understanding that Abel was acting "on her own," and Heath's testimony that Jones had "never been involved"—is more than sufficient for a jury to find that the conduct Lively sued over was undertaken for Abel's own purposes. Abel's competing narrative that Jones "turned to Abel" and "directed" the work, Motion at 5, 16–17, rests on her own declaration and must be weighed by the jury. Nor do Jones's general instructions to "flood the zone with positives" or have a story "corrected" authorize anonymous attacks on a non-client. *See* Dkt. 1060, Jones Decl. ¶¶ 6–7, 17–20. And Abel's claim that Jones "knew Wayfarer had retained TAG," Motion at 17, ignores that Jones was told TAG would do internal scenario planning only and would have no external communications. Dkt. 1056-52 (JONESWORKS_WAYFARER_000004651); Dkt. 1056-16 (JONESWORKS_00030156). Thus, the evidence against Abel precludes summary judgment.

## III. Abel is not entitled to summary judgment on her common law indemnification claim.

As Abel herself states in her motion, common law indemnity "will generally be available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer," Motion at 20; *Matzinger v. MAC II, LLC*, No. 17-cv-4813 (DLC), 2018 WL 3350328, at *2 (S.D.N.Y. July 9, 2018) (quoting *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 799 (N.Y. 2011)), and "an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment". Motion at 20; *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 847 (N.Y. 2002).

Abel cannot be entitled to summary judgment on her common law indemnification claim because there is no underlying liability to shift to Jonesworks. Abel agrees that New York law applies. Motion at 19. And under New York law, there must be primary liability to shift for a party to bring an indemnification claim in the first place. When the underlying claims are resolved in the alleged indemnitee's favor, there is no primary liability, and the indemnification claim is moot. *Blitz v. BLDG Mgmt. Co.*, 2023 WL 6162295, at *13 (S.D.N.Y. Sept. 21, 2023); *s.a.r.l. Orliac v. Winebow, Inc.*, 595 F. Supp. 470, 473 (S.D.N.Y. 1984). The cases Abel cites contemplate a "wrongdoer." Motion at 20. But there has been no adjudication of liability, and thus no "actual wrongdoer" to hold responsible.

Abel's Motion also turns common law indemnity on its head. As Abel acknowledges, "the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee," and "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." Motion at 19–20 (quoting *Trs. of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 451 (1st Dep't 1985)). Lively sued Abel for her own conduct, not for Jonesworks' conduct. And *Rogers v. Dorchester Associates*, 32 N.Y.2d 553 (1973), on which Abel relies, describes an employee following an employer's instructions, yet Abel identifies no instruction from Jonesworks to engage in the conduct Lively challenged. *See* Motion at 20

Abel's reliance on *DiPerna*, *Rivera*, and *Ross* is misplaced. Motion at 20–23. Each involved a *contractual* indemnity obligation and an *insurer* that had been paid a premium to defend the indemnitee. *DiPerna v. Am. Broad. Cos.*, 200 A.D.2d 267, 270–71 (1st Dep't 1994); *Rivera v. Columbia Hicks Assocs. LLC*, 203 A.D.3d 524, 524 (1st Dep't 2022); *Ross v. Fay's Drug Co. of Cohoes*, 132 Misc. 2d 65, 66–67 (Sup. Ct. Albany Cnty. 1986). Abel concedes as much. Motion at

21 n.2. Abel has no contract entitling her to indemnity from Jonesworks, has paid no premium, and the fees she claims as damages are paid not by an insurer but by Wayfarer—the very principal whose agent the Court found Abel to be. Dkt. 1273 at 138-39. Equity does not require Jonesworks to reimburse Wayfarer's payment for the defense of Wayfarer's own agent.

Furthermore, the conduct Lively sued for was not within the scope of Abel's employment or undertaken to further Jonesworks' business. Where an employee's actions are taken for personal reasons and her conduct is not in furtherance of employer-related goals, it is outside of the scope of employment. *Danner-Cantalino v. City of New York*, 85 A.D.3d 709, 710 (2d Dep't 2011); *Rivera v. State*, 142 N.E.3d 641, 645-46 (N.Y. 2019). A "significant departure from the normal methods of performance" is not covered. *Rivera*, 142 N.E.3d at 646. The conduct Lively alleged was not a part of Abel's methods of performance as a Jonesworks employee. Jonesworks did positive publicity, prohibited the tactics Lively alleged, and was deliberately kept out of TAG's work. *See supra* Background §§ A–C. Abel's conduct served her own competing venture and harmed Jonesworks. *Id.* Indeed, the Court has already found that Abel and Nathan acted as Wayfarer's agents "at the direction of the employer"—Wayfarer, not Jonesworks. Dkt. 1273 at 138–39. At the very least, these facts present a genuine dispute that precludes summary judgment for Abel.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Jonesworks respectfully requests that the Court deny Abel's motion for summary judgment in its entirety.

Dated: November 23, 2026

Respectfully submitted,

By: */s/ Brad Beckworth*

Bradley E. Beckworth, *pro hac vice*
Christina Yarnell, *pro hac vice*
NIX PATTERSON, LLP
8701 Bee Cave Road
Seven Oaks East, Suite 500
Austin, Texas 78746
Telephone: (512) 328-5333
bbeckworth@nixlaw.com
cyarnell@nixlaw.com
*Attorneys for Third-Party Defendant Jonesworks LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, the foregoing was filed electronically with the Court and served by operation of the Court's ECF notification system upon all counsel of record.

Austin, Texas
November 23, 2026

*/s/ Brad Beckworth*
Bradley E. Beckworth